UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

DISNEY ENTERPRISES, INC., )
TWENTIETH CENTURY FOX FILM CORPORATION, )
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, )
COLUMBIA PICTURES INDUSTRIES, INC., and )
WARNER BROS. ENTERTAINMENT INC., )
)
       *Plaintiffs*, )  Case No.
)
  vs. )
)
HOTFILE CORP., ANTON TITOV, and )
DOES 1-10. )
)
       *Defendants*. )
———————————————————————— )

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiffs Disney Enterprises, Inc. ("Disney"), Twentieth Century Fox Film Corporation

("Fox"), Universal City Studios Productions LLLP ("Universal"), Columbia Pictures Industries,

Inc. ("Columbia"), and Warner Bros. Entertainment Inc. ("Warner"), by and through their

counsel, on personal knowledge as to their own actions and on information and belief as to the

actions, capabilities and motivation of others, hereby allege as follows:

<u>**Nature of Case**</u>

1.     On a daily basis, defendants are engaged in the infringement of plaintiffs'

copyrighted motion picture and television properties on a massive scale. Defendants carry out

this unabashed theft of plaintiffs' intellectual property through the operation of the website and

service located at www.hotfile.com ("Hotfile" or the "Hotfile website"). Hotfile is a

commercial online hub for distributing popular entertainment content without authorization, including hundreds of thousands of copies of plaintiffs' copyrighted works.

2.      Defendants actively encourage their users to upload to Hotfile's computer servers infringing copies of the most popular entertainment content in the world.  Once uploaded, defendants provide their users a "link" to the infringing content, and encourage their users to disseminate these "links" as broadly as possible on the Internet so that as many people as possible will find the links and use them to download the infringing content from Hotfile. Anyone clicking the "link" can download the infringing content from Hotfile's servers. Defendants openly pay users to upload, and disseminate links to, infringing content. Defendants pay uploading users more depending upon how many times the infringing content is downloaded by others – the more frequently the content is downloaded illegally, the more defendants pay the uploading user.  Defendants also pay the websites that host and promote "links" to infringing content on Hotfile's servers.

3.      Defendants profit handsomely from this copyright infringement by charging a monthly fee to users who wish to download content from Hotfile's servers.  In other words, defendants pay people to put infringing copies of plaintiffs' popular works on Hotfile's computer servers, and then use the lure of those copyrighted works (and the copyrighted works of others) to entice users to pay defendants for the privilege of accessing and downloading the works from defendants' computer servers.  That is defendants' entire business model.

4.      Hotfile is not designed to be a personal storage facility – and defendants make no bones about that fact.  They pay users only for uploading the most popular files and only if those files are downloaded by hundreds and thousands of defendants' other users.  Indeed, while Hotfile's services potentially could be used only to store files rather than distribute them,

defendants explicitly caution users that they should "[u]pload files only if you intent [sic] to promote them" by posting links to the files on public websites.  Defendants pay less to uploading users if the files they upload are not downloaded by others in sufficient volume, explaining that the purpose of the Hotfile compensation scheme is "to encourage the good promoters by increasing their earnings and to reduce the earnings for uploaders that mainly use the free hotfile resources for storage."

5.      As a direct result of the popularity of the copyrighted content defendants illicitly solicit and distribute, defendants' business has been extraordinarily successful.  In less than two years of operation, Hotfile has become one of the most heavily-trafficked sites on the Internet – by some estimates, one of the top 100 most trafficked sites in the world (with traffic volumes approaching those of AOL and CNN).  In contrast to legitimate online distributors of copyrighted content, Hotfile has succeeded by offering content for free, without authorization or license from copyright owners.

6.      But defendants' ill-gotten gains have come at an enormous cost to plaintiffs and other copyright owners.  Defendants are responsible – every single day – for the infringement of thousands of plaintiffs' copyrighted works, including movies still playing in theaters.  Many of those works are infringed repeatedly, thousands of times over, every day.  The harm to plaintiffs, who invest billions of dollars and enormous creative energies to produce their copyrighted works, is staggering and irreparable.

