# EXHIBIT D

**Lundy, Rochelle P.**

| | |
|---|---|
| **From:** | Pozza, Duane |
| **Sent:** | Wednesday, February 16, 2011 3:33 PM |
| **To:** | Janet Munn |
| **Cc:** | Platzer, Luke C; Felix Rodriguez; Fabrizio, Steven B |
| **Subject:** | RE: Disney Enterprises, Inc., et al. vs. Hotfile Corp., et al. |

Dear Janet:

I am writing in response to your February 15 letter regarding the relief that plaintiffs have requested to preserve critical evidence in this case that is at risk of spoliation.  We have repeatedly outlined the requested relief and the grounds for seeking it, in a letter served on defendants on February 8 and forwarded to you on February 9, on calls on February 10 and 11, and in a separate email on February 11.  As noted below, defendants have refused to agree to much of the requested relief outright.  Defendants have said they will agree to at least temporarily preserve some but not all categories of data and other evidence as we have requested, and, as noted below, are being evasive as to preserving the remaining categories of evidence.  In fact, some of the most critical evidence in this case – including evidence showing the downloads of files by particular users that Hotfile uses to calculate payments to users under the Affiliate programs – is not being preserved.

Initially, defendants have objected to the narrow expedited discovery that plaintiffs seek.  On this point, the plaintiffs respectfully disagree and believe there is good cause to order such relief to ensure that evidence is not spoliated before production later in the case.  Contrary to the assertions in your letter, we are not seeking expedited discovery merely to seek early merits discovery or to attempt to mitigate defendants' data preservation burdens – though we have pointed out to you that the requested expedited discovery will in fact alleviate any of defendants' preservation burdens in response to your objections.

Moreover, your email references unnamed constitutional, statutory, and privacy rights that you believe will be implicated by expedited discovery, but you have not identified any such rights or even how they might reasonably be implicated.  Expedited discovery of content reference data and content files would not involve production of personal user information.  Likewise, the expedited Doe discovery merely seeks disclosure of individuals operating or being paid by Hotfile – individuals engaged in a business transaction with Hotfile.  Those user identities are not subject to protection by any statutory or other right of which we are aware.

Second, as to all of the documents that we are seeking to have preserved, defendants have continued to avoid agreeing to relief in a form that would be ordered by the court.  As I explained in my February 11 email, court-ordered preservation is necessary to ensure that plaintiffs receive meaningful relief against the risk of spoliation.  We have now raised this point on multiple occasions and you have not responded, and thus we understand that you are refusing to agree to such court-ordered relief, even as to the limited set of data that defendants say they will preserve for the time being.  Please clarify immediately if our understanding is incorrect.

Third, there are still gaps in the categories of documents we have outline where it does not appear that defendants are preserving critical evidence.

Category #1:  While you indicate that defendants have agreed to preserve information on users "set forth above," the information that you indicate that defendants maintain primarily relates to identifying content files.  You state that defendants will preserve "any identifying information regarding content file uploaders received by Hotfile, such as IP addresses and e-mail addresses."   But, while that evidence must indeed be preserved, that is

not all the evidence that Hotfile generates or keeps regarding its users. Most obviously, Hotfile allows for user registration and sells "Premium" subscriptions to users, which means that Hotfile must collect more extensive data as to the accounts of those users. Further, registered users can view information about their uploaded content files, which means that Hotfile must keep track of uploads by each registered user.

Moreover, while you state that "Hotfile does not store information about users who download files," it is clear that Hotfile receives users' download request information. It is part of the data that a downloading user sends to Hotfile to initiate the download transmission. What we understand you to be saying is that Hotfile does not preserve this data in the ordinary course. Even if that were true, given the relevance of the data to this suit and the ease of preserving it, Hotfile plainly now has the obligation to do so.

Further, it is clear that Hotfile actually utilizes user download information in conducting its business. In particular, Hotfile restricts non-Premium users' download speeds and frequency, which means that Hotfile must collect information about those users' download requests to regulate their activity. Hotfile also states on its "Affiliate" page that, for purposes of paying users for downloads of their uploaded content, Hotfile only counts a download of a particular file from a Premium user once. This too shows that Hotfile is receiving and analyzing data about Premium users' downloads. And Hotfile also states on its "Affiliate" page that it only "count[s]" downloads from specified countries, indicating that it must use downloading user data to identify the user's country of origin.

