# EXHIBIT J

ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

DEPUTY CLERK

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC., § § § Plaintiffs, § § v. § § HOTFILE.COM, ANTON TITOV, § WEBAZILLA, LLC, WEBAZILLA, B.C., § MONIKER ONLINE SERVICES, § LIMELIGHT NETWORKS, PAYPAL, § INC. DRAGOS BADAN, VINICIUS § ALVES, JOSEF DAVIS S. PRADE, § ROBERT PARELL, YUNZHI § COMPUTER, SHALLALAT GEN TR § LLC, ASHISH THAKUR, SATHEESH § DN, KEYANA IT CO. LTD., PREMIUM § ISSUER, MUHAMA KHAIRUL § IBRAHIM, , TOUCH DIAMOND § LIMITED, HOTFILE PREMIUM, § AYDINLAR KIRTASIYE OFFICE, § OZGUR, TAMER CEKICI, FATIH § OKTEN, JOHN DOES 1-500, § § Defendants. § | CIVIL ACTION NO. 3:09-CV-2396-D ECF SEALED |

## FILED UNDER SEAL

### DEFENDANTS HOTFILE.COM AND ANTON TITOV'S BRIEF IN SUPPORT OF MOTION TO: (1) DISMISS OR IN THE ALTERNATIVE QUASH SERVICE OF THE COMPLAINT AND SUMMONS (F.R.C.P. 12(b)(5)); AND (2) DISMISS FOR LACK OF PERSONAL JURISDICTION (F.R.C.P. 12(b)(2))

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Hotfile.com and Anton Titov by counsel, appearing specially and without consenting to personal jurisdiction in this Court, file this Brief in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction under F.R.C.P. 12(b)(2) and to Dismiss or Quash Service of the Complaint and Summons under F.R.C.P. 12 (b)(5) (the "Motion") as follows:

### I. INTRODUCTION

Defendant Hotfile Corporation d/b/a Hotfile.com ("Hotfile") is a company organized under the laws of Panama. It maintains offices only in Bulgaria. Hotfile's website provides

users the ability to upload files and generate personalized links through which those files can be shared. Its services are similar to those offered on websites such as Google® docs and others. (Declaration of Anton Titov in Support of Motion to Dismiss and Motion to Quash ("Titov Decl.") ¶ 8, Appendix ("App.") 2.)

Hotfile has been accused of copyright infringement based on the allegation that third party users of its service uploaded certain of Plaintiff's works, despite the fact that Hotfile's Terms of Service expressly prohibit such conduct. (Titov Decl. ¶ 8, Ex. 1-C, App. 2, 18.) Contrary to Plaintiff's allegations, Hotfile's business model in no way depends upon the dissemination of copyrighted material. (*Id.* ¶ 9, App. 3). Moreover, Hotfile has always promptly complied with take-down notices, consistently removing any allegedly infringing material—including Plaintiff's—typically within 24-72 hours of receiving a notice. (*Id.* ¶ 9, App. 3.) Furthermore, Hotfile provides copyright holders with special accounts that they can use to remove and block allegedly infringing materials. (*Id.* ¶ 10, App. 3.) After learning of this litigation, they created such an account for Plaintiff. (*Id.* ¶ 10, App. 3.) Had they been contacted by Plaintiff at any time prior to the litigation (other than through take-down notices), they would have done so earlier. (*Id.* ¶ 10, App. 3.)

Defendant Anton Titov ("Titov") is a Russian citizen residing in Bulgaria. (Titov Decl. ¶ 2, App. 2). Titov is a manager and minority shareholder of Hotfile. (*Id.* ¶ 4, App. 2) The sole basis for Plaintiff's assertion that Titov is subject to jurisdiction is the allegation that Hotfile is his corporate alter ego. (First Amended Complaint ("FAC"), ¶¶ 3.1(C), 6.2-6.5.)

