# EXHIBIT U

FILED
CLERK U S DISTRICT COURT

SEP 19 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GARY FUNG, et al., <br><br> Defendants. | Case No. CV 06-5578 SVW(JCx) <br><br> REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: PLAINTIFFS' REQUEST FOR RULE 37 SANCTIONS |

This Report and Recommendation is submitted to the Honorable Stephen V. Wilson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.  SUMMARY

On August 21, 2007, plaintiffs filed a "Notice of Ex Parte Application and Ex Parte Application for a Report and Recommendation for Evidentiary Sanctions for Violation of Court's June 8 and August 10 Orders – Fees Requested" ("Ex Parte Application"), and a supporting declaration of Gianni P. Servodidio

1

("Servodidio I Decl.") with attached exhibits. Plaintiffs request that, as an evidentiary sanction for defendants' violation of this court's orders, direct infringement of each of plaintiffs' copyrighted works for which a dot torrent file has appeared on defendants' torrent sites be deemed established conclusively for purposes of this action.

On August 23, 2007, defendants submitted their Opposition to the Ex Parte Application ("Opposition") and supporting declarations of defendant Gary Fung ("Fung Decl.") and Jared R. Smith ("Smith Decl.") with accompanying exhibits.[1] On August 27, 2007, plaintiffs filed a Reply in Support of the Ex Parte Application ("Reply") and another supporting declaration of Gianni P. Servodidio ("Servodidio II Decl.") with an exhibit. The court held a hearing on this matter on September 17, 2007.

Based upon the court's consideration of the arguments and evidence presented, and the applicable law, plaintiffs' request for evidentiary sanctions should be granted in part and denied in part as discussed below.

## II. PROCEDURAL HISTORY

On September 26, 2006, plaintiffs filed a First Amended Complaint ("Complaint") against defendants for copyright infringement. Plaintiffs allege, inter alia, that defendants knowingly enable, encourage, induce, and profit from massive online piracy of plaintiffs' copyrighted works through the operation of their internet websites. The Complaint is predicated on theories of contributory infringement, secondary infringement, and inducement. Defendants filed an Answer on November 28, 2006.

On June 8, 2007, this court issued an order (the "June 8 Order") directing defendants to preserve and produce certain data relating to "defendants' websites,"

---

[1] The declarations of defendant Gary Fung and Jared R. Smith with attached exhibits in support of the Opposition to the Ex Parte Application were filed on August 23, 2007. The Opposition was subsequently filed on August 28, 2007.

2

which term the June 8 Order defined to include the two trackers associated with the Torrentbox and Podtropolis websites ("defendants' trackers").[2] More specifically, the court ordered the preservation and production of (i) redacted IP addresses of the users of defendants' websites who request dot-torrent files or hash links; (ii) the specific dot-torrent file or hash-links requested by users; (iii) the dates and times of such requests; (iv) reports from users' computers confirming that the actual download of the desired content item corresponding to the dot-torrent file or hash-link has been completed by the user; and (v) masked IP addresses of users who are downloading content items and who themselves seek the IP addresses of other users who have a desired content item (collectively "server log data").[3]

Based upon defendants' representation that they intended to seek review of the June 8 Order, this court temporarily stayed the portion of the June 8 Order

---

[2] The June 8 Order defined "defendants' websites" to include four websites (Isohunt, Torrentbox, Podtropolis and Ed2k-it) and defendants' trackers (one associated with Torrentbox, and one associated with Podtropolis)

[3] The discovery ordered produced was responsive to plaintiffs' document request nos. 23 and 25

Request No. 23 called for the production of "all documents that identify the dot-torrent files, torrents, hash-links, and releases that have been made available by, searched for, or downloaded by users of the Fung Websites and Trackers including documents that identify the users who have made available, searched for, or downloaded such dot-torrent files, torrents, hash-links, and releases"

Request No 25 called for the production of "all documents, including server logs, databases of a similar nature, or reports derived from such logs or databases, that [defendants] maintain, have ever maintained, or have available that record the activities of the Fung Websites and Trackers or their users, including documents concerning . . .Electronic communications of any type between the Fung Websites and Trackers and users;  . . Logs of user activities; . . . Logs or records of dot-torrent files or torrents made available, uploaded, searched for, or downloaded on Ishohunt, Torrrentbox or Podtropolis; . . Logs or records of hash-links or messages containing hash-links made available, searched for or otherwise obtained at Ed2k-it, and . . . Logs or records of releases documented, searched for, or reviewed on Isohunt."

