UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

DISNEY ENTERPRISES, INC.,                                  )
TWENTIETH CENTURY FOX FILM CORPORATION,  )
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,  )
COLUMBIA PICTURES INDUSTRIES, INC., and      )
WARNER BROS. ENTERTAINMENT INC.,              )
                                                                        )
                              *Plaintiffs*,                        )          Case No. 1:11-cv-20427-JORDAN
                                                                        )
             vs.                                                        )
                                                                        )
HOTFILE CORP., ANTON TITOV, and               )
DOES 1-10.                                                         )
                                                                        )
                              *Defendants*.                      )
_____)

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR EMERGENCY
MOTION FOR ORDER PROHIBITING SPOLIATION AND PRESERVING EVIDENCE**

Defendants' opposition reinforces the need for an evidence preservation order and the

limited expedited discovery plaintiffs have requested.  Plaintiffs have not delayed one minute.

The commencement of this action created the grave concern that defendants will alter, move, or

despoil critical electronic evidence.  While plaintiffs were prepared to move immediately *ex*

*parte*, at the strong urging of defendants, plaintiffs engaged with defendants for nearly two

weeks to try to resolve these matters before bringing this motion.  Only at the end of that process

did it become clear that defendants had no intention of entering into a written stipulation that

could be presented to the Court.  Respectfully, defendants determined to despoil evidence are not

deterred or dissuaded by hollow assurances or private agreements.  Defendants knew from the

outset of the parties' discussions that, for plaintiffs, such a stipulation was the *sine qua non* of

any agreed resolution, yet defendants studiously avoided responding on that issue until they had

delayed almost two weeks.

1

Defendants feign offense at the suggestion that they do not operate legitimately, asking for naïve acceptance that they are no different than any other major internet business.  The facts say otherwise.  Granted, compensating for referred traffic is not uncommon on the internet, but that is not what defendants do:  Defendants pay their users to *upload content*, and have structured their payment scheme to ensure that the overwhelming portion of that content will be infringing entertainment content.  Google Docs does not do that.  No legitimate company does that.  And defendants of course are correct that "[t]here is nothing illegal about being a Russian living in Bulgaria or incorporating in Panama."  Opp. at 14.  But when that same business is based on massive copyright infringement and operates through fictitious addresses, mail drop services, and undisclosed principals, without any verifiable presence anywhere – facts defendants notably do not deny – the picture changes quite dramatically.

Defendants' opposition, moreover, reveals continued gamesmanship with preservation of critical evidence.  Indeed, defendants keep changing their story about what evidence is being preserved.  For the first time in their opposition, defendants now claim that they are preserving categories of evidence that, in their negotiations with plaintiffs, they affirmatively refused to commit to preserve.  At the same time, defendant Titov's declaration reveals that defendants are *not* preserving all content reference, user, and user activity data – the critical evidence plaintiffs seek through immediate discovery – in its present form.  Declaration of Anton Titov ("Titov Decl.") ¶ 17.  Moreover, while defendants hide behind the rhetoric that, in the other litigations against them, "no court has found" they failed to preserve evidence, Opp. at 7, defendants cannot (and do not) deny that, in those cases, they failed to implement a litigation hold, continuing to delete content files in the ordinary course.  And, finally, in falsely claiming that plaintiffs' request for *limited* discovery would require production of 700 servers worth of data, defendants

purposefully obfuscate the technological facts in an effort to confuse the issue and this Court.

Individually and collectively, this record raises a "legitimate concern" (the correct legal

standard) that, absent intervention by the Court, defendants will alter, move or despoil critical

evidence.[1]

## ARGUMENT

1.  Defendants continue to be evasive about preserving critical evidence, as their

explanation about what evidence is being preserved continues to change.  Prior to the motion

filing, defendants stated in no uncertain terms that certain critical download evidence was not

being preserved:  "Hotfile does not keep records of information relating to downloads, other than

the number and date of downloads.  Hotfile does not store information about users who

download information."  Pozza Ex. C at 2.  Plaintiffs knew that defendants received and used

that data, and so responded to defendants.  Defendants said nothing.  Pozza Decl. ¶¶ 3-4, Ex. D.

