1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
2                          MIAMI DIVISION

3            Case No. 11-Civ-20427-JORDAN/McALILEY

4

DISNEY ENTERPRISES, INC.,
5    et al.,

6

7                    Plaintiffs.
     vs.                                    MIAMI, FLORIDA
8                                           MARCH 7, 2011

9

HOTFILE CORPORATION, et al.,
10

11                    Defendants.

12

        TELEPHONIC STATUS CONFERENCE HEARING TRANSCRIPT ON
13      PLAINTIFF'S MOTION PROHIBITING SPOLIATION & TO PRESERVE
          EVIDENCE BEFORE THE HONORABLE CHRIS M. McALILEY,
14               UNITED STATES MAGISTRATE JUDGE

15

APPEARANCES:
16

17

FOR THE PLAINTIFF:
18

19

                              JENNER & BLOCK
20                            1099 New York Avenue, N.W.
                              Suite 900
21                            Washington, D.C. 10022
                              BY: STEVEN B. FABRIZIO, ESQ.

22

23

24   REPORTED BY:             J.M. COURT REPORTING, INC.
                              JERALD M. MEYERS, RPR.
25                            Telephone:  954-431-4757

```
 1
 2
     FOR THE DEFENDANTS:
 3
 4
 5
 6                              FARELLA BRAUN & MARTEL, LLP
                               235 Montgomery Street
 7                              17th Floor
                               BY: RODERICK M. THOMPSON, ESQ.
 8                              BY: DEEPAK GUPTA, ESQ.
                               BY: N. ANDREW LEIBNITZ, ESQ.
 9
10
11
12
13                              RASCO KLOCK REININGER PEREZ ESQUENAZI
                               VIGIL & NIETO
14                              283 Catalonia Avenue
                               Suite 200
15                              Coral Gables, Florida 33134
                               BY: JANET T. MUNN, ESQ.
16
17
18
19
20
21
     REPORTED BY:               JERALD M. MEYERS, RPR.
22                              J.M. COURT REPORTING, INC.
                               1601 N.W. 109TH TERRACE
23                              Pembroke Pines, FL 33026-2717
                               Telephone: 954-431-4757
24                              E-Mail Address: CRJM@AOL.COM
25
```

1    (Call to order of the Court)

2         THE CLERK:  The United States District Court is now in

3    session; The Honorable Magistrate Judge Chris McAliley

4    presiding.

5         Calling the case of Disney Enterprises, Incorporated,

6    case number 11-20427-Civil-Judge Jordan.

7         THE COURT:  Okay.  Good morning, counsel.  If you

8    would, give your appearances beginning with the plaintiff.

9         MR. FABRIZIO:  Good morning, Your Honor.  My name is

10   Steven Fabrizio for plaintiffs.

11        THE COURT:  Okay.  Welcome and for the defendant?

12        MR. THOMPSON:  Good morning, Your Honor.  This is

13   Roderick Thompson with the firm of Farella Braun & Martel in

14   San Francisco, and with me are my colleagues Andy Leibnitz and

15   Deepak Guptak, and also on the line is Janet Munn, our

16   colleague from Florida.

17        THE COURT:  Okay.  Welcome everybody.  All right.  I

18   thought it would be helpful if we just talked for a few minutes

19   about plaintiff's emergency motion for order prohibiting

20   spoliation.

21        There has been a response and a reply.  I was hopeful,

22   after reading the reply, that possibly by having you all talk

23   to each other some and share some information about the

24   activity that the defendant has been engaging in regarding

25   their Website, that you might reach some greater understanding

1    of what the defendant is doing and possibly resolve the issue,

2    or if not that, narrow it, and so I wanted to see what your

3    thoughts were on that.

4         MR. FABRIZIO:  Sure.  Your Honor, this is Steve

5    Fabrizio for the plaintiffs.  Would you like me to address you?

6         THE COURT:  Sure.

7         MR. FABRIZIO:  We had a very good dialogue with

8    Mr. Thompson and Ms. Munn beforehand, so I think we had a

9    pretty good understanding of what defendants say they will do,

10   and even to some degree of what the defendants have been doing

11   over that holiday weekend, and we also see from the opposition

12   papers that the defendants now say they are prepared to

13   preserve even more categories of evidence that had been under

14   discussion that previously they had not been willing to agree

15   to preserve, but the biggest problem, from our perspective,

16   Your Honor, is that defendants that are going to destroy

17   volumes of data are not usually deterred by private agreement.

18        So there is no teeth to a private agreement.  We had

19   asked from the very outset, and it was sort of the essence of

20   our effort to try and resolve this, that the defendants agree

21   to a stipulation that we could present to the court, that if

22   the court was so willing that the court would order, and that

23   would give us at least all of the remedies that come with

24   violations of court orders when it comes to spoliation of

25   evidence, and to date nothing in our discussions with the

1  defendants and nothing in their papers have suggested to us

2  that they were prepared to do that.

3         THE COURT:  Okay.  Is there something further you

4  wanted to say?

