UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

DISNEY ENTERPRISES, INC., )
TWENTIETH CENTURY FOX FILM CORPORATION, )
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, )
COLUMBIA PICTURES INDUSTRIES, INC., and )
WARNER BROS. ENTERTAINMENT INC., )
 )
    *Plaintiffs*, ) Case No. 11-cv-20427-JORDAN /
 )                 MCALILEY
    vs. )
 )
HOTFILE CORP., ANTON TITOV, and )
DOES 1-10. )
 )
    *Defendants*. )
 )

## JOINT REPORT ON PLAINTIFFS' MOTION FOR AN ORDER PROHIBITING SPOLIATION AND TO PRESERVE EVIDENCE

**I.  JOINT INTRODUCTION.**

Following the March 7, 2011 status conference on plaintiffs' pending motion for an order prohibiting spoliation and preserving evidence, and the Court's subsequent order that same day, the parties have extensively conferred in an effort to reach an agreed resolution of the pending motion and evidence preservation issues.  Counsel for the parties conferred telephonically at some length on March 9, March 11, and March 16, in addition to corresponding by email.  The parties have been unable to reach an agreed resolution.  Each side's position and proposal for resolving the motion and evidentiary preservation issues is presented separately below. Plaintiffs' proposed order is attached hereto as Exhibit A and defendants' proposed order is attached hereto as Exhibit B.  Given their positions, neither party believes that additional conferences are likely to resolve the outstanding issues.

1

## II.       PLAINTIFFS' STATEMENT.

After nearly two weeks of further conferences, defendants continue to refuse to agree to any form of stipulation to preserve evidence that can be presented to and so ordered by the Court. The parties have conferred over the past two weeks and discussed the evidence in defendants' possession in greater detail in an effort to identify whether they could agree on a narrower preservation proposal to submit to the Court. The parties do *not* disagree that defendants should be preserving the categories of evidence outlined in the attached revised proposed Order. The sole dispute between the parties comes down to defendants' refusal to agree to Court-ordered relief. As they previewed with the Court during the hearing, defendants condition their agreement to any stipulated Court order on a knee-jerk demand that plaintiffs agree to some unspecified form of reciprocal order. Respectfully, there is no legal basis for an order against plaintiffs, and defendants do not seriously suggest otherwise. Because a Court order is necessary to ensure that defendants preserve critical evidence, plaintiffs request that the Court rule on the pending motion and enter the attached revised proposed order, which plaintiffs have refined in light of discussions with defendants.[1]

Plaintiffs' requested order is both reasonable and necessary, because there is a substantial risk of spoliation which, contrary to defendants' unsupported protestations, is shown by more than mere innuendo. Defendants are engaged in massive infringement of copyright and do so through a business that has *no observable public presence anywhere*. Defendants operate what

---

[1] Defendants suggest that they offered to have plaintiffs look at their servers, but seeing the physical hardware would not address the spoliation concern, which is that the electronic data stored on the servers can be easily manipulated or deleted. Defendants also suggest that they offered to have Hotfile's chief technologist meet with plaintiffs' technical expert to discuss plaintiffs' expert's statements. Plaintiffs' counsel has no recollection of a serious proposal to this effect. In any event, it would not assist the resolution of this motion, because there are no factual issues to resolve regarding the evidence that plaintiffs and their expert have identified and seek to have preserved.

is, by some measures, one of the top 100 trafficked websites in the world, using over 700 servers in Texas through a shell company controlled by Titov, yet the defendants are not even registered to do business in Texas. The physical addresses used by defendants are either fictitious or merely mail drop boxes, in an apparent effort to evade detection.[2] This is the opposite of how a legitimate business would function. Pls.' Mem. at 8-9; Reply at 4-5.

