Case 1:11-cv-20427-KMW Document 48-4 Entered on FLSD Docket 03/18/2011 Page 1 of 17
Case 2:05-cv-08508-PSG-FMO Document 176 Filed 03/14/08 Page 1 of 17 Page ID
#:2607

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

| Proceedings: | (In Chambers) Order (1) GRANTING Defendant's Motion for Summary Judgment filed 1-11-08, (2) DENYING Plaintiffs' Motion For Entry of Default Judgment for Spoliation of Evidence, or in the Alternative, for Evidentiary Sanctions, for an Order Striking the Affirmative Defense of Independent Creation, and/or for an Adverse Jury Instruction, (3) declaring MOOT Plaintiffs' Motion for Partial Summary Judgment filed 1-14-08, and (4) declaring MOOT Defendants' Motion to Trifurcate |
|---|---|

This matter comes before the Court on the parties' four separate motions: (1) Defendants' motion for summary judgment on all Plaintiffs' claims; (2) Plaintiffs' motion for partial summary judgment on certain affirmative defenses; (3) Plaintiffs' motion for entry of default judgment for spoliation of evidence, or in the alternative, for evidentiary sanctions, for an order striking the affirmative defense of independent creation, and/or for an adverse jury instruction; and (4) Defendants' motion to trifurcate. The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving and opposing papers, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion for partial summary judgment. This renders the remaining two motions MOOT.

I.      BACKGROUND

The instant dispute involves the motion picture *The Last Samurai*, written, produced, marketed and distributed by Defendants Warner Brothers Entertainment, Inc. ("Warner Bros."),

| CV-90 (06/04) | **CIVIL MINUTES - GENERAL** | Page 1 of 17 |
|---|---|---|

Case 1:11-cv-20427-KMW Document 48-4 Entered on FLSD Docket 03/18/2011 Page 2 of 17
Case 2:05-cv-08508-PSG-FMO Document 176 Filed 03/14/08 Page 2 of 17 Page ID
#:2608

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

Radar Pictures, Inc. ("Radar Pictures"), Bedford Falls Productions, Inc. ("Bedford Falls"), Edward Zwick ("Zwick"), Marshall Herskovitz ("Herskovitz") and John Logan ("Logan") (collectively "Defendants").

    Plaintiffs are two brothers, Aaron and Matthew Benay ("Plaintiffs"), who between 1997 and 1999, developed a screenplay entitled "The Last Samurai" (the "Screenplay"), registered with the Writers Guild of America in 1999 (registration no. 131861-01) and with the copyright office on February 23, 2001 (registration no. PA u 2-569-386). Plaintiffs allege that on May 9, 2000, their agent orally pitched the Screenplay to Richard Solomon ("Solomon"), President of Production for Bedford Falls. (Defendant's Separate Statement of Uncontroverted Material Facts and Conclusions of Law, hereinafter "UF", ¶ 18.) On May 16, 2000, at Solomon's request, Plaintiffs' agent allegedly submitted a written copy of the Screenplay to Bedford Falls (UF, ¶ 19), but Defendants later informed Plaintiffs they were not interested in producing the work. (FAC, ¶ 19).

    On February 24, 2002, a major industry publication published an announcement that production would begin on a film entitled *The Last Samurai* starring Tom Cruise. (Benay Dec., ¶ 4). Plaintiffs assert that in February of 2001, New Regency had optioned the Screenplay but after the announcement declined to exercise the option to purchase the script. On December 5, 2003, Defendants publicly released *The Last Samurai*.

    According the Defendants, writers Zwick and Logan conceived of and developed *The Last Samurai* in late 1999/early 2000. In 1997, Defendant Zwick was attached to direct a screenplay developed by Radar Pictures, then known as *West of the Rising Sun*, dealing with the subject of an American Civil War veteran who journeys to Japan in 1871 during the country's own civil war, finds himself leading the first Samurai cattle drive, and in doing so, helps him reaffirm the meaning of life and the will to live it well. (UF, ¶ 2.) Zwick states that by later 1999, he had conceived of his own approach to a Westerner confronting Japanese culture - "an 'Eastern-Western' that would combine elements of the great Japanese Samurai films with the politics of American Imperialist culture in the late 1800's . . . ." (Zwick Dec. ¶ 13.) In early 2000, Zwick invited Defendant John Logan to work with him on his "Eastern-Western," and via a phone and fax correspondence, they zeroed in on the Satsuma rebellion and the famous Japanese figure, Saigo Takamori, known as "The Last Samurai." (Id. ¶ 15.) Defendants claim that by April 2000 (the month before Plaintiffs pitched their Screenplay to Bedford Falls), Zwick and Logan had independently conceived of all the central elements of what would become the motion picture *The Last Samurai*. (Zwick Dec. ¶ 31.)

