## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:11-cv-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

       *Plaintiffs*,

   vs.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

       *Defendants*.

_____/

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
## TO DISMISS PLAINTIFFS' COMPLAINT

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Phone: 202-639-6000
Fax: 202-639-6066

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA  91403

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305-416-6880
Fax: 305-416-6887

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

ALLEGATIONS OF THE COMPLAINT ........................................................... 1

ARGUMENT ...................................................................................................... 4

I.    THE COMPLAINT STATES A CLAIM FOR DIRECT INFRINGEMENT. ............... 4

    A. The Complaint Properly Pleads Direct Infringement of the Distribution Right. ............................................................................................................ 5

    B. The Complaint Properly Pleads Direct Infringement of the Reproduction Right. ............................................................................................................ 8

II.   THE COMPLAINT STATES A CLAIM FOR SECONDARY INFRINGEMENT. ..... 9

    A. The Complaint Properly Pleads Unlawful Inducement of Infringement. ................. 9

    B. The Complaint Properly Pleads Contributory Infringement. ................................... 14

    C. The Complaint Properly Pleads Vicarious Infringement. ....................................... 16

III.  THE COMPLAINT STATES A CLAIM AGAINST TITOV. ....................................... 18

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc,* 114 F. Supp. 2d 896 (N.D. Cal. 2000), *aff'd in part, rev'd in part*, 239 F.3d 1004 (9th Cir. 2001) .......................................................................14

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001).......................................14, 17

*Arista Records, Inc. v. Flea World, Inc.*, No. Civ. A. 03-2670 (JBS), 2006 WL 842883 (D.N.J. Mar. 31, 2006).........................................................................................................16

*Arista Records LLC v. Lime Group LLC*, 715 F. Supp. 2d 481 (S.D.N.Y. 2010) ................ *passim*

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009)................. *passim*

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...............................................................................3, 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................3

*BGW Design Ltd., Inc. v. Service America Corp.*, No. 10-20730-Civ, 2010 WL 5014289 (S.D. Fla. Dec. 3, 2010) .........................................................................................................9

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ....................................................4

*Cable News Network, L.P. v. GoSMS.com, Inc.*, No. 00 Civ. 4812(LMM), 2000 WL 1678039 (S.D.N.Y. Nov. 6, 2000) .......................................................................................20

*Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829 (11th Cir. 1990).................................................................................................................14

*Capitol Records, Inc. v. MP3Tunes, LLC*, No. 07 Civ. 9931(WHP), 2009 WL 3364036 (S.D.N.Y. Oct. 16, 2009) ................................................................................................6, 7, 8

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008)...................5, 16

*Columbia Pictures Industries, Inc. v. Fung*, No. CV 06-5578 SVW(JCx), 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009) ...............................................................9, 10, 11, 12, 19

*Faulkner v. National Geographic Society*, 211 F. Supp. 2d 450 (S.D.N.Y. 2002), *aff'd*, 409 F.3d 26 (2d Cir. 2005).....................................................................................................14

*Foreign Imported Productions and Publishing, Inc. v. Grupo Industrial Hotelero, S.A.*, No. 07-22066-CIV, 2008 WL 4724495 (S.D. Fla. Oct. 24, 2008) .........................................19

*Gyasi v. M/V Andre*, No. 07-23282-Civ, 2008 WL 162644 (S.D. Fla. Jan. 16, 2008)...................4

*Harrison v. Benchmark Electronics Huntsville, Inc.*, 593 F.3d 1206 (11th Cir. 2010).............3, 10

*Hermeris, Inc. v. Brandenburg*, No. 10-2531-JAR, 2011 WL 231463
(D. Kan. Jan. 23, 2011) ...........................................................................................15

*Home Design Services, Inc. v. Stone Creek Homes, Inc.*, No. Civ. A. 08-02662, 2009 WL
4016054 (D. Colo. Nov. 13, 2009) ........................................................................19

*In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003) ...............................14

*Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132 (N.D. Cal. 2008)...........13

*J&J Sports Productions, Inc. v. Walia*, No. 10-5136 SC, 2011 WL 902245
(N.D. Cal. Mar. 14, 2011) .....................................................................................20

*Lifetime Homes, Inc. v. Walker Homes, Inc.*, No. 205CV479FTM29DNF, 2006 WL
889986 (M.D. Fla. April 6, 2006).........................................................................19

*Marrari v. Medical Staffing Network Holdings, Inc.*, 395 F. Supp. 2d 1169
(S.D. Fla. 2005).....................................................................................................18

*Marvin Music Co. v. BHC Ltd. Partnership*, 830 F. Supp. 651 (D. Mass. 1993)..........20

*Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)....................... *passim*

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*. 454 F. Supp. 2d 966
(C.D. Cal. 2006) ...................................................................................................17

*Mozingo v. Correct Manufacturing Corp.*, 752 F.2d 168 (5th Cir. 1985) .....................18

*Netbula, LLC v. Chordiant Software, Inc.*, No. C 08-00019 JW, 2009 WL 750201
(N.D. Cal. Mar. 20, 2009) .....................................................................................20

*New York Times Co. v. Tasini*, 533 U.S. 483 (2001) ......................................................5

*Nintendo of America, Inc. v. Bung Enterprises*, No. 97-8511-GAF (VAPx), 1999 WL
34975007 (C.D. Cal. Dec. 14, 1999) .....................................................................15

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) .................5, 15, 17

*Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503 (N.D. Ohio 1997).......6, 7

*Playboy Enterprises, Inc. v. Starware Publishing Corp.*, 900 F. Supp. 438
(S.D. Fla. 1995)......................................................................................................18

*Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543 (N.D. Tex. 1997), *aff'd*,
168 F.2d 486 (5th Cir. 1999) ..............................................................................6, 8

*Puleo v. SMG Property Management, Inc.*, No. 6:08-cv-86-Orl-22DAB, 2008 WL
3889727 (M.D. Fla. Aug. 20, 2008) ........................................................................4

*Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) ...................................................................4, 18

*Religious Technology Center v. Netcom On-Line Communication Services, Inc.*,
 907 F. Supp. 1361 (N.D. Cal. 1995) ........................................................................................6

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ..................14, 15, 16

*Southern Bell Telephone & Telegraph Co. v. Associated Telephone Directory Publishers*,
 756 F.2d 801 (11th Cir. 1985) ................................................................................................18

*Sweetwater Investors, LLC v. Sweetwater Apartments Loan LLC*, No. 1:10-CV-223-
 WKW, 2010 WL 4904673 (M.D. Ala. Nov. 24, 2010) ......................................................8, 20

*United States v. Baxter International, Inc.*, 345 F.3d 866 (11th Cir. 2003) .......................8, 11, 20

*Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278 (S.D. Fla. 2008) .........................15

*Vilceus v. City of West Palm Beach*, No. 08-80968-CIV, 2009 WL 2242604
 (S.D. Fla. July 27, 2009) ..........................................................................................................4

*Watts v. Florida International University*, 495 F.3d 1289 (11th Cir. 2007) ......................4, 19, 20

STATUTES

17 U.S.C. § 106 ..................................................................................................................................5

17 U.S.C. § 106(3) .........................................................................................................................4, 5

17 U.S.C. § 201(d)(2) ........................................................................................................................5

