UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 11-20427-CIV-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

       *Plaintiffs*,

vs.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

       *Defendants*.

_____

**JOINT SCHEDULING CONFERENCE REPORT**

Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 16.1, the parties hereby submit their

Joint Scheduling Report.  Counsel for the parties met and conferred on April 1, 2011 as required

by Rule 26(f) and the Court's March 4, 2011 order, and further conferred on April 13 and 15,

2011.  This Report outlines the parties' proposed discovery plan and the specific topics indicated

in Local Rule 16.1(b).  The parties' respective positions are separately stated where the parties

are in disagreement.

A.    <u>**Nature of Claims and Defenses.**</u>

    <u>Plaintiffs' summary of their claims</u>:  This is an action for copyright infringement brought

by Disney Enterprises, Inc., Twentieth Century Fox Film Corp., Universal City Studios

Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment, Inc.

("plaintiffs") against Hotfile Corp., Anton Titov ("Defendants"), and Does 1-10. Plaintiffs have

alleged that defendants – through their operation of the website located at www.hotfile.com

("Hotfile") – are engaged in the infringement of plaintiffs' copyrighted motion picture and television properties on a massive scale.  Compl. ¶ 1.  Defendants encourage their users to upload infringing copies of plaintiffs' popular entertainment content to Hotfile's computer servers and to promote those works for download by other users, including by providing Hotfile's users financial incentives to engage in such conduct.  *Id*. ¶¶ 2-4.  Defendants' model for generating revenue depends on their users uploading and promoting these infringing works.  *Id*. ¶ 3.  Defendants are fully aware of the infringement to which they materially contribute.  *Id*. ¶ 61.  Moreover, defendants obtain a financial benefit from infringement that they have the right and ability to control, but do not stop.  *Id*. ¶ 62.

As a result of this and other conduct alleged in plaintiffs' complaint, defendants are liable for copyright infringement.  Defendants are liable for direct infringement of plaintiffs' copyrighted works distributed via Hotfile.  Compl. ¶¶ 46-57.  Further, defendants are secondarily liable for their users' unlawful reproductions and distributions of plaintiffs' works under three separate bases for liability:  (i) inducement of infringement, *id*. ¶ 60; (ii) contributory infringement, *id*. ¶ 61; and (iii) vicarious infringement, *id*. ¶ 62.  Defendant Titov is jointly and severally liable for each act of infringement for which defendant Hotfile Corp. is liable because he personally directed and participated in, and benefited from, Hotfile Corp.'s infringing conduct as alleged herein, and has been the guiding spirit behind and central figure in Hotfile Corp.'s infringing activities.  *Id*. ¶ 63.

As relief, plaintiffs seek:  (a) damages and defendants' profits; (b) the maximum in statutory damages ($150,000 per work), Compl. ¶ 67; (c) attorneys' fees and costs, *id*. ¶ 68, and (d) injunctive relief, *id*. ¶ 69.

Though defendants make unsubstantiated allegations in their statement below that they indicate "may" be the basis for a counterclaim, defendants have not in fact filed counterclaims, and therefore plaintiffs are not in a position to respond.

Hotfile's statement of defenses:

Hotfile is an online file storage and sharing service.  Using Hotfile's website, open source software developers can store and share lengthy program files with online communities. Bloggers can share video footage.  Companies can share voluminous files.  Most threateningly to studios, independent musicians, photographers and film-makers can promote their albums, images and movies directly to fans and the public without relying upon studios for distribution or promotion.  Tens of millions of files have been uploaded to Hotfile.com.

Hotfile's "Terms of Service" and "Intellectual Property and Rights Policy" published on its website explicitly prohibit copyright infringement.  Moreover, Hotfile terminates users that repeatedly violate its anti-infringement policies.  Hotfile also uses sophisticated MD5/SHAl digital fingerprinting technology to detect and block copyrighted works from appearing on its website.  It even permits qualifying copyright holders – including Plaintiff Warner Bros. – to have the unfettered ability to unilaterally take down any file on Hotfile's service without any oversight from Hotfile whatsoever.  Hotfile competes with the services provided by Google® Docs, Windows® Live SkyDrive, RapidShare®, DepositFiles®, MegaUpload®, and MediaFire® – none of whom are defendants here.

Under the Digital Millennium Copyright Act ("DMCA"), online service providers such as Hotfile are entitled to "safe harbor" protection from claims of copyright infringement, both direct and indirect.  17 U.S.C. § 512.  In enacting the DMCA, Congress was concerned that:

> [W]ithout clarification of their liability, service providers may hesitate to make the necessary investment in the expansion of the

3

> speed and capacity of the Internet…In short, by limiting the
> liability of service providers, the DMCA ensures that the efficiency
> of the Internet will continue to improve and that the variety and
> quality of services on the Internet will continue to expand.

