UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.

_____/

## REPLY OF DEFENDANTS HOTFILE CORPORATION AND ANTON TITOV IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

### I.   INTRODUCTION

The Studios' Opposition does not refute that Defendants run a hosting service for millions of files with many entirely legitimate uses.  (Compl. ¶ 20)  Instead, it relies on erroneous interpretations of the law, implausible conclusions and unwarranted inferences that do not satisfy the post-*Twombly* pleading standard as applied in this Circuit.  Citing what other defendants have allegedly done in other distinguishable cases does not warrant obtaining discovery of Hotfile's computer database. The Studios have failed to provide allegations in their Complaint sufficient to state a legal claim against Defendants.

### IV.   THE STUDIOS' DIRECT INFRINGEMENT CLAIM FAILS.

The Studios' argument for direct infringement is based on the false premise that the volitional conduct requirement does not apply to the right to distribute.  While the Studios inform the Court that "only a handful of courts" have considered the issue (Opp. at 6), they repeatedly cite a case but ignore its holding, which is squarely on point: "I hold that a finding of **direct infringement of the right of distribution under § 106(3) of the Copyright Act requires a**

**showing that Defendants engaged in some volitional conduct** sufficient to show that they actively engaged in distribution of the copies of Plaintiffs' copyrighted sound recordings." *Arista Records LLC v. USENET.COM, Inc.*, 633 F. Supp. 2d 124, 147-148 (S.D.N.Y. 2009) (emphasis added). *See also, Marobie-FL, Inc. v. National Ass'n of Fire Equip. Distrib.*, 983 F. Supp. 1167, 1178 (N.D. Ill. 1997) (applying volitional element to right to distribute); *Religious Tech. Ctr. v. Netcom On-Line Comm. Svcs., Inc.*, 907 F. Supp. 1361, 1371-72 (N.D. Cal. 1995) (widely followed case addressing *both* the right to reproduce and to distribute).[1]

The Second Circuit in *Cablevision* reaffirmed broadly that "volitional conduct is an important element of direct liability . . . " and did not exclude the distribution right. *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("*Cablevision*")[2] The *Usenet* court rejected the very interpretation of *Cablevision* the Studios offer here:

> Plaintiffs urge that the court in *Cablevision* addressed only direct infringement of the exclusive rights of reproduction and public performance under sections 106(1) and 106(6) of the Copyright Act, and limited the "volitional conduct" requirement to the issues addressed in that case, and not to the exclusive right of distribution. I disagree. Although the particular circumstances before the court in *Cablevision* involved the exclusive rights not at issue here, the court made clear that 'volitional conduct is an important element of direct liability.'

*Usenet*, 633 F. Supp. 2d at 147-148.

There is no principled reason (and the Studios offer none) to draw an arbitrary distinction between the right to reproduce and the right to distribute such that the element of volitional conduct would apply to one but not the other. The policy behind the creation of this requirement applies equally to both rights. Specifically, as the court in *Netcom* articulated, the absence of the volitional element would lead to "unreasonable liability" of "countless parties whose role in the infringement is nothing more than setting up and operating a system that is necessary for the

---

[1] Defendants' Motion did not "ignore" the Studios' claim that its right of distribution was infringed. It asserted that "[t]he Studios fail to state a claim for 'direct infringement' (Count I) because they do not – as copyright law requires – allege that Hotfile itself engaged in volitional copying *or any other volitional act of infringement of the copyright owners' exclusive rights under the Copyright Act*." (Mot. at 1.) In any event, "copying" is "shorthand for the infringing of any of the copyright owner's five exclusive rights." *Religious Tech. Ctr.* 907 F. Supp. at 1367 n.7.

[2] The Studios' citation to *Amazon* is even more off-base, as the discussion there concerns the right of public display, which the Studios have not alleged has been infringed. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007).

functioning of the Internet." *Netcom*, 907 F. Supp. at 1369-1370. As explained in *Cablevision*, most of the facts alleged by Plaintiffs -- uploading and downloading by users being the "entire business model" (¶ 3), using affiliates to populate the site with popular content, and using third-party link sites to promote the content – involve alleged infringing acts by third-parties and are, therefore, "more relevant to the question of contributory liability." *Cablevision*, 536 F.3d at 132.

The right of distribution, which the Studios now explain is their "principal claim" (Opp. at 4), was at issue in a recent case brought against RapidShare, another web-hosting company with a business model similar to Hotfile's. *See Perfect 10 v. RapidShare A.G., et al.*, attached as Ex. A. The *RapidShare* court denied the plaintiff's motion for preliminary injunction, finding that the plaintiffs failed to establish a *prima facie* case of direct infringement of the right of distribution. *Id.* at 6. The allegations of the Complaint against Hotfile closely parallel those made about RapidShare. Hotfile has no searchable index of files and, thus, does not make a catalog of material available to the public. (¶ 22 ("Hotfile does not provide a searchable index of the files available for download from its website.")) Like RapidShare, Hotfile's users (not Hotfile) upload and download content, which is then accessible only through a link provided to the user when the file is uploaded. (¶¶20-21.) Also like RapidShare, Hotfile users can get faster access to downloads by purchasing a "premium" account. (¶¶20, 21.) .

In contrast to facts alleged in the Complaint, cases the Studios rely on all concern internet sites that essentially provided "catalogs" of content that their users can *search* and select for download. *See Usenet*, 633 F. Supp. 2d at 131; *Capitol Records, Inc. v, MP3Tunes, LLC*, 2009 WL 3364036, at *1 (S.D.N.Y. Oct. 16, 2009); *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 552 (N.D. Tex. 1997) ; *Playboy Enterprises, Inc. v. Hardenburgh*, 982 F. Supp. 503, 505 (N.D. Ohio 1997). In those cases, the defendants engaged in some sort of affirmative review or screening of material before it was made generally available on their sites.[3] There is no allegation that Hotfile engages in such conduct.

---

[3] *See Usenet*, 633 F. Supp. 2d at 148-149 ("Defendants admit that they have control over which newsgroups their servers accept and store and which they reject and that they routinely exercised that control."); *Playboy*, 991 F. Supp. 543, 552 (defendant selected adult-oriented newsgroups from which to obtain material to sell on his website); *Playboy*, 982 F. Supp. 503, 513 (defendants employed a "screening procedure" in which its employees "viewed all files in the upload file" before publishing to subscribers).

None of the factual allegations that the Studios point to in their Opposition suggest *volitional* distribution.  Specifically:

**Encouraging uploading of "popular" content.**  As explained in Defendants' opening brief, there is nothing inherently wrongful about encouraging the uploading of "popular" content, as "popular" does not necessarily mean infringing.  (*See* Mot. at p. 8.)  Defendants effectively concede this point, as they do not take issue with the many examples of non-infringing popular content available online.  (*See id.*)  Moreover, as noted above, the content that is on Hotfile's servers is not made available as a "catalog" to the public and is not searchable, so cases in which direct infringement liability has been found are inapposite.

