Sealed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.

_____/

**PLAINTIFFS' MOTION AND MEMORANDUM TO COMPEL RESPONSES TO
REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

**HIGHLY CONFIDENTIAL
SUBMITTED FOR FILING UNDER SEAL**

# TABLE OF CONTENTS

I. COMPLETE CONTENT REFERENCE DATA AND USER DATA SHOULD BE PRODUCED. ...........................................................................................................3

    A. Plaintiffs' Requests for Production: ...........................................................................4

    B. Defendants' Objections to Plaintiffs' Requests for Production: ...........................5

    C. Grounds Assigned for Defendants' Objections: .....................................................6

    D. Bases for Compelling Production as to Requests No. 1 and 2: ..............................6

        1. Data Related to All Content Files. ............................................................6

        2. Data Related to "Status" of Files on Hotfile. ............................................10

        3. Geographic Location Data of Hotfile Users. .............................................12

II. AFFILIATE DATA SHOULD BE PRODUCED. ............................................................12

    A. Plaintiffs' Requests for Production and Interrogatory: ...........................................12

    B. Defendants' Objections to Plaintiffs' Discovery: .....................................................13

    C. Grounds Assigned for Defendants' Objections: .....................................................14

    D. Bases for Compelling Production as to Request No. 3 and Interrogatory No. 9: ...............................................................................................................................14

III. SOURCE CODE SHOULD BE PRODUCED. ................................................................16

    A. Plaintiffs' Requests for Production : .......................................................................16

    B. Defendants' Objections to Plaintiffs' Request for Production: ..........................16

    C. Grounds Assigned for Defendants' Objections: .....................................................16

    D. Bases for Compelling Production as to Request No. 16: ......................................16

IV. INFORMATION REGARDING REVENUES SHOULD BE PRODUCED. ..................18

    A. Plaintiffs' Request for Production and Interrogatory: ...........................................19

    B. Defendants' Objections to Plaintiffs' Request for Production: ..........................19

    C. Grounds Assigned for Defendants' Objections: .....................................................20

    D. Bases for Compelling Production as to Request No. 15 and Interrogatory No. 9: ...............................................................................................................................20

The plaintiffs move to compel production of certain key documents and interrogatory responses, in response to Requests For Production Nos. 1, 2, 3, 15(b), and 16, and Interrogatory Nos. 6 and 9. Defendants are refusing to produce important evidence directly relevant to plaintiffs' claims for copyright infringement, including evidence that plaintiffs anticipate will show massive infringement of plaintiffs' works, the technological steps that defendants have taken to facilitate that infringement, and the infringement-driven profit that motivates defendants' conduct. Defendants primarily object to producing documents on the basis of relevance. This objection is meritless. Courts in a long line of similar online infringement cases have relied on the very kind of evidence defendants are refusing to produce in evaluating infringement claims. Plaintiffs have sought this evidence – and defendants are refusing to produce it – because it is directly relevant to plaintiffs' allegations in this case. Respectfully, the Court should compel production.

## BACKGROUND

Defendants operate a website, www.hotfile.com ("Hotfile") that plaintiffs allege facilitates copyright infringement on an enormous scale. Hotfile hosts many millions of files that Hotfile's users download by clicking a unique "link" supplied by Hotfile. In order to ensure that Hotfile has an ever-replenished supply of the most popular content, defendants pay individuals, who they call "Affiliates," to upload content, paying Affiliates more based on the number of downloads of the file by other Hotfile users. Compl. ¶¶ 29, 30-31. Many of those Affiliates are also pirate website operators who can register their websites with Hotfile, post links to copyrighted content on Hotfile, and be paid by Hotfile based on the number of downloads of those files. *Id.* ¶ 35. Hotfile's entire business model is premised upon exploiting the availability and distribution of popular infringing content – defendants make money by charging users for "Premium" subscriptions that allow for faster and more efficient downloads. *Id.* ¶¶ 21, 24. By design, Hotfile is a hub for distributing a vast amount of content that defendants know and intend to be popular infringing content. *Id.* ¶ 44. For these and other reasons, defendants are liable for direct and secondary copyright infringement of plaintiffs' works. *Id.* ¶¶ 49-50, 59-62. *See, e.g., Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 545 U.S. 913 (2005); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 843-45 (11th Cir. 1990); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 146-49 (S.D.N.Y. 2009) ("*Usenet II*").

Plaintiffs, the copyright owners of major motion picture and television programs, brought

suit on February 8, 2011, alleging that defendants have infringed their works on a massive scale.
Plaintiffs served an initial set of document requests and interrogatories on April 1, 2011, and
defendants served their objections on May 5, 2011. The parties have held multiple meet and
confer discussions during which plaintiffs sought additional information from defendants on a
number of objections in order to further address any concerns about burden or privacy. But, in
large part, defendants have refused to provide such information, and have continued to object to
producing some of the most critical evidence in this case – evidence that is uniquely in
defendants' possession. *See* Declaration of Duane C. Pozza ("Pozza Decl.") ¶¶ 2-5. The
evidence that defendants are refusing to produce includes the following:

- <u>Content Reference Data.</u>  Plaintiffs have requested certain defined "Content Reference
  Data" about the content files uploaded to and downloaded from Hotfile, including data
  about the names and sizes of content files, and the number of downloads of the those
  files. This Content Reference Data is very important to several issues in dispute,
  including providing a basis for statistical analyses to determine the extent of the overall
  use of Hotfile for infringement. Courts in comparable online copyright infringement
  cases repeatedly have pointed to the importance of statistical analyses showing the
  proportion of infringement on the defendants' systems to evaluate liability.

- <u>User Data.</u>  Plaintiffs have requested certain data about Hotfile users and their activities
  ("User Data") that would permit plaintiffs to determine whether their copyrighted works
  were downloaded or uploaded by Hotfile users in the United States. Defendants have
  made clear they intend to contest the fact of direct infringement under the U.S. Copyright
  Act as to each of plaintiffs' works. The requested User Data, in combination with the
  Content Reference Data, is the best evidence of that direct infringement.

