UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

| | |
|---|---|
| DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, COLUMBIA PICTURES INDUSTRIES, INC., and WARNER BROS. ENTERTAINMENT INC., *Plaintiffs*, vs. HOTFILE CORP., ANTON TITOV, and DOES 1-10. *Defendants*. | **PUBLIC REDACTED VERSION** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SPECIAL SCHEDULING ORDER REGARDING THE SAFE HARBOR PROTECTIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT**

In a transparent effort to deny plaintiffs access to discovery that is likely to be highly incriminating, defendants, in their motion for a special scheduling order, ask the Court to decide a motion for summary judgment before the Court has any record on which to base its decision. The Eleventh Circuit has made clear that courts should avoid resolving a summary judgment motion before the party opposing the motion has an adequate opportunity for discovery. Defendants' approach would unfairly prejudice the plaintiffs by forcing them to respond to defendants' claimed defense under the Digital Millennium Copyright Act ("DMCA") without adequate discovery – indeed, with virtually no discovery whatsoever. Defendants' proposal also is certain to result in wasted and duplicative effort for the Court and the parties, rather than lead to judicial economy. An "early" DMCA motion, as defendants propose, cannot streamline any issues in this case, because, based on facts defendants admit, defendants failed to satisfy a

fundamental prerequisite to DMCA eligibility for a substantial period of time at issue in this litigation.

Defendants' motion is misguided in several ways. *First*, the effect of defendants' proposed early summary judgment motion would be to foreclose plaintiffs from obtaining necessary discovery on DMCA issues, including discovery that is already pending and overdue. That in fact appears to be the purpose of defendants' proposal.[1] However, under bedrock Eleventh Circuit law, a premature summary judgment motion in the middle of discovery must be denied. The Court should not grant defendants special leave to make such a motion.

*Second*, defendants' suggestion that discovery can be initially "focused" on DMCA issues, divorced from the underlying copyright issues, makes no sense because the discovery needed on DMCA issues is substantially the same as (if not more extensive than) that needed for the underlying copyright liability issues. The discovery plaintiffs are seeking is equally relevant to both issues. The best course, as discussed below, is to have summary judgment motions on both liability and the DMCA defense at the same time.

*Third*, "early" summary judgment motions on defendants' DMCA defense would only result in wasteful and duplicative discovery and motions practice. Defendants are not eligible for any DMCA defense for the majority of the conduct at issue in this action, and they do not have a colorable argument to the contrary. Defendants have acknowledged in interrogatory responses, including in an amended response served after the filing of the present motion, that they did not comply with the threshold DMCA requirement of properly designating an agent until May of 2010, some *fourteen months* after beginning operation of the Hotfile service. Thus, regardless of the outcome of

---

[1] The necessary discovery is almost exclusively in the hands of defendants and their cohorts, and defendants are systematically denying or delaying plaintiffs' access to it. Although defendants' documents were due over a month ago, to date, defendants have produced almost no discovery. Permitting defendants to proceed with an early motion for summary judgment – in just 35 days – would reward defendants for unreasonably refusing to produce key discovery, *see* Plaintiffs' pending Motion to Compel Discovery, Dkt. # 72, filed May 31, 2011, and would encourage further intransigence.

2

defendants' DMCA motion for post-May 2010 conduct, plaintiffs' copyright infringement claims would proceed unchanged for all conduct occurring before then.

*Finally*, the claimed judicial efficiencies will not be realized by defendants' proposal to hear a summary judgment motion limited to DMCA issues prior to completion of discovery. However, those efficiencies would be achieved by focusing initial discovery and summary judgment motions on all liability issues, *both* plaintiffs' copyright infringement claims and defendants' DMCA defense, as plaintiffs have proposed. *See* Joint Scheduling Conference Report (Dkt. #54) at 6-8. Plaintiffs have proposed to permit both parties to move for summary judgment on liability after appropriate discovery, while deferring discovery on damages-related issues that the parties agree ultimately may be unnecessary. That would achieve the goal of streamlining discovery without prejudicing the plaintiffs.

