UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-CIV-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

    *Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

    *Defendants*.

_____/

### DEFENDANTS' REPLY MEMORANDUM IN RESPONSE TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SPECIAL SCHEDULING ORDER REGARDING THE SAFE HARBOR PROTECTIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

I.    **INTRODUCTION**

    The Studios'[1] opposition never mentions the relief requested by Hotfile,[2] which is set out in the motion's first sentence "to permit the parties to depart from the one summary judgment rule under Local Rule 7.1(c)(2)." (May 27, 2011 [D.E. # 70], p.1). Instead the Studios fashion a straw man—that by this motion Hotfile would somehow deprive the Studios of access to discovery and are asking the Court to decide summary judgment on an inadequate record. That is not accurate. The relief sought would not affect the scope of discovery or timing of any decision by the Court. Nor would the Studios in any way be prevented from opposing the summary judgment under Rule 56(d) of the Federal Rules of Civil Procedure if they believe they

---

[1]    The Plaintiffs are five major motion picture studios: Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc. and Warner Bros. Entertainment Inc. (collectively the "Studios").

[2]    Defendants are Hotfile Corporation and Anton Titov (collectively "Hotfile") who operate the startup website hotfile.com.

have not been able to obtain needed discovery.

This motion is not novel; it should not be controversial.  It merely seeks to allow either side to file an early, potentially case-dispositive summary judgment motion on the issue of whether Hotfile is entitled to the safe harbor protection afforded under the Digital Millennium Copyright Act ("DMCA Safe Harbor"), reserving the ability, if necessary, to file one additional summary judgment motion on any issues in the case that remain at or near the end of discovery. That is the only relief sought.  It would promote judicial efficiency by allowing Hotfile (and the Studios if they so choose) to bring the crucial DMCA Safe Harbor issue promptly before the Court for resolution, without burdening the parties with further expensive and time-consuming discovery on other issues.  The real reason for the Studios' opposition is manifest.  They want delay.  The longer they can put off allowing the Court to consider the merits of the DMCA Safe Harbor issue, the more likely their war of attrition tactics will prevail.  By making the defense of this case as costly as possible the Studios hope to exhaust Hotfile's much smaller resources.  The outcome of this case should turn on the merits of the claims and defenses presented—not the disparity in the financial resources of the parties.  Hotfile's motion should be granted.

**II.    FACTUAL BACKGROUND—HOTFILE HAS COMPLIED WITH THE DMCA AND DESERVES THE SAFE HARBOR PROTECTION; THE STUDIOS' RELIANCE ON A TECHNICALITY RAISES AT MOST A LEGAL ISSUE RIPE FOR SUMMARY ADJUDICATION.**

The Studios' opposition argues against the merits of Hotfile's DMCA Safe Harbor defense, asserting "Defendants are not eligible for any DMCA defense for the majority of the conduct at issue in this action."  Opp. at 2.  They explain at some length (pp. 10-13) their plan to rely on statutory "technicalities" (p. 13) to defeat application of Hotfile's defense based on the undisputed facts set forth in Hotfile's response to an interrogatory.  The short answer is that if they are right the Studios should embrace an early summary judgment on the issue as they have no need for further discovery  to respond to Hotfile's motion.  The longer answer is that the Studios' technical arguments should fail for lack of merit; Hotfile has conscientiously and consistently complied with the required DMCA notice and take down procedure.  Because the Studios' Opposition includes their summary judgment argument, to place the issue in equipoise, here is a short preview of the facts relevant to the Safe Harbor issue.

Hotfile is a flexible online file storage and sharing service used by individuals and businesses.  Titov Decl., [D.E. # 30-1] pp. 3, ¶ 5.[3]  Hotfile users can upload any type or size of file onto Hotfile's 700 servers in Dallas, obtain a web link (or "URL") pertaining to those files, and share that link (or not) with family, friends or employees. *Id*.  Hotfile allows secure access to files remotely from any internet-enabled location.  With periodic maintenance, those files can remain securely stored indefinitely, thereby providing backup file storage capacity.  Open source software developers, for example, store and share lengthy program files with online communities. *Id*.  Hotfile was an early and innovative entrant in the growing field of "Cloud" computing, much like Amazon's cloud storage or Apple's recently announced iCloud service.

