UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN


DISNEY ENTERPRISES, INC., TWENTIETH
CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS
LLLP, COLUMBIA PICTURES INDUSTRIES, INC.,
and WARNER BROS. ENTERTAINMENT INC.,

  *Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and DOES 1-10.

  *Defendants.*          /


**MEMORANDUM OF LAW OF DEFENDANTS HOTFILE CORPORATION AND
ANTON TITOV IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION AND INTERROGATORIES**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND .............................................................................. 2

    A.   Hotfile's Operation Of A DMCA-Compliant File-Hosting Service ...................... 2

    B.   Plaintiffs' Motion-By-Ambush ............................................................................. 2

III.    LEGAL ARGUMENT ....................................................................................... 3

    A.   No Legitimate Reason Exists For Plaintiffs To Demand Further "Content
        Reference Data" Or "User Data" Under Requests Nos. 1-2 ................................. 3

        1.   Because Unaccused Works Lack Relevance To Any Claim Or
             Defense In This Action, Plaintiffs Cannot Properly Demand
             Documents Beyond The Accused Files Identified In Their
             Responses To Interrogatory No. 1 .......................................................... 3

        2.   Plaintiffs Cannot Properly Demand Discovery Regarding Files
             Neither Uploaded Nor Downloaded In The United States ....................... 6

        3.   Plaintiffs' Discovery In Support Of The Proposed "Statistical
             Analysis" Cannot Lead To Admissible Evidence ................................... 6

        4.   Hotfile Has Already Agreed To Produce Essentially All Of The
             Documents Demanded In Requests Nos. 1-2 – And Certainly All
             Of The Relevant Information ................................................................... 8

             a.   IP Addresses Represent The Most Definitive Source Of
                  Geographic Location Information For Hotfile's Users And
                  Is The Only Information Reported To Hotfile ............................ 10

             b.   Plaintiffs Erroneously Assert That Hotfile Has Refused To
                  Produce Documents Sufficient To Show The Status Of
                  Files On Hotfile Pursuant To Request No. 1(m)(ii)-(iii) ............. 10

    B.   No Further "Affiliate Data" Should Be Produced Pursuant To Request No.
        3 ........................................................................................................................ 11

    C.   Plaintiffs Have Not Made the Requisite Showing Of Relevance And
        Necessity To Obtain Production Of Source Code ................................................ 14

    D.   Plaintiffs' Request For Earnings information Should Be Denied As
        Earnings Are Not Relevant Or Necessary ........................................................... 17

IV.    CONCLUSION ................................................................................................. 20

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Arista Records LLC v. Usenet.com, Inc.*,
    633 F. Supp. 2d 124 (S.D.N.Y. 2009)..........................................................................7, 11

*Arista Records LLC v. Does 1-16*,
    2009 WL 414060 (N.D.N.Y. Feb. 18, 2009) ...................................................................13

*Arista Records LLC v. Lime Group LLC*,
    2011 WL 1742029 (S.D.N.Y. May 2, 2011) ...............................................................7, 11

*American Standard Inc. v. Humphrey*,
    2007 WL 1186654 (M.D. Fla. Apr. 19, 2007)................................................................14

*Armstrong v. Virgin Records, Ltd.*,
    91 F. Supp. 2d 628 (S.D.N.Y. 2000)................................................................................6

*Beal v. Paramount Pictures Corp.*,
    20 F.3d 454 (11th Cir. 1994) ...........................................................................................3

*Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*,
    2010 WL 2898288 (D. Del. July 20, 2010) ...................................................................16

*Capitol Records, LLC v. MP3Tunes, LLC*,
    No. 07 Civ. 9931 (C.D. Cal. June 8, 2007)....................................................................16

*Chihuly, Inc. v. Kaindl*,
    2006 WL 83462 (W.D. Wash. Jan. 11, 2006)..................................................................5

*Columbia Pictures Indus., Inc. v. Fung*,
    2009 WL 6355911 (C.D. Cal. Dec. 21, 2009) ........................................................ *passim*

*Crispin v. Christian Audigier, Inc.*,
    717 F. Supp. 2d 965 (C.D. Cal. 2010) .............................................................................4

*DeMasi v. Weiss*,
    669 F.2d 114 (3rd Cir. 1982) .........................................................................................17

*Dynamic Microprocessors Assocs. v. EKD Computer Sales*,
    919 F. Supp. 101 (E.D.N.Y. 1996) ................................................................................16

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ........................................................................18

*Elmo Shropshire v. Canning*,
    2011 WL 90136 (N.D. Cal. Jan. 11, 2011) .........................................................6

*Empire of Carolina, Inc. v. Mackle*,
    108 F.R.D. 323 (S.D. Fla. 1985) ................................................................16, 17

*In re Facebook PPC Adver. Litig.*,
    2011 WL 1324516 (N.D. Cal. Apr. 6, 2011) ....................................................16

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
    76 F.3d 259 (9th Cir. 1996) ............................................................................18

*Grand River Enters. Six Nations, LTD v. King*,
    2009 WL 222160 (S.D.N.Y. Jan. 30, 2009) ....................................................15

*Hartley Pen Co. v. U.S. Dist. Court*,
    287 F.2d 324 (9th Cir. 1961) ..........................................................................14

*Johnson by Johnson v. Thompson*,
    971 F.2d 1487 (10th Cir. 1992) ......................................................................18

*Litton Indus. v. Chesapeake & Ohio Ry. Co.*,
    129 F.R.D. 528 (E.D. Wisc. 1990) ............................................................14, 15

*Metavante Corp. v. Emigrant Sav. Bank*,
    2008 WL 4722336 (E.D. Wis. Oct. 24, 2008) ................................................16

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ................................................................................ *passim*

*Micro Motion, Inc. v. Kane Steel Co.*,
    894 F.2d 1318 (Fed Cir. 1990) ..........................................................................5

*Montgomery v. eTreppid Techs., LLC*,
    2008 WL 2277118 (D. Nev. May 29, 2008) ...................................................16

*Perfect 10 v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ....................................................................4, 19

*In re Pharmatrak, Inc.*,
    329 F.3d 9 (1st Cir. 2003) ..................................................................................4

*Religious Tech. Ctr. v. Netcom On-Line Communications Services, Inc.*,
    907 F. Supp. 1368 (N.D. Cal. 1995) ...............................................................................19

*SaleHoo Group, Ltd. v. ABC Co.*,
    722 F. Supp. 2d 1210 (W.D. Wash. 2010) ......................................................................13

*Samsung SDI Co. v. Matsushita Elec. Indus. Co.*,
    2007 WL 4302701 (C.D. Cal. 2007) ...............................................................................5

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*,
    24 F.3d 1088 (9th Cir. 1994) ......................................................................................6, 12

*UMG Recordings, Inc. v. Veoh Networks, Inc.*,
    665 F. Supp. 2d 1099 (C.D.Cal. 2009) ............................................................................2

*Viacom Int'l Inc. v. YouTube Inc.*,
    253 F.R.D. 256 (S.D.N.Y. 2008) ...........................................................................4, 11, 14

## FEDERAL STATUTES

17 U.S.C. § 106 ................................................................................................................3

17 U.S.C. § 512(c) ...............................................................................................2, 11, 19

18 U.S.C. § 2510(12) ......................................................................................................4

18 U.S.C. § 2702(a)(2)...............................................................................................3, 7, 9

18 U.S.C. § 2711(2) ........................................................................................................3

