UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DISNEY ENTERPRISES, INC.,<br>TWENTIETH CENTURY FOX FILM<br>CORPORATION,<br>UNIVERSAL CITY STUDIOS<br>PRODUCTIONS LLLP,<br>COLUMBIA PICTURES INDUSTRIES,<br>INC., and WARNER BROS.<br>ENTERTAINMENT INC.,<br><br>*Plaintiffs*,<br><br>vs.<br><br>HOTFILE CORPORATION,<br>ANTON TITOV, and DOES 1-10.<br><br>*Defendants*. | Case No. 11-cv-20427-AJ<br><br>**REPLY DECLARATION OF IAN<br>FOSTER IN SUPPORT OF PLAINTIFFS'<br>MOTION TO COMPEL** |

I, Ian Foster, hereby declare as follows:

1.    I have reviewed the Declarations of J. Alex Halderman and Anton Titov in opposition to Plaintiffs' Motion to Compel and offer the Court my observations regarding those declarations below.  The observations and conclusions set forth below are based on my own observation and use of the live Hotfile site, as informed by my specialized knowledge, education, and expertise as applied to the facts and circumstances in this case.

**"ALTERNATIVES" TO SOURCE CODE ANALYSIS**

2.    I have reviewed Dr. Halderman's declaration, wherein he opines that the Plaintiffs could, as an alternative to reviewing the source code for the Hotfile Website, instead conduct "black box" testing of its features, or look to other sources of information, such as data analysis or depositions of Hotfile's developers, to understand how the website works.  For the reasons already expressed in my previous declaration, I believe that the information that can be gleaned

from such methods can provide, at best, only a partial understanding of how the website works, and that source code represents the best and most direct evidence about the design and operation of the Hotfile service.

3.      First, Dr. Halderman opines that plaintiffs could simply use the Hotfile website and observe how it responds to certain inputs (i.e. "black box" testing). One can gain *some* useful information from this approach; as Dr. Halderman notes, Plaintiffs were able to use this method to learn some things about how the Hotfile Website operates. However, this approach faces certain inherent limitations.

4.      The principal limitation of "black box" approaches is that any feature of behavior of a computer system that is not accessible to regular users cannot be studied in this manner. For instance, in my previous declaration, I explained that it is not apparent from external observation whether Hotfile replicates additional copies of uploaded files on its system, and, if so, what kinds of events "trigger" the creation of such additional server copies. Because this function is performed on the "back end" of the website – and does not face users of the site directly – it is not readily susceptible to "black box" testing of the sort Dr. Halderman suggests. The source code for the Hotfile Website, by contrast, would reveal the existence of any "back-end" functions that are not visible to the average user.

5.      Similarly, one can only "black box" test the features accessible to the tester, which provides no visibility into whether other users or classes of user might have different access to the site (e.g., whether certain features might work differently for users who are "premium," who have a different affiliate "status," or who are located in a different country). For instance, Dr. Halderman provides an example regarding Plaintiffs' supposed ability to black-box test how Hotfile processes the removal of files that have multiple URLs on the Hotfile

website.  However, black-box testing in the way he describes would allow Plaintiffs to see how

Hotfile removes such files uploaded by users with the same kind of account as Plaintiffs – it

would not show whether Hotfile's removal of such files might operate differently for other

classes of users.  The source code would.

      6.      Another limitation is that one cannot "black box" test historical features of a

website if those features are no longer available.  Historical versions of Hotfile's source code

would reveal the existence of any features that are no longer available but were in the past.

      7.      The concern regarding "hidden" or otherwise inaccessible functions of the Hotfile

Website is hardly theoretical.  It appears that Hotfile's administrators have access, or have had

access, to a number of administrative tools that are not visible or accessible regular users of the

site.  Attached hereto as Exhibit A is a copy of partial search results for the "hotfile" domain

from the "Internet Archive" website, which hosts past versions of many web pages.  The search

results show a number of URLs that appear to refer to scripts in the PHP programming language,

a widely-used language for programming websites.  (Attempts to access some of these scripts

today confirm that they still exist, but that the ability to access them is controlled by a user name

and password).

      8.      Absent access to Hotfile's administrative scripts themselves, one could not "black

box" test what they do.  On their face, however, they appear to represent a number of tools that

Hotfile's administrators may use to acquire various forms of information about the use and users

of the service, and to take various actions controlling different features of the service.  Access to

the source code for Hotfile's administrative tools would allow one to understand exactly what

capabilities Hotfile's administrators have and what sort of information about the service and its

users they can readily access.  I observe, moreover, that the scripts visible through the Internet

3

Acrhive are not visible on the website today, and their existence would not be apparent to regular users.  Nor, indeed, would the existence of any other scripts that may exist today beyond those listed through the Internet Archive (i.e. any administrative tools that have been added since the Internet Archive recorded the scripts reflected in Exhibit A, or that existed at the time but were not recorded by the Internet Archive).  The larger point is that unlike black-box testing, the source code would show, without room for doubt or interpretation, what abilities and information Hotfile's administrators have and have had in the past.

