UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

   *Defendants*.
_____/

# REPLY DECLARATION OF DUANE C. POZZA IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

I, Duane C. Pozza, hereby declare as follows:

1. I am a partner at the law firm of Jenner & Block LLP, and counsel to the plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment Inc. ("plaintiffs"). I submit this declaration in reply to defendants' Opposition to Plaintiffs' Motion to Compel Responses to Request for Production and Interrogatories. The statements made in this declaration are based on my personal knowledge including on information provided to me by colleagues or other personnel working under my supervision on this case.

2. Defendants claim in their motion that plaintiffs have "misstat[ed]" their intention to continue the meet-and-confer process and that defendants were "ambush[ed]" by this motion.

1

Opp. at 1, 2. This is not accurate. The parties met and conferred regarding the subjects of plaintiffs' motion to compel on four separate occasions, May 11, May 16, May 19, and May 20. In particular, the parties discussed plaintiffs' requests for Content Reference, User, and Affiliate Data on May 11, May 16, and May 19. On May 19, defendants' counsel made clear that defendants were standing on their objections as to the Content Reference and User Data in particular. Plaintiffs' counsel noted that similar data was ordered produced in similar online infringement cases and, in response to defendants' counsel request, offered to send the relevant orders to defendants. But at the same time, defendants' counsel was clear that defendants' position against producing the requested data would not change. On the next day, May 20, I sent an email, attached as Exhibit A to my May 31, 2011 declaration in support of plaintiffs' motion to compel, documenting that defendants were still refusing to produce this data and that we understood our meet-and-confer on those requests to be concluded in light of their refusal: "We also indicated that we would send copies of orders compelling production of user activity data. I am therefore attaching orders from the *Bunnell* and *Fung* cases. The *Bunnell* order was upheld by the district court at 245 F.R.D. 443. As we discussed, the parties are currently at an impasse on producing complete Content Reference, User, and Affiliate Data, and ***defendants have given no indication of changing their position***. We are sending these as a courtesy but ***do not understand that our meet-and-confer is being reopened on this issue***." (emphasis added). Likewise, defendants have always been clear in the parties' meet-and-confers that the requested source code and financial information would not produced.

      3.      Subsequent to the meet and confer on May 20, the parties continued to meet-and-confer on *other* requests and interrogatories not included in plaintiffs' motion. The plaintiffs have always been clear that they intended to move to compel on the requests and interrogatories

included in their motion, and defendants were clear in the four meet-and-confer discussions prior to bringing the motion to compel that the requested documents and information would not be provided. And indeed, defendants continue to refuse to provide the requested documents and information. As for the foreign privacy statutes on which defendants rely, in the context of meeting and conferring on Affiliate data, defendants pointed to websites listed numerous privacy statutes. The parties discussed the applicability of the European Privacy Directive specifically in the context of other requests to defendants.

      4.      In the weeks of discussion after defendants' objections to document requests and interrogatories were served on May 5, 2011, defendants' objections to production of content reference and user data relied on arguments as to relevance and burden. The argument that the data should not be produced because the Stored Communications Act ("SCA") barred production of content files was not raised until after the motion was filed. In fact, following the filing of this motion, plaintiffs and defendants engaged in further discussions as to whether the required data could be produced using a multi-step process that would have been more burdensome overall, but would have provided plaintiffs with the data for their relevant analyses. On June 8, 2011, defendants' counsel sent plaintiffs' counsel an email specifically offering to produce certain of the content reference and user data, *as well as certain content files*. However, that proposal would not have provided sufficient data for plaintiffs to conduct their statistical analysis, and on the same day, my colleague Steven Fabrizio responded with a counter-proposal with reasonable changes that would have enabled the plaintiffs to obtain the data for the statistical analyses to go forward. A true and correct copy of the email from Steven Fabrizio to Rod Thompson, also containing Mr. Thompson's proposal on behalf of defendants, is attached hereto as Exhibit A. After that email, more than four weeks after the first meet-and confer on the requests for the

content reference and user data, defendants' counsel raised questions about the Stored Communications Act as an issue. In a call on June 15, 2011, defendants' counsel stated that they were rejecting the counter-proposal on the grounds that the SCA barred disclosure of content files.

5. Attached hereto as Exhibit B is a true and correct copy of the Order (1) Granting Plaintiffs' Ex Parte Application; (2) Granting Plaintiffs' Request for Sanctions, Attorneys' Fees and Costs; and (3) Cautioning Defendants Regarding Potential Consequences of Further Violations of Discovery Obligations and Orders from *Columbia Pictures Industries, Inc. v. Fung*, No 06-cv-05578 (C.D. Cal. Aug. 10, 2007).

6. Attached hereto as Exhibit C is a true and correct copy of a printout of the article "Non-EU Websites Must Operate Under EU Privacy Laws" from the Wall Street Journal Online, dated March 16, 2011, printed on June 23, 2011 from the URL http://blogs.wsj.com/tech-europe/2011/03/16/non-eu-websites-must-operate-under-eu-privacy-laws.

7. Attached hereto as Exhibit D is a true and correct copy of a printout of a screenshot of the Hotfile website, from July 28, 2010 from the URL http://www.hotfile.com/affiliate.html, also attached as Exhibit B to the Complaint. On that page, the website states, "We are trying to encourage the good promoters by increasing their earnings and to reduce the earnings for uploaders that mainly use the free hotfile resources for storage." Attached hereto as Exhibit E is a true and correct copy of a printout of a screenshot of the Hotfile website, from July 28, 2010 from the URL http://www.hotfile.com/faq.html, also attached as Exhibit C to the Complaint. On that page, the website states, "Upload files only if you intent to promote them."

8. According to the Hotfile website, Hotfile began adopting what it termed as a "more aggressive" policy of terminating users who were subject to repeated claims of copyright infringement on or about February 19, 2011. This is reflected in the attached Exhibit F, which is a true and correct copy of a printout of the Hotfile News Page, printed June 23, 2011 from the URL http://hotfile.com/news.html. Attached as Exhibits G and H are true and correct copies of printouts from the website Alexa.com, printed June 23, 2011 from the URL http://www.alexa.com/siteinfo/hotfile.com, showing Alexa's measure of the "Reach" and "Pageviews" of hotfile.com over the last six months, which show a decline in Hotfile's traffic since the end of February 2011.

9. Plaintiffs are seeking leave to file under seal Exhibit I, which are true and correct copies of documents bates labeled HF00034459, HF00034587, HF00034686, produced by defendants in this case and designated "Confidential" by the defendants under the Protective Order entered in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 24, 2011.

_____
Duane C. Pozza