Sealed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN



DISNEY ENTERPRISES, INC., )
TWENTIETH CENTURY FOX FILM CORPORATION, )
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, )
COLUMBIA PICTURES INDUSTRIES, INC., and )
WARNER BROS. ENTERTAINMENT INC., ) **FILED UNDER SEAL**
)
Plaintiffs, ) **CONTAINS CONFIDENTIAL**
) **INFORMATION UNDER**
vs. ) **PROTECTIVE ORDER**
)
HOTFILE CORP., ANTON TITOV, and )
DOES 1-10. )
)
Defendants. )
_____)

## DECLARATION OF LUKE C. PLATZER IN SUPPORT OF PLAINTIFFS' AND THE MPAA'S MOTION TO AUTHORIZE USE OF CATEGORICAL PRIVLEGE LOGS

I, Luke C. Platzer, hereby declare as follows:

1. I am a partner at the law firm of Jenner & Block LLP, and counsel to the plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment Inc. in this action ("Plaintiffs"). The statements made in this declaration are based on my personal knowledge including on information provided to me by colleagues or other personnel working under my supervision on this case.

2. I am supervising Jenner & Block's production of Plaintiffs' and the MPAA's documents in this action. Attached hereto as Exhibit A is a true and correct copy of selected pages from Defendants' Second Set of Requests for Production to Plaintiffs.

3. In responding to Defendants' document requests, Plaintiffs and the MPAA have been conducting, among other things, keyword searches within the documents collected from custodians identified as likely to have responsive documents in this case. Although this review is still ongoing, the keyword searches conducted thus far suggest that there are several thousand documents (in excess of five thousand) as to which Plaintiffs will claim either attorney-client privilege and/or attorney work-product protection. This estimate is derived by extrapolating from the percentage of documents thus far identified as privileged or subject to work product protection, and estimating how many additional responsive documents still remain to be reviewed. The reviewing attorneys have already identified several thousand documents as either privileged and/or as attorney work product.

4. Two common categories of documents over which Plaintiffs intend to claim privilege and/or attorney work product protection, and which are in large part responsible for the volume of such materials, are (1) documents arising out of Plaintiffs' and the MPAA's investigation, analysis, and deliberations prior to the filing of this case, and (2) documents arising out of each Plaintiff's ongoing investigations of infringement of their copyrights online, including communications with antipiracy personnel and vendors arising out of those investigations.

5. For more than a year before the complaint in this case was filed, Jenner & Block LLP investigated, and collected and evaluated information regarding, infringement on so-called "locker" or "download hub" sites (of which Hotfile is an example). This work included legal and strategic analyses, consultations with technical and statistical experts and vendors retained to assist Jenner & Block in this process, research to identify publicly available evidence, and ongoing communications with both MPAA attorneys and in-house counsel for the studios, as

well as deliberations regarding potential enforcement targets and the gathering of potential evidence. Jenner & Block's analysis of Hotfile specifically also involved considerable efforts identifying the location of the company and its principals, and their relationships to one another, for purposes of Jenner & Block's litigation analysis.

6. On Thursday, June 2, 2011, I conducted a teleconference with Anthony Tschoenberg and Deepak Gupta, who both represent the Defendants in this action. During the call, I articulated the privilege-logging burden posed by the scope of Defendants' requests, and proposed that the parties exchange privilege logs in categorical rather than itemized format. I had previously raised this proposal with counsel for the Defendants during a May 26, 2011 call with Deepak Gupta and Roderick Thompson. Following the June 2 call, and at the request of Mr. Gupta and Mr. Tschoenberg, I supplied them with citations to cases in which courts had approved the use of categorical privilege logs. A true and correct copy of my June 2, 2011 email to Defendants' counsel is attached hereto as Exhibit B.

7. On Wednesday June 8, 2011, I participated in a telephonic meet-and-confer with Deepak Gupta and Roderick Thompson regarding Defendants' requests for production to Plaintiffs and the MPAA, during which I inquired if Defendants had made a decision about Plaintiffs' privilege log proposal. Mr. Thompson replied that Defendants were still considering Plaintiffs' proposal, but were leaning towards agreeing to exchange categorical logs only for items *other than* Plaintiffs' pre-complaint investigation of Hotfile, as to which Defendants would insist on an itemized log.

8. On Thursday, June 16, 2011, I participated in a teleconference with Anthony Tschoenberg. On the call, he informed me that Defendants had opted to decline Plaintiffs' suggestion to exchange categorical privilege logs. He explained that the basis for Defendants'

position was their disagreement with the positions Plaintiffs had taken with respect to the discoverability of documents relating to Plaintiffs' pre-complaint investigation of Hotfile, which Defendants might wish to challenge. He also stated that Defendants' local counsel had taken the position that categorical privilege logging would not be approved in the Southern District of Florida. When I told him that the procedure had been approved in the Southern District, he acknowledged that I had supplied him with case law approving the procedure in this Court, but reiterated that Defendants were following the advice of their local counsel. Recalling Mr. Thompson's statement the week prior, I also inquired whether Defendants would agree to Plaintiffs' submission of categorical privilege logs for matters unrelated to the pre-complaint investigation. Mr. Tschoenberg declined to take a position, stating that while he would "consider" such a request after Plaintiffs supplied a proposed category list, Defendants might not necessarily ultimately agree to such a proposal, reiterating that Defendants' local counsel had advised them that categorical privilege logging was not permitted.

9. On Friday, June 17, 2011, I sent Mr. Tschoenberg an email referring to my prior discussion with Mr. Thompson the possibility of agreeing to a partial categorical log encompassing matters other than Plaintiffs' pre-complaint investigation, and stating my belief that Defendants' rejection of Plaintiffs' categorical privilege log proposal suggested that Defendants had already considered, and rejected, agreeing to such a partial categorical log. I then asked Mr. Tschoenberg whether Defendants intended to make a counteroffer or further proposal regarding privilege logs, and stated my belief that our meet and confer was concluded unless Defendants were prepared to make a counterproposal. A true and correct copy of my June 17, 2011 email is attached hereto as Exhibit C.

10.     On Monday, June 20, 2011, Mr. Tschoenberg responded to my email, stating that Defendants did not intend to make a counteroffer with respect to reducing the burdens of privilege logging in this action. On Tuesday, June 21, 2011, I replied to Mr. Tschoenberg's email stating that, because Defendants were unwilling to consider categorical privilege logging for documents arising out of Plaintiffs' pre-complaint investigation, Plaintiffs viewed the meet-and-confer on this issue as concluded. Mr. Tschoenberg replied on Wednesday, June 22, indicating his agreement that the meet-and-confer was at an end. A true and correct copy the email chain reflecting this exchange is attached hereto as Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 6th day of July 2011, at Washington, DC.

*[signature]*

Luke C. Platzer