UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.

_____/

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PROTECTIVE ORDER REGARDING PLAINTIFFS' ANTIPIRACY
INVESTIGATIONS AND ENFORCEMENT PROCEDURES**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

I.  DEFENDANTS' DISCOVERY AGAINST THE ANTIPIRACY VENDORS
    IS IRRELEVANT ............................................................................................................ 3

    A.  Plaintiffs' Antipiracy Materials Are Not Relevant to Either Plaintiffs' or
        Defendants' Compliance with the DMCA. ........................................................... 3

    B.  Plaintiffs' Antipiracy Materials Are Not Relevant to Defendants' Right and
        Ability to Control Infringement. ........................................................................... 6

II. PLAINTIFFS' CONFIDENTIAL METHODS FOR FINDING
    INFRINGING FILES ONLINE SHOULD BE PROTECTED FROM
    DISCOVERY ................................................................................................................... 6

    A.  Specific Item of Discovery ................................................................................... 6

    B.  Type of Protection the Plaintiffs Request ............................................................. 7

    C.  Reasons Supporting the Requested Protection ...................................................... 7

        1.  Plaintiffs' Methods for Locating Infringing Files are Irrelevant. .............. 7

        2.  Plaintiffs' Methods for Finding Infringing Files Online Would be
            Compromised by Disclosure. ..................................................................... 7

        3.  Plaintiffs' Methods for Finding Infringing Files Online are Not
            Necessary to Defendants' Case. ............................................................... 10

III. PLAINTIFFS' INTERNAL METHODS AND CONFIDENTIAL
     CRITERIA FOR ISSUING NOTICES OF INFRINGEMENT SHOULD BE
     PROTECTED FROM DISCOVERY .......................................................................... 11

    A.  Specific Item of Discovery ................................................................................. 11

    B.  Type of Protection the Plaintiffs Request ........................................................... 11

    C.  Reasons Supporting the Requested Protection .................................................... 12

        1.  Plaintiffs' Methods and Criteria for Issuing Notices of Infringement
            are Irrelevant .......................................................................................... 12

        2.  Plaintiffs' Methods and Criteria for Issuing Notices of Infringement
            Would be Compromised by Disclosure .................................................... 12

IV. PLAINTIFFS' INTERNAL POLICIES OR DECISIONS REGARDING
    WHEN NOT TO USE THE TAKEDOWN NOTICE PROCEDURE, IF
    ANY, SHOULD BE PROTECTED FROM DISCOVERY .......................................... 13

    A.  Specific Item of Discovery ................................................................................. 13

    B.  Type of Protection the Plaintiffs Request ........................................................... 13

    C.  Reasons Supporting the Requested Protection .................................................... 13

V.   PLAINTIFFS' HIGHLY SENSITIVE COMMUNICATIONS WITH THEIR
     ANTIPIRACY VENDORS' REGARDING INFRINGEMENT ON
     HOTFILE SHOULD BE PROTECTED FROM DISCOVERY.................................. 14

     A.   Specific Item of Discovery ............................................................... 14

     B.   Type of Protection the Plaintiffs Request ...................................... 14

     C.   Reasons Supporting the Requested Protection............................... 15

VI.  DEFENDANTS' OTHER OVERLAPPING DISCOVERY REQUESTS
     SEEKING THE SAME INFORMATION SHOULD BE QUASHED. ..................... 15

CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*,
    237 F.R.D. 405 (N.D. Ill. 2006).........................................................................................10

*Brown Bag Software v. Symantec Corp.*,
    960 F.2d 1465 (9th Cir. 1992) ............................................................................................10

*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*,
    263 F.3d 1304 (11th Cir. 2001) .........................................................................................8,9

*Columbia Pictures Indus., Inc. v. Fung*,
    No. 06-5578 SVW, 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009).........................................4

*Corbis Corp. v. Amazon.com, Inc.*,
    351 F. Supp. 2d 1090 (W.D. Wash. 2004)...........................................................................5

*Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*,
    216 F.R.D. 533 (M.D. Fla. 2003).........................................................................................9

*Direct TV, Inc. v. Trone*,
    209 F.R.D. 455 (C.D. Cal. 2002) ......................................................................................4,8,9

*Fambo v. Alterra Healthcare Corp.*,
    No. 08-CV-795S, 2010 WL 335013 (W.D.N.Y. Jan. 22, 2010)...........................................10

*Farnsworth v. Procter & Gamble Co.*,
    758 F.2d 1545 (11th Cir. 1985) .........................................................................................8,9

*Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*,
    443 U.S. 340 (1979)...............................................................................................................8

*Great Lakes Transp. Holding LLC v. Yellow Cab Serv. Corp. of Fla., Inc.*,
    No. 10-80241-CIV, 2011 WL 465507 (S.D. Fla. Feb. 4, 2011)...............................................2

*Hope for Families & Community Service, Inc. v. Warren*,
    No. 3:06-CV-1113-WKW, 2009 WL 1066524 (M.D. Ala. Apr. 21, 2009) .............................9

*UMG Recordings, Inc. v. Veoh Networks Inc.*,
    No. CV 07-5744AHM, 2010 WL 1407316 (C.D. Cal. Apr. 6, 2010) ......................................5

*Viacom Int'l Inc. v. YouTube Inc.*,
    253 F.R.D. 256 (S.D.N.Y. 2008) .......................................................................................10

**STATUTES**

17 U.S.C. § 512(c) .....................................................................................................................3,4,5

