# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.

_____/

## DECLARATION OF BETSY ZEDEK

I, BETSY ZEDEK, declare as follows:

1.  I hold the position of Counsel, Content Protection at Fox Entertainment Group ("Fox"), which is responsible for legal enforcement with respect to copyrights held by the Plaintiff Twentieth Century Fox Film Corporation. I make this declaration in support of Plaintiffs' Motion for a Protective Order. Unless otherwise indicated, I have personal knowledge of the facts described herein.

2.  Fox contracts with outside antipiracy vendors to locate unauthorized Fox content on the Web, to gather information regarding such infringement for potential civil litigation or criminal referrals, and to issue legal notices of infringement. These vendors' primary role is to find and gather information for the Fox Legal Department about potential litigation targets, and

1432960

they are supervised by and report to attorneys in the Legal Department and their staff working at such attorneys' direction.

3. Fox's legal investigations resulting in issuance of notifications of infringement to Hotfile are part of its larger legal enforcement efforts involving a class of websites known as "download hubs" (sometimes also referred to as "cyberlockers") and the linking sites that organize links to motion picture and television programming hosted on download hubs; disclosing Fox's means of investigating and issuing notices to Hotfile would also show how Fox investigates and issues notices to multiple other websites not party to this case, including several that Fox is monitoring as potential targets for civil litigation or criminal referral.

4. Fox's strategy for choosing these targets is kept highly confidential. Each vendor's agreement with Fox includes a strict confidentiality provision. Fox's strategy for selecting litigation targets is determined by attorneys within the Legal Department and is shared within Fox only in a restricted and privileged and confidential context.

5. Fox's strategy for choosing potential litigation targets is developed by myself and my colleagues in the Fox Legal Department. We devote considerable time (and Fox accordingly devotes substantial resources in terms of attorney hours) to developing and updating this strategy and setting priorities. All of the instructions the vendors receive from Fox about what content to search for, at what time, and in what order of priority come from lawyers in the Fox Legal Department or from other persons in the Legal Department that we supervise. The same is true of instructions regarding the conditions under which the vendors should send takedown notices, and to whom such notices should be sent. These instructions are based on legal advice and strategic decisions made by counsel – including considerations of how Fox's takedowns would affect potential future litigation; what kinds of takedowns are likely to result in compliance,

2

1432960

noncompliance, or counternotices; the scope of Fox's rights to demand removal of particular categories of files; which types of websites should be monitored; how resources should be allocated among different sources of infringement; which particular titles should be protected; and how the protection of those titles should be prioritized. Fox's instructions to our vendors are intended to be strictly privileged and confidential and are communicated with our vendors in a privileged and confidential manner. We view the work done by our vendors as an extension of our Legal Department, simply using outside resources instead of in-house resources within the Legal Department.

6. Among the reasons why the details of Fox's anti-piracy strategy, enforcement priorities, and enforcement instructions are kept in confidence is that they would be highly valuable to thieves that infringe Fox's works online. If infringers knew where and how Fox searches for infringing content, they could move their activities or modify their websites to frustrate Fox's enforcement efforts. And if they knew which titles Fox searches for and when, or the circumstances under which the location of such content triggers enforcement action such as takedown notices or litigation, they could exploit those enforcement priorities by making content available, or available during certain times or at certain locations, when the infringement is less likely to be detected or result in enforcement.

7. In my experience, persons and businesses engaged in online piracy are constantly working to make their activities harder for copyright owners to detect. For example, infringers have taken to encrypting or password-protecting content, which makes it more difficult for copyright owners to scan websites for infringing content. Similarly, as video fingerprinting technologies have evolved to recognize copyrighted works embodied in digital files, infringers have progressively found different ways of manipulating videos in order to make them less

recognizable to such software. And I have seen infringers modify their websites in order to make it more difficult for a particular software program used by Fox and its vendors to identify the online locations at which infringing files are hosted. It is my opinion, based on my experience with antipiracy work and my familiarity with the techniques used by vendors acting under the direction of Fox's legal department, that infringers familiar with the processes Fox's vendors use to find Fox content could take similar steps to frustrate those efforts.

      I declare under penalty of perjury that the foregoing is true and correct. Executed in the State of California this 21st day of July, 2011.

_____
Betsy Zedek