UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN


DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.

_____/


**PLAINTIFFS' MOTION AND MEMORANDUM TO COMPEL RESPONSES TO
REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Plaintiffs hereby move to compel production of certain documents and interrogatory responses, in response to their Requests For Production Nos. 5(i), 17, 28, 31, and Interrogatory Nos. 4 and 10.[1]  Plaintiffs seek documents that relate directly to their copyright infringement claims based upon defendants' operation of www.hotfile.com ("Hotfile").  Plaintiffs have already had to file one motion to compel documents and interrogatory responses as a result of defendants' refusal to produce entire categories of data, source code, and financial information that are central to the allegations against them.  The discovery that defendants refuse to produce is directly relevant to, and indeed routinely produced in, online infringement cases.

Defendants are refusing to provide discovery regarding the following relevant categories of evidence:

- Documents that would establish what was uploaded and downloaded by Hotfile's owners, officers, directors, employees, and contractors in their roles as Hotfile employees.  This type of evidence is routinely relied upon in online copyright infringement cases to show a defendant's knowledge of and intent to induce infringement.  Defendants' refusal to produce such documents is based on the Stored Communications Act ("SCA"), which as discussed *infra*, has no application here.

- Documents and information related to communications with potential investors of Hotfile.  Through communications with and business plans provided to potential investors, website operators often describe their operations in a manner that bears directly on their knowledge of copyright infringement on their site.  These documents are relevant because they almost certainly will discuss defendants' business model and plans for how to earn a profit.

- Information regarding the reasons for termination of users.  This evidence is relevant to defendants' claim that they qualify for safe harbor under the Digital Millennium Copyright Act ("DMCA"), which requires defendants to have implemented a policy providing for the termination of repeat infringers.  17

---

[1]The parties agreed to extend the time to bring motions on the parties' first set of discovery requests in order to further meet and confer.  At the Court's July 8, 2011 status conference, the Court extended the time to file any motions to compel that would otherwise be out of time under the Local Rules to July 22, and in an Order dated July 21, 2011 (Dkt #103), the Court further extended the time to file such motions until August 3.

U.S.C. § 512(i).  But defendants have refused to answer fully an interrogatory explaining the reasons for user terminations, *i.e.*, whether users were terminated for reasons related to copyright infringement or for other unrelated reasons. Defendants should be compelled to answer or be precluded from relying on any of the identified terminations as evidence of their compliance with the DMCA.

- Documents pertaining to the relationship between defendant Hotfile Corp. and any other entity involved in the operation of Hotfile, including Hotfile's wholly owned subsidiary Hotfile, Ltd.  Plaintiffs are entitled to discovery regarding other entities potentially involved in the infringing acts alleged in the Complaint. This evidence is relevant to determine whether any entities should be added as defendants.

- Technical information (*e.g.*, table names and headings) indicating what data Hotfile routinely collects about its users, content, and activity on the website. This information is not apparent from any external analysis of defendants' website and is relevant to whether Hotfile was routinely aware of infringing activity occurring on its website.

The parties have met and conferred on multiple occasions regarding these requests and have been unable to reach a resolution.  Plaintiffs therefore move to compel production of responses to Requests For Production Nos. 5(i), 17, 28, and 31, and Interrogatory Nos. 4 and 10.

## I.     DEFENDANTS SHOULD PRODUCE CONTENT FILES UPLOADED AND DOWNLOADED BY KEY HOTFILE PERSONNEL.

### A.     Plaintiffs' Request for Production No. 28:

All documents reflecting the use of the Hotfile service by any employee, owner, shareholder, principal, officer, director, agent, business partner, or contractor of any Defendant or Hotfile Entity, including:

    a. the Hotfile usernames or other Hotfile account information maintained by any such individual or entity;

    b. The files uploaded by any such individual or entity;

    c. The files downloaded by any such individual or entity; and

    d. Any payments made or received by any such individual or entity through the Hotfile "Affiliate" programs.

