UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-CIV-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.

_____/

**DEFENDANTS' MOTION AND MEMORANDUM OF LAW
TO COMPEL RESPONSES TO DISCOVERY FROM PLAINTIFFS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

LEGAL ARGUMENT ........................................................................................... 1

I.   THE PLAINTIFFS' "INVESTIGATIVE MATERIALS" OBJECTION IS
     IMPROPER .................................................................................................. 1

II.  THE PLAINTIFFS SHOULD PRODUCE DOCUMENTS RELATED TO THE
     ALLEGEDLY INFRINGING FILES ......................................................... 4

     A.   Basis for Objections ........................................................................... 5

     B.   Basis for Compelling Production ....................................................... 5

III. THE PLAINTIFFS SHOULD IDENTIFY ALL FILES LOCATED ON
     HOTFILE, PAST AND PRESENT, THAT SUPPOSEDLY INFRINGE ....... 8

     A.   Basis for Objections ........................................................................... 9

     B.   Basis for Compelling Production ....................................................... 9

          1.   Identifying Known Instances of Infringement Is Not Premature .............. 9

          2.   Identifying Currently Known Instances of Infringement Is Not
               Unduly Burdensome ................................................................. 11

          3.   Identifying Known Instances of Infringement Is Plainly Relevant ......... 11

          4.   Work Product .......................................................................... 11

               a.   Identification of Known Infringements Is Not Work
                    Product ....................................................................... 12

               b.   Even Supposing Non-Sued-Upon Known Infringements
                    Are Work Product, Plaintiffs Have Waived Protection .............. 13

                    (1)  Plaintiffs have waived protection by disclosing to
                         Hotfile other alleged infringements not sued upon .......... 13

                    (2)  Plaintiffs have waived protection by putting at issue
                         the availability of allegedly infringing material on
                         Hotfile ................................................................ 13

IV.  THE PLAINTIFFS SHOULD PRODUCE DOCUMENTS RELATED TO FAIR
     USE OF COPYRIGHTED MATERIALS ON THE INTERNET .................. 14

     A.   Basis for Objections ......................................................................... 15

     B.   Basis for Compelling Production ..................................................... 15

V.   THE PLAINTIFFS SHOULD PRODUCE DOCUMENTS REGARDING
     VOLUNTARY POSTING OF MATERIALS ON THE INTERNET ............ 17

     A.   Basis for Objections ......................................................................... 17

     B.   Basis for Compelling Production ..................................................... 17

VI.    THE PLAINTIFFS SHOULD PRODUCE DOCUMENTS REGARDING DMCA POLICIES FOR WEBSITES THAT THEY OWN OR CONTROL ............................. 18

    A.    Basis for Objections ............................................................................. 18

    B.    Basis for Compelling Production ........................................................ 18

CONCLUSION ................................................................................................................ 19

## INTRODUCTION

Although this case involves Plaintiffs' allegations of copyright infringement occurring on the website of Defendants Hotfile Corporation and Anton Titov (collectively, "Hotfile"), Plaintiffs refuse to disclose their investigation of those infringements.  Although Plaintiffs assert that they repeatedly issued "takedown" notices in attempts to remove offending content from the Hotfile website, Plaintiffs refuse to provide complete evidence regarding their takedown efforts. Although Plaintiffs bear the burden of identifying the allegedly-infringed works, Plaintiffs explicitly refuse to disclose all infringements of which they are currently aware.  Plaintiffs also refuse to disclose the extent to which they understand file-hosting on the internet to be fair use, the extent to which they have voluntarily shared their copyrighted files on the internet, and their own policies for copyright protection on their websites.  In short, Plaintiffs – the five Hollywood studios with their essentially indefatigable resources – continue to make discovery so onerous for Hotfile as to attempt murder-by-litigation.  (Where Hotfile has produced 2,832,725 pages of documents in this case, as of last month one of the Plaintiffs had produced only 91 pages, and another Plaintiff has produced only 2,872 pages.)  Plaintiffs cannot justifiably impose discovery on Hotfile while avoiding it themselves.  This Court should enforce Hotfile's discovery against Plaintiffs for the reasons set forth below.

## LEGAL ARGUMENT

## I.      THE PLAINTIFFS' "INVESTIGATIVE MATERIALS" OBJECTION IS IMPROPER.

Throughout the Plaintiffs' responses to Hotfile's discovery requests, they make a blanket objection to producing any "Investigation Materials." *See* Exhibit A, Pl.'s Response to Def.'s First Set of Requests for Production, RFP Nos. 1, 5, 6, 12, 14 & 29.[1]  Based on this objection the Plaintiffs withhold documents showing their work in relation to the sending of takedown notices for copyright infringement, which bears critical importance in this case.  The objection reads as follows:

> Plaintiffs further specifically object to this Request in that it calls, in very
> substantial part, for documents that constitute and reflect Plaintiffs' and their

---

[1] Pursuant to Local Rule 26.1(h)(2), Hotfile moves to compel documents pursuant to these requests—which Plaintiffs oppose on a blanket objection—without copying each request and response into the body of this Motion.

1

counsels' investigation of Hotfile and the other identified persons and entities in preparation for this litigation (the "Investigation Materials"). The Investigation Materials are irrelevant to any issue in this case, and the Request is not reasonably calculated to lead to the discovery of admissible evidence, and appears designed solely to harass. Accordingly, the Plaintiffs will not produce Investigation Materials. Additionally and independently, the Investigation Materials were created by or at the direction of counsel for purposes of this litigation, and reflect attorney legal advice and mental impressions, and information collected by or at the direction of counsel for purposes of enabling counsel to provide legal advice, and are therefore protected under the attorney-client privilege and the attorney work product doctrine. Finally, the Investigation Materials reveal trade secret processes and methodologies by which the MPAA and the Plaintiffs investigate online piracy and enforce their copyrights against online piracy, the disclosure of which to alleged infringers risks compromising Plaintiffs' ability to protect their copyrights online. *See DirectTV, Inc. v. Trone*, 209 F.R.D. 455 (C.D. Cal. 2002). For these additional independent reasons, Plaintiffs will not produce investigation materials.

