# EXHIBIT "C"

**From**: Platzer, Luke C [mailto:LPlatzer@jenner.com]
**Sent**: Wednesday, June 08, 2011 06:17 PM
**To**: Gupta, Deepak (22) x4419; Thompson, Rod (27) x4445
**Cc**: Fabrizio, Steven B <SFabrizio@jenner.com>; Pozza, Duane <DPozza@jenner.com>; Leibnitz, Andrew (21) x4932
**Subject**: RE: Disney v. Hotfile - Meet and Confer

**Deepak and Rod:**

**Based on our conversation today, this is where I believe we stand on your requests.  My responses in RED.**

- **Luke**

**From:** DGupta@fbm.com [mailto:DGupta@fbm.com]
**Sent:** Wednesday, June 01, 2011 9:06 PM
**To:** Platzer, Luke C
**Cc:** Fabrizio, Steven B; Pozza, Duane; ALeibnitz@fbm.com; TSchoenberg@fbm.com; RThompson@fbm.com
**Subject:** RE: Disney v. Hotfile - Meet and Confer

Luke –

This email confirms current status regarding Hotfile's affirmative discovery requests based on our meet and confer last week.  My comments are in green below.  My understanding is that the MPAA's responses to these requests will not vary materially from those of Plaintiffs, so I am using the shorthand of "Plaintiffs" to refer to both Plaintiffs and the MPAA.

Though originally we were promised Plaintiffs' position on outstanding discovery issues by the end of last week, you have asked for additional time--until the end of this week--in light of the "holiday weekend" that just passed.  Your request is difficult to swallow in view of Plaintiffs' motion to compel, which it rushed to get on file first without completing the parties' meet and confer yesterday.  Accordingly, we must insist that any remaining responses be provided by the end of this week.

Sincerely,

Deepak

* * * *

**Warner deposition.**  Warner will make a witness available on July 19, 20, or 21 in Los Angeles.  The only topics for which Warner may refuse to provide a witness are 4, 5, 6 and 8.  We agreed that the appropriate procedure to raise these objections before the deposition is by motion for protective order, and that Hotfile does not need to file a motion to compel.  Please let us know if Plaintiffs will file a motion for protective order.

**As per Steve's email exchange with Rod on Monday, the deposition will be on July 20 and we are still considering whether to move for a protective order in advance of the deposition.**

### Interrogatories

**Interrogatory 1.**  Hotfile understands that Plaintiffs have limited their response (and their production for several document requests) to the works attached to the complaint (the "Complaint Works").  Defendants have explained that Plaintiffs should not be entitled to selectively limit discovery to the "Complaint Works" but rather must provide the requested information regarding all works of which they are aware and which they believe are infringed.

**The interrogatory asks for the works that Plaintiffs *are alleging* Defendants to have infringed.  Plaintiffs have not "limited their response" to this interrogatory.  As we have told you, we believe the interrogatory is premature on the basis that Plaintiffs require discovery from Defendants (e.g. content reference data and usage data), at which point we will supplement our response and provide you with a fixed target of works in suit.  Moreover, we are unaware of any requirement in copyright actions that a Plaintiff plead all instances of infringement the Plaintiff has reason to believe the Defendant engaged in – we are entitled to select the works and infringements upon which we sue.**

With respect to Plaintiffs' response that "**Instances** in which the Complaint works have been on Hotfile **include** the URLs" listed in Schedule A you stated you believed that Schedule A lists each and every such link of which Plaintiffs are aware.

**Upon inquiry, I can confirm that our interrogatory response lists the instances upon which we are alleging infringement; it does not purport to be a complete list of every instance of infringement of the works listed in the Complaint.  If we had as part of our investigation for this case had discovered any other instances on which we opted not to sue (and we are not representing that any such instances exist), the results of such investigation would clearly be work product.  Moreover, we do not believe that the interrogatory is relevant insofar as it extends beyond infringements Plaintiffs are alleging to infringements of which Plaintiffs may be "aware" but are not suing upon.  In any event, as we have repeatedly told you, Defendants are in a far better position than Plaintiffs to search their own servers for additional links that infringe Plaintiffs' works.**

We explained last week that Hotfile is entitled to know what alleged infringements Plaintiffs are aware of and whether for some works they are just sitting back and watching the infringement happen.  The studios may not hold back facts.  The parties are in fundamental disagreement on this issue.

