UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

**MEMORANDUM OF LAW OF DEFENDANTS HOTFILE CORPORATION AND ANTON TITOV IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER REGARDING PLAINTIFFS' ANTIPIRACY INVESTIGATIONS AND ENFORCEMENT PROCEDURES**

**I.      INTRODUCTION**

Plaintiffs' motion is both untimely and unwarranted.[1]  It seeks protection from subpoenas served on third parties two months ago and from document requests served as long ago as April.  It is in plain violation of the Local Rule's requirement that discovery motions must be filed within 30 days of the occurrence of grounds for the motion.  *See* S.D. Fla. Local Rule 26.1(h).  The motion should be denied for that reason alone.

In any event, the motion entirely lacks merit.  Despite Plaintiffs' needlessly inflammatory characterizations of Defendants Hotfile Corp. and Anton Titov (collectively, "Hotfile" or "Defendants") as "pirates," "thieves," and foxes, Plaintiffs—not Hotfile—are the ones trying to hide evidence and obstruct discovery.  Plaintiffs seek to conceal information relating to the asserted factual basis underlying their claims.  Calling something "anti-piracy" does not render it

---

[1] Plaintiffs in the action are five major studios, Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studio Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment, Inc.  (Hereafter "Plaintiffs" or  the "Studios.")

immune from discovery. The Studios and their "anti-piracy" agents are bound to obey the rules of discovery—and to disclose the factual basis allegedly supporting their claims—just as any other plaintiffs. They cannot hide behind blanket assertions of trade secrets or privilege.

The Digital Millennium Copyright Act , 17 U.S.C. § 512 *et seq.* ("DMCA"), establishes a framework where service providers such as Hotfile may maintain a procedure to allow content owners such as the Studios to provide notice and request takedowns when they believe their content has been copied (or uploaded). The Studios elected to delegate some of the notification task to third party agents, they call "Antipiracy Vendors,"[2] who have been subpoenaed to produce evidence. The issuance of notifications of infringement by the Studios' Antipiracy Vendors and by the Studios themselves[3] (and Hotfile's actions and communications in response) lies at the heart of this lawsuit. Hotfile has taken pains to comply with the DMCA. It has cooperated with these "anti-piracy" vendors and Plaintiffs themselves to facilitate the smooth functioning of the notice and takedown regime contemplated by Congress in passing the DMCA. As will be shown in a summary judgment motion to be filed shortly, this proactive compliance entitles Hotfile to the safe harbor protections of the DMCA and bars the Studios claims for damages.

Thus the actions taken and the documents maintained by the Antipiracy Vendors are important evidence that go to this core defense. By this motion, the Studios attempt to block Hotfile's access to this important discovery. Specifically, the Studios request that the Court prohibit discovery of "Plaintiffs' internal policies, procedures and instructions underlying their online piracy investigations and enforcement efforts, including their investigations for purposes of this case"—what Plaintiffs call the "Antipiracy Materials." Hotfile needs this relevant and necessary discovery to support their defenses and claims in this suit. The Studios' motion must

---

[2] The Antipiracy Vendors at issue are BayTSP, Inc., Peer Media Technologies, OpSec Security Group plc, MiMTiD Corp., and DtecNet, Inc.

[3] Although Plaintiffs characterize their motion for a protective order as protecting against Hotfile's Requests to third parties, Plaintiffs also attempt to excuse—in bald violation of the Local Rules via incorporation by reference instead of verbatim quotation—their own refusal to comply with discovery into the motion. *See* Hotfile's Mot. for Protective Order (Dkt No. 104-105) ("Mot.") at 15 (asking the Court to quash Hotfile's Requests to Plaintiffs Nos. 9, 11, 12, 37, 38, and 44 without stating them verbatim in violation of Local Rule 26.1(h)(3). Plaintiffs make the same ill-advised arguments (and Local Rule violations) under a nebulous "investigative materials" objection to Hotfile's First Set of Requests to Plaintiffs Nos. 1, 5, 6, 12, 14, and 29. *See* Hotfile's Mot. to Compel, Dkt No. 111.

fail. They cannot sustain their burden of proving the necessity for the issuance of a protective order. Plaintiffs fail to show (1) that the Antipiracy Materials qualify as confidential trade secrets and (2) that any harm will result from disclosure of the Antipiracy Materials for purposes of this litigation, particularly where these materials can be produced under the Stipulated Protective Order entered in this case. (Dkt. No. 68.) Lacking any colorable argument against the disclosure of the requested information, the Studios resort to name-calling and inflammatory analogies to drug trafficking. The Court should deny their motion.

## II. BACKGROUND

The Studios filed suit against Hotfile on February 8, 2011 asserting two claims – one for direct infringement and the other for secondary liability.[4] (Dkt. No. 1.) On May 2, 2011, the Studios served their initial disclosures in which they expressly identified each Antipiracy Vendor as having sent notifications of infringement to Hotfile on behalf of one or more of the Plaintiffs. Declaration of Anthony P. Schoenberg attached as Exhibit 1 hereto ("Schoenberg Decl.") ¶ 2. In addition, one Antipiracy Vendor, DtecNet, was identified as having information "as to the infringement of plaintiffs' copyrighted works included in the Complaint." Schoenberg Decl. ¶ 2. Accordingly, on May 31 and June 1, 2011, Hotfile served subpoenas on five of the Antipiracy Vendors identified by Plaintiffs: BayTSP, Inc., Peer Media Technologies, OpSec Security Group plc, MiMTiD Corp., and DtecNet, Inc. *See* Decl. of Luke C. Platzer (Dkt. No. 106-1) ("Platzer Decl.") ¶¶ 4-8 and Mot. Exs. 4-8; Schoenberg Decl. ¶ 3, Exs. A-E.

