# EXHIBIT "H"



Page 1

Not Reported in F.Supp.2d, 2009 WL 102808 (N.D.Cal.)
**(Cite as: 2009 WL 102808 (N.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court, N.D. California,
San Jose Division.
VIACOM INTERNATIONAL, INC., et al., Plaintiffs,
v.
YOUTUBE, INC., et al., Defendants.

No. C-08-80211 MISC. JF (PVT).
Jan. 14, 2009.

West KeySummary**Copyrights and Intellectual Property 99** ⇐84

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                      99k84 k. Discovery. Most Cited Cases

    Documents requested by online video hosting service of copyright monitoring company, as they related to copyright holders and related entities, were relevant to copyright holder's infringement action against online video hosting service. The requested documents that reflected monitoring by monitoring company of online video hosting service's website may have refuted copyright holder's assertions that their burden for policing the website was too high. Online video hosting service also expected that the documents sought would refute copyright holder's claims that it hindered copyright owners' attempts to locate infringing content on its website. Fed.Rules Civ.Proc.Rules 26(b), 34(a), 45, 28 U.S.C.A.

Susan Kohlmann, Jenner & Block, LLP, Louis M. Solomon, Proslauer Rose LLP, Max W. Berger Bernstein Litowitz Berger & Grossman, New York, NY, Donald B. Verrilli, Jr., Jenner & Block LLC, Washington, DC, Stephen D. Hibbard, Shearman & Sterling LLP, San Francisco, CA, Stuart Jay Baskin, Shearman & Sterling LLP, New York, NY, for Plaintiffs.

Brandon D. Baum, Eric Evans, Mayer Brown LLP, Caroline Elizabeth Wilson, David H. Kramer, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, John P. Mancini, Mayer Brown LLP, New York, NY, for Defendants.

### ORDER GRANTING DEFENDANT YOUTUBE'S MOTION TO COMPEL

PATRICIA V. TRUMBULL, United States Magistrate Judge.

### INTRODUCTION

*1 Defendants YouTube, Inc., YouTube LLC and Google, Inc. (collectively "YouTube" or "defendants") move to compel third-party BayTSP, Inc. ("BayTSP") to produce documents responsive to a subpoena *duces tecum* served on or about September 27, 2007. Third-party BayTSP opposes the motion. On December 9, 2008, the parties appeared for hearing. Plaintiffs Viacom International, Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures Corporation and Black Entertainment Television LLC, (collectively "Viacom" or "plaintiffs") appeared in part.[FN1] Having read the papers and considered the arguments of counsel, defendants' motion to compel is granted.[FN2]

> FN1. Because plaintiffs have undertaken review of third-party BayTSP documents for privilege and work-product doctrine, they appeared at the hearing for the limited purpose of determining the timing of the proposed production. Transcript of Proceedings Before the Honorable Patricia V. Trumbull, U.S. Magistrate Judge, December 9, 2008. ("Tr."). Tr. 3:22-25; 4:1.
>
> Viacom expects that its own documents will be produced to YouTube in or around March 15, 2009. Tr. 31: 21-24.
>
> FN2. The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

### BACKGROUND

Viacom and its numerous affiliates, including Comedy Partners, Country Music Television, Inc.,

Not Reported in F.Supp.2d, 2009 WL 102808 (N.D.Cal.)
**(Cite as: 2009 WL 102808 (N.D.Cal.))**

Paramount Pictures Corporation and Black Entertainment Television, create, produce and distribute, *inter alia,* television programs, motion pictures and short form audiovisual works across all media platforms for audiences worldwide. Plaintiffs have undertaken certain and significant efforts to protect their original works, including availing themselves of the protections provided by copyright laws. As a general matter, licensing, distribution and public performance of plaintiffs' original works has been limited to authorized mediums, formats and venues.

Founded in 2005, YouTube is an online video hosting service that enables users to share their personal and original video clips across the Internet through websites, mobile devices, blogs and electronic mail.[FN3] The service hosts hundreds of millions of video clips and its vast range of content includes forums for political candidates, reportings from remote war zones like Darfur, stand-up routines, drunken ramblings, backyard science projects to delivery room footage. YouTube has a global audience of tens of millions of people and is the number one video site on the Internet. Users upload new clips to YouTube's video hosting website every day.

> [FN3.] YouTube is a wholly owned subsidiary of Google, Inc. ("Google"). In 2006, Google acquired YouTube for $1.65 billion.

