UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
_____/

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER REGARDING
PLAINTIFFS' ANTIPIRACY INVESTIGATIONS AND ENFORCEMENT
PROCEDURES**

Plaintiffs' motion for a protective order, supported by testimony from each Plaintiff's responsible in-house counsel, demonstrates that the strategies Plaintiffs use to detect and respond to online infringement of their copyrighted works are highly sensitive and kept in close confidence. Armed with information about which online locations Plaintiffs police, how they identify infringing content, which works they protect at which times, and which types of infringement trigger enforcement action, online content thieves – in particular the pirate "link" sites that are Defendants' paid "Affiliates" – could readily circumvent those efforts. In opposition, Defendants fail even to acknowledge Plaintiffs' counsels' testimony, much less refute it. Before engaging in such intrusive and prejudicial discovery, Defendants must do more than come up with speculative theories of relevance. But that is all they have done. Even then, most of Defendants' theories are premised on a fundamental misreading of the DMCA and cannot bear scrutiny.

## ARGUMENT

### I. DEFENDANTS' LAUNDRY LIST OF THEORIES ONLY CONFIRMS THAT THE ANTIPIRACY MATERIALS ARE IRRELEVANT.[1]

The fact that Plaintiffs sent takedown notices, and the nature of Defendants' responses to those notices, are relevant to Defendants' being put on notice as to the sheer scale of the infringement on their site, and to Defendants' ability to claim the DMCA safe harbor with respect to the specific infringements for which they received notices. There is no dispute as to that. Importantly, Plaintiffs are already producing all such takedown notices and have offered to produce their internal records of Defendants' responses to those notices. But there is no relevance whatsoever to other materials sought by Defendants' subpoenas, such as how Plaintiffs and their vendors select titles for enforcement and generate takedown notices, which websites they monitor for

---

[1] Defendants' suggestion that Plaintiffs lack standing to bring this motion is incorrect. *See* Opp. at 6. Indeed, the only case cited by Defendants, *Bender v. Tropic Star Seafood, Inc.*, No. 4:07-cv-438-SPM/WCS, 2008 WL 2824450, at *2 (N.D. Fla. July 21, 2008), itself provides that "[a] party has standing to object to this third-party subpoena duces tecum with respect to privilege, trade secrets, confidential research, commercial information, or similar grounds personal to the party." *Id.* at *2 n.1. That is precisely what Plaintiffs have done. A party also may raise relevance objections to third-party discovery. *See Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-Civ., 2008 WL 5049277, at *2 (S.D. Fla. Nov. 25, 2008).

infringement and the times at which they do so, or which instructions and advice Plaintiffs exchange with their vendors, and Defendants have not shown any.

Instead, Defendants deluge the Court with a sea of contrived reasons why Plaintiffs' antipiracy strategies and procedures are supposedly relevant, apparently hoping that the sheer number of arguments will make up for their unpersuasiveness.[2] In fact, most of the theories are transparently specious. As for those with any marginal merit, Plaintiffs have already agreed to produce responsive information. Otherwise, Defendants' demands are really just an application for a license to go on a fishing expedition that could potentially highly prejudice Plaintiffs' antipiracy operations.

Most of Defendants' relevance arguments are predicated upon a fundamental misunderstanding of the DMCA. Because the DMCA deprives service providers of a safe harbor if they fail to remove files identified as infringing in takedown notices, *see* 17 U.S.C. § 512(c)(1)(C), Defendants incorrectly conclude that the DMCA *obligates* copyright owners to send notices. Based on that misapprehension, they erroneously conclude that the processes by which the Plaintiffs searched for and found infringements, as well as the reasons behind their decisions to send notices, are relevant to this case. *See* Opp. at 10, 11-12. But that is not how the DMCA works. The DMCA does not require copyright owners to send notices at all. *See* Mot at 4-5.[3] To be eligible for DMCA safe harbor, Defendants must satisfy several independent requirements; responding to notices is just one of them. *See Id*. at 4. If notices are sent, a service provider's eligibility for DMCA safe harbor turns on whether the notice contains the requisite statutory elements and whether the service provider properly responds to it – not why the copyright owner sent it, how the copyright owner learned of the infringement, or what other or additional

---

[2] Defendants further confuse matters, seemingly by design, by failing to explain which theories of relevance relate to which requests for production.

