UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 11-20427-CIV-JORDAN

| | |
|---|---|
| DISNEY ENTERPRISES, INC. et al., | ) |
| Plaintiffs | ) |
| vs. | ) |
| HOTFILE CORP. et al., | ) |
| Defendants | ) |

### ORDER ON MOTION TO COMPEL

For the following reasons, Disney Enterprises, Inc.'s, Twentieth Century Fox Film Corporation's, Universal City Studios Productions LLLP's, Columbia Pictures Industries, Inc.'s, and Warner Bros. Entertainment Inc.'s motion to compel responses to their requests for production of documents and interrogatories [D.E. 72] is GRANTED IN PART AND DENIED IN PART.

### I. FACTUAL BACKGROUND

Disney, Twentieth Century Fox, Universal City, Columbia Pictures, and Warner Bros. are movie studios, which have sued Hotfile Corp., a corporation that runs the website www.hotfile.com. Anton Titov, in turn, manages Hotfile. Through hotfile.com, a visitor can upload content, and, in return, he or she receives a unique link. That link can be used by anyone to download the content stored in Hotfile's servers.

The movie studios allege that Hotfile has induced copyright infringement, has committed contributory infringement, and has vicariously infringed on their copyrights.

### II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, discovery is broad. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b). Though broad, discovery is not completely unrestrained. For instance, a court may issue an order protecting a party from disclosing a "trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 26(c)(1)(G). Nevertheless, "there is no absolute privilege that immunizes trade secrets and similar confidential information from discovery." *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985). A court, when deciding

whether to grant a motion to compel, has broad discretion. *See Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006).

### III. ANALYSIS

The movie studios seek four categories of information. First, believing that it will help their case, the movie studios ask for Hotfile's source code, viz., the computer code that is the foundation for www.hotfile.com and Hotfile's business. Second, they seek "content reference data and user data." These data are data on the files downloaded by Hotfile users and on the users downloading Hotfile files. Third, the movie studios want data about the profits earned by Hotfile affiliates by uploading files on www.hotfile.com. Fourth, the movie studios want to know about Hotfile's profits. For many different reasons, Hotfile and Mr. Titov object to these discovery requests. Hotfile and Mr. Titov have properly objected to revealing the source code, but I find their objections in the other three categories unpersuasive.

#### A. SOURCE CODE

Hotfile and Mr. Titov object to producing Hotfile's source code because it is a trade secret. In essence, they ask that I grant them a protective order, excluding the source code from production. In this situation, Hotfile and Mr. Titov must first show that the information is a trade secret and next show that disclosure of the trade secret would harm them. Once that happens, it becomes the movie studios' burden to show that the trade secret is both relevant and necessary. *See Empire of Carolina*, 108 F.R.D. at 326. All parties apparently concede that Hotfile's source code is a trade secret that would cause Hotfile harm if released to the wrong hands. Still, the movie studios argue that the source code is relevant and necessary. Although the source code is relevant, I disagree with the assertion that it is necessary.

The plaintiffs believe that Hotfile's source code is necessary because it would let the plaintiffs "understand the technical workings of [Hotfile's] system, and to demonstrate . . . that defendants incorporated technical features to enhance infringement and readily could have implemented technical measures to prevent or mitigate infringement" [D.E. 75-1 at 18]. To be sure, this makes the source code relevant, but it does not make it necessary. Indeed, the plaintiffs' own expert opines that "it is possible to describe a computer program using means other than source

2

code" [D.E. 73-1 at 2]. And, certainly, the plaintiffs can request that Hotfile describe its source code, without handing over the code that contains Hotfile's entire business.

In similar circumstances, at least one court has rejected the movie studios' argument. In *Viacom Int'l, Inc. v. Youtube Inc.*, 253 F.R.D. 256, 260 (S.D.N.Y. 2008), Viacom and others sued Youtube and Google and, in discovery, requested the source code to Video ID, software developed by those technology companies. Viacom alleged that Youtube and Google could, but did not, control infringement on www.youtube.com and wanted the source code of Video ID to show as much. *See id.* Noting that Viacom could learn how Video ID worked from use and observation, the district court rejected Viacom's request.

> [T]he question is what infringement detection operations are possible, not how the Video ID source code makes it operate as it does. The notion that examination of the source code might suggest how to make a better method of infringement detection is speculative. Considered against its value and secrecy, plaintiffs have not made a sufficient showing of need for its disclosure.

*Id.* at 260–61. I agree with this reasoning.

The movie studios try to overcome *Viacom* by underscoring that Google's search algorithm was the source code at issue in the case. Given that algorithm's sacrosanct status, the movie studios assert, *Viacom* is unique. But this argument fails, for it misreads the case. True, the *Viacom* court prevented Viacom from securing Google's search algorithm. But it also prevented Viacom from securing Video ID—a software separate from and unrelated to Google's search algorithm. Thus, by refusing to force Google to produce other source code, the *Viacom* court itself refutes the notion that its refusal to force Google to produce the search algorithm was unique.

