UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC., TWENTIETH
CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS
LLLP, COLUMBIA PICTURES INDUSTRIES, INC.,
and WARNER BROS. ENTERTAINMENT INC.,

    *Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and DOES 1-10.

    *Defendants.*                         /

**MEMORANDUM OF LAW OF NONPARTY LEMURIA
COMMUNICATIONS, INC. IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................... 2

    A. Lemuria's Operation As A Provider Of Web Hosting Services ............................. 2

    B. Lemuria's Founding In The United States To Obtain IP Addresses For Lemuria's Texas Servers ....................................................................................... 3

III. LEGAL STANDARD .......................................................................................................... 4

IV. LEGAL ARGUMENT ......................................................................................................... 5

    A. Plaintiffs Cannot Identify Any Discoverable Documents Beyond Those Relating To Lemuria's Provision Of "Internet Hosting Services" To Hotfile – As Even Plaintiffs' Own Complaint Attests ........................................... 5

    B. Plaintiffs' Demand For Financial Documents In Request No. 2(e) Remains So Overbroad As To Require Production Of Lemuria's and Hotfile's Legal Invoices, Attorney Timesheets, And Payment Records Regarding This Litigation ....................................................................................................... 12

    C. Lemuria's PayPal Records Already Show Lemuria's Total Income, Thereby Discharging Request No. 11 ................................................................. 13

    D. Documents Demanded In Request No. 4 Regarding Services Rendered To Entities Other Than Hotfile Are, By Definition, Irrelevant To This Case .......... 14

    E. No Reason Exists For Lemuria To Produce Further Corporate Board Records In Response To Request No. 9, Given That No Evidence Suggests That Lemuria Has Failed To Comply With Corporate Formalities, And Plaintiffs' Complaint Does Not Contend Otherwise ............... 15

V. CONCLUSION .................................................................................................................. 16

I.     **INTRODUCTION**

In their Complaint, Plaintiffs accuse Lemuria Communications, Inc. ("Lemuria") – a non-party owned by Defendant Anton Titov – of providing "critical Internet hosting services" to Hotfile. Accordingly, Lemuria agreed in responding to Plaintiffs' subpoena to provide all of its non-privileged documents relating to provision of internet hosting services to Hotfile. By their Motion, Plaintiffs seek essentially every other document Lemuria possesses.

- Plaintiffs explicitly seek documents that have no relation to file-hosting – a category which practically defines irrelevance here. Indeed, when Plaintiffs' definitions of "your" and "Hotfile Entity" are applied to the document demands to Lemuria, Plaintiffs' request for "all documents pertaining to your relationship with any Hotfile Entity" collapses into all of Mr. Titov's documents pertaining to himself – or all of his documents.

- Plaintiffs seek Lemuria's financial documents – which includes all of Lemuria's and Hotfile's legal invoices, attorney timesheets, and records of payments to counsel in this litigation. Plaintiffs rejected Lemuria's offer to produce documents sufficient to show payments between Lemuria and Hotfile.

- Plaintiffs move to compel production of documents sufficient to show Lemuria's total income from Hotfile – even though Plaintiffs already have those documents.

- Plaintiffs demand documents regarding any services provided by Lemuria to entities other than Hotfile. These documents can have no possible bearing on the Plaintiffs' dispute with Hotfile.

- Plaintiffs demand all of Lemuria's corporate records and board minutes, even though no evidence – and not even Plaintiffs' own Complaint – suggests that Lemuria has

1

     failed in any way to comply with any corporate formalities.  Indeed, the only

     evidence submitted by Plaintiffs establishes Lemuria's compliance with corporate

     formalities.

No credible justification exists for such demands.  Plaintiffs, with their indefatigable resources, cannot properly use discovery to prosecute a war of attrition with Mr. Titov.  Plaintiffs' motion should be denied.

