UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN


DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.
_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL RESPONSES TO DISCOVERY FROM PLAINTIFFS**

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................1

I.   DEFENDANTS ARE NOT ENTITLED TO PLAINTIFFS' PRE-
     COMPLAINT INVESTIGATION MATERIALS. ...................................................1

     A.  Defendants Fail to Properly Specify the Materials Sought. ................................ 2

     B.  Any Marginal Relevance of Plaintiffs' Investigatory Materials Is Far
         Outweighed by the Prejudice to Plaintiffs from Disclosure. ................................ 3

         1.  Plaintiffs' Investigation of Hotfile is Irrelevant to Defendants' DMCA
             Defense. ..................................................................................................4

         2.  Plaintiffs' Investigation of Hotfile is Irrelevant to Defendants'
             Knowledge and Control. ............................................................................4

         3.  Plaintiffs' Investigation of Hotfile is Irrelevant to the Allegations in
             the Complaint. .........................................................................................5

         4.  Defendants Cannot Compel Production of Plaintiffs' Investigation of
             Hotfile In Connection with a Counterclaim That Has Not Been Filed. ...........6

         5.  Plaintiffs' Investigation of Hotfile is Irrelevant to Direct
             Infringement. ...........................................................................................7

II.  DEFENDANTS' DEMAND FOR ALL OF PLAINTIFFS' DOCUMENTS
     ABOUT HOTFILE FILES SHOULD BE REJECTED. ...........................................7

     A.  Plaintiffs Should Not Be Compelled to Produce, Pursuant to Request No. 5,
         Irrelevant Documents Beyond that Request's Scope. ......................................... 8

     B.  The Additional Documents Sought by Defendants Are Not Responsive and/or
         Are Irrelevant. ............................................................................................... 9

     C.  Defendants' Indiscriminate Challenge to Plaintiffs' Assertions of Attorney-
         Client Privilege and Work Product Protection is Premature and Without Merit. 10

         1.  In the Absence of Privilege Logs, It would be Premature to Address
             Privilege Issues. ......................................................................................10

         2.  Defendants' Requests Present Serious Privilege Issues. ...............................11

III. PLAINTIFFS NEED NOT PROVIDE ANY FURTHER RESPONSE TO
     INTERROGATORY NO. 1 UNTIL DEFENDANTS HAVE PRODUCED
     RELEVANT DISCOVERY. ..............................................................................12

     A.  Plaintiffs Have Fully Responded to the Interrogatory Defendants Asked. ......... 13

     B.  Defendants Improperly Seek to Compel an Answer to a Question Not Asked –
         And Which Is Irrelevant and Unduly Burdensome. .......................................... 13

IV.  DEFENDANTS' NEBULOUS REQUEST FOR DOCUMENTS ABOUT
     "FAIR USE" ON THE INTERNET GENERALLY SHOULD BE DENIED. .........15

V.   PLAINTIFFS' GENERAL "USE OF THE INTERNET TO MARKET
     WORKS" IS IRRELEVANT. ...........................................................................17

VI.  PLAINTIFFS' OPERATION OF THEIR OWN WEBSITES IS
     IRRELEVANT TO WHETHER DEFENDANTS REASONABLY
     IMPLEMENT A REPEAT INFRINGER POLICY. ...................................................18

CONCLUSION ............................................................................................................20

## **TABLE OF AUTHORITIES**

CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)..............................................15

*BMG Music v. Gonzalez,* 430 F.3d 888 (7th Cir. 2005) ..............................................................15

*Calderon v. Reederei Claus-Peter Offen GMBH & Co.*, No, 07-61022-CIV, 2009
    WL 3242008 (S.D. Fla. Oct. 5, 2009)........................................................................8

*Columbia Pictures Indus., Inc. v. Bunnell*, CV 06-1093 FMC(JCx), Order (C.D.
    Cal. Feb. 13, 2007).................................................................................................18

*Corbello v. Devito*, No. 2:08-cv-00867-RCJ-PAL, 2010 WL 4703519 (D. Nev.
    Nov. 12, 2010), *on recons. in part¸* 2011 WL 1466605 (D. Nev. Apr. 15,
    2011) ......................................................................................................................16

*Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994) ................................6

*Dushkin Publishing Group, Inc. v. Kinko's Service Corp.*, 136 F.R.D. 334 (D.D.C.
    1991) ......................................................................................................................16

*Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132 (N.D. Cal. 2008)....................16, 19

*James v. Wash Depot Holdings, Inc.*, 240 F.R.D. 693 (S.D. Fla. 2006).........................................8

*Jones v. Martinez*, No. 1:04-cv-6318 OWW DLB P, 2008 WL 5246154 (E.D. Cal.
    Dec. 15, 2008).........................................................................................................8

*Kansas Heart Hospital, L.L.C. v. Executive Risk Indemnity, Inc.*, No. 06-1345-
    MLB, 2007 WL 1125772 (D. Kan. April 16, 2007) ...............................................19

*Lamon v. Adams*, No. 1:09-cv-00205-LJO-SKO PC, 2011 WL 711580 (E.D. Cal.
    Feb. 1, 2011) ..........................................................................................................16

*Pincus v. Law Offices of Erskine & Fleisher*, NO. 08-81357-CIV, 2010 WL
    286790 (S.D. Fla. Jan. 19, 2010) ........................................................................3, 16

*Robbins v. Provena Saint Joseph Medical Center*, No. 03 C 1371, 2004 WL
    502327 (N.D. Ill. Mar. 11, 2004).............................................................................19

*Socas v. Northwestern Mutual Life Insurance Co.*, No. 07-20336-CIV, 2008 WL
    276069 (S.D. Fla. Jan. 31, 2008) ........................................................................3, 16

*Stella v. LVMH Perfumes and Cosmetics USA, Inc.*, No. 07-CV-6509, 2009 WL
    780890 (N.D. Ill. Mar. 23, 2009)..............................................................................19

iv

*Stern v. O'Quinn*, 253 F.R.D. 663 (S.D. Fla. 2008) ...................................................................6

*UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F. Supp. 2d 1099 (N.D. Cal. 2009) ................................................................................................................... 17-18

*Van Kampen High Yield Municipal Fund v. O'Donnell & Naccarato,* No. CIV.A. 02-1210, 2003 WL 751005 (E.D. Pa. Mar. 4, 2003) ..............................................8

## STATUTES

17 U.S.C. § 106.................................................................................................................2

17 U.S.C. § 512(i)(1)(A)..................................................................................................18

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(b)(3)(B) ............................................................................................14

