UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN/O'SULLIVAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
_____/

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
TO COMPEL RESPONSES TO DISCOVERY FROM PLAINTIFFS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

LEGAL ARGUMENT ...................................................................................................................... 1

I.     PLAINTIFFS' INVESTIGATION OF HOTFILE REMAINS BOTH RELEVANT AND PROPERLY REQUESTED IN HOTFILE'S MOTION ..................... 1

    A.     Plaintiffs' Investigation Bears Upon Hotfile's Answer and Counterclaim ........... 1

    B.     Plaintiffs' Investigation Bears Upon Hotfile's Affirmative Defenses ................... 3

    C.     Hotfile Has Properly Specified The Materials Sought By This Motion ................ 4

II.     PLAINTIFFS SHOULD PRODUCE THEIR DOCUMENTS RELATED TO THE ALLEGEDLY-INFRINGING FILES HOSTED BY HOTFILE .............................. 5

III.     PLAINTIFFS SHOULD IDENTIFY ALL ALLEGEDLY-INFRINGING FILES ON HOTFILE PURSUANT TO INTERROGATORY NO. 1 .......................................... 6

    A.     Plaintiffs' Position Contradicts The Parties' Meet-And-Confer Discussions ........ 6

    B.     The Information Is Relevant To An Estoppel Defense and to Contradict Statistical Evidence ............................................................................................... 6

    C.     Plaintiffs' Work-Product Objection Is Unsupported .............................................. 7

IV.     PLAINTIFFS SHOULD PRODUCE "FAIR USE" MATERIALS .................................. 8

V.     PLAINTIFFS SHOULD PRODUCE DOCUMENTS REGARDING VOLUNTARY POSTING OF COPYRIGHTED MATERIALS ...................................... 9

VI.     PLAINTIFFS SHOULD PRODUCE THEIR WEBSITE POLICIES .............................. 9

CONCLUSION ............................................................................................................................... 10

**INTRODUCTION**

No matter how many times Plaintiffs demean Hotfile or its positions as "absurd," *see* Opp. at 6 n.6, 13, 14, 15 [Docket No. 131], discovery is a two-way street. The Court should compel Plaintiffs' to provide discovery as set forth below.

**LEGAL ARGUMENT**

I. **PLAINTIFFS' INVESTIGATION OF HOTFILE REMAINS BOTH RELEVANT AND PROPERLY REQUESTED IN HOTFILE'S MOTION**

   A. **Plaintiffs' Investigation Bears Upon Hotfile's Answer and Counterclaim**

Hotfile's Answer And Counterclaim, filed August 22, 2011 [Docket No. 121 ¶¶ 1-39], describes how Plaintiffs feigned cooperation with Hotfile while deliberately delaying filing suit and failing to mitigate the damages they now claim. One Plaintiff's conduct was so egregious as to give rise to a counterclaim. At the request of Plaintiff Warner Bros. Entertainment Inc. ("Warner"), Hotfile created "special rightsholder accounts" for Warner (and eventually each Plaintiff and/or their agents). *Id.*, Counterclaim at ¶ 17. This powerful tool allows immediate removal of files from Hotfile, provided that holder attest that they are the owner or authorized legal representative of the owner of the copyrighted material subject to removal. While some Plaintiffs appear to have refrained from using this special tool in order to maximize the damages alleged in this action, Warner abused this special power and caused thousands of files to be wrongfully deleted from Hotfile.com even though they did not contain Warner's copyrighted material–an apparent violation of the Digital Millennium Copyright Act. S*ee* 17 U.S.C. § 512(f) (forbidding knowing misrepresentations in copyright takedown requests). *Id.*, at ¶¶ 34-39.

