UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN/O'SULLIVAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
_____/

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL RESPONSES TO SUBPOENA TO THIRD PARTY LEMURIA COMMUNICATIONS, INC.**

Lemuria goes to great lengths to exaggerate the scope of plaintiffs' document requests, resorting to implausible claims that the requests at issue include documents about "weekend plans, families, hobbies, humor, or rally car racing," Opp. at 6, or "car mechanics," *id*. at 8, or "cars or vacations," *id*. at 10, or other topics that have nothing to do with Hotfile. Lemuria has not suggested that communications about such personal topics between Lemuria and Hotfile even exist. Regardless, plaintiffs have always made clear in their meet-and-confer process and in their motion that they are seeking documents "about Hotfile's operations." Mot. at 7. Behind its hypotheticals about broad categories, Lemuria is in fact attempting unduly narrow the scope of documents it will produce (unreasonably limiting the category to documents related to "hosting services") in an effort to avoid producing key documents in its possession about Hotfile and its involvement with Hotfile.

Lemuria is not a disinterested or unrelated third party. It is wholly owned and controlled by defendant Anton Titov, services no customer or website other than Hotfile, apparently was

established to shield Hotfile from the consequences of its copyright infringement, and operates exclusively through mail drop boxes, without any office or personnel to speak of (other than those who also work for Hotfile). Mot. at 2-3. Despite Lemuria's assertion that it complies with routine corporate formalities, Opp. at 3, 15, Lemuria does not operate at arms-length with defendants.

The discovery plaintiffs seek from Lemuria is directly relevant to Hotfile's activities and liability. Based upon its active involvement with Hotfile and its principals, Lemuria knows more about Hotfile than any typical arms-length hosting provider. Additionally, it has become clear that Lemuria has greater involvement in the operation and support of Hotfile than its admitted function as a provider of website hosting services. Lemuria protests that there is no hard evidence of a more extensive relationship. But, at this stage, plaintiffs do not need further proof of Lemuria's involvement – they are entitled to discovery to obtain evidence about the relationship. *See Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-Civ, 2009 WL 455428, at *3 (S.D. Fla. Feb. 23, 2009) (ordering production of communications and agreements between defendant and non-party).[1]

Moreover, plaintiffs' contentions as to Lemuria's close involvement with Hotfile are hardly unfounded:

1. Third party PayPal produced information about payments to Lemuria from unidentified Hotfile entities. The PayPal records show payments of over **$20 million dollars**, including **$3 million a month** in two months just prior to PayPal's production of the records. *See* Mot. at 2; Pozza Ex. E (Dkt. # 109-6).[2] Moreover, approximately weekly, Lemuria makes multiple PayPal transfers on the same day (the recipients of which are not

---

[1] Lemuria cannot credibly argue that plaintiffs have already had five months of discovery to probe the relationship between Hotfile and Lemuria. Over four months after responsive documents were due, Lemuria has yet to produce almost all the categories of documents that it claims it will produce; its production has consisted almost entirely of takedown notices related infringing materials. Further, the "2.8 million pages" of emails produced by defendants is a mirage, as plaintiffs have explained in the reply in support of their motion to compel (at 1), filed contemporaneously with this memorandum. There too, defendants have produced very few categories of documents, and as for documents about Lemuria, defendants have stated that they do not intend to produce any documents other than those Lemuria produces in response to this subpoena.

[2] Lemuria in its opposition, Opp. at 14, appears to acknowledge that these monthly payments all relate to Hotfile.

2

identified) in increments of precisely $100,000 – some days totaling a half million dollars or more. *See* Pozza Ex. F (Dkt. #109-7). This level of suspicious cash activity, which plaintiffs only learned about through a subpoena to PayPal, strongly suggests that Lemuria is involved with Hotfile in ways **other than website hosting** or that Lemuria is being used as some sort of conduit to funnel Hotfile cash to undisclosed recipients.

