UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN/O'SULLIVAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
_____/

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND
INTERROGATORIES**

Although defendants persist in their unfounded accusations and hyperbole, the discovery that plaintiffs seek in this motion is routine. In fact, most of the categories at issue mirror categories of evidence that courts have singled out in finding comparable defendants liable for copyright infringement: *e.g.*, evidence of infringing activity by defendants and their employees; communications with potential investors; and evidence that users were not terminated for infringement. The only thing remarkable about this discovery is that defendants have forced plaintiffs to file another motion to obtain it. This discovery should have been produced in the ordinary course without motions practice.

Defendants likewise greatly exaggerate the discovery they have provided to date. As if to justify unreasonable discovery positions, in their opposition (as in numerous other filings), defendants repeatedly trumpet that they have produced over "2.8 million pages" of emails. Opp. at 1, 11, 12-13. Respectfully, this level of pretense needs to stop. Those emails consist almost entirely of the contents of two large databases containing user communications with Hotfile and takedown notices sent by copyright owners. Those databases likely were copied and produced en masse without need for lawyer review, and would have required little more than a few hours of time to copy. After five months of discovery, those emails are the bulk of all discovery defendants have produced. Defendants have not produced any substantial part of the internal communications, business and marketing plans, and other documents that make up the core of the discovery requested and which defendants know will contain incriminating evidence. Indeed, in defense of their refusal to produce discovery sought in this motion, defendants assert that "Hotfile is also in the process of producing emails of its shareholders and the contractors who assist in the operation of the Hotfile website." *Id.* at 13. But those documents were due *over four months ago* and, to this day, defendants refuse to give plaintiffs any meaningful schedule for production of long-overdue documents. Defendants apparently hope that their production of a high volume of routine documents will distract from their stonewalling. But defendants' claims cannot be taken at face value.

Plaintiffs seek specific, narrowly tailored and highly relevant categories of evidence. Plaintiffs' motion to compel should be granted.

# ARGUMENT[1]

I.  **Defendants Should Produce Content Files Uploaded and Downloaded by Key Hotfile Personnel (RFP No. 28).**

Having relied primarily on a Stored Communications Act objection during extensive meet-and-confers, defendants now abandon that objection – which, in any event, was rejected by the Court in its August 26, 2011 Order on plaintiffs' first motion to compel. Order on Motion to Compel (Dkt. # 128) at 4; *see Platypus Wear, Inc. v. Clarke Modet & Co.*, No. 06-20976-CIV, 2007 WL 4557158, at *2-3 (S.D. Fla. Dec. 21, 2007) (objections not raised in response to motion to compel are waived). Defendants' remaining relevance and burden objections are equally unpersuasive.

Defendants cannot refute that evidence regarding files that were uploaded or downloaded by Hotfile personnel is highly relevant to plaintiffs' claims. Courts often have found this precise evidence to be highly probative of both knowledge of infringement and intent to induce infringement. *See* Mot. at 3-4.

Defendants instead argue that plaintiffs cannot prove that any uploading or downloading of files by Hotfile personnel was done in the course of employment. Opp. at 3-4. However, defendants cannot presume the outcome of a disputed issue to avoid discovery of highly probative evidence – especially not with a single self-serving sentence in a declaration ("uploading and downloading of files is not part of anyone's job duties for Hotfile"). Opp., Ex. 1 (Titov Decl.) ¶ 3 (cited in Opp. at 4); *see Bennett v. United States,* 102 F.3d 486, 489 (11th Cir. 1996) ("The question of whether a given act falls within the scope of employment is highly fact-specific, and turns on the unique circumstances of the case at bar"). Indeed, courts confronting similar circumstances have rejected mere assertions that agents were not authorized to engage in activities providing evidence of infringement. *See, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578 SVW (JCX), 2009 WL 6355911, at *13 & n.21 (C.D. Cal. Dec. 21, 2009) (actions to induce infringement by defendants' non-employee "moderators" imputed to

---

[1] As a threshold matter, defendants' passing claim that plaintiffs sought to circumvent the 20-page limit on motions to compel is unfounded. Plaintiffs moved to compel responses to certain requests in May after defendants made clear they would not produce key categories of data and other information. At the same time, plaintiffs attempted to meet and confer on other discrete requests where there appeared to be some prospect of resolving or narrowing the disputes without motion practice. This sensible approach to limiting discovery motions is not in any way prohibited by the Local Rules.

