UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 11-20427-CIV-JORDAN

| | |
|---|---|
| DISNEY ENTERPRISES, INC. et al., | ) |
| Plaintiffs | ) ) ) |
| vs. | ) ) |
| HOTFILE CORP. et al., | ) ) |
| Defendants | ) ) |

**ORDER ON PLAINTIFFS' MOTION TO COMPEL**

As explained below, Disney Enterprises, Inc.'s, Twentieth Century Fox Film Corporation's, Universal City Studios Productions LLLP's, Columbia Pictures Industries, Inc.'s, and Warner Bros. Entertainment Inc.'s motion to compel responses from Lemuria Communications, Inc. [D.E. 110] is GRANTED IN PART AND DENIED IN PART.

First, the movie studios request "[a]ll documents reflecting the use of Hotfile service by any employee, owner, shareholder, principal, officer, director, agent, business partner, or contractor of any Defendant or Hotfile Entity" [D.E. 110 at 3]. Hotfile and Mr. Titov believe the request to be too broad and unduly burdensome. I do not find this argument convincing.

Hotfile and Mr. Titov complain that the movie studios define "employee, owner, shareholder, principal, officer, director, agent, business partner, or contractor" broadly, but Hotfile and Mr. Titov note that Hotfile does not have "employees." Instead, it hires third parties and independent contractors to do work. Given the lack of a defined workforce, Hotfile and Mr. Titov cannot complain of the movie studios' expansive definition. Similarly, because Hotfile does not issue company-supplied computers (its personnel must use personal computers), Hotfile and Mr. Titov cannot complain that they must search their employees' personal computers for this information. So long as the third parties, independent contractors, and employees used their personal computers while doing work on Hotfile's behalf, the information is discoverable. *See Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558–59 (S.D.N.Y. 1994). Thus, by September 26, 2011, Hotfile and Mr. Titov will produce the content files uploaded and downloaded by their personnel.

The movie studios also request that Hotfile provide it with a list naming all potential investors in Hotfile and documents concerning the presentations, solicitations, and materials provided to potential investors. Again claiming a trade secret, Hotfile and Mr. Titov do not want to produce this information. I do not, however, find that Hotfile or Mr. Titov will be harmed by the disclosure of this information.

In an affidavit, Mr. Titov asserts that Hotfile may be harmed by this disclosure because disclosure "might deter the potential investor from being willing to invest in Hotfile" [D.E. 130-1 ¶ 5]. This sort of nebulous harm, however, is insufficient to prevent disclosure. A party, rather, must demonstrate that "disclosure will work a clearly defined and very serious injury." *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985) (quoting *Citicorp v. Interbank Card Ass'n*, 478 F. Supp. 756, 765 (S.D.N.Y. 1979)). That disclosing the name of investors and materials shown to investors "might" deter future investments is insufficient. In contrast, disclosure of Hotfile's source code or schema could allow anyone to plug the code into a compiler and, within hours, have access to thousands of man-hours worth of work. By September 26, 2011, therefore, Hotfile and Mr. Titov shall produce the identities of potential investors and documents concerning presentations, solicitations, materials provided to, and communications with potential investors.

In an interrogatory, the movie studios asked that Hotfile and Mr. Titov "[i]dentify each user whose access to the Hotfile website any Defendant or Hotfile Entity has ever terminated, limited, suspended, or otherwise penalized" [D.E. 110 at 10]. The interrogatory asks that Hotfile and Mr. Titov explain the specific reasons for the terminations.

Hotfile and Mr. Titov responded by providing a spreadsheet. The spreadsheet contains all terminations on hotfile.com. Next to those terminations appear explanations for the termination. Among the terms, the spreadsheet uses terms like "cheater checks," "cp," "spam," "nazi," and "Repeated Copyright Infringement" [D.E. 112-4 at 3–5]. Hotfile and Mr. Titov believe this spreadsheet suffices under Rule 33(d), which allows a party to answer an interrogatory through its business records. The movie studios retort that the spreadsheet is insufficient because it contains incomprehensible terms like "nazi." Hotfile and Mr. Titov counter that the spreadsheet lists "Repeated Copyright Infringement" as a reason for termination. And the other terminations—including "nazi" and "cp"—were not based on copyright infringement. While the

2

spreadsheet may suffice under Rule 33(d), the movie studios have no way of verifying this without a legend explaining what terms like "cp" or "nazi" stand for. Accordingly, by September 26, 2011, Hotfile and Mr. Titov shall provide the movie studios with a legend explaining those terms that are not facially obvious.

Next, the movie studios request more information about Hotfile's relationship with Hotfile operators. Hotfile and Mr. Titov object to this request as cumulative. Specifically, Mr. Titov and Hotfile believe that their response to a similar interrogatory and their general production of documents should be enough. But an interrogatory and a request for production of document are not the same thing. And Mr. Titov's and Hotfile's production of documents in other requests is not necessarily inclusive of all documents related to Hotfile's relationship with Hotfile operators. Hotfile and Mr. Titov contend that the term "Hotfile Entity," defined, essentially, as any entity, is overbroad. Though the term is broad, the movie studios need to discover what other entities may have played a role in Hotfile's alleged infringement—that is, the movie studios can seek discovery about the "Doe" defendants that supposedly helped and contributed to the infringement. *See United States ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1036 (S.D. Fla. 2007). Therefore, I find Mr. Titov's and Hotfile's argument unpersuasive, and, by September 26, 2011, they must produce all documents requested by this discovery request.

The movie studios finally seek that Hotfile Corp. and Anton Titov produce Hotfile's schema for all databases used in operation of www.hotfile.com. The schema is, essentially, the database structure of hotfile.com. Claiming that the schema is a trade secret and it is not necessary to the movie studios' claims, Hotfile and Mr. Titov assert that the movie studios should not be given access to the schema.[1]

As I have previously explained in this case, "there is no absolute privilege that immunizes trade secrets and similar confidential information from discovery." *Empire of Carolina*, 108 F.R.D. at 326. When seeking protection of a trade secret from a discovery request, a party must first show that the information requested constitutes a trade secret. Then the party must show that the disclosure

---

[1] The movie studios, in their reply, assert that they do not seek the schema's source code, but the request for production contravenes this assertion. The movie studios asked for the "[s]chema for all databases used in operation of all versions of the Hotfile Website" [D.E. 110 at 15].

of that trade secret would harm it. It then becomes the burden of the party seeking the trade secret to show that the trade secret's production is both relevant and necessary to the lawsuit. *See id.*

Hotfile and Mr. Titov have shown that the schema is a trade secret. It took thousands of man-hours to code the schema and years to refine it [D.E. 130-1 ¶ 7]. And, like the source code, anyone with access to the schema would have automatic access to all that labor.

Because the schema contains information showing how Hotfile collects data and therefore relevant to Hotfile's and Mr. Titov's knowledge of illegal activity on hotfile.com. It also asserts that the information is necessary because it shows data not visible through other means.

This information is relevant, but I cannot agree with its characterization as "necessary." As Hotfile and Mr. Titov underscore, I have already ordered them to produce their content and user data, and this data should certainly show Hotfile's and Mr. Titov's knowledge of illegal activity. I do not find the movie studios' request to be necessary and therefore deny their motion to compel the schema. *See Viacom Int'l, Inc. v. Youtube Inc.*, 253 F.R.D. 256, 263–64 (S.D.N.Y. 2008) (denying motion for production of schema by Google).

Done and ordered in chambers in Miami, Florida, this 14th day of September, 2011.

/s/ Adalberto Jordan
Adalberto Jordan
United States District Judge

Copy to:     All counsel of record