UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
                                                              /

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
                                                              /

**WARNER BROS. ENTERTAINMENT INC.S' OPPOSITION TO DEFENDANT
HOTFILE CORPORATION'S MOTION FOR TWO-DAY ENLARGEMENT OF TIME
TO AMEND COUNTERCLAIM**

Defendant/Counterclaimant Hotfile Corp. ("Hotfile") seeks an extension of a deadline that was stipulated to by Hotfile and Plaintiff/Counterdefendant Warner Bros. Entertainment Inc. ("Warner") after extensive negotiations. That deadline was subsequently ordered by the Court. Hotfile is simply trying to renege on a heavily negotiated bargain and asking the Court to undo one side of it. To make matters worse, Hotfile knew weeks ago about the additional data fields

1

with which Warner supplemented its production last week, did not press the issue weeks ago when Warner objected to producing those fields, and was told explicitly a week ago that Warner would not agree to an extension. And yet Hotfile waited *until the day of the Court-ordered deadline* to file a motion for an extension. As a result, Hotfile is not "asking" the Court for an extension; Hotfile is "taking" the extension. Warner respectfully requests that the Court deny Hotfile's request for an extension and reject Hotfile's Second Amended Counterclaim as untimely.

## I. HOTFILE CANNOT EXCUSE ITS VIOLATION OF THE COURT'S ORDER BY FILING A LAST-MINUTE MOTION FOR EXTENSION ON THE DAY ITS SECOND AMENDED COUNTERCLAIM IS DUE.

Hotfile's deadline to file its second amended counterclaim is not a deadline that arises out of the Federal Rules of Civil Procedure or a mere agreement among the parties. It is a deadline that was ordered by this Court – an Order that Hotfile's motion for extension does not even mention. *See* Order on Joint Motion for Voluntary Dismissal of Second and Third Counts of Hotfile's First Amended Counterclaim and for Amendment of First Count, and for Extending Time to Answer, October 5, 2011 (ECF No. 155) ("Hotfile shall file a Second Amended Answer incorporating the revised Counterclaim no later than fourteen days after the completion of the first day of Hotfile's 30(b)(6) deposition of Plaintiff and Counterdefendant Warner Bros. Entertainment.").

Hotfile is not permitted to disregard that Court Order and unilaterally help itself to an extension by filing its motion on the very day its second amended counterclaim is due. As this Court has made clear, filing a motion for an extension of time on the day that the filing is due "is not a substitute for tendering the [filing] as due." *Ingram v. Sch. Bd. of Miami-Dade County*, No. 03-21019-CIV, 2005 WL 6103744, at *1 (S.D. Fla. May 20, 2005) (affirming denial of extension of court-ordered deadlines to file response and to amend stipulation where movant had filed the

motion for extension on the due date); *see also Wajcman v. Hartman & Tyner, Inc.*, No. 07-61472-CIV, 2008 WL 4613053, at *1 (S.D. Fla. Oct. 15, 2008). "Filing motions in lieu of briefs, a form of self-help extension, has become increasingly common but is not authorized by any rule, either national or local. . . . If a party needs more time, a request for an extension must be filed in advance of the due date." *Ramos v. Ashcroft*, 371 F.3d 948, 949-50 (7th Cir. 2004) (cited in *Ingram*, 2005 WL 6103744, at *1).

Here, Hotfile knew weeks ago about the so-called "columns of data" that Warner had originally objected to producing well before the Warner Rule 30(b)(6) deposition.[1] Yet it did not move for an extension then. Warner's counsel advised Hotfile a full week ago that Warner would not agree to an extension. Hotfile did not move for an extension then. Instead, Hotfile waited until the day its filing was due. In doing so, Hotfile ensured that there would be no time for the Court to hear, much less decide, its motion. Hotfile ensured itself of a self-help extension.

