UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

_____/

**ANSWER AND DEFENSES OF WARNER BROS. ENTERTAINMENT, INC. TO
HOTFILE CORP.'S SECOND AMENDED COUNTERCLAIM**

## ANSWER

1.        Warner admits that it is a famous and respected Hollywood studio.  Warner further admits that it holds copyrights to thousands of movies and television shows; and that Warner, along with other motion picture studios, filed this action.  Except as expressly admitted, Warner denies the allegations contained in Paragraph 1.

2.        Warner admits that it used a Special Rightsholder Account ("SRA") provided by Hotfile to notify Hotfile of files hosted on the Hotfile.com website that Warner or its agents had a good faith belief were infringing.  Warner lacks information sufficient to admit or deny the allegations in Paragraph 2 regarding Hotfile's purposes for designing the SRA or its state of mind in granting Warner the ability to use the SRA, and therefore denies those allegations. Except as expressly admitted, Warner denies the allegations in Paragraph 2.

3.        Paragraph 3 states a legal conclusion to which no response is required.

4.        Paragraph 4 states a legal conclusion to which no response is required.

5.        Paragraph 5 states a legal conclusion to which no response is required.

6.        Warner admits that Hotfile Corporation is a Panamanian corporation and that it operates the Hotfile website, which permits users to share digital files.  Insofar as Paragraph 6 characterizes Hotfile's "principal place of business" as being outside the United States, it states a legal conclusion to which no response is required.  Except as expressly admitted or as no response is necessary, Warner denies the allegations in Paragraph 6.

7.        Warner admits the allegations contained in Paragraph 7.

8.        Warner admits that Hotfile is a website that allows its users to upload and download digital files, including large video files.  Except as expressly admitted, Warner lacks information sufficient to admit or deny the allegations in Paragraph 8 and therefore denies them.

9.        Warner denies that Hotfile has worked proactively with Warner to devise an effective notice and takedown procedure.  Warner otherwise lacks information sufficient to admit or deny the allegations in Paragraph 9 and therefore denies them.

10.       Warner admits that Hotfile's website has asserted that Hotfile is protected by Section 512(c) of the DMCA, but denies that the website contained in April 2009 the language cited in the second sentence of Paragraph 10.  Upon information and belief, Hotfile did not add this language until substantially later.  Except as expressly admitted, Warner lacks information sufficient to admit or deny the allegations in Paragraph 10 and therefore denies them.

2

11.     Warner admits facilitating cooperation between copyright owners and service providers to address online copyright infringement was among Congress's reasons for passing the DMCA.  Except as expressly admitted, Warner denies the allegations contained in Paragraph 11.

12.     Warner admits that Michael Bentkover is an individual employed by Warner, that his title is Manager, Forensics and Enforcement, Worldwide Anti-Piracy Operations, that he works out of Warner's Burbank, CA offices, and that he reports to a Warner Senior Vice President & Intellectual Property Counsel.  Warner further admits that Mr. Bentkover sent notifications of infringement to Hotfile on Warner's behalf to the abuse@hotfile.com email address beginning around March 2009.  The statement in Paragraph 12 that this email address was the email of a "Designated Agent" states a legal conclusion to which no response is required, however, to the extent a response is required, Warner denies that abuse@hotfile.com was the email address of a designated agent under the DMCA.  Warner further admits that Mr. Bentkover requested a "takedown tool" and stated that such a tool would facilitate the takedown notice process.  Except as expressly admitted, Warner denies the allegations contained in Paragraph 12.

13.     Warner admits that Hotfile provided Warner access to the SRA in August 2009, and that the account was listed under Michael Bentkover's email address.  Warner further admits that the SRA permitted Warner to provide Hotfile with URLs or a batch file containing URLs to notify Hotfile of links that Warner had a good faith belief were infringing.  Except as expressly admitted, Warner lacks information sufficient to admit or deny the allegations in Paragraph 13 and therefore denies them.

14.     Warner lacks information sufficient to admit or deny Paragraph 14's allegations regarding the internal functioning of the Hotfile system or the SRA, and therefore denies them. Warner otherwise denies the allegations in Paragraph 14.

