UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

     *Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

     *Defendants.*

_____/

HOTFILE CORP.,

     *Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

     *Counter-Defendant.*

_____/

**MOTION AND MEMORANDUM OF LAW OF DEFENDANT AND
COUNTER-CLAIMANT HOTFILE CORPORATION TO COMPEL DISCOVERY
FROM PLAINTIFF AND COUNTER-DEFENDANT WARNER BROS.
<u>ENTERTAINMENT INC. OF WARNER'S TAKEDOWN INVESTIGATIONS</u>**

CASE NO. 11-20427-WILLIAMS-TURNOFF

**INTRODUCTION**

Defendant and Counterclaimant Hotfile Corp ("Hotfile") has filed a counterclaim for violations of 17 U.S.C. § 512(f) arising from repeated abuse of the Digital Millennium Copyright Act's notice and takedown regime by Plaintiff and Counter-Defendant, Warner Bros. Entertainment, Inc. ("Warner").  Warner's anti-piracy procedures and techniques resulted in thousands of improper deletions of materials unrelated to Warner that are at issue in Hotfile's § 512(f) claim.  Warner is resisting important discovery by claiming work product protection over documents showing the results of its investigation into its faulty anti-piracy system, while at the same time relying on selectively on these same results to support its "good faith" defense to Hotfile's counterclaim.  Warner's attempt to resist discovery improperly uses asserted work product protection as both a sword and a shield, precluding discovery of crucial information that it intends to rely upon in its defense.  Warner has waived any claim of work product protection over the contested material and must be compelled to produce all documents related to its investigation of the improper DMCA deletions, which are at the heart of Hotfile's counterclaim.

Discovery is set to close in this case on December 23, 2011.  Hotfile's need for this discovery is urgent in view of the close of discovery and the delay caused by Warner.  Hotfile, therefore, respectfully requests that the Court order Warner to provide the outstanding discovery by December 9, 2011 or within five (5) days of the Court's Order, whichever comes first.

**PROCEDURAL BACKGROUND**

Warner's Answer to the Counterclaim (filed November 7, 2011, D.E. 163) has admitted the basic facts.  To assist Warner with its efforts to police online infringements of its copyrights, Hotfile provided Warner with an extraordinary anti-piracy tool (the "Special Rightsholder Account" or "SRA") that allowed Warner direct access to quickly make deletions of infringing

material on Hotfile.com.  Answer,  ¶¶ 2, 13. Warner assured Hotfile that it wanted the tool for the purpose of removing Warner content, and each time Warner used the SRA, it represented under penalty of perjury "that I am owner or an authorized legal representative of the owner of the copyrights to [the material being deleted].  I have a good faith belief that use of this material is not authorized by the copyright owner, the copyright owner's agent, or the law."  *Id.* at ¶¶ 12-15.  After the studios brought this lawsuit against Hotfile without any warning (or complaint about Hotfile's copyright compliance), Hotfile became aware of thousands of suspicious deletions made through Warner's SRA around the time the complaint was filed, including the removal of freeware and other content that Warner did not appear to own.  In April, 2011, Hotfile sought to depose a Warner representative to testify about these suspicious deletions and provided to Warner a list of some of the specific files that it believed were wrongfully removed. *Id.* at ¶ 24.  Warner repeatedly delayed the deposition, citing a need for more time to complete its investigation of the suspicious deletions.  On October 12, Warner finally produced David Kaplan, a Warner anti-piracy executive, as Warner's representative to testify regarding the SRA deletions.

Warner uses automated scanning software or robots to locate files on the Internet that it believes contain unauthorized Warner content, but it does not download, review, or otherwise verify the content of the files before it uses the SRA to delete them.  *Id.* at 27, 21.  When questioned, with respect to the wrongful deletions and about the accuracy of the statements that Warner made under penalty of perjury that it was authorized to delete certain non-Warner files through the SRA, Mr. Kaplan testified that Warner's representations could not properly be examined on a link-by-link basis, but rather, Warner's statements that it had a good faith belief that it was the owner of or was otherwise authorized to delete the non-Warner files had to be

considered in the context of Warner's beliefs as to the anti-piracy system as a whole: "The statement is based on our faith of the overall system we developed.  Errors are made in any system that's being developed.  **The fact that we took any errors that we discovered and used them to improve the system I think gave us further confidence that the system was one that was the best one we could create**.  So, our good faith belief comes from our faith in the system." (Deposition of David Kaplan at 103:3-12) (Emphasis added).[1]

