UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

**OPPOSITION OF WARNER BROS. ENTERTAINMENT INC.
TO HOTFILE CORP.'S MOTION TO COMPEL DISCOVERY FROM PLAINTIFF AND
COUNTERDEFENDANT WARNER BROS. ENTERTAINMENT INC. OF WARNER'S
TAKEDOWN INVESTIGATIONS**

64049.1

**INTRODUCTION**

When Hotfile Corp. ("Hotfile") sued Warner Bros. Entertainment, Inc. ("Warner") in August of this year, Warner's counsel did what any responsible attorney would do in such a situation: direct an investigation into Hotfile's allegations against Warner, specifically, into Hotfile's claim that Warner had sent mistaken notifications of copyright infringement to Hotfile. This type of counsel-directed investigation is a routine, and expected, element of any competent defense. And the law treats such counsel-directed investigations in response to litigation as attorney work product protected from disclosure. Otherwise, attorneys defending litigation would always be faced with the untenable prospect that their efforts to analyze the claims against their clients would run the risk of simultaneously creating and organizing evidence against their clients – as well as allowing opposing counsel to free-ride off their work and analysis. Hotfile's demand that Warner turn over the results of counsel's investigation and analysis of Hotfile's Counterclaim that it undertook in August 2011, therefore, strikes at the heart of attorney work product protection and should be denied.

First, Warner must take issue with Hotfile's argument that Warner is seeking to withhold facts. That is just plain wrong. Warner produced *all* relevant facts, including all "facts" related to the counsel-directed analysis. Counsel for Warner instructed as to a *single line of questioning* in the entire deposition, because the line of questioning asked for counsel's work product. What Hotfile wants are not the "facts" about Warner's takedown notices to Hotfile, but rather Warner's work product "analysis" of those facts – *i.e.*, whether, in the *judgment* of Warner's counsel's designees, certain takedown notices may have been sent in error. Analyses are not facts. The analysis at issue is attorney work product.

For perspective, in the main case, Plaintiffs accuse Hotfile of fostering massive infringement through its website. One would expect that, in response to that claim, Defendants' counsel directed analyses, with the help of Hotfile personnel, to assess the level of infringement on the Hotfile website. If Plaintiffs sought to compel the results of those analyses, Hotfile would of course object on the basis of work product. And if Plaintiffs argued that the level of infringement or the identify of infringing files on the Hotfile website are just "facts" not subject to work product protection, Hotfile's counsel would undoubtedly mock those arguments as frivolous, arguing, as Warner does here, that those are not "facts" but "conclusions" and the work product of an analysis. Defendants would tell Plaintiffs to go conduct their own analyses

1

of infringement on Hotfile, arguing that Plaintiffs have access to all the files and data that are the facts from which such an analysis would proceed. That is in fact what Plaintiffs did.

It is also what Hotfile did here. Hotfile can and indeed *has* performed the same analysis as that directed by Warner's counsel, using the same underlying facts. Hotfile itself has the content files that it contends were erroneously taken down. Hotfile analyzed all the files noticed for takedown by Warner and included over 800 of them in its Counterclaim. After undertaking months of its own analysis, Hotfile filed an initial counterclaim, then a first amended counterclaim, and finally a second amended counterclaim. Now, Hotfile seemingly just wants to see whether Warner's counsel's analysis identified any apparent errors in Warner's notices that Hotfile's counsel's own analysis did not. That is not a proper basis to invade attorney work product.

Moreover, by stipulation of the parties and Order of this Court, the list of files appended to Hotfile's current Counterclaim constitutes the "definitive" list of files that Hotfile contends violate DMCA § 512(f). *See* Joint Motion and Memorandum of Law of the Parties for Voluntary Dismissal of Second and Third Counts of Hotfile's First Amended Counterclaim and for Amendment of First Count (Dkt. No. 151) at 3, ¶ 4. Thus, Hotfile seeks information that is not only work product, but is rendered irrelevant by its stipulation. Hotfile is not permitted to claim that any files, other than those in the exhibits to its current Counterclaim, violate DMCA § 512(f).

Second, Warner has not put its counsel's work product analysis "in issue" or tried to rely on it as part of its defense, and Hotfile's argument to the contrary distorts the facts and the relevant timeline. Hotfile argues that Warner has injected counsel's investigation into the case by claiming that Warner had a "good faith" belief that its notices were accurate. But Warner's counsel-directed investigation happened *after* Warner had already sent the takedown notices of which Hotfile complains, not before. Under DMCA § 512(f), Warner's knowledge is judged *at the time it sent the notices in question*, for it is then that Warner made the representation that Hotfile contends was "knowingly" false. Counsel's work product analysis, which was conducted *after* the filing of the Counterclaim, cannot have any bearing on Warner's state of knowledge *before* the Counterclaim.

