UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

    *Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

    *Defendants.*

                             /

HOTFILE CORP.,

    *Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

    *Counter-Defendant.*

                             /

**REPLY OF DEFENDANT/COUNTERCLAIMANT HOTFILE CORPORATION TO
PLAINTIF/COUNTER- DEFENDANT WARNER BROS. ENTERTAINMENT'S
RESPONSE IN OPPOSITION TO HOTFILE'S MOTION TO COMPEL
<u>WARNER TO PRODUCE TAKEDOWN INVESTIGATIONS</u>**

CASE NO. 11-20427-WILLIAMS-TURNOFF

## INTRODUCTION

Warner has gone to extraordinary lengths to avoid scrutiny of its flawed anti-piracy procedures and techniques that admittedly caused thousands of improper deletions of files from hotfile.com.[1] To this end, it has unreasonably designated large chunks of the Kaplan deposition "Highly Confidential," and has refused to lower that designation to allow the pertinent pages to be filed with the Court.[2] More fundamentally, Warner has failed to provide a privilege log or other listing of the documents it has withheld under claim of privilege. It is elementary that the party asserting work protect protection has the burden of making a prima facie case for entitlement to the protection. *See Kallas v. Carnival Corp.*, 2008 WL 2222152 at *3 (S.D.Fla. May 27, 2008) ("Like assertions of attorney-client privilege, the burden is on the party withholding discovery to show that the documents should be afforded work-product immunity.")

In its attorney declaration, however, Warner purports to selectively reveal *without citation to anything* what "Mr. Kaplan testified [to] at his deposition," and Warner further claims that one report it withheld "bears electronic metadata indicating that it was not created until September 5, 2011." *See* Declaration of Luke C. Platzer at ¶¶ 3 and 4, attached as Exhibit

---

[1] Warner suggests inaccurately on pages 4-5 of its opposition that by limiting Hotfile's counterclaim to the specific files identified in the exhibits those are the only wrongful deletions Hotfile has discovered. Quite to the contrary. Those were the only improper takedowns Hotfile has been able to verify by examination of the actual content of the files (something Warner itself never did before making deletions.) In fact Warner's and Hotfile's records both suggest from the file titles that there were thousands—if not tens of thousands—more of these wrongful takedowns that resulted in the deletion of the file preventing verification of its contents. Warner's own internal estimates suggest that its techniques resulted in an unacceptably high number of false positives and thus wrongful takedowns.

[2] Because Warner's opposition was filed the evening of Friday November 26, 2011, time does not permit for further negotiation with counsel for Warner over what if anything can legitimately be filed under seal. By its improper blanket designations, Warner has effectively prevented Hotfile from presenting all of the facts to the Court.

A to D.E. #172. This falls far short of even Warner's reduced burden under the Court's Order authorizing the initial use of Categorical Privilege Logs: "The movie studios are instructed to provide categorical logs **with categories detailed enough to allow Hotfile . . . to evaluate the claims of privilege**" and "should include the number of documents withheld." Order on Motion to Authorize Use of Categorical Privilege Logs, D.E. #127. Warner has wholly failed to meet its burden of establishing work product protection; the motion should be granted on this basis alone.

Moreover, Warner's tactic of a one-way disclosure of information (using its asserted protections as both a sword to justify its actions while at the same time shielding its actions from discovery) and then only disclosing selected portions of testimony or documents, must be rejected. The Court and Hotfile are entitled to know what Warner did, when and why. Facts cannot be shielded from discovery as "work product" and, in any event, any conceivable protection was waived by Warner's defense of its "good faith" reliance on its "overall system" and its corrections of "errors" it discovers. The result is that both the Court and Hotfile will be left in the dark unless Warner is compelled to produce all responsive documents showing what it changed in its flawed system, when and why.

## ARGUMENT

The issue raised by this motion goes to the core of Hotfile's § 512(f) counterclaim. There is no dispute that Warner's actions fall within the reach of this statute. Indeed, the parties have stipulated that "Warner's notifications by means of Hotfile's SRA are (and have the effect of) notifications of claimed infringement to Hotfile's designated agent under 17 U.S.C. § 512(c)(3)(A), and are therefore subject to 17 U.S.C. § 512(f)." *See* Joint Mot. And Mem. of Law for Voluntary Dismissal of Second and Third Counts of First Amended Counterclaim at p.2, D.E. #151 09/22/2011. And Warner has admitted to making "mistaken" or "erroneous" deletions,

3

thereby admitting it made repeated misrepresentations. Warner' only defense is that its misstatements made under penalty of perjury "that I am owner or an authorized legal representative of the owner of the copyrights to [the material being deleted]. I have a good faith belief that use of this material is not authorized by the copyright owner, the copyright owner's agent, or the law" were not "knowingly" material misrepresentations within the meaning of section 512(f). Hotfile is obviously entitled to discover Warner's factual basis supporting the affirmative defense that Warner has raised in its answer to Hotfile's counterclaim.

