UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC., TWENTIETH
CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP, COLUMBIA
PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV,
and DOES 1-10.

*Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
<u>THE DEPOSITION OF ANDREI IANAKOV</u>**

CASE NO. 11-20427-WILLIAMS/TURNOFF

## I. INTRODUCTION

Plaintiffs requested and received from the Court leave to take four days of deposition of Mr. Titov, in both his individual capacity and as Rule 30b6 designee of Defendant Hotfile Corp. ("Hotfile"), along with the depositions of the two other owners of Hotfile in Sofia Bulgaria. Plaintiffs justified this extraordinary request for four days of testimony by one individual in large part by asserting that they were unable to take the depositions of the non-managing agent independent contractors who work on Hotfile in Bulgaria, including Mr. Ianakov. Plaintiffs represented to the Court—correctly—that those depositions could proceed if at all only under the provisions of the Hague convention. Having deposed Mr. Titov for four full days, Plaintiffs now take the opposite position and ask the Court to order Mr. Ianakov's deposition under the Federal Rules.[1] There is no legal or factual basis for this request; it must be denied.

## II. FACTUAL BACKGROUND

Third Party Andrei Ianakov was an entry-level employee of Blue Ant, Ltd. ("Blue Ant"), a company which provides contract website support services to Hotfile. *See* Exhibit 1, attached hereto, which is the Declaration of Roderick Thompson in Support of Opposition to Motion to Compel the Deposition of Andrei Ianakov ("Thompson Decl."), at Ex. A [Titov Dep., Vol. 1] at 27:8-10[2]. Mr. Ianakov shared responsibility with Stanislov Manov for answering user inquiries and responding to DMCA takedown notices for Hotfile. *Id.* at 27:22-28:10. He reported to Blue Ant's owners. *Id.* at 121:11-15. He was not a manager, and he oversaw the work of no other

---

[1] Plaintiffs filed their motion on December 13, 2011 [I.E. # 184] and requested expedited briefing in light of the December 23, 2011 discovery cut off. Defendants are filing this opposition more than a week early as an accommodation to that request, and with the expectation that any Reply will also be filed promptly to allow a decision by the Court before December 23.

[2] All transcript citations are to the "rough" deposition transcripts provided by the court reporters to both parties at the conclusion of each day's testimony.

-1-

person. *Id.* at 100:14-17. He had limited discretion to answer straightforward user requests, but otherwise sought oversight from Blue Ant's owners or, for technical issues, Anton Titov. *See Id.*, Ex. B [Titov Dep., Vol. 3] at 5:5-19. He had no ownership interest in Hotfile and received no portion of Hotfile's profits. *Id.* at 61:20-25, 62:18-21. His salary ranged between $16,150 - $24,225 per year. *Id.* at 62:5-10. He had no authority to set policy for Hotfile. *Id.* at 151:18-21. He had no authority to hire or enlist any other individual to assist him with any tasks. *Id.*, Ex. C [Titov Dep., Vol. 4] at 16:2-7. He had no authority to set prices for Hotfile's services or change the benefits that users received without obtaining approval from superiors. Id. at 55:9-23.

On May 2, 2011, Hotfile first disclosed to Plaintiffs that Mr. Ianakov provided e-mail support services to Hotfile as an employee of Blue Ant, and that he resided in Sofia, Bulgaria. [*See* Dkt. No. 174-1 ¶ 5 (discussing Hotfile's initial disclosures).] For the following five months, Plaintiffs made no effort to seek his deposition. Eventually, on September 29, 2011 – ignoring the Hague Convention On Taking Evidence Abroad – Plaintiffs noticed Mr. Ianakov's deposition in Miami. [*See* Dkt. No. 174-10 at 2.][3] Plaintiffs at first asserted that every Bulgarian individual who had ever done work for Hotfile was Hotfile's "managing agent" and thus subject to deposition under American procedural rules regardless of their citizenship, residence, or any international convention. [*See* Dkt. No. 174-11 at 1 (e-mail exchange between counsel).] When Hotfile requested factual support for Plaintiffs' characterization of Mr. Ianakov as a "managing agent" subject to deposition in the absence of the protections of the Hague Convention – a proposition on which Plaintiffs admitted bearing the burden of proof – Plaintiffs responded with

