# ATTACHMENT E

# EXHIBIT B

Highly Confidential

Page 191

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2            CASE NO. 11-20427-WILLIAMS/TURNOFF
 3   - - - - - - - - - - - - - - - - - - - - - - - - -
     DISNEY ENTERPRISES,
 4   INC., TWENTIETH CENTURY
     FOX FILM CORPORATION,
 5   UNIVERSAL CITY STUDIOS
     PRODUCTIONS LLLP,
 6   COLUMBIA PICTURES
     INDUSTRIES, INC., and
 7   WARNER BROS.
     ENTERTAINMENT, INC.,
 8
 9              Plaintiff,
10   v.
11   HOTFILE CORP., ANTON
     TITOV, and DOES 1-10,
12
13              Defendants.
14
     HOTFILE CORP.,
15
                Counterclaimant,
16
     v.
17
     WARNER BROS ENTERTAINMENT
18   INC.,
                Counterdefendant.
19
     - - - - - - - - - - - - - - - - - - - - - - - - -
20                       VOLUME II
              H I G H L Y  C O N F I D E N T I A L
21       (Pursuant to protective order, the following
       transcript has been designated highly confidential)
22
                30(b)(6) DEPOSITION OF ANTON TITOV
23                    Radisson Blu Hotel
                       Sofia, Bulgaria
24               Tuesday, December 6, 2011
                       AT:  9:10 a.m.
25                    Job No: 44175
```

TSG Reporting - Worldwide   (877) 702-9580

Highly Confidential

Page 279



18  BY MR. FABRIZIO:

19  Q.  Did Hotfile have any systematic process to identify

20      repeat copyright infringers prior to this litigation?

21  MR. THOMPSON:  Objection, vague.

22  A.  Not based on a computer decision, if that is what you

23      mean by "systematic."

24  BY MR. FABRIZIO:

25  Q.  Well, that's one thing that I mean by "systematic."  But

Highly Confidential

Page 280

1      was there a regular practice of identifying copyright
2      infringers and tracking copyright infringers so that
3      Hotfile could identify repeat copyright infringers?
4  MR. THOMPSON:  Objection, vague.
5  A.  The practice was to terminate repeat infringers after
6      a complaint from owner of a copyright, and -- or even
7      just an indication from copyright owner that he has
8      a certain problem with the user.  And there might be
9      other ways to -- I mean, the general idea was that it
10     was by discretion.
11 BY MR. FABRIZIO:
12 Q.  By discretion of who?
13 A.  Most of the time it was by Ianakov and ▉.
14 Q.  Did you or any of the other shareholders, to your
15     knowledge, give Mr. Ianakov or ▉ instructions as to
16     when they should terminate copyright infringers?
17 MR. THOMPSON:  Objection.  Overbroad, vague as to time.
18 BY MR. FABRIZIO:
19 Q.  For the current time, all my questions concern the
20     period of time prior to the filing of this action.  When
21     we're shifting to the post complaint period of time,
22     I'll let you know.  Okay?
23 A.  Yes.
24 Q.  So did you -- or, to your knowledge, any of the other
25     Hotfile shareholders -- ever give Mr. Ianakov or

1     Mr. ▓▓▓▓ instructions with regard to terminating
2     copyright infringers?
3  MR. THOMPSON:  Objection, overbroad.
4  A.  I believe so.
5  BY MR. FABRIZIO:
6  Q.  What instructions did you give them?
7  A.  I don't remember any specifics, but I think that the
8     outline of the instructions was to terminate on request
9     and to try to help the complaining party.
10 Q.  Prior to the filing of this complaint, when Hotfile
11    received a DMCA notice from a copyright owner, did
12    Hotfile attempt to identify the user who had uploaded
13    the offending file?
14 MR. THOMPSON:  Objection, overbroad.
15 A.  I don't believe that would be the case most of the time.
16    But again, on discretion, employees could investigate
17    further.
18 BY MR. FABRIZIO:
19 Q.  When you say "on occasion," [sic] do you mean when
20    a copyright owner insisted?
21 MR. THOMPSON:  Objection.  Vague, misstates testimony.
22 BY MR. FABRIZIO:
23 Q.  Well, let me -- let me rephrase that.
24         Absent a request, a specific request by a copyright
25    owner, prior to the filing of this action, did Hotfile

Highly Confidential

Page 282

1    have a practice of identifying the user who had uploaded
2    files identified as infringing in DMCA notices?
3    MR. THOMPSON:  Objection.  Overbroad, and asked and
4    answered.
5    A.   I won't say "specific request," but if a copyright
6    holder would raise some kind of concern that I -- I
7    think can be -- can be summarized, again, a discretion,
8    identification could be made.
9    BY MR. FABRIZIO:
10   Q.   Okay.  My question, though, is without a request from
11   a copyright owner, when Hotfile received a DMCA notice,
12   did Hotfile, as a matter of practice, identify the user
13   who had uploaded the offending file?
14   MR. THOMPSON:  Objection.  Asked and answered.
15   A.   I don't believe so.

[redacted]

A. Andre Ianakov.
Q. And he had responsibility for interfacing with copyright owners and their agents on infringement matters?
A. He does.

[redacted]

Highly Confidential

Page 289

