

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

## PLAINTIFFS' RENEWED MOTION AND MEMORANDUM OF LAW TO COMPEL PRODUCTION OF DOCUMENTS FROM LEMURIA COMMUNICATIONS, INC.

Earlier in this case – before any deposition discovery – plaintiffs served a subpoena on a company called Lemuria Communications, Inc. ("Lemuria"). Lemuria is a Florida company owned by defendant Titov that, according to defendants, provides "hosting" services for the Hotfile website. At the time of that subpoena, plaintiffs had reason to believe, but no hard proof, that Lemuria was far more involved in the infringing operations of Hotfile than defendants were disclosing. In response to that subpoena, Lemuria, represented by Hotfile's counsel, repeatedly told the Court, expressly and impliedly, that Lemuria was an arms-length third party simply

1

providing Internet services to Hotfile, much like any Internet service provider might provide hosting services to any customer. Based on those representations, the Court declined to order Lemuria to respond to the subpoena beyond the production of documents Lemuria had agreed to produce (which were limited to documents about the so-called "hosting" service Lemuria provided for Hotfile).

Lemuria's representations to this Court, however, were misleading to say the least. Accordingly, because defendants and Lemuria appear to have used the fiction of Lemuria as a "third party" to conceal potentially incriminating documents, plaintiffs renew their motion to enforce the subpoena and compel the production of documents from Lemuria.

### *Lemuria Has Hidden the True Extent of Its Involvement with Hotfile*

Recent party depositions have demonstrated that there is no corporate separation between Lemuria and the other shell companies that operate the Hotfile website. Lemuria is as deeply involved in the operation of the Hotfile website as defendant Hotfile Corporation.

By way of background, the Hotfile website is operated through several companies, each owned by defendant Titov and/or one of the other two Hotfile principals, Messrs. Rumen Stoyanov and Atanas Vangelov. Declaration of Duane C. Pozza in Support of Plaintiffs' Renewed Motion to Compel Production of Documents from Lemuria Communications, Inc. ("Pozza Decl."), Ex. A (Titov Dep.) at 84-85. One of those companies is defendant Hotfile Corporation. Hotfile Corporation is owned by Messrs. Titov, Stoyanov and Vangelov. Defendant Hotfile Corporation does not have any employees of its own. Another company, Blue Ant, provides all of the personnel who operate the Hotfile website. *Id.*, Ex. A (Titov Dep.) at 52-54. Blue Ant is owned by Messrs. Stoyanov and Vangelov. *See Id.*, Ex. A (Titov Dep.) at 15-16. Blue Ant does not appear to do anything other than provide personnel and software development services for the Hotfile website. Defendants formed another company, Hotfile Ltd., for the purpose of receiving payment from Hotfile users for "premium" Hotfile accounts. *Id.*, Ex. A at 111-12. Hotfile Ltd. is owned by Hotfile Corporation, and defendant Titov is the "managing director" of Hotfile Ltd. *Id.*, Ex. A at 87-88. Hotfile Ltd. collects millions of dollars a month in Hotfile subscription fees. It does not ever transfer that money to Hotfile Corporation, though Hotfile Corporation considers all that revenue to be its own property. *Id.*, Ex. A at 113.

Lemuria, ostensibly owned by defendant Titov, is the fourth company. *Id.*, Ex. A at 54. Contrary to Lemuria's previous representations to the Court, Lemuria serves as a linchpin of

operations related to the Hotfile website.  As discussed below, Lemuria contracts for the development and maintenance of the software that operates the Hotfile website, pays for the employees who run the Hotfile website, arranges and pays for essentially all business services related to the Hotfile website (including defendants' counsel in this case), and serves as a "conduit" through which the Hotfile principals funnel and hide Hotfile-generated cash.

While plaintiffs would prefer, at this point in the schedule, to leave Lemuria's lack of separate corporate existence as a matter to be addressed in enforcement proceedings, doing so would materially prejudice plaintiffs.  Because of the way it represented its role to the Court, Lemuria succeeded in limiting the documents it produced to only those related directly to its provision of "hosting" services for the Hotfile website, thereby concealing potentially incriminating documents.  By way of illustration, if defendant Titov engaged in communications with Messrs. Stoyanov and Vangelov about copyright infringement on the Hotfile website, Lemuria (and defendants) would have been able to conceal those documents under the guise that those communications were between Lemuria (which Mr. Titov owns and operates) and Blue Ant (which Messrs. Stoyanov and Vangelov own and operate).  Likewise, Lemuria and defendants would have been able to conceal incriminating communications between and among Mr. Titov and any "employees" of Hotfile under the similar guise that those communications were between Lemuria and Blue Ant personnel.

