UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC., TWENTIETH
CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP, COLUMBIA
PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV,
and DOES 1-10.

*Defendants.*                                                    /
HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*                                              /

## HOTFILE'S OPPOSITION TO WARNER'S MOTION TO COMPEL THE PRODUCTION OF TITOV DEPOSITION EX. 27

This motion should never have been filed.  And it should have been withdrawn.

Counterclaimant Hotfile Corp. ("Hotfile") has reminded Counterdefendant Warner Bros.

Entertainment ("Warner") that the motion was filed too late.  Regrettably, and in contravention

of the Federal Rules and multiple provisions of the of the Protective Order entered in this case

[D.E. # 68], Warner has failed to withdraw its motion that seeks improperly to compel

production of a document inadvertently produced and properly "clawed back" by Hotfile.  The

document is clearly protected work-product prepared at the request of trial counsel, and Warner's

argument for waiver based on inadvertent production is foreclosed by the terms of the Protective Order.

Instead of withdrawing the motion and returning all copies of the document as required by the Court's Protective Order, Warner has forced Hotfile to incur the time and expense of filing this opposition.  The Protective Order requires any motion to compel an inadvertently produced document to be filed within **five court days** of the request for the document's return.  Warner failed to do so.  Warner filed this motion to compel—**fourteen days** after Hotfile requested the return or  destruction of the document, ignoring its obligations under the Protective Order.  Instead it violated the Court's Order by introducing the recalled, inadvertently produced document (it was required to return or destroy) at a deposition, and then refusing to allow the court reporter to return the exhibit.

Warner's untimely motion is based on the unsupported claim that Hotfile intended to produce the document that it clawed back (twice), even though it withheld as privilege several other copies of the same document.  The Protective Order is unequivocal that a party must return all copies of any inadvertently produced documents, that the inadvertent production of any document "will not be deemed to waive any privilege or work product protection," and that a party seeking to compel production of an inadvertently produced document "may not assert as a ground for the entering of [an order compelling production] the fact or circumstances of the inadvertent production," Warner's motion to compel production of the Exhibit 27 to the deposition of Anton Titov ("Titov Depo. Ex. 27")—even if it had been filed within the Protective Order's five day deadline—must fail. (Protective Order, D.E # 68, at ¶ 20).

## BACKGROUND

During the course of the discovery, Hotfile has produced literally millions of pages of its emails.  (Declaration of Roderick M. Thompson in Supp. of Opp. to Mot. To Compel, attached hereto as Exhibit A, at ¶ 2 ("Thompson Decl.")).  In reviewing and producing a tremendous number of documents in the short time Hotfile diligently endeavored to pull and withhold from production any privileged emails.  Despite Hotfile's efforts, a small amount of inadvertent

production of some emails occurred.  As the parties shifted to deposition discovery and began their review of the voluminous number of produced emails in preparation for depositions, both sides found it necessary to invoke the "claw back" procedure to request the other party to return documents that had been inadvertently produced.  Hotfile returned Warner's inadvertently produced documents without hesitation in compliance with the Federal Rules and the Court's Order.  Warner did not.  It improperly refused to return the inadvertently produced document when the issue first surfaced at the Titov deposition.  It then filed this improper and time-barred motion to compel.

At the outset of the discovery process, the parties agreed to, and the Court entered, a Stipulated Protective Order.  (Stipulated Protective Order, D.E. # 68, at ¶ 20).  Among other things that order provided for the mandatory and prompt "return of any document…inadvertently produced" without such recall being "deemed to waive any privilege or work product protection.".  The Protective Order requires any motion to compel such a recalled document to be filed within five days of the recall: "A party may move the Court for an order compelling production [of an inadvertently produced] document, and may present the document to the Court under seal within five (5) court days of receiving a request to return the document."  *Id*. Moreover, the parties agreed that "the fact or circumstances of the inadvertent production" cannot be "assert[ed] as a ground for the entering of…an order" compelling production of the inadvertently produced document.  *Id.*

Relying on the plain terms of the Order, Hotfile undertook the burdensome, time consuming, and inexact task of producing a huge volume of documents to Plaintiffs as quickly as possible.  Over the course of the discovery process so far, Hotfile has produced more than 1.14 million documents; all of the Plaintiffs together in contrast have produced fewer than 30,000 documents. (Thompson Decl., at ¶ 2).  As anticipated by the parties when they stipulated to the Protective Order and, as is common in cases such as this in which millions of documents are being produced, some privileged documents out of the millions produced were produced

inadvertently.  Promptly upon becoming aware of these inadvertently produced documents, Hotfile asked for their return or destruction pursuant to mandatory terms of the Protective Order.

