# EXHIBIT "A"

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

      Counterclaimant,

v.

WARNER BROS. ENTERTAINMENT INC.,

      Counter-Defendant.
_____/

### DECLARATION OF RODERICK M. THOMPSON IN SUPPORT OF COUNTERCLAIMANT HOTFILE CORP.'S OPPOSITION TO WARNER'S MOTION TO COMPEL THE PRODUCTION OF TITOV DEPOSITION EX. 27

I, Roderick Thompson, declare as follows:

1.     I am a partner with the law firm Farella Braun + Martel LLP, counsel for Defendant and Counterclaimant Hotfile Corporation ("Hotfile") and Defendant Anton Titov. I

26501\2904534.1

1

have personal knowledge of the matters stated herein and, if called and sworn as a witness, I could and would competently testify to the facts set forth herein.

2.   During the discovery process in the present lawsuit, Hotfile Corp. ("Hotfile") has produced approximately 1,141,401 documents. In comparison, all the Plaintiffs combined have produced approximately 26,517 documents, and one of the plaintiffs, counter-defendant Warner Bros. Entertainment ("Warner") has produced 10,374 of those documents.

3.   As a part of its document production, Hotfile produced emails from the following email boxes: hotfile.mailbox@gmail.com, smanov@gmail.com, vasil@ludost.net, anton@titov.net, and no1knows.me@gmail.com. The documents beginning with the Bates numbered HF02866338 and HF00036777 were accidentally produced from the hotfile.mailbox@mail.com and smanov@gmail.com mailboxes, respectively. Hotfile withheld as protected by the work product doctrine other copies of the same document, including copies contained in the vasil@ludost.net, anton@titov.net, and no1knows.me@gmail.com email boxes.

4.   Attached hereto as Exhibit 1 is a true and correct copy of an email dated November 28, 2011, sent from Anthony Schoenberg (my partner at Farella Braun + Martel LLP, and an attorney of record for Hotfile) to Duane Pozza (an attorney of record for Warner), demanding the destruction or return pursuant to the Protective Order entered in this case [D.E. # 68] of, among other documents, HF02866338—the document at issue in this motion. The other version of this document inadvertently produced (beginning with HF00036777) was recalled by a separate email notice on December 3, 2011.

5.   I attended the deposition of Mr. Anton Titov taken by the Plaintiffs in Sofia Bulgaria, on December 5-8, 2011. I represented both Mr. Titov and Hotfile at the deposition. Mr. Fabrizio represented the Plaintiffs, including counter-defendant Warner.

2

6.	After 5 p.m. during the first day of deposition, Mr. Fabrizio began examining Mr. Titov about Hotfile's post-complaint investigation of the wrongful takedowns by Warner's SRA. After Mr. Fabrizio had marked the first exhibit related to this subject matter, I made the following statement:

> Mr. Fabrizio, let me also just state while he's reading that, we have become aware in the last week or two or some inadvertent produced documents that were written in Bulgarian that contained work product information. And I'd ask -- have asked for their return. I don't know if this is among them or not, not being able to read the Bulgarian.

(164:7-13.) In fact, as Mr. Fabrizio admitted the next day, the document—marked as Exhibit 26—was among those recalled by Hotfile pursuant to the protective order. Nonetheless, Mr. Fabrizio responded "Well, then, we can deal with that afterwards," and proceeded improperly to examine the witness on a document that had already been recalled and should have been returned to Hotfile under the clear mandate of Paragraph 20 of the Protective Order.

7.	In preparing to defend Mr. Titov's deposition in Bulgaria, I and Hotfile relied on the protections provided by the Protective Order regarding inadvertent production and potential recall of work product documents contained in the millions of pages produced by Hotfile. In particular, we relied on Plaintiffs—the party reviewing and selecting the potential exhibits to be used—to be sure that they complied with Paragraph 20 and had returned all documents clawed back by Hotfile and did not use any such documents at the deposition.

8.	Given that it was in the midst of a deposition and the 10 hour time zone difference with my office in California, it would not have been practical for me to check to be sure that Plaintiffs were not about to violate the Court's order each time they marked an exhibit. Therefore, despite my concern expressed on the record, I allowed Mr. Fabrizio to continue the line of inquiry, but reserved "a potential objection to the extent this has any work product." (164:13-17).

