UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

_____/

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO COMPEL THE PRODUCTION OF TITOV DEPOSITION EXHIBIT 27**

Respectfully, Hotfile's opposition is long on baseless accusations against Warner's counsel and short on substance.  As demonstrated below:  (A) Warner's motion is absolutely timely and in compliance with the Protective Order; (B) Hotfile has failed to meet its burden of demonstrating that Titov Ex. 27 was inadvertently produced, and, in fact, the overwhelming weight of authority precludes any credible argument to the contrary; and (C) Hotfile waived any claim of privilege by allowing its corporate representative to be questioned about Titov Ex. 27 without any objection.

## Argument

### A.  Warner's Motion Is Timely And In Compliance With The Protective Order.

The parties agree that the terms of the Protective Order control.  Opp. at 5.  However, Hotfile's assertion that Warner's motion is untimely or in violation of the Protective Order is based on selective and misleading excerpting from the operative Protective Order provision.

1. Paragraph 20 of the Protective Order provides that, upon being given proper notice, a party must destroy copies of clawed back documents within five days.  However, the Protective Order does not require that motions to compel be brought within five days; it expressly contemplates the contrary.  After reciting that parties must destroy clawed back documents within five days, Paragraph 20 provides:

> However, the possessing parties may retain information sufficient to identify the Inadvertently Produced Privileged Document (*e.g.*, bates number, author(s), recipient(s), date) ***for purposes of a motion to compel*** production of the document.  A party may move the Court for an order compelling production of the document, and may present the document to the Court under seal within five (5) court days of receiving a request to return the document …

Protective Order, May 19, 2011, Dkt # 68, at ¶ 20, p. 19 (emphasis added).  Thus, the Protective Order provides that a party may present the *document* to the Court within five days (the deadline

1

for destroying the document).  Hotfile asserts incorrectly that the five day clause is a limitation on filing a *motion*, which plainly it is not.  Paragraph 20 expressly contemplates that before destroying the document, a party "may retain information sufficient to identify the Inadvertently Produced Privileged Document (*e.g.*, bates number, author(s), recipient(s), date) for purposes of a motion to compel production of the document."  In context – context Hotfile ignores – that language only has meaning if the Protective Order contemplates motions to compel ***after*** the five day period.  Warner's motion, therefore, is timely in compliance with the Protective Order.

2.  Hotfile accuses Warner of violating the Protective Order by arguing that Hotfile's production of Titov Ex. 27 was not inadvertent.  However, in language ignored by Hotfile, Paragraph 20 of the Protective Order expressly allows the argument Warner is making:

> Nothing in this Order shall preclude a party from arguing that the production of the allegedly inadvertently produced document was not inadvertent or that conduct since production of the allegedly inadvertently produced document constitutes a waiver.

Protective Order, at ¶ 20, p. 19.  The clause that Hotfile takes out of context – *i.e.*, that a "party may not assert as a ground for the entering of such an order [to compel] the fact or circumstance of the inadvertent production" – is applicable when the "inadvertence" of the production is not challenged.  In that circumstance, a party cannot argue that the inadvertent production itself constitutes the waiver.  But, the Protective Order expressly provides that Warner may assert that the "production of the allegedly inadvertently produced document was not inadvertent."  *Id.*

3.  Titov Ex. 27 was one of many documents included among the Bates numbers in Hotfile's November 28 clawback email, and the version with those Bates numbers arguably should not have been provided to Your Honor in connection with Warner's motion.  However, the identical document – with different Bates numbers – was not identified by Hotfile for clawback until December 3.  While perhaps Warner should have provided the Court with the

2

copy of the exact same document with Bates numbers HF36777 and HF36778 (instead of with

Bates numbers HF2866338 and HF2866339), there is no question that, at the time of Warner's

motion, the Protective Order expressly permitted Warner to provide the Court a copy of the

document at issue.

    4.   Hotfile's attacks on Warner for introducing Titov Ex. 27 at the Hotfile Rule 30(b)(6)

deposition are equally unfounded.  Any confusion surrounding Hotfile's clawback of documents

was caused by the unreasonableness of Hotfile's notices.

