UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC., TWENTIETH
CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS
LLLP, COLUMBIA PICTURES INDUSTRIES, INC.,
and WARNER BROS. ENTERTAINMENT INC.,

  *Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and DOES 1-10.

  *Defendants.*  /

HOTFILE CORP.,

  Counterclaimant,

v.
WARNER BROS. ENTERTAINMENT INC.,

  Counter-Defendant.  /

**MEMORANDUM OF LAW OF DEFENDANTS HOTFILE CORPORATION AND
ANTON TITOV IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION TO
COMPEL PRODUCTION OF PARTICULAR SOURCE CODE**

CASE NO. 11-20427-WILLIAMS/TURNOFF

I.  **INTRODUCTION**

This motion is a meritless attempt to obtain production of defendant Hotfile Corp.'s highly valuable trade secret, its source code.[1]  This Court has already denied plaintiffs' request for this discovery on a prior occasion, and this groundless attempt to obtain another bite at the apple should be denied on multiple grounds.  First, plaintiffs failed to confer with defendants prior to filing this motion as required by this Court's local rules, which is grounds alone to deny the motion.  Had plaintiffs complied with this requirement, they would have learned that defendants have confirmed what was, in any event, already obvious from the deposition of defendant Anton Titov – Hotfile does not have source code reflecting the specific date information that plaintiffs seek.  Thus, the best information on point is Mr. Titov's testimony.  Accordingly, plaintiffs do not come close to making the showing of "necessity" that the law requires before a court will order the production of a trade secret such as source code.

II.  **LEGAL ARGUMENT**

A.  **Plaintiffs Failed To Confer With Defendants Before Filing This Motion**

Plaintiffs' motion should be denied on the basis that plaintiffs violated Local Rule 7.1(3), which requires that a party confer with any other affected party before filing a discovery motion.  Here, plaintiffs failed to engage in any such discussion with defendants prior to filing this motion.  The only discussion related to the substance of this motion consisted of a request made on the record by plaintiffs' counsel on December 7, 2011, the third day of Mr. Titov's deposition, in which he requested that Hotfile investigate whether earlier source code versions exist.  *See* Exhibit A hereto (Deposition of Anton Titov, Vol. III) at 501:6-25.  Plaintiffs' counsel

---

[1] Source code refers to the alphanumeric languages in which computer software is written by programmers.  *See Sega Enterprises LTD. V. Accolade, Inc.*, 977 F.2d 1510, 1515 n.2 (9th Cir. 1993).

did not follow up on this request and did not otherwise confer with defense counsel about this issue prior to filing this motion. Had plaintiffs followed up, they would have learned that an inquiry was conducted into whether Hotfile has source code that could answer plaintiffs' timing question, and it was determined that it did not.

**B.     Plaintiffs Seek Something That They Know Hotfile Does Not Have**

Plaintiffs' motion is a pointless exercise. Hotfile does not have the source code that plaintiffs seek, and plaintiffs know this. The very deposition testimony that they have submitted demonstrates this fact. Specifically, they seek source code reflecting the specific date on which Hotfile began disabling files (as opposed to URLs) in response to takedown notices and began to use "hashing" technology to block the re-upload of files that have been taken down. According to the deposition testimony of Mr. Titov, Hotfile's co-founder and technologist, these changes occurred in August 2009. Dkt. 200-1 (Declaration of Duane Pozza In Support Of Renewed Motion And Memorandum Of Law To Compel Production Of Particular Source Code ("Pozza Decl.)), Ex. A at 339:20-341:2. And as Mr. Titov further testified, at that time Hotfile did not maintain source code revisions, nor did Hotfile use a source code version control system (Hotfile only implemented such a system after the filing of this lawsuit). *Id.* at 477:16-22; Exhibit A hereto, at 497:18-498:10. Thus, Hotfile does not have historical source code reflecting these changes.

In their motion, plaintiffs attempt to distort the deposition testimony on this point, but they ignore the final and definitive statement in the submitted passage of Mr. Titov's testimony – that for the time period in question, ***Hotfile did not maintain source code revisions***. Dkt. 200-1 (Pozza Decl.), Ex. A at 477:16-22) ("Q: Okay. And Hotfile maintains source code revisions,

doesn't it? A: No, it does not – I mean currently, yes. Q: But back in the 2009 period, it did not? A: ***No, it did not***.").

And, as noted above, to avoid any doubt, a search was conducted following Mr. Titov's deposition to determine whether Hotfile source code showed a more precise date than Mr. Titov was able to provide in his testimony regarding the changes that are the subject of this motion. The search determined that the source code would not provide any greater specificity than what Mr. Titov was able to provide in his testimony. Accordingly, this motion is a needless and entirely avoidable imposition on the Court's time.

