UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF



DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

### DECLARATION OF STEVEN B. FABRIZIO IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF TITOV DEPOSITION EXHIBIT 27

I, STEVEN B. FABRIZIO, hereby declare as follows:

1.     I am a partner at the law firm of Jenner & Block LLP, and counsel to the Plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Plaintiff and Counterdefendant Warner Bros. Entertainment Inc. ("Warner") in this action. The statements made in this

declaration are based on my personal knowledge including on information provided to me by colleagues or other personnel working under my supervision on this case.

2. I am making this declaration in order to respond in part to the unfounded allegations made by Mr. Thompson in his declaration in support of Hotfile Corp.'s opposition to Warner's motion to compel the production of Titov Deposition Exhibit 27. Declaration of Roderick M. Thompson, December 27, 2011, Dkt. #206-1 ("Thompson Decl.").

3. Hotfile produced two identical copies of the document used as Titov Deposition Exhibit 27, one bearing the Bates number HF00036777 (with the 31 page attachment Bates numbered HF00036778), produced on June 17, 2011, and one bearing the Bates number HF02866338 (with the 31 page attachment Bates numbered HF02866339), produced on October 14, 2011. The latter was the Bates numbered version that was marked as Titov Ex. 27, but the two documents otherwise appear identical. In the normal course, both copies of this document were reviewed and analyzed by multiple Warner attorneys working on this litigation and incorporated into our attorney work product, including deposition preparation and outlines.

4. Although Mr. Thompson emphasizes the volume of documents that Hotfile has produced over the course of this litigation, Thompson Decl. ¶ 2, the Hotfile production containing Titov Deposition Exhibit 27 made on October 14, 2011 contained only 83 documents. That production came a full week after Hotfile's prior production (which itself involved only a few thousand documents), and the next production following October 14 involved purely data, which does not require human review. In fact, other than pure data, Hotfile produced less than 350 documents after October 14th. Thus, contrary to the impression Hotfile attempts to create, Hotfile was plainly not facing any significant time pressure or volume overload in producing

2

those 83 documents. Yet, Hotfile's clawback notice of November 28, 2011 included 10 of the 83 documents contained in that October 14, 2011 production.

5.    Hotfile has previously claimed that it inadvertently produced privileged documents in this litigation. On July 28, 2011, my colleague Duane Pozza sent an email to Hotfile attorney Anthony Schoenberg informing him that plaintiffs had discovered three emails (HF02159110, HF02159114, HF02159220) produced by Hotfile on July 22, 2011 containing the term "work product" in their subject lines. Mr. Schoenberg replied on July 29, 2011 to inform plaintiffs that Hotfile was clawing back these three documents under the Protective Order. Emails from the same chain as the documents clawed back in July, containing the same "work product" subject lines, were subsequently produced by Hotfile in its October 14, 2011 production and clawed back by Hotfile only on November 28, 2011.

6.    Attached hereto as Exhibit A is a true and correct copy of an excerpt from the official transcript of the December 5-8, 2011 deposition of Anton Titov, the 30(b)(6) representative for Hotfile Corporation ("Hotfile"), in this action. Mr. Thompson's excerpt (from the rough transcript) omitted much of the relevant testimony. Accordingly, so the Court can see for itself what transpired, I have attached hereto the entire testimony related to Titov Deposition Exhibits 26 and 27, which is contained on pages 163-173 of the deposition transcript.

7.    In Paragraph 6 of his declaration, Mr. Thompson creates the impression that, after being informed about the claim of work product over an exhibit, I dismissed the issue and said "'Well, then, we can deal with that afterwards,' and proceeded improperly to examine the witness on a document that had already been recalled." Thompson Decl. ¶ 6. Whether intentional or not, that statement is highly misleading. First, the comment that "Well, then, we can deal with that afterwards" has been taken out of context. I had just marked Ex. 26, which

3

was in Bulgarian, and realized I did not have an English translation. At that point, Mr. Thompson raised the issue of some work product documents in Bulgarian. He concluded by saying: "I don't know if this [Ex. 26] is among them or not, not being able to read the Bulgarian." I responded "Well, then, we can deal with that afterwards" in the context of agreeing that Hotfile would not waive work product by allowing Mr. Titov to answer questions about Ex. 26, since neither Mr. Thompson nor I were in a position to know what the document said before Mr. Titov gave testimony on it. My comment was not cavalier or dismissive as Mr. Thompson suggests. See Exhibit A hereto, Titov dep. 164:3-24.

8. Moreover, the statement that I then "proceeded improperly to examine the witness on a document that had already been recalled" is grossly misleading. Titov Ex. 26 (Bates number HF02303232) was first listed on a Hotfile clawback email – in a string of 37 Bates numbers without any further descriptions of the documents – on Saturday, December 3, 2011; in other words, the Saturday before the Monday deposition of Hotfile and Mr. Titov in Bulgaria. I was either in transit to Bulgaria or readying to go to Bulgaria when the email was sent. There was no way I or anyone on my team could have identified the documents associated with those Bates numbers (much less determined where among our voluminous work product it, and the 36 other documents, might have been integrated) before or during the depositions in Bulgaria that week. I in fact told Mr. Thompson as much, as reflected in counsels' discussion on the record. See Thompson Decl., Ex. 3, Titov dep. (rough) at 197:7-13. For Mr. Thompson to make such accusations on these facts is, I submit, improper.

9. In Paragraph 8 of his declaration, Mr. Thompson suggests (but is careful not to state directly) that he reserved a potential work product objection as to Titov Ex. 27. Any such suggestion is patently false, as the transcript reveals. That exchange between counsel about

4

preserving a work product objection was strictly limited to Ex. 26 – a Bulgarian document for which I did not have a translation with me – not Ex. 27. When Mr. Thompson said "to the extent *this* has any work product" (emphasis added), we were explicitly talking about Ex. 26, as the transcript reflects. See Exhibit A hereto, Titov dep. 164:1 - 165:3.

10. I note that, in its opposition brief, Hotfile asserts a far more absolute proposition than Mr. Thompson testifies to in his declaration, claiming that Mr. Thompson in fact did object to Ex. 27 on grounds of work product. The transcript shows that assertion to be completely untrue. The objection Hotfile quotes came *before* I ever introduced Titov Ex. 27. See Exhibit A hereto, Titov dep. 167:2-19. The question that elicited that objection did not pertain to any exhibit. If anything, it demonstrates that Hotfile and its counsel were well aware of the potential for (what they claim is) work product surrounding the subject matter on which I was questioning Mr. Titov. That does not excuse their failure to object to Titov Ex. 27; it just confirms the waiver.

11. Finally, in Paragraph 9 of his declaration, Mr. Thompson asserts that he did not object to the introduction of and question on Titov Ex. 27 because he was unaware that it was identified by Bates number (with no other description of the document) in Hotfile's clawback notice. But, to be clear, Titov Ex. 27 is fully in English and displays a date of March 10, 2011. If the 32-page exhibit was in fact work product – which it does not appear to be – Mr. Thompson certainly could and should have recognized so from the document itself. I gave Mr. Thompson a copy of Titov Ex. 27 at the same time I handed a copy to the witness. I clearly observed Mr. Thompson review Titov Ex. 27 and confer with Mr. Valentin Gurvits, another counsel of record for Hotfile, who attended in person all days of the Hotfile/Titov deposition.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of January, 2012 in Washington, D.C.

By: /s/ *[signature]*

Steven B. Fabrizio