UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.

_____/

**MOTION AND MEMORANDUM OF LAW OF DEFENDANTS
HOTFILE CORPORATION AND ANTON TITOV TO STRIKE
PLAINTIFFS' PUTATIVE "REBUTTAL" REPORT OF DR.
RICHARD WATERMAN BEFORE THE CLOSE OF EXPERT
DISCOVERY ON JANUARY 17, 2012 AND MOTION FOR
EXPEDITED BRIEFING AND HEARING AT THE
UPCOMING STATUS CONFERENCE ON JANUARY 13, 2012**

CASE NO. 11-20427-WILLIAMS-TURNOFF

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................................. 2

III.    LEGAL STANDARD .......................................................................................... 9

IV.     LEGAL ARGUMENT ....................................................................................... 10

        A.      In Failing To "Contradict Or Rebut" Any Point Made By Professor Boyle, Dr. Waterman's Report Represents An Untimely Attempt To Proffer New Opinions In Contradiction To His Initial Report .......... 10

        B.      No Substantial Justification Exists For Dr. Waterman's New Opinion, Which Relies On Information Made Available By Hotfile To Plaintiffs As Much As Eleven Months Before His Original Report ............................................................................................................ 12

        C.      Far From Being "Harmless," Dr. Waterman's Belated Contradiction Of His Original Report Upsets Hotfile's Reliance Upon His Repeated Prior Testimony And Now Commits Hotfile's Statistics Expert To An Outdated Rebuttal Report ................................. 14

V.      CONCLUSION ................................................................................................... 17

CERTIFICATE OF GOOD FAITH CONFERENCE .................................................... 18

## I.    __INTRODUCTION__[1]

Friday night at 11:56 p.m., Plaintiffs served a putative "rebuttal" report from their statistician, Dr. Richard Waterman.  His report purports to rebut the opinion of Defendants' expert on copyright matters, Professor James Boyle of Duke Law School.  However, apart from the second paragraph – in which Dr. Waterman *agrees* with Mr. Boyle's statement that his opinion in no way implicates statistics – Dr. Waterman's report nowhere mentions Mr. Boyle.  Instead, Dr. Waterman uses the opportunity to revoke his original opinion to which he attested over a dozen times both in his report and at deposition – *i.e.*, that he only formed a statistical conclusion about the alleged infringement rate at Hotfile for January 2011 – and expands the scope of report to evidently include the entire existence of Hotfile for the twenty-two months preceding January 2011.  In so doing, Dr. Waterman relies in this second report on information available to Plaintiffs for as long as ten months before the deadline for Dr. Waterman's first report.  This is not rebuttal testimony, but rather a new expert opinion served nearly two months after the deadline set by this Court's Scheduling Order.  Having taken all of the twelve depositions of Plaintiffs' witnesses after Dr. Waterman confirmed his original opinion over a dozen times, Hotfile cannot now reasonably recapture the opportunity to question Plaintiffs' witnesses on relevant subjects.  More importantly, Hotfile served its rebuttal report of its statistician (Dr. Daniel Levy) on Friday, not knowing that later that night Dr. Waterman would change the scope of his original report.  Given the "automatic" exclusion of belated reports under the Federal Rules and the Court's Scheduling Order, this Court should strike Dr. Waterman's putative rebuttal report.

---

[1] This motion is filed by Defendants Hotfile Corporation and Anton Titov, which are collectively referred to in this motion as "Hotfile" or "Defendants."

Hotfile seeks expedited treatment of this Motion because expert discovery ends in twelve days on January 17, 2012.  Before attempting to research and oppose a new expert opinion on short notice in a twelve-day period already subject to five other depositions across the nation, Hotfile respectfully requests consideration of this Motion.  Given that the parties will appear before the Court for status conferences this Friday (January 13, 2012), Hotfile requests that Plaintiffs complete their Opposition on Wednesday, January 11, 2012, so that Hotfile may file a Reply on Thursday, January 12, 2012.  Hotfile has filed a separate request for hearing or oral argument as required by Local Rule 7.1(b).

