# EXHIBIT "C"

Waterman,

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DISNEY ENTERPRISES, INC.,      :   CIVIL ACTION
ET AL.,          Plaintiffs,   :
              vs.              :
HOTFILE CORP., ANTON TITOV,    :
ET AL.,                        :
              Defendants.  :   NO. 11-20427

- - -

Tuesday, November 29, 2011

- - -

Videotaped deposition of RICHARD WATERMAN,

Ph.D., taken at the Law Offices of STRADLEY, RONON,

STEVENS & YOUNG, LLP, 2005 Market Street, Suite

2600, Philadelphia, Pennsylvania, on the above date,

beginning at 9:33 a.m., before Theresa Kepler, CCR,

RPR-Notary Public, there being present.

- - -

LOVE COURT REPORTING, INC.
1500 Market Street
12th Floor, East Tower

Philadelphia, Pennsylvania   19102

(215) 568-5599

Waterman,

1          A.       There is no reason whatsoever.

2          Q.       Okay.  Dr. Waterman, I'm handing you

3     now what's been marked as Exhibit 18.

4                   Dr. Waterman, do you recall receiving

5     the subpoena for documents in this case?

6          A.       I do recall that, yes.

7          Q.       Is Exhibit 18 that subpoena?

8          A.       It does appear to be that subpoena,

9     yes.

10         Q.       I see you've turned or you've

11    previously turned to the second to last page, if you

12    could do so again and look at Request Number 1.  Do

13    you see --

14         A.       Excuse me.

15         Q.       Do you see that?

16         A.       Yes, I do.

17         Q.       This request asks for all documents

18    considered in formulating your opinion in the

19    present litigation.  Professor, or Dr. Waterman,

20    have you now produced in this case every document

21    that you considered in formulating your opinion?

22         A.       Yes, I have done that.

23         Q.       There is no document that you've

24    excluded?

Waterman,

1          A.          There are no exclusions.

2          Q.          Dr. Waterman, I note that you did not

3     produce or identify in your report any language or

4     web page appearing at the Hotfile website.  Did you

5     rely in any way on the Hotfile website as it appears

6     on the Internet in forming your opinion today?

7          A.          I have been on the Hotfile website so

8     I understand what it looks like and the nature of

9     what a link looks like, what it appears on the

10    Hotfile website, but in terms of the analyses that I

11    have done and which is the information behind my

12    opinion that information was not directly obtained

13    by myself but from records that Hotfile kept and

14    then were passed on to counsel.

15         Q.          Did any of the statements on

16    Hotfile's website influence your opinion in any way?

17         A.          No, in that I did not review the

18    entire Hotfile website in order to, you know,

19    determine the nature of the finds.

20         Q.          So your analysis or your review of

21    the Hotfile website consisted of familiarizing

22    yourself with the website generally?

23         A.          I think that's a great word for it,

24    "familiarization," that's what I was really doing on

Waterman,

1    the Hotfile website.

2          Q.      And as you sit here today you can't

3    think of any specific web page or web language that

4    you considered in formulating your opinion?

5          A.      No, there is nothing specific that

6    finds its way into my report in any way.

7          Q.      Or that you relied on.

8          A.      Or that I relied on.

9          Q.      Have you ever uploaded a file

10   yourself to Hotfile?

11         A.      No, I have not, sir, gone through

12   that process.

13         Q.      Have you ever downloaded a file from

14   Hotfile?

15         A.      To my recollection no, though I have

16   seen what a page of links looks like on Hotfile.

17         Q.      How long in aggregate would you say

18   spent on Hotfile's website?

19         A.      I would imagine something order of

20   30 minutes to an hour.

21         Q.      There is no other documents you'd

22   like to produce now that you've considered or relied

23   on in forming your opinion?

24         A.      No, there are no additional

Love Court Reporting, Inc.

Waterman,

1   documents.

2          Q.      Did you meet with anyone to prepare

3   for your deposition today, Dr. Waterman?

4          A.      I met yesterday with Mr. Pozza.

5          Q.      For how long?

6          A.      I believe it was approximately three

7   hours.

8          Q.      Anyone else?

9          A.      Yeah, at the meeting yesterday Duane

10  was the only person there.

11         Q.      Did you have any other preparation

12  for your deposition today?

