1

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
 3                      CASE 11-20427-CIV-KMW
 4
    DISNEY ENTERPRISES, INC.,
 5  et al,
 6                      Plaintiff,
 7         vs.                              MIAMI, FLORIDA
                                            JANUARY 13, 2012
 8  HOTFILE CORP.,                          FRIDAY - 1:15 P.M.
    et al,
 9
                        Defendant.
10
11                 TRANSCRIPT OF STATUS CONFERENCE
              BEFORE THE HONORABLE KATHLEEN S. WILLIAMS
12                 UNITED STATES DISTRICT JUDGE
    _____
13
    APPEARANCES:
14
    FOR THE PLAINTIFF:
15                         STEVEN B. FABRIZIO, ESQ.
                           Jenner & Block
16                         1099 New York Avenue, N.W., Ste. 900
                           Washington, DC - 202/639-6094
17                         Email:  sfabrizio@jenner.com
18  FOR THE DEFENDANT:
                           RODERICK THOMPSON, ESQ.
19                         Farella Braun & Martel, LLP
                           235 Montgomery Street, 17th Floor
20                         San Francisco, CA  94104 - 415/954-4400
                           Email:  rthompson@fbm.com
21
                           JANET MUNN, ESQ.
22                         Rasco Klock Reininger Perez Esquenazi
                           Vigil & Nieto
23                         283 Catalonia Avenue, Ste. 200
                           Coral Gables, FL  33134 - 305/476-7101
24                         Email:  jmunn@rascoklock.com
25
```

2

1  REPORTED BY:

2                          ROBIN MARIE DISPENZIERI, RPR
                           Official Federal Court Reporter
                           United States District Court
3                          400 North Miami Ave., Ste. 08S67
                           Miami, FL  33128 - 305/523-5659
4                          Robin_dispenzieri@flsd.uscourts.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1              COURTROOM DEPUTY:  Good afternoon.  Court is in
 2    session.  The Honorable Kathleen M. Williams presiding.
 3              THE COURT:  Please be seated.
 4              COURTROOM DEPUTY:  This case calls Disney versus
 5    Hotfile.  Counsel, please state your appearances.
 6              MR. FABRIZIO:  Good afternoon.  Steven Fabrizio for
 7    plaintiffs.
 8              THE COURT:  Good afternoon, Mr. Fabrizio.
 9              MR. THOMPSON:  Good afternoon, Your Honor.  Roderick
10    Thompson for the defendant, Hotfile Corporation, and with me is
11    Janet Munn.
12              THE COURT:  Good afternoon, Mr. Thompson, Ms. Munn.
13    Go ahead and be seated.  I am very, very sorry.  I had a
14    suppression hearing that did not conclude.  They are coming
15    back after we are done here, so this is not a very good first
16    encounter.  I apologize to all of you.
17              Since I knew you were coming to talk to Magistrate
18    Turnoff about some discovery matters that have yet to be
19    resolved, I thought it would be a good opportunity for us to
20    introduce ourselves, one to the other, and perhaps talk about a
21    few things.  I know there are matters pending that you have to
22    take up with Judge Turnoff, but I thought I would talk to you
23    about the, for lack of a better term, the bifurcation.
24              Really, what we are talking about is what is summary
25    judgment in this case going to look like and how will it be
```

4

1    presented.  At this point, I know the motion was filed on

2    November 7th, I think.  So at this point, discovery, with the

3    exception of some expert rebuttal issues and that, discovery is

4    closed.  So I don't know that really we are talking about

5    whether or not we do liability or damages anymore.

6              Aren't we just talking about what the summary judgment

7    universe is going to look like?  While I am happy to hear your

8    presentation on that, aside from what is in the papers, is it

9    really something for me to dictate?

10             For example, I take it that the plaintiffs are saying

11   that it doesn't matter if it's 10,000, 99,000, 175.  The theory

12   of liability can be based on this, your examination here.  I

13   don't, unless I am wrong, I don't know that Hotfile is going to

14   come back and talk about the merits in the 10,000 instances of

15   film, but I could be wrong.

16             I know this is very free form, but you stood first;

17   therefore, you get to talk first.

18             MR. FABRIZIO:  I will remember that, Your Honor.

19             MR. THOMPSON:  Your Honor, for Hotfile, our position

20   is very simple in the papers.  It has to be a two-way street.

21   If the damages of discovery is going to be deferred, it should

22   be deferred to both parties, not just one.

23             From our point of view, discovery is closed and the

24   issue is mooted.  They did, in fact, produce some information

25   about works beyond 175.  I don't know what Mr. Fabrizio's plans

1  will be after summary judgment, but as far as we are concerned,

2  you are absolutely right.  It's a matter of how both sides want

3  to present their summary judgment motions.

4            THE COURT:  How you craft it.

5            MR. THOMPSON:  Exactly.  So the point is not lost,

6  Your Honor, the reason why we can reach agreement on it is I

7  never understood plaintiff's view of what would happen if they

8  move for summary judgment on 175 works.  There was a split

9  decision for some time.  If 50 works were in the transition and

10 the rest weren't, how would that figure in the universe?

11           THE COURT:  From my point of view, this is why this is

12 valuable time.  Please disabuse me of the notion if I am

13 totally incorrect.  My understanding of the plaintiff's

14 argument is that, let's say, of the 175, 50 were found to be

15 infringing.  There would be a basis to determine that there is

16 some liability, and the remaining questions would be damages.

17 It could be of 10,000, all of them were not of the model of the

18 50, and therefore, there would be no damages in that regard.

19 Am I getting that correctly or no?

20           MR. FABRIZIO:  You have it exactly right, Your Honor.

21           THE COURT:  Well, that would be a first.

22           MR. FABRIZIO:  The reality is, Your Honor, the

23 hypothesis that there might be a liability finding as to 50

24 works, but not as to 125 works, is not very realistic.  This

25 case does not boil down to whether the major motion picture

1  studios in the country actually own the movies and television
2  shows that they put out every day.  It's not really about
3  whether Hotfile users have engaged in unauthorized downloading
4  of those copyrighted works.
5          The real issue in this case, and the crux of what the
6  summary judgments will confront, is whether Hotfile and
7  Mr. Titov have liability under theories of secondary copyright
8  infringements for those infringements.
9          So it doesn't matter, as we point out, whether it's
10 ten works that you address in summary judgment.  There is a
11 threshold that there has to be some direct infringement in
12 order to take up the issue of secondary infringement, but
13 Courts have even assumed it for purposes of summary judgments
14 on liability where it is obvious that there is infringement.
15 It's just a matter of determining which precise works were
16 infringed.
17         THE COURT:  For your edification, Mr. Thompson, I
18 never assumed from the pleadings that you -- if they were, and
19 I suppose this is probably -- I am bastardizing a term of art,
20 but if they were to use the representative sampling of 175 that
21 you would be foreclosed from defending legitimately on all of
22 the works identified.
23         Now, as to damages, again, my understanding, it's all
24 moot now, but my understanding is that the damages as to the
25 takedown is of more limited scope than the works, but I could

7

 1  be wrong on that.

 2          MR. THOMPSON:  I'm sorry, Your Honor.  Are you

 3  speaking of the counter-claim now?

 4          THE COURT:  Yes, sorry.

 5          MR. THOMPSON:  Certainly, the counter-claim is more

 6  limited, both in terms of the number of works.  We did present

 7  an expert opinion, an expert report.  He was deposed.

 8          One question I have, just for clarification, I don't

 9  believe the plaintiffs are planning on calling any damages

10  expert, but our view would be they would be foreclosed.  The

11  time for that has passed.  They didn't seek relief.  I don't

12  think that's part of their plan, but I wanted to be sure of

13  that.

14          MR. FABRIZIO:  I can confirm for you now that we agree

15  to use your expert.

16          MR. THOMPSON:  Very well.

17          THE COURT:  The plan going forward is, and I think

18  Judge Jordan's order anticipated this, that you, Hotfile, would

19  file your summary judgment motion with regard safe harbor at

20  the same time that the plaintiffs file their motions for

21  summary judgment; am I correct in that?

22          MR. THOMPSON:  I believe that was Judge Jordan's

23  contemplation.  The parties have agreed and presented a joint

24  motion on a schedule with a little bit of a wrinkle on that.

25  The plaintiffs suggested that the counter-claim motions should

1 be first, so we decided that one week in advance of the other

2 motions, and those were, they suggested, the plaintiffs, that

3 they wanted to make it work, and we agreed to it.

4            MR. FABRIZIO:  If I can, I think we should probably

5 step back.

6            There are three different sets of issues.  I believe

7 that Your Honor will be receiving six separate summary judgment

8 motions.

9            THE COURT:  Really?

10           MR. FABRIZIO:  That's why I wanted to step back and

11 let you know, Your Honor.

12           THE COURT:  Really?  That just seems to be so many.

13           MR. FABRIZIO:  Yes, it does, Your Honor.

14           THE COURT:  Tell me why six.

15           MR. FABRIZIO:  I think what we really end up with is

16 three sets of issues and each side moving on each of these sets

17 of issues.

18           One is the counter-claim against Warner Brothers

19 Entertainment.  Warner Brothers will be filing a motion for

20 summary judgment on that issue, and I believe Hotfile will as

21 well.  That would be two.

