UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
_____/

**REPLY MEMORANDUM OF DEFENDANTS HOTFILE
CORPORATION AND ANTON TITOV IN SUPPORT OF
MOTION TO STRIKE PLAINTIFFS' PUTATIVE
"REBUTTAL" REPORT OF DR. RICHARD WATERMAN**

## TABLE OF CONTENTS

                                                                                       **Page**

I.    INTRODUCTION .................................................................................................. 1

II.   LEGAL ARGUMENT ........................................................................................... 1

      A.    In Failing To Rebut Any Evidence Given By Professor Boyle, Dr. Waterman's Report Represents An Untimely Attempt To Proffer New Opinions In Contradiction To His Initial Report .............................. 1

            1.    Dr. Waterman Proffers New Testimony, Not A Rebuttal ............. 1

            2.    Proffered For Rehabilitation Purposes, Dr. Waterman's Report Is Not "Intended Solely To Contradict Or Rebut Evidence On The Same Subject Matter" As Professor Boyle ....................................................................................................... 3

                      a.    In His "Rebuttal" Report, Dr. Waterman Mentions Professor Boyle Only To Agree With Him ......................... 4

                      b.    Dr. Waterman Invokes Professor Boyle As A Pretext For Attempting To Rehabilitate His Original Report ................................................................................. 4

                      c.    Plaintiffs Make No Showing That Dr. Waterman "Rebuts" Professor Boyle ............................................... 5

      B.    No Substantial Justification Exists For Dr. Waterman's New Opinion ............................................................................................... 7

      C.    Only Preclusion Can Remedy Plaintiffs' Sandbagging Absent Reopening Of Discovery, Which Hotfile Cannot Afford ....................... 8

III.  CONCLUSION .................................................................................................... 10

I.      **INTRODUCTION**

Dr. Waterman's "rebuttal" report on statistics does nothing to rebut Professor Boyle's original report containing his legal analysis. Dr. Waterman's recent report mentions Professor Boyle in its second paragraph *solely for the purposes of agreement*, and then departs into nine paragraphs in which Dr. Waterman seeks to reverse a concession he made over a dozen times in his initial opinion: namely, that his statistical study only applied to alleged infringement at Hotfile in the single month of January 2011. While Plaintiffs emphasize one instance over the course of a twenty-page single-spaced report in which Professor Boyle uses the word "substantial" to describe the 1.7 million downloads of "open source" software that he found to be non-infringing, Plaintiffs ignore the fact that Professor Boyle repeatedly disclaims any effort to perform a statistical study. Plaintiffs' allusion to Professor Boyle in Dr. Waterman's report is simply a pretext for a belated attempt to rehabilitate their witness.

Hotfile relied on Dr. Waterman's repeated averments in his original report, his more than a dozen sworn confirmations of the limited scope of his report in deposition, and his repeated verifications under oath that he would not change course. On that basis, Hotfile deposed Plaintiffs' twelve witnesses, defended six days of deposition, commissioned one rebuttal expert report (while declining another), participated in a mediation, and drafted the summary judgment papers due in two weeks. Plaintiffs' suggestion that simply retaking the deposition of Dr. Waterman could cure Hotfile's prejudice lacks any credibility.

The Court issued its Scheduling Order in this case for a reason. If corporations with the resources of Plaintiffs can disregard such orders, litigants like Hotfile cannot reasonably defend themselves. Dr. Waterman's "rebuttal" report should be stricken.

II.     **LEGAL ARGUMENT**

   A.   **In Failing To Rebut Any Evidence Given By Professor Boyle, Dr. Waterman's Report Represents An Untimely Attempt To Proffer New Opinions In Contradiction To His Initial Report**

        1.   **Dr. Waterman Proffers New Testimony, Not A Rebuttal**

Plaintiffs contend that Dr. Waterman's rebuttal report does not contain original opinion testimony subject to the "automatic" exclusion applied to belated reports because "Dr. Waterman's initial report did *not* purport to limit his conclusions to a specific time period." Opp. at 2 (emphasis in original); Mot. at 9-10 (citing authorities). However, on over a dozen

