UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants.*

_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*

_____/

FILED by __AOS__ D.C.

JAN 3 1 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**WARNER'S MOTION AND MEMORANDUM OF LAW TO PERMIT USE AT TRIAL
OR SUMMARY JUDGMENT OF TITOV EX. 27 IN ITS ENTIRETY**

**FILED UNDER SEAL**

**RELATES TO SEALED ORDER AND CONTAINS CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

At the January 13, 2012 hearing in this matter, Magistrate Judge Turnoff granted in part and deferred in part Warner's Motion to Compel the production of Titov Exhibit 27, a deposition exhibit about which Warner questioned Mr. Titov at his deposition without objection and which Hotfile has tried to claw back.[1]  The document is a spreadsheet showing that Hotfile already knew, months before bringing its counterclaim against Warner, that the great majority of the takedown notices that Hotfile contends Warner had sent in error were infringing files belonging to other copyright owners.

The spreadsheet encompasses 297 pages; a subset consisting of the first 32 pages was marked as a deposition exhibit.[2]  Magistrate Judge Turnoff held that the first 32 pages were now "part of the record in this case," and agreed that Warner "may use the deposition exhibit and the deposition testimony."  Transcript of Status Conference Hearing Before the Honorable William C. Turnoff ("1/13/12 Tr.") (attached hereto as Exhibit A) at 28:10-11; 32:11-12.  While observing that he thought "the better argument is with the plaintiff," 1/13/12 Tr. at 21:10, he held that the proper procedural vehicle for admitting the entire document, as opposed to merely the excerpt used at the deposition, would be by means of an evidentiary motion to the Court.  *See* Omnibus Order, Docket No. 227 at 2 ("any party seeking to use such document shall file the appropriate pleading, e.g. a motion in limine for use at trial."); 1/13/12 Tr. at 31:13-14 ("if [Warner] want[s] to use the full document, that document is going to be under seal" and would need to be addressed by means of a separate evidentiary motion).

In accordance with Magistrate Judge Turnoff's instructions, Warner now moves for such permission, which should be granted:

**First**, Hotfile's production of the spreadsheet was not inadvertent – it had produced the document on two separate occasions months apart, while repeatedly taking the legal position that analyses of this exact type were not privileged.  Hotfile's misuse of the clawback procedure in

---

[1] Hotfile has separately objected to Magistrate Turnoff's Order, *see* Hotfile's Objections to Magistrate Judge's Order Regarding Plaintiff's Motion to Compel Titov Deposition Exhibit 27 (filed January 27, 2012).  Warner is responding to Hotfile's Objections – which take the unfortunate tack of seeking to escalate a routine discovery dispute into misguided accusations of misconduct – in a separate filing at the appropriate time.  Suffice to say that Hotfile's false accusations concerning use of Titov Ex. 27 at the deposition have no bearing on this motion, which is premised on Hotfile's waiver prior to the deposition.

[2] For purposes of this Motion, Warner uses the term "Titov Ex. 27" to refer to the entire document unless otherwise indicated.

1

this case – apparently failing to engage in meaningful privilege review of its documents prior to production, and then sandbagging Plaintiffs with mass clawbacks on the eve of depositions and months after the documents had been produced and reviewed – does not satisfy the legal requirements of inadvertence.

**Second**, Warner had had the entire spreadsheet in its possession since June, without any reasonable basis to think that Hotfile would later claim work product over it, and had (by the time of the clawback) integrated it into Warner's case strategy – including not only its deposition preparation, but also the Answer it had filed in early November. As Magistrate Judge Turnoff noted, "the bottom line is the cat is already out of the bag already," 1/13/12 Tr. at 31:18-19; indeed "because of the time lag" and "the use of the documents," *id.* at 21:11-12, the cat had been out of the bag long before Titov was deposed.

**Third**, Hotfile's waiver of any work product protection affects the full, 297-page spreadsheet no differently than the excerpt counsel physically carried to Bulgaria and marked at the deposition. It has been common practice in this case to use shorter excerpts from voluminous documents introduced at depositions. The remaining pages of the spreadsheet are no different in kind from the ones marked at the deposition and should be treated consistently.

