

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

### DECLARATION OF SCOTT A. ZEBRAK IN SUPPORT OF WARNER BROS. ENTERTAINMENT INC.'S MOTION FOR SUMMARY JUDGMENT ON HOTFILE CORP.'S COUNTERCLAIMS

[CONFIDENTIAL]

[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

I, Scott A. Zebrak, hereby declare as follows:

1. I am a partner at the law firm of Oppenheim + Zebrak, LLP, and have been retained by the plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment Inc. ("plaintiffs") to investigate, analyze, and provide my conclusions regarding the infringement status of certain content files available on www.hotfile.com ("Hotfile"). The statements made in this declaration are based on my personal knowledge, including as to information provided to me by personnel working under my supervision on this case. If called to testify, I would testify based on the best of my knowledge, information, and belief, as follows:

2. I am a practicing attorney with extensive experience and familiarity analyzing copyrighted works and online infringement. For the past 15 years, I have represented and advised clients on a range of matters involving copyright, trademark, and other intellectual property issues, including those that arise in an online or digital environment. Among other things, my experience includes serving for roughly four years as Vice-President, Litigation & Legal Affairs, at the Recording Industry Association of America, a trade group that represents the U.S. recording industry, and serving as Deputy General Counsel & Director of Intellectual Property at CoStar Group, Inc., a publicly-traded provider of online commercial real estate information services, where I worked for approximately six years. Based on my experience, I am extensively familiar with practices for analyzing works and determining their ownership and copyright status. Further details of my professional history can be found on the résumé attached hereto as Exhibit A. I have not provided testimony in any case in the last four years. Other than the first phase of my work for my initial report, which was billed based on a flat fee of $45,000 (with work above 200 hours billed pro rata), I am being compensated at $350 an hour.

3.     Plaintiffs' counsel asked me to investigate, analyze, and provide my conclusions regarding the copyright infringement status of a set of 890 files. I understand these 890 files to have been the subject of takedown notices sent by plaintiff and counterdefendant Warner Bros. Entertainment Inc. ("Warner") to Hotfile. I also understand that these 890 files are the subject of Hotfile Corp.'s counterclaim against Warner in this litigation, and they are listed on Exhibits A through D of the Second Amended Counterclaim. More specifically, my role was to conduct an investigation to identify each file and its copyright owner, along with performing research and analysis to identify files that are "highly likely infringing." When I use the term "highly likely infringing" to describe a file, it means that I determined that the file contained copyrighted content and it is highly likely that the content was not authorized for free and unrestricted distribution on Hotfile by its copyright owner.

**Background of Investigation and Analysis.**

4.     As background, each of the 890 files I analyzed is identified by a unique "Hotfile URL link." As the name suggests, a Hotfile URL link is the URL link that Hotfile creates and assigns to a file once the user uploads that file to Hotfile. The Hotfile URL link allows any Internet user that comes across the link to download the file from Hotfile by clicking on that URL link or pasting that URL link into the user's internet browser. For example, one of the Hotfile URL links listed on Exhibit C is the Second Amended Counterclaim is http://hotfile.com/dl/107360654/32a6ef1/Team.America.part1.rar.html. Until Hotfile removed that file, any user could download it by pasting that Hotfile URL link into the user's browser, which would take the user to a page on Hotfile to download that content. Users can find Hotfile URL links posted on webpages throughout the internet, including on websites that index Hotfile URL links as well as links from other similar sites.

5. In terms of my review and analysis to identify counterclaim files that are highly likely infringing, I investigated and analyzed each of the 890 counterclaim files using a rigorous, evenhanded, and conservative process that I describe in more detail below. If I had concerns over whether distribution of a particular file through Hotfile was infringing, I did not classify that file as "highly likely infringing." In conducting my investigation, I was assisted in certain operational matters by a team of assistants I supervised, who were helpful, for example, in opening files or conducting internet searches for webpages on which Hotfile URL links were posted. I ultimately conducted my own review and formed my own conclusions regarding each file's infringement status.

6. For each of the 890 counterclaim files, I began by attempting to identify the content of the file. In most of the cases, I had the content file (which I understand to have been obtained from Hotfile) available for review, and I made reasonable efforts to open and play or view the content files. I also examined the "metadata" for each of the files – the information about the file obtained from Hotfile. For example, I reviewed the name of the file and other abbreviations in the file name (such as "DVDRip," which suggests that the file was a copy of a movie ripped from a DVD). I also searched for webpages where the Hotfile URL link for the file was made available, and identified many instances where Hotfile URL links to the content were still available. Those webpages containing the Hotfile URL link often contained descriptions of the content file, as well as cover art and screenshots.

7. After identifying each counterclaim file, I researched and investigated the copyright ownership of each file and whether the owner had authorized the work for free and unrestricted distribution through Hotfile. In making the determination of the file's authorization status, I considered a number of factors, including but not limited to: whether the content was

subject to Terms of Use that restricted its distribution; whether the content was subject to Terms of Use that authorized its distribution to other users; whether the content included a copyright notice; whether the content owner monetized distribution of the content in a manner inconsistent with the free and unrestricted distribution of the content through Hotfile; whether distribution of the content would constitute a fair use under United States copyright law; and whether the copyright owner gave any indication that the file was authorized for free and unrestricted distribution. In reviewing the counterclaim files, I examined whether the file appeared to be less than full length. In fact, for the video content files I classified as "highly likely infringing," I found that the overwhelming majority were full-length or otherwise substantial portions of the content, not short promotional clips or trailers. Based on the evidence I reviewed and analyzed, I classified a file as "highly likely infringing" only if I determined that the file contained copyrighted content and it is highly likely that the content was not authorized for free and unrestricted distribution on Hotfile.

