**FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF



DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,.

 *Counterdefendant*.
_____/

**HOTFILE'S REPLY IN SUPPORT OF OBJECTIONS TO
MAGISTRATE JUDGE'S ORDER REGARDING PLAINTIFFS'
MOTION TO COMPEL TITOV DEPOSITION EXHIBIT 27**

**FILED UNDER SEAL** CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

## I. INTRODUCTION

Warner cannot properly use evidence obtained in violation of orders of this Court. Warner examined Hotfile at deposition regarding a document which an Order required it to destroy. It then filed a motion regarding the document beyond the deadline ordered by the Court, and submitted the document under seal in further defiance of a Court Order. It did not adhere to the ethical obligation to return an opponent's attorney work product. It then argued in court that "the circumstances surrounding the production make it legally [not] inadvertent," even though the Court had forbidden precisely such an argument. Compounding the impropriety of its Motion, Warner relies on eleven cases deprived of any continuing precedential value by enactment of Federal Rule of Evidence 502 in September 2008 and three cases dealing with Protective Orders which lacked the operative "clawback" provision at issue here. The only post-2008 case cited by Warner analyzing a clawback provision actually ruled in favor of Hotfile's position here. Because Warner's Motion flouted so many mandatory legal and ethical obligations, and because it relied upon an apparent failure to even consult current law, it was clearly erroneous and contrary to law.

## II. ARGUMENT[1]

### A. Warner Cannot Properly Use Evidence Obtained In Violation Of This Court's Orders, Rules, And Ethical Obligations

"[W]here attorneys or parties obtain evidence in violation of the court's rules or orders, the court may exercise its power to enforce those rules and orders by excluding the evidence wrongfully obtained." *United States v. Venske*, 296 F.3d 1284, 1291 (11th Cir. 2002). Here, Magistrate Judge Turnoff did not even address Warner's repeated violations of the Protective Order, the Federal Rules, and the Florida Rules of Professional Conduct, as even Warner's counsel admits. *See* Obj., Ex. 2 to Ex. A ("The court did not even give them the time of day"). Having ignored at least four independently-sufficient reasons to deny Warner's Motion, Magistrate Judge Turnoff handed down an order clearly erroneous and contrary to law.

### 1. Warner Violated The Protective Order By Refusing To Destroy Exhibit 27 Within Five Days Of Receiving Hotfile's Clawback E-Mail

---

[1] To minimize repetition, Hotfile assumes familiarity herein with the facts set forth in its Opposition To Plaintiff Warner's Motion To "Use" Titov Exhibit 27 (filed 2/14/12) (hereinafter, "Opp. Warner Mot. Use").

1

**FILED UNDER SEAL** CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

Hotfile clawed back Exhibit 27 on November 28, 2011. Paragraph 20 of the Protective Order required Warner to destroy or return all copies of that document within five court days. *See* Protective Order [Docket No. 68] ¶ 20. Federal Rule of Civil Procedure 26(b)(5)(B) – explicitly incorporated into the Protective Order – states that, upon receiving notice of an inadvertently-produced document, a party "***must not use or disclose the information until the claim is resolved***." Nonetheless, Warner did not destroy the document, but rather used it as a deposition exhibit one week later on December 5, 2011. Thus, Warner violated the Protective Order in eliciting testimony regarding a clawed-back document which Warner remained under an Order of this Court to destroy and not to use. This document should be excluded from evidence.

Warner argues that Hotfile provided a verbal extension of the five-day deadline to destroy Exhibit 27. *See* Opp. at 11-12. Even if the parties could postpone court-ordered deadlines without court consent, Warner cannot possibly argue that an extension permitted it to freely use the document pending destruction. In fact, the declaration of Warner's counsel makes clear that Warner knew that it remained obliged by Court Order to destroy Exhibit 27 prior to any further use. Declaration Of Duane C. Pozza In Support Of Warner's Responses To Hotfile's Objections ¶ 5 (noting that, "[p]utting aside any [arguments] about Warner's *use* of the document," the "deadline for *certifying destruction* of the document at issue was therefore Monday, December 12, 2011."). Whether Warner deleted Exhibit 27 by December 5, 2011 or December 12, 2011, ***it indisputably remained under an Order of this Court to not use the document in deposition on December 5, 2011***. Protective Order ¶ 20; Fed. R. Civ. Pr. 26(b)(5)(B). Warner does not even attempt to refute this argument. Opp. at 11-12.

