Page 1

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

DISNEY ENTERPRISES, INC., TWENTIETH

CENTURY FOX FILM CORPORATION,

UNIVERSAL CITY STUDIOS PRODUCTIONS,

LLP, COLUMBIA PICTURES INDUSTRIES,

INC., and WARNER BROTHERS

ENTERTAINMENT, INC.,

      Plaintiffs,

   vs.          Case No.

HOTFILE CORPORATION, ANTON TITOV     11-cv-20427-AJ

and DOES 1-20,

      Defendants.

_____

    Videotaped Deposition of SCOTT A. ZEBRAK,
a witness herein, called for examination by counsel
for Defendants in the above-entitled matter, Washington,
D.C. pursuant to subpoena, the witness being duly sworn
by SUSAN L. CIMINELLI, CRR, RPR, a Notary Public in and
for the District of Columbia, taken at the offices of
Jenner & Block, LLP, 1099 New York Avenue, N.W.,

Washington, D.C., at 10:49 a.m. on Friday, January 20,

2012.

1  because this rebuttal report says it applied the same

2  methodology described in the November 18th, 2011

3  report, so it's definitely fair game.

4        BY MR. GUPTA:

5     Q.   Let's take an example how you suggested.

6  Let's take IH8sn0w, the user you mentioned

7  previously.  The user IH8sn0w is the creator and

8  copyright owner of iREB, correct?

9        MR. POZZA:  Objection.  Calls for

10  speculation.

11        THE WITNESS:  That's what I understood it

12  to be and for that reason, you know, as I'm sure you

13  know, iREB or sn0wbreeze, the products of that group,

14  I have in the noninfringing category.

15        BY MR. GUPTA:

16     Q.   And you maintain that they are

17  noninfringing.  To this day, you still maintain that

18  position?

19        MR. POZZA:  Object.  Ambiguous.

20        THE WITNESS:  I don't know what, if any,

21  copyrighted code of Apple they may or may not be, you

22  know, intruding upon from a copyright perspective,

23  but I don't have any reason to change them from

24  noninfringing to infringing, if that's the question.

25        BY MR. GUPTA:

1  A and I said that the title notice field refers to

2  other take-down notices or special rights holder

3  accounts, you know, where the title of that work had

4  been identified as an alleged infringement.

5      And I said it also in certain instances

6  could include, you know, the file hash being blocked

7  by Hotfile and that's -- I knew that this analysis

8  had been done and put in my exhibit and that's why

9  when you look at the newer exhibit, you'll see a

10  separate column for hash noticed, and you'll also see

11  a separate column for company notice.  I believe

12  those are the two differences in the -- between the

13  two exhibits.

14      Q.   And what does the hash notice field

15  represent?

16      A.   Hash notice field represents unique

17  characteristics of the file where once a file has

18  been associated with infringement, the

19  characteristics of that file become almost like a

20  fingerprint, if you will, where you can check to see

21  if the same copy of that work had been involved --

22  you could look for other copies of the same work, so

23  for example, on a hash noticed file, you could look

24  to see whether files of that same hash, you could

25  look to identify those and find them with earlier

1      And when I say hadn't yet reached, what I

2  was asked to do here wasn't to assign a

3  classification to all these files like was done where

4  possible in the stats study work.  Here I was merely

5  asked to identify those files that I thought were

6  highly likely infringing for them to be distributed

7  through Hotfile.

8    Q.   So for example, on page 16 of the original

9  exhibit.

10    A.   I have that one now.  Yes.

11    Q.   There are a bunch of categorizations such

12  as noninfringing, unknowable.

13    A.   Right.

14    Q.   Do you believe that those categorizations

15  are accurate or not?

16    A.   Let me -- without answering as to those

17  two, let me ask -- answer as to the unknowable and

18  noninfringing designations across the exhibit.  These

19  were, except in instances, you know, let me -- if I

20  could, let me just look through this quickly.  Okay.

21  Here is an example.  So on page 24, there is an

22  example of a work that I saw as a J downloader work.

23  That was the title of the work.  That as I recall was

24  a work that in my stats study, I declared to be

25  noninfringing.  So here that would be an example of

1  something that I had a firmer conclusion about than

2  many of the other works that you would see as

3  noninfringing -- noninfringing or unknowable, where

4  those, you know, as I began my work, if that was, you

5  know, it was sort of a tentative designation whether

6  it was from me or someone from my team which would

7  often be the case.

8      So the answer is I don't -- unlike the

9  stat study where works were -- I reached a conclusion

10  and called a work noninfringing or unknowable, here I

11  don't have that same level of certainty for these

12  works.  I don't necessarily agree that these works

13  are noninfringing or unknowable.  I would have to go

14  work by work and do further investigation and

15  analysis to answer your question directly.

16    Q.   So when you say in paragraph 3, you

17  followed the same methodology, would you say it's

18  something to be taken with a grain of salt.  It's a

19  little different?

20    A.   I wouldn't say with a grain of --

21      MR. POZZA:  Object.  Argumentative and

22  ambiguous.

23      THE WITNESS:  I wouldn't say with a grain

24  of salt.  No.  I applied the same methodology, but to

25  a different project.  But when I say the methodology,

Page 195

1    Q.   And did you find it curious that you

2   weren't asked to look at the infringement status of

3   the top 100 downloads on the site?

4        MR. POZZA:  Objection.  Ambiguous.

5   Argumentative.

6        THE WITNESS:  No, I really didn't think

7   about it one way or the other.  That was, you know,

8   the issue that counsel thought was -- needed looking

9   into.

10       BY MR. GUPTA:

11   Q.   I remind you, you are under oath.

12       MR. POZZA:  I don't think the witness

13   needs to be reminded.

14       MR. GUPTA:  Can you please mark this as

15   Exhibit, I believe we are up to 125.

16        (Zebrak Exhibit 125 was

17         marked for identification.)

18       BY MR. GUPTA:

19   Q.   Have you seen this before?

20   A.   I may have.  I certainly know of it.  This

21   is what I believe you were asking me about a moment

22   ago where, you know, Hotfile, you know, was asked to

23   identify certain top downloaded works.

24   Q.   Right.  So I'll represent to you this is

25   Hotfile Corporation's fourth set of interrogatories

1    to plaintiffs, where Exhibit A attached to this

2    interrogatory is the top 100 ever downloaded files on

3    Hotfile.  And I wanted you to take a look at that

4    Exhibit A for a moment.

5        A.   Okay.  Okay, and you said a moment ago

6    that these are the top downloaded works over time?

7        Q.   Correct.

8        A.   Okay.  Okay.  I'm with you.

9        Q.   And I wanted you to look at that first

10   page just to start.

11       A.   Yes.

12       Q.   And tell me if, based on these file names,

13   you see anything here that looks like it would be

14   likely to be studio content.

15          MR. POZZA:  I'm going to object to this

16   line of questioning as lacking foundation to the

17   extent that there is no evidence in the record that

18   these are the top 100 most downloaded files, or what

19   that would mean.  And further object to this is

20   outside the scope of the expert report and the

21   witness has not seen this list of files before.  Or

22   at least has testified he has not considered this

23   list of files before.

