**FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

    *Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

    *Defendants*.

_____/

HOTFILE CORP.,

    *Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

    *Counter-Defendant*.

_____/

FILED by __AL__ D.C.

FEB 17 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
MOTION OF DEFENDANT HOTFILE CORPORATION
FOR PARTIAL SUMMARY JUDGMENT BASED ON THE
THE DIGITAL MILLENIUM COPYRIGHT ACT SAFE HARBOR**

Pursuant to Local Rule 56.1(a) Defendant Hotfile Corp. submits this statement of material facts as to which there is no genuine dispute to be tried. Unless otherwise noted, each of these facts is undisputed during the period from February 18, 2011 to the present.

FILED UNDER SEAL                                         CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

1. **Hotfile is a 'service provider' under 17 U.S.C. § 512(k)(1)(B).** Plaintiffs have admitted that they "do not and will not contend, for purposes of this litigation, that Hotfile is ineligible for the DMCA safe harbor at 17 U.S.C. § 512(c) by virtue of not being a 'service provider' under 17 U.S.C. § 512(k)(1)(B)." (Gupta Dec. Ex. 13, Response to Request for Admission No. 4.[1])

2. **Hotfile users who upload files have to agree to Terms of Service and an Intellectual Property Policy which prohibit copyright infringement.** (Titov Dec. ¶ 3.)

3. **In December 2009, Hotfile registered its DMCA agent with the Copyright Office and has maintained that registration continuously ever since.** In December 2009, Hotfile formally registered a Designated DMCA Agent with the U.S. Copyright Office along with the abuse@hotfile.com email address. (Titov Dec. Ex. 16.)

4. **Hotfile has continuously made the abuse@hotfile.com email address available on its website since its outset to the present.** (Titov Dec. ¶ 13, Exs. 15, 19; *see also*, Gupta Dec. Ex. 14, Def.'s Suppl. Am. Resp. to Pl.'s Interrog. No. 2.)

5. **Since at least May 2010, Hotfile's publicly posted Intellectual Property Policy has expressly incorporated the DMCA, informed users of its repeat infringer policy, and made available the name, address, and email address of its Designated Agent.** (Titov Dec. ¶ 17, Exs. 17 and 19; Gupta Dec. ¶ 22; *see also*, Gupta Dec. Ex. 14, Def.'s Suppl. Am. Resp. to Pl.'s Interrog. No. 2 ("Hotfile is informed and believes that Mr. Luchian's name and status as DMCA agent was first listed on the Hotfile.com website in early May 2010 and has been listed on the website ever since."), Ex. B).

6. **Hotfile.com has always allowed content owners to send DMCA takedown notices.** The first version of Hotfile's website had a "report abuse" form for providing notice of suspected infringing links. Users would input an allegedly infringing URL into this form. This generated a message to Hotfile's abuse department. In response Hotfile took down the links. (Titov Dec. Ex. 9.)

7. **Content owners – including the Studios and their agents -- have contacted Hotfile's abuse department to request that allegedly copyright infringing files be taken down.** (Titov Dec. ¶ 14, Exs. 10-14.)

---

[1] Gupta Declaration is attached as Exhibit A and Titov Declaration is attached as Exhibit B to the Motion and Memorandum In Support of Hotfile's Partial Summary Judgment.

2

**FILED UNDER SEAL** CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

8. **Hotfile has made available to copyright owners including the Studios Special Rightsholder Accounts (or SRAs) that streamline notice and takedown by giving the content owner the ability directly to takedown files.** With SRAs, rightsholders, who attest under the DMCA that they have authority of the copyright owner, can enter a list of URLs for files on Hotfile's systems, and those files are automatically and instantly taken down; no further action by Hotfile is required. (Titov Dec. ¶ 21, Ex. 22 (Screenshot of SRA).)

9. **Hotfile notified content owners of the availability of the SRA tool.** SRAs became available in the summer of 2009. (Titov Dec. Ex. 23.) It reached out to the Studios to encourage adoption of SRAs. (Titov Dec. Exs. 24-25; Gupta Dec. Ex. 15, Perkins Depo. 109:7-112:6 (authenticating Ex. 24 (reaching out to Universal)); Gupta Dec. Ex. 7, Solmon Depo. 117:3-121:21 (authenticating Ex. 25 (reaching out to Sony Pictures / Columbia).)

10. **Many content owners, including the Studios, and their content-protection agents, have used SRAs to effectuate instant notice-and-takedown.** Today, there are approximately one hundred such accounts in active use. (Titov Dec. ¶ 25.)

