

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

### **PLAINTIFFS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT AGAINST DEFENDANTS HOTFILE CORP. AND ANTON TITOV**

### **[CONFIDENTIAL]**

### **[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

**I.      DEFENDANTS CANNOT PROVE ENTITLEMENT TO DMCA SAFE HARBOR.**

**A.      Defendants Failed to Reasonably Implement a Repeat Infringer Policy.**

1. **Defendants received notice of more than 8 million infringing files.** Foster Decl. ¶ 25.

2. **Defendants could have associated takedown notices with uploading users of the files.** Yeh Ex. 2 (Titov ESI dep.) at 51:23-52:4 ("trivial" to do so); Yeh Ex. 9 (Titov Decl., Feb. 27, 2011) ¶ 17.b (Hotfile keeps user upload records for Affiliate payments); Foster Decl. ¶ 20 (associating takedowns and uploading users "simple").

3. **Defendants had no policy or practice of keeping track of or investigating the uploaders of infringing files, though only defendants (not plaintiffs) can do so.** Yeh Ex. 2 (Titov ESI dep.) at 54:11-57:11; Yeh Ex. 1 (Titov dep.) at 279:11-17, 281:10-282:25, 283:24-284:4 (no practice of associating takedown notices with uploading user) & Yeh Ex. 1 (Titov Dep.) at 310:22-311:1 (copyright owners unable to learn identities of uploaders).

4. **Defendants had no policy or practice of terminating users who were the subject of multiple infringement notices or otherwise identified as infringers.**

   a.      Defendants admit they had no such policy prior to the litigation. Yeh Ex. 1 (Titov dep.) at 281:23-283:22 & 284:6-15.

   b.      Defendants admit to misrepresenting that Hotfile had a three-strike policy.

      i.      Yeh Ex. 10 & Yeh Ex. 12 ("We also have a system in place that flags the users that have numerous complain[t]s. We manually review those accounts and they are being deleted and their funds from our affiliate program seized.").

      ii.     Yeh Ex. 1 (Titov dep.) at 284:20-286:18 (not accurate statement of policy).

      iii.    Yeh Ex. 11 ("Every user received 3 DMCA reports will lead to mark account as repeat offender and we suspend it").

      iv.     Yeh Ex. 1 (Titov dep.) at 287:5-289:4 ("not accurate").

    c.    Hotfile terminated 43 users before the complaint.  Yeh Ex. 115 (Br. Appendix G); Foster Decl. ¶ 58; Yeh Ex. 13 at 26; Yeh Ex. 14; & Yeh Ex. 1 (Titov dep.) at 289:8-291:9, 295:15-19; 296:14-20 (only 43 pre-complaint terminations).

        i.    Thirty-three terminations were in response to a TRO obtained by the copyright owner Liberty Media.  *See* Yeh Ex. 1 (Titov dep.) at 299:17-304:10; Yeh Ex. 16; Yeh Ex. 14.

        ii.    Remaining pre-complaint terminations were in response to threats of litigation or a specific demand from copyright owners.  Yeh Ex. 1 (Titov dep.) at 304:11-322:21; Yeh Ex. 17 (DSH Productions); Yeh Ex.18 (BRYCI); Yeh Ex. 19; Yeh Ex. 20; Yeh Ex. 21; Yeh Ex. 84 (Pornguardian).

    d.    On Dec. 24, 2011, after Hotfile had been sued by copyright owner Perfect 10, Titov internally told Hotfile personnel:  "Be more strict in stopping these days, because during the case of Perfect 10 we may be asked how many accounts we have been stopped."  Yeh Ex. 21 & Yeh Ex. 1 (Titov dep.) at 319:3-320:6.

    e.    Yeh Ex. 22 (May 4, 2009 Digital Point Thread) at 5 ("If any of your files are reported by a real representative . . . then the file will be deleted, but your account credit will not be removed, and you will not be suspended from hotfile.com").

**5.    Prior to the complaint, over 24,000 Hotfile "repeat infringers" were not terminated.**

    a.    At least 24,790 Hotfile users had received three or more "strikes" by the date the complaint was filed, including 61 users who had 300 or more "strikes."  Yeh Ex. 116 (Br. Appendix H); Foster Decl. ¶ 60 (thousands received up to 100 strikes).

        i.    These 24,790 users were responsible for uploading nearly 50 million files after their third "strike."  Appendix H (Yeh Ex. 116); Foster Decl. ¶¶ 41-42 & Ex. D.

        ii.    Files uploaded by those users represents 44% of all files ever uploaded to Hotfile.  Foster Decl. ¶ 41 & Ex. D; *compare* Foster Decl. ¶ 52 (113 million uploads to Hotfile in total).

      iii.    Files uploaded by those users were downloaded almost 1.5 billion times. Yeh Ex. 116 (Br. Appendix H); Foster Decl. ¶ 41 & Ex. D; *compare* Foster Decl. ¶ 52 (2.88 billion downloads from Hotfile in total).

      iv.    Hotfile paid these repeat infringers more than $10.8 million, out of a total $13.1 million paid to *all* Affiliates.  Foster Decl. ¶ 41.

      v.    These users uploaded at least 646,902 files that contain plaintiffs' copyrighted works; these files were downloaded almost 21.5 million times. Foster Decl. ¶ 41 & Ex. D.

