# Yeh Exhibit 6

Page 1

1              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF FLORIDA
2          CASE NO. 11-20427-WILLIAMS/TURNOFF

3

4    DISNEY ENTERPRISES, INC.,
     TWENTIETH CENTURY FOX FILM
5    CORPORATION, UNIVERSAL CITY
     STUDIOS PRODUCTIONS LLLP,
6    COLUMBIA PICTURES INDUSTRIES,
     INC., and WARNER BROS.
7    ENTERTAINMENT, INC.,

8                   Plaintiffs,

9    v.

     HOTFILE CORP., ANTON TITOV,
10   and DOES 1-10,

11                  Defendants.

12   _____

13   HOTFILE CORP.,

14                  Counterclaimant,

15   v.

16   WARNER BROS. ENTERTAINMENT
     INC.,

17

                    Counterdefendant.
18   _____
                         Thursday, December 15, 2011
19                       9:15 a.m. - 2:39 p.m.
                         1221 Brickell Avenue
20                       Miami, Florida
21         DEPOSITION OF CONSTANTIN LUCHIAN
22         Taken on behalf of the PLAINTIFFS before
     Michael J. D'Amato, RMR, Notary Public in and for the
23   State of Florida at Large, pursuant to Notice of Taking
     Deposition in the above cause.
24
25   Job No. 44703

```
1
2                        APPEARANCES
                         _____
3
4    For the Plaintiffs:
5
6            JENNER & BLOCK
             BY: JENNIFER V. YEH, ESQ.
7            1099 New York Avenue
             Washington, DC 20001
8
9
10   For the Defendant Hotfile and Titov:
11
             RASCO, KLOCK, REININGER PEREZ ESQUENAZI
12           VIGIL & NIETO
             BY: JANET MUNN, ESQ.
13           283 Catalonia Avenue
             Coral Gables, FL 33134
14
15           -AND-
16           BOSTON LAW GROUP
             BY: VAL GURVITZ, ESQ.
17           20 Park Plaza
             Boston, MA 02116
18
19
20
21
22
23
24
25
```

1    these clients?

2        A.    No.

3        Q.    So for all the clients who have DMCA agents

4    through Incorporate Now you would be the DMCA agent?

5            MS. MUNN:   Objection to the form of the

6        question.   You can answer.

7        A.    Yes.

8        Q.    Let's move to your work for Hotfile Corp. as a

9    DMCA agent.   Is there -- which Hotfile entity do you

10   perform DMCA services for?

11       A.    We perform services for Hotfile.com and for

12   Hotfile Corp.

13       Q.    In working for Hotfile.com who do you interact

14   with at Hotfile Corp.?

15       A.    I sent all the interactions to

16   Abust@Hotfile.com.

17       Q.    Is there a specific individual that you

18   communicate with?

19       A.    I don't know.   It goes to Abust@Hotfile.com.

20       Q.    So more generally speaking, not just the

21   notices that you are sending, but is there somebody

22   that -- who is the contact person at Hotfile Corp. if

23   you are looking for specific answers for something?

24       A.    It still will go to Abuse@Hotfile.com.

25       Q.    So there is no individual that you interact

1   with at Hotfile Corp.?

2      A.   I have interacted with Anton Titov.

3      Q.   When did you first meet Mr. Titov?

4      A.   As far as I remember it was in 2009.

5      Q.   Can you be more specific when in 2009?

6      A.   I can't.  I don't remember.

7      Q.   When you were -- I understand that Hotfile did

8   some work with Webazilla.  Did you ever meet Mr. Titov

9   through Webazilla?

10      A.   As far as I remember I met Mr. Titov when he

11   was referred to be a DMCA client for us.

12      Q.   What is your understanding of Mr. Titov's role

13   in Hotfile?

14      A.   As far as I know he's a firm representative.

15      Q.   Can you be more specific, what do you mean by

16   firm representative?

17      A.   He represents the company Hotfile.com.

18      Q.   Do you believe that -- strike that.  Other

19   than Mr. Titov is there any other individual that you

20   have dealt with at Hotfile?

21      A.   No, not as far as I remember.

22      Q.   Are you aware of what Mr. Titov does for

23   Hotfile?

24      A.   As far as I know it's just what services I

25   perform to him and to Hotfile.com.

