# Yeh Exhibit 80

| | |
|---|---|
| ДОГОВОР ЗА ИЗРАБОТКА, ПОДДРЪЖКА, АКТУАЛИЗАЦИЯ И МОНИОРИНГ НА СПЕЦИАЛИЗИРАН СОФТУЕР | SPECIAL SOFTWARE DEVELOPMENT, MAINTENANCE, UPDATE AND MONITORING AGREEMENT |
| Днес, 4 Яануари 2010 година, между | On this January 4, 2010, by and between |
| 1. Lemuria Communications Inc, със седалище и адрес на управление в 401 E Las Olas Blvd, Suite 130-508, Fort Lauderdale, FL 33301, USA представлявано от Антон Титов, в качеството му на управител, наричано по-долу за краткост „ВЪЗЛОЖИТЕЛ" и | 1. Lemuria Communications Inc, having its seat and registered address at 401 E Las Olas Blvd, Suite 130-508, Fort Lauderdale, FL 33301, USA, represented by Anton Titov, in his capacity of a Manager, hereinafter referred to as the ASSIGNOR and |
| 2. „Блу Ант" ООД, със седалище и адрес на управление в гр. София, ул. „Васил Априлов" № 11, ет. 1, БУЛСТАТ 131103661, регистрирано по ф.д. № 7120/2003 г. по описа на Софийски градски съд, представлявано от Румен Асенов Стоянов, в качеството му на управител, наричано по-долу за краткост „ИЗПЪЛНИТЕЛ", | 2. Blue Ant Ltd., having its seat and registered address in Sofia, 11 Vasil Aprilov Str., floor 1, BULSTAT 131103661, registered in Sofia City Court under company file No 7120/2003, represented by Rumen Stoyanov, in his capacity of a Manager, hereinafter referred to as the ASSIGNEE, |
| се сключи настоящият Договор за изработка, поддръжка, актуализация и мониоринг на специализиран софтуер (Договора) и страните се споразумяха за следното: | the present Special software development, maintenance, update and monitoring agreement (the Agreement) was concluded and the parties agreed as follows: |
| РАЗДЕЛ I ПРЕДМЕТ И СРОК НА ДОГОВОРА | SECTION I SUBJECT AND TERM OF THE AGREEMENT |
| Предмет на Договора | Subject of the Agreement |
| Чл. 1. (1) ВЪЗЛОЖИТЕЛЯТ възлага, а ИЗПЪЛНИТЕЛЯТ се съгласява да предоставя срещу възнаграждение услугите, посочени в чл. 1, ал. 2 от настоящия Договор, съгласно условията и сроковете, уговорени в него. | Art. 1. (1) The ASSIGNOR assigns and the ASSIGNEE agrees to provide against remuneration the services specified in Art. 1, Para 2 of this Agreement in compliance with the provisions herein. |
| (2) Услугите, които | (2) The services that ASSIGNEE shall |



