# Yeh Exhibit 82

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN


DISNEY ENTERPRISES, INC., TWENTIETH
CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS
LLLP, COLUMBIA PICTURES INDUSTRIES, INC.,
and WARNER BROS. ENTERTAINMENT INC.,

     *Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and DOES 1-10.

     *Defendants.*         /
_____


**MEMORANDUM OF LAW OF DEFENDANTS HOTFILE CORPORATION AND
ANTON TITOV IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
<u>RESPONSES TO REQUESTS FOR PRODUCTION AND INTERROGATORIES</u>**

26501\2737807.1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND BACKGROUND ..................................................... 1

II.   LEGAL ARGUMENT ........................................................................ 2

    A.   The Studios' Motion to Compel a Further Response to Request No. 28
     Should be Denied as it Seeks Material That is Irrelevant, Overbroad and
     Unduly Burdensome. ................................................................... 2

        1.   The Studios Resort to Distortions and Inaccuracies to Justify Their
          Request ...................................................................... 2

        2.   Request No. 28 Is Overbroad and Seeks Material That is Not
          Relevant Because the Studios' Imputed Knowledge and Intent
          Theory is Unsupportable ...................................................... 3

        3.   The Request Is Unduly Burdensome ......................................... 5

        4.   The Court's Order of August 26, 2011 Renders This Request
          Superfluous .................................................................. 5

    B.   The Studios' Fishing Expedition About Potential Investors Should be
     Denied ................................................................................. 5

    C.   Defendants' Response to Interrogatory No. 10 is a Straightforward and
     Appropriate Use of Rule 33(d) ...................................................... 8

    D.   Hotfile has Already Provided "Information Regarding Other Hotfile
     Operators," Thus, the Studios' Demands for Additional Such Information
     Should be Denied as Cumulative and Disproportionate. ........................... 10

    E.   The Studios' Request for Hotfile's Database Schema Should be Denied
     Because it Would Compromise Hotfile's Commercially Sensitive Trade
     Secrets and is Not Relevant and Necessary for This Case ........................ 13

III.  CONCLUSION ............................................................................ 16

## I.     INTRODUCTION AND BACKGROUND

The Plaintiffs – five of the largest movie studios on the planet (hereinafter the "Studios") – have, from day one of this litigation, sought to bury Defendants – a small start-up internet file hosting company and their chief technologist – under radically overbroad and intrusive discovery requests and non-stop motion practice.  In just six months, the Studios have filed six discovery-related motions, averaging one per month.  And they have made clear in the briefing on this motion that their goal is to continue more of the same.  Furthermore, they have sought to circumvent the 20-page limit for motions under local rule 7.1(c) by filing serial motions to compel concerning the same sets of document requests and interrogatories that they moved on previously.[1]

The exaggerated rhetoric in the Studios' papers notwithstanding, the reality is that Defendants have gone, and are continuing to go, to great lengths to provide massive amounts of discovery to the Studios in response to their unbridled discovery requests.  Among other things, Defendants have already produced:

- More than 2.8 million pages of emails including the entire contents of Hotfile's "abuse" and "support" email boxes, which are the email accounts through which Hotfile receives takedown notices under the Digital Millennium Copyright Act ("DMCA"), communicates with users and copyright owners, and otherwise carries out many of the functions of operating an internet file hosting service.
- For all 1,015 files[2] that the Studios claim infringe their copyrights, the following data:
    - the user I.D. of the person who uploaded the file;
    - the user-supplied filename;
    - the Hotfile-assigned identification number;
    - the date the file uploaded;
    - the file size;
    - the number of times the file was downloaded;

---

[1] The instant motion concerns documents requests and interrogatories that were part of the Studios' First Set of Requests for Production and First Set of Interrogatories.  The Studios' prior motion to compel addressed document requests and interrogatories from the same sets of discovery.

[2] The number increased to 1,036 in a recently served interrogatory response.

> o the IP address associated with the uploading user (with the "last octet" redacted to protect user privacy);
>
> o the IP address associated with the computer from which the file was uploaded (again, with the "last octet" redacted to protect user privacy);
>
> o whether the file was a copy of another file; and
>
> o if the file was a copy of another file, the I.D. number of the "parent" file.

- Data related to every user Hotfile has ever terminated (more than 14,000 total) since the inception of the Hotfile website.

- Data related to all participants in Hotfile's Affiliate program.

The instant motion exemplifies the problematic nature of the Studios' unrestrained approach to discovery. Having already filed one motion to compel that seeks to require Hotfile to produce virtually every piece of data that exists about every one of the more than 92 million files that it hosts, all of its users worldwide, all of its source code (which is a highly guarded trade secret), and virtually all of its financial information, they now seek to compel production of material that is – variously – irrelevant, burdensome, cumulative, duplicative and confidential and/or trade secret material, most of which has little or no bearing on the Studios' sole cause of action against Defendants for secondary copyright infringement. For the reasons explained below, the Studios' motion should be denied in its entirety.

