# PUBLIC REDACTED VERSION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,.

  *Counterdefendant*.

_____/

**OPPOSITION OF DEFENDANTS HOTFILE CORPORATION
AND ANTON TITOV TO PLAINTIFF WARNER'S
MOTION TO "USE" TITOV EX. 27 IN ITS ENTIRETY
<u>AT TRIAL OR ON SUMMARY JUDGMENT</u>**

**FILED UNDER SEAL**                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

## I.   **INTRODUCTION**

Warner cannot properly use evidence obtained in violation of this Court's Orders, the Federal Rules, and the Florida Rules of Professional Conduct. Here, Warner examined Hotfile at deposition regarding a document which an Order of this Court required it to destroy. It then filed a motion regarding the document beyond the deadline ordered by the Court, and submitted the document under seal in defiance of another provision of the Court order. It did not adhere to the ethical obligation to return a document which Warner should have known was protected work-product, even though it knew that Hotfile asserted work-product protection over another e-mail between the same four individuals regarding the same attorney-directed investigation and sent only thirty-seven minutes later. Warner then argued in open court that "the circumstances surrounding the production make it legally [not] inadvertent," even though the Court had already explicitly ordered that "a party may not assert . . . [the] circumstances of the inadvertent production" as grounds for seeking the document. Any one of these transgressions should result in denial of Warner's current Motion.

Compounding the impropriety of its Motion, Warner relies on inapposite cases. It relies on eleven older cases deprived of any continuing precedential value by the September 2008 enactment of Federal Rule of Evidence 502 and three cases lacking discussion of any stipulated "clawback" provision such as the one at issue here. The only post-2008 case cited by Warner analyzing a clawback provision in a Protective Order found *no waiver* of any work-product protection – and thus supports Hotfile. Because Warner's Motion flouts so many mandatory legal and ethical obligations, and because it relies upon an apparent failure to consult current law, the Motion should be denied.

## II.   **FACTUAL BACKGROUND**

### A.   **Warner's Abuse Of Hotfile's Anti-Infringement Technology**

Hotfile launched its file-hosting service in the Spring of 2009. Using Hotfile, customers load content onto Hotfile's servers and store that information indefinitely in exchange for user fees.  **[REDACTED]**  Users may also share their content:  the most-downloaded files from Hotfile are "open source" software programs, which infringe no copyrights, as even Plaintiffs concede.  **[REDACTED]**

**[REDACTED]**

From the outset, Hotfile has complied with the Digital Millennium Copyright Act ("DMCA"), which shields internet service providers, from copyright liability if they (among other things) expeditiously disable or "take down" content accused of infringement. (Counterclaim ¶ 11; 17 U.S.C. § 512.)  As publicized on Hotfile's website by April 2009, Hotfile responds to notifications of alleged infringement sent to its e-mail box at abuse@hotfile.com by expeditiously taking down the accused content.  (Counterclaim ¶¶ 9-10.)

Hotfile went even further in combating infringement in August 2009 by establishing "special rightsholder accounts" ("SRAs").  (*Id.* ¶ 2.)  These accounts provide content owners such as Warner the unrestricted ability to unilaterally take down content from Hotfile's servers without any oversight whatsoever from Hotfile.  (*Id.* ¶¶ 12-13.)  For their part, content owners must simply verify under penalty of perjury when using the SRAs that they are the owners or authorized legal representatives of the owners of the copyrights asserted.  (*Id.* ¶ 15.)



REDACTED

### B.   Hotfile's Work-Product Investigation Into Warner's Abuse

After praising Hotfile's efforts to counteract copyright infringement for nearly two years (*Id.* ¶ 36), Plaintiffs initiated this lawsuit without warning on February 8, 2011.  (Complaint [Docket No. 1].)  Shortly after being engaged, Hotfile's trial counsel learned of Warner's REDACTED Accordingly, on March 2, 2011, Hotfile's counsel directed Hotfile to compile a list of Warner's "takedown" demands regarding content to which Warner had no apparent relationship.  (Declaration Of Roderick M. Thompson In Support Of Counterclaimant Hotfile Corporation's Opposition to Warner's Motion to Compel [Docket No. 206-1] ¶ 10 (hereinafter, "Thompson Opp. Decl."), attached as Ex. G).  Counsel directed this investigation in support of a claim against Warner for abuse of Hotfile's takedown procedures under the DMCA.  (*Id.;* 15 U.S.C. §512(f).)

