UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

**WARNER'S RESPONSES TO HOTFILE'S OBJECTIONS TO MAGISTRATE JUDGE'S
ORDER REGARDING WARNER'S MOTION TO COMPEL TITOV DEPOSITION
EXHIBIT 27**

**PUBLIC REDACTED VERSION**

On January 13, 2012, Magistrate Judge Turnoff granted in part and deferred in part Warner's Motion to Compel Titov Exhibit 27, a spreadsheet produced by Hotfile (twice) and used without objection as a deposition exhibit during Anton Titov's deposition in early December, which Hotfile sought to claw back.[1]  In its Objections to Magistrate Judge Turnoff's Order, Hotfile fails to show that Magistrate Judge Turnoff's Order was clearly erroneous. Hotfile's objections to the Order should be overruled:

**First,** Hotfile's Objections to the Order are moot because Hotfile's conduct since the Order constitutes a complete (and independent) waiver of any work product claim.  Hotfile failed to seek a stay of Magistrate Judge Turnoff's Order, failed to take any steps to prevent yet another disclosure of the exhibit in question to Warner by means of the official deposition transcript, and failed to file objections to the Magistrate Judge's order (or even request expedited briefing) until so late that summary judgment motions on the Counterclaim will have already been filed by the time Hotfile's objections are fully briefed, much less decided by the Court.  When it comes to Titov Ex. 27, there is an irreconcilable inconsistency between Hotfile's words and its actions.  As a result, Hotfile has now allowed Warner (and the other plaintiffs) to be in possession of Titov Exhibit 27 without any limitations on its use for several weeks, thus again destroying any remaining claim of work product protection.

**Second**, as Magistrate Judge Turnoff observed, Hotfile waived any work product protection over Titov Exhibit 27 by failing to object to the use of the spreadsheet as a deposition exhibit.

**Third**, as an alternative basis for sustaining Magistrate Judge Turnoff's Order, Hotfile failed to carry its burden of proving that its production of Titov Exhibit 27 – on not one but two occasions – was inadvertent.  Hotfile produced the 297-page document twice; its purported clawback came nearly five months after its first production, and after Warner's counsel had already integrated information contained in the spreadsheet into its case strategy and trial preparation, and Hotfile's second production (of a 297-page document) came in a production of

---

[1] Warner has separately filed a motion to permit the use of the entire spreadsheet in connection with the upcoming motions for summary judgment.  *See* Warner's Motion and Memorandum of Law to Permit Use at Trial or Summary Judgment of Titov Ex. 27 in its Entirety, filed on January 31, 2012 and docketed on February 1, 2012 (hereinafter, "Warner's Motion to Use Titov Ex. 27").

only 83 documents, 10 of which Hotfile has clawed back.  Hotfile cannot belatedly claw the document back under these circumstances.

Hotfile barely even pretends that its objections engage the merits of the dispute.  Lacking convincing responses to Magistrate Judge Turnoff's Order, Hotfile instead spends its entire 20-page brief leveling misguided accusations of misconduct against Warner's counsel.  Those accusations – which were already considered, and rejected, by Magistrate Judge Turnoff – appear to be the primary purpose behind Hotfile's filing of the instant Objections.  The Magistrate Judge's refusal to credit those accusations was not clearly erroneous:

- Hotfile unreasonably used the clawback procedure in this case by purporting to claw back sixty-four documents *en masse*, without any identification of the documents beyond strings of Bates numbers, and in the midst of the busiest period in this case, while the parties were about to embark on a schedule of taking and defending 23 depositions in 15 business days.  Indeed, Hotfile's December 3, 2011, clawback email arrived on a Saturday – before Monday depositions in Bulgaria – as Warner/plaintiffs' lawyers were in transit to Bulgaria or readying to board flights.  Hotfile's use of mass clawbacks to sandbag Plaintiffs' deposition preparation – if not deliberate – was patently unreasonable.  Given the integration of these documents into Warner's work product over the course of months, and the timing and infirmities of Hotfile's purported clawback emails, no one could have fully purged the volume of clawed-back documents immediately, or otherwise complied better than Warner or its counsel.

- Hotfile misrepresents the deadline for Plaintiffs to destroy Hotfile's clawed-back documents in two critical respects.  First, Hotfile fails to inform the Court that the deadline to implement the clawbacks had been extended by agreement of the parties.  And second, Hotfile repeatedly mischaracterizes the Protective Order (Docket No. 68) by counting the number of "days," rather than "court days," which is expressly how deadlines are computed under the protective order.  Properly calculated, Warner's destruction of the clawed-back documents was timely.

- The Protective Order authorized Warner to bring its motion to compel on December 12, 2011, as well as to argue within that motion that Hotfile's production of the spreadsheet had not been inadvertent.  Hotfile's arguments to the contrary rest on selective and incorrect characterizations of the Order – and again compute time incorrectly.

