UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

_____/

## WARNER BROS. ENTERTAINMENT INC.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## PUBLIC REDACTED VERSION

# Table Of Contents

Table of Authorities .................................................................................................. ii

Citation Legend........................................................................................................ iv

Introduction ..........................................................................................................1

Summary of Argument ...............................................................................................1

Statement of Facts ...................................................................................................3

      A.     The Problem and Scale of Piracy on Hotfile and Other Download Hubs. ..............3

      B.     Warner's Antipiracy System.......................................................................4

           1.     Warner Has Taken Great Care an Developing and Operating Its System. ........................................................................................4

           2.     Warner Promptly Identifies and Addresses Opportunities to Improve Its System. ..................................................................6

     C. Hotfile's     Counterclaim...................................................................7

Argument ...........................................................................................................7

I.       STANDARD FOR SUMMARY JUDGMENT.................................................7

II.      HOTFILE CANNOT MEET ITS BURDEN OF PROVING WARNER MADE A "KNOWING MISREPRESENTATION" IN ANY TAKEDOWN NOTICE...................8

      A.     Hotfile Cannot Present Any Evidence of a "Knowing Misrepresentation." ...........9

      B.     Hotfile's Constructive Knowledge Argument Flies in The Face of The Statutory Standard and Has Already Been Rejected...............................................10

III.     HOTFILE CANNOT MEET ITS BURDEN OF PROVING ANY OF THE COUNTERCLAIM NOTICES CAUSED "INJURY" TO HOTFILE. ...........................11

      A.     "Injury" Is An Element of A Section 512(f) Claim. ...............................11

      B.     Hotfile Has Acknowledged That It Has No Evidence of Actual Injury. ...............11

      C.     Hotfile's Damages Expert Does Not Prove Injury; He Merely Assumes It. .........12

      D.     By Hotfile's Own Admission, The Counterclaim Files Did Not Cause Injury. ....................................................................................14

Conclusion .........................................................................................................16

i

# Table Of Authorities

CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................8

*Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452 (S.D.N.Y. 2007) ...............................7

*Cabell v. Zimmerman*, 09 civ. 10134 (CM), 2010 U.S. Dist. LEXIS 25486 (S.D.N.Y.
   Mar. 12, 2010) ..............................................................................................................8

*Dudnikov v. MGA Entertainment, Inc.*, 410 F. Supp. 2d 1010 (D. Colo. 2005) .............9

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993) ...........................................8

*Floyd v. McNeil*, Case No. 4:10cv289-RH/WCS, 2011 U.S. Dist. LEXIS 150619 (N.D.
   Fla. Dec. 5, 2011) ........................................................................................................8

*Garcia v. INS*, 31 F.3d 441 (7th Cir. 1994) ....................................................................9

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) ....................................................14

*Lenz v. Universal Music Corp.*, No. C 07-3783 JF, 2010 WL 702466 (N.D. Cal. Feb. 25,
   2010) .....................................................................................................................11, 12

*Martinez v. Rabbit Tanaka Corp.*, Case No. 04-61504-CIV, 2006 U.S. Dist. LEXIS
   97084 (S.D. Fla. Jan. 5, 2006) ...................................................................................14

*Rossi v. Motion Picture Ass'n of America, Inc.*, 391 F.3d 1000 (9th Cir. 2004) ......8, 10

*Suite v. INS*, 594 F.2d 972 (3d Cir. 1979) .......................................................................9

*Third Educational Group, Inc. v. Phelps*, 675 F. Supp. 2d 916 (E.D. Wis. 2009) .........8

*UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055 (C.D. Cal. 2008) ..................9

*United States v. Konstantakakos*, 121 F. App'x 902 (2d Cir. 2005) ..............................9

*Warner Brothers Entertainment, Inc. v. Free-TV-Video-Online.info*, CV 08-8484-JFW,
   ECF No. 124 (C.D. Cal. Feb. 1, 2010) .........................................................................5

STATUTES

17 U.S.C. § 512(i)(1)(A) ................................................................................................13

17 U.S.C. § 512(c)(3)(A) ...............................................................................................14

17 U.S.C. § 512(c)(3)(A)(v) ..........................................................................................10

17 U.S.C. § 512(c)(3)(A)(vi) ........................................................................................15

17 U.S.C. § 512(f)........................................................................................1, 2, 8, 11

17 U.S.C. § 512(f)(1) ..................................................................................................14

17 U.S.C. § 512(g)(3) ..................................................................................................10

**OTHER AUTHORITIES**

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (2011) .......................................9

Fed. R. Civ. P. 9(b) .........................................................................................................7

## CITATION LEGEND

For the purposes of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment and Statement of Uncontroverted Facts in support thereof, the following abbreviations shall be used:

1.     "Counterclaim" shall refer to the Second Amended Answer, Affirmative Defenses, and Counterclaim of Defendant Hotfile Corporation to Plaintiffs' Complaint dated October 27, 2011 (Dkt. # 161).

2.     "Foster Decl." shall refer to the declaration of Dr. Ian Foster, Director of the Computation Institute at Argonne National Laboratory and the University of Chicago, dated February 10, 2012, filed herewith.

3.     "Hopkins Decl." shall refer to the Declaration of Kerry Hopkins, the Senior Director of Intellectual Property at Electronic Arts, Inc. ("EA"), dated February 9, 2012, filed herewith.

