UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 11-20427-CV-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
et al.,
        Plaintiff,
vs.                                          **SEALED**

HOTFILE CORP, et al.,

        Defendants,
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Plaintiff Warner Bros. Entertainment, Inc.'s ("Warner")

Motion to Permit Use at Trial or Summary Judgment of Titov Ex. 27 in its Entirety **[DE241]**, and an

Order of Referral entered by the Honorable Kathleen M. Williams on February 8, 2012. **[DE248]**. A

hearing on this Motion **[DE241]** took place before the undersigned on February 15, 2012.

Upon review of the Motion **[DE241]**, the Response **[DE263]**, the Reply **[DE290]**, supporting

affidavits, the court file, hearing argument from counsel, and being otherwise duly advised in the

premises, the undersigned makes the following findings.

*Prior Proceedings*

The background of this case is well documented in the court docket. As such, a full recitation

of same is not necessary for present purposes. Instead, the following is a summary of the litigation

history related to the discrete issues raised in the Motion at hand.

By way of background, the parties were before the undersigned on January 13, 2012 on various

discovery disputes. One of the matters addressed was a Motion by Warner to compel production of

documents that had been previously introduced during the deposition of Defendant Anton Titov

(Hotfile's 30(b)(6) witness)(hereinafter "the Titov deposition"). **[DE180]**. Hotfile, citing the currently

operative protective order, took the position that the production was inadvertent. **[DE206]**.  As such,

Hotfile sought to "claw back" the documents pursuant to same.  Id.

The record shows that Warner marked and used the documents during depositions in Bulgaria.

Fabrizio Decl. ¶ 6 **[DE211-1]**, Thompson Decl. ¶ 5 **[DE206-1]**.  Warner indicated that Titov was

questioned extensively on the document(s), and that Hotfile's counsel, who defended the deposition,

was provided with copies.  **[DE180]**. In this connection, Warner argued that neither Hotfile, nor its

counsel, raised any objections as to work product, privilege, or inadvertent production until the end of

the deposition – after Titov had given testimony that undermined Hotfile's claims against Warner. Id.

Under the operative protective order, a party may "claw back" a privileged document that is

produced "inadvertently." Protective Order ¶¶ 18- 20. **[DE68 ]**.  According to Warner, Hotfile failed

to carry its burden to show that this exhibit to the  Titov deposition, or its production, was truly

"inadvertent." Id. Even if both were shown, Warner argued that any privilege that existed has been

waived.

Hotfile, of course, opposed the Motion, and argued that the document should have been returned

within five (5) days, as mandated by the protective order.  Hotfile also argued  that Warner's Motion

was untimely as it was filed long  after the five days mandated by the protective order.

On January 17, 2012, upon careful consideration, the undersigned granted-in-part the relief

requested and required that the document(s) be filed with the Court under seal.  **[DE227]**. The Court's

Order had the effect of maintaining the *status quo* and pertained only to a thirty-two (32) page subset

of the two-hundred ninety seven (297) page document.   In this connection, the Court  instructed the

parties to file an appropriate pleading as to the use of the document at trial, etc. **[DE227, 237]**.  Hotfile

appealed the Order to the district court on January 27, 2012. **[DE235]**.   In the interim, on February 1,

2012, Warner filed the instant Motion **[DE241]**. Judge Williams overruled the objections to this Court's Order as premature on February 8, 2012, and referred the instant Motion to the undersigned for appropriate disposition. **[DE248]**.

<em>Analysis</em>

Warner now seeks an Order allowing it to use the entire document in support of its summary judgment motions and/or in the trial of this cause. In the Motion, Warner argues that: (1) the production was not inadvertent; (2) it would suffer prejudice if the document is clawed back, because it has integrated same into its strategy, including preparation for depositions and drafting of pleadings; and that, (3) Hotfile has waived its work product protection as to the full document. **[DE241]**.

In this regard, Warner contends that the document in question was produced on two separate occasions during a four month period. Id. Specifically, two identical copies of the document used as Titov Exh. 27 were produced, one marked as Bates No: HF00036777 (with a 31 page attachment Bates No: HF00036778), produced on June 17, 2011, and one in October 2011 marked as Bates No: HF2866338 (with the 31 page attachment Bates No: HF02866339). Fabrizio Decl. ¶3 **[DE211-1]**. Warner argues that the document contained no markings to indicate that it was created by, or at the direction of, counsel. The document(s), says Warner, is critical to its defense against Hotfile's counterclaim, because it shows that: (1) Hotfile's personnel knew that there were certain files, as to which Warner had sent takedown notices, that were still infringing; (2) Hotfile knew about supposed mistakes in Warner's takedown notices as early as February 2011, months before it brought them to Warner's attention; thus, allowing the errors to accumulate; and that (3) Hotfile's internal non-legal personnel were capable of determining when a file on Hotfile's system was copyrighted and who the owner was. **[DE241]**.

