```
FILED by ___ D.C.

MAR 0 5 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI
```

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF FLORIDA
2         MIAMI DIVISION

3          Case No. 11-CV-20427-WILLIAMS/TURNOFF

4

5    DISNEY ENTERPRISES, INC.,
     TWENTHIETH CENTURY FOX FILM
6    CORPORATION, UNIVERSAL CITY
     STUDIOS PRODUCTIONS, LLLP,
7    COLUMBIA PICTURES INDUSTRIES,
     INC. AND WARNER BROTHERS
8    ENTERTAINMENT, INC.,

9
              Plaintiffs,
10
                                     MIAMI, FLORIDA
     vs.                             FEBRUARY 15, 2012
11                                   (SEALED HEARING)

12

13   HOTFILE CORPORATION,
     ANTON TITOV AND
14   DOES 1-10,

15             Defendants.

16
        SEALED HEARING TRANSCRIPT ON MOTION & MEMORANDUM OF LAW TO
17   PERMIT USE AT TRIAL OF SUMMARY JUDGMENT OF TITOV EXHIBIT 27
      BEFORE WILLIAM C. TURNOFF, UNITED STATES MAGISTRATE JUDGE

18

19   APPEARANCES:

20   FOR THE PLAINTIFF:

21                         JENNER & BLOCK
                           1099 New York Avenue, N.W.
22                         Suite 900
                           Washington, D.C.
23                         BY: STEVEN B. FABRIZIO, ESQ.

24   REPORTED BY:          JERALD M. MEYERS, RPR
     TELEPHONE:            954-431-4757
25   E-MAIL ADDRESS:       CRJM@AOL.COM

1

2

3

FOR THE DEFENDANTS:

4

5

6

7

8

9

10          RASCO KLOCK REININGER PEREZ ESQUENAZI
            VIGIL & NIETO
            283 Catalonia Avenue
11          Suite 200
            Coral Gables, Florida 33134
12          BY: JANET T. MUNN, ESQ.

13

14

15

16

17

18

19

REPORTED BY:              JERALD M. MEYERS, RPR.
20                        J.M. COURT REPORTING, INC.
                          1601 N.W. 109TH TERRACE
21                        Pembroke Pines, FL 33026-2717
                          Telephone: 954-431-4757
22                        E-Mail Address: CRJM@AOL.COM

23

24

25

1    (Call to order of the Court)

2            THE CLERK:  All rise.

3            THE COURT:  Calling the case of Disney, Inc. et al

4    versus Hot File Corporation, et al., case number 11-20427-Judge

5    Williams.

6            We are here on plaintiff Warner Brothers motion to

7    permit use at trial or summary judgment of Titov exhibit 27 in

8    its entirety.  It is docket entry 241.

9            Appearances, please, starting with plaintiff.

10           MR. FABRIZIO:  Good afternoon, Your Honor.  Steven

11   Fabrizio on behalf of plaintiffs.

12           MS. MUNN:  Good afternoon, Your Honor.  Janet Munn on

13   behalf of the defendants.

14           THE COURT:  All right.  Have a seat everybody.

15           Now, before we get started, I am going to ask my law

16   clerk, and speak loud enough for the microphones to pick her

17   up, everything is being recorded, we had a ministerial

18   communication from Judge Williams chambers.  Maria.

19           THE LAW CLERK:  Just bare with me for a second.  I

20   want to make sure I have the right docket entry number up.

21           Okay.  Basically, the law clerk for Judge Williams

22   e-mailed me and asked me if you all wanted to come over and

23   discuss docket entry number 217 when you are done here.

24           217 is a motion to strike defendant Hot File and

25   Titov's, to strike plaintiff's putative rebuttal report of

1   Doctor Richard Waterman before the close of expert discovery on

2   January 17, 2012.  Does that ring a bell?

3             MS. MUNN:  It rings a bell, but it is not --

4             THE COURT:  Okay.  But were you able to hear what

5   Maria just said?

6             MS. MUNN:  Yes.

7             THE COURT:  Okay.  So what you will do is when you are

8   done with me and you leave here, I would contact, at a minimum

9   by cell phone, or something, Judge Williams' chambers and say

10  you are just coming from my hearing.

11            It was relayed to you that Judge Williams would like

12  to see you in connection with a certain motion.

