# EXHIBIT 4

Page 1

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF FLORIDA

3                    CASE NO. 11-20427-WILLIAMS

4

5    DISNEY ENTERPRISES, INC.,    )
     TWENTIETH CENTURY FOX FILM   )
6    CORPORATION, UNIVERSAL CITY  )
     STUDIOS PRODUCTIONS LLLP,    )
7    COLUMBIA PICTURES            )
     INDUSTRIES, INC., and        )
8    WARNER BROS. ENTERTAINMENT   )
     INC.,                        )
9                                 )
                                  )
10   Plaintiffs,                  )
                                  )
11                                )
     v.                           )
12                                )
     HOTFILE CORP., ANTON TITOV   )
13   and DOES 1-10,               )
                                  )
14   Defendants.                  )

15

16

17              Deposition of JAMES BOYLE

18              (Taken by the Plaintiffs)

19              Raleigh, North Carolina

20              December 21, 2011

21

22

23   Reported by:    Marisa Munoz-Vourakis -
                     RMR, CRR and Notary Public
24   TSg Job # 44315

25

Page 2

```
 1    APPEARANCE OF COUNSEL:

 2    For the Plaintiffs:

 3              DUANE POZZA, ESQ.

 4              Jenner & Block

 5              1099 New York Avenue, NW, Suite 900

 6              Washington, DC 20001

 7

 8

 9

10    For the Defendants:

11              DEEPAK GUPTA, ESQ.

12              Farella Braun & Martel

13              Russ Building

14              235 Montgomery Street

15              San Francisco, CA 94104

16

17

18

19              Deposition of JAMES BOYLE, taken by the

20    Plaintiffs, at Office Suites Plus, 3737 Glenwood

21    Avenue, Suite 100, Raleigh, North Carolina, on the 21st

22    day of December, 2011 at 11:04 a.m., before Marisa

23    Munoz-Vourakis, Registered Merit Reporter, Certified

24    Realtime Reporter and Notary Public.

25
```

1            BY MR. POZZA:

2       Q.      Are you aware of whether all documents in

3  response to topic number eight have been produced?

4            MR. GUPTA:  Objection, that's vague

5       and ambiguous and it lacks foundation.

6       A.      Yes, I believe they have.

7       Q.      Are you aware of whether all documents in

8  response to topic number nine have been produced?

9            MR. GUPTA:  Objection.  Same

10      objection, once again it lacks foundation

11      and it's vague and ambiguous, to the extent

12      it's being formulated specifically in the

13      passive voice.

14      A.      Yes, I believe those documents have been

15  disclosed.

16            MR. POZZA:  I'd like to mark Exhibit

17      3.

18            (The document referred to was marked

19      Plaintiff's Boyle Exhibit Number 3  for

20      identification.)

21      Q.      Are you familiar with this document?

22      A.      Assuming that this is an unmodified version

23  of my expert report, yes, I am.

24      Q.      I'll represent that it is.

25            What is this document?

1          A.       This is my expert report in this case.

2          Q.       It describes a study you performed on

3     behalf of the defendants in this case?

4                   MR. GUPTA:  Objection, leading.

5          A.       Yes, it does.

6          Q.       What was the methodology of your study?

7                   MR. GUPTA:  Objection, that's vague

8           and ambiguous.

9          A.       Can you be a little more precise?  Would

10    you like me -- I'm happy to talk about the methodology

11    of the study.  I just -- which I lay out in some detail

12    in the report, and we can go through it, which would be

13    my preference, carefully, but I want to know which

14    aspect of the methodology you want me to answer?

15         Q.       We'll go through it carefully.

16                  What was the hypothesis, if any, that you

17    were testing in your study?

18                  MR. GUPTA:  Objection, that's vague

19           and ambiguous.

20         A.       There were at least two hypotheses that I

21    was testing; the first was that Hotfile was being used

22    for the distribution of content that was either clearly

23    noninfringing or highly likely noninfringing.

24                  The second related hypothesis was that some

25    of those who were distributing content on Hotfile that

1        not in evidence and it's vague and

2        ambiguous.

