# EXHIBIT 5

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

-------------------------------------x

DISNEY ENTERPRISES, INC., et al.,   )

            Plaintiffs,     ) Case No.

    v.                     ) 11-20427-

HOTFILE CORP., et al.,            ) WILLIAMS/

        Defendants.    ) TURNOFF

-------------------------------------x

HOTFILE CORP.,                    )

    Counterclaimant,     )

    v.                    )

WARNER BROS. ENTERTAINMENT, INC.,   )

    Counterdefendant.    )

-------------------------------------x

VIDEOTAPED DEPOSITION OF SCOTT A. ZEBRAK, ESQUIRE

    Washington, D.C.

    Tuesday, December 20, 2011

    9:43 a.m.

Job No.:  439702

Pages 1 - 370

Reported By:  Joan V. Cain

Page 2

1      Videotaped Deposition of SCOTT A. ZEBRAK,

2    ESQUIRE, held at the law offices of:

3

4          STRADLEY RONON STEVENS & YOUNG, LLP

5          Suite 500

6          1250 Connecticut Avenue, Northwest

7          Washington, D.C. 20036

8          (202) 822-9611

9

10        Pursuant to Notice, before Joan V. Cain, Court

11   Reporter and Notary Public in and for the District of

12   Columbia.

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

```
 1        A P P E A R A N C E S

 2

 3    ON BEHALF OF PLAINTIFFS:

 4      STEVEN B. FABRIZIO, ESQUIRE

 5      JENNER & BLOCK, LLP

 6      Suite 900

 7      1099 New York Avenue, Northwest

 8      Washington, D.C. 20001

 9      Telephone:  (202) 639-6000

10      E-mail:  sfabrizio@jenner.com

11

12    ON BEHALF OF DEFENDANTS AND COUNTERCLAIMANT:

13      ANDREW LEIBNITZ, ESQUIRE

14      FARELLA BRAUN & MARTEL, LLP

15      Russ Building

16      235 Montgomery Street

17      San Francisco, California 94104

18      Telephone:  (415) 954-4400

19      E-mail:  aleibnitz@fbm.com

20

21    ALSO PRESENT:

22      Terry Michael King, Videographer

23

24

25
```

Page 26

1  pronouncing her first name.  It's Nastachia, and --

2  how many names is that?

3     Q    That's six.

4     A    That's six.  There's another woman whose

5  name is escaping me right now and another man by the

6  name, I believe it's Greg.  This was some time ago,

7  including for some of them.

8     Q    Have you now listed everyone you remembered

9  to the fullest detail you can?

10    A    I think that's right.

11    Q    You said some time ago.  What do you mean by

12  that?

13    A    It was some time ago.  I mean, the project

14  began in mid November -- or I'm sorry -- mid October

15  and, you know, my -- my work with them stopped I guess

16  roughly at the time I did my report.  So I mean I

17  worked with these folks from mid October through mid

18  November, roughly, and not all of them on a continuous

19  basis.

20    Q    Okay.  So you worked with them for about a

21  month, spending between 225 -- did you spend between

22  225 and 275 hours in that month period between mid

23  October and mid November?

24    A    Give or take, maybe a little more than mid

25  November.  Maybe, you know, some supplemental, you

Page 27

1   know, thought and analysis and, you know, confirming

2   of my opinions after -- after mid November, but, you

3   know, give or take.  If it's not 4 or 5 weeks, maybe

4   it's in a 6-week period.

5       Q   What did you do after November 18th, when

6   your report was due?

7           MR. FABRIZIO:  Objection, vague.  Overbroad.

8           THE WITNESS:  What did I do related to the

9   report?

10  BY MR. LEIBNITZ:

11      Q   Yes, please.

12      A   In the immediate days -- I don't recall the

13  exact timing, but, you know, some -- you know, some --

14  some further work to sort of further -- further

15  confirm what my conclusions were and, you know, just

16  some additional look at it.  Probably not a

17  significant amount of time.  Certainly not in the

18  overall scheme of that hour block I gave you.

