# Yeh Exhibit 137

```
                                                                      1
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
 3
                  Case No. 11-CV-20427-WILLIAMS/TURNOFF
 4
 5   DISNEY ENTERPRISES, INC.,
     TWENTHIETH CENTURY FOX FILM
 6   CORPORATION, UNIVERSAL CITY
     STUDIOS PRODUCTIONS, LLLP,
 7   COLUMBIA PICTURES INDUSTRIES,
     INC. AND WARNER BROTHERS
 8   ENTERTAINMENT, INC.,
 9
                    Plaintiffs,
10
     vs.                                          MIAMI, FLORIDA
11                                                JANUARY 13, 2012
12
     HOTFILE CORPORATION,
13   ANTON TITOV AND
     DOES 1-10,
14
                    Defendants.
15
16         TRANSCRIPT OF STATUS CONFERENCE HEARING
            BEFORE THE HONORABLE WILLIAM C. TURNOFF,
17              UNITED STATES MAIGISTRATE JUDGE
18   APPEARANCES:
19   FOR THE PLAINTIFF:
                                  JENNER & BLOCK
20                                1099 New York Avenue, N.W.
                                  Suite 900
21                                Washington, D.C.
                                  BY: STEVEN B. FABRIZIO, ESQ.
22                                BY: DUANE C. POZZA, ESQ.
23
24   REPORTED BY:                 JERALD M. MEYERS, RPR
     TELEPHONE:                   954-431-4757
25   E-MAIL ADDRESS:              CRJM@AOL.COM
```

```
                                                                    2
 1
 2                          GRAY ROBINSON, P.A.
                            1221 Brickell Avenue
 3                          Suite 1650
                            Miami, Florida 33131
 4                          BY: KAREN L. STETSON, ESQ.
 5
 6
     FOR THE DEFENDANTS:
 7
 8
 9
10                          FARELLA BRAUN & MARTEL, LLP
                            235 Montgomery Street
11                          17th Floor
                            San Francisco, California 94104
12                          BY: RODERICK M. THOMPSON, ESQ.
13
14
15
16                          RASCO KLOCK REININGER PEREZ ESQUENAZI
                            VIGIL & NIETO
17                          283 Catalonia Avenue
                            Suite 200
18                          Coral Gables, Florida 33134
                            BY: JANET MUNN, ESQ.
19
20
21
22
     REPORTED BY:           JERALD M. MEYERS, RPR.
23                          J.M. COURT REPORTING, INC.
                            1601 N.W. 109TH TERRACE
24                          Pembroke Pines, FL 33026-2717
                            Telephone: 954-431-4757
25                          E-Mail Address: CRJM@AOL.COM
```

Case 1:11-cv-20427-KMW   Document 332-19   Entered on FLSD Docket 03/08/2012   Page 4 of 13

54

1  am sorry, Your Honor.

2       THE COURT:  I didn't realize it at the time, either,
3  until my law clerk described to me as I was leaving the bench
4  with blood dripping down in my eyes.

5       It will be in my memoirs.  I was concentrating in
6  listening to the arguments, and we reviewed it, and I had this
7  spontaneous head bleed from my forehead from the argument over
8  depositions in Bulgaria, but I digress.

9       MR. THOMPSON:  I hope I wasn't speaking at the time.

10      THE COURT:  You were all very good, as a matter of
11 fact, and I don't like telephonic depositions, but go ahead.

12      MR. THOMPSON:  So, Your Honor, a change was made in
13 the source code sometime around August of 2009.

14      THE COURT:  Yes.

15      MR. THOMPSON:  They have the sworn deposition
16 testimony from Hot File as to its best information on that
17 topic.

18      When you make changes in the source code, you
19 essentially write over what was there before.

20      THE COURT:  Okay.

21      MR. THOMPSON:  It is likes in your word processing,
22 you make a spelling correction.  You save the document.  What
23 used to be there is not necessary saved.

24      There is something in the software world known as
25 version control.  So if you wanted to save that change you

55

1  made, you would use version control software, and admittedly
2  most sophisticated companies use that.  Software is a small
3  company -- I am sorry.  Hot File is a small company.
4          They have three principals and a couple of
5  contractors.  They never used version control until this
6  lawsuit was filed.
7          When the lawsuit was filed, the plaintiffs' lawyers
8  were concerned about preserving evidence.  Please use version
9  control.  Hot File adopted it at that time.
10         So their software from the filing of this lawsuit in
11 February of 2011 has version control, and if it becomes
12 relevant for some reason, you can see when something was
13 changed after February of 2011.  There is no dispute that it
14 didn't exist before that.
15         So plaintiffs are trying to ascertain when a change
16 was made a year and a half ago before February of 2011 to
17 software.
18         At the Titov deposition, Mr. Fabrizio asked a lot of
19 questions about this and made a request on the record for us to
20 investigate, to see if there was any trace of when the change
21 was made around August of 2009.
22         That is what Mr. Titov, who wrote most of this
23 software, that is what he did.  He investigated.  There is no
24 software that would show the date of that change.
25         So what they are asking for now is the current

