Sealed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants.*

_____/



FILED by _AC_ D.C.

MAR 0 7 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*

_____/

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ANTON TITOV'S MOTION FOR SUMMARY JUDGMENT

### [CONFIDENTIAL]

### [FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

**TABLE OF CONTENTS**

CITATION LEGEND.................................................................................................................v

PRELIMINARY STATEMENT ...............................................................................................1

I.      TITOV IS LIABLE FOR PERSONALLY PARTICIPATING IN HOTFILE'S
        INFRINGING CONDUCT..........................................................................................3

        A.      Personal Participation In The Infringing Conduct – Not Exclusive Control
                Of The Infringing Corporation – Is The Governing Legal Standard.....................3

        B.      Titov's Conclusory Characterizations Of His Involvement Are Either
                Unsupported Or Irrelevant. ..................................................................................5

        C.      Titov's Personal Participation in Hotfile's Infringing Activity Was
                Pervasive...............................................................................................................7

        D.      Case Law Compels A Finding That Titov Is Personal Liable. ..............................13

II.     TITOV IS VICARIOUSLY LIABLE FOR HOTFILE'S INFRINGEMENT...................14

        A.      Titov Directly Profits From Infringement on Hotfile. ...........................................14

        B.      Titov Failed to Exercise His Ability to Limit the Infringement on Hotfile. ..........16

III.    TITOV HAS WAIVED ANY OBJECTION TO THE COURT'S JURISDICTION........18

CONCLUSION......................................................................................................................19

i

## TABLE OF AUTHORITIES

CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)..............................16

*Arista Records, Inc. v. Flea World, Inc.*, Civ. A. No. 03-2670 (JBS), 2006 WL 842883
(D.N.J. Mar. 31, 2006).................................................................................................15

*Arista Records, LLC v. Lime Group*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011) .........................14, 18

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009)..............14, 15, 18

*Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161 (11th Cir. 1994) ......................7, 8, 12

*Capitol Records, Inc. v. MP3Tunes, LLC*, No. 07 Civ. 9931 (WHP), 2011 WL 5104616
(S.D.N.Y. Oct. 25, 2011) .........................................................................................15, 17

*Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472 (11th Cir. 1991)...................13

*Columbia Pictures, Inc. v. Fung*, No. CV 06-5578, 2009 WL 6355911 (C.D. Cal. Dec.
21, 2009) ...............................................................................................................14, 18

*Columbia Pictures Indus. v. Redd Horne*, 749 F.2d 154 (3d Cir. 1984) .....................................4, 6

*CoStar Grp. v. LoopNet*, 164 F. Supp. 2d 688 (D. Md. 2001).......................................................17

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)....................................................................15

*Fonovisa Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996)..............................................15

*Foreign Imported Productions and Pub., Inc. v. Grupo Indus. Hotelero S.A.*, No. 07-
22066-CIV, 2008 WL 4724495 (S.D. Fla. 2008) .........................................................4, 7, 12

*GamerModz, LLC v. Golubev*, No. 8:10-cv-1466-T-27TGW, 2011 WL 4755026 (M.D.
Fla. August 3, 2011)........................................................................................................13

*Harrell v. Eller Mar. Co.*, No. 8:09-cv-1400-T-27AEP, 2010 U.S. Dist. LEXIS 104826
(M.D. Fla. Sept. 30, 2010) ...............................................................................................5

*Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082 (C.D. Cal. 2009).............................................17

*Home Design Servs., Inc. v. Park Square Enters., Inc.*, No. 6:02-CV-637-ORL28JGG,
2005 WL 1027370 (M.D. Fla. May 2, 2005)....................................................................14

*Innospan Corp. v. Intuit, Inc.*, No. C 10-04422 WHA, 2011 WL 856265 (N.D. Cal.
March 9, 2011)...............................................................................................................13

*Johnson & Johnson Consumer Cos., Inc. v. Aini*, 540 F. Supp. 2d 374 (E.D.N.Y. 2008) .............4

*Klein & Heuchan, Inc. v. Costar Realty Information, Inc.*, 707 F. Supp. 2d 1287 (M.D. Fl. 2010) ......................................................................................................15

*Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04 Civ. 0604 (CSH), 2004 U.S. Dist. LEXIS 15668 (S.D.N.Y. Aug. 10, 2004).........................................................4-5

*MGM Studios, Inc. v. Grokster*, 545 U.S. 913 (2005) ......................................17

*Microsoft Corp. v. Md. Micro.com, Inc.*, Civ. No. JFM-01-3797, 2003 U.S. Dist. LEXIS 13735 (D. Md. July 15, 2003).........................................................4, 17

*Mozingo v. Correct Manufacturing Corp.*, 752 F.2d 168 (5th Cir. 1985) ..................13

*Neder v. United States*, 527 U.S. 1 (1999)...................................................17

*Netbula, LLC v. Chordiant Software, Inc.*, No. C 08-00019JW, 2009 WL 750201 (N.D. Cal. March 20, 2009) ....................................................................15

*Omega, S.A. v. Giftland Co.*, No. 03-Civ.-5808 (WJM), 2005 WL 1925791 (D. N.J. August 11, 2005)........................................................................13

*Pardazi v. Cullman Medical Center*, 896 F.2d 1313 (11th Cir. 1990) .....................18

*Parker v. Google*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) ....................................15

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ......................17

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007)............................15

*Pickwick Music Corp. v. Record Productions, Inc.*, 292 F. Supp. 39 (S.D.N.Y. 1968) ..........4

*Playboy Enters., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 438 (S.D. Fla. 1995) .............14

*PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802 (11th Cir. Fla. 2010)........18

*Qantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249 (S.D. Fla. 2007)..............5-6

*Seven Arts, Inc. v. Kalantzakis*, 326 F. Supp. 80 (S.D. Tex. 1971) ..............................11

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963) ......................17

*Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 U.S. Dist. LEXIS 9014 (S.D. Fla. Feb. 8, 2007) ....................................................4

*Songmaker v. Forward of Kansas, Inc.*, No. 90-4156-SAC, 1993 WL 106833 (D. Kan. Mar. 5, 1993).....................................................................14

*Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801 (11th Cir. 1985) .................................................................1, 3, 14, 16

*U.S. Media Corp., Inc. v. Edde Entertainment, Inc.*, No. 94 Civ. 4849(MBM)(MHMD),
    1996 WL 520901 (S.D.N.Y. Sept. 12, 1996)..........................................................................4

*UMG Recordings v. Shelter Cap. Partners*, __ F.3d __, No. 09-55902, 2011 WL 6357788
    (9th Cir. 2011).....................................................................................................................16

*Viacom Int'l v. YouTube, Inc.*, 718 F. Supp. 2d 514 (S.D.N.Y. 2010) .........................................17

### STATUTES

17 U.S.C. § 512(c)(1)(B) ..............................................................................................................16

### OTHER AUTHORITIES

5 C. Wright & A. Miller, Federal Practice and Procedure, § 1391 ................................................18

Fed. R. Civ. P. 12.........................................................................................................................18

## CITATION LEGEND

1.  "PSUF" shall refer to specific paragraph numbers of uncontroverted facts in Plaintiffs' Statement of Uncontroverted Facts, available publicly at Docket No. 323, submitted in support of Plaintiffs' Motion for Summary Judgment, dated February 17, 2012.

