# EXHIBIT 19

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

    Plaintiffs,

  vs.

HOTFILE CORP., ANTON TITOV,
and DOES 1-10,

    Defendants.
_____

AND RELATED CROSS-ACTION.
_____


HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF BRAXTON PERKINS

PURSUANT TO FEDERAL RULE 30(b)(6)

Los Angeles, California

Friday, December 16, 2011


Reported by:
LORI SCINTA, RPR
CSR No. 4811

Job No. 178935B

Page 2

```
 1                UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF FLORIDA

 3                CASE NO. 11-20427-WILLIAMS-TURNOFF

 4   DISNEY ENTERPRISES, INC.,
     TWENTIETH CENTURY FOX FILM
 5   CORPORATION, UNIVERSAL CITY
     STUDIOS PRODUCTIONS LLLP,
 6   COLUMBIA PICTURES INDUSTRIES,
     INC., and WARNER BROS.
 7   ENTERTAINMENT INC.,

 8          Plaintiffs,

 9      vs.

10   HOTFILE CORP., ANTON TITOV,
     and DOES 1-10,
11
            Defendants.
12   _____
     AND RELATED CROSS-ACTION.
13   _____

14

15     HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

16          Videotaped deposition of BRAXTON PERKINS,

17   pursuant to Federal Rule 30(b)(6), taken on behalf of

18   Defendants and Counterclaimant Hotfile Corp., at

19   633 West Fifth Street, Los Angeles, California,

20   beginning at 10:15 A.M. and ending at 7:16 P.M. on

21   Friday, December 16, 2011, before LORI SCINTA, RPR,

22   Certified Shorthand Reporter No. 4811.

23

24

25
```

```
                                                          Page 3
 1    APPEARANCES:

 2

 3    For Plaintiffs:

 4
           JENNER & BLOCK LLP
 5         BY:  DUANE C. POZZA
           Attorney at Law
 6         1099 New York Avenue, NW, Suite 900
           Washington, D.C. 20001-4412
 7         202.639.6000
           Email:  dpozza@jenner.com
 8
               -- and --
 9
           NBC UNIVERSAL
10         BY:  KAREN GARVER
           Senior Counsel, Anti-Piracy Legal Affairs
11         100 Universal City Plaza
           Universal City, California 91608
12         818.777.2493
           Email:  karen.garver@nbcuni.com
13

14
      For Defendants and Counterclaimant Hotfile, Corp.:
15

16         FARELLA BRAUN + MARTEL LLP
           BY:  DEEPAK GUPTA
17         Attorney at Law
           235 Montgomery Street
18         San Francisco, California 94104
           415.954.4400
19         Email:  dgupta@fbm.com

20

21    Videographer:

22
           VONYARN MASON
23         SARNOFF COURT REPORTERS
           20 Corporate Park, Suite 350
24         Irvine, California 92606
           877.955.3855
25
```

Perkins, Braxton                                    12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
                                                         Page 159
04:01  1    litigation.
04:01  2    BY MR. GUPTA:
04:01  3         Q   Does Universal post trailers to the Internet
04:01  4    for free sharing?
04:01  5             MR. POZZA:  Object to the question as ambiguous
04:01  6    and lacking foundation.
04:01  7             THE WITNESS:  What do you mean by "free
04:01  8    sharing"?
04:01  9    BY MR. GUPTA:
04:01 10         Q   In other words, users can access the trailers
04:01 11    without having to pay money.
04:01 12             MR. POZZA:  Same objections.
04:01 13             THE WITNESS:  I would say yes to the second way
04:01 14    you worded it because your definition in the second
04:02 15    example is people do not have to pay money.  That is
04:02 16    correct.
04:02 17             Trailers are intended as a marketing mechanism
04:02 18    and, therefore, we do not seek a transactional fee from
04:02 19    people to watch them.
04:02 20    BY MR. GUPTA:
04:02 21         Q   And to what sites does Universal post trailers?
04:02 22             MR. POZZA:  Object as lacking foundation and
04:02 23    outside the scope of the notice to the extent it
04:02 24    involves specific sites other than Hotfile.
04:02 25             THE WITNESS:  Universal certainly would post
```

