# EXHIBIT 23

Zedek, Betsy                                              12/13/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20427-WILLIAMS-TURNOFF


DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

    Plaintiffs,

  vs.

HOTFILE CORP., ANTON TITOV,
and DOES 1-10,

    Defendants.
_____
AND RELATED CROSS-ACTION.
_____


HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF BETSY ZEDEK, ESQUIRE

PURSUANT TO FEDERAL RULE 30(b)(6)

Los Angeles, California

Tuesday, December 13, 2011


Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 179149

Zedek, Betsy                                    12/13/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 2

1                UNITED STATES DISTRICT COURT
2                SOUTHERN DISTRICT OF FLORIDA
3              CASE NO. 11-20427-WILLIAMS-TURNOFF
4    DISNEY ENTERPRISES, INC.,
     TWENTIETH CENTURY FOX FILM
5    CORPORATION, UNIVERSAL CITY
     STUDIOS PRODUCTIONS LLLP,
6    COLUMBIA PICTURES INDUSTRIES,
     INC., and WARNER BROS.
7    ENTERTAINMENT INC.,
8              Plaintiffs,
9         vs.
10   HOTFILE CORP., ANTON TITOV,
     and DOES 1-10,
11
               Defendants.
12   _____
     AND RELATED CROSS-ACTION.
13   _____

14      HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
15
16          Videotaped Deposition of BETSY ZEDEK, ESQUIRE,
17   pursuant to Federal Rule 30(b)(6), taken on behalf of
18   Defendants and Counterclaimant, at 633 West Fifth
19   Street, Suite 3600, Los Angeles, California, beginning
20   at 9:37 a.m. and ending at 5:27 p.m. on Tuesday,
21   December 13, 2011, before CHERYL R. KAMALSKI, Certified
22   Shorthand Reporter No. 7113.
23
24
25

Zedek, Betsy                                          12/13/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 3

```
 1   APPEARANCES:

 2

 3   For Plaintiffs:

 4        JENNER & BLOCK LLP
          BY:  DUANE POZZA
 5        Attorney at Law
          1099 New York Avenue, NW, Suite 900
 6        Washington, D.C. 20001-4412
          202.639.6000
 7
     For Defendants and Counterclaimant:
 8
          FARELLA BRAUN + MARTEL LLP
 9        BY:  JANEL THAMKUL
          Attorney at Law
10        235 Montgomery Street
          San Francisco, California 94104
11        415.954.4400

12   Also Present:

13        ELIZABETH VALENTINA

14   Videographer:

15        CHRIS JORDAN
          SARNOFF, a Veritext Company
16

17

18

19

20

21

22

23

24

25
```

Electronically signed by Cheryl Kamalski (201-157-077-2106)                    4a2caff4-31b8-48c2-a50b-8729116738f1

Zedek, Betsy                                    12/13/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 23

```
         1              commenced sending notifications of
         2              infringement to Hotfile on Fox's
         3              behalf."
         4         Do you know who that antipiracy vendor, that's
09:59    5    referred to in this paragraph, who that is?
         6         A    Yes.
         7         Q    Who is that?
         8         A    DtecNet.
         9         Q    Have you produced documents relating to when
10:00   10    DtecNet first identified infringing activity on Hotfile?
        11         A    Yes.
        12         Q    What were those documents?
        13         A    We've produced the notification from DtecNet to
        14    us that a response had not been received from Hotfile to
10:00   15    a takedown notice that was sent and we produced a
        16    spreadsheet of takedown notices submitted on Fox's
        17    behalf by DtecNet to Hotfile, including the dates of all
        18    such notices.
        19         Q    Do you remember approximately when in March
10:01   20    DtecNet found the infringing materials?
        21         A    I believe it was March -- around March 19th,
        22    2009.
        23              MS. THAMKUL:  I'd like to mark this as the next
        24    exhibit.  Just for the record, this document is
10:01   25    Bates-labeled Fox 026175 through Fox 026176.
```

Zedek, Betsy  12/13/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 46

```
         1   know what it's looking for does that require, to some
         2   extent, communication from the rightsholder about what
         3   content the rightsholder owns?
         4           MR. POZZA:  Objection; ambiguous.
10:34    5           THE WITNESS:  It generally requires the
         6   rightsholder to provide metadata identifying the content
         7   and describing the business role it wishes to be applied
         8   that generally travels attached to the fingerprint
         9   itself, so communication may not be required.
10:34   10   BY MS. THAMKUL:
        11       Q   Did Fox ever provide Hotfile with the content
        12   identification files for Fox's content?
        13       A   I don't think so.
        14       Q   Did Fox ever communicate to Hotfile that
10:35   15   Hotfile should implement fingerprinting technology?
        16       A   Yes, I believe so.
        17       Q   When did Fox do this?
        18       A   I'm fairly certain that it's happened in the
        19   context of this litigation.
10:35   20       Q   Prior to this litigation did Fox ever
        21   communicate to Hotfile that Hotfile should implement
        22   fingerprinting technology?
        23       A   I don't believe that we did.
        24       Q   Is Vobile one of the fingerprinting services
10:35   25   that Fox recommends?
```

