# EXHIBIT A

# PUBLIC VERSION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

      *Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

      *Defendants*.

_____/

HOTFILE CORP.,

      *Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

      *Counter-Defendant*.

_____/

**[REDACTED] MEMORANDUM OF LAW OF DEFENDANT/COUNTERCLAIMANT HOTFILE CORPORATION IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT ON HOTFILE'S COUNTERCLAIM FILED BY PLAINTIFF/COUNTER-DEFENDANT WARNER BROS. ENTERTAINMENT INC.**

1

FILED UNDER SEAL                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

        A.      Hotfile's SRA Tool Created for Warner's Use For DMCA Takedowns.............. 2

        B.      Warner's Flawed Automated System For Locating Alleged Infringing
                Files........................................................................................................... 3

        C.      Hotfile's Business Model.............................................................................. 4

        D.      The Admitted Wrongful Deletions of JDownloader Reduced Hotfile's
                Revenues ..................................................................................................... 5

III.    LEGAL STANDARD.......................................................................................... 6

IV.     ARGUMENT ...................................................................................................... 6

        A.      Warner Is Not Entitled To Summary Judgment Regarding Its Knowing
                Material Misrepresentations........................................................................ 6

                1.      Warner Had Actual Knowledge of Its Misrepresentations And Did
                        Not Have A Sufficient Basis To Form A "Good Faith Belief" That
                        The Files In Hotfile's Counterclaim Were Infringing ............................. 7

                2.      Even If A Generalized Confidence In An Automated System
                        Could Constitute A "Good Faith Belief," There Would Still Be
                        Questions of Material Fact Regarding Warner's Knowledge Of Its
                        Misrepresentations ............................................................................... 10

                3.      There Is Evidence Suggesting That Warner "Deliberately" Deleted
                        Files – Though Such Intent Is Not Necessary for § 512(f) Liability ....... 12

                4.      Warner's Claimed Reliance On Human Review Of Files By Its
                        Vendor LeakID At Best Raises Further Questions Of Material Fact ...... 12

        B.      There is Ample Evidence That Hotfile's Injury Was Proximately Caused
                by Warner.................................................................................................. 14

                1.      Though Hotfile Can Show Economic Damages, They Are Not
                        Required Under The Statute................................................................ 14

                2.      Hotfile Is Not Precluded From Seeking Damages For The
                        Improper Deletion Of Files That Warner's Copyright Lawyer
                        "Expert" Speculates Were Infringing Or Uploaded By Infringing
                        Users ................................................................................................. 15

                        a.      Whether a given work is subject to copyright protection
                                does not mean its presence on Hotfile is infringing.................... 15

                        b.      The Expert Declaration of Scott Zebrak Is Inadmissible To
                                Establish Copyright Infringement For Purposes Of
                                Summary Judgment .................................................................. 16

**FILED UNDER SEAL**                         CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

           c.     Even If Admissible, Mr. Zebrak's Opinion Does Not
                  Eliminate Questions Of Material Fact As To The Infringing
                  Status Of The Files In Hotfile's Counterclaim ............................ 18

           d.     Even Accepting The Unsupported Legal Speculations Of
                  Warner's "Expert," Hotfile Has Plainly Suffered
                  Cognizable Injury Due To Warner's Misrepresentations ............ 19

V.      CONCLUSION ............................................................................................................. 20

FILED UNDER SEAL                                  CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### FEDERAL CASES

*AXA Global Risks (UK) Ltd. v. Pierre,*
  2001 WL 1825853 (S.D. Fla. Nov. 8, 2001) ........................................................................ 17

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ............................................................................................................... 6

*Clark v. Coats & Clark, Inc.,*
  929 F.2d 604 (11th Cir. 1991) ............................................................................................. 6

*Dudnikov v. MGA Entm't, Inc.,*
  410 F. Supp. 2d 1010 (D. Colo. 2005) .............................................................................. 7

*Evers v. General Motors Corp.,*
  770 F.2d 984 (11th Cir.1985) .............................................................................................. 17

*Ground Zero Museum Workshop v. Wilson,*
  2011 WL 3758582 (D. Md. Aug. 24, 2011) ...................................................................... 7

*Kendall Lakes Towers Condominium Ass'n, Inc. v. Pacific Ins. Co., Ltd.,*
  2012 WL 266438 (S.D. Fla. Jan. 30, 2012) ...................................................................... 6

*Lenz v. Universal Music Corp.,*
  572 F. Supp. 2d 1150 (N.D. Cal. 2008) ............................................................................ 8

*Lenz v. Universal Music Corp.,*
  2010 WL 702466 (N.D. Cal. Feb. 25, 2010) .................................................................... 14

*Montgomery v. Aetna Casualty & Surety Co.,*
  898 F.2d 1537 (11th Cir. 1990) .......................................................................................... 18

*Online Policy Group v. Diebold, Inc.,*
  337 F. Supp. 2d 1195 (N.D. Cal. 2004) ........................................................................ 7, 16

*Ringgold v. Black Entm't Television, Inc.,*
  126 F.3d 70 (2nd Cir. 1997) ............................................................................................... 18

*Rogers v. Evans,*
  792 F.2d 1052 (11th Cir. 1986) .......................................................................................... 17

*Rossi v. Motion Picture Ass'n of America Inc.,*
  391 F.3d 1000 (9th Cir. 2004) ...................................................................................... 7, 8, 9

*Tipton v. Bergrohr GMBH-Siegen,*
  965 F.2d 994 (11th Cir. 1992) ............................................................................................. 6

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,*
  2011 WL 6357788 (9th Cir. Dec. 20, 2011) .................................................................... 15

**FILED UNDER SEAL**                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## FEDERAL STATUTES

17 U.S.C. § 106 .................................................................................................................... 15

17 U.S.C. §512(c) ................................................................................................................ 15

17 U.S.C. §512(c)(3) ............................................................................................................. 8

17 U.S.C. §512(f) .......................................................................................................... passim

## STATE RULES AND REGULATIONS

Fed. R. Civ. P.56(e) ............................................................................................................ 17

## I. **INTRODUCTION**

Consistent with the cooperation encouraged by the Digital Millennium Copyright Act ("DMCA"), Hotfile Corp. ("Hotfile") provided Warner Bros. Entertainment, Inc. ("Warner") with a powerful "Special Rightsholder Account" ("SRA") that allowed Warner direct access to remove unauthorized Warner content from Hotfile. Using its SRA account, Warner knowingly and systematically deleted thousands of files it was *not* in fact authorized to remove, falsely representing each time under penalty of perjury that it had such authorization. Hotfile's counterclaim covers only a small subset of the improper deletions, because Hotfile (unlike Warner's         examined the content of the files listed before filing the counterclaim.

