# EXHIBIT 4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA


DISNEY ENTERPRISES, INC.,          )
TWENTIETH CENTURY FOX FILM         )
CORPORATION, UNIVERSAL CITY        )
STUDIOS PRODUCTIONS LLP,           )
COLUMBIA PICTURES INDUSTRIES,      )
INC., AND WARNER BROS.             )
ENTERTAINMENT, INC.,               )
                                   )
                 Plaintiffs,       )
                                   )
        vs.                        )No. 11-20427-Jordan
                                   )
HOTFILE CORP., ANTON TITOV,        )
AND DOES 1-10,                     )
                                   )
                 Defendants.       )
                                   )


HIGHLY CONFIDENTIAL

30(b)(6) Deposition of Warner Bros.

Entertainment, Inc.

by and through DAVID KAPLAN

WEDNESDAY, OCTOBER 12, 2011

LOS ANGELES, CALIFORNIA


ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com

REPORTED BY:  JEANINE CURCIONE
              CSR NO. 10223, RPR

FILE NO.: A505CAB

```
 1              Deposition of DAVID KAPLAN, taken on

 2       behalf of Defendant, at 9:37 A.M., Wednesday,

 3       October 12, 2011, at 633 West Fifth Street, Suite

 4       3500, Los Angeles, California, before Jeanine

 5       Curcione, C.S.R. No. 10223, RPR, pursuant to

 6       notice.

 7

 8       APPEARANCES OF COUNSEL:

 9       FOR THE PLAINTIFFS:

10           JENNER & BLOCK, LLP
             BY:  STEVEN FABRIZIO, ESQ.
11           633 West Fifth Street
             Suite 3500
12           Los Angeles, California 90071

13               AND

14           MOTION PICTURE ASSOCIATION OF AMERICA, INC.
             BY:  KRISTA S. COONS, ESQ.
15           15301 Ventura Boulevard
             Building E
16           Sherman Oaks, California 91403

17       FOR THE DEFENDANTS:

18           FARELLA BRAUN & MARTEL, LLP
             BY:  RODERICK M. THOMPSON, ESQ.
19           235 Montgomery Street
             17th Floor Russ Building
20           San Francisco, California 94104

21       ALSO PRESENT:

22           EVAN M. ENGSTROM, ESQ.

23           DAN ACKLEY, VIDEOGRAPHER

24

25
```

Page 16



09:50:36 10          Q.  Was there also a project within your

09:50:39 11    department whereby Warner would load content onto

09:50:46 12    Hotfile with the purpose of directing potential

09:50:50 13    customers to iTunes?

09:50:54 14          A.  I'm not sure I'd call it a project.

09:50:58 15    But there was a one time test done in I think

09:51:05 16    May 2010 or around April, May 2010 in connection

09:51:11 17    with an effort to put iTunes -- make Vampire

09:51:20 18    Diaries' episodes available on iTunes in the UK in

09:51:24 19    advance of their terrestrial broadcasts in the UK,

09:51:34 20    free television broadcast in the UK.

09:51:37 21          Q.  And that included loading content from

09:51:42 22    Vampire Diaries into Hotfile?

09:51:45 23          MR. FABRIZIO:  Objection.  Vague.

09:51:46 24          Q.  BY MR. THOMPSON:  Is that right?

09:51:47 25          A.  Not exactly.  It included loading



09:51:49   1    portions of episodes of -- I think four episodes

09:51:52   2    of Vampire Diaries onto a couple of different

09:51:58   3    cyberlockers, Hotfile being one of them, for about

09:51:58   4    a three-week period of time.

10:24:10   1            A.   On the subject of premium accounts?

10:24:12   2            Q.   And verifying files more quickly with

10:24:15   3       premium accounts.

10:24:15   4            A.   I think so.

10:24:21   5            Q.   Now, it's true, is it not, that with

10:24:25   6       respect to the Hotfile takedown removal tool that

10:24:32   7       is referenced in Exhibit 1 that Warner, in fact,

10:24:36   8       did not verify content before using that tool?

10:24:41   9            MR. FABRIZIO:  Objection.  Lacks

10:24:42   10      foundation.

10:24:43   11           THE WITNESS:  That's not correct.

10:24:46   12           Q.   BY MR. THOMPSON:  Did Warner ever view

10:24:49   13      the content on Hotfile, the actual content, not

10:24:56   14      the words in the URL, before utilizing the Hotfile

10:25:01   15      takedown tool?

10:25:04   16           A.   I'm going to say no because I'm unaware

10:25:07   17      of any instance.

