# EXHIBIT 32

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

------------------------------------x

DISNEY ENTERPRISES, INC., et al.,   )

               Plaintiffs,     ) Case No.

      v.                    ) 11-20427-

HOTFILE CORP., et al.,           ) WILLIAMS/

        Defendants.     ) TURNOFF

------------------------------------x

HOTFILE CORP.,                  )

        Counterclaimant,     )

      v.                  )

WARNER BROS. ENTERTAINMENT, INC.,   )

        Counterdefendant.     )

------------------------------------x


   VIDEOTAPED DEPOSITION OF SCOTT A. ZEBRAK, ESQUIRE

        Washington, D.C.

       Tuesday, December 20, 2011

         9:43 a.m.



Job No.:  439702

Pages 1 - 370

Reported By:  Joan V. Cain

1      Videotaped Deposition of SCOTT A. ZEBRAK,

2  ESQUIRE, held at the law offices of:

3

4      STRADLEY RONON STEVENS & YOUNG, LLP

5      Suite 500

6      1250 Connecticut Avenue, Northwest

7      Washington, D.C. 20036

8      (202) 822-9611

9

10     Pursuant to Notice, before Joan V. Cain, Court

11  Reporter and Notary Public in and for the District of

12  Columbia.

13

14

15

16

17

18

19

20

21

22

23

24

25

1        A P P E A R A N C E S

2

3      ON BEHALF OF PLAINTIFFS:

4          STEVEN B. FABRIZIO, ESQUIRE

5          JENNER & BLOCK, LLP

6          Suite 900

7          1099 New York Avenue, Northwest

8          Washington, D.C. 20001

9          Telephone:  (202) 639-6000

10          E-mail:  sfabrizio@jenner.com

11

12      ON BEHALF OF DEFENDANTS AND COUNTERCLAIMANT:

13          ANDREW LEIBNITZ, ESQUIRE

14          FARELLA BRAUN & MARTEL, LLP

15          Russ Building

16          235 Montgomery Street

17          San Francisco, California 94104

18          Telephone:  (415) 954-4400

19          E-mail:  aleibnitz@fbm.com

20

21      ALSO PRESENT:

22          Terry Michael King, Videographer

23

24

25

1   my -- my answer's the same with respect to -- to each

2   of these specific questions you asked in terms of --

3   you know, I've explained what my expertise is.  As to

4   a particular facet of a particular type of copyrighted

5   material that's, you know, that's not where my -- I

6   have a familiarity and I researched those quite

7   extensively here, but, you know, I'm not an expert in

8   Japanese Manga, for example, or the example you gave

9   on -- whatever the title was for that gaming tool.

10  BY MR. LEIBNITZ:

11      Q   What did you do to research the Manga

12  industry for this case?

13      A   Well, there's sort of general and specific

14  answers to that.  You know, most of the research that

15  I did began in connection with research on a

16  particular file.

17          So, you know, on a particular file we'd

18  attempt to see who was commercializing it and who the

19  copyright owner or its licensee was, and for example,

20  you know, the definition of highly likely infringing

21  that I applied was, you know, if it was copyrighted

22  content and it was being commercialized by that, you

23  know, entity, whether it was located in Japan or the

24  creator of, you know, that sort of material elsewhere,

25  you know, if they were commercializing it and selling

1   it and it was copyrighted content, it would be

2   entirely inconsistent with how they were developing

3   and selling that content for them to have authorized

4   that content to be reproduced and distributed across

5   the web on a viral basis.

6          So, you know, my -- my research on that

7   industry generally or that specific provider

8   specifically involved looking through the sites of

9   those providers, looking at secondary research

10  material on that space as I ran across it or looked

11  for it, and I think that's probably it.

12  Q   To what degree does the Japanese Manga

13  industry encourage fan translations?

14       MR. FABRIZIO:  Objection, vague and

15  ambiguous.

16       THE WITNESS:  I am familiar -- well, let me

17  take a step back.

18       MR. FABRIZIO:  And overbroad.

19       THE WITNESS:  Yeah.  When you're talking

20  about the whole industry, I'm familiar with fans

21  translate certain works from one language to another.

