UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

FILED by ___ D.C.

MAR 1 2 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**WARNER'S RESPONSES TO HOTFILE'S OBJECTIONS TO MAGISTRATE JUDGE'S
REPORT AND RECOMMNEDATION WARNER'S MOTION TO USE TITOV EX. 27
IN ITS ENTIRETY AT TRIAL OR ON SUMMARY JUDGMENT**

**FILED UNDER SEAL**

**RELATES TO SEALED ORDER AND CONTAINS CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

On February 28, 2012, Magistrate Judge Turnoff entered a ruling recommending that the Court grant Warner's Motion to Use Titov Ex. 27 in its Entirety at Trial or on Summary Judgment. In its Objections to the Report and Recommendation, Hotfile fails to address the merits of the Magistrate Judge's decision, much less provide a persuasive reason why Warner's Motion should be denied. Hotfile's Objections should be overruled:

**First,** Magistrate Judge Turnoff correctly found that Hotfile had waived any work product protection over Titov Ex. 27 in its entirety by failing to take reasonable steps to prevent disclosure and rectify the error as required by Rule 502 of the Federal Rules of Evidence. Magistrate Judge Turnoff found that there were no markings on Titov Ex. 27 that would have made it apparent to Warner or anyone else that the document was protected work product. Magistrate Judge Turnoff also found that it took approximately five months for Hotfile to realize that it had produced Titov Ex. 27 and, by that time, the document had been integrated into Warner's litigation strategy. These findings substantiate the recommendation that Warner's Motion be granted.

**Second,** as an alternative basis for granting Warner's Motion, Hotfile did not even attempt to carry its burden of proving that its production of Titov Ex. 27 was inadvertent. Hotfile produced the 297-page document on not one but two occasions; its purported clawback came nearly five months after its first production, and after Warner's counsel had already integrated information contained in the spreadsheet into its case strategy and trial preparation, and Hotfile's second production came in a production of only 83 documents, 10 of which Hotfile has clawed back. Hotfile cannot belatedly claw the document back under these circumstances.

**Third,** Hotfile's failure to object to the use of Titov Ex. 27 at the Titov deposition waived any claim of privilege to the document as used during the deposition. It is well-settled that failure to object to the use of a privileged document at deposition waives that privilege, and – here – Hotfile did not object during the entire day of questioning, only objecting after the questioning about Titov Ex. 27 had finished and the deposition concluded for the day.

**Fourth,** Hotfile's objections are moot because its conduct since the Magistrate Judge's original Order of January 13, 2012 granting Warner's motion to use the deposition exhibit constitutes a complete (and independent) waiver of any work product claim. Hotfile failed to seek a stay of Magistrate Judge Turnoff's Order and failed to take any steps to prevent yet another disclosure of the exhibit in question to Warner by means of the official deposition

1

transcript. As a result, Hotfile has now allowed Warner (and the other plaintiffs) to be in possession of Titov Ex. 27 without any limitations on its use for almost two months, thus again destroying any remaining claim of work product protection.

**Finally**, Hotfile makes only glancing references to the Magistrate Judge's Report and Recommendations. Lacking convincing responses to Magistrate Judge Turnoff's analysis, Hotfile instead spends most of its brief leveling misguided and unfounded accusations of misconduct against Warner's counsel. Those accusations – which were already considered and expressly rejected by Magistrate Judge Turnoff – appear to be the primary purpose behind Hotfile's filing of the instant Objections. The Magistrate Judge's written finding that the parties have conducted themselves in good faith throughout this litigation and that nothing has risen to the level of misconduct belies the accuracy of Hotfile's accusations.

At bottom, Hotfile waived any claim of work product protection, and Warner complied with both the Protective Order and its ethical obligations. In light of the unreasonableness of Hotfile's notices, in both form and timing, Magistrate Judge Turnoff found nothing improper about Warner's use of Titov Ex. 27 at the Hotfile deposition – which, as discussed below, was done without objection from Hotfile's lead counsel. And Warner's initial motion granted by Magistrate Judge Turnoff was both timely and in compliance with the Protective Order.

## BACKGROUND

Warner has previously explained the relevant background in its Motion to authorize use of the document in its entirety at summary judgment or at trial. *See, e.g.,* Warner's Motion and Memorandum of Law to Permit Use at Trial or Summary Judgment of Titov Ex. 27 in its Entirety ("Warner's Motion"), Docket No. 241. For the Court's benefit, Warner repeats the same discussion here.

On two separate occasions in discovery four months apart (June 17, 2011, then again on October 14, 2011), Hotfile produced in discovery an internal email among non-lawyers attaching a 297-page spreadsheet.[1] *See* Declaration of Steven B. Fabrizio in Support of Warner's Motion to Compel the Production of Titov Deposition Ex. 27 ("Fabrizio Decl."), Docket No. 211-1, ¶ 3. The spreadsheet listed takedown notices sent by Warner to Hotfile, with entries for each file

---

[1] Warner has consistently referred to this document as "Titov Ex. 27," while noting that at the deposition, only a 32-page excerpt of the document was used. In their Objections, Hotfile refers to the document as WB Links. The parties are referring to the same document.

2

indicating whether Hotfile concluded the file was copyrighted, and, if so, whether Warner was the copyright owner. *See* Declaration of Luke C. Platzer, Docket No. 181-1, Ex. C. The email and attached spreadsheet reflect three important facts. First, Hotfile's internal personnel knew that in cases where Warner had sent mistaken takedown notices to Hotfile, the files noticed were still infringing. Second, Hotfile already knew about supposed mistakes in Warner's takedown notices as early as February 2011, months before it brought them to Warner's attention or filed its counterclaim, and allowed those supposed errors to accumulate despite such knowledge. And third, Hotfile's internal, non-legal personnel were perfectly capable, contrary to arguments subsequently made by their attorneys and retained experts in this litigation, of determining when a file on Hotfile's system was or was not copyrighted and who the copyright owner was.

