# EXHIBIT R

HIGHLY CONFIDENTIAL

```
 1             UNITED STATES DISTRICT COURT
 2             SOUTHERN DISTRICT OF FLORIDA
 3
 4   DISNEY ENTERPRISES, INC.,         )
     TWENTIETH CENTURY FOX FILM        )
 5   CORPORATION, UNIVERSAL CITY       )
     STUDIOS PRODUCTIONS LLP,          )
 6   COLUMBIA PICTURES INDUSTRIES,     )
     INC., AND WARNER BROS.            )
 7   ENTERTAINMENT, INC.,              )
                                       )
 8                  Plaintiffs,        )
                                       )
 9        vs.                          )No. 11-20427-Jordan
                                       )
10   HOTFILE CORP., ANTON TITOV,       )
     AND DOES 1-10,                    )
11                                     )
                    Defendants.        )
12                                     )
13
14              HIGHLY CONFIDENTIAL
15       30(b)(6) Deposition of Warner Bros.
16              Entertainment, Inc.
17          by and through DAVID KAPLAN
18          WEDNESDAY, OCTOBER 12, 2011
19             LOS ANGELES, CALIFORNIA
20
21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   (800) 288-3376
     www.depo.com
23
     REPORTED BY:  JEANINE CURCIONE
24                 CSR NO. 10223, RPR
25   FILE NO.: A505CAB
```

HIGHLY CONFIDENTIAL

```
 1          Deposition of DAVID KAPLAN, taken on
 2   behalf of Defendant, at 9:37 A.M., Wednesday,
 3   October 12, 2011, at 633 West Fifth Street, Suite
 4   3500, Los Angeles, California, before Jeanine
 5   Curcione, C.S.R. No. 10223, RPR, pursuant to
 6   notice.
 7
 8   APPEARANCES OF COUNSEL:
 9   FOR THE PLAINTIFFS:
10        JENNER & BLOCK, LLP
          BY:  STEVEN FABRIZIO, ESQ.
11        633 West Fifth Street
          Suite 3500
12        Los Angeles, California 90071
13           AND
14        MOTION PICTURE ASSOCIATION OF AMERICA, INC.
          BY:  KRISTA S. COONS, ESQ.
15        15301 Ventura Boulevard
          Building E
16        Sherman Oaks, California 91403
17   FOR THE DEFENDANTS:
18        FARELLA BRAUN & MARTEL, LLP
          BY:  RODERICK M. THOMPSON, ESQ.
19        235 Montgomery Street
          17th Floor Russ Building
20        San Francisco, California 94104
21   ALSO PRESENT:
22        EVAN M. ENGSTROM, ESQ.
23        DAN ACKLEY, VIDEOGRAPHER
24
25
```

2

HIGHLY CONFIDENTIAL

```
 1         A.   Okay.                                      11:43:18
 2         Q.   So let me shift gears a little bit         11:43:20
 3   more.                                                 11:43:23
 4         MR. THOMPSON:   Let's go ahead and mark this    11:43:30
 5   as next in order.  Exhibit 5.  Thank you.             11:43:32
 6              (Exhibit 5 was marked for                  09:36:46
 7         identification by the Reporter.)                09:36:46
 8         Q.   BY MR. THOMPSON:  Mr. Kaplan, we've        11:44:03
 9   marked as Exhibit 5 a multi-page document produced    11:44:04
10   by Warner bearing production numbers 72945 through    11:44:09
11   956.  First of all, the front has the name of         11:44:18
12   Phillip Hughes.  Is he in your group?                 11:44:36
13         A.   He was an intern in the UK office          11:44:40
14   during this time period.  And I should just           11:44:43
15   mention, we call them interns but really they're      11:44:45
16   like university students who are like computer        11:44:48
17   science majors who are taking a gap year to get       11:44:51
18   work experience before they complete their --         11:44:56
19   their degree.                                         11:44:57
20         Q.   Are they paid?                             11:44:59
21         A.   They are.                                  11:45:00
22         Q.   I assume Mr. Hughes is then no longer      11:45:02
23   with Warner?                                          11:45:06
24         A.   Correct.                                   11:45:07
25         Q.   This is entitled "Robot Proposal."  I      11:45:11
```

