# EXHIBIT S

Highly Confidential

```
                                                              Page 1
 1              UNITED STATES DISTRICT COURT
 2               SOUTHERN DISTRICT OF FLORIDA
 3          CASE NO. 11-20427-WILLIAMS/TURNOFF
 4   DISNEY ENTERPRISES, INC.,     )
     TWENTIETH CENTURY             )
 5   FOX FILM CORPORATION,         )
     UNIVERSAL CITY STUDIOS        )
 6   PRODUCTIONS LLLP,             )
     COLUMBIA PICTURES             )
 7   INDUSTRIES, INC., and         )
     WARNER BROS.                  )
 8   ENTERTAINMENT, INC.,          )
                                   )
 9             Plaintiffs,         )
                                   )
10        v.                       )
                                   )
11   HOTFILE CORP., ANTON          )
     TITOV, and DOES 1-10          )
12                                 )
     Defendants.                   )
13   _____)
14
              H I G H L Y   C O N F I D E N T I A L
15
16     (Pursuant to protective order, the following
          transcript has been designated highly
17                    confidential)
18        DEPOSITION OF MATTHEW LYNDE, Ph.D.
19             SAN FRANCISCO, CALIFORNIA
20             FRIDAY, DECEMBER 16, 2011
21
22
23
24   REPORTED BY: Linda Vaccarezza, CSR No. 10201
25   JOB NO.: 44313
```

TSG Reporting - Worldwide   (877) 702-9580

Highly Confidential

Page 2

DECEMBER 16, 2011

10:07 A.M.

Deposition of MATTHEW LYNDE, Ph.D., held at the offices of Farella, Braun & Martel, 235 Montgomery Street, San Francisco, California, before Linda Vaccarezza, a Registered Professional Reporter and Certified Shorthand Reporter of the State of California.

