# EXHIBIT A

# FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

     *Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

     *Defendants.*

_____/

HOTFILE CORP.,

     *Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

     *Counter-Defendant.*

_____/

### DECLARATION OF JANEL THAMKUL AND EXHIBITS THERETO, IN SUPPORT OF DEFENDANTS' REPLY TO HOTFILE'S MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER THE DMCA'S SAFE HARBOR AND ANTON TITOV'S REPLY IN SUPPORT OF TITOV'S MOTION FOR SUMMARY JUDGMENT

I, Janel Thamkul, declare as follows:

**FILED UNDER SEAL**                          CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

1.      I am an attorney at Farella Braun + Martel LLP, counsel for defendant Hotfile Corporation and Anton Titov. I have personal knowledge of the matters stated herein and, if called and sworn as a witness, I could and would competently testify to the facts set forth herein.

2.      Attached hereto as Exhibit 1 is a true and correct copy of Principles for User Generated Content Services. This document is Exhibit 18 to the deposition of Vicki Solmon, taken December 23, 2011 in the above-captioned case.

3.      Attached hereto as Exhibit 2 is a true and correct copy of excerpts from the deposition of Vicki Solmon, taken December 23, 2011 in the above-captioned case.

4.      Attached hereto as Exhibit 3 is a true and correct copy of Plaintiffs' Third Set of Requests for Production, dated June 14, 2011.

5.      Attached hereto as Exhibit 4 is a true and correct copy of emails between Tony Schoenberg and Duane Pozza, dated January 16-31, 2012.

6.      Attached hereto as Exhibit 5 is a true and correct copy of emails between Luke Platzer and Rod Thompson, dated February 3-7, 2012.

7.      Attached hereto as Exhibit 6 is a true and correct copy of excerpts from the deposition of Anton Titov, taken December 6-7, 2011 in the above-captioned case.

8.      Attached hereto as Exhibit 7 is a true and correct copy of Plaintiffs' Third Supplemental Responses and Objections to Hotfile's Interrogatory No. 1, with cited portion underlined, dated October 11, 2011.

9.      Attached hereto as Exhibit 8 is a true and correct copy of Defendants' Initial Disclosures, dated May 2, 2011.

10.     Attached hereto as Exhibit 9 is a true and correct copy of excerpts from Defendants' Responses to Plaintiffs' First Set of Interrogatories, dated May 5, 2011.

26501\2991147.1

**FILED UNDER SEAL**                     CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

11.     Attached hereto as Exhibit 10 is a true and correct copy of an email between

Steven B. Fabrizio and Andrew Leibnitz, et al., dated June 5, 2011.

12.     A search of collected deposition transcripts, including that of Yangbin Wang,

CEO of Vobile, Inc., as well as of all parties' experts, resulted in 599 hits.



13.     I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed on this __th day of March 2012, at San Francisco, California.


_____

Janel Thamkul

**FILED UNDER SEAL**                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2012, a true and correct copy of the foregoing document, was filed conventionally and served on all counsel of record identified below via e-mail and by Federal Express.

Karen L. Stetson, Esq.
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Telephone: 818.935.5812

By:_____
      Janet T. Munn

4

26501\2991147.1

FILED UNDER SEAL                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

11.    Attached hereto as Exhibit 10 is a true and correct copy of an email between

Steven B. Fabrizio and Andrew Leibnitz, et al., dated June 5, 2011.

12.    A search of collected deposition transcripts, including that of Yangbin Wang,

CEO of Vobile, Inc., as well as of all parties' experts, resulted in 599 hits.



13.    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed on this 17th day of March 2012, at San Francisco, California.

Janel Thamkul

3

# EXHIBIT 1

http://ugcprinciples.com/

# Principles for User Generated Content Services
## Foster Innovation. Encourage Creativity. Thwart Infringement.

EXHIBIT 18
For Identification
Date: LORI SCINTA, CSR #4311
Witness: Solmon 2 12-23-11

**Related Releases**

• Youku Joins Broad Coalition in Support of UGC Principles

• sevenload Protects Professional Content Partners and User Generated Video

• Sony Pictures Entertainment and Crackle Join Pioneering User-Generated Content Coalition

• Internet and Media Industry Leaders Unveil Principles to Foster Online Innovation While Protecting Copyrights

- - - - - - - - - - - - - - -

**Translated Principles**

• Chinese

- - - - - - - - - - - - - - -

The following companies support these principles:


CBS CORPORATION


CRACKLE


Dailymotion

Disney

FOX

Microsoft

myspace.com
a place for friends

NBC UNIVERSAL




sevenload


SONY PICTURES

Leading commercial copyright owners ("Copyright Owners") and services providing user-uploaded and user-generated audio and video content ("UGC Services") have collaborated to establish these Principles to foster an online environment that promotes the promises and benefits of UGC Services and protects the rights of Copyright Owners. In this context, UGC Services are services such as Soapbox on MSN Video, MySpace, Dailymotion and Veoh.com, and not other technologies such as browsers, applets, email, or search services. While we may differ in our interpretation of relevant laws, we do not mean to resolve those differences in these Principles, which are not intended to be and should not be construed as a concession or waiver with respect to any legal or policy position or as creating any legally binding rights or obligations. We recognize that no system for deterring infringement is or will be perfect. But, given the development of new content identification and filtering technologies, we are united in the belief that the Principles set out below, taken as a whole, strike a balance that, on a going-forward basis, will result in a more robust, content-rich online experience for all.

In coming together around these Principles, Copyright Owners and UGC Services recognize that they share several important objectives: (1) the elimination of infringing content on UGC Services, (2) the encouragement of uploads of wholly original and authorized user-generated audio and video content, (3) the accommodation of fair use of copyrighted content on UGC Services, and (4) the protection of legitimate interests of user privacy. We believe that adhering to these Principles will help UGC Services and Copyright Owners achieve those objectives.

1.  UGC Services should include in relevant and conspicuous places on their services information that promotes respect for intellectual property rights and discourages users from uploading infringing content.

2.  During the upload process, UGC Services should prominently inform users that they may not upload infringing content and that, by uploading content, they affirm that such uploading complies with the UGC Service's terms of use. The terms of use for UGC Services should prohibit infringing uploads.

3.  UGC Services should use effective content identification technology ("Identification Technology") with the goal of eliminating from their services all infringing user-uploaded audio and video content for which Copyright Owners have provided Reference Material (as described below). To that end and to the extent they have not already done so, by the end of 2007, UGC Services should fully implement commercially reasonable Identification Technology that is highly effective, in relation to other technologies commercially available at the time of implementation, in achieving the goal of eliminating infringing content. UGC Services should enhance or update the Identification Technology as commercially reasonable technology that makes a meaningful difference in achieving the goal becomes available.

User Generated Content Principles                                    http://ugcprinciples.com/

a. If a Copyright Owner has provided: (1) the reference data for content required to establish a match with user-uploaded content, (2) instructions regarding how matches should be treated, and (3) representations made in good faith that it possesses the appropriate rights regarding the content (collectively, "Reference Material"), then the UGC Service should apply the Identification Technology to that content to implement the Filtering Process described below. UGC Services should ensure that reasonable specifications, as well as any tools and/or technical support, for the delivery of Reference Material are made available to Copyright Owners. If a Copyright Owner does not include in the Reference Material instructions regarding how matches should be treated, the UGC Service should block content that matches the reference data.

b. The Identification Technology should use Reference Material to identify user-uploaded audio and video content that matches the reference data and should permit Copyright Owners to indicate how matches should be treated.

c. If the Copyright Owner indicates in the applicable Reference Material that it wishes to block user-uploaded content that matches the reference data, the UGC Service should use the Identification Technology to block such matching content before that content would otherwise be made available on its service ("Filtering Process"). The Copyright Owner may indicate in the applicable Reference Material that it wishes to exercise an alternative to blocking (such as allowing the content to be uploaded, licensing use of the content or other options), in which case, the UGC Service may follow those instructions or block the content, in its discretion.

d. Copyright Owners and UGC Services should cooperate to ensure that the Identification Technology is implemented in a manner that effectively balances legitimate interests in (1) blocking infringing user-uploaded content, (2) allowing wholly original and authorized uploads, and (3) accommodating fair use.

e. UGC Services should use the Identification Technology to block user-uploaded content that matches Reference Material regardless of whether the UGC Service has any licensing or other business relationship with the Copyright Owners who have provided such Reference Material (except that UGC Services may require that Copyright Owners enter into agreements with respect to the specifications for delivery of Reference Material that are commercially reasonable and that facilitate the provision of Reference Material by Copyright Owners and promote the goal of the elimination of infringing content). If a Copyright Owner authorizes specific users to upload content that would otherwise match Reference Material submitted by the Copyright Owner, the Copyright Owner should provide to the UGC Service a list of such users (a so-called white list).

f. UGC Services may, at their option, utilize manual (human) review of all user-uploaded audio and video content in lieu of, or in addition to, use of Identification Technology, if feasible and if such review is as effective as Identification Technology in achieving the goal of eliminating infringing content. If a UGC Service utilizes such manual review, it should do so without regard to whether it has any licensing or other business relationship with the Copyright Owners. Copyright Owners and UGC Services should cooperate to ensure that such manual review is implemented in a manner that effectively balances legitimate interests in (1) blocking infringing user-uploaded content, (2) allowing wholly original and authorized uploads, and (3) accommodating fair use.

g. Copyright Owners should provide Reference Material only with respect to content for which they believe in good faith that they have the appropriate rights to do so, and should update rights information as reasonable to keep it accurate. The inclusion of reference data for content by, or at the direction of, a Copyright

Owner shall be deemed to be an implicit representation made in good faith that such Copyright Owner has the appropriate rights regarding such content. Copyright Owners should reasonably cooperate with UGC Services to avoid unduly stressing the Services' Identification Technology during limited periods when Copyright Owners, collectively, may be providing an overwhelmingly high volume of Reference Material. UGC Services should reasonably cooperate with Copyright Owners to ensure that such Reference Material is utilized by the Identification Technology as soon as possible during such overload periods.

h. Promptly after implementation of Identification Technology, and at intervals that are reasonably timed throughout each year to achieve the goal of eliminating infringing content, UGC Services should use Identification Technology throughout their services to remove infringing content that was uploaded before Reference Material pertaining to such content was provided.

i. Copyright Owners and UGC Services should cooperate in developing reasonable procedures for promptly addressing conflicting claims with respect to Reference Material and user claims that content that was blocked by the Filtering Process was not infringing or was blocked in error.

4. UGC Services and Copyright Owners should work together to identify sites that are clearly dedicated to, and predominantly used for, the dissemination of infringing content or the facilitation of such dissemination. Upon determination by a UGC Service that a site is so dedicated and used, the UGC Service should remove or block the links to such sites. If the UGC Service is able to identify specific links that solely direct users to particular non-infringing content on such sites, the UGC Service may allow those links while blocking all other links.

5. UGC Services should provide commercially reasonable enhanced searching and identification means to Copyright Owners registered with a service in order: (a) to facilitate the ability of such Copyright Owners to locate infringing content in all areas of the UGC Service where user-uploaded audio or video content is accessible, except those areas where content is made accessible to only a small number of users (not relative to the total number of users of the UGC Service), and (b) to send notices of infringement regarding such content.

6. When sending notices and making claims of infringement, Copyright Owners should accommodate fair use.

7. Copyright Owners should provide to UGC Services URLs identifying online locations where content that is the subject of notices of infringement is found – but only to the extent the UGC Service exposes such URLs.

8. When UGC Services remove content pursuant to a notice of infringement, the UGC Service should (a) do so expeditiously, (b) take reasonable steps to notify the person who uploaded the content, and (c) promptly after receipt of an effective counter-notification provide a copy of the counter-notification to the person who provided the original notice, and, at its option, replace the content if authorized by applicable law or agreement with the Copyright Owner.

9. When infringing content is removed by UGC Services in response to a notice from a Copyright Owner, the UGC Service should use reasonable efforts to notify the Copyright Owner of the removal, and should permit the Copyright Owner to provide, or request the UGC Service to provide on its behalf, reference data for such content to be used by the Identification Technology.

10. Consistent with applicable laws, including those directed to user privacy, UGC Services should retain for at least 60 days: (a) information related to user uploads of audio and video content to their services, including Internet Protocol addresses and time and date information for uploaded content; and (b) user-uploaded content that has been on their services but has been subsequently removed following a notice of infringement. UGC Services should provide that information and content to Copyright Owners as required by any valid process and consistent with applicable law.

11. UGC Services should use reasonable efforts to track infringing uploads of copyrighted content by the same user and should use such information in the reasonable implementation of a repeat infringer termination policy. UGC Services should use reasonable efforts to prevent a terminated user from uploading audio and/or video content following termination, such as blocking re-use of verified email addresses.

12. In engaging in the activities set forth in these Principles, UGC Services and Copyright Owners should follow these Principles to the extent that doing so would not contravene the law of the applicable foreign jurisdiction.

13. Copyright Owners should not assert that adherence to these Principles, including efforts by UGC Services to locate or remove infringing content as provided by these Principles, or to replace content following receipt of an effective counter notification as provided in the Copyright Act, support disqualification from any limitation on direct or indirect liability relating to material online under the Copyright Act or substantively similar statutes of any applicable jurisdiction outside the United States.

14. If a UGC Service adheres to all of these Principles in good faith, the Copyright Owner should not assert a claim of copyright infringement against such UGC Service with respect to infringing user-uploaded content that might remain on the UGC Service despite such adherence to these Principles.

15. Copyright Owners and UGC Services should continue to cooperate with each other's reasonable efforts to create content-rich, infringement-free services. To that end, Copyright Owners and UGC Services should cooperate in the testing of new content identification technologies and should update these Principles as commercially reasonable, informed by advances in technology, the incorporation of new features, variations in patterns of infringing conduct, changes in users' online activities and other appropriate circumstances.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

↑ **Top**

# EXHIBIT 2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA


DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

       Plaintiffs,

                    CASE NO.
   vs.              11-20427-WILLIAMS-TURNOFF

HOTFILE CORP., ANTON TITOV,
and DOES 1-10,

       Defendants.

AND RELATED CROSS-ACTION.


HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF VICKI R. SOLMON, ESQUIRE

PURSUANT TO FEDERAL RULE 30(b)(6)

Los Angeles, California

Friday, December 23, 2011

Volume 2


Reported by:
LORI SCINTA, RPR
CSR No. 4811

Job No. 180162



877.955.3855

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF FLORIDA

3

4      DISNEY ENTERPRISES, INC.,
       TWENTIETH CENTURY FOX FILM
5      CORPORATION, UNIVERSAL CITY
       STUDIOS PRODUCTIONS LLLP,
6      COLUMBIA PICTURES INDUSTRIES,
       INC., and WARNER BROS.
7      ENTERTAINMENT INC.,

8              Plaintiffs,
                                CASE NO.
9          vs.                  11-20427-WILLIAMS-TURNOFF

10     HOTFILE CORP., ANTON TITOV,
       and DOES 1-10,
11
               Defendants.
12     _____
       AND RELATED CROSS-ACTION.
13     _____

14

15       HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

16            Videotaped deposition of VICKI R. SOLMON,

17     ESQUIRE, Volume 2, pursuant to Federal Rule 30(b)(6),

18     taken on behalf of Defendants and Counterclaimant

19     Hotfile Corp., at 633 West Fifth Street, Suite 3600,

20     Los Angeles, California, beginning at 2:49 P.M. and

21     ending at 5:21 P.M. on Friday, December 23, 2011, before

22     LORI SCINTA, RPR, Certified Shorthand Reporter No. 4811.

23

24

25



```
 1      APPEARANCES:

 2

 3      For Plaintiffs:

 4
            JENNER & BLOCK LLP
 5          BY:  DUANE C. POZZA (Telephonically present)
                 -- and --
 6               LUKE C. PLATZER
            Attorneys at Law
 7          1099 New York Avenue, NW, Suite 900
            Washington, D.C. 20001-4412
 8          202.639.6000
            Email:  dpozza@jenner.com
 9                  lplatzer@jenner.com

10

11      For Defendants and Counterclaimant Hotfile, Corp.:

12
            FARELLA BRAUN + MARTEL LLP
13          BY:  DEEPAK GUPTA (Telephonically present)
            Attorney at Law
14          235 Montgomery Street
            San Francisco, California 94104
15          415.954.4400
            Email:  dgupta@fbm.com

16

17
        Videographer:
18

19          VONYARN MASON
            SARNOFF COURT REPORTERS
20          20 Corporate Park, Suite 350
            Irvine, California 92606
21          877.955.3855

22

23

24

25
```

05:17  1          Oh, 11 is really important, that the site

05:17  2    should be able to track other -- use reasonable efforts

05:17  3    to track infringing uploads of copyrighted content by

05:17  4    the same user.  Okay?  And then have a repeat infringer

05:17  5    termination policy.

05:17  6          And it should use reasonable efforts to prevent

05:17  7    a terminated user from uploading infringing content

05:18  8    following termination by verifying, et cetera, the

05:18  9    verified email address.

05:18 10          Then, additionally, that --

05:18 11      Q   Ms. Solmon, it's okay.  You don't have to --

05:18 12      A   As far as counter notice, it -- it reflects

05:18 13    obviously DMCA with counter notice obligations and all

05:18 14    that.

05:18 15          So it's a matter that we have certain sites who

05:18 16    understand they want to work with us and prohibit

05:18 17    unauthorized postings.  And so they've agreed to sign

05:18 18    onto this.  And so the whole idea of this is to sort

05:18 19    of -- the sites and the copyright owners work together

05:18 20    and solve it because we don't want this stuff posted.

05:18 21      Q   Okay.  And I'd like to -- I'd like to bring it

05:19 22    to closure so just -- my last question is:  If Hotfile

05:19 23    were to abide by the UGC principles, then would Columbia

05:19 24    stand behind Point 14?

05:19 25      A   I'm sorry.  I put it away.  One moment.

05:19  1          MR. PLATZER:  Object to the form on that one.

05:19  2          THE WITNESS:  The idea of this one --

05:19  3          MR. PLATZER:  And, also, it's also an

05:19  4      incomplete hypothetical.

05:19  5          THE WITNESS:  Yes.  Because the point is you're

05:19  6      supposed to be a signatory to the -- to these

05:19  7      principles.

05:19  8          And part of the give and take is when a site

05:19  9      wants to work with us and become completely legal, then

05:19  10     it -- there's a certain give and take.  And if they meet

05:19  11     all the requirements and they are a signatory, then,

05:19  12     yes, we agree we're not going to sue them for copyright

05:19  13     infringement, as it states in 14, because we understand

05:20  14     the site is really trying to help us protect

05:20  15     unauthorized viewing.

05:20  16          THE REPORTER:  "Unauthorized" --

05:20  17          THE WITNESS:  -- postings.

05:20  18          MR. GUPTA:  Okay.  All right.  Thank you.

05:20  19     That's all I have today.  I really appreciate it.

05:20  20          Is there anything that we need to confer about,

05:20  21     Counsel, or should we -- should we conclude the

05:20  22     deposition and break for the holidays?

05:20  23          MR. POZZA:  I think this should also be marked

05:20  24     highly confidential subject to the protective order as

05:20  25     with the first one.



30(B)(6)  VICKI R. SOLMON, ESQUIRE, V. 2          12/23/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

1

2          I, the undersigned, a Certified Shorthand

3    Reporter of the State of California, do hereby certify:

4          That the foregoing proceedings were taken

5    before me at the time and place herein set forth; that

6    any witnesses in the foregoing proceedings, prior to

7    testifying, were duly sworn; that a record of the

8    proceedings was made by me using machine shorthand

9    which was thereafter transcribed under my direction;

10    that the foregoing transcript is a true record of the

11    testimony given.

12          Further, that if the foregoing pertains to

13    the original transcript of a deposition in a Federal

14    Case, before completion of the proceedings, review of

15    the transcript [X] was [ ] was not requested.

