UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

FILED by ____ D.C.

MAR 19 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## DECLARATION OF JENNIFER V. YEH IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE PORTIONS OF DECLARATIONS OF PROFESSOR JAMES BOYLE, DR. ANDREW CROMARTY, AND ANTON TITOV IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

[CONFIDENTIAL]

[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

I, Jennifer V. Yeh, declare as follows:

1.      I am an attorney at the law firm of Jenner & Block LLP, and counsel to the plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment Inc.  The statements made in this declaration are based on my personal knowledge including on information provided to me by colleagues or other personnel working under my supervision on this case.  If called to testify, I would testify as follows:

2.      Attached hereto as Exhibit 1 is a true and correct copy of excerpts of the deposition of Professor James Boyle, taken on Dec. 21, 2011 and Jan. 19, 2012 in the above-captioned case.

3.      Attached hereto as Exhibit 2 is a true and correct copy of excerpts of the deposition of Scott Zebrak, taken on Dec. 20, 2011 and Jan. 20, 2012 in the above-captioned case.

4.      Attached hereto as Exhibit 3 is a true and correct copy of excerpts of the deposition of defendant Anton Titov, in his personal capacity and as Fed. R. Civ. P. 30(b)(6) representative of defendant Hotfile Corp., taken from Dec. 5 to Dec. 8, 2011 in the above-captioned case.

5.      Attached hereto as Exhibit 4 is a true and correct copy of Defendants' Responses to Plaintiffs' First Set of Requests for Production, served on May 5, 2011.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on March 16, 2012.


_____
Jennifer V. Yeh

Page 1

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF FLORIDA

3                      CASE NO. 11-20427-WILLIAMS

4

5    DISNEY ENTERPRISES, INC.,    )
     TWENTIETH CENTURY FOX FILM    )
6    CORPORATION, UNIVERSAL CITY   )
     STUDIOS PRODUCTIONS LLLP,     )
7    COLUMBIA PICTURES             )
     INDUSTRIES, INC., and         )
8    WARNER BROS. ENTERTAINMENT    )
     INC.,                         )
9                                  )
                                   )
10   Plaintiffs,                   )
                                   )
11                                 )
     v.                            )
12                                 )
     HOTFILE CORP., ANTON TITOV    )
13   and DOES 1-10,                )
                                   )
14   Defendants.                   )

15

16

17                  Deposition of JAMES BOYLE

18                  (Taken by the Plaintiffs)

19                   Raleigh, North Carolina

20                     December 21, 2011

21

22

23   Reported by:     Marisa Munoz-Vourakis –
                      RMR, CRR and Notary Public
24   TSg Job # 44315

25

**Exhibit 1**

```
 1   APPEARANCE OF COUNSEL:

 2   For the Plaintiffs:

 3            DUANE POZZA, ESQ.

 4            Jenner & Block

 5            1099 New York Avenue, NW, Suite 900

 6            Washington, DC 20001

 7

 8

 9

10   For the Defendants:

11            DEEPAK GUPTA, ESQ.

12            Farella Braun & Martel

13            Russ Building

14            235 Montgomery Street

15            San Francisco, CA 94104

16

17

18

19            Deposition of JAMES BOYLE, taken by the

20   Plaintiffs, at Office Suites Plus, 3737 Glenwood

21   Avenue, Suite 100, Raleigh, North Carolina, on the 21st

22   day of December, 2011 at 11:04 a.m., before Marisa

23   Munoz-Vourakis, Registered Merit Reporter, Certified

24   Realtime Reporter and Notary Public.

25
```

1    that you asked, because it's an example of changing the

2    line between the realm of the protected and the realm

3    of the unprotected in the hope of generating more

4    innovation.

5        Q.    In the course of your research, do you have

6    any experience designing statistical studies?

7              MR. GUPTA:  Objection, vague and

8         ambiguous.

9        A.    No, I do not.

10       Q.    Are you trained in statistics?

11       A.    No, I am not.

12       Q.    In the course of your research, do you have

13   any experience analyzing large data sets?

14             MR. GUPTA:  Objection, vague and

15        ambiguous.

16       A.    No, I would say that I do not have the

17   experience as a statistician analyzing large data sets.

18   As an academic, I have to consider large amounts of

19   data all of the time and try and draw conclusions from

20   it, so it depends exactly what you mean by large data

21   sets.

22       Q.    In your research, do you have any

23   experience analyzing on line networks?

24             MR. GUPTA:  Objection, vague and

25        ambiguous.

1     A.     No, I did not.  I was asked to look at

2   examples of noninfringing uses.

3            In addition, I am not a statistician, as I

4   made clear on paragraph seven.  This does not purport

5   to be a representative statistical sample.

6     Q.     Getting to the summary of opinions,

7   paragraph nine, let's start with conclusion one, little

8   i, I guess.  I'll just read it:  First, there was a

9   high volume of usage of the Hotfile system for

10  activities that were either clearly noninfringing or

11  highly likely to be noninfringing.

12           Do you see that?

13    A.     I do.

14    Q.     What do you mean by a high volume of usage?

15    A.     I mean that there was a large number of

16  downloads of material of that type.

17    Q.     What is a large number of downloads?

18    A.     Are you asking me in philosophical sense?

19    Q.     How would you quantify what a large number

20  of downloads would be?

21    A.     I found there were 1.7 million downloads.

22  That seemed to be a high number to me.

23    Q.     If it was 10,000 downloads, would that be a

24  high number?

25           MR. GUPTA:  Objection, incomplete

1    information, that's why I said it was highly likely

2    infringing.

3              I would say that if you wanted to say

4    what's an example of something that's clearly

5    noninfringing, that's the case of something where

6    there's an identified corporate distributor

7    distributing a product that has extensive documentation

8    and review, where I can be absolutely conclusively

9    certain.

10             But in this case, I think I was being

11   extremely conservative in saying highly likely.  I

12   think in this situation, given the fact that the

13   distributor is offering it from their own web site,

14   given the fact that the license is on file, the various

15   source code repositories, I think that it's a very high

16   likelihood that it's noninfringing, and only my extreme

17   conservatism prevents me from saying that it's clearly

18   noninfringing.

19        Q.    Just going back again to the last sentence

20   of 9 sub-i, you say:  Hotfile's proven suitability and

21   capability with such licensing models is of

22   significance.

23             Do you see that?

24        A.    Yes, I do see it.

25        Q.    What kind of significance?

1          MR. GUPTA:  Objection, it's vague.

2     A.     In Sony and the cases that followed Sony,

3 the courts have been very clear that it's not just the

4 current usage of a system but its potential for future

5 use that is important.

6          So, for example, in the Napster case the

7 court of appeals held that the district court had erred

8 in not considering the potential uses for Napster,

9 focusing only on its current uses.  You asked what the

10 meaning is of the word significance.  It's significant

11 first in that here we have a method that can be used

12 indirectly to compensate developers and distributors of

13 open source software, in this case these small

14 distributors, not the large scale commercial

15 distributors, but the independent programmer working

16 alone or in teams, who is being indirectly compensated

17 for his or her labor by distributing this copyrighted

18 work in accordance with the goals of the copyright act.

19          The significance there is first, that that

20 is an example of noninfringing use; and second, that

21 the potential that the system could be used even more

22 for this and other kinds of licitly, that is to say,

23 legally licensed distribution is something that shows

24 that under the Sony test, as reiterated in Napster, it

25 has potential future uses.

1          So it's the growth and potential for this

2   kind of software in term of methods of distribution.

3   Hotfile would be one such method of distribution.

4   That's what I meant by significance.

5        Q.    It has legal significance?

6        A.    I think it has legal significance.  I think

7   it has cultural significance.  I think it has economic

8   significance.  But in this case, I was talking about

9   significance to an assessment under the Sony standard

10  and the Grokster standard.

11       Q.    Can Bittorrent be used to distribute free

12  software programs?

13            MR. GUPTA:  Objection, lacks

14       foundation, calls for speculation.  Its

15       outside the scope of his report.  It's also

16       vague.

17       A.    I don't know the Bittorrent systems, so I

18  would have to have it described to me to know whether

19  or not it can be used in the same way the Hotfile

20  system is used.

21       Q.    Are you familiar with LimeWire?

22       A.    I have a general familiarity with LimeWire,

23  only from reading discussions of it in the legal

24  literature.

25       Q.    Are you aware whether or not LimeWire can

1     A.     I said that one of the uses of Hotfile,

2   which was significant in terms of applying the test in

3   Sony and in Grokster, was the fact that there was a

4   significant licit use to encourage the distribution of

5   legal copyrighted material.  It's, in my opinion, if

6   one reads Sony and Grokster, and if one reads Article I

7   Section 8, Clause 8 of the Constitution, it seems clear

8   that one of the main goals in interpreting all of the

9   tests here, the tests in Sony and the tests in Grokster

10  is the promote the progress goal of copyright law.

11           In looking at licit uses, therefore, I

12  think it's particularly likely that a court would lay

13  weight on licit uses of distributing copyrighted

14  content, which actually managed A, to spread that

15  content to users or consumers, which is one of the

16  goals of the copyright system; and B, to compensate the

17  creator and thus incentivize future creativity, which

18  is a second goal.

19           So for that reason, I think this use of the

20  Hotfile system is significant in order to figure out

21  whether or not it has substantial noninfringing uses.

22           MR. POZZA:  Do you have a copy of

23       Article I, Section 8?

24           MR. GUPTA:  I don't.

25     Q.     If a user is uploading both copyrighted

1    on Hotfile was one of the searches?

2        A.    Yes.

3        Q.    For public domain materials, would you

4    describe this as a large number of downloads of public

5    domain content from Hotfile?

6              MR. GUPTA:  Objection, it's vague.

7        A.    Certainly not as high as the 1.7 million

8    download figure for the open source programs.  I

9    included this because, as I understand the test in

10   Sony, the court in Sony and subsequent courts are

11   interested both in magnitude, that is to say, the

12   number of uses, but also in types of uses, and this is

13   illustrative of a type of use.

14             When we think about the uses of a system in

15   order to spread cultural material, we, at least I, in

16   interpreting the Sony and Napster test, are not looking

17   only at the number, although that is clearly something

18   that we do look at, but also at what this represents.

19   In some cases, it may represent intensity of

20   preference.  People who really like Hamlet or Othello

21   rather than many people who like JDownloader.

22             And so, again, I was offering this to the

23   court for the court's assessment of this use of the

24   service to provide this kind of material.

25             I note that the Huck Finn, we had 45 hash

Page 164

1   Macbeth by YouSendIt.

2        Q.    Are there sort of virtual libraries that

3   have copies of what is public domain material that is

4   not necessarily user posted?

5             MR. GUPTA:  Objection, vague.

6        A.    There are -- I am familiar with some.  The

7   internet archive allows the posting of public domain

8   material.  There are also projects that aim at the

9   generation of copies of public domain books, such as

10  the Gutenberg project, but their method of distribution

11  is to allow that material to be posted in multiple

12  places so that people can download it there.  They want

13  to distribute it -- a distributed method of

14  distribution.  They want a decentralized method of

15  distribution.

16            MR. POZZA:  Let's break, it's a good

17       time.

18            (Off the record at 4:16 p.m.)

19            (On the record at 4:28 p.m.)

20            BY MR. POZZA:

21       Q.    I want to go to paragraph 34 of your

22  report.  The first sentence there says:  First,

23  noninfringing content is frequently uploaded and

24  downloaded on Hotfile, and those uses are substantial

25  both in terms of raw numbers and in terms of the most

1    common uses of the Hotfile system.

2              Do you see that?

3       A.    I do.

4       Q.    I think we talked about the raw numbers.

5    In terms of the most common uses of the Hotfile system,

6    what do you mean there?

7       A.    I mean the information about the fact that

8    files such as iREB and sn0wbreeze and to a less extent

9    JDownloader, were among the most commonly shared files

10   on Hotfile, that their number of downloads was high in

11   proportion to, excuse me, was high in rank if you

12   looked at the most downloaded.

13      Q.    So are you making a statement about

14   different kinds of uses of the Hotfile system in

15   general?

16             MR. GUPTA:   Objection, it's vague.

17      A.    So I'm trying to give the court information

18   relevant to whether or not there are substantial,

19   noninfringing uses of Hotfile and also relevant to

20   whether or not Hotfile would be guilty of a Grokster

21   style inducement liability.  To me, as a legal scholar,

22   it appears that if you find that the one and two most

23   downloaded files on the system are actually licitly

24   shared, that seems important, that seems significant.

25             The fact that those files are examples of

1   open source development, a kind of creativity, and the

2   fact that the developers of that open source software

3   are actively choosing to use Hotfile licitly to spread

4   it and appear to be gaining some compensation, I

5   believe that a court would see that as significant in

6   the determination of substantial noninfringing uses.

7        Q.    And in the sentence when you talk about the

8   most common uses, are you referring to those particular

9   downloaded files that iREB and sn0wbreeze?

10       A.    IREB, sn0wbreeze, JDownloader, but also I

11  was talking about other open source programs which

12  weren't downloaded as many times but which were also

13  being downloaded.

14            In the next sentence, I very carefully add

15  the qualification, which is part of this:  This report

16  does not attempt to present a statistically

17  representative sample of the usage of Hotfile, and I

18  have no personal knowledge of what Hotfile's uploaded

19  content or of user downloads is noninfringing.

20  Nevertheless, within the limits suggested by the

21  sentence, my investigation provided some striking

22  facts, and then I list the factual information, which

23  we have discussed.

24       Q.    Are there any other potential noninfringing

25  uses of Hotfile, other than distributing those three

Page 203

```
 1                    C E R T I F I C A T E

 2        I, Marisa Munoz-Vourakis, RMR, CRR and Notary Public,

 3   the officer before whom the foregoing proceeding was

 4   conducted, do hereby certify that the witness(es) whose

 5   testimony appears in the foregoing proceeding were duly

 6   sworn by me; that the testimony of said witness(es) were

 7   taken by me to the best of my ability and thereafter

 8   transcribed under my supervision; and that the foregoing

 9   pages, inclusive, constitute a true and accurate

10   transcription of the testimony of the witness(es).

11        I do further certify that I am neither counsel for,

12   related to, nor employed by any of the parties to this

13   action in which this proceeding was conducted, and

14   further, that I am not a relative or employee of any

15   attorney or counsel employed by the parties thereof, nor

16   financially or otherwise interested in the outcome of the

17   action.

18   IN WITNESS WHEREOF, I have hereunto subscribed my name

19   this 27th of December, 2011.

20                            _____
                              MARISA MUNOZ-VOURAKIS
21   Notary #20032900127

22

23

24

25
```

Page 204

```
 1                 UNITED STATES DISTRICT COURT

 2                 SOUTHERN DISTRICT OF FLORIDA

 3                  CASE NO. 11-20427-WILLIAMS

 4

 5   DISNEY ENTERPRISES, INC.,    )
     TWENTIETH CENTURY FOX FILM   )
 6   CORPORATION, UNIVERSAL CITY  )
     STUDIOS PRODUCTIONS LLLP,    )
 7   COLUMBIA PICTURES            )
     INDUSTRIES, INC., and        )
 8   WARNER BROS. ENTERTAINMENT   )
     INC.,                        )
 9                                )
                                  )
10       Plaintiffs,              )
                                  )
11                                )
         v.                       )
12                                )
     HOTFILE CORP., ANTON TITOV   )
13   and DOES 1-10,               )
                                  )
14       Defendants.              )

15

16

17          Continued Deposition of JAMES BOYLE

18                     Volume II

19               (Taken by the Plaintiffs)

20               Raleigh, North Carolina

21                  January 19, 2012

22

23

24   Reported by:   Marisa Munoz-Vourakis -
                     RMR, CRR and Notary Public
25   TSG Job # 45588
```

Page 205

```
 1   APPEARANCE OF COUNSEL:

 2   For the Plaintiffs:

 3           DUANE POZZA, ESQ.

 4           Jenner & Block

 5           1099 New York Avenue, NW, Suite 900

 6           Washington, DC 20001

 7

 8

 9

10   For the Defendants:

11           DEEPAK GUPTA, ESQ.

12           Farella Braun & Martel

13           Russ Building

14           235 Montgomery Street, 17th Floor

15           San Francisco, CA 94104

16

17

18                       o0o

19

20           Continued Deposition of JAMES BOYLE,

21   taken by the Plaintiffs, at Office Suites Plus, 3737

22   Glenwood Avenue, Suite 100, Raleigh, North Carolina, on

23   the 19th day of January, 2012 at 9:38 a.m., before

24   Marisa Munoz-Vourakis, Registered Merit Reporter,

25   Certified Realtime Reporter and Notary Public.
```

Page 221

1           MR. GUPTA:  Objection, vague as to the

2       word qualified.

3       A.     This is the only case in which I've ever

4   appeared as an expert.

5       Q.     Have you ever written a legal brief

6   submitted to a court analyzing whether or not

7   distribution of certain content is authorized?

8           MR. GUPTA:  Objection, vague and

9       ambiguous and incomplete hypothetical.

