# EXHIBIT 12

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>RAPIDSHARE A.G., a corporation; CHRISTIAN SCHMID; BOBBY CHANG; and DOES 1 through 100, inclusive,<br><br>Defendants. | **CASE NO. 09-CV-2596 H (WMC)**<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

On November 18, 2009, Perfect 10, Inc. ("Plaintiff") filed a complaint against Rapidshare A.G., Christian Schmid, and Bobby Chang ("Defendants"). (Doc. No. 1.) On March 23, 2010, Defendants filed a motion to dismiss for lack of personal jurisdiction and a motion to dismiss for forum non conveniens. (Doc. Nos. 6 & 7.) On April 11, 2010, Plaintiff filed a motion for preliminary injunction against Defendants. (Doc. No. 9.) Plaintiff seeks an injunction to prohibit Defendants from "(1) [c]ontinuing to infringe thousands of Perfect 10 copyrighted images; and (2) [c]ontinuing to engage in unfair competition with Perfect 10." (Doc. No. 9-1 at 5.) On April 29, 2010, Defendants filed a response in opposition to Plaintiff's motion for preliminary injunction. (Doc. No. 26.) On May 5, 2010, Plaintiff filed a reply in

- 1 -

09cv2596

1  support of its motion for preliminary injunction. (Doc. No. 43.) On May 6, 2010, the Court
2  issued an order requesting additional briefing on Plaintiff's motion for preliminary injunction.
3  (Doc. No. 44.) On May 9, 2010, Plaintiff submitted a supplemental brief. (Doc. No. 49.) On
4  May 10, 2010, Defendants also submitted a supplemental brief. (Doc. No. 50.) On May 11,
5  2010 Plaintiff and Defendants each filed a response in opposition to the other side's
6  supplemental brief. (Doc. Nos. 53 & 54.)

7  On May 12, 2010, the Court held a hearing on Plaintiff's motion for preliminary
8  injunction. Eric Benink and Jeffrey Mausner appeared on behalf of Plaintiff and Ian Ballon
9  and Lori Chang appeared on behalf of Defendants. On May 12, 2010, the Court issued an
10 order granting Defendants' motion to dismiss for lack of personal jurisdiction as to Bobby
11 Chang and Christian Schmid, denying Defendants' motion to dismiss for lack of personal
12 jurisdiction as to RapidShare, and denying Defendants' motion to dismiss for forum non
13 conveniens. (Doc. No. 60.) The Court also issued an order submitting Plaintiff's motion for
14 preliminary injunction and requesting that the parties meet and confer on certain issues. (Doc.
15 No. 61.)

16 **BACKGROUND**

17 Plaintiff's business consists of the design, creation, production, promotion, and sale of
18 adult entertainment products, including photographs, videos, magazines, cell phone downloads,
19 and other media. (Doc. No. 1 ¶ 9.) Plaintiff's website, perfect10.com, provides users access
20 to content owned by Plaintiff for a membership fee of $25.50 per month. (Id. ¶ 12.) Plaintiff
21 alleges that it owns thousands of copyrighted photographs and video productions. (Id. ¶ 14-
22 15.)

23 Defendants characterize RapidShare as an internet file-hosting service that stores
24 electronic files of various types and sizes belonging to companies and individuals who sign up
25 for its service. (Doc. No. 6-2 ("Pfaff Decl.") ¶ 4.) To use RapidShare, individuals must either
26 register for a free account or pay a fee to obtain a premium account. (Doc. No. 26-5 ("4/29
27 Schmid Decl.") ¶ 22.) Once registered, a user can upload files from her hard drives or other
28 remote locations onto RapidShare's servers. (Pfaff Decl. ¶ 7.) The servers automatically

- 2 -  09cv2596

generate a unique download link (a URL) for each uploaded file and send that link to the user who uploaded the file. (Id.) The user's file, which resides on RapidShare's servers, may only be accessed by the user or a third party through the unique link assigned to the file. (Id.) Once the user obtains a download link for her file, she can email the link to friends, post it on her website for others to access, or keep it confidential, among other potential uses. (See id. ¶ 8.) RapidShare's website does not have a search function and does not index the files stored on RapidShare's servers. (Id. ¶ 9.) Rather, users manage access to information stored on RapidShare's servers by making available and distributing download links. (Id. ¶ 8.) Although RapidShare does not offer a search engine, several third-party websites such as filestube.com allow users to search for files found on RapidShare's servers. (See Doc. No. 9-2 ("Zada Decl.") ¶ 7.)

