# EXHIBIT 19

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

      Plaintiffs,

   vs.

HOTFILE CORP., ANTON TITOV,
and DOES 1-10,

      Defendants.
_____

AND RELATED CROSS-ACTION.
_____

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF BRAXTON PERKINS

PURSUANT TO FEDERAL RULE 30(b)(6)

Los Angeles, California

Friday, December 16, 2011

Reported by:
LORI SCINTA, RPR
CSR No. 4811

Job No. 178935B

Perkins, Braxton                    12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 2

```
 1                  UNITED STATES DISTRICT COURT

 2                  SOUTHERN DISTRICT OF FLORIDA

 3                CASE NO. 11-20427-WILLIAMS-TURNOFF

 4    DISNEY ENTERPRISES, INC.,
      TWENTIETH CENTURY FOX FILM
 5    CORPORATION, UNIVERSAL CITY
      STUDIOS PRODUCTIONS LLLP,
 6    COLUMBIA PICTURES INDUSTRIES,
      INC., and WARNER BROS.
 7    ENTERTAINMENT INC.,

 8            Plaintiffs,

 9        vs.

10    HOTFILE CORP., ANTON TITOV,
      and DOES 1-10,
11
              Defendants.
12    _____

      AND RELATED CROSS-ACTION.
13    _____

14

15     HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

16            Videotaped deposition of BRAXTON PERKINS,

17    pursuant to Federal Rule 30(b)(6), taken on behalf of

18    Defendants and Counterclaimant Hotfile Corp., at

19    633 West Fifth Street, Los Angeles, California,

20    beginning at 10:15 A.M. and ending at 7:16 P.M. on

21    Friday, December 16, 2011, before LORI SCINTA, RPR,

22    Certified Shorthand Reporter No. 4811.

23

24

25
```

Perkins, Braxton                    12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

                                                    Page 3

     1    APPEARANCES:

     2

     3    For Plaintiffs:

     4

               JENNER & BLOCK LLP
     5         BY:  DUANE C. POZZA
               Attorney at Law
     6         1099 New York Avenue, NW, Suite 900
               Washington, D.C. 20001-4412
     7         202.639.6000
               Email:  dpozza@jenner.com
     8
                   -- and --
     9
               NBC UNIVERSAL
    10         BY:  KAREN GARVER
               Senior Counsel, Anti-Piracy Legal Affairs
    11         100 Universal City Plaza
               Universal City, California 91608
    12         818.777.2493
               Email:  karen.garver@nbcuni.com
    13

    14
          For Defendants and Counterclaimant Hotfile, Corp.:
    15

    16         FARELLA BRAUN + MARTEL LLP
               BY:  DEEPAK GUPTA
    17         Attorney at Law
               235 Montgomery Street
    18         San Francisco, California 94104
               415.954.4400
    19         Email:  dgupta@fbm.com

    20

    21    Videographer:

    22

               VONYARN MASON
    23         SARNOFF COURT REPORTERS
               20 Corporate Park, Suite 350
    24         Irvine, California 92606
               877.955.3855
    25

Perkins, Braxton                                      12/16/2011

HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER



Perkins, Braxton                              12/16/2011

HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER



HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

04:04  1          MR. POZZA:  Objection.  Ambiguous.

04:04  2          THE WITNESS:  Full-length content is almost

04:04  3   always under distribution agreements with partners and

04:04  4   usually behind a transactional apparatus or behind a

04:05  5   negotiated agreement involving advertising as associated

04:05  6   with a playback of the content.

04:05  7          So, yes, Universal would create agreements with

04:05  8   sites or distributors to have full-length content

04:05  9   available in commercially negotiated means.

04:05 10   BY MR. GUPTA:

04:05 11      Q   Does Universal post or allow others to post its

04:05 12   content on the Internet for free?  And I'm talking about

04:05 13   full-length content here.

04:05 14          MR. POZZA:  Objection --

04:05 15   BY MR. GUPTA:

04:05 16      Q   In other words, making it --

04:05 17          Sorry.  Go ahead.

04:05 18          MR. POZZA:  I was going to object.  Ambiguous

04:05 19   and compound.

04:05 20   BY MR. GUPTA:

04:05 21      Q   Does Universal -- I'll cure.

