# EXHIBIT 23

Page 1

```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
             CASE NO. 11-20427-WILLIAMS-TURNOFF


    DISNEY ENTERPRISES, INC.,
    TWENTIETH CENTURY FOX FILM
    CORPORATION, UNIVERSAL CITY
    STUDIOS PRODUCTIONS LLLP,
    COLUMBIA PICTURES INDUSTRIES,
    INC., and WARNER BROS.
    ENTERTAINMENT INC.,

            Plaintiffs,

        vs.

    HOTFILE CORP., ANTON TITOV,
    and DOES 1-10,

            Defendants.
    _____
    AND RELATED CROSS-ACTION.
    _____



        HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

          VIDEOTAPED DEPOSITION OF BETSY ZEDEK, ESQUIRE

                PURSUANT TO FEDERAL RULE 30(b)(6)

                    Los Angeles, California

                  Tuesday, December 13, 2011



    Reported by:
    CHERYL R. KAMALSKI
    CSR No. 7113

    Job No. 179149
```

Electronically signed by Cheryl Kamalski (201-157-077-2106)                    4a2caff4-31b8-48c2-a50b-8729116738f1

```
 1                UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF FLORIDA

 3              CASE NO. 11-20427-WILLIAMS-TURNOFF

 4   DISNEY ENTERPRISES, INC.,
     TWENTIETH CENTURY FOX FILM
 5   CORPORATION, UNIVERSAL CITY
     STUDIOS PRODUCTIONS LLLP,
 6   COLUMBIA PICTURES INDUSTRIES,
     INC., and WARNER BROS.
 7   ENTERTAINMENT INC.,

 8             Plaintiffs,

 9        vs.

10   HOTFILE CORP., ANTON TITOV,
     and DOES 1-10,
11
               Defendants.
12   _____
     AND RELATED CROSS-ACTION.
13   _____

14     HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

15

16          Videotaped Deposition of BETSY ZEDEK, ESQUIRE,

17   pursuant to Federal Rule 30(b)(6), taken on behalf of

18   Defendants and Counterclaimant, at 633 West Fifth

19   Street, Suite 3600, Los Angeles, California, beginning

20   at 9:37 a.m. and ending at 5:27 p.m. on Tuesday,

21   December 13, 2011, before CHERYL R. KAMALSKI, Certified

22   Shorthand Reporter No. 7113.

23

24

25
```

Page 3

1   APPEARANCES:

2

3   For Plaintiffs:

4       JENNER & BLOCK LLP
        BY: DUANE POZZA
5       Attorney at Law
        1099 New York Avenue, NW, Suite 900
6       Washington, D.C. 20001-4412
        202.639.6000
7
    For Defendants and Counterclaimant:
8
        FARELLA BRAUN + MARTEL LLP
9       BY: JANEL THAMKUL
        Attorney at Law
10      235 Montgomery Street
        San Francisco, California 94104
11      415.954.4400

12  Also Present:

13      ELIZABETH VALENTINA

14  Videographer:

15      CHRIS JORDAN
        SARNOFF, a Veritext Company
16

17

18

19

20

21

22

23

24

25

Electronically signed by Cheryl Kamalski (201-157-077-2106)                    4a2caff4-31b8-48c2-a50b-8729116738f1

Zedek, Betsy  12/13/2011

HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 23

```
         1              commenced sending notifications of
         2              infringement to Hotfile on Fox's
         3              behalf."
         4         Do you know who that antipiracy vendor, that's
09:59    5    referred to in this paragraph, who that is?
         6    A    Yes.
         7    Q    Who is that?
         8    A    DtecNet.
         9    Q    Have you produced documents relating to when
10:00   10    DtecNet first identified infringing activity on Hotfile?
        11    A    Yes.
        12    Q    What were those documents?
        13    A    We've produced the notification from DtecNet to
        14    us that a response had not been received from Hotfile to
10:00   15    a takedown notice that was sent and we produced a
        16    spreadsheet of takedown notices submitted on Fox's
        17    behalf by DtecNet to Hotfile, including the dates of all
        18    such notices.
        19    Q    Do you remember approximately when in March
10:01   20    DtecNet found the infringing materials?
        21    A    I believe it was March -- around March 19th,
        22    2009.
        23              MS. THAMKUL:  I'd like to mark this as the next
        24    exhibit.  Just for the record, this document is
10:01   25    Bates-labeled Fox 026175 through Fox 026176.
```

