# EXHIBIT 38

with its Data Initiative (29 CFR 1904.41).

OSHA is also proposing to revise Section 1904.39, which currently requires an employer to report to OSHA, within eight hours, all work-related fatalities and in-patient hospitalizations of three or more employees. The proposed rule would require an employer to report to OSHA, within eight hours, all work-related fatalities and all work-related in-patient hospitalizations; and within 24 hours, all work-related amputations.

This regulation was developed in accordance with the principles of Executive Order 12866 and Executive Order 13563. Executive Order 12866 requires that OSHA estimate the benefits, costs, and net benefits of proposed regulations. The Agency estimates the regulation will cost approximately $8.5 million, on an annualized basis. As discussed elsewhere in this preamble, the Agency believes the annual benefits, while unquantified, are significantly in excess of the annual costs.

**Background**

On June 22, 2011 OSHA proposed to update Appendix A to Subpart B of its Injury and Illness Recording and Reporting regulation. See 76 FR 36414. The Notice of Proposed Rulemaking (NPRM) also contained a proposed requirement to report to OSHA, within eight hours, all work-related fatalities and all work-related in-patient hospitalizations; and within 24 hours, all work-related amputations. The comment period for the NPRM ran through September 20, 2011. On September 16, 2011 OSHA received a request to extend the comment period through October 20, 2011. The National Automobile Dealers Association requested this extension to provide them more time to evaluate the Bureau of Labor Statistics injury and illness data used for the proposed industry exemption analysis. OSHA has agreed to this request. The docket is being reopened for comment for an additional 30 days.

**Public Submissions**

OSHA invites comment on all aspects of the proposed rule. OSHA specifically encourages comment on the questions raised in the issues and potential alternatives sections of this preamble. Interested persons must submit comments by October 28, 2011. The Agency will carefully review and evaluate all comments, information, and data, as well as all other information in the rulemaking record, to determine how to proceed.

You may submit comments in response to this document (1) electronically at *http://www.regulations.gov,* which is the Federal e-rulemaking portal; (2) by fax; or (3) by hard copy. All submissions must identify the Agency name and the OSHA docket number (Docket No. OSHA–2010–0019) or RIN (RIN No. 1218–AC50) for this rulemaking. You may supplement electronic submissions by uploading document files electronically. If, instead, you wish to mail additional materials in reference to an electronic or fax submission, you must submit three copies to the OSHA docket office (see **ADDRESSES** section). The additional materials must clearly identify your electronic comments by name, date, and docket number, so OSHA can attach them to your comments.

Because of security-related procedures, the use of regular mail may cause a significant delay in the receipt of submissions. For information about security procedures concerning the delivery of materials by hand, express delivery, messenger or courier service, please contact the OSHA docket office at (202) 693–2350 (TTY (877) 889–5627).

**Access to Docket**

Comments in response to this **Federal Register** notice are posted at *http://www.regulations.gov,* the Federal e-rulemaking portal. Therefore, OSHA cautions individuals about submitting personal information such as social security numbers and birthdates. Although submissions are listed in the *http://www.regulations.gov* index, some information (*e.g.,* copyrighted material) is not publicly available to read or download through that Web site. All comments and exhibits, including copyrighted material, are available for inspection and copying at the OSHA docket office. Information on using *http://www.regulations.gov* to submit comments and access dockets is available on that Web site. Contact the OSHA docket office for information about materials not available through the Web site and for assistance in using the Internet to locate docket submissions.

Electronic copies of this **Federal Register** document are available at *http://www.regulations.gov.* This document, as well as news releases and other relevant information, also are available at OSHA's Web page at *http://www.osha.gov.* For specific information about OSHA's Recordkeeping rule, go the Recordkeeping page on OSHA's Web page.

**Authority and Signature**

This document was prepared under the direction of Dr. David Michaels, Assistant Secretary of Labor for Occupational Safety and Health. It is issued under Sections 8 and 24 of the Occupational Safety and Health Act (29 U.S.C. 657, 673), 5 U.S.C. 553, and Secretary of Labor's Order 4–2010 (75 FR 55355, 9/10/2010).

Signed at Washington, DC, on September 22, 2011.

**David Michaels,**

*Assistant Secretary of Labor for Occupational Safety and Health.*

[FR Doc. 2011–24779 Filed 9–27–11; 8:45 am]

**BILLING CODE 4510–26–P**

---

# LIBRARY OF CONGRESS

**Copyright Office**

**37 CFR Part 201**

**[Docket No. RM 2011–6]**

**Designation of Agent To Receive Notification of Claimed Infringement**

**AGENCY:** Copyright Office, Library of Congress.

**ACTION:** Notice of proposed rulemaking and request for comments.

---

**SUMMARY:** The Copyright Office is issuing this Notice of Proposed Rulemaking to solicit public comment on proposals to update its interim regulations governing the designation by online service providers of agents to receive notifications of claimed copyright infringement as provided for in the Copyright Act.

**DATES:** Written comments are due November 28, 2011. Reply comments are due December 27, 2011.

**ADDRESSES:** The Copyright Office strongly prefers that comments be submitted electronically. A comment page containing a comment form is posted on the Copyright Office Web site at *http://www.copyright.gov/onlinesp/NPR.* The online form contains fields for required information including the name and organization of the commenter, as applicable, and the ability to upload comments as an attachment. To meet accessibility standards, all comments must be uploaded in a single file in either the Adobe Portable Document File (PDF) format that contains searchable, accessible text (not an image); Microsoft Word; WordPerfect; Rich Text Format (RTF); or ASCII text file format (not a scanned document). The maximum file size is 6 megabytes (MB). The name of

the submitter and organization should appear on both the form and the face of the comments. All comments will be posted publicly on the Copyright Office Web site exactly as they are received, along with names and organizations. If electronic submission of comments is not feasible, please contact the Copyright Office at 202–707–8125 for special instructions.

