UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

_____/

**PLAINTIFFS' COUNTERSTATEMENT OF MATERIAL FACTS IN OPPOSITION TO
HOTFILE'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON THE
DIGITAL MILLENNIUM COPYRIGHT ACT SAFE HARBOR**


**[CONFIDENTIAL]**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

## CITATION LEGEND

1.       "Compl." shall refer to plaintiffs' Complaint, filed Feb. 8, 2011 (Dkt. #1).

2.       "Foster Decl." shall refer to the declaration of Dr. Ian Foster, dated and filed February 17, 2012, in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, available publicly at Docket No. 325-17.

3.       "HF Mot." shall refer to defendant Hotfile Corporation's Motion and Memorandum of Law for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor, dated February 17, 2012, available publicly at Docket No. 318.

4.       "HF Opp. to Warner Mot. for Summary Judgment" shall refer to defendant Hotfile Corporation's Memorandum of Law in Opposition to the Motion for Summary Judgment on Hotfile's Counterclaim Filed by Plaintiff/Counter-Defendant Warner Bros. Entertainment Inc., dated February 27, 2012.

5.       "HF SUF" shall refer to specific paragraph numbers of defendant Hotfile Corporation's Statement of Undisputed Material Facts in Support of its Motion and Memorandum of Law for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor, dated February 17, 2012, available publicly at Docket No. 319.

6.       "Opp. SUF" shall refer to specific paragraph numbers of uncontroverted facts in Plaintiffs' Counterstatement of Material Facts in Opposition to Hotfile's Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

7.       "Pls. Mot." shall refer to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012, available publicly at Docket No. 322.

8.       "Pls. Opp." shall refer to Plaintiffs' Memorandum of Law in Opposition to Defendant Hotfile Corporation's Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act, dated March 7, 2012, filed herewith.

9.       "PSUF" shall refer to specific paragraph numbers of uncontroverted facts in Plaintiffs' Statement of Uncontroverted Facts submitted in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012, available publicly at Docket No. 323.

10.     "Wold Decl." shall refer to the declaration of Dr. Erling Wold, dated February 15, 2012, and filed on February 17, 2012 in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, available at Docket No. 270-6.

11.     "Yeh Ex. __," shall refer to exhibits attached to the Declaration of Jennifer V. Yeh in Support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, filed February 17, 2012, as well as the Declaration of Jennifer V. Yeh in Support of Plaintiffs' Opposition to Defendants' Motions for Summary Judgment, filed herewith. For the convenience of the Court, the exhibits attached to the Yeh Declarations have been consecutively numbered, with Exhibits attached to the Yeh Declaration filed today continuing from the numbering in the previous set of exhibits.  Where appropriate, citations to such exhibits may also include pinpoint citations to the page number(s), and paragraph or line numbers, internal to the cited document.  In some instances where individual Yeh Declaration exhibits were not paginated, page numbers have been added manually for ease of the Court's reference. The parentheticals indicate the nature of the item cited – *e.g.*, deposition transcripts ("dep.") – or documents produced in discovery by various parties.  Thus, by way of illustration, "Yeh Ex. 1 (Titov dep.) at 200:1-10" would refer to the deposition of defendant Anton Titov, which could be found in Exhibit 1 to the Yeh Declaration, at page 200 of the transcript pages, at lines 1 through 10.  And, "Yeh Ex. 110 at 2" would refer to Exhibit 110 to the Yeh Declaration, and specifically the page of that Exhibit found at page 2 of the numbered Exhibit pages.

12.     "Yeh Decl." shall refer to the Declaration of Jennifer V. Yeh in Support of Plaintiffs' Opposition to Defendant Anton Titov's Motion for Summary Judgment and to Defendant Hotfile Corp.'s Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor, dated March 7, 2012, filed herewith.

13.     "Yeh Decl. in Supp. of Pls. Mot." shall refer to the Declaration of Jennifer V. Yeh, dated February 16, 2012, and filed on February 17, 2012 in Support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, available publicly at Docket No. 324-1.

