UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

 /
_____

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
HOTFILE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT
BASED ON THE DIGITAL MILLENNIUM COPYRIGHT ACT SAFE HARBOR**

**[CONFIDENTIAL]**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

CITATION LEGEND.............................................................................................................. iv

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...........................................................................................................................2

I.      HOTFILE SEEKS AN IMPROPER ADVISORY OPINION.............................................3

II.      HOTFILE CANNOT SEEK PARTIAL SUMMARY JUDGMENT BY
SPLITTING UP PLAINTIFFS' CLAIMS TEMPORALLY...............................................6

III.      HOTFILE IS LIABLE FOR THE POST-COMPLAINT INFRINGEMENTS IT
INDUCED BY ITS PRE-COMPLAINT CONDUCT.........................................................8

# TABLE OF AUTHORITIES

CASES

*In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003) ................................................11

*ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619 (4th Cir. 2001) ..............................11

*Chastain v. AT&T*, 558 F.3d 1177 (10th Cir. 2009) ........................................................................3

*CIVIX-DDI, L.L.C. v. Cellco Partnership*, 387 F. Supp. 2d 869 (N.D. Ill. 2005) .....................4, 6

*Columbia Pictures Industries, Inc. v. Fung*, No. CV 06-5578 SVW, 2010 U.S. Dist.
    LEXIS 91169 (C.D. Cal. May 20, 2010) ..............................................................................8, 9

*Columbia Pictures Industries, Inc. v. Fung*, No. CV 06-5578 SVW, 2009 WL 6355911
    (C.D. Cal. Dec. 21, 2009) ......................................................................................................11

*DF&R Corp. v. American International Pacific Industries Corp.*, 830 F. Supp. 500 (D.
    Minn. 1993).................................................................................................................................6

*Eagle Comtronics, Inc. v. John Mezzalingua Associates, Inc.*, 198 F.R.D. 351 (N.D.N.Y.
    2000) .......................................................................................................................................5, 6

*Fox v. Good Samaritan L.P.*, 801 F. Supp. 2d 883 (N.D. Cal. 2010), *aff'd*, No. 10-15989,
    2012 WL 345894 (9th Cir. Feb. 3, 2012) .................................................................................3

*Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354 (Fed. Cir. 2006)...........................8

*Howe v. Baker*, 796 F.2d 1355 (11th Cir. 1986)...............................................................................3

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal.
    2007) ................................................................................................................................. 8, 10-11

*Newman-Green, Inc. v. Alfonzo-Larrain R.*, 612 F. Supp. 1434 (N.D. Ill. 1985) ..........................7

*Ortiz v. Lopez*, 688 F. Supp. 2d 1072 (E.D. Cal. 2010) ...................................................................3

*Rasmussen v. City of New York*, 766 F. Supp. 2d 399 (E.D.N.Y. 2011) ........................................7

*SEC v. Liberty Capital Group, Inc.*, 75 F. Supp. 2d 1160 (W.D. Wash. 1999).............................7

*St. Paul Mercury Ins. Co. v. FDIC*, 2010 U.S. Dist. LEXIS 30930 (S.D. Fla. Mar. 30,
    2010) ...........................................................................................................................................3

*Zimmer Technology, Inc. v. Howmedica Osteonics Corp.*, 476 F. Supp. 2d 1024 (N.D.
    Ind. 2007)....................................................................................................................................6

**OTHER AUTHORITIES**

11 James Wm. Moore, *Moore's Federal Practice* § 56.05[1][a] (3d ed. Supp. 2011)............... 3-4

10B Charles Alan Wright et al., *Federal Practice & Procedure* § 2736 (3d ed. 1998) .................7

## CITATION LEGEND

1.      "Compl." shall refer to plaintiffs' Complaint, filed Feb. 8, 2011 (Dkt. #1).

2.      "Foster Decl." shall refer to the declaration of Dr. Ian Foster, dated and filed February 17, 2012, in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, available publicly at Docket No. 325-17.

3.      "HF Mot." shall refer to defendant Hotfile Corporation's Motion and Memorandum of Law for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor, dated February 17, 2012, available publicly at Docket No. 318.

4.      "HF SUF" shall refer to specific paragraph numbers of defendant Hotfile Corporation's Statement of Undisputed Material Facts in Support of its Motion and Memorandum of Law for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor, dated February 17, 2012available publicly at Docket No. 319.

5.      "Opp. SUF" shall refer to specific paragraph numbers of uncontroverted facts in Plaintiffs' Counterstatement of Material Facts in Opposition to Hotfile's Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

6.      "Pls. Mot." shall refer to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012, available publicly at Docket No. 322.

7.      "PSUF" shall refer to specific paragraph numbers of uncontroverted facts in Plaintiffs' Statement of Uncontroverted Facts submitted in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012, available publicly at Docket No. 323.

8.      "Wold Decl." shall refer to the declaration of Dr. Erling Wold, dated February 15, 2012, and filed on February 17, 2012 in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, available at Docket No. 270-6.

