UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

**WARNER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF WARNER'S
MOTION FOR SUMMARY JUDGMENT**

**[PUBLIC REDACTED VERSION]**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

CITATION LEGEND......................................................................................................... iv

ARGUMENT .........................................................................................................................1

I.   HOTFILE MISSTATES THE LEGAL STANDARD. .............................................1

    A.   Hotfile – Not Warner – Bears the Burden of Proof. .................................1

    B.   512(f) Requires Actual, Subjective Knowledge. .......................................2

    C.   512(f) Does Not Require A Manual Review Process, and There Is No Evidence that A Human Review Process Would be More Accurate........................3

II.  NO EVIDENCE SUPPORTS HOTFILE'S CLAIM THAT WARNER HAD "KNOWLEDGE" OF SPECIFIC ERRORS........................................................5

    A.   No Evidence Supports Hotfile's Claim that Warner Knowingly Deleted JDownloader. .......................................................................................5

    B.   Hotfile's Assertion of a ▇ False Positive Rate Has No Factual Basis. ................6

    C.   Hotfile's Remaining "Evidence" That Some Errors Might Have Been Preventable Does Not Support a Finding of Knowing Misrepresentation. .............7

III. NO EVIDENCE SUPPORTS HOTFILE'S DAMAGES CLAIM. .....................8

CONCLUSION......................................................................................................................10

## TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ............................................... 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 10

*Arista Records, Inc. v. MP3Board, Inc.*, 00 Civ. 4660 (SHS), 2002 U.S. Dist. LEXIS 16165 (S.D.N.Y. Aug. 28, 2002) ................................................................................................. 2

*Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011) .......................... 9

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009) ........................... 9

*Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452 (S.D.N.Y. 2007) ........................................... 1, 2

*BMG Music v. Gonzalez,* 430 F. 3d 888 (7th Cir. 2005) ................................................................. 4

*Cabell v. Zimmerman*, 09 Civ. 10134 (CM), 2010 U.S. Dist. LEXIS 25486 (S.D.N.Y. Mar. 12, 2010) .............................................................................................................................. 2

*Columbia Pictures Industries, Inc. v. Fung*, No. CV 06-5578 SVW, 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009) ............................................................................................................. 9

*Dudnikov v. MGA Entertainment, Inc.*, 410 F. Supp. 2d 1010 (D. Colo. 2005) ..................... 2-3, 3

*Evers v. General Motors Corp.*, 770 F.2d 984 (11th Cir. 1985) .................................................... 9

*Floyd v. McNeil*, Case No. 4:10cv289 – RH/WCS, 2011 U.S. Dist. LEXIS 150619 (N.D. Fla. Dec. 5, 2011) .................................................................................................................... 10

*Ground Zero Museum Workshop v. Wilson*, No. DKC 09-3288, 2011 U.S. Dist. LEXIS 94666 (D. Md. Aug. 24, 2011) ....................................................................................................... 3

*Lenz v. Universal Music Corp.*, No. C 07-3783JFRS, 2008 WL 4790669 (N.D. Cal. Oct. 28, 2008) ........................................................................................................................... 4

*Lenz v. Universal Music Corp.*, No. C 07-3783 JF, 2010 WL 702466 (N.D. Cal. Feb 25, 2010) ............................................................................................................................... 8

*Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150 (N.D. Cal. 2008) ....................................... 3

*Martinez v. Weyerhaeuser Mtg. Co.,* 959 F. Supp. 1511 (S.D. Fla.1996) ...................................... 9

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ................................ 6

*Rossi v. Motion Picture Ass'n of America, Inc.*, 391 F.3d 1000 (9th Cir. 2004) .................... 2, 3, 4

*Rossi v. Motion Picture Ass'n of America, Inc.*, Civ. No. 02-00239 BMK, 2003 U.S. Dist. LEXIS 12864 (D. Haw. Apr. 29, 2003) .................................................................................. 4