7.      On account of their conduct, defendants are liable to plaintiffs for copyright infringement.  Defendants are liable for direct infringement for unlawfully distributing plaintiffs' copyrighted works.  Defendants are further liable for inducement of infringement,

contributory infringement and vicarious infringement, for actively promoting, enabling and profiting from the copyright infringement of Hotfile users.

## Jurisdiction And Venue

8.     This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, 17 U.S.C. § 101 et seq.

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions).

10.     This Court has personal jurisdiction over Hotfile Corp. because the acts of infringement complained of are "tortious act[s]" committed "within this state" under Fla. Stat. § 48.193(1)(b).  Defendant Hotfile Corp. operates the Hotfile website and service, through which the complained-of acts of infringement take place, through and in concert with Florida resident Anton Titov ("Titov"), who acts as Hotfile Corp.'s manager.  The Hotfile website and service are freely accessible to Florida residents, and Hotfile infringes plaintiffs' works and those of numerous other copyright holders by electronically transmitting copies of those works to Florida residents, including Florida residents who are Hotfile subscribers.

11.     Personal jurisdiction over Hotfile Corp. is also proper because it is "operating, conducting, engaging in, or carrying on a business or business venture" in Florida under Fla. Stat. § 48.193(1)(a).  As stated, defendant Titov operates Hotfile Corp. from his residence in Florida.  Defendant Hotfile Corp. also is party to a long-term, ongoing business arrangement with Florida corporation Lemuria Communications, Inc. ("Lemuria") that provides Hotfile Corp. with critical Internet hosting services.  These services, obtained through Hotfile Corp.'s collaboration with Lemuria in Florida, are essential to the operation of the Hotfile website and result in Hotfile Corp.'s pecuniary benefit.  Hotfile Corp. acts in concert with Florida

corporation Lemuria and Florida resident Titov to engage in the acts of infringement at issue in this Complaint.

12.    This Court has personal jurisdiction over the individual defendant, Anton Titov, because Titov is a resident of Florida.  From Florida, Titov has personally participated in, directed, and/or supervised, and benefited from, the acts of infringement complained of in this Complaint, including by operating the Florida corporation Lemuria to facilitate Hotfile's infringing conduct.  Titov has been the guiding spirit and central figure behind Hotfile's infringing activity, which has been directed at Florida residents.

13.    This Court has personal jurisdiction over defendants Does 1-10 because each is working with or acting in concert with defendants Hotfile Corp. and Titov to operate Hotfile and/or facilitate its and its users' copyright infringement, and each is also profiting from that infringement.  Each is therefore liable for "tortious act[s]" committed "within this state" under Fla. Stat. § 48.193(1)(b), and/or is "operating, conducting, engaging in, or carrying on a business or business venture" in Florida under Fla. Stat. § 48.193(1)(a).

14.    Venue in this District is proper under 28 U.S.C. § 1391(b), (c), (d), and/or 28 U.S.C. § 1400(a).  Hotfile Corp. resides in this District, *id.* § 1391(c), as does defendant Titov. Further, a substantial part of the acts of infringement complained of herein occurs or has occurred in this District.

## The Parties

### The Plaintiffs

15.    Plaintiffs Disney, Fox, Universal, Columbia, and Warner, or their affiliates, are among the leading motion picture studios in the world, and are responsible for creating and distributing some of the world's most popular filmed entertainment.

16.     Each of these plaintiffs owns or controls the copyrights and/or exclusive reproduction and distribution rights to thousands of popular motion pictures and television programs infringed by defendants, including for illustrative purposes those listed on Exhibit A.

### *The Defendants*

17.     Defendant Hotfile Corp. is a Panamanian corporation that operates the Hotfile website, which is responsible for the infringement of plaintiffs' copyrights as described herein.

18.     Defendant Titov is a foreign national residing in the United States in Florida.  He is the operator of defendant Hotfile Corp.  He has personally participated in and directed, and profited from, the infringing actions of Hotfile Corp. with respect to the facts alleged in this Complaint.