In any event, these are just examples of user information that defendants appear to be maintaining based on publicly available analysis of Hotfile's service, as plaintiffs are simply not in a position to know all of the specific information that defendants keep about users. Therefore, plaintiffs are requesting that all evidence about users – including but not limited to their download activity – be preserved. This entire category of information is potentially relevant to the issue of direct infringement by Hotfile users. Defendants' answer to date simply avoids stating that they will preserve such data.

Category #3: In your latest letter, you clarify that defendants are storing uploaded file name information. As for download information by country, I note again that Hotfile itself claims that it "count[s]" downloads of content files when calculating Affiliate payments based in part on the country location of the downloading user. You state that Hotfile does not "store" information on downloads by country, but Hotfile clearly must receive and use such information, and therefore that information should be preserved going forward.

Category #4: As you know, there are a number of "Affiliate" programs by which Hotfile pays its users for certain activities that encourage infringement: the "Affiliate" program for registered users for downloads of their upload files, for "referrals," and for site owners who direct users to Hotfile. Hotfile must preserve all evidence related to identifying recipients of those payments, the amounts of such payments, and any data that it uses to calculate payments. Defendants' latest response continues to be unclear, as defendants still have not agreed to produce the underlying data that they receive in order to determine how much to pay these "Affiliates"— for example, the URLs of site owners who register for the site owner Affiliate program. (To be entirely clear, as I believe we have been, "third-party link sites" refers to those website operators paid under the Affiliate program for site owners.) In short, there is additional data that defendants appear to be studiously avoiding claiming that they will preserve.

Categories #6 & 7: We respectfully disagree that these requests, which were included in our February 8 letter but to which defendants only now object, are overly broad. Hotfile's very business model is the subject of this lawsuit. As alleged in the complaint, virtually everything that Hotfile does facilitates copyright infringement – that is its reason for operating. We can reasonably expect that basic communications with users and other website operators and internal communications regarding Hotfile would constitute central evidence in

this case, on topics such as Hotfile's inducing messages to users, Hotfile's ability to control infringement, Hotfile's knowledge of infringement, Hotfile's awareness of "red flags" of infringement, Hotfile's profiting from infringement, Hotfile's actions as to identified infringers, Hotfile's responses to copyright owner notices, and many others.  Defendants confuse their preservation obligations and their production obligations in objecting that these are not sufficiently specific.  For purposes of preserving relevant categories of evidence (as opposed to eventually producing them), there is simply no way to further parse out categories of communications that would be relevant or non-relevant at the stage. Preserving all of them is the only way to ensure that no critical email communications are somehow not preserved because defendants unilaterally conclude they are not relevant.

Moreover, in this regard, defendants' response is mere gamesmanship.  At this stage, defendants could only preserve documents by broad category.  For instance, Hotfile has a web-based email system for communications with users.  The suggestion that Hotfile would determine what to preserve on an email-by-email basis, based on the content of the communication, is impractical and makes no sense.  Hotfile must simply preserve all such communications, with issue of relevance for discovery purposes to be left for discovery. Again, defendants appear to be fabricating reasons to object to preserving critical evidence. Defendants are in the business of storing massive quantities of data, and these kinds of documents will be much smaller in comparison; they are not going to be burdensome to preserve.  There should be no issue with preserving such textbook relevant evidence.

Category #8:  While we do not believe this category is overly broad, we will agree to narrow and clarify it.  We understand that Hotfile engages at least some third parties to store data on its behalf, such as Google for its Google Analytics and email services.  That Google-based data must be preserved.  Hotfile may also engage payment processors to store some payment information, for example, and that information would need to be preserved.  For all the information we have identified above in Categories 1 through 7, we simply request that defendants preserve such information, even if in the possession of third parties, to the extent that it is in defendants' possession, custody, or control.

Regards,

Duane

-----Original Message-----
From: Felix Rodriguez [mailto:frodriguez@rascoklock.com]
Sent: Tuesday, February 15, 2011 6:02 PM
To: Fabrizio, Steven B; Pozza, Duane
Cc: Janet Munn
Subject: Disney Enterprises, Inc., et al. vs. Hotfile Corp., et al.

Dear counsel:

Attached, Please find correspondence from Janet Munn.

Regards,

FELIX X. RODRIGUEZ, ESQ.
Rasco Klock Reininger Perez Esquenazi Vigil & Nieto
283 Catalonia Avenue, Suite 200
Coral Gables, FL 33134
Tel: 305-476-7100
Fax:305-476-7102