Plaintiff, Liberty Media Holdings, LLP ("LMH" or "Plaintiff"), is a producer of gay pornography located in San Diego, California. (FAC, ¶ 3.1; *see also* Plaintiff's website at https://www.corbinfisher.com.) Plaintiff has filed several copyright actions in the past year based on based on its readily available and easily portable pornographic film and image content. (Exs. 3-7 at App. 40-164.) Plaintiff has taken a "scorched earth" approach against Hotfile and Titov, seeking large monetary sums without any prior attempt to work with them toward an appropriate and practicable solution. To date, Plaintiff has obtained an *ex parte* restraining order that would, if enforced without modification, compel Hotfile to cease operating and prevent it

-2-

from defending this litigation. Plaintiff has also requested massive monetary damages for contempt (a request that the Court has so far rejected). Plaintiff has taken these actions without having even attempted to properly serve process on Hotfile and Titov. Plaintiff's counsel affirmed that one of its goals is to put Hotfile out of business. (Declaration of James M. Chadwick in Support of Motion to Dismiss and Motion to Quash ("Chadwick Decl."), ¶ 3, App. 39.) However, service of process is a necessary precursor to an exercise of jurisdiction over defendants. Plaintiff cannot simply bypass this fundamental requirement.

Plaintiff apparently filed a complaint against Hotfile and Titov on December 16, 2009. Before effecting service, Plaintiff filed its first amended complaint—the operative complaint in this action—on January 6, 2010. (FAC, ¶ 2.1.) On January 20, 2010, the Court granted an *ex parte* temporary restraining order (the "TRO"). The TRO required Plaintiff to serve Hotfile and Titov with a copy of the summons and FAC in accordance with Rule 4 of the Federal Rules of Civil Procedure.

On January 21, 2010, Plaintiff attempted to serve Hotfile and Titov with process by emailing a copy of the FAC to Titov. There is no evidence of any other effort by Plaintiff to serve the summons and complaint, and certainly no evidence that service of the summons and complaint has been effected. Hotfile moves to quash Plaintiff's improper attempt at service. Titov was also improperly served and he lacks sufficient contacts with the United States to confer personal jurisdiction. He moves to dismiss the complaint as to himself.

## II. RELEVANT FACTS

### A. Both Hotfile And Titov Reside In Bulgaria

Hotfile is a Panamanian corporation. (Titov Decl. ¶ 6, Ex. 1-A, 1-B, App. 2, 6, 13.) Hotfile maintains offices only in Bulgaria. (*Id.* ¶ 7, App. 2.) Hotfile has, at all times, adhered to applicable corporate formalities. (*Id.* ¶¶ 11-13, Ex. 1-D, App. 3, 23.) It has multiple shareholders. (*Id.* ¶ 12, App. 3.) No assets of Hotfile have been improperly transferred to Titov. (*Id.* ¶¶ 13-14, App. 3.)

Titov is a Russian citizen residing in Bulgaria. (Titov Decl. ¶ 2, App. 2.) Titov is a manager and minority shareholder of Hotfile. (*Id.* ¶ 4, App. 2.) He does not own any real

-3-

property in the United States. (*Id.* ¶ 3, App. 2.) He does not pay income tax in the United States. (*Id.*) He does not pay property tax in the United States. (*Id.*) He does not conduct business or sell goods or services on behalf of himself in the United States.[1] (*Id.*)

**B.     Mr. Titov's Employment With Hotfile**

Plaintiff asserts personal jurisdiction over Titov solely on the basis of an alleged alter ego relationship between he and Hotfile. (FAC, ¶¶ 3.1(C), 6.2-6.5.) The allegations supporting PLAINTIFF's alter ego claim are conclusory. They are also false. They were verified only by Plaintiff's attorney, who has no personal knowledge of Hotfile's business structure or of Titov's role in the business. (FAC, pg. 42.)

In fact, Mr. Titov is only a minority shareholder of Hotfile. (Titov Decl. ¶ 4, App. 2.) He has never used corporate funds for his own personal use. (*Id.* at ¶¶ 13, App. 3.) He has never diverted funds from Hotfile. (*Id.* ¶ 13-14, App. 3.) In sum, Mr. Titov is no more than a manager and minority shareholder of Hotfile. His employment with Hotfile does not even approach the relationship necessary to confer jurisdiction via an alter ego relationship.