3

which required defendants to preserve and produce certain server log data until June 22, 2007 – defendants' deadline to seek review. See Local Rule 72-2.1.

On June 25, 2007, defendants sought review of only the portion of the June 8 Order which awarded attorneys' fees and costs. Judge Wilson denied the motion for review on July 25, 2007.

On August 10, 2007, this court issued an order (the "August 10 Order") directing defendants to comply with the June 8 Order, and accordingly to produce the server log data for defendants' trackers, including event-by-event user communications with defendants' trackers tied to/correlated with the corresponding masked IP address, file name and date and time of communication and, if applicable, completed content download ("event-by-event data").[4] The court cautioned defendants that the failure to produce documents in compliance with the August 10 Order by August 16, 2007, or any future failure to comply with defendants' discovery obligations or other discovery orders might result in a recommendation to Judge Wilson to impose further monetary sanctions as well as non-monetary sanctions in a form authorized by Fed. R. Civ. P. 37(b)(2) and/or other applicable law, including but not limited to evidentiary sanctions, an adverse jury instruction, and/or terminating sanctions. Defendants did not seek a stay, reconsideration, or review of the August 10 Order.

On August 17, 2007 – the day after the production deadline set in the August 10 Order – defendants' counsel advised plaintiffs' counsel that they could

---

[4] The August 10 Order, which granted "Plaintiffs' Ex Parte Application to Enforce Compliance with Court Orders and Compel Deposition of Gary Fung – Fees Requested," filed July 20, 2007, was e-mailed to all counsel on the date it was issued, i.e., August 10, 2007 During the hearing on this matter, defendants' counsel confirmed that he had in fact received the August 10 Order on August 10th

4

not currently comply with the August 10 Order.[5] (Servodidio I Decl. ¶ 6, Ex. 7). As of the date of the hearing on this matter – September 17, 2007 – defendants had yet to produce the event-by-event data.

### III. PERTINENT LAW

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides in pertinent part:

> If a party. . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; . . .

Fed. R. Civ. P. 37(b)(2)(A).

"Rule 37(b)(2) contains two standards – one general and one specific that limit a district court's discretion. First, any sanction must be 'just'; second the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." Navellier v. Sletten, 262 F.3d 923, 947 (9th Cir. 2001) (citing Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707-09 (1982)), cert. denied, 536 U.S. 941 (2002). "Sanctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." Id. "In the Ninth Circuit, sanctions are appropriate only in 'extreme circumstances' and where the violation is 'due to willfulness, bad faith, or fault of the party.'" Fair Housing of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002) (citing United

---

[5] At the hearing on this matter, defendants' counsel indicated that it was not until *after* the August 10 Order was issued that defendant Fung undertook to determine what would be required to produce the event-by-event data.

5

States v. Kahaluu Constr. Co., Inc., 857 F.2d 600, 603 (9th Cir. 1988)), cert. denied, 537 U.S. 1018 (2002). "Disobedient conduct not shown to be outside the litigant's control meets this standard." Fair Housing of Marin, 285 F.3d at 905; Henry v. Gill Indus. Inc., 983 F.2d 943, 948 (9th Cir. 1993).

The court may, in deciding whether to grant a motion for sanctions, "properly consider all of a party's discovery misconduct . . . including conduct which has been the subject of earlier sanctions." Payne v. Exxon Corp., 121 F.3d 503, 508 (9th Cir. 1997); Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990), cert. denied, 498 U.S. 1109 (1991).