Now, only *after* this motion was filed, defendant Titov acknowledges that Hotfile does in fact

log at least some of this user download information.  Titov Decl. ¶ 17(c).  Similarly, defendants

only now say that Hotfile will preserve communications with users and internally regarding

Hotfile, Titov Decl. ¶¶ 18, 20, categories that, until the filing of this motion, defendants had

objected to preserving.  Pozza Ex. C at 3-4.

Defendant Titov's testimony suggests that some relevant data is now being deleted or

altered.  Mr. Titov states that (a) some metadata about content files is "changing" but unspecified

"essential information" is maintained, (b) that he is logging user "events of significance,"

---

[1] Defendants' assertion that plaintiffs' motion is mooted by the parties' agreement on a date for a
Rule 26(f) conference, Opp. at 8, is both incorrect and proves the adage that no good deed goes
unpunished.  Defendants' newly hired counsel appealed to plaintiffs for a 30-day extension of
defendants' time to respond to the complaint citing personal scheduling issues.  Plaintiffs wanted
to be courteous but were concerned about the prejudice such delay would cause.  Agreeing to a
prompt Rule 26(f) conference was a compromise to accommodate defendants' request.

without explaining what that data encompasses, and (c) that some user activity data is "not maintain[ed]," but without specifying all that category encompasses. Titov Decl. ¶ 17.  In fact, defendants do not even address one key category of user activity data that plaintiffs requested be preserved:  information about Hotfile "Affiliates" operating third-party websites that link to infringing Hotfile-hosted content and that are paid by Hotfile.  *Id*.; *see* Declaration of Ian Foster in Support of Emergency Motion, dated February 21, 2011 (Dkt. #15)  ("Foster Decl."), ¶ 14. More fundamentally, defendants cannot be permitted to allow Mr. Titov to determine what evidence is sufficiently "essential" to be preserved; all *relevant* evidence must be preserved.

2.  Defendants are wholly unlike legitimate companies such as the plaintiffs, which may have affiliated entities that operate globally, *see* Opp. at 4, but which operate from and can be located in the United States, with real offices and corporate addresses that are not fictitious. Defendants host content on *over 700 servers in Texas*, yet they seek to avoid being found. Defendants admit there are no offices behind the Panamanian address on their website and their Florida drop boxes, and that they have attempted to evade service in another case by arguing that Titov must be served in Bulgaria.  *See* Pls.' Mem. at 8-9, Pozza Ex. J at 3, 7.  Only now, when confronted with evidence of his Florida address, does Mr. Titov admit to allegedly spending a "summer" in Miami Beach.  Titov Decl. ¶ 4.  In Mr. Titov's declaration he further identifies another Bulgarian corporation used to "support[] Hotfile's website operations," Titov Decl. ¶ 8, and admits that he intended to incorporate Hotfile's ISP Lemuria outside the United States until "Hotfile learned" that it could not obtain U.S. IP addresses for its servers, *id*. ¶ 3.  Those are not the actions of a company seeking to operating legitimately in the United States.  In fact, they suggest a real danger that critical evidence in this case, currently located on servers in Texas, may be shifted outside the country to avoid scrutiny.  *See Dell Inc. v. BelgiumDomains, LLC*,

4

No. Civ. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (Jordan, J.) (noting defendants' use of fictitious names and possibility that evidence could be transferred abroad).[2]

    3.  Particularly in light of this evidence, defendants' mere denials that they are unlike other online pirate services is unpersuasive.  In considering the need for court-ordered relief that is even more extensive, this Court has taken into account the conduct of defendants in analogous cases.  *See Dell,* 2007 WL 6862341, at *2-*3.  Defendants' attempt to characterize the spoliation cases cited by plaintiffs as primarily involving *pro se* defendants is inaccurate.  Opp. at 13.  The clear lesson of cases like *Bunnell* and *Usenet.com* is that even copyright defendants *with counsel* may attempt to destroy electronic evidence that can be easily overwritten.  Pls. Mem. at 10-11.[3] The good faith or best intentions of counsel are powerless when an unscrupulous defendants can erase years of data with the push of a button.  Indeed, in *Usenet*, the defendants destroyed key server data as their counsel was negotiating with plaintiffs for its production, and on the very day production was to begin.  *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 434 (S.D.N.Y. 2009).