5         MR. FABRIZIO:  I am sorry, Your Honor.  One thing we

6  do know is that defendants are currently taking steps to

7  manipulate the data, and let me explain what that means, Your

8  Honor, in context here.

9         We referred to the events over the holiday weekend of

10  defendants terminating, en masse it appears, some users that

11  they have identified as their most egregious copyright

12  violators.

13         Well, as they are doing that, they have advised us and

14  the court that they are beginning to preserve a crucial

15  category of data.

16         That data is the data that would show each download by

17  each user of the records of the files that are being downloaded

18  and by the users that are downloading them.

19         That server data, Your Honor, in past cases has proven

20  to be invaluable.  It is critical to many issues, not the least

21  of which, and perhaps one of the most important of which it

22  will show the overwhelming use of this service to engage in

23  infringement.

24         In past cases similar types of statistical analyses

25  have showed 85, 90, 95 percent of the uses of site are for

1    copyright infringement, and almost every court that has seen

2    those sorts of statistics has said it is a very influential

3    piece of evidence.

4              So, Your Honor, if you consider the juxtaposition of

5    two acts, either of which independently defendants would say,

6    "Well, those are good things and the plaintiff should be

7    thanking us for doing them," if you consider them together, you

8    can understand how we are not happy about this.

9              Defendants previously had not been preserving this

10   server log date for downloads.

11             THE COURT:  But are they doing it now?

12             MR. FABRIZIO:  They are doing it now, but at the same

13   that they are doing it they have terminated some of their, you

14   know, thousands or hundreds or, you know, en masse their worst

15   offenders.

16             So the data that they are preserving is, in some

17   senses, sanitized.  The data that we will get today is not the

18   same as the data we would have gotten on the day we filed this

19   complaint because of defendant's actions.

20             THE COURT:  But don't you want them to terminate the

21   infringing users?

22             MR. FABRIZIO:  Your Honor, absolutely, and that's why

23   I said defendants would say that preserving this data is a good

24   thing and terminating infringing users is a good thing, but

25   when you do them at the exact same time, what you do is you

1    create data that is no longer reflective of the actual use of

2    the site.

3            THE COURT:  So what is it that you want?  I am not

4    clear on what it is that you want them to do.

5            MR. FABRIZIO:  Well, what we would have wanted them to

6    do, Your Honor, is to allow us to take a snapshot of the data

7    so we have a fixed snapshot in time, and then they could have

8    done whatever they wanted to address and terminate repeated

9    infringers or blatant infringers.

10           We are not suggesting for a second that we don't want

11    them to take action to clean up their copyright infringement.

12           We have wanted them to do that for years, but as a

13    litigant, we are entitled to the data as it existed, not the

14    data as it exists after they take these steps to fix some of

15    the problems.

16            THE COURT:  So when you say that you want to take a

17    snapshot of the data, do you mean while the infringing is going

18    on, right, before --

19            MR. FABRIZIO:  Your Honor, what -- I am sorry.

20            THE COURT:  Well, I am just trying to understand.  I

21    am not clear what you are asking them to do.

22            MR. FABRIZIO:  Sure.  Let me explain it.  Every time a

23    user requests a file to be downloaded, entries are made in a

24    log on the server that would indicate the user that was

25    requesting that download and the particular file that was

1  requested to be downloaded.

2          Now, other data, too, but you can just call that the

3  core of the download data.  That is kept in files; log files,

4  and previously they had not or at least they told us they had

5  not been preserving that data, as such, but that they started

6  to recently.

7          So very quickly there are going to be millions and

8  millions of entries showing downloads.

9          What we wanted and what we still want is to very

10 quickly require defendant to produce for us those logs.  That

11 may create a snapshot in time, at least as to the period of

12 time covered by those logs as to what was happening with the

13 system.

14         Thereafter, changes that the defendants might make to

15 the system will obviously affect the new log data coming in,

16 but it will not affect the log data that we already have.

17         So we will effectively have a preserved snapshot of

18 how the system was being used at a given point in time, and

19 that is what we wanted and that is what we asked for starting

20 from our very first conversation, but when defendants then

21 changed the system before they gave us that log data, that log

22 data now is biased in light of the changes that the defendants

23 made.

24         Now, there may be nothing that we can do about the

25 bias that has already been introduced into that data.  What is

1    terminated is terminated, but it does serve to illustrate, Your

2    Honor, the importance of getting a snapshot in time when we are

3    talking about data that is so easily manipulated and changed,

4    and that's whether it was done with all of the best intentions.

5            You know, this is not the place or the time to say why

6    they are doing what they did.  We are just simply saying the

7    effect of it is now we get data that is different than the data

8    that we would have gotten on the date of this complaint.

9            THE COURT:  Well, obviously in a minute I am going to

10   hear from defense counsel, but is it not possible for you all

11   to talk about where you find yourselves today?

12           All right.  What is done is done.  I think it makes

13   sense to me that you are not suggesting that this was done to

14   try to destroy evidence.