Moreover, defendants already have engaged in affirmative conduct that, deliberately or not (and plaintiffs believe it was deliberate), had the effect of manipulating computer data to bias the data in defendants' favor. Specifically, defendants abruptly and dramatically changed their post-complaint business practices by terminating infringing users en masse at the time that defendants first started to preserve server data reflecting infringing downloads by their users. Ex. C (3/7/2011 Tr.) at 5-6. This had the effect of skewing the data to show less infringement than at the time the complaint was filed. Given the timing of this mass termination of infringing users, it would be disingenuous to suggest that defendants did not understand that their actions would skew server data so as to minimize the appearance of infringement on the site. In short, defendants are already manipulating evidence to suit their ends. This is consistent with a myriad of other online infringers, who, in prior cases, have despoiled similar kinds of data. This Court has made clear that it can and will appropriately consider such a history of spoliation. Pls.' Mem. at 9-12; *Dell Inc. v. BelgiumDomains, LLC*, No. Civ. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (Jordan, J.). As set forth further in plaintiffs' motion, all this points to a clear risk of spoliation. A Court order is necessary to address that spoliation risk.[3]

---

[2] It is not just a "supplier" of defendants that maintains a mail drop box, as defendants suggest; defendants' own *DMCA agent* uses a Florida address that is just a mail drop box as well. *See* Pozza Ex. X; http://www.theupsstorelocal.com/0530/.

[3] Defendants continue to cite the wrong legal standard, as there is no requirement of a "specific" or "imminent" threat of loss. Rather, the standard is a sliding scale that factors in the importance

3

Plaintiffs' request for a preservation order and expedited discovery has been narrowly targeted at the most sensitive, relevant and critical evidence from the outset. Defendants have never seriously contended that the evidence that plaintiffs specified in their proposed order is not relevant or should not be preserved. Nor have they argued that it is unduly burdensome to preserve this evidence.[4]

Defendants' refusal to agree to Court-ordered relief unless plaintiffs also agree to some sort of "bilateral" evidence preservation order is factually and legally unreasonable and unjustified. <u>First</u>, unlike plaintiffs, defendants have not filed a motion; nor have they even attempted to show that a preservation order against plaintiffs is appropriate under the governing legal standard. That alone should be dispositive. Defendants note that a preservation order imposes a real burden on a party and should not be entered lightly. Defs' Opp. at 9. Plaintiffs agree, and brought their motion because the risk of spoliation is real and serious. Plaintiffs explained at length why a targeted order is necessary under the legal standard. Defendants, on the other hand, have not attempted to make such a showing. They have not identified or explained the critical importance of specific evidence they seek to have plaintiffs preserve or made any attempt to justify or explain why the plaintiffs should be subjected to the burden of preservation – all of which, under governing legal standards, defendants must establish in order to be entitled to a preservation order. *See* Pls' Mem. at 14; Defs' Opp. at 9.

The crux of defendants' argument – indeed, the sum total of it – is that if defendants are subject to a preservation order, then plaintiffs should be too. This same kind of "tit for tat"

---

of the evidence. *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 435 (W.D. Pa. 2004). Where plaintiffs would be seriously prejudiced by destruction of critical evidence, a "legitimate" concern is required. Pls.' Mem. at 14.

[4] In the course of their discussions with defendants over the past two weeks, plaintiffs obtained more detailed information about certain of the defendants' data. Accordingly, for purposes of clarity, plaintiffs have modified their proposed preservation order to reflect this detail.

gamesmanship was squarely rejected in the oft-cited *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429 (W.D. Pa. 2004), which denied a parties' cross-motion for a preservation order that "appear[ed] to be a tactical quid pro quo response to the [opposing party's] motion rather than a motion motivated by necessity." *Id*. at 438. This Court made a similar observation two weeks ago at the hearing. Ex. C (3/7/2011 Tr.) at 22.[5] Apart from defendants' "tit for tat" argument, defendants do not seriously contend that they can meet the standard for a preservation order.[6]

Second, the nature and importance of the evidence in each side's possession is not symmetrical, or even close to it. This case is about defendants' conduct, not plaintiffs'. The defendants are in sole possession of the bulk of the critical evidence that plaintiffs will need to

---

[5] Defendants cite one unreported case, *United States v. Magnesium Corp. of Am.*, 2006 WL 2350155 (D. Utah Aug. 11, 2006), in which the United States moved for a preservation order against defendants and then was itself bound by a reciprocal preservation order. But in that case, the United States did not oppose being bound by a reciprocal order. United States of America's Reply in Support of Motion for Clarification and Other Relief, *United States v. Magnesium Corp. of America, et al.*, No. 2:01-CV-0040-B, at 2 (D. Utah July 14, 2006) (Dkt. #284). Thus, the case does not stand for the proposition that a preservation order should be entered when the legal standard has not been met, nor would such a holding be correct.