Case 1:12-cv-20427-KMW Document 48-4 Entered on FLSD Docket 03/18/2011 Page 3 of 17
Case 2:05-cv-08508-PSG-FMO Document 176 Filed 05/14/08 Page 3 of 17 Page ID
#:2609

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

After the release of *The Last Samurai,* Plaintiffs filed a lawsuit against Defendants alleging that Defendants released and distributed nationally and internationally a motion picture "substantially similar to Plaintiffs' Screenplay" and which used the ideas and concepts embodied in their Screenplay. (FAC, ¶ 22.)

    A.    <u>Plaintiffs' Screenplay "The Last Samurai"</u>

Plaintiffs' Screenplay features protagonist James Gamble ("Gamble"), a disillusioned Civil War veteran who is now a West Point professor with a wife named Britany and a young son. Having served under Ulysses S. Grant during the war, Gamble suffers flashbacks to the memory of a battle during which he accidentally killed eight of his own men. Grant excused the mistake, but let Gamble know that he would expect him one day to repay the favor. Near the beginning of the Screenplay, Gamble's former commanding officer calls on the favor and sends Gamble to Japan to assist the Emperor in attempting to modernize the national army and suppress the samurai chieftans.

Plaintiffs' antagonist is a samurai warrior named Saigo, based on the historical figure Saigo Takamori, also known as "The Last Samurai." Saigo deceives the Emperor into believing that Lord Eto is behind a wave of attacks on foreigners, causing the Emperor to command Gamble to lead his forces against Lord Eto. After Gamble kills Lord Eto, Saigo seeks revenge on Lord Eto's behalf and kills Gamble's son in a Christian church. Gamble, in turn, seeks to avenge his son's death. With the aid of Masako, a Japanese female warrior who abandons Saigo, the two manage to defeat and kill Saigo, but only at the expense of Masako's own life. With his honor restored, Gamble returns to America with Britany and their newborn child, whom they name Masako.

    B.    <u>Defendants' Motion Picture *The Last Samurai*</u>

*The Last Samurai* tells the story of Nathan Algren (Tom Cruise), a disillusioned veteran of the Indian Campaigns in the United States. Algren's former commanding officer hires him to accompany him to Japan to train the Emperor's new peasant army using modern weapons. While there, Algren takes a fledgling army into battle against an army of samurai led by Katsumoto, a character based on Saigo Takamori. Katsumoto captures Algren and takes him to his village, where Algren begins to learn the way of the samurai and the beauty of traditional Japanese culture. Algren also begins to develop a relationship with Taka, the beautiful widow of a samurai Algren had killed. After helping his captors beat back a ninja attack, Algren earns the respect and admiration of his captors.

Case 1:11-cv-20427-KMW Document 48-4 Entered on FLSD Docket 03/18/2011 Page 4 of 17
Case 2:05-cv-08508-PSG-FMO Document 176 Filed 03/14/08 Page 4 of 17 Page ID
#:2610

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

Later, Algren is allowed to return to Tokyo where Katsumoto is imprisoned. Algren helps him escape, and the two learn that the Imperial Army is marching out to do battle with the samurai. Algren joins the samurai in their last stand. The Imperial Army decimates the samurai, and Katsumoto, with Algren's help, commits ritual suicide. When Algren returns to Tokyo to present Katsumoto's sword to the Emperor, he convinces the Emperor not to enter an arms treaty with the United States. The film ends with Algren returning to Taka and her traditional Japanese way of life in the samurai village.

  C. <u>First Amended Complaint</u>

Plaintiffs' First Amended Complaint alleges three claims - copyright infringement, breach of an implied-in-fact contract, and intentional interference with prospective economic advantage. Defendants now move for summary judgment on all Plaintiffs' claims. Plaintiffs, too, seek summary judgment on certain affirmative defenses, and also move for entry of default judgment for spoliation of evidence, or in the alternative, for sanctions. Finally, Defendants seek trifurcation of the trial.

II. <u>DEFENDANT"S MOTION FOR SUMMARY JUDGMENT</u>

  A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *Id.* at 257.

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *Anderson,* 477 U.S. at 250-51.

If the moving party seeks summary judgment on a claim or defense for which it bears the

Case 1:11-cv-20427-KMW Document 48-4 Entered on FLSD Docket 03/18/2011 Page 5 of 17
Case 2:05-cv-08508-PSG-FMO Document 176 Filed 03/14/08 Page 5 of 17 Page ID
#:2611

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. Fed. R. Civ. P. 56(e).