17 U.S.C. § 512(c)(1)(A) .................................................................................................................11

17 U.S.C. § 512(c)(1)(B) .................................................................................................................11

17 U.S.C. § 512(i)(1)(A) .................................................................................................................11

OTHER AUTHORITIES

U.S. Immigration and Customs Enforcement, "*Operation In Our Sites*" *Targets Internet
 Movie Pirates*, available at www.ice.gov/news/ releases/1006/100630/losangeles.htm ..........2

## INTRODUCTION

Plaintiffs' Complaint against Hotfile Corp. ("Hotfile") and Anton Titov ("Titov") properly pleads that Defendants are liable for copyright infringement, and provides specific factual allegations well beyond what the Federal Rules require.  As a result, in their Motion to Dismiss ("MTD"), Defendants are forced to mischaracterize or ignore key allegations in the Complaint, misstate the relevant law, and improperly ask the Court to accept Defendants' implausible inferences – inferences that directly conflict with Plaintiffs' properly-pleaded facts. While Defendants would have the Court accept that Hotfile is nothing but a passive webhost, the Complaint pleads detailed facts showing the exact opposite.

Indeed, allegations comparable to those that Defendants argue are insufficient to state a claim have resulted in findings of liability against notorious Internet infringers as reflected in *Napster*, *Grokster*, *Usenet*, *Fung*, and *Lime Group*, among others.  While Defendants try to distinguish these cases as involving more incriminating evidence, they forget that nearly all of that evidence was in the defendants' sole possession and came to light only through discovery – and that what is relevant here is what is alleged in the Complaint, not Defendants' denials.

Ultimately, Defendants ask this Court to ignore the allegations Plaintiffs have pleaded, bypass discovery and even summary judgment, and sit as a trier of fact, drawing inferences in Defendants' favor.  That clearly is an impermissible use of a motion to dismiss on the pleadings.

## ALLEGATIONS OF THE COMPLAINT

In this action, major motion picture studios and content owners are seeking relief against Defendants for the operation of the "Hotfile" website, which Plaintiffs allege is engaged in intentional, unabashed theft of Plaintiffs' and others' copyrighted works for profit.  *See, e.g.*, Compl. ¶¶ 1-2, 27.

The Complaint alleges that Hotfile's "business model critically depends on attracting users to download high-value copyrighted content, such as plaintiffs' copyrighted works." Compl. ¶¶ 25, 37, 39.  Users pay Hotfile monthly "Premium" subscription fees to download files from the site at high speeds; users can also download at lower speeds for free.  Compl. ¶¶ 21, 24.

Hotfile maximizes the number of users who purchase "Premium" subscriptions by taking steps to ensure that it has files on its servers that will attract users in high numbers.  Compl. ¶¶ 25, 34, 62.  The Complaint alleges that Hotfile knows that such files are overwhelmingly infringing, and intends to both foster and profit from that infringement.  Compl. ¶¶ 44, 61.

1

Hotfile ensures the presence of such desirable infringing content on its site through a series of payment incentives, called its "Affiliate" program, that pay users who upload files to the site once those files have "been downloaded at least 1,000 times." Compl. ¶ 29; *see also* Compl. ¶¶ 30-31. Hotfile's similar "Referral" program pays pirate website operators to "post[] links that direct users to Hotfile-hosted content when those users, in turn, purchase Hotfile subscriptions." Compl. ¶ 35. Through this "Referral" program, the Complaint alleges, Hotfile "effectively partners, and acts in concert, with a vast array of pirate link sites and other affiliates to advertise and promote the infringing content on Hotfile's servers." Compl. ¶ 36.[1]

Nominally, Hotfile's "Affiliate" and "Referral" programs are based on volume – the more "popular" a file to downloaders, the more Hotfile pays. But the Complaint alleges that words like "interesting" and "popular" are nothing but well-understood euphemisms: "[a]ll of Hotfile's financial incentives are designed to encourage both uploading and promotion of what Hotfile euphemistically refers to as 'interesting' content, by which Hotfile means, and which Hotfile users understand to be, copyrighted entertainment content." Compl. ¶ 34. In particular, the rules of the "Affiliate" program "aggressively encourage[] the uploading of very large content files of the sort that are typically associated with full-length motion pictures and television programs." Compl. ¶ 31. The Complaint also alleges that Hotfile's economic incentives work as intended: the "overwhelming majority of content publicly available on Hotfile consists of infringing copies of popular copyrighted works, such as motion pictures and television programs." Compl. ¶ 44. This infringing content "acts as a 'draw' to attract millions of downloading users, to whom Hotfile can sell 'Premium' memberships." Compl. ¶ 34; *see also* Compl. ¶ 25. Defendants, according to the Complaint, have "full knowledge" of this infringement, operate the site with the intention of fostering the infringement, and exploit the infringement to sell subscriptions. Compl. ¶¶ 44, 61.

Allegations of Defendants' knowledge and encouragement of infringement are coupled

---

[1] Defendants' bare denial "that any such sites are controlled by Hotfile," MTD at 3, ignores the allegation that Defendants partner with such sites and pay them to promote infringing traffic. *See* Compl. ¶¶ 35-36. Although of no moment to this motion, Defendants' suggestion that Plaintiffs do not sue pirate link sites, *see* MTD at 3, is untrue. In addition to civil litigation, many such sites have been subject to *criminal* enforcement. *See, e.g.*, U.S. Immigration and Customs Enforcement, "*Operation In Our Sites" Targets Internet Movie Pirates*, available at www.ice.gov/news/ releases/1006/100630/losangeles.htm (June 30, 2010) (government press release on criminal enforcement).

2

with allegations that Defendants "purposely stymie efforts by copyright owners to limit infringement and fail to take simple steps to mitigate infringement."  Compl. Heading E; *see also* Compl. ¶¶ 37-38.  In particular, the Complaint alleges that Defendants (i) frustrate copyright enforcement by allowing users to create multiple "links" to the same file, thereby allowing infringement to continue even if some of those links are identified and removed by copyright owners, Compl. ¶ 38; (ii) outsource information location tools (that help users find infringing content) to pirate link sites paid by Defendants, thereby frustrating copyright owners' ability to locate infringing material on the site, Compl. ¶¶ 22, 35-36; and (iii) fail to take "simple measures to stop, or substantially mitigate, the massive infringement" on the site.  Compl. ¶¶ 39-42.  The Complaint alleges that Defendants do or fail to do these things "because they want and need [] infringement to make their business profitable."  Compl. ¶ 43.

As for Defendant Titov, the Complaint alleges that he "manages the operations of Hotfile" and "personally directed and participated in, exercised control over, and benefited from the specific infringement-inducing conduct of Hotfile," Compl. ¶ 45, as well as the other "acts of infringement complained of in this Complaint," Compl. ¶ 12.  This includes "the adoption of a business plan dependent upon massive copyright infringement" and "the design and implementation of Hotfile's 'Affiliate' and 'Referral' programs, which actively encourage copyright infringement."  Compl. ¶ 45.  Titov, as alleged, also has acted as a financial conduit for the company by personally paying users of Hotfile's "Affiliate" program.  Compl. ¶ 45.