*Viacom Int. Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 519-524 (S.D.N.Y. 2010)

(discussing legislative history).  Congress recognized that it "will not serve anyone's interest if

the Internet's backbone and infrastructure are sued out of existence for involvement in

purportedly aiding copyright infringement." Nimmer on Copyright § 12B.01[C][1].

Hotfile is an internet service provider protected by the DMCA.  Because Hotfile has

complied with the DMCA safe harbor requirements, Plaintiffs cannot prevail on the copyright

claims.   Hotfile is entitled to judgment as a matter of law as to all of Plaintiffs' claims.

Although Hotfile is still investigating the issue, it appears that an account used on behalf

of at least one the Plaintiffs has badly misused the DMCA takedown procedure causing

thousands of files to be deleted based on a false assertion that the Plaintiff is the legally

authorized representative of the copyright holder with respect to the files in question.  This may

be the basis for a counterclaim for which Hotfile would be entitled to damages.

**B.**     **Discovery Plan**

    **1.**   **Rule 26(a) Disclosures.**

The parties do not believe that any change should be made in the form or requirement for

disclosures under Rule 26(a).  The parties propose that the due date for Rule 26(a) disclosures be

extended by ten days, such that disclosures should be served by April 25, 2011.  Plaintiffs

requested and Hotfile agreed to this 10-day extension provided that Plaintiffs would not later

argue that the resulting 10-day delay is a reason for denial of a Section 1404(a) motion to

transfer this action to the Central District of California, a motion Hotfile may make if the great

majority of potential witnesses listed in Plaintiffs' initial disclosure are located in the Los

Angeles area with few or none residing in Florida.  Plaintiffs intend to oppose such a motion, including on the basis of Defendants' delay (except for the ten days resulting from the agreed extension) in bringing such a motion.

**2.  Subjects on Which Discovery May be Needed.**

Plaintiffs believe that discovery will be required on the following issues, among others: (1) downloads of plaintiffs' copyrighted works via Hotfile; (2) defendants' knowledge of and intent to foster copyright infringement, including by operation of their Affiliate programs and defendants' role in soliciting content to be uploaded to Hotfile; (3) the means and extent of copyright infringement occurring via Hotfile; (4) defendants' removal of and failure to remove infringing content from their system in response to notices from copyright owners or otherwise; (5) technological measures defendants took, did not take, considered taking, or could have taken to limit infringement on Hotfile; (6) defendants' revenues and profit from their infringing activities; (7) the extent to which copyright infringement acts as a draw to attract users to Hotfile or to which defendants otherwise receive a financial benefit attributable to infringement; (8) defendants' right and ability to control infringement, including by blocking files or terminating users; (9) defendants' compliance with the provisions of the Digital Millennium Copyright Act, including maintenance and implementation of a repeat infringer policy; (10) the identities and involvement of other individuals, investors, or entities involved in the creation or operation of Hotfile, or working in concert with defendants to facilitate infringement.

Defendants believe that discovery will be required on the following issues, among others: (1) Plaintiffs' alleged ownership of copyrights relating to the works in suit; (2) Plaintiffs' (and their agents') takedown notices sent to Hotfile, and the bases for those notices; (3) Plaintiffs' use of Special Rightsholder Accounts such as those available to Plaintiffs at Hotfile; (4) the DMCA

safe harbors; (5) Internet business models, including those business models employed by Hotfile and its competitors, including webhosting and cloud computing, and their substantial non-infringing uses; (6) mechanisms for controlling and limiting copyright infringement on the Internet, such as digital fingerprinting and password protection; (7) Plaintiffs' and their affiliates' voluntary posting of their works on the Internet; (8) copyright infringement policies utilized by Plaintiffs' and their affiliates; (9) evidence refuting the alleged direct and indirect copyright infringement; and (10) the alleged harm to Plaintiffs of posting works on the Internet.

### 3. **Case Management Track and Limitations on Discovery.**

The parties believe that this case should proceed on the standard track pursuant to Local Rule 16.1(a)(2)(B). Plaintiffs propose a discovery cut-off of October 17, 2011. Defendants propose a discovery cut-off of January 16, 2012. The time periods suggested by both plaintiffs and defendants are within the range of days provided for discovery in standard track cases.

The parties have agreed that the number of depositions that each side is permitted to take should be enlarged to 12, exclusive of depositions of expert witnesses. The parties otherwise do not believe that any changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules of this Court.