**Use of "pirate" link sites.**  This argument was found wanting in *RapidShare*.  *See* Ex. A at 3:9-10 ("Although RapidShare does not offer a search engine, several third-party websites such as filestube.com allow users to search for files found on RapidShare's servers.").  There, the court was unpersuaded by the fact that "third-party websites" could be used to search for files uploaded by RapidShare's users, finding that RapidShare was not involved in the same way or to the same extent as in cases where direct infringement had been found.  *Id.* at 5:27-6:16.  This factual allegation is, likewise, inadequate to show volitional conduct.

**Regulating volume and speed through Premium subscriptions.**  Again, *RapidShare* forecloses this argument, as RapidShare also employed a Premium subscription service.  *See* Ex. A at 2:25-26 ("To use RapidShare, individuals must either register for a free account or pay a fee to obtain a premium account.").  The Court still found that the plaintiff could not make out a prima facie case for direct infringement.  *Id.* at 4:11-6:16.  Thus, neither can the Studios state such a claim here, since the facts as alleged do not describe the type of service from which courts have inferred volitional conduct.

**Making "additional unauthorized copies."**  This bare assertion is not enough to salvage the Studios' claim for direct infringement.  There are no facts alleged to suggest that such copies are made **volitionally** by Hotfile only with respect to infringing files, as opposed to an automated process that is performed every time a file is uploaded to Hotfile's system.  The policy behind the volition requirement is to shield from liability companies providing web services that are "automatic and indiscriminate."  *Netcom*, 907 F. Supp. at 1372.  This allegation describes exactly

that – an "automatic and indiscriminate" process that occurs each time a file selected *by a user* is uploaded *by a user* to Hotfile's system.[4]  The Studios' direct infringement claim fails.

## II.   THE STUDIOS' SECONDARY INFRINGEMENT CLAIM FAILS.

### A.   The Studios' Inducement Claim Fails.

Rather than draw "reasonable inferences" from the averred facts, the Opposition retreats from the allegations of the complaint, instead twisting facts that are alleged, throwing out invective, and ignoring Defendants' key arguments.  But the factual allegations confirm Hotfile is fundamentally different from the businesses that have been found liable for inducement.  The features of Hotfile that supposedly show an intent to induce give rise to an equally plausible – if not more plausible – inference of a legitimate file-hosting business.  Where the facts alleged give rise to "two possible inferences," one innocent and one culpable, and plaintiff has not alleged facts showing that the latter is more plausible, the complaint fails to state a claim.  *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1341-1343 (11th Cir. 2010).  Here, the most plausible inference based on the facts alleged is that Hotfile has set up a business intended to provide legitimate file-hosting services.

In support of their inducement claim, the Studios rely on a line of distinguishable cases that address peer-to-peer file sharing networks and online bulletin boards.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005) ("*Grokster*"); *Arista Records LLC v. Lime Group LLC,* 715 F. Supp. 2d 481 (S.D.N.Y. 2010); *Usenet,* 633 F. Supp. 2d at 149; *Columbia Pictures Indus., Inc. v. Fung,* 2009 WL 6355911, at *2 (C.D. Cal. Dec. 21, 2009) ("*Fung*").  In each case, the defendants provided a platform that allowed users to *search* for movies and other copyrighted material for downloading.  *Grokster,* 545 U.S. at 920-922; *Lime Group,* 715 F. Supp. 2d at 511; *Usenet,* 633 F. Supp. 2d at 131; *Fung,* 2009 WL 6355911, at *3.

As the Studios admit in their Complaint, however, Hotfile "does not provide a searchable index of the files available for download from its website." (¶ 22.)  Rather, Hotfile's service permits users to upload files onto its servers, provides a unique hyperlink to the uploaded file

---

[4] To the extent the Studios are claiming that Hotfile actually reviews every uploaded file and decides whether to make additional copies, such an allegation is not plausible and is inconsistent with the description of Hotfile's business found elsewhere in the Complaint.  Any such interpretation should, thus, be disregarded as not satisfying the "plausibility" standard under Rule 8.  *See Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1949-1050 (2009).

which users can share (or not) with friends, family, or co-workers. (¶ 20.) This is fundamentally different from the websites that allow searching and downloading of infringing content by anyone with an internet connection. Notably, the only case of which Defendants are aware that addressed a business model like Hotfile's found against the plaintiffs.[5]  *See RapidShare*, Ex. A. Plaintiffs concede they have made no allegation of "clear expression" of an object to promote infringement. (Opp. at 10.) Thus, the Studios must allege "affirmative steps" showing the object of promoting infringement. This the Complaint fails to do, instead resorting to a basket of miscellaneous allegations that fail to create a reasonable inference of such an intent.

> *Hotfile's response to DMCA takedown notices.*  Plaintiffs characterize Hotfile's expeditious response to takedown notices – which the Complaint appears to admit – as "superficial window dressing," and  "disingenuous." Such baseless accusations are a far cry from the "reasonable inferences" needed to defeat a motion to dismiss. Plaintiffs' conclusory recitations of the statutory (DMCA) disqualifiers as supposedly diminishing the significance of Hotfile's takedown policy is not allowed under *Twombly* and *Iqbal*. *See, e.g. Iqbal,* 129 S. Ct. at 1949 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

> *Hotfile's Affiliate and Referral Programs Do Not Show an Object of Promoting Infringement.*  The Studios have not disputed that there is an overwhelming and ever-increasing amount of completely non-infringing but "popular" content available on the Internet. *See* Mot. at Section IV (enumerating various types of non-infringing popular content). Thus, "popular" is not a "euphemism" for infringement, and operating affiliate and referral programs, which allegedly encourage the use of *popular* content, cannot support the Studios' leap of faith that Hotfile intends those programs to promote *infringement*. These programs are as consistent with encouraging users to share "popular" non-infringing content and undermine the assertion that Hotfile intentionally is providing "overt economic incentives to infringe." (Opp. at 10.)

---

[5] The allegations of the Complaint, including Exhibit B, make clear that the payments to "pirate link sites" to which the Studios refer are merely payments under Hotfile's Affiliate program, in which it gives financial incentives to users who steer additional customers to Hotfile. (¶ 35 and Ex. B.) As noted in Defendants' opening brief, there is nothing nefarious, wrongful or unusual about a business seeking to attract more customers by giving its customers incentives to attract other customers. (Mot. at p. 13.)

***The Studios' Concede Hotfile's Business Model Differs from Grokster.*** The Studios fail to meaningfully address the Supreme Court's clear conclusion in *Grokster* that advertising business models are inherently different than user subscription business models (such as Hotfile's) for purpose of active inducement liability. (Mot. at 14).