- <u>Affiliate Data.</u>  Defendants are refusing to produce information identifying the most
  highly paid of their "Affiliates." These individuals work in concert with defendants to
  supply and promote infringing content on Hotfile; they are essentially business partners
  of Hotfile. Hotfile has paid its top Affiliates substantial amounts of money, some tens of
  thousands of dollars. *See* Pozza Ex. G ("Highly Confidential" interrogatory response).
  Plaintiffs have asked defendants to identify a small subset of the highest paid Affiliates.
  Many of these Affiliates likely will be key witnesses, and, based upon their dealings with
  defendants, are potentially the "Doe" defendants identified in the Complaint.

- Source Code. Defendants have made clear that they are contesting most of plaintiffs' allegations as to the technical operation and capabilities of the Hotfile system, including that Hotfile readily could have implemented technology to prevent or mitigate copyright infringement. At the same time, defendants are refusing to produce Hotfile's source code, which is the best evidence of how the site operates. The source code would establish, as scientific fact, precisely how Hotfile functions and what measures defendants could have (but refused to) implement. In almost every comparable case, courts have relied on source code evidence, and expert evidence derived from the source code, in reaching their decisions on copyright infringement.

- Revenue Data. Defendants have refused to produce evidence showing, at a high level, the revenues that defendants have received as a result of Hotfile's infringing activities. Defendants' profit from infringement is an element of vicarious liability and the level of revenues is highly probative of defendants' motivation to foster infringement.

Defendants are refusing to produce, or unreasonably narrowing, many other categories of requested documents and information not at issue in this motion. The parties continue to discuss those in the hope of arriving at a resolution that might avoid further discovery motions. However, the categories that are the subject of this motion are each absolutely central to plaintiffs' ability to prepare their case, and defendants' adamant refusal to produce these materials is impeding plaintiffs' ability to move forward. Defendants' refusal to produce obviously important discovery is not substantially justifiable. Fed. R. Civ. Pro. 37(a)(5)(A)(ii).

## ARGUMENT

I.   **COMPLETE CONTENT REFERENCE DATA AND USER DATA SHOULD BE PRODUCED.**

Plaintiffs seek full production of Content Reference Data and User Data, which are certain defined categories of data about Hotfile's available content files and downloads of those content files by users. Plaintiffs, after consulting with defendants on the types of data that Hotfile keeps, carefully narrowed the definition of the requested categories to seek specific "fields" of data, readily available to defendants, and directly relevant to the claims and defenses in this case. Among other things, the requested Content Reference Data and User Data will enable plaintiffs to conduct statistical analyses to demonstrate the extent of infringing activities on defendants' site and to demonstrate direct infringement of the plaintiffs' works.

3

Defendants have refused to produce data as follows: (1) defendants have refused to produce any requested data for all but a meaningless subset of content files on Hotfile; (2) defendants have refused to produce particular data related to the "status" of content files on Hotfile for any files; and (3) defendants have refused to produce data related to the geographic location of Hotfile's downloading users for any files. Defendants know full well that the limited production they have agreed to make would be meaningless for plaintiffs to conduct the necessary statistical and direct infringement analyses.

### A.   Plaintiffs' Requests for Production:

Plaintiffs' Request for Production No. 1:

"[A]ll Content Reference Data," which was defined as "any electronic data pertaining to the Content Files (apart from the Content Files themselves) received by Hotfile servers or otherwise created, maintained, or used by Hotfile or Defendants," and "shall include":

   a.  the Hotfile URL associated with each such file;
   b.  any unique Hotfile-assigned identifier associated such each such file;
   c.  any identifiers of the uploading Hotfile user associated with each such file including IP address, username, and Hotfile user identification number;
   d.  the Hotfile user supplied filename of each such file;
   e.  the size in bytes of each such file;
   f.  the date and time each such file was uploaded to Hotfile;
   g.  the location and/or IP address from which each such file was uploaded to Hotfile;
   h.  the number of times each such file has been downloaded from Hotfile;
   i.  the number of times each such file has been downloaded from Hotfile;
   j.  the location and/or IP address from which each such file was downloaded from Hotfile;
   k.  the dates and time of each download of each such file from Hotfile;
   l.  whether each such file was copied using Hotfile's feature by which an uploading user may create additional copies within their account, and if so, the Hotfile URL and any unique identifier associated with each resulting copy;
   m.  the "status" of each such file on the Hotfile Website, including:
       i.  whether the file remains active;
       ii.  whether the file has been blocked from user access, or from Hotfile's servers;
       iii.  for files that do not remain active, the reason why the file no longer remains active, including
          1.  whether the file was the subject of a copyright owner claim or notice;
          2.  whether the Hotfile user deleted the file; or
          3.  whether the file was blocked, removed, or deleted for inactivity; or
          4.  whether the file is no longer active for some other reason.

Pl. RFP, Def. 17

Plaintiffs' Request for Production No. 2:

"[A]ll User Data," which was defined as "all electronic data received by Hotfile servers or otherwise created, maintained, or used by Hotfile or Defendants reflecting information about Hotfile users, whether registered or unregistered, including any user account or activity records,

4

any records of uploads to or downloads from Hotfile by users (including log files), and all records concerning payments made or owed to users under any of Hotfile's 'Affiliate' programs." *Id.*, Def. 18.

**B.** **Defendants' Objections to Plaintiffs' Requests for Production:**

Defendants' Objections to Plaintiffs' Request for Production No. 1:

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks Content Reference Data for all files ever uploaded to, stored on and/or downloaded Hotfile.com, without any limitation whatsoever. This request covers millions of files, many or most of which have no relationship to the two claims of copyright infringement set forth in the Complaint and/or the approximately 150 titles identified in Exhibit A to the Complaint as to which infringement is claimed. Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws by requesting personal and/or financial information about Hotfile users. Hotfile further objects to this request to the extent it seeks documents not in the possession, custody, or control of Hotfile and insofar as it would require Hotfile to create documents that do not presently exist. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks documents or information related to alleged copyright infringement activity occurring entirely outside the United States. As United States copyright law has no extraterritorial effect, such activities are not relevant to the present dispute.