## I. SUMMARY JUDGMENT MOTIONS ON AN INSUFFICIENT RECORD MUST BE DENIED.

Defendants' proposal to bring an additional summary judgment motion on their DMCA defense early in the case should be rejected out of hand, as deciding such a motion on an incomplete summary judgment record would be inconsistent with Eleventh Circuit law holding that summary judgment decisions should be deferred until adequate discovery is taken. The Eleventh Circuit has held that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Georgia Bank*, 859 F.2d 865, 870 (11th Cir. 1988); *see, also, e.g.*, *Jones v. Columbus,* 120 F.3d 248, 253 (11th Cir. 1997) (holding that the district court erred by granting summary judgment without ruling on the opposing party's motion to compel discovery); *Dean v. Barber*, 951 F.2d 1210, 1213 (11th Cir. 1992) (same). The party opposing summary judgment has "a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits." *Id*. at 870. Consequently, "[a] premature decision on summary judgment impermissibly deprives the plaintiffs of their right to utilize the discovery process to discover the facts necessary to justify their opposition to the motion." *Vining v. Runyon*, 99 F.3d 1056, 1058 (11th Cir. 1996) (citations omitted). For these reasons, ordinarily "summary judgment is inappropriate when the party opposing the motion has been unable to obtain

responses to his discovery requests." *Snook*, 859 F.2d at 870; *see also Reflectone, Inc. v. Farrand Optical Co., Inc*., 862 F.2d 841, 844 (11th Cir. 1989) (summary judgment may be postponed even without affidavit from opposing party).

Here, defendants have not produced any meaningful part of the discovery that is directly relevant and necessary to adjudicate defendants' DMCA defense.  Defendants' motion glosses over the actual DMCA requirements to obscure this fact.  But any statement of the DMCA issues in dispute reveals the issues on which discovery is needed.  Defendants must satisfy several *independent* requirements in order to demonstrate that they are entitled to DMCA safe harbor.  Factual development through discovery is necessary for each of those requirements.

Eligibility for safe harbor is "not presumptive," *ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 625 (4th Cir. 2001), but rather is available to only service providers that can demonstrate they have satisfied each of multiple, independent requirements set out in the statute.  *See Tur v. YouTube, Inc.*, No. CV-064436-FMC-AJWX, 2007 WL 1893635, at *2-3 (C.D. Cal. June 20, 2007).  The safe harbor at issue here is DMCA Section 512(c), also known as the "hosting" or "storage" safe harbor.  17 U.S.C. § 512(c) ("Section 512(c)").  Section 512(c) potentially provides safe harbor for "infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider."  *Id.*  Hotfile is not eligible for safe harbor under Section 512(c) unless it has satisfied the following independent requirements:

1. <u>DMCA Agent.</u>  A service provider is ineligible for safe harbor unless it complies with the "designated agent" provisions of Section 512(c)(2), by designating a DMCA agent on its website and through registration with the Copyright Office.  This is a threshold requirement that applies to all safe harbors.  17 U.S.C. § 512(c)(2).  This eligibility requirement is discussed further in Section III, *infra* at 10.

2. <u>Repeat Infringer Policy.</u>  A service provider is ineligible for safe harbor unless it has "reasonably implemented" a policy that provides for the termination of users who are "repeat infringers."  17 U.S.C. § 512(i)(1)(A).  This also is a threshold requirement that applies to all safe harbors.

4

3. Actual Knowledge of Infringement. A service provider is ineligible for safe harbor if it has actual knowledge that material on its system is infringing. 17 U.S.C. § 512(c)(1)(A)(i). In copyright, like all other areas of law, willful blindness is tantamount to knowledge. *Global-Tech Appliances, Inc. et al., v. SEB S.A.*, 563 U.S. __ (2011); *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003); *Columbia Pictures Indus., Inc. v. Fung*, No. 06-5578 SVW (JCx), 2009 WL 6355911, at *18 (C.D. Cal. Dec. 21, 2009).

4. Knowledge of Facts and Circumstances from which Infringement is Apparent. In the absence of actual knowledge, a service provider is ineligible for safe harbor if it is aware of facts and circumstances from which infringement is apparent. 17 U.S.C. § 512(c)(1)(A)(ii). This is sometimes referred to as "red flag" knowledge. H.R. Rep. 105-551(II) at 57.

5. Financial Benefit from and Right and Ability to Control the Infringement. Paralleling the standard for vicarious copyright liability, a service provider is ineligible for safe harbor if it receives a financial benefit from the infringement while failing to exercise a right and ability to control the infringement. 17 U.S.C. § 512(c)(1)(B).