The hotfile.com website launched in February 2009.  *See* Pozza Decl. Exh. D [D.E. # 77-5] (Defendants' Amended Supplemental Response to Plaintiffs' Interrogatory No. 2, p. 7).  From the beginning it has taken the requisite steps required by the DMCA.  *Id*.  It has maintained in a location available to the public an effective method to receive notices of claimed infringement and/or requests to takedown files. *Id*.  For example, the Studios have attached a Hotfile Interrogatory Response that includes a screen shot of the Hotfile terms of service as it first appeared, this one dated February 23, 2009.  *See* Pozza Decl. [D.E. # 77-5], Ex. A, pp. 11-13.  As shown on that page, Hotfile.com had implemented and communicated to its users a policy that it may, in appropriate circumstances, immediately suspend or terminate an account for, among other things, violation "of copyright laws."  *Id*.  At the bottom of the terms of service there was a link to "report abuse" to initiate Hotfile.com's notice and takedown procedure.  *Id*., at 13.  When someone used the "report abuse" link to report alleged copyright infringement, including during the time period when the website used a contact form entitled "Hotfile:Abuse," an email was forwarded for handling by Hotfile.  *Id*.  at 7.

Within a few months, in April 2009, Hotfile.com posted a policy stating, "Hotfile (www.hotfile.com) is an Online Service Provider under Title II of the Digital Millennium Copyright Act, 17 U.S.C. Section 512 …"  Pozza Decl. [D.E. # 77-5] p. 15.  This document

---

[3]     Previously filed Declaration of Anton Titov in Support of Defendants' Opposition to Plaintiffs' Emergency Motion For Order Preserving Evidence, filed February 28, 2011.  The Court (Judge McAliley) denied the Studios "Emergency" motion on April 19, 2011 [D.E. # 59] ("Defendants describe their operation as an online file storage and sharing service . . . Defendants maintain that millions of files have been uploaded to the website, and that they publish and enforce a policy that the website not be used for copyright infringement." (p.2, n.1)).

"outlined the policy that hotfile.com have introduced in order to implement notice and take down policy as required by DMCA." *Id*. It more explicitly documented Hotfile's already-implemented notice and takedown procedure, specifically citing DMCA requirements. For example, that policy stated "Hotfile.com will follow the procedures provided in the DCMA [sic] to properly enforce rights of copyright holders." *Id*. With respect to a designated agent to be contacted for alleged copyright abuse, Hotfile advised "To exercise your DMCA rights, your Proper DMCA Notice must be sent to Designated Agent of hotfile.com to email: abuse@hotfile.com." Pozza Decl. [D.E. # 77-5] p. 15. Thus, from the first and continuing to the present, email complaints about copyright abuse or takedown requests have been directed to the abuse@hotfile.com mailbox. Takedown notices have been expeditiously processed and Hotfile has promptly disabled or deleted offending files without complaint from copyright owners.

To the contrary, copyright owners including several of these very Studios enthusiastically embraced Hotfile's aggressive copyright policy. In April 2009, when hotfile.com had been in operation only a few months, Plaintiff Warner Bros. directed a request to abuse@hotfile.com for a special "takedown tool" to more quickly remove infringing content "rather than sending an official takedown abuse notice every time URL's are identified." *See* Exhibit A. [4] Hotfile accommodated this request, making available a "special rightsholder account" system in response to Warner's request. *See* Titov Decl. [D.E. #30-1] pp. 3-4, ¶¶ 11-2. This cooperation is exactly what Congress contemplated in adopting the DMCA, where it sought to "preserve[] strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements that take place in the digital networked environment." S. Rep. 105-190, at 20 (1998); H.R. Rep. 105-551(11), at 49 (1998) (emph. added).

By the fall of 2009 an agent of another major movie studio (Paramount Pictures) was taking advantage of the special copyright tool. The agent praised Hotfile's responsiveness to both DMCA takedown requests and in making the SRA copyright tool available. *See* Exhibit B. In an October 2, 2009 email, for example, in addition to saying "Thank you very much," the Paramount Pictures agent made the unsolicited endorsement that "we will inform our clients of

---

[4]     This is a true and correct copy of an email taken from the abuse@hotfile.com email which is hosted on Google. Hotfile is in the process of producing to the Studios a copy of this and all other messages in the "abuse" mailbox, which will document Hotfile's compliance with the DMCA.

**hotfile.com's commitment to copyright compliance** at first opportunity." *Id.* (emph. added). Other, similar testimonials will be provided with the summary judgment motion.