Fed. R. Civ. P. 26(b)(1)...................................................................................................3

## I.      INTRODUCTION

In this copyright litigation against a startup company that is a leading innovator in provision of file-hosting services on the internet (Defendant Hotfile Corporation[1]), Plaintiff movie studios attempt to win by engaging in over-reaching and improper discovery – a tactic excoriated by one leading commentator as "murder by litigation."  *See* Nimmer on Copyright § 12B.01[C][1] ("[It] will not serve anyone's interest if the Internet's backbone and infrastructure are sued out of existence for involvement in purportedly aiding copyright infringement").  In five short demands for documents and two related interrogatories, Plaintiffs seek all data referring to all files hosted by Hotfile ("all Content Reference Data"), all data about Hotfile's users ("all User Data"), all data about Hotfile's business partners ("all Affiliate Data"), every line of source code ever written ("all versions of the source code for the Hotfile Website as it now exists or has ever existed"), and virtually every conceivable piece of financial data available regarding Hotfile or its business partners or its individual founders.[2]

Despite the overbreadth of these requests, Hotfile has agreed to provide much of the information demanded.  However, Hotfile objected to production of information beyond the 175 allegedly-copyrighted works that are in Plaintiffs' Complaint (and corresponding 1,015 web links or "URLs" on Hotfile) on grounds that private and unaccused files can never become part of this case under the Stored Communications Act.  Hotfile also objected to providing its source code, its most sensitive trade secret, and confidential financial information, which has no relevance to Plaintiffs' liability case.  In response, after misstating to Hotfile their intention to continue the meet-and-confer process, Plaintiffs filed this Motion as the first of multiple motions they say they intend to file on the same set of discovery requests.

---

[1] Defendants – including both Hotfile and its founder Anton Titov – are referred to collectively herein as "Hotfile."

[2] Attached as Exhibit A to the Declaration Of Andrew Leibnitz In Support Of Hotfile's Opposition To Plaintiffs' Motion To Compel ("Leibnitz Decl." attached as Exhibit 1 hereto), at 7, 11; *see id.* at 10 (Request No. 15:  "All documents pertaining to each Defendant's and Hotfile Entity's financial condition, including: a) Nature and value of assets; b) Income for each month from the launch of the Hotfile Website through the present; c) Each source of income from the launch of the Hotfile Website through the present; d) Monthly expenses; and e) Any transfers of funds to, from, or among each Defendant or Hotfile entity, including the amount and date of each transfer and identity of all parties to the transaction."); Interrogatory No. 6 (Leibnitz Decl., Ex. B) ("State the gross revenues, net revenues, and profits received by each Hotfile Entity since January 1, 2007").

1

This is not a new tactic employed by Plaintiffs against internet startup companies. Entities related to the instant Plaintiffs have previously lost on the substance of their copyright litigation against technology startup defendants, but succeeded in bankrupting their opponents. *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F.Supp.2d 1099, 1100 (C.D.Cal. 2009). Indeed, this Court has already rejected Plaintiffs' first attempt to set up a victory based on procedural default in the absence of proven substantive merit.  *See* Order Denying Plaintiffs' Emergency Motion For Document Preservation Order at 3 (rejecting Plaintiffs' motion as apparent "set-up for unintentional non-compliance") (Leibnitz Decl., Ex. O).  Plaintiffs' latest attempt to defeat Hotfile through improper discovery should be rejected.

## II.   FACTUAL BACKGROUND

### A.   Hotfile's Operation Of A DMCA-Compliant File-Hosting Service

Hotfile is an online file-hosting service used by businesses and consumers to store electronic files.  The Digital Millennium Copyright Act ("DMCA") provides "safe harbor" protection against copyright liability for internet service providers like Hotfile.  17 U.S.C. § 512(c).  In this Motion, Plaintiffs misleadingly try to lump Hotfile in with peer-to-peer file sharing networks, BitTorrent sites, and other discredited online businesses, citing cases such as *Grokster*, *Lime Group, Fung*, and *Usenet II*.  These cases involved technologies that were ***not*** covered by the DMCA safe harbors and that blatantly encouraged users to search for and download infringing works (primarily MP3 files containing copyrighted music).  However, Plaintiffs admit in their Complaint that Hotfile "does not provide a searchable index of the files available for download from its website."  Compl. ¶ 22.  Hotfile is ***not*** a peer-to-peer network.

### B.   Plaintiffs' Motion-By-Ambush

During the parties' fifth telephonic negotiation regarding discovery on the afternoon of May 27, 2011, Hotfile asked Plaintiffs when they expected to file a motion to compel and whether they anticipated filing more than one motion.  Leibnitz Decl. ¶ 2.  Hotfile asked to ensure that it had time to exchange additional information, and to make clear that it objected to serial motions on single discovery requests in violation of the page limit requirements of the Local Rules.  *Id.*  Plaintiffs refused to answer, but scheduled a further meet-and-confer discussion for the following week.  *Id.*  Nevertheless, ***the morning of the next business day*** – contending that Hotfile had not fully justified its positions – Plaintiffs filed this motion.  *Id.*

III.     **LEGAL ARGUMENT**

    A.     **No Legitimate Reason Exists For Plaintiffs To Demand Further "Content Reference Data" Or "User Data" Under Requests Nos. 1-2**

        1.     **Because Unaccused Works Lack Relevance To Any Claim Or Defense In This Action, Plaintiffs Cannot Properly Demand Documents Beyond The Accused Files Identified In Their Responses To Interrogatory No. 1**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In copyright cases, a claim cannot proceed in the absence of evidence of the actual works accused of infringement. 17 U.S.C. § 106; *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 456 (11th Cir. 1994) Here, as explained further below, the Stored Communications Act ("SCA") prohibits Plaintiffs from obtaining any of the accused works from Hotfile, and requires Plaintiffs to obtain such files directly from Hotfile's users or from publicly-available sources. 18 U.S.C. § 2702(a)(2).[3] Following Plaintiffs' investigation of Hotfile for "well over a year," Compl. ¶ 37, Plaintiffs have identified 1,015 allegedly-infringing files hosted by Hotfile. Plaintiffs' Response To Interrogatory No. 1 (Leibnitz Decl., Ex. C). Because Plaintiffs can only pursue this litigation in relation to files it obtains independently – and thus identifies in response to Hotfile's Interrogatory No. 1 – no persuasive justification exists for permitting discovery regarding millions of other unaccused files.