9.     For this same reason, having access to only a subset of Hotfile's source code, such as source code for specific administrative functions only, would be less useful than having access to the entire source code for the website.  Without the complete source code, one would not know what other "hidden" features are available.    Thus, while I do not disagree with Dr. Halderman that there may be portions of Hotfile's source code that serve functions that are of reduced interest to someone seeking to understand Hotfile's design choices and the information and control that Hotfile's administrators have over the site and its users, one cannot readily determine *ex ante*, before looking at the source code itself, which portions thereof will ultimately prove to be of interest.  Here, I note that Mr. Titov has claimed that somewhat more than one thousand hours went into developing the source code for the Hotfile website.  Based on Mr. Titov's description of the amount of work involved – which is comparatively modest for a large website – I would not expect the source code for the Hotfile Website to be particularly voluminous, such that it should be reasonably feasible to review the code in its entirety in order to identify particular features of interest.

10.     A further limitation of "black box" approaches is that even where such analysis is feasible, it may require the use of testing methods that are undesirable for reasons other than

4

their lack of effectiveness.  For instance, Dr. Halderman suggests that Plaintiffs could test how Hotfile's removal of infringing files works by first uploading, and then demanding the removal of, test files.  This testing procedure would require plaintiffs to issue formal notifications of infringement against files they uploaded themselves, an approach that I understand may raise legal concerns for reasons unrelated to its investigative effectiveness.

11.    Dr. Halderman also states that Plaintiffs could engage in "data analysis" as a substitute for reviewing Hotfile's source code.  As with black box testing, this method can be useful for learning *some* information, but is also subject to meaningful limitations.  Principally, relying on analysis of data is entirely dependent upon which data Defendants choose to record. In general, the data recorded by a website will be motivated by their operational concerns, which may be different from those of interest to someone trying to understand the way the website works.  For instance, I understand that one question at issue in this case is the extent to which the Hotfile system provided its operators with knowledge about, and ability to control, the activities of Hotfile users.  While data might in some instances reflect actions taken by Hotfile, it may not reflect the abilities of the system or its administrators.  In addition, even for events that *are* recorded, the usefulness of data analysis is limited to events that took place during the time period for which complete data is available.

12.    Finally, system features that would be immediately apparent from the source code may only be detectable through time-consuming analysis of large amounts of data.  To use an automotive analogy, a "data analysis" approach would be somewhat like trying to figure out if a car's engine runs on diesel or gasoline by reviewing speedometer data reflecting its acceleration during driving tests.  While the data can sometimes be useful, it is a very indirect way of inferring information that the source code reflects directly.

**"LIMITATIONS" TO SOURCE CODE ANALYSIS**

13.     Dr. Halderman's declaration also states that source code is not necessary in order to analyze how a computer system could be designed differently.  However, while it may not always be necessary to analyze source code in order to understand what sorts of design changes can be implemented to a computer system, analysis of source code can show the relative ease or difficulty of implementing such changes.  I understand that the feasibility as well as the relative ease or difficulty of making certain changes to the Hotfile system (to block, remove, or reduce copyright infringement on the service) may be a disputed issue in this case, and Hotfile's source code would be very useful in analyzing these questions, as well as assessing any claims that implementation of particular features would be unduly difficult.

14.     Aside from its usefulness in showing how a computer system can be changed, moreover, analysis of source code can also definitively show the abilities a system has *already*. For instance, I understand that the extent to which Hotfile is able to control the activities of users on its system *now*, and the information about such activities to which Hotfile has access *now*, are of interest in this litigation.  Analysis of Hotfile's source code would show, for instance, whether Hotfile already has existing tools for detecting or removing certain types of content, and uses them for reasons *other than* copyright infringement (such as identifying and removing files containing viruses or other undesirable or potentially unlawful content).  Other forms of analysis may be unable to answer this type of question or answer is it as effectively.

**FURTHER COMMENTS ON CONTENT REFERENCE DATA**

15.     In my previous declarations, I have opined as to the information that Hotfile maintains regarding the Content Files it hosts on its system and recording user activities, such as downloading files (which I have previously referred to as Hotfile's "Content Reference Data"

and "User Data").  I understand that it is of interest in the litigation whether the URLs to
particular files hosted on the Hotfile system have been publicly posted on other websites.  The
User Data and the Content Reference Data should contain information that enables identification
of files that have been publicly posted.  Server logs for websites commonly record the "HTTP
referrer" (i.e. the URL of the webpage that a user was on immediately prior to visiting a
website).  Since Hotfile's website claims that its "Referral" program "[f]or site owners"
compensates the operators of other websites "[f]or every referrer that comes from your site and
buys premium," it is reasonable to infer that Hotfile is recording the referrer information and
using it to determine the amount of compensation to which website operators enrolled in its
referral program are entitled.  At a bare minimum, therefore, Hotfile should be recording and
using data showing which files have been downloaded from links posted on websites registered
through Hotfile's "Referral" program.  Hotfile's server log data should contain information that
can identify downloads of Content Files through URLs posted to other websites as well.

I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct.

Executed on this 24th day of June 2011, at Arlington, VA.

_____
Ian Foster