17 U.S.C. § 512(i)(1)(A)................................................................................................................4

**OTHER AUTHORITIES**

H.R. Rep. 105-551(II) (1998) ......................................................................................................5

Southern District of Florida Local Rule 26.1(h)(3) .......................................................................1

Fed. R. Civ. P. 26........................................................................................................................1,9

Advisory Committee Notes to the 1970 Amendment to Rule 26(c).............................................10

Plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studio Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment Inc. ("Plaintiffs") hereby submit this memorandum of law in support of Plaintiffs' Motion for a Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Southern District of Florida Local Rule 26.1(h)(3).  Defendants are seeking highly confidential documents from several third-party online antipiracy companies that conduct copyright infringement investigations and enforcement at the direction of Plaintiffs' lawyers (the "Antipiracy Vendors"), as well as from Plaintiffs directly.  These documents reflect Plaintiffs' internal policies, procedures and instructions underlying their online antipiracy investigations and enforcement efforts, including their investigations for purposes of this case (the "Antipiracy Materials").  As set forth below, Plaintiffs seek an order protecting these Antipiracy Materials from discovery on the basis that it is irrelevant.  Moreover, because improper disclosure of the Antipiracy Materials could severely compromise Plaintiffs' ability to protect their copyrighted works from content thieves online, Defendants have failed to make the requisite showing of need to overcome the potential prejudice of such discovery to Plaintiffs.

## INTRODUCTION

This is a case about the Defendants' liability for operating the Hotfile Website to promote and facilitate the infringement of Plaintiffs' copyrighted works on a massive scale.  Under governing standards of copyright law, Defendants' liability in this case will turn entirely on *Defendants'* conduct – Defendants' knowledge of, and intent to foster, infringement on the Hotfile website, the steps they take to promote infringement, the way they chose to design and set up their service, and the steps they failed to take to mitigate the infringement that they facilitated.

This case is not about Plaintiffs' internal enforcement strategies for combating piracy.  However, in an effort to deflect attention from their own culpability, Defendants are trying to make this case about everyone's conduct but their own.  As relevant to this motion, Defendants are improperly seeking to take intrusive discovery of highly confidential, proprietary, and strategic tools that the Plaintiffs use to investigate and fight the theft of their movies and television programs online.  Defendants have served discovery demanding essentially all documents related to Plaintiffs' antipiracy

enforcement efforts from both Plaintiffs and from the Antipiracy Vendors retained by the Plaintiffs, including Plaintiffs' litigation counsel in this action, that assist such infringement investigations.

*None of these Antipiracy Materials has any bearing on the issues in this case.* Plaintiffs' internal processes for investigating and protecting themselves against theft of their works have no relevance to any claim or defense. At the same time, those materials reflect some of the most sensitive functions conducted by the Plaintiffs' in-house attorneys. Plaintiffs, like most content owners who try to protect their copyrighted content from online theft, are continuously involved in cat-and-mouse games with technically sophisticated Internet content thieves (including the Defendants, and others like them). The internal enforcement efforts the Plaintiffs undertake to locate infringing material online, and the confidential strategies and tactics Plaintiffs use to enforce and protect their copyrights online, could readily be circumvented if those processes were to become known to the very content thieves at whom those efforts are targeted. Accordingly, Plaintiffs respectfully request that the Court enter an order in this case protecting the Antipiracy Materials from discovery.[1]

## BACKGROUND

The Defendants have served subpoenas on five different Antipiracy Vendors that assist Plaintiffs' in-house and outside counsel with online antipiracy investigations and the issuance of notifications of infringement: DtecNet, Inc.; BayTSP, Inc.; Peer Media Technologies; OpSec Security Group plc; and MiMTiD Corp. *See* Declaration of Luke C. Platzer ("Platzer Decl.") ¶¶ 4-8 and at Exs. 4-8. Each subpoena is substantially identical. All seek extensive discovery regarding investigative and enforcement work that the Antipiracy Vendors perform on Plaintiffs' behalf. As explained in the accompanying declarations of Plaintiffs' in-house attorneys that supervise the Antipiracy Vendors, Lance Griffin; Steven Kang; Betsy Zedek; Vicki Solmon; and David Kaplan

---

[1] Although Defendants have issued four of the five third-party subpoenas in other courts, Plaintiffs "possess standing to seek a protective order precluding [opposing parties] from engaging in third-party discovery that they claim is beyond the permissible scope of Rule 26." *See, e.g., Great Lakes Transp. Holding LLC v. Yellow Cab Serv. Corp. of Fla., Inc.*, No. 10-80241-CIV, 2011 WL 465507, *5 n.6 (S.D. Fla. Feb. 4, 2011), and an application for a protective order properly lies in "the court where the action is pending" and not the court where the subpoena is issued. Fed. R. Civ. P. 26(c)(1) ().

2

("Griffin Decl."; "Kang Decl."; "Zedek Decl."; "Solmon Decl.," and "Kaplan Decl.,"
respectively), *see* Platzer Decl. Exs. 9-13, all such work is performed at the direction and
under the supervision of Plaintiffs' in-house and outside counsel. *See also* Platzer Decl. ¶
18. Defendants' subpoenas mirror similar discovery requests served on Plaintiffs to
which Plaintiffs had previously interposed objections.

Plaintiffs have sought, through extensive global negotiations with the Defendants,
to reach an agreement regarding the scope of the information regarding Plaintiffs'
Antipiracy Materials that would be discoverable. Attempts to resolve the parties'
disagreement have reached an impasse. *See* Platzer Decl. ¶ 17.