### B.     Defendants' Objections to Plaintiffs' Request for Production No. 28:

Hotfile incorporates by reference its general objections to this request for production of documents.  Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents."  Hotfile further objects to this request as overbroad, unduly

2

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/or the approximately 150 titles as to which infringement is claimed in the Complaint.  Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions.  Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws insofar as it covers private or personal files that users have uploaded to and/or stored on Hotfile.  Hotfile further objects to this request as duplicative of Request For Production No. 1., Request for Production No. 2, Request For Production No. 3, and Request For Production No. 5.  Hotfile objects to Request No 28(c) as unreasonably burdensome as a practical matter; Hotfile remains willing to meet and confer regarding the request if Plaintiffs are willing to bear the cost of production.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, and to the extent that such documents are located through a reasonable and diligent search, comprising:

1.    Hotfile's Response to Plaintiffs' Interrogatory No. 1;
2.    The files uploaded by the Hotfile employees, owners, or contractors listed in Hotfile's Response to Plaintiffs' Interrogatory No. 1;
3.    Payments made or received by the aforementioned Hotfile employees, owners, or contractors.

**C.    Grounds Assigned for Defendants' Objections:**

The grounds are set forth in the objections.  Additionally, notwithstanding these responses, defendants have indicated that they will not produce any uploaded or downloaded files, citing the Stored Communications Act.

**D.    Bases for Compelling Production as to Request No. 28:**

Plaintiffs seek to discover what content files have been uploaded and/or downloaded by key personnel involved with Hotfile, including Hotfile's owners, officers, directors, employees, contractors, and agents.  Such evidence is relevant to whether defendants' personnel themselves engaged in blatant copyright infringement, which would be directly relevant to whether defendants knew of or induced infringement.  Courts in numerous cases have relied upon evidence of defendants' or their employees' own use of the service in finding knowledge of infringement and intent to facilitate infringement.  *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 n.5 (9th Cir. 2001) (defendants' knowledge of infringement established, in part, by evidence that defendants themselves downloaded copyrighted songs from the system); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 153, 155 (S.D.N.Y. 2009) (finding of inducement of infringement and contributory infringement based partially on evidence that defendants' own employees downloaded copyrighted content from the service).  Further, such

evidence may disclose direct infringement by defendants of plaintiffs' copyrights.  *See* Order on Motion to Dismiss (Dkt #94), at 4, 7 (granting dismissal of plaintiffs' direct infringement claim without prejudice, and suggesting that evidence that "Hotfile uploaded copyrighted material" would support such a claim); *see also Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578 SVW (JCX), 2009 WL 6355911, at *9 (C.D. Cal. Dec. 21, 2009) (finding of direct infringement – as a predicate for secondary infringement claims – where defendant admitted to downloading copyrighted works from the system).

In fact, discovery produced by defendants shows that one of their key personnel, a contractor who provided email and DMCA support, was paid thousands of dollars as one of Hotfile's Top 500 "Affiliates," to upload and promote files that were heavily downloaded by other users.  Declaration of Duane C. Pozza in Support of Plaintiffs' Motion to Compel ("Pozza Decl." ) ¶¶ 3-4; Exs. A & B.  By defendants' math, each Affiliate is paid an average of $0.002 for each download of a file uploaded by the Affiliate.  *See* Defs.' Opp. to Motion to Compel (Dkt # 81) at 11.  Thus, Hotfile's own employee/contractor was paid by Hotfile for uploading and promoting content that was downloaded ***over two million times***.  These "Affiliate" payments provided a direct incentive for uploads of copyrighted works.  Indeed, *after* the complaint was filed, Hotfile apparently changed its policies to terminate users for copyright infringement and terminated approximately 65% of its top 500 most highly paid Affiliates for repeat copyright infringement.  Pozza Decl. ¶ 5; Ex. C.  Plaintiffs are entitled to discovery as to whether that contractor or other key personnel were similarly encouraged to upload copyrighted content to Hotfile.

Defendants belatedly object to producing uploaded or downloaded files on the basis of the Stored Communications Act.  That objection is meritless.  First, the SCA is wholly inapplicable to the discovery sought here.  The SCA, in relevant part here, limits disclosure of information stored on a "remote computing service," defined as "the provision to the public of computer storage or processing services by means of an electronic communications system."  18 U.S.C. § 2711(2); *see also id*. § 2702(a).  Thus, to the extent that such information is contained within the files possessed by Hotfile personnel themselves (*e.g.*, employee work computers), defendants' SCA objection should be rejected because the SCA does not apply to content files located within employees' or other individuals' files.  *See Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1204-05 (S.D. Cal. 2008) (SCA does not apply to electronic communications

stored on computer hard drives as such communications are not in "electronic storage" as defined by the SCA). Just as the SCA would not bar the disclosure of email communications from defendants' employees, the SCA does not bar disclosure of the employee content files that were uploaded or downloaded to the Hotfile website.