*See, e.g.*, Pl.'s Resp. at 5-6.

The Plaintiffs' main justification for this objection in the parties' discussions was that they refused to share their investigative documents with "pirates." This of course assumes Hotfile is a copyright infringer, the ultimate fact that the Plaintiffs bear the burden of proving. Blocking discovery of key information going to that ultimate question by assuming the ultimate answer defeats the point of discovery.

Even if this information is sensitive and a "trade secret," the Plaintiffs' agreed to a protective order with "attorneys' eyes only" protection. *See* Protective Order (Dkt. 68). Plaintiffs cannot justifiably refuse to produce documents based on the assumption that the undersigned counsel will flout the protective order—a position without any foundation whatsoever. S*ee Preferred Care Partners Holding Corp. v. Humana, Inc.*, 2008 WL 4500258, at *3 (S.D.Fla. October 3, 2008) (party resisting discovery did not establish harm from disclosure where "agreements may be redacted…under the terms of the Confidentiality Order").

The relevance of this information cannot reasonably be disputed:

- **Hotfile Seeks Basic Facts About the Files Users Are Hosting, The Context Of How They Are Being Used, And Whether They May Be Infringing.** *See* RFP 6, 12, 14 & 29 (asking for basic factual materials: screen captures, downloads, etc.). The Plaintiffs allege infringement by Hotfile's users – necessarily calling into question the users' activities. Even if this information appears in Plaintiffs' so-called

CASE NO. 11-20427-CIV-JORDAN

"Investigative Materials," these facts bear upon fundamental questions – *e.g.*, did users (or did Plaintiffs' investigators) employ Hotfile to host or share specific files allegedly copyrighted by Plaintiffs, were those files subject to "fair use," and were allegedly-infringing files "left up" by the Plaintiffs?  Plaintiffs' first-hand interactions, downloads, and factual discussions regarding Hotfile content have key relevance.  Plaintiffs, who carry "the burden of policing copyright infringement," scrutinized Hotfile for "well over a year" prior to filing their Complaint.  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007).  Their relevant information should be produced.

- **Facts about How The Plaintiffs "Investigate" Hotfile Are Fundamental To The Plaintiffs' Theories of Indirect Infringement.**  *See* RFPs 1, 5.  Plaintiffs claim that some combination of "knowledge" and "control" supports a finding of contributory or vicarious infringement here.  Complaint ¶¶ 44, 62.  It is well settled, however, that "knowledge" and "control" over copyright infringement in the cyberlaw context depend on the ability to identify specific infringing files. *See Viacom Intern. Inc., v. YouTube, Inc.*, 718 F.Supp.2d 514 (S.D.N.Y 2010).  This is not a simple exercise, because any given use can be fair use, authorized use, or licensed use.  "[I]f investigation of 'facts and circumstances' is required to identify material as infringing, then those facts and circumstances are not 'red flags'" of infringement. *UMG Recordings, Inc. v. Veoh Networks Inc*., 665 F. Supp. 2d 1099, 118-09.   Thus, the Plaintiffs' own investigation bears upon of what sort of investigation Hotfile supposedly should have done to investigate infringement provides a way for Hotfile to prove that it should not be imputed to have "knowledge" of infringement.  *See Religious Technology Center v. Netcom On-Line Communication Servs., Inc*., 907 F. Supp. 1361 (N.D. Cal. 1995).  Additionally, Plaintiffs' theory of "inducement" rests upon the allegation that Hotfile has designed its hosting service to overwhelm the Plaintiffs' ability to send takedown notices.  Complaint Section E & ¶ 37-38.   This theory only works if the Plaintiffs are in fact overwhelmed.  If instead discovery demonstrates that the Plaintiffs are fully capable of sending sufficient numbers of takedown requests— and indeed Hotfile has provided them customized systems to do this instantaneously, which the Plaintiffs have roundly praised for two years—then

CASE NO. 11-20427-CIV-JORDAN

the Plaintiffs' theory of inducement fails.   In short, by making their own supposed

helplessness in investigating Hotfile an issue in this case, Plaintiffs cannot now

justifiably block discovery of just how capable they actually are.

- **Investigative Materials Are Critical To Hotfile's 17 U.S.C. § 512(f)**
  **Counterclaim.**  Hotfile expects to file a counterclaim asserting that Plaintiffs made
  knowing misrepresentations in their takedown notices and usage of Hotfile's Special
  Rightsholder Accounts.  No credible argument exists that Plaintiffs' "Investigation
  Materials" lack relevance to this claim.

For all of these reasons, Plaintiffs should produce the materials set forth in Request Nos.

1, 5, 6, 12, 14 & 29, regardless of their so-called "Investigation Materials" privilege.[2]

## II.  THE PLAINTIFFS SHOULD PRODUCE DOCUMENTS RELATED TO THE ALLEGEDLY INFRINGING FILES.

Defendants' Request No. 5 and Plaintiffs' objections are set forth below:

**REQUEST NO. 5:**

All DOCUMENTS that REFER or RELATE to any file that YOU allege was or is
present on hotfile.com that YOU allege infringes or infringed YOUR copyrights.[3]

---

[2]  Plaintiffs' citation to *DirectTV, Inc. v. Trone*, 209 F.R.D. 455 (C.D. Cal. 2002) is inapt.  In that case, the court ruled that the defendant—accused of manufacturing devices designed to illegally decrypt the plaintiff's television system—did not need access to specific technical documents describing plaintiff's encryption technology because defendant made "general, conclusory allegations" regarding the relevance of its ill-defined defenses that its actions were not willful, that it did not manufacture the devices, and that it did not know of plaintiff's technology.  *Id.* at 459-460.  Here, since Plaintiffs allege that Hotfile is liable, in part, because its website is purportedly designed specifically to "stymie" Plaintiffs' enforcement efforts, evidence regarding Plaintiffs' enforcement efforts is plainly relevant, as Hotfile cannot plausibly deny such an allegation without evidence as to what, exactly, constitutes Plaintiffs' enforcement efforts.  Moreover, unlike the present case, there is no indication in *DirectTV* that the parties were governed by a confidentiality order that would limit disclosure of purportedly sensitive trade secrets to attorneys' eyes only, like the order we have in this case.  Accordingly, the *DirectTV* court did not consider the argument that Hotfile is making now—that attorneys' eyes only protection prevents prejudice due to the production of purported trade secret information.  Indeed that is generally the main purpose of attorneys' eyes only protection. *See, e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992).