**Subsequent to our discussion on Friday, we gave this issue further consideration and remain of the view that what you are asking for – in addition to the prematurity objection raised above – invades our work product.  Jenner & Block conducted a pre-complaint investigation of infringing activity on Hotfile, and then chose particular**

works and instances of infringement upon which to sue.  Disclosing instances we opted not to allege as infringing would, inevitably, reveal our attorneys' thought processes, the criteria we used for selecting works and infringements upon which to sue, and subjective views about how to structure the litigation.  Put differently, this is a classic case where revealing the "facts" that our investigators uncovered while acting at our direction would reveal Jenner & Block's work product.  Therefore, we are withholding it.  And, as stated above, we simply do not see any relevance to this request.

**Interrogatory 2.**  Plaintiffs believe they very likely will amend to add the individuals who first became aware of Hotfile.  We await your response.

> **I can confirm that we will amend this response as discussed, but we are still gathering the relevant information from our clients.**

> Please amend by the end of this week.  Thanks.

> **We have some but not all of these names together at this point.  You'll get a supplemental response, but we are doing some investigating to make sure it's accurate.**

**Interrogatory 4.**  You will get back to us on whether Plaintiffs are willing to supplement this interrogatory, given that Defendants are likely to seek an early summary judgment on the DMCA issue.

> **That accurately captures our discussion on Friday.  Upon further consideration, we are standing on our objection.  Given the recently-produced evidence that Defendants (1) did not have a registered agent for much of the relevant time period, and (2) appear not to have ever terminated repeat infringers unless and until they were sued by specific copyright owners, we believe that an "early summary judgment on the DMCA issue" is not a realistic scheduling possibility in this case and therefore cannot be the basis for a burdensome contention interrogatory at the very beginning of discovery.  In addition, the purpose of contention interrogatories is not served in this instance.  Such interrogatories, if they are proper at all, exist to ensure that a party is not surprised at trial.  If Defendants move on the DMCA, they will learn of Plaintiffs' contentions at summary judgment and have every opportunity to reply.  Therefore, we are standing on our objection.**

> We are in disagreement on this issue.

> **Agreed.**

**Interrogatory 8.**  Plaintiffs are determining whether employees and related parties have used Hotfile and will provide account names/numbers of any one using Hotfile for business purposes.

> **Plaintiffs have endeavored to determine whether any of plaintiffs have used Hotfile for any business purposes to make any full-length motion pictures or television**

**programs available publicly.  So far, that is all we have agreed to do, and we are in the process of investigating.**

Plaintiffs' approach on this request is too narrow.  We would like to know whether there has been any use (uploading or downloading) at all.  We should be permitted to take discovery on the nature and purpose of the use.  This was a big issue in *Viacom v. YouTube* and *UMG v. Veoh*.  Please let us know where you stand on this request by the end of this week.  Thanks.

**We don't believe that there's any relevance to uses other than for making full-length content available.  Our investigation has not uncovered any use of Hotfile by any studio to distribute full-length content (we are investigating promotional content as well, even though we don't think it's relevant, and have not uncovered any such use either).  We will supplement our interrogatory response once our investigation is complete, but I do not expect this answer to change.  While you articulated theories about why uses of Hotfile other than distribution might be relevant to potential noninfringing uses of Hotfile, those arguments do not depend in any way on discovery from the Plaintiffs, and as I explained, these hypothetical uses that you theorized (such as internal 'sharing') would be much more burdensome to investigate than any uses of Hotfile for distribution or promotion.**

<u>Requests for Production</u>.
**General Objections.**  Plaintiffs are taking a narrow view of who can be considered "affiliates."  We may need to discuss which custodians (for which entities) are being included in document searching on a request by request basis.  Plaintiffs' time period objection is also improper because many events prior to the founding of Hotfile may be relevant to the case.