After expressly identifying the Antipiracy Vendors in their initial disclosures, the Studios through their untimely Motion now attempt to frustrate Defendants' ability to obtain discovery from these third parties by controlling the Antipiracy Vendors' ability or willingness to produce documents in response to the subpoenas. The Studios motion seeks protection from the following categories of Requests[5]:

---

[4] Plaintiffs' direct infringement claim has been dismissed; only the indirect infringement claim remains. *See* Order on Mot. to Dismiss (Dkt. No. 94).

[5] Hotfile sought information from each vendor in the form of largely identical document requests. Plaintiffs only sought protection as to specific Requests. Plaintiffs also attempt improperly to incorporate by reference other Requests into their motion without any analysis, argument, or the requisite quotation, *see* Mot. at 15-16. In so doing, Plaintiffs are in violation of Local Rule 26.1(h)(3). This requirement is particularly important in a motion such as this which concerns requests to both parties and non-parties, because the discovery obligations imposed on parties are generally greater than on non-parties. Nevertheless, and without waiving the objection, Hotfile has also addressed the documents to which Plaintiffs object by category.

3

1. **Additional information about DMCA takedown notices**: Documents reflecting, referring to or discussing each and every DMCA takedown notice that Plaintiffs' Antipiracy Vendors sent to Hotfile or Lemuria on behalf of any or all Plaintiffs, including documents sufficient to show without limitation: the individual who sent the DMCA takedown notice; the IP address used to send the DMCA takedown notice; the specific Plaintiff on whose behalf the DMCA takedown notice was sent; and the bases for each DMCA takedown notice. (Document Requests Nos. 1, 9, 19.)

2. **Process by which Plaintiffs and their vendors decide to send DMCA takedown notices to hotfile.com**: All documents including instructional or training manuals, and guidelines showing or in any way reflecting any processes, policies, procedures, protocols or algorithms that Plaintiffs' Antipiracy Vendors or any Plaintiffs use or have used in formulating, sending or deciding to send DMCA takedown notices to Hotfile.com. This category includes documents related to instances in which Plaintiffs' Antipiracy Vendor or any Plaintiff decided not to send a DMCA takedown notice with respect to hotfile.com, including, documents reflecting any reason for not sending the DMCA takedown notice. This category also includes documents reflecting, referring to or discussing Plaintiffs' communications with and instructions to antipiracy vendors and internal antipiracy personnel. (Document Request Nos. 3, 8, 19, 20.)

3. **Processes and technologies used to identify infringing content on hotfile.com**: All documents including instructional or training manuals, and guidelines showing or in any way reflecting any processes, policies, procedures, protocols or algorithms that Plaintiffs' Antipiracy Vendors or any Plaintiffs use or have used to investigate and identify infringing works on hotfile.com. This category includes documents sufficient to show the technologies that Plaintiffs and their Antipiracy Vendors used to identify, remove, block or filter access to copyright infringing works on hotfile.com or to general DMCA takedown notices. (Document Request Nos. 7, 11, 20.)

4. **Communications between Plaintiffs and the Antipiracy Vendors regarding infringement on hotfile.com.** Documents reflecting, referring to or discussing each and every DMCA takedown notice that the Antipiracy Vendors sent to Hotfile or Lemuria on behalf of any or all Plaintiffs. This category includes the takedown notices themselves as well as any documents sufficient to show the IP address used to send the DMCA takedown notice, the specific Plaintiff on whose behalf the DMCA takedown notice was sent, the content file which was requested to be taken down, and the bases for each DMCA takedown notice. (Document Request Nos. 1, 3, 5, 9.)

Contrary to the Studios' assertions, these categories of documents are highly relevant to this litigation and important to Hotfile's safe harbor defense. The Court should deny the motion—both as time-barred and for its lack of merit.

### III. ARGUMENT AND APPLICABLE LAW

#### A. Plaintiffs' Motion is Untimely

The Studios' motion is directed to subpoenas that were served on the Antipiracy Vendors on May 31, 2011 and Rule 34 document requests that were served on April 1.[6] *See* Schoenberg Decl. ¶ 3, Exs. A-E; *id*. ¶ 6. The Studios were served with copies of the third-party subpoenas contemporaneously with their service on the Antipiracy Vendors. Schoenberg Decl. ¶ 4, Exs. F & G. The return dates on all of the subpoenas were in mid-June, and some were given short extensions to respond until no later than July 1, 2011. Schoenberg Decl. ¶ 5. The Antipiracy Vendors all served written responses and objections to the subpoenas on or before July 1, 2011. Schoenberg Decl. ¶ 5. No extensions were given to the Studios with respect to the Rule 34 document requests, and the Studios served written responses and objections on May 5 and July 28, 2011. Schoenberg Decl. ¶ 6.