In the underlying action pending in the Southern District of New York, Viacom has alleged claims against YouTube for direct (public performance, public display, reproduction and distribution), contributory and vicarious copyright infringement and has sought damages in excess of $1 billion.[FN4] Copyrighted works at issue, include, but are not limited to, popular television programs and motions pictures such as "SpongeBob, SquarePants," "The Daily Show with Jon Stewart," "The Colbert Report," "South Park," "Ren & Stimpy," "MTV Unplugged," "An Inconvenient Truth," and "Mean Girls." In sum, plaintiffs have alleged that YouTube has "fuel[ed] an explosion of copyright infringement by exploiting the inexpensive duplication and distribution made possible by digital technology." First Amended Complaint filed on April 18, 2008, at ¶ 1. ("FAC"). YouTube profits from the massive Internet traffic generated by users who have unlawfully uploaded plaintiffs' original and copyrighted works. FAC at ¶ 5. And YouTube obstructs plaintiffs' efforts to locate such works. FAC at ¶¶ 7-8. As a result, plaintiffs allege that certain of their writers, composers and performers are being denied just compensation for their original works. FAC at ¶ 2.

> [FN4.] Viacom filed its action on March 13, 2007. A tag-along putative class action was filed on May 4, 2007. The two actions have been consolidated for purposes of discovery.
>
> YouTube represents that the discovery plan in the underlying litigation provides for third-party discovery to proceed first. Tr. 4:17-18.

**\*2** In its defense, YouTube asserts that the Digital Millenium Copyright Act ("DMCA") immunizes intermediary service providers, such as itself, from copyright liability for material uploaded by users so long as service providers timely respond to notifications from content owners of alleged copyright infringement. YouTube notes that the Ninth Circuit has recently held that, under the DMCA, the burden of policing copyright infringement rests squarely on copyright owners. YouTube claims that it has taken a host of industry-leading steps to assist copyright owners stop the unauthorized posting and viewing of copyrighted content. And YouTube claims it has been "extremely responsive" to takedown notices from copyright holders.

BayTSP located in Los Gatos, CA describes itself as "a service company retained by copyright owners to identify individuals who are making their copyrighted works available for download on the Internet." Sending infringement notices on behalf of clients and monitoring for compliance are among the services offered by BayTSP. Prior to filing the lawsuit (and at least as early as June 2006), Viacom and other copyright owners engaged third-party BayTSP to police, document and notify YouTube when potentially infringing material was located on its website. Indeed, an article located on BayTSP's website states that the Viacom lawsuit was predicated on specific work done by BayTSP. Viacom hired BayTSP to use its "crawler software" "to scour every corner of YouTube's site," and in turn, BayTSP identified more than 150,000 unauthorized clips on the YouTube website. Viacom's General Counsel has stated that to do so, costs the company "tens of thousands of dollars a month."

On September 27, 2007, YouTube served

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 102808 (N.D.Cal.)
**(Cite as: 2009 WL 102808 (N.D.Cal.))**

third-party BayTSP with a subpoena *duces tecum* seeking the production of documents. ("subpoena"). BayTSP served objections to the various document requests. Thereafter, the parties met and conferred in numerous efforts to resolve their discovery dispute.[FN5] To date, third-party BayTSP has not produced any responsive documents.

> FN5. The parties state they have undertaken extensive efforts to meet and confer, including twenty-four formal letters, numerous emails and at least six substantive teleconferences between the parties' counsel.

On May 15, 2008, a second amended stipulated protective order was entered in the underlying action. *See* YouTube's Reply In Support of Motion to Compel Production of Documents, Exh. A. ("Stipulated Protective Order").

### LEGAL STANDARDS

Rule 45 authorizes issuance of a subpoena to command a nonparty to produce designated documents, electronically stored information, or tangible things in its possession, custody or control. Fed.R.Civ.P. 45(a)(1)(A)(iii). "[T]he scope of discovery through subpoena is the same as that applicable to Rule 34 and the other discovery rules." Advisory Committee Notes (1970). Rule 34 states that "[a] party may serve on any other party a request within the scope of Rule 26(b)." Fed.R.Civ.P. 34(a). Rule 26(b) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Indeed, "[a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt ... The court should be permissive." Gonzales v. Google, Inc., 234 F.R.D. 674, 681 (N.D.Ca.2006) (citing Truswal Sys. Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1211-1212 (Fed.Cir.1987). Notwithstanding the above, discovery is subject to certain limitations and is not without "ultimate and necessary boundaries." *Id.* at 680 (citing Pacific Gas and Elec., Co. v. Lynch, 2002 WL 32812098, at *1 (N.D.Cal. August 19, 2002).