[3] Defendants, Opp. at 12, misleadingly quote from *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 n.4 (9th Cir. 2007), to argue that copyright owners are obligated to send notices. However, the cited passage does not support that proposition. It refers to a different issue – notices that do not contain the required statutory elements. To encourage compliant notices, Congress provided that substantially non-compliant notices cannot be considered in determining whether a service provider has actual knowledge of infringement. 17 U.S.C. § 512(c)(3)(B)(i). Defendants take the *Visa* quote far out of context. There is no authority or good faith argument that copyright owners are obligated to send DMCA notices.

things the copyright owner could have done instead. When the DMCA is properly understood, Defendants' theories of relevance fall away.

    1. <u>Defendants' Knowledge and Control</u>: Defendants' principal argument is that Plaintiffs' strategies for searching for infringements on the Internet, and for responding to infringements once they are discovered, are somehow relevant to Defendants' knowledge of and ability to control infringements on Defendants' website.[4] Opp. at 8. First, to state the obvious, *Defendants'* knowledge and *Defendants'* ability to control infringement on *Defendants'* website have nothing to do with Plaintiffs' strategies about how to find and respond to acts of online infringement. There is nothing Defendants could learn from Plaintiffs' strategies, except how to circumvent them. They will cast no light on what *Defendants* know about infringement on their site, what strategies are available to *Defendants* to deal with it, or whether *Defendants* made use of any of those strategies.

Plaintiffs' strategies are especially irrelevant given that no one external to Hotfile has any visibility whatsoever into Hotfile's system. Plaintiffs cannot see what files are stored on Hotfile's servers, how many are infringing and how many (if any) are not. Instead, like astronomers looking at some far off dark planet, outsiders like the Plaintiffs must surmise what is going on inside of Hotfile by seeking clues outside of it – clues like links to movies on linking sites or blogs – or clues like the data streams that begin flowing from Hotfile when one clicks on one of the links posted on a linking site.

Because of the striking asymmetry between what Defendants know about Hotfile, and what outsiders like Plaintiffs know, outsiders trying to find infringing content on Hotfile must use completely different tools, strategies and mechanisms than those available to Defendants. *See* Mot. at 6. Defendants fail to address that critical distinction. But it renders the discovery Defendants seek wholly irrelevant.[5]

---

[4] *See* 17 U.S.C. § 512(c)(1)(A) (denying safe harbor to service providers that have actual knowledge of infringing activity or are aware of facts and circumstances from which such activity is apparent); 17 U.S.C. § 512(c)(1)(B) (denying safe harbor to service providers that have the right and ability to control infringing activity and receive a financial benefit attributable to infringing activity).

[5] The filtering technology Defendants could use to identify infringing content on their servers is publicly available, as even Defendants acknowledge, Opp. at 17, and it is well-known to Defendants; indeed, Defendants appear to have recently started using it. The parties also have agreed that Plaintiffs will produce to Defendants materials analyzing the

3

2. Files For Which Notices Were Not Sent: Again misconstruing the DMCA, Defendants claim that they are entitled to know if Plaintiffs declined to issue notifications with respect to any infringing files on Hotfile. Opp. 8-9. But, as discussed above, under the DMCA, Plaintiffs have the right to decide to send notices or not, for any reason.[6] *See, e.g., UMG Recordings, Inc. v. Veoh Networks Inc.*, No. CV 07-5744 AHM (AJWx), 2010 WL 1407316, at *1 (C.D. Cal. April 6, 2010) ("That UMG declined to avail itself of the DMCA's notice and takedown procedures could…easily reflect a good-faith belief on UMG's part that Veoh did not qualify for DMCA safe-harbor protection…"). Defendants' argument about "fair use," Opp. at 8, is inapposite speculation. Defendants are being sued for distributing *full-length* movies and television programs, not the short clips at issue in the *YouTube* case Defendants cite. There is no credible claim that distribution to the public of full-length, unlicensed movies or television could be fair use. *See, e.g., BMG Music v. Gonzalez,* 430 F.3d 888, 889-91 (7th Cir. 2007); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014-18 (9th Cir. 2001).