The movie studios continue their argument by citing other orders. None of those orders, however, are on point. Most deal with inapposite contexts—for example, where there is a patent, breach-of-contract, or copyright dispute about the source code itself. *See, e.g.*, *Dynamic Microprocessor Assocs. v. EDK Computer Sales*, 919 F. Supp. 101, 105 (E.D.N.Y. 1996) (copyright dispute over software itself); *In re Facebook PPC Adver. Litig.*, No. C09-03043, 2011 WL 1324516, at *3 (N.D. Cal. Apr. 6, 2011) (dispute about whether software met contractual specifications); *Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*, No. 07-351, 2010 WL 2898288 (D. Del. July 20, 2010) (patent litigation); *Montgomery v. eTreppid Techs., LLC*, No. 06-cv-56, 2008 WL

2277118, at *11 (D. Nev. May 29, 2008) (Cooke, M.J.) (contractual dispute over source code). In deciding whether one software program infringes another or whether a software program can be copyrighted, the source code is clearly necessary. The same is true where the source code is the essence of a breach-of-contract claim or where one party states that the software developer's program does not meet contractual specifications.[1] Therefore, the movie studios' arguments are unavailing.[2]

## B. CONTENT AND USER DATA

The movie studios also seek Hotfile's complete content reference and user data. Hotfile and Mr. Titov refuse to produce these data, arguing that the Stored Communications Act, 18 U.S.C. § 2702, prevents Hotfile from doing so. Similarly, Hotfile and Mr. Titov contend that the request is irrelevant. Finally, Hotfile and Mr. Titov object about disclosing information about downloads and uploads outside of the United States. None of these objections is convincing.

The Stored Communications Act does not prevent Hotfile or Mr. Titov from producing the requested documents. Even assuming that the Act applies to Hotfile, the Act allows disclosure when based on "the lawful consent of the originator or . . . the subscriber in the case of [a] remote computing service." § 2702(b)(3). The movie studios, moreover, have shown that Hotfile's terms of service state that Hotfile has the right to disclose any "user content" for legal purposes. This suffices for consent. *See In re Pharmatrak, Inc.*, 329 F.3d 9, 21 (1st Cir. 2003) (noting that exception did not apply where website gave no indication that use meant consent); *United States v. Noriega*, 764 F. Supp. 1480, 1491 (S.D. Fla. 1991) (stating that orientation manual, telephone sticker, and consent form are enough for consent under Act). Thus, under the Stored Communications Act, Hotfile can produce the content reference and user data.

---

[1] The movie studios cite *Metavante Corp. v. Emigrant Sav. Bank*, No. 05-cv-1221, 2008 WL 4722336, at *2 (E.D. Wis. Oct. 24, 2008), as well. The parties did not raise the trade-secret argument in that case. And *Capitol Records, LLC v. Mp3Tunes, LLC*, No. 07-cv-9931 (S.D.N.Y. May 13, 2008) (Maas, M.J.), is a one-paragraph order requiring that Mp3Tunes copy its source code. The order, however, lacks analysis.

[2] Of course, the source code may become necessary in the future if, say, Hotfile argues that it cannot implement some infringement-stopping mechanism because of the way it coded some operation or function.

Next, Hotfile and Mr. Titov contend that they need not produce this evidence because it is irrelevant. According to Hotfile and Mr. Titov, the movie studious have only alleged 1015 infringed files on Hotfile. And yet, their argument continues, Hotfile requests all content and user data. Any content and user data unrelated to the 1015 infringed files, Mr. Titov and Hotfile assert, is irrelevant.

This argument, however, ignores the movie studios' theory of the case. According to the movie studios, Hotfile and Mr. Titov are secondarily liable for the infringement of their files. Indeed, Hotfile and Mr. Titov, they allege, have encouraged rampant infringement on hotfile.com. To prove this rampant infringement, the movie studios need to do a statistical analysis showing that most of the content uploaded and downloaded on hotfile.com infringes some copyright or another. As I already noted in my order on Hotfile's and Mr. Titov's motion to dismiss, these allegations suffice for secondary-liability purposes. Without enough data to produce a statistical analysis showing rampant copyright infringement on hotfile.com, moreover, the movie studios would struggle to prove Hotfile and Mr. Titov secondarily liable. Accordingly, the content and user data are relevant.

In its next argument, Hotfile and Mr. Titov assert that the movie studios cannot have data from uploads and downloads occurring abroad because "United States copyright law has no extraterritorial application." *Subafilms, Ltd. v. MGM-Pathe Commc'ns*, 24 F.3d 1088, 1093 (9th Cir. 1994). But this argument is not persuasive. The movie studios are not seeking this evidence to show that Hotfile's and Mr. Titov's customers downloaded copyrighted work in foreign countries in contravention of American law. They simply need to see how often copyrighted works are downloaded throughout hotfile.com to show that Hotfile and Mr. Titov induce infringement or distributed a device with the object of promoting its use to infringe copyright. And the more copyrighted works downloaded, the stronger the inference that Hotfile and Mr. Titov promoted a device to promote copyright infringement. This inference holds true wherever the copyrighted work was uploaded and downloaded.