## II. FACTUAL BACKGROUND

### A. Lemuria's Operation As A Provider Of Web Hosting Services

  Founded as a Florida corporation in October 2009, Lemuria provides web-hosting services for Hotfile's website.  Declaration Of Duane C. Pozza In Support Of Plaintiffs' Motion To Compel Responses To Subpoena To Third Party Lemuria Communications, Inc. ("Pozza Decl."), Ex A ¶ 5.[1]  Lemuria owns over 700 servers and network equipment in Dallas, Texas, where it contracts with internet access providers and others as needed to provide web-hosting services.  *See id.* ¶ 6.

  Lemuria is not a party to this litigation.   Even though it acts as one of Defendant Hotfile's suppliers and was founded by Defendant Anton Titov, Plaintiffs have not attempted to make Lemuria a defendant in any claim for relief.  Plaintiffs make no claim against Lemuria even though they investigated Hotfile and related entities "for well over a year" before suit, and even though they have conducted nearly five months of discovery in the instant litigation.  Compl. ¶ 37.

  Plaintiffs denounce Lemuria as "little more than a shell company for [Defendant] Anton

---

[1] Exhibit A to Mr. Pozza's Declaration attaches a "Declaration Of Anton Titov In Support Of Lemuria Communications, Inc.'s Motion To Dismiss" filed in *Perfect 10, Inc. v. Hotfile Corp.*, No. 10-CV-2031 (S.D. Cal.).  This Declaration is referred to herein as "Titov Decl.".

Titov." Mot. at 2. However, the only evidence proffered by Plaintiffs demonstrates that Lemuria has at all times warranted its separate corporate status. Pozza Decl., Ex A ¶ 4 (Titov Decl.). Specifically, Lemuria has "regularly filed all necessary corporate documents with the Florida Secretary of State"; "appointed an agent for service of process"; reserved "funds adequate to pay for its operations and meet its obligations to creditors"; and "maintain[ed] financial accounts for use in its operations that are separate from the accounts of any other person or entity." *Id.* Plaintiffs cite no evidence to the contrary. While Plaintiffs emphasize that Lemuria originally used a drop box to obtain mail – a practice authorized by Florida law – Plaintiffs ignore the fact that they use drop boxes themselves far more widely than Lemuria, as even a cursory internet search reveals.[2] Additionally, the facts that Plaintiffs have not found a website for Lemuria or clients other than Hotfile in no way suggest that this Court should disregard Lemuria's corporate form and view Lemuria as indistinguishable from Mr. Titov himself.

### B. Lemuria's Founding In The United States To Obtain IP Addresses For Lemuria's Texas Servers

Plaintiffs assert that Mr. Titov founded Lemuria because Hotfile's prior web-hosting supplier, Webazilla, LLC, received a subpoena from pornographer Liberty Media Holdings regarding Hotfile's copyright protection practices which, Plaintiffs contend, would motivate any "legitimate ISP . . . to terminate such a blatant infringer as Hotfile." Mot. at 3. In other words, Plaintiffs assert that Mr. Titov founded Lemuria to "ensure that Hotfile had uninterrupted service irrespective of the . . . accusations of copyright infringement against it." *Id.*

---

[2] For example, Disney uses a UPS mail box at 303 E. Mail St., Hwy 28, Disney, OK  74340; Warner Bros. uses mail boxes at P.O. Box 6868, Burbank, CA  91510, and P.O. Box 30620, Tampa, FL  33630; Twentieth Century Fox Film Corporation uses P.O. Box 900, Beverly Hills, CA  90213; and Universal uses P.O. Box 8106 in Charlottesville, VA  22911 and P.O. Box 680, Inglewood, CA.

Plaintiffs do not even attempt to cite any authority for this theory. Even though Plaintiffs have subpoenaed documents from Webazilla and multiple affiliated entities; even though Plaintiffs have possessed Lemuria's production of thousands of documents beginning on May 19, 2011; and even though Hotfile has produced nearly three million pages of documents; Plaintiffs cite no evidence at all in support of their theory regarding Lemuria's founding. Six months of litigation have resulted in a vacuum of support. Opposing counsel's supposition and citation to Plaintiffs' own unverified Complaint in no way substantiates Plaintiffs' naked accusations.