This is a case about *Defendants'* conduct – how *Defendants* operate the Hotfile website to profit from infringement of Plaintiffs' copyrighted works.  But Defendants have sought to shift the focus of this case from their infringing conduct to Plaintiffs' efforts to respond to online infringement of their copyrighted works.  This "attack the victims" strategy continues in this motion, which asks the court to compel production of documents detailing Plaintiffs' anti-piracy enforcement strategies and processes, including actions taken at the instruction of counsel in contemplation of this litigation.  In support of their motion, Defendants obfuscate the nature of their demands, mischaracterize the Plaintiffs' positions, and concoct specious relevance arguments, as discussed in Parts I and II below.  Beyond that, Defendants seek to force Plaintiffs to provide information about files on Hotfile's service that are not even part of this lawsuit (Part III), documents about fair use and marketing on "the Internet" even though Plaintiffs are producing anything that could be relevant to this action (Parts IV and V), as well as documents about Plaintiffs' own websites having nothing to do with this case (Part VI).  Defendants' motion should be denied in all respects.[1]

**ARGUMENT**

I.   **DEFENDANTS ARE NOT ENTITLED TO PLAINTIFFS' PRE-COMPLAINT INVESTIGATION MATERIALS.**

Defendants broadly move to the Court to declare, in the abstract, that Plaintiffs have interposed an invalid objection to producing documents arising out of Plaintiffs' investigation of Hotfile, an objection that Plaintiffs raised against six of Defendants' requests for production, among others.  *See* Mot. at 1-4.  Defendants' motion should be denied because Defendants have not properly specified what documents they are seeking, and because, as discussed in Part I.B *infra*, the investigation materials are not relevant to any claim or defense in this case; even if

---

[1] Defendants' ever-present rhetoric and claims of hardship can be taken with a hefty dose of salt. For instance, Defendants compare the number of documents they collectively produced *as of their motion date* with how many documents produced by one of the Plaintiffs *as of a month earlier*.  Defendants complain that "*as of last month*" one of the Plaintiffs had "produced only 91 pages."  Mot. at 1 (emphasis added).  In fact, that same Plaintiff had produced 32,273 pages *before* Defendants filed their motion.  Defendants also ignore that, while many of the documents produced by Plaintiffs required careful attorney review for privilege, most of the claimed two million documents produced by Defendants (consisting mostly of copies of two databases of user emails) required no attorney review.  The truth is, Defendants have been withholding key categories of documents likely to contain highly incriminating evidence, which is why Plaintiffs have had to file their own motions to compel.

there were any marginal relevance (which there is not), it would be far outweighed by the potential undue prejudice from disclosure.

### A. Defendants Fail to Properly Specify the Materials Sought.

At the outset, Defendants fail to properly specify which documents they are moving on or why any particular materials are relevant.  Plaintiffs objected, with respect to multiple document requests served by Defendants, that documents reflecting Plaintiffs' investigation of Hotfile are not relevant and that such discovery would be highly prejudicial to Plaintiffs' ability to protect their copyrights online.  Defendants ask the Court to rule, *in the abstract*, that this objection is without merit.  Therefore, they move *en masse* on numerous requests for production without incorporating the language of each request in contravention of Local Rule 26.1(h), seemingly asking the Court to compel the production of *all* documents called for by six different document requests.[2]

Defendants claim that this approach is proper because Plaintiffs have interposed the same "blanket" relevance and confidentiality objections to multiple requests that relate in some way to Plaintiffs' pre-complaint investigation.  *See* Mot. at 1 n.1.  But Plaintiffs' objection is fundamentally a relevance objection, and the different discovery requests against which Plaintiffs interposed this objection seek production of different documents on different theories.  *See supra* note 2.  Defendants' arguments against Plaintiffs' objection vary from one request to another – in particular, Defendants argue that the investigatory documents are relevant, but make different relevance arguments that do not meaningfully line up with their requests, and, at times, without

---

[2] The broad requests seek, *inter alia*, (1) "[a]ll DOCUMENTS that REFER or RELATE to HOTFILE, Anton Titov, Lemuria Communications, Constantin Luchian, or this litigation including DOCUMENTS exchanged between and among PLAINTIFFS and/or any other PERSON, including but not limited to the MPAA, Liberty Media Holdings LLC, Perfect 10, Inc., and DtecNet"; (2) "[a]ll DOCUMENTS that REFER or RELATE to any file that YOU allege was or is present on hotfile.com that YOU allege infringes or infringed YOUR copyrights"; (3) "[a]ll printouts, PDF prints, screen captures, and downloaded or streamed files from hotfile.com"; (4) "[a]ll DOCUMENTS evidencing any visits to hotfile.com or browsing of hotfile.com by YOU or YOUR agents"; (5) "[a]ll DOCUMENTS, including but not limited to downloaded and/or electronic files, RELATING TO investigations of hotfile.com or its known users or affiliates"; and (6) "[a]ll DOCUMENTS that YOU allege evidence any violation by HOTFILE or its users of any exclusive right belonging to PLAINTIFFS under 17 U.S.C. § 106, or under state law, including all such DOCUMENTS that PLAINTIFFS may use to support their claims in this litigation."  *See* Plaintiffs' Response to Defendants' First Set of Requests for Production, Nos. 1, 5, 6, 12, 14 & 29.

2

even specifying at all which theories of relevance are supposed to relate to which requests.  *See* Mot. at 2-4.  Defendants' failure to properly specify which relevance arguments apply to which particular documents requested makes it almost impossible for the parties or the Court to meaningfully address the relevance objection in the context of a specific request.[3]

Moreover, Defendants' motion obfuscates the scope of investigative documents being requested.  The relevance theories Defendants argue in their motion are directed to categories of documents that are substantially *narrower* than those demanded in the broad requests themselves.[4]  Finally, compounding these shortcomings, Defendants failed to submit a proposed order clarifying the scope of their proposed relief.  Defendants' approach fails to specify with any reasonable degree of precision what they are seeking to compel and why.  Part I of Defendants' motion, accordingly, should be denied.

**B.  Any Marginal Relevance of Plaintiffs' Investigatory Materials Is Far Outweighed by the Prejudice to Plaintiffs from Disclosure.**

On the merits, Defendant's broad requests for investigative materials should be denied because the materials Plaintiffs have objected to producing in response to the six different requests against which Plaintiffs interposed their objection – reflecting how Plaintiffs investigate infringing content online, and the criteria and strategies they use to enforce their rights through notifications of infringement – are highly sensitive and maintained in confidence by Plaintiffs.  Their improper disclosure could cause Plaintiffs serious harm by providing online content

---

[3] Moreover, in any event, Defendants' request that the Court compel production of *all* documents called for by the six discovery requests, on the basis that the Plaintiffs' general objections relating only to the investigatory documents are without merit, is illogical and should also be denied.  The alleged lack of merit of an objection relating to a subset of demanded documents does not vitiate objections targeting the remaining documents.