Immediately before and after it filed the Complaint in this action on February 8, 2011, Warner was deleting files in such volume – sometimes tens of thousands of files in a single day – that it could not possibly view (or otherwise have verified) the content of the files it was deleting. For example, Warner deleted hundreds of computer games on February 7th and 8th and a large number of files with adults-only titles on February 14th alone. *Id.*, at ¶ 21. Warner evidently employed website "crawler" computer programs that automatically deleted thousands of files having no relation to Warner content. For example, evidently because Warner released a movie in 2009 entitled "The Box," Warner deleted at least 3,481 files with the common words "the box" appearing together in any title of any file – even if the Hotfile title plainly indicated that the work was in fact not the movie. *Id.*, at ¶ 24. This is why dozens of copies of Ty Bollinger's popular cancer treatment book, "Cancer: Step Outside *The Box*," were wrongfully deleted from

1

Hotfile.com by Warner. At the same time, Warner's agents were offering unsolicited endorsements of Hotfile. *E.g.*, . *Id*., at ¶ 31 ("we will inform our clients of hotfile.com's commitment to copyright compliance at the first opportunity").

Hotfile justifiably believed that Warner would act with good faith, fairness and honesty with respect to its use of the SRA tool and associated representations about copyright infringement made to Hotfile. The Answer and Counterclaim allege in detail facts suggesting that Warner breached Hotfile's trust, thereby damaging Hotfile and its users.

Having employed "investigative" techniques that resulted in rampant abuse of Hotfile's special rightsholder accounts, Plaintiffs cannot credibly dispute the relevance of documents evidencing their investigation of Hotfile. Indeed, Warner concedes the potential relevance of documents regarding its "basis for sending any specific notices that Defendants allege are improper" – documents which Warner has yet to produce – while attempting to withhold any documents that do not explicitly relate to a specific file identified by Hotfile as wrongly deleted. Opp. at 7. However, Hotfile cannot be expected to understand "the basis" for Warner's deletion, for example, of the file associated with the URL, http://hotfile.com/dl/39880645/2832803/Cancer_-_Step_Outside_the_Box_.part1.rar.html, without understanding how or why Warner elected to make this deletion. If, as we suspect, the "basis" for this deletion and hundreds of others is that the Hotfile link/file title contained common words used in the titles of Warner works (such as "The Box" or "The Closer" or "The Middle"), Warner was massively over-inclusive and reckless it is use of the special account. Plaintiffs cannot justifiably withhold such documents on grounds that they did not reference any specific URL or individual file name on Hotfile's website.[1]

Plaintiffs also contend that the dispute about counterclaim discovery "is not yet ripe" because the parties have not "fully" met-and-conferred. Opp. at 7. In fact, the parties have conferred on multiple occasions about the impact of Hotfile's counterclaims on discovery regarding Plaintiffs' investigation of Hotfile, including during an hour-long discussion on August 22, 2011. In any event, Plaintiffs have categorically stated that they will not produce all of their documents regarding their investigation of Hotfile, and will produce "at most" documents

---

[1] On September 8, 2011, Plaintiffs served ten document demands and five interrogatories on Hotfile regarding Hotfile's counterclaims. Despite Plaintiffs' efforts, discovery is a two-way street. Plaintiffs cannot subject Hotfile to exhaustive discovery into the counterclaims while refusing to provide discovery themselves.

2

relating to "Warner's use of Hotfile's takedown tool and Warner's basis for sending any specific notices that Defendants allege are improper." Opp. at 7. Hotfile disagrees with Plaintiffs' attempts to constrict discovery to specific wrongful deletions as opposed to the broader policies, practices, and deliberations underlying them. Because Plaintiffs have conclusively identified the line which they will not cross, and because Plaintiffs have not offered any moderation of that position in the ensuing two weeks, Plaintiffs cannot credibly deny the existence of a crystallized dispute for adjudication. Given the Court's recent Scheduling Order setting the close of discovery for December 23, 2011 – less than four months away – Plaintiffs should not be permitted to further delay in their efforts to obstruct Hotfile's discovery.

Plaintiffs also cannot claim protection under this Court's prior order denying discovery regarding Plaintiffs' investigations, as that Order resulted from briefing *before* Hotfile filed its Counterclaim. *See* Order On Motion For Protective Order [Docket No. 138]. At the time, the Court noted that "this case concerns Hotfile's and Mr. Titov's actions, not the movie studios' behavior." *Id.* at 1. That is no longer the case; the Plaintiffs' wrongful conduct is at issue and Plaintiffs' relevant documents should be produced.