2. The newly disclosed fact that "Hotfile has asked Lemuria to forward funds from Hotfile to its U.S. attorneys for their services," Opp. at 8 n.5, further undermines any claim of an arms-length relationship. Left unexplained is how it could be easier for Hotfile to send funds to its U.S. hosting provider (Lemuria) than to its U.S. attorneys. Also studiously avoided is whether Hotfile is reimbursing Lemuria for these payments and whether these "pass through" payments are documented and accounted for. This sort of commingling of funds between supposedly separate corporations is quintessential evidence of an alter ego relationship where one corporation acts as a mere instrumentality of the other. *See Raber v. Osprey Alaska, Inc.*, 187 F.R.D. 675, 679 (M.D. Fla. 1999); *Nationwide Advantage Mortg. Co. v. Fed. Guar. Mortg. Co.*, No. 09-20372-CIV, 2010 WL 2652496, at *6 (S.D. Fla. Feb. 26, 2010).

3. Titov further uses his *Lemuria* email account to conduct *Hotfile* business. *See* Mot. at 8. Lemuria refers to this as a couple of emails, Opp. at 9, but that of course ignores the fact that both Lemuria and defendants are stonewalling the production of Titov's emails, which are now *four months* overdue. Plaintiffs only obtained the cited Titov emails by happenstance from another third party to whom the emails had been forwarded. Likewise, documents just produced by another third party include emails in which an employee conducts business in the name of Lemuria and Hotfile simultaneously, listing "Lemuria Communications/Hotfile Corp." in his signature block when conducting business. Reply Declaration of Duane C. Pozza, dated Sept. 9, 2011 ("Pozza Reply Decl.") (attached as Ex. 1), Ex. A.

4. Titov's story explaining why he founded Lemuria (so that Hotfile could have U.S. IP addresses, *see* Opp. at 4) is plainly pretextual. At the time Titov formed Lemuria, Hotfile **already had U.S. IP addresses**. Hotfile was previously hosted by a U.S. internet service provider named Webazilla, which received the copyright infringement complaints about Hotfile that, plaintiffs contend, led Titov to start Lemuria to shield Hotfile. Mot. at 2-3;

3

Pozza Ex. G (Dkt. # 109-8). Again, third party documents produced the day before this filing confirm that Webazilla threatened to terminate Hotfile's IP address if Hotfile did not quickly remove infringing content. Ex. 1 (Pozza Reply Decl.), Ex. B. Moreover, Titov's convenient story does not explain why Titov took the highly unusual step of setting up his own private internet hosting company rather than continuing to contract for hosting services, as Hotfile previously had done and as most websites do. Clearly, Lemuria and defendants are entitled to their story. However, they cannot use a self-serving and untested story to foreclose the very discovery that would rebut it.

Indeed, if Lemuria were not more intertwined with Hotfile and its principals, Lemuria would simply confirm that it does not have any Hotfile-related documents beyond those related to the provision of hosting services. But it has never said that, despite repeated requests for such clarification.

Lemuria proposes to produce a sanitized set of documents – those limited to Lemuria's provision of hosting services to Hotfile. By definition, such documents would merely confirm the picture Lemuria wants to paint of itself as simply "one of Defendant Hotfile's suppliers." Opp. at 2. But the record and interrelationships strongly suggest there is much more to the story. Lemuria does not argue that the requested discovery would be unduly burdensome or should be denied on the basis of confidentiality of privilege (other than one set of documents not called for and that can readily be exempted). Instead, Lemuria conjures up unrealistic interpretations of the subpoena to distract from the fact that defendants and Lemuria are aggressively trying to conceal how Lemuria is being used to further the infringing activities of defendants and the other identified Hotfile-related entities and principals. Both to obtain relevant discovery as to defendants and their operation of Hotfile, and also to determine Lemuria's true involvement with Hotfile in order to determine if Lemuria should properly be made a defendant in this action, respectfully, plaintiffs' motion should be granted.

**I.     There is No Basis for Limiting Certain Categories of Documents Produced By Lemuria to Those Involving Hosting Services.**

Even beyond imagining interpretations of plaintiffs' requests as calling for documents about "hobbies" and "families" that Lemuria knows full well plaintiffs do not want, Lemuria greatly exaggerates the reach of plaintiffs' motion to compel. Plaintiffs are not moving to compel documents "in twenty-three subcategories," as Lemuria charges. Opp. at 5. Rather, plaintiffs seek to compel production of documents in three discrete subcategories of Request No.