2

defendants where such "individuals were under the control of Defendants and assigned duties related to the administration" of defendants' services). The issue of what knowledge and intent of employee-contractors can be attributed to defendants cannot be resolved without the discovery that plaintiffs are seeking here and the long-overdue discovery from the employee-contractors that defendants have not yet provided. Further, if Hotfile personnel gained knowledge of infringing materials on their own time, but then *used* that knowledge in the course of their employment (such as in designing features for Hotfile), that is fairly imputed to defendants. *See Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 152-53, n.19 (S.D.N.Y. 2009).

Finally, defendants acknowledge that uploading and downloading files is in fact part of employee-contractors' "job duties" in certain circumstances, "such as during systems testing." Opp., Ex. 1 (Titov Decl.) ¶ 3. Courts have found employee uploading and downloading in that exact context – testing and system development and maintenance – to be particularly probative of a defendant's intent to promote copyright infringement. *See, e.g., Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW), -- F. Supp. 2d --, 2011 WL 1742029, at *18 (S.D.N.Y. May 2, 2011) (defendants' testing and search for infringing content "gives rise to a 'particularly forceful' inference that [they] intended to promote copyright infringement"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 979-80, 987 (C.D. Cal. 2006) (evidence that defendants tested program by searching for copyrighted music supported finding of intent to infringe). Plaintiffs are entitled to discovery of what files were uploaded and downloaded in order to make any factual assessment as to whether those activities are attributable to defendants or otherwise done in a context making them probative of defendants' knowledge and intent.

Unable to dispute the relevance of this discovery, defendants accuse plaintiffs of distorting defendants' *own* Interrogatory response, which states unequivocally that one of their contractors was also one of Hotfile's top 500 highest paid Affiliates. Opp. at 3. Defendants now say their sworn interrogatory response is not accurate; that funds defendants identified as Affiliate payments were actually salary. Defendants, however, falsely claim that they had "advised the Studios prior to the filing of this motion that their conclusions were incorrect," *id.* at 3; defendants actually made this unsubstantiated assertion to plaintiffs' counsel in a call *after* the motion had been filed. Moreover, defendants have yet to provide a revised or corrected Interrogatory response. In any event, defendants' distraction is immaterial – evidence that

3

Hotfile personnel downloaded or uploaded content files is highly relevant regardless of whether such personnel were also paid as Affiliates.[2]

Defendants' burden argument also should be rejected. Defendants claim that they would have to "write a software program to run on hundreds of millions of lines of computer logs," and that this process could take "days if not weeks of programming and processing." Opp. at 5; *see* Opp., Ex. 1 (Titov Decl.) ¶ 4. First, defendants already track and maintain records of *uploads* by all users, including their employee-contractors, so that defendants can pay them under defendants' Affiliate programs. (Titov, for instance, had no problem submitting a declaration testifying that one employee-contractor "has only uploaded two files to the Hotfile website." *Supra* note 2.) Thus, defendants' "burden" argument applies only to *downloads*, not uploads. Second, defendants acknowledge that they began preserving "log data" reflecting downloads only after plaintiffs filed this action. Opp., Ex. 1 (Titov Decl.) ¶ 4. Now that the Court has ordered the production of this log data, plaintiffs can and will search the log data. The employee download data can be easily extracted from the log data by searching for downloads by a unique Hotfile ID.

However, this does not relieve defendants of their obligation to produce records of employee downloading prior to the filing of the Complaint, before they began preserving log data, when Hotfile personnel were more likely to be engaged in downloading infringing content. Defendants argue that it would be "futile" to search employee computers for such records. Opp. at 5 n.6. That is not so. Defendants claim to have only a handful of relevant personnel. Opp., Ex. B. Defendants have a variety of means of searching for such information, including by examining browser history or performing hash or file name checks on downloaded content files to determine if they match content files in Hotfile's records. Defendants may not resist production of incriminating documents on feigned grounds of undue burden.[3]

---

[2] In his declaration on this point, Titov acknowledges that the employee-contractor at issue has in fact uploaded content to Hotfile ("only … two files") that have been downloaded ("each of which was downloaded just once"). Opp., Ex. 1 (Titov Decl.) ¶ 6. Notably, Titov does not identify the content files or make any claim that they were not infringing – which he undoubtedly would have if the files were not infringing. Moreover, it does not matter how many infringing files Hotfile's employee-contractors have uploaded. The fact that defendants' own employee-contractors use the service to engage in copyright infringement is relevant.