Moreover, the "columns of data" that Hotfile proffers as an excuse are hardly necessary for Hotfile to make its counterclaim *allegations* – and certainly cannot justify disregarding a Court order. As discussed in Part IV *infra*, a party does not need, and is not entitled to,

---

[1] Hotfile's claim that it learned about the data fields "for the first time" at the Warner deposition is, charitably, exaggerated. It has known of this data for a month, if not longer. Four weeks ago, in September, Warner informed Hotfile that it would not be producing certain data regarding its takedown notices because the data was either irrelevant or covered by the Court's September 1, 2011 Protective Order (ECF No. 138) granting plaintiffs' motion for a protective order as to sensitive antipiracy materials. Warner specifically informed Hotfile at the time that it did not intend to produce, due to the Protective Order, the data around which Hotfile's present motion for an extension is centered – data showing information about the third-party sites on which Warner had located "links" to infringing files hosted on Hotfile. Moreover, Hotfile acknowledged Warner's position in writing and did not press the issue at the time. A week before the deposition, moreover (three weeks ago), Warner produced a document confirming the fields of data it retained regarding those third-party sites. And at a bare minimum, Hotfile admits that it has known about the "columns of data" for at least two weeks, since the Warner deposition.

3

discovery *before* it asserts a claim or makes an allegation. Indeed, although Hotfile now conveniently asserts that these data fields are so important as to justify disregarding a Court-ordered deadline, Hotfile did not request the data fields in September when Warner specifically informed Hotfile that it regarded the data as covered by the September 1, 2011 Protective Order, did not request the data fields three weeks ago when Warner produced documents confirming the data Warner stores in its system, and did not request the data fields at the deposition two weeks ago. It was only days later, in a telephone call with Warner's counsel, that Hotfile mentioned it wanted these data fields. Warner's counsel told Hotfile that Warner would likely produce the additional data fields, but that Hotfile should communicate the request by email so everyone could understand what Hotfile was requesting. Hotfile never made that request. Finally, five days after the deposition, *Warner's counsel* sent Hotfile an email asking if Hotfile still wanted the additional data fields. When Hotfile responded that it did, Warner immediately compiled the data and produced it three days later (and offered to do so even earlier, except Hotfile delayed nearly an entire day in responding to a technical question about the method of production). The first time Hotfile ever suggested that it wanted more time on account of these data fields was today.[2]

    Hotfile claims that there is "no prejudice" from its disregarding the Court's order. But that is not the standard. Only when compliance is not possible may a party's non-compliance with a court order be excused. *See Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990) (must show "inability to comply" with court order "that goes beyond mere

---

[2] When Warner told Hotfile a week ago that it would not agree to an extension "under any circumstances," the requested extension and Warner's response were not related to the data fields that Hotfile now claims it needs. A week ago, Hotfile was pressing for an extension claiming it needed to take the deposition of a third-party vendor before it could file its second amended counterclaim.

assertion of inability" (internal quotations omitted)); *see also Bank of Mongolia v. M&P Global Fin. Servs., Inc.*, No. 08-60623-CIV, 2009 WL 3294810, at *2 (S.D. Fla. Oct. 13, 2009) (counsel's other work demands did not excuse compliance with court-ordered deadline because defendants were aware of deadline and could have added temporary assistance in order to meet deadline). Here, there was no impediment to compliance. Hotfile could have filed its second amended counterclaim today as ordered. If Hotfile genuinely believed it had an argument to justify yet another amendment based on the "columns of data," then it could have made that argument in the context of seeking another amendment of its counterclaim. Hotfile's disregard for the Court-ordered deadline was by choice, not necessity.[3]

## II. THE 14-DAY DEADLINE WAS AN EXTENSIVELY NEGOTIATED COMPROMISE.

The deadline for Hotfile to file its second amended counterclaim does not arise in a vacuum. Hotfile spent months threatening to file a counterclaim against Warner. When it finally did, Hotfile alleged knowing material misrepresentations by Warner – but failed to identify each of the files that was supposedly the subject of an alleged misrepresentation. Thus, Hotfile's original counterclaim (ECF No. 121) and First Amended Counterclaim (ECF No. 144) failed to comply with Rule 9(b) of the Federal Rules, which requires claims of misrepresentation or mistake to be pleaded with particularity. *See, e.g.*, *U.S. ex rel. Clausen v. Laboratory Corp. of Am., Inc*., 290 F.3d 1301, 1308-09 (11th Cir. 2002); *Holguin v. Celebrity Cruises, Inc.,* No. 10-20215-CIV, 2010 WL 1837808 (S.D. Fla. May 4, 2010). This was no mere technical violation:

---

[3] Warner, moreover, *is* prejudiced. It is entitled to know the claims against it. Discovery in this action is closing in two months. Warner may have hundreds of individual files to investigate. If Warner determines that it needs expert testimony as part of its defense, its expert's report would be due in just over three weeks. Moreover, Warner bargained for a firm deadline by which Hotfile would need to disclose each of its claims. It is fundamentally unfair for Hotfile to disregard that deadline in an effort to try to add more claims. The parties so heavily negotiated the filing deadline because it matters.

5

Warner could not fully investigate Hotfile's claims against it, and Hotfile's deliberately inflammatory allegations were being reported in the media while Warner was deprived of the specifics needed to adequately respond.

In the midst of Warner's preparation of a motion to dismiss the counterclaims, Hotfile and Warner reached a global stipulation that, among other things, required Hotfile to provide a "definitive list" of files that Hotfile contends were taken down in violation of Section 512(f) of the DMCA – and a deadline for doing so. *See* Joint Motion and Memorandum of Law of the Parties for Voluntary Dismissal of Second and Third Counts of Hotfile's First Amended Counterclaim and for Amendment of First Count, Sept. 22, 2011 (ECF No. 151). This deadline was not arrived at casually. Warner wanted Hotfile to file an amendment immediately, so that it could prepare its defense. Hotfile wanted discovery first, especially a Rule 30(b)(6) deposition of Warner. Needing a date certain when it would know the specific claims against it, Warner only reluctantly agreed. Thereafter, the parties specifically negotiated the amount of time following the Warner deposition that Hotfile should have. Even after 14 days was agreed to, the parties negotiated that the start of the 14-day period would be "after completion of one day" of the deposition. ECF No. 151 at 3, ¶ 4. Warner insisted on this provision (over Hotfile's preference for the "conclusion" of the Warner deposition), knowing that Hotfile could otherwise further delay providing Warner with a "definitive list" of files in suit by extending the deposition. *Id.*

Under these circumstances, when a term (here the filing date) is one part of a multi-part negotiation and resolution of issues, courts rightly are hesitant to step in and change the terms, and thereby modify one side of a compromise. *Cf. Valley Drug Co. v. Geneva Pharms., Inc.*, 262 Fed. Appx. 215, 218 (11th Cir. 2008) ("[W]here the parties actually negotiated the deadline,

the court must treat it as a contract term that cannot be altered."); *Pigford v. Johanns*, 416 F.3d 12, 21 (D.C. Cir. 2005)  ("As part of the bargain struck between the parties and approved by the Court in the Order of July 14, 2000, class counsel agreed to meet the 120 day deadline in return for the government's agreement to admit more than 1,100 Track A claimants into the class who otherwise would have been excluded. . . .  If the district court had granted the requested relief from the deadlines, the government would have lost the benefit of its bargain - certainty and finality as to its maximum liability as of the agreed upon date - while the claimant class would have recovered the bargained-away right to compensation for claimants filing review petitions beyond the stipulated deadlines (as extended by the court)." (internal quotations omitted)); *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 447-48 (S.D.N.Y. 2004) (refusing to extend deadline in settlement agreement between parties because "the bar date in this case was agreed upon by the parties, not selected by the Court"; the date was "specifically the subject of negotiation and compromise by counsel"; and "it is an elementary principle of contract law that when parties bargain for a mutually-accepted date, that date has a special legal significance to the agreement" (internal quotations and citations omitted)).

### III.   THE PARTIES CONTEMPLATED LATER-PRODUCED DOCUMENTS AND DID NOT CONDITION THE 14-DAY DEADLINE UPON COMPLETION OF DOCUMENT PRODUCTION.