15.     Warner admits that an effective takedown notice under the DMCA requires a "statement that the complaining party has a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law" and a "statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed," or, in the alternative, language that complies substantially with these

requirements.  17 U.S.C. § 512(c)(1)(3)(A)(v) & (c)(1)(3)(A)(vi).  Warner further admits that it made such statements, and believed such statements to be accurate, as to each of use of the SRA. Warner lacks information sufficient to admit or deny the allegations in Paragraph 15 regarding Hotfile's state of mind and therefore denies them.  Except as expressly admitted, Warner otherwise denies the allegations in Paragraph 15.

16.     Warner admits that, as of September 2010, Warner had access to five complimentary premium accounts.  Warner further admits that it did not (and did not need to) download every file it believed to be infringing prior to submitting the file's URL to the SRA. Warner lacks information sufficient to admit or deny Hotfile's intentions or beliefs regarding Warner's use of the premium accounts and therefore denies them.  Except as expressly admitted, Warner denies the allegations contained in Paragraph 16.

17.     Warner admits that on four or five occasions Bentkover requested and received increases in the number of files that could be deleted via the SRA, and that the limit was ultimately increased at the end of October 2010 to a level beyond Warner's likely utilization in a single day (100,000,000).  Except as expressly admitted, Warner lacks information sufficient to admit or deny the allegations in Paragraph 17 and therefore denies them.

18.     Warner admits that it approached Hotfile in the spring of 2010 to explore a business proposal that would redirect Hotfile users seeking unauthorized Warner content hosted on Hotfile.com to Internet sites authorized to host Warner content.  Warner further admits that the business proposal did not advance beyond a preliminary exchange of emails.  Warner lacks information sufficient to admit or deny the allegations regarding Hotfile's beliefs or state of mind, and therefore denies them.  Except as expressly admitted, Warner otherwise denies the allegations contained in Paragraph 18.

19.     Warner admits that Hotfile contacted Warner in September 2010 to inquire whether Didier Wang and Bret Boivin were authorized to send takedown notices on behalf of Warner.  Warner admits that it responded that these two individuals were employees in Warner's international offices and were authorized to send takedown notices on behalf of Warner.  Except as expressly admitted herein, Warner lacks information sufficient to admit or deny the allegations in Paragraph 19 regarding Hotfile's state of mind and therefore denies them.  Except as expressly admitted, Warner denies the allegations contained in Paragraph 19.

20.     Warner denies the allegations contained in Paragraph 20.

21.     Warner admits that it continued to use the SRA tool to request removal of files from Hotfile.com during the period from late 2010 to early 2011.  Warner further admits that, given the volume and pace of new infringements on Hotfile, Warner could not practically download and view the contents of each file prior to requesting that it be taken down through use of the SRA tool.  Except as expressly admitted, Warner denies the allegations contained in Paragraph 20.

22.     Warner admits that a file requested to be removed by Warner was software that had been posted alongside infringing Warner content in order to facilitate the rapid downloading of the infringing Warner content, and that Warner was not the owner of the software itself. Warner further admits that, given the volume and pace of new infringements on Hotfile, Warner could not practically download and view the contents of each file prior to requesting that it be taken down through use of the SRA tool.  Except as expressly admitted, Warner lacks information sufficient to admit or deny the allegations in Paragraph 22 and therefore denies them.

23.     Warner admits that it continued using the SRA tool in the time surrounding the filing of the lawsuit.  Warner further admits that the SRA was used during that time, albeit unintentionally, to delete some gaming software for which Warner is a distributor, but denies that Warner has not been authorized by the copyright owner to issue the notices of infringement of which Hotfile complains.  Warner further admits that the users who uploaded the gaming software in question to Hotfile on a handful of occasions inserted the word "demo" into the names they assigned to the URLs.  Except as expressly admitted, Warner denies the allegations of Paragraph 23.

24.      Warner admits that Hotfile requested a Rule 30(b)(6) deposition in early April 2011 to inquire into certain deletions made through Warner's SRA tool.  Warner admits that Attachment A to Hotfile's Second Amended Counterclaim is substantially similar to the list attached as Attachment A to the April 5, 2011, Deposition Notice.  Warner admits that 30(b)(6) deposition was taken on October 12, 2011.  Except as expressly admitted, Warner otherwise denies the allegations contained in Paragraph 24.