Mr. Kaplan testified that, as a part of Warner's attempts to "improve the system," in August 2011, Warner reviewed a list of files that it had deleted over the preceding three months to "look for situations where it looked like the [deleted] URL may indicate that the content was something other than what was intended to be taken down."  (*Id*. at 154:9-12).  At the deposition, Warner objected to the disclosure of the results of this investigation as protected work product and refused to answer questions regarding the results of the investigation, including questions about a report that Mr. Kaplan described outlining specific changes that Warner believed it needed to make to its anti-piracy procedures as a result of the investigation:

"Q.  Did Kazi and Pilch produce a written work product?

A.  Yes.

Q.  What form did that take?

A.  It was a report of the changes [to Warner's techniques for identifying infringing material] or identification of other errors like on the site itself that they -- that looked like -- that it seems to them existed as a result of the three month look back.

Q.  You said changes [to Warner's techniques for identifying infringing material].  Did they provide recommendations as to what they thought should be changed, or did they just give you a report as to what they found?

---

[1]      The sections of David Kaplan's deposition that are quoted are attached as Exhibit A to the Declaration of Anthony P. Schoenberg, which is attached hereto as Exhibit 1.

CASE NO. 11-20427-WILLIAMS-TURNOFF

A. The former. And then in some cases then depending on what it was immediately implemented the change."

(*Id*. at 160:2-19)

Warner objected to discovery requests seeking documents related to this investigation on similar work product grounds.

## ARGUMENT AND APPLICABLE LAW

I.      **WARNER SHOULD PRODUCE DOCUMENTS REGARDING ANY INVESTIGATION OF OR RESPONSE TO WARNER'S POSSIBLE MISUSE OF THE SRA.**

Hotfile's Request No. 52 and Warner's objections are set forth below:

**REQUEST NO. 52:**

DOCUMENTS discussing all steps WARNER took after the filing of this action in response to possible misuse of the BENTKOVER SRA.

**WARNER'S RESPONSE TO REQUEST NO. 52:**

Warner incorporates each General Objection and Specific Objection to Definitions as if set forth herein. Warner further objects to Defendant's characterization of the conduct at issue as "misuse," as the Request inappropriately assumes a legal conclusion. By responding to this Request, Warner in no way concedes that it has "misuse[d]" the Bentkover SRA. In addition, Warner further objects to this Request insofar as it seeks counsel's work product in conducting any internal investigation of the allegations in Hotfile's counterclaim.

A.      **Basis for Objections**

Set forth in response above.

B.      **Basis for Compelling Production**

**The Withheld Factual Information Is Not Protected Work Product.** Under Federal Rule of Civil Procedure 26(b)(3), documents reflecting an attorney's mental impressions

5

prepared in anticipation of litigation are generally protected from disclosure.  *See Callaway v. Papa John's USA, Inc*., 2010 WL 4024883, at *7 (S.D.Fla. Oct. 12, 2010).  By its clear language, "the [work product] doctrine protects an attorney's mental impressions or legal theories, but not the underlying facts of a dispute."  *2000 Island Blvd. Condominium Ass'n, Inc. v. QBE Ins. Corp*., 2011 WL 3441621, at *2 (S.D.Fla. July 25, 2011); *see also In re Alexander Grant & Co. Litigation* 110 F.R.D. 545, 548 (S.D.Fla. 1986)  ("The [work product] privilege does not apply to underlying facts which can be explored during deposition.")

Here, Warner has improperly invoked the work product protection to block inquiry into purely factual matters.  At the deposition, counsel for Warner objected on work product grounds to Hotfile's questions regarding the factual results of Warner's allegedly work product protected investigation of its file deletion practices.  Counsel for Hotfile asked Mr. Kaplan whether, in Warner's review of its prior deletions, Warner identified instances of "false positives" or improper deletions.  Counsel for Warner asserted a work product objection on the grounds that the investigation was done at the request of counsel, thereby supposedly precluding inquiry into the facts of the investigation:

> "MR. FABRIZIO: I believe the event you are discussing was work product done at the request of counsel in analyzing the counter-claims in this case. That's why I think it's a privileged matter what the results of our analysis are…
>
> MR. THOMPSON: And it's privileged as to whether or not he found or Warner found false positives?
>
> MR. FABRIZIO: The results of an analysis that were done by and at the direction of litigation counsel and counsel in this case in the process of analyzing the counterclaims…are clearly work product.  That is quintessential work product.
>
> MR. THOMPSON: You can't create a false positive. [They] either exist or they don't exist.  It wasn't created for you.