In any event, Warner did not, and does not, contend that its faith in its antipiracy system was in any way based on the results of the counsel-directed investigation. Rather, that

2

contention rests on the fact that Warner has, from the very beginning of its antipiracy system, continually sought to identify errors and always uses any information gleaned to improve the system and ensure as best possible that the error does not recur.  That longstanding practice – not its counsel's work product – is what Mr. Kaplan referred to as bolstering Warner's confidence in its system.  And Warner *did* produce its documents and seat a corporate representative to testify about that longstanding practice, including any errors discovered and curative actions taken, both before and after the filing of the Counterclaim.  The documents subject to Hotfile's Motion that Warner withheld on the basis of work product were the memorialization of its counsel-directed investigation and related documents.  Hotfile's attempt to invade counsel's work product is improper and, respectfully, should be rejected.

## ARGUMENT

### I. THE DISCOVERY WITHHELD IS CLASSIC WORK PRODUCT.

Under Rule 26, a party is not entitled to discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," and the Court "must protect against disclosure of," *inter alia*, "the mental impressions, conclusions, [and] opinions" of a party developed in anticipation of litigation or for trial.  Fed. R. Civ. P. 26(b)(3)(A) & (b)(3)(B).  Warner's counsel-directed investigation squarely fits this bill.

Hotfile does not dispute that the analysis was prepared at the direction of counsel or that it was prepared specifically in anticipation of litigation.  "[A]nalysis of one's case 'in anticipation of litigation' is a classic example of work product . . . and receives heightened protection under Fed. R. Civ. P. 26(b)(3)."  *United States v. Adlman*, 134 F.3d 1194, 1196-97 (2d Cir. 1998) (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)).  *See, also, e.g., Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386, 1421-1423 (11th Cir. 1994); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2009) ("Work-product protection applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation") (internal quotation marks and citation omitted); *Jeffers v. Russell County Bd. of Ed.*, No. 3:06cv685-CSC, 2007 U.S. Dist. LEXIS 74480, at *8 (M.D. Ala. Oct. 4, 2007) ("To allow the plaintiffs to secure the results of the defendants' investigation would vitiate the work-product doctrine"); *see generally Dimension Leasing, Inc. v. Variety Children's Hosp.*, No. 05-22701-Civ, 2007 U.S. Dist. LEXIS 45460, at *4 (S.D. Fla. June 22, 2007).  Moreover, even though facts themselves may be discoverable, the

particular organization, selection, and characterization of those facts for counsel is protected as work product as well. *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986); *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985); *Kallas v. Carnival Corp.*, No. 06-20115-CIV, 2008 U.S. Dist. LEXIS 42299, at *11-12 (S.D. Fla. May 27, 2008) (where information was "gathered and prepared by employees of the law firm of Plaintiffs' counsel, at the direction of counsel, for a litigation purpose," discovery of that information – including survey results and the related documentation – was presumptively protected from disclosure because it "would classically fall under the 'fact work product' category").

That Warner's analysis consists of conclusions made and organized by its non-legal personnel, at the direction of counsel, rather than "attorney mental impressions," as Hotfile argues, *see* Mot. at 7, is irrelevant. The "work-product doctrine will generally apply with respect to an internal investigation that is undertaken in anticipation of litigation, whether it is conducted by counsel or by other agents of the corporation." *Barton v. Zimmer Inc.*, No. 1:06-CV-208, 2008 U.S. Dist. LEXIS 1296, at *22 (N.D. Ind. Jan. 7, 2008); *see also Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1219 (4th Cir. 1976) (Opinion work product applies to lawyers and nonlawyers alike); 4 James Wm. Moore, Moore's Federal Practice § 26-70[4] at 26-217-18 (3d ed. 2006) (studies conducted at the direction of counsel are protected by the work product doctrine); Fed. R. Civ. P. 26(b)(3)(A) (work product extends beyond attorneys to a party's "agent").

The counsel-directed analysis at issue clearly is attorney work product.

## II. WARNER HAS NOT PUT ITS COUNSEL'S WORK PRODUCT "IN ISSUE."

Warner has not, contrary to Hotfile's claims, relied on its work product investigation as a defense to Hotfile's Counterclaim. Moreover, Warner's investigation postdates the takedown notices that form the basis of Hotfile's Counterclaim, and therefore could not have conceivably informed Warner's views or knowledge as to the accuracy of those notices at the time Warner sent them (the only thing relevant under the statute that governs Hotfile's claims), and is therefore not necessary, or even relevant, to Hotfile's claimed desire to challenge Warner's good faith in the notices over which Hotfile is suing.