### A. The Withheld Factual Information Is Relevant and Not Protected Work Product

Warner has improperly invoked the work product protection in an attempt to block inquiry into purely factual matters. Contrary to Warner's objection, that a party "analyzed" facts at the direction of its counsel doesn't somehow render those underlying facts protected as work product. Hotfile seeks information about pure facts—when Warner had found instances where it deleted files that it was not authorized to delete what it did to make changes in its system and why—not protected attorney mental impressions about those facts.

Warner has admitted that it uses automated scanning software to locate files on the Internet that it believes contain unauthorized Warner content, but it does not download, review, or otherwise verify the content of the files before it uses the SRA to delete them. *See* Answer, at ¶¶ 27, 21. Warner asserts that its misstatements under penalty of perjury must be considered in the context of Warner's beliefs as to Warner's anti-piracy system as a whole: "The statement is based on our faith of the overall system we developed. Errors are made in any system that's being developed. The fact that we took any errors that we discovered and used them to improve the system I think gave us further confidence that the system was one that was the best one we

could create. So, our good faith belief comes from our faith in the system." (Deposition of David Kaplan at 103:3-12).

Warner's defense might have been plausible before it filed this lawsuit in February 2011. Prior to suing Hotfile, Warner had complimented Hotfile's copyright policies and led Hotfile to believe that Warner approved of Hotfile's copyright policies. Warner's suit against Hotfile, however, caused Hotfile to become aware of suspicious deletions made by Warner through its use of the SRA and Hotfile explicitly put Warner on notice of these suspicious deletions. In early April 2011, Hotfile alerted Warner's counsel of its concerns and sought to depose a Warner representative to testify about a list of specific files that Hotfile believed had been wrongfully removed. *See* Answer, at ¶ 24. Warner's first sentence of its opposition, suggesting that Hotfile first provided notice to Warner of its claim in August 2011 is *not* accurate because Warner has admitted taking action in response to Hotfile's concerns as early as *April,* months before many of the wrongful takedowns listed in the Counterclaim. The Counterclaim identifies 50 deletions from August 2011 alone.

One of those wrongful deletions, an MP3 file (".mp3" is in the URL filename [http://hotfile.com/dl/86512852/c343332/2_Best_UFOs_ETs_Evidence_Dr_Roger_Leir_Bud_Hopkins_Art_Bell.mp3.html]) is illustrative. As Warner is well aware, MP3 files typically contain music, not video (such as the television shows and movies owned by Warner). Warner had been on notice since at least February 2011 that its system was improperly deleting MP3 files it did not own. Nevertheless, Warner continued to delete similar MP3 files, indicating that Warner had failed to prevent its system from continuing to "mistakenly" delete this and many other files Warner did not own. This continued to be true for at least six months. The question is why. Given that Warner knew of the flaw and its experience and sophistication in anti-piracy

5

techniques as well as its obligations under the DMCA, this conduct may well satisfy the "knowingly" material misrepresentation requirement of Section 512(f):

> A party is liable if it "knowingly" and "materially" misrepresents that copyright infringement has occurred. **"Knowingly" means that a party** actually knew**, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations.**

*Online Policy Group v. Diebold, Inc.,* 337 F.Supp.2d 1195, 1204 (N.D.Cal. 2004) (emphasis added). Hotfile is certainly entitled to discovery surrounding Warner's actions.