---

[3] Plaintiffs noticed the deposition in Miami without any evidence that Mr. Ianakov had ever been to Miami, or Florida, or the United States in his life.

insults and threats, not facts.[4]  The next day, Plaintiffs abandoned their deposition notices without identifying a single document supporting their position.  *Id.*

On November 16, 2011, Plaintiffs instead filed a motion seeking four days to depose Defendant Anton Titov both individually and as Hotfile's corporate designee on grounds that Plaintiffs were "unable to elicit testimony from other witnesses."  [Dkt. No. 165 at 4.]  They argued that they could not obtain testimony of Blue Ant employees such as Mr. Ianakov under the procedural rules of the Hague Convention in the time remaining for discovery.  [*Id.* ("While plaintiffs may attempt to compel depositions of certain of Hotfile's "employees" **through international process**, the timeline of that process is uncertain and, in any event, under Bulgarian law, it would afford a relatively limited examination.") (Emphasis added)].  To justify their request for four days of Mr. Titov's deposition, Plaintiffs represented to the Court that Bulgaria does not ordinarily permit depositions of its citizens.  [Dkt. No. 176 at 6 n.6 ("under Bulgarian rules . . . questioning is limited and is done . . . by the court, not counsel") (citing Response Bulgaria to Convention of 18 March 1970 on Taking of Evidence Abroad in Civil or Commercial Matters ¶¶ 42, 44, 63 (2008).]  Plaintiffs told the Court that "Including the Hotfile and Titov depositions at issue in this motion, plaintiffs have noticed a total of four (4) depositions for their entire affirmative copyright case," the three owners of Hotfile and a Rule30 (b)(6) deposition.  *Id.*

The Court granted Plaintiffs motion on December 1, 2011.  As planned, Plaintiffs took the deposition of Hotfile and Mr. Titov for four full days from December 5-8, 2011 as well as the depositions of Hotfile's two other principals in Sofia Bulgaria.  Plaintiffs now have changed

---

[4] Plaintiffs commanded Hotfile to "stop playing games," halt the "abuse of the meet-and-confer process," stop "obviously seeking to stonewall and delay," make only "whatever arguments you *ethically* can," and abandon this "sham of a meet-and-confer."  [*See* Dkt. No. 174-12 (e-mail exchange between counsel).]

course and noticed the deposition of Mr. Ianakov on December 8, 2011 and seek to proceed outside of the Hague Convention. [Dkt. No. 179.] Hotfile forwarded the deposition notice to Mr. Ianakov on December 13, requesting, that while he is not a Hotfile managing agent and should not be subject to a deposition, that he confirm that he would appear if ordered by the Court. In response, and no doubt reflecting Bulgaria's history of iron curtain repression resulting in deep-seeded mistrust of governmental authorities, Mr. Ianakov expressed great concern about being questioned "by foreign lawyers," which was causing him severe psychological and emotional distress, and tendered his resignation of employment with Blue Ant, effective December 15, 2011. *Id.*, Ex. D. Two business days after noticing Mr. Ianakov's deposition, and without first speaking with Hotfile's counsel, Plaintiffs served this Motion on Hotfile.

### III.  LEGAL STANDARD

A party may depose a "managing agent" of a party pursuant to notice. Fed. R. Civ. P. 30(b)(6). If the proposed deponent is *not* an officer, director, or managing agent, then the examining party must resort to a subpoena pursuant to Rule 45 or international service of process pursuant to the Hague Convention. Fed. R. Civ. P. 45; *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 48 (E.D. Va. 2010).