■ ■ ███████████████████████████
■ ■ ███████████████████████████
■ ■ ███████████████████████████
■ ■ ███
■ ███████████████
■ ■ █████████████████████
■ ■ █████████████

8   MR. FABRIZIO: We've marked as Titov exhibit 34 a document
9   produced by Hotfile, Bates numbered HF00000048 through
10  315. The version we have marked as exhibit 34 is an
11  excerpt of that document that omits the pages between
12  HF49 through HF284. Those pages reflect dates after the
13  filing of this complaint, and we were focusing on dates
14  prior to the filing of this complaint.
15       Mr. Thompson, this is the document I sent you some
16  days ago and asked you if Mr. Titov would read and
17  affirm whether the entries highlighted in yellow
18  represented the only instances, prior to the filing of
19  this complaint, that Hotfile had terminated a user for
20  reasons related to copyright infringement.
21       (Titov exhibit 34 marked for identification.)
22  BY MR. FABRIZIO:
23  Q.  Mr. Titov, have you had an opportunity to review what
24      we've marked as exhibit 34 prior to today?
25  A.  I didn't review it before, no.

Page 290

1  Q.  And did you look at the yellow entries and consider the
2      question we had posed through your counsel?  And that is
3      whether the entries highlighted in yellow represent the
4      only instances prior to the filing of this complaint
5      where Hotfile terminated a user for reasons of copyright
6      infringement?
7  A.  I spoke with Andrew on this matter, and since at the
8      beginning we didn't have the functionality of suspending
9      the user rather than -- we only had functionality of
10     deleting the user, which would vanish all information
11     about it from the database.  He thinks that at least
12     some users were terminated by deletion.
13 MR. THOMPSON:  I'm not sure everyone got the -- "vanished
14     the information."
15 BY MR. FABRIZIO:
16 Q.  Does Hotfile have any records of any other users being
17     terminated for reasons related to copyright
18     infringement?
19 MR. THOMPSON:  Objection, overbroad.
20 A.  I don't think Hotfile has any records that are not
21     produced.
22 BY MR. FABRIZIO:
23 Q.  And do you personally have any knowledge of any user
24     being terminated for reasons of copyright infringement,
25     prior to the filing of this complaint, beyond those

Page 291

1        highlighted on exhibit 34?
2   A.   If "personally" doesn't apply to information I haven't
3        been told, then no.
4   Q.   In this case "personally" means information of which you
5        have personal knowledge.  Do you personally have any
6        information as to users terminated for reasons related
7        to copyright infringement before this case began, other
8        than those highlighted in yellow in exhibit 34?
9   A.   I don't think so.
10  MR. FABRIZIO:  Counsel, if Hotfile is going to rely on some
11       vague assertion by Mr. Ianakov that there may have been
12       others of -- and this corporate designee doesn't have
13       any information beyond that, Hotfile needs to produce
14       Mr. Ianakov as a 30(b)(6) designee.
15  MR. THOMPSON:  Mr. Fabrizio, as we mentioned this morning,
16       you're not the judge; if you want to make requests of us
17       in discovery, that's fine.  But we're not making rulings
18       in the middle of the deposition.
19  MR. FABRIZIO:  I wasn't making a ruling.  I was simply
20       pointing out that this witness can't provide evidence to
21       a topic that is obviously of central relevance to the
22       case, and that we sent you a document in advance to
23       consider, and other than saying he had a conversation
24       with someone who said there may have been something
25       else, has no further knowledge on the subject.

Page 292

1   MR. THOMPSON:  Mr. Titov investigated the question you
2       asked.  I don't think your summary of his testimony is
3       accurate.  He also mentioned that there were documents
4       produced in the case, which he had, obviously.
5   MR. FABRIZIO:  We are requesting, while we are here in
6       Bulgaria, that Hotfile produce Andre Ianakov as
7       a 30(b)(6) designee on this topic.
8   MR. THOMPSON:  Your request will be considered.  I can tell
9       you we don't have the time for this trip, as you know,
10      for any more depositions.
11  MR. FABRIZIO:  Well, it would be part of the Hotfile
12      30(b)(6), so it would come out of the Hotfile 30(b)(6)
13      part.  I'm not looking to add time to the deposition
14      schedule.
15  MR. THOMPSON:  Mr. Fabrizio, you can't dictate who the
16      30(b)(6) witness is.  Mr. Titov is prepared to testify;
17      I suggest you ask him questions.
18  MR. FABRIZIO:  I wasn't trying to dictate; I was making
19      a request and clarifying the request since you made an
20      excuse that I didn't think was valid.
21  MR. THOMPSON:  Let's -- let's not argue.  I understand your
22      request.

[redacted]
[redacted]
[redacted]