Ever since the party depositions that revealed the extent of Lemuria's true role, plaintiffs have been seeking assurances from defendants' counsel (who are also Lemuria's counsel) that no such documents have been withheld.  Plaintiffs have not been able to get a straight answer to that question.  Instead, defendants/Lemuria have insisted that plaintiffs identify particular documents and prove that the documents exist and have not been produced.  However, by misrepresenting Lemuria's role, Lemuria and defendants created a situation by which they could conceal the existence of potentially critical documents and communications.  Plaintiffs cannot know (much less prove) that those documents exist.  The refusal of Lemuria and defendants to confirm that such documents have not been withheld speaks volumes.

### *Lemuria has No Separate Corporate Existence from the Other Hotfile Entities.*

Discovery has shown that Messrs. Titov, Stoyanov and Vangelov operate Hotfile using the corporations that suit their immediate needs. Lemuria, in particular, conducts a substantial amount of the operational activities needed to run the Hotfile website. By way of example only:

- Lemuria commissioned and pays Blue Ant for the development and maintenance of the software used to run Hotfile. Pozza Decl., Ex. A (Titov Dep.) at 57. Despite that, Mr. Titov testified that all parties consider Hotfile Corp. the true owner of the intellectual property rights in the software. *Id.*, Ex. A at 150-51. There is a contract between Lemuria and Blue Ant for the software development and maintenance that provides for Lemuria to pay Blue Ant $70,000 a month. However, without explanation or memorialization of any contract modification, Lemuria has been paying Blue Ant $250,000 a month – more than three times the "contract" amount. *Id.*, Ex. A (Titov Dep.) at 128.
- Lemuria "contracts" and pays for all Blue Ant personnel that operate the Hotfile website. There is no contract between Lemuria and Blue Ant for such personnel services, although Mr. Titov claims that these services are an unspoken part of the Lemuria/Blue Ant contract for software development. *Id.*, Ex. A (Titov Dep.) at 52-54.
- Lemuria, which does not perform services for any other paying customer, does not in fact "perform" any "hosting" or "internet connectivity" services for Hotfile. Rather, Lemuria merely serves as a "middleman," arranging and paying for other companies to provide those services for the Hotfile website. *Id.*, Ex. A (Titov Dep.) at 56.
- Lemuria pays Hotfile Corp.'s bills when and as it is directed. Indeed, Lemuria is paying Hotfile's legal bills in this action. *Id.*, Ex. A (Titov Dep.) at 128.
- Lemuria does not have a written contract or documented understanding with Hotfile Corp. or Hotfile Ltd. for any of these activities. *Id.*, Ex. A (Titov Dep.) at 52, 151. Lemuria does not even invoice Hotfile Corp. or Hotfile Ltd. for these services. When asked how Lemuria knows what to charge Hotfile, Mr. Titov testified that Lemuria and Hotfile periodically get together and just decide. Lemuria buys all of Hotfile's servers through which the Hotfile website operates. *Id.*, Ex. A (Titov Dep.) at 56. When asked to explain how Hotfile reimburses Lemuria for that expense, Mr. Titov said that the

4

"understanding" was that Lemuria would get expenses "plus a little bit more." *Id.*, Ex. A (Titov Dep.) at 95.

- After the litigation commenced, Hotfile began using a "filtering" technology from a company called Vobile to prevent users from uploading infringing copies of plaintiffs' copyrighted works. Plaintiffs contend that Hotfile should have been using filtering technology from the outset (but refused so it could profit from the infringement). Yet, although Hotfile is asserting that filtering is ineffective, plaintiffs have been stymied in their effort to discovery documents related to Lemuria's implementation of Vobile's filter, as defendants produced almost no documents about it. The reason is now clear, as Lemuria (not Hotfile Corp. or Hotfile Ltd.) entered into the arrangement with Vobile through which Vobile provides its filtering technology to Hotfile. *Id.*, Ex. A (Titov Dep.) at 515-16.

- Finally, illustrating the lack of separation between the Hotfile entities, at Mr. Stoyanov's direction, Lemuria transferred a large amount of money (about $500,000) to a company called FinArt – a company owned by one of Mr. Stoyanov's friends. *Id.*, Ex. A (Titov Dep.) at 134-37. Mr. Stoyanov told Mr. Titov to record the payment as having been made for servers and hosting. At his deposition, however, Titov admitted that FinArt had never provided any such services (or any services) for Lemuria. *Id.* at 143-44. Mr. Titov tried to claim the money was a "loan" to FinArt – a "loan" that is not memorialized anywhere or even recorded on the accounting records of Lemuria. In fact, Titov said the only way he could even find out the true amount of the "loan" was to go back and look at the wire transfer records. When asked if FinArt ever repaid the "loan," Titov did not know. He said he thought FinArt might have paid the money to Hotfile Corp. and that Hotfile Ltd. might have then repaid Lemuria. *See id.* at 135-37. When asked whether Lemuria charged FinArt interest on the "loan," Titov conceded that he would have to ask Mr. Stoyanov to know.