One of those documents, Titov Depo. Ex. 27, was produced under two Bates numbers, because it was an email sent to multiple inboxes from which Hotfile collected and produced documents.  In its production, Hotfile located and withheld that document from several of the custodians' email inboxes.  Copies from two of the inboxes were inadvertently produced.  In preparing for the three depositions of Hotfile's principals to be taken in Bulgaria, Hotfile's attorneys reviewed the documents previously produced and located the two inadvertently produced copies of Titov Depo. Ex. 27.  The first copy, identified by the Bates number (HF02866338) on its first page was recalled by email on November 28, 2011.  (Thompson Decl., at ¶ 4, Ex. 1).  Though the email recalling the first document asked for the destruction of "all copies of these documents," Hotfile also specifically identified and recalled the other copy of the document, identified by Bates number HF00036777, on December 3, 2011—two days prior to the deposition of Anton Titov as the 30(b)(6) representative for Hotfile. *See* (Declaration of Luke Platzer, Ex. B, D.E.# 181-3, at p. 2).

Instead of destroying the document, or filing a motion to compel within five days of receiving the first recall request as required under the Protective Order, counsel for Warner marked HF02866338 as an exhibit to the deposition of Anton Titov in Bulgaria.  Because the deposition was in Bulgaria, and the attorneys who recalled Titov Depo. Ex. 27 were in the United States, the attorney defending the Titov deposition did not have a complete list of documents recalled available at the time of the deposition.  (Thompson Decl., at ¶ 6). Nevertheless, Counsel for Hotfile specifically and repeatedly objected on work product grounds to questioning about the internal investigation Hotfile conducted at counsel's instruction regarding Warner's improper deletion of files from Hotfile—the very subject of Titov Depo. Ex. 27.  (*Id.* at ¶ 9).  In particular, Counsel for Hotfile objected "'to the extent that it calls for work product information which commenced **after the date of early March 2011'** when Hotfile first started its work product protected investigation at the direction of my firm."  (*Id.* at ¶ 9 (quoting

Ex. 3, 167:4-9) (Emphasis added)).  Counsel for Warner nonetheless introduced the recalled document, Ex. 27, and questioned Mr. Titov about it.  Counsel for Hotfile relied on counsel for Warner's good faith compliance with the Protective Order, reasonably assuming that Warner would not violate the Order by marking as Exhibits documents that Hotfile had recalled.  (*Id.* at ¶ 7).  There was no intent to waive any work-product protection.  *Id.*

        After the deposition adjourned for the day, counsel for Hotfile investigated further and discovered that the date in early March that the work product investigation began was March 2nd. Noting that Ex. 27 was dated March 10, he immediately advised counsel for Warner by email that same evening and requested the return of the document.  (*Id.* at ¶ 10, Ex. 2).  He repeated the objection and again asked Warner to destroy all copies of the document in question when the deposition resumed the next morning.  (Thompson Decl., at ¶ 11).  Counsel for Warner refused and filed the present motion, ten court days after the document at issue was recalled.

<u>**ARGUMENT**</u>

        1.  <u>Warner's Motion Is Untimely</u>

        Where there is a valid court-issued Protective Order that addresses the process for handling inadvertently produced documents, the terms of that order control. *See Rally Mfg., Inc. v. Federal-Mogul Corp.*, 2011 WL 2938270, at *4 (S.D. Fla. July 21, 2011) ("The Protective Order is controlling over the waiver issue.") (Torres, M.J.).[1]  The Protective Order agreed to by the parties and issued by the court in this case provides such a clear and rigid procedure for compelling production of an inadvertently produced document that the producing document later recalls.  Under the terms of that order, "A party may move the Court for an order compelling production [of an inadvertently produced] document, and may present the document to the Court

---

[1] The Federal Rules of Civil Procedure also envision the recall of inadvertently produced documents: "If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return ... the specified information and any copies it has [and] must not use or disclose the information until the claim is resolved." Fed. R. Civ. P. 26(b)(5)(B).