3

9.  When Mr. Fabrizio asked about Hotfile's investigation of Warner's wrongful conduct in "March, April and even May" of 2011, I immediately objected "to the extent that it calls for work product information which commenced after the date of early March 2011" when Hotfile first started its work product protected investigation at the direction of my firm. (167:4-9). A few questions later, Mr. Fabrizio marked as Exhibit 27, the document in dispute, HF02866338. I did not object at the time because I was unaware that the document had already been recalled by Mr. Schoenberg on November 28, a week before. Instead I relied on Plaintiffs and Mr. Fabrizio to comply with their obligations under Paragraph 20 of the Protective Order. I assumed that Mr. Fabrizio would never have attempted to examine Mr. Titov about Exhibit No. 27 if the document was among the documents Plaintiffs were required to return pursuant to an order of the Court. I certainly had no intent to waive the work-product protection.

10. After the deposition adjourned for the day, during the evening of December 5, 2011, I attempted to determine the specific date in Early March 2011 when my firm had instructed Hotfile to undertake a work product protected and to identify by HF production numbers the documents that had been the subject of recall requests to plaintiffs. I determined that Hotfile began the protected investigation on March 2, 2011 and obtained a list of some but not all of the HF production numbers that had been recalled (or "clawed back") by Hotfile. (Due to the distance and time zone differences, I was not able to obtain a definitive list of recalled documents and did not learn that Exh. 27 had in fact already been recalled.) Even though I lacked complete information about the documents that had already been clawed back, to ensure that there could be no question that Hotfile was not waiving any of its work product protections, that same evening (about 11:30 p.m. local time) I sent Mr. Fabrizio an email stating in part:

> Steve, as I advised you today during the deposition, in early March, at the request of its attorneys, Hotfile began its protected work product investigation in to Warner's wrongful

> takedowns via the SRA tool. The date the work product investigation began was March 2nd, 2011. * * * * We therefore we ask that you refrain from marking as exhibits at any of the depositions this week (or otherwise make use of) documents created by Hotfile on or after that date that are appear to potentially be work product

A true and correct copy of that email is attached as Exhibit 2.

11. The following morning before the deposition began, I confirmed that Mr. Fabrizio had received my email and understood Hotfile's position that it was not waiving its work-product protection and would insist on Plaintiffs compliance with the Protective Order and the Federal Rules regarding inadvertently produced work product protect and would not waive any applicable privileges. I specifically pointed out to Mr. Fabrizio that he had improperly examined the witness on Exhibit 26, a document that had been recalled as work product. I also requested the return of Exhibit 27 and that he work with me to retrieve this exhibits from the court reporter and to see that the improperly elicited testimony would be stricken from the record. (At this time, I was not aware that Ex. 27 had already been recalled by Exhibit 1 attached hereto, and that Mr. Fabrizio's use of that Exhibit also violated the Court's order.)

12. Attached hereto as Exhibit 3 are excerpts from the Titov depositions taken on December 5 and 6, 2011 described above. Because at the time I was unaware that Mr. Schoenberg had previously requested the return or destruction of that document on November 28, 2011, on December 6, I again requested on the deposition record the return or destruction of all copies of HF02866338. Mr. Fabrizio declined to return the exhibit, but committed unequivocally that Plaintiffs would comply with paragraph 20 of the Protective Order: "the protective order in this case spells out the procedures for requesting back a document that you believe was inadvertently produced. And I believe the protective order is what governs this request, and we are honoring the protective order, and that gives us some number of business days to address it. (200:12-18).

13.     On December 23, 2011, I informed counsel for Warner that Hotfile had requested the return or destruction of the document beginning with HF02866338 on November 28, 2011, provided them with another copy of Mr. Schoenberg's email (attached as Exhibit 1 hereto) and asked Warner to withdraw this motion to compel as barred by as untimely by the Protective Order. (Paragraph 20 provides that "A party may move the Court for an order compelling production of [an inadvertently produced] document, and may present the document to the Court under seal **within five (5) court days of receiving a request to return the document.**") This motion was filed some two weeks after Mr. Schoenberg's request. A true and correct copy of my December 23 email is attached as Exhibit 4. Despite my request in the email for a response the same day in order to avoid the need work over the Christmas holiday weekend to file an opposition to the motion, I have received no response. Plaintiffs still have not withdrawn this untimely motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 27th day of December 2011, at San Francisco, California.

_____
Roderick Thompson

6

26501\2904534.1