- The days between November 28 and December 3, the dates of Hotfile's two clawback
  emails, were some of the busiest in this litigation.  They were the last days before the
  parties embarked on a schedule of 23 depositions in 15 business days.  Indeed, Hotfile's
  December 3 email arrived on a Saturday – before Monday depositions in Bulgaria – as
  Warner/plaintiffs' lawyers were in transit to Bulgaria or readying to board flights.

- Hotfile, moreover, did not seek to clawback just one document or a couple of odd
  documents.  Hotfile sent clawback notices for *64 documents*, identified only by a string of
  Bates numbers – without any description of the documents themselves.  That volume of
  documents with no meaningful descriptions is not what the Protective Order
  contemplates.  Protective Order, Dkt # 68, at ¶ 20, p. 18.[1]

- Finally, this is not a case where Hotfile produced a document and then clawed it back a
  couple of days later, or even a couple of weeks later.  One copy of the document in
  question was produced on June 17, 2011; another was produced on October 14, 2011.
  Thus, Warner's counsel had the document for *more than five months* before Hotfile's

---

[1] Even Hotfile's own counsel could not keep straight which documents Hotfile clawed back, and
did not realize that Titov Ex. 27 was one of the Bates numbers among those listed in the
November 28 email.  Declaration of Roderick M. Thompson, December 27, 2011, Dkt. #206-1
("Thompson Decl.") at ¶¶ 8-9, 11.

> clawback emails, and had integrated the document into its own work product and
> deposition preparation.  Owing to the fact that Hotfile delayed so long in identifying the
> 64 documents, Warner's counsel could not locate copies of the documents simply by
> going to a document production file and searching for Bates numbers.

At bottom, Warner complied with the Protective Order.  *Newman v. Graddick*, 740 F. 2d 1513,
1525 (11th Cir. 1984) (requiring "reasonable diligence to comply with a court order").  In light
of the unreasonableness of Hotfile's notices, there was nothing improper about Warner's use of
Titov Ex. 27 at the deposition – which, as discussed below, was done without objection from
Hotfile's counsel.  And, Warner's motion is both timely and in compliance with the Protective
Order.

**B.  Titov Ex. 27 Was Not "Inadvertently" Produced.**

Hotfile attacks Warner's counsel because it cannot credibly oppose Warner's motion on
the merits.  That Hotfile cites almost no legal authority for its arguments is not surprising –
overwhelming authority dictates that Hotfile's production of Titov Ex. 27 cannot be excused as
"inadvertent."[2]

1. <u>Hotfile has failed to meet its burden of proof.</u>

---

[2] Hotfile is also just wrong in calling "speculative" Warner's assertion that Titov Ex. 27 was
done largely outside the purview of counsel.  Defendant Titov so testified.  Having just drawn a
clear distinction between an early period when Hotfile was investigating Warner without counsel
and a later period when counsel was involved, Ex. A. to Declaration of Steven B. Fabrizio in
Support of Plaintiffs' Motion to Compel the Production of Titov Deposition Exhibit 27
("Fabrizio Decl.") at 167:2-16, Titov was asked whether Ex. 27 was "part of your early
investigation of what you perceived to be mistakes made by Warner in sending takedown
notices."  *Id.* at 168:9-11.  Titov confirmed that it was.  *Id.* at 168:12 ("This is some list that
might contain errors, yes").  However, whether Titov Ex. 27 ever qualified as work product is
beside the point given the waiver through production and the independent waiver by allowing its
use at deposition without objection.

It is well-established that "[w]hen a producing party claims inadvertent disclosure, it has the burden of proving that the disclosure was truly inadvertent." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 850 (E.D. Mich. 2010); *see also, e.g., Peterson v. Bernardi*, 262 F.R.D. 424, 428 (D.N.J. 2009) (the disclosing party "has the burden of proving that his documents were inadvertently produced"). As one court explained, in a finding directly applicable to Hotfile:

> Although Defendants claimed they inadvertently produced documents, they failed, with the exception of stating the number of documents produced, to support that assertion with facts. Without such information, the Court cannot find that the Defendants met their burden to show either that the disclosure was inadvertent, or that Defendants took reasonable steps to prevent disclosure.