### C. Plaintiffs Have Failed To Demonstrate Necessity

Even if plaintiffs were not seeking something that Hotfile does not have, plaintiffs have not made the requisite showing of necessity to obtain any production of source code. As this Court previously recognized when it denied plaintiffs' earlier request for source code, plaintiffs cannot obtain the production of a trade secret such as Hotfile's source code absent a showing of relevance ***and necessity***. *See* Dkt. 128 at 2. *See also American Standard Inc. v. Humphrey*, No. 306-cv-893-J-32MCR, 2007 WL 1186654, at *3 (M.D. Fla. Apr. 19, 2007); *Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 328 (9th Cir. 1961); *Litton Indus. v. Chesapeake & Ohio Ry. Co.*, 129 F.R.D. 528, 530 (E.D. Wisc. 1990). The Court denied plaintiffs' prior request because, among other things, there are less intrusive means by which plaintiffs can learn about Hotfile's system operations, such as by asking Hotfile to describe them. Dkt. 128 at 3-4.

Plaintiffs have now deposed Mr. Titov for approximately four-and-a-half days in both his individual and representative capacity. During those four-plus days, plaintiffs' counsel inquired in appreciable depth into the operations of Hotfile's system, including into the timing question to which the instant motion relates. As already noted, Mr. Titov – who was the primary author of

Hotfile's source code –testified that to the best of his knowledge, these changes took place in August of 2009, shortly after Hotfile began to utilize SRA accounts (i.e., special tools provided to the plaintiff studios to allow them to instantaneously delete files that they believe infringe their copyrights). Dkt. 200-1 (Pozza Decl.) Ex. A at 339:20-340:13 and 473:2-8.

Plaintiffs exaggerate the state of the record by claiming that Mr. Titov's testimony is based on "guesses," but this is not the case. First, Mr. Titov co-wrote the source code, so he clearly is knowledgeable on the subject. Dkt. 81-17 (Declaration of Anton Titov In Support Of Defendants' Opposition To Plaintiffs' Motion To Compel Responses To Requests For Production Of Documents And Interrogatories ("Titov. Decl.")) ¶ 6. Second, Mr. Titov testified that his testimony was based not solely on his recollection but also on talking with other people (e.g., those familiar with the timing of those changes). Dkt. 200-1 (Pozza Decl.), Ex. A at 475:19-22. Furthermore, as noted above, he was able to correlate the timing to the adoption of the SRA accounts. Dkt. 200-1 (Pozza Decl.), Ex. A at 339:20-340:13 and 473:2-8. Thus, this is plainly not a "guess." Furthermore, the scope of what plaintiffs are requesting – "Hotfile's source code related to its processes for disabling files or URL links in response to takedown notices and its process for using 'hash' information to prevent files from being re-uploaded after than have been taken down" (Motion at 4 n.1) –by its terms goes far beyond the determination of a specific date more than two years past.[2] Indeed, this request by its express terms purports to seek all source code – past *and present* -- reflecting the operation of Hotfile's file-disabling and hashing features.

---

[2] And as noted above, Hotfile's source code does not reflect that date in any event.

It speaks volumes that plaintiffs do not cite to a single case in their motion.[3] That is likely because the most on-point case for addressing the production of source code in this context is the *Viacom* case, in which the court *denied* requests for YouTube and Google to produce their source code in connection with claims of online copyright infringement. *See Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 259-260 (2008). The Court relied specifically on *Viacom* in denying plaintiffs' earlier request for source code. Dk. 128 at 3. Plaintiffs have done nothing to overcome the reasoning of *Viacom* or this Court's prior application of it.

Instead, Plaintiffs rely on a footnote from the Court's prior order that clearly has no applicability here. In that footnote, the Court stated, "Of course, the source code may become necessary in the future if, say, Hotfile argues that it cannot implement some infringement-stopping mechanism because of the way it coded some operation or function." Dk. 128 at 4 n.2. There has been no such argument raised by Hotfile in this case. Where, as here, there is deposition testimony from a knowledgeable witness that addresses the very issue as to which plaintiffs seek an answer, source code is plainly not "necessary."

### D. Plaintiffs' Argument That They Are Not Seeking A Trade Secret Is Contrary To Law

Plaintiffs' final argument – that the source code they seek is not a trade secret because it implements functionality that Hotfile no longer uses – is directly contrary to the law on this

---

[3] The only legal authority to which plaintiffs cite – the Digital Millennium Copyright Act ("DMCA") – they mischaracterize. The notice-and-takedown provisions of the DMCA do not speak to disabling "all known copies of an infringing file" or preventing the "subsequent re-upload" of files that are subject of takedown notices. *See* 17 U.S.C. 512(c) (describing notice-and-takedown framework). While not pertinent to the outcome of this motion, this exemplifies plaintiffs' overreaching.

point.[4] In *Syntex Ophthalmic, Inc. v. Tsuetaki*, 701 F.2d 677, (7th Cir. 1983), the defendant made the same argument, contending that "process sheets" used by the plaintiff in manufacturing contact lenses were not entitled to trade secret status because the plaintiff was no longer using them. *Id.* at 682-683 The court rejected this argument, holding that the relevant criterion was not "actual use" but whether the product was "of value" to the company. *Id.*