## II.   FACTUAL BACKGROUND

On August 30, 2011, the Court issued its Scheduling Order.  [Docket No. 133.]  It required the exchange of opening expert reports on October 28, 2011.  *Id.*  It ordered the parties to exchange rebuttal expert reports "intended solely to contradict or rebut evidence on the same subject matter identified by another party" on December 2, 2011. *Id.*; Fed. R. Civ. P. 26(a)(2)(C)(ii).   It also set this case for trial on June 4, 2012.  *Id.* at 1.

On the deadline for producing opening reports, Plaintiffs served a putative expert report from their statistician, Dr. Richard Waterman.  (Attached hereto without exhibits as Exhibit A [hereinafter, "Waterman Rep."].)  He opined that 90.3% of "daily downloads"[2] from Hotfile were downloads of infringing or highly likely infringing

---

[2] Although Dr. Waterman does not mention the fact in his report, "daily downloads" refers to a database record kept by Hotfile that has no known relationship to the number of all downloads conducted on Hotfile every day.  Expert Report of Daniel S. Levy, Ph.D at 14-16 (attached hereto as Exhibit H).  The database record relied upon by Dr. Waterman excludes free-user downloads by nearly one billion internet users, omits an unknown number of downloads by "hotlink," and does not include an unknown number of downloads of files uploaded anonymously to Hotfile – rendering Dr. Waterman's conclusions devoid of any scientific merit.  *Id.* at 21.  Perhaps most importantly, Dr.

content.  *Id.* ¶ 16.  Setting aside the multiple, overlapping flaws that render his report devoid of any scientific merit,[3] ***Dr. Waterman repeatedly and explicitly confined his population of interest to daily downloads in a single month of Hotfile's 34-month existence:  January 2011***.  *See* Waterman Rep. ¶ 9 ("I looked at the month of activity prior to the complaint filing, January 2011"); *id.* ¶ 7 ("the population of interest consists of downloads of files from Hotfile in a specified time prior to the complaint, January 2011").

The same day, Hotfile served the expert report of Professor James Boyle of Duke Law School.  (Attached hereto as Exhibit B [hereinafter, "Boyle Rep."].)  As set forth in the opening paragraphs of his report entitled "Scope Of Expert Assignment," Professor Boyle undertook two tasks:  (1) "to explore some examples of the non-infringing uses of the Hotfile system"; and (2) "to examine Hotfile's Affiliate program, and specifically to look at how it can be used to compensate creators of content."  *Id.* ¶¶ 5-6.  ***He explicitly disavowed any statistical analysis***.  *See id.*. ¶ 7 ("My examination of Hotfile was not an exhaustive review of the files on Hotfile, nor does it purport to be a representative statistical sample of the uses of Hotfile as a whole."); *id.* at 34 ("This report does not attempt to present a statistically representative sample of the usage of Hotfile and I have no personal knowledge about what percentage of Hotfile's uploaded content, or of user downloads, is non-infringing.").

---

Waterman's focus on *downloads* ignores the majority of files on Hotfile (54%) which were never downloaded at all.  *Id.* at 17.

[3] Expert Report of Daniel S. Levy, Ph.D at 21 (attached hereto as Exhibit H).

On October 20, 2011, Plaintiffs moved to extend the rebuttal report deadline to December 23, 2011, and then jointly moved to extend the deadline again to January 6, 2012. [*See* Docket Nos. 156, 157, 198.]

On November 29, 2011, Hotfile's counsel deposed Dr. Waterman. (Attached in relevant portion as Exhibit C.) He stated no opinion in reaction to Professor Boyle's report served on Plaintiffs nearly two weeks before. *Id.* at 294:9-13. He did not consider Professor Boyle's materials in performing his analysis. *Id.* at 8:2 - 9:1; 10:24 - 11:1. He disavowed any training whatsoever in Professor Boyle's field. *Id.* at 53:13-17. Furthermore, he disavowed any expectation of rendering further opinions. *Id.* 294:9 - 295:20.

Regarding the temporal scope of his opinion, Dr. Waterman testified that he could not opine about any level of infringement on Hotfile over the past day, week, month, or any period after January 2011 because he only studied January 2011.