13         A.      There was a phone call, a brief phone

14  call Sunday morning I believe it was, and on that

15  call was Steve Fabrizio as well as Duane here.

16         Q.      And how long was that phone call?

17         A.      I think that was approximately 20

18  minutes, it was a brief call.

19         Q.      And that was two days ago?

20         A.      That was two days ago, yeah.

21         Q.      Dr. Waterman, what did you do to

22  prepare for rendering your opinion in this case?

23                 MR. POZZA:   I'd object that that is

24         vague and ambiguous.

Waterman,

1    Hotfile would fit into the definitions of cyb -- of

2    what people understand are cyberlockers.

3                Q.      What is a cyberlocker?

4                MR. POZZA:  Objection.  This calls

5          for testimony on technical matters.

6                THE WITNESS:  A cyberlocker as in the

7          instance of Hotfile is a site in which a user

8          can upload content, be presented with a link

9          to that content and then in some form may

10         share that link.  That's typically the modus

11         operandi of a cyberlocker.

12   BY MR. LEIBNITZ:

13               Q.      Are you an expert in law?

14               MR. POZZA:  Objection.  Vague.

15               THE WITNESS:  I am clearly not

16         trained as a lawyer.  I'm trained as a

17         statistician.

18   BY MR. LEIBNITZ:

19               Q.      Are you trained as a technologist?

20               A.      I -- I find the word "technologist"

21   very, very vague, but certainly in terms of -- of

22   computing a lot of my training would have involved,

23   because statistics, my discipline is a very broad

24   discipline, but the part that I have been involved

Waterman,

Page 83

 1    seeing in this particular time or, you know, area

 2    for which the population was drawn would have no

 3    particular reason for believing that it was

 4    different from some other one.  And that, you know,

 5    wouldn't be a statistical statement that was driving

 6    that because you need data to make a statistical

 7    statement but one I would say of general expertise.

 8            Q.      Did you do that here in the Hotfile

 9    case?

10                    MR. POZZA:  Objection.  The question

11            is vague.

12                    THE WITNESS:  My statements in the

13            Hotfile case refer to what was hap -- in

14            terms of the analysis that I did refer to

15            January 2011.

16    BY MR. LEIBNITZ:

17            Q.      Do you purport to opine in this case,

18    Dr. Waterman, about any behavior outside

19    January 2011?

20                    MR. POZZA:  Object as to the meaning

21            of behavior.

22                    THE WITNESS:  My numbers that I

23            present in the report are definitely

24            statements specifically about January, and

Waterman,

1           then I would say to the extent that the world

2           was similar before January, for example,

3           December, that if in -- if I had no reason to

4           believe that the world had changed

5           dramatically, you know, that there was no

6           event of interest that would change behavior,

7           then that the results that I provided would

8           give one a sense of what was likely happening

9           prior to that point.

10    BY MR. LEIBNITZ:

11           Q.      Let's be very clear, sir.  Do you

12    purport in this case to opine about behavior outside

13    January 2011?

14                  MR. POZZA:  Object -- same objection,

15           and asked and answered.

16                  THE WITNESS:  I would just reiterate

17           that the statements that I make are

18           absolutely related to January 2011, I mean,

19           because that was the population from which

20           the log file -- you know, we drew samples

21           from the January log file, so this is a

22           statement about January 2011.  And the extent

23           to which a month of December of 2010 or

24           November 2010 would be expected to be similar

Love Court Reporting, Inc.

Waterman,

```
 1              or, as I would say, I have no reason to

 2              believe that the world changed in some

 3              dramatic fashion, there was no massive event

 4              of interest, then my sense would be that this

 5              would give me good understanding of what was

 6              -- what was likely to have happened

 7              beforehand.  But I wouldn't say that that

 8              statement -- I wouldn't put that statement in

 9              the same category as I would the one about

10              the population for which I drew the sample.

11   BY MR. LEIBNITZ:

12              Q.    Dr. Waterman, in your opinion how

13   much infringement has happened by virtue of the

14   Hotfile website in the last 24 hours?

15              A.    The last 24 hours I would not want to

16   provide an opinion on that because what I learned

17   about was January 2011, prior to the case being

18   brought.  I think that once the case is brought, you

19   know, then behavior can change.  That would be

20   exactly one of those instances, a kind of waterfall

21   or watershed type of event where I would anticipate

22   behavior to change, potentially change quite

23   dramatically once the case is brought.

24                    And so I -- and I have no strong
```

Love Court Reporting, Inc.