22           Then you have the affirmative copyright issues, which

23 involve themselves three sets of issues.  You have copyright

24 liability, the defense, and then the issue of Mr. Titov's

25 personal liability.  Obviously, those issues are fairly

 1   intertwined.

 2        Just to correct, plaintiffs intend to file a motion

 3   for summary judgment as to liability, which would address not

 4   only the copyright issues, but the absence of a DMCA defense as

 5   a matter of law.  We also intend to file a motion that

 6   Mr. Titov, as a matter of law, is liable personally for those

 7   infringements.

 8        Our view, and I think we both believe each other can

 9   do what we want, our view is that it's probably more efficient

10   and creates a less repetitive presentation to combine those

11   sets of issues into one brief.  So the brief would address the

12   DMCA issues, the underlying copyright issues, and Mr. Titov's

13   liability, and we have proposed that we deal with those issues

14   in one brief with a forty-page page limit.

15        THE COURT:  I was going to say, twenty pages, that is

16   so efficient of you.

17        MR. FABRIZIO:  It would be, Your Honor, but I'm not

18   that efficient.

19        THE COURT:  What does the defense think of that?

20        MR. THOMPSON:  Generally, we are in agreement.  Just

21   to clarify, we have not decided yet if we will file an

22   affirmative motion for summary judgment on the counter-claim,

23   which would come first.  It's possible we will just oppose

24   their motion.

25        As far as combining the two briefs into one, we agree

1  with Mr. Fabrizio that since they're entitled to two briefs of

2  twenty pages, if they want to put them together we wouldn't

3  have an objection to the forty pages, provided we get forty

4  pages in our opposition, which we may do.

5       Also, we would like, of course, the option of

6  combining our briefs together, should we choose, with the same

7  page limits.  Our present plan is not to do that.  Our present

8  plan is to have a separate motion for Mr. Titov and a separate

9  motion for Hotfile, each up to twenty pages.

10       THE COURT:  Well, it sounds reasonable.  It doesn't

11  sound necessarily like a good idea for me, but it sounds

12  reasonable.  So I think I can accept that plan.  Although I

13  wrote it down, I would appreciate both parties' clearly

14  superlative counsel going back to Rule 56 for me and adhering

15  to the format.  Each opening statement, numbered paragraphs,

16  and each sentence should have a citation to the record,

17  including where it is in the record, the page numbers, and you

18  know, if you could file your exhibits either with the -- you

19  can do it before filing, but if not, with the motion so we have

20  it to refer to.  That would be appreciated.  Some things may be

21  too voluminous, but if there are excerpts, it really does help

22  in reviewing the motions.

23       Also, opposition, in my short brief life here, I've

24  found that opposition doesn't always correspond numerically as

25  it is set forth in the rule, and that sometimes makes it

1   difficult.  It also -- if there are statements that are in

2   dispute, you don't have to spend an inordinate amount of time,

3   but why is it in dispute, why is it a material dispute, and a

4   cite to a fact that contradicts it.

5          Again, I am just reciting for you the rule, but I

6   would very much appreciate counsel taking some time to craft

7   their arguments in that fashion.

8          MR. FABRIZIO:  We will, Your Honor.  We, in fact, had

9   a notion that we would have just one set of exhibits for all of

10  the copyright-related motions so that it would be a little

11  easier for you and your chambers to find things.

12         THE COURT:  That would be a grand idea.

13         MR. FABRIZIO:  Do you want a set of exhibits delivered

14  separately to chambers, and do you want it organized in some

15  way in binders or some way that's a little easier?

16         THE COURT:  I would.  If you could do that, if that

17  would not be too much of an imposition, I think that would help

18  tremendously.

19         MR. FABRIZIO:  Sometimes it's actually easier for us

20  to do that too.

21         There are two issues I think we should take up, if I

22  may, Your Honor.

23         THE COURT:  Sure.

24         MR. FABRIZIO:  Mr. Thompson is correct that the

25  parties did come to agreement as to the schedule for the motion

```
 1   for summary judgment briefing, but events have suggested that
 2   it's not going to be enough time to get Your Honor well thought
 3   out organized briefs with organized exhibits.  There is a lot
 4   of material.  It is going to be presented to the Court in a way
 5   that is easy for the Court to understand and organized in a way
 6   that's easy to deal with.
 7          What we are now realizing is that February 3rd and
 8   February 10th are just going to push the limits a little bit
 9   too much.  Rebuttal expert discovery has become a little more
10   extensive than we thought.  There are, obviously, three
11   discovery motions that we are going to argue when we leave
12   here.  We are still waiting for some data to be supplemented
13   from defendants that is going to require us to go through and
14   update some analyses and obviously, Your Honor, the notion of
15   six motions.
16          I would propose that we take the present schedule,
17   stagger it as it is, which would be sensible, and just push
18   every date back exactly ten days.
19          THE COURT:  Is the French subtitle to this that we are
20   moving toward a request to continue a trial date, or are we
21   still trying to work within the ultimate timelines that we
22   have?
23          MR. THOMPSON:  Perhaps I should respond, if I may,
24   Your Honor.  This is the first I've heard of a ten-day
25   proposal.  There has already been three extensions of Judge
```

1  Jordan's original rebuttal expert report schedule.  They were

2  first due on December 2nd, then December 23rd and, most

3  recently, last Friday, January 6th.  All of those extensions

4  were requested by the plaintiffs.

5       Hotfile is a small company.  This is a very expensive

6  litigation.  As you know from reviewing the record, from the

7  outset, we wanted to bring the safe harbor DMCA issue to the

8  Court for adjudication.  We have been patiently waiting.  We

9  really can't wait any longer.

10      We don't see a need for any further extensions of the

11 summary judgment briefing schedule, which, as I said earlier,

12 was dictated to us by the plaintiff.  That's what they wanted.

13 They said they could live with that schedule.  We went along

14 because we want to be agreeable when we can.

15      I simply cannot agree to any further extensions when

16 my client is paying the kind of money that you can imagine is

17 involved in cases like this.

18      When you sit back and look at it, the first summary

19 judgment brief is due in four weeks from today, February 3rd.

20 That's just the counter-claim.  The next is five weeks.  I know

21 Mr. Fabrizio and his team are very capable, and I don't see any

22 reason why they can't proceed.  Discovery is over, except for a

23 few rebuttal expert depositions coming up next week.

24      MR. FABRIZIO:  A few rebuttal depositions is consuming

25 everybody's entire team every day next week, and we still have

 1  not been able to fit all of the rebuttal depositions into the
 2  period of time that the Court had allowed for rebuttal
 3  depositions.  We are debating whether one of them is going to
 4  have to extend over into the next week just to get it done.
 5       They want to extend one of our witnesses over to the
 6  next week, which we would be happy to agree to, but we can't
 7  agree to with this schedule.  Yes, we did agree with this, Your
 8  Honor, some weeks ago.  Again, circumstances really have
 9  changed.  Rebuttal expert depositions have gotten very intense,
10  and we still have three discovery motions that haven't even
11  been decided yet.
12       Weeks ago, we were supposed to get supplemented data.
13  The data, once we get it, Your Honor, is not a simple matter of
14  a spreadsheet.  It's enormous amounts of data that, when we go
15  to run analyses, sometimes it takes the computer two or three
16  days just to crunch a simple analysis just simply because of
17  the volume of the data.  We would be pushing the boundaries of
18  what we can reasonably get done and present to you effectively.
19  I just don't see any prejudice.
20       THE COURT:  I am not trying to dodge this, although it
21  is, in essence, what is happening, but if there is no
22  compromise of the trial date, then this request, it seems to me
23  -- I don't want to get crosswise with Judge Turnoff in his
24  resolution of discovery disputes, which I think speak to this
25  issue for both sides.

1          So that is why I asked, in my own fashion, whether or

2     not this was.  I understand the defendant's argument that the

3     more protracted litigation, the costlier it becomes, at some

4     point prohibitively so.  If we stay on track for our trial

5     date, anything outside of that, I think, is best for Judge

6     Turnoff because he is going to be speaking to the issues of the

7     experts, I imagine.  So is it not best to let him take this up?

8          MR. THOMPSON:  Your Honor, with respect to experts,

9     the motions that are set and fully briefed don't involve the

10    experts.  We filed a motion Monday asking for expedited

11    treatment because, in our view, a so-called rebuttal report was

12    really a wolf in sheep's clothing and should be stricken.

13         THE COURT:  Is Judge Turnoff going to take that up,

14    though?

15         MR. THOMPSON:  I don't know.  We inquired of Your

16    Honor's chambers, and we didn't get a clear answer yet.  I

17    don't know if you've assigned it to him or not.

18         MR. FABRIZIO:  Can you take that up?  What they are

19    asking for is to strike the testimony of one of our principal

20    witnesses.  I am not sure if that is a discovery matter.

21         THE COURT:  Ultimately no, but doesn't it have to do

22    with discovery?  Isn't it predicated on an assertion of a

23    discovery violation?