1

occasions in his deposition, Dr. Waterman explicitly disagrees. *E.g.*, Mot., Ex. C at 106:12-13 ("my report is about January 2011"); 108:18-21 ("My study . . . pertains to January 2011"); 109:9-13 ("my conclusions are related to what was going on in January 2011"); 87:16-20 ("my study's absolutely clear [that] . . . my report pertains to that period [January 2011] in terms of the conclusions that I draw"); 89:21-90:3 ("as I keep stating . . . the quantitative inferences pertain to January 2011"); *see also* Waterman Rep. [Mot., Ex. A] ¶ 9 ("I looked at the month of activity prior to the complaint filing, January 2011"); *id.* ¶ 7 ("the population of interest consists of downloads of files from Hotfile in a specified time prior to the complaint, January 2011").

Plaintiffs discount Dr. Waterman's testimony (set forth in greater length in Hotfile's opening brief) as a series of "isolated quotes" which "lack context." Opp. at 6. However, Hotfile attached twenty-seven pages of uninterrupted testimony to its Motion. *See* Mot., Ex. C at 83-109. No reasonable interpretation of the testimony supports any inference that Dr. Waterman's conclusions extended beyond January 2011.

Plaintiffs then quote two sentences from the twenty-seven page excerpt in which Dr. Waterman speculates about opinions he "would" render about behavior outside of January 2011 "if" he had any basis to do so. Opp. at 6; *see* Mot., Ex. C at 83:22-84:9 (". . . and then I *would* say to the extent that the world was similar before January, for example, December, that . . . *if* I had no reason to believe that the world had changed dramatically . . . then that the results I provided *would* give one a sense of what was likely happening prior to that point."); *id.* at 84:11-85:10 ("[to] the extent to which a month of December of 2010 or November 2010 *would* be expected to be similar . . . then my sense *would* be that this *would* me good understanding of what was – what was likely to have happened beforehand."). In their zeal, Plaintiffs even omit the first half of first sentence above: "***My numbers that I present in the report are definitely statements specifically about January***, and then I would say . . ."). Speculation from a witness about what he "would" say "if" he had grounds is not expert testimony, particularly when explicitly disavowed over a dozen times.

Even if Dr. Waterman "would" have liked to testify more broadly, he disclaimed any knowledge of activities at Hotfile prior to January 2011 necessary to support such testimony. *See* Mot., Ex. C at 93:3-24 ("There are many aspects of the Hotfile site that I am not aware of or the Hotfile business because that's not my role within this case. My role within this case is to provide an opinion as to, in the month of January 2011, the extent of or the proportion of files

that were associated with infringing content.  So it is – I will acknowledge there is probably a million things about Hotfile as a business that I don't know, but I don't know them because I felt that for the point or the purposes of me being retained in this case those weren't relevant to the decisions that I came up with."); *see also id.* at 91:18-102:24 (cataloguing specific pre-2011 activities of Hotfile of which Dr. Waterman remained unaware).  Plaintiffs cannot now credibly claim that Dr. Waterman opined on matters of which he had no awareness.

Ultimately, even if Dr. Waterman's original report addressed alleged infringement on Hotfile prior to January 2011 – which is nowhere near the case – Plaintiffs' repeated denials that Dr. Waterman's rebuttal report is "new" accomplishes nothing.  Plaintiffs cannot properly serve a "rebuttal" report to try to prop up a prior opinion.  *See Nelson v. Freightliner LLC*, No. 5:01-cv-266, 2003 WL 25781423, at *2 (M.D. Fla. Apr. 23, 2003) ("To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation."); *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169-70 (D. Colo. 2006) (same).  Plaintiffs do not even attempt to distinguish this authority cited by Hotfile in its opening brief.  Mot. at 11-12.[1]

### 2. Proffered For Rehabilitation Purposes, Dr. Waterman's Report Is Not "Intended Solely To Contradict Or Rebut Evidence On The Same Subject Matter" As Professor Boyle

To qualify as a rebuttal report permitted to be served after the deadline for original expert reports, the report must be "intended solely to contradict or rebut evidence on the same subject matter" of an opposing party's expert report.  Fed. R. Civ. P. 26(a)(2)(C)(ii).  Dr. Waterman's submission in no way resembles a rebuttal report.