Under such circumstances, work product has been waived – over the entire document. Indeed, Warner is prejudiced by having only a partial segment of the document, rather than the document in its entirety. Many of Hotfile's own conclusions about the infringing nature of the counterclaim files are found in later portions of the document, portions that Warner has been relying upon for months in defending against Hotfile's counterclaim, and for which Warner has had to destroy its work product as a result of Hotfile's belated clawback. Hotfile can no longer reasonably 'unring the bell' by clawing back a document that had been in the possession of opposing counsel since early in the litigation.

In addition, due to the upcoming filing of motions for summary judgment (and Hotfile's filing of objections to Magistrate Judge Turnoff's Order), Warner requests that the Court expedite briefing on this motion to align with the same schedule as Hotfile's Objections, with opposition briefs filed February 10, 2012, and replies filed February 17, 2012.

## BACKGROUND

On two separate occasions in discovery four months apart (June 17, 2011, then again on October 14, 2011), Hotfile produced in discovery an internal email among nonlawyers attaching

a 297-page spreadsheet. *See* Declaration of Steven B. Fabrizio in Support of Warner's Motion to Compel the Production of Titov Deposition Exhibit 27 ("Fabrizio Decl."), Docket No. 211-1, ¶ 3. The spreadsheet listed takedown notices sent by Warner to Hotfile, with entries for each file indicating whether Hotfile concluded the file was copyrighted, and, if so, whether Warner was the copyright owner. *See* Declaration of Luke C. Platzer, Docket No. 181-1, Ex. C. The email, on which no attorney is copied, and which bears no markings indicating that it was created by or at the direction of counsel, reflects three important facts. First, Hotfile's internal personnel knew that in cases where Warner had sent mistaken takedown notices to Hotfile, the files noticed were still infringing. Second, Hotfile already knew about supposed mistakes in Warner's takedown notices as early as February 2011, months before it brought them to Warner's attention or filed its counterclaim, and allowed those supposed errors to accumulate despite such knowledge. And third, Hotfile's internal, nonlegal personnel were perfectly capable, contrary to arguments subsequently made by their attorneys and retained experts in this litigation, of determining when a file on Hotfile's system was or was not copyrighted and who the copyright owner was.

Warner's counsel had no reasonable basis to believe that the document was the product of any investigation by an attorney or at counsel's direction. No attorney was listed as a recipient, neither the email nor the spreadsheet bears any notification claiming privilege or work product, and it predated Hotfile's counterclaim against Warner by well over five months.[3] Indeed, Hotfile initially took in this litigation the position that even lawyer-directed analyses by Warner's internal personnel of the takedown notices it sent to Hotfile were **not** work product, even filing a motion to compel Warner's own analysis on that basis. *See* Motion and Memorandum of Law of Defendant and Counterclaimant Hotfile Corporation to Compel Discovery From Plaintiff and Counter-Defendant Warner Bros. Entertainment Inc. of Warner's Takedown Investigations, Docket No. 164, at 5-7.[4]

---

[3] At the deposition, Titov himself identified the document as reflecting work prepared during an "early" phase of investigation, before Hotfile's lawyers became involved at all. *See* Titov Tr. 167:2-167:16; 167:23-168:12 (Fabrizio Decl., Docket No. 211-1, Ex. A).

[4] Hotfile's Objections to Magistrate Judge Turnoff's Order include the new argument, never presented to the Magistrate Judge, that Warner "should have known" that Hotfile would later assert work product over the spreadsheet. *See* Hotfile's Objections to Magistrate Judge's Order Regarding Plaintiff's Motion to Compel Titov Deposition Exhibit 27 (filed January 27, 2012) at 19-20. Hotfile bases this argument on the fact that Hotfile produced a different document, an email to Hotfile's lawyer in Bulgarian and marked "Attorney Work Product," that Hotfile claims

Warner had received, reviewed, and integrated into its own work product the information contained within the spreadsheet long before Hotfile tried to claim it as work product. *See* Fabrizio Decl., Docket No. 211-1, ¶ 3. Warner's defenses in this case (filed in early November 2011) include the contentions (1) that its takedowns to Hotfile, even if sent in error, nonetheless took down files that were infringing and unauthorized to be distributed by Hotfile in any event, and (2) that Hotfile failed to notify Warner that it believed that some of Warner's notices were mistaken, deciding instead to allow potential errors to accumulate as a basis for a retaliatory lawsuit against Warner.[5]  While those defenses stand on their own independently of the full Titov Exhibit 27 and based on other evidence adduced in discovery, information contained in Titov Exhibit 27 obviously strongly informed both.  Warner also integrated the document into its deposition strategy and preparation. *See* Fabrizio Decl., Docket No. 211-1, ¶ 3.