8. Overall, in reaching my opinions and conclusions, I relied upon my knowledge and experience, as well as publicly available resources and other research that I have outlined in my disclosures and deposition testimony in this case. In investigating and identifying the counterclaim files and their infringement status, I consulted a variety of sources, including reliable Internet databases that contain information on copyright ownership and distribution. Some key sources of information for my analysis in this case include, but are not limited to: the Internet Movies Database at www.imdb.com, the All Music Guide at www.allmusic.com, the Internet Adult Film Database at www.iafd.com, and online retailers such iTunes and Amazon.com that provide information about the ownership and distribution of certain works as

well as whether a particular work is being commercially exploited. I also reviewed various corporate websites that provided information about the identified content.

9. After making my assessment of the infringement status of each of the counterclaim files, I did additional work to test and ultimately corroborate my infringement determinations. One way I did that was by checking information provided by Dr. Ian Foster using Hotfile's records that shows whether there was a "hash match" between the counterclaim files and a file that had been removed for reasons associated with copyright infringement. A "hash match" file is an identical copy of the counterclaim file – in other words, it has the same unique "hash" value. I also checked information provided by Dr. Foster using Hotfile's records that shows whether there were takedown notices that had the same title as the counterclaim file, which indicates that other copies of the same work had been identified as infringing. In certain circumstances, I also included in my consideration whether the identified copyright owner had sent takedown notices to Hotfile on other works, again using information provided by Dr. Foster using Hotfile's records. This information on takedown notices provided by Dr. Foster was organized and summarized by plaintiffs' counsel for presentation on Exhibit B (which I describe in more detail below).

10. During my second deposition in this case, which took place following the production of my rebuttal report, defendants' counsel provided me with an affidavit from the purported copyright owner of one of the content files I examined, called "PHP Video Tutorials." That content is available by streaming by clicking on a link on the copyright owner's website (www.phpvideotutorials.com), and is monetized by the copyright owner on his website by a solicitation for donations. The site also contains a copyright notice. As a result, in the course of my review, I had concluded that the content was highly likely infringing. The affidavit supplied

to me by defendants' counsel purports to state that the copyright owner has no objection to sharing the identified content through Hotfile. I have a number of unanswered questions about that affidavit (which I received for the first time in the deposition on Jan. 20, 2012). At my request, plaintiffs' counsel has asked defendants' counsel to provide contact information for the affiant, but plaintiffs' counsel has not yet received it. At this time, I continue to believe that it is highly likely that the content was infringed through distribution on Hotfile. I note that the affiant does not state that he had authorized its distribution on Hotfile prior to it occurring. Nevertheless, out of an abundance of caution, I have removed my "highly likely infringing" classification of that file (which is available in multiple parts) for the time being.

**Conclusions About the Counterclaim Files.**

11. Attached hereto as Exhibit B is a chart that lists the 890 counterclaim files and summarizes my findings. In Exhibit B, I provide the Hotfile URL link for each file, the Exhibit to the Second Amended Counterclaim on which it is listed, and the identified title and copyright owner, and I note the files I concluded to be highly likely infringing. In Exhibit B, I also include other data that I understand Dr. Ian Foster derived from defendants' data. That additional data includes the following fields: (a) the date and time of Warner's takedown notice for the Hotfile URL link, (b) whether other takedown notices were sent on files with the same "hash," as I explained in paragraph 9, (c) whether other takedown notices were sent on files that had the same title as the work in the counterclaim file, as I explained in paragraph 9, (d) whether other takedown notices were sent by the copyright owner of the counterclaim file I identified, as I explained in paragraph 9, (e) the numerical user ID assigned by Hotfile to the user who uploaded the file, (f) the number of "strikes" Hotfile assigned to the uploading user after receiving an infringement notice on that uploading user's file, (g) the number of days on which Hotfile

7

received an infringement notice on that uploading user's files, (h) the number of unique days after February 18, 2011 (the date on which Hotfile began assigning strikes) on which Hotfile received an infringement notice for one of the counterclaim files, (i) whether the uploading user was suspended for copyright infringement, and (j) whether the user was a "Premium" user.

12. For the Court's convenience, the 890 files in Exhibit B have been ordered to group them according to certain categories, which I understand correspond to the way that these files and their uploading users are considered in analyzing the damages calculation in this case.

13. Files 1 through 24 (24 files) are duplicate Hotfile URL links that are listed twice on the Counterclaim exhibits.

14. Files 25 through 43 (19 of the remaining files) are files that I identified as containing content for which Warner has indicated that it owns the copyright and has not authorized distribution through Hotfile.

15. Files 44 through 314 (271 of the remaining files) are files that I have identified as containing content for which the copyright is owned or controlled by Electronic Arts, Inc.

16. Files 315 through 791 (477 of the remaining files) are files that I otherwise determined to be highly likely infringing.

17. For files 792 through 819 (28 of the remaining files), based on my review of Dr. Foster's data, the Warner takedown notice was sent prior to Feb. 18, 2011. (My understanding is that Hotfile therefore did not assign a "strike" for that notice.)

18. For files 820 through 828 (9 of the remaining files), the uploading user was never terminated, according to the data provided by Dr. Foster.

19. For files 829 through 871 (53 of the remaining files), the uploading user had three or more Hotfile-assigned strikes, or Hotfile received takedown notices on the user's files on three

8

or more days, not counting any Warner counterclaim notices, according to data provided by Dr. Foster.

20.     For files 872 through 890 (the nine remaining files), these were uploaded by six unique users and none of them were Premium users at the time of termination, according to data provided by Dr. Foster. I have also determined that four of these six users uploaded to Hotfile other files that I identified as being highly likely infringing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 9, 2012, at Washington, DC.

_____
Scott A. Zebrak