Instead, Warner's counsel blames Hotfile for making him too busy to return or delete Hotfile's clawed-back document. *See* Opp. at 5, 12 (denouncing Hotfile's clawback as "sandbagging" since "[t]he days between November 28 and December 3 were some of the busiest in this litigation."). However, it is not particularly time-consuming or arduous to delete a document. Moreover, it is difficult to believe that one of the world's largest entertainment corporations could not muster the support necessary to accomplish the task, even if two of its lawyers were "readying to board flights" to travel for Hotfile's deposition. *Id.* Additionally, Warner had itself clawed back a significant volume of documents prior to its deposition after Hotfile's counsel had departed by airplane for the deposition. Opp. Warner Mot. Use at 7 & Ex. A. In any event, Hotfile remains unaware of any authority for the proposition that parties may

2

**FILED UNDER SEAL**   CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

ignore Orders of this Court if otherwise occupied. This justified denial of Warner's Motion.[2]

### 2. Warner Violated The Protective Order By Filing Its Motion To Compel And Submitting The Document Under Seal More Than Five Days After The Clawback Notice

The Protective Order states that a party seeking to compel production of a clawed-back document must do so within five days of notification, and may only submit the document under seal within five days of the clawback. Protective Order ¶ 20. Here, there is no dispute that Hotfile clawed back the document on November 28, 2011 – fourteen days before Warner filed its motion to compel and submitted the document under seal to the Court.

The requirement that parties bring motions over clawed-back documents within five days prevents parties from compounding harm caused by discovery disputes. For example, absent Warner's violations of the Protective Order, there would be no testimony regarding Exhibit 27 to dispute. The provision also ensures timely redress of disputes. *See* Fed. R. Civ. P. 1 (Rules exist "to secure the just, speedy, and inexpensive determination of every action and proceeding").

Untimeliness alone sufficed to defeat Warner's Motion. In *Bro-Tech Corporation v. Thermax, Inc.*, No. 05-CV-2330, 2008 WL 5210346 at *1-2 (E.D.Pa. Dec. 11, 2008), the parties agreed to a five-day deadline for filing motions objecting to clawback requests. Finding that "the terms of the Clawback Agreement were negotiated by the parties, incorporated by them into a formal Stipulation, and approved by a subsequent Order of the Court," the Court denied Plaintiffs' untimely motion to use the contested document based on tardiness alone. *Id.* at *2. No credible distinction exists between *Bro-Tech* and the instant case.

Warner argues that the Protective Order only requires submission of the disputed document under seal within five days of clawback, and that a motion contesting that clawback may be made later. Opp. at 13. This argument defies logic. No credible reason exists why a party would submit a document under seal to the Court without any explanation and then move

---

[2] Warner's counsel asserts that the document had become so embedded in his work product that he "could not locate copies of the document simply by going to a file and searching for Bates numbers." Plaintiffs' MTC Reply [Docket No. 211] at 4; *see* Opp. at 12. However, Warner's counsel produced a copy of a clawed-back document at deposition, marked it as an exhibit, and asked Hotfile over thirty questions about it. It is fair to conclude that, when he violated the Protective Order, the clawed-back document was top-of-mind. In any event, the Protective Order does not excuse non-compliance if inconvenient or unintentional. Warner remained under an Order of this Court to *not* use at deposition the very document it used at length.

to compel its production a month later – after recollection of the destroyed document had faded from memory. The fact that the Protective Order permits the party to retain record of the document's Bates number, author, recipients, and date merely means that the party need not draft its reply memorandum and prepare for any oral argument in a vacuum of information. It does not mean that the party may postpone motion practice for thirty days based solely on whim. *Id.*

Even torturing the Protective Order, Warner cannot find any credible excuse for its belated filing of Exhibit 27 under seal more than five days after Hotfile's clawback. Nonetheless, Warner does not even forthrightly confess this violation, only conceding that Exhibit 27 "*arguably* should not have been provided to Your Honor." Plaintiffs' Reply Mem. Supp. Mot. Compel [Docket No. 211] at 2. Instead, Warner argues that it *could have* submitted in timely fashion a *different copy* of Exhibit 27 under seal, since Hotfile inadvertently produced the same document under two different Bates numbers: HF02866338 (*i.e.*, Ex. 27) and HF00036777. Opp. at 14.