24          BY MR. GUPTA:

25       Q.   Please go ahead.

Page 197

1    A.   Please go ahead, and just flip through

2   this report and --

3    Q.   I was going to ask you, just focus on the

4   first page so we don't take too much time.

5    A.   Sure.  And the question is to identify

6   what works appear to be studio content?

7    Q.   If any of these file names are suggestive

8   to you that this might be a studio file.

9       MR. POZZA:  Same objections.

10      THE WITNESS:  Okay.  I've flipped through

11   it.

12      BY MR. GUPTA:

13    Q.   And what's your answer?

14      MR. POZZA:  Also object this lacks

15   foundation to the extent you're asking the witness

16   about his knowledge of studio works, is not something

17   he has been qualified as an expert in.

18      THE WITNESS:  I mean -- I mean, when I

19   look at the file names, none of these file names, you

20   know, in my mind make me think of a studio movie, for

21   example, if that's the question.

22      BY MR. GUPTA:

23    Q.   And when you look at the file names, do

24   you see file names that are suggestive to you that

25   these files -- that some of these files are in fact

Page 198

1  not infringing?

2        MR. POZZA:  Same objections.  Ambiguous.

3        THE WITNESS:  Yes.

4        BY MR. GUPTA:

5     Q.   And can you tell me which file names you

6  believe are suggestive of a file that is likely not

7  to be infringing?

8        MR. POZZA:  Same objections.  Outside the

9  scope of the expert testimony.  Ambiguous.

10        BY MR. GUPTA:

11     Q.   Or in fact, you can mark it with a pen and

12  then -- you know, if that's faster and easier.

13     A.   No.  I can go through and tell you.  But

14  when you say suggestive, I'm of course answering this

15  for purposes of just answering your question now.

16  This is not suggestive of infringement or

17  noninfringement as I would have done my different

18  analyses.  I just want to be clear about that.

19     Q.   Right.  Because this is just based on file

20  name, right, so it's not going to be conclusive.

21     A.   Well, all I meant to say is that I'm

22  answering your question and doing as you asked.  My

23  -- if just based on this file name that this is of

24  course not the methodology I did as I did my

25  different analyses.  I'm just distinguishing the two.

1      BY MR. GUPTA:

2      Q.   Agreed.

3      A.   Okay.

4      Q.   Agreed.  But you did look at file name in

5   your methodology as one of the factors, right?

6      A.   Of course.  I looked at file name among

7   many other considerations.  Well, of course, without

8   listing each one, you know, the tools labelled iREB

9   and sn0wbreeze are the tools we have just been

10   talking about, which I know I mentioned to you that I

11   have in the unknowable category, but it's either

12   going to be -- if it's moved out of unknowable, it

13   would be to highly unlikely -- it would be moved to

14   noninfringing or illegal, but not infringing.

15      Q.   Got it.

16      A.   And I believe that in my analyses, I had

17   the J downloader tool also as -- which appears

18   several times here as noninfringing for purposes of

19   that work.  And as I quickly look through it now,

20   those are the tools that, you know, those three items

21   I mentioned are really the only ones that jump out at

22   me, I think.

23      Q.   Okay.  I appreciate that.  Do you

24   recognize this file that recurs a few time, this DOTA

25   utilities file?

1   be more closely in line with the fair use doctrine.

2        But, you know, again, we're now focusing

3   on what, you know, I really think is, you know,

4   probably one of a handful of outliers that are closer

5   calls in my analysis than what are really the much

6   more prevalent and easier calls, which are

7   full-length distribution of these works that are

8   being commercialized such as full-length copy of this

9   episode. But I grant you this is one of the more --

10  you know, one of the closer calls within my analysis.

11       BY MR. GUPTA:

12       Q.   Okay.  And so would you consider

13  redesignating this as unknowable?

14       A.   What I -- look, with regard to any of the

15  closer calls that you raise with me today, whether

16  it's just this one or if this is one of X number, I

17  would be happy to go back and look more closely at

18  these.  I actually, you know, take great pride in the

19  fact that I think that if you were to review the 1750

20  files and focus on the ones that I deemed to be

21  infringing, I think you'll find that you won't

22  dispute the overwhelming -- overwhelming majority of

23  them and that while you may be able to isolate and

24  present to me a few that are closer calls, that I had

25  sound reasoning both for the ones where I opted to

1        MR. POZZA: Objection. Misstates witness

2   testimony.

3        THE WITNESS: It -- as I hear that term, I

4   think of, you know, some -- some software that can be

5   distributed without it violating rights, as a result

6   of, for example, it being open-source software or,

7   you know, software where perhaps even the copyright

8   owner says it's a free copy and can be freely

9   distributed but still require some other terms to be

10  agreed to, and that's one of the terms in the

11  installation terms of use. But that's -- you know,

12  that's what I think of when I hear -- hear that term.

13        BY MR. GUPTA:

14    Q.   Okay. So it would be, for example, if

15  you, Mr. Zebrak, created a piece of software and put

16  it on your website as shareware, I could download

17  that software and that I could email it to counsel,

18  right? And even though I'm not a copyright owner and

19  don't have any copyrights, I would not be in

20  violation of your copyrights in that process, right?

21        MR. POZZA: Objection. Incomplete

22  hypothetical.

23        THE WITNESS: You know, again when I

24  applied my methodology and went through this process,

25  I did this within the context of particular sites and

1   particular files.  This is an abstract question.  But

2   I certainly ran across instances of redistributable

3   software, where the owner of that software

4   contemplates and has permitted that a recipient of

5   the software would be allowed to further distribute

6   it to others.

7        BY MR. GUPTA:

8     Q.   Okay.  Well, let me ask you a question.

9   Do you have a sense of the business model that

10   users -- or that people who create shareware use to

11   monetize their -- their software?

12        MR. POZZA: Objection.  It's ambiguous.

13        THE WITNESS:  You know, there's so many

14   different fact patterns that can be applied to answer

15   that question.  As I talked about in my first

16   deposition, you know, I don't -- my expertise here is

17   in having been in this copyright field as a lawyer

18   doing these types of analyses.  I don't consider

19   myself necessarily an expert at, you know, a

20   particular industry within the copyright field, but I

21   have, in the course of this work and through my prior

22   work, acquired a pretty extensive background.

23         In terms of the business model to support

24   redistributable software, there can be many examples

25   of that.  For example, there can be, you know,

1   any, changed hands.  And I also don't know what, you

2   know, what this speaks to in terms of what -- you

3   know, this speaks to -- if it's accurate by this

4   person, what the person minds now, not whether one of

5   the exclusive copyright rights was exercised without

6   authorization at the time it was done.  So those are

7   all things I can and will look further into.

8       Q.   Just for the record, so this is an

9   affidavit that we procured from Mr. Mackay who is an

10  Australian who is the author of this video and I

11  think you probably heard he had the Australian

12  accent.  He claims he is the owner and creator of the

13  website and he says that in paragraph 4, I've been

14  informed that some or all of my videos have been

15  posted at Hotfile.com, a cyber locker site that

16  allows users to store and/or share large files over

17  the Internet.  Paragraph 5 says, I have no objection

18  to my videos being stored and/or shared in this

19  manner and do not consider such storing and/or

20  sharing to infringe my intellectual property rights.