11. **Before filing this lawsuit, the Plaintiff Studios professed satisfaction with this technology as a way to protect their content.** For example, they have thanked Hotfile for its "fast cooperation," its "commitment to copyright compliance" and its "time and cooperation." (Titov Exs. 30-33 (collecting endorsements from content owners.) )

12. **Plaintiff Warner requested another hosting site to copy Hotfile's SRA.** Warner requested Fileserve.com, to implement "[a]n automated way to remove files," noting that "[o]ther sites that offer same kind of services as Fileserve.com have provided Warner with a takedown tool that allows Warner to log in and remove the infringing link immediately and hence more efficiently curb the spread of piracy of Warner's content." (Gupta Dec. Ex. 16, Ex. 8, Bentkover Depo 47:4-13, 51:8-11 (authenticating exhibit).)

13. **Hotfile implemented MD5 hashes, so that once subject to a takedown notice, identical copies of the same file could not be downloaded in the future (even if uploaded by a different user).** Soon after launching SRAs, Hotfile implemented hashing technology so that once a file was deleted (by SRA or DMCA takedown notice) all identical copies were removed from the system and the same file was prevented from being uploaded again by the same user or others, even under a different filename. This was accomplished with an MD5 hash for each file

3

which is "almost like a fingerprint" for each file. (Titov Dec. ¶ 27; Gupta Dec. Ex. 5, Zebrak Depo. (day 2), 89:18-20.)

14. **Hotfile did not have knowledge that the files-in-suit were allegedly infringing before receiving DMCA notices or SRA requests from the Studios.** (Titov Dec. ¶ 6.) Hotfile did not have either actual knowledge that the files-in-suit were infringing or an awareness of facts and circumstances indicating they were infringing post-February 18, 2011. (Titov Dec. ¶ 6.)

15. **Hotfile does not in the ordinary course of business review the millions of files its users upload.** Independent of copyright owner reports and the occasional report from a third-party, Hotfile does not come to know of specific files that are alleged to be infringing. (Titov Dec. ¶ 6.) As a provider of storage services, Hotfile does not index its content files for keyword searching. (Titov Dec. ¶ 6; Compl. ¶ 22.)

16. **The number of files that the Studios have accused of infringing in this case constitute less than 1% of the files on Hotfile.** (Titov Dec. ¶ 30.)

17. **Hotfile typically removes files identified in an email or online DMCA notice within 48 hours.** (Titov Dec. ¶ 19.)

18. **Hotfile took down each file-in-suit for which a takedown notice was received after February 18, 2011 within 48 hours of Hotfile's receiving the notice of infringement.** (Titov Dec. ¶ 30.) The Studios failed to identify a single URL that they contend is infringing, which they notified Hotfile of and which was not expeditiously taken down. (Gupta Dec. Ex. 17, Pl.'s Resp. to Interrog. No. 20 (identifying no such URLs and never supplementing interrogatory response.) )

19. **Hotfile derives revenues exclusively from premium access fees.** Hotfile's revenues come entirely from premium access fees that users pay to obtain higher speed access. The fee is content-neutral. It does not vary based on what or how much users are consuming—they could be using Hotfile for personal cloud storage, file transfer and space-shifting, downloading open source software, or streaming video. (Titov Dec. ¶ 7.)

20. **Hotfile does not benefit directly from infringing activity.** Hotfile's revenues come entirely from premium access fees that users pay to obtain higher speed access. The fee is content-neutral. It does not vary based on what or how much users are consuming—they could

4

**FILED UNDER SEAL** CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

be using Hotfile for personal cloud storage, file transfer and space-shifting, downloading open source software, or streaming video. (Titov Dec. ¶ 7.)

21. **Since February 18, 2011, Hotfile has adopted and reasonably implemented and informs its users that it has a repeat infringer policy.** Upon reviewing the Complaint, in February 2011, Hotfile proactively instituted a "three-strikes" policy. (Titov Dec. ¶ 32.) Upon receiving three qualifying takedown notices for files in a user's account, Hotfile suspends all the users' files and all their accounts. (Titov Dec. ¶ 33.) Similar three strikes policy had recently been endorsed by the court in decisions and commentary. *Io*, 586 F. Supp. 2d at 1143-45 (upholding strikes-based policy as a matter of law); *UMG Cir.*, 2011 WL 6357788, *5, n. 5 (not challenging Veoh's strikes based repeat infringer policy); *Viacom, Inc. v. Youtube, Inc.* 718 F.Supp.2d 514, 527 (S.D.N.Y. 2010) (three-strikes policy upheld).