    b.    After implementing a "three strikes" policy following this litigation, Hotfile terminated over 22,000 users and 444 of all of its Top 500 Affiliates.  Yeh Ex. 117 (Br. Appendix I); Foster Decl. ¶¶ 59, 64 & Ex. J; Yeh Ex. 107. Downloads of files uploaded by users with three or more "strikes" accounted for more than half of all downloads from Hotfile.  Foster Decl. ¶ 52

---

**B.**    **Defendants Failed to Comply with DMCA Agent Designation Requirements.**

**6.**    **Defendants did not register an agent with Copyright Office until December 24, 2009.**  Yeh Ex. 23 at 6-7; Yeh Ex. 24; Yeh Ex. 1 (Titov dep.) at 434:23-18; *see also* Yeh Ex. 25; Yeh Ex. 6 (Luchian dep.) at 17:17-18:7.

**7.**    **Defendants did not identify a DMCA agent on the Hotfile website until May 2010.**  Yeh Ex. 23 at 7.

**8.**    **At the Copyright Office, Hotfile still identifies only a P.O. box for its DMCA agent.**  Yeh Ex. 24; Yeh Ex.1 (Titov dep.) at 438:20-439:21; Yeh Decl. ¶ 25 (investigation into address); *see also* Yeh Ex. 6 (Luchian dep.) at 129:6-130:17.

---

**C.**    **At All Times, Defendants Had Disqualifying Knowledge of Infringement.**

**9.**    **Defendants had actual knowledge of infringement on Hotfile.**

    a.    For some time, in response to a takedown notice, defendants blocked only a specific download link, knowing the infringing "master" file could still be

downloaded.

    i.    When multiple users upload digitally identical (or "hash identical") copies of the same file, Hotfile keeps one "master" copy.  Yeh Ex. 1 (Titov dep.) at 337:4-21.

    ii.    Hotfile gives users distinct download links for hash identical copies of the same file, and each of those download links point to the same "master" file.  Yeh Ex. 1 (Titov dep. ) at 338:22–339:11.

    iii.    When Hotfile received an infringement notice identifying the "master" file by one of the download links, Hotfile did not delete the "master," but instead disabled only the user-specific download link identified in the notice.  Yeh Ex. 1 (Titov dep.) at 339:20-341:8.

    iv.    Hotfile has a feature for users to receive up to six different download links for an uploaded file.  Yeh Ex. 1 (Titov dep.) at 468:22-469:14, 471:18-472:23.

    v.    When Hotfile received an infringement notice, Hotfile only disabled the single download link specified in a takedown notice, leaving the same user's other download links still active.  Yeh Ex. 1 (Titov dep.) at 473:2-475:17.

b.    Communications from Hotfile users identified the specific download link of the file the user came to Hotfile to download, which identified specific copyrighted works.  Yeh Ex. 26; Yeh Decl. ¶ 28 & Yeh Ex. 27 (chart of 700 user communications with "lastdl" matching studio works).

c.    Defendants assisted Hotfile users in downloading specifically identified files corresponding to copyrighted content.  Yeh Ex. 28.

**10.**    **Defendants had "red flag" knowledge of infringement on Hotfile.**

a.    The magnitude of infringement on Hotfile was high.

    i.    Over 90% of downloads were confirmed or highly likely infringing.  Yeh Ex. 110 (Br. Appendix B); Yeh Ex. 111 (Br. Appendix C); Waterman Decl. ¶¶ 8, 22, 27; Zebrak Decl. ¶ 16.

    ii.    Over 98% of Hotfile uploaders in the statistical analysis uploaded a file that was highly likely infringing.  Yeh Ex. 112 (Br. Appendix D); Zebrak Decl. ¶ 17.

    iii.    Hotfile has had to delete 68% of all files ever downloaded and 48% of all files ever uploaded for reasons related to copyright infringement.  Yeh Ex. 113 (Br. Appendix E); Foster Decl. ¶ 63 & Ex. I.

    iv.    Of all Hotfile users with an average number of uploads (171), 80% had "strikes," and more than 40% has to be terminated (post-complaint) as repeat infringers; of users who uploaded at least 500 files, almost 90% had "strikes," and of users who have uploaded at least 2,000 files, approximately 95% had "strikes."  Yeh Ex. 114 (Br. Appendix  F); Foster Decl. ¶ 50.

    v.    As of the filing of the complaint, 50,566 Hotfile users had been the subject of at least one copyright infringement notice.  Foster Decl. ¶ 60; *see also* Yeh Ex. 116 (Br. Appendix H).

    vi.    After Hotfile adopted a "three strikes" termination policy, 89% of its Top 500 highest paid Affiliates had to be terminated as repeat infringers -- and most of those not suspended had not uploaded any files after Hotfile adopted the policy.  Yeh Ex. 117 (Br. Appendix I) & Foster Decl. ¶¶ 59, 64 & Ex. J.

    vii.    User terminated for copyright infringement uploaded more than half of Hotfile's files.  Foster Decl. ¶ 52(b).

b.    Defendants' personnel used Hotfile to download files containing copyrighted works.  Yeh Decl. ¶ 30 & Yeh Ex. 29 (analysis of employee files).

c.    Defendants received communications from users stating that they were downloading or just had downloaded named copyrighted works.  Yeh Ex. 30; *supra* SUF 9(b) & 9(c).

d.    Many of Hotfile's paid "Affiliate" link sites were obvious infringers.

    i.    Defendants "restored" the Affiliate account of the operator of allyoulike.com, who openly operated a website with links to copyrighted content.