1    Q.  Can you be more specific?

2    A.  My interaction with Mr. Titov was on the part

3    of DMCA, correct.  What else he might be doing I don't

4    know.

5    Q.  So you only interact with Mr. Titov in your

6    capacity as a DMCA agent, is that correct?

7    A.  Yes.

8    Q.  You mentioned earlier that Hotfile Corp. is

9    the entity for which Incorporate Now performs DMCA

10   services for, is that correct?

11   A.  Yes, that's correct, we perform services for

12   Hotfile.com.

13   Q.  Is there a contract that governs those

14   services?

15   A.  Yes, there's a contract that governs the

16   services.

17          MS. YEH:  I'm going to have Mr. D'Amato mark

18      this as Exhibit 1.

19          (Exhibit 1 marked for identification)

20   Q.  Are you familiar with this agreement?

21   A.  Yes, I am.

22   Q.  Just to be clear this is a copyright agent

23   agreement between Titov, Mr. Titov and Hotfile Corp. on

24   the one hand and Incorporate Now on the other hand, is

25   that correct?

1        MS. MUNN:  Objection to the form of the

2    question.

3        A.   Yes, this is a copyright agreement.

4        Q.   Is this the agreement that governs your DMCA

5    services to Hotfile Corp.?

6        A.   Yes, this agreement governing copyright, agent

7    agreement for services of the DMCA agent.

8        Q.   When was this -- I see that this agreement was

9    signed or dated December 8, 2009; is that correct?

10       A.   Yes, the agreement is dated the date stated in

11   the agreement.

12       Q.   Is this agreement still in effect today?

13       A.   Yes, it is.

14       Q.   Have there been any amendments to this

15   agreement?

16       A.   No, there haven't.

17       Q.   So this is the agreement that governs your

18   current relationship or Incorporate Now's current

19   relationship with Hotfile Corp.?

20       A.   Yes, that's correct.

21       Q.   Is there any other agreement that governs the

22   relationship between Hotfile Corp. and Incorporate Now?

23       A.   No, as far as I know.

24       Q.   But as an owner of Incorporate Now you would

25   know if there were any other agreements with Hotfile

1    somewhere in 2009 but exact time I really don't

2    remember.

3         Q.   So when Mr. Titov approached you about

4    providing DMCA services to Hotfile did you provide him

5    this agreement?

6         A.   Yes, I have.

7         Q.   Did Mr. Titov have any changes to the form

8    agreement that you provided him?

9         A.   As far as I remember, no.

10        Q.   Prior to December 2009 do you know who the

11   DMCA agent for Hotfile was?

12        A.   No, I do not.

13        Q.   Do you know whether there was a DMCA agent?

14        A.   No, I do not.

15        Q.   Currently are you the only DMCA agent for

16   Hotfile?

17        A.   As far as I know, yes.

18        Q.   Let's go back to your responsibilities as a

19   DMCA agent.  Aside from forwarding the notices you get,

20   what other responsibilities do you have?

21        A.   As far as that's the only responsibilities

22   that we provide.

23        Q.   Let's walk through this process.  What happens

24   when you first receive a notice?

25        A.   The notice is being saved and then forwarded

Page 46

1    A.    Can you rephrase the question?

2    Q.    Let me just say that this was produced in your

3    production to us, which is why it has the Bates number

4    that it does.

5    A.    Okay.

6    Q.    Do you know how you had access to this e-mail

7    notice?

8    A.    No, I don't.

9    Q.    Have you ever seen these types of e-mail

10   notices?

11   A.    I don't remember seeing this type of e-mail

12   notice.

13   Q.    So you don't know how you would have this

14   e-mail notice within your records?

15   A.    As far as to my knowledge it could have been

16   forwarded to our e-mail, or it could have came in as a

17   mail notice as well or a fax notice.

18   Q.    I just wanted to be clear that you actually

19   don't have access to the Abuse@Hotfile e-mail address?

20   A.    No, I do not.

21   Q.    Are you authorized to delete content?

22   A.    Can you explain?

23   Q.    So these notices that are sent, they ask that

24   certain content be deleted off of Hotfile.  Do you have

25   the ability to delete content?

Page 47

1     A.   No, I do not.

2          MS. MUNN:  Why don't we take a short break.

3          MS. YEH:  Okay.

4          (Recess taken in the proceedings)

5     BY MS. YEH:

6     Q.   Mr. Luchian, do you understand that you are

7     still under oath?