Confidential

1

HF02855310

| | |
|---|---|
| ИЗПЪЛНИТЕЛЯТ се задължава да предоставя на ВЪЗЛОЖИТЕЛЯ включват, без да се ограничават до:<br>1. изработване на софтуер за управление на SQL бази данни върху множество от сървъри и балансиране на интернет трафик, в съответствие с нуждите на ВЪЗЛОЖИТЕЛЯ (Софтуера);<br>2. дистанционна поддръжка, актуализация и мониторинг на Софтуера по електронен път. | provide to the ASSIGNOR includes, without being limited to:<br>1. development of SQL database management software designated for multiple servers and balancing of the internet traffic in compliance with the needs of the ASSIGNOR (Software);<br>2. distance electronic maintenance, electronic update and electronic monitoring of the Software. |
| (3) Софтуерът следва да бъде изработен според параметрите и спецификации, предвидени в Приложение N 1 към Договора. | (3) The Software shall be developed in accordance with the parameters and specifications, stipulated in Appendix N 1 to this Agreement. |
| (4) ВЪЗЛОЖИТЕЛЯТ си запазва правото да прави последващи промени в спецификациите по Приложение N 1, стига с тях да не се предизвиква съществено увеличаване на обема на уговорената работа, които промени следва да бъдат взети под внимание от ИЗПЪЛНИТЕЛЯ след направено искане от страна на ВЪЗЛОЖИТЕЛЯ. | (4) The ASSIGNOR shall retain the right to additionally modify the specifications, under Appendix N 1 unless they considerably increase the volume of the agreed work and such modifications shall be taken into consideration by the ASSIGNEE upon ASSIGNOR's request. |
| Срок на Договора | Term of the Agreement |
| Чл. 2. (1) ИЗПЪЛНИТЕЛЯТ се задължава да изработи Софтуера в сроковете, предвидени в Приложение N 2 към Договора. | Art. 2. (1) The ASSIGNOR shall be obliged to develop the Software within the terms set for the in Appendix N 2 to the Agreement. |
| (2) ИЗПЪЛНИТЕЛЯТ осигурява електронна поддръжка, актуализация и мониторинг на Софтуера за срок от една година от датата на предаването му на ВЪЗЛОЖИТЕЛЯ. | (2) The ASSIGNEE shall provide electronic maintenance, update and monitoring of the Software for a period of one year as of the date of delivery of the Software to the ASSIGNOR. |
| (3) В случай, че в едномесечен срок преди изтичане на срока по ал. 2 никоя от страните не отправи писмено предизвестие до другата страна за прекратяването му, Договорът се счита продължен за нов едногодишен срок. | (3) In case neither of the parties sends a written notification to the other party for termination of the present Agreement in one-month term prior to the expiration of the term under Para 2, the Agreement shall be deemed prolonged for additional one- |

2

Confidential

HF02855311

| | |
|---|---|
| (4) Правилото по предходната алинея се прилага неограничен брой пъти. | (4) The rule under the previous paragraph shall apply unlimited times. |
| **РАЗДЕЛ II**<br>**ПРАВА И ЗАДЪЛЖЕНИЯ НА СТРАНИТЕ** | **SECTION II**<br>**RIGHTS AND OBLIGATIONS OF THE PARTIES** |
| Права и задължения на ВЪЗЛОЖИТЕЛЯ | Rights and Obligations of the ASSIGNOR |
| Чл. 3. ВЪЗЛОЖИТЕЛЯТ се задължава да:<br>1. заплаща в срок уговорените възнаграждения;<br>2. да указва необходимото съдействие на ИЗПЪЛНИТЕЛЯ при изпълнение на задълженията му по настоящия Договор, като му предоставя информация, напътствия и документи, необходими му за изработването на Софтуера и осъществяване на услугите по чл.1, ал.2, т.2. | Art. 3. The ASSIGNOR undertakes to:<br>1. pay the agreed remunerations within the terms;<br>2. to assist the ASSIGNEE during the performance of its obligations under the present Agreement and provide it with information, instructions and documents, necessary for the development of the Software and performance of the services under Art.1, Para 2, item 2. |
| Чл. 4. ВЪЗЛОЖИТЕЛЯТ е длъжен да уведомява ИЗПЪЛНИТЕЛЯ незабавно след констатиране на проблем в работата на Софтуера, чрез един от способите за кореспонденция по чл. 14 от Договора. | Art. 4. The ASSIGNOR shall be obliged to immediately notify the ASSIGNEE after a problem in the work of the Software has been found by any of the methods of correspondence specified under Art. 14 below. |
| Права и задължения на ИЗПЪЛНИТЕЛЯ | Rights and Obligations of the ASSIGNEE |
| Чл. 5. (1) ИЗПЪЛНИТЕЛЯТ се задължава да изработи Софтуера и да извършва услугите по чл. 1, ал. 2, т.2 от настоящия Договор с грижата на добър стопанин, като спазва сроковете, условията и спецификите, посочени от ВЪЗЛОЖИТЕЛЯ, както и приложимите нормативни актове и разпоредби. | Art. 5. (1) The ASSIGNEE undertakes to develop the Software and to provide the services under Art. 1, Para 2, item 2 of the present Agreement with the due professional care, observing the terms, conditions and specifications of the ASSIGNOR, as well as the applicable legal acts and provisions. |
| (2) ИЗПЪЛНИТЕЛЯТ предоставя при поискване от ВЪЗЛОЖИТЕЛЯ | (2) The ASSIGNEE shall present to the ASSIGNOR upon its request information |