## II.   LEGAL ARGUMENT

### A.   The Studios' Motion to Compel a Further Response to Request No. 28 Should be Denied as it Seeks Material That is Irrelevant, Overbroad and Unduly Burdensome.[3]

#### 1.   The Studios Resort to Distortions and Inaccuracies to Justify Their Request.

The Studios' Request No. 28 seeks the production of all files ever uploaded or downloaded to or from the Hotfile website by any and every "employee, owner, shareholder, principal, officer, director, agent, business partner, or contractor" of any "Hotfile Entity," a defined term that includes virtually any company or person that has any association with Hotfile. *See Infra* at Part II.D. And in typically overwrought fashion, the Studios have argued in favor of

---

[3] Notably, when Hotfile served similar discovery requests to the Studios seeking information about uploads and downloads by their employees, Hotfile met with resistance and objections.

Request No. 28 by making the assertion – which is false – that a Hotfile contractor "was paid thousands of dollars as one of Hotfile's Top 500 'Affiliates'" and "was paid by Hotfile for uploading and promoting content that was downloaded over two million times." *See* Plaintiffs' Motion and Memorandum to Compel Responses to Requests for Production of Documents and Interrogatories ("Mot.") at p. 4. Defendants advised the Studios prior to the filing of this motion that their conclusions were incorrect, but the Studios have forged ahead unabated with these false statements and erroneous conclusions.

In fact, the contractor to whom the Studios are referring uses his PayPal account to receive his salary from Hotfile. *See* Declaration of Anton Titov in Support of Defendants' Opposition to Plaintiffs' Motion to Compel Responses to Requests for Production of Documents and Interrogatories ("Titov Decl."), attached hereto as Exhibit 1, at ¶ 6. Because Hotfile also pays its Affiliates through PayPal, this contractor (through his Hotfile user identification number) and the amount of his salary payments were listed in a response to an interrogatory that asked Hotfile to identify the 500 participants in its Affiliate program who had received the largest cumulative payments and the cumulative amounts of such payments. *Id.* That contractor has only ever uploaded two files to the Hotfile website, each of which was downloaded just once. *Id.* The Studios are simply attempting to create drama where there is none in order to justify a characteristically intrusive and legally untenable discovery request.

2.    **Request No. 28 Is Overbroad and Seeks Material That is Not Relevant Because the Studios' Imputed Knowledge and Intent Theory is Unsupportable.**

The Studios' primary theory for seeking this discovery is the untenable suggestion that they could use it to impute knowledge or intent to Hotfile in connection with The Studios' secondary infringement claim.[4]   (Mot. at p. 3)  The Studios state that they seek evidence that "defendants' personnel themselves engaged in blatant copyright infringement, which would be directly relevant to whether defendants knew of or induced infringement." (Mot. at p. 3)  In order to impute someone's knowledge or intent to a corporation, however, the individual must be

---

[4] The Studios also argue that this discovery would disclose evidence of direct infringement. *See* Mot. at 3-4. However, Hotfile has already provided discovery about all of the accused files identified by the Studios as directly infringing their copyrights, including the user identification numbers of the uploading users, none of which match the user identification numbers (which have been produced to the Studios) of any Hotfile personnel. Thus, this is nothing more than a blatant fishing expedition.

an employee or agent of the corporation and the person must be acting on behalf of the corporation and within the scope of his or her authority at the time of the act. *See Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 152 n.19 (S.D.N.Y. 2009) ("*Usenet II*") ("Knowledge and actions of a corporation's employees and agents are generally imputed to the corporation where the acts are performed on behalf of the corporation and are within the scope of their authority."). "Acting within the scope of employment entails more than being on the corporate employer's premises, but rather also involves an intent to benefit the corporation." *United States v. Route 2, Box 472, 136 Acres More of Less, Land Lying and Being in Land Lot 221 of the 18th District, 1st Section, Towns County, Georgia*, 60 F.3d 1523, 1527 (11th Cir. 1995).