FILED UNDER SEAL                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

REDACTED

C.    The "Clawback" Provision In The Parties' Stipulated Protective Order

On May 19, 2011, the parties agreed to a Stipulated Protective Order.  *See* Ex. D [Docket No. 68.]  the Order, entered by the Court, possessed the following "clawback" provision:

> **Inadvertent production of any document produced in response to discovery requests in this action by any party or non-party, that a party or non-party later claims should have been withheld on grounds of a privilege, including the attorney-**

REDACTED

**client privilege or work product doctrine (referred to hereinafter as an "Inadvertently Produced Privileged Document") will not be deemed to waive any privilege or work product protection.** A party or non-party may request the return of any document that it inadvertently produced by identifying the Inadvertently Produced Privileged Document and stating the basis for withholding such document from production. **If a party or non-party requests the return, pursuant to this paragraph, of such an Inadvertently Produced Privileged Document then in the custody of one or more parties, the possessing parties shall within five (5) court days destroy or return to the requesting party or non-party the Inadvertently Produced Privileged Document and all copies thereof and shall make reasonable efforts to expunge from any other document or material information solely derived from the Inadvertently Produced Privileged Document, consistent with Fed. R. Civ. P. 26(b)(5)(B).** However, the possessing parties may retain information sufficient to identify the Inadvertently Produced Privileged Document (*e.g.*, bates number, author(s), recipient(s), date) for purposes of a motion to compel production of the document. **A party may move the Court for an order compelling production of the document,** and may present the document to the Court under seal within five (5) court days of receiving a request to return the document, **but said party may not assert as a ground for the entering of such an order the fact or circumstances of the inadvertent production.**

*Id.* ¶ 20 (emphasis added).

### D.   Hotfile's Inadvertent Production Of The "WB Links" Document

Relying on the existence of this clawback provision, Hotfile produced 1,141,401 documents comprising approximately 2,868,354 pages in only a few months. (Thompson Opp. Decl. ¶ 2.) Sometimes its productions exceeded hundreds of thousands of pages; other times its productions constituted a handful of pages. In both cases, Hotfile employed electronic "keyword" searching to scour its production for documents prone to protection under the attorney-client privilege or work-product protection. For example, Hotfile searched documents for the names of its attorneys, paralegals, or law firms, screened documents for words such as "attorney-client," "privileged," or "work-product," and searched documents for common misspellings of the names set forth above. Hotfile also employed a manual privilege review using both outside counsel as well as contract counsel fluent in Bulgarian, the language used by

**FILED UNDER SEAL**                          CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

all six of the individuals supporting Hotfile's operations (including the three owners). This review took hundreds of hours of reviewers' time. However, counsel for Hotfile moved quickly to accommodate Plaintiffs' continuous demands for immediate production of documents. (*See id.*)

Despite Hotfile's efforts, it inadvertently produced its work-product compilation █ REDACTED █ REDACTED █ on June 17, 2011 and October 14, 2011. (*Id.* ¶ 4.) Hotfile, a small internet company operated from a European nation unaccustomed to U.S. litigation, did not uniformly mark work-product documents with a "work-product" legend. █ REDACTED █ REDACTED █ REDACTED █ *However, four other copies of the same document were caught in Hotfile's manual review and withheld on work-product grounds.*

E.   **Warner's Knowledge Of The Protected "Work Product" Status Of Hotfile's Compilation Of Warner Links In Early March 2011**



REDACTED

F.   **Warner's Exploitation Of Hotfile's Inadvertent Production**

For the next several months, Plaintiffs exploited Hotfile's undiscovered error in producing the "WB Links" document. (Plaintiffs' Reply In Support of Motion To Compel Production Of Titov Ex. 27 [Docket No. 211] (hereinafter, "Plaintiffs' MTC Reply") at 3-4 ("Warner's counsel had the document for more than five months before Hotfile's clawback emails, and had integrated the document into its own work product and deposition preparation.").) Warner's counsel ignored Florida Rule of Professional Conduct 4-4.4(b): "A

lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent ***shall promptly notify the sender***." (emphasis added). Warner exploited Hotfile's inadvertent production even though no reason existed for Hotfile to possess a list of Warner's wrongful takedowns other than to assist its counsel in litigation, and even though Warner had known since one month after the document's production that an e-mail between the same four Hotfile recipients on the same subject sent within thirty-seven minutes of the document at issue, had already been clawed back as privileged. (Thompson Obj. Decl. ¶ 2 & Ex. 1.)

### G.     Warner's Clawbacks In The Final Hours Before Its Deposition

On October 10, 2011, Warner clawed back a variety of documents less than two days before the deposition of Warner's corporate designee, attributing the lapse to the speed at which the parties were exchanging discovery in the case (*i.e.*, the same reasoning justifying Hotfile's clawback here). (*See* Ex. A.) Warner transmitted replacement documents only after Hotfile's counsel had departed by airplane for the deposition. (*Id.*) Nonetheless, Hotfile destroyed the documents and did not use them at the deposition. (*Id.*)

### H.     Warner's Failure To Honor Hotfile's Clawback Of The "WB Links" Document

On November 28, 2011, Hotfile notified Warner in writing that Hotfile had inadvertently produced the "WB Links" document, identified by Bates number HF02866338, despite the document's protection under the work-product doctrine. (Thompson Opp. Decl. ¶ 4 & Ex. 1.) Citing paragraph 20 of the Protective Order, Hotfile asked Warner to destroy or return *all copies of that document.* (*Id.*)