- Hotfile's untimely new argument, that Warner should have known that Hotfile would later claim work product over Titov Exhibit 27, approaches (and some would say exceeds) the limits of responsible advocacy.  Hotfile took the position earlier in this litigation that ██████████████████████████████ were **not** privileged. Hotfile even brought a motion to compel against Warner on that basis.  *See* Motion and Memorandum of Law of Defendant and Counterclaimant Hotfile Corporation to Compel Discovery From Plaintiff and Counter-Defendant Warner Bros. Entertainment Inc. of Warner's Takedown Investigations, Docket No. 164 at 5-7.  And even beyond the unreasonableness of expecting Warner's counsel to anticipate Hotfile's future change in legal position, the document does not appear on its face to be work product. ████████ ███████████████████████████████████████████████ ████████████████████████████████████████ It is a little more than disingenuous for Hotfile to argue to Magistrate Judge Turnoff that its own lead counsel should be excused for not objecting to the use of Titov Ex. 27 at the deposition because he did not recognize the document to be work product, and then to argue here that Warner's counsel should be sanctioned for taking the document at face value.

At bottom, Hotfile waived any claim of work product protection, and Warner complied with both the Protective Order and its ethical obligations.  *Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir. 1984) ("reasonable diligence to comply with a court order" is what is called for). In light of the unreasonableness of Hotfile's notices, Magistrate Judge Turnoff found nothing improper about Warner's use of Titov Ex. 27 at the Hotfile deposition – which, as discussed below, was done without objection from Hotfile's lead counsel.  And Warner's motion granted in part by Magistrate Judge Turnoff was both timely and in compliance with the Protective Order.

## BACKGROUND

Warner has previously explained the relevant background in its Motion to authorize use of the document in its entirety at summary judgment or at trial.  *See* Warner's Motion to Use Titov Ex. 27.  For the Court's benefit, Warner repeats the same discussion here.

On two separate occasions in discovery four months apart (June 17, 2011, then again on October 14, 2011), Hotfile produced in discovery ████████████████████████████ ████████████████  *See* Declaration of Steven B. Fabrizio in Support of Warner's Motion to Compel the Production of Titov Deposition Exhibit 27 ("Fabrizio Decl."), Docket No. 211-1,

¶ 3.



[REDACTED] [3] [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]   Warner also integrated the document into its deposition strategy and preparation.  *See* Fabrizio Decl., Docket No. 211-1, ¶ 3.

Titov's deposition took place in Sofia, Bulgaria the first week of December 2011.  The days between November 28 and December 3, 2011 were some of the busiest in this litigation. They were the last days before the parties embarked on a schedule of 23 depositions in 15 business days.  In the week before Titov's deposition, Hotfile deluged Plaintiffs with mass clawbacks – including in an email sent while Warner's counsel was about to board a plane to Bulgaria – clawing back sixty-four documents by merely listing strings of Bates numbers without any descriptions of the purportedly clawed-back documents.  *See* Fabrizio Decl., Docket No. 211-1, ¶ 8.  As Magistrate Judge Turnoff made clear, attempting to identify and destroy clawed back documents under those circumstances is exceptionally challenging.  *See* Declaration

---

[3] *See* Answer and Defenses of Warner Bros. Entertainment, Inc. to Hotfile's Second Amended Counterclaim, Docket No. 163 at 8-9 (emphasis added):

> 3. Hotfile's Counterclaim is barred in whole or in part by the doctrine of unclean hands. Upon information and belief, **the substantial majority of the files that Hotfile claims Warner wrongfully took down were in fact infringing and were not authorized by the copyright owners to be distributed through or hosted on Hotfile.**  Any "harm" Hotfile suffered from the removal of those files is limited to Hotfile's losing the ability to profit from the infringement of the works of those other copyright owners. Because of unclean hands, Hotfile's Counterclaim is barred.

> [. . .]

> 5. Hotfile's Counterclaim is barred in whole or in part by the doctrines of laches and estoppel. Upon information and belief, **Hotfile knew of the occasional mistaken takedown requested by Warner and never informed Warner, at a time when Warner could have used that information to prevent future errors of that kind and otherwise continued improving the accuracy and reliability of its process for issuing notifications requesting the removal of infringing files.  Instead, Hotfile allowed such errors to continue in order to have something to sue Warner over and with which to embarrass Warner as a response to Warner's copyright infringement claims against Hotfile.**  Because of laches and estoppel, Hotfile's Counterclaim is barred.

of Duane C. Pozza in Support of Warner's Responses to Hotfile's Objections to Magistrate Judge's Order Regarding Warner's Motion to Compel Titov Deposition Exhibit 27 ("Pozza Decl."), Ex. C, Excerpts from the Transcript of the January 13, 2012 Hearing before Magistrate Turnoff ("1/13/12 Tr.") at 29:16-22 (noting that "[t]he fact is this is a huge complicated case," that the clawed-back document "has been out there for [Plaintiffs'] paralegals and associates and everybody else, the investigators to deal with" and that "[i]t would probably be difficult, if not impossible to find out exactly what use it has been put to . . . .").