4.     "Joint Motion" shall refer to the Joint Motion and Memorandum of Law of the Parties for Voluntary Dismissal of Second and Third Counts of Hotfile's First Amended Counterclaim and for Amendment of First Count, dated September 22, 2011 (Dkt. # 151).

5.     "Kaplan Decl." shall refer to the declaration of David Kaplan, the Senior Vice President, Intellectual Property Counsel, Worldwide Antipiracy Operations of Plaintiff and Counterdefendant Warner Bros. Entertainment Inc., ("Warner"), dated February 8, 2012, filed herewith.

6.     "Order Granting Joint Motion" shall refer to the Order on Joint Motion for Voluntary Dismissal of Second and Third Counts of Hotfile's First Amended Counterclaim and for Amendment of First Count, and for Extending Time To Answer, dated October 5, 2011 (Dkt. # 155).

7.     "SUF" shall refer to specific paragraph numbers of uncontroverted facts in Warner's Statement of Uncontroverted Facts.

8.     "Yeh Decl." shall refer to the Declaration of Jennifer V. Yeh in Support of Warner Bros. Entertainment's Motion for Summary Judgment, dated February 9, 2012, filed herewith.

9.      "Yeh Ex. __," shall refer to exhibits attached to the Yeh Declaration, and, if appropriate, pinpoint citations to the page number(s), and paragraph or line numbers, internal to the cited document.

10.     "Zebrak Decl." shall refer to the declaration of Scott Zebrak, dated February 9, 2012, filed herewith.

**Introduction**

Defendant Hotfile Corp. ("Hotfile") filed a counterclaim against plaintiff Warner Bros. Entertainment Inc. ("Warner") alleging that Warner sent copyright infringement notices to Hotfile identifying files that Warner knew it did not own.  In fact, of the innumerable takedown notices Warner sent to Hotfile, covering roughly a million files, a tiny percentage contained errors.  However, Section 512(f) of the Digital Millennium Copyright Act ("DMCA"), the statute on which Hotfile bases its counterclaim, deliberately sets a high bar for claims against copyright owners for mistakes in DMCA notices.  Section 512(f) provides a cause of action only when a copyright owner "knowingly materially misrepresents … that material or activity is infringing." 17 U.S.C. § 512(f).  The facts here are not in dispute.  Hotfile cannot meet its burden of proving Warner "knowingly misrepresented" anything in even a single takedown notice.  Any mistakes were just that – mistakes.  Nor does Hotfile have any evidence that it was "injured" by those few mistakes, which is an independent element of a Section 512(f) claim.  Hotfile has now had its opportunity to take discovery and can present no facts in support of its counterclaim.  Hotfile's counterclaim should be dismissed and summary judgment entered for Warner.

**Summary of Argument**

Warner operates one of the most sophisticated systems in the world to identify instances of online infringement of Warner's copyrighted entertainment properties.  Kaplan Decl. ¶ 3; *see generally id*. ¶¶ 5-13.  Using its system, Warner sends millions of notices a year to sites like Hotfile that enable and foster copyright infringement on scales that are unimaginable.  Kaplan Decl. ¶ 4.  Warner's system is extraordinarily accurate and reliable.  Kaplan Decl. ¶ 14.  No system, however is or can be completely error-free, especially when operating at the volume necessitated by the massive infringement on Hotfile.  Hotfile itself proves this.  With teams of lawyers manually reviewing just a few hundred files, Hotfile still made a number of errors in presenting the counterclaim files, claiming that Warner wrongfully took down 19 files even though those files are properly owned by Warner.  Kaplan Decl. ¶ 22.  Yet, it would be frivolous to suggest, based on a handful of errors, that Hotfile "knowingly misrepresented" facts to the Court.  Whether computer or human, mistakes happen.

The fact is, Hotfile brought its counterclaim against Warner not to redress a genuinely perceived wrong.  Hotfile's own damages expert concedes that, even accepting his flawed damage "model," Hotfile's expert fees alone are a *multiple* of any amount Hotfile could hope to

recover on its counterclaim.  Yeh Ex. A (Lynde dep.) at 282:9-25.  Hotfile is pursuing its counterclaim as a defensive tactic:  so Hotfile can argue that there is some comparison between a handful of mistakes by Warner and the massive infringement on Hotfile.  But there is no comparison.  Plaintiffs' copyright case is not about a handful of mistakes Hotfile made in handling DMCA notices.  Hotfile actively encourages copyright infringement and built its business to profit from that infringement.  Indeed, rather than terminating "repeat infringers" as required under the DMCA, Hotfile pays its repeat infringers to upload infringing content.

Hotfile's counterclaim against Warner is baseless.  Section 512(f), by design, is intended to address only the most deliberate and egregious of misrepresentations in DMCA notices.  By statute, Hotfile must demonstrate, as to each alleged notice, both that Warner made a "knowing misrepresentation" and that Hotfile was "injured by such misrepresentation."  17 U.S.C. § 512(f).  On facts not in dispute, Hotfile cannot do either.

 First ____, Hotfile has not and cannot come forward with any evidence that Warner ever sent a DMCA notice with "actual subjective knowledge" (the governing standard) that the notice contained an error.  *See infra* at 9.  Even Hotfile's corporate representative, in deposition, conceded that Hotfile could not contend that Warner sent any notice knowing that it contained an error.  Yeh Ex. B (Titov dep.) at 156:4-23.