Hotfile explains that the document at issue was created at the direction of its counsel in order to

3

"compile a list of Warner's 'takedown' demands regarding content to which Warner had no relationship."

[DE263].  Specifically, Hotfile claims that  the document(s) at issue  −  entitled "WB links" - contains

links to content  at Hotfile that was taken down by Warner despite its having no discernable relationship

to its content.  Id.   The list, says Hotfile,  exists only as to Warner, and was prepared for the sole purpose

of the preparation of a counter claim.  Id.

      Hotfile notes that it produced over one million documents, relying on the clawback provision in

the protective order.  Id.  Despite efforts to screen the document produced by using, among other things,

key word searches, Hotfile concedes that it inadvertently produced the WB links document.  Hotfile

explains that the document was not "picked up" because it did not contain any attorney name, law firm

name or work product legend. Id.   Four other copies of the same document, however, were caught during

a manual review.  Those copies were withheld on work-product grounds.  Id.

      In Hotfile's view,  Warner knew of the protected status of the WB links document as early as

March 2011, and exploited same.  Id.  Hotfile accuses  Warner of failing to honor the "claw back"

provision when asked to destroy or return all copies of the document(s).  Id.  Hotfile also contends that

the Protective Order *expressly* forbids Warner from asserting that Hotfile lacked due care in producing

the document(s).  The undersigned disagrees.

      The Protective Order specifically provides, "Nothing in this Order, shall preclude a party from

arguing that the production of the allegedly inadvertently produced document was not inadvertent or that

conduct  since  production  of  the  allegedly  inadvertently  produced  document  constitutes  a  waiver.

Protective Order ¶ 20.  [DE68].  Thus, in this Court's view, Warner is well within its rights to make such

assertions.  While Hotfile is correct that this is but "one sentence" in the Protective Order, it is one

sentence that the Court cannot ignore.

      That does not, however, change what occurred here.  Upon careful review, it is the finding of this

4

Court that Hotfile's production of the document(s) does appear to be inadvertent. In fact, it is surprising that more instances of inadvertent production, other than the ones of record, have not taken place. The sheer magnitude and volume of the documents produced herein are conducive to such a result. The inadvertent nature of the production, however, is but one of the factors that the Court must consider.

*Involuntary Waiver of Privilege Through Inadvertent Disclosure*

Federal law governs the application of the work product doctrine. Frontier Refining Inc. v. Gorman-Rupp Co., 136 F.3d 695, 702, n. 10 (10th Cir. 1998). However, in this Circuit, there is scarce authority as to what exactly constitutes a waiver of work product. Chick-fil-A v. ExxonMobil Corp., 2009 WL37633032, No. 08-61422-CIV, at *3 (S.D. Fla. Nov. 10, 2009). There is equally scarce precedent as to which party bears the burden of demonstrating waiver.

The Fifth Circuit has found that the burden lays with the party asserting that a waiver has occurred. Other circuits have found to the contrary. Live Nation Worldwide, Inc. v. Cohl, et al, 2001 WL 5597348, No. 10-24144-CIV, at *2 (S.D.Fla. Nov. 17, 2011)(citing Ecuadorian Plaintiffs v. Chevron Corp., 619 F. 3d 373, 379 (5th Cir. 2010)). For present purposes, the result would likely be the same.

Prior to the enactment of Fed.R.Evid. 502, state law governed the waiver of attorney-client privilege though inadvertent disclosure. The five part test under Florida law, i.e., the relevant circumstances tests, required the Court to look at: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the production; (2) the number of inadvertent disclosures; (3) the extent of disclosure; (4) any delay and measures taken to rectify the disclosures; and (5) whether the overriding interests of justice would be served by relieving a party of its error. See Lightbourne v. McCollum, 969 So.2d 326, 334, n. 6 (Fla. 2007).

Recently, however, the Federal Rules of Evidence were amended to include Rule 502, as follows.

(b) Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure *does not* operate as a waiver in a federal or state proceeding if:

5

(1) the disclosure is inadvertent;

(2) the holder of the privilege or protection took reasonable steps to prevent disclosure; *and*

(3) the holder promptly took reasonable stops to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed.R.Evid. 502.[1] (emphasis added).

Having determined above that the disclosure was inadvertent, we turn to the second and third prongs of the Rule.

### *Reasonable Steps Taken by Hotfile to Prevent Disclosure*

The Court has carefully considered all the pleadings, declarations, exhibits and all other evidence submitted in this case.  Upon review of same, the undersigned concludes that Hotfile did take certain steps to prevent disclosure.  Such efforts are well documented in the Court record.  There is no need to recite these efforts by chapter and by verse.

Unfortunately, the steps that were taken by Hotfile may not have been enough. For example, as noted above, no attorney or law firm name is depicted on the document.  Likewise, none of the pages are marked as "confidential" "attorney's eyes only" "work product" or "privileged." See e.g., U.S. v. Citgo Petroleum Corp., 2007 WL 1125792, at *5, No: CR-C-06-563  (S.D. Tex. April 16, 2007)(noting the importance of, among other things privilege markings in massive document productions).