13            MS. MUNN:  Okay.

14            THE COURT:  And you will get your instructions there.

15  Now, she is in trial now, by the way, as far as we know, but we

16  are passing on the --

17            MS. MUNN:  The message.

18            THE COURT:  -- the message, and we will leave it to

19  you to follow-up and comply with her wishes.  Okay?

20            MS. MUNN:  Thank you very much.

21            THE COURT:  Fair enough?

22            MR. FABRIZIO:  Thank you, Your Honor.

23            MS. MUNN:  Yes.

24            THE COURT:  Make a note of that, and you will do that

25  when you walk out of chambers here.

1        Now, counsel, we have reviewed everything, including

2   the transcript from the last hearing that we held, just so you

3   know that.  Okay.

4        Now, I will give counsel for plaintiff no more than 15

5   minutes.  I will give the defendant no more than 20 minutes,

6   and then I will give the plaintiff 5 minutes to reply.

7        Okay.  You are the person that I said looked like

8   Victor Mature, right?

9        MR. FABRIZIO:  I am, Your Honor, and I have since gone

10  back and looked up Victor Mature.

11       THE COURT:  Was I right?  Was it a compliment?

12       MR. FABRIZIO:  It was an undeserved compliment, Your

13  Honor.  Thank you.

14       Your Honor, I believe I will not need 15 minutes since

15  Your Honor clearly has the prior motion and the transcript in

16  mind.

17       I will begin by just saying is that when we went back

18  and examined the 32 page excerpt in relation to what we were

19  going to need for our summary judgment motion, what we had been

20  planning to use, what we came to realize was that many of the

21  files that are at issue in the counterclaim are in the back

22  part of the bigger exhibit, the 297 page exhibit.

23       So whether there are some files that are part of the

24  counterclaim within the 32 page document at the beginning of

25  the bulk of the files that are of interest to us that we want

6

1   to use in our counterclaim, come to the back of the document

2   which is I why we find ourselves back before you probably more

3   quickly than you would like and more quickly then I think even

4   we believed.

5        THE COURT:  Just keep your voice up.  Everything is

6   being recorded, and I need to hear you.

7        MR. FABRIZIO:  Yes, Your Honor.

8        The defendants, Hot File, their brief and their

9   arguments are identical to the arguments that they made last

10  time; arguments that Your Honor, in large part, at least

11  insofar as all of their arguments about the violations of the

12  protective order, arguments that Your Honor rejected, I am

13  happy to address them in detail, but the law of the case should

14  stand.

15       Your Honor has made findings.  I don't understand why

16  they continue to argue that particular point, particularly in

17  this motion where almost none of it is relevant.

18       This 297 page document was not used at the Titov

19  deposition; was destroyed on schedule; was not submitted to the

20  court out of time as they argue.

21       So, insofar as the larger document is concerned, not

22  only has Your Honor already ruled on those issues, but they

23  just simply have no bearing on the issue before Your Honor

24  today.

25       The issue before Your Honor today is whether the

1   larger document, the 297 page document, was produced in a

2   manner that is legally inadvertent such that, despite their

3   producing it and us having had it for 5 months and having

4   worked it into our case preparation, they cannot at the end of

5   the discovery call it back when there is nothing we can do to

6   readjust our plans, and that is exactly what happened here,

7   Your Honor.

8          The bottom line is that the reasons that we believe

9   this document cannot be handed back now, and we need to be

10   given access to it, is what we argued before.

11          We got the larger document 5 months before they clawed

12   it back.  In the context of this case, Your Honor, that is

13   almost the entire discovery period, and we built an affirmative

14   defense, actually two that were strongly influenced by it.

15          We planned our discovery based on it.  We took

16   discovery based on it, and first and foremost, Your Honor, it

17   would just be grossly unfair for us at this point, when they

18   claw it back literally with just a couple of weeks left in the

19   discovery period, to  claw back and say, "I am sorry.  You

20   cannot use it, even though you have been planning on using it

21   all of this time."

22          Second, Your Honor, as we discussed last time, this

23   document was produced not once but twice in two separate

24   productions pursuant to a discovery request in June and again

25   in October, and it is not a little document that is going to

1    sort of sneak by somebody.  You know, it is a 300 page

2    document.

3           The case law holds that that is a relevant fact for

4    Your Honor to consider, and maybe most important in this

5    context, after the prejudice, Your Honor, is that this document

6    was not produced in the throes of the major document

7    production.