3        A.      The list of noninfringing uses that I

4    considered in this report were free and open source

5    software, cultural material made available under

6    licenses, such as creative commons licenses and public

7    domain material.

8        Q.      And did you explore the distribution of

9    those three different kinds of materials?

10             MR. GUPTA:   Objection, that's vague

11        and ambiguous.

12        A.      Could you clarify the question, please?

13        Q.      The original question was to list examples

14    of the uses of the Hotfile system you studied.  So my

15    question is, did you explore the distribution of those

16    three different kinds of materials as opposed to say

17    the storage?

18             MR. GUPTA:   Objection, once again,

19        that assumes facts not in evidence, calls

20        for speculation and it's vague.

21        A.      I would say that with some of the examples

22    that I was looking at, particularly open source

23    software, it appeared that competitors were uploading

24    the material or people were uploading the material,

25    which were open source licenses, and then it was being

1    downloaded by many, many others.  That would seem to be

2    an example of distribution.

3                Some of the other kinds of uses, for

4    example, some of the public domain material consistent

5    either with distribution or with storage, and it's

6    conceivable, of course, that while the person who

7    uploaded the material to Hotfile did not mind other

8    people downloading it, that they also used it as their

9    own source of storage.

10               So, for example, were I an open source

11   developer who wished to make my software available to

12   the world, I could use Hotfile for that purpose, and I

13   had evidence that people did use it for that purpose,

14   but I might also use Hotfile as a way of storing the

15   material myself.

16       Q.    So the next sentence in the report says,

17   defendant's counsel asked me to study the use of the

18   Hotfile service to store or distribute or download the

19   types of material described above, and it goes on.

20               Do you see that?

21       A.    I do.

22       Q.    So you did study the use of the Hotfile

23   service to both store and to distribute these three

24   different types of material?

25               MR. GUPTA:  Objection,

1      Q.      Turning to paragraph six, the last sentence

2    there, how did you determine whether Hotfile's

3    affiliate program compensated the open source software

4    developers for the software they write and freely

5    distribute?

6              MR. GUPTA:   Objection, assumes facts

7         not in evidence.

8      A.      I looked at two of the specific authors of

9    open source software identified in the study, that is

10   to say, JDownloader on one case and iREB and sn0wbreeze

11   on the other.   I identified those who were uploading

12   that material from a variety of pieces of evidence,

13   including statements on the web site from which the

14   material originated, links directly to Hotfile and so

15   on.

16              I then asked Elysium Digital to find out

17   whether someone who appeared to be this person or to be

18   affiliated with this person was actually a member of

19   the affiliate program.   I discovered in both of those

20   cases that they did appear to be.

21              In addition, I determined that the

22   affiliate program compensates people for files that are

23   downloaded.   From those pieces of evidence, I concluded

24   that A, some open source developers were using Hotfile

25   to distribute their material.   B, it appears that they

Page 53

1    were members of the affiliate program.  C, it appeared

2    that members of the affiliate program who were using

3    Hotfile to distribute their service would be

4    compensated.

5         Q.    Did you examine other ways in which those

6    developers were being compensated?

7              MR. GUPTA:  Objection, that's vague

8          and ambiguous and would call for

9          speculation.

10        A.    When you say those, do you mean the

11   specific ones to which I just referred?  Do you mean

12   all open source software distributors?

13        Q.    I mean, the specific ones to which you

14   referred, specifically the developer of sn0wbreeze and

15   iREB.

16             MR. GUPTA:  I'd like to lodge the same

17         objection and also add foundation.

18        A.    I am not aware of other methods through

19   which the developer of iREB and sn0wbreeze is

20   compensated, but I simply don't know.  I was looking at

21   the affiliate program.

22        Q.    Did you consider doing a representative

23   statistical sample of the uses of Hotfile as a whole?

24             MR. GUPTA:  Objection, it's vague and

25         ambiguous.

1      Q.      Are you aware of -- do you believe that

2   there is data that would show the uses of the site by

3   those premium users?