19      Q   Do you recall anything else about what you

20  did after your report was due on November 18th, 2011?

21          MR. FABRIZIO:  Objection to form.

22  Overbroad.

23          THE WITNESS:  Well, there may have been

24  other things.  One -- one item I remember doing, I

25  know there -- there were some Hotfile records that I

Page 152

1    fact that Hotfile or Anton Titov have taken active

2    steps to encourage infringement?

3        MR. FABRIZIO:  Objection.  Outside the scope

4    of the witness's testimony.  Calls for speculation.

5    And, Counsel, the answer to your question is, no, he

6    will not.

7        THE WITNESS:  Yeah, I mean, I don't know

8    what questions you're going to ask me at a trial, if

9    I'm testifying at a trial.  I do know that I was

10   retained for -- or what Jenner & Block might ask.  But

11   I was retained for the purpose of the project that

12   I've described for you.  That -- that's the work that

13   I've done and have considered and I believe is the

14   scope of my testimony being -- you know, reviewing

15   this sample of files and, if I could, make an

16   infringement determination or not.

17   BY MR. LEIBNITZ:

18     Q   You studied approximately 1,750 files,

19   right?

20     A   Approximately, that's right.

21     Q   You charged $45,000 for that review, right?

22     A   Well, sort of right.  My retainer letter has

23   a flat fee of that amount based on an estimate of the

24   number of hours the project would take, and so that

25   flat fee of $45,000 relates to an estimate of the

Page 153

1    amount of time I would have to incur on the project.

2    So that's how my compensation was structured.  It's

3    laid out in a little more detail in the engagement

4    letter.

5        Q    Are you entitled to the $45,000 whether or

6    not you spend more or less than 128 hours at $350,

7    your billing rate?

8        MR. FABRIZIO:  Objection.

9        THE WITNESS:  I'm sorry.

10       MR. FABRIZIO:  Vague and ambiguous.

11       THE WITNESS:  Well, let me clarify that as I

12   answer the question.  First of all, I've -- I've spent

13   well more than 180 to 200 hours on the project.  I

14   think there was no question I would spend that amount

15   of time on it.  So I never considered whether I would

16   receive that money in the event that my hours didn't

17   exceed the 180 to 200 range.  So that's not something

18   I considered.

19       And, actually, if you break my hourly rate

20   out, it comes to a discount off my hourly rate.  It's

21   not $350 an hour times 180 to 200 hours to get you to

22   $45,000.  It's, I believe, a number at least $100

23   below that.  $350 an hour reference is with respect to

24   other components of my time that may be taken up in

25   connection with my retention, such as today's

Page 370

1    CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

2        I, Joan V. Cain, Court Reporter, the officer

3    before whom the foregoing deposition was taken, do

4    hereby certify that the foregoing transcript is a true

5    and correct record of the testimony given; that said

6    testimony was taken by me stenographically and

7    thereafter reduced to typewriting under my direction

8    and that I am neither counsel for, related to, nor

9    employed by any of the parties to this case and have

10   no interest, financial or otherwise, in its outcome.

11       IN WITNESS WHEREOF, I have hereunto set my

12   hand and affixed my notarial seal this 29th day of

13   December 2011.

14

15   My commission expires:

16   June 14, 2014

17   _____

18   NOTARY PUBLIC IN AND FOR THE

19   DISTRICT OF COLUMBIA

20

21

22

23

24

25

Page 1

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

DISNEY ENTERPRISES, INC., TWENTIETH

CENTURY FOX FILM CORPORATION,

UNIVERSAL CITY STUDIOS PRODUCTIONS,

LLP, COLUMBIA PICTURES INDUSTRIES,

INC., and WARNER BROTHERS

ENTERTAINMENT, INC.,

     Plaintiffs,

vs.          Case No.

HOTFILE CORPORATION, ANTON TITOV    11-cv-20427-AJ

and DOES 1-20,

     Defendants.