Case 1:11-cv-20427-KMW   Document 332-19   Entered on FLSD Docket 03/08/2012   Page 6 of 13

56

1   functionality which is being used right now, even though it is
2   not going to prove anything, because you cannot tell when the
3   change was made.  All they can say is, well, this is what they
4   have now.
5        This is very significant because, of course, what you
6   have now is what is sensitive.
7        Judge Jordan already made the finding, which is the
8   law of this case now, that Hot File software is a trade secret.
9   We put thousands of man hours into developing that software.
10       THE COURT:  Let me stop you right there.  Factually,
11  is that consistent with your understanding of the facts?  Not
12  the argument.
13       I just want to know.  You can stay there and speak
14  into the microphone.
15       MR. POZZA:  The facts of the source code, we disagree
16  with the characterization that it is undisputed that the change
17  was made in August of 2009.  That is the fact which we are
18  trying to ascertain by obtaining the source code.
19       THE COURT:  Here is what I suggest that we do:  Let me
20  think out loud to try to cut through this.
21       Now, as I understood the request, I thought it was you
22  were asking for what I will call the chapter that was in
23  existence at the time that they made the change eliminating the
24  possibility of linking to the file.
25       Is that wrong?  You are requesting their current

1   chapter.  Is that it?

2           MR. POZZA:  If they still had a copy that was from
3   August of 2009, that is what we request.

4           THE COURT:  But they don't have that.

5           MR. POZZA:  What we are requesting is the current
6   version of this chapter in order to look at it because we think
7   there are at least two other ways in which we might determine
8   when they made the change.

9           One, they might have overriden what was still there
10  from August of 2009.  There might be some legacy portions of
11  it, and, second, in computer programming, often programers put
12  comments in.

13          They are called in-line comments into the code as they
14  make changes, and unless we can look at that, which is in the
15  current version of this chapter, we cannot satisfy ourselves
16  that, in fact, what Mr. Thompson is just representing, which is
17  that he or his clients have looked at it.

18          THE COURT:  Which I am sure is made in good faith and
19  is, you know, accurate.

20          MR. POZZA:  Right.

21          THE COURT:  But I have got to say the common sense of
22  the matter is I cannot believe and take judicial notice of it
23  is if it were the C.I.A. or the F.B.I. or the National Security
24  Agency looking at it, that they may be able to do more than you
25  say could be done with it.

58

1  Of course, I may be wrong, but it seems to me,
2  counsel, that, you know, the bottom line here is we are looking
3  to have this matter resolved on the merits with all available
4  properly discoverable evidence, and it just seems to me that
5  there is a way to protect the interests of your client and
6  secure the proprietary and other rights that he has to it and
7  allowing them an opportunity to take a look at it and see if
8  they could trace back and make that determination, because I
9  think that theoretically the determination is certainly
10 discoverable material, but it would have to be done in a way
11 that does not in any way, shape or form jeopardize the
12 proprietary rights of your client.  So it seems to me --
13          MR. FABRIZIO:  May I interrupt for one second, Your
14 Honor?
15          THE COURT:  Yes.  Let me think out loud because I will
16 forget simply what I started with.
17          MR. THOMPSON:  I am sorry.  Forgive me.
18          THE COURT:  I have already forgotten what I started
19 with, but it seems to me that that is the way to proceed with
20 adequate protections and, additionally, one thing I was
21 thinking of earlier is an affidavit under oath prepared by the
22 plaintiffs with respect, and this is before we got to what you
23 are talking about, of the nonexistence of any revision files or
24 other files, and so forth and so on.  Do you follow me?  That
25 would protect the plaintiff from any surprises or anything

59

1  else.
2       You know, you cannot get blood from a stone, but if
3  something does not exist or it cannot be found, you know, you
4  have that under oath from the people who would know and would
5  be liable under penalties of perjury, but it seems to me the
6  only way you are going to know for sure is if you have a chance
7  to look at it with an expert with under the penalties of
8  contempt of court and anything else, you know.
9       We certainly know the plaintiffs are not judgment
10 proof if there is any violation of any court order, or
11 anything.  Do you follow what I am saying?  So that is what my
12 thinking is, counsel, and now I will hear from you.
13      MR. THOMPSON:  Okay.  With respect to the last point,
14 Your Honor, the harm is not monetary.  This is a trade secret.
15      This is the crown jewel of an Internet company.  And
16 as Judge Jordan found, software is a trade secret.
17      THE COURT:  But they are being sued for being the
18 napster of the movie industry.
19      MR. THOMPSON:  Which has not been proven, Your Honor.
20      THE COURT:  Of course not.
21      MR. THOMPSON:  And there are summary judgment motions.
22      THE COURT:  Of course, but I am saying you have been
23 sued because you are allegedly violating their crown jewels, if
24 you consider some of Disney's earlier cartoons.  Go ahead.
25      MR. THOMPSON:  The second point is --