2.  "Yeh Ex. __," shall refer to exhibits attached to the Declaration of Jennifer V. Yeh in Support of Plaintiffs' Motion for Summary Judgment, dated February 16, 2012, available publicly at Docket No. 324-1, as well as the Declaration of Jennifer V. Yeh in Support of Plaintiffs' Opposition to Defendants' Motions for Summary Judgment, filed herewith.  For the convenience of the Court, the exhibits attached to the Yeh Declarations have been consecutively numbered, with Exhibits attached to the Yeh Declaration filed today continuing from the numbering in the previous set of exhibits.  Where appropriate, citations to such exhibits may also include pinpoint citations to the page number(s), and paragraph or line numbers, internal to the cited document.  In some instances where individual Yeh Declaration exhibits were not paginated, page numbers have been added manually for ease of the Court's reference.  The parentheticals indicate the nature of the item cited – *e.g.*, deposition transcripts ("dep.") – or documents produced in discovery by various parties.  Thus, by way of illustration, "Yeh Ex. 1 (Titov dep.) at 200:1-10" would refer to the deposition of defendant Anton Titov, which could be found in Exhibit 1 to the Yeh Declaration, at page 200 of the transcript pages, at lines 1 through 10.  And, "Yeh Ex. 110 at 2" would refer to Exhibit 110 to the Yeh Declaration, and specifically the page of that Exhibit found at page 2 of the numbered Exhibit pages.

3.  "Pls. Mot." shall refer to Plaintiffs' Motion for Summary Judgment, dated February 17, 2012, available publicly at Docket No. 322.

4.  "Titov Mot." shall refer to defendant Anton Titov's Motion for Summary Judgment, dated February 17, 2012, available publicly at Docket No. 316.

5.  "Opp. to TSUF" shall refer to Plaintiffs' Counterstatement of Facts in Opposition to Titov's Statement of Undisputed Facts, filed herewith.

6.  "Foster Decl." shall refer to the Declaration of Ian Foster, Ph.D., in Support of Plaintiffs' Motion for Summary Judgment, dated February 17, 2012, available publicly at Docket No. 325-17.

## PRELIMINARY STATEMENT

In comparable cases where courts have found Internet-based pirate services liable for copyright infringement, including *Limewire*, *Usenet.com* and *Fung*, the courts have held the relevant corporate principals liable in their individual capacity as well, and did so on motions for summary judgment. Those decisions were compelled by firmly established common law holding that an individual who substantially participates in the infringing conduct of a corporation, or who profits from such infringement while failing to exercise his ability to limit it, is personally liable for the resulting infringement. Indeed, in cases involving infringing websites such as Hotfile – where the principals behind the infringement can simply shut down one infringing website and go on to launch the next one – individual liability for the key corporate principals is essential both to hold the responsible persons accountable and to ensure that any remedy against the corporate defendants will have a meaningful effect.

There can be no real dispute that such personal liability should attach to Anton Titov here. It is well-established that an individual is personally liable for a corporation's copyright infringement when the individual either "has the ability to supervise infringing activity and has a financial interest in that activity," *or* "personally participates in that activity." *Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985). Titov independently satisfies both criteria.

Titov was a central figure in defendant Hotfile Corp.'s infringing conduct. Titov is a manager and one of the three founders of Hotfile Corp., and the lead developer of the Hotfile website. PSUF 21(a)(i), 22(a). As the only owner with any technical know-how, Titov has direct, personal responsibility over the infringing features of the website, as well as features that could have been used – but were not – to limit the rampant infringement on the site. PSUF 2-5; PSUF 16(j). Moreover, Titov and his two co-owners are the only ones with any managerial authority at Hotfile Corp. at all. Yeh Ex. 1 (Titov dep.) at 613:3-617:10 (Hotfile's contractor staff have no managerial authority). Thus, as co-owner and manager, Titov personally participates in substantially all decisions related to Hotfile, including those at the center of Hotfile's infringing activities.

In addition, Titov is the sole officer and manager of Hotfile Ltd., a related entity that handles most of Hotfile's finances. In that capacity, Titov is responsible for making payments to Hotfile's uploader Affiliates, whom Hotfile and Titov encourage to post infringing files to the

website, and to Hotfile's website Affiliates, whom Hotfile and Titov encourage to post and promote "download links" to those infringing files. PSUF 22(b).

Lastly, Titov is the sole owner and manager of Lemuria Communications, Inc. ("Lemuria"), a company that Titov founded to act as Hotfile's captive Internet Service Provider ("ISP") and which shields Hotfile from having its Internet service cut off by a legitimate third-party ISP due to Hotfile's high volume of copyright infringement. As discussed below, Lemuria is far more than just Hotfile's ISP. Lemuria commissioned the development of the software that runs the Hotfile website (and continues to be responsible for overseeing software maintenance and upgrades); Lemuria also contracted directly for the staff that ran Hotfile on a daily basis, and handles most commercial activities for Hotfile, from purchasing servers to paying Hotfile Corp.'s legal bills in this case. *See generally* PSUF 21; PSUF 22(a)(ii). Titov is responsible for all of these Hotfile functions carried out through Lemuria.

These three companies – Hotfile Corp., Hotfile Ltd. and Lemuria – are at the heart of the Hotfile enterprise and responsible for all Hotfile's infringing activities. Titov manages all three companies, and is the sole manager of Hotfile Ltd. and Lemuria. In addition, as a major shareholder and manager of Hotfile Corp. with substantial control over both the design of Hotfile's website and the company more generally, Titov both personally participated in Hotfile's infringing activities and had the ability to mitigate the infringement, but chose instead to profit from it.

These facts, which compel summary judgment against Titov, are not in dispute. They are established by Titov's own deposition testimony and contemporaneous documents with which Titov did not take issue. Titov's motion for summary judgment ignores the vast majority of that evidence, instead focusing on facts that are immaterial. Principally, Titov relies on claims that his fellow two co-owners, Rumen Stoyanov and Atanas Vangelov, also had pertinent responsibilities. However, that Titov's two business partners may share responsibility (and personal liability) for Hotfile's infringement does not absolve Titov. None of the owners holds a majority share in the company, and all three of them participate in the operation of Hotfile and make policy decisions collectively. *See* Part I.C.1 *infra*. Contrary to Titov's assertions, "singular and dominant" control over a corporation is not needed to meet either the personal participation standard or the vicarious liability standard for holding individuals responsible for corporate conduct. Courts routinely find liability where, as here, a small group of individuals

2

participate in the infringing activity or share in the management and profits of an infringing corporation. *See* Part I.A *infra.*

Finally, Titov argues that he is not subject to personal jurisdiction in Florida. However, Titov long ago waived any challenge to the Court's jurisdiction. Under Rule 12, the Court need not (and cannot) consider that argument. *See* Part III *infra.*

Under the applicable law and undisputed facts, summary judgment should be denied to Titov and entered in favor of plaintiffs.