```
                                                              Page 160
04:02   1    trailers to their own operated branded websites.
04:02   2           Universal would also engage through its
04:02   3    marketing arm other partners through a -- terms and
04:03   4    conditions associated with the marketing material the
04:03   5    posting of that trailer on those partner websites.
04:03   6    BY MR. GUPTA:
04:03   7       Q   So who are some of those partner websites?
04:03   8           MR. POZZA:  Same objections.
04:03   9           THE WITNESS:  yahoo.com is a good example of a
04:03  10    partner website that might post a trailer of a Universal
04:03  11    movie.
04:03  12    BY MR. GUPTA:
04:03  13       Q   Can you name other sites, as well?
04:03  14           MR. POZZA:  Same objections.
04:03  15           THE WITNESS:  My guess is probably -- I don't
04:03  16    know definitively, but a site like apple.com, some
04:03  17    com- -- some interaction with Apple may well have had a
04:04  18    trailer posted.
04:04  19           YouTube, we probably have a trailer posted
04:04  20    through an upload by our account with terms and
04:04  21    conditions.
04:04  22    BY MR. GUPTA:
04:04  23       Q   Does Universal post full-length content on --
04:04  24    on sites on the Internet other than its own branded
04:04  25    sites?
```

Perkins, Braxton                           12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
                                                    Page 161
04:04  1            MR. POZZA:  Objection.  Ambiguous.
04:04  2            THE WITNESS:  Full-length content is almost
04:04  3   always under distribution agreements with partners and
04:04  4   usually behind a transactional apparatus or behind a
04:05  5   negotiated agreement involving advertising as associated
04:05  6   with a playback of the content.
04:05  7            So, yes, Universal would create agreements with
04:05  8   sites or distributors to have full-length content
04:05  9   available in commercially negotiated means.
04:05 10   BY MR. GUPTA:
04:05 11       Q    Does Universal post or allow others to post its
04:05 12   content on the Internet for free?  And I'm talking about
04:05 13   full-length content here.
04:05 14            MR. POZZA:  Objection --
04:05 15   BY MR. GUPTA:
04:05 16       Q    In other words, making it --
04:05 17            Sorry.  Go ahead.
04:05 18            MR. POZZA:  I was going to object.  Ambiguous
04:05 19   and compound.
04:05 20   BY MR. GUPTA:
04:05 21       Q    Does Universal -- I'll cure.
04:05 22            Does Universal permit sites other than
04:05 23   Universal-branded sites to host Universal full-length
04:05 24   content in a manner that users can access it for free?
04:06 25            MR. POZZA:  Objection.  Ambiguous.
```

Perkins, Braxton                                         12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 162

```
04:06  1         THE WITNESS:  Users accessing it for free would
04:06  2    to me imply that there was an advertising element to the
04:06  3    consumer access, or if the marginal cost to a person was
04:06  4    sort of zero, that there may be a subscription element
04:06  5    to the consumer.
04:06  6              I am not aware of any instance or systematic
04:06  7    belief on the part of Universal where free full-length
04:06  8    content would be freely made available without
04:06  9    negotiations of commercial terms regarding either
04:06 10    transactional pricing to consumers or advertising
04:07 11    revenue or subscription revenue associated with the
04:07 12    consumers accessing full-length content.
04:07 13    BY MR. GUPTA:
04:07 14        Q   Going back to trailers for a moment, does
04:07 15    Universal allow the downloading of trailers from the
04:07 16    Internet for some trailers?
04:07 17             MR. POZZA:  Objection.  Ambiguous.
04:07 18             THE WITNESS:  I'm not aware of a specific
04:07 19    policy on downloading trailers.  It is potentially
04:07 20    possible that under negotiated terms and conditions or
04:07 21    agreed-upon terms and conditions a marketing entity
04:07 22    would provide a file to a distribution partner.  And if
04:07 23    that marketing group worked with that distribution
04:08 24    partner to enable a download, then that could be
04:08 25    happening.
```

Perkins, Braxton                           12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 163

```
04:08  1        I right here don't recall an example of that,
04:08  2   but I can't under oath tell you that categorically I'm
04:08  3   aware that that's never happened or -- because I'm not
04:08  4   fully aware of all the breadth of the deals that may
04:08  5   have taken place.
04:08  6   BY MR. GUPTA:
04:08  7       Q    Does Universal object to an Internet user
04:08  8   transferring a trailer owned by Universal to another
04:08  9   Internet user?
04:08 10            MR. POZZA:  Object as ambiguous, calling for a
04:08 11   legal conclusion and outside the scope of the notice.
04:08 12            THE WITNESS:  I would imagine Universal would
04:08 13   object if the terms and conditions associated with the
04:08 14   marketing materials were being violated.
04:08 15            Again, if the terms and conditions associated
04:09 16   with the distribution of the marketing materials
04:09 17   contemplated that transfer, then we wouldn't object
04:09 18   because we would have put that into the agreement.
04:09 19   BY MR. GUPTA:
04:09 20       Q    But where the terms and conditions are silent
04:09 21   on this, does Universal object?
04:09 22            MR. POZZA:  Same objections and incomplete
04:09 23   hypothetical.
04:09 24            THE WITNESS:  I'm not aware of them being
04:09 25   silent, and I think the objection would be something I
```

Perkins, Braxton                    12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 164