Zedek, Betsy 12/13/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 67

```
        1    content file is discovered to the time that the file is
        2    taken down, the number of views of that -- that content
        3    file.
        4              Does Fox have a gauge for an appropriate amount
11:31   5    of views that a file could be -- does Fox have a gauge
        6    for an appropriate amount of time that a file could be
        7    downloaded before it gets taken down?
        8              MR. POZZA:  I'm going to object as ambiguous as
        9    to what "viewed" means in this context.
11:31  10              THE WITNESS:  In the context of a site like
       11    Hotfile it's our expectation that the site would be
       12    filtering for unauthorized uploads of our content, so
       13    essentially the answer is zero, that zero views would be
       14    acceptable.
11:31  15    BY MS. THAMKUL:
       16         Q    Is there content protection technology that
       17    could -- I'll withdraw the question.
       18              Is there content-filtering technology that is
       19    100 percent guaranteed to catch all unauthorized
11:32  20    content?
       21              MR. POZZA:  I will object to the extent that
       22    the witness is not testifying in a technical capacity
       23    and not providing expert testimony on filtering
       24    technologies.
11:32  25              THE WITNESS:  My experience is that filtering
```

Zedek, Betsy                                       12/13/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 68

```
         1    technologies are mostly effective, but imperfect.  The
         2    robustness of those technologies is constantly being
         3    improved.  But I don't believe any one to be absolutely
         4    100 percent effective in all instances, particularly
11:32    5    given that, in their implementation, there are a number
         6    of policy rules that can be applied by the site
         7    implementing the technology.
         8    BY MS. THAMKUL:
         9         Q    So is it possible that some files will slip
11:32   10    through even if a site is implementing content-filtering
        11    technology?
        12         A    Yes.
        13              MR. POZZA:  Same objection.
        14    BY MS. THAMKUL:
11:33   15         Q    So if -- in the instance where a file slips
        16    through and isn't caught by content-filtering
        17    technology, is there an amount of downloads that is
        18    appropriate before a file gets taken down?
        19              MR. POZZA:  Objection; ambiguous, incomplete
11:33   20    hypothetical.
        21              THE WITNESS:  I don't believe there's any
        22    number of downloads that's appropriate.  It's not a
        23    gauge by which we generally conceive of these things
        24    because, generally, it's information that's not
11:33   25    available to us, the rightsholder, on the outside of the
```

Electronically signed by Cheryl Kamalski (201-157-077-2106)                 4a2caff4-31b8-48c2-a50b-8729116738f1

```
                                    Zedek, Betsy                    12/13/2011
                     HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
```

```
                                                                    Page 168
         1    BY MS. THAMKUL:
         2        Q    Do you have any idea as to how Hotfile would
         3    know what fingerprinting technology software was
         4    acceptable to Fox?
03:38    5             MR. POZZA:  Objection; calls for speculation.
         6             THE WITNESS:  I can't think of all the ways
         7    that it would know, but certainly it wouldn't be hard to
         8    find out what content tech- -- content-recognition
         9    technology providers have Fox fingerprints in their
03:39   10    databases.
        11    BY MS. THAMKUL:
        12        Q    What are some of those content-recognition
        13    services?
        14        A    It includes Vobile.
03:39   15        Q    Is Vobile 100 percent guaranteed to flag
        16    infringing content?
        17             MR. POZZA:  Objection to the extent it's
        18    ambiguous and an incomplete hypothetical.
        19             THE WITNESS:  No.  And it's also dependent how
03:39   20    the technology is implemented by the service provider.
        21    BY MS. THAMKUL:
        22        Q    How would the service provider know the method
        23    of implementation of its technology that Fox would
        24    approve of?
03:39   25             MR. POZZA:  Objection; it's ambiguous.
```

12    Los Angeles 12th    February California

*[signature]*

Zedek, Betsy 12/13/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 222

1     I, the undersigned, a Certified Shorthand
2 Reporter of the State of California, do hereby certify:
3     That the foregoing proceedings were taken
4 before me at the time and place herein set forth; that
5 any witnesses in the foregoing proceedings, prior to
6 testifying, were duly sworn; that a record of the
7 proceedings was made by me using machine shorthand
8 which was thereafter transcribed under my direction;
9 that the foregoing transcript is a true record of the
10 testimony given.
11     Further, that if the foregoing pertains to
12 the original transcript of a deposition in a Federal
13 Case, before completion of the proceedings, review of
14 the transcript [ ] was [ ] was not requested
15     I further certify I am neither financially
16 interested in the action nor a relative or employee
17 of any attorney or any party to this action.
18     IN WITNESS WHEREOF, I have this date subscribed
19 my name.
20
21 Dated: 12/_/201_
22
23                               Cheryl R. Kamalski
                               CHERYL R. KAMALSKI
24                                CSR No. 7113
25