Warner admits it did not own and was not authorized to delete all but 19 of the 890 files identified in the Counterclaim. Nevertheless, Warner claims "mistakes happen," and relies on a partisan industry lawyer as its "expert" to opine that some of the files wrongfully taken down allegedly are infringing someone else's copyrights. Even accepting its expert's conclusions as true—and Warner fails to support such conclusions with facts—it could not absolve Warner. Discovery has provided ample evidence to conclude that Warner's actions were not innocent mistakes. Rather, they were a product of an automated system that deleted files without

Warner knew it was regularly and repeatedly deleting files it did not own— as many as     of the files its     deleted were "false positives"—but Warner continued to use the flawed system. This raises a material issue as to whether Warner could have a sufficient basis to misrepresent under penalty of perjury that it is the owner of the files the system located and had a "good faith belief" that they were infringing, as is required under the DMCA.

Hotfile's business relies on the bargain struck by the DMCA, including the well-established "notice and takedown" regime that allows copyright owners to have their work—and *only their work*—removed quickly from websites. To ensure that content owners do not abuse this power, the DMCA imposes liability for misrepresenting that material is infringing and allows the injured party to recover *any* damages incurred as a result. There is substantial support in the record to conclude that Warner knowingly made the admittedly false and material representations that resulted in the wrongful deletions of over 800 files listed in the counterclaim. There can be no real dispute that a substantial number of those misrepresentations proximately caused harm to Hotfile. A reasonable juror could certainly conclude that Warner should be liable for its repeated and egregious violations of § 512(f).

**FILED UNDER SEAL**                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## II. **FACTUAL BACKGROUND**

      The following facts are supported by the pleadings, discovery responses, and expert
reports provided by the parties and summarized in the accompanying Counter-Statement of
Facts.

**A.**    **Hotfile's SRA Tool Created for Warner's Use For DMCA Takedowns**

      A few months after Hotfile's launch, in late April 2009, Warner asked Hotfile for a
special "takedown tool" to allow Warner to delete files "immediately and hence more efficiently
. . . rather than sending an official takedown abuse notice every time URL's are identified."
(Declaration of Roderick Thompson (attached hereto as Exhibit A), Ex. 1). Consistent with
Hotfile's desire to cooperate with Warner under the DMCA, Hotfile specially engineered the
SRA tool to have the capability that Warner requested. Hotfile provided Warner with the SRA
tool, which was activated in August 2009. Thompson Decl. Ex. 2. The account allows Warner
to directly command Hotfile's servers. It can enter one or more URLs for files stored on
Hotfile's systems, and immediately block access to them. Once a file is requested to be deleted
via the SRA tool, the Hotfile system automatically blocks uploading of the same file or any other
copy of the file with the same hash value. (Declaration of Anton Titov (attached hereto as
Exhibit B), ¶ 2). Thus, if the SRA tool is misused to delete a file that is not infringing any
Warner copyright, all copies of the same file are nevertheless blocked from being uploaded again
regardless of the fact that the file was wrongfully deleted.

      Every time Warner used the SRA tool it certified "under penalty of perjury" that [1] it is
"the owner or an authorized legal representative of the owner of copyrights" and [2] it has "a
good faith belief that use of this material is not authorized by the copyright owner, the copyright
owner's agent, or the law" as to each URL or file it deleted from Hotfile.com. CSUF ¶ 2;
Answer to Counterclaim, [D.E. #163] ¶ 15 (admitting making such statements for each URL).
"Warner's notifications by means of Hotfile's SRA are... subject to 17 U.S.C. § 512(f)," which
imposes liability for knowingly material misrepresentations. CSUF ¶ 1. Also at Warner's
request, Hotfile provided Warner with complimentary premium accounts to allow it to "verify"
that its copyrighted material was in fact displayed in suspected files before using the SRA tool to
delete them. Thompson Decl. Ex. 3. Despite these representations, Warner did not use the
premium accounts to verify the content of the thousands it deleted but did not own by using the
powerful SRA. CSUF ¶ 4.

B.     **Warner's Flawed Automated System For Locating Alleged Infringing Files**

No human being at Warner reviews the content of the files, ▮▮▮▮ of the files, or even ▮▮▮▮▮▮▮▮▮▮ it deletes with Hotfile's SRA. Thompson Decl. Ex. 4 (Kaplan Depo. 44:5-14; 85:2-6; 181:2-9). Rather, to locate allegedly infringing material, Warner designed ▮▮▮▮▮▮▮▮, that scour websites suspected by Warner to facilitate piracy, looking for ▮▮▮▮▮▮▮▮▮▮ Warner works. Kaplan Decl. at ¶ 5-11. More accurately, the ▮▮▮ search for ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Warner's ▮▮▮ are trying to find. If, for example, a Warner ▮▮▮ is scanning webpage ▮▮▮▮

▮▮▮▮ In searching for files of ▮▮▮ Warner's ▮▮▮ in fact made such obvious errors. Thompson Decl. Ex. 5.

Warner has testified that its representation under penalty of perjury that it had a good faith belief that the material it was deleting was infringing was made by a ▮▮▮, not any individual. Thompson Decl. Ex. 4 (Kaplan Depo. 102:4-11). Further, because of the automated nature of its system, Warner admits it does not form a good faith belief that any individual link that its ▮▮▮ found was infringing; rather, Warner's representations are based on an abstract confidence in the efficacy of its ▮▮▮ *Id.* at 104:18-105:2; 103:2-10; 245:19-32.