10:25:08   18           Q.   Fair enough.  And Warner's practice and

10:25:11   19      procedure is not to have any human being view the

10:25:14   20      content before using the tool?

10:25:16   21           A.   I'm going to amend my answer a little

10:25:19   22      bit only because there were instances where we did

10:25:22   23      use these premium accounts for the reasons I just

10:25:25   24      described, so we would have seen in those

10:25:27   25      instances that there was a pirated version of

Page 44

10:25:44  5        Q.   It was Warner's practice and procedure

10:25:46  6    not to have any human review of the content on

10:25:49  7    Hotfile before utilizing the Hotfile takedown

10:25:53  8    removal tool?

10:25:54  9        A.   By human review you mean downloading

10:25:57 10    the content before the tool was used to send a

10:25:59 11    notice?

10:26:02 12        Q.   Downloading or otherwise viewing the

10:26:04 13    content?

10:26:04 14        A.   That's correct.

Page 46

10:28:26  1          THE WITNESS:  Yes.

10:28:28  2          Q.  BY MR. THOMPSON:  And maybe I made that

10:28:30  3     more complicated than I needed to.  It's possible

10:28:32  4     for Warner just to take a fingerprint from a file

10:28:35  5     in Hotfile and confirm by use of that fingerprint

10:28:40  6     that the content is Warner's property?

10:28:43  7          A.  No.

10:28:43  8          MR. FABRIZIO:  Objection.  Lacks foundation

10:28:45  9     and been asked and answered.  Just pause and let

10:28:47 10     me object.

10:28:48 11          THE WITNESS:  No.

10:28:54 12          Q.  BY MR. THOMPSON:  Does Warner have to

10:28:55 13     download the file in order to check a fingerprint?

10:28:57 14          A.  Yes.

10:29:02 15          Q.  And, in fact, Warner's practice and

10:29:04 16     procedure was not to download any file before

10:29:09 17     using the Hotfile takedown tool to delete the

10:29:13 18     file?

10:29:13 19          MR. FABRIZIO:  Objection.  Asked and

10:29:14 20     answered.

10:29:14 21          THE WITNESS:  That's correct.

10:29:22 22          MR. THOMPSON:  I'm going to have another

10:29:24 23     document marked now, and I think this one may

10:29:26 24     be -- we'll hit a few other questions first and

10:29:37 25     come back to that.

Page 74



11:21:44   5









Page 88

11:38:02   1



Electronically signed by Jeanine Curcione (601-181-089-2662)                              a7c38bf7-dabc-4c88-b57f-4a045d26c2f9

12:02:13  1     this is a screen shot from the Hotfile website and

12:02:18  2     what I wanted you to focus on is the little check

12:02:23  3     box under -- there's a large blank box in the

12:02:26  4     middle, do you see that?

12:02:27  5              (Exhibit 6 was marked for

12:02:27  6              identification by the Reporter.)

12:02:28  7     THE WITNESS:  Yes.

12:02:28  8              Q.   BY MR. THOMPSON:  And underneath

12:02:29  9     there's a check box and it states, "I certify

12:02:32 10     under penalty -- penalty of perjury that I am the

12:02:34 11     owner or authorized legal representative of the

12:02:37 12     owner of the copyrights to this material.  I have

12:02:42 13     a good faith belief that use of this material is

12:02:46 14     not authorized by the copyright owner, the

12:02:51 15     copyright owners agent or by law.  The foregoing

12:02:55 16     information is accurate as to this material."

12:02:58 17              Isn't it true that Warner made this

12:03:00 18     representation to Hotfile every time it used the

12:03:04 19     Hotfile SRA?

12:03:07 20              A.  Well, I'm sorry.  Are you asking

12:03:09 21     whether or not the -- the robot clicked the box as

12:03:12 22     part of getting access to the SRA tool?

12:03:18 23              Q.  It would have to click the box to use

12:03:19 24     the SRA tool?

12:03:21 25              A.  I think so, yes.

Page 102

12:03:22  1           Q.  And Warner knew that was the case;

12:03:23  2    correct?

12:03:24  3           A.  Yes.