22  Sometimes they may -- I don't -- they may do other

23  things with the content.  The -- I -- probably what

24  each particular company does varies based on a -- on a

25  company.

1   won't let the witness review.

2        MR. LEIBNITZ:  I'm not going to look at it

3   then.

4   BY MR. LEIBNITZ:

5     Q   Mr. Zebrak?

6     A   I mean, again, I'm trying to answer the

7   best -- question as best as I can.  You've put forward

8   a document that -- that you I believe said was printed

9   from the file on the drive that corresponds to this

10  upload and two pages that you said correspond to the

11  links I have in my notes section.  Doing the review, I

12  would have been looking at all this information along

13  with other information and doing it also in a more

14  meaningful way, not in -- in printouts, but seeing it

15  in color on a larger screen where I could zoom in, and

16  I would have been looking at other information too

17  about -- about this, including perhaps a takedown

18  notice, other information about the status of the

19  uploader perhaps.  There's a whole -- you know, the

20  term I used before.  There's a whole quilt of

21  information.  It's very hard right now for this work

22  for me to remember more than what I've already told

23  you.

24        I can tell you the process I went through.

25  For this particular work, this doesn't jog my memory

 1   as to the exact basis for my determination.  But I

 2   could tell you the process I would have gone through

 3   to arrive at that determination.

 4       Q   Mr. Zebrak, there was no DMCA notice for

 5   this according to Exhibit 101, right?

 6          MR. FABRIZIO:  Okay.  Objection.  Lacks

 7   foundation and misstates Hotfile's own records.  Let

 8   him see the other document that he brought with him.

 9          THE WITNESS:  Should I answer the question?

10   BY MR. LEIBNITZ:

11       Q   Please.

12       A   This -- this document you put in front of me

13   for -- excuse me -- for 1767 says null in the Noticed

14   field.  You know, again, there -- there's other

15   correlation of takedown information that -- that is

16   available both to you and to us that would further

17   inform whether this is properly designated highly

18   likely infringing.  I have no reason to think that

19   it's anything other than a highly likely infringing

20   designation.  If I'm wrong, I'd be the first one to

21   want to correct that, but right now I don't think that

22   that's the case.  I don't -- I recall the process I

23   went through.  I can't footnote the exact specific for

24   it.  I could supplement the answer afterwards, and

25   that's -- really, I'm not sure what else you want me

Page 319

1  read it back.

2  BY MR. LEIBNITZ:

3      Q    Here's the question.  Did you ask anybody to

4  confirm your findings?

5      A    And I believe the answer I gave to you

6  was -- well, maybe -- maybe I didn't include this

7  portion of it within my answer.  I did, for the

8  reasons we've discussed earlier, find that it was

9  feasible for me to reach out to the plaintiffs in the

10  case and they with respect to their works confirmed

11  for me that they owned them and did not authorize them

12  for distribution through Hotfile.  With respect to

13  reaching out to other copyright owners, I didn't view

14  that to be necessary or feasible for the reasons we've

15  discussed.

16          So beyond that, in terms of confirming my

17  findings in answering your question a moment ago and

18  again now, the only other thing I did by way of asking

19  people to confirm my findings was -- in terms of

20  reaching out to others, I reached out in conversations

21  like the one I described to you a little while ago

22  with the head of the Free Speech Coalition.

23      Q    Do you have any scientifically reliable

24  reason to believe your findings are representative of

25  anybody but yourself?

1    CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

2       I, Joan V. Cain, Court Reporter, the officer

3  before whom the foregoing deposition was taken, do

4  hereby certify that the foregoing transcript is a true

5  and correct record of the testimony given; that said

6  testimony was taken by me stenographically and

7  thereafter reduced to typewriting under my direction

8  and that I am neither counsel for, related to, nor

9  employed by any of the parties to this case and have

10  no interest, financial or otherwise, in its outcome.

11     IN WITNESS WHEREOF, I have hereunto set my

12  hand and affixed my notarial seal this 29th day of

13  December 2011.

14

15  My commission expires:

16  June 14, 2014

17  _____

18  NOTARY PUBLIC IN AND FOR THE

19  DISTRICT OF COLUMBIA

20

21

22

23

24

25