Warner's counsel had no reasonable basis to believe that the document was the product of any investigation by an attorney or at counsel's direction. No attorney was listed as a recipient, neither the email nor the spreadsheet bears any notification claiming privilege or work product, and it predated Hotfile's counterclaim against Warner by well over five months.[2] Indeed, when the shoe was on the other foot, Hotfile took the position that even lawyer-directed analyses by Warner's internal personnel of the takedown notices it sent to Hotfile were **not** work product, filing a motion to compel Warner's own analysis on that basis. *See* Motion and Memorandum of Law of Defendant and Counterclaimant Hotfile Corporation to Compel Discovery From Plaintiff and Counter-Defendant Warner Bros. Entertainment Inc. of Warner's Takedown Investigations, Docket No. 164 at 5-7.

Warner had received, reviewed, and integrated into its own work product the information contained within the spreadsheet long before Hotfile tried to claim it as work product. *See* Fabrizio Decl., Docket No. 211-1, ¶ 3. Warner's affirmative defenses in this case (filed in early November 2011) include the contentions (1) that the takedowns to Hotfile that are the subject of the counterclaim, even if sent in error, nonetheless took down files that were infringing and unauthorized to be distributed by Hotfile in any event, and (2) that Hotfile failed to notify Warner that it believed that some of Warner's notices were mistaken, deciding instead to allow

---

[2] At the deposition, Titov himself identified the document as reflecting work prepared during an "early" phase of investigation, before Hotfile's lawyers became involved at all. *See* Fabrizio Decl., Docket No. 211-1, Ex. A (Titov Dep. Tr.) at 167:2-16; 167:23-168:12.

potential errors to accumulate as a basis for a retaliatory lawsuit against Warner.[3]  While those defenses stand on their own independently of the full Titov Ex. 27 and based on other evidence adduced in discovery, information contained in Titov Ex. 27 obviously, and in fact, strongly informed both.  Warner also integrated the document into its deposition strategy and preparation. *See* Fabrizio Decl., Docket No. 211-1, ¶ 3.

Titov's deposition took place in Sofia, Bulgaria the first week of December 2011.  The days between November 28 and December 3, 2011 were some of the busiest in this litigation. They were the last days before the parties embarked on a schedule of 23 depositions in 15 business days.  In the week before Titov's deposition, Hotfile deluged Plaintiffs with mass clawbacks – including in an email sent while Warner's counsel was about to board a plane to Bulgaria – clawing back sixty-four documents by merely listing strings of Bates numbers without any descriptions of the purportedly clawed-back documents.  *See* Fabrizio Decl., Docket No. 211-1, ¶ 8.  As Magistrate Judge Turnoff made clear, attempting to identify and destroy clawed back documents under those circumstances is exceptionally challenging.  *See* Declaration

---

[3] *See* Answer and Defenses of Warner Bros. Entertainment, Inc. to Hotfile's Second Amended Counterclaim, Docket No. 163 at 8-9 (emphasis added):

> 3. Hotfile's Counterclaim is barred in whole or in part by the doctrine of unclean hands.  Upon information and belief, **the substantial majority of the files that Hotfile claims Warner wrongfully took down were in fact infringing and were not authorized by the copyright owners to be distributed through or hosted on Hotfile.**  Any "harm" Hotfile suffered from the removal of those files is limited to Hotfile's losing the ability to profit from the infringement of the works of those other copyright owners.  Because of unclean hands, Hotfile's Counterclaim is barred.
>
> [. . .]
>
> 5. Hotfile's Counterclaim is barred in whole or in part by the doctrines of laches and estoppel.  Upon information and belief, **Hotfile knew of the occasional mistaken takedown requested by Warner and never informed Warner, at a time when Warner could have used that information to prevent future errors of that kind and otherwise continued improving the accuracy and reliability of its process for issuing notifications requesting the removal of infringing files.  Instead, Hotfile allowed such errors to continue in order to have something to sue Warner over and with which to embarrass Warner as a response to Warner's copyright infringement claims against Hotfile.**  Because of laches and estoppel, Hotfile's Counterclaim is barred.

of Duane C. Pozza in Support of Warner's Responses to Hotfile's Objections to Magistrate Judge's Order Regarding Warner's Motion to Compel Titov Deposition Ex. 27 ("Pozza Decl."), Ex. C, Excerpts from the Transcript of the January 13, 2012 Hearing before Magistrate Turnoff ("1/13/12 Tr.") at 29:16-22 (noting that "[t]he fact is this is a huge complicated case," that the clawed-back document "has been out there for [Plaintiffs'] paralegals and associates and everybody else, the investigators to deal with" and that "[i]t would probably be difficult, if not impossible to find out exactly what use it has been put to . . . .").

On the first day of Titov's deposition, Warner used as a deposition exhibit the first 32 pages of the document. Defendants' lead counsel was given a copy of the document at the same time as the witness, defendant Titov, and did not object to the questioning or the introduction of the on the basis of work product. *See* Fabrizio Decl., Docket No. 211-1, ¶¶ 6-10 & Ex. A. Only after the deposition concluded for the day – and only after Titov gave testimony about Titov Ex. 27 that undermined Hotfile's counterclaim – did Hotfile's counsel claim that the spreadsheet was work product and insist that it be clawed back.

On December 12, 2011, Warner filed a motion to compel production of the clawed-back document on the basis that it was not properly work product, and that any work product protection had been waived, first through Defendants' production of the document (which was not inadvertent) and then again by Defendants' failure to object to its use at the deposition. *See* Docket No. 180. Not until the evening of December 23, 2011 – nearly three weeks after the deposition and two weeks after Warner's motion to compel – did Hotfile's counsel raise that Titov Ex. 27 had been part of Hotfile's mass clawbacks in the days leading up to the deposition. *See* Declaration of Roderick Thompson in Support of Counterclaimant Hotfile Corp.'s Opposition to Warner's Motion to Compel the Production of Titov Deposition Ex. 27 ("Thompson Decl."), Docket No. 206-1 at Ex. 4.

Magistrate Judge Turnoff, after considering extensive briefing and argument at a hearing on January 13, 2012, granted Warner's initial motion to compel in part and deferred it in part. Noting Warner's argument that the production of the full document had not been inadvertent, the "time lag," and the "use of the documents," 1/13/12 Tr. at 21:11-12, he observed that the Court "would be justified and I think a higher and wiser authority would probably agree that [Warner's] motion should be granted in toto . . . ." *Id.* at 31:9-12.