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | just have a couple specific questions to direct | 11:45:20 |
| 2 | your attention to, but if you feel like you need | 11:45:24 |
| 3 | to review it more at any time you should feel | 11:45:27 |
| 4 | free. | 11:45:30 |
| 5 | On page 9, if you don't mind turning to | 11:45:33 |
| 6 | page 9 for a second, there's a reference to -- | 11:45:39 |
| 7 | in -- in the text toward the bottom it says, "The | 11:45:47 |
| 8 | above screen shot show the bot running, collecting | 11:45:52 |
| 9 | links and then checking them.  The bot is able to | 11:45:56 |
| 10 | determine if the cyberlocker link is active and if | 11:45:59 |
| 11 | so a separate bot would be able to report the | 11:46:02 |
| 12 | links using our back door takedown tools." | 11:46:06 |
| 13 | First, is the reference to back door | 11:46:11 |
| 14 | takedown tools, do you understand that to be the | 11:46:13 |
| 15 | same as the SRA that Hotfile provided? | 11:46:17 |
| 16 | MR. FABRIZIO:  Objection.  Calls for | 11:46:22 |
| 17 | speculation. | 11:46:23 |
| 18 | THE WITNESS:  I think it's the same idea. | 11:46:23 |
| 19 | Q.   BY MR. THOMPSON:  And he says a | 11:46:25 |
| 20 | separate bot.  Is that -- is that a reference to | 11:46:26 |
| 21 | the notice sending bot that you referred to? | 11:46:28 |
| 22 | A.   Yes.  I think so. | 11:46:33 |
| 23 | Q.   And just a more foundational question, | 11:46:36 |
| 24 | this particular document, Exhibit 5, this is a | 11:46:39 |
| 25 | description of the Kapow technology; is that | 11:46:44 |

94

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | right?  If you look at the second page. | 11:46:47 |
| 2 | MR. FABRIZIO:  You're asking about the | 11:46:53 |
| 3 | document or page 2? | 11:46:54 |
| 4 | MR. THOMPSON:  Page 3, thank you. | 11:46:57 |
| 5 | Q.  BY MR. THOMPSON:  This overall gives an | 11:47:01 |
| 6 | overview of Kapow; is that right? | 11:47:02 |
| 7 | A.  Right.  It's not a -- it's not a -- | 11:47:03 |
| 8 | it's a document put together by a Warner Bros.' | 11:47:05 |
| 9 | intern about -- about Kapow.  It's not -- these | 11:47:09 |
| 10 | are not a Kapow presentation to be clear.  It's | 11:47:12 |
| 11 | his interpretation of what Kapow is offering and | 11:47:16 |
| 12 | about. | 11:47:19 |
| 13 | Q.  And Kapow is an independent company | 11:47:20 |
| 14 | from Warner; right? | 11:47:22 |
| 15 | A.  Yes. | 11:47:24 |
| 16 | Q.  Is Warner still -- is Warner still a | 11:47:24 |
| 17 | Kapow licensee? | 11:47:30 |
| 18 | A.  We are. | 11:47:31 |
| 19 | Q.  And did Warner become a Kapow licensee | 11:47:31 |
| 20 | sometime after Mr. Hughes wrote this proposal? | 11:47:37 |
| 21 | A.  Yes, we did. | 11:47:38 |
| 22 | Q.  When did you first become a licensee? | 11:47:39 |
| 23 | A.  Probably mid 2009.  Could have -- could | 11:47:42 |
| 24 | have been late 2009.  But in that -- in 2009. | 11:47:50 |
| 25 | Q.  At page 11 -- I apologize for jumping | 11:47:56 |