TSG Reporting - Worldwide (877) 702-9580

Highly Confidential

Page 3

```
 1        A P P E A R A N C E S:
 2    ATTORNEY FOR THE PLAINTIFFS:
          JENNER & BLOCK
 3        BY:  STEVEN B. FABRIZIO, ESQ.
          1099 New York Avenue, NW
 4        Washington, DC 20001
 5
 6
 7    ATTORNEY FOR THE DEFENDANTS
       HOTFILE CORP., AND ANTON TITOV:
 8        FARELLA, BRAUN & MARTEL
          BY:  RODERICK M. THOMPSON, ESQ.
 9        235 Montgomery Street
          San Francisco, California 94104
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Highly Confidential

Page 203

1    Q.   I was comforted to see that in
2  your CV you have a statistical background?
3    A.   I actually did do most of the
4  Ph.D. sequence in statistics at Berkeley, as well
5  as economics.
6    Q.   Well, notwithstanding that it was
7  Berkeley, I'm assuming that you learned something
8  about statistics?
9         MR. THOMPSON:  Be careful now.
10        THE WITNESS:  Sir, it is the
11        premiere statistics department in the
12        world.
13   Q.   I have no doubt.  I have no
14  doubt.  I see you went to undergrad there as
15  well.
16   A.   Yes.
17   Q.   I'm a two-time Georgetown person,
18  so I would not stand for somebody doing what I
19  just did.
20   A.   I wouldn't talk about basketball.
21   Q.   You would have no basis to talk
22  about basketball, sir, but we digress.
23        As somebody with a statistics
24  background, is Exhibit 5 the sort of document
25  that you would rely upon in concluding that there

Highly Confidential

Page 204

1    was in fact a ten percent false positive rate
2    among Warner SRA notices?
3         A.    No.
4               MR. THOMPSON:  Objection.  Vague.
5               THE WITNESS:  No.
6         Q.    Why not?
7         A.    Well, statistical evidence relies
8    on sufficiency of sampling and assurance about
9    its representativeness.  There's a volume of
10   criteria which would form the basis of a sound
11   statistical analysis.
12              This is simply a reference to
13   researchers at Warner who were looking at an
14   apparent false positive rate.  And as I
15   indicated, I was asked to assume that the false
16   positives might be as much as ten percent.
17        Q.    If one of your young colleagues
18   came to you and said, I've concluded that there's
19   a ten percent false positive rate among the
20   Warner SRA notices, and here is my evidence of
21   it, and the only evidence your young associates
22   gave you was Lynde Exhibit 5, would you accept
23   that?
24              MR. THOMPSON:  Objection.
25        Incomplete hypothetical.

Highly Confidential

Page 205

1    THE WITNESS: To the extent I
2    understand your hypothetical question,
3    no. I would not. And as I indicated,
4    much more would go to a statistical
5    analysis.
6    Q. From a statistical analysis
7    perspective, do you believe it would be
8    irresponsible to form a conclusion about the
9    total false positive rate among Warner SRA
10   notices based exclusively on Exhibit 5?
11   MR. THOMPSON: Objection.
12   Incomplete hypothetical. And vague.
13   THE WITNESS: Well, I'm not sure I
14   understand the context of the question.
15   If an expert were going to
16   offer on opinion about a false positive
17   rate, the expert would go to the raw data
18   and draw samples and form his own
19   conclusion.
20   Q. And if an expert attempted to form
21   an opinion about the total false positive rate
22   based exclusively on Lynde Exhibit 5, would you
23   believe that to be an irresponsible conclusion?
24   MR. THOMPSON: Objection.
25   Incomplete hypothetical.

Highly Confidential

Page 219

1    tells you that with all finite
2    distributions with the sample size of 30,
3    you would have the beginnings of
4    distributions that would approximate
5    normal.
6        Q.   All the statisticians that I ever
7    pay require like, thousands?
8        A.   That's probably because there's
9    underlying variance which is high, and a degree
10   of precision required which is large.
11       Q.   Fair enough.  Is it safe to say
12   that in your professional judgment as a
13   statistician, Lynde Exhibit 5 is an unreliable
14   source for a conclusion that the Warner SRA false
15   positive rate is ten percent?
16           MR. THOMPSON:  Objection.  Asked
17       and answered.  Calls for speculation.
18       Lacks foundation.
19           THE WITNESS:  I think I indicated
20       before that this is not a statistical
21       evidence and would not form the basis of
22       an expert statistical opinion about a
23       false positive rate.
24       Q.   Well, my question to you, sir,
25   is:  Would you consider this reliable in any way

Highly Confidential

Page 227

1    not aware of evidence that contradicts
2    what I was asked to assume, which is that
3    the false positive rate might be as much
4    as ten percent.  But I am aware of this
5    evidence that Warner itself internally
6    has debated as to whether their false
7    positive rate might be as high as ten