16          I further certify I am neither financially

17    interested in the action nor a relative or employee

18    of any attorney or party to this action.

19          IN WITNESS WHEREOF, I have this date

20    subscribed my name.

21

22    Dated: 12/30/2011

23

24    _____
      LORI SCINTA, RPR
25    CSR No. 4811



Errata Sheet
Deposition of Vicki Solmon
December 9, 2011 and December 23, 2011

| Location | Correction |
|---|---|
| **Day 1** | |
| 7:7 | change "Hotfield" to "Hotfile" |
| 17:15 | change "ERA services" to "ARA Services" |
| 21:15 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 21:17 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 21:20 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 21:21 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 22:19 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 24:14-15 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 24:16-17 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 31:11 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 31:14 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 32:2 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 35:18 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 47:21 | change "Michelle Huynh" to "Michelle Wang" |
| 47:22 | change "Huynh" to "Wang" |
| 58:25 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 71:1 | change "Sony Pictures Entertainment, Inc." to "Sony Pictures Entertainment Inc." |
| 81:10 | change "A-Plex" to "Aiplex" |
| 141:8 | change "compiled each to" to "compelled each to" |
| **Day 2** | |
| 231:16 | change "question" to "answer" |

1

2

3

4

5

6

7

8

9          I, VICKI R. SOLMON, ESQUIRE, do hereby declare

10     under penalty of perjury that I have read the foregoing

11     transcript; that I have made any corrections as appear

12     noted, in ink, initialed by me, or attached hereto; that

13     my testimony as contained herein, as corrected, is true

14     and correct.

15

16

17          EXECUTED this _1st_ day of _February_.

18     20 _12_, at _Los Angeles_, _Ca._.
                              (City)              (State)

19

20

21

22          _Vicki R. Solmon_
            VICKI R. SOLMON, ESQUIRE
23          Volume 2

24

25

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.

_____/

## PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Disney Enterprises, Inc.,

Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia

Pictures Industries, Inc., and Warner Bros. Entertainment Inc. (collectively, "Plaintiffs") request

that Hotfile Corp. and Anton Titov (collectively, "Defendants") produce for inspection and

copying, or cause to be copied, the documents described below.  Defendants shall make such

production within thirty (30) days after the service of these requests, at the offices of Jenner &

Block LLP, 1099 New York Avenue NW, Suite 900, Washington, D.C. 20001, c/o Duane C.

Pozza, in accordance with the Federal Rules of Civil Procedure, and in compliance with the

Definitions and Instructions set forth below.

## DEFINITIONS AND INSTRUCTIONS

1.      The words "you," "yours," "yourselves," and "Defendants" means Anton Titov and Hotfile Corp., and includes (i) any directors, officers, accountants, investigators, attorneys, employees, agents, representatives or other persons acting, authorized to act, or purporting to act, on behalf of Hotfile Corp. or Anton Titov; (ii) all of Hotfile Corp.'s affiliates, divisions, units, predecessors-in-interest, successors-in-interest, subsidiaries, parent corporations, and assigns; (iii) any other person or entity otherwise subject to Hotfile Corp.'s or Anton Titov's control, who controls Hotfile Corp., or is under common control with Hotfile Corp.

2.      The terms "Hotfile" and "Hotfile Website" mean the website accessible at www.hotfile.com and hotfile.com and encompasses all servers, software, and databases operated as part of the website.

3.      The term "Hotfile Entity" means Hotfile Corp., Hotfile, S.A., and Hotfile, Ltd., as well as any entity involved with or that you claim is involved with the operation of the Hotfile Website, as well as any entity controlled, operated, affiliated with, or owned by any Defendant, in whole or in part, that performs or has performed any services related to the Hotfile Website, and shall further include principals, executives, officers, directors, employees, agents, representatives, or shareholders of such entity.

4.      The term "Lemuria" means Lemuria Communications Inc. ("Lemuria"), including any principals, executives, officers, directors, employees, agents, representatives, or shareholders of Lemuria, all of Lemuria's affiliates, divisions, units, predecessors-in-interest, successors-in-interest, subsidiaries, parent corporations, and assigns, and any other person otherwise understood by you to be subject to Lemuria's control, who controls Lemuria, or is under common control with Lemuria.

2

5.    The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" shall mean "including without limitation."

6.    "Date" shall mean the exact date, month and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

7.    The word "document" shall have the meaning of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 24(a)(1)(A).

8.    "Agent" shall mean any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

9.    "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association or any other entity.

10.   The words "pertain to" or "pertaining to" mean relates to, refers to, regarding, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts or contradicts.

11.   The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

12.   The word "identify," when used in reference to a document (including electronically stored information), means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS Excel Spreadsheet); (2) the general subject matter of the document or electronically stored information; (3) the date of the

3

document or electronically stored information; (4) the author of the document or electronically stored information; (5) the addressee of the document or electronically stored information; and (6) the relationship of the author and addressee to each other.

13.    The word "identify," when used in reference to a natural person, means and includes the person's full name, position and/or title, and present contact information. Stating that a person can be contacted through counsel is not sufficient. If the person is a Hotfile user, also state the person's account name and user ID.

14.    The term "Hotfile user" means any person who has directed his or her Internet browser to the Hotfile Website or otherwise accessed the Hotfile Website, including any person who has registered with the Hotfile website, any person who has at any time opened a "Premium" account with the Hotfile website, and any person who has at any time been a participant in any of the Hotfile Website's "Affiliate" programs.

15.    The term "Content File" means any electronic file uploaded to, stored on and/or downloaded from the Hotfile Website by any Hotfile user at any time.

16.    The term "Affiliate programs" means all offers, programs or practices whereby Hotfile users receive compensation from any Defendant or Hotfile Entity, including the "Affiliate" program for uploading users and the "Referral" programs "for site owners" and "Refer a friend" as described at http://www.hotfile.com/affiliate.html.

17.    Documents maintained in electronic format shall be produced in accordance with any ESI agreement in this Action.

18.    If any document is not produced on the basis of a claim of privilege or for any other reason, identify the document with particularity, including without limitation the author(s), any recipient(s), any other individual or entity to whom the document has been shown or

transmitted, any other individual or entity with whom the document has been discussed, the number of pages, attachments, and appendices, the date of the document, a description of the subject matter sufficient to form the basis of a claimed privilege and to uniquely identify the document, and a short statement of the nature of the claimed privilege or reason for withholding production.

19. Plaintiffs do not believe that Defendants may lawfully withhold documents on the basis that they contain identifying information regarding specific Hotfile users. Without prejudice to Plaintiffs' right to seek the identity and additional information pertaining to such users, Defendants may, in the first instance, limit their initial production of documents in response to these Requests for Production containing individually identifying information of users as described herein. With respect to the top 500 users and/or websites that have received the greatest amounts of payments from Defendants related to Hotfile, Defendants may redact information such as credit card statement or bank account information. Plaintiffs will meet and confer in good faith regarding whether this information should be provided for a greater number of users or websites. For all other database records, if Defendants intend to redact such records, redactions will be done in a way that preserves the ability to identify the geographic location of the Hotfile user (such as by providing city and state information or sufficient unredacted IP address information), and that allows for the unique identification of the user such that an individual user's activities may be identified even when examining different sets of data. Plaintiffs invite Defendants to meet and confer regarding appropriate protocols for implementing these limitations.

20.     You are reminded to supplement your responses to these requests and your documents produced in response to these requests in accordance with Rule 26 of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 39:**

All non-duplicative copies of each webpage that has ever been publicly available on the Hotfile Website, including each webpage containing any policy or statement pertaining to the Digital Millennium Copyright Act, copyright infringement, notifications of copyright infringement, policies for terminating or disciplining infringers, or any agent or representative to receive copyright notifications (collectively, "DMCA Information"), and documents sufficient to show all dates for which each webpage was publicly available.  In responding to this Request No. 39 only, you may exclude link pages for individual Content Files, unless the link page contains any DMCA Information that is not also contained on another webpage being produced that was publicly available for the same time periods.

**DOCUMENT REQUEST NO. 40:**

All documents pertaining to any consideration, discussion or analysis regarding implementation or use of functionality permitting searches for individual Content Files or URLs on the Hotfile Website, including any reason why the Hotfile Website does not contain such a search functionality.

**DOCUMENT REQUEST NO. 41:**

All documents pertaining to any instance in which you have taken, or have considered taking, any disciplinary action against a website referring traffic to Hotfile, or the operator of such a website (collectively, a "Referral Website"), for any reason pertaining to copyright

6

infringement, or claims or notices of copyright infringement, including any instance in which you have:

(a) terminated (or considered terminating) a Referral Website from the "Referral" programs "for site owners" as described at http://www.hotfile.com/affiliate.html;

(b) blocked (or considered blocking) Content File links that are hosted on a Referral Website; or

(c) blocked (or considered blocking) communications with users being referred to Hotfile by a Referral Website.

**DOCUMENT REQUEST NO. 42**

All documents pertaining to any disciplinary action, including termination, that you have taken or considered taking against any Hotfile user, for any reason pertaining to copyright infringement, or claims or notices of copyright infringement, subsequent to plaintiffs' filing of this action against defendants on February 8, 2011, including:

(a) any criteria applied, instructions given or policies adopted for identifying users to be disciplined or terminated, including any changes to the criteria, instructions or policies over time;

(b) any users considered, or preliminarily identified, for possible discipline or termination but who ultimately were not disciplined or terminated for any reason;

(c) any communications with users;

(d) any communications, analyses or consideration of the actual or potential impact of such user discipline or termination on your business, including traffic to the Hotfile Website, sales of premium subscriptions, user or Affiliate defections or otherwise;

(e) any continued use of Hotfile by terminated users through alternative accounts or otherwise;

(f) any reinstatement of any terminated user for any reason; or

(g) any analysis of the demographic characteristics of any users disciplined or terminated, including the geographic location of such users, whether such users were participants in any Hotfile Affiliate programs, or whether such users were paying or free subscribers.

Dated:  June 14, 2011

By: /s/ _Duane Pozza_
Duane C. Pozza

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA  91403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Phone: 202-639-6000
Fax: 202-639-6066

*Attorneys for Plaintiffs*

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305-416-6880
Fax: 305-416-6887

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th Day of June, 2011, I served the following documents on all counsel of record on the attached service list via their email address(es) as set forth on the attached service list pursuant to the parties' service agreement:

**Plaintiffs' Third Set of Requests for Production**

I further certify that I am admitted *pro hac vice* to the United States Court for the Southern District of Florida and certify that this certificate of Service was executed on this date at Washington, D.C.

By: /s/ _Duane Pozza_
Duane C. Pozza

**SERVICE LIST**

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and
Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*

11

# EXHIBIT 4

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Tuesday, January 31, 2012 1:13 PM
**To:** DPozza@jenner.com
**Subject:** RE: Hotfile Schedule

I can't promise that it will be done by noon Eastern, but it will be done during business hours California time.

Anthony P. Schoenberg
Attorney at Law

Farella Braun + Martel LLP
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Tuesday, January 31, 2012 1:08 PM
**To:** Schoenberg, Tony (28) x4963
**Subject:** Re: Hotfile Schedule

Tony, I should have the ftp information shortly. I actually think we should have our data ready to produce by noon Eastern. Does that timing work for you? Thanks -
Duane

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Monday, January 30, 2012 06:03 PM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

Thanks. Yes, please arrange for an FTP site, and we can arrange to complete the production to the site during business hours on Wednesday.

Anthony P. Schoenberg
Attorney at Law

Farella Braun + Martel LLP
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

1

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Monday, January 30, 2012 3:56 PM
**To:** Schoenberg, Tony (28) x4963
**Subject:** RE: Hotfile Schedule

Tony, in the interest of getting this done, we agree to your proposal from Friday afternoon.  We can arrange an FTP for the production, if you do not already have one set up.   My preference is to have the data production done during business hours if possible – please confirm you can do that on your end (my understanding from last week was that the data production was already in progress).  Thanks,
Duane

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Monday, January 30, 2012 6:17 PM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

Duane – We are not agreeing to provide any data past December 23.  I think I've made that abundantly clear.

Anthony P. Schoenberg
Attorney at Law

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Monday, January 30, 2012 1:07 PM
**To:** Schoenberg, Tony (28) x4963
**Subject:** RE: Hotfile Schedule

Tony, can you let me know where we stand on this?  I am out of my office the rest of the day, but this will not take long and I will give you a call if you have a time you are free.  Thanks –
Duane

**From:** Pozza, Duane
**Sent:** Monday, January 30, 2012 12:42 PM

**To:** 'TSchoenberg@fbm.com'
**Subject:** RE: Hotfile Schedule

Tony,

It is not meant to be a moving target or a shift in what we are seeking. We just want to know whether data is being extracted now (i.e., as of the last few days) without modification of any dynamic fields in the extraction. If your clients are doing that, then we have no issue. If they're not, then it raises a question about what data we're getting – I don't know of any process by which any dynamic fields (e.g., download counts) could be "reset" to Dec. 23. I'm just trying to be clear on what we're getting. Please let me know so we can nail this down. Thanks,
Duane

---

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Monday, January 30, 2012 12:34 PM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

Duane,

You have indicated on multiple occasions that plaintiffs would agree to supplementation through December 23, the last day of fact discovery. You are now suddenly demanding – for the first time – supplementation of certain unidentified data fields through the present date. Your sudden about-face is inconsistent with your prior statements on this topic, contrary to the court's December 23 fact discovery cut-off, and is turning this process into a moving target. Our proposal is clear. Let me know if you are willing to agree to it.
Regards,
Tony

Anthony P. Schoenberg
Attorney at Law

---

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

---

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

---

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Sunday, January 29, 2012 7:10 PM
**To:** Schoenberg, Tony (28) x4963
**Subject:** RE: Hotfile Schedule

Tony,

We need to get confirmation that Hotfile is producing the current version of dynamic fields (or the version exported last week if that is when the export was done), rather than producing versions of the dynamic fields reset in some way to Dec. 23. If you can confirm that, we can agree to the terms as modified by your email on Friday.
Regards,
Duane

3

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Sunday, January 29, 2012 4:02 PM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

Duane – Can you confirm that plaintiffs agree to the terms of defendants' proposal, as modified in my email on Friday? I'm working on getting an answer about dynamic fields.

Regards,
Tony

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Sunday, January 29, 2012 9:38 AM
**To:** Schoenberg, Tony (28) x4963
**Subject:** RE: Hotfile Schedule

Tony, I left you a voicemail on Friday afternoon regarding the data production date issue. Let me know if you did not receive it or if it is not clear. Can you confirm that any dynamic data fields (e.g., download counts) are being provided as of the export date (i.e., in the last few days) rather than being reset in some way to what they were on Dec. 23? As I mentioned, this question only concerns the dynamic fields, so we are clear on the scope of the data we are getting and how to interpret it — we're fine with, for example, producing all the uploadIDs and user suspension records created through Dec. 23.

I can talk today or early tomorrow if this is unclear, but let's try to wrap this up. Thanks,
Duane

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Friday, January 27, 2012 4:33 PM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

Duane – You state that you will agree to our proposal, but our proposal states that "no further supplementation will occur." Your statement about "without prejudice to any argument to seek additional supplementation at any time" seems directly at odds with that. We want and are entitled to some finality on discovery. That is a key part of this proposal for defendants. In order to compromise, we will agree to modify the proposal to state that "no further supplementation will occur absent a stipulation or court order based upon a showing of good cause." Let me know if you will agree to that. If you will, then we are in agreement, including the Wednesday production date.

Regards,
Tony

**Anthony P. Schoenberg**
Attorney at Law

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

T 415.954.4400
D 415.954.4963

4

F 415.954.4480
www.fbm.com

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Friday, January 27, 2012 10:56 AM
**To:** Schoenberg, Tony (28) x4963
**Subject:** RE: Hotfile Schedule

Tony,
We will agree to your supplementation proposal below, without prejudice to any argument to seek any additional supplementation at a later time, with the clarifications we have discussed: defendants will produce the data table "Uploads" instead of "Uploadip," and Warner will supplement its response to Request 47 by producing any responsive, non-privileged documents that it locates after a reasonable search subject to and without re-opening dispute on its original objections to RFP 47. As we discussed, we need to set a fixed date for the supplemental data productions, and I believe it should be next Wednesday February 1. I also think we should agree to production of data by FTP.

Please confirm that defendants are in agreement.

Regards,
Duane

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Tuesday, January 24, 2012 8:39 PM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

Duane,

Here is our proposal regarding supplementation. We will agree to supplement the data tables that you identified on the phone last week as the ones for which plaintiffs seek supplementation (Userdat, Actiondat, Strikes, Affpay, Dmcanotices, Usercownerupload, Payments, Uploaddownload, Dailydownload and Uploadip) as follows:

1. Supplemental data for both sides need only cover through Dec. 23, 2011, the date on which fact discovery closed, and no further supplementation will occur;
2. The parties agree that they will not seek to modify the case schedule in any way based on the supplemental productions;
3. The parties agree that they will not seek to supplement any expert report (if any) based on the supplemental data other than the reports of Dr. Foster and James Boyle, and then only if the expert is made available for a further deposition;
4. Plaintiffs agree that they will supplement WARNER073293 ( "Hotfile2011WithPost"), WARNER072624 (exclude terms) and documents regarding false positives (RPD 47) for all documents generated on or before Dec. 23, 2011.

Let me know if plaintiffs are agreeable to these terms.

Regards,
Tony

**Anthony P. Schoenberg**
Attorney at Law

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Tuesday, January 24, 2012 11:38 AM
**To:** Schoenberg, Tony (28) x4963
**Subject:** RE: Hotfile Schedule

OK, we need to set an anticipated production date, and if we can't talk until tomorrow, please be ready with some information on how long you expect production to take. We've said repeatedly that if we can't get a timely production of the supplemental data, we're going to have to move to push the schedule back again. I don't see why there should be further delays merely to run database extractions.

I can talk at noon Eastern / 9 Pacific tomorrow.

Thanks,
Duane

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Tuesday, January 24, 2012 12:22 PM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

No, I don't. Let's talk tomorrow.

**Anthony P. Schoenberg**
Attorney at Law

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Tuesday, January 24, 2012 9:21 AM

6

**To:** Schoenberg, Tony (28) x4963
**Subject:** RE: Hotfile Schedule

Tony, we need to nail this down as soon as we can given the schedule – do you not have 15 minutes this afternoon to talk? I'm available after 2 Eastern.

---

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Tuesday, January 24, 2012 11:52 AM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

Today is not good for me. I can speak tomorrow any time before 11:30 PST other than from 10 to 10:30.

Anthony P. Schoenberg
Attorney at Law

---

Farella Braun + Martel LLP
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

---

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

---

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Tuesday, January 24, 2012 8:50 AM
**To:** Schoenberg, Tony (28) x4963
**Subject:** RE: Hotfile Schedule

Tony, what's a good time to speak about this today?

---

**From:** Pozza, Duane
**Sent:** Monday, January 23, 2012 8:34 PM
**To:** TSchoenberg@fbm.com
**Subject:** RE: Hotfile Schedule

Tony, we spoke about this last Wednesday, so it's now been a few days to speak to your client. Notwithstanding the "surprise," I'm not seeing the issue with supplementation of the data outside the "small universe" you reference – is there some issue with burden? We are fine getting this in waves (e.g., actiondat, userdat, and the DMCA / SRA tables first) if that's easier. Is there a good time to speak tomorrow?

Regards,
Duane

---

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Monday, January 23, 2012 5:08 PM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

7

Duane – If there is to be any supplementation, our position would be that it should not extend beyond Dec. 23. At this point, I do not have a further position to convey to you. As I told you on our call, our inclination had been to agree to mutual supplementation through Dec. 23 when we believed that you were seeking supplementation of a much smaller universe of data files. Your unexpected and sudden request for a much larger universe of data files took us by surprise, and we are still considering how that effects our position.