10      A.     No, I have not.

11      Q.     Have you ever written a legal brief

12  submitted to a court analyzing whether distribution of

13  certain content would be an infringement?

14          MR. GUPTA:  Objection once again,

15      incomplete hypothetical, vague.

16      A.     No, I have not.

17      Q.     Have you ever taken a course in statistics?

18      A.     No, I have not.

19      Q.     Do you believe that you're qualified as a

20  statistician?

21      A.     No, I do not.  In fact, I believe I said in

22  my first expert report that I was not a statistician

23  and did not purport to be a statistician.

24      Q.     Let's go to paragraph five of your rebuttal

25  report.

1    premium users of Hotfile uploaded files?

2         A.    No, I have not.

3         Q.    Why not?

4         A.    Because my first report was focused on

5    possible substantial noninfringing uses of the Hotfile

6    system, including open source software, public domain

7    material and creative commons license material.

8              The question of how many premium users have

9    uploaded files to Hotfile was not relevant to that.

10             My second rebuttal report was focused on

11   Dr. Waterman and Mr. Zebrak's study.  What I was doing

12   there was saying that I thought there were flaws in the

13   study, that there were things that they should have

14   studied, which they did not, including, but not limited

15   to, a focus on both uploads and downloads.

16             I am not a statistician, as I've said many

17   times in this report, and do not have the ability to go

18   and perform that study.  What I was suggesting was that

19   Dr. Waterman and Mr. Zebrak, in the design of their

20   study, should have framed things differently.

21        Q.    What would be, in your view, significant

22   percentage -- let me back up.

23             If one user had ever used Hotfile to upload

24   and store content, do you think that is a substantial,

25   noninfringing use of Hotfile?

Page 292

1    the subsequent courts lay down no framework that says

2    you have to look at number of files, or you have to

3    look at number of uses, or you have to look at

4    percentages.  It simply does not lay down a framework

5    such as that.

6              In my opinion, if, for example, a court

7    said, a court might well say looking at the

8    hypothetical you set forth, my goodness, more than

9    50 percent of the files on this system are

10   noninfringing, that clearly counts as a substantial

11   noninfringing use, and I think that that would be a

12   very reasonable conclusion.

13             So I don't think that anything in Sony or

14   the subsequent case law requires one to focus on

15   predominant use, as you have defined it, that is to

16   say, in terms of the number of infringing downloads as

17   a percentage of usages of the system.  I certainly know

18   of no law to that effect, and in fact, I believe the

19   Supreme Court to have indicated strongly that the

20   opposite is the case.

21        Q.    What percentage of the uses of the stream

22   cast system in Grokster would be determined to be

23   noninfringing?

24             MR. GUPTA:  Objection, lacks

25        foundation.  This isn't a memory test, you

Page 300

1    the percentage, I would say that it was a very

2    conservative statement to say that the fact that

3    54 percent of the files, of files with no registered

4    downloads, suggest that the users are using it for

5    something other than file transfer.

6         Q.    But you can't specify what percentage of

7    those uploads are being used for something other than

8    file transfer?

9         A.    No, I cannot.  In fact, I think I say

10   several times in the report that I do not know what

11   percentage are being used for storage, and neither do

12   Dr. Waterman and Mr. Zebrak, because they chose to

13   exclude them from their study.

14        Q.    Let's think about one download file.  I

15   guess I'll define a one download file as a file that

16   Elysium Digital identified as having only one

17   registered download.  Does that make sense?

18        A.    Yes, it does.

19        Q.    And there are, you report there are

20   6,182,360 of those files, correct?

21        A.    Yes, I do.

22        Q.    Of the 1,750 files in Dr. Waterman's

23   statistical sample, do you know how many of those files

24   were only downloaded once?

25        A.    No, I don't.  I think I say so in the

Page 301

1    report, but I don't know that.

2        Q.    Did you ask Elysium Digital to give you a

3    report as to whether any of the 6,182,360 files with

4    only one registered downloads made it into the

5    statistical sample?

6        A.    No, I didn't.

7        Q.    Why not?

8        A.    I simply was making the point that for

9    several reasons, which I'd be happy to explain, I felt

10   that the -- Dr. Waterman's study and in particular,

11   Mr. Zebrak's treatment of those files, had severe

12   problems as a matter of legal analysis.

13            Mr. Zebrak, from what Mr. Zebrak says about

14   his methods, I believe that he was looking only at

15   whether or not the file was copyrighted and whether he

16   believed that it was not being shared with formal

17   authorization.  That was his assessment.  If so, I

18   believe from what he says that he classified it as

19   highly likely infringing.

20            My point was that to -- for these files,

21   that would ignore a key fact, a fact that a court would

22   want to look at, namely, the possibility that the one

23   download files was either being used for storage, I

24   stored it up there, it's been corrupted, now I'm

25   downloading it again, or the possibility that it's

Page 303

1    one download files have the potential of being included

2    in the sample, right?

3        A.    Yes.

4        Q.    And in fact, some one download files could

5    have been included in the sample?

6        A.    Yes.

7        Q.    And you're not aware of how many one

8    download files actually ended up in the sample?

9             MR. GUPTA:  Objection, that's asked

10        and answered.

11       A.    No, I'm not.

12       Q.    So as to Mr. Zebrak, your view is that for

13   any of the one download files, he should have done

14   further analysis to determine whether or not he thought

15   it was highly likely to be infringing?

16       A.    Yes, I believe that as part of his analysis

17   of whether or not material was infringing, he should

18   have included more contextual information, among that

19   contextual information, the idea of the number of

20   things I think he should have focused on, but among it

21   is the number of downloads.

22            In addition, I think in terms of

23   Dr. Waterman's study, as I note at the end of, oh,

24   excuse me, as I note in paragraph 26, the method has,

25   the method that he uses, which is to populate his file

Page 309

1      A.      I believe so, yes.

2      Q.      And we could look at those particular files

3  from the sample and determine how many there are,

4  correct?

5      A.      Yes.

6      Q.      And one could determine whether or not

7  those appear to be infringing or fell into one of the

8  two categories, storage and space shifting, that you

9  argue would be fair use, correct?

10     A.      Yes, one could if one looked at all of

11  those aspects.

12     Q.      Have you examined the notes field in the

13  database that Mr. Zebrak produced?

14     A.      If the notes field is the field at the end

15  where he lists, generally without comment, some URLs,

16  which I presume were the places that he went for

17  research, yes, in a few of the cases that I talk about

18  here, I have looked at them.

19     Q.      Have you looked at all of them?

20     A.      No, I have not.

21     Q.      Approximately -- for approximately what

22  percentage of the 1750 files have you looked at the

23  URLs that were listed in the notes field?

24          MR. GUPTA:  Objection, it's vague and

25       it calls for speculation.

1      A.     I'm genuinely unsure.  I would say I looked

2    through to try and get a sense of his methods, and so

3    if we're merely talking, looking through to get a sense

4    of his methods, the kinds of things that are in there,

5    then in that case, I looked at a fairly large number of

6    them, 150, 200, simply looking at what URLs were there,

7    not going to the URL and checking it out.

8      Q.     That was my next question.

9      A.     In terms of the ones where I actually went

10   and looked at the specific URL, certainly for the ones,

11   all of the examples that I mentioned here, and for a

12   number of others, I would say perhaps there are also

13   some of the files that were looked at in my first

14   study, so JDownloader, iREB, sn0wbreeze.  If one adds

15   all of those together, I would guess perhaps somewhere

16   between 25 and 40, but I couldn't be sure.  Not all of

17   them being specifically referred to in both reports

18   that is.

19     Q.     Those are ones where you clicked on a

20   specific URL?

21     A.     Where I clicked on a URL or attempted to

22   look at what the URL was.  I might have clicked on the

23   URL and also attempted to look for that material as

24   well.

25     Q.     And when you say -- you said in your

Page 330

1      Q.     Just to be clear, in general, not just in

2   regard to one download files, you did not go through or

3   have someone go through the links to see if Mr. Zebrak

4   had included links to where the file was publicly

5   available?

6               MR. GUPTA:   Objection,

7        mischaracterizes his testimony.

8      A.     No, that's not entirely true.  I can't

9   remember now in the case of the earlier software that I

10  looked at in my first report.  To be honest, I cannot

11  answer that question for sure.  I did look at some of

12  the URLs that Mr. Zebrak provided in talking about

13  particular files.

14              For example, if he listed the Orbit

15  downloader as highly likely infringing, he had a series

16  of files in the notes field that referred to the page

17  where the Orbit downloader was available that referred

18  to, you know, some other information, a different site

19  that referred to it, and I looked at those, but I

20  didn't go through and analyze the particular publicly

21  available links that he offered.

22      Q.     And I believe you testified earlier that,

23  correct me if I'm wrong, that you looked at the -- you

24  had actually clicked on the links in the note section

25  for approximately 30 to 40 of the files in the sample?

1      A.      I had clicked on some of the links in, I

2   think I said I thought it was 20 to 40.  The ones that

3   I focused on most intensively are ones that have been

4   mentioned in the reports that we've talked about here.

5           So, I believe, for example, that iREB is in

6   Mr. Zebrak's study, and at that point, he thought that

7   iREB was noninfringing and not illegal, and I think I

8   clicked on those links, for example.

9      Q.      How did you identify the files in the

10  sample on which to further investigate by clicking on

11  the links in the note field?

12     A.      There are multiple ways.  In the case of, I

13  believe it was either iREB or sn0wbreeze, which I think

14  was in the initial sample, it may also have been

15  JDownloader, those were examples of open source

16  software that I was already looking at, and so seeing

17  them there, I also wanted to look at them.

18          In the case of, excuse me, the files that I

19  discuss here, it was a combination of methods.  In some

20  cases, defendants' counsel told me that they had been

21  in contact with the providers of the software at issue

22  and that they had an affidavit that said that it was --

23  that distribution was acceptable.

24          So, for example, in the case of the Farming

25  Simulator, that was something which defendants' counsel

Page 334

1    defendants' counsel contacted copyright owners of any

2    of the files in this study to confirm whether or not

3    the distribution was infringing and the response was

4    that it wasn't infringing?

5              MR. GUPTA:   Objection, goes beyond the

6         scope of the report, it lacks foundation,

7         and it's arguably work product.  But without

8         waiver of our rights, I'll allow some

9         questioning on this.

10   A.    No.

11   Q.    You're not aware of any instances?

12   A.    No.

13   Q.    Have you ever asked defense counsel if such

14   instances exist?

15   A.    No, I have not.

16   Q.    Did you take a sample, a subsample of the

17   1750 sample files that was random and look at those to

18   see if you had any opinion as to whether or not

19   Mr. Zebrak's opinions as to the infringement status was

20   correct?

21   A.    No, I did not.

22   Q.    Would you say when you were reviewing the

23   list of 1750 files that Mr. Zebrak classified, that you

24   were looking for particular kinds of files, such as

25   potentially open source files?

Page 339

1          I'm not an expert in the question of when

2    discovery has actually stopped, because this litigation

3    material keeps being generated, and I perhaps might

4    have to respond to that material.

5          Q.    But sitting here today, you would not add

6    any -- if I'm understanding you correctly, you would

7    not add any files to the list of those that you believe

8    Mr. Zebrak classified erroneously in terms of its

9    infringement status, other than the ones that are

10   listed in your rebuttal report?

11         A.    As I sit here today, I don't have knowledge

12   of other files where I am satisfied enough, specific

13   files where I'm satisfied enough with my analysis to

14   come to a definite conclusion on that.  There are some

15   classes of files where I have concerns, but because of

16   the limitations of time and because, you know, I was

17   largely working on this, you know, under those

18   limitations of time, I simply wasn't able to

19   investigate all of them, and so I don't have specific

20   examples sitting here today, no.

21         Q.    You mentioned a few times that you think

22   that some of the reasons why Mr. Zebrak got, in your

23   view, the infringement classifications or some of these

24   examples wrong was a deficiency in his methodology and

25   approach and how he looked at files, is that accurate?

Page 435

1        A.       It's -- the name escapes me, but I think

2    it's the largest one that I looked at in particular is

3    the largest adult films organization, I believe, and it

4    has a program, which I don't have it in front of me, I

5    would be delighted, I can easily retrieve it, which

6    attempts to incentivize sites that are streaming

7    important video sites to apply digital fingerprinting

8    akin to content ID.

9            And the business model is that if they do

10   this when an infringing video is found, an

11   advertisement will be inserted into the video and the

12   revenue will flow to the site, which I thought it was

13   fascinating, because it many ways it mirrors what was

14   going on in the YouTube litigation.

15       Q.       Digital fingerprinting is very widespread,

16   isn't it?

17       A.       Yeah.

18       Q.       Have you reviewed any of these files that

19   appear to be pornographic?

20       A.       No.

21       Q.       Have you reviewed any of the links for

22   these files that Mr. Zebrak provided for any of the

23   files that appear to be pornographic?

24       A.       When you say reviewed the links?

25       Q.       Have you clicked on the links?

Page 436

1      A.     No, I have not.

2      Q.     Are any of these files short promotional

3  clips?

4      A.     I do not know.

5      Q.     You don't know.

6             So you've hypothesized that some could be

7  short promotional clips, right?

8      A.     Yes.

9      Q.     But you don't know if any of them are?

10     A.     I've hypothesized -- I think what I said in

11 general is for the reasons stated in the report, it's

12 very hard to classify the content with great certainty.

13     Q.     But if there are in fact no or very few

14 short promotional clips, then what is the issue in this

15 study with classifying short promotional clips?

16     A.     Well, what I was trying to discuss was not

17 short promotional clips alone but rather a

18 concatenation, a collection of short attempts of error.

19 Short promotional clips was just one.  Another one was

20 trying to drive content of a particular web site

21 through a watermark.  Another one was fair use.

22 Another one was so-called orphan porn.

23             My point was simply that every time one

24 adds one of these additional sources of complexity,

25 particularly in a time limited study, it becomes hard,

1    in my opinion, to classify it.  And so I thought a

2    better procedure would have been the two that I

3    described.

4        Q.    So the watermark example you gave is like a

5    teaser, is that another way of putting it?

6        A.    That could be the case.

7        Q.    Do you have any knowledge of what -- how

8    many of the files that were actually in the study you

9    would classify as being teasers?

10       A.    No.  As I said, I didn't examine any of the

11   files in the study.

12       Q.    And do you have any knowledge of any files

13   that appear to be -- to you to be orphan works of any

14   sort?

15       A.    As I said, I didn't examine any of the

16   files in the study.  What I tried to do was to point

17   out that there were particular reasons why this kind of

18   content is extremely hard to classify.

19       Q.    Do you know whether or not there are any

20   "user generated remixes" of pornography in the sample?

21       A.    I note that Mr. Zebrak classified as

22   noninfringing at least one piece of work that had the

23   designation amateur.  I don't know whether or not that

24   was a user-generated remix or not.

25       Q.    Do you have any opinion as to whether or

Page 438

1    not the word amateur in the title of a pornographic

2    film indicates whether or not it is in fact user

3    generated and authorized for public distribution?

4         MR. GUPTA:  Objection, it's vague.

5    A.    I think in general, a file name is simply

6    not an adequate proxy for title.  I think that it marks

7    as an indication that you ought to look carefully at it

8    and see whether or not there is a fair use or

9    user-generated content issue.

10   Q.    Do you have any reason to believe that

11   Mr. Zebrak did not look closely at files to make an

12   assessment of whether he thought the pornographic files

13   distribution of the pornographic tiles would be a fair

14   use?

15   A.    I don't know whether he did or not.  I note

16   that in other portions of this study, I was concerned

17   that he had not carried out a full fair use analysis.

18   So to the extent that concern carries over, it would be

19   replicated here.

20   Q.    There's nothing specific about the

21   pornographic files for which you think Mr. Zebrak did

22   not engage in a full, fair use analysis?

23   A.    I simply don't know.  My point was that in

24   this class, it was going to be harder to classify, and,

25   thus, the confidence interval will have highly likely

Page 439

1    infringing was going to be harder to reach.

2              As I note in the study, I do not claim that

3    it is clear error to include the pornographic files.

4    What I say is I would either have excluded them or I

5    would have gone through a procedure of doing

6    confirmation that they were in fact infringing.

7        Q.    Well, if the reason why there needs to be a

8    greater, you believe, that there should be more steps

9    along the way to confirmation is that many of the files

10   have certain characteristics, such as being short clips

11   or teasers, why, as a category, do you believe that all

12   pornographic files should have been subject to this

13   heightened level of confirmation, even if they weren't

14   short clips or teasers?

15             MR. GUPTA:  Objection, it's

16        complicated and confusing, it's vague.

17       A.    Actually, short clips and teasers were only

18   one example I mentioned of the types of problems in

19   classifying pornographic content.  I mentioned longer

20   pieces of ones which where the pornographer has no

21   objection to redistribution.  I mentioned watermark.  I

22   mentioned orphan.  Those are not necessarily short

23   clips and teasers.

24             So, no, it's not just short clips and

25   teasers that I think it applies to.