## DISCUSSION

### I.     Preliminary Injunction - Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374 (2008); Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009). Injunctive relief is available under both the Copyright Act and California's Unfair Competition Law ("UCL"). Section 502(a) of the Copyright Act authorizes a court to grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The UCL provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203.

///
///
///
///

**A.      Likelihood of Success on the Merits - Copyright**

Plaintiff argues that it is likely to succeed on the merits of its copyright claim based on both direct and contributory infringement. (Doc. No. 9-1 at 12-16.) Defendants contend Plaintiff has not met its burden of showing a likelihood of success on the merits and additionally that RapidShare is entitled to protection under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512. The Ninth Circuit has made clear that Plaintiff bears the burden of establishing RapidShare's liability under the Copyright Act without reference to the DMCA, and that Defendants then have the burden of showing a likelihood that their DMCA defense will succeed. Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1158 & n.4 (9th Cir. 2007).

**1.      Direct Copyright Infringement**

"Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." Amazon.com, 508 F.3d at 1159 (citing A & M Records, Inc. v. Napster Inc., 239 F.3d 1004, 1013 (9th Cir. 2001); 17 U.S.C. § 501(a)). Defendants do not dispute Plaintiff's ownership of at least some of the copyrighted works at issue in Plaintiff's motion. (Doc. No. 26 at 19.) Rather, Defendants argue that RapidShare is not liable for direct infringement because any of Plaintiff's images found on its servers were copied onto the servers by RapidShare users. (Doc. No. 26 at 26.) Plaintiff, however, argues that RapidShare is itself violating Plaintiff's exclusive distribution rights.[1] (Doc. No. 9-1 at 13.) Section 106(3) provides that a copyright owner has the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3). Copies may be distributed electronically. Amazon.com, 508 F.3d at 1162 (citing N.Y. Times Co. v. Tasini, 533 U.S. 483, 498 (2001)).

---

[1] Plaintiff also contends, in a footnote, that RapidShare is violating Plaintiff's reproduction rights, rights to create derivative works, and performance rights. (Doc. No. 49 at 3 n.1.) However, Plaintiff analyzes only RapidShare's alleged violation of Plaintiff's exclusive distribution rights. (Id.)

- 4 -                                                                     09cv2596

Plaintiff first argues that "because Defendants are offering unauthorized P10 Images to RapidShare users who pay the monthly fee, they are violating Perfect 10's distribution rights and are liable for direct copyright infringement." (Doc. No. 49 at 3.) Defendants contend that RapidShare does not sell content, but rather, that it is a file-hosting site that provides users with online storage space for their private files. (Doc. No. 26 at 11.) The characterization of RapidShare's service is hotly disputed. After considering the parties' arguments, the Court concludes that, at this phase, Plaintiff has not shown that it is likely to succeed on the merits of its claim for direct infringement based on a theory of distribution by sale.

Plaintiff also argues that RapidShare violates Plaintiff's exclusive "distribution rights merely by making P10 Images available on RapidShare servers." (Id.) In Amazon.com, the Ninth Circuit noted that "Perfect 10 incorrectly relies on Hotaling v. Church of Jesus Christ of Latter-Day Saints and Napster for the proposition that merely making images 'available' violates the copyright owner's distribution right." 508 F.3d at 1162 (citing Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199 (4th Cir.1997); Napster, 239 F.3d 1004). However, the Amazon.com court suggested that Hotaling and Napster may outline a "deemed distribution" rule. (Id.) Applying this rule to the facts before it, the Amazon.com court distinguished Google's activities from those at issue in Hotaling and Napster:

> Unlike the participants in the Napster system or the library in Hotaling, Google does not own a collection of Perfect 10's full-size images and does not communicate these images to the computers of people using Google's search engine. Though Google indexes these images, it does not have a collection of stored full-size images it makes available to the public. Google therefore cannot be deemed to distribute copies of these images under the reasoning of Napster or Hotaling.