04:05 22          Does Universal permit sites other than

04:05 23   Universal-branded sites to host Universal full-length

04:05 24   content in a manner that users can access it for free?

04:06 25          MR. POZZA:  Objection.  Ambiguous.

Perkins, Braxton                               12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 162

04:06  1         THE WITNESS:  Users accessing it for free would

04:06  2    to me imply that there was an advertising element to the

04:06  3    consumer access, or if the marginal cost to a person was

04:06  4    sort of zero, that there may be a subscription element

04:06  5    to the consumer.

04:06  6         I am not aware of any instance or systematic

04:06  7    belief on the part of Universal where free full-length

04:06  8    content would be freely made available without

04:06  9    negotiations of commercial terms regarding either

04:06  10   transactional pricing to consumers or advertising

04:07  11   revenue or subscription revenue associated with the

04:07  12   consumers accessing full-length content.

04:07  13   BY MR. GUPTA:

04:07  14   Q   Going back to trailers for a moment, does

04:07  15   Universal allow the downloading of trailers from the

04:07  16   Internet for some trailers?

04:07  17        MR. POZZA:  Objection.  Ambiguous.

04:07  18        THE WITNESS:  I'm not aware of a specific

04:07  19   policy on downloading trailers.  It is potentially

04:07  20   possible that under negotiated terms and conditions or

04:07  21   agreed-upon terms and conditions a marketing entity

04:07  22   would provide a file to a distribution partner.  And if

04:07  23   that marketing group worked with that distribution

04:08  24   partner to enable a download, then that could be

04:08  25   happening.

Perkins, Braxton                              12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 163

04:08 1          I right here don't recall an example of that,

04:08 2     but I can't under oath tell you that categorically I'm

04:08 3     aware that that's never happened or -- because I'm not

04:08 4     fully aware of all the breadth of the deals that may

04:08 5     have taken place.

04:08 6     BY MR. GUPTA:

04:08 7          Q   Does Universal object to an Internet user

04:08 8     transferring a trailer owned by Universal to another

04:08 9     Internet user?

04:08 10         MR. POZZA:  Object as ambiguous, calling for a

04:08 11    legal conclusion and outside the scope of the notice.

04:08 12         THE WITNESS:  I would imagine Universal would

04:08 13    object if the terms and conditions associated with the

04:08 14    marketing materials were being violated.

04:08 15         Again, if the terms and conditions associated

04:09 16    with the distribution of the marketing materials

04:09 17    contemplated that transfer, then we wouldn't object

04:09 18    because we would have put that into the agreement.

04:09 19    BY MR. GUPTA:

04:09 20         Q   But where the terms and conditions are silent

04:09 21    on this, does Universal object?

04:09 22         MR. POZZA:  Same objections and incomplete

04:09 23    hypothetical.

04:09 24         THE WITNESS:  I'm not aware of them being

04:09 25    silent, and I think the objection would be something I

Perkins, Braxton                           12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 164

04:09   1   would route to the law department to review.  I guess --

04:09   2   I probably wouldn't be in a position to opine the full

04:09   3   legal understanding of what would be "objectable" other

04:09   4   than my general business understanding that I've tried

04:09   5   to communicate about how we distribute marketing

04:09   6   materials.

04:09   7   BY MR. GUPTA:

04:09   8       Q   Are you aware of any business arrangements in

04:10   9   which Universal has set up a deal such that it doesn't

04:10  10   object to a user transferring a trailer to another user?

04:10  11           MR. POZZA:  Objection.  Ambiguous, lacks

04:10  12   foundation, outside the scope of the notice.

04:10  13           THE WITNESS:  I'm not aware of a specific

04:10  14   example where we -- Universal or an entity of Universal

04:10  15   created a marketing campaign that involved transfers,

04:10  16   point to point, user to user.

04:10  17           But, again, I can't attest that I'm fully aware

04:10  18   that that -- that I can confidently tell you that's

04:10  19   never happened.  I don't know right now or recall an

04:10  20   example of when we would have.  But if we did, again,

04:10  21   there would have been terms and conditions likely put in

04:11  22   place of that campaign.