Zedek, Betsy                                           12/13/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 46

```
         1   know what it's looking for does that require, to some
         2   extent, communication from the rightsholder about what
         3   content the rightsholder owns?
         4           MR. POZZA:  Objection; ambiguous.
10:34    5           THE WITNESS:  It generally requires the
         6   rightsholder to provide metadata identifying the content
         7   and describing the business role it wishes to be applied
         8   that generally travels attached to the fingerprint
         9   itself, so communication may not be required.
10:34   10   BY MS. THAMKUL:
        11       Q   Did Fox ever provide Hotfile with the content
        12   identification files for Fox's content?
        13       A   I don't think so.
        14       Q   Did Fox ever communicate to Hotfile that
10:35   15   Hotfile should implement fingerprinting technology?
        16       A   Yes, I believe so.
        17       Q   When did Fox do this?
        18       A   I'm fairly certain that it's happened in the
        19   context of this litigation.
10:35   20       Q   Prior to this litigation did Fox ever
        21   communicate to Hotfile that Hotfile should implement
        22   fingerprinting technology?
        23       A   I don't believe that we did.
        24       Q   Is Vobile one of the fingerprinting services
10:35   25   that Fox recommends?
```

```
 1      content file is discovered to the time that the file is
 2      taken down, the number of views of that -- that content
 3      file.
 4              Does Fox have a gauge for an appropriate amount
 5      of views that a file could be -- does Fox have a gauge
 6      for an appropriate amount of time that a file could be
 7      downloaded before it gets taken down?
 8              MR. POZZA:  I'm going to object as ambiguous as
 9      to what "viewed" means in this context.
10              THE WITNESS:  In the context of a site like
11      Hotfile it's our expectation that the site would be
12      filtering for unauthorized uploads of our content, so
13      essentially the answer is zero, that zero views would be
14      acceptable.
15      BY MS. THAMKUL:
16          Q    Is there content protection technology that
17      could -- I'll withdraw the question.
18              Is there content-filtering technology that is
19      100 percent guaranteed to catch all unauthorized
20      content?
21              MR. POZZA:  I will object to the extent that
22      the witness is not testifying in a technical capacity
23      and not providing expert testimony on filtering
24      technologies.
25              THE WITNESS:  My experience is that filtering
```

```
         1    technologies are mostly effective, but imperfect.  The
         2    robustness of those technologies is constantly being
         3    improved.  But I don't believe any one to be absolutely
         4    100 percent effective in all instances, particularly
11:32    5    given that, in their implementation, there are a number
         6    of policy rules that can be applied by the site
         7    implementing the technology.
         8    BY MS. THAMKUL:
         9        Q    So is it possible that some files will slip
11:32   10    through even if a site is implementing content-filtering
        11    technology?
        12        A    Yes.
        13             MR. POZZA:  Same objection.
        14    BY MS. THAMKUL:
11:33   15        Q    So if -- in the instance where a file slips
        16    through and isn't caught by content-filtering
        17    technology, is there an amount of downloads that is
        18    appropriate before a file gets taken down?
        19             MR. POZZA:  Objection; ambiguous, incomplete
11:33   20    hypothetical.
        21             THE WITNESS:  I don't believe there's any
        22    number of downloads that's appropriate.  It's not a
        23    gauge by which we generally conceive of these things
        24    because, generally, it's information that's not
11:33   25    available to us, the rightsholder, on the outside of the
```

```
       1    BY MS. THAMKUL:
       2        Q   Do you have any idea as to how Hotfile would
       3    know what fingerprinting technology software was
       4    acceptable to Fox?
03:38  5            MR. POZZA:  Objection; calls for speculation.
       6            THE WITNESS:  I can't think of all the ways
       7    that it would know, but certainly it wouldn't be hard to
       8    find out what content tech- -- content-recognition
       9    technology providers have Fox fingerprints in their
03:39 10    databases.
      11    BY MS. THAMKUL:
      12        Q   What are some of those content-recognition
      13    services?
      14        A   It includes Vobile.
03:39 15        Q   Is Vobile 100 percent guaranteed to flag
      16    infringing content?
      17            MR. POZZA:  Objection to the extent it's
      18    ambiguous and an incomplete hypothetical.
      19            THE WITNESS:  No.  And it's also dependent how
03:39 20    the technology is implemented by the service provider.
      21    BY MS. THAMKUL:
      22        Q   How would the service provider know the method
      23    of implementation of its technology that Fox would
      24    approve of?
03:39 25            MR. POZZA:  Objection; it's ambiguous.
```