**FOR FURTHER INFORMATION CONTACT:** Robert Kasunic, Deputy General Counsel, Copyright Office, GC/I&R, P.O. Box 70400, Washington, DC 20024. *Telephone:* (202) 707–8380. *Fax:* (202) 707–8366.

**SUPPLEMENTARY INFORMATION:**

**Background**

In 1998, the Online Copyright Infringement Liability Limitation Act (Title II of the Digital Millennium Copyright Act, Pub. L. 105–304, 112 Stat. 2860 (Oct. 28, 1998)) amended chapter 5 of the Copyright Act, Title 17 of the United States Code, to provide limitations on liability for online service providers relating to material on their systems. With respect to material residing, at the direction of a user, on a system or network controlled or operated by or for the service provider, the limitations of liability under section 512 are available only if the service provider has satisfied certain conditions, one of which is the designation of an agent to receive notification of claimed copyright infringement to the Copyright Office, and through the service provider's Web site in a publicly accessible location. The Copyright Office is required to maintain an online directory of designated agents. 17 U.S.C. 512(c)(2). Although this takedown notification process is detailed in subsection 512(c) and is a condition precedent for the limitations of liability under that subsection, the notification process and the elements of notification set forth in subsection 512(c)(3) are also referenced in subsections 512(b) and (d), relating to system caching and information location tools respectively.

Because that Act was effective on its date of enactment and a procedure to enable the designation of agents needed to be in place immediately thereafter, the Copyright Office issued, without opportunity for comment, interim regulations governing the designation by service providers of agents to receive notifications of claimed infringement. 63 FR 59233 (Nov. 3, 1998). The Office made clear that the interim regulations would be replaced by more complete regulations to be promulgated following notice and opportunity for comment.

The interim regulations have functioned satisfactorily for many years, but issues have arisen with respect to the currency and accuracy of the information in the directory, and the Office also intends to implement an electronic process by which service providers may designate agents to receive notifications of claimed infringement and an electronic database to search for designated agents of online service providers. This notice provides a general overview of the Office's vision for the new system and seeks public comment on proposed rules that would govern the submission and updating of information relating to designated agents.

**Discussion**

*Electronic Filing.* The Copyright Office is developing an online submission form to be used by service providers to designate their respective agents to receive notifications of claimed copyright infringement. If a service provider chooses to designate an agent, it will be required to utilize the online procedure to submit the required information to the Copyright Office. Service providers that have already designated an agent under the interim regulations will be required to file new designations. A submission that does not provide information for each required field, or that provides information identified as inappropriate (*e.g.,* a phone number field that is completed with all zeros), will be automatically rejected. Once this electronic system is adopted, the Office will no longer accept paper submissions, including documents entitled ''Interim Designation of Agent to Receive Notifications of Claimed Infringement,'' as it did pursuant to the interim regulations. Given that online service providers, by definition, operate in an online environment, the Office does not anticipate that an electronic-only designation procedure would be burdensome to submitters. Moreover, an exclusively electronic process is integral to an increase in efficiency and a reduction of costs in the system.

In order to access the electronic designation of agent form, the Office proposes to require service providers to establish accounts with the Copyright Office, obtaining a username and password, through the Copyright Office's Web site. There would be no charge for establishing an account. The account must be used in order to periodically validate designation information or to make changes to designation information. The account will serve as a means of authenticating the person or entity entitled to validate or amend a service provider's designation of agent information. The Office seeks comment on this requirement.

While the Copyright Office is willing to consider allowing a service provider to delegate this responsibility to an agent or other designee, there may be reasons to be concerned about the accuracy of amendments or validations of existing designation information that are not provided by the service provider itself. If the designated agent were permitted to do so, the service provider nevertheless would bave to assume all responsibility for the acts of the agent. The Office seeks public comment on the costs and/or benefits of allowing service providers to delegate, to persons other than their employees, responsibility for maintaining their designated agent information. The current proposed regulation requires that the designation, or any validation or updating of the information in the designation as described below, be submitted by the service provider itself.

*Periodic Validation.* A small random sampling of a portion of the current directory reveals that a number of existing designations are associated with businesses that have ceased operations. Although the interim regulations require a service provider that ceases operations to notify the Copyright Office by certified or registered mail, few online service providers have complied with this requirement. Similarly, although the Office is unable to discern the precise percentage of designations that contain outdated information, the number of amended designations that the Office does receive suggests that many designations probably are outdated, and it is likely that a sizable portion of paper designations contain information that is no longer accurate. In order to help maintain the accuracy and utility of the directory of designated agents, the Office proposes that each entity that has filed a designation of agent using the online template be required, either annually, every two years, or at some other regular interval, to validate the information set forth in its designation to insure that the directory remains accurate. If any information is no longer accurate, the validation process would enable the responsible party to amend the designation to correct any outdated information. Any revision in a service provider's designation of an agent would create a new record, or version, within the Copyright Office's database. Through the use of ''versioning'' of the records, the Copyright Office will be able to provide a record indicating what information was in the directory for a particular service provider on any given

date. Such information could become important in litigation in order to ascertain whether a service provider was in compliance with the requirements of the statute at a particular point in time. Prior versions of a designation will constitute public records that may be obtained from the Copyright,Office, *e.g.,* when needed for use in litigation. The Office requests comments on whether such prior versions should also be made accessible via the Office's public Web site. In determining whether to make prior versions available via the Web site, consideration should be given to the possible additional cost of constructing a system that provides this form of access (a cost that would most likely be reflected in greater fees), the potential for confusion (*i.e.,* whether a person seeking current information about a service provider's designated agent might inadvertently end up with the information from a prior version), and the benefit of being able to gain immediate access to such information.