Plaintiffs hereby provide the following Counterstatement of Material Facts in opposition to Hotfile's Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.  Plaintiffs have not repeated Hotfile's supporting evidence, per Local Rule 56.

---

*1.  Hotfile is a 'service provider' under 17 U.S.C. § 512(k)(1)(B).*

**UNDISPUTED for purposes of this motion**.

---

*2.  Hotfile users who upload files have to agree to Terms of Service and an Intellectual Property Policy which prohibit copyright infringement.*

**UNDISPUTED but not material.**  It is undisputed that Hotfile users who upload files must currently click a box agreeing to the Terms of Service and Intellectual Property Policy ("TOS") which contains a statement purporting to prohibit copyright infringement.  Those TOS appear on a different page from the click box, and Hotfile users are not in fact required to read, scroll through, or even visit the page containing the TOS.  The fact is **NOT MATERIAL** because service providers are routinely found liable for copyright infringement notwithstanding requiring users to agree to comparable TOS.  *See, e.g., Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 131 (S.D.N.Y. 2009) (website operator liable for secondary infringement of copyright notwithstanding "Terms of Use" prohibiting copyright infringement); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 980 (C.D. Cal. 2006) (same).

---

*3.  In December 2009, Hotfile registered its DMCA agent with the Copyright Office and has maintained that registration continuously ever since.*

**UNDISPUTED but not material.**  The fact is **NOT MATERIAL** because (a) Hotfile registered a P.O. Box for its designated agent in violation of federal regulation, and thus failed to comply with the DMCA's agent registration provisions; and (b) merely registering a DMCA agent with the Copyright Office is not compliance with the DMCA's agent registration provisions.  Pls. Mot. at 22-23 (citing 17 U.S.C. § 512(c)(2) and 37 C.F.R. § 201.38(c)); PSUF 8.  Hotfile lists a P.O. Box to this day.

---

*4. Hotfile has continuously made the abuse@hotfile.com email address available on its website since its outset to the present.*

**DISPUTED but not material.**  The fact is **DISPUTED** because the abuse@hotmail.com email address was not made available on the Hotfile website until April 24, 2009, based on all available evidence preserved about the appearance of the Hotfile website in that time period.  *See* Titov Ex.

1

9, 15; Gupta Ex. 14 at 6.  Disney, for example, initially had difficulty in March 2009 identifying a Hotfile email address to use to send infringement notices, because Disney personnel could not locate an email or physical address for Hotfile.  Yeh Ex. 122 (Griffin dep.) at 180:15-181:5.  The fact is **NOT MATERIAL** because the asserted fact does not constitute compliance with the DMCA's agent registration provisions.  Pls. Mot. at 22-23; PSUF 8.

**Evidentiary objections:**  Hotfile does not provide a screenshot capture prior to April 24, 2009 showing that the abuse@hotmail.com email address was made available prior to that time.  Mr. Titov's testimony regarding the contents of the Hotfile website is inadmissible to prove the website's contents.  *See* Fed. R. Evid. 1002.

*5.  Since at least May 2010, Hotfile's publicly posted Intellectual Property Policy has expressly incorporated the DMCA, informed users of its repeat infringer policy, and made available the name, address, and email address of its Designated Agent.*

**UNDISPUTED in part but not material,** in that Hotfile posted a policy that stated that it would "discontinue service to users who repeatedly make such [infringing] content available."  Titov Ex. 17.  The alleged fact is **DISPUTED in part**, in that Hotfile did not post a real address for its DMCA agent, but rather a P.O. box, which is not compliant with the DMCA's agent registration provisions.  *Supra* Opp. SUF 3.  The alleged fact is further **DISPUTED in part**, insofar as Hotfile suggests that it "reasonably implemented" a policy to terminate users who repeatedly uploaded infringing content, pursuant to 17 U.S.C. § 512(i)(1)(A), which Hotfile did not.  PSUF 2-4.