9.      "Yeh Ex. __," shall refer to exhibits attached to the Declaration of Jennifer V. Yeh in Support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 16, 2012, as well as the Declaration of Jennifer V. Yeh in Support of Plaintiffs' Opposition to Defendants' Motions for Summary Judgment, filed herewith. For the convenience of the Court, the exhibits attached to the Yeh Declarations have been consecutively numbered, with Exhibits attached to the Yeh Declaration filed today continuing

iv

from the numbering in the previous set of exhibits.  Where appropriate, citations to such exhibits may also include pinpoint citations to the page number(s), and paragraph or line numbers, internal to the cited document.  In some instances where individual Yeh Declaration exhibits were not paginated, page numbers have been added manually for ease of the Court's reference. The parentheticals indicate the nature of the item cited – *e.g.*, deposition transcripts ("dep.") – or documents produced in discovery by various parties.  Thus, by way of illustration, "Yeh Ex. 1 (Titov dep.) at 200:1-10" would refer to the deposition of defendant Anton Titov, which could be found in Exhibit 1 to the Yeh Declaration, at page 200 of the transcript pages, at lines 1 through 10.  And, "Yeh Ex. 110 at 2" would refer to Exhibit 110 to the Yeh Declaration, and specifically the page of that Exhibit found at page 2 of the numbered Exhibit pages.

## PRELIMINARY STATEMENT

Plaintiffs' motion for summary judgment demonstrates why Hotfile is liable for copyright infringement and ineligible for DMCA safe harbor as a result of the unlawful conduct described in the complaint. Recognizing it does not have a viable defense as to that conduct, Hotfile, in its cross-motion, does not address the complaint allegations at all. Rather, Hotfile claims to have "reformed" and asks the Court for an improper advisory opinion that, in its allegedly new incarnation, it is immune from liability under copyright law. Hotfile's motion is procedurally improper and a misuse of Rule 56.

Hotfile seeks partial summary judgment on operational changes Hotfile claims to have made *after* plaintiffs brought suit and, in many cases, only within the past few weeks, after discovery closed. In doing so, Hotfile describes a service that is considerably different from the one plaintiffs sued – a service that, according to Hotfile:  (i) has a robust repeat infringer policy that systematically terminates repeat infringers; (ii) no longer pays Hotfile Affiliates to upload copyright infringing content; and (iii) incorporates industry leading copyright filtering technology to mitigate infringement on its system. In short, instead of addressing the merits of plaintiffs' complaint, Hotfile asks the Court to rule on conduct not raised in the pleadings or litigated by the parties, based on a version of the Hotfile service that did not exist when the complaint was filed and that was not the subject of discovery.

Hotfile's motion for summary judgment is improper for numerous reasons, any one of which requires that it be denied.

*First*, Hotfile seeks an impermissible advisory opinion on alleged post-complaint changes, most of which were made within the past few weeks, after the close of discovery. It is black letter law that the Court cannot decide – much less grant summary judgment on – issues not raised in the pleadings or litigated in the case.

*Second*, Hotfile is not be permitted under Rule 56 to carve up plaintiffs' claims into multiple time periods with different facts for purposes of assessing liability. While Rule 56 permits a party to seek partial summary judgment on distinct *elements* of a claim, it does not permit a party to go fact-by-fact, or week-by-week, seeking partial summary judgment in a piecemeal fashion.

*Third*, beyond these procedural defects, Hotfile's motion must fail because Hotfile remains secondarily liable for infringement it induced through the conduct alleged in the

1

complaint, even if the resulting acts of direct infringement occurred post-complaint. Hotfile seeks to present itself as "reformed" based on post-complaint modifications to its system and business model. However, as courts considering similar claims of "reform" have observed, an infringer such as Hotfile cannot simply claim that it has "turned off" its purposeful inducement of infringement and thereby absolve itself of responsibility for subsequent infringements. Hotfile remains liable for those infringements.

Hotfile's motion for summary judgment is not just meritless, it is improper. Hotfile is not entitled to judgment, on summary judgment or at trial, on claims not at issue in this case. Hotfile's motion should be denied.

## ARGUMENT

Plaintiffs brought this action only after they sent notice after notice to Hotfile over the course of two years, identifying well over a million individual files as infringing, to no effect. The volume of infringing files on Hotfile grew so fast that no copyright owner could ever hope to fully mitigate the infringement by identifying individual files and taking them down through notices. Hotfile knows that, which is why Hotfile responds to takedown notices and provides "SRA" accounts: doing so allows Hotfile to claim (falsely) that it is cooperating with copyright holders, without having any meaningful effect on piracy. Indeed, Hotfile's practice of only taking down files one by one, while actively incentivizing users to upload infringing files *en masse*, effectively challenged copyright holders to try to empty the ocean with a teaspoon while Hotfile continually filled it with a fire hose.

The rampant, uncontrolled infringement on Hotfile was not a coincidence or a result of happenstance. Hotfile intended it. Thus, as alleged in the complaint, plaintiffs sued Hotfile because it:

- o  Overtly induced infringement through an Affiliate program that rewarded users for uploading copyright infringing content, Compl. ¶¶ 28-34;

- o  Knew that it was a notorious haven for copyright infringement, used for infringement and little else, Compl. ¶¶ 37, 44;

- o  Adopted a business model that depended on and profited from rampant copyright infringement, Compl. ¶¶ 24-27;

- o  Refused to take action against even its most blatant repeat infringers, Compl. ¶ 42;

- o  Eschewed using readily available technology to mitigate infringement, Compl. ¶¶ 39, 41; and
- o  Limited its "response" to this massive copyright infringement to removing files one by one, only when specifically identified by a copyright owner, Compl. ¶ 38.