*Third Educational Group, Inc. v. Phelps*, 675 F. Supp. 2d 916 (E.D. Wis. 2010) ...................... 1, 2

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107 (11th Cir. 2008) .................................................................................................. 1

*United States v. City of Miami*, 115 F.3d 870 (11th Cir. 1997) ...................................................... 9

*UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055 (C.D. Cal. 2008), *judgment aff'd*, 628 F.3d 1175 (9th Cir. 2011) ........................................................................................ 2

*Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004) .................................................. 5

**STATUTES**

17 U.S.C. § 106 .............................................................................................................................. 9

17 U.S.C. § 512(f) .......................................................................................................................... 8

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. § 26(g)(1) .......................................................................................................... 5

Fed. R. Evid. 802 ............................................................................................................................ 9

ESI Symposium, The Sedona Conference, *The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery*, 8 Sedona Conf. J. 189 (2007) .................................................................................. 6

**CITATION LEGEND**

For the purposes of Warner Bros. Entertainment Inc.'s Reply Memorandum of Law in support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment, the following abbreviations shall be used:

1.  "Counterclaim" shall refer to the Second Amended Answer, Affirmative Defenses, and Counterclaim of Defendant Hotfile Corporation to Plaintiffs' Complaint dated October 27, 2011 (Dkt. #161).

2.  "Foster Reply Decl." shall refer to the declaration of Dr. Ian Foster, Director of the Computation Institute at Argonne National Laboratory and the University of Chicago, dated March 11, 2012, filed herewith.

3.  "Kaplan Decl." shall refer to the declaration of David Kaplan, the Senior Vice President, Intellectual Property Counsel, Worldwide Antipiracy Operations of Plaintiff and Counterdefendant Warner Bros. Entertainment Inc., ("Warner"), dated February 8, 2012, filed on February 10, 2012 in support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment (available publicly at Dkt. #308).

4.  "WSUF" shall refer to specific paragraph numbers of uncontroverted facts in Warner's Statement of Uncontroverted Facts, filed on February 10, 2012 in support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment (available publicly at Dkt. #302).

5.  "HCSUF" shall refer to specific paragraph numbers of uncontroverted facts in Hotfile's Counterstatement of Facts, filed on February 27, 2012 in opposition to Warner Bros. Entertainment Inc.'s Motion for Summary Judgment.

6.  "Yeh Decl." shall refer to the Declaration of Jennifer V. Yeh in Support of Warner Bros. Entertainment's Motion for Summary Judgment, dated February 9, 2012, filed on February 10, 2012 in support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment (available publicly at Dkt. #301-9) .

7.  "Yeh Ex. __," shall refer to exhibits attached to the Yeh Declaration, as well as the Reply Declaration of Jennifer V. Yeh in support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment, filed herewith.  For the convenience of the Court, the exhibits attached to the Yeh Declarations have been consecutively numbered, with Exhibits attached to the Yeh Declaration filed today continuing from the numbering in the previous set of exhibits.

8. "Zebrak Decl." shall refer to the declaration of Scott Zebrak, dated February 9, 2012, filed on February 10, 2012 in support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment (available publicly at Dkt. #301-1).

9. "Zebrak Ex. __," shall refer to exhibits attached to the Zebrak Declaration, and, if appropriate, pinpoint citations to the page number(s), and paragraph or line numbers, internal to the cited document.

Hotfile bears the burden of establishing that any errors made in sending takedown notices were made "knowingly." To "[k]nowingly … misrepresent[]" means to misrepresent with actual knowledge of falsity. Hotfile has no evidence from which a reasonable jury could find that Warner knowingly misrepresented anything. In fact, the undisputed evidence shows that any errors in the notices sent to Hotfile were unintentional. Lacking evidence, Hotfile misconstrues the guiding cases and relies on facts Warner learned only while investigating Hotfile's counterclaim – *i.e.*, months *after* the notices were sent – as though they were facts Warner knew when it sent the notices. In the end, Hotfile can only proffer evidence that a few mistakes (according to Hotfile) should have been preventable. That is, at most, a claim of negligence, not the "knowing misrepresentation" required by Section 512(f).