19.     Defendants Does 1-10 are persons or entities, currently unknown to plaintiffs, working with or acting in concert with defendants Hotfile Corp. and Titov to operate Hotfile and/or facilitate its and its users' copyright infringement, and who also are profiting from that infringement.  Plaintiffs will provide the identities of defendants Does 1-10 in an amended complaint, as warranted, after plaintiffs are able to obtain additional information and determine their identities.

### Defendants' Infringing Conduct

**A.     *Basic Operation of Hotfile.***

20.     In order to amass an inventory of popular content to offer for download, Hotfile encourages its users to upload content files to Hotfile's own commercial-grade servers, on which Hotfile is believed to host millions of copies of files.  Uploading a content file to Hotfile is straightforward and can be done even by unregistered users.  When a user uploads a file to Hotfile, the user receives a Uniform Resource Locator ("URL") "link" beginning with "hotfile.com."

6

21.     Any user who has the URL link can access and download the associated content from Hotfile's servers.  By "clicking" the URL link (or copying it into any web browser), the user is taken to a "download page" on the Hotfile website that offers the user, if he or she is unregistered, a choice of download options:  a free "Regular Download" or a paid "High Speed Download," the latter available only if the user purchases a "Premium" membership.  Any user, whether or not a "Premium" member, can then download the file with a click of the button.  The user can save the downloaded content or play it directly on the user's computer.

22.     To conceal the scope of its infringement, Hotfile does not provide a searchable index of the files available for download from its website.  Instead, Hotfile relies on third-party pirate link sites to host, organize and promote URL links to Hotfile-hosted infringing content, including plaintiffs' copyrighted works.  Such link sites make infringing content easily accessible to users by maintaining an index of links to content files organized by category and/or alphabetically by title of the copyrighted work; many such link sites also offer search boxes where users can enter queries to quickly find the content they want.  Almost all of these link sites are blatant pirate sites, hosting thousands of links, nearly all copyright infringing.  Indeed, some pirate link sites are adjudicated infringers; others have had their domain names seized for violations of criminal copyright infringement laws.  Any visitor can quickly see the widespread availability on many link sites of links to infringing content on Hotfile, including links to motion pictures still in theaters only days after their release.  Defendants know of the open infringement on pirate link sites; yet, as discussed below, Hotfile pays many pirate link sites for hosting and promoting Hotfile URL links.

23.     Hotfile has complete control of its physical premises (*i.e.*, the servers, databases and software that comprise and control the Hotfile system), as well as the activities occurring on

its system.  Hotfile physically stores the content files on its servers, keeping track of each content file in sophisticated databases, and could remove or disable access to infringing content files if it chose to do so; it could also prevent content files from being stored in the first place, and from being distributed to the general public.  Hotfile also maintains the ability to control the activities of users.  Indeed, it controls the activities even of unregistered users, by limiting the frequency of downloads of users who do not purchase a "Premium" membership.  Hotfile also has the ability to terminate users or block their access to the Hotfile site and, in fact, legally reserves the right to do so under its "Terms of Service."  By any measure, Hotfile provides the site and facilities on which infringement occurs and has the right and ability to prevent or mitigate the infringing activities occurring on its site.

### B.    *Hotfile's Business Model.*

24.    Hotfile makes money by charging downloading users a monthly subscription fee for "Premium" access and faster and easier downloads.  Ordinary users are limited to one download at a time, at limited speeds, and with a built-in artificial delay before any file begins to download.  Ordinary users are also limited to a maximum of one download every 30 minutes. Hotfile's "Premium" users pay Hotfile $9 a month for unlimited download speeds, unlimited simultaneous downloads, and no initial delays or download time restrictions.

25.    The content for which users are willing to pay to download in large volumes is overwhelmingly – and indeed almost exclusively – copyrighted.  It is this popular, infringing content, available for download at a click of a button, that Hotfile uses as the draw to attract downloading users, which Hotfile then converts into paying subscribers.  Hotfile's business model critically depends on attracting users to download high-value copyrighted content, such as plaintiffs' copyrighted works.