**C.     Plaintiff's Insufficient Service Attempt**

Although the declarations submitted by Plaintiff in support of its Motion for Contempt seek to obscure its failure to serve the summons and complaint in this action in accordance with United States and international law, the fact remains that they have not done so. On January 21, 2010, Plaintiff sent a PDF copy of the FAC to Mr. Titov's email address. (Titov Decl. ¶ 16, Ex. 1-E, App. 4, 16.) Plaintiff did not email a summons with the FAC. (*Id.*) Plaintiff did email a request for waiver of service with the FAC without the necessary attendant copies of the request for waiver of service or a prepaid means to facilitate its return. (*Id.*) Neither Hotfile nor Titov

---

[1]     Titov owns a majority of shares in a separate U.S. corporation entitled Lemuria Corporation ("Lemuria"). Lemuria is incorporated under the laws of Florida. Mere ownership of a U.S. corporation is not sufficient to convey general jurisdiction. *All Star Enterprise, Inc. v. Buchanan*, 298 S.W.3d 404, 418 (2009) (ownership of a corporation that does business in the forum, without more, is insufficient to establish jurisdiction). Lemuria is not a party to this action, and in any event Titov is not the alter ego of Lemuria either. (Titov Decl. ¶5, App. 2.)

-4-

agreed to accept voluntary service in response to Plaintiff's email. (*Id.* ¶ 18, App. 4.) Hotfile and Titov are unaware of any additional attempts at service. (*Id.* ¶ 17, App. 4.)[2]

Between January 25, 2010 and January 27, 2010, counsel for Plaintiffs sent copies of pleadings and orders to counsel for Hotfile and Titov. However, Plaintiff's counsel was expressly informed that Hotfile and Titov were not waiving Plaintiff's failure to properly serve them with the summons and complaint, and that defense counsel was not authorized to accept service on their behalf. (Chadwick Decl. ¶ 2, App. 39.)

Plaintiff's counsel subsequently sent a copy of the TRO (but not the complaint or summons) to its business address at Iztok, bl.22, vh.A, Sofia, 1113, Bulgaria. (Titov Decl. ¶ 19, App. 4, Corrected Randazza Decl. ¶ 2; Gapp Decl. ¶ 10.) The TRO was delivered to Hotfile and Titov. (Titov Decl. ¶ 19, Ex. 1-F, App. 4, 36, Corrected Randazza Decl. ¶ 2.) That delivery demonstrates that Plaintiff is aware of Hotfile's Bulgarian place of business. (Gapp Decl. ¶ 10.)

III. <u>ARGUMENT</u>

    A.    **Hotfile And Titov Have Not Been Properly Served In This Litigation**

Rule 12(b)(5) provides a means to challenge plaintiff's improper service. Fed. R. Civ. Proc. 12(b)(5). Once a defendant asserts a 12(b)(5) claim, plaintiff bears the burden to establish that service was proper. *Aetna Bus. Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 436 (5th Cir. 1981). Upon a finding of improper service, the court must either dismiss the case or quash service and order proper service. *Neely v. Khurana*, 2008 WL 938904 *2, 2008 U.S. Dist. LEXIS 112134 *5 (N.D. Tex. 2008) ("As an alternative to dismissal, a district court has discretion to quash service and give the plaintiff an additional opportunity to properly effect service.").

---

[2] Plaintiff's Motion for Contempt sites a failed attempt to serve unidentified papers at an address in Panama by UPS. (Corrected Declaration of Marc Randazza Supporting Plaintiff's Motion For Entry Of Order Of Contempt Against Defendants Hotfile.com And Anton Titov, filed January 29, 2010 ("Corrected Randazza Decl.") ¶ 2; Supplemental Declaration of Eric Gapp Supporting Plaintiff's Motion For Entry Of Order Of Contempt Against Defendants Hotfile.com And Anton Titov, filed January 27, 2010 ("Gapp Decl.") ¶ 3.) But, Plaintiff does not allege that those "papers" included the summons or complaint or that any Hotfile representative actually received any papers in Panama. (*Id.*)

Rule 4 of the Federal Rules of Civil Procedure governs service of process. Fed. R. Civ. Proc. 4; *see also* Northern District of Texas Amended Misc. Order 30 (""On and after the effective date hereof, service of process shall be made in accordance with the provisions of Rule 4, Fed.R.Civ.P."). Where, as here, Plaintiff seeks to serve foreign defendants, service must comply with Rule 4, Subsections (f) and (h).