In the context of assessing whether the more drastic remedy of terminating sanctions is appropriate, courts are to consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."[6] Connecticut General Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007); Malone v. United States Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987), cert. denied, 488 U.S. 819 (1988); Kahaluu Constr. Co., Inc., 857 F.2d at 603 & n.5 (discussing sanction order taking plaintiff's allegations as established and awarding judgment to plaintiff on that basis); Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc., 67 F.3d 766, 772 (9th Cir. 1995) (same), cert. denied, 519 U.S. 815 (1996).

Since the "first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a . . . dismissal sanction[,] . . . the key factors are prejudice and the availability of lesser sanctions." Henry, 983 F.2d at

---

[6]The fifth factor has three sub-parts: (1) whether the court has considered lesser sanctions; (2) whether the court has tried them; and (3) whether the court has warned the recalcitrant party about the possibility of case dispositive sanctions. Connecticut General Life Ins. Co., 482 F.3d at 1096.

6

948 (citing Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990)); Valley Eng'r, Inc. v. Electric Eng'r Co., 158 F.3d 1051, 1056 (1998) ("factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive"), cert. denied, 526 U.S. 1064 (1999). This "test" is not mechanical. Connecticut General Life Ins. Co., 482 F.3d at 1096. "It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow." Id.

## IV. DISCUSSION

### A. Defendants' Contentions Should Be Rejected

Plaintiffs contend that defendants' conduct in failing to comply with the June 8 and August 10 Orders with respect to the production of server log data data for defendants' trackers constitutes willful disobedience. This court agrees. Although defendants offer various explanations for their failure to produce the server log data for their trackers, these explanations do not excuse defendants' non-compliance with the court's orders.[7]

First, defendants claim that they were unaware of their obligation to preserve and produce server log data for their trackers. (Opposition at 2; Fung Decl. ¶ 3). Specifically, defendants assert that they did not understand the June 8 Order to require the production of event-by-event data for their trackers, and that the court effectively broadened the scope of the June 8 Order by ordering defendants to produce such data in the August 10 Order. (Opposition at 2; Fung Decl. ¶ 3). The court rejects this argument.

The June 8 Order is unambiguous. It expressly defined defendants' websites to include defendants' trackers, and expressly ordered the preservation

---

[7] To the extent defendants request the appointment of a special master at this stage in the proceedings, this court recommends such request be denied. (Opposition at 4).

and production of server log data which it defined as: "(i) redacted IP addresses of the users of defendants' websites who request dot-torrent files . . . ; (ii) the specific dot-torrent file . . . requested by users; (iii) the dates and times of such requests; (iv) reports from users' computers confirming that the actual download of the desired content item corresponding to the dot-torrent file . . . has been completed by the user; and (v) masked IP addresses of users who are downloading content items . . . ." Although the June 8 Order does not use the term "event-by-event" data, it is implicit in such order that the data sets correspond to one another and are "event-by-event."[8] Thus, the August 10 Order did not expand the scope of the June 8 Order. Rather it simply enforced defendants' compliance with the June 8 Order by directing defendants to produce server log data for their trackers.

Even if, however, defendants were unclear or uncertain of their obligations under the June 8 Order, they do not dispute that as of August 10, 2007, when they received the August 10 Order, they knew that they were obligated to produce the event-by-event data. Defendants have nonetheless failed to preserve and produce such data. If defendants were truly unclear or uncertain of their obligations under the June 8 Order and truly believed that the August 10 Order improvidently expanded the scope of the June 8 Order, defendants could have sought clarification, reconsideration, or review of the pertinent portions of such orders. By eschewing such potential avenues of relief and instead, ignoring their duty to

---

[8] Defendants point to language in the June 8 Order which afforded defendants certain flexibility in the manner of preserving and producing the data called for by the June 8 Order. (Opposition at 2) (quoting June 8 Order: "the court does not by this order mandate a particular method by which defendants are to preserve the Server Log Data. . . For example, if defendants are able to preserve and produce all of the Server Log Data through Google Analytics, nothing in this order precludes defendants from satisfying their obligations under this order in that fashion"). The language in issue did not relieve defendants of their obligation to preserve and produce the corresponding data sets called for by the June 8 Order. As noted above, however, even assuming the June 8 Order was ambiguous on this front, defendants do not dispute that the August 10 Order – with which defendants have failed to comply – clearly directed defendants to produce event-by-event tracker data.