    The cases cited by defendants denying preservation orders, Opp. at 9-10, concerned situations where there was no demonstrated risk of evidence being destroyed, unlike the situation

---

[2] Defendants' assertion that they adequately comply with DMCA takedown and other requests to remove content – which has not been established – is irrelevant and disingenuous.  Defendants pay users to upload massive amounts of infringing content files, and they are uploaded around the clock every day.  As defendants know – and, indeed, as is their intent – after-the-fact notices can never "catch up," thus enabling defendants to continue to profit handsomely from the infringement.  Defendants, moreover, have institutionalized schemes to thoroughly undermine the effectiveness of notices.  *E.g.*, Complaint ¶ 38.  Defendants' claim that they help copyright owners is cynical at best in light of defendants' active promotion of copyright infringement.

[3] Defendants' argument that a court order should be "bilateral" is unsupported.  There is no suggestion that relevant evidence in plaintiffs' possession is at risk of spoliation.  The history of online copyright enforcement cases points overwhelmingly to a danger that defendants in these actions, not the copyright plaintiffs, will destroy evidence of their wrongful acts.  Pls.' Mem. at 9-12.

here.  Moreover, defendants here have admitted that they did not take all necessary steps to preserve relevant evidence subject to deletion in the past, even though defendants had already been sued twice for copyright infringement.  Pls.' Mem. at 13.  Whatever representation that defendant Titov may make about what defendants are currently preserving, in light of the pattern of evasion and the history in similar cases, that is insufficient to ensure that evidence is preserved absent an enforceable order.  *See Dell,* 2007 WL 6862341, at *2-*3; *see also Columbia Pictures Indus., Inc. v Bunnell,* No. CV 06-1093FMCJCX, 2007 WL 2080419, at *7-*8 (C.D. Cal. May 29, 2007), *aff'd,* 207 F.R.D. 443, 448-49 (C.D. Cal. 2007) (granting preservation order for relevant log data).

4.  Defendants' objections to the request for expedited discovery are baseless, and in fact illustrate why expedited discovery is necessary.  While defendants previously stated that content reference data was being preserved, *see* Pozza Ex. C, defendants now indicate that at least some important content reference database fields (including download counts) are in fact "changing." Titov Decl. ¶ 17.  Even if that is being done in the normal course of Hotfile's business – and it is not clear from Mr. Titov's declaration that this is the case – the appropriate remedy for preserving this data is to create a copy for immediate production to plaintiffs so that (i) a current, static version is preserved, and (ii) plaintiffs can determine whether critically important data is being overwritten.[4]

Defendants' arguments in opposition to this limited discovery are merely pretexts.  First, as described above, plaintiffs have not delayed – at all.  Second, defendants mischaracterize the scope of the data requested, seemingly in an attempt to confuse the issue and the Court.

---

[4] While defendants note that they have recently agreed to a Rule 26(f) conference by April 1, Opp. at 8, that still leaves an *entire month* in which defendants have conceded that some evidence is being overwritten.