15           I mean, the record seems to suggest otherwise.  So

16   assuming that they are trying to terminate infringing users for

17   all of the right reasons, can you all talk to each other about

18   what discovery you might get for prior events that led up to

19   the termination of these infringers and how you might go

20   forward?

21           Can you have a discussion about that and possibly

22   reach an agreement?

23           MR. THOMPSON:  Your Honor, this is Roderick Thompson

24   for the defendants.

25           THE COURT:  Yes.  And I just wanted the plaintiff's

1    lawyer to tell me if he thinks that is possible, and then

2    obviously I want to hear from the defendant.

3          MR. THOMPSON:  Thank you, Your Honor.

4          MR. FABRIZIO:  Yes, Your Honor.  If defendants were

5    prepared to allow us the immediate limited discovery we have

6    requested which would give us the log data tables, there are

7    tables and data bases that are on defendants servers.

8          They are organized.  The defendants need to organize

9    and collect them in one place.  They are relatively small in

10   volume, and they would be relatively easy to copy.

11         That's all according to our experts, and defendants

12   have, frankly, not challenged, but if the defendants would give

13   us the limited discovery that we have asked for right away,

14   then we could have that snapshot in time.

15         Again, it would include whatever data exists at this

16   time which would include some older data and also some data

17   post the change they made to their policy determining repeat

18   infringers, but at least we would be assured of having data

19   that is not subject to constant change as we go forward as we

20   wait for regular discovery to begin.

21         THE COURT:  Well, here is my question, though:

22   Assuming this server log data can be preserved, why is it that

23   you need it now as opposed to during the discovery process,

24   assuming it can be preserved?

25         MR. FABRIZIO:  Well, it cannot be.  The way the

1    defendants have it set up, absent physically making the copy

2    that we want, it cannot be preserved because it is constantly

3    being added and changed, and that's one of the reasons we

4    wanted, you know, immediate discovery of it.

5           It is also the case, Your Honor, that it is very

6    easily subject to manipulation, and we want to get it in our

7    hands as quickly as we can so that we can be assured that as

8    much as possible it has not been subject to manipulation.

9           THE COURT:  Okay.  I understand.  All right.  So go

10   ahead, Mr. Thompson.

11          MR. THOMPSON:  Thank you, Your Honor.  Let me just say

12   I am very encouraged that we are having this dialogue.  This

13   should have happened before this motion was filed.

14          The motion was filed without any further dialogue with

15   us.  It was based on an assumption that the heightened

16   termination policy was destroying data.  That was false.

17          It showed in our declaration through Mr. Keytak.  In

18   fact, all evidence was preserved from those accounts which were

19   terminated over the holiday weekend.

20          So we are very encouraged in having this dialogue

21   clarifying what evidence is being preserved, and this should

22   have happened a while ago.  I won't react in detail to this,

23   but the --

24          THE COURT:  Right.  Now is not the time to get into

25   the whole debate.  I would like to focus it more, you know,

1   about how you might resolve it at this point.

2           MR. THOMPSON:  Certainly, Your Honor.  And what I hear

3   from Mr. Fabrizio is the argument that the user data logs are

4   not being preserved.  Well, that's just simply not the case.

5   They are being preserved.

6           They have been preserved from the first time we got

7   notice of this lawsuit.

8           What he is complaining about is their dynamic.  They

9   are being added to a lot.  That's the nature of our client's

10  business.  I think the plaintiffs understand that well.

11          What I heard him say just now was the real reason he

12  wants immediate discovery is he is suspicious of manipulation.

13  So we come back down to the innuendo that our clients are bad

14  people and, therefore, they cannot be trusted.

15          Frankly, we resent that, Your Honor.  There is no

16  evidence to support that, and we have preserved the data, and I

17  am very willing to speak with Mr. Fabrizio and his team to try

18  to work out whatever assurances they may need, but we should

19  not proceed with this motion based on an assumption of our

20  people are bad people because of other cases involving other

21  parties and other technology.  That simply is not fair, and it

22  is not accurate.

23          THE COURT:  Okay.  And I understand that, and I

24  understand why you feel the need to respond to that now.

25  That's the nature of these kind of, you know, complaints.

1       Two different thoughts occur to me, and I don't have

2   an opinion yet on whether early discovery makes sense or not.

3   I just don't know enough, but I have two thoughts on either

4   side.

5       One is, and this would probably be more appealing to

6   the defendant, to have the defendant in some way show the

7   plaintiff that you are preserving the data in a way that is

8   meaningful, and I don't know if that requires or if that can be

9   done in some sort of written statement or if that can be done

10  by a declaration by an IT person who knows your system and if

11  that requires the plaintiff's IT person to come over to your

12  office and sit with your IT person and see that you really,

13  really are preserving it, but maybe there is some process that

14  allows a little more transparency, from the plaintiffs point of

15  view, to reassure them as to what you are saying.