[6] Defendants did not provide plaintiffs with a proposed preservation order until after midnight Eastern time on March 18 (the date this report is being filed), and refused to further specify what evidence would be included before then. Weeks ago, before the hearing, defendants sent plaintiffs one letter stating their belief that certain evidence should be preserved. But that letter included such extraneous categories as communications relating to "Google Docs," which are simply irrelevant – and certainly not close to being sufficiently important to the litigation that they must be subject to a preservation order. Indeed, courts have rejected discovery requests for similar kinds of categories of evidence. On March 16 and 17, in response to plaintiffs' questions as to what proposed order defendants would submit with this status report, defendants' counsel indicated that the order might include a narrower set of categories than that identified in the letter, but defendants did not further specify what the order might entail until sending the proposed order. The proposed order omits some of the categories in defendants' letter, but is plainly overbroad and unduly burdensome in its scope. Given the late timing of defendants' proposed order, defendants' refusal to confer about its scope before this date, and the fact that it is being submitted without a motion for relief, if the Court is inclined to order reciprocal relief against the plaintiffs, plaintiffs request the opportunity to submit further briefing regarding its propriety, including its scope, the relevance of the categories therein, and the undue burden it would impose, particularly if blindly extended to all of plaintiffs' "affiliates."

5

carry their burden of proving defendants' copyright infringement. Pls' Mem. at 7-8, 16-17. In contrast, little of the evidence in plaintiffs' possession will significantly bear on the claims in the case or any anticipated defenses.

Third, while everything about defendants, their business operations and their actions to date create a reasonable apprehension that evidence will not be preserved, no showing whatsoever has been made that the plaintiffs would destroy or fail to preserve relevant documents, which is no doubt why defendants have not made an actual motion. Defendants' mischaracterized citation of a single case (*Benay v. Warner Bros. Entertainment, et al.*) is unavailing. In *Benay*, the plaintiffs made an *allegation* of evidence alteration against a set of defendants that included Warner Bros. Entertainment, on the basis that defendants had produced different versions of some documents.[7] However, the court *denied* the spoliation motion and granted summary judgment *for defendants* – it did not merely dispose of the case without reaching the spoliation issue, as defendants have suggested. The court certainly did not make any finding that spoliation had occurred. In contrast, plaintiffs here have cited a string of cases revealing a history of evidentiary spoliation by defendants in online copyright enforcement actions in analogous circumstances. Pls.' Mem. at 9-10.

Defendants feign insult and indignation at the suggestion that they are not as legitimate and established as plaintiffs. However, the facts are that defendants operate through multiple foreign shell companies, with no public presence anywhere, through fictitious addresses and mail drop boxes. Defendants' superficial point-by-point comparison of plaintiffs' operations to theirs ignores the seminal fact that, while plaintiffs may use holding companies and operate in foreign companies, plaintiffs have a tangible presence in the United States and can readily be found by

---

[7] The *Benay* defendants explained that they possessed and produced multiple draft versions of the same documents.

6

anyone looking for them.  Defendants cannot.  And, while defendants *now* claim they will honor their preservation obligations, defendants were first sued for copyright infringement over a year ago, and yet continued to allow data to be deleted and altered.  Pls.' Mem. at 13.[8]  Defendants do not seriously contest any of this.  At this stage of the proceeding, given the extreme importance and vulnerability of the data at issue, respectfully, plaintiffs plainly have a "legitimate concern," that evidence may be altered, moved or despoiled.  Pls.' Mem. at 14.