    B.    <u>Copyright Infringement</u>

Plaintiffs' first count claims copyright infringement against Defendants. To prevail on a copyright infringement claim, a plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991)). A presumption of copying of plaintiff's work by defendants arises where plaintiff offers proof that author of defendants' work had reasonable opportunity to gain access to plaintiff's work and the two works are substantially similar. *Narell v. Freeman,* 872 F.2d 907, 910 (9th Cir. 1989). To rebut this presumption, defendants must then produce evidence which offers an alternative reason for the similarity other than copying (i.e., independent creation). *Id.*; 17 U.S.C.A. § 101, *et seq.*

    1.    *Substantial Similarity*

For purposes of their summary judgment motion, Defendants do not contest ownership or access. (Motion at 1, fn. 2.) Therefore, the sole issue before the Court on the copyright infringement claim is whether Defendants' film *The Last Samurai* is substantially similar to Plaintiffs' Screenplay of the same name.

Substantial similarity is a highly fact specific inquiry, which contains an extrinsic and intrinsic component. *Funky Films,* 462 F.3d at 1077. At summary judgment, the Ninth Circuit applies only the extrinsic test. *Id.* This is so because the intrinsic test, which examines an "ordinary reasonable person['s]" subjective impressions of the similarities between two works, is exclusively the province of the jury. *See Shaw v. Lindheim,* 919 F.2d 1353, 1360-61 (9th Cir. 1990). A "plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

The extrinsic test is objective in nature and focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the two works. *Id.* (citations omitted). In applying the extrinsic test, the Court "compares, not the basic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Berkic v. Crichton,* 761 F.2d 1289, 1293 (9th Cir. 1985). If all of the similarities between the works arise from the use of unprotectable ideas, the plaintiff fails to satisfy the extrinsic test. *Kouf,* 16 F.3d at 1045.

Protectable expression includes the specific details of an author's rendering of ideas, while *scenes-à-faire,* which flow naturally from generic plotlines, are not protectable. *Metcalf v. Bochco,* 294 F.3d 1069, 1074 (9th Cir. 2002). The Court "must take care to inquire only whether 'the *protectable elements, standing alone,* are substantially similar.'" *Cavalier v. Random House,* 297 F.3d 815, 822 (9th Cir. 2002) (quoting *Williams v. Crichton,* 84 F.3d 581, 588 (2d Cir. 1996) (emphasis in original)). By doing this, the Court filters out and disregards the non-protectable elements in making the substantial similarity determination. *Funky Films,* 462 F.3d at 1077 (internal quotation omitted).

Plaintiffs allege several similarities between Defendants' film and their Screenplay. Aside from their identical titles, "the premise of both works is an embittered, guilt-ridden Civil War officer asked to go to Japan and train the inept Imperial Army in modern war strategies utilizing the contemporary weaponry of the Civil War against the traditional Samurai warriors who threaten the Emperor and country, which never happened in Japanese history." (Opp'n at 19.) In addition, Plaintiffs highlight, among other things, that both works begin in urban America after the Civil War; both works have an American protagonist who sails to Japan; both works describe the ship's entry in Tokyo Bay with a description of Mt. Fuji, which cannot really be seen from the bay; both works are epic, violent, and reverential to Japanese culture; both protagonists are charismatic, bitter due to war, and have flashbacks to the battles in America; and both works portray samurai on horseback and costumed in armor. (Plaintiffs' Appendix, Ex. 18.)

While on cursory review, these similarities may appear substantial, a closer examination of the protectable elements, including plot, themes, dialogue, mood, setting, pace, characters, and sequence of events, exposes many more differences than similarities between Plaintiffs' Screenplay and Defendants' film.

   *(a) Plot*

A work's plot is properly defined as "the sequence of events by which the author expresses his theme or idea . . . ." *See, e.g., Shaw,* 919 F.2d at 1363. Here, both *The Last*

Case 1:11-cv-20427-KMW Document 48-4 Entered on FLSD Docket 03/18/2011 Page 7 of 17
Case 2:05-cv-08508-PSG-FMO Document 176 Filed 03/14/08 Page 7 of 17 Page ID
#:2613

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

*Samurai* and Plaintiffs' Screenplay concern a narrative about an embittered, guilt-ridden Civil War officer asked to go to Japan in the 1870's and train the inept Imperial Army. The American officer introduces modern war strategies utilizing the contemporary weaponry of the Civil War, for use against the traditional Samurai warriors who threaten the Emperor and country. Both stories end with the American coming to see the beauty of the traditional Japanese way of life.