## LEGAL STANDARD

The "liberal pleading standard" of Rule 8 requires nothing more than "a short and plain statement of the claim showing that [the pleader] is entitled to relief," sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010) (quotation marks omitted).  While a mere "formulaic recitation of the elements" of a claim is insufficient under Rule 8, a plaintiff need state "only enough facts to state a claim to relief that is plausible on its face," a standard that does not require "heightened fact pleading of specifics."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55, 570 (2007).  All that is required is to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

There is no "probability requirement at the pleading stage," *Watts v. Florida International University*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556); courts "accept[] as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). A plaintiff need not "rule out every possible lawful explanation for the conduct he challenges," *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009), and is "not required to set forth every fact on which he relies." *Puleo v. SMG Prop. Mgmt., Inc.*, No. 6:08-cv-86-Orl-22DAB, 2008 WL 3889727, at *1 (M.D. Fla. Aug. 20, 2008). Rule 8 "instead simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Watts*, 495 F.3d at 1295-96 (internal quotation marks omitted). Where, as here, "the information supporting the complainant's case is under the exclusive control of the defendant," "[c]ourts typically allow the pleader an extra modicum of leeway." *United States v. Baxter Int'l., Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). Accordingly, Rule 12(b)(6) dismissals are "viewed with disfavor and rarely granted." *Gyasi v. M/V Andre*, No. 07-23282-civ, 2008 WL 162644, at *2 (S.D. Fla. Jan. 16, 2008) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997)).

## ARGUMENT

## I.  THE COMPLAINT STATES A CLAIM FOR DIRECT INFRINGEMENT.

Defendants' argument that Plaintiffs have not stated a claim for direct infringement is emblematic of the infirmity of Defendants' motion. Defendants ignore altogether Plaintiffs' principal claim – that Defendants have directly infringed Plaintiffs' exclusive right under the Copyright Act to ***distribute*** their works. Compl. ¶¶ 48-52; 17 U.S.C. § 106(3). Defendants do not address Plaintiffs' distribution claim at all. Instead, Defendants address a phantom claim – that Plaintiffs have not made – for direct infringement of the right to ***reproduce*** based on the uploading of copyrighted works. MTD at 5-8.[2] Thus, Defendants' motion should be denied because Defendants do not address the direct infringement claims Plaintiffs in fact have made. No more should be necessary. *Cf. Vilceus v. City of West Palm Beach*, No. 08-80968-CIV, 2009 WL 2242604, at *5 n.1 (S.D. Fla. July 27, 2009) (where "[t]here is no legal argument presented"

---

[2] *E.g.*, MTD at 5 (Hotfile itself does not "select[] and instigat[e] unauthorized ***copying*** of particular files"); *id.* at 7 ("Hotfile itself is [not] volitionally ***copying***"); *id.* at 7 ("nothing plausibly suggest[s] that Hotfile itself is ***doing the posting***" of infringing files) (emphasis added).

to dismiss claim, the "[c]ourt will not consider dismissal").  On the merits, which Defendants have not addressed, Plaintiffs plainly have properly pleaded claims for direct infringement.

**A.  The Complaint Properly Pleads Direct Infringement of the Distribution Right.**

By transmitting electronic copies of Plaintiffs' motion pictures to their users, Defendants directly infringe Plaintiffs' exclusive right under the Copyright Act to "distribute copies … of the copyrighted work to the public."  17 U.S.C. § 106(3).  In *New York Times Co. v. Tasini*, 533 U.S. 483 (2001), the Supreme Court held that database operators were directly liable for distribution of copyrighted works when the operators automatically sent copies to users who had selected the works for download.  *Id.* at 504; *id*. at 498 (holding that "by selling copies of the Articles through the NEXIS Database," defendants "'distribute copies' of the Articles 'to the public by sale'").  That is precisely what Defendants stand accused of doing here, and Plaintiffs have properly pleaded that claim.  *See* Compl. ¶¶ 2, 21, 27, 48-52.

Defendants argue that Plaintiffs must plead that Defendants engaged in a volitional act, arguing that "[t]he volitional action requirement … is now established law."  MTD at 6.  Here, Defendants paint with too broad a brush.  Some courts addressing the ***reproduction*** right have held that a volitional act is required.  However, that is hardly established law, let alone in the very different context of the ***distribution*** right.  Each exclusive right under the Copyright Act is distinct, with its own requirements.  *E.g.*, 17 U.S.C. §§ 106, 201(d)(2).  In *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("*Cablevision*"), on which Defendants rely, the Second Circuit expressly limited its ruling to the reproduction right; the court emphasized that its "conclusion . . . that the customer, [and] not Cablevision, 'does' the ***copying*** does not dictate a parallel conclusion that the customer, and not Cablevision, '***performs***' the copyrighted work" because the "definitions that delineate the contours of the reproduction and public performance rights vary in significant ways."  *Id.* at 131 (emphasis added).  Further, another Circuit Court has held that the direct infringer of the "public display" right is the operator of the server hosting the content (like Defendants here), even though it is the user who initiates the display through a request to the server.  *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1160 (9th Cir. 2007) ("*Amazon*").  The "contours of the reproduction and [distribution] rights" likewise "vary in significant ways."  *Cablevision*, 536 F.3d at 131.  Indeed, in *Tasini*, the Court ***rejected*** the dissent's argument that users, rather than the database operator, were the ones engaging in distribution.  *See* 533 U.S. at 518 & n.14 (Stevens, J., dissenting).

5

Only a handful of courts have considered "volition" in the context of a distribution claim. Moreover, with their errant focus on a non-existent reproduction claim, Defendants fail to mention that, in closely analogous circumstances, almost all of the cases considering volition and distribution claims either found the defendant liable for directly infringing the distribution right, or denied the defendant's motion to dismiss.  *See Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 149 (S.D.N.Y. 2009) ("*Usenet*") (defendant liable for directly infringing distribution right); *Capitol Records, Inc. v. MP3Tunes, LLC*, No. 07 Civ. 9931(WHP), 2009 WL 3364036 (S.D.N.Y. Oct. 16, 2009) ("*MP3Tunes*") (motion to dismiss denied); *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543 (N.D. Tex. 1997) ("*Webbworld*"), *aff'd*, 168 F.3d 486 (5th Cir. 1999) (unpublished table decision) (defendants held liable); *Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503 (N.D. Ohio 1997) ("*Hardenburgh*") (same).[3]

To the extent volition must be plead, Plaintiffs have pleaded facts that more than demonstrate Defendants' volitional conduct in distributing Plaintiffs' copyrighted works.  The Complaint alleges that the "infringing files reside on servers controlled by Hotfile Corp. [and that] Hotfile Corp. causes and effects the infringing act of transmitting copies of those works from its servers to the computers of its users."  Compl. ¶ 49.  The Complaint further alleges that:

> Hotfile Corp. does more than merely respond to user requests in a passive, content-neutral, and automated manner.  …Hotfile Corp. plays an active role in ensuring that it has the most popular content on its servers and that the URL links to those infringing content files are widely disseminated on the Internet, and advertised and promoted by pirate link sites, so the maximum number of Hotfile users will access and download the infringing content.