**Plaintiffs' proposal to stage discovery regarding individual copyrighted works**.

#### a. **Plaintiffs' Statement**

Plaintiffs propose that discovery regarding individual copyrighted works proceed in two phases, in order to simplify or potentially eliminate the need for discovery on all copyrighted works at issue in the case. Plaintiffs have alleged that defendants are liable for infringement of the works listed in Exhibit A to the complaint, and plaintiffs expect that discovery from defendants will show that defendants are liable for infringement of likely thousands of additional

works that have been downloaded by Hotfile users.  Those works will be at issue in the case regardless of how discovery is conducted.  But while plaintiffs intend to seek damages for infringement for a large number of works, the parties do not need to complete discovery regarding all of those works in order to resolve summary judgment motions on the issue of defendants' liability.  Any affirmative defenses as to individual works will not be a key issue in the liability determination.

Plaintiffs therefore propose that the Court permit summary judgment motions on liability to be filed and resolved based on a representative sample of 100-150 works that plaintiffs allege to have been infringed.  Discovery regarding that sample of works would be permitted during the discovery period prior to filing of summary judgment motions, but discovery on additional works would be deferred until the Court has ruled on summary judgment.  Following the Court's liability determination, the parties would meet and confer within 5 days of the Court's decision to determine whether any additional discovery related to the remaining works alleged to be infringed is necessary prior to trial.  Any such pre-trial discovery on the remaining works would proceed during a second phase of discovery limited to that single topic.

This type of procedure has been adopted in other online infringement cases and is likely to greatly streamline discovery and a potential trial on damages.  For example, if plaintiffs prevail on liability on the subset of works infringed, plaintiffs expect that the second stage of discovery and/or the issues remaining for damages trial could be greatly limited by stipulation of the parties.  Further, there is no prejudice to defendants for the discovery to be staged in this manner.  Plaintiffs will still identify the works on which they intend to seek damages during the first phase of discovery, and defendants will be able to seek relevant discovery on the subset of

works in the first phase, and then seek relevant discovery on the remaining works in the second phase (if necessary).

### b.  Hotfile's Statement

Plaintiffs cannot have it both ways—either they are limiting this case to the works the selected and specifically identified in the attachment to the Complaint or they are now also asserting that "thousands" of additional works are also infringed and at issue in this case.

Plaintiffs' proposal limiting discovery issues relating to Hotfile's alleged liability to only Plaintiffs' handpicked assortment of copyrighted works, but allow Plaintiffs to add unlimited (e.g. "thousands") of more works after an adjudication of liability is unacceptable for several reasons.   First Plaintiffs' "sample of 100-150 works" were of course carefully chosen and to maximize Plaintiffs' chances of success and would not be representative of the other works they chose not to select.   Second, it would improperly relieve Plaintiffs of the burden of proving all the facts necessary to obtain the relief they demand with respect to such later-added works, while depriving Hotfile of the opportunity to challenge Plaintiffs' assertion of  the rights in those works.   The proposal would also bind Hotfile to the full extent of its potential liability, leaving until after adjudication of liability any identification of an undetermined number of "additional works" for which liability would apparently be presumed.

This is an unfair and one-sided procedure that would threaten to deprive Defendants of fundamental due process.  Plaintiffs can either proceed with this case 1) on the selected works they elected to include in the Complaint or 2) on "thousands" of unidentified works.  But they cannot be allowed do both simultaneously.  Plaintiffs suggest that their proposed structure has been used in other cases.  The only case Defendants have located addressing this issue, however, declined Plaintiffs' proposed approach.  *See UMG Recordings, Inc. v. Escape Media Group, Inc*.,

No. 100152/10 (N.Y. App. Div. June 9, 2010) (copy attached as Attachment 1) (denying Plaintiff's request to restrict discovery to a representative sample identified by Plaintiff as doing so would prejudice Defendants' ability to assert specific affirmative defenses with respect to individual works).

### Defendants' proposal for early summary judgment motion on DMCA safe harbor.

### a.   Hotfile's Statement

The most efficient way to resolve this case is an early adjudication of Hotfile's qualification for "safe harbor" protection under the DMCA.  If the safe harbor applies, the case will be over.  See *Viacom Int. Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 519-524 (S.D.N.Y. 2010);  and *Perfect 10 v. CCBill*, 488 F.3d 1102, 1109 (9th Cir. 2007) (finding safe harbor issue sufficient to resolve case on early adjudication).  If it does not, the case may resolve itself quickly via settlement.  If there is any remaining issue in dispute, the litigation can proceed focused on those triable issue(s).