***Plaintiffs' Miscellaneous Allegations Do Not Show an Intent To Induce.*** The Studios assertion that Hotfile stymies copyright owners by permitting files to be copied is undermined by Attachment B to the Complaint, which explains that users can "rename, copy, delete, [and] move files." These are routine computer operations. Even if Hotfile did not terminate repeat infringers—it does—some "repeat infringers" may also be posting "popular" non-infringing links. This allegation is not enough to raise an inference that Hotfile intends to induce infringement, particularly where, as here, the Complaint admits that Hotfile does takedown links. The allegation that Hotfile does not filter content also does not show an intent to induce infringement, because automated filtering technology cannot distinguish between fair or authorized use and infringing uses, another point that the Studios have conceded. (Mot. at 16.)

As each of these allegations, singly or in combination, do not support an inference of the intent to promote infringement, the Studios' inducement theory should be dismissed.

## B.    The Studios' Contributory Infringement Claim Fails.

The Studios' contributory infringement claim fails because it cannot be said that Hotfile's business model is "good for nothing else" but infringement. *See id.* The Studios concede that "Hotfile's services potentially could be used only to store files" (¶ 4) and do not dispute that much popular content is not infringing. The Studios' attempts to distinguish *Sony* are unavailing. That *Sony* is an affirmative defense is of no moment, as it is settled law that "[a] complaint is subject to dismissal . . . for failure to state a claim when its allegations – on their face – show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001). Further, *Sony* does not set forth a bright-line rule that if a defendant maintains an "ongoing relationship" it establishes a contributory infringement claim. Such a rule would run afoul of the policy behind *Sony* to "leave breathing room for innovation and vigorous commerce." *Grokster*, 545 U.S. at 932. As the Hotfile system is *capable* of substantial non-infringing uses, this claim fails.

The Studios argue that "actual knowledge of specific infringements" (Opp. at 15 n.9) is not required *via* an erroneous reading of *dicta* from *Grokster*. *Grokster* did not refute the Ninth

Circuit's standard for contributory infringement but, rather, clarified that *Sony's* "substantial noninfringing use" rule is not a bar to liability where there is independent evidence (as the Court found there was in *Grokster*) to support a theory of *inducement* liability. *See Grokster*, 545 U.S. at 933-934. In *Perfect 10*, the Ninth Circuit was aware of and specifically considered *Grokster*. *See Perfect 10, Inc. v. Amazon. com, Inc.,* 508 F. 3d 1146, 1172 (9th Cir. 2007).

As explained in Defendants' Motion, the "actual knowledge of specific infringements" standard is not satisfied by the allegations in the Complaint. (Mot. at 15.) The Studios rely on hyperbole – that Defendants have knowledge of "massive infringement" – not facts. (*See, e.g.*, ¶ 37.) Although the Studios do allege that they sent notices to Hotfile about infringement (*see* ¶ 37), they do not (and could not) allege that Defendants continued to provide access to the identified works. Instead, they fault Hotfile for merely continuing to operate its business. (*See* ¶ 37.) That is not enough to state a claim for contributory infringement and contravenes *Sony*'s policy of supporting vigorous commerce. *See Perfect 10,* 508 F. 3d at 1172; *see also Faulkner v. National Geographic Society*, 211 F.Supp.2d 450, 474-75 (S.D.N.Y. 2002) (where rights at issue were too indefinite to trigger knowledge, contributory infringement claim fails).

## C.   The Studios' Vicarious Infringement Claim Fails.

In discussing their vicarious infringement claim, the Studios erroneously argue that the *Perfect 10* case is distinguishable because the alleged infringement there took place on "third-party websites." (*See* Mot. at 17.) However, the *Perfect 10* court's discussion of the "practical ability" prong did *not* turn on whether the allegedly infringing content was on third-party websites but independently focused on the technological impossibility of monitoring and controlling infringement. As explained in Hotfile's motion, the Studios fail to plausibly allege that Hotfile has the practical ability to analyze infringement of all the files it hosts. (Mot. at 16.) The Studios did not rebut the well documented limits on a providers' ability to police. The Studios' similar conclusory assertions that Hotfile can "block users," "controls its premises" and "physically controls content" are true of any internet service provider.

## III.   THE STUDIOS FAIL TO STATE A CLAIM AGAINST MR. TITOV.

The Studios' Opposition cannot salvage their deficient claims against Mr. Titov. Most of the allegations relied on contain vague assertions – lacking *any* factual detail – that Mr. Titov was "responsible for" various aspects of Hotfile's business. (Opp. at 18.) The Complaint simply alleges in conclusory terms that Mr. Titov "manages the operations of Hotfile." (¶ 45.) These

-8-

resemble allegations courts have found facially deficient in other copyright infringement matters. *See Netbula, LLC v. Chordiant Software, Inc.*, 2009 WL 750201, at \*4 (N.D. Cal. Mar. 20, 2009); *CNN, L.P. v. GoSMS.com, Inc.*, 2000 WL 1678039, at \*6 (S.D.N.Y. Nov. 6, 2000); *J&J Sports Prods., Inc. v. Walia*, 2011 WL 902245, at \*4-5 (N.D. Cal. Mar. 14, 2011). Similarly, the conclusory assertion that Mr. Titov "benefited" from the alleged infringement is inadequate. Plaintiffs must allege facts showing "an *obvious and direct* financial interest in the exploitation of copyrighted materials." *Netbula*, 2009 WL 750201, at \*2. Courts routinely dismiss claims based on bare allegations of "benefit." *See id.* at \*3; *Goes Litho. Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1045 (N.D. Ill. 1998).

The only allegation of any actual act attributed to Mr. Titov is the statement that he "paid at least some of Hotfile's uploading users." (¶ 45.) But there is no nexus between this assertion and any alleged infringing activity, as the allegation refers generically to "uploading users." This is inadequate as a matter of law.[6] *See Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (E.D.N.Y. 2000) (dismissing complaint without leave to amend for failure to indicate "by what acts during what time the defendant infringed the copyright"); *GoSMS.com*, 2000 WL 1678039, at \*6 (dismissing copyright infringement claims against the manager and the director of a co-defendant corporation because plaintiffs failed to present allegations of acts of infringement).