Subject to the foregoing general and specific objections, Hotfile will produce nonprivileged, responsive data in its possession, custody, or control if it exists for video files uploaded or downloaded in the United States whose filename matches one of the copyrighted works specifically identified in the complaint or otherwise identified by Plaintiffs as infringing, to the extent that such documents are located through a reasonable and diligent search, such data to include:

1. the numerals in the Hotfile URL;
2. the Hotfile-assigned identifier;
3. the Hotfile user identification number and redacted IP address for the uploading Hotfile user;
4. the Hotfile user-supplied filename;
5. the size in bytes;
6. the date and time of uploading to Hotfile;
7. the redacted IP address from which each such file was uploaded to Hotfile;
8. the number of times each such file has been downloaded from Hotfile,
9. when each such file was downloaded;
10. whether each such file is a copy of another file and the unique identifier associated with such copies;
11. whether the file remains active; and
12. pursuant to response to Request No. 5, any takedown notice that may be associated with each such file.

Defendants' Objections to Plaintiffs' Request for Production No. 2:

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "all electronic data" reflecting information about Hotfile users and it seeks information concerning all Hotfile users without any limitation whatsoever. This request purports to cover anyone who has ever uploaded or downloaded files on Hotfile's system, which covers millions of files, many or most of which have no relationship to the two claims of copyright infringement set forth in the Complaint and/or the approximately 150 titles identified in Exhibit A to the Complaint as to which infringement is claimed. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to "Hotfile users" as that term is defined in the Definitions and Instructions. Plaintiffs' definition includes every internet user who has ever accessed the Hotfile website, regardless of whether such user has uploaded or downloaded files from Hotfile. It is impossible for Hotfile to know the identity of every person who has ever accessed the Hotfile website. Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws by requesting personal and/or financial information about Hotfile users. Hotfile further objects to this request to the extent it seeks documents not in the possession, custody, or control of Hotfile and insofar as it would require Hotfile to create documents that do not presently exist.

Subject to the foregoing general and specific objections, Hotfile will produce nonprivileged, responsive data in its possession, custody, or control if it exists in relation to user activity regarding video files uploaded or downloaded in the United States whose filename matches one of the copyrighted works specifically identified in the complaint or otherwise identified by Plaintiffs as infringing, such data to include: user activity records or log files (redacted to protect user confidentiality and privacy but disclosing Hotfile user ID); and documents sufficient to show the top cumulative payments by user ID to Hotfile's top 500 users worldwide, to the extent that such data are located through a reasonable and diligent search.

### C.  Grounds Assigned for Defendants' Objections:

The grounds are set forth in the objections.

### D.  Bases for Compelling Production as to Requests No. 1 and 2:

#### 1.  Data Related to All Content Files.

Defendants are improperly attempting to limit their production of Content Reference Data and User Data to a small set of content files, the 175 works identified by name in Exhibit A to the Complaint. Such incomplete data is meaningless.

First, plaintiffs would not be able to conduct statistical analyses of the level of infringement on Hotfile. The backbone of the statistical analysis is the selection of a representative sample of content files such that an expert statistician would be able reliably to

6

draw conclusions about the entire universe of content files distributed by Hotfile. Plaintiffs require the requested data to enable their statistics expert to select the sample of all content files. Data limited to 175 works that plaintiffs already know are infringing would not permit any meaningful statistical analysis.

Second, plaintiffs would be denied access to the best evidence of the extent of infringement of their copyrighted works. When plaintiffs filed this action they alleged that defendants have "unlawfully distributed **thousands** of plaintiffs' copyrighted works, **including** those on Exhibit A." *E.g.*, Compl. ¶ 47 (emphasis added). The 175 motion pictures and television programs identified by name in Exhibit A to the Complaint were merely illustrative, with the full extent of defendants' infringement to be revealed through the discovery process – since only defendants are in possession of that data. That is the common (and, as far as plaintiffs are aware, uniform) practice in online copyright cases involving voluminous numbers of copyrighted works. As was the case in *YouTube*, *MP3tunes*, *Lime Group*, and other cases, after production of the requested data, plaintiffs would identify for the Court and defendants a fixed set of copyrighted works at issue in this case. Defendants are trying to unilaterally limit the number of infringed works in the case by withholding data revealing infringement.[1]

Through multiple conferences, defendants' principal objections to producing the requested data appear to be relevance, user privacy and burden. Those objections are meritless.

**Relevance.** Defendants' relevance objection is baseless. The Content Reference Data provides critical information about the content files that Hotfile distributes – including file names, file sizes, and number of downloads. As noted above, the User Data will show that specific U.S. users have actually downloaded those files. Plaintiffs have identified two separate and independent issues for which the full set of Content Reference Data and User Data is directly relevant and necessary: the statistical analysis to demonstrate that the overwhelming use of Hotfile is for copyright infringement, and the direct infringement analysis. Both go to the heart of this litigation.

---

[1] Defendants argue that they need a "fixed target" of works in suit. But plaintiffs are not denying them that. As in other cases of this nature, by an agreed date after production of the relevant discovery, plaintiffs will provide defendants with a list of the works for which plaintiffs contend defendants are liable. Defendants do not want a fixed target, they want to limit the size of the target. But there is no authority or basis for doing so.