6. Compliance with DMCA Takedown Notices from Copyright Holders. A service provider is ineligible for safe harbor if it fails to promptly disable access to works alleged to be infringing in a takedown notice. 17 U.S.C. § 512(c)(1)(C); *see also* 17 U.S.C. § 512(c)(3)(A)(ii) ("if multiple copyrighted works at a single online site are covered by a single notification, [only] a representative list of such works" need be provided).

7. Inducement of Infringement. A service provider that has been found to have induced infringement under the standard articulated by the Supreme Court in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) – *i.e.*, a service provider that has acted with the intent to foster infringement – is not eligible for safe harbor protection. *Fung*, 2009 WL 6355911, at *18; *accord Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 142 (S.D.N.Y. 2009) ("if Defendants ... encouraged or fostered such infringement, they would be ineligible for the DMCA's safe harbor provisions"). As the *Fung* court found,

inducement liability and DMCA safe harbor protection are inherently incompatible. *Fung,* 2009 WL 6355911, at *18.[2]

Discovery is likely to show that defendants fall short on substantially all of these DMCA safe harbor prerequisites.

Defendants cite no cases in their motion supporting their procedural proposal to move early for summary judgment on their defense. Defendants argue that other courts have "recognized the benefit" of considering a safe harbor defense before deciding issues of liability. Defs.' Motion at 5. However, in each of the cases cited by defendants, discovery had concluded, and the plaintiffs themselves brought parallel motions for summary judgment on the copyright liability issues. *See Io Group, Inc. v. Veoh Networks*, *Inc.*, 586 F. Supp. 2d 1132, 1135 (N.D. Cal. 2008); *Costar Group. Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 691 (D. Md. 2001); *Corbis Corp. v. Amazon.com*, Inc., 351 F.Supp. 2d 1090, 1093 (W.D. Wa. 2004). Those cases proceeded as plaintiffs have proposed here – with the parties bringing cross-motions on liability and defenses. While the courts in *Veoh* and *Corbis* decided that the DMCA safe harbor applied and therefore decided the DMCA defense first, they did so only *after full discovery*. *See Tur*, 2007 WL 1893635, at *2-3 (denying YouTube's early motion for summary judgment on DMCA defense based on need to develop factual record).

Defendants' reliance, without explanation, on the scheduling order in *Quito Enterprises LLC v. Netflix, Inc.,* is also misplaced. That order in fact supports plaintiffs' position. The defense in that case – patent invalidity – was factually independent from the plaintiffs' infringement allegations. And the plaintiff there sued eleven unrelated defendants, such that eleven separate summary judgment motions directed to infringement might be avoided by an early ruling on the patent's validity. *See* Motion for Special Scheduling Order (Dkt. #133), No. 08-cv-23543 (S.D. Fla.) at 4. Even then, the Court ordered more than four months of discovery on the single issue of validity. The

---

[2] *Cf. Viacom Int'l Inc. v. YouTube Inc.*, 718 F. Supp. 2d 514 (S.D.N.Y. 2010) (finding a service provider entitled to safe harbor notwithstanding that a jury could have found that the service provider liable for inducement of infringement). Both the *Fung* and *YouTube* decisions are currently on appeal in the Ninth and Second Circuits, respectively. *Viacom Int'l Inc. v. YouTube Inc.*, No. 10-3270 (2d Cir.); *Columbia Pictures Indus., Inc. v. Fung*, No. 10-55946 (9th Cir.).

exceptional nature of that order illustrates the principle that early summary judgment motions on a single defense are the rare exception rather than the rule.  This case, where the DMCA defense is closely related to the copyright liability determination, bears no resemblance to *Netflix*.

Ultimately, there is no basis for giving priority to defendants' DMCA defense. Contrary to defendants' characterizations, the DMCA is not a one-sided statute that exists to protect Internet service providers.  Quite the opposite.  Congress very expressly intended the DMCA to *balance* the interests of copyright owners and service providers. S. Rep. No. 105-190, at 20 (1998).  It accomplished this, in part, by creating a series of "safe harbors" from liability – but making DMCA safe harbor available *only* to service providers that can demonstrate that they are completely "innocent" of responsibility for the copyright infringement occurring on or through their services.  *ALS Scan,* 239 F.3d at 625.  Under the DMCA, a service provider demonstrates its innocence by satisfying each of the multiple requirements outlined above.  Plaintiffs are seeking discovery directly relevant to that determination.[3]