By December 2009, Hotfile was growing in traffic and DMCA sophistication. In addition to continuing to use the "abuse@hotfile.com" email box as its designated DMCA contact point or agent, it formally designated an individual as DMCA agent. Constantin Luchian has acted as a designated DMCA agent for Hotfile since December 8, 2009. Pozza Decl. [D.E. # 77-5] p. 8. His formal designation as DMCA agent was filed with the Copyright Office on December 17, 2009 and was registered as of December 24, 2009. *Id.* Hotfile added Mr. Luchian's name and status as DMCA agent on the Hotfile.com website in early May 2010, at the same time it added and posted a formal "IP Policy." Mr. Luchian has been listed on the website ever since. *Id.* In sum, although Hotfile designated and used the same agent (its abuse mailbox) from the outset of its operation and its notice and takedown procedures in that period were repeatedly praised by the Studios themselves, it did not register an individual with the copyright office until December 2009 and Mr. Luchian's name did not appear on the website until May 2010. This is the alleged technical defect that the Studios argue precludes application of the DMCA safe harbor. The Studios are wrong about this in several respects.

First, the cases have recognized that the designated agent need not be an individual. *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, n.13 (C.D. Cal. 2001) (designating a department via an email address is the most sensible approach to designating an agent as individuals can be away on vacation or change jobs etc.) Hotfile has at all times maintained the abuse@hotfile.com email box to report copyright abuse, and several individuals had access to the messages to ensure a prompt response. Second, as the Studios acknowledge, the court in *Viacom v. You Tube* was presented with precisely this argument (that "YouTube did not have an agent registered with the Copyright Office for a short period"). *See* Opp. 13, at n. 6. The *Viacom* court nevertheless granted summary judgment and applied the DMCA safe harbor for the entire period, a conclusion well-supported by the DMCA.[5] *Viacom*, 718 F.Supp.2d at 529.

---

[5] This holding is consistent with the intent and text of the statute. The intent was to provide content owners with a predictable and reliable method to contact the website about copyright abuse. These Studios and other content owners had no trouble contacting Hotfile.com at abuse@hotfile.com even before Mr. Luchian filed a registration with the copyright office. The statute itself requires only substantial compliance with the registration requirement: "The limitations on liability established in this subsection apply to a service provider only if the

In any event, these arguments on the merits of the safe harbor protection are for another day.  Even if the Studios were correct and Hotfile were not able to benefit from the DMCA Safe Harbor protection for the first few months of its existence, an early summary judgment motion would still potentially resolve the great bulk of the case (leaving only a few months of Hotfile's early existence in dispute and not covered by the DMCA Safe Harbor Immunity), thereby achieving substantial judicial economy and saving the parties substantial amounts of money that will be spent in costly discovery.  By this motion Hotfile merely requests the *opportunity* to bring this pivotal issue to the Court without having to incur potentially ruinous litigation expense over the next year.  There is no justification for delay.  Nor should the Studios want delay if they truly believe their damage claims are not foreclosed by the DMCA safe harbor provisions.

### III.    AN EARLY DMCA SAFE HARBOR SUMMARY JUDGMENT MOTION WILL ACHIEVE JUDICIAL ECONOMY WHILE AVOIDING NEEDLESS EXPENSE.

The Studios and their lawyers are no strangers to complex and expensive copyright infringement.  The DMCA was enacted to shortcut such overly complex copyright litigation.  Congress recognized it "will not serve anyone's interest if the Internet's backbone and infrastructure are sued out of existence for involvement in purportedly aiding copyright infringement."  Nimmer on Copyright § 12B.01[C][1].   Rather than "embark[] upon a wholesale clarification" of "contributory and vicarious liability," but being "sympathetic to the desire of such service providers to see the law clarified in this area," Congress enacted "safe harbors" for certain "common activities of service providers."  (Senate Committee on the Judiciary Report, S.Rep. No. 105-190 (1998), p. 19.)  Instead of subjecting internet service providers to the vicissitudes of secondary copyright liability doctrines, the DMCA provides a set of clear and predictable standards that service providers can abide by and be assured that they will not be liable for copyright damages at all.  The DMCA – at its core – was intended to promote judicial economy in exactly this situation.  The Studios are not permitted to beat every website operator into oblivion before a court examines the claims (and defenses) raised.

---

service provider has designated an agent to receive notifications of claimed infringement described in paragraph (3), by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, ***substantially*** the following information…")  17 U.S.C. § 512(c)(2).