Under the SCA, "[a] person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service on behalf of . . . a subscriber or customer . . . solely for the purpose of providing storage or computer processing services to such subscriber or customer"). 18 U.S.C. § 2702(a)(2). Hotfile qualifies as a "remote computing service" because it is a "provi[der] to the public of computer storage or processing services." 18 U.S.C. § 2711(2); Compl. ¶ 20-21. The files on its servers qualify as "communications" under the statute's

---

[3] Plaintiffs suggested in meeting-and-conferring that Hotfile did not properly articulate an objection based on the SCA in its written responses to Requests Nos. 1-3. In fact, each response specifically states, "Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws." Leibnitz Decl., Ex. I at 6-10. Once Plaintiffs met-and-conferred about this objection – after precipitously filing this Motion – the parties discussed the SCA objection at length.

definition, which includes "signs, signals, writing, images, sounds, data, or intelligence of any nature." 18 U.S.C. § 2510(12). Hosting of communications on the internet qualifies as "solely for the purpose of providing storage or computer processing" even if users distribute those communications to thousands of other authorized users. *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 990 (C.D. Cal. 2010). There is "no exception for the disclosure of such communications pursuant to civil discovery requests," even where files allegedly support a claim of copyright infringement. *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008). Because the SCA prohibits Hotfile from divulging content files to Plaintiffs – thus limiting Plaintiffs' claims to the files obtained independently (currently numbering 1,015) – the Court should deny irrelevant discovery relating to millions of unaccused files.[4]

Plaintiffs cannot escape responsibility for identifying infringement. Statute "place[s] the burden of policing copyright infringement – ***identifying the potentially infringing material*** and adequately documenting infringement – squarely on owners of the copyright." *Perfect 10 v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) (emphasis added); *see id.* ("We decline to shift the substantial burden [of policing infringement] from the copyright owner to the provider"). Given the nearly-dozen allegations in the Complaint that Hotfile makes copyrighted content "publicly" available, *see* Complaint ¶¶ 4, 23, 26, 28, 32, 40, 41, 44, 49, given that Hotfile-related websites allegedly offer public search functionality "mak[ing] infringing content ***easily*** accessible," *id.* ¶ 22 (emphasis added), and given that Plaintiffs scrutinized Hotfile for "well over a year" prior to suit, *id.* ¶ 37, one might expect Plaintiffs to be able to identify the "vast," "massive," and "staggering" numbers of copyrighted works available through Hotfile. Complaint ¶¶ 1, 6, 28. Instead, Plaintiffs identify 1,015 allegedly-infringing files, amounting to

---

[4] In meet-and-confer discussions, Plaintiffs argued that an exception to the SCA permits Hotfile to divulge contents of communications "with the lawful consent" of its users. 18 U.S.C. § 2702(b)(3). However, Hotfile in not presently aware of any notifications from users consenting to disclosure of their communications under the SCA. While Plaintiffs argue that the alleged public searchability of content on Hotfile evidences consent, the fact that third parties disclose Hotfile content (even if proved) in no way establishes consent by users. Moreover, the burden for demonstrating the availability of the statutory exception rests with Plaintiffs; the SCA nowhere obliges a provider to investigate its own users in hopes of disclosing their communications to likely plaintiffs against them. *In re Pharmatrak, Inc.* 329 F.3d 9, 19 (1st Cir. 2003). Once Plaintiffs identify a publicly-available link to allegedly-infringing content, Hotfile's Interrogatory No. 1 requires disclosure of that link – demonstrating again the propriety of limiting discovery to accused works only.

well under 0.01% of the files uploaded to Hotfile.  Titov Decl. ¶ 2 attached hereto as Exhibit 2.  Indeed, Plaintiffs explicitly **refuse** to disclose all of the known files hosted by Hotfile that supposedly infringe their copyrights.  Leibnitz Decl., Ex. E at 2.  Here, Plaintiffs cannot justifiably flout their obligation to identify allegedly-infringing material – which remains within their "easy" reach – while simultaneously demanding discovery in this area from Hotfile.

Without identifying any authority by citation, Plaintiffs assert that "*YouTube, MP3tunes, Lime Group*, and other cases" permitted abbreviated discovery prior to final articulation of the works in suit.  Mot. at 7.  Hotfile does not dispute that such precedents exist.  *E.g.*, *Chihuly, Inc. v. Kaindl*, No. C05-1801, 2006 WL 83462, at *3 (W.D. Wash. Jan. 11, 2006) (permitting one month of discovery prior to enumeration of accused works).  However, these were not suits where the SCA presumptively forbade discovery of content files from a defendant.  No reason exists to permit exploratory discovery from a defendant where the plaintiff must independently obtain every accused work and has not done so in over one year.

Intellectual property case law confirms that plaintiffs may not troll for potential wrongdoing through millions of records based on the assertion that less than 0.01% of files infringe.  Courts "routinely" deny discovery beyond the enumerated allegations made by plaintiffs following their infringement investigations.  *Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. CV 05-8493, 2007 WL 4302701, at *3 (C.D. Cal. 2007); *see id.* ("It appears that Defendants seek the Court's permission to engage in a fishing expedition, so that they do not have to conduct an investigation into whether or not additional [infringement exists].  To deny such a request is not contrary to law.").  While Plaintiffs emphasize the allegation in their Complaint that Hotfile has "unlawfully distributed thousands of plaintiffs' copyrighted works, including those on Exhibit A," Mot. at 7 (quoting Complaint ¶ 48), case law makes clear that "discovery [will] not be allowed on an allegation alone."  *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed Cir. 1990).  Though Plaintiffs may hope to independently obtain "vast" numbers of allegedly-infringing files, authority bars discovery based on aspiration.  *See id.* at 1326 ("While the expression 'fishing expedition' has been generally denigrated as a reason for objecting to discovery, in some situations, such as the one at hand, it remains apt.  [Plaintiff] here is unmoored and trolling.").  Plaintiffs' sworn identification of accused works in response to Hotfile's interrogatories is not "meaningless."  Mot. at 4, 6.  Discovery beyond Plaintiffs' accusations should be denied.

     **2.**     **Plaintiffs Cannot Properly Demand Discovery Regarding Files Neither Uploaded Nor Downloaded In The United States**

In their Motion, Plaintiffs assert in passing that "the geographic location of uploading or downloading users should not be an issue in this case because the Hotfile servers and all the infringing content are physically in the United States." Mot. at 12 (citing *Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 634 (S.D.N.Y. 2000); *Columbia Pictures Indus., Inc. v. Fung*, 2009 WL 6355911, at *8 (C.D. Cal. Dec. 21, 2009) (punctuation omitted)). However, neither of Plaintiffs' cited authorities permitted litigation to proceed based on the mere presence of servers in the United States – and indeed both courts made explicit findings of unauthorized distribution to users ***in the United States***. *See Armstrong*, 91 F. Supp. 2d at 630 ("defendant Virgin America . . . manufacture[d] and distribute[d] the album in the United States"); *Fung*, 2009 WL 6355911, at *9 ("Plaintiffs have used IP-address data to locate Defendants' users and show that particular infringing downloads took place in the United States").

Precedent rejects the assertion that plaintiffs may pursue copyright litigation in the United States based merely on the domestic presence of internet servers containing allegedly-infringing content. In *Elmo Shropshire v. Canning*, No. 10-cv-0194-LHK, 2011 WL 90136 (N.D. Cal. Jan. 11, 2011), the original performer of the song "Grandma Got Run Over By A Reindeer" sued a Canadian resident for posting an allegedly-infringing video on YouTube's California servers. *Id.* at *1. In the absence of evidence of any upload or download in the United States, the court dismissed the claim. *Id.* at *3-4 ("Plaintiff's novel argument [based on presence of servers in the United States] appears inconsistent with the robust presumption against the extraterritorial effect of the Copyright Act."). Because "United States copyright law has no extraterritorial application," *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1093 (9th Cir. 1994), Plaintiffs cannot justify discovery regarding files neither uploaded nor downloaded in the United States.

     **3.**     **Plaintiffs' Discovery In Support Of The Proposed "Statistical Analysis" Cannot Lead To Admissible Evidence**

Plaintiffs seek additional information from Hotfile in response to Requests For Production Nos. 1-2 so as to conduct a "statistical analysis to demonstrate that the overwhelming use of Hotfile is for copyright infringement." Mot. at 7. Plaintiffs support the relevance of such a statistical analysis by citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, *Ltd.*, 545 U.S.