## ARGUMENT

### I.   DEFENDANTS' DISCOVERY AGAINST THE ANTIPIRACY VENDORS IS IRRELEVANT.

Defendants' liability will be based on familiar principles of secondary copyright
liability: whether they (1) operated their service with the object that their users use it to
infringe, (2) knew about infringing activity on their service and provided material
assistance to it, and (3) benefitted financially from it while declining to exercise their
right and ability to control. *See* Pls.' Opposition to Defs.' Motion to Dismiss [Docket
No. 52] at 5, 9, 14, 16 (summarizing legal standards governing Defendants' liability).
These legal tests share one thing in common: they are all about *Defendants'* conduct, not
Plaintiffs'. As discussed below, the same is true of Defendants' efforts to invoke the
"safe harbors" of Section 512 of the Digital Millennium Copyright Act, 17 U.S.C. §
512(c) ("DMCA"). Because of this, the internal process and strategy that Plaintiffs use to
investigate and search for pirated copies of their movies and television programs online,
and to issue notifications of infringement when such infringing copies are discovered, is
simply not relevant.

### A.   Plaintiffs' Antipiracy Materials Are Not Relevant to Either Plaintiffs' or Defendants' Compliance with the DMCA.

During negotiations with Plaintiffs, Defendants' counsel has argued that
discovery into Plaintiffs' Antipiracy Materials is needed to show whether Plaintiffs are
"complying with their duties under the DMCA." *See* Platzer Decl. ¶ 15. But this only
underscores the fundamental flaw with Defendants' misguided theory of relevance. The
DMCA does not impose any affirmative obligations on copyright owners. Eligibility for

DMCA safe harbor turns exclusively on Defendants' conduct; copyright owner actions are irrelevant.

This is clear from the face of the DMCA safe harbor requirements.  To be eligible for safe harbor under Section 512(c) of the statute, Defendants have the burden of demonstrating each of the following:

(a)  That they have complied with the "designated agent" provisions of Section 512(c)(2), by designating a DMCA agent on their website and through registration with the Copyright Office;

(b)  That they have "reasonably implemented" a policy that provides for the termination of users who are "repeat infringers," 17 U.S.C. § 512(i)(1)(A);

(c)  That they do not have actual knowledge that material on their system is infringing, 17 U.S.C. § 512(c)(1)(A)(i);

(d)  In the absence of actual knowledge, that they are not aware of facts and circumstances from which infringement is apparent, 17 U.S.C. § 512(c)(1)(A)(ii);

(e)  That they do not receive a financial benefit from the infringement while failing to exercise a right and ability to control the infringement, 17 U.S.C. § 512(c)(1)(B);

(f)  That they promptly disabled access to works alleged to be infringing in a takedown notice, 17 U.S.C. § 512(c)(1)(C) & (c)(3)(A)(ii); and

(g)  That they do not operate their service with the object of fostering copyright infringement.  *See Columbia Pictures Indus., Inc. v. Fung*, No. 06-5578 SVW (JCx), 2009 WL 6355911, at *18 (C.D. Cal. Dec. 21, 2009) (holding that "there is no safe harbor" for "inducement" liability under the DMCA).[2]

If Defendants fail to meet any of these tests, they are ineligible for any DMCA safe harbor protection.

Not one of these legal tests relates in any way to the conduct of Plaintiffs.  Indeed, the only DMCA requirement that even involves Plaintiffs *at all* is the requirement that Defendants promptly disable access to works identified as infringing in DMCA notices

---

[2] As the Central District of California recognized in *Direct TV, Inc. v. Trone*, 209 F.R.D. 455, 459-60 (C.D. Cal. 2002), where an alleged infringer similarly sought discovery of the antipiracy technologies used by the plaintiff to thwart efforts by infringers such as the defendant, a plaintiff's technological efforts to defeat theft are simply not relevant to an infringer's intent or culpability for the underlying theft itself.  *Id*.

sent by copyright owners.  *See* 17 U.S.C. § 512(c)(1)(C) & (c)(3)(A)(ii).  But that is an obligation of copyright defendants, not copyright plaintiffs.  The DMCA places copyright holders "under no obligation" to send notices at all, whether before bringing suit or otherwise.  *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1107 (W.D. Wash. 2004); *see also UMG Recordings, Inc. v. Veoh Networks Inc.*, No. CV 07-5744AHM, 2010 WL 1407316, *1 (C.D. Cal. Apr. 6, 2010) ("That UMG declined to avail itself of the DMCA's notice and takedown procedures could…easily reflect a good-faith belief on UMG's part that Veoh did not qualify for DMCA safe-harbor protection…").  Congress emphasized in enacting the statute that filing a DMCA notice is *not* a precondition of an infringement action: "copyright owners are not obligated to give notification of claimed infringement in order to enforce their rights." H.R. Rep. 105-551(II) at 54 (1998). Because copyright owners are under no obligation under the DMCA to issue notifications of infringement *at all*, much less required to do so before they bring an enforcement action, the process that Plaintiffs go through to send (or not send) notifications to Defendants is not relevant.