Second, defendants are required to produce documents in their "possession, custody, or control," Fed. R. Civ. P. 34(a), which encompasses those files that are in the possession of Hotfile personnel or contractors acting at the direction of Hotfile. *See Flagg v. City of Detroit*, 252 F.R.D. 346, 364 (E.D. Mich. 2008) ("[A] corporate party has control over, and thus may be compelled to produce, documents in the possession of one of its officers or employees, and . . . the officer or employee has a fiduciary duty to turn such materials over to the corporation on demand."); *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558-59 (S.D.N.Y. 1994) (corporation may be compelled to turn over documents within officer's possession if documents were created in connection with that officer's functions as a corporate employee and corporation has proprietary interest in those documents). Defendants have suggested that obtaining this evidence from employee or other individual files is a sort of "end run" around the SCA, but the opposite is true – evidence in the possession of an individual does not become protected from disclosure merely because it was also uploaded to a remote computing service.

Third, even assuming that the SCA applies (although it does not), the SCA would not bar disclosure of these files because Hotfile personnel must consent to the disclosure of this information. Specifically, because these files were uploaded or downloaded by Hotfile personnel, such personnel can consent to the disclosure of this information. 18 U.S.C. § 2702(b)(3) (SCA permits disclosure where "originator" has consented to disclosure); *see also Shefts v. Petrakis*, 758 F. Supp. 2d 620, 635 (C.D. Ill. 2010) (no violation of the SCA where employee consented to disclosure); *Thayer v. Chiczewski*, No. 07 C 1290, 2009 WL 2957317, at *6-7 & n.7 (N.D. Ill. Sept. 11, 2009) (granting motion to compel over SCA objection because a party – who was both the subscriber and author/recipient of the emails sought in discovery – could consent to disclosure, whether those communications were stored by an electronic communications or remote computing service). All Hotfile users, including its personnel, have consented to disclosure of content files because all Hotfile users explicitly consent to disclosure of uploaded content files as part of Hotfile's Privacy Policy and Terms of Service. *See* Reply in Supp. of Mot. to Compel (Dkt #85) at 2-3; *Deering v. CenturyTel, Inc.*, No. CV-10-63-BLG-

RFC, 2011 WL 1842859, at *2-3 (D. Mont. May 16, 2011) (user agreement to online privacy policy sufficient consent under the Electronic Communications Privacy Act ("ECPA"), of which the SCA is a part); *Mortensen v. Bresnan Commc'n, LLC*, NO. CV 10-13-BLG-RFC, 2010 WL 5140454, at *5-6 (D. Mont. Dec. 13, 2010) (consent under ECPA established based on online subscriber agreement and privacy notice); *Perkins-Carillo v. Systemax, Inc*., No. CIV. 1:03CV2836-TW, 2006 WL 1553957, at *15-16 (N.D. Ga. May 26, 2006) (consent under ECPA satisfied by agreeing to workplace policy that permitted monitoring).

In any event, courts have held that "a party may be compelled to give its consent" under the SCA, and secure the requisite consent from its employees, where the information sought is "potentially relevant and otherwise discoverable under the standards of Rule 26(b)(1)." *Flagg*, 252 F.R.D. at 363. Accordingly, Hotfile can be required to compel its personnel to consent to disclosure under the SCA.

Finally, defendants suggest that identification and production of all files downloaded by Hotfile personnel would be unduly burdensome (though they have no similar objection to identifying uploaded files). However, it should not be difficult to identify what content files were downloaded because that information is in the possession of Hotfile's personnel themselves. Defendants should be able to identify downloads without even searching through download log files or other data. Further, to the extent that defendants argue that review of log files to identify downloads would be unduly burdensome, this claim is as yet unsubstantiated, as defendants have refused to produce any indication of the volume of such files to review. Nor have they substantiated that the volume of responsive content files would be voluminous. This evidence is highly relevant and must be produced.

## II.    DEFENDANTS SHOULD PRODUCE DOCUMENTS AND INFORMATION RELATED TO POTENTIAL INVESTORS.

### A.    Plaintiffs' Request for Production and Interrogatory:

Plaintiffs' Request for Production No. 5(i):

All documents pertaining to: . . . (i) Any investors or potential investors in any Hotfile Entity.