[3] In the meet and confer process, Defendants narrowed the information sought in Request for Production No. 5 (beyond what Plaintiffs agreed to produce)  to (1) database records and spreadsheets regarding takedown notices sent to Hotfile by Plaintiffs, (2) all communications regarding takedown notices that were sent (including communications with anti-piracy vendors

4

**PLAINTIFFS' RESPONSE TO REQUEST NO. 5:**

Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein. Plaintiffs object that the Request is vague as to "allege," insofar as it is unclear whether the Request seeks information regarding all instances of Defendants' infringement of the illustrative works identified in Exhibit A to the Complaint, or whether it seeks information regarding each of Plaintiffs' works that have been infringed by Defendants, including works other than those identified specifically in the Complaint. In the event the latter meaning is intended, Plaintiffs object that the Request is overbroad and unduly burdensome in light of the massive scale of Defendants' infringement, which has prompted Plaintiffs to submit in excess of a million notifications of infringement to Defendants in the past two years....[4]

For all of the same reasons as they object to producing Investigation Materials, Plaintiffs further object to this Request on the basis that it calls, in very substantial part, for documents that constitute and reflect Plaintiffs' and their counsels' investigation of Hotfile for purposes of enforcing their copyrights online and enforcement of their copyrights online. Such documents are equally irrelevant, not reasonably calculated to lead to admissible evidence, harassing, privileged and/or subject to the attorney work product doctrine, and trade secrets. With respect to documents other than Investigative Materials, Plaintiffs further object that the Request is premature in that evidence regarding the availability without authorization of Plaintiffs' works on the Hotfile website is in the possession of Defendants and third parties, and Plaintiffs have not yet had the opportunity to take discovery regarding such infringement. Plaintiffs further object that this Request is overbroad and unduly burdensome insofar as it requests "all documents."

   A.      **Basis for Objections**

Set forth in response above.

   B.      **Basis for Compelling Production**

**The Documents Are Relevant.**  The material Hotfile seeks is directly relevant to the

core questions of infringement.  As set forth in section I above, it is relevant to the question of

direct infringement by Hotfile's users, the Plaintiffs' theories of indirect infringement, and

Hotfile's counterclaim.  For example, the Plaintiffs' emails regarding takedown notices will test

the veracity of how onerous or impossible it would be for them to simply "keep up" with sending

taking down notices – which they claim Hotfile has prevented them from doing in order to

induce infringement.  Similarly, documents including the preserved files themselves for which

the Plaintiffs did not send takedown notices will show that the Plaintiffs "leave up" content that

they own.  This could be (a) because they wish to promote these works (including trailers) as

_____

regarding alleged infringement on Hotfile), (3) all documents, including the preserved
downloaded files themselves, for which takedown notices were sent or not sent, and (4)
documents regarding Plaintiffs' investigation of allegedly infringing material on Hotfile.
[4] Plaintiffs' "Investigative Materials" objection appears above at pages 1-2.

Viacom did in the *Viacom v. YouTube* matter, (b) because they view the use as "fair use", or (c) due to errors – all of which corroborates the difficulty anyone – including Hotfile – faces in policing infringement on the Internet and would serve to undermine a claim of knowledge. 718 F.Supp.2d 514. Where files are being placed on a site voluntarily or with authorization, a service provider like Hotfile cannot know and thus should not be imputed with knowledge of whether any given file is infringing. *See UMG v. Veoh*, 665 F. Supp. 2d at 1110 n.13 (where a single artist affiliated with the plaintiff had uploaded one video to Veoh, Veoh could not be charged with knowledge of the infringements that plaintiff alleged.); *id.* at 1109 ("of the 244,205 videos on Veoh labeled 'music video,' 221,842 were *not* identified as unauthorized by the Audible Magic filter.") (emphasis in original).

Such voluntary posting or "leaving up" of works is also indicative of "substantial non-infringing uses," which provide a safe harbor to contributory infringement under *Sony v. Universal*, 464 U.S. 417 (1984).

Seeing the documents regarding the Plaintiffs' investigations is also essential for Hotfile's 17 U.S.C. § 512(f) counterclaim. Since § 512(f) provides a cause of action against a party who "*knowingly* misrepresents that material or activity is infringing," documents showing what investigation the Plaintiffs took regarding noninfringing material that they nonetheless had removed are relevant to establishing their knowledge of their misrepresentations.

**The Work Product and Attorney-Client Privilege Objections Are Improper.**
Plaintiffs broadly claim that discovery of documents and evidence regarding Plaintiffs' efforts to remove copyrighted material from Hotfile would run afoul of "privilege and attorney work product." *See* Exhibit C (meet and confer email exchange between Plaintiffs' and Defendants' counsel).

"[I]n order for the work product doctrine to apply, the party asserting the doctrine must demonstrate that, at the time the documents were drafted, the drafting entity must have anticipated litigation." *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 654 (S.D.Fla. 2009). "Documents which do not refer to work product prepared by an attorney or other agent of a party to aid in forthcoming litigation, and which were generated in the ordinary course of business, are discoverable." *CSX Transp. Inc. v. Admiral Ins. Co.*, 1995 WL 855421, at *2 (M.D.Fla. July 20, 1995). "Therefore, a court must determine when a contested item was created, and why that item was created in assessing the applicability of the work product doctrine." *Schulte v. NCL*

*(Bahamas) Ltd.*, 2011 WL 256542, at *2 (S.D.Fla. January 25, 2011).  Because the material at issue was created in the ordinary course of business and not in anticipation of litigation, it is not subject to work product protection.