**As we have stated, we are going beyond the named Plaintiffs to search for documents in instances where the relevant operating companies at the studios are different from the rightsholding entity (e.g. Sony, where the operating company includes personnel who also perform work related to multiple rightsholding entities).  As for the time period, we have not limited our keyword-based searches for Hotfile, Titov, Luchian, and Lemuria, but since Hotfile did not exist prior to 2009, those keyword searches will inherently not return responsive documents prior to Hotfile's launch.  We are willing to take under advisement whether documents prior to Hotfile's launch should be searched in response to specific requests, but believe such matters should be discussed in the context of specific requests rather than globally.  For instance, we are not limiting our search for copyright registrations and other ownership documents by date.  However, there are some requests (e.g. documents related to fingerprinting technology) where there is no conceivable relevance to documents that precede the existence of Hotfile and a search going back to earlier periods of time would be unduly burdensome.**

**Investigation Materials Objection.**  This objection, which is ubiquitous, is inappropriate as explained in our previous email and over the phone.  There was some confusion on whether this

objection reached farther back than investigation targeted to the complaint and the complaint works to materials and communications (e.g. email) stored in connection with DMCA takedown notices that have been sent over the past year.  You will get back to us on this question, and as to what has been preserved and exists.  Defendants explained that such "investigative materials" are highly relevant because such files provide evidence of what was on Hotfile and whether it was actually infringing or not. They also will show whether an investigation of facts and circumstances is required to know whether material is infringing.  Under *UMG v. Veoh* and related authority, such documents are highly relevant to the question of red flag knowledge.

**Upon further discussion, I can confirm that our objections (as to relevance, confidentiality/risk of revealing sensitive antipiracy methods, and privilege/work product) apply both to Plaintiffs' investigation of Hotfile for purposes of this case and for purposes of issuing notifications of infringement.  Plaintiffs are withholding documents on the basis of these objections.  For reasons already stated, we disagree with your theories of relevance.  The best evidence of what files are on Hotfile, and whether or not they are infringing, are the files on Hotfile's system itself, which are in Defendants' possession.  And, as the court held in *Grokster*, it is obvious and well-understood that studio movies and TV programming being distributed for free over the Internet are infringing, and there is nothing relevant or probative that our instructions to or communications with personnel or vendors who issue takedowns could show.  Our own conduct is not at issue, and the validity of our notices is shown on the face of the notices themselves.  Furthermore, while we believe these materials to be irrelevant and extremely sensitive, we also believe that there are substantial privilege issues upon which your requests intrude.  All investigation leading up to the Complaint is privileged, and many communications about DMCA notices will be as well.**

**You did raise an interesting procedural question, given the overlap between the relevance issues and the privilege issues with respect to this request, as to how they would be treated for privilege logging purposes.  This may be worth a separate call, as this issue arises in the context of the plaintiffs' requests to defendants as well (e.g. your position that you are withholding all documents related to the Liberty Media and Perfect 10 actions on relevance grounds; do you intend to privilege-log those)?  We believe that we should have a separate call about privilege logging more generally and that this question may be best addressed globally.**

We are in disagreement on this investigative material objection, which you represented is a "non-lawyer investigative privilege" for which there is no privilege logging obligation.  I discuss this objection further below.

**This is not an accurate characterization of our discussions.  Our primary objection is that these documents are not relevant, and that even if they had some marginal relevance, the prejudice to Plaintiffs from disclosure would far outweigh any probative value (these are highly sensitive antipiracy strategies – we do not generally share them with pirates who could use them to circumvent our enforcement.  Note that while you may disagree with this characterization of your client, there can be no dispute that your client has**