"A motion for a protective order is generally untimely if it is made after the date the discovery material was to be produced . . . [A] party has a duty to seek protective order immediately, i.e., without waiting until the discovery is due or almost due." *Laughon ex rel. Laughon v. Jacksonville Sheriff's Office*, No. 3:06-cv-692-J-25HTS, 2007 WL 1247305, *2 (M.D. Fla. April 30, 2007) (internal quotations and citations omitted). "Ordinarily the movant must obtain the protective order before the date set by Federal Rules of Civil Procedure for compliance with the discovery request. Unless the movant has no opportunity to seek a protective order in a timely fashion, the time limitation applies and precludes a movant's objection later." *Stewart v. Kaplan*, No. 87-C3720, 1988 WL 10883, *1 (N.D. Ill. Feb. 8, 1988). Similarly, this Court's local rules provide that the "mere filing of a motion for a protective order does not, absent an order of the Court granting the motion, excuse the moving party from complying with the discovery requested or scheduled." S.D. Fla. Local Rules, Appendix A ("Discovery Practices Handbook").

The Studios' motion is untimely for several reasons. Responses to the Antipiracy Vendor subpoenas and the Rule 34 document requests to the Studios were all due many weeks (and in some cases months) ago. The Studios' failure to make this motion before the date on which the responses were due renders this motion untimely and is grounds for denial of the motion. The

---

[6] One of the five subpoenas – to MIMTID – was served a day later, on June 1, 2011. *See* Schoenberg Decl ¶ 3, Ex. E.

Studios' motion is also untimely under this Court's local rules, which require that all discovery motions be filed within 30 days of "the occurrence of grounds for the motion." *See* Local Rule 26.1(h)(1). There can be no real dispute that the "occurrence of the grounds for the motion" is the date on which the subpoenas and document requests were served.[7]

### B. Relevance and Standard for Discovery

The Studios devote the majority of their motion to arguing that the information sought by Hotfile is not relevant to certain issues in the litigation. However, a party to the litigation does not have standing to object on the basis of relevance to a subpoena issued to a third party. *See Bender v. Tropic Star Seafood, Inc.*, No. 4:07-cv-438-SPM/WCS, 2008 WL 2824450, at *2 (N.D. Fla. July 21, 2008) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."). None of the subpoenaed third parties, who would have had standing to raise a relevance argument, have filed a motion to quash or for a protective order. Given that relevance is the primary basis for the Plaintiffs' motion, the motion should be denied.

The Studios' relevance arguments, in any event, lack merit. As explained below, the Studios' and their Antipiracy Vendors' investigations of Hotfile and their copyright enforcement efforts, particularly as they relate to this case, are relevant and critical to issues raised by the Studios themselves. Further, the Studios' attempt to conceal such information runs counter to the broad scope of discovery permitted by the Federal Rules. Rule 26(b) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be

---

[7] Plaintiffs – who scrupulously did not include any proofs of service with the copies of the subpoenas and document requests they submitted with their motion (which show the dates when they were served) – apparently claim that their motion is timely because the parties' had filed a joint motion to extend to sixty days the time in which to file discovery motions. *See* Platzer Decl. ¶ 17. But the Court denied that joint motion by Order dated June 27, 2011. (Dkt. No. 88.) While the Court did ultimately grant the parties some additional time to file certain discovery motions, that Order is directed *only* to *motions to compel*. (*See* Dkt. Nos. 100, 103.) Accordingly, this motion for a protective order is untimely. Plaintiffs may also contend that the 30 days did not begin to run until the third party subpoena recipients served their written responses. Schoenberg Decl. ¶ 7. If that were the case, however, it would allow a party to unilaterally provide itself with a 30-day extension of time on making a motion for protective order by serving written objections. It would also fly in the face of the rule that protective order motions must be made "immediately" and no later than the date set for compliance with the discovery request. *Laughon,* 2007 WL 1247305, at *2 .

>admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). This District has explained the scope of Federal Rule discovery as follows:

>With respect to the issue of "relevancy" of discovery, discovery rules "are to be accorded a broad and liberal treatment."…The key phrase in this definition—"relevant to the subject matter in the pending action"—has been construed broadly to encompass *any matter that bears on, or that reasonably could lead to other matter [sic] that could bear on, any issue that is or may be in the case*. Consistently with the notice pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

*Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 607 (S.D. Fla. 1991) (Paine, J.) (citations omitted) (emphasis added). This District has expressly held that discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has *no possible bearing* on the claims and defenses of the parties or otherwise on the subject matter of the action. *Wrangen v. Pa. Lumbermans Mut. Ins. Co*., 593 F. Supp. 2d 1273, 1277 (S.D. Fla. 2008)

The Antipiracy Materials are highly relevant to core issues in this litigation. The Studios identify only two issues to which they allege the Antipiracy Materials are not relevant: (1) Plaintiffs' and Defendants' compliance with the DMCA, and (2) Defendants' right and ability to control infringement on hotfile.com. Mot. at 3-4. The Studios' limited concept of relevance is directly at odds with the Federal Rules of Civil Procedure and should not prevail. The Antipiracy Materials are relevant not only to the two issues set forth above but also to a variety of other issues, as discussed below. Indeed, The Studios' and their Antipiracy Vendors' activities and investigations of Hotfile are critical to Hotfile's defense and counterclaims in this case.