**\*3** Under Rule 26, a court must limit the frequency or extent of discovery if it determines any of the following:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(i), (ii) and (iii).

A nonparty commanded to produce documents and tangible things may serve objections to any of the documents or materials sought. Fed.R.Civ.P. 45(c)(2)(B). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a [nonparty] subject to a subpoena." Fed.R.Civ.P. 45(c)(1). "Rule 26(c) and Rule 45(c) (3) give ample discretion to district courts to quash or modify subpoenas causing 'undue burden.' " Exxon Shipping Co. v. U.S. Dept. of Interior, et al., 34 F.3d 774, 779 (9th Cir.1994).

A nonparty withholding subpoenaed information on the grounds of privilege or otherwise subject to protection must serve a privilege log describing the nature of the documents withheld so that the other parties may assess the privilege or protection claimed. Fed.R.Civ.P. 45(d)(2)(A)(ii).

### DISCUSSION
**I. Document Requests**

The subpoena includes 13 specific document requests. YouTube describes the following four general categories of documents:

(1) All documents and communications concerning

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 102808 (N.D.Cal.)
**(Cite as: 2009 WL 102808 (N.D.Cal.))**

YouTube, including those reflecting use of YouTube by BayTSP and its clients, monitoring of YouTube by BayTSP and its clients, and comparisons of the responsiveness of YouTube to other online services (Document Request Nos. 1, 3, 4, 5, 8, 13);

(2) All documents and communications regarding BayTSP's relationship with Viacom, including documents regarding copyrights Viacom claims to own and the litigations in New York (Document Request Nos. 6, 9);

(3) All documents and communications regarding the nature of BayTSP's monitoring and identification processes, its training of monitors, and its effectiveness or lack thereof with respect to identification of allegedly infringing materials online (Document Request Nos. 2, 7, 10); and

(4) All documents sufficient to identify the entities that have retained BayTSP to monitor the YouTube service, and documents sufficient to identify prior litigations in which BayTSP has provided testimony (Document Request Nos. 11, 12).

With the exception of document request no. 4, BayTSP has objected to all of the document requests set forth above. In response to document request no. 4, BayTSP stated that it had no responsive documents.

**A. Relevance**

**1. Viacom-related Entities**

*4 YouTube argues the above-specified document requests are relevant for a myriad of reasons. First, documents that reflect monitoring by Bay TSP of the YouTube website may refute plaintiffs' assertions that their burden for policing the website is too high. Contrary to the obligations placed on content owners by the DMCA, plaintiffs argue that their burden is too high. For its part, YouTube counters that the documents will likely show that content owners, such as plaintiffs, can effectively police their content online. Second, the documents will likely show that YouTube should not assume the burden to police its website and recognize unauthorized content thereon. Indeed, YouTube expects that documents may show that plaintiffs selectively notified YouTube about what content should be taken down while leaving still other content on the website to reap certain promotional benefits. Third, documents may show that BayTSP itself, acting on behalf of Viacom and charged with the specific task of identifying plaintiffs' content, regularly made errors in sending DMCA notices to YouTube, demanded removal of content plaintiffs did not own, content that was fair use and content that was otherwise authorized for uploading onto the site. YouTube argues that such documents will undercut plaintiffs' assertions that it should have had constructive knowledge of infringing content and therefore, should be required to more proactively monitor its site for infringing content. In other words, YouTube argues that it requires express guidance from copyright owners to determine what content should remain on the website and what content should be removed. Fourth, YouTube expects that other documents sought will refute plaintiffs' claims that it hinders copyright owners' attempts to locate infringing content on its website. YouTube states that the documents will likely show that its efforts to comply with the DMCA are exemplary and that it goes far beyond what the law requires and what other online services have done, to protect the rights of copyright owners. Finally, YouTube argues that, unlike other third parties, BayTSP has volunteered to participate in the litigation by the very nature of the services it has provided to plaintiffs. Viacom designated BayTSP to police its content online and has identified the company in its initial disclosures as the witness solely knowledgeable about the "identification of infringing content on YouTube." YouTube argues that BayTSP accepted a role in the litigation and has even used the role to tout its services in various press releases. And at least two depositions of Viacom witnesses have included extensive references to BayTSP, its role in locating infringing content on the YouTube website and the takedown notices that were sent on plaintiffs' behalf. Additionally, YouTube speculates that BayTSP has been, and will be, compensated by Viacom for most, if not all, of its efforts to respond to the subpoena.