Defendants also claim to need discovery into Antipiracy Materials to determine whether any content was "authorized" for distribution through Hotfile (because authorized files might constitute a "substantial noninfringing use"). Opp. at 8-9. But Defendants do not need to go on a fishing expedition to find out if Plaintiffs authorized distribution of content through Hotfile. Defendants can simply ask Plaintiffs that question directly – and already have.[7]

3. Counterclaim: Defendants claim they need discovery for a counterclaim they *might* bring against one Plaintiff. *Id*. at 9  But that is not how discovery works: parties are not entitled to take discovery for a counterclaim they have not pleaded, nor against

---

effectiveness, advantages or disadvantages of such filtering technology. Plaintiffs' processes for locating links to infringing content on third party websites, which have nothing to do with that filtering technology, is irrelevant.

[6] *See Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998) ("[T]here is no legal duty to instigate legal proceedings."); Patry on Copyright § 5:155 (copyright owners have discretion whether to sue on claims).

[7] *See, e.g.*, Defs.' RFP to Pls. No. 16 (seeking all documents "evidencing any authorized uploading, downloading or sharing on the Internet of any works YOU own"). In response , Plaintiffs have offered to provide Defendants with information to demonstrate that, in fact, there are no "authorized" distributions of Plaintiffs' works through Hotfile.

4

parties (such as the other four Plaintiffs, and their vendors) against whom they have not even threatened a counterclaim. Respectfully, if Defendants have a good faith basis for bringing a counterclaim, they can bring it, but they are not entitled to intrusive discovery on claims not in the case. Moreover, as to the one Plaintiff that Defendants claim once removed some files in error, the parties have scheduled a Rule 30(b)(6) deposition so that Defendants may satisfy themselves that there is no basis for any claim. Defendants have not even suggested a claim against any other Plaintiff, and nothing in the other Plaintiffs' or vendors' files could conceivably be relevant to the claim Defendants have threatened.

      4. <u>Complaint Allegations that Reference Takedowns</u>: Defendants assert that Plaintiffs' Complaint has somehow put their antipiracy efforts "in issue." Opp. at 10. That is incorrect, and Defendants must mischaracterize Plaintiffs' allegations in the Complaint to even make the argument.

      The Complaint alleges that Plaintiffs must continuously send takedown notices to Hotfile while Defendants induce users to continually upload new infringing files. Compl. ¶ 37. It also alleges that Hotfile implemented a specific feature on its site that creates multiple copies of the same uploaded file, each with its own link, thereby ensuring that infringing files remain accessible on the Hotfile system even after one of the links is disabled in response to a takedown notice. *Id*. ¶ 38. It was this specific feature that Plaintiffs alleged "stymie[d]" the effectiveness of their takedown notices. *Id*. Neither of these allegations has any relationship to the processes or decision-making behind Plaintiffs' takedown notices, and Plaintiffs have never suggested otherwise. In any event, relevance turns on whether a matter actually relates to a *claim or a defense in a case*, not on whether it can be tied in some tangential way to a statement in a complaint.[8]

      5. <u>Estoppel</u>: Defendants claim they need to explore whether Plaintiffs should be "estopped" from suing on particular files because they declined to issue notifications for those files. Opp. at 11. Defendants' estoppel defense is one that no court has ever

---

[8] Defendants' theory – that it is relevant whether Plaintiffs are "overwhelmed" by or "helpless" to stop infringement of their content, Opp. at 10 – again relies on a fundamental misunderstanding of the DMCA. Plaintiffs are not required to send, or prove their inability to send, takedown notices, or otherwise address their ability or inability to police their content online. *See supra* at 2-3. Eligibility for DMCA safe harbor turns on *Defendants'* conduct alone.