The content and user data are clearly relevant. Therefore, by September 12, 2011, Hotfile and Mr. Titov shall produce the content and user data, as requested by the movie studios. By the same date, Hotfile and Mr. Titov shall produce all data showing the reasons for which all files were disabled, not just files disabled in response to a takedown notice.

### C. AFFILIATE INFORMATION

As part of their case, the movie studios seek to hold Hotfile and Mr. Titov liable for vicarious infringement. To do so, they must show that Hotfile and Mr. Titov profit from direct infringement and yet decline to stop the direct infringement. *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37 (2005). Similarly, the movie studios seek to hold Hotfile and Mr. Titov liable under a theory of contributory infringement, which requires proof that Hotfile and Mr. Titov induced, caused, or materially contributed to another's infringement. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990). Hotfile pays "affiliates" when content that the affiliates uploaded is downloaded by others. The movie studios want information on the top 500 money-making affiliates. This information, the movie studios believe, may show that Hotfile and Mr. Titov profited from direct infringement or induced direct infringement. I agree.

Hotfile and Mr. Titov nevertheless object, again, to producing this information. First, Hotfile and Mr. Titov argue that this information is irrelevant because the request has no correlation to the files allegedly infringed and to infringements within the United States. This assertion ignores that the movie studios are seeking to hold Mr. Titov and Hotfile secondarily liable. And it ignores that the affiliates are likely to have evidence about Hotfile's motivation for creating its website. This information is therefore "reasonably calculated to lead to the discovery of admissible evidence," FED. R. CIV. P. 26(b)(1), and relevant.

Hotfile and Mr. Titov raise other arguments. First, they argue that European and Bulgarian law forbid Hotfile from disclosing the identities of their affiliates. But it is Hotfile's and Mr. Titov's burden, as the parties attempting to prevent production, to show that these laws apply. *See Consefo de Defensa del Estado de la Republica de Chile v. Espirito Santo Bank*, No. 09-cv-20613, 2010 WL 2162868, at *2 (S.D. Fla. May 26, 2010) (Torres, M.J.). And yet Hotfile and Mr. Titov give no analysis regarding European and Bulgarian law. All they do is cite two statutes without quotation or analysis, which is not enough to raise an argument about foreign law under Rule 44.1. *See* FED. R. CIV. P. 44.1. *See also Chavez v. Sec'y Fla. Dep't of Corrs.*, No. 10-13840, 2011 WL 2990060, at *3 (11th Cir. July 25, 2011) (published opinion) ("The Seventh Circuit memorably said that appellate judges 'are not like pigs, hunting for truffles buried in briefs.' Likewise, district court judges are not required to ferret out delectable facts buried in a massive record . . . .") (citation

omitted) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)); *Dunkel*, 927 F.2d at 956 ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim."); *Lisa, S.A. v. Gutierrez Mayorga*, 240 F. App'x 822, 824 (11th Cir. 2007) (per curiam) ("Clear presentation [of arguments] is required.").

In addition, again without detailed argument, Hotfile and Mr. Titov raise First Amendment issues, arguing that its affiliates have the right to anonymous speech. But there is no evidence—or even detailed argument—showing that the affiliates have engaged in "speech." The movie studios are merely asking for information about Hotfile's and Mr. Titov's affiliates, which Hotfile and Mr. Titov paid, as business associates, for uploading heavily downloaded files on hotfile.com. Because Hotfile and Mr. Titov fail to explicate their First Amended rights concerns, I find this argument unpersuasive.

Hence, by September 12, 2011, Hotfile and Mr. Titov shall produce the information on its affiliates requested by the movie studios.

### D. FINANCIAL INFORMATION

Finally, Hotfile and Mr. Titov object to producing financial information about Hotfile. They argue that this information is confidential. Even if this is true, Hotfile's financial information is both relevant and necessary in this action. *See Empire of Carolina*, 108 F.R.D. at 326. To begin with, part of the movie studios' case concerns Hotfile's and Mr. Titov's motives for allowing their users and affiliates to infringe copyright law. And Hotfile's and Mr. Titov's financial motivation may justify an inference of unlawful intent. *See Grokster*, 545 U.S. at 940. Thus, the information is relevant. In addition, the movie studios would face an impossible task of showing motive on part of Hotfile (a corporation which, in theory, has one sole motivator: profit) if it lacks access to Hotfile's financial information. Financial information, moreover, may constitute circumstantial evidence of Mr. Titov's motivation and, lacking a smoking-gun admission, may be the only evidence that the movie studios acquire on his motivation. And the parties' stipulated protective order should minimize the risk of harm faced by Hotfile or Mr. Titov [D.E. 68]. Given the need for this evidence and the stipulated protective order, disclosure is required.

By September 12, 2011, Hotfile and Mr. Titov shall produce the financial information requested by the movie studios.

## IV. CONCLUSION

As explained above, the movie studios' motion and to compel responses to their requests for production of documents and interrogatories [D.E. 72] is GRANTED IN PART AND DENIED IN PART

DONE and ORDERED in chambers in Miami, Florida, this 26th day of August, 2011.

*(signature)*
Adalberto Jordán
United States District Judge

Copy to:   All counsel of record