In fact, Lemuria was incorporated in the United States in order to obtain Internet Protocol addresses from the American Registry for Internet Numbers (ARIN) for servers located in the United States. Declaration Of Anton Titov In Support Of Lemuria's Opposition To Plaintiffs' Motion To Compel ¶ 2 (attached hereto as Ex. A). Having compared worldwide and found servers in Texas to be the most cost-efficient, Mr. Titov could not obtain the necessary IP addresses without establishing a business in the United States. *Id.* Lemuria resulted. *Id.* Plaintiffs' attempt to conjure an unlawful intent in the absence of even a scintilla of evidence provides no basis for discovery from Lemuria.

### III.  LEGAL STANDARD

Courts "must" consider the status of a witness as a non-party when determining the extent of permissible discovery from that non-party. *United Technologies Corp. v. Mazer*, No. 05-80980, 2007 WL 788877 at *1 (S.D. Fla. Mar. 14, 2007) (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545 (11th Cir.1985)); *see* Fed. R. Civ. P. 45(c)(1) ("A party or attorney responsible for issuing and serving a subpoena ***must*** take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.") (emphasis added). Specifically,

4

there exists "a case-specific balancing test wherein the court must weigh factors such as relevance, the need of the party for the documents, the breath of the document request, the time period covered by the requests and the particularity with which the documents are described against the burden imposed on a person ordered to produce the desired information." *Id.* "[T]he status of the person as a non-party is a factor often weighing against disclosure." *Id.*; *see Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc*., 216 F.R.D. 533, 535 (M.D. Fla. 2003) (finding non-party status "significant" factor in determining whether discovery is improper).

## IV.  LEGAL ARGUMENT

### A.  Plaintiffs Cannot Identify Any Discoverable Documents Beyond Those Relating To Lemuria's Provision Of "Internet Hosting Services" To Hotfile – As Even Plaintiffs' Own Complaint Attests

In Requests Nos. 1 and 2 to Lemuria, Plaintiffs demand "[a]ll documents pertaining to your relationship with the Hotfile Website" and "[a]ll documents pertaining to your relationship with any Hotfile Entity." Although Plaintiffs illustrate subsets of these demanded documents in twenty-three subcategories, none of these subcategories limits the overall Requests Nos. 1 and 2 in any way. As evidenced by their Proposed Order, Plaintiffs seek enforcement of Requests Nos. 1 and 2 generally – even though they make no mention of at least eighteen of the subcategories in their Motion.

Plaintiffs cannot credibly dispute the overbreadth of Requests Nos. 1 and 2 as to a non-party. Although Plaintiffs do not provide this information with their Motion,[3] Plaintiffs define "your" and "Hotfile Entity" in part so as to include any "principal, executives, officers, directors,

---

[3] Local Rule 26.1(c) requires movants in discovery matters to file the discovery materials in dispute with their motions. Here, Plaintiffs failed to submit either their subpoena or Lemuria's response. On this ground alone, the Court could deny this Motion in its entirety.

employees, agents, representatives, or shareholders" of Lemuria or Hotfile respectively. Since Mr. Titov holds shares in both Lemuria and Hotfile, Plaintiffs' demand for "all documents pertaining to your relationship with any Hotfile Entity" includes all of Mr. Titov's documents pertaining to himself – or all of his documents. No justification exists for such abusive discovery. Likewise, Plaintiffs' demand for "[a]ll documents pertaining to communications with Defendants or any Hotfile Entity" in Request No. 1(a) collapses into a demand for any document that Mr. Titov or Lemuria has ever shared or even considered sharing with "Hotfile Corp. Hotfile S.A., Hotfile Ltd. . . . their principals, executives, officers, directors, employees, agents, representatives, or shareholders . . . [or] anyone purporting to act on their behalf or [whom] you understand to be acting at their direction" – regardless of any relationship to the internet file hosting subject to the current dispute.[4] Communications between Mr. Titov and his two fellow Hotfile shareholders about their weekend plans, families, hobbies, humor, or rally car racing – all of which pertain to the Hotfile Website insofar as they would never have arisen absent the working relationship of these individuals in relation to the website – have no possible relevance here.