[4] The theories of relevance Defendants argue in their motion all center around Plaintiffs' investigation of infringing files on the Hotfile website.  *See* Mot. at 2-4.  But, for instance, Plaintiffs also have objected to handing over their investigatory materials regarding their efforts to understand Defendants' secretive corporate entities and principals.  Defendants' motion articulates no reason why they should be entitled to such materials, which include work product – and Defendants have waived any such argument to obtain these (and other) materials not addressed in their motion.  *Pincus v. Law Offices of Erskine & Fleisher*, NO. 08-81357-CIV, 2010 WL 286790, at *2 n.1 (S.D. Fla. Jan. 19, 2010) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived"); *Socas v. Northwestern Mut. Life Ins. Co.*, No. 07-20336-CIV, 2008 WL 276069, at *2 (S.D. Fla. Jan. 31, 2008) (same).

thieves with a road map for circumventing Plaintiffs' online enforcement efforts.[5]  These materials are wholly irrelevant to any claim or defense in this case.  In any event, any marginal relevance would be substantially outweighed by the potential prejudice arising from discovery of those materials.  Plaintiffs have filed a Motion for a Protective Order, now fully briefed, that addresses these very issues in detail.  *See* Pls.' Mot. for Protective Order (Dkt. #104, 105-1); Pls.' Reply in Support of Mot. for Protective Order (Dkt. #118).  In Plaintiffs' Motion for a Protective Order, Plaintiffs explain that Defendants' laundry list of theories for why Plaintiffs' investigatory materials are relevant – the identical list reiterated by Defendants here – cannot withstand scrutiny.  Plaintiffs briefly summarize this discussion below:

       1.      <u>Plaintiffs' Investigation of Hotfile is Irrelevant to Defendants' DMCA Defense</u>.

In large part, Defendants' relevance theories turn on a fundamental misunderstanding of the Digital Millennium Copyright Act ("DMCA"):  the mistaken belief that the statute affirmatively requires copyright owners to send notices of infringement for their works.  This, according to Defendants, would somehow call into question Plaintiffs' processes and decision-making behind takedown notices.  But Defendants are flatly wrong on the law.  The statute itself, its legislative history, and every court to address the issue make clear that copyright owners are under no obligation to send takedown notices at all.  *See* Pls.' Mem. in Support of Mot. for Protective Order (Dkt. #105-1) at 3-5; Pls.' Reply in Support of Mot. for Protective Order (Dkt. #118) at 4-7.  Thus, a copyright owner's reasons for doing so, or not doing so, are irrelevant to the operation of the safe harbor.  A defendant's eligibility for DMCA safe harbor turns exclusively on the *defendant's* conduct, without regard to any copyright owner conduct.  The only element of the copyright owner's conduct that is relevant is whether its notices comply with the statutory criteria – which is apparent on the face of the notices themselves (and which Plaintiffs are producing).

       2.      <u>Plaintiffs' Investigation of Hotfile is Irrelevant to Defendants' Knowledge and Control.</u>

Defendants also argue that Plaintiffs' investigation of allegedly infringing material on Hotfile is relevant to whether Hotfile had the knowledge and control required for secondary copyright infringement liability, and that  "Plaintiffs' own investigation bears on what sort of

---

[5] These documents are also in substantial part attorney-client privileged and/or protected as attorney work product.  Defendants' requests, for instance, encompass documents prepared by outside litigation counsel in the course of bringing this case.

investigation Hotfile supposedly should have done." Mot. at 3. This argument is specious. Defendants' knowledge of and ability to control infringement on Hotfile has nothing to do with Plaintiffs' investigation of infringement on Hotfile. Unlike Defendants, Plaintiffs have no visibility into Hotfile's system. Instead, Plaintiffs must surmise what is going on inside of Hotfile by seeking clues outside of it – clues like links posted on linking sites that point to unauthorized files of Plaintiffs' content hosted on Hotfile. Because of the striking asymmetry between what Defendants know about Hotfile, and what Plaintiffs know, Plaintiffs have been compelled to resort to completely different investigative strategies to find infringements on Hotfile than Defendants could use. Defendants need only to look into their own system and servers to find out what content Hotfile is hosting, who uploaded it, who is linking to it, who is being paid for uploading and linking to it, and who is watching.

In a related vein, Defendants claim that Plaintiffs' investigation of infringement on Hotfile *may* reveal that Plaintiffs posted their copyrighted content on Hotfile for their own commercial purposes, making it hard for Hotfile to distinguish infringing from non-infringing files. Mot. at 3. But if Defendants want to know whether Plaintiffs uploaded their content onto Hotfile, they can ask that question in an interrogatory. Indeed, they have. *See* Defs.' Interrog. No. 8. There is no need to go on a fishing expedition for this information in the highly sensitive documents reflecting Plaintiffs' anti-piracy strategies and procedures.

3.    Plaintiffs' Investigation of Hotfile is Irrelevant to the Allegations in the Complaint.

Significantly mischaracterizing the allegations in the Complaint, Defendants next claim that Plaintiffs' investigation of Hotfile is relevant because "Plaintiffs' theory of 'inducement' rests upon the allegation that Hotfile has designed its hosting service to overwhelm the Plaintiffs' ability to send takedown notices." Mot. at 3. But Plaintiffs do not anywhere make such an allegation, nor does that allegation have anything to do with Plaintiffs' theory of inducement.

Plaintiffs' inducement claim is based on Defendants' active, affirmative encouragement of copyright infringement. It has nothing to do with whether or not Plaintiffs are "overwhelmed" by the infringement Defendants induce.[6] What Plaintiffs *actually* allege in Paragraph 37 – on

---

[6] Apparently, Defendants believe that since Congress deemed the inherent limitations of takedown notices to be a *policy* reason to require service providers to do more than merely remove infringing materials in response to notifications, this somehow puts in issue, in every action for infringement against a service provider, whether the plaintiff content owner actually

which Defendants rely – is that Plaintiffs continuously demand removal of infringing files from Hotfile while Defendants continually induce their users to upload new ones.  *See* Complaint ¶ 37.

In the same vein, Defendants claim that Plaintiffs have alleged "[t]hroughout the Complaint" that "Hotfile has deliberately frustrated their efforts" to remove infringing content from the site, and that this allegation raises the "issue whether the Plaintiffs' efforts have been genuine and whether there are additional measures they could have taken but did not."  Mot. at 7.  Again, Defendants mischaracterize the Complaint.  Plaintiffs have made no such allegations.[7]  As just stated, Plaintiffs' inducement claim is based on Defendants' active, affirmative encouragement of infringement.  Defendants' suggestion that Plaintiffs' responses to infringement are relevant to whether the infringement occurred is illogical and puts the cart before the horse.[8]

    4.    <u>Defendants Cannot Compel Production of Plaintiffs' Investigation of Hotfile In Connection with Their Counterclaim.</u>

Defendants also claim an entitlement to take discovery in support of a counterclaim.  Mot. at 4.  This is clearly a *post-hoc* rationalization, as Defendants had not filed any such counterclaim at the time they served their discovery or at the time they moved to compel.  And the counterclaim they filed *later* is only against one Plaintiff – Warner Bros. Entertainment Inc. ("Warner") – and therefore supplies no conceivable basis for compelling discovery into the investigations conducted by the *other* Plaintiffs or their outside counsel.  And Warner is already supplying a good deal of information to Defendants, including an upcoming 30(b)(6) deposition

---

suffered from the inherent limitations of takedown notices that explain why Congress wrote the law the way it did.  This notion is absurd.