### B.     Plaintiffs' Investigation Bears Upon Hotfile's Affirmative Defenses

For the same reason that this Court's order denying discovery regarding Plaintiffs' investigation of Hotfile did not address Hotfile's Counterclaim, the order did not discuss Hotfile's affirmative defenses: the briefing on the prior motion occurred *before* the filing of Hotfile's Answer.[2] Subsequently, Hotfile detailed its affirmative defenses, such as implied license and unclean hands, based on the following facts: (i) Plaintiffs admitted to investigating Hotfile for "well over a year" (Complaint ¶ 37); (ii) Plaintiffs discovered alleged "massive" copyright infringement on Hotfile (*id.* ¶¶ 1, 29, 37); (iii) rather than promptly filing suit, Plaintiffs delayed seeking any remedy (Answer ¶¶ 73-79); (iv) during this time, Plaintiffs "left up" links which they now contend infringe, refusing to use their special rightsholder accounts to remedy any problem (*id.*); (v) simultaneously, Plaintiffs complimented Hotfile's content protection efforts and indeed offered for Hotfile to become a business affiliate (*id.*); (v) Plaintiffs' actions (and inaction) perpetuated the very infringement of which they now

---

[2] Potentially because Hotfile identified its affirmative defenses of estoppel, laches, and mitigation of damages as merely "potential" defenses, *see* Opp. Mtn. Prot. Order at 11 [Docket No. 116], the Court never discussed those defenses in denying discovery of Plaintiffs' investigation of Hotfile. *See* Order On Motion For Protective Order [Docket No. 138].

3

complain, and induced Hotfile to maintain the content protection policies Plaintiffs now impugn (*id.*). Thus, even though the Court previously viewed documentation of Plaintiffs' behavior as irrelevant to this case, Hotfile's Answer has brought Plaintiffs' actions squarely into issue. Plaintiffs' offer to "at most" provide documents concerning "Warner's use of Hotfile's takedown tool and Warner's basis for sending any specific [takedown] notices" provides no information whatsoever regarding four of the five Plaintiffs. Even as to Warner, production of documents regarding its "use" of its special rightsholder account and "basis for sending any specific notices" omits evidence on central questions regarding Warner's ***non-use*** of the account and ***refusal*** to transmit notices: *i.e.*, under what circumstances did Warner decline to use the special rightsholder account to take down allegedly-infringing works during the year preceding suit? When did Warner (or any other Plaintiff) first determine that the currently at-issue files allegedly violated copyright law? In short, why did Plaintiffs sit on their rights? None of this information exists within Hotfile's possession. Plaintiffs' efforts to deny this discovery is tantamount to foreclosing these defenses in the absence of any refutation or even consideration. Indeed, Plaintiffs do not even address these arguments, despite Hotfile's assertion of the relevance of the requested documents to its affirmative defenses in its opening brief. Mot. at 3. Again, Plaintiffs' documents regarding their investigation of Hotfile should be produced.

      **C.**      **Hotfile Has Properly Specified The Materials Sought By This Motion**

Plaintiffs lead argument against production of their investigative materials – again, their ***lead*** argument – is that "Defendants fail to properly specify which documents they are moving on." Opp. at 2. Plaintiffs then list verbatim the six requests upon which Hotfile seeks relief, which are also identified in both the opening lines of Hotfile's motion, the body of the motion, and the conclusion. *Id.* at 2 n.2; *see* Mot. at 2, 4, 19. Plaintiffs' confusion appears overstated.

As evident on their face, all of these requests (Nos. 1, 5, 6, 12, 14, and 29) seek the documents relating to Plaintiffs' investigation of Hotfile. Mot., Ex. A. Plaintiffs object to these requests on the same ground. *See* Opp. at 2 ("Plaintiffs' objection is fundamentally a relevance objection").[3] Despite Plaintiffs' protestations that "Defendants fail to properly specify . . . why any particular materials are relevant," *id.* at 2, Hotfile has now explained the relevance of its

---

[3] *See* Local Rule 26.1(h)(2) (permitting collective treatment regarding "assertion of general or blanket objections to discovery" without verbatim repetition).

4

requests twice. Mot. at 1-4; *supra* Part I.A.[4]  In short, Plaintiffs' foremost argument for denying discovery in their Opposition represents an attempt to obtain the final victory of form over substance, and should be denied.