4

1, No. 1(a) (regarding communications with defendants or another Hotfile operator), 1(b) (regarding Lemuria's role in operating the Hotfile website), and 1(d) (regarding contracts or agreements pertaining to defendants or Hotfile), and two discrete subcategories of Request No. 2, No. 2(d) (regarding agreements or contracts with any other Hotfile operator) and 2(e) (discussed in Section II).  These are the only subcategories raised and discussed in plaintiffs' motion.  Each of these subcategories seeks relevant and important documents regarding Hotfile's activities and liability, and Lemuria's involvement with Hotfile.

Plaintiffs have never suggested that these requests seek documents unrelated to Hotfile, and Lemuria has not suggested that such documents even exist.  Plaintiffs remain perfectly willing to confirm that the requested documents are limited to those related to Hotfile or its business, to address Lemuria's professed concerns about "weekend plans" or "car mechanics."  However, in the meet-and-confer process, Lemuria insisted that the request was overbroad because *other services* besides hosting service that Lemuria provided *to Hotfile* should be excluded as irrelevant.  *See* Opp. Ex. C, at 5-6.  Thus, Lemuria demanded a narrowing that would exclude all documents except those that supported its self-serving version of its involvement with Hotfile.  That is the central dispute here.

As discussed above, Lemuria's involvement with Hotfile and its principals plainly extends well beyond the role of arms-length provider of hosting services.  *Supra* at 1-4. Under Lemuria's proposed narrowing, for example, documents that demonstrate that Lemuria is immersed in the operations of Hotfile and equally responsible for its infringement would be excluded.  Likewise, Lemuria would exclude documents demonstrating that Lemuria is simply an alter ego of Hotfile (or some other Hotfile Entity).  If Lemuria is acting as a conduit to disburse Hotfile revenues (as it appears), Lemuria's proposal would exclude those documents as well.  And, if Titov used his Lemuria email account to discuss Hotfile's business plans, suggesting strategies for Hotfile that would enable it to benefit from massive copyright infringement, Lemuria would exclude those documents as well.

Lemuria's objections and proposed "compromises" are all designed to allow Lemuria to conceal its true involvement with Hotfile:

- Titov undeniably uses his Lemuria email to conduct some Hotfile business.  Lemuria professes that it is willing to provide emails regarding Lemuria's communications "with Hotfile *users*."  Opp. at 9 (emphasis added).  But what about Titov's communications

5

- with other Hotfile principals about Hotfile's business using his Lemuria email?  Lemuria proposes to exclude those communications – yet they are likely to be some of the more revealing communications that Lemuria possesses.
- Lemuria engages in linguistics gymnastics to argue that the definition of "Hotfile Entity" in plaintiffs' Requests means that "all of Mr. Titov's document pertaining to himself – or all of his documents" – would have to be produced.  Opp. at 6.  While that interpretation would not be reasonable under any circumstances, here, in their motion, plaintiffs more narrowly defined "Hotfile Entity" to mean "Hotfile Corp., Hotfile, Ltd., or any other entity involved in the operation of Hotfile."  *See* Mot. at 7; Proposed Order at 1 (Dkt. #108-1).  That eliminates the basis of defendants' strained objection, as the narrowed category does not come close to encompassing Titov's documents "pertaining to himself."  And as noted above, plaintiffs have made clear that the requests more narrowly seek documents related to Hotfile.  Plaintiffs' definition is also altogether reasonable given that plaintiffs know very little about other entities involved in operating Hotfile and defendants have continued to refuse to produce documents related to other entities involved with Hotfile's operations.
- Lemuria argues that plaintiffs' discovery from Lemuria should be limited to matters alleged in the Complaint specifically about Lemuria.  That is simply an incorrect statement of the scope of discovery.  *See Echostar Satellite v. Viewtech, Inc.*, No. 10-60069-MC, 2010 WL 2822109, at *3 (S.D. Fla. July 16, 2010) (ordering discovery from non-parties who were not implicated in the Complaint).  The discovery plaintiffs seek is directly relevant to Hotfile's liability for copyright infringement, and thus it should be permitted.  Further, at a stage when neither Lemuria nor defendants have provided any meaningful discovery on the topic, plaintiffs have provided considerable evidence that Lemuria is more closely involved with Hotfile beyond the provision of arms-length hosting services.  *Supra* at 1-4.  Plaintiffs should be permitted to pursue their "Doe" discovery to determine whether Lemuria should be a party defendant.  *United States ex rel. Heater v. Holly Cross Hosp., Inc.,* 510 F. Supp. 2d 1027, 1036 (S.D. Fla. 2007) (plaintiffs may conduct discovery to identify Doe defendants).[3]