[3] Defendants are also incorrect that the Court's August 26 Order on plaintiffs' first motion to compel has otherwise rendered plaintiffs' request for content files uploaded and downloaded by

4

**II.    Defendants Should Produce Documents and Information Related to Potential Investors (RFP No. 5(i); Interrog. No. 4).**

In case after comparable case, defendants' communications with investors and potential investors have yielded some of the most incriminating admissions about the true nature of defendants' businesses – candid contemporaneous statements from defendants' own mouths that their business fills a need created when another pirate service was shut down, or about the infringing content that drives users in droves to their websites, or about their plans to profit from copyright infringement.  *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 901-02 & n.5 (N.D. Cal. 2000) (early investor business plans relied upon in finding of contributory infringement), *aff'd in part, rev'd in part*, 239 F.3d 1004 (9th Cir. 2001); *see also* Mot. at 8-9 (citing other examples).

Defendants have not (and cannot) dispute the relevance and importance of this discovery.  Instead, they try to distinguish an unbroken line of cases by arguing, without support, that the Hotfile website is unlike any of the peer-to-peer networks previously found liable.  Opp. at 6-7.  However, the fact that Hotfile uses a different technology is a distinction without a difference.  *See, e.g.*, *Fung*, 2009 WL 6355911, at *19 (in responding to defendants' "attempt to distinguish their situation" from Napster, the court concluded that their "technology is nothing more than old wine in a new bottle").  The investor documents were found relevant in the cited cases because they were probative of knowledge, intent and financial benefit, and defendants cannot avoid their disclosure merely by asserting the ultimate conclusion that defendants are not like other online infringers.

Defendants also argue that the identities of potential investors and defendants' communications with those investors are so highly confidential that they should be subject to a heightened standard for disclosure.  However, defendants do not come close to showing the requested information is so sensitive as to be entitled to extraordinary protection.  *See* Opp. at 6.  Moreover, this court has declined to adopt any higher standard for the disclosure of private financial information, noting that such information should be produced so long as the information meets the standard of relevance set forth in Rule 26.  *Bellosa v. Universal Tile*

---

Hotfile personnel superfluous.  Opp. at 5.  The August 26 Order requires defendants to produce reference data about content files, not the content files themselves.  Request No. 28 calls for production of specific content files themselves, so plaintiffs may analyze those files to determine if they are infringing.  Moreover, defendants claim not to have logs of downloads prior to February 2011, as noted above.

*Restoration, Inc.*, No. 08-60054-CIV, 2008 WL 2620735, at *4 (S.D. Fla. June 30, 2008); *Capone v. Estate of Ison*, No. 06-80945, 2008 WL 2277507, at *6 (S.D. Fla. May 30, 2008) (ordering disclosure of financial records relevant to the case without requiring the requesting party to demonstrate necessity). Indeed, defendants in this case have already been ordered to produce confidential financial information. *See* Order on Motion to Compel (Doc. #128) at 7.[4]

Further, defendants' speculative assertion that they could be harmed from disclosing the identities of the potential investors cannot satisfy their "heavy burden of demonstrating that disclosure [of confidential information] will work a clearly defined and very serious injury." *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985) (quotation marks omitted). First, defendants do not contend that they are currently in discussions with any potential investor that even conceivably could be disrupted. Plainly, there cannot be any possible harm in disclosing information regarding investors who ultimately decided not to invest or with whom defendants are no longer in active negotiations. Nor do defendants contend that there are such a large number of potential investors that it would be difficult or burdensome to identify them in response to this Interrogatory. Second, defendants' concern has nothing to do with the current discovery requests; rather, it involves defendants' concern that, after plaintiffs obtain discovery from defendants, plaintiffs may *in the future* seek discovery from a potential investor. At a minimum, that is an issue for another day. Plaintiffs have already made clear that they do not intend to harass such individuals or depose them absent some basis in the document production. Mot. at 9. To further allay defendants' concerns, plaintiffs will agree that, if defendants identify potential investors with whom they are currently engaged in active negotiation, then before plaintiffs serve any discovery on such investors, plaintiffs will notify defendants and provide a reasonable opportunity to move the Court for a protective order. In that way, the Court will be in a position to consider the issue in context and defendants will not be able to use speculative concerns about possible future discovery to third parties to foreclose an entire avenue of important discovery.

---

[4] The cases cited by defendants further demonstrate that the information requested here is far from the confidential nature of information sought in other cases. *See Zeng Liu v. Donna Karen Int'l, Inc.*, 207 F. Supp. 2d 191, 192-93 (S.D.N.Y. 2002) (denying request for discovery relating to plaintiffs' immigration status because it was not relevant and disclosure may lead to intimidation of the plaintiffs); *In re Del-Val Fin. Corp. Securities Litig.*, 158 F.R.D. 275, 277 (S.D.N.Y. 1994) (denying request for additional personnel records because defendants had already produced related records and relevance of requested records was speculative).