Here there is even *more* reason not to upend the parties' agreed deadline, especially on account of a claim about a supplemental data production.  Despite Hotfile's bluster about later-produced data fields, the parties in fact fully contemplated at the time of their stipulation that there undoubtedly would be later-produced documents.  There have been ongoing meet-and-confer sessions about supplementing productions and about documents and data both sides believe should have been produced.

Against that backdrop, the parties negotiated their agreement. The parties were very specific about the condition that would trigger the start of the 14-day period. It was not the start of the Warner deposition, nor was it the conclusion; rather it was the end of the first day. ECF No. 151 at 3, ¶ 4. That level of precision was important to both sides because this deadline mattered. Notably, although the parties were in the middle of numerous discussions and disputes about document production, they did not make the 14-day deadline in any way contingent upon the production of documents. That, too, was not accidental. Warner did not want Hotfile to be able to delay providing the "definitive list" of alleged wrongful takedowns by claiming – inevitably – that it still thought it was entitled to more documents. Thus, the parties specifically negotiated the trigger for the start of the 14-day period and completion of document production was not, and is not, a consideration.

## IV. HOTFILE DOES NOT NEED AND IS NOT ENTITLED TO ANY DISCOVERY TO MAKE ALLEGATIONS OR TO ADD CLAIMS.

Hotfile is using the "columns of data" as a pretext to get more time. Hotfile does not need, and is not entitled to, any discovery – much less a complete document production – in order to make allegations in a counterclaim. It is well established that a party is not entitled to take discovery to find out whether a claim exists or to make additional allegations of wrongdoing beyond those alleged. *See*, *e.g.*, *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08 Civ. 6469(DAB)(JCF), 2011 WL 830624, at *1-2 (S.D.N.Y. March 9, 2011) (no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings); *Tottenham v. Trans World Gaming Corp.*, No. 00 Civ. 7697(WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (discovery may not be used as a "fishing expedition to discover additional instances of wrongdoing beyond those already alleged"); *Abrahams v. Young & Rubicam*, 979 F.Supp. 122, 129 (D. Conn.1997) ("The purpose of discovery is to find out

8

additional facts about a well-pleaded claim, not to find out whether such a claim exists." (internal quotations omitted)).

That rule applies with even more force here. The parties' stipulation requires that Hotfile "make no further substantive edits" to its counterclaim other than identifying the specific files it claims Warner knowingly took down in error, ECF No. 151 at 3, ¶4, and to do that, Hotfile has *always* had all the data it needed. Hotfile had an extensive database showing each Warner notice of infringement, and the content files that were taken down as a result, before discovery in this case even started. If Hotfile believed that Warner was requesting the takedown of works that were not Warner properties, all Hotfile had to do was look at the content files that Warner noticed for takedown.

Despite all of this, Warner bent over backwards to expedite production of documents in response to Hotfile's demand for counterclaim discovery – producing its documents before its objections and responses to Hotfile's Requests for Production were even due – and provided Hotfile a Rule 30(b)(6) witness on all counterclaim issues. Hotfile's excuse that it could not meet its agreed and Court-ordered deadline because of a supplemental production of a couple of fields of data simply cannot bear scrutiny.[4]

## **CONCLUSION**

For the foregoing reasons, Hotfile's motion should be denied and its second amended counterclaim should be rejected as untimely filed.

---

[4] Hotfile's attempt to paint Warner's counsel as discourteous for refusing to accommodate the "temporary unavailab[ility]" of Hotfile's local counsel is simply unfair. In truth, Warner told Hotfile that it would agree to extend the *filing* deadline provided Hotfile *served* Warner with the second amended counterclaim on time. Warner did that specifically to accommodate any filing difficulties caused by the unavailability of local counsel.

DATED: October 26, 2011

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: (305) 461-6880
Facsimile: (305) 461-6887

MOTION PICTURE ASSOCIATION
 OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Warner*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 26th day of October, 2011, I served the following document on all counsel of record on the attached service list via the Court's CM/ECF filing system:

**Warner Bros. Entertainment Inc.'s Opposition to Defendant Hotfile Corporation's Motion for Two-Day Enlargement of Time to Amend Counterclaim**

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Karen L. Stetson
Karen L. Stetson

## SERVICE LIST

### Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
### CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*