25.     Warner denies each and every allegation contained in Paragraph 25.

26.     Warner admits that the SRA was used in early February, albeit unintentionally, to delete some gaming software for which Warner is a distributor, but denies that Warner has not

5

been authorized by the copyright owner to issue the notices of infringement of which Hotfile complains.  Warner further admits that Exhibit B contains what appear to be the URLs, Titles, and dates for which the SRA was used to request removal.  Except as expressly admitted, Warner denies the allegations of Paragraph 26.

27.     Warner admits that, as one component of its takedown process, Warner utilizes automated software to assist in locating files on the Internet believed to contain unauthorized Warner content.  Warner admits that it scans and issues takedowns for *The Box* (2009), a movie in which Warner owns the copyrights.  Warner admits that its records indicate that URLs containing the phrases "The Box That Changed Britain" and "Cancer Step Outsider of the Box" were requested for takedown through use of the SRA tool.  Except as expressly admitted herein, Warner denies the allegations contained in Paragraph 27.

28.     Warner admits that a URL associated with the title "The Box" was deleted on April 17, 2011.  Warner lacks information sufficient to admit or deny allegations regarding the content associated with the deleted URL and therefore denies the allegation.  Except as expressly admitted, Warner otherwise denies the allegations contained in Paragraph 28.

29.     Warner admits that it owns the copyrights to, and issues takedown notices for, the following titles: "The Closer," "Seven," "O.C.," "The Mask," "The Town," and "Unknown." Warner agrees that Exhibit C attached to Hotfile's Second Amended Counterclaim appear to list the URLs, title, and time associated with Warner notices submitted through the SRA.  Except as expressly admitted, Warner denies the allegations contained in Paragraph 29.

30.      Warner admits that it owns the copyrights to, and issues takedown notices for, *The Rite* (2011).  Warner further admits that it scans for infringing content and issues takedown notices to filesonic.com.  Warner further admits that Exhibit D attached to Hotfile's Second Amended Counterclaim appears to list the URLS, title, and "ACTIONTIME" associated with Warner notices submitted through the SRA.  Except as expressly admitted herein, Warner denies the allegations contained in Paragraph 30.

31.     Warner admits that it owns the copyrights to, and issues takedown notices for, the television show "Fringe."  Warner admits that its takedown records list a URL with the following:  "http://hotfile.com/contacts.html and give them the details of where the link was posted and the link and they will deal to the @sshole who posted the fake."  Except as expressly

admitted, Warner lacks information sufficient to admit or deny the allegations contained in Paragraph 31 and therefore denies them.

32.     Warner admits that it has previously testified that it employs "technologies for locating infringing content on linking sites."  (Dkt. #106-14 ¶ 7).  Warner further admits that in July 2011, a vendor retained by Warner to address infringements of Harry Potter films requested the removal from an unrelated website (not from Hotfile) of a Portuguese-language Harry Potter text that was not a copy of a Harry Potter film, although the text may have otherwise infringed copyright, and that Warner promptly retracted the notice upon learning that its vendor had requested the removal of a file was not Warner's movie.  Except as expressly admitted, Warner denies the allegations contained in Paragraph 32.

33.     Warner admits that it "primarily investigates the infringement of its works on locker sites using internal personnel and technology that Warner developed at considerable expense, and is continuously updating and refining."  (Dkt. #106-4 ¶ 2).  Except as expressly admitted, Warner denies the allegations contained in Paragraph 33.

34.     Warner admits that it has access to five premium Hotfile accounts.  Except as expressly admitted, Warner denies the allegations contained in Paragraph 34.

35.     Warner denies each and every allegation contained in Paragraph 35.

36.     Warner admits that it, as a matter of courtesy and politeness, on occasion thanked Hotfile for providing the SRA or for removing files in response to takedown notices.  Except as expressly admitted, Warner denies the allegations contained in Paragraph 36.

37.     Warner lacks information sufficient to admit or deny allegations regarding Hotfile's notice-and-takedown regime or Hotfile's intentions regarding the regime, and Warner therefore denies these allegations.  Warner otherwise denies the allegations contained in Paragraph 37.