MR. FABRIZIO:  They were analyzed.  That's like saying you don't create a legal opinion.  It either exists or doesn't exist. You just express it."

*Id.* at 147:7-148:8.

Contrary to Warner's objection, that a party "analyzed" facts at the direction of counsel doesn't somehow render those facts protected as work product.  Hotfile sought information about pure facts—whether Warner had found instances where it deleted files that it was not authorized to delete—not protected attorney mental impressions about those facts.  The facts underlying what may otherwise be protected attorney work product are quintessentially *not* work product, and Warner's attempts to block discovery of those facts are plainly improper.

**Even If The Material Is Work Product, Warner Has Waived Protection.**  "[T]he work-product doctrine is not absolute. Like other qualified privileges, it may be waived."  *United States v. Nobles*, 422 U.S. 225, 239 (1975).  "Just as the party seeking to assert a claim of privilege bears the burden of establishing the existence of the privilege, that same party has the burden of establishing nonwaiver."  *Granite Partners v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999).  One of the most common types of work product waiver is the so-called "at-issue" waiver.  Under the at-issue doctrine, "a party waives work-product or privilege protection when (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense."  *Stern v. O'Quinn*, 253 F.R.D. 663, 676 (S.D.Fla. 2008).  The at-issue waiver doctrine is predicated on "the idea that it is simply not fair to allow a party to wield the work-product protection as a sword to cut out the heart of an opposing party's case while simultaneously brandishing it as a shield from disclosure of any Achilles heels."  *Id.* at 667.

CASE NO. 11-20427-WILLIAMS-TURNOFF

In the prototypical at-issue waver scenario, a party seeks to preclude discovery regarding the results of an investigation into the claims or actions at the heart of the litigation and at the same time, attempts to rely on the results of the investigation as the basis of its defense.  In *Stern*, for example, defendants in a defamation case intended to rely on information obtained through an investigation into the facts purportedly supporting the defamatory statements to show that they made the defamatory statements in good faith, while at the same time invoking work product protection to preclude discovery of the investigation materials. *Id.* at 676.  The court held that because the work product protection would deprive the plaintiff of "means to combat or otherwise test the veracity of Defendants' defenses," the defendants had waived protection.  *See also Volpe v. U.S. Airways, Inc.,* 184 F.R.D. 672, 673 (M.D.Fla. 1998) (where defendant intended to rely on internal investigation into plaintiff's sexual harassment claims as a defense, defendant "waived any privilege or protection of the documents comprising the complete investigation file, including the investigator's notes and other materials.")

Here, even if information regarding its investigation of its improper takedowns can be considered protected work product, Warner has put its investigation at issue by relying on the investigation as a defense while trying to prevent Hotfile from testing the "*bona fides* of the investigation." *Volpe*, 184 F.R.D. at 673.  First, Warner's invocation of the work product protection is a result of Warner's own affirmative action: by indicating in deposition that it intended to rely on investigations into its takedown practices and its internal assessment of its anti-piracy techniques as a defense to the action. *See Stern*, 253 F.R.D. at 677 (indicating in discovery responses an intent to invoke the privilege constitutes affirmative act).

Secondly, Warner has put the assertedly protected investigation at issue by using it as basis to support its claim that the misrepresentations it made when it used the SRA to delete non-

Warner content were made in good faith.  At deposition, Mr. Kaplan said that each of Warner's representations was based on Warner's faith that its anti-piracy system was as effective and accurate as possible in only gathering and deleting Warner content because the system was constantly "being improved when [Warner got] information indicating that errors have been made."  Kaplan Decl. at 247:19-21.  Mr. Kaplan also testified that Warner's internal investigation into whether its system was improperly deleting files resulted in a specific set of suggested improvements to the system—the implementation of which supposedly formed the basis of Warner's good faith belief that it was making accurate representations under penalty of perjury when it deleted files through the SRA that it did not own without checking the content of the files beforehand.  Clearly, if Warner is relying on its faith in the accuracy of its system as a whole to support a claim of good faith in making misrepresentations about its authorization to delete particular files on Hotfile, Warner has put evidence regarding what it knew about the accuracy of its system at issue.  Moreover, where Warner specifically cites its policy of implementing corrective measures to its system when it becomes aware of errors in identifying and deleting material as a basis for its faith in the accuracy of its system, it has put at issue any documents purporting to show such corrective measures and whether or not they have been implemented.  The report described by Mr. Kaplan at his deposition is precisely this type of document.  Warner is attempting to use the work product protection as a sword and a shield by claiming that its internal investigation into the accuracy of its anti-piracy techniques supports its good faith defense while attempting to preclude Hotfile from testing the veracity of that defense.