Warner intends to prove that, at the time it sent each takedown notice to Hotfile, it had a good faith belief in that it held the rights to the actual content contained in the identified files. Hotfile's Counterclaim contends the opposite; Hotfile alleges that Warner sent 800 or so notices

(out of hundreds of thousands) that violated 17 U.S.C. § 512(f), which prohibits anyone from "knowingly materially misrepresent[ing]" that the "material … [identified in a notice] is infringing." Since the DMCA does not make it illegal to make a mistake in a takedown notice, Hotfile's Counterclaim depends entirely on the allegation that Hotfile *knowingly* made misrepresentations in the notices it sent to Hotfile.[1]

After full document discovery and the completion of its deposition of Warner, Hotfile does not have even a shred of evidence for this proposition. Therefore, it has been forced to embark on a new theory: generically attacking Warner's *system* for sending takedown notices. Saving for another day whether §512(f) allows liability on Hotfile's theory dispensing with knowledge of any specific misrepresentation (it does not), Warner has great faith in its system, and so testified in response to questioning from Hotfile's counsel.

Warner's faith in its antipiracy system, however, does not come from its counsel's work product investigation after Hotfile's Counterclaim was filed, and Warner has never so contended. It comes from Warner's selection, design, implementation, maintenance, and ongoing efforts to improve its system, which include taking immediate curative actions whenever Warner learns of a notice that might have been sent in error. This practice is longstanding and long predates Hotfile's Counterclaim. *See* Deposition of David Kaplan ("Kaplan Tr.") (Attached to Declaration of Luke C. Platzer ("Platzer Decl.")) at 90:16-20 (testifying that Warner took steps to verify its takedown notices "not just after this deposition [notice] but through the whole process. Any time we got additional information that we thought we could use to improve the

---

[1] As Hotfile knows full well, moreover, almost half the files identified in Hotfile's Counterclaim involve takedown notices for content owned by one of Warner's content partners (content that Warner in fact had rights to distribute in some territories). Those files were identified as infringing as part of a joint antipiracy project between Warner and the content partner. The intent of the project was to identify infringing files, not send notices, so technically the notices were in fact sent in error – an error resulting from a software glitch. No one at Warner even knew those notices had been sent until Hotfile identified them in the process of threatening its Counterclaim. To be clear, however, those files were blatantly infringing and owned by Warner's content partner. Under the DMCA, there was no reason Warner could not send notices on behalf of its content partner. *See* 17 U.S.C. § 512(c)(3)(A)(vi) (anyone "authorized to act on behalf of" the copyright owner can send a DMCA notice). Upon learning that notices inadvertently had been sent, moreover, Warner's content partner ratified Warner's authority to have sent the notices on its behalf. On this record, Hotfile's allegations that Warner "knowingly" misrepresented anything as to those files, much less that Warner misrepresented that the files were infringing, 17 U.S.C. § 512(f)(1), exceeds the bounds of permissible advocacy.

process, we used it"); *id*. at 85:22-86:1 ("the results of the notice sending are continually checked to see what kind of errors if any are coming up.  So that – that process has gone on from the very beginning."); *id*. at 112:13-17 (Warner "always" took action to correct errors, "[e]ven before the April deposition notice."); *id*. at 87:16-88:4 (describing Warner's process for detecting and correcting errors "before [Warner] received [Hotfile's deposition notice with list of alleged errors]," which included "people in my department … look[ing] at the daily results of links actioned by title, by site" to scan for possible inaccuracies); Kaplan Tr. at 103:3-12 (similar); Kaplan Tr. at 92:3-23 (similar).  Based on this longstanding quality-control process, Mr. Kaplan testified that Warner was "confident that we developed as system that would allow us over time to continue to reduce the false positive level in response to errors that we discovered or were pointed out to us by others."  Kaplan Tr. at 140:9-16.  Warner produced, and did not withhold as privileged, documents and testimony about this longstanding practice, including refinements to that practice it made in response to this litigation.

        By quoting Mr. Kaplan's testimony stating his faith in this process – and then jumping fifty pages forward to his separate description of Warner's post-Counterclaim, counsel-driven investigation – Hotfile seeks to create the misleading impression that Warner is relying on its counsel-directed analysis from after the Counterclaim, as opposed to its longstanding quality control procedures, as the basis for its good faith in the accuracy of its system.  *See* Mot. at 4, 9.  But that was not Mr. Kaplan's testimony, and Hotfile's false juxtaposition of these two separate lines of testimony is apparent from an even cursory review of the portions of the transcript quoted above.  This flaw is dispositive of Hotfile's motion.  Warner's ongoing quality control efforts are not work product, and Warner has produced all relevant information about them.  The August 2011 counsel-directed analysis is work product, and Warner has every right to withhold it.