Warner rests its defense here on its "good faith" belief in its overall system, including its claimed updating and improving of the system. It argues that it did act with reasonable care and diligence and should not have known or doubted that it was making the misrepresentations. In a portion of his testimony that Warner has allowed us to share with the Court, Mr. Kaplan testified that, as a part of Warner's attempts to "improve the system," in August 2011, Warner reviewed a list of files that it had deleted over the preceding three months to "look for situations where it looked like the [deleted] URL may indicate that the content was something other than what was intended to be taken down." (*Id*. at 154:9-12). However, Warner now refuses to disclose those results Mr. Kaplan relied upon. In particular, Warner has withheld a report that Mr. Kaplan described outlining specific changes:

> A. It was a report of the changes **[to Warner's techniques for identifying infringing material**] or identification of other errors like on the site itself that they -- that looked like -- that it seems to them existed as a result of the three month look back.
> Q. You said changes [**to Warner's techniques for identifying infringing material**]. Did they provide recommendations as to what they thought should be changed, or did they just give you a report as to what they found?
> A. The former. And then in some cases then depending on what it was immediately implemented the change."

6

(*Id*. at 160:2-19) (Emphasis added.)[3]

Warner insisted on the bracketed deletions in this quote. It obscures a more specific but quite generic description of the changes made because Warner says those changes that Warner made to its techniques for attempting to identify infringing material are "Highly Confidential." Without revealing what it should have done, suffice it to say that a simple and well-known change to Warner's search strategy could have (and should have) excluded any file with an MP3 extension. Warner must have been aware of this flaw—and this simple fix. Hotfile is entitled to obtain discovery of Warner's knowledge to determine what, as of August 2011, Warner "should have known if it acted with reasonable care or diligence" before making those misrepresentations that resulted in the wrongful deletions. While Mr. Kaplan described one report prepared by non-lawyers that listed these changes, Hotfile is entitled to production of all such documents.[4]

### B. To the Extent That Any Material Is Work Product, Warner Has Waived Protection.

The claim that this investigation is irrelevant because it was completed after the August misrepresentations were made (assuming for the moment that it was) is a red herring. In *Stern v. O'Quinn*, 253 F.R.D. 663, 671 (S.D.Fla. 2008) this Court considered exactly this type of

---

[3] Warner's argument that the type of information in this report and described by Mr. Kaplan is not factual is ridiculous. The report said what "should be changed" and in some cases "immediately implemented the change." This necessarily includes, for example, facts such as whether or not takedowns were erroneous and what changes Warner made to its system, why and when they were made. The non-lawyers (who Warner renames "counsel's designees") did not make "judgments" as to whether takedowns were erroneous. Opposition at p. 1, D.E. #172. Takedowns are either erroneous or not; that is a "fact." A takedown is erroneous if Warner did not own the copyright and was not authorized by the copyright owner to delete the material. And the changes Warner did or did not make to its system in response is no less a purely factual matter.

[4] Request No. 52, covers "DOCUMENTS discussing all steps WARNER took after the filing of this action in response to possible misuse of the BENTKOVER SRA."

7

investigation (an after-the-fact investigation regarding the truth of certain prior allegedly defamatory statements):

> Consequently, evidence concerning O'Quinn's post-statement efforts directing further investigation into the subject matter of his previously-made alleged statements could reflect in some way on O'Quinn's state of mind at the time the statements were made.

*Stern v. O'Quinn*, 253 F.R.D. at 67.

Here, Warner looked into the legitimacy of its prior takedown procedures, and this investigation will shed light on the corrective procedures it had in place at the time the takedowns were issued, which necessarily is relevant to Warner's claim of good faith. As explained, Warner's good faith defense is based on its claim that it was "always" taking curative action when it found errors. The investigation reveals exactly that information--the curative actions Warner took (both at the time of the investigation, and the curative steps taken prior to the investigation). Warner's documents show its awareness of specific improper takedowns before the investigation (such as the MP3 deletions, and other files identified in the April deposition notices), and the investigation will show whether or not Warner was in fact taking the corrective steps that supposedly prove Warner's "good faith." Mr. Kaplan could not testify as to when the specific (and supposedly secret but simple) actions were taken—he couldn't recall the specific timing of Warner's actions without the underlying documents. This information is necessary to test the veracity of Warner's defense to Hotfile's counter-claim.

This is the prototypical at-issue waver scenario. Warner seeks to preclude discovery regarding the results of an investigation into the claims or actions at the heart of the litigation and at the same time, attempts to rely on the results of the investigation as the basis for its defense. This is improper and courts have rejected such an approach. In *Stern*, for example, defendants in a defamation case intended to rely on information obtained through an investigation into the facts

8

purportedly supporting the defamatory statements to show that they made the defamatory statements in good faith, while at the same time invoking work product protection to preclude discovery of the investigation materials. *Id.* at 676. The court held that because the work product protection would deprive the plaintiff of "means to combat or otherwise test the veracity of Defendants' defenses," the defendants had waived the work product protection.