In determining whether a deponent qualifies as a "managing agent," Courts consider: (1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; (4) the general responsibilities of the individual respecting the matters involved

in the litigation; and (5) whether the individual can be expected to identify with the interests of the corporation. *JSC Foreign Economic Ass'n Technostroyexport v. International Development & Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004). "Care must be taken not to confuse the analysis by suggesting that parties who are intimately involved in matters concerning the litigation, but do not manage, have attributes of managing agents." *DuPont*, 268 F.R.D. at 49 n.3. Furthermore, "[t]he general rule is that former employees cannot be managing agents of a corporation." *Id.* at 49

IV.   **ARGUMENT**

    A.    **As A Former Entry-Level Employee Of A Consultant To Hotfile, Mr. Ianakov Remains So Distant From "Managing Agent" Status That He Does Not Possess Even One Of The Five Relevant Indicia Of Managing Agents**

Case law sets forth at least five factors to consider regarding an individual's alleged status as a managing agent. *JSC*, 220 F.R.D. at 237. Mr. Ianakov does not even meet one of these criteria.

        1.    **Mr. Ianakov Never Possessed "General Powers Allowing Him To Exercise Judgment And Discretion In Corporate Matters"**

In every one of the cases cited by Plaintiffs, the identified "managing agents" were founders, chief executives, 50% stakeholders, or individuals with "supervisory authority" over the CEO of a party. *See Felman Prod., Inc. v. Industrial Risk Insurers*, No. 3:09-cv-00481, 2010 WL 5110076, at *5 (S.D.W.Va. Dec. 9, 2010) (witness "had supervisory authority over [Plaintiff's] CEO); *id.* at *7 (witness was "50% owner of [Plaintiff]"); *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2008 WL 4487679, at *3 (S.D. Fla. Sept. 29, 2008) (witness was CEO of relevant entity); *Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1453-54 (D.C. Cir. 1986) (witness was founder of plaintiff organization whose unquestioned word was scripture "venerated by the flock of the faithful"). Indeed, Plaintiffs'

-5-

case law analogized "managing agent" status under Rule 30 to the "alter ego" of a corporation, where "an individual so dominates an organization as in reality to negate its separate personality." *Id.* at 1452-3.

Here, as to Hotfile, Mr. Ianakov was neither the chief executive, the 50% stakeholder, the alter ego, or the founder venerated by his followers as a holy man and prophet. In fact, he is the former entry-level employee of a third party consulting firm who: responded to user e-mails alongside another consultant; supervised no one; answered to Hotfile's owners; possessed no ownership interest in Hotfile; collected an annual salary as low as $16,150; had no authority to set policy for Hotfile; had no authority to hire or enlist any individual to assist him; and had no authority to set prices or change user benefits. The areas in which he exercised "discretion" related to: (1) implementation of policies dictated to him by Hotfile's owners regarding repeat infringers; and (2) responding to the most straightforward user inquiries. This is not the profile of a managing agent. As Mr. Ianakov put it in his resignation email, "the fact [is] that I am only an employee of BlueAnt, and my involvement with Hotfile.com was only to the extent of web support and answering emails/ customer service." Thompson Decl., Exh. D.

### 2. Upon Learning of the Request For His Deposition, Mr. Ianakov Resigned His Employment With Blue Ant; He Cannot Be Relied Upon To Give Testimony At Hotfile's Request

The second factor considered by courts in determining "managing agent" status is "whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party." *JSC*, 220 F.R.D. at 237. Here, Mr. Ianakov cannot be expected to testify, even when directed by Blue Ant. Shortly after Plaintiffs' service upon Hotfile of the notice of deposition of Mr. Ianakov, Blue Ant's owners transmitted the notice to Mr. Ianakov and directed him to confirm that he would appear if ordered by the Court. In response, on December 13, 2011, Mr. Ianakov wrote "I am so worried that I have to be

deposed by foreign attorneys, taking into consideration the fact that I am only an employee of BlueAnt, and my involvement with Hotfile.com was only to the extent of web support and answering emails/ customer service." Thompson Decl., Ex. D. He terminated his employment with Blue Ant, citing stress, effective December 15, 2011. *Id.*

As a result, there is no reason to believe that Mr., Ianakov will appear for deposition. Given that Mr. Ianakov is no longer an employee of Blue Ant, and holds no stake in Blue Ant or Hotfile, he has no motivation to voluntarily appear for deposition – even assuming that he were a managing agent for Hotfile, which is not the case. Indeed it was the prospect of the deposition and the stress it was causing him that apparently led Mr. Ianakov to resign. Id, ("Rationalizing on all the above, I decided to leave the company BlueAnt.")