These are not the financial or business dealings of a company with an independent existence. And defendants have misrepresented Lemuria's Hotfile-related dealings in other litigation as well. In previous litigation, Mr. Titov submitted a sworn declaration attesting that Lemuria "was formed for the purpose of providing web-hosting services, in particular for Hotfile.com," and that "Lemuria has a contract with Hotfile, Ltd. to provide web hosting services

for Hotfile.com. It receives payment for those services only." Pozza Decl. (Dkt. #109), Ex. A at 2. Those representations are simply irreconcilable with Lemuria's true activities in the operation of Hotfile. Defendants should not be permitted to shield documents from discovery that are in the possession of Lemuria.

### *Plaintiffs' Requests.*

Plaintiffs have previously moved for documents related to Lemuria's relationship with the Hotfile website and any "Hotfile Entity," which includes the defendant Hotfile Corp. and its wholly owned subsidiary Hotfile Ltd, pursuant to Requests Nos. 1(a), (b), (d), and 2(d) of plaintiffs' subpoena. To date, Lemuria has produced such documents only to the extent that they relate to Lemuria's provision of hosting services to Hotfile. Based on the newfound evidence, plaintiffs here seek the production of such documents to the extent they relate to any aspect of the operations of Hotfile.

**A. Plaintiffs' Requests for Production Nos. 1(a), (b), (d), and 2(d).**

Request for Production No. 1:

All documents pertaining to your relationship with the Hotfile Website, including:

  a) All documents pertaining to communications with Defendants or any Hotfile Entity.
  b) All documents pertaining to Lemuria's role in operating the Hotfile Website.
  …
  d) All documents pertaining to any contracts, agreements, undertakings, or understandings pertaining to Defendants or the Hotfile Website.

Request for Production No. 2:

All documents pertaining to your relationship with any Hotfile Entity, including: …..

  d) All documents pertaining to any agreements, contracts, undertakings, or understandings between Lemuria and any Hotfile Entity;

Objections and Responses to Requests Nos. 1 and 2

**B. Response to Request for Production No. 1:**

Lemuria objects to this request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Lemuria objects to this request as unduly burdensome to the extent it seeks documents or information that can be obtained with less burden from the parties to this litigation or other third parties.

6

Lemuria further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrases "Support Staff," "undertakings," "understandings," "response to," and "actions taking." Moreover, the undefined phrases "Bandwidth," "Internet Connectivity," and "Transit" appear to carry essentially the same meaning in relation to Lemuria, as do the terms "Co-location space" and "Datacenter facilities."

Lemuria further objects to this request as overbroad and unduly burdensome to the extent that it seeks documents pertaining to any "Hotfile user" as that term is defined in the subpoena. Lemuria cannot reasonably be expected to know the identity of every "Hotfile user" unless individuals identify themselves as such, and thus Lemuria undertakes no obligation to produce documents exchanged with persons other than those who identify themselves as users of Hotfile's website.

Lemuria further objects to this request on the grounds that it seeks confidential and private information that is protected by, among other things, the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* and the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*

Lemuria further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Lemuria further objects to this request to the extent it seeks documents not in the possession, custody, or control of Lemuria.

Subject to and without waiving the foregoing general and specific objections, Lemuria responds as follows: Regarding subparts (a), (b), and (d), Lemuria will produce all nonprivileged documents in its possession, custody, or control located after a reasonable search relating to Lemuria's provision of hosting services to Hotfile. Regarding subparts (c), (e), (f), and (g), Lemuria will produce all nonprivileged and responsive documents in its possession, custody, or control located after a reasonable search.

Response to Request for Production No. 2:

Lemuria objects to this request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Lemuria objects to this request to the extent it seeks documents or information that can be obtained with less burden from the parties to this litigation or other third parties.

Lemuria further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrases "formation," "undertakings," "financial arrangements," "revenue sharing," "accountings," and "understandings."

Lemuria further objects to this request as overbroad and unduly burdensome to the extent that it seeks documents pertaining to any "Hotfile user" as that term is defined in the subpoena.

Lemuria further objects to this request on the grounds that it seeks confidential and private information that is protected by, among other things, the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* and the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*

7

    Lemuria further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery admissible evidence, particularly in its request for private financial information regarding Lemuria that is unrelated to the present litigation.

    Lemuria further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Lemuria further objects to this request to the extent it seeks documents not in the possession, custody, or control of Lemuria.