CASE NO. 11-20427-WILLIAMS/TURNOFF

under seal within five (5) court days of receiving a request to return the document." (Stipulated Protective Order, D.E. # 68, at ¶ 20). Hotfile recalled Titov Depo. Ex. 27 on November 28, 2011. (Thompson Decl., at ¶ 4, Ex. 1). Thus, if Warner wanted to file a motion seeking to compel production of Titov Depo. Ex. 27, Warner was obligated to do so within five court days, or by December 5, 2011. Warner did not do so. Instead, on December 5, Warner improperly submitted the document as an exhibit in the deposition of Anton Titov as 30(b)(6) representative for Hotfile, again violating the Protective Order. Warner waited an entire week after improperly trying to use the recalled document at the deposition to file a motion compelling the production of that document on December 12, 2011.

Under the plain terms of the Protective Order, Warner's motion is barred as untimely filed. The Protective Order controls the timing of motions to compel inadvertently produced documents, Warner's motion should be dismissed as untimely.

2. The Document In Question Is Plainly Work Product

Even if Warner had filed its motion within the time period required under the Protective Order, its motion should be rejected, The document in question is plainly protected work product and there has been no waiver. Warner's motion devotes three sentences (and provides no factual basis) to argue that Titov Depo. Ex. 27 is not protected by the attorney work product doctrine. The sparsity of this argument reveals its implausibility. Warner admits that beginning on March 2, 2011, Hotfile began a counsel-directed investigation of Warner's improper deletions of material on Hotfile, and that the inadvertently produced document in question, dated March 10, 2011 relates to Hotfile's investigation of Warner. *See* (Mem. In Supp. Of Warner's Mot. To Compel, D.E. # 180, at p. 3). Despite this plain record, and without any countervailing facts whatsoever, Warner makes the speculative claim that Titov Depo. Ex. 27 "memorializes the conclusions of an investigation that Hotfile's counsel did not initiate, direct, or participate in." *Id*. How Warner draws the conclusion that a document dated March 10 could not possibly relate to an investigation initiated by counsel on March 2 is baffling. Absent any evidence at all that Titov Depo. Ex. 27 does not memorialize the admittedly counsel-initiated investigation that

6

began on March 2, Warner's unsupported argument that Titov Depo. Ex. 27 is not work product must fail.[2]

3.   Warner Has Failed To Show That The Document Was Not Produced Inadvertently

Much of Warner's motion is devoted to arguing that the Titov Depo. Ex. 27 was not inadvertently produced, but rather was the result of a supposed "tactical decision" to treat the document as not protected by the  work product doctrine.  To support this patently false hypothesis, Warner relies on one fact regarding the circumstances of the document's production—that Hotfile accidentally produced two copies of the document.  The Protective Order, however, forbids a party from asserting the circumstances of the inadvertent production as a basis for a motion to compel, the entirety of Warner's argument that the document was not inadvertently produced constitutes another violation of the Protective Order.  But, even if Warner were allowed to assert the fact that two copies of the document were produced as evidence that Hotfile produced it intentionally, its argument fails, since the fact that Hotfile produced only two copies of the document (when the document itself shows that six different Hotfile-related email boxes sent or received copies of the document) proves the opposite: that Hotfile intended to—and did--withhold copies of the document as protected work product; two copies were produced it by mistake.

---

[2] Throughout the motion, Plaintiffs attempt to compare Titov Depo. Ex. 27 to the work product investigation by Warner that Hotfile sought to compel.  Hotfile argued that portions of the factual information in Warner's investigation materials were not work product: specifically, whether Warner owned the contents of the files identified in Hotfile's counterclaim.  *See* (Mem. In Supp. Mot. To Compel Warner Takedown Investigation, D.E. # 164).  This factual information is not work product, Hotfile contended, because it does not reflect any attorney legal opinions.  The difference between that information and Titov Depo. Ex. 27 proves why the latter is work product: the Warner information is purely factual data about a pre-selected set of files (whether Warner owns a file or not), whereas the information in Titov Depo. Ex. 27 relates to a list of files selected at the direction counsel (which files to consider as a basis for a possible counterclaim against Warner, and what information to collect about those files).  That only a small subset of the files in Warner's actual counterclaim are identified in Titov Depo. Ex. 27 shows that the document reflects counsel's opinions as to how to evaluate the merits of a potential counterclaim.

a.  The Terms of The Protective Order Preclude Warner's Argument.