*Comrie v. Ipsco, Inc.*, 2009 WL 4403364, at *2 (N.D. Ill. 2009).

Here, Hotfile has not even attempted to meet its burden. Other than reciting the total number of documents produced (a number that, as described below, is very misleading), the Thompson declaration provides absolutely no information as to what specific efforts were taken to prevent disclosure of allegedly privileged documents, or why those efforts were reasonable in context of the case. *See* Thompson Decl. ¶ 2 (simply reciting number of documents produced).

Courts routinely refuse to find that production of a privileged document was "inadvertent" under such circumstances. For example, in *Amobi v. D.C. Dept. of Corr.*, 262 F.R.D. 45, 54-55 (D.D.C. 2009), the court held:

> Defendants do not provide the court with any indication of the methodology used to review documents for privilege, but only vaguely refer to several reviews of the documents to be produced. . . . Hence, the efforts taken are not even described, and there is no indication of what specific efforts were taken to prevent disclosure, let alone any explanation of why these efforts were, all things considered, reasonable in the context of the demands made upon the defendants. Instead, 'the court is left to speculate what specific precautions were taken by counsel to prevent this disclosure.'… Hence, defendants do not meet the burden of proving that the privilege was not waived in regards to the memorandum.

*Peterson v. Bernadi*, 262 F.R.D. 424, 429 (D.N.J. 2009 is equally applicable:

> Plaintiff's moving papers only mention one step that was taken to prevent an inadvertent error: "[a]t each time [document production], plaintiff's counsel engaged in a privilege review." … However, plaintiff does not state when his review occurred, how much time he took to review the documents, what documents were reviewed, and other basic details of the review process. The Court does not accept plaintiff's bare allegation that he conducted a 'privilege review' as conclusive proof that he took reasonable steps to prevent an inadvertent production.

*See also, e.g., Figueras v. Puerto Rico Elec. Power Auth.*, 250 F.R.D. 94, 97 (D.P.R. 2008) (citation omitted) (rejecting claim of inadvertent production because defendant "has provided no straightforward explanation of the steps taken to ensure that no privileged document would be produced beyond the perfunctory statement that all documents produced were reviewed by counsel 'to the best of their ability'").

Here, rather than proffer evidence that its production was truly inadvertent, Hotfile repeatedly suggests the contrary – that it produced documents without taking reasonable precautions "because it knew that the Stipulated Protective Order allowed for the prompt and mandatory return of inadvertently produced documents." Opp. at 10; *see also id.* at 3; Thompson Decl. ¶ 7 (similar). In fact, Hotfile admits that it did not complete review of the documents it produced prior to their production. Thompson Decl. Ex. 2 (on December 5, 2011, defendants stated "our privilege review is taking a long time"). That sort of abdication of responsibility, in reliance on "clawback" rules, turns the concept of "inadvertent production" on its head.

The bulk of the remainder of Hotfile's opposition argues that Hotfile did not subjectively intend to produce Titov Ex. 27 (or the many other clawed back documents). However, as courts have made clear, a party's "***subjective intent is not controlling***. All inadvertent disclosures are by definition unintentional." *Peterson*, 262 F.R.D. at 429; *see also id.* ("For the purpose of

deciding plaintiff's motion, the Court does not question the sincerity of plaintiff's argument that he did not intend to produce the documents in question").

Hotfile has failed to meet its burden of proving that the production of Titov Ex. 27 was inadvertent.  Warner's motion should be granted on that basis alone.

2.  Hotfile's production of Titov Ex. 27 cannot be excused as "inadvertent."

"Courts have not established a bright-line rule for determining whether a document was inadvertently produced."  *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008).  Courts consider a myriad of factors.  *United States v. Pepper's Steel & Alloys, Inc.*, 742 F. Supp. 641. 643 (S.D. Fla. 1990).  Here, those factors lead to the conclusion that Titov Ex. 27 cannot be considered "inadvertently" produced.