As a general matter, source code is widely recognized as qualifying for trade secret protection. As a leading treatise on trade secret law states, "Probably the single most important 'product' (or, depending upon one's views, 'methods and techniques') eligible for trade secret protection is computer software." Roger M. Milgrim, *Milgrim on Trade Secrets*, Vol. 1 at § 1.09[5][b]. Source code is an integral part of computer software. *See Sega Enterprises LTD.*, 977 F.2d at 1515 n.2. There are countless opinions recognizing that source code qualifies as a trade secret. *See, e.g.,* Milgrim, *supra* (citing numerous such authorities); *Cisco Systems, Inc. v. Huawei Techs. Co.*, 266 F. Supp. 2d 551, 555 (E.D. Tex. 2003) ("[C]ourts generally recognize that a company's source code can constitute a trade secret."); *See also, e.g., McRoberts Software Inc. v. Media 100, Inc.*, 329 F.3d 557 (7th Cir.2003); *Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197 (3d Cir.2002); *Hogan Systems, Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319 (5th Cir.1998); *Trandes Corp. v. Guy F. Atkinson Company*, 996 F.2d 655, 663 (4th Cir.1993); *Q-Co Indus., Inc. v. Hoffman*, 625 F.Supp. 608, 617 (S.D.N.Y.1984).

---

[4] Moreover, as noted above, the scope of plaintiffs' request encompasses Hotfile's current source code in any event. Thus, plaintiffs' argument that this only implicates "functions at issue in the past" ignores what plaintiffs are actually requesting. Plaintiffs' argument is also at odds with the position plaintiffs took in their prior source code motion. In that motion, plaintiffs asked for "All versions of the source code for the Hotfile Website as it now exists of has ever existed." Dk. at 16. Plaintiffs did *not* dispute that *any* of the source code that they sought – *past or present* – was a trade secret. And, indeed, the Court treated Hotfile's source code as a trade secret. Dk. 128 at 2.

Here, there can be no dispute that Hotfile's source code is a trade secret.[5] As explained in Mr. Titov's declaration submitted in opposition to plaintiffs' first source code motion, more than 1,000 hours were spent developing Hotfile's source code. Dkt. 81-17 (Declaration of Anton Titov In Support Of Defendants' Opposition To Plaintiffs' Motion To Compel Responses To Requests For Production Of Documents And Interrogatories ("Titov. Decl.")) ¶ 6. It was designed from scratch, confidentially, by Mr. Titov and one other person, and it is password protected and accessible to no more than four people in the world. *Id.* ¶ 7. Hotfile designed its technology differently than its competitors, and those differences give Hotfile a competitive advantage. *Id.* ¶ 8. Hotfile's competitive position could be harmed if its source code were disclosed to its competitors as well as to other companies, since Hotfile's technology could potentially have applications for online businesses beyond the realm of file-hosting or file-sharing. *Id.* ¶ 9.

The Court should reject plaintiffs' argument that they are not seeking a trade secret.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion should be denied. The motion is procedurally improper due to the failure to confer with defendants. It seeks something that Hotfile does not have (*i.e.,* source code that would provide the precise date of changes made to Hotfile's system in August 2009). And it fails to establish the "necessity" that is required before a court may order production of a trade secret such as source code.

---

[5] Under the Florida Uniform Trade Secrets Act, "trade secret" means "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Fla. Stat. § 688.002.

CASE NO. 11-20427-WILLIAMS/TURNOFF

Dated:  January 5, 2012

Respectfully submitted,

s/ Janet T. Munn
Janet T. Munn, Fla. Bar No. 501281
Email: jmunn@rascoklock.com
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, FL 33134
Telephone:  305.476.7101
Telecopy:  305.476.7102

s/ Anthony P. Schoenberg
Roderick M. Thompson *(Admitted pro hac vice)*
rthompson@fbm.com
Andrew Leibnitz *(Admitted pro hac vice)*
aleibnitz@fbm.com
Anthony P. Schoenberg *(Admitted pro hac vice)*
tschoenberg@fbm.com
Deepak Gupta *(Admitted pro hac vice)*
dgupta@fbm.com
Janel Thamkul *(Admitted pro hac vice)*
jthamkul@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone:  415.954.4400
Telecopy:  415.954.4480

AND

s/ Valentin Gurvits
Valentin Gurvits *(Admitted pro hac vice)*
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone:  617.928.1800
Telecopy:  617.928.1802

*Counsel for Defendants Hotfile Corporation
 and Anton Titov*

8

CASE NO. 11-20427-WILLIAMS/TURNOFF

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2012, the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/Janet T. Munn
     Janet T. Munn

Karen L. Stetson, Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Steven B. Fabrizio (*Pro Hac Vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice*)
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

Karen R. Thorland, Esq.
Email: Karen_Thorland@mpaa.org
Senior Content Protection Counsel
Motion Picture Association of America, Inc.
15301 Ventura Boulevard Building E
Sherman Oaks, CA
Telephone: 818-935-5812