> **Q.**      Dr. Waterman, in your opinion, how much infringement has happened by virtue of the Hotfile website in the last 24 hours?
> **A.**      The last 24 hours I would not want to provide an opinion on that because what I learned about was January 2011, prior to the case being brought.
> …
> **Q.**      Can you provide an opinion today about the level of infringement over the last week?
> **A.**      I would repeat the same answer as I provided before . . .
> …
> **Q.**      So there may be a zero percent level of infringement using Hotfile's technology in the last week?
> **A.**      Likewise there could be 100 percent, I agree that both are possibilities.
> Q.      So you can't testify that it's not zero percent in the last week, right?
> A.      As I say, my – my study's absolutely clear as to where the log file was drawn from which was January of 2011 and my report pertains to that period in terms of the conclusions that I draw.
> …

CASE NO. 11-20427-WILLIAMS-TURNOFF

> **Q**.      You can't testify as you sit here today that there was a non-zero level of copyright infringement using Hotfile's technology in the last six months, can you?
>
> **A**.      . . . I have not drawn a conclusion about – in my report didn't draw a conclusion about what happened yesterday on Hotfile.
>
> **Q**.      Or in the last week, or in the last month, or in the last six months, or indeed since the Complaint was filed in this case.
>
> **A**.      That is correct.  I – I – as I keep stating the data, the log file that was used in this analysis was the log file for January 2011.  The sample was drawn from file downloads in January of 2011 and therefore the quantitative inferences pertain to January 2011.

*Id.* at 85:12-18; 86:18-21; 87:7-20; 88:17 - 90:3 (attached hereto as Exhibit C) (objections

omitted).  Just as he disavowed any opinion about infringement on Hotfile *after* January

2011, he disavowed any opinion about infringement on Hotfile *prior* to January 2011.

> **Q**.      So you don't purport to opine about the level of infringement at Hotfile prior to January 2011?
>
>       . . .
>
> **A**.      . . . I will say whenever I make something, a statement outside that population one has to acknowledge that it's – I – and I haven't done that within my report, I hasten to make that point that that's not my – my report is about January 2011.
>
>       . . .
>
> **Q**.      Do you have that information sufficient to back-cast from January of 2011 now?
>
> **A**.      To do – my – the objective of my study was not to back-cast.  I – I – you know, that was not the point of it so I haven't tried to do that up to now.  And because I haven't tried to do it I haven't tried to pull that information that might help me feel that that was a comfortable thing to do.
>
> **Q**.      So you offer no opinion as you sit here today, Dr. Waterman, about whether there were non-zero levels of infringement at Hotfile or using Hotfile's technology in the first two years of its existence?
>
> **A**.      My study does not pertain to or relate to that specific time period.  It pertains to January 2011.
>
> **Q**.      So you don't purport to state or opine that Hotfile had a non-zero level of copyright infringement through the use of its technology at any time prior to January 2011; is that fair?
>
> **A**.      As I said, my study does not pertain to that period.  And it may have been a hundred percent infringement for all I know.  It may have been 50.  It may have been zero.  My study was designed and it's explicitly stated in the report that as to – the log file was January 2011 and I'm – my conclusions are related to what was going on in January 2011.

*Id.* at 104:24 - 106:13; 107:22 - 109:13 (objections omitted).

On January 2, 2012, Plaintiffs proposed that all experts be permitted to append additional "demonstrative exhibits" to their original opinions by the deadline for rebuttal reports on January 6, 2012.  Hotfile stated that its experts had already disclosed their opinions and respectfully declined.  It is now clear that Plaintiffs wished to use the excuse of providing "demonstratives" to supplement Dr. Waterman's report.

On January 6, 2012 – despite the repeated disavowals in his deposition regarding extension of his opinion to any time period outside of January 2011 – Dr. Waterman submitted a "Rebuttal Report" stating that "my conclusions about infringement levels from the sample data [i.e., 90.3% infringement in January 2011] are likely indicative of the level of infringement prior to January 2011."  (Attached hereto without exhibits as Exhibit D ¶ 10).  Dr. Waterman's report purports to respond to the following statement in the report of Professor Boyle:  "My examination of Hotfile was not an exhaustive review of the files on Hotfile, nor does it purport to be a representative statistical sample of the uses of Hotfile as a whole."  *Id.* ¶ 2; Boyle Rep. (attached hereto as Exhibit B) ¶ 7.) Rather than "contradict or rebut" this point as required by this Court's Scheduling Order so as to qualify as a rebuttal report,[4] Dr. Waterman *agrees* with Professor Boyle's statement that his opinion in no way implicates statistics.  Dr. Waterman then makes no reference to any opinion of Professor Boyle for the remaining nine paragraphs of his eleven-paragraph report.  Instead, Dr. Waterman purports to extend the scope of his

---

[4] *See* Fed. R. Civ. P. 26(a)(2)(C)(ii); Docket Nos. 133, 157 (mirroring federal rule in reference to former Local Rule 16.1.K).

original opinion regarding one month of Hotfile activity to the prior twenty-two months of Hotfile's operation.  Exhibit D ¶ 10.