Waterman,

Page 86

```
 1   basis to say one way or another what the result of

 2   that would be, but typically when someone is told,

 3   you know, that they are doing something illegal

 4   their behavior changes, fundamentally changes.  And

 5   so we don't have -- I do not have information prior

 6   to the case, so I don't want to say anything about

 7   what happened.  I think it was sometime in February

 8   after that point in time.

 9            Q.     So you can't opine as you sit here

10   today that there was a non-zero level of

11   infringement in the last 24 hours on Hotfile?

12                  MR. POZZA:  Objection.  Vague.

13                  THE WITNESS:  I have collected no

14            data on the last 24 hours.  I, to be honest,

15            don't even know if the site exists in the

16            last 24 hours.

17   BY MR. LEIBNITZ:

18            Q.     Can you provide an opinion today

19   about the level of infringement over the last week?

20            A.     I would repeat the same answer as I

21   provided before that any time after the case was

22   brought and when defendants understood that this

23   litigation was going to happen that the behavior of

24   the site would have -- could have changed radically
```

Waterman,

1   as compared to before it was brought and since my

2   data is from the pre time period that is the time

3   period for which I'm most comfortable in making

4   statements.  So I don't know whether the site exists

5   in all honesty so I don't know whether there's been

6   a download.

7          Q.     So there may be a zero percent level

8   of infringement using Hotfile's technology in the

9   last week?

10         A.     Likewise there could be 100 percent,

11  I agree that both are possibilities.

12         Q.     So you can't testify that it's not

13  zero percent in the last week, right?

14                MR. POZZA:  Objection.  Asked and

15            answered.

16                THE WITNESS:  As I say, my -- my

17            study's absolutely clear as to the where the

18            log file was drawn from which was January of

19            2011 and my report pertains to that period in

20            terms of the conclusions that I draw.

21  BY MR. LEIBNITZ:

22         Q.     Can you testify as you sit here today

23  that there was a non-zero level of infringement in

24  the last week on Hotfile?

Waterman,

1              MR. POZZA:  Objection.  Asked and

2        answered.  You're just asking the same

3        question.

4              THE WITNESS:  As I said, it may have

5        been a hundred percent, it may have been

6        99 percent, it may have been 0 percent.

7   BY MR. LEIBNITZ:

8        Q.     You can't tell one way or the other?

9              MR. POZZA:  Objection.  Asked and

10       answered.

11             THE WITNESS:  As I've said, my data

12       set, the one that I've analyzed is to do with

13       January and so in terms of the numerical

14       quantities that I present in my report they

15       will refer to January 2011.

16   BY MR. LEIBNITZ:

17       Q.     You can't testify as you sit here

18   today that there was a non-zero level of copyright

19   infringement using Hotfile's technology in the last

20   six months, can you?

21             MR. POZZA:  Objection.  Misstates

22       testimony.  Vague.

23             THE WITNESS:  Six months takes us

24       back to May of 2011.  May of 2011 is after

Love Court Reporting, Inc.

Waterman,

Page 89

```
 1          the time period for which I have the log file

 2          which is January.  So as I noted in my

 3          statements, the numerical statements that I

 4          provided relate to January of 2011.  The

 5          amount of infringement that happened

 6          subsequent to that event we have -- I have no

 7          information on to make a determination as to

 8          whether it's a hundred percent, 90 percent,

 9          50 percent or your hypothetical of

10          zero percent.

11               I have not drawn a conclusion

12          about -- in my report didn't draw a

13          conclusion about what happened yesterday on

14          Hotfile.

15   BY MR. LEIBNITZ:

16          Q.     Or in the last week, or in the last

17   month, or in the last six months, or indeed since

18   the Complaint was filed in this case.

19               MR. POZZA:  Objection.

20          Argumentative.

21               THE WITNESS:  That it correct, I --

22          I -- as I keep stating the data, the log file

23          that was used in this analysis was the log

24          file for January 2011.  The sample was drawn
```

Waterman,

Page 90

 1              from file downloads in January of 2011 and

 2              therefore the quantitative inferences pertain

 3              to January 2011.