24         MR. THOMPSON:  Not a discovery violation.  A simple

25    violation -- missing a Court ordered deadline for nonrebuttal

16

```
 1    expert reports.
 2              THE COURT:  All right, then --
 3              MR. FABRIZIO:  Your Honor asked a question about the
 4    trial date, and that may help with this.  Both sides clearly
 5    believe that the Court is going to be able to resolve the
 6    majority of these issues, if not all of the issues, on motions
 7    for summary judgment.  It might make the most sense, and
 8    conserve the most resources, if the Court were to set a status
 9    conference for immediately after you've decided the summary
10    judgment motions, and if there is anything left to try, then we
11    can set our trial date then, rather than have both sides be
12    preparing for trial while the motions are pending.
13              MR. THOMPSON:  Your Honor, I think you can predict my
14    response, but that is just going to delay things and increase
15    cost.  I think we need to have trial date and stick to it.
16    Parties will resolve things or not, but a firm trial date is a
17    way of doing wonders to get resolutions.
18              THE COURT:  If that's a request, I am going to deny it
19    at this time.
20              As to the ten days, tell me how that -- other than the
21    high annoyance factor for you, tell me the real prejudice in
22    just -- from my perspective, getting the best possible product
23    to the Court.
24              MR. THOMPSON:  There are two ways it affects me, one
25    personal and one more objective.
```

1          First of all, it's just going to allow extensions of

2    the rebuttal expert witness depositions beyond next week when

3    the deadline expires.  That's three times it has been extended

4    already.

5          THE COURT:  I thought the request was just for the

6    filing -- I though the request for a time extension was just

7    for the filing of the summary judgment motions?

8          MR. FABRIZIO:  It absolutely is, Your Honor.  To be

9    fair, we want to complete all rebuttal depositions next week.

10   It is defendants that have requested that we put one over to

11   the next week to accommodate the schedule of their counsel.

12         THE COURT:  The ten days on the dates are February

13   3rd, February 10th.

14         MR. FABRIZIO:  Exactly.  I would simply propose that

15   they be February 13th and February 20th with the other dates

16   moving back.

17         MR. THOMPSON:  Your Honor, the other reason is a

18   personal one, and I hesitate to bring it up, but my son is

19   getting married on March 24th in Hong Kong.  To push that last

20   date back would not be convenient.  One of the reasons I agreed

21   to this was -- we didn't discuss this with Mr. Fabrizio, but he

22   conveniently picked a date that was right before I will have to

23   leave for Hong Kong.

24         MR. FABRIZIO:  Clearly, that is very important.  We

25   can work backwards from March 24th, 25th, whatever date that

```
 1   Mr. Thompson was going to leave.  That would still allow us
 2   some extra days.  It may not be ten exactly.  It may be eight.
 3   It may be seven, but it will give us the little bit of time
 4   that we think we need.
 5          The reality, Your Honor, is that both sets of teams
 6   have been working 24/7, around the clock, for the last couple
 7   of months, and they just need a little bit of a breather to
 8   prepare these briefs.  It's just a human factor.  We are also
 9   sensitive to Mr. Thompson's human factor, and we will work with
10   him to come up with a reply date that accommodates him.
11          MR. THOMPSON:  I appreciate that.  Just so we're
12   clear, though, that is the last date.  We will have to work
13   with a final date of March 16th, and maybe we can compress
14   things.
15          THE COURT:  It's a wedding week, not a wedding day.
16   Everyone knows that.
17          Is there some way that you can work with Mr. Thompson
18   so that he is able to attend his son's wedding with something
19   of a light heart?
20          MR. FABRIZIO:  Yes, we want his heart to be light.
21   Perhaps what we can do is move some of the first dates back a
22   few days and have a little less time for opposition.  We set
23   three weeks for oppositions and two full weeks for replies.
24   Maybe we can take a day out of replies and three days out of
25   oppositions.  We will figure it out.
```

1          THE COURT:  Why don't we say that I am agreeing to

2     alter the summary judgment schedule, but I am going to ask

3     counsel to confer so that Mr. Thompson's situation is taken

4     into account.  If you would just then give me the new dates on

5     those matters, I will adopt them.

6          MR. THOMPSON:  Thank you, Your Honor.

7          MR. FABRIZIO:  Thank you, Your Honor.

8          MR. THOMPSON:  One loose end is the motion to strike

9     Doctor Waterman's deposition.  I would inquire of the Court how

10    you would like to proceed with that.

11         THE COURT:  When is plaintiff's response due?

12         MR. THOMPSON:  We asked for it to be expedited.  We

13    asked for it to be due two days ago.

14         THE COURT:  Right.

15         MR. THOMPSON:  I think it would be due a week from

16    Monday.

17         MR. FABRIZIO:  The 23rd, Your Honor.  We are also,

18    obviously, around the clock in rebuttal depositions in that

19    period.

20          Your Honor, I do appreciate that Hotfile is eager to

21    challenge Doctor Waterman's statistical analysis, but we are

22    talking about a rebuttal report, not testimony at this point.

23    I don't understand what the urgency is.

24         THE COURT:  I guess we can talk about it for a few

25    moments.  I did read the materials.  It, kind of, reminded me

```
 1  of a trial I had once where the government asked for fifteen
 2  minutes to close.  Then the defense closed and the government
 3  rebutted for forty-five.  I don't know, and especially since --
 4  who is the professor again?
 5          MR. THOMPSON:  Jaime Boil.
 6          THE COURT:  I am not certain how Doctor Waterman's new
 7  affidavit necessarily directs itself to the good professor's
 8  testimony, and it does seem to expand a little from what he had
 9  originally said.  I am not making -- I am not saying one way or
10  the other whether or not that's meritorious.  At first glance,
11  you can understand why someone might say this is more than what
12  we thought a rebuttal affidavit might be.
13          MR. FABRIZIO:  We can certainly understand Your
14  Honor's first glance, since you have only seen defendant's
15  first brief on this.
16          THE COURT:  And there you have it.
17          MR. FABRIZIO:  They can very good.  They can write an
18  unopposed brief that is persuasive.  Let me just take two
19  seconds to give you some of the background on this.
20          Doctor Waterman is a professor who conducted a
21  statistical analysis of the levels of infringement, actual
22  downloaded infringement from Hotfile.  He concluded that there
23  was over ninety percent infringement on Hotfile.  Ninety
24  percent of the files downloaded are infringing.  The data that
25  he used for that was a one-month period, certain random days in
```

1  January of 2011.  He chose January 2011, in part, because there
2  were data problems when you went back earlier.  There were less
3  files available that we could actually review because they had
4  not existed.
5         Be that as it may, his initial report opined that
6  there was a 90.3 percent infringement download rate from
7  Hotfile.  His original report had that opinion.  In deposition,
8  Mr. Thompson's colleague questioned him about the use of only
9  one month of data, and he questioned him incessantly on it.  In
10 the brief, Hotfile points to those instances in which Doctor
11 Waterman indicated he was mooting his conclusions to the data
12 set that he used because he had not looked at whether there had
13 been changes.
14        In several other places in his deposition, Doctor
15 Waterman made it absolutely clear that he believed that his
16 conclusions would extrapolate to the time periods prior, but in
17 response to hypotheses as to changes that might have taken
18 place that he had not reviewed, he said, "Well, look, my
19 conclusions are strongest throughout the month I looked at, but
20 I haven't looked at those other data sets.  Generally speaking,
21 absent material changes, I would believe my conclusion extends
22 from the beginning of Hotfile."
23        So he is not changing his conclusion.  All he has
24 done, in his rebuttal, is to actually go do what he said he
25 would need to do.  He looked at whether there were changes.  He

1   looked at the data to see whether it was different, and he

2   said, "No, I have come to the conclusion that I am comfortable

3   with an opinion that extends a little earlier than just that

4   one month," as is both logical and sensible.

5         Now, it is, first of all, it is simply an explanation,

6   a further explanation, of the testimony or the opinion already

7   given, but it also is, Your Honor, direct rebuttal to what

8   Professor Boil, the Duke law professor, did.

9         THE COURT:  He didn't do, if I am not -- he didn't do

10  a statistical analysis, did he?

11        MR. FABRIZIO:  No, he did not.  He was careful to say,

12  "I did not do a statistical analysis."  Up and down his report,

13  and in his deposition testimony, Professor Boil makes clear

14  that he is not limiting himself to the specific files that he

15  was talking about, that he was making conclusions of a broader

16  nature about the noninfringement on Hotfile.  The standard,

17  Your Honor, is whether it's the same subject file.

18        Doctor Waterman had every right to present a broader

19  opinion having reviewed the data and said, "Wait, you are

20  speaking more broadly about noninfringing uses.  I can speak to

21  infringing uses more broadly because I have now reviewed the

22  data."

23        The theory, one, is it's not an expansion of his

24  opinion at all.  It's just he considered the circumstances that

25  counsel was hypothesizing to in his deposition and concluded

1  that he didn't change his opinion.

2      Two, it is the same subject-matter of what Doctor Boil

3  did.

4      Third, Your Honor, in rebuttal, for the first time,

5  they put in an extensive report of, I think, Doctor Levy.

6  Doctor Levy goes line by line through Doctor Waterman's report

7  and criticizes it.  What Doctor Waterman did is simply

8  anticipate those criticisms.  Whether he did file a rebuttal

9  report or not, how could it be that he couldn't give testimony

10 in response to the criticisms that he saw for the first time

11 with Doctor Levy's rebuttal report.