---

[1] Plaintiffs cite *Lalli v. U.S. Life Ins. Co.*, No. 10-3591, 2011 WL 2601795, at *2 (D. Minn. July 1, 2011), for the proposition that Dr. Waterman may "build upon his initial report in rebuttal." Opp. at 5.  However, the rebuttal physician in *Lalli* had not provided an initial report, so *Lalli* cannot possibly stand for the proposition cited.  2011 WL 2601795 at *2.  Moreover, the rebuttal physician in *Lalli* engaged in "clear rebuttal" – he testified that the deceased's hematoma *caused* death where defendants' experts asserted it did not.  *Id.*  Here, Dr. Waterman is not "more fully explaining [Plaintiffs'] existing theories" regarding alleged infringement in January 2011, but rather is propounding a new opinion regarding alleged infringement over the preceding twenty-two months.  The same reasoning distinguishes *S.W. v. New York*, No. CV 2009-1777, 2011 WL 3038776, at *4 (E.D.N.Y. July 25, 2011) (cited in Opp. at 5).

                    a.        <u>In His "Rebuttal" Report, Dr. Waterman Mentions Professor Boyle Only To Agree With Him</u>

Dr. Waterman's "rebuttal" report only mentions Professor Boyle in one paragraph – and then only to agree with him. First, Dr. Waterman states, "*as Prof. Boyle acknowledges*, he did not attempt to analyze a representative statistical sample . . . "). Mot., Ex. D ¶ 2. Professor Boyle agrees. Mot., Ex. B. ¶¶ 7, 34. Second, Dr. Waterman states that Professor Boyle "provides no basis to draw conclusions . . . about the level of infringing activity on Hotfile generally." Mot., Ex. D ¶ 2. Again, Professor Boyle agrees. *See* Mot., Ex. B. ¶ 34 ("This report does not attempt to present a statistically representative sample of the usage of Hotfile and I have no personal knowledge about what percentage of Hotfile's uploaded content, or of user downloads, is non-infringing."). Third, Dr. Waterman states that Professor Boyle does not compare the number of downloads of non-infringing files to the number of all downloads on Hotfile. Mot., Ex. D ¶ 2. Professor Boyle explicitly attested to this fact weeks in his original report. Mot., Ex. B. ¶ 34; Boyle Dep. at 26:10-13 (attached hereto as Exhibit L). This is no rebuttal.

                    b.        <u>Dr. Waterman Invokes Professor Boyle As A Pretext For Attempting To Rehabilitate His Original Report</u>

Rebuttal reports must "solely" contradict or rebut opposing expert testimony. Fed. R. Civ. P. 26(a)(2)(C)(ii). Dr. Waterman's report fails to make any mention of Professor Boyle after the second paragraph because it exists to reverse the damage caused when Dr. Waterman confined his opinion to one month of Hotfile's three-year existence. *See supra* Part II(A)(1). This report's sole purpose is rehabilitation – not rebuttal.

Following an introductory first paragraph and a second paragraph devoted to *agreement* with Professor Boyle, *see supra* Part II(A)(2)(a), Dr. Waterman's third paragraph defends the use of statistical data regarding January 2011 to opine about alleged infringement on Hotfile at other times. Mot., Ex. D ¶ 3. However, Professor Boyle never even remotely approaches this subject in his report, and indeed would have had no reason to do so given that he had never seen Dr. Waterman's statistical analysis of January 2011 prior to serving his report. Mot., Ex. B. Similarly, Dr. Waterman's fourth paragraph discusses the "strong reasons for choosing January 2011 as the period of time from which to draw the sample" – a subject having nothing to do with Professor Boyle. Mot., Ex. D ¶ 4; *id.*, Ex. B. Dr. Waterman's fifth paragraph addresses "the