---

is similar to Titov Exhibit 27. *Id.*  Warner brought this second document to Hotfile's attention and promptly destroyed its copies. *See* Fabrizio Decl., Docket No. 211-1, ¶ 5. Warner will address, in its upcoming Response to Hotfile's Objections to Magistrate Judge Turnoff's Order, Hotfile's argument that the "inadvertent" nature of Hotfile's production of Titov Ex. 27 was apparent "on its face."

[5] *See* Answer and Defenses of Warner Bros. Entertainment, Inc. to Hotfile's Second Amended Counterclaim, Docket No. 163, at 8-9 (emphasis added):

> 3. Hotfile's Counterclaim is barred in whole or in part by the doctrine of unclean hands. Upon information and belief, **the substantial majority of the files that Hotfile claims Warner wrongfully took down were in fact infringing and were not authorized by the copyright owners to be distributed through or hosted on Hotfile.** Any "harm" Hotfile suffered from the removal of those files is limited to Hotfile's losing the ability to profit from the infringement of the works of those other copyright owners. Because of unclean hands, Hotfile's Counterclaim is barred.

> 5. Hotfile's Counterclaim is barred in whole or in part by the doctrines of laches and estoppel. Upon information and belief, **Hotfile knew of the occasional mistaken takedown requested by Warner and never informed Warner, at a time when Warner could have used that information to prevent future errors of that kind and otherwise continued improving the accuracy and reliability of its process for issuing notifications requesting the removal of infringing files.  Instead, Hotfile allowed such errors to continue in order to have something to sue Warner over and with which to embarrass Warner as a response to Warner's copyright infringement claims against Hotfile.**  Because of laches and estoppel, Hotfile's Counterclaim is barred.

Titov's deposition took place in Sofia, Bulgaria the first week of December.  The days between November 28 and December 3 were some of the busiest in this litigation.  They were the last days before the parties embarked on a schedule of 23 depositions in 15 business days.  In the week before Titov's deposition – including in an email sent while Warner's counsel was about to board a plane to Bulgaria – Hotfile deluged Plaintiffs with mass clawbacks, clawing back sixty-four documents by merely listing strings of Bates numbers without any descriptions of the purportedly clawed-back documents.  *See* Fabrizio Decl., Docket No. 211-1, ¶ 8.  As Magistrate Judge Turnoff made clear, attempting to identify and destroy clawed back documents under those circumstances is exceptionally challenging.  *See* 1/13/12 Tr. at 29:16-22 (noting that "[t]he fact is this is a huge complicated case," that the clawed-back document "has been out there for [Plaintiffs'] paralegals and associates and everybody else, the investigators to deal with" and that "[i]t would probably be difficult, if not impossible to find out exactly what use it has been put to . . . .").

On the first day of Titov's deposition – for which Warner's counsel needed to physically carry his deposition exhibits to Bulgaria due to scheduling constraints and the absence of overnight shipping options – Warner used as a deposition exhibit the first 32 pages of the document.  Defendants' lead counsel was given a copy of the document and did not object to the questioning or the introduction of the document on the basis of work product.  *See* Fabrizio Decl. Ex. A & ¶¶ 6-10.  Only after the deposition concluded for the day did Hotfile's counsel claim that the spreadsheet was work product and insist that it be clawed back.

On December 12, 2011, Warner filed a motion to compel production of the clawed-back document on the basis that it was not properly work product, and that any work product protection had been waived, first through Defendants' production of the document (which was not inadvertent) and then again by Defendants' failure to object to its use at the deposition.  *See* Docket No. 180.  Not until the evening of December 23rd – nearly three weeks after the deposition and two weeks after Warner's motion to compel – did Hotfile's counsel raise that Titov Ex. 27 had been part of Hotfile's mass clawbacks in the days leading up to the deposition.  *See* Declaration of Roderick Thompson in Support of Counterclaimant Hotfile Corp.'s Opposition to Warner's Motion to Compel the Production of Titov Deposition Ex. 27 ("Thompson Decl."), Docket No. 206-1, at Ex. 4.