Whether Warner *could* have submitted HF00036777 instead of HF02866338 is immaterial: Warner used HF02866338 at the Titov deposition and submitted the same to the Court. In any event, Hotfile's November 28 e-mail explicitly clawed back "all copies" of the document, of which HF02866338 and HF00036777 are identical copies. Thus, both were recalled on November 28, 2011, making the deadlines the same for either copy.[3]

Warner then argues that this Court cannot properly question Magistrate Judge Turnoff's ruling on Warner's untimely motion because Magistrate Judge Turnoff had discretion to disregard the Presiding Judge's five-day deadline for bringing motions to compel. Opp. at 12-13. However, magistrate judges cannot overrule district court judges. Fed. R. Civ. P. 72(a). Moreover, Warner cannot credibly impose an "abuse of discretion" standard to Magistrate Judge Turnoff's ruling where the applicable standard of review is indisputably "clearly erroneous or

---

[3] Warner argues that it could properly keep HF00036777 until five days after clawback of that specific Bates-numbered document, even if Hotfile previously clawed back the identical document HF02866338 and "all copies [thereof]." Opp. at 14 n.11. Warner ignores Rule 26(b)(5)(B), explicitly incorporated into the Court's Protective Order. *See* Fed. R. Civ. P. 26(b)(5)(B) ("After being notified, a party must promptly return, sequester, or destroy *the specified information* and any copies it has"). Anticipating that parties like Warner might try to elevate form (*i.e.*, different Bates numbers) over substance (*i.e.*, the identical content of documents), the Protective Order requires receiving parties to destroy all copies of protected *information* – regardless of Bates number.

**FILED UNDER SEAL**                                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

contrary to law." *Compare* Opp. at 13 ("Hotfile fails to show that Magistrate Judge Turnoff abused [his] discretion here") *with* Fed. R. Civ. P. 72(a) ("The district judge in the case must . . . set aside any part of the order that is clearly erroneous or is contrary to law."). In any event, Magistrate Judge Turnoff gave no consideration to Hotfile's timeliness argument, as Warner conceded in gloating over the ruling. Obj., Ex. 2 to Ex. A ("The court did not even give [these arguments] the time of day" ).) Warner's Motion should have been rejected for this alone.

### 3. Warner Violated An Ethical Obligation In Exploiting Exhibit 27

Florida Rule of Professional Conduct 4-4.4(b) provides that "[a] lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently [produced] shall promptly notify the sender." Here, Warner admits to using Exhibit 27 for five months after production of the document, even though: (1) no reason existed for Hotfile to have a list of wrongful takedowns by Warner created after the start of litigation and immediately after initiation of counsel's counterclaim investigation other than to assist counsel in preparation of litigation; (2) no other list of wrongful takedowns existed in Hotfile's possession other than those by Warner, with whom Hotfile was in litigation; and (3) Warner knew for four months that another compilation of links taken down by Warner and circulated by Hotfile thirty-seven minutes after Exhibit 27 between the same four individuals and marked "attorney work product" had already been clawed back. Opp. Warner Mot. Use at 15-16. Rather than adhere to its ethical duty, Warner exploited Hotfile's inadvertence by embedding Hotfile's work product in Warner's trial preparation materials. Opp., Ex. C at 29:16-22 (Warner transmitted Hotfile's work product to "paralegals and associates and everybody else, [including] investigators").

Warner's counsel seeks to evade review of this subject by arguing that it was not raised with Magistrate Judge Turnoff. Opp. at 16. However, counsel repeatedly emphasized in the prior proceedings his embedding of Hotfile's protected information into Warner's trial preparation materials. Reply Supp. Mot. Compel [Docket No. 211] at 3-4; Opp., Ex. C at 19:13-17. In any event, counsel's gloating statements after Magistrate Judge Turnoff's ruling belie his current claim. *See* Thompson Obj. Decl., Ex., 2 ("***you [Hotfile] accused me of multiple violations of . . . my ethical obligations in the clawback motion – repeatedly.***").