21      A.   Right.

22      Q.   So would you say that this affidavit would

23  at least cause you to change your categorization from

24  highly likely infringing for these several files to

25  at least unknowable?

Page 287

1          MR. POZZA: I object. Lacks foundation

2    and to the extent the witness has never seen this

3    document before and that counsel is providing

4    testimony.

5          THE WITNESS: A few things. As I've

6    mentioned several times, you apparently challenging

7    my designation here makes me want to look further

8    into it, along with, of course, you know, this

9    affidavit, I would want to speak with this person,

10   but, you know, I don't know if Mr. Mackay is a lawyer

11   or not, but a nonlawyer opining on what the nonlawyer

12   considers to be an infringement, that requires legal

13   judgment.

14          He, of course, knows what at the time he

15   authorized or didn't authorize, but the point is

16   whether one of his exclusive copyright rights was

17   exercised through the unauthorized distribution of

18   the file through Hotfile, you know, him looking back

19   on it now saying what he does or doesn't have an

20   objection to, I'm not sure speaks to what was

21   authorized in the first instance. And, you know,

22   again, you know, I would want to speak further with

23   him and will presumably do so.

24          BY MR. GUPTA:

25   Q.   But don't you think that even if he hadn't

1   and take a short break, and I think we are close to

2   finished.

3       THE VIDEOGRAPHER: Off the record at 8:01.

4       (Recess.)

5       (Zebrak Exhibit 133 and Exhibit 134

6           was marked for identification.)

7       THE VIDEOGRAPHER: Back on the record at

8   8:09.

9       BY MR. GUPTA:

10   Q.   Mr. Zebrak, are there any opinions other

11   than those you've expressed today, those you've

12   expressed in your first day of deposition and those

13   that are expressed in your reports, that you intend

14   to provide at trial?

15   A.   No.  These are the areas that I'm

16   testifying about.

17       MR. POZZA: Object as ambiguous and

18   calling for speculation.

19       THE WITNESS: Yes.

20       BY MR. GUPTA:

21   Q.   Do you anticipate engaging in any further

22   factual inquiries before trial?

23       MR. POZZA: Object as ambiguous and

24   calling for speculation.

25       THE WITNESS: You know, I intend to

Page 296

1   UNITED STATES OF AMERICA)

2                 SS:

3   DISTRICT OF COLUMBIA    )

4

5       I, SUSAN L. CIMINELLI, the officer before whom

6   the foregoing deposition was taken, do hereby

7   certify that the witness whose testimony appears in

8   the foregoing deposition was duly sworn by me; that

9   the testimony of said witness was taken by me to the

10  best of my ability and thereafter reduced to

11  typewriting under my direction; that I am neither

12  counsel for, related to, nor employed by any of the

13  parties to the action in which this deposition was

14  taken, and further that I am not a relative or

15  employee of any attorney or counsel employed by the

16  parties thereto, nor financially or otherwise

17  interested in the outcome of the action.

18

19       _____

20              SUSAN L. CIMINELLI

21

22  My commission expires:  11/30/2016

23

24

25

# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

   *Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

## PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT HOTFILE CORP.'S INTERROGATORY NO. 8

Pursuant to Federal Rules of Civil Procedure 26(e)(2) and 33, Plaintiffs Disney

Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions

LLLP, Columbia Pictures Industries, Inc., Warner Bros. Entertainment Inc., and the Motion

Pictures Association of America (collectively, "Plaintiffs") hereby provide the following

CASE NO. 11-20427-WILLIAMS

Supplemental Responses, in part, to Interrogatory No. 8 in Defendant Hotfile Corporation's ("Defendant" or "Hotfile") Second Set of Interrogatories (the "Second Interrogatories"):

## GENERAL OBJECTIONS

1.     Plaintiffs object to the Second Interrogatories to the extent that they call for the disclosure of information subject to the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine. Any inadvertent disclosure of such information shall not be deemed a waiver of the attorney-client privilege, the joint defense or common interest privilege, the attorney work product immunity doctrine, or any other applicable privilege or doctrine.

2.     Plaintiffs object to the Second Interrogatories to the extent that they call for the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B). Any inadvertent disclosure of such information shall not be deemed a waiver of the protection against discovery afforded by Rule 26(b)(4)(B) or any other applicable privilege or doctrine.

3.     Plaintiffs object to the Second Interrogatories to the extent that they call for the disclosure of information beyond that required by the Federal Rules of Civil Procedure or the Local Rules of the Court.

4.     Plaintiffs object to the Second Interrogatories to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence, and are ambiguous, duplicative, vague, oppressive, harassing, overbroad or unduly burdensome.

5.     Plaintiffs object to the Second Interrogatories to the extent that they call for information or documents created or maintained by Defendants, for information or documents already in Defendants' possession, or for information readily accessible to Defendants in the public record, on the grounds that it is unduly burdensome, oppressive, and harassing, and would needlessly increase the cost of litigation.

6.      Plaintiffs object to the Second Interrogatories to the extent that they are not limited to time periods reasonably related to the matters at issue in this litigation.  Specifically, Plaintiffs object to the Second Interrogatories to the extent that they seek the production by Plaintiffs of documents or materials prepared, generated, duplicated, communicated, distributed, or transmitted prior to Defendants' commencement of operations on Hotfile, as overbroad, unduly burdensome, and seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence.  To the extent the Plaintiffs respond to the Second Interrogatories, Plaintiffs will produce information in their possession on or after January 1, 2009.

9.      Plaintiffs object to the Second Interrogatories to the extent they seek unavailable information or information not currently in Plaintiffs' possession, custody or control.

10.      Plaintiffs object to the Second Interrogatories to the extent that they seek proprietary and confidential information not relevant to this proceeding, including but not limited to information related to third parties.

11.      Plaintiffs object to the Second Interrogatories to the extent that they seek information protected from disclosure by the Court's September 1, 2011 Protective Order.

12.      Plaintiffs object to the Second Interrogatories to the extent they seek the production of confidential information relating to the Plaintiffs' trade secrets.

Plaintiffs incorporate these General Objections into each specific response as if fully set forth in each response.

## OBJECTIONS TO SPECIFIC DEFINITIONS

1.      Plaintiffs object to the Interrogatories' definition of "IDENTIFY" insofar as it exceeds a responding party's obligations under the Federal Rules of Civil Procedure.

2.      Plaintiffs object to the Interrogatories' definitions of "RELATE," "RELATES," "RELATING TO," "REFER," "REFERRING," as vague, unduly burdensome, and as calling for attorney work product insofar as it requires Plaintiffs to determine what "show[s]" or "evidenc[es]" a particular proposition.

CASE NO. 11-20427-WILLIAMS

3.     Plaintiffs object to the Interrogatories' definitions of The terms "PLAINTIFFS," "YOU," "YOUR" or "THE STUDIOS" insofar as they seek to require Plaintiffs to provide interrogatory responses and information for entities other than the Plaintiffs, such as their affiliates and their law firms in matters other than the present action.  Information in the possession of third parties, such as Plaintiffs' affiliates, agents, and outside counsel other than counsel in the present action, is irrelevant and unduly burdensome to obtain.  Plaintiffs will respond on behalf of the Plaintiff entities.

## RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES

### INTERROGATORY NO. 8:

IDENTIFY the Internet Protocol ("IP") addresses for all digital media devices, such as computers (laptops and PCs), tablets, and/or mobile phones, which devices (1) are owned, utilized, or controlled by YOU or YOUR AFFILIATES, including but not limited to Dtecnet, Peer Media Technologies and the MPAA, or (2) have been used by YOU or YOUR AFFILIATES for uploading to or downloading files from hotfile.com.  To the extent that IP addresses are assigned dynamically by YOUR routers or internet service providers, provide the ranges of IP addresses from which addresses are assigned, and identify the internet service providers if applicable.

### PLAINTIFFS' SUPPLEMENTAL RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 8:

Pursuant to Fed. R. Civ. P. 26(e)(2), Plaintiffs hereby provide the following supplemental response to Interrogatory No. 8.   Other than the objections stated in Plaintiffs' previous responses to Interrogatory No. 8, which are expressly incorporated herein, Plaintiffs' response below supplements and supersedes Plaintiffs' previous responses to Interrogatory No. 8.

Plaintiffs incorporate each General Objection and Objection to Specific Definitions as if set forth herein.

Plaintiffs further specifically object that this Interrogatory seeks information expressly protected from discovery by the Court's September 1, 2011 Protective Order insofar as it seeks

61924.2                                        4

CASE NO. 11-20427-WILLIAMS

information regarding Plaintiffs' downloading of files from Hotfile.com and insofar as it seeks the IP addresses that Plaintiffs and their agents use for such purpose, if any.

Plaintiffs further specifically object that this Interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  The IP addresses used by Plaintiffs, including Plaintiffs' use of those IP addresses to visit or use the Hotfile Website, are not relevant to any issue in this case.

Plaintiffs further object that the Interrogatory calls for attorney work product and information protected by the attorney-client privilege insofar as it seeks information identifying Plaintiffs' investigation for purposes of this very action.

Plaintiffs further object that the Interrogatory is overbroad, unduly burdensome, and appears designed to harass.  Plaintiffs and their affiliates may utilize a large number of media devices, including for purposes and from locations with no relationship or relevance to online piracy or to Hotfile, such that it would be unduly burdensome and harassing to itemize each address or range of addresses.  The request is further irrelevant, overbroad, and unduly burdensome insofar as it requests IP addresses for Plaintiffs' "affiliates," which are not parties to this action and who are not claiming the infringement of their copyrights by Hotfile.

Plaintiffs further object to this Interrogatory insofar as it requests information that is not in Plaintiffs' control, such as the IP addresses used by Plaintiffs' vendors, affiliates, and trade associations (e.g. the MPAA).

Plaintiffs further object that the Interrogatory calls for information that would reveal trade secret processes and methodologies by which the MPAA and the Plaintiffs investigate online piracy and enforce their copyrights against online piracy, the disclosure of which to alleged infringers risks compromising Plaintiffs' ability to protect their copyrights online. *See DirectTV, Inc. v. Trone*, 209 F.R.D. 455 (C.D. Cal. 2002).  Plaintiffs' and their vendors' IP addresses, if known to copyright infringers on the Internet (including Defendants), could be used to identify and thwart the efforts of Plaintiffs' antipiracy investigators.

Subject to the foregoing objections, each Plaintiff states as follows:

CASE NO. 11-20427-WILLIAMS

### BY DISNEY ENTERPRISES, INC.

Plaintiff Disney Enterprises, Inc., to the best of its knowledge and upon reasonable inquiry, has not uploaded to Hotfile any files containing audiovisual content belonging to Disney Enterprises, Inc., nor has it authorized others to do so on its behalf.

### BY TWENTIETH CENTURY FOX FILM CORPORATION, INC.

Plaintiff Twentieth Century Fox Film Corporation, Inc., to the best of its knowledge and upon reasonable inquiry, has not uploaded to Hotfile any files containing audiovisual content belonging to Twentieth Century Fox Film Corporation, Inc., nor has it authorized others to do so on its behalf.

### BY UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP

Plaintiff Universal City Studios Productions LLLP, to the best of its knowledge and upon reasonable inquiry, has not uploaded to Hotfile any files containing audiovisual content belonging to Universal City Studios Productions LLLP, nor has it authorized others to do so on its behalf.

### BY COLUMBIA PICTURES INDUSTRIES, INC.

Plaintiff Columbia Pictures Industries, Inc., to the best of its knowledge and upon reasonable inquiry, has not uploaded to Hotfile any files containing audiovisual content belonging to Columbia Pictures Industries, Inc., nor has it authorized others to do so on its behalf.

### THE FOLLOWING RESPONSE IS DESIGNATED "CONFIDENTIAL":

### BY WARNER BROS. ENTERTAINMENT INC.

Plaintiff Warner Bros. Entertainment Inc. ("Warner"), to the best of its knowledge and upon reasonable inquiry, has not authorized others to upload to Hotfile any files containing audiovisual content belonging to Warner, nor has Warner uploaded to Hotfile any files containing full-length audiovisual content belong to Warner.

As part of a one-time test in the spring of 2010, Sven Klimek, an intern in Warner's German office, uploaded to a handful of online locations, including Hotfile, files that contained a

message urging viewers to legally download, from iTunes, Warner's television program "The Vampire Diaries." The files included a short sample consisting of less than five minutes of audiovisual content from the beginning of five episodes from the show (Season 1, Episodes 18-22). The files (which were split into four-part .rar files) were uploaded using Warner's official "warnerbros2" account provided by Hotfile. Many of the files were removed from Hotfile shortly after upload; indeed many were removed on the same day they were uploaded. This one-time test was not continued or repeated.

The uploads were on the following dates to the following URLs:

**April 16, 2010:**

http://hotfile.com/dl/38188045/ad4a058/The.Vampire.Diaries.S01E18.HDTV.XviD-WBA..part1.rar.html

http://hotfile.com/dl/38191646/1485f0e/The.Vampire.Diaries.S01E18.HDTV.XviD-WBA..part2.rar.html

http://hotfile.com/dl/38194407/23f743d/The.Vampire.Diaries.S01E18.HDTV.XviD-WBA..part3.rar.html

http://hotfile.com/dl/38194416/7cba26a/The.Vampire.Diaries.S01E18.HDTV.XviD-WBA..part4.rar.html

**April 23, 2010:**

http://hotfile.com/dl/39401287/bb65d8b/The.Vampire.Diaries.S01E19.-.Miss.Mystic.Falls.part1.rar.html

http://hotfile.com/dl/39410998/b541b46/The.Vampire.Diaries.S01E19.-.Miss.Mystic.Falls.part2.rar.html

http://hotfile.com/dl/39415039/785626f/The.Vampire.Diaries.S01E19.-.Miss.Mystic.Falls.part3.rar.html

http://hotfile.com/dl/39415276/44d5770/The.Vampire.Diaries.S01E19.-.Miss.Mystic.Falls.part4.rar.html