22. **Hotfile's post-February 18, 2011 "three-strikes" policy provides for the termination in appropriate circumstances of accounts who are repeat infringers.** The policy terminates and blacklists users who receive three DMCA notices of claimed infringement or SRA requests. Under its three-strikes policy, Hotfile tracks how many times it receives notices of claimed infringement for a user under the DMCA or by SRA. Once a user receives three strikes, all their files are suspended, their account is permanently terminated and their email address is blacklisted. All notices generally count as a strike, except that if a single user receives two takedown notices from the same SRA within a two hour period, these are counted as a single strike. (Titov Dec. ¶ 33.)

23. **Hotfile has terminated many users pursuant to this strengthened repeat infringer policy.** (Titov Dec. Ex. 35)

24. **Hotfile accommodates and does not interfere with technical measures that are used by copyright owners to identify or protect copyrighted works.** (Titov Dec. ¶ 39.)

25. **In the summer of 2011, Hotfile adopted Vobile MediaWise content identification technology.** (Titov Dec. ¶ 34, Ex. 36.) Vobile fingerprinting technology identifies files that have characteristics matching content registered by copyright owners in Vobile's database, which Hotfile then blocks. It can identify files that have never been subject to a takedown notice as copyrighted. (Gupta Dec. Ex. 18, Wang Depo. 13:20-14:6 ("Q And what do you mean by fingerprint? A Fingerprint is a technology term to describe, you know, ways

5

**FILED UNDER SEAL**                       CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

to -- the features to identify the content. So very much like the fingerprint of a person. It's a signature, basically, extracted from the content and use that to identify the content.")

26. **In late 2011, Vobile released vCloud9.** In the late summer of 2011 video fingerprinting vendor Vobile launched vCloud9, touted as its first product capable of identifying copyrighted content on a cloud storage service. (Gupta Dec. Ex. 19, Sept. 2011 Vobile Press Release; Gupta Dec. Ex. 18, Wang Depo. 45:1-46:9 (authenticating testimony); 47:23-48:9; 42:24-43:8 ("VCloud9 is a content identification products [sic] we design and provided for storage-based service providers…like Hotfile, Drop Box, you know all those kinds of place—online storage service provider.")

27. **In February 2012, Hotfile adopted Vobile vCloud9 content identification technology.** (Titov Dec. ¶ 35, Ex. 37) Hotfile blocks the files identified by vCloud9 as copyrighted, and this includes whatever copyrighted content each of the studios chooses to protect. (*Id.*) vCloud9 has been endorsed by the Motion Picture Association of America as "ensur[ing] copyright compliance." (Gupta Dec. Ex. 20, Suh Depo. 235:10-236:19.)

28. **Hotfile continues to improve and refine its countermeasures against infringement.** In February 2012, Hotfile modified its Affiliate Program in response to market shifts so it no longer counts encrypted files for affiliate credit, no longer offers a site referral affiliate program, and counts credits only based on premium conversions (not download counts). Hotfile has eliminated the ability of users to anonymously upload files. Hotfile now requires users to attend an online "copyright school" on their first strike. On a users' second strike they are disqualified from the affiliate program and on their third strike they are terminated from Hotfile. (Titov Dec. ¶ 36.)

DATED: February 17, 2012                  Respectfully submitted,

                                          /s/ Janet T. Munn
                                          Janet T. Munn, Esq. Fla. Bar No. 501281
                                          Email: jmunn@rascoklock.com
                                          RASCO KLOCK
                                          283 Catalonia Avenue, Suite 200
                                          Coral Gables, Fl 33134
                                          Telephone: 305.476.7101
                                          Telecopy: 305.476.7102

6

**FILED UNDER SEAL**                               CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

And

*/s/ Roderick M. Thompson by Janet J. Thum*
Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email: rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email: aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email: tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email: dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email: jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

And

Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone: 617.928.1800
Telecopy: 617.928.1802

*Counsel for Defendants Hotfile Corporation
 and Anton Titov*

**FILED UNDER SEAL**                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2012, a true and correct copy of the foregoing document, was filed conventionally under seal and served on all counsel of record identified below via e-mail and via FedEx.

Karen L. Stetson, Esq., Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Telephone: 818.935.5812

By: /s/ Janet A. Munn
Janet T. Munn