      •    The operator claimed to have worked "fervently worked for Hotfile" to sell "thousands of Hotfile premium accounts."  Yeh Exs. 99-101.

      •    The website features links to copyright content like *How I Met Your Mother* and *Happy Feet Two*.  Yeh Exs. 102-03 (screenshots of allyoulike).

- Hotfile received at least 432 infringement notices on the files uploaded by the allyoulike operator. Foster Decl. ¶¶ 54-55.
- Hotfile paid him more than $41,000 in Affiliate fees. Foster Decl. ¶¶ 54.

ii.  After observing that "piracy activity obviously prospers" on Affiliate site PlanetSuzy, Hotfile continues to pay the site. Yeh Ex. 104 & Foster Decl. ¶ 56.

iii.  The names and home pages of Hotfile's Affiliates websites reference the availability of copyrighted content. Yeh Ex. 31 (currentmoviereleases.net); Yeh Ex. 32 (online-television.tv); Yeh Ex. 33 (free-albums.net); Yeh Ex. 34 (ebook-free-download.net); Yeh Ex. 35 (copymovie.net); Yeh Ex. 36 (topdvdmovie.net); Yeh Ex. 37 (amazingtv.info); Yeh Ex. 38 (tvrip.info); Yeh Ex. 39 (hotfilemovie.net); Yeh Ex. 40 (tvseries.me); Yeh Ex. 41 (seriesfree.biz); Yeh Ex. 42 (best-movies.info); Yeh Ex. 43 (other Affiliate screenshots); Yeh Ex. 106 (spreadsheet identifying Affiliates); Foster Decl. ¶ 57 & Ex. F (noting websites are registered Affiliates). *See also* Yeh Exs. 94 & 105 (link sites shut down by law enforcement or found liable for copyright infringement).

iv.  Defendants paid such Affiliate sites thousands of dollars. Yeh Ex. 95 & Yeh Ex. 1 (Titov dep.) at 549:4-550:23.

e.  Defendants illustrated Hotfile operations using infringing works.

i.  Yeh Ex. 44 & Yeh Ex. 1 ( Titov dep.) at 531:9-532:17 (Pussycat Dolls).

ii.  Yeh Ex. 45 & Yeh Ex. 1 (Titov dep.) at 632:15-634:4 (copyrighted album).

iii.  Yeh Ex. 47 at 2; Yeh Ex. 1 (Titov dep.) at 637:23-639:23; Yeh Ex. 48 at 7-8 (copyrighted adult movie).

f.  Defendants internally discussed the use of Hotfile for infringement.

i.  Defendants observed that a boost in profits was likely due to a shutdown infringing websites by federal authorities: "Hollywood has closed down 3-4 large websites for illegal movies and that could have redirected users to us." Yeh Ex. 49; Yeh Ex. 1 (Titov dep.) at 634:20-636:13; Yeh Ex. 3 (Stoyanov dep.) at 58:2-6:17-61:21 ("since these websites were closed down, such people would try and use our website to upload such movies . . . .").

  ii.  Defendants discussed potential deals with copyright owners in order to show a "legitimate" or "legal" use of Hotfile.  Yeh Ex. 50; Yeh Ex. 51 & Yeh Ex. 1 (Titov dep.) at 247:25-249:24, 252:6-14, 259:12-261:6.

  iii. Defendants discussed how to report misidentified "fake" content in context of *Prison Break* episode mis-labeled as a *Fringe* episode.  Yeh Ex. 46 & Yeh Ex. 1 (Titov dep.) at 628:16-630:10.

 g. In May 2010, a Hotfile user told Hotfile that, in attempting to copy his Hotfile files from Hotfile to Rapidshare, Rapidshare blocked them as copyright infringing.  Titov commented internally that, since Hotfile did not want to support transferring files to competing hub sites, "it is not a problem which we have to make efforts to solve."  Yeh Ex. 52  & Yeh Ex. 1 (Titov dep.) at 717:1-13, 719:12-721:14.

 h. Defendants recognized internally that Hotfile was becoming the "flagship" of piracy.  Yeh Ex. 53 & Yeh Ex. 3 (Stoyanov dep.) at 80:8-80:15.

**11.**  **Defendants willfully blinded themselves to infringement on Hotfile.**

 a. Defendants stated that "what is protecting us legally is the fact that we don't know what is up there on our site."  Yeh Ex. 54.

 b. Defendants do not have a "search" function on the Hotfile website.

  i.  Yeh Ex. 1 (Titov dep.) at 444:8-446:5 (no logical reason for no search function).

  ii. Yeh Ex. 55 at p. 15 (pirate websites advised to "disaggregate" functions to avoid liability)

 c. Titov stated that Hotfile could review what its users were downloading but that, outside of this litigation, defendants have never done so.  Yeh Ex. 1 (Titov dep.) at 705:18-706:3.

 d. Until after this litigation was filed, defendants had no policy to associate infringement notices with the uploading user or keep track of such users. *Supra* SUF 3, 4(a) & (b).