8     A.   Yes, I do.

9     Q.   Can I ask, what did you do to prepare for this

10    deposition?

11    A.   I have consulted my attorney.

12    Q.   Did you speak with Mr. Titov?

13    A.   Yes, I have.

14    Q.   What did you speak to Mr. Titov about?

15    A.   Mr. Titov contacted me several weeks ago to

16    refresh his memory about the process of our service.

17    Q.   Other than that did you have any other

18    conversations with Mr. Titov?

19    A.   No.

20    Q.   Have you had any conversations with anybody

21    else at Hotfile Corp. to prepare for this deposition?

22    A.   I have not -- well, first of all I have not

23    contacted Mr. Titov to prepare for the deposition.  He

24    has contacted me to refresh his memory of how exactly

25    our services are provided.

Page 52

1    pertaining to access of content.

2        Q.   Did you -- when you entered into that

3    agreement did you inform Mr. Titov of your policy that

4    you don't usually access content?

5        A.   As far as I remember this conversation could

6    take place.  I don't remember if we spoke particularly

7    about any type of account that would grant access to

8    the Web site or not.

9        Q.   In those initial discussions with Mr. Titov,

10   was there anybody present other than you and Mr. Titov?

11       A.   As far as I remember my partner, Constantin

12   Bolotin might have been present.

13       Q.   Have you discussed this Hotfile litigation

14   with Mr. Bolotin?

15       A.   As far as I remember he's aware of the

16   litigation but we didn't discuss any details.

17       Q.   Did you talk with Mr. Bolotin to refresh any

18   memories before this deposition?

19       A.   No, I have not.

20       Q.   Did you take any notes during those initial

21   meetings with Mr. Titov?

22       A.   No, I don't remember taking any notes.

23       Q.   So moving from content to user accounts.  Are

24   you authorized to take any action with regard to user

25   accounts?

Page 53

1      A.    No, I do not.

2      Q.    When you receive a take-down notice do you

3  have any way of knowing what user uploaded or

4  downloaded the content being complained of?

5      A.    No, I do not.

6      Q.    Do you ever receive requests to terminate

7  specific users?

8      A.    I don't remember.  I do not read every notice

9  in detail.

10      Q.    Do you have any knowledge of Hotfile's policy

11  for repeat infringers?

12      A.    The only knowledge I have is that it probably

13  exists, but I don't have any knowledge about the policy

14  in general.

15      Q.    When you first entered into the copyright

16  agent agreement were there any discussions about a

17  repeat infringer policy?

18          MS. MUNN:  Objection to the form of the

19      question.  Go ahead.

20      A.    As far as I remember there were not.

21      Q.    The initial discussions with Mr. Titov for

22  DMCA services, how long were those discussions?

23      A.    I don't remember.

24      Q.    Did they take place over the phone or in

25  person?

Page 54

1    A.   I don't remember exactly if it take place on

2    the phone or in person.  I don't remember exactly how

3    did it take place.

4    Q.   Were there multiple discussions?

5    A.   I don't remember if there were multiple

6    discussions or just one discussion.

7    Q.   At least when you signed the agreement were

8    you and Mr. Titov together physically when you signed

9    the agreement?

10   A.   As far as I remember at the time of the

11   signature Mr. Titov was with me.

12   Q.   At the signing of the agreement did you ask

13   any further questions about your responsibilities as a

14   DMCA agent?

15   A.   As far as I remember we probably have talked

16   about the process of the service, how do we perform the

17   service for our client.  That should have been the only

18   discussion that could have take place but it's been a

19   while.  Don't remember exactly what we talked about.

20   Q.   When you formed Incorporate Now with Mr.

21   Bolotin did you have in mind that you would provide

22   DMCA services for clients?

23   A.   I don't remember at the time of company

24   formation that we had DMCA services in mind.

25   Q.   Who came up with the idea of offering DMCA

Page 58

1      Q.    Did you ever discuss with Hotfile what to do

2   about counter-notifications?

3      A.    As far as I remember our discussion with my

4   attorney about those e-mails and as far as I remember I

5   have to just keep a track of it.

6      Q.    Do you know whether Hotfile responds to those

7   counter-notifications?

8      A.    I don't know.

9      Q.    Does anybody at Hotfile provide any guidance

10   about how to respond to the take down notices you

11   receive?