3

Confidential

HF02855312

| | |
|---|---|
| информация относно изпълнението на текущите задачи. | concerning the execution of the current tasks. |
| Чл. 6. (1) ИЗПЪЛНИТЕЛЯТ се задължава за следното: | Art. 6. (1) The ASSIGNEE shall be obliged for the following: |
| 1. да предостави завършеният Софтуер, съпроводен с пълна документация, изходния и изпълнимия код и инструкции за употреба; | 1. to deliver the completed Software accompanied by all documents, source and executive code and instructions for use; |
| 2. да извършва ежедневен електронен мониторинг на Софтуера; | 2. to perform daily electronic monitoring of the Software; |
| 3. да отстранява проблеми, констатирани в работата на Софтуера незабавно, но не по-късно от 48 ч. от установяването им/получаване на уведомление от ВЪЗЛОЖИТЕЛЯ; | 3. to remove any problems in the work of the Software immediately but not later than 48 h after they have been found/receipt of notification by the ASSIGNOR; |
| 4. да осъществява периодични актуализации на Софтуера, но не по-рядко от веднъж месечно; | 4. to provide periodical updates of the Software (at least once monthly); |
| 5. да не разкрива информация или съдържанието на документи, станали му известни в процеса на изпълнение на поставените му задачи; | 5. not to disseminate information or the contents of documents with which it has become familiar with in the process of execution of the assigned tasks; |
| 6. да пази доброто име и репутацията на ВЪЗЛОЖИТЕЛЯ; | 6. to keep the good name and reputation of the ASSIGNOR; |
| 7. да си сътрудничи с ВЪЗЛОЖИТЕЛЯ с цел по-ефикасно и професионално изпълнение на поставените задачи. | 7. to co-ordinate with the ASSIGNOR in order to execute the assigned tasks more effectively and professionally. |
| Чл.7. (1) Приемането на завършения Софтуер след изработването му включва предоставянето на всички изходни и изпълними кодове и цялата документация, както и успешното тестване на Софтуера в офиса на ВЪЗЛОЖИТЕЛЯ. Окончателното приемане на Продукта се счита за извършено с подписване на двустранен приемо-предавателен протокол. | Art.7. (1) The acceptance of the completed Software includes its delivery with all source and executive codes and the entire documentation, as well as successful testing of the Software at the ASSIGNOR's office. The final acceptance of the Software shall be completed upon signing of bilateral acceptance protocol. |
| (2) Приемането на предоставени от ИЗПЪЛНИТЕЛЯ услуги по чл.1, ал.2, т.2 от Договора се удостоверява | (2) The acceptance of services under Art.1, Para 2, item 2 of the Agreement supplied by the ASSIGNEE shall be certified |

Confidential

HF02855313

ежемесечно с подписването на двустранен приемо-предавателен протокол, образец на който е представен като Приложение N 3 към Договора.

monthly by signing of bilateral delivery-acceptance protocol, a sample of which is provided as Appendix N 3 to the Agreement.

## РАЗДЕЛ III
## ФИНАНСОВИ УСЛОВИЯ

## SECTION III
## FINANCIAL CONDITIONS

Възнаграждение и Начин на Плащане

Чл. 8. (1) За изработване на Софтуера, **ВЪЗЛОЖИТЕЛЯТ** се задължава да заплати нетно възнаграждение, дължимо съгласно етапите и сроковете в Приложение N 2 в размер от 420,000 USD /четиристотин и двадесет хиляди щатски долара/ без ДДС.

(2) **ВЪЗЛОЖИТЕЛЯТ** се задължава да заплаща месечно възнаграждение на **ИЗПЪЛНИТЕЛЯ** за предоставените услуги по чл.1, ал.2, т.2 от Договора в размер на 70,000 USD /седемдесет хиляди щатски долара/. без ДДС.

(3) Възнаграждението по ал.2 включва работа до 20 часа месечно. При надвишаване на броя часове, всеки допълнителен час се заплаща при 300 USD /триста щатски долара/ на час без ДДС.

(4) Договореното възнаграждение е нетно и не включва косвени данъци, в случай че са дължими, съгласно действащото данъчно законодателство на която и да е от страните по Договора.