Indeed, the Studios cite to case law that stands for the unremarkable principle that a corporate officer may be compelled to turn over documents **that were created in connection with the officers' functions as a corporate employee**. *See Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 559 (S.D.N.Y. 1994); *see also Flagg v. City of Detroit*, 252 F.R.D. 346, 364 (E.D. Mich. 2008) (relying on *Riddell* in case involving employer-issued text messaging devices). The above line of cases is wholly inapplicable here. Other than in some limited circumstances such as during systems testing, uploading and downloading of files is not part of any Hotfile personnel's job duties.[5]   Titov Decl. ¶ 3. Moreover, Hotfile does not issue "company-supplied" computers to its shareholders and contractors, who all use their personal computers when they do work for Hotfile. Titov Decl. ¶ 2. Thus, the Studios ostensibly seek to discover files that Hotfile personnel uploaded and downloaded to or from Hotfile *in their individual capacities* using their personal computers. Assuming, *arguendo*, that such files even exist (or ever existed) and still reside on someone's personal computer, the above authorities – which only authorize discovery of materials created in connection with an officers' corporate functions – do not authorize such discovery from Hotfile. *See Riddell Sports Inc.*, 158 F.R.D. at 559 (discovery only permitted for materials an officer creates in his or her representative capacity); *see also Flagg*, 252 F.R.D. at 364 (following *Riddell*).

Moreover, this Request is patently overbroad in that it purports to include an unbounded

---

[5] Hotfile's personnel are not Hotfile employees; rather, they all work for third parties or are independent contractors. Declaration of Anthony Schoenberg in Support of Defendants' Opposition to Plaintiffs' Motion to Compel Responses to Requests for Production and Interrogatories ("Schoenberg Decl."), attached as Exhibit 2 hereto, at Ex. A, pp. 6-7.

number of Hotfile-associated persons, including every "employee, owner, shareholder, principal, officer, director, agent, business partner, or contractor" of any "Hotfile Entity," which itself is a defined term that includes seemingly any company or person that has any association with Hotfile. *See Infra* at Part II.D. This overbreadth only adds to the irrelevance of the request and makes responding a practical near-impossibility.

### 3.   The Request Is Unduly Burdensome.

The Studios' motion should be denied for the additional reason that Request No. 28 is unduly burdensome. In order to search its servers for files downloaded from the Hotfile website by Hotfile personnel, Hotfile would have to conduct a search of the download log files that Hotfile maintains.[6] Titov Decl. ¶ 4. That process would require Hotfile to write a software program that would then have to run on hundreds of millions of lines of computer logs. Titov Decl. ¶ 4. The entire process could take days if not weeks of programming and processing. Titov Decl. ¶ 4. For this additional reason, the Studios' motion should be denied. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) (court must limit extent of discovery if it determines that the burden or expense of discovery outweighs its likely benefit).

### 4.   The Court's Order of August 26, 2011 Renders This Request Superfluous.

On August 26, 2011 (the day of the filing of this brief), the Court issued its Order on Motion to Compel, in which it granted, in part, the Studios' previous motion to compel. Among other things, the Court ordered Hotfile to produce its content, user and affiliate data by September 12, 2011. The information encompassed therein would include data reflecting uploads and downloads by Hotfile personnel. Accordingly, this Request is now superfluous.

### B.   The Studios' Fishing Expedition About Potential Investors Should be Denied.

Request No. 5(i) and Interrogatory No. 4 epitomize the over-the-top nature of the Studios' discovery tactics. The Studios want the identity of every potential investor who Hotfile has ever communicated with, production of all communications with said potential investors, and the production of all documents provided to the potential investors. This intrusive and

---

[6] Because computer files residing on a computer hard drive do not generally indicate what website they were downloaded from or even whether they were downloaded from a website, searching the hard drives of individuals' computers would likely be a futile exercise even if it were within Hotfile's control to do so.

unbounded discovery into extremely confidential material should not be permitted.

Discovery of confidential information is only allowed in limited circumstances. Where a party in receipt of a discovery request for such information establishes that the information is confidential and that its disclosure would be harmful, the requesting party then has the burden to show that the information is relevant and necessary to the action. *See Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985) (denying request for production of confidential financial strategy information); *American Standard Inc. v. Humphrey*, No. 306-cv-893-J-32MCR, 2007 WL 1186654, at *3 (M.D. Fla. Apr. 19, 2007) (showing of relevance and necessity required to compel production of trade secrets); *Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 328 (9th Cir. 1961) (same); *Litton Indus. v. Chesapeake & Ohio Ry. Co.*, 129 F.R.D. 528, 530 (E.D. Wisc. 1990) (same)..

The identifies of all potential investors in Hotfile, all communications with such potential investors and all materials provided to said potential investors are extremely confidential and commercially sensitive. Titov Decl. ¶ 5. Should this discovery be permitted, it could undoubtedly harm Hotfile's relations with those potential investors. *Id.* If a potential investor were to learn of the disclosure or were to be served with a subpoena in connection with this matter, it might deter the potential investor from being willing to invest in Hotfile in the future or to otherwise work with Hotfile or consider future business deals or projects with Hotfile.[7] *Id.*

To justify their requests, the Studios engage in bald speculation about imaginary smoking gun documents they hope to find based on inapposite case law involving peer-to-peer networks that were trying to become the "next Napster" ten years ago.[8] *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, Ltd., 454 F. Supp. 2d 966 (C.D. Cal. 2006) (investor materials positioned company "as a Napster alternative"); *Arista Records LLC v. Lime Group LLC*, No. 06-CV-5936, 2011 WL 1742029 (S.D.N.Y. May 2, 2011) (discussing defendant's plans to

---

[7] The Studios have shown no more restraint with regard to third party discovery than party discovery, having served 14 third-party subpoenas before Defendants even had an Answer on file.