Despite this Court's unambiguous Order that "parties ***shall*** within five (5) court days destroy or return" clawed-back documents, Plaintiffs did not destroy the "WB Links" document. (Protective Order [Docket No. 68] ¶ 20.) Plaintiffs also ignored Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(5)(B) ("After being notified [of a clawback], a party . . . ***must not*** use or disclose the information until the claim is resolved") (emphasis added). Instead, on December 5, 2011 – one week after Hotfile's clawback notice – Warner's counsel marked the "WB Links" document as Exhibit 27 to the deposition of Hotfile's corporate designee, Anton Titov, and interrogated him about the document for more than thirty

**FILED UNDER SEAL**                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

questions.  (Declaration Of Steven B. Fabrizio In Support Of Plaintiffs' Motion To Compel

Production Of Titov Deposition Exhibit 27 [Docket No. 211], Ex. A at 168:1 - 173:2.)

### I.    Hotfile's Objections To Warner's Intrusion Into Hotfile's "Work Product" Investigation Of Warner's Takedowns In Early March 2011

Warner's interrogation on this subject began with Exhibit 26, an internal Hotfile e-mail

from March 7, 2011 entitled "File List."  Hotfile's counsel objected on work product grounds:

> **MR. THOMPSON:** Mr. Fabrizio, let me also just state while he's
> reading [the document] that we have become aware in the last
> week or two of some inadvertent produced documents . . . that
> contained work product information.  *And I'd ask – have asked for
> their return. . . .*
> **MR. FABRIZIO:**  Well, then, we can deal with that afterwards.
> **MR. THOMPSON:**  And I'd just like to – I'll allow this to
> continue, but *I want to reserve a potential objection to the extent
> this has any work product.*
> **MR. FABRIZIO:**  *Okay.*  Fair enough.  *You preserve the
> objection. . . .*
> **MR. THOMPSON:**  *But you agree there's no waiver by letting
> me –*
> **MR. FABRIZIO:**  *No, not by letting him answer . . . .*

(*Id.* at 164:7-24.)(emphasis added).  Hotfile's counsel repeated the objection regarding the entire

subject matter several questions later:

> **Q**:  Hotfile had identified what it believed to have been mistakes in
> the notices by Warner throughout February, March, April and even
> May of 2001; is that not correct?
> **MR. THOMPSON:**  *I'm going to object to the extent that it calls
> for work product information which commenced after the date of
> early March 2011.*

(*Id.* at 167:2-8.)  Despite these objections, Warner's counsel then marked the "WB Links"

document as Exhibit 27 and continued the examination.  (*Id.* at 168:1 - 173:2.)

Because the deposition occurred in Bulgaria – over 6,000 miles and ten time zones away

from the Hotfile attorney who clawed back Exhibit 27 from the United States – the attorney

defending the Titov deposition did not have a complete list of clawed-back documents at the

deposition.  (Thompson Opp. Decl. ¶ 8.)  However, counsel for Hotfile reasonably assumed that

Warner's counsel would not violate the Protective Order and attempt to use a clawed-back

document at the deposition.  (*Id.* ¶ 7.)

FILED UNDER SEAL                          CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

After the deposition adjourned for the day, counsel for Hotfile confirmed that Hotfile Exhibit 27 was protected work product. He immediately (that same evening) notified Warner's counsel and again requested the return of the document. (*Id.* at ¶ 10 & Ex. 2.) When the deposition resumed the next morning, he repeated the objection and again asked Warner to destroy all copies of the document in question. (*Id.* ¶ 11.)

### J.   Warner's Violations Of The Protective Order

Warner refused to destroy or return the document, but chose instead to commit further violations of the Protective Order. Ignoring the provision in this Court's Protective Order that "[a] party may move . . . for an order compelling production of the [clawed-back] document . . . within five (5) court days of receiving a request to return the document," Warner moved to compel production of the document on December 12, 2011 – fourteen days after the document had been recalled. [Docket No. 180.] Ignoring the Court's Order that "[a] party . . . may present the document to the Court under seal within five (5) court days of receiving a request to return the document," Warner submitted the document two weeks after receiving Hotfile's clawback notice. [Docket No. 181, Ex. C.] Ignoring the Court's statements that "[i]nadvertent production . . . will not be deemed to waive any privilege or work product protection" and that a "party may not assert as a ground for [compelling production] the fact or circumstances of the inadvertent production," Warner's motion nearly exclusively argued that Hotfile was careless. (Plaintiffs' MTC Reply [Docket No. 211] at 4-11 (contending that Hotfile made its production "without taking reasonable precautions" resulting in an "abdication of responsibility" and ensuing production of multiple privileged documents accompanying a "waiver of any claim of privilege").)

Without addressing Warner's violations of Paragraph 20 of the Court's Protective Order or Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure or Rule 4-4.4(b) of the Florida Rules of Professional Conduct, Magistrate Judge Turnoff entered an order on January 13, 2012 requiring Hotfile to produce the 32-page excerpt of the "WB Links" document used in Mr. Titov's deposition, but requiring the parties to raise any further use of the entire 297-page document with the Court as a motion *in limine*. Warner's counsel viewed this as exoneration, gloating to Hotfile: "you accused me of multiple violations of a protective order and my ethical obligations . . . The court did not even give them the time of day . . . . So you continue to include whatever you want in your motions. The court has seen through your nonsense." (Thompson

FILED UNDER SEAL                                   CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

Obj. Decl., Ex. 2 (emphasis added).)  Hotfile objected to Magistrate Judge Turnoff's ruling on
January 27, 2012.  [Docket No. 234.]