On the first day of Titov's deposition – for which Warner's counsel needed to physically carry his deposition exhibits to Bulgaria due to scheduling constraints and the absence of overnight shipping options – Warner used as a deposition exhibit the first 32 pages of the document.  Defendants' lead counsel was given a copy of the document and did not object to the questioning or the introduction of the document on the basis of work product.  *See* Fabrizio Decl., Docket No. 211-1, ¶¶ 6-10 & Ex. A.  Only after the deposition concluded for the day did Hotfile's counsel claim that the spreadsheet was work product and insist that it be clawed back.

On December 12, 2011, Warner filed a motion to compel production of the clawed-back document on the basis that it was not properly work product, and that any work product protection had been waived, first through Defendants' production of the document (which was not inadvertent) and then again by Defendants' failure to object to its use at the deposition.  *See* Docket No. 180.  Not until the evening of December 23, 2011 – nearly three weeks after the deposition and two weeks after Warner's motion to compel – did Hotfile's counsel raise that Titov Ex. 27 had been part of Hotfile's mass clawbacks in the days leading up to the deposition. *See* Declaration of Roderick Thompson in Support of Counterclaimant Hotfile Corp.'s Opposition to Warner's Motion to Compel the Production of Titov Deposition Ex. 27 ("Thompson Decl."), Docket No. 206-1 at Ex. 4.

Magistrate Judge Turnoff, after considering extensive briefing and argument at a hearing on January 13, 2012, granted Warner's motion in part and deferred it in part.  Noting Warner's argument that the production of the full document had not been inadvertent, the "time lag," and the "use of the documents," 1/13/12 Tr. at 21:11-12, he observed that the Court "would be

justified and I think a higher and wiser authority would probably agree that [Warner's] motion should be granted in toto . . . ." *Id.* at 31:9-12.[4]

Ultimately, however, the Magistrate Judge's ruling was based on waiver at the deposition, noting that "the bottom line is the cat is already out of the bag already . . . ." *Id.* at 31:18-19.  Observing that the 32-page excerpt of the document physically marked as an exhibit at Titov's deposition was "part of the deposition that was made a part of the record in this case," *id.* at 28:10-11, he permitted Warner to make use of the excerpt.  *Id.* at 32:11-16 (agreeing that Warner "may use the deposition exhibit and the deposition testimony").  He then ordered Hotfile to file a copy of the entire 297-page document with the Court, ruling that the proper procedure to admit the full document would be a motion addressed to the Court.  *Id.* at 32:13-16 (agreeing that "if [Warner] want[s] to use the full document, that document is going to be under seal"); *see also* Omnibus Order, Docket No. 227 at 2 ("any party seeking to use such document shall file the appropriate pleading, e.g. a motion in limine for use at trial").  Warner filed such a motion on January 31, 2012.  *See* Docket Nos. 240 & 241.

**LEGAL STANDARD**

Orders issued by United States Magistrate Judges may be reversed only when the party objecting to the Order carries their burden of showing that the Magistrate Judge's decision is "clearly erroneous or contrary to law."  S.D. Fla. Magis. L. R. 4(a)(1); 28 U.S.C. § 636(b)(1)(A).

**ARGUMENT**

**I.   HOTFILE'S FAILURE TO SEEK A STAY OF MAGISTRATE JUDGE TURNOFF'S ORDER CONSTITUTES WAIVER AND MOOTS ITS OBJECTIONS.**

Hotfile's Objections to Magistrate Judge Turnoff's Order are moot because Hotfile's conduct subsequent to Titov's deposition constitutes waiver.

Magistrate Judge Turnoff's Order took effect immediately on January 13, 2012.  *See* 1/13/12 Tr. at 34:7-9 (order is "in effect as we speak").  Hotfile has thus been on notice since January 13, 2012 that Warner had a copy of Titov Ex. 27 and that Magistrate Judge Turnoff had agreed (in response to a clarifying question from counsel) that Warner "may use the deposition

---

[4] Magistrate Judge Turnoff's observation is more than amply supported.  Warner had a copy of the document for month than five months before Hotfile clawed it back.  Moreover, the second time that Hotfile produced the 297-page spreadsheet, it did so in a production of only 83 documents.  Since then Hotfile has clawed back 10 of those 83 documents – or one out of every eight documents from that tiny production.  Hotfile cannot credibly claim inadvertence.

exhibit and the deposition testimony." *Id.* at 32:11-16.  Indeed, following the hearing, when counsel for Hotfile insisted that counsel for Warner refrain from making any use of the deposition exhibit notwithstanding Magistrate Judge Turnoff's order expressly permitting such use, Warner's counsel informed Hotfile's counsel that the order took effect immediately and that Warner could not delay analyzing the document in light of the upcoming summary judgment deadlines.  *See* Pozza Decl., Ex. A.