Unable to adduce any evidence that Warner made a "knowing misrepresentation," Hotfile argues for a constructive knowledge theory that has been rejected repeatedly.  According to Hotfile, because Warner's antipiracy system involves substantial automation, Warner "knew" that its system would inevitably result in some errors, and any mistakes therefore are tantamount to "knowing misrepresentations."  This argument flies in the face of the statutory standard and, not surprisingly, finds no support in law.  It is also factually untenable.  Any system – regardless of whether it is fully automated, fully manual, or some combination – will result in errors.  Hotfile concedes as much.  Yeh Ex. B (Titov dep.) at 157:22-158:6 (no matter the system, "mistakes happen").  Hotfile's argument turns a "knowing misrepresentation" standard into a strict liability standard.

 Second_____, "injury" is an element of a claim under Section 512(f), and Hotfile cannot demonstrate that it has suffered any cognizable injury as a result of the takedown notices for the counterclaim files.  In fact, the counterclaim notices are truly *de minimis* in context of the millions of infringement notices Hotfile has received.  Hotfile admits that it has no evidence of

2

any injury in fact as a result of the counterclaim file takedown notices.  *See infra* Part II.  Hotfile concedes that if a file is in fact copyright infringing, then Hotfile is not injured by removal of the file, even if the notice was sent by the wrong copyright owner.  *See infra* 14.  Hotfile further agrees that if a user had "three strikes" under Hotfile's post-litigation repeat infringer policy without counting the counterclaim notices – *i.e.*, if the user was subject to three copyright infringement notices and should have been terminated anyway – then Warner bears no responsibility for the termination of the user.  *See infra* 15.  Therein lies the dispositive flaw in Hotfile's "injury" theory.  Virtually all of the counterclaim files are either blatantly copyright infringing or were uploaded by Hotfile users who had three or more strikes without counting the counterclaim notices.  *See infra* 15.  Since Hotfile has expressly disclaimed "injury" from removing infringing files or terminating repeated copyright infringers, the relatively few mistaken notices that are the subject of Hotfile's counterclaim did not cause Hotfile any injury.

### Statement of Facts

A.  <u>The Problem and Scale of Piracy on Hotfile and Other Download Hubs.</u>

The volume of copyright infringement occurring through the Hotfile website is staggering.  Every day, millions of files are downloaded from Hotfile, and more than 90% of them are copyright infringing.  Yeh Ex. C ¶¶ 5, 11.[1]  Every day, new infringing copies of Warner's motion pictures and television programs are uploaded to Hotfile.  Kaplan Decl. ¶ 4.  The same is true for other "download hubs" like Hotfile that encourage infringement in similar ways.  Kaplan Decl. ¶ 4.

Trying to keep up with this volume of infringement is well beyond a full-time job.  In addition to retaining outside antipiracy vendors, Warner has ███ in-house employees substantially or entirely devoted to addressing online infringement of Warner properties.  Kaplan Decl. ¶ 4.  It is a never-ending effort, in part because sites like Hotfile encourage infringement 24 hours a day, 365 days a year.

---

[1] Yeh Ex. C is an expert report submitted by Dr. Richard Waterman in this case.  Dr. Waterman will be submitting a declaration in support of Plaintiffs' upcoming motion for summary judgment on the copyright claims to be filed on February 17, 2012.

B.  <u>Warner's Antipiracy System.</u>

Part of Warner's effort to stop online infringement of its content involves sending takedown notices to sites like Hotfile.  Kaplan Decl. ¶ 4.  Because Hotfile does not have a search feature on its website, but rather pays third party websites to host "links" to content stored on Hotfile, sending notices to Hotfile involves searching websites across the Internet to identify Warner content.  Kaplan Decl. ¶ 3.  A virtual cottage industry of pirate "link sites" has developed to host and promote "links" to infringing content on download hubs like Hotfile.  Kaplan Decl. ¶ 3.  Warner searches these link sites for links to Warner content and sends notices to Hotfile and similar sites based on those links.  Kaplan Decl. ¶ 3.

Given the extraordinary volume, Warner, as do many professional antipiracy vendors, deploys automated systems wherever reasonable to identify infringing copies of its content and send takedown notices.  Kaplan Decl. ¶ 5.  Although Hotfile tries to make much of the automated nature of Warner's system, such systems are common.  Kaplan Decl. ¶ 5.  Likewise, in the normal course, Warner identifies links to infringing content on Hotfile without downloading the files.  Kaplan Decl. ¶ 17.  Again, contrary to Hotfile's criticisms of this methodology, identifying files without downloading the content is common practice, not just in the motion picture industry, but across all content industries.  Kaplan Decl. ¶ 17.  As Hotfile has acknowledged, it would be impossible to download each file for the thousands of notices Warner sends on a daily basis.  Kaplan Decl. ¶ 17; Counterclaim ¶ 21.  Nor is it necessary.  Kaplan Decl. ¶ 17.