Objectively speaking, it may not have been immediately apparent to Warner, or anyone else reviewing the document(s), that same was generated by counsel in preparation for litigation.  This is especially true given the contentious  nature of this case and the sensitive documents that are at issue.

### *Reasonable Steps to Rectify the Error*

---

[1]The Rule's Historical Notes indicate that it is designed to apply to *all proceedings* pending as of September 19, 2008, "insofar as is just and practicable." Fed.R.Evid. 502, Historical Notes regarding Effective and Applicability Provisions (2009).(emphasis added).

The record shows that the document was produced on June 17, 2011 and then again on October 14, 2011 during discovery.   Thompson Decl. ¶ 2. **[DE206-1]**.   Hotfile contends that it notified Warner *via* email on November 28, 2011, that the document, or a part thereof, had been inadvertently produced as Bates No: HF02866338.    At that same time, Hotfile demanded the return or destruction of the documents.  Id. at ¶4.   Another version of the document had been produced as Bates No: HF00036777, and  was recalled separately on December 3, 2011.  Id.

The record reflects that the first thirty-32 pages of this document were used a few days later  on the first day of the Titov deposition in Bulgaria (December 5-8, 2011).  Id. at ¶¶ 6-7.  Warner claims, that Hotfile's counsel did not object to the questioning or the introduction of the document on the basis of work product. Fabrizio Decl.  ¶¶ 6-10. **[DE211-1]**.   Warner suggests that it was not until the conclusion of the deposition, later that day, that Hotfile's counsel asserted the work product privilege.  Id.

Hotfile explains, among other things, that  its counsel did not have access to the complete list of clawed-back documents while in Bulgaria.  Thompson Decl. ¶ 10. **[DE206-1]**.  Hotfile's counsel did, however, reserve "a potential objection," and alerted Warner's counsel that he had previously asked for the return of " some inadvertent[ly] produced documents that were written in Bulgarian that contained work product."  Id. at ¶ 8.  Hotfile's counsel conceded that he did not know with certainty if those were the clawed back documents, because they were in Bulgarian.  In this connection, Hotfile cites, among other things,  the hardships involved in defending a deposition "ten time zones [away]" and the impossibility of checking to make sure that each exhibit marked was in compliance with the protective order.  Id.   The Court is sympathetic to the hardships of litigating document intensive cases and conducting discovery abroad.  The language barriers and translation issues, coupled with the sensitive nature of the information, only add to the hardship.

Having considered all of Hotfile's arguments, including the Protective Order, the supporting

declarations, the undersigned finds that Hotfile did take certain steps to rectify the inadvertent production. However, as noted above, such steps may not have been enough.

As correctly noted by Hotfile, the inadvertent disclosure of privileged documents during discovery is insufficient, without more, to constitute a wavier of the privilege. In re Southeast Banking Corp., Securities and Loan Loss Reserves Litigation, 212 B.R. 386, 392 (S.D.Fla. 1997). Here, looking at the totality of the circumstances, and the record herein, in this Court's view there is more. Warner had this document, in some form or another, in its possession for approximately five (5) months before Hotfile asked for its return. Again, the record shows that none of the versions of the document were marked or flagged as "attorneys eyes only," "work product" or "privileged." In the meantime, Warner, having had the document in its possession for months, has integrated same into its litigation strategy. **[DE241]**.

As this Court has noted before, "the cat is already out of the bag." The parties have been, and will continue to be, affected by the disclosure of these documents.   There is little that can be done at this late stage to undue counsel's having viewed, analyzed and incorporated same into Warner's litigation strategy and counterclaim defenses.   In sum, the  documents have been out there for Warner's staff, counsel, paralegals and others to view in the course of several months .  It would probably be difficult, if not impossible, to determine what use it has been put to, and equally impossible to remedy the wrong.

Accordingly, consistent with the above and foregoing, the undersigned finds that despite the inadvertent nature of the production, any work product privilege that existed has been waived. Therefore, it is **RESPECTFULLY RECOMMENDED** that Warner's Motion **[DE241]** be **GRANTED**.

Lastly, the Court would be remiss if it did not note the following. Having had the parties before this Court on numerous occasions, the undersigned is of the opinion that all parties have conducted themselves in good faith throughout the course of this litigation. In this Court's view, nothing that took place here, on either side,  rises to the level of misconduct, and as such, the court makes no such findings.

Pursuant to 28 U.S.C. §636(b)(1)( c), the parties may file written objections to this Report and Recommendation with the Honorable Kathleen M. Williams, United States District Judge, within fourteen (14) days of receipt.  Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149, reh'g denied, 7 F.3d 242 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958, 109 S. Ct. 397 (1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida on this 28th day of February 2012.

**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc:     Hon. Kathleen M. Williams
        Counsel of Record

9