8           One could say, and they have argued we have produced

9    1,000,000 documents.  You have to forgive a couple of documents

10   that got by, and we don't disagree with that as a general

11   premise, Your Honor, but this document was not produced in the

12   context of 1,000,000 documents.

13          The bulk of the document production in this case had

14   stopped long before October when this document was produced.

15          There was a discreet separate production related to

16   the counterclaim.  83 documents were produced in that

17   production.  Nothing was produced immediately before.  Nothing

18   was produced immediately later.

19          It was not as if this was, you know, one day in the

20   middle of a crunch on both sides.  It was a separate discreet

21   production in which only 83 documents were produced.

22          This 297 page document was one of them.  Of those 83

23   documents, defendants have clawed back 10 of them.

24          That means their argument is that they inadvertently

25   produced 1 in 8 documents from that October production.  That

1    is simply not reasonable, and I think I can put it finally,

2    Your Honor.

3            Notwithstanding that the last time we extensively

4    briefed and argued to Your Honor that defendants have the

5    burden of establishing that the production was inadvertent, and

6    as the case law we cited last time, and again this time makes

7    clear, they have to do more than say, "Well, we produced a lot

8    of documents and, you know, some get through."

9            They have to describe what they did in order to

10   attempt to prevent privileged documents from getting through,

11   you know, these screens, and the defendants didn't do that last

12   time we were before Your Honor, and they didn't do it again

13   this time.

14           There is no evidence put in the record.  There is no

15   declaration at all filed with their motion explaining to the

16   court how it is possible that what they claim, you know, should

17   be given the status of legally inadvertence was justifiable.

18           We all acknowledge that they didn't intend, to

19   subjectively intend to produce it, but they produced it under

20   circumstances where the law simply does not allow them to claw

21   it back 5 months later after another party has structured their

22   discovery and case planning around it.

23           Thank you, Your Honor.

24           THE COURT:  Thank you very much, counsel.

25           MS. MUNN:  Your Honor, it is true that the last time

1   we were here when Mr. Thompson argued before Your Honor that we

2   did attempt to have the court focus on the protective order

3   that was entered in this case and, respectfully, we believe

4   that the court did not appreciate the full gravity of the

5   protective order, and we have taken objections to the court's

6   ruling.

7           And for that reason I will speak again about the

8   protective order because that is really, although not the only

9   issue, it is certainly the beginning and one of the most

10  important things that the court needs to consider, and in

11  paragraph 20 of that protective order, the parties negotiated

12  and agreed to and, in fact, Mr. Fabrizio is the one who

13  suggested, as I understand it, the very language of that

14  paragraph which permitted the parties to have a claw back

15  procedure, and there is no time limit in that paragraph placed

16  for claw backs to occur and, indeed, the plaintiffs have fully

17  availed themselves of this protective order in paragraph 20 of

18  the protective order as recently as February 9th in this case,

19  and both sides have understandably, given the pace with which

20  they were producing many pieces of paper, although I believe

21  Hot file has produced many more than the plaintiffs have

22  produced, were clawing back things that were inappropriately

23  and inadvertently produced.  And when plaintiffs have asked Hot

24  File to return or destroy documents that they claimed

25  inadvertent production over, Hot file immediately complied.

1    And, in fact, in certain circumstances Hot File has even

2    alerted plaintiff to the fact that they found something they

3    thought was inadvertently produced which was what they were

4    supposed to do under the rules.

5         Plaintiff has not done that in this case.  Warner has

6    not done that.  Instead, what counsel did is take a document

7    that had the same subject matter and issues as one that was

8    clawed back, which on its face would reveal that it was of the

9    same nature and hold on to it for a very long time, never

10   revealing that it had it, in violation of Rule 4.4-4B of the

11   Florida Rules of Professional Conduct which govern this

12   proceeding and govern counsel's conduct in this case, since he

13   is admitted pro hac vice in this case, and our local rules

14   incorporate those ethics provisions.

15        He held on to it and planned to use it at a deposition

16   and told us, in papers recently filed, that he had incorporated

17   this into his strategy in defending against the counterclaim

18   which has been brought against Warner, and that is what this

19   document, the relevance of this document is to the

20   counterclaim, but even if he were correct and he had not known

21   that this was a privileged document, he certainly knew on

22   November 28th that this document had been clawed back, and he

23   still did not return it.