4           MR. GUPTA:  Objection, it's vague and

5       calls for speculation.

6      A.      I am not aware of that data.

7      Q.      So sub-iii, 9 sub-iii, let's start in the

8   middle of the sentence, I'm going to ask about this

9   language:  Services, such as Hotfile, fill a gap in

10   internet's architecture by providing a convenient and

11   generic method of distributing or storing files that

12   are too large for e-mail.

13           Do you see that?

14      A.      I do.

15      Q.      What is the gap in the internet's

16   architecture to which you are referring?

17      A.      The internet, the general internet, meaning

18   the whole packet switched system, allows, obviously,

19   certain forms of communication very easily.

20           For example, e-mail communication can

21   travel over the internet, as it used to over

22   proprietary systems, as a set of packets.

23           However, while e-mail is very easy to use

24   and people can easily log on to it and use it, and many

25   other things, such as web browsing are very easy to do,

1   one thing which is relatively hard to do over the

2   internet, without using a service such as Hotfile, is

3   to transfer a large file, and in fact, this has been

4   the subject of, you know, much commentary, much

5   internet humor, to the extent that that isn't an

6   oxymoron.  This is a difficult thing to do.

7           In my personal experience, it is hard to

8   collaborate with colleagues around the world if one

9   needs to transfer large files, files that are too large

10  for e-mail, which is something that I sometimes need to

11  do, and so I personally have used services like

12  YouSendIt to transfer such files.

13          When I spoke of the gap in the internet's

14  architecture, I meant that without a service of the

15  kind that Hotfile appears to provide, it would be

16  difficult, if not impossible, for those that did not

17  own their own domain name or did not have the

18  capability to upload to a web page to share those large

19  files across the internet.

20      Q.      What about using an FTP?

21              MR. GUPTA:  Objection, lacks

22       foundation, calls for speculation.

23      A.      FTP is certainly a method which experienced

24  users can use.  First of all, I think many people

25  nowadays won't even know what FTP stands for.  It

1    stands for file transfer protocol.  Many browsers no

2    longer have it as a standard feature.  There's actually

3    evidence along that fact.  I think people find it a

4    difficult method to do it.

5              In order to transfer it, ideally, it's

6    actually much easier if you have your own server onto

7    which the files were loaded, in which case people can

8    download it using the conventional HTTP, the

9    conventional method over the web.

10             So FTP is certainly a method, but I don't

11   think it's a method that is either convenient or offers

12   all the features of services such as YouSendIt or

13   Hotfile.

14        Q.    You testified earlier, correct me if I'm

15   wrong, that you're not familiar with how Bittorrent

16   technology works?

17        A.    That is correct.  I know in the abstract.

18   I believe Bittorrent to be appear to be a file sharing

19   system, but beyond that, I know very little.

20        Q.    So do you know whether or not Bittorrent is

21   useful for distributing large files?

22             MR. GUPTA:  Objection, calls for

23        speculation.

24        A.    I do not.  I do not believe that Bittorrent

25   provides a stable URL from which authorized versions of

1    on Hotfile was one of the searches?

2        A.    Yes.

3        Q.    For public domain materials, would you

4    describe this as a large number of downloads of public

5    domain content from Hotfile?

6              MR. GUPTA:  Objection, it's vague.

7        A.    Certainly not as high as the 1.7 million

8    download figure for the open source programs.  I

9    included this because, as I understand the test in

10   Sony, the court in Sony and subsequent courts are

11   interested both in magnitude, that is to say, the

12   number of uses, but also in types of uses, and this is

13   illustrative of a type of use.

14             When we think about the uses of a system in

15   order to spread cultural material, we, at least I, in

16   interpreting the Sony and Napster test, are not looking

17   only at the number, although that is clearly something

18   that we do look at, but also at what this represents.

19   In some cases, it may represent intensity of

20   preference.  People who really like Hamlet or Othello

21   rather than many people who like JDownloader.

22             And so, again, I was offering this to the

23   court for the court's assessment of this use of the

24   service to provide this kind of material.