_____

    Videotaped Deposition of SCOTT A. ZEBRAK,
a witness herein, called for examination by counsel
for Defendants in the above-entitled matter, Washington,
D.C. pursuant to subpoena, the witness being duly sworn
by SUSAN L. CIMINELLI, CRR, RPR, a Notary Public in and
for the District of Columbia, taken at the offices of
Jenner & Block, LLP, 1099 New York Avenue, N.W.,

Washington, D.C., at 10:49 a.m. on Friday, January 20,

2012.

Sarnoff, A VERITEXT COMPANY
877-955-3855

Page 2

1   APPEARANCES:

2

3       On behalf of the Plaintiffs & Counterdefendants:

4           DUANE POZZA, ESQ.

5           STEVEN B. FABRIZIO, ESQ.

6           Jenner & Block, LLP

7           901 New York Avenue, N.W.

8           Washington, D.C.  20001

9           (202) 639-6000

10          dpozza@jenner.com

11

12      On behalf of the Defendants:

13          DEEPAK GUPTA, ESQ.

14          Farella Braun ÷ Martel, LLP

15          235 Montgomery Street

16          San Francisco, CA  94104

17          (415) 954-4400

18          dgupta@fbm.com

19

20      ALSO PRESENT:

21          CONWAY BARKER, Videographer

22

23

24

25

Page 62



Page 89



Page 98

1        And when I say hadn't yet reached, what I

2    was asked to do here wasn't to assign a

3    classification to all these files like was done where

4    possible in the stats study work.  Here I was merely

5    asked to identify those files that I thought were

6    highly likely infringing for them to be distributed

7    through Hotfile.

8        Q.    So for example, on page 16 of the original

9    exhibit.

10       A.    I have that one now.  Yes.

11       Q.    There are a bunch of categorizations such

12   as noninfringing, unknowable.

13       A.    Right.

14       Q.    Do you believe that those categorizations

15   are accurate or not?

16       A.    Let me -- without answering as to those

17   two, let me ask -- answer as to the unknowable and

18   noninfringing designations across the exhibit.  These

19   were, except in instances, you know, let me -- if I

20   could, let me just look through this quickly.  Okay.

21   Here is an example.  So on page 24, there is an

22   example of a work that I saw as a J downloader work.

23   That was the title of the work.  That as I recall was

24   a work that in my stats study, I declared to be

25   noninfringing.  So here that would be an example of

Page 99

1   something that I had a firmer conclusion about than

2   many of the other works that you would see as

3   noninfringing -- noninfringing or unknowable, where

4   those, you know, as I began my work, if that was, you

5   know, it was sort of a tentative designation whether

6   it was from me or someone from my team which would

7   often be the case.

8          So the answer is I don't -- unlike the

9   stat study where works were -- I reached a conclusion

10  and called a work noninfringing or unknowable, here I

11  don't have that same level of certainty for these

12  works.  I don't necessarily agree that these works

13  are noninfringing or unknowable.  I would have to go

14  work by work and do further investigation and

15  analysis to answer your question directly.

16     Q.   So when you say in paragraph 3, you

17  followed the same methodology, would you say it's

18  something to be taken with a grain of salt.  It's a

19  little different?

20     A.   I wouldn't say with a grain of --

21          MR. POZZA:  Object.  Argumentative and

22  ambiguous.

23          THE WITNESS:  I wouldn't say with a grain

24  of salt.  No.  I applied the same methodology, but to

25  a different project.  But when I say the methodology,

Page 195

```
 1      Q.   And did you find it curious that you
 2   weren't asked to look at the infringement status of
 3   the top 100 downloads on the site?
 4          MR. POZZA:  Objection.  Ambiguous.
 5   Argumentative.
 6          THE WITNESS:  No, I really didn't think
 7   about it one way or the other.  That was, you know,
 8   the issue that counsel thought was -- needed looking
 9   into.
10          BY MR. GUPTA:
11      Q.   I remind you, you are under oath.
12          MR. POZZA:  I don't think the witness
13   needs to be reminded.
14          MR. GUPTA:  Can you please mark this as
15   Exhibit, I believe we are up to 125.
16          (Zebrak Exhibit 125 was
17           marked for identification.)
18          BY MR. GUPTA:
19      Q.   Have you seen this before?
20      A.   I may have.  I certainly know of it.  This
21   is what I believe you were asking me about a moment
22   ago where, you know, Hotfile, you know, was asked to
23   identify certain top downloaded works.
24      Q.   Right.  So I'll represent to you this is
25   Hotfile Corporation's fourth set of interrogatories
```