60

1   THE COURT: They are, actually, as a matter of fact.
2   MR. THOMPSON: Your Honor, Mr. Titov was deposed under
3   oath on this subject. If Your Honor would like a sworn
4   declaration from him about what he has done to investigate, we
5   can provide that.
6   And, Your Honor, just think about it. This comes down
7   to they don't believe Mr. Titov. He testified under oath as to
8   when this change happened.
9   THE COURT: Well, why don't they just drop this
10  lawsuit then?
11  MR. THOMPSON: Your Honor --
12  THE COURT: You said Mr. Titov said he didn't do
13  anything wrong. I mean, your argument is, well, okay.
14  MR. THOMPSON: Your Honor, he was under oath. He is
15  bound by the oath just as you and I are. He spoke honestly,
16  and we will show you, Your Honor, when we have a chance to get
17  into his testimony, but bear with me one moment.
18  THE COURT: Sure.
19  MR. THOMPSON: Their allegation is, "Don't trust
20  Titov. He is a liar. Therefore, give us trade secrets." That
21  is what this comes down to. Your Honor, their theory is --
22  THE COURT: No. They are saying is and reasonably it
23  is that he made -- I don't mean to put words in his mouth -- he
24  may well be telling the truth, and you are representing what
25  your understanding is, and what they are saying is there may be

61

1   a way that you can take what you presently have and find out
2   when changes were made and what changes were made. That's all
3   they are saying.
4           MR. THOMPSON: Mr. Pozza said look at for Legacy --
5           THE COURT: Let me stop you. Am I putting words in
6   your mouth?
7           MR. POZZA: No, Your Honor, that's right. The only
8   thing is a slight clarification to that is when I say, "current
9   version," they started this version control at some point,
10  right, so they have essentially tracked the changes to the
11  chapter for the last year.
12          So when I say that, I mean you know, the current
13  version and any changes that they have tracked.
14          THE COURT: That they have available that they haven't
15  waived a claim, right?
16          MR. POZZA: Right.
17          THE COURT: Yes.
18          MR. POZZA: So our experts can look at it and see what
19  they can find.
20          MR. THOMPSON: Your Honor, Hot File started in early
21  2009. If Mr. Titov was going to lie, he would have said the
22  change was made from the beginning.
23          He testified there was a change made in August of 2009
24  which the plaintiffs believe is very incriminating.
25          They believe anything that happened before that helps

62

1  their case. If Mr. Titov was going to be less than honest, he
2  had no incentive to admit that the change was made in August of
3  2009.
4           They may not like that date, but that's the date. So,
5  Your Honor, please consider it.
6           THE COURT: What do you have to be worried about then
7  if he is telling the truth?
8           MR. THOMPSON: Because of trade secrets. This is
9  their crown jewels that is going to go to a party that is going
10 to be investigating.
11          THE COURT: You are going to be limited to an expert
12 and one lawyer under penalty of disbarment and contempt of
13 court and an independent lawsuit by you.
14          MR. THOMPSON: Your Honor, one final request. I see
15 which way you are going.
16          THE COURT: It is not which way I am going. It is not
17 like this is the first such case that has been before this
18 court.
19          This is not an uncommon way to proceed. As a matter
20 of fact, this is probably one of the most strictest remedies
21 that I have ever been involved with.
22          MR. THOMPSON: Well, Your Honor, let me suggest that
23 if Your Honor is inclined to let them have any source code --
24          THE COURT: Just don't ask me to do it in-camera
25 because I can't even e-mail.

63

1            MR. THOMPSON:  No.  I am not going to do that.
2   Version control was instituted in February of 2011.  So we can
3   tell of any changes it made that took place after that.
4            What took place after version control is not of
5   interest to them.  They want to know what happened before
6   February of 2011.
7            So, Your Honor, if you are inclined to order the
8   production of any source code, I would suggest there is no
9   basis to go with respect to anything that happened after
10  February of 2011.  We should just ask for whatever the --
11           THE COURT:  No.  I can't with that.
12           MR. THOMPSON:  Your Honor, what possible relevance is
13  there?  They want to know what happened in August of 2009.
14           THE COURT:  I can't agree with that.  I think they are
15  entitled to see it.
16           MR. THOMPSON:  Your Honor, maybe --
17           THE COURT:  Be specific what you are requesting,
18  counsel, so the record is clear.
19           MR. POZZA:  I will, if you will allow me to brief it
20  in the proposed order because it is worded in a way that our
21  experts agree with to understand exactly what we are requesting
22  because it is technical.
23           THE COURT:  While we are waiting, I can tell you that
24  we are the repository of all of Wendy's and Dana's awards.
25           They could not care less about them.  We live in a