**ARGUMENT**

**I.    TITOV IS LIABLE FOR PERSONALLY PARTICIPATING IN HOTFILE'S INFRINGING CONDUCT.**

The evidence is undeniable: Titov played a central role in Hotfile's operations and personally participated in its infringement-promoting activities. *Southern Bell*, 38 F.3d at 1183-84. While Titov claims that his fellow shareholders also participated in Hotfile's management and operations, that cannot create a triable issue of fact. It is routine for more than one person to participate in infringing corporate actions and for some or all of them be found personally liable on that basis. The undisputed record establishes Titov's personal liability.

**A.    Personal Participation In The Infringing Conduct – Not Exclusive Control Of The Infringing Corporation – Is The Governing Legal Standard.**

Titov's primary and oft-repeated argument against liability is that he does not have absolute power over Hotfile's operations, but shares in Hotfile's ownership and management. Titov seems to believe that he cannot be liable if he lacks the ability to direct the company's policies unilaterally. *See, e.g.*, Titov Mot. at 11-12 (protesting that Titov is a "minority …shareholder" and "does not have authority to establish general policy or make decisions about substantial aspects of the operations of Hotfile without the approval of the other shareholders"); Titov Dec. ¶ 39 (claiming that he cannot "make *unilateral* decisions affecting important aspects of Hotfile") (emphasis added); Titov Mot. at 12 (claiming that "courts typically reserve 'guiding spirit' liability for individuals who exert singular and dominant control over a corporation and its accused conduct"). Thus, Titov cites cases where officers with sole, exclusive control over infringing corporations *were held liable*, seeking to suggest that complete, unfettered control by one individual is the only basis for individual liability. *See* Titov Mot. at 12. It is not. While singular control may be sufficient, it is not the standard for personal liability.

3

The "personal participation" or "guiding spirit" tests do not require "singular and dominant" control over a corporation.  Courts, including in this district, routinely reject any requirement that an individual defendant be the sole or most senior corporate decision-maker: The Eleventh Circuit's "*Southern Bell* does not require ultimate authority, nor does it require only one person to have authority." *Foreign Imported Prods. & Pub., Inc. v. Grupo Indus. Hotelero S.A.*, No. 07-22066-CIV, 2008 WL 4724495, at *14 (S.D. Fla. Oct. 24, 2008); *accord U.S. Media Corp., Inc. v. Edde Entertainment, Inc.*, No. 94 Civ. 4849(MBM)(MHMD), 1996 WL 520901, at *5-6 (S.D.N.Y. Sept. 12, 1996) (vice president-level corporate officer personally liable on the basis of participation in and oversight of infringing activity even though he lacked "ultimate policy-making authority" of more senior officers).  Personal liability can be imposed even on individuals who lack *any* formal corporate authority if they are personally involved in infringing activities as a practical matter. *See Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160-61 (3d Cir. 1984) (brother of corporate shareholder who was not a corporate officer personally liable for corporate infringement because of participation in infringing activities).

Nor, for that matter, are corporate principals immune from personal liability simply because they act in a small group, with no single one of them exerting "singular" control over corporate policy. *See, e.g., Pickwick Music Corp. v. Record Productions, Inc.*, 292 F. Supp. 39, 40-41 (S.D.N.Y. 1968) (three corporate officers who formed corporation, ran it on a day-to-day basis, and divided its profits among them each personally liable for corporate infringement); *see also Microsoft Corp. v. Md. Micro.com, Inc.*, Civ. No. JFM-01-3797, 2003 U.S. Dist. LEXIS 13735, at *13-14 (D. Md. July 15, 2003) (holding two corporate officers liable where "[b]oth men own one-third of the company and serve as corporate officers").  It is in fact commonplace for multiple individuals simultaneously to be liable for the same infringing corporate actions. *See, e.g., Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 U.S. Dist. LEXIS 9014, at *34-35 (S.D. Fla. Feb. 8, 2007) ("jury could reasonably find that [all three defendant shareholders] directed, controlled, ratified, participated in, or were moving forces behind [corporate defendant's] allegedly infringing activity" and thus were all liable individually); *Johnson & Johnson Consumer Cos. v. Aini*, 540 F. Supp. 2d 374, 398 (E.D.N.Y. 2008) (three individual defendants could be "moving, active conscious force[s]" behind trademark infringement); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04 Civ. 0604

(CSH), 2004 U.S. Dist. LEXIS 15668, at *46-47 (S.D.N.Y. Aug. 10, 2004) (four individual defendants could be "moving, active, conscious force[s] behind [the defendant corporation's infringement]") (citations omitted).

The only thing proved by Titov's attempts to shift responsibility onto Stoyanov and Vangelov is that they would be liable as well, were they parties to this case. But Stoyanov and Vangelov were not, and could not have been, known to plaintiffs when they brought this action. The record shows a conscious effort to keep their identifies concealed and to have Titov operate as the public face of the company. *See, e.g.*, Yeh Ex. 135 (Vangelov telling Titov that "I'm worried …the new lawyers . . . may mention my name. For the time being, they [plaintiffs in previous copyright infringement suit against Hotfile] don't need to know all of us"); *id*. Ex. 136 (Vangelov shifting to Titov responsibility for dealing with payment processing vendor and explaining "I have told [the vendor] I am no longer in the company"). Even to this day, Hotfile contends that the names Stoyanov and Vangelov are confidential and must be redacted from any public filings. By the time plaintiffs learned of their involvement, adding them as parties to this case (especially given their status as residents of Bulgaria) would have posed procedural challenges and materially disrupted the schedule ordered by the Court. Stoyanov's and Vangelov's absence from the case caption, however, does not mean that they would not also be personally liable along with Titov, or that Titov can be exonerated from liability for his own wrongful actions.

In sum, Titov's motion is based on a misunderstanding of the governing law. As shown below, there is no real factual dispute as to the scope of Titov's personal involvement in Hotfile and its infringing actions.

### B.   Titov's Conclusory Characterizations Of His Involvement Are Either Unsupported Or Irrelevant.

Titov's specific arguments are all variations on his mistaken formulation of the legal standards guiding individual liability. They further rely on conclusory characterizations about Titov's role at Hotfile that are unsupported by the evidence and therefore cannot create a factual dispute. *E.g., Harrell v. Eller Mar. Co.*, No. 8:09-cv-1400-T-27AEP, 2010 U.S. Dist. LEXIS 104826, at *13-14 (M.D. Fla. Sept. 30, 2010) ("the effect, or characterization, of undisputed facts, … does not raise a triable issue"); *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F.