| | | |
|---|---|---|
| 04:09 | 1 | would route to the law department to review.  I guess -- |
| 04:09 | 2 | I probably wouldn't be in a position to opine the full |
| 04:09 | 3 | legal understanding of what would be "objectable" other |
| 04:09 | 4 | than my general business understanding that I've tried |
| 04:09 | 5 | to communicate about how we distribute marketing |
| 04:09 | 6 | materials. |
| 04:09 | 7 | BY MR. GUPTA: |
| 04:09 | 8 | Q  Are you aware of any business arrangements in |
| 04:10 | 9 | which Universal has set up a deal such that it doesn't |
| 04:10 | 10 | object to a user transferring a trailer to another user? |
| 04:10 | 11 | MR. POZZA:  Objection.  Ambiguous, lacks |
| 04:10 | 12 | foundation, outside the scope of the notice. |
| 04:10 | 13 | THE WITNESS:  I'm not aware of a specific |
| 04:10 | 14 | example where we -- Universal or an entity of Universal |
| 04:10 | 15 | created a marketing campaign that involved transfers, |
| 04:10 | 16 | point to point, user to user. |
| 04:10 | 17 | But, again, I can't attest that I'm fully aware |
| 04:10 | 18 | that that -- that I can confidently tell you that's |
| 04:10 | 19 | never happened.  I don't know right now or recall an |
| 04:10 | 20 | example of when we would have.  But if we did, again, |
| 04:10 | 21 | there would have been terms and conditions likely put in |
| 04:11 | 22 | place of that campaign. |
| 04:11 | 23 | BY MR. GUPTA: |
| 04:11 | 24 | Q  Are you aware of any business arrangements in |
| 04:11 | 25 | which Universal set up the deal such that it expressly |

Perkins, Braxton 12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 165

```
04:11  1   prohibited a user from transferring a trailer to another
04:11  2   user?
04:11  3               MR. POZZA:  Same set of objections.
04:11  4               THE WITNESS:  I would not know if in the
04:11  5   agreement an express prohibition would have been written
04:11  6   or not.
04:11  7               My general business understanding is that the
04:11  8   terms and conditions would indicate whatever the desire
04:11  9   of the marketing group would be, and that if there was
04:11 10   the desire to not prohibit it, then that would be there;
04:11 11   and if the desire was to prohibit it, then it would be
04:11 12   in the agreement.
04:11 13   BY MR. GUPTA:
04:11 14        Q    So the answer is:  You are not aware of any
04:11 15   specific business arrangements set up such that users
04:11 16   were expressly prohibited from transferring?
04:12 17               MR. POZZA:  Same set of objections, and asked
04:12 18   and answered.
04:12 19               THE WITNESS:  I mean, I do -- I feel like
04:12 20   I'm -- I have answered the question.
04:12 21               I don't -- again, I -- I -- I'm not aware of
04:12 22   the full breadth of all the marketing campaigns and the
04:12 23   terms and conditions for any and all content.
04:12 24               It's possible that some agreements might
04:12 25   expressly prohibit it.  It's possible some may expressly
```

```
04:12  1   allow it.  But I'm just -- I'm not aware of examples of
04:12  2   either of those, nor am I aware of the full breadth of
04:12  3   the deals going through.
04:12  4   BY MR. GUPTA:
04:12  5       Q   Has Universal ever posted a file on a
04:13  6   cyberlocker?
04:13  7           MR. POZZA:  Object as ambiguous and outside the
04:13  8   scope of the notice to the extent it involves sites
04:13  9   other than Hotfile.
04:13 10           THE WITNESS:  I guess you'd have to define
04:13 11   "cyberlocker" for me in order for me to accurately try
04:13 12   and answer that question.
04:13 13   BY MR. GUPTA:
04:13 14       Q   Okay.  Let's start with Hotfile.
04:13 15           Has Universal ever posted a file on Hotfile?
04:13 16       A   I am not aware of any instance where a company
04:13 17   account or an agent of the company acting at the
04:13 18   direction of the company uploaded something to Hotfile.
04:14 19       Q   What's your understanding of what is digital
04:14 20   fingerprinting?
04:14 21       A   Digital printer -- fingerprinting is a
04:14 22   technology that allows for automatic content
04:14 23   recognition.
04:14 24       Q   Can you tell me what it does?
04:14 25           MR. POZZA:  I'll object to this -- this line of
```

```
 1
 2
 3
 4
 5
 6
 7
 8
 9        I, BRAXTON PERKINS, do hereby declare under
10   penalty of perjury that I have read the foregoing
11   transcript; that I have made any corrections as appear
12   noted, in ink, initialed by me, or attached hereto; that
13   my testimony as contained herein, as corrected, is true
14   and correct.
15
16
17        EXECUTED this 19th day of January,
18   2012, at Universal City, CA.
                  (City)         (State)
19
20
21
22   _____
                BRAXTON PERKINS
23
24
25
```

Perkins, Braxton 12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 257

1
2        I, the undersigned, a Certified Shorthand
3    Reporter of the State of California, do hereby certify:
4        That the foregoing proceedings were taken
5    before me at the time and place herein set forth; that
6    any witnesses in the foregoing proceedings, prior to
7    testifying, were duly sworn; that a record of the
8    proceedings was made by me using machine shorthand
9    which was thereafter transcribed under my direction;
10   that the foregoing transcript is a true record of the
11   testimony given.
12       Further, that if the foregoing pertains to
13   the original transcript of a deposition in a Federal
14   Case, before completion of the proceedings, review of
15   the transcript [ x ] was [ ] was not requested.
16       I further certify I am neither financially
17   interested in the action nor a relative or employee
18   of any attorney or party to this action.
19       IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21
22   Dated: 12-20-11
23
24                          _____
                            LORI SCINTA, RPR
25                          CSR No. 4811