Just because a webpage contains ▮▮▮▮ associated with a Warner movie on the page does not mean that only links to that particular movie are posted on that page. Warner's ▮▮▮ generally do not ▮▮▮▮ Thompson Decl. Ex. 4 (Kaplan Depo. 74:5-18).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 124:23-125:14.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thompson Decl. Ex. 6. Yet Warner did not inform Hotfile of the wrongful deletions at that or any other time. Thompson Decl. Ex. 4 (Kaplan Depo. 119:14-25). Nor did Warner alert Hotfile in the Spring of 2010, when Warner

**FILED UNDER SEAL**                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

uploaded clips of its television program "Vampire Diaries" to Hotfile to encourage sales of the program through iTunes ████████████████████████████████████████████████████

Thompson Decl. Ex. 4 (Kaplan Depo. 16:10-17:4). Even though Warner itself uploaded the files, ███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

███████████████████████████████ Thompson Decl. Ex. 8. Despite knowing that its methods for locating material on Hotfile to delete through its SRA were overbroad, Warner knowingly and deliberately continued to use the same flawed methods for selecting files to delete.

In early April 2011, Hotfile provided Warner with a listing of some of these suspicious deletions made on February 7 and 8—the day Warner filed this lawsuit. Thompson Decl. Ex. 9 But Warner's deletions continued. The records of SRA deletions show that tens of thousands of URLs with titles indicative of content other than Warner content were being taken down wholesale by Warner without regard to whether the posting had been authorized by its owner or was fair use for other reasons.[1] Warner has admitted that it did not own the copyright in nor, at the time of deletion, was it authorized to delete 871 of the files identified in Hotfile's counterclaim. Thompson Decl. Ex. 10; CSUF ¶ 3.

## C.    Hotfile's Business Model

Hotfile earns its revenue through users who purchase "Premium" accounts, which allows a user to download files at faster speeds and store files permanently on Hotfile's system. Titov Declaration In Support Of Hotfile's Motion For Summary Judgment ¶ 7. Users are encouraged to sign up for (or "convert to") Premium accounts when downloading files posted on Hotfile. Hotfile offers a rewards program to share some of its revenue with the uploader of a file that

---

[1] Pursuant to a stipulation between the parties, Hotfile is claiming damages for only the files identified in Exhibits A-D of its Second Amended Counterclaim. (*See* Joint Motion and Memorandum of Law re voluntary dismissal [D.E. #151]; CSUF ¶ 1). However, Hotfile does not admit, as Warner suggests, that those file represent the only files Warner improperly deleted. To the contrary, the spreadsheets produced by Warner suggest thousands of other files were improperly deleted.

FILED UNDER SEAL                           CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

produced a conversion. Hotfile therefore maintains data on which files result in the conversion of Premium users. Thompson Decl. Ex. 11 (Boyle Rebuttal Report ¶ 53).

**D.      The Admitted Wrongful Deletions of JDownloader Reduced Hotfile's Revenues**

JDownloader is a software application that simplifies the process of downloading. Thompson Decl. Ex. 12 (Boyle Report ¶ 20). Hotfile records show that this freeware open source program is frequently downloaded from Hotfile, representing 17 of the top 100 most downloaded files. *Id.*; Titov Declaration In Support Of Hotfile's Motion For Summary Judgment ¶ 3. The software publisher that uploaded the file used Hotfile.com as a means for distribution of its open source software. *Id.* Warner has wrongfully and repeatedly deleted JDownloader files. Eight such improper Warner deletions of JDownloader are identified in the Counterclaim alone. One of those files was uploaded by JDownloader's owner itself, Appwork GmbH. Thompson Decl. Ex. 10 (row 798); Ex. 13. Warner explained it made the deletions because



. Thompson Decl. Ex. 4 (Kaplan Depo. 225:13-226:12).

*Id.* at 232:9-233:7.

*Id.* at 232:13-16.

strongly suggests that Warner knew all along how JDownloader was being distributed. Moreover, since Warner has testified that its anti-piracy personnel review lists of files its have already deleted, it is likely that Warner knew that its were regularly deleting JDownloader. *Id.* at 87:20-88:4. The earliest deletion of JDownloader identified in Hotfile's counterclaim dates from October 2009. *See* Thompson Decl. Ex. 10 (row 798).

Thompson Decl. Ex. 14.

. CSUF ¶ 8. Despite being aware

that its ▮▮▮ were ▮▮▮ deleting JDownloader software in their ordinary functioning, Warner did not do anything to prevent such deletions.

Those wrongful deletions undeniably caused Hotfile to lose revenue. The eight JDownloader files in Hotfile's counterclaim alone were downloaded ▮▮▮ times and resulted in ▮▮ premium user subscriptions. CSUF ¶¶ 9-10. All the files uploaded by JDownloader's owner were downloaded ▮▮▮ times and resulted in ▮▮ premium user subscriptions. CSUF ¶¶ 14-15.

### III. LEGAL STANDARD

A party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* In opposing summary judgment, the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. *Id.* at 998-999. "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* "Summary judgment can only be entered if no rational jury could find for the non-movant…despite drawing all reasonable inferences in its favor." *Kendall Lakes Towers Condominium Ass'n, Inc. v. Pacific Ins. Co., Ltd.*, 2012 WL 266438, at *6 (S.D. Fla. Jan. 30, 2012). Where a non-movant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility, and summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253-55 (1986).

### IV. ARGUMENT

#### A.   Warner Is Not Entitled To Summary Judgment Regarding Its Knowing Material Misrepresentations.

Liability attaches under 17 U.S.C. § 512(f) to Warner if it "knowingly materially misrepresent[ed]" that it had a "good faith" belief that the use of the material complained is not authorized by the owner. A party is liable under § 512(f) if it misrepresented that material was infringing and subjectively had a "good faith belief" that material was infringing, even if that

6

belief was unreasonable. *Rossi v. Motion Picture Ass'n of America Inc.,* 391 F.3d 1000, 1004 (9th Cir. 2004). [2] If a party does not have a "*sufficient basis* to form the required good faith belief" its misrepresentation is "knowing" and actionable under § 512(f). *Rossi,* 391 F.3d at 1002 (emphasis added).

### 1. Warner Had Actual Knowledge of Its Misrepresentations And Did Not Have A Sufficient Basis To Form A "Good Faith Belief" That The Files In Hotfile's Counterclaim Were Infringing.