12:03:25  4           Q.  So Warner knew that every time the

12:03:27  5    robot was using the SRA tool, that representation

12:03:31  6    was being made to Hotfile?

| | | |
|---|---|---|
| ██████████ | █ | █████████ |

| 12:04:48 | 2 | THE WITNESS:  Well, I think I would put it |
| 12:04:49 | 3 | this way.  The -- the statement is based on our |
| 12:04:54 | 4 | faith of the overall system that we developed. |
| 12:04:58 | 5 | Errors are made in any system that's being |
| 12:05:00 | 6 | developed.  The fact that we took any errors that |
| 12:05:03 | 7 | we discovered and used them to improve the system |
| 12:05:06 | 8 | I think further gave us confidence that the system |
| 12:05:08 | 9 | was one that was the best one that we could |
| 12:05:10 | 10 | create. |



```
12:07:13 18        Q.  BY MR. THOMPSON:  Is it Warner's
12:07:14 19   position that the representation it made with
12:07:16 20   respect to the SRA tool that we've just read
12:07:20 21   cannot be evaluated on a link-by-link basis but
12:07:23 22   must be looked at in the overall picture that you
12:07:26 23   just described?
12:07:26 24        MR. FABRIZIO:  Objection.  Lacks
12:07:27 25   foundation.
```



Page 105

12:07:28   1          Q.  BY MR. THOMPSON:  Is that right?

12:07:29   2          A.  Yes.

███████   █        ██   ██

███████   █        ██   ██████████████

███████   █        █████████████████

███████   █        ██████   ██████

███████   █        ██   █████   █████████

███████   █        ███████████   ████████

███████   █        ████████████████

███████   █        ██████   ██████

███████   █        ██████   ██████████

████████        █████████████████

████████        ████████████████

████████        █████████████

████████        ███████████

```
12:29:12 14         Q.  BY MR. THOMPSON:  Okay.  But there were

12:29:13 15    a lot more than four or five times where Warner

12:29:16 16    personnel had concluded that a particular file had

12:29:19 17    been taken down in error in all likelihood?

12:29:22 18         MR. FABRIZIO:  Objection.  Lacks

12:29:23 19    foundation.

12:29:24 20         THE WITNESS:  Probably more than four or

12:29:25 21    five times, yes.

12:29:26 22         Q.  BY MR. THOMPSON:  In those times, did

12:29:27 23    Warner take any steps to notify the content owner

12:29:32 24    of Warner's mistake?

12:29:36 25         A.  No.
```



13:26:08 23

Electronically signed by Jeanine Curcione (601-181-089-2662)

a7c38bf7-dabc-4c88-b57f-4a045d26c2f9



Page 125

13:26:21  1

Page 181



14:57:34   2

Electronically signed by Jeanine Curcione (601-181-089-2662)                                    a7c38bf7-dabc-4c88-b57f-4a045d26c2f9

Page 225



16:32:45  13



16:33:35   1



Page 231



Electronically signed by Jeanine Curcione (601-181-089-2662)

a7c38bf7-dabc-4c88-b57f-4a045d26c2f9







Electronically signed by Jeanine Curcione (601-181-089-2662)                                          a7c38bf7-dabc-4c88-b57f-

Page  235



Electronically signed by Jeanine Curcione (601-181-089-2662)    a7c38bf7-dabc-4c88-b57f-4a045d26c2f9

Page 236



16:46:44   9



16:58:37 19          A.  The good faith belief as to any

16:58:41 20    particular file comes from our belief that the

16:58:44 21    system that we're using is one of the best ones

16:58:47 22    that's -- that's available.  It's a robust system

16:58:51 23    that is capable of scaling.  I've answered this

16:59:08 24    question a couple of different times.  But I don't

16:59:09 25    know, I'm trying not to come up with different



Electronically signed by Jeanine Curcione (601-181-089-2662)                                    a7c38bf7-dabc-4c88-b57f-4a045d26c2f9



Electronically signed by Jeanine Curcione (601-181-089-2662)                    a7c38bf7-dabc-4c88-b57f-4a045d26c2f9

1                          REPORTER'S CERTIFICATE

2

3       I, JEANINE CURCIONE, C.S.R. NO. 10223, RPR, in and

4       for the State of California, do hereby certify:

5              That prior to being examined, the witness

6       named in the foregoing deposition was by me duly

7       sworn to testify the truth, the whole truth and

8       nothing but the truth.

9              That said deposition was taken down by me

10      in shorthand at the time and place therein named,

11      and thereafter reduced to typewriting under my

12      direction, and the same is a true, correct and

13      complete transcript of said proceedings.

14              That the witness, before examination, was

15      by me duly sworn to testify the truth, the whole

16      truth, and nothing but the truth, and that the

17      witness reserved the right of signature;

18              I further certify that I am not interested

19      in the event of the action.

20              Witness my hand this 26th day of October,

21      2011.

22

23                                   _____

24                                   Certified Shorthand
                                     Reporter for the
25                                   State of California