Ultimately, however, the Magistrate Judge's initial ruling was based on waiver at the deposition, noting that "the bottom line is the cat is already out of the bag already . . . ." *Id.* at 31:18-19.  Observing that the 32-page excerpt of the document physically marked as an exhibit at Titov's deposition was "part of the deposition that was made a part of the record in this case," *id.* at 28:10-11, he permitted Warner to make use of the excerpt.  *Id.* at 32:11-16 (agreeing that Warner "may use the deposition exhibit and the deposition testimony").  He then ordered Hotfile to file a copy of the entire 297-page document with the Court, ruling that the proper procedure to admit the full document would be a motion addressed to the Court.  *Id.* at 32:13-16 (agreeing that "if [Warner] want[s] to use the full document, that document is going to be under seal"); *see also* Omnibus Order, Docket No. 227 at 2 ("any party seeking to use such document shall file the appropriate pleading, *e.g.* a motion in limine for use at trial").  Warner filed such a motion on January 31, 2012.  *See* Docket Nos. 240 & 241.

Hotfile objected to Magistrate Judge Turnoff's first order granting Warner's motion in part and deferring in part.  *See* Objections of Defendants Hotfile Corporation and Anton Titov to Magistrate Judge's Report and Recommendation Regarding Plaintiff Warner's Motion to Use Titov Exhibit 27 in its Entirety at Trial or on Summary Judgment, Docket No. 235 ("Obj.").  The Court, in its order on February 7, 2012, overruled Hotfile's objection without prejudice and referred Warner's Motion to Magistrate Judge Turnoff for appropriate disposition.  2/7/12 Order, Docket No. 248.  After receiving further extensive briefing, Magistrate Judge Turnoff held a second hearing on February 15, 2012, and issued his Report and Recommendation on February 28, 2012, recommending to the Court that Warner's Motion be granted.  Report and Recommendation, Docket No. 306 ("R&R").

Magistrate Judge Turnoff's Report and Recommendation is the culmination of multiple motions and two hearings regarding whether Warner may use any or all of Titov Ex. 27 in these proceedings.  *Id.* at 1-3.  As the Report and Recommendation makes clear, Magistrate Judge Turnoff is intimately familiar with the facts of the dispute and has considered each party's arguments on the merits fully.  *Id.* at 7 (expressing sympathy towards Hotfile's counsel regarding "the hardships of litigating document intensive cases and conducting discovery abroad).

## LEGAL STANDARD

Although the Magistrate Judge styled his ruling as a Report and Recommendation to be reviewed pursuant to 28 U.S.C. § 636(b)(1)(C), Warner respectfully suggests that the Magistrate

Judge's ruling is actually an Order under § 636(b)(1)(A) and should be reviewed as such. Warner's Motion concerns a pretrial, non-dispositive matter and was referred to the Magistrate Judge by the Court for appropriate disposition.  Warner believes that under 28 U.S.C. § 636 and the rules of this Court, the Magistrate Judge's decision on the motion can and should be treated as Order and not a Report and Recommendation.  *See* February 8, 2012 Order of Referral (Docket No. 248); 28 U.S.C. § 636(b)(1)(A); S.D. Fla. Magistrate L.R. 1(c) (identifying the types of pre-trial motions subject to the Report and Recommendation procedure).[4]

Orders by United States Magistrate Judges may be reversed only when the party objecting to the Order carries their burden of showing that the Magistrate Judge's decision is "clearly erroneous or contrary to law."  S.D. Fla. Magis. L. R. 4(a)(1); 28 U.S.C. § 636(b)(1)(A).  Objections to Reports and Recommendations are reviewed *de novo* by the District Court.  S.D. Fla. Magis. L. R. 4(b); 28 U.S.C. § 636(b)(1)(C).  Warner respectfully submits that, while Hotfile's Objections should be overruled under either standard of review, no purpose served by referring discovery motions to the Magistrate Judge if those motions are going to be reviewed de novo by the Court.

## ARGUMENT

I.  **MAGISTRATE JUDGE TURNOFF CORRECTLY CONCLUDED THAT HOTFILE WAIVED ITS WORK PRODUCT PRIVILEGE OF THE ENTIRE TITOV EX. 27.**

Magistrate Judge Turnoff's Report and Recommendation analyzed the requirements of Federal Rule of Evidence 502 and correctly concluded that Hotfile had waived its work product privilege over the entirety of Titov Ex. 27 because they did not take reasonable steps to either (a) prevent disclosure or (b) rectify the error.  A failure to do either operates as waiver under the federal rules of evidence.  Fed. R. Evid. 502(b)(2) & (3).  Oddly, Hotfile does not address the requirements of Rule 502 in its Objections, other than to assert in conclusory fashion and without any evidentiary support, that its production was indeed inadvertent.  While Warner disputes the inadvertence of the production, *infra*, part II, even assuming that the production was inadvertent does not settle the question of waiver.

---

[4] Warner request that Magistrate Judge Turnoff convert the Report and Recommendation into an Order, and that request was denied.  *See* Paperless Order denying [309] Warner Bros.'s Motion to Convert Report and Recommendation into an Order.  Docket No. 312.

As Magistrate Judge Turnoff properly noted, even if a disclosure legally qualifies as inadvertent, a court must then examine the second and third elements of the Rule. *See* R&R. Rule 502 sets the federal standard for when a disclosure of privileged documents does not operate as a waiver. A disclosure is not a waiver if:

> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). Magistrate Judge Turnoff analyzed the actions Hotfile took under steps two and three and found that Hotfile had failed to take the reasonable steps necessary both before and after the disclosure and thus the disclosure waived whatever work product privilege the entire Titov Ex. 27 would have otherwise deserved.