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | around like this -- he refers to "deal from | 11:48:00 |
| 2 | Kapow." And it's a three-month trial referenced | 11:48:05 |
| 3 | for 10,000 British pounds. Do you see that? | 11:48:09 |
| 4 | A. Yes, I do. | 11:48:14 |
| 5 | Q. Did Warner take that trial? | 11:48:15 |
| 6 | A. Yes. With a caveat, I'm not sure it | 11:48:19 |
| 7 | was on these specific terms ultimately but yes, we | 11:48:23 |
| 8 | did a trial. | 11:48:26 |
| 9 | Q. And he refers to, "They've offered us a | 11:48:27 |
| 10 | quad core license for 60,000 British pounds per | 11:48:30 |
| 11 | annum." Did Warner accept that license? | 11:48:34 |
| 12 | A. Again, I don't know on exactly what | 11:48:39 |
| 13 | financial terms, but yes, we did get a license | 11:48:43 |
| 14 | from them. | 11:48:47 |
| 15 | Q. And under "Requirements," he talks | 11:48:48 |
| 16 | about a quad core computer and this would allow | 11:48:50 |
| 17 | four bots to run at a time. I assume that Warner | 11:48:54 |
| 18 | is using a lot more than four bots now; right? | 11:48:57 |
| 19 | A. Yes. | 11:49:00 |
| 20 | Q. How many bots in total is Warner using | 11:49:01 |
| 21 | under license from Kapow? | 11:49:04 |
| 22 | A. I can tell you that there's probably -- | 11:49:13 |
| 23 | probably somewhere between a thousand and 2,000. | 11:49:25 |
| 24 | I know how many sites we're scanning. Some sites | 11:49:29 |
| 25 | require multiple bots, but I don't know exactly | 11:49:32 |

HIGHLY CONFIDENTIAL

```
 1         Q.  BY MR. THOMPSON:  Mr. Kaplan, did you      11:58:06
 2    have a chance to read that paragraph on Exhibit 5?  11:58:08
 3         A.  I have.                                    11:58:11
 4         Q.  Just to orient the date again, you said    11:58:13
 5    Mr. Hughes was working on this in mid 2009?  Does   11:58:16
 6    that sound right?                                   11:58:25
 7         A.  I think this would have been earlier       11:58:26
 8    than that because I think the actual trial didn't   11:58:27
 9    happen until like mid 2009, so I think this is      11:58:30
10    from -- the date is confusing.  This must have      11:58:34
11    been the date that the document was sort of pulled  11:58:36
12    out of record because that looks like a             11:58:38
13    contemporary date and this is not.                  11:58:44
14         Q.  Right.  So the date on the front page      11:58:46
15    just happens to be the date it was printed out.     11:58:47
16         A.  Right.  This probably would have been      11:58:50
17    from first quarter 2009.                            11:58:52
18         Q.  And going back to page 11, that            11:58:54
19    paragraph we were looking at, I'm going to          11:58:57
20    continue reading.  He wrote, quote, "The bot would  11:59:00
21    gather links and automatically send them via the    11:59:04
22    web interface to the content recognition system.    11:59:09
23    The vendor's system cross references the content    11:59:12
24    in the links with the fingerprint database.  If     11:59:15
25    the content matches an item in the database the     11:59:19
```

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Q. BY MR. THOMPSON: It would reduce the | 13:48:49 |
| 2 | number of false positives? | 13:48:50 |
| 3 | A. Well, that -- that also assumes that | 13:48:51 |
| 4 | you're going to have humans, you know, looking at | 13:48:52 |
| 5 | this and that they're not going to make mistakes | 13:48:54 |
| 6 | either, and that scale I'm not sure that that's | 13:48:57 |
| 7 | [something I can -- I would reliably say. | 13:48:59 |
| 8 | Q. Does Warner trust robots more than | 13:49:03 |
| 9 | humans for this review? | 13:49:08 |
| 10 | MR. FABRIZIO: Objection. Overbroad. | 13:49:09 |
| 11 | THE WITNESS: Right. And I also testified, | 13:49:10 |
| 12 | I think extensively this morning about some of the | 13:49:11 |
| 13 | human review involved in this process. So the | 13:49:14 |
| 14 | process is not simply left to robots. | 13:49:15 |
| 15 | Q. BY MR. THOMPSON: Going back a page on | 13:49:28 |
| 16 | Exhibit 11, August 15, 11:15, Mr. Sommer wrote to | 13:49:30 |
| 17 | Brett Boivin, "On average it looks like we have | 13:49:39 |
| 18 | almost 10 percent, exclamation mark, false | 13:49:43 |
| 19 | positives so far since we did the auditing. This | 13:49:46 |
| 20 | is way too much." Do you agree that 10 percent | 13:49:50 |
| 21 | false positives is way too much? | 13:49:53 |
| 22 | MR. FABRIZIO: Objection. Lacks | 13:49:55 |
| 23 | foundation. Overbroad. | 13:49:55 |
| 24 | THE WITNESS: First, I'd point out by | 13:49:59 |
| 25 | looking at this that he's not -- it's not | 13:50:01 |