8    percent.
9              That's simply a level of which
10   I've considered these documents.
11       Q.   Well, you say you're not aware of
12   any evidence to the contrary.
13             In Lynde Exhibit 6, isn't the same
14   Mr. Hughes, doesn't he refer to the fact that
15   there were no false positives for certain titles
16   they tested?
17       A.   What I have referred to was that
18   the false positive rate might be as high as ten
19   percent.
20       Q.   So given that level of -- given
21   that use of a document, any document that had the
22   percentage ten percent in it, no matter how
23   unreliable on its face, would be at least in some
24   way corroborative of the -- of a view that it
25   could be as high as ten percent?

Highly Confidential

Page 228

1    A.    Well, I don't know about that, but
2  I do think it's interesting that Warner
3  internally is considering false positive rates
4  and at times is seeing indications that they
5  might be as high as ten percent.
6          But I do not see this as evidence
7  in and of itself as to exactly what the false
8  positive rate actually is.
9    Q.    Did your counsel provide you with
10 internal Warner documents where Warner was
11 calculating false positive rates of less than one
12 percent?
13   A.    I can't remember all the documents
14 that were provided to me, but offhand I can't
15 think of one.
16         Putting aside these documents
17 themselves versus a degree of debate as to what
18 the level of rate is, which as I said is normal.
19   Q.    Sure.  I'm actually talking about
20 other documents, besides for these, where as part
21 of an auditing processing, Warner calculated a
22 false positive rate of less than one percent.
23         Did you see those documents?
24   A.    I may have done -- I don't recall
25 as I sit here.  I was provided with a lot of

1     MR. FABRIZIO: Okay. I'm good.

2  Thank you, Dr. Lynde.

3          (Time noted: 5:59 p.m.)

         _____
              MATTHEW LYNDE

                                    See Below
Subscribed and sworn to before me

This  30th day of January , 20 12.

_____

State of California
County of San Francisco
Subscribed and sworn to (or affirmed) before me
on this 30th day of January, 2012
by Matthew Lynde,
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.
Signature _____ (Seal)

MARK MCQUILLEN
COMM. #1793325
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Mar. 10, 2012

Errata to the Deposition of Matthew R. Lynde
December 16, 2011
*Disney Enterprises, Inc. et al. v. Hotfile Corp., et al.*
*Hotfile Corp., et al. v. Disney Enterprises, Inc. et al.*

| Page | Line | Now reads | Should read | Reason |
|---|---|---|---|---|
| 9 | 13 | "didn't" | "don't" | Misspoke |
| 42 | 14 | "affect" | "effect" | Transcribing error |
| 52 | 9-10 | "up loader" | "uploader" | Transcribing error |
| 75 | 3 | "I result" | "results" | Misspoke |
| 84 | 9 | "up loaders" | "uploaders" | Transcribing error |
| 118 | 14 | "prescription" | "subscription" | Misspoke |
| 126 | 10 | "focused in" | "focused on" | Transcribing error |
| 150 | 4 | "I was" | "I" | Misspoke |
| 157 | 25 | "basis is" | "basis" | Transcribing error |
| 162 | 17 | "have" | "have;" | Transcribing error |
| 178 | 23 | "an" | "a" | Transcribing error |
| 179 | 18 | "or" | "where" | Transcribing error |
| 185 | 15 | "MegaDownload" | "Megaupload" | Misspoke |
| 212 | 22 | "over" | "of" | Transcribing error |
| 212 | 22 | "and" | "that" | Transcribing error |
| 213 | 10 | "it's bought and" | "its robot" | Transcribing error |
| 218 | 1 | "variants" | "variance" | Transcribing error |
| 218 | 22 | "is you" | "is that you" | Transcribing error |
| 245 | 3 | "ELLS" | "Yale" | Transcribing error |
| 262 | 18 | "provided" | "have been provided" | Transcribing error |
| 276 | 19 | "Tolav" | "Kolev" | Transcribing error |

1/30/12
Date

Matthew R. Lynde

Notary Public

State of California
County of San Francisco
Subscribed and sworn to (or affirmed) before me
on this 30 day of January, 2012
by Matthew R. Lynde
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.
Signature _____ (Seal)

MARK MCQUILLEN
COMM. #1793325
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Mar. 10, 2012

Highly Confidential

Page 292

1          C E R T I F I C A T E

2     STATE OF CALIFORNIA      )

3                              )

4     COUNTY OF SAN FRANCISCO  )

5         I, LINDA VACCAREZZA, a Certified

6     Shorthand Reporter for the State of

7     California, do hereby certify:

8         That MATTHEW LYNDE, the witness

9     whose deposition is hereinbefore set

10    forth, was duly sworn by me and that such

11    deposition is a true record of the

12    testimony given by such witness.

13        I further certify that I am not

14    related to any of the parties to this

15    action by blood or marriage; and that I

16    am in no way interested in the outcome of

17    this matter.

18        IN WITNESS WHEREOF, I have hereunto

19    set my hand this 29th day of December

20    2011.

21

22    _____

23    LINDA VACCAREZZA, CSR. NO. 10201

24

25