Regards,
Tony

**Anthony P. Schoenberg**
Attorney at Law

_____

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

_____

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Monday, January 23, 2012 1:55 PM
**To:** Schoenberg, Tony (28) x4963
**Subject:** RE: Hotfile Schedule

I think supplementation at least until the end of fact discovery is appropriate. I had understood your position on our call to be that defendants were fine with supplementation until Dec. 23, 2011. I don't see that we need to get into anything post-Dec. 23 for the data at this time. Am I misunderstanding your position?

-Duane

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Monday, January 23, 2012 4:26 PM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

Duane – By your definition of relevance, it would seem that you would expect us to supplement until the day of trial. Is that really your position?

**Anthony P. Schoenberg**
Attorney at Law

_____

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

_____

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Monday, January 23, 2012 12:15 PM
**To:** Schoenberg, Tony (28) x4963
**Subject:** Re: Hotfile Schedule

Tony, apologies for the belated response in light of the depositions last Thursday and Friday. Given that we initially requested supplementation of this data before the close of fact discovery, I don't think it's relevant whether fact or expert discovery is over – this is information that we believe should have been provided prior to the close of fact discovery. But in any event, the data is relevant as a factual matter (in addition to clearly being relevant for expert consideration). In short – and without attempting to be comprehensive – the tables Userdat, Actiondat, and Strikes show information about user strikes and user terminations for infringement, which are relevant to Hotfile's DMCA defense. The Dmcanotices and Usercownerupload tables show Hotfile's notice of particular infringing files (which may be correlated to particular users). Affpay shows how much terminated users were paid, which is relevant to inducement. Uploadip shows whether where a file uploader is located, and Uploaddownload and dailydownload show number of downloads of files; all of those are relevant to showing direct infringement. And the Payments table is relevant to showing financial benefit.

Have you had a chance to speak to your client about this? Is there an ETA on the supplementation?

Thanks,
Duane

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Wednesday, January 18, 2012 8:59 PM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

Duane – I meant to ask on our call today, but why are plaintiffs seeking supplementation of all of these data files (which I've listed below)? Expert reports (and rebuttals) are complete.


Userdat
Actiondat
Strikes
Affpay
Dmcanotices
Usercownerupload
Payments
Uploaddownload
Dailydownload
Uploadip


Anthony P. Schoenberg
Attorney at Law

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

---

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Wednesday, January 18, 2012 10:25 AM
**To:** Schoenberg, Tony (28) x4963
**Subject:** RE: Hotfile Schedule

Yes, let's plan on that.

---

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Wednesday, January 18, 2012 1:16 PM
**To:** Pozza, Duane
**Subject:** RE: Hotfile Schedule

I have a noon meeting (which I'm leading). I could talk at 11:30. Will that work?

**Anthony P. Schoenberg**
Attorney at Law

---

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

---

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Wednesday, January 18, 2012 10:15 AM
**To:** Schoenberg, Tony (28) x4963
**Subject:** RE: Hotfile Schedule

I can talk at noon Pacific, but will be on a flight shortly thereafter. Does that work?

---

**From:** TSchoenberg@fbm.com [mailto:TSchoenberg@fbm.com]
**Sent:** Wednesday, January 18, 2012 12:17 PM
**To:** Pozza, Duane
**Cc:** RThompson@fbm.com; ALeibnitz@fbm.com; Fabrizio, Steven B; Platzer, Luke C
**Subject:** RE: Hotfile Schedule

Can you talk this afternoon?  I'm tied up this morning.

**Anthony P. Schoenberg**
Attorney at Law

---

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

---

T 415.954.4400
D 415.954.4963
F 415.954.4480
www.fbm.com

---

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Wednesday, January 18, 2012 7:49 AM
**To:** Schoenberg, Tony (28) x4963
**Cc:** Thompson, Rod (27) x4445; Leibnitz, Andrew (21) x4932; Fabrizio, Steven B; Platzer, Luke C
**Subject:** FW: Hotfile Schedule

Tony, are you available this morning to discuss the data supplementation (per email exchange below)?  Let me know a time that works best and I can give you a call.  Thanks,
Duane

---

**From:** Fabrizio, Steven B
**Sent:** Tuesday, January 17, 2012 4:15 PM
**To:** RThompson@fbm.com; Pozza, Duane; ALeibnitz@fbm.com
**Cc:** Platzer, Luke C
**Subject:** RE: Hotfile Schedule

Duane is in deposition so I will respond.  First we are not linking the extension, which the court said it would grant, with the data supplementation.  They are separate.  We are just advising you that, absent getting the data supplement forthwith, we may go back and ask the court to extend the schedule as a result of defendants' failure to supplement.  We have been asking for this supplement for weeks.  All we have gotten in response is the same general non-answer that you just gave.  So, we propose the schedule Duane circulated.  If we get the data soon, that should suffice.  If we don't get the data soon, we are reserving our right to seek additional time.

Accordingly, please indicate whether you approve the schedule in Duane's email so we can get it to the court asap.

SBF

**From:** RThompson@fbm.com [mailto:RThompson@fbm.com]
**Sent:** Tuesday, January 17, 2012 4:10 PM
**To:** Pozza, Duane; ALeibnitz@fbm.com
**Cc:** Fabrizio, Steven B; Platzer, Luke C
**Subject:** RE: Hotfile Schedule

Duane, you are correct about the timing of my trip to Hong Kong for my son's wedding. And I appreciate Plaintiffs' and the Court's willingness to work around that date.

The threat in your last line, however, is unfortunate and inappropriate.  In response to Judge Williams' direct question, Plaintiffs agreed to this professional courtesy and did not condition the schedule issue on anything else.  We are checking on supplementing the specific data you've asked about and trust you are doing the same with respect to our requests.  (Tony or I will discuss the timing and extent of supplementation by all parties with you separately.)  But there is no basis to tie the issues together.

Alternatively, if Plaintiffs would now prefer to stick to the current schedule, we can still live with it.  Just let us know promptly so we can plan accordingly.

Rod

---

**From:** Pozza, Duane [mailto:DPozza@jenner.com]
**Sent:** Monday, January 16, 2012 6:29 PM
**To:** Thompson, Rod (27) x4445; Leibnitz, Andrew (21) x4932
**Cc:** Fabrizio, Steven B; Platzer, Luke C
**Subject:** Hotfile Schedule

Rod,

Per the Court's direction at the status conference, below is a proposed schedule that extends the time for filing the initial summary judgment motions and compresses the rest of the dates.  I believe you said that you were leaving the weekend of March 17-18 (correct me if I'm mistaken), and the proposed date of Monday the 19th date for the final reply reflects that the parties will be dealing with the filing mechanics on the due date rather than finishing the brief itself.

The plaintiffs' agreement to this is subject to the caveat that we receive all outstanding supplemental data immediately – I am sending a separate email on that.

Regards,
Duane

| | |
|---|---|
| Friday, February 10, 2012 | Motions for Summary Judgment on Hotfile Corp.'s Counterclaim against Warner Bros. Entertainment, Inc. ("Counterclaim") are filed. |

Friday, February 17, 2012          All other Motions for Summary Judgment unrelated to the Counterclaim are filed.

Monday, February 27, 2012          Oppositions to Motions for Summary Judgment on the Counterclaim are filed.

Wednesday March 7, 2012          Oppositions to Motions for Summary Judgment unrelated to the Counterclaim are filed.

Monday, March 12, 2012          Replies in Support of Motions for Summary Judgment on the Counterclaim are filed.

Monday, March 19, 2012          Replies in Support of Motions for Summary Judgment unrelated to the Counterclaim are filed.

**Duane Pozza**
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
Tel (202) 639-6027
Fax (202) 661-4962
DPozza@jenner.com
www.jenner.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

# EXHIBIT 5

| From: | Thompson, Rod (27) x4445 |
|---|---|
| Sent: | Tuesday, February 07, 2012 10:34 AM |
| To: | LPlatzer@jenner.com; Schoenberg, Tony (28) x4963; Leibnitz, Andrew (21) x4932 |
| Cc: | SFabrizio@jenner.com; DPozza@jenner.com |
| Subject: | RE: Hotfile - Data Supplementation and Continued Deficiencies in Source Code Production |

Luke, we (our litigation support folks not me) were able to extract all of the files we provided. It did unzip successfully, but it took a very long time to decompress. Hopefully, you have now done the same.

As you requested, here are the MD5 and SHA1 values for the large zip file:

MD5:    9dd1b3ebf1b1e2a62e516f5513fd7ae8
SHA256: fdae8f40c8ef270b4c9ee4f50a2306ac93b965c9

We made that zip file with Windows' built in compress files utility.

Let us know if you have any more questions.

Rod

---

**From:** Platzer, Luke C [mailto:LPlatzer@jenner.com]
**Sent:** Monday, February 06, 2012 4:34 PM
**To:** Thompson, Rod (27) x4445; Schoenberg, Tony (28) x4963; Leibnitz, Andrew (21) x4932
**Cc:** Fabrizio, Steven B; Pozza, Duane
**Subject:** RE: Hotfile - Data Supplementation and Continued Deficiencies in Source Code Production

Rod:

We've verified that the 02-03-12 Jan Submission pt 3.zip file is posted on the FTP. However, we have been encountering difficulties all day in actually decompressing and opening the file (which have now recurred three times, to copies downloaded to two different locations). In order to verify that the file has not become corrupted, can you please let us know:

(1)  What software was used to create the compressed archive (was this Izarc again)?
(2)  Can you please provide us with an md5 or sha1 hash of the file that you posted so that we can verify that the copy we've been able to download doesn't differ from the local file you uploaded?

Thanks.

-   Luke

---

**From:** RThompson@fbm.com [mailto:RThompson@fbm.com]
**Sent:** Monday, February 06, 2012 12:03 AM
**To:** Platzer, Luke C; TSchoenberg@fbm.com; ALeibnitz@fbm.com
**Cc:** Fabrizio, Steven B; Pozza, Duane
**Subject:** RE: Hotfile - Data Supplementation and Continued Deficiencies in Source Code Production

Luke, I'm not sure what happened on whose site but we are uploading these files tonight in compressed form as Steve requested. Hopefully, this time it will work. Please confirm receipt in the morning.

Rod

---

**From:** Platzer, Luke C [mailto:LPlatzer@jenner.com]
**Sent:** Sunday, February 05, 2012 3:24 PM
**To:** Thompson, Rod (27) x4445; Schoenberg, Tony (28) x4963; Leibnitz, Andrew (21) x4932
**Cc:** Fabrizio, Steven B; Pozza, Duane

**Subject:** RE: Hotfile - Data Supplementation and Continued Deficiencies in Source Code Production

Rod:

Whoever is giving you information on this is mistaken.  I'm looking at the FTP right now (which someone from your firm could have done before you wrote your email).  Part 2 of the supplementation contains the following files:

Strikes.csv.headers
Uploadsdownloads.csv.headers
Uploads5.csv.headers
Userdat.csv.headers

The promised "file" file is not there.  Nor is the "uploadsurl.csv" file there.

- Luke

---

**From:** RThompson@fbm.com [mailto:RThompson@fbm.com]
**Sent:** Sunday, February 05, 2012 6:17 PM
**To:** Platzer, Luke C; TSchoenberg@fbm.com; ALeibnitz@fbm.com
**Cc:** Fabrizio, Steven B; Pozza, Duane
**Subject:** RE: Hotfile - Data Supplementation and Continued Deficiencies in Source Code Production

Luke, we confirmed that at least as of noon today all supplementation data had been uploaded to the Jenner FTP.  We did this on a rolling basis as that is what Steve requested.  It is a little disingenuous for you to ask for the rolling production and then complain that you couldn't "get started" earlier because the data supplement was not complete.

There should be a "file" table on your FTP site (directory "supp-jan-26-2", file.csv).  I understand that we supplemented the uploads via a file called uploadsurl.csv.  Let us know if you cannot locate it.

I will respond to the source code question separately.

Rod

---

**From:** Platzer, Luke C [mailto:LPlatzer@jenner.com]
**Sent:** Sunday, February 05, 2012 2:48 PM
**To:** Platzer, Luke C; Thompson, Rod (27) x4445; Schoenberg, Tony (28) x4963; Leibnitz, Andrew (21) x4932
**Cc:** Fabrizio, Steven B; Pozza, Duane
**Subject:** RE: Hotfile - Data Supplementation and Continued Deficiencies in Source Code Production

Rod, Tony, or Andy:

No one has responded to my email.  Do Defendants have any intention of remedying this deficiency – which we brought to your attention on Thursday morning and for which Tony promised us the production of an additional data set?  We have now lost the ability to run data analysis the entire weekend – for data we were supposed to have on Wednesday per our agreement.  We reserve our rights to seek scheduling relief from the Court.

Regards,
Luke

---

**From:** Platzer, Luke C
**Sent:** Saturday, February 04, 2012 6:17 PM
**To:** 'RThompson@fbm.com'; 'TSchoenberg@fbm.com'; 'ALeibnitz@fbm.com'
**Cc:** Fabrizio, Steven B; Pozza, Duane
**Subject:** RE: Hotfile - Data Supplementation and Continued Deficiencies in Source Code Production

Rod or Tony:

I see that Defendants uploaded earlier this afternoon headers for the four dynamic tables, in addition to the updates to the six log-style tables produced last night.

However, there is data still missing – we still don't have the outstanding data fields for uploads5 (size, blocked, sha1, md5, or url). When we immediately brought this issue to Tony's attention on Thursday morning, he told us that Hotfile would be fixing this issue by including in its production a "file" table that would include the size, blocked, sha1, and md5 values for the uploads5 table, but no such data has been produced (and the url field continues to be missing from uploads5). Not to sound like a broken record, but we agreed to this mutual supplementation with the expectation that Hotfile would give us the data in usable form on Wednesday, then agreed to narrow our request in order to just get something usable by Friday – and now it's Saturday night and we still can't get started on our data analyses (which take a very large amount of computer processing time) because the supplementation remains incomplete. Please confirm that this data will be produced to us immediately.

Regards,
Luke

---

**From:** Platzer, Luke C
**Sent:** Saturday, February 04, 2012 12:15 PM
**To:** 'RThompson@fbm.com'; TSchoenberg@fbm.com; ALeibnitz@fbm.com
**Cc:** Fabrizio, Steven B; Pozza, Duane
**Subject:** RE: Hotfile - Data Supplementation and Continued Deficiencies in Source Code Production

Rod / Tony:

We have been regularly monitoring the FTP site today, and continue to await the vast bulk of Defendants' data sets. As Steve has expressed to you and to Tony on several occasions, the large size of these data sets mean that it takes significant time to load these data sets to a database and to query the data, and our inability to get this process started is prejudicing our ability to complete the analyses by the summary judgment deadline (and while Tony will probably again dismiss as "implausible" the notion that we work on weekends, we really are standing by waiting to get this data loaded). Please confirm that the data is being produced promptly today.

Regards,
Luke

---

**From:** RThompson@fbm.com [mailto:RThompson@fbm.com]
**Sent:** Friday, February 03, 2012 9:25 PM
**To:** Platzer, Luke C; TSchoenberg@fbm.com; ALeibnitz@fbm.com
**Cc:** Fabrizio, Steven B; Pozza, Duane
**Subject:** RE: Hotfile - Data Supplementation and Continued Deficiencies in Source Code Production

Luke and Steve:

As to data supplementation, I understand that the first submission has been uploaded to the JB FTP site (same one as before). Please note the production is Highly Confidential under the protective order.

To accommodate Steve's requests 1) we are producing on a rolling basis and will try to have the remainder produced (via the same FTP) tomorrow and will get it to you in any event as soon as we can; and 2) we sent a compressed file 02-03-12 Jan 26 submission 2 PART 1.zip. It contains the following.



Note that when we made the last submission earlier this week, we also attempted as a courtesy to compress the files. But when in process, the program hung and did not respond. It basically failed and as a result delayed transmission. We assumed speed was more important to you and that you wanted data as soon as possible. So we uploaded the data as it was without compressing. Tomorrow, we will use our best judgment as to whether compression would be helpful or threaten to slow things down.

As to your source code questions, my understanding is that you now have the responsive source code in compliance with the Court's order. The portions of the code that you are asking about were either not included because they are not responsive or, in the case of programmer comments and earlier version histories, do not exist. You may wish to review your questions with your expert; in the meantime we will confirm our understanding with Hotfile. Enjoy your weekends.

Rod

_____

**From:** Platzer, Luke C [mailto:LPlatzer@jenner.com]
**Sent:** Friday, February 03, 2012 3:03 PM
**To:** Schoenberg, Tony (28) x4963; Thompson, Rod (27) x4445; Leibnitz, Andrew (21) x4932
**Cc:** Fabrizio, Steven B; Pozza, Duane
**Subject:** Hotfile - Data Supplementation and Continued Deficiencies in Source Code Production

Tony (of, if as I understand it, Tony is out of the office, Rod or Andy):

<u>Data Supplementation</u>:  With Steve and Duane out of the office this weekend, I will be receiving Defendants' data supplementation. Tony's email from last night stated that Hotfile would be supplementing its data production today (although he was not able to guarantee the completion of the supplementation).  Please confirm that this production will be:

    (1) compressed/archived as per Steve's email earlier today, and

    (2) produced via FTP.  Also, please let us know which FTP will be used to deliver the production.

<u>Source Code</u>: Last night's belated source code production continues to be missing several important files that the court ordered to produce.  To repeat, this is what the court's order requires to be produced:

    [A]ny and all portions of Hotfile's source code files (including in-file programmer comments), source code revision history, or source code management system check-in comments that refer to, relate to, or are used for Hotfile's processes for disabling files or URL links in response to takedown notices, or its processes for using "hash" information to prevent or block specific subsequently uploaded files from being available for download.

Hotfile's production of last night continues to be noncompliant in that it fails to include "source code revision history," or "source code management system check-in comments" for most of the snippets of source code produced.  Hotfile has provided information reflecting some changes to two of the produced files, but (1) has produced no change history prior to May 24, 2011 and (2) has produced no change history for any of the other code segments provided.  In addition to raising a question about Hotfile's compliance with its preservation obligations (where is the change history from the institution of the litigation hold through May 24th?), the court ordered Hotfile to produce "any and all" revision history and check-in comments for source code related to the ordered topics, not just the two files for which Hotfile chose to produce it.  Please confirm that Hotfile will comply with the court's order and promptly produce all versions of the code segments produced.

In addition, the code related to the blocking of files upon upload -- which relates directly to the Court's order -- is inexplicably redacted, with 55% of the code simply removed.  Given the centrality of this code to the question that prompted Plaintiffs to bring this motion in the first place, this unexplained redaction is unacceptable.  Please confirm that Hotfile will produce the code in unredacted form.

Regards,
Luke

**Luke C. Platzer**
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
Tel (202) 639-6094
Fax (202) 661-4813
<u>LPlatzer@jenner.com</u>
<u>www.jenner.com</u>

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

# EXHIBIT 6

Highly Confidential

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20427-WILLIAMS/TURNOFF

- - - - - - - - - - - - - - - - - - - - - - - - - - -

DISNEY ENTERPRISES,
INC., TWENTIETH CENTURY
FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP,
COLUMBIA PICTURES
INDUSTRIES, INC., and
WARNER BROS.
ENTERTAINMENT, INC.,

       Plaintiff,

v.

HOTFILE CORP., ANTON
TITOV, and DOES 1-10,

       Defendants.

HOTFILE CORP.,

       Counterclaimant,

v.