Page 446

1   material, yes.

2        Q.    Are you purporting to claim that this

3   allowed you to draw any opinions or conclusions about

4   Hotfile?

5        A.    I would say that these numbers indicate

6   that the category that Mr. Zebrak identified as

7   noninfringing had a much higher conversion rate, that

8   is to say, a rate of converting people to premium than

9   the confirmed infringing.

10             I'd say in addition, that Mr. Zebrak's

11   confirmed infringing category was the lowest of all of

12   the types of content, lower even than unknowable, and

13   so I think I can from that draw the conclusion that

14   Hotfile was gaining economic success from noninfringing

15   material, number one, I can conclude that; and number

16   two, that they were actually gaining more economic

17   success proportionately from noninfringing material

18   than from confirmed infringing or highly likely

19   infringing material.

20        Q.    Can you extrapolate these results from the

21   1750 files to the broader population of files on

22   Hotfile?

23        A.    I believe it is the assertion of

24   Dr. Waterman and Mr. Zebrak that the study can be

25   extrapolated.  I, for the reasons in this report, I

1   have problems with extrapolating the study, but this,

2   for the purposes of argument, I took their

3   classifications and accepted them.

4        Q.    Well, no, these numbers themselves you're

5   taking a different variable, the paid for variable,

6   right?  They didn't analyze that?

7        A.    That is correct.

8        Q.    And you're saying that you can take that

9   variable, calculate this conversion rate, which is

10  based on this other variable daily download total that

11  they did not consider?

12       A.    I believe they did consider.

13       Q.    Daily download total?

14       A.    Well, they looked at daily downloads,

15  excuse me.

16            MR. GUPTA:  Objection, this line of

17        questioning is obviously somewhat confusing

18        and complicated.

19            BY MR. POZZA:

20       Q.    I'm trying to figure out if these

21  conversion rates that you claim for different

22  categories of infringing and noninfringing content, are

23  you claiming that those conversion rates would

24  extrapolate to the entire population of files or

25  downloads on Hotfile?

Page 448

1            MR. GUPTA:   Objection, to the extent

2       it seeks a statistical analysis.

3       A.     What I'm claiming is that if Dr. Waterman

4  and Mr. Zebrak were correct about, first of all, the

5  statistical representativeness of their study, about

6  which I raise questions, and also the accuracy of it,

7  about which I raise questions, but if we assume that

8  for the sake of argument they are claiming that it

9  provides a generalizable representative picture of

10 Hotfile, if they take their assumption, the assumption

11 they make in their report, then I would expect that the

12 paid for could be extrapolated to the rest of Hotfile.

13      Q.     Would it be extrapolated in the way that

14 you have done here?

15      A.     I think a court might extrapolate it in any

16 number of ways.  I think if their argument is correct,

17 and they are presenting estoppel from which conclusions

18 can be extrapolated, then their sample and their

19 classifications with this one extra piece of

20 information, namely, the sample paid for is a

21 percentage of daily download totals.

22      Q.     Is that based on your understanding of the

23 statistical methods that Dr. Waterman employed?

24      A.     It's based on my understanding that

25 Dr. Waterman claims that his study is a statistically

Page 449

1    representative picture of Hotfile.  As I said, I'm

2    assuming that for the sake of argument.  I don't

3    actually accept that it's a statistically

4    representative picture, but assuming it for the sake of

5    argument, then one would be able to extrapolate.

6         Q.    But to be clear, Dr. Waterman does not

7    analyze this paid for variable, right?

8         A.    That is correct.

9         Q.    Or this conversion rate variable?

10        A.    That is correct.

11        Q.    Do you have any technical knowledge as to

12   whether Hotfile is physically suitable for storage of

13   large files, large amounts of files?

14             MR. GUPTA:  Objection, that's vague.

15        A.    You said two different things, large files

16   and large amounts of files.

17        Q.    I meant large amounts of files.

18        A.    So you mean large numbers of files?

19        Q.    True, large numbers of files, large numbers

20   of files.

21        A.    I assume, based on the fact that hundreds

22   of millions of files, a hundred million files were

23   listed in the never downloaded category, that sounds

24   like a large number of files to me.

25             MR. GUPTA:  Objection, to the extent

Page 462

1                          SIGNATURE PAGE

2            you.

3                   (Whereupon the deposition was

4            concluded at 5:43 p.m.)

5                   (Signature reserved.)

6                                          Digitally signed by James Boyle
                                           DN: cn=James Boyle, o, ou,
                                           email=boyle@law.duke.edu, c=US
7            _____   Date: 2012.01.31 15:55:27 -05'00'

8            JAMES BOYLE

9

10

11     SUBSCRIBED AND SWORN to before me this _____

12     day of_____, 2012

13

14

15                  _____

16                       NOTARY PUBLIC

17

18     My Commission expires:_____

19

20

21

22

23

24

25

TSG Reporting - Worldwide        877-702-9580

Page 464

1                     C E R T I F I C A T E

2          I, Marisa Munoz-Vourakis, RMR, CRR and Notary Public,

3     the officer before whom the foregoing proceeding was

4     conducted, do hereby certify that the witness(es) whose

5     testimony appears in the foregoing proceeding were duly

6     sworn by me; that the testimony of said witness(es) were

7     taken by me to the best of my ability and thereafter

8     transcribed under my supervision; and that the foregoing

9     pages, inclusive, constitute a true and accurate

10    transcription of the testimony of the witness(es).

11         I do further certify that I am neither counsel for,

12    related to, nor employed by any of the parties to this

13    action in which this proceeding was conducted, and

14    further, that I am not a relative or employee of any

15    attorney or counsel employed by the parties thereof, nor

16    financially or otherwise interested in the outcome of the

17    action.

18    IN WITNESS WHEREOF, I have hereunto subscribed my name

19    this 23rd of January, 2012.

20

21

22                         _____
                           MARISA MUNOZ-VOURAKIS

23                          Notary #20032900127

24

25

SCOTT A. ZEBRAK, ESQUIRE - 12/20/2011

Page 1

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF FLORIDA

3     ------------------------------------x

4     DISNEY ENTERPRISES, INC., et al.,    )

5                         Plaintiffs,      ) Case No.

6          v.                              ) 11-20427-

7     HOTFILE CORP., et al.,               ) WILLIAMS/

8                         Defendants.       ) TURNOFF

9     ------------------------------------x

10    HOTFILE CORP.,                       )

11                    Counterclaimant,     )

12         v.                              )

13    WARNER BROS. ENTERTAINMENT, INC.,    )

14                    Counterdefendant.    )

15    ------------------------------------x

16

17        VIDEOTAPED DEPOSITION OF SCOTT A. ZEBRAK, ESQUIRE

18                       Washington, D.C.

19                  Tuesday, December 20, 2011

20                         9:43 a.m.

21

22

23    Job No.:  439702

24    Pages 1 - 370

25    Reported By:  Joan V. Cain

Exhibit 2

SCOTT A. ZEBRAK, ESQUIRE - 12/20/2011

Page 2

1          Videotaped Deposition of SCOTT A. ZEBRAK,

2     ESQUIRE, held at the law offices of:

3

4               STRADLEY RONON STEVENS & YOUNG, LLP

5               Suite 500

6               1250 Connecticut Avenue, Northwest

7               Washington, D.C. 20036

8               (202) 822-9611

9

10         Pursuant to Notice, before Joan V. Cain, Court

11     Reporter and Notary Public in and for the District of

12     Columbia.

13

14

15

16

17

18

19

20

21

22

23

24

25

SCOTT A. ZEBRAK, ESQUIRE - 12/20/2011

Page 3

```
 1                    A P P E A R A N C E S

 2

 3       ON BEHALF OF PLAINTIFFS:

 4            STEVEN B. FABRIZIO, ESQUIRE

 5            JENNER & BLOCK, LLP

 6            Suite 900

 7            1099 New York Avenue, Northwest

 8            Washington, D.C. 20001

 9            Telephone:  (202) 639-6000

10            E-mail:  sfabrizio@jenner.com

11

12       ON BEHALF OF DEFENDANTS AND COUNTERCLAIMANT:

13            ANDREW LEIBNITZ, ESQUIRE

14            FARELLA BRAUN & MARTEL, LLP

15            Russ Building

16            235 Montgomery Street

17            San Francisco, California 94104

18            Telephone:  (415) 954-4400

19            E-mail:  aleibnitz@fbm.com

20

21       ALSO PRESENT:

22            Terry Michael King, Videographer

23

24

25
```

SCOTT A. ZEBRAK, ESQUIRE - 12/20/2011

Page 128

| | | |
|---|---|---|
| 12:23:08 | 1 | For purposes of my report, the content I'm |
| 12:23:11 | 2 | dealing with, you know, one thing I attempted to do |
| 12:23:14 | 3 | was determine was this some fan-based or user-based |
| 12:23:19 | 4 | material or the original work as created and |
| 12:23:24 | 5 | commercialized by the content provider.  If I couldn't |
| 12:23:27 | 6 | determine that it was in that latter category of, you |
| 12:23:30 | 7 | know, the work created by the copyright owner and |
| 12:23:33 | 8 | being commercialized by the copyright owner, it would |
| 12:23:36 | 9 | have ended up being in an unknowable category, or if |
| 12:23:40 | 10 | it was noninfringing, in a noninfringing category. |
| 12:23:45 | 11 | But -- so I think I answered your question |
| 12:23:47 | 12 | but also applied it to -- to the work that I've done |
| 12:23:49 | 13 | here. |
| 12:23:50 | 14 | BY MR. LEIBNITZ: |
| 12:23:50 | 15 | Q    Are you admitted to practice law in any |
| 12:23:52 | 16 | foreign jurisdictions? |
| 12:23:54 | 17 | A    Not that I'm aware of. |
| 12:24:00 | 18 | Q    Do you hold a legal degree from any foreign |
| 12:24:03 | 19 | jurisdiction? |
| 12:24:03 | 20 | A    No, I do not. |
| 12:24:04 | 21 | Q    Do you have any specialized training, |
| 12:24:05 | 22 | knowledge, or experience in the law of any foreign |
| 12:24:09 | 23 | jurisdiction? |
| 12:24:09 | 24 | MR. FABRIZIO:  Objection, asked and |
| 12:24:10 | 25 | answered.  Compound. |

SCOTT A. ZEBRAK, ESQUIRE - 12/20/2011

Page 168

| | | |
|---|---|---|
| 14:18:31 | 1 | it's the third column.  It would say file and then |
| 14:18:39 | 2 | URL.  You know, that would be the file name, and URL |
| 14:18:41 | 3 | would -- you know, it's in the column next to that. |
| 14:18:43 | 4 | BY MR. LEIBNITZ: |
| 14:18:43 | 5 | Q    Okay.  So was there anything else you were |
| 14:18:46 | 6 | given other than the content file, if it existed, |
| 14:18:56 | 7 | and -- |
| 14:18:56 | 8 | A    The URL? |
| 14:18:57 | 9 | Q    -- the URL? |
| 14:18:58 | 10 | MR. FABRIZIO:  Objection, overbroad. |
| 14:19:00 | 11 | Compound. |
| 14:19:02 | 12 | THE WITNESS:  So I would have the, you know, |
| 14:19:02 | 13 | Hotfile files.  I would have the name of -- the file |
| 14:19:04 | 14 | of data about the name of the file or consisting of |
| 14:19:07 | 15 | the name of the file along with the Hotfile URL.  So I |
| 14:19:10 | 16 | would have that information along with -- in certain |
| 14:19:14 | 17 | instances I would have information about takedown |
| 14:19:16 | 18 | notices or special right holder takedowns, and then we |
| 14:19:26 | 19 | actively went about viewing and doing searching and |
| 14:19:29 | 20 | investigation based on all this information which led |
| 14:19:31 | 21 | us to other information that we would -- I say we -- |
| 14:19:34 | 22 | folks would help me gather this information, but then |
| 14:19:37 | 23 | I then considered this information as I attempted to |
| 14:19:40 | 24 | reach my determination. |
| 14:19:40 | 25 | BY MR. LEIBNITZ: |

SCOTT A. ZEBRAK, ESQUIRE - 12/20/2011

Page 169

14:19:42   1        Q    And that's the web search reflected in the

14:19:44   2    notes and elsewhere in Exhibit 101?

14:19:46   3            MR. FABRIZIO:  Objection, mischaracterizes

14:19:48   4    his testimony.

14:19:51   5            THE WITNESS:  It -- it -- it consists of a

14:19:52   6    variety of things.  I'm happy to walk through.  We

14:19:55   7    haven't -- we haven't really sort of completely walked

14:19:56   8    through the process yet today.  But, you know, it

14:19:59   9    was -- it was an investigation.  We started with the

14:20:00  10    information made available to us, being the content

14:20:06  11    files, the metadata about -- that included the name of

14:20:10  12    the file as long -- as well as the Hotfile URL.  We

14:20:13  13    had information about takedown notices.

14:20:16  14            And then we actively review the files, do

14:20:22  15    searching of the link and of the file name and -- and

14:20:25  16    do other information to identify what the file is,

14:20:28  17    identify how the copyright owner or its agent were

14:20:30  18    commercializing the work, review associated terms of

14:20:33  19    use, licensing arrangements.  It's a whole -- I used

14:20:37  20    the term "quilt" before, but there's a whole range,

14:20:40  21    whole spectrum of information that we attempted to

14:20:42  22    build and consider.

14:20:43  23    BY MR. LEIBNITZ:

14:20:43  24        Q    In terms of what you were given, though,

14:20:45  25    have you now identified for me everything?

SCOTT A. ZEBRAK, ESQUIRE - 12/20/2011

Page 206

| | | |
|---|---|---|
| 15:17:51 | 1 | certain examples.  For example, record companies may |
| 15:17:55 | 2 | be selling a work for download through iTunes or -- or |
| 15:18:04 | 3 | purchase of a CD in a store, and on their web site |
| 15:18:07 | 4 | they may allow individuals to stream and listen to a |
| 15:18:13 | 5 | copy of it.  That's the sort of promotional activity |
| 15:18:17 | 6 | that -- that I've seen.  I've given the example before |
| 15:18:19 | 7 | of a light temporary version of video game software |
| 15:18:26 | 8 | that's then used for someone to see a lighter version |
| 15:18:32 | 9 | of the work that they then choose to purchase at a |
| 15:18:35 | 10 | fuller value.  That's the type of work I've seen. |
| 15:18:38 | 11 | The -- you know, that's my experience.  And |
| 15:18:57 | 12 | of course I'm not doing this in the abstract.  I've -- |
| 15:18:59 | 13 | I've, you know, attempted for these files and I've |
| 15:19:04 | 14 | gone file by file looking to see where and how and |
| 15:19:07 | 15 | under what terms it was being commercialized. |
| 15:19:14 | 16 | Q    How did you confirm with plaintiffs that |
| 15:19:15 | 17 | they didn't authorize the free and unrestricted |
| 15:19:18 | 18 | distribution on Hotfile of these files? |
| 15:19:21 | 19 | A    You're asking about the logistics of how we |
| 15:19:24 | 20 | confirmed with them? |
| 15:19:25 | 21 | Q    What did you do? |
| 15:19:29 | 22 | A    We asked the plaintiffs to confirm for us, |
| 15:19:32 | 23 | once I identified what the works were, whether they've |
| 15:19:35 | 24 | authorized those works to be distributed to the |
| 15:19:37 | 25 | Hotfile system, and the answer was no. |

SCOTT A. ZEBRAK, ESQUIRE - 12/20/2011

Page 277

17:13:34   1    question for not allowing the witness to see the

17:13:36   2    document he brought with him today.

17:13:44   3        THE WITNESS:  Again, you know, the process I

17:13:45   4    went through included reviewing the content file to

17:13:50   5    identify what was there, perhaps to identify the

17:13:55   6    artist to see what song or songs would have been there

17:13:58   7    if this is a music album including, you know, other

17:14:03   8    promotional material.  I might have even seen an album

17:14:07   9    cover.  You know, that's the type of thing I might

17:14:11   10   see.  Especially in a .rar file, which is a -- a tool

17:14:16   11   used to compress a whole bunch of files often.

17:14:17   12       So I would look at the file, attempt to

17:14:19   13   figure out what the work was, and then I would do some

17:14:21   14   research to identify what -- you know, who the

17:14:24   15   copyright owner or its licensee was.  Typically in the

17:14:28   16   record industry that would be the record label, and

17:14:35   17   then I would look to see how the work was being

17:14:37   18   commercialized, and if it was a professional artist

17:14:40   19   that was commercializing its work in a way that that

17:14:50   20   business model would be -- you know, really where the

17:14:53   21   antithesis of that is free and unrestricted

17:14:58   22   distribution of its music through the internet for --

17:15:01   23   for viral copy and distribution, that -- that would

17:15:03   24   form the basis of my highly likely infringing

17:15:06   25   designation and -- and the other legwork would have

SCOTT A. ZEBRAK, ESQUIRE - 12/20/2011

Page 278

17:15:08  1   included seeing, for example, that it was being -- it

17:15:11  2   was an assumption that it was being distributed, but

17:15:13  3   that was borne out here presumably by seeing the URL

17:15:16  4   in the Hotfile search -- I mean, reference in the

17:15:24  5   notes section along with looking at other web pages

17:15:26  6   about the artist and where the web -- you know, where

17:15:28  7   the URL may have been posted, and -- and of course the

17:15:31  8   label.