Id. at 1162-63. The Amazon.com decision implies that where an entity has a collection of infringing materials and makes those materials available to the public, it is deemed to have distributed those materials for purposes of 17 U.S.C. § 106(3). See id. Defendants distinguish the dicta in Amazon.com by contending that it is RapidShare users and third-party websites

- 5 - 09cv2596

1  who make Plaintiff's images available. (Doc. No. 54 at 4.) The Court agrees that RapidShare
2  does not make files available in the same way as the library in <u>Hotaling</u> or the users in <u>Napster</u>.
3  The public cannot enter rapidshare.com and browse through a catalog for desired materials as
4  the library visitors could in <u>Hotaling</u>. <u>See</u> 118 F.3d at 203 (concluding that "[w]hen a public
5  library adds a work to its collection, lists the work in its index or catalog system, and makes
6  the work available to the borrowing or browsing public, it has completed all the steps
7  necessary for distribution to the public"). Additionally, a RapidShare user cannot find files
8  located on RapidShare's servers in the same way as a Napster user could find a specific song
9  from a peer's library because RapidShare does not index its files. <u>See</u> <u>Napster</u>, 239 F.3d at
10 1012 (stating that "the user can access an index of all MP3 file names in a particular hotlisted
11 user's library and request a file in the library by selecting the file name"). Because the Court
12 concludes that RapidShare does not make infringing material available in the same way or to
13 the same extent as the library in <u>Hotaling</u> or the users in <u>Napster</u>, the Court declines to hold
14 RapidShare liable for direct infringement on a theory of deemed distribution. Accordingly,
15 the Court concludes that Plaintiff has failed to present a prima facie case of direct infringement
16 against RapidShare based on the present record before the Court.

17 **2.      Contributory Copyright Infringement**

18 Contributory infringement exists when a defendant intentionally induces or encourages
19 direct infringement. <u>See</u> <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 545 U.S. 913,
20 930 (2005). The basic test is "that one contributorily infringes when he (1) has knowledge of
21 another's infringement and (2) either (a) materially contributes to or (b) induces that
22 infringement." <u>Perfect 10, Inc. v. Visa Int'l Service, Ass'n</u>, 494 F.3d 788, 795 (9th Cir. 2007).
23 To show contributory infringement, a plaintiff must show direct infringement by third parties.
24 <u>See</u> <u>Amazon.com</u>, 508 F.3d at 1169.

25 ///
26 ///
27 ///
28 ///

*a.   Direct infringement by third parties*

Direct infringement by third parties is occurring. Defendants do not dispute Plaintiff's ownership of at least some of the copyrighted works at issue in Plaintiff's motion. (Doc. No. 26 at 19.) Additionally, Plaintiff has demonstrated that its copyrighted images were uploaded onto RapidShare's servers and are available for download. (Zada Decl. ¶¶ 6-7.) RapidShare users who uploaded Plaintiff's copyrighted images to the server violated Plaintiff's distribution rights and any RapidShare users who may have download files containing Plaintiff's copyrighted images violated Plaintiff's reproduction rights. See Napster, 239 F.3d at 1014.

*b.   Knowledge of infringing activity*

"Contributory liability requires that the secondary infringer know or have reason to know of direct infringement." Napster, 239 F.3d at 1020. The knowledge required for a finding of contributory infringement may not be imputed merely because a technology may be used to infringe a plaintiff's copyrights. Id. at 1020-21 (discussing Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417 (1984)). Rather, the defendant must have actual, specific knowledge of direct infringement. Id. at 1020-22.

Defendants argue that RapidShare cannot be liable for contributory infringement because it did not have knowledge of specific infringing material. (Doc. No. 26 at 26.) Defendants acknowledge that they received a disc from Plaintiff that contained hundreds of Plaintiff's copyrighted works. (See Doc. No. 26 at 15.) The disc does not provide information about where the files are located, but organizes the files by model name and provides the full-sized image. (See Doc. No. 26-5 ("Schmid Decl.") Ex. B.) Many of the images provided contain Perfect 10 copyright notices. (See id.) Defendants, however, contend that Plaintiff provided inadequate notice because RapidShare cannot locate and delete files where the only information provided is an image. (Doc. No. 26 at 17.)

In Napster, the Ninth Circuit concluded that the service provider had sufficient knowledge of infringement for a finding of contributory infringement even though Napster contended "that because the company cannot distinguish infringing from noninfringing files, it does not 'know' of the direct infringement." See Napster, 239 F.3d at 1020-22. Thus, it

- 7 -                                                                                                         09cv2596

1  appears that specific knowledge of direct infringement may exist even where an operator does
2  not have information that would allow it to search its contents and distinguish infringing from
3  non-infringing materials. Here, RapidShare received notice of hundreds of copyrighted Perfect
4  10 images that were found on its servers. The Court therefore concludes that RapidShare had
5  actual, specific knowledge of direct infringement.