04:11  23   BY MR. GUPTA:

04:11  24       Q   Are you aware of any business arrangements in

04:11  25   which Universal set up the deal such that it expressly

Perkins, Braxton                     12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 165

04:11  1    prohibited a user from transferring a trailer to another

04:11  2    user?

04:11  3              MR. POZZA:  Same set of objections.

04:11  4              THE WITNESS:  I would not know if in the

04:11  5    agreement an express prohibition would have been written

04:11  6    or not.

04:11  7              My general business understanding is that the

04:11  8    terms and conditions would indicate whatever the desire

04:11  9    of the marketing group would be, and that if there was

04:11  10   the desire to not prohibit it, then that would be there;

04:11  11   and if the desire was to prohibit it, then it would be

04:11  12   in the agreement.

04:11  13   BY MR. GUPTA:

04:11  14     Q   So the answer is:  You are not aware of any

04:11  15   specific business arrangements set up such that users

04:11  16   were expressly prohibited from transferring?

04:12  17             MR. POZZA:  Same set of objections, and asked

04:12  18   and answered.

04:12  19             THE WITNESS:  I mean, I do -- I feel like

04:12  20   I'm -- I have answered the question.

04:12  21             I don't -- again, I -- I -- I'm not aware of

04:12  22   the full breadth of all the marketing campaigns and the

04:12  23   terms and conditions for any and all content.

04:12  24             It's possible that some agreements might

04:12  25   expressly prohibit it.  It's possible some may expressly

Perkins, Braxton                     12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 166

04:12  1    allow it.  But I'm just -- I'm not aware of examples of

04:12  2    either of those, nor am I aware of the full breadth of

04:12  3    the deals going through.

04:12  4    BY MR. GUPTA:

04:12  5        Q   Has Universal ever posted a file on a

04:13  6    cyberlocker?

04:13  7            MR. POZZA:  Object as ambiguous and outside the

04:13  8    scope of the notice to the extent it involves sites

04:13  9    other than Hotfile.

04:13  10           THE WITNESS:  I guess you'd have to define

04:13  11   "cyberlocker" for me in order for me to accurately try

04:13  12   and answer that question.

04:13  13   BY MR. GUPTA:

04:13  14       Q   Okay.  Let's start with Hotfile.

04:13  15           Has Universal ever posted a file on Hotfile?

04:13  16       A   I am not aware of any instance where a company

04:13  17   account or an agent of the company acting at the

04:13  18   direction of the company uploaded something to Hotfile.

04:14  19       Q   What's your understanding of what is digital

04:14  20   fingerprinting?

04:14  21       A   Digital printer -- fingerprinting is a

04:14  22   technology that allows for automatic content

04:14  23   recognition.

04:14  24       Q   Can you tell me what it does?

04:14  25           MR. POZZA:  I'll object to this -- this line of

```
 1

 2

 3

 4

 5

 6

 7

 8

 9              I, BRAXTON PERKINS, do hereby declare under

10      penalty of perjury that I have read the foregoing

11      transcript; that I have made any corrections as appear

12      noted, in ink, initialed by me, or attached hereto; that

13      my testimony as contained herein, as corrected, is true

14      and correct.

15

16

17              EXECUTED this ___19th___ day of __January__,

18      20_12_, at __Universal City__, __CA__.
                        (City)              (State)

19

20

21

22
                BRAXTON PERKINS

23

24

25
```



Perkins, Braxton                    12/16/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 257

1

2          I, the undersigned, a Certified Shorthand

3     Reporter of the State of California, do hereby certify:

4          That the foregoing proceedings were taken

5     before me at the time and place herein set forth; that

6     any witnesses in the foregoing proceedings, prior to

7     testifying, were duly sworn; that a record of the

8     proceedings was made by me using machine shorthand

9     which was thereafter transcribed under my direction;

10    that the foregoing transcript is a true record of the

11    testimony given.

12         Further, that if the foregoing pertains to

13    the original transcript of a deposition in a Federal

14    Case, before completion of the proceedings, review of

15    the transcript [ x ] was [ ] was not requested.

16         I further certify I am neither financially

17    interested in the action nor a relative or employee

18    of any attorney or party to this action.

19         IN WITNESS WHEREOF, I have this date

20    subscribed my name.

21

22    Dated: 12-20-11

23

24                              _____

                                LORI SCINTA, RPR
25                              CSR No. 4811