BETSY ZEDEK, ESQUIRE             12/13/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

## ERRATA SHEET

| Page/Line | | Corrections |
|---|---|---|
| 7/6 | Change from: | Fox Film Corp. |
| | Change to: | Twentieth Century Fox Film Corporation |
| 8/21 | Change from: | Fox Film Entertainment |
| | Change to: | Fox Filmed Entertainment |
| 16/17 | Change from: | WebControl |
| | Change to: | WebKontrol |
| 22/4 | Change from: | WebControl |
| | Change to: | WebKontrol |
| 32/23 | Change from: | WebControl |
| | Change to: | WebKontrol |
| 44/11 | Change from: | audio, video |
| | Change to: | audio/video |
| 46/7 | Change from: | business role |
| | Change to: | business rule |
| 50/8 | Change from: | takedown statute describes |
| | Change to: | takedown under the statute describes |
| 109/2 | Change from: | owned and controlled |
| | Change to: | owned or controlled |
| 143/17 | Change from: | shear volume |
| | Change to: | sheer volume |
| 209/3 | Change from: | list may include |
| | Change to: | list may also include |
| 209/11 | Change from: | valuable inside |
| | Change to: | valuable insight |
| 209/11 | Change from: | sites of other nature |
| | Change to: | sites of another nature |

```
 1
 2
 3
 4
 5
 6
 7
 8          I, BETSY ZEDEK, ESQUIRE, do hereby declare
 9   under penalty of perjury that I have read the foregoing
10   transcript; that I have made any corrections as appear
11   noted, in ink, initialed by me, or attached hereto; that
12   my testimony as contained herein, as corrected, is true
13   and correct.
14          EXECUTED this  12th  day of  February   ,
15   20 12 , at   Los Angeles          ,   California   .
                       (City)                  (State)
16
17
18
19                       _____
                           BETSY ZEDEK, ESQUIRE
20
21
22
23
24
25
```



Zedek, Betsy                                          12/13/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 222

1     I, the undersigned, a Certified Shorthand
2  Reporter of the State of California, do hereby certify:
3     That the foregoing proceedings were taken
4  before me at the time and place herein set forth; that
5  any witnesses in the foregoing proceedings, prior to
6  testifying, were duly sworn; that a record of the
7  proceedings was made by me using machine shorthand
8  which was thereafter transcribed under my direction;
9  that the foregoing transcript is a true record of the
10 testimony given.
11    Further, that if the foregoing pertains to
12 the original transcript of a deposition in a Federal
13 Case, before completion of the proceedings, review of
14 the transcript [ ] was [ ] was not requested
15    I further certify I am neither financially
16 interested in the action nor a relative or employee
17 of any attorney or any party to this action.
18    IN WITNESS WHEREOF, I have this date subscribed
19 my name.
20
21 Dated: 12/2/201
22
23                              _____
                                CHERYL R KAMALSKI
24                              CSR No. 7113
25

Electronically signed by Cheryl Kamalski (201-157-077-2106)                4a2caff4-31b8-48c2-a50b-8729116738f1