The Office's online system would automatically generate, at specific periods of time (*e.g.,* 30 and 60 days) prior to the date on which a service provider is required to validate the information in its designation, e-mails to the e-mail address designated by the service provider for the validation process as well as to the designated agent's e-mail address. These e-mails would contain a link to a login screen and allow the service provider to log in and validate or amend the information associated with the service provider's account. The service provider would be required to click on the link or otherwise log into its account, review the designation of agent information, and then either validate the existing information or amend the information no later than the specified deadline for validation. Should the service provider fail to validate or amend its designation within the allotted time, the designation would expire and be removed from the directory, and the service provider would be notified of that fact. A service provider whose designation has been removed but who desires to receive the benefits of section 512 would be required to file a new designation of an agent or, possibly, to reactivate and validate the expired designation. A fee would be assessed for both validation and amendment for purposes of cost recovery. The proposed rule specifies that a service provider must validate the information relating to its designated agent at least every two years, but the Office invites comment as to the appropriate time period.

As is discussed further below ("*Contact Information for the Service Provider*"), the Copyright Office proposes to require the submission of the service provider's e-mail address as well as the e-mail address of the designated agent. This is necessary in order for the Office to transmit reminder notices of validation deadlines. However, only the designated agent's e-mail address will be made publicly accessible through the online directory. The service provider's e-mail address will be maintained for Office correspondence only.

The Office proposes to also require contact information for the person filing the designation if that information is different from contact information for the online service provider, to be used in case the Office has any questions regarding the designation or the designated agent. The Office invites comments as to whether such information should be displayed in the online directory. Moreover, because of the likelihood that over time, a person responsible for the filing and updating of a designation may no longer be employed by the service provider, the proposed regulation would require alternate name and contact information for another person connected with the service provider in the event that the person filing the designation cannot be contacted.

*Amending a Designation.* The new online filing system will permit a service provider to amend the information in its designation of agent at any time, and not only during the validation process. It is anticipated that any amendments will appear in the online directory no later than 24 hours after they are entered by the service provider. The prior version of the designation will be archived by the Office as an official record, but as noted above, the information contained in that prior version is likely to be removed from the online database.

Currently, the interim regulations require a service provider to submit an entire new designation if any of its information has changed. This requirement has created some confusion and has led to the unintentional elimination of some information because some service providers submitted only the new or changed information (*e.g.,* the name of a recently purchased Web site), erroneously believing that it would supplement rather than supplant the original designation. The Copyright Office seeks to prevent this confusion by permitting the service provider to make changes only in those fields that contain out of date information. The current information will be the starting point for any changes. For instance, in the field identifying alternative name(s) of the service provider (including DBAs), it will be possible to add to the existing list of names or remove names, or both. It is anticipated that upon amendment of the form, and prior to its submission, the software will generate a preview feature to allow the user to see all of the information that will be contained in the new record.

Amendment of a designation will require the payment of a fee (to be determined) and will generate an e-mail from the Office to the old e-mail address and any new e-mail address(es) provided as a means of reducing the likelihood of unauthorized changes. Even though there will be a fee associated with amending a designation in the Copyright Office's directory, it is prudent for online service providers to maintain current and accurate information, since courts may find that incorrect or outdated information constitutes a material failure to comply with the statutory requirements necessary for invoking the limitations on liability in section 512. *See, e.g., Ellison* v. *Robertson,* 189 F. Supp. 2d 1051, 1057–1058 (C.D. Cal. 2002), aff'd in part and rev'd in part and remanded, 357 F.3d 1072 (9th Cir. 2004). Moreover, the Copyright Office requests comment on whether it should set the fee for interim amendments below the fee for periodic validation in order to encourage the timely provision of accurate information.

The Office also intends the amendment process to serve as a means of correcting any mistakes in a previous submission. However, as with all amendments, a fee will be required to correct any mistakes and the previous designation containing the mistakes will be maintained in the Office's archived records.

*Overlapping Designations.* A related issue has periodically arisen when one service provider transfers a Web site to another service provider, but fails to notify the Office of the change. The result is that when the buyer files its designation of agent and lists the purchased Web site as an alternative name, both the seller's and the buyer's designations include that Web site in the directory. This can create confusion for copyright owners who find two different agents identified in the directory for the same service provider. This problem exists with the current directory. (*See, e.g.,* the various designations for "Altavista," at *http://www.copyright.gov/onlinesp/list/a_agents.html*) The Office can conceive of two options in such situations. First,

the two designations can both exist in the online directory until the time for the validation of the old designation, at which time the old designation would expire. In the meantime, persons seeking the identity of and contact information for a service provider's agent may find two inconsistent listings for the service provider's designated agent and might have to suffer the inconvenience of serving a notice of claimed infringement on both the old and the new designated agent. Alternatively, it might be required that the seller, who has control of the existing entry in the online directory of designated agents, amend the designation to identify the buyer as the new service provider and identifying the new agent (or confirming that the existing agent is continuing in that role). The Office seeks public comment on these alternatives and any other alternatives that might address this issue.