*6.  Hotfile.com has always allowed content owners to send DMCA takedown notices.*

**DISPUTED but not material**.  The fact is **DISPUTED** because prior to April 2009, Hotfile did not make an email address available to send takedown notices.  *Supra* Opp. SUF 4.  The fact is **NOT MATERIAL** because providing an email address to use to send DMCA notices does not constitute compliance with the DMCA's notice and takedown provision, 17 U.S.C. § 512(c)(1)(C), which requires Hotfile to expeditiously respond to DMCA notices by removing or disabling access to the content identified as infringing, which Hotfile has not always done.  *Infra* Opp. SUF 13 & 17.

**Further, the alleged fact is unsubstantiated:**  The only cited evidence – a screenshot of the "Contact Us" page without further description – does not support that Hotfile "has always allowed content owners to send DMCA takedown notices."  Titov Ex. 9.

*7.  Content owners - including the Studios and their agents -- have contacted Hotfile's abuse*

*department to request that allegedly copyright infringing files be taken down.*

It is **UNDISPUTED** that plaintiffs sent emails requesting that infringing files be taken down to Hotfile; it is **DISPUTED** that the emails went to an "abuse department" or that Hotfile was in compliance with the DMCA in the manner in which it responded to infringement notices**.** The characterization that the emails went to an "abuse department" is not substantiated by the cited evidence, which merely shows that emails were sent to an "abuse" or "support" email address. Titov Exs. 10-14. The fact is also **NOT MATERIAL** in that whether plaintiffs (or other copyright owners) sent Hotfile DMCA notices is not relevant to Hotfile's eligibility for DMCA safe harbor. *See Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578 SVW, 2009 WL 6355911, at *16 n.27 (C.D. Cal. Dec. 21, 2009) (finding no DMCA safe harbor regardless of compliance with DMCA notice provisions).

*8.  Hotfile has made available to copyright owners including the Studios Special Rightsholder Accounts (or SRAs) that streamline notice and takedown by giving the content owner the ability directly to takedown files.*

**DISPUTED but not material**. *First*, there is no evidence that Hotfile offered an SRA to each plaintiff; specifically, defendants cite no evidence that the SRA was offered to Disney or Fox. *Second*, the SRA does not allow a content owner "directly to takedown files." Pursuant to the parties' stipulation in this case, "Warner's notifications by means of Hotfile's SRA are (and have the effect of) notifications of claimed infringement to Hotfile's designated agent under 17 U.S.C. § 512(c)(3)(A)." Yeh Ex. 139 at 2.

*9.  Hotfile notified content owners of the availability of the SRA tool.*

**DISPUTED but not material**. There is no evidence that Hotfile offered an SRA to each plaintiff; specifically, defendants cite no evidence that the SRA was offered to Disney or Fox.

*10.  Many content owners, including the Studios, and their content-protection agents, have used SRAs to effectuate instant notice-and-takedown.*

**DISPUTED but not material**. Hotfile presents no evidence that plaintiffs other than Warner used the SRA. While vendors used by Fox and Columbia may have made limited use of a SRA, neither Fox nor Columbia did; nor did the other plaintiffs. Yeh Ex. 123 (Perkins dep.) at 111:19-112:6 (Universal "not aware" of opening an SRA account); Yeh Ex. 125 (Zedek dep.) at 77:1-4 (Fox did not have SRA); Yeh Ex. 124 (Solmon dep.) at 122:16-123:9 (Columbia without knowledge of

SRA); Yeh Ex. 122 (Griffin dep.) at 56:8-20 (Hotfile did not provide Disney a takedown tool); *see also* Yeh Ex. 128 (Titov dep.) at 271:9-21 (claiming that Hotfile cooperated with studios by "providing SRA tool to Warner").