Those were the allegations raised in the complaint and litigated by the parties.

Hotfile's motion for partial summary judgment expressly disavows consideration of the actual claims in suit.  Instead, Hotfile seeks summary judgment on *alleged* post-complaint changes that were neither raised by the pleadings nor litigated by the parties – and most of which, by Hotfile's own account, took place within the past few weeks.[1]

## I.   HOTFILE SEEKS AN IMPROPER ADVISORY OPINION.

It is black letter law that courts cannot render an advisory opinion on issues not placed in dispute in the litigation.  *See Howe v. Baker*, 796 F.2d 1355, 1360-61 (11th Cir. 1986) ("A court '[has] no power to issue advisory opinions'") (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (bracket in original)); *Chastain v. AT&T*, 558 F.3d 1177, 1184 (10th Cir. 2009) (court may not issue advisory opinion to assess a "claim that has not been made"); *St. Paul Mercury Ins. Co. v. FDIC*, Case No. 08-21192-Civ-GARBER, 2010 U.S. Dist. LEXIS 30930, 26-27 (S.D. Fla. Mar. 30, 2010) ("the Court declines to issue an advisory opinion" as to "claims [that] are not at issue in this litigation").

Any post-complaint changes by Hotfile plainly were not raised in plaintiffs' complaint or litigated in the case.  As courts have routinely made clear, "[t]he issues on summary judgment are framed by the complaint.  Indeed, the issues in the complaint guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations."  *Ortiz v. Lopez*, 688 F. Supp. 2d 1072, 1082 (E.D. Cal. 2010); *see also Fox v. Good Samaritan L.P.*, 801 F. Supp. 2d 883, 896 (N.D. Cal. 2010) ("While a summary judgment motion does go beyond the pleadings in the sense that it tests the sufficiency of the evidence to support the allegations of the complaint, those allegations still serve to frame – and limit – the issues"), *aff'd*, No. 10-15989, 2012 WL 345894 (9th Cir. Feb. 3, 2012).  "By framing the dispute, the

---

[1] In its motion, Hotfile makes various assertions about its pre-complaint conduct that are unsupported and mischaracterize the evidence, but which are not material to Hotfile's motion on its post-complaint conduct.  *E.g.*, HF Mot. at 3-8.  As relevant, plaintiffs will address Hotfile's assertions in plaintiffs' motion for summary judgment.

3

pleadings affect the availability of summary judgment." 11 James Wm. Moore et al., Moore's Federal Practices § 56.05[1][a] (3d ed. Supp. 2011). Therefore, Hotfile cannot seek summary judgment on issues related to its post-complaint conduct, as a party "is not entitled to summary judgment on claims that are not part of th[e] dispute." *CIVIX-DDI, L.L.C. v. Cellco P'ship*, 387 F. Supp. 2d 869, 881 (N.D. Ill. 2005).

Plaintiffs sued Hotfile based on its system and business model as they existed pre-complaint. The complaint does not address whether Hotfile is or would be liable based on the system and business model that Hotfile claims to have implemented post-litigation, and which apparently continues to change. Those alleged post-complaint changes simply present a different set of issues than those raised in the pleadings.[2] Thus, for instance:

1.      Hotfile claims to have made recent – and significant – changes to its "repeat infringer" practices even beyond the "three strikes" policy Hotfile claims to have adopted on February 18, 2011. Hotfile now claims that a year later, in February ***2012***, it eliminated its website Affiliate program altogether (presumably so it can argue that it no longer has an obligation to terminate repeat infringing Affiliate websites). HF SUF 28. Hotfile also claims to have "eliminated the ability of [unregistered] users to anonymously upload files." *Id*. It also claims to have instituted some form of escalating punishment pursuant to which a first time offender must attend an online "copyright school." *Id*. Hotfile asserts these as "material facts" that support its motion. *Id*. Yet, none of these alleged new policies was in place in February 2011. Even accepting Hotfile at its word, none existed until a year later, in February 2012. *Id*. None was raised by the pleadings or contemplated in the complaint. None was subject to discovery – and, indeed, each of these changes was allegedly made well after discovery closed.

2.      Hotfile further claims that in February ***2012*** it revamped the rewards system for its uploader Affiliate Program. According to Hotfile, instead of paying uploaders based on how many times their files are downloaded, now Hotfile "counts credits only based on premium

---

[2] Hotfile's "voluntary" reforms within the past few weeks have nothing to do with a desire to mitigate copyright infringement. They are no doubt a reaction to the Megaupload indictment. In recent weeks, many download hubs similar to Megaupload and Hotfile have shut down entirely, stopped allowing downloads by anyone other than the account holder, or otherwise tried to distance themselves from Megaupload to avoid criminal prosecution. Yeh Ex. 145 (collecting media reports). Hotfile is no different.

conversions (not download counts)."  HF SUF 28.  Facially, this revised Affiliate program still encourages users to upload "popular" content.  Just like the old rewards program, the new program incentivizes Affiliates to upload the most popular content so as to attract as many users as possible to Hotfile, since more users mean more conversions to premium accounts. Regardless, this allegedly new version of the Affiliate Program, which Hotfile cites as a material fact supporting its motion, *id.*, was not raised in the pleadings or contemplated in the complaint, and was not subject to discovery.  By Hotfile's account, it was adopted only a few weeks ago.