Hotfile similarly proffers no evidence that it was *actually* harmed, an essential element of its claim. Most of the removed files were infringing and, in virtually all cases, the relevant Hotfile user was either never terminated, terminated for different reasons, or should have been terminated anyway. Hotfile does not present any evidence to rebut that.

## ARGUMENT

### I. HOTFILE MISSTATES THE LEGAL STANDARD.

Hotfile's entire opposition rests on the argument that Warner must "show that it had a sufficient basis" to form a good faith belief in the accuracy of its DMCA notices. Opp. at 7. But that is the wrong legal standard: first, Hotfile, not Warner, bears the burden of proof; second, Section 512(f) liability requires actual, subjective knowledge.

### A. Hotfile – Not Warner – Bears the Burden of Proof.

"The touchstone for determining the burden of proof under a statutory cause of action is the statute itself," and "[w]hen a statute is silent as to who bears the burden of proof, we resort to 'the ordinary default rule that plaintiffs bear the risk of failing to prove their claims.'" *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1110 (11th Cir. 2008) (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49. 56 (2005)).

That of course applies to § 512(f) claims as well. *Third Educ. Grp., Inc. v. Phelps*, 675 F. Supp. 2d 916, 927 (E.D. Wis. 2010) (dismissing 512(f) claim because plaintiff failed to present evidence of knowing misrepresentation); *Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452, 468-69 (S.D.N.Y. 2007) (granting summary judgment because "[d]efendants have not submitted any evidence that plaintiffs were aware or understood that they were misrepresenting the fact that

defendants' website was infringing"); *Arista Records, Inc. v. MP3Board, Inc.*, 00 Civ. 4660 (SHS), 2002 U.S. Dist. LEXIS 16165, at *45 (S.D.N.Y. Aug. 28, 2002) (summary judgment for copyright owner under 512(f) because "there is no evidence that any misrepresentation by the RIAA was made knowingly").

Thus, Hotfile's assertion that Warner must affirmatively prove for each notice a "sufficient basis" for its good faith belief, Opp. at 10, has it backwards. Hotfile must "demonstrat[e] that [Warner] had some actual knowledge of the [alleged] misrepresentation." *Third Educ. Grp.*, 675 F. Supp. 2d at 927. Hotfile cannot meet that burden.

### B. 512(f) Requires Actual, Subjective Knowledge.

Section 512(f) imposes liability "only for knowing misrepresentations." *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004). As the Ninth Circuit has explained, §512(f) does not support liability when "an unknowing mistake is made, *even if the copyright owner acted unreasonably in making the mistake*. Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." *Id*. (internal citation omitted; emphasis added). The vast weight of legal authority is in accord. *See*, *e.g.*, *Cabell v. Zimmerman*, 09 Civ. 10134 (CM), 2010 U.S. Dist. LEXIS 25486, at *9-10 (S.D.N.Y. Mar. 12, 2010); *Third Educ. Grp.*, 675 F. Supp. 2d at 927; *UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055, 1065 (C.D. Cal. 2008), judgment aff'd, 628 F.3d 1175 (9th Cir. 2011); *Biosafe-One*, 524 F. Supp. 2d at 468-69; *Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005). Any other standard is precluded by the statutory text.