26.     Hotfile additionally profits from the public distribution of copyrighted works by selling its users "hotlinks" to post on their own or third-party websites.  "Hotlinks" are special URL links that allow the recipient to directly download Hotfile-hosted content without ever visiting the Hotfile website itself.  Hotfile charges for the ability to post these "hotlinks" as part of its "Premium" subscription plan.  By selling "hotlinks," Hotfile directly sells access to, and copies of, hosted content, profiting directly from its reproduction and distribution.

27.     Hotfile sells access to content hosted on its service.  This is not unlike the business model of many legitimate online distributors of copyrighted content, such as Netflix or iTunes, except that Hotfile, unlike those services, does so without authorization or license from the copyright owners.

### C.     *Defendants Actively Encourage Users to Upload Infringing Content and Promote the Widespread Download of That Content.*

28.     To ensure a vast and ever-replenished supply of popular copyrighted content to which it can sell access, Hotfile pays users, through an intricate compensation scheme, to upload the most popular content to its servers.  It also encourages users to publicly promote links to that content, so that the content is widely downloaded.

29.     In particular, Hotfile has implemented an "Affiliate" program that pays uploading users cash when a file they have uploaded has been downloaded at least 1,000 times.  Precisely how much Hotfile pays the uploading user is determined by the uploading users' "status" and the size of the uploaded file.  Users elevate their "status" in two ways.  First, users can improve their "status" by having a good "ratio of uploaded files to number of downloads." *See* Exhibit B (screenshot of www.hotfile.com/affiliate.html).  In Hotfile's compensation scheme, a single uploaded file that is downloaded 50,000 times is more highly rewarded than 50 uploaded files downloaded 1,000 times each.  Hotfile thereby incentivizes users to upload only

highly popular works so as not to "waste" Hotfile's server storage space with files that are not popular and not being downloaded by massive numbers of users.

30.     Users also earn higher status if the users who download their uploaded content end up purchasing Hotfile monthly subscriptions.  As described above, when a downloading user clicks a Hotfile URL link, that user is taken to a "download page" on Hotfile devoted to the related content file.  On that page, Hotfile attempts to entice the downloading user to upgrade to a paying, "Premium," subscription.  If the downloading user does so, the user who uploaded that content file gets "credit" for that sale of a "Premium" subscription.

31.     For any given user "status," Hotfile's compensation formula pays users more for large files that are heavily downloaded – paying twice as much for files over 100MB in size as it does for files under 50MB.  In this way, Hotfile aggressively encourages the uploading of very large content files of the sort that are typically associated with full-length motion pictures and television programs, thereby increasing its profits.

32.     The "Affiliate" program is designed not only to encourage the uploading of popular content, but also to encourage uploading users to publicly post URL links supplied by Hotfile as widely as possible, so that other users will find the links and visit Hotfile to download the content.  In fact, Hotfile makes clear that users should "[u]pload files only if you intent [sic] to promote them."  *See* Exhibit C (screenshot of www.hotfile.com/faq.html).  To enforce this, Hotfile only pays users for content that is downloaded at least 1,000 times.

33.     Conversely, Hotfile actively discourages use of Hotfile merely for personal storage of files that are not widely distributed.  Hotfile penalizes users by reducing their "Affiliate" compensation if the content files they have uploaded to Hotfile are *not* frequently downloaded.  And Hotfile deletes files uploaded by non-Premium users if those files have not

10

been downloaded within the past 90 days, a policy antithetical to any legitimate storage facility. Indeed, Hotfile openly admits that it is not in the business of providing storage space for users to store their personal files for their own use: "We are trying to encourage the good promoters by increasing their earnings and to reduce the earnings for uploaders that mainly use the free hotfile resources for storage." *See* Exhibit B.

34.     All of Hotfile's financial incentives are designed to encourage both uploading and promotion of what Hotfile euphemistically refers to as "interesting" content, by which Hotfile means, and which Hotfile users understand to be, popular copyrighted entertainment content. That infringing content acts as a "draw" to attract millions of downloading users, to whom Hotfile can sell "Premium" memberships.