Plaintiff attempted service of process only by email. (Titov Decl. ¶ 17, Ex. 1-E, App. 4, 25; Gapp Decl. ¶ 2.) Email service is invalid absent prior court approval. Fed. R. Civ. Proc. 4(f)(3) (allowing deviation from specifically listed means of service only "as the court orders"); Northern District of Texas Amended Misc. Order 30; Tex. R. Civ. P. 106 (allowing alternate service only "upon motion"); *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("The decision to allow alternative methods of service under Rule 4(f)(3) is committed to the court's 'sound discretion.'"); *Nabulsi v. Al Nahyan*, 2009 WL 1658017 at *5, fn 20, 2009 U.S. Dist. LEXIS 49661 at *15, fn 20 (S.D. Tex. 2009) (denying leave to serve by alternate means under Rule 4(f)(3)). Because Plaintiff did not obtain prior court approval to serve Hotfile and Titov by email, its January 21, 2009 attempt is invalid.[3] Although Plaintiff apparently sought an order allowing service by email, Hotfile and Titov are not aware of any order granting its request.[4] On the contrary, in the January 20, 2010 TRO, the Court specified that the complaint must be served according to the provisions of Rule 4. (*See* TRO, ¶ V.)

Defendants anticipate that Plaintiff will assert that Hotfile and Titovs' actual notice of the complaint and retention of counsel somehow justify its failure to effect proper service. But, actual notice of a pending lawsuit is irrelevant to issue of whether service has been legally

---

[3] Plaintiff's request that Hotfile and Titov waive service was likewise invalid. A valid waiver request must include a copy of the complaint, two copies of the notice of waiver, and a prepaid means of returning service. Fed. R. Civ. Pro. 4(d)(1)(C). Plaintiff sent one copy of the FAC and a single notice of waiver to Hotfile and Titov collectively. (Titov Decl. ¶¶ 16-17 at App. 4.) Plaintiff did not include a prepaid method to return the waiver. (*Id.*) Because its attempt did meet the Rule 4 requirements, plaintiff cannot avail itself of any cost-shifting benefits afforded under that provision.

[4] Because this matter is presently sealed pursuant to this Court's order, defendants are unable to view the Docket for this matter and rely on papers provided by Plaintiff's attorneys for knowledge of the pleadings to date.

-6-

effectuated. Service on an attorney who is not authorized to accept service likewise does not comply with the Federal Rules of Civil Procedure. *Ransom v. Brennan*, 437 F.2d 513, 518-19 (5th Cir. 1971); *cert. denied* 403 U.S. 904, 91 S.C.T. 2205. The Court should dismiss the complaint, or should order Plaintiff to effect service in compliance with the provisions of Rule 4 of the Federal Rules of Civil Procedure.

### B. Any Service Must Be Accomplished Through Bulgaria's Central Authority Under The Hague Convention

Plaintiff is aware of Hotfile's Sofia, Bulgaria address. (Titov Decl. ¶ 19, Ex. 1-F, App. 4, 25; Corrected Randazza Decl. ¶ 2; Gapp Decl. ¶ 3.) Plaintiff is likewise aware of the validity of that address. (Titov Decl. ¶ 19, Ex. 1-F, App. 4, 25; Corrected Randazza Decl. ¶ 2; Gapp Decl. ¶ 3.) Plaintiff sent TRO papers (but not the summons or complaint) to that address. (Titov Decl. ¶ 19, Ex. 1-F, App. 4, 25; Corrected Randazza Decl. ¶ 2, Gapp Decl. ¶ 3.)