8

preserve and produce the server log data for their trackers, defendants have engaged in a calculated course of conduct. See Commodity Futures Trading Comm'n, 67 F.3d at 771 (finding defendants' misconduct willful because defendants ignored discovery request and failed to seek a protective order).

Second, defendants contend that they are unable to comply with the court's orders due to the burden and costs associated with the production of event-by-event data for defendants' trackers, and that they should be relieved of the obligation to preserve and produce such data given plaintiff's asserted lack of need for such discovery. (Opposition at 3-6, Fung Decl. ¶¶ 3-5).[9] This court carefully considered the evidence and arguments presented by counsel in conjunction with the June 8 Order and August 10 Order before issuing the orders. Defendants did not then present the court with the evidence of "burden" that they now claim exists. The court will not excuse defendants' failure to comply with court orders based upon evidence that defendants could have, but failed to present to the court for consideration in connection with such matters. Defendants' counsel conceded during the hearing in this matter that defendant Fung did not even undertake to determine what would be necessary to preserve and produce the event-by-event data until *after* this court had already issued the August 10 Order, despite indisputably being on notice at least twenty days before then, that a request seeking such relief was pending before the court. Defendants waited until the day after production of the event-by-event tracker data was due pursuant to the

---

[9] Defendants represent that (i) the event-by-event data from defendants' trackers is only kept in the Random Access Memory of defendants' trackers; (ii) defendant do not currently retain the event-by-event data; (iii) defendants' tracker servers do not have the capacity to record, store or copy the event-by-event data on an ongoing basis; (iv) retention of the event-by-event data would require the installation of hardware; and (v) the production of event-by-event data includes personally identifying information, not considered by the parties or the court in the June 8 Order; and (vi) developing a program to parse the tracker logs and automate hashing of the identified fields of personally identifying information would take up to three months and cost $50,000. (Fung Decl ¶¶ 3-5).

9

August 10 Order to inform plaintiffs of their alleged inability to comply with the August 10 Order. (Smith Decl. ¶ 2, Ex. A; Servodidio I Decl. ¶ 6, Ex. 7).[10] Even at that point, defendants did not seek a stay, reconsideration, or review the August 10 Order. Although defendants, on August 17, 2007, advised plaintiffs' counsel that defendants intended to seek ex parte relief, defendants did not do so. Instead, they persisted with their non-compliance with the August 10 Order.[11]

As the history above suggests, defendants' failure to comply with the court's orders was not due to events outside of their control.[12] In sum, this court concludes that defendants have willfully disobeyed the June 8 Order and the August 10 Order.

///

---

[10] Defendants belatedly request that the court order a shifting of the burden and costs in light of the "additional burden" of producing the event-by-event data "made clear" by the August 10 Order because the court "specifically provided for a burden and cost shifting request". (Opposition at 2, 5) Defendants appear to refer to footnote 22 of the June 8 Order in which the court encouraged the parties to meet and confer and to submit a stipulation regarding sampling, and indicated that absent such a stipulation, the order was without prejudice to a request by defendants to share or shift the costs of preservation and production. (June 8 Order at 25 n.22). The record reflects that plaintiffs did attempt to narrow the scope of the requested data, thereby minimizing any burden and costs on defendants, that plaintiffs prepared a proposed stipulation for defendants' consideration, and that defendants' counsel, although representing that he would email comments regarding such proposed stipulation, never did so. (Ex Parte Application at 3 n.2; Servodidio I Decl. ¶ 4, Ex. 4; Smith Decl. ¶ 4, Ex. B; Reply at 8-9 n.2). In light of this history and the timing of defendants' current request, this court does not believe it appropriate to issue a cost-shifting order at this juncture.