Defendants claim that plaintiffs are requesting "over 700 servers' worth of information," Opp. at 16, but that is simply not true – and defendants know it. Those 700 servers are full of content files, the infringing content. As Prof. Foster testified (without rebuttal), the content reference data – which provides information about the content files *but is distinct from the content files themselves* – is stored separately from the content files themselves. Foster Decl. ¶ 7. That data is much smaller in size and scope, by substantial magnitudes, than the content files themselves and would be simple to copy and produce. *Id.* ¶¶ 7-8. Indeed, defendants themselves acknowledge that the reference data at issue is stored in readily accessible databases. Opp. at 7. As Prof. Foster confirms, "[t]o be useful to Hotfile's system, such information would need to be accessible and consolidated on one or a handful of computers and/or servers." Reply Declaration of Ian Foster, dated Feb. 28, 2011, ¶ 5. And Defendant's evidence, Mr. Titov's declaration, does not contradict Professor Foster's testimony that "it should not be a particularly difficult task to generate a copy" of the Content Reference Data. Foster Decl. ¶ 8. Defendants know perfectly well that this information is not voluminous, and could almost certainly fit on a single portable hard drive the size of a small paperback book. And as defendants well know, obtaining that evidence would allow plaintiffs to obtain a sample of the content files and minimize discovery burdens on the defendants. *See* Pls.' Mem. at 20; Foster Decl. ¶ 8. Defendants' arguments on this point are simply misleading.

Third, there is no basis for applying a preliminary injunction standard to an expedited discovery request. Defendants' only authority for that is one outlier case that is decades old. *See* Opp. at 15 (citing *Platinum Mfg. Int'l v. UniNet Imaging, Inc.*, 2008 WL 927558, at *1, n.3 (M.D. Fla. Apr. 4, 2008) (applying good cause standard but citing previous contrary case in footnote)). This Court has explained that courts generally apply "a good cause or reasonableness

standard for granting expedited discovery" and itself applied that standard.  *Dell*, 2007 WL 6862341, at *6.

Fourth, Defendants also argue that a sample of content files "would not prove [plaintiffs'] case," citing a case discussing the relevance of such data to whether a defendant had "red flag" knowledge under the DMCA.  Opp. at 15 (citing *Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 524-25 (S.D.N.Y. 2010)).  Putting aside the merits of that argument, which plaintiffs need not address here, defendants' argument misses the point.  Plaintiffs will use the content files to show the volume of direct infringement of plaintiffs' works, and to show that the overwhelming portion of all files available through Hotfile are infringing.  Pls.' Mem. at 17. Evidence about the proportion of content files that are infringing has been widely accepted to show inducement of infringement, actual or constructive knowledge of infringement, and direct financial benefit from infringement.  *Id*. at 8, 20.  Defendants cannot argue that this data is not relevant.

Finally, defendants incorrectly argue that deciding expedited discovery would pre-judge any jurisdictional or service motions that defendants may file.  Opp. at 16, n.7.  Under the Local Rules, such a motion would not delay or operate to stay discovery in any event.  *See* S.D. Fla. Local Rules, Appendix A, Section I.D.5.  Moreover, defendants designated an agent in Florida for purposes of the Digital Millennium Copyright Act, Pozza Ex. X, and contracted with a Florida ISP to provide all of the hosting and internet services that are at the heart of this action. Any such motion would be baseless.

Respectfully submitted,

Dated:  March 1, 2011
By:  s/ Karen L. Stetson
     Karen L. Stetson

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305-416-6880
Fax: 305-416-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Daniel M. Mandil (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA  91403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice Pending*)
Duane C. Pozza (*Pro Hac Vice Pending*)
Luke C. Platzer (*Pro Hac Vice Pending*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Phone: 202-639-6000
Fax: 202-639-6066

*Attorneys for Plaintiffs*

9

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2011, I filed and caused to be served a copy of the

foregoing Plaintiffs' Reply Memorandum in Support of their Emergency Motion For Order

Prohibiting Spoliation And Preserving Evidence and Reply Declaration of Professor Ian Foster

upon the following persons via the Court's ECF electronic filing system:

Janet Munn
RASCO KLOCK
283 Catalonia Avenue
2nd Floor
Coral Gables, FL 33134
Ph: 305-476-7101
Fx: 305-468-6281
jmunn@rascoklock.com

Roderick M. Thompson
rthompson@fbm.com
Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Ph: 415-954-4400
Fx: 415-954-4480

*Attorneys for Defendants*

Dated:  March 1, 2011                     GRAY-ROBINSON, P.A.
                                          Karen L. Stetson

                                          By:  s/ Karen L. Stetson_____
                                          Karen L. Stetson

                                          *Attorneys for Plaintiffs*