16      So that's one thought on one end, and the other

17  thought, and I am sure I am not telling you anything that you

18  all haven't thought of yourselves, but another thought on the

19  other end is for the defendant to give a snapshot, you know, an

20  example of the data that you preserved and produce it to the

21  plaintiff so they see what you have and the plaintiff knows

22  what is being preserved and what will be available in the

23  discovery process.

24      So those are two thoughts that I have being from the

25  top of a tall building and you are down close.

1      So are there any thoughts about that or any better

2  ideas of how you all might have a conversation about this?

3  Because what I wanted to do was talk to you today and see if we

4  could set up some sort of process by which you try to resolve

5  the issues rather than spending, frankly, a lot of your

6  clients' money and time, and some of you are out of state, so I

7  don't know if the out of state counsel will come in for an

8  evidentiary hearing, and these evidentiary hearings, you know,

9  because of the nature of the accusations, people feel the

10  stakes are very high and want to turn it into sometimes my

11  experience a bit of a mini trial, which is not what I am going

12  to do, but it is a little challenging to keep it focused on

13  what the issues are.

14      In the end I just think we could counsel on both sides

15  and I would like to think that maybe with a little help on my

16  end that you all can reach a better conclusion than you are

17  going to get from me after I hold an expensive and lengthy

18  evidentiary hearing.

19      MR. FABRIZIO:  Your Honor, this is Steven Fabrizio for

20  plaintiffs again.

21      THE COURT:  Yes.

22      MR. FABRIZIO:  We appreciate the suggestions coming

23  from the court, and they may very well provide a road map to

24  some solution, but one of our fundamental concerns would remain

25  and has from the outset, and let me first make one thing clear.

1        We have leveled some accusations about defendants, but

2   if it is not already abundantly clear, let me make it clear

3   that we are not leveling any accusations against counsel.

4        We have had an opportunity to get to know Mr. Thompson

5   and Ms. Munn and we know them by reputation, and we have

6   nothing but the highest regard for them.

7        THE COURT:  Right.  That is understood, at least

8   certainly by me, but you have got the burden of proof here, and

9   I think it is rather steep, and the remedy of a preservation

10  order can be rather kind of onerous, and so you have got a

11  pretty big burden, and we are going to have to go next in this

12  conversation with what witnesses do you all want to call, the

13  scope of this hearing, and I am just questioning if we have to

14  get there.

15       MR. FABRIZIO:  Well, Your Honor, one, I am not sure

16  that an evidentiary hearing itself is required.

17       The standard and the material part is whether there is

18  a legitimate concern, and we think on this record that there is

19  plainly a legitimate concern.

20       You know, Mr. Thompson might take issue with it.  We

21  are talking about a set of defendants that don't operate as a

22  legitimate business, Your Honor.

23       They do operate in the shadows.  They have no presence

24  anywhere as far as we can tell.

25       Every address that they list, whether it is in Panama,

1    Bulgaria or Florida, it is either a fictitious address or it is

2    a mail drop box.

3          They operate through shell companies, and they admit

4    they have 700 servers in Texas, but yet they are not registered

5    to do business in Texas, in violation of Texas law.

6          So, clearly, in terms of the nature of the defendant,

7    we are not dealing with a major company that, you know, can be

8    expected to be respectful of the judicial process.

9          I mean, I know Mr. Thompson does not like it when we

10   refer to past cases, but the law allows the court to consider

11   the conduct of comparably situated defendants in past cases,

12   and it has become motus operandi of defendants like this to

13   engage in the sort of evidence spoliation.

14         I mean, just in cases that we have handled over the

15   past, you know, half of a decade it has been almost in every

16   case.

17         THE COURT:  But, Mr. Fabrizio, I understand why you

18   get kind of passionate about this subject, but what about what

19   would you like now?

20         What information, if you could sit down with Ms. Munn

21   and Mr. Thompson and get some information to assure you that

22   evidence is being preserved, what would you like?

23         MR. FABRIZIO:  I would like them to agree with a

24   stipulation that could then be presented to the court.  I had

25   been in a situation not too long ago --

1    THE COURT:  Okay.  You said that before.  That makes

2  sense.

3    Mr. Thompson, what about that?  I mean, that is a

4  pretty standard procedure.

5    All of the time I get proposed confidentiality orders,

6  for example, that the parties draft and I sign them and turn

7  them into a court order, and all of the time, you know, well,

8  not all of the time, but quite often I have the parties come up

9  with a discovery plan, and when they are really having trouble,

10  a whole schedule and they give it to me and it becomes a court

11  order and it becomes enforceable.  So why not do that?

12    MR. THOMPSON:  Your Honor, I think we would be

13  interested in a reciprocal preservation order.  These are 5

14  plaintiffs, very large companies with ESI around the world who

15  have been investigating our client for well over a year.

16    I think if we have a reciprocal order requiring both

17  sides to preserve relevant information, I am sure we can work

18  it out with Mr. Fabrizio.

19    What we object to is the assumption that the

20  defendants are somehow wrongdoers, and I should just correct

21  Mr. Fabrizio's statement.

22    His version of proof is to show significant imminent

23  harm to get a preservation order.  He has not done that.