In addition to the evidence preservation order, plaintiffs request that the Court order expedited discovery of the content reference data including server logs discussed at the hearing. Defendants have no meritorious objection to producing this data; their assertion that statistical analyses are irrelevant is belied by the numerous courts that have found these very analyses not only relevant but highly probative.  Pls.' Mem. at 20.  During the conference process, defendants asked plaintiffs whether they would be willing to accept data with personally identifiable information, such as IP addresses, redacted.  Plaintiffs responded with a proposal for producing content reference data with redactions on an interim basis (without waiver to plaintiffs seeking an unredacted version at a later time).  But defendants reverted to their position that they would not produce anything.  As discussed above, defendants already have biased some of the log data. Expedited production is necessary to ensure that a snapshot of this key evidence is preserved.

### III. HOTFILE'S STATEMENT

#### A. The Parties' Negotiations

Two weeks ago, the Court ordered the parties to meet-and-confer regarding document

---

[8] Defendants try to confuse the issue by arguing that Liberty Media agrees that there has been no spoliation.  The statement cited by defendants in an agreed motion by Liberty Media and defendants, made only in the context of a request for an extension of time, is not to the contrary. Liberty Media sued defendants in a different case in 2009, and another copyright owner (Perfect 10) sued defendants in 2010, but content files remained subject to deletion after these *previous* cases were filed.  Pls.' Mem. at 13.

preservation. To overcome Plaintiffs' mistrust of Hotfile, Hotfile offered to host Plaintiffs and their counsel in Bulgaria to demonstrate the document preservation protocols in place in Hotfile's operations. Plaintiffs refused. To allay Plaintiffs' fear that Hotfile's data remains prone to deletion, destruction, or removal, Hotfile offered to show Plaintiffs' representatives the over 700 servers deployed in Dallas. Plaintiffs refused. To address the statements of Plaintiffs' technical expert set forth in Plaintiffs' motion, Hotfile's chief technologist offered to meet with Plaintiffs' expert. Plaintiffs refused.

Hotfile then opened its doors to Plaintiffs' scrutiny of Hotfile's preservation efforts, down to the specific fields recorded in each of Hotfile's user and content databases. Hotfile's counsel answered dozens of questions regarding information preserved and the manner of recording of continuous changes to certain records (such as download counts). Hotfile further produced samples of its server logs to demonstrate the care given to preservation of every user transaction at issue since within days of the filing of this suit.

After submitting to more than one week of such scrutiny – based on the belief that the parties could at least agree to a circumscribed set of database records subject to preservation – Plaintiffs informed Hotfile that they had no intention of seeking a preservation order any different than the one submitted with their motion over four weeks ago. Plaintiffs thus used the meet-and-confer process to extract discovery for the purpose of adding specificity to their proposed order, with no intent of narrowing their proposal in even the slightest regard. This filing ensued.

**B.    No Basis Exists For A Preservation Order – Indeed, By Plaintiffs' Own Measures, *They* Pose A Greater Risk Of Document Destruction Than Hotfile**

Plaintiffs have not met their burden to obtain a preservation order. Plaintiffs bear the burden of demonstrating a "*specific, significant and imminent* threat of loss." *Capricorn Power*

8

*Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433-435 (W.D. Pa. 2004). It is not enough to simply allege an "indefinite or unspecific possibility of the loss or destruction of evidence." *Id.*

Plaintiffs have not come close to meeting this standard. After learning of this lawsuit, Defendants' promptly hired counsel; Mr. Titov promptly filed a candid declaration as to Hotfile's preservation measures and where he lives; Hotfile provided samples of its server logs as a part of the court-ordered negotiations; and an article issued (cited by Plaintiffs) entitled, "Hotfile Goes To War Against Copyright Infringers."[9] Pozza Decl. Ex. E.

Faced with a vacuum of evidence which might support a preservation order, Plaintiffs attacked Defendants as "unscrupulous" foreigners operating under separate corporate names, using "shell corporations" accessible through mail drop boxes, "operating in the shadows" in Panama, and skirting their document preservation duties as demonstrated in prior litigation.[10] In fact, each of these alleged faults redounds to Plaintiffs' detriment far more than to Hotfile's.