The two stories share a few very general plot similarities. However, the manner in which the parties develop the two narratives are significantly different. Plaintiffs' protagonist, Gamble, emerges from domestic security, to despair at the loss of his son, to revenge and triumph when he defeats his ruthless antagonist, Saigo. In contrast, the protagonist in Defendants' film moves from isolation and self-destructive behavior, to the discovery of traditional values and a way of life that he later comes to embrace. Thus, unlike Plaintiffs' Screenplay, which is largely a revenge story, Defendants' film is more a "captivity narrative reminiscent in some respects to *Dances With Wolves*." (Zwick Dec., Ex. I, Chs. 11-18).

    *(b)    Characters*

          *i.    War Veteran Protagonist*

Other than being psychically wounded war veterans who suffer flashbacks, the protagonists of each work - James Gamble in Plaintiffs' Screenplay and Nathan Algren in Defendants' film - are quite different in personality, background and emotional journey. Before going to Japan, Plaintiffs' Gamble is a happily married West Point professor with a beautiful wife named Britany, a five-year old son and an overbearing father-in-law. Defendants' Algren, on the other hand, is depicted as an unmarried loner, a drunk, and an abject failure with a meaningless job promoting Winchester guns.

The two protagonists' back stories differ as well. Gamble's nightmares stem from his accidentally killing eight of his own men during a Civil War battle. This past event establishes the debt Gamble owes to his former commanding officer, President Ulysses Grant, and why he feels obliged to leave his family and comfortable life to go to Japan. When Gamble reaches his low point in an opium den in Japan, the flashback is used to reinforce his sense of failure and despair after his son's death and the loss of half his army while seeking his personal revenge on the samurai.

In contrast, Algren's flashbacks revolve around the savagery and brutality that occurred when he was compelled to take part in an attack on the Indians. This past memory explains

Case 1:11-cv-20427-KMW Document 48-4 Entered on FLSD Docket 03/18/2011 Page 8 of 17
Case 2:05-cv-08508-PSG-FMO Document 176 Filed 03/14/08 Page 8 of 17 Page ID
#:2614

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

Algren's instability and isolation at the beginning of the story. It also provides the foundation for Algren's attraction to the traditional samurai way, which acts as a parallel to the Native American way.

Differences may also be seen in the emotional journeys of the two characters. In Plaintiffs' Screenplay, Gamble starts off as a happy professor living a secure life with his loving family. Once in Japan, Gamble faces defeat and failure when the samurai kill his only son, and his efforts at revenge lead to the death of half his battalion. He later regains his sense of honor when he avenges the death of his son and kills the last samurai, Saigo. In the end, Gamble returns to the West, but with a deep appreciation of the traditional Japanese way of life. This is represented in the Gambles' home, decorated with tatami mats and shoji screens, and in Gamble's and Britany's choice to name their newborn child Masako.

Defendants' film begins with Algren at a low point, represented as a lonely, drunk failure. When Algren is captured by the samurai, he spends several months training with them and learning their discipline. Though as the only foreigner, Algren is an outsider in the village, he slowly develops a close connection with the last samurai Katsumoto, and also Taka, the beautiful widow of a samurai Algren killed in battle. Algren ultimately turns his back on the American way and joins Katsumoto and the other samurai in the final battle against the Imperial Army. At the end of the story, Algren chooses Japan over America, and returns to Taka and her traditional village way of life.

      ii.    "The Last Samurai" Character

Both Plaintiffs and Defendants model the last samurai character on the true historical figure, Saigo Takamori. Nevertheless, their respective depictions differ significantly. Plaintiffs portray Saigo as a treacherous warlord who tricks the Emperor and betrays his allies. Saigo is not only deceitful, but also ruthless, as portrayed by his attack on a Christian church service which results in the death of Gamble's young son.

In contrast, Defendants represent the last samurai character, Katsumoto, as not only strong and fearsome, but also as honorable and spiritual. Katsumoto fights the Imperial Army because he wishes to preserve the dignity and honor of the samurai way of life. Unlike Saigo, Katsumoto respects the Emperor, defers to his godlike presence, and is willing to kill himself at the Emperor's wish.

      iii.    The Emperor Character

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

Plaintiffs portray the Emperor as a young ruler, "most eager to learn [the] Western ways." (Defendant's Ex. B at 42.) In one scene, the Emperor announces to his advisors, "Gentlemen, welcome to the nineteenth century," and receives them at a table set with crystal, china, and Western cuisine. (Id. at 37.) He views the samurai as feudal lords who terrorize the country, starve their people and kill for sport, in stark opposition to his own vision for liberty, progress and modernization. (Id. at 43.)