Compl. ¶ 49.  In particular, the Complaint alleges that:

- Defendants populate Hotfile with desirable files to distribute to Hotfile users by paying "Affiliates" to upload infringing works to its system, *see* Compl. ¶¶ 28-34, and that Defendants have knowingly and intentionally structured their "Affiliates" program to ensure that large copyrighted files that represent television and motion picture content are available for download from Hotfile's service. *See* Compl. ¶ 31.

- After users upload files to Hotfile, Defendants make "additional copies" of those files, which are "not made by or at the request of Hotfile users," to "facilitate and expedite"

---

[3] Only in *Netcom* was the claim for direct infringement of the distribution right denied.  *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, 907 F. Supp. 1361, 1371-72 (N.D. Cal. 1995).  But that was on a motion for a preliminary injunction and involved a defendant that, in stark contrast to Hotfile, was found to be a truly passive conduit of the copyrighted works.

Hotfile's "distribution."  *See* Compl. ¶ 50.

- Defendants pay infringing "pirate link sites" to promote links that direct users to download the files from Hotfile.  *See* Compl. ¶¶ 22, 35-36.

- And Defendants further "exercise[] active control over the distribution process, regulating the volume and speed of transmissions to users who have not yet purchased 'Premium' subscriptions."  Compl. ¶ 49; *see also* Compl. ¶¶ 21, 23-24.

As the *Usenet* court ruled, "volitional conduct" turns on whether defendants have taken roles that "transform" them "from passive providers of a space in which infringing activities happened to occur to active participants in the process of copyright infringement."  *Usenet*, 633 F. Supp. 2d at 148 (quotation marks omitted).  Taken together, Defendants' actions, as alleged, paint a picture of Hotfile as an online service that is far from "merely a 'passive conduit'" for infringement by others, but is itself "actively engaged in the process" of infringing distribution. *Id.* at 149.

In important ways, the allegations against Defendants directly parallel the facts in *Usenet*. In *Usenet*, as with Hotfile, "users [we]re the ones who decide[d] what to upload and download." MTD at 9.  Nevertheless, the *Usenet* court found sufficient volition because defendants knew music files were popular and took technical steps to enhance their service's ability to store music files for users to download.  *See Usenet*, 633 F. Supp. 2d at 148.  Thus, the *Usenet* defendants were not mere passive conduits: although they did not encourage users to upload infringing content, they took steps to facilitate access to infringing content they knew to be popular.  Hotfile does more.  Here, Defendants take affirmative steps to ensure that users upload popular infringing files (like the defendants in *Hardenburgh*, 982 F. Supp. at 506), and that the URL links for those files are disseminated far and wide.[4]  *MP3tunes* is also instructive.  There, even though "the user pushe[d] the button to upload . . . or stream songs," the court denied defendants' motion to dismiss based on allegations that "MP3tunes knows many of the songs on sideload.com are infringing" and that "MP3tunes provides a service that collects and organizes links to music files for its customers to listen to and download into their lockers."  *MP3Tunes*,

---

[4] Defendants' suggestion that the *Usenet* defendants had a process of "human review" of files before they were posted and made available for download, MTD at 9 n.4, is flatly wrong.  There was no such "human review" in *Usenet*.  Defendants juxtapose *Hardenburgh* and *Usenet* to imply that the "human review" was comparable in both cases.  In fact, the only human intervention in *Usenet* was "to remove access to certain categories of content, and to block certain users."  633 F. Supp. 2d at 148.  Discovery will likely show the same for Hotfile.

2009 WL 3364036, at *3. The court concluded that "[t]aken as a whole, these allegations plausibly suggest volitional conduct." *Id.*; *see also Webbworld*, 991 F. Supp. at 549-53 (similar).

The detailed allegations in the Complaint, based on what is publicly observable about Defendants' system, certainly at least "plausibly suggest volitional conduct"; nothing more is required at the pleading stage. Additional evidence to buttress those allegations and further show Defendants' volitional conduct can only be revealed through discovery of Defendants' system. *See Baxter*, 345 F.3d at 881 ("extra modicum of leeway where the information supporting the complainant's case is under the exclusive control of the defendant"); *Sweetwater Investors, LLC v. Sweetwater Apartments Loan LLC*, No. 1:10-CV-223-WKW, 2010 WL 4904673, at *7 (M.D. Ala. Nov. 24, 2010) (where the relevant evidence is primarily within defendants' control, "the better course is to deny the Rule 12(b)(6) motion and to permit the structure of the . . . claims to evolve through the discovery process").

**B. The Complaint Properly Pleads Direct Infringement of the Reproduction Right.**

Plaintiffs have in fact pleaded a reproduction claim, but not on the theory Defendants address in their motion. Contrary to Defendants' mischaracterization, Plaintiffs are not claiming that Defendants are directly liable for creating the unauthorized copies of copyrighted works that users upload onto the Hotfile site. Plaintiffs contend that Defendants are *secondarily* liable for those unauthorized copies. What Plaintiffs allege is that **after** those unauthorized copies are uploaded onto Hotfile, Defendants themselves subsequently make additional infringing copies of those works in order to facilitate and expedite distribution of the works to Hotfile users ("Subsequent Copying"). Compl. ¶ 50. The Complaint makes this clear:

> *In order to facilitate and expedite distribution* of infringing files to Hotfile users, Hotfile Corp. *also makes additional unauthorized copies* of plaintiffs' copyrighted works, including those on Exhibit A, on its own servers in violation of the Copyright Act, 17 U.S.C. § 106.

Compl. ¶ 50 (emphasis added). Defendants do not address this claim at all. Nevertheless, the Complaint pleads that the Subsequent Copying is a "volitional act" of Defendants: "These unauthorized copies are not made by or at the request of Hotfile users, but rather through the decisions and actions of Hotfile Corp., for its own business purposes." Compl. ¶ 50.[5] No more

_____

[5] Defendants argue that this allegation "is directly contradicted" by other allegations that users decide what to upload and download from Hotfile. MTD at 8. But that argument is based on a mischaracterization of Plaintiffs' reproduction claim. The claim that Defendants volitionally

is necessary at the pleading stage.  Nor would more be possible without discovery into the technical operation of Defendants' system.

## II. THE COMPLAINT STATES A CLAIM FOR SECONDARY INFRINGEMENT.

Defendants do not deny that thousands of Plaintiffs' motion pictures and television programs have been infringed on Hotfile.  *See* Compl. ¶¶ 1, 6, 48-50, 60.  The Complaint properly states a claim that Defendants are secondarily liable for such infringement, as they (i) operate Hotfile so that it will be used to infringe, (ii) know about and materially contribute to such infringement, and (iii) have failed to exercise their right and ability to limit such activity while financially benefiting from it.  Each of these doctrines, alone, gives rise to secondary liability; the Complaint properly alleges all three.