Defendants propose that each party bring any motion for summary judgment limited to the DMCA issue on or before June 15, 2011.  Discovery would then be conducted as necessary on the issues raised by the motion(s), and this pivotal issue should be fully briefed and ready for decision sometime in the fall.  The Court's ruling on that motion is likely to be case dispositive. In the event that neither party obtains summary judgment, each party may later file a motion for summary judgment on any other ground(s) at the close of discovery.  This procedure was used successfully by the district court in *CCBill* (Nov. 17, 2003 Order, copy attached) ("pending disposition of the DMCA issues . . .  Defendants should be spared the burden and expense of responding to demands that are not focused upon the potential application of the DMCA")(Attachment 2, pp.2-3).  It is also similar to the streamlined procedure this Court

recently adopted in *Quito Enterprises, LLC v. Netflix, Inc. et. al.* (No. 08-CV-23543-JORDAN). The *CCBill* court spelled out the limits of discovery related to the safe harbor issues, and Plaintiffs' contention that all liability issues must "overlap" is overstated. The safe harbor issue does not require a work-by-work examination of liability and would thus save the parties (and the Court) from significant and unnecessary litigation burden.

Plaintiffs' reliance on the misdeeds of other litigants is beside the point. In particular, the *Fung* case is factually dissimilar as it was a peer to peer file sharing case against an unabashed infringer. The *Viacom* case therefore is more persuasive. The *Viacom* court therefore believed the Fung case had "little application" to the facts presented. See Viacom , 718 F. Supp. 2d at 2*5* ("Fung was an admitted copyright thief whose DMCA defense under § 512(d) was denied on undisputed evidence of " 'purposeful, culpable expression and conduct' aimed at promoting infringing uses of the websites" (citing the same page--2009 WL 6355911, at *15—relied up by Plaintiffs here.)   Hofile's hosting service is more closely analogous to Google's YouTube service that the peer file sharing at issue in *Fung*. In contrast, Hotfile has designed its service to comply strictly with the DMCA and is confident that it will qualify for Safe Harbor protection. If the Court would prefer, Hotfile will promptly file a motion demonstrating why a staged or phased approach—with the first phase limited to the DMCA safe harbor issues ending with a summary judgment ruling—will be the most effective way to handle this litigation.

### b.  Plaintiffs' Statement

Defendants' proposal to permit defendants to file a separate summary judgment motion on their DMCA defense, in addition to a summary judgment motion on liability, should be rejected. Defendants' further proposal to limit discovery to what defendants believe to be relevant DMCA issues is entirely baseless, and should be rejected apart from whether the Court

permits additional summary judgment briefing.  While defendants are entitled to move for summary judgment on an affirmative defense, there is no basis to permit them to move on it separately and then have yet another chance to move for summary judgment on liability. Plaintiffs do not intend to separately move for summary judgment on defendants' defense, and they would be unduly burdened by the need to respond to another dispositive motion while discovery is ongoing.  Further, plaintiffs are presumptively entitled to seek discovery on their affirmative claims, and defendants provide no basis to artificially constrict plaintiffs' discovery merely because they are asserting an affirmative defense.  It is not unusual for defendants to assert that an affirmative defense, if proven, would resolve the case, but that alone is not sufficient to restrict discovery to that defense.

Permitting defendants to file a separate summary judgment motion on their DMCA defense prior to the close of discovery would also be pointless, as that motion simply cannot be resolved without fully developed factual record, at the close of fact discovery on plaintiffs' claims.  Issues related to defendants' liability and any DMCA safe harbor are inextricably intertwined.  Defendants must show that they meet a number of requirements to obtain the statutory safe harbor of the DMCA, not merely that they removed content in response to takedown notices.  For example, defendants cannot be eligible for the safe harbor if they failed to remove or disable access to material where they had "actual knowledge that the material or an activity using the material on the system or network is infringing," or were "aware of facts or circumstances from which infringing activity is apparent," 17 U.S.C. 512(c)(1)(A), if they "receive[d] a financial benefit directly attributable to the infringing activity" where they had "the right and ability to control such activity," 17 U.S.C. 512(c)(1)(B), or if they failed to reasonably implement a policy to terminate users who are repeat infringers pursuant to 17 U.S.C.

512(i)(1)(A).  None of these issues can be resolved absent a developed factual record, and discovery into these topics will plainly overlap with plaintiffs' discovery on their affirmative claims.  *See, e.g., Columbia Pictures Indus., Inc. v. Fung*, No. 06-5578 SVW (JCx), 2009 WL 6355911, at *15-*18 (C.D. Cal. Dec. 21, 2009).  Indeed, the DMCA defense cannot be resolved without the plaintiffs' obtaining discovery showing that defendants are liable.  *See id*. at *18 ("[I]nducement liability and the [DMCA] safe harbors are inherently contradictory. . . . Defendants are liable for inducement.  There is no safe harbor for such conduct.").  Thus, even if defendants filed an early motion for summary judgment based on the DMCA, it would be necessarily denied, or its resolution would be postponed, under Fed. R. Civ. P. 54(d).