The allegation that Mr. Titov is an officer and director of a non-party, Lemuria, does not save the Studios' claim, as it fails to support either a theory of control/benefit or actual participation. *See Marvullo*, 105 F. Supp. 2d at 230 ("Participation in the infringement must be

---

[6] The Studios' other cases are inapposite. *Foreign Imported Productions and Publishing, Inc. v. Grupo Industrial Hotelero, S.A.*, 2008 WL 4724495 (S.D. Fla. Oct. 24, 2008), involved allegations that the defendants had "control over the [allegedly infringing] content on the [defendants'] website." *Id.* at \*14. There is no allegation that Mr. Titov controlled the *content* on Hotfile's website; Hotfile's users, not Hotfile, upload the challenged content. *Lifetime Homes, Inc. v. Walker Homes, Inc.*, 2006 WL 889986 (M.D. Fla. Apr. 6, 2006), applied a pre-*Twombly* pleading standard and permitted a complaint to stand based on a conclusory allegation that did nothing more than recite the elements of the claim. *Id.* at \*3 ("Plaintiffs' complaint clearly alleges that it owns a valid copyright (the Model A) and that Defendants have copied it."). This type of pleading is no longer permitted. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Home Design Services, Inc. v. Stone Creek Homes, Inc.*, 2009 WL 4016054 (D. Co. Nov. 13, 2009), does not expressly address the individual defendants in the case or the standard applied to individual control-persons in the copyright context.

substantial" and "authorization or assistance must bear a direct relationship to the infringing acts"); *Netbula*, 2009 WL 750201, at *4 (dismissing claim against corporate officer where the complaint "fail[ed] to allege more than general supervisory power within the corporation"). It is nonsensical to argue that by virtue of his alleged role as an officer/director of a non-party that provides "Internet hosting services," Mr. Titov has "the ability to supervise the [allegedly] infringing activity" at Hotfile or that he "personally participates" in the alleged infringement at Hotfile, much less that he obtains a direct financial benefit from the alleged infringement. The conclusory allegations against Mr. Titov are simply not sufficient. *See Brought to Life Music, Inc. v. MCA Records, Inc.*, 2003 WL 29561, at *1-*2 (S.D.N.Y. Feb. 11, 2003) (dismissing copyright infringement claim against individual defendant because plaintiff did not allege *how* that defendant infringed); *Cinema Concepts Theatre Service Co. v. Filmack Studios*, No. 89 C 0024, 1989 WL 55092, at *2 (N.D. Ill. May 17, 1989) (dismissing copyright infringement claim against corporate officers where the plaintiff alleged no facts that they individually knowingly participated in, supervised or influenced the infringing activity, or derived financial benefit from it); *see also Softel, Inc. v. Dragon Med. & Sci. Communs.*, 118 F.3d 955, 971-972 (2d. Cir. 1997) (affirming dismissal of infringement claims against company's president and shareholder); *Carell v. The Shubert Org., Inc.*, 104 F. Supp. 2d 236, 271 (S.D.N.Y. 2000) (claims against individuals dismissed for not containing "any description of acts" of direct or secondary infringement).

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

Dated:   April 21, 2011

Respectfully Submitted,

s/Janet T. Munn
Janet T. Munn, FL Bar No. 501281
EMail:  jmunn@rascoklock.com
Rasco, Klock, Reininger, Perez, Esquenazi, Vigil & Nieto, P.L.
283 Catalonia Avenue Second Floor
Coral Gables, Florida 33134
Telephone:  305-476-7101
Facsimile:  305-476-7102

AND

s/ Anthony P. Schoenberg
Roderick M. Thompson (*Admitted pro hac vice*)
rthompson@fbm.com
N. Andrew Leibnitz (*Admitted pro hac vice*)
aleibnitz@fbm.com
Anthony P. Schoenberg (*Admitted pro hac vice*)
tschoenberg@fbm.com
Deepak Gupta (*Admitted pro hac vice*)
dgupta@fbm.com
Janel Thamkul (*Admitted pro hac vice*)
jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy: 415.954.4480

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2011, the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/Janet T. Munn
Janet T. Munn

Karen L. Stetson, Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone:  305.416.6880
Fax:     305.416.6887

Steven B. Fabrizio (*Pro Hac Vice* )
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice* )
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice* )
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Phone: 202.639.6000
Fax:     202.639.6066

Daniel M. Mandil, Esq.
Motion Picture Association of America, Inc.
15301 Ventura Boulevard
Building E
Sherman Oaks, CA
818-935-5812
Email: Daniel_Mandil@mpaa.org

Karen R. Thorland, Esq.
Senior Content Protection Counsel
Motion Picture Association of America, Inc.
15301 Ventura Boulevard
Building E
Sherman Oaks, CA
818-935-5812
Email: Karen_Thorland@mpaa.org

4813-8311-7321, v. 1

# EXHIBIT "A"

1

2

3

4

5

6

7

8

9

10            **UNITED STATES DISTRICT COURT**

11            **SOUTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  PERFECT 10, INC., a California corporation, | **CASE NO. 09-CV-2596 H (WMC)** |
| 14 | **ORDER DENYING** |
| 15                        Plaintiff, | **PLAINTIFF'S MOTION FOR** |
|      vs. | **PRELIMINARY INJUNCTION** |
| 16  RAPIDSHARE A.G., a corporation; | |
| 17  CHRISTIAN SCHMID; BOBBY CHANG; and DOES 1 through 100, | |
| 18  inclusive, | |
| 19                        Defendants. | |

On November 18, 2009, Perfect 10, Inc. ("Plaintiff") filed a complaint against

20  Rapidshare A.G., Christian Schmid, and Bobby Chang ("Defendants"). (Doc. No. 1.)  On

21  March 23, 2010, Defendants filed a motion to dismiss for lack of personal jurisdiction and a

22  motion to dismiss for forum non conveniens. (Doc. Nos. 6 & 7.) On April 11, 2010, Plaintiff

23  filed a motion for preliminary injunction against Defendants. (Doc. No. 9.) Plaintiff seeks an

24  injunction to prohibit Defendants from "(1) [c]ontinuing to infringe thousands of Perfect 10

25  copyrighted images; and (2) [c]ontinuing to engage in unfair competition with Perfect 10."

26  (Doc. No. 9-1 at 5.) On April 29, 2010, Defendants filed a response in opposition to Plaintiff's

27  motion for preliminary injunction. (Doc. No. 26.) On May 5, 2010, Plaintiff filed a reply in

28

1  support of its motion for preliminary injunction. (Doc. No. 43.) On May 6, 2010, the Court

2  issued an order requesting additional briefing on Plaintiff's motion for preliminary injunction.

3  (Doc. No. 44.) On May 9, 2010, Plaintiff submitted a supplemental brief. (Doc. No. 49.) On

4  May 10, 2010, Defendants also submitted a supplemental brief. (Doc. No. 50.) On May 11,

5  2010 Plaintiff and Defendants each filed a response in opposition to the other side's

6  supplemental brief. (Doc. Nos. 53 & 54.)