Statistical Analyses. Courts have considered the extent that a service is used for infringement -- shown by statistical analyses -- to be a key fact in determining liability for infringement. This evidence is directly relevant to whether the service's business model is driven by infringement, which provides evidence of a defendant's object to foster the infringement. *E.g.*, *Grokster,* 545 U.S. at 939-40 (fact that service is overwhelmingly used for copyright infringement and that its business model depends on this infringement gives rise to inference that the defendant intended to foster infringement); *id.* at 922-23 (relying on statistical analysis showing that nearly 90% of files available for download are copyrighted works); *Usenet II,* 633 F. Supp. 2d at 151-52 (relying on statistical evidence in finding inducement liability); *Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW), 2011 WL 1742029, at *14-*15, *19 (S.D.N.Y. May 2, 2011) (relying on evidence that 98.8% of files downloaded were infringing and finding inducement liability in part based on "high-volume use of LimeWire, most of which is infringing"); *see also Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578 SVW (JCx), 2009 WL 6355911, at *8 n.15 (C.D. Cal. Dec. 21, 2009) ("courts dealing with similar issues [of online infringement] have relied on similar studies based on statistical samples of the relevant products or services"). That a defendant's business is driven by high volumes of infringement is also directly relevant to the financial benefit prong of vicarious infringement. *See Usenet II*, 633 F. Supp. 2d at 156-57. Courts also rely on this type of statistical analysis in determining whether a defendant had knowledge of infringing activity or turned a blind eye towards that activity. *See Fung*, 2009 WL 6355911, at *16-*17. Indeed, the overall percentage of infringing use is a key factor in analyzing whether a service like defendants' is intended for infringement. *See Metro Goldwyn Mayer Studios, Inc. v. Grokster* ("*Grokster II*"), 454 F. Supp. 2d 966, 985 (C.D. Cal. 2006) (where statistical analysis revealed high infringement levels, court found it "more likely that [defendant] condoned the illegal use"). Finally, to the extent that defendants intend to raise the defense that Hotfile is "capable of commercially significant noninfringing uses," *Sony Corp. Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984), which they have indicated they do, this evidence will be relevant to rebut defendants' defense.

Direct Infringement. The Content Reference and User Data will show what content Hotfile users have actually downloaded. Plaintiffs can use this data to identify actionable infringements of their copyrighted works and then request specific downloaded content files to confirm they are infringing. This evidence of actual downloads will show direct infringement of

8

plaintiffs' copyrighted works, and is therefore plainly relevant to plaintiffs' direct and secondary infringement claims. *E.g.*, *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 440 (S.D.N.Y. 2009) ("The Usage Data, in combination with the [Content] Files . . . provide[] evidence of direct copyright infringement."); *Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093 FMCJCX, 2007 WL 2080419, at *4 (C.D. Cal. May 29, 2007) (same); *Columbia Pictures v. Fung*, No. CV 06-5578 SVW (JCx), slip op. at 10 (C.D. Cal. June 8, 2007) (attached as Ex. E) (same). The requested data is unquestionably the best source of direct infringement evidence. Some courts have ordered defendants to reconfigure their computer servers to capture such download records, even when not otherwise created in the normal course of business, precisely because this evidence is "a link in the causal chain" to showing direct infringement on which defendants' secondary liability is premised. *Columbia Pictures Indus., v. Bunnell* ("*Bunnell II*"), 245 F.R.D. 443, 448 (C.D. Cal. 2007).

**Privacy.** Defendants' privacy objections as to the Content Reference Data and User Data are equally baseless. For Content Reference Data and User Data, plaintiffs have not objected to redaction of data fields that personally identify Hotfile's users. For users' Internet Protocol ("IP") addresses, plaintiffs have made clear from the outset that defendants could mask a portion of each IP address (known as the "last octet"), preserving user anonymity while enabling plaintiffs to identify the country of the user. The parties have discussed this issue and agreed in the Protective Order (¶ 13) on the specific manner of redacting IP addresses to mask identity but preserve the ability to determine user location. Defendants cannot rest on a privacy objection.

**Burden.** Likewise, defendants cannot justify their refusal to produce the Content Reference Data and User Data on the basis of undue burden. There is no question that defendants have all of the requested data in readily accessible databases, and that they use much of this data in the normal course of operating Hotfile. The database software defendants use (MySQL) would permit defendants to extract the Content Reference Data and User Data through straightforward database queries. Declaration of Ian Foster, dated May 31, 2011, submitted herewith ("Foster Decl.") ¶ 19.

While the volume of data would not be trivial, it also would not be particularly large or burdensome to copy and produce, especially for a company that is in the business of storing and distributing enormous amounts of data. Foster Decl. ¶¶ 20-22. Despite plaintiffs' requests, defendants refused to provide information as to the size of the requested data. Pozza Decl. ¶ 3.

Nevertheless, considering the size of defendants' operation and their user traffic, it appears unlikely that the total volume of the requested Content Reference Data and User Data would be more than one terabyte of data. Foster Decl. ¶¶ 20, 21. To put that into context, a consumer-grade one terabyte external hard drive can be purchased at Best Buy for less than $150, and copying a terabyte of data would likely take no more than a few hours to complete using consumer-grade equipment (Hotfile, of course, has commercial grade equipment). *Id.* ¶ 20. To put it further into context, conservatively estimating, Hotfile likely copies and distributes more than 6 terabytes of data every day. *Id.* ¶ 22.

Tellingly, defendants are prepared to undertake a *far greater burden* to produce *less data* than it would take to produce the full set of data requested. Defendants say they will produce data for any file that appears to correspond to one of the 175 works identified by name in the Complaint. Thus, rather than a simple database query that would extract all the data plaintiffs have requested, defendants apparently will run key word searches to identify all files corresponding to one of those 175 works, and then engage in a separate process to extract the requested Content Reference Data for those files. For the User Data, defendants would then need to search their user databases to identify only those users who had uploaded or downloaded one of those files and then extract the requested User Data for each of those users. Defendants' willingness to do more work to give plaintiffs less data suggests that burden is not really driving defendants' refusal to produce the requested data. Particularly given the importance of this data to so many central issues in the case, defendants' claims about burden must be rejected.

### 2. Data Related to "Status" of Files on Hotfile.

As a component of the Content Reference Data requested, plaintiffs seek the production of particular fields of data concerning the "activity status" of content files on the Hotfile website – *e.g.*, data indicating the reasons for blocking or disabling of content files (Request No. 1(m)(ii)-(iii)). Defendants refuse to produce such data (even for the 175 works identified in the Complaint by name).

Defendants object to producing "status" data principally on the basis of relevance and burden. For the reason stated above, there is no undue burden in producing the fields of data relating to file status. Indeed, the marginal burden of including these fields is nominal.