Defendants' proposal if adopted would force plaintiffs to respond to defendants' DMCA motion without any meaningful discovery.  All of the discovery necessary to address the copyright and DMCA issues – *e.g.,* defendants' intent to foster infringement, defendants' knowledge of infringement, defendants' right and ability to control the infringement – is in possession of defendants and third parties closely aligned with defendants.  Defendants do not need discovery to file declarations professing to comply with the DMCA.  Plaintiffs, on the other hand, need discovery to rebut those

---

[3] Contrary to defendants' accusation, plaintiffs are not engaged "a war of attrition against their much smaller foe."  Defs.' Mot. at 4.  By all observable indicia, defendants have a larger litigation team than plaintiffs.  Moreover, although defendants have refused to produce any information as to their finances, *see* Plfs.' Mot. to Compel, Dkt. # 72, at 20, documents produced by third-party PayPal show that Hotfile's Internet service provider Lemuria Communications – a company that is wholly owned by defendant Titov – **REDACTED   REDACTED   REDACTED   REDACTED**.  Declaration of Duane C. Pozza ("Pozza Decl.") Ex. A.  As Lemuria appears to exist only to serve Hotfile, that fact alone suggests that defendants' monthly revenues are likely to be a substantial multiple of that amount, **REDACTED   REDACTED   REDACTED**.  Hotfile is one of the largest Internet sites in the world and defendants are litigating with commensurate resources and aggressiveness.

7

declarations.[4]  For this reason alone, defendants' motion should be denied.  *E.g., Snook*, 859 F.2d at 870.

## II. DISCOVERY INTO DMCA AND COPYRIGHT INFRINGEMENT ISSUES OVERLAP ALMOST COMPLETELY.

Defendants' proposal is also flawed because their suggestion that early discovery could be "focused" on DMCA issues divorced from liability issues is altogether unrealistic.  Defs.' Mot. at 3.  The legal issues extensively overlap and cannot be separated.  In fact, to the extent discovery relating to the underlying copyright and DMCA issues do not overlap completely, it is the DMCA issues that require more extensive discovery.

The substantial overlap between those determinations is demonstrated by the chart below, which shows the legal issues involved to determine eligibility under the DMCA and secondary liability under the Copyright Act:

| DMCA Legal Issues | Copyright Liability Legal Issues |
|---|---|
| Designation and registration of DMCA agent. | No corresponding element (discovery required for DMCA issues is more extensive than for infringement claims). |
| Reasonable implementation of repeat infringer policy. | No corresponding element (DMCA discovery is more extensive). |

---

[4] Many of the key third parties in the case are corporate affiliates of defendants (Hotfile, Ltd.); contract employees of defendants (defendant appear to contract out most traditional employee functions); or user and website "Affiliates" of Hotfile.  Defendants are doing what they can to make it difficult for plaintiffs to obtain discovery from these third parties.  For example, notwithstanding that Hotfile, Ltd. is a wholly-owned subsidiary of defendant Hotfile Corp. and is engaged, with Hotfile Corp., in operating the Hotfile website, defendants have refused to produce certain documents about Hotfile, Ltd. and continue to be evasive about producing others, requiring plaintiffs to use international process to obtain discovery from Hotfile, Ltd. in Bulgaria.  Pozza Decl. ¶ 3.  Defendants will not voluntarily produce any of the people who act as their employees, again requiring plaintiffs to go through international discovery channels.  *Id*.  And, defendants refuse to produce the names of their very top Affiliates,  **REDACTED    REDACTED REDACTED**, forcing plaintiffs to file a motion to compel.  *See* Plfs.' Mot. to Compel, Dkt. # 72, at 14-15.