Plaintiffs' motivation in seeking to avoid a motion under the DMCA – the statute directly on point – is undeniably to inflict ruinous costs through litigation, exactly what the DMCA was supposed to prevent.  The Studios have followed here their familiar pattern of needlessly aggressive litigation tactics, bombarding Hotfile with massive discovery requests and a series of discovery motions.  This case started with a regrettable intrusion on Mr. Titov's personal privacy when he was served with the summons and complaint while vacationing in Las Vegas last winter.[6]  Titov Decl., p. 2 ¶ 4.  Almost immediately after filing suit, the Studios filed a lengthy "Emergency" motion for an order seeking preservation of evidence.  The motion was filed before the defendants had engaged lead counsel and was (like this motion) based on a false premise— that Hotfile's DMCA enforcement policy that resulted in the termination of repeat infringers risked spoliation of  evidence.  The Court (Magistrate Judge McAliley) denied the Studios "Emergency" motion on April 19, 2011 [D.E. # 59] ("The proposed preservation order, filed by Plaintiffs, is extremely broad and given the nature of Defendants' computer-based business, that order would almost appear to be a set-up for unintended non-compliance.")

The hardball litigation tactics have continued unabated.  To date, the Studios have served three separate document requests, two sets of interrogatories and subpoenas on at least twelve third-parties.  Three separate subpoenas have been served on the third party PayPal specifically directed to seeking Titov's personal financial information.  (Remarkably, counsel for the Studios have not provided copies of documents produced to them via subpoena, a routinely-extended courtesy).  The Studios point out that Hotfile has engaged experienced counsel and has already been forced to devote substantial resources to this litigation.  But unlike the Studios, Hotfile's resources are not unlimited.  Hotfile cannot survive a war of attrition.

Hotfile's motion for early summary judgment merely seeks to have the Court hear the merits of Hotfile's Safe Harbor arguments now, as opposed to the scenario favored by the Studios of waiting to see if the defendant can survive their litigation onslaught.  This result would be wasteful of the Court's time and resources and grossly unfair to Hotfile.

---

[6]     The Studios and their trade association the Motion Picture Association of America (the MPAA) had apparently been trailing Mr. Titov for some time.  In early January 2011, trial counsel for the Studios received an explicative-laden email from a confidential informant entitled "Subject: Titov," with a tip that he would be in Las Vegas. *See* Exhibit C.  Several weeks later the same source followed up to the Studios' trial counsel: "Ask the MPAA how much they'd be willing to pay for Titov's exact location right now."?  Exhibit D.  In response, trial counsel for the Studios passed on Mr. Titov's Hotel Room number.

**A.     Allowing The Parties The Opportunity To File An Early Summary Judgment Motion Does Not Make The Motion Premature And Does Not Affect the Studios' Discovery Rights.**

Hotfile seeks the opportunity to bring the DMCA Safe Harbor Issue to the Court for consideration via summary judgment.  This motion does not have any effect on the Studios' ability to conduct whatever discovery they choose.  If, despite being on notice of Defendants' request to be allowed to file the early summary judgment motion, the Studios believe that they need more time and/or discovery to respond, they are of course free to ask for it pursuant to Rule 56(d).  Recitations about the claimed overlap of issues between copyright infringement and the safe harbor protection (Opp. pp. 8-10) are beside the point.  The Studios merely need to focus on whatever additional discovery, if any, they believe is needed to respond to the safe harbor issue.  As noted above, their arguments suggest that they already have the information they believe will defeat Hotfile's motion.

**B.     Forcing Hotfile to delay asserting its  Summary Judgment Motion would impose needless additional burdensome discovery on Hotfile and Mr. Titov.**

Plaintiff sued Hotfile based on some 150 "exemplary" movies and television shows.  In discovery, they have so far identified about 1,200 files related to those works they assert were once on hotfile.com before being deleted pursuant the DMCA takedown procedure.[7]  But they have not limited their discovery requests to the issues asserted in the complaint.  Instead they seek access to boundless information about Hotfile and Mr. Titov.  They have demanded:

- All data regarding every file (now over 90 million) that has ever been uploaded to Hotfile without regard to whether the file contains any of the 150 works in suit any copyrighted material of the Studios (or anyone else) or even whether the file has ever been downloaded;

- Unbridled access to "sample" the content of a supposedly random basis of every single file;

- Every line of source code ever written for hotfile.com;

- All financial information for Mr. Titov or Hotfile and all affiliated business even though the Studios have proposed to bifurcate damages discovery;

Hotfile is concurrently filing herewith its opposition to the Studios motion to compel this

---

[7]     The motion incorrectly put this number at 8600 files.

sweeping and unlimited discovery.  Although Hotfile is confident that the Court will not order such boundless discovery, it is clear that the Studios will doggedly pursue discovery from Hotfile and third parties at tremendous burden and cost to Hotfile.