913, 932 (2005) ("where an article is good for nothing else but infringement . . . there is no injustice in presuming or imputing an intent to infringe").  Specifically, in *Grokster*, the Supreme Court partly based its reversal of summary judgment of no liability on testimony from a statistician stating that 90% of the works available through defendant's peer-to-peer file-sharing network were infringing.  545 U.S. at 933; Leibnitz Decl., Ex. F.

The statistician in *Grokster* and each of the other cases cited by Plaintiffs relied upon the infringement conclusions of an "anti-piracy" expert.  *E.g.*, Leibnitz Decl., Ex. G at  ¶ 11 (*Arista* Waterman Decl.) ("I relied upon the classifications of Mr. Brad Newberg and his team").  In turn, the anti-piracy expert relied upon review of the files available on defendants' networks.  *Id.*, Ex. H at ¶¶ 3, 5 (*Arista* Newberg Decl.) ("Each file was reviewed manually to attempt to determine the identity of the file and its owner. . . . I personally reviewed each file . . *."); see also id.*, Ex. F at ¶¶ 15, 18-19 (*Grokster* Hausman Decl.).  In every case, the statistical analysis depended upon a review of the contents of accused files representing the entire universe of files made available by the defendants.  *E.g.*, *id.*, Ex. H at  ¶ 7 (*Arista* Newberg Decl.).

Here, the Stored Communications Act ("SCA") prohibits Hotfile from divulging the private contents of its servers – making the proposed statistical analysis impossible.  *See* 18 U.S.C. § 2702(a)(2).  Plaintiffs' cited cases regarding statistical analyses lack any applicability here due to the **_public_** nature of the files involved in those cases.  Mot. at 8 (citing *Grokster*; *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009) ("*Usenet II*"); *Arista Records LLC v. Lime Group LLC,* No. 06-CV-5936, 2011 WL 1742029 (S.D.N.Y. May 2, 2011); and *Columbia Pictures Indus., Inc. v. Fung,* No. CV 06-5578, 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009).  These cases involved "peer-to-peer" file-sharing technologies which definitionally operated on public files.  *Grokster*, 545 U.S. at 919; *Usenet II*, 633 F. Supp. 2d at 130; *Lime Group*, 2011 WL 1742029, at *2; *see Fung*, 2009 WL 6355911, at *1 (describing defendants' technology as mere "evolutionary modification" of peer-to-peer sites).  In contrast, files stored on Hotfile's servers are presumptively private.  *See* Titov Decl. ¶ 3 (every link served by Hotfile is only ever disclosed to by Hotfile to the uploading user and no other).  Although Plaintiffs could proceed with a statistical analysis here upon obtaining access to all of Hotfile's files either publicly or otherwise (if indeed that is possible), Plaintiffs have made clear in interrogatory responses that they will not attempt to do so.  *See* Plaintiffs' Response To Interrogatory No. 1 (Leibnitz Decl., Ex. C) (identifying 1,015 allegedly-infringing files, or less

7

than 0.01% of files hosted by Hotfile, after one-year investigation). Thus, even if every file identified by Plaintiffs infringed a valid copyright, Plaintiffs could never come close to showing that Hotfile "is good for nothing else but infringement" under *Grokster*, and Plaintiffs' infringement statistic would remain distant from the 90% infringement level considered relevant in *Grokster **by several orders of magnitude***. In sum, without access to users' private content on Hotfile's servers – which Plaintiffs cannot obtain from Hotfile under the SCA and which Plaintiffs refuse to obtain through their alleged public channels – Plaintiffs can never produce a relevant statistical analysis under *Grokster* or any other cited authority, making discovery in support of that analysis unjustifiable.

> ### 4. Hotfile Has Already Agreed To Produce Essentially All Of The Documents Demanded In Requests Nos. 1-2 – And Certainly All Of The Relevant Information

By moving in wholesale fashion to compel responses to two requests having over twenty separately-enumerated subparts, Plaintiffs obscure the fact that Hotfile has already agreed to provide all responsive documents for all but a sliver of specific subparts. Comparison of the parties' positions on Request Nos. 1-2 reveals scant distinction. At the outer margins, where the parties actually diverge, Plaintiffs either avoid mentioning that difference in their Motion or fail to make any credible case for the additional discovery, as discussed further below.

|        | **Plaintiffs' Request** | **Hotfile's Response** |
|--------|-------------------------|------------------------|
| **1(a)** | The Hotfile URL [for] each [content] file | The numerals in the Hotfile URL |
| **1(b)** | Any unique Hotfile-assigned identifier | The Hotfile-assigned identifier |
| **1(c)** | [Any uploading user's] IP address, username, and Hotfile user identification number | The Hotfile user identification number and redacted IP address for [uploaders] |
| **1(d)** | The Hotfile user supplied filename | The Hotfile user-supplied filename |
| **1(e)** | The size in bytes of each such file | The size in bytes |
| **1(f)** | The date and time each file was uploaded | The date and time of uploading to Hotfile |
| **1(g)** | The location and/or IP address from which each such file was uploaded to Hotfile | The redacted[5] IP address from which each such file was uploaded to Hotfile |
| **1(h)** | The number of [downloads of] each file | The number of [downloads of] each file |

---

[5] The parties have agreed to permit partial redaction of IP addresses to preserve Hotfile user anonymity. *See* Mot. at 9 ("plaintiffs have not objected to [this] redaction").

|  | **Plaintiffs' Request** | **Hotfile's Response** |
|---|---|---|
| **1(j)** | The location and/or IP address from which each such file was downloaded from Hotfile | user activity records [including IP addresses] redacted [for user] privacy[6] |
| **1(k)** | The dates and time of each download | When each such file was downloaded |
| **1(l)** | Whether each such file was copied. . .  and if so, the Hotfile URL and any unique identifier | Whether each such file is a copy of another file and the unique identifier |
| **1(m)** | i.   Whether the file remains active; | Whether the file remains active |
|  | ii.   Whether the file has been blocked from user access, or from Hotfile's servers; | documents sufficient to show actions taken by Hotfile to take down files[7] |
|  | iii.   For files that do not remain active, the reason why . . . | any takedown notice that may be associated with each such file |
| **2** | information about Hotfile users, whether registered or unregistered, including any user account or activity records, any records of uploads to or downloads from Hotfile by users (including log files), and | user activity records or log files [regardless of whether the user is registered or unregistered] (redacted to protect user confidentiality and privacy but disclosing Hotfile user ID); and |
|  | all records concerning payments made or owed to users under any of Hotfile's "Affiliate" programs | documents sufficient to show the top cumulative payments by user ID to Hotfile's top 500 users worldwide. |

In response to Requests 1(a) and 1(l), the parties diverge in that Hotfile does not agree to produce the entire URL for files stored on Hotfile's servers, as that would provide Plaintiffs with unfettered access to the contents of customers' stored data in violation of the SCA.  18 U.S.C. § 2702(a)(2); *see supra* Part III.A.1; Titov Decl. ¶ 3 (clicking on Hotfile URL for customer file directly opens that file).  Even though Plaintiffs apparently wish in their Proposed Order for the Court to order compliance with all of Request No. 1 in undifferentiated fashion, Plaintiffs make no attempt justify production of URLs in either Request 1(a) or 1(l).  Indeed, Plaintiffs scrupulously avoid requesting content files to avoid violation of the SCA.  *See* Request No. 4 (requesting "[a]ll content files" and then immediately "deferr[ing]" the request).  No basis exists for compelling further responses to Requests 1(a) or 1(l), as Plaintiffs' silence attests.