In a related vein, Defendants suggest the alternative theory that antipiracy materials in the possession of Plaintiffs and their antipiracy vendors are relevant to *Defendants'* compliance with the notice and takedown requirements of Section 512(c)(1)(C).  *See* Platzer Decl. ¶ 15.  That argument is also baseless.  Under Section 512(c)(1)(C) of the DMCA, the internal process that went through in order to determine whether to issue notice of infringement is immaterial.  Compliance with Section 512(c)(1)(C) turns solely on whether or not Defendants "respond[ed] expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity." 17 U.S.C. § 512(c)(1)(C).  That is a fact determined exclusively on the face of the notices themselves – whether the notices contain the statutory elements.  *See* 17 U.S.C. § 512(c)(3) (enumerating statutory notice elements).[3] In this case, Defendants have copies of the notices.  Nothing else is needed to determine whether the notices comply with the DMCA.

---

[3] Plaintiffs are producing their notifications sent to Hotfile and Plaintiffs' own records of Hotfile's responses.  *See* Platzer Decl. ¶ 16.

**B. Plaintiffs' Antipiracy Materials Are Not Relevant to Defendants' Right and Ability to Control Infringement.**

Nor are documents regarding Plaintiffs' antipiracy practices relevant, as Defendants have argued during negotiations, to Defendants' right and ability to control infringement on the Hotfile Website. *See* Platzer Decl. ¶ 15. The steps *Plaintiffs* took to investigate and respond to infringement of their copyrights have nothing to do with *Defendants'* own ability, or efforts, to control infringement via their system.

Indeed, the facts relevant to Defendants' ability, and efforts, to control infringement are directly known only to the Defendants. Plaintiffs do not host the infringing files located on Defendants' computer servers. Defendants do. Plaintiffs do not control, or have access to, the process by which files are uploaded onto Defendants' computers. Defendants do. Plaintiffs are not privy to the architecture or functionality of the Hotfile system; Defendants are. Indeed, because the Hotfile Website does not contain a public-facing search feature, *see, e.g.*, Defs' Motion to Dismiss, Docket No. 50, at 12-13, Plaintiffs cannot directly ascertain whether infringing copies of their content are located on Hotfile. Instead, Plaintiffs must scour – or hire vendors to scour – the Internet for links to such infringing files. It is Defendants, not Plaintiffs or their vendors, who are directly privy to information about infringement on Hotfile, including the identities of the uploaders, whom Defendants compensate for uploading large, popular files. In short, all facts relevant to Defendants' right and ability to control piracy on their system are within Defendants knowledge and control. Nothing in any documents possessed by the Plaintiffs' antipiracy vendors will enlighten the Defendants further on that score.

## II. PLAINTIFFS' CONFIDENTIAL METHODS FOR FINDING INFRINGING FILES ONLINE SHOULD BE PROTECTED FROM DISCOVERY

Defendants have demanded all documents showing how Plaintiffs and their vendors locate infringing material online. In essence, Defendants are like the fox asking for the combination to the lock on the hen-house door.

### A. Specific Item of Discovery

Request No. 7: ALL DOCUMENTS including instructional or training manuals, and guidelines showing or in any way reflecting any processes, policies, procedures, protocols, or algorithms that YOU or any PLAINTIFFS use or have used to investigate and identify infringing works on Hotfile.com.

*See* Platzer Decl. Ex. 4, 5, 6, 7, and 8 at Request No. 7.[4]

### B.  Type of Protection the Plaintiffs Request

Plaintiffs request that the Court enter an order quashing this request and protecting against disclosure through both party and third-party discovery of the methods and technologies that Plaintiffs and their Antipiracy Vendors use to locate infringing files on the Internet generally, as well as on Hotfile specifically.[5]

### C.  Reasons Supporting the Requested Protection

#### 1.  Plaintiffs' Methods for Locating Infringing Files are Irrelevant.

For the reasons stated above, *supra* Parts I.A-I.B, the methods Plaintiffs and their Antipiracy Vendors use to locate infringing files on the Internet (and, specifically, on Hotfile) are not relevant to any claim or defense.  How *Plaintiffs* locate infringing content online is irrelevant to *Defendants'* conduct.

#### 2.  Plaintiffs' Methods for Finding Infringing Files Online Would be Compromised by Disclosure.

Any far-fetched claims of relevance, even if credited, would be outweighed by the prejudice to Plaintiffs of disclosing their Antipiracy Materials.  The internal and confidential methods Plaintiffs and their Antipiracy Vendors use to locate infringing files on the Internet (and, by extension, on Hotfile), as well as the overall legal and business strategy guiding those efforts, depend in large part on their secrecy to be effective. Disclosure of those methods to persons in the business of infringing Plaintiffs' content would severely prejudice Plaintiffs.  The methods Plaintiffs and their Antipiracy Vendors use to locate and identify infringing files online are kept in close confidence because their effectiveness could be compromised were they to became known to the content thieves at whom they are directed.  Plaintiffs are engaged in a continuous cat-and-mouse game with persons engaged in the unauthorized exploitation of Plaintiffs' works online.  These

---

[4] With respect to all requests mentioned in this Motion, Defendants' subpoenas to each Antipiracy Vendor are identical.  As discussed in Part VI *infra*, Defendants have also sought overlapping discovery from Plaintiffs directly, for which Plaintiffs request the same relief.  *See, e.g.*, Platzer Decl. Ex. 3 (Deposition Notice to Plaintiff Warner Bros. Entertainment Inc.) at Topics 4-5.