Plaintiffs' Interrogatory No. 4:

Identify each person who has provided, provides, has promised to provide, or with whom Defendants have had any discussions about providing capital or financing for any Hotfile Entity, and the nature, amount, and timing of any such capital or financing.

**B.**     **Defendants' Objections to Plaintiffs' Discovery:**

Defendants' Objections to Plaintiffs' Request for Production No. 5:

Hotfile incorporates by reference its general objections to this request for production of documents.  Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents."  Hotfile further objects to this request on the basis of the attorney client privilege and attorney work-product doctrine.  Hotfile further objects to this request to the extent it seeks documents not in the possession, custody, or control of Hotfile. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to "Hotfile users" as that term is defined in the Definitions and Instructions.  Plaintiffs' definition includes every internet user who has ever accessed the Hotfile website, regardless of whether such user has uploaded or downloaded files from Hotfile.  It is impossible for Hotfile to know the identity of every person who has ever accessed the Hotfile website.  Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrases "technical assistance," features and functionality," "attracted," and "nature and types."  Hotfile further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation.  Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding all files ever uploaded to, stored on and/or downloaded Hotfile.com, without any limitation whatsoever.  Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks documents about Hotfile generally without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/or the approximately 150 titles as to which infringement is claimed in the Complaint.  Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks documents pertaining to other litigation not relevant to the present dispute.  Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws by seeking private, personal and/or financial information.  Hotfile further objects to this request on the grounds that it seeks confidential and private information that is protected by, among other things, the Electronics Communications Privacy Act, 18 U.S.C. § 2510 *et seq*. and the Stored Communications Act, 18 U.S.C. § 2701 *et seq*.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, and to the extent that such documents are located through a reasonable and diligent search, comprising:

> ….
> 9.     Documents sufficient to show the investors in Hotfile, if any exist;
> ….

Defendants' Objections to Plaintiffs' Interrogatory No. 4:

Hotfile incorporates by reference it general objections to this interrogatory.  Hotfile further objects to this interrogatory as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions.  As currently defined, that term would include any entity, business venture, or

organization subject to any Defendant's control (assuming any such entity, business venture or organization exists), irrespective of whether such entity has any relation or relevance to the present dispute.  Hotfile further objects to this interrogatory on the grounds that it seeks information not reasonably calculated to lead to the discovery admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the issues in the present litigation.  Hotfile further objects to this interrogatory on the grounds that it seeks private and/or confidential financial information.

      Subject to those general and specific objections, Hotfile responds as follows:

      Hotfile Corp. has three shareholders: [CONFIDENTIAL RESPONSE].

    **C.**    <u>**Grounds Assigned for Defendants' Objections:**</u>

The grounds are set forth in the objections.

    **D.**    <u>**Bases for Compelling Production as to Request No. 5(i) and Interrogatory No. 4:**</u>

Defendants have refused to produce information regarding the identities of potential investors, as well as documents pertaining to those potential investors.  Plaintiffs have narrowed their requests to seek only (1) the identities of those potential investors; and (2) documents concerning presentations, solicitations, materials provided to, and communications with potential investors.  Such documents are relevant because they almost certainly will discuss defendants' business model – how defendants intended to profit from the Hotfile service, including from infringement.

Such documents are routinely relied upon to demonstrate liability in online infringement cases.  *See, e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 978 (C.D. Cal. 2006) (materials developed for potential investors and business partners showed defendants sought to provide access to copyrighted works); *Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW), -- F. Supp. 2d. --, 2011 WL 1742029, at *16 (S.D.N.Y. May 2, 2011) (draft of offering memorandum showing that service depended on providing access to copyrighted content).  *Cf. Fung*, 2009 WL 6355911, at *14 (communication to potential advertiser showed that defendants' business model depended on massive infringing use).  In this case, as noted above, the requested information will show, *inter alia*, that defendants' business model is built on infringement.  Courts routinely find that this kind of evidence is directly relevant to a finding of infringement.  *See, e.g.*, *Grokster*, 454 F. Supp. 2d at 989 (presentations made by sales executive demonstrated that business model relied on infringement of copyrighted content); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940

8

(2005) (whether business model is based on profiting from providing access to infringing content is principal issue pertaining to inducement liability).