Almost by definition, takedown notices are not created "in anticipation of litigation" but rather to <u>avoid</u> litigation.  The takedown process is a non-litigation process that avoids court involvement.  Correspondence between representatives for Warner Brothers and Hotfile confirms that at least some of the Plaintiffs were completely satisfied with Hotfile's takedown procedures and did not contemplate any litigation. *See* Exhibits D, E (Warner Brothers representative praising Hotfile's copyright removal tools and responsiveness to Warner's takedown notices).  Indeed, nearly two years elapsed between Plaintiffs' first takedown notices to Hotfile and the filing of the lawsuit, further evidencing the absence of any "imminent" litigation.  Such a delay indicates that Plaintiffs were not threatening litigation when those documents were created.  *See Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 259 F.R.D. 645, 650 (S.D.Fla. 2009) (denying work product protection for documents created one and one-half years before litigation).

The Plaintiffs also do not make a plausible claim that the takedown notices and related documents were prepared at the behest of attorneys or for the purpose of procuring legal advice and are thus privileged.  The Plaintiffs bear the burden of proving every element required to establish these privileges and must log their claims individually for each relevant document, which they have not done.

Even if documents reflecting Plaintiffs' actions regarding alleged infringing activity on Hotfile are privileged and/or protected work product, discovery of those materials – at least the factual materials -- is appropriate, as the Plaintiffs have put the contents of those documents at issue. *See Stern v. O'Quinn*, 253 F.R.D. 663, 676 (S.D.Fla. 2008).  Throughout the Complaint, the Plaintiffs aver that they have taken steps to remove content from Hotfile but that Hotfile has deliberately frustrated their efforts. *See, e.g.,* Complaint ¶ 38 ("defendants have intentionally attempted to stymie plaintiffs' copyright enforcement efforts"); *see also Id.* ¶ 37.  This places at issue whether the Plaintiffs' efforts have been genuine and whether there are additional measures they could have taken but did not. *See CCBill*, 488 F.3d at 1113 (duty to police infringement rests with copyright owners).  Plaintiffs cannot justifiably base their accusations against Hotfile on Hotfile's alleged frustration of copyright enforcement efforts while refusing to provide

discovery into those efforts.

Furthermore, if evidence shows that the Plaintiffs knew that some material on Hotfile was infringing but refused to notify Hotfile of its existence and seek its removal, Plaintiffs cannot legitimately claim that Hotfile "stymie[d] Plaintiffs' copyright enforcement efforts." Rather, Plaintiffs will be estopped from asserting a claim for copyright infringement based on such material. *See Field v. Google, Inc.*, 412 F.Supp.2d 1106, 1116 (D.Nev. 2006) ("A plaintiff is estopped from asserting a copyright claim if he has…has committed covert acts such as holding out ... by silence or inaction.")  Plaintiffs' enforcement efforts are crucial to testing their assertion that they undertook legitimate copyright enforcement efforts and that they have any right to assert copyright claims regarding the works at issue.

## III.   THE PLAINTIFFS SHOULD IDENTIFY ALL FILES LOCATED ON HOTFILE, PAST AND PRESENT, THAT SUPPOSEDLY INFRINGE.

Defendants' Interrogatory No. 1 and Plaintiffs' responses appear in full below:

### INTERROGATORY NO. 1:

IDENTIFY all files that were or are available through hotfile.com that YOU allege infringes YOUR copyrights, including each of YOUR works that YOU allege the file infringed, identified by name and United States copyright registration number, the URLs at hotfile.com where YOU allege that file was available, and the time period when YOU allege the file was present on hotfile.com.

### PLAINTIFFS' RESPONSE TO INTERROGATORY NO. 1:

Plaintiffs object that the Interrogatory is vague, insofar as it is unclear whether the Interrogatory seeks information regarding all instances of Defendants' infringement of the illustrative works identified in Exhibit A to the Complaint, or whether it seeks information regarding each of Plaintiffs' works that have been infringed by Defendants, including works other than those identified specifically in the Complaint. In the event the latter meaning is intended, Plaintiffs object that the Interrogatory is overbroad and unduly burdensome in light of the massive scale of Defendants' infringement, which has prompted Plaintiffs to submit voluminous notifications of infringement to Defendants in the past two years. In the event the latter meaning is intended, Plaintiffs further object that the Interrogatory is unduly burdensome and interposed to harass Plaintiffs insofar as Defendants are already in possession of Plaintiffs' voluminous takedown notices to Defendants, which indicate the name of the work infringed, the URL on the Hotfile Website at which such work was infringed, and a date on which an infringing copy of the work was available, and the Interrogatory seeks to improperly require Plaintiffs to analyze data already in Defendants' possession. In addition, Plaintiffs are producing their takedown notices and records reflecting use of Hotfile's copyright owner accounts in this litigation, and Defendants are equally capable of analyzing those notices and reports themselves. Plaintiffs further object that, irrespective of which meaning is intended, the Interrogatory is premature at this stage in the litigation. Plaintiffs have been limited to external observation of the

website accessible at www.hotfile.com and the servers, software, and databases operated as part of the website (collectively the "Hotfile Website") and have not yet had the opportunity to identify each and every infringement of their works on the site. Information necessary to identify each such infringing file, and digital records necessary to identify the dates on which each such file was uploaded to the Hotfile Website, and whether and when each such file was removed from the Hotfile Website, are in the possession of Defendants and Plaintiffs do not yet have access to those records. Moreover, insofar as Defendants' own electronic records contain the information sought by this Interrogatory, particularly with respect to the dates on which each infringing file was available on the Hotfile Website, a request to Plaintiffs is an impermissible attempt to transfer to Plaintiffs the burden of analyzing data that Defendants can analyze themselves.

Plaintiffs also object that the Interrogatory is further premature in light of the bifurcation proposal currently pending before the Court in Plaintiffs' portion of the joint Rule 26(f) report. Given the vast scale of Defendants' infringement of Plaintiffs' works, prompting voluminous notifications of infringement since Hotfile began providing service, it would greatly enhance the efficiency of this litigation to limit the initial phase of the litigation to liability based on a manageable subset of works, and therefore to limit discovery to such works in the first phase. While the Court is considering this proposal, it would be premature to proceed with burdensome discovery regarding every instance of infringement of all of Plaintiffs' works that Defendants and their users have ever infringed using the Hotfile service.