close commercial relationships with "affiliate" websites whose blatant involvement in piracy is beyond question).  You and Rod – not I – have characterized our claim as one for "non-lawyer investigative privilege," and your placing of that term in quotation marks and then attributing it to me is deeply misleading.  To the extent I questioned whether a privilege logging obligation exists for such documents, it is not because of anything unique to those documents or our basis for withholding, but rather because, as a general proposition, privilege logging obligations do not arise for documents withheld on relevance or comparable objections.  To the extent I claimed that there were also serious privilege issues with your request, that is not on the basis of a blanket "non-lawyer investigative privilege" but rather because many of the materials sought by your requests are going to be privileged in the classic sense, including attorney work product (insofar as vendors, acting at the direction of antipiracy counsel and for purposes of identifying potential enforcement targets and collecting evidence for potential enforcement actions, monitor and collect information regarding infringement by various websites) and attorney-client privilege (insofar as counsel at studios provide legal advice to antipiracy personnel regarding takedown policies and procedures).  We are also considering the extent to which we may agree to log documents we withhold on the basis of our relevance/probative value outweighed by potential prejudice objection stated above, and we consider discussions regarding the parties' precise logging obligations to be ongoing in the course of our separate discussions regarding privilege logs.  I invited you to supply us with any legal authority for the proposition that documents withheld on the basis of objections other than privilege or work product need to be listed on an itemized log.

We are considering whether there might be any categories of documents responsive to this request that we could produce without running afoul of our objections.  In particular, you asked us to consider (1) documents reflecting instances in which we discovered one of our works on Hotfile and did not take it down, and (2) documents that do not reflect the process by which infringing works on Hotfile are discovered, but rather show the process regarding whether or not to issue a notice once a work on Hotfile has been discovered.  I expressed my view that this latter category was likely privileged.

**Registrations, transfers, work for hire agreements, assignments etc. for all allegedly infringed works.  (Requests Nos. 3-4).**  Plaintiffs attempt throughout to limit to the Complaint Works is improper and Plaintiffs are not "dependent on Defendants" to identify those works they presently know and believe are infringed.  Indeed, it is Plaintiffs' burden to identify these works. Defendants will require all documents regarding ownership and chain of title, not just registrations and "short-form assignment agreements."  This would effectively turn what is supposed to be a rebuttable presumption of ownership under the law into an irrebuttable presumption by blocking discovery.  Given it is a precondition to show liability that Plaintiffs must establish ownership, all documents must be provided.  Let us know if Plaintiffs will reconsider on this issue.

**First, as to the works in suit, we have a right to decide the works upon which we are bringing suit, and we are entitled to supplement that list as discovery yields additional infringements.  Second, as we have stated, we are willing to discuss with you whether there are any specific works in suit for which you have a good faith belief that additional discovery into Plaintiffs' ownership is required, and if such a good faith basis exists, we may be willing to consider additional discovery as to those specific works.  However, we believe that your global request for all ownership-related documents for all works is a purely speculative fishing expedition that is designed to harass, and intend to stand on our objections.  We suggest that you first review the materials provided and we can talk if you have issues with or questions about particular works.**

We are in  fundamental disagreement on this issue.

**Our position remains unchanged.  The very purpose of the statutory presumption of ownership based on a valid registration is so that "plaintiffs need not produce mounds of documents in order to maintain an infringement action."  *In re Napster*, 191 F. Supp. 2d 1087, 1100 (N.D. Cal. 2002).  In addition, subsequent to our last meet and confer, I have been following up with the studios regarding how these various records are kept.  The types of documents you are requesting are not maintained in a single place, but are rather scattered across various different data repositories within the companies (i.e. some in central databases, some in storage, some in various different locations in the respective studios' production departments, etc.) and that it would be an extremely onerous task to assemble them the way you have requested, particularly given the large number of works that will eventually be in suit.  As I have said, we are not ruling out this more invasive type of search in the event you have questions about specific works, but as a global matter we think your request is burdensome, speculative, and designed to harass.**

**That being said, you proposed on our call that we "defer" this request (i.e. you don't move on it now, and we wouldn't take the position that you had failed to move expeditiously).  We have considered, and accept, your proposal.**