In fact, these very issues were litigated in a similar copyright infringement suit and were found to be relevant. In *Viacom International Inc. v. YouTube, Inc*., No. C-08-80211-JF, 2009 WL 102808 (N.D. Cal. Jan. 14, 2009), YouTube served a subpoena on BayTSP, one of Plaintiffs' antipiracy vendors at issue in this motion, seeking, among other things, documents and communications (1) relating to BayTSP's monitoring and investigation of YouTube for

infringement, (2) comparing YouTube with other online services, and (3) relating to BayTSP's relationship with the plaintiff Viacom. *See* Schoenberg Decl. ¶ 10, Ex. H, Order Granting Defendant YouTube's Motion to Compel, 2009 WL 102808 at 3 (N.D. Cal. Jan. 14, 2009) ("*YouTube* Order"). YouTube filed a motion to compel after BayTSP—who made arguments identical to those made by the Studios in their motion—refused to produce responsive documents. The court, finding such information relevant to the copyright infringement litigation, granted YouTube's motion to compel on even broader topics than those sought by Defendants here. *Id*. at 4-5 (also finding that documents relating to entities besides plaintiff Viacom to be relevant and discoverable). This Court should rule the same as well.

### 1. The Antipiracy Materials are Relevant to the Studios' Theories of Indirect Infringement and Discovery of Them is Needed for Hotfile to Rebut Plaintiffs' Claims.

Plaintiffs claim that some combination of "knowledge" and "control" supports a finding of contributory or vicarious infringement here. Compl. ¶¶ 44, 62. It is well settled, however, that "knowledge" and "control" over copyright infringement in the cyberlaw context depend on the ability to identify specific infringing files. *See Viacom Intern. Inc., v. YouTube, Inc.*, 718 F. Supp. 2d 514 (S.D.N.Y 2010). This is not a simple exercise, because any given use can be fair use, authorized use, or licensed use. "[I]f investigation of 'facts and circumstances' is required to identify material as infringing, then those facts and circumstances are not 'red flags'" of infringement. *UMG Recordings, Inc. v. Veoh Networks Inc*., 665 F. Supp. 2d 1099, 118-09. Thus, the Studios' own investigation – as carried out by the Antipiracy Vendors – bears upon what sort of investigation Hotfile supposedly should have done to investigate infringement provides a way for Hotfile to prove that it should not be imputed to have "knowledge" of infringement. *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc*., 907 F. Supp. 1361 (N.D. Cal. 1995). Indeed, the Studios' and the Antipiracy Vendors' first-hand interactions, downloads, and factual discussions – among other things – regarding Hotfile's hosted content are of key relevance.

Similarly, documents may show that the Studios make tactical decisions to "leave up" content that they own. This could be (a) because they wish to promote these works (including trailers) as Viacom did in the *Viacom v. YouTube* matter, (b) because they view the use as "fair use," or (c) due to errors – all of which corroborate the that difficulty anyone, including Hotfile which is a file-hosting service provider – faces in policing infringement on the Internet and

would serve to undermine a claim of knowledge. *YouTube*, 718 F. Supp. 2d 514. Where files are being placed on a site voluntarily or with authorization, a service provider like Hotfile cannot know and thus should not be imputed with knowledge of whether any given file is infringing. *See UMG v. Veoh*, 665 F. Supp. 2d at 1110 n.13 (where a single artist affiliated with the plaintiff had uploaded one video to Veoh, Veoh could not be charged with knowledge of the infringements that plaintiff alleged.); *id.* at 1109 ("of the 244,205 videos on Veoh labeled 'music video,' 221,842 were *not* identified as unauthorized by the Audible Magic filter.") (emphasis in original). Such voluntary posting or "leaving up" of works is also indicative of "substantial non-infringing uses," which provide a safe harbor to contributory infringement under *Sony v. Universal*, 464 U.S. 417 (1984).

The Studios' conclusory statement that their Antipiracy Materials are not relevant to show Defendants' ability to control infringement, Mot. at 6, defies logic. The Antipiracy Vendors' sole business is to investigate and police infringement on behalf of copyright holders. To that end, many, if not all, of the Antipiracy Vendors have apparently developed and employ highly sophisticated, proprietary technologies and procedures by which they identify infringement on online sites.[8] Defendants, on the other hand, are in the business of providing file-hosting services. Accordingly, to counter the Studios' claim that Defendants have the right and ability to control infringement on hotfile.com, Defendants are entitled to discover what efforts the Studios and their Antipiracy Vendors undertake in investigating and policing copyright infringement. Hotfile cannot show that it does not have the expertise, means, resources, or obligation to control infringement on hotfile.com if Hotfile is not allowed to know what, in the Studios' opinion, is needed to do so.

Seeing the documents regarding the Studios' investigations is also essential for Hotfile's potential 17 U.S.C. § 512(f) counterclaim. Since § 512(f) provides a cause of action against a party who "*knowingly* misrepresents that material or activity is infringing," documents showing what investigation the Studios and the Antipiracy Vendors took regarding noninfringing material that they nonetheless had removed are relevant to establishing Plaintiffs' knowledge of their misrepresentations.

---

[8] In meet and confer discussions with Hotfile, counsel for each of the Antipiracy Vendors have taken the position that their technologies and procedures constitute confidential trade secrets.

### 2. The Antipiracy Materials are Relevant to Refute Plaintiffs' Claims as to Plaintiffs' Ability to Police Their Own Content Online.