As a general matter, BayTSP has not disputed the relevance of the document requests as they relate to plaintiffs and Viacom-related entities. Accordingly, the court finds that the document requests as they relate to plaintiffs and Viacom-related entities are relevant.

**2. Non-Viacom Related Entities**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 102808 (N.D.Cal.)
**(Cite as: 2009 WL 102808 (N.D.Cal.))**

**\*5** BayTSP, however, does dispute the relevance of the document requests as they relate to non-Viacom related entities. At the hearing, BayTSP claimed that any relevance related to any of the non-Viacom-related entities was remote at best. YouTube responded that the documents pertaining to the non-Viacom related entities were relevant to show that other clients of the company may have also instructed BayTSP that certain of their content remain on the YouTube website. In this vein, YouTube contends that the documents underscore plaintiffs' claims that YouTube is in the best position to discern what content should remain on the website and what content should be removed.

YouTube's stated reasons for obtaining documents related to the non-Viacom related entities appear reasonably calculated to lead to the discovery of admissible evidence. "Rule 26 does not require that the information sought necessarily be directed at the ultimate fact in issue, only that the information sought be reasonably calculated to lead to admissible evidence in the underlying litigation." *Gonzales v. Google, Inc.,* 234 F.R.D. at 683. Accordingly, the court finds that the documents requests as they relate to non-Viacom related entities are relevant too.

**B. Undue Burden**

**1. Viacom-related Entities**

BayTSP complains that the scope of the documents sought by the subpoena is overly broad and originally encompassed over four terabytes of data. Using common search terms to electronically filter the collected data, yielded more than one million documents which were identified as responsive to the various document requests. BayTSP claims that each of these documents may average as many as 5 pages, meaning there would be a total of more than 5 million pages of documents. Undoubtedly, all of the documents require review and sorting, *inter alia,* for responsiveness and privilege. Plaintiffs themselves have undertaken such a review.

BayTSP further complains that it has already expended over 1900 hours in the last six months searching and reviewing the documents. At present, the number of responsive documents has been narrowed to 650,000 or half of the documents originally identified through the electronic filter. In its papers, BayTSP states that it expects to have had commenced production on a rolling basis by November 21, 2008 and by the date of the scheduled hearing, expects that many of the responsive documents will have been produced.

YouTube speculates that BayTSP will be compensated by Viacom for all of its efforts to comply with the subpoena. And therefore, BayTSP faces no economic burden in complying with the subpoena. Indeed, at the hearing, YouTube sought to confirm its speculation, at numerous turns, by pressing plaintiffs and BayTSP to confirm whether any such agreement existed.

At the hearing, Viacom stated that "it was not aware of any written undertaking [ ] to indemnify BayTSP for the costs of complying with the subpoena [and was] fairly confident that those understandings would not reach the scope of the kind of production that's been sought from BayTSP, which is far beyond anything for which Viacom had retained BayTSP to provide services." Tr. 45:14-21. BayTSP also acknowledged that "Viacom has been paying and reimbursing BayTSP for its legal costs and so forth for responding." Tr. 93:3-7.

**\*6** Based on the above and at this juncture, BayTSP has not established undue burden for production of documents regarding Viacom-related entities. BayTSP's request that YouTube bear the costs for complying with the subpoena is denied without prejudice to a further motion for shifting costs. *See, e.g., OpenTV v. Liberate Techs.,* 219 F.R.D. 474, 479 (N.D.Cal.2003) (cost of extraction of source code to be split equally); and *Semsroth v. City of Wichita,* 239 F.R.D. 630, 634-640 (D.Kan.2006) (detailed analysis of cost-shifting).

**2. Non-Viacom related Entities**
BayTSP further argues that the scope of the requests unduly burdens its business and will likely have a chilling effect on its other customers who have come to believe that their business dealings with BayTSP would remain confidential. If the court were to compel production of documents related to non-Viacom related entities, BayTSP would have to undertake the lengthy and involved process of notifying its other clients (namely HBO, Universal and Fox and other entities) about the potential disclosure of documents related to their businesses. Tr. 26: 3-12. BayTSP ar-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 102808 (N.D.Cal.)
**(Cite as: 2009 WL 102808 (N.D.Cal.))**

gues that each of the non-Viacom related entities may be compelled on their own to seek protective orders from this court. Tr. 27: 14-18.

YouTube counters that the stipulated protective order entered in the underlying litigation adequately protects the interests of third parties such as the non-Viacom related entities. To account for the notification process of non-Viacom related entities, YouTube will agree to a staggered production date and suggests June 15, 2009.