5

sanctioned, and that directly conflicts with the structure of the DMCA. The courts and Congress have both emphatically rejected the notion that sending a takedown notice is a prerequisite to an infringement suit; *not* issuing a notice cannot bar an infringement claim. *See* Mot. at 4-5. An estoppel defense is also unavailable to Defendants for an additional reason: in the Eleventh Circuit, an estoppel defense requires proof that "the copyright owner acted such that the alleged infringer has a right to believe" the use of the work is authorized and "relies on the copyright owner's conduct to his detriment." *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 875 (11th Cir. 2005). Here Defendants do not identify any conduct by the copyright owners that they relied upon as authorization to use their works and cannot rely on the absence of takedown notices because copyright owners are under no obligation to send notices at all.

      6. <u>Plaintiffs' and Defendants' DMCA Compliance</u>: Defendants repeat their argument that discovery is needed to prove both Plaintiffs' and Defendants' "compliance under the DMCA," Opp. at 11-13, but their argument consists of nothing but vague generalizations about the need to have a "full understanding of the issue." *Id.* at 12. The only portion of the Antipiracy Materials with any conceivable relevance to the issue of Defendants' compliance with the DMCA is the portion comprising Plaintiffs' takedown notices, all of which are being produced to the Defendants.[9] These notices are valid if they contain the required statutory elements set forth in 17 U.S.C. § 512(c)(3)(A). Compliance with that requirement can be determined by looking at the notices. There is no need to produce copious, proprietary documentation pertaining to Plaintiffs' antipiracy strategies and methods. Whether Hotfile behaved consistently with the requirements of the DMCA notice provision depends on whether it expeditiously blocked access to infringing content identified in takedown notices. 17 U.S.C. § 512(c)(1)(C). That is determined exclusively by looking to *Defendants'* conduct, and the evidence relating to that conduct – records identifying what Defendants did in response to takedown notices

---

[9] Defendants ascribe sinister motive to the fact that Plaintiffs "unilaterally gathered" documents from the antipiracy vendors. Opp. at 17. But Plaintiffs gathered takedown notices and certain other documents *to produce them to Defendants*. Moreover, contrary to the impression Defendants try to create, Opp. at 3, Plaintiffs identified the antipiracy vendors in their initial disclosures on the single issue that they "sent [notices] to Hotfile on behalf of the plaintiff[s]." That does not open up all of Plaintiffs' antipiracy operations to irrelevant discovery.

6

are exclusively in *Defendants'* possession.  The processes, decisions and strategies related to a copyright owner's investigation of infringement and preparation of a takedown notice have no bearing on a service provider's compliance with the DMCA.

*   *   *

Finally, Defendants rely on *Viacom Int'l Inc. v. YouTube Inc.*, No. C-08-80211 MISC. JF (PVT), 2009 WL 102808 (N.D. Cal. Jan. 14, 2009).  However, the facts in that case stand in stark contrast to the facts here.  In *YouTube*:  (i) the alleged infringement principally involved short video clips rather than full-length movies and television programs, raising the issue of whether arguable fair use claims might complicate identification of infringing clips; (ii) it was accepted that copyright owners were themselves uploading video clips to YouTube; and (iii) the plaintiffs had alleged that "YouTube obstructs plaintiffs' efforts to locate" their works on the site.  *Id.* at *1.  And the antipiracy vendor did "not dispute[] the relevance of the document requests as they relate to plaintiffs."  *Id.* at *4.  The principal issues litigated appear to have been burden and cost shifting.  *YouTube* does not support Defendants' discovery here.

## II. DEFENDANTS HAVE NOT MADE THE REQUIRED HEIGHTENED SHOWING OF NECESSITY ESSENTIAL TO OBTAIN HIGHLY PREJUDICIAL DISCOVERY.

Defendants' theories of relevance are truly baseless; the one or two marginal theories pertain to discovery that Plaintiffs have already agreed to provide.  Defendants' pitiful showing cannot begin to meet the burden required for discovery of Plaintiffs' highly sensitive and closely-guarded antipiracy functions carried out by Plaintiffs' in-house counsel and persons acting at their direction.  Courts "balance the party's interest in obtaining access against the other party's interest in keeping the information confidential."  *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001); *Harrison v. Burlage*, No. 08-80989-CIV, 2009 WL 2230794, at *4 (S.D. Fla. July 23, 2009).  Indeed, even where materials *are* potentially relevant, courts routinely use their authority under Rule 26 to bar discovery where the potential evidentiary value is outweighed by the potential prejudice from discovery.  *See, e.g.*, *Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 192-93 (S.D.N.Y. 2002) ("even if such discovery were relevant . . . the risk of injury to the plaintiffs if such [confidential immigration documents] were disclosed outweighs the need for its