     To make sense of Plaintiffs' demands, Lemuria offered to provide all of its documents relating to its provision of hosting services to Hotfile. This category broadly subsumes any subject matter in dispute in this litigation bearing any relation to Lemuria. Even Plaintiffs' own Complaint only refers to Lemuria's provision of "critical Internet hosting services" in its passages referring to Lemuria:

> Defendant Hotfile Corp. also is party to a long-term, ongoing business arrangement with Florida corporation Lemuria Communications, Inc. ("Lemuria") that provides Hotfile Corp.

---

[4] *See* Mot. at 7 (stating that Request 1(a) seeks "documents pertaining to communications with defendants or any 'Hotfile Entity'" absent any other restriction).

6

> with *critical Internet hosting services*. These services, obtained
> through Hotfile Corp.'s collaboration with Lemuria in Florida, are
> essential to the operation of the Hotfile website and result in
> Hotfile Corp.'s pecuniary benefit.
>
> . . .
>
> Titov also is the President and sole officer and director of Hotfile's
> hosting provider Lemuria. Titov established Lemuria to avoid
> interruption of *critical Internet hosting services* to Hotfile, after
> Hotfile's previous online service provider received a subpoena
> concerning Hotfile's infringements.

Compl. ¶¶ 11, 45 (emphasis added). Plaintiffs cannot credibly blind themselves to their own allegations in demanding discovery from Lemuria.

Plaintiffs assert that Lemuria refused to identify any services provided to Hotfile other than web hosting. Mot at 7 n.3. In fact, Lemuria repeatedly asked Plaintiffs to identify how any documents other than those related to web hosting could possibly bear any relevance in this case – and Plaintiffs refused to respond. *See* Letter from Leibnitz to Pozza of 5/16/11 at 1 (attached hereto as Ex. B); E-mail from Pozza to Leibnitz of 6/17/11 at 6-7 (attached hereto as Ex. C). Under the Rules, it remains Plaintiffs' obligation to articulate categories of documents reasonably calculated to lead to discovery of admissible evidence, as opposed to demanding essentially all of a non-party's documents and expecting that non-party to defend any exclusion from its production. Fed. R. Civ. P. 45(c)(1), 34(b)(1). In the current Motion, Plaintiffs speculate that "Lemuria *may* have communications with Hotfile related to Hotfile's business operations that are unrelated to hosting" – and then leaps to the conclusion that the imagined documents are relevant. Mot. at 7 (emphasis added). However, Lemuria has already agreed to produce:

- all documents related to Lemuria's provision of services to Hotfile related to bandwidth, internet connectivity, data transit, peering, servers and networking equipment, co-location space, datacenter facilities and support staff;

7

- all documents pertaining to any Hotfile users, including communications between Lemuria and Hotfile users;

- all documents pertaining to any content files uploaded to, downloaded from, or hosted on the Hotfile Website, subject to compliance with the Stored Communications Act;

- all documents pertaining to the presence of copyrighted material on the Hotfile Website with or without authorization, including communications with or copyright takedown notices from copyright owners or their representatives pertaining to Defendants, any Hotfile Entity, or the Hotfile Website, and Lemuria's response to, or actions taking [sic] in relation to, any such notice;

- all documents pertaining to communications with Defendants or any Hotfile entity regarding Lemuria's provision of hosting services to Hotfile; and

- all requested documents relating to Lemuria's provision of hosting services to Hotfile.