[7] Plaintiffs do allege that one way Defendants actively encourage infringement is as follows: Defendants' system creates multiple identical copies of a file from a single user upload, so that, if a link to one copy is taken down, the user can continue to distribute the infringing file by using a link to one of the other copies.  *See* Complaint ¶ 38.  Again, how Plaintiffs respond to these infringements has nothing to do with whether or not the infringements occurred.

[8] Defendants' related argument, that Plaintiffs' allegations waive work product protection over Plaintiff's antipiracy investigations generally, *see* Mot. at 7-8, relies on the same mischaracterizations and fails for the same reason.  Moreover, Defendants' "waiver" argument misstates the law.  Although a waiver of *attorney-client privilege* may extend beyond specific documents to wider subject areas, waiver of *work product protection* does not.  Any work product waiver would extend only to the specific documents or information already disclosed.  *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422-23 (11th Cir. 1994); *Stern v. O'Quinn*, 253 F.R.D. 663, 683-84 (S.D. Fla. 2008).

regarding, *inter alia*, Warner's use of Hotfile's "Special Rightsholder Account" that forms the basis of Defendants' counterclaim. The counterclaim puts in issue – at most – Warner's use of Hotfile's takedown tool and Warner's basis for sending any specific notices that Defendants allege are improper, and not every conceivable document related to its investigation of Hotfile, as Defendants have indiscriminately demanded. And Defendants' motion to compel is, in any event, premature: Plaintiffs did not even know what Defendants' specific allegations or theories of liability against Warner were until this week, when Defendants filed their counterclaim, and the parties have not yet had the chance to fully meet and confer regarding the effect, if any, of Defendants' counterclaim on the materials are properly discoverable in this action. Respectfully, as to the counterclaim this request is not yet ripe.

     5.    <u>Plaintiffs' Investigation of Hotfile is Irrelevant to Direct Infringement.</u>

Defendants' argument that they are seeking "basic facts about the files users are hosting, the context of how they are being used, and whether they may be infringing," Mot. at 2, is misleading. Plaintiffs are *already* producing downloaded copies of the infringing files for which Plaintiffs are alleging infringement in this action. *See infra* Parts II & III. There is no conceivable relevance to such materials for files for which Defendants are *not* being sued.

*     *     *     *     *

As stated above, Plaintiffs have filed a Motion for a Protective Order, now fully briefed, on these very issues. *See* Pls.' Mot. for Protective Order (Dkt. #104, 105-1); Pls.' Reply in Support of Mot. for Protective Order (Dkt. #118). Plaintiffs refer the Court to the briefing on Plaintiffs' Motion for a Protective Order (Dkt. #105-1, 118), and incorporate that briefing by reference herein.

**II.    DEFENDANTS' DEMAND FOR ALL OF PLAINTIFFS' DOCUMENTS ABOUT HOTFILE FILES SHOULD BE REJECTED.**

Defendants' Request No. 5 seeks production of all documents relating to any and all files that Plaintiffs "allege infringes or infringed" their copyrights. *See* Mot. at 4-8. Plaintiffs have already responded to this request insofar as it seeks documents relating to files that Plaintiffs are alleging, in this litigation, were infringed by Hotfile.[9] But Defendants have sought to expand this

---

[9] The produced documents include Plaintiffs' downloaded copies of all files for which Plaintiffs allege infringement, all of Plaintiffs' takedown notices to Hotfile (irrespective of whether Plaintiffs are alleging, in this case, infringement of the file identified therein), and Plaintiffs' records (including spreadsheets) reflecting those takedown notices. As explained *infra* Part III,

7

request to documents relating to motion pictures and television shows which Plaintiffs do *not* allege were infringed – which are not called for by Request No. 5 – and to all "documents regarding Plaintiffs' investigation of allegedly infringing material on Hotfile." Mot. at 5 n.3.[10] This portion of Defendants' motion should be denied for the reasons discussed below. In effect, Defendants are seeking to obtain the same kind of investigatory materials, on the same grounds, addressed in Part I *supra* and in Plaintiffs' Motion for a Protective Order. As such, Defendants' motion as to Request No. 5 should be denied for the same reasons.

### A. Plaintiffs Should Not Be Compelled to Produce, Pursuant to Request No. 5, Irrelevant Documents Beyond that Request's Scope.

Request No. 5 is short and clear: "All DOCUMENTS that REFER or RELATE to any file that YOU allege was or is present on hotfile.com that YOU allege infringes or infringed YOUR copyrights." The important thing to note about that request is what it does *not* ask for – i.e., it does *not* ask for documents relating to files that Plaintiffs do *not* allege infringe their copyrights. Plaintiffs are *already* producing copies of the files they allege as infringing in this action. *See also infra* Part III. Indeed, Plaintiffs are already going well beyond what this Request requires. In addition to copies of the files upon which Plaintiffs are suing, Plaintiffs are also already producing, in response to this request, a substantial amount of documents and data about files upon which Plaintiffs are *not* suing. This includes all of Plaintiffs' takedown notices to Hotfile (irrespective of whether Plaintiffs are alleging infringement of the file identified

---

Plaintiffs will supplement their identification of files they allege are infringing once they receive the requisite discovery from Defendants.

[10] Courts consistently "den[y] motions to compel the production of documents where the movant failed to make a formal discovery request." *James v. Wash Depot Holdings, Inc.*, 240 F.R.D. 693, 696 (S.D. Fla. 2006); *see e.g., Jones v. Martinez*, No. 1:04-cv-6318 OWW DLB P, 2008 WL 5246154, at *2 (E.D. Cal. Dec. 15, 2008) (denying motion to compel because review of "discovery documents indicates that plaintiff never requested" the discovery at issue); *Calderon v. Reederei Claus-Peter Offen GMBH & Co.*, No, 07-61022-CIV, 2009 WL 3242008, at *2 (S.D. Fla. Oct. 5, 2009) (court cannot compel documents that have never been formally requested); *Van Kampen High Yield Mun. Fund v. O'Donnell & Naccarato*, No. CIV.A. 02-1210, 2003 WL 751005, at *2 (E.D. Pa. Mar. 4, 2003) (where discovery request sought financial records relating only to a certain individual, court cannot compel production of financial records relating to all defendants because the "Court cannot compel Defendants to produce documents the Plaintiffs have not sought").

therein), and Plaintiffs' records reflecting those takedown notices.[11]  These are the only materials in this category arguably relevant to any claim or defense in this action.