II. **PLAINTIFFS SHOULD PRODUCE THEIR DOCUMENTS RELATED TO THE ALLEGEDLY-INFRINGING FILES HOSTED BY HOTFILE**

Plaintiffs argue that the parties' meet-and-confer discussions resulted in a narrowing of Request No. 5 in a fashion that came to encompass documents not within the ambit of the original request. Opp. at 8-9.  Specifically, Plaintiffs argue that documents referring to any allegedly-infringing file excludes files upon which Plaintiffs have not yet sued.  While Hotfile disagrees with Plaintiffs' parsing of "allege" to mean "explicitly sue upon" as opposed to "determine to infringe," the debate is academic.  Request No. 14 seeks all non-privileged documents "relating to investigations of hotfile.com" – thus encompassing documents relating to any file determined to infringe whether or not Plaintiffs ultimately included the file in the cherry-picked list of files identified in its Complaint.

Plaintiffs then broadly assert that the attorney-client privilege and work-product doctrine protect Plaintiffs from disclosing their measures taken to remove files from Hotfile.  However, documents regarding takedown notices prepared by Plaintiffs up to two years before litigation – during which time Plaintiffs praised Hotfile's copyright removal tools and responsiveness – in no way represents documentation created in "imminent" anticipation of litigation. Mot. at 7. Plaintiffs cannot defeat discovery of their takedown notice documents in wholesale fashion by simply declaring that anti-piracy vendors are retained and supervised by counsel, thus making their daily work over two years properly characterized as constant preparation for incipient litigation as opposed to documents generated "in the ordinary course of business" and thus discoverable. *Id.*  In any event, Plaintiffs have placed their counter-piracy efforts at issue by promising to proffer evidence of the statistical degree to which Hotfile supposedly infringes copyrights.  Plaintiffs' Mot. Compel at 6 [Docket No. 72].  If Plaintiffs intend to adduce testimony that the overwhelming majority of Hotfile files infringe, Hotfile is entitled to understand Plaintiffs' efforts to identify infringement.  Likewise, Plaintiffs cannot conceal ***facts***

---

[4] Even Plaintiffs' own practices belie their argument, given their repeated requests to compel responses in wholesale fashion.  *E.g.*, Hotfile's Opp. Mot. Compel at 9-10 [Docket No. 81] (noting Plaintiffs' attempts to compel responses to document requests it had nowhere addressed in its papers).

5

(such as when they became aware of infringements) simply by stating that all anti-piracy efforts occurred at the direction of counsel. Plaintiffs' documents responsive to Request No. 5 as narrowed should be produced.

### III.     PLAINTIFFS SHOULD IDENTIFY ALL ALLEGEDLY-INFRINGING FILES ON HOTFILE PURSUANT TO INTERROGATORY NO. 1

#### A.     Plaintiffs' Position Contradicts The Parties' Meet-And-Confer Discussions

In the meet-and-confer process, Plaintiffs and Hotfile agreed about what Interrogatory No. 1 seeks: an identification of all files of which Plaintiffs are currently aware that allegedly infringe their copyrights. *See* Mot., Ex. C at 2 ("Moreover, we [Plaintiffs] do not believe that the interrogatory is relevant insofar as it extends beyond infringements Plaintiffs are alleging to infringements of which Plaintiffs may be 'aware' but are not suing upon.") Plaintiffs now claim that Hotfile's interrogatory only requires Plaintiffs to identify those works that they have formally put at issue in this lawsuit. Plaintiffs' sudden about-face is an improper attempt to subvert legitimate discovery by deliberately misreading the interrogatory, which is not limited to the specific files that Plaintiffs cherry-picked for their lawsuit.

#### B.     The Information Is Relevant To An Estoppel Defense and to Contradict Statistical Evidence

Evidence that Plaintiffs have intentionally refrained from sending DMCA takedown notices with respect to files that it knows infringe its copyrights would be relevant to Hotfile's estoppel defense. *See supra* Part I.B. Plaintiffs, however, argue that this material is irrelevant because "Plaintiffs are under no obligation to send takedown notices at all." Opp. at 14. While it is true that a copyright owner can choose not to enforce its rights, the "burden of policing infringement" is still on copyright holders, not the website. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007). To the extent that Plaintiffs chose to notify Hotfile of certain infringing files while intentionally refraining from notifying Hotfile of others, Plaintiffs may be estopped from seeking damages for those withheld files. *See Field v. Google, Inc.*, 412 F.Supp.2d 1106, 1116 (D.Nev. 2006) ("A plaintiff is estopped from asserting a copyright claim if he has…has committed covert acts such as holding out ... by silence or inaction.").