---

[3] Lemuria attempts to distinguish *Heater* on the grounds that it permitted only ninety days of discovery at the outset of the case to identify potential Doe defendants.  Opp. at 11.  However,

6

## II. The Requested Financial Documents Regarding Lemuria and Hotfile Should Be Produced.

Lemuria exaggerates the scope of plaintiffs' requests for financial documents. Plaintiffs' requests are in fact quite narrow: plaintiffs seek documents related to financial arrangements, revenue sharing, and accountings between Lemuria and any entity involved in the operation of Hotfile (Request 2(e)), as well as documents sufficient to show Lemuria's income related in any way to Hotfile (Request 11). Request 2(e), thus, does not seek sweeping financial information as Lemuria claims, *see* Opp. at 12-13, but rather is narrowly tailored to discover financial arrangements **between** Lemuria and those that operate Hotfile. Likewise, in seeking documents about Lemuria's Hotfile-related income, plaintiffs deliberately limited their request to only documents "sufficient to show" such income. Such evidence is clearly relevant to understanding the scope of Lemuria's involvement with Hotfile, as discussed above. *Supra* at 1-4.

Lemuria's only real objection is that the request is overbroad, based primarily on its assertion that the request would call "for production of all of Lemuria's and Hotfile's legal bills, attorney timesheets, and payment records in this litigation," Opp. at 12, because Lemuria pays Hotfile's legal fees in this case. That interpretation is simply not reasonable. The "arrangement" by which Lemuria pays Hotfile's legal bills, and whether there is proper corporate documentation and repayment by Hotfile, is clearly relevant to whether Lemuria operates as a mere instrumentality of Titov and Hotfile. Beyond that, Lemuria simply manufactures a concern that additional, privileged documents such as detailed legal bills to Hotfile would be encompassed by the request, and in any event, any materials that related to the arrangement and that remained privileged plainly could be carved out of any production.[4]

---

plaintiffs here acted expeditiously to serve discovery to identify those defendants – plaintiffs served discovery requests to defendants regarding other entities involved in the operation of Hotfile on the first day of discovery, and served this subpoena on Lemuria just a few days later. Plaintiffs have been forced to move to compel on the request for documents regarding other entities involved in Hotfile's operation (*see* Dkt. #110 at 12-14) and to move for documents related to Lemuria here. Lemuria further cites *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990), to argue that no additional discovery is warranted, but in that case, the party was seeking discovery to add claims not alleged in the complaint. Here plaintiffs have alleged the existence of other potential operators of Hotfile.

[4] Lemuria's additional claim that defendants' litigation counsel would be deemed a "Hotfile Entity" because it represents and counsels Hotfile (and therefore is "involved with the operation of the Hotfile Website"), Opp. at 12, is facially implausible – counsel's representation of

7

Lemuria claims that it offered plaintiffs adequate compromises on those requests. However, those compromises were designed to conceal important information.

- Lemuria offered to produce documents showing payments to and from three Hotfile entities (Hotfile Corp., Hotfile, Ltd., and Hotfile S.A.).  Opp. at 13.  However, defendants and Lemuria have aggressively concealed whether other entities are involved in the operation of Hotfile – and Lemuria's refusal to include payments to and from other entities involved in the operation of Hotfile strongly suggests that there are such entities that Lemuria is trying to conceal.  Lemuria also would exclude Lemuria's income ***related to Hotfile*** that does not come from one of those three entities.  That information is relevant to showing the extent of Lemuria's involvement in Hotfile's activities or the use of Lemuria to further Hotfile's activities.  Mot. at 9-10.
- Lemuria also argues that Request No. 11 "has already been discharged" by the records plaintiffs received from PayPal.  Opp. at 14.  However Lemuria is careful not to itself represent that those PayPal records constitute all income Lemuria has received related to Hotfile.  Instead, curiously, Lemuria asserts that *plaintiffs* have so "attest[ed]" to this, *id.*, which plainly is not true as plaintiffs are not in a position to know whether Lemuria has received income by means other than PayPal.  In any event, the PayPal data is facially incomplete; it does not indicate the source of any income or provide a month-by-month breakdown, and it is not current.  It is not a substitute for a response from Lemuria.[5]

Because plaintiffs' requests are narrowly tailored on their face to target directly relevant information about Lemuria's (and other entities') involvement in the operation of Hotfile, Lemuria's objections should be overruled.