6

**III.    Defendants Should Provide Additional Information Regarding Termination of Users (Interrog. No. 10).**

Defendants misstate the relief that plaintiffs are requesting in seeking a response to Interrogatory No. 10. The issue here is not whether defendants may rely on Fed. R. Civ P. 33(d) in responding to this Interrogatory, but rather whether defendants have attempted to respond by pointing to a document that contains indecipherable codes to explain the reasons for user terminations. *See Powell v. Home Depot, U.S.A., Inc.*, No. 07-80435-CIV, 2010 WL 4116488, at *31 (S.D. Fla. Sept. 14, 2010) (documents provided in answer to an interrogatory must be understandable), *adopted by*, 2010 WL 4102933 (S.D. Fla. Oct. 18, 2010). Plaintiffs just want to know what the codes mean. Defendants argue that they should not have to "provid[e] responsive information for 14,694 terminated users," Opp. at 9 n.11, but that greatly exaggerates the requested relief. Plaintiffs are only seeking descriptions of what appear to be, by plaintiffs' count, between 85-95 discrete codes (accounting for similarly worded codes having the same meaning) for the small subset of users terminated prior to the Complaint filing.[5] That is hardly burdensome.

Nor can defendants fairly complain about having to explain their codes. On their face, the codes are not understandable. The codes include the following as the full explanation as to why a user was terminated from Hotfile: "tos violation," "cheater," "cp," "dwld cheat," "illegal content," "corbinfisher," "G2S," "traffic," "shared," and "bryci," among others. *See* Pozza Ex. C (Dkt # 112-4) (excerpt of spreadsheet). Some entries simply list "N/A" as both the reason for and the date of the claimed termination.

Defendants claim that an explanation is unnecessary because "[s]uch terminations were obviously not for copyright infringement." Opp. at 9. But plaintiffs cannot know whether the "tos violation" resulting in termination was copyright infringement, or whether "cheater" refers to copyright infringement. Moreover, even when a code does not facially appear to indicate copyright infringement (*e.g.*, "cp"), plaintiffs cannot know whether the cryptic code reflects all the reasons a user was terminated. If defendants want to stipulate that all terminations prior to

---

[5] Of the 14,694 user terminations, well over 13,000 were terminated *after* the filing of the Complaint. Moreover, the notation "Repeated Copyright Infringement" does not appear on the document until after plaintiffs filed this action. For purposes of defendants' compliance with the DMCA's "repeat infringer" provision, the most critical evidence concerns the reasons that defendants had for terminating users prior to the Complaint, but those are the codes that are largely indecipherable. *See* Pozza Ex. C at 2-4 (Dkt # 112-4).

7

the filing of the Complaint were "not for copyright infringement," then plaintiffs will have no reason to press for more information. Likewise, if defendants want to identify each user terminated prior to the filing of the Complaint for any reason related to copyright infringement, then plaintiffs will limit their further inquiry to the circumstances surrounding those particular terminations. But defendants have not done either of those.

## IV. Defendants Should Provide Additional Information Regarding Other Hotfile Operators (RFP No. 31).

Defendants argue that they should not have to respond to a direct request for documents related to the other entities who are involved in operating the Hotfile website, because they have already provided discovery sufficient to identify those operators. However, defendants have sought to conceal the entities and persons who are involved in operating the Hotfile website from its inception. For example, the Hotfile website lists a Panamanian company with no operations in Panama as Hotfile's "operating company," and defendants use drop boxes instead of real addresses for Hotfile-related entities.

Defendants' refusal to provide documents in response to Request No. 31, which seeks documents about the interrelationships among the various entities that operate Hotfile, reflects another attempt to shield the actual operators from disclosure.[6] Contrary to their assertions, defendants have not provided the same information through other discovery. First, defendants' response to Interrogatory No. 1, which seeks identification of all individuals involved in the operation of Hotfile, provided only minimal information about a number of entities. *See* Opp., Ex. 2. The response does not provide meaningful information to allow plaintiffs to understand the relative involvement and roles of the identified entities or the individuals that control them. Indeed, in their initial response, defendants wholly omitted the Bulgarian entity Hotfile Ltd., which defendants now concede handles commercial transactions with subscribers.[7]

---

[6] Defendants' complaints about the scope of the definition of "Hotfile Entity" in the document request are misplaced given that plaintiffs narrowed the definition in their motion to compel to limit it to entities. Mot. at 12-13. Defendants have not suggested that there are a great number of entities involved in the operation of Hotfile, and cannot object on the basis of burden.