38.     Warner lacks information sufficient to admit or deny the allegations in Paragraph 38 and therefore denies them.

## ANSWERS TO FIRST COUNT

### (Violation of the DMCA, 17 U.S.C. § 512(f))

39.      Warner incorporates by reference its responses to paragraphs 1 through 38 as if fully set forth herein.

40.     Warner agrees that the files identified in Exhibits A – D of the Second Amended Counterclaim constitute the "definitive list" upon which Hotfile claims a violation of 17 U.S.C. § 512(f).  Except as expressly admitted herein, Warner denies the allegations contained in Paragraph 40.

41.     Warner denies the allegations contained in Paragraph 41.

42.     Warner denies the allegations contained in Paragraph 42.

43.     Warner lacks information sufficient to admit or deny the allegations contained in Paragraph 43 and therefore denies them.

44.     Paragraph 44 states a legal conclusion to which no response is required.  Insofar as a response is required, Warner lacks information sufficient to admit or deny the allegations in Paragraph 44 regarding the state of mind of any software's creators and therefore denies them, and otherwise denies the allegations contained in Paragraph 44.

45.     Warner denies the allegations contained in Paragraph 45.

46.     Warner denies the allegations contained in Paragraph 46.

## DEFENSES AND AFFIRMATIVE DEFENSES

1.     Hotfile's Counterclaim is barred because it fails to state a claim upon which relief can be granted.

2.     Hotfile's Counterclaim is barred, insofar as it alleges wrongful takedown notices beyond the "definitive list" represented by Exhibits A-D to the Counterclaim, by Federal Rule of Civil Procedure 9(b), which requires a party to plead claims of "fraud or mistake" with particularity, as well as by the parties' stipulation (Dkt. #151, ¶ 4).

3.     Hotfile's Counterclaim is barred in whole or in part by the doctrine of unclean hands.  Upon information and belief, the substantial majority of the files that Hotfile claims Warner wrongfully took down were in fact infringing and were not authorized by the copyright owners to be distributed through or hosted on Hotfile.  Any "harm" Hotfile suffered from the removal of those files is limited to Hotfile's losing the ability to profit from the infringement of the works of those other copyright owners.  Because of unclean hands, Hotfile's Counterclaim is barred.

4.     Hotfile's Counterclaim is barred in whole or in part by Hotfile's failure to mitigate its damages.  The DMCA specifically provides for a counternotice procedure so that

files mistakenly requested for removal can be restored. *See* 17 U.S.C. § 512(g)(3). Upon information and belief, at all times relevant, Hotfile failed to implement the process contemplated by Section 512(g), and therefore failed to mitigate its harm from mistaken takedown notifications.

5.     Hotfile's Counterclaim is barred in whole or in part by the doctrines of laches and estoppel. Upon information and belief, Hotfile knew of the occasional mistaken takedown requested by Warner and never informed Warner, at a time when Warner could have used that information to prevent future errors of that kind and otherwise continued improving the accuracy and reliability of its process for issuing notifications requesting the removal of infringing files. Instead, Hotfile allowed such errors to continue in order to have something to sue Warner over and with which to embarrass Warner as a response to Warner's copyright infringement claims against Hotfile. Because of laches and estoppels, Hotfile's Counterclaim is barred.

6.     Hotfile's Counterclaim is barred in whole or in part by lack of standing. Upon information and belief, Hotfile has not suffered damages as required by 17 U.S.C. § 512(f) and thus lacks standing to bring its Counterclaim against Warner.

## PRAYER FOR RELIEF

WHEREFORE, Warner prays for the following relief:

1.     That Hotfile take nothing by way of its Counterclaim, and that the Counterclaim be dismissed with prejudice and that judgment be entered in favor of Warner;

2.     That Warner be awarded its costs including reasonable attorney's fees incurred herein pursuant to 17 U.S.C. § 505, and costs pursuant to 28 U.S.C. § 1920; and

3.     For such other and further relief as the Court deems just and proper.

Dated:  November 7, 2011

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: (305) 461-6880
Facsimile:  (305) 461-6887

MOTION PICTURE ASSOCIATION
 OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax:  (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile:  (202) 639-6066

*Attorneys for Plaintiffs and Counterdefendant*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th Day of November, 2011, I served the following

documents on all counsel of record on the attached service list by means of the Court's ECF

System:

**Answer and Defenses of Warner Bros. Entertainment Inc. to Hotfile Corp.'s Second
Amended Counterclaim**

By: /s/ Karen L. Stetson
Karen L. Stetson

11

**SERVICE LIST**

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**


FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and
Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*