Finally, application of the privilege to information Warner is relying on as the basis for its claim of good faith would plainly deny Hotfile information vital to its claims.  Warner has stated that its claim that it had a good faith belief in the truth of its statements under penalty of

perjury when it deleted material through the SRA is based on its overall faith in the accuracy of its system, including its regular incorporation of procedures to minimize incorrect deletions when such errors are identified.  By claiming work product protection over documents showing what Warner knew about the accuracy of its system, including errors it found and specific procedures it claims it implemented to minimize incorrect deletions, Warner is wholly precluding Hotfile from challenging its claim of good faith.  Furthermore, Warner is attempting to use the privilege as both a sword and a shield by selectively claiming protection over some documents and information regarding its attempts to review the efficacy of its anti-piracy processes while precluding discovery into others.  Warner presented evidence at deposition that it had instituted a new "daily audit" process whereby every day Warner reviewed a sample of the files its robots identified as infringing in order to verify the accuracy of their searches. *See* Kaplan Depo at 164:6-15.  Though evidence of this audit would be protected under Warner's overbroad definition of privilege, Warner did not claim work product protection over this information.  At the same time, it blocked all discovery of information related to a second internal "investigation" of Warner's improper deletions.  As such, Warner is attempting to selectively invoke work product protection where it best suits Warner's interests, using work product protection as both a sword and a shield.

Warner cannot plausibly expect Hotfile and the Court to simply take Warner at its word that it believed in the accuracy of its system and was implementing all known measures to limit errors.  Warner should be obligated to produce documents regarding Warner's investigation of its improper deletions so Hotfile can properly challenge Warner's good faith defense.

## CONCLUSION

For the foregoing reasons, the Court should compel Warner to respond fully to Hotfile's Request for Production No. 52, as set forth in the Proposed Order, which is attached hereto as Exhibit 2. As set forth above, discovery is set to close in this case on December 23, 2011. Accordingly, Hotfile respectfully requests that Warner be required to provide the outstanding discovery by December 9, 2011 or within five (5) days of the Court's Order, whichever comes first.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that counsel for the movant, Roderick M. Thompson, Esq. has conferred with all parties and non-parties who may be affected by the relief sought in the motion, including Steven B. Fabrizio, Esq., counsel for respondent, Warner Brothers Entertainment, Inc., in a good faith effort to resolve the issues, but has been unable to resolve the issues.

s/ Roderick M. Thompson
Roderick M. Thompson

Dated: November 16, 2011

By: s/Roderick Thompson
Roderick Thompson (*admitted pro hac vice*)
Email: rthompson@fbm.com
Andrew Leibnitz (*admitted pro hac vice*)
Email: aleibnitz@fbm.com
Anthony P. Schoenberg (*admitted pro hac vice*)
Email: tschoenberg@fbm.com
Deepak Gupta (*admitted pro hac vice*)
Email: dgupta@fbn.com
Farella Braun + Martel LLP
Russ Building
235 Montgomery Street
San Francisco, CA 94104
Telephone: 415.954.4400
Facsimile: 415.954.4480
*Counsel for Defendants*
*Hotfile Corp. and Anton Titov*

And

CASE NO. 11-20427-WILLIAMS-TURNOFF

By: s/Janet T. Munn
Janet T. Munn, Fla. Bar. No.: 501281
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone:  305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

CASE NO. 11-20427-WILLIAMS-TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2011, the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>s/Janet T. Munn</u>
Janet T. Munn

**GRAY-ROBINSON, P.A.**
Karen L. Stetson, Fla. Bar No.: 742937
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305.416.6880
Fax:    305.416.6887

**JENNER AND BLOCK, LLP**
Steven B. Fabrizio (*Pro Hac Vice* )
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice* )
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice* )
Email: lplatzer@jenner.com
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Phone: 202.639.6000
Fax:    202.639.6066