        Moreover, since Warner's investigation postdated the notices in Hotfile's Counterclaim, the investigation is not relevant to challenging Warner's faith in its system, as Hotfile claims.  Mot. at 9-10.  Since 17 U.S.C. § 512(f) requires a "knowing" misrepresentation, whether a copyright owner "knew it was misrepresenting the facts" about whether a work is infringing, *Cabell v. Zimmerman*, No. 09 Civ. 10134 (CM), 2010 WL 996007, at *4-5 (S.D.N.Y. Mar. 12, 2010), must be judged on the copyright owner's state of knowledge *at the time the notice was sent*.  But every takedown notice listed in the attachments to Hotfile's Counterclaim pre-dates the

6

64049.1

counsel-directed analysis at issue here.  *See* Platzer Decl. ¶¶ 3-4.  What Warner learned about its takedown notices, or even generically the accuracy of its system, *after* it sent the notices attached to the Counterclaim logically cannot have any bearing on its knowledge or faith in those notices *at the time it sent them*.  Thus, Warner did not put its counsel-directed analysis "in issue," Warner did not "waive" work product protection, and Hotfile does not need the investigation to challenge Warner's good faith in the notices at issue in its Counterclaim.  *Cf. Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994) (while it is possible to waive work product protection by putting the work product itself "in issue," this exception comes into play only in "very rare and extraordinary circumstances").[2]

Warner produced to Hotfile its documents reflecting known instances of a mistaken notice since Warner began using Hotfile's SRA tool until the data of Hotfile's Counterclaim.  Hotfile was given the opportunity to question Warner about every one of them.  Warner also produced its documents related to its ongoing quality control efforts from after the filing of the Counterclaim, including any errors identified in that process.  Hotfile again was given the opportunity to question Warner about every one of them.  Warner also allowed Hotfile to ask any questions seeking factual information related to the counsel-directed work product analysis conducted after the Counterclaim was filed.  The only line of questioning Warner did not answer called directly for the conclusions reached through the work product analysis.

## CONCLUSION

For the reasons stated above, Warner respectfully requests that Hotfile's Motion to Compel be denied.


Dated:  November 25, 2011

                                                  By: /s/ Karen L. Stetson
                                                  Karen L. Stetson
                                                  GRAY-ROBINSON, P.A.
                                                  1221 Brickell Avenue

---

[2] Hotfile's passing references to its need for the work product of Warner's counsel, Mot. at 9, does not even purport to satisfy the dual requirements of "substantial need" and "undue hardship" necessary to overcome Warner's work product protection.  *See* Fed. R. Civ. P. 26(b)(3).  Not could Hotfile satisfy that burden.  Hotfile has all the underlying facts and data and can readily conduct its own analyses, which it in fact did to arrive at the files listed in the exhibits to the Counterclaim.

7

64049.1

|  |  |
|---|---|
|  | 16th Floor |
|  | Miami, FL 33131 |
|  | Telephone: (305) 461-6880 |
|  | Facsimile: (305) 461-6887 |
| MOTION PICTURE ASSOCIATION OF AMERICA, INC. | JENNER & BLOCK LLP |
| Karen R. Thorland (*Pro Hac Vice*) | Steven B. Fabrizio (*Pro Hac Vice*) |
| 15301 Ventura Blvd. | Duane C. Pozza (*Pro Hac Vice*) |
| Building E | Luke C. Platzer (*Pro Hac Vice*) |
| Sherman Oaks, CA 91403 | 1099 New York Ave., N.W. |
| Phone: (818) 995-6600 | Suite 900 |
| Fax: (818) 285-4403 | Washington, DC 20001 |
|  | Telephone: (202) 639-6000 |
|  | Facsimile: (202) 639-6066 |

*Attorneys for Plaintiffs and Counterdefendant*

8

64049.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
                                                                    /

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
                                                                    /

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th Day of November, 2011, I served the foregoing Opposition of Warner Bros. Entertainment Inc. to Hotfile Corp.'s Motion to Compel Discovery, and the supporting Declaration of Luke C. Platzer, on all counsel of record on the attached service list by means of the Court's ECF System.

By: /s/ Karen L. Stetson
Karen L. Stetson

9

64049.1

## SERVICE LIST

### Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
### CASE NO. 11-CIV-20427-JORDAN

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

64049.1