Mr. Kaplan testified that Warner's internal investigation into whether its system was improperly deleting files resulted in a specific set of suggested improvements to the system—the implementation of which supposedly formed the basis of Warner's good faith belief that it was making accurate representations under penalty of perjury when it deleted files through the SRA that it did not own, without checking the content of the files beforehand. Warner claims to be relying on its faith in the accuracy of its system as a whole to support a claim of good faith in making misrepresentations about its authorization to delete particular files on Hotfile. Therefore, Warner has put directly at issue what it knew about the accuracy of its system.

Warner is attempting to use the privilege as both a sword and a shield by selectively claiming protection over some documents and information regarding its attempts to review the efficacy of its anti-piracy processes, while precluding discovery into others.[5] Warner cannot

---

[5] Even in its opposition, Warner selectively reveals some of the supposedly protected facts that its non-lawyers "analyzed" in its investigation, citing to a "joint antipiracy project between Warner and [an unnamed] content partner" in order to deny erroneously deleting the files and to accuse Hotfile of hosting supposedly infringing files that Warner nonetheless admits that it deleted without prior authorization. (Opp. at p. 5 FN 1). Citing to the results of its investigation when it supports Warner's objectives but claiming work product protection over the rest of the investigation is as plain an example of using the privilege as a sword and a shield as one can imagine. Moreover, Warner's selective citation proves that Hotfile has a "substantial need" for the material and will face "undue hardship" if it does not get the documents: in a previous meet and confer phone call, counsel for Warner refused to produce documents sufficient to show this ill-defined "joint antipiracy project," refusing even to name the mysterious "content partner." Without such evidence, Hotfile cannot possibly evaluate the legitimacy of Warner's deletions or

9

plausibly expect Hotfile and the Court to simply take Warner at its word that it believed in the accuracy of its system and was implementing all known measures to limit errors. Warner should be compelled to produce documents regarding Warner's investigation of its deletions so that Hotfile can properly challenge Warner's "good faith" defense.

## CONCLUSION

Warner is playing hide-and-seek with Hotfile and the Court. It should be required to produce all documents in response to Hotfile's Request For Production No. 52, as set forth in the Proposed Order filed in support of Hotfile's motion to compel. *See* Exhibit 2 to D.E. # 164.

Respectfully submitted,

Dated: November 28, 2011

By: s/Roderick Thompson
Roderick Thompson (*admitted pro hac vice*)
Email: rthompson@fbm.com
Andrew Leibnitz (*admitted pro hac vice*)
Email: aleibnitz@fbm.com
Anthony P. Schoenberg (*admitted pro hac vice*)
Email: tschoenberg@fbm.com
Deepak Gupta (*admitted pro hac vice*)
Email: dgupta@fbn.com
Farella Braun + Martel LLP
Russ Building
235 Montgomery Street
San Francisco, CA 94104
Telephone: 415.954.4400
Facsimile: 415.954.4480
*Counsel for Defendants
Hotfile Corp. and Anton Titov*

---

challenge the (legally immaterial) *post hoc* "ratification" Warner claims to have received from the "content partner" that has not been named.

By: s/Janet T. Munn
Janet T. Munn, Fla. Bar. No.: 501281
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

And

By: s/Valentin Gurvits
Valentin Gurvits (*pro hac vice*)
Email: vgurvits@bostonlawgroup.com
**BOSTON LAW GROUP**
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone: 617.928.1800
Telecopy: 617.928.1802

*Counsel for Defendants Hotfile Corporation and Anton Titov*

CASE NO. 11-20427-WILLIAMS-TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2011, the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/Janet T. Munn
      Janet T. Munn

**GRAY-ROBINSON, P.A.**
Karen L. Stetson, Fla. Bar No.: 742937
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone:  305.416.6880
Fax:     305.416.6887

**JENNER AND BLOCK, LLP**
Steven B. Fabrizio (*Pro Hac Vice* )
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice* )
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice* )
Email: lplatzer@jenner.com
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Phone: 202.639.6000
Fax:     202.639.6066

Karen R. Thorland, Esq.
Email: Karen_Thorland@mpaa.org
Senior Content Protection Counsel
Motion Picture Association of America, Inc.
15301 Ventura Boulevard Building E Sherman Oaks, CA
Phone: 818.935.5812