Plaintiffs' own case law demonstrates the impropriety of any deposition of Mr. Ianakov where he refuses to voluntarily appear at Blue Ant's request. In *JSC*, plaintiff sought to avoid the requirements of the Hague Convention and depose two former officers and directors of defendants as "managing agents" under Rule 30 even though both individuals resided in Europe. 220 F.R.D. at 237-38. The individuals declined to appear for deposition. *Id.* at 237. Overturning the Magistrate Judge's order compelling the depositions as "clearly erroneous or contrary to law," the Court found that "allowing deposition by notice would result in not merely the waiver of formal subpoena procedures, but also [possibly result in] sanctions on the opponent for failing to produce witnesses who are in fact beyond its control." *Id*. Holding that "[a] managing agent is a person who has the interests of the corporation so close to his heart that he could be depended upon to carry out his employer's direction to give testimony," the Court vacated the notices of deposition despite the fact that the witnesses continued to maintain attenuated connections to the defendants. *Id.* at 238.

Here, the case against Mr. Ianakov's qualification as a "managing agent" remains even stronger than the arguments possessed by the deponents in *JSC*. Mr. Ianakov *never* held a position as an officer or director of a party. Moreover, he maintains no remaining connection to Blue Ant or Hotfile. Given that he resides in a European nation subject to the Hague Convention and has refused to appear voluntarily for deposition – just like the proposed deponents in *JSC* – Plaintiffs' own case law demonstrates the impropriety of deposing Mr. Ianakov under the Federal Rules of Civil Procedure.

> **3. As A Former Entry-Level Employee At Third-Party Blue Ant, Mr. Ianakov Has No Authority Over The Management Of Hotfile As To Any Subject**

The third factor considered by courts in determining "managing agent" status is "whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination." *JSC*, 220 F.R.D. at 237. Here, Mr. Ianakov reported to Blue Ant's owners. *See Id.*, Ex. A (Titov Dep., Vol. 1) at 121:11-15. He was permitted to handle routine user inquiries on his own, but if novel issues arose he was required to obtain direction from Blue Ant's owners or, for technical issues, Mr. Titov – whom Plaintiffs have already been deposed in this case. *See Id.*, Ex. B (Titov Dep., Vol. 3) at 5:5-19.

Nor can Plaintiffs establish any need to depose Mr. Ianakov. As Plaintiffs acknowledge in their motion, Mr. Titov testified as the Rule 30b6 witness of Hotfile on all fifty subjects listed in Plaintiffs notice, including the subject of terminations of accounts for repeat infringement. See Opp. at 5 (citing Mr. Titov's deposition testimony, and noting that Mr. Titov had prepared and testified as to "what Mr. Ianakov had told him on the subject.") Plaintiffs do not argue—nor could they—that Mr. Titov was unprepared to testify on behalf of Hotfile on this or any other Rule 30b6 topic.

-8-

In short, Mr. Ianakov was not a manager, and indeed oversaw the work of no other person. *Id.*, Ex. A (Titov Dep., Vol. 1) at 100:14-17. Mr. Ianakov was far distant from being the ultimate decision-maker on any subject; he had no authority over Hotfile's management. "[T]he fact [is] that I am only an employee of BlueAnt, and my involvement with Hotfile.com was only to the extent of web support and answering emails/ customer service." Thompson Decl., Exh. D.

### 4. By Plaintiffs' Own Admission, Mr. Ianakov Did Not Have "General Responsibilities" Regarding The Matters Involved In The Litigation

The fourth factor considered by courts in determining "managing agent" status is "the general responsibilities of the individual respecting the matters involved in the litigation." *JSC*, 220 F.R.D. at 237. "Care must be taken not to confuse the analysis by suggesting that parties who are intimately involved in matters concerning the litigation, but do not manage, have attributes of managing agents." *DuPont*, 268 F.R.D. at 49 n.3.