    Subject to and without waiving the foregoing general and specific objections, Lemuria responds as follows: Lemuria will produce all nonprivileged documents in its possession, custody, or control located after a reasonable search relating to Lemuria's provision of hosting services to Hotfile. Regarding subparts (a) and (b), Lemuria will produce documents sufficient to show the ownership and identity of management of Lemuria. Regarding subpart (c), Lemuria has undertaken a reasonable search for documents sufficient to show joint ownership of any property by Lemuria and Hotfile and found no responsive documents. Regarding subpart (f), Lemuria has undertaken a reasonable search for responsive documents and found no responsive documents other than articles of incorporation and bylaws, which will be produced.

**C. Grounds Assigned for Defendants' Objections:**

The grounds are set forth in the objections.

### *The Court Should Order the Production of Documents Withheld by Lemuria.*

  There is no question that the materials plaintiffs have been seeking from Lemuria are directly relevant to the claims and defenses in the case, and the Court never suggested otherwise. The Court has previously accepted that Lemuria was a bona fide third party and denied plaintiffs' motion to compel on the grounds of burden. The Court's decision was explicitly based on the premise that Lemuria's only function was to provide hosting services to Hotfile. *See* Order at 3 ("Lemuria has already agreed to produce information about the internet hosting services it provides Hotfile."). Indeed, Mr. Titov's declaration in opposition to plaintiffs' motion stated that Lemuria was founded "in order to obtain Internet Protocol addresses . . . for servers located in the United States." Opp., Ex. A at 1.

  However, Mr. Titov's recent testimony has undermined any legitimate claim by Lemuria that it is uninvolved in the operation of Hotfile and should not be required to produce the requested documents. It is now clear, as Mr. Titov has known all along, that Lemuria is central to the operations of Hotfile. There is effectively no difference between the various corporate entities that are involved in the operation of Hotfile – any of them could be in possession of critical documents. Lemuria in particular could be used shield communications between

8

Lemuria and Blue Ant, Vobile, and any other third parties with whom Lemuria has communicated to conduct business for Hotfile.

In light of these facts, the "burden" on Lemuria to produce these documents cannot be a ground to withhold them, as Lemuria is merely a front for Titov to manage the operations of Hotfile, not a legitimately independent third party. Defendants should not be permitted to shield any documents about Hotfile's operations merely because they are in the possession of Lemuria. *See, e.g., Echostar Satellite v. Viewtech, Inc.*, No. 10-60069-MC, 2010 WL 2822109, at *3 (S.D. Fla. July 16, 2010) (ordering production of relevant information from third party distributor solely in possession of such information). Moreover, the fact that Lemuria has repeatedly mischaracterized itself as an arms-length hosting provider undermines any claim now that it should not be subjected to the burden of producing the requested documents.

Finally, the requested documents about Hotfile's operations are relevant and may be central to the case. They encompass communications with the very individuals operating Hotfile (the Blue Ant contractors) and communications related to filtering out copyrighted content on the site, among other actions that Lemuria may have taken on behalf of Hotfile. Absent Lemuria's meritless burden objection, there is no basis for permitting Lemuria to withhold responsive documents in light of the newfound evidence of Lemuria's central involvement with Hotfile's operations.

Plaintiffs therefore respectfully request that the Court order Lemuria to produce documents responsive to Requests 1(a), (b), (d), and 2(d) of the subpoena, to the extent those documents relate to Hotfile's operations.[1]

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(a)(3), U.S. District Court for the Southern District of Florida, counsel for Plaintiffs have conferred with counsel for Defendant Hotfile Corp. in a good-faith efforts to resolve the issues raised in this Motion without court action, but have been unable to do so.

---

[1] Plaintiffs attempted to file the unredacted under seal filing with the Court on December 23, 2011 before 4pm, but the clerk's office was closed. Counsel for Plaintiffs had previously called to confirm that the clerk's office would be open on December 23, 2011, and were not informed of the early closing.

DATED: December 23, 2011

By: /s/ Karen L. Stetson
Karen L. Stetson

GRAY-ROBINSON, P.A.
1221 Brickell Avenue, 16th Floor
Miami, FL 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 23rd day of December, 2011, I served the following document via overnight delivery and by email to N. Andrew Leibnitz, counsel for Lemuria Communications, Inc. at his listed address on the attached service list.

In addition, I served the following document on all counsel of record on the attached service list via the Court's CM/ECF filing system:

> **Plaintiffs' Renewed Motion and Memorandum of Law to Compel Production of Documents from Lemuria Communications, Inc.**

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Karen L. Stetson
Karen L. Stetson

## SERVICE LIST

## Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
## CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*


BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*