In support of its argument that Hotfile's production of Titov Depo. Ex. 27 was intentional, Warner presents only two facts: 1) Hotfile produced two copies of the document, and 2) in a previous motion to compel, Hotfile argued that a wholly unrelated set of information was not protected by the attorney work product doctrine.  Warner combines the two unrelated and inconsequential facts into a straw man that it tries (and fails) to knock down.  But, by arguing that Hotfile's production of two copies of Titov Depo. Ex. 27 proves that the production was not inadvertent, Warner has violated the express terms of the Protective Order, which holds that a party cannot seek an order compelling production of a recalled document by "assert[ing] as a ground for the entering of such an order the fact or circumstances of the inadvertent production." (Stipulated Protective Order, D.E. # 68, at ¶ 20).  Here, Warner expressly bases its motion on the circumstances of Hotfile's production of Titov Depo. Ex. 27, arguing that the document was not inadvertently produced because Hotfile produced two copies of the document, and even going so far as to expressly cite "the circumstances" of the document's production in support of its argument. *See* (Mem. In Supp. Of Mot. To Compel, D.E. # 180 at p. 2 n. 1) ("the circumstances as to [a different inadvertently produced document] and the document at issue in this motion are dramatically different.")  That Hotfile produced two copies of Tito Depo. Ex. 27 is precisely the type of "circumstances of the inadvertent production" that the Protective Order expressly forbids from being the basis of a motion to compel.  By putting forth that fact as the principal basis for its claim that Hotfile's production of Titov Depo. Ex. 27 was not inadvertent, Warner has violated the terms of the Protective Order, and its motion should be denied on that basis alone.

b.  The Only Facts Warner Presents To Support Its Claim That Hotfile's
    Production Was Not Inadvertent Conclusively Proves That It Was Inadvertent.

Even if the Protective Order did not forbid Warner from pointing to the production of two copies of Titov Depo. Ex. 27 as the basis for its motion to compel, the fact that Hotfile produced two copies of the document actually disproves Warner's theory. Warner claims that because Hotfile produced two copies of the document and previously argued that a wholly unrelated set

of documents regarding an investigation done by Warner's non-legal personnel was not work product, Hotfile must have intentionally produced Titov Depo. Ex. 27 in order to bolster its own argument about the non-work product status of Warner's investigation.  This theory is disproved by the timing of Hotfile's motion to compel production from Warner.  As noted, Hotfile recalled Ex. 27 on November 28, two days before the Court heard argument on Hotfile's motion on November 30.  Under Warner's conspiracy theory, Hotfile had produced Ex. 27 specifically to "bolster" its argument to compel production by Warner.  Why then would Hotfile have recalled the document two days *before* the hearing on its motion?  The answer of course is that Hotfile in fact did not intend to produce the document and recalled it as soon as it became aware of its inadvertent production.

Moreover, a simple reading of the email forwarding the document in question proves the falsity of Warner's contention.  Titov Depo. Ex. 27 was sent by the Hotfile support mailbox to five recipients: smanov@gmail.com, vasil@ludost.net, anton@titov.net, rumen@hotfile.com, and no1knows.me@gmail.com. *See* (Platzer Decl. Ex. C, D.E. # 181-4 at p. 1).  Hotfile produced documents from all of these mailboxes, and yet only produced two copies of the document in question.  *See* (Thompson Decl., at ¶ 3). If Hotfile intended to produce this document, it would have produced six copies, not two.  In fact, Hotfile intentionally withheld as attorney work product the remaining copies it knew of at the time of production.  *Id.*  The metadata for HF02866338 and HF00036777 show that the custodian of those documents are the Hotfile general mailbox and Stanislaw Manov, respectively. *Id.*  Copies of this same email that existed in the other custodians' email folders were withheld. *Id.* Warner does not and cannot explain why Hotfile would have withheld all but two copies of the document in question if Hotfile decided not to claim work product protection over the document.