First, Hotfile argues that its production of over a million documents should excuse its production of Titov Ex. 27, but that is a misleading premise.  Hotfile produced Titov Ex. 27 on October 14, 201l, months after the bulk of the document production in this case.[3]  Hotfile's October 14 production consisted of ***a total of 83 documents*** – not millions, not thousands, not even hundreds.  Moreover, counting Titov Ex. 27, Hotfile has ***clawed back 10 of those 83 documents***.  Fabrizio Decl. ¶ 4.  Thus, Hotfile claims to have "inadvertently" produced about one out of every eight documents from the October 14 production.  Titov Ex. 27 is not a one-page document that arguably could have slipped through; it is 32 pages long.  Hotfile's claim of

---

[3] "The volume of documents involved in the production process is important only if it can be shown to have influenced the mistaken disclosures that were made.  For example, if the disclosure in question was at the end of a massive discovery program, but not influenced by it, the narrower context should gauge the pressure under which the client was placed."  2 Paul R. Rice, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 9.74 (2011); *Accord England v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 483 (E.D.Va. 1991)("As the number of documents grows, so too must the level of effort increase to avoid an inadvertent disclosure. Failure to meet this level of effort invites the inference of waiver.").
.

"inadvertence" cannot stand.  *E.g.*, *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 116 F.R.D. 46, 51 (M.D.N.C. 1987)("A large number of inadvertent disclosures in comparison to the number of documents reviewed shows lax, careless, and inadequate procedures").

<u>Second</u>, Hotfile produced Titov Ex. 27 in two separate productions four months apart. As one court put it, defendant's "'lost in the shuffle' argument would have greater weight had it not twice disclosed the privilege documents in different forms at different times." *United States v. CITGO Petroleum Corp.*, 2007 U.S. Dist. LEXIS 27986, at *14 (S.D. Tex. Apr. 16, 2007); *see also id.* at *12 ("Evidence of multiple disclosures on multiple occasions leads the Court to believe that Citgo did not take reasonable precautions to prevent disclosure").

<u>Third</u>, Hotfile did not promptly identify and clawback Titov Ex. 27.  One version of Titov Ex. 27 was produced more than *five months* before Hotfile sent any clawback notice.  Counsel for Warner analyzed and integrated the document into its own work product, including its deposition preparation.  Fabrizio Decl. ¶ 3.  Under these circumstances, courts reject efforts to clawback documents.  *E.g.*, *Scott v. Glickman*, 199 F.R.D. 174, 180 (E.D.N.C. 2001) ("[D]isclosure is complete and confidentiality may be lost when the document is turned over and allowed to be copied, digested, and analyzed.  In such a case it has been held that the disclosure cannot be cured simply by a return of the documents.  The privilege has been permanently destroyed." (internal quotation marks omitted)).  As one court found, summing up the present situation, "plaintiffs have had the inadvertently produced communication for over a month and a half.  During that time period, plaintiffs came to rely upon that document as evidenced by the use of the document in the deposition of co-defendant Colon.  Prohibiting plaintiffs from using the document at this stage in the proceedings would work an injustice upon them because they have

already incorporated it into their pre-trial preparation." *Figueras v. P.R. Elec. Power Auth.*, 250 F.R.D. 94, 98 (D.P.R. 2008).

Fourth, "the number of documents inadvertently produced is . . . highly probative of the reasonableness of the precautions taken by the producing party." *F.C. Cycles Int'l v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 76 (D. Md. 1998). Here, in a matter of a few days, Hotfile asserted that 64 allegedly privileged documents were inadvertently produced. That is not a reasonable number: "While plaintiff states that they did review the documents with...***I find it difficult to believe that a thorough inspection was made considering that approximately 100 documents managed to 'slip through the cracks'*** and failed to be reviewed before inspection. " *Prebilt Corp. v. Preway, Inc.*, 1988 WL 99713, at *3 (E.D. Pa. 1988) (emphasis added).

Finally, this is not the first time Hotfile has claimed to have inadvertently produced privileged documents in this case, and these episodes reflect a lack of appropriate care. On July 28, 2011, plaintiffs' counsel observed emails produced by Hotfile that contained the words "work product" in the subject line. Plaintiffs' counsel alerted Hotfile to three potentially privileged emails (HF02159110, HF02159114, HF02159220), and Hotfile clawed them back under the Protective Order. Yet, in the same October 14 production of 83 documents that included Titov Ex. 27, Hotfile produced the *same email chains* – with the words "work product" in the subject line – again. Fabrizio Decl. ¶ 5.