Not being a statistician, and having never seen Dr. Waterman's report, Professor Boyle's report of November 18, 2011 offered no opinion on the representativeness of January 2011 in relation to the preceding twenty-two months of Hotfile's operations. Boyle Rep. (attached hereto as Exhibit B).  Nonetheless, Dr. Waterman offered this opinion in his "rebuttal" to Professor Boyle:

> In this case, there were strong reasons for choosing January 2011 as the period of time from which to draw the sample.  My reasonable expectation is that Hotfile, in general, would be more likely to be in possession of actual content files available on Hotfile in more recent periods of time. Thus, if we drew a sample of downloads from January 2011, we would be more likely to obtain the associated files from Hotfile for those downloads than if we drew a sample of downloads from previous months. Subsequent to my initial report I have been provided with data that confirms that expectation.  In the attached Exhibit 1, I have provided a graphic illustration of data showing that cohorts of files uploaded in earlier months generally were less likely to be available from Hotfile after this litigation than cohorts of files uploaded in months closer to January 2011. (I understand that the presence of "file size" data is an indication of whether Hotfile is still in possession of the content file.)  For example, only 15-20% (at most) of files uploaded shortly after the launch of Hotfile were still available as of the initiation of litigation, whereas up to 80% of the more recent files were available.

Waterman Rebuttal Rep. (attached hereto as Exhibit D) ¶ 4.  Professor Boyle conducted no analysis of Hotfile's preservation of files prior to January 2011.  Moreover, all of the data provided to Dr. Waterman by Plaintiffs' counsel "[s]ubsequent to [his] initial report" was made available by Hotfile beginning on October 17, 2011 – over one month before the deadline for opening expert reports.  Dr. Waterman offers no explanation as to why he did not consider this "data" in his initial report.

Given that Professor Boyle offered no opinion in his report regarding the representativeness of January 2011 in relation to downloading behavior over the prior

twenty-two months of Hotfile's operations, he made no attempt to address the development of the Hotfile site over time.  Boyle Rep. (attached hereto as Exhibit B).  In contrast, Dr. Waterman opined as follows in his "rebuttal" to Professor Boyle:

> I have reviewed data regarding the development of the Hotfile site over time.  Based on my review of the data, it appears that Hotfile grew at a relatively stable rate from its launch in February 2009 through January 2011.  In Exhibits 2, 3, 4, and 5, I have provided a graphic depiction of a number of trends in the Hotfile data, including the steady growth in revenue, number of uploads, number of downloads, and available files. All of these graphs show a distinct "break point" occurring in February 2011, the month in which this litigation began.

Waterman Rebuttal Rep. (attached hereto as Exhibit D) ¶ 5.  Again, Dr. Waterman offers no explanation as to why he did not consider this "data" in his initial report or how this rebuts any point made by Professor Boyle.

Professor Boyle also did not address changes to Hotfile's website to address allegedly-infringing activity.  Boyle Rep. (attached hereto as Exhibit B).  Nonetheless, Dr. Waterman's "rebuttal" report states:

> I have received information regarding the changes that Hotfile claims to have made to address infringing activity at various points in time.  While I have no information about the effectiveness of any of these steps in reducing infringement, by intention, none of these would be expected to increase the amount of infringement on Hotfile.  As reflected in Exhibits 2-5, each of the steps taken prior to February 2011 appears to have had little effect on Hotfile's consistent pattern of growth.

Waterman Rebuttal Rep. (attached hereto as Exhibit D) ¶ 6.  Again, Dr. Waterman does not explain why he did not consider this information in his initial report or how this rebuts Professor Boyle's report – a practice he repeats in each of the remaining paragraphs of his report.  *See id.* ¶¶ 7-11 (setting forth opinions having no relation to Professor Boyle's report and omitted here for brevity).