 4    BY MR. LEIBNITZ:

 5         Q.       To be clear, you state no opinion as

 6    to the level of infringement using Hotfile's

 7    technology since the filing of the Complaint in this

 8    case in February 2011, right?

 9         A.       By virtue of the data that I have

10    collected or the log file that I have had access to,

11    the January log file, the statements that I made

12    pertain up to the end of January.  And as I said, in

13    general if there is a watershed type event, and the

14    bringing of the case would be such a type of

15    watershed type event, then I would acknowledge that

16    human behavior can change.  Exactly in which way it

17    would change, I mean I wouldn't speculate, but I'm

18    confident that people do change their behavior.

19              And if I felt that behavior, that I

20    had no reason to believe that fa -- the ultimate

21    behavior had not changed, then I feel that my study

22    did give some sense of what was likely to be

23    happening.  And so I would be more comfortable going

24    retrospectively behind January 2010 in just, you

Waterman,

Page 91

1    know, saying that the -- what I learned in January

2    of 2011, sorry, 2011, is very likely to be more

3    representative of what happened in December 2010 or

4    November, points proximate in time, because I have

5    no reason to believe the world changed dramatically.

6              But given the case being brought in

7    February I think that, I don't know, but it's

8    possible the world changed quite dramatically in

9    terms of the Hotfile site, and if the world changed

10   dramatically in terms of the Hotfile site, then what

11   we learned in January might not be informative of

12   what happened in February, March, April and so on.

13       Q.      Indeed you offer no numerical level

14   of infringement postulated to occur on the website

15   after January of 2011 in your report.

16       A.      That is correct.  My report does not

17   make statements post January 2011.

18       Q.      All right.  So, Dr. Waterman, what

19   countermeasures against copyright infringement has

20   Hotfile taken since its inception?

21              MR. POZZA:  Objection.  Calls for

22          speculation and vague.

23              THE WITNESS:  I'm not intricately

24          aware of the intricacies of the steps that

Love Court Reporting, Inc.

Waterman,

Page 92

```
 1          Hotfile specifically may have taken.   I
 2          understand some of the steps because, as I
 3          alluded to before, I'm aware of the ecosystem
 4          and through the other cases that I've worked
 5          on.
 6                   And so one of the measures, and
 7          whether or not Hotfile took it I simply don't
 8          know, is the concept of the takedown notice,
 9          where a rights holder notes that their
10          material is being shared in an unauthorized
11          fashion and sends a notice.  What happened at
12          that point, I do not know.
13  BY MR. LEIBNITZ:
14          Q.     When did Hotfile implement its
15  takedown procedure?
16          A.     I do not know.
17                 MR. POZZA:  Objection.  It calls for
18          speculation and is vague.
19                 THE WITNESS:  I do not know.
20  BY MR. LEIBNITZ:
21          Q.     What other measures against copyright
22  infringement did Hotfile take since its inception?
23                 MR. POZZA:  Same objection.
24                 THE WITNESS:  I am simply not aware
```

Love Court Reporting, Inc.

Waterman,

1           whether there were or not measures taken.

2    BY MR. LEIBNITZ:

3           Q.     As you sit here today you are unaware

4    of any measures that Hotfile has taken to fight

5    copyright infringement.

6                  MR. POZZA:   Objection.  This is vague

7              and it calls for speculation and is outside

8              the scope of expert testimony.

9                  MR. LEIBNITZ:   Correct.

10                 THE WITNESS:   There are many aspects

11             of the Hotfile site that I am not aware of or

12             the Hotfile business because that's not my

13             role within this case.  My role within this

14             case is to provide an opinion as to, in the

15             month of January of 2011, the extent of or

16             the proportion of files that were associated

17             with infringing content.

18                 So it is -- I will acknowledge there

19             is probably a million things about Hotfile as

20             a business that I don't know, but I don't

21             know them because I felt that for the point

22             or the purposes of me being retained in this

23             case those weren't relevant to the decisions

24             that I came up with.

Waterman,

1   BY MR. LEIBNITZ:

2         Q.      So you didn't find it useful to know

3   in forming your opinion in this case what

4   countermeasures Hotfile has taken against copyright

5   infringement.

6               MR. POZZA:   Objection.   Vague and

7               misstates the testimony.