12     This is why I think what we're arguing about here is,

13 sort of, much to do about nothing.  It's not about a rebuttal

14 report.  Doctor Waterman, upon seeing the criticisms that were

15 leveled by Doctor Levy, of course, would have every right, Your

16 Honor, to submit testimony in this Court that says, "I have

17 considered Doctor Levy's criticisms, and I find them unfounded

18 for the following reasons."  I don't see how he could not be

19 able to do that.

20     THE COURT:  So you are saying that he supplemented

21 more in the nature of defending his methodology as opposed to

22 bringing in additional data.

23     MR. FABRIZIO:  He did not bring in any additional

24 conclusion or opinions, Your Honor, from what he originally

25 stated.  It was fair rebuttal to the opinions of Doctor Boil,

1  but all that aside, defendants asked for an expert schedule

2  that called for multiple depositions of each expert; initial

3  reports, depositions, rebuttal reports, rebuttal depositions.

4      We, for the first time, saw Doctor Levy's report in

5  rebuttal.  It was not submitted as a principal report.  Even if

6  you ignore the other two circumstances, and Doctor Waterman had

7  never submitted a rebuttal report, of course he would be able

8  to address what Doctor Levy said and explain why he doesn't

9  think those criticisms are founded, and that is all he did.

10  That is the only thing he did in his rebuttal report.

11      Frankly, we kind of view this as no good deed goes

12  unpunished.  We didn't want defendants to be criticizing us for

13  not telling them that Doctor Waterman had considered these

14  issues, so we put a rebuttal report in to let them know so they

15  could depose him since they are deposing him again.

16      THE COURT:  I want to give Mr. Thompson a chance.  I

17  don't want you to be too terribly late to Judge Turnoff.

18      MR. THOMPSON:  Thank you, Your Honor.  I'm not sure

19  where to begin because there was a lot said there that is

20  simply not accurate.

21      Number one, Mr. Fabrizio said that Doctor Waterman has

22  now reviewed data.  The data he's had for ten months.  This is

23  not newly discovered evidence.  It's the same data.  What he is

24  really saying, I think we heard him say that, is Doctor

25  Waterman is rebutting the questions asked him at deposition.

1   Not Doctor Boil.  The questions asked at deposition suggested

2   that you can't take a statistically valid sample for one month

3   only when you had twenty-three months to look at.

4          He cherry-picked one month.  He was criticized.  He is

5   now trying to fix that.  He is trying to back fill and change

6   his analysis to say, "Oh, it's going to be the same for all the

7   months."  That's new.  That's based on data he had.  That's a

8   new report.  If the plaintiffs want to supplement, there is a

9   procedure.  They make a motion and ask the Court to supplement

10  the report.

11         Judge Jordan's schedule called for the submission of

12  expert reports.

13         THE COURT:  Let me ask you two questions.

14         One is, is this methodology the same that Doctor

15  Waterman used in Limewire?

16         MR. FABRIZIO:  Very similar to what he used in several

17  other cases that I have been involved in with him.

18         MR. THOMPSON:  That reminds me of the first point I

19  wanted to make.  This is not Limewire.

20         THE COURT:  No, I know.

21         MR. THOMPSON:  Mr. Fabrizio argued the merits.  He

22  talked about ninety percent.  He got the same number every

23  time, ninety percent.  Fifty-four percent of the files on

24  Hotfile that are uploaded are never, ever downloaded at all.

25         Hotfile is a cloud storage and file sharing system.

1   It's not promoting copyright like these other cases are.   I

2   won't go into more detail.  We have strong criticisms of Doctor

3   Waterman's methodology.  That's just for the January

4   methodology.

5           THE COURT:  Since we are taking some additional time,

6   would this be addressed with a sur reply?

7           MR. THOMPSON:  Your Honor, since Doctor Waterman

8   submitted his report, thirteen depositions of the plaintiffs

9   have been taken.  The plaintiffs state their position that

10  January 2011 is the month.  That's what they're going to rely

11  on.

12          We take all the depositions.  We submit our rebuttal

13  report of Doctor Levy, as Mr. Fabrizio mentioned.  We come back

14  and really think that Doctor Waterman is harmed by that.

15  Plaintiffs want to come back and change.  They want to back

16  fill.  This is not a game that never ends.  You have deadlines.

17  You submit your reports.  You take your positions, and you

18  stick by them.

19          MR. FABRIZIO:  If I may, he is not changing.  His

20  initial report was a broader opinion.  It was based on a month

21  of data.  It is still based on a month of data.

22          MR. THOMPSON:  Your Honor, if he is not changing it,

23  they don't need another report.

24          THE COURT:  True.  I actually was a little, startled

25  might not be the word, but the last paragraph in both

affidavits, it kind of reminded me of what we call the garbage

exception in hearsay.  Basically, didn't that last paragraph in

both affidavits say, "I reserve the right to do what I want in

the future," blah, blah, blah, or am I reading it incorrectly?

MR. FABRIZIO:  No, all experts on both sides said that

they were, obviously, reserving their right to continue to

analyze, which is what experts do.  It is not true that there

was no new information afterwards.  After Doctor Waterman's

first report, we took all of defendant's depositions.

Their lead witness, their corporate representative,

testified that two issues directly related to what Doctor

Waterman is now relying on, as to his opinion, the opinion he

originally expressed, that the criticisms they have levied of

it don't hold water.  There absolutely was information,

important information, coming in after his report.

THE COURT:  Mr. Thompson, you have a lot of time, but

Judge Turnoff is waiting.  Go ahead, Mr. Thompson.

MR. THOMPSON:  Thank you.

Your Honor, first off, a proper rebuttal report is not

just on the same subject-matter, as Mr. Fabrizio suggested.  It

is supposed to contradict or rebut another expert report.

THE COURT:  Right.

MR. THOMPSON:  Mr. Boil, the law Professor, said

twice, "I am not offering any statistical analysis."  That's

what he used, the word "statistical."  I am not offering that.

1          Doctor Waterman's so-called rebuttal report, his lip

2   service in the first paragraph says, "Doctor Boil used the word

3   statistical.  He is not offering an analysis.  I agree."  He is

4   not rebutting him.  "I agree that's not a statistical

5   analysis."  That's all he said about Doctor Boil.  It's a

6   pretense.

7          If Mr. Fabrizio and the plaintiffs want to supplement,

8   there is a procedure.  They make a motion.  They explain why

9   Mr. Titov's one sentence from his deposition is the basis for

10  supplementing it.  If that's what they want to say, they can

11  present it to Your Honor and try to change his report.  I

12  strongly disagree.  Changing from one month to twenty-three

13  months is a fundamental change.

14          MR. FABRIZIO:  It is not a change.

15          THE COURT:  I understand that that's your position.  I

16  think I understand the position of Hotfile.

17          I am going to, again, apologize for the tardy start up

18  here.  I am going to let you go to see Judge Turnoff.  I am

19  sorry I am not going to be able to give you an expedited ruling

20  on that motion today.

21          I will consider whether or not to enter an order

22  asking the plaintiffs to respond before the 23rd.  I understand

23  the demands upon your time, but I understand that the

24  defendants want this issue resolved as quickly as possible.

25          MR. THOMPSON:  One housekeeping matter.  If Your Honor

1    ends up disagreeing with us, and denying the motion, we would

2    like to make sure we have the chance to take the deposition of

3    Doctor Waterman.  Mr. Fabrizio has suggested that if we don't

4    take the deposition next week, it's at our peril while Your

5    Honor is considering the motion.  I want to make sure that we

6    can wait for Your Honor's ruling.  If you strike the report,

7    there is no reason to take any deposition.  If you don't, then

8    we still have an opportunity.

9         MR. FABRIZIO:  They have already subpoenaed his

10   deposition for next week.  The briefing on the motion would

11   probably benefit both sides from actually having his deposition

12   taken so he can explain that it was the same opinion.

13        THE COURT:  If I were to, surprisingly, not agree with

14   the defense, and the defense wished to redepose Doctor

15   Waterman, would the plaintiffs make certain that he be

16   available?

17        MR. FABRIZIO:  Obviously, we would do whatever Your

18   Honor asked us to do.

19        THE COURT:  I think it's a fair point.  When I say I

20   would like for you to -- if I deny the defendant's motion, and

21   the defendant feels the need to redepose, obviously this is not

22   -- I am not considering a day long, two days, I would like to

23   know what you would consider though.

24        I would like to know what parameters you think would

25   be important.  I would like to see what the boundaries are that

1   you would identify, but depending on that, I would expect that

2   the plaintiffs would make the doctor available, if I were to so

3   rule, in a way that did not cause problems for you or for

4   Mr. Thompson.

5        MR. FABRIZIO:  Of course we would, Your Honor.

6   Mr. Thompson's colleagues have already told us that they want a

7   full day with him.  They wouldn't even begin a deposition that

8   began at 11:00.  They needed a full day.

9        MR. THOMPSON:  As you'll see when you get into it,

10  it's a long and significant, I would say supplement, but it's a

11  significant addition that we need to ask him about.

12       THE COURT:  All right, thank you again.  Tell Judge

13  Turnoff it's all my fault.

14       MR. FABRIZIO:  Your Honor, as we are walking out, when

15  we submit an order on the new schedule, we want to submit a

16  proposal for how to deal with filing initially under seal and

17  then giving the parties a period of time to put public versions

18  on the record.