4

development of the Hotfile site over time" – another topic which Professor Boyle never broached. Mot., Ex. D ¶ 5; *id.*, Ex. B. Six more paragraphs follow, all attempting to justify extrapolation of Dr. Waterman's original 90.3% infringement rate backwards from January 2011. Mot., Ex. D ¶ 6-11. Plaintiffs do not even attempt to connect Professor Boyle to any of these assertions, either in the report, Professor Boyle's two depositions, or their Opposition brief here. Indeed, in the meet-and-confer discussions preceding this Motion, Plaintiffs conceded that Dr. Waterman's "rebuttal" report arose to address his deposition testimony in contrast to any opinion of Professor Boyle. *See* Mot., Ex. E at 1 ("You kept hypothesizing to him [in deposition] events that could change [the alleged infringement rate] – events he said he had not considered. . . . I do not think we were required to submit a [second] report, *but since it was such a focused part of your deposition examination*, we opted to give you the benefit of knowing the additional materials he reviewed . . . .") (emphasis added). Despite Plaintiffs' efforts here, rebutting oneself is not grounds for serving a rebuttal report.

        c.        Plaintiffs Make No Showing That Dr. Waterman "Rebuts" Professor Boyle

Plaintiffs assert that Dr. Waterman, a statistician, rebuts Professor Boyle, a copyright law professor, because the two witnesses address "the same subject matter" of incidence of infringement on Hotfile. *See* Opp. at 4. This is not credible.

Professor Boyle opines that Hotfile users violated no copyright law when downloading the two "open source" software programs representing the two most downloaded files on Hotfile. Mot., Ex. B ¶ 9(i). He further opines that users of Hotfile violated no copyright law when downloading six identified open source programs more than 1.7 million times. *Id.* [2] In so opining, he relies on his decades of experience studying copyright law and communication policy on the internet. *Id.* ¶¶ 2-3.

Dr. Waterman concludes in his rebuttal report that his original assessment of an infringement rate of 90.3% "likely" applies to some unspecified time period prior to January 2011. Mot., Ex. D ¶ 10. He relies upon his twenty years of experience as a statistics instructor. *Id.* ¶ 1.

---

[2] Professor Boyle also opines about Hotfile's "affiliate" program and other matters not raised by Plaintiffs here. *Id.* ¶ 6; Opp. at 4-7.

Dr. Waterman's report is no rebuttal to Professor Boyle. One does not "contradict or rebut" a legal analysis of specifically-identified files by attempting to bolster one's allegedly-preexisting statistical analysis of other files.[3] Dr. Waterman and Professor Boyle do not even occupy fields that have any relationship to one another: Dr. Waterman disclaims any knowledge of law while Professor Boyle disclaims expertise in statistics. Mot., Ex. C at 53:13-17; Boyle Dep. at 13:10-11 (Ex. L).

Plaintiffs attempt to justify Dr. Waterman's "rebuttal" report based upon four terms used by Professor Boyle over the course of his 7,100-word opening report: "high volume," "substantial," "popular," and "common." Opp. at 4. Thus, Professor Boyle testified that 1.7 million downloads of six open source programs represented a "high volume" and "substantial" number in absolute terms. Boyle Dep. at 54:14-57:14 (Ex. L). However, he made clear that he did not attempt to compare this volume to any other uses of Hotfile, and he explicitly disclaimed any statistical analysis. Mot., Ex. B. ¶¶ 7, 34. Plaintiffs cannot credibly purport to rebut the fact of 1.7 million downloads of six specifically-identified files with a new statistical survey of other files downloaded on Hotfile, especially given Professor Boyle's disclaimers. *E.g.*, Boyle Dep. at 56:9-11 ("[1.7 million downloads] would be a substantial use, *regardless of the total number of downloads from the Hotfile service*") (Ex. L) (emphasis added).

The same reasoning applies to Professor Boyle's use of the words "popular" and "common," which he used to denote that two of the files he analyzed were the most downloaded files on Hotfile. Boyle Dep. at 57:15-58:23 (Ex. L). Nothing from Plaintiffs' belated statistical analysis in any way "contradicts or rebuts" Professor Boyle's conclusion that the two most downloaded files on Hotfile infringed no copyrights.