Magistrate Judge Turnoff, after considering extensive briefing and argument at a hearing on January 13th, granted Warner's motion in part and deferred it in part. Noting Warner's argument that the production of the full document had not been inadvertent, the "time lag," and the "use of the documents," 1/13/12 Tr. at 21:11-12, he observed that the Court "would be justified and I think a higher and wiser authority would probably agree that [Warner's] motion should be granted in toto..." 1/13/12 Tr. at 31:9-31:12.[6]

Ultimately, however, the Magistrate Judge's ruling was based on waiver at the deposition, noting that "the bottom line is the cat is already out of the bag already." *Id.* at 31:18-19. Observing that the 32-page excerpt of the document physically marked as an exhibit at Titov's deposition was "part of the deposition that was made a part of the record in this case," *id.* at 18:10-11, he permitted Warner to make use of the excerpt. *See* 1/13/12 Tr. at 32:11-16 (agreeing that Warner "may use the deposition exhibit and the deposition testimony"). He then ordered Hotfile to file a copy of the entire 297-page document with the Court, ruling that the proper procedure to admit the full document would be a motion addressed to the Court. *Id.* at 32:13-16 (agreeing that "if [Warner] want[s] to use the full document, that document is going to be under seal"); *see also* Omnibus Order, Docket No. 227 at 2 ("any party seeking to use such document shall file the appropriate pleading, e.g. a motion in limine for use at trial").

## ARGUMENT

### I.   HOTFILE'S PRODUCTION OF TITOV EX. 27 WAS NOT LEGALLY INADVERTENT.

Although Hotfile undoubtedly waived work product at the deposition (*see* Part II *infra*), Hotfile's waiver preceded the deposition itself. The overwhelming authority dictates that Hotfile's production of Titov Ex. 27 cannot be excused an "inadvertent."

---

[6] As discussed below, Magistrate Judge Turnoff's observation is more than amply supported. Warner had a copy of the document for month than five months before Hotfile clawed it back. Moreover, the second time that Hotfile produced the 297-page spreadsheet, it did so in a production of only 83 documents. Since then Hotfile has clawed back 10 of those 83 documents – or one out of every eight documents from that tiny production. Hotfile cannot credibly claim inadvertence.

**A.     Hotfile Failed to Meet its Burden of Proof in the Proceedings Before Magistrate Judge Turnoff.**

It is well-established that "[w]hen a producing party claims inadvertent disclosure, it has the burden of proving that the disclosure was truly inadvertent." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 850 (E.D. Mich. 2010) (quotation marks omitted); *see also, e.g., Peterson v. Bernardi*, 262 F.R.D. 424, 428 (D.N.J. 2009) (the disclosing party "has the burden of proving that his documents were inadvertently produced"). As one court explained, in a finding directly applicable to Hotfile:

> Although Defendants claimed they inadvertently produced documents, they failed, with the exception of stating the number of documents produced, to support that assertion with facts. Without such information, the Court cannot find that the Defendants met their burden to show either that the disclosure was inadvertent, or that Defendants took reasonable steps to prevent disclosure.

*Comrie v. Ipsco, Inc.*, No. 08C3060, 2009 WL 4403364, at *2 (N.D. Ill. Nov. 30, 2009).

In proceedings before Magistrate Judge Turnoff, Hotfile did not even attempt to meet its burden. Other than reciting the total number of document produced (a number that, as described below, is very misleading), the attorney declaration submitted by Hotfile provided absolutely no information as to what specific efforts were taken to prevent disclosure of allegedly privileged documents, or why those efforts were reasonable in context of the case. *See* Thompson Decl., Docket No. 206-1 ("Thompson Decl.") ¶ 2 (simply reciting number of documents produced).

Courts routinely refuse to find that a production of a privileged document was "inadvertent" under such circumstances. For example, in *Amobi v. D.C. Dept. of Corr.*, 262 F.R.D. 45, 54-55 (D.D.C. 2009) (emphasis added; citation omitted), the court held:

> Defendants do not provide the court with any indication of the methodology used to review documents for privilege, but only vaguely refer to several reviews of the documents to be produced. . . . Hence, the efforts taken are not even described, and there is no indication of what specific efforts were taken to prevent disclosure, let alone any explanation of why these efforts were, all things considered, reasonable in the context of the demands made upon the defendants. Instead, 'the court is left to speculate what specific precautions were taken by counsel to prevent this disclosure.'. . . Hence, defendants do not meet the burden of proving that the privilege was not waived in regards to the memorandum.