Warner then asserts that it thought that Hotfile *intended* to produce Exhibit 27 on June 17, 2011 to support a motion to compel that it would file against Warner five months later on

5

FILED UNDER SEAL                                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

November 16, 2011. Opp. at 16; *see* Hotfile's Mot. Compel [Docket No. 164]. First, the argument is facially implausible. Second, no party disputes (or has ever disputed) that nonlawyers may create work-product at the direction of counsel. Hotfile argued previously that Warner may not conceal *facts* under the guise of work product, and could not refuse to produce data showing its wrongful takedowns on Hotfile's website simply because its litigation counsel also requested such information. *See* Docket No. 164 at 5-7. This does not suggest that Hotfile intentionally produced one copy of its work product in June (while withholding four other copies on privilege grounds) in hopes of obtaining Warner's work product in November. Third, Exhibit 27 differs from the data at issue in Hotfile's prior motion. Hotfile's document reflects a list of files to consider as a basis for a counterclaim, and thus strongly implicates counsel's thought processes in choosing some files amongst others. Hotfile's Opp. Mot. Compel [Docket No. 206] at 7 n.2. In contrast, Warner's data simply reflects the *facts* of takedowns of files not owned by Warner. There is nothing inconsistent in Hotfile's motion to obtain Warner's data while protecting its own work product.

Warner then emphasizes that, even though Hotfile withheld four copies of Exhibit 27 as protected, it produced Exhibit 27 twice, thus supposedly establishing the non-protected status of the document. However, Warner itself made identical errors resulting in clawback demands four months apart regarding the same information. Hotfile's Opp. Mot. Use at 7, 10. Like Hotfile, Warner blamed its error on the speed of discovery in this case. *Id.*

Warner then argues that Hotfile's lead counsel did not recognize the document as protected in deposition. Opp. at 17. Apart from the fact that Hotfile's counsel repeatedly objected to questioning on this subject, *see infra* Part II.C, Hotfile reasonably did not expect Warner to violate the Protective Order.

Warner asserts that its counsel remained blind as to the relationship between Exhibit 27 and HF02159110, an e-mail between the same four individuals also compiling Warner links sent thirty-seven minutes later. Opp. at 17. Although Warner insists that "HF02159110 is in Bulgarian," in fact the subject line "Prepared at the Direction of Counsel – Warner bros account misuse" is in English – **as is all but a single half-page of the remaining 3½-page document**. Obj., Ex. 1 to Ex. A. Moreover, Warner insists that it promptly destroyed HF02159110, preventing any association with the "WB Links" document. Opp. at 17. However, as Warner notes elsewhere, Warner maintains information on the date, time, authors, and recipients of

6

**FILED UNDER SEAL** CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

clawed-back documents – the very information necessary to alert Warner to the protected nature of Exhibit 27. *See* Opp. at 13.[4]

This Court should not reward counsel's ethical flexibility. Again – independent of any other violation of this Court's Orders – this wrongdoing warranted denial of Warner's motion.

### 4. Warner Violated The Protective Order By Relying On The Circumstances Of Hotfile's Production As The Basis For Its Motion

The Protective Order states that a party seeking to compel production of a clawed-back document "may not assert as a ground for the entering of [an order compelling production] the fact or circumstances of the inadvertent production." Protective Order ¶ 20. "Under the prior case law [before the promulgation of Federal Rule of Evidence 502 in 2008], reaching the conclusion that a document had been 'inadvertently produced' required analysis of the *circumstances* surrounding the production, including the number of documents produced in discovery and the care with which the pre-production document review was performed." *Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1036-1037 (N.D. Ill. 2009) (emphasis added). However, "a clawback arrangement involves the return of documents ***without waiver irrespective of the care taken by the disclosing party***." *U.S. v. Sensient Colors, Inc.*, 2009 WL 2905474, at *2 n.6 (D.N.J. Sept. 9, 2009) (emphasis added). Thus, the Protective Order expressly forbade Warner from asserting that Hotfile lacked due care in producing Exhibit 27. Yet this is all Warner did.

In its final brief to Magistrate Judge Turnoff, Warner proffered no argument *other than* arguments based on Hotfile's supposed carelessness. *See* Warner MTC Reply [Docket No. 211] at 4-11 (contending that Hotfile made its production "without taking reasonable precautions").[5] Warner then confessed at oral argument that its assertion of Hotfile's carelessness turned solely on the "circumstances" of Hotfile's production. *See* Opp., Ex. C at 16:15-18 ("It is not the fact

---

[4] Warner then asserts that Hotfile testified at deposition that the document was created "before Hotfile's lawyers became involved at all." Warner Obj. Resp. at 16, 4 n.2 (citing Titov Dep. [Docket No. 211-1] at 167:2-16, 167:23-168:12). ***This is demonstrably false.*** The cited passages make no mention of when counsel initiated the investigation. The record stands undisputed that Hotfile's counsel directed the initiation of the investigation on March 2, 2011 – prior to the March 10, 2011 date of the "WB Links" Document. Thompson Opp. Decl. ¶ 10.