**April 30, 2010:**

http://hotfile.com/dl/40546248/1627c69/The.Vampire.Diaries.S01E20.-.Blood.Brothers.XviD-2HD.part1.rar.html

CASE NO. 11-20427-WILLIAMS

http://hotfile.com/dl/40546881/75e52f9/The.Vampire.Diaries.S01E20.-.Blood.Brothers.XviD-2HD.part2.rar.html

http://hotfile.com/dl/40547853/9b8177a/The.Vampire.Diaries.S01E20.-.Blood.Brothers.XviD-2HD.part3.rar.html

http://hotfile.com/dl/40548570/0b08673/The.Vampire.Diaries.S01E20.-.Blood.Brothers.XviD-2HD.part4.rar.html

**May 7, 2010**

http://hotfile.com/dl/41712988/e52a111/The.Vampire.Diaries.S01E21.-.Isobel.part1.rar.html

http://hotfile.com/dl/41713579/b469d05/The.Vampire.Diaries.S01E21.-.Isobel.part2.rar.html

http://hotfile.com/dl/41714235/5340e27/The.Vampire.Diaries.S01E21.-.Isobel.part3.rar.html

http://hotfile.com/dl/41714628/9b7f241/The.Vampire.Diaries.S01E21.-.Isobel.part4.rar.html

**May 14, 2010**

http://hotfile.com/dl/42851538/80af3be/The.Vampire.Diaries.S01E22.-Founders.Day.HDTV.XViD-2HD.part1.rar.html

http://hotfile.com/dl/42851712/91c35a3/The.Vampire.Diaries.S01E22.-Founders.Day.HDTV.XViD-2HD.part2.rar.html

http://hotfile.com/dl/42851889/ad60b57/The.Vampire.Diaries.S01E22.-Founders.Day.HDTV.XViD-2HD.part3.rar.html

http://hotfile.com/dl/42852067/834f0ff/The.Vampire.Diaries.S01E22.-Founders.Day.HDTV.XViD-2HD.part4.rar.html

*    *    *    *    *    *    *

In addition, Hotfile's upload records indicate that Warner's "warnerbros2" account was used on April 26, 2010 to upload an additional instance of the file containing five minutes of Season 1, Episode 18, to the following URL:

http://hotfile.com/dl/39861424/01d2d22/The.Vampire.Diaries.S01E18.HDTV.XviD-WBA.avi.html.

Hotfile's records further reflect that the "warnerbros2" account was used to create one additional set of URLs pointing to the four-part file Warner uploaded on April 16, 2010; those

CASE NO. 11-20427-WILLIAMS

URLs – which do not represent additional uploads, only additional ways of accessing the files uploaded on April 16, 2010, are as follows:

http://hotfile.com/dl/38180713/6c3807b/The.Vampire.Diaries.S01E18.HDTV.XviD-WBA..part1.rar.html

http://hotfile.com/dl/38184479/16ee3c2/The.Vampire.Diaries.S01E18.HDTV.XviD-WBA..part2.rar.html

http://hotfile.com/dl/38188443/2369dd9/The.Vampire.Diaries.S01E18.HDTV.XviD-WBA..part3.rar.html

http://hotfile.com/dl/38192735/5116114/The.Vampire.Diaries.S01E18.HDTV.XviD-WBA..part4.rar.html

Warner does not have records confirming the April 26, 2010 upload or the creation of secondary URLs to the April 16, 2010 file, but does not currently have any reason to doubt, with respect to this issue, Hotfile's upload records.

**END OF "CONFIDENTIAL" DESIGNATION.**

Dated: November 29, 2011

By: s/ Luke C. Platzer
        Luke C. Platzer

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305-416-6880
Fax: 305-416-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA  91403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Phone: 202-639-6000
Fax: 202-639-6066

*Attorneys for Plaintiffs*

CASE NO. 11-20427-WILLIAMS

### VERIFICATION OF DISNEY ENTERPRISES, INC.

I have read the foregoing PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT HOTFILE CORP'S INTERROGATORY NO. 8 and know its contents.

I am an officer of Disney Enterprises, Inc., a party to this action, and am authorized to make this verification on its behalf, and I make this verification for that reason. I am informed and believe that the matter stated in the foregoing document are true.

Executed on October _12_, 2011 at _GLENDALE_, CA.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signature: _____

Name (Print): James D. Hanford_____

Title: Assistant Treasurer_____

CASE NO. 11-20427-WILLIAMS

### VERIFICATION OF TWENTIETH CENTURY FOX FILM CORPORATION

Information in Plaintiffs' Supplemental Responses and Objections to Defendant Hotfile Corp.'s Interrogatory No. 8 was provided by me and/or gathered at my direction from corporate records and personnel. I have reviewed the responses. I declare under penalty of perjury of the laws of the United States that the foregoing responses as to Plaintiff Twentieth Century Fox Film Corporation are true and correct to the best of my knowledge and belief, based on my review of such information.

Executed on October 20, 2011, at Los Angeles, CA.

Signature: _Ronald C Wheeler_

Name:       Ronald C. Wheeler

Title:         Assistant Secretary

CASE NO. 11-20427-WILLIAMS

## VERIFICATION OF UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP.

I, Gabriela Kornzweig, pursuant to Fed. R. Civ. P. 33(b)(1) and 28 U.S.C. § 1746 declare as follows:

I am Secretary for Universal City Studios Productions LLLP. On behalf of Universal City Studios Productions LLLP, I have reviewed the interrogatory responses contained in Plaintiffs' Supplemental Responses and Objections to Defendant Hotfile Corp.'s Interrogatory No. 8. I verify that the answers of Universal City Studios Productions LLLP contained in the foregoing Supplemental Responses to Defendants' Second Set of Interrogatories are true and correct to the best of my knowledge and belief, that I am authorized to so verify and that as to matters stated therein that are not within my personal knowledge I have relied upon information prepared by persons whom I believe to be reliable, based on information and records maintained by Universal City Studios Productions LLLP in the regular and ordinary course of its business.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 7, 2011, at Universal City, CA

Signature: _____

Name (Print): Gabriela Kornzweig

Title: Secretary

61924.2

12

CASE NO. 11-20427-WILLIAMS

### VERIFICATION OF COLUMBIA PICTURES INDUSTRIES, INC.

I, Jared Jussim, am a corporate officer of Plaintiff Columbia Pictures Industries, Inc. and am authorized to execute this verification on its behalf.

I have reviewed the interrogatory responses contained in Plaintiff's Supplemental Responses and Objections to Defendant Hotfile Corp.'s Interrogatory No. 8. I am informed and believe and on that basis allege that the matter started therein are true as to Plaintiff Columbia Pictures Industries, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 12 , 2011, at Culver City , CA

Signature: _____

Name (Print): Jared Jussim

Title:        Executive Vice President,
              Legal Affairs and
              Assistant Secretary

CASE NO. 11-20427-WILLIAMS

## VERIFICATION OF WARNER BROS, ENTERTAINMENT INC.

I, Kim Barrett, declare as follows:

I am the authorized agent for Plaintiff Warner Bros. Entertainment Inc. I have read the foregoing Plaintiffs' Supplemental Responses and Objections to Defendant Hotfile Corp.'s Interrogatory No. 8 and know its contents.