**D.   Defendants' Inducement of Infringement Disqualifies Them from Safe Harbor.**

12.   *See infra* SUF **16.**

## II.   DEFENDANTS ARE LIABLE AS SECONDARY COPYRIGHT INFRINGERS.

### A.   Hotfile Users Are Direct Infringers.

13.   Plaintiffs owns the exclusive rights under the Copyright Act to reproduce and distribute to the public each of the copyrighted works identified in Exhibit A to their respective declarations.  Reed Decl. ¶ 3 & Ex. A; Zedek Decl. ¶ 3 & Ex. A; Seabrook Decl. ¶ 3 & Ex. A; Solmon Decl. ¶ 3 & Ex. A; Kaplan Decl. ¶ 3 & Ex. A.

14.   Plaintiffs have not authorized the reproduction or distribution of their copyrighted works by defendants or for free and unrestricted distribution over the Internet.  Reed Decl. ¶ 4; Zedek Decl. ¶ 4; Seabrook Decl. ¶ 4; Solmon Decl. ¶ 4; Kaplan Decl. ¶ 4.

15.   Hotfile users have infringed under the Copyright Act each of the copyrighted works identified in Exhibit A of the Reed, Zedek, Seabrook, Solmon, and Kaplan Declarations.  Foster Decl. ¶¶ 72; Sehested Decl. ¶¶ 4, 5 & Ex. A, B; Yeh Decl. ¶ 57 & Ex. 56.

### B.   Defendants Are Liable for Inducement of Copyright Infringement.

16.   Defendants operate Hotfile with the object that it will be used for infringement.

   a.   Defendants' "Affiliate Program" encourages copyright infringement.

   i.   Defendants designed the Hotfile Affiliate program to attract users to Hotfile to convert to paying "premium" subscribers.

   • Yeh Ex. 1 (Titov dep.) at 649:15-651:22 (payment and rank of Affiliates depends on the "number of premium accounts the affiliate is selling").

- Yeh Ex. 57(Affiliate rank determined by "ratio of users that downloaded your files and the users that become premium based on your uploaded files").

- Yeh Ex. 58 at 1 ("If you just upload, yes you may have downloads, but if we don't receive premium conversion from your users, how we supposed to pay you?  Where to get money from?"); *id.* at 3 ("Essentially to reach a higher status your links should sell more premium accounts"); *see also* Yeh Ex. 1 (Titov dep.) at 76:19-77:3, 493:21-494:14, 683:9-685:14.

- Yeh Ex. 7 (Lynde dep.) at 261:22-262:6 (agreeing that Hotfile's business depends upon attracting users to the site to covert to premium users).

ii.   To attract users to Hotfile, defendants pay Hotfile Affiliates to upload files that will be "popular" with downloaders.

- Yeh Ex. 58 at 1 ("[W]e want to benefit all uploaders which works good, got many downloads of their files . . . "); *id.* at 5 ("Why should you upload files that nobody wants to download? . . . You may think you files are interest[ing] and most probably they are, but we must convince downloaders.").

- Yeh Ex. 1 (Titov dep.) at 669:4-14 ("interesting" files are those that would be popular with downloaders).

- Yeh Ex. 7 (Lynde dep.) at 262:3-6 (agrees that providing access to content on Hotfile attracts users to the site).

iii.   To encourage Affiliates to upload "popular" files, defendants pay Affiliates based on how many times a file is downloaded; the more times a files is downloaded, the more defendants pay the Hotfile Affiliate who uploaded it.

- Yeh Ex. 1 (Titov dep.) at 655:3-17; 656:11-10 (one file downloaded 10,000 times is better than 10,000 files downloaded once each)

- Yeh Ex. 57 (Titov Ex. 165) (affiliate ranks depends on "ratio of uploaded files to number of downloads").

- Yeh Ex. 59 at 3 (Hotfile FAQ: "Put more effort into bringing more visitors to download your files, rather than to upload more files.  If you upload 10Gb of files everyday just to have every file downloaded just few times,

9

you are going to be stuck with Copper" ranking.).

- Yeh Ex. 60 (affiliate program "pays up to $10 per 1k download of files").

iv.    Defendants discourage uploading files that will not be downloaded.

- Yeh Ex. 58 at 5 ("To pay you just to upload?!  Why should we pay you then? . . . Why should we upload files that nobody wants to download?").

- Yeh Ex. 61 at 13 ("some webmaster just . . . upload LOTS of gigabytes, but don't promote their files.  So these kind of webmasters use our server resources, upload resources, bandwidth, diskspace and at final they make our service to work slow.").

- Yeh Ex. 1 (Titov dep.) at 650:23-651:10; 653:17-654:22 (Affiliate rank takes into account expenses, which included bandwidth); *id.* at 680:20-682:13 (Hotfile estimates cost of storage for uploaded files).

- *See supra* SUF 16(a)(i)-(iii), incorporated herein by reference (payments to Affiliates only for highly downloaded files that convert premium users).

v.    Defendants discourage Affiliates from uploading files for personal storage or that the Affiliates do not intend to "promote" by disseminating the download link.

- Yeh Ex. 59 at 3 ("Upload files only if you inten[d] to promote them.  Used server space is accounted when your rank is considered.") & Yeh Ex. 58 at 4.

- Yeh Ex. 62 & Yeh Ex. 1 (Titov dep.) at 678:5-680:18 ("upload less and promote more").