12      A.    As far as I remember, no.

13      Q.    So there's never been any instructions about

14   what to do with the notices?

15      A.    According to our service we request our

16   clients to provide their contact information such as

17   e-mail where we send the notice.  I don't remember any

18   instructions from Hotfile, particular instructions that

19   state what we should do with the notice.  Because we

20   tell our customers that we will send the notice to

21   their contact information, which is their e-mail

22   address that they specified.

23      Q.    Do you ever follow up with Hotfile after you

24   sent a notice to ask whether something was actually

25   taken down?

Page 59

1    A.    No, I don't.

2    Q.    So you never verify that any of the notices

3    are actually dealt with accordingly?

4    A.    As far as I remember I'm not requesting that

5    information from Hotfile.

6          MS. YEH:   I'm going to have this marked as

7    Exhibit 9.

8          (Exhibit 9 marked for identification)

9    Q.    Does this look familiar to you, this e-mail?

10   A.    I do not remember this e-mail, but it seems

11   that it was sent by myself according to the signature

12   on this particular document.

13   Q.    Do you have any reason to doubt the

14   authenticity of this document?

15         MS. MUNN:   Objection to the form of the

16   question.

17   A.    As of today I don't have any reason to doubt.

18   Q.    So in this e-mail, it is undated, you are

19   asking Mr. Titov to follow up on some notices you sent,

20   is that correct?

21   A.    According to this document I'm stating that I

22   have received a call from Jason Ludwig stating that

23   Jason told me or told the person who answered the phone

24   that he has sent notices to Abust@Hotfile.com and

25   received no response.

Page 129

1      Q.    What are you mean not at this time?  Does that

2  mean at some future point you may be reimbursed?

3      A.    Probably by Incorporate Now. `Yeah, probably

4  will be reimbursed by Incorporate Now but that's

5  speculation.

6      Q.    You are registered as a DMCA agent for

7  Hotfile.  What address is used for the notices?

8      A.    The general address for Incorporate Now.

9      Q.    And that is the PO -- the UPS address, is that

10 correct?

11     A.    A physical address, yes.

12     Q.    So when people send DMCA notices to Hotfile it

13 gets mailed to the UPS Store?

14     A.    It gets mailed to Incorporate Now at the

15 address 1007 North Federal Highway.

16     Q.    What is the DMCA address for Lemuria?

17     A.    The address is the same.

18     Q.    Is it the same box number?

19     A.    The address for Lemuria is the general address

20 for Incorporate Now.

21          MS. MUNN:  Objection.

22     Q.    Is it the same address as -- is it the same

23 UPS address?

24     A.    We use the same physical address for all of

25 our clients.

1    Q.   So for all of the clients for which you are a

2  DMCA agent all the notices get sent to the same

3  addresses, correct?

4    A.   Correct.

5    Q.   And that address is a UPS address, correct?

6    A.   No.  It's Incorporate Now address.

7    Q.   It is an Incorporate Now address and where is

8  that address, at a UPS store?

9    A.   UPS Store facilitates their receiving the mail

10  and processing.

11    Q.   I just want to be clear that there's no

12  physical office that is receiving these notices?

13    A.   UPS Store is a physical office that's

14  receiving notices.

15    Q.   I mean a physical office of Incorporate Now.

16    A.   As you mentioned before, Incorporate Now

17  doesn't have a chair or desk at the location.

18    Q.   Do you have any interactions with

19  Constantin -- starts with B, the one also involved in

20  XBT Holdings?

21    A.   Bezrunchenko, yes, I do.

22    Q.   What type of interactions?

23    A.   General Webazilla business and activities.

24    Q.   Can you be more specific?

25    A.   If I have any questions pertaining to the

Page 135

1    copy.

2         (Deposition concluded at 2:39 p.m.)

3         (Reading and signing not waived)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    _____

24         Constantin Luchian

25

Page 136

1

2

3                    CERTIFICATE OF OATH

4

5

6    STATE OF FLORIDA      )

                                        SS
7    COUNTY  OF MIAMI-DADE )

8

9         I, Michael J. D'Amato, Notary Public for the

10   State of Florida, certify that on the 15th day of

11   December 2011, CONSTANTIN LUCHIAN personally appeared

12   before me on and was duly sworn or affirmed.

13        WITNESS my hand and official seal this 28th day

14   of December 2011.