(5) Заплащането на дължимите възнаграждения по чл. 2 и 3 се извършва в 5-дневен срок от подписването на Протокола по чл. 7, ал.2 от Договора, като **ИЗПЪЛНИТЕЛЯТ** издава за целта и съответната фактура.

Remuneration and Method of Payment

Art. 8. (1) The **ASSIGNOR** undertakes to pay remuneration amounting to 420,000 USD /four hundred and twenty thousand dollars/, VAT excluded, for the development of the Software, due according to the stages and terms set forth in Appendix N 2.

(2) The **ASSIGNOR** undertakes to pay monthly remuneration for the services provided under Art.1, Para 2, item 2 of the Agreement in the amount of 70,000 USD /seventy thousand dollars/, VAT excluded.

(3) The remuneration under Para 2 shall include work up to 20 hours monthly. In case of excess of the hours, each additional hour shall be paid under 300 USD /three thousand dollars/ per hour, VAT excluded.

(4) The agreed remuneration is a net amount and does not include indirect taxes if they apply according to the applicable tax legislation of any of the parties to the Agreement.

(5) Payment of the due remunerations shall be remitted in 5-days term from signing of the protocol under Art.7, Para 2 of the Agreement where the **ASSIGNEE** shall issue the respective invoice.

5

Confidential

HF02855314

| | |
|---|---|
| (6) Всички транспортни и пощенски разходи, които възникнат и са свързани с изпълнение на този Договор, са за сметка на **ВЪЗЛОЖИТЕЛЯ** и за същите ще бъдат издавани дебитни известия към фактурата по ал-. 5. | (6) All transport and postal expenses related to the execution of the present Agreement shall be at **ASSIGNOR**'s expenses and debit notices shall be issued for them as attachments to the invoice under Para 5. |
| Чл.9. (1) **ВЪЗЛОЖИТЕЛЯТ** заплаща дължите по настоящия Договор възнагражденията по следната банковата сметка на **ИЗПЪЛНИТЕЛЯ**: | Art.9. (4) The **ASSIGNOR** shall pay the remunerations due under the present Agreement to the following bank account of the **ASSIGNEE**: |
| Бенефициент: **Blue Ant Ltd**<br>IBAN: **BG95UBBS80021102249512**<br>Банка: **United Bulgarian Bank PLC**<br>Swift Code: **UBBSBGSF** | Company: **Blue Ant Ltd**<br>IBAN: **BG95UBBS80021102249512**<br>Bank: **United Bulgarian Bank PLC**<br>Swift Code: **UBBSBGSF** |
| (2) Дължимият косвен данък /ДДС/ се начислява и заплаща от **ВЪЗЛОЖИТЕЛЯ**, в случай, че приложимото законодателство предвижда това. Всяка от страните се задължава да предостави на другата страна всички необходими данъчни и други документи, свързани с възнаграждението и дължимите данъци по настоящия Договор. | (2) The applicable VAT shall be calculated and paid by the **ASSIGNOR** if this is provided by the applicable legislation. Every party undertakes to provide to the other party all necessary tax or other documents related to the remuneration and the taxes under the present Agreement. |

| | |
|---|---|
| РАЗДЕЛ IV<br>ИНТЕЛЕКТУАЛНА СОБСТВЕНОСТ | SECTION IV<br>INTELLECTUAL PROPERTY |
| Права на Интелектуална Собственост | Intellectual Property Rights |
| Чл. 10. (1) Всички обекти на авторско право или на други права на интелектуална собственост, създадени във връзка с изпълнение на настоящия Договор, са изключителна собственост на **ВЪЗЛОЖИТЕЛЯ** от момента на създаването им. | Art. 10. (1) Any copyright or other intellectual property objects, created in the process of execution of the present Agreement shall be exclusive ownership of the **ASSIGNOR** from the moment of their creation. |
| (2) Всяка от страните декларира, че при изпълнението на настоящия Договор не нарушава каквито и да било права на | (2) Every party hereby declares that in the process of execution of the present Agreement it does not infringe any third |