[8] The Studios also cite to *Columbia Pictures Indus., Inc. v. Fung*, 2009 WL 6355911, at *1 (C.D. Cal. Dec. 21, 2009), which involved a "bit torrent" site described in the opinion as an "evolutionary modification of traditional 'peer-to-peer' sites such as Napster and Grokster." Putting aside the fact that Hotfile has nothing in common with a "bit torrent" site, the evidence discussed in *Fung* was a solicitation to a potential advertiser. *See id.* at *14; Mot. at p. 8. This is wholly irrelevant to the instant discovery requests, which concern potential investors, not potential advertisers. (In fact, Hotfile does not run advertising on its website.)

convert Napster users to LimeWire network).  Though peer-to-peer networks flourished in the early part of the last decade, they have largely been shut down through massive litigation by the music industry, which lead to the Supreme Court's decision in Grokster.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).  In distinct contrast to Hotfile, peer-to-peer networks permitted people to freely share digital music files over a fully searchable online platform.  *See Lime Group*, 2011 WL 1742029 at \*2 (describing peer-to-peer networks).  Hotfile is fundamentally different.  It is a file-hosting and storage platform – part of the coming wave of "cloud" computing businesses – that has substantial non-infringing uses, provides for private file storage of virtually all types of files, and does not permit users to search for files on its system.  *See* Dkt. 50.  The Hotfile website only began operating in February 2009, long after the heyday of peer-to-peer networks.  The Studios' speculation that some kind of smoking gun document will be found here similar to the "next Napster" documents that were discussed in Grokster and Lime Group is implausible.  That kind of speculation – untethered from reality – is not nearly enough to overcome the potential prejudice to Hotfile of allowing this discovery.

Courts routinely deny discovery requests where the potential prejudice outweighs the need for disclosure.  *See Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 192-193 (S.D.N.Y. 2002)("even if such discovery were relevant … the risk of injury to the plaintiffs if such [confidential documents] were disclosed outweighs the need for its disclosure"); *In re Del-Val Fin. Corp.* Sec. Litig., 158 F.R.D. 27,27 (S.D.N.Y. 1994) (denying discovery where "the potential harm of releasing [confidential documents' outweighs their possible relevance").  That is true even where there is a protective order in place.  *See Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 260 (2008) ("[T]he protections set forth in the stipulated confidentiality order are careful and extensive, but nevertheless not as safe as nondisclosure.").  Accordingly, the Court should deny the Studios' request for this discovery given the clear showing of prejudice to Hotfile and the paltry showing of need.[9]

---

[9] The prejudice to Hotfile in this particular instance is exacerbated by the fact that the Studios have made no attempt to limit their request in any way whatsoever, instead asking for the identity of every potential investor in Hotfile, all communications with each of them, and all materials provided to each of them.  There is no attempt to limit the discovery requests to materials discussing copyright infringement or other subject matter that might have some conceivable bearing on the issues in the instant case.  Moreover, the term "potential investors" is undefined and renders the discovery overbroad and vague, as it would potentially include any person who Hotfile ever had any discussion about investing in Hotfile, regardless of how

**C.     Defendants' Response to Interrogatory No. 10 is a Straightforward and
       Appropriate Use of Rule 33(d)**

Interrogatory No. 10 is precisely the type of interrogatory for which Rule 33(d) was
created. "Where an unequal burden does not exist between the parties, the court will allow the
responding party to produce business records, even if the interrogating party must examine
multiple documents to ascertain the answers to its interrogatories." *Sadofsky v. Fiesta Products,
LLC*, 252 F.R.D. 143, 147 (E.D.N.Y. 2008). In order to challenge a responding party's use of
Rule 33(d), the moving party "must make a prima facie showing that the use of Rule 33(d) is
somehow inadequate, whether because the information is not fully contained in the documents or
because it is too difficult to extract." *Id.* at 148.