**K.   Warner's Reliance On The Clawback Provision Of The Protective Order
Only Days Ago For The Very Protection Which Warner Seeks To Deprive
To Hotfile Here**

On February 9, 2012 – only days ago – Hotfile notified Warner that Warner had failed to
redact privileged information from over a dozen documents, duplicating Warner's same error
first discussed by the parties four months previously on October 10, 2011.  (Ex. B.)  Rather than
claiming a privilege waiver based on Warner's "abdication of responsibility" and lack of
"reasonable precautions" in producing documents, Hotfile acted properly and permitted Warner
to claw back the documents to remedy identical errors repeated four months apart.  (Exs. A-B.)

**III.   ARGUMENT**

**A.   Warner Cannot Properly Use Evidence Obtained In Violation Of This
Court's Orders, Rules, And Ethical Obligations**

"[W]here attorneys or parties obtain evidence in violation of the court's rules or orders,
the court may exercise its power to enforce those rules and orders by excluding the evidence
wrongfully obtained." *United States v. Venske*, 296 F.3d 1284, 1291 (11th Cir. 2002).
Specifically, "courts have discretion to exclude evidence [resulting from] violation of a
discovery order." *Id.* (citation omitted).

Nonetheless, in filing this Motion, Warner does not and cannot deny its violations of the
Protective Order, the Federal Rules, and the Florida Rules of Professional Conduct.  Instead, it
pointedly ignores them and leaps instead to an analysis of whether Hotfile's document review
practices justify waiver of any work-product protection over the "WB Links" document.[2]  While

---

[2] Notably, Warner nowhere argues that Hotfile's document was *not* protected work product;
Warner only argues that the protection was waived. Mot. at 7-12. The parties do not dispute that
non-lawyers may create protected work product at the direction of counsel. *Every Penny Counts,
Inc. v. American Express Co.*, No. 07-CV-1255-T-26MAP, 2008 WL 2074407, at *1 (M.D. Fla.
May 15, 2008).  Indeed, Warner's counsel has explicitly argued that non-lawyers may create
protected work product regarding Hotfile's counterclaim.  [REDACTED]          REDACTED
REDACTED

FILED UNDER SEAL                           CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

Hotfile has exercised due care, this Court should not even reach that issue: Warner cannot properly seek admission of any evidence obtained in repeated abuse of so many orders and rules.

**1.    Warner Violated The Protective Order By Refusing To Destroy Or Return The "WB Links" Document Within Five Days Of Receiving Hotfile's Clawback E-Mail**

There is no dispute that Hotfile clawed back the "WB Links" document on November 28, 2011. There is no dispute that Paragraph 20 of the Protective Order required Warner to destroy or return all copies of that document within five court days. *See* Stipulated Protective Order [Docket No. 68] ¶ 20.[3] There is no dispute that Warner refused to destroy the document and instead used it as a deposition exhibit seven days later on December 5, 2011. Thus, Warner violated the Protective Order in eliciting testimony at length regarding a clawed-back document which Warner remained under an Order of this Court to destroy. This document and all related testimony should be excluded from evidence. *Venske*, 296 F.3d at 1291.

Warner attempts to blame Hotfile for Warner's wrongdoing, asserting that Hotfile did not reasonably identify its clawed-back documents because the documents were "identified only by a string of Bates numbers." *See* Plaintiffs' MTC Reply [Docket No. 211] at 3. However, Bates numbers exist for the sole reason of identifying documents. *E.g.*, *Sussman v. U.S. Marshals Service*, 657 F.Supp.2d 25, 26 (D.D.C. 2009). Warner's counsel has itself used Bates numbers – in the absence of any additional information – to identify documents, both in correspondence and in formally responding to interrogatories. *See* Ex. C. Indeed, Warner has specifically asked

---

[3] In a filing three days ago, Warner relies for the first time on an informal courtesy that Hotfile provided at Warner's request – an oral extension of the five-day deadline to destroy the "WB Links" document. *See* Warner's Responses To Hotfile's Objections To Magistrate Judge's Order Regarding Warner's Motion To Compel Titov Deposition Exhibit 27 (hereinafter, "Warner's Obj. Resp.") at 11-12. Setting aside the fact that the parties may not by agreement alter court-ordered deadlines absent a motion, Warner cannot argue that an extension agreed to by counsel permitted Warner to freely use the document in the meantime. In fact, the declaration of Warner's counsel makes clear that Warner knew about the "WB Links" document prior to the depositions in Bulgaria and knew that Warner remained obliged by Court Order to destroy the document prior to any further use. Declaration of Duane C. Pozza In Support Of Warner's Responses To Hotfile's Objections ¶ 5. Whether Warner deleted the "WB Links" document by December 5, 2011 or December 12, 2011, it indisputably remained under an Order of this Court *not* to use the "WB Links" document in deposition on December 5, 2011 – yet this is exactly what Warner did. Protective Order ¶ 20; *see* Declaration Of Tony Schoenberg (Ex. F) (making clear that, in permitting Warner additional time to destroy the "WB Links" document, Hotfile did not agree to allow Warner to use the document or any work-product document).