Subsequent to its destruction of its copies of Titov Ex. 27 in accordance with the Protective Order, Warner acquired a new copy of the portion of the document used as an exhibit at the deposition when the court reporter delivered final transcripts to the parties.  Hotfile was equally aware of this, as the transcript was served on both parties, and the fact was discussed at the hearing.  1/13/12 Tr. at 21:17-25.  During depositions in Bulgaria, Warner's counsel informed Hotfile's lead counsel that "we can resolve the documents already marked when we return to the states."  *See* Pozza Decl., Ex. B.  But Hotfile's counsel never followed up, resulting in Warner's receiving a copy of the deposition exhibit once again when the reporter circulated transcripts.[5]

It is well established that "[w]ork-product protection is waived when protected materials are disclosed in a way that 'substantially increases the opportunity for potential adversaries to obtain the information.'"  *Stern v. O'Quinn*, 253 F.R.D. 663, 681 (S.D. Fla. 2008) (quoting *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 587 (N.D.N.Y. 1989)).  In both instances – by failing to seek a stay of Magistrate Judge Turnoff's order and by failing to make efforts to recall or retrieve the deposition exhibit – Hotfile failed to prevent disclosure of its claimed work product to Warner.[6]  Indeed, Hotfile did even not file its objections to Magistrate Judge Turnoff's Order until two weeks before motions for summary judgment on Hotfile's Counterclaim were due (and did not request expedited briefing), thus rendering it a practical impossibility for the Court to even consider the issue before Warner files

---

[5] Indeed, even after Warner's counsel reminded Hotfile's counsel and advised Magistrate Judge Turnoff at the hearing on January 13 that Warner now once again had a copy of the document in its possession, *see* 1/13/12 Tr. at 21:17-25, Hotfile has **still** made no effort to redact the transcript as to Titov Ex. 27 or other documents marked at the deposition that Hotfile has clawed back.

[6] As Magistrate Judge Turnoff observed at the hearing, Hotfile "could have filed a motion with the court to get a court order" before distribution of the deposition exhibit, but did not.  1/13/12 Tr. at 22:7-10.

its motion for summary judgment on February 10, 2012.  Alone and in combination, each omission by Hotfile constitutes waiver entirely independent of the waiver at the deposition upon which Magistrate Judge Turnoff's Order was premised, rendering moot Hotfile's request for reconsideration of the Order.[7]

## II.   HOTFILE'S FAILURE TO OBJECT TO THE USE OF TITOV EX. 27 AT THE TITOV DEPOSITION WAIVED ANY CLAIM OF PRIVILEGE.

As Magistrate Judge Turnoff correctly noted in granting in part Warner's Motion to Compel, Hotfile waived any work product protection by failing to object at Titov's deposition to the spreadsheet being used as an exhibit.

As Warner previously briefed, and Magistrate Judge Turnoff agreed, the use of an excerpt of Titov Ex. 27 at Titov's deposition without objection from counsel meant that "the cat is out of the bag already . . . ."  1/13/12 Tr. at 31:17-19.  An excerpt of Titov Ex. 27 was marked as an exhibit during the Hotfile Rule 30(b)(6) deposition and Defendant Titov testified about it without objection.  *See* Fabrizio Decl., Docket No. 211-1, ¶¶ 9-10 & Ex. A (Titov Dep. Tr.) at 167:23-173:2.  Hotfile's lead counsel defended the deposition and was given a copy of the exhibit at the same time as the witness.  Hotfile's counsel did not raise a single objection to the use of the document or the questioning on it (except as to form).  *Id.* ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

---

[7] Hotfile misleadingly cites Fed. R. Civ. P. 26(b)(5)(B) to suggest that Warner may "not use" Titov Ex. 27 because Hotfile's claim of work product protection is not yet "resolved."  Hotfile's Objections to Magistrate Judge's Order Regarding Plaintiff's Motion to Compel the Production of Titov Deposition Ex. 27, docketed on January 27, 2012, at 11 (hereinafter "Objections").  However, Magistrate Judge Turnoff made clear at the hearing, in response to a clarifying question from Warner's counsel to "make sure that I am not going to get accuse of violating another order," that was "absolutely correct" that Warner "may use the deposition exhibit and the deposition testimony, because that cat is out of the bag . . . ."  1/13/12 Tr. at 32:5-16; *see also id.* at 34:8-9 ("[T]he full record here is incorporated by reference into the orders.").  Tellingly, Hotfile cites nothing for its apparent belief that a final order of a Magistrate Judge does not "resolve" a privilege dispute.  Orders issued by Magistrate Judges on non-dispositive motions are operative and binding and are not stayed by the mere filing of objections.  *See Myers v. Cent. Fla. Invs., Inc.*, Case No. 6:04-cv-1542-Orl-28 DAB, 2006 U.S. Dist. LEXIS 9517, at *2 n.1 (M.D. Fla. Feb. 27, 2006) ("Filing an objection to a discovery order does not operate as a stay of the Order"); *White v. Burt Enters.*, 200 F.R.D. 641, 643 (D. Colo. 2000) ("[F]iling of Rule 72(a) objections did not relieve [party] of its obligation to comply with the court's . . . discovery orders . . .").  Indeed, by Hotfile's logic, no issue could ever be "resolved" under Rule 26 until all conceivable appeals had been exhausted.