  1.  *Warner Has Taken Great Care in Developing and Operating its System.*

Warner uses a system of ███████████████████████ to help search link sites for links to infringing copies of its content.  Kaplan Decl. ¶ 7.  ████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████ not arbitrarily search "the Internet" for links; to the contrary, Warner is very selective about which sites are searched.  Warner manually identifies specific link sites that are notorious for hosting links to infringing content and little else.  Kaplan Decl. ¶ 6. Currently, Warner searches only about ███ of the most notorious link sites, even though the universe of websites that contain links to infringing content on Hotfile and similar sites is far larger.  Kaplan Decl. ¶ 6.  These ██████████ link sites are not legitimate websites by any stretch.  Indeed, several notorious pirate link sites have been shut down by federal law enforcement; others have been found liable for copyright infringement in civil actions.  *E.g.*, Yeh

Ex. D (DOJ Press Release announcing seizures); *Warner Bros. Entertainment, Inc. v. Free-TV-Video-Online.info*, CV 08-8484-JFW, ECF No. 124 (C.D. Cal. Feb. 1, 2010) (granting motion for summary judgment).  In other words, as a threshold, Warner begins by manually identifying link sites that offer little but pirated content.  For each link site to be searched, Warner ██████

███████████████████████████████████████████████████████████████
█████████████████████████████████

     █████████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
██████████████████████████ ██████████████████████████████
████████████████████████████████████████

████████████████████████████ Kaplan Decl. ¶ 12.  The net result of this process is a complex search algorithm for each title that is designed to minimize the risk that unintended files will be identified.  Kaplan Decl. ¶ 13.

     Many link sites enable searching by genre of content, such as movies, music, games, software, etc.  Kaplan Decl. ¶ 9.  The sites are organized this way to make searching them more reliable for users.  Warner's system also takes advantage of this additional information whenever available.  Kaplan Decl. ¶ 9. ██████████████████████████████████████

███████████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████



Warner takes care to ensure, as much as possible, that its system only identifies and sends notices on infringing Warner content.  Kaplan Decl. ¶ 13.  At several places in the process, Warner makes decisions that result in ▮▮▮▮ excluding (not sending notices on) infringing Warner content so as to avoid potentially misidentifying content.  Kaplan Decl. ¶ 13.  The cumulative effect of these decisions is a system that, by design, favors excluding files rather than potentially misidentifying files.  Kaplan Decl. ¶ 13.[3]

     2.   *Warner Promptly Identifies and Addresses Opportunities to Improve its System.*

Warner actively seeks to improve the quality of its system.  Kaplan Decl. ¶¶ 15-16. Warner regularly reviews reports of takedowns and investigates anything that looks out of the ordinary.  Kaplan Decl. ¶ 16.  Warner also has processes in place – and has improved those

---

[2] For a movie, there are typically many links on a post page.  This is for two reasons.  First, a single movie is often divided up into many pieces before being uploaded to a site like Hotfile, and each piece has its own link.  Kaplan Decl. ¶ 10.  Users need to download all the links to get the whole movie.  Second, a post page typically will contain links to the movie hosted on multiple different download hub websites, and each download hub website will have its own set of links.  Kaplan Decl. ¶ 10.

[3] In addition to its own internal system, Warner also works with professional antipiracy vendors who send notices on its behalf.  Kaplan Decl. ¶¶ 4, 6.  Indeed, some of the takedowns complained of by Hotfile in its counterclaim were not even generated by Warner's internal system at all.  Kaplan Decl. ¶ 20.

processes over time – to spot check results and affirmatively look for errors.  Kaplan Decl. ¶¶ 15-16.  Without fail, when Warner has learned of an error – through one of these processes or otherwise – Warner not only has taken steps to fix the problem, but also has sought to learn from the error to improve the overall reliability of the system.  Kaplan Decl. ¶¶ 15-16.  Where Warner has not been able to immediately identify or fix a problem, it has stopped searching for a title or has ███████████████████.  Kaplan Decl. ¶ 15.  In fact, when Warner learned of Hotfile's counterclaim, it took its entire system offline and double-checked ██████████████ it brought the system back online ████████████ and only after satisfying itself that the system was reliably identifying Warner content.  Kaplan Decl. ¶ 16.

C.  Hotfile's Counterclaim.

Hotfile actively began planning for a counterclaim "almost immediately upon being sued" by plaintiffs.  Yeh Ex. B (Titov dep.) at 159:6-10.  ██████████████████████████ ███████████████████████████Yeh Ex. B (Titov dep.) at 165:13-18 █ ██████████████████████████████████████████████ ████████████████████████ Yeh Ex. B (Titov dep.) at 162:5-163:2, 165:13-18, & Yeh Ex. E.  This process culminated in Hotfile filing a counterclaim on August 22, 2011, and a first amended counterclaim on September 12, 2011.  Neither of those, however, identified the specific notices that Hotfile claims contain "knowing misrepresentations."  That was a fatal defect under Rule 9 of the Federal Rules of Civil Procedure, which requires claims of fraud and misrepresentation to be plead with particularity.  *See* Fed. R. Civ. P. 9(b).  As a result, Warner and Hotfile stipulated that Hotfile would file a second amended counterclaim, after Hotfile took even more time to identify any and all Warner notices that Hotfile contends violate Section 512(f).  Pursuant to that stipulation, which was entered by the Court on October 4, 2011, the files identified in Exhibits A-D of Hotfile's second amended counterclaim constitute the "definitive list" of files that make up Hotfile's counterclaim.  Joint Motion; Order Granting Joint Motion; *see also* Counterclaim ¶ 40.