24        He was asked again for it a few days later on December

25   3rd.  And as far as I know, the document has never been

1    returned, and this violates the protective order entered by

2    Judge Jordan, which is still in effect in this case, a

3    stipulated order, by the way, and it also violates Rule 26(b)

4    5(b) of the Federal Rules of Civil Procedure and Amended Rule

5    502 of the Federal Rules of Evidence.

6         He was required to return the document and make no

7    further use of it, but he did not do this.  Instead, he

8    continued to use it.  He used it at a deposition; used it in

9    answer to a counterclaim and ostensibly will claim that he is

10   going to rely on it for defense of the counterclaim that has

11   been brought against Warner in this case.

12        The remedy for this in many cases is not to punish the

13   party that inadvertently produced the document, but under

14   Florida Rules of Professional Responsibility to disqualify

15   counsel and his law firm from even acting in the case.

16        So, it is, frankly, outrageous that he would come here

17   today and tell the court that this is somehow Hot File's fault.

18        The protective order makes it clear that parties can

19   claw back documents at any time.  And, indeed this court, the

20   Southern District before another magistrate, before Magistrate

21   Judge Torres found in the Rally case, in a circumstance where

22   the opposing counsel had possession of a document for two

23   months, that no waiver was found, and there is no reason for

24   the court to find waiver here under these circumstances.

25        The document was clearly inadvertently produced.  Four

1   copies of the document were I believe put on a privilege log,

2   or privilege was claimed for it, and it is clear that you would

3   not claim privilege over four copies of the document and fail

4   to claim it over two others.

5         So there is no justification in reason or logic or

6   anything else for Mr. Fabrizio to claim that this was not an

7   inadvertent production.  It clearly was, and the rules have

8   been amended; specifically Rule of Evidence 502 to account for

9   just these situations where millions of pieces of paper are

10  being produced, and it does not matter that it was part of a

11  production that only consisted of 83 documents.

12        The protective order does not limit itself to small

13  productions or only cover large productions.  It covers any

14  production, and it permits any party to claw back, just as

15  Warner has done in this case all along.

16        Mr. Fabrizio is also incorrect in saying that this is

17  a timely motion.  It is not timely, because if he wished to

18  utilize this, he had 5 court days from the date of the claw

19  back to bring a motion concerning it, and he did not do that.

20        There is simply no basis for the court to conclude

21  that this was not an inadvertent waiver.

22        The last time we were here, respectfully, I do not

23  think, in the context in which everything was presented, that

24  the court had an opportunity to really consider the protective

25  order and its provisions, and I would ask that the court look

1    at that anew in light of the case law that we have cited, which

2    are cases that specifically address the amendment to Rule 502

3    of the Federal Rules of Evidence and the provision of Federal

4    Rule of Civil Procedure 26(b)(5)(b) which is incorporated into

5    Judge Jordan's order and the provisions of the protective order

6    itself which make it clear that we had a right to claw it back,

7    but even if we didn't claw it back, Mr. Fabrizio should have

8    returned it.

9            That is what lawyers do.  When they get a document

10   that they reasonably should know is something that is

11   privileged, and in the context of this production with the

12   other document produced around it, 37 minutes, the other e-mail

13   that was created 37 minutes later, he should have known this

14   and he should have returned it, but even if we give him the

15   benefit of the doubt, he cannot, cannot benefit from his own

16   improper conduct in not returning this document under the claw

17   back provision.

18           That would be manifestly unjust, and it would be a

19   violation of the Federal Rules of Evidence, the Federal Rules

20   of Civil Procedure and Judge Jordan's protective order.

21           I would respectfully ask that the court look at the

22   cases that we have cited, which are newer cases involving claw

23   back provisions in orders, and those are cited in our brief so

24   that the court can see how other courts are dealing with this.

25           THE COURT:  We just got that yesterday, by the way.

1          MS. MUNN:  Thank you, sir.

2          THE COURT:  Is that right that?  We got that

3    yesterday, and I must admit I have not had a chance to fully

4    review your pleading.

5          MS. MUNN:  Well, I apologize for us having to file it

6    yesterday.  I had to go to Bascom Palmer on Monday and have a

7    laser procedure done on my eye.

8          THE COURT:  Did everything go well?

9          MS. MUNN:  Yes, so far.  Thank you.  It is an amazing

10   place, Bascom Palmer, but for that reason we were not able to

11   file it.

12         THE COURT:  Your timing is unfortunate because now you

13   have a clearer look at me.  You should have delayed it until

14   after this hearing.