25             I note that the Huck Finn, we had 45 hash

1   verified downloads of that particular book, and I think

2   one could come to different opinions as to whether or

3   not that is an important and substantial noninfringing

4   use.  For myself, that seems like a viable and benign,

5   licit use of the service.

6          Q.     Would you describe it as substantial?

7          A.     I think that's a complex inquiry.  In --

8   the Sony court refers to many different types of

9   material.  It refers to a single film, My Man Godfrey,

10  which was in the public domain; refers to a single

11  television program, Mr. Rogers' Neighborhood, which he

12  allowed to be there; refers to a single national public

13  radio station which allowed, and it lists those in its

14  discussion of substantial noninfringing uses.  To me,

15  that suggests strongly that the court in Sony cared

16  about what we might think of as a diversity of uses, as

17  well as about -- and did not believe that the important

18  thing to focus on was what the court of appeals in Sony

19  had focused on, which was predominant use.

20             So to me, that suggests that this kind of

21  information would be relevant to the court, but the

22  court, of course, will make the final determination on

23  whether that's true or not.

24         Q.     So this is -- of these four works, there

25  are 49 verified downloads, correct?

1    open source development, a kind of creativity, and the

2    fact that the developers of that open source software

3    are actively choosing to use Hotfile licitly to spread

4    it and appear to be gaining some compensation, I

5    believe that a court would see that as significant in

6    the determination of substantial noninfringing uses.

7         Q.    And in the sentence when you talk about the

8    most common uses, are you referring to those particular

9    downloaded files that iREB and sn0wbreeze?

10        A.    IREB, sn0wbreeze, JDownloader, but also I

11   was talking about other open source programs which

12   weren't downloaded as many times but which were also

13   being downloaded.

14             In the next sentence, I very carefully add

15   the qualification, which is part of this:  This report

16   does not attempt to present a statistically

17   representative sample of the usage of Hotfile, and I

18   have no personal knowledge of what Hotfile's uploaded

19   content or of user downloads is noninfringing.

20   Nevertheless, within the limits suggested by the

21   sentence, my investigation provided some striking

22   facts, and then I list the factual information, which

23   we have discussed.

24        Q.    Are there any other potential noninfringing

25   uses of Hotfile, other than distributing those three

1    kinds of files that we've been discussing throughout

2    this deposition?

3                    MR. GUPTA:  Objection, calls for

4            speculation, asked and answered, goes beyond

5            the scope of his report.

6        A.      Absolutely there are.  I mention at the

7    beginning of the report that I don't attempt to do an

8    exhaustive study.

9                    So, for example, one could use Hotfile to

10   store or to share material one had generated one self;

11   large briefs, large documents.  One could use it to

12   share photographs.  One could use it to store or get

13   access to federal government works which are in the

14   public domain for that reason.  One could also use it

15   for uses that would be fair use.

16                    So material which was copyright but which

17   because of the particular manner of its use, could be

18   considered fair use.  So I think it is debatable.

19                    I would argue that there are cases where

20   people can use storage in order to have archival or

21   backup copies in order to space shift content that they

22   had licitly purchased, and I think a service such as

23   Hotfile could be used for that, and Hotfile clearly

24   could, as a matter of technical potential, be used for

25   that.

1          MR. GUPTA:  No, the covering e-mails

2       are just covering e-mails.

3       A.     Most of my communication with Elysium was

4    by teleconference, by phone call, and then I would get

5    e-mails, which were basically the only purpose of the

6    e-mail was to include the attachment.

7               So to the best of my knowledge, you have

8    all of the information that I received from Elysium,

9    which were facts and data on which I rely for my

10   opinion, and I tried to be as scrupulous about that as

11   I was about the conservatism of the method here.

12      Q.     This may provoke an objection.  What do you

13   know about the use of Hotfile storage?

14         MR. GUPTA:  I'll ask the witness not

15      to answer as to work product, and also

16      object that it's vague, ambiguous, calls for

17      speculation and lacks foundation.

18         MR. POZZA:  Are you instructing the

19      witness not to answer?