Page 196

1   to plaintiffs, where Exhibit A attached to this

2   interrogatory is the top 100 ever downloaded files on

3   Hotfile.  And I wanted you to take a look at that

4   Exhibit A for a moment.

5      A.   Okay.  Okay, and you said a moment ago

6   that these are the top downloaded works over time?

7      Q.   Correct.

8      A.   Okay.  Okay.  I'm with you.

9      Q.   And I wanted you to look at that first

10  page just to start.

11     A.   Yes.

12     Q.   And tell me if, based on these file names,

13  you see anything here that looks like it would be

14  likely to be studio content.

15       MR. POZZA:  I'm going to object to this

16  line of questioning as lacking foundation to the

17  extent that there is no evidence in the record that

18  these are the top 100 most downloaded files, or what

19  that would mean.  And further object to this is

20  outside the scope of the expert report and the

21  witness has not seen this list of files before.  Or

22  at least has testified he has not considered this

23  list of files before.

24       BY MR. GUPTA:

25     Q.   Please go ahead.

Page 197

1     A.   Please go ahead, and just flip through

2   this report and --

3     Q.   I was going to ask you, just focus on the

4   first page so we don't take too much time.

5     A.   Sure.  And the question is to identify

6   what works appear to be studio content?

7     Q.   If any of these file names are suggestive

8   to you that this might be a studio file.

9        MR. POZZA:  Same objections.

10        THE WITNESS:  Okay.  I've flipped through

11   it.

12        BY MR. GUPTA:

13     Q.   And what's your answer?

14        MR. POZZA:  Also object this lacks

15   foundation to the extent you're asking the witness

16   about his knowledge of studio works, is not something

17   he has been qualified as an expert in.

18        THE WITNESS:  I mean -- I mean, when I

19   look at the file names, none of these file names, you

20   know, in my mind make me think of a studio movie, for

21   example, if that's the question.

22        BY MR. GUPTA:

23     Q.   And when you look at the file names, do

24   you see file names that are suggestive to you that

25   these files -- that some of these files are in fact

Page 198

1    not infringing?

2          MR. POZZA:  Same objections.  Ambiguous.

3          THE WITNESS:  Yes.

4          BY MR. GUPTA:

5      Q.   And can you tell me which file names you

6    believe are suggestive of a file that is likely not

7    to be infringing?

8          MR. POZZA:  Same objections.  Outside the

9    scope of the expert testimony.  Ambiguous.

10         BY MR. GUPTA:

11     Q.   Or in fact, you can mark it with a pen and

12   then -- you know, if that's faster and easier.

13     A.   No.  I can go through and tell you.  But

14   when you say suggestive, I'm of course answering this

15   for purposes of just answering your question now.

16   This is not suggestive of infringement or

17   noninfringement as I would have done my different

18   analyses.  I just want to be clear about that.

19     Q.   Right.  Because this is just based on file

20   name, right, so it's not going to be conclusive.

21     A.   Well, all I meant to say is that I'm

22   answering your question and doing as you asked.  My

23   -- if just based on this file name that this is of

24   course not the methodology I did as I did my

25   different analyses.  I'm just distinguishing the two.

Page 199

1        BY MR. GUPTA:

2        Q.   Agreed.

3        A.   Okay.

4        Q.   Agreed.  But you did look at file name in

5    your methodology as one of the factors, right?