Supp. 2d 1249, 1260 (S.D. Fla. 2007), subsequent determination, 491 F. Supp. 2d 1123 (S.D. Fla. 2007), aff'd, 290 F. App'x 324 (11th Cir. 2008).

First, Titov argues that he cannot be liable for "the decision to engage in the infringing acts" because Stoyanov claimed to have first had the idea to start Hotfile and to model its Affiliate Program after those of other notorious download hubs. Titov Mot. at 3-4, 10, 11. But Titov made the "decision" to join with Stoyanov to implement that idea. *See, e.g.*, Titov Mot. at 4 (after all three owners researched the market, "they decided" on Hotfile's business plan); Opp. to TSUF 7-8. And, once in business, Titov assumed a central role, personally participating in nearly all of Hotfile's infringing activities, as described below. *See infra* Part I.C.

Second, Titov makes the conclusory argument that he "is not responsible for...DMCA and legal compliance at Hotfile," Vangelov is. Titov Mot. at 11. This self-serving characterization is again irrelevant. The touchstone is Titov's participation, not the putative formal division of corporate responsibilities. *See Redd Horne*, 749 F.2d at 160. The undisputed record, as discussed below, shows Titov *personally participating* in decisions about whether or not to terminate users, how to handle copyright owner complaints, and how to hide Hotfile's support for copyright infringement. *See* Part I.C.5 *infra*.

Third, Titov claims that the personnel who work for Hotfile "are employees of Blue Ant [a company owned and operated by Stoyanov and Vangelov] and do not report to" him. Titov Mot. at 11. While perhaps nominally true, Titov's characterization is immaterial (it is also misleading). As described below, Blue Ant contracted those employees not to Hotfile Corp. but to *Lemuria*, which is owned, operated and managed by Titov – and no one else. *See* Part I.C.4 *infra*. The record further shows Titov personally participating in their activities and giving them direction on matters that go to the heart of Hotfile's infringing activities. *See* Part I.C.5 *infra*.

Finally, Titov makes the conclusory assertion that "[h]is responsibilities are limited to technological issues." Titov Mot. at 6-7, 11. Even if taken at face value, this is an *admission*, not a defense. Hotfile is a technology company that in large measure encouraged, contributed to, and failed to limit infringement through its technology decisions. Indeed, in this case, defendants have argued that the computer source code for the Hotfile system is their "crown jewel" and the essence of their business. Yeh Ex. 137 (Transcript of Jan. 13, 2012 Hearing) at 59:13-16 ("This is the crown jewel of an Internet company"). Titov's two business partners had no technological training. *See* Yeh Ex. 120 (Stoyanov dep.) at 8:18-9:12 (Stoyanov's education

in mathematics); *id.* Ex. 121 (Vangelov dep.) at 11:11-12:12 (Vangelov studied economics). Being the head technologist and lead developer for the Hotfile website put Titov at the center of activities related to Hotfile's infringement. *See* Part I.C.2 *infra.*

In any event, while being the head technologist in this case would be sufficient on its own to establish Titov's personal liability, the undisputed facts show below that Titov was personally involved to a much greater extent. *See* Part I.C *infra.* That Titov's business partners may also have had some involvement cannot and does not absolve Titov. *See generally Foreign Imported Productions*, 2008 WL 4724495, at *14 (standard "does not require ultimate authority, nor does it require only one person to have authority").

### C. Titov's Personal Participation in Hotfile's Infringing Activity Was Pervasive.

When the correct legal standard is applied – *i.e.*, whether an individual "directs, controls, ratifies, participates in, or is the moving force behind the infringing activity," *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) – the case for Titov's personal liability becomes overwhelming.[1]

1. Titov Manages And Co-Owns Hotfile.

Titov's ownership stake and management role in Hotfile are both substantial. *See* Opp. to TSUF 10. Hotfile Corp. has only three individual owners, and Titov's share, at 26%, is significant. PSUF 21(a)(i). So important were his contributions that he was not required to pay into the company in order to obtain a significant ownership interest. Titov's 26% share (increased from an original 20%) was based entirely on the value and significance of his operational participation and contributions. *See* Yeh Ex. 121 (Vangelov dep.) at 164:22-165:7.

Titov and the other two shareholders did not initially assign themselves formal titles. However, when an inquiry by their payment processor required them to identify corporate officers, Titov's plan was to list himself as the company's "Chief Executive Officer." Yeh Ex. 134.[2] Titov holds himself out as the company's "manager" – indeed, in this very litigation, he has repeatedly signed verifications on behalf of Hotfile as its manager. *See, e.g.*, Yeh Ex. 133

---

[1] Plaintiffs incorporate by reference their Motion For Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, filed February 17, 2012, available publicly at Docket No. 324, at pp. 35-40 (describing the basis for Titov's personal liability).

[2] This plan was later abandoned out of concern that it might be unlawful under Bulgarian law for the principals to claim corporate titles. *See* Yeh Ex. 132.

(one of several Hotfile interrogatory verifications signed by Titov as "Manager" for Hotfile Corp.). Titov also individually holds a power of attorney to legally bind Hotfile Corp., and holds signing authority on the company's bank account. PSUF 21(a)(i). According to Titov himself, other than Titov and his two co-owners, no one has ever acted in a managerial capacity for or on behalf of Hotfile. PSUF 22(d)(i).

Titov further acknowledged that "it's not impossible for me to make a decision alone" as long as he believed one of the other shareholders would back the decision, but that the situation never comes up because Hotfile's three owners govern the company by consensus. PSUF 22(e); Yeh Ex. 1 (Titov dep.) at 61:9-12 ("Major decisions will generally be discussed and maybe voted, but I would say that's too formal a word for our environment. But between the shareholders of Hotfile. That would include me, of course."). Proposals put forth by one of the shareholders were generally approved by the others without incident; Titov in fact could not recall *any* instance in which the shareholders had disagreed over *any* decision concerning Hotfile's business. Yeh Ex. 1 (Titov dep.) at 69:24-70:2; 597:11-598:1; 601:6-602:3; 604:11-13; 605:23-606:2; 608:5-8. Hotfile's business model was one that "they decided" to adopt together. Titov Mot. at 4-5. Put differently, Titov and his two business partners have discussed, agreed on, and ratified the key decisions concerning Hotfile, including the site's design, the creation and structure of its Affiliate program, and (by omission) its failure to implement a repeat copyright infringer policy or adopt other technology to lessen infringement. *Babbit Electronics*, 38 F.3d at 1184 (individual liability for one who, *inter alia*, "ratifies" infringing conduct).

> 2. Titov Designed And Programmed The Hotfile System.