Warner misstates the applicable standard as requiring a showing that it acted "deliberately" or that the "falsehood was intentional." (Opp. at 8). That is not what section 512(f) or the cases interpreting it say. Specifically, *Rossi,* the case on which Warner principally relies, states that "there must be a demonstration of **some actual knowledge of misrepresentation** on the part of the copyright owner." *Rossi,* 391 F.3d at 1005. Warner had "actual knowledge" that its███ were finding false positives and, therefore, that Warner was making misrepresentations in using the SRA. Warner was aware of the problem for years before the counterclaim was filed but continued to use the SRA. It admits it was "aware at points in the past of instances in which Warner has send out notices in error." Declaration of David Kaplan In Support of Warner's Motion for Summary Judgment, ¶ 15. Yet it knowingly continued to use the███, which resulted in still more knowing misrepresentations.

Warner also ignores its own cited precedent holding that in "order to properly support [a] Motion for Summary Judgment [on 512(f) liability], [the defendant is] required to show that it had a **sufficient basis** to form the required good faith belief that the Plaintiffs' [material] infringed on its rights." *Dudnikov v. MGA Entm't, Inc.,* 410 F. Supp. 2d 1010, 1013 (D. Colo. 2005) (emphasis added); *see also Rossi,* 391 F.3d at 1002. While a "sufficient basis" does not involve "a full *investigation* to verify the accuracy of a claim of infringement," a copyright

---

[2] There is no Eleventh Circuit precedent on point. The seminal § 512(f) case put the standard in more objective terms, requiring a showing that the defendant "knew, **should have known** if it acted with reasonable care or diligence, or **would have had no substantial doubt** had it been acting in good faith, that it was making misrepresentations." *Online Policy Group v. Diebold, Inc.,* 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004)(emphasis added). The most recent court to address the issue agreed with *Diebold*'s articulation. *See Ground Zero Museum Workshop v. Wilson,* 2011 WL 3758582, at *19 (D. Md. Aug. 24, 2011). Although Warner inaccurately represents that every case since *Rossi* has required "subjective knowledge" (Opp. at 8), to the extent the standards may differ is not significant to this motion. Whether Warner knowingly made its misrepresentations raises a genuine issue of fact under either articulation.

owner can only form a good faith belief if it "make[s] an initial review of the potentially infringing material prior to sending a takedown notice." *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1155-56 (N.D. Cal. 2008) (emphasis in original). As a part of this "initial review," the copyright owner must make "a consideration of the applicability of the fair use doctrine" to the allegedly infringing material. *Id.* at 1155. Without such a review, "it would be impossible to meet any of the requirements of Section 512(c)." *Id.*

Since an automated system that searches for material based on text matching "cannot distinguish between infringing content and content that merely contains words that suggest infringement," the court in *Rossi* noted the argument that "computers conducting automated searches cannot form a belief consistent with the language of the DMCA," and a human review of the material gathered by such a program is necessary to form even a good faith belief under the statute. *See Rossi*, 391 F.3d at 1007 n.7 ("Even though the MPAA uses the 'Ranger' program to initially identify potentially infringing websites, the MPAA employs three to four employees who actually review the identified sites. **It is these employees, rather than 'Ranger,' who ultimately decide whether a website contains infringing material.**") (emphasis added).

There is more than enough evidence to show that Warner did not have a sufficient basis to form a good faith belief that the files in Hotfile's counterclaim were infringing. First, Warner admits that when it deleted material through Hotfile's SRA account, it did not form any individual belief as to the infringing status of any specific file; rather, the only "belief" Warner formed about the material it deleted was a generalized confidence that the automated system it devised was good at finding and deleting mostly Warner content. *See* Thompson Decl. Ex. 4 (Kaplan Depo. 104:18-105:2; 103:2-10). Warner did not have much "faith" – good or any other kind – in its system;

Thompson Decl. Exs. 6 and 8. Given that Warner acknowledges that ▇ of the files located by its ▇ were false positives, Warner cannot claim that—with respect to any individual file—it has a good faith basis to assert that the file contained Warner content. Warner may not simply treat these "errors" as collateral damage. 17 U.S.C. § 512(c)(3) plainly limits content owners to taking down their own works. To hold otherwise would eviscerate the DMCA.

Second, Warner unquestionably failed to satisfy the basic human review requirements necessary to form a good faith belief under § 512(f). After inputting the ▇

8

**FILED UNDER SEAL**                         CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF



        ██████ into Warner's ██████, no human at Warner ever reviewed ████████████████

██████████████████████████████████████████████████████████████████████

        ████████████ ▌ No human at made any attempt whatsoever to determine whether any individual file was subject to a fair use defense.[4]  Mr. Kaplan even admitted that a ██████—not anyone at Warner—represents to Hotfile that it has a good faith belief that the material is infringing when files are deleted through the SRA.  Thompson Decl. Ex. 4 (Kaplan Depo. 101:8-102:14).  Since a ██████ cannot form a "good faith belief" about anything, much less make a determination that a given file is or is not protected by the doctrine of fair use as required by *Lenz*, Warner's reliance on ██████ to locate and delete material without ████████ precludes a finding that Warner had a "good faith belief" as to its misrepresentations.

        Given the requirement that a human must undertake some initial review of a particular file—including an analysis of whether it is subject to a fair use defense—in order to form a good faith belief that material is infringing, Warner's misrepresentations were plainly "knowing."  The court must evaluate whether the defendant had a sufficient basis grounded in the particular facts of the specific material that was deleted in order to form a good faith belief regarding that material.  See *Rossi*, 391 F.3d at 1002, 1006 (sufficient basis to form belief where site stated it had MPAA movies available for download).  Here, there is no dispute that Warner lacked the necessary factual basis to form any specific belief as to the identity, infringing status, or potential fair uses of the particular files its ██████ selected and deleted.

        Warner's total failure to conduct even the most basic review necessary to form any kind of good faith belief is demonstrated most clearly by Warner's ████████████████████████

████████ Thompson Decl. Ex. 7.  ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

        ████ How Warner could have a subjective good faith belief in the accuracy of that statement is beyond comprehension.