### A. Hotfile failed to take reasonable steps to prevent disclosure of Titov Ex. 27.

Hotfile failed to take reasonable steps to prevent disclosure of Titov Ex. 27 by producing it not once but two separate times, in June 2011 and again in October 2011. As one court put it, a defendant's "'lost in the shuffle' argument would have greater weight had it not twice disclosed the privilege documents in different forms at different times." *United States v. CITGO Petroleum Corp.*, 2007 U.S. Dist. LEXIS 27986, at *14 (S.D. Tex. Apr. 16, 2007); *see also id.* at *12 ("Evidence of multiple disclosures on multiple occasions leads the Court to believe that Citgo did not take reasonable precautions to prevent disclosure").

And while Hotfile misleadingly asserts that it produced more than a million pages of documents, Warner has already demonstrated in its earlier motion that the bulk of all document production was long completed before Hotfile produced Titov Ex. 27 in October. *See* Warner's 1/5/12 Reply, at 7-8. The October production was a discrete production related to the counterclaims. It consisted of a total of 83 documents – not millions, or even hundreds. Moreover, Hotfile has since clawed back 10 of the 83 documents from the October production. It is simply not credible for Hotfile to claim that it "inadvertently" produced one out of every eight documents produced in that October production – especially when Titov Ex. 27 is a 297-page document. Hotfile has never even attempted to offer an explanation to how these production errors occurred.

Hotfile compounded the carelessness of its disclosure by failing to have marked the document with any indication that it was protected work product. As the Defendants' admit in their Objection, Exhibit 27 did not "bear an attorney name, law firm name, or other legend . . . ." Obj. at 6. Magistrate Judge Turnoff noted, "[o]bjectively speaking, it may not have been immediately apparent to Warner, or anyone else reviewing the document(s), that same was generated by counsel in preparation for litigation." R&R at 6. The multiple disclosures and the failure to create even the most basic of markings to protect work product suffice to show that Hotfile failed to take reasonable precautions to prevent disclosure of Titov Ex. 27. *See Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 699 (S.D. Fla. 2009) (questioning whether defendant could be considered to have taken reasonable steps to prevent disclosure of a document "since it is not marked as a privileged attorney-client communication").

**B. Hotfile failed to take reasonable steps to rectify its error disclosing Titov Ex. 27.**

Hotfile did not attempt to claw back Titov Ex. 27 until after Warner and its lawyers had the document for five months – almost the entire discovery period in this case. In that time, Warner had analyzed the document, had integrated the document into its case preparation, and had used the document in devising affirmative defenses, discovery planning, and discovery itself. Indeed, although it has destroyed its own work product in order to comply with the claw back under the Protective Order, Warner already has partially conducted the analyses it seeks to introduce into evidence – and knows the results. Hotfile sought to claw back Titov Ex. 27 only when discovery was closing, and only after Hotfile's lead witness gave testimony about the document (without objection) that undermines Hotfile's counterclaim against Warner. By happenstance or design, Hotfile has left Warner no opportunity to "go back in time" and prepare its case anew as if Hotfile had not produced Titov Ex. 27.

Magistrate Judge Turnoff acknowledged that Hotfile did "take certain steps to rectify" its disclosure, but expressed skepticism that such steps were sufficient. R&R at 8. Warner respectfully suggests that the record of Hotfile's attempts to put the cat back into bag is woefully inadequate to meet the standards of Rule 502. The five-plus month delay between the first disclosure and the claw back is simply too long of a delay to remedy. *See id.* ("In sum, the documents have been out there for Warner's staff, counsel, paralegals and others to view in the course of several months. It would be difficult, if not impossible, to determine what use it has been put to, and equally impossible remedy the wrong.").

II.     **HOTFILE'S PRODUCTION OF TITOV EX. 27 WAS NOT LEGALLY INADVERTENT.**

An alternative basis for granting Warner's motion is that Hotfile's production of Titov Ex. 27 was not inadvertent under Rule 502. Hotfile bears the burden of proof to demonstrate that its production of Titov Ex. 27 was deserving of protection as an "inadvertently produced" document. It is well-established that "[w]hen a producing party claims inadvertent disclosure, it has the burden of proving that the disclosure was truly inadvertent." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 850 (E.D. Mich. 2010) (quotation marks omitted); *see also, e.g., Peterson v. Bernardi*, 262 F.R.D. 424, 428 (D.N.J. 2009) (the disclosing party "has the burden of proving that his documents were inadvertently produced"). As one court explained, in a finding directly applicable to Hotfile:

> Although Defendants claimed they inadvertently produced documents, they failed, with the exception of stating the number of documents produced, to support that assertion with facts. Without such information, the Court cannot find that the Defendants met their burden to show either that the disclosure was inadvertent, or that Defendants took reasonable steps to prevent disclosure.

*Comrie v. Ipsco, Inc.*, No. 08C3060, 2009 WL 4403364, at *2 (N.D. Ill. Nov. 30, 2009).

Hotfile was required, therefore, to come forward with actual evidence explaining the circumstances of its production of Titov Ex. 27 and identifying the steps that it took to prevent production of privileged documents. Yet, Hotfile still has not even attempted to meet its burden. Thus, Warner's motion should be granted on this basis alone. *See* Warner's 1/5/12 Reply, at 5-6 (citing consistent line of cases rejecting claims of "inadvertent" production when proponent of privilege did not present evidence to meet its burden of proof).

Courts routinely refuse to find that a production of a privileged document was "inadvertent" under such circumstances. For example, in *Amobi v. D.C. Dept. of Corr.*, 262 F.R.D. 45, 54-55 (D.D.C. 2009) (emphasis added; citation omitted), the court held:

> Defendants do not provide the court with any indication of the methodology used to review documents for privilege, but only vaguely refer to several reviews of the documents to be produced. . . . Hence, the efforts taken are not even described, and there is no indication of what specific efforts were taken to prevent disclosure, let alone any explanation of why these efforts were, all things considered, reasonable in the context of the demands made upon the defendants. Instead, 'the court is left to speculate what specific precautions were taken by counsel to prevent this disclosure.'... Hence,

defendants do not meet the burden of proving that the privilege was not waived in regards to the memorandum.