HIGHLY CONFIDENTIAL

```
 1   10 percent.  He's -- he's not counting these          13:50:03
 2   correctly.  Second, I would say on any given          13:50:05
 3   day -- you can't look at whether a system is a        13:50:09
 4   reliable system based on something that's             13:50:16
 5   happening in a -- with a snapshot on any given        13:50:18
 6   day.                                                  13:50:19
 7        The point is do we have a system that can        13:50:20
 8   take this information that's discovered and use it    13:50:22
 9   in a way that makes sure that these -- these kinds    13:50:25
10   of errors don't happen again.  And that's the kind    13:50:28
11   of system we have.                                    13:50:31
12        Q.  BY MR. THOMPSON:  Does Warner consider       13:50:37
13   10 percent false positives to be way too high in      13:50:39
14   the context of the audit as it was being conducted    13:50:42
15   on August 15, 2011?                                   13:50:46
16        MR. FABRIZIO:  Objection.  Lacks foundation      13:50:50
17   and overbroad.                                        13:50:51
18        THE WITNESS:  I -- as with any false             13:50:52
19   positives I would continue to work to reduce that     13:50:54
20   number.                                               13:50:56
21        Q.  BY MR. THOMPSON:  Can you answer the         13:50:57
22   question as to whether 10 percent is too high?        13:50:58
23        MR. FABRIZIO:  Same objections.                  13:51:00
24        THE WITNESS:  The -- the hard time I'm --        13:51:01
25   I'm having with this question is that, you know,      13:51:02
```

142

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | search terms were, that's all done by people. | 14:57:31 |
| 2 | Q. Right. But no human being ever looked | 14:57:34 |
| 3 | at the Warez posting listing all these links? | 14:57:37 |
| 4 | MR. FABRIZIO: Objection to form. Vague | 14:57:42 |
| 5 | and ambiguous as to time. | 14:57:44 |
| 6 | Q. BY MR. THOMPSON: Before Warner asked | 14:57:47 |
| 7 | for these files to be deleted? | 14:57:48 |
| 8 | MR. FABRIZIO: Same objection. | 14:57:51 |
| 9 | THE WITNESS: That's correct. | 14:57:52 |
| 10 | Q. BY MR. THOMPSON: And after the fact | 14:57:53 |
| 11 | since we made the allegations and included these | 14:57:55 |
| 12 | on Exhibit D, someone from Warner, perhaps from | 14:57:58 |
| 13 | Mr. Fabrizio's office, did further research and | 14:58:01 |
| 14 | came up with this conclusion, that's listed on | 14:58:04 |
| 15 | Exhibit 14; correct? | 14:58:07 |
| 16 | MR. FABRIZIO: Objection. Lacks | 14:58:08 |
| 17 | foundation. | 14:58:09 |
| 18 | THE WITNESS: Yes. | 14:58:09 |
| 19 | Q. BY MR. THOMPSON: Who did that by the | 14:58:10 |
| 20 | way? | 14:58:11 |
| 21 | A. Brett Boivin. | 14:58:12 |
| 22 | Q. One of the people in your department? | 14:58:14 |
| 23 | A. Yes. | 14:58:16 |
| 24 | Q. Do you know if Mr. Boivin actually | 14:58:21 |
| 25 | looked at the page, the post page? | 14:58:22 |