WARNER BROS ENTERTAINMENT
INC.,
       Counterdefendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

VOLUME II
H I G H L Y   C O N F I D E N T I A L
(Pursuant to protective order, the following
transcript has been designated highly confidential)

30(b)(6) DEPOSITION OF ANTON TITOV
Radisson Blu Hotel
Sofia, Bulgaria
Tuesday, December 6, 2011
AT:  9:10 a.m.
Job No: 44175

Highly Confidential

Page 192

```
 1                A P P E A R A N C E S

 2   ATTORNEY FOR THE PLAINTIFFS:

 3           JENNER & BLOCK
             BY:  STEVEN B. FABRIZIO, ESQ.
 4           1099 New York Avenue, NW

 5           Washington, DC  20001

 6

 7

 8
     ATTORNEY FOR THE DEFENDANTS HOTFILE CORP.,
 9   AND ANTON TITOV:
             FARELLA, BRAUN & MARTEL
10           BY:  RODERICK M. THOMPSON, ESQ.
             235 Montgomery Street
11           San Francisco, California  94104

12

13           BOSTON LAW GROUP
             VALENTIN GURVITS
14           825 Beacon Street
             Newton Center, MA 02459
15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential

Page 193

1    Also present:

2    Court reporter:

3            Fiona Farson
             TSG Reporting
4

5    Videographer:

6            Simon Rutson
             TSG Reporting
7

8    Interpreter:

9            Assist. Prof. Boris Naimushin, Ph.D.

10

11   Technical expert:

12           Kelly Truelove

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential

Page 194

1                          I N D E X

2    EXAMINATION

3    BY MR. FABRIZZIO (continued)                    202

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential

Page 210

```
 1     notices; is that correct?
 2  MR. THOMPSON:  Objection, vague.  Just so -- are you asking
 3     him if that's what he said, or if that's the policy?
 4  BY MR. FABRIZIO:
 5  Q.  Is it the case that currently Hotfile terminates users
 6     who have received three strikes based on Hotfile's
 7     receipt of DMCA notices?
 8  A.  That is correct, to my knowledge, yes.
 9  Q.  Okay.  If a user is rightly terminated because that user
10     had received three or more strikes for uploading
11     infringing content, does the termination of that user
12     still negatively effect Hotfile's revenues?
13  MR. THOMPSON:  Objection.  Incomplete, hypothetical, calls
14     for speculation.
15  A.  I don't know.
16  BY MR. FABRIZIO:
17  Q.  You don't know?
18  A.  It's a very broad topic.  I don't have any factual
19     information.
20  Q.  Okay.  Let me ask it this way:  Does Hotfile consider
21     itself entitled to revenue from users who are repeat
22     copyright infringers by Hotfile's own standard?
23  MR. THOMPSON:  Objection.  Vague and ambiguous, calls for
24     a legal conclusion, and argumentative.
25  A.  I don't think so.
```

Highly Confidential

Page 212

1      It says "wrongful data"; it should say "wrongful

2      takedowns."

3   MR. THOMPSON:  Thank you.

4   BY MR. FABRIZIO:

5   Q.  Hotfile's current policy is that users who are the

6       subject of three DMCA notices from copyright owners

7       should be terminated, correct?

8   A.  Yes.  To my belief, it's the current policy.

9   Q.  Okay.  If a user had received more than three notices

10      before a Warner notice that was in error, should that

11      user have been terminated irrespective of the Warner

12      notice?

13  MR. THOMPSON:  Objection.  Vague and ambiguous, incomplete

14      hypothetical.

15  A.  If you assume that other notices were correct, then

16      I believe so.

17  BY MR. FABRIZIO:

18  Q.  Okay.  So in that case, if Warner was -- if the Warner

19      notice that was in error was the fourth, fifth, sixth or

20      tenth strike, Hotfile would not consider that Warner

21      notice to be the cause of that user termination because

22      the user already should have been terminated based on

23      having three previous strikes.  Is that correct?

24  MR. THOMPSON:  Objection.  Hypothetical, calls for

25      speculation.

Highly Confidential

Page 230

1    MR. THOMPSON:  Objection, asked and answered.

2    A.  I don't know for a fact.

3    BY MR. FABRIZIO:

4    Q.  Have you ever discussed with your other shareholders

5        terminating Warner's access to the special rights

6        holders' account?

7    A.  I'm not -- I'm not -- can't remember any discussion like

8        that, absent the presence of my counsel.

9    Q.  Has Hotfile changed the way it processes notices sent by

10       Warner through the SRA account since the filing of its

11       counterclaim against Warner?

12   MR. THOMPSON:  Objection, vague.

13   A.  I'm not aware of any change.

14   BY MR. FABRIZIO:

15   Q.  For instance, does Hotfile now manually review files

16       noticed by Warner through the special rights holder's

17       account to see if the files are -- appear to be

18       accurate?

19   A.  I'm not aware of any reviews, and to my best knowledge,

20       the Warner's account still works instantly.

21                      (Reporter clarification)

22   BY MR. FABRIZIO:

23   Q.  Why is Hotfile not engaging in a higher-level review of

24       notices sent through the Warner SRA account?

25   MR. THOMPSON:  Objection.  Vague, and asked and answered.

Highly Confidential

Page 242

1      all files from a list page, Hotfile understood that in

2      doing so, it might be deleting files that were not

3      infringing as well; isn't that correct?

4   MR. THOMPSON:  Objection, asked and answered.

5   A.  I don't know I can say for a fact what was Hotfile

6      understanding back then.

7   BY MR. FABRIZIO:

8   Q.  What about right now?  Do you understand that when

9      Hotfile deletes all the files on a list page, that

10     Hotfile may be deleting files that are not infringing as

11     well?

12  A.  Yes, I understand that.

13  Q.  And is Hotfile going to continue its practice of

14     deleting all files on a list page?

15  MR. THOMPSON:  Objection, vague.

16  A.  I can't speak about future decisions of Hotfile by

17     myself.

18  BY MR. FABRIZIO:

19  Q.  Are you planning on talking to your other shareholders

20     about changing this practice?

21  A.  Just right now, as I sit here, I have other things to

22     think of.  I can't say.

23  Q.  Do you understand the concept or the term "false

24     positive"?

25  MR. THOMPSON:  Objection, vague.

Highly Confidential

Page 276

1    A.   I don't know for a fact, but it's my belief that

2         a compatible statement was there since the beginning.

3    Q.   A comparable statement?  What do you consider

4         a comparable statement?

5    A.   A statement that will carry all -- carry on the same

6         substance, I guess.

7    Q.   Right.  Currently, today, in its IP policy page, Hotfile

8         informs users that it has a policy to terminate repeat

9         infringing users, correct?

10   A.   I believe so.

11   Q.   Okay.  And when did that IP policy page first appear on

12        Hotfile?

13   A.   I think approximately May or June 2010.

14   Q.   Okay.  And before May or June of 2010, where did --

15        where on its website did Hotfile inform users of

16        a policy to terminate repeat infringers?

17   A.   In terms of service, I think.

18   MR. FABRIZIO:  Okay.  I'm asking the court reporter to mark

19        as Titov exhibit 31 a printout from Hotfile terms of

20        service.  This is printed from archive.org.

21   Q.   And you will undoubtedly recognize from convention,

22        Mr. Titov, that this reflects an archive.org capture as

23        of February 2010.

24           (Titov exhibit 31 marked for identification.)

25   BY MR. FABRIZIO:

Highly Confidential

Page 279

```
 1      you believe Hotfile informs its users of a policy to
 2      terminate repeat copyright infringers?
 3   A. I'm not aware of any other place where Hotfile is
 4      informed about this except in the terms of service.
 5   Q. Okay.  Now we talked about the fact that after this
 6      complaint was filed, Hotfile modified its practice with
 7      regard to repeat infringers, right?
 8   A. Correct.
 9   Q. And Hotfile now has a strike system?
10   A. Correct.
11   Q. And prior to the filing of this lawsuit, Hotfile did not
12      have a strike system?
13   MR. THOMPSON:  Objection, vague.
14   A. No, it did not ...
15                    (Reporter clarification.)
16   A. ... have a system that would automatically assign and
17      count strikes.
18   BY MR. FABRIZIO:
19   Q. Did Hotfile have any systematic process to identify
20      repeat copyright infringers prior to this litigation?
21   MR. THOMPSON:  Objection, vague.
22   A. Not based on a computer decision, if that is what you
23      mean by "systematic."
24   BY MR. FABRIZIO:
25   Q. Well, that's one thing that I mean by "systematic."  But
```

Highly Confidential

Page 325

```
 1   MR. THOMPSON:  Objection, argumentative.

 2   A.  I don't know.

 3   BY MR. FABRIZIO:

 4   Q.  Do you want to take a quick break now, or do you want to

 5       go on for a little bit?

 6   A.  A quick break would be nice.

 7   MR. FABRIZIO:  Let's take a quick break.

 8   VIDEOGRAPHER:  Off the record at 3:53.

 9                        (A break was taken.)

10   VIDEOGRAPHER:  Back on the record, 4:04.

11   BY MR. FABRIZIO:

12   Q.  Mr. Titov, I now want to talk about the strike system

13       for repeat infringers that Hotfile put in place after

14       the filing of this action, okay?

15   A.  After.

16   Q.  What constitutes a strike under Hotfile's current

17       policy?

18   A.  Email DMCA notice or takedown by SRA account.

19   Q.  Anything else?

20   A.  And -- yeah, the -- the internal tool I mentioned in the

21       previous deposition.

22   Q.  Anything else?

23   A.  I can't think of anything else.

24   Q.  Okay.  Will the receipt of a notice through any means

25       for a single file result in the user who uploaded that
```

Highly Confidential

1     file getting a strike?

2   MR. THOMPSON:  Objection, vague.

3   A.  I believe so, yes.

4   BY MR. FABRIZIO:

5   Q.  Okay.  If there are multiple files uploaded by the same

6       user in a single notice, does the user receive as many

7       strikes as there are files in the notice, or does that

8       user just receive one strike for that notice?

9   MR. THOMPSON:  Objection.  Vague and overbroad.

10  A.  My belief is the user will receive one strike for it,

11      the DMCA notice.

12  BY MR. FABRIZIO:

13  Q.  Let me just put it into an illustration to make sure we

14      got it:  If Hotfile receives a single notice that

15      contains two files identified as infringing and both

16      were uploaded by the same user, under Hotfile's current

17      policy, that user would get one strike, because there

18      was one notice.  Correct?

19  A.  I believe so, yes.

20  Q.  You understand -- I think we actually talked about it

21      earlier -- that some works or entire pieces of content

22      may be uploaded in multiple different files, correct?

23  MR. THOMPSON:  Objection, vague.

24  BY MR. FABRIZIO:

25  Q.  Do you understand what I mean?

Highly Confidential

Page 329

1     string, numbered HF02304816 through to 7 -- I notice

2     that periodically throughout there is some Bulgarian,

3     but not the areas that I plan on asking about.

4   MR. THOMPSON:  And there's no translation?

5   MR. FABRIZIO:  Not that I know of.

6   MR. THOMPSON:  Okay.

7   BY MR. FABRIZIO:

8   Q.  What I want to focus your attention on, Mr. Titov, is on

9       the page Bates numbered 825 at the top (Pause.)

10        Let me know when you get to 825, and I'll direct you

11      to where it is.  I know that it's hard to follow.

12        Okay, on page 4825, at the very, very top, there is

13      an email from someone at Hotfile saying:

14        "We have a strong repeat copyright offender policy

15      and suspend user's accounts which have been reported

16      2 times for copyright abuse."

17        Do you see that?

18   A.  Yes, I do.

19   Q.  Okay.  The reason I wanted to point that out to you was

20      I believe when we were together for your deposition

21      a couple -- a week or so ago, you indicated that Hotfile

22      currently terminates users based on three strikes, not

23      two, so I'm just trying to get clarification.  What

24      is -- is it a two-strike policy, or a three-strike

25      policy?

Highly Confidential

Page 333

1          If a user has been suspected for getting three

2      strikes, can that user still upload files as an

3      unregistered user of Hotfile?

4  MR. THOMPSON:   Objection.   Calls for speculation, incomplete

5      hypothetical.

6  A.   To the extent -- to the extent that every user can do

7      whatever they want, yes, every person -- to the extent

8      that every person can do whatever they want, it's

9      possible.

10  BY MR. FABRIZIO:

11  Q.   Does Hotfile do anything to prevent a user who's been

12      terminated for getting three strikes from continuing to

13      upload content to Hotfile as an unregistered user?

14  A.   I don't think so.

15  Q.   Does Hotfile do anything to prevent a user who has been

16      terminated for getting three strikes from registering

17      a new account with Hotfile under a different username

18      and email address?

19  A.   I believe that affiliate payment info is also being

20      brought.

21  Q.   Okay.   So I guess I should ask it this way:   For users

22      that have been terminated for getting three strikes,

23      does Hotfile do anything to prevent that user from

24      reregistering with Hotfile if the user uses a different

25      username, email address, and affiliate payment

Highly Confidential

Page 334

1       information?

2   A.  I don't think so.

3   Q.  So an otherwise terminated user could reregister with

4       Hotfile by using a different screen name, a different

5       email address and different affiliate payment

6       information, correct?

7   A.  Correct.

8   Q.  Does Hotfile do anything to prevent a user who has been

9       terminated for three strikes from downloading content

10      from Hotfile as an unregistered user?

11  A.  No, it does not, I believe.

12  Q.  Does Hotfile use a terminated user's IP address in an

13      effort to prevent that user from continuing to upload

14      and download to and from Hotfile?

15  MR. THOMPSON:  Objection.  Overbroad, incomplete

16      hypothetical.

17  MR. FABRIZIO:  Why don't I break it up; it confused me

18      a little bit too.

19  Q.  Does Hotfile use a terminated user's Internet protocol

20      address to prevent that user from continuing to upload

21      files to hotfile.com?

22  MR. THOMPSON:  Objection, assumes facts.

23  A.  No, it does not.

24  BY MR. FABRIZIO:

25  Q.  Does Hotfile use a terminated user's Internet protocol

Highly Confidential

Page 335

1       address to prevent that user from continuing to download

2       files from hotfile.com?

3    MR. THOMPSON:  Same objection.

4    A.  No, it does not.

5    BY MR. FABRIZIO:

6    Q.  All right.  At what specific point in the processing of

7        a notice, whether it's an email notice or an SRA notice,

8        is a strike recorded?

9    A.  When the notice is processed.

10   Q.  Is the strike recorded when the processing begins, or

11       only when the processing has completed?

12   A.  I would say completed.

13   Q.  Completed?

14   A.  Yes.

15   Q.  And forgive me, we may have covered this last time,

16       but -- I know it was following the filing of this

17       action, but when after the filing of this action did

18       Hotfile adopt the strike system?

19   A.  I think it was towards the end of February.

20   Q.  If a user uploads an item that is -- that has already

21       been blocked -- well, strike that.

22           Currently, if Hotfile gets a notice about a file, in

23       addition to deleting the file, Hotfile take the MB5 hash

24       and prevents -- prevents other users from uploading

25       files containing the identical MB5 hash?  Is that

Highly Confidential

Page 336

1      correct.

2   MR. THOMPSON:  Objection, overbroad.

3   A.  I think so.

4   BY MR. FABRIZIO:

5   Q.  Okay.  So is a strike assigned if a user uploads a file

6       whose MD5 hash has already been blocked by Hotfile?

7   A.  No, it does not.

8   Q.  Why not?

9   MR. THOMPSON:  Objection, vague.

10  A.  Because we have no information whether our user is

11      intending to distribute that file.

12  BY MR. FABRIZIO:

13  Q.  If a file uploaded by a user is taken down because of

14      a copyright owner notice, does Hotfile disable identical

15      hash files that are already stored on the Hotfile

16      system?

17  A.  When a hash is being blocked, it's being blocked for all

18      copies of the file for the system.

19  Q.  So when a hash is being blocked because of a copyright

20      owner notice, the particular URL copy that has been

21      noticed is blocked, and future uploads of that identical

22      hash are blocked.  Correct?

23  A.  Correct.

24  Q.  Okay.  Now, what if there are already copies of that

25      file with the identical hash that had been previously

Highly Confidential

Page 341

1    MR. THOMPSON:  Objection.  Asked and answered.

2    A.  Yeah, for the particular URL will be disabled.

3    BY MR. FABRIZIO:

4    Q.  And after disabling that particular URL, would the URLs

5        for the other nine users in my illustration still be

6        able to download that file through the single hash

7        master?

8    A.  Probably, yes.

9    Q.  Currently -- just wait one second; I kind of feel like

10       it's dial-an-expert.  It's kind of like he's here.

11   MR. THOMPSON:  We can't hear what he's saying, though.

12   MR. FABRIZIO:  You can't hear what he's saying; I can.

13       I feel like a newscaster.

14   MR. THOMPSON:  That's right.  Maybe a puppet, huh?

15   BY MR. FABRIZIO:

16   Q.  Okay.  Sorry, my editor was talking.

17       Currently, Hotfile receives DMCA notices by regular

18       mail, correct?

19   A.  Correct.

20   Q.  By facsimile, correct?

21   A.  Correct.

22   Q.  By email, correct?

23   A.  Correct.

24   Q.  And by special rights holder account, correct?

25   A.  Correct.

Highly Confidential

Page 371

1                 HIGHLY CONFIDENTIAL
                CERTIFICATE OF DEPONENT

2

3

     I, ANTON TITOV, hereby certify that I have read the
4    foregoing pages of my deposition of testimony taken in these
     proceedings on Tuesday, December 6, 2011, and, with the
5    exception of the changes listed on the next page and/or
     corrections, if any, find them to be a true and accurate
6    transcription thereof.

7

8

9

10

     Signed:   ...................

11

     Name:   ANTON TITOV

12

     Date:   1/20/2012...........

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential

```
                                                    Page 373

1                    HIGHLY CONFIDENTIAL

2                        E R R A T A

3              Deposition of ANTON TITOV

4
     Page/Line No.        Description        Reason for change
5

6     225:25    Remind me. --> There might be.   Correct transcription

7     234:20    Presentation --> representation  Correct transcription

8     234:20    cost of the --> concept of       Correct transcription

9     261:2     As --> That's                    Correct transcription

10    273:20    Limewire --> Limelight           Correct transcription

11    279:3     is --> would                     Correct transcription

12    293:11    following --> logging            Correct transcription

13    306:5     calls --> holds                  Correct transcription

14    306:6  service at hotfile.com --> to abuse@hotfile.com Correct trans.