17:15:31  9   BY MR. LEIBNITZ:

17:15:36  10      Q    Anything else?

17:15:39  11      A    That's -- you know, that's what the process

17:15:41  12   would have consisted of.

17:15:42  13      Q    And that's how you reached your

17:15:43  14   determination that this was highly likely infringing,

17:15:46  15   right?

17:15:49  16      A    I believe so.

17:15:51  17      Q    Are you -- looking at Exhibit 111, please --

17:15:56  18      A    Yes.

17:15:56  19      Q    -- are you aware that each and every song of

17:15:59  20   the album Yatsivakt by Atakan --

17:15:59  21      A    Mm-hmm.

17:16:04  22      Q    -- is available for free download on

17:16:08  23   Atakan's MySpace page?

17:16:10  24           MR. FABRIZIO:  Objection, lacks foundation.

17:16:15  25           THE WITNESS:  Well, a few things.  You're

SCOTT A. ZEBRAK, ESQUIRE - 12/20/2011

Page 370

1          CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

2              I, Joan V. Cain, Court Reporter, the officer

3     before whom the foregoing deposition was taken, do

4     hereby certify that the foregoing transcript is a true

5     and correct record of the testimony given; that said

6     testimony was taken by me stenographically and

7     thereafter reduced to typewriting under my direction

8     and that I am neither counsel for, related to, nor

9     employed by any of the parties to this case and have

10    no interest, financial or otherwise, in its outcome.

11             IN WITNESS WHEREOF, I have hereunto set my

12    hand and affixed my notarial seal this 29th day of

13    December 2011.

14

15    My commission expires:

16    June 14, 2014

17    _____

18    NOTARY PUBLIC IN AND FOR THE

19    DISTRICT OF COLUMBIA

20

21

22

23

24

25

Page   Line

____   ____        Change:_____

____   ____        Change:_____

____   ____        Change:_____

____   ____        Change:_____

____   ____        Change:_____

____   ____        Change:_____

____   ____        Change:_____

____   ____        Change:_____

_____ Subject to the above changes, I certify that the transcript is true and correct.

_____ No changes have been made.  I certify that the transcript is true and correct.

_____
(signature)

2/1/2012
(date)

Print Name   _Scott Zebrak_

```
 1            IN THE UNITED STATES DISTRICT COURT
 2               SOUTHERN DISTRICT OF FLORIDA
 3
 4   DISNEY ENTERPRISES, INC., TWENTIETH
 5   CENTURY FOX FILM CORPORATION,
 6   UNIVERSAL CITY STUDIOS PRODUCTIONS,
 7   LLP, COLUMBIA PICTURES INDUSTRIES,
 8   INC., and WARNER BROTHERS
 9   ENTERTAINMENT, INC.,
10
11               Plaintiffs,
12
13      vs.                        Case No.
14
15   HOTFILE CORPORATION, ANTON TITOV    11-cv-20427-AJ
16   and DOES 1-20,
17
18               Defendants.
19   _____
20          Videotaped Deposition of SCOTT A. ZEBRAK,
     a witness herein, called for examination by counsel
21   for Defendants in the above-entitled matter, Washington,
     D.C. pursuant to subpoena, the witness being duly sworn
22   by SUSAN L. CIMINELLI, CRR, RPR, a Notary Public in and
     for the District of Columbia, taken at the offices of
23   Jenner & Block, LLP, 1099 New York Avenue, N.W.,
24   Washington, D.C., at 10:49 a.m. on Friday, January 20,
25   2012.

                                            Page 1
```

```
 1    APPEARANCES:

 2

 3        On behalf of the Plaintiffs & Counterdefendants:

 4            DUANE POZZA, ESQ.

 5            STEVEN B. FABRIZIO, ESQ.

 6            Jenner & Block, LLP

 7            901 New York Avenue, N.W.

 8            Washington, D.C.  20001

 9            (202) 639-6000

10            dpozza@jenner.com

11

12        On behalf of the Defendants:

13            DEEPAK GUPTA, ESQ.

14            Farella Braun + Martel, LLP

15            235 Montgomery Street

16            San Francisco, CA  94104

17            (415) 954-4400

18            dgupta@fbm.com

19

20        ALSO PRESENT:

21            CONWAY BARKER, Videographer

22

23

24

25

                                         Page 2
```

1    concerns about the way adult content was

2    incorporated.

3         A.    See, Professor Boyle -- and this is a flaw

4    across his report, and I believe it's a very serious

5    one.   He -- he approached this, as he put it, as a

6    legal scholar.   He largely wanted to discuss issues

7    in theory, rather than focus on those issues

8    implicated by the facts and actually review the

9    facts.   And, in this instance, I did review the

10   facts, including for the pornographic works that I

11   examined in the course of the study, and I reviewed

12   the terms of use and the conditions under which these

13   companies allowed for use of their works.   And I also

14   had my own background knowledge on that industry, as

15   well as further spoke with a representative from that

16   industry to test my background and understanding on

17   how their works are created and distributed.   And

18   they all supported my -- my conclusions.

19         As I mentioned earlier, of course a

20   company is free to authorize distribution of its own

21   works and how it sees fit but the works I -- I ran

22   across and concluded were highly likely infringing

23   were commercial works that were taken from sites that

24   charged for access to that material and were of a

25   length inconsistent with any sort of promotional

                                           Page 220

1    distribution of the type that you hypothesized over a

2    moment ago as inspired by Professor Boyle.

3              BY MR. GUPTA:

4        Q.   So what do you consider to be a length

5    inconsistent with promotional distribution?

6              MR. POZZA:  Objection.  Incomplete

7    hypothetical and ambiguous.

8              THE WITNESS:  Well, I looked at a variety

9    of factors.  As with regard to my classification of

10   works, for the most part, the works I examined were

11   all full-length long commercial works.  To the extent

12   works were short such as 30 seconds, a minute, two

13   minutes, something of that ilk, those tended not to

14   be works, especially within the pornographic content

15   we're talking about now, that were included in my

16   highly likely infringing assessment.

17             The hypothetical example you gave and

18   Professor Boyle's -- to my knowledge, I'm not sure if

19   Professor Boyle reviewed any of the files that I

20   reviewed in this category of pornography.  He -- he

21   expresses some sweeping conclusions about the adult

22   entertainment industry based on from what I can tell

23   is a review of three articles.  But I would -- so in

24   terms of the length of the works, those were the

25   works of that period or shorter that I tended not to

                                        Page 221

1   have in the infringing category.

2            BY MR. GUPTA:

3      Q.    Okay.   Mr. -- Professor Boyle also

4   criticized your analysis as to fair use.   What's your

5   reaction to that?

6            MR. POZZA:   Same standing objection.   Lack

7   of --

8            THE WITNESS:   Yeah, I mean, again, if you

9   show me his report, I can go example by example, but

10  Professor Boyle, again, throughout his report wants

11  to talk about theoretical issues rather than a review

12  of given files and whether those -- the distribution

13  of those files is an infringement or not.   He, in his

14  report, talks about fair use.   He talks about

15  personal storage.   He likes talking about zero and

16  one downloads.   Yet, a review of the actual files and

17  facts show that those considerations for the files

18  that I've examined are -- are just largely not

19  present.

20            Professor Boyle, were he inclined to do

21  so, could have reviewed these files to see that they

22  were full length commercial works being distributed,

23  and when I say distributed, as opposed to personal

24  storage, these were -- these were works where he

25  could merely take the Hotfile URL, paste it into his

Page 222

```
 1    Google search bar, and find those links online, as I
 2    did and as my data includes, along with my deposition
 3    testimony.  So, you know, he discusses the Sony case
 4    and home taping and fair use and personal use, but
 5    the download data and the distribution data and the
 6    actual files I reviewed really undermine the way he
 7    attempts to raise these issues and attempts to sort
 8    of cast them across a great number of files.  I just
 9    think factually he's -- he's off base about its
10    relevance.
11              BY MR. GUPTA:
12        Q.    Okay.  I'd like to hand you what was
13    previously marked as Zebrak Exhibit 115.
14        A.    Sure.
15        Q.    Can you tell me what that is?
16        A.    It is --
17              MR. POZZA:  Is this from the previous
18    deposition?
19              MR. GUPTA:  Yes.
20              MR. POZZA:  Okay.
21              THE WITNESS:  This appears to be sort of
22    background notes that I had and that my team worked
23    with as I ultimately arrived at my conclusions for
24    the 1750 files in the stats study portion of my work.
25              BY MR. GUPTA:
```

Page 223

```
 1   UNITED STATES OF AMERICA)

 2                            SS:

 3   DISTRICT OF COLUMBIA    )

 4

 5       I, SUSAN L. CIMINELLI, the officer before whom

 6   the foregoing deposition was taken, do hereby

 7   certify that the witness whose testimony appears in

 8   the foregoing deposition was duly sworn by me; that

 9   the testimony of said witness was taken by me to the

10   best of my ability and thereafter reduced to

11   typewriting under my direction; that I am neither

12   counsel for, related to, nor employed by any of the

13   parties to the action in which this deposition was

14   taken, and further that I am not a relative or

15   employee of any attorney or counsel employed by the

16   parties thereto, nor financially or otherwise

17   interested in the outcome of the action.

18

19                           _____

20                               SUSAN L. CIMINELLI

21

22   My commission expires:  11/30/2016

23

24

25
```

Page 296

1

2

3

4      I have read the foregoing transcript of my deposition

5

6      and find it to be true and accurate to the best of my

7

8      knowledge and belief.

9

10

11

12

13                  SCOTT A. ZEBRAK

14

15

16

17

18

19

20

21

22

23

24

25

Page 293

Deposition of Scott Zebrak – Day 2 (rebuttal)
January 20, 2012
Errata

| Location | Correction |
|---|---|
| 163:2 | change "highly unlikely infringing category" to "highly likely infringing category" |

Highly Confidential

Page 191

```
 1              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF FLORIDA
 2             CASE NO. 11-20427-WILLIAMS/TURNOFF
 3   - - - - - - - - - - - - - - - - - - - - - - - -
     DISNEY ENTERPRISES,
 4   INC., TWENTIETH CENTURY
     FOX FILM CORPORATION,
 5   UNIVERSAL CITY STUDIOS
     PRODUCTIONS LLLP,
 6   COLUMBIA PICTURES
     INDUSTRIES, INC., and
 7   WARNER BROS.
     ENTERTAINMENT, INC.,
 8
 9            Plaintiff,
10   v.
11   HOTFILE CORP., ANTON
     TITOV, and DOES 1-10,
12
13            Defendants.
14
     HOTFILE CORP.,
15
              Counterclaimant,
16
     v.
17
     WARNER BROS ENTERTAINMENT
18   INC.,
              Counterdefendant.
19
     - - - - - - - - - - - - - - - - - - - - - - - -
20                      VOLUME II
          H I G H L Y   C O N F I D E N T I A L
21       (Pursuant to protective order, the following
       transcript has been designated highly confidential)
22
         30(b)(6) DEPOSITION OF ANTON TITOV
23                Radisson Blu Hotel
                   Sofia, Bulgaria
24            Tuesday, December 6, 2011
                  AT:  9:10 a.m.
25              Job No: 44175
```

Exhibit 3

Highly Confidential

Page 192

1                   A P P E A R A N C E S
2    ATTORNEY FOR THE PLAINTIFFS:
3              JENNER & BLOCK
               BY:  STEVEN B. FABRIZIO, ESQ.
4              1099 New York Avenue, NW
5              Washington, DC  20001
6
7
8

     ATTORNEY FOR THE DEFENDANTS HOTFILE CORP.,
9    AND ANTON TITOV:
               FARELLA, BRAUN & MARTEL
10             BY:  RODERICK M. THOMPSON, ESQ.
               235 Montgomery Street
11             San Francisco, California  94104
12
13             BOSTON LAW GROUP
               VALENTIN GURVITS
14             825 Beacon Street
               Newton Center, MA 02459
15
16
17
18
19
20
21
22
23
24
25

Highly Confidential

Page 193

1    Also present:

2    Court reporter:

3            Fiona Farson

             TSG Reporting

4

5    Videographer:

6            Simon Rutson

             TSG Reporting

7

8    Interpreter:

9            Assist. Prof. Boris Naimushin, Ph.D.

10

11   Technical expert:

12           Kelly Truelove

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential

Page 340

1   Q.   When was that?

2   A.   In the very beginning.

3   Q.   February, March 2009?

4   A.   Yes, I believe so.

5   Q.   What about April 2009?

6   A.   Yes.

7   Q.   May 2009?

8        Well, let me ask it this way:  Do you know when that

9        changed?

10  A.   I believe that shortly after introducing SRA accounts,

11       SRA accounts started to block hashes.

12  Q.   And when did Hotfile introduce the SRA accounts?

13  A.   I'm not sure about the time, but maybe August 2009.

14  Q.   Okay.  So prior to that time, if ten different Hotfile

15       users had uploaded a file that had the identical hash,

16       Hotfile would store a single hash master, and each of

17       those users would get a distinct URL, each pointing to

18       that same single hash master.  Correct?

19  A.   That is correct.

20  Q.   Okay.  And again, prior to the time this changed,

21       in August 2009 or thereabouts, if Hotfile got a notice

22       from a copyright owner identifying one of those URLs

23       that pointed to the single hash master, Hotfile would

24       not block the master but instead would simply disable

25       the particular URL identified in the notice?

Highly Confidential

Page 341

1    MR. THOMPSON:  Objection.  Asked and answered.

2    A.  Yeah, for the particular URL will be disabled.

3    BY MR. FABRIZIO:

4    Q.  And after disabling that particular URL, would the URLs

5        for the other nine users in my illustration still be

6        able to download that file through the single hash

7        master?

8    A.  Probably, yes.

9    Q.  Currently -- just wait one second; I kind of feel like

10       it's dial-an-expert.  It's kind of like he's here.

11   MR. THOMPSON:  We can't hear what he's saying, though.

12   MR. FABRIZIO:  You can't hear what he's saying; I can.

13       I feel like a newscaster.

14   MR. THOMPSON:  That's right.  Maybe a puppet, huh?

15   BY MR. FABRIZIO:

16   Q.  Okay.  Sorry, my editor was talking.

17       Currently, Hotfile receives DMCA notices by regular

18       mail, correct?

19   A.  Correct.

20   Q.  By facsimile, correct?

21   A.  Correct.

22   Q.  By email, correct?

23   A.  Correct.

24   Q.  And by special rights holder account, correct?

25   A.  Correct.

Highly Confidential

Page 371

1                    HIGHLY CONFIDENTIAL
                  CERTIFICATE OF DEPONENT
2

3
     I, ANTON TITOV, hereby certify that I have read the
4    foregoing pages of my deposition of testimony taken in these
     proceedings on Tuesday, December 6, 2011, and, with the
5    exception of the changes listed on the next page and/or
     corrections, if any, find them to be a true and accurate
6    transcription thereof.

7

8

9

10
     Signed:  ...................................
11
     Name:    ANTON TITOV
12
     Date:    ..1./.20./.20.12..........
13

14

15

16

17

18

19

20

21

22

23

24

25

TSG Reporting - Worldwide    (877) 702-9580

Highly Confidential

Page 373

1          HIGHLY CONFIDENTIAL

2

3              E R R A T A

4        Deposition of ANTON TITOV

      Page/Line No.        Description              Reason for change
5

6      225:25    Remind me. --> There might be.   Correct transcription

7      234:20    Presentation --> representation   Correct transcription

8      234:20    cost of the --> concept of       Correct transcription

9      261:2     As --> That's                    Correct transcription

10     273:20    Limewire --> Limelight           Correct transcription

11     279:3     is --> would                     Correct transcription

12     293:11    following --> logging            Correct transcription

13     306:5     calls --> holds                  Correct transcription

14     306:6   service at hotfile.com --> to abuse@hotfile.com Correct trans.