6  c.     *Material contribution*

7  "To state a claim of contributory infringement, Perfect 10 must allege facts showing that Defendants induce, cause, or materially contribute to the infringing conduct." Visa, 494 F.3d at 796. In Napster, the Ninth Circuit affirmed the district court's determination that the service provider materially contributed to direct infringement. 239 F.3d at 1022. While RapidShare and Napster's services both allow for file sharing, the services provided are materially different. Importantly, Napster utilized software that allowed it to maintain a search index of its collective directory of files. Id. at 1012. This enabled Napster users to search for and locate specific MP3 file names listed on the server's index. See id. In affirming the district court's conclusion that Napster materially contributed to direct infringement, the Ninth Circuit focused on district court's determinations that "[w]ithout the support services defendant provides, Napster users could not find and download the music they want with the ease of which defendant boasts," and that "Napster is an integrated service designed to enable users to locate and download MP3 music files." Id. at 1022 (citing Napster, 114 F. Supp. 2d at 919-20). In contrast, RapidShare does not index user materials and does not have a function that allows users to search for specific files. (Pfaff Decl. ¶ 9.) All communication regarding the location of files is user driven. (Id. ¶ 8.) Accordingly, the Court concludes that the rationale for finding that Napster materially contributed to direct infringement does not apply with equal force to RapidShare. RapidShare does not provide an integrated service that allows users to locate and download infringing files. It does not provide "the site and facilities" for direct infringement in the same way as Napster did. See Napster, 239 F.3d at 1022 (citing Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996)). Thus, Plaintiff must show something more than the mere existence of RapidShare's file-hosting service to show that RapidShare

1 | materially contributes to direct infringement.

2 | In Amazon.com, the Ninth Circuit stated "that a computer system operator can be held contributorily liable if it has actual knowledge that specific infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." 508 F.3d at 1172 (quotation marks and citations omitted). Here, RapidShare did have actual knowledge of specific infringing material. RapidShare argues that it is taking all simple measures available to remove the infringing material. According to Defendants,

> RapidShare cannot locate and delete files where the only information provided is [an] image. See Hartojo Dec., ¶ 14. However, the Abuse Department was able to find and take down certain files whose download links were identified on the screen shots that Zada attached to his declaration . . . and also proactively searched the third-party websites identified in his declaration, such as filestube.com, and took down any files listed on those sites that appeared to be suspect. See [id.] ¶ 12. In addition, the download links identified in the complaint have also been disabled and the files deleted. Id. ¶ 13. The Abuse Department has also begun probatively searching Google and Bing.com for files that may contain the words "RapidShare" and either "Perfect 10" or the names of specific models identified by Zada. Id. ¶ 15.

(Doc. No. 26 at 17.) Considering the evidence submitted by the parties thus far, the Court concludes that Plaintiff has not shown that RapidShare is failing to take simple measures to prevent further damage to Plaintiff's copyrighted works. Rather, the evidence suggests that RapidShare is using information provided by Plaintiff to locate and remove infringing materials, and is also taking independent steps to identify, locate, and remove infringing files. Accordingly, the Court concludes that Plaintiff has not shown that RapidShare is contributorily liable for copyright infringement under the standard announced in Amazon.com, 508 F.3d at 1172.

///

1          Plaintiff also argues that RapidShare materially contributes to direct infringement
2  through its affiliate program. Plaintiff explains that, under this program, RapidShare pays its
3  members when they refer traffic to rapidshare.com and when other RapidShare members
4  download infringing content that these members have uploaded onto RapidShare's servers.
5  (Doc. No. 9-1 at 14.) RapidShare concedes that it had a program that it referred to as an
6  affiliate program. (Doc. No. 26 at 12 n.7.) However, RapidShare contends that "it terminated
7  its cash rewards program well before it filed its Jurisdictional Motions because it became
8  concerned that program was being used by some users to promote infringement." (Id.) In
9  March 2010, RapidShare also terminated a rewards program that provided users with
10 merchandise like t-shirts and computer gadgets. (Id.) RapidShare still has a program that
11 allows users to generate points and use them to make charitable donations. (Id.) The goal of
12 RapidShare's program was, and still is, to reward users for distributing and reproducing
13 (through uploading and downloading) material, even if that material is infringing. Whether
14 the program rewards users with money, merchandise, or charitable donations, it encourages
15 users to upload and download potentially infringing material. Since the Court has insufficient
16 information about the scope of the charitable donations rewards program, the Court denies the
17 motion for an injunction without prejudice.