Of course, situations may arise (and have already arisen) in which two different service providers have the same name. This is particularly likely with respect to alternative names (*i.e.,* other names by which a service provider is doing business). *See, e.g.,* the two entries for ''CUA'' at *http://www.copyright.gov/onlinesp/list/c_agents.html.* While the Office is not aware of any filings by two different service providers with the same corporate name, it is certainly conceivable that there might be an XYZ Corporation in Alaska and an unrelated XYZ Corporation in Maine, each of which operates as an online service provider. Each would be entitled to file a designated agent. For that reason, the Office is inclined to conclude that it should play no role in ''policing'' the submission of potentially conflicting information designating the agents for service providers with the same name.

At the same time, the Office recognizes the possibility of fraudulent (or negligent) filings and solicits comment on whether and how it might resolve such situations without having to engage in the adjudication of disputes over who has the right to designate an online service provider's agent.

Alternatively, problems caused by overlapping designations could possibly be eliminated if the organizing principle of the directory were to be shifted to focus on service provider's web address. See the discussion below (''*Possible Alternative Organizing Principle for Directory: Designation of Web Address*'').

*Mandatory Re-filing.* As the Office makes the transition to an electronic filing system, it will be necessary that all service providers refile (and, if necessary, update) their previously filed designations of agents to receive notifications of claimed infringement. The Office proposes the requirement for two reasons: (1) As noted above, due to the passage of years since it was created, the current directory contains out-of-date information, including information about service providers that no longer exist, and (2) the current directory consists of a list of service providers with a link, for each service provider, to a pdf file of the paper ''Interim Designation of Agent to Receive Notifications of Claimed Infringement'' or ''Amended Interim Designation of Agent to Receive Notifications of Claimed Infringement'' that was submitted to the Office by the service provider. The new directory will consist of a database to be populated with data entered online by the service provider itself. In order to ensure that the database contains accurate, up-to-date information, and in order to avoid requiring Copyright Office personnel to key in the information from the existing directory, creating additional costs that would have to be passed on to service providers and creating the potential for errors as the information is keyed into the directory, the Office proposes to place the burden of supplying complete, up-to-date information on service providers, who are in the best position to ensure that the new directory consists of complete and accurate information.

Upon adoption of the electronic system, an approximately one year transition period will begin. During the transition period, the existing paper-generated database will be maintained. At the same time, the new designated agent database will begin to be populated and no new paper designations will be accepted. During the transition period, a listing in either database will satisfy the requirements of section 512(c)(2) and parties seeking to locate a service provider's designated agent will need to search both databases. Approximately one year after the effective date of the final rule, all paper-submitted designations will become invalid and only those designations contained in the new electronically-submitted directory will satisfy the statutory requirement for designating an agent with the Copyright Office.

*Filing Fee.* The Copyright Office will establish fees to file, validate, or amend a designation of agent to receive notifications of claimed copyright infringement. In each instance, a new record, or version, will be created, including when a preexisting record is simply validated. The Office will conduct a cost study as it builds the online system to determine the appropriate fee or fees and then will publish an additional notice of proposed rulemaking to seek comments on the proposed fees. Such fee(s) will also be incorporated into the Office's general fee schedule set forth at 37 CFR 201.3. The online filing fee may be less than the current $105 fee for a paper filing due to the likely decrease in human labor required to manually input and cross-reference the information to the online directory of designated agents appearing on the Copyright Office's Web site, but it is likely that part of the fee, during an initial period of time, will be used to recoup the costs of building the new online system. Since a validation or an amendment will result in a replacement of the prior version, there is likely to be a fee associated with these transactions, but the fees for amendment and/or validation may be lower than the initial filing fee. The cost study will also examine the additional cost associated with indexing multiple alternative names for a single service provider. Based on a random sampling of a portion of the designations, the Office concludes that the majority of service providers list five or fewer alternative names, but that a significant remainder list fifty to as many as three thousand alternative names. While the Office is inclined to continue to make it possible for service providers to list as many alternative names as they deem relevant in order to enhance the utility of the directory, those service providers with larger numbers of alternative names should pay their proportionate share of the indexing cost. Therefore, the Office contemplates continuing to charge an additional fee for alternative names of the online service provider. Currently, the Copyright Office charges $30 for each group of ten (or fewer) alternative names, but for technical reasons it is preferable to charge at least a nominal fee for each alternative name.

*Content.* The Office proposes that the information required from service providers through the online submission process should be, for the most part, the same as that currently required on the paper designations under the interim regulation. Under the proposed regulatory amendment, a service provider would be required to state its full legal name, its physical street address, its e-mail address (a new requirement; see the discussion below), all alternative names under which it does business, and the name, address, telephone number, and e-mail address of the agent designated to receive notification of claimed infringement.