*11.  Before filing this lawsuit, the Plaintiff Studios professed satisfaction with this technology as a way to protect their content.*

**DISPUTED but not material**.  Disney, Fox, Universal, and Columbia did not use SRAs.  *Supra* Opp. SUF 10.  Additionally, Warner's representative Michael Bentkover testified that he was dissatisfied with the SRA tool because it did not sufficiently "[c]urb piracy on Hotfile," Yeh Ex.126 (Bentkover dep.) at 36:15-22, and it was "not enough [for Hotfile] just to take the files down," *id.* at 38:13-18.  Rather, in the emails cited, Mr. Bentkover testified that he was merely being polite.  *Id.* at 26:4-27:22.

**Further, the alleged fact is unsubstantiated**:  The cited evidence does not show Warner professed satisfaction with the technology.  *See* Titov Ex. 30 (Warner requesting increased quota in SRA takedowns due to release of new titles); Titov Ex. 31 (Warner confirming that certain individuals were authorized to send takedowns on behalf of Warner); Titov Ex. 32 (Warner requesting SRA for HBO).  Titov Exhibit 33 is an email sent by BayTSP, not Warner, and it requests an SRA for non-plaintiff HBO.  Warner sought additional capacity for takedowns through the SRA because "the problem of infringement on Hotfile was becoming so overwhelming that the SRA tool as had been originally provided . . . was ineffective," Yeh Ex. 127 (Kaplan dep.) at 23:4-10, and the  "overflow" due to Hotfile's SRA limit required resorting to email notice, *id.* at 24:14-17.

*12.  Plaintiff Warner requested another hosting site to copy Hotfile's SRA.*

**DISPUTED but not material**.  Plaintiff Warner did not request Fileserve "to copy Hotfile's SRA," but only to provide a tool that would allow Warner "to log in and remove the infringing link immediately."  Gupta Ex. 16 at 4.

*13.  Hotfile implemented MD5 hashes, so that once subject to a takedown notice, identical copies of the same file could not be downloaded in the future (even if uploaded by a different user).*

**DISPUTED but not material**.  First, Hotfile did not implement MD5 hashes "so that" it could prevent downloading of re-uploaded infringing files.  Rather, Hotfile implemented MD5 hashes so that Hotfile ███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████

██████████  █████████████████████████████████████ Hotfile knew
that the uploading user had requested and received from Hotfile up to six different download links
██████████████ , ███████████████████████████████████████
███████████████████████████████████████████████

**Evidentiary Objections:**  Hotfile cites to the testimony of Mr. Zebrak to support the proposition
that a hash is "almost like a fingerprint" (conflating "hash" technology and "digital fingerprint"
technology).  Mr. Zebrak is not and has not purported to be an expert on fingerprint technology, and
is not competent to opine on the definition of a "hash" value.  Zebrak Decl. Ex. A.  In fact, a hash is
not like a "fingerprint" in the context of digital fingerprinting technology, as a hash only identifies
whether a file is an exact digital replica of another file, whereas a digital fingerprint identifies
whether a file contains a specific work or title.  Thus, "hash" blocking does not prevent files with
the same content from being uploaded to or downloaded from Hotfile.  Foster Decl. at 11 n.4; ¶ 16.

*14.  Hotfile did not have knowledge that the files-in-suit were allegedly infringing before receiving
DMCA notices or SRA requests from the Studios.*

**DISPUTED**.  Defendants had actual and red flag knowledge of infringement before receiving
DMCA notices or SRA requests from plaintiffs.  Indeed, defendants actively promoted and fostered
copyright infringement on Hotfile.  PSUF 16; Pls. Mot. at 5-8, 10-13.  Defendants had actual
knowledge of infringement of files for which they received a takedown notice ████████████████
████████████████████████████████████████ *Supra* Opp. SUF 13.  Defendants
had actual knowledge that users were downloading specific files containing copyrighted works
through user communications, including more than 700 communications specifically indicating
downloads of plaintiffs' files-in-suit.  PSUF 9(b).  Moreover, defendants provided technical
assistance to users seeking to download specific copyrighted works.  PSUF 9(c); Pls. Mot. at 13.