3.      Hotfile also now claims to have implemented Vobile digital fingerprinting technology as the basis of a copyright filter to prevent uploads of infringing files.  However, according to Hotfile, it did not incorporate Vobile's vCloud9 until February **2012**, after the close of discovery, following the limited adoption of another Vobile product in late summer 2011.  HF SUF 25, 27.  Plaintiffs have not had any ability to discover how, or even whether, Hotfile has implemented its alleged new copyright filter.  Moreover, ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████Hotfile easily could ensure that substantial numbers of infringing files bypass the filter or otherwise "leak" through – all while touting, as it does here, that it has adopted sophisticated copyright filtering.  Without discovery, the Court and plaintiffs have no way to evaluate Hotfile's untested claims.[3]

In the patent context, where this situation arises more frequently, courts routinely reject defendants' efforts to seek summary judgment on post-complaint modifications to an allegedly infringing device.  *See, e.g.*, *Eagle Comtronics, Inc. v. John Mezzalingua Assocs., Inc.*, 198 F.R.D. 351 (N.D.N.Y. 2000) (summary judgment on whether product re-designed after

---

[3] Hotfile's current DMCA motion is reminiscent of the DMCA motion that Hotfile repeatedly sought leave to bring at the outset of the case, before any discovery.  The Court properly rejected Hotfile's earlier attempts to present its DMCA defense on an undeveloped and sanitized record.  And, indeed, discovery has demonstrated the unreliability of Hotfile's untested assertions.  For example, in Hotfile's first substantive filing in this case, before any discovery, Titov filed a sworn declaration attesting that "Hotfile terminates the accounts of users who have repeatedly uploaded files that are or are asserted to be protected by copyright."  Yeh Ex. 9 (Feb. 27, 2011 Titov Decl.) ¶ 13.  Only through arduous discovery did the true – and very different – facts come to light.  Pls. Mot. at 10-12; PSUF 2-5.  There is no reason to believe that Hotfile's current claims that it has "reformed" its practices post-complaint (and post-discovery) are any different.

complaint was infringing denied as improper advisory opinion); *DF&R Corp. v. American Int'l Pacific Industries Corp.*, 830 F. Supp. 500, 502 (D. Minn. 1993) ( "a declaration that [defendant's] proposed alternative design . . . does not infringe" rejected as impermissible advisory opinion); *see also CIVIX-DDI*, 387 F. Supp. 2d at 881 (rejecting defendant's attempt to move for summary judgment of noninfringement for non-asserted patent infringement claims); *Zimmer Tech., Inc. v. Howmedica Osteonics Corp.*, 476 F. Supp. 2d 1024, 1037 (N.D. Ind. 2007) (denying plaintiff's summary judgment motion because defendant "never asserted those invalidity arguments" and such a ruling would be "an improper advisory opinion").

In *Eagle Comtronics*, for example, the defendant sought summary judgment on whether a product redesigned after the complaint was infringing.  In denying the motion, the Court observed that:

> [b]ecause defendant redesigned its [product] after the institution of this action, the amended complaint does not, nor could it, challenge the design of the new [product].  For this reason, the question of whether the redesigned filter infringes upon the . . . patent has not been placed before this court, and so there is no actual case or controversy regarding this specific filter.  Absent th[is] essential requirement, defendant's motion for partial summary judgment is actually a request for an advisory opinion.

*Eagle Comtronics*, 198 F.R.D. at 354.

The advisory opinion Hotfile seeks is no different from the one sought by the *Eagle Comtronics* defendant.  At best, Hotfile's arguments about post-complaint conduct are directed at the scope of injunctive relief, and are premature.  For the same reasons as in *Eagle Comtronics* and the cases cited above, Hotfile's motion should be denied.

## II.     HOTFILE CANNOT SEEK PARTIAL SUMMARY JUDGMENT BY SPLITTING UP PLAINTIFFS' CLAIMS TEMPORALLY.

Hotfile's motion should be rejected for an independent reason:  Hotfile has not brought a proper motion under Rule 56.  Courts have squarely rejected motions for partial summary judgment under Rule 56(a) that merely seek piecemeal adjudication of specific facts.  But that is precisely what Hotfile is doing here.  Hotfile seeks a ruling on liability covering a period of one year – a year in which Hotfile admits many material facts changed even from the beginning of the year (February 2011) to the end of the year (February 2012), with most changes having occurred within just the past few weeks.  *See supra* 4-5; HF SUF 21-23, 25-28.  Hotfile's attempt to "carve up" plaintiffs' claims to seek piecemeal adjudication in this manner fundamentally misuses the Rule 56 summary judgment procedures.