Hotfile's argument that liability attaches if Warner "did not have a sufficient basis to form a good faith belief that the files in Hotfile's counterclaim were infringing," Opp. at 8, misstates the law. In arguing that *Rossi* supports its position, Opp. at 7, Hotfile cites to a statement in the case's *procedural history* (recounting the district court's finding that MPAA had a sufficient basis for its good faith belief) and incorrectly describes it as the holding. *Rossi*, 391 F.3d at 1002-03. *Rossi* actually held the opposite, *rejecting* an objective standard that would have required a "sufficient basis" for good faith, and requiring instead a "demonstration of some *actual knowledge of misrepresentation* on the part of the copyright owner." *Id.* at 1005 (emphasis added). The court recognized that the subjective good faith belief standard is inconsistent with any inquiry into the "sufficiency" of the belief. *Id.* at 1004. Likewise, in *Dudnikov*, the court also rejected any inquiry into "the 'reasonableness' of [the copyright

2

holder's] belief." 410 F. Supp. 2d at 1013; *see also Rossi*, 391 F.3d at 1017-18 (plaintiff may not "attack [] the 'reasonableness' of MGA's good faith belief"). Putting the burden squarely on the § 512(f) plaintiff, *Dudnikov* granted summary judgment because plaintiff "ha[d] not made a showing that MGA knowingly and materially misrepresented that the fleece hat was infringing, as required to support an allegation under § 512(f)." *Dudnikov*, 410 F. Supp. 2d at 1018.[1]

Here, the unrebutted evidence shows that Warner limits its searching only to a  of pirate linking sites "devoted to infringing content"; reviews its regularly and carefully; tailors its ; and corrects any mistakes when it learns of them. *See* Kaplan Decl. ¶¶ 6, 8, 11-13, 14-16; Mot. at 4-7. Hotfile has failed to offer evidence demonstrating that Warner had actual, subjective knowledge that any of its takedown notices mistakenly identified an incorrect file; Hotfile has thus failed to meet its burden. *See Dudnikov*, 410 F. Supp. 2d at 1013.

### C. 512(f) Does Not Require A Manual Review Process, and There Is No Evidence that A Human Review Process Would be More Accurate.

The cases on which Hotfile relies do not, contrary to its characterizations, reject automated antipiracy systems. *Rossi* did not, as Hotfile claims, Opp. at 8, find human review necessary under § 512(f). The portions of *Rossi* that Hotfile quotes purporting to reject automated searches do not represent the court's own conclusions, but rather an argument presented by an amicus that the court did not consider. 391 F.3d at 1005.

Hotfile's argument based on *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150 (N.D. Cal. 2008), Opp. at 8, is also wrong. Hotfile fails to advise the Court that the *Lenz* court clarified its opinion on this very point. In denying interlocutory appeal, the *Lenz* court confirmed that:

> The Court did not hold that every takedown notice must be preceded by a full fair use investigation. *Id.* at 7 (citing *Rossi,* 391 F.3d at 1003-04). Rather, it recognized, as it has previously, that in a given case fair use may be so obvious that a copyright owner could not reasonably believe that actionable infringement was taking place. *See Online Policy Group v. Diebold, Inc.,* 337 F.Supp.2d 1195, 1204 (N.D.Cal.2004). In such a case, which is likely to be extremely rare, the policy objectives of the DMCA are served by requiring copyright owners at least to form a subjective good faith belief that the "particular use is not a fair use" before sending the takedown notice.

---

[1] *Ground Zero Museum Workshop v. Wilson*, No. DKC 09-3288, 2011 U.S. Dist. LEXIS 94666, at *60-61 (D. Md. Aug. 24, 2011), Opp. at 7 n.2, did not adopt Hotfile's "should have known" or "sufficient basis" standards. *Wilson*, in fact, dismissed the § 512(f) claim because the plaintiff could not prove injury, which is an element of the cause of action. *See infra* Part III.