### D.      *Defendants Actively Encourage Pirate Link Sites to Host and Promote Links to Infringing Hotfile Content.*

35.     Hotfile also has a "Referral Program" that pays the operators of other websites (pirate link sites) for posting links that direct users to Hotfile-hosted content when those users, in turn, purchase Hotfile subscriptions. Hotfile specifically encourages its affiliates to "earn money spreading links in your site" and makes clear that the links can point to content uploaded to Hotfile by the website operator itself, or simply can be links copied from other sites. *See* Exhibit B. In this way, Hotfile encourages pirate link sites to post and promote links to the most popular Hotfile-hosted content, nearly all of which is copyright infringing. Indeed, some pirate link sites traffic specifically in links to Hotfile-hosted infringing content.

36.     The result is that Hotfile effectively partners, and acts in concert, with a vast array of pirate link sites and other affiliates to advertise and promote the infringing content on Hotfile's servers. Those link sites include commercial pirates and criminal copyright infringers.

They receive direct payments from Hotfile for sending users to Hotfile, plainly exploiting the draw of infringing content.

      **E.**     ***Defendants Purposely Stymie Efforts by Copyright Owners to Limit Infringement and Fail to Take Simple Steps to Mitigate Infringement.***

    37.    Defendants are well aware of the massive infringement occurring on Hotfile. Their business model depends on it.  Given the scale of infringement on Hotfile and the speed with which infringing content can be uploaded and promoted, plaintiffs are left to play catch-up, constantly trying to identify and take down content Hotfile encourages its users to upload and promote.  Indeed, for well over a year copyright owners, including plaintiffs, have sent Hotfile notices specifically identifying hundreds of thousands of infringing files, seeking to have Hotfile meaningfully address the massive infringement of plaintiffs' copyrighted works.  But defendants continue to reward Hotfile users for promoting the download of popular, infringing works.

    38.    Moreover, defendants have intentionally attempted to stymie plaintiffs' copyright enforcement efforts.  Even if Hotfile does block access to specifically identified copyrighted works, Hotfile has implemented technical features to ensure continued infringing access to plaintiffs' content.  For example, Hotfile permits registered users to upload a single copy of a work once, but then make five additional separate copies of the work on Hotfile's servers, each with a different URL link.  The purpose of this feature is to frustrate copyright owner takedown notices:  it permits an uploading user to post one URL link at a time, then, when the link is discovered and deactivated in response to copyright owner notices, to immediately post a link to the same content without even having to upload the work again to Hotfile's servers.  There is simply no legitimate consumer or commercial reason to replicate a single uploaded content file five times on the Hotfile servers.

39.     Further, Defendants could take simple measures to stop, or substantially mitigate, the massive infringement that takes place through Hotfile but do not.  They do not because Hotfile's entire business model depends upon widespread copyright infringement.

40.     Hotfile could immediately, with no effort, substantially mitigate the massive public distribution of copyrighted content by password-protecting the ability to download files, thereby ensuring that only the account-holder (or those individually authorized by the account-holder) could make copies of the files uploaded by the account-holder.  Hotfile, instead, engineers its URL links so that anyone can download the linked-to content.

41.     Hotfile also could use any number of readily available and effective technological solutions (including without limitation keyword filtering, audio fingerprinting, and video fingerprinting) to identify and prevent public distribution of copyrighted content.  Yet defendants eschew such easy-to-implement infringement-mitigating technologies that are widely used to prevent online copyright infringement.

42.     Hotfile also could reduce and deter infringement by taking action to terminate Hotfile users who are blatant or repeat infringers.  Upon receiving takedown notices, Hotfile can readily identify the users who have uploaded the infringing content identified in the notices. Hotfile keeps meticulous records of such users for purposes of compensating them through the "Affiliates" program.  Yet, instead of terminating infringing users, Hotfile compensates them for their infringement.

43.     Ultimately, defendants do not take any meaningful steps to curtail infringement on Hotfile because they want and need that infringement to make their business profitable.