Hotfile maintains its business operations only in Bulgaria. (Titov Decl. ¶ 7, App. 2.) Titov also works in Bulgaria. (*Id.* ¶ 7, App. 2.) Titov and Hotfile's usual address to receive business mail is the Sofia, Bulgaria address where Plaintiff sent its TRO papers. (*Id.* ¶¶ 7, Ex. 1-F, App. 2, 4, 25.) Under the Texas long-arm statute and the mandate of the United States Supreme Court, both can be properly served only in Bulgaria, where their actual business operations are located. Tex. R. Civ. P. 106(b) (clarifying that delivery to a defendant "in person" under 106(a)(1) means "the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found"); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700, 108 S.Ct. 2104, 2108 (1988) (the long-arm statute of the state in which jurisdiction is sought determines available situs for service of a defendant).

Bulgaria is a member of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Convention"). Hague Convention, Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6338. Service on defendants residing in signatory countries must be served in accordance with the Hague Convention's provisions. Fed. R. Civ. Proc. 4(f)(1) (service must comply with "internationally agreed means of service . . . such

-7-

5719749v.1 136183/00001

as those authorized by the Hague Convention"); *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 383 (5th Cir. 2002); *Yarborough v. Mazda Motor Corp.*, 2009 WL 1033334 * 1, 2009 U.S. Dist. LEXIS 32134 *4 (N.D. Tex. 2009).

Among its other requirements, the Hague Convention requires service to be executed in the following manner:

> Article 3
> The authority or judicial officer competent under the law of the Sate in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention.
>
> The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate.
> \*\*\*
>
> Article 5
> The Central Authority of the State Addressed shall itself serve the document or shall arrange to have it served . . .

Hague Convention, Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6338. Additionally, Bulgaria requires translation of the complaint and supporting materials. Hague Convention, Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6338, Declaration of Bulgaria on Article 5, Paragraph 3.

Parties to cases pending in the Fifth Circuit must accomplish service of a summons and complaint through a Hague Convention signatory's Central Authority. *Nuovo Pignone*, 310 F.3d at 384 (requiring service on an Italian defendant through Italy's Central Authority); *Yarborough*, 2009 WL 103334 at * 1, U.S. Dist. LEXIS 32134 *4, (requiring service on a Japanese defendant through Japan's Central Authority). Mail service of a complaint and summons is barred even to countries that otherwise consent to mail service of non-initiating litigation documents. *Nuovo Pignone*, 310 F.3d at 384 (treaty provisions condoning mail delivery of litigation documents do not apply to the summons and complaint). Bulgaria does not allow mail service of any litigation documents. Hague Convention, Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6338, Declaration of Bulgaria on Article 10.

The Texas long-arm makes no provision for service on a registered agent for service of process located in a foreign country. The only alternate service on foreign corporations

-8-

authorized by Texas' long-arm statute is service on its Secretary of State. Tex. Civ. Prac. & Rem. Code § 17.044 (designating the Texas Secretary of State as the agent for service of process for foreign corporations that do not have a place of business or registered agent in Texas). Service accomplished in this manner must be sent to a nonresident corporation's "home office." Tex. Civ. Prac. & Rem. Code § 17.045. However, the Fifth Circuit bars this manner of service where the corporation's "home office" is in a Hague signatory country. *Alternative Delivery Solutions, Ind. v. R.R. Donnelley & Sons Co.*, 2005 WL 1862631 *2, 2005 U.S. Dist. LEXIS 15949 *6 (W.D. Tex. July 8, 2005) ("service via the Texas Secretary of State is insufficient because it requires service by mail, which fails to comply with the Hague Convention under Fifth Circuit law"). Because alternate service would ential mail service on Hotfile's home office in Bulgaria, it is barred.