[11] For the reasons set forth in plaintiffs' reply at pages 5-6, this court is also not persuaded by defendants' contention that plaintiffs have no need for the data in issue because they could participate as a peer in the BitTorrent network and allegedly could acquire the same data that is in issue. (Opposition at 5).

[12] To the extent defendants' failure to comply with this court's orders may be predicated upon their disagreement with such orders, defendants' "disagreement with the court is not an excuse for failing to comply with courts orders." Hyde & Drath, 24 F.3d 1162, 1168 (9th Cir.) as amended (1994) (quoting Adriana, 913 F.2d at 1411).

10

### B. Limited Evidentiary Sanctions Should Be Imposed

Plaintiffs, by the pending Ex Parte Application, seek evidentiary, not terminating sanctions. The court will nonetheless consider plaintiffs' request for evidentiary sanctions under the analytical rubric applicable to requests for terminating sanctions.

The first and second factors (the public's interest in expeditious resolution of litigation, and the court's need to manage its dockets) militate in favor of granting sanctions, and the fourth factor (the public policy favoring disposition of cases on their merits) weighs only slightly against granting sanctions, as the sanctions sought by plaintiffs would not dispose of the entire action.

As to the third factor (the risk of prejudice to the party seeking sanctions), a plaintiff suffers prejudice if a defendant's actions impair the plaintiff's ability to go to trial or threaten to interfere with the rightful decision of the case. Kahaluu Constr. Co., Inc., 857 F.2d at 604; Hyde & Drath, 24 F.3d at 1166. "Delay alone has been held to be insufficient prejudice . . . Failure to produce documents as ordered, however, is considered sufficient prejudice." Adriana Int'l Corp., 913 F.2d at 1412 (citations omitted); Computer Task Group, Inc. v. Brotby, 364 F.3d 1112, 1116 (9th Cir. 2004) (same) (citation omitted).

Here, defendants' refusal to comply with the court-ordered production of discovery constitutes an interference with the rightful decision of the case. Plaintiffs represent that the server log data for defendants' trackers required detailed evaluation by plaintiffs' experts in order to correlate the dot-torrent files and corresponding masked IP addresses downloaded from defendants' websites with the parallel data from defendants' trackers reflecting completed downloads of associated content items. (Ex Parte Application at 8; Servodidio I Decl. ¶ 8). Plaintiffs further represent that such evaluation would have provided conclusive proof of direct infringement, a core issue in the instant action. (Ex Parte Application at 7-8; Servodidio I Decl. ¶ 8). This court agrees that direct

11

infringement is a core and threshold issue in this case, and that the server log data in issue is likely to be extremely probative of, if not dispositive on such issue.[13] The court further finds in light of the current procedural posture of this case, and defendants' continued wilful disobedience, defendants' failure to produce the server log data for their trackers has prejudiced plaintiffs. See Payne, 121 F.3d at 508 ("Many of the discovery responses eventually tendered by the plaintiffs came only as the discovery period was drawing to a close, or after it had already closed. [Defendants] were therefore deprived of any meaningful opportunity to follow up on that information, or to incorporate it into their litigation strategy."). Accordingly, the fourth factor weighs in favor of granting sanctions.

As to the fifth factor (the availability of less drastic sanctions), the court has considered and has already imposed less drastic sanctions. The court granted plaintiffs' requests for reasonable attorneys' fees and costs five times due to defendants' discovery abuses and/or failure to comply with the court's orders, without any apparent effect.[14] Moreover, the court expressly warned defendants that their failure to comply with their discovery obligations or discovery orders may result in evidentiary sanctions, including terminating sanctions. In light of defendants' ongoing discovery abuses, this court concludes that any sanction less than evidentiary sanctions at this juncture would be pointless. See Computer Task