24    MR. FABRIZIO:  I would disagree, Your Honor, that that

25  is the standard.  That I believe is the standard if you are

1    moving ex-parte, which obviously we are not.

2            THE COURT:  Okay.  Well, put that aside.  Okay.  So

3    this is coming down to a very human dynamic from my

4    perspective.

5            Disney, the plaintiff, by making these accusations

6    against the defendant, however well-founded they are,

7    Mr. Fabrizio, I have no opinion on it, is insulting.

8            Hotfile, the defendant, who doesn't like the words

9    they are hearing, okay, this happens all of the time in

10   disputes.  So, you know, that is not helping the conversation

11   move forward.

12           Now, what about that, Mr. Fabrizio?  What about if you

13   all came up with an agreed order from me on preservation of

14   evidence for both sides and how you will manage your ESI in

15   discovery?

16           MR. FABRIZIO:  Well, Your Honor, we will obviously

17   deal with the managing ESI discovery when we get into sort of

18   the case management and the discovery plan, but there is no

19   basis, none whatsoever, except a tit-for-tat for suggesting

20   that there needs to be an order against the plaintiffs.  The

21   plaintiffs are some of the most prominent companies in America.

22           THE COURT:  I agree with you.  No.  Mr. Fabrizio, I

23   completely agree with you.

24           It did sound tit-for-tat for me, but sometimes, you

25   know, we have to do things.  You know, you do things to get

1    things done.

2         Is there any reason why your client would not want to

3    commit to some basic preservation of evidence procedures that

4    both sides would be held accountable to?

5         MR. FABRIZIO:  Well, Your Honor, we have worked with

6    our clients about fairly extensive evidence preservation and

7    litigation hold, and we have received information from

8    Mr. Thompson about his best use as to what that should be.

9         The issue here is, and the issuance of an order of

10   preservation requires more, and it comes with greater

11   consequences and greater burdens.

12        We don't ask defendants to do it willy-nilly.  We ask

13   defendants to do it because we believe that the record shows

14   that there is a very legitimate concern about evidence

15   spoliation; a concern that Mr. Thompson has not even pretended

16   to show to our clients.

17        They have never been accused as far as I know of

18   destroying evidence in cases like this.

19        MR. THOMPSON:  Your Honor, this is Rod Thompson.  If I

20   may, one concern we have is our clients allows copyright

21   holders, such as Warner Brothers, one of Mr. Fabrizio's

22   clients, one of the plaintiffs here, to have special rights

23   holder accounts which gives them extraordinary powers to take

24   down content from our Website.

25        This is not the typical BMCA notice.  This gives the

1    special rights holder the ability to say, "That file is

2    infringing.  Take it down."  Just willy-nilly.

3        They have to attest that it is, in fact, a copyrighted

4    work of theirs.  Warner Brothers, one of the plaintiffs here,

5    has a special rights holder account and has been using that

6    extensively in the months leading up to this lawsuit.

7        That is very relevant information that we think is

8    very helpful to our case.  And as I told Mr. Fabrizio, he is

9    right, we have exchanged letters.

10        I have asked him to make sure that that evidence is

11    preserved.

12        Now, I am not accusing anyone of spoliation.  There is

13    no basis to say that.

14        Frankly, there is no basis to say that of plaintiffs,

15    either.  So we come back to if we want to talk about an agreed

16    order, I think Your Honor is on the right track here.

17        Let the lawyers work it out, but it should be a

18    two-way street.

19        MR. FABRIZIO:  Well, again, Your Honor, I would

20    suggest that the defendants are proposing a tit-for-tat simply

21    because they realize that major corporations are going to be

22    reluctant to enter into orders on preservation because of the

23    burden and consequences, and that is the reason that there is a

24    standard to get such an order.

25        I believe we can make it or have made it.  I believe

1    that when you look at the defendant's do not operate

2    legitimately, that as I explained to Your Honor, whether

3    intentional or not, and I am not prepared to say it has not

4    been intentional, but intentional or not, defendants have

5    already taken steps to manipulate key data.

6          I think that they have already demonstrated that they

7    have not complied with litigation obligations, litigation hold

8    obligations in other cases.  And, frankly, Your Honor, I think

9    we can demonstrate that Mr. Ketak has not been completely

10   forthright with this court.

11         I think these are the factors.  These sorts of factors

12   clearly differentiate this set of defendants from plaintiffs

13   who are major U.S. corporations that have physical addresses,

14   that have boards of directors.

15         Many of them are publicly traded and there have never

16   been any accusations by any defendants in any case that I have

17   been involved with about evidence spoliation.

18         I think turning this into a tit-for-tat is really

19   defendants way of trying to take attention off of themselves

20   and shift the dialogue.

21         THE COURT:  Well, I will tell you how it looks to me,

22   okay, and I say this often to folks.  A couple of things I say

23   often.

24         First of all, I think it is very hard for any of us to

25   be in the other person's shoes anywhere in life.  So, standing

1    in my shoes, things look a little differently then they do

2    maybe in each of your shoes, and it doesn't make me right, but

3    it is just the way it looks, and you are kind of stuck with me

4    because I am managing your discovery.

5          So here you go.  You two sound extremely entrenched,

6    and you are caught up with a broader battle where it strikes me

7    that you don't need to be.

8          Mr. Fabrizio, I am hearing you say, "My client is

9    superior and I am not going to be held to be in the same club

10   as the defendant," and you are offended at the thought that

11   your client would be subject to the same order that the

12   defendant would.

13         The defense lawyer strikes me, it does feel

14   tit-for-tat.  As you say, you have no suggestion that the

15   plaintiff is, you know, preserving their evidence.

16         So it sounds to me like you are kind of shifting the

17   discussion, also, and neither one of you, and I don't mean to

18   offend anybody.

19         You are very good lawyers, but the way it sounds,

20   sitting in the middle, neither one of you really want to talk

21   about solving the problem in a way that you kind of let go of

22   your positions.

23         So I am kind of wondering if it makes sense, it will

24   be a lot cheaper than having a hearing in front of me, I wonder

25   if we should get you a mediator to sit down and talk to you

1    about this and come up with just to kind of broker an

2    agreement.  What about that?

3        MR. THOMPSON:  Your Honor, this is Rod Thompson.  If I

4    may, first of all, I think a mediator is necessary.

5        We have no objection, but I do think Mr. Fabrizio and

6    I have had a good dialogue in the recent past, and I am just

7    conferring with the client that if a sample of the server log

8    is something he wants to see, we can certainly get him that.  I

9    think that was one of your suggestions.

10       THE COURT:  That sounds like a great idea to me.  I

11   mean, again, I am at the top of a tall building.  I don't

12   understand, you know, the systems that you all are dealing

13   with, but it sounds like a good idea to me.

14       MR. THOMPSON:  Okay.

15       MR. FABRIZIO:  What we had proposed, Your Honor, is a

16   method where we could actually get some samples, some limited

17   discovery of these logs, and then we can actually do a sampling

18   of other data, and after we finish that sampling of other data

19   which would or can happen relatively quickly, we could actually

20   relieve defendants of their obligations to put litigation holds

21   on all of this data that they say is, you know, difficult for

22   them to simply preserve.

23       So maybe this is a solution that has some merit.  If

24   we were to get some of the limited log type data which would be

25   pretty easy to produce, we can, in very short order with the

1     help of our expert statistician, give them a sample list of,

2     you know, a few thousand or probably less content files that we

3     would be prepared to say we will live with that as our

4     discovery of content files, and that is a few thousand out of

5     many millions, Your Honor.

6            THE COURT:  Have you each retained yet experts who are

7     going to be, you know, your computer experts?

8            MR. THOMPSON:  Your Honor, this is Roderick Thompson.

9     We have just been engaged.  We have not yet had a chance to

10    retain an expert.

11           I do want to clarify something.  Mr. Fabrizio has

12    shifted to a different subject.  He was talking about discovery

13    of content files.

14           What I suggested was as a way of showing we are

15    preserving evidence, we can provide a sample of a server log

16    file which is what his stated concern was before.

17           They are really very different animals.  Content files

18    are very much larger, and that is a different issue, plus he

19    was talking about actual discovery.

20           THE COURT:  Right.  Mr. Fabrizio, I did make a note

21    that you are talking about server log data that you wanted.

22           MR. FABRIZIO:  Oh, that is absolutely right.  The

23    reason or one of the reasons we want server log data is also

24    linked to draw a sample of content files, but Mr. Thompson is

25    right.

1         This motion concerns the server log data, but I want

2    to make sure we don't get confused between what I just heard

3    Mr. Thompson say they would give us a log file just so we could

4    basically see the parameters of the log file and what is being

5    preserved.

6         That, in our mind, is meaningless.  Your Honor, if I

7    can convey a story that will inform the court as to why we are

8    somewhat entrenched on this.

9         A couple of years ago in a case that I was handling

10   for different copyright clients against a similarly situated

11   defendant, we engaged or we had counsel, by the way, Your

12   Honor, that I knew very well.

13        I had known this lawyer probably close to a decade,

14   and we had a personal friendship as well as knowing each other

15   professionally for years.

16        Counsel spent weeks negotiating the terms and

17   conditions of the production of this very type of data, and on

18   the day that we had reached agreement that defendant was

19   supposed to start preserving and producing this data to

20   plaintiffs, on that very day defendants took steps to make sure

21   all of the data would disappear and was erased.

22        That was not anything counsel did, obviously, but in

23   situations like this, counsel are powerless to stop their

24   clients from pushing a button and deleting data.

25        That gives us such great concern, given all of the

1    telltale signs from these defendants that we are going to end

2    up in a situation where we spend years fighting about what data

3    was destroyed rather than the merits of this case.

4          THE COURT:  So what about if you each engage an expert

5    and you have your experts sit down and let them guide you, help

6    guide you towards some sort of agreement?  Does that make

7    sense?

8          MR. THOMPSON:  This is Roderick Thompson, Your Honor.

9    I think we need some time to find the expert, but certainly

10   that sounds like a promising prospect.

11         Unfortunately, Mr. Fabrizio keeps going back to other

12   cases, and he is not talking about this case.

13         THE COURT:  Right.

14         MR. THOMPSON:  I will be happy to try to work on it.

15         THE COURT:  Right.

16         MR. FABRIZIO:  I will be happy to talk about this

17   case, Your Honor.  I mean, again, whether it was deliberate or

18   not, an issue we will save for later, defendants have already

19   engaged in spoliation of data or at least a manipulation of

20   data.

21         THE COURT:  All right.  I think we are repeating

22   ourselves now.  The question is what can I set up with an order

23   for you all that will be a path for you to, with some time

24   limits that works for all of us, there is nothing like a

25   deadline for me to get something done, so we have some

1    deadlines and maybe something else in there for you to try to

2    reach some agreement that you could present to me that would

3    resolve this motion.

4         MR. THOMPSON:  Your Honor, this is Rod Thompson.  If I

5    may, I think that we could provide Mr. Fabrizio informally some

6    examples of a server log data that he is talking about and try

7    to work with him to try to satisfy him that proper preservation

8    measures have been taken.

9         Hopefully that will work.  If it does not, then we can

10   get experts involved on both sides, and I think that whole

11   process could be concluded in two weeks.

12        If we are not able to resolve things, we can come back

13   to Your Honor, but I am hopeful we can.  I agree with

14   Mr. Fabrizio, despite the offensive harsh words, I think we get

15   along well, and I trust his professionalism.

16        So I would say just please give us two weeks, and I

17   think we can work something out.

18        THE COURT:  All right.  Well, that time frame makes

19   sense for me because next week I am not here.  So it is not

20   like you can be in front of me next week.

21        MR. FABRIZIO:  Your Honor, this is Steven Fabrizio.

22   Look, I appreciate the sort of seemingly reasonableness to try

23   to take more time to resolve this, but I do want to mention

24   that we did take a lot of time to try and resolve this.

25        I mean, I know Mr. Thompson said that we rushed to

1    court after their weekend of activity, but we had been in touch

2    with defendant's counsel almost from the day the complaint was

3    filed and have been in discussions for periods of weeks.

4         So we are not coming to this as lawyers who have not

5    spoken to each other, nor as lawyers who don't get along.

6         THE COURT:  Well, what is that you want, Mr. Fabrizio?

7    What do you want me to do at this point?

8         MR. FABRIZIO:  If Mr. Thompson is saying that he is

9    prepared to discuss an agreement that will then be presented to

10   the court and so ordered, that is something that I think may be

11   meaningful, but if we are talking about plaintiffs getting

12   comfort based on what defendants tell us they are doing, given

13   our history of these cases and what we see of these defendants

14   already, that's not something that is likely to lead to an

15   agreement, which is why we have asked the court for an order.

16        THE COURT:  Right.  Well, Mr. Thompson, let me say

17   this to you:

18        Regardless of the plaintiff's accusations that the

19   defendants are not the most honorable companies, putting that

20   aside, if that were not even here, what I would expect to do if

21   you could resolve this is you would present me with an order

22   that would resolve the issue, and so that's not a remarkable

23   concept.

24        So, in the broadest sense, again, without having heard

25   the details of this dispute, but in the broadest sense that

1   makes a lot of sense to me, and the only question is whether it

2   should be bilateral, and I don't have an opinion on that one at

3   this point.

4       MR. FABRIZIO:  Well, Your Honor, can I offer one input

5   into that issue?  We have actually made a motion where we have

6   put forward evidence and what we believe is something

7   sufficient to be a standard.  Defendants have made a motion.

8   They don't have --

9       THE COURT:  I know that, Mr. Fabrizio, but

10  understandably you are very focused on your motion.

11      I am focused on the bigger picture, and that is how

12  you are going to move forward with your discovery in this case,

13  and obviously your client is going to have to produce

14  electronically stored information.

15      So, to the extent that you all could have a really

16  bona fide conversation about how that is going to go forward

17  and reach maybe some basic agreements, that would be progress

18  in the case.

19      So that's not dependent upon your motion.  And just so

20  you know, because I forget, but you are not from Florida,

21  right?

22      MR. FABRIZIO:  No.  We are in Washington, D.C., Your

23  Honor.

24      THE COURT:  Right.  Okay.  Okay.  So you don't have a

25  scheduling order yet, but what will happen with Judge Jordan --

1   well, actually pretty soon it won't.

2          Well, Judge Jordan's piece will happen when he issues

3   a scheduling order.  He will be referring all discovery to his

4   paired magistrate judge.  As of April 1st, that's not me.

5          We are all shifting, but I believe the magistrate

6   judge who will be paired with Judge Jordan as of April 1st does

7   something similar to me, and that is somewhat of an abbreviated

8   discovery process.

9          When I manage discovery and I see a case like this,

10  often I will just kind of get more involved than just the

11  motion.

12         I mean, if people are having a hard time, I will

13  engage the parties in a discussion about how are you going to

14  get your discovery done and what are the issues and maybe get

15  me a discovery plan, you know.

16         So I understand you filed one motion, but clearly it

17  seems to me that you all have some or may need some court

18  involvement in your discovery process.

19         MR. FABRIZIO:  And we may, Your Honor, but on the

20  issue of preservation from plaintiffs, we have not yet even

21  have a had a discussion.

22         We got a letter.  First of all, even without a letter,

23  we, of course, spent some great deal of time with our clients

24  organizing their preservation, and then we got a letter from

25  Mr. Thompson, and we expect to have a discussion with him where

1    I think, in large part, we are prepared to tell him that

2    everything, you know, but for a few keep exceptions everything

3    in his letter, I mean his letter is not a problem.

4           MR. THOMPSON:  Your Honor, this is Rod Thompson again.

5    Maybe I am the optimist, but I hope that if Mr. Fabrizio and

6    his team and our team can sit down and talk, we can explain to

7    him and show him the evidence we are preserving, as we should

8    be on our server logs.

9           And if that doesn't convince him, if he wants an

10   order, then we can talk a suitable order.  I do think going in

11   that our mind set should be reciprocal since there is no reason

12   to think that our clients have done anything wrong, but let's

13   put that aside.

14          If he does not prejudge things, if he comes in with an

15   open mind, we can try to persuade him that, "Look, here is

16   proof we are preserving things, maybe that will satisfy him.

17          If it doesn't, then we can present an order to the

18   court and, if necessary, we can present competing forms of

19   orders.  We can present one and he can present one.

20          THE COURT:  That's right.  That's an option.  Okay.

21          So what I am going to do then is I am going to issue

22   an order that is going to say that we held a status conference

23   today, and based on that, I am going to give the parties two

24   weeks to meet and confer in an effort to reach an agreement

25   that resolves the plaintiffs motion.

1            I understand that at minimum the defendant will be

2    providing plaintiff with some server log data that the

3    defendant says should demonstrate that the defendant is

4    preserving the necessary evidence, but I am going to encourage

5    the parties to have a more expansive exchange of information to

6    attempt to reach agreement on a proposed order that will

7    resolve this dispute and possibly address broader preservation

8    of evidence issues that the parties foresee, you know, being

9    important in the case.

10            So that will be by the 18th, a week from Friday will

11   be the deadline, and I will be back in the district after the

12   18th.  And if I need to do something more, then I will figure

13   out what to do.  Okay?

14            MR. LEIBNITZ:  Your Honor, this is Andy Leibnitz.  I

15   work with Rod Thompson for Hotfile.

16            THE COURT:  Yes.

17            MR. LEIBNITZ:  Can we make clear that any document

18   production by Hotfile be for attorneys eyes only until we get a

19   protective order in place?

20            THE COURT:  I don't see a problem with that.  Do you,

21   Mr. Fabrizio?

22            MR. FABRIZIO:  I don't see a problem with that as long

23   as counsel for MCCA, who are counsel of record in this case,

24   are included in the attorneys eyes only.

25            That is as long as it is without prejudice in the

1    ultimate protective order.

2              THE COURT:  Right.  Right.  Okay.  Well, so the

3    parties I think also need to be considering preparing a

4    proposed confidentiality order for the court, too.

5              MR. FABRIZIO:  Yes, Your Honor.

6              THE COURT:  Okay.

7              MR. FABRIZIO:  And, Your Honor, what is the mechanism

8    for us to address the court again in the event we are not able

9    to reach resolution?

10             THE COURT:  Well, I need to get by the 18th a joint

11   report from the parties as to the outcome of your conferral

12   process.

13             Either you are going to submit a proposed order for me

14   that is going to resolve everything, that would be the best

15   case circumstance and you will tell me, you know, you have

16   resolved the motion.

17             The motion is being withdrawn or can be denied as moot

18   because you have resolved it.  Either way works, or you are not

19   going to be successful, and then by the 18th file with me a

20   joint report that tells me the nature of your discussions and

21   what if any agreements were reached and what the disagreements

22   are and how you each propose to go forward.  Okay?

23             MR. FABRIZIO:  Thank you, Your Honor.  Yes.

24             MR. THOMPSON:  Thank you, Your Honor.

25             THE COURT:  All right.  Thank you.  Good luck.

1          MR. FABRIZIO:  Thank you, Your Honor.

2          MR. THOMPSON:  Thank you.

3          MS. MUNN:  Goodbye, Your Honor

4                  (Whereupon the proceedings were concluded)

5

6

7

8

9                  C E R T I F I C A T E

10         I hereby certify that the foregoing is an accurate

11    transcription of proceedings in the above-entitled matter.

12

      MARCH 13, 2011              S/JERALD M. MEYERS
13    _____         _____
          DATE                    JERALD M. MEYERS, RPR-CM
14

15

16

17

18

19

20

21

22

23

24

25