While Hotfile indeed has ties to Bulgaria and Panama, Plaintiffs have incorporated entities and employed personnel from Sri Lanka to Mexico. Indeed, Hotfile's corporate agent in Panama is the same as the agent used by General Electric – which shares its parent company with Universal Studios, one of the plaintiffs here. While Hotfile utilizes an operating company

---

[9] Relying on this article, Plaintiffs accuse Hotfile of attempting to "bias" the data in Hotfile's possession by redoubling efforts to combat infringement after the filing of the suit. This defies credulity. Plaintiffs cannot justifiably sue Hotfile for infringement then complain when Hotfile combats infringement. In any event, Hotfile's logging of server activity since before implementing these measures permits Plaintiffs to reconstruct Hotfile's databases if Plaintiffs so desire – eliminating any claims of "biasing" to data.

[10] Plaintiffs also attempt to paste Hotfile with guilt by association, citing *Dell Inc. v. Belgium Domains, LLC*, No. Civ. 07-22674, 2007 WL 6862341 (S.D. Fla. Nov. 21, 2007). This case lacks any applicability. Dell did not involve any preservation order, but rather involved an ex parte motion for asset seizure and other preliminary injunctive relief against demonstrated serial wrongdoers who had proven likely to abscond if served with process. That is plainly not the case here – as indeed Hotfile has already proven by preserving evidence and litigating this case.

(an LLC) in Bulgaria and a holding company (a corporation) in Panama, Plaintiffs employ dozens of companies worldwide, including multiple corporate structures and over half a dozen corporations immediately recognizable as holding companies from their name. While one of Hotfile's suppliers has employed a drop box to obtain mail as authorized by Florida law, Plaintiffs themselves (not just Plaintiffs suppliers) deploy drop boxes to gather mail when convenient, as even a cursory internet search reveals.[11]

Most importantly – despite Plaintiffs' innuendo – only one party in this lawsuit has been viewed with suspicion by a court in its document preservation efforts, and it was not Hotfile. Plaintiffs contend that Hotfile has demonstrably failed to preserve documents in prior copyright litigation brought by such pornographers as Liberty Media. *See* Reply at 6 ("defendants here have admitted that they did not take all necessary steps to preserve relevant evidence . . . even though defendants had already been sued twice for copyright infringement"). However, *Liberty Media itself disagrees*, as stated in a recent joint motion to postpone proceedings even in the absence of a preservation order. *See* Joint Motion, *Liberty Media Holdings, LLC. v. Hotfile Corp.*, et al., Case No. 11-20056-JORDAN [Dkt. No. 31 at 2] ("No document preservation issues warrant denial of this jointly-sought motion").

In fact, Plaintiff Warner Bros. represents the only party in this case ever viewed with suspicion in its document preservation efforts by the courts. Two weeks ago, Plaintiffs represented to this Court that they "have never been accused as far as I know of destroying evidence in cases like this." Tr. 19:17-18. This was incorrect. In the copyright case of *Benay et*

---

[11] Plaintiffs cite Hotfile's failure to register to do business in Texas – despite utilization of servers there – as evidence of Hotfile's unscrupulousness. However, no authority requires Hotfile to register to do business in Texas simply because a supplier (Lemuria) uses servers there. *See* Tex. Bus. & Orgs. Code, title 1, ch.9, Sections 9.251(9) & (15) (neither transacting business in interstate commerce nor mere ownership of property requires an entity to register to do business in Texas).

*al. v. Warner Bros. et al*, Case No. 2:05-cv-08508-PSG (C.D. Cal.), as recently as 2008, Warner Brothers (a named Plaintiff here) was the subject of a motion for entry of default for spoliation, or, in the alternative for evidentiary sanctions for having "critically altered" documentary evidence. Though the court disposed of the case on other grounds, the court noted in relation to the spoliation accusations that "Defendants' explanation is somewhat less than satisfying." Order at 16 (Ex. D). Moreover, the court purposefully "did not consider any of the allegedly altered or inconsistent documents . . . ." (*Id.*)

In short, utilizing the same criteria that Plaintiffs have made the focus of their motion, Plaintiffs' practices present more reason to enter a document preservation order than Hotfile's.[12]

| **Asserted Ground For Preservation Order** | **Plaintiffs** | **Hotfile** |
|---|---|---|
| Possesses electronic data capable of destruction | ✓ | ✓ |
| Operates in multiple countries using "false" (*i.e.* corporate) names | ✓ | ✓ |
| Employs "shell" (*i.e.*, holding) companies | ✓ | ✓ |
| Has suppliers which use mail drop boxes | ✓ | ✓ |
| Failed to adequately explain document preservation efforts to Court in prior copyright litigation | ✓ | |

Thus, if a preservation order is appropriate at all, it should be bilateral. *See* Ex. B.

    C.    **No Basis Exists For Expediting Discovery**

While courts expedite discovery where a plaintiff seeks a preliminary injunction or in

---

[12] Plaintiffs derogate Hotfile's request for equality before the law (i.e., bilateralism in any preservation order) as "tit for tat" gamesmanship, citing *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429 (W.D. Pa. 2004). Given that *Capricorn Power* rejected all parties' requests for document preservation orders, Hotfile agrees that the case should govern. However, if any preservation order issues, authority supports making it bilateral. *See United States v. Magnesium Corp.*, 2006 WL 2350155 at *4 (D. Utah 2006) (entering requested preservation order but making obligation reciprocal because "in fairness, the order should be mutual"), *vacated on other grounds by* 616 F.3d 1129 (10th Cir. 2010).

similar circumstances, Opp. at 15, no case cited by Plaintiffs or known to Hotfile has ever permitted expedited discovery by a party that openly waited "well over a year" before bringing suit.  Complaint ¶ 37.  There is simply no emergency here.

The purpose of Plaintiffs' expedited discovery also remains unsupportable.  Plaintiffs seek to undertake a statistical sampling of Hotfile's records to prove the incidence of alleged infringement.  However, under Hotfile's safe harbor protection afforded by the Digital Millennium Copyright Act ("DMCA"), such statistical sampling will never be considered.  *See Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 524-25 (S.D.N.Y. 2010) ("pervasive copyright-infringing, however flagrant and blatant, does not impose liability on the service provider.  It furnishes at most a statistical estimate of the chance any particular posting is infringing" – which the Court found insufficient to defeat a defense under the DMCA).

In any event, Hotfile should not have to produce its information twice.  Plaintiffs contend that, "on an interim basis," Hotfile should produce records which redact users' IP addresses to protect their constitutionally-protected privacy.  Plaintiffs then suggest that they will "seek[] an unredacted version at a later time."  No reason exists to so burden Hotfile.  Instead, the parties should proceed with orderly discovery as contemplated by the Federal Rules.

To meet Plaintiffs' demands for urgent discovery, Hotfile has voluntarily agreed to an early conference of counsel under Rule 26(f) so that the parties can exchange early discovery requests.  This conference remains only two weeks away.  No need for further haste exists.

## IV.     JOINT CONCLUSION

For the reasons set forth above, plaintiffs respectfully submit that the Court should enter their Proposed Order, while defendants respectfully submit that the Court should enter their Proposed Order.

Dated:  March 18, 2011

Respectfully submitted,

By: s/ Karen L. Stetson
Karen L. Stetson

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305-416-6880
Fax: 305-416-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Daniel M. Mandil (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA  91403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Phone: 202-639-6000
Fax: 202-639-6066

*Attorneys for Plaintiffs*


By: s/Janet T. Munn

Janet T. Munn, Fla. Bar No. 501281
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone:  305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

And

Roderick M. Thompson (admitted *pro hac vice*)
Andrew Leibnitz (admitted *pro hac vice*)
Deepak Gupta (admitted *pro hac vice*)
Janel Thamkul (admitted *pro hac vice*)
FARELLA BRAUN + MARTEL LLP

13

>235 Montgomery St.
>San Francisco, CA  94104
>Telephone:  415.954.4400
>Telecopy: 415.954.4480
>Counsel for Defendants

26501\2547812.1
# 442387 v1