Defendants, on the other hand, depict the Emperor as a curious yet tentative young man. (Defendant's Ex. U at 357.) The Emperor displays his hesitancy throughout the story, and is torn between listening to his former teacher Katsumoto or following the advice of his advisor Omura, who has been urging the Emperor to sign a treaty with the United States. At the film's end after Katsumoto has been killed, the Emperor finally stands up to Omura and shows his strength. In a declaration in front of counsel, the Emperor declares that he will reject the treaty, and that Japan cannot forget its history and identity. (Id. at 533.)

### iv. *Japanese Female Character*

Plaintiffs' story includes a character named Masako, a stunningly beautiful female samurai warrior who is also Saigo's double-crossing lover. Instead of killing Gamble as Saigo orders her to do, Masako betrays Saigo and assists Gamble in avenging his son's death. In a battle against Saigo, Masako ultimately sacrifices her life for Gamble by hurling her body under Saigo's sword.

In Defendants' story, the main female character is Taka, the beautiful sister of Katsumoto and a widow of one of the samurai that Algren killed. When Katsumoto imprisons Algren, he brings him back to his village and orders Taka to care for him. Taka despises him at first, not only because he killed her husband, but also because she finds he is "vile" and "smells like pigs." (Defendant's Ex. U at 406). Nonetheless, over time, a deep bond forms between the two and, she becomes Algren's love interest.

### v. *Wife and Son*

In Plaintiffs' Screenplay, Gamble's wife Britany and his son Trevor play an integral role in the development of the plot. After Gamble leaves West Point, Britany follows Gamble to Japan with her young son, which sets the stage for Trevor's murder by Saigo and Gamble's subsequent search for revenge. Britany's character is sassy and somewhat impulsive, and after the death of Trevor, she becomes as intensely revenge-seeking as her husband. Her character

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

has no equivalent in Defendants' motion picture.

   *(c)*  *Theme or Premise*

 Although both works explore general themes of the embittered war veteran, the "fish-out-of water," and the clash between modernization and traditions, they do so in dissimilar ways. Plaintiffs' Gamble suffers feelings of guilt when he fails to protect his family and his troops. He encounters a classic villain, Saigo, and restores his honor by seeking revenge and killing him. In general, Plaintiffs' Screenplay is an action-based revenge story with multiple subplots involving Saigo's trickery, Masako's double-crossing and Gamble's ultimate triumph, the killing of the last samurai.

 By contrast, Defendant's Algren does not view Katsumoto as his enemy. Instead of siding against the samurai, Defendants' Algren actually joins Katsumoto and the samurai as a way to restore his feelings of isolation and loneliness. Thus, the samurai act as role models or emblems for a traditional yet beautiful way of life that Algren admires and eventually becomes a part of.

   *(d)*  *Setting*

 Both works begin in urban America after the Civil War; both works include a scene of the protagonist sailing to Japan; and both works stage the majority of the story in Japan in the 1870's. Aside from these broad similarities, Plaintiffs also try to draw connections in the two expressions in that both feature shots of the Imperial Palace, the Imperial training field, multiple battles in foggy forests and sunny plains, and interiors and exteriors of the samurai retreat. (Opp'n at 20.)

 Despite commencing in America, the American settings of the two works are drastically different. Plaintiffs' Screenplay opens with an outdoor snow scene where Gamble is throwing snowballs with his cadets at West Point. This sets the stage for the contrast between the security of Gamble's life in America, surrounded by his family and students, and his subsequent foray into dangerous and action-packed Japan in the 1870's.

 In contrast, Defendants' film opens with a shot of Algren, drunk and alone, inside the back room of a convention hall in San Francisco. Unlike the snowy idyllic scene in Plaintiffs' Screenplay, there is nothing comforting or secure about Algren's surroundings. Moreover, while Plaintiffs' Screenplay does include scenes of the samurai retreat, it does not feature lengthy

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

captivity scenes in the samurai village, as does Defendants' film.

Furthermore, it is important to note that descriptions or techniques common to a given subject are not entitled to copyright protection. *Scenes-à-faire,* "situations and incidents which flow naturally from [the] basic plot premise," are one such form of noncopyrightable expression. *Berkic v. Crichton,* 761 F.2d 1289, 1293 (9th Cir. 1985). Here, any similarities in the settings of the two stories are *scenes-à-faire* that flow naturally from the basic premise of the historical Satsuma Rebellion in Japan. Japan in the 1870's was a time when the Japanese government was implementing reforms to pave the way towards modernization. (Defendants' Ex. I at 179.) Such reforms included abolishing the class system and the phased elimination of the samurai class, including banning the samurai from wearing swords. (Id.) Many samurai rebelled against these reforms, thus leading to the Satsuma rebellion of 1877, of which Saigo Takamori was a central figure. (Id. at 180). Because of these historical events, any story involving the Emperor of Japan during this time would naturally include scenes of Imperial Palace and the Imperial training field, as well as scenes of the "retreat" or "village" where the samurai lived. Similarly, any story about war in Japan would naturally involve multiple battle scenes in a variety of weather conditions.

### (e) Mood and Pace

Plaintiffs' Screenplay has a triumphant mood, as evidenced by the Iwo Jima finale. In that scene, Gamble, after having slain Saigo, takes out the American flag, explains to a Japanese soldier that it is a symbol of freedom, and raises it on the Iwo Jima mountain peak. Defendants' film, on the other hand, is more nostalgic and reflective in mood, as shown by the scenes in the samurai village, and in the final scene where Algren turns his back on America and toward Taka and her way of life. Except for the fast paced battle scenes which nearly all war movies contain, the pace between the two works differs as well. Plaintiffs' Screenplay is a fast-paced adventure/intrigue story, whereas a large chunk of Defendants' film employ leisurely sequences depicting life in the samurai village.

### (f) Dialogue

Plaintiffs have not identified any similarities in dialogue between their Screenplay and Defendants' film. Although both works utilize voice-overs, Defendants use the voice-over passages to suggest Algren is writing a journal of his experiences and observations. Plaintiffs' Screenplay lacks any parallel to this.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

*(e)  Sequencing*

Plaintiffs claim a similar sequence of events in each expression, where the protagonist goes to Japan to train the Imperial Army, has flashbacks to his earlier battles in America, goes to war in Japan, is captured, escapes, returns to fight another epic battle, is spiritually victorious and kneels before the Emperor who commends him, and lives the rest of his life influenced by Japanese people and country.  (Opp'n at 21.)  This general structure, however, is not unique.  The war veteran who suffers flashbacks is a cinematic staple, as is the capture and/or escape of an American fighting in another country, epic battles, ultimate victory, and a happy resolution.  Also, further analysis of the sequencing reveals some important differences.  In Plaintiffs' Screenplay, the initial battle ends with the Imperial Army's victory and Gamble triumphantly presenting Lord Eto's head to the Emperor.  In Defendants' film, by contrast, the initial battle ends with Algren's defeat and capture, upon which he begins a term of imprisonment in the samurai village that comprises a substantial portion of the storyline.

The final scenes of the two works diverge as well.  Plaintiffs' story comes full circle, and ends where it begins in the safety of America in West Point, New York.  Although the Japanese influence on Gamble's life manifests through his home furnishings and daughter's Japanese name, Gamble has chosen to return to America with his American wife and their newborn child.  Algren, on the other hand, develops such a deep reverence for the samurai and their traditional Japanese way of life that he forsakes America in favor of Japan.

*(f)  The Works are not Substantially Similar*

Viewed as a whole, the basic elements of the two works have a slight resemblance to one another, and share some plot similarities: the Civil War veteran who travels to Japan; the Satsuma Rebellion; east meets west; the "fish-out-of-water"; and the appreciation of Japanese culture.  Nevertheless, "[g]eneral plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind."  *See Berkic*, 761 F.2d at 1293.  In *Funky Films,* the Ninth Circuit upheld the district court's grant of summary judgment in favor of producers and against screenplay creators.  *Funky Films,* 462 F.3d 1072.  There, both plaintiffs' screenplay and defendants' HBO show were premised on a small, family run funeral home; both commenced with the unexpected death of the patriarch, not attributable to natural causes, and the return of the "prodigal son" who received and equal share of the business with his younger brother; both smaller funeral homes struggle against a larger competitor; both include female characters who are romantically involved with the older brother; and in both stories, the older brother initially wants to sell the funeral home, but later commits himself to the business to help

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

his brother. *Id.* at 1075-1079. Despite these apparent similarities, upon analyzing the two works' plot, characters, themes, setting, mood, pace, dialogue and sequence of events, the Ninth Circuit concluded that the similarities cited by plaintiffs relied on *scenes-à-faire,* or were at best coincidental, and not substantially similar as a matter of law. *Id.* at 1081.

Like in *Funky Films,* here, nearly all the similarities between the works arise from noncopyrightable elements, such as historical facts and *scenes-à-faire,* "which flow naturally from generic plotlines." *Metcalf,* 294 F.3d at 1074. Once one goes beyond the generalities, the similarities in premise, plot, characters and scenes disappears. Consequently, no reasonable juror could find Plaintiffs' Screenplay and Defendants' film substantially similar to support a conclusion of copyright infringement. The Court therefore GRANTS summary judgement on the copyright infringement claim.

### 2. *Independent Creation*

By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying, and the burden shifts to the defendant to rebut that presumption through proof of independent creation. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000). Having determined that Plaintiffs have not met their burden to show substantial similarity between the two works at issue, the Court need not address Defendants' arguments that Zwick and Logan had independently conceived of the basic elements of *The Last Samurai*, and that Defendants' screenplay was an independent creation from these elements.

### B. Breach of Implied Contract

Plaintiffs' state law claim for breach of implied contract seeks "compensation not for the actual written script, but for the idea[s] allegedly embodied in the script and shared with [defendants]," such industry-specific cause of action first being recognized in California in *Desny v. Wilder,* 46 Cal.2d 715, 299 P.2d 257 (1956).

"Generally speaking, ideas are as free as the air. . . ." *Id.* at 731. Nevertheless, in *Desny,* the California Supreme Court explained that a duty to pay compensation may arise where a person has clearly conditioned the disclosure upon an obligation to pay, and the offeree, with knowledge of that duty, voluntarily accepted the information and used the idea. *Id.* at 738-739. To establish that Defendants "used" their ideas so that they can prevail on the breach of implied contract claim, Plaintiffs must demonstrate that "substantial similarities" exist between the two works. *Kurlan v. Columbia Broadcasting System,* 40 Cal.2d 799 (1953); *Stanley v. Columbia*

Case 1:11-cv-20427-KMW Document 48-4 Entered on FLSD Docket 03/18/2011 Page 14 of 17
Case 2:05-cv-08508-PSG-FMO Document 76 Filed 03/14/08 Page 14 of 17 Page ID
#:2620

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

*Broadcasting System*, 35 Cal.2d 653 (1950). Although the substantial similarity requirement in this context is different from establishing substantial similarity to prove copying in the federal copyright sense, in that a plaintiff must prove substantial similarity of protectable expression to establish copyright infringement, Plaintiffs must still establish, at a minimum, substantial similarity between the ideas in the two screenplays. *See, e.g.,* L. Sobel, "The Law of Ideas, Revisited," 1 *U.C.L.A. Entert.L.Rev.* 9 (1994) (analyzing California law to conclude that substantial similarity must exist to impose liability for breach of contract or breach of confidence). To do this, Plaintiff must show that the ideas allegedly used by Defendants are novel, unless it can be inferred from "unequivocal conduct" that the recipient of the idea agreed to pay for it even if the idea was not novel. *Id.* at 75.

Plaintiff has provided a document entitled "Material Review Addendum" by expert Lew Hunter, who identifies the purportedly "identical premise a.k.a. concept" between the Plaintiffs' Screenplay and *The Last Samurai*: "An embittered, guilt-ridden Civil War officer is asked to Japan and train the inept, imperial Army in modern war strategies utilizing the contemporary weaponry of the Civil War against the traditional Samurai warriors who threaten the Emperor and country." (Plaintiffs' Appendix, Ex. 18 at 2.) Hunter believes this concept is "a unique, original, superlative concept . . . ." (Id.)

First, the Court gives little weight to Hunter's statements in his "Material Review Addendum" as they are unsworn and accordingly, are not declarations or affidavits that qualify as admissible evidence for the purposes of Fed. R. Civ. P. 56. See 11-56 *Moore's Fed. Pac.-Civ.* § 56.14 ("Unsworn expert reports prepared in compliance with Rule 26(a)(2) do not qualify as affidavits or otherwise admissible evidence for purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment"). Second, even if the Court were to accord Hunter's statement weight, Defendants have presented evidence that the idea of a war officer from the West training the Imperial Army in Japan is based on historical events, and thus is not novel. For example, an article about the Satsuma Rebellion describes the uprising as a "momentous clash between traditional Japanese warfare, as waged by sword wielding individual warriors, and the new peasant army trained in western strategy and using western weapons." (Defendants' Ex. R at 152.) Moreover, that the protagonist in both works is a Civil War veteran is not surprising, since the Satsuma Rebellion took place on 1877, just a few years after the end of the Civil War. Additionally, countless stories have portrayed war veterans as both "embittered" and "guilt ridden," so the fact that both Algren and Gamble were ascribed these characteristics does not support Plaintiffs' claim that Defendants' used their ideas.

In conclusion, the Court finds that there is no evidence of similarities of novel ideas

Case 1:11-cv-20427-KMW Document 48-4 Entered on FLSD Docket 03/18/2014 Page 15 of 17
Case 2:05-cv-08508-PSG-FMO Document 176 Filed 03/14/08 Page 15 of 17 Page ID
#:2621

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

sufficient to allow a reasonable finder of fact to conclude that Defendants "used" Plaintiffs' Screenplay. For these reasons, the Court GRANTS summary judgment on Plaintiffs' second claim for breach of an implied-in-fact contract, and it need not address Defendants' argument that Zwick and Logan independently conceived of the basic elements of *The Last Samurai.* Since Plaintiffs' third claim for intentional interference with prospective economic advantage is based on the allegations that they had an implied-in-fact contract with Defendants, and the implied-in-fact contract claim fails, the interference claim must fail as well. The Court thus GRANTS summary judgment on Plaintiffs' third claim for intentional interference with prospective economic advantage.

III. REMAINING MOTIONS

    A. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs seek partial summary judgment on Defendants' sixth, eleventh, seventeenth, twentieth and twenty-first affirmative defenses. Having granted summary judgment on all Plaintiffs' claims, this motion is now moot.

    B. Plaintiffs' Motion for Entry of Default Judgment Against Defendants for Spoliation of Evidence

Plaintiffs also move for entry of default judgment against Defendants for spoliation of evidence, or in the alternative, for evidentiary sanctions, for an order striking the affirmative defense of independent creation, and/or for an adverse jury instruction. Sanctions for spoliation of evidence may be imposed under the court's inherent authority. *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). However, in order to sanction a litigant under the court's inherent powers, the court must make a specific finding of "bad faith or conduct tantamount to bad faith." *Fink v. Gomez,* 239 F.3d 989, 994 (9th Cir. 2001).

Plaintiffs accuse Defendants of delaying in providing documents to support their defense of independent creation, and of manipulating and altering these documents in order to bolster their arguments. Plaintiffs contend that on June 2, 2003, Defendants produced a few documents, consisting of letter and faxes between writers Zwick and Logan, that were altered or produced in inconsistent versions. For example, the correspondence Logan produced lacked his signatures, but Warner Brothers and Bedford produced the same correspondence with signatures. (Compare Plaintiffs' Appendix in Support of Motion for Default Judgment, Ex. FF (no signature) with Exs.

Case 1:11-cv-20427-KMW Document 48-4 Entered on FLSD Docket 03/18/2014 Page 16 of 17
Case 2:05-cv-08508-PSG-FMO Document 76 Filed 03/14/08 Page 16 of 17 Page ID
#:2622

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

DD and GG (with signatures).) Plaintiffs also point to other examples that have allegedly been altered. (Id. Exs. P through S, T through X, and Y through BB.) With respect to an April 12, 2000 letter from Zwick to Logan, one version is unsigned, one version produced by Bedford talks about a cattle drive (Id. Ex. P) while another version, later produced by Bedford, has a January handwritten date and omits mention of a cattle drive (Id. Ex. Q). Plaintiff argues this show Defendants' attempt to alter the chronology of the events. In their motion, Plaintiffs make similar allegations regarding an April 18, 2000 letter from Zwick to Logan, and a May 15, 2000 letter from Zwick to Logan.

Defendants do not dispute that they produced multiple versions of the same letters. Instead, they explain that the various Defendants provided Plaintiffs with all versions the correspondence in their files, including unsigned and slightly different drafts of letters, and copies bearing handwritten notes made by unknown persons at unknown times.

Although Defendants' explanation is somewhat less than satisfying, it does not rise to the level of "bad faith or conduct tantamount to bad faith." Moreover, the Court did not consider any of the allegedly altered or inconsistent documents in ruling in favor of Defendants on their summary judgment motion. For these reason, the Court DENIES Plaintiffs' motion in its entirety.

    C.    <u>Defendant's Motion to Trifurcate</u>

In light of the Court's disposition on Defendants' Motion for Summary Judgment, Defendant's Motion to Trifurcate is now MOOT.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court orders the following:

1. The Court hereby GRANTS Defendant's motion for summary judgment as to all Plaintiffs' claims.

2. The Court hereby DENIES Plaintiffs' motion for entry of default judgment, or alternative request for evidentiary sanctions, for an order striking affirmative defenses, and/or for an adverse jury instruction.

3. Plaintiffs' motion for partial summary judgment and Defendants' motion to trifurcate are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | March 14, 2008 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, et al. | | |

MOOT.

Defendants are to submit a proposed judgment in accordance with the Order within **10 (ten) days.**

IT IS SO ORDERED.

:

Initials of Preparer