### A.  The Complaint Properly Pleads Unlawful Inducement of Infringement.

The Complaint alleges that Defendants operate Hotfile with the object and purpose of fostering copyright infringement.  Compl. ¶ 60.  Under the Supreme Court's decision in *Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005) ("*Grokster*"), this gives rise to secondary liability for "inducement" of infringement.  *Id*.  Inducement has three elements: (1) "distribut[ion of] a device" or operation of a service (2) with the "object" or intent that it be used to infringe, and (3) "resulting acts of infringement by third parties."  *Id*.  Having an improper objective to infringe, which is the only element Defendants dispute, can be "shown by clear expression or other affirmative steps."  *Id*. at 937.  As the Supreme Court made clear, such improper intent does not require direct or public messages to users overtly encouraging infringement, and can be proven through any combination of evidence probative of an improper objective to foster infringement.  *Id*. at 938; *see also Columbia Pictures Industries, Inc. v. Fung*, No. CV 06-5578 SVW(JCx), 2009 WL 6355911, at *14 (C.D. Cal. Dec. 21, 2009) ("*Fung*") ("improper purpose can be shown in a variety of ways; the factors considered by the Supreme Court in *Grokster* were not exhaustive or exclusive").  "The intent of the parties," moreover, "is a factual matter and therefore should not be resolved on a motion to dismiss."  *BGW Design Ltd., Inc. v. Service Am. Corp.*, No. 10-20730-civ, 2010 WL 5014289, at *5 (S.D. Fla. Dec. 3, 2010).

The Complaint properly alleges that Defendants have such "improper objective" here. As alleged, the evidence of Defendants' unlawful inducement includes:

---

engage in the Subsequent Copying is not contradicted by or inconsistent with an allegation that users decide what to upload in the first instance.

> (i) the overwhelming infringing content available on, and downloaded from, Hotfile; (ii) the operation of "Affiliate" and "Referral" programs structured to encourage users and website operators to upload popular copyrighted content files and to advertise and promote the availability of that infringing content; (iii) a business model that depends on massive infringement of copyrighted works, including plaintiffs' copyrights; (iv) technical measures designed to facilitate the widespread dissemination of copyrighted content, even after copyright owners have requested takedown of the infringing content; and (v) defendant's failure to use any of the readily-available means to curtail infringement on the Hotfile website.

Compl. ¶ 60; *see also id.* ¶¶ 3, 24-33, 35-44.  This is quintessential evidence of inducement as acknowledged by virtually every court to find a defendant liable under this theory.  *See*, *e.g.*, *Grokster*, 545 U.S. at 937-40; *Arista Records LLC v. Lime Group LLC*, 715 F. Supp. 2d 481, 509 (S.D.N.Y. 2010); *Usenet*, 633 F. Supp. 2d at 151-54; *Fung*, 2009 WL 6355911, at *11-*15. Indeed, in none of these other cases has the adjudicated infringer provided overt economic incentives to infringe as Hotfile does.  The Complaint more than sufficiently "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests."  *Harrison*, 593 F.3d at 1214 (quotation marks omitted).

Defendants contend (1) that the Complaint fails to plead "clear expression" of infringing intent, MTD at 10-11, and (2) that their actions are "at least ***consistent*** with actions of a legitimate hosting service."  MTD at 11 (emphasis in original).  But those arguments ignore critical allegations of the Complaint entirely, and rest on a series of implausible excuses, *i.e.*, inferences in Defendants' favor, that this Court cannot credit on a motion to dismiss.

1. <u>Clear Expression</u>:  Contrary to Defendants' suggestion, MTD at 10-11, Plaintiffs are under no obligation to plead specific "clear expression[s]" of Defendants' wrongful intent.  As *Grokster* stated, an "advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations" may be the "classic instance" of inducement, but it is not the only one.  545 U.S. at 937.  The Court went on to explain that "[t]he function of the message in the theory of inducement is to prove by a defendant's own statements that his unlawful purpose disqualifies him from claiming protection . . . ."  *Id.* at 938; *see also id.* ("Proving that a message was sent out . . . is the preeminent but not exclusive way of showing that active steps were taken with the purpose of bringing about infringing acts.").  For that reason, the Court emphasized, purely internal communications are just as relevant as advertisements and solicitations.  *Id.*

The "clear expressions" the court found relevant in *Grokster*, for instance, were marketing materials and business plans that were never disseminated to the public. *See id.* at 938. Such internal documents and communications are "under the exclusive control of the defendant[s]" and not reasonably available to Plaintiffs prior to discovery. *Baxter Int'l., Inc.*, 345 F.3d at 881. Defendants' citation to highly incriminating admissions in *Fung*, *Usenet*, *Lime Group*, and *Grokster*, MTD at 10-11, only emphasizes this point. In most instances, the cited incriminating statements were made in internal or private communications, which plaintiffs in those cases obtained only through discovery.[6]

2. Other Affirmative Steps: Here, Defendants' actions speak for themselves. *See* p. 10 *supra*. Defendants' motion hypothesizes innocent and implausible explanations for the way Defendants have operated the Hotfile service. *See* MTD at 11-14. But on a motion to dismiss, Plaintiffs, not Defendants, are entitled to have inferences drawn in their favor. Defendants' excuses, moreover, directly conflict with or ignore the allegations in the Complaint. For example:

*Claimed DMCA Compliance*. Defendants contend that they "take[] pains to comply with the DMCA," that plaintiffs have "concede[d]" such compliance, and that such compliance is "incompatible with the Studio's active inducement theory." MTD at 11-12. But the Complaint alleges the exact opposite. The Complaint specifically alleges that Defendants fail to terminate repeat infringers as required by 17 U.S.C. § 512(i)(1)(A). Compl. ¶ 42.[7] The Complaint also alleges that Defendants (i) fail to remove infringing material from their system even when they have actual or red flag knowledge, (ii) financially benefit from infringement while declining to exercise their right and ability to mitigate it, and (iii) induce infringement on a massive scale. *See* Compl. ¶¶ 3, 24-44, 60-62. Any one of those facts would disqualify Defendants from any DMCA safe harbor. *See* 17 U.S.C. §§ 512(c)(1)(A)-(B). Defendants, the Complaint alleges, fail to comply with the DMCA in every one of those ways. Compl. ¶ 3, 24-42, 60-62. Defendants simply ignore these well-pleaded allegations.

---

[6] For example, in *Usenet*, the colorful "get your pirate on" statement cited by Defendants, MTD at 10, was not a public advertisement but rather a private employee email produced in discovery. *See Usenet*, 633 F. Supp. 2d at 152.

[7] That Defendants "reserve[] the right . . . to terminate infringing users," MTD at 11, says nothing. Section 512(i)(1)(A) requires that such a policy be "reasonably implemented," *id*., and the Complaint alleges that Defendants have failed to do so. *See* Compl. ¶ 42.

Defendants ask the Court to infer their innocent intent in the face of all allegations to the contrary because, Defendants claim (without evidence), "Hotfile takedowns [sic] specifically identified infringing links."  MTD at 11.  This bald, self-serving statement is unavailing.  First, many adjudicated infringers claim and present evidence that they comply with copyright owner takedown notices, as did the defendants in *Fung* and *Usenet*, for example.  Link-by-link takedowns are neither sufficient under the DMCA nor incompatible with inducement liability.  Any savvy massive inducer of copyright infringement would readily block individual links in response to copyright owner notices as superficial window dressing.  Indeed, Hotfile's link-by-link takedown response is the equivalent of Hotfile telling Plaintiffs to empty a swimming pool with a teaspoon while Hotfile continues to fill it with a fire hose.  *See* Compl. ¶ 37.  Second, contrary to Defendants' assertion, MTD at 12, the Complaint does not "concede" anything about Hotfile's takedown practices; those practices will be the subject of discovery.  What Defendants characterize as a concession – *i.e.*, the allegation that "*[e]ven if*" Hotfile blocks access to specifically identified links, it "has implemented technical features to ensure continued infringing access to plaintiffs' content" – is plainly not a concession but an accusation that Defendants' takedown practices are, at best, disingenuous.  Compl. ¶ 38 (emphasis added).  Defendants' assertion that the Court should draw an inference of innocent intent from that allegation is untenable.

*Outsourcing Search Functions*.  Defendants also ask the Court to infer innocent intent from Hotfile's lack of a "search" function, since, according to Defendants, a service encouraging infringement would want to help users find infringing material.  MTD at 12-13.  But the Complaint specifically alleges that Defendants ***do*** help users find infringing material by paying blatantly infringing "pirate link sites" to index, organize and promote URL links to Hotfile-hosted content, and that Hotfile does this instead of offering a searchable index "to conceal the scope of its infringement."  *See* Compl. ¶¶ 22, 35-36.  Again, incredibly, contrary to the express Complaint allegations, Defendants impermissibly ask the Court to accept that "[n]ot having a search box permits Hotfile to be used for private storage of files or limited sharing . . . (*e.g.*, as among family)."  MTD at 13.  Defendants ask for this inference in the face of express Complaint allegations that Hotfile actively discourages private storage of files and aggressively encourages mass distribution – not "limited sharing" – including by paying users only when their files are downloaded several ***thousands*** of times.  *See* Compl. ¶¶ 3-4, 29, 32-33.

*Paying Affiliates to Upload Files and Promote Downloads*.  Likewise, Defendants impermissibly ask the Court to infer that rewarding the uploading of "popular" content cannot denote an intent to encourage infringement.  MTD at 13.  But Defendants' suggested inference both ignores reality and would require the Court to reject multiple express allegations to the contrary.  The Complaint alleges that, as a result of Defendants' economic incentives to upload "popular" content, "the overwhelming majority of content publicly available on Hotfile consists of infringing copies of popular copyrighted works, such as motion pictures and television programs"; that Defendants know it; that Hotfile and its users use terms like "interesting" and "popular" as euphemisms for "popular copyrighted entertainment content"; and that Defendants pay affiliates to upload and promote infringing content with such knowledge.  *See* Compl. ¶¶ 34, 37, 44.[8]

*Business Model*.  Even less convincing is Defendants' assertion that their business model is inconsistent with an intent to infringe because they receive subscription rather than advertising revenue.  *See* MTD at 14.  As the Complaint alleges, Defendants' incentive to infringe arises because "the lure of [] copyrighted works . . . entice[s] users to pay defendants for the privilege of accessing and downloading the works from defendants' computer servers," and "Hotfile's business model critically depends on attracting users to download high-value copyrighted content, such as plaintiffs' copyrighted works."  Compl. ¶¶ 3, 25.  This is virtually identical to the situation in *Usenet*.  *See* 633 F. Supp. 2d at 156 ("the greater the volume of downloads (the majority of which has been shown to be infringing), the greater the Defendants' income" from subscriptions).

*Other Indicia of Intent to Which Defendants Offer No Response*.  Defendants do not respond meaningfully, or at all, to detailed allegations regarding several other key indicia of their improper purpose.  They ignore, deny or gloss over as unsupported the allegations: that they have stymied copyright owners' enforcement efforts, Compl. ¶ 38; that they do not terminate repeat infringers, Compl. ¶ 42; that the Complaint alleges that they do "not filter content," *compare* MTD at 12 *with* Compl. ¶ 41; and that Hotfile users overwhelmingly use the service to

---

[8] Contrary to Defendants' unsupported assertion, the "premium content" program in *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1136 (N.D. Cal. 2008) ("*Veoh*"), is nothing like Defendants' "Rewards" program.  Nor, unlike here, was there any allegation in *Veoh* that infringing files were uploaded through the "premium content" program.  *Id*.

infringe.  MTD at 14 & Compl. ¶¶ 44, 60-61.  Defendants cannot credibly claim that the Complaint does not properly allege a claim for inducement.

**B.  The Complaint Properly Pleads Contributory Infringement.**

The Complaint likewise plainly states a claim for "contributory infringement" – which imposes liability on a party who "with knowledge of the infringing activity, . . . materially contributes to the infringing conduct of another."  *Lime Group*, 715 F. Supp. 2d at 517 (quotation marks omitted)*; see generally Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (same).  For purposes of contributory copyright infringement, "actual knowledge is not required.  All that must be shown for contributory infringement is that [defendant] had reason to know" of the infringing activity.  *Cable/Home Commc'n Corp.*, 902 F.2d at 846 (citing *Casella v. Morris*, 820 F. 2d 362, 365 (11th Cir. 1987)); *see also, e.g., Faulkner v. Nat'l Geographic Society*, 211 F. Supp. 2d 450, 474 (S.D.N.Y. 2002) ("[k]nowledge of the infringing activity may be actual or constructive") (quotation marks omitted), *aff'd*, 409 F.3d 26 (2d Cir. 2005); *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge, in copyright law . . . as it is in the law generally"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001) ("Contributory liability requires that the secondary infringer 'know or have reason to know' of direct infringement") (citation omitted).

There can be no serious dispute that the Complaint properly pleads a claim for contributory infringement.  The Complaint alleges facts constituting material contribution to infringing conduct, Compl. ¶¶ 20-21, 23, 28-33, 61, and it further alleges that Defendants have both actual and constructive knowledge of infringement, Compl. ¶¶ 37, 44, 61.  That is all that is required to state a claim.  *See generally Usenet*, 633 F. Supp. 2d at 155; *Lime Group*, 715 F. Supp. 2d at 515.

Defendants' argument to the contrary improperly conflates two concepts:  the well-established common law standard for contributory infringement, and an affirmative defense derived from *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ("*Sony*").  But Defendants' reliance on *Sony* at the pleading stage is misplaced.

*First*, *Sony* provides an affirmative defense; Defendants bear the burden of proof.  *See A&M Records, Inc. v. Napster, Inc.,* 114 F. Supp. 2d 896, 912 (N.D. Cal. 2000) (citing *Bateman v. Mnemonics, Inc.*, 79 F. 3d 1532, 1542 n.22 (11th Cir. 1996)), *aff'd in part, rev'd in part*, 239

F.3d 1004 (9th Cir. 2001); *Nintendo of America, Inc. v. Bung Enterprises*, No. 97-8511-GAF (VAPx), 1999 WL 34975007, at *11 (C.D. Cal. Dec. 14, 1999).  It is "well settled that plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint[s]." *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1286-87 (S.D. Fla. 2008) (citation omitted; alterations in original).

  *Second*, Defendants' suggestion that the Complaint somehow relies on "an inference" of knowledge based simply on the structure of the Hotfile system, MTD 14-15, flies in the face of the well-pleaded allegations that Defendants themselves "have full knowledge" of the infringement.  Compl. ¶¶ 44, 61.  Moreover, although Plaintiffs are not required to plead actual knowledge of specific infringements,[9] the Complaint includes such allegations.  It alleges that Defendants have actual knowledge of the massive copyright infringement occurring on the Hotfile site, including of specific infringements by way of formal notices from copyright owners, and by "keep[ing] track of each content file in sophisticated databases."  Compl. ¶¶ 37, 44, 61.[10]

  *Third*, the premise of *Sony* was that "[t]he only contact between [the defendant] and the users … occurred at the moment of sale," with the defendant having no further "direct involvement with the allegedly infringing activity" afterwards.  *See Sony*, 464 U.S. at 438.  *Sony* does not apply where a defendant maintains an "ongoing relationship" with the infringers during the course of the infringement, as these Defendants do.  *See Usenet*, 633 F. Supp. 2d at 156

---

[9] In *Grokster*, the Supreme Court explained that the Ninth Circuit, relying on *Napster*, had erred by interpreting *Sony* to require actual knowledge of specific infringements.  545 U.S. at 933-34. *Accord Usenet*, 633 F. Supp. 2d at 154 ("knowledge of specific infringements is not required to support a finding of contributory infringement"); *Lime Group*, 715 F. Supp. 2d at 515 ("actual or constructive knowledge of the infringing activity" is all that is required for contributory infringement).  *Amazon*, therefore, erred by continuing to apply the *Napster* specific knowledge standard, *see* 508 F.3d at 1171, and no courts outside of California appear to have applied this rule post-*Grokster*.

[10] The Complaint additionally alleges facts demonstrating that Defendants have actual knowledge of further specific infringements on their system due to the Defendants' policy of "intentionally attempt[ing] to stymie plaintiffs' copyright enforcement efforts by … permitting registered users to upload a single copy of a work but then make five additional separate copies of the work on Hotfile's servers, each with a different URL link."  Compl. ¶ 38.  When specific links are removed as infringing, Defendants have actual, specific knowledge that all other copies of the same file replicated through this feature are infringing too.  *See Hermeris, Inc. v. Brandenburg*, No. 10-2531-JAR, 2011 WL 231463, at *3 (D. Kan. Jan. 23, 2011) (defendant operating multiple websites had specific knowledge of infringement where it had received notification that same copyrighted material on another website was infringing).

("Defendants maintain an ongoing relationship with their users . . . *Sony*'s insulation from contributory liability is inapplicable"); *Arista Records, Inc. v. Flea World, Inc.*, No. Civ-A-03-2670 (JBS), 2006 WL 842883, at *15 (D.N.J. Mar. 31, 2006) (rejecting *Sony* defense because "Defendants are not distributors of a device or product that has non-infringing uses like in *Grokster* and *Sony*" but "an ongoing business"); *Cablevision*, 536 F.3d at 133 (lack of "ongoing relationship" between product distributor and product user was critical factor in *Sony*).  Hotfile is a service with an ongoing relationship to the infringement, not a product as in *Sony*.  Hotfile's continuous, ongoing relationship with its infringing users and its ongoing involvement in the infringement occurring on and through its website render *Sony* inapposite.

### C.  The Complaint Properly Pleads Vicarious Infringement.

The Complaint also states a claim for vicarious infringement, namely "profiting from direct infringement while declining to exercise a right to stop or limit it."  *Grokster*, 545 U.S. at 930.  Hotfile does both.

The "direct financial interest" and "legal right" elements are properly pleaded in the Complaint and Defendants do not suggest otherwise.  *See* Compl. ¶¶ 3, 23, 25-27, 39-43, 62.  The Complaint also alleges in detail that Hotfile has the "ability" to monitor and limit infringement on its system, yet fails to take any steps to "stop or limit" infringement.  *Grokster*, 545 U.S. at 930.  Among other things, the Complaint alleges that Hotfile:

- Has the ability to block infringing users from its site yet does not.  *See* Compl. ¶ 42.
- Has "complete control of its physical premises (*i.e.*, the servers, databases and software that comprise and control the Hotfile system), as well as the activities occurring on its system."  Compl. ¶ 23.
- "[P]hysically stores the content files on its servers, keeping track of each content file in sophisticated databases, and could remove or disable access to infringing content files if it chose to do so; it could also prevent content files from being stored in the first place, and from being distributed to the general public."  Compl. ¶ 23.
- "[C]ould . . . substantially mitigate the massive public distribution of copyrighted content by password-protecting the ability to download files, thereby ensuring that only the account-holder (or those individually authorized by the accountholder) could make copies of the files uploaded by the account-holder."  Compl. ¶ 40.
- "[C]ould use . . . readily available and effective technological solutions (including without limitation keyword filtering, audio fingerprinting, and video fingerprinting)," which are "easy-to-implement infringement-mitigating technologies that are widely used to prevent online copyright infringement."  Compl. ¶ 41.
- Could cease paying users and pirate link sites to use and promote the use of Hotfile for

infringement.  Compl. ¶¶ 22, 35-36.

These allegations are more than sufficient to allege that Hotfile has failed to exercise its ability to "stop *or limit*" infringement.  *Grokster*, 545 U.S. at 930 (emphasis added).  *Accord Lime Group*, 715 F. Supp. 2d at 518 ("substantial evidence that LW had the right and ability to limit the use of its product for infringing purposes, including by (1) implementing filtering; (2) denying access; and (3) supervising and regulating users"); *Napster*, 239 F.3d at 1023 ("[t]he ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise"); *Usenet*, 633 F. Supp. 2d at 157 (finding ability to control where "Defendants expressly reserve the right, in their sole discretion, to terminate, suspend or restrict users' subscriptions, thereby limiting their access to uploading or downloading content to or from Defendants' servers" and "Defendants likewise have the right and ability to block access to articles stored on their own servers that contain infringing content").

Relying entirely on the Ninth Circuit's decision in *Amazon*, 508 F.3d at 1173-74, Defendants implausibly assert that they lack any "practical ability to make determinations about whether the files [they host] infringe any of the millions of copyrights that exist in the world." MTD at 16.  At the outset, their reliance on *Amazon* is misplaced.  There, Google was found to lack the ability to control infringement happening **on *"third-party websites,"*** not Google's system.  *Amazon*, 508 F.3d at 1173-74 (emphasis added).  Hotfile, by contrast, hosts and thus can directly control the infringing activity itself.  *See id.* at 1174 (distinguishing Google from Napster because the latter was "a closed system requiring user registration, and could terminate its users' accounts and block their access to the . . . system" and therefore "had the right and ability to prevent its users from engaging in the infringing activity") (quoting *Napster*, 239 F.3d at 1023-24) (internal citations omitted); *Usenet*, 633 F. Supp. 2d at 157-58.  If Defendants' excuse were to be credited, moreover, then no mass infringer could ever be vicariously liable, as Defendants' excuse applies equally to – and has been asserted by – almost every operator of a system that facilitates massive infringement.  *See, e.g., Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, *Ltd.*. 454 F. Supp. 2d 966, 988 (C.D. Cal. 2006) (rejecting defendant's argument that it "did not know that the popular music and movies traded on its network were copyrighted" because "it is common knowledge that most popular music and movies are copyrighted").

At the pleading stage, Plaintiffs are entitled to have their claims regarding the availability

and effectiveness of various supervisory and anti-piracy methods that Defendants could have used, but failed to, taken as true.  *See* Compl. ¶¶ 39-42; *Randall v. Scott*, 610 F.3d at 705; *accord, e.g.*, *Marrari v. Med Staffing Network Holdings*, 395 F. Supp. 2d 1169, 1181 (S.D. Fla. 2005) (defendants "might ultimately demonstrate that they lacked the requisite power or control, . . . [but] such a factual inquiry would be inappropriate at this time").

**III. THE COMPLAINT STATES A CLAIM AGAINST TITOV.**

There are "two tests to determine personal liability for copyright infringement" committed by a corporation.  *Playboy Enter., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 438, 440-41 (S.D. Fla. 1995).  Under the first, "the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity."  *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985) (quoting *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir. 1980) (ellipsis in original)).  Under the second, "[a]n individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, . . . is personally liable for the infringement."  *Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985) (quotation marks omitted).  The Complaint specifically pleads facts about Titov's involvement that meet both of those tests, including that he:

- "manages the operations of Hotfile," Compl. ¶ 45;

- was responsible for "the adoption of a business plan dependent upon massive copyright infringement," *id.*;

- was responsible for "the design and implementation of Hotfile's 'Affiliate' and 'Referral' programs, which actively encourage copyright infringement," *id.*;

- was responsible for "the implementation of technical features to frustrate copyright owner enforcement efforts," *id.*;

- was responsible for "Hotfile's refusal to implement any of the readily available technologies to mitigate the infringement," *id.*;

- "himself has paid at least some of Hotfile's uploading users," *id.*; and

- "is the President and sole officer and director of Hotfile's hosting provider Lemuria," a company "Titov established . . . to avoid interruption of critical Internet hosting services to Hotfile, after Hotfile's previous online service provider received a subpoena concerning Hotfile's infringements."  *Id.*

In other words, the Complaint alleges detailed facts supporting its conclusion that Titov "personally directed and participated in, exercised control over, and benefited from the specific

18

infringement-inducing conduct of Hotfile that has resulted in the massive infringement of plaintiffs' copyrights." *Id.*

These allegations state a claim under both the "guiding spirit" and "ability to supervise and financial interest" tests.  At the pleading stage, a complaint need do no more than plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Watts*, 495 F.3d at 1295-96 (quotation marks omitted).  The Complaint, at a minimum, provides "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

Titov's alleged degree of control, and specific allegations regarding his role in designing Hotfile's infringing business plan, affiliate programs, and technical features, qualify him as a "central figure" or "moving force" behind the site's direct and secondary infringement.[11]  The allegations regarding Titov's command over Hotfile's operations, moreover, combined with the many specific corporate policies he is alleged to have designed and implemented, *see* Compl. ¶ 45, sufficiently plead a similar right to supervise here.  Courts routinely deny motions to dismiss much thinner allegations.  For example, in *Foreign Imported Productions and Publishing, Inc. v. Grupo Industrial Hotelero, S.A.*, No. 07-22066-CIV, 2008 WL 4724495 (S.D. Fla. Oct. 24, 2008), the plaintiffs had done no more than allege that two individuals were employees of a company and had control over content on the company's website.  *Id.* at *14.  In denying a motion to dismiss, the Court noted that it "must not only accept all of the factual allegations in the Complaint as true," but also "evaluate all inferences derived from those facts in the light most favorable to the plaintiff."  *Id.* (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)); *see also Lifetime Homes, Inc. v. Walker Homes, Inc.*, No. 205CV479FTM29DNF, 2006 WL 889986, at *3 (M.D. Fla. Apr. 6, 2006) (denying motion to dismiss in copyright infringement action); *Home Design Servs., Inc. v. Stone Creek Homes, Inc.*, 2009 WL 4016054 (D. Colo. Nov. 13, 2009) (complaint merely alleging right and ability to supervise was "plausible on its face").

Defendants' argument to the contrary – and each of the (out-of-circuit, unpublished)

---

[11] Defendants misstate the law in footnote 6 of their motion when arguing that "cases holding corporate directors, officers or shareholders personally liable for infringement have only done so where the individual was personally involved in procuring, creating, and/or selling infringing materials and/or where the individual did not contest personal liability."  Personal liability is of course warranted in the circumstances Defendants reference, but it is by no means limited to those circumstances.  *See, e.g.*, *Usenet*, 633 F. Supp. 2d at 158-59; *Fung*, 2009 WL 6355911, at *5; *Lime Group*, 715 F. Supp. 2d at 521-23.

cases on which Defendants rely – depends on the mistaken contention that the Complaint "merely recites the bare elements of the legal standard." Mot. to Dismiss, at 17.[12]

The Complaint further alleges Titov's financial interest in Hotfile's infringement (and that of its users). That Titov would pay money out of his own account to users under the "Affiliate" program, Compl. ¶ 45, without more, creates a plausible inference of Titov's financial interest. His "multiple roles in [Hotfile's] management and ownership" further suggest that he has "a substantial financial stake in the infringing activity." *Marvin Music Co. v. BHC Ltd. P'ship*, 830 F. Supp. 651, 655 (D. Mass. 1993).[13] This is enough to "raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Watts*, 495 F.3d at 1295-96 (internal quotation marks omitted).

## CONCLUSION

Plaintiffs, for the reasons stated, respectfully request that the Court deny Defendants' Motion to Dismiss.


Dated:  April 14, 2011              By:  s/ Steven B. Fabrizio
                                         Steven B. Fabrizio


---

[12] *E.g.,* The plaintiff in *Netbula, LLC v. Chordiant Software, Inc.*, No. C 08-00019 (N.D. Cal. Mar. 20, 2009), pointed only to an individual's status as CEO and shareholder. 2009 WL 750201, at *3. The plaintiff in *Cable News Network, L.P. v. GoSMS.com, Inc.*, 00 Civ. 4812(LMM), 2000 WL 1678039, at *6 (S.D.N.Y. Nov. 6, 2000), made no "allegations of acts of infringement, supervision or control over the direct infringers, or contribution to the infringement." Likewise, in *J&J Sports Productions, Inc. v. Walia*, No. 10-5136 SC, 2011 WL 902245, at *4 (N.D. Cal. Mar. 14, 2011), the plaintiff provided no "facts to suggest that [the individual defendants] had supervisory authority over the alleged interception and publication of the program or that they directly benefitted financially from that activity."

[13] Evidence concerning specific payments to Titov is entirely within Defendants' control and undoubtedly will be uncovered during discovery. And, indeed, in other court filings, Defendants have admitted Titov is an owner (shareholder) of Hotfile. Docket No. 30, Ex. A ¶ 2. No plaintiff could allege financial benefit with more specificity at this stage, and the pleading standard does not require Plaintiffs to do so. *See Baxter Int'l*, 345 F.3d at 881; *Sweetwater Investors LLC*, 2010 WL 4904673, at *7.

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305-416-6880
Fax: 305-416-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA  91403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Phone: 202-639-6000
Fax: 202-639-6066

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:11-cv-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

       *Plaintiffs*,

  vs.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

       *Defendants*.

_____/

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 14th Day of April, 2011, I served the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint on all counsel of record on the attached Service List via the Court's CM/ECF filing system, and caused the same counsel to be served via electronic mail.

                               s/ Karen L. Stetson
                               Karen L. Stetson

**SERVICE LIST**

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*
**Served via ECF and electronic mail by**
**agreement**

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*
**Served via ECF and electronic mail by**
**agreement**