Defendants' citation to other orders that have staged discovery on defenses is inapposite, as defendants make no attempt to analogize the circumstances in those cases to that here.  *Quito* was a patent infringement case, and *CCBill* involved claims against a payment processor and connectivity provider, not a service paying users to upload infringing works and offering them for download.  Indeed, defendants' attempt to distinguish the *Fung* case merely shows why full discovery is necessary in this kind of case, as it is premised on a finding that defendants are not liable for infringement, the issue that must be resolved on summary judgment on liability.  Indeed, even the *Viacom* court (on which defendants rely) did not stage discovery on DMCA issues.  Defendants must show far more than their intent to assert an affirmative defense in order to narrow discovery to that defense.

If the Court is inclined to entertain such a request, plaintiffs submit that a request for multiple summary judgment motions or to restrict discovery should be made by separate motion to which plaintiffs may fully respond.

4. **Evidence Preservation.**

The parties have exchanged correspondence and conferred extensively about evidence preservation issues.  Plaintiffs' motion for a preservation order remains pending before the Magistrate Judge.

5. **Proposed Time Limits.**

The parties propose the following deadlines:

| Deadline | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| Deadline for serving disclosures under Fed. R. Civ. P. 26(a)(1) | April 25, 2011 | April 25, 2011 |
| Deadline for joining parties and amending pleadings | August 1, 2011 | June 15, 2011 |
| Deadline for exchanging privilege logs | June 15, 2011 | June 15, 2011 |
| Deadline for expert disclosures under Fed. R. Civ. 26(a)(2) and Local Rule 16.1(k) | September 9, 2011 | September 9, 2011 |
| Deadline for rebuttal expert reports | September 23, 2011 | November 11, 2011 |
| Discovery cut-off | October 17, 2011 | January 16, 2012 |
| Dispositive motion deadline | November 30, 2011 | January 30, 2012 |
| Final pretrial conference | On or after May 7, 2012 | On or after May 7, 2012 |
| Trial date | On or after May 21, 2012 | On or after May 21, 2012 |

a. **Plaintiffs' Statement**

Plaintiffs believe that their proposed time limits provide a sufficient time for discovery to be completed, as the parties have already served and are moving forward on responding to discovery requests.  Plaintiffs believe that the time for joining parties and amending pleadings should not be unnecessarily constricted, as defendants have proposed, given that plaintiffs will

need to ascertain the identities and involvement of additional parties that may be added to this action in place of the Doe Defendants, through the course of discovery that plaintiffs must obtain from the defendants.  Regarding expert rebuttals, plaintiffs believe that their proposal provides sufficient time for rebuttal and plaintiffs have never stated that they anticipate designating a particularly large number of experts.

### b.   Hotfile's Statement

It is not reasonable to impose such arbitrarily short time periods on Defendants for discovery, especially when Plaintiff wants to present a moving target, with the ability to freely add to and change its allegations until near the end of discovery.

For the reasons explained above, an early targeted motion on the application of the DMCA safe harbor provision will help focus discovery and make it realistic for the parties to stay within the outer range of the standard track, with a discovery cut off on January 16, 2012 and a dispositive motion cut off of January 30, 2012.  Defendants have also proposed more time for disclosure of Rebuttal experts (until November 30, 2011) as Plaintiffs have indicated they intend to designate a large number of experts.

### 6.   Likelihood of Settlement

The parties intend to explore the possibilities for promptly settling the case and have scheduled an initial settlement meeting for April 29, 2011.  The parties do not believe that the schedule should be modified at this time based on settlement discussions.

### 7.   Additional Parties and Amended Pleadings.

### a.   Plaintiffs' Statement

Plaintiffs believe additional parties may be added to this action in place of the Doe Defendants.  Those may include other individuals or entities involved in the operation of Hotfile

as well as operators of third-party websites that have partnered with defendants to facilitate infringement via Hotfile.  Plaintiffs will seek to identify these potential defendants through discovery, as information regarding those entities is uniquely in possession of defendants. Plaintiffs anticipate amending the pleadings to add those defendants, but do not otherwise anticipate amending the pleadings at this time.

### b.  Hotfile's Statement

Plaintiffs wish to be able to freely add parties and amend their complaint up until August but insist on a discovery cut off just two and a half months later.  As noted above, Plaintiffs also insist on the one-sided ability to inject thousands of additional works in to the case at any time. Their complaint reveals that they have been investigating and planning this action for "well over a year".  Compl. ¶ 37.  Plaintiff should identify all parties to the action no later than June 15, 2011 more than four months after it filed this action.

Hotfile is willing to commit to the June 15 date to determine whether to assert counterclaims.  In the days immediately before if filed this litigation, Plaintiffs – invoking Hotfile's tools and procedures for copyright owners to unilaterally delete files suspected to be copyright infringement – caused Hotfile to take down thousands of files for which Plaintiffs supposedly owned the applicable copyrights.  However, it appears that a substantial portion of these files were not likely to be owned by any Plaintiff (e.g., software and pornography). Accordingly, if necessary, Hotfile expects to file counterclaims against some or all of the Plaintiffs (and perhaps the third parties) for material misrepresentations in takedown notices pursuant to the DMCA.  17 U.S.C. § 512(f).

**8.  Proposals for the Formulation and Simplification of Issues.**

The parties agree that discovery requests served by one side on the opposing side will be equally applicable to all parties on the other side, unless otherwise specified by the serving party.

The parties disagree on the full scope of information that may be redacted in response to discovery requests.  The parties do agree that, for database records that are redacted, redactions will be done in a way that preserves the ability to identify the geographic location of the user (such as by providing city and state information or sufficient unredacted IP address information), and that allows for a unique individual user's activities to be identified even when examining different sets of data.

**a.  Plaintiffs' Statement**

Plaintiffs believe that defendants have no basis to unilaterally redact information personally identifying particular Hotfile users.  In particular, Hotfile possesses information that will identify individuals to which it has made substantial payments for uploading and promoting content that is copyrighted.  Those individuals are effectively functioning as Hotfile's business partners, and defendants have identified no privacy interest that would provide a basis to redact information identifying such individuals, citing the case indicated below for the first time in this report.  Plaintiffs have proposed a protocol whereby defendants could produce certain data in partially redacted form, but that would still allow plaintiffs to identify a limited subset of the top 500 users and/or website operators who have received the greatest amounts of payments from defendants.  The parties would then meet and confer regarding any additional information to be produced in unredacted form.  Defendants have refused to agree to this protocol.

**b.  Hotfile's Statement**.

Depriving third parties of the rights to privacy in the name of simplifying issues is not an acceptable option.  Hotfile users are entitled to privacy protection.  *See SaleHoo Group Lt. v. ABC Co.*, 722 F. Supp. 2d 1210, 1213-14 (constitutional protections regarding internet anonymity prevented party in intellectual property infringement action from unmasking internet users in discovery).  Plaintiffs' proposal would arbitrarily strip 500 users of protection regardless of their location and, most remarkably, regardless of applicable privacy law or constitutional law. There is no basis to support the implicit assumption that any user who earns revenues from Hotfile's affiliate program must  be engaged in copyright infringement.   Plaintiffs have refused to try and accommodate Hotfile users' lawful privacy rights, free speech rights, or other constitutional guarantees.  As noted, the parties have agreed that to the extent that Hotfile maintains a unique ID for each user that may be used to track the user's activity, that can be provided where appropriate in discovery.

**9.  <u>Admissions of Fact and Documents and Avoidance of Unnecessary Proof and Cumulative Evidence.</u>**

In an effort to streamline production of content files on Hotfile, Plaintiffs intend to initially request data regarding the downloads of content files, and then, at a later time, request a subset of content files for production.  Once the requested content files have been obtained, the parties will meet and confer in order to establish procedures to reciprocally mitigate preservation obligations of content files.

**10. <u>Suggestions on the Advisability of Referring Matters to a Magistrate Judge</u>**

The parties do not believe that any non-discovery matters should be referred to a magistrate judge at this time.

11. **Preliminary Estimate of the Time Required for Trial**

The parties believe that 7-9 days will suffice for a trial in this case.

12. **Requested Date or Dates for Conferences Before Trial, a Final Pre-Trial Conference, and Trial.**

The parties believe that the case could be ready for final pretrial conference on or after May 7, 2012 and ready for trial on or after May 21, 2012, subject to the convenience of the Court.

13. **Electronically Stored Information.**

The parties have met and conferred regarding a plan to facilitate discovery of electronically stored information, and are largely in agreement concerning its provisions. The parties expect to submit a proposal to the Court in the next week.

14. **Protective Order and Procedure for Asserting Claims of Privilege or Protection.**

The parties have met and conferred regarding a proposed protective order governing use and disclosure of confidential information, and expect to submit a proposal to the Court in the next week.

By:  s/ Karen L. Stetson
      Karen L. Stetson

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305-416-6880
Fax: 305-416-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA  91403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001

Phone: 202-639-6000
Fax: 202-639-6066

*Attorneys for Plaintiffs*

By:  s/_____

Janet T. Munn, Fla. Bar No. 501281
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone:  305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

And

Roderick M. Thompson (admitted *pro hac vice*)
Andrew Leibnitz (admitted *pro hac vice*)
Deepak Gupta (admitted *pro hac vice*)
Janel Thamkul (admitted *pro hac vice*)
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy: 415.954.4480

*Attorneys for Defendants*

# Attachment 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: IA PART 39**

**E-FILE**

----------------------------------------x

UMG RECORDINGS, INC.,

                Plaintiff,

    -against-

ESCAPE MEDIA GROUP, INC.,

                Defendant.

**DECISION/ORDER**
Index No. 100152/10

----------------------------------------x

**BARBARA R. KAPNICK, J.:**

Plaintiff UMG Recordings, Inc. ("UMG") claims to be the owner or exclusive United States licensee of the rights in sound recordings recorded prior to February 15, 1972 of some of the most popular and successful recording artists of the 20th Century, including Buddy Holly, The Carpenters, Cat Stevens, Chuck Berry, The Jackson Five, The Mamas and the Papas, Marvin Gaye, The Supremes, The Temptations, and The Who (the "Pre-1972 Recordings"). Defendant Escape Media Group, Inc. ("Escape") owns and operates the website, www.grooveshark.com.

Plaintiff claims that Escape is reproducing and storing the Pre-1972 Recordings on its own servers, without UMG's permission, and distributing copies of the recordings to the users of its website.

Plaintiff's Complaint seeks injunctive relief, an accounting and compensatory and punitive damages based on alleged common law

copyright infringement (first cause of action) and unfair competition (second cause of action).

Plaintiff now moves by letter application for an order: (i) bifurcating discovery in this case on the ground that the issues concerning liability and damages are separate and distinct and involve different witnesses and documents; and (ii) limiting discovery during the initial phase to a representative list of plaintiff's alleged copyrighted sound recordings, and permitting plaintiff to prove its standing to bring this action based on that representative sample.[1] Plaintiff asserts that this schedule will facilitate the filing of early dispositive motions with respect to the core issue in this case, and then would provide a meaningful opportunity to explore settlement or prepare for the next phase of the case.

Defendant opposes plaintiff's request, claiming that bifurcation would unduly prejudice it and would artificially disrupt a ruling with respect to the totality of the action. Specifically, defendant claims that without discovery from plaintiff regarding various aspects of the copyrighted works,

---

[1]    To establish a claim of copyright infringement, plaintiff must establish (1) ownership of a valid copyright, and (2) unauthorized copying of the musical works. *See, Arista Records LLC v Usenet.com, Inc.,* 663 FSupp 124 (SDNY 2009).

including ownership, use and revenue associated with the works beyond the representative sample proposed by plaintiff, defendant will be unable to adequately raise its affirmative defenses with respect to any other works, or formulate any settlement position.

> It is established that disclosure provisions are to be liberally construed and a trial court is afforded broad discretion in managing disclosure (*see Kavanagh v. Ogden Allied Maintenance Corp.,* 92 N.Y.S.2d 852, 954, 683 N.Y.S.2d 156, 705 N.E.2d 1197 [1998]). In the exercise of this discretion, competing interests concerning the need for such discovery must be balanced "'against any special burden to be borne by the opposing party'" (*id.* at 954, 683 N.Y.S.2d 156, 705 N.E.2d 1197, quoting *O'Neill v. Oakgrove Constr.,* 71 N.Y.2d 521, 529, 528 N.Y.S.2d 1, 523 N.E.wd 277 [1988]). If discovery has been limited to material and necessary information (*see* CPLR 3101[a]), the determination will not be distured unless there was a clear abuse of the trial court's discretion (citations omitted).

*American Association of Bioanalysts v New York State Dept. of Health,* 12 AD3d 868, 869 (3rd Dep't 2004). *See also, Don Buchwald & Associates, Inc. v Marber-Rich,* 305 AD2d 338 (1st Dep't 2003).

Based on the papers submitted by counsel for both sides and the oral argument held on the record on May 12, 2010, this Court finds that bifurcated discovery on liability and damages in this case is inappropriate, since the issues involved are all intertwined and should not be approached on a piecemeal basis. Either party may make a dispositive motion at the appropriate time, after complying with the requirements of Rule 24 of § 202.70 of the

3

Uniform Rules for the New York State Trial Courts (Rules of the Commercial Division of the Supreme Court).

Moreover, this Court finds that discovery should not be restricted to a representative sample of the Pre-1972 Recordings, since defendant is entitled to assert specific affirmative defenses with respect to individual recordings. *See, American Association of Bioanalysts v New York State Dept. of Health, supra* at 869-870.[2]

The parties shall enter into a discovery schedule by June 16, 2010 or appear for a conference that morning at 10:00 a.m. with the Court in Courtroom 208 at 60 Centre Street.

This constitutes the decision and order of this Court.

Date:     June / , 2010

                            Barbara R. Kapnick
                                J.S.C.

                                BARBARA R. KAPNICK
                                   J.S.C.

---

[2]     By the same letter application, plaintiff also sought an order modifying the parties' Stipulation for the Production and Exchange of Confidential Information to permit access by UMG's in-house counsel to certain confidential information labeled for "Attorneys Eyes Only." That portion of the motion was granted on the record on May 12, 2010. Defendant may move for relief from this Order as to a specific document, if it deems it necessary and appropriate.

# Attachment 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES-GENERAL

**Case No.:** CV 02-7624 LGB (SHx)     **Date:** November 17, 2003

**Title:** <u>Perfect 10, Inc. v. CCBill LLC, et al.</u>

================================================================
DOCKET ENTRY

================================================================
PRESENT:  Hon. Lourdes G. Baird, United States District Judge

    <u>Catherine Jeang</u>        <u>None Present</u>
    Deputy Clerk          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:   ATTORNEYS PRESENT FOR DEFENDANTS:

    None Present             None Present


**PROCEEDINGS:**   In Chambers

    The Court is in receipt of the parties proposed discovery orders.  The Court **ORDERS** as follows:

1.   Discovery shall be conducted in phases.  Phase I discovery will be limited to the potential application of the DMCA and the CDA to Perfect 10's claims.  Specifically, Phase I discovery shall be limited to:

        a.   DMCA.

               i.   Whether the Defendants meet the "conditions for eligibility" for the DMCA safe harbors, 17 U.S.C. § 512(i).
              ii.  Whether the Defendants meet the definition of a "service provider," 17 U.S.C. § 512(k).
             iii. Whether the Defendants provided transmission, routing or connections to any material which allegedly infringes copyrights of Perfect 10 (hereinafter "Allegedly Infringing Material") and if so, whether the elements of 17 U.S.C. § 512(a)(1)-(5) are satisfied.
              iv.  Whether the Defendants have engaged in the

1



ENTERED ON ICMS
NOV 18 2003
CV

intermediate and temporary storage of
Allegedly Infringing Material on a system or
network controlled or operated by or for the
Defendants and whether the elements of 17
U.S.C. § 512(b)(1)(A)-(C) and (b)(2) are
satisfied.

v.   Whether Defendants have engaged in the
storage at the direction of a user of
Allegedly Infringing Material that resides on
a system or network controlled or operated by
or for the Defendants and whether the
elements of 17 U.S.C. § 512(c)(1)-(3) are
satisfied.

vi.  Whether the Defendants have referred or
linked users to an online location containing
Allegedly Infringing Material by using
information location tools and whether the
elements of 17 U.S.C. § 512(d)(1)-(3) are
satisfied.

vii. Whether any conditions exist that would
support a request for injunctive relief under
17 U.S.C. § 512(j).

b.  CDA

i.   Whether Defendants meet the definition of a
provider or user of an "interactive computer
service," 47 U.S.C. § 230(f)(2).

ii.  Whether Defendants, as providers or users of
an interactive computer service, are being
treated as the publishers or speakers of any
information provided by another information
content provider, 47 U.S.C. § 230(c)(1).

iii. Whether Defendants, as providers or users of
an interactive computer service, took action
voluntarily and in good faith to restrict
access to or availability of objectionable
materials, 47 U.S.C. § 230(c)(2).

2.  All discovery other than Phase I discovery is stayed pending
further order of the Court.

3.  Phase I discovery, and the hearings on any motions relative
to Phase I discovery, must be completed by January 16, 2003.

4.  It is the Court's intention that discovery in Phase I be
limited to issues listed in ¶ 1, and that, pending

2

disposition of the DMCA and CDA issues, the Defendants should be spared the burden and expense of responding to demands that are not focused upon the potential application of the DMCA and the CDA to Perfect 10's claims, such as broadly worded demands for all documents relating to Defendants' financial condition, communications or business operations generally, as well as discovery related to issues not plead in the Complaint.

5.  The Defendants will file and personally serve any dispositive motions on the Phase I issues by no later than February 6, 2004.

6.  Opposition papers will be filed and personally served on February 27, 2004 and reply papers will be filed and personally served on March 12, 2004.

Deputy Clerk

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FAX DELIVERY ON PLAINTIFF/DEFENDANT (OR PARTIES) AT THEIR RESPECTIVE MOST RECENT FAX NUMBER OF RECORD IN THIS ACTION ON THIS DATE.

DATE: __11-17-03__

__K Barux__

DEPUTY CLERK

3