7       On May 12, 2010, the Court held a hearing on Plaintiff's motion for preliminary

8  injunction. Eric Benink and Jeffrey Mausner appeared on behalf of Plaintiff and Ian Ballon

9  and Lori Chang appeared on behalf of Defendants. On May 12, 2010, the Court issued an

10  order granting Defendants' motion to dismiss for lack of personal jurisdiction as to Bobby

11  Chang and Christian Schmid, denying Defendants' motion to dismiss for lack of personal

12  jurisdiction as to RapidShare, and denying Defendants' motion to dismiss for forum non

13  conveniens. (Doc. No. 60.) The Court also issued an order submitting Plaintiff's motion for

14  preliminary injunction and requesting that the parties meet and confer on certain issues. (Doc.

15  No. 61.)

16                        **BACKGROUND**

17       Plaintiff's business consists of the design, creation, production, promotion, and sale of

18  adult entertainment products, including photographs, videos, magazines, cell phone downloads,

19  and other media. (Doc. No. 1 ¶ 9.) Plaintiff's website, perfect10.com, provides users access

20  to content owned by Plaintiff for a membership fee of $25.50 per month. (Id. ¶ 12.) Plaintiff

21  alleges that it owns thousands of copyrighted photographs and video productions. (Id. ¶ 14-

22  15.)

23       Defendants characterize RapidShare as an internet file-hosting service that stores

24  electronic files of various types and sizes belonging to companies and individuals who sign up

25  for its service. (Doc. No. 6-2 ("Pfaff Decl.") ¶ 4.) To use RapidShare, individuals must either

26  register for a free account or pay a fee to obtain a premium account. (Doc. No. 26-5 ("4/29

27  Schmid Decl.") ¶ 22.) Once registered, a user can upload files from her hard drives or other

28  remote locations onto RapidShare's servers. (Pfaff Decl. ¶ 7.) The servers automatically

09cv2596

1  generate a unique download link (a URL) for each uploaded file and send that link to the user

2  who uploaded the file. (Id.) The user's file, which resides on RapidShare's servers, may only

3  be accessed by the user or a third party through the unique link assigned to the file. (Id.) Once

4  the user obtains a download link for her file, she can email the link to friends, post it on her

5  website for others to access, or keep it confidential, among other potential uses. (See id. ¶ 8.)

6  RapidShare's website does not have a search function and does not index the files stored on

7  RapidShare's servers. (Id. ¶ 9.) Rather, users manage access to information stored on

8  RapidShare's servers by making available and distributing download links. (Id. ¶ 8.)

9  Although RapidShare does not offer a search engine, several third-party websites such as

10  filestube.com allow users to search for files found on RapidShare's servers. (See Doc. No. 9-2

11  ("Zada Decl.") ¶ 7.)

12  **DISCUSSION**

13  **I.   Preliminary Injunction - Legal Standard**

14      "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

15  on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

16  that the balance of equities tips in his favor, and that an injunction is in the public interest."

17  Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374 (2008); Marlyn Nutraceuticals, Inc.

18  v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009). Injunctive relief is

19  available under both the Copyright Act and California's Unfair Competition Law ("UCL").

20  Section 502(a) of the Copyright Act authorizes a court to grant injunctive relief "on such terms

21  as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §

22  502(a). The UCL provides that "[a]ny person who engages, has engaged, or proposes to

23  engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal.

24  Bus. & Prof. Code § 17203.

25  ///

26  ///

27  ///

28  ///

**A.     Likelihood of Success on the Merits - Copyright**

Plaintiff argues that it is likely to succeed on the merits of its copyright claim based on both direct and contributory infringement. (Doc. No. 9-1 at 12-16.)  Defendants contend Plaintiff has not met its burden of showing a likelihood of success on the merits and additionally that RapidShare is entitled to protection under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.  The Ninth Circuit has made clear that Plaintiff bears the burden of establishing RapidShare's liability under the Copyright Act without reference to the DMCA, and that Defendants then have the burden of showing a likelihood that their DMCA defense will succeed.  Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1158 & n.4 (9th Cir. 2007).

**1.     Direct Copyright Infringement**

"Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." Amazon.com, 508 F.3d at 1159 (citing A & M Records, Inc. v. Napster Inc., 239 F.3d 1004, 1013 (9th Cir. 2001); 17 U.S.C. § 501(a)). Defendants do not dispute Plaintiff's ownership of at least some of the copyrighted works at issue in Plaintiff's motion. (Doc. No. 26 at 19.)  Rather, Defendants argue that RapidShare is not liable for direct infringement because any of Plaintiff's images found on its servers were copied onto the servers by RapidShare users. (Doc. No. 26 at 26.)  Plaintiff, however, argues that RapidShare is itself violating Plaintiff's exclusive distribution rights.[1] (Doc. No. 9-1 at 13.)  Section 106(3) provides that a copyright owner has the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3).  Copies may be distributed electronically.  Amazon.com, 508 F.3d at 1162 (citing N.Y. Times Co. v. Tasini, 533 U.S. 483, 498 (2001)).

---

[1]Plaintiff also contends, in a footnote, that RapidShare is violating Plaintiff's reproduction rights, rights to create derivative works, and performance rights. (Doc. No. 49 at 3 n.1.)  However, Plaintiff analyzes only RapidShare's alleged violation of Plaintiff's exclusive distribution rights. (Id.)

- 4 -

09cv2596

1    Plaintiff first argues that "because Defendants are offering unauthorized P10 Images

2  to RapidShare users who pay the monthly fee, they are violating Perfect 10's distribution rights

3  and are liable for direct copyright infringement." (Doc. No. 49 at 3.) Defendants contend that

4  RapidShare does not sell content, but rather, that it is a file-hosting site that provides users with

5  online storage space for their private files.  (Doc. No. 26 at 11.)  The characterization of

6  RapidShare's service is hotly disputed.  After considering the parties' arguments, the Court

7  concludes that, at this phase, Plaintiff has not shown that it is likely to succeed on the merits

8  of its claim for direct infringement based on a theory of distribution by sale.

9    Plaintiff also argues that RapidShare violates Plaintiff's exclusive "distribution rights

10  merely by making P10 Images available on RapidShare servers."  (Id.)  In Amazon.com, the

11  Ninth Circuit noted that "Perfect 10 incorrectly relies on Hotaling v. Church of Jesus Christ

12  of Latter-Day Saints and Napster for the proposition that merely making images 'available'

13  violates the copyright owner's distribution right." 508 F.3d at 1162 (citing Hotaling v. Church

14  of Jesus Christ of Latter-Day Saints, 118 F.3d 199 (4th Cir.1997); Napster, 239 F.3d 1004).

15  However, the Amazon.com court suggested that Hotaling and Napster may outline a "deemed

16  distribution" rule.  (Id.)  Applying this rule to the facts before it, the Amazon.com court

17  distinguished Google's activities from those at issue in Hotaling and Napster:

18        Unlike the participants in the Napster system or the library in Hotaling, Google

19        does not own a collection of Perfect 10's full-size images and does not

20        communicate these images to the computers of people using Google's search

21        engine.  Though Google indexes these images, it does not have a collection of

22        stored full-size images it makes available to the public.  Google therefore cannot

23        be deemed to distribute copies of these images under the reasoning of Napster

24        or Hotaling.

25  Id. at 1162-63.  The Amazon.com decision implies that where an entity has a collection of

26  infringing materials and makes those materials available to the public, it is deemed to have

27  distributed those materials for purposes of 17 U.S.C. § 106(3).  See id. Defendants distinguish

28  the dicta in Amazon.com by contending that it is RapidShare users and third-party websites

1    who make Plaintiff's images available. (Doc. No. 54 at 4.) The Court agrees that RapidShare

2    does not make files available in the same way as the library in <u>Hotaling</u> or the users in <u>Napster</u>.

3    The public cannot enter rapidshare.com and browse through a catalog for desired materials as

4    the library visitors could in <u>Hotaling</u>. <u>See</u> 118 F.3d at 203 (concluding that "[w]hen a public

5    library adds a work to its collection, lists the work in its index or catalog system, and makes

6    the work available to the borrowing or browsing public, it has completed all the steps

7    necessary for distribution to the public"). Additionally, a RapidShare user cannot find files

8    located on RapidShare's servers in the same way as a Napster user could find a specific song

9    from a peer's library because RapidShare does not index its files. <u>See</u> <u>Napster</u>, 239 F.3d at

10   1012 (stating that "the user can access an index of all MP3 file names in a particular hotlisted

11   user's library and request a file in the library by selecting the file name"). Because the Court

12   concludes that RapidShare does not make infringing material available in the same way or to

13   the same extent as the library in <u>Hotaling</u> or the users in <u>Napster</u>, the Court declines to hold

14   RapidShare liable for direct infringement on a theory of deemed distribution. Accordingly,

15   the Court concludes that Plaintiff has failed to present a prima facie case of direct infringement

16   against RapidShare based on the present record before the Court.

17   **2.      Contributory Copyright Infringement**

18           Contributory infringement exists when a defendant intentionally induces or encourages

19   direct infringement. <u>See</u> <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 545 U.S. 913,

20   930 (2005). The basic test is "that one contributorily infringes when he (1) has knowledge of

21   another's infringement and (2) either (a) materially contributes to or (b) induces that

22   infringement." <u>Perfect 10, Inc. v. Visa Int'l Service, Ass'n</u>, 494 F.3d 788, 795 (9th Cir. 2007).

23   To show contributory infringement, a plaintiff must show direct infringement by third parties.

24   <u>See</u> <u>Amazon.com</u>, 508 F.3d at 1169.

25   ///

26   ///

27   ///

28   ///

1    *a.    Direct infringement by third parties*

2         Direct infringement by third parties is occurring. Defendants do not dispute Plaintiff's

3 ownership of at least some of the copyrighted works at issue in Plaintiff's motion. (Doc. No.

4 26 at 19.) Additionally, Plaintiff has demonstrated that its copyrighted images were uploaded

5 onto RapidShare's servers and are available for download. (Zada Decl. ¶¶ 6-7.) RapidShare

6 users who uploaded Plaintiff's copyrighted images to the server violated Plaintiff's distribution

7 rights and any RapidShare users who may have download files containing Plaintiff's

8 copyrighted images violated Plaintiff's reproduction rights. See Napster, 239 F.3d at 1014.

9    *b.    Knowledge of infringing activity*

10         "Contributory liability requires that the secondary infringer know or have reason to

11 know of direct infringement." Napster, 239 F.3d at 1020. The knowledge required for a

12 finding of contributory infringement may not be imputed merely because a technology may

13 be used to infringe a plaintiff's copyrights. Id. at 1020-21 (discussing Sony Corp. v. Universal

14 City Studios, Inc., 464 U.S. 417 (1984)). Rather, the defendant must have actual, specific

15 knowledge of direct infringement. Id. at 1020-22.

16         Defendants argue that RapidShare cannot be liable for contributory infringement

17 because it did not have knowledge of specific infringing material. (Doc. No. 26 at 26.)

18 Defendants acknowledge that they received a disc from Plaintiff that contained hundreds of

19 Plaintiff's copyrighted works. (See Doc. No. 26 at 15.) The disc does not provide information

20 about where the files are located, but organizes the files by model name and provides the full-

21 sized image. (See Doc. No. 26-5 ("Schmid Decl.") Ex. B.) Many of the images provided

22 contain Perfect 10 copyright notices. (See id.) Defendants, however, contend that Plaintiff

23 provided inadequate notice because RapidShare cannot locate and delete files where the only

24 information provided is an image. (Doc. No. 26 at 17.)

25         In Napster, the Ninth Circuit concluded that the service provider had sufficient

26 knowledge of infringement for a finding of contributory infringement even though Napster

27 contended "that because the company cannot distinguish infringing from noninfringing files,

28 it does not 'know' of the direct infringement." See Napster, 239 F.3d at 1020-22. Thus, it

1  appears that specific knowledge of direct infringement may exist even where an operator does

2  not have information that would allow it to search its contents and distinguish infringing from

3  non-infringing materials. Here, RapidShare received notice of hundreds of copyrighted Perfect

4  10 images that were found on its servers. The Court therefore concludes that RapidShare had

5  actual, specific knowledge of direct infringement.

6     *c.*    *Material contribution*

7            "To state a claim of contributory infringement, Perfect 10 must allege facts showing that

8  Defendants induce, cause, or materially contribute to the infringing conduct." Visa, 494 F.3d

9  at 796. In Napster, the Ninth Circuit affirmed the district court's determination that the service

10  provider materially contributed to direct infringement. 239 F.3d at 1022. While RapidShare

11  and Napster's services both allow for file sharing, the services provided are materially

12  different. Importantly, Napster utilized software that allowed it to maintain a search index of

13  its collective directory of files. Id. at 1012. This enabled Napster users to search for and locate

14  specific MP3 file names listed on the server's index. See id. In affirming the district court's

15  conclusion that Napster materially contributed to direct infringement, the Ninth Circuit focused

16  on district court's determinations that "[w]ithout the support services defendant provides,

17  Napster users could not find and download the music they want with the ease of which

18  defendant boasts," and that "Napster is an integrated service designed to enable users to locate

19  and download MP3 music files." Id. at 1022 (citing Napster, 114 F. Supp. 2d at 919-20). In

20  contrast, RapidShare does not index user materials and does not have a function that allows

21  users to search for specific files. (Pfaff Decl. ¶ 9.) All communication regarding the location

22  of files is user driven. (Id. ¶ 8.) Accordingly, the Court concludes that the rationale for finding

23  that Napster materially contributed to direct infringement does not apply with equal force to

24  RapidShare. RapidShare does not provide an integrated service that allows users to locate and

25  download infringing files. It does not provide "the site and facilities" for direct infringement

26  in the same way as Napster did. See Napster, 239 F.3d at 1022 (citing Fonovisa, Inc. v. Cherry

27  Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996)). Thus, Plaintiff must show something more

28  than the mere existence of RapidShare's file-hosting service to show that RapidShare

1  materially contributes to direct infringement.

2      In Amazon.com, the Ninth Circuit stated "that a computer system operator can be held

3  contributorily liable if it has actual knowledge that specific infringing material is available

4  using its system and can take simple measures to prevent further damage to copyrighted works,

5  yet continues to provide access to infringing works." 508 F.3d at 1172 (quotation marks and

6  citations omitted).  Here, RapidShare did have actual knowledge of specific infringing

7  material.  RapidShare argues that it is taking all simple measures available to remove the

8  infringing material.  According to Defendants,

9          RapidShare cannot locate and delete files where the only information provided

10         is [an] image.  See Hartojo Dec., ¶ 14.  However, the Abuse Department was

11         able to find and take down certain files whose download links were identified

12         on the screen shots that Zada attached to his declaration . . . and also proactively

13         searched the third-party websites identified in his declaration, such as

14         filestube.com, and took down any files listed on those sites that appeared to be

15         suspect.  See [id.] ¶ 12.  In addition, the download links identified in the

16         complaint have also been disabled and the files deleted.  Id. ¶ 13.  The Abuse

17         Department has also begun probatively searching Google and Bing.com for files

18         that may contain the words "RapidShare" and either "Perfect 10" or the names

19         of specific models identified by Zada.  Id. ¶ 15.

20  (Doc. No. 26 at 17.)  Considering the evidence submitted by the parties thus far, the Court

21  concludes that Plaintiff has not shown that RapidShare is failing to take simple measures to

22  prevent further damage to Plaintiff's copyrighted works.  Rather, the evidence suggests that

23  RapidShare is using information provided by Plaintiff to locate and remove infringing

24  materials, and is also taking independent steps to identify, locate, and remove infringing files.

25  Accordingly, the Court concludes that Plaintiff has not shown that RapidShare is contributorily

26  liable for copyright infringement under the standard announced in Amazon.com, 508 F.3d at

27  1172.

28  ///

- 9 -

1    Plaintiff also argues that RapidShare materially contributes to direct infringement
2    through its affiliate program.  Plaintiff explains that, under this program, RapidShare pays its
3    members when they refer traffic to rapidshare.com and when other RapidShare members
4    download infringing content that these members have uploaded onto RapidShare's servers.
5    (Doc. No. 9-1 at 14.)  RapidShare concedes that it had a program that it referred to as an
6    affiliate program. (Doc. No. 26 at 12 n.7.) However, RapidShare contends that "it terminated
7    its cash rewards program well before it filed its Jurisdictional Motions because it became
8    concerned that program was being used by some users to promote infringement." (Id.)  In
9    March 2010, RapidShare also terminated a rewards program that provided users with
10   merchandise like t-shirts and computer gadgets. (Id.)  RapidShare still has a program that
11   allows users to generate points and use them to make charitable donations. (Id.)  The goal of
12   RapidShare's program was, and still is, to reward users for distributing and reproducing
13   (through uploading and downloading) material, even if that material is infringing.  Whether
14   the program rewards users with money, merchandise, or charitable donations, it encourages
15   users to upload and download potentially infringing material.  Since the Court has insufficient
16   information about the scope of the charitable donations rewards program, the Court denies the
17   motion for an injunction without prejudice.

18   *d.*    *Inducement*

19      In Grokster, the Supreme Court found that "one who distributes a device with the object
20   of promoting its use to infringe copyright, as shown by clear expression or other affirmative
21   steps taken to foster infringement, is liable for the resulting acts of infringement by third
22   parties." 545 U.S. at 936-37.  The Court summarized the rule for contributory liability based
23   on "inducement" as follows:

24          In sum, where an article is good for nothing else but infringement, there is no
25          legitimate public interest in its unlicensed availability, and there is no injustice
26          in presuming or imputing an intent to infringe.  Conversely, the doctrine
27          absolves the equivocal conduct of selling an item with substantial lawful as well
28          as unlawful uses, and limits liability to instances of more acute fault than the

- 10 -

1    mere understanding that some of one's products will be misused.  It leaves

2    breathing room for innovation and a vigorous commerce.

3    Id. at 932-33 (quotation marks and citations omitted); see Visa, 494 F.3d at 801.  Here,

4    RapidShare argues that there are substantial lawful uses for RapidShare's service.  For

5    example, RapidShare provides users with a secure location to store and access files from

6    anywhere that there is Internet access. (Pfaff Decl. ¶ 4.) Additionally, RapidShare provides

7    data storage capacity which may present businesses with an economical alternative to buying

8    and maintaining their own storage-related computer hardware. (Id.) RapidShare has presented

9    evidence that the German edition of PC World magazine has twice used RapidShare to host

10   files of anti-virus software for its readers to download. (Id. ¶ 5.)  Moreover, Plaintiff has not

11   presented evidence to show that RapidShare's software system was "engineered, disseminated,

12   and promoted explicitly for the purpose of facilitating piracy of copyrighted [material] and

13   reducing legitimate sales of such [materials] to that extent." Visa, 494 F.3d at 801.  Rather,

14   RapidShare argues that it strives to eliminate infringing uses.  RapidShare's Conditions of Use

15   prohibit uploading of files that violate third-party copyrights. (Pfaff Decl. ¶ 12.) Additionally,

16   RapidShare's Abuse Department responds to takedown notices submitted by copyright owners

17   by removing infringing files, terminates the accounts of users who upload unauthorized files,

18   and independently searches for and removes infringing files using third-party websites. (Id.

19   ¶ 13.)  Accordingly, the Court concludes Plaintiff has not met its burden of showing that

20   RapidShare is liable for contributory infringement based on an inducement theory.

21   **3.    Digital Millennium Copyright Act**

22           "Because the burdens at the preliminary injunction stage track the burdens at trial, once

23   the moving party has carried its burden of showing a likelihood of success on the merits, the

24   burden shifts to the non-moving party to show a likelihood that its affirmative defense will

25   succeed."    Amazon.com, 508 F.3d at 1158 (quotation marks and citations omitted).

26   Defendants claim that RapidShare qualifies for the limitations on liability set forth in title II

27   of the DMCA, 17 U.S.C. § 512. (See Doc. No. 26 at 22.)

28           Congress enacted title II of the DMCA to provide greater certainty to service

1    providers concerning their legal exposure for infringements that may occur in

2    the course of their activities.  Sections 512(a) through (d) limit liability for

3    (respectively):  (1) transitory digital network communications; (2) system

4    caching; (3) information residing on systems or networks at the direction of

5    users; and (4) information location tools.  A service provider that qualifies for

6    such protection is not liable for monetary relief and may be subject only to the

7    narrow injunctive relief set forth in section 512(j).

8  Amazon.com, 508 F.3d at 1158 (quotation marks and citations omitted).

9        Plaintiff argues that RapidShare is ineligible for the DMCA's safe harbor because

10  RapidShare has not designated a DMCA agent with the United States Copyright Office. (Doc.

11  No. 9-1 at 16.)  Section 512(c)(2) provides that

12    [t]he limitations on liability established in this subsection apply to a service

13    provider only if the service provider has designated an agent to receive

14    notifications of claimed infringement . . . by making available through its

15    service, including on its website in a location accessible to the public, and by

16    providing to the Copyright Office, substantially the following information: (A)

17    the name, address, phone number, and electronic mail address of the agent. (B)

18    other contact information which the Register of Copyrights may deem

19    appropriate.

20  17 U.S.C. § 512(c)(2). Defendants contend that this provision is merely a notice requirement,

21  and that Plaintiff had adequate notice regarding where to send infringement notifications.

22  (Doc. No. 26 at 22 n.24.)  The Court disagrees with Defendants' interpretation of the statute.

23  The language of the DMCA clearly states that a service provider can take advantage of the safe

24  harbor only if the service provider has given the Copyright Office specific information

25  regarding its designated agent.  RapidShare has failed to follow this procedure and Defendants

26  have cited no case that has allowed a service provider to take advantage of the safe harbor

27  without following the prescribed procedures.  Accordingly, the Court concludes that, until

28  RapidShare provides the required information to the Copyright Office, RapidShare may not

1   take advantage of the protections afforded by this section of the DMCA.

2       Considering all of the law and facts presented by the parties, the Court concludes that,

3   at this point in the case, Plaintiff has not met its burden of showing that it is likely to succeed

4   on the merits of its claims for direct and contributory copyright infringement.  Moreover, the

5   Court concludes that RapidShare is not likely to succeed on its DMCA affirmative defense

6   because RapidShare has not yet designated an agent with the U.S. Copyright Office.

7   **B.     Likelihood of Success on the Merits - Unfair Competition**

8       Plaintiff's unfair competition claim rests on its cause of action for copyright

9   infringement.  Plaintiff argues that RapidShare is providing access to "stolen intellectual

10  property" in a manner which significantly harms competition. (Doc. No. 9-1 at 19.)  Because

11  the Court declines, at this time, to find that Plaintiff is likely to succeed on the merits of its

12  copyright infringement claim, the Court concludes that Plaintiff is also unlikely to succeed on

13  the merits of its unfair competition claim.

14  **C.     Likelihood of Irreparable Harm**

15      "[A] plaintiff that demonstrates a likelihood of success on the merits of a copyright

16  infringement claim is entitled to a presumption of irreparable harm." Sun Microsystems, Inc.

17  v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir. 1999); LGS Architects, Inc. v. Concordia

18  Homes of Nevada, 434 F.3d 1150, 1155 (9th Cir. 2006).  Defendants argue that this standard

19  no longer applies after Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374 (2008) and

20  eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006).  (Doc. No. 26 at 19-20.)  The Ninth

21  Circuit has continued to apply a presumption of irreparable injury in a trademark case after

22  Winter.  See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877

23  (9th Cir. 2009) (citing Winter, 129 S. Ct. at 374 for preliminary injunction standard in a

24  trademark infringement case and stating that "[b]ecause the court found a likelihood of success

25  on the merits, it reasonably presumed irreparable injury").  Moreover, the Ninth Circuit has

26  not interpreted eBay to mean that it is inappropriate for a district court to apply a presumption

27  of irreparable harm upon a finding that a plaintiff is likely to succeed on the merits of its

28  copyright infringement claim.  In any event, the Court has concluded that Plaintiff has not

1   shown a likelihood of success on the merits of its copyright infringement and unfair

2   competition claims. Accordingly, the Court need not determine whether Plaintiff is likely to

3   suffer irreparable harm in the absence of an injunction.

4   **D.   Balance of Equities**

5   At this point, the Court is not convinced that the balance of equities tip in Plaintiff's

6   favor. See Winter, 129 S. Ct. at 374. Plaintiff contends that, without injunctive relief, Plaintiff

7   will be forced into bankruptcy. (Doc. No. 9-1 at 22.) However, Plaintiff has not availed itself

8   of simple, available measures to protect its property. For example, while Plaintiff alleges that

9   it has been able to download at least 43,000 infringing copies of Perfect 10 images from

10   RapidShare's servers, it has not provided RapidShare with sufficient information to allow

11   RapidShare to locate and remove the images. (See Doc. Nos. 49 at 2-3 & 26 at 17.) Moreover,

12   Defendants contend that Plaintiff declined RapidShare's offer to provide Plaintiff with a

13   "takedown tool" that would allow Plaintiff to immediately delete infringing files from

14   RapidShare's servers. (Doc. No. 26 at 7.) Defendants have also offered evidence that Plaintiff

15   was aware that its copyrighted images were available on RapidShare's servers in 2005, but

16   nonetheless waited until November 2009 to file this lawsuit. (Doc. No. 26-2 ("Bridges

17   Decl.").) Considering Plaintiff's apparent lack of interest in self-help measures and its delay

18   in bringing this action, the Court concludes that, at present, the equities do not weigh in favor

19   of granting injunctive relief.

20   **E.   Public Interest**

21   "In exercising their sound discretion, courts of equity should pay particular regard for

22   the public consequences in employing the extraordinary remedy of injunction." Winter, 129

23   S. Ct. at 376-77 (quotation marks and citations omitted). The Supreme Court has recognized

24   the need for a "balance between the respective values of supporting creative pursuits through

25   copyright protection and promoting innovation in new communication technologies by limiting

26   the incidence of liability for copyright infringement." Grokster, 545 U.S. at 928. Considering

27   both of these values, the Court concludes that the public interest will not be served by an

28   injunction at this point.

- 14 -

1

## CONCLUSION

2     For the reasons set forth above, the Court denies Plaintiff's motion for preliminary

3   injunction without prejudice.

4     **IT IS SO ORDERED**.

5   DATED: May 18, 2010

6

7                              MARILYN L. HUFF, District Judge
                              UNITED STATES DISTRICT COURT

8   COPIES TO:

9   All parties of record

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28