The status data also is unquestionably relevant to defendants' anticipated defense under the Digital Millennium Copyright Act ("DMCA"), which requires defendants to show that they

10

acted expeditiously to disable access to infringing material for which they received a DMCA notice from a copyright holder. 17 U.S.C. § 512(c)(1)(C). Defendants have received countless DMCA notices from plaintiffs and other copyright owners. Plaintiffs cannot definitively confirm that defendants removed files for infringement without the requested data. The status data is also relevant to whether defendants complied with the DMCA precondition to disable access to files based on awareness of facts and circumstances from which infringing activity was apparent, regardless of whether they received a specific notice. *See Fung*, 2009 WL 6455911, at *17; 17 U.S.C. § 512(c)(1)(A). Moreover, the DMCA requires that a service provider "reasonably implement" a policy to terminate repeat infringers, 17 U.S.C. § 512(i)(1)(A), in order to deal with users who repeatedly upload or download infringing content. By analyzing the files defendants have disabled for copyright infringement, plaintiffs would be able to trace those files to the users who uploaded or downloaded them. To the extent that analysis shows (as expected) that defendants took no action against users who were repeatedly uploading and downloading content defendants disabled as infringing, defendants would be disqualified from DMCA safe harbor. *In re Aimster Copyright Litigation*, 334 F.3d 643, 655 (7th Cir. 2003); *Perfect 10 v. CCBill*, 488 F.3d 1102, 1109, 1111 (9th Cir. 2007); *Perfect 10 v. Cybernet Ventures*, 213 F. Supp. 2d 1146, 1178 (C.D. Cal. 2002); *cf. IO Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1143 (N.D. Cal. 2008) (satisfied repeat infringer provision because terminated users upon a second offense); *Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 527-28 (S.D.N.Y. 2010) (same).

The requested "status" data would also show whether and to what extent defendants have the ability to block content for any reason of defendants' choosing. That constitutes evidence of the extent to which defendants have the power to stop or limit infringement, one of the required elements of vicarious liability, *e.g., Usenet II*, 633 F. Supp. 2d at 157, and a factor relevant to defendants' DMCA defense, which also requires an inquiry into defendant's right and ability to control the infringement, 17 U.S.C. § 512(c)(1)(B). *See, e.g., Usenet II*, 633 F. Supp. 2d at 157 (defendants' ability to restrict files containing pornography deemed evidence of defendants' ability to limit infringement). The "status" data is also relevant to whether defendants had the capability to mitigate infringement by selectively removing certain content, which is relevant to defendants' inducement liability. *See Lime Group*, 2011 WL 1742029, at *20 (ability to selectively filter files relevant to defendants' failure to mitigate infringing activities).

11

### 3.   Geographic Location Data of Hotfile Users.

Plaintiffs have requested certain data regarding the geographic location of users, which defendants have objected to producing (even for the 175 works named in the Complaint). In particular, plaintiffs seek two types of location data in Request Nos. 1(j) and 2: the IP addresses of users who download files from the Hotfile website, from which the location of the user could be identified, Foster Decl. ¶ 21; and, where available, the geographic locations reported by Hotfile users upon registration.

While the geographic location of uploading or downloading users should not be an issue in this case (because the Hotfile servers and all the infringing content are physically in the United States), defendants have nonetheless indicated they intend to challenge any claimed infringement unless the uploading or downloading user is located in the United States. The requested data will enable the plaintiffs to identify the geographic location of those users. *See, e.g., Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 634 (S.D.N.Y. 2000) (infringing acts that take place within the United States, even where some of the infringement occurs abroad, are actionable under U.S. copyright laws); *Fung*, 2009 WL 6455911, at *8 (defendants acting abroad may be secondarily liable for infringement occurring within the United States). The location data is plainly relevant to an issue defendants have injected into the litigation and should be produced.

## II.   AFFILIATE DATA SHOULD BE PRODUCED.

Plaintiffs have sought key data about Hotfile's Affiliates, the individuals and entities paid for uploading content to Hotfile, and the website operators Hotfile pays to promote links to that content. Affiliates play a critical role in the use of Hotfile for infringement. Defendants have sought to limit discovery into Affiliates in multiple ways, each of which must be rejected.

### A.   Plaintiffs' Requests for Production and Interrogatory:

Plaintiffs' Request for Production No. 3:

"[A]ll Affiliate Data," which was defined as "all electronic data reflecting information about the persons or entities to which Hotfile makes payments, directly or indirectly, as part of any of its 'Affiliate' programs, including amounts and dates of payments; the URLs of websites registered by Hotfile users under Hotfile's referral program for site owners; the amounts of traffic from such websites; the number of downloads by users arriving from such websites; the numbers of Hotfile Premium subscriptions resulting from traffic from such websites; formulas, algorithms, or other methods used to calculate those payments; and any data used to calculate the amounts of such payment or determine their proper recipients." Pl. RFP, Def. 19.

(Plaintiffs' limited their request for Affiliate Data allowing defendants to limit their production in the first instance to "individually identifying information" for only "the top 500

12

users and/or websites that have received the greatest amounts of payments from Defendants." *Id.*
Def. 22.)

Plaintiffs' Interrogatory No. 9:

"Identify the 500 participants in the Hotfile 'Affiliate' programs to whom any Defendant
or Hotfile Entity has remitted, directly or indirectly, the largest cumulative payments during the
history of Hotfile, and the cumulative amounts of such payments." Plaintiffs' First Set of
Interrogatories ("Pl. Interrogs.") No. 9.

## B.   Defendants' Objections to Plaintiffs' Discovery:

Defendants' Objections to Plaintiffs' Request for Production No. 3:

Hotfile incorporates by reference its general objections to this request for
production of documents. Hotfile further objects to this request as overbroad, unduly
burdensome, and not reasonably calculated to lead to the discovery of admissible
evidence insofar as it seeks "all electronic data" reflecting the information about Hotfile
users who participate in Hotfile's Affiliate program without any limitation whatsoever.
This request purports to cover anyone who has ever participated in Hotfile's affiliate
program, many or most of whom have no relationship to the two claims of copyright
infringement set forth in the Complaint and/or the approximately 150 titles identified in
Exhibit A to the Complaint as to which infringement is claimed. Hotfile further objects
to this request as overbroad and unduly burdensome to the extent that it seeks information
pertaining to "Hotfile users" as that term is defined in the Definitions and Instructions.
Plaintiffs' definition includes every internet user who has ever accessed the Hotfile
website. Hotfile further objects to this request to the extent that it demands that Hotfile
produce documents that would require Hotfile to violate United States or European
privacy laws by requesting personal and/or financial information about Hotfile users.
Hotfile further objects to this request to the extent it seeks documents not in the
possession, custody, or control of Hotfile and insofar as it would require Hotfile to create
documents that do not presently exist.

Subject to the foregoing general and specific objections, Hotfile will produce non-
privileged, responsive data in its possession, custody, or control if it exists in relation to
Hotfile affiliates using IP addresses in the United States, such data to include: URLs; IP
addresses redacted to protect individual confidentiality and privacy; traffic from such
URLs and resulting number of downloads, if such information exists; the number of
premium subscriptions resulting from traffic from such URLs; documents sufficient to
show the method for calculating payments to affiliates; and documents sufficient to show
the top cumulative payments by user ID to Hotfile's top 500 users worldwide, to the
extent that such data are located through a reasonable and diligent search. Hotfile will
also produce documents relating to communications between Hotfile and any Hotfile
affiliate, to the extent that such documents are located through a reasonable and diligent
search.

Defendants' Objections to Plaintiffs' Interrogatory No. 9:

Hotfile incorporates by reference its general objections to this interrogatory.
Hotfile further objects to this interrogatory as overbroad and unduly burdensome to the
extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined

13

in the Definitions and Instructions. As currently defined, that term would include any entity, business venture, or organization subject to any Defendant's control (assuming any such entity, business venture, or organization exists), irrespective of whether such entity has any relation or relevance to the present dispute. Hotfile further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, including and insofar as it seeks information not related to the claims of infringement in this litigation. Hotfile further objects to this interrogatory on the grounds that it seeks private, confidential, personal and financial information about Hotfile's users. Hotfile further objects that this interrogatory is compound.

### C.     Grounds Assigned for Defendants' Objections:

The grounds are set forth in the objections.

### D.     Bases for Compelling Production as to Request No. 3 and Interrogatory No. 9:

Defendants have limited their responses to Request No. 3 and Interrogatory No. 9 in four ways. First, raising a privacy objection, defendants have refused to produce identifying information for the 500 most highly paid Affiliates, only agreeing to provide numeric Hotfile user IDs. But the actual identities of these most highly paid Affiliates, many of whom Hotfile paid tens of thousands of dollars, are critical. *See* Pozza Ex. G. They are potentially key witnesses (and sources of further discovery) and active collaborators in an infringement enterprise. Additionally, depending upon their relationship to defendants and their participation in Hotfile, they may be the Doe defendants named in the Complaint. The identities of these most highly paid Affiliates are therefore relevant and discoverable. *See United States ex rel. Heater v. Holly Cross Hosp., Inc.,* 510 F. Supp.2d 1027, 1036 (S.D. Fla. 2007) (plaintiffs may conduct discovery to identify Doe defendants). Plaintiffs have narrowed their request here to only the highest paid Affiliates, and should be entitled to learn their identities to take further discovery.

Defendants' "privacy" objection is baseless and cannot override plaintiffs' right to important discovery. Despite repeated requests, defendants refused to identify any specific privacy law on which they are withholding this information. Pozza Decl. ¶ 4. Regardless, defendants cannot claim that these individuals are ordinary users with an expectation of privacy, as Hotfile's Affiliates are essentially business partners who Hotfile pays substantial amounts of money. If there were any doubt, defendants' own Privacy Policy and Affiliates' Terms of Service make clear that defendants reserve the right to, and Affiliates contractually agree that defendants may, disclose their identities in these circumstances. Hotfile's Privacy Policy is explicit:

14

> We may disclose Personal Information and any other information about you to government or law enforcement officials *or private parties* if, in our discretion, we believe it is necessary or appropriate for any of the following reasons: to respond to legal requests (including court orders and subpoenas); to protect the safety, property, or rights of Hotfile, any Hotfile user, or any third party; to prevent or stop any illegal, unethical, or legally actionable activity; or to comply with the law.

Pozza Decl. ¶ 4; Ex. C at 2 (emphasis added). Having made clear that they will disclose Affiliate identities at their discretion, defendants cannot assert "privacy" to withhold crucial discovery.

Moreover, the party withholding documents or information based on privacy laws bears the burden of showing that such laws bar the production of such information. *See United States v. Vetco, Inc.*, 691 F.2d 1281, 1288 (9th Cir. 1981). Defendants have not attempted to do so.[2]

Defendants' other unilateral limitations likewise should be overruled:

- Defendants have limited their production of documents to Affiliates with U.S. IP addresses. There is no basis for that. A non-U.S. Affiliate is just as likely to be a key witness against defendants. *See Fung*, 2009 WL 6355911, at *17 (defendants' extraterritorial activities regarding copyrighted works still probative of knowledge). And, since defendants claim to reside outside the U.S., Affiliates with relationships to defendants (the Doe defendants) likely would be found among the non-U.S. Affiliates.

- Defendants have refused to produce the data related to Affiliates, such as the information used to calculate payments to Affiliates, including the content files that generated the Affiliate's entitlement to payment. Such data is likely to lead to relevant and admissible evidence, as it would allow plaintiffs to better identify witnesses who had uploaded plaintiffs' content, who might have the most pertinent evidence to provide.

- Defendants have limited their production of documents regarding Affiliate payment amounts to the top 500 Affiliates by payment. But the top 500 Affiliates based on total payments from inception of Hotfile would likely exclude very significant Affiliates who have only recently started working with Hotfile. The newest major Affiliates are just as likely (and maybe more likely) to have key evidence against defendants.

---

[2] Although defendants have made unspecified references to foreign privacy laws, Hotfile's servers, and all the data at issue, reside inside the United States, so foreign laws should not apply at all. Moreover, defendants are affirmatively attempting to avail themselves of U.S. laws, including the DMCA which contains a subpoena provision requiring service providers to identify alleged infringers. 17 U.S.C. § 512(h).

15

Defendants should be ordered to respond in full to Request No. 3 and Interrogatory No. 9.

## III.   SOURCE CODE SHOULD BE PRODUCED.

Plaintiffs have requested Hotfile's source code, which provides the instructions by which the Hotfile website operates at a fundamental level. To understand the technical workings of defendants' system, and to demonstrate (over defendants' denials) that defendants incorporated technical features to enhance infringement and readily could have implemented technical measures to prevent or mitigate infringement, the Hotfile source code is not only relevant, it is critical. In almost every comparable case, defendants have produced, or courts have ordered production of, source code. Defendants have no legitimate basis for refusing to produce it.

### A.   Plaintiffs' Requests for Production :

All versions of the source code for the Hotfile Website as it now exists or has ever existed.

### B.   Defendants' Objections to Plaintiffs' Request for Production:

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that is seeks all source code for the Hotfile Website, without any limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks all versions of the source code, regardless of whether such source code is from time periods relevant to the present litigation. This is not a patent litigation. Hotfile further objects that this request seeks Hotfile's trade secrets (i.e., it's source code), which are confidential, proprietary and commercially sensitive. The details of every line that ever existed of Hotfile's most closely-held trade secrets are not relevant or properly subject to discovery here. Demanding that Hotfile produce every line of code ever written for Hotfile is improper and abusive, and on this basis Hotfile objects.

### C.   Grounds Assigned for Defendants' Objections:

The grounds are set forth in the objections.

### D.   Bases for Compelling Production as to Request No. 16:

Defendants assert three principal objections – confidentiality, relevance and burden. None provides any justification for their refusal to produce source code.

Confidentiality. Defendants object to production on the grounds that source code is a trade secret. First, the parties have addressed this issue through a protective order. The parties engaged in extended negotiations over a stipulated protective order, which the Court has now

ordered. At defendants' insistence, that Protective Order specifically addresses the production of source code and provides heightened confidentiality and security measures to protect the code. Thus, under the Protective Order, discovery material may be designated RESTRICTED CONFIDENTIAL-SOURCE CODE, thereby subjecting it to restrictions above even HIGHLY CONFIDENTIAL material, including, among others, (i) limiting source code access to designated outside counsel and disclosed experts, PO ¶ 12(a), (c), (ii) requiring the use of encrypted hard drives, PO ¶ 12(b), (iii) strictly limiting the number of copies that can be made, PO ¶ 12((a), and (iv) requiring a log of every time the source code is accessed, PO ¶ 12(e). These are extraordinary protections, particularly since plaintiffs are not competitors of defendants and have no business use for the Hotfile source code. *See also* Foster Decl. ¶¶ 14-16 (Hotfile source code unlikely to be highly competitively sensitive). Having negotiated for and agreed to specific source code confidentiality provisions, defendants cannot now credibly argue confidentiality as a basis for refusing to produce the code.

Additionally, the claim that source code is a trade secret not a sufficient basis for withholding that evidence here. Courts regularly order production of source code when it is relevant to the requesting party's ability to prove its claim or disprove a defense in the case. *See, e.g., Metavante Corp. v. Emigrant Sav. Bank*, No. 05-CV-1221, 2008 WL 4722336, at *2 (E.D. Wis. Oct. 24, 2008) (relevant to performance of agreement); *In re Facebook PPC Advertising Litig.*, No. C09-03043 JF (HRL), 2011 WL 1324516, at *3 (N.D. Cal. April 6, 2011) (same); *Dynamic Microprocessor Assocs. v EKD Computer Sales*, 919 F. Supp. 101, 105-06 (E.D.N.Y. 1996) (relevant to copyright infringement claim); *Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*, No. 07-351-JJF, 2010 WL 2898288, at *1 (D. Del. July 20, 2010) (relevant to parent infringement claim); *Montgomery v. Entreppid Techs., LLC*, No. 3:06-CV-0056-PMP (VPC), 2008 WL 2277118, at *11-*12 (D. Nev. May 29, 2008) ("Trade secrets do not have 'automatic and complete immunity from disclosure, but [courts] have in each case weighted their claim to privacy against the need for disclosure.'" (quoting Advisory Committee Notice to 1970 Amendments to Rule 26(c)) (brackets in original)); *see also Capitol Records, LLC v. MP3Tunes, LLC*, No. 07 Civ. 9931 (WHP)(FM), May 15, 2008 Order (S.D.N.Y.) (attached as Ex. F) (ordering production of source code in similar online infringement case).

Relevance. Hotfile's source code – the human-readable form of computer software that provides the instructions for Hotfile's operation – will provide the best evidence of how Hotfile

actually operates. Foster Decl. ¶¶ 5-7. As explained by plaintiffs' expert, Dr. Ian Foster, Distinguished Service Professor of Computer Science at the University of Chicago, there is simply no suitable substitute for analyzing the code itself in drawing conclusions about Hotfile's operations and capabilities. *Id.* ¶ 13. The relevance of the Hotfile source code to almost every technology related issue in the case cannot seriously be denied. For example, plaintiffs have alleged (and defendants deny) that defendants have incorporated technical features designed to enhance infringement and frustrate copyright owner enforcement. Compl. ¶ 38. Plaintiffs have alleged that there are readily available technological steps that defendants could have implemented, a claim that defendants deny. *Id.* ¶ 41. As Prof. Foster explains, source code is directly relevant to those allegations. Foster Decl. ¶¶ 9-11. Plaintiffs also will argue that defendants readily could have, but failed to, identify and terminate repeat infringers, as required under the DMCA. Defendants, no doubt, will deny this. The source code is directly relevant to each of those issue and many others, as it allows for a precise understanding of Hotfile's features and may show the design choices that defendants have made. *Id.* ¶¶ 9, 12. Source code provides scientific facts about Hotfile's operation, not opinion or conjecture. *Id.* ¶¶ 8, 13.

Not surprisingly, courts in online copyright infringement cases routinely rely on evidence of the functionalities of the defendant's service uncovered in or supported by source code in assessing liability. *See, e.g.*, *Lime Group*, 2011 WL 1742029, at *19-*20 (relying on source code in finding that that failure to implement automatic filtering was a "design choice"); *Fung*, 2009 WL 6355911, at *14 (relying on source code to explain how defendants implemented technical features to promote infringement); *Usenet II*, 633 F. Supp. 2d at 148, 153 (relying on source code equivalent in finding that defendants took "active measures" to increase infringement and had tools to block users). Ultimately, defendants are withholding the source code because it is the best and most direct evidence of facts supporting plaintiffs' claims.

Burden. Defendants' burden objection is baseless. Although defendants have refused to disclose the volume of source code or the version control software they use to maintain the source code and all its versions (which are necessary to understand changes made ), as a general matter, source code can be very easily copied and produced. Foster Decl. ¶ 17; Pozza Decl. ¶ 5.

## IV.   INFORMATION REGARDING REVENUES SHOULD BE PRODUCED.

Plaintiffs have requested certain categories of defendants' financial information relevant to both liability determinations and damages. As plaintiffs have proposed a procedure that will

enable full damages discovery to be postponed until after a liability finding as part of the Joint Scheduling Conference Report, Dkt. # 54, filed April 15, 2011, plaintiffs focus here on a relatively narrow set of financial information relevant to liability:  aggregate revenues per month related to the operation of Hotfile.  Defendants will not even produce this limited information in the form of an interrogatory response or documents sufficient to show such information.

### A.    Plaintiffs' Request for Production and Interrogatory:

Plaintiffs' Request for Production No. 15:

All documents pertaining to each Defendant's and Hotfile Entity's financial condition, including: ….

b) Income for each month from the launch of the Hotfile Website through the present;

Plaintiffs' Interrogatory No. 6:

State the gross revenues, net revenues, and profits received by each Hotfile Entity since January 1, 2007.

### B.    Defendants' Objections to Plaintiffs' Request for Production:

Defendants' Objections to Plaintiffs' Request for Production No. 15:

Hotfile incorporates by reference its general objections to this request for production of documents.  Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that is seeks virtually all of Hotfile's financial data, without any limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/or the approximately 150 titles as to which infringement is claimed in the Complaint.  Hotfile further objects to this request on the grounds that it seeks financial information that is private, personal, confidential and commercially sensitive.  Hotfile further objects to this request as overbroad and unduly burdensome to the extent it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions.  Hotfile further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation.  Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks documents from the launch of the Hotfile Website through the present.

Defendants' Objections to Plaintiffs' Interrogatory No. 6:

Hotfile incorporates by reference it general objections to this interrogatory.  Hotfile further objects to this interrogatory as overbroad and unduly burdensome to the extent it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions.  As currently defined, that term would include any entity, business venture, or organization subject to Defendant's control (assuming any such entity, business venture or organization exists), irrespective of whether such entity has any relation or relevance to the

present dispute. Hotfile further objects to this interrogatory on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation and insofar as it seeks information about revenues or profits that are not related to the claims of infringement in this litigation. Hotfile further objects to the interrogatory on the grounds that it seeks private and/or confidential financial information.

     **C.**     <u>**Grounds Assigned for Defendants' Objections:**</u>

The grounds are set forth in the objections.

     **D.**     <u>**Bases for Compelling Production as to Request No. 15 and Interrogatory No. 9:**</u>

Defendants have no basis to withhold documents showing aggregate revenues received related to Hotfile, which are undeniably relevant. This information will establish that defendants financially benefited from infringing activity, which is directly relevant both to establishing vicarious liability and to defendants' DMCA defense. *See, e.g.*, *Grokster*, 545 U.S. at 930 (one "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it"); *Fung*, 2009 WL 635591, at *16 & n.27 (defendants not entitled to DMCA safe harbor where they financially benefitted from infringing conduct). Moreover, this information is directly relevant to whether defendants' business model is based on generating substantial profits by providing access to infringing content, which the Supreme Court has held to be a principal factor supporting inducement liability. *Grokster*, 545 U.S. at 940; Compl. ¶¶ 24-27. Plainly a defendant that earns $5,000,000 a month from an infringement-driven business has a very different motivation to foster infringement than a defendant earning $500 a month. Plaintiffs have reason to believe that defendants fall closer to the former than the latter and are entitled to the limited high level revenue data requested to demonstrate defendants' powerful incentive to promote infringement and resist any efforts to mitigate infringement that would cut off that revenue stream.[3] Defendants do not have any justifiable basis for withholding this discovery.

**CONCLUSION**

Plaintiffs' Motion to Compel should be granted.

---

[3] It may be that defendant Hotfile Corp.'s wholly owned subsidiary, Hotfile, Ltd., is the entity receiving the profits from Hotfile, but defendants also to refuse produce financial information for Hotfile, Ltd. There is no basis to do so. Hotfile Corp. controls documents of this wholly owned subsidiary with which defendants collectively operate Hotfile, *see Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, No. 06-20976-CIV, 2007 WL 4557158, at *5 (S.D. Fla. Dec. 21, 2007), and the information is relevant to Hotfile's financial benefit from infringement.

Dated: May 31, 2011

Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 461-6880
Facsimile:  (305) 461-6887

MOTION PICTURE ASSOCIATION
 OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile:  (202) 639-6066

*Attorneys for Plaintiffs*

21

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(a)(3), U.S. District Court for the

Southern District of Florida, counsel for plaintiffs have conferred with counsel for defendants

Hotfile Corp. and Anton Titov in a good faith effort to resolve the issues raised in this Motion

without court action, but have been unable to do so, as described in the accompanying

Declaration of Duane C. Pozza.


Dated:  May 31, 2011                         By: /s/ Karen L. Stetson
                                             Karen L. Stetson

                                             GRAY-ROBINSON, P.A.
                                             Karen L. Stetson (FL Bar No. 742937)
                                             1221 Brickell Avenue
                                             Suite 1600
                                             Miami, FL 33131
                                             Phone: 305-416-6880
                                             Fax: 305-416-6887

MOTION PICTURE ASSOCIATION            JENNER & BLOCK LLP
OF AMERICA, INC.                      Steven B. Fabrizio (Pro Hac Vice)
Karen R. Thorland (Pro Hac Vice)      Duane C. Pozza (Pro Hac Vice)
15301 Ventura Blvd.                   Luke C. Platzer  (Pro Hac Vice)
Building E                            1099 New York Ave., N.W.
Sherman Oaks, CA  91403               Suite 900
                                      Washington, DC 20001
                                      Phone: 202-639-6000
                                      Fax: 202-639-6066

                                      Attorneys for Plaintiffs