8

| DMCA Legal Issues | Copyright Liability Legal Issues |
|---|---|
| Actual knowledge of infringement.<br><br>Red flag knowledge of infringement. | Contributory copyright infringement contains a parallel knowledge element, requiring proof that defendants had actual or constructive knowledge of the infringement on Hotfile. *Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 845 (11th Cir. 1990). Although the limits of the DMCA's "red flag" knowledge are unsettled, red flag knowledge is a somewhat higher standard than the constructive knowledge required for contributory copyright infringement. Thus, if anything, the discovery required for defendants' DMCA defense would be more extensive than for plaintiffs' contributory infringement claim. |
| Financial benefit attributable to infringement.<br><br>Right and ability to control infringement. | The articulated standard for vicarious copyright infringement is nearly identical to the DMCA elements. *Grokster*, 545 U.S. at 930 ("One infringes … vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it"). Although this issue is unsettled, some district courts have held that the "right and ability to control" element under the DMCA requires "something more" than what is required under the common law vicarious infringement standard. *E.g.*, *Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 213 F. Supp. 2d 1146, 1181 (C.D.Cal.2002). Thus, again, if anything, the discovery required for defendants' DMCA defense would be more extensive than for plaintiffs' vicarious infringement claim. |
| Compliance with takedown notices. | Although not strictly an element of contributory copyright infringement, Hotfile's compliance with (or lack of compliance with) takedown notices would be |

9

| DMCA Legal Issues | Copyright Liability Legal Issues |
|---|---|
|  | equally relevant to plaintiffs' contributory copyright infringement claim, as copyright owner notices demonstrate actionable knowledge on the part of defendants. *E.g., A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 & n.5 (9th Cir. 2001). |
| Inducement of infringement. | The DMCA and copyright issues are identical in that Hotfile's inducement of infringement under *Grokster* makes Hotfile ineligible for Section 512(c) safe harbor. |
|  | Direct infringement.[5] |

As this chart illustrates, there is no material difference between the discovery that plaintiffs would need to oppose defendants' proposed early DMCA motion and the discovery plaintiffs would need to present a summary judgment motion on the underlying copyright claims. Defendants' proposal to divorce the DMCA and copyright issues is simply not practicable. Thus, the case should proceed to cross-motions on summary judgment, at the conclusion of discovery, addressing both liability and the DMCA defense.

### III. DEFENDANTS' PROPOSAL IS CERTAIN TO RESULT IN WASTEFUL AND DUPLICATIVE DISCOVERY AND MOTIONS.

Defendants' motion should be denied for the independent reason that it will not produce the judicial economy promised by defendants – because it cannot resolve substantial portions of the case. Based on facts defendants admit, defendants cannot plausibly claim DMCA safe harbor for substantial periods of time at issue in this action.

---

[5] Proof of direct infringement is the only legal issue relevant to plaintiffs' copyright claims that does not materially overlap with the DMCA issues. However, the direct infringement issue does not require additional discovery, as the databases needed for the direct infringement analysis are the same databases needed for plaintiffs to conduct analyses related to inducement and defendants' financial benefit from infringement (*i.e.*, the same discovery is necessary for the DMCA issues). Moreover, as has been done in multiple prior cases, plaintiffs' case management plan proposes that summary judgment on liability be decided based on a small number of direct infringements. All other instances of direct infringement would be proven in a damages phase, if necessary.

Therefore, defendants' "early" DMCA motion, regardless of how it is decided, cannot dispose of this action, and cannot materially narrow the issues or discovery that ultimately will be necessary. Plaintiffs' copyright claims, and the discovery necessary to prosecute them, will still need to go forward. Defendants' proposal would merely result in two sets of summary judgment motions that are largely duplicative. Inevitably, it also would result in duplicative discovery as the parties re-depose key witnesses and pursue further document discovery to obtain additional important evidence that simply could not be obtained under the unrealistic schedule defendants are proposing.

The DMCA is clear: A service provider is not eligible for any safe harbor unless and until it complies fully with the DMCA's "designated agent" provisions found in Section 512(c)(2). Section 512(c)(2) provides that:

> The limitations on liability established in this subsection apply to a service provider *only if* the service provider has designated an agent to receive notifications of claimed infringement …, *by* making available through its service, including on its website in a location accessible to the public, *and* by providing to the Copyright Office, substantially the following information:
> (A) the name, address, phone number, and electronic mail address of the agent,
> (B) other contact information which the Register of Copyrights may deem appropriate.

17 U.S.C. § 512(c)(2)(emphasis added). Section 512(c)(2) requires that defendants designate an agent *both* by listing the agent on the Hotfile website and by registering that agent with the Copyright Office.

Defendants began operation of Hotfile in February 2009. However, by their own admission, defendants did not comply with this provision until after May 2010, *more than 14 months* later. Defendants admit they did not register an agent with the Copyright Office until December 2009. Pozza Ex. D (Defs.' Amended Supplemental Response to Interrogatory No. 2). And defendants admit, in an amended response served after their filing of the present motion, that they did not identify that agent (or post the agent's name or contact information) on the Hotfile website until sometime in May 2010. *Id*.

Defendants act as if these statutory requirements are just technicalities that do not matter, *see* Defs.' Br. at 6, but Congress could not have been more unequivocal. A service provider is eligible for safe harbor "only if" it complies with Section 512(c)(2).

11

And that was for good reason. That requirement serves the important purpose of ensuring that a service provider holds out a particular individual who can be contacted at a particular physical and email address, who is officially responsible for acting as the service provider's agent for claims of copyright infringement under the DMCA. The legislative history is clear that "[t]he designation, provided to the Register of Copyrights . . . is to contain certain information necessary to communicate with the service provider concerning allegedly infringing material or activity . . . [and] shall have entries for the name, address, telephone number and electronic mail address of an agent designated by service providers." S. Rep. 105-190, at 45 (1998). The Copyright Office has further provided by regulation that even a post office box cannot be used unless it is the only possible address that can be used in the geographic location. 37 C.F.R. § 201.38m (defendants remain in violation of this regulation even today). This requirement prevents service providers from operating in the shadows, hiding behind anonymous, ad hoc email addresses and post office boxes – as Hotfile in fact did – while simultaneously seeking the DMCA's statutory protections.

Every court to decide the issue has held that a failure to properly designate a DMCA agent operates as a complete bar to any DMCA safe harbor. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc*., No. C 07-03952 JW, 2010 WL 5598337, at *6 - *7 (N.D. Cal. March 19, 2010) (failure to register an agent with Copyright Office precludes defendants from claiming the protection of the safe harbor provision for the period prior to registering an agent); *Perfect 10, Inc. v. Rapidshare A.G.*, No. 09-CV-2596 H (WMC), at 12-13 (S.D. Cal. May 18, 2010) (Dkt. #71) (attached as Pozza Ex. E) (same); *CoStar Group, Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 698 n.4 (D. Md. 2001), *aff'd* 373 F.3d 544 (4th Cir. 2004) (failure to properly designate an agent precludes defendants from claiming DMCA safe harbor protection for time period prior to compliance); *cf. Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004) (service provider's failure to update its Copyright Office records to provide a current email address for receipt of DMCA notices precluded summary judgment as to service provider's eligibility for DMCA safe harbor during the period of noncompliance). Indeed, in the *Rapidshare* decision, the court specifically rejected the defendant's argument that merely providing some "notice regarding where to send infringement

12

notifications" was enough to satisfy Section 512(c)(2), and held that registration with the Copyright Office was strictly required. *Id*. at 12.[6]

Defendants' failure to comply with the DMCA "designated agent" provisions is not trivial. Nor is the period of time for which defendants cannot claim DMCA safe harbor. Defendants are undoubtedly responsible for many millions of infringements during that 14 month period of time. Defendants' proposal for an "early" DMCA motion, therefore, will not save the Court or the parties any time, resources or cost. It will, instead, multiply the effort needed to bring this action to decision.

## IV.  PLAINTIFFS' PROPOSAL TO STREAMLINE DISCOVERY AND CASE MANAGEMENT IS FAIR TO BOTH SIDES AND WILL PROMOTE JUDICIAL ECONOMY.

Finally, defendants' motion ignores the fact that plaintiffs have proposed a case management plan that would substantially streamline discovery and merits motions without the blatant unfairness of defendants' proposal. Plaintiffs have proposed to have the Court first address issues of liability, encompassing both plaintiffs' claims of copyright infringement and defendants' DMCA defenses, and then (if necessary) address issues related to damages. Plaintiffs' proposed plan addresses all of defendants' stated concerns about avoiding unnecessary discovery. Although defendants recite the "substantial opportunity for judicial efficiencies" that allegedly would be achieved by focusing only on the DMCA issues, Defs.' Mot. at 6, defendants do not identify any discovery that could be avoided *except* the same copyright ownership and damages issues that, under plaintiffs' plan, would be deferred until after a liability decision. *See* Defs.' Mot. at 4.

Plaintiffs have proposed a plan that has been ordered or approved by several courts overseeing comparable online infringement cases. It is a plan that is fair to both

---

[6] The only support that defendants have provided for a contrary interpretation of the Section 512(c)(2) requirements is a citation to an order in *YouTube Inc.*, 718 F. Supp. 2d at 514. In that case, however, the court never addressed the issue. While plaintiffs in that case pointed out, in a footnote in a summary judgment brief, that YouTube did not have a designated agent registered with the Copyright Office for a short period of time when it first launched, the plaintiffs did not emphasize that time period and defendants did not respond to the footnote. Accordingly, the court did not address the issue in its decision. That decision hardly constitutes contrary authority or provides basis for ignoring the plain language of section 512(c)(2) or the other cases strictly applying its requirements.

13

sides and best promotes judicial economy. Defendants rejected it, not because their plan makes more sense, but in order to seek a tactical advantage.

In an Internet copyright infringement case such as this – *i.e.*, against the operator of a service liable for infringement of thousands, or perhaps tens of thousands, of individual copyrighted works owned by plaintiffs – an inordinate amount of discovery and judicial resources can be spent on the issue of damages. Such damages-related issues include providing evidence of copyright ownership, direct infringement, and the amount of damages for each copyrighted work in suit, thousands of times over. In many cases, particularly where both sides intend to move for summary judgment on liability (as they do here), a determination as to liability obviates the need for all of that damages-related effort. Regardless of which way the court rules on the liability issues, the case usually resolves itself through entry of judgment or settlement.

It is therefore not a surprise that most courts overseeing cases like this have approved or ordered a schedule directing that the parties first focus their discovery on issues related to liability, encompassing both the plaintiffs' claims of copyright infringement and the defendants' DMCA defenses. *See, e.g., Columbia Pictures Indus., Inc. v. Bunnell*, 06-cv-01093 FMC-JCx (C.D. Cal.), Dkt # 117 (attached as Pozza Ex. F); *Columbia Pictures Indus., Inc. v. Fung*, No. 06-5578 SVW (JCx) (C.D. Cal.); *Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW) (S.D.N.Y.); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, No. 03-55894 (C.D. Cal.). In deciding the legal issues as to a defendant's liability, it does not matter whether there are 10 or 10,000 copyrighted works in dispute. The liability issues are the same. Thus, courts typically have decided summary judgment on liability based on a handful of works, and deferred to a damages proceeding the issues of ownership and infringement of the thousands of additional works that ultimately might be in suit. To be clear, none of the scheduling orders in these other cases bifurcated liability and damages in the traditional sense of anticipating separate trials on liability and damages issues. Rather, since both sides had indicated an interest in moving for summary judgment on liability issues, the courts recognized the judicial economy in having the parties focus the initial phase of the case on discovery and motions directed to liability. Each of these cases was in fact decided on or before motions for summary judgment. However, if the liability issues had not been

resolved on motions for summary judgment, any necessary damages discovery would have been conducted, and the cases would have proceeded to a single trial on liability and damages issues together.

That is precisely what plaintiffs have proposed for this case – to have the Court first address issues of liability, encompassing both plaintiffs' claims of copyright infringement and defendants' DMCA defenses. Since there is no material discovery that is needed for plaintiffs' copyright claims that is not also needed for defendants' DMCA defense, this would allow both sides to bring cross-motions on all issues that might affect defendants' liability. Discovery and motions (or other proceedings) related to damages would be deferred until after the Court's ruling on liability issues. *See* Joint Scheduling Conference Report (Dkt. #54) at 6-8.

## V.     CONCLUSION

For the foregoing reasons, defendants' motion for a special scheduling order should be denied. Respectfully, the interests of judicial economy and fairness would be best served by the Court ordering the case management schedule proposed by plaintiffs in the Joint Scheduling Conference Report (Dkt. # 54) filed on April 15, 2011.

Dated: June 10, 2011

Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 461-6880
Facsimile:  (305) 461-6887

MOTION PICTURE ASSOCIATION
 OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax:  (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile:  (202) 639-6066

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th Day of June, 2011, I served the following documents on all counsel of record on the attached service list via their email address(es) as set forth on the Court's CM/ECF filing system:

**Plaintiffs' Response in Opposition to Defendants' Motion for Special Scheduling Order Regarding the Safe Harbor Protections of the Digital Millennium Copyright Act**

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this certificate of Service was executed on this date at Washington, D.C.

By: /s/ Karen L. Stetson
Karen L. Stetson

## SERVICE LIST

### Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
### CASE NO. 11-CIV-20427-JORDAN

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*