The alternative to not permitting an early separate motion for summary judgment on the DMCA Safe Harbor Immunity will thus result in Hotfile being forced to expend tremendous time and money to respond to discovery and motion practice, which unnecessarily require the Court's time and attention.  As stated above, this would be wasteful, inefficient and patently unfair to Hotfile.  Enough is enough.  If the Studios believe their technical arguments will prevail to block application of the DMCA safe harbor protection, let them conduct any all additional discovery and present the issue for decision by the Court.

**IV.  HOTFILE SEEKS PERMISSION FOR THE PARTIES TO FILE ONE ADDITIONAL MOTION FOR SUMMARY JUDGMENT, IF NECESSARY**

The Studios question why Hotfile cited and reminded the Court of its recent decision in *Quito* (Opp. at 6-7).  But this betrays their misdirection.  The proposed Accelerated Summary Judgment Schedule in *Quito* was premised on the filing of an early, focused motion on a key defense (there patent invalidity).  Here the summary judgment would be directed to the DMCA Safe Harbor protection.

In particular, this streamlined motion(s) will address the elements of the section 512(c) safe harbor defense.  Even if Hotfile were to lose on the section 512 issue, however, it would potentially still have other defenses to the Studios' claims.  "Enactment of section 512 does not bear upon whether a service provider is or is not an infringer . . . Even if a service provider's activities fall outside the limitations on liability specified in the bill, the service provider is not necessarily an infringer; liability in these circumstances would be adjudicated based on the doctrines of direct, vicarious and contributory liability for infringement as they are articulated in the Copyright Act and in the court decisions interpreting and apply that statute.")  (S.Rep. No. 105-190, p. 55.)

Therefore, if this motion is not completely case dispositive, Hotfile seeks the Court's advance permission, in accordance with S.D. Fla. L.R. 7.1.C.2, to file one additional motion for summary judgment addressing all potentially dispositive issues, including non-infringement as the case progresses.  *See* Local Rule 7.1.C.2. (party may not file multiple motions for partial summary judgment without prior permission from the Court).  This relief—the ability to file another summary judgment motion if necessary later—was exactly the relief sought and granted

in the *Quito* scheduling order.

Accordingly, Hotfile respectfully requests that Hotfile and the Studios be permitted to file a further summary judgment motion later on all issues that remain for resolution, as may be appropriate, at the close of discovery or at an earlier time if appropriate, should any of Studios' claims survive a ruling on the DMCA Safe Harbor Immunity.

## V.   CONCLUSION

Hotfile respectfully requests that the Court reject the Studios cynical attempts to further delay and increase expense.   This case should be tried on its merits, not on the economic power of the litigants.  The Court should allow both Hotfile and the Studios to file an early motion for summary judgment on the issue of the Safe Harbor Defense under the DMCA.  In the event this motion[s] does not fully dispose of the case, Hotfile requests that the Court grant relief from Local Rule 7.1(c)(2) and allow each side to file one additional motion for summary judgment at the conclusion of discovery in this case or earlier as appropriate.

DATED:  June 17, 2011                    Respectfully submitted,


By: s/Roderick M. Thompson
    Roderick M. Thompson (admitted *pro hac vice*)
    Andrew Leibnitz (admitted *pro hac vice*)
    Anthony P. Schoenberg (*admitted pro hac vice*)
    Deepak Gupta (admitted *pro hac vice*)
    Janel Thamkul (admitted *pro hac vice*)
    FARELLA BRAUN + MARTEL LLP
    235 Montgomery St.
    San Francisco, CA  94104
    Telephone:  415.954.4400
    Telecopy: 415.954.4480

    And

By: s/Janet T. Munn
    Janet T. Munn, Fla. Bar No. 501281
    Rasco Klock
    283 Catalonia Avenue, Suite 200
    Coral Gables, Fl 33134
    Telephone:  305.476.7101
    Telecopy: 305.476.7102
    Email: jmunn@rascoklock.com
    *Counsel for Defendants Hotfile Corp. and Anton Titov*

10

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2011, I filed the foregoing document with the Clerk of the Court in the conventional manner.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/Janet T. Munn
Janet T. Munn

**GRAY-ROBINSON, P.A.**
Karen L. Stetson, Fla. Bar No.: 742937
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone:  305.416.6880
Fax:     305.416.6887

**JENNER AND BLOCK, LLP**
Steven B. Fabrizio (*Pro Hac Vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice*)
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice*)
Email: lplatzer@jenner.com
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Phone: 202.639.6000
Fax:     202.639.6066

4838-5595-3673, v.  1