---

[6] Response To Request No. 2 (Leibnitz Decl., Ex. I) (punctuation omitted).  As Plaintiffs know, Hotfile's user activity records include downloaders' IP addresses.  Defendants' Opposition To Plaintiffs' Emergency Motion For Order Preserving Evidence [Docket No. 30] at 10.

[7] Response To Request No. 5(b) (Leibnitz Decl., Ex. I).  In meeting-and-conferring, Hotfile agreed to produce documents sufficient to show Hotfile's response to any takedown request, and not merely "DMCA" requests.  This information will also show when Hotfile took action.

Similarly, Plaintiffs make no mention of Request 1(c), where Hotfile did not agree to produce user names, but instead offered to produce its user identification numbers to preserve customer confidentiality. Although Plaintiffs' Proposed Order would require compliance with the entirety of Request No. 1, Plaintiffs' own brief acknowledges the impropriety of requiring disclosure of user identities. *See* Mot. at 9 (refusing to contest Hotfile's right to "preserv[e] user anonymity"); *see also infra* Part III.B. Plaintiffs cannot justifiably sweep Request 1(c) into this Motion in an attempt to obtain through silence what they cannot obtain through argument.

> a. <u>IP Addresses Represent The Most Definitive Source Of Geographic Location Information For Hotfile's Users And Is The Only Information Reported To Hotfile</u>

Plaintiffs' Request No. 1(j) calls for "the location and/or IP address from which each [content] file was downloaded from Hotfile," and Request No. 2 subsumes this demand by calling for all "information about Hotfile users." In response, Hotfile has agreed to produce existing user activity records or log files – which include the IP addresses used for each download. Plaintiffs' own expert attests that IP addresses "identify the geographic location of the [user's] computer." Foster Decl. ¶ 21 n.1. Nonetheless, Plaintiffs seek additional geographic information here: the city, state/province/territory, and country disclosed by Hotfile users upon registering for premium accounts.[8] However, users of Hotfile who register for premium accounts only self-report their location to third party payment vendors (such as PayPal), not to Hotfile. Titov Decl. ¶ 4. And "free" users do not self-report any geographic information. *Id.* In contrast, Hotfile records IP addresses for all users any time they download a file. *Id.* Thus, Hotfile's agreement to produce IP addresses not only gives Plaintiffs the only information that Hotfile's users provide to Hotfile regarding geographic location, it also provides the best indication of the location where a file is downloaded, since - as Plaintiffs' own expert attests - it provides the geographic location of the computer itself.

> b. <u>Plaintiffs Erroneously Assert That Hotfile Has Refused To Produce Documents Sufficient To Show The Status Of Files On Hotfile Pursuant To Request No. 1(m)(ii)-(iii)</u>

Plaintiffs assert that Hotfile has refused to produce any documents showing "whether [a] file has been blocked from user access or from Hotfile's servers." Mot. at 10 (regarding Request

---

[8] Plaintiffs do not seek more specific (street-level) address information that could be used to identify individuals. *See* Mot. at 9.

No. 1(m)(ii)).  This is not true.  Hotfile has agreed to produce "documents sufficient to show actions taken by Hotfile to take down files."  Response To Request No. 5(b).  If a file has been blocked, Plaintiffs will have access to that information.[9]

Plaintiffs also assert that Hotfile has refused to produce any documents showing "why [a] file no longer remains active," including "whether the file was the subject of a copyright owner claim or notice."  Mot. at 10 (regarding Request No. 1(m)(iii)).  This too is untrue.  Hotfile has agreed to produce "any takedown notice that may be associated with each file."  Response To Request No. 1(m)(iii) (Leibnitz Decl., Ex. I).  Plaintiffs may thus correlate takedown requests – including requests from copyright holders pursuant to the DMCA – with Hotfile's disablement of files.  This provides Plaintiffs with the information demanded to assess Hotfile's compliance with DMCA takedown requirement, 17 U.S.C. § 512(c)(1)(C), and similarly provides the demanded information supposedly bearing upon Hotfile's right and ability to control activity on its website.  Mot. at 11 (citing 17 U.S.C. § 512(c)(1)(B); *Usenet II*, 633 F. Supp. 2d at 157; *Lime Group*, 2011 WL 1742029, at *20).[10]  Because Plaintiffs proffer no evidence that Hotfile failed to offer documents sufficient in this case to show whether and why any particular file has been blocked, the Court should deny Plaintiffs' Motion.[11]

## B.    No Further "Affiliate Data" Should Be Produced Pursuant To Request No. 3

Any Hotfile user may disclose their payment information (such as PayPal) to Hotfile.  Titov Decl. ¶ 5.  Thereafter, that user receives the right to at least $0.002 for each download of her posted work.  *Id.*  Hotfile describes this user as an "affiliate."  *Id.*

---

[9] Despite Plaintiffs' protestation that they "cannot definitively confirm that defendants removed files for infringement without the requested data," *id.* at 11 – Plaintiffs can *already* confirm that every file identified by Plaintiffs as infringing has been disabled merely by attempting to use any of the web links identified in their Complaint or interrogatory responses.

[10] Plaintiffs assert that defendants in DMCA cases must disable files "regardless of whether they received a specific notice."  Mot. 11 (citing 17 U.S.C. § 512(c)(1)(A)).  Plaintiffs ignore *Viacom*, 718 F. Supp. 2d at 523 ("To let knowledge of a generalized practice of infringement in the industry, or of a proclivity of users to post infringing materials, impose responsibility on service providers to discover which of their users' postings infringe a copyright would contravene the structure and operation of the DMCA.").

[11] Plaintiffs argue that they deserve discovery bearing upon Hotfile's "repeat infringer" policy under the DMCA.  Mot. at 11 (citing 17 U.S.C. § 512(i)(1)(A)).  Hotfile is producing all requested documents on that subject.  *See* Response To Request No. 22 (Leibnitz Decl., Ex. I).  This fact has no bearing here.

11

In Request No. 3, Plaintiffs demand that Hotfile expose the identity of any affiliates ever paid by Hotfile so that Plaintiffs may potentially sue them.  Mot. at 14.  Plaintiffs make no attempt to correlate these users with either Plaintiffs' 175 copyrighted works identified in the Complaint or the 1,015 links accused in Plaintiffs' Responses To Interrogatory No. 1.  Likewise, despite the unequivocal fact that "United States copyright law has no extraterritorial application," *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1093 (9th Cir. 1994), Plaintiffs make no attempt to limit this discovery to users who have operated at any time in the United States.

No matter how many times Plaintiffs aver that Hotfile exists solely to profit from copyright infringement, *see* Compl. ¶ 3 ("That is defendants' entire business model"), Plaintiffs are ***not*** entitled to that presumption.  None of the top 500 affiliates disclosed by Hotfile stands accused of uploading even one of the accused files in this case.  No reason exists to believe that any one of these affiliates is not a developer of open source software distributed on the internet, or a company administrator distributing a training video, or a music group posting concert footage to its fans, or an amateur filmmaker.  Where Plaintiffs might have requested information identifying uploaders or downloaders of the accused files, Request No. 3 has no relation whatsoever to that inquiry.  If Plaintiffs were to sue the popular internet auctioneer eBay, Plaintiffs could likely allege that less than 0.01% of eBay's customers infringe Plaintiffs' copyrights by selling unauthorized copies of movies – but Plaintiffs could never reasonably hope on that basis to obtain discovery of eBay's top customers (much less all of eBay's customers).  There, as here, the proposed discovery is not reasonably calculated to lead to admissible evidence.

Similarly, Plaintiffs may not properly demand identification of users who neither uploaded nor downloaded any file in the United States, given that the Copyright Act does not apply to conduct occurring exclusively outside the United States.  *Subafilms*, 24 F.3d at 1093.  Plaintiffs' authority does not suggest otherwise.  In *Fung*, defendant's extraterritorial downloads of copyrighted work evidenced knowledge of his websites' illegal activities.  2009 WL 6355911, at *17.  Here, no amount of discovery about "data used to calculate the amounts of [affiliate] payments" or attribution of payments to identified users – *i.e.*, the discovery sought to be compelled – is going to demonstrate that an affiliate uploaded or downloaded a copyrighted

work.  Plaintiffs do not seek identification of users who have uploaded or downloaded accused files anywhere in the world.

In any event, both European and Bulgarian law forbid Hotfile – operated from Sofia, Bulgaria – from disclosing affiliate identities.  Directive 95/46/EC, art. 26 ¶ 1(d), 1995 O.J. (L 281) 46; Law For Protection Of Personal Data, art. 36a ¶ 6 (Bulgaria 2009) (Leibnitz Decl., Exs. J-K).  Nothing about the identity of all users of Hotfile – regardless of whether they have uploaded or downloaded copyrighted works, or done so in the United States – is "necessary" for the establishment of Plaintiffs' legal claims.[12]

The First Amendment right to anonymous speech also protects Hotfile's users from identification.  *See e.g.*, *SaleHoo Group, Ltd. v. ABC Co*., 722 F. Supp. 2d 1210, 1214 (W.D. Wash. 2010) (quashing subpoena in trademark infringement case to protect internet user's right to anonymous internet speech).  While Plaintiffs may cite cases permitting discovery of copyright infringers despite this constitutional right, *Arista Records LLC v. Does 1-16*, No. 1:08-cv-765, 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009), cases like *Arista Records* involved a discrete set of users accused of downloading specifically-identified copyrighted works.  No credible justification exists for ignoring the constitutional rights entire populations of users in pursuit of claims against some fraction.

Plaintiffs also move to compel production of documents relating to every affiliate, no matter how small, even though Plaintiffs themselves initially suggested limiting discovery to the top 500 affiliates in the Requests For Production (Instruction No. 22) and Interrogatory No. 9. No reason exists to so dramatically expand the scope of discovery.  To the extent that Plaintiffs now demand the private financial records (*e.g*., PayPal account numbers) of thousands upon thousands of individuals, Plaintiffs' demands are nothing short of abusive.  Their demands should be denied.[13]

---

[12] Despite Plaintiffs' repeated assertions to the contrary, *see* Mot. at 14, 15 n.2, Hotfile disclosed specific privacy authorities to Plaintiffs while meeting-and-conferring, including explicit reference to the European Privacy Directive cited above.  Leibnitz Decl., ¶ 3.

[13] By e-mail following this Motion, Plaintiffs confirmed that their request for additional "data used to calculate payments to affiliates" overlapped with their demands set forth in Request Nos. 1-2.  Leibnitz Decl., Ex. L.  Accordingly, Hotfile relies herein on its positions set forth in Part III.A, *supra*.

**C.      Plaintiffs Have Not Made the Requisite Showing Of Relevance And Necessity To Obtain Production Of Source Code**

Plaintiffs' request for "[a]ll versions" of the source code for Hotfile's website "as it now exists or has ever existed" should be denied.  Where a confidential trade secret is sought and its disclosure would harm the producing party, the requesting party has the burden to show that the source code is relevant ***and necessary*** to the proper presentation of its case.  *American Standard Inc. v. Humphrey*, No. 306-cv-893-J-32MCR, 2007 WL 1186654, at *3 (M.D. Fla. Apr. 19, 2007); *Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 328 (9th Cir. 1961); *Litton Indus. v. Chesapeake & Ohio Ry. Co.*, 129 F.R.D. 528, 530 (E.D. Wisc. 1990).

Plaintiffs have failed to carry their burden to show relevance and necessity.  First, Plaintiffs do not dispute that Hotfile's source code is a trade secret.  As explained in Mr. Titov's declaration, more than 1,000 hours were spent developing Hotfile's source code.  Titov Decl. ¶ 6.  It was designed from scratch, confidentially, by defendant Anton Titov and one other person, and it is password protected and accessible to no more than four people in the world.  *Id.*  Hotfile designed its technology differently than its competitors, and those differences give Hotfile a competitive advantage.  *Id.* ¶ 8.  Hotfile's competitive position could be harmed if its source code were disclosed to its competitors as well as to other companies, since Hotfile's technology could potentially have applications for online businesses beyond the realm of file-hosting or file-sharing.[14]  *Id.* ¶ 9.  Moreover, if Hotfile's source code were accidentally leaked, it could enable dangerous cyber-attacks that could put Hotfile at grave risk and compromise the private data of its users.  (Halderman Decl. ¶¶ 17-19 attached as Exhibit 3 hereto)

Plaintiffs' justifications for seeking production of Hotfile's source code parrot the speculative justifications that were rejected in the *YouTube* case.  There, the plaintiffs sought production of defendants' "search" code and "Video ID" code to support their claim that the defendants had "purposefully designed or modified the tool to facilitate the location of infringing content" and to determine whether the defendants' denials of that claim were true.  *See Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 259-260 (2008) .  Plaintiffs further argued that they needed the code to support their conjecture that the search function "could have" been adapted to filter out infringing content and "to demonstrate what defendants 'could be doing – but are not –

---

[14] Plaintiffs' expert Ian Foster concedes that elements of Hotfile's source code may be competitively sensitive.  Foster Decl. ¶ 14.

to control infringement'." *Id.*

The court denied the request for both types of source code, finding the plaintiffs' justifications too speculative:

> YouTube and Google should not be made to place this vital asset in hazard merely to allay speculation. . . .[T]here may be other ways to show filtering technology is feasible and reasonably could have been put into place. . . . The notion that examination of the source code might suggest how to make a better method of infringement detection is speculative.

*Id.* at 260-261. Significantly, the court was unpersuaded by the fact that the there was a protective order in place.[15] "[T]he protections set forth in the stipulated confidentiality order are careful and extensive, but nevertheless not as safe as nondisclosure." *Id.* at 260.

Plaintiffs recycle the same two conjectural reasons to try to obtain Hotfile's sources code that were rejected in *YouTube*: (1) speculation that Hotfile designed its technology to facilitate infringement ( "[Plaintiffs] have alleged (and defendants deny) that defendants have incorporated technical features designed to enhance infringement and frustrate copyright owner enforcement."), and (2) speculation that there are infringement-reducing technologies that Hotfile could have, but did not, implement ( "[Plaintiffs] have alleged that there are readily available technological steps that defendants could have implemented, a claim that defendants deny.").[16] Mot. at 18. As *YouTube* makes clear, Hotfile should not have to put its vital asset at

---

[15] The existence of a protective order is not a reason to order production of confidential source code. "Numerous courts have found that, even with a protective order in place, the disclosure of commercially sensitive information to reliable and well-intentioned experts can be harmful." *Grand River Enters. Six Nations, LTD v. King*, No. 02 Civ. 5068 (JFK), 2009 WL 222160 (S.D.N.Y. Jan. 30, 2009); *Litton Indus.,* 129 F.R.D. at 530("[T]his court is not sanguine that a protective order could be constructed to sufficiently maintain the confidential nature of the information."). Furthermore, Plaintiffs' assertion that Hotfile "cannot now credibly" object on confidentiality grounds because it negotiated for a protective order is specious. Hotfile negotiated the source code protections because Plaintiffs had already requested its source code. Defendants communicated to Plaintiffs from the outset their opposition to the discovery of source code, which the protective order reflects. *See* Stipulated Protective Order ¶ 12 ("While the parties disagree regarding whether source code will be produced in this case . . . ").

[16] Plaintiffs also argue – without any explanation – that they want the source code to support their allegation that Hotfile did not terminate repeat infringers. Mot. at 18. Source code would not be relevant to that issue. Halderman Decl. ¶ 14. Furthermore, Hotfile has already produced to Plaintiffs documents showing the terminated users since the inception of Hotfile, the dates of termination (where known), and the reasons for termination (where known).

risk merely to allay Plaintiffs' speculation.[17]

Rather than address *YouTube*, Plaintiffs cite to a string of inapposite cases in which source code – in contrast to the instant case – actually bore relevance to the issues in dispute. Plaintiffs' authorities include non-copyright cases in which the adequacy of a software program's contractually-required performance was at issue[18] and copyright and patent cases in which the source code itself was accused of infringement.[19]  These cases have no bearing here.  Moreover, Plaintiffs' citations to other online copyright infringement cases such as *Lime Group, Fung* and *Usenet II* lack relevance, as none of those opinions even mentions source code[20] and, as previously explained, those cases are irrelevant.[21]

As a factual matter, Plaintiffs do not need Hotfile's source code in order to understand how Hotfile's website works.  Halderman Decl. ¶ 13-16.  Plaintiffs can gain a completely sufficient understanding of Hotfile's system through observation and data analysis or – at most – examination of defendants in deposition.  *Id.* ¶ 4-12. This is not a patent case, where the finder of

---

[17] Plaintiffs seek to downplay the confidentiality danger to Hotfile because Plaintiffs are not Hotfile competitors.  Mot. at 17; Foster Decl. ¶ 15.  That is not the dispositive issue.  In *YouTube*, the plaintiffs were not competitors of YouTube.  253 F.R.D. at 259-260.  In this case, the danger to Hotfile is exacerbated by the fact that several of the Plaintiffs have digital and/or online media affiliates or subsidiaries.  *See, e.g.*, Disney Interactive Media Group (http://corporate.disney.go.com/wdig/); Flixster (recently acquired by Warner Bros., http://www.timewarner.com/newsroom/press-releases/2011/05/Warner_Bros_Home_ Entertainment_Group_to_Acquire_Flixster_05-04-2011.php); Myspace (part of the Fox empire, http://en.wikipedia.org/wiki/Myspace#History).

[18] *Metavante Corp. v. Emigrant Sav. Bank*, No. 05-CV-1221, 2008 WL 4722336 (E.D. Wis. Oct. 24, 2008); *In re Facebook PPC Adver. Litig.*, No. C09-03043 JF (HRL), 2011 WL 1324516 (N.D. Cal. Apr. 6, 2011).

[19] *Dynamic Microprocessors Assocs. v. EKD Computer Sales*, 919 F. Supp. 101 (E.D.N.Y. 1996); *Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*, No. 07-351-JJF, 2010 WL 2898288 (D. Del. July 20, 2010); *Montgomery v. eTreppid Techs.*, LLC, No. 3:06-CV-0056-PMP (VPC), 2008 WL 2277118 (D. Nev. May 29, 2008).

[20] *Usenet II* and *Fung* discuss meta tags appearing in the HTML code of the defendants' websites, but HTML code is viewable by anyone with an internet connection while viewing a website and requires no production.  Halderman Decl. ¶ 5.

[21] *See* supra Part II.A (distinguishing "peer-to-peer" technology from Hotfile).  Plaintiffs' reference to *Capitol Records, LLC v. MP3Tunes, LLC*, No. 07 Civ. 9931 (WHP) (FM), SLIP OP. at 10 (C.D. Cal. June 8, 2007) is similarly off-base, as that case involved a website that, similar to *Grokster*, allowed unfettered searchable access to MP3 files.  *See* 2009 WL 3364036.  In any event, the two-sentence order from that case that Plaintiffs submitted did not order the production of source code but merely its preservation.

fact simply must compare written claims to specific lines of source code, and no other way of proceeding exists. *Id. ¶* 5.

Plaintiffs' expert concedes that source code is not necessary to understand how Hotfile works. *See* Foster Decl. ¶¶ 7, 13 (explaining that "it is possible to describe a computer program using means other than source code" and conceding that engineer testimony can explain how Hotfile works). At the outset of this case, Dr. Foster submitted a declaration evidencing a studied understanding of Hotfile's technology. Foster Decl. of 2/22/11 ¶ 5-14 (Leibnitz Decl., Ex. M). In support of this Motion, Dr. Foster tellingly concludes, without any access to source code, that "the capabilities of the Hotfile system appear to be relatively straightforward and it appears unlikely that any particular innovations are necessary to implement them." Foster Decl. ¶ 15. No reason exists for production of Hotfile's code here.

Beyond the confidentiality and relevance issues discussed above, Plaintiffs' source code request is aggressively overbroad. Plaintiffs demand "[a]ll versions" of Hotfile's source code for its website "as it now exists or has ever existed." During the meet-and-confer process, Plaintiffs rejected any effort to narrow this request. Even if the Court were to determine that code bore relevance to some limited issue – which the Court should not do – an appropriate resolution would be to produce those lines of source code directed to that issue (*e.g.*, Hotfile's use of "hashing" to prevent re-uploading of content previously suspected of copyright infringement).[22] Asking for the production of every line of code ever written lacks any possible justification.

### D.     Plaintiffs' Request For Earnings information Should Be Denied As Earnings Are Not Relevant Or Necessary

Discovery of confidential financial information is treated much the same as a trade secret – where a party in receipt of a discovery request for such information establishes that the information is confidential and that its disclosure would be harmful, the requesting party then has the burden to show that the information is relevant and necessary to the action. *See Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985) (denying request for production of confidential financial strategy information). Furthermore, it is well established that personal financial information is protected by a right of privacy. *See DeMasi v. Weiss*, 669 F.2d 114, 119-120 (3rd Cir. 1982).

Defendants' financial information is confidential and, in the case of Mr. Titov, private.

---

[22] Note that Plaintiffs can already observe this functionality by observing Hotfile's website.

Titov Decl. ¶ 10.  Its disclosure could harm Defendants.  *Id.*  Thus, its disclosure must not be ordered unless Plaintiffs can carry their burden to show its relevance and necessity.[23]  *See Mackle*, 108 F.R.D. at 326; *see also Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992) (private information may not be disclosed unless relevant and necessary).  Plaintiffs have not made the requisite showing.  Indeed, Plaintiffs' articulation of relevance is based on a fundamental misunderstanding of the law.  Specifically, Plaintiffs mistakenly assert that a *quantitative* assessment of revenues is relevant to their vicious liability claim and to the defendants' defense under the DMCA.  In fact, the analysis is *qualitative*, focusing on the structure of the business model, not the amount of money earned.

To prevail on its claim for vicarious liability, Plaintiffs must prove that defendants obtained a "direct financial benefit" from infringement.  *See Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004).  Courts analyzing this element look to whether the infringing conduct acts as a "draw" for the defendants' customers.  *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263-264 (9th Cir. 1996) (operator of swap meet liable where vendors sold counterfeit recordings that acted as a "draw" for swap meet customers).  Whether infringement constitutes a "draw"  involves a *qualitative* analysis – the specific dollars and cents are not at issue.

The *Fung* decision, one of the cases upon which Plaintiffs place heavy reliance, is clear on this point.  In *Fung*, the court granted summary judgment for the plaintiffs on their vicarious copyright infringement claim, ruling that the availability of copyrighted material acted as a "major draw" for the defendant's users and that his revenues increased with the number of users.  *Fung*, 2009 WL 6355911, *15.  The defendant argued against this finding on the grounds that the evidence did not include any financial "detail" or any specific dollar amounts.  *Id.* at n.25.  The Court rejected this argument, concluding that "the present Motion involves *liability* not *damages*, so such detail is unnecessary."  *Id.* (emphasis in original).  Similarly, the detail that Plaintiffs seek here about Hotfile's revenues are not necessary to the "direct financial benefit" analysis.

---

[23] Plaintiffs' requests for financial discovery are remarkably broad.  *See supra* at 1 & n.2.  While Plaintiffs innocently assert that they are asking for a "relatively narrow set of financial information," Plaintiffs in the next breath state that they are seeking all of Hotfile's aggregate monthly revenues for every month since the inception of Hotfile.  (Mot. at 19)  Moreover, the request and interrogatory at issue, through their extremely vast definitions, cover not only Hotfile Corp. and Mr. Titov but cover a potentially boundless net of agents, officers, affiliates, and others (their definitions even include "accountants" and "attorneys" of Hotfile).  *See* Leibnitz Decl., Ex. I.

In any event, charging a flat fee, as Hotfile does, does not constitute a "direct financial benefit."  *See Religious Tech. Ctr. v. Netcom On-Line Commc'ns Servs., Inc.*, 907 F. Supp. 1368, 1376-1377 (N.D. Cal. 1995).  As described in the Complaint, Hotfile earns money by charging users for Premium accounts.  Compl. ¶ 24; *see* Titov Decl. of 2/27/11 ¶ 7 (Leibnitz Decl., Ex. N). These charges have no relation to the files a Premium user downloads; a Premium user pays the same fee regardless or what she downloads, how much she downloads or even whether she downloads anything at all.  Titov Decl. ¶ 11.

For the same reason, Hotfile's revenues are not relevant or necessary to the question under the DMCA of whether Defendants have received a "financial benefit directly attributable to the infringing activity."  *See* 17 U.S.C. § 512(c)(1)(B).  The legislative history clarifies that a defendant does not receive such a benefit "where the infringer makes the same kind of payment as non-infringing users of the provider's service."  *See* H.R. Rep. 105-55(II), at 54-55; S. Rep. 105-190, at 44.  Thus, Hotfile's business model is not one that would run afoul of the DMCA's "financial benefit" provision, since an infringer makes the same payments as a non-infringer. Even assuming for the sake of argument that there is a factual dispute about this, it is apparent that this is a qualitative analysis that does not require discovery into specific earnings numbers, much less all of Hotfile's monthly earnings for every month since its inception.[24]

Similarly misguided is Plaintiffs' argument that earnings are relevant under *Grokster* to the question of whether "defendants' business model is based on generating substantial profits by providing access to infringing content."  Mot. at 20.  Plaintiffs misapprehend *Grokster*.  In that case, the court found support for its conclusion that Grokster was liable for inducing copyright infringement based on the fact that Grokster earned money not by charging its users but rather by selling advertising – which meant that Grokster's revenues increased as the use of its software increased (because increased use meant that more ads were being shown to users).  *Grokster*, 545 U.S. at 940.  The court found that the "commercial sense" of Grokster's business depended on

---

[24]  Hotfile is aware of one case that has stated, without analysis, that the common law "draw" analysis that applies to the "direct financial benefit" element of vicarious infringement was codified in the "financial benefit directly attributable to infringing activity" provision of the DMCA.  *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117 (9th Cir. 2007).  Hotfile respectfully submits that the *CCBill* opinion is mistaken in this regard and did not consider the on-point statements of legislative intent cited above.  Hotfile is aware of no court outside the Ninth Circuit that has followed *CCBill* on this point.  In any event, for the reasons already explained, the "draw" analysis does not justify the financial discovery that Plaintiffs seek.

"high volume use, which the record show[ed] is infringing," which, in combination with the other evidence, gave rise to an inference of unlawful intent.  *Id.*

Hotfile's business model is the antithesis of *Grokster*.  Unlike in *Grokster*, where Grokster got paid advertising fees every time someone looked at its website, Hotfile gets paid through Premium subscriptions, which it receives regardless of whether the Premium subscribers ever look at the website at all.  Titov Decl. ¶ 11.  Hotfile does not run advertising.  *Id.*  As already discussed, Grokster was a peer-to-peer file sharing network not covered by the DMCA, and Plaintiffs' continual reliance on it and its progeny is legally and factually untenable.

In any event, the *Grokster* inducement analysis was qualitative and not dependent on the *amount* of Grokster's earnings.  There is no discussion at all in the *Grokster* opinion of *any* specific dollar amounts.  The court's concern was the manner in which the business functioned – *i.e.*, by charging for advertising – not the amount of money earned.  *Id.*  Thus, *Grokster* does not support a discovery request seeking financial information, particularly such broad and overreaching requests as the ones that are at issue here.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion to compel production of documents or responses to interrogatories should be denied.

Dated:  June 17, 2011                                Respectfully submitted,

                                                                    s/ Janet T. Munn
                                                                    Janet T. Munn, Fla. Bar No. 501281
                                                                    Rasco Klock
                                                                    283 Catalonia Avenue, Suite 200
                                                                    Coral Gables, FL 33134
                                                                    Telephone:  305.476.7101
                                                                    Telecopy:  305.476.7102
                                                                    Email: jmunn@rascoklock.com

s/ Andrew Leibnitz
Roderick M. Thompson *(Admitted pro hac vice)*
rthompson@fbm.com
Andrew Leibnitz *(Admitted pro hac vice)*
aleibnitz@fbm.com
Anthony P. Schoenberg *(Admitted pro hac vice)*
tschoenberg@fbm.com
Deepak Gupta *(Admitted pro hac vice)*
dgupta@fbm.com
Janel Thamkul *(Admitted pro hac vice)*
jthamkul@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone:  415.954.4400
Telecopy:  415.954.4480

*Counsel for Defendants*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2011, the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/Janet T. Munn
Janet T. Munn

Karen L. Stetson, Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305.416.6880 Fax: 305.416.6887

Daniel M. Mandil, Esq. Motion Picture
Association of America, Inc.
15301 Ventura Boulevard Building E
Sherman Oaks, CA
818-935-5812
Email: Daniel_Mandil@mpaa.org

Steven B. Fabrizio (*Pro Hac Vice* )
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice* )
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice* )
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Phone: 202.639.6000 Fax: 202.639.6066

Karen R. Thorland, Esq.
Senior Content Protection Counsel
Motion Picture Association of America, Inc.
15301 Ventura Boulevard Building E
Sherman Oaks, CA
818-935-5812
Email: Karen_Thorland@mpaa.org