[5] Plaintiffs do not intend this request to include the evidence Plaintiffs rely upon in this case.  To the extent Plaintiffs' experts or investigators introduce evidence of infringing materials they have located on Hotfile for purposes of this litigation, the Federal Rules of Civil Procedure shall govern the discoverability of such information.

infringers are often highly sophisticated, and routinely restructure their services or make changes to their *modus operandi* to evade or decrease the effectiveness of the studios' antipiracy methods.  In many ways, this is no different than the prejudice to law enforcement if they were compelled to disclose to drug traffickers where law enforcement agents were conducting their stakeouts, or their points of interdiction, or the confidential informants they were using, or the details of the technology they used to detect smugglers' routes into the United States.  The improper disclosure of Plaintiffs' Antipiracy Materials likewise could significantly compromise Plaintiffs' ability (and the ability of Plaintiffs' Antipiracy Vendors) to combat the ongoing online and ever-more sophisticated theft of their works.  *See* Griffin Decl. ¶ 6; Kang Decl. ¶ 8; Zedek Decl. ¶¶ 6-7; Solmon Decl. ¶ 5; Kaplan Decl. ¶¶ 6-7.  For this reason, Plaintiffs invest substantial resources in the design and tailoring of their protocols and technologies for locating infringing material online, and maintain them in close confidence to prevent their disclosure to pirates.  *See* Griffin Decl. ¶ 7; Kang Decl. ¶ 7; Zedek Decl. ¶ 5; Solmon Decl. ¶ 3; Kaplan Decl. ¶ 3.

Rule 26 specifically anticipates that the Court may enter orders to protect trade secret or confidential information, and the courts "have long recognized a qualified evidentiary privilege for trade secrets and other confidential commercial information." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 356 (1979); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001); Fed. R. Civ. P. 26(c)(1)(G).  Here, there is "good cause" for the Court to enter such an order.  Fed. R. Civ. P. 26(c)(1)(A).  Antipiracy technologies are entitled to protection when sought by the very persons against whom they are directed and when their disclosure could compromise their effectiveness.  *See Direct TV, Inc. v. Trone*, 209 F.R.D. 455, 459-60 (C.D. Cal. 2002) (protecting from discovery plaintiff's antipiracy technologies in case where alleged infringer claimed such materials were relevant to its own infringement liability).[6]

---

[6] Protection for Plaintiffs' highly sensitive Antipiracy Materials does not require a showing that the materials constitute trade secrets – the issuance of a protective order under Rule 26, whether the information sought is a trade secret or not, is governed by a "good cause" standard in which the court conducts a "balancing of interests" between disclosure and confidentiality.  *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545,

The potential prejudice from this type of disclosure is obvious and would be immediate.  Courts "have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor."  *Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533, 536 (M.D. Fla. 2003).  Not only does Hotfile "compete" against Plaintiffs for the online distribution of Plaintiffs works, but the documents Defendants seek would provide them, and the blatant pirate sites with which Defendants partner as "affiliates," with a virtual roadmap for evading Plaintiffs' antipiracy efforts and freely proliferating Plaintiffs' works.  *See generally Hope for Families & Community Service, Inc. v. Warren*, No. 3:06-CV-1113-WKW, 2009 WL 1066524, *2 (M.D. Ala. Apr. 21, 2009) (approving denial of discovery that would have provided "a virtual roadmap for competition").  Discovery of confidential antipiracy technologies has been expressly denied in similar circumstances.  In *Direct TV*, 209 F.R.D. at 458, a defendant in an infringement action demanded discovery of the "plaintiff's efforts to prevent [its] system from being accessed by others without authorization," 209 F.R.D. at 458, arguing, just like Defendants do here, that it needed the information about the plaintiff's antipiracy technologies to, *inter alia*, refute "Plaintiff's allegations of knowledge, willfulness and malice" in the design of the defendant's systems, as well as to prove that defendant did not design its product with "improper purpose."  *Id*. at 458, 460.  The court, however, balancing the need for discovery against the harm threatened by its disclosure, concluded that the defendant's claims as to the relevance of the plaintiff's antipiracy materials were insufficient to show a "need for" the requested information.  *Id*. at 460.  The Court should reach the same result here.[7]

---

1547 (11th Cir. 1985).  In any event, Plaintiffs' antipiracy enforcement technologies in fact also meet the commonly accepted criteria for trade secrets: Plaintiffs "consistently treat[] the information as closely guarded secrets," they "represent[] substantial value to [Plaintiffs]," they "would be valuable to [Plaintiff's] competitors," (in the sense that pirates compete with Plaintiffs for the online distribution of the Plaintiffs' copyrighted works), and they "derive[] [their] value by virtue of the effort of [their] creation and lack of dissemination."  *Chicago Tribune Co.*, 263 F.3d at 1313-14.  *See* Griffin Decl. ¶¶ 5-7; Kang Decl. ¶¶ 7-9; Zedek Decl. ¶¶ 4-7; Solmon Decl. ¶¶ 3-5; Kaplan Decl. ¶¶ 4, 6-8.

[7] While Defendants have argued that Plaintiffs' concerns can be ameliorated by using the 'attorneys' eyes only' provision of the existing Protective Order, an 'attorneys' eyes only' provision is not a cure for a lack of relevance.  *See, e.g.* Fed. R. Civ. P. 26(b)(1) (providing that the scope of discovery is limited to material that is "relevant" to a party's

3. <u>Plaintiffs' Methods for Finding Infringing Files Online are Not Necessary to Defendants' Case.</u>

Even if Defendants could make a showing of some relevance – which they cannot – Defendants still would not be entitled to Plaintiffs' Antipiracy Materials.  Their avowed reason for asking for this information, i.e., to determine the feasibility and burdens of different methods for identifying infringing content on their site, can be better satisfied by other evidence gathered from other sources.  Accordingly, Defendants cannot make a showing of necessity with respect to this request.  *See* Advisory Committee Notes to the 1970 Amendment to Rule 26(c) ("[while] courts have not given trade secrets automatic and complete immunity against disclosure, [they] have in each case weighed their claim to privacy against the need for disclosure").

The availability of other evidence from other sources weighs strongly against Defendants' demands here.  Defendants can readily establish the feasibility and burdens of different methods for identifying infringing content on their site simply by having an expert analyze and testify about their system and the available technologies that could be utilized on, or adapted for, Defendants' system.  Third parties widely advertise their content identification technology for identifying video content,[8] and sites that host user-uploaded content have developed[9] or licensed from commercial vendors[10] methods for

---

"claim or defense"); *Fambo v. Alterra Healthcare Corp.*, No. 08-CV-795S, 2010 WL 335013, *3 (W.D.N.Y. Jan. 22, 2010).  And even a "careful and extensive" protective order is "not as safe as nondisclosure," and there should be "no occasion to rely on them, without a preliminary proper showing justifying production" of sensitive material. *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 260 (S.D.N.Y. 2008).  Moreover, once a party's attorney "learns of the confidential information, it would be manifestly impossible for him to perform the mental gymnastic of putting the information out of his consciousness," and "would be no more able to do that than the boy in Mark Twain's story who was told to stand in a corner and not to think of a white elephant."  *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 410 (N.D. Ill. 2006); *see also Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) ("professional integrity" of counsel and "promise to store the trade secret documents in a locked file cabinet" were insufficient, as court must inquire whether "counsel could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents").

[8] *See, e.g.,* "Vobile – Powering the Internet Video Economy®," http://www.vobileinc.com/.

[9] *See, e.g.,* YouTube, "Content ID," http://www.youtube.com/t/contentid.

preventing infringing files from being uploaded onto their systems.  Indeed, Plaintiffs have offered to provide Defendants with nonprivileged documents in Plaintiffs' possession that analyze the effectiveness of video content identification software (also known as "video fingerprinting"), the technology commonly used for this precise purpose.  *See* Platzer Decl. ¶ 16.[11]

### III.   PLAINTIFFS' INTERNAL METHODS AND CONFIDENTIAL CRITERIA FOR ISSUING NOTICES OF INFRINGEMENT SHOULD BE PROTECTED FROM DISCOVERY

Defendants have also demanded similar documents related to the internal processes and confidential criteria Plaintiffs and their Antipiracy Vendors use to issue takedown notices.  This discovery should be denied on grounds of relevance for substantially the same reasons as stated above.[12]

### A.  Specific Item of Discovery

Request No. 8: ALL DOCUMENTS including instructional or training manuals, and guidelines showing or in any way reflecting any processes, policies, procedures, protocols, or algorithms that YOU or any PLAINTIFFS use or have used in formulating, sending, or deciding to send DMCA TAKEDOWN NOTICES to Hotfile.com.

*See* Platzer Decl. Ex. 4, 5, 6, 7, and 8 at Request No. 8.[13]

### B.  Type of Protection the Plaintiffs Request

Plaintiffs request that the Court enter an order quashing this request, and protecting against disclosure, through both party and third-party discovery, of the

---

[10] *See, e.g.,* Dailymotion, "Content Protection," http://www.dailymotion.com/us/legal/contentprotection.

[11] Plaintiffs also offered to seat 30(b)(6) witnesses to testify as to Plaintiffs' antipiracy processes at a high level of generality that would not compromise Plaintiffs' security, but Defendants declined the offer.  *See* Platzer Decl. ¶ 16.

[12] Additionally, the vast majority of the Antipiracy Materials Defendants are seeking would be subject to an attorney-client privilege or the work product doctrine.  These are inherently legal decisions constituting and reflecting the advice of counsel and/or work conducted in anticipation of litigation or criminal referrals involving websites engaged in online piracy, and communications by counsel and persons acting under their supervision.  Plaintiffs will address such privilege and work product claims as appropriate under the Federal and Local Rules.

[13] *See also* Platzer Decl. Ex. 3 (Deposition Notice to Warner) at Topic No 13.

methods and criteria for issuing takedown notices on the Internet generally, as well as to Hotfile specifically.[14]

## C. Reasons Supporting the Requested Protection

### 1. Plaintiffs' Methods and Criteria for Issuing Notices of Infringement are Irrelevant.

For the reasons stated above, *supra* Parts I.A-B, the strategy, methods and criteria that Plaintiffs and their Antipiracy Vendors use to send notifications of infringement are not relevant to any issue in this action. Copyright owners are under no obligation to send notifications of infringement *at all*. If they send notices, whether the notices comply with the statutory elements is a determination made from the face of the notice, and Defendants' compliance with notices depends exclusively on Defendants' conduct. Defendants' efforts to get behind Plaintiffs' notices, therefore, should be rejected.

### 2. Plaintiffs' Methods and Criteria for Issuing Notices of Infringement Would be Compromised by Disclosure.

Even if there were some marginal relevance to the methods and criteria that Plaintiffs and their Antipiracy Vendors use to issue notifications of infringement, which there is not, the prejudice Plaintiffs would suffer from disclosure would outweigh any relevance and compel the requested order of protection. Disclosure of Plaintiffs' notice strategies could result in the ready circumvention of Plaintiffs' enforcement efforts.

Plaintiffs' instructions regarding the issuance of takedown notices, and the Antipiracy Vendors' workflows reflecting the same, reveal Plaintiffs' strategic decisions about the conditions under which to use the optional Section 512(c)(1)(C) takedown notice procedure, including for example Plaintiffs' enforcement priorities, the works Plaintiffs have prioritized for notices, the sites and/or type of sites that are monitored, and time windows in which works are prioritized for notices. Those instructions are kept confidential. *See* Kaplan Decl. at ¶ 8; Griffin Decl. at ¶ 7; Solmon Decl. at ¶ 4; Zedek Decl. at ¶ 4; Kang Decl. at ¶ 9. Content thieves familiar with Plaintiffs' takedown process could take steps to avoid triggering Plaintiffs' notifications of infringement. For instance, information regarding Plaintiffs' enforcement priorities could allow thieves to

---

[14] Plaintiffs request the same protection with respect to Defendants' other requests seeking the same information. *See* Platzer Exs. 4-8 at Request No. 20 ("Documents reflecting…how PLAINTIFFS discern between infringement and fair or authorized use of their copyrighted works on the Internet").

more freely infringe other works, or to structure their stolen files in a way that evades Plaintiffs' notices. *See* Kaplan Decl. at ¶ 6; Griffin Decl. at ¶ 6; Solmon Decl. at ¶ 5; Zedek Decl. at ¶ 6; Kang Decl. at ¶ 8. Continuing the drug trafficking analogy, clearly law enforcement efforts would be severely compromised if criminals knew the time windows in which law enforcement intended to step up investigative activities, what particular drugs they would be prioritizing for enforcement, which suspected dealers police were declining to arrest in order to avoid compromising ongoing investigations, and what levels of possession would trigger enforcement. The discovery Defendants seek similarly would prejudice Plaintiffs by compromising their enforcement efforts, without offering any information relevant to the claims or defenses in this litigation.

## IV. PLAINTIFFS' INTERNAL POLICIES OR DECISIONS REGARDING WHEN NOT TO USE THE TAKEDOWN NOTICE PROCEDURE, IF ANY, SHOULD BE PROTECTED FROM DISCOVERY

Duplicative of their demands for Plaintiffs' policies regarding the issuance of takedown notices is Defendants' fishing expedition for any instances in which Plaintiffs declined to use the optional Section 512(c)(1)(C) procedure to issue a notification of infringement to Hotfile. This information is wholly irrelevant to Defendants' liability here. Those demands should be denied for the same reasons.

### A. Specific Item of Discovery

Request No. 3: DOCUMENTS related to any instance in which YOU or any PLAINTIFF decided not to send a DMCA TAKEDOWN NOTICE with respect to hotfile.com, including but not limited to any DOCUMENTS reflecting any reason for not sending the DMCA TAKEDOWN NOTICE.

*See* Platzer Decl. Ex. 4, 5, 6, 7, and 8 at Request No. 3.

### B. Type of Protection the Plaintiffs Request

Plaintiffs request that the Court enter an order protecting from discovery documents reflecting Plaintiffs' and their Antipiracy Vendors' decisions regarding circumstances under which they decided not to use the optional Section 512(c)(1)(C) takedown notice procedure.

### C. Reasons Supporting the Requested Protection

Defendants' attempt to subpoena this information is redundant of Request No. 8 and should be quashed for the same reasons. As explained above, *supra* at Part III.C.1, there is no relevance whatsoever to Plaintiffs' decisions whether or not to send takedown

notices.  Moreover, for the same reasons discussed above, *supra* at III.C.2, Plaintiffs' *reasons* for sending or not sending takedown notices reflect sensitive internal antipiracy strategies and, if improperly disclosed, would leave Plaintiffs' antipiracy enforcement efforts vulnerable to circumvention.

## V.   PLAINTIFFS' HIGHLY SENSITIVE COMMUNICATIONS WITH THEIR ANTIPIRACY VENDORS' REGARDING INFRINGEMENT ON HOTFILE SHOULD BE PROTECTED FROM DISCOVERY

Defendants have also demanded essentially all communications between and among Plaintiffs and their Antipiracy Vendors regarding the takedown notice process. Even leaving aside the extent to which this request calls for privileged communications, *see* n. 12 *supra*, these communications have no independent relevance to this action.

### A.  Specific Item of Discovery

Request No. 1: DOCUMENTS reflecting, referring to or discussing each and every DMCA TAKEDOWN NOTICE that YOU sent to HOTFILE or LEMURIA on behalf of any or all PLAINTIFFS, including DOCUMENTS sufficient to show without limitation:
   a. The individual who sent the DMCA TAKEDOWN NOTICE;
   b. The IP address used to send the DMCA TAKEDOWN NOTICE;
   c. The specific PLAINTIFF on whose behalf the DMCA TAKEDOWN NOTICE was sent;
   d. The date on which each DMCA TAKEDOWN NOTICE was sent;
   e. The recipient of each DMCA TAKEDOWN NOTICE;
   f. The physical or email address to which the DMCA TAKEDOWN NOTICE was sent;
   g. The content file which was requested to be taken down;
   h. The bases for each DMCA TAKEDOWN NOTICE;
   i. HOTFILE's or LEMURIA's response to the DMCA TAKEDOWN NOTICES referenced in (1) above.

*See* Platzer Decl. Ex. 4, 5, 6, 7, and 8 at Request No. 1.[15]

### B.  Type of Protection the Plaintiffs Request

Plaintiffs are producing all takedown notices sent to Hotfile and their records of those notices and Hotfile's response.  *See* Platzer Decl. ¶ 16.  Defendants, however, are further demanding all documents "referring to or discussing" Plaintiffs' antipiracy process and strategy, such as their communications with and instructions to antipiracy

---

[15] *See also* Platzer Decl. Ex. 3 (Deposition Notice to Warner) at Topic 14.

vendors and internal antipiracy personnel.  Plaintiffs respectfully request an order protecting these materials from discovery.[16]

### C.  Reasons Supporting the Requested Protection

There is no conceivable relevance to documents "referring to or discussing" Plaintiffs' takedown notices.  As explained *supra*, the substantive information that Defendants are seeking about how Plaintiffs' internal enforcement programs and takedown process work and what strategic decisions Plaintiffs have made in structuring and operating that process is irrelevant, highly sensitive, and in substantial part subject to attorney-client privilege or attorney work product protection.  All that is relevant are the notices themselves.  Plaintiffs' blanket request for all documents "referring to or discussing" Plaintiffs' antipiracy enforcement efforts is duplicative of Defendants' other requests and should be denied for the same reasons.  *See supra* Part IV.

## VI.  DEFENDANTS' OTHER OVERLAPPING DISCOVERY REQUESTS SEEKING THE SAME INFORMATION SHOULD BE QUASHED.

In addition to the specific categories and requests listed in this memorandum, Defendants' party and third-party discovery requests are very broad, and repeatedly ask for the same sort of irrelevant, sensitive, and privileged information concerning Plaintiffs' antipiracy enforcement efforts in a variety of different ways.  These include Requests No. 11 and 19 to the Antipiracy Vendors[17] and Requests No. 9, 11, 12, 37, 38, and 44 to Plaintiffs.[18]  Plaintiffs are already objecting to such requests in the context of

---

[16] This request applies equally to Defendants' other requests seeking the same information, *e.g.* Platzer Decl. Ex. 4 at Request No. 9 ("All correspondence between YOU and any or all PLAINTIFFS or their agents reflecting, referring to or discussing hotfile.com").

[17] *See* Platzer Exs. 4-8 at Requests No. 11 and 19 ("DOCUMENTS sufficient to show the technologies that YOU and any or all PLAINTIFFS use to identify, remove, block, or filter access to copyright infringing works on hotfile.com or to generate DMCA TAKEDOWN NOTICES …,"); ("ALL DOCUMENTS regarding HOTFILE, Anton Titov or Lemuria").

[18] *See* Platzer Decl. Ex. 1 at RFP No. 9 ("All DOCUMENTS concerning any and all takedown notices sent by YOU or your DMCA agents to HOTFILE"); RFP No. 11 ("All DOCUMENTS concerning the difficulty or challenges or identifying infringing content on the Internet"); RFP No. 12 (All DOCUMENTS evidencing any visits to hotfile.com or browsing of hotfile.com by YOU or your agents"); Platzer Decl. Ex. 2 at RFP No. 37 ("All DOCUMENTS and COMMUNICATIONS that REFER or RELATE to YOUR

party discovery.  To the extent these requests cover the same Antipiracy Materials discussed above, they are objectionable for the same reasons.  Plaintiffs therefore respectfully request that the Court also protect from discovery the same Antipiracy Materials insofar as they are requested by Defendants' other party and third-party discovery requests that overlap with those explicitly listed herein.

**CONCLUSION**

For the reasons stated, Plaintiffs respectfully request that the Court enter the requested protective order as per the attached Proposed Order.


Dated: July 22, 2011                    Respectfully submitted,

                                         By: /s/ Karen L. Stetson

                                         Karen L. Stetson
                                         GRAY-ROBINSON, P.A.
                                         1221 Brickell Avenue
                                         16th Floor
                                         Miami, Fl 33131
                                         Telephone: (305) 461-6880
                                         Facsimile:  (305) 461-6887


MOTION PICTURE ASSOCIATION            JENNER & BLOCK LLP
 OF AMERICA, INC.                     Steven B. Fabrizio (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)    Duane C. Pozza (*Pro Hac Vice*)
15301 Ventura Blvd.                   Luke C. Platzer (*Pro Hac Vice*)
Building E                            1099 New York Ave., N.W.
Sherman Oaks, CA 91403                Suite 900
Phone:  (818) 995-6600                Washington, DC 20001
Fax:  (818) 285-4403                  Telephone: (202) 639-6000
                                      Facsimile:  (202) 639-6066

                                      *Attorneys for Plaintiffs*

---

investigations … of any file-hosting websites…"); RFP No. 38 ("All DOCUMENTS and COMMUNICATIONS that REFER or RELATE to YOUR investigations …of HOTFILE…"); RFP No 44 ("All DOCUMENTS and COMMUNICATIONS with YOU and any of YOUR agents in any context, including but not limited to anyone acting on YOUR behalf on anti-piracy matters, that REFER or RELATE to HOTFILE").

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22d Day of July, 2011, I served the following

documents on all counsel of record on the attached service list via the Court's CM/ECF

filing system:

**Memorandum of Law in Support of Plaintiffs' Motion For a Protective
Order Regarding Plaintiffs' Antipiracy Investigations and Enforcement
Procedures**

I further certify that I am admitted to the United States Court for the Southern District of

Florida and certify that this certificate of Service was executed on this date at Miami, FL.

By: /s/ Karen L. Stetson
Karen L. Stetson

## SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and
Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*