Further, plaintiffs have requested identification of and contact information for potential investors in case the produced documents indicate that further discovery is necessary from those individuals. Defendants have suggested in the meet-and-confer process that plaintiffs wish to "harass" the potential investors in some way, but that is unfounded. Plaintiffs do not anticipate adding these individuals as defendants, or deposing them absent some basis in the document production. In any event, plaintiffs are well within their rights in seeking identifying and contact information for potential witnesses. *See Wesley v. Muhammad*, No. 05 Civ. 5833(GEL)(MHD), 2008 WL 4386871, at *5 (S.D.N.Y. Sept. 17, 2008) (interrogatories can be used to identify potential witnesses).

**III.  DEFENDANTS SHOULD PROVIDE ADDITIONAL INFORMATION REGARDING TERMINATION OF USERS.**

   **A.    Plaintiffs' Interrogatory No. 10:**

Identify each user whose access to the Hotfile website any Defendant or Hotfile Entity has ever terminated, limited, suspended, or otherwise penalized, and for each state:

   a.  The specific reason(s) therefore;
   b.  The date on which such action was taken; and
   c.  Whether the user was believed or alleged to be a copyright infringer or a repeat infringer. For purposes of responding to this Interrogatory, Plaintiffs do not believe that Defendants may lawfully withhold information on the basis that it contains identifying information regarding specific Hotfile users. Without prejudice to Plaintiffs' right to seek the identity and additional information pertaining to such users, Defendants may, in the first instance, limit their identification of users in response to this Interrogatory by identifying the users' usernames, Hotfile user identification number, and geographic location (such as by providing country, city and state information and/or sufficient unredacted IP address information).

   **B.    Defendants' Objections to Plaintiffs' Interrogatory No. 10:**

Hotfile incorporates by reference its general objections to this interrogatory. Hotfile further objects to this interrogatory as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. As currently defined, that term would include any entity, business venture, or organization subject to any Defendant's control (assuming any such entity, business venture or organization exists), irrespective of whether such entity has any relation or relevance to the present dispute. Hotfile further objects to this interrogatory as overbroad and unduly burdensome to the extent that it seeks information pertaining to "Hotfile users" as that term is defined in the Definitions and Instructions. Plaintiffs' definition includes every internet user who has ever accessed the Hotfile website, regardless of whether such user has uploaded or downloaded files from Hotfile. It is impossible for Hotfile to know the identity of every person

who has ever accessed the Hotfile website.  Hotfile further objects to this interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding users that have been terminated for reasons unrelated to the alleged copyright infringement upon which this dispute is based.

Subject to those general and specific objections, Hotfile responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Hotfile will produce documents sufficient for Plaintiffs to ascertain the Hotfile identification number of terminated users, and, to the extent the information is available, the date of the terminations and the reason(s) for the terminations.

**C.  Grounds Assigned for Defendants' Objections:**

The grounds are set forth in the objections.

**D.  Bases for Compelling Further Response as to Interrogatory No. 10:**

Defendants have refused to fully respond to Interrogatory No. 10, which requests the identification of users who have been terminated, limited, suspended or otherwise penalized by defendants, and the reasons and dates for such penalties.  Instead, defendants cite to Fed. R. Civ. P. 33(d) and point to a single document that defendants claim lists user terminations.  But the document does not disclose the basis for these terminations.  Instead, it contains only cryptic snippets for some (but not all) the terminations – words such as "nazi," "cheater," "cheater checks," "spam," and "shared," as the "reasons" for termination.  Pozza Ex. C.  That response is insufficient.  Without further explanation or clarification from defendants, such terms are indecipherable.

A party seeking to produce records in lieu of responding to interrogatories under Fed. R. Civ. P. 33(d) must make four showings: (1) the information sought must actually be available in the specified records; (2) the producing party must specify the actual records in which the information can be found; (3) responding to the interrogatory in the traditional manner would impose a burden on the responding party; and (4) it would be no more burdensome for the requesting party to go through the documents in order to identify the answers to the interrogatories.  *See* 8B Charles Alan Wright et al., *Federal Practice and Procedure* § 2178 (3d ed. 2010); *see also Hillyard Enterprises, Inc. v. Warren Oil Co.*, No. 5:02-CV-329, 2003 WL 25904133, at *2 (E.D.N.C. Jan. 31, 2003).

To comply with Rule 33(d), the information provided must enable plaintiffs to identify the answers responsive to the interrogatory.  *See, e.g.*, *Covad Commc'ns Co. v. Revonet, Inc.*, 258 F.R.D. 17, 19 (D.D.C. 2009), *subsequent determination*, 262 F.R.D. 1 (D.D.C. 2009); *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 564 (D. Kan. 1997).  Where, as here, the records

produced are unintelligible, or where such records cannot be readily deciphered by the plaintiff without further information, a responding party may not rely on Rule 33(d).  *See, e.g. Hege v. Aegon USA, LLC*, C/A No. 8:10-cv-01578-GRA, 2011 WL 1119871, at *3 (D.S.C. Mar. 25, 2011) (Rule 33(d) response is "inappropriate where the interrogatory calls for the exercise of particular knowledge and judgment on the part of the responding party" (internal quotations omitted)); *Powell v. Home Depot, U.S.A., Inc.*, No. 07-80435-CIV, 2010 WL 4116488, at *31 (S.D. Fla. Sept. 14, 2010) (defendant failed to comply with requirements of Rule 33(d) where documents specified contained "only numbers, alphanumeric codes, or other unidentified terms as opposed to any information which would show, directly, the information sought"), *adopted by*, 2010 WL 4102933 (S.D. Fla. Oct. 18, 2010).  Plaintiffs cannot determine what the words "cheater checks" or "nazi," for example, mean in this context.

The specific reasons why defendants terminated users are directly relevant to defendants' DMCA defenses in this case.  To be eligible for any DMCA defense, defendants must have reasonably implemented a policy of terminating repeat copyright infringers.  17 U.S.C. § 512(i). It seems very likely that defendants have failed to meet this DMCA requirement.  Defendants appear to have terminated few if any users for copyright infringement prior to the filing of this action.  Pozza Ex. C.  And, yet, in response to the filing of the complaint in this action, defendants abruptly terminated approximately 65% of their top 500 Affiliates as repeat infringers.  Pozza Decl. ¶ 5.  Without more, those facts, if confirmed, would almost certainly show that defendants did not implement a repeat infringer policy that complies with the DMCA. Defendants want to rebut this argument by relying on this list and arguing that at least some of the users were terminated for reasons related to copyright infringement.  As such, details about this list, which will also show defendants' right and ability to police the site to control infringement and the extent to which defendants have exercised that ability, are relevant and discoverable.  *See, e.g.*, *Napster*, 239 F.3d at 1023-24 (ability to terminate users and prevent users from engaging in infringing activity relevant to determination of vicarious copyright infringement); *Usenet.com*, 633 F. Supp. 2d at 157 (defendants' ability to terminate users who post "spam" or download pornography demonstrates "right and ability to control" users' actions).

11

IV.    **DEFENDANTS SHOULD PROVIDE ADDITIONAL INFORMATION REGARDING OTHER HOTFILE OPERATORS.**

     A.    <u>**Plaintiffs' Request for Production No. 31:**</u>

All documents pertaining to the relationship between or among each Hotfile Entity, including:

   a.  Any officers, directors, employees, or other persons acting or purporting to act on the behalf of, or under the direction or control of, any Hotfile Entity who
       i.  Also serve as an officer, director, or employee of another Hotfile Entity, or
       ii. have performed any work for another Hotfile Entity.
   b.  Any common ownership, including documents reflecting whether any shareholder or other owner of one Hotfile Entity is also a shareholder of another Hotfile Entity; and
   c.  Any property (including real property, bank accounts, office equipment, or computer equipment) owned or otherwise held, controlled, or used by more than one Hotfile Entity, whether in whole or in part, and whether directly or indirectly;
   d.  Any agreements, contracts, undertakings, or understandings among or between any Hotfile Entities, and all amendments thereto;
   e.  Any financial arrangements, revenue sharing, and accountings between any Hotfile Entities, including any revenue, income or other valuable consideration, or sources thereof, exchanged between any Hotfile Entities;
   f.  The provision of any services by any Hotfile Entity to any other Hotfile Entity; and
   g.  Each Hotfile Entity's role in operating the Hotfile website.

     B.    <u>**Defendants' Objections to Plaintiffs' Request for Production No. 31:**</u>

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it is not limited to nor does it relate to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation. Hotfile further objects to this request on the grounds that it seeks financial information that is private, personal, confidential and commercially sensitive. Hotfile further objects to this request as duplicative of Request for Production No. 29.

     C.    <u>**Grounds Assigned for Defendants' Objections:**</u>

The grounds are set forth in the objections.

     D.    <u>**Bases for Compelling Production as to Request No. 31:**</u>

Plaintiffs seek documents that would establish the extent to which any other entity

(defined here as a "Hotfile Entity"), including defendant Hotfile Corp.'s wholly owned

subsidiary Hotfile, Ltd., has been involved in the operation of Hotfile.  Among the documents
plaintiffs seek are documents showing the extent to which Hotfile and any Hotfile Entity had
overlapping officers, directors or employees, as well as agreements or documents disclosing
financial arrangements or joint property holdings between Hotfile and any Hotfile Entity, or the
provision of services to Hotfile by any Hotfile Entity.[2]  This information is relevant to whether
Hotfile Ltd., or any other Hotfile Entity, should be added as a defendant.  It is also relevant to
whether defendants are using any Hotfile Entity to direct the operations of Hotfile.

Defendants, however, argue that the request documents are irrelevant because the only
corporate entity named as a party is Hotfile Corp.  Not so.  Instead, there is substantial evidence
suggesting that Hotfile Corp.'s wholly owned subsidiary is involved to some extent in Hotfile's
operations.  Indeed, based on publicly available evidence, plaintiffs are aware that at least some
Hotfile Affiliates receive their payments directly from Hotfile, Ltd. (not Hotfile Corp.) and that
Hotfile Ltd. (not Hotfile Corp.) is the party to the contract with Hotfile's internet service
provider for key hosting services.  *See* Pozza Exs. D & E ¶ 5.  As such, plaintiffs are certainly
entitled to discovery regarding other entities potentially involved in the wrongdoing alleged in
the complaint, especially given the fact that plaintiffs have named Doe defendants who are
allegedly involved in the operation of Hotfile.  Compl. ¶ 19; *see, e.g., Fleury v. Cartier Int'l*, No.
C-05-4525 EMC, 2006 WL 2934089, at *4 (N.D. Cal. Oct. 13, 2006) (plaintiffs entitled to
conduct discovery on entities affiliated with the defendant "[b]ecause there is a possibility that
[such] entities . . . might properly be made parties in this litigation"); *Nowak v. Lexington Ins.
Co.*, No. 05-21682 CIV-MORENO, 2006 WL 3613766, at *2-3 (S.D. Fla. June 12, 2006)
(plaintiff entitled to discovery regarding relationship between parent and defendant, the extent of
control exercised by the parent corporation, and the financial relationship between the entities
where there was a showing of an "apparent interconnection" between the parent and defendant);
*Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1275 (S.D. Fla. 2004) (plaintiff entitled to
conduct further discovery to identify the affiliated entity of a defendant and to "determine its
relationship to this dispute"), *subsequent determination on*, 350 F. Supp. 2d 1019 (S.D. Fla.
2004).

---

[2] Defendants have indicated that they will provide, at most, a limited number of documents
responsive to this request – agreements between Hotfile Entities and documents sufficient to
show that Hotfile, Ltd. is a wholly owned subsidiary of Hotfile Corp. – which are insufficient to
fully disclose the extent to which each Hotfile Entity is involved in the operation of Hotfile.

Discovery into documents about Hotfile, Ltd.'s role (or the role of any other entity involved in the operation of Hotfile) is straightforward and should be permitted.

## V.   DEFENDANTS SHOULD PRODUCE DATABASE TABLE AND HEADING NAMES.

### A.   Plaintiffs' Request for Production No. 17:

Schema for all databases used in operation of all versions of the Hotfile Website.

### B.   Defendants' Objections to Plaintiffs' Request for Production No. 17:

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks all scheme for all databases used in operation of all version of the Hotfile Website, without any limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, especially insofar as it seeks all databases used in all versions of the Hotfile Website, regardless of whether such databases are from time periods relevant to the present litigation. Plaintiffs cannot plausibly argue that all schema for every Hotfile database is relevant to this action. Hotfile further objects that this request seeks Hotfile's trade secrets (i.e., schema to its databases), which are confidential, proprietary and commercially sensitive. Hotfile further objects that the phrase "[s]chema for all databases" is vague and ambiguous.

### C.   Grounds Assigned for Defendants' Objections:

The grounds are set forth in the objections.

### D.   Bases for Compelling Production as to Request No. 17:

Plaintiffs seek production of certain portions of "database schemas" that Hotfile maintains, which will show what kinds of data Hotfile collects about its content, users, and other activity on its site. A database consists of "tables" of data, and each table can be interpreted like a spreadsheet – as a series of rows divided into columns, where each column has a heading. For example, defendants may maintain users' login names and email addresses in a table named "Users" with column headings "Login" and "Email." Plaintiffs here have narrowed their request for database schemas to identification of the table names (e.g., "Users") and the heading names (e.g., "Email") for each column in each table. To the extent that the names are descriptive of the data collected, the schema will provide a map of the kinds of data Hotfile maintains in its database – for example, by showing what kinds of data that Hotfile collects about users.

This information would not disclose the contents of the data; it would only show the kinds of data that Hotfile collects about activity on the site, which is not apparent from external

observation.  For example, through production of user communications in this case, plaintiffs have discovered that Hotfile keeps track of the "last download" for certain users.  Pozza Ex. F. (showing a "lastdl" for files with titles of various copyrighted works).  Hotfile certainly collects a variety of other data, visible to the Hotfile operators accessing the databases, but not viewable externally.

Defendants object on relevance grounds, arguing that much of the data Hotfile collects is irrelevant to the case.  Not so.  Instead, such information is directly relevant to defendants' knowledge of activity occurring on their site, such as knowledge of each user's "last download" or other download or upload activity of users that Hotfile routinely records.  *See Fung*, 2009 WL 6355911, at *17 (knowledge of user activity relevant to defendants' knowledge for purposes of claiming DMCA defense); *Usenet.com*, 633 F. Supp. 2d at 155 (knowledge of user activity relevant for defendants' knowledge for purposes of contributory infringement).  These database schemas are also reasonably necessary for plaintiffs to narrowly target any additional requests for data they may have, in addition to the data that plaintiffs have requested and that is the subject of a pending motion to compel.  At the same time, responding to this narrow request will not be burdensome because plaintiffs in this request merely seek production of the table names and headings.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel should be granted.


Dated: August 3, 2011                    Respectfully submitted,

                                         By: /s/ Karen L. Stetson
                                         Karen L. Stetson
                                         GRAY-ROBINSON, P.A.
                                         1221 Brickell Avenue
                                         16th Floor
                                         Miami, Fl 33131
                                         Telephone: (305) 461-6880
                                         Facsimile:  (305) 461-6887


MOTION PICTURE ASSOCIATION          JENNER & BLOCK LLP
  OF AMERICA, INC.                  Steven B. Fabrizio (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)  Duane C. Pozza (*Pro Hac Vice*)
15301 Ventura Blvd.                 Luke C. Platzer (*Pro Hac Vice*)
Building E                          1099 New York Ave., N.W.

Sherman Oaks, CA 91403                    Suite 900
Phone:  (818) 995-6600                    Washington, DC 20001
Fax:  (818) 285-4403                      Telephone: (202) 639-6000
                                          Facsimile:  (202) 639-6066

                                          *Attorneys for Plaintiffs*

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(a)(3), U.S. District Court for the

Southern District of Florida, counsel for plaintiffs have conferred with counsel for defendants

Hotfile Corp. and Anton Titov in a good faith effort to resolve the issues raised in this Motion

without court action, but have been unable to do so, as described in the accompanying

Declaration of Duane C. Pozza.


Dated:  August 3, 2011                    By: /s/ Karen L. Stetson
                                              Karen L. Stetson

                                          GRAY-ROBINSON, P.A.
                                          Karen L. Stetson (FL Bar No. 742937)
                                          1221 Brickell Avenue
                                          Suite 1600
                                          Miami, FL 33131
                                          Phone: 305-416-6880
                                          Fax: 305-416-6887

MOTION PICTURE ASSOCIATION           JENNER & BLOCK LLP
OF AMERICA, INC.                     Steven B. Fabrizio (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)   Duane C. Pozza (*Pro Hac Vice*)
15301 Ventura Blvd.                  Luke C. Platzer  (*Pro Hac Vice*)
Building E                           1099 New York Ave., N.W.
Sherman Oaks, CA  91403              Suite 900
                                     Washington, DC 20001
                                     Phone: 202-639-6000
                                     Fax: 202-639-6066

                                     *Attorneys for Plaintiffs*

17

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd Day of August, 2011, I served the following

documents on all counsel of record on the attached service list via their email address(es) as set

forth on the Court's CM/ECF filing system:

> **Plaintiffs' Motion and Memorandum to Compel Responses to Requests for Production of Documents and Interrogatories**

By: /s/ Karen L. Stetson
Karen L. Stetson

**SERVICE LIST**

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**


FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*


BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*


RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*