### A. <u>Basis for Objections</u>

Set forth in response above.

### B. <u>Basis for Compelling Production</u>

In the extremity of their efforts to impose ruinous discovery on Hotfile while refusing even the most basic discovery themselves, Plaintiffs refuse to identify the works at issue in this suit. *See* Exhibit B (Pls' Resp. to Interrogatory No. 1). This is baseless.

### 1. **Identifying Known Instances of Infringement Is Not Premature**

Plaintiffs claim that they are not required to provide any information about any known infringements until they have fully finalized the entire universe of infringements for which they will seek damages. Such an objection is entirely without basis. Plaintiffs can supplement their response to this interrogatory throughout the litigation; the ability to supplement an interrogatory presupposes the notion that parties are not entitled to withhold evidence in their possession until all such evidence is collected. Furthermore, at this point, Defendants seek information about infringements of which Plaintiffs are currently aware and have not yet identified. That it is somehow "premature" to require identification of alleged infringements of which Plaintiffs are currently aware abandons the meaning of the word "premature." Plaintiffs have presented no

authority for withholding evidence they already possess.[5]

Though it is true that federal pleading standards do not require Plaintiffs to set forth in their complaint a complete and final list of all the alleged infringements upon which they will ultimately seek recovery, Plaintiffs' cannot intentionally and arbitrarily withhold discovery of allegedly infringing works of which they are aware and for which they may later attempt to seek damages. To satisfy pleading requirements in a copyright infringement suit, Plaintiffs' "inclusion of a partial song list and a printout of allegedly offending files [imparts Defendant] with sufficient notice of the basis of Plaintiffs' complaint for copyright infringement" such that dismissal for failure to state a claim is inappropriate. *Arista Records LLC v. Greubel*, 453 F.Supp.2d 961, 965 (N.D.Tex. 2006). But, that Plaintiffs are not required to lock themselves into suing on a limited set of allegedly infringing works at the pleading stage does not warrant Plaintiffs' attempts to block discovery into what additional works on Hotfile they allege are infringing, particularly to the extent that such Plaintiffs are already aware of such infringements. In fact, the cases that establish Plaintiffs' ability to present a sample list of allegedly infringing works to support a claim for infringement explicitly do so on the condition that that "specific information to narrow the issues and copyrights at stake *can be obtained through discovery*." *Id.* at 966 (emphasis added); *see also Sony BMG Music Entertainment v. Braun*, 2008 WL 5135105, at *2 (E.D.Mo. Dec. 5, 2008) ("any confusion as to the specific sound recordings at issue can be obtained through discovery").

Plaintiffs' attempts to withhold facts about alleged infringement occurring on Hotfile of which Plaintiffs are aware amounts to a cynical attempt to deprive Hotfile of critical discovery regarding the scope of the allegations against it and possible defenses. "If plaintiffs know [a specific number of works] have been infringed, they owe a duty of fair notice to specify each one." 6 Patry on Copyright § 19:6 n.3 (2010); *See also CCBill*, 488 F.3d at 1113 ("the burden of…identifying the potentially infringing material [is]…squarely on the owners of the copyright").

---

[5] Moreover, as set forth in previous briefing regarding the impact of the Stored Communications Act on this case, Plaintiffs cannot proceed on infringement claims against a Remote Computing Service like Hotfile without identifying those publicly-available files on Hotfile's website allegedly giving rise to liability. *See* Hotfile's Opp. to Mot. to Compel, (Dkt No. 81) at 3-5.

      **2.**      **Identifying Currently Known Instances of Infringement Is Not Unduly Burdensome**

Plaintiffs further object to identifying currently known infringements not yet identified in their complaint as "unduly burdensome" insofar as Defendants are already in possession of "voluminous takedown notices" that purportedly identify allegedly infringing works of which Plaintiffs are aware. Since Hotfile has evidence that at least one Plaintiff has removed material from Hotfile for which it did not own the relevant copyright, it is impossible for Hotfile to determine through takedown notices alone which files Plaintiffs contend are infringing. If Plaintiffs claim that all known infringing works on Hotfile were identified in takedown notice requests, Defendants are entitled to test that assertion.

      **3.**      **Identifying Known Instances of Infringement Is Plainly Relevant**

During negotiations, Plaintiffs asserted that "the interrogatory is [irrelevant] insofar as it extends beyond infringements Plaintiffs are alleging to infringements of which Plaintiffs may be 'aware' but are not suing upon." *See* Exhibit C (meet and confer email exchange between Plaintiffs' and Defendants' counsel). Such a narrow view of relevance ignores Plaintiffs own allegations. Plaintiffs have continually complained that they have tried and failed to have allegedly infringing material removed from Hotfile by sending takedown notifications. *See* Complaint ¶ 37. Despite these efforts, Plaintiffs allege, Hotfile is still replete with of infringing works. *Id.* at ¶ 60. Plaintiffs themselves have stated that "Hotfile's takedown practices…will be the subject of discovery," and simultaneously protest that their own takedown practices lack relevance. Pls.' Opp. to Mot. to Dismiss, (Dkt. 52) at 12. Defendants are entitled to know whether Plaintiffs are or were aware of alleged infringement on Hotfile that they intentionally refrained from including in takedown notices sent to Hotfile, particularly since such evidence would give rise to estoppel defenses and refute the credibility of any proposed "statistical analysis" of the scope of alleged infringement by files on Hotfile's website.

      **4.**      **Work Product**

Plaintiffs claim that an inquiry into what alleged infringements Plaintiffs already know of but have not yet identified would violate work product protection. *See* Meet and Confer email summary. But, a list of known allegedly infringing files is not work product. Furthermore, supposing work product protection would apply, Plaintiffs have waived protection by putting at issue the number and type of infringements available and by intentionally identifying other

allegedly infringing works not included in the complaint.

a.      **Identification of Known Infringements Is Not Work Product**

"The burden is on the party withholding discovery to show that the documents should be afforded work-product immunity." *Kallas v. Carnival Corp.*, 2008 WL 2222152, at *3 (S.D.Fla. May 27, 2008). "Blanket assertions are not enough to shift the burden to the party seeking discovery." *Highland Tank & Mfg. Co. v. PS Intern., Inc.*, 246 F.R.D. 239, 246 (W.D.Pa. 2007)

Here, Plaintiffs claim that any list of allegedly infringing works beyond those mentioned in the complaint would invade their work product, as such a list would implicitly reveal the attorneys' thought process regarding the works upon which they chose to sue. Plaintiffs have failed to present anything other than blanket assertions that identifying presently known infringing activity would reveal anything about their attorneys' thought processes, nor have they identified what exactly what about the attorneys' thought processes such a list would reveal other than the mere fact that such infringements were intentionally left out of the complaint.

"[N]ot every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product." *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1015 (1st Cir. 1988). "The key factor distinguishing [unprotected selection-based materials] from protected opinion work product is that, even absent compelled disclosure, the information will probably come to light during the course of trial, if not before." *Id.* at 1016. For example, while the substance of an answer to a complaint may reveal certain strategic attorney thought processes by "admitting certain averments, denying the remainder; advancing selective affirmative defenses, eschewing others; asserting one counterclaim, omitting another," there can be no work product protection for the answer because the Defendant will at some point need to prove his affirmative defenses by presenting evidence to support them (and thus, at the same time, declining to provide evidence supporting others). The same principle applies in responses to discovery. *Id.* at 1016 (no justifiable belief that "inferences gleanable" from answer to contention interrogatory will remain private); *See also Calderon v. Reederei Claus-Peter Offen Gmbh & Co.*,  2009 WL 1748089, at *2, 4 (S.D.Fla. June 19,2009) (rejecting objection in a workers' compensation action to producing medical records "generated as a result of" and "relating to" the accident in question on the grounds that producing such records would reveal the attorney's mental impressions). Here, Plaintiffs admit that they be required to identify all the infringements upon which they will be

suing.  As such, Plaintiffs cannot assert that identifying infringements would constitute a violation of work product protection.

### b.     Even Supposing Non-Sued-Upon Known Infringements Are Work Product, Plaintiffs Have Waived Protection

"Just as the party seeking to assert a claim of privilege bears the burden of establishing the existence of the privilege, that same party has the burden of establishing nonwaiver." *Granite Partners v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999).

### (1)     Plaintiffs have waived protection by disclosing to Hotfile other alleged infringements not sued upon

"Voluntary disclosure of a work product document into the hands of the adversary results in waiver of the privilege."  *St. Cyr v. Flying J, Inc.*, 2008 WL 2097611, at *5 (M.D.Fla. May 16, 2008).  Because a "defendant may not use the privilege to…disclose some selected communications for self-serving purposes," Federal Rule of Evidence 502(a) provides that the voluntary disclosure of a particular communication otherwise subject to work product protection constitutes a waiver of the privilege for otherwise protected documents that concern the same subject matter as the voluntarily disclosed documents where fairness requires the documents to be considered together. *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2nd Cir. 1991); Fed R. Ev. § 502(a).

Here, Plaintiffs attempt to identify some instances of known infringement while withholding others.  *See* Exhibit C (meet and confer email exchange between Plaintiffs' and Defendants' counsel).  For example, in their response to Interrogatory No. 1, Plaintiffs state that they have already identified infringements not mentioned in the complaint.  As such, Plaintiffs have already identified "instances [of infringement] on which [Plaintiffs] opted not to sue," waiving work product protection as to identification of those—and other—infringements.  Since it would be arbitrary to allow Plaintiffs to identify certain allegedly infringing works upon which they opted not to sue while withholding others, fairness dictates that Defendants be able to know of all currently known instances of alleged infringement on Hotfile, whether or not Plaintiffs have unilaterally decided to include such works in the complaint or in takedown notices.

### (2)     Plaintiffs have waived protection by putting at issue the availability of allegedly infringing material on Hotfile

"A party waives work-product or privilege protection when (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this

affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense." *Stern*, 253 F.R.D. at 676. Plaintiffs' actions with respect to the "pre-complaint investigation materials" at issue in this Interrogatory satisfy the conditions for a waiver of work product protection.

First, by filing the complaint they have performed an affirmative act which has resulted in this assertion of work product protection. *See Stern*, 235 F.R.D. at 677 (filing of pleading constitutes an affirmative act).

Secondly, Plaintiffs have put the assertedly protected information at issue by making it relevant to the case. Plaintiffs allege that Hotfile is liable for inducing of copyright infringement by virtue of the "overwhelming infringing content available on, and downloaded from, Hotfile." Complaint at ¶ 60. Clearly, Plaintiffs have put at issue the extent of infringing works available on Hotfile. Plaintiffs cannot plausibly argue that they can use the work product protection as a "shield and a sword" by seeking to impose liability because of the wide range of infringing materials available on Hotfile and simultaneously refuse to disclose evidence of all of those infringing materials.

Accordingly, thirdly, Plaintiffs' tactic would deny Hotfile evidence vital to its defense, as the identity of works not giving rise to infringement allegations undermines Plaintiffs' repeated and categorical assertions of rampant infringement on Hotfile's website. By putting at issue the extent of unauthorized material available on Hotfile, Plaintiffs have waived work product protection.

## IV.   THE PLAINTIFFS SHOULD PRODUCE DOCUMENTS RELATED TO FAIR USE OF COPYRIGHTED MATERIALS ON THE INTERNET.

Defendants' Request No. 21 and Plaintiffs' response appears in full below:

## REQUEST NO. 21 :

All DOCUMENTS that REFER or RELATE to audio or video works on the Internet that are not copyrighted or that may be downloaded as fair use.

## PLAINTIFFS' RESPONSE TO REQUEST NO. 21:

Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein. Plaintiffs further object that the Request is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence – Defendants are being sued for infringement of Plaintiffs' copyrighted works on Hotfile. To the extent the existence of "fair

use" of works other than Plaintiffs' works or "works [other than Plaintiffs' works] on the Internet that are not copyrighted" is relevant at all, Plaintiffs' internal documents, opinions, and communications regarding the existence of such works "on the Internet" is neither relevant nor necessary to any claim that Hotfile has concerning noninfringing uses. Plaintiffs further object that insofar as non-copyrighted works or works that may be downloaded as fair use exist "on the Internet," such documents are equally available to Defendants and it is unduly burdensome to request such documents from Plaintiffs. Plaintiffs further object that insofar as non-copyrighted works or works that may be downloaded as fair use exist on the Hotfile Website, such documents are more easily accessible to Defendants than to Plaintiffs, and it is unduly burdensome and harassing to request such documents from Plaintiffs.

Plaintiffs further object on the grounds that the Request is overbroad and vague, and that it would be unduly burdensome to respond to the Request as written given the open-ended nature of the topic and its lack of conduciveness to the creation of intelligible or manageable search terms.

Plaintiffs further object insofar as the Request calls for documents or communications that are protected by the attorney-client privilege or the work product doctrine.

Plaintiffs will not produce any documents in response to this Request.

## A.    Basis for Objections

Set forth in response above.

## B.    Basis for Compelling Production

Plaintiffs' conclusory, unsupported statement that documents regarding fair use are not relevant to "any claim that Hotfile has concerning noninfringing uses" is simply false. Evidence concerning the existence of fair use materials on Hotfile specifically or on similar websites is relevant to show that Hotfile has "substantial noninfringing uses," and is thus not liable for contributory copyright infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939 n. 12 (U.S. 2005). Furthermore, to the extent that the actions upon which Plaintiffs base their complaint were protected by fair use, Plaintiffs cannot prevail on their claims for secondary infringement. *Faulkner v. National Geographic Enterprises, Inc.*, 409 F.3d 26, 40 (2d Cir. 2005)("there can be no contributory infringement absent actual infringement"). Indeed, a former subsidiary of one of the Plaintiffs has previously been found to have improperly removed fair use materials from a file-hosting website in one prominent DMCA case. *Lenz v. Universal Music Corp.*, 572 F.Supp.2d 1150 (N.D. Cal. 2008).

Plaintiffs objection that documents regarding fair use on Hotfile "are more easily accessible to Defendants than to Plaintiffs" and "unduly burdensome and harassing to request …from Plaintiffs" is equally invalid and, instead of justifying Plaintiffs' withholding of such documents, further demonstrates the relevance of the requested materials. Plaintiffs seek to

block production of documents from their numerous antipiracy employees and vendors regarding the extensive and purportedly secret efforts they employ to seek out and remove infringing material on the Internet.  Hotfile, on the other hand, uses the services of only a small handful of people.  To suggest that evidence regarding the existence of fair use materials on Hotfile is more accessible to a few people rather than five major corporations that apparently employ scores of people to search for such material defies credulity.  Data for the subset of allegedly-infringing files identified by Plaintiffs to date prove Plaintiffs' greater access to content: of the 1,012 files identified as infringing in Plaintiffs' responses to Hotfile's interrogatories, scores were downloaded only once—presumably by antipiracy personnel verifying the contents of the accused file—or never at all.[6]  Considering that Plaintiffs, by their own admission, spend substantial resources reviewing files on Hotfile for copyright infringement, they cannot also argue that providing information regarding fair use materials they have found on Hotfile would be unduly burdensome.

Moreover, "fair use" evidence is relevant to the impracticality of effectively pre-screening content for conclusive copyright infringement, and thus bears upon Hotfile's "right and ability to control" infringement as needed to prove vicarious copyright infringement and/or to qualify for the DMCA safe harbor. *See Io Group Inc. v. Veoh Networks, Inc.*, 586 F.Supp.2d 1132, 1153 (N.D.Cal. 2008)(inability to control what content users upload, inability to prescreen every submission, and evidence that the content owner was "itself not able to readily identify which of its works allegedly were infringed" indicate lack of "right and ability to control"). Plaintiffs employ a significant antipiracy staff and outside antipiracy vendors, one of whom— Bay TSP—has admitted that it is necessary to have a full-time staff devoted to reviewing online material suspected of infringing copyrights because "There will always be something that falls into the gray area."  *See* Kevin J. Delaney, *YouTube Magic: Now You See It, Now You Don't*, Wall St. J., Aug. 8, 2007, at A1.  Thus, documents showing the efforts Plaintiffs undertake to distinguish between infringing work and fair use materials bears upon Plaintiffs claims and Hotfile's affirmative defenses.

---

[6] That Plaintiffs apparently deleted material from Hotfile without ever having downloaded the files raises serious doubts as to whether, as required by law for DMCA takedown requests, Plaintiffs had a good faith belief that the material in question was infringing their copyrights. *See Lenz*, 572 F.Supp.2d at 1155 ("the DMCA already requires copyright owners to make an initial review of the potentially infringing material prior to sending a takedown notice.")

V.     **THE PLAINTIFFS SHOULD PRODUCE DOCUMENTS REGARDING VOLUNTARY POSTING OF MATERIALS ON THE INTERNET.**

Defendants' Request No. 18 and Plaintiffs' response appears in full below:

**REQUEST NO. 18 :**

All DOCUMENTS regarding YOUR use of the Internet to market works in which YOU own copyrights, including DOCUMENTS discussing instances or policies regarding voluntary posting or promotional content.

**PLAINTIFFS' RESPONSE TO REQUEST NO. 21:**

Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein. Plaintiffs further specifically object on the ground that the Request is overbroad and unduly burdensome (1) as to "the Internet," (2) as to "works in which you own copyrights." First, Defendants' liability turns on Defendants' use of Plaintiffs' works without authorization on the Hotfile Website, and any marketing or intentional posting of Plaintiffs' works on third-party websites is not relevant to any of the claims or defenses in this lawsuit. Second, works other than those that Plaintiffs allege Defendants to have infringed in this action are not relevant. Plaintiffs are suing Defendants for infringing full-length motion picture and television works; documents concerning promotional content, such as clips or movie trailers, have no relevance to any issues in the case.

Plaintiffs further specifically object on the ground that the Request is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' online marketing generally, such as advertising, bears no conceivable relevance to this litigation.

Plaintiffs will not produce documents in response to this request.

A.     **Basis for Objections**

Set forth in response above.

B.     **Basis for Compelling Production**

Plaintiffs provide no argument for why their voluntary posting of copyrighted material on the Internet "bears no conceivable relevance to this litigation." Indeed, Plaintiffs ignore established case law. In *UMG Recordings v. Veoh Networks, Inc.*, 665 F.Supp.2d 1099 (C.D.Cal. 2009), the copyright owner argued that a video-hosting website had constructive knowledge of infringing activity because it could have proactively searched for the names of Plaintiff's artists identified in DMCA takedown requests in order to locate other infringing files, just as Plaintiffs accuse Hotfile of having constructive knowledge of infringement "by means of repeated notices by plaintiffs and other copyright holders concerning tens of thousands of infringing files." *Compare UMG*, 665 F.Supp.2d at 1110; *with* Complaint ¶ 61. The court in *UMG* rejected the copyright holder's argument precisely because the website submitted evidence that one of the plaintiff's own artists had voluntarily posted copyrighted material,

making it impossible for the site to know whether a particular file was authorized or infringing. *UMG*, 665 F.Supp.2d at 1110 n. 13.  Accordingly, documents relating to Plaintiffs' voluntary posting practices and policies are relevant to Hotfile's defenses.

## VI.   THE PLAINTIFFS SHOULD PRODUCE DOCUMENTS REGARDING DMCA POLICIES FOR WEBSITES THAT THEY OWN OR CONTROL

Defendants' Request No. 33 and Plaintiffs' Response appears in full below:

### REQUEST NO. 33:

All DMCA policies and Terms of Service for any website that YOU or YOUR AFFILIATES own or operate.

### PLAINTIFFS' RESPONSE TO REQUEST NO. 33:

Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein. Plaintiffs further specifically object to this Request on the ground that the Request is irrelevant and not reasonably calculated to lead to the production of admissible evidence: (1) DMCA policies and terms of service for websites controlled by Plaintiffs or Plaintiffs' Affiliates are not relevant to any issue in this case, as Plaintiffs' operation of such websites have no bearing on Defendants' infringement of Plaintiffs' copyrights on Hotfile; and (2) information concerning Plaintiffs' Affiliates are not relevant to any issue in this litigation, as this litigation concerns Defendants' infringement of Plaintiffs' copyrights and not the infringement of copyrights owned by nonparties.

Plaintiffs further object on the ground that the Request is unduly burdensome. Plaintiffs further object that, to the extent the DMCA policies and terms of service for any websites they operate are publicly available, they are equally available to Defendants as to Plaintiffs.

Although Plaintiffs are willing to meet and confer with Defendants to discuss Defendants' view of the relevance of this Request and whether any narrowed request might not be objectionable, Plaintiffs do not intend to produce any documents in response to this Request.

### A.   Basis for Objections

Set forth in response above.

### B.   Basis for Compelling Production

Defendants here assert a defense under the DMCA safe harbor provision enumerated at 17 U.S.C. § 512, which requires a website to "reasonably" implement a repeat infringer policy in "appropriate circumstances."  Contrary to Plaintiffs' unsupported claim, actions of and in response to nonparties are relevant to establishing the reasonableness of a repeat infringer policy. Since "the DMCA does not say what 'reasonably implemented' means," Courts must necessarily look to other websites' repeat infringer policies to determine whether a policy is reasonable under the circumstances. *See Io Group*, 586 F.Supp.2d at 1143 (comparing defendant's repeat infringer policy to policies in other DMCA cases to determine reasonability).  As such, whether

Hotfile's repeat infringer policy is more or less stringent than other websites' policies—particularly those owned or controlled by the Plaintiffs—bears upon one of Hotfile's key defenses.

Plaintiffs' other objection that any DMCA policies its websites may have are publicly available is either incorrect or an admission that Plaintiffs' websites have no internal policies or procedures for handling DMCA takedown requests.  That is, either Plaintiffs are intentionally misreading the request to exclude all internal documents, or such policies and procedures do not exist. In any event, the Court should compel Plaintiffs to provide a complete response.

## CONCLUSION

For the foregoing reasons, the Court should compel Plaintiffs to respond fully to Defendants' Requests For Production Nos. 1, 5, 6, 12, 14, 18, 21, 29, and 33, and Interrogatory No. 1 as set forth in the Proposed Order filed herewith.

DATED:  August 3, 2011

By:___/s/ Andrew Leibnitz_____
Roderick M. Thompson (admitted *pro hac vice*)
Andrew Leibnitz (admitted *pro hac vice*)
Anthony P. Schoenberg (*admitted pro hac vice*)
Deepak Gupta (admitted *pro hac vice*)
Janel Thamkul (admitted *pro hac vice*)
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy: 415.954.4480

And


___/s/Janet T. Munn_____
Janet T. Munn, Fla. Bar No. 501281
Rasco Klock, et al.
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone:  305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

*Counsel for Defendants Hotfile Corp. and Anton Titov*

CASE NO. 11-20427-CIV-JORDAN

**CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED**
**BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sough in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

By: __/s/ Deepak Gupta_____
Deepak Gupta

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2011, I filed the foregoing document with the Clerk of the Court in the conventional manner.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/Janet T. Munn_____
Janet T. Munn

**GRAY-ROBINSON, P.A.**
Karen L. Stetson, Fla. Bar No.: 742937
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone:  305.416.6880
Fax:    305.416.6887

CASE NO. 11-20427-CIV-JORDAN

**JENNER AND BLOCK, LLP**
Steven B. Fabrizio (*Pro Hac Vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice*)
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice*)
Email: lplatzer@jenner.com
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Phone: 202.639.6000
Fax:    202.639.6066