**Request No. 5-6, 9, 14.** Plaintiffs agree to produce takedown notices they and their vendors have sent to Defendants, records reflecting notices Plaintiffs and their vendors have sent to Hotfile concerning the infringement of Plaintiffs' copyrights on the Hotfile Website, records reflecting Plaintiffs' use of Hotfile's special rights holders accounts to request removal of files infringing their copyrights from the Hotfile Website, and copies of files downloaded from the Hotfile Website that reflect Defendants' infringement of the illustrative works identified in Exhibit A to the Complaint.   Plaintiffs should not limit their production to the Complaint Works, as explained above.  Plaintiffs stated that "records reflecting notices" will be database records and spreadsheets regarding take down notices sent.  In our meet and confer, Hotfile also requested (1) all email communications regarding takedown notices that were sent, which are relevant under the *UMG v. Veoh / Viacom v. YouTube* standard for red flag knowledge – whether an investigation of facts and circumstances is required to identify infringement -- and (2) all

documents, including the preserved downloaded files themselves, for which takedown notices were sent or not sent. The latter files are all critical, including those for which no takedown notices were sent. These documents all go to establishing infringement and showing the difficulty in identifying infringing / unauthorized content, thus rebutting red flag knowledge. The category of files for which notices were not sent go to show what Plaintiffs chose to leave up (fair use, promotional use, and errors). You are looking into whether Plaintiffs will provide the related email communications and what exists and whether Plaintiffs will produce the files stored in connection with investigating and sending out DMCA takedown notices.

**As you indicate, we are not limiting our production of takedown notices to the Complaint works (I believe that with respect to the records, we told you that we would be producing the notices themselves and then spreadsheets reflecting instances in which the Hotfile takedown tool was used instead of a notice).**

**I indicated that we would consider internally, and discuss with our clients, our position regarding materials reflecting our investigation of Hotfile for purposes of issuing takedown notices. Upon consideration, it is our position that these materials (e.g. communications with takedown personnel, and any materials gathered for purposes of issuing takedowns) are subject to the same objections we have raised with respect to our pre-Complaint investigation materials, and we are standing on those objections. As discussed above, we believe such materials to be irrelevant and highly sensitive, revealing antipiracy processes, and that your request also unduly intrudes upon privilege and attorney work product. At a minimum, any probative value (and we believe there is none) is outweighed by these considerations.**

We are in fundamental disagreement on this issue – particularly Plaintiffs' novel investigation materials objection.

As explained above, we are not making some "novel investigation materials objection" but simply believe that these materials are globally irrelevant or at the very least that any marginally probative value is outweighed by the potential prejudice from disclosure, and that there are also extensive privileged materials (as explained above) contained within the types of documents you are demanding.

**Request No. 8.** Plaintiffs agreed to look into whether they are willing to provide licenses regarding internet distribution.

**It is correct that we are taking your proposed narrowing of this request to Internet distribution under advisement, but as I advised you, we do not believe licenses are relevant. What we are considering is whether there exist any licenses or authorizations to third party that authorizes the third party to distribute full-length motion pictures or television programs on the Internet without DRM or restrictions on further distribution. If such licenses existed for any works in suit (by which I mean not only the Complaint works, but also any works that may be included in the case in the future, which we anticipate will encompass thousands of works), that might be relevant. We are in the process of checking.**

We are in  fundamental disagreement on a limitation to "full length motion pictures or television programs without DRM."  The injunction and damages issues require a broader search – and we cannot take on faith what Plaintiffs consider to be "comparable licenses."  What is the status of Plaintiffs' searching for the documents? When will they be produced?

We are in disagreement about this request.  We think that our investigation into any DRM-free distribution with no restrictions on further distribution, as discussed, will answer your question regarding whether such licenses show authorization (we have yet to learn of any such distribution by any studio, and although we are still investigating with respect to some plaintiffs, we do not expect to discovery such licenses as they would be inconsistent with the plaintiffs' general approaches to content protection).  Insofar as you want the economic terms of the licenses to show damages, we think the request is premature, and insofar as you want the licenses to show the availability of equitable relief, we think that the mere existence of licenses is insufficient to make injunctive relief unavailable (an area where we disagree on the relevant legal standard).

As with your ownership-related proposal, however, you suggested that our disagreement about this request be "bracketed."  We have considered, and accept, your offer to defer this disagreement for a later point in the case.

**Request No. 10.**  You agreed to look into whether Plaintiffs are willing to do a search for DMCA policies for sites Plaintiffs own and control.  We believe that internally published policies, shared outside of the control group regarding the DMCA should also be produced.  These would include any guidelines used to evaluate sites for DMCA compliance etc.  Can you agree to look into whether such documents exist, and then we can discuss the privilege issue?

**As I recall, we discussed that this request has two distinct applications: policies and guidelines regarding the studios' issuance of notifications of infringement, and policies regarding any user-supplied content on websites operated by the studios.  I advised you that the first type of policy was subsumed within our discussion of the studios' investigations of online piracy for purposes of issuing takedown notices, and that I was skeptical we would be willing to produce such materials but that we would take it under advisement.  Upon further consideration, I can confirm that we believe any such materials to fall within our objections discussed supra.  As for the second type of policy, we believe this to be the same issue as the one raised by RFP 32 and 33 below, which we are continuing to consider.**

As discussed, our understandings are different here.  Regarding the first type of policy, we are in fundamental disagreement on non-privileged internally published policies / guidelines and Plaintiffs use of the investigation materials objection.

As discussed, we are standing on our objections related to our takedown process with respect to the first kind of policy, and with respect to the second

kind of policy, we think that how we run our own websites is irrelevant.  While I informed you that I do not believe that the Plaintiffs' websites are comparable to Hotfile in any way, I also made clear that our objection here does not depend upon the lack of similarity between our online operations and Hotfile's.  Because this case is about Hotfile's conduct and the legal standards governing it, we don't think our own operations are relevant.  (Even if you were to establish, speculatively, that we were doing something wrong regarding the DMCA – which I have no reason to believe we are -- that would not tend to exonerate your client).

**Request No. 11.**  You will get back to us on whether there is a subcategory of documents regarding Plaintiffs' burden of identifying infringement on the Internet.  This would include, e.g. documents describing the workflow for sending takedown notices on the Internet.

> **On this point, our recollections appear to differ.  We discussed the fact that documents showing the workflow for takedown notices are what you were interested in, and I told you that we viewed those documents as falling within the same category as our instructions and communications regarding takedown notices, on which I offered to take your proposal back to the team for internal discussion but also expressed my belief that it is unlikely we will agree to produce these materials for the reasons discussed above.  Having conferred regarding these issues, I can confirm that we are standing on our objections stated above.**

> We are in fundamental disagreement on this issue and Plaintiffs' self-styled investigation materials objection.

> **We've covered this area as discussed above.**

**Requests No. 12.**  Plaintiffs have done a broad search for the keyword "hotfile" across all Custodians.  Plaintiffs will identify the custodians searched as required under the ESI plan.

> **That is correct, albeit with the caveat that by "custodians" we mean "custodians whose records we are searching in accordance with the ESI plan."  We may be retrieving some documents (such as ownership information) from persons at the companies whom we do not have reason to believe would have Hotfile-related documents, and we are not searching such persons' files for "hotfile" merely because they were the custodian of non-hotfile-related documents we are producing in the case.**

> Thanks.  Please produce these documents by the end of this week.

> **We are working on reviewing these documents, but cannot promise to have our review and production completed on the timetable you're asking for (we also note your own failure to produce documents thus far).**

**Request No. 15.**  These business model documents are critical given that Plaintiffs' core theory is that Hotfile's business model is flawed.  You agreed to go back and see whether Plaintiffs can

do searches the third-party businesses specifically listed in our request.  We strongly believe searches should be done for all of those businesses, and that the burden should be minimal.  I note that admissions regarding YouTube's business model were probative in *Viacom v. Youtube.*

> **It is correct that Plaintiffs are taking under advisement whether to perform searches for third-party businesses beyond Hotfile, and will advise you of our position following discussions with our clients.**

> Please get us an answer this week.

> > **We have considered this request, and have concluded that the searches you have asked for are not relevant and are quite burdensome (including burdensome privilege review requirements).  We are standing on our objections.  While you suggested that we search "business people" rather than attorneys to minimize the number of privileged documents, we think that documents in the possession of business people are even less relevant than those in the hands of lawyers who might have thought about or considered the sites you list.  We think this request is a "debater's point" style request that isn't really relevant.**

**Request No. 18.**  This request is relevant for a number of reasons.  We offered to narrow the request to policies and memos regarding voluntary or promotional posting on the Internet of content for free.  This would include trailers, indy works, and promo episodes etc.  You agreed to look into whether such policies and memos exist and whether they can be produced.

> **On this point, our recollections appear to differ slightly.  I agreed that we would search for any use of Hotfile by the studios to make full-length motion pictures or television programs available on the Internet without DRM or restrictions on further distribution, and would let you know if such investigation revealed any use of Hotfile for the works in suit (defined broadly).  We understand that you have also requested a search for materials related to online postings of (1) other works on (2) other websites.  We do not believe this broader search to be relevant but are considering your request.**

> > Yes, we would like all responsive documents to the request (memos, emails etc.), i.e. the "broader search" as narrowed and clarified above.  Please get back to us on this by the end of the week. Thanks.

> > **We have considered your request, but we continue to believe that the investigation reflected in my email above is the most that is appropriate here.**

**Requests Nos. 21-22.**  Documents regarding the availability of fair use / uncopyrighted and public domain works is relevant to substantial non-infringing uses, and the red flag knowledge question, because this would necessitate that Hotfile engage in an investigation of facts and circumstances to determine whether any work on its systems is infringing.  This also underscores a key statutory consideration under the DMCA and copyright law generally – web hosting sites should not be saddled with costly policing burdens that might impair their ability to distribute

material in the public domain etc.  I understand that Plaintiffs are refusing to conduct a search of such documents.

**That is correct; we intend to stand on our objections.**

We are in disagreement on this issue.

**Agreed.**

**Request No. 23.**  Plaintiffs are looking into and will provide whatever written policies the studios have regarding the use of digital rights management protect their content.

**That is correct, with a caveat.  We are looking into the existence of such policies for content that is distributed over the Internet.**

Thanks.

**We are in the process of collecting such materials insofar as they exist.  As I explained, these are not "written policies" so much as standard term sheets that attach to online distribution deals.**

**Request No. 25.**  You agreed to see what is practically accessible, and the scope of a reasonable search for content identification technology related documents.

**That is correct.  We are considering what kind of information might be practically provided regarding fingerprinting technology, while objecting as irrelevant to watermarking technologies (and indicating that "blocking" and "filtering" are just methods for using information supplied by content identification technologies, and are therefore not reasonably susceptible to a freestanding search, but would rather be subsumed in discussions of fingerprinting technology).  With respect to DRM we will be providing materials as per RFP 23 above.**

Please get back to us on this by the end of the week.  Thanks.

**We are working hard on coming up with a constructive proposal here.  As I have explained, this is not an easy task to coordinate across five studios and the MPAA given the different organizational structures and different ways in which they divide responsibility over areas that touch upon fingerprinting technology.  We are going to propose a reasonable set of documents that we can give you on this request, but it is going to take a little more time to figure out exactly how to define that set in a way that is going to be a manageable and intelligible search.  You suggested that the questions that should guide our search are (1) what is fingerprinting, (2) who are the vendors who provide it, (3) what are the various packages or services they offer, (4) what are the pros and cons of the technology, and (5) how does it fit into the overall content protection scheme.  I expressed my concern that (4) and (5) may often**

involve privileged documents, but I appreciate the clarification as to what you're looking for.

**Request No. 26.**  You agreed to see what is available in terms of documents about the relationship between the MPAA and the studios.

**I advised you that I believed that, insofar as we will be withholding as privileged and as work product communications between the MPAA and the studios related to this litigation, the federal rules may entitle you to information sufficient to show the existence of an attorney-client relationship between counsel at the MPAA and persons working at their direction and the Plaintiffs.  Upon further consideration, it is our view that the appearance of MPAA counsel in this action as counsel of record for the Plaintiffs is sufficient for this purpose at this time, and that Defendants have no more basis to challenge MPAA's counsels' privilege with plaintiffs than Jenner & Block's.  Upon the parties' exchange of privilege logs, you will have sufficient information (from the privilege logs themselves) to assess the basis on which privileged documents will be withheld.**

As I explained on the call, we need to understand the role of MPAA broadly to understand its scope of responsibilities etc.  and therefore would like at a minimum membership agreements or a charter.  We are in disagreement on this issue.

**We disagree – to the extent we withhold documents on the basis of privilege, our privilege log will reflect the basis for such withholding.  We suggest that your generalized desire to understand how the MPAA works is better addressed through the deposition process.**

**Request No. 27.**  You agreed to check if there are organizational charts for each of the Plaintiffs.

**That is correct, but subject to two caveats:  First, I told you that we were considering whether we would produce such organizational charts or otherwise identify the responsible personnel; I did not commit to making such a production in advance of conferring with my team and our clients, and second, any org chart would be for digital business as requested by the RFP, not for the plaintiffs generally.**

Please get back to us on this by the end of the week.

**We intend to identify the key personnel for you.  The "org chart" approach might not be feasible (there's too much dispersal of relevant responsibilities, and not all studios have the kinds of charts you're envisioning).  But as I understand it, what you're looking for is "who are the key people with responsibility over these areas," and we're working on getting you something.  You've stated that you're looking for about 4 or 5 people per studio, and that you're looking for an "80/20" solution.**

**Request No. 32.**  You are looking into whether there are spreadsheets or other documents identifying all the websites owned or controlled by Plaintiffs and will produce those to the extent available.

> **This is not consistent with my recollection or notes from the call.  I indicated that your request to limit your request to a spreadsheet or list, if any exist, might resolve our burden objection, but told you that we still believed such inquiry to be irrelevant.  I advised you that we would take the matter under advisement and let you know of our position following a chance to confer with my team and our clients.**
>
> > Please get back to us on this by the end of the week.
> >
> > > **We have considered this request and have reached the conclusion that what you're asking for is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and are therefore standing on our objections.  As I explained above, how we run our own sites isn't relevant.  (And I also believe that our sites aren't comparable to yours, but our this fact merely enhances rather than forms the basis of our relevance objection).**

**Request No. 33.**  Plaintiffs will investigate what DMCA policies and Terms of Services are reasonably available for sites owned or operated by Plaintiffs.

> **At this point we were nearing the end of the call, but my recollection was that I attached the caveat that we could look into this issue if we decided to produce information identifying the studios' websites.  If I failed to express that limitation on the call, I apologize for the omission: we would look into this only in the event we decided to produce information in response to RFP 32, which we are still considering.**
>
> > Please get back to us on this by the end of the week.
> >
> > > **See response above.**

**Request No. 35.**  Though we didn't discuss this, we expect Plaintiffs should provide e.g. all non-privileged communications reviewed in connection with answering interrogatories number 2 and 8.

> **Communications with antipiracy vendors, which is how four of the five Plaintiffs learned of Hotfile, are subject to our objections stated above.  Interrogatory 8 is not covered by RFP 35, as RFP 35 requests documents pertaining to the First Set of Interrogatories and Interrogatory No. 8 is part of the Second Set.  However, we will take under advisement whether to provide documents in response to RFP 35 as it relates to Interrogatory No. 8.**
>
> > We are in fundamental disagreement on Plaintiffs' novel investigation materials privilege and related objections.  Please get back to us on the Rog 8 issue by the end of the week.

**To the extent this does not call for the production of documents we are otherwise withholding on the basis of our objections, we will produce documents in response to RFP 35.**

**Please let us know if you want to discuss any of the above. In particular, given the global application with respect to both Plaintiffs' and Defendants' productions, as well as the fact that the parties proposed to the Court that we would exchange privilege logs on June 15 (although no order has yet been entered), we recommend that we have a separate call to discuss privilege logging procedure and scheduling soon, ideally at the beginning of next week.**

Yes, we are discussing privilege logging tomorrow.

**We look forward to discussing this issue further. As we understand it, you are currently considering adopting a categorical approach for attorney-client and work-product documents, but not agreeing to a categorical approach on documents withheld on the basis of the relevance/commercially sensitive antipiracy practices objection. However, you are continuing to think about this and will advise us of your position. In the interim, however, we mutually agree to continue next week's privilege log date, and to agree on a later date at a later time.**

---

**Luke C. Platzer**
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
Tel (202) 639-6094
Fax (202) 661-4813
LPlatzer@jenner.com
www.jenner.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.