Documents relating to the processes and technologies used by the Studios and their Antipiracy Vendors to identify infringing content on hotfile.com, and the Studios' communications with their Antipiracy Vendors regarding such content are relevant to refute their assertion that the burden of policing online sites is too high. *See* Compl. ¶ 37 ("plaintiffs are left to play catch-up, constantly trying to identify and take down content Hotfile encourages its users to upload and promote. Indeed, for well over a year copyright owners, including plaintiffs, have sent Hotfile notices specifically identifying hundreds of thousands of infringing files, seeking to have Hotfile meaningfully address the massive infringement of plaintiffs' copyrighted works."); ¶ 38 ("defendants have intentionally attempted to stymie plaintiffs' copyright enforcement efforts."); *see also* Plaintiffs' Opposition to Motion to Dismiss at 12 (Dkt. No. 52) ("Defendants' takedown practices are, at best, disingenuous").

The Studios' allegation—that Hotfile designed its system to overwhelm the notice-and-takedown convention—only succeeds if the Studios and their Antipiracy Vendors are in fact overwhelmed. If instead discovery demonstrates that the Studios are fully capable of sending sufficient numbers of takedown requests—indeed Hotfile has provided them customized systems to do this instantaneously, which the Studios have roundly praised for two years—then the Studios' theory of inducement fails. In short, by making their own supposed helplessness in investigating Hotfile an issue in this case, the Studios cannot now justifiably block discovery of just how capable they actually are.

Evidence that the Studios instructed their Antipiracy Vendors to leave infringing content on hotfile.com so as to stock up "evidence" of "massive infringement," would also be relevant to counter the Studios' claims of rampant infringement on the service. The Studios' communications with the Antipiracy Vendors and the processes, procedures, and instructions by which the Antipiracy Vendors enforced (or did not enforce) the Studios' copyrights are crucial to refute or verify that the Studios undertook legitimate copyright enforcement efforts.

The Studios themselves have put the nature of their enforcement efforts in issue; they cannot in fairness accuse Hotfile of secondary copyright infringement by virtue of Hotfile's supposed frustration of their enforcement activities without providing discovery into the legitimacy of those enforcement efforts. *See Stern v. O'Quinn*, 253 F.R.D. 663, 676 (S.D. Fla. 2008) (discussing elements of implied "at issue" waiver).

### 3. The Antipiracy Materials are Relevant to Defendants' Potential Affirmative Defenses.

The Studios' enforcement efforts and their communications with the Antipiracy Vendors are necessary to determine whether the Studios directed their Antipiracy Vendors <u>not</u> to notify Hotfile of infringing content on hotfile.com.  Should such information come to light, the Studios will be estopped from asserting that Hotfile "stymie[d] Plaintiffs' copyright enforcement efforts" as to that content.[9]  *See Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) ("A plaintiff is estopped from asserting a copyright claim if he has…has committed covert acts such as holding out ... by silence or inaction.").  Early indications are that the Studios deliberately chose <u>not</u> to take down a great majority of the allegedly infringing works in suit.

The Antipiracy Materials, such as internal communications between the Antipiracy Vendors and the Studios, will show whether the Studios sat on their rights.  In particular, the dates on which specific infringing files were identified will be critical to potential affirmative defenses of laches and failure to mitigate damages.  If the Antipiracy Vendors identified content as infringing when the content first appeared on hotfile.com, but the Studios did nothing and chose to leave the content up, the Studios cannot be in a position to claim they were damaged.

### 4. The Antipiracy Materials are Relevant to Both Plaintiffs' and Defendants' Compliance with the DMCA.

Plaintiffs' and their Antipiracy Vendors' communications regarding and processes by which they identify infringing content on hotfile.com and decide to send DMCA takedown notices are relevant to Hotfile's and Plaintiffs' compliance under the DMCA, including but not limited to whether Hotfile has actual knowledge that material on its system is infringing, 17 U.S.C. § 512(c)(1)(A)(i), whether Hotfile is aware of facts and circumstances from which

---

[9] Plaintiffs' citation to *DirectTV, Inc. v. Trone*, 209 F.R.D. 455 (C.D. Cal. 2002), is inapposite. In *Trone*, the court ruled that the defendant—accused of manufacturing devices designed to illegally decrypt the plaintiff's television system—did not need access to technical documents describing plaintiff's encryption technology where the defendant made "general, conclusory allegations" regarding the relevance of its ill-defined defenses.  *Id.* at 459-460.  Here, Plaintiffs allege that Hotfile is liable, in part, because its website is purportedly designed to "stymie" Plaintiffs' enforcement efforts.  Accordingly, evidence regarding Plaintiffs' enforcement efforts is plainly relevant, as Hotfile cannot plausibly deny such an allegation without evidence as to what, exactly, constitutes Plaintiffs' enforcement efforts.  Moreover, the attorneys' eyes only provision in the stipulated protective order in this case should resolve Plaintiffs' concerns about the disclosure of purportedly sensitive trade secrets.

infringement is apparent, § 512(c)(1)(A)(ii), and whether Hotfile promptly disables access to works alleged to be infringing in a takedown notice, § 512(c)(a)(C) & (c)(3)(A)(ii).

The DMCA immunizes services like Hotfile from copyright liability for material uploaded by users, as long as the services are properly responsive to notifications of alleged copyright infringement from content owners. *See Io Group, Inc. v. Veoh Networks, Inc*., No. C06-03926 HRL, 2008 WL 4065872, at *19-21 (N.D. Cal. Aug. 27, 2008). Service providers like Hotfile who abide by the "notice and takedown" procedure of the DMCA are entitled to a "safe harbor" from liability for copyright infringement. 17 U.S.C. § 512(c); *Io Group*, 2008 WL 4065872, at *15; *see also* Sen. Rep. No. 105-190 at 21 (1998) (The notice and takedown procedure also "balance[s] the need for rapid response to potential infringement with the end-users legitimate interests in not having material removed without recourse."). Inherent in this "notice and takedown" procedure is the requirement that the copyright holder notify the ISP of the allegedly infringing content. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 n.4 (9th Cir. 2007) ("Congress addressed the issue of notice in the DMCA, which grants a safe harbor against liability to certain Internet service providers, even those with actual knowledge of infringement, if they have not received statutory-compliant notice."), *cert. denied*, 128 S. Ct. 2871 (2008).

Despite the Studios' attempt to deflect attention from their own activities,[10] the "notice and takedown" procedure under the DMCA clearly places the burden to enforce copyright on the copyright holder, and the DMCA expressly relieves online services of any obligation to monitor their services or to affirmatively seek facts indicating infringement. 17 U.S.C. § 512(m). In interpreting this statutory immunity, the Ninth Circuit has held that "[t]he DMCA notification procedures place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—*squarely on the owners of the copyright*." *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) (emphasis added). Under the DMCA, copyright holders must affirmatively notify service providers to "expeditiously" act upon receipt of such notices to remove the alleged infringement. *Id*. As Congress explained: "[A service] provider could not be expected [upon viewing a photograph

---

[10] Even assuming, contrary to law, that the burden to police copyright infringement, including through sending DMCA takedown notices, is not on the copyright holder, once the Studios take affirmative steps to enforce their copyrights, such as by policing websites and sending takedown notices, those activities obviously become relevant.

posted to the service], to determine whether the photograph was still protected by copyright or was in the public domain; if the photograph was still protected by copyright, whether the use was licensed; and if the use was not licensed, whether it was permitted under the fair use doctrine." S. Rep. No. 105-190 at 48 (1998). Without significant direct involvement by copyright holders, Hotfile cannot have the knowledge of the contents of the millions of files uploaded and accessed through its service. The Studios have apparently assigned these policing, documentation and notification responsibilities to various Antipiracy Vendors. Given this role, the Studios' communications with the Antipiracy Vendors, the decision-making process about when to send a DMCA takedown notice, and the process by which the Studios and their Antipiracy Vendors identify infringement are critically important to Hotfile's defense under the DMCA. Further discovery of such documents in Plaintiffs' and their Antipiracy Vendors' possession is necessary to provide a full understanding of this issue.

Additionally, the Studios' and their Antipiracy Vendors' communications regarding investigation of infringement on hotfile.com and the processes by which they decide to send takedown notices to hotfile.com are relevant to whether Hotfile promptly disables access to works alleged to be infringing per DMCA Sections 512(c)(1)(C) and (c)(3)(A)(ii). The evidence thus far has shown instances in which the Antipiracy Vendors have applauded Hotfile's responsiveness to takedown notices from copyright holders, including the Studios. Schoenberg Decl. ¶ 13, Exs. J & K (Emails from Warner Bros. praising Hotfile's assistance in policing copyright infringement). The Antipiracy Vendors' internal documents may further shed light on Hotfile's effectiveness in responding to takedowns and implementing tools to assist copyright holders in policing infringement. Such documents would rebut the Studios' contention that Hotfile encourages infringement.

### C. Plaintiffs' Confidentiality Arguments Should Be Rejected

#### 1. Plaintiffs Fail to Show Any Harm That Would Result From Disclosure of the Antipiracy Materials.

As the parties seeking a protective order, the Studios must provide the Court with "good cause" for the protection sought.[11] Fed. R. Civ. P. 26. Good cause for a protective order is

---

[11] In a different context, the Eleventh Circuit has also identified four factors for ascertaining the existence of good cause which include: "(1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order." *In re Alexander Grant & Co. Litigation*, 820 F.2d

13

established "when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3rd Cir. 1995). Although the Court may issue a protective order if good cause is shown, the burden is on Plaintiffs to show the necessity of the protective order, and Plaintiffs must meet this burden with a *particular* and *specific* demonstration of fact as distinguished from stereotyped and conclusory statements. *Ekokotu v. Fed. Express Corp.*, 408 Fed. Appx. 331, 335-336 (11th Cir. Jan. 19, 2011) (unpublished); *Wrangen*, 593 F. Supp. 2d at 1277 (denying the plaintiffs' motion for protective order where the plaintiffs argued that the information sought was not relevant to the action).

The Studios' explanation as to the necessity of their motion consists of little more than conclusory statements. Mot. at 7 (that "[d]isclosure of [purportedly confidential but unidentified methods used to locate infringement] to persons in the business of infringing Plaintiffs' content would severely prejudice Plaintiffs."); *id*. (that the allegedly confidential investigative methods "could be compromised"); *id*. at 8 (simply stating "there is good cause"). Because the Studios have no plausible explanation of harm from disclosure, they resort to theatrical, but inapplicable, analogies to drug trafficking. Mot. at 8. Plaintiffs' failure to identify even one specific instance of a plausible "clearly defined and serious injury" warrants denial of their motion.[12] *See Glenmede*, 56 F.3d at 483; *Ekokotu*, 408 Fed. Appx. 335-336 (stereotyped and conclusory statements fail to show good cause).

Plaintiffs' reliance *Trone*, 209 F.R.D. 455 (C.D. Cal. 2002), is completely inapposite. *See supra*, n.10. In *Trone*, the court found that the information sought had little relevance to the case, whereas, here, the Studios have expressly put the Antipiracy Materials and the infringement

---

352, 356 (11th Cir. 1987). Plaintiffs' motion fails under this standard too. For reasons described elsewhere in this brief, Plaintiffs have not made the requisite showing of harm. Moreover, Plaintiffs are asking the Court to grant a blanket prohibition, of indefinite duration, on the disclosure of any documents or information relating to Plaintiffs' and their vendors' antipiracy investigations, which runs afoul of elements (2) through (4) under this four factor test. Accordingly, this Motion would properly be denied under this test too.

[12] In the same breath with which the Studios ask the Court to deprive Defendants of access to the Antipiracy Materials based on an unarticulated harm, they seek to reserve their own ability to use the Antipiracy Materials when it suits them. *See* Mot. at 7 n.5 ("Plaintiffs do not intend [their request that the Court protect against disclosure of the methods and technologies Plaintiffs and the Antipiracy Vendors use to locate infringing files] to include the evidence Plaintiffs rely upon in this case." (emphasis added)). Plaintiffs want to have their cake and eat it too.

investigations at issue. Further, to the extent Plaintiffs argue that disclosure of Plaintiffs' enforcement priorities will lead to infringers infringing non-prioritized works, as discussed below, Plaintiffs may avail themselves of the attorneys' eyes only protection in the protective order to which they stipulated.

### 2. The Antipiracy Materials Sought By Hotfile Are Not Trade Secrets.

Plaintiffs have the burden to show that the Antipiracy Materials are indeed trade secrets. To qualify for protection as a "trade secret," the information must be a secret, the disclosure of which would be harmful to its owner. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313-14 (11th Cir. 2001). Not only do Plaintiffs fail to show that the disclosure of the Antipiracy Materials would be harmful, they also fail to show how the Antipiracy Materials are secret.

Contrary to the Studios' conclusory assertions, the Antipiracy Materials are not trade secrets. *See* Mot. at 8-9 n.6. The Studios' request to have the unilateral ability to use the Antipiracy Materials when it benefits themselves but prevent Defendants from having access to the same materials cuts against any claim that the Antipiracy Materials are trade secrets. Further, the Studios and their Antipiracy Vendors do not consistently treat such information as closely guarded secrets. *See Chicago Tribune Co*., 263 F.3d at 1313-14. In fact, the Studios' Antipiracy Vendors have given interviews publicizing various aspects of their investigative techniques and operations. *See* Schoenberg Decl. ¶ 11, Ex. I (Kevin J. Delaney, *YouTube Magic: Now You See It, Now You Don't*, Wall St. J., Aug. 8, 2007, at A1 (detailing BayTSP's antipiracy operations); *id*. ¶ 12. The Studios' and their Antipiracy Vendors' disclosure of investigative techniques as well as the Studios' reservation of the ability to use the Antipiracy Material to their benefit defeats their attempt to characterize the Antipiracy Materials as trade secrets.

Plaintiffs' citation to *Viacom Int'l Inc. v. YouTube Inc*., 253 F.R.D. 256 (S.D.N.Y. 2008), is also inapposite. There, *the plaintiff* Viacom sought to discover the source code for *defendants* YouTube's and Google's proprietary search technology. *See id*. at 259 ("Plaintiffs move jointly pursuant to Fed. R. Civ. P. 37 to compel YouTube and Google to produce certain electronically stored information and documents, including a critical trade secret: the computer source code which controls both the YouTube.com search function and Google's internet search tool "Google.com."). Defendants have not sought the proprietary source code relating to any antipiracy technologies used by the Antipiracy Vendors. All that Defendants have sought is

15

information relating to the antipiracy investigations, techniques, procedures, and instructions, and related communications, to which Defendants are entitled.[13]

### 3. The Stipulated Protective Order Entered By The Court Mitigates Against Any Alleged Harm.

Even if the Antipiracy Materials are truly sensitive and "trade secret," which they are not, Plaintiffs have stipulated to a protective order that expressly to addresses Plaintiffs' concerns regarding "trade secrets and other confidential research, development, technical, or commercial information that may be produced or provided by the parties or non-parties." *See* Protective Order at 1 (Dkt. 68). Furthermore, the protective order allows parties and non-parties to designate materials as "Highly Confidential," which prevents disclosure of materials so designated to the parties themselves, i.e., an outside counsel only provision. *Id*. ¶ 5. This provision provides adequate protection against the disclosure of competitive or sensitive materials.[14] *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 2008 WL 4500258, at *3 (S.D. Fla. October 3, 2008) (party resisting discovery did not establish harm from disclosure where "agreements may be redacted and protected under the terms of the Confidentiality Order").

Plaintiffs themselves admit that they have stipulated to a protective order, which contains an attorneys' eyes only provision under which Plaintiffs can designate any Antipiracy Materials they believe to be sensitive or confidential. Mot. at 9 n.7. In *Trone*, 209 F.R.D. 455, on which Plaintiffs rely, the court did not consider the use of attorneys' eyes only protection, nor is there any indication that a confidentiality order had been entered in that case.

Indeed, other courts have found that the main purpose of an "attorneys' eyes only" provision is to prevent any potential prejudice due to the production of purported trade secret

---

[13] For Requests that seek documents relating to antipiracy technologies, Defendants are willing to agree to limit production of documents responsive to these Requests to documents sufficient to show the <u>operation</u> of the antipiracy techniques and technologies used to investigate Hotfile.
[14] The cases cited by Plaintiffs in their motion, questioning the ability of counsel to keep disclosed information confidential, are misleading, Mot. at 9 n.7. Every one of those cases addressed disclosure to in-house counsel. There were no disputes over disclosure of the materials at issue to outside counsel. *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc*., 273 FRD 405, 406 (N.D. Ill. 2006); *Brown Bag Software*, 960 F2d at 1469-1471. Under the protective order in the instant case, in-house counsel are not allowed access to "Highly Confidential" materials, and Hotfile is not seeking to have any in-house counsel view such documents.

information. *See, e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992). In *YouTube*, the court expressly found that materials relating to content holders' and their agents' investigations of copyright infringement were not only relevant and discoverable, but that a protective order could adequately address any concerns regarding privacy and sensitive competitive information. *See YouTube* Order at 11 (Schoenberg Decl. ¶ 10, Ex. H.)

> 4. **Even if Plaintiffs Could Show That the Antipiracy Materials Were Trade Secrets, Their Disclosure is Both Relevant and Necessary to Hotfile's Defense in this Action.**

As discussed at length above, the Antipiracy Materials are not only relevant but crucial to Defendants' defenses and counterclaims. The Studios contradict themselves in arguing that the information Defendants seek is available from other sources. Mot. at 10-11. These materials are in the sole possession of Plaintiffs' Antipiracy Vendors.[15] While general information regarding methods of identifying infringing content online may be publicly available, the Studios' and their Antipiracy Vendors' investigations specific to Hotfile and this litigation are not. Indeed, the Studios argue that such materials are treated by Plaintiffs as "closely guarded secrets." Mot. at 9. And although Plaintiffs have inferred that *some* of the materials may be in Plaintiffs' possession, there is no indication that *all* responsive, non-privileged documents from the Antipiracy Vendors' are also in Plaintiffs' possession. In any event, Defendants are entitled to seek relevant discovery from the entities who possess it.

> D. **This Motion Is Part of a Broader Pattern of Obstruction to Prevent Defendants from Obtaining Relevant Discovery.**

This motion is one part of an ongoing attempt by the Studios to stymie Defendants from obtaining any discovery into their investigation of Hotfile. First, the Studios appear to have unilaterally gathered documents from at least four of the five of the Antipiracy Vendors. Next, they identified the Antipiracy Vendors in their initial disclosures. Schoenberg Decl. ¶ 8. Hotfile subpoenaed the Antipiracy Vendors to try to obtain their relevant documents. The Antipiracy Vendors responded at first by refusing to produce the documents they had given to the Studios. After the Studios filed this belated motion, the Antipiracy Vendors have now taken the position that they will not produce many categories of responsive documents while this motion is pending. Schoenberg Decl. ¶ 9. Lastly, the Studios suggest that even if the motion is denied,

---

[15] To the extent Plaintiffs are arguing that Defendants should use other information to prove their case, that argument is also unpersuasive. Plaintiffs cannot dictate what evidence Defendants may or may not use to defend themselves against Plaintiffs' allegations.

17

they may nonetheless withhold the vast majority of responsive documents by asserting the attorney work product doctrine and/or the attorney-client privilege.[16] *See* Mot. at 11 n.12 ("[The vast majority of the Antipiracy Materials Defendants are seeking would be subject to an attorney-client privilege or the work product doctrine. . . . Plaintiffs will address such privilege and work product claims as appropriate under the Federal and Local Rules."); *id*. at 14 ("Even leaving aside the extent to which this request calls for privileged communications . . . ."). To further obscure Defendants' ability to learn anything about Plaintiffs' investigations, Plaintiffs have filed a separate motion with this Court trying to avoid serving an item-by-item privilege log as required by the local rules. (Dkt. No. 91.) The Court should not permit this kind of obstruction of discovery into relevant material.

## IV.     CONCLUSION

Hotfile respectfully requests that the Court deny Plaintiffs' motion for a protective order regarding Plaintiffs' antipiracy investigations and enforcement procedures. Plaintiffs' motion is untimely. And on the merits, Plaintiffs have failed to meet their burden of showing good cause for the relief sought.

DATED: August 5, 2011

By:   /s/ Roderick M. Thompson
Roderick M. Thompson (admitted *pro hac vice*)
Andrew Leibnitz (admitted *pro hac vice*)
Anthony P. Schoenberg (admitted *pro hac vice*)
Deepak Gupta (admitted *pro hac vice*)
Janel Thamkul (admitted *pro hac vice*)
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

And

---

[16] For reasons explained to this Court previously, *see* Dkt. No. 111, Defendants believe Plaintiffs' work product and privilege claims lack merit.

CASE NO. 11-20427-CIV-JORDAN

/s/ Janet T. Munn
Janet T. Munn, Fla. Bar No. 501281
Rasco Klock, et al.
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

*Counsel for Defendants Hotfile Corp. and Anton Titov*

CASE NO. 11-20427-CIV-JORDAN

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2011, I filed the foregoing document with the Clerk of the Court in the conventional manner. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Janet T. Munn
Janet T. Munn

**GRAY-ROBINSON, P.A.**
Karen L. Stetson, Fla. Bar No.: 742937
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305.416.6880
Fax: 305.416.6887

**JENNER AND BLOCK, LLP**
Steven B. Fabrizio (*Pro Hac Vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice*)
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice*)
Email: lplatzer@jenner.com
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Phone: 202.639.6000
Fax: 202.639.6066