Without prejudice to other parties who may independently move for a protective order pursuant to Rule 26(c), the court finds that BayTSP has not established undue burden as it relates to non-Viacom related entities. The court believes that the stipulated protective order, or subsequent amendments agreed thereto, by and between the parties, including BayTSP, will protect the interests of its other clients.

BayTSP has not specified the scope of non-Viacom related entities potentially affected by such a production. Nonetheless, the court finds it appropriate for YouTube to reimburse BayTSP for costs of the production of documents for non-Viacom related entities. To facilitate production, the court suggests that the parties meet and confer on the scope of production, including proposed search terms. *See* Tr. 63:1-19. And to that end, BayTSP shall provide YouTube with a roster of its other clients no later than January 30, 2009. Having reviewed the roster, YouTube shall notify BayTSP whether it seeks responsive documents related to any of BayTSP's other clients no later than February 13, 2009.

**II. Format**

YouTube complains that BayTSP has made certain of its documents available on two computer terminals during regular business hours. Therefore, YouTube is constrained to conduct its review and print what it wants at the offices of BayTSP's counsel. YouTube takes no comfort that BayTSP, and perhaps Viacom, will know what documents it has reviewed, what documents it has focused on and what documents it has printed. Instead, YouTube requests that it be allowed electronic access to the Kroll ontrack database on which the documents exist, be provided with DVDs or other electronic medium of the entire responsive database so that it may upload the database into its own database. This suggested format is consistent with an amended ESI plan governing the underlying litigation. BayTSP states that conversion of the data files onto DVDs or other electronic medium is costly. Indeed, BayTSP speculates the cost could approximate six to ten cents per page to upload. Unless YouTube is willing to absorb this cost, BayTSP cannot provide the documents in the requested format.

**\*7** The court agrees that to require YouTube to view that vast amount of documents at the offices of BayTSP's counsel with certain temporal cut-offs is unreasonable. *See, e.g.,* Rule 34(a) requires production in a "reasonably usable form." Fed.R.Civ.P. 34(a). At the hearing, the parties agreed to further meet and confer on the format of production, including discussing with Kroll the actual cost of obtaining documents on the database and/or creating certain load files. Tr. 52:1-15. In light of arguments at the hearing regarding the potential accessibility to electronic documents viewed by YouTube, the court advises the parties to take appropriate measures so that others, intentionally or inadvertently, not determine what documents were viewed, what documents were focused on and what documents were printed. *See, e.g.,* Tr. 32:8-25; 33: 1-25; 34:1-25; 35:14-25; 36: 3-18, 24-25; 37:1-15; 38: 1-6, 19-22. Accordingly, the parties shall further meet and confer on the format of production. "[I]t is in the interests of each of the parties to engage in this process cooperatively." *Mancia v. Mayflower Textile Servs. Co., et al.,* 253 F.R.D. 354, 365 (D.Md.2008). In the event, the parties are unable to agree on the format of production, YouTube may notice a motion on shortened time for a further ruling from this court, on at least, this sole and discrete issue.

**III. Protective Order**

At the hearing, the parties agreed to further meet and confer on a stipulated protective order to address BayTSP's concerns about its source code and non-Viacom related entities.[FN6] Accordingly, the parties shall meet and confer to determine whether additional provisions are necessary to further facilitate production. Unless the parties agree that a stipulated protective order relating to BayTSP's other clients shall govern from this district, any further provisions shall be approved by the court presiding in the underlying matter. *See* Fed.R.Civ.P. 26(c) (protective order may be sought in the court where the action is pending).

FN6. To the extent the parties agree that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 102808 (N.D.Cal.)
**(Cite as: 2009 WL 102808 (N.D.Cal.))**

production of BayTSP's source code can be limited to documents showing how its technology searches the YouTube website, such a production would be in compliance with this court's order.

### CONCLUSION

For the foregoing reasons, defendants' motion to compel is granted. Third-party BayTSP shall produce responsive documents related to the Viacom-related entities no later than March 6, 2009 and shall produce responsive documents related to non-Viacom related entities no later than July 15, 2009. In addition, BayTSP shall serve privilege logs that relate to each of the productions on the respective dates set forth above. BayTSP shall also serve an affidavit which sets forth the methodolog(ies) used to respond to the subpoena. The parties shall meet and confer on the format of production and whether additional provisions to the stipulated protective order may be needed.

IT IS SO ORDERED.

N.D.Cal.,2009.
Viacom Intern., Inc. v. YouTube, Inc.
Not Reported in F.Supp.2d, 2009 WL 102808 (N.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.