7

disclosure"); *In re Del-Val Fin. Corp. Sec. Litig.*, 158 F.R.D. 275, 277 (S.D.N.Y. 1994) (denying discovery where "the potential harm of releasing [confidential documents] outweighs their possible relevance"); *Flynn v. Goldman Sachs & Co.*, No. 91 CIV. 0035, 1993 WL 362380, at *3 (S.D.N.Y. Sept. 16, 1993) ("the relevance of the material contained in the [confidential] documents is too weak for me to find that the plaintiff's need outweighs the harm that would be caused by disclosure"). This is no less true in cases where discovery materials are subject to confidentiality orders. *See infra* at 9; *Fambo v. Alterra Healthcare Corp.,* No. 08-CV-795S, 2010 WL 335013, at *3 (W.D.N.Y. Jan. 22, 2010) (refusing to order production of sensitive material not shown to be relevant despite presence of protective order); *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 260 (S.D.N.Y. 2008) (protective order insufficient without justification for production of sensitive material). Any balancing must be resolved in Plaintiffs' favor.

### A. Plaintiffs' Testimony Demonstrates the Prejudice From Disclosure.

Each of Plaintiffs' in-house counsel submitted declarations in support of Plaintiffs' Motion for a Protective Order explaining in detail, including by specific examples, how improper disclosure of online investigative and enforcement strategies and processes could result in circumvention of their antipiracy efforts. *See* Docket Nos. 106-10 at ¶ 6; 106-11 at ¶¶ 6-7, 106-12 at ¶ 8, 106-13 at ¶ 5, 106-14 at ¶¶ 6-7. Defendants do not even attempt to rebut this testimony. Instead, Defendants falsely assert that Plaintiffs have offered only "conclusory statements" in support of their motion. *See* Opp. at 14. Plaintiffs' detailed, unrebutted testimony establishes that improper disclosure of their Antipiracy Materials could severely prejudice Plaintiffs. Where the materials are not even relevant, there is no reason to take such a risk.

Plaintiffs' testimony also establishes that Plaintiffs keep certain information about their antipiracy operations, such as their means of locating and identifying infringing content and their criteria for issuing notifications of infringement, in strict confidence. *See* Docket Nos. 106-10 at ¶ 7; 106-11 at ¶¶ 4-5, 106-12 at ¶ 9, 106-13 at ¶ 4, 106-14 at ¶ 8. Defendants' argument to the contrary, Opp. at 15, is supported only by an inapposite newspaper article reporting that one antipiracy vendor publicly discussed some generic information about its work for a different client on a different case. *See* Opp. at 15. But Plaintiffs are not bringing this motion to defend the *vendors'* trade secrets, they are

8

bringing it to protect *their own*. Defendants have failed to rebut Plaintiffs' evidence that the Antipiracy Materials in question are highly sensitive. Indeed, it is intuitively obvious that content owners' antipiracy strategies are extremely sensitive.

### B. Defendants Fail to Make a Showing of Necessity.

Because Defendants have not shown that the Antipiracy Materials are even relevant, they obviously cannot make the even higher showing that they are *necessary* to their case. Further, Defendants' concession that evidence about the available mechanisms for identifying infringing content online "may be publicly available," Opp. at 17, defeats any claim that they need discovery of how *Plaintiffs* search for their content in order to prove what *Defendants* can or cannot do. Defendants have plainly failed to make the required showing of necessity.

### C. The Protective Order Does Not Cure the Prejudice to Plaintiffs.

The existence of a protective order does not eliminate the potential prejudice to Plaintiffs, particularly where, as here, Defendants themselves – and the pirate link sites that are Defendants' paid "Affiliates" – are the very targets of Plaintiffs' antipiracy efforts. Fundamentally, a protective order is not a cure for a lack of relevance. *See, e.g.*, *Fambo*, 2010 WL 335013, at \*2-\*3. And contrary to Defendants' suggestion, the mere existence of a protective order limiting sensitive materials to attorneys only is not a panacea. Even a "careful and extensive" protective order is "not as safe as nondisclosure," and there should be "no occasion to rely on them, without a preliminary proper showing justifying production" of sensitive material. *YouTube*, 253 F.R.D. at 260. *See also, e.g., Bell Atl. Bus. Sys. Serv., Inc. v. Hitachi Data Sys. Corp.*, No. M8-85, 1995 WL 13115, at \*1 (S.D.N.Y. Jan. 13, 1995) ("no protective order could possibly be devised which could guarantee security for the [confidential material] once it left IBM's hands"); *In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 214, 216 (N.D. Cal. 1992) (existing protective order "inadequate" to guard trade secrets); *Specialty Chems. & Servs., Inc. v. Chandler*, No. Civ. A. 1:87 CV-2338 MHS, 1988 WL 618583, at \*8 (N.D. Ga. Sept. 29, 1988) ("the possible injury that would ensue from disclosure, even under a protective order, outweighs defendants' need for the information"). Defendants cannot use the attorneys' eyes only provision as justification to obtain materials that are not a proper subject of discovery in the first place.

9

### III. PLAINTIFFS' MOTION IS TIMELY UNDER THE COURT'S ORDER AT THE JULY 8, 2011 STATUS CONFERENCE.

Defendants also claim that this motion was untimely filed. That claim is devoid of merit. This motion was filed on July 22, 2011– the date by which the Court directed it could be timely filed. Defendants' inexplicable argument to the contrary ignores the Court's order at the July 8, 2011 status conference.

Early in discovery in this case, to allow for a greater opportunity to meet and confer, the parties stipulated and moved the Court for an order that "all motions of the parties related to discovery, *including … motions for protective order*, shall be filed within sixty (60) days of the occurrence of the grounds of the motion." Docket No 69-1 at 1 (emphasis added). The court denied that joint motion without prejudice. However, because both sides had been operating in reliance on the parties' stipulation, at the July 8, 2011 status conference, the Court instructed the parties that any motions rendered untimely by its denial of that motion, which includes Plaintiffs' protective order motion, would be timely if filed by July 22, 2011. July 8, 2011 Tr. at 14:1-6, 15:4-10 (attached hereto as Exhibit A). Plaintiffs filed on July 22.[10] Defendants' arguments about the dates on which a motion for a protective order might otherwise have been due in the absence of the parties' stipulation or the Court's order, Opp. at 5-6, are academic.[11]

### CONCLUSION

For the reasons stated, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for a protective order.

---

[10] Although Defendants cite to the Court's subsequent order further extending the deadline for motions to compel, *see* Opp. at 6 n.7, that order has nothing to do with the timeliness of the present motion. That order merely extended the deadline for certain motions beyond the initial court-ordered date of July 22. Whether or not that order applied to protective orders is irrelevant, since Plaintiffs filed the current motion for a protective order on the initial July 22, 2011 date ordered by the Court.

[11] Equally baseless is Defendants' complaint that Plaintiffs did not recite the full text of each and every discovery request that Plaintiffs reference in their motion. *See* Opp. at 3 n.5. Plaintiffs are not separately moving on those other requests, but rather seek an instruction from the Court that Defendants may not use broad readings of their *other* more general discovery requests to circumvent any relief Plaintiffs obtain with respect to the specific requests for which they seek a protective order.

Dated: August 12, 2011                                Respectfully submitted,

By: /s/ Karen L. Stetson

Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 461-6880
Facsimile:  (305) 461-6887

MOTION PICTURE ASSOCIATION          JENNER & BLOCK LLP
 OF AMERICA, INC.                   Steven B. Fabrizio (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)  Duane C. Pozza (*Pro Hac Vice*)
15301 Ventura Blvd.                 Luke C. Platzer (*Pro Hac Vice*)
Building E                          1099 New York Ave., N.W.
Sherman Oaks, CA 91403              Suite 900
Phone:  (818) 995-6600              Washington, DC 20001
Fax:  (818) 285-4403                Telephone: (202) 639-6000
                                    Facsimile:  (202) 639-6066

*Attorneys for Plaintiffs*