Plaintiffs fail to identify what relevant documents could possibly be missed in Lemuria's production. Simply postulating that there "may" be additional documents in Lemuria's possession does not justify a motion to compel,[5] especially given that the allegations in this case relate singularly to the hosting of files on the internet. Indeed, during meet-and-confer discussions, Lemuria pointed out to Plaintiffs that any referral services provided by Mr. Titov at Lemuria to his two co-owners at Hotfile regarding recommendations for travel agents, car mechanics, secretaries, cleaning services or the like would qualify as "communications with Hotfile related to Hotfile's business operations that are unrelated to hosting" within the ambit of Plaintiff's instant Motion – but have no bearing to any issue in this case. Plaintiffs never attempted any rejoinder. Letter from Leibnitz to Pozza of 5/16/11 (Ex. B) at 1 &n.1.[6]

---

[5] Plaintiffs similarly attempt to conjure the existence of "communications with Hotfile related to Hotfile's business operations . . . prior to the time that Lemuria even began providing hosting services." Mot. at 7. However, as Plaintiffs know from their own evidence submitted in support of their motion, "Lemuria was formed for the purpose of providing web-hosting services." Pozza Decl., Ex. A ¶ 5. Accordingly, there are no such additional documents.

[6] As one additional example, Hotfile has asked Lemuria to forward funds from Hotfile to its U.S. attorneys for their services, since Hotfile is a foreign corporation. Because Lemuria is a U.S.

Plaintiffs further argue that, of the thousands of e-mails produced in this case by Lemuria or its Florida agent, two e-mails from Anton Titov at Lemuria – one to a Hotfile user and the other to a copyright holder – prove that Lemuria provides services to Hotfile beyond those related to web-hosting. However, as Plaintiffs know, Lemuria agreed to produce its communications with Hotfile users and as well as its correspondence with copyright holders ***without restricting these documents to those related to web-hosting***. Specifically, Lemuria agreed to produce "all documents pertaining to any Hotfile users, including communications between Lemuria and Hotfile users" pursuant to Request No. 1(e), and "all documents pertaining to the presence of copyrighted material on the Hotfile Website with or without authorization, including communications with or copyright takedown notices from copyright owners," pursuant to Request No. 1(g). Plaintiffs cannot credibly cite documents that Lemuria agreed to produce (and indeed which have been produced by its Florida agent) as evidence that Lemuria failed to meet its discovery obligations in any way.

Plaintiffs also argue that additional documents from Lemuria will "help establish the extent of Titov's involvement in Hotfile's infringing activities." Mot. at 8. However, the Defendants in this case – Hotfile and Mr. Titov – have produced 2,831,976 pages of documents regarding their role in accused copyright infringement at www.hotfile.com. It defies credulity to argue that a non-party should bear the burden in discovery of demonstrating the relationship between two parties, particularly where Plaintiffs have already served exhaustive discovery demands on the parties. Moreover, in arguing that "Lemuria's communications . . . with Hotfile – whether or not related to hosting services – will show the extent of Titov's involvement in

---

entity, it can make wire transfers within the United States without the complication and delay of international protocols. This "service," if indeed it qualifies as one within the contemplation of Plaintiffs' demands in Requests Nos. 1 and 2, obviously has no bearing on this dispute.

9

Hotfile's activities," Plaintiffs abandon relevance altogether. Mot. at 8. Messages between Mr. Titov and individuals at Hotfile about topics *unrelated* to Hotfile's hosting of files on the internet bear no relevance to the conduct alleged in the Complaint, as evidenced by the devotion throughout the Complaint to the concept of "Hotfile-hosted infringing content." *E.g.*, Complaint ¶ 22 (referring to "Hotfile-hosted infringing content"); *id.* ¶ 26 (accusing "Hotfile-hosted content"); *id.* ¶ 27 ("Hotfile sells access to content hosted on its service."); *id.* ¶ 35 (regarding "Hotfile-hosted content, nearly all of [it] is copyright infringing"); *id.* (referring to "Hotfile-hosted infringing content"); *id.* ¶ 2 ("Defendants actively encourage their users to upload to Hotfile's computer servers infringing copies of the most popular entertainment content in the world."); *id.* ¶ 11 ("[Lemuria] provides Hotfile Corp. with critical Internet hosting services."); *id.* ¶ 20 ("Hotfile encourages its users to upload content files to Hotfile's own commercial-grade servers, on which Hotfile is believed to host millions of copies of files."); id. ¶ 45 ("Titov established Lemuria to avoid interruption of critical Internet hosting services to Hotfile"). The fact that Plaintiffs' demand for "Lemuria's communications . . . with Hotfile . . . not related to hosting services" encompasses purely personal e-mails, or e-mails about topics such as movies or cars or vacations, only serves to demonstrate the war of attrition that Plaintiffs wage against Hotfile in this litigation. Mot. at 8.

Plaintiffs go on to demand discovery regarding their allegation that "Titov established Lemuria to avoid interruption of critical Internet hosting services to Hotfile." Mot. at 9. Plaintiffs ignore the fact that Lemuria has agreed to provide all documents relating to its provision of hosting services to Hotfile – including documents relating to Lemuria's founding. *See* Pozza Decl., Ex. A ¶ 5 (Titov Decl.) ("Lemuria was formed for the purpose of providing web-hosting services, in particular for Hotfile.com."); Mot. at 5 (reciting Lemuria's agreement to

"produce all nonprivileged documents . . . relating to Lemuria's provision of hosting services to Hotfile."). Plaintiffs cannot properly move to compel documents that Lemuria has already agreed to produce solely for the purpose of inflicting discovery proceedings on a non-party.

Plaintiffs also argue that Lemuria should provide all "documents related to Lemuria's role in operating Hotfile" other than those related to provision of hosting services so that Plaintiffs can find grounds to sue Lemuria. *See* Mot. at 9. However, Plaintiffs cite no authority that permits a party to ignore the allegations in its complaint – which here relate singularly to Lemuria's provision of hosting services to Hotfile – and demand production of unaccused activities in hopes of finding a reason to sue Lemuria. *See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim.") (emphasis in original).[7] In any event, Plaintiffs fail to explain why this Court should compel discovery of any communications by Lemuria's President to Hotfile's owners regarding topics such as: recommendations regarding office furniture, plant watering services, or reliable copy machines; how to select the most secure password when logging on to a website like www.hotfile.com; or Lemuria's forwarding of Hotfile's legal payments to the undersigned counsel in the United States so that Hotfile may avoid delays associated with international money transfers.

---

[7] Plaintiffs' authority, *Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1036 (S.D. Fla. 2007), permitted ninety days of discovery at the outset of litigation to identify which of the many persons working on behalf of a hospital bore responsibility for submitting allegedly fraudulent invoices to Medicare/Medicaid. Here, after investigating Hotfile and Mr. Titov for "well over a year," Compl. ¶ 37, and after five months of discovery, Plaintiffs have received millions of pages of documents regarding Hotfile's accused hosting of files on the internet. Plaintiffs have had more than enough opportunity to determine whether to sue Lemuria, with its one associated individual, or any other entities. *Heater* does not support further discovery under these facts from anyone, and particularly not from a non-party.

11

By attempting to eliminate any limitation on Lemuria's production to documents relating to provision of hosting services to Hotfile, Plaintiffs effectively demand "all documents relating to Hotfile," which – to the extent that Hotfile represents Lemuria's only client as Plaintiffs allege – amounts to a demand for simply "all documents." No authority supports such an abusive demand on a non-party.

    **B.**    **Plaintiffs' Demand For Financial Documents In Request No. 2(e) Remains So Overbroad As To Require Production Of Lemuria's and Hotfile's Legal Invoices, Attorney Timesheets, And Payment Records Regarding This Litigation**

In Request No. 2(e), Plaintiffs demand "[a]ll documents pertaining to any and all financial arrangements, revenue sharing, and accountings between Lemuria and any Hotfile Entity, including any revenue, income, funds, or other valuable consideration exchanged between Lemuria and any Hotfile Entity." Plaintiffs define "Hotfile Entity" as "Hotfile Corp., Hotfile S.A., Hotfile, Ltd., and any other entity you understand to be involved with the operation of the Hotfile Website, including their principals, executives, officers, directors, employees, agents, representatives, or shareholders of such entity, and further including anyone purporting to act on their behalf or you understand to be acting at their direction."

Exemplifying its overbreadth, this demand calls for production of all of Lemuria's and Hotfile's legal bills, attorney timesheets, and payment records in this litigation. The undersigned law firms, which defend the legality of Hotfile's website and provide counsel regarding its operation, qualify as "Hotfile Entities" in that they are "involved with the operation of the Hotfile Website." Legal invoices regarding this litigation thus qualify as "accountings between Lemuria and any Hotfile Entity." From there, attorney timesheets – and arguably all documents created by counsel in this litigation – qualify as "documents pertaining to . . . accountings between Lemuria and any Hotfile Entity." Likewise, Lemuria's payment records regarding its

12

legal invoices qualify as "documents pertaining to . . . consideration exchanged between Lemuria and any Hotfile Entity." The overbreadth of this demand is exacerbated by the fact that Lemuria forwards Hotfile's legal payments from abroad to counsel in the United States, meaning that Hotfile's legal invoices, timesheets, and payment records also qualify as "documents pertaining to . . . accountings between Lemuria and any Hotfile Entity . . . [or] consideration exchanged between Lemuria and any Hotfile Entity."

To make sense of Plaintiffs' demand, Lemuria offered in writing on June 23, 2011 to produce documents sufficient to show payments between it and the Hotfile business entities (Hotfile Corporation, Hotfile, Ltd., and Hotfile S.A.) provided that Plaintiffs drop additional demands for this information from financial services providers such as non-party PayPal. E-mail from Pozza to Leibnitz of 7/29/11 at 10 (attached hereto as Exhibit D).[8] Plaintiffs rejected the offer. *Id.* at 1. Plaintiffs demanded that Lemuria represent that it neither pay funds to or take funds from any other entity in relation to the Hotfile website – even though, as Plaintiffs knew, Lemuria paid funds to legal counsel and also purchased servers for use with the Hotfile website, neither of which expenditures had any bearing on the case. *Id.* at 6. Still discontent, Plaintiffs then demanded that Lemuria categorically represent that it accepts no funds from any party "in any way related to the Hotfile Website," even though a small business loan from Bank of America would qualify (and have no possible bearing to any claim or defense in this litigation). *See id.* at 2. Plaintiffs overreach, seeking financial data from a non-party with no possible relevance and discovery which could in any event be obtained in party discovery to the extent

---

[8] Plaintiffs omit any reference to Lemuria's proposal in their Motion.

such discovery is otherwise permissible.[9] In any event, this Court should reject Plaintiffs' demand in their Motion for the full scope of their overbroad document requests and Plaintiffs' motion to compel as to Requests 2(e) should be denied.

### C. Lemuria's PayPal Records Already Show Lemuria's Total Income, Thereby Discharging Request No. 11

Plaintiffs also move to compel compliance with Request No. 11, which calls for "[d]ocuments sufficient to show all income received by Lemuria, directly or indirectly, in connection with the Hotfile Website, Defendants, or any Hotfile Entity." However, this request has already been discharged: Lemuria's PayPal records show the "total amount received" by the company, as Plaintiffs' own filing attests. *See* Mot. at 2 n.2 ("Docket Entry 79 . . . show[s] incoming payments to Lemuria."). To the extent that Plaintiffs seek any more granular information – which would tend to expose the amounts associated with regular legal expenditures for Lemuria or Hotfile as discussed above – such documents lack any relevance or discoverability. The Court should deny Plaintiffs' motion regarding Request No. 11.

### D. Documents Demanded In Request No. 4 Regarding Services Rendered To Entities Other Than Hotfile Are, By Definition, Irrelevant To This Case

By Request No. 4, Plaintiffs demand from non-party Lemuria "[d]ocuments sufficient to show each service Lemuria provides to any person other than Defendants or any Hotfile Entity." Mot. at 10. By definition, any responsive documents have nothing to do with this case. Plaintiffs do not even attempt to deny that fact. *See id.* at 11. Rather, Plaintiffs hope that Lemuria will produce *no* responsive documents, which Plaintiffs perceive as evidence that Lemuria was founded to prevent "legitimate" service providers from terminating support for

---

[9] The parties currently dispute the extent of financial discovery available from Hotfile. *See* Memorandum Of Law Of Defendants In Opposition To Plaintiffs' Motion To Compel [Dkt. No. 81] at 17-20.

14

Hotfile. *Id.* But this reasoning defies sense. Even if Lemuria has only one client, it makes Lemuria no more or less likely to have been founded for illicit purposes as opposed to reasons of lower cost, greater efficiency, or convenience. Moreover – despite having subpoenaed documents from Hotfile's former suppliers, reviewed Lemuria's production, and studied Hotfile's production of nearly three million pages of documents – Plaintiffs cannot support their theory with any evidence at all of a threatened termination of Hotfile by Hotfile's former suppliers. Plaintiffs cannot overcome the vacuum of justification for this discovery through postulation by counsel and citation to their own unverified Complaint. The Court should deny Plaintiffs' demand to compel compliance with Request No. 4.

**E.    No Reason Exists For Lemuria To Produce Further Corporate Board Records In Response To Request No. 9, Given That No Evidence Suggests That Lemuria Has Failed To Comply With Corporate Formalities, And Plaintiffs' Complaint Does Not Contend Otherwise**

By Request No. 9, Plaintiffs seek "[a]ll documents pertaining to meetings of Lemuria's board of directors." Mot. at 10-11. In response, Lemuria has produced its articles of incorporation, its bylaws, and meeting minutes. It is unclear what more Plaintiffs seek. In any event, Plaintiffs make no case for discovery of Lemuria's activities outside of its provision of hosting services to Hotfile, as set forth above. Moreover, no evidence supports the suggestion in the Motion that Lemuria has failed in any way to comply with "corporate formalities." Mot. at 11. Indeed, the only evidence proffered by Plaintiffs flatly states otherwise. Pozza Decl., Ex A ¶ 4 (Titov Decl.) (Lemuria has "regularly filed all necessary corporate documents with the Florida Secretary of State"; "appointed an agent for service of process"; reserved "funds adequate to pay for its operations and meet its obligations to creditors"; and "maintain[ed] financial accounts for use in its operations that are separate from the accounts of any other person or entity."). Plaintiffs do not even make any allegation in their Complaint regarding inadherence with

15

corporate formalities by any entity. The Court should deny Plaintiffs' motion to compel further response to Request No. 9.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel further production of documents from Lemuria should be denied.


Dated: August 26, 2011

Respectfully submitted,

s/ Janet T. Munn
Janet T. Munn, Fla. Bar No. 501281
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, FL 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com


s/ Andrew Leibnitz
Roderick M. Thompson *(Admitted pro hac vice)*
rthompson@fbm.com
Andrew Leibnitz *(Admitted pro hac vice)*
aleibnitz@fbm.com
Anthony P. Schoenberg *(Admitted pro hac vice)*
tschoenberg@fbm.com
Deepak Gupta *(Admitted pro hac vice)*
dgupta@fbm.com
Janel Thamkul *(Admitted pro hac vice)*
jthamkul@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

*Counsel for Non-Party Lemuria*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2011, the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/Janet T. Munn
Janet T. Munn

Karen L. Stetson, Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305.416.6880 Fax: 305.416.6887

Steven B. Fabrizio (*Pro Hac Vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice*)
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Phone: 202.639.6000 Fax: 202.639.6066

Daniel M. Mandil, Esq. Motion Picture
Association of America, Inc.
15301 Ventura Boulevard Building E
Sherman Oaks, CA
818-935-5812
Email: Daniel_Mandil@mpaa.org

Karen R. Thorland, Esq.
Senior Content Protection Counsel
Motion Picture Association of America, Inc.
15301 Ventura Boulevard Building E
Sherman Oaks, CA
818-935-5812
Email: Karen_Thorland@mpaa.org