However, contrary to the express language of Request No. 5, Defendants now ask the Court to compel the production of "all documents … for which takedown notices were sent or were *not* sent."  Mot. at 5 n.3 (emphasis added).  Documents relating to files for which notices were *not* sent – i.e., documents pertaining to files not alleged herein to be infringing – are beyond the scope of Request No. 5, and are also irrelevant.  Because parties cannot re-write discovery requests during motions to compel, and because parties are not entitled to fish among documents irrelevant to claims or defenses in a case, Defendants' motion to compel production, pursuant to Request No. 5, of documents relating to files not alleged by Plaintiffs to be infringing in this action should be denied.

## B.  The Additional Documents Sought by Defendants Are Not Responsive and/or Are Irrelevant.

Beyond what Plaintiffs have agreed to produce, Defendants' motion seeks "all documents … for which takedown notices were sent or not sent," including all related communications, and, even more generally, "documents regarding Plaintiffs' investigation of allegedly infringing material on Hotfile."  *See* Mot. at 5 n.3.  These are the identical antipiracy materials addressed in Part I.B above and in the briefing on Plaintiffs' Motion for a Protective Order (Dkt. #105-1, 118).  Defendants' theories of relevance are identical to those Defendants argued in opposition to Plaintiffs' Motion for a Protective Order – and none can withstand scrutiny.  For instance, the notion that Plaintiffs have to prove, or have put in issue, "how onerous or impossible it would be for them to simply 'keep up' with sending takedown notices," Mot. at 5, is based on a mischaracterization of the allegations in the Complaint and a fundamental misreading of the DMCA.  *See supra* pp. 4-6; Pls.' Mem. in Support of Mot. for Protective Order (Dkt. #105-1) at 10-11; Pls.' Reply in Support of Mot. for Protective Order (Dkt. #118) at 2-5.  And, the suggestion that Defendants need to go on a fishing expedition through Plaintiffs' antipiracy strategies just to know whether files have been uploaded to Hotfile "voluntarily or with authorization" is fanciful.  Plaintiffs already have offered to provide Defendants with relevant information about voluntary or authorized uses of Hotfile, to the extent there are any.  *See* Pls.'

---

[11] As Plaintiffs are producing such records, Hotfile's motion is moot insofar as it suggests that "database records and spreadsheets regarding takedown notices sent to Hotfile by Plaintiffs" are in issue.  Mot. at 4 n.3.

Reply in Support of Mot. for Protective Order (Dkt. #118) at 4 & n.7.  The highly intrusive discovery Defendants are seeking is neither relevant nor necessary.  Again, because Plaintiffs address each of these arguments in detail in their briefing in support of their Motion for a Protective Order, *see* Dkt. #105-1 & 118, as well as *supra* Part I.B., rather than repeat that entire discussion, Plaintiffs respectfully refer the Court to that briefing and incorporate it herein.

### C. Defendants' Indiscriminate Challenge to Plaintiffs' Assertions of Attorney-Client Privilege and Work Product Protection is Premature and Without Merit.

1.  <u>In the Absence of Privilege Logs, It would be Premature to Address Privilege Issues.</u>

Plaintiffs' objections to several of Defendants' requests note that Defendants' requests "call[], in very substantial part, for documents . . . prepar[ed] for this litigation" or "created by or at the direction of counsel for purposes of this litigation."  *See, e.g.*, Pls.' Objections to RFP No. 5.  That is in fact true.  However, Defendants' attempt to challenge this objection is premature. By agreement, the parties have not yet even exchanged privilege logs identifying specific categories of documents being withheld on privilege or work product grounds.  Thus, the privilege claims at issue in Defendants' motion are wholly undefined.

This concern is not just academic.  Defendants' requests are sufficiently broad and undefined so as to sweep in any number of obviously privileged materials, including, for example, outside litigation counsel's legal analyses, litigation counsel's communications with technical consultants retained to help prepare this litigation, and in-house counsel's legal advice to executives about ongoing infringement.  In their motion to compel, Defendants do not attempt to differentiate their argument based on the factual circumstances of each category of documents withheld – which is precisely the information that would be provided on the privilege logs proposed by Plaintiffs.  Defendants thus seek to challenge all forms of privilege related to Plaintiffs' antipiracy operations, in all circumstances, collectively and indiscriminately.  That is improper.[12]

---

[12] The parties have fully briefed and submitted to the Court a motion regarding the procedure that should be used in this case to "describe the nature of the documents, communications, or tangible things not produced or disclosed" under Rule 26(b)(5)(A)(ii).  *See* Dkt. # 91, 102, 107.  In response to Plaintiffs' request that privilege logging by discrete category be permitted, Defendants argued that they could not set forth their positions regarding privilege and work product protection in the absence of a document-by-document log of every document withheld by Plaintiffs.  *See* Defs.' Mem. of Law in Opp'n to Pls.' Mot. to Authorize Categorical Privilege Logs (Dkt. #102) at 5-8.  It is ironic therefore that here Defendants to seek to challenge *all*

The parties in this case mutually agreed that they would exchange privilege logs containing the information required by Rule 26(b)(5)(A) *after* the Court decides Plaintiffs' privilege log motion.  *See* Updated Joint Scheduling Conference Report (Dkt. #101) at 15.  At that time, the parties will meet-and-confer about discrete categories of privilege in the context of specific facts supporting the privilege claim as to each category.  If the parties are unable to eliminate or narrow their disputes, Defendants can bring their challenges then.[13]  But, at least then the Court will be able to consider the issues in the context of specific and discrete categories of privilege, and with a reasonable factual record to evaluate the claims.  Respectfully, Defendants cannot run to court complaining that "Plaintiffs bear the burden of proving every element required to establish these privileges and must log their claims individually for each relevant document, which they have not done," Mot. at 7, when the parties mutually agreed that privilege logs are not yet even due.  *See* Joint Report (Dkt. #101) at 15.

2.  <u>Defendants' Requests Present Serious Privilege Issues.</u>

While evaluating the *merits* of any privilege claims would be premature, Defendants' discovery requests present a real intrusion into Plaintiffs' privileged communications and work product.

In addition to the privileged materials listed above, Defendants' briefing addresses the individual legal investigations each Plaintiff conducts of online infringement, including their issuance of takedown notices.  But even within this topic, there are a wide range of documents potentially responsive to Defendants' request that raise privilege issues that Defendants gloss over.  Plaintiffs' in-house counsel explained in sworn declarations recently submitted in this case that their investigations of online copyright infringement involving the issuance of infringement notifications are all performed at the direction of counsel, to inform and enable Plaintiffs' counsel to render legal advice regarding each company's responses to online piracy, including identifying litigation targets, targets for referral to criminal authorities, and development of legal claims.  *See* Decls. in Support of Pls.' Mot. for Protective Order, Dkt. #106-10 ¶¶ 2-4; Dkt. #106-11 ¶¶ 2-5, Dkt. #106-12 ¶¶ 2-7, Dkt. #106-13 ¶¶ 2-3; Dkt. #106-14 ¶¶ 2-5.  Defendants'

---

categories of privilege assertion indiscriminately, without any definition of the numerous distinct categories and circumstances swept up in their motion.

[13] Because the parties have not yet exchanged privilege logs, or met and conferred regarding the specific materials withheld, Defendants' motion further fails to comply with Local Rule 7.1(a)(3) (meet and confer obligation prior to motion practice).

assertion that "Plaintiffs …do not make a plausible claim that the takedown notices and related documents were prepared at the behest of attorneys or for the purpose of procuring legal advice," Mot. at 7, blithely ignores *all* of this testimony.  For instance, Defendants' topic would easily include any analysis and advice from in-house counsel regarding which files to issue takedown notices on, as well as reports assembled at the direction of counsel to enable counsel to make decisions regarding which enforcement actions Plaintiffs should take.

In addition, as Plaintiffs have previously explained in support of their motion to log privileged documents by category, Plaintiffs' online antipiracy investigations are legal enforcement activities that contemplate possible litigation not only against websites such as Hotfile that host infringing content, but also against direct infringers and against link sites, such as Defendants' paid "Affiliates," that post and organize links to that material.  *See*  Pls.' Mot. to Authorize use of Categorical Privilege Logs (Dkt. #91) at 5.  And takedown notices are inherently allegations of infringement, akin to cease-and-desist letters, that demand action and place a service provider on notice of infringement in furtherance of potential claims.  They are therefore not routine business activities even if takedown notices were sent well in advance of this particular litigation.  In any event, the proper time to evaluate any privilege claims is after they have been asserted through the parties' privilege logs and the full facts are before the Court.

## III.    PLAINTIFFS NEED NOT PROVIDE ANY FURTHER RESPONSE TO INTERROGATORY NO. 1 UNTIL DEFENDANTS HAVE PRODUCED RELEVANT DISCOVERY.

Defendants' Interrogatory No. 1 asks Plaintiffs to identify each file available through Hotfile that Plaintiffs "allege infringes [their] copyrights."  Plaintiffs provided the requested information, reserving their right to allege additional infringements once they receive requested and essential data from Defendants.  In their motion, Defendants do not complain about Plaintiffs' response to that interrogatory; rather, Defendants complain that Plaintiffs have not answered a question that Defendants did not ask.  Specifically, Defendants try to contort Interrogatory No. 1 into a demand that Plaintiffs identify all files available through Hotfile that they *do not* allege to be infringing in this action – the exact *opposite* of the question Defendants asked.  That interrogatory, which Defendants did not ask but on which they are moving to compel, seeks information that is irrelevant to any claim or defense in this action.  Moreover, researching the required information and preparing a response would be unduly burdensome, far out of proportion to any conceivable (and, in fact, nonexistent) relevance.

## A.  Plaintiffs Have Fully Responded to the Interrogatory Defendants Asked.

In moving to compel a response to Interrogatory No. 1, Defendants make the absurd claim that "Plaintiffs refuse to identify the works at issue in this case." Mot. at 9.  That statement is false, unfair and misleading.  The truth is the exact opposite: Plaintiffs have fully responded to Interrogatory No. 1 by identifying the files that they currently "allege" as infringing in this action, i.e. the "infringements for which they will seek damages." Mot. at 9.

Plaintiffs have every expectation that, when Defendants respond to Plaintiffs' proper requests for discovery in this case, the Plaintiffs will become aware of  thousands of more infringements for which they will seek damages.  *See* Pls.' Mot. to Compel (Dkt. #72) at 7-9.  When Plaintiffs receive that data and identify additional infringing files, they will supplement their response to Interrogatory No. 1.  Defendants expressly acknowledge Plaintiffs' right to supplement their initial list.  *See* Mot. at 10 ("federal pleading standards do not require Plaintiffs to set forth in their complaint a complete and final list of all the alleged infringements upon which they will ultimately seek recovery"; "Plaintiffs are not required to lock themselves into suing on a limited set of allegedly infringing works at the pleading stage"); *see also, e.g.,* Opp'n to Mot. for Special Scheduling Order (Dkt. #76) at 14-15 (listing cases in which additional infringed works were identified later in litigation).  Because Plaintiffs have fully responded to Interrogatory No. 1 to the extent they are able to do so based on information currently in Plaintiffs' possession, Defendants' motion should be denied.

## B.  Defendants Improperly Seek to Compel an Answer to a Question Not Asked – And Which Is Irrelevant and Unduly Burdensome.

As discussed, Defendants' motion improperly seeks to compel an answer to a question that Interrogatory No. 1 does not ask – specifically, Defendants seek to compel Plaintiffs to provide information about every file they have found to be available on Hotfile but are *not* claiming as an infringement in this action – that is, those files for which Plaintiffs are not "seek[ing] damages." Mot. at 10.  As a threshold matter, Defendants' motion should be denied because Defendants are not permitted to compel an answer to a question they did not ask.

The information Defendants seek is also irrelevant.  For each such file *not* at issue in this case, Defendants demand to know the "United States copyright registration number" of the underlying work, the "URLs at hotfile.com where [Plaintiffs] allege that the file was available," and "the time period when [Plaintiffs] allege the file was present on Hotfile.com."  Defs.' Interrog. No. 1.  Defendants do not even attempt to articulate how such information could be

relevant for files on which Plaintiffs are *not* suing.  While Defendants claim that they need "discovery regarding the scope of the allegations against [them] and possible defenses," (Mot. at 10), the information they now seek pertains to infringements for which they are *not* being sued, and for which no damages are being alleged.  By definition, that information has no relevance to the scope of the infringement allegations against Defendants.

Defendants also assert in passing that it is relevant to their DMCA defense whether Plaintiffs "are or were aware of alleged infringement on Hotfile that they intentionally refrained from including in takedown notices."  Mot. at 11.  However, as explained *supra*, Plaintiffs are under no obligation to send takedown notices at all and Defendants' eligibility for DMCA safe harbor turns exclusively on Defendants' conduct; a copyright owner's decision not to send a notice is legally irrelevant.  *See supra* p. 4.[14]  And, other than as discussed above, Defendants do not explain at all why they need this information for files for which Plaintiffs *did* send takedown notices.

The irrelevance of Defendants' demands is no small matter, as responding to their request would be exceedingly burdensome.  Plaintiffs would have to review the vast sea of takedown notices sent to Hotfile and conduct an analysis to identify for each the copyright registration, URL and time period during which each such file was available.  Since Plaintiffs appear to have sent over one million such notices in the last two plus years, reviewing them to provide this information would obviously be a Herculean task and, since it pertains to files on which Plaintiffs are *not* alleging infringement, it would also be an absurd and unjustifiable task.[15]

_____

[14] Defendants' suggestion that they need this information to "refute the credibility of any proposed 'statistical analysis,'" Mot. at 11, is truly a red herring.  As Plaintiffs have repeatedly advised Defendants, to the extent Plaintiffs rely on any statistical analyses, Plaintiffs will produce the analyses and all underlying data, so that Defendants will have everything they need to challenge the analyses.  Defendants cannot and do not begin to explain how files for which Plaintiffs are not alleging infringement could have any bearing on Plaintiffs' statistical analyses.

[15] Defendants' further request that Plaintiffs identify infringements that Plaintiffs' litigation counsel might have identified as part of their pre-Complaint investigation but decided not to include in the Complaint clearly seeks counsel's work product.  *See* Fed. R. Civ. P. 26(b)(3)(B) (court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney . . . concerning the litigation").  Defendants' argument that Plaintiffs have "waived" such protection through their filing of the complaint is both factually and legally wrong, as addressed in note 4 *supra*.  In the end, however, because Interrogatory No. 1 by its terms does not actually call for this information, and because it is irrelevant in any event, there is no need for the Court to reach Defendants' work product arguments.

IV.    **DEFENDANTS' NEBULOUS REQUEST FOR DOCUMENTS ABOUT "FAIR USE" ON THE INTERNET GENERALLY SHOULD BE DENIED.**

Defendants' Request No. 21 seeks "All DOCUMENTS that REFER or RELATE to audio or video works on the Internet that are not copyrighted or that may be downloaded as fair use." This request is virtually incomprehensible in its vagueness.  So it is not surprising that, in their motion, Defendants treat the request as calling for different things, depending on the argument Defendants happen to be making.  For example, at the top of page 16 of their Motion, Defendants treat the request as calling for  "evidence regarding the existence of fair use materials on Hotfile."  Mot. at 16.  Further down the page, Defendants treat the request as calling for "documents showing the efforts Plaintiffs undertake to distinguish between infringing work and fair use." Mot. at 16.

In addition to being absurdly vague, the request suffers from other fatal infirmities.  First, the request, at its core, asks for an improper legal opinion – what Plaintiffs think about the legal application of a particular statute.  By definition, most responsive documents would be legally privileged and also irrelevant, as Plaintiffs' counsel's opinions on fair use are not evidence.

Second, the request is divorced from the reality of Defendants' service.  Hotfile is very different from the YouTube and Veoh websites involved in the cases upon which Defendants rely.  Those websites were destinations where people watched short video clips, often taken from larger audiovisual works, or with sound recordings (or portions thereof) as background for home video content.  Any "gray area" in distinguishing fair uses from infringements in those very different contexts has no bearing on – and is irrelevant to – the type of infringement alleged here, which is the distribution of *full-length* movies and television programming.  There is no credible claim that the widespread distribution of full-length content could be fair use.  *See, e.g., BMG Music v. Gonzalez,* 430 F.3d 888, 889-91 (7th Cir. 2005); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014-19 (9th Cir. 2001).

Third, the request is also broad and unduly burdensome.  As propounded, Request No. 21 seeks "all documents that refer or relate to audio or video works *on the Internet* that … may be downloaded as fair use" (emphasis added).  Information about what sort of materials are generally available on "the Internet," for download is just as available to Defendants as it is to Plaintiffs, and given the extremely broad nature of the inquiry, Plaintiffs should not be compelled to embark on the length and difficult search that would be required in order to identify potentially responsive documents.  Indeed, given the breadth of the topic it would be

15

unreasonably difficult, if not impossible, to conduct such a search in any kind of meaningful fashion.  Defendants cannot, simply by propounding a request for information it deems relevant and useful, transform the Plaintiffs into Defendants' research staff.  *See generally Corbello v. Devito*, No. 2:08-cv-00867-RCJ-PAL, 2010 WL 4703519, at *7 (D. Nev. Nov. 12, 2010) (denying motion to compel discovery regarding fair use defense used by defendants in another proceeding involving other copyrights because "burden or expense of producing this proposed discovery outweighs its likely benefit"), *on recons. in part*¸ 2011 WL 1466605 (D. Nev. Apr. 15, 2011); *Dushkin Publ'g Group, Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334 (D.D.C. 1991) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties." (internal quotations and citation omitted)); *Lamon v. Adams*, No. 1:09-cv-00205-LJO-SKO PC, 2011 WL 711580, at *3 (E.D. Cal. Feb. 1, 2011) (denying plaintiff's motion to compel because requests are unduly burdensome to the extent they seek documents that are equally available to the plaintiff).

Apparently recognizing these problems with Request No. 21, Defendants argue in their motion for a category of "fair use" documents that is substantially narrower than called for by Request No. 21 as written.  In their motion, Defendants argue for "information regarding fair use materials [Plaintiffs] have found *on Hotfile*."  Mot. at 16 (emphasis added); *see also id.* (referencing "evidence regarding the existence of fair use materials on Hotfile"); *id.* at 15 ("documents regarding fair use on Hotfile").[16]  Arguments for a broader category of fair use documents are therefore waived.  *Pincus*, NO. 08-81357-CIV, 2010 WL 286790, at *2 n.1 (S.D. Fla. Jan. 19, 2010) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived"); *Socas v. Northwestern Mut. Life Ins. Co.*, No. 07-20336-CIV, 2008 WL 276069, at *2 (S.D. Fla. Jan. 31, 2008) (same).[17]

---

[16] *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1153 (N.D. Cal. 2008), relied on by Defendants, Mot. at 16, likewise involved files on the defendant's website specifically, not on the Internet generally.

[17] Likewise, Defendants articulate no argument for the relevance of "audio or video works on the Internet that are not copyrighted" and therefore have waived any challenge to Plaintiffs' objections as to this portion of Request No. 21.

In all candor, Plaintiffs do not believe that they have ever identified a file on Hotfile that might remotely qualify as fair use.[18]  But even investigating this would require the unduly burdensome task of going through records of every file Plaintiffs have ever identified on Hotfile, in any context, and making a legal classification as to each.  This is an undue burden given that Defendants have full access to any files on Hotfile, and, if they want to argue that there are any files legitimately subject to a fair use defense, they are perfectly capable of bringing them to the Court's attention themselves without requiring Plaintiffs to do this work for them.  Given that there is no relevance to these materials in the first place, particularly as to files for which Plaintiffs are not alleging infringement in this action, there is no good reason to impose this burden.

## V.   PLAINTIFFS' GENERAL "USE OF THE INTERNET TO MARKET WORKS" IS IRRELEVANT.

Defendants' demand, in Request No. 18, that Plaintiffs hand over "all documents" relating to Plaintiffs' "use of the Internet to market works" is both overbroad and misleadingly presented.  *See* Mot. at 17-18.  Defendants omit from their motion that Plaintiffs have already agreed to produce documents sufficient to show (1) any voluntary posting by any Plaintiff of any full-length content on Hotfile, as well as (2) any distribution by any Plaintiff of full-length content anywhere on the Internet, authorized for further distribution and without technological barriers to such further distribution, that is a work in suit or potential work in suit.  *See* Mot., Ex. C at 12.  Thus, Plaintiffs have offered to provide information as to any instance in which Plaintiffs' works might even arguably be downloaded from Hotfile without violating copyright laws.  The remainder of Defendants' request – for Plaintiffs' general "marketing" as well as "voluntary posting or promotional content" anywhere on "the Internet" – is plainly overbroad and irrelevant.  Indeed, Defendants do not even brief these issues.

Defendants instead brief what is *not* in dispute – whether Plaintiffs will produce documents, if any exist, concerning Plaintiffs' uploading or authorizing the uploading of full-length content *to Hotfile*.  Mot. at 17-18.  The sole case Defendants cite, *UMG Recordings, Inc.*

---

[18] In an apparent effort to suggest that some of the infringing files identified thus far by Plaintiffs were never distributed, Defendants – without citation to evidence – claim that some of those files were "never at all" downloaded from Hotfile.  *See* Mot. at 16 & n.6.  However, Plaintiffs downloaded copies of each of those exact files from Hotfile as evidence in this case and are producing the actual content files to Defendants – raising obvious questions about the accuracy of any data on which Defendants may be relying for this assertion.

*v. Veoh Networks, Inc.*, 665 F. Supp. 2d 1099, 1110 n.13 (N.D. Cal. 2009), involved an upload of a full-length work to the defendant's website, not the Internet generally.  Defendants proffer no reason why any more than what Plaintiffs have offered to produce is conceivably relevant. Plaintiffs engage in all kinds of online marketing activities that have nothing to do with Hotfile, this case, or even with "posting" of files online.  Defendants make no argument at all for why Plaintiffs should be put through the burden of assembling and reviewing all these materials. Indeed, other courts that have looked at the same issue have limited discovery to precisely the types of materials that Plaintiffs have already agreed to produce.  *See Columbia Pictures Indus., Inc. v. Bunnell*, CV 06-1093 FMC(JCx), Order at 2-3 (C.D. Cal. Feb. 13, 2007) (attached as Exhibit A) (granting motion to compel only as to "general or unrestricted distribution" and only as to specific works at issue in action).

## VI.   PLAINTIFFS' OPERATION OF THEIR OWN WEBSITES IS IRRELEVANT TO WHETHER DEFENDANTS REASONABLY IMPLEMENT A REPEAT INFRINGER POLICY.

Finally, the Court should reject Defendants' demand, in Request No. 33, for Plaintiffs' (and their affiliates') terms of service and internal policies for any websites they own or operate. Only Defendants' website is at issue in this case.  Plaintiffs' websites are not.  Defendants' argument for why they want this discovery does not begin to justify the discovery Defendants are seeking.

Under 17 U.S.C. § 512(i)(1)(A), Defendants are not eligible to invoke any DMCA safe harbor unless they have "adopted and reasonably implemented … a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers."  *Id*.  To state the obvious, this is an inquiry about the *service provider's* website, not any unrelated websites of the copyright owners whose works are being infringed.  Defendants argue that they need to know how Plaintiffs run their websites in order to prove that Hotfile's repeat infringer policy is "reasonably implemented."  Mot. at 18.  But that argument is unsustainable.  First, whether a service provider has "reasonably implemented" a repeat infringer policy is a question of law based on the service provider's conduct; it does not vary with the particular practices of any given copyright plaintiff. Indeed, even if a copyright owner's own policies were flawed, that would not aid Defendants' DMCA defense.

Second, *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1143-44 (N.D. Cal. 2008), the only authority cited by Defendants, Mot. at 18, does not support Defendants' argument at all.  In that case, unremarkably, the court looked to other *legal precedents* on the DMCA repeat infringer provision, as presumably this Court will do as well.  The court did not look to random websites, or the plaintiff's website, as a barometer of what the statutory requirement of "reasonably implemented" means.  Finally, Plaintiffs' websites are so fundamentally different from Hotfile as to defy rational comparison.  Plaintiffs themselves own the rights to almost all the content on their websites.  Although some of the Plaintiffs' websites may occasionally give users a very limited ability to upload content (*e.g.*, for a particular film or television show promotion), Defendants make no claim that any Plaintiff operates a website whose business, like Hotfile's, is centered around online reproduction and distribution of third-party content.  Plaintiffs' website policies are simply irrelevant.  Moreover, Plaintiffs represent, or are affiliated with, large multinational conglomerates with far-flung affiliates operating services and websites worldwide, such that any search of the kind contemplated by Defendants' request would be extremely burdensome.[19]

---

[19] *See, e.g.*, *Stella v. LVMH Perfumes and Cosmetics USA, Inc.*, No. 07-CV-6509, 2009 WL 780890, at *3 (N.D. Ill. Mar. 23, 2009) (denying motion to compel production of documents from defendant's foreign affiliate where plaintiffs did not "show a close coordination" between the defendant and corporate entity); *Kansas Heart Hosp., L.L.C. v. Executive Risk Indem., Inc.*, No. 06-1345-MLB, 2007 WL 1125772, at *3 (D. Kan. April 16, 2007) (denying motion to compel production of documents from affiliated companies because plaintiffs "have not shown the relevance or need for conducting such a worldwide search for documents"); *Robbins v. Provena Saint Joseph Med. Ctr.*, No. 03 C 1371, 2004 WL 502327, at *3 (N.D. Ill. Mar. 11, 2004) (denying request seeking information from defendant's "corporate entity" and all of defendant's health care facilities because these entities were not involved in any actions giving rise to plaintiff's claims).

## CONCLUSION

For the reasons stated, Plaintiffs respectfully request that the Court deny Defendants' Motion to Compel.

Dated: August 26, 2011                          Respectfully submitted,

                                                By: /s/ Karen L. Stetson

                                                Karen L. Stetson
                                                GRAY-ROBINSON, P.A.
                                                1221 Brickell Avenue
                                                16th Floor
                                                Miami, Fl 33131
                                                Telephone: (305) 461-6880
                                                Facsimile:  (305) 461-6887


MOTION PICTURE ASSOCIATION                      JENNER & BLOCK LLP
 OF AMERICA, INC.                               Steven B. Fabrizio (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)              Duane C. Pozza (*Pro Hac Vice*)
15301 Ventura Blvd.                             Luke C. Platzer (*Pro Hac Vice*)
Building E                                      1099 New York Ave., N.W.
Sherman Oaks, CA 91403                          Suite 900
Phone:  (818) 995-6600                          Washington, DC 20001
Fax:  (818) 285-4403                            Telephone: (202) 639-6000
                                                Facsimile:  (202) 639-6066

                                                *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th Day of August, 2011, I served the following

documents on all counsel of record on the attached service list via their email address(es) as set

forth on the Court's CM/ECF filing system:

**Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Compel Responses to Discovery from Plaintiffs**

By: /s/ Karen L. Stetson
Karen L. Stetson

**SERVICE LIST**

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**


FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*


BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*


RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*