Information responsive to Interrogatory No. 1 is also needed to allow Defendants to test the credibility of any proposed "statistical evidence" of the degree of alleged infringement on Hotfile's website. If Plaintiffs knew of and acquiesced in the presence of infringing material on

Hotfile and later used that material as support for statistical "evidence" of alleged massive availability of infringing material on Hotfile, such evidence of acquiescence would undermine Plaintiffs' so-called statistical analysis and would be directly relevant to Hotfile's defense. Furthermore, Hotfile is entitled to perform its own statistical analysis, which would be informed by information Plaintiffs possess about material they own that they believe is infringed by files stored on the Hotfile website.[5] Accordingly, Hotfile is entitled to this discovery.[6]

### C. Plaintiffs' Work-Product Objection Is Unsupported

Plaintiffs assert, without support, that revealing which works they have chosen to include in the suit will necessarily reveal work product. But the case law makes clear that "not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product." *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1015 (1st Cir. 1988). The *Calderon v. Reederei Claus-Peter Offen Gmbh & Co.* case is on-point. *See* 2009 WL 1748089, at *2, 4 (S.D.Fla. June 19, 2009). There, the court overruled an objection to producing medical records "generated as a result of" and "relating to" the accident that was the subject of the lawsuit on the grounds that producing such records would reveal the attorney's mental impressions. The court held that the party asserting the privilege "must come forward with some evidence that disclosure of the requested documents creates a real, non-speculative danger of revealing counsel's thoughts." *Id.* at *3. Because the plaintiff failed to meet this burden, the court granted the defendant's motion to compel the production of the medical records. *Id.* at *4.

Plaintiffs have clearly not met their burden under *Calderon* to come forward with evidence that answering Interrogatory No. 1 would create "a real, non-speculative danger of revealing counsel's thoughts." Instead, Plaintiffs merely state in a footnote that the interrogatory "clearly seeks counsel's work product" and cite generically to the Federal Rule of Civil

---

[5] Plaintiffs are in a far better position than Hotfile to identify what material on Hotfile infringes its copyrights. Hotfile does not know what material is copyrighted by Plaintiffs or whether such material was authorized to be on Hotfile. More importantly, Hotfile does not monitor what files are stored on its servers. Plaintiffs, however, by their own admission, have been tracking what is available on Hotfile "for well over a year," *see* Compl. ¶ 37, and the case law is clear that the burden of policing infringements is on the copyright owner. *See CCBill LLC*, 488 F.3d at 1113.

[6] Plaintiffs claim that if they rely on statistical evidence, they will produce the analyses and all underlying data, "so that Defendants will have everything they need to challenge the analyses." Opp. at 14, n.14. However, the rules of discovery do not permit Plaintiffs to dictate which evidence is sufficient for Hotfile to challenge Plaintiffs' statistical evidence.

7

Procedure 26(b)(3)(B). The Court should reject this unsupported and conclusory argument.[7]

### IV.   PLAINTIFFS SHOULD PRODUCE "FAIR USE" MATERIALS

Plaintiffs arguments regarding Request No. 21 – which seeks materials regarding "fair use" – are without merit.[8] First, Plaintiffs argue that the request asks for an "improper legal opinion." Opp. at 15. As noted previously, such conclusory and blanket claims or work product are improper and should be rejected. Beyond that, work product and privilege objections are properly addressed through the use of a privilege log rather than a blanket refusal to respond.

Plaintiffs next argue that Hotfile's service is different from *YouTube* and *Veoh* in that it involves the alleged distribution of full-length movies and programs rather than short clips, thus, the "grey area" involved in distinguishing fair use from infringements does not exist with respect to Hotfile. Opp. at 15. This argument is specious. First, there is no question that a full length work can constitute a "fair use." Indeed, a classic type of fair use is a parody, which can obviously be a "full length" piece. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1271 (11th Cir. 2001). Moreover, as Plaintiffs well know, Hotfile serves as a host for all types of files, whether "full length" or not. Many of the accused "full length works" identified by the Plaintiffs were uploaded to the Hotfile website not in "full length" form but, rather, as a series of short clips. Thus, the distinction that Plaintiffs seek to draw based on the notion of "full length works" cannot withstand scrutiny.

---

[7] The Court should also reject Plaintiffs' argument that they should be excused from responding to this discovery because they are still waiting on certain discovery from Defendants. A party may not withhold legitimate discovery until it is satisfied with the other side's production. *See Acushnet Co. v. Birdie Golf Ball Co., Inc.*, 166 FRD 42, 43 (S.D. Fla. 1996) (rejecting "tit for tat" approach to litigation). Moreover, nothing that Plaintiffs requested is necessary for them to identify the allegedly infringing files on the Hotfile website *of which they are **presently** aware*.

[8] Hotfile seeks three types of documents regarding fair use: (a) documents concerning the existence of "fair use" materials on Hotfile (*e.g.*, communications reflecting that works were not taken down from Hotfile because they were deemed to be a fair use); (b) documents reflecting generally (*i.e.*, not limited to Hotfile) how Plaintiffs undertake to distinguish between infringing works and fair use materials; and (c) documents discussing generally issues related to the existence of fair use materials on the Internet. Plaintiffs' argument that Defendants waived their ability to move to compel fair use materials other than those found on Hotfile (*see* Opp. at 16) is without merit. Hotfile's motion discussed fair use materials on Hotfile *as well as* fair use materials more broadly. *See, e.g.,* Mot. at 16 ("Thus, documents showing the efforts Plaintiffs undertake to distinguish between infringing work and fair use materials bears upon Plaintiffs claims and Hotfile's affirmative defenses.").

8

## V. PLAINTIFFS SHOULD PRODUCE DOCUMENTS REGARDING VOLUNTARY POSTING OF COPYRIGHTED MATERIALS

Plaintiffs do not dispute that information about voluntary posting of copyrighted material on Hotfile is relevant. The importance of such evidence was just reaffirmed in *MP3Tunes*, in which a defendant website was found to not have "red flag" knowledge under the DMCA where "as part of its innovative marketing, [plaintiff] EMI itself regularly distributes works on the internet for free…[such] that internet users, including MP3tunes' users and executives have no way of knowing for sure whether free songs on the internet are authorized." *Capitol Records, Inc. v. MP3Tunes, LLC,* 2011 WL 3667335, *11 (S.D.N.Y. Aug. 22, 2011).

Although Plaintiffs have agreed to provide certain categories of documents in response to Request No. 18, Plaintiffs have unilaterally and improperly narrowed the scope of the request to exclude relevant material. First, the request specifically asks for *policies* regarding voluntary posting or promotional content on the Internet. Mot. at 17. Plaintiffs' narrowed response excludes *any* policies whatsoever. And Plaintiffs limit it to full-length works. As Plaintiffs well know, excerpts and portions of works are frequently posted on the Internet for promotional and other similar purposes. There is no basis in reason or logic to exclude such material.

Furthermore, with respect to "works in suit and potential works in suit," Plaintiffs have limited their response to works that are "authorized for further distribution and without technological barriers to such further distribution." This unexplained restriction does not appear to have any basis in reason or logic. If Plaintiffs have voluntarily posted works in suit or "potential" works in suit on the Internet – or any portion of such works – Defendants are entitled to full discovery about such postings without arbitrary limitations.

## VI. PLAINTIFFS SHOULD PRODUCE THEIR WEBSITE POLICIES

Plaintiffs seek to avoid responding to Request No. 33 – which seeks the production of policies for Plaintiffs' websites – in reliance on specious arguments about relevance.[9] Contrary to those arguments, this request is relevant to the "repeat infringer policy" provision of the DMCA. The DMCA's "repeat infringer policy" provision is "loosely defined" and allows service providers to implement "a variety of procedures" in order to comply with it. *See Perfect*

---

[9] Plaintiffs also argue "burden" because they represent or are affiliated with "large multinational conglomerates." Opp. at 19. Plaintiffs provide no support for this bald assertion of burden. Were this enough to avoid having to comply with discovery requests, it would effectively give large corporations a free pass to evade discovery.

9

*10 v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1101 (W.D. Wash. 2004). Accordingly, a comparison to other repeat infringer policies – ***particularly Plaintiffs' own policies*** – would be relevant to this analysis.

Not surprisingly, courts routinely look at other repeat infringer policies and their implementation in conducting this analysis.[10] As Plaintiffs point out in their opposition, courts often review descriptions and discussions of other policies set forth in other DMCA-related case law. *See id.* That in no way, however, forecloses the ability or right of Defendants *under the discovery rules* to obtain relevant material concerning other repeat infringer policies, particularly policies adopted by websites that *Plaintiffs themselves own or operate*.

Plaintiffs further claim that their websites are "so fundamentally different from Hotfile as to defy rational comparison." Opp. at 19. This claim is not to be believed. Plaintiffs have penetrated into online markets that are not nearly so "fundamentally different" as Plaintiffs claim. For example, Myspace.com, a popular "social entertainment website," is owned by the Fox empire; Plaintiff Warner Brothers owns Flixster, a "social movie site"; Universal Pictures recently partnered with Amazon.com to provide online movie services; and Disney has an "Interactive Media Group" focused on online, mobile and social network platforms.[11] Policies for these and other websites that Plaintiffs own and/or operate should be produced. And even if it were true that Plaintiffs websites are "fundamentally different" from Hotfile, at most, that would go to the weight or admissibility of such evidence, not its discoverability.

## CONCLUSION

For the foregoing reasons, the Court should compel Plaintiffs to respond fully to Defendants' Requests For Production Nos. 1, 5, 6, 12, 14, 18, 21, 29, and 33, and Interrogatory No. 1 as set forth in the Proposed Order attached hereto as Exhibit A.

---

[10] *See, e.g.*, *CCBill LLC*, 488 F.3d at 1110; *Corbis*, 351 F. Supp. 2d at 1102-1103; *Viacom International Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 528 (S.D.N.Y. 2010); *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1144 (N.D. Cal. 2008).

[11] *See* http://en.wikipedia.org/wiki/Myspace; http://en.wikipedia.org/wiki/Flixter; http://articles.sfgate.com/2011-07-29/business/29827858_1_amazon-prime-tony-wible-online-video; http://corporate.disney.go.com/wdig/about-us/.

DATED:  September 9, 2011 By:   /s/ Andrew Leibnitz
Roderick M. Thompson (admitted *pro hac vice*)
Andrew Leibnitz (admitted *pro hac vice*)
Anthony P. Schoenberg (*admitted pro hac vice*)
Deepak Gupta (admitted *pro hac vice*)
Janel Thamkul (admitted *pro hac vice*)
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy: 415.954.4480

s/ Janet T. Munn
Janet T. Munn
Florida Bar Number:  501281
Rasco Klock, et al.
283 Catalonia Avenue, Suite 200
Coral Gables, FL  33134
Telephone:  305.476.7101
Telecopy:  305.476.7102
Email:  jmunn@rascoklock.com

And

s/ Valentin Gurvits
Valentin Gurvits (admitted *pro hac vice*)
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA  02459
Telephone:  617.928.1800
Telecopy:  617.928.1802

*Counsel for Defendants Hotfile Corp. and
 Anton Titov*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2011, the foregoing document was served on all counsel of record or *pro se* parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/ Janet T. Munn
 Janet T. Munn

Karen L. Stetson, Esq.
Florida Bar No. 742937
Email: Karen.Stetson@gray-robinson.com
**GRAY-ROBINSON, P.A.**
1211 Brickell Avenue
Suite 1600
Miami, FL  33131
Telephone:  305.416.6880
Telecopy:  305.416.6887

Steven B. Fabrizio, Esq. (*pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (*pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (*pro hac vice*)
Email: lplatzer@jenner.com
**JENNER AND BLOCK, LLP**
1099 New York Avenue, N.W.
Suite 900
Washington, D.C.  20001
Telephone:  202.639.6000
Telecopy:  202.639.6066