### III. Documents Related to Lemuria's Operation Should Be Produced.

Lemuria's only objection to producing documents "sufficient to show" services provided to individuals or entities other than Hotfile is relevance.  Opp. at 14-15.  Plaintiffs previously explained that these documents were probative of Titov's creation of Lemuria for the express purpose of shielding Hotfile's copyright infringement.  Mot. at 11.  Lemuria suggests that there

---

defendants in the present litigation *about* the Hotfile Website clearly does not qualify as involvement *in the operation* of the Hotfile Website.

[5] Lemuria's arguments that disclosing more "granular" information would disclose Lemuria and defendants' expenditures for legal representation, Opp. at 14, defies logic.  Plaintiffs are seeking an accounting of income, not expenditures.

8

may be alternative explanations for the fact that Lemuria apparently has only one customer (*e.g.*, "lower cost, greater efficiency, or convenience"). Opp. at 15. Lemuria is entitled to make those arguments, but they do not undercut the relevance of whether Lemuria provides services to other customers.

Likewise, Lemuria does not address plaintiffs' argument that production of corporate board records would show whether Lemuria is engaged in any legitimate activities or is just being used by Titov as a mere instrumentality to facilitate Hotfile's infringing activities. *See* Opp. at 15-16; Mot. at 11. Even if Lemuria filed the necessary corporate documents, appointed an agent for service of process and reserved funds sufficient for daily operations, Opp. at 15, that would not establish that Lemuria operates at arms-length with or other than an a mere instrumentality of Hotfile or Titov. *See Nationwide Advantage*, 2010 WL 2652496, at *6 (alter ego liability may be found where individual owner dominated corporate entity and used the corporate entity as instrumentality for wrongdoing). Indeed, while Titov asserts that Lemuria maintained separate financial accounts, the newfound revelation that Lemuria has been paying Hotfile's legal bills, Opp. at 8 n.6, suggests that funds have been commingled. Given the circumstances by which Lemuria came into being, the common ownership, the fact that Lemuria services only Hotfile, Titov's use of Lemuria email for Hotfile business, the unexplained receipt of funds far in excess of normal hosting expenses, and the admission that Lemuria is, at a minimum, serving as a "pass through" to pay Hotfile's legal bills, plaintiffs respectfully submit that they are entitled to the limited requested discovery to test the assertion that Lemuria follows corporate formalities, and is entitled to be treated as a separate corporate entity from Titov and/or Hotfile for purposes of liability for copyright infringement.

## CONCLUSION

The Court should compel a complete production of documents in response to Requests Nos. 1(a), (b), and (d), 2(d) and (e), 4, 9, and 11.

Dated: September 9, 2011                    Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: (305) 461-6880
Facsimile: (305) 461-6887

MOTION PICTURE ASSOCIATION              JENNER & BLOCK LLP
 OF AMERICA, INC.                       Steven B. Fabrizio (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)      Duane C. Pozza (*Pro Hac Vice*)
15301 Ventura Blvd.                     Luke C. Platzer (*Pro Hac Vice*)
Building E                              1099 New York Ave., N.W.
Sherman Oaks, CA 91403                  Suite 900
Phone: (818) 995-6600                   Washington, DC 20001
Fax: (818) 285-4403                     Telephone: (202) 639-6000
                                        Facsimile: (202) 639-6066

                                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 9th Day of September, 2011, I served the following document via overnight delivery to Andrew Leibnitz, counsel for Lemuria Communications, Inc. at his listed address on the attached service list.

      In addition, I served the following document on all counsel of record on the attached service list via the Court's CM/ECF filing system:

**Plaintiffs' Reply Memorandum in Support of Motion to Compel Responses to Subpoena to Third Party Lemuria Communications, Inc.**

I further certify that I am admitted to the United States Court for the Southern District of Florida.

                                                            By: /s/ Karen L. Stetson
                                                                Karen L. Stetson

## SERVICE LIST

### Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
### CASE NO. 11-CIV-20427-JORDAN

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*