[7] For these reasons, plaintiffs are entitled – and have good reason – to seek information through both an interrogatory and a document request. *See Becker v. Dahl*, No. CIV S-10-0519 FCD EFB P, 2011 WL 121697, at *2 (E.D. Cal. Jan. 13, 2011) (both interrogatories and document requests can be used to obtain the same information); *see also Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings*, LLC, Civ. No. 07-2388-DJW, 2008 WL 3895474, at *5 & n.32 (D. Kan. Aug. 21, 2008) (permitting document discovery on same topic as interrogatory).

Second, the so-called "official incorporation and other similar legal documents," Opp. at 13, that defendants claim to have produced are of little value. Defendants incorporate their Hotfile-related entities through professional incorporation services that obfuscate most pertinent information. These documents do not identify true owners or operators, and do not provide any information about the entity's role in operating Hotfile. Third, Hotfile claims it is "in the process of producing emails of its shareholders and contractors." *Id*. But those documents were due more than four months ago, and defendants still refuse to give plaintiffs any concrete schedule for production. Moreover, while those documents will hopefully shed light on the operations of Hotfile, there is no reason to believe they will clarify the involvement and roles of the various different entities that appear to operate Hotfile. Defendants should produce documents directly responsive to plaintiffs' request rather than rely on vague assurances that other documents will disclose similar kinds of information.

## V. Defendants Should Produce Database Table and Heading Names (RFP No. 17).

Plaintiffs have narrowed the information they are seeking in regard to Request No. 17, such that it cannot be considered commercially sensitive trade secret information subject to heightened protection. Plaintiffs are *not* seeking the source code behind the use of the database, nor are they seeking the data that Hotfile collects. Instead, plaintiffs are merely seeking the database table and field names (or headings) to understand the *types* of data defendants collect and store. Mot. at 14-15.[8]

Defendants collect and use an array of user and content data in the course of operating Hotfile, which of course bears on defendants' level of knowledge. For example, it turns out that defendants routinely keep track of each user's "last download" – that is, that Hotfile uses a data field in which it records data about what its users are actually downloading – and uses that information in the course of Hotfile's business. *Id*. at 15. Plaintiffs could not know this from external observation, and learned this only by chance, by reviewing user emails. The table and field names plaintiffs seek will inform plaintiffs what other data defendants collect and use in the ordinary course of operating Hotfile. With defendants' knowledge of activity on Hotfile being such a central issue, there can be little doubt that this discovery is relevant.

---

[8] Defendants have already been ordered to produce the data associated with certain fields that have been specifically identified by plaintiffs. Order on Motion to Compel (Dkt. # 128) at 4. The request here seeks production of headings that will identify other data fields that Hotfile collects, in addition to those for which data has been ordered produced.

9

Defendants assert that the "database structure" is a closely held secret and that the "design of the database reflects thousands of hours of coding time and years of modification," Opp. at 13, but plaintiffs are not seeking database "structure" or "design" documents at all. Showing what data Hotfile collects – as opposed to how it is structured or used – could not permit others to "mimic Hotfile's business," *id*. at 14. *Viacom Int'l Inc. v. YouTube, Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008), cited by defendants, Opp. at 15, actually supports plaintiffs' arguments. The *Viacom* court held that the database schema for Google Video, containing data about the video files, *should* be produced because it would demonstrate Google's knowledge about those files. *Viacom*, 253 F.R.D. at 264. The Google Video database schema is the direct analog to what plaintiffs are seeking here. In contrast, the only schema that was withheld from production in *Viacom* related to Google's separate advertising business; it was undisputed that only a tiny portion of that data related to content on YouTube and that data was produced. *Id*. There is no basis to shield the table heading evidence from discovery on grounds that it is commercially sensitive.

## CONCLUSION

Plaintiffs' Motion to Compel should be granted.

Dated: September 9, 2011

Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: (305) 461-6880
Facsimile: (305) 461-6887

MOTION PICTURE ASSOCIATION
 OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th Day of September, 2011, I served the following document on all counsel of record on the attached service list via the Court's CM/ECF filing system:

**Plaintiffs' Reply Memorandum in Support of Motion to Compel Responses to Requests for Production of Documents and Interrogatories**

I further certify that I am admitted to the United States Court for the Southern District of Florida.

By: /s/ Karen L. Stetson<br>
Karen L. Stetson

# SERVICE LIST

## Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
## CASE NO. 11-CIV-20427-JORDAN

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*