Here, Mr. Ianakov responded to user inquiries and requests that Hotfile "take down" files. He had no managerial responsibilities – and indeed no responsibilities at all – regarding Hotfile's policies, functionality, technical direction, hiring, services, or price. With respect to the topics for discovery identified by Plaintiffs at the outset of the case, Mr. Ianakov had no involvement whatsoever with many (if not most) of the topics, including:

- "technological measures defendants took, did not take, considered taking, or could have taken to limit infringement on Hotfile";
- "defendants' revenues and profit from their infringing activities";
- "the extent to which …defendants …receive a financial benefit attributable to infringement";
- "defendants' right and ability to control infringement, including by blocking files . . . "; and

- "the identities and involvement of other individuals, investors, or entities involved in the creation or operation of Hotfile, or working in concert with defendants to facilitate infringement."

Joint Scheduling Report at 5 [Dkt. No. 54].

While Mr. Ianakov shared some role with Stanislav Manov for carrying out Hotfile's policies regarding repeat infringers and DMCA takedown requests – topics involved in this litigation – he exerted no *managerial control* as required to qualify as a "managing agent" under the Rules because he *managed* nothing at Hotfile. *See DuPont*, 268 F.R.D. at 53 (rejecting characterization of witness as "managing agent" where witness: "has no authority to approve technology, hire or fire staff, or approve travel"; "does not appear to have had any supervisory authority"; and "has not . . . *manag[ed]* anything.") As stated in *DuPont*, "[t]he law of managing agency cannot, by its plain language, be said to extend to one who was not a manager in some capacity." *Id.*

> 5. **Having Never Possessed Any Stake In Hotfile, And Having Severed Any Relationship With Hotfile's Consultant, Mr. Ianakov Cannot Be Expected To Identify With The Interests Of Hotfile**

The fifth factor considered by courts in determining "managing agent" status is "whether the individual can be expected to identify with the interests of the corporation." *JSC*, 220 F.R.D. at 237. This is important for two reasons: (1) the testimony of a managing agent binds the corporation, Fed. R. Civ. P. 32(a)(3); and (2) a managing agent's failure to obey a discovery order may subjects the corporate defendant to sanctions, Fed. R. Civ. P. 37(b)(2)(A). A third party with no interest in the corporate defendant should not bind the corporate defendant or subject it to sanctions.

Here, Mr. Ianakov never had any stake in Hotfile. He never possessed any ownership interest, and never received any share of its profits. Indeed, he did not even work directly for

-10-

Hotfile. Currently, he has no relationship with Hotfile – not even an employment relationship with Blue Ant, Hotfile's outside consulting firm – and Hotfile could exert no greater influence over Mr. Ianakov to compel compliance with Plaintiffs' subpoena. To the contrary, Mr. Ianakov may hold ill will against Hotfile for subjecting him to a notice of deposition in foreign proceedings and the accompanying stress. Hotfile should not be bound to Mr. Ianakov's behavior or testimony. This factor – which at least one court has viewed as "paramount" – militates against any characterization of Mr. Ianakov as Hotfile's "managing agent," just like all the other factors discussed herein. *In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535, 541 (D. Md. 1996).

### B. Having Prevailed On Their Motion To Extend The Deposition Of Hotfile Based On The "Unavailability" Of Mr. Ianakov, Plaintiffs Cannot Now Justifiably Demand His Deposition

Judicial estoppel bars a party from obtaining judicial relief based on serially inconsistent positions. *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) ("The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment."). Judicial estoppel applies: (1) when the present position is clearly inconsistent with the earlier position; (2) when the party succeeded in persuading the court to accept the earlier position; and (3) where the party advancing the inconsistent position would derive an unfair advantage. *Id.*

Here, Plaintiffs sought to extend the deposition of Hotfile and Anton Titov to four days based on grounds that Plaintiffs were "unable to elicit testimony from other witnesses." [Dkt. No. 165 at 4.] They represented to the Court that they could not obtain testimony of Blue Ant employees such as Mr. Ianakov under the procedural rules of the Hague Convention in the time remaining for discovery. *Id.* The Court, apparently relying on Plaintiffs' argument, granted the motion on December 1, 2011. Despite Defendants agreement to "commingle" Mr. Titov's

-11-

individual and Rule 30b(6) depositions, as the Court had suggested to shorten the overall time, Plaintiffs insisted on examining Mr. Titov for four full days of deposition in Sofia, Bulgaria between December 5-8, 2011. *See* Thompson Decl., ¶ 3. Now, Plaintiffs demand the deposition of Mr. Ianakov, in conflict with their prior representations, outside of the Hague Convention procedure. The positions are clearly inconsistent; this Court granted Plaintiffs' motion after reviewing Plaintiffs' argument; and Plaintiffs have now consumed the benefit of that ruling to Hotfile's detriment. *Robinson*, 595 F.3d at 1273. Plaintiffs should not be permitted to advance directly contrary positions to this Court. Based on judicial estoppel principles alone, Plaintiffs' Motion should be denied.

      **C.**    **Plaintiffs Cannot Properly Seek The Deposition Of Mr. Ianakov Nearly Six Weeks After Concluding The Parties' Meet-And-Confer Discussions**

Under this Court's Local Rules, "[a]ll motions related to discovery, including but not limited to motions to compel discovery and motions for protective order, shall be filed within thirty (30) days of the occurrence of grounds for the motion." Local Rule 26.1(h)(1). Apart from the fact that Plaintiffs have known of Mr. Ianakov's role in this litigation for eight months, Plaintiffs first noticed the deposition of Mr. Ianakov over ten weeks ago. [Dkt. No. 174-10 at 2.] Plaintiffs concluded the meet-and-confer negotiations on October 6, 2011, when Plaintiffs dismissed Hotfile's attempt to discuss the issue as abusive game-playing, improper stonewalling, and a sham. [Dkt. No. 174-12 (identifying further discussion as a "dead issue").] Nonetheless – even though Hotfile did not produce any further documents from Mr. Ianakov since September – Plaintiffs refused to bring any motion to compel for over two months. Instead, Plaintiffs waited until the last ten days of discovery – when the parties had eighteen remaining depositions to complete – and demanded that Hotfile file its opposition to Plaintiffs' motion within *three business hours* of the filing. Mot. at 5. Even though no additional meet-and-confer discussion

occurred between October 6, 2011 and the filing on December 13, 2011 – indeed, Plaintiffs filed this Motion without even talking to Hotfile's counsel, despite Hotfile's stated willingness to talk – Plaintiffs filed their Motion nearly six weeks after the deadline set by the Local Rules. On its own, this reason justifies denial of Plaintiffs' Motion. *See* Local Rule 26.1(h)(1) ("Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought.").

## V.     CONCLUSION

There is no legal or factual basis to consider Mr. Ianakov as a managing agent; Plaintiffs' motion to compel the deposition of Andrei Ianakov should be denied. A proposed Order is attached as Exhibit 2.


Dated:  December 19, 2011                                         Respectfully submitted,

s/ Andrew Leibnitz
Roderick M. Thompson *(Admitted pro hac vice)*
rthompson@fbm.com
Andrew Leibnitz *(Admitted pro hac vice)*
aleibnitz@fbm.com
Anthony P. Schoenberg *(Admitted pro hac vice)*
tschoenberg@fbm.com
Deepak Gupta *(Admitted pro hac vice)*
dgupta@fbm.com
Janel Thamkul *(Admitted pro hac vice)*
jthamkul@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

s/ Janet T. Munn
Janet T. Munn, Fla. Bar No. 501281
RASCO KLOCK, et al.
283 Catalonia Avenue, Suite 200
Coral Gables, FL 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

AND

s/Valentin Gurvits
Valentin Gurvits *(Admitted pro hac vice)*
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone: 617.928.1800
Telecopy: 617.928.1802
Email: vgurvits@bostonlawgroup.com

*Counsel for Defendants Hotfile Corporation and Anton Titov*


*Counsel for Defendants*

-14-

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2011, the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/Janet T. Munn
    Janet T. Munn

Karen L. Stetson, Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Steven B. Fabrizio (*Pro Hac Vice* )
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice* )
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice* )
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

Karen R. Thorland, Esq. *(Pro Hac Vice)*
Senior Content Protection Counsel
Motion Picture Association of America, Inc.
15301 Ventura Boulevard Building E
Sherman Oaks, CA
Telephone: 818.935.5812
Email: Karen_Thorland@mpaa.org