The real reason the document was inadvertently produced is obvious: Hotfile produced well over 1 million emails in this case. *Id.* at ¶ 2.  There is ample precedent holding that, where, as here, the inadvertently produced documents represent a tiny portion of the total documents produced (less than 100 out of 1.14 million documents produced, or around 0.0087%), such

production of privileged or protected documents is deemed inadvertent.. *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 2007 WL 5155945, at *12  (N.D. Ga. 2007) (Where inadvertently produced documents represented 0.007% of total produced documents, a finding of inadvertent disclosure is likely).  The Protective Order (and related case law) necessarily acknowledges that, where a party is producing an enormous volume of documents, some privileged or protected documents will be accidentally produced.

Hotfile endeavored to produce documents as quickly as possible in order to promptly and cooperatively abide by its discovery obligations because it knew that the Stipulated Protective Order allowed for the prompt and mandatory return of inadvertently produced documents. Though Warner's motion repeatedly violates the plain language of the Protective Order, the Order remains in force, and pursuant to its terms, Warner must return all copies of inadvertently produced documents.  The mere fact that Hotfile withheld as work product more copies of the document in question than it produced proves that the production was inadvertent.  Warner's attempt to use that same fact to prove the opposite contention is, quite simply, preposterous.

4.   Warner Has Failed To Show That Hotfile Waived Work Product Protection

Perhaps recognizing the weakness of its other arguments in support of its motion to compel, Warner devotes much of its motion arguing that Hotfile has waived the work product protection it claimed over Titov Depo. Ex. 27.  Warner's legal argument that Hotfile waived the work product protection over Titov Depo. Ex. 27 is predicated on the idea that a "voluntary" disclosure of work product protected material constitutes a waiver. *See* (Mem. In Supp. Of Mot. To Compel, D.E. # 180, at p. 5 ("work product waived by voluntary disclosure of letter")).  But since, as discussed *infra*, Hotfile's production of Titov Depo. Ex. 27 was plainly inadvertent, and since "a counsel's inadvertent disclosure of privileged documents during discovery is insufficient by itself to constitute a waiver of the privilege," Warner cannot establish waiver.  *In re Southeast Banking Corp. Securities and Loan Loss Reserves Litigation*, 212 B.R. 386, 392 (S.D. Fla. 1997).

Moreover, instead of providing sound legal argument, Warner again tries to support its flawed argument by misrepresenting the facts.  Warner claims that Hotfile waived the work product protection because Hotfile failed to object to questioning about the document and Mr. Titov was "extensively questioned on the document." *See* (Mem. In Supp. Of Mot. To Compel, D.E. # 180, at p. 5).  Both assertions are false.  Warner questioned Mr. Titov about Titov Depo. Ex. 27 for approximately 9 minutes of a two day deposition, three minutes of which were spent discussing the identity of the recipients of the email without reference to the subject of the document.  *See* (Platzer Decl., Ex. A, D.E. #181-2, at pp. 4-7).  Calling a few minutes "extensive" is beyond hyperbole.  Furthermore, prior to the introduction of Titov Depo. Ex. 27, Hotfile did object on work product grounds to Warner's questioning regarding the counsel-directed investigation. *Id.* at p. 3 ("MR. THOMPSON: I'm going to object to the extents [sic] that it calls for work product information which commenced after the date of early March 2011.")  Counsel for Hotfile defending Mr. Titov's deposition did not have full access to the recalled documents that were being handled by counsel in the United States two days prior to the deposition.  Nonetheless, when counsel for Hotfile became aware that Titov Depo. Ex. 27 had been clawed back prior to the deposition, Hotfile specifically objected to that deposition exhibit, both by email that same evening on the deposition following morning. *See* (Thompson Decl., Exs. 2 and 3, at 196:4-17; ¶ 9).  During the deposition, when Hotfile objected to the use of Titov Depo. Ex. 27 and requested its return or destruction under the Protective Order, counsel for Hotfile was not aware that HF02866338 had previously been clawed back on November 28, 2011.  *See* (Thompson Decl., at ¶ 6).  Instead, counsel for Hotfile reasonably relied on counsel for Warner to comply with the protective order and not to mark as an exhibit any documents that had been specifically recalled under the Protective Order.  *Id.* at ¶¶ 7 and 8.

After Warner filed the present motion, Hotfile informed Warner of the email sent November 28, 2011 clawing back the document in question. *Id.* at ¶ 7.  Despite being made aware of the earlier recall of the document (and thus knowing that its motion was untimely), Warner refused to withdraw the present motion. *Id.*

Since Warner inappropriately introduced a properly recalled document at the deposition, Warner's bad faith further mitigates against a finding of waiver.  Allowing a party to ignore the terms of a court order and repeatedly try to slip a properly recalled document by the opposing party (especially at a deposition in Bulgaria), claiming waiver when the party doesn't object each time in assuming that there will be compliance with the Court's orders, constitutes an abuse of the judicial process and a huge waste of time.  Warner cannot openly violate the terms of a court order and argue waiver because of Hotfile's assumption that Warner's counsel would not engage in such misconduct.  Warner should not be allowed to profit from its malfeasance, and the court should reject Warner's motion.

Finally, Warner's bringing this motion to compel and especially its failure to withdraw the motion when it learned (if it did not already know) that Ex. 27 had been recalled two weeks before filing the motion, was clearly not "substantially justified" by any definition thereby mandating an award of Hotfile's "reasonable expenses incurred in opposing the motion, including attorneys fees" mandatory under Fed. Rule Civ. Proc. 37(a)(5)(B)

## **CONCLUSION**

Warner's motion to compel production of Titov Deposition Ex. 27 violates the Protective Order issued by the court in this case, in both substance and form.  Accordingly, Warner's motion to compel should be denied and Hotfile should be awarded its "reasonable expenses incurred in opposing the motion, including attorneys fees" under Fed. Rule Civ. Proc. 37(a)(5)(B).

CASE NO. 11-20427-WILLIAMS/TURNOFF

DATED:  December 27, 2011                    By: /s/ Roderick M. Thompson
                                           Roderick M. Thompson (admitted *pro hac vice*)
                                           Email:  rthompson@fbm.com
                                           Andrew Leibnitz (admitted *pro hac vice*)
  Email:  aleibnitz@fbm.com
  Anthony P. Schoenberg (*admitted pro hac vice*)
  Email:  tschoenberg@fbm.com
  Deepak Gupta (admitted *pro hac vice*)
  Email:  dgupta@fbm.com
  Janel Thamkul (admitted *pro hac vice*)
  Email:  jthamkul@fbm.com
  FARELLA BRAUN + MARTEL LLP
  235 Montgomery St.
  San Francisco, CA  94104
  Telephone:  415.954.4400
  Telecopy: 415.954.4480

  And

  /s/ Janet T. Munn
  Janet T. Munn, Fla. Bar No. 501281
  Email: jmunn@rascoklock.com
  Rasco Klock
  283 Catalonia Avenue, Suite 200
  Coral Gables, Fl 33134
  Telephone:  305.476.7101
  Telecopy: 305.476.7102

  And

  /s/Valentin Gurvits
  Valentin Gurvits (*Admitted pro hac vice*)
  Email: vgurvits@bostonlawgroup.com
  BOSTON LAW GROUP
  825 Beacon Street, Suite 20
  Newton Center, MA 02459
  Telephone:  617.928.1800
  Telecopy:  617.928.1802

  *Counsel for Defendants Hotfile Corporation*
  *and Anton Titov*

CASE NO. 11-20427-WILLIAMS/TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2011, the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/Janet T. Munn
Janet T. Munn

Karen L. Stetson, Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Steven B. Fabrizio (*Pro Hac Vice* )
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice* )
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice* )
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

Karen R. Thorland, Esq. *(Pro Hac Vice)*
Senior Content Protection Counsel
Motion Picture Association of America, Inc.
15301 Ventura Boulevard Building E
Sherman Oaks, CA
Telephone: 818.935.5812
Email: Karen_Thorland@mpaa.org