In the end, Hotfile cannot credibly argue that its production of Titov Ex. 27 qualifies as "inadvertent" in the face of overwhelming authority to the contrary.

**C. The Failure To Object To The Use Of Titov Ex. 27 At The Hotfile Deposition Waived Any Claim Of Privilege.**

Titov Ex. 27 was marked as an exhibit during the Hotfile Rule 30(b)(6) deposition and Defendant Titov gave testimony about it. Fabrizio Decl., Ex. A (Titov dep.) at 167:23 – 173:2.

Hotfile's lead counsel defended the deposition and was given a copy of the exhibit at the same time as the witness. Hotfile's counsel did not raise a single objection to the use of the document or the questioning on it (except as to form). *Id.* Mr. Titov gave testimony about Ex. 27 that substantially undermines Hotfile's counterclaim against Warner. *Id.* at 169:7-15. Hotfile did not assert a work product objection until after the deposition had concluded for the day; in other words, not until after Hotfile had time to evaluate the implications of Mr. Titov's testimony. It is hard to conceive of a clearer case of waiver.

Hotfile does not even attempt to excuse this blatant waiver, except to suggest that counsel for Hotfile objected at the deposition, but that is simply not true. The transcript shows unmistakably that the discussion of work product occurred in connection with Exhibit 26, not Exhibit 27. Exhibit 26 was a one-page email in Bulgarian for which Warner did not have an English translation. *Id.* at 164:7-24. As the witness was reviewing Exhibit 26, Hotfile's counsel raised the issue of "some inadvertently produced documents that were written in Bulgarian." *Id.* at 164:9-11. Since neither counsel could read the Bulgarian email, Hotfile's counsel stated "I want to reserve a potential objection to the extent this [Ex. 26] has any work product." *Id.* at 164:16-17. Warner's counsel agreed that there would be no waiver "by letting him [Mr. Titov] answer the following question [about Ex. 26]." *Id.* at 164:18-24.

There was never any work product objection raised, and there was no agreement about waiver, as to Titov Ex. 27, which was in English. *Id.* at 167:23 - 173:2. Indeed, the next day, when counsel debated the issue on the record, Warner's counsel observed that there had been no agreement as to Titov Ex. 27 and no objection raised; Hotfile's counsel did not dispute that, because those were (and are) the true facts. *See* Thompson Decl., Ex. 3 (Titov dep.) at 199:21 - 200:24. Hotfile clearly has waived any claim of privilege.

DATED: January 5, 2012 By: /s/ Karen L. Stetson
            Karen L. Stetson
            GRAY-ROBINSON, P.A.
            1221 Brickell Avenue, 16th Floor
            Miami, FL 33131
            Telephone: (305) 416-6880
            Facsimile:  (305) 416-6887

| | |
|---|---|
| MOTION PICTURE ASSOCIATION OF AMERICA, INC. | JENNER & BLOCK LLP |
| Karen R. Thorland (*Pro Hac Vice*) | Steven B. Fabrizio (*Pro Hac Vice*) |
| 15301 Ventura Blvd. | Duane C. Pozza (*Pro Hac Vice*) |
| Building E | Luke C. Platzer (*Pro Hac Vice*) |
| Sherman Oaks, CA 91403 | 1099 New York Ave., N.W. |
| Phone:  (818) 995-6600 | Suite 900 |
| Fax:  (818) 285-4403 | Washington, DC 20001 |
| | Telephone: (202) 639-6000 |
| | Facsimile:  (202) 639-6066 |

            *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 5th day of January, 2012, I served the following document on all counsel of record on the attached service list via the Court's ECF System:

**Plaintiffs' Reply Memorandum Of Law in Support of Motion To Compel Production of Titov Deposition Exhibit 27**

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Karen L. Stetson
Karen L. Stetson

12

**SERVICE LIST**

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*