On January 7, 2012, Hotfile asked Plaintiffs to withdraw the "rebuttal" report of Dr. Waterman for failure to "contradict or rebut" any opinion delivered by Hotfile's experts as required by Rule 26(a)(2)(C)(ii) of the Federal Rules of Civil Procedure. Rather than responding with an explanation of how their new report rebutted Professor Boyle's opinion, Plaintiffs stated that the report reacted to "the hypotheses you presented at deposition" because "it was such a focused part of your deposition examination." (Attached as Exhibit E.)  Hotfile responded that attempting to rehabilitate a witness after deposition is not grounds for a rebuttal report, since otherwise rebuttal reports and ensuing re-depositions would have no logical stopping point.  As with many or most of the parties' past disputes, Plaintiffs then derided Hotfile's position as sanctionable and frivolous.  *E.g.*, Docket No. 14 at 1; Docket No. 72 at 3; Docket No. 85 at 1.[5]  This motion ensued.

## III.   LEGAL STANDARD

A rebuttal report is a report "intended solely to contradict or rebut evidence on the same subject matter" of an opposing party's expert report.  Fed. R. Civ. P. 26(a)(2)(C)(ii). Courts may set deadlines for exchange of rebuttal reports.  *Id.*  "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1). The sanction of exclusion is "self-executing" and "automatic" unless the party proffering the improper report meets its burden of proving substantial justification or harmlessness.

---

[5] Regrettably, this is consistent with other communications from Plaintiffs' counsel, which use such words as "asinine," "drivel," "laughable," and "full of it."  In one outburst, Plaintiffs' lead counsel even offered to translate communications from English into a language that Hotfile's counsel may understand.  Such vitriol is not helpful.

*Id.* (Adv. Comm. Notes 1993); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  Compliance with Rule 26 is "not merely an aspiration" as the "expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006).  "A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

## IV.   LEGAL ARGUMENT

### A.   In Failing To "Contradict Or Rebut" Any Point Made By Professor Boyle, Dr. Waterman's Report Represents An Untimely Attempt To Proffer New Opinions In Contradiction To His Initial Report

Rebuttal testimony is permitted only when it directly addresses an assertion raised by an opponent's experts.  *Benedict v. U.S.*, 822 F.2d 1426, 1430 (6th Cir. 1987); *see IBM Corp. v. Fasco Indus., Inc.*, No. 93-20326, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995) ("[rebuttal experts] cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.")  Here, Professor Boyle – a law professor – did not opine about any matter of statistics.  Having never seen Dr. Waterman's initial report produced the same day, he would have had no reason to opine about the representativeness of January 2011 in relation to the preceding twenty-two months of Hotfile's operations, and thus he did not do so.  He did not opine about the development of the Hotfile site over time.  He did not opine about changes that Hotfile made to address allegedly-infringing activity.  He did not opine about the absence of non-Premium users from Hotfile's "dailydownloads" database records.  In fact, Professor Boyle repeatedly and explicitly disavowed any statistical analysis.  *See* Boyle Rep.

10

(attached hereto as Exhibit B) ¶ 34 ("This report does **not** attempt to present a statistically representative sample of the usage of Hotfile and I have no personal knowledge about what percentage of Hotfile's uploaded content, or of user downloads, is non-infringing.") (emphasis added).  Nevertheless, Dr. Waterman proffers a "rebuttal" report regarding the representativeness of January 2011 in relation to the preceding months of Hotfile's operations, the development of Hotfile over time, changes made at Hotfile to address allegedly-infringing activity, and the alleged justifiability of relying on Hotfile's "dailydownloads" data in performing a statistical analysis.  Waterman Rebuttal Rep. ¶¶ 3-11.  His only mention of Professor Boyle is to agree with him.  *Id.* ¶ 2 ("*as Prof. Boyle acknowledges*, he did not attempt to analyze a representative statistical sample . . . ") (emphasis added).  This is no rebuttal report.[6]

Plaintiffs' actual purpose in disclosing Dr. Waterman's "rebuttal" report is to attempt to rehabilitate him as a witness.  He testified over a dozen times at deposition that his opinion regarding the incidence of alleged infringement on Hotfile applied only to January 2011.  Waterman Dep. at 83:8 - 109:13 (attached hereto as Exhibit C).  In his "rebuttal" report, Dr. Waterman contradicts this testimony, now stating that his "conclusions about infringement levels from the sample data are likely indicative of the level of infringement prior to January 2011."  Waterman Rebuttal Rep. ¶ 10 (attached hereto as Exhibit D).  In short, the only person Dr. Waterman rebuts in his latest report is himself.  This is not a proper basis for producing new opinions nearly two months after

---

[6] "[A] party can control the scope of the testimony of its adversary's rebuttal experts by limiting its own experts' testimony to a given subject matter."  *IBM Corp. v. Fasco Indus., Inc.*, No. 93-20326, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995).  That is what Hotfile did when Professor Boyle disavowed any statistical expertise or opinion. Plaintiffs cannot justifiably ignore this rule.

the disclosure deadline.  *See Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169-70 (D. Colo. 2006) ("[A] supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c).  To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given."); *Nelson v. Freightliner LLC*, No. 5:01-cv-266, 2003 WL 25781423, at *2 (M.D. Fla. Apr. 23, 2003) ("To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation.").

>    **B.    No Substantial Justification Exists For Dr. Waterman's New Opinion, Which Relies On Information Made Available By Hotfile To Plaintiffs As Much As Eleven Months Before His Original Report**

Under the Federal Rules, parties cannot proffer additional expert reports after the deadline for initial reports in order to consider additional documents which were available to the witness prior to the deadline.  *See Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, No. 03-20078-CIV, 2005 WL 5960935, at *8 (S.D. Fla. Aug. 24, 2005) ("The documents upon which Bratic claims to rely were not acquired after writing the initial report.  Therefore, the late disclosure is not supplemental, and it is stricken."). This prevents a "shifting sands" approach to litigation, thereby encouraging predictability in expert discovery, discouraging gamesmanship, and combating needless expenditures for all parties.  *See Reese v. Herbert*, 527 F.3d at 1266, *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. at 457-58 ("The expert disclosure rule is intended to

provide opposing parties reasonable opportunity to prepare for effective cross

examination and perhaps arrange for expert testimony from other witnesses."); *Nelson v.*

*Freightliner*, 2003 WL 25781423, at *4 ("Strict adherence to discovery rules is necessary

to prohibit not only trial by ambush, but discovery gaming wherein a party holds back

evidence or does not pay sufficient attention in the first instance to develop expert

testimony.").

Here, Dr. Waterman states that he based his "rebuttal" report on documents

available to Plaintiffs for nearly a year.  For example, he produced with his rebuttal report

a study published in January 2011 commissioned by NBC Universal and produced by

Plaintiffs here.  (Attached hereto as Exhibit F.)  Dr. Waterman does not explain why he

only reviewed that document after the deadline for his initial report.  Likewise, Dr.

Waterman considered a graph generated by the web information company Alexa

(attached hereto as Exhibit I) – which has existed since April 1996.  *See*

*http://www.alexa.com/ company*.  He does not explain why he did not review that graph

previously.  Next, in a document produced with his rebuttal report entitled "Other

Documents Considered by Dr. Waterman for his Rebuttal Report" (attached hereto as

Exhibit G), Dr. Waterman states his reliance upon "Defendants' Amended Supplemental

Response to Plaintiffs' Interrogatory No. 2, dated June 2, 2011."  By definition, this

document had been available to Plaintiffs for five and one-half months by the time that

Dr. Waterman produced his original report.  Dr. Waterman then asserts that he relies

upon unidentified "testimony of Anton Titov" from this litigation regarding Hotfile's

"dailydownload" data.  *Id.*; Waterman Rebuttal Rep. ¶ 9 (attached hereto as Exhibit D).

However, Plaintiffs deposed Mr. Titov about "dailydownload" data on November 17,

2011 – prior to production of Dr. Waterman's original report.[7]  Given his reliance on information made available to Plaintiffs prior to the date for his original report, no justification ("substantial" or otherwise) exists for Dr. Waterman's putative rebuttal report.  *See Beller v. United States*, 221 F.R.D. 696, 701-702 (D.N.M. 2003) (Rule 26 does not give license to "sandbag" one's opponent with claims and issues that should have been included in the expert's original report).

   **C.     Far From Being "Harmless," Dr. Waterman's Belated Contradiction Of His Original Report Upsets Hotfile's Reliance Upon His Repeated Prior Testimony And Now Commits Hotfile's Statistics Expert To An Outdated Rebuttal Report**

   The Advisory Committee notes describe a "harmless" nondisclosure as:  an "inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a *pro se* litigant of the requirement to make disclosures."  Fed. R. Civ. P. 37(c)(1) (Adv. Comm. notes 1993).  Plaintiffs here cannot

---

[7] Dr. Waterman writes in his "rebuttal" report that "I understand that Mr. Titov has testified that he does not have any reason to believe that the downloading patterns of users from those other countries [referring to countries not affiliated with Hotfile] are any different from those of the users from the 54 Affiliate countries."  Waterman Rebuttal Rep. ¶ 9.  However, Dr. Waterman himself acknowledges that "there have been over 2 billion downloads over the lifetime of Hotfile" – making it utterly implausible that Anton Titov should know the content of those two billion files, especially given that Hotfile does not invade its users' privacy by examining their files.  In any event, Dr. Waterman cannot credibly rely on the following testimony to justify a "rebuttal" report which agrees with Mr. Titov's testimony:

> **Q**.     Do you have any reason to believe that users from countries on the list of 54 download different files than users from countries that are not on the list of 54?
> **MR. THOMPSON**: Same objection [calls for speculation, lacks foundation].
> **A**.     I don't have an opinion on that.

Titov. Dep. at 664:17-21.

even come close to discharging their burden of proving their wrongful conduct to be so "harmless." *Yeti by Molly*, 259 F.3d at 1106.

Dr. Waterman stated repeatedly in his original report that his opinion only related Hotfile downloads from January 2011. *See* Waterman Rep. ¶ 9 (attached hereto as Exhibit A) ("I looked at the month of activity prior to the complaint filing, January 2011"); *id.* ¶ 7 ("the population of interest consists of downloads of files from Hotfile in a specified time prior to the complaint, January 2011"). He confirmed over a dozen times in his deposition that he had no opinion about the incidence of alleged infringement on Hotfile either before or after January 20121. Waterman Dep. at 83:8 - 109:13 (attached hereto as Exhibit C). He then concluded his deposition by stating that there were no other opinions that he would render in this case, no other inquiries that he would undertake, and no further information that he would consider.

> **Q**.   Are there other opinions that you are going to render in this case that you have not stated today?
> **A**.   At this stage I have no preparation or other opinions to make.
> . . .
> **Q**.   Are there further inquiries that you expect to undertake before trial?
> **A**.   At po – at this point in time I have no expectation of initia – additional analyses.
> . . .
> **Q**.   Have you been asked to do anything further?
> **A**.   At this stage I have no further requests on my time.

*Id.* at 294:9 - 295:20.

Following Dr. Waterman's deposition, Hotfile justifiably relied upon the belief that Plaintiffs were offering no statistical evidence of infringement apart from the one month of January 2011. Hotfile took the deposition of each of the Plaintiffs' witnesses – twelve depositions in all – knowing that it need ask no questions regarding such topics as

downloading behavior over time, changes in consumption of online media since 2009, the growth of cyberlockers, and Plaintiffs' efforts to study the incidence of alleged infringement online over time. Fact discovery is now closed. Absent reopening discovery and revisiting the trial schedule – which Hotfile does not seek and which would cause litigation costs to balloon – Hotfile cannot recover the lost opportunity to examine Plaintiffs on these subjects.

Moreover, Hotfile relied upon Dr. Waterman's' original report and testimony in proffering its own expert testimony. Hotfile did not adduce testimony from any industry expert regarding alterations in online usage patterns over the past three years. It did not ask its existing expert, Dr. Andrew Cromarty, to address technological reasons why a statistician may not properly assume stability in the rate of infringing behavior over the past three years either at Hotfile, using cyberlockers, or online generally. (Thus Dr. Cromarty did not produce any rebuttal report in this case.) Perhaps most importantly, Hotfile asked its statistics expert, Dr. Daniel Levy, to address Dr. Waterman's original report in light of his deposition – not knowing that thirty-six minutes after Dr. Levy submitted his rebuttal to Dr. Waterman on January 6, 2012 that Dr. Waterman would expand the scope of his original opinion from one month of downloading behavior to more than twenty-two months. Plaintiffs cannot credibly deny the prejudice effectuated on Hotfile by such "sandbagging" behavior.

Hotfile also relied upon Dr. Waterman's repeated testimony in formulating its settlement strategy. Nonetheless, four minutes before midnight on the last business day before the court-ordered mediation – and after Hotfile's three client representatives had begun the journey from Bulgaria to attend the mediation – Plaintiffs unexpectedly

produced Dr. Waterman's new report.  Ambushes do not improve mediations.  Should mediation now fail, Hotfile would have invested in proceedings unilaterally disrupted by Plaintiffs' wrongful conduct.

"Federal courts routinely strike expert reports or exclude expert testimony which is not timely disclosed, even if the consequence is to preclude a party's entire claim or defense."  *Kendall Lakes Towers Condominium Ass'n, Inc. v. Pacific Ins. Co.*, No. 10-24310-CIV, 2011 WL 6372198, at *3 (S.D. Fla. Dec. 20, 2011).  Plaintiffs here have disregarded the Court's Scheduling Order requiring the exchange of expert reports by November 18, 2012.  They attempt to disguise new opinions as rebuttal opinions.  *See Pierce v. Novastar Mort., Inc.*, No. C05-5835, 2007 WL 636029, at *4 (W.D. Wash. Feb. 26, 2007) (striking rebuttal opinions not addressed in adversary's initial report); *United States v. Southern Cal. Edison Co.*, No. 01 Civ. 5167, 2005 LEXIS 24592, at *8-16 (E.D. Cal. Sept. 23, 2005) (same).  Plaintiffs' behavior should bear the consequence contemplated under the Federal Rules, and the "rebuttal" report of Dr. Waterman should be stricken.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should strike the putative "rebuttal" expert report of Dr. Richard Waterman served on January 6, 2012. A proposed Order on Defendants' Motion for Expedited Briefing and for Hearing on January 13, 2012, is attached hereto as Exhibit J.  Further, a proposed Order on Defendants' Motion to Strike is also attached hereto, as Exhibit K.

CASE NO. 11-20427-WILLIAMS-TURNOFF

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

I hereby certify that counsel for the movant, Andrew Leibnitz, conferred with all

parties or non-parties who may be affected by the relief sought in this motion, including

Plaintiffs' counsel, Steven B. Fabrizio, in a good faith effort to resolve the issues and has

been unable to do so.

**s**/ Andrew Leibnitz
Andrew Leibnitz

Respectfully submitted,

DATED:  January 9, 2012

By: /s/  Andrew Leibnitz
Roderick M. Thompson (admitted *pro hac vice*)
Email:  rthompson@fbm.com
Andrew Leibnitz (admitted *pro hac vice*)
Email:  aleibnitz@fbm.com
Anthony P. Schoenberg (*admitted pro hac vice*)
Email:  tschoenberg@fbm.com
Deepak Gupta (admitted *pro hac vice*)
Email:  dgupta@fbm.com
Janel Thamkul (admitted *pro hac vice*)
Email:  jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy: 415.954.4480

/s/ Janet T. Munn
Janet T. Munn, Fla. Bar No. 501281
Email: jmunn@rascoklock.com
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone:  305.476.7101
Telecopy: 305.476.7102

CASE NO. 11-20427-WILLIAMS-TURNOFF

And

s/Valentin Gurvits
Valentin Gurvits *(Admitted pro hac vice)*
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone:  617.928.1800
Telecopy:  617.928.1802

*Counsel for Defendants Hotfile Corporation*
 *and Anton Titov*

CASE NO. 11-20427-WILLIAMS-TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2012, the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  /s/Janet T. Munn
          Janet T. Munn

Karen L. Stetson, Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Steven B. Fabrizio (*Pro Hac Vice* )
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice* )
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice* )
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

Karen R. Thorland, Esq. *(Pro Hac Vice)*
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard Building E
Sherman Oaks, CA
Telephone: 818.935.5812