8               THE WITNESS:   I would agree that it

9               is unnecessary for me to know what business

10              rules, we might call them business rules,

11              Hotfile implements because my goal was to

12              understand the activity that actually

13              happened on the site and hence a log file

14              which records the activity on the site is the

15              appropriate source of information for me to

16              make my decision.

17              As I say, there are many other

18              features of any business that are happening

19              that I would not be aware of, and typically I

20              don't need to be aware of them because they

21              don't pertain to the particular, in this

22              case, study or quantification that I'm trying

23              to make.

24   BY MR. LEIBNITZ:

Waterman,

1           Q.      Have you now exhaustively stated your

2     awareness of all the countermeasures Hotfile has

3     taken against copyright infringement?

4                   MR. POZZA:  Objection.  Vague.

5                   THE WITNESS:  As I say, I'm not

6           familiar with what I've term the business

7           rules that Hotfile has implemented, I'm just

8           simply not familiar with them.

9     BY MR. LEIBNITZ:

10          Q.      When did Hotfile first begin

11    permitting content owners to seek the takedown of

12    allegedly infringing material?

13                  MR. POZZA:  Objection.  Calls for

14          speculation, outside of the scope of the

15          testimony and is vague.

16                  THE WITNESS:  As I've said, these

17          sorts of facts weren't necessary for the

18          study, to implement the study that I was

19          asked to do and so I never -- I would not ask

20          that question because I did not feel that it

21          would be relevant to inform my study.

22    BY MR. LEIBNITZ:

23          Q.      And you don't know as you sit here

24    today?

Love Court Reporting, Inc.

Waterman,

Page 96

1              MR. POZZA:  Same objections.

2              THE WITNESS:  As I said, I think it's

3         unnecessary for the validity of my study to

4         know that.

5    BY MR. LEIBNITZ:

6         Q.     Do you know it one way or the other

7    as you sit here today, Doctor?

8              MR. POZZA:  Objection.  Vague.  I'm

9         not sure what "it" is.

10   BY MR. LEIBNITZ:

11        Q.     Dr. Waterman, do you know as you sit

12   here today when Hotfile first began permitting

13   content owners to seek the takedown of allegedly

14   infringing material?

15             MR. POZZA:  Same objection.  It's

16        been asked and answered.

17             THE WITNESS:  I'm -- I am not aware

18        of the date on which -- if such a -- you

19        know, how if such a rule is formulated or

20        followed.

21   BY MR. LEIBNITZ:

22        Q.     When did Hotfile first start

23   preventing users terminated for alleged infringement

24   from signing back up to Hotfile using the same

Waterman,

1   e-mail address?

2              MR. POZZA:  Objection.  Calls for

3        speculation, lacks foundation, outside of

4        expert testimony and vague.

5              THE WITNESS:  To my understanding

6        this is a very similar question to the

7        previous one that you've asked and so my

8        answer is going to be similar.  There are

9        many, many aspects of the Hotfile site, its

10       business rule, its methodologies that I am

11       not aware of, and I'm not aware of them

12       because I didn't feel I needed to know them

13       in order to perform the study that I was

14       asked to provide.

15  BY MR. LEIBNITZ:

16       Q.      As you sit here today you do not know

17  when Hotfile first started preventing users

18  terminated for alleged infringement from signing

19  back up to Hotfile using the same e-mail address,

20  correct?

21             MR. POZZA:  Same objection.  Asked

22       and answered.

23             THE WITNESS:  Again, any question

24       about specific business rules that Hotfile

Love Court Reporting, Inc.

Waterman,

```
 1          might have implemented I am not aware of
 2          the -- of how they implement or what the
 3          business rules were or how they implemented
 4          them because I was asked to analyze the log
 5          file and those business rules don't pertain
 6          to the activity that I was asked to analyze.
 7   BY MR. LEIBNITZ:
 8          Q.      So you don't know when Hotfile first
 9   started preventing users from signing back up to
10   Hotfile using the same e-mail address after being
11   accused of alleged infringement.
12              MR. POZZA:  Same objection, it's
13          assuming facts not in evidence and it's asked
14          and answered.
15              THE WITNESS:  I agree I don't know
16          and I believe it's not a necessary fact to
17          inform my study.
18   BY MR. LEIBNITZ:
19          Q.      Could it have been a month before
20   January 2011?
21              MR. POZZA:  Objection.  Calls for
22          speculation and vague.
23              THE WITNESS:  I am unaware of the
24          date -- that if such a rule was put into
```

Love Court Reporting, Inc.

Waterman,

1              place and when it was put into place.

2    BY MR. LEIBNITZ:

3         Q.      When did Hotfile implement hash

4    fingerprinting to prevent the file once taken down

5    for alleged infringement from being uploaded again?

6              MR. POZZA:  Same set of objections.

7              This calls for speculation and lacks

8              foundation, assumes facts that are not in

9              evidence and is outside the scope of the

10             expert testimony and is vague.

11             THE WITNESS:  Again, this is a

12             business rules type question.  And as I've

13             answered before, I'm not aware of the

14             specific business rules that Hotfile

15             implemented, and therefore, in any particular

16             case I would be unaware of a date of starting

17             or stopping.

18   BY MR. LEIBNITZ:

19        Q.      When did Hotfile hire a DMCA agent?

20             MR. POZZA:  Same set of objections.

21             Speculative.

22             THE WITNESS:  Again, this is another

23             question about their business operations, and

24             as a statistician who was asked to form an

Love Court Reporting, Inc.

Waterman,

Page 100

1          opinion of the infringement level of activity

2          on a site, on the Hotfile site, knowing when

3          they hired such an agent would not be one of

4          the pieces of information that would be

5          required for me to formulate my study.

6                    So I was not aware of such a hiring

7          and if I had been aware of such a hiring it

8          would not have changed the way that my study

9          would have been conducted.

10   BY MR. LEIBNITZ:

11          Q.     When did Hotfile announce its DMCA

12   agent on its website?

13                    MR. POZZA:  Same objections.  Calls

14          for speculation, lacks foundation, assumes

15          facts not in evidence, and is outside the

16          scope of expert testimony.

17                    THE WITNESS:  I'm going to make the

18          same response to that, that is another

19          question about the business operations of

20          Hotfile.  I am not familiar with those

21          business operations, I am not familiar with

22          the initiation dates of various of these

23          business operations or business rules, and so

24          whether the event happened I don't know one

Waterman,

Page 101

```
 1            way or another, and given that I would not

 2            know the date if it did happen.

 3    BY MR. LEIBNITZ:

 4            Q.      When did Hotfile implement a

 5    strikes-based repeat infringer policy?

 6                    MR. POZZA:  Same set of objections.

 7            It calls for speculation, outside the scope

 8            of expert testimony, and is also vague as to

 9            what a strikes based repeat offender policy

10            is.

11                    THE WITNESS:  I'm going to have to

12            provide the same answer as I provided before,

13            which was as I'm not aware of the operational

14            aspects in terms of those business

15            operations, business rules that Hotfile

16            initiated, I'm not aware of whether such a

17            program happened or the initiation or ending

18            date of such a program.

19                    And the reason why these business

20            rules are not -- you know, I'm not overly

21            concerned with them from the point of view of

22            my study, was that my study confined itself

23            to what happened in January of 2011.  And I

24            have a log file that actually provides a
```

Love Court Reporting, Inc.

Waterman,

```
 1          complete record of, and we're talking the
 2          recorded downloads, and my findings pertain
 3          to the information that I have.
 4  BY MR. LEIBNITZ:
 5          Q.      We only have one minute left, sir.
 6  When did Hotfile implement vocal fingerprinting
 7  endorsed by plaintiffs collectively here as ensuring
 8  copyright compliance?
 9              MR. POZZA:  Object to calls for
10          speculation, lacks foundation, it's compound,
11          assumes of facts not in evidence, outside the
12          scope of expert testimony and is vague.
13              THE WITNESS:  And I will answer the
14          same as I did before, which was because I am
15          not familiar with the business rules which
16          Hotfile implemented with regard to
17          infringement activities, I would not know
18          whether such an event took place and indeed
19          if it took place at the time at which it took
20          place.
21              And why was I -- why am I comfortable
22          sitting here not knowing that information?
23          Because I don't believe that it is relevant
24          to the analyses that I report.
```

Love Court Reporting, Inc.

Waterman,

Page 103

```
 1                  THE VIDEOGRAPHER:  We are now going

 2          off the record.  This completes Tape Number

 3          1.  The time is 11:53.

 4                       -  -  -

 5               (Whereupon, a discussion was held off

 6          the record.)

 7                       -  -  -

 8                  THE VIDEOGRAPHER:  We are now on the

 9          record.  The time is 11:56.

10   BY MR. LEIBNITZ:

11          Q.     Dr. Waterman, can you now exclude the

12   possibility that immediately prior to January 2011

13   Hotfile took actions impacting the level of

14   infringement through its technology?

15                  MR. POZZA:  Objection.  Calls for

16          speculation and is vague.

17                  THE WITNESS:  That seems to be a

18          summary question of all of the business rules

19          that you have been talking about that they

20          have -- might have addressed infringement

21          activity, and as I said before I'm not aware

22          of the complete set of business rules.  I'm

23          not of aware of when they were initiated, and

24          so what Hotfile did as a business in
```

Love Court Reporting, Inc.

Waterman,

1          December 2010 I'm simply not in a position to

2          have an opinion on.

3    BY MR. LEIBNITZ:

4          Q.     So you cannot testify as you sit here

5    today that there was a non-zero level of copyright

6    infringement, say, in the first 24 hours of

7    Hotfile's existence?

8                 MR. POZZA:  Objection.  Calls for

9          speculation and is vague.

10                THE WITNESS:  I mean, I think I've

11         repeated many times that my study draws data

12         from January 2011, and the basic statistical

13         paradigm is that we have a population, in

14         this case it's the log file associated with

15         downloads of files from Hotfile.  We draw a

16         sample from that population, and my

17         inferences are related to that population,

18         January 2011.

19                And so those are what my -- the

20         numbers that I've provided my report relate

21         to directly.  That was the scope of those

22         specific findings.

23   BY MR. LEIBNITZ:

24         Q.     So you don't purport to opine about

Love Court Reporting, Inc.

Waterman,

Page 105

1    the level of infringement at Hotfile prior to

2    January 2011?

3                    MR. POZZA:  Objection.  Asked and

4           answered.

5                    THE WITNESS:  I would say that the

6           statements that I make about January 2011,

7           and I will stand and defend to the end

8           because they are based purely on the

9           scientific method of drawing a sample from a

10          population, etcetera.

11                   To the extent that they inform us as

12          to what happened prior to 2000 -- January of

13          2011 to me is the extent to which there might

14          have been watershed events prior to that

15          process that changed the entire nature of the

16          site and whether or not such events occurred.

17                   Now, if somebody told me that no such

18          events occurred, that the belief was that

19          the -- that there was stability in the nature

20          of the site, then I would feel quite

21          comfortable that the results that I had for

22          January told me something about what was

23          going on prior to that month, but I wouldn't

24          put the same, you know -- I wouldn't put them

Waterman,

1          forward as forceful -- forcefully as I will

2          about what's happening in January.

3     BY MR. LEIBNITZ:

4          Q.      Because they are not based on the

5     scientific method, correct?

6          A.      Because they are not based -- I mean,

7     will say things very forcefully about January

8     because I have a sample from January.  I will say

9     whenever I make something, a statement outside that

10    population one has to acknowledge that it's -- I --

11    and I haven't done that within my report, I hasten

12    to make that point that that's not my -- my report

13    is about January 2011.  But, you know, it is the

14    nature of many activities when we talk about the

15    scientific method.  We develop it in the classroom

16    or the laboratory, but we get to apply it in the

17    world.

18               And I -- so I mean, I'm picking up on

19    the word "the scientific method."  I mean, often in

20    science we actually make statements and conclusions

21    outside our population.  Maybe we not -- we don't

22    want to ideally but we do, so the example that I can

23    always think of are drug trials.  In order to find

24    out whether a drug is useful or not we tend to do a

Waterman,

1    trial.  The trial has what's called informed

2    consent.  Not everybody consents to being in a

3    trial, and so you might make the argument that those

4    people who weren't in the trial, that those in the

5    trial are not a representative group of all people,

6    but we only found out how the drug was working on

7    the group who chose to be in the trial, not those

8    outside, yet we still feel comfortable in making

9    prescription decisions for the individual who walks

10   into the doctor's office with high blood pressure.

11              You know, and so though we might like

12   from a scientific point of view to say, no, we don't

13   have informed consent, it causes potentially some

14   bias in our findings we -- we live with it.  And in

15   that sense, you know, I -- I would acknowledge that

16   I am most secure in my statements about the

17   population and that's what I will defended till the

18   cows come home, you see.  And outside I am --

19   outside of that population I would just want to have

20   a lot more information about how the world was

21   working outside that population.

22        Q.     Do you have that information

23   sufficient to back-cast from January of 2011 now?

24              MR. POZZA:  Objection as to form.

Love Court Reporting, Inc.

Waterman,

Page 108

```
 1            It's vague.

 2                  THE WITNESS:  To do -- my -- the

 3            objective of my study was not to back-cast.

 4            I -- I -- you know, that was not the point of

 5            it so I haven't tried to do that up to now.

 6            And because I haven't tried to do it I

 7            haven't tried to pull that information that

 8            might help me feel that that was a

 9            comfortable thing to do.

10    BY MR. LEIBNITZ:

11            Q.      So you offer no opinion as you sit

12    here today, Dr. Waterman, about whether there were

13    non-zero levels of infringement at Hotfile or using

14    Hotfile's technology in the first two years of its

15    existence.

16                  MR. POZZA:  Objection.  It's vague

17            and misstates the witness' testimony.

18                  THE WITNESS:  My study does not

19            pertain to or relate to that specific time

20            period.  It pertains to January 2011.

21    BY MR. LEIBNITZ:

22            Q.      So you don't purport to state or

23    opine that Hotfile had a non-zero level of copyright

24    infringement through the use of its technology at
```

Waterman,

Page 109

1    any time prior to January 2011; is that fair?

2              MR. POZZA:  Objection.  Misstates the

3         testimony and it's been asked and answered.

4              THE WITNESS:  As I said, my study

5         does not pertain to that period.  And it may

6         have been a hundred percent infringement for

7         all I know.  It may have been 50.  It may

8         have been zero.

9              My study was designed and it's very

10        explicitly stated in the report that as to --

11        the log file was January 2011 and I'm -- my

12        conclusions are related to what was going on

13        in January of 2011.

14             MR. LEIBNITZ:  Thank you, sir.  Let's

15        take a break.

16             THE WITNESS:  Okay.

17             THE VIDEOGRAPHER:  We are now going

18        off the record.  The time is 12:03.

19                   - - -

20             (Whereupon, there was a recess in the

21        proceedings.)

22                   - - -

23             THE VIDEOGRAPHER:  We are now on the

24        record.  The time is 12:59.

Love Court Reporting, Inc.

Waterman,

1              Password protected could have content

2         in it but you simply can't access through

3         because one doesn't have the password but one

4         could have other meta-information associated

5         with it that would help make a determine of

6         infringement status, so I don't see the two

7         as equivalent.

8    BY MR. LEIBNITZ:

9         Q.    Are there other opinions that you are

10   going to render in this case that you have not

11   stated today?

12        A.    At this stage I have no preparation

13   or other opinions to make.

14        Q.    Have you conducted a study of the

15   percentage of infringement files unloaded to Hotfile

16   but not downloaded?  I think you answered that

17   before.

18        A.    I have not conducted any other

19   studies of the Hotfile site apart from this

20   Dailydownloads study for January 2011.

21        Q.    Are you aware of the number of

22   illegal files that were excluded or replaced in your

23   study?

24        A.    I don't have the exact number but it

Waterman,

 1   was a small number, not material to the conclusions.

 2        Q.      Are there further inquiries that you

 3   expect to undertake before trial?

 4        A.      At po -- at this point in time I have

 5   no expectation of initia -- additional analyses.

 6        Q.      Is there anything that you'd like to

 7   consider further but have not?

 8              MR. POZZA:  Object to the question as

 9        vague, as ambiguous.

10              THE WITNESS:  With regard to the

11        opinion that I've presented here today and in

12        my report I have all the materials that I

13        feel are required to give an accurate

14        description of the infringement activity of

15        Hotfile in January of 2011.

16   BY MR. LEIBNITZ:

17        Q.      Have you been asked to do anything

18   further?

19        A.      At this stage I have no further

20   requests on my time.

21              MR. LEIBNITZ:  Okay.  Let's take a

22        break.

23              THE VIDEOGRAPHER:  We are now going

24        off the record.  This completes Tape Number