19       THE COURT:  Right, I made notes on that.  If you can

20  agree on it all, is there a way to present me with a version

21  where, like, you yellow highlight what is not in the public

22  version?  Am I stumbling over that?

23       MR. FABRIZIO:  No, I think we understand exactly what

24  you mean.  Absolutely, Your Honor.

25       I would suggest that we give you that version at the

1  same time we are putting up the version on the public record.

2  Until then, we don't know exactly what is going to be blacked

3  out in the public record.

4          THE COURT:  Okay.  Thank you very much, again.  I

5  appreciate it.

6                    C E R T I F I C A T E

7      I hereby certify that the foregoing is an accurate

8  transcription of proceedings in the above-entitled matter.

9

10

11

12

13

14

       1-14-2012          /S/ ROBIN MARIE DISPENZIERI
15  _____    _____
       DATE FILED          ROBIN MARIE DISPENZIERI, RPR
16                         Official Federal Court Reporter
                           United States District Court
17                         400 North Miami Ave., Ste. 08S67
                           Miami, FL  33128 - 305/523-5659
18                         Robin_dispenzieri@flsd.uscourts.gov

19

20

21

22

23

24

25

**A**

able 14:1 16:5 18:18 23:19 24:7
   28:19
above-entitled 31:8
absence 9:4
absent 21:21
absolutely 5:2 17:8 21:15 27:14
   30:24
accept 10:12
accommodate 17:11
accommodates 18:10
account 19:4
accurate 24:20 31:7
actual 20:21
addition 30:11
additional 23:22,23 26:5
address 6:10 9:3,11 24:8
addressed 26:6
adhering 10:14
adjudication 13:8
adopt 19:5
advance 8:1
affidavit 20:7,12
affidavits 27:1,3
affirmative 8:22 9:22
afternoon 3:1,6,8,9,12
ago 14:8,12 19:13
agree 7:14 9:25 13:15 14:6,7,7
   28:3,4 29:13 30:20
agreeable 13:14
agreed 7:23 8:3 17:20
agreeing 19:1
agreement 5:6 9:20 11:25
ahead 3:13 27:17
al 1:5,8
allow 17:1 18:1
allowed 14:2
alter 19:2
amount 11:2
amounts 14:14
analyses 12:14 14:15
analysis 14:16 19:21 20:21 22:10
   22:12 25:6 27:24 28:3,5
analyze 27:7
annoyance 16:21
answer 15:16
anticipate 23:8
anticipated 7:18
anymore 4:5
apologize 3:16 28:17
appearances 10:13 11:6 18:11 19:20
   31:5
appreciate 10:13 11:6 18:11 19:20
   31:5
appreciated 10:20
Aren't 4:6
argue 12:11
argued 25:21
arguing 23:12
argument 5:14 15:2
arguments 11:7
art 6:19
aside 4:8 24:1
asked 15:1 16:3 19:12,13 20:1 24:1
   24:25 25:1 29:18
asking 15:10,19 28:22
assertion 15:22
assigned 15:17
assumed 6:13,18
attend 18:18
available 21:3 29:16 30:2
Ave 2:3 31:17
Avenue 1:16,23

**B**

B 1:15
back 3:15 4:14 8:5,10 10:14 12:18
   13:18 17:16,20 18:21 21:2 25:5
   26:13,15,15
background 20:19
backwards 17:25
based 4:12 25:7 26:20,21
Basically 27:2
basis 5:15 28:9
bastardizing 6:19
began 30:8
beginning 21:22
believe 7:9,22 8:6,20 9:8 16:5
   21:21
believed 21:15

**A** (column 2)

benefit 29:11
best 15:5,7 16:22
better 3:23
beyond 4:25 17:2
bifurcation 3:23
binders 11:15
bit 7:24 12:8 18:3,7
blacked 31:2
blah 27:4,4,4
Block 1:15
boil 5:25 20:5 22:8,13 23:2,25 25:1
   27:23 28:2,5
boundaries 14:17 29:25
Braun 1:19
breather 18:7
brief 9:11,11,14 10:23 13:19 20:15
   20:18 21:10
briefed 15:9
briefing 12:1 13:11 29:10
bring 9:25 10:1,6 12:3 18:8
bring 13:7 17:18 23:23
bringing 23:22
broader 22:15,18 26:20
broadly 22:20,21
Brothers 8:18,19

**C**

C 31:6,6
CA 1:20
call 27:1
called 24:2 25:11
calling 7:9
calls 3:4
can't 13:9,22 14:6 25:2
capable 13:21
careful 22:11
case 1:3 3:4,25 5:25 6:5
cases 13:17 25:17 26:1
Catalonia 1:23
cause 30:3
certain 20:6,25 29:15
certainly 7:5 20:13
certify 31:7
challenge 19:21
chambers 11:11,14 15:16
chance 24:16 29:2
change 23:1 25:5 26:15 28:11,13
   28:14
changed 14:9
changes 21:13,17,21,25
changing 21:23 26:19,22 28:12
cherry-picked 25:4
choose 10:6
chose 21:1
circumstances 14:8 22:24 24:6
citation 10:16
cite 11:4
clarification 7:8
clarify 9:21
clear 15:16 18:12 21:15 22:13
clearly 10:13 16:4 17:24
client 13:16
clock 18:6 19:18
close 20:2
closed 4:4,23 20:2
clothing 15:12
cloud 25:25
colleague 21:8
colleagues 30:6
combine 9:10
combining 9:25 10:6
come 4:14 9:23 11:25 18:10 22:2
   26:13,15
comfortable 22:2
coming 3:14,17 13:23 27:15
company 13:5
complete 17:9
compress 18:13
compromise 14:22
computer 14:15
concerned 5:1
conclude 3:14
concluded 20:22 22:25
conclusion 21:21,23 22:2 23:24
conclusions 21:11,16,19 22:15
conducted 20:20
confer 19:3
conference 1:11 16:9
confirm 7:14

**C** (column 3)

confront 6:6
conserve 16:8
consider 28:21 29:23
considered 22:24 23:17 24:13
considering 29:5,22
consuming 13:24
contemplation 7:23
continue 12:20 27:6
contradict 27:21
contradicts 11:4
convenient 17:20
conveniently 17:22
copyright 6:7 8:22,23 9:4,12 26:1
copyrighted 6:4
copyright-related 11:10
Coral 1:23
CORP 1:8
corporate 27:10
Corporation 3:10
correct 7:21 9:2 11:24
correctly 5:19
correspond 10:24
cost 16:15
costlier 15:3
couldn't 23:9
counsel 3:5 10:14 11:6 17:11 19:3
   22:25
counter-claim 7:3,5,25 8:18 9:22
   13:20
country 6:1
couple 18:5
course 10:5 23:15 24:7 30:5
Court 1:1 2:2,2,3 1:3,8,12 5:4,1
   5:21 6:17 7:4,17 8:9,12,14 9:15
   9:19 10:10 11:12,16,23 12:4,5
   12:19 13:8 14:22,20 15:13,21,25
   16:2,5,8,18,23 17:5,12 18:15
   19:1,9,11,14,24 20:6,16 22:9
   23:16,20 24:16 25:9,13,20 26:5
   26:24 27:16,22 28:15 29:13,19
   30:12,19 31:4,16,16
COURTROOM 3:1,4
Courts 6:13
craft 5:4 11:6
creates 9:10
criticisms 23:8,10,14,17 24:9 26:2
   27:13
criticized 25:4
criticizes 23:7
criticizing 24:12
crosswise 14:23
crunch 14:16
crux 6:5

**D**

damages 4:5,21 5:16,18 6:23,24
   7:9
data 12:12 14:12,13,14,17 20:24
   21:2,9,11,20 22:1,19,22 23:22
   24:22,22,23 25:7 26:21,21
date 12:18,20 14:22 15:5 16:4,11
   16:15,16 17:20,22,25 18:10,12
   18:13 31:15
dates 17:12,15 18:21 19:4
day 6:13 3:25 18:15,24 29:22 30:7
   30:8
days 12:18 14:16 16:20 17:12 18:2
   18:22,24 19:13 20:25 29:22
DC 1:16
deadline 15:25 17:3
deadlines 26:16
deal 9:13 12:6 30:16
dealing 14:3
December 13:2,2
decided 8:1 9:21 14:11 16:9
decision 5:9
deed 24:11
defendant 1:9,18 3:10 29:21
defendants 12:13 17:10 24:1,12
   28:24
defendant's 15:2 20:14 27:9 29:20
defending 6:21 23:21
defense 8:24 9:4,19 20:2 29:14,14
deferred 4:21,22
delay 16:14
delivered 11:13
demands 28:23
deny 16:18 29:20
denying 29:1

**D** (column 4)

depending 30:1
depose 24:15
deposed 7:7
deposing 24:15
deposition 19:9 21:7,14 22:13,25
   24:25 25:1 28:9 29:2,4,7,10,11
   30:7
depositions 13:23,24 14:1,3,9
   17:2,9 19:18 24:2,3,3 26:8,12
   27:9
DEPUTY 3:1,4
detail 26:2
determine 5:15
determining 6:15
dictate 4:9
dictated 13:12
didn't 7:11 15:16 17:21 22:9,9 23:1
   24:12 27:2
different 8:6 22:1
difficult 11:1
direct 6:11 22:7
directly 27:11
directs 20:7
disabuse 5:12
disagree 28:12
disagreeing 29:1
discovered 24:23
discovery 3:18 4:2,3,21,23 12:9,11
   13:22 14:10,24 15:20,22,23,24
discuss 17:21
Disney 1:4 3:4
DISPENZIERI 2:1 31:14,15
dispute 11:2,3,3
disputes 14:24
District 1:1,1,12 2:2 31:16
DIVISION 1:2
DMCA 9:12 13:7
doctor 19:9,21 20:6,20 21:10,14
   22:18 23:2,5,6,6,7,11,14,15,17
   23:25 24:4,6,8,13,21,24 25:1,14
   26:2,7,13,14 27:8,11 28:1,2,5
   29:3,14 30:2
dodge 14:20
doesn't 4:11 6:9 10:10,24 15:21
   24:8
doing 16:17
don't 4:4,13,13,25 7:8,11 11:2
   13:10,21 14:19,23 15:9,15,17
   19:1,23 20:3 23:18 24:17 26:23
   27:14 29:3,7 31:2
download 21:6
downloaded 20:22,24 25:24
downloading 6:3
due 13:2,19 19:11,13,15
Duke 22:8

**E**

E 31:6,6
eager 19:20
earlier 13:11 21:2 22:3
easier 11:11,15,19
easy 12:5,6
edification 6:17
effectively 14:18
efficient 9:9,16,18
eight 18:2
either 10:18
Email 1:17,20,24
encounter 3:16
ends 26:16 29:1
engaged 6:3
enormous 14:14
enter 28:21
ENTERPRISES 1:4
Entertainment 8:19
entire 13:25
entitled 10:1
especially 20:3
ESQ 1:15,18,21
Esquenazi 1:22
essence 14:21
et 1:5,8
events 12:1
everybody's 13:25
evidence 24:23
exactly 5:5,20 12:18 17:14 18:2
   30:23 31:2
examination 4:12
example 4:10

exception 4:3 27:2
excerpts 10:21
exhibits 10:18 11:9,13 12:3
existed 21:4
expand 20:8
expansion 22:23
expect 30:1
expedited 15:10 19:12 28:19
expensive 13:5
expert 4:3 7:7,7,10,15 12:9 13:1,23
  14:9 16:1 17:2 24:1,2 25:12
  27:21
experts 15:7,8,10 27:5,7
expires 17:3
explain 24:8 28:8 29:12
explanation 22:5,6
expressed 27:13
extend 14:4,5
extended 17:3
extends 21:21 22:3
extension 17:6
extensions 12:25 13:3,10,15 17:1
extensive 12:10 23:5
extra 18:2
extrapolate 21:16

**F**

F 31:6
Fabrizio 1:15 3:6,6,8 4:18 5:20,22
  7:14 8:4,10,13,15 9:17 10:1 11:8
  11:13,19,24 13:21,24 15:18 16:3
  17:8,14,21,24 18:20 19:7,17
  20:13,17 22:11 23:23 24:21
  25:16,21 26:13,19 27:5,20 28:7
  28:14 29:3,9,17 30:5,14,23
Fabrizio's 4:25
fact 4:24 11:4,8
factor 16:21 18:8,9
fair 17:9 23:25 29:19
fairly 8:25
far 5:1 9:25
Farella 1:19
fashion 11:7 15:1
fault 30:13
February 12:7,8 13:19 17:12,13,15
  17:15
Federal 2:2 31:16
feels 29:21
fifteen 20:1
Fifty-four 25:23
figure 5:10 18:25
file 7:19,20 9:2,5,21 10:18 22:17
  23:8 25:25
filed 4:1 15:10 31:15
files 20:24 21:3 22:14 25:23
filing 8:19 10:19 17:6,7 30:16
fill 25:5 26:16
film 4:15
final 18:13
find 11:11 23:17
finding 5:23
firm 16:16
first 3:15 4:16,17 5:21 8:1 9:23
  12:24 13:2,18 17:1 18:21 20:10
  20:14,15 22:5 23:4,10 24:4
  25:18 27:9,19 28:2
fit 14:1
five 13:20
fix 25:5
FL 1:23 2:3 31:17
Floor 1:19
FLORIDA 1:1,7
following 23:18
foreclosed 6:21 7:10
foregoing 31:7
form 4:16
format 10:15
forth 10:25
forty 10:3,3
forty-five 20:3
forty-page 9:14
forward 7:17
found 5:14 10:24
founded 24:9
four 13:19
Francisco 1:20
Frankly 24:11
free 4:16
French 12:19

Friday 1:8 13:3
full 18:23 30:7,8
fully 15:9
fundamental 28:13
further 13:10,15 22:6
future 27:4

**G**

Gables 1:23
game 26:16
garbage 27:1
Generally 9:20 21:20
getting 5:19 16:22 17:19
give 18:3 19:4 20:19 23:9 24:16
  28:19 30:25
given 22:7
giving 30:17
glance 20:10,14
go 3:13 12:13 14:14 21:24 26:2
  27:17 28:18
goes 23:6 24:11
going 3:25 4:7,13,21 7:17 9:15
  10:14 12:2,4,8,11,13 14:3 15:6
  15:13 16:5,14,18 17:1 18:1 19:2
  25:6 26:10 28:17,18,19 31:2
good 3:1,6,8,9,12,15,19 10:11 20:7
  20:17 24:11
gotten 14:9
government 20:1,2
grand 11:12
guess 19:24

**H**

happen 5:7
happening 14:21
happy 4:7 14:6
harbor 7:19 13:7
harmed 26:14
haven't 14:10 21:20
hear 4:7
heard 12:24 24:24
hearing 3:14
hearsay 27:2
heart 18:19,20
help 10:21 11:17 16:4
hesitate 17:18
he's 24:22
high 16:21
highlight 30:21
hold 27:14
Hong 17:19,23
Honor 3:9 4:18,19 5:6,20,22 7:2
  8:7,11,13 9:17 11:8,22 12:2,14
  12:24 14:8,13 15:8 16:3,13 17:8
  17:17 18:5 19:6,7,17,20 22:7,17
  23:4,16,24 24:18 26:7,22 27:19
  28:11,25 29:5,18 30:5,14,24
Honorable 1:11 3:2
Honor's 15:16 20:14 29:6
Hotfile 1:8 3:5,10 4:13,19 6:3,6
  7:18 8:20 10:9 13:5 19:20 20:22
  20:23 21:7,10,22 22:16 25:24,25
  28:16
housekeeping 28:25
human 18:8,9
hypotheses 21:17
hypothesis 5:23
hypothesizing 22:25

**I**

idea 10:11 11:12
identified 6:22
identify 30:1
ignore 24:6
imagine 18:15 7
immediately 16:9
important 17:24 27:15 29:25
imposition 11:17
incessantly 21:9
including 10:17
incorrect 5:13
incorrectly 27:4
increase 16:14
indicated 21:11
information 4:24 27:8,14,15
infringed 6:16
infringement 6:11,12,14 20:21,22
  20:23 21:6
infringements 6:8,8 9:7

infringing 5:15 20:24 22:21
initial 21:5 24:2 26:20
initially 30:16
inordinate 11:2
inquire 19:9
inquired 15:15
instances 4:14 21:10
intend 9:2,5
intense 14:9
intertwined 9:1
introduce 3:20
involve 8:23 15:9
involved 13:17 25:17
Isn't 15:22
issue 4:24 6:5,12 8:20,24 13:7
  14:25 28:24
issues 4:3 8:6,16,17,22,23,25 9:4
  9:11,12,12,13 11:21 15:6 16:6,6
  24:14 27:11
it's 4:11 5:2 6:9,15 9:5,6 14:13
  11:19 12:2 14:14 17:1 18:8,15
  22:17,23,24 23:13 24:23 25:6
  26:1 28:5 29:4,19 30:10,10,13
I'm 7:2 9:17 24:18
I've 10:23 12:24

**J**

Jaime 20:5
Janet 1:21 3:11
January 1:7 13:3 21:1,1 26:3,10
Jenner 1:15
jmunn@rascocklock.com 1:24
joint 7:23
Jordan's 7:18,22 13:1 25:11
Judge 1:12 3:22 7:18,22 12:25
  14:23 15:5,13 24:17 25:11 27:17
  28:18 30:12
judgment 3:25 4:6 5:1,3,8 6:10
  7:19,21 8:7,20 9:3,22 12:1 13:11
  13:19 16:7,10 17:7 19:2
judgments 6:6,13

**K**

Kathleen 1:11 3:2
kind 13:16 19:25 24:11 27:1
Klock 1:22
knew 3:17
know 3:21 4:1,4,13,16,25 8:11
  10:18 13:6,20 15:15,17 20:3
  24:14 25:20 29:23,24 31:2
knows 18:16
Kong 17:19,23

**L**

lack 3:23
late 24:17
law 19:5,6 22:8 27:23
lead 27:10
leave 12:11 17:23 18:1
left 16:10
legitimately 6:21
let's 5:14
leveled 23:15
levels 20:21
levied 27:13
Levy 23:5,6,15 24:8 26:13
Levy's 23:11,17 24:4
liability 4:5,12 5:16,23 6:7,14 8:24
  8:25 9:3,13
liable 9:6
life 10:23
light 18:19,20
Limewire 25:15,19
limit 9:14
limited 6:25 7:6
limiting 22:14
limits 10:7 12:8
line 23:6,6
lip 28:1
litigation 13:6 15:3
little 7:24 11:10,15 12:8,9 18:3,7
  18:22 20:8 22:3 26:24
live 13:13
LLP 1:19
logical 22:4
long 29:22 30:10
longer 13:9
look 3:25 4:7 13:18 21:18 25:3
looked 21:12,19,20,25 22:1

loose 19:8
lost 5:5
lot 12:3 24:19 27:16

**M**

M 3:2
Magistrate 3:17
major 5:25
majority 16:6
making 20:9 22:15
March 17:19,25 18:13
MARIE 2:1 31:14,15
married 17:19
Martel 1:19
material 11:3 12:4 21:21
materials 19:25
matter 4:11 5:2 6:9,15 9:5,6 14:13
  15:20 28:25 31:8
matters 3:18,21 19:5
mean 30:24
mentioned 26:13
meritorious 20:10
merits 4:14 25:1
methodology 23:21 25:14 26:3,4
Miami 1:2,7 2:3,3 31:17,17
minutes 20:2
missing 15:25
model 5:17
moments 19:25
Monday 15:10 19:16
money 13:16
Montgomery 1:19
month 21:9,19 22:4 25:2,4 26:10
  26:20,21 28:12
months 18:7 24:22 25:3,7 28:13
moot 6:24
mooted 4:24
mooting 21:11
motion 4:1 5:25 7:19,24 8:19 9:2,5
  9:22,24 10:8,9,19 11:25 15:10
  19:8 25:9 28:8,20 29:1,5,10,20
motions 5:3 7:20,25 8:2,8 10:22
  11:10 12:11,15 14:10 15:9 16:6
  16:10,12 17:7
move 5:8 18:21
movies 6:1
moving 8:16 12:20 17:16
multiple 24:2
Munn 1:21 3:11,12

**N**

nature 22:16 23:21
necessarily 10:11 20:7
need 13:10 16:15 18:4,7 21:25
  26:23 29:21 30:11
needed 30:8
never 5:7 6:18 24:7 25:24 26:16
new 1:16 19:4 20:6 25:7,8 27:8
  30:15
newly 24:23
Nieto 1:22
ninety 20:23,23 25:22,23
noninfringement 22:16
noninfringing 22:20
nonrebuttal 15:25
North 2:3 31:17
notes 30:19
notion 5:12 11:9 12:14
November 4:2
number 7:6 24:21 25:22
numbered 10:15
numbers 10:17
numerically 10:24
N.W 1:16

**O**

objection 10:3
objective 16:25
obvious 6:14
obviously 8:25 12:10,14 19:18
  27:6 29:17,21
offering 27:24,25 28:3
Official 2:2 31:16
Oh 25:6
Okay 31:4
once 14:13 20:1
one-month 20:25
opening 10:15
opined 21:5

opinion 7:7 21:7 22:3,6,19,24 23:1
26:20 27:12,12 29:12
opinions 23:24,25
opportunity 3:19 29:8
oppose 9:23
opposed 23:21
opposition 10:4,23,24 18:22
oppositions 18:23,25
option 10:5
order 6:12 7:18 28:21 30:15
organized 11:14 12:3,3,5
original 13:1 21:7
originally 20:9 23:24 27:13
outset 13:7
outside 15:5

**P**

page 9:14 10:7,17
pages 9:15 10:2,3,4,9
papers 4:8,20
paragraph 26:25 27:2 28:2
paragraphs 10:15
parameters 29:24
part 7:12 21:1
parties 4:22 7:23 10:13 11:25
16:16 30:17
passed 7:11
patiently 13:8
paying 13:16
pending 3:21 16:12
percent 20:23,24 21:6 25:22,23,23
Perez 1:17
peril 29:4
period 14:2 19:19 20:25 30:17
periods 21:16
personal 8:25 16:25 17:18
personally 9:6
perspective 16:22
persuasive 20:18
picked 17:22
picture 5:25
place 21:18
places 21:14
plaintiff 1:6,14 13:12
plaintiffs 3:7 4:10 7:9,20,25 8:2 9:2
13:4 25:8 26:8,9,15 28:7,22
29:15 30:2
plaintiff's 5:7,13 19:11
plan 7:12,17 10:7,8,12
planning 7:9
plans 4:25
pleadings 6:18
please 3:3,5 5:12
point 4:1,2,23 5:5,11 6:9 15:4
17:22 25:18 29:19
points 21:10
position 4:19 26:9 28:15,16
positions 26:17
possible 9:23 16:22 28:24
precise 6:15
predicated 15:22
predict 16:13
prejudice 14:19 16:21
prepare 18:8
preparing 16:12
present 5:3 7:6 10:7,7 12:16 14:18
22:18 28:11 30:20
presentation 4:8 9:10
presented 4:1 7:23 12:4
presiding 3:2
pretense 28:6
principal 15:19 24:5
prior 21:16
probably 6:19 8:4 9:9 29:11
problems 21:2 30:3
procedure 25:9 28:8
proceed 13:22 19:10
proceedings 31:8
produce 4:24
product 16:22
professor 20:4,20 22:8,8,13 27:23
professor's 20:7
prohibitively 15:4
promoting 26:1
proper 27:19
proposal 12:25 30:16
propose 12:16 17:14
proposed 9:13

protracted 15:3
provided 10:3
public 30:17,21 31:1,3
purposes 6:13
push 12:8,17 17:19
pushing 14:17
put 6:2 10:2 17:10 23:5 24:14
30:17
putting 31:1
P.M 1:8

**Q**

question 7:8 16:3
questioned 21:8,9
questions 5:16 24:25 25:1,13
quickly 28:24

**R**

R 31:6
random 20:25
Rasco 1:22
rate 21:6
reach 5:6
read 19:25
reading 27:4
real 6:5 16:21
realistic 5:24
reality 5:22 18:5
realizing 12:7
really 3:24 4:4,9 6:2 8:9,12,15
10:21 13:9 14:8 15:12 24:24
26:14
reason 5:6 13:22 17:17 29:7
reasonable 10:10,12
reasonably 14:18
reasons 27:23 28:18
rebut 27:21
rebuttal 4:3 12:9 13:1,23,24 14:1,2
14:9 15:11 17:2,9 19:18,22
20:12 21:24 22:7 23:4,8,11,13
23:25 24:3,3,5,7,10,14 26:12
27:19 28:1
rebutted 20:3
rebutting 24:25 28:4
receiving 8:7
reciting 11:5
record 10:16,17 13:6 30:18 31:1,3
redepose 29:14,21
refer 10:20
regard 5:18 7:19
Reininger 1:22
related 27:11
relief 7:11
rely 26:10
relying 27:12
remaining 5:16
remember 4:18
reminded 19:25 27:1
reminds 25:18
repetitive 9:10
replies 18:23,24
reply 18:10 26:6
report 7:7 13:1 15:11 19:22 21:5,7
22:12 23:5,6,9,11,14 24:4,5,7,10
24:14 25:8,10 26:8,13,20,23
27:9,15,19,21 28:1,11 29:6
REPORTED 2:1
Reporter 2:2 31:16
reports 16:1 24:3,3 25:12 26:17
representative 6:20 27:10
request 12:20 14:22 16:18 17:5,6
requested 13:4 17:10
require 12:13
reserve 27:3
reserving 27:6
resolution 14:24
resolutions 16:17
resolve 16:5,16
resolved 3:19 28:24
resources 16:8
respect 15:8
respond 12:23 28:22
response 16:14 19:11 21:17 23:10
rest 5:10
review 21:3
reviewed 21:18 22:19,21 24:22
reviewing 10:22 13:6
right 5:2,20 16:2 17:22 19:14 22:18
23:15 27:3,6,22 30:12,19

ROBIN 2:1 31:14,15
Robin_dispenzieri@flsd.uscour...
2:4
Robin_dispenzieri@flsd.uscour...
31:18
Roderick 1:18 3:9
RPR 2:1 31:15
rthompson@fbm.com 1:20
rule 10:14,25 11:5 30:3
ruling 28:19 29:6
run 14:15

**S**

S 1:11 31:14
safe 7:19 13:7
sample 25:2
sampling 6:20
San 1:20
saw 23:10 24:4
saying 4:10 20:9 23:20 24:24
says 23:16 28:2
schedule 7:24 11:25 12:16 13:1,11
13:13 14:7 17:11 19:2 24:1
25:11 30:15
scope 6:25
seal 30:16
seated 3:3,13
secondary 6:7,12
seconds 20:19
see 13:10,21 14:19 22:1 23:18
28:18 29:25 30:9
seeing 23:14
seek 7:11
seen 20:14
sense 16:7
sensible 12:17 22:4
sensitive 18:9
sentence 10:16 28:9
separate 8:7 10:8,8
separately 11:14
service 28:2
session 3:2
set 10:25 11:9,13 15:9 16:8,11
18:22 21:12
sets 8:6,16,16,23 9:11 18:5 21:20
seven 18:3
sfabrizio@jenner.com 1:17
sharing 25:25
sheep's 15:12
short 10:23
shows 6:2
side 8:16
sides 5:2 14:25 16:4,11 27:5 29:11
significant 30:10,11
similar 25:16
simple 4:2 14:13,16 15:24
simply 13:15 14:16 17:14 22:5
23:7 24:20
sit 13:18
situation 13:18
six 8:7,14 12:15
small 13:5
son 17:18
son's 18:18
sorry 3:13 7:2,4 28:19
sort 23:13
sound 10:11
sounds 10:10,11
SOUTHERN 1:1
so-called 15:11 28:1
speak 14:24 22:20
speaking 7:3 15:6 21:20 22:20
specific 22:14
spend 11:2
split 5:8
spreadsheet 14:14
stagger 12:17
standard 22:16
start 28:17
startled 26:24
state 3:5 26:9
stated 23:25
statement 10:15
statements 11:1
States 1:1,12 2:2 31:14
statistical 19:21 20:21 22:10,12
27:24,25 28:3,4
statistically 25:2
status 1:11 16:8

stay 15:4
Ste 1:16,23 2:3 31:17
step 8:5,10
Steven 1:15 3:6
stick 16:15 26:18
stood 4:16
storage 25:25
street 1:19 4:20
stricken 15:12
strike 15:19 19:8 29:6
strong 26:2
strongest 21:19
strongly 28:12
studios 6:1
stumbling 30:22
subject 22:17
subject-matter 23:2 27:20
submission 25:11
submit 23:16 26:12,17 30:15,15
submitted 24:5,7 26:8
subpoenaed 29:9
subtitle 12:19
suggest 30:25
suggested 7:25 8:2 12:1 25:1
27:20 29:3
summary 3:24 4:6 5:1,3,8 6:6,10
6:13 7:19,21 8:7,20 9:3,22 12:1
13:11,18 16:7,9 17:7 19:2
superlative 10:14
supplement 25:8,9 28:7 30:10
supplemented 12:12 14:12 23:20
supplementing 28:10
suppose 6:19
supposed 14:12 27:21
suppression 3:14
sur 26:6
sure 7:12 11:23 15:20 24:18 29:2,5
surprisingly 29:13
system 25:25

**T**

T 31:6,6
take 3:22 4:10 6:12 11:21 12:16
15:7,13,18 18:24 20:18 25:2
26:12,17 29:2,4,7
takedown 6:25
taken 19:3 21:17 26:9 29:12
takes 14:15
talk 3:17,20,22 4:14,17 19:24
talked 25:22
talking 3:24 4:4,6 19:22 22:15
tardy 28:17
team 13:21,25
teams 18:5
television 6:1
tell 8:14 16:20,21 30:12
telling 24:13
ten 6:10 12:18 16:20 17:12 18:2
24:22
ten-day 12:24
term 3:23 6:19
terms 7:6
terribly 24:17
testified 27:11
testimony 15:19 19:22 20:8 22:6
22:13 23:9,16
thank 19:6,7 24:18 27:18 30:12
31:4
that's 7:12 8:10 11:15 12:6 13:12
13:20 16:18 17:3 20:10 25:7,7,7
26:3,10 27:24 28:4,5,10,15
theories 6:7
theory 4:11 22:23
they're 10:1 26:10
thing 24:10
things 3:21 10:20 11:11 16:14,16
18:14
think 4:2 7:12,17 8:4,15 9:8,19
10:12 11:17,21 14:24 15:5 16:13
16:15 18:4 19:15 23:5,12 24:9
24:24 26:14 28:16 29:19,24
30:23
Third 23:4
thirteen 26:8
Thompson 1:18 3:9,10,12 4:19 5:5
6:17 7:2,5,16,22 9:20 11:24
12:23 15:8,15,24 16:13,24 17:17
18:1,11,17 19:6,8,12,15 20:5
24:16,18 25:18,21 26:7,22 27:16

27:17,18,23 28:25 30:4,9
**Thompson's** 18:9 19:3 21:8 30:6
**thought** 3:19,22 12:2,10 17:5
  20:12
**three** 8:6,16,23 12:10,25 14:10,15
  17:3 18:23,24
**threshold** 6:11
**time** 5:9,12 7:11,20 11:2,6 12:2
  14:2 16:19 17:6 18:3,22 21:16
  23:4,10 24:4 25:23 26:5 27:16
  28:23 30:17 31:1
**timelines** 12:21
**times** 17:3
**Titov** 6:7 9:6 10:8
**Titov's** 8:24 9:12 28:9
**today** 13:19 28:20
**told** 30:6
**totally** 5:13
**track** 15:4
**TRANSCRIPT** 1:11
**transcription** 31:8
**transition** 5:9
**treatment** 15:11
**tremendously** 11:18
**trial** 12:20 14:22 15:4 16:4,11,12
  16:15,16 20:1
**true** 26:24 27:7
**try** 16:10 28:11
**trying** 12:21 14:20 25:5,5
**Turnoff** 3:18,22 14:23 15:6,13
  24:17 27:17 28:18 30:13
**twenty** 9:15 10:2,9
**twenty-three** 25:3 28:12
**twice** 27:24
**two** 8:21 9:25 10:1 11:21 14:15
  16:24 18:23 19:13 20:18 23:2
  24:6 25:13 27:11 29:22
**two-way** 4:20

**U**

**ultimate** 12:21
**Ultimately** 15:21
**unauthorized** 6:3
**underlying** 9:12
**understand** 12:5 15:2 19:23 20:11
  20:13 28:15,16,22,23 30:23
**understanding** 5:13 6:23,24
**understood** 5:7
**unfounded** 23:17
**United** 1:1,12 2:2 31:16
**universe** 4:7 5:10
**unopposed** 20:18
**unpunished** 24:12
**update** 12:14
**uploaded** 25:24
**urgency** 19:23
**use** 6:20 7:15 21:8
**users** 6:3
**uses** 22:20,21

**V**

**valid** 25:2
**valuable** 5:12
**version** 30:20,22,25 31:1
**versions** 30:17
**versus** 3:4
**view** 4:23 5:7,11 7:10 9:8,9 15:11
  24:11
**Vigil** 1:22
**violation** 15:23,24,25
**volume** 14:17
**voluminous** 10:21
**vs** 1:7

**W**

**wait** 13:9 22:19 29:6
**waiting** 12:12 13:8 27:17
**walking** 30:14
**want** 5:2 9:9 10:2 11:13,14 13:14
  14:5,23 17:9 18:20 24:12,16,17
  25:8 26:15,15 27:3 28:7,10,24
  29:5 30:6,15
**wanted** 7:12 8:3,10 13:7,12 25:19
**Warner** 8:18,19
**Washington** 1:16
**water** 27:14
**Waterman** 20:20 21:11,15 22:18
  23:7,14 24:6,13,21,25 25:15
  26:7,14 27:12 29:3,15

**Waterman's** 19:9,21 20:6 23:6 26:3
  27:8 28:1
**way** 11:15,15 12:4,5 16:17 18:17
  20:9 30:3,20
**ways** 16:24
**wedding** 18:15,15,18
**week** 8:1 13:23,25 14:4,6 17:2,9,11
  18:15 19:15 29:4,10
**weeks** 13:19,20 14:8,12 18:23,23
**went** 13:13 21:2
**weren't** 5:10
**we're** 18:11 23:12
**Williams** 1:11 3:2
**wished** 29:14
**witness** 17:2 27:10
**witnesses** 14:5 15:20
**wolf** 15:12
**wonders** 16:17
**won't** 26:2
**word** 26:25 27:25 28:2
**work** 8:3 12:21 17:25 18:9,12,17
**working** 18:6
**works** 4:25 5:8,9,24,24 6:4,10,15
  6:22,25 7:6
**wouldn't** 10:2 30:7
**wrinkle** 7:24
**write** 20:17
**wrong** 4:13,15 7:1
**wrote** 10:13

**Y**

**yellow** 30:21
**York** 1:16
**you'll** 30:9
**you've** 15:17 16:9

**0**

**08S67** 2:3 31:17

**1**

**1-14-2012** 31:14
**1:15** 1:8
**10th** 12:8 17:13
**10,000** 4:11,14 5:17
**1099** 1:16
**11-20427-CIV-KMW** 1:3
**11:00** 30:8
**125** 5:24
**13** 1:7
**13th** 17:15
**16th** 18:13
**17th** 1:19
**175** 4:11,25 5:8,14 6:20

**2**

**2nd** 13:2
**20th** 17:15
**200** 1:23
**2011** 21:1,1 26:10
**2012** 1:7
**202/639-6094** 1:16
**23rd** 13:2 19:17 28:22
**235** 1:19
**24th** 17:19,25
**24/7** 18:6
**25th** 17:25
**283** 1:23

**3**

**3rd** 12:7 13:19 17:13
**305/476-7101** 1:23
**305/523-5659** 2:3 31:17
**33128** 2:3 31:17
**33134** 1:23

**4**

**400** 2:3 31:17
**415/954-4400** 1:20

**5**

**50** 5:9,14,18,23
**56** 10:14

**6**

**6th** 13:3

**7**

**7th** 4:2

**9**

**90.3** 21:6
**900** 1:16
**94104** 1:20
**99,000** 4:11