Plaintiffs contend that Dr. Waterman and Professor Boyle addressed the same subject matter through "different methodologies." Opp. at 5 (citing *TC Sys. Inc. v. Colonie*, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002) and *Park West Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009)). In *TC Systems*, two opposing experts addressed the same question – whether a municipality could track costs associated with public rights-of-way – from an accounting perspective and an engineering perspective. *Id.* The court allowed the engineer to rebut the accountant. *Id.* at 181; *see Park West*, 675 F. Supp. 2d at 326 (same effect). Here,

---

[3] Notably, Plaintiffs' expert on copyright law *agreed* with Professor Boyle whenever the two opinions intersected regarding specific files. *E.g.*, Zebrak Rep., Ex. C at 19, 24, 65.

6

however, the experts address different questions: Plaintiffs seek to rebut Professor Boyle's legal conclusion about the lawfulness of downloading identified files over 1.7 million times with Dr. Waterman's statistical conclusion regarding the alleged infringement rates over twenty-three months. By Plaintiffs' logic, all experts on this case could postpone disclosure of their final reports until the rebuttal deadline since they all opine about "the extent of infringement versus non-infringement on Hotfile." Opp. at 4; *see* Cromarty Rep. ¶ 32 ("Defendants' systems offer a substantial non-infringing benefit"); Zebrak Rep. ¶ 10 (studying alleged infringement rate); Foster Rep. ¶¶ 21, 35 & Ex. C (addressing measures "to reduce infringing content on the website" and charting users suspended for infringement); Lynde Rep. ¶ 18 (discussing degree of error in Plaintiff Warner's infringement claims). Dr. Waterman and Professor Boyle differ in more than "methodology." No amount of statistical analysis by Dr. Waterman can have any bearing on the legality under federal law of downloading the files analyzed by Professor Boyle.

**B.     No Substantial Justification Exists For Dr. Waterman's New Opinion**

The proponent of a belated expert report bears the burden of proving its violation of the rules to be "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). Here, Plaintiffs assert that "Dr. Waterman's rebuttal cites to new evidence about Hotfile's operations that was unavailable until after his initial report was submitted." Opp. at 8. This is demonstrably false.

Hotfile has already proven that the exhibits produced with Dr. Waterman's rebuttal report and the materials identified as "Other Documents Considered" all remained available to Plaintiffs for up to a year prior to his initial report. Mot. at 12-14. Plaintiffs do not dispute this assertion. Opp. at 9. Instead, Plaintiffs contend in their Opposition that Dr. Waterman reviewed other *unspecified* evidence not available at the time of his initial report regarding "events in the history of Hotfile." *Id.*

While law forbids Plaintiffs from making Hotfile guess as to the evidence relied upon by their expert, Fed. R. Civ. P. 26(a)(2)(B)(ii), Dr. Waterman at least undertook to produce with his rebuttal report a "timeline" of events at Hotfile upon which he relied (attached hereto as Exhibit M). As shown below, Hotfile produced evidence of each of these events long before Dr. Waterman produced his initial report on November 18, 2011.

| Event From Waterman "Timeline" | Date Of Disclosure By Hotfile |
|---|---|
| Hotfile Launch (February 2009) | June 2, 2011. *See* Response To Plaintiffs' Interrogatory No. 2 at 6 (attached as Ex. N). |

7

| **Event From Waterman "Timeline"** | **Date Of Disclosure By Hotfile** |
|---|---|
| Email address for notices posted on website (April 2009) | June 2, 2011. *Id*. |
| Special Rightsholder Accounts; claimed blocking of files based on hash (August 2009) | August 26, 2009. *See* E-mail from M. Bentkover to Hotfile Corp. of 8/26/09 (attached hereto as Exhibit O); February 28, 2011. Docket No. 30 at 6. |
| Registered DMCA agent with Copyright Office (December 2009) | June 2, 2011. *See* Response To Plaintiffs' Interrogatory No. 2 at 6 (Ex. N). |
| Termination of certain users following Liberty Media litigation (January 2010) | October 3, 2011. *See* HF02855583. |
| DMCA policy with name of registered agent posted on website (May 2010) | June 2, 2011. *See* Response To Plaintiffs' Interrogatory No. 2 at 7 (Ex. N). |
| Perfect 10 files complaint against Hotfile (September 2010) | February 10, 2011. *See* WARNER025767 (attached hereto as Exhibit P). |
| Plaintiffs file complaint against Hotfile; implementation of strike system for repeat infringers (February 2011) | February 8, 2011. Docket No. 1 (Compl.) February 22, 2011. Docket No. 16-6 at 2-3. February 28, 2011. Docket No. 30 at 7. |

Plaintiffs cannot even come near discharging their burden of proving substantial justification for Dr. Waterman's belated report.

### C. Only Preclusion Can Remedy Plaintiffs' Sandbagging Absent Reopening Of Discovery, Which Hotfile Cannot Afford

Plaintiffs cannot credibly deny the prejudice caused to Hotfile by their discovery abuse. Hotfile relied upon Dr. Waterman's restriction of his opinion to January 2011 as set forth in two explicit statements in his original report, a dozen sworn confirmations in deposition, and repeated verifications under oath that he would not change course. Waterman Rep. ¶¶ 7, 9 (Mot., Ex. A); Waterman Dep. at 83:8-109:13, 294:9-295:20 (Mot., Ex. C). On this basis – and knowing that Plaintiffs accepted their burden of proving the scale of alleged infringement on Hotfile in Plaintiffs' *prima facie* case as opposed to their rebuttal case[4] – Hotfile deposed each of Plaintiffs' twelve witnesses, knowing that it need ask no questions that could bear upon any extrapolation of Dr. Waterman's alleged infringement rate beyond January 2011. *See* Mot. at

---

[4] *Arista Records LLC v. Usenet.com*, 633 F. Supp. 2d 124, 151-152 (S.D.N.Y. 2009); *MGM Studios, Inc. v. Grokster*, 454 F. Supp. 2d 966, 985 (C.D. Cal. 2006); *Columbia Pictures v. Fung*, 2009 WL 6355911, at *17 (C.D. Cal. Dec. 21, 2009). Plaintiffs have cited these cases to Hotfile since February 2011. *See* Docket No. 14 at 20; Opp. at 2 n.1.

15-16.[5] Hotfile also prepared for and participated in six days of questioning of its witnesses. Hotfile chose not to obtain testimony from industry experts regarding the instability of online user behavior over time, and declined to ask its existing technology expert to consider the inapplicability of Dr. Waterman's original conclusion beyond January 2011. *Id.* Hotfile asked its own statistics expert, Dr. Daniel Levy, to rebut Dr. Waterman's original report – not knowing that thirty-six minutes after disclosure of that report that Dr. Waterman would expand the scope of his opinion by a factor of twenty-two. Since November, Hotfile even based its approach to settlement on the understanding that Plaintiffs could only level allegations of 90% infringement in relation to one month of Hotfile's operations. Discovery and the court-ordered mediation are now concluded. Hotfile cannot undo its past reliance or recover its lost opportunities effectuated by Plaintiffs' reversal absent delay of the current trial schedule – which Hotfile does not seek and cannot reasonably afford. *Id.*

Plaintiffs do not even attempt to address these harms in their papers. Opp. at 7-9. Instead, Plaintiffs argue that it would be "pointless" to strike Dr. Waterman's report since he will respond to Dr. Levy's report *at trial* by testifying that his conclusions apply to periods other than January 2011. Opp. at 8. However, "the ability to simply cross-examine an expert concerning a new opinion at trial is *not* the ability to cure" – even if that new opinion purportedly arises in response to opposing expert testimony. *Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 594, 598 (4th Cir. 2003).[6] Having disclaimed analysis of any month other than January 2011 in his original report, Dr. Waterman cannot properly respond to Dr. Levy's *confirmation* of this fact by broadening his opinion by twenty-two months. *See* Levy Rep. [Mot., Ex. H] at 4-5 ("Dr. Waterman makes it clear that . . . his analysis provides no scientific evidence . . . for any month other than January 2011.") The Federal Rules permit opening reports and rebuttal reports, not an endless cycle. *Nelson v. Freightliner LLC*, No. 5:01-cv-266, 2003 WL 25781423, at *2 (M.D. Fla. Apr. 23, 2003). No case cited by Plaintiffs permits

---

[5] Plaintiffs argue that their witnesses know nothing of Hotfile's development. Opp. at 8 n.4. While untrue – Plaintiffs have produced 16,230 documents regarding Hotfile – Plaintiffs ignore Hotfile's lost opportunity to question Plaintiffs about industry trends and online user behavior.
[6] In addition, having Dr. Waterman offer opinions at trial that were not contained in his initial report would be improper. *See* Rule 26(a)(2)(B)(1). Hotfile objects to (and will expect to move to strike or exclude) any testimony by Dr. Waterman that exceeds his initial report. *See* Fed. R. Civ. P. 37(c).

an expert to testify one way on direct, confirm that testimony over a dozen times on cross, and then contradict himself on rebuttal.

Plaintiffs also deny any prejudice to Hotfile because Hotfile can depose Dr. Waterman. Opp. at 9. This could be said in essentially any case. Here, only days remain before the first summary judgment motions, and only four months remain before trial. *See id.* at 1079, 1168, 1171 (striking report despite opportunity to depose expert during nine months before trial); *Nelson v. Freightliner LLC*, No. 5:01-cv-266, 2003, WL 25781423, at *1, 4 (M.D. Fla. Apr. 23, 2003) (striking report served four months before trial); *Beller v. United States*, 221 F.R.D. 696, 697, 701-702 (D.N.M. 2003) (same). If parties could ignore expert deadlines provided that they made their witnesses available for deposition after the close of discovery, scheduling orders would lack meaning. As the Eleventh Circuit has ruled – contrary to Plaintiffs' position here – compliance with Rule 26 is "not merely an aspiration." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006). Disregard of court-ordered deadlines has consequences. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.").

### III. CONCLUSION

For the foregoing reasons, the Court should strike the putative "rebuttal" expert report of Dr. Richard Waterman served on January 6, 2012.

DATED: January 30, 2012　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ Janet T. Munn
　　　　　　　　　　　　　　　　　　Janet T. Munn, Esq. Fla. Bar No. 501281
　　　　　　　　　　　　　　　　　　Email: jmunn@rascoklock.com
　　　　　　　　　　　　　　　　　　Rasco Klock
　　　　　　　　　　　　　　　　　　283 Catalonia Avenue, Suite 200
　　　　　　　　　　　　　　　　　　Coral Gables, Fl 33134
　　　　　　　　　　　　　　　　　　Telephone: 305.476.7101
　　　　　　　　　　　　　　　　　　Telecopy: 305.476.7102

And


/**s**/ Andrew Leibnitz
Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email: rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email: aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email: tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email: dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email: jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

And

Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone: 617.928.1800
Telecopy: 617.928.1802

*Counsel for Defendants Hotfile Corporation
 and Anton Titov*

CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2012, a true and correct copy of the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

| | |
|---|---|
| Karen L. Stetson, Esq., Fla. Bar No.: 742937<br>GRAY-ROBINSON, P.A.<br>Email: Karen.Stetson@gray-robinson.com<br>1211 Brickell Avenue<br>Suite 1600<br>Miami, FL  33131<br>Telephone: 305.416.6880<br>Telecopy: 305.416.6887 | Karen R. Thorland, Esq. (*pro hac vice*)<br>Senior Content Protection Counsel<br>Email: Karen_Thorland@mpaa.org<br>Motion Picture Assoc. of America<br>15301 Ventura Boulevard, Bldg. E<br>Sherman Oaks, CA  91403-5885<br>Telephone: 818.935.5812 |

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC  20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

By: /**s**/ Janet T. Munn
         Janet T. Munn