*Peterson*, 262 F.R.D. at 429 (emphasis added; brackets in original) is equally applicable:

> Plaintiff's moving papers only mention one step that was taken to prevent
> an inadvertent error: "[a]t each time [document production], plaintiff's
> counsel engaged in a privilege review." … However, plaintiff does not
> state when his review occurred, how much time he took to review the
> documents, what documents were reviewed, and other basic details of the
> review process. The Court does not accept plaintiff's bare allegation that he
> conducted a "privilege review" as conclusive proof that he took reasonable
> steps to prevent an inadvertent production.

*See also, e.g., Figueras v. Puerto Rico Elec. Power Auth.*, 250 F.R.D. 94, 97 (D.P.R. 2008)

(citation omitted) (rejecting claim of inadvertent production because defendant "has provided no

straightforward explanation of the steps taken to ensure that no privileged document would be

produced beyond the perfunctory statement that all documents produced were reviewed by

counsel 'to the best of their ability'").

Here, rather than proffer evidence that its production was truly inadvertent, Hotfile

repeatedly suggested the contrary – that it produced documents without taking reasonable

precautions "because it knew that the Stipulated Protective Order allowed for the prompt and

mandatory return of inadvertently produced documents." Opposition of Hotfile to Warner's

Motion to Compel Titov Exhibit 27, Docket No. 206, at 10; *see also id.* at 3; Thompson Decl. ¶ 7

(similar).[7] That sort of abdication of responsibility turns the concept of "inadvertent production"

on its head.

The bulk of Hotfile's Opposition before Magistrate Judge Turnoff argued that Hotfile did

not subjectively intend to produce Titov Ex. 27 (or the many other clawed back documents).

However, as courts have made clear, and Magistrate Judge Turnoff recognized, a party's

"*subjective intent is not controlling*. All inadvertent disclosures are by definition unintentional."

*Peterson*, 262 F.R.D. at 429 (emphasis added); *see also id.* ("For the purpose of deciding

plaintiff's motion, the Court does not question the sincerity of plaintiff's argument that he did not

intend to produce the documents in question"); 1/13/12 Tr. at 16:7-9 (agreeing that Hotfile's

claim that they "didn't intend to produce it" is "always the case").

---

[7] Having failed to carry its burden before the Magistrate Judge, Hotfile may not seek to
supplement the record now. *See Cincinnati Ins. Co. v. Cochran*, 198 F. App'x 831, 833 (11th
Cir. 2006); *see, e.g., Pigott v. Sanibel Dev., LLC*, No. Civ. A. 07-0089-WS-C, 2008 WL
2937804, *5 n.9 (S.D. Ala. July 23, 2008) ("[i]n reviewing a magistrate judge's nondispositive
ruling, this Court does not consider matters not placed before that judge") (quoting *U.S. Fire Ins.
Co. v. Bunge North America, Inc.*, 244 F.R.D. 638, 641 (D. Kan. 2007)).

Hotfile failed to meet its burden of proving that the production of Titov Ex. 27 was inadvertent. Warner's motion should be granted on that basis alone.

**B.      Hotfile's Production of Titov Ex. 27 Cannot be Excused as "Inadvertent."**

"Courts have not established a bright-line rule for determining whether a document was inadvertently produced." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008). Courts consider a myriad of factors. *United States v. Pepper's Steel & Alloys, Inc.*, 742 F. Supp. 641, 643 (S.D. Fla. 1990). Here, those factors lead to the conclusion that Titov Ex. 27 cannot be considered "inadvertently" produced.

<u>First</u>, Hotfile misleadingly argued in the proceedings before Magistrate Judge Turnoff that its production of over a million documents should excuse its production of Titov Ex. 27. However, Hotfile produced Titov Ex. 27 for a <u>second</u> time on October 14, 2011, months after the bulk of the document production in this case.[8] Hotfile's October 14 production consisted of *a total of 83 documents* – not millions, not thousands, not even hundreds. Moreover, counting Titov Ex. 27, Hotfile *clawed back 10 of those 83 documents*. Fabrizio Decl., Docket No. 211-1, ¶ 4. Thus, Hotfile claims to have "inadvertently" produced about one out of every eight documents from the October 14 production. Titov Ex. 27 is not a one-page document that arguably could have slipped through; it is 297 pages long. Hotfile's claim of "inadvertence" cannot stand. *E.g.*, *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 116 F.R.D. 46, 51 (M.D.N.C. 1987) ("A large number of inadvertent disclosures in comparison to the number of documents reviewed shows lax, careless, and inadequate procedures.").

<u>Second</u>, as noted, Hotfile produced Titov Ex. 27 in two separate productions four months apart. As one court put it, defendant's "'lost in the shuffle' argument would have greater weight had it not twice disclosed the privilege documents in different forms at different times." *United States v. CITGO Petroleum Corp.*, Cr. No. C-06-563, 2007 WL 1125792, at *5 (S.D. Tex. Apr.

---

[8] "The volume of documents involved in the production process is important only if it can be shown to have influenced the mistaken disclosures that were made. For example, if the disclosure in question was at the end of a massive discovery program, but not influenced by it, the narrower context should gauge the pressure under which the client was placed." 2 Paul R. Rice, Attorney-Client Privilege In The United States § 9.74, at 573-74 (2011).

16, 2007); *see also id.* at *4 ("Evidence of multiple disclosures on multiple occasions leads the Court to believe that Citgo did not take reasonable precautions to prevent disclosure.").[9]

<u>Third</u>, Hotfile did not promptly identify and clawback Titov Ex. 27. One version of Titov Ex. 27 was produced more than *five months* before Hotfile sent any clawback notice. Counsel for Warner analyzed and integrated the document into its own work product, including its deposition preparation and the affirmative defenses it asserted in its Answer. Fabrizio Decl., Docket No. 211-1 ¶ 3; Warner's Answer to Second Amended Counterclaim, Docket No. 163, at 8-9. Under these circumstances, courts reject efforts to clawback documents. *E.g., Scott v. Glickman*, 199 F.R.D. 174, 180 (E.D.N.C. 2001) ("[D]isclosure is complete and confidentiality may be lost when the document is turned over and allowed to be copied, digested, and analyzed. In such a case it has been held that the disclosure cannot be cured simply by a return of the documents. The privilege has been permanently destroyed.") (internal quotation marks omitted). As one court found, summing up the present situation, "plaintiffs have had the inadvertently produced communication for over a month and a half. During that time period, plaintiffs came to rely upon that document as evidenced by the use of the document in the deposition of co-defendant Colon. Prohibiting plaintiffs from using the document at this stage in the proceedings would work an injustice upon them because they have already incorporated it into their pre-trial preparation." *Figueras*, 250 F.R.D. at 98.

<u>Fourth</u>, "the number of documents inadvertently produced is . . . highly probative of the reasonableness of the precautions taken by the producing party." *F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 78 (D. Md. 1998). Here, in a matter of a few days, Hotfile asserted that 64 allegedly privileged documents were inadvertently produced. That is not a reasonable number: "While plaintiff states that they did review the documents with counsel before inspection by defendants, *I find it difficult to believe that a thorough inspection was made considering that approximately 100 documents managed to 'slip through the cracks'* and failed

---

[9] That Hotfile claims it treated the spreadsheet inconsistently, withholding some copies but producing others, is not to the contrary. *See* Hotfile's Opposition to Warner's Motion to Compel Titov Exhibit 27, Docket No. 206, at 7 (arguing that Hotfile's withholding of other copies of the document proves inadvertence of production). If anything, Hotfile's inconsistent treatment of the spreadsheet and producing it twice suggests that different reviewing attorneys representing Hotfile had different views as to whether or not the document was work product – which is perfectly consistent with non-inadvertent production of the produced copies, even if Hotfile may have later changed its position upon further consideration of positions taken by Warner.

to be reviewed before inspection." *Prebilt Corp. v. Preway, Inc.*, Civ. A. No. 87-7132, 1988 WL 99713, at *3 (E.D. Pa. Sept. 23, 1988) (emphasis added).

Finally, this is not the first time Hotfile has claimed to have inadvertently produced privileged documents in this case, and these episodes reflect a lack of appropriate care. On July 28, 2011, Plaintiffs' counsel observed three emails produced by Hotfile (HF02159110, HF02159114, and HF02159220) that contained the words "work product" in the subject line. Plaintiffs' counsel alerted Hotfile to the emails, and Hotfile clawed them back under the Protective Order. Yet, in the same October 14 production of 83 documents in which Hotfile produced Titov Ex. 27, Hotfile produced the *same email chains* – with the words "work product" in the subject line – again. Fabrizio Decl. ¶ 5.

## II.     HOTFILE'S WAIVER OF PRIVILEGE AT THE DEPOSITION SHOULD EXTEND TO THE ENTIRE DOCUMENT IN ANY EVENT.

As Magistrate Judge Turnoff correctly noted in granting in part Warner's Motion to Compel, Hotfile waived any work product protection by failing to object at Titov's deposition to the portion of the spreadsheet being used as an exhibit.[10] This waiver should extend to the entire document, and not just to the first 32 (of 297) pages that were physically carried to Bulgaria by Warner's counsel, which are no different in kind from the remainder of the document.

As Warner previously briefed, and Magistrate Judge Turnoff agreed, the use of an excerpt of Titov Ex. 27 at Titov's deposition without objection from counsel meant that "the cat is out of the bag already" and that work product over the exhibit had been waived. 1/13/12 Tr. at 31:17-19. An excerpt of Titov Ex. 27 was marked as an exhibit during the Hotfile Rule 30(b)(6) deposition and Defendant Titov testified about it without objection. *See* Fabrizio Decl., Docket No. 211-1, ¶¶ 9-10 & Ex. A (Titov dep.) at 167:23-173:2. Hotfile's lead counsel defended the deposition and was given a copy of the exhibit at the same time as the witness. Hotfile's counsel did not raise a single objection to the use of the document or the questioning on it (except as to form). *Id.* Mr. Titov gave testimony about Ex. 27 that undermines Hotfile's counterclaim against Warner, confirming that his understanding of Titov Ex. 27 is that nearly all the files mistakenly noticed by Warner were in fact copyright infringing. *Id.* at 169:7-15. Hotfile did not

---

[10] Hotfile has further waived any claim of work product over the portion of the document used at the deposition by failing to seek a stay of Magistrate Judge Turnoff's Order, as Warner has now had possession of the document without restrictions on its use or analysis since January 13th. *See* 1/13/12 Tr. at 34:7-9 (order takes effect immediately).

assert a work product objection until after the deposition had concluded for the day; in other words, not until after Hotfile had time to evaluate the implications of Mr. Titov's testimony. It is hard to conceive of a clearer case of waiver. Although Magistrate Judge Turnoff deferred a ruling on waiver with respect to the full, 297-page spreadsheet, there is no reason the complete document should be treated any differently for waiver purposes than the first 32 pages used as an exhibit at the deposition.

## CONCLUSION

Plaintiffs respectfully request that their motion be granted, and that the Court order the parties to file their Opposition and Reply briefs, respectively, on the same schedule as Hotfile's Objections to Magistrate Judge Turnoff's Order (February 10th and 17th, 2012, respectively).

Dated: January 31, 2012

Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 461-6880
Facsimile:  (305) 461-6887


MOTION PICTURE ASSOCIATION
 OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax:  (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile:  (202) 639-6066

*Attorneys for Plaintiffs*

12

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(a)(3), U.S. District Court for the Southern District of Florida, counsel for Warner has conferred with counsel for Defendant Hotfile Corp. in a good-faith efforts to resolve the issues raised in this Motion without court action, but have been unable to do so.

DATED:  January 31, 2011

By: /s/ Karen L. Stetson

Karen L. Stetson

GRAY-ROBINSON, P.A.
1221 Brickell Avenue, 16th Floor
Miami, FL 33131
Telephone:  (305) 461-6880
Facsimile:  (305) 461-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax:  (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone:  (202) 639-6000
Facsimile:  (202) 639-6066

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants.*

_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*

_____/

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 31st day of January, 2011, I served the following documents on all counsel of record on the attached service list by means of the email addresses listed on the Court's ECF System:

**Warner's Motion And Memorandum Of Law To Permit The Use At Trial Or Summary Judgment Of Titov Deposition Ex. 27 In Its Entirety**

**Warner's Motion and Memorandum of Law to File Under Seal**

I further certify that I am admitted *pro hac vice* to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Luke C. Platzer
Luke C. Platzer

## SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*


BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*

15