[5] Following Hotfile's showing of the unintentionality of its production of Exhibit 27 in its Opposition brief (*e.g.*, Opp. Mot. Compel Exhibit 27 at 7), Warner abandoned its argument that Hotfile had intentionally produced its work product. Mot. at 4.

7

**FILED UNDER SEAL**  CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

that they produced [the document] that makes it not inadvertent. It is the fact that all of the *circumstances* surrounding the production that make it legally [not] inadvertent.").

Despite the unambiguous prohibition in the Protective Order against mentioning the circumstances of production in any motion, Warner argues that it may argue the circumstances here because of the Protective Order's ensuing statement that "[n]othing . . . shall preclude a party from arguing that the production of the allegedly inadvertently produced document was not inadvertent." Opp. at 15. Warner would have one sentence eviscerate the other. *Id.* In fact, the Protective Order permits Warner to argue that Hotfile intentionally disclosed a document. *See* Fed. R. Civ. P. 26(b)(5)(B) (Adv. Comm. Notes 2006) (stating that, in most circumstances – *e.g.*, absent an *intentional* waiver in support of an "advice of counsel" defense – "a party who receives information under such an arrangement cannot assert [waiver]"); Fed. R. Evid. 502 (Adv. Comm. Notes); *Coburn*, 640 F. Supp. 2d at 1036-1037 ("Rule 502 contrasts a waiver that is *intentional* with a disclosure that is *inadvertent*."). Arguing intentionality does not permit Warner to attack Hotfile based on the circumstances resulting in Hotfile's production.

The basis for Warner's error appears to be its reliance on outdated cases. Rule 502 of the Federal Rules of Evidence became effective on September 19, 2008. Fed. R. Evid. 502 (Adv. Comm. Notes). In cases involving clawback provisions, courts no longer analyze the circumstances or reasonableness of production, but instead consider the intentionality of the production. *E.g., Rally Mfg., Inc. v. Federal-Mogul Corp.*, No. 10-23791-CIV, 2011 WL 2938270, at *4 (S.D. Fla. July 21, 2011); *Rajala v. McGuire Woods*, 2010 WL 2949582 at *3 (D. Kansas July 22, 2010); *see* Fed. R. Evid. 502(d)-(e) (Adv. Comm. Notes). Here, as if failing to simply look up the current law, Warner relies on cases either predating Rule 502 or lacking analysis of any clawback provision. In the one case cited by Warner which analyzed a clawback provision, the court ruled ***against*** waiver. *Board of Trustees v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 851-52 (E.D. Mich. 2010). Had Warner not misled Magistrate Judge Turnoff into applying the wrong legal standard, the Motion would not have been granted.

  **B.**  **The Rules Explicitly Preserve Hotfile's Claim Of Work-Product Protection Pending Judicial Resolution – Rendering Facially Invalid Warner's Assertion Of Post-Hearing Waiver**

A party "***must not use or disclose [clawed-back] information until the claim is resolved.***" Fed. R. Civ. Pr. 26(b)(5)(B); *see* Protective Order ¶ 20. Nonetheless, pending resolution of both this Objection and a related motion by Warner to use the document in

8

summary judgment proceedings, Warner filed a motion for summary judgment just days ago based on Exhibit 27. *See* Warner Bros. Statement Of Uncontroverted Facts Supp. Mot. Summ. Judg. (filed 2/10/12) at 4. Warner's behavior now openly flouts the Protective Order.

Warner argues that Hotfile waived the privilege over Exhibit 27 in the past four weeks by failing to seek a stay of Magistrate Judge Turnoff's ruling. Opp. at 7-8. However, Rule 26(b)(5)(B) states that a party in Warner's position may not use clawed-back information until the claim of protection is resolved, and here Hotfile filed timely objections to Magistrate Judge Turnoff's ruling. No case cited by Warner states that a claim is "resolved" before the Presiding Judge can even act, and before an Objection is even fully briefed. Opp. at 9 n.7. The fact that Hotfile did not seek to ***stay*** Magistrate Judge Turnoff's ruling did not make the issue ***resolved*** under the Rules. Warner cannot credibly dispute that a decision only "becomes final at the conclusion of direct review or the expiration of the time for seeking such review." *Gonzalez v. Thaler*, 132 S.Ct. 641, 647, 653 (2012) (citation omitted). Rather than proving waiver by Hotfile, Warner's recent behavior only violates the Protective Order – again.

Warner also argues that Hotfile waived work-product protection because the court reporter maintains a copy of Exhibit 27. Opp. at 8. No serious dispute exists that the court reporter would expunge any record of Exhibit 27 if Warner would join Hotfile in requesting its destruction. Indeed, the Protective Order obligates Warner to do so. Protective Order ¶ 20. Warner cannot credibly fault Hotfile for Warner's inaction.

C. **Hotfile Properly Objected To Warner's Improper Use Of The Document At Deposition**

Without citing any case law, Warner argues that Hotfile waived any work-product protection for Exhibit 27 at deposition by only objecting before and after Warner's questioning, and not during the questioning. Opp. at 9-10. Even setting aside the fact that no obligation existed to object to an examination already in violation of this Court's Order, Warner is wrong.

A party does not waive work-product protection if, upon learning of the protected nature of document after deposition questioning, the party promptly objects. *See Datel Holdings Ltd. V. Microsoft Corp.*, 2011 WL 866993, at *5 (N.D. Cal. March 11, 2011) (party did not waive protection by objecting to questioning hours after examination upon discovering protected status of documents); *see Rally Mfg.*, 2011 WL 2938270, at *4 ("a thirteen-day period between [discovery of inadvertent production] and [ensuing clawback request] is insufficient to constitute

9

**FILED UNDER SEAL**  CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

a waiver of the privilege in the modern legal world."). Here, as soon as Warner's counsel broached the subject of Hotfile's counterclaim investigation in early March 2011, Hotfile's counsel objected on work product grounds:

> MR. THOMPSON: Mr. Fabrizio, let me also just state [regarding documents produced by Hotfile from early March] that we have become aware in the last week or two of some inadvertent produced documents . . . that contained work product information. And I'd ask – have asked for their return. . . .
> MR. FABRIZIO: Well, then, we can deal with that afterwards. . . . You preserve the objection.
> MR. THOMPSON: [Y]ou agree there's no waiver by letting me –
> MR. FABRIZIO: No, not by letting him answer . . . .

Declaration Of Steven B. Fabrizio Supp. Plaintiffs' Mot. Compel [Docket No. 211], Ex. A at 164:7-24. Hotfile's counsel later repeated the objection regarding the entire subject matter. *See id.* at 167:2-8 ("I'm going to object to the extent that it calls for work product information which commenced after the date of early March 2011.").

Because the deposition occurred in Bulgaria – over 6,000 miles and ten time zones away from the Hotfile attorney who clawed back Exhibit 27 from the United States – the attorney defending the Titov deposition did not have a complete list of clawed-back documents at the deposition. Thompson Opp. Decl. ¶ 8. However, counsel for Hotfile assumed that Warner's counsel would not violate the Protective Order. *Id.* ¶ 7. In any event, after the deposition adjourned for the day, counsel for Hotfile confirmed that Hotfile had clawed back Exhibit 27. He immediately re-notified Warner's counsel and again requested the return of the document. *Id.* at ¶ 10 & Ex. 2. When the deposition resumed the next morning, he repeated the objection and again asked Warner to destroy all copies of the document in question. *Id.* ¶ 11. Nothing more was required to preserve Hotfile's work-product protection. *Datel Holdings*, 2011 WL 866993, at *5.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Warner's Motion [Docket No. 180] should be denied.

10

**FILED UNDER SEAL**                                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DATED:  February 16, 2012          Respectfully submitted,

*[signature: Janet T. Munn]*

Janet T. Munn, Esq. Fla. Bar No. 501281
Email: jmunn@rascoklock.com
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102

And

Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email:  rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email:  aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email:  tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email:  dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email:  jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy: 415.954.4480

And

Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone:  617.928.1800
Telecopy:  617.928.1802

*Counsel for Defendants Hotfile Corporation
 and Anton Titov*

11

**FILED UNDER SEAL**                              CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2012, the foregoing Hotfile's Objections to Magistrate Judge's Order Regarding Plaintiffs' Motion to Compel Titov Deposition Exhibit 27, was served on all counsel of record identified below via e-mail and by First Class U.S. Mail:

Karen L. Stetson, Esq., Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Telephone: 818.935.5812

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

By: /s/ Janet T. Munn
    Janet T. Munn