I am informed and believe that the matters stated in the foregoing document are true.

Executed on November 28, 2011, at Warner Bros. Studios, Burbank, California.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signature: _Kim Barrett_

Name:     Kim Barrett

Title:     Executive Director

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th Day of November, 2011, I served the foregoing Plaintiffs' Supplemental Responses and Objections to Interrogatory No. 8 of Defendant Hotfile Corp.'s Second Set of Interrogatories on all counsel of record on the attached Service List via their email address(es) as set forth on the Court's CM/ECF filing system per the parties' service agreement, as indicated on the attached Service List.

I further certify that I am admitted *pro hac vice* in the United States District Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date at Washington, D.C.

/s/ Luke C. Platzer
Luke C. Platzer

61924.2

CASE NO. 11-20427-WILLIAMS

# SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*
**Served via electronic mail by agreement**

BOSTON LAW GROUP
Valentin Gurvits
825 Beacon Street, Suite 20
Newton Center, MA 02459
Phone: 617-928-1800
Fax: 617-928-1802
vgurvitz@bostonlawgroup.com

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*
**Served via electronic mail by agreement**

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*
**Served via electronic mail by agreement**

# EXHIBIT 7

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

      Plaintiffs,

   vs.

HOTFILE CORP., ANTON TITOV,
and DOES 1-10,

      Defendants.

_____

AND RELATED CROSS-ACTION.

_____

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF VICKI R. SOLMON, ESQUIRE

PURSUANT TO FEDERAL RULE 30(b)(6)

Los Angeles, California

Friday, December 9, 2011

Volume 1

Reported by:
LORI SCINTA, RPR
CSR No. 4811

Job No. 178932

Electronically signed by Lori Scinta (601-264-733-0670)          a0cdbc8c-50cf-4234-9830-de2940bc5076

Solmon, Vicki R.                    12/9/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 2

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3            CASE NO. 11-20427-WILLIAMS-TURNOFF

4   DISNEY ENTERPRISES, INC.,
    TWENTIETH CENTURY FOX FILM
5   CORPORATION, UNIVERSAL CITY
    STUDIOS PRODUCTIONS LLLP,
6   COLUMBIA PICTURES INDUSTRIES,
    INC., and WARNER BROS.
7   ENTERTAINMENT INC.,

8          Plaintiffs,

9      vs.

10  HOTFILE CORP., ANTON TITOV,
    and DOES 1-10,

11
           Defendants.
12  _____
    AND RELATED CROSS-ACTION.
13  _____

14

15    HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

16       Videotaped deposition of VICKI R. SOLMON,

17  ESQUIRE, Volume 1, pursuant to Federal Rule 30(b)(6),

18  taken on behalf of Defendants, at 633 West Fifth Street,

19  Los Angeles, California, beginning at 9:53 A.M. and

20  ending at 6:19 P.M. on Friday, December 9, 2011, before

21  LORI SCINTA, RPR, Certified Shorthand Reporter No. 4811.

22

23

24

25

Solmon, Vicki R.                    12/9/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 3

```
 1    APPEARANCES:

 2

 3    For Plaintiffs:

 4
          JENNER & BLOCK LLP
 5        BY:  DUANE C. POZZA
          Attorney at Law
 6        1099 New York Avenue, NW, Suite 900
          Washington, D.C. 20001-4412
 7        202.639.6000
          Email:  dpozza@jenner.com
 8
               -- and --
 9
          SONY PICTURES ENTERTAINMENT
10        BY:  MAGGIE HEIM
          Attorney at Law
11        10202 West Washington Boulevard
          Culver City, California 90232-3195
12        310.244.6946
          Email:  maggie_heim@spe.sony.com
13

14    For Defendants:
15
          FARELLA BRAUN + MARTEL LLP
16        BY:  DEEPAK GUPTA
          Attorney at Law
17        235 Montgomery Street
          San Francisco, California 94104
18        415.954.4400
          Email:  dgupta@fbm.com
19

20
21    Videographer:

22
          VONYARN MASON
23        SARNOFF COURT REPORTERS
          20 Corporate Park, Suite 350
24        Irvine, California 92606
          877.955.3855
25
```

Solmon, Vicki R.                    12/9/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 117

| | | |
|---|---|---|
| 02:26 | 1 | special rightsholder account by Hotfile? |
| 02:27 | 2 | A   I do not recall if ever it was. |
| 02:27 | 3 | MR. GUPTA:  I'd like to mark this document as |
| 02:27 | 4 | Exhibit 5. |
| 02:27 | 5 | (Exhibit 5 was marked for |
| 02:27 | 6 | identification by the court reporter.) |
| 02:27 | 7 | BY MR. GUPTA: |
| 02:27 | 8 | Q   Can you please review the document. |
| 02:27 | 9 | A   Is this the entire document? |
| 02:27 | 10 | Q   To the best of my knowledge, yes. |
| 02:27 | 11 | A   Okay. |
| 02:27 | 12 | Q   Do you recall ever seeing this email before? |
| 02:27 | 13 | A   Well, first of all, just to finish my |
| 02:27 | 14 | thought -- |
| 02:27 | 15 | Q   Yes. |
| 02:27 | 16 | A   -- where is the attached link? |
| 02:28 | 17 | Q   Are you referring to the first sentence where |
| 02:28 | 18 | it says, "Attached link was removed immediately"? |
| 02:28 | 19 | A   Uh-huh.  Yes. |
| 02:28 | 20 | Q   I don't know.  I don't recall seeing any |
| 02:28 | 21 | attached link. |
| 02:28 | 22 | My understanding of that sentence was it was in |
| 02:28 | 23 | response to an email from someone at Sony -- or |
| 02:28 | 24 | Columbia, perhaps. |
| 02:28 | 25 | And there may have been an attachment to that |

Solmon, Vicki R.                    12/9/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 118

02:28  1    email.  This -- my perception was that this email was

02:28  2    responding to that and confirming that the link was

02:28  3    removed.

02:28  4         A    Okay.  I was just looking at the document --

02:28  5         Q    Sure.

02:28  6         A    -- as you asked me to and wondered if it were

02:28  7    complete --

02:28  8              MR. POZZA:  Just note my objection to counsel

02:28  9    as providing his understanding of the document --

02:28  10             THE WITNESS:  Right.

02:28  11             MR. POZZA:  -- not asking the witness a

02:28  12   question.

02:28  13             MR. GUPTA:  Sure.

02:29  14             THE WITNESS:  Now, could you repeat your

02:29  15   question.

02:29  16   BY MR. GUPTA:

02:29  17        Q    Yes.

02:29  18             Do you recall seeing this document before?

02:29  19        A    I have no recollection of seeing it before.

02:29  20        Q    And who is Melissa Jessup?

02:29  21        A    A person who used to work at Sony Pictures.

02:29  22        Q    Did Ms. Jessup work for you?

02:29  23        A    Yes.

02:29  24        Q    And what was her responsibility in her

02:29  25   employment with you?

Solmon, Vicki R.                    12/9/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 119

| | | |
|---|---|---|
| 02:29 | 1 | A  She had many responsibilities, one of which was |
| 02:29 | 2 | at times scanning the Internet and doing takedown |
| 02:29 | 3 | notices for certain situations. |
| 02:29 | 4 | Q  Was Ms. Jessup sending takedown notices on |
| 02:30 | 5 | behalf of Columbia? |
| 02:30 | 6 | A  Not as a general rule. |
| 02:30 | 7 | Q  On behalf of whom would she send takedown |
| 02:30 | 8 | notices? |
| 02:30 | 9 | A  On behalf of other entities in the Sony group. |
| 02:30 | 10 | Q  And who were those other entities? |
| 02:30 | 11 | A  We have many copyright holders. |
| 02:30 | 12 | Q  Can you tell me some of their names? |
| 02:30 | 13 | A  TriStar Pictures, Screen Gems, Sony Pictures |
| 02:30 | 14 | Classics.  Sony -- it has changed names -- Pictures, |
| 02:31 | 15 | Worldwide Acquisitions.  Entities that we have |
| 02:31 | 16 | distribution rights for that we have acquired prior -- |
| 02:31 | 17 | different -- there were many, many of them, and I cannot |
| 02:31 | 18 | recall all of them. |
| 02:31 | 19 | But, as a general rule, she was -- she would be |
| 02:31 | 20 | sending takedowns for them and for some television |
| 02:31 | 21 | product and things of that sort. |
| 02:31 | 22 | Q  But she wasn't sending takedowns on behalf of |
| 02:31 | 23 | Columbia Pictures who is the plaintiff in this case? |
| 02:31 | 24 | A  As a general rule, no.  However, on occasion, I |
| 02:31 | 25 | am sure she did. |

a0cdbc8c-50cf-4234-9830-de2940bc5076

Solmon, Vicki R.                    12/9/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 120

02:31  1        Q    Okay.  But to the extent she was sending

02:31  2   takedown notices on behalf of any of the entities you

02:31  3   just listed, those would not be on behalf of Columbia

02:31  4   Pictures in any way, correct?

02:31  5        A    They're separate companies --

02:32  6        Q    Okay.

02:32  7        A    -- so, no, they would not have been.

02:32  8             But, on occasion, she may have sent a takedown

02:32  9   notice on behalf of Columbia Pictures.

02:32  10            But, generally, she would not have.

02:32  11       Q    Okay.  Just to go back, so you don't recall

02:32  12  receiving this email yourself?

02:32  13       A    No.

02:32  14       Q    But based on this email, would you agree that

02:32  15  it certainly appears that Hotfile offered a special

02:32  16  rightsholder account to Sony Pictures Entertainment in

02:32  17  October of 2010?

02:32  18       A    It appears that it -- the document, which is

02:32  19  from a Hotfile email, is saying, "If you are" -- "If you

02:32  20  are interested we could provide Special Rightsholder

02:32  21  Account as it was described here...."

02:33  22       Q    And this was produced by Columbia in this

02:33  23  litigation, correct?

02:33  24       A    According to the Bates number, it's a Sony

02:33  25  doc- -- produced by Sony.

Solmon, Vicki R.                    12/9/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 121

02:33  1      Q   And you have no reason to believe that it's not

02:33  2   authentic, correct?

02:33  3      A   I have no reason.

02:33  4      Q   Isn't this document an example of Hotfile

02:33  5   reaching out to Columbia, trying to cooperate, offering

02:33  6   a tool to assist Columbia in takedown notices?

02:33  7      A   No --

02:33  8          MR. POZZA:   Objection.   Vague and ambiguous.

02:33  9   BY MR. GUPTA:

02:33  10     Q   Please explain why.

02:33  11     A   I do not see where it is sent to Columbia.

02:33  12     Q   So your view is because it was sent to Sony

02:33  13  Pictures Entertainment, it doesn't constitute an

02:34  14  outreach to Columbia Pictures?

02:34  15         Is that what you're saying?

02:34  16     A   I'm just answering your question as it was

02:34  17  phrased, that I have no -- you're asking me to review

02:34  18  from this document, and there is nothing on this

02:34  19  document that indicates it was in connection with

02:34  20  Columbia.

02:34  21         And so I can't agree to your statement.

02:34  22     Q   At the time of this email, who was your

02:34  23  employer?

02:34  24     A   You mean which entity?

02:34  25     Q   Correct.

Solmon, Vicki R.                    12/9/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 196

05:10   1   a very important marketing tool for which we spend a lot

05:10   2   of money making them.

05:10   3        They're not free.

05:10   4   Q    Okay.  If a user on YouTube sees a Columbia

05:10   5   trailer and forwards the link to their friends, would

05:10   6   you consider that to be harmful to Columbia's business?

05:10   7        MR. POZZA:  I'm going to object that it's vague

05:10   8   and ambiguous and wholly outside the topics of this

05:11   9   deposition.  She's not testifying as a corporate

05:11   10  representative on YouTube practices.

05:11   11       MR. GUPTA:  I'm asking as Columbia regarding

05:11   12  Columbia content.

05:11   13       Do you -- would you object to that?

05:11   14       MR. POZZA:  Also, a incomplete hypothetical.

05:11   15  Same objection.

05:11   16       THE WITNESS:  Generally, we would want the

05:11   17  trailers disseminated and shown on authorized -- on

05:11   18  sites we consider legitimate and to be shown, yes, but

05:11   19  certainly not prematurely in any way before we release

05:11   20  them.

05:11   21  BY MR. GUPTA:

05:11   22  Q    If a user of Hotfile were to post a trailer to

05:12   23  Hotfile and link it from a nonpornographic website to

05:12   24  share with visitors to that site, would Columbia object

05:12   25  to that?

Solmon, Vicki R.                    12/9/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 197

05:12  1          MR. POZZA:  Object that it's an incomplete

05:12  2   hypothetical.

05:12  3          THE WITNESS:  It probably would not fall within

05:12  4   the gambit of our instructions because trailers are very

05:12  5   short.  And because we -- we normally have a minimum

05:12  6   length, and the trailers are shorter than that length.

05:12  7   BY MR. GUPTA:

05:12  8      Q   I'm sorry.  I don't think I understand the

05:12  9   answer.

05:12 10      A   We normally instruct our vendors not to send

05:12 11   notices for a clip or a segment that is shorter than a

05:13 12   certain length.

05:13 13      Q   What is that length?

05:13 14      A   The trailers would fall within --

05:13 15          I wasn't finished.

05:13 16      Q   I'm sorry.

05:13 17      A   A trailer would fall within that length, so we

05:13 18   normally are not taking down trailers after they have

05:13 19   been authorized to be sent.

05:13 20      Q   Are you done?

05:13 21      A   Yes.

05:13 22      Q   What is that length?

05:13 23          MR. POZZA:  I'm going to object that the

05:13 24   disclosure of the specific length would fall squarely

05:13 25   within the antipiracy investigation, protective order,

VICKI R. SOLMON, ESQ.                    12/9/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

1

2

3

4

5

6

7

8

9          I, VICKI R. SOLMON, ESQUIRE, do hereby declare

10   under penalty of perjury that I have read the foregoing

11   transcript; that I have made any corrections as appear

12   noted, in ink, initialed by me, or attached hereto; that

13   my testimony as contained herein, as corrected, is true

14   and correct.

15

16

17        EXECUTED this _15_ day of _February_,

18   20_12_, at _LOS Angeles_, _Ca_.
                        (City)              (State)

19

20

21

22        _Vicki R Solmon_
          VICKI R. SOLMON, ESQUIRE

23        Volume 1

24

25

Errata Sheet
Deposition of Vicki Solmon
December 9, 2011 and December 23, 2011

| Location | Correction |
|---|---|
| **Day 1** | |
| 7:7 | change "Hotfield" to "Hotfile" |
| 17:15 | change "ERA services" to "ARA Services" |
| 21:15 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 21:17 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 21:20 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 21:21 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 22:19 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 24:14-15 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 24:16-17 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 31:11 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 31:14 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 32:2 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 35:18 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 47:21 | change "Michelle Huynh" to "Michelle Wang" |
| 47:22 | change "Huynh" to "Wang" |
| 58:25 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 71:1 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 81:10 | change "A-Plex" to "Aiplex" |
| 141:8 | change "compiled each to" to "compelled each to" |
| **Day 2** | |
| 231:16 | change "question" to "answer" |

Solmon, Vicki R.                    12/9/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 219

1

2          I, the undersigned, a Certified Shorthand

3     Reporter of the State of California, do hereby certify:

4          That the foregoing proceedings were taken

5     before me at the time and place herein set forth; that

6     any witnesses in the foregoing proceedings, prior to

7     testifying, were duly sworn; that a record of the

8     proceedings was made by me using machine shorthand

9     which was thereafter transcribed under my direction;

10    that the foregoing transcript is a true record of the

11    testimony given.

12          Further, that if the foregoing pertains to

13    the original transcript of a deposition in a Federal

14    Case, before completion of the proceedings, review of

15    the transcript [ x ] was [ ] was not requested.

16          I further certify I am neither financially

17    interested in the action nor a relative or employee

18    of any attorney or party to this action.

19          IN WITNESS WHEREOF, I have this date

20    subscribed my n

21

22    Dated: 12-12-1

23

24    _____
      LORI SCINTA, RPR

25    CSR No. 4811

# EXHIBIT 8

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA


DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

          Plaintiffs,
                               CASE NO.
     vs.                       11-20427-WILLIAMS-TURNOFF

HOTFILE CORP., ANTON TITOV,
and DOES 1-10,

          Defendants.
_____
AND RELATED CROSS-ACTION.
_____


     HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

       VIDEOTAPED DEPOSITION OF MICHAEL BENTKOVER

             Los Angeles, California

           Tuesday, December 13, 2011



Reported by:
LORI SCINTA, RPR
CSR No. 4811

Job No. 177476A

Page 2

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF FLORIDA

3

4    DISNEY ENTERPRISES, INC.,
     TWENTIETH CENTURY FOX FILM
5    CORPORATION, UNIVERSAL CITY
     STUDIOS PRODUCTIONS LLLP,
6    COLUMBIA PICTURES INDUSTRIES,
     INC., and WARNER BROS.
7    ENTERTAINMENT INC.,

8          Plaintiffs,
                                CASE NO.
9      vs.                      11-20427-WILLIAMS-TURNOFF

10   HOTFILE CORP., ANTON TITOV,
     and DOES 1-10,
11
           Defendants.
12   _____
     AND RELATED CROSS-ACTION.
13   _____

14

15    HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

16          Videotaped deposition of MICHAEL BENTKOVER,

17   taken on behalf of Defendants and Counterclaimant

18   at 633 West Fifth Street, Suite 3600, Los Angeles,

19   California, beginning at 9:38 A.M. and ending at

20   12:17 P.M. on Tuesday, December 13, 2011, before

21   LORI SCINTA, RPR, Certified Shorthand Reporter No.

22   4811.

23

24

25

Page 3

```
 1    APPEARANCES:

 2

 3    For Plaintiffs:

 4
          JENNER & BLOCK LLP
 5        BY:  STEVEN B. FABRIZIO
          Attorney at Law
 6        1099 New York Avenue, NW, Suite 900
          Washington, D.C. 20001-4412
 7        202.639.6000
          Email:  sfabrizio@jenner.com
 8

 9
      For Defendants and Counterclaimant:
10

11        FARELLA BRAUN + MARTEL LLP
          BY:  EVAN M. ENGSTROM
12        Attorney at Law
          235 Montgomery Street
13        San Francisco, California 94104
          415.954.4400
14        Email:  eengstrom@fbm.com

15

16
      Videographer:
17

18        VONYARN MASON
          SARNOFF COURT REPORTERS
19        20 Corporate Park, Suite 350
          Irvine, California 92606
20        877.955.3855

21

22

23

24

25
```

Page 6

1                     INDEX (Continued):

2

3

4                  REFERENCE REQUESTED

5                        (None)

6

7

8            INSTRUCTION NOT TO ANSWER

9                        (None)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 17

1   easier.  Less confusion later on.

2            MR. ENGSTROM:  So I would like to mark as

3   Bentkover 1 this document here.

4            (Bentkover Exhibit 1 was marked for

5            identification by the court reporter.)

6            (Discussion off the record.)

7            MR. FABRIZIO:  She's saying that because some

8   witnesses -- not you, of course --

9            THE WITNESS:  Right.

10           MR. FABRIZIO:  -- tend to walk out with their

11  little fingers on the documents, and then she has to

12  chase them down the rest of the week.

13           THE WITNESS:  I'll make sure I give it back to

14  you.

15  BY MR. ENGSTROM:

16       Q   Please take a look and just --

17       A   Okay.

18       Q   -- review the document and let me know when

19  you've had a chance to...

20           You can mainly focus on the first two pages of

21  it.  I won't be asking about the rest.

22           MR. FABRIZIO:  Counsel, just while the witness

23  is reviewing this, I -- I -- I just note that the two

24  emails on the first page are several months apart.

25           Is this how it was produced to you?

1           MR. ENGSTROM:  Yes.  It -- let me -- we'll get

2      there.  Yes, these are produced --

3           Q    I guess the first question is:  Do you have any

4      reason to believe that this document is not what it

5      appears to be?

6           A    No.  This is -- this looks correct.

7           Q    Okay.  Do you have any reason --

8           MR. FABRIZIO:  I'll lodge an objection as to

9      vague.

10     BY MR. ENGSTROM:

11          Q    Okay.  Do you have any reason to believe that

12     any documents that were produced by Warner in this

13     deposition that bear your email address as a "To:" or

14     "From:" are not authentic?

15          MR. FABRIZIO:  Objection.  Calls for

16     speculation and lacks foundation.

17     BY MR. ENGSTROM:

18          Q    You can answer.

19          A    I don't know.  This is the only document I've

20     seen.  So far, I'm fine with it.

21          Q    I understand.

22          But you -- there's no reason you would believe

23     that any documents that your -- Warner Bros. produced

24     would be inauthentic?

25          MR. FABRIZIO:  Again, calls for speculation,