- Yeh Ex. 57 ("Earn money while uploading and sharing your files with your friends").

- Yeh Ex. 1 (Titov dep.) at 656:21-657:6.

- *See supra* SUF 16(a)(iv).

vi.    Defendants delete files for "inactivity" if they are not downloaded frequently.

- Yeh Ex. 1 (Titov dep.) at 709:17-711:15 (files of non-premium users deleted if not downloaded within 14-90 days); Yeh Ex. 59 at 2 (files of non-premium users deleted if not downloaded); Foster Decl. ¶ 46 (many

millions of files deleted for "inactivity")

vii.   Content "popular" with downloaders is overwhelmingly copyrighted. *See supra* SUF 10(a); Yeh Ex. 113 (Br. Appendix E) (more popular files more likely to be deleted for copyright infringement); Foster Decl. ¶ 63 (same); Yeh Ex. 60 (seeking users to upload "mp3, videos, applications, games on our file host and spread these links over forums like pornbb.org (for videos) and like http://www.zona-musical-com/forum1.html (for mp3) and other forums where download links are posted (to games, applications and so on")).

viii.   Defendants' economist Dr. Lynde testified that the "incentive structure" of the Hotfile Affiliate program is designed encourage users to upload files that will be popular with downloaders.  Yeh Ex. 7 (Lynde dep.) at 267:23-268:12, 269:6-270:8.

ix.   The amount defendants pays Affiliates more for uploading larger sized files.

- Yeh Ex. 1 (Titov dep.) at 657:10-18 ("Affiliates are generally rewarded more for larger files") & Yeh Ex. 57 (Earnings Table showing higher payments for larger files).
- Yeh Ex. 1 (Titov dep.) at 660:17-661:1 ("I believe that a user downloading a larger file would be more likely to want to download it faster and upgrade to premium").

x.   Motion pictures, television programs and other popular entertainment content (such as video games) tend to be very large files, usually over 100MB in size.  Foster Decl. ¶ 8.

xi.   Copyright infringing files are more likely to be larger (over 50MB) and noninfringing files are more likely to be smaller (under 50MB).  Yeh Ex. 109 (Br. Appendix A); Foster Decl. ¶ 34.

xii.   Hotfile's Affiliate program encourages website operators to host and promote download links to files stored on Hotfile.

- Yeh Ex. 57 ("No matter if download link is yours or you've found it elsewhere!  Post interesting download links . . . and earn big money.").
- Yeh Ex.63 at 2 ("Earn money spreading links in your site! . . . . Post

11

interesting download links in your site, blog or forum and earn big money.") & Yeh Ex. 1 (Titov dep.) at 671:19-673:4.

- Yeh Ex. 60 ("I need someone to promote a free file hosting site as itself and its affiliate program. I need link to my sites appears on appropriate sites, forums, blogs, and so on – without spamming!").

- Yeh Ex. 86 (Digital Point Thread 7/16/09) at 6 (Titov posting it is a "good thing . . . that people will make search/catalogue sites like rapidlibrary.com and more people will download our links."); *see also* Yeh Ex. 1 (Titov dep.) at 77:17-78:2 (testifying to use of online screen name of "Virus" or "Virco").

xiii.  Defendants pay website operators whenever users coming from their sites purchase "premium" subscriptions. Yeh Ex. 2 (Titov ESI dep.) at 30:23-32:12; Yeh Ex. 1 (Titov dep.) at 665:15-66:7, 668:6-669:14.

b.  Defendants targeted uploaders likely to engage in copyright infringement.

  i.  Defendants targeted "good uploaders" who would upload and promote files for widespread distribution. *See supra* SUF 20(a)(ii)-(v).

  ii.  Yeh Ex. 60 (Titov Ex. 171) (seeking to "find good uploaders" who will upload "mp3, videos, applications, games on our file host and spread these links over . . . forums where download links are posted" ).

  iii.  In one online forum where a user posted that "I want to upload 200-400mb videos for a tv show site," Ianakov sought to encourage the user to upload the infringing files to Hotfile. Yeh Ex. 64 at 5 & Yeh Ex. 1 (Titov dep.) at 688:21-689:15.

  iv.  Defendants used the lure of high payouts from their Affiliate program to attract uploaders from other known infringing services.

  - Yeh Ex. 3 (Stoyanov dep.) at 21:3-22:22 (Affiliate program to pay users to upload infringing content modeled after Rapidshare and MegaUpload).

  - Yeh Ex. 58 at 1 ("About payments – we pay each Monday and so far never delayed. . . . We check all competitors and most of them" have the "same" payout structure.); *see also id.* at 1-2 (guidance about remote upload from Rapidshare); Yeh Ex. 61 at 10 (same); *supra* SUF 10(e)(iii).

12

       v.    When their competitor Rapidshare terminated its "Rewards" program, defendants targeted Rapidshare's users.

- Yeh Ex. 49 & Yeh Ex. 1 (Titov dep.) at 634:20-637:1 (termination of Rapidshare's Rewards program in July 2010 increased user traffic to Hotfile).
- Yeh Ex. 65 & Yeh Ex. 3 (Stoyanov dep.) at 78:8-79:9 (discussions about advertising to disaffected Rapidshare users in July 2010).

      vi.   Defendants formed Hotfile to "compete with" the criminally indicted site Megaupload. *See infra* SUF 16(f).

c.    Defendants did not terminate users with more than three "strikes." *See supra* SUF 1-5.

d.    Hotfile is overwhelmingly used for copyright infringement. *See supra* SUF 10(a), SUF 5.

e.    Defendants' business model is based on the availability of copyrighted content to attract users to Hotfile.

       i.    Hotfile's sole source of revenue is selling premium subscriptions. Yeh Ex. 1 (Titov dep.) at 441:7-12; 442:15-18.

      ii.   In order to attract users, Hotfile must offer content that users want to download, which is overwhelmingly copyrighted content. Yeh Exs. 96 & 97 (users purchase premium accounts to download content); Yeh Ex. 7 (Lynde dep.) at 178:16-180:4; 182:1-8; 185:10-186:8 (users can go to Hotfile's competitors); *supra* SUF 20(a).

     iii.   Users pay for "premium" accounts to download copyrighted content and sought to cancel their subscriptions when that content was removed.

- Yeh Ex. 66 & Yeh Ex. 67 (users purchasing premium accounts to download copyrighted works).
- Yeh Ex. 68 & Yeh Ex. 1 (Titov dep.) at 446:6-448:6 (users seeking to cancel subscriptions when copyrighted works not available).
- *See also* Yeh Ex. 69 (plummet in traffic to Hotfile after 3-strike policy).

f.    Defendants modeled Hotfile's business and formed Hotfile to compete with the criminally indicted site Megaupload.

    i.   Defendants admit that Hotfile was founded to compete with Megaupload. Yeh Ex. 9 ¶ 8 (Hotfile "was founded to compete with the services provided by . . . RapidShare [and] MegaUpload").

    ii.   Hotfile modeled itself on Megaupload. Yeh Ex. 3 (Stoyanov dep.) at 21:3-22:22 (Affiliate program modeled after Rapidshare and Megaupload); *see also* Yeh Ex. 1 (Titov dep.) at 710:24-711:15 (policy of deleting files for inactivity based on other websites such as Megaupload).

    iii.   Megaupload's business model parallels Hotfile's.

- *Hotfile*: Yeh Ex. 57, Yeh Ex. 9 (premium users enjoy "faster download speeds and other benefits"); *supra* SUF 16(e) (income from premium subscriptions); *supra* SUF 16(a) (affiliate program pays users to upload popular works); *supra* SUF 16(a)(vi) (files deleted for inactivity); *supra* SUF 11(b) (no search functionality); *supra* SUF 16(a)(xii) (partnering with link sites) *supra* 9(a) (blocking by URL rather than master file); *with*,

- *Megaupload*: Yeh Ex. 98 (Megaupload Indictment) ¶ 4 (income from premium subscribers seeking faster downloads), ¶ 5 ("Uploader Rewards" Program that "promised . . . subscribers transfers of cash and other financial incentives to upload popular works, including copyrighted works"); ¶ 7 (files of non-premium users deleted for inactivity), ¶10 (no searchable index and partnering with link sites), ¶¶ 22-23 (blocking of specific download link rather than removal of "master" copy upon receipt of takedown notice).

g.   Defendants assisted users in downloading copyrighted works. *See supra* SUF 9(c).

h.   Hotfile personnel used Hotfile to download copyrighted files. *See supra* SUF 10(b).

i.   Hotfile's technical features undermined copyright owner takedown notices. *See supra* SUF 9(a)(iv)-(v).

j.   Defendants did not investigate copyright "filtering" technologies.

    i.   Video content identification technologies were routinely deployed on websites and in numerous other commercial applications years before

Hotfile launched.  Foster Decl. ¶¶ 16-18; Wold Decl. ¶¶ 26-27, 33-34; Yeh

Ex. 8 (Wang dep.) at 69:6-69:16, 87:10-17, 90:10-90:15.

ii.      "Digital fingerprinting" technology identifies content based on its actual

video and audio properties and is widely accepted as extremely accurate.

Foster Decl. ¶ 17; Wold Decl. ¶¶ 6, 18-19. 32-34.

iii.     Defendants major sites such as YouTube used digital fingerprinting but,

prior to the filing of this litigation, defendants never considered using it on

Hotfile.  Yeh Ex. 1 (Titov dep.) at 508:25-509:23, 609:1-15.

iv.      Titov testified that Vobile technology is not having an adverse effect of

Hotfile's system performance.  Yeh Ex. 1 (Titov dep.) at 506:12-508:12,

525:21-526:1.

---

### C.      Defendants Are Liable for Contributory Infringement.

**17.**     **Defendants have knowledge of infringing activity.**  *See supra* SUF 9, 10, 11.

**18.**     **Defendants materially contribute to infringing activity.**  Yeh Ex. 27 ¶ 5;

Foster Decl. ¶¶ 5, 7 (Defendants operate over 700 servers that physically store the

infringing content uploaded by Hotfile users and transmit that infringing content

to Hotfile downloaders).

---

### D.      Defendants Are Liable for Vicarious Infringement.

**19.**     **Defendants have the right and ability to stop or limit infringement.**

a.      Defendants can block users' access to Hotfile.  Yeh Ex. 2 (ESI dep.) at 16:23-

17:20, 19:23-20:11).

b.      Defendants can block content files from Hotfile.  Yeh Ex. 2 (ESI Dep.) at

43:12-44:12 & Yeh Ex. 1 (Titov. Dep.) at 335:22-337:21.

**20.**     **Defendants profit from infringement.**

a.      The availability of copyrighted material draws users to Hotfile to become

subscribers.  *See supra* SUF 20(a) & 20(e); *see also* SUF 10(a)(i) & (iii).

  b.    Defendants profit from user subscriptions.  Yeh Ex. 70 at 6-7 (monthly
        income from subscription fees over $4 million at peak); Yeh Ex. 71 (millions
        of dollars of shareholder dividends distributed).

**III.    TITOV IS PERSONALLY LIABLE FOR HOTFILE'S INFRINGEMENT.**

**A.    Titov Is at the Center of the Web of Companies that Run Hotfile.**

21.    **Titov owns, operates or manages Hotfile Corp., Hotfile Ltd., and Lemuria**
       **Communications, Inc., which operate Hotfile.**

  a.    Titov directs Hotfile's activities through Hotfile Corp.

     i.    Titov exercises control over Hotfile Corp. as shareholder and manager.  Yeh
           Ex. 1 (Titov dep.) at 30:12-31:6, 69:7-70:11, 79:18–80:23, 82:5-16; 84:17-
           85:6; & Yeh Ex. 72 (power of attorney).

     ii.   Hotfile Corp. owns the domain names, servers, and software for Hotfile.
           Yeh Ex. 1 (Titov dep.) at 38:7-17, 49:17-51:9, 80:24-81:20, 107:9-108:25,
           110:11-17, 150:24-151:5.

  b.    Titov directs Hotfile's operations through Hotfile Ltd.

     i.    Titov exercises control over Hotfile Ltd. as its managing director.  Yeh Ex.
           73 (management agreement); Yeh Ex. 1 (Titov dep.) at 87:18-89:17; *see*
           *also* Yeh Ex. 3 (Stoyanov dep.) at 29:13-24; 30:4-17 (signing authority on
           Hotfile Ltd.'s bank account).

     ii.   Hotfile Ltd. controls a substantial portion of Hotfile's revenues.  Yeh Ex. 1
           (Titov dep.) at 90:14-18, 111:1-6; 112:18-113:10; 114:4-9 (premium
           subscription fees paid to and affiliate payments made from account of
           Hotfile Ltd.); *see also* Yeh Ex. 9 ¶ 8.

  c.    Titov directs Hotfile's operations through Lemuria.

     i.    Titov is the sole owner, operator and officer of Lemuria.  Yeh Ex. 1 (Titov
           dep.) at 54:10-54:23, 121:14-122:14; Yeh Exs. 74-76; & Yeh Ex. 9 ¶ 3.

     ii.   Lemuria provides web-hosting services to Hotfile through some
           undocumented "arrangement" with Hotfile Ltd.  Yeh Ex. 1 (Titov dep.) at
           51:17-52:12 (no written contract with Hotfile Ltd. or Hotfile Corp.), 91:21-

93:14; Yeh Ex. 77 ¶ 5.

    iii.    Titov formed Lemuria to provide web-hosting services only after Hotfile's then-Internet Service Provider complained about the volume of copyright complaints it had been receiving for Hotfile.  Yeh Ex. 78; Yeh Ex. 79; Yeh Ex. 1 (Titov dep.) at 117:7-118:7, 118:16-121:13.

    iv.    Lemuria acts as a front for substantially all of Hotfile's commercial transactions and dealings.  Yeh Ex. 1 (Titov dep.) at 38:7-40:8; 47:12-48:17; 127:2-128:10 (Lemuria contracts with third parties for Hotfile's collocation facilities, bandwidth, servers, and payment of legal fees).

    v.    Lemuria commissioned and continues to pay for the development and maintenance of the underlying software used to run the Hotfile website.  Yeh Ex. 1 (Titov dep.) at 53:1-54:9; 56:23-57:15, 150:24-151:14; Yeh Ex. 80 (software agreement between Lemuria and Blue Ant).

    vi.    Lemuria contracts with Blue Ant for the services of the staff carrying out many of the day-to-day functions of Hotfile.  Yeh Ex. 1 (Titov dep.) at 52:13-54:3; 105:11-108:25, 129:20-130:18; Yeh Ex. 4 (Vangelov dep.) at 29:6-32:5; Yeh Ex. 80 (software agreement).  *See also* Yeh Ex. 81; Yeh Ex. 82 ("Hotfile personnel are not Hotfile employees; rather, they all work for third parties or are independent contractors").

| **B.** | **Titov "Personally Participates" in Virtually all of Hotfile's Infringing Conduct.** |
|---|---|

22.    **Titov personally participates in infringing activities.**

    a.    Titov is personally involved as the "lead developer" of the Hotfile website.

        i.    Titov personally wrote about 70% of the source code that controls Hotfile and its operations.  Yeh Ex. 1 (Titov dep.) at 22:19-22:24; 496:14-497:8. *See also* Yeh Ex. 83 ¶ 6 ("I wrote the source code for Hotfile's website with the assistance of one other person.  We designed the source code from scratch.").

        ii.    Through Lemuria, Titov is responsible for all software maintenance and continued development.  Yeh Ex. 1 (Titov dep.) at 52:20-54:14, 56:23-

57:15, 109:19-110:9; 129:4-130:18; 132:13-20.

    iii.   Titov is involved in the outward-facing design and functionality of the website, and had technical input into the design and functioning of the Affiliate program.  Yeh Ex. 1 (Titov dep.) at 23:12-23:15; 24:3-24:9; 30:5-30:8; 596:18-596:22.

  b.   Titov makes Affiliate payments on behalf of Hotfile.  Yeh Ex. 1 (Titov dep.) at 31:15-17.

    i.   Titov previously used a PayPal account that he opened in his own name to conduct Hotfile business, including paying Hotfile's Affiliates.  Yeh Ex. 1 (Titov dep.) at 602:9-602:14; *see also* Yeh Ex. 3 (Stoyanov dep.) at 32:23-33:5.

ii.   Titov eventually transferred that account to Hotfile Ltd.  Yeh Ex. 3 (Stoyanov dep.) at 32:23-33:5.

  c.   Titov is responsible for all technical operations for Hotfile.  Yeh Ex. 1 (Titov dep.) at 38:7-40:8; 47:12-48:17; 127:2-128:10 (arranging for provision of servers, bandwidth and technical infrastructure for Hotfile).

  d.   Titov is actively involved in managing the affairs of Hotfile.

    i.   Titov manages and supervises Blue Ant personnel with regard to website design, communications with users and content owners, and implementation of Hotfile's copyright infringement policy.  Yeh Ex. 1 (Titov dep.) at 38:7-40:8; 47:12-48:17; 127:2-128:10 & Yeh Ex. 12; *see also* Yeh Ex. 1 (Titov dep.) at 312:1-313:13, 317:15-320:2; Yeh Ex. 19; Yeh Ex. 21 (instructing Blue Ant personnel in answering copyright owners); Yeh Ex. 1 (Titov dep.) at 613:3-617:10 (Blue Ant personnel have no managerial authority).

    ii.   Titov retained and manages Hotfile's appointed DMCA agent, who does not direct any of Hotfile's responses to takedown notices.  Yeh Ex. 1 (Titov dep.) at 69:5-69:9; Yeh Ex. 25; Yeh Ex. 6 (Luchian dep.) at 15:13-16:2, 17:5-18:7, 26:3-9 (retention and management).  Yeh Ex. 6 (Luchian dep.) at 46:18-47:1, 52:23-53:20, 54:12-19, 58:23-59:5; Yeh Ex. 1 (Titov dep.) at 72:17-74:6 (DMCA agent takes no action in response to takedown notices).

  e.   Titov is involved in decisions concerning Hotfile's policies and operations and

has broad decision-making authority over Hotfile's business.  Yeh Ex. 1 (Titov dep.) at 79:23-80:23 & Yeh Ex. 72 (power of attorney); Yeh Ex. 1 (Titov dep.) at 82:5-82:12 (manager); & Yeh Ex. 1 (Titov dep.) at 597:5-598:22 (decision making); Yeh Ex. 1 (Titov dep.) at 601:12-601:17 (personal participation in site design); 601:19-602:3 (affiliate program design); & 605:23-608:3 (repeat infringer policy).

    f.    Titov had direct knowledge of Hotfile's infringing activities.

        i.    Titov was aware of Hotfile's practice of leaving up infringing files while disabling only a single link identified by a copyright owner.  Yeh Ex. 1 (Titov dep.) at 603:3-604:13.

        ii.    Titov was involved in addressing copyright owner complaints about infringement.  Yeh Ex. 21 & Yeh Ex. 1 (Titov dep.) at 317:15-321:19.

        iii.    Titov participated in internal discussions concerning copyright content on Hotfile, including the discussion of Hotfile as a "flagship for non-licensed content."  Yeh Ex. 53 & Yeh Ex. 3 (Stoyanov dep.) at 80:8-80:15; *see also* Yeh Ex. 46 & Yeh Ex. 1 (Titov dep.) at 628:16-630:4 (discussion about copyrighted content).

**23.**    **Titov has the ability to supervise, and has a financial interest in, infringing activity.**

    a.    Titov manages and supervised the affairs of Hotfile.  *See supra* SUF 21, 22(c) & (e).

    b.    Titov has a direct financial interest in Hotfile's infringement.

        i.    Titov owns 26% of Hotfile Corp. and has received millions of dollars in dividends from Hotfile Corp.  Yeh Ex. 1 (Titov dep.) at 84:17-84:22; Yeh Exs. 71.

        ii.    Through Lemuria, Titov receives income from providing services to the Hotfile website.  Yeh Ex. 1 (Titov dep.) at 126:21-126:23.

        iii.    Titov receives monthly salaries from both Lemuria and Hotfile Ltd. for work related to Hotfile.  Yeh Ex. 1 (Titov dep.) at 54:20-55:9.

## CONCLUSION

For the foregoing reasons, the facts legally material to the Court's disposition of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov are either admitted or not reasonably in dispute, and plaintiffs' motion should be granted.

Dated: February 17, 2012

Respectfully submitted,

By: /s/ Karen L. Stetson

GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

MOTION PICTURE ASSOCIATION
  OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: (818) 995-6600
Fax: (818) 285-4403
Karen L. Stetson

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th Day of February, 2012, I served the following documents on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

**Plaintiffs' Statement of Uncontroverted Material Facts in Support of Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov**

By: /s/ _Karen L. Stetson_
Karen L. Stetson

21

## SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and
Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*