15

16                      _____

17                      Michael J. D'Amato

                        Notary Public - State of Florida

18                      My Commission #DD 778385

                        Expires: June 13, 2012

19

20

21

22

23

24

25

Page 137

1                    CERTIFICATE OF COURT REPORTER

2        I, MICHAEL J. D'AMATO, a Registered Merit Reporter

3    and Notary Public in and for the State of Florida at

4    Large, do HEREBY CERTIFY that I was authorized to and

5    did stenographically report the deposition of CONSTANTIN

6    LUCHIAN; that a review of the transcript was; and that

7    the foregoing transcript, pages from 1 to 135, is a true

8    and accurate record of my stenographic notes.

9        I FURTHER CERTIFY that I am not a relative,

10   employee, attorney, or counsel of any of the parties, nor

11   am I a relative or employee of any of the parties'

12   attorney or counsel connected with the action, nor am I

13   financially interested in the action.

14            Dated this 28th day of December 2011.

15                        _____

16                        MICHAEL J. D'AMATO,

17                        Registered Merit Reporter

18

19

20

21

22

23

24

25

Page 138

1                    E R R A T A   S H E E T

         (Do not write on transcript - Enter any changes here)

2       IN RE:DISNEY v HOTFILE           Date taken:12/15/11

        PAGE/LINE                 Change      Reason for Change

3       _____

4       _____

5       _____

6       _____

7       _____

8       _____

9       _____

10      _____

11      _____

12      _____

13      _____

14      _____

15      _____

16      _____

17      _____

18      _____

19      _____

20      _____

21      _____

22      Under penalties of perjury, I declare that I have read

        my deposition and that the facts stated herein are true.

23

24      _____         _____

25      CONSTANTIN LUCHIAN                     DATE

Page 138

1               E R R A T A    S H E E T

    (Do not write on transcript - Enter any changes here)

2   IN RE:DISNEY v HOTFILE        Date taken:12/15/11

    PAGE/LINE              Change       Reason for Change

3   132/20     "Anton Titov" should be replaced with "I did"

4   _____ Reason for change: I misunderstood the question. I thought I was being

5   _____ asked "Whose name is filed in". The answer to

6   _____ "Who filed in" is "I did".

7   7/3    "web posting" has to be "web hosting"

8   _____ Reason for change: transcriber error

9   8/14   "web posting" has to be "web hosting"

10  _____ Reason for change: transcriber error

11  12/13  "DMC" has to be "DMCA"

12  _____ Reason for change: transcriber error

13  36/21  "CL@incorporate.com" has to be "CL@incorporatenow.com"

14  _____ Reason for change: transcriber error

15  39/19  "DMC" has to be "DMCA"

16  _____ Reason for change: transcriber error

17  50/4   "CL@incorporate.com" has to be "CL@incorporatenow.com"

18  _____ Reason for change: transcriber error

19  50/19  "DMC" has to be "DMCA"

20  _____ Reason for change: transcriber error

21                  Page 1 of 2 Continued on page 2

22  Under penalties of perjury, I declare that I have read

    my deposition and that the facts stated herein are true.

23

24  _____        1/31/2012

25  CONSTANTIN LUCHIAN                  DATE

Page 138

1               E R R A T A   S H E E T

          (Do not write on transcript - Enter any changes here)

2    IN RE:DISNEY v HOTFILE          Date taken:12/15/11

     PAGE/LINE                    Change      Reason for Change

3    60/17      "DMC" has to be "DMCA"

4               Reason for change: transcriber error

5    90/1       "Lemuriaco" has to be "Lemuria

6               Reason for change: transcriber error

7    90/14      "Lemuriaco" has to be "Lemuria

8               Reason for change: transcriber error

9    92/24      "open" has to be "owned"

10              Reason for change: transcriber error

11   100/21     "DMC" has to be "DMCA"

12              Reason for change: transcriber error

13   101/22     "DMC" has to be "DMCA"

14              Reason for change: transcriber error

15   109/8      "Depositfile.com" has to be "Depositfiles.com"

16              Reason for change: transcriber error

17

18

19

20

21                        Page 2 of 2. End

22   Under penalties of perjury, I declare that I have read

     my deposition and that the facts stated herein are true.

23

24   _____        1/31/2012

25   CONSTANTIN LUCHIAN                      DATE