6

Confidential

HF02855315

| | |
|---|---|
| трети лица, включително и права на интелектуална собственост. | parties' rights, including intellectual property rights. |
| **РАЗДЕЛ V**<br>**КОНФИДЕНЦИАЛНОСТ** | **SECTION V**<br>**CONFIDENTIALITY** |
| Конфиденциалност | Confidentiality |
| Чл. 11. (1) Информация, предоставена от едната или другата страна във връзка с настоящия Договор, в устен, писмен, графичен или електронен вид, ще бъде считана за конфиденциална и като такава не може да бъде оповестявана без предварително писмено съгласие на предоставилата я страна, освен ако това е необходимо за неговото изпълнение. | Art. 11. (1) Any information submitted to any of the parties in relation to the present Agreement in verbal, written, graphic or electronic form shall be deemed confidential and thus it cannot be disclosed without prior written consent of the providing party except when this is necessary for its fulfillment. |
| (2) При прекратяване на настоящия Договор всяка от страните се задължава да върне на другата страна цялата документация и конфиденциална информация, която й е била предоставена от другата страна във връзка с изпълнение на задълженията по настоящия Договор. | (2) In case of termination of the present Agreement any of the parties shall be obliged to return to the other party all documents and confidential information submitted to it by the other party with regard to the performance of the obligations under the present Agreement. |
| (3) В случай, че някоя от страните умишлено или по непредпазливост наруши или стане причина за нарушаване на задълженията си по предходните алинеи, изправната страна има право едностранно да развали Договора, чрез писмено уведомление, отправено до неизправната страна. Договорът се счита развален от момента на получаване на уведомлението. | (3) In case any of the parties intentionally or by negligence violated or became a reason for violation of the obligations under the previous paragraphs, the due party shall be entitled to rescind unilaterally the Agreement by means of a written notification sent to the party in breach. The rescission shall take effect as of the moment of receiving the notification. |
| (4) Освен правото да развали Договора, изправната страна по ал. 3 има право на обезщетение за претърпените вреди и пропуснатите ползи, включително и за вреди, произтичащи от накърняване на доброто й име. | (4) Except for the right to rescind the Agreement the due party under Para 3 shall be entitled to receive compensation for damages and future earnings, derives from the impairment of its good reputation. |
| (5) Страните остават обвързани за | (5) The parties shall be bound by their |

Confidential

| | |
|---|---|
| неопределен срок от задълженията си по този член и след прекратяване, разваляне или унищожаване на настоящия Договор. | obligations under this article even after the termination, rescission or voidance of the present Agreement for unlimited term. |
| **РАЗДЕЛ VI**<br>**ПРЕКРАТЯВАНЕ НА ДОГОВОРА.**<br>**ОБЕЗЩЕТЕНИЯ И НЕУСТОЙКИ** | **SECTION VI**<br>**TERMINATION OF THE AGREEMENT.**<br>**INDEMNIFICATIONS AND PENALTIES** |
| Прекратяване и Разваляне на Договора | Termination and Rescission of the Agreement |
| Чл. 12. (1) Този Договор може да бъде прекратен по взаимно писмено съгласие на страните. | Art. 12. (1) This Agreement can be terminated upon mutual consent of the parties in writing. |
| (2) Настоящият Договор може да бъде едностранно прекратен с едномесечно писмено предизвестие, отправено от която и да е от страните до другата страна. В този случай ИЗПЪЛНИТЕЛЯТ има право на съответно възнаграждение за предоставените към датата на прекратяване на Договора услуги. | (2) The present Agreement can be unilaterally terminated upon one-month written notice by any of the parties addressed to the other party. In this case the **ASSIGNEE** shall be entitled to remuneration for the services provided until the date of termination of the Agreement. |
| (3) Настоящият Договор може да бъде развален с 14-дневно писмено предизвестие и при съществено неизпълнение на задълженията на която и да е от страните, освен ако в срока на предизвестието неизпълнението бъде отстранено. Съществено неизпълнение по смисъла на предходното изречение е налице, когато ИЗПЪЛНИТЕЛЯТ се отклони съществено от параметрите и спецификациите на Софтуера или забава с повече от 15 дни по отношение на уговорените срокове за изработване на Софтуера или забава в изпълнение на услугите по чл.1, ал.2, т.2 с повече от 48 часа, както и когато ВЪЗЛОЖИТЕЛЯТ се забави с повече от 15 дни с плащането на дължимо | (3) The present Agreement can be rescinded with 14-day written notice in case of material breach of the obligations of either of the parties, unless the breach has been removed with the termination notice term. Material breach of the obligations within the meaning of the previous sentence shall be present regarding any substantial deviation made by the **ASSIGNEE** from the parameters and specifications of the Software or any delay in the terms set therein with more than 15 days and any delay with the terms of the services under Art.1, Para 2, item 2 with more than 48 hours. As a material breach of the obligations shall also be deemed any delay of the **ASSIGNOR** in the due payments with more than 15 days as well as |

8

Confidential

HF02855317

| | |
|---|---|
| възнаграждение или когато не указва необходимото съдействие на **ИЗПЪЛНИТЕЛЯ** за изпълнение на възложената му работа. | any refusal for cooperation that prevents the **ASSSIGNEE** from fulfillment of its obligations. |
| (4) Във всички случаи при прекратяване или разваляне на Договора, **ИЗПЪЛНИТЕЛЯТ** се задължава да предаде всичко изработено към момента на прекратяването/развалянето на Договора, включително цялата получена от **ВЪЗЛОЖИТЕЛЯ** информация и документация. | (4) In any case of termination or rescission of the Agreement, the **ASSIGNEE** shall be obliged to deliver the work completed as of the date of termination/rescission of the Agreement, including all the information and documentation which was provided by the ASSIGNOR. |
| Форс мажор | Force majeure |
| **Чл.13. ИЗПЪЛНИТЕЛЯТ** не отговаря за закъснения, причинени от непреодолима сила, включително, но без да се ограничава до, военни действия, природни бедствия или смущения, причинени от лошо време или ниски температури, които не са по негова вина. В този случай срокът за изпълнение на поставената задача или за извършване на дължимата услуга се удължава с периода, през който трае непреодолимата сила. | Art.13. The **ASSIGNEE** shall not be held liable for any delays, caused by force majeure including but not limited to military actions, natural disasters or disturbances caused by bad weather or low temperatures for which the **ASSIGNEE** is not responsible. In this case the term for execution of the assigned task or delivery of the services shall be prolonged with the duration period of the force majeure event. |

| РАЗДЕЛ VII<br>ЗАКЛЮЧИТЕЛНИ КЛАУЗИ | SECTION VII<br>FINAL PROVISIONS |
|---|---|

| | |
|---|---|
| **Чл. 14.** (1) Всички съобщения между страните във връзка с този Договор следва да бъдат в писмена форма за действителност. Писмената форма е спазена и когато съобщението е изпратено по факс или e-mail. | Art. 14 (1) All communications between the parties with regard to the present Agreement shall be in writing to be considered valid. The form shall be observed even if the message is sent by fax or e-mail. |
| (2) Съобщенията следва да бъдат извършвани на следните адреси: | (2) Communications shall be forwarded to the following addresses: |
| За **ВЪЗЛОЖИТЕЛЯ**:<br>Lemuria Communications Inc<br>401 E Las Olas Blvd, Suite 130-508<br>Fort Lauderdale<br>FL 33301, USA | For the **ASSIGNOR**:<br>Lemuria Communications Inc<br>401 E Las Olas Blvd, Suite 130-508<br>Fort Lauderdale<br>FL 33301, USA |

9

Confidential

HF02855318

Confidential

| За ИЗПЪЛНИТЕЛЯ: | For the ASSIGNEE: |
|---|---|
| Blue Ant Ltd | Blue Ant Ltd |
| 11 Vasil Aprilov Street | 11 Vasil Aprilov Street |
| 1504 Sofia | 1504 Sofia |
| Bulgaria | Bulgaria |

(3) В случай на промяна на адресите, посочени в предходната алинея, страните са длъжни незабавно, но не по-късно от 3 дни от промяната, да информират насрещната страна за това обстоятелство и да посочат новия адрес за кореспонденция. В противен случай, всички съобщения ще се смятат за надлежно връчени на посочените в този Договор адреси, дори и да не са получени от страните.

(3) In case of any change to the addresses specified in the previous paragraph the parties shall immediately, but no later than 3 days after the change, inform the other party and indicate the new address. Otherwise all communications forwarded to the addresses indicated in this Agreement, even if not received by the parties, shall be considered duly delivered.

Чл. 15. В случай че някоя разпоредба от този Договор бъде обявена за недействителна, действителността на останалите разпоредби няма да бъде засегната.

Art. 15. In case that any of the provisions under this Agreement is declared invalid, this shall not affect the validity of the other parts of the Agreement.

Чл. 16. Изменения и допълнения към настоящия Договор и Приложенията му са валидни само ако са направени в писмена форма и са подписани от надлежни представители на страните.

Art. 16. Amendments and supplements to the present Agreement and the Appendixes thereto shall be considered valid only if they are signed in writing by authorized representatives of the parties.

Чл. 17. За неуредените в настоящия Договор положения се прилагат разпоредбите на действащото в Република България законодателство.

Art. 17. All matters not settled by the present Agreement shall be regulated by the effective legislation of the Republic of Bulgaria.

Чл. 18. Всички спорове, възникнали при или във връзка с тълкуването или изменението на този Договор, ще бъдат обсъждани от страните с цел да бъдат уредени от тях по взаимно съгласие и в дух на добра воля. Ако по отношение на такъв спор не може да бъде постигнато споразумение или то не бъде изпълнено в срока, определен в него, всеки спор, възникнал във връзка с настоящия Договор, включително и споразумение

Art. 18. All disputes arisen with respect to the interpretation and the amendment of this Agreement shall be subject to negotiations by the parties in order to be resolved by their mutual consent and in good will. If an agreement regarding a dispute can not be reached by the parties or it can not be performed within the term specified therein, every dispute arisen with respect to the present Agreement, including dispute termination agreement or

HF02855319

за прекратяване на спор или свързани с него, както и спорове, произтичащи или свързани с неговото тълкуване, недействителност, неизпълнение или прекратяване, ще бъдат отнесени за разрешаване и ще бъдат окончателно решавани от компетентния според приложимото законодателство съд.

Неразделна част от настоящия Договор са:

1. Приложение N 1 - Параметри и спецификации на Софтуера;
2. Приложение N 2 - Етапи и възнаграждения при изработването на Софтуера;
3. Приложение N 3 - Приемо-предавателен протокол.

Настоящият Договор се изготви в два екземпляра на български и английски – по един за всяка от страните. В случай на несъответствие между двата текста, предимство ще има българският текст.

---

connected to its interpretation, invalidity, non-performance or termination shall be brought to and finally settled by the competent court in accordance with the applicable legislation in force.

Inseparable part of the present Agreement shall be:

1. Appendix N 1 - Parameters and specifications of the Softaware;
2. Appendix N 2 - Stages and remunerations for development of the Software;
3. Appendix N 3 - Delivery-acceptance protocol.

The present Agreement is prepared in two original copies in Bulgarian and English languages – one copy for each party. In case of discrepancy between the both texts, the Bulgarian version shall prevail.

ЗА ВЪЗЛОЖИТЕЛЯ/FOR THE ASSIGNOR:

Anton Titov / Anton Titov

[Seal: LEMURIA COMMUNICATIONS INC. CORPORATE SEAL 2009 STATE OF FLORIDA]

ЗА ИЗПЪЛНИТЕЛЯ/FOR THE ASSIGNEE:

Rumen Stoyanov

Confidential

HF02855320

ПРИЛОЖЕНИЕ N 1/APPENDIX N 1

| ПАРАМЕТРИ И СПЕЦИФИКАЦИИ НА СОФТУЕРА | PARAMETERS AND SPECIFICATIONS OF THE PRODUCT |
|---|---|
| Настоящото Приложение е подписано на основание на и представлява неразделна част от Договор за изработка, поддръжка, актуализиране и мониторинг на специализиран софтуер от 4 Януари 2010 г. („Договора") | The present Appendix is signed on the grounds of and represents integral part of the Special Software Development, Maintenance, Update and Monitoring Agreement dated January 4, 2010 (the "Agreement") |
| Съгласно чл. 1, ал.2, т.1 от Договора ИЗПЪЛНИТЕЛЯТ се задължава да изработи Софтуера съгласно параметрите и спецификациите, посочени по-долу:<br><br>- софтуер за управление на SQL бази данни<br>- модул за работа на софтуера върху множество от сървъри<br>- модул за балансиране на интернет трафик върху множество от сървъри | Pursuant to Art. 1, Para 2, item 1 of the Agreement the **ASSIGNEE** shall be obliged to develop the Software in compliance with the parameters and specifications stipulated below:<br><br>- development of SQL database management software<br>- module for database management software on multiple servers<br>- internet traffic balancer for multiple servers |
| Настоящото Приложение се изготви в два екземпляра на български и английски – по един за всяка от страните. В случай на несъответствие между двата текста, предимство ще има българският текст. | The present Appendix is prepared in two original copies in Bulgarian and English languages – one copy for each party. In case of discrepancy between the both texts, the Bulgarian version shall prevail. |

ЗА ВЪЗЛОЖИТЕЛЯ/FOR THE ASSIGNOR:

...Anton Titov / Anton Titov...

ЗА ИЗПЪЛНИТЕЛЯ/FOR THE ASSIGNEE:

.................../....................

Рупен Оганян

12

Confidential                                                                                                                                                        HF02855321

## ПРИЛОЖЕНИЕ N 2/APPENDIX N 2

| ЕТАП И ВЪЗНАГРАЖДЕНИЕ ПРИ ИЗРАБОТВАНЕ НА СОФТУЕРА | STAGES AND REMUNERATIONS FOR DEVELOPMENT OF THE SOFTWARE |
|---|---|
| Настоящото Приложение е подписано на основание на и представлява неразделна част от Договор за изработка, поддръжка, актуализиране и мониторинг на специализиран софтуер от 4 Яануари 2010 г. („Договора") | The present Appendix is signed on the grounds of and represents integral part of the Special Software Development, Maintenance, Update and Monitoring Agreement dated January 4, 2010 (the "Agreement") |
| I. Изработването на Софтуера ще бъде извършено на етапи, както следва: | I. The development of the Software shall be competed by stages, as follows: |

| | Етап | Време за изработване |
|---|---|---|
| 1 | Първа част от софтуер за управление на SQL бази данни | 1 месец |
| 2 | Втора част от софтуер за управление на SQL бази данни | 1 месец |
| 3 | Трета част от софтуер за управление на SQL бази данни | 1 месец |
| 4 | Първа част на модул за работа на софтуера върху множество от сървъри | 1 месец |
| 5 | Втора част на модул за работа на софтуера върху множество от сървъри | 1 месец |
| 6 | Модул за балансиране на интернет трафик върху множество от сървъри | 1 месец |

| | Stage | Time for completion |
|---|---|---|
| 1 | SQL database management software, part I | 1 month |
| 2 | SQL database management software, part II | 1 month |
| 3 | SQL database management software, part II | 1 month |
| 4 | module for SQL database management software on multiple servers, part I | 1 month |
| 5 | module for SQL database management software on multiple servers, part II | 1 month |
| 6 | internet traffic balancer for multiple servers | 1 month |

| II. Възнаграждението по чл.8, ал.1 от Договора ще бъде платимо на части при завършване на всеки етап, а именно: | II. The remuneration under Art. 8, Para 1 of the Agreement shall be paid in parts at the end of each stage, namely: |
|---|---|

13

Confidential

HF02855322

| Етап | Price | Stage | Price |
|---|---|---|---|
| 1. | 70,000 USD | 1. | 70,000 USD |
| 2. | 70,000 USD | 2. | 70,000 USD |
| 3. | 70,000 USD | 3. | 70,000 USD |
| 4. | 70,000 USD | 4. | 70,000 USD |
| 5. | 70,000 USD | 5. | 70,000 USD |
| 6. | 70,000 USD | 6. | 70,000 USD |

| | |
|---|---|
| Настоящото Приложение се изготви в два екземпляра на български и английски – по един за всяка от страните. В случай на несъответствие между двата текста, предимство ще има българският текст. | The present Annex is prepared in two original copies in Bulgarian and English languages – one copy for each party. In case of discrepancy between the both texts, the Bulgarian version shall prevail. |

ЗА ВЪЗЛОЖИТЕЛЯ/FOR THE ASSIGNOR:

*Антон Титов* / Anton Titov

ЗА ИЗПЪЛНИТЕЛЯ/FOR THE ASSIGNEE:

*......./........................*

*Руен Гогов*

14