The Studios have not met their burden to challenge Defendants' use of Rule 33(d).
Interrogatory No. 10 asks for the following information for every user who Hotfile has
terminated, limited, suspended or otherwise penalized: (a) the reason for the adverse action;
(b) the date on which the action was taken; and (c) whether the user was believed or alleged to be
a copyright infringer or repeat infringer. *See* Mot. at p. 9. That is exactly the information that
Defendants have provided. Defendants produced a spreadsheet – in both TIFF and native format
– that contains 14,694 entries (corresponding to 14,694 terminated users), reflecting all user
terminations for which Hotfile has records since the Hotfile website began operating in February
of 2009, the reason for the termination (including if the termination was for copyright or repeat
infringement) and the date of termination. [10]

The requirements for utilizing the procedure under Rule 33(d) are plainly met here.
Those requirements are: (1) the interrogating party can determine the answer to the interrogatory
by "examining, auditing, compiling, abstracting or summarizing" the business records; (2) "the
burden of deriving or ascertaining the answer will be substantially the same for either party";
(3) the responding party "specifies the records that must be reviewed, in a sufficient detail to
enable the interrogating party to locate and identify them as readily as the responding party
could"; and (4) the responding [party] provides the interrogating party with "a reasonable
opportunity to examine and audit the records and to make copies compilations, abstracts, or

---

informal or brief the discussion was. This type of overzealous discovery into confidential
matters should not be permitted.
[10] The spreadsheet lists only terminations (as opposed to suspensions or other penalties) because
Hotfile has not imposed any other form of penalty for copyright infringement.

summaries." *Sadofsky v. Fiesta Products, LLC*, 252 F.R.D. 143, 147 (E.D.N.Y. 2008). Defendants have met each of these requirements. First, as explained above, the spreadsheet that Defendants produced contains the information that the Studios have requested. Second, the burden to ascertain the relevant and responsive information from the spreadsheet is no greater for the Studios than for Defendants.[11] Third, Defendants have specified exactly which records contain the information. Last, Defendants gave the Studios an opportunity to examine the records – indeed, Defendants produced the spreadsheet to the Studios both in TIFF and native format.

The Studios argue that they are entitled to a traditional response because they do not know the meaning of certain terms on the spreadsheet, which they claim would be relevant to the provision under the DMCA requiring an internet service provider to reasonably implement a repeat infringer policy. *See* 17 U.S.C. § 512(i). The Studios specifically point to certain reasons such as "cheater checks" and "nazi" as support for this argument. (Other reasons appearing on the spreadsheet include things such as "fraud payments," "payment fraud," "hacked," and "credit card fraud.")

The Studios' feigned confusion is unavailing. The vast majority of entries on the spreadsheet denote, in terms that could not be more clear, the following reason for termination: "*Repeated Copyright Infringement.*" *See* Dk. 112-4 (Pozza Declaration, Ex. C). The Studios plainly understand the meaning of this, as shown by their repeated reference to the supposed termination of 65% of Hotfile's top 500 Affiliates for repeat infringement. *See* Mot. at pp. 4, 11. With respect to those terminations that were not for copyright infringement, the Studios cannot plausibly contend that it matters for purposes of this litigation whether the reason for termination was failure to pay Hotfile or hacking Hotfile's site or some other reason unrelated to copyright infringement. Such terminations were obviously not for copyright infringement and, thus, are not relevant to the issue under the DMCA of whether Hotfile reasonably implemented a repeat infringer policy.

Raising this issue in a motion is an unnecessary and pointless use of the Court's

---

[11] In contrast, providing responsive information for 14,694 terminated users in a traditional interrogatory response would undoubtedly impose an additional burden on Defendants while providing no added benefit for the Studios. In fact, a traditional interrogatory response would undoubtedly be less useful than the native format spreadsheet that Defendants produced, which allows the Studios to manipulate the data.

resources, and it appears to be nothing than an attempt to "make work" for Defendants.  Were

Defendants required to provide this information in an interrogatory response, the response would

essentially contain the same information as the spreadsheet that Defendants produced.  Courts

deny these motions in cases involving much more unwieldy document productions than the

single spreadsheet that Defendants produced in this case.  *See Sadofsky*, 252 F.R.D. 148-149

(denying motion to compel traditional response to interrogatories asking for sales and customer

information where defendant answered by producing invoices); *United States v. Rachel*, 289 F.

Supp. 2d 688, 693 (D. Md. 2003) (denying motion to compel traditional response to

interrogatory notwithstanding that responding party had produced "175 boxes of materials, an

additional 10 filing cabinets of documents, and numerous computer diskettes" in "an unheated,

unlit garage, stacked 8 feet high and 2-4 files/cabinets deep along the walls, with additional

boxes and documents in the middle of the garage").[12]  Indeed, courts should only foreclose the

use of Rule 33(d) where "[a] responding party creates an unequal burden for the receiving party

when it has the answer to an interrogatory in the form of a compilation but responds to the

interrogatory by producing and identifying business records, such that the receiving party must

then compile the records to obtain the answer to the interrogatory." *Sadofsky*, 252 F.R.D. at 148.

Here, that is plainly not the case.  Accordingly, the Studios' motion to compel a traditional

response to Interrogatory No. 10 should be denied.

> **D.  Hotfile has Already Provided "Information Regarding Other Hotfile
> Operators," Thus, the Studios' Demands for Additional Such Information
> Should be Denied as Cumulative and Disproportionate.**

The Studios' request for "additional information regarding other Hotfile operators" (RFP

No. 31) should be denied, because Hotfile has already, at substantial expense and effort,

---

[12] The cases that the Studios cite are inapposite.  In one case, the responding party referred
generically to documents that "will be produced." *See Oleson v. Kmart Corp.*, 175 F.R.D. 560,
564 (D. Kan. 1997).  In another, undisputedly relevant information was sought about life
insurance calculations that, due to their complexity, could only be performed by the responding
party. *See Hege v. Aegon USA, LLC*, C/A No. 8:10-cv-01578-GRA, 2011 WL 1119871, at *3
(D.S.C. Mar. 25, 2011).  In another, the defendants simply pointed to a mass production of
documents from which the responsive information could not be ascertained. *Powell v. Home
Depot, USA, Inc.*, No. 07-80435-CIV, 2010 WL 4116488, at *31 (S.D. Fla. Sept. 14, 2010).  In
contrast, in the instant case, Defendants have produced a single spreadsheet containing the
information in its possession, custody or control that is responsive to the interrogatory.  That is
all that is required.

provided to the Studios: (a) a directly on point sworn interrogatory response; (b) more than 2.8 million pages of email showing in detail the day-to-day operations of Hotfile; and (c) legal documents showing various corporate relationships.  In light of this extensive discovery, the Studios' request for "additional" information is cumulative and disproportionate and should be denied.

Rule 26(b)(2)(C) states that a court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that…the discovery sought is unreasonably cumulative or duplicative…or the burden or expense of the proposed discovery outweighs its likely benefit…."  This "proportionality" requirement enables courts to keep a "tighter rein" on discovery. Fed.R.Civ.P. 26 Advisory Committee's Note (1993).  Where a party has already obtained substantial discovery on an issue and nevertheless continues to demand discovery on the same issue, courts do not hesitate to deny a motion to compel.  *See Lee v. Executive Airlines, Inc.*, 31 F. Supp. 2d 1355, 1356 (S.D. Fla. 1998) (where employer already produced 250 personnel files and provided "other means of discovery" on similarly situated employees, request for extensive searches for files for "all" employees at "all" facilities was denied); *Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295, 305-306 (D. Kan. 1996) (interrogatories that sought same particulars obtained in deposition were abusive); *Aramburu v. Boeing Co.*, 885 F. Supp. 1434, 1444 (D. Kan. 1995) (where attendance notebook and computerized attendance histories for others had already been produced, demand for 1,700 additional personnel files, even if relevant, was disproportionate and therefore denied).

In characteristic fashion, the Studios seek remarkably overbroad discovery:  they want all documents pertaining to any conceivable relationship between what they have broadly defined as the "Hotfile Entities":

> "Hotfile Entity" means Hotfile Corp., Hotfile, S.A., and Hotfile, Ltd., as well as any entity involved with or that you claim is involved with the operation of the Hotfile Website, as well as any entity controlled, operated, affiliated with, or owned by any Defendant, in whole or in part, that performs or has performed any services related to the Hotfile Website, and shall further include principals, executives, officers, directors, employees, agents, representatives, or shareholders of such entity.

*See* Dk. 81-2 (Leibnitz Decl. Ex. A) at p. 2.  Thus, "Hotfile Entity" is defined to include not only the enumerated three companies, but also *any associated company or individual*.

Tracing the shareholdings, property ownership, agreements, and financial arrangements regarding such a seemingly limitless group of companies and individuals plainly extends beyond the relatively narrow issue of alleged secondary copyright infringement by *Hotfile Corp.*, the only real issue in this case.

Moreover, the discovery the Studios seek is expressly duplicative of discovery they have already received. The Studios' Interrogatory No. 1 asked Hotfile to:

> Identify each person who has been employed by, acted as the agent of, or performed work on behalf of or provided any service to (including as a contractor) the Hotfile Website and each Hotfile Entity from January 1, 2007

*See* Schoenberg Decl. at Ex. A, p. 5. Similar to their definition of "Hotfile Entity," the Studios defined "person" broadly to include any entity or individual. Thus, as Interrogatory No. 1 sought information regarding any entity or individual that "provided any service" to Hotfile, and RFP No. 31 "seek[s] documents that would establish the extent to which any other entity . . .has been involved in the operation of Hotfile," the two requests substantially overlap. Mot. at 12.

Hotfile's initial and supplemental responses to Interrogatory No. 1 are directly on point and fully responsive to RFP No. 31. Hotfile's responses detailed the relationships and roles of various companies and individuals in the operation of Hotfile: "Hotfile Ltd. provides services to Hotfile Corp. related to the processing of PayPal transactions." *See* Schoenberg Decl. at Ex. A, p. 8. The web research that the Studios tout in their Motion (*see* Dk. 112-5 (Pozza Decl. Ex. D)), simply confirms the accuracy of Hotfile's interrogatory response by illustrating that Hotfile Ltd is indeed involved in payment processing. It accordingly provides no basis to demand "additional" discovery.

The same interrogatory response explains that "Lemuria Communications Inc., provides hosting services for Hotfile Corp.," and that "[Redacted] provides email support and software development services to Hotfile Corp." *See* Schoenberg Decl. at Ex. A, p. 8. That interrogatory response also details the role of the various individuals involved in Hotfile's operation. *See id.,* pp 6-7. Thus, Hotfile's response to Interrogatory No. 1 explains "the extent to which any other entity...has been involved in the operation of Hotfile" (Mot., p.12) – and this motion should accordingly be denied as cumulative and duplicative.

Hotfile's document production further is also highly responsive to Interrogatory No. 1 and RFP No. 31. Hotfile has produced more than 2.8 million pages of email from its "abuse"

and "support" boxes, which are the email addresses through which Hotfile receives DMCA takedown notices and interacts with its users and copyright owners on a day-to-day basis. Hotfile is also in the process of producing emails of its shareholders and the contractors who assist in the operation of the Hotfile website. This substantial body of documents provides the best possible window into Hotfile's day-to-day operations and further illustrates how other entities may have been involved in various aspects of Hotfile's operation. Furthermore, Hotfile has provided official incorporation and other similar legal documents that further reflect the relationships among the various entities.[13]

In totality, Hotfile has produced information that leaves no conceivable mystery as to the "who" and "how" of Hotfile's operation. Accordingly, the Studios' request for exhaustive, ill-defined and plainly cumulative further discovery should be denied.

### E. The Studios' Request for Hotfile's Database Schema Should be Denied Because it Would Compromise Hotfile's Commercially Sensitive Trade Secrets and is Not Relevant and Necessary for This Case.

The Studios' request for all of Hotfile's database table and heading names (RFP No. 17) should be denied. Production of this information would compromise Hotfile's commercially sensitive trade secrets and the Studios cannot demonstrate that the request is "relevant" and "necessary" to the presentation of their case. *See Mackle*, 108 F.R.D. at 326; *Humphrey*, 2007 WL 1186654, at *3; *Hartley Pen Co.*, 287 F.2d at 328; *Litton Indus.*, 129 F.R.D. at 530.

Hotfile's database structure is among its most closely held commercially sensitive trade secrets. Titov Decl. ¶ 7. The Studios do not dispute this point and cannot credibly do so. The design of the database reflects thousands of hours of coding time and years of modification and

---

[13] None of the cases cited by the Studios permitted duplicative discovery as to whether the plaintiff might have a substantive claim against another entity. In *Nowak v. Lexington Ins. Co.*, No. 05-21682 CIV-MORENO, 2006 WL 3613766, at *2-3 (S.D. Fla. June 12, 2006) the defendant insurance company had contended "that discovery directed to affiliated and parent entities should not be permitted since the issue here is whether Lexington [the defendant] failed to settle the claim in good faith." By contrast, Hotfile has not categorically blocked related entity discovery. Rather, it has already provided extensive discovery directly on point. *Fleury v. Cartier Int'l*, No. C-05-4525 EMC, 2006 WL 2934089, at **3-4 (N.D. Cal. Oct. 13, 2006) dealt with *jurisdictional* discovery, which is not presently at issue here and is governed by a different legal standard. Similarly, *Wai v. Rainbow Holdings* 315 F.Supp.2d 1261, 1275 (S.D. Fl., 2004) permitted discovery for a *forum non-conveniens* analysis where there was a showing that "[a]t least one of the Defendants [who was seeking dismissal actually had] contacts with the United States." *Forum non conveniens* is not presently at issue.

refinement in response to evolving technological and market demands. *Id.* As with most businesses today, Hotfile's database is integral to its operation. And as with other industrial secrets – such as the formula for Coca Cola™ – were the structure of Hotfile's databases laid open to others, they could readily mimic Hotfile's business without making a comparable investment of time and money, and Hotfile would face a serious risk of losing its competitive edge. *Id.* Accordingly, Hotfile carefully guards its database, keeping it at all times password protected and allowing access to only three engineers. *Id.*

The Studios have not made the showing of relevance and necessity required to abrogate Hotfile's trade secret protection. Indeed, they make no credible relevance argument whatsoever, instead raising the half-hearted claim that database schema are somehow relevant to defendants' "knowledge of activity occurring on their site." Mot. at 15. However, it is plainly not the schema but the data itself that the Studios are interested in. As noted above, Hotfile has already produced substantial data pertaining to the accused files, including:

- o the user I.D. of the person who uploaded the file;
- o the user-supplied filename;
- o the Hotfile-assigned identification number;
- o the date the file uploaded;
- o the file size;
- o the number of times the file was downloaded;
- o the IP address associated with the uploading user (with the "last octet" redacted to protect user privacy);
- o the IP address associated with the computer from which the file was uploaded (again, with the "last octet" redacted to protect user privacy);
- o whether the file was a copy of another file; and

Moreover, the Court's Order on Motion to Compel dated August 26, 2011, which ordered Hotfile to produce its content, user and affiliate data, renders this request effectively moot, since the Court ordered the production of the data itself. Accordingly, there is no longer any reason for the Studios to seek information about the structure of the database.

Tellingly, the only cases that the Studios cite in their argument are *Fung* and *Usenet II*, neither of which touch upon database schema, table names or headers or even databases generally. *See Fung*, 2009 WL 6355911, at *17 (no mention of internal database; rather

-14-

defendants' public website, *i.e.* its "own webpages" provided lists entitled "Top 20 Movies" and "Box Office Movies" going to knowledge); *Usenet II*, 633 F. Supp. 2d at 155 (no reference to discovery of trade secret database table and heading information for evidence of "knowledge"). The Studios cite no authority justifying the discovery they are demanding. The database schemas the Studios seek are accordingly ***unnecessary***.

In *Viacom v. YouTube*, 253 F.R.D. 256 (S.D.N.Y. 2008), the court denied a similar demand for database schema discovery. Viacom claimed it needed discovery of YouTube's advertising database schema to show what YouTube "could have or should have known about the extent to which their advertising revenues were associated with infringing content, and the extent to which Defendants had the ability to control, block or prevent advertising from being associated with infringing videos." *Id.* at 263. This request for discovery was denied because Viacom failed to establish an adequate need to outweigh the fact that the database schema provided a "commercially sensitive" "roadmap" of how YouTube ran its business. Allowing this discovery would have "permit[ted] others to profit without equivalent investment." *Id.* at 263-64. The same should apply here.[14]

It appears that what the Studios really want is more fodder to continue their relentless onslaught of highly burdensome, intrusive and unbounded discovery. Indeed, they admit that their motivation for seeking the database schema is to assist them in propounding additional discovery requests. Mot. at p. 15 ("The database schema are also reasonably necessary for plaintiffs to narrowly target any additional requests for data they may have....") Given the undisputed sensitivity of Hotfile's database structure and the Studios' failure to make a showing of "relevance" and "necessity," this discovery should be denied.

---

[14] The Court allowed narrow discovery only of Google Video's database schema because Google made "no assertion that it [was] confidential..." *Id.* at 264 (emph. added).

### III.   **CONCLUSION**

For the foregoing reasons, The Studios' motion to compel production of documents or
responses to interrogatories should be denied.


Dated:  August 26, 2011                                      Respectfully submitted,

s/ Janet T. Munn
Janet T. Munn, Fla. Bar No. 501281
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, FL 33134
Telephone:  305.476.7101
Telecopy:  305.476.7102
Email: jmunn@rascoklock.com


*s/ Anthony Schoenberg*
Roderick M. Thompson *(Admitted pro hac vice)*
rthompson@fbm.com
Andrew Leibnitz *(Admitted pro hac vice)*
aleibnitz@fbm.com
Anthony P. Schoenberg *(Admitted pro hac vice)*
tschoenberg@fbm.com
Deepak Gupta *(Admitted pro hac vice)*
dgupta@fbm.com
Janel Thamkul *(Admitted pro hac vice)*
jthamkul@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone:  415.954.4400
Telecopy:  415.954.4480

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2011, the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/Janet T. Munn
Janet T. Munn


Karen L. Stetson, Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305.416.6880 Fax: 305.416.6887

Steven B. Fabrizio (*Pro Hac Vice* )
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice* )
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice* )
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Phone: 202.639.6000 Fax: 202.639.6066

Daniel M. Mandil, Esq. Motion Picture
Association of America, Inc.
15301 Ventura Boulevard Building E
Sherman Oaks, CA
818-935-5812
Email: Daniel_Mandil@mpaa.org

Karen R. Thorland, Esq.
Senior Content Protection Counsel
Motion Picture Association of America, Inc.
15301 Ventura Boulevard Building E
Sherman Oaks, CA
818-935-5812
Email: Karen_Thorland@mpaa.org