**FILED UNDER SEAL**                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

Hotfile to identify documents by Bates number when discussing documents. *Id.* Warner cannot credibly suggest that Bates numbers do not sufficiently identify its clawed-back document.

Warner's counsel then argues that he was too busy to return or delete Hotfile's clawed-back document. *See* Plaintiffs' MTC Reply at 3 ("The days between November 28 and December 3 . . . were some of the busiest in this litigation."). However, it is not particularly time-consuming or arduous to delete a document. Moreover, it is difficult to believe that one of the world's largest entertainment corporations could not muster the support necessary to accomplish the task, even if two of its many lawyers were "readying to board flights" to travel for Hotfile's deposition. *Id.* In any event, Hotfile remains unaware of any authority for the proposition that parties may ignore Orders of this Court because they are too busy to comply.

Warner's counsel then asserts that because he chose to embed the privileged document in his work product that he "could not locate copies of the document simply by going to a document production file and searching for Bates numbers." Plaintiffs' MTC Reply at 4. However, Warner's counsel produced a copy of a clawed-back document at deposition, recited its production number before marking it as an exhibit, and asked Hotfile questions about it. It is fair to conclude then that, when he violated the Protective Order, the clawed-back document was top-of-mind. In any event, the Protective Order does not excuse non-compliance if inconvenient or unintentional. Warner remained under an Order of this Court ***not*** to use at deposition the very document it used at length. On its own, Warner's violation of the Protective Order's "return or destroy" deadline justifies denial of this Motion.

### 2.   Warner Violated The Protective Order And Rule 26(b)(6)(B) By Using Exhibit 27 After Receiving The Clawback E-Mail

Federal Rule of Civil Procedure 26(b)(5)(B) – explicitly incorporated into Paragraph 20 of the Protective Order – states that, upon receiving notice of an inadvertently-produced document, a party *"must not use or disclose the information until the claim is resolved."* Fed. R. Civ. Pr. 26(b)(5)(B) (emphasis added). Warner indisputably used Exhibit 27 at Hotfile's deposition. The claim regarding Hotfile's clawback remains pending to this day. Warner cannot justifiably perpetuate evidence in violation of the Court's Order and the Federal Rules and then seek to benefit from its wrongdoing. Again – independent of any other transgression catalogued

**FILED UNDER SEAL**                                 CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

herein – Warner's violation of the "status quo" provision of the Protective Order and Rule 26(b)(6)(B) justifies denial of this Motion.[4]

### 3. Warner Violated The Protective Order By Filing Its Motion To Compel And Submitting The Document Under Seal More Than Five Days After The Clawback Notice

The Protective Order explicitly states that a party seeking to compel production of a clawed-back document must do so within five court days of notification, and may only submit the document under seal within five court days of the clawback. *See* Protective Order ¶ 20 ("A party may move for an order compelling the production of the document, and may present the document to the Court under seal within five (5) court days of receiving a request to return the document"). Here, there is no dispute that Hotfile clawed back the document on November 28, 2011 – fourteen days before Warner filed its motion to compel and submitted the document under seal to the Court on December 12, 2011.

The requirement that parties bring motions over clawed-back documents within five court days exists to prevent parties from compounding harm caused by discovery disputes. For example, absent Warner's violations of the Protective Order, there would be no testimony regarding Exhibit 27 to dispute. The provision also ensures timely redress of disputes. *See* Fed. R. Civ. P. 1 (Rules exist "to secure the just, speedy, and inexpensive determination of every action and proceeding"). Here, Warner should not benefit from its disdain for this Court's deadlines. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("[an order setting deadlines] is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.").

This untimeliness alone suffices to defeat Warner's Motion. In *Bro-Tech Corporation v. Thermax, Inc.*, No. 05-CV-2330, 2008 WL 5210346 at *1-2 (E.D. Pa. Dec. 11, 2008), the parties



REDACTED

**FILED UNDER SEAL**                                      CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

agreed to a five-day deadline for filing motions objecting to clawback requests. Finding that "the terms of the Clawback Agreement were negotiated by the parties, incorporated by them into a formal Stipulation, and approved by a subsequent Order of the Court," the Court denied Plaintiffs' untimely motion to use the contested document based on tardiness alone.

> [T]he Court considers that the parties will be bound by the rules and protocols they . . . devised, including the terms of the Clawback Agreement. In the instant matter, such terms are dispositive. Plaintiffs had an opportunity under the Clawback Agreement to object to Defendants' conduct with respect to the Document, but that opportunity has now passed, and Plaintiffs' Motion must be denied as untimely.

*Id.* at *2. No credible distinction exists between *Bro-Tech* and the instant case.

Warner argues that the Protective Order only requires submission of the disputed document under seal within five days of clawback, and that a motion contesting that clawback may be made anytime. Plaintiffs' MTC Reply at 1-2. This argument scorns logic. No credible reason exists why a party would or could submit a document under seal to the Court unaccompanied by a motion or other paper explaining on what authority the document was being presented and then move to compel its production weeks or months later when it felt subjectively and unilaterally inclined to proceed, notwithstanding any intervening discovery that might have been impacted by the motion.

Even torturing the Protective Order as it does, Warner cannot find any credible excuse for its belated filing of Exhibit 27 under seal, since even under Warner's interpretation the Protective Order required submission of the document within five court days. In their zeal, Warner cannot even forthrightly confess this violation, only conceding that Exhibit 27 "*arguably* should not have been provided to Your Honor." *Id.* at 2 (emphasis added). Instead, Warner argues that it *could have* submitted in timely fashion a *different copy* of the "WB Links" document under seal, since Hotfile inadvertently produced the same document under two different Bates numbers. *See* Docket No. 206-2 (recalling "all copies" of Hotfile document HF02866338 – *i.e.*, Exhibit 27 – on November 28, 2011); Docket No. 206-3 (explicitly recalling identical document HF00036777 on December 3, 2011).

First of all, whether Warner *could* have submitted HF00036777 instead of HF02866338 is immaterial: Warner used HF02866338 at the Titov deposition and submitted the same to the

FILED UNDER SEAL                          CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

Court. Counterfactual hypotheticals accomplish nothing. In any event, Hotfile's November 28 e-mail explicitly clawed back *"all copies"* of the "WB Links" document, of which HF02866338 and HF00036777 are identical copies. As such, both were recalled on November 28, 2011, making the deadline for submitting either copy to the Court the same for either copy.[5]

In any event, and most inexplicably, *Warner counts days incorrectly.* Even if HF00036777 was recalled on December 3, 2011, and even if Warner had submitted HF00036777 instead of HF02866338 to the Court on December 12, 2011, such a submission still would have been nine days after Hotfile's clawback rather than the requisite five court days – and thus would have been untimely under the Protective Order. Protective Order ¶ 20. Thus Warner's attempt to claim that "there is no question" that it could have submitted HF00036777 to the Court on December 12 further demonstrates Warner's casual relationship with the facts. Warner's Motion should be rejected on untimeliness grounds alone.

### 4.   Warner Committed An Ethical Violation In Failing To Return The Document

Florida Rule of Professional Conduct 4-4.4(b) provides that "[a] lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently [produced] shall promptly notify the sender." Fla. R. of Prof. Conduct 4-4.4(b). Here, Warner admits to using the "WB Links" document for five months after production of the document, even though:                              REDACTED

REDACTED

---

[5] In its filing three days ago, Warner argues that it could properly keep a copy of the "WB Links" document (HF00036777) until five days after clawback of the document with that specific Bates number, even if Hotfile previously clawed back the identical document (HF02866338). Warner's Obj. Resp. at 14 n.11. Warner ignores Rule 26(b)(5)(B), explicitly incorporated into the Court's Protective Order. *See* Protective Order ¶ 20; Fed. R. Civ. P. 26(b)(5)(B) ("After being notified, a party must promptly return, sequester, or destroy *the specified information and any copies it has"*) (emphasis added). Anticipating that parties like Warner might try to elevate form (*i.e.*, Bates numbers) over substance (*i.e.*, the content of protected information), the provision requires receiving parties to destroy all copies of protected information, regardless of Bates number.

FILED UNDER SEAL   CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF



mandatory ethical obligations, Warner sought to exploit its smaller adversary's inadvertence by embedding Hotfile's work product in Warner's trial preparation materials.[7]  The Court should not reward counsel's ethical malfeasance.  Again, independent of any other violation, this wrongdoing alone warrants denial of the instant Motion.[8]

---



[7] Warner asserts that it had no reason to know of the protected nature of the "WB Links" document, given counsel's belief that Hotfile might have intended to produce Exhibit 27 on June 17, 2011 to support a motion to compel filed against Warner five months later on November 16, 2011.  Mot. at 3.  This argument is facially implausible.  In any event, no party disputes (or has ever disputed) that nonlawyers may create work-product at the direction of counsel.  *See supra* at 10 n.2.  Hotfile argued previously that Warner may not conceal *facts* under the guise of work product.  *See* Hotfile's Motion To Compel Discovery From Warner [Docket No. 164] at 5-7.  Specifically, Hotfile argued that Warner could not refuse to produce data showing its wrongful takedowns on Hotfile's website based simply on the fact that its litigation counsel also requested such information.  *Id.*  This does not credibly suggest that Hotfile intentionally produced a copy of its own work product in June.  In fact, Warner's argument establishes that, at the time of Warner's deposition on October 12th and four months into the period of Warner's "embedding" of Exhibit 27 into its trial plan, Warner knew that Hotfile's investigation of its counterclaim in March represented protected work product.

FILED UNDER SEAL                         CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

     **5.**   **Warner Violates The Protective Order By Relying On The Circumstances Of Hotfile's Production As The Basis For This Motion**

The Protective Order states that a party seeking to compel production of a clawed-back document "may not assert as a ground for the entering of [an order compelling production] the fact or circumstances of the inadvertent production." Protective Order ¶ 20. "Under the prior case law [before the promulgation of Federal Rule of Evidence 502 in 2008], reaching the conclusion that a document had been 'inadvertently produced' required analysis of the *circumstances* surrounding the production, including the *number of documents produced* in discovery and *the care with which the pre-production document review was performed*." *Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1036-1037 (N.D. Ill. 2009) (emphasis added). However, "a clawback arrangement involves the return of documents *without waiver irrespective of the care taken by the disclosing party*." *U.S. v. Sensient Colors, Inc.*, 2009 WL 2905474, at *2 n.6 (D.N.J. Sept. 9, 2009) (emphasis added). Thus – setting aside the irrelevance of Hotfile's level of care to instant Motion under Federal Rule of Evidence 502(d) and (e) – the Protective Order expressly *forbids* Warner from asserting that Hotfile lacked due care in producing the "WB Links" document. Yet this is all Warner does.

Warner makes no argument in its Motion *other than* arguments based on Hotfile's supposed carelessness. *See* Mot. at 8 (Hotfile "produced documents without taking reasonable precautions" resulting in an "abdication of responsibility"); *id.* at 7 ("Hotfile provided absolutely no information as to what specific efforts were taken to prevent disclosure"); *id.* at 9-10 (arguing that the Court should ignore the numerical reasonableness of clawing back sixty-four documents out of a production of 1,141,401 documents); *id.* (arguing that producing the "WB Links" document on two occasions five months apart demonstrated a lack of "reasonable precautions," even though Warner itself committed identical errors resulting in clawback demands four months apart); *id.* at 11 (arguing that another episode of twice producing a privileged communication demonstrated Hotfile's "lack of appropriate care"). Warner even admits its transgression, stating as follows at the hearing on its motion to compel production of Exhibit 27: "It is not the fact that they produced [the document] that makes it not inadvertent. It is the fact that all of the

REDACTED

*circumstances* surrounding the production that make it legally [not] inadvertent." Mot., Ex. A at 16:15-18 (emphasis added). Counsel did not even appear aware that he was confessing to violation of this Court's Order. Pursuant to stipulation, this Court forbade arguments of waiver based on the circumstances of Hotfile's production. This reason alone defeats Warner's instant Motion.[9]

### B.   In Attempting To Prove Carelessness Rather Than Intentionality In Hotfile's Disclosure, Warner Spends All Of Its Twelve-Page Motion Chasing An Irrelevant Inquiry

Warner's Motion fails to cite even one case in its favor analyzing a clawback provision. Mot. at 6-12. By relying on outdated and irrelevant cases, Warner fundamentally misapprehends the applicable legal inquiry in considering whether a party may properly exploit its opponent's production of a work-product document. *Id.*

Rule 502 of the Federal Rules of Evidence became effective on September 19, 2008. Fed. R. Evid. 502 (Adv. Comm. Notes). Designed to address burgeoning costs of privilege and work-product review in cases involving electronic discovery, the Rule "codifie[d] the well-established proposition" that parties can "enter into so-called 'clawback agreements'" permitting the parties to recall protected documents produced in the absence of any privilege review whatsoever. Fed. R. Evid. 502(d)-(e) (Adv. Comm. Notes). The Rule ensured that courts would enforce these agreements in the face of accusations of waiver "irrespective of the care taken by the disclosing party." *Rajala v. McGuire Woods*, 2010 WL 2949582 at *3 (D. Kansas July 22, 2010); *see Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003); *see U.S. v. Sensient Colors, Inc.*, 2009 WL 2905474, at *2 n.6 (D.N.J. Sept. 9, 2009) ("Clawback agreements essentially [permit parties to] 'undo' a document production" – *i.e.*, to return to the *status quo ante* as if the production never happened). In most circumstances – *e.g.*, absent an *intentional* waiver in support of an "advice of counsel" defense – "a party who receives

---

[9] Despite the unambiguous prohibition against mentioning "the fact or circumstances of the inadvertent production" in any motion, Warner argues that it may argue the circumstances of Hotfile's production here because of the Protective Order's ensuing statement that "[n]othing shall preclude a party from arguing that the production of the allegedly inadvertently produced document was not inadvertent." [Docket No. 211 at 2.] Warner would have one sentence eviscerate the other. In fact, the Protective Order permits Warner to argue that Hotfile intentionally disclosed a document – but that does not mean that Warner may attack Hotfile based on the circumstances resulting in Hotfile's production.

FILED UNDER SEAL                            CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

information under such an arrangement cannot assert [waiver]." Fed. R. Civ. P. 26(b)(5)(B) (Adv. Comm. Notes 2006); Fed. R. Evid. 502 (Adv. Comm. Notes); *Sensient Colors*, 2009 WL 2905474 at *2 n.6; *see Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1036-1037 (N.D. Ill. 2009) ("Rule 502 contrasts a waiver that is *intentional* with a disclosure that is *inadvertent*."); *Thorncreek Apartments III, LLC v. Park Forest*, 2011 WL 3489828, at * 5 (N.D. Ill. Aug. 9, 2011) ("[When] determining whether a document was inadvertently produced…courts look[ed] at the circumstances surrounding the disclosure. However, [recent] cases…have asked whether the party *intended* a privileged or work-product related document to be produced or whether the production was a mistake."). Thus, in cases involving clawback provisions, Courts no longer analyze waiver of inadvertently-produced documents based on considerations such as the time devoted by a party to privilege review, the measures taken to prevent inadvertent disclosure, the attorney and paralegal resources devoted to review, and the reasonableness of precautions employed, but instead allow the explicit terms of any clawback provision to govern. *See Rally Mfg., Inc. v. Federal-Mogul Corp.*, No. 10-23791-CIV, 2011 WL 2938270, at *4 (S.D. Fla. July 21, 2011) (finding, in the presence of a clawback provision, that "[t]he Protective Order is controlling over the waiver issue" and declining to further explore the circumstances of defendant's production).

Here, as if failing to simply look up the current law, Warner relies on eleven cases predating Rule 502 having no possible relevance and three cases after 2008 analyzing no clawback provision. Indeed, in the one case cited by Warner which applies a clawback provision, the court ruled ***against*** waiver, supporting Hotfile here. *Board of Trustees v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 851-52 (E.D. Mich. 2010).[10]

Had Warner properly cited the applicable legal standard, it would have known that no evidence exists that Hotfile intentionally produced the "WB Links" document – especially given that (1) Hotfile withheld four identical copies of the document based on work-product protection, and ███████████████ REDACTED ███████████████

███████████████ REDACTED ███████████████

---

[10] In *Palladium*, the Protective Order did ***not*** forbid parties from asserting waiver based on the "circumstances" of production, necessitating a more detailed review of defendant's practices. *Id.* at 849-51. Nonetheless, the Court still found no waiver.

FILED UNDER SEAL                           CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

REDACTED        Because Warner makes no effort to demonstrate any intentional
production of the document, Warner's Motion should be denied.

### C.    Hotfile Properly Objected To Warner's Improper Use Of The Document At Deposition

Without citing any authority, Warner argues that Hotfile waived any work-product protection for the "WB Links" document at the deposition of Anton Titov by only objecting before and after Warner's questioning, and not during the questioning. Mot. at 11-12. Even setting aside the fact that Hotfile labored under no obligation to object to an examination which already violated this Court's Orders, Warner is mistaken.

A party does not waive work-product protection if, upon learning of the protected nature of document after deposition questioning, the party promptly objects. *See Datel Holdings Ltd. V. Microsoft Corp.*, 2011 WL 866993, at *5 (N.D.Cal. March 11, 2011) (party did not waive protection by objecting to questioning hours after examination upon discovering protected status of documents); *see also Rally Mfg., Inc. v. Federal-Mogul Corp.*, No. 10-23791-CIV, 2011 WL 2938270, at *4 (S.D. Fla. July 21, 2011) ("a thirteen-day period between [discovery of inadvertent production] and [ensuing clawback request] is insufficient to constitute a waiver of the privilege in the modern legal world."). Here, Hotfile's counsel objected repeatedly to questions on Hotfile's work-product investigation "commenced [in] early March," after which counsel immediately repeated the objection hours later upon confirming the work-product status of Exhibit 27. He then repeated and formalized the objection immediately when the deposition resumed the next morning. Nothing more was required to preserve Hotfile's objection.

## IV.   CONCLUSION

For the foregoing reasons, Warner's Motion should be denied and Warner should be required to return any and all copies of WB Links to counsel for Hotfile and not be permitted to make *any* use of this document in *any* manner, including utilizing it in any court papers, legal argument or submitting or relying on it as evidence in the case.

FILED UNDER SEAL                          CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DATED: February 14, 2012                 Respectfully submitted,

Janet T. Munn, Esq. Fla. Bar No. 501281
Email: jmunn@rascoklock.com
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102

And

Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email: rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email: aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email: tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email: dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email: jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

And

Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone: 617.928.1800
Telecopy: 617.928.1802

*Counsel for Defendants Hotfile Corporation
and Anton Titov*

**FILED UNDER SEAL**                     CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2012, the foregoing Hotfile's Objections to
Magistrate Judge's Order Regarding Plaintiffs' Motion to Compel Titov Deposition Exhibit 27,
was filed conventionally under seal and served on all counsel of record identified below via e-
mail and by First Class U.S. Mail:

Karen L. Stetson, Esq., Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Telephone: 818.935.5812

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

By: _____
Janet T. Munn

4830-4493-9790, v. 1