██████████████████   *Id.* at 169:7-15.  Hotfile did not assert a work product objection until after the deposition had concluded for the day; in other words, not until after Hotfile had time to evaluate the implications of Mr. Titov's testimony.  It is hard to conceive of a clearer case of waiver.

Hotfile makes no argument that use, without objection, at a deposition is not clear waiver.  Instead of addressing the merits of Magistrate Judge Turnoff's Order, Hotfile bases its entire Objection on accusations without evidence.  Hotfile speculates without any basis (and without proffering any evidence) that Warner knew that the document had been clawed back, and used it purposefully as a "calculated tactic" to violate the Protective Order – as opposed to the result of Hotfile's decision to sandbag Plaintiffs with mass clawbacks on the eve of depositions.  *See* Objections at 10.  And Hotfile's argument, in addition to lacking evidence, is in any event missing a critical step: Hotfile's conduct constitutes waiver whether the document should have been used at the deposition or not.

Warner addresses Hotfile's baseless accusation in Part IV.A below.  Suffice it to say, Hotfile's accusations were fully presented to Magistrate Judge Turnoff, who carefully considered them, concluding that "the better argument is with the plaintiff" for the multiple reasons he listed.  1/13/12 Tr. at 21:9-16.  Hotfile cannot show that that decision was clearly erroneous.

## III.   HOTFILE'S PRODUCTION OF TITOV EX. 27 WAS NOT LEGALLY INADVERTENT.

Warner also presented to Magistrate Judge Turnoff an alternative basis for finding that any claim of work product over Titov Ex. 27 had been waived: the non-inadvertence of Hotfile's production.  Magistrate Judge Turnoff ultimately did not rule on this basis, but rather "because of the time lag, the use of the documents, [and] the fact that it was part and parcel of the deposition," which led him to conclude that "the better argument is with the plaintiff here."  1/13/12 Tr. at 21:7-12.  Warner has separately briefed the non-inadvertence of Hotfile's production.  Warner's Motion to Use Titov Ex. 27 at 6-11.  Rather than repeating that entire argument, Warner incorporates that discussion herein by reference.

Hotfile, in its Objections, complains that Warner's briefing on the non-inadvertence of Hotfile's production of Titov Ex. 27 is precluded by the Protective Order, reasoning that Warner is allowed to challenge the inadvertence of Hotfile's production in some ways but not challenge it in others.  *See* Objections at 15-18.  Because non-inadvertence was not the basis for Magistrate Judge Turnoff's Order, Hotfile's complaint is a red herring.  And as described in Part IV.D

below, Warner was fully entitled under the Protective Order to assert that Hotfile's claim that the production of the document – twice – was not inadvertent and point to the circumstances of Hotfile's productions to call Hotfile's claims of inadvertence into question. Therefore, as explained in Warner's separate motion to permit use of the entire document, *see* Warner's Motion to Use Titov Ex. 27 at 6-11, the Court has an alternative basis for sustaining the result reached by Magistrate Judge Turnoff's Order: Hotfile had already waived work product prior to the deposition.

## IV.   HOTFILE'S MULTIPLE ACCUSATIONS OF MISCONDUCT AGAINST WARNER'S COUNSEL ARE UNFOUNDED.

Lacking convincing responses to either Magistrate Judge Turnoff's decision or the alternative bases on which Magistrate Judge Turnoff could have reached the same conclusion, Hotfile resorts to leveling multiple charges of improper conduct against Warner's counsel. The real purpose of Hotfile's Objections appear to be to sully counsel's reputation with the Court. But each of Hotfile's accusations is groundless, and all (with the exception of an untimely new accusation raised by Hotfile for the first time in its objections) were rightly considered and disregarded by the Magistrate Judge. Because Hotfile seems intent on trying to disparage Warner's counsel, for whatever reasons, Warner addresses Hotfile's accusations below in far greater depth than they warrant on their "merits."[8]

### A.   Hotfile Misstates the Clawback Deadline.

Hotfile's first argument, that Warner violated the Protective Order by not having yet destroyed Titov Exhibit 27 by December 5, 2011, *see* Objections at 10, is easily disposed of.

Monday, December 5, 2011, was within five court days from Monday, November 28, 2011, when Hotfile sent the first of its two mass clawback emails. Hotfile misrepresents that the Protective Order requires destruction of documents "within five days," Objections at 10, even though the Order plainly requires such destruction in "five (5) ***court*** days." Docket No. 68 at 19, ¶ 20 (emphasis added). And the five-court-day deadline had in any event been extended by an

---

[8] Hotfile inexplicably makes it a habit to quote snippets of private emails between counsel, seemingly to complain about the tone and language used. What makes this even more bizarre is that counsel get along well, and perhaps because of that speak more freely with each other. Warner assumes that the Court has no interest in such exercises. Nevertheless, if the Court would like, counsel for Warner would be happy to put together a montage of snippets from the emails of Hotfile's counsel divorced from their context. That montage would look unsurprisingly similar to Hotfile's collection.

additional week – a fact Hotfile omits from its Objections.  *See* Pozza Decl., ¶ 5.  Warner

engaged in a reasonable effort to destroy its copies of the document by the deadline, which was

several days *after* the deposition.

**B.      Hotfile Unreasonably Sandbagged Plaintiffs With Mass Clawbacks.**

Hotfile speculates without any evidence that Warner's use of Titov Ex. 27 at Titov's

deposition was a "calculated tactic," as opposed to the predictable result of Hotfile's

unreasonable decision to engage in mass clawbacks, without any identification of the documents

beyond a string of Bates numbers, on the eve of depositions.  *See* Objections at 10.[9]  Hotfile's

speculation is based entirely on its assertion that searching by Bates number is "easy," *id.*, an

argument that neglects the practical difficulties of trying to scour countless internal emails,

analyses, deposition exhibits, and outlines during the busiest period in the case and while

Plaintiffs' deposition outlines were themselves in flux.  *See, e.g.,* 1/13/12 Tr. at 29:16-22

(Magistrate Judge noting that "[t]he fact is this is a huge complicated case," that the clawed-back

document "has been out there for [Plaintiffs'] paralegals and associates and everybody else, the

investigators to deal with" and that "[i]t would probably be difficult, if not impossible to find out

exactly what use it has been put to . . . .").  Warner's failure to realize that one of the documents

in its outline had been clawed back occurred despite Warner's best efforts and as the result of

Hotfile's unreasonable practices, not because of some sinister plot.  Hotfile provides no basis for

the Court to determine that Magistrate Judge Turnoff clearly erred in failing to credit Hotfile's

speculative accusation.

**C.      Warner's Motion to Compel Was Timely Under the Protective Order.**

Hotfile also tries to argue that Warner "violated the protective order" by filing its motion

too late.  *See* Objections at 11-15.  Magistrate Judge Turnoff properly disregarded this argument

as well.

At the outset, this argument is immaterial.  Even if Hotfile could show that Warner's

motion should have been filed earlier – which it cannot, *see* discussion *infra* – Magistrate Judges

"[e]xercise general supervision of civil and criminal calendars," S.D. Fla. Magis. L. R. 1(i)(1),

---

[9] Hotfile's sandbagging Plaintiffs with mass clawbacks during the final days of deposition
preparation was not an isolated occurrence.  Hotfile also purported to serve objections to the
30(b)(6) deposition topics for the same deposition – which began in Bulgaria on Monday,
December 5, 2012 – after business hours the preceding Friday, December 2, 2012.  If not
deliberate, Hotfile's practices were objectively unreasonable.

and Hotfile fails to show that Magistrate Judge Turnoff abused such discretion here.  *See, e.g.*, *Jones v. Coleman Co., Inc.*, 39 F.3d 749, 753–54 (7th Cir. 1994) (finding that a magistrate judge did not abuse his discretion by permitting filing of motion after the deadline, despite district court's prior denial of motion as untimely under Rule 16(b)); *Shoop v. Hott*, Civ. A. No. 5:08CV188, 2010 U.S. Dist. LEXIS 128740, at *6-7 (N.D. W. Va. Dec. 6, 2010) ("It is well within the magistrate judge's discretion to extend discovery deadlines . . . .").  Hotfile's unreasonable clawback practices – if not a deliberate attempt to preclude judicial review as a practical matter – certainly supplied the Magistrate Judge with good cause to consider the motion on the merits.

Hotfile's argument is wrong on the merits in any event.  First, under Local Rule 26.1, the deadline for bringing a motion to compel is thirty days from the date on which the dispute arises. *See* S.D. Fla. L. R. 26.1(h)(1).  In arguing that Paragraph 20 of the parties' stipulated protective order shortens that deadline to five court days, Hotfile confuses two distinct deadlines – (1) the deadline for destroying copies of clawed-back documents and submitting a copy under seal to the Court, and (2) the deadline for moving to compel a clawed-back document.  *See* Objections at 12-14.

Paragraph 20 of the Protective Order provides that, upon being given proper notice, a party must destroy copies of clawed back documents within five court days.  However, the Protective Order does ***not*** require that motions to compel must be brought within five court days; it expressly contemplates the contrary.  After reciting that parties must destroy clawed back documents within five court days, Paragraph 20 provides:

> However, the possessing parties may retain information sufficient to identify the Inadvertently Produced Privileged Document (*e.g.*, Bates number, author(s), recipient(s), date) for purposes of a motion to compel production of the document.  A party may move the Court for an order compelling production of the document, and may present the document to the Court under seal within five (5) court days of receiving a request to return the document …

Protective Order, May 19, 2011, Docket No. 68 at p. 19, ¶ 20.  Thus, the Protective Order provides that a party may present the *document* to the Court within five court days – a deadline clearly tied to the deadline for destroying the document and operating as an exception to the rule that all copies of the document must otherwise be destroyed.  Hotfile asserts incorrectly that the five court day clause is a limitation on filing a *motion*, which plainly it is not:

- Hotfile's reading is grammatically unsound – it would require the placement of a new comma between the words "seal" and "within" that is not present in the Order.

- Hotfile's reading makes no sense structurally.  Paragraph 20 expressly contemplates that before destroying the document, a party "may retain information sufficient to identify the Inadvertently Produced Privileged Document (*e.g.*, bates number, author(s), recipient(s), date) for purposes of a motion to compel production of the document."  That language only has meaning if the Protective Order contemplates motions to compel *after* the five court day period.

Second, Warner had the right to move to compel the spreadsheet at issue even under Hotfile's incorrect reading of the Protective Order.  Hotfile had produced the spreadsheet twice and clawed it back twice.  Monday, December 12, 2011, when Warner filed its motion, was "five (5) court days," Docket No. 68 at 19, ¶ 20, from Saturday, December 3, 2011, when Hotfile purported to claw back one of those versions.  Hotfile tries to argue in vain that "five court days after Saturday, December 3 is Friday, December 9," Objections at 15, a logic that treats Monday, December 5 (the day of the deposition itself) as the first of the five court days.  But it is established law that one "exclude[s] the day of the event that triggers the period," Fed. R. Civ. P. 6(a)(1), which was Monday, December 5, the first court day from the weekend clawback.  Five court days later was Monday, December 12, when Warner filed its motion.[10]

Hotfile also argues that it is immaterial that it clawed back a copy of the document on December 3, 2011 because it had also clawed back a copy on November 28, 2011, and that the earlier deadline should govern because the copy actually marked at the deposition bore the Bates number of the earlier-clawed-back copy.  Objections at 14-15.  This argument elevates form over function, causing the timeliness of motions to vary based on a Bates label.  Magistrate Judge Turnoff did not abuse his discretion in dismissing Hotfile's "technical arguments," 1/13/12 Tr. at 21:9, in granting Warner's motion.[11]

---

[10] While the Federal Rules have since been revised to count weekend days and holidays, *see* Fed. R. Civ. P. 6(a)(1)(B), the Court's protective order by its terms is limited to "court days," not calendar days.  *See* Docket No. 68 at p.19, ¶ 20.

[11] Nor is there any merit to Hotfile's new argument, never raised below, that its first clawback should have operated as a global clawback of any documents containing the same content because the Order requires the "destruction of 'all copies.'"  Objections at 15.  "Copies," in the Protective Order, clearly refers to other instances of the same document, not to separately-

**D.    The Protective Order Permitted Warner to Contend That Hotfile's Production of Titov Exhibit 27 was not "Inadvertent."**

Hotfile also accuses Warner of violating the Protective Order by arguing that Hotfile's production of Titov Ex. 27 was not inadvertent.  *See* Objections at 15-19.  As made clear in Part III, *supra*, this argument is a red herring because the non-inadvertence of Hotfile's production was not the basis for Magistrate Judge Turnoff's ruling.  But again, Hotfile's accusations of misconduct by Warner's counsel rests on a selective and incorrect reading of the Protective Order.

Hotfile's argument rests on the fact that the Protective Order states that a "party may not assert as a ground for the entering of such an order [to compel] the fact or circumstance of the *inadvertent* production."  Protective Order, p. 19, ¶ 20 (emphasis added).  From there, Hotfile leaps to the conclusion that the Protective Order also prohibits a party from pointing to the circumstances of a production *at all*, even to support an argument that the production was *not* inadvertent.  *See* Objections at 17-19.  The plain text of the protective order expressly precludes Hotfile's argument, and authorizes the argument made by Warner in the proceedings below:

> Nothing in this Order shall preclude a party from arguing that the production of the allegedly inadvertently produced document was not inadvertent or that conduct since production of the allegedly inadvertently produced document constitutes a waiver.

Protective Order, p. 19, ¶ 20.  Put differently, the Protective Order states that (1) inadvertent production will not be deemed waiver, (2) a party may not point to the circumstances of an inadvertent production to argue waiver by means of such inadvertent protection, but (3) notwithstanding the preceding two clauses, a party *may* argue that a production was not inadvertent.  *Id*.  That is what Warner did and what the Order plainly authorized.

**E.    Warner's Counsel Fully Complied With Their Obligation To Notify Hotfile Of Inadvertently Produced Documents.**

Hotfile adds to its Objections a new accusation never raised before Magistrate Judge Turnoff – that Warner failed to surmise that Titov Exhibit 27 was "inadvertently produced" and work product when it first became aware of the document and to notify Hotfile of the

---

produced documents with the same content.  Any other reading would impose on the recipient of clawbacks the impossibly burdensome task of discerning whether the producing party had produced different documents containing the same content.

"inadvert" production.  Objections at 19-20.  In addition to being untimely, this accusation is irresponsible, and not befitting the caliber of Hotfile's counsel.

First, there is no excuse for Hotfile's failure to make this argument in a timely basis before Magistrate Judge Turnoff.  Hotfile has known since Titov's deposition on December 5, 2011, that Warner's counsel was aware of the spreadsheet and had prepared deposition questions based on it.  Hotfile's excuse for raising this argument for the first time in its Objections – that Warner's counsel stated in a declaration submitted in connection with Warner's Motion to Compel that it had integrated the document into Warner's work product, *see* Objections at 19, did not supply any material new information of which Hotfile was unaware at the time it opposed Warner's motion.  The Court should disregard this argument as untimely.  *See Cincinnati Ins. Co. v. Cochran*, 198 F. App'x 831, 833 (11th Cir. 2006); *see, e.g.*, *Pigott v. Sanibel Dev., LLC*, No. Civ. A. 07-0089-WS-C, 2008 WL 2937804, *5 n.9 (S.D. Ala. July 23, 2008) ("[i]n reviewing a magistrate judge's nondispositive ruling, this Court does not consider matters not placed before that judge") (quoting *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 641 (D. Kan. 2007)).

Second, Warner had every reason to believe that Hotfile had produced Titov Exhibit 27 in the regular course (and continues to believe that it did).  As stated *supra*, not only had Hotfile produced this 297-page document on two separate occasions several months apart, but Hotfile was taking the position, earlier in this litigation, that Warner's counsel-directed investigation of Warner's takedown notices to Hotfile was ***not*** work product.  Warner had no way of knowing that Hotfile's production was anything other than intentional and the flipside of Hotfile's stated legal position.

Third, even absent Warner's good cause to believe that Titov Exhibit 27 had been produced on purpose, Warner had no reasonable way of knowing that Hotfile would later take the position that the document was inadvertently produced work product.  To reiterate:



- The purported work product status of the document is so non-obvious that Hotfile's reviewing attorneys decided to produce it not once, but twice, in separate document productions, and Hotfile's lead counsel, with a copy of the document in his hands during extensive questioning at Titov's deposition, raised no objection.

Respectfully, the fact that Hotfile's own counsel – on three different occasions – did not think that the document was work product, belies its claim that the document "appears on its face" to be a document that Hotfile had produced in error.  Objections at 19.



The bottom line is that Hotfile's accusation is a sideshow.  Unlike Hotfile's counsel, who presumably was privy to its own work product (and yet still failed to object at the deposition), Warner had no good reason to think that Titov Exhibit 27 was work product, much less that it was inadvertently produced.

## CONCLUSION

Warner respectfully requests that Hotfile's Objections to Magistrate Judge Turnoff's Order be overruled.

Dated: February 10, 2012                Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone:      (305) 461-6880
Facsimile:  (305) 461-6887


MOTION PICTURE ASSOCIATION
 OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone:     (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

 /_____

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 10th day of February, 2012, I served the following documents on all counsel of record on the attached service list via electronic mail per the parties' service agreement:

**Warner's Responses to Hotfile's Objections to Magistrate Judge's Order Regarding Warner's Motion to Compel Titov Deposition Exhibit 27**

**Warner's Motion and Memorandum of Law to File Under Seal**

**Warner's [Proposed] Order Granting Plaintiffs' Motion to File Documents Under Seal**

**Declaration of Duane C. Pozza in Support of Warner's Responses to Hotfile's Objections to Magistrate Judge's Order Regarding Warner's Motion to Compel Titov Deposition Exhibit 27 (with exhibits A-C)**

I further certify that I am admitted *pro hac vice* to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Luke C. Platzer
Luke C. Platzer

## SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*