**Argument**

**I.   STANDARD FOR SUMMARY JUDGMENT.**

Hotfile bears the burden of proving every element of its counterclaim.  *E.g., Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452, 468-69 (S.D.N.Y. 2007).  Accordingly, to be entitled to summary judgment, Warner "simply may show[] – that is, point[] out to the district court – that

there is an absence of evidence to support the non-moving party's case." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993) (internal citations omitted) (alterations in original). Thereafter, Hotfile must "come forward with evidentiary material demonstrating a genuine issue of material fact for trial." *Floyd v. McNeil*, Case No. 4:10cv289-RH/WCS, 2011 U.S. Dist. LEXIS 150619, at *4 (N.D. Fla. Dec. 5, 2011) (quotation marks omitted). In doing so, Hotfile "must show more than the existence of a metaphysical doubt regarding the material facts." *Id*. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

## II.   HOTFILE CANNOT MEET ITS BURDEN OF PROVING WARNER MADE A "KNOWING MISREPRESENTATION" IN ANY TAKEDOWN NOTICE.

Section 512(f) of the DMCA creates a cause of action against anyone who, in a DMCA notice, "knowingly materially misrepresents … that material or activity is infringing." 17 U.S.C. § 512(f). This is a "subjective good faith standard" and imposes liability "only for knowing misrepresentations" regarding infringement. *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004).

Courts have consistently held that liability attaches under 512(f) only upon a showing of actual, subjective knowledge of a material misrepresentation in a takedown notice – that the falsehood was intentional. As the Ninth Circuit has explained, Section 512(f) does not support liability when "an unknowing mistake is made, *even if the copyright owner acted unreasonably in making the mistake*. Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." *Rossi*, 391 F.3d at 1005 (emphasis added) (internal citation omitted). Any attempt to "[m]easure[] compliance with a lesser 'objective reasonableness' standard would be inconsistent with Congress's apparent intent that the statute protect potential violators from *subjectively* improper actions by copyright owners." *Id*.

Subsequent to *Rossi*, every court that has examined the standard for knowledge under 512(f) has followed the *Rossi* rationale to require actual, subjective knowledge. *See*, *e.g.*, *Cabell v. Zimmerman*, 09 civ. 10134 (CM), 2010 U.S. Dist. LEXIS 25486, at *9-10 (S.D.N.Y. Mar. 12, 2010) ("as a prerequisite to liability under section 512(f), a defendant must have actual knowledge that it is making a misrepresentation of fact"); *Third Educ. Grp., Inc. v. Phelps*, 675 F. Supp. 2d 916, 927 (E.D. Wis. 2009) (requiring "a demonstration that the actor had some actual

knowledge of the misrepresentation" in the takedown notice); *UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055, 1065 (C.D. Cal. 2008) (512(f) liability attaches "only if the owner did not possess a subjective good faith belief that its copyright was being infringed"); *Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005) ("as long as MGA acted in good faith belief that infringement was occurring, there is no cause of action under § 512(f)"). *See also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12B.08[A] & n.8 (2011) (only "mendacious individual[s]" may be held liable for damages pursuant to 512(f); "[i]nnocent misrepresentations are not subject to those damages").

This interpretation of Section 512(f) is supported by interpretations of comparable "knowing misrepresentation" statutes across the federal landscape. For example, in *Garcia v. INS*, the Seventh Circuit equated "knowledge of the falsity of a representation" with *willful* misrepresentation, which requires "subjective intent." 31 F.3d 441, 443 (7th Cir. 1994) (quotation marks omitted); *see also Suite v. INS*, 594 F.2d 972, 973 (3d Cir. 1979) (interpreting "willful" as requiring "voluntary and deliberate activity," which the court equated with "*knowledge* of the falsity of a representation"). And in *United States v. Konstantakakos*, the Second Circuit recognized that "knowingly subscrib[ing] as true, any false statement with respect to a material fact" has been interpreted to prohibit only "*deliberate* falsehoods." 121 F. App'x 902, 905-06 (2d Cir. 2005) (internal quotation marks omitted) (unpublished).

A.   Hotfile Cannot Present Any Evidence Of a "Knowing Misrepresentation."

This much is not subject to dispute: After full discovery, Hotfile cannot point to a single piece of evidence to show that Warner acted deliberately or with actual subjective knowledge that any individual takedown notice contained a material error. SUF ¶ 1. Hotfile admits as much. Asked at deposition whether Hotfile "believe[d] Warner took down material that it didn't own on purpose," Hotfile's own corporate representative, defendant Anton Titov, could only answer: "I don't know about the motives of Warner doing so." SUF ¶ 1(a). When asked more specifically whether Hotfile believed that "Warner saw a file, recognized that it wasn't one of their properties, but sent a notice through the special rights holder's account, knowing that it wasn't their property," Mr. Titov, speaking as Hotfile's corporate representative, responded: "I don't know." SUF ¶ 1(a).

Hotfile cannot present any evidence because none exists. The uncontroverted testimony from Warner's head of antipiracy operations, David Kaplan, establishes that any errors in the

counterclaim notices were the result of unintentional mistakes, nothing more. SUF ¶ 1(b). Warner has never sent a takedown notice without believing the notice to be accurate in all material respects. Kaplan Decl. ¶¶ 14, 19. The absence of evidence as to any deliberate misrepresentation by Warner is fatal to Hotfile's counterclaim.

> **B.** **Hotfile's Constructive Knowledge Argument Flies in the Face Of the Statutory Standard and Has Already Been Rejected.**

From the start, Hotfile has known full-well that there is no evidence of any knowing misrepresentation by Warner. Hotfile's strategy throughout discovery was to attempt to put Warner's antipiracy *system* on trial. Hotfile complains that Warner's system is too automated and that Warner does not download and review the contents of each file before sending a notice. But what Hotfile complains about are effectively industry norms – not just in the motion picture industry, but in most copyright industries. Kaplan Decl. ¶ 17.[4] More to the point, the nature of Warner's system is immaterial under Section 512(f). The only fact that is legally material is whether Warner had actual subjective knowledge that a particular notice contained material errors and deliberately sent the notice anyway. It is undisputed that no such fact exists. SUF ¶ 1.

Hotfile's argument comes down to this: Warner understood that its system would result in some errors and therefore *every* error constitutes a knowing misrepresentation. But that is an argument for *constructive* knowledge and is incompatible with the Section 512(f) statutory standard. *E.g.*, *Rossi*, 391 F.3d at 1005 (rejecting a constructive knowledge standard); *see supra* 8-9. The undeniable fact is that *any system* of identifying infringing content is bound to produce some errors, whether the system is fully automated, fully manual, or a hybrid, and regardless of whether the system involves downloading every file. The DMCA incorporates this truism into its standard for sending notices. A copyright owner need only have a "good faith belief" that a noticed file is infringing. 17 U.S.C. § 512(c)(3)(A)(v) (titled "Elements of Notification"). The DMCA further provides for a "counter notification" process for users to challenge a takedown notice if they believe it to have been sent in error. 17 U.S.C. § 512(g)(3).[5] As Hotfile

---

[4] Hotfile's criticisms are not even factually accurate – many of the takedown notices of which Hotfile complains were located and generated by one of Warner's vendors using human review. Kaplan Decl. ¶ 20.

[5] Not surprisingly, as of the filing of plaintiffs' complaint, Warner had sent Hotfile hundreds of thousands of takedown notices. Kaplan Decl. ¶ 14. Yet, in all that time, no Hotfile user ever sent a counter notice claiming Warner had made a mistake. Kaplan Decl. ¶ 14.

acknowledges, "mistakes happen"; no matter what the system, "there will still likely be errors." Yeh Ex. B (Titov dep.) at 157:22-158:6.

Every copyright owner that sends DMCA notices in any meaningful volume "knows" that some notices inevitably will contain errors. Hotfile's theory would thus turn a "knowing misrepresentation" standard into a strict liability standard. Hotfile's brand of constructive knowledge has been rejected repeatedly. *Supra* 8-9. It should be rejected here as well.

### III.  HOTFILE CANNOT MEET ITS BURDEN OF PROVING ANY OF THE COUNTERCLAIM NOTICES CAUSED "INJURY" TO HOTFILE.

Hotfile's counterclaim should be dismissed for an independent reason:  Hotfile cannot meet its burden of proving "injury" as a result of any of the counterclaim notices.

A.  <u>"Injury" Is an Element Of a Section 512(f) Claim.</u>

Even if Hotfile could prove a knowing misrepresentation – which it cannot – Section 512(f) allows a claim only if the service provider "is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing."  17 U.S.C. § 512(f).  Thus, "injury" is an element of a Section 512(f) claim, and Hotfile bears the burden of proving injury caused by the counterclaim notices.  *See Lenz v. Universal Music Corp.*, No. C 07-3783 JF, 2010 WL 702466, at *11 (N.D. Cal. Feb. 25, 2010) (plaintiff must "establish the damage element under § 512(f)").

Clearly the DMCA contemplates that not every mistaken takedown notice will cause injury; otherwise the express statutory requirement of proving injury would be superfluous.  To sustain a claim under Section 512(f), the injury caused by the mistaken notice must be actual and economic, beyond the fees and costs associated with investigating and filing a 512(f) claim. *Lenz*, 2010 WL 702466, at *10.  Hotfile cannot meet its burden of proving injury.

B.  <u>Hotfile Has Acknowledged That it Has No Evidence of Actual Injury.</u>

In a 17-page counterclaim filled with inflammatory and unsubstantiated factual allegations, it is telling that the sum total of Hotfile's claimed "injury" is limited to the following conclusory allegation:

> Hotfile has been injured by Warner's wrongful conduct in at least the
> following ways:  (1) interference with valuable relationships with customers
> whose files were wrongly deleted by Warner, (2) lost income from

11

> customers who terminated premium accounts, (3) damage to its reputation
> and goodwill, and (4) costs incurred in investigations and attorneys fees to
> uncover the full magnitude of Warner's DMCA abuse.

Counterclaim ¶ 38.  Discovery has revealed that Hotfile has no evidence to back up that conclusory allegation.

Both Hotfile and its damages expert, Dr. Matthew Lynde, have admitted that they are not aware of any complaints received from Hotfile users related to the takedowns of the counterclaim files.  SUF ¶ 2(a).  Neither Hotfile nor Dr. Lynde could identify even one user who terminated their premium subscription to the Hotfile service because of a notice sent on any of the counterclaim files.  SUF ¶ 2(b).  Nor were they aware of any Hotfile users who failed to sign up for a premium account as a result of a notice sent on any of the counterclaim files.  SUF ¶ 2(c).  Similarly, both Hotfile and Dr. Lynde admitted that they were not aware of any evidence that any of the counterclaim notices had any impact at all on Hotfile's "reputation and goodwill." SUF ¶ 2(d).[6]

The lack of injury-in-fact cannot be a surprise.  The relative handful of files Hotfile identifies in its counterclaim are truly *de minimis* in context of the millions of takedown notices Hotfile received.  *Compare* Foster Decl. ¶ 5 (Hotfile received takedown notices on ten million files) *with* Counterclaim Exs. A-D.  As discussed below, moreover, virtually all of the counterclaim files either are blatantly copyright infringing or were uploaded by repeat copyright infringers.  *See infra* 15.  Absent evidence of actual injury caused by the counterclaim notices, Hotfile's counterclaim must be dismissed.

C.  Hotfile's Damages Expert Does Not Prove Injury; He Merely Assumes It.

With no actual evidence, Hotfile hired an economist to "model" Hotfile's so-called injury.  The problem is that Dr. Lynde did not *determine* that the counterclaim notices in fact caused any injury; he also does not provide any *evidence* of injury on account of the counterclaim notices.  Hotfile's damages expert simply *assumes* injury.

Dr. Lynde calculated the profits Hotfile has lost since February 1, 2011, *i.e.*, after plaintiffs filed their copyright action.  Yeh Ex. F.  After plaintiffs filed this action, Hotfile, for

---

[6] The cost of investigating and filing a claim under 512(f) is of course not sufficient "injury" to state a claim under Section 512(f).  *Lenz*, 2010 WL 702466, at *10.  If it were, the "injury" requirement would be meaningless.

the first time, began systematically terminating at least one category of infringers, repeatedly infringing Hotfile uploaders.  Yeh Ex. B (Titov dep.) at 335:15-19; Yeh Ex. G (Titov ESI dep.) at 54:11-57:11.  ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████  Yeh Ex. B (Titov dep.) at 210:5-8; 335:15-19; 325:12-326:19.[7]  Promptly following the adoption of the three-strikes rule on February 18, 2011, Hotfile was forced to terminate thousands of users as repeat copyright infringers – over 22,000 Hotfile users.  Foster Decl. ¶ 9.  Word that Hotfile was terminating repeat infringers spread like wildfire in the pirate community and users began to leave Hotfile in droves.  Yeh Exs. K-M (user and media accounts of Hotfile's new termination policy); *see also id.* H-J (user emails to Hotfile complaining about new policy).  Hotfile's user traffic plummeted over 40% by some accounts.  Yeh Ex. N (Alexa report).  ███████████████████████  Yeh Ex. O (Hotfile's Suppl. Response to Interrogatory No. 6).

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████  Yeh Ex. B (Titov dep.) at 179:11-17; 182:2-10█

████████████████████████████████████████████████████████████████

██████████████████████  Yeh Ex. B (Titov dep.) at 179:11-180:18; 181:6-18; Yeh Decl. Exs. K-M (user and media accounts of Hotfile's new termination policy) & P (Hotfile's website announcement of new policy); and Hotfile received copyright infringement notices on well over a million files just since plaintiffs had filed their complaint, Foster Decl. ¶ 5.  In this context, the suggestion that a relative few mistaken takedown notices caused injury to Hotfile is not credible; it is at best sheer speculation.

Dr. Lynde did not even attempt to analyze the counterclaim notices to try to understand whether any of the notices might have had an impact on Hotfile.  Yeh Ex. A (Lynde dep.) at 92:14-93:4; 24:15-26:9.  Instead, Lynde made an assumption.  He assumed that all of Hotfile's lost profits were attributable *in equal proportion* to each copyright infringement notice Hotfile received during the post-February 2011 period.  Yeh Ex. A (Lynde dep.) at 75:5-75:17; 83:8-

---

[7] To be eligible for any DMCA "safe harbor" a service provider must adopt and reasonably implement a policy to terminate "repeat infringers."  17 U.S.C. § 512(i)(1)(A).  As will be discussed in plaintiffs' forthcoming motion for summary judgment, Hotfile's complete failure to implement a policy *pre-complaint* makes Hotfile ineligible for any DMCA "safe harbor."

84:13 & Yeh Ex. F (Lynde Rpt., Schedule 1).  With that assumption, Dr. Lynde assumed the very conclusion on which he purports to opine.  He assumed his ultimate conclusion.  From that assumption, the rest of Dr. Lynde's "analysis" is just arithmetic.  Once he assumed each takedown notice was responsible for an equal *pro rata* portion of Hotfile's lost profits, Dr. Lynde then simply allocated a portion of the lost profits to the counterclaim notices.  Yeh Ex. Q (Lynde Rpt.) ¶ 31.  That is all he did.  Dr. Lynde did not analyze the counterclaim notices for any actual impact; he did not attempt to determine whether Hotfile was in fact injured at all by any of the counterclaim notices.  Yeh Ex. A (Lynde dep.) at 92:14-93:4; 24:15-26:9; 28:11-29:5.  He assumed his conclusion.

That is not evidence, expert or otherwise.  "[H]is ultimate opinion on damages amounts to nothing more than his own *ipse dixit*.  Such an opinion is the product of an unreliable and inadmissible methodology."  *Martinez v. Rabbit Tanaka Corp.*, Case No. 04-61504-CIV, 2006 U.S. Dist. LEXIS 97084, at *40-41 (S.D. Fla. Jan. 5, 2006); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert").[8]

### D.  By Hotfile's Own Admission, the Counterclaim Files Did Not Cause Injury.

In the end, Dr. Lynde's assumptions are irrelevant, as both Hotfile and Dr. Lynde admit that Hotfile was not injured by the counterclaim notices.  First, Hotfile and Dr. Lynde agree that Hotfile is not injured by the removal of a file that is in fact copyright infringing, even if the takedown notice is sent by the wrong copyright owner.  SUF ¶ 3.  According to Dr. Lynde, "if it's a copyrighted material that shouldn't be on the website, yes.  It doesn't matter who sends the notice in terms of economic impact."  SUF ¶ 3(b).[9]  Second, Hotfile and Dr. Lynde further agree

---

[8] There are innumerable other flaws in the manner in which Dr. Lynde calculated "lost profits" and purported to "allocate" them to the counterclaim notices.  Those flaws are not material for present purposes, although they result in a dramatic overstatement of "damages" even accepting Dr. Lynde's overall model.  Warner of course reserves it right to more thoroughly address the flaws in Dr. Lynde's analysis at the appropriate time, if necessary.

[9] Section 512(f) embodies the same principle.  Notwithstanding the many different factual representations required to be included in a DMCA notice, *see* 17 U.S.C. § 512(c)(3)(A), Section 512(f) creates a cause of action only for knowing misrepresentations that "material or activity *is infringing*."  17 U.S.C. § 512(f)(1) (emphasis added).  Misrepresentations other than that a file is infringing are not covered by Section 512(f).

that Warner is not the cause of, or responsible for, the termination of a Hotfile user who had "three strikes" from infringement notices without counting the Warner counterclaim notices. SUF ¶ 4. Said Mr. Titov: "Hotfile doesn't consider [itself] to be entitled for income from repeated copyright infringers." SUF ¶ 4(a). Thus, as it must, Hotfile disclaims any injury from the removal of copyright infringing files or from the termination of repeat copyright infringers.

But after eliminating the counterclaim files falling into these categories, there is nothing left of Hotfile's asserted injury or counterclaim. In Exhibits A-D, the counterclaim identifies 890 files. As confirmed by stipulation of the parties, those Exhibit A-D files constitute the "definitive list" of files that make up Hotfile's counterclaim against Warner. None of those 890 files could have caused injury to Hotfile:

| 890 Counterclaim Files | | Files Remaining |
|---|---|---|
| 24 | Duplicate files  *SUF ¶ 5* | 866 |
| 19 | Warner-owned content Hotfile included in error  *SUF ¶ 6* | 847 |
| 271 | Electronic Arts (EA)-owned content; Warner authorized to send notices  *SUF ¶ 7[10]* | 576 |
| 477 | Copyright infringing files  *SUF ¶ 8* | 99 |
| 28 | Files that did not result in any Hotfile user termination (Notices before Hotfile began assigning strikes on 2/18/11)  *SUF ¶ 9* | 71 |
| 9 | Files that did not otherwise result in any Hotfile user termination  *SUF ¶ 10* | 62 |
| 53 | Files uploaded by repeat infringers who had three or more strikes not counting Warner counterclaim notices  *SUF ¶¶ 4, 11* | 9 |
| 9 | Files uploaded by six users, none of whom was a Premium user  *SUF ¶ 12[11]* | 0 |

---

[10] Warner has rights to distribute EA works in Brazil. Kaplan Decl. ¶ 21. In early 2011, Warner and EA were conducting a joint antipiracy operation. Kaplan Decl. ¶ 21. The objective was to identify infringing EA titles online, but not necessarily send takedown notices on those works. Kaplan Decl. ¶ 21. Some notices were inadvertently sent to Hotfile during a short period in early February. Kaplan Decl. ¶ 21. However, those noticed files were in fact infringing copies of EA works and EA ratified and retroactively authorized Warner to send the notices. SUF ¶ 7(b). Those were proper DMCA notices, as Hotfile itself has admitted. Yeh Ex. B (Titov dep.) at 233:17-234:6.

[11] Hotfile's expert Dr. Lynde admitted that any harm from *de minimis* termination of non-premium (and therefore non-paying) users would be at best "indirect" and "difficult to establish," and he acknowledged that he made no effort to calculate what that harm would be. Yeh Ex. A (Lynde dep.) at 21:25-22:13; 27:21-29:5; 87:21-88:5.

Hotfile witnesses admitted that Hotfile had no evidence that any of the counterclaim notices caused injury to Hotfile.  An analysis of the counterclaim files confirms as much. Because "injury" is an element of a cause of action under Section 512(j), Hotfile cannot state a claim based on the counterclaim notices.

## Conclusion

Hotfile has had its opportunity to try to discover a factual basis for its counterclaim.  It has not done so and cannot meet its burden of proving that Warner made a "knowing misrepresentation" in, or that Hotfile was "injured" by, any of the counterclaim notices.  For the foregoing reasons, Warner requests that the Court grants Warner's motion for summary judgment and dismiss Hotfile's counterclaim.

Dated: February 10, 2012

Respectfully submitted,

By: /s/_____
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone:  (305) 461-6880
Facsimile:  (305) 461-6887

MOTION PICTURE ASSOCIATION
 OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax:  (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone:  (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th Day of February, 2012, I served the following documents on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

Warner Bros. Entertainment Inc.'s Motion for Summary Judgment and Memorandum of Law in Support of Motion for Summary Judgment

Proposed Order on Warner Bros. Entertainment Inc.'s Motion for Summary Judgment

Declaration of Jennifer V. Yeh in Support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment, and accompanying Exhibits A-Q

Declaration of David Kaplan in Support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment

Declaration of Kerry Hopkins in Support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment, and accompanying Exhibit A

Declaration of Scott Zebrak in Support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment, and accompanying Exhibits A-B

Declaration of Dr. Ian Foster in Support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment, and accompanying Exhibit A


By: /s/_____
           Karen L. Stetson

17

**SERVICE LIST**

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*