15         MS. MUNN:  Well, my distance vision was fine.  It was

16   my near vision that was becoming a problem.

17         THE COURT:  Did it work?

18         MS. MUNN:  It is improved, but --

19         THE COURT:  When it is fully in effect, will you need

20   reading glasses?

21         MS. MUNN:  I probably will.  That is my fourth eye

22   surgery.  It was not lasik surgery.  It was to remove scar

23   tissue from a detached retinae.

24         THE COURT:  I see.

25         MS. MUNN:  It was surgery I had before.

1          THE COURT:  And you are still here today.  I feel bad.

2          MS. MUNN:  Well, it is necessary, and fortunately if I

3     abide by my doctor's instructions and don't try to read to too

4     much I should be fine, but that's why we were not able to get

5     it filed on Monday, and that was my fault.

6          THE COURT:  And what I will say, and opposing counsel

7     will agree, it has not affected your intellect or your legal

8     ability, that is for sure.

9          MS. MUNN:  Well, there may be other things that have

10    affected that.

11         Again, Your Honor, though, I think if the court looks

12    at what we have filed, this is a different motion concerning

13    the full document which last time the court was asked to

14    consider just a small excerpt.

15         Mr. Fabrizio has candidly admitted that now he

16    realizes he needs to use the back end of the document as he

17    says which was not the subject last time.

18         That should not be utilized.  It should be returned.

19    We have made objection to the other portion of the ruling.

20    That will be I assume heard by Judge Williams fairly shortly.

21    Our reply will be filed at the end of this week.

22         This is not a light matter.  It is not an easy thing

23    to come before the court and speak about what appear to be

24    improprieties, but, again, even giving opposing counsel the

25    benefit of the doubt on this, even if he is given the benefit

1   of the doubt, he should not profit from, whether intentionally

2   or inadvertently, if you will pardon upon the pun, was a

3   wrongdoing in something that needs to be remedied by this

4   court.

5            So I thank Your Honor.  Unless you have some

6   questions, I will sit down.

7            THE COURT:  Thank you, counsel.  I will give you 5

8   minutes if you need it.

9            MR. FABRIZIO:  Thank you, Your Honor.

10           Your Honor, last time when we were here, the exact

11  same arguments were made about the alleged improprieties, which

12  I have to say at this point I am starting to take a bit of

13  offense to.

14           There were no improprieties, and I forgive Ms. Munn

15  because she did not write this brief, and she has not been

16  involved in the discovery process intimately, but there were a

17  number of statements made that were just simply

18  counter-factual, among them the suggestion that we didn't

19  destroy all of the documents or return all of the documents in

20  response to the claw back.

21           We absolutely did, and Your Honor will recall when we

22  were before you last we told you we didn't have them except for

23  a copy that the court reporter had recently given us.

24           When we were before you last, Your Honor considered

25  these very issues and argued as the main argument again, and

1  you said the better argument is with the plaintiff here.

2       The technical arguments are not.  We followed the

3  rules, but the better argument here is with plaintiff, and went

4  on later at page 29 of the transcript to make clear that

5  because of the time that that document had been in our

6  possession and how integrated it had been into our work

7  product, you said, "It would probably be difficult, if not

8  impossible, to find out exactly what use it has been put to,

9  but that's not an unreasonable request."

10       So, Your Honor, the notion that we did not comply with

11  the protective order in our claw back obligations is just

12  simply false.

13       Plaintiffs have repeatedly identified documents that

14  on their face appear to be privileged and have called

15  defendants and have told them about them.

16       Of the 60 something documents that they clawed back in

17  that 3 day period or 4 day period, we didn't challenge any of

18  their claw backs except for this one, because this one didn't

19  satisfy the standards of inadvertence, given all of the

20  circumstances that we have described.

21       The notion that we should have known from looking at

22  this document that it was privileged and handed it back to

23  them, Your Honor, I am sorry.  I will say that pushes the

24  bounds of what is allowed advocacy.

25       When the lead counsel for defendants sat in the

1    deposition with the document in his hand while I questioned the
2    witness about the document, the lead counsel who knows what
3    work product they are working on, never said a word and never
4    objected.

5        The document on its face was not prepared by lawyers.
6    The document on its face was not to or from any lawyers.

7        The document on its face did not say it was work
8    product or privileged in any manner, and during this period
9    that we had this document, defendants themselves were taking
10   the position and filing motions that documents of this nature
11   were not privileged.

12       So the notion that we should have known, I am sorry,
13   Your Honor, just pushes the line a little bit too far for my
14   taste.

15       We also just received defendant's papers late last
16   night, so we have not had a chance to fully digest them.  And
17   if Your honor is not going to rule today, we would like the
18   opportunity to file a reply.  We think Your Honor can rule and
19   I can address a couple of those issues quickly.

20       The Rally case that the defendants cite did not
21   involve the application of the Rule 502 at all, and in that
22   case, as I understand it, it was not disputed that the document
23   was inadvertently produced.  So it is inapposite.

24       And as for defendant's new found argument, an argument
25   that they didn't make at all last time, that somehow all of the

1   authorities we cite with regard to inadvertent production,

2   which they cannot meet on the merits, they have not addressed

3   them on the merits.

4          They say those cases are not good law any more because

5   502 is amended and none of that law is good anymore, well,

6   that's just nonsense, Your Honor.

7          The authorities, they have cited, the outlier cases,

8   but in the main, in the bulk of the cases including, Wright &

9   Miller, make absolutely clear, and this is Wright & Miller,

10  applying Rule 502, it is at Federal Practice and Procedure,

11  Section 2016-3 or dot 3, the pre-2008 case law remains

12  pertinent to the application of this rule, meaning 502.

13         Since Rule 502 has been amended, courts have routinely

14  looked to the pre-amendment cases in deciding the question of

15  whether something was reasonably or inadvertently produced.

16         I will not burden the court unless Your Honor would

17  like the citations in the record, but the cases are legion,

18  including of all of the more recent cases saying that one

19  Sensient Colors, this is 209, U.S. District Lexis 81951, a

20  District of New Jersey from September 9, 2009, again the court

21  is saying that the court does not question that the defendants

22  subjectively inadvertently produced the document which, of

23  course, is always the case when you unintendedly produce a

24  document it is inadvertently produced, but the court said, "To

25  determine if plaintiff's production was inadvertent, the court

1   must look at a multitude of factors, including whether

2   plaintiff took reasonable precautions to prevent errors."

3          These are all post 502 amendment cases.  There has

4   been no change in the law in that regard.

5          The pre-amendment cases are still applicable, and the

6   law that they argue for, the rule that defendants argue for,

7   that the only document that is not inadvertently produced is

8   one that they knowingly and intentionally produced has never

9   been the law.

10         It was not the law before the amendment 502.  It was

11  not the law in 502, and it has not been the law since 502 was

12  amended.

13         So, Your Honor, again, it really just comes down to

14  basic fairness.  If Your Honor agrees that we did something

15  wrong, then we stand ready to, you know, take responsibility

16  for that, but we do not believe we did.

17         We returned the documents when we understood that they

18  were asking for them back.  Before the busiest period of this

19  case, they produced a string of 60 something Bates numbers, and

20  as we were getting on planes to go to Bulgaria, and they are

21  complaining that we didn't digest all of that and pull the

22  documents not only out of our file cabinets, but out of all of

23  the work papers that those documents had managed to find their

24  way into before a deposition that took place on Monday, you

25  know, after they gave us an e-mail on Saturday, it is just

1  unreasonable.

2            A protective order does not require that.  No

3  protective order requires a party to do what is impossible or

4  what is unreasonable, and that is what it was.  It was

5  sandbagging.  If they did it on purpose, it was sandbagging of

6  the worse kind.

7            Thank you, Your Honor.

8            THE COURT:  Thank you, counsel.  First of all, I

9  compliment respective counsel.  This oral argument was very

10  helpful to the court and helpful for the record.

11            I am not going to rule from the bench as I try to do

12  in these discovery matters, but I am not going to rule from the

13  bench in this case, one of the reasons being that I would like

14  to digest the defendant's response that we received yesterday,

15  and I will give you the opportunity, if you desire, in a timely

16  fashion to file a written reply.

17            MR. FABRIZIO:  Thank you, Your Honor.

18            THE COURT:  But other than that, it is my expectation

19  to, as expeditiously as possible, to get out a ruling on this

20  discovery matter.

21            Maria, is there anything else?

22            THE LAW CLERK:  Yes, Judge.  Judge Williams law clerk

23  is asking whether or not the parties are going to be coming

24  over.

25            THE COURT:  That is a new development?

23

1          THE LAW CLERK:  A very recent development.

2          THE COURT:  All right.

3          MR. FABRIZIO:  The benefits of e-mail.

4          THE COURT:  Okay.  Yes.  You have just heard the

5   communication, and it is, just for the record, that my deputy

6   received an e-mail, passing it on to my law clerk that Judge

7   Williams wants to know whether you are coming over there.

8   Maria, am I right so far?

9          THE LAW CLERK:  Yes.

10          THE COURT:  So I would say go over there, and my

11   deputy will e-mail them back saying they are on their way.

12          Would that be accurate and acceptable to everybody?

13          MR. FABRIZIO:  It would, Your Honor.  It may be that

14   Ms. Munn does not want to address that issue today.

15          THE COURT:  That's between you and Judge Williams.

16          MR. FABRIZIO:  We will go over and talk to Judge

17   Williams.

18          THE COURT:  I am just the messenger here.

19          MR. FABRIZIO:  I understand, Your Honor.

20          THE COURT:  Okay.  Yes, Maria?

21          THE LAW CLERK:  Did you want to set a deadline for the

22   reply because there are time constraints involved in this case.

23          THE COURT:  Well, as to the time under the rules you

24   have to file your reply.

25          MR. FABRIZIO:  There is, but I think your law clerk

1    was referring to the time.

2              We have already filed our motion for summary judgment.

3    So the only time we could make use of this document on the

4    summary judgment schedule is if we had a ruling in time to use

5    the document before reply briefs go in, and that is probably in

6    about 3 weeks or so.

7              THE COURT:  So you are saying that if you are going to

8    be able to use the document, the issue that is before me, this

9    exhibit, right, exhibit 27, you need to have it in your hands

10   within the next 3 weeks.  The sooner the better.

11             MR. FABRIZIO:  Yes, Your Honor, because it is

12   thousands of entries, and we need to do an analysis on it.

13             THE COURT:  Is that the issue that you were raising

14   with me, Maria.

15             THE LAW CLERK:  Yes, Judge.

16             THE COURT:  So does that change it?  If you are going

17   to file a reply, then we will rule.  Of course, we are going to

18   expedite the ruling.

19             THE LAW CLERK:  Of course, yes.  You would want it as

20   expeditiously as possible.  You just didn't give them a date.

21   That's why I am asking.

22             THE COURT:  They need a date to file the reply?

23             THE LAW CLERK:  Yes.

24             THE COURT:  Yes.  That is what I thought you were

25   saying.

1          Okay.  Today is Wednesday.  Okay.  You don't practice

2    in Sofia, right?  It is in New York?

3          MR. FABRIZIO:  It is in Washington, D.C.

4          THE COURT:  It is in Washington.  Okay.  Do you think

5    you can get us something by close of business Monday?  Would

6    that be okay?

7          THE LAW CLERK:  Sure.

8          MR. FABRIZIO:  Yes, Your Honor.

9          THE COURT:  We are going to get to work on this, of

10   course.

11         MR. FABRIZIO:  No.  We appreciate that.

12         THE COURT:  We want to carefully review the response.

13   Would close of business Monday be okay?

14         MR. FABRIZIO:  That would be fine, Your Honor, and we

15   will keep it brief, since we have already had a chance to

16   present some of our argument.

17         THE COURT:  I am not even going to make it mandatory.

18         MR. FABRIZIO:  Okay.

19         THE COURT:  Do you follow me?

20         MR. FABRIZIO:  I do.

21         THE COURT:  But we need all of the help we can get,

22   and I want to be fair to you.  There may be something else that

23   you would want to put in that is not new.

24         MR. FABRIZIO:  I appreciate it.  All right.  And if

25   you want to tell us tomorrow that you going to rule for us, we

26

1    will save ourselves the trouble.

2            THE COURT:  Maria, have I covered everything that I

3    need to do?

4            THE LAW CLERK:  You have, yes.

5            THE COURT:  Counsel, is there anything else?

6            MR. FABRIZIO:  No, Your Honor.  Thank you very much.

7            MS. MUNN:  No, Your Honor.  Thank you very much.

8            THE COURT:  I will let you go over to Judge Williams.

9            (Whereupon the proceedings were concluded)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T E

3            I hereby certify that the foregoing is an accurate

4     transcription of proceedings in the above-entitled matter.

5
      FEBRUARY 29, 2012        S/JERALD M. MEYERS
6     _____        _____
          DATE                     JERALD M. MEYERS RPR-CM
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25