20         MR. GUPTA:  I'll give him limited room

21      to answer it.  To the extent relevant to his

22      opening report, I think he can answer.

23      A.     Based on the material in my opening report,

24   information there, I saw a design, which is consistent

25   with the use of Hotfile for storage.

1          I saw a few examples in my attempts to

2    think about and search to find examples of this.  I

3    would come upon other material, such as PowerPoints,

4    for example, which suggested the possibility of

5    storage.

6          I saw in the course of my inquiry a fair

7    amount of zero download material that seemed to meet

8    written fact, which would be consistent with basically

9    personal backup, the file would be stored and you would

10   only download it if you lost it or garbled it so that

11   it's consistent with that, it certainly doesn't prove

12   it.  And those are all the pieces of information that

13   are relevant to this report which, as I note, focuses

14   mainly on the three subjects we have been discussing;

15   namely, open source materials, public domain and

16   creative commons license material.

17        Q.    Does Hotfile encourage the storage of

18   materials?

19               MR. GUPTA:  Objection, vague and

20          ambiguous, calls for speculation as to

21          Hotfile's intent and goes beyond the expert

22          report.

23        A.    In my opinion, that is something about

24   which a court would have to look at a number of

25   factors.

1   Hepatitis C?

2        A.      It was found because I was trying to look

3   for different types of material on line.  It

4   occurred -- on Hotfile.  It occurred to me that there

5   might be creative commons licensed content stored that

6   was scientific in nature.  I can't remember the exact

7   search that I did, but it included PowerPoint and some

8   science terms, and it turned up this file.  As I noted,

9   that didn't have enough information on the file to say

10  it was infringing.  I thought it was very unlikely that

11  it was infringing.  It's not the kind of content that I

12  would imagine would be, but since I couldn't determine

13  that and since it didn't fall into the category, which

14  I was considering here, I excluded it from my

15  consideration.

16       Q.      Do you know whether or not that link is

17  publicly available?

18       A.      I believe it is.

19       Q.      I guess did you find it by searching on

20  Google as opposed to searching by Hotfile's own data?

21       A.      Yes, I found it by searching on Google.

22       Q.      So that's an example of personal storage

23  but with a publicly available link that would allow

24  other people to download that?

25                MR. GUPTA:  Objection,

1           mischaracterizes his testimony and seeks

2           speculation.

3           A.      As I said, I ended up excluding this,

4    because it wasn't the type of material in there, and,

5    again, because I applied this extremely conservative

6    squeaky clean analysis, I couldn't tell that that was

7    personal -- the facts were consistent with that, and

8    yes, the link was publicly available.

9           Q.      Now, in the scope of this report, have you

10   considered any data about the number of files that are

11   never -- that are uploaded but not ever downloaded from

12   Hotfile?

13          A.      In the scope of this report, I have not

14   considered that.

15          Q.      In the scope of this report, have you

16   considered the extent to which Hotfile is used to

17   upload files only for personal retrieval by the

18   uploader?

19          A.      No, in the scope of this report, I did not

20   specifically consider it as an example of files which I

21   would identify those numbers.  I did list it in the

22   report as a potential, noninfringing use.  The report

23   is offering the court facts about potential,

24   noninfringing uses.  I say the system is consistent

25   with that.  That is in my report, that is to say, it

Page 201

1                         SIGNATURE PAGE

2

3

4

5

6

7            _____

8            JAMES BOYLE

9

10

11   SUBSCRIBED AND SWORN to before me this _____

12   day of _____, 20___.

13

14

15

16            _____

17                       NOTARY PUBLIC

18

19   My Commission expires:_____

20

21

22

23

24

25

Page 202

```
1                        TRANSCRIPTION

2                                              MMV

3   CASE NAME:  Disney vs. Hotfile

4

5

6   WITNESS NAME:  JAMES BOYLE

7   DATE:  December 21, 2011

8

9   PAGE        LINE      READS              SHOULD READ

10    18          17        No, I have not.   I have downloaded one file.

11    59          6         signal             signature

12    64          8         illicitly          licitly

13    65          17        that in fact file    in fact that file

14    67          21        is                 has

15    76          13        infringing          noninfringing

16    83          10        indecent           inducement

17   102          12        mutual             neutral

18   111          4         do it              use

19   120          14-15     and telling     and in addition told

20   141          15        hope file          Hotfile

21   155          10        license material   licensed

22   165          8         less               lesser

23   167          16        copyright          copyrighted

24

25
```

1              C E R T I F I C A T E

2        I, Marisa Munoz-Vourakis, RMR, CRR and Notary Public,

3   the officer before whom the foregoing proceeding was

4   conducted, do hereby certify that the witness(es) whose

5   testimony appears in the foregoing proceeding were duly

6   sworn by me; that the testimony of said witness(es) were

7   taken by me to the best of my ability and thereafter

8   transcribed under my supervision; and that the foregoing

9   pages, inclusive, constitute a true and accurate

10  transcription of the testimony of the witness(es).

11       I do further certify that I am neither counsel for,

12  related to, nor employed by any of the parties to this

13  action in which this proceeding was conducted, and

14  further, that I am not a relative or employee of any

15  attorney or counsel employed by the parties thereof, nor

16  financially or otherwise interested in the outcome of the

17  action.

18  IN WITNESS WHEREOF, I have hereunto subscribed my name

19  this 27th of December, 2011.

20                          _____
                            MARISA MUNOZ-VOURAKIS

21  Notary #20032900127

22

23

24

25

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS


DISNEY ENTERPRISES, INC.,      )
TWENTIETH CENTURY FOX FILM     )
CORPORATION, UNIVERSAL CITY    )
STUDIOS PRODUCTIONS LLLP,      )
COLUMBIA PICTURES              )
INDUSTRIES, INC., and          )
WARNER BROS. ENTERTAINMENT     )
INC.,                          )
                               )
                               )
Plaintiffs,                    )
                               )
                               )
v.                             )
                               )
HOTFILE CORP., ANTON TITOV     )
and DOES 1-10,                 )
                               )
Defendants.                    )



Continued Deposition of JAMES BOYLE

Volume II

(Taken by the Plaintiffs)

Raleigh, North Carolina

January 19, 2012



Reported by:    Marisa Munoz-Vourakis -
                RMR, CRR and Notary Public
TSG Job # 45588

```
 1   APPEARANCE OF COUNSEL:

 2   For the Plaintiffs:

 3              DUANE POZZA, ESQ.

 4              Jenner & Block

 5              1099 New York Avenue, NW, Suite 900

 6              Washington, DC 20001

 7

 8

 9

10   For the Defendants:

11              DEEPAK GUPTA, ESQ.

12              Farella Braun & Martel

13              Russ Building

14              235 Montgomery Street, 17th Floor

15              San Francisco, CA 94104

16

17

18                        o0o

19

20              Continued Deposition of JAMES BOYLE,

21   taken by the Plaintiffs, at Office Suites Plus, 3737

22   Glenwood Avenue, Suite 100, Raleigh, North Carolina, on

23   the 19th day of January, 2012 at 9:38 a.m., before

24   Marisa Munoz-Vourakis, Registered Merit Reporter,

25   Certified Realtime Reporter and Notary Public.
```

1      Q.     What is Exhibit 2?

2      **A.     Exhibit 2 appears to be my rebuttal report.**

3      Q.     This is your rebuttal report submitted in

4      this Hotfile litigation, correct?

5      **A.     That appears to be the case.  I haven't**

6      **read all of it, but assuming it's as I submitted it,**

7      **then that would be true.**

8            MR. POZZA:  And just for the record,

9         I'll note the text of the report itself,

10        there were some attached exhibits that were

11        also sent, but those are not included in

12        this exhibit, although some of them we'll

13        look at later.

14     Q.     We went over this a bit last time, but what

15     is your educational background?

16     **A.     I have an LLB law degree from Glasgow**

17     **University and an LLM and an SJD from Harvard Law**

18     **School.**

19     Q.     And what are you formally trained in?

20           MR. GUPTA:  Objection, vague and

21        ambiguous.

22     **A.     I am trained as a lawyer and legal scholar.**

23     Q.     What bar are you a member?

24     **A.     I'm not a member of the bar.**

25     Q.     Have you ever been a member of the bar?

1             (Off the record at 5:15 p.m.)

2             (On the record at 5:18 p.m.)

3             BY MR. POZZA:

4       Q.    If you look at paragraph 53, is this a

5  statistical analysis you present here?

6       **A.    This is an analysis of the data in -- that**

7  **Hotfile keeps under the log heading paid for connected**

8  **to the Zebrak study, the Zebrak/Waterman study, and in**

9  **particular using Mr. Zebrak's categories in order to**

10 **indicate of the paid for files, that is to say, the**

11 **files that were the files that caused users to convert**

12 **to the premium service that caused them to actually --**

13 **the files on which they chose to select premium, what**

14 **percentage of the daily download total of those files**

15 **were the ones which caused the user to convert to**

16 **premium.**

17      Q.    Do you know what queries were used to

18 generate this table?

19            MR. GUPTA:  Objection, vague as to

20       queries.

21            BY MR. POZZA:

22      Q.    Database queries?

23      **A.    So I'm not sure what you mean by database**

24 **queries.  Basically what I was trying to describe there**

25 **was the arithmetic process that went through there.  So**

1  material, yes.

2       Q.     Are you purporting to claim that this

3  allowed you to draw any opinions or conclusions about

4  Hotfile?

5       A.     I would say that these numbers indicate

6  that the category that Mr. Zebrak identified as

7  noninfringing had a much higher conversion rate, that

8  is to say, a rate of converting people to premium than

9  the confirmed infringing.

10          I'd say in addition, that Mr. Zebrak's

11 confirmed infringing category was the lowest of all of

12 the types of content, lower even than unknowable, and

13 so I think I can from that draw the conclusion that

14 Hotfile was gaining economic success from noninfringing

15 material, number one, I can conclude that; and number

16 two, that they were actually gaining more economic

17 success proportionately from noninfringing material

18 than from confirmed infringing or highly likely

19 infringing material.

20      Q.     Can you extrapolate these results from the

21 1750 files to the broader population of files on

22 Hotfile?

23      A.     I believe it is the assertion of

24 Dr. Waterman and Mr. Zebrak that the study can be

25 extrapolated.  I, for the reasons in this report, I

Page 462

```
 1                    SIGNATURE PAGE

 2        you.

 3               (Whereupon the deposition was

 4        concluded at 5:43 p.m.)

 5               (Signature reserved.)

 6

 7        _____

 8        JAMES BOYLE

 9

10

11  SUBSCRIBED AND SWORN to before me this _____

12  day of_____, 2012

13

14

15          _____

16                  NOTARY PUBLIC

17

18  My Commission expires:_____

19

20

21

22

23

24

25
```

Page 464

```
 1              C E R T I F I C A T E

 2        I, Marisa Munoz-Vourakis, RMR, CRR and Notary Public,

 3   the officer before whom the foregoing proceeding was

 4   conducted, do hereby certify that the witness(es) whose

 5   testimony appears in the foregoing proceeding were duly

 6   sworn by me; that the testimony of said witness(es) were

 7   taken by me to the best of my ability and thereafter

 8   transcribed under my supervision; and that the foregoing

 9   pages, inclusive, constitute a true and accurate

10   transcription of the testimony of the witness(es).

11        I do further certify that I am neither counsel for,

12   related to, nor employed by any of the parties to this

13   action in which this proceeding was conducted, and

14   further, that I am not a relative or employee of any

15   attorney or counsel employed by the parties thereof, nor

16   financially or otherwise interested in the outcome of the

17   action.

18   IN WITNESS WHEREOF, I have hereunto subscribed my name

19   this 23rd of January, 2012.

20

21

22                  _____
                          MARISA MUNOZ-VOURAKIS

23                        Notary #20032900127

24

25
```