6        A.   Of course.  I looked at file name among

7    many other considerations.  Well, of course, without

8    listing each one, you know, the tools labelled iREB

9    and sn0wbreeze are the tools we have just been

10   talking about, which I know I mentioned to you that I

11   have in the unknowable category, but it's either

12   going to be -- if it's moved out of unknowable, it

13   would be to highly unlikely -- it would be moved to

14   noninfringing or illegal, but not infringing.

15       Q.   Got it.

16       A.   And I believe that in my analyses, I had

17   the J downloader tool also as -- which appears

18   several times here as noninfringing for purposes of

19   that work.  And as I quickly look through it now,

20   those are the tools that, you know, those three items

21   I mentioned are really the only ones that jump out at

22   me, I think.

23       Q.   Okay.  I appreciate that.  Do you

24   recognize this file that recurs a few time, this DOTA

25   utilities file?

1   be more closely in line with the fair use doctrine.

2          But, you know, again, we're now focusing

3   on what, you know, I really think is, you know,

4   probably one of a handful of outliers that are closer

5   calls in my analysis than what are really the much

6   more prevalent and easier calls, which are

7   full-length distribution of these works that are

8   being commercialized such as full-length copy of this

9   episode.  But I grant you this is one of the more --

10   you know, one of the closer calls within my analysis.

11          BY MR. GUPTA:

12      Q.   Okay.  And so would you consider

13   redesignating this as unknowable?

14      A.   What I -- look, with regard to any of the

15   closer calls that you raise with me today, whether

16   it's just this one or if this is one of X number, I

17   would be happy to go back and look more closely at

18   these.  I actually, you know, take great pride in the

19   fact that I think that if you were to review the 1750

20   files and focus on the ones that I deemed to be

21   infringing, I think you'll find that you won't

22   dispute the overwhelming -- overwhelming majority of

23   them and that while you may be able to isolate and

24   present to me a few that are closer calls, that I had

25   sound reasoning both for the ones where I opted to

Page 257

1        MR. POZZA:  Objection.  Misstates witness

2   testimony.

3        THE WITNESS:  It -- as I hear that term, I

4   think of, you know, some -- some software that can be

5   distributed without it violating rights, as a result

6   of, for example, it being open-source software or,

7   you know, software where perhaps even the copyright

8   owner says it's a free copy and can be freely

9   distributed but still require some other terms to be

10   agreed to, and that's one of the terms in the

11   installation terms of use.  But that's -- you know,

12   that's what I think of when I hear -- hear that term.

13        BY MR. GUPTA:

14        Q.   Okay.  So it would be, for example, if

15   you, Mr. Zebrak, created a piece of software and put

16   it on your website as shareware, I could download

17   that software and that I could email it to counsel,

18   right?  And even though I'm not a copyright owner and

19   don't have any copyrights, I would not be in

20   violation of your copyrights in that process, right?

21        MR. POZZA:  Objection.  Incomplete

22   hypothetical.

23        THE WITNESS:  You know, again when I

24   applied my methodology and went through this process,

25   I did this within the context of particular sites and

1    particular files.  This is an abstract question.  But

2    I certainly ran across instances of redistributable

3    software, where the owner of that software

4    contemplates and has permitted that a recipient of

5    the software would be allowed to further distribute

6    it to others.

7         BY MR. GUPTA:

8    Q.   Okay.  Well, let me ask you a question.

9    Do you have a sense of the business model that

10   users -- or that people who create shareware use to

11   monetize their -- their software?

12        MR. POZZA:  Objection.  It's ambiguous.

13        THE WITNESS:  You know, there's so many

14   different fact patterns that can be applied to answer

15   that question.  As I talked about in my first

16   deposition, you know, I don't -- my expertise here is

17   in having been in this copyright field as a lawyer

18   doing these types of analyses.  I don't consider

19   myself necessarily an expert at, you know, a

20   particular industry within the copyright field, but I

21   have, in the course of this work and through my prior

22   work, acquired a pretty extensive background.

23        In terms of the business model to support

24   redistributable software, there can be many examples

25   of that.  For example, there can be, you know,

Page 286

1    any, changed hands.  And I also don't know what, you

2    know, what this speaks to in terms of what -- you

3    know, this speaks to -- if it's accurate by this

4    person, what the person minds now, not whether one of

5    the exclusive copyright rights was exercised without

6    authorization at the time it was done.  So those are

7    all things I can and will look further into.

8        Q.   Just for the record, so this is an

9    affidavit that we procured from Mr. Mackay who is an

10   Australian who is the author of this video and I

11   think you probably heard he had the Australian

12   accent.  He claims he is the owner and creator of the

13   website and he says that in paragraph 4, I've been

14   informed that some or all of my videos have been

15   posted at Hotfile.com, a cyber locker site that

16   allows users to store and/or share large files over

17   the Internet.  Paragraph 5 says, I have no objection

18   to my videos being stored and/or shared in this

19   manner and do not consider such storing and/or

20   sharing to infringe my intellectual property rights.

21       A.   Right.

22       Q.   So would you say that this affidavit would

23   at least cause you to change your categorization from

24   highly likely infringing for these several files to

25   at least unknowable?

Page 287

1       MR. POZZA:  I object.  Lacks foundation

2   and to the extent the witness has never seen this

3   document before and that counsel is providing

4   testimony.

5       THE WITNESS:  A few things.  As I've

6   mentioned several times, you apparently challenging

7   my designation here makes me want to look further

8   into it, along with, of course, you know, this

9   affidavit, I would want to speak with this person,

10  but, you know, I don't know if Mr. Mackay is a lawyer

11  or not, but a nonlawyer opining on what the nonlawyer

12  considers to be an infringement, that requires legal

13  judgment.

14      He, of course, knows what at the time he

15  authorized or didn't authorize, but the point is

16  whether one of his exclusive copyright rights was

17  exercised through the unauthorized distribution of

18  the file through Hotfile, you know, him looking back

19  on it now saying what he does or doesn't have an

20  objection to, I'm not sure speaks to what was

21  authorized in the first instance.  And, you know,

22  again, you know, I would want to speak further with

23  him and will presumably do so.

24      BY MR. GUPTA:

25  Q.   But don't you think that even if he hadn't

Page 289

1    and take a short break, and I think we are close to

2    finished.

3          THE VIDEOGRAPHER:  Off the record at 8:01.

4          (Recess.)

5            (Zebrak Exhibit 133 and Exhibit 134

6            was marked for identification.)

7          THE VIDEOGRAPHER:  Back on the record at

8    8:09.

9          BY MR. GUPTA:

10     Q.   Mr. Zebrak, are there any opinions other

11    than those you've expressed today, those you've

12    expressed in your first day of deposition and those

13    that are expressed in your reports, that you intend

14    to provide at trial?

15     A.   No.  These are the areas that I'm

16    testifying about.

17          MR. POZZA:  Object as ambiguous and

18    calling for speculation.

19          THE WITNESS:  Yes.

20          BY MR. GUPTA:

21     Q.   Do you anticipate engaging in any further

22    factual inquiries before trial?

23          MR. POZZA:  Object as ambiguous and

24    calling for speculation.

25          THE WITNESS:  You know, I intend to

Page 296

1    UNITED STATES OF AMERICA)

2              SS:

3    DISTRICT OF COLUMBIA    )

4

5        I, SUSAN L. CIMINELLI, the officer before whom

6    the foregoing deposition was taken, do hereby

7    certify that the witness whose testimony appears in

8    the foregoing deposition was duly sworn by me; that

9    the testimony of said witness was taken by me to the

10   best of my ability and thereafter reduced to

11   typewriting under my direction; that I am neither

12   counsel for, related to, nor employed by any of the

13   parties to the action in which this deposition was

14   taken, and further that I am not a relative or

15   employee of any attorney or counsel employed by the

16   parties thereto, nor financially or otherwise

17   interested in the outcome of the action.

18

19   _____

20           SUSAN L. CIMINELLI

21

22   My commission expires:  11/30/2016

23

24

25

Sarnoff, A VERITEXT COMPANY
877-955-3855