Titov was the "lead developer" of the Hotfile system. By his own estimate, Titov personally wrote about 70% of the source code (the computer operating instructions) that controls the Hotfile site. PSUF 22(a)(i). He also played a role in the user-facing design and functionality of the website, and had input into the design and functioning of the Affiliate program. PSUF 22(a)(iii). As Titov's motion candidly admits, "implementation input" for the functionality of the Hotfile website came "from all three founders." Titov Mot. at 7. Through his ownership and control over Lemuria – described below – Titov is further responsible for the ongoing maintenance of Hotfile's software and its continued development. PSUF 22(a)(ii).

As the site's developer, Titov was responsible for Hotfile's earlier practice of disabling only individual "download links" identified by copyright owners, leaving up the infringing

8

"master" files to be further infringed. Pls. Mot. at 13-14, 24, 39; PSUF 22(f)(i). In addition, while he admitted that it would have been "trivial" for Hotfile to identify users who had uploaded infringing files identified in copyright owner notices, Titov did not implement such a system for Hotfile until after plaintiffs initiated this litigation. PSUF 2-5. As explained in Plaintiffs' Motion for Summary Judgment, that omission was critical, resulting in rampant infringement and extensive use of the site by users who under the law should have been terminated. *See* Pls. Mot. 10-12. Nor did Titov implement readily-available fingerprinting technology to prevent infringing files from being uploaded to the site, even though he personally understood that major sites like YouTube had deployed such technology to limit the uploading of infringing files. PSUF 16(j); Pls. Mot. at 32. Thus, Titov created Hotfile without common and well-recognized methods for preventing infringement. *See also* Opp. to TSUF 9.

        3.    <u>Titov Exclusively Manages Hotfile Ltd., Which Pays Hotfile's Affiliates And Processes Most Of Its Incoming Payments.</u>

      As shown in plaintiffs' motion for summary judgment, Hotfile's so-called "Affiliates" are overwhelmingly infringers, paid by Hotfile to seed the site with unauthorized content to attract more users. *See* Pls. Mot. at 8. However, Hotfile does not directly pay its Affiliates, nor is Hotfile directly paid by most of its subscribers. Rather, Hotfile Ltd. makes and receives most such payments for Hotfile. PSUF 21(b)(ii). Significantly, neither Stoyanov nor Vangelov has any corporate role at Hotfile Ltd. – Titov is the company's sole "managing director," with express responsibility for the "control and management of the overall activities of [Hotfile Ltd.] in all its aspects." Yeh Ex. 1 (Titov dep.) at 88:12-89:17. Titov is also the sole individual with signing authority on Hotfile Ltd.'s bank account, through which both the incoming and outgoing funds are channeled. PSUF 21(b)(i). Thus, Titov is personally responsible for making weekly payments to Hotfile Affiliates, which at one point he did from a PayPal account in his own name. PSUF 22(b).[3] In addition, Titov also personally promoted the Affiliate program and solicited Affiliates by posting to online forums. Yeh Ex. 86 at 6; Yeh Ex. 1 (Titov dep.) at 77:17-78:2. And he is personally responsible for handling the payments by Hotfile's subscribers, which are

---

[3] Titov's argument that he moved his personal funds out of his account before using it to pay Hotfile's affiliates, *see* Titov Mot. at 7, misses the point – which is not whether Titov used his own funds, but rather that he personally participated in paying "Affiliates" who were engaged in massive copyright infringement. *See also* Opp. to TSUF 12.

Hotfile's only revenue source. *See* PSUF 21(b)(ii); Opp. to TSUF 12; *see also* Titov Decl. in Support of Motions for Summary Judgment, available publicly at Docket No. 321-1, ¶ 7.

        4.    <u>Titov Exclusively Owns And Manages Lemuria, Which Had Responsibility For Many Essential Hotfile Functions.</u>

Hotfile outsourced key functions to Lemuria, a Florida corporation of which Titov is the sole owner, operator and officer. PSUF 21(c). Through Lemuria, Titov controls substantially all of Hotfile's technical, Internet hosting, and employee operations. *See* Opp. to TSUF 11.

First, Lemuria is Hotfile's ISP. Through an undocumented "arrangement" with Hotfile Ltd., Lemuria provided Hotfile with Internet access and webhosting, which Lemuria, in turn, contracted from third parties. In this way, Lemuria operated as an intermediary between Hotfile and any third-party ISP, which might otherwise cut off Hotfile's Internet Service, given the high volume of infringement on Hotfile. Indeed, Titov formed Lemuria only after one of Hotfile's previous ISPs had received a subpoena seeking the identity of Hotfile's operators, and another had complained about the volume of copyright complaints it had been receiving about Hotfile. PSUF 21(c)(iii). Although Titov denies that he formed Lemuria *because* the first of these incidents, the reasons for initially founding the company are immaterial: because such complaints from copyright owners now go to Lemuria, rather than a third party, Lemuria (*i.e.*, Titov) ensures that Hotfile's Internet service, which is essential to its operation, will not be jeopardized by complaints about copyright infringement. PSUF 21(c)(ii).[4]

Lemuria's services do not end with webhosting. It is Lemuria (*i.e.*, Titov) that contracts with third parties for Hotfile's collocation facilities, bandwidth and servers. PSUF 21(c)(iv). It is Lemuria (*i.e.*, Titov) that commissioned the initial development of the underlying software used to run the Hotfile website, and that continues to have responsibility for the ongoing development and maintenance of Hotfile's software. PSUF 21(c)(v). And, it is Lemuria (*i.e.*, Titov) that contracts with Blue Ant for the staff that operate the Hotfile site on a day to day basis. Yeh Ex. 80; Yeh Ex. 1 (Titov dep.) at 105:8-108:25. Lemuria is even paying Hotfile's litigation counsel in this case. PSUF 21(c)(iv). All of these central functions, which ordinarily would be performed by Hotfile Corp., are in fact performed by Lemuria, *i.e.*, Titov.

---

4 While Titov's motion claims that Lemuria now provides services to an unrelated company by the name of Neterra, *see* Titov Mot. at 8 n.10, Titov admitted that the operators of Neterra are friends for whom Lemuria provides free hosting services. Yeh Ex. 1 (Titov dep.) at 122:18-25; 126:12-23. Thus, Lemuria has never had a business purpose other than serving Hotfile.

Just a few weeks ago, on February 23, 2012, Hotfile and Lemuria belatedly documented a "services agreement" purporting to "memorialize the terms of their [prior] oral agreement." Yeh Ex. 138 at HF02868393.  That services agreement confirms Lemuria's central role.  In addition to webhosting, Lemuria undertakes to perform a variety of services for Hotfile, including the "purchasing of computer hardware"; "[l]easing a datacenter"; "[m]aintaining said hardware at the datacenter"; "mak[ing] payments on behalf of Hotfile Corp. as requested by Hotfile Corp., including without limitation paying vendors servicing Hotfile Corp." and "[s]uch other services as may be agreed upon by the parties." *Id.* at HF02868393-4.  The agreement even contemplates that "Hotfile Corp. shall grant Lemuria access to Hotfile Corp's PayPal account in order to enable Lemuria to make payments to third parties on behalf of Hotfile Corp." *Id.* at HF02868394.

As the sole owner and operator of Lemuria, Titov is ultimately responsible for all of these essential Hotfile functions.  *See generally Seven Arts, Inc. v. Kalantzakis*, 326 F. Supp. 80, 82 (S.D. Tex. 1971) (individual liability where individual defendant, notwithstanding claims that he did not control corporate defendant, controlled related company and "the business operations of these two corporations were totally intermingled").

### 5. Titov Directed Hotfile's Staff On Infringement-Related Issues.

Titov claims that Hotfile's staff "reported" to Stoyanov and Vangelov, and suggests that this somehow absolves him of liability.  Titov Mot. at 11.  But whether the staff also reported to others is irrelevant.  The undisputed record establishes that Titov gave the Hotfile staff direction and that, as contractors to Titov-owned Lemuria, Titov had direct authority over them.  PSUF 21(c), 22(d); Yeh Ex. 80; Yeh Ex. 1 (Titov dep.) at 107:15-108:15; 128:19-130:18.  The record also establishes that those employees turned to Titov for guidance about how to respond to copyright owner notifications, and that Titov provided the requested direction.  *See, e.g.*, Yeh Ex. 1 (Titov dep.) at 317:15-320:2 & Yeh Ex. 21 (employee asking Titov "What shall we do" in responding to copyright complaint; Titov answering "[b]e more strict in stopping these days, because during the case of Perfect 10 we may be asked how many accounts we have been stopped").  Titov himself admitted, "yes, I would say that I have certain authority over them." Yeh Ex. 1 (Titov dep.) at 132:18-20; Opp. to TSUF 6.

11

Titov also retained and manages Hotfile's appointed DMCA agent in the United States, who does not actually respond to DMCA notices, but merely forwards them to Titov or others for handling.  PSUF 22(d)(ii).

> 6.    Titov Was Personally Aware Of And Fostered The Massive Infringement On Hotfile.

Given his substantial and significant involvement in virtually every aspect of Hotfile's business, Titov fully understood the scope of Hotfile's infringement.  He participated in discussions with the other two shareholders in which they observed that Hotfile was becoming the "flagship for non-licensed content."  PSUF 22(f)(iii).

Indeed, Titov actively joined with Hotfile's co-owner Vangelov to mislead copyright owners regarding copyright infringement on the site and Hotfile's responses to it.  Specifically, shortly after Hotfile's launch, knowing that Hotfile needed a DMCA "repeat infringer" policy – but also that Hotfile needed its Affiliates to upload popular content to attract users to the site (*see* Pls. Mot. at 10-11) – Vangelov drafted a response to go out under Titov's name to copyright owners who complained of infringement.  The document falsely claimed that it was Hotfile's policy to "flag[] the users that have numerous complain[t]s" and terminates repeat infringers. Yeh Ex. 12.  When Vangelov asked Titov if he approved the document, Titov responded "It's great."  *Id.*; *see also* PSUF 4(b)(ii) (Titov admits that the draft email was not a truthful representation of Hotfile policy).

Consistent with the foregoing, Titov also counseled Hotfile personnel to avoid taking actions that would make Hotfile's tolerance of infringement obvious.  For example, noting that "piracy activity obviously prospers" on the website of one of Hotfile's paid Affiliates, Titov advised Hotfile staff not to advertise on the site because "it must not *appear*" that Hotfile supports a site engaged in so much infringement.  Yeh Ex. 104 (emphasis added).  Significantly, Titov continued paying the Affiliate rather than terminating it.  Foster Decl. ¶ 56.

*    *    *    *

The applicable legal standard for imposing personal liability for corporate conduct requires plaintiffs to prove that Titov "directs, controls, ratifies, participates in, *or* is the moving force behind the infringing activity."  *Babbit Electronics*, 38 F.3d at 1184 (emphasis added). Titov does, and is, all of that.  *E.g.*, *Foreign Imported Productions and Pub., Inc.*, 2008 WL 4724495, at *14 (enough that "both [defendants] have control over the content of the website" on which infringement took place).

12

**D.      Case Law Compels A Finding That Titov Is Personal Liable.**

Titov is nothing like the defendants in the various cases he relies upon, whose relationship to the infringement was remote, if not altogether nonexistent:

o   In *Mozingo v. Correct Manufacturing Corp.*, 752 F.2d 168 (5th Cir. 1985), the personal injury case on which Titov principally relies, *see* Titov Mot. at 11-12, the individual defendant was high-ranking, but his role was "peripheral" – he "did not direct the manufacture" of the allegedly defective product that injured the plaintiff and "indeed appears to have had little or nothing at all to do with [its] production." 752 F.2d at 173-74. His involvement was limited to approving a single prototype eight years earlier, which he did not know had later been manufactured. *Id.* at 173. The *Mozingo* defendant bears no resemblance to Titov.

o   In *GamerModz, LLC v. Golubev*, No. 8:10-cv-1466-T-27TGW, 2011 WL 4755026 (M.D. Fla. Aug. 3, 2011), report and recommendation adopted by 2011 WL 4753535 (M.D. Fla. Oct. 7, 2011), *see* Titov Mot. at 12, the individual defendant was a passive investor who had no knowledge of the trademark-infringing website. 2011 WL 4755026, at *18-19. Here, Titov participated in the design of, and then technically implemented and managed, the site where the infringing activity took place. He was anything but a passive investor.

o   In *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472 (11th Cir. 1991), *see* Titov Mot. at 10, 12-13, the individual defendant was merely a "friend" and business "associate" of the principal trademark infringer, and had done no more than "look after the showroom" while the principal infringer "was out of town." 931 F.2d at 1478.

o   In *Innospan Corp. v. Intuit, Inc.*, No. C 10-04422 WHA, 2011 WL 856265 (N.D. Cal. Mar. 9, 2011), *see* Titov Mot. at 13, the plaintiff "fail[ed] … to allege any facts demonstrating that [the individual] defendants 'authorized,' 'directed,' or 'participated' in the alleged trademark infringement, "and failed to refute" evidence showing that they were not even aware of it at all. *Id.* at 8.

o   And in *Omega, S.A. v. Giftland Co.*, No. 03-Civ.-5808 (WJM), 2005 WL 1925791 (D.N.J. Aug. 11, 2005), *see* Titov Mot. at 13, the individual defendant – a third-party vendor who processed payments for counterfeit goods – had no understanding of the infringing website. 2005 WL 1925791 at *1-2, 3-4.

13

In contrast, Titov was personally involved in designing, creating and managing Hotfile, and personally participated in nearly all Hotfile's infringing activities. Thus, this case fits squarely in the line of cases involving corporate figures who have been held personally liable, on motions for summary judgment, for the infringing acts of their companies. *See, e.g., Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 124, 158-59 (S.D.N.Y. 2009) (principal provided "overall strategic vision," directed marketing materials, and "had an active role in the corporate Defendants' technical operations"); *Arista Records, LLC v. Lime Group*, 784 F. Supp. 2d 398, 438 (S.D.N.Y. 2011) ("*Limewire*") (principal, *inter alia*, "directed and approved many aspects of [software's] design and development"); *Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578, 2009 WL 6355911, at *5 (C.D. Cal. Dec. 21, 2009) (similar). There is no basis for a different outcome here.

## II.   TITOV IS VICARIOUSLY LIABLE FOR HOTFILE'S INFRINGEMENT.

Titov is also liable under the common-law vicarious liability standard because he (i) "ha[d] the ability to supervise infringing activity" and (ii) "ha[d] a financial interest in that activity." *Southern Bell*, 756 F.2d at 811. Titov's "vicarious" liability is independent of his "personal participation" liability discussed above. *See* Part I *supra*. In arguing against "vicarious" personal liability, Titov simply applies the wrong law; he relies on cases about the DMCA instead of cases applying the controlling common law test. Under the correct standard, summary judgment should be granted for plaintiffs – not for Titov – on this theory as well.

### A.   Titov Directly Profits From Infringement on Hotfile.

Titov is financially interested in Hotfile's infringement because he has an ownership interest in the corporation and participated in the profits Hotfile made from infringement. *See Home Design Servs., Inc. v. Park Square Enters., Inc.*, No. 6:02-CV-637-ORL28JGG, 2005 WL 1027370, at *4 (M.D. Fla. May 2, 2005) ("As a 3% owner of Park Square, it is clear that [defendant] had a financial interest in the alleged infringing activities") (internal quotation marks omitted); *Songmaker v. Forward of Kansas, Inc.*, No. 90-4156-SAC, 1993 WL 106833, at *6 (D. Kan. Mar. 5, 1993) (sufficient financial interest in infringing activity where officer was shareholder). In this case, Titov owns 26% of Hotfile Corp. and admits to having received *millions of dollars* in dividends from Hotfile Corp. PSUF 23(b)(i); *Playboy Enters., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 438, 440 (S.D. Fla. 1995) (receipt of payments from

corporation in form of "distributions to shareholders" shows financial interest in infringing activity).

There can be no question that Titov benefitted financially as a consequence of Hotfile's infringement – the connection between copyright infringement and Hotfile's earnings is direct. Hotfile is used overwhelmingly for infringement. PSUF 10(a). Defendants acknowledge that the goal of Hotfile's Affiliate program is to draw potential "premium" subscribers to Hotfile, and users have confirmed that they bought premium subscriptions specifically to download copyright infringing content. PSUF 16(e); *see also* PSUF 16(e)(ii) (defendants' economist agrees). Indeed, to confirm the direct and obvious relationship, the Court need look no further than the collapse in Hotfile's profitability since it began terminating infringing users after plaintiffs brought this case. *See* Yeh Ex. 70 at 7 (collapse in net revenues beginning in February 2011).

Titov misstates the law in arguing that Hotfile does not profit from infringement because "infringing and non-infringing users make the 'same kind of payment.'" Titov Mot. at 16. It is well-established that "the relevant inquiry is whether the infringing activity constitutes a draw for subscribers." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117 (9th Cir. 2007) (internal quotation marks omitted); *Usenet.com*, 633 F. Supp. 2d at 156-57 ("the 'draw' of infringement need not be the primary, or even a significant draw – rather, it need only be 'a' draw"); *Arista Records, Inc. v. Flea World, Inc.*, Civ. A. No. 03-2670 (JBS), 2006 WL 842883, at *12-13 (D.N.J. Mar. 31, 2006); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th Cir. 1996).[5] Indeed, Titov cites a DMCA committee report in support of his argument, Titov Mot. at 16 (citing S. Rep. No. 105-190, p. 44), but the rest of the Committee's explanation, which Titov

---

[5] Titov's own cases agree. *See Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *Klein & Heuchan, Inc. v. Costar Realty Information, Inc.*, 707 F. Supp. 2d 1287, 1298 (M.D. Fla. 2010) ("increasing [a] customer base" and "attract[ing] customers" satisfies the standard), aff'd, 425 F. App'x 833 (11th Cir. 2011); *Capitol Records, Inc. v. MP3Tunes, LLC*, No. 07 Civ. 9931 (WHP), __ F. Supp. 2d __, 2011 WL 5104616, at *14 (S.D.N.Y. Oct. 25, 2011) (approving cases finding standard satisfied based on 'draw' where websites "promoted infringing activity to enhance the sale of user accounts or advertising revenue"). *Netbula, LLC v. Chordiant Software, Inc.*, No. C 08-00019JW, 2009 WL 750201 (N.D. Cal. Mar. 20, 2009) relied upon by Titov, is not to the contrary. There, the plaintiff simply failed to "allege a direct relationship between [defendants'] compensation" and the corporation's infringement. *Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006), is even further afield. There, a *pro se* plaintiff had "failed to allege any infringing conduct" and merely made a "vague and conclusory" allegation that Google profited from infringement without articulating how. *Id.* at 500.

cuts off, makes clear that, even in the case of flat fees, the financial benefit standard is satisfied "where the value of the service lies in providing access to infringing material." *Id.* (emphasis added). That is precisely the case here. PSUF 10(a), 16.

**B.    Titov Failed to Exercise His Ability to Limit the Infringement on Hotfile.**

Titov also clearly had the "ability to supervise [the] infringing activity" from which he profited. *Southern Bell*, 756 F.2d at 811. As discussed above, Titov was a central figure in Hotfile's operation. *See* Part I.C.1 *infra*. He was the lead designer for the Hotfile website. *See* Part I.C.2 *infra*. He managed the corporate entity that paid Affiliates and received payments from Hotfile's subscribers, and he was the sole owner and operator of the corporate entity that provided Hotfile's Internet connection and web services, that maintained the Hotfile website, and that contracted for Hotfile's employees. *See* Parts I.C.3 and I.C.4 *infra*; Opp. to TSUF 6-12.

The control element of vicarious liability is satisfied when the defendant has the right to block users or content from the system. *E.g., UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, No. 09-55902, __ F.3d __, 2011 WL 6357788, at *16 (9th Cir. Dec. 20, 2011) ("the vicarious liability standard … can be met by merely having the general ability to locate infringing material and terminate users' access"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (same). There is no question that Titov had this ability here – as evidenced by the fact that when finally forced to do so, he did in fact terminate infringing users and delete their files. PSUF 5(b). That satisfies the "control" element under the common law – and as Plaintiffs have previously shown, his failure to exercise it was devastating. *See* Pls. Mot. at 10-12 (showing consequences of Hotfile's failure to terminate repeat infringers).

Titov's arguments to the contrary – that he had no obligation to police Hotfile, and that he could not have an "ability to supervise" unless he had actual knowledge of the specific infringing files at issue – are founded on a series of ***DMCA cases*** that simply do not apply. *See* Titov Mot. at 14-15. The DMCA incorporates parallel "right and ability to control" language as part of one of its safe harbor tests. 17 U.S.C. § 512(c)(1)(B). Because that DMCA statutory language mirrors the traditional statement of common law vicarious infringement, courts have struggled with – and disagreed as to – whether the DMCA standard is the same as the common law standard. Every case Titov cites is one in which the court ***refused*** to apply the common law vicarious standard and instead adopted a higher DMCA statutory standard. *See UMG Recordings*, 2011 WL 6357788, at *16-18 (rejecting application of vicarious liability standard to

DMCA); *Viacom Int'l, Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 527 (S.D.N.Y. 2010) (same); *Capitol Records*, 2011 WL 5104616, at *14 ("'control of infringing activity' under the DMCA requires something more" than common law vicarious standard) (citing *Corbis v. Amazon.com*, 351 F. Supp. 2d 1090, 1110 (W.D. Wash. 2004) (same)); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1093 (C.D. Cal. 2009) (same); *CoStar Grp., Inc. v. LoopNet, Inc.*, 164 F. Supp. 2d 688, 704 (D. Md. 2001) (same), aff'd 373 F.3d 544 (4th Cir. 2004).[6]

Plaintiffs do not agree that the cases cited by Titov interpret the 512(c)(1)(B) safe harbor correctly,[7] but that is immaterial, as the DMCA safe harbor is not at issue. Titov's cases expressly apply a different standard than the common law standard that governs Titov's personal vicarious liability. Titov simply argues from the wrong law. *E.g.*, *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) (vicarious liability turns on financial benefit and control, "even in the absence of actual knowledge that the copyright monopoly is being impaired"); *MGM Studios, Inc. v. Grokster*, 545 U.S. 913, 930 n.9 (2005) ("vicarious liability . . . allows imposition of liability . . . even if the defendant initially lacks knowledge of the infringement").

Finally, for the same reasons discussed above, Titov's argument that he could not make "unilateral decisions," or make substantial policy decisions "without the approval and vote of the other shareholders," Titov Dec. ¶ 39; *see also* Titov Mot. at 13-14, is no more determinative of vicarious liability than of personal participation liability. No corporate officer or owner with less than a majority interest would *ever* be liable if that were the law. It is not. *See* Part I.A *supra*; *see also Microsoft Corp.*, 2003 U.S. Dist. LEXIS 13735, at *13-14 (holding that two individuals both had the requisite "ability to supervise," and were personally liable under the vicarious standard, where "[b]oth men own one-third of the company and serve as corporate officers").[8]

---

[6] *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), Titov Mot. at 15, is also factually inapposite. That case concerned Google's right and ability "to stop or limit the direct infringement of *third party websites*" – not on its own website. 508 F.3d at 1173 (emphasis added).

[7] *See Neder v. United States*, 527 U.S. 1, 21 (1999) (when "Congress uses terms that have accumulated settled meaning under…the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms") (quotation marks omitted; ellipsis in original).

[8] Contrary to Titov's suggestion, *see* Titov Mot. at 14, individual defendants are routinely held personally liable where the corporation is a secondary infringer and its customers or

### III.   TITOV HAS WAIVED ANY OBJECTION TO THE COURT'S JURISDICTION.

As a last resort, Titov also challenges to this Court's jurisdiction to adjudicate the claims against him.  However, Titov waived this objection when he failed to include it in his motion to dismiss the Complaint for failure to state a claim.

A challenge to a court's personal jurisdiction over a defendant is raised by means of a motion under Fed. R. Civ. P. 12(b)(2).  Rule 12(b) is unambiguous:  "A motion asserting any of these [Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed." Rule 12(h) is equally explicit:  A party "waives any defense listed in Rule 12(b)(2)-(5) by omitting it from a motion" raising any other defense in Rule 12.  Fed. R. Civ. P. 12(h)(1)(A); *see also* Fed. R. Civ. P. 12(g)(2)("a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion").  It is simply hornbook law that a defendant, in a Rule 12 motion, "must include, on penalty of waiver, the defenses set forth in subdivisions (2) through (5) of Rule 12(b)," and that defenses omitted are "permanently lost" and may not thereafter be asserted.  5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1391, at 501 (3d ed. 2004).

Before answering the complaint, Titov filed a motion to dismiss under Rule 12(b)(6).  *See* Motion and Memorandum of Law of Defendants Hotfile Corporation and Anton Titov to Dismiss Plaintiffs' Complaint, Docket No. 50, at 17-19 (addressing claims concerning Titov's personal liability).  His motion did not challenge personal jurisdiction under Rule 12(b)(2), thus permanently waiving the defense.  *E.g., Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317, 1314 (11th Cir. 1990) ("a party is deemed to have waived any objection to personal jurisdiction or service of process if the party makes a pre-answer motion under Rule 12 and fails to include such objections in that motion").[9]

---

subscribers commit the acts of direct infringement.  *See e.g., Limewire*, 784 F. Supp. 2d at 438-39 (granting summary judgment on personal liability where corporate defendant was secondary infringer); *Fung*, 2009 WL 6355911, at *18 (same); *Usenet.com*, 633 F. Supp. 2d at 158-59 (same).

[9] Titov's claim that "the Court had to consider true at earlier stages of the litigation" that he was residing in Florida as alleged in the complaint, Titov Mot. at 17, incorrectly confuses the standard under Rule 12(b)(2) with the standard under Rule 12(b)(6).  A defendant is permitted – indeed, required – to put in his own evidence to challenge allegations relating to

Titov is not permitted to move on this defense now.

## CONCLUSION

For the foregoing reasons, and those stated in plaintiffs' motion for summary judgment (available publicly at Docket No. 322), Titov's motion for summary judgment should be denied – and summary judgment entered for plaintiffs.

Dated: March 7, 2012

Respectfully submitted,

By: /s/ Karen L. Stetson

Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

MOTION PICTURE ASSOCIATION
  OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

---

personal jurisdiction in a Rule 12(b)(2) motion. *See, e.g., PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 807 (11th Cir. Fla. 2010).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th Day of March, 2012, I served the following documents on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

**Plaintiffs' Memorandum of Law in Opposition to Defendant Anton Titov's Motion for Summary Judgment**

By: /s/ Karen L. Stetson

**SERVICE LIST**

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone: 415-954-4400

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and
Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone: 617-928-1804

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*

21