---

[3]   According to Warner, the files at issue in this counterclaim that were located by a Warner vendor, LeakID, deletions of those files are addressed in section IV(A)(4) *infra*.

[4]   Warner even deleted a file of an adult video called "This Ain't Avatar XXX," apparently contending that it had a "good faith" belief that "Ain't Avatar" infringed Warner's rights in the movie "Avatar." Thompson Decl. Ex. 10 (row 657.)

Having unquestionably failed to take the steps necessary to form a good faith belief that material is infringing on Hotfile, Warner cannot show that it is entitled to summary judgment as to its "knowing" misrepresentations under § 512(f).

### 2.   Even If A Generalized Confidence In An Automated System Could Constitute A "Good Faith Belief," There Would Still Be Questions of Material Fact Regarding Warner's Knowledge Of Its Misrepresentations

Assuming *arguendo* that the law does not require a human to review any of the facts supporting representations under penalty of perjury—including an evaluation of potential fair uses, a question clearly not suited for automation—in order to form a good faith belief under the DMCA, there would still be a question of fact whether Warner formed such a belief as to the files in Hotfile's counterclaim.

Warner claims that it has a sophisticated system for determining ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Kaplan Decl. ¶ 8.) In reality, Warner's ▉▉▉▉▉▉▉ system isn't sophisticated at all. It doesn't really even search for ▉▉▉▉▉ Rather, it appears to search ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Thompson Decl. Exs. 16-17. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ There is clearly a question of material fact as to whether Warner had a sufficient basis to contend that ▉▉▉ file on a page titled "Hot Girls In Shorts HD Wallpapers Widescreen" was unauthorized Warner content, knowing only the identity of the main website ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Thompson Decl. Ex. 16.

Warner's knowledge of its absurdly overbroad ▉▉▉▉▉▉▉▉ is not speculative. For one, it can be inferred that Warner knew how its automated ▉▉▉ worked. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Thompson Decl. Ex. 18. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ CSUF ¶ 8. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

██████████████████████████████████ ██ .[5] Not surprisingly, Warner

incorrectly deleted a significant amount of material this way. Thompson Decl. Ex. 19. ████

███████████████████████████

██████████████ Warner cannot credibly assert that it did not know it was making

misrepresentations when it deleted such files. Even if Warner's failure to conduct any human

review of the files doesn't disqualify it from claiming to have a good faith belief that these files

were infringing, there is at least a question of material fact that they had a sufficient basis to

believe that ██████████████████████████ Warner content.

Regardless of which ████████ Warner's ████ used, there is evidence to show that

Warner knew that its practice of █████████████████████████████

██ was resulting in the systematic deletion of non-Warner content. ████████████

████████████████████████████████████████████

█████████

████ Thompson Decl. Ex. 20. ████████████████████

██████████████████████████████████████

█████████████████████████████████

████ including copies of a file called "Toukou Ura King" that even Warner now admits

wasn't violating anyone's copyrights. Thompson Decl. Ex. 21; Ex. 10 (rows 834-836.) ████

████████████████████████████████████

████████████████████████████

█████████████████████████████ t raises questions of material fact as to

whether it subjectively knew of its errors.

████████████████████████████████████

████████████████████████████████████

█████████████████████████████ Thompson Decl.

Ex. 22. Of the 847 incorrectly identified files in Hotfile's counterclaim, 164 are single links

smaller than 200mb. Titov Decl. ¶ 11. Warner subjectively knew that its ████ were

_____

[5] ████████████████████████████████████

██████████████████████████████████████

████████████

consistently misidentifying ███████ files as Warner movies, but it continued to delete those files anyway. As such, there is a question of fact as to whether Warner's misrepresentations of infringement as to those files were knowing under any standard.

Finally, ██████████████ that copies of a non-infringing software program, JDownloader, ███████████████████████████████████████████████

██████████████████████ Thompson Decl. Ex. 4 (Kaplan Depo. 232:13-16). Also, since Warner claims to, as a matter of practice, review lists of files it had previously deleted, there is a question of fact as to whether Warner knew that it had been systematically deleting copies of JDownloader since 2009. *Id.* at 87:20-88:4.

**3.     There Is Evidence Suggesting That Warner "Deliberately" Deleted Files –
         Though Such Intent Is Not Necessary for § 512(f) Liability.**

██████████████████████████████████████████████████████████████████

Thompson Decl. Ex. 14.  Tellingly, though Warner had absolutely no authorization to delete JDownloader, █████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████

██████████████ Thompson Decl. Ex. 4 (Kaplan Depo. 236:9-18). ███████████

█████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████

**4.     Warner's Claimed Reliance On Human Review Of Files By Its Vendor
         LeakID At Best Raises Further Questions Of Material Fact.**

Warner attempts to avoid liability for improper deletions made by its automated system by noting that many of the files identified in Hotfile's counterclaim were located by one of its vendors, LeakID, whose process for locating files purportedly ████████████" of the links, though there is no evidence in the record regarding where or how LeakID found those files. (Kaplan Decl. ¶ 20); *see also* Thompson Decl. Ex. 23. At deposition, Warner testified that Warner's "system" for processing LeakID-provided links involved a Warner employee named ██████████ manually reviewing and approving the text of the URLs of all such links before having Warner's ███ send notices on those files. CSUF ¶ 5. As such, the only factual basis in

**FILED UNDER SEAL**                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

the record for Warner's purported good faith belief in misrepresenting that the files identified in Hotfile's counterclaim located by LeakID infringed Warner's copyrights consists of 1) Warner's ambiguous "confidence" in the accuracy of LeakID's methods (though Warner has provided no indication of what LeakID actually did to find the files) and 2)███████████ review and approval of the titles of the files LeakID provided to him.

First, there is a question of material fact as to whether LeakID had a "good faith belief" that the material it misidentified as Warner content was infringing. The files identified as non-infringing in rows 811-817 of Scott Zebrak's declaration were located by LeakID, misidentified as copies of the Warner movie "Cop Out," and deleted on February 9, 2011. Thompson Decl. Ex. 23. That same day, Herve Lemaire, CEO of LeakID sent a takedown notice to Hotfile on behalf of "Metropolitan," identifying those exact same files as copies of a movie "La nuit nous appartient." Thompson Decl. Ex. 24. The day before, Herve Lemaire sent another takedown notice to Hotfile for those exact same files, this time identifying them as infringing Microsoft's copyright in "sharepoint portal server 2001." Thompson Decl. Ex. 25. Apparently, in the span of 48 hours, LeakID had a "good faith belief" that those six non-infringing files were copies of two different movies and a piece of software. This is simply not credible.

Moreover, a simple look at the URLs that ███████████ reviewed and determined were infringing Warner's copyrights demonstrates the lack of any plausible basis for forming a good faith belief as to Warner's authorization to delete them. ███████████ apparently had a good faith to believe that:

- A file titled "amateur couple motel [XXX]" was the movie "Inception"
- A file titled "Premium Link Generator" was the movie "Due Date"
- A file titled "Emma Mae – Foot Fetish Daily 4" was the movie "Cop Out"

The list goes on and on. Thompson Decl. Ex. 23. It stretches credulity to the breaking point for Warner to assert that, based only on ███████████ and the fact that they were generated by LeakID's opaque process, Warner had a good faith basis to state under penalty of perjury that they infringed Warner's copyrights.[6] There is a clear question of fact as to whether Warner had a

---



6 ███████████████████████████████████████████████████████

Thompson Decl. Ex. 4 (Kaplan Depo. 249:25-250:9); Kaplan Decl. ¶ 11 ████████

███████████████████████

FILED UNDER SEAL                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

sufficient basis to misrepresent under penalty of perjury that it believed it was authorized to delete these files.

Because there is significant evidence that Warner did not and could not have had a subjective good faith belief that it properly deleted the files identified in Hotfile's counterclaim, Warner's motion for summary judgment regarding its "knowing" misrepresentations under § 512(f) must be rejected.

**B.     There is Ample Evidence That Hotfile's Injury Was Proximately Caused by Warner**

      **1.     Though Hotfile Can Show Economic Damages, They Are Not Required Under The Statute**

Warner incorrectly claims that Hotfile must show "actual and economic" injury to prevail on its § 512(f) claim. (Opp. at 11). The case Warner cites for this proposition (the only published case squarely addressing the scope of actionable § 512(f) damages) actually says the *opposite*: **"actual expenses or economic losses of some minimum value are <u>not necessary</u> under the statute."** *Lenz v. Universal Music Corp.*, 2010 WL 702466, at *12 (N.D. Cal. Feb. 25, 2010) (emphasis added). In *Lenz*, the court rejected the Defendant's argument that damages under § 512(f) "must be more-than-marginal economic damage," and granted summary judgment in favor of the Plaintiff regarding the affirmative defense that the Plaintiff had suffered no damages even though the Plaintiff did not clearly demonstrate specific economic damages. *Id.* at *9, 12 ("no genuine issue of material fact as to whether Lenz incurred some damages as defined under the statute," [where claimed injury was] "time spent reviewing counternotice procedures, seeking the assistance of counsel, and responding to the takedown notice.") The Court recognized that requiring a party to show actual economic harm in addition to a knowing misrepresentation would make § 512(f) ineffective: "Requiring a plaintiff who can make such a showing [of a knowing misrepresentation] to demonstrate in addition not only that she suffered damages but also that those damages were economic and substantial would vitiate the deterrent effect of the statute." *Id.* at *11. Though not required, the facts demonstrate that Hotfile has suffered demonstrable economic injury even accepting Warner's inadmissible evidence.[7]

---

[7] There is also ample evidence that Hotfile has suffered reputational and goodwill harm because of Warner's deletions. Thompson Decl. Ex. 26. This by itself would be enough to present a jury issue.

**FILED UNDER SEAL**                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

2. **Hotfile Is Not Precluded From Seeking Damages For The Improper Deletion Of Files That Warner's Copyright Lawyer "Expert" Speculates Were Infringing Or Uploaded By Infringing Users.**

Under the DMCA only the owner of a given piece of content (or that owner's agent) is authorized to have material removed from a particular website. 17 U.S.C. § 512(c). Warner's interpretation of the DMCA, however, would vest Warner with private attorney general power to determine "copyright status" and delete whatever material it wanted to, without the actual copyright owner's consent or even prior notification. Quite simply, the DMCA strictly precludes Warner from playing the role a copyright vigilante "robocop" on behalf of other content owners.

a. **Whether a given work is subject to copyright protection does not mean its presence on Hotfile is infringing.**

Warner claims that the non-Warner files that it deleted did not injure Hotfile because Hotfile, through its 30(b)(6) deponent and its damages expert, "admitted" that Hotfile is not injured by the deletion of infringing files sent by the "wrong copyright owner." (Cite brief at 14-15). This argument misapprehends what "infringing" means. A file is not infringing if the copyright owner authorized its distribution on Hotfile. 17 U.S.C. § 106 (" the owner of copyright under this title has the exclusive rights to do and **to authorize** any of the following...)(emphasis added). A takedown notice sent by a third party without authorization by the owner cannot support the conclusion that a given file is infringing. There is simply "no assurance that a third party who does not hold the copyright in question could know whether the material was infringing." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 2011 WL 6357788, at *22 n.14 (9th Cir. Dec. 20, 2011). While Hotfile would not be injured by the removal of a file by the copyright owner (or with its authorization), Hotfile may well have been damaged by Warner's unauthorized deletion of files because the copyright owner may have chosen to leave the file on Hotfile, posted it himself, or authorized its posting.[8]



**FILED UNDER SEAL**                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

Warner's motion ignores the seminal §512(f) case— *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004)—which is factually closest to the present situation. There, the defendant requested the ISP to take down an entire email archive that had been posted on its site. *Diebold, Inc.*, 337 F. Supp. 2d 1195. The court acknowledged that some of the thousands of email messages may have been "subject to copyright protection," but held that "Diebold knowingly materially misrepresented that Plaintiffs infringed Diebold's copyright interest, at least with respect to the portions of the email archive clearly subject to the fair use exception." *Id.* at 1204, n.14. Here, Warner used the SRA to delete dozens—sometimes hundreds—of files in a day, automatically and indiscriminately making the same blanket representations under penalty of perjury for each file. If some of Warner's mistakes happened to take down non-Warner copyrighted materials, a jury would still be entitled to consider whether the use of such materials on Hotfile constituted a fair use or was authorized by the true owner, and thus, whether Hotfile has been injured by the deletion of such material.[9]

## b. The Expert Declaration of Scott Zebrak Is Inadmissible To Establish Copyright Infringement For Purposes Of Summary Judgment

To support its claim that Hotfile is not entitled to damages for the works in the counterclaim, Warner submits the "expert" declaration of industry copyright lawyer Scott Zebrak, who opines that nearly all of the files in Hotfile's counterclaim are "highly likely infringing." [10] Thompson Decl. Ex. 10. Preliminarily, Mr. Zebrak is hardly a neutral expert. He has spent his career advocating for one side of the issue, including a stint in charge of litigation

---

[9] Hotfile's latest information suggests that less than 5% of all uploads are "matched" as possible copyright infringement by Vobile's VCloud9 fingerprinting technology. (Titov Decl. ¶ 12; Titov Decl. Ex. 1.) This suggests that the chance that a random file wrongfully taken down by Warner's ▮ contains copyrighted material is much lower than indicated by Mr. Zebrak's speculative opinions.

[10] Warner has conceded that it was not authorized by the owner to delete the remaining files in the counterclaim at the time it deleted them. Warner claims that in preparing its summary judgment motion it asked for and received after-the-fact authorization to delete the files owned by Electronic Arts ("EA"), but presents no legal support that § 512(f) liability to the ISP can be avoided by checking with the copyright owner *after* the misrepresentation is made. If this were the law, Warner would be admitting to more misrepresentations. ▮

▮. Thompson Decl. Ex. 4 (Kaplan Depo. 87:21-88:4). Indeed Warner now has *post hoc* subjective knowledge that it made material misrepresentations for all of the files in Hotfile's counterclaim and has failed to seek authorization from the owner.

for the Recording Industry of Association of America. His resume (Thompson Decl. Ex. 28) lists two publications, both critiques of leading DMCA cases, *YouTube* and *Veoh*. The latter article criticized the *Veoh* district court decision, which has since been affirmed by the Ninth Circuit, as taking seriously "'false positives,' and other vague concepts that enable an online service provider to avoid taking responsibility for its own actions." Thompson Decl. Ex. 29 at 1. Putting aside his credibility issues (inappropriate for resolution on summary judgment), Mr. Zebrak's opinions are inadmissible conclusory suppositions without any basis in the factual record.

It is well-established in the Eleventh Circuit that a party may not support a motion for summary judgment "on the basis of an expert's opinion that fails to provide **specific facts from the record** to support its conclusory allegations." *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985) (emphasis added); *see also Rogers v. Evans*, 792 F.2d 1052 (11th Cir. 1986) (approving grant of motion to strike affidavit for failure to meet requirements of FRCP 56(e) where "**affidavit did not specifically identify the records examined nor attach any copies.**") (emphasis added). Similarly, a "conclusory statement directed at eliminating a genuine issue of material fact, as in the present case, is not sufficient to warrant the entry of summary judgment." *AXA Global Risks (UK) Ltd. v. Pierre*, 2001 WL 1825853, at \*5 (S.D. Fla. Nov. 8, 2001)

In *Evers*, the court rejected an affidavit submitted by an otherwise qualified expert in a car accident case who opined that, based on his review of the car, the collision scene, the witnesses, and the car design specifications, the collision would have been less severe if the car employed an airbag. *Evers*, 770 F.2d at 896. The court rejected the declaration for failure to actually cite any specific facts in support of the expert's conclusion: "Thelin's affidavit, though it purports to be based upon a review of the evidence, fails to provide specific facts to back up its conclusory allegations."*Id.*

Mr. Zebrak provides no facts in support of his legal conclusion that the files in Hotfile's counterclaim are infringing. He did not even record the factual basis for his opinions: "[M]y recordation of data along the way, whether it's retaining a link or otherwise, it was just sort of notes I kept along the way. It's not meant to be, you know, everything that could possibly show what the file is or everything that could possibly show that the file has been downloaded and distributed or the authorization issues." Thompson Decl. Ex. 30 (Zebrak Rebuttal Depo. 55:3-20). The closest thing to "facts" Mr. Zebrak disclosed are a few unspecified URLs in the "notes"

column of a spreadsheet he provided. Thompson Decl. Ex. 31 (Zebrak disclosure counterclaim files). But Mr. Zebrak admitted that these URLs were not the basis for his infringement contentions: "the idea in the notes section was for us to keep notes along the way, not to pinpoint this is how I identified the work, this is the author, you know, how it's being commercialized." Thompson Decl. Ex. 30 (Zebrak Rebuttal Depo. at 226:12-25). When asked directly to provide the factual basis for his opinions, Mr. Zebrak scoffed: "These works in the process I applied are…readily reproducible by anyone else." *Id.* at 227:9-25.

An admissible expert opinion cannot be based on a nebulous "methodology" and "quilt of information" never disclosed or cited. Thompson Decl. Ex. 32 (Zebrak Depo. 237:6-238:3). Since Mr. Zebrak has provided absolutely no facts to support his opinion that the files on Hotfile were "highly likely infringing," his opinion is insufficient to eliminate a question of material fact as to whether Hotfile can claim damages for those files.[11]

      **c.**     **Even If Admissible, Mr. Zebrak's Opinion Does Not Eliminate Questions Of Material Fact As To The Infringing Status Of The Files In Hotfile's Counterclaim.**

Even if Mr. Zebrak's opinion were admissible, myriad errors in his methodology and results raise questions of material fact as to whether his conclusions are accurate for any of the files. For one, Mr. Zebrak never bothered to ask the actual copyright owners whether or not a file was authorized for posting on Hotfile. Thompson Decl. Ex. 32 (Zebrak Depo. 319:3-22). Instead, he made the speculative assumption that files were not authorized for distribution Hotfile if the content owner was otherwise "commercializing [a file] and selling it…[because] it would be entirely inconsistent …for them to have authorized that content to be reproduced and distributed across the web on a viral basis." *Id.* at 126:11-127:5. This is sheer speculation and, at least for some content owners, demonstrably false. Hotfile contacted the owner of one file Mr. Zebrak identified as "highly likely infringing" who provided an affidavit explaining that he was perfectly fine with it being distributed for free on Hotfile. Thompson Decl. Ex. 33. And yet, Mr. Zebrak refused to accept the owner's testimony. Contradicting his "methodology" (under which speaking with the actual content owner is unnecessary), Mr. Zebrak insisted that he "speak with

---

[11] Mr. Zebrak's opinion is also inadmissible as an inappropriate expert legal conclusion. An expert may not testify regarding legal conclusions and "also may not testify to the legal implications of conduct." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). It is a "legal conclusion [whether] infringement (actionable copying) has occurred." *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 75 (2nd Cir. 1997).

this person [before making a determination as to authorization].... He, of course, knows what at
the time he authorized or didn't authorize." Thompson Decl. Ex. 30 (Zebrak Rebuttal Depo.
287:5-23.) Apparently, speaking with the copyright owner is only relevant when a sworn
statement contradicts Mr. Zebrak's bald speculation. Even assuming Mr. Zebrak's opinions
were admissible, they still would raise multiple question of material fact as to whether Hotfile is
entitled to damages from Warner's deletion of over 800 files, some of which are allegedly
"infringing."

> **d.    Even Accepting The Unsupported Legal Speculations Of Warner's
> "Expert," Hotfile Has Plainly Suffered Cognizable Injury Due To
> Warner's Misrepresentations**

Even accepting Mr. Zebrak's "conclusions" as to which files and users for which Hotfile
should be precluded from claiming injury, the injury to Hotfile is still obvious and well-founded.

Warner focuses on *user* deletions, not *file* deletions, ignoring the obvious damage
incurred when Warner improperly deletes popular material from Hotfile. The improper deletion
of non-infringing files—particularly popular ones—damages Hotfile's business model, which is
predicated on the availability of popular, non-infringing content.

the

evidence that Hotfile suffered injury because of such deletions is undisputed. Thompson Decl.
Ex. 34 (Lynde Expert Report ¶ 27). Even assuming that Hotfile cannot recover damages for files
Warner's "expert" claims are "highly likely infringing," Hotfile has suffered significant injury.
The files Warner's "expert" deemed not "highly likely infringing" were downloaded
times and resulted in     premium account subscriptions. Titov Decl. ¶¶ 5-6. Obviously, the
improper deletion of these files has injured Hotfile. *See* Declaration of Dr. Matthew Lynde
(attached hereto as Ex. C), hereinafter "Lynde Decl." Warner's motion for summary judgment
on the question of injury to Hotfile should fail on this evidence alone.

To illustrate the damage Hotfile has suffered, the court need consider just one of the files
Warner improperly deleted: the open source software program, JDownloader. Hotfile's
counterclaim identifies eight individual files that Plaintiffs' "expert" identifies as copies of
JDownloader. One of those files, http://hotfile.com/dl/25231712/b99b376/JDownloaderSetup
.exe.html, was uploaded by the owner of JDownloader, Appwork GmbH. Thompson Decl. Ex.
10 (row 798; Thompson Decl. Ex. 13. The files uploaded by the Hotfile Appwork user account
have been downloaded a total of at least      times and resulted in     premium account

subscriptions. There is significant evidence that the deletion of nine JDownloader files alone cause Hotfile significant economic injury. Lynde Decl. ¶ 6.

Finally, Mr. Zebrak's attempt to preclude Hotfile from obtaining damages stemming from users who "should" otherwise have been deleted for copyright infringing conduct and/or were not suspended as a result of Warner's improper deletions does not, as Mr. Zebrak suggests, prove that Hotfile suffered no damage by Warner's deletions. Mr. Zebrak admits that two users deleted as a direct result of Warner's misrepresentations did not upload any otherwise infringing material. *See* Declaration of Scott Zebrak In Support of Motion For Summary Judgment ¶ 20; CSUF ¶ 20; Thompson Decl. Ex. 10. According to Warner, because these users were not premium subscribers themselves, Hotfile suffered no damage from their improper termination. Warner again ignores the *files* deleted because of Warner's conduct. Those two users alone, identified in the spreadsheet as ▉ and ▉, uploaded files to Hotfile that were downloaded a combined ▉ times and directly resulted in ▉ premium user subscriptions. Titov Decl. ¶ 9. The deletion of admittedly non-infringing files uploaded by those two users resulted in their termination. That action alone resulted in significant economic injury to Hotfile. Lynde Decl. ¶ 4. Thus even if Hotfile were limited to seeking damages for the deletion of files Mr. Zebrak has admitted are non-infringing by the users he concedes should not have been terminated, the damage from those deletions alone are more than sufficient to demonstrate injury for purposes of a § 512(f) claim.

## V. CONCLUSION

Section 512(f) imposes liability for Warner's misrepresentations because "[i]t is only just to hold individuals responsible for their own erroneous claims made under penalty of perjury." *See* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.B.08[A]. Warner cannot dodge liability by offering purported expert opinions and after-the-fact excuses. A jury is entitled to consider and decide the many material issues of fact raised by Warner's 800 knowing misrepresentations; Hotfile respectfully submits that Warner's motion should be denied.

DATED: February 27, 2012              Respectfully submitted,

**FILED UNDER SEAL**                          CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

Janet T. Munn, Esq. Fla. Bar No. 501281
Email: jmunn@rascoklock.com
RASCO KLOCK
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102

And

Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email: rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email: aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email: tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email: dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email: jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

And

Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone: 617.928.1800
Telecopy: 617.928.1802

*Counsel for Defendants Hotfile Corporation
and Anton Titov*

21

**FILED UNDER SEAL**                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## CERTIFICATE OF SERVICE

      I hereby certify that on February 27, 2012, a true and correct copy of the foregoing

document, was filed conventionally and served on all counsel of record identified below via e-

mail and by Federal Express.

Karen L. Stetson, Esq.
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Telephone: 818.935.5812

By: _Janet B. Munn_

Janet T. Munn

4840-3276-9550, v. 1