*Peterson*, 262 F.R.D. at 429 (emphasis added; brackets in original) is equally applicable:

> Plaintiff's moving papers only mention one step that was taken to prevent an inadvertent error: "[a]t each time [document production], plaintiff's counsel engaged in a privilege review." … However, plaintiff does not state when his review occurred, how much time he took to review the documents, what documents were reviewed, and other basic details of the review process. The Court does not accept plaintiff's bare allegation that he conducted a "privilege review" as conclusive proof that he took reasonable steps to prevent an inadvertent production.

*See also, e.g., Figueras v. Puerto Rico Elec. Power Auth.*, 250 F.R.D. 94, 97 (D.P.R. 2008) (citation omitted) (rejecting claim of inadvertent production because defendant "has provided no straightforward explanation of the steps taken to ensure that no privileged document would be produced beyond the perfunctory statement that all documents produced were reviewed by counsel 'to the best of their ability'").

Instead of addressing its failure to meet its burden, Hotfile insists that Warner relies "on outdated and irrelevant cases." Obj. at 18. This is incorrect. Far from being superseded by Rule 502, courts must still determine whether a production was inadvertent to apply the three-step analysis of the rule. "Rule 502 does not define 'inadvertent'." Moore's Federal Practice § 26.70[6][f] (3d ed. 2011). Given Rule 502's silence on this and related issues, leading treatises have noted – in direct contradiction to Hotfile's claim – that "the pre-2008 case law remains pertinent to application of this rule." 8 Wright, Miller, and Marcus, Federal Practice and Procedure § 2016.3 (3d ed. 2010).

Under the clear weight of authority – and notwithstanding Hotfile's citation to a few outlier decisions – courts continue to rely on pre-Rule 502 caselaw to determine when a disclosure is "inadvertent." In *Heriot v. Byrne*, 257 F.R.D. 645 (N.D. Ill. 2009), for instance, the district court expressly held that pre-Rule 502 caselaw applies to determine inadvertence. Before Rule 502, inadvertence was determined by "factors such as the total number of documents reviewed, the procedures used to review the documents before they were produced, and the actions of producing party after discovering that the documents had been produced." *Id.* at 658-59. The *Heriot* court concluded that in the wake of Rule 502, it "c[ould] find no reason to discard these factors, which aptly address the issue of whether a party inadvertently disclosed confidential information." *Id.* at 659. Similarly, "[p]ost-amendment [of Rule 502], district

courts in the Third Circuit have continued to consider [five] factors relevant to the issue of inadvertent disclosure of privileged material." *Rhoades v. YWCA*, 2009 U.S. Dist. LEXIS 95486, at *6 (W.D. Pa. Oct. 14, 2009) (citing cases post-dating Rule 502's enactment); *see also Silverstein v. Fed. Bureau of Prisons*, 2009 U.S. Dist. LEXIS 121753, at *28-*29 (D. Colo. Dec. 14, 2009) (listing multiple factors for determining "inadvertence" under Rule 502(b)).  And *Sensient Colors* – which Hotfile itself cites (Obj. at 18) – further supports this view, as it too relies on pre-Rule 502 caselaw to define inadvertence.  *See* 2009 U.S. Dist. LEXIS 81951, at *14 (stating "inadvertent" disclosure is defined by "a multitude of factors").  Thus, cases that pre-date the amendment of Rule 502 remain good authority and under that authority Hotfile's disclosure of Titov Ex. 27 cannot be deemed inadvertent.

### III.   HOTFILE'S FAILURE TO OBJECT TO THE USE OF TITOV EX. 27 AT THE TITOV DEPOSITION WAIVED ANY CLAIM OF PRIVILEGE.

As Warner previously briefed, and Magistrate Judge Turnoff agreed in his original order, the use of an excerpt of Titov Ex. 27 at Titov's deposition without objection from counsel meant that "the cat is out of the bag already . . . ." 1/13/12 Tr. at 31:17-19.  An excerpt of Titov Ex. 27 was marked as an exhibit during the Hotfile Rule 30(b)(6) deposition and Defendant Titov testified about it without objection. *See* Fabrizio Decl., Docket No. 211-1, ¶¶ 9-10 & Ex. A (Titov Dep. Tr.) at 167:23-173:2.  Hotfile's lead counsel defended the deposition and was given a copy of the exhibit at the same time as the witness.  Hotfile's counsel did not raise a single objection to the use of the document or the questioning on it (except as to form). *Id.*  Mr. Titov gave testimony about Ex. 27 that undermines Hotfile's counterclaim against Warner, confirming that his understanding of Titov Ex. 27 is that nearly all the files mistakenly noticed by Warner were in fact copyright infringing. *Id.* at 169:7-15.  Hotfile did not assert a work product objection until after the deposition had concluded for the day; in other words, not until after Hotfile had time to evaluate the implications of Mr. Titov's testimony.  It is hard to conceive of a clearer case of waiver.

### IV.   HOTFILE'S FAILURE TO SEEK A STAY OF MAGISTRATE JUDGE TURNOFF'S ORDER CONSTITUTES WAIVER AND MOOTS ITS OBJECTIONS.

Hotfile's Objections to the Report and Recommendation are moot because Hotfile's conduct subsequent to Titov's deposition constitutes waiver.  Magistrate Judge Turnoff's original Order took effect immediately on January 13, 2012. *See* 1/13/12 Tr. at 34:7-9 (order is "in effect

as we speak"). Hotfile has thus been on notice since January 13, 2012 that Warner had a copy of Titov Ex. 27 and that Magistrate Judge Turnoff had directed that Warner "may use the deposition exhibit and the deposition testimony." *Id.* at 32:11-16. Indeed, following the hearing, when counsel for Hotfile insisted that counsel for Warner refrain from making any use of the deposition exhibit notwithstanding Magistrate Judge Turnoff's order expressly permitting such use, Warner's counsel informed Hotfile's counsel that the Jan 13, 2012 Order took effect immediately and that Warner could not delay analyzing the document in light of the upcoming summary judgment deadlines. *See* Pozza Decl., Ex. A.

Subsequent to its destruction of its copies of Titov Ex. 27 in accordance with the Protective Order, Warner acquired a new copy of the portion of the document used as an exhibit at the deposition when the court reporter delivered final transcripts to the parties. Hotfile was equally aware of this, as the transcript was served on both parties, and the fact was discussed at the hearing. 1/13/12 Tr. at 21:17-25. During depositions in Bulgaria, Warner's counsel informed Hotfile's lead counsel that "we can resolve the documents already marked when we return to the states." *See* Pozza Decl., Ex. B. But Hotfile's counsel never followed up, resulting in Warner's receiving a copy of the deposition exhibit once again when the reporter circulated transcripts.[5]

It is well established that "[w]ork-product protection is waived when protected materials are disclosed in a way that 'substantially increases the opportunity for potential adversaries to obtain the information.'" *Stern v. O'Quinn*, 253 F.R.D. 663, 681 (S.D. Fla. 2008) (quoting *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 587 (N.D.N.Y. 1989)). In both instances – by failing to seek a stay of Magistrate Judge Turnoff's order and by failing to make efforts to recall or retrieve the deposition exhibit – Hotfile failed to prevent disclosure of its claimed work product to Warner. As Magistrate Judge Turnoff observed at the January hearing, Hotfile "could have filed a motion with the court to get a court order" before distribution of the deposition exhibit, but did not. 1/13/12 Tr. at 22:7-10. Indeed, Hotfile did even not file its first objections to Magistrate Judge Turnoff's Order until two weeks before motions for summary judgment on Hotfile's Counterclaim were due (and did not request

---

[5] Indeed, even after Warner's counsel reminded Hotfile's counsel and advised Magistrate Judge Turnoff at the hearing on January 13 that Warner now once again had a copy of the document in its possession, *see* 1/13/12 Tr. at 21:17-25, Hotfile has *still* made no effort to redact the transcript as to Titov Ex. 27 or other documents marked at the deposition that Hotfile has clawed back.

expedited briefing), thus rendering it a practical impossibility for the Court to even consider the issue before Warner filed its motion for summary judgment on February 10, 2012. Alone and in combination, each omission by Hotfile constitutes waiver entirely independent of the waiver at the deposition on which Magistrate Judge Turnoff's original Order was premised, and the Rule 502 analysis on which the Report and Recommendation was based, rendering moot Hotfile's objections to either decision.

## V.   HOTFILE'S MULTIPLE ACCUSATIONS OF MISCONDUCT AGAINST WARNER'S COUNSEL ARE UNFOUNDED.

Lacking convincing responses to either Magistrate Judge Turnoff's original Order, the Report and Recommendation, or the alternative bases on which Magistrate Judge Turnoff could have reached the same conclusion, Hotfile resorts to leveling baseless charges of improper conduct against Warner's counsel. The real purpose of Hotfile's Objections appears to be to sully counsel's reputation with the Court. But each of Hotfile's accusations is groundless, and all were rightly considered and disregarded by the Magistrate Judge twice. Indeed, most recently, Magistrate Judge Turnoff expressly found: "Lastly, the Court would be remiss if it did not note the following. Having had the parties before this Court on numerous occasions, the undersigned is of the opinion that all parties have conducted themselves in good faith throughout the course of this litigation. In this Court's view, nothing that took place here, on either side, rises to the level of misconduct, and as such, the court makes no such findings." R&R at 8. Because Hotfile seems intent on trying to disparage Warner's counsel, for whatever reasons, Warner addresses Hotfile's accusations below in far greater depth than they warrant on their "merits."

### A.   Hotfile Misstates the Clawback Deadline.

Hotfile's first argument, that Warner violated the Protective Order by not having yet destroyed Titov Ex. 27 by December 5, 2011, *see* Obj. at 10-11, is easily disposed of. Monday, December 5, 2011, was within five court days from Monday, November 28, 2011, when Hotfile sent the first of its two mass clawback emails. Hotfile misrepresents that the Protective Order requires destruction of documents "within five days," Obj. at 10, even though the Order plainly requires such destruction in "five (5) *court* days." Docket No. 68 at 19, ¶ 20 (emphasis added). And the five-court-day deadline had in any event been extended by an additional week by stipulation – a fact Hotfile omits from its Objections. *See* Pozza Decl., ¶ 5. Warner engaged in

a reasonable effort to destroy its copies of the document by the deadline, which was several days *after* the deposition.

### B.   Hotfile Unreasonably Sandbagged Plaintiffs With Mass Clawbacks.

Hotfile objects to the use of Titov Ex. 27 at Titov's deposition, arguing that it was a violation of the Protective Order as opposed to the utterly predictable result of Hotfile's unreasonable decision to engage in mass clawbacks, without any identification of the documents beyond a string of Bates numbers, on the eve of depositions.  Hotfile's argument neglects the practical difficulties of trying to scour countless internal emails, analyses, deposition exhibits, and outlines during the busiest period in the case and while Plaintiffs' deposition outlines were themselves in flux.  *See, e.g.,* 1/13/12 Tr. at 29:16-22 (Magistrate Judge noting that "[t]he fact is this is a huge complicated case," that the clawed-back document "has been out there for [Plaintiffs'] paralegals and associates and everybody else, the investigators to deal with" and that "[i]t would probably be difficult, if not impossible to find out exactly what use it has been put to . . . .").  Warner's failure to realize that one of the documents in its outline had been clawed back occurred despite Warner's best efforts and as the result of Hotfile's unreasonable practices.  *Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir. 1984) (calling for "reasonable diligence to comply with a court order").

### C.   Warner's Motion to Compel Was Timely Under the Protective Order.

Hotfile also tries to argue that Warner "violated the protective order" by filing its motion too late.  *See* Obj. at 13-15.  At the outset, this argument is immaterial.  Even if Hotfile could show that Warner's motion should have been filed earlier – which it cannot, *see* discussion *infra* – Magistrate Judges "[e]xercise general supervision of civil and criminal calendars," S.D. Fla. Magis. L. R. 1(i)(1), and Hotfile fails to show that Magistrate Judge Turnoff erred here.  *See, e.g., Jones v. Coleman Co., Inc.*, 39 F.3d 749, 753–54 (7th Cir. 1994) (finding that a magistrate judge did not abuse his discretion by permitting filing of motion after the deadline, despite district court's prior denial of motion as untimely under Rule 16(b)); *Shoop v. Hott*, Civ. A. No. 5:08CV188, 2010 U.S. Dist. LEXIS 128740, at *6-7 (N.D. W. Va. Dec. 6, 2010) ("It is well within the magistrate judge's discretion to extend discovery deadlines . . . .").  Hotfile's unreasonable clawback practices – if not a deliberate attempt to preclude judicial review as a practical matter – certainly supplied the Magistrate Judge with good cause to consider the motion on the merits.

In any event, Hotfile's argument is wrong on the merits.  First, under Local Rule 26.1, the deadline for bringing a motion to compel is thirty days from the date on which the dispute arises. *See* S.D. Fla. L. R. 26.1(h)(1).  In arguing that Paragraph 20 of the parties' stipulated protective order shortens that deadline to five court days, Hotfile confuses two distinct deadlines – (1) the deadline for destroying copies of clawed-back documents and submitting a copy under seal to the Court, and (2) the deadline for moving to compel a clawed-back document. *See* Obj. at 13-14. Paragraph 20 of the Protective Order provides that, upon being given proper notice, a party must destroy copies of clawed back documents within five court days.  However, the Protective Order does *not* require that motions to compel must be brought within five court days; it expressly contemplates the contrary.  After reciting that parties must destroy clawed back documents within five court days, Paragraph 20 provides:

> However, the possessing parties may retain information sufficient to identify the Inadvertently Produced Privileged Document (*e.g.*, Bates number, author(s), recipient(s), date) for purposes of a motion to compel production of the document.  A party may move the Court for an order compelling production of the document, and may present the document to the Court under seal within five (5) court days of receiving a request to return the document …

Protective Order, May 19, 2011, Docket No. 68 at p. 19, ¶ 20.  Thus, the Protective Order provides that a party may present the *document* to the Court within five court days – a deadline clearly tied to the deadline for destroying the document and operating as an exception to the rule that all copies of the document must otherwise be destroyed.  Hotfile asserts incorrectly that the five court day clause is a limitation on filing a *motion*, which plainly it is not:

- Hotfile's reading is grammatically unsound – it would require the placement of a new comma between the words "seal" and "within" that is not present in the Order.
- Hotfile's reading makes no sense structurally.  Paragraph 20 expressly contemplates that before destroying the document, a party "may retain information sufficient to identify the Inadvertently Produced Privileged Document (*e.g.*, bates number, author(s), recipient(s), date) for purposes of a motion to compel production of the document."  That language only has meaning if the Protective Order contemplates motions to compel *after* the five court day period.

Second, Warner had the right to move to compel the spreadsheet at issue even under Hotfile's incorrect reading of the Protective Order. Hotfile had produced the spreadsheet twice

and clawed it back twice. Monday, December 12, 2011, when Warner filed its motion, was "five (5) court days," Docket No. 68 at 19, ¶ 20, from Saturday, December 3, 2011, when Hotfile purported to claw back one of those versions. Hotfile tries to argue in vain that "five court days after Saturday, December 3 is Friday, December 9," Obj. at 15, a logic that treats Monday, December 5 (the day of the deposition itself) as the first of the five court days. But it is established law that one "exclude[s] the day of the event that triggers the period," Fed. R. Civ. P. 6(a)(1), which was Monday, December 5, the first court day from the weekend clawback. Five court days later was Monday, December 12, when Warner filed its motion.[6]  Magistrate Judge Turnoff was not wrong in dismissing Hotfile's "technical arguments," 1/13/12 Tr. at 21:9, in granting Warner's initial motion and recommending granting Warner's Motion.[7]

### D.  Warner's Counsel Fully Complied With Their Obligation To Notify Hotfile Of Inadvertently Produced Documents.

Hotfile claims that Warner failed to surmise that Titov Ex. 27 was "inadvertently produced" and work product when it first became aware of the document and to notify Hotfile of the "inadvertent" production. Obj. at 15-16. This argument borders on the frivolous. Warner had every reason to believe that Hotfile had produced Titov Ex. 27 in the regular course (and continues to believe that it did).

Titov Ex. 27 is a document that, on its face, is not prepared by lawyers and not sent to or from lawyers; and it is not in any way marked to suggest it might be privileged. Hotfile's argument that it would have had no reason to create Titov Ex. 27 other than as part of this litigation does not suggest that the document was attorney work product. Indeed, Titov himself testified that Hotfile was in fact conducting the analysis that became Titov Ex. 27 well before Hotfile's counsel become involved. *See* Warner's 1/5/12 Reply, at 4, n.2. In fact, during Titov's deposition, having just drawn a distinction between an early period when Hotfile was

---

[6] While the Federal Rules have been revised to count weekend days and holidays, *see* Fed. R. Civ. P. 6(a)(1)(B), the Court's protective order by its terms is limited to "court days," not calendar days. *See* Docket No. 68 at p.19, ¶ 20.

[7] Nor is there any merit to Hotfile's argument that its first clawback should have operated as a global clawback of any documents containing the same content because the Order requires the "destruction of 'all copies.'" Obj. at 15. "Copies," in the Protective Order, clearly refers to other instances of the same document, not to separately-produced documents with the same content. Any other reading would impose on the recipient of clawbacks the impossibly burdensome task of discerning whether the producing party had produced different documents containing the same content.

investigating Warner without counsel and a later period when counsel was involved, Titov was asked whether Titov Ex. 27 was "part of your early investigation of what you perceived to be mistakes made by Warner in sending takedown notices." *Id.* (emphasis added). Titov confirmed that it was. *Id.*

But to see the absurdity of Hotfile's argument the Court need look no further than the fact that Hotfile's lead counsel had Titov Ex. 27 in his hands and was reviewing it during the entire time Hotfile's corporate representative was being examined on it. Yet, apparently, Hotfile's lead counsel – who presumably is privy to Hotfile's work product in ways Warner is not – did not once object to the use of Titov Ex. 27 as work product. If Hotfile's lead counsel apparently did not recognize Titov Ex. 27 as work product, Hotfile can hardly accuse Warner's counsel of misconduct for not recognizing it.

Hotfile's argument to the contrary rests on the fact that it had inadvertently produced a *different* email, HF02159110, which was on its face sent to Hotfile's counsel, and which on its face contained the words "attorney work product" in the subject line.[8] Hotfile then leaps to the conclusion that Warner should have been able to deduce that Titov Ex. 27 was inadvertently produced because of its purported similarity to HF02159110. *See* Obj. at 16 n.8. This accusation strains credulity:

- It was Plaintiffs, not Hotfile, who noticed the apparently inadvertent production of HF02159110. Plaintiffs promptly brought the document to Hotfile's attention and destroyed their copies of the document.

- HF02159110 is in Bulgarian (Titov Ex. 27 is in English). Since Plaintiffs' counsel immediately noticed the "Attorney Work Product" subject line on HF02159110 (which was in English) and did not analyze the document further, they never had occasion to translate the document to discern its contents.

- Having promptly destroyed their copy of HF02159110 in July 2011, Plaintiffs would have no basis for engaging in the comparison between HF02159110 and Titov Ex. 27 that Hotfile engages in its Objections.

---

[8] Hotfile misleadingly represents that HF02159110 was "between the same four individuals," Obj. at 15 & 16 n.8. In fact, HF02159110 was an email that, on its face, was sent to Hotfile's counsel, Valentin Gurvits. *See* Declaration of Roderick M. Thompson in Support of Hotfile Objections to Magistrate Judge's Order Regarding Plaintiff's Motion to Compel the Production of Titov Deposition Ex. 27, Obj. Decl., Ex. 2.

The bottom line is that Hotfile's accusation is a sideshow.  Unlike Hotfile's counsel, who presumably was privy to its own work product (and yet still failed to object at the deposition), Warner had no good reason to think that Titov Ex. 27 was work product, much less that it was inadvertently produced.

### E.     The Protective Order Permitted Warner to Contend That Hotfile's Production of Titov Ex. 27 was not "Inadvertent."

Hotfile also accuses Warner of violating the Protective Order by arguing that Hotfile's production of Titov Ex. 27 was not inadvertent.  *See* Obj. at 17-18.  Hotfile's argument rests on the fact that the Protective Order states that a "party may not assert as a ground for the entering of such an order [to compel] the fact or circumstance of the *inadvertent* production."  Protective Order, p. 19, ¶ 20 (emphasis added).  From there, Hotfile leaps to the conclusion that the Protective Order also prohibits a party from pointing to the circumstances of a production *at all*, even to support an argument that the production was *not* inadvertent.  *See* Obj. at 17-18.  The plain text of the protective order expressly precludes Hotfile's argument, and authorizes the argument made by Warner in the proceedings below:

> Nothing in this Order shall preclude a party from arguing that the production of the allegedly inadvertently produced document was not inadvertent or that conduct since production of the allegedly inadvertently produced document constitutes a waiver.

Protective Order, p. 19, ¶ 20.  Put differently, the Protective Order states that (1) inadvertent production will not be deemed waiver, (2) a party may not point to the circumstances of an inadvertent production to argue waiver by means of such inadvertent protection, but (3) notwithstanding the preceding two clauses, a party *may* argue that a production was not inadvertent.  *Id.*  That is what Warner did and what the Order plainly authorized. Magistrate Judge Turnoff agreed, stating "[t]hus in this Court's view, Warner is well within its rights to make such assertions.  While Hotfile is correct that this is but 'one sentence' in the Protective Order, it is one sentence that the Court cannot ignore."  R&R at 4.

It is, frankly, unclear why Hotfile would effectively ignore the merits of the matter and spend its entire briefing (both before this Court and the Magistrate Judge) making personal attacks on Warner's counsel, going so far as to take snippets of emails out of context to throw mud (*e.g.*, Hotfile's Objections to Magistrate Judge's Order Regarding Plaintiff' Motion to Compel Titov Deposition Exhibit 27, Docket No. 293 at Ex. 2 (Public Redacted Version)).

Ultimately, whether it reflects personal animosity or, more likely, that Hotfile has nothing to say on the merits, the accusations are (and always have been) baseless. As Magistrate Judge Turnoff went out of his way to make clear, Warner's counsel "conducted themselves in good faith throughout." R&R at 8.

## CONCLUSION

Warner respectfully requests that Hotfile's Objections to Magistrate Judge Turnoff's Report and Recommendation be overruled, and the Court adopt the Report and Recommendation and grant Warner Motion to Use Titov Ex. 27 in its Entirety at Trial or on Summary Judgment.


Dated: March 12, 2012                    Respectfully submitted,

                                         By: /s/ Karen L. Stetson
                                         Karen L. Stetson
                                         GRAY-ROBINSON, P.A.
                                         1221 Brickell Avenue
                                         16th Floor
                                         Miami, Fl 33131
                                         Telephone: (305) 461-6880
                                         Facsimile: (305) 461-6887


MOTION PICTURE ASSOCIATION          JENNER & BLOCK LLP
  OF AMERICA, INC.                  Steven B. Fabrizio (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)  Duane C. Pozza (*Pro Hac Vice*)
15301 Ventura Blvd.                 Luke C. Platzer (*Pro Hac Vice*)
Building E                          1099 New York Ave., N.W.
Sherman Oaks, CA 91403             Suite 900
Phone: (818) 995-6600              Washington, DC 20001
Fax: (818) 285-4403                Telephone: (202) 639-6000
                                    Facsimile: (202) 639-6066

                                    *Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

   *Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 12th day of March, 2012, I served the following documents on all counsel of record on the attached service list via electronic mail per the parties' service agreement:  (1) Warner's Responses to Hotfile's Objections to Magistrate Judge's Report and Recommendation Regarding Warner's Motion to Use Titov Ex. 27 in its Entirety at Trial or on Summary Judgment; (2) Warner's Motion and Memorandum of Law to File Under Seal; and (3) Warner's [Proposed] Order Granting Plaintiffs' Motion to File Documents Under Seal.

I further certify that I am admitted *pro hac vice* to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Luke C. Platzer
Luke C. Platzer

SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone: 415-954-4400

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*