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | functionality for things like this," end quote. | 15:12:44 |
| 2 | What is "global exclude functionality"? | 15:12:47 |
| 3 | A. That is where for all titles being | 15:12:51 |
| 4 | scanned there's a certain word that is an exclude | 15:12:59 |
| 5 | word for every one of them. So it wouldn't be | 15:13:03 |
| 6 | title-specific. It would be global. | 15:13:06 |
| 7 | Q. Is there currently certain terms that | 15:13:10 |
| 8 | are globally excluded? | 15:13:13 |
| 9 | A. There are. | 15:13:16 |
| 10 | Q. What are they? | 15:13:16 |
| 11 | MR. FABRIZIO: Objection. Overbroad. | 15:13:18 |
| 12 | THE WITNESS: JDownloader is one of them. | 15:13:23 |
| 13 | Q. BY MR. THOMPSON: Let me interrupt you | 15:13:27 |
| 14 | there. Did that take place sometime after the | 15:13:28 |
| 15 | date of Exhibit 15, August 4? | 15:13:29 |
| 16 | A. No. Before. But -- before. | 15:13:33 |
| 17 | Q. Now, I'm confused. I thought that was | 15:13:38 |
| 18 | Mr. Boivin's recommendation in August 4? | 15:13:40 |
| 19 | A. It's the way that the exclude words are | 15:13:45 |
| 20 | able to be implemented -- the global exclude words | 15:13:48 |
| 21 | in the current configuration of Kapow robots that | 15:13:52 |
| 22 | we have meant that it is rolled out over time. So | 15:13:56 |
| 23 | I can elaborate if that will help you. | 15:14:02 |
| 24 | Q. Yes. | 15:14:05 |
| 25 | A. In order to do a global exclude now it | 15:14:06 |

HIGHLY CONFIDENTIAL

```
 1        Q.  Does that appear that, in fact, Warner      16:32:07
 2   found or created a robot that was searching the      16:32:09
 3   Taringa site?                                        16:32:11
 4        MR. FABRIZIO:  Objection to form.               16:32:13
 5        THE WITNESS:  Well, at least Taringa.net,       16:32:13
 6   which is the -- the site here.                       16:32:17
 7        Q.  BY MR. THOMPSON:  And the conclusion        16:32:26
 8   here is really the same as the other conclusions     16:32:27
 9   regarding posting on link sites except there's a     16:32:31
10   reference to the Spanish version of Little Red       16:32:36
11   Riding Hood?                                         16:32:43
12        A.  No.                                         16:32:44
13        Q.  No?  Can you explain that?                  16:32:45
14        A.  It looks like this was -- the URL in        16:32:47
15   this had the word JDownloader in it, and so the      16:32:50
16   conclusion was that file was probably taken down     16:32:54
17   because JDownloader was posted with the Spanish      16:32:56
18   version of Little Red Riding Hood -- what's          16:32:59
19   described as a DVD rip for the Spanish version of    16:33:03
20   our film in an effort to help people download the    16:33:08
21   pirated version more rapidly.                        16:33:13
22        Q.  And you see the JDownloader back on the     16:33:26
23   other exhibit, Exhibit 13?                           16:33:28
24        A.  Yes.                                        16:33:33
25        Q.  That's because of the URL -- that's         16:33:33
```

HIGHLY CONFIDENTIAL

```
 1   view it facilitates infringement, but the fact is     16:46:27
 2   that Warner had no right to take down the             16:46:30
 3   JDownloader files; is that right?                     16:46:33
 4          MR. FABRIZIO:  Objection to form.  Asked       16:46:36
 5   and answered and now calls for a legal conclusion.    16:46:36
 6          Q.  BY MR. THOMPSON:  Is that correct?         16:46:39
 7          A.  I'm not sure I would necessarily go to     16:46:39
 8   that place with the conclusion.                       16:46:42
 9          Q.  Well, speaking on behalf of Warner,        16:46:44
10   does Warner contend it had the legal right to take    16:46:46
11   down the JDownloader file?                            16:46:49
12          MR. FABRIZIO:  Objection to form.  Calls       16:46:52
13   for a legal conclusion.                               16:46:54
14          THE WITNESS:  I would say that the -- that     16:46:54
15   wasn't the intention of the -- we didn't intend to    16:47:00
16   take down JDownloader, but I'm not prepared to say    16:47:04
17   that we would have no legal right to take down        16:47:06
18   JDownloader in some circumstances at least.           16:47:10
19          Q.  BY MR. THOMPSON:  What would give          16:47:12
20   Warner the right to take down the JDownloader        16:47:13
21   files reflected in rows 89 and 90 on Exhibit 13?      16:47:14
22          MR. FABRIZIO:  Objection to form.  Calls       16:47:22
23   for a legal conclusion.                               16:47:23
24          THE WITNESS:  I have not fully thought         16:47:24
25   about this or investigated all legal arguments        16:47:27
```

A505CAB	NOVEMBER 2, 2011

LETTER TO DEPOSITION OFFICER/ERRATA SHEET

DEPOSITION OF:	DAVID KAPLAN

DATE OF DEPOSITION:	OCTOBER 12, 2011

CASE:	DISNEY ENTERPRISES, INC., ET AL. VS. HOTFILE CORP., ET AL.

The following are the corrections which I have made to my transcript:

| PAGE# | LINE# | CORRECTION | REASON FOR CORRECTION |
|---|---|---|---|
| *see attached* | | | |

Please sign your name and date it on the below line. As needed, use additional paper to note corrections, dating and signing each page. If you have no corrections, please write the word "None" above and sign, date, and return this page.

EXECUTED this __2nd__ day of __December__, 20 __11__, at __Burbank__, __California__,
(City)          (State)

_____
(Signature)

Page 242 lines 7-8. The word "[checks" should be deleted. "without [in" should be "with"

Page 249 line 12: "[infective" on line" should be "effective online"

Page 253 Line 15: "They've cursed me" should be "It occurs to me"

Asad Kazi's name is also misspelled throughout as "Adad."

On pages 62, 64, 66, 106, and 169 of my deposition, I testified that Warner had not been able to locate any record of having sent to Hotfile takedown notices relating to works owned by Electronic Arts. At the time of my deposition, Warner had not located any such records after a diligent search of its archive database of past takedown notices. However, Warner has subsequently discovered that its "live" database of takedown notices still contained such records, which were apparently not copied into the archive database as expected. Based on a review of its "live" database, Warner has been able to locate records confirming that it sent notices on Electronic Arts titles to Hotfile in early February 2011. These have been provided to Hotfile in discovery.

On page 145 of my deposition, I was asked on what date Warner shut down the Kapow system in order to review the results of past takedown notices and investigate possible false positives. I was able to recall at my deposition that it could have been shut down a little before August 15, 2011, but was not able to recall the specific date. I have subsequently confirmed that the date on which the system was shut down in order to conduct the review to which I testified was Friday, August 12, 2011.

On page 239-240 of my deposition, I testified that LeakID had been unable to locate certain information regarding the "post" page on which certain links were located. Subsequent to my deposition, I learned that LeakID was able to locate some information regarding post pages.

*[signature]*
12/2/2011

A5OSCAD                    HIGHLY CONFIDENTIAL

1  STATE OF CALIFORNIA      )
                            )   ss.
2  COUNTY OF LOS ANGELES    )

3

4       I, DAVID KAPLAN, hereby certify under

5  penalty of perjury under the laws of the State of

6  California that the foregoing is true and correct.

7       Executed this _2nd_ day of

8  _December_, 2011, at

9  _Burbank_, California.

10

11

12  _____
    DAVID KAPLAN

HIGHLY CONFIDENTIAL

```
 1            REPORTER'S CERTIFICATE
 2
 3   I, JEANINE CURCIONE, C.S.R. NO. 10223, RPR, in and
 4   for the State of California, do hereby certify:
 5          That prior to being examined, the witness
 6   named in the foregoing deposition was by me duly
 7   sworn to testify the truth, the whole truth and
 8   nothing but the truth.
 9          That said deposition was taken down by me
10   in shorthand at the time and place therein named,
11   and thereafter reduced to typewriting under my
12   direction, and the same is a true, correct and
13   complete transcript of said proceedings.
14           That the witness, before examination, was
15   by me duly sworn to testify the truth, the whole
16   truth, and nothing but the truth, and that the
17   witness reserved the right of signature;
18          I further certify that I am not interested
19   in the event of the action.
20          Witness my hand this 26th day of October,
21   2011.
22
23                   _____
24                   Certified Shorthand
                     Reporter for the
25                   State of California
```