15    321:6     would decide it --> with this ID  Correct transcription

16    333:20    brought --> blocked              Correct transcription

17    337:7     file --> file ID                 Correct transcription

18  Signed:   ....................

19  Name:   ANTON TITOV

20  Date:   ....................

21

22

23

24

25
```

Highly Confidential

Page 373

1                    HIGHLY CONFIDENTIAL

2

3                       E R R A T A

4              Deposition of ANTON TITOV

5    Page/Line No.        Description              Reason for change

6    361:25          state --> table            Correct transcription

7    368:7  users stay on our uploads --> users_cowner_upload  Correct trans

8

9

10

11

12

13

14

15

16

17

18    Signed:  ........./...........

19    Name:   ANTON TITOV

20    Date:   1/20/20 12 ..............

21

22

23

24

25

TSG Reporting – Worldwide     (877) 702-9580

Highly Confidential

Page 372

1                    HIGHLY CONFIDENTIAL
                CERTIFICATE OF COURT REPORTER
2

3

     I, Fiona Farson, with TSG Reporting, hereby certify that the
4    testimony of the witness Anton Titov in the foregoing
     transcript, taken on Tuesday, December 6, 2011 was reported
5    by me in machine shorthand and was thereafter transcribed by
     me; and that the foregoing transcript is a true and accurate
6    verbatim record of the said testimony.

7

     I further certify that I am not a relative, employee,
8    counsel or financially involved with any of the parties to
     the within cause, nor am I an employee or relative of any
9    counsel for the parties, nor am I in any way interested in
     the outcome of the within cause.

10

11

12

13

14

     Signed:  ........................
15
     Fiona Farson
16
     Dated: 12/17/2011
17

18

19

20

21

22

23

24

25

H I G H L Y   C O N F I D E N T I A L

Page 374

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20427-WILLIAMS/TURNOFF

- - - - - - - - - - - - - - - - - - - - - - - - - - -

DISNEY ENTERPRISES,
INC., TWENTIETH CENTURY
FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP,
COLUMBIA PICTURES
INDUSTRIES, INC., and
WARNER BROS.
ENTERTAINMENT, INC.,
           Plaintiff,

v.

HOTFILE CORP., ANTON
TITOV, and DOES 1-10,


           Defendants.


HOTFILE CORP.,

           Counterclaimant,

v.

WARNER BROS ENTERTAINMENT
INC.,
           Counterdefendant.

- - - - - - - - - - - - - - - - - - - - - - - - - -
                      VOLUME III
           H I G H L Y   C O N F I D E N T I A L
        (Pursuant to protective order, the following
     transcript has been designated highly confidential)

           30(b)(6) DEPOSITION OF ANTON TITOV
                    Radisson Blu Hotel
                    Sofia, Bulgaria
              Wednesday, December 7, 2011
                    AT:  9:09 a.m.

Job # 44429

H I G H L Y   C O N F I D E N T I A L

Page 375

1    A P P E A R A N C E S

2        ATTORNEY FOR THE PLAINTIFFS:
                JENNER & BLOCK, LLP
3               BY:  STEVEN FABRIZIO, ESQ.
                1099 New York Avenue, NW
4               Washington, DC  20001

5

6

7

         ATTORNEY FOR THE DEFENDANTS HOTFILE CORP.,
8        AND ANTON TITOV:
                FARELLA, BRAUN & MARTEL, LLP
9               BY:  RODERICK THOMPSON, ESQ.
                235 Montgomery Street
10              San Francisco, California  94104

11

12              BOSTON LAW GROUP
                BY:  VALENTIN GURVITS
13              825 Beacon Street
                Newton Center, MA 02459

14

15

16

17

18

19

20

21

22

23

24

25

H I G H L Y   C O N F I D E N T I A L

Page 376

1    Also present:

2    Court reporter:

3            Fiona Farson
             TSG Reporting
4

5    Videographer:

6            Simon Rutson
             TSG Reporting
7

8    Interpreter:

9            Assist. Prof. Boris Naimushin, Ph.D.

10           Elena Alexieva

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

H I G H L Y   C O N F I D E N T I A L

Page 506

1    A.   I would check the database.

2    Q.   What in the database would you check?

3    A.   For any fields or -- I don't know, statuses, or ...

4    Q.   You would look for a table discussing user statuses?

5    A.   Probably, yes, or -- and field table.  I don't know.

6         I'll just look around.

7    MR. FABRIZIO:  Okay.  Why don't we take that break.

8    VIDEOGRAPHER:  Off the record, 3:57.

9                    (A break was taken.)

10   VIDEOGRAPHER:  Back on the record, 4:13.

11   BY MR. FABRIZIO:

12   Q.   Has Hotfile implemented some form of copyright filtering

13        since the institution of this lawsuit?

14   A.   Ask you asking about overall?

15   Q.   Well, I was asking any form of copyright filtering.

16   A.   Do you consider this?

17   Q.   Yeah, I do consider it -- well, let me put it this way;

18        since the institution of this lawsuit, has Hotfile

19        implemented any form of content identification

20        technology?

21   A.   Yes, we started using Vobile.

22   Q.   Anything else?

23   A.   No, I don't think so.

24   Q.   Okay.  And for the record, what is Vobile?

25   MR. THOMPSON:  Objection, vague.

H I G H L Y   C O N F I D E N T I A L

Page 507

1    A.   Vobile is a company that will provide technology for
2         fingerprinting, taking fingerprints from videos --
3         videos, and they -- then they have service for
4         presenting these fingerprints to them, and they will
5         respond if this video matches any video in their
6         database.
7    BY MR. FABRIZIO:
8    Q.   And when they respond, because a finger -- they have
9         a fingerprint match, do they provide information about
10        the copyright owner and instructions from a copyright
11        owner with regard to a particular file?
12   MR. THOMPSON:   Objection, compound and vague.
13   A.   I know for sure that they provide the copyright owner,
14        but I'm not sure about the instructions.
15   BY MR. FABRIZIO:
16   Q.   Okay.  Well, let me put it this way, if there's a -- if
17        upon submission of a fingerprint to Vobile there's
18        a fingerprint match, Vobile sends information back to
19        you?
20   A.   It's more like we are supposed to connect and to check
21        if the submission is processed, but basically that's the
22        idea.
23   Q.   Okay.  And when Hotfile connects in to check, what
24        information does Vobile make available to Hotfile about
25        the file that it was checking?

H I G H L Y   C O N F I D E N T I A L

Page 508

1   A.   It would be an XML file that will either say that there
2        is no match, or a response that will indicate
3        a copyrighted work name, maybe the producer of the
4        copyrighted work, and I believe the offset in the video
5        where the fingerprint starts the partial match.
6   Q.   Does -- anything else?
7   A.   That is what I can think of.
8   Q.   Does the Vobile data indicate whether the file should be
9        allowed for distribution or blocked?
10  A.   Since you are mentioning a certain time, I assume that
11       it does, but I don't have clear memory of it doing so.
12  Q.   Okay.
13  MR. THOMPSON:  Again, Mr. Titov, I know Mr. Fabrizio knows
14       a lot about this, but you should just testify to what
15       you know.
16  MR. FABRIZIO:  Don't give me too much credit.
17  BY MR. FABRIZIO:
18  Q.   Did Hotfile consider using -- well, strike that.
19            If I refer to Vobile's technology as "video
20       fingerprinting technology," will you understand what I'm
21       referring to?
22  A.   Yes, I will.
23  Q.   Is that how you refer to it as well?
24  A.   Let's say yes.
25  Q.   Okay.  Did Hotfile consider using video fingerprinting

H I G H L Y   C O N F I D E N T I A L

Page 509

1       technology prior to the institution of this lawsuit?

2   MR. THOMPSON:  Objection, vague.

3   A.  No, I don't think so.

4   BY MR. FABRIZIO:

5   Q.  Did you have any discussions with your co-shareholders

6       about using any form of video fingerprinting?

7   A.  I don't recall any such discussion.

8   Q.  And, again, I'm talking about video fingerprinting

9       technology, whether it's offered by Vobile or some other

10      supplier, or even developed on your own, I'm speaking of

11      the technology itself; do you understand that?

12  A.  Yes, I understand that.

13  Q.  So, with that clarification, did Hotfile consider

14      deploying video fingerprinting technology in its system

15      prior to the institution of this litigation?

16  A.  I don't remember any such discussion.

17  Q.  Did Hotfile consider using any form of content

18      recognition technology in order to prevent copyrighted

19      content from being uploaded to Hotfile prior to this

20      litigation?

21  MR. THOMPSON:  Objection, vague, to some extent asked and

22      answered.

23  A.  No, I don't remember anything like that.

24  BY MR. FABRIZIO:

25  Q.  Why, after the commencement of this litigation, did

H I G H L Y   C O N F I D E N T I A L

Page 510

1      Hotfile implement the Vobile video fingerprinting

2      technology?

3    A.   We understood this to be important to the plaintiffs.

4    Q.   Is it the case that Hotfile first approached Vobile only

5      after the plaintiff group suggested doing so?

6    MR. THOMPSON:  Objection, assumes facts.

7    BY MR. FABRIZIO:

8    Q.   Let me strike that and ask it this way; after the

9      institution of this litigation, Hotfile representatives

10      met with representatives of the plaintiff group,

11      correct?

12   A.   Correct.

13   Q.   And the plaintiff group's -- well, strike that.

14      I'm trying to be respectful of our discussions.

15   MR. THOMPSON:  Yeah.  I don't see how you can go there.

16   BY MR. FABRIZIO:

17   Q.   And it's a fact, is it not, that in the complaint the

18      plaintiffs filed in this action, the plaintiffs

19      indicated that Hotfile could and should be using video

20      fingerprint technology to prevent copyright

21      infringement, correct?

22   MR. THOMPSON:  Objection.  The document speaks for itself.

23   A.   I have some memories of some language saying that.

24   BY MR. FABRIZIO:

25   Q.   When did Hotfile first approach Vobile?

H I G H L Y   C O N F I D E N T I A L

Page 511

1    A.   I think it was end of April or May.

2    Q.   2011?

3    A.   Correct.

4    Q.   Did Hotfile research or consider the content

5         identification technologies of any other company other

6         than Vobile?

7    VIDEOGRAPHER:  It's calibrating -- whatever that is.

8    MR. FABRIZIO:  Sorry.  For the record, the printer in the

9         room started.

10   MR. THOMPSON:  Calibrating.

11   MR. GURVITZ:  Calibrating.

12   MR. FABRIZIO:  Let me repeat the question.

13   BY MR. FABRIZIO:

14   Q.   Did Hotfile research or consider the content

15        identification technologies of any other company besides

16        Vobile?

17   A.   I don't think Hotfile by itself ever researched any

18        other company.

19   Q.   Did anyone on behalf of Hotfile research other content

20        identification technologies?

21   A.   I'm not sure, but might be our counsel.

22   Q.   Anyone other than your counsel?

23   A.   No, I don't think so.

24   Q.   Did Hotfile take a license from Vobile for its servers?

25   A.   There is a contract.  I'm not sure if it's licensed.

H I G H L Y   C O N F I D E N T I A L

Page 512

1    Q.  Fair enough.  Is there a name for the product or service

2        of Vobile that Hotfile is using?

3    A.  Yes.

4    Q.  What is that name?

5    A.  Mediawise.

6                    (Reporter clarification.)

7    MR. FABRIZIO:  Yes.

8    BY MR. FABRIZIO:

9    Q.  Has Hotfile considered any other products or services

10       offered by Vobile?

11   A.  Yes, we've been informed that Cloud 9 had technology

12       that appeared -- that was announced after we started

13       using Mediawise would be more appropriate for a service

14       like Hotfile.

15   Q.  Okay, and is that product V, Cloud 9?

16   A.  Yes, it is.

17   Q.  The number "9."  Has Hotfile implemented V, Cloud 9?

18   A.  Currently no.

19   Q.  Why not?

20   A.  Mostly developer and especially my time constraint is

21       connected in connection with this litigation, there

22       is -- and has been for some time.  I did implement.

23   Q.  Did you personally implement the Mediawise technology?

24   MR. THOMPSON:  Objection, vague.

25   A.  With some help from Vasil Kolev.

H I G H L Y   C O N F I D E N T I A L

Page 513

1    BY MR. FABRIZIO:

2    Q.   Does Hotfile intend to deploy the V, Cloud 9 technology?

3    A.   Yes, it does intend.

4    Q.   And I'm trying to make sure I understand this correctly;

5         the reason why Hotfile has not yet deployed V, Cloud 9

6         relates to your personally being busy with activities

7         related to this litigation?

8    A.   Yes, that's -- that is part of it.

9    Q.   Is there any other part of it?

10   A.   I can't think of any other part.

11   Q.   Has Hotfile done any testing of the performance of the

12        Mediawise service from Vobile?

13   A.   Can you be more specific?

14   Q.   Sure.  Has Hotfile done any analysis of how well Vobile

15        technology performs?

16   A.   Not for Hotfile's own pleasure.

17   Q.   Has Hotfile conducted such an analysis for the pleasure

18        of anyone else?

19   A.   For the counsel.

20   MR. THOMPSON:  Mr. Titov, please don't testify about

21        anything your counsel asked you to do.

22   A.   Okay.

23   BY MR. FABRIZIO:

24   Q.   But, just to clarify, did Hotfile, or has Hotfile

25        conducted analyses of the performance of Vobile

H I G H L Y   C O N F I D E N T I A L

Page 514

1         technology that it considers to be work product in this

2         case?

3    MR. THOMPSON:  Objection.  I instruct him not to answer.

4         Steve, you can't ask if there is a particular piece

5         of work product.  That obviously goes to disclosing it.

6    MR. FABRIZIO:  Well.  I'm not asking what he found out.

7         I just want to know if there is one.

8    A.   May I end the discussion?

9    MR. FABRIZIO:  Yes.

10   A.   Everything that we've got from Vobile as responses and

11        everything was produced in the case, so I think that

12        Kelly can do some research, whatever -- does that make

13        sense?

14   BY MR. FABRIZIO:

15   Q.   Yes, it makes sense, and there's nothing -- there's no

16        analyses that you're withholding from production, is

17        that what you're saying?

18   MR. THOMPSON:  If --

19   A.   We produced the data, not the analysis, but --

20   BY MR. FABRIZIO:

21   Q.   Okay --

22   A.   -- any search analysis that we performed can be

23        performed on this data for any period or any...

24   MR. FABRIZIO:  I understand, okay, so...

25   MR. THOMPSON:  We should make -- just make it clear for the

H I G H L Y   C O N F I D E N T I A L

Page 515

1           record, Mr. Fabrizio, I will not allow the witness to

2           answer the question as to what analysis he has performed

3           at the request of his counsel --

4      MR. FABRIZIO:  No, I wasn't asking him --

5      MR. THOMPSON:  -- whether on Vobile or any other subject.

6      MR. FABRIZIO:  I wasn't asking him what analyses he

7           performed.  I was simply trying to ascertain whether as

8           a matter of fact there is something that defendants

9           consider work product.  You would have to disclose that

10          much in a privilege log.

11     MR. THOMPSON:  Well, Mr. Fabrizio, this -- this is our work

12          product, and we're not going to disclose it, period, I'm

13          not going to tell you what it is.

14     MR. FABRIZIO:  I'm not asking what it is.  I'm just asking

15          if it is.

16     MR. THOMPSON:  Well, you're free to ask him any factual

17          information you want which does not disclose work

18          product communications or work product analysis.

19     MR. FABRIZIO:  Okay.

20     A.  I don't think Hotfile ever created documents as part of

21          this analysis.

22     MR. THOMPSON:  Okay.  That does help.

23     BY MR. FABRIZIO:

24     Q.  When did Hotfile begin using the Vobile Mediawise

25          technology on the live Hotfile site?

H I G H L Y   C O N F I D E N T I A L

Page 516

1     A.   I think it was July or June -- July or August this year,

2          but, again, the records that we've produced will give

3          a more correct date.

4     Q.   Is the contract -- strike that.

5              Is the contract with Vobile between Vobile and one

6          of the Hotfile entities?

7     A.   I believe it is actually between Vobile and Lemuria.

8     Q.   Why is the contract for Mediawise technology that is

9          deployed in Hotfile -- well, strike that.

10             Why is it that Lemuria entered into the contract

11         with Vobile for technology that is deployed in Hotfile?

12    A.   Because it's normal for Lemuria to provide hosting and

13         other services to Hotfile and sometime to pay --

14         sometimes to pay Hotfile's bills, so that seems --

15         seemed like a right choice.

16    MR. FABRIZIO:   I'm going to mark as Titov exhibit 153

17         a document numbered HF2868265 through 273, titled

18         "MEDIAWISE PUBLISHER LICENSE AGREEMENT" between Vobile

19         and Lemuria.

20         (Titov exhibit 153 marked for identification)

21    BY MR. FABRIZIO:

22    Q.   And, Mr. Titov, all I want you to do is confirm for the

23         record that this is the contract with Vobile that you've

24         been testifying about.

25    A.   Yes, I believe that is the contract.

H I G H L Y   C O N F I D E N T I A L

Page 517

1   Q.  And if you turn to the page Bates numbered 271, page 7

2       of the contract, is that your signature?

3   A.  Yes, this is my signature.

4   Q.  I'd like to try and understand the Hotfile

5       implementation of the Vobile Mediawise technology, and

6       this is probably most understandably done just by using

7       an illustration -- is that okay with you?

8   A.  Yes.

9   Q.  Okay.  Does -- as a preliminary, does Hotfile send every

10      uploaded file to Vobile to compare a fingerprint?

11  A.  Mediawise product is created to work only with video

12      files, so I think we should be talking about video

13      files, right?

14  Q.  If that's your understanding -- or let me ask it this

15      way; is it your understanding that the Mediawise product

16      works only with video files?

17  A.  That is my understanding.

18  Q.  Okay.  And did Vobile provide Hotfile with software that

19      runs on the Hotfile servers as part of the content

20      identification process?

21  A.  That is correct.

22  Q.  And so does Hotfile send all newly uploaded video files

23      to the Vobile software for fingerprinting?

24  A.  I think a more accurate statement would be Hotfile sends

25      part of every recorded video file to Vobile, and that

H I G H L Y   C O N F I D E N T I A L

Page 518

1       may be our overstatement, just to stay away from

2       absolute, but that is how it designs to work.

3   Q.  The way this Vobile technology works, Hotfile chooses

4       which files to send to the Vobile application for

5       fingerprinting, correct?

6   A.  Correct.

7   Q.  Okay.  But that's not Vobile's choice, that's Hotfile's

8       choice?

9   A.  Correct.

10  Q.  And, currently, Hotfile sends, or tries to send, every

11      video file that is uploaded to the Vobile application?

12  A.  That is the intent of the system, yes.

13  Q.  But you said "parts of file," did you mean that because

14      some content files are uploaded in multiple parts?

15  A.  No, I meant that Mediawise product is designed to be

16      built -- built by minutes of video that are sent to

17      Vobile, and they advised us not to send a whole video,

18      but to cut a piece of film and to send for fingerprint.

19                  (Reporter clarification.)

20          Fingerprinting.

21  Q.  The fingerprint of the files that are uploaded to

22      Hotfile are calculated on Hotfile's servers using the

23      Vobile application on Hotfile's servers, correct?

24  A.  Correct.

25  Q.  Okay.  Does Hotfile send the entire file to the Vobile

H I G H L Y   C O N F I D E N T I A L

Page 519

```
 1        application on its servers for fingerprinting, or does
 2        Hotfile only send a piece of the file to the Vobile
 3        application?
 4   A.   It is just a piece of the file as recommended by Vobile
 5        themselves.
 6   Q.   Okay.  How does Hotfile decide what piece of a file to
 7        send to the Vobile application on the Hotfile server?
 8   A.   I don't know for sure, but my general belief is that
 9        a starting place in the file was chosen or something
10        like that, from second to third minute or something like
11        that --
12   MR. FABRIZIO:  "Starting place in the file."
13                  (Reporter clarification.)
14   BY MR. FABRIZIO:
15   Q.   And does Hotfile decide what the piece of the file is
16        that it sends to Vobile, or does the Vobile application
17        from the Hotfile server choose the piece of the file to
18        fingerprint?
19   MR. THOMPSON:  Objection, incomplete, vague.
20   A.   It is the Hotfile software that decides and we've been
21        given the understanding that Vobile's application
22        doesn't have this functionality for Mediawise products.
23   BY MR. FABRIZIO:
24   Q.   Okay.  How does Hotfile decide what files are video
25        files?
```

H I G H L Y   C O N F I D E N T I A L

Page 520

```
 1    A.   I think that is based on the extension of the file.

 2    Q.   What if a file is an archive file, such as a RAR or

 3         a ZIP?

 4    A.   Hotfile would try to extract the archive and, if a video

 5         file was found inside, it will be fingerprinted --

 6         fingerprinted.

 7    Q.   So the code that Hotfile wrote to implement the

 8         Mediawise technology attempts to unpack RAR and ZIP

 9         files to look at the actual contents of the file?

10    A.   That is correct.

11    Q.   Okay.  What if a -- if a content file doesn't have

12         a file extension?

13    A.   I don't think it will be processed by Vobile.

14    Q.   Does Hotfile send to the Vobile application on a server

15         files that do not contain file extensions?

16    A.   I don't believe so.

17    Q.   How does Hotfile address uploaded files that are

18         password protected?

19    A.   I think Hotfile doesn't check them, since it can't

20         extract them.

21    Q.   And is that the same answer for files that are

22         encrypted?

23    A.   Yes, with the additional information, sometimes we can

24         spot an -- an encrypted file as opposed to obvious RAR

25         or ZIP extension.
```

H I G H L Y   C O N F I D E N T I A L

Page 521

1   Q.   Does Hotfile make uploaded files available -- well,
2        strike that.
3             Does Hotfile prevent uploaded video files from
4        being downloaded by users before fingerprinting is
5        completed?
6   A.   I don't believe so.
7   Q.   So Hotfile allows files -- video files to be downloaded
8        while the Vobile fingerprinting process is taking place?
9   MR. THOMPSON:   Objection, vague.
10  A.   I think so, yes.
11  BY MR. FABRIZIO:
12  Q.   Since Hotfile has first implemented Vobile on the live
13       system, I think you said around August, has Hotfile
14       changed the implementation?
15  A.   I think it's fair to say that there were some initial
16       periods of testing and fixing and, after that, I don't
17       recall any changes.
18  Q.   So, for video files, where the fingerprints are
19       calculated on the Hotfile server through the Vobile
20       application, that fingerprint is then transmitted to
21       the Vobile server?
22  A.   That is correct.
23  Q.   And then Vobile compares that fingerprint to a database
24       of fingerprints that Vobile maintains?
25  A.   That is my understanding.

H I G H L Y   C O N F I D E N T I A L

Page 522

1    Q.   Okay.  And if there is a match, information is provided

2         to Hotfile about the file?

3    A.   That is correct.

4    Q.   If there is a match, what does Hotfile do with respect

5         to that file?

6    A.   I think that a special status in the upload table is

7         assigned -- assigned to this particular upload, and the

8         status -- status -- not status -- yeah, status of 2 is

9         assigned to the hash or in the file table for the

10        corresponding file ID.

11   Q.   Okay.  So if a -- if there is a fingerprint match,

12        Hotfile treats that file as a file that should be

13        blocked?

14   A.   That is correct --

15   Q.   And does -- I'm sorry.

16   A.   -- to the extent as we talked on the last ESI deposition

17        that uploading user can still download his file.

18   Q.   That was one of my questions.  Okay.  Let me take this

19        in pieces; Hotfile still -- well, strike that.

20             Are there any differences in how Hotfile blocks

21        a file due to a DMCA notice, as opposed to a Vobile

22        identification?

23   A.   Yes.

24   Q.   Can you describe the differences?

25   A.   Basically the differences is what I just described in

H I G H L Y   C O N F I D E N T I A L

Page 523

1        the database, and the result that follows these

2        differences is that the uploading user of the file can

3        download the file back.

4    Q.  Through what means can the uploading file continue to

5        download the file back?

6    A.  By the means Hotfile provides to download files.

7    Q.  So the uploading user can use the URL to download the

8        file?

9    A.  Yes, only when he's logged to it, his user name and

10        password.

11   Q.  Thank you.  And the uploading user can download the file

12        by means of the web interface, if the user is logged in

13        with his or her password?

14   A.  Correct.

15   Q.  Can the user who uploaded the file download the file if

16        he or she is not logged in using his or her Hotfile

17        credentials?

18   A.  I don't believe so.

19                (Mr. Stoyanov enters the room.)

20   MR. FABRIZIO:  Hello.

21   MR. THOMPSON:  This is Mr. Stoyanov.

22   MR. FABRIZIO:  Pardon me.  I'm kind of wired here.  Very

23        nice to meet you.

24   MR. THOMPSON:  We didn't mean to interrupt.

25   MR. FABRIZIO:  No, that's okay.  Of course it now puts more

H I G H L Y   C O N F I D E N T I A L

Page 524

1       pressure on me to get his name right, at least once in

2       a while.

3   MR. THOMPSON:  Also be on your best behavior.

4   MR. FABRIZIO:  I'm always on my best behavior.

5           It's very nice to meet you, sir.

6   BY MR. FABRIZIO:

7   Q.  Can users other than the uploading user download the

8       file by using the URL for the file?

9   A.  No, but to the extent when I say "user," I mean

10      combination of user name and password, and not person.

11  Q.  Of course.  So I mean -- yes, let me put it this way;

12      somebody with the uploading user's Hotfile credentials

13      and the URL can download the file, correct?

14  A.  That's probably correct.

15  Q.  But a user that does not have the uploading user's

16      Hotfile credentials cannot use the URL to download the

17      file, correct?

18  A.  Correct.

19  Q.  If a file is determined to be blocked by virtue of the

20      Vobile technology, does Hotfile continue to allow hash

21      identical files to be uploaded to the Hotfile servers?

22  A.  Yes, but they're -- they will work the same way as

23      I just described.

24  Q.  So they're -- they -- a hash identical file subsequently

25      uploaded will continue to be treated as a Vobile blocked

H I G H L Y   C O N F I D E N T I A L

Page 525

```
 1        file, meaning that the uploading user can download it,

 2        but users without the uploading user's credentials will

 3        not be able to download it?

 4   A.   That's correct.

 5   Q.   Once Hotfile determines through the Vobile technology

 6        that a file is to be blocked, does Hotfile -- does

 7        Hotfile have to send subsequent hash identical files to

 8        Vobile for fingerprinting?

 9            That may not have been the clearest question in the

10        world.  I'll try it again --

11   A.   I understood.  You're asking if we are sending

12        subsequent files with the same hash to Vobile.

13   Q.   Yes.  I guess what I'm trying to figure out is, once

14        you've identified a file in your -- in your database as

15        identified as being blocked by Vobile, do you identify

16        subsequent files based on their hash, or do you continue

17        to fingerprint subsequent video files?

18   A.   I'm not actually sure, but either of these will work on

19        the file.

20   Q.   And has Hotfile -- strike that.

21            Has the use of the Vobile technology negatively

22        impacted the technical performance of the Hotfile

23        system?

24   A.   In the current implementation, besides the fact that we

25        have -- I don't know actually how many, maybe two
```

H I G H L Y   C O N F I D E N T I A L

Page 526

```
 1        servers dedicated for this, I don't think so.
 2   Q.   Does Hotfile keep logs of -- strike that.
 3            Does Hotfile keep records in any way of the Vobile
 4        responses for files Hotfile sends for fingerprinting;
 5        so, in other words, is there a place where there are
 6        records that a file was sent for fingerprinting and no
 7        match was found?
 8   A.   I'm not sure, but you have all the produced data
 9        actually taken.
10   Q.   Have you formed a personal opinion as to the
11        effectiveness of the Vobile technology in identifying
12        copyrighted video content?
13   MR. THOMPSON:  Objection, calls for opinion.  You can
14        answer.
15   A.   No, I don't think I did.
16   BY MR. FABRIZIO:
17   Q.   Either way -- well, strike that.
18            Have you formed an opinion -- well, strike that.
19            Have you personally given any consideration to
20        whether the Vobile technology is effective in
21        identifying copyrighted video content?
22   A.   No, I don't think so.
23   Q.   Has Hotfile been receiving fewer DMCA notices from video
24        content owners since it began using the Vobile
25        technology?
```

HIGHLY CONFIDENTIAL

Page 553

1                    HIGHLY CONFIDENTIAL
                CERTIFICATE OF COURT REPORTER
2

3
    I, Fiona Farson, with TSG Reporting, hereby certify that the
4   testimony of the witness Anton Titov in the foregoing
    transcript, taken on Wednesday, December 7, 2011 was
5   reported by me in machine shorthand and was thereafter
    transcribed by me; and that the foregoing transcript is a
6   true and accurate verbatim record of the said testimony.

7
    I further certify that I am not a relative, employee,
8   counsel or financially involved with any of the parties to
    the within cause, nor am I an employee or relative of any
9   counsel for the parties, nor am I in any way interested in
    the outcome of the within cause.
10

11

12

13

14
    Signed: _____
15
    Fiona Farson
16
    Dated: 12-19-2011
17

18

19

20

21

22

23

24

25

H I G H L Y   C O N F I D E N T I A L

Page 552

1               HIGHLY CONFIDENTIAL
                CERTIFICATE OF DEPONENT
2

3

       I, ANTON TITOV, hereby certify that I have read the
4      foregoing pages of my deposition of testimony taken in these
       proceedings on Wednesday, December 7, 2011, and, with the
5      exception of the changes listed on the next page and/or
       corrections, if any, find them to be a true and accurate
6      transcription thereof.

7

8

9

10
       Signed:   _____
11
       Name:     ANTON TITOV
12
       Date:     1/20/2012
13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 554

1              HIGHLY CONFIDENTIAL

2    NAME OF CASE: Disney Enterprises Inc. v. Hotfile Corp.

3    DATE OF DEPOSITION: 12-7-2011

4    NAME OF WITNESS: ANTON TITOV

5    Reason Codes:

6         1.  To clarify the record.

7         2.  To conform to the facts.

8            3.  To correct transcription errors.

9    Page _396_ Line _16_ Reason _3_

10   From _no_____ to ____to_____

11   Page _402_ Line _13_ Reason _3_

12   From _Googles_____ to ___cookies___

13   Page _402_ Line _15_ Reason _3_

14   From _Googles_____ to ___cookies___

15   Page _418_ Line _5_ Reason _3_

16   From _user field field__ to _user input field_

17   Page _439_ Line _24_ Reason _3_

18   From _Lucyan_____ to ____Luchian____

19   Page _458_ Line _5_ Reason _5_

20   From _only the_____ to __only if the__

21   Page _483_ Line _19_ Reason _3_

22   From _to upload down the file from_ to _will pull down the file from_

23

24                        _____

25                        ANTON TITOV

H I G H L Y   C O N F I D E N T I A L

Page 554

1                    HIGHLY CONFIDENTIAL

2     NAME OF CASE: Disney Enterprises Inc. v. Hotfile Corp.

3     DATE OF DEPOSITION: 12-7-2011

4     NAME OF WITNESS: ANTON TITOV

5     Reason Codes:

6          1.  To clarify the record.

7          2.  To conform to the facts.

8            3.  To correct transcription errors.

9     Page __436__ Line __18__ Reason __3__

10    From __Lucyan_____ to _____Luchian_____

11    Page __436__ Line __23__ Reason __3__

12    From __Lucyan_____ to _____Luchian_____

13    Page __439__ Line __24__ Reason __3__

14    From __Lucyan_____ to _____Luchian_____

15    Page __439__ Line __2__ Reason __3__

16    From __Lucyan's_____ to _____Luchian's_____

17    Page _____ Line _____ Reason _____

18    From _____ to _____

19    Page _____ Line _____ Reason _____

20    From _____ to _____

21    Page _____ Line _____ Reason _____

22    From _____ to _____

23

24                              _____

25                                ANTON TITOV

TSG Reporting - Worldwide

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants.*

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*

_____/

## PLAINTIFFS' THIRD SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT HOTFILE CORP.'S INTERROGATORY NO. 1

Pursuant to Federal Rule of Civil Procedure 33 and Federal Rule of Civil Procedure 26(e)(1), Plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment Inc., (collectively, "Plaintiffs") hereby provide the following Third Supplemental

1

Responses, in Part, to Interrogatory Number 1 in Defendant Hotfile Corporation's ("Defendant" or "Hotfile") First Set of Interrogatories (the "First Interrogatories"):

## GENERAL OBJECTIONS

1.     Plaintiffs object to the First Interrogatories to the extent that they call for the disclosure of information subject to the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine. Any inadvertent disclosure of such information shall not be deemed a waiver of the attorney-client privilege, the joint defense or common interest privilege, the attorney work product immunity doctrine, or any other applicable privilege or doctrine.

2.     Plaintiffs object to the First Interrogatories to the extent that they call for the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B). Any inadvertent disclosure of such information shall not be deemed a waiver of the protection against discovery afforded by Rule 26(b)(4)(B) or any other applicable privilege or doctrine.

3.     Plaintiffs object to the First Interrogatories to the extent that they call for the disclosure of information beyond that required by the Federal Rules of Civil Procedure or the Local Rules of the Court.

4.     Plaintiffs object to the First Interrogatories to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence, and are ambiguous, duplicative, vague, oppressive, harassing, overbroad or unduly burdensome.

5.     Plaintiffs object to the First Interrogatories to the extent that they call for information or documents created or maintained by Defendants, for information or documents already in Defendants' possession, or for information readily accessible to Defendants in the public record, on the grounds that it is unduly burdensome, oppressive, and harassing, and would needlessly increase the cost of litigation.

6.      Plaintiffs object to the First Interrogatories to the extent that they are not limited to time periods reasonably related to the matters at issue in this litigation.  Specifically, Plaintiffs object to the First Interrogatories to the extent that they seek the production by Plaintiffs of documents or materials prepared, generated, duplicated, communicated, distributed, or transmitted prior to Defendants' commencement of operations on Hotfile, as overbroad, unduly burdensome, and seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence.  To the extent the Plaintiffs respond to the First Requests, Plaintiffs will produce non-privileged responsive documents created on or after January 1, 2009, as this date is several months prior to Defendants' commencement of operations on the Hotfile website.  Plaintiffs are willing to meet and confer with Defendants regarding whether a search for documents prior to that date may be appropriate with respect to specific items or requests.

9.      Plaintiffs object to the First Interrogatories to the extent they seeks unavailable information or information not currently in Plaintiffs' possession, custody or control.

10.     Plaintiffs object to the First Interrogatories to the extent that they seek proprietary and confidential information not relevant to this proceeding, including but not limited to information related to third parties.

11.     Plaintiffs object to the First Interrogatories to the extent they seek the production of confidential materials or materials relating to the Plaintiffs' trade secrets absent the entry of suitable protective order.

Plaintiffs incorporate these General Objections into each specific response as if fully set forth in each response.

## OBJECTIONS TO SPECIFIC DEFINITIONS

1.      Plaintiffs object to the Interrogatories' definition of "IDENTIFY" insofar as it exceeds a responding party's obligations under the Federal Rules of Civil Procedure.

2.      Plaintiffs object to the Interrogatories' definitions of "RELATE," "RELATES," "RELATING TO," "REFER," "REFERRING," as vague, unduly burdensome, and as calling for

3

attorney work product insofar as it requires Plaintiffs to determine what "show[s]" or "evidenc[es]" a particular proposition.

3.      Plaintiffs object to the Interrogatories' definitions of The terms "PLAINTIFFS," "YOU," "YOUR" or "THE STUDIOS" insofar as they seek to require Plaintiffs to provide interrogatory responses and information for entities other than the Plaintiffs, such as their affiliates and their law firms in matters other than the present action. Information in the possession of third parties, such as Plaintiffs' affiliates, agents, and outside counsel other than counsel in the present action, is irrelevant and unduly burdensome to obtain. Plaintiffs will respond on behalf of the Plaintiff entities.

## RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES
## INTERROGATORY NO. 1:

IDENTIFY all files that were or are available through hotfile.com that YOU allege infringe YOUR copyrights, including each of YOUR works that YOU allege the file infringed, identified by name and United States copyright registration number, the URLs at hotfile.com where YOU allege that file was available, and the time period when YOU allege the file was present on hotfile.com.

## PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSE AND OBJECTIONS TO
## INTERROGATORY NO. 1:

Pursuant to Fed. R. Civ. P. 26(e)(2) and the Court's September 14, 2011 Order, Plaintiffs hereby provide the following second supplemental response to Interrogatory No. 1. Other than the objections stated in Plaintiffs' previous responses to Interrogatory No. 1, which are expressly incorporated herein, Plaintiffs' response below supplements and supersedes Plaintiffs' previous responses to Interrogatory No. 1. Plaintiffs additionally incorporate each General Objection and Objection to Specific Definitions stated above as if set forth herein.

Plaintiffs further object because, in the brief period of time permitted by the Court and the parties' stipulation, it is unduly burdensome and impossible as a practical matter for Plaintiffs to identify each infringing file on Hotfile.com for every work owned by the Plaintiffs ever since

4

Hotfile began operating.  The data necessary to identify such infringing files are, and have been, in the possession of Defendants; Plaintiffs only recently obtained access to certain of those data records pursuant to Court order, and still have not obtained access to the content files themselves.  Given additional time, Plaintiffs would be able to identify innumerable additional instances of copies of Plaintiffs' works on Hotfile.com.  Further, given the opportunity to review the content files, Plaintiffs will be able to make a more definitive assessment of particular files that appear to infringe Plaintiffs' copyrights, and thus expressly reserve their right to supplement this response after Defendants have produced the content files for each file identified in Schedule A hereto.  Finally, insofar as Defendants' own electronic records contain the information sought by this Interrogatory, particularly with respect to the dates on which each infringing file was available on the Hotfile Website, Plaintiffs object that this Interrogatory is an impermissible attempt to transfer to Plaintiffs the burden of analyzing data that Defendants can just as easily analyze themselves.

**BY EACH PLAINTIFF INDIVIDUALLY, IN RELEVANT PART:**

Subject to and without waiving the foregoing objections, Plaintiffs state as follows: Pursuant to the schedule set by the Court and the parties' stipulation, Plaintiffs have had only a very limited period of time to attempt to identify instances of Plaintiffs' copyrighted works available on Hotfile.com.  In addition to those identified in this response, there are innumerable additional instances that Plaintiffs would have identified with the benefit of additional time. Infringing copies of these same copyrighted works, as well as infringing copies of new and additional Plaintiffs' works, are also being uploaded to Hotfile.com on an ongoing basis. Moreover, Plaintiffs have limited their response to this Interrogatory to copyrighted works the rights to which are held by one of the named Plaintiff companies.  There are untold numbers of additional copyrighted motion pictures and television shows the rights to which are held by Plaintiffs' affiliates that are being infringed through Hotfile.com.

Schedule A hereto identifies, by name and Hotfile.com URL, those files on Hotfile.com (which Plaintiffs have been able to identify in the time permitted) that Plaintiffs believe

correspond to copies of Plaintiffs' copyrighted movies and television shows that have been infringed and/or are continuing to be infringed through Hotfile.com. Pursuant to Defendants' data production HF02835588, collectively, these copyrighted works have been infringed through Hotfile.com more than 30 million times.

Many of the files (URLs) on Schedule A have been identified through data recently produced by Defendants pursuant to Court order and for which Defendants have not yet produced copies of the actual content files represented by the URLs. Plaintiffs have identified these URLs based on the information (metadata) contained in the data produced by Defendants, including the titles of the works and other information about the files contained in Defendants' data. Plaintiffs have requested that Defendants produce copies of the actual content files represented by each URL identified on Schedule A. As necessary, Plaintiffs will supplement this Interrogatory response upon review of the content files produced by Defendants.

For each copyrighted work identified in Schedule A, Schedule B hereto identifies the Plaintiff that holds the rights to the work and the copyright registration number assigned to the work by the United States Copyright Office.

With respect to the Interrogatory's request to provide "the time period when YOU allege the file was present on hotfile.com," pursuant to Fed. R. Civ. P. 33(d), Plaintiffs refer Defendants to information regarding the upload date and last download date of each file in Defendants' data production HF02835588, which contains information regarding when each such file was available.

## PLAINTIFFS' THIRD SUPPLEMENTAL RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 1:

Pursuant to Fed. R. Civ. P. 26(e)(2), Plaintiffs hereby provide the following third supplemental response to Interrogatory No. 1. Plaintiffs incorporate the entirety of their Second Supplemental Response and Objections to Interrogatory No. 1, as set forth above. Plaintiffs additionally incorporate each General Objection and Objection to Specific Definitions stated

above as if set forth herein. Plaintiffs' response here supplements the previous response for the Plaintiffs Twentieth Century Fox Film Corporation ("Fox"), Universal City Studios Productions LLLP ("Universal"), Columbia Pictures Industries, Inc. ("Columbia"), and Warner Bros. Entertainment Inc. ("Warner Bros."), by attaching amended versions of Schedules A and B for each of those Plaintiffs.

**BY FOX, UNIVERSAL, COLUMBIA, AND WARNER BROS., EACH OF THOSE PLAINTIFFS INDIVIDUALLY, IN RELEVANT PART:**

Subject to and without waiving the foregoing objections, Plaintiffs state as follows:

Plaintiffs incorporate their Second Supplemental Response to Interrogatory No. 1 in its entirety. Amended versions of Schedules A and B are attached here. Schedules A and B contain the information specified in the Second Supplemental Response.

Dated: October 11, 2011          By: _____
                                      Duane C. Pozza

GRAY-ROBINSON, P.A.                   JENNER & BLOCK LLP
Karen L. Stetson (FL Bar No. 742937)  Steven B. Fabrizio (*Pro Hac Vice*)
1221 Brickell Avenue                  Duane C. Pozza (*Pro Hac Vice*)
Suite 1600                            Luke C. Platzer (*Pro Hac Vice*)
Miami, FL 33131                       1099 New York Ave., N.W.
Phone: 305-416-6880                   Suite 900
Fax: 305-416-6887                     Washington, DC 20001
                                      Phone: 202-639-6000
MOTION PICTURE ASSOCIATION            Fax: 202-639-6066
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403

*Attorneys for Plaintiffs*

7

**VERIFICATION OF COLUMBIA PICTURES INDUSTRIES, INC.**

I, Jared Jussim, am a corporate officer of Plaintiff Columbia Pictures Industries, Inc. and am authorized to execute this verification on its behalf.

I have reviewed the interrogatory responses contained in Plaintiff's Third Supplemental Responses and Objections to Defendant Hotfile Corp.'s Interrogatory No. 1. I am informed and believe and on that basis allege that the matter started therein are true as to Plaintiff Columbia Pictures Industries, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 11 , 2011, at Culver City , CA

Signature: _____

Name (Print): Jared Jussim

Title:         Executive Vice President,
               Legal Affairs and
               Assistant Secretary

## VERIFICATION OF TWENTIETH CENTURY FOX FILM CORPORATION

Information in Plaintiffs' Third Supplemental Responses and Objections to Defendant

Hotfile Corp.'s Interrogatory No. 1 was provided by me and/or gathered at my direction from

corporate records and personnel. I have reviewed the responses. I declare under penalty of

perjury of the laws of the United States that the foregoing responses as to Plaintiff Twentieth

Century Fox Film Corporation are true and correct to the best of my knowledge and belief, based

on my review of such information.


Executed on October _11_ , 2011, at _Los Angeles_, CA

Signature:     _Ronald C. Wheeler_

Name (Print): _Ronald C. Wheeler_

Title:        _Assistant Secretary_

**VERIFICATION OF UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP.**

I, Gabriela Kornzweig, pursuant to Fed. R. Civ. P. 33(b)(1) and 28 U.S.C. § 1746 declare as follows:

I am Secretary for Universal City Studios Productions LLLP. On behalf of Universal City Studios Productions LLLP, I have reviewed the interrogatory responses contained in Plaintiffs' Third Supplemental Responses and Objections to Defendant Hotfile Corp.'s Interrogatory No. 1. I verify that the answers of Universal City Studios Productions LLLP contained in the foregoing Supplemental Responses to Defendants' First Set of Interrogatories are true and correct to the best of my knowledge and belief, that I am authorized to so verify and that as to matters stated therein that are not within my personal knowledge I have relied upon information prepared by persons whom I believe to be reliable, based on information and records maintained by Universal City Studios Productions LLLP in the regular and ordinary course of its business.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 11, 2011, at Universal City, CA.

Signature: _____

Name (Print): Gabriela Kornzweig

Title: Secretary

## VERIFICATION OF WARNER BROS, ENTERTAINMENT INC.

I, Amanda Hicks, declare as follows:

I am the authorized agent for Plaintiff Warner Bros. Entertainment Inc. I have read the foregoing Plaintiffs' Third Supplemental Responses and Objections to Defendant Hotfile Corp.'s Interrogatory No. 1 and know its contents.

I am informed and believe that the matters stated in the foregoing document are true.

Executed on October 11, 2011, at Warner Bros. Studios, Burbank, California.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signature:

Name:        Amanda Hicks

Title:        Manager, Television Production
              Insurance

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants.*

_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*

_____/

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th Day of October, 2011, I served the foregoing Plaintiffs'
Third Supplemental Responses and Objections to Defendant Hotfile Corp.'s First Set of
Interrogatories on all counsel of record on the attached Service List via their email address(es) as
set forth on the Court's CM/ECF filing system per the parties' service agreement, as indicated on
the attached Service List.

I further certify that I am admitted *pro hac vice* in the United States District Court for the
Southern District of Florida and certify that this Certificate of Service was executed on this date
at Washington, D.C.

Duane C. Pozza

CASE NO. 11-20427-WILLIAMS/TURNOFF

**SERVICE LIST**

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA 94104
Phone: 415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*
**Served via electronic mail by agreement**

BOSTON LAW GROUP
Valentin Gurvits
825 Beacon Street, Suite 20
Newton Center, MA 02459
Phone: 617-928-1800
Fax: 617-928-1802
vgurvitz@bostonlawgroup.com

*Attorney for Defendants Hotfile Corp. and Anton Titov*
**Served via electronic mail by agreement**

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL 33134
Phone: 305-476-7101
Fax: 305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*
**Served via electronic mail by agreement**

9

# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants.*

_____/

## INITIAL DISCLOSURES OF DEFENDANTS
## HOTFILE CORPORATION AND ANTON TITOV

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendants Hotfile

Corporation and Anton Titov (collectively "Hotfile") make the following initial disclosures to

the best of their knowledge and based on information reasonably available at this time.  These

initial disclosures are made with the understanding that Hotfile's investigation is ongoing, and

Hotfile reserves the right to supplement and/or amend these disclosures as Plaintiffs' claims are

clarified and as discovery proceeds.

These disclosures are not intended to be, and do not constitute, admissions as to the

relevance or admissibility of the information disclosed, and are made without any waiver of

attorney-client privilege, work-product protection, or any other applicable protection or

immunity.  Hotfile also reserves the right to object to the admissibility of any information

HIGHLY CONFIDENTIAL

CASE NO. 11-20427-JORDAN

disclosed.  Furthermore, Hotfile makes these initial disclosures without waiving in any manner:
(1) the right to object on any basis permitted by law to the use of any initial disclosure
information contained herein for any purpose in any subsequent proceeding in this or any other
action; (2) the right to object on any basis permitted by law to any discovery requests or
proceeding involving or related to the subject matter of these initial disclosures; and (3) the right
to object on the grounds of privilege, hearsay, competence, relevance, or any other proper
ground.  Hotfile reserves the right to supplement or amend as may be appropriate.

1.     **Rule 26(a)(1)(A)(i) — Individuals Likely to Have Discoverable Information Hotfile
       May Use to Support its Claims and Defenses**

       Based on the information presently available to Hotfile and its investigation to date,
Hotfile believes the individuals identified below either have knowledge of relevant facts or are in
possession of discoverable information that Hotfile may use to support its claims or defenses.
Hotfile reserves the right to supplement this list based on any assertion of counterclaims by
Hotfile, the information learned during discovery, and Hotfile's continuing investigation.  By
identifying herein the following individuals, Hotfile does not waive its right to object to the
deposition of these individuals where proper, and particularly does not waive any right of
individuals to proper service under the Hague Convention or otherwise.  All individuals listed
below whose contact information states "counsel for Hotfile" may be contacted only through
trial counsel for Hotfile at Farella Braun + Martel, 235 Montgomery Street, San Francisco, CA
94104.  The general subject matter of information listed for each individual does not in any way
limit Hotfile's right to question or call any individual listed to testify regarding any other subject.

CASE NO. 11-20427-JORDAN

| Name | Contact Information | Area of Knowledge |
|---|---|---|
| Anton Titov | c/o counsel for Hotfile | Operation of Hotfile's website; allegations of infringement and notice; and DMCA policy and procedures. |
| Rumen Stoyanov | c/o counsel for Hotfile | Operation of Hotfile's website; allegations of infringement and notice; and DMCA policy and procedures. |
| Atanas Vangelov | c/o counsel for Hotfile | Operation of Hotfile's website; allegations of infringement and notice; and DMCA policy and procedures. |
| Constantin Luchian | c/o counsel Ryan C. Siden rsiden@sidenlaw.com | Hotfile's DMCA compliance |
| Andrei Ianakov | c/o counsel for Hotfile | Hotfile e-mail support, DMCA support, e-mail inquiries |
| Deian Chuburov | c/o counsel for Hotfile | Operation of Hotfile's website |
| Vasil Kolev | c/o counsel for Hotfile | Operation of Hotfile's website |
| Stanislav Manov | c/o counsel for Hotfile | Hotfile's DMCA compliance |
| Michael Bentkover | Michael Bentkover Warner Bros. Entertainment Inc. 4000 Warner Boulevard Burbank, California 91522 Phone: (818) 954-3639 Fax: (818) 954-7898 michael.bentkover@warnerbros.com | Enforcement of Plaintiffs' copyrights; Plaintiffs' DMCA takedown notices; and exploitation of Hotfile's "special rightsholder accounts" and Plaintiffs' actions in taking down files from Hotfile.com |
| Dave Worth VP R&D PeerMedia Technologies, Inc. | PeerMedia Technologies, Inc. | Enforcement of Plaintiffs' copyrights; Plaintiffs' DMCA takedown notices; and exploitation of Hotfile's "special rightsholder accounts" and Plaintiffs' actions in taking down files from Hotfile.com |

CASE NO. 11-20427-JORDAN

| Name | Contact Information | Area of Knowledge |
|---|---|---|
| Didier Wang<br>Manager, Anti-Piracy Operations<br>Warner Bros. Entertainment | Warner Bros. Entertainment France<br>115/123 avenue Charles de Gaulle<br>92200 Neuilly sur Seine France<br>Phone number: +33 (0)1 72 25 10 41<br>Fax number: +33 (0)1 72 25 10 00<br>Cell phone: +33 (0)6 36 33 06 36<br>E-mail address:<br>didier.wang@warnerbros.com | Plaintiffs' actions in taking down files from Hotfile.com |
| Bret Boivin<br>Warner Bros Entertainment Inc. | Bret Boivin<br>Warner Bros Entertainment Inc.<br>98 Theobald's Road<br>London, UK<br>Phone: +44 207 984 6018<br>E-Mail:<br>Bret.Boivin@warnerbros.com | Plaintiffs' actions in taking down files from Hotfile.com |
| Disney Enterprises, Inc. | c/o Steven B. Fabrizio, Esq.<br>Jenner & Block, LLP<br>1099 New York Ave, N.W., Suite 900<br>Washington, DC 20001<br>Phone: 202.639.6000<br>(hereinafter, "counsel for Plaintiffs") | Plaintiffs' claimed rights to protected works; Plaintiffs' enforcement of its copyrights, including through DMCA takedown notices; any sharing of protected works on the internet authorized by Plaintiffs; any challenges to identifying infringement on the internet, including through automated technologies such as content identification; the reasonableness of Hotfile's repeat infringer policies; non-infringing uses of Hotfile and similar systems; failure to use digital rights management technology; satisfaction with and exploitation of Hotfile's "special rightsholder accounts"; and Plaintiff's claimed damages |

HIGHLY CONFIDENTIAL

CASE NO. 11-20427-JORDAN

| Name | Contact Information | Area of Knowledge |
|---|---|---|
| Twentieth Century Fox Film Corporation | c/o counsel for Plaintiffs | Plaintiffs' claimed rights to protected works; Plaintiffs' enforcement of its copyrights, including through DMCA takedown notices; any sharing of protected works on the internet authorized by Plaintiffs; any challenges to identifying infringement on the internet, including through automated technologies such as content identification; the reasonableness of Hotfile's repeat infringer policies; non-infringing uses of Hotfile and similar systems; failure to use digital rights management technology; satisfaction with and exploitation of Hotfile's "special rightsholder accounts"; and Plaintiff's claimed damages |
| Universal City Studios Productions LLLP | c/o counsel for Plaintiffs | Plaintiffs' claimed rights to protected works; Plaintiffs' enforcement of its copyrights, including through DMCA takedown notices; any sharing of protected works on the internet authorized by Plaintiffs; any challenges to identifying infringement on the internet, including through automated technologies such as content identification; the reasonableness of Hotfile's repeat infringer policies; non-infringing uses of Hotfile and similar systems; failure to use digital rights management technology; satisfaction with and exploitation of Hotfile's "special rightsholder accounts"; and Plaintiff's claimed damages |

CASE NO. 11-20427-JORDAN

| Name | Contact Information | Area of Knowledge |
|---|---|---|
| Columbia Pictures Industries, Inc. | c/o counsel for Plaintiffs | Plaintiffs' claimed rights to protected works; Plaintiffs' enforcement of its copyrights, including through DMCA takedown notices; any sharing of protected works on the internet authorized by Plaintiffs; any challenges to identifying infringement on the internet, including through automated technologies such as content identification; the reasonableness of Hotfile's repeat infringer policies; non-infringing uses of Hotfile and similar systems; failure to use digital rights management technology; satisfaction with and exploitation of Hotfile's "special rightsholder accounts"; and Plaintiff's claimed damages |
| Warner Bros. Entertainment Inc. | c/o counsel for Plaintiffs | Plaintiffs' claimed rights to protected works; Plaintiffs' enforcement of its copyrights, including through DMCA takedown notices; any sharing of protected works on the internet authorized by Plaintiffs; any challenges to identifying infringement on the internet, including through automated technologies such as content identification; the reasonableness of Hotfile's repeat infringer policies; non-infringing uses of Hotfile and similar systems; failure to use digital rights management technology; satisfaction with and exploitation of Hotfile's "special rightsholder accounts"; and Plaintiff's claimed damages |

CASE NO. 11-20427-JORDAN

| Name | Contact Information | Area of Knowledge |
|------|--------------------|--------------------|
| Motion Picture Association of America ("MPAA") | c/o Karen Thorland, Esq. MPAA 15301 Ventura Blvd., Bldg. E Sherman Oaks, CA  91403 | Plaintiffs' claimed rights to protected works; Plaintiffs' enforcement of its copyrights, including through DMCA takedown notices; any sharing of protected works on the internet authorized by Plaintiffs; any challenges to identifying infringement on the internet, including through automated technologies such as content identification; the reasonableness of Hotfile's repeat infringer policies; non-infringing uses of Hotfile and similar systems; failure to use digital rights management technology; and satisfaction with and exploitation of Hotfile's "special rightsholder accounts" |
| DtecNet Software ApS ("DtecNet") | 9595 Wilshire Blvd. Beverly Hills CA, 90210 (310) 492-4340 | Enforcement of Plaintiffs' copyrights; Plaintiffs' DMCA takedown notices; and exploitation of Hotfile's "special rightsholder accounts" |

Additional persons now or formerly associated with Plaintiffs may have knowledge concerning the asserted intellectual property and Plaintiffs practices regarding those copyrights. Additionally, other individuals not specifically known to Hotfile at this time may possess relevant information, particularly information related to DMCA safe harbor protection and the non-infringement of the asserted copyrights.

Hotfile reserves the right to supplement the list of persons with knowledge at any other future time as additional persons having knowledge of relevant facts are discovered by Hotfile or as prompted by contentions, allegations or statements of Plaintiffs.

                    HIGHLY CONFIDENTIAL

2.      **Rule 26(a)(1)(A)(ii) — Documents Hotfile May Use to Support its Claims and Defenses**

Hotfile has in its possession, custody or control the following categories of documents, electronically stored information, and tangible things that it may use to support its claims or defenses:

- Documents tending to show Hotfile's eligibility for safe harbor protection under the Digital Millennium Copyright Act ("DMCA"), including, without limitation, documentation of: Hotfile's repeat infringer policy, designated agent registrations, DMCA intellectual property policy, takedown notices received from Plaintiffs or their agents, timely responses to takedown requests, termination of repeat infringers, Hotfile's operation as an internet "service provider," Hotfile's special rightsholder accounts and Plaintiffs' use of the same, Plaintiffs' satisfaction with Hotfile's copyright protection efforts, storage of information at the direction of users, and other supporting documents including those listed below;

- Documents tending to negate Plaintiffs' allegations of direct and indirect copyright infringement, including Hotfile's website, terms of service, intellectual property policy, privacy policy, fingerprinting-related documents, documents showing non-infringing uses of Hotfile's website, evidence related to the DMCA defenses as set forth above, and other supporting website-related materials;

- Documents related to Hotfile's other affirmative defenses, including documents which may show Plaintiffs' failure to use digital rights management technology and voluntary posting of material on the internet for promotional purposes; and

- Documents tending to establish the elements of a possible counterclaim by Hotfile under 17 U.S.C. § 512(f), including improper use of takedown

requests and of Hotfile's "special rightsholder accounts" by Plaintiffs and their agents.

These documents, to the extent their locations are known, are located either in the possession of Hotfile or its counsel.  By disclosing the aforementioned documents, Hotfile does not waive any objections that it may have to producing these documents.  In addition, Hotfile reserves the right to disclose or rely upon additional documents pursuant to Fed. R. Civ. P. 26(e).

**3.      Rule 26(a)(1)(A)(iii) — Computation of Damages**

Hotfile has not yet filed any counterclaims against Plaintiffs seeking damages.  Hotfile reserves the right to set forth any computation of such damages following assertion of any counterclaim.  Regarding any claim by Hotfile for recovery of reasonable attorneys' fees and costs, or any other monetary relief which the Court may award Hotfile, documents supporting such costs and fees will be available at the end of this litigation.  Hotfile reserves the right to supplement this response at a later time when further information is available.

**4.      Rule 26(a)(1)(A)(iv) — Insurance Agreements**

Hotfile is presently unaware of any insurance agreements under which an insurance business may be liable to satisfy all or part of a possible judgment in the action, or to indemnify

///

///

///

CASE NO. 11-20427-JORDAN

or reimburse for payments made to satisfy the judgment.

Dated:  May 2, 2011

Respectfully submitted,

Roderick M. Thompson (admitted *pro hac vice*)
Andrew Leibnitz (admitted *pro hac vice*)
Deepak Gupta (admitted *pro hac vice*)
Janel Thamkul (admitted *pro hac vice*)
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

and

Janet T. Munn, Fla. Bar No. 501281
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

Counsel for Defendants

CASE NO. 11-20427-JORDAN

### CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury under the laws of the United States of America, that on May 2, 2011, I served the foregoing document on all counsel of record or *pro se* parties identified below by electronic mail pursuant to agreement of the parties.  Executed on May 2, 2011 at San Francisco, California.

By: _____

Andrew Leibnitz

### SERVICE LIST:  CASE NO. 11-CIV-20427-JORDAN

**GRAY-ROBINSON, P.A.**
Karen L. Stetson, Fla. Bar No.: 742937
Email: Karen.Stetson@gray-robinson.com
1211 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305.416.6880
Fax:    305.416.6887

**JENNER AND BLOCK, LLP**
Steven B. Fabrizio (*Pro Hac Vice* )
Email: sfabrizio@jenner.com
Duane C. Pozza (*Pro Hac Vice* )
Email: dpozza@jenner.com
Luke C. Platzer (*Pro Hac Vice* )
Email: lplatzer@jenner.com
1099 New York Ave, N.W., Suite 900
Washington, DC 20001
Phone: 202.639.6000
Fax:    202.639.6066

**MPAA**
Karen Thorland (*Pro Hac Vice*)
Email: Karen_Thorland@mpaa.org
15301 Ventura Blvd., Bldg. E
Sherman Oaks, CA
Phone:  818.935.5812

HIGHLY CONFIDENTIAL

# EXHIBIT 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants.*
_____/

## DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

PROPOUNDING PARTY:       Plaintiffs Disney Enterprises, Inc., Twentieth Century Fox
                         Film Corporation, Universal City Studios Productions
                         LLLP, Columbia Pictures Industries, Inc., and Warner
                         Bros. Entertainment

RESPONDING PARTIES:      Defendants Hotfile Corporation and Anton Titov
                         (collectively "Hotfile")[1]

SET NO.:                 One (1)

_____

[1] The Defendants reserve their respective rights to assert all appropriate separate defenses.  In particular, Mr. Titov has moved to dismiss all claims against him individually and specifically denies that he has the ability to supervise any alleged infringing activity or has a financial interest in such activity.  See Motion and Memorandum Etc., filed 3/31/11, Dkt. 50 at 17.  Mr. Titov is included in the shorthand term "Hotfile" along with Hotfile Corp. solely as a convenience and in light of the Parties agreement "that discovery requests served by one side on the opposing side will be equally applicable to all parties on the other side."  Joint Scheduling Conference Report, filed 4/15/11, Dkt. 54 at 16.  Nothing in these responses is an admission by Anton Titov or Hotfile Corp. of any particular relationship between them or any other fact.

HIGHLY CONFIDENTIAL

CASE NO. 11-20427-JORDAN

## GENERAL OBJECTIONS

1.      Hotfile has not completed its investigation of facts, witnesses or documents relating to this case, has not completed discovery, has not completed analysis of available information, and has not completed preparation for trial.  Hotfile reserves the right to supplement its response to each and every interrogatory (or part thereof) without obligating itself to do so, and reserves the right to introduce and rely upon such information in the course of this litigation.

2.      All of the responses set forth below are based solely on such information and documents that are available to and specifically known to Hotfile at this time.  It is anticipated that further discovery, independent investigation, and analysis may lead to substantial additions or changes in, and variations from the responses set forth herein.

3.      Hotfile objects to each interrogatory to the extent that it is vague, ambiguous, overbroad, and requires an unduly burdensome search for and production of, documents or information neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence, and which will result in unnecessary burden and undue expense to Hotfile.

4.      Hotfile objects each interrogatory to the extent that it seeks disclosure of information or documents protected from disclosure or production by the attorney-client privilege, the attorney work-product doctrine, or any other privilege available under statutory, constitutional or common law.  Inadvertent production of any such information or documents shall not constitute waiver of any privilege or any other ground for objecting to discovery with respect to such information or documents, nor shall inadvertent production waive Hotfile's right to object to the use of any such information or documents in any proceedings.

5.      Hotfile objects to each interrogatory to the extent that it seeks electronically stored information that is not reasonably accessible to Hotfile because of undue burden or cost.

6.      Hotfile objects to each interrogatory to the extent that it calls for disclosure of private, proprietary, and confidential information.  Hotfile will not produce private, proprietary, and/or confidential  information or documents unless and until a Protective Order is issued in this

**HIGHLY CONFIDENTIAL**

litigation. Hotfile reserves its right to object to disclosure of any private, proprietary, and confidential information in light of the terms of the Protective Order in this litigation or based on any state, federal, or international standards or laws governing privacy.

7.      Hotfile objects to each interrogatory to the extent it seeks proprietary information of third parties which Hotfile is not authorized to disclose. Hotfile will not produce private, proprietary, and/or confidential information or documents unless and until a Protective Order is issued in this litigation. Hotfile further reserves the right to object to the disclosure of any information protected by any state, federal, or international standards or laws governing privacy.

8.      Hotfile objects to the Definition of "Hotfile users" as vague, ambiguous, and overbroad. As currently defined, that term purportedly refers to every internet user who has ever accessed the Hotfile.com website for any purpose, irrespective of whether a given individual has actually downloaded files from or uploaded files to Hotfile.com. To the extent that Plaintiffs' interrogatories seek information regarding or related to all such internet users, such interrogatories are unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

9.      Hotfile objects to the Definition of "You" as overbroad. As currently defined, that term would include any entity, business venture, or organization subject to any Defendant's control (assuming any such entity, business venture or organization exists), irrespective of whether such entity has any relation or relevance to the present dispute. To the extent that Plaintiffs' interrogatories seek information regarding or related to irrelevant entities, such interrogatories are unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

10.      Hotfile objects to the Definition of "Hotfile entity" as overbroad. As currently defined, that term would include any entity, business venture, or organization subject to any Defendant's control (assuming any such entity, business venture or organization exists), irrespective of whether such entity has any relation or relevance to the present dispute. To the extent that Plaintiffs' interrogatories seek information regarding or related to all such entities,

HIGHLY CONFIDENTIAL

such requests are unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

11.     Hotfile objects to the providing of information about activities outside the United States as overbroad and unduly burdensome. "Federal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States." *Palmer v. Braun,* 376 F.3d 1254, 1258 (11th Cir. 2004). Hotfile objects to all interrogatories that seek information related to conduct occurring outside the United States.

12.     Hotfile objects to each interrogatory to the extent it imposes on Hotfile obligations that exceed or are inconsistent with the obligations imposed by the Federal Rules of Civil Procedure.

13.     Hotfile objects to each interrogatory to the extent it imposes on Hotfile obligations that are inconsistent with United States or foreign privacy laws.

14.     All responses to these interrogatories are made without in any way waiving or intending to waive, but on the contrary preserving and intending to preserve:

     a.     all objections as to the competence, relevance, and admissibility of any documents or information produced in response to these interrogatories as evidence for any purpose in subsequent proceedings or at the trial of this or any other action, arbitration, proceeding or investigation;

     b.     the right to object on any ground at any time to the use of any of the documents or information provided in response to these interrogatories, or the subject matter thereof, in any subsequent proceedings or at any trial(s) of this action, or any other action, arbitration, proceeding or investigation; and

     c.     the right to object on any ground at any time to a demand for further responses to these interrogatories or any other requests, or to other discovery proceedings involving or relating to the subject matter of these interrogatories.

15.     The general objections stated herein are incorporated by reference into each response herein, as if fully set forth below. While Hotfile has responded to this interrogatory for

4

**HIGHLY CONFIDENTIAL**

production, it does so without waiving any right to object to any further inquiry or any effort to compel responses beyond those provided herein.  Any response provided herein is subject to, and limited by, all general and specific objections stated herein.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each person who has been employed by, acted as the agent of, or performed work on behalf of or provided any service to (including as a contractor) the Hotfile Website and each Hotfile Entity from January 1, 2007 through the present day.  For each such person or entity, state:

a) Full name;

b) Title and/or employer during the period(s) such services or agency were provided (e.g. Hotfile Corp., Hotfile, S.A., Hotfile Ltd., or, if the person is a contractor, the third-party employer);

c) The nature of all work performed and/or the scope of the person's representation or agency (e.g. database manager, marketing manager, DMCA agent, abuse manager, etc.);

d) The length of time such person performed relevant services or representation;

e) Any Hotfile username and user identification number associated with the person; and

f) Present contact information (including current email address, physical address, and telephone number), or, if present contact information is not known to you, last known contact information.  It is not sufficient, for purposes of providing a person's contact information, to state that a person can be contacted through Defendants' counsel.

### RESPONSE TO INTERROGATORY NO. 1:

Hotfile incorporates by reference it general objections to this interrogatory.  Hotfile further objects to this interrogatory as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions.  As currently defined, that term would include any entity, business venture, or organization subject to any Defendant's control (assuming any such entity, business venture or

**HIGHLY CONFIDENTIAL**

CASE NO. 11-20427-JORDAN

services or funding to any internet hosting service, file-hosting service, online file storage provider, "cyberlocker" or any website or online business providing such services. In addition, Mr. Titov has not owned or operated or provided services or funding to any site that provides links to Hotfile.com or to any internet hosting service, file-hosting service, online file storage provider, "cyberlocker" or any website or online business providing such services (e.g. Hotfile123.com).

## INTERROGATORY NO. 4:

Identify each person who has provided, provides, has promised to provide, or with whom Defendants have had any discussions about providing capital or financing for any Hotfile Entity, and the nature, amount, and timing of any such capital or financing.

## RESPONSE TO INTERROGATORY NO. 4:

Hotfile incorporates by reference it general objections to this interrogatory. Hotfile further objects to this interrogatory as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. As currently defined, that term would include any entity, business venture, or organization subject to any Defendant's control (assuming any such entity, business venture or organization exists), irrespective of whether such entity has any relation or relevance to the present dispute. Hotfile further objects to this interrogatory on the grounds that it seeks information not reasonably calculated to lead to the discovery admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation and insofar as it seeks information about financing that is unrelated to the issues in the present litigation. Hotfile further objects to this interrogatory on the grounds that it seeks private and/or confidential financial information.

Subject to those general and specific objections, Hotfile responds as follows:

Hotfile Corp. has three shareholders: Anton Titov, Atanas Vangelov, and Rumen Stoyanov.

**HIGHLY CONFIDENTIAL**

CASE NO. 11-20427-JORDAN

**INTERROGATORY NO. 5:**

Identify each person to whom you or any Hotfile Entity has provided, provides, or has promised to provide earnings derived in whole or in part from the operation of the Hotfile Website, and the nature, amount, and timing of any such payments.

**RESPONSE TO INTERROGATORY NO. 5:**

Hotfile incorporates by reference it general objections to this interrogatory. Hotfile further objects to this interrogatory as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions and in its request for information regarding "any such payments." As currently defined, the term "Hotfile Entity" would include any entity, business venture, or organization subject to any Defendant's control (assuming any such entity, business venture or organization exists), irrespective of whether such entity has any relation or relevance to the present dispute. Hotfile further objects to this interrogatory on the grounds that it seeks information not reasonably calculated to lead to the discovery admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation and insofar as it seeks information about earnings that are not related to the claims of infringement in this litigation. Hotfile further objects to this interrogatory on the grounds that it seeks private and/or confidential financial information. Hotfile further objects that the phrase "earnings derived in whole or in part" is vague and ambiguous as used in this interrogatory.

Subject to those general and specific objections, Hotfile responds as follows:

Hotfile Corp.'s earnings accrue to Anton Titov, Atanas Vangelov, and Rumen Stoyanov.

**INTERROGATORY NO. 6:**

State the gross revenues, net revenues, and profits received by each Hotfile Entity since January 1, 2007.

**HIGHLY CONFIDENTIAL**

CASE NO. 11-20427-JORDAN

   d)  Any utilities in Titov's name, in whole or in part, for property in Florida;

   e)  Any bank accounts Titov has ever held in Florida;

   f)  Any travel to Florida in the past ten years, including:

       i.  the length of each such trip;

      ii.  the location where Defendant Titov resided or stayed during each such trip;

     iii.  any persons or entities with whom Defendant Titov met during each such trip; and

     iv.  the substance and purpose of each such trip.

**RESPONSE TO INTERROGATORY NO. 11:**

     Hotfile incorporates by reference it general objections to this interrogatory. Hotfile further objects to this interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, particularly given that Mr. Titov has not contested personal jurisdiction in this matter. Hotfile further objects to this interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of information without an ascertainable limitation or relationship to the claims of copyright infringement in this matter. Hotfile further objects that this interrogatory seeks private, confidential and personal information, including financial information and other personal information having no bearing on this lawsuit whatsoever. Hotfile further objects that this interrogatory is compound.

DATED: May 5, 2011          By: _____

                           Roderick M. Thompson (admitted *pro hac vice*)
                           Andrew Leibnitz (admitted *pro hac vice*)
                           Anthony P. Schoenberg (*admitted pro hac vice*)
                           Deepak Gupta (admitted *pro hac vice*)
                           Janel Thamkul (admitted *pro hac vice*)
                           FARELLA BRAUN + MARTEL LLP
                           235 Montgomery St.
                           San Francisco, CA 94104
                           Telephone: 415.954.4400
                           Telecopy: 415.954.4480

**HIGHLY CONFIDENTIAL**

CASE NO. 11-20427-JORDAN

And

Janet T. Munn, Fla. Bar No. 501281
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone:  305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

*Counsel for Defendants Hotfile Corp. and Anton Titov*

**HIGHLY CONFIDENTIAL**

## VERIFICATION

I, Anton Titov, am a Manager of Hotfile Corporation, a defendant in this lawsuit. I make this verification on behalf of said party and on behalf of myself as an individual. I have read the foregoing Defendants' Responses to Plaintiffs' First Set of Interrogatories and know the contents thereof. To the best of my knowledge, information and belief, the responses set forth therein are true and correct.

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct.

Executed this 5th day of May, 2011, in Fort Lauderdale, FL.

By: _____

Anton Titov

26501260514.1

CASE NO. 11-20427-JORDAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants.*

_____/

## CERTIFICATE OF SERVICE

I am a citizen of the United States and employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 235 Montgomery Street, 17th Floor, San Francisco, California 94104.

I HEREBY CERTIFY that on May 5, 2011, I electronically served the following documents on all counsel of record on the attached Service List via their email address(es).  The documents served on this date are:

**DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 5, 2011, at San Francisco, California.

_____
Greg George

CASE NO. 11-20427-JORDAN

## SERVICE LIST: CASE NO. 11-CIV-20427-JORDAN

Karen R. Thorland, Esq.
Motion Picture Association of America, Inc.
15301 Ventura Blvd., Building E
Sherman Oaks, CA 91403
Telephone:     (818) 935-5812
Fax:              (818) 285-4407
Email: Karen_Thorland@mpaa.org

*Attorneys for Plaintiffs*
*Party Name:   Disney Enterprises, Inc.,*
*Twentieth Century Fox Film Corporation,*
*Universal City Studios Productions LLP,*
*Columbia Pictures Industries, Inc., Warner*
*Bros. Entertainment Inc.*

**Served via electronic mail by agreement**

Duane C. Pozza, Esq.
Luke C. Platzer, Esq.
Steven B. Fabrizio, Esq.
Jenner & Block
1099 New York Avenue, N.W., Ste. 900
Washington, DC 20001-4412
Telephone:     (202) 639-6094
Fax:              (202) 639-6068
Email: dpozza@jenner.com;
lplatzer@jenner.com; sfabrizio@jenner.com

*Attorneys for Plaintiffs*
*Party Name:   Disney Enterprises, Inc.,*
*Twentieth Century Fox Film Corporation,*
*Universal City Studios Productions LLP,*
*Columbia Pictures Industries, Inc., Warner*
*Bros. Entertainment Inc.*

**Served via electronic mail by agreement**

Karen Linda Stetson, Esq.
Gray-Robinson P.A.
1221 Brickell Avenue, Suite 1650
Miami, FL 33131
Telephone:     (305) 416-6880
Fax:              (305) 416-6887
Email: kstetson@gray-robinson.com

*Attorneys for Plaintiffs*
*Party Name:   Disney Enterprises, Inc.,*
*Twentieth Century Fox Film Corporation,*
*Universal City Studios Productions LLP,*
*Columbia Pictures Industries, Inc., Warner*
*Bros. Entertainment Inc.*

**Served via electronic mail by agreement**

BOSTON LAW GROUP
Valentin Gurvits
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone:     617-928-1800
Fax:              617-928-1802
vgurvitz@bostonlawgroup.com

*Attorney for Defendants*
*Hotfile Corp. and Anton Titov*

**Served via electronic mail by agreement**

**HIGHLY CONFIDENTIAL**

CASE NO. 11-20427-JORDAN

Janet T. Munn, Esq.
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, FL 33134
Telephone:     (305) 476-7101
Fax:           (305) 476-7102
Email: jmunn@rascoklock.com

*Local Attorney for:     Defendants*
*Party Name:   Hotfile Corp. and Anton Titov*

**Served via electronic mail by agreement**

**HIGHLY CONFIDENTIAL**

# EXHIBIT 10

From:        Fabrizio, Steven B [SFabrizio@jenner.com]
Sent:        Sunday, June 05, 2011 8:14 AM
To:          Leibnitz, Andrew (21) x4932; Pozza, Duane; Thompson, Rod (27) x4445
Cc:          Schoenberg, Tony (28) x4963; Platzer, Luke C
Subject:     Re: Hotfile - individuals listed in response to Interrogatory No. 1


Andy,

We have not made final decisions as to who we might depose and likely will only make those
determinations after reviewing defendants' documents.  However, without prejudice, you can
assume that we would depose Chuburov, Ianakov, Stoyanov, and Manov.  You can also assume
that, once we have defendants' consent to voluntarily produce these witnesses in Bulgaria
(assuming that is where they are reside) pursuant to the Federal Rules , we will make proper
arrangements with the Bulgarian authorities so no one's sovereignty will be insulted.  Having
defendants' consent and stipulation undoubtedly will go a long way towards facilitating
arrangements with the consulate.  You can also assume that we will coordinate times with all
concerned so the dates are reasonably convenience for everyone.

As for bringing the witnesses to the US, we can of course agree that we will not use their
presence on US soil to serve them with process or otherwise prejudice them (much like we did
when meeting Titov in Florida for our settlement conference).  As for the cost issue, we'll
have to check with our clients.  However, for purpose of answering our questions, assume that
we would reach a mutually agreeable arrangement on costs, since (despite our mutual desire to
explore Bulgaria) taking these depositions in the US would save both our clients the expense
of sending their legal teams to Bulgaria.

The process of obtaining discovery in Bulgaria, in the absence of the stipulation we are
proposing, is likely going to be time consuming.  If you will not agree as we have proposed
(subject to the assumptions stated) we will have to move immediately to begin this process.
It does seem to us that you cannot ask for motions by July 15 and then be unwilling to do
what is necessary to see that we get necessary DMCA discovery without delay.  Nevertheless,
please let us know by the first of the week so that, in the absence of agreement, we can file
whatever motions are appropriate to begin seeking the required discovery through
international discovery channels.


 SBF


From: Andrew Leibnitz <aleibnitz@fbm.com<mailto:aleibnitz@fbm.com>>
Date: Fri, 3 Jun 2011 18:25:55 -0500
To: Duane Pozza <DPozza@jenner.com<mailto:DPozza@jenner.com>>, "Roderick M. Thompson"
<rthompson@fbm.com<mailto:rthompson@fbm.com>>
Cc: "Anthony P. Schoenberg" <tschoenberg@fbm.com<mailto:tschoenberg@fbm.com>>, Steven
Fabrizio <sfabrizio@jenner.com<mailto:sfabrizio@jenner.com>>, Luke Platzer
<LPlatzer@jenner.com<mailto:LPlatzer@jenner.com>>
Subject: RE: Hotfile - individuals listed in response to Interrogatory No. 1

Duane:

Who specifically would Plaintiffs like to depose?  If depositions are to proceed in Bulgaria,
must Plaintiffs make arrangements to conduct depositions at a consulate to avoid insulting
Bulgarian sovereignty (and exposing the lawyers to criminal sanctions)?  If so, when are
those facilities available?  Are Plaintiffs willing to pay for business class travel for
witnesses and guarantee that they will not be greeted by other service of process?  While I

understand that you may not have all of this information at your fingertips, the more information Plaintiffs can provide, the better our clients can assess Plaintiffs' request.

Regards,
ANDY


-----Original Message-----
From: Pozza, Duane [mailto:DPozza@jenner.com]
Sent: Friday, June 03, 2011 2:46 PM
To: Thompson, Rod (27) x4445; Leibnitz, Andrew (21) x4932
Cc: Schoenberg, Tony (28) x4963; Fabrizio, Steven B; Platzer, Luke C
Subject: Hotfile - individuals listed in response to Interrogatory No. 1

Rod, Andy,

In addition to Anton Titov, there are a number of individuals listed in response to Interrogatory No. 1 who have worked for Hotfile Corp. and that you have indicated are located outside the country.  In my meet and confer discussions with Andy and Tony, Andy has stated that defendants would not accept service of a subpoena on any of those individuals, though please let me know if I've misunderstood your position or if has changed.  In any event, would defendants agree to voluntarily produce such individuals for a deposition consistent with the Federal Rules, either by bringing them into the country for a deposition in the United States, or by agreeing to produce them for a deposition in their country of origin, such that plaintiffs may timely conduct their depositions?  Please let me know.

Thanks,
Duane


Duane Pozza
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
Tel (202) 639-6027
Fax (202) 661-4962
DPozza@jenner.com<mailto:DPozza@jenner.com>
www.jenner.com<http://www.jenner.com/>


CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.