15     321:6     would decide it --> with this ID   Correct transcription

16     333:20    brought --> blocked             Correct transcription

17     337:7     file --> file ID                 Correct transcription

18   Signed:  ....................

19   Name:   ANTON TITOV

20   Date:    ....................

21

22

23

24

25

Highly Confidential

```
                                                        Page 373
  1                    ·HIGHLY CONFIDENTIAL

  2

  3                        E R R A T A

                    Deposition of ANTON TITOV
  4
       Page/Line No.          Description           Reason for change
  5

  6    361:25          state --> table             Correct transcription

  7    368:7  users stay on our uploads --> users_cowner_upload  Correct trans

  8

  9

 10

 11

 12

 13

 14

 15

 16

 17

 18   Signed:      ...............................

 19   Name:    ANTON TITOV

 20   Date:    1/ 20/ 20 12 .............

 21

 22

 23

 24

 25
```

Highly Confidential

Page 372

1                    HIGHLY CONFIDENTIAL
                CERTIFICATE OF COURT REPORTER
2

3

    I, Fiona Farson, with TSG Reporting, hereby certify that the
4   testimony of the witness Anton Titov in the foregoing
    transcript, taken on Tuesday, December 6, 2011 was reported
5   by me in machine shorthand and was thereafter transcribed by
    me; and that the foregoing transcript is a true and accurate
6   verbatim record of the said testimony.
7

    I further certify that I am not a relative, employee,
8   counsel or financially involved with any of the parties to
    the within cause, nor am I an employee or relative of any
9   counsel for the parties, nor am I in any way interested in
    the outcome of the within cause.
10

11

12

13

14

    Signed:  ........................
15

    Fiona Farson
16

    Dated: 12/17/2011
17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 374

1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                    CASE NO. 11-20427-WILLIAMS/TURNOFF
3    - - - - - - - - - - - - - - - - - - - - - - - - - -
     DISNEY ENTERPRISES,
4    INC., TWENTIETH CENTURY
     FOX FILM CORPORATION,
5    UNIVERSAL CITY STUDIOS
     PRODUCTIONS LLLP,
6    COLUMBIA PICTURES
     INDUSTRIES, INC., and
7    WARNER BROS.
     ENTERTAINMENT, INC.,
8              Plaintiff,
9    v.
10   HOTFILE CORP., ANTON
     TITOV, and DOES 1-10,
11
12             Defendants.
13
14   HOTFILE CORP.,
15             Counterclaimant,
16   v.
17   WARNER BROS ENTERTAINMENT
     INC.,
18             Counterdefendant.
19   - - - - - - - - - - - - - - - - - - - - - - - - - -
                         VOLUME III
20        H I G H L Y   C O N F I D E N T I A L
          (Pursuant to protective order, the following
21   transcript has been designated highly confidential)
22         30(b)(6) DEPOSITION OF ANTON TITOV
                    Radisson Blu Hotel
23                   Sofia, Bulgaria
                Wednesday, December 7, 2011
24                  AT:  9:09 a.m.
25   Job # 44429

H I G H L Y   C O N F I D E N T I A L

Page 375

1   A P P E A R A N C E S

2       ATTORNEY FOR THE PLAINTIFFS:

            JENNER & BLOCK, LLP
3           BY:  STEVEN FABRIZIO, ESQ.
            1099 New York Avenue, NW
4           Washington, DC  20001

5

6

7

        ATTORNEY FOR THE DEFENDANTS HOTFILE CORP.,
8       AND ANTON TITOV:

            FARELLA, BRAUN & MARTEL, LLP
9           BY:  RODERICK THOMPSON, ESQ.
            235 Montgomery Street
10          San Francisco, California  94104

11

12          BOSTON LAW GROUP
            BY:  VALENTIN GURVITS
13          825 Beacon Street
            Newton Center, MA 02459

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 376

1    Also present:

2    Court reporter:

3            Fiona Farson

             TSG Reporting

4

5    Videographer:

6            Simon Rutson

             TSG Reporting

7

8    Interpreter:

9            Assist. Prof. Boris Naimushin, Ph.D.

10           Elena Alexieva

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 475

1          be a child file, why didn't Hotfile disable the URLs for

2          the parent file and all other child files?

3     MR. THOMPSON:  Objection, vague as to time.

4     BY MR. FABRIZIO:

5     Q.  In this period prior to August of 2009.

6     A.  I don't know.

7     Q.  In the same period, why didn't Hotfile disable the

8          single hash master reflected by those URLs?

9     A.  We didn't still realize it is necessary.

10    Q.  So, again, in this period of August 2009 and earlier, if

11         an uploading user had made four copies using the Hotfile

12         file copy feature, and a copyright owner wanted to give

13         Hotfile notice to prevent the infringement of that file,

14         the copyright owner would have to identify and send

15         notices for five different URLs?

16    MR. THOMPSON:  Objection, vague and complex, assumes facts.

17    A.  In case five URLs are used, it could be the case.

18    BY MR. FABRIZIO:

19    Q.  What is the source of your information that this changed

20         and hash blocking began in the August of 2009 timeframe?

21    A.  General discussions with others, and trying to remember

22         when it started.

23    Q.  Is there any way to look at any database to make a more

24         definitive determination?

25    MR. THOMPSON:  Objection, calls for speculation, overbroad.

HIGHLY CONFIDENTIAL

Page 476

1      A.  I can't think of any.

2      BY MR. FABRIZIO:

3      Q.  The hash blocking functionality, that's implemented

4          through source code, correct?

5      A.  Correct.

6      Q.  What's the name of the source code file that implements

7          hash blocking?

8      A.  There is no source code name for blocking, just in any

9          place where a block should be enforced, there is an SQL

10         update statement that will say "blocked field to 1."

11     Q.  There is a -- what type of statement?

12     A.  SQL.

13     Q.  What does that stand for?

14     A.  Um --

15     Q.  Oh, SQL?

16     A.  Yes, query language.  I am a bit cooked.  Can I... ?

17     MR. THOMPSON:  Take a break.

18     A.  Take a break?

19     BY MR. FABRIZIO:

20     Q.  Let me just --

21     A.  Mm-hmm.

22     Q.  And you said it would say "blocked field"?

23     A.  It will say "blocked field 1" like the document on here.

24     Q.  And just lastly, before we take our break, the source

25         code history would show revision dates when that code

HIGHLY CONFIDENTIAL

Page 493

1    Q.   You consider yourself a technologist, do you not?

2    A.   Yeah, I do.

3    Q.   Do you consider Mr. Vangelov a technologist?

4    A.   I won't say so.

5    Q.   Do you consider Mr. Stoyanov a technologist?

6    A.   To a certain extent.

7    Q.   And does he write computer code?

8    A.   To my best knowledge, he used to, like 20 years ago.

9    Q.   Excuse me -- did he write any of the code for Hotfile?

10   A.   No, he did not.

11   Q.   Did Mr. Vangelov?

12   A.   No, he did not.

13   Q.   Other than you and Mr. Chuburov, did anybody else write

14        the code for Hotfile?

15   A.   Vasil Kolev can write a code, but most of the time he

16        doesn't enjoy the process, so, if it's very necessary to

17        do some fix, he might do it, but it's not his general

18        practice to do so.

19   Q.   What about Mr. Ianakov?

20   A.   No, I don't think he writes any code.

21   Q.   In addition to his responsibilities in communicating

22        with users, did Mr. Ianakov promote Hotfile through

23        internet forums and the like?

24   MR. THOMPSON:   Objection, vague.

25   A.   Not since the beginning.

HIGHLY CONFIDENTIAL

Page 494

1    BY MR. FABRIZIO:

2    Q.  But in the beginning he did?

3    A.  I believe so.

4    Q.  Okay.  And you knew he was doing it at the beginning?

5    A.  I think so.

6    Q.  And you approved of him doing it at the beginning?

7    A.  I guess I didn't say anything, so ...

8    Q.  You understood he was trying to help Hotfile become more

9        well-known and gain users, correct?

10   A.  I think it was my understanding, yes.

11   Q.  So you considered his activities good for Hotfile?

12   MR. THOMPSON:  Objection, vague.

13   A.  I don't know about all his activities but, generally,

14       yes.

15   BY MR. FABRIZIO:

16   Q.  Do you know any of the forums on which Mr. Ianakov

17       promoted Hotfile?

18   MR. THOMPSON:  Objection, assumes facts.

19   A.  Nothing that I can remember now, they were in

20       interrogatory response.

21   BY MR. FABRIZIO:

22   Q.  Sorry for that short digression.  I want to go back to

23       the remote upload feature for a minute, and to help try

24       and place the timing of when the feature ceased to exist

25       -- well, let me ask you this -- strike that.

H I G H L Y   C O N F I D E N T I A L

Page 552

1                        HIGHLY CONFIDENTIAL
                     CERTIFICATE OF DEPONENT
2

3
        I, ANTON TITOV, hereby certify that I have read the
4    foregoing pages of my deposition of testimony taken in these
     proceedings on Wednesday, December 7, 2011, and, with the
5    exception of the changes listed on the next page and/or
     corrections, if any, find them to be a true and accurate
6    transcription thereof.

7

8

9

10

11   Signed: _____

12   Name:    ANTON TITOV

13   Date:    1/20/2012

14

15

16

17

18

19

20

21

22

23

24

25

H I G H L Y   C O N F I D E N T I A L

Page 554

1               HIGHLY CONFIDENTIAL

2     NAME OF CASE: Disney Enterprises Inc. v. Hotfile Corp.

3     DATE OF DEPOSITION: 12-7-2011

4     NAME OF WITNESS: ANTON TITOV

5     Reason Codes:

6         1.  To clarify the record.

7         2.  To conform to the facts.

8            3.  To correct transcription errors.

9     Page  396   Line  16   Reason   3

10    From  no                to      to

11    Page  402   Line  13   Reason   3

12    From  Googles           to    cookies

13    Page  402   Line  15   Reason   3

14    From  Googles           to    cookies

15    Page  418   Line  5    Reason   3

16    From  user field field  to   user input field

17    Page  439   Line  24   Reason   3

18    From  Lucyan            to      Luchian

19    Page  458   Line  5    Reason   5

20    From  only the          to    only if the

21    Page  483   Line  19   Reason   3

22    From to upload down the file from  to   will pull down the file from

23

24                        _____

25                        ANTON TITOV

HIGHLY CONFIDENTIAL

Page 554

1                    HIGHLY CONFIDENTIAL

2      NAME OF CASE: Disney Enterprises Inc. v. Hotfile Corp.

3      DATE OF DEPOSITION: 12-7-2011

4      NAME OF WITNESS: ANTON TITOV

5      Reason Codes:

6          1.  To clarify the record.

7          2.  To conform to the facts.

8             3.  To correct transcription errors.

9      Page __436__ Line __18__ Reason __3__

10     From __Lucyan_____ to __Luchian_____

11     Page __436__ Line __23__ Reason __3__

12     From __Lucyan_____ to __Luchian_____

13     Page __439__ Line __24__ Reason __3__

14     From __Lucyan_____ to __Luchian_____

15     Page __439__ Line __2__ Reason __3__

16     From __Lucyan's_____ to __Luchian's_____

17     Page _____ Line _____ Reason _____

18     From _____ to _____

19     Page _____ Line _____ Reason _____

20     From _____ to _____

21     Page _____ Line _____ Reason _____

22     From _____ to _____

23

24     _____

25                        ANTON TITOV

TSG Reporting - Worldwide

HIGHLY CONFIDENTIAL

Page 553

1                    HIGHLY CONFIDENTIAL
                CERTIFICATE OF COURT REPORTER
2

3

      I, Fiona Farson, with TSG Reporting, hereby certify that the
4     testimony of the witness Anton Titov in the foregoing
      transcript, taken on Wednesday, December 7, 2011 was
5     reported by me in machine shorthand and was thereafter
      transcribed by me; and that the foregoing transcript is a
6     true and accurate verbatim record of the said testimony.
7

      I further certify that I am not a relative, employee,
8     counsel or financially involved with any of the parties to
      the within cause, nor am I an employee or relative of any
9     counsel for the parties, nor am I in any way interested in
      the outcome of the within cause.
10

11

12

13

14

      Signed: _____
15

      Fiona Farson
16

      Dated: 12-19-2011
17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 555

1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
2             CASE NO. 11-20427-WILLIAMS/TURNOFF
3    - - - - - - - - - - - - - - - - - - - - - - - - -
     DISNEY ENTERPRISES,
4    INC., TWENTIETH CENTURY
     FOX FILM CORPORATION,
5    UNIVERSAL CITY STUDIOS
     PRODUCTIONS LLLP,
6    COLUMBIA PICTURES
     INDUSTRIES, INC., and
7    WARNER BROS.
     ENTERTAINMENT, INC.,
8
9                Plaintiff,
10   v.
11   HOTFILE CORP., ANTON
     TITOV, and DOES 1-10,
12
13               Defendants.
14
15   HOTFILE CORP.,
16               Counterclaimant,
17   v.
18   WARNER BROS ENTERTAINMENT
     INC.,
19               Counterdefendant.
20   - - - - - - - - - - - - - - - - - - - - - - - - -
                          VOLUME IV
21         H I G H L Y   C O N F I D E N T I A L
            (Pursuant to protective order, the following
22      transcript has been designated highly confidential)
23            30(b)(6) DEPOSITION OF ANTON TITOV
                     Radisson Blu Hotel
24                    Sofia, Bulgaria
                 Thursday, December 8, 2011
25   Job #44430            AT:  9:10 a.m.

HIGHLY CONFIDENTIAL

Page 556

1              A P P E A R A N C E S

2     ATTORNEY FOR THE PLAINTIFFS:

3              JENNER & BLOCK
               BY:  STEVEN FABRIZIO, ESQ.

4              1099 New York Avenue, NW
               Washington, DC  20001

5

6

7

8

      ATTORNEY FOR THE DEFENDANTS HOTFILE CORP.,

9     AND ANTON TITOV:

               FARELLA, BRAUN & MARTEL

10             BY:  RODERICK THOMPSON, ESQ.
               235 Montgomery Street

11             San Francisco, CA 94104

12

13             BOSTON LAW GROUP
               By: VALENTIN GURVITS, ESQ.

14             825 Beacon Street
               Newton Center, MA 02459

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 557

1    Also present:

2    Court reporter:

3            Fiona Farson

             TSG Reporting

4

5    Videographer:

6            Simon Rutson

             TSG Reporting

7

8    Interpreter:

9            Assist. Prof. Boris Naimushin, Ph.D.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 574

1    MR. THOMPSON:   Objection, lacks foundation, calls for

2        speculation.

3    A.  I don't really know.

4    BY MR. FABRIZIO:

5    Q.  Do you know any?

6    A.  Nothing that I can recall.

7    Q.  Okay.  Was he given discretion to select his own forums

8        and blogs and places where he would promote Hotfile, or

9        did you have to tell him which ones to use?

10   MR. THOMPSON:   Objection, assumes facts not in evidence,

11       misconstrues prior testimony.

12   A.  I don't think I ever told him where for ...

13   BY MR. FABRIZIO:

14   Q.  So was he permitted to make his own selections?

15   MR. THOMPSON:   Again, assumes facts not in evidence.

16   A.  I can't recall.

17   BY MR. FABRIZIO:

18   Q.  Do you recall ever telling him to stop promoting on any

19       particular site or forum?

20   A.  No, I don't recall.

21   Q.  Okay.  Was he -- was Mr. Ianakov permitted to enlist

22       other people to help him promote Hotfile?

23   MR. THOMPSON:   Objection, assumes facts not in evidence,

24       misconstrues prior testimony.

25   A.  Can I have the question again?

H I G H L Y   C O N F I D E N T I A L

Page 729

1

CERTIFICATE OF DEPONENT

2

3

    I, ANTON TITOV, hereby certify that I have read the

4     foregoing pages of my deposition of testimony taken in these
proceedings on Thursday, December 8, 2011, and, with the

5     exception of the changes listed on the next page and/or
corrections, if any, find them to be a true and accurate

6     transcription thereof.

7

8

9

10

Signed: ...................

11

Name:   ANTON TITOV

12

Date:   1/28/2012

13

14

15

16

17

18

19

20

21

22

23

24

25

TSG Reporting - Worldwide

H I G H L Y   C O N F I D E N T I A L

Page 731

1    NAME OF CASE: Disney Enterprises Inc. v. Hotfile Corp.

2    DATE OF DEPOSITION: 12-8-2011

3    NAME OF WITNESS: ANTON TITOV

4    Reason Codes:

5         1.  To clarify the record.

6         2.  To conform to the facts.

7         3.  To correct transcription errors.

8    Page __581__ Line __8__ Reason __3__

9    From __make it to the__ to __make it to__

10   Page __581__ Line __9__ Reason __3__

11   From __log, the__ to __log the__

12   Page __582__ Line __17__ Reason __3__

13   From __cannot exist__ to __can notice if__

14   Page __582__ Line __20__ Reason __1__

15   From __accounts hacking, limitation__ to __accounts to prevent hacking is a limitation__

16   Page __582__ Line __22__ Reason __3__

17   From __force on__ to __force hacking on__

18   Page __586__ Line __16__ Reason __3__

19   From __or__ to __of__

20   Page __586__ Line __17__ Reason __3__

21   From __servers of__ to __service__

22

23   _____

24                 ANTON TITOV

25

TSG Reporting – Worldwide

H I G H L Y   C O N F I D E N T I A L

Page 731

1    NAME OF CASE: Disney Enterprises Inc. v. Hotfile Corp.

2    DATE OF DEPOSITION: 12-8-2011

3    NAME OF WITNESS: ANTON TITOV

4    Reason Codes:

5         1.  To clarify the record.

6         2.  To conform to the facts.

7         3.  To correct transcription errors.

8    Page __587__ Line __3__ Reason __3__

9    From __all product__ to __will protect__

10   Page __587__ Line __5__ Reason __3__

11   From __stage__ to __limitation__

12   Page __589__ Line __24__ Reason __3__

13   From __it's correct__ to __it isn't a correct__

14   Page __592__ Line __25__ Reason __1__

15   From __it__ to __we would__

16   Page __597__ Line __25__ Reason __3__

17   From __the shareholders__ to __two shareholders__

18   Page __611__ Line __22__ Reason __3__

19   From __Lucyan__ to __Luchian__

20   Page __612__ Line __8__ Reason __3__

21   From __Lucyan__ to __Luchian__

22

23                              _____

24                              ANTON TITOV

25

HIGHLY CONFIDENTIAL

Page 731

1    NAME OF CASE: Disney Enterprises Inc. v. Hotfile Corp.

2    DATE OF DEPOSITION: 12-8-2011

3    NAME OF WITNESS: ANTON TITOV

4    Reason Codes:

5        1.  To clarify the record.

6        2.  To conform to the facts.

7        3.  To correct transcription errors.

8    Page __612__ Line __15__ Reason __3__

9    From __Lucyan__ to __Luchian__

10   Page __612__ Line __17__ Reason __3__

11   From __Lucyan__ to __Luchian__

12   Page __616__ Line __8__ Reason __3__

13   From __FABRIZIO__ to __THOMPSON__

14   Page __616__ Line __13__ Reason __3__

15   From __man__ to __him__

16   Page __620__ Line __4__ Reason __3__

17   From __Lemuria paid__ to __Lemuria ever paid__

18   Page __620__ Line __4__ Reason __3__

19   From __other__ to __any__

20   Page __620__ Line __5__ Reason __3__
         and if there is still other     and the answer is still no, and
21   From __shareholders__ to __other shareholders, no.__

22

23                               _____

24                               ANTON TITOV

25

TSG Reporting - Worldwide

H I G H L Y   C O N F I D E N T I A L

Page 731

1    NAME OF CASE: Disney Enterprises Inc. v. Hotfile Corp.

2    DATE OF DEPOSITION: 12-8-2011

3    NAME OF WITNESS: ANTON TITOV

4    Reason Codes:

5           1.  To clarify the record.

6           2.  To conform to the facts.

7           3.  To correct transcription errors.

8    Page  626   Line  22   Reason    3

9    From  financial election    to    FinArt transaction

10   Page  632   Line  25   Reason  3

11   From  a port tool        to    upload tool

12   Page  649   Line  25   Reason    3

13   From  paid to the        to   paid through the

14   Page  675   Line  13   Reason    3

15   From  responding to the  to   responding to user

16   Page  675   Line  14   Reason    3

17   From  query in           to   inquiries via

18   Page  675   Line  15   Reason    1

19   From  frequently questions  to  frequently asked questions

20   Page  701   Line  11   Reason    3

21   From   ask him the question to   ask him a new question

22

23                        _____

24                        ANTON TITOV

25

H I G H L Y   C O N F I D E N T I A L

Page 731

1  NAME OF CASE: Disney Enterprises Inc. v. Hotfile Corp.

2  DATE OF DEPOSITION: 12-8-2011

3  NAME OF WITNESS: ANTON TITOV

4  Reason Codes:

5       1.  To clarify the record.

6       2.  To conform to the facts.

7       3.  To correct transcription errors.

8  Page __723__ Line __16__ Reason __3__

9  From ____hosted____ to ____posted____

10 Page 726:25-727:1 Line _____ Reason __3__

11 From __our court file__ to __Hotfile__

12 Page __611__ Line __22__ Reason __3__

13 From __Lucyan__ to __Luchian__

14 Page __612__ Line __8__ Reason __3__

15 From __Lucyan__ to __Luchian__

16 Page __612__ Line __12__ Reason __3__

17 From __Lucyan__ to __Luchian__

18 Page __612__ Line __15__ Reason __3__

19 From __Lucyan__ to __Luchian__

20 Page __612__ Line __17__ Reason __3__

21 From __Lucyan__ to __Luchian__

22

23

24                    ANTON TITOV

25

TSG Reporting - Worldwide

HIGHLY CONFIDENTIAL

Page 730

1                      HIGHLY CONFIDENTIAL
                 CERTIFICATE OF COURT REPORTER
2

3

     I, Fiona Farson, with TSG Reporting, hereby certify that the
4    testimony of the witness Anton Titov in the foregoing
     transcript, taken on Thursday, December 8, 2011 was reported
5    by me in machine shorthand and was thereafter transcribed by
     me; and that the foregoing transcript is a true and accurate
6    verbatim record of the said testimony.

7

     I further certify that I am not a relative, employee,
8    counsel or financially involved with any of the parties to
     the within cause, nor am I an employee or relative of any
9    counsel for the parties, nor am I in any way interested in
     the outcome of the within cause.

10

11

12

13

14

     Signed:  ........................
15

     Fiona Farson
16

     Dated: 12-20-2011
17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants.*

_____/

### DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

| | |
|---|---|
| PROPOUNDING PARTY: | Plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment |
| RESPONDING PARTIES: | Defendants Hotfile Corporation and Anton Titov (collectively "Hotfile")[1] |
| SET NO.: | One (1) |

### GENERAL OBJECTIONS

1.    Hotfile has not completed its investigation of facts, witnesses or documents

---

[1] The Defendants reserve their respective rights to assert all appropriate separate defenses. In particular, Mr. Titov has moved to dismiss all claims against him individually and specifically denies that he has the ability to supervise any alleged infringing activity or has a financial interest in such activity. See Motion and Memorandum Etc., filed 3/31/11, Dkt. 50 at 17. Mr. Titov is included in the shorthand term "Hotfile" along with Hotfile Corp. solely as a convenience and in light of the Parties agreement "that discovery requests served by one side on the opposing side will be equally applicable to all parties on the other side." Joint Scheduling Conference Report, filed 4/15/11, Dkt. 54 at 16. Nothing in these responses is an admission by Anton Titov or Hotfile Corp. of any particular relationship between them or any other fact.

**Exhibit 4**

relating to this case, has not completed discovery, has not completed analysis of available information, and has not completed preparation for trial. Hotfile reserves the right to supplement its response to each and every request for production of documents (or part thereof) without obligating itself to do so, and reserves the right to introduce and rely upon such information in the course of this litigation.

2.     All of the responses set forth below are based solely on such information and documents that are available to and specifically known to Hotfile at this time. It is anticipated that further discovery, independent investigation, and analysis may lead to substantial additions or changes in, and variations from the responses set forth herein.

3.     Hotfile objects to this request for production to the extent that it is vague, ambiguous, overbroad, and requires an unduly burdensome search for and production of, documents that are neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence, and which will result in unnecessary burden and undue expense to Hotfile.

4.     Hotfile objects to this request for production to the extent that it seeks disclosure of information or documents protected from disclosure or production by the attorney-client privilege, the attorney work-product doctrine, or any other privilege available under statutory, constitutional or common law. Inadvertent production of any such information or documents shall not constitute waiver of any privilege or any other ground for objecting to discovery with respect to such information or documents, nor shall inadvertent production waive Hotfile's right to object to the use of any such information or documents in any proceedings.

5.     Hotfile objects to this request for production to the extent that it seeks electronically stored information that is not reasonably accessible to Hotfile because of undue burden or cost.

6.     Hotfile objects to this request for production to the extent that it calls for disclosure of private, proprietary, and confidential information. Hotfile will not produce any documents – including, but not limited to, documents containing private, proprietary, and/or

confidential information – unless and until a Protective Order is issued in this litigation. Hotfile reserves its right to object to disclosure of any private, proprietary, and confidential information in light of the terms of the Protective Order in this litigation.

7.     Hotfile objects to each of the Requests to the extent it seeks proprietary information of third parties which Hotfile is not authorized to disclose. Hotfile will not produce documents containing private, proprietary, and/or confidential information unless and until a Protective Order is issued in this litigation. Hotfile further reserves its right, notwithstanding any Protective Order, to object to production of any private, proprietary, personal, financial, confidential or other similar information based on any state, federal, or international standards or laws governing privacy.

8.     Hotfile objects to the Definition of "Hotfile users" as vague, ambiguous, and overbroad. As currently defined, that term purportedly refers to every internet user who has ever accessed the Hotfile.com website for any purpose, irrespective of whether a given individual has actually downloaded files from or uploaded files to Hotfile.com. It is impossible for Hotfile to know the identity of every person who has ever accessed the Hotfile website.

To the extent that Plaintiffs' Requests seek information regarding or related to all such internet users, such requests are unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

9.     Hotfile objects to the Definition of "You" as overbroad. As currently defined, that term would include any entity, business venture, or organization subject to Anton Titov's control (assuming any such entity, business venture or organization exists), irrespective of whether such entity has any relation or relevance to the present dispute. To the extent that Plaintiffs' Requests seek information regarding or related to all such entities, such requests are unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

10.     Hotfile objects to the Definition of "Hotfile entity" as overbroad. As currently defined, that term would include any entity, business venture, or organization subject to any

Defendant's control (assuming any such entity, business venture or organization exists), irrespective of whether such entity has any relation or relevance to the present dispute. To the extent that Plaintiffs' Requests seek information regarding or related to all such entities, such requests are unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Hotfile will respond to these Requests on behalf of themselves, and will produce documents within their possession, custody, or control.

11.     Hotfile objects to the Definition of "User Data" as overbroad and unduly burdensome. As currently defined, that term purportedly includes "all electronic data" within Hotfile's possession regarding any Hotfile user, irrespective of whether such data has any relation or relevance to the present dispute. To the extent that Plaintiffs' Requests seek "all electronic data" regarding Hotfile users, such requests are unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and violative of United States and foreign privacy laws.

12.     Hotfile objects to the Definition of "Affiliate Data" as overbroad and unduly burdensome. As currently defined, that term purportedly includes "all electronic data" within Hotfile's possession regarding any Hotfile Affiliate user or the Hotfile Affiliate program generally, irrespective of whether such data has any relation or relevance to the present dispute. To the extent that Plaintiffs' Requests seek "all electronic data" regarding the Hotfile Affiliate program and Affiliate users, such requests are unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and violative of United States and foreign privacy laws.

13.     Hotfile objects to the providing of information about activities outside the United States as overbroad and unduly burdensome. "Federal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States." *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004). Hotfile objects to all requests that seek production of documents related to conduct occurring outside the United States.

14.     Hotfile objects to providing information about alleged copyrighted material other than the titles specifically identified in Exhibit A to the Complaint.   Unless otherwise noted, Hotfile will only respond with respect to such titles, as they are the only alleged copyrighted materials presently in dispute in this action.  Hotfile further objects that it is unreasonably burdensome and wasteful to impose on Hotfile the task of attempting to match any content files uploaded on Hotfile.com to the works identified in Exhibit A to the Complaint.  Hotfile users have uploaded literally tens of millions of content files and Hotfile has no feasible method for determining which of those files may correspond to any of the works identified in Exhibit A to the Complaint.  This unreasonable burden is especially objectionable given that Plaintiffs have represented that they have a listing of the links to content on hotfile.com that Plaintiffs content to house infringing content but Plaintiffs have refused to provide the list to Hotfile for purposes of responding to discovery.

15.     Hotfile objects to this request for production to the extent it imposes on Hotfile obligations that exceed or are inconsistent with the obligations imposed by the Federal Rules of Civil Procedure.

16.     Hotfile objects to this request for production to the extent it imposes on Hotfile obligations that are inconsistent with United States or foreign privacy laws.

17.     All responses to this request for production are made without in any way waiving or intending to waive, but on the contrary preserving and intending to preserve:

      a.     all objections as to the competence, relevance, and admissibility of any documents or information produced in response to these requests for production as evidence for any purpose in subsequent proceedings or at the trial of this or any other action, arbitration, proceeding or investigation;

      b.     the right to object on any ground at any time to the use of any of the documents or information provided in response to these requests for productions, or the subject matter thereof, in any subsequent proceedings or at any trial(s) of this action, or any other action, arbitration, proceeding or investigation; and

c.      the right to object on any ground at any time to a demand for further responses to this request for production or any other requests, or to other discovery proceedings involving or relating to the subject matter of these requests for production of documents.

18.     The general objections stated herein are incorporated by reference into each response herein, as if fully set forth below.  While Hotfile has responded to this request for production, it does so without waiving any right to object to any further inquiry or any effort to compel responses beyond those provided herein.  Any response provided herein is subject to, and limited by, all general and specific objections stated herein.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

Subject to Instruction 22 *supra*, all Content Reference Data.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Hotfile incorporates by reference its general objections to this request for production of documents.  Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks Content Reference Data for all files ever uploaded to, stored on and/or downloaded Hotfile.com, without any limitation whatsoever.  This request covers millions of files, many or most of which have no relationship to the two claims of copyright infringement set forth in the Complaint and/or the approximately 150 titles identified in Exhibit A to the Complaint as to which infringement is claimed.   Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws by requesting personal and/or financial information about Hotfile users.  Hotfile further objects to this request to the extent it seeks documents not in the possession, custody, or control of Hotfile and insofar as it would require Hotfile to create documents that do not presently exist.  Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to

CASE NO. 11-20427-JORDAN

lead to the discovery of admissible evidence insofar as it seeks documents or information related to alleged copyright infringement activity occurring entirely outside the United States.  As United States copyright law has no extraterritorial effect, such activities are not relevant to the present dispute.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive data in its possession, custody, or control if it exists for video files uploaded or downloaded in the United States whose filename matches one of the copyrighted works specifically identified in the complaint or otherwise identified by Plaintiffs as infringing, to the extent that such documents are located through a reasonable and diligent search, such data to include:

1.  the numerals in the Hotfile URL;

2.  the Hotfile-assigned identifier;

3.  the Hotfile user identification number and redacted IP address for the uploading Hotfile user;

4.  the Hotfile user-supplied filename;

5.  the size in bytes;

6.  the date and time of uploading to Hotfile;

7.  the redacted IP address from which each such file was uploaded to Hotfile;

8.  the number of times each such file has been downloaded from Hotfile,

9.  when each such file was downloaded;

10.  whether each such file is a copy of another file and the unique identifier associated with such copies;

11.  whether the file remains active; and

12.  pursuant to response to Request No. 5, any takedown notice that may be associated with each such file.

## REQUEST FOR PRODUCTION NO. 2:

Subject to Instruction 22 supra, all User Data.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "all electronic data" reflecting information about Hotfile users and it seeks information concerning all Hotfile users without any limitation whatsoever. This request purports to cover anyone who has ever uploaded or downloaded files on Hotfile's system, which covers millions of files, many or most of which have no relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles identified in Exhibit A to the Complaint as to which infringement is claimed. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to "Hotfile users" as that term is defined in the Definitions and Instructions. Plaintiffs' definition includes every internet user who has ever accessed the Hotfile website, regardless of whether such user has uploaded or downloaded files from Hotfile. It is impossible for Hotfile to know the identity of every person who has ever accessed the Hotfile website. Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws by requesting personal and/or financial information about Hotfile users. Hotfile further objects to this request to the extent it seeks documents not in the possession, custody, or control of Hotfile and insofar as it would require Hotfile to create documents that do not presently exist.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive data in its possession, custody, or control if it exists in relation to user activity regarding video files uploaded or downloaded in the United States whose filename matches one of the copyrighted works specifically identified in the complaint or otherwise identified by Plaintiffs as infringing, such data to include: user activity records or log files (redacted to protect user confidentiality and privacy but disclosing Hotfile user ID); and

documents sufficient to show the top cumulative payments by user ID to Hotfile's top 500 users worldwide, to the extent that such data are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 3:**

Subject to Instruction 22 *supra*, all Affiliate Data.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "all electronic data" reflecting information about Hotfile users who participate in Hotfile's Affiliate program without any limitation whatsoever. This request purports to cover anyone who has ever participated in Hotfile's affiliate program, many or most of whom have no relationship to the two claims of copyright infringement set forth in the Complaint and/or the approximately 150 titles identified in Exhibit A to the Complaint as to which infringement is claimed. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to "Hotfile users" as that term is defined in the Definitions and Instructions. Plaintiffs' definition includes every internet user who has ever accessed the Hotfile website, regardless of whether such user has uploaded or downloaded files from Hotfile. It is impossible for Hotfile to know the identity of every person who has ever accessed the Hotfile website. Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws by requesting personal and/or financial information about Hotfile users. Hotfile further objects to this request to the extent it seeks documents not in the possession, custody, or control of Hotfile and insofar as it would require Hotfile to create documents that do not presently exist.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive data in its possession, custody, or control if it exists in relation to Hotfile affiliates using IP addresses in the United States, such data to include: URLs; IP addresses redacted to protect individual confidentiality and privacy; traffic from such URLs and resulting

number of downloads, if such information exists; the number of premium subscriptions resulting from traffic from such URLs; documents sufficient to show the method for calculating payments to affiliates; and documents sufficient to show the top cumulative payments by user ID to Hotfile's top 500 users worldwide, to the extent that such data are located through a reasonable and diligent search. Hotfile will also produce documents relating to communications between Hotfile and any Hotfile affiliate, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 4:**

All Content files. Production of such files to Plaintiffs shall be deferred until an appropriate sample or subset can be identified based on other documents produced in response to these requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks all files ever uploaded to, stored on and/or downloaded Hotfile.com, without any limitation whatsoever. This request covers millions of files, many or most of which have no relationship to the two claims of copyright infringement set forth in the Complaint and/or the approximately 150 titles identified in Exhibit A to the Complaint as to which infringement is claimed. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to "Hotfile users" as that term is defined in the Definitions and Instructions. Plaintiffs' definition includes every internet user who has ever accessed the Hotfile website, regardless of whether such user has uploaded or downloaded files from Hotfile. It is impossible for Hotfile to know the identity of every person who has ever accessed the Hotfile website. Hotfile cannot reasonably be expected to know whether individuals are Hotfile users unless they identify themselves as such. Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or

European privacy laws insofar as it covers private or personal files that users have uploaded to and/or stored on Hotfile. Hotfile further objects to this request on the grounds that it seeks confidential and private information that is protected by, among other things, the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* and the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*

Hotfile also objects to this request as violative of the Federal Rules of Civil Procedure, which do not permit the promulgation of a request known to be overbroad (such as "all your documents" or "all content files") in anticipation of promulgating a subsequent request known to describe the documents actually sought in the litigation. No Rule permits Plaintiffs to articulate a request which, by its terms, is immediately held in abeyance pending further discovery. Hotfile will respond to any subsequent request of Plaintiffs when set forth pursuant to Rule 34 of the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 5:**

All documents pertaining to:

a) Any takedown, cease and desist letter, or other notice received by you or any Hotfile Entity regarding any file or activity hosted on the Hotfile Website;

b) Any actions taken by any Defendant or Hotfile Entity to effectuate the removal of any material from Hotfile's Website;

c) Any technical assistance provided by any Defendant or Hotfile Entity to any Hotfile user, including with respect to uploading files to Hotfile, downloading files from Hotfile, or performing any other operation on the Hotfile Website;

d) The features and functionality of the Hotfile Website;

e) The nature and types of Content Files available on or through the Hotfile Website;

f) The geolocation of Hotfile users;

g) The reasons Hotfile users are attracted to the Hotfile Website;

h) Any online document hosting or "locker" websites, including Rapidshare, Megaupload, and Google Docs;

i) Any investors or potential investors in any Hotfile Entity;

j)  Hotfile's "Affiliate" program;

k)  Hotfile's "Reseller" program;

l)  Defendants' or any Hotfile Entity's termination, suspension, or limitation of any Hotfile user's access to Hotfile (or to particular features of Hotfile), for any reason other than the Hotfile user's voluntary cancellation of their subscription or nonpayment of the user's subscription fees;

m) Defendants' or any Hotfile Entity's removal, deletion, or disabling of access (in whole or in part) to any Content Files;

n)  Copyrighted content, copyright laws, copyright infringement, or infringing activity on or through the Hotfile Website;

o)  This Action, the action in *Liberty Media Holdings, LLC v. Hotfile Corp. et al.*, No. 1:11-cv-20056-AJ (S.D. Fla.), the action in *Liberty Media Holdings, LLC v. Hotfile.com, et al.*, No. 3:09-CV-2396-D (N.D. Tex.), and the action in *Perfect 10, Inc. v. Hotfile Corp. et al.*, No. 2:10-cv-02031 (S.D. Cal.), excluding privileged communications with counsel and counsel's protected work product; and

p)  Any marketing, business plan or strategy for the Hotfile Website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request on the basis of the attorney client privilege and attorney work-product doctrine. Hotfile further objects to this request to the extent it seeks documents not in the possession, custody, or control of Hotfile. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to "Hotfile users" as that term is defined in the Definitions and Instructions. Plaintiffs' definition includes every internet user who has ever accessed the Hotfile website, regardless of whether such user has uploaded or downloaded files from Hotfile. It is impossible for Hotfile to know the identity of every person who has ever accessed the Hotfile website. Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrases "technical assistance," "features and functionality," "attracted," and "nature and types." Hotfile further objects to this request on the grounds that it seeks

CASE NO. 11-20427-JORDAN

information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding all files ever uploaded to, stored on and/or downloaded Hotfile.com, without any limitation whatsoever. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks documents about Hotfile generally without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks documents pertaining to other litigation not relevant to the present dispute. Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws by seeking private, personal and/or financial information. Hotfile further objects to this request on the grounds that it seeks confidential and private information that is protected by, among other things, the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* and the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, and to the extent that such documents are located through a reasonable and diligent search, comprising:

1.  DMCA takedown requests received by Hotfile regarding files hosted on the Hotfile site;

2.  Documents sufficient to show actions taken by Hotfile to take down files in response to DMCA requests;

3.      Technical assistance provided by Hotfile to Hotfile users with an IP address in the United States, including with respect to uploading files to Hotfile, downloading files from Hotfile, or performing other operations on the Hotfile Website;

4.      Documents sufficient to show the features and functionality of the Hotfile website;

5.      Video files uploaded or downloaded in the United States whose filename matches one of the copyrighted works specifically identified in the complaint or otherwise identified by Plaintiffs as infringing, and Hotfile's support e-mails with users regarding these files;

6.      U.S. IP addresses of users who have uploaded or downloaded files whose filename matches one of the copyrighted works specifically identified in the complaint or otherwise identified by Plaintiffs as infringing, redacted to protect individual user confidentiality and privacy;

7.      User e-mails to Hotfile stating why they are attracted to Hotfile, if any exist;

8.      Discussion of any online document hosting or "locker" websites, including Rapidshare, Megaupload, and Google Docs;

9.      Documents sufficient to show the investors in Hotfile, if any exist;

10.      Documents sufficient to show, for Hotfile affiliates using IP addresses in the United States, the affiliates' URLs; IP addresses redacted to protect individual confidentiality and privacy; traffic from such URLs and resulting number of downloads, if such information exists; the number of premium subscriptions resulting from traffic from such URLs; documents sufficient to show the method for calculating payments to affiliates; (for the top cumulative payments by user ID to Hotfile's top 500 users worldwide see Interrogatory Responses).  Hotfile will also produce related

communications between Hotfile and any Hotfile affiliate, to the extent Hotfile can ascertain that an affiliate is involved in such communications.

11.     Documents sufficient to show Hotfile's reseller program and related communications between Hotfile and any Hotfile reseller, to the extent Hotfile can ascertain that a reseller is involved in such communications.

12.     Pursuant to ¶ 2 above, documents sufficient to show each Hotfile account that has been terminated, suspended, or limited user's access to Hotfile (or to particular features of Hotfile), for any reason other than the Hotfile user's voluntary cancellation of their subscription or nonpayment of the user's subscription fees, and Hotfile's removal, deletion, or disabling of access (in whole or in part) to, content;

13.     Pursuant to ¶ 2 above, documents sufficient to show Hotfile's removal, deletion, or disabling of access (in whole or in part) to content;

14.     Nonprivileged documents regarding content copyrighted in the U.S., U.S. copyright law, infringement of U.S. copyright law, or activity on or through the Hotfile Website constituting infringement of U.S. copyright law;

15.     Nonpublic court filings in *Liberty Media Holdings, LLC v. Hotfile Corp. et al.*, No. 1:11-cv-20056-AJ (S.D. Fla.), *Liberty Media Holdings, LLC v. Hotfile.com, et al.*, No. 3:09-CV-2396-D (N.D. Tex.), and *Perfect 10, Inc. v. Hotfile Corp. et al.*, No. 2:10-cv-02031 (S.D. Cal.); and

16.     Marketing, business plans or strategies for Hotfile, if they exist.

**REQUEST FOR PRODUCTION NO. 6:**

All documents pertaining to communications between you or Hotfile Entity and any Hotfile user, including any communications pertaining to the topics in Request No. 5 *supra*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile user" as that term is defined in the Definitions and Instructions. Plaintiffs' definition includes every internet user who has ever accessed the Hotfile website, regardless of whether such user has uploaded or downloaded files from Hotfile. It is impossible for Hotfile to know the identity of every person who has ever accessed the Hotfile website. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks documents about Hotfile generally without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks documents pertaining to other litigation not relevant to the present dispute. Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws insofar as it covers private or personal files that users have uploaded to and/or stored on Hotfile. Hotfile further objects to this request on the grounds that it seeks confidential and private information that is protected by, among other things, the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* and

the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* Hotfile further objects to this request as duplicative of Request For Production No. 5.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control (if they exist) as set forth in Response To Request No. 5 above, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 7:**

All documents pertaining to communications with or among any employee, owner, shareholder, principal, officer, director, agent, business partner, or contractor of any Defendant or Hotfile Entity pertaining to the topics in Request No. 5 *supra*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other entities unrelated to the present litigation. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks documents about Hotfile generally without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks documents pertaining to other litigation not relevant to the present dispute. Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would

require Hotfile to violate United States or European privacy laws insofar as it covers private or personal files that users have uploaded to and/or stored on Hotfile.  Hotfile further objects to this request as duplicative of Request For Production No. 5.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control (if they exist) as set forth in Response To Request No. 5 above, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 8:**

All documents pertaining to communications between you or any Hotfile Entity and any third party pertaining to the topics in Request No. 5 *supra*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Hotfile incorporates by reference its general objections to this request for production of documents.  Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents."  Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions.  Hotfile further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other entities unrelated to the present litigation.  Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks documents about Hotfile generally without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint.  Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks documents pertaining to other litigation not relevant to the present dispute.  Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would

CASE NO. 11-20427-JORDAN

require Hotfile to violate United States or European privacy laws insofar as it covers private or personal files that users have uploaded to and/or stored on Hotfile. Hotfile further objects to this request as duplicative of Request For Production No. 5 and Request for Production No. 6.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control (if they exist) as set forth in Response To Request No. 5 above, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 9:**

All documents pertaining to communications between you or any Hotfile Entity and any participant in Hotfile's "Affiliate" programs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as it seeks documents related to any communications between any "Hotfile Entity" and "any participant in Hotfile's 'Affiliate' programs," irrespective of whether those communications are related to the present dispute. Hotfile further objects to this request as overbroad and unduly burdensome insofar as Hotfile may not have the ability to ascertain who is a participant in its Affiliate program. Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws insofar as it covers private or personal files that users have uploaded to and/or stored on Hotfile. Hotfile further objects to this request as duplicative of Request For Production No. 5, Request for Production No. 6, and Request for Production No 8.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist relating to communications between Hotfile and any Hotfile affiliate about the affiliate program, to the extent that such documents are located through a reasonable and diligent search and to the extent Hotfile is reasonably able to identify participants in its affiliate program.

**REQUEST FOR PRODUCTION NO. 10:**

All documents pertaining to communications between you or any Hotfile Entity and any participant in Hotfile's "Reseller" programs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as it seeks documents related to any communications between any "Hotfile Entity" and "any participant in Hotfile's 'Reseller programs," irrespective of whether those communications are related to the present dispute. Hotfile further objects to this request as overbroad and unduly burdensome insofar as Hotfile may not have the ability to ascertain who is a participant in its Reseller program. Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws insofar as it covers private or personal files that users have uploaded to and/or stored on Hotfile. Hotfile further objects to this request as duplicative of Request For Production No. 5, Request for Production No. 6, and Request for Production No 8.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist relating to communications between Hotfile and any Hotfile reseller, to the extent that such documents are

located through a reasonable and diligent search and to the extent Hotfile is reasonably able to identify participants in its reseller program.

**REQUEST FOR PRODUCTION NO. 11:**

All documents pertaining to communications between you or any Hotfile Entity and any copyright owner(s) or their representatives pertaining to:

a) The presence of any copyrighted material on the Hotfile Website, whether with or without authorization;

b) Any means or mechanism for addressing, limiting, or preventing the presence of copyrighted material on the Hotfile Website without authorization, and

c) Any action taken by any Defendant or Hotfile Entity in response to or as a result of such communications.

**RESPONSE TO REQUEST FOR REQUEST FOR PRODUCTION NO. 11:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request as unduly burdensome to the extent it seeks documents or information that can be obtained with less burden from the parties to this litigation or other third parties and insofar as Hotfile may not have the ability to ascertain who is a "copyright" owner is. The request is also vague and ambiguous in its use of the term "copyright owner."

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent

that such documents are located through a reasonable and diligent search and to the extent Hotfile is reasonably able to identify "copyright owners."

**REQUEST FOR PRODUCTION NO. 12:**

All documents pertaining to the promotion, advertising, or marketing of the Hotfile website, including any advertisements or promotional materials considered or used to promote Hotfile and any communications (whether internal or with third parties) concerning the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as seeking confidential and/or commercially sensitive materials. Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrase "considered."

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 13:**

All documents pertaining to any sites that host links to files hosted on the Hotfile Website ("Link Sites"), including pertaining to any ownership or control of any Link Sites by you, any Hotfile Entity, or Lemuria, and communications with operators of any Link Sites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects that this request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence in that Lemuria is not a party to this action. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions and insofar as Hotfile may not have the ability to ascertain who is an operator of a "Link Site."

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search and to the extent Hotfile is reasonably able to identify operators of "Link Sites."

**REQUEST FOR PRODUCTION NO. 14:**

All documents pertaining websites offering the ability to search for files on the Hotfile Website ("Search Sites"), including hotfilesearch.com; hotfile123.com, and hotfileserve.com, including pertaining to any ownership or control of any Search Sites by you, any Hotfile Entity, or Lemuria, and communications with operators of any Search Sites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects that this request seeks documents that are not reasonably calculated to lead to the discovery of admissible

CASE NO. 11-20427-JORDAN

evidence in that Lemuria is not a party to this action. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions and insofar as Hotfile may not have the ability to ascertain who is an operator of a "Search Site."

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search and to the extent Hotfile is reasonably able to identify operators of "Search Sites."

**REQUEST FOR PRODUCTION NO. 15:**

All documents pertaining to each Defendant's and Hotfile Entity's financial condition, including:

   a)  Nature and value of assets;

   b)  Income for each month from the launch of the Hotfile Website through the present;

   c)  Each source of income from the launch of the Hotfile Website through the present;

   d)  Monthly expenses; and

   e)  Any transfers of funds to, from, or among each Defendant or Hotfile entity, including the amount and date of each such transfer and identity of all parties to the transaction.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that is seeks virtually all of Hotfile's financial data, without any limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150

titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request on the grounds that it seeks financial information that is private, personal, confidential and commercially sensitive. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks documents from the launch of the Hotfile Website through the present.

**REQUEST FOR PRODUCTION NO. 16:**

All versions of the source code for the Hotfile Website as it now exists or has ever existed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that is seeks all source code for the Hotfile Website, without any limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks all versions of the source code, regardless of whether such source code is from time periods relevant to the present litigation. This is not a patent litigation. Hotfile further objects that this request seeks Hotfile's trade secrets (i.e., it's source code), which are confidential, proprietary and commercially sensitive. The details of every line that ever existed of Hotfile's most closely-held trade secrets are not relevant or properly subject to discovery here.

Demanding that Hotfile produce every line of code ever written for Hotfile is improper and abusive, and on this basis Hotfile objects.

**REQUEST FOR PRODUCTION NO. 17:**

Schema for all databases used in operation of all versions of the Hotfile Website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that is seeks all schema for all databases used in operation of all versions of the Hotfile Website, without any limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, especially insofar as it seeks all databases used in all versions of the Hotfile Website, regardless of whether such databases are from time periods relevant to the present litigation. Plaintiffs cannot plausibly argue that all schema for every Hotfile database is relevant to this action. Hotfile further objects that this request seeks Hotfile's trade secrets (i.e., schema to its databases), which are confidential, proprietary and commercially sensitive. Hotfile further objects that the phrase "[s]chema for all databases" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 18:**

All documents pertaining to the design or functionality of the Hotfile Website, as it currently exists or has ever existed, including any feature specification, feature requirements definition, system architecture, or other technical documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that is seeks all documents pertaining to the design or functionality of all versions of the Hotfile Website that have ever existed, without any limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrases "design or functionality," "feature specification," "feature requirements definition," "system architecture," and "technical documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks technical information regarding the Hotfile Website, regardless of whether such information is from a time period relevant to the present litigation. Hotfile further objects to this request as duplicative of Request for Production No. 5.

Subject to the foregoing general and specific objections, and subject to Hotfile's Response To Request No. 16 (regarding the impropriety of production of source code), Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 19:**

All documents pertaining to tracking or monitoring the utilization of or traffic to the Hotfile Website, including any reports or data generated from Google Analytics.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks technical information regarding the Hotfile Website, regardless of whether such information is from a time period relevant to the present litigation. Hotfile further objects to this request as overbroad and unduly burdensome in that it seeks reports generated from

Google Analytics. Google Analytics is a website data analysis tool that allows the user to generate a nearly infinite number of reports based on an enormous set of data. To the extent that this request seeks all possible "reports" or all the data generated or analyzed by Google Analytics, such a request is unduly burdensome. Hotfile further objects to this request to the extent it seeks documents not in the possession, custody, or control of Hotfile and insofar as it would require Hotfile to create documents that do not presently exist.

**REQUEST FOR PRODUCTION NO. 20:**

All documents pertaining to the any steps taken to prevent automated downloading from the Hotfile Website, including use of Google's "Captcha" service.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks technical information regarding the Hotfile Website, regardless of whether such information is from a time period relevant to the present litigation. Hotfile further objects to this request as duplicative of Request for Production No. 5 and Request for Production No. 18.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 21:**

All documents pertaining to any actions of, efforts by, or the ability of, Defendants or any Hotfile Entity to terminate, block, or limit the access of any subscriber or user from the Hotfile Website, for any reason, including any consideration of such actions, efforts, or ability.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrase "consideration." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks documents related to termination of users "for any reason." Hotfile further objects to this request on the basis of the attorney client privilege and attorney work product doctrine. Hotfile further objects to this request as duplicative of Request For Production No. 5 and Request For Production No. 11.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search, with such documents redacted to protect user confidentiality and privacy.

**REQUEST FOR PRODUCTION NO. 22:**

All documents pertaining to any policy or practices any Defendant or Hotfile Entity has ever formulated, considered, and/or adopted regarding adverse action against Hotfile users who have infringed copyrights, who you believe may have infringed copyrights, or who have been directly or indirectly accused of infringing copyrights, including any repeat infringer policies implemented, adopted, or considered, and including any action taken to identify the Hotfile users who have uploaded works identified in notices from copyright holders.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to "Hotfile users" as that term is defined in the Definitions and Instructions. Plaintiffs' definition includes every internet user who has ever accessed the Hotfile website, regardless of whether such user has uploaded or downloaded files from Hotfile. It is impossible for Hotfile to know the identity of every person who has ever accessed the Hotfile website. Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrases "formulated" and "considered." Hotfile further objects to this request on the basis of the attorney client privilege and attorney work product doctrine. Hotfile further objects to this request as duplicative of Request For Production No. 5 and Request For Production No. 11.

CASE NO. 11-20427-JORDAN

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 23:**

All documents pertaining to any policy, methods, or practices any Defendant or Hotfile Entity has ever adopted or considered regarding the removal, blocking, or restriction of unauthorized or potentially unauthorized content from the Hotfile Website, including:

    a) Any hash-based (MD5, SHA1 or otherwise) technology;

    b) Any technology or service based on audio, audiovisual, or video fingerprinting (e.g. Vobile, Audible Magic, etc.); and

    c) Any technology based on filename, filename extension, file type, file size, internal file metadata, or any combination thereof.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request on the basis of the attorney client privilege and attorney work product doctrine. Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrase "considered." Hotfile further objects to this request as duplicative of Request For Production No. 5 and Request For Production No. 11.

CASE NO. 11-20427-JORDAN

Subject to the foregoing general and specific objections, and subject to Hotfile's Response To Request No. 16 (regarding the impropriety of production of source code), Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 24:**

All documents pertaining to any policy, methods, or practices you or any Hotfile Entity has ever adopted or considered regarding the removal or blocking of any content from Hotfile for any reason, including unwanted commercial content ("spam"), duplicate or redundant content, content harmful or potentially harmful to Hotfile's systems or the systems of Hotfile users (e.g. viruses), and content deemed to be unlawful or potentially unlawful (e.g. in violation of patent, trademark, copyright, or obscenity or child pornography laws).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrase "considered." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks documents related to removing or blocking of content "for any reason." Hotfile further objects to this request on the basis of the attorney client privilege and attorney work product doctrine. Hotfile further objects to this request as duplicative of Request for Production No. 5

Subject to the foregoing general and specific objections, and subject to Hotfile's Response To Request No. 16 (regarding the impropriety of production of source code), Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 25:**

All documents pertaining to any policy, methods, or practices any Defendant or Hotfile Entity has ever adopted or considered pertaining to preventing abuse of its system, including any measures to prevent improper downloads, to prevent the creation of false download traffic, and to detect and/or impede bots.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request on the basis of the attorney client privilege and attorney work product doctrine. Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrases "considered" and "abuse of its system." Hotfile further objects to this request as duplicative of Request for Production No. 5.

Subject to the foregoing general and specific objections, and subject to Hotfile's Response To Request No. 16 (regarding the impropriety of production of source code), Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 26:**

All documents pertaining to the "Link Checker" accessible at http://hotfile.com/checkfiles.html, including any documents pertaining to the purpose and consumer appeal of the feature.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrase "consumer appeal."

Subject to the foregoing general and specific objections, and subject to Hotfile's Response To Request No. 16 (regarding the impropriety of production of source code), Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 27:**

All documents pertaining to the effect or potential effect of the Hotfile service or similar services on the plaintiffs, the motion picture industry, the television industry, or any other industry based on the creation and lawful exploitation of copyrighted works.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the

two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request on the basis of the attorney client privilege and attorney work product doctrine. Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrase "potential effect." Hotfile further objects to this request as unduly burdensome to the extent it seeks documents or information that can be obtained with less burden from the parties to this litigation or other third parties.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 28:**

All documents reflecting the use of the Hotfile service by any employee, owner, shareholder, principal, officer, director, agent, business partner, or contractor of any Defendant or Hotfile Entity, including:

a) the Hotfile usernames or other Hotfile account information maintained by any such individual or entity;

b) The files uploaded by any such individual or entity;

c) The files downloaded by any such individual or entity; and

d) Any payments made or received by any such individual or entity through the Hotfile "Affiliate" programs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150

titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request to the extent that it demands that Hotfile produce documents that would require Hotfile to violate United States or European privacy laws insofar as it covers private or personal files that users have uploaded to and/or stored on Hotfile. Hotfile further objects to this request as duplicative of Request For Production No. 1, Request For Production No. 2, Request For Production No. 3, and Request For Production No. 5. Hotfile objects to Request No 28(c) as unreasonably burdensome as a practical matter; Hotfile remains willing to meet and confer regarding the request if Plaintiffs are willing to bear the cost of production.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, and to the extent that such documents are located through a reasonable and diligent search, comprising:

1.   Hotfile's Response to Plaintiffs' Interrogatory No. 1;

2.   The files uploaded by the Hotfile employees, owners, or contractors listed in Hotfile's Response to Plaintiffs' Interrogatory No. 1;

3.   Payments made or received by the aforementioned Hotfile employees, owners, or contractors.

**REQUEST FOR PRODUCTION NO. 29:**

All documents or communications pertaining to ownership or operation of each Hotfile Entity by individuals or entities other than Defendants, and all corporate documents for each Hotfile Entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in

that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects that this request seeks confidential, private and personal information.

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist sufficient to show the ownership of Hotfile Corp., to the extent that such documents are located through a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 30:**

All documents pertaining to meetings of each Hotfile Entity's board of directors or other governing body, including but not limited to documents sufficient to show:

    a)  Name and title of every individual attending each meeting;

    b)  Agenda for each meeting;

    c)  Date and time of each meeting;

    d)  Place of each meeting; and

    e)  Minutes of each meeting.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks documents pertaining to all board of director meetings, without any limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further

objects to this request as overbroad and unduly burdensome to the extent that it seeks

information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and

Instructions.  Hotfile further objects to this request to the extent it seeks documents not in the

possession, custody, or control of Hotfile and insofar as it would require Hotfile to create

documents that do not presently exist.  Hotfile further objects to this request on the basis of the

attorney client privilege and attorney work-product doctrine.

### REQUEST FOR PRODUCTION NO. 31:

All documents pertaining to the relationship between or among each Hotfile Entity,

including:

a) Any officers, directors, employees, or other persons acting or purporting to act on the behalf of, or under the direction or control of, any Hotfile Entity who

    i.  Also serve as an officer, director, or employee of another Hotfile Entity, or

    ii.  have performed any work for another Hotfile Entity.

b) Any common ownership, including documents reflecting whether any shareholder or other owner of one Hotfile Entity is also a shareholder of another Hotfile Entity; and

c) Any property (including real property, bank accounts, office equipment, or computer equipment) owned or otherwise held, controlled, or used by more than one Hotfile Entity, whether in whole or in part, and whether directly or indirectly;

d) Any agreements, contracts, undertakings, or understandings among or between any Hotfile Entities, and all amendments thereto;

e) Any financial arrangements, revenue sharing, and accountings between any Hotfile Entities, including any revenue, income or other valuable consideration, or sources thereof, exchanged between any Hotfile Entities;

f) The provision of any services by any Hotfile Entity to any other Hotfile Entity; and

g) Each Hotfile Entity's role in operating the Hotfile website.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 31:

Hotfile incorporates by reference its general objections to this request for production of

documents.  Hotfile further objects to this request as overbroad and unduly burdensome to the

extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it is not limited to nor does it relate to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation. Hotfile further objects to this request on the grounds that it seeks financial information that is private, personal, confidential and commercially sensitive. Hotfile further objects to this request as duplicative of Request for Production No. 29.

**REQUEST FOR PRODUCTION NO. 32:**

All documents pertaining to the relationship between Lemuria and any Hotfile Entity, including:

  a) Any common officers, directors, employees, or agents, or officers, directors, or agents who have performed work for Lemuria and any Hotfile entity;

  b) Any common ownership, including shareholders;

  c) Any commonly owned, held, or used property, including real property, bank accounts, office equipment, and computer equipment;

  d) Any agreements, contracts, undertakings, or understandings; and

  e) Any financial arrangements, revenue sharing, and accountings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the

extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it is not limited to nor does it relate to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation. Hotfile further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence in that Lemuria is not a party to the instant case. Hotfile further objects to this request on the grounds that it seeks private and confidential financial information.

**REQUEST FOR PRODUCTION NO. 33:**

All documents or communications pertaining to any Defendant's travels to and from Florida and presence in Florida, including:

a) All documents pertaining to any Defendant's use of a Florida driver's license, a Florida automobile insurance policy, a motor vehicle registered in Florida, as well as any other application or submission mentioning any defendant to the government of Florida or any political subdivision thereof;

b) All other documents pertaining to any Defendant's interaction with the government of Florida or any political subdivision thereof;

c) All documents pertaining to any Defendant's activities in or concerning Florida, including any Defendant's maintenance of any apartment or other residence in Miami Beach or elsewhere in Florida;

d) All contracts for utilities or services related to any Florida property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that Hotfile has not contested personal jurisdiction in this matter. Hotfile further objects that this request seeks information about time periods that are not relevant to this litigation. Hotfile further objects that this request seeks private, confidential and personal information, including financial information and other personal information having no bearing on this lawsuit whatsoever.

**REQUEST FOR PRODUCTION NO. 34:**

All documents or communications pertaining to any bank account, safe deposit box, real property, leasehold, personal property, or other property or proprietary interest maintained by any Defendant or Hotfile Entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that is seeks broad categories of information about Hotfile's property without any limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request on the grounds that it seeks financial and other similar information that is

private, personal, confidential and commercially sensitive. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions. Hotfile further objects to this request on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence, particularly in its request for private business or financial information regarding Hotfile or other persons or entities unrelated to the present litigation.

**REQUEST FOR PRODUCTION NO. 35:**

    All documents pertaining to any relationship or communications between you or any Hotfile Entity and any of the following entities:

        a)  InCorporate Now Inc.,

        b)  Webazilla, LLC,

        c)  Webzilla, Inc.,

        d)  Webazilla Ltd.,

        e)  Webazilla B.V.,

        f)  IP Transit, Inc.,

        g)  International Solution Group, Inc.,

        h)  LinkShop, Inc.,

        i)  WZ Communications, Inc.,

        j)  Dedicated Servers LLC,

        k)  Ecorporate, Inc.,

        l)  Neocren, Inc.,

        m) Any person or entity that operates the website at filesonic.com,

        n)  Any person or entity that operates the website at depositfiles.com,

        o)  Any person or entity that operates the website at bitshare.com, and

        p)  Any person or entity that operates the website at 4shared.com.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

    Hotfile incorporates by reference its general objections to this request for production of documents. Hotfile further objects to this request as overbroad and unduly burdensome to the

extent that it seeks "All documents." Hotfile further objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks categories of documents without an ascertainable limitation or relationship to the two claims of copyright infringement set forth in the Complaint and/ or the approximately 150 titles as to which infringement is claimed in the Complaint. Hotfile further objects to this request as overbroad and unduly burdensome to the extent that it seeks information pertaining to any "Hotfile Entity" as that term is defined in the Definitions and Instructions and insofar as Hotfile may not have the ability to ascertain whether someone is affiliated with the entities listed in this request. Hotfile further objects to this request as vague and ambiguous, particularly as to the use of the undefined phrase "relationship."

Subject to the foregoing general and specific objections, Hotfile will produce non-privileged, responsive documents in its possession, custody, or control if they exist, to the extent that such documents are located through a reasonable and diligent search and to the extent Hotfile is reasonably able to identify that a person is affiliated with one of the entities listed in this request.

**REQUEST FOR PRODUCTION NO. 36:**

All documents referenced in your responses to any Interrogatories served by Plaintiffs in this Action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Hotfile incorporates by reference its general objections to this request for production of documents and its general and specific objections to Plaintiffs' Interrogatories. Subject to the foregoing general and specific objections, Hotfile will produce the documents, if any, referenced in its responses to Plaintiffs' first set of Interrogatories.

DATED:  May 5, 2011                                    By:_____

Roderick M. Thompson (admitted *pro hac vice*)
Andrew Leibnitz (admitted *pro hac vice*)
Anthony P. Schoenberg (admitted *pro hac vice*)

Deepak Gupta (admitted *pro hac vice*)
Janel Thamkul (admitted *pro hac vice*)
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

And

Janet T. Munn, Fla. Bar No. 501281
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

*Counsel for Defendants Hotfile Corp. and Anton Titov*

CASE NO. 11-20427-JORDAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-JORDAN

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

   *Defendants.*

_____/

## CERTIFICATE OF SERVICE

     I am a citizen of the United States and employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 235 Montgomery Street, 17th Floor, San Francisco, California 94104.

     I HEREBY CERTIFY that on May 5, 2011, I electronically served the following documents on all counsel of record on the attached Service List via their email address(es).  The documents served on this date are:

**DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

     I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 5, 2011, at San Francisco, California.

Greg George

CASE NO. 11-20427-JORDAN

## SERVICE LIST: CASE NO. 11-CIV-20427-JORDAN

Karen R. Thorland, Esq.
Motion Picture Association of America, Inc.
15301 Ventura Blvd., Building E
Sherman Oaks, CA 91403
Telephone:      (818) 935-5812
Fax:              (818) 285-4407
Email: Karen_Thorland@mpaa.org

*Attorneys for Plaintiffs*
*Party Name:   Disney Enterprises, Inc.,*
*Twentieth Century Fox Film Corporation,*
*Universal City Studios Productions LLP,*
*Columbia Pictures Industries, Inc., Warner*
*Bros. Entertainment Inc.*

**Served via electronic mail by agreement**

Duane C. Pozza, Esq.
Luke C. Platzer, Esq.
Steven B. Fabrizio, Esq.
Jenner & Block
1099 New York Avenue, N.W.,  Ste. 900
Washington, DC 20001-4412
Telephone:      (202) 639-6094
Fax:              (202) 639-6068
Email: dpozza@jenner.com;
lplatzer@jenner.com; sfabrizio@jenner.com

*Attorneys for Plaintiffs*
*Party Name:   Disney Enterprises, Inc.,*
*Twentieth Century Fox Film Corporation,*
*Universal City Studios Productions LLP,*
*Columbia Pictures Industries, Inc., Warner*
*Bros. Entertainment Inc.*

**Served via electronic mail by agreement**

Karen Linda Stetson, Esq.
Gray-Robinson P.A.
1221 Brickell Avenue, Suite 1650
Miami, FL 33131
Telephone:      (305) 416-6880
Fax:              (305) 416-6887
Email: kstetson@gray-robinson.com

*Attorneys for Plaintiffs*
*Party Name:   Disney Enterprises, Inc.,*
*Twentieth Century Fox Film Corporation,*
*Universal City Studios Productions LLP,*
*Columbia Pictures Industries, Inc., Warner*
*Bros. Entertainment Inc.*

**Served via electronic mail by agreement**

BOSTON LAW GROUP
Valentin Gurvits
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone:      617-928-1800
Fax:              617-928-1802
vgurvitz@bostonlawgroup.com

*Attorney for Defendants*
*Hotfile Corp. and Anton Titov*

**Served via electronic mail by agreement**

CASE NO. 11-20427-JORDAN

Janet T. Munn, Esq.
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, FL 33134
Telephone:    (305) 476-7101
Fax:          (305) 476-7102
Email: jmunn@rascoklock.com

*Local Attorney for:    Defendants*
*Party Name:   Hotfile Corp. and Anton Titov*

**Served via electronic mail by agreement**