18  d.     *Inducement*

19         In Grokster, the Supreme Court found that "one who distributes a device with the object
20 of promoting its use to infringe copyright, as shown by clear expression or other affirmative
21 steps taken to foster infringement, is liable for the resulting acts of infringement by third
22 parties." 545 U.S. at 936-37. The Court summarized the rule for contributory liability based
23 on "inducement" as follows:

24         In sum, where an article is good for nothing else but infringement, there is no
25         legitimate public interest in its unlicensed availability, and there is no injustice
26         in presuming or imputing an intent to infringe. Conversely, the doctrine
27         absolves the equivocal conduct of selling an item with substantial lawful as well
28         as unlawful uses, and limits liability to instances of more acute fault than the

mere understanding that some of one's products will be misused. It leaves breathing room for innovation and a vigorous commerce.

Id. at 932-33 (quotation marks and citations omitted); see Visa, 494 F.3d at 801. Here, RapidShare argues that there are substantial lawful uses for RapidShare's service. For example, RapidShare provides users with a secure location to store and access files from anywhere that there is Internet access. (Pfaff Decl. ¶ 4.) Additionally, RapidShare provides data storage capacity which may present businesses with an economical alternative to buying and maintaining their own storage-related computer hardware. (Id.) RapidShare has presented evidence that the German edition of PC World magazine has twice used RapidShare to host files of anti-virus software for its readers to download. (Id. ¶ 5.) Moreover, Plaintiff has not presented evidence to show that RapidShare's software system was "engineered, disseminated, and promoted explicitly for the purpose of facilitating piracy of copyrighted [material] and reducing legitimate sales of such [materials] to that extent." Visa, 494 F.3d at 801. Rather, RapidShare argues that it strives to eliminate infringing uses. RapidShare's Conditions of Use prohibit uploading of files that violate third-party copyrights. (Pfaff Decl. ¶ 12.) Additionally, RapidShare's Abuse Department responds to takedown notices submitted by copyright owners by removing infringing files, terminates the accounts of users who upload unauthorized files, and independently searches for and removes infringing files using third-party websites. (Id. ¶ 13.) Accordingly, the Court concludes Plaintiff has not met its burden of showing that RapidShare is liable for contributory infringement based on an inducement theory.

### 3. Digital Millennium Copyright Act

"Because the burdens at the preliminary injunction stage track the burdens at trial, once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed." Amazon.com, 508 F.3d at 1158 (quotation marks and citations omitted). Defendants claim that RapidShare qualifies for the limitations on liability set forth in title II of the DMCA, 17 U.S.C. § 512. (See Doc. No. 26 at 22.)

Congress enacted title II of the DMCA to provide greater certainty to service

| | |
|---|---|
| 1 | providers concerning their legal exposure for infringements that may occur in |
| 2 | the course of their activities. Sections 512(a) through (d) limit liability for |
| 3 | (respectively): (1) transitory digital network communications; (2) system |
| 4 | caching; (3) information residing on systems or networks at the direction of |
| 5 | users; and (4) information location tools. A service provider that qualifies for |
| 6 | such protection is not liable for monetary relief and may be subject only to the |
| 7 | narrow injunctive relief set forth in section 512(j). |
| 8 | Amazon.com, 508 F.3d at 1158 (quotation marks and citations omitted). |
| 9 |      Plaintiff argues that RapidShare is ineligible for the DMCA's safe harbor because |
| 10 | RapidShare has not designated a DMCA agent with the United States Copyright Office. (Doc. |
| 11 | No. 9-1 at 16.) Section 512(c)(2) provides that |
| 12 | [t]he limitations on liability established in this subsection apply to a service |
| 13 | provider only if the service provider has designated an agent to receive |
| 14 | notifications of claimed infringement . . . by making available through its |
| 15 | service, including on its website in a location accessible to the public, and by |
| 16 | providing to the Copyright Office, substantially the following information: (A) |
| 17 | the name, address, phone number, and electronic mail address of the agent. (B) |
| 18 | other contact information which the Register of Copyrights may deem |
| 19 | appropriate. |
| 20 | 17 U.S.C. § 512(c)(2). Defendants contend that this provision is merely a notice requirement, |
| 21 | and that Plaintiff had adequate notice regarding where to send infringement notifications. |
| 22 | (Doc. No. 26 at 22 n.24.) The Court disagrees with Defendants' interpretation of the statute. |
| 23 | The language of the DMCA clearly states that a service provider can take advantage of the safe |
| 24 | harbor only if the service provider has given the Copyright Office specific information |
| 25 | regarding its designated agent. RapidShare has failed to follow this procedure and Defendants |
| 26 | have cited no case that has allowed a service provider to take advantage of the safe harbor |
| 27 | without following the prescribed procedures. Accordingly, the Court concludes that, until |
| 28 | RapidShare provides the required information to the Copyright Office, RapidShare may not |

take advantage of the protections afforded by this section of the DMCA.

Considering all of the law and facts presented by the parties, the Court concludes that, at this point in the case, Plaintiff has not met its burden of showing that it is likely to succeed on the merits of its claims for direct and contributory copyright infringement. Moreover, the Court concludes that RapidShare is not likely to succeed on its DMCA affirmative defense because RapidShare has not yet designated an agent with the U.S. Copyright Office.

**B.     Likelihood of Success on the Merits - Unfair Competition**

Plaintiff's unfair competition claim rests on its cause of action for copyright infringement. Plaintiff argues that RapidShare is providing access to "stolen intellectual property" in a manner which significantly harms competition. (Doc. No. 9-1 at 19.) Because the Court declines, at this time, to find that Plaintiff is likely to succeed on the merits of its copyright infringement claim, the Court concludes that Plaintiff is also unlikely to succeed on the merits of its unfair competition claim.

**C.     Likelihood of Irreparable Harm**

"[A] plaintiff that demonstrates a likelihood of success on the merits of a copyright infringement claim is entitled to a presumption of irreparable harm." Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir. 1999); LGS Architects, Inc. v. Concordia Homes of Nevada, 434 F.3d 1150, 1155 (9th Cir. 2006). Defendants argue that this standard no longer applies after Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374 (2008) and eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006). (Doc. No. 26 at 19-20.) The Ninth Circuit has continued to apply a presumption of irreparable injury in a trademark case after Winter. See Marlyn Nutrceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009) (citing Winter, 129 S. Ct. at 374 for preliminary injunction standard in a trademark infringement case and stating that "[b]ecause the court found a likelihood of success on the merits, it reasonably presumed irreparable injury"). Moreover, the Ninth Circuit has not interpreted eBay to mean that it is inappropriate for a district court to apply a presumption of irreparable harm upon a finding that a plaintiff is likely to succeed on the merits of its copyright infringement claim. In any event, the Court has concluded that Plaintiff has not

- 13 -                                                                                              09cv2596

shown a likelihood of success on the merits of its copyright infringement and unfair competition claims. Accordingly, the Court need not determine whether Plaintiff is likely to suffer irreparable harm in the absence of an injunction.

**D.    Balance of Equities**

At this point, the Court is not convinced that the balance of equities tip in Plaintiff's favor. See Winter, 129 S. Ct. at 374. Plaintiff contends that, without injunctive relief, Plaintiff will be forced into bankruptcy. (Doc. No. 9-1 at 22.) However, Plaintiff has not availed itself of simple, available measures to protect its property. For example, while Plaintiff alleges that it has been able to download at least 43,000 infringing copies of Perfect 10 images from RapidShare's servers, it has not provided RapidShare with sufficient information to allow RapidShare to locate and remove the images. (See Doc. Nos. 49 at 2-3 & 26 at 17.) Moreover, Defendants contend that Plaintiff declined RapidShare's offer to provide Plaintiff with a "takedown tool" that would allow Plaintiff to immediately delete infringing files from RapidShare's servers. (Doc. No. 26 at 7.) Defendants have also offered evidence that Plaintiff was aware that its copyrighted images were available on RapidShare's servers in 2005, but nonetheless waited until November 2009 to file this lawsuit. (Doc. No. 26-2 ("Bridges Decl.").) Considering Plaintiff's apparent lack of interest in self-help measures and its delay in bringing this action, the Court concludes that, at present, the equities do not weigh in favor of granting injunctive relief.

**E.    Public Interest**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 129 S. Ct. at 376-77 (quotation marks and citations omitted). The Supreme Court has recognized the need for a "balance between the respective values of supporting creative pursuits through copyright protection and promoting innovation in new communication technologies by limiting the incidence of liability for copyright infringement." Grokster, 545 U.S. at 928. Considering both of these values, the Court concludes that the public interest will not be served by an injunction at this point.

- 14 - 09cv2596

# CONCLUSION

For the reasons set forth above, the Court denies Plaintiff's motion for preliminary injunction without prejudice.

**IT IS SO ORDERED**.

DATED: May 18, 2010

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:

All parties of record