The Office is inclined to continue to require that the e-mail address be submitted in traditional format (*e.g., userid@domain.com*) so that it can automatically verify the authenticity of the address and return e-mails to that address. Some concern has been expressed in the past about displaying the agent's e-mail address on the Office's Web site, and suggestions have been made to the Office to display e-mail addresses as text (*e.g.,* userid at domain dot com) in order to reduce automated harvesting and spam software programs from locating service providers' e-mail addresses. While the Copyright Office is sympathetic to this problem, it is a fact of the Internet that online users and online service providers must resolve by their own means. Translating working e-mail addresses into text and vice versa would require additional programming costs and may create additional problems for the system. Moreover, the whole point of the database is to make it easy to locate a service provider's designated agent and to serve a notification of claimed infringement on that agent. On balance, it seems that there is more to be said for facilitating such notifications by providing an operable e-mail address than for requiring someone who wishes to send such a notification to key in the address in each case. Accordingly, the Office is not inclined to alter e-mail addresses within the database, but solicits comments from the public on this issue.

*Service Provider Identity and Alternative Names.* In addition to the legal name of the individual or corporation meeting the statutory definition of a service provider, the Office allows the service provider to list any alternative names (including DBAs) that would enable a copyright owner to identify the service provider and its agent. The Copyright Office leaves the determination of what alternative names to include up to the service provider, but the information provided should reasonably identify the service provider.

*Agent's Identity.* Under the interim regulation, the Office initially required the online service provider to identify the proper name of the designated agent to whom notifications of alleged copyright infringement are to be sent. However, as a result of concerns that personnel changes could inadvertently render a designation of agent obsolete, the Office has subsequently allowed service providers to designate a specific position or a particular title (*e.g.,* Copyright Manager, VP legal affairs, or General Counsel) rather than an individually named person as its agent. The Office is inclined to allow such designations in the proposed rule, but is not inclined to permit a service provider to designate an entity generally (*e.g.,* law firm or copyright management agency) as its agent. The Office is concerned that notices of claimed infringement addressed to a general entity, rather than a natural person or specific title, will be overlooked or not attended to in a timely fashion. This concern is reduced when a service provider designates a specific position or title at an entity or a natural person as its agent, particularly when that role is associated with a specific e-mail address.

Section 512(c)(2)(A) specifies that the limitation of liability under subsection (c) is contingent on substantially providing ''the name, address, phone number and electronic mail address of the agent.'' The legislative history explains that: ''The substantial compliance standard in subsections (c)(2) and (c)(3) are intended to be applied so that technical errors (such as misspelling a name, supplying an outdated area code if the phone number is accompanied by an accurate address, or supplying an outdated name if accompanied by an e-mail address that remains valid for the successor of the prior designated agent or agent of a copyright owner) do not disqualify service providers and copyright owners from the protections afforded under subsection (c). It is expected that the parties will comply with the functional requirements of the notification provisions—such as providing sufficient information so that a designated agent or the complaining party submitting a notification may be contacted efficiently—in order to ensure that the notification and take down procedures set for in this subsection operate smoothly.'' Staff of House Committee on the Judiciary, 105th Cong., Section-By-Section Analysis of H.R. 2281 as Passed by the United States House of Representatives on August 4, 1998, (Rep. Coble) (Comm. Print 1998), at 31–32. Accord: Report of the House Committee on Commerce on the Digital Millennium Copyright Act of 1998, H.R. Rep. No. 105–551, pt. 2, at 56 (1998).

The only judicial decision to address whether Congress's use of the word ''name'' requires a personal name or may be interpreted broadly to encompass a position or title, in dictum, stated that ''[n]othing in the DMCA mandates that service providers must designate the name of a person as opposed to a specialized department to receive notifications of claimed infringement.'' *Hendrickson* v. *eBay Inc.,* 165 F. Supp. 2d 1082, 1092, fn. 13 (C.D. CA 2001).

The Office invites public comment on the question of whether an online service provider must provide the actual name of a natural person or whether the name of a specific position or title will satisfy this requirement.

The Office is also inclined to permit a service provider to designate as an agent a position or individual within the service provider's organization itself rather than requiring the agent to be an unrelated third party. Since there are arguably both benefits and drawbacks to having a third party or an internal representative serve as the agent, the Office is inclined to permit each service provider to make the decision that best suits its needs. The Office is not, however, inclined to permit the designation of multiple agents, as doing so would unjustifiably complicate the statutory process. Although the Office is sensitive to the concern that multiple agents would be helpful in case of personnel turnover, the Office believes that the ability to name a position or title rather than an individual adequately addresses this issue.

*Contact Information for the Service Provider.* The statute addresses some of the information a service provider must provide to the Copyright Office, but also authorizes the Register of Copyrights to determine any additional contact information that is deemed appropriate. Under the current interim regulation, the service provider is required only to provide its legal name and permitted to provide alternative names used by the service provider. The Office is inclined to require the service provider to provide an e-mail address in order to send validation notifications to the service provider as well as the designated agent. This information is sought for the benefit of the service provider so that it is directly on notice of the impending validation requirement and potential expiration of its designated agent's listing with the Copyright Office. Since the service provider will be required to create an account in order to use the online system, the service provider will also be required to use that account to validate or amend the designation. Therefore, it is necessary to have a means of contacting the service provider. However, this e-mail address will not be posted in the Copyright Office's directory of designated agents, but rather used by the Office for the maintenance of the designated agent listing.

*Contact Information for the Designated Agent.* The statute requires the online service provider to provide the telephone number and e-mail address of the designated agent. This

information is central to the requirements of 512(c)(2) and it is particularly important that it be kept current. See, *e.g., Ellison* v. *Robertson,* 189 F. Supp. 2d 1051, 1057–1058 (C.D. Cal. 2002), aff'd in part and rev'd in part and remanded, 357 F.3d 1072 (9th Cir. 2004). A fax number may be provided, but is optional information that supplements, but does not supersede the requirement of listing a telephone number and e-mail address for the designated agent.

*Service Provider's and Agent's Address.* The Office proposes to change its rules to permit a post office box to serve as a designated agent's address. The Office proposes this change due to concerns raised about an agent's privacy, particularly where the agent's only address is a home address. However, the Office proposes not, as a matter of course, to permit a post office box to serve as the address for a service provider, as it can be important that copyright owners are able to physically locate the service provider, *e.g.,* for service of process. The Register of Copyrights may waive this prohibition in exceptional circumstances upon written request from the service provider.

The Office is also taking this opportunity to clarify that a designated agent's address can be outside of the United States; because a copyright owner is permitted to give notice of claimed infringement via e-mail, the copyright owner bears no additional expense or burden in giving notice to an agent located in a foreign country. The Office also permits a service provider to list a foreign address for itself. Although the limitations on liability in the United States Copyright Act may not apply to a particular foreign entity, the Office believes that if a U.S. court finds cause to assert jurisdiction over a foreign service provider pursuant to the U.S. Copyright Act, then no reason exists why the Copyright Office's regulations should prohibit that service provider from having filed a designation of agent as a condition precedent to receiving the benefits of the limitations of liability afforded by section 512.

*Signature.* The Office proposes to eliminate the requirement of an actual signature, which has been a requirement for the paper designations that have been submitted up to now. Because all online filings will require the creation of an online account as well as payment via pay.gov with a credit card, a checking account, or a Copyright Office deposit account, the online system will be able to reasonably verify and authenticate the identity of the person submitting, validating or amending the designation of agent filing. The person submitting the designation will also be required to provide contact information and attest to his or her authority to file on behalf of the subject service provider.

*Related Service Providers.* The Copyright Office solicits comments as to whether related service providers (*e.g.,* parent and subsidiary companies) should be permitted to file a single, joint designation of agent to receive notifications of claimed infringement. Under the interim regulations, related companies are considered separate entities and thus required to file separate designations. The Office has received occasional complaints from service providers about the inefficiency of this practice. The Office is receptive to any process which eases the burden on service providers without sacrificing clarity and usefulness of the online directory, and is inclined to permit related service providers to file a joint designation. However, it may be that any efficiency gained by a joint filing would be undercut should changes to a designation become necessary. For example, if one of the related companies were to change its address, agent or one of its Web site alternative names, then the joint designation would have to be revised and perhaps even severed to account for the then-current information of each of the related companies. In contrast, if each company had maintained its own designation, then a change at one company would only affect one designation.

If the Office permits joint designations, the service providers named on a joint designation would be required to have and state a legally recognized relationship (*e.g.,* parent/subsidiary). Informal teaming arrangements would not be acceptable for a joint filing. The person submitting the designation would be required to certify that this requirement had been satisfied and that he or she has the authority of each service provider named on the joint designation to make the submission on each service provider's behalf. The Office will examine as part of its cost study whether there is any additional cost associated with processing a joint designation. If such a fee is imposed, it will be incorporated into the Copyright Office's general fee schedule. The Office requests comments on this proposed change and any information that would weigh in favor of or against such a change. The Copyright Office is particularly interested in knowing whether the benefits of such a change for an online service provider are outweighed by other considerations.

*Possible Alternative Organizing Principle for Directory: Designation of Web Address.* As noted above, one possible means of minimizing the number of overlapping designations would be to require that a separate designation be filed for each web address. Since all or almost all service providers operate via Web sites, and since in most if not all cases a single web address will be used by only one service provider, requiring that a separate designation be submitted for each web address could effectively prevent all or almost all such duplicative designations. Since each web address is unique, providing that a designation of the agent for a particular web address will not be changed without the consent of the service provider currently identified in that designation in the Office's database should insure against contradictory entries in the directory. Moreover, it may well be that Web addresses are the principal means by which persons identify service providers. A substantial portion of the names currently used in the directory of agents consists of web domains.

The Office seeks comment on whether requiring a separate designation for each web address is the preferable means of organizing the directory. If so, a further question arises as to whether service providers should continue to be able to identify additional names by which they are known, which would be searchable in the directory. Conceivably, the web address is the primary or even the only name that a person searching the directory would need to ascertain who the designated agent of a service provider is.

However, further thought needs to be given to what is meant by ''web address.'' As a general proposition, this would be the basic domain (*e.g.,* loc.gov, *google.com,* or *verizon.net*) We recognize the possibility that sometimes, multiple service providers will use the same domain, but in such cases it is our understanding that each service provider would be using a different subdomain (*e.g.,* thomas.loc.gov).or folder (*e.g.,* loc.gov/crb). The Office seeks comments on the extent to which subdomains and folders are used by separate service providers, and whether separate designations of agents should be permitted for subdomains and for Uniform Resource Locators (''URLs'') of folders within a domain.

If using web addresses as the organizing principle for the directory makes sense, the Office also seeks comment on whether, as an alternative to a web address, a service provider

could in appropriate circumstances identify itself by reference to the name of the "app" through which it offers online services. By "app," we refer to "an application, typically a small, specialized program downloaded onto mobile devices." *See http://dictionary.reference.com/browse/app* (definition of "app"). While it is the Office's impression that as a general proposition, any app currently will be associated with a particular Web site, further information about the current and likely future usage of apps as online services will assist the Office in fleshing out the requirements for the new online directory.

The Copyright Office invites comments on any and all aspects of the proposed regulations and of the proposed new system for processing online service provider agent designations discussed above.

**List of Subjects in 37 CFR Part 201**

Copyright, General provisions.

**Proposed Regulation**

In consideration of the foregoing, the Copyright Office proposes to amend 37 CFR part 201 as follows:

**PART 201—GENERAL PROVISIONS**

1. The authority citation for part 201 continues to read as follows:

**Authority:** 17 U.S.C. 702.

2. Revise § 201.38 to read as follows:

**§ 201.38  Designation of Agent To Receive Notification of Claimed Infringement.**

(a) *General.* This section prescribes the rules under which service providers may provide the Copyright Office with designations of agents to receive notification of claimed infringement pursuant to section 512(c)(2) of title 17 of the United States Code, as amended.

(b) *Electronic Filing.* Service providers choosing to submit to the Copyright Office a designation of agent to receive notification of claimed infringement must do so by establishing an account on the Copyright Office's Web site and then utilizing the applicable online template. Paper submissions and amendments made pursuant to the interim regulation for the designation of will no longer be accepted. A service provider that has filed a paper designation of an agent under the interim regulation and desires to remain in compliance with section 512(c)(2) must resubmit its designation of agent using the online template within one year after [the effective date of this amendment]. On [DATE one year after the effective date of this amendment], designations that were submitted prior to [The effective date of this amendment] shall expire.

(c) *Content.* All required template fields must be completed in order for the submission to be submitted to the Copyright Office. The person submitting the designation of agent to receive notification of claimed infringement must provide:

(1) The full legal name and physical street address of the service provider and, if desired, any related entity that has a legally recognized relationship with the service provider and that shares the same physical street address. A post office box will not be accepted, unless in exceptional circumstances and upon written request by the service provider, the Register of Copyrights determines that the circumstances warrant a waiver of this requirement;

(2) Alternative names, if any, under which the service provider, and any related entity, is doing business; The service provider should include any names that it expects members of the public would be likely to use if engaging in a search in the Copyright Office's electronic directory for its designation of an agent to receive notification of claimed infringement.

(3) The name of the agent (either an individual, a specific position, or a title) designated to receive notification of claimed infringement. An agent may be a third party or an employee of the service provider, but must be a natural person or a position occupied by an individual, rather than a business or office name. Multiple agents may not be named;

(4) The physical mail address (street address or post office box), telephone number, and e-mail address of the agent designated to receive notification of claimed infringement;

(5) An e-mail address of the online service provider for receipt of e-mail notifications from the Copyright Office regarding the recurring validation process or amendments to the service provider's directory information;

(6) The full legal name, title, physical mail address, telephone number, and e-mail address of the person submitting the designation of agent on behalf of the service provider.

(7) The full legal name, title, physical mail address, telephone number, and e-mail address of another person affiliated with the service provider, who can be contacted by the Copyright Office in the event that the person who submitted the designation of agent cannot be contacted.

(8) An attestation by the person submitting the designation of agent that he or she has the appropriate authority of the service provider, including any related entities listed, if applicable, to submit the designation of agent on its or their behalf.

(d) *Directory of Designated Agents.*

For a period of one year after the effective date of this regulation, the Copyright Office will maintain two directories of designated agents which in combination will satisfy the requirements of section 512(c)(2): the directory consisting of notifications submitted before [the effective date of this amendment] (the "old directory") and the directory consisting of notifications submitted electronically on or after [the effective date of this amendment] (the "new directory"). During this transition period, any new designation of an agent must be submitted via the electronic submission process, and only designations submitted via that process may be amended. The directories of designated agents will be available on the Copyright Office's Web site at: *http://www.copyright.gov/onlinesp/.* One year after the effective date of this regulation, the old directory will no longer be accessible through the Copyright Office's Web site and will no longer satisfy the requirements of section 512(c)(2).

(e) *Validation.*

A service provider that has filed a designation of agent on or after [INSERT the effective date of this amendment] is required either to validate the accuracy of the information contained in its designation or to amend the information as appropriate and validate the accuracy of the amended information within two years after the later of (1) The filing of the designation of agent or (2) the most recent amendment of the designation that has been submitted by the service provider. If a service provider does not validate or amend its designation within that two-year period, the designation of agent will expire and will be removed from the Office's directory.

(f) *Amendment.*

At any time after a service provider has designated an agent with the Copyright Office, the service provider may amend the filing online to correct or update information. The Copyright Office will maintain all versions of electronic designations, including validations or amendments, for evidence in litigation, but only the current information in the directory will be available online.

(g) *Fees.*

The Copyright Office's general fee schedule, located at section 201.3 of title 37 of the Code of Federal Regulations, sets forth the applicable fees for the online filing of a service provider's designation of agent to

receive notification of claimed infringement, periodic validation or amendment thereof, as well as the fee for the listing of alternative names.

Dated: September 21, 2011.

**Maria A. Pallante,**
*Register of Copyrights.*
[FR Doc. 2011–24780 Filed 9–27–11; 8:45 am]
**BILLING CODE 1410–30–P**

# ENVIRONMENTAL PROTECTION AGENCY

## 40 CFR Part 261

[EPA–R06–RCRA–2009–0312; SW FRL–9472–6]

## Hazardous Waste Management System; Identification and Listing of Hazardous Waste; Withdrawal of proposed rule

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Withdrawal of proposed rule.

**SUMMARY:** Because EPA has discovered additional information which we believe is pertinent for consideration in this decision, we are withdrawing the proposed rule to grant an exclusion for Republic Services, Inc./BFI Gulf West Landfill (Gulf West) located in Anahuac, TX, published on January 28, 2011. This notice removes the proposed rule published in 76 FR 5110 (January 28, 2011) for public review and comment.

**FOR FURTHER TECHNICAL INFORMATION CONTACT:** Michelle Peace by mail at U.S. EPA Region 6, Multimedia Planning and Permitting Division, Corrective Action and Waste Minimization Section (6PD–C), 1445 Ross Avenue, Dallas, TX 75202, by phone at (214) 665–7430 or by e-mail at *peace.michelle@epa.gov.*

**SUPPLEMENTARY INFORMATION:** Because EPA has discovered additional information pertinent to the final disposition of the petition, we are withdrawing the proposed rule for Republic Services, Inc./BFI Gulf West Landfill (Gulf West) located in Anahuac, TX, published on January 28, 2011 (76 FR 5110). EPA subsequently received information after the comment period which highlighted several deficiencies in the data submitted by Gulf West. EPA will return the December 2009 petition submitted by Gulf West. No further action will be taken on this petition. A new petition will be required for this waste stream.

## List of Subjects in 40 CFR Part 261

Environmental protection, Hazardous waste, Recycling, Reporting and recordkeeping requirements.

**Authority:** Sec. 3001(f) RCRA, 42 U.S.C. 6921(f).

Dated: September 14, 2011.

**Carl E. Edlund,**
*Division Director, Multimedia Planning and Permitting Division, Region 6.*
[FR Doc. 2011–24984 Filed 9–27–11; 8:45 am]
**BILLING CODE 6560–50–P**

# DEPARTMENT OF HOMELAND SECURITY

## Federal Emergency Management Agency

## 44 CFR Part 67

[Docket ID FEMA–2011–0002; Internal Agency Docket No. FEMA–B–1220]

## Proposed Flood Elevation Determinations

**AGENCY:** Federal Emergency Management Agency, DHS.
**ACTION:** Proposed rule.

**SUMMARY:** Comments are requested on the proposed Base (1% annual-chance) Flood Elevations (BFEs) and proposed BFE modifications for the communities listed in the table below. The purpose of this proposed rule is to seek general information and comment regarding the proposed regulatory flood elevations for the reach described by the downstream and upstream locations in the table below. The BFEs and modified BFEs are a part of the floodplain management measures that the community is required either to adopt or to show evidence of having in effect in order to qualify or remain qualified for participation in the National Flood Insurance Program (NFIP). In addition, these elevations, once finalized, will be used by insurance agents and others to calculate appropriate flood insurance premium rates for new buildings and the contents in those buildings.

**DATES:** Comments are to be submitted on or before December 27, 2011.

**ADDRESSES:** The corresponding preliminary Flood Insurance Rate Map (FIRM) for the proposed BFEs for each community is available for inspection at the community's map repository. The respective addresses are listed in the table below.

You may submit comments, identified by Docket No. FEMA–B–1220, to Luis Rodriguez, Chief, Engineering Management Branch, Federal Insurance and Mitigation Administration, Federal Emergency Management Agency, 500 C Street, SW., Washington, DC 20472, (202) 646–4064, or (e-mail) *luis.rodriguez1@dhs.gov.*

**FOR FURTHER INFORMATION CONTACT:** Luis Rodriguez, Chief, Engineering Management Branch, Federal Insurance and Mitigation Administration, Federal Emergency Management Agency, 500 C Street, SW., Washington, DC 20472, (202) 646–4064, or (e-mail) *luis.rodriguez1@dhs.gov.*

**SUPPLEMENTARY INFORMATION:** The Federal Emergency Management Agency (FEMA) proposes to make determinations of BFEs and modified BFEs for each community listed below, in accordance with section 110 of the Flood Disaster Protection Act of 1973, 42 U.S.C. 4104, and 44 CFR 67.4(a).

These proposed BFEs and modified BFEs, together with the floodplain management criteria required by 44 CFR 60.3, are the minimum that are required. They should not be construed to mean that the community must change any existing ordinances that are more stringent in their floodplain management requirements. The community may at any time enact stricter requirements of its own or pursuant to policies established by other Federal, State, or regional entities. These proposed elevations are used to meet the floodplain management requirements of the NFIP and also are used to calculate the appropriate flood insurance premium rates for new buildings built after these elevations are made final, and for the contents in those buildings.

Comments on any aspect of the Flood Insurance Study and FIRM, other than the proposed BFEs, will be considered. A letter acknowledging receipt of any comments will not be sent.

*National Environmental Policy Act.* This proposed rule is categorically excluded from the requirements of 44 CFR part 10, Environmental Consideration. An environmental impact assessment has not been prepared.

*Regulatory Flexibility Act.* As flood elevation determinations are not within the scope of the Regulatory Flexibility Act, 5 U.S.C. 601–612, a regulatory flexibility analysis is not required.

*Executive Order 12866, Regulatory Planning and Review.* This proposed rule is not a significant regulatory action under the criteria of section 3(f) of Executive Order 12866, as amended.

*Executive Order 13132, Federalism.* This proposed rule involves no policies that have federalism implications under Executive Order 13132.

*Executive Order 12988, Civil Justice Reform.* This proposed rule meets the applicable standards of Executive Order 12988.