Defendants had "red flag" knowledge of infringement, *inter alia*, based on the following:

- The overwhelming magnitude of infringement occurring on the Hotfile website (*e.g.*, more than 90% of downloads infringing), PSUF 10(a);

- ██████████████████████████████████████████████████████████

- User communications indicating the download of infringing works, PSUF 10(c);

- Many of Hotfile's paid "Affiliate" links sites were obvious infringers, PSUF 10(d);

- Illustration of Hotfile's technical features by use of infringing works, PSUF 10(e);

- ██████████████████████████████████████████████████████████
  ██████████████████████████████████████████████

*15.  Hotfile does not in the ordinary course of business review the millions of files its users upload.*

**DISPUTED in part but not material**.  It is **UNDISPUTED** that Hotfile did not review files in the ordinary course of business prior to the time it began to use Vobile.  Since implementing Vobile, Hotfile has been systematically reviewing at least some files. HF SUF 25, 27.  The fact is **NOT MATERIAL** because, as described in *supra* Opp. SUF 14, Hotfile nonetheless had actual and red flag knowledge of rampant infringement on Hotfile.

*16.  The number of files that the Studios have accused of infringing in this case constitute less than 1 % of the files on Hotfile.*

**UNDISPUTED but not material**.  Plaintiffs identified ████████ files that, based on their metadata and other available information, appeared to contain copies of plaintiffs' copyrighted works.  Yeh Decl. in Supp. of Pls. Mot. ¶ 120; Yeh Ex. 119.  However, plaintiffs' process of identifying those files was limited both by severe time constraints and by a lack of access to all of Hotfile's content files.  The nearly ████████ works that plaintiffs were able to identify are certainly just a small fraction of files containing infringing copies of plaintiffs' works that have been available on Hotfile.  Yeh Decl. ¶ 33.  Plaintiffs' statistical analysis determined that over 90% of the daily downloads of files from Hotfile were infringing overall.  PSUF 10(a)(i).  Almost 10% of the files in the study were confirmed as owned or controlled by plaintiffs or their affiliates.  Zebrak Decl. ¶ 15 & Ex. B.

*17.  Hotfile typically removes files identified in an email or online DMCA notice within 48 hours.*

**DISPUTED but not material**.  The fact is **NOT MATERIAL** because Hotfile's "typical" practice is not relevant to Hotfile's response to specific notices sent by the plaintiffs.  The fact is

**DISPUTED** because on numerous occasions, content owners, including plaintiffs, had to send follow-up takedown notices identifying files that had not been removed in response to a previous notice within 48 hours. *E.g.*, Titov Ex. 13 (Disney noting that "To date, you have not removed this content, which continues to be accessible at one or more of the links identified below"); Yeh Ex. 147 (plaintiff re-notice of files on which 3 previous notices had been sent more than 3 months ago); Yeh Ex. 148 (plaintiff re-notice of files on which 2 previous notices had been sent more than 2 months ago); Yeh Ex. 149 (plaintiff re-notice of files on which multiple notices had been sent, some more than one month ago); Yeh Ex. 150 (additional plaintiff re-notice); *see also* Yeh Exs. 141, 142 (attaching additional second or further notices of content that had not been removed by plaintiffs and other content owners); Yeh Ex.122 (Griffin dep.) at 49:2-7, 51:15-25 (Disney often had to send multiple notices on files).

*18. Hotfile took down each file-in-suit for which a takedown notice was received after February 18, 2011 within 48 hours of Hotfile's receiving the notice of infringement.*

**UNDISPUTED but not material**, as Hotfile's eligibility for DMCA safe harbor for the post-complaint period was not raised in the pleadings or litigated by the parties. Accordingly, for the reasons stated in plaintiffs' opposition brief, Hotfile's present motion is procedurally impermissible and a misuse of Rule 56. Pls. Opp. at 3-7. Hotfile, moreover, remains liable for infringement it induced through its pre-complaint conduct, even if the particular acts of direct infringement occurred after the filing of the complaint. Pls. Opp. at 8-11.

*19. Hotfile derives revenues exclusively from premium access fees.*

The fact that "Hotfile derives revenues exclusively from premium access fees" is **UNDISPUTED** but the supporting statements/evidence that follow are **DISPUTED**. Hotfile's derivation of fees is not "content-neutral"; Hotfile uses the lure of popular content to attract downloading users. *See infra* Opp. SUF 20. The cited evidence does not support the fact that users purchase premium accounts for "file transfer and space-shifting." Titov Decl. ¶ 7.

*20. Hotfile does not benefit directly from infringing activity.*

**DISPUTED**. Hotfile benefits directly from its users' infringing activities. Defendants' business model is based on the availability of copyrighted content to attract users to Hotfile. PSUF 16(e). Hotfile's sole source of revenue is selling premium subscriptions. PSUF 16(e)(i). In order to attract users, Hotfile must offer content that users want to download, which is overwhelmingly

copyrighted content.  PSUF 16(e)(ii); *see also* HF Opp. to Warner Mot. for Summary Judgment at 19 (Hotfile admits that its business "is predicated on the availability of popular . . . . content"). Indeed, over 90% of the files downloaded from Hotfile are infringing. PSUF 10(a)(i).  Users pay for "premium" accounts to download copyrighted content and sought to cancel their subscriptions when that content was removed.  PSUF 16(e)(iii).  Thus, the availability of copyrighted material draws users to Hotfile to become subscribers. *See also* PSUF 20.

**Further, the alleged fact is unsubstantiated:**  The cited evidence does not support the fact that users purchase premium accounts for "file transfer and space-shifting."  Titov Decl. ¶ 7.

---

*21.  Since February 18, 2011, Hotfile has adopted and reasonably implemented and informs its users that it has a repeat infringer policy.*

**DISPUTED but  not material**.  The fact is **NOT MATERIAL** because Hotfile's eligibility for DMCA safe harbor for the post-complaint period was not raised in the pleadings or litigated by the parties.  Accordingly, for the reasons stated in plaintiffs' opposition brief, Hotfile's present motion is procedurally impermissible and a misuse of Rule 56.  Pls. Opp. at 3-7.  Hotfile, moreover, remains liable for infringement it induced through its pre-complaint conduct, even if the particular acts of direct infringement occurred after the filing of the complaint.  Pls. Opp. at 8-11.  The fact is **DISPUTED** because Hotfile has not reasonably implemented a repeat infringer policy, as required by the DMCA, since February 18, 2011.  *First*, until February 2012, Hotfile permitted *unregistered* users to upload content anonymously. ███████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████ ███████████████████████████████ ███████████████████████████████████████████

██████████████████████████████████████████████████████

**Evidentiary Objections:** Whether Hotfile "reasonably" implemented a repeat infringer policy is an improper legal conclusion on an ultimate legal issue. *See AUSA Life Ins. Co. v. Dwyer*, 899 F. Supp. 1200, 1202 n.2 (S.D.N.Y. 1995). Defendants also impermissibly cite to case law in support of their legal, not factual, conclusion.

*22. Hotfile's post-February 18, 2011 "three-strikes" policy provides for the termination in appropriate circumstances of accounts who are repeat infringers.*

**DISPUTED**. *See supra* Opp. SUF 21 (including evidentiary objection).

*23. Hotfile has terminated many users pursuant to this strengthened repeat infringer policy.*

**UNDISPUTED but not material.** The fact is **NOT MATERIAL** because Hotfile's eligibility for DMCA safe harbor for the post-complaint period was not raised in the pleadings or litigated by the parties. Accordingly, for the reasons stated in plaintiffs' opposition brief, Hotfile's present motion is procedurally impermissible and a misuse of Rule 56. Pls. Opp. at 3-7. Hotfile, moreover, remains liable for infringement it induced through its pre-complaint conduct, even if the particular acts of direct infringement occurred after the filing of the complaint. Pls. Opp. at 8-11. *See also supra* Opp. SUF 21 (Hotfile did not reasonably implement repeat infringer policy post-complaint). Plaintiffs do **DISPUTE** the characterization of the policy as "strengthened"; Hotfile did not have any policy pre-complaint. PSUF 2-4.

*24. Hotfile accommodates and does not interfere with technical measures that are used by copyright owners to identify or protect copyrighted works.*

To the extent that Hotfile is claiming that it satisfies the DMCA safe harbor requirement under 17 U.S.C. § 512(i)(1)(B) that a service provider "accommodates and does not interfere with standard technical measures," as defined in the statute, that is **UNDISPUTED** for purposes of this motion. Plaintiffs **DISPUTE** this alleged fact to the extent that it suggests that Hotfile did not interfere with copyright enforcement efforts by content owners. For some time, Hotfile █████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████ At the same time, Hotfile offered a feature that allowed uploading users to receive up to six different download links for each uploaded file. PSUF 9(a)(iv)-(v). As a result, Hotfile enable uploading users to circumvent copyright owner enforcement efforts by ████████████████████████████████████████ even after the content owner had requested that Hotfile remove the file.

9

25.  *In the summer of 2011, Hotfile adopted Vobile MediaWise content identification technology.*

**UNDISPUTED but not material**.  The fact is **NOT MATERIAL** because Hotfile's liability and eligibility for DMCA safe harbor for the post-complaint period was not raised in the pleadings or litigated by the parties.  Accordingly, for the reasons stated in plaintiffs' opposition brief, Hotfile's present motion is procedurally impermissible and a misuse of Rule 56.  Pls. Opp. at 3-7.  Hotfile, moreover, remains liable for infringement it induced through its pre-complaint conduct, even if the particular acts of direct infringement occurred after the filing of the complaint.  Pls. Opp. at 8-11.  The fact is further **NOT MATERIAL** because "adopt[ion]" of the technology does not mean that it was effectively implemented in a copyright filter. ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

26.  *In late 2011, Vobile released vCloud9.*

The fact is **UNDISPUTED**, but the supporting facts/evidence that follow it are **DISPUTED**.  Prior to the release of vCloud9, Vobile offered other products such as Mediawise that used the same digital fingerprinting technology to identify content files as vCloud9.  Yeh Ex. 130 (Wang dep.) at 16:24-17:5, 53:2-21.  At the time of Hotfile's launch in 2009, this technology had been effectively deployed on other content hosting sites, and readily could have been utilized by Hotfile.  Foster Decl. ¶¶ 16-18; Wold Decl. ¶¶ 26-27.

27.  *In February 2012, Hotfile adopted Vobile vCloud9 content identification technology.*

**DISPUTED but not material**.  Plaintiffs have had no discovery on whether Defendants have "adopted" vCloud9.  Yeh Decl. ¶ 33. The fact is **NOT MATERIAL** because Hotfile's liability and eligibility for DMCA safe harbor for the post-complaint period was not raised in the pleadings or litigated by the parties.  Accordingly, for the reasons stated in plaintiffs' opposition brief, Hotfile's present motion is procedurally impermissible and a misuse of Rule 56.  Pls. Opp. at 3-7.  Hotfile, moreover, remains liable for infringement it induced through its pre-complaint conduct, even if the particular acts of direct infringement occurred after the filing of the complaint.  Pls. Opp. at 8-11.

28.  *Hotfile continues to improve and refine its countermeasures against infringement.*

**DISPUTED but not material**.  *See supra* Opp. SUF 27.

10

Dated: March 7, 2012

Respectfully submitted,

By: _____

Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 416-6880
Facsimile:  (305) 416-6887

MOTION PICTURE ASSOCIATION
   OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax:  (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Facsimile:  (202) 639-6066

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th Day of March, 2012, I served the following

documents on all counsel of record on the attached service list via their email address(es)

pursuant to the parties' service agreement:

**Plaintiffs' Counterstatement of Material Facts in Opposition to Hotfile
Corporation's Motion for Partial Summary Judgment Based on the Digital
Millennium Copyright Act Safe Harbor**

By: _____

Karen L. Stetson

**SERVICE LIST**
**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*