Courts permit partial summary judgment motions on entire elements or issues of a claim under Rule 56(a). *See* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2736 (3d ed. 1998) (court may consider issue of liability separately on partial summary judgment). However, courts reject summary judgment motions seeking piecemeal consideration of facts that underlie a claim as inefficient and contrary to the purpose of Rule 56. *See SEC v. Liberty Capital Group, Inc.*, 75 F. Supp. 2d 1160, 1164 (W.D. Wash. 1999) (denying motion based on "piecemeal division" of facts); *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 404 (E.D.N.Y. 2011) (Rule 56(a) "does not permit elimination of particular facts from the jury's consideration").

The amendments to Rule 56 in December 2010, while clarifying the availability of partial summary judgment, do not begin to sanction Hotfile's carving up of issues by fact and time: "Although [the amended] Rule 56 allows a party to seek summary judgment on part of a claim, the reference to 'part' is best understood as relating to either the entirety of liability, or damages, or at least a discrete element of damages." *Rasmussen*, 766 F. Supp. 2d at 404. Thus, courts "do[] not permit the piecemealing of a single claim . . . ***simply by dividing it into different time periods***." *Newman-Green, Inc. v. Alfonzo-Larrain R.*, 612 F. Supp. 1434, 1439 (N.D. Ill. 1985) (emphasis added).

Hotfile does not seek summary judgment on an entire element or issue of plaintiffs' claim or its defense, but rather a ruling as to whether it is entitled to DMCA safe harbor for a period of a single year, and based on a variety of factual changes occurring at different times over the course of that single year. Hotfile apparently would have the Court assess Hotfile's compliance with each DMCA requirement as the material facts changed over time: *e.g.*, Hotfile's initial implementation of a "three-strikes" policy and belated termination of some repeat infringing users starting in February 2011, HF SUF 21-23, Titov Ex. 35 at 293; Hotfile's preliminary experimentation with some Vobile technology in the summer of 2011, HF SUF 25; followed by Hotfile's claimed fuller implementation of filtering a half a year later, HF SUF 26-27; Hotfile's claimed further modifications to its "repeat infringer" policy in February 2012, HF SUF 28; and Hotfile's claimed overhaul of its Affiliate Programs in February 2012, HF SUF 28. Hotfile, moreover, asks the Court to adjudicate the impact of these changes in a vacuum, without considering Hotfile's pre-complaint inducement of infringement, and without the benefit of a discovery record to test Hotfile's bare assertions.

Hotfile's motion is procedurally improper and should be denied.

### III.   HOTFILE IS LIABLE FOR THE POST-COMPLAINT INFRINGEMENTS IT INDUCED BY ITS PRE-COMPLAINT CONDUCT.

Even if Hotfile's motion were procedurally proper (and it is not), Hotfile's motion should be denied because Hotfile remains liable for infringements it induced by its conduct prior to February 18, 2011, even if the acts of direct infringement occurred after the complaint was filed. As explained in plaintiffs' motion for summary judgment, in the period prior to the complaint, defendants induced a massive amount of infringement by their users.  Pls. Mot. at 29-32; PSUF 16.  Defendants spent two years building Hotfile as a destination to download infringing content, and continued doing so even after plaintiffs brought suit.  Hotfile cannot claim DMCA safe harbor for its inducement of those post-complaint infringements, even if, as it claims, it changed some of its inducing practices.

Courts that have considered this issue have made clear that past acts can induce infringement going forward.  As the district court held on remand in *Grokster*:

> For a party to be liable for inducement, distribution may begin prior to any promotion of infringement, distribution and promotion can occur at the same time, and most critically, *distribution can follow past promotion*.  This highlighted portion of the above sentence is crucial.  As a matter of common sense, a successful inducer will sometimes have no need to repeat the infringing message *ad infinitum*.  This is especially likely to be the case where the product in question is overwhelmingly used for infringing purposes, and requires little or no specialized training to operate.  At a certain point, the inducer can simply continue to distribute the product without any additional active encouragement, recognizing that the marketplace will respond in turn.  Thus, once the market has internalized the inducer's promotion of infringement, the resulting infringements should be attributable to that defendant even though he/she no longer chooses to actively promote that message.

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 518 F. Supp. 2d 1197, 1233-34 (C.D. Cal. 2007) (emphasis in original); *see also Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578 SVW (JCx), 2010 U.S. Dist. LEXIS 91169, at *11 (C.D. Cal. May 20, 2010) ( "Defendants operated their websites as popular destinations for copyright infringement and etched their niche in the market for infringement" and therefore future infringements would follow past acts of inducement); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1362-63 (Fed. Cir. 2006).

In this case, defendants operated Hotfile as a popular destination for copyright infringement and "etched [their] niche in the market for infringement." *Fung*, 2010 U.S. Dist. LEXIS 91169, at *11. For instance:

o   Hotfile actively encouraged its users to upload and promote copyrighted content, paying its Affiliates greater amounts based on the number of downloads of a file. Pls. Mot. at 5-7; PSUF 16(a)(ii)-(iv). Hotfile now speaks of users providing "access to their files to co-workers, friends and family." HF Mot. at 3. But in truth Hotfile's business is based on, and Hotfile actively promoted, the mass distribution of files – *i.e.*, downloads by the thousands. PSUF 16(a)(iii) & Yeh Ex. 60 at 1.

o   Hotfile was used overwhelmingly for infringement – over 90% of downloads from Hotfile were of infringing content. PSUF 10(a)(i).

o   Hotfile did not terminate even the most blatant repeat copyright infringers, though ████ ████████████████████████████████████   ██████████████████ of Hotfile users had ten, 25 or even 100 or more infringement "strikes" from copyright owner notices, and yet Hotfile permitted them to continue infringing. Pls. Mot. at 11-12; PSUF 5(a).[4]

o   Hotfile repeatedly provided technical assistance to users seeking to download copyrighted content. Pls. Mot. at 13; PSUF 9(c).

o   Hotfile had full knowledge of the infringement permeating its site but permitted it to continue. Pls. Mot. at 13-15; PSUF 9 & 10. Indeed, Hotfile acknowledged ████████ ███████████████████████████████████████

_____

[4] Hotfile claims to have learned "for the first time" from reading the complaint in 2011 that its failure to implement a repeat infringer policy was problematic. HF Mot. at 8. That is simply disingenuous. In 2009, another copyright owner, Liberty Media, sued Hotfile and argued strenuously that Hotfile was not properly terminating repeat infringers. *See* Yeh Ex. 146 at 23-24. Hotfile did nothing to "reform" its practices then. Moreover, if Hotfile did not fully understand that it needed a meaningful repeat infringer policy ███████████████████ ██████████████████████████████████ ██████████████ ███████████████

- o Hotfile built its business on the availability of infringing content to attract users so that it could try to sell those users "premium" accounts. That is the only way Hotfile makes money. PSUF 16(e) & 20.[5]

- o Piracy was so fundamental to Hotfile's business model that Hotfile did not even investigate using readily available "digital fingerprinting" technology to mitigate the infringement. PSUF 16(j). This technology was available and widely used from the day Hotfile launched. PSUF 16(j)(i); Foster Decl. ¶¶16-18; Yeh Ex. 130 (Wang dep.) at 15:17-25; Wold Decl. ¶¶ 26-27.

These incontrovertible facts are set forth in greater detail in plaintiffs' motion for summary judgment (Docket #322), which is incorporated herein. They establish that Hotfile created a haven for infringing conduct. By the time plaintiffs filed the complaint, Hotfile was one of the top 100 websites in the world; it had attracted a massive user base of infringing uploaders and millions of users to download that infringing content. PSUF 10(a); Yeh Ex. 85. Defendants' change in their repeat infringer policy in February 2011 may have removed some infringing uploaders, but it could not wholesale change the message that Hotfile was a destination for infringing content.[6] As in *Grokster*, the overwhelming use of the site was infringing. *Supra* 9; *Grokster*, 518 F. Supp. 2d at 1234. As in *Grokster*, Hotfile "remains

---

[5] Hotfile presents a statistic to the effect that its users convert to "premium" subscriptions at greater "rates" when downloading noninfringing files than infringing files. HF Mot. at 16. Hotfile cites this to suggest that it had no incentive to encourage infringement. Even if Hotfile's statistic is correct, its conclusion does not follow. Infringing files represent over 90% of what users download from Hotfile. PSUF 10(a)(i). The *number* of infringing files so dwarfs the number of noninfringing files that Hotfile of course would have a powerful incentive to encourage users to upload infringing files even if the *rate* of conversion was higher for noninfringing files. Hotfile could not sustain a business with noninfringing files. For proof, the Court need look no further ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████

[6] There is also ample evidence that, even post-complaint, it was business as usual for Hotfile. For example, Hotfile continued to pay a website Affiliate ████████████████████████████ ██████████████████████████████████ Hotfile continued to provide technical assistance to users seeking blatantly copyrighted content. Yeh Ex. 28 at 16 (*e.g.*, in May 2011, Hotfile provided technical assistance to a users seeking to download *The Howard Stern Show*). And, Hotfile user communications continued to identify countless specific infringing files. Yeh Ex. 144.

inexorably linked to its historical efforts to promote infringement.  The bell simply cannot be unrung."  518 F Supp. 2d at 1235.  And, as in *Grokster*, "[t]here is no difference between these [post-complaint] infringements and those that are consummated while the defendant is still engaging in the active promotion of infringement."  *Id.* at 1234.

As plaintiffs explained in their motion for summary judgment, Hotfile is not entitled to DMCA safe harbor for infringements that it induced under the *Grokster* standard.  Pls. Mot. at 27-29.  The DMCA's safe harbor protections are strictly limited to "innocent" service providers who have done what they reasonable can to prevent copyright infringement on their systems. *ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 625 (4th Cir. 2001); *In re Aimster Copyright Litigation,* 334 F.3d 643, 655 (7th Cir. 2003).  "[I]nducement liability and the [DMCA] safe harbors are inherently contradictory."  *Columbia Pictures Industries, Inc. v. Fung*, No. CV 06-5578 SVW, 2009 WL 6355911, at *18 (C.D. Cal. Dec. 21, 2009); *see also* Pls. Mot. at 27-29.

As a result, even if Hotfile's motion were procedurally proper – which it is not – the Court could not grant Hotfile sweeping immunity for infringements after February 18, 2011. Because Hotfile continued to attract users to download infringing content even post-complaint, based on its purposeful conduct pre-complaint, Hotfile is liable for later infringement tied to its past inducing activities.

## CONCLUSION

Hotfile's motion for partial summary judgment should be denied.

11

Dated: March 7, 2012                    Respectfully submitted,

                                        By: _____

                                             Karen L. Stetson
                                             GRAY-ROBINSON, P.A.
                                             1221 Brickell Avenue
                                             16th Floor
                                             Miami, FL  33131
                                             Telephone: (305) 416-6880
                                             Facsimile:  (305) 416-6887

MOTION PICTURE ASSOCIATION             JENNER & BLOCK LLP
    OF AMERICA, INC.                    Steven B. Fabrizio (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)      Duane C. Pozza (*Pro Hac Vice*)
15301 Ventura Blvd.                     Luke C. Platzer (*Pro Hac Vice*)
Building E                              1099 New York Ave., N.W.
Sherman Oaks, CA 91403                  Suite 900
Phone:  (818) 995-6600                  Washington, DC 20001
Fax:  (818) 285-4403                    Facsimile:  (202) 639-6066

                                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th Day of March, 2012, I served the following documents on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

**Plaintiffs' Memorandum of Law in Opposition to Defendant Hotfile Corporation's Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor**

By: _____
       Karen L. Stetson

**SERVICE LIST**
**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and
Anton Titov*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

_____/

**DECLARATION OF JENNIFER V. YEH IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT ANTON TITOV'S MOTION FOR SUMMARY
JUDGMENT AND TO DEFENDANT HOTFILE CORP.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT BASED ON THE DIGITAL MILLENNIUM COPYRIGHT
ACT SAFE HARBOR**

**[CONFIDENTIAL]**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

I, Jennifer V. Yeh, declare as follows:

1.     I am an attorney at the law firm of Jenner & Block LLP, and counsel to the plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment Inc.  The statements made in this declaration are based on my personal knowledge including on information provided to me by colleagues or other personnel working under my supervision on this case.  If called to testify, I would testify as follows:

2.     Attached hereto as Exhibit 120 is a true and correct copy of excerpts of the deposition of ███████████ taken on December 8, 2011 in the above-captioned case.

3.     Attached hereto as Exhibit 121 is a true and correct copy of excerpts of the deposition of ███████████ taken on December 7, 2011 in the above-captioned case.

4.     Attached hereto as Exhibit 122 is a true and correct copy of excerpts of the deposition of Lance Griffin, taken on December 22, 2011 in the above-captioned case.

5.     Attached hereto as Exhibit 123 is a true and correct copy of excerpts of the deposition of Braxton Perkins, taken on December 16, 2011 in the above-captioned case.

6.     Attached hereto as Exhibit 124 is a true and correct copy of excerpts of the deposition of Vicki Solmon, taken on December 9, 2011 in the above-captioned case.

7.     Attached hereto as Exhibit 125 is a true and correct copy of excerpts of the deposition of Betsy Zedek, taken on December 13, 2011 in the above-captioned case.

8.     Attached hereto as Exhibit 126 is a true and correct copy of excerpts of the deposition of Michael Bentkover, taken on December 13, 2011 in the above-captioned case.

9.     Attached hereto as Exhibit 127 is a true and correct copy of excerpts of the deposition of David Kaplan, taken on December 13, 2011 in the above-captioned case.

10.    Attached hereto as Exhibit 128 is a true and correct copy of excerpts of the deposition of defendant Anton Titov, in his personal capacity and as Fed. R. Civ. P. 30(b)(6) representative of defendant Hotfile Corp., taken from Dec. 5 to Dec. 8, 2011 in the above-captioned case.

11.    Attached hereto as Exhibit 129 is a true and correct copy of excerpts of the ESI deposition of defendant Anton Titov, as Fed. R. Civ. P. 30(b)(6) representative of defendant Hotfile Corp., taken on Nov. 17, 2011 in the above-captioned case.

12.    Attached hereto as Exhibit 130 is a true and correct copy of excerpts of the deposition of Yangbin Wang, taken on December 22, 2011 in the above-captioned case.

13.     Attached hereto as Exhibit 131 is a true and correct copy of an email from Roderick Thompson to Steven Fabrizio, dated December 31, 2011.

14.     Attached hereto as Exhibit 132 is a true and correct copy of a document produced by defendants bearing bates label HF02855193.

15.     Attached hereto as Exhibit 133 is the verification signature page of Defendants' Supplemental Reponses to Interrogatories Nos. 6 and 9, served in the above-captioned case on September 12, 2011.

16.     Attached hereto as Exhibit 134 is a true and correct copy of a document produced by defendants bearing bates label HF02855182.

17.     Attached hereto as Exhibit 135 are true and correct copies of Exhibits 5-6 to the deposition of ███████████ taken on December 7, 2011 in the above-captioned case.

18.     Attached hereto as Exhibit 136 are true and correct copies of Exhibits 7-8 to the deposition of ███████████ taken on December 7, 2011 in the above-captioned case.

19.     Attached hereto as Exhibit 137 is a true and correct copy of excerpts of the Transcript of Status Conference Hearing Before the Honorable William C. Turnoff, United States Magistrate Judge that took place in the above-captioned case on January 13, 2012.

20.     Attached hereto as Exhibit 138 is a true and correct copy of a document produced by defendants bearing bates label HF02868393.

21.     Attached hereto as Exhibit 139 is a true and correct copy of the Joint Motion and Memorandum of Law of the Parties For Voluntary Dismissal of Second and Third Counts of Hotfile's First Amended Counterclaim and For Amendment of First Count, filed in the above-captioned case on September 22, 2011 (Dkt. # 151).

22.     Attached hereto as Exhibit 140 is Plaintiffs' Second Supplemental Response to Defendant Hotfile Corp.'s Interrogatory No. 1, served in the above-captioned case on October 3, 2011, with the exhibits omitted.

23.     Attached hereto as Exhibit 141 are true and correct copies of excerpts of takedown notices to Hotfile produced by Plaintiffs in the above-captioned case bearing bates labels as indicated on the documents.

24.     Attached hereto as Exhibit 142 are true and correct copies of documents produced by Defendants in the above-captioned case bearing bates labels as indicated on the documents.

25.     Attached hereto as Exhibit 143 is a true and correct copy of Exhibit 158 to the deposition of defendant Anton Titov, in his personal capacity and as Fed. R. Civ. P. 30(b)(6) representative of defendant Hotfile Corp., taken from Dec. 5 to Dec. 8, 2011 in the above-captioned case.

26.     Pursuant to Rule 1006 of the Federal Rules of Evidence, attached hereto as Exhibit 144 is a chart summarizing user communications sent to Hotfile after February 18, 2011, where the "lastdl" field in the user communication matches the title of a copyrighted work owned by plaintiffs.  Persons under my supervision reviewed user communications produced by Defendants to identify communications where the "lastdl" entry corresponded with a copyrighted work owned by plaintiffs. The bates number of the user communication produced by defendants, the URL listed in the "lastdl" field, the date of the communication, and the corresponding title of plaintiffs' copyrighted work has been summarized in Exhibit 144.

27.     Attached hereto as Exhibit 145 are true and correct copies of news articles regarding the reaction of download hubs to the Megaupload indictment, printed on March 5, 2012 by personnel acting at my direction from the indicated URLs.

28.     Attached hereto as Exhibit 146 is a true and correct copy of the Corrected Reply Brief to Opposition to Motion for Preliminary Injunction, filed by Liberty Media in *Liberty Media Holdings, L.L.C. v. Hotfile.com, et al.*, No. 3:09-CV-2396-D (N.D. Tex.), on February 10, 2010 (Dkt. # 47).

29.     Attached hereto as Exhibit 147 is a true and correct copy of a document produced by plaintiff Disney Enterprises, Inc. bearing bates label DISNEY000288.

30.     Attached hereto as Exhibit 148 is a true and correct copy of a document produced by plaintiff Disney Enterprises, Inc. bearing bates label DISNEY000234.

31.     Attached hereto as Exhibit 149 is a true and correct copy of a document produced by plaintiff Twentieth Century Fox Film Corporation bearing bates label FOX003228.

32.     Attached hereto as Exhibit 150 is a true and correct copy of a document produced by plaintiff Warner Bros. Entertainment Inc. bearing bates label WARNER000001.

33.     The files identified in Plaintiffs' Supplemental Response to Interrogatory No. 1 (attached as Yeh Ex. 119 to my previous declaration) do not purport to be all plaintiffs' works that have been infringed through the Hotfile Website.  Upon receiving the Courts' Order on Defendants' Motion to Compel (Dkt. # 147), plaintiffs had  a very limited period of time to

analyze Hotfile's data – which had only recently been produced – to identify instances of plaintiffs' copyrighted works on the Hotfile Website. Moreover, plaintiffs did not have access to all of Hotfile's content files for review at that time. Thus, the files identified in Plaintiffs' Supplemental Response to Interrogatory No. 1 represent only a portion of the files containing plaintiffs' works that were on Hotfile. Additionally, plaintiffs' interrogatory response only identifies copyrighted works of which the rights are held by one of the plaintiff companies. It does not include copyrighted works owned by plaintiffs' affiliates that are being infringed through the Hotfile Website.

34.    I understand from Hotfile's Statement of Undisputed Material Facts in Support of its Motion and Memorandum of Law for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor ("HF SUF") that Hotfile claims to have made certain changes to its system in February 2012, including allegedly adopting the Vobile vCloud9 technology and modifying its Affiliate and repeat infringer policy. *See* HF SUF 27, 28. Fact discovery in this case closed on December 23, 2011, and plaintiffs have not had the opportunity to pursue discovery on any of these changes purportedly made to Hotfile's system in February 2012.


I declare under penalty of perjury that the foregoing is true and correct.



Executed on March 7, 2012.



Jennifer V. Yeh

4