3

*Lenz v. Universal Music Corp.*, No. C07-3783JFRS, 2008 WL 4790669, at *2 (N.D. Cal. Oct. 28, 2008). The particular "context of the facts alleged in *Lenz*'s complaint," according to the court, represented that "extremely rare" case in part because "obvious" fair uses were rife on YouTube. *Id*. Here, Warner only uses ▇▇▇▇▇ on pirate sites offering *full-length* motion pictures and television programs for mass public distribution. Kaplan Decl. ¶ 6. There is no colorable argument that such uses are ever a fair use. *See BMG Music v. Gonzalez,* 430 F. 3d 888, 889-91 (7th Cir. 2005) (downloading full-length entertainment content not fair use); *A&M Records, Inc. v. Napster*, 239 F.3d 1004, 1014-19 (9th Cir. 2001) (same). Here, Hotfile does not even claim (much less proffer evidence) that any of the counterclaim files was a fair use.

      Hotfile's standard would turn every mistaken DMCA notice into an actionable knowing misrepresentation because it is "known" in advance that any system will result in some errors. This is an argument for constructive knowledge and is incompatible with the § 512(f) statutory standard. *E.g.*, *Rossi*, 391 F.3d at 1005 (rejecting constructive knowledge standard).

      *As Rossi* recognizes, many methods can support a subjective good faith belief. In *Rossi*, the MPAA did not download files before sending a DMCA notice. *Rossi v. Motion Picture Ass'n of Am., Inc.*, Civ. No. 02-00239 BMK, 2003 U.S. Dist. LEXIS 12864, at *2-3 (D. Haw. Apr. 29, 2003). Rossi argued – as Hotfile does here – that "Defendants were not justified in sending…a notice, or at the very least there is a triable issue of fact regarding justification, because Defendants failed to conduct an investigation to determine whether Plaintiff's website actually infringed on any copyrights before sending…the notice." *Id*. at *8. The district court rejected this argument, noting that "the Court cannot find [] any provision in the DMCA which requires a copyright holder to conduct an investigation to establish actual infringement prior to sending a notice to an ISP." *Id*., at 8-9. The Ninth Circuit concurred. 391 F.3d at 1003-05.

      Notably, Hotfile offers no evidence that a fully manual or "human review" system would have produced fewer errors than Warner's system. And there is no suggestion that it would. Mot. at 2 (Hotfile acknowledges that "mistakes happen" even with fully manually systems). Hotfile's counterclaim proves the point. Hotfile's "human review" by teams of lawyers still resulted in Hotfile including among the counterclaim files works that are owned by Warner. Mot. at 1. That was just simple human error. ▇▇▇▇▇▇ many of the counterclaim files (the LeakID files) were in fact subject to a process calling ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇ and yet there were errors as a result of "human … mistakes." Kaplan Decl. ¶ 20.

4

Hotfile, without evidence, questions the LeakID process because some apparent mistakes were seemingly obvious. Opp. at 12-14. But that is why it is called "human error." Even responsible and diligent people make mistakes, particularly with high-volume repetitive tasks, such as the hundreds of thousands of notices Warner has had to send to Hotfile. There is simply no basis for the Court to find that *any* system of locating infringing links online would produce fewer errors than Warner's system – and Hotfile certainly does not provide any evidence to that effect.[2]

## II. NO EVIDENCE SUPPORTS HOTFILE'S CLAIM THAT WARNER HAD "KNOWLEDGE" OF SPECIFIC ERRORS.

### A. No Evidence Supports Hotfile's Claim that Warner Knowingly Deleted JDownloader.

Hotfile repeatedly asserts that Warner "knew" all along that JDownloader links were ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ but "took no steps to prevent the deletion of the JDownloader links on such posts." Opp. at 5-6, 12. The cited deposition testimony from Warner's representative, however, does not say that *at all*. Kaplan testified that it was Hotfile's counterclaim that brought to Warner's attention that, ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Warner *first learned of this* when investigating Hotfile's counterclaim in this case. *Id.* It did not have that information when sending the notices at issue. Indeed, when Warner learned, ▇▇▇▇▇▇▇▇▇▇▇▇ to prevent takedowns of JDownloader. Yeh Ex. R (Kaplan dep.) at 186:7-16. The actual facts are not in dispute.

---

[2] To the contrary, automated processes are commonly used in the analogous context of civil discovery. Rule 26 requires attorneys to certify in good faith that discovery responses are "complete and correct" (Fed. R. Civ. Proc. § 26(g)(1)), yet courts regularly endorse the use of automated document search and retrieval programs, effectively recognizing that such automated programs can provide the basis for a good faith belief. *See*, *e.g.*, *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("To the extent that it may not be feasible for counsel to speak with every key player" to identify relevant documents, "[i]t may be possible to run a system-wide keyword search"). Indeed, there is recognition that sophisticated automated review processes are *more* accurate than human review. The Sedona Conference, *The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery*, 8 Sedona Conf. J. 189, 199 (2007) (noting "myth that manual review by humans … constitutes the gold standard by which all searches should be measured," citing study that automated searching is substantially more accurate and complete due to incidence of human error).

5

Hotfile similarly argues that Warner "deliberately" deleted JDownloader files based on testimony from Warner's representative that he was "not prepared" to opine at his deposition on the nuanced legal question of whether takedowns of JDownloader would *ever* be permissible. Opp. at 12. This again misconstrues the record. Warner never hinted that it ever deliberately noticed JDownloader files, and testified repeatedly that "that wasn't the intention of the – we didn't intend to take down JDownloader." Yeh Ex. R (Kaplan dep.) at 236:13-16.[3]

### B. Hotfile's Assertion of a ▓▓▓ False Positive Rate Has No Factual Basis.

Hotfile repeatedly asserts that Warner "knew" that ▓▓▓ of its takedowns were false positives. *See* Opp. at 8. This claim is not remotely supported by the evidence Hotfile cites. Hotfile cites two internal emails. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[3] Nor could the Warner representative have given any other answer. JDownloader is a program that facilitates the downloading from Hotfile of multi-part files, which is when a single work, such as a movie, is broken up into multiple smaller files uploaded separately (movies are usually pirated through multi-part files, *see* Kaplan Decl. ¶ 10). Like the Grokster software itself, in a vacuum, the JDownloader software may be "noninfringing." Opp. at 12. But it appears to be used predominantly to facilitate infringement, and if, for instance, it were "marketed" directly alongside infringing content in ways that evidenced its distributor was encouraging its use for infringement, that would be a paradigmatic case of inducing infringement. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005).

███████████████████████████████████████████████████
████████████████████

These emails are not credible evidence of the false positive rate for Warner's system. Indeed, Hotfile's own expert repeatedly testified that ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Hotfile easily could have conducted a statistical analysis if it had wanted to, but it did not want to learn that the true error rate is infinitesimally small, and virtually every mistaken notice nonetheless identifies an infringing file. The only evidence in the record is that, despite a ██████████ ████████████████████████████ Hotfile identified only a relative handful of mistakes out of *hundreds of thousands* of Warner notices. Mot. at 7; Kaplan Dec. ¶ 14.

### C. Hotfile's Remaining "Evidence" That Some Errors Might Have Been Preventable Does Not Support a Finding of Knowing Misrepresentation.

The rest of Hotfile's "evidence" is nothing but an argument that, in Hotfile's estimation (with the benefit of 20/20 hindsight), a small subset of Warner's errors could have been prevented had Warner better refined its system. None remotely suggests a knowing misrepresentation.

- Hotfile points to ████████████████████████████████████ that it argues are too general. Opp. at 10-11.[4] It then points to an internal email showing the opposite of a knowing misrepresentation: namely, that Warner, ████████████████████████

  ████████████████████████████████████████████████████████████

  ████████████████████████████████████████████████████████████

  ████████████████████████████████████████████████████████████

  ██████████████████████ The exchange shows Warner's good faith in refining its system.

- ████████████████████████████████████████████████████████

  ████████████████████████████████████████████████████████████

---

[4] Hotfile cherry-picks a handful ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████

7

 Again, the incident shows Warner's good faith in addressing errors.

- Hotfile cites an ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Hotfile points to no connection between this issue, which Warner addressed, and any of the files in the counterclaim. Again, Hotfile lacks any evidence that any mistake was a knowing one.

Section 512(f) requires Hotfile to prove a "knowing[], materially misrepresent[ation]" – yet, giving Hotfile the benefit of every reasonable inference, Hotfile's evidence does not come close to meeting this standard.[5]

### III. NO EVIDENCE SUPPORTS HOTFILE'S DAMAGES CLAIM.

A 512(f) plaintiff must prove that it "is injured" by a knowingly wrong notice. It is an element of the cause of action. 17 U.S.C. § 512(f). Hotfile protests that it need not show economic injury, *see* Opp. at 14, but has no evidence of any other kind. *Lenz*, on which Hotfile relies, involved claimed First Amendment harm, *Lenz v. Universal Music Corp.*, No. C07-3783JF, 2010 WL 702466, at *7-8 (N.D. Cal. Feb. 25, 2010), which Hotfile cannot and does not assert here. And notwithstanding its claim to have suffered "reputational and goodwill harm," Opp. at 14 n.7, at deposition, both Hotfile and its expert admitted that they were not aware of any evidence of such harm. WSUF ¶¶ 2(a), 2(b), 2(c), 2(d).[6] Hotfile's after-the-fact attempt at finding evidence does not create a triable issue.

---

[5] Hotfile concedes that nearly a third of Hotfile's counterclaim consists of infringing video games that Warner correctly identified on behalf of Electronic Arts, Inc. ("EA") as part of an antipiracy partnership. *See* HCSUF 7. Hotfile fails to address Warner's evidence that Warner inadvertently sent notices that were planned to be sent by EA. *See* Kaplan Decl. ¶¶ 8, 21.

[6] Hotfile's purported "ample evidence," Opp. at 14 n.7, consists of two anonymous online forum posts months after Warner's notices. The first, which claims that "Hotfile is damaging their

8

As Warner has shown, infringement on Hotfile was so pervasive that even Warner's mistaken takedowns – which were all links posted on pirate sites, *see* Kaplan Dec. ¶ 6 – mostly resulted in the removal of files that were either infringing or uploaded by users who were repeat infringers and either were or should have been suspended without regard to Warner's notices. *See* Mot. at 15.  Hotfile has not shown otherwise:

(1) Hotfile cannot dispute that the files are infringing, or that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ SUF 8(b). Instead, it speculates that a jury could "consider" whether any were "fair use or [] authorized by the true owner." Opp. at 16, 18-19. But Warner's expert considered that and his testimony remains unrebutted. *See* Zebrak Ex. B; 17 U.S.C. § 106. Moreover, each of the files was identified because a link to it was posted on a pirate link site for mass distribution. Hotfile has no evidence of authorization or fair use for a jury to "consider."

(2) Hotfile attacks Plaintiffs' expert Zebrak, who identified the titles, owners and copyright status of the counterclaim files. Opp. at 16-18. Hotfile's *ad hominem* attacks aside, analyses of this sort are routinely accepted in copyright litigation where third-party rights are a relevant collateral issue. *See, e.g., Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 412-13 (S.D.N.Y. 2011); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 131-32 (S.D.N.Y. 2009); *Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578 SVW (JCx), 2009 WL 6355911, at *8 (C.D. Cal. Dec. 21, 2009). Zebrak's testimony is plainly admissible: an expert can testify if he "knows of facts which enable him to express a reasonably accurate conclusion," and sets forth a "process of reasoning beginning from a firm foundation." *United States v. City of Miami*, 115 F.3d 870, 873 (11th Cir.1997); *Martinez v. Weyerhaeuser Mtg. Co.*, 959 F. Supp. 1511, 1515 (S.D. Fla.1996). Zebrak explains in detail the process by which he analyzed the counterclaim files, the factors he considered in determining their copyright status, and how he tested and corroborated those determinations. Zebrak Decl. ¶¶ 4-10. Hotfile's reliance on *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985), is misplaced. In

---

customer relations" by honoring mistaken takedown requests, is hearsay. *See* Fed. R. Evid. 802. Hotfile also redacts the portion that undercuts its claim: in a subsequent post, the author makes clear that he believed that "[t]he take-downs were not illegal" and defended Warner's use of an automated tool, stating "[t]o attempt to do it manually is beyond stupid." Yeh Ex. W at 9, 12. The second post criticized Hotfile's practice of letting copyright owners remove files from Hotfile *at all* and is not linked causally to the claimed Warner errors. Yeh Ex. V.

9

*Evers*, the expert claimed to have "reviewed" undisclosed evidence and provided four conclusory paragraphs contradicting the opposing party, but with no explanation of methodology or factors considered. *Id*. Zebrak's testimony does not suffer from these defects. Zebrak Decl. ¶¶ 6, 9. There can be no question that his testimony is admissible.

(3) In the end, Hotfile identifies only three uploaders of noninfringing files who may have been mistakenly terminated following a counterclaim notice. Opp. at 19-20. Hotfile, however, fails to mention (and its expert fails to consider) that, as to one of those users (the user who distributes the JDownloader software), Hotfile almost immediately reinstated the user and his files with no interruption to his payments, negating Hotfile's claim of damage. *See* Foster Reply Decl. ¶ 3. The other two were non-premium, non-Affiliate (*i.e.*, nonpaying) users. Hotfile, moreover, suspended user ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and identified Warner's takedown as an error. *See* Foster Reply Decl. ¶ 4. That user was not terminated because of any Warner notice; Hotfile could have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The injury arguments Hotfile presents in its opposition are, notably, completely different from those disclosed in Hotfile's expert report. *See* Thompson Ex. 34, ¶ 36. Regardless, Hotfile still presents nothing but the conclusory assertion that "there is a reasonable probability" that Hotfile lost premium subscriptions. Hotfile's burden was to "come forward with evidentiary material demonstrating a genuine issue of material fact for trial." *Floyd v. McNeil*, No. 4:10cv289-RHWCS, 2011 U.S. Dist. LEXIS 150619, at *4-5 (N.D. Fla. Dec. 5, 2011) (internal citations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). Respectfully, Hotfile's unsupported speculation as to injury does not meet its burden.

## CONCLUSION

Warner respectfully requests that its motion for summary judgment be granted.

Dated: March 12, 2012                           Respectfully submitted,

                                                By: /s/ Karen L. Stetson

|  |  |
|---|---|
|  | Karen L. Stetson<br>GRAY-ROBINSON, P.A.<br>1221 Brickell Avenue<br>16th Floor<br>Miami, Fl 33131<br>Telephone: (305) 416-6880<br>Facsimile: (305) 416-6887 |
| MOTION PICTURE ASSOCIATION<br>  OF AMERICA, INC.<br>Karen R. Thorland (*Pro Hac Vice*)<br>15301 Ventura Blvd.<br>Building E<br>Sherman Oaks, CA 91403<br>Phone: (818) 995-6600<br>Fax: (818) 285-4403 | JENNER & BLOCK LLP<br>Steven B. Fabrizio (*Pro Hac Vice*)<br>Duane C. Pozza (*Pro Hac Vice*)<br>Luke C. Platzer (*Pro Hac Vice*)<br>1099 New York Ave., N.W.<br>Suite 900<br>Washington, DC 20001<br>Facsimile: (202) 639-6066<br><br>*Attorneys for Plaintiffs* |

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th Day of March, 2012, I served the following documents on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

**Reply Memorandum of Law in support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment**

By: /s/ Karen L. Stetson
Karen L. Stetson

## SERVICE LIST
### Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
### CASE NO. 11-CIV-20427-JORDAN

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*


BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*