F.      *Hotfile Is Used Overwhelmingly for Copyright Infringement and Defendants Plainly Know It.*

44.     Given defendants' active inducement of infringement, it is hardly surprising that the overwhelming majority of content publicly available on Hotfile consists of infringing copies of popular copyrighted works, such as motion pictures and television programs.  The ready availability of this copyrighted content has made Hotfile enormously popular.  In less than two years of existence, Hotfile has become, by some measures, one of the 100 most trafficked sites in the world.  The massive infringement on Hotfile is unmistakable; defendants have full knowledge of it.

G.      *Titov Personally Directed, Participated in, and Benefitted from the Infringing Conduct of Hotfile.*

45.     Defendant Titov personally directed and participated in, exercised control over, and benefited from the specific infringement-inducing conduct of Hotfile that has resulted in the massive infringement of plaintiffs' copyrights.  This includes, but is not limited to, the adoption of a business plan dependent upon massive copyright infringement, the design and implementation of Hotfile's "Affiliate" and "Referral" programs, which actively encourage copyright infringement, the implementation of technical features to frustrate copyright owner enforcement efforts, and Hotfile's refusal to implement any of the readily available technologies to mitigate the infringement.  Further, Titov himself has paid at least some of Hotfile's uploading users, and manages the operations of Hotfile.  Titov also is the President and sole officer and director of Hotfile's hosting provider Lemuria.  Titov established Lemuria to avoid interruption of critical Internet hosting services to Hotfile, after Hotfile's previous online service provider received a subpoena concerning Hotfile's infringements.  Titov has been the central figure in Hotfile's infringing business model and activities.

## Claims For Relief

### Count I – Direct Infringement of Copyright
**(Against All Defendants)**

46.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 45 as if fully set forth herein.

47.     Plaintiffs have properly registered and own or control the copyrights and/or exclusive online distribution rights to thousands of major motion pictures and television programs, including but not limited to the illustrative works identified in Exhibit A.

48.     Without authorization from any plaintiff, or right under law, defendants Hotfile Corp. and Titov, via their operation of Hotfile, have unlawfully distributed thousands of plaintiffs' copyrighted works, including those on Exhibit A, by transmitting unauthorized copies of those works to downloading users upon demand in violation of the Copyright Act, 17 U.S.C. § 106.

49.     Defendant Hotfile Corp. is directly liable for these acts of infringement under the Copyright Act.  The infringing files reside on servers controlled by Hotfile Corp.  Hotfile Corp. causes and effects the infringing act of transmitting copies of those works from its servers to the computers of its users, including by selling "hotlinks" that allow direct download of those works without users needing to visit the Hotfile website.  Moreover, Hotfile Corp. does more than merely respond to user requests in a passive, content-neutral, and automated manner.  As set forth above, Hotfile Corp. plays an active role in ensuring that it has the most popular content on its servers and that the URL links to those infringing content files are widely disseminated on the Internet, and advertised and promoted by pirate link sites, so the maximum number of Hotfile users will access and download the infringing content.  Thus, Hotfile Corp. is actively involved in creating the supply of infringing content, making that content broadly

15

available for distribution to the public at large, and physically transmitting and distributing that infringing content to users.  It further exercises active control over the distribution process, regulating the volume and speed of transmissions to users who have not yet purchased "Premium" subscriptions.  For these reasons, among others, Hotfile Corp. engages in active conduct in unlawfully distributing plaintiffs' copyrighted works to its users.

50.     In order to facilitate and expedite distribution of infringing files to Hotfile users, Hotfile Corp. also makes additional unauthorized copies of plaintiffs' copyrighted works, including those on Exhibit A, on its own servers in violation of the Copyright Act, 17 U.S.C. § 106.  These unauthorized copies are not made by or at the request of Hotfile users, but rather through the decisions and actions of Hotfile Corp., for its own business purposes.

51.     Defendant Titov is jointly and severally liable for each act of Hotfile Corp.'s direct infringement because he personally directed and participated in, and benefited from, Hotfile Corp.'s infringing conduct as alleged herein, and has been the guiding spirit behind and central figure in Hotfile Corp.'s infringing activities.

52.     Defendants Does 1-10 are likewise liable under the Copyright Act for the acts of infringement identified above for acting in concert with defendants Hotfile Corp. and Titov to operate Hotfile and/or for infringing reproductions and distributions of plaintiffs' copyrighted works separately committed by defendants Does 1-10.

53.     The foregoing acts of infringement by defendants have been willful, intentional and purposeful, in disregard of and indifferent to plaintiffs' rights.

54.     As a direct and proximate result of defendants' infringement of plaintiffs' exclusive rights under copyright, plaintiffs are entitled to damages as well as defendants' profits pursuant to 17 U.S.C. § 504(b).

55.     Alternatively, plaintiffs are entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

56.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

57.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, plaintiffs are entitled to a preliminary and permanent injunction prohibiting further infringements of their copyrights and exclusive rights under copyright.

## Count II – Secondary Infringement of Copyright
### (Against All Defendants)

58.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 57 as if fully set forth herein.

59.     Users of Hotfile have infringed, and continue to infringe, plaintiffs' copyrights, including without limitation those copyrighted works identified in Exhibit A, by reproducing and distributing works owned by plaintiffs through Hotfile, without authorization from any plaintiff, or right under law, in violation of the Copyright Act, 17 U.S.C. § 106.  Defendants are liable as secondary infringers under the Copyright Act for each infringing reproduction and distribution of plaintiffs' works by Hotfile users.

60.     Defendant Hotfile Corp. is liable under the Copyright Act for inducing the infringing acts of Hotfile users.  As set forth above, defendant Hotfile Corp. operates Hotfile and provides the Hotfile website and service to its users, with the object of promoting the use of Hotfile to infringe plaintiffs' copyrighted motion pictures and television programs, among other

types of copyrighted content, as shown by Hotfile Corp.'s clear expression and other affirmative steps to foster infringement.  As set forth above, Defendant Hotfile Corp.'s inducement of copyright infringement is evident from, among other things:  (i) the overwhelming infringing content available on, and downloaded from, Hotfile; (ii) the operation of "Affiliate" and "Referral" programs structured to encourage users and website operators to upload popular copyrighted content files and to advertise and promote the availability of that infringing content; (iii) a business model that depends on massive infringement of copyrighted works, including plaintiffs' copyrights; (iv) technical measures designed to facilitate the widespread dissemination of copyright content, even after copyright owners have requested takedown of the infringing content; and (v) defendant's failure to use any of the readily-available means to curtail infringement on the Hotfile website.  Defendant Hotfile Corp., therefore, is liable for inducing the unauthorized reproduction and distribution of plaintiffs' copyrighted works, including those listed on Exhibit A hereto, in violation of the Copyright Act, 17 U.S.C. § 106.

61.     Defendant Hotfile Corp. is separately liable under the Copyright Act for the infringing acts of its Hotfile users as a contributory copyright infringer.  Defendant Hotfile Corp. had actual and constructive knowledge of massive copyright infringement of plaintiffs' copyrighted works by Hotfile users, including, without limitation, by means of repeated notices by plaintiffs and other copyright holders concerning tens of thousands of infringing files. Indeed, Hotfile Corp. had full knowledge that Hotfile was being used predominantly and overwhelmingly to infringe the rights of copyright owners, including plaintiffs. Notwithstanding that knowledge, defendant Hotfile Corp. continued to provide a material contribution to that infringement as set forth above, including without limitation by (i) operating, maintaining and further developing the Hotfile website and service, which acts as the

site and facilities for Hotfile users' copyright infringement, (ii) taking active steps, through the "Affiliate" and "Referral" programs, to ensure that Hotfile had and offered users an extensive supply of popular copyrighted works, (iii) storing infringing content on its servers and making reproductions of such works for faster distribution, (iv) providing uploading users with URL links and special "hotlinks" to infringing copies of plaintiffs' copyrighted works to easily disseminate such works, (v) making multiple copies of such works to enable users to quickly post new links to content removed in response to plaintiffs' notices, and (vi) controlling the speed and availability of downloading options of its users. Without the active contributions from defendant Hotfile Corp., the infringement complained of herein could not have taken place at all, and certainly not on the massive scale enabled by defendants' actions. Defendant Hotfile Corp. is, therefore, contributorily liable for the unauthorized reproduction and distribution of plaintiffs' copyrighted works, including those listed on Exhibit A hereto, in violation of the Copyright Act, 17 U.S.C. § 106.

62. Defendant Hotfile Corp. is separately liable under the Copyright Act for the infringing acts of its Hotfile users as a vicarious copyright infringer. Defendant Hotfile Corp. had the right and ability to supervise and control its Hotfile users' infringing activity as set forth above, including without limitation by terminating infringing users or blocking their access to the Hotfile website and service, by policing its computer service to disable access to infringing content, and/or by implementing any number of industry standard technologies or policies that would have substantially curtailed infringing uses of Hotfile. In addition, at all relevant times Defendant Hotfile Corp. derived a financial benefit attributable to its users' copyright infringement, including infringement of plaintiffs' copyrights. Copyrighted works acted as a draw that attracted users, to whom Hotfile in turn sells "Premium" subscriptions. Defendant

Hotfile Corp. is therefore vicariously liable for the unauthorized reproduction and distribution of plaintiffs' copyrighted works, including those listed on Exhibit A hereto, in violation of the Copyright Act, 17 U.S.C. § 106.

63.     Defendant Titov is jointly and severally liable for each act of infringement for which Hotfile Corp. is liable because he personally directed and participated in, and benefited from, Hotfile Corp.'s infringing conduct as alleged herein, and has been the guiding spirit behind and central figure in Hotfile Corp.'s infringing activities.

64.     Defendants Does 1-10 are liable under the Copyright Act for the acts of infringement identified above, for acting in concert with defendants Hotfile Corp. and Titov to operate Hotfile and/or for unlawfully inducing, knowingly facilitating, and profiting from copyright infringement by Hotfile users.

65.     The foregoing acts of infringement by defendants have been willful, intentional and purposeful, in disregard of and indifferent to plaintiffs' rights.

66.     As a direct and proximate result of defendants' infringement of plaintiffs' exclusive rights under copyright, plaintiffs are entitled to damages as well as defendants' profits pursuant to 17 U.S.C. § 504(b).

67.     Alternatively, plaintiffs are entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

68.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

69.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, plaintiffs great and irreparable injury that cannot fully be compensated

for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C.

§ 502, plaintiffs are entitled to a preliminary and permanent injunction prohibiting further

infringements of their copyrights and exclusive rights under copyright.

WHEREFORE, plaintiffs pray for judgment against all defendants as follows:

A.  For a preliminary and permanent injunction enjoining defendants and their respective

officers, agents, servants, employees, and attorneys, and all persons in active concert or

participation with each or any of them, from directly committing, aiding, encouraging, enabling,

inducing, causing, materially contributing to, or otherwise facilitating the unauthorized

reproduction or distribution of copies of plaintiffs' copyrighted works.

B.  For all damages to which plaintiffs may be entitled, including defendants' profits, in

such amounts as may be found.  Alternatively, at plaintiffs' election, for statutory damages in the

maximum amount allowed by law.

C.  For prejudgment interest according to law.

D.  For plaintiffs' attorneys' fees, and full costs and disbursements in this action.

E.  For such other and further relief as the Court may deem proper and just.

Dated: February 8, 2011

By: _Karen L. Stetson_____

Karen L. Stetson

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305-416-6880
Fax: 305-416-6887

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice To Be Filed*)
Duane C. Pozza (*Pro Hac Vice To Be Filed*)
Luke C. Platzer (*Pro Hac Vice To Be Filed*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Phone: 202-639-6000
Fax: 202-639-6066

*Attorneys for Plaintiffs*