Therefore, Hotfile must be served in Bulgaria pursuant to the Hague Convention's requirements. Service on Titov is improper under any circumstances, because the court lacks personal jurisdiction over him. *Nabulsi*, 2009 WL 1658017 at *11, 2009 U.S. Dist. LEXIS 49661 at *29 (ordering re-service is improper where "plaintiffs have failed to establish that the court is able to exercise personal jurisdiction over [defendant]").

### C. The Court Lacks Personal Jurisdiction Over Mr. Titov

Rule 12(b)(2) provides a means to challenge personal jurisdiction over a defendant. Fed. R. Civ. Proc. 12(b)(2). Once raised by a defendant, plaintiff bears the burden of establishing the court's jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

A federal court's power to exercise personal jurisdiction over a nonresident defendant depends on: (i) whether an applicable state statute confers personal jurisdiction; and (ii) whether assertion of such jurisdiction comports with federal constitutional principles of due process. *Smith v. DeWalt Products Corp.*, 743 F.2d 277, 278 (5th Cir. 1984). A *prima facie* showing of jurisdiction requires plaintiff to produce evidence that, if believed, would be sufficient to establish personal jurisdiction. *Wilson*, 20 F.3d at 648; *Data Disc., Inc. v. Sys. Tech. Assoc.*, 557 F.2d 1280, 1285 (9th Cir. 1995). Conclusory allegations are not enough. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (a court is not bound to

-9-

"credit conclusory allegations, even if uncontroverted"). Because Titov does not engage in any of the conduct necessary to establish jurisdiction under Texas's long-arm statute, he is not subject to personal jurisdiction in this state.

Texas's long-arm statute allows personal jurisdiction to the extent permitted by the Due Process Clause of the Constitution. *Gundle Lining Constr. Corp. v. Adams County Asphalt*, 85 F.3d 201, 204 (5th Cir. 1996). The Due Process Clause requires that a non-resident defendant have "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington* 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945).

The minimum contacts standard can be satisfied in one of two ways. Plaintiff must show that the defendant is subject either to (i) general personal jurisdiction; or (ii) specific personal jurisdiction. *Wilson*, 20 F.3d at 647. Neither exists here.

### 1. Titov Is Not Subject To General Personal Jurisdiction In Texas

A defendant is subject to general personal jurisdiction only where his forum-related activities are substantial, continuous, and systematic. *Wilson*, 20 F.3d at 647. Titov does not have substantial, continuous, and systematic contacts with Texas or the United States.

Titov is a Russian citizen residing in Bulgaria. (Titov Decl. ¶ 2, App. 2.) He does not own any real property in the United States. (*Id.* ¶ 3, App. 2.) He does not pay income tax in the United States. (*Id.*) He does not pay property tax in the United States. (*Id.*) He does not conduct business or sell goods or services on behalf of himself in the United States. (*Id.*)

Because Titov lacks sufficient qualifying contacts with the United States, subjecting him to general personal jurisdiction "would deprive [him] of [his] due process liberty interests not to be subjected to suit in a distant forum with which [he has] little connection." *Wilson*, 20 F.3d at 651.

### 2. Titov Is Not Subject To Specific Personal Jurisdiction In Texas

A defendant may be held subject to specific jurisdiction only where he "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Panda Brandywine*, 253 F.3d at 868.

-10-

Plaintiff has not alleged that Titov purposely directed activities to Texas that gave rise to the allegations in its complaint. (FAC, ¶ 2.4(A)(3).) Plaintiff alleges only general jurisdiction, not specific jurisdiction, over Hotfile. (FAC, ¶ 2.4(A)(2).) It bases its jurisdictional claim exclusively on an alleged alter ego relationship between Titov and Hotfile.

### 3. Hotfile Is Not The Alter Ego Of Titov

Plaintiff asserts jurisdiction over Titov only on the basis of an alleged alter ego relationship between Titov and Hotfile. (FAC, ¶ 2.4(A)(2) ("Defendant Titov directed or caused to be directed Defendant Hotfile's actions in a manner consistent with the element of alter ego.").) To establish alter ego jurisdiction, Plaintiff must demonstrate such unity of interest and ownership between Titov and Hotfile that no separate entities exist so that failure to disregard the separate identities would result in fraud or injustice. *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 422 (5th Cir. Miss. 1980); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 903 (2d Cir. 1981) (to prove jurisdiction over an alter ego, plaintiff must show that defendant company is a "mere shell" for an individual stockholder).

The alter ego inquiry evaluates such factors as: (i) whether the alleged alter ego owns 100% of a company's stock; (ii) whether a company observes formalities; (iii) whether separate accounts and accounting systems are maintained; (iv) whether the alleged alter ego exercises complete authority over a company's general policy; and (v) whether the alleged alter ego has authority to exercise complete control over a company's day-to-day operations. *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990). Mr. Titov is a minority shareholder in Hotfile. (Titov Decl. ¶ 4, App. 2.) Hotfile is a Panama corporation that maintains corporate formalities. (*Id.* ¶ 11, App. 3.) Titov has never made personal use of Hotfile's assets or received personal payment from Hotfile except as compensation for his employment. (*Id.* ¶ 14, App. 3.) Titov lacks the authority to unilaterally direct the general policy or the day-to-day operations of Hotfile. (*Id.* ¶ 15, App. 3.) He is only one of many shareholders and must adhere to shareholder consensus votes on issues of both general policy and date-to-day operations. (*Id.* ¶ 12, App. 3.) This level of separation falls far short of the unity of interest necessary to confer jurisdiction based on alter ego status. *See e.g. Dalton*, 897 F.2d at 1363.

-11-

Plaintiff's conclusory alter ego allegations are based solely on the verification of its attorney, who lacks personal knowledge about Hotfile or Titov's involvement in the company. (FAC at pg. 42.) Each of the unsupported, conclusory allegations supporting PLAINTIFF's claim that Hotfile is the alter ego of Titov is false, as follows:

| Unsupported Allegation: | Inaccuracy: |
|---|---|
| There is a unity of ownership between Mr. Titov and Hotfile. (FAC ¶ 29.) | Hotfile is a corporation organized under the laws of Panama. Titov is a manager and minority shareholder of Hotfile. (Titov Decl. ¶ 4, Ex. 1-A, 1-B, App. 2, 6, 13.) |
| Mr. Titov has commingled funds with Hotfile. (FAC ¶ 29.) | Hotfile maintains a corporate bank account that it uses only for business transactions and that is entirely separate from Titov's personal bank account. Titov has never used corporate Hotfile funds for his own personal use. (*Id.* ¶ 13, App. 3.) |
| Mr. Titov has improperly diverted funds from Hotfile. (FAC ¶ 29.) | As an employee, Titov is compensated through dividend payments from Hotfile, but he has never personally received any other type of assets from Hotfile, or diverted any assets from Hotfile. (*Id.* ¶ 14, App. 3.) |
| Mr. Titov has treated Hotfile's assets as his own. (FAC ¶ 29.) | Hotfile maintains a corporate bank account that it uses only for business transactions and that is entirely separate from Titov's personal bank account. Titov has never used Hotfile assets for his own personal use. (*Id.* ¶ 13, App. 3.) |
| Hotfile has not held director and shareholder meetings. (FAC ¶ 29.) | Hotfile has, at all times, held regular director and shareholder meetings. (*Id.* ¶ 11, Ex. 1-D, App. 3, 23.) |
| Hotfile has not maintained corporate meeting minutes. (FAC ¶ 29.) | Hotfile has maintained corporate meeting minutes. (*Id.* ¶ 11, Ex. 1-D, App. 3, 23.) |
| Mr. Titov has failed to adequately fund Hotfile. (FAC ¶ 30.) | Hotfile has, at all times, maintained adequate funding. (*Id.* ¶ 12, App. 3.) |
| Hotfile is a mere instrumentality for Mr. Titov. (FAC ¶ 30.) | Hotfile is a corporation organized under the laws of Panama. (*Id.* ¶ 6, App. 2.) It has, at all times, adhered to corporate formalities. (*Id.* ¶ 11, Ex. 1-D, App. 3, 23.) Titov is only a minority shareholder. (*Id.* ¶ 4, App. 2.) Titov must adhere to the consensus of shareholder votes on issues of both general policy and date-to-day operations. (*Id.* ¶ 15, App. 3.) |

-12-

| Unsupported Allegation: | Inaccuracy: |
|---|---|
| There is no individuality or separateness between Mr. Titov and Hotfile. (FAC ¶ 30.) | Hotfile has, at all times, adhered to corporate formalities. (*Id.* ¶ 11, Ex. 1-D, App. 3, 23.) Titov is an officer of Hotfile and does not have authority to unilaterally direct the general policy or the day-to-day operations of Hotfile without the approval and vote of its shareholders. (*Id.* ¶ 15, App. 3.) Titov is only one of many shareholders and must adhere to the consensus of shareholder votes on issues of both general policy and Hotfile operations. (*Id.*) |
| Mr. Titov has diverted Hotfile funds to himself to the detriment of creditors and shareholders. (FAC ¶ 30.) | Other than to transfer dividend payments due to him as a minority shareholder, Hotfile has never conveyed any assets to Titov personally. (*Id.* ¶ 14, App. 3.) |

Seen side-by-side with the facts, it is clear that Plaintiff's conclusory allegations have no basis in truth. Moreover, the scope of Titov's actual employment with Hotfile does not constitute or even approach an alter ego relationship. *See e.g. Dalton*, 897 F.2d at 1363 (finding no alter ego jurisdiction even with 100 percent joint ownership of stock where separate books were kept and basic corporate formalities were maintained).

Based on Titov's lack of contacts with the United States in general and Texas in particular, and the absence of any legitimate basis for assertion an alter ego relationship with Hotfile, the Court should dismiss Plaintiff's complaint against Titov for lack of personal jurisdiction.

IV. **CONCLUSION**

Plaintiff has failed to properly effect service or process on either Hotfile or Titov. Indeed, it has not even attempted to serve the summons and complaint in compliance with United State and international law. Under those laws, as applied by the Fifth Circuit, Plaintiff is not entitled to an order permitting service by e-mail. Rather, service must be made in compliance with the Hague Convention. Furthermore, the premises for Plaintiff's assertion that Titov is subject to personal jurisdiction in this action are demonstrably false. Hotfile simply is not an alter ego of Titov, and no other basis for jurisdiction has been asserted.

-13-

5719749v.1 136183/00001

Hotfile respectfully requests that the Court dismiss the complaint or, in the alternative, quash service of the summons and complaint against it and require proper service in accordance with the procedures set forth in the Hague Convention. Titov respectfully requests that the Court dismiss the complaint as against him for lack of proper service and lack of personal jurisdiction.

Respectfully submitted,

By: /s/ Amanda Bush
Charles L. Babcock
State Bar No. 01479500
*Attorney In Charge*
JACKSON WALKER, L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6030
Facsimile: (214) 953-5822
Email: cbabcock@jw.com

Amanda L. Bush
State Bar No. 24042161
JACKSON WALKER, L.L.P.
301 Commerce, Suite 2400
Fort Worth, Texas 76102
Telephone: (817) 334-7269
Facsimile: (817) 334-7290
Email: abush@jw.com

**ATTORNEYS FOR DEFENDANTS
ANTON TITOV AND HOTFILE.COM**

## CERTIFICATE OF SERVICE

This is to certify that on the 4th day of February 2010, a true and correct copy of the foregoing *Defendants Hotfile.com and Anton Titov's Brief in Support of Motion to Dismiss* has been served as indicated below:

*Via Electronic Mail and First Class Mail:*
Marc J. Randazza
302 Washington Street, Suite 321
San Diego, CA 92103
Telephone: (619) 866-5975
Facsimile: (619) 866-5976
Email: marc@corbinfisher.com


Gary P. Krupkin
1116 Commerce Drive
Richardson, Texas 75081
Telephone: (972) 261-8284
Facsimile: (972) 671-3671
Email: krupkinlaw@gmail.com

*Amanda Bush*
Amanda L. Bush