---

[13] Plaintiffs also assert that even if defendants produced the court-ordered server log data for defendants' trackers immediately, there is not sufficient time prior to the summary judgment deadline to process and analyze the data to prove direct infringement of plaintiffs' copyrighted works (Ex Parte Application at 8; Servodidio I Decl. ¶ 8). Plaintiffs' Ex Parte Application was filed before the parties' deadline to file summary judgment motions. Plaintiffs have since filed a summary judgment motion which is set for hearing on November 19, 2007. The fact that plaintiffs have now filed a summary judgment motion does not remove the prejudice resulting from the non-production of the data in issue as such data likely would significantly bolster plaintiffs' arguments

[14] See Dockets Nos. 56 (Order dated February 22, 2007), 121 (Order dated May 31, 2007), 137 (the June 8 Order), 207 (Order dated August 6, 2007), and 211 (the August 10 Order).

1  Group, Incorp, 364 F.3d at 1116. Thus, the fifth factor militates in favor of
2  granting evidentiary sanctions.
3      In sum, the foregoing factors weigh in favor of granting plaintiffs' request
4  for evidentiary sanctions.
5      Having determined that evidentiary sanctions are warranted in this action,
6  the court turns to the issue of whether the specific sanction sought by plaintiffs is
7  appropriate.
8      Plaintiffs request that the court declare that it is conclusively established for
9  purposes of this action that each of plaintiffs' copyrighted works for which a dot
10 torrent file has appeared on defendants' torrent sites has been, and continues to be,
11 directly infringed by users of defendants' torrent sites. The court finds that such
12 request is overbroad and not directly tied to plaintiffs' specific discovery requests
13 and defendants' corresponding failure to respond because defendants' trackers are
14 associated with only two of defendants' websites, Torrentbox and Podtropolis.
15     Accordingly, as an evidentiary sanction against defendants for violation of
16 this court's June 8 and August 10 Orders, this court recommends that it be deemed
17 as conclusively established for the purposes of this action that each of plaintiffs'
18 copyrighted works for which a dot torrent file has appeared on defendants'
19 Torrentbox and Podtropolis websites has been, and continues to be, directly
20 infringed by users of defendants' Torrentbox and Podtropolis websites. This court
21 finds that such evidentiary sanction, as narrowed, is reasonably related to the
22 subject of discovery that was frustrated by the sanctionable conduct which is the
23 subject of the Ex Parte Application. See Navellier, 262 F.3d at 947.
24 ///
25 ///
26 ///
27 ///
28 ///

## V. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) granting plaintiff's request for evidentiary sanctions in part and denying it in part, as detailed in this Report and Recommendation.

DATED: September 19, 2007

_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

14

PROPOSED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GARY FUNG, et al., <br><br> Defendants. | Case No. CV 06-5578 SVW(JC) <br><br> ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. § 636, the Court has reviewed plaintiffs' Notice of Ex Parte Application and Ex Parte Application for a Report and Recommendation for Evidentiary Sanctions for Violation of Court's June 8 and August 10 Orders – Fees Requested ("Ex Parte Application"), the supporting declaration of Gianni P. Servodidio with attached exhibits, defendants' Opposition to the Ex Parte Application and supporting declarations of defendant Gary Fung and Jared R. Smith with accompanying exhibits, plaintiffs' Reply in Support of the Ex Parte Application, the supporting declaration of Gianni P. Servodidio and exhibit, all of the records pertinent to the Ex Parte Application, and the attached Report and Recommendation of United States Magistrate Judge. The Court approves and adopts the United States Magistrate Judge's Report and Recommendation.

1  IT IS ORDERED that (1) Plaintiff's Ex Parte Application is granted in part
2  and denied in part as detailed in the Report and Recommendation; and
3  (2) It is deemed as conclusively established for the purposes of this action that
4  each of plaintiffs' copyrighted works for which a dot torrent file has appeared on
5  defendants' Torrentbox and Podtropolis websites has been, and continues to be,
6  directly infringed by users of defendants' Torrentbox and Podtropolis websites.
7  IT IS FURTHER ORDERED that the Clerk serve copies of this Order, and
8  the United States Magistrate Judge's Report and Recommendation, on counsel for
9  the parties.

DATED: _____, 2007

_____
HONORABLE STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE