Sealed

# FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF



DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

    *Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

    *Defendants*.

_____/

HOTFILE CORP.,

    *Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

    *Counter-Defendant*.

_____/

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO STRIKE THE DECLARATION OF
JENNIFER V. YEH FILED IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

**FILED UNDER SEAL**                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## CITATION LEGEND

1. "PSUF" shall refer to specific paragraph numbers of Plaintiffs' Statement of Uncontroverted Facts.

2. "DSUF" shall refer to specific paragraph numbers of Statement of Undisputed Material Facts In Support of Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

3. "TSUF" shall refer to specific paragraph numbers of Statement of Undisputed Material Facts In Support of Motion of Anton Titov's Motion for Summary Judgment.

4. "DRSF" shall refer to specific paragraph numbers of the Statement of Facts of Defendants Hotfile Corporation and Anton Titov In Opposition to Plaintiffs' Statement of Uncontroverted Facts and Defendants' Statement of Additional Material Facts.

5. "Foster Decl." shall refer to the declaration of Dr. Ian Foster in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012.

6. "Yeh Decl." shall refer to the declaration of Jennifer V. Yeh in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012.

7. "Titov Decl." shall refer to the declaration of Anton Titov in support of Defendants' Motion for Summary Judgment.

8. "Titov Opp. Decl." shall refer to the declaration of Anton Titov in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

9. "Leibnitz Decl." shall refer to the declaration of Andrew Leibnitz in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

10. "Gupta Decl." shall refer to the declaration of Deepak Gupta in support of Defendants' Motion for Summary Judgment.

11. "Schoenberg Decl." shall refer to the declaration of Anthony Schoenberg in support of Anton Titov's Motion for Summary Judgment.

12. "Levy Decl." shall refer to the declaration of Dr. Daniel S. Levy in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

13. "Cromarty Decl." shall refer to the declaration of Dr. Andrew Cromarty in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

**FILED UNDER SEAL**  CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

14. "Boyle Decl." shall refer to the declaration of Dr. James Boyle in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

15. "Leibnitz Ex. __," shall refer to exhibits attached to the Leibnitz Declaration.

16. "Yeh Ex. __," shall refer to exhibits attached to the Yeh Declaration.

17. "Gupta Ex. __," shall refer to exhibits attached to the Gupta Declaration.

18. "Schoenberg Ex. __," shall refer to exhibits attached to the Schoenberg Declaration.

19. "Boyle Ex. __," shall refer to exhibits attached to the Boyle Declaration.

20. "Thamkul Decl." shall refer to the declaration of Janel Thamkul in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

21. "Thamkul Ex. __," shall refer to exhibits attached to the Thamkul Declaration.

22. "Titov Reply Decl." shall refer to the declaration of Anton Titov in support of Defendants' Reply in support of their Motion for Partial Summary Judgment.

23. "DMSJ" shall refer to the Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

24. "DOPMSJ" shall refer to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov.

25. "PODMSJ" shall refer to Plaintiffs' Opposition to the Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

26. "PMSJ" shall refer to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov.

27. "PCF" shall refer to Plaintiffs' Counterstatement of Material Facts in Opposition to Defendants' Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

**FILED UNDER SEAL**                         CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## INTRODUCTION

In their Opposition, Plaintiffs scramble to invent non-hearsay excuses for evidence offered originally to prove the truth of asserted matters, seek to introduce inadmissible evidence in the guise of "summaries," and continue to insinuate liability by comparing Hotfile to various allegedly unlawful sites. These tactics all fail to establish that the challenged evidence is admissible or that it should not be excluded for failure to produce it in discovery and/or for the risk of undue prejudice. Hotfile's motion to strike should be granted.

## LEGAL ARGUMENT

### I. The Anonymous Blog Posts Submitted By Plaintiffs Lack Any Admissibility

Plaintiffs fail to offer any valid reason to admit dozens of pages of purported screenshots from anonymous internet forums. *See* Yeh Exs. 22, 48, 58, 60, 61, 63, 64, 86; Yeh Decl. ¶¶ 23, 49, 59, 61, 62, 64, 87. This digital graffiti is unauthenticated hearsay written by unknown persons who Plaintiffs fail to show have any personal knowledge to back up their accusations.

Plaintiffs try to save this evidence by running away from its originally proposed use. Plaintiffs submitted Exhibit 22 (an anonymous poster's statement that "If any of you [sic] files are reported ... the file will be deleted but ... you will not be suspended from hotfile.com") to prove that "Defendants had no policy or practice of terminating users who were the subjects of multiple infringement notices or otherwise identified as infringers." PSUF ¶ 4(e); PMSJ at 11, 30–31 (citing PSUF ¶ 4(e)). Likewise, Plaintiffs submitted Exhibit 48 (anonymous poster's statement that "HF site [Hotfile.com is] ... using copyrighted porn movie as a example") to prove that "Defendants illustrated Hotfile operations using infringing works." PSUF ¶ 10(e)(iii); PMSJ at 15 (citing PSUF ¶ 10(e)(iii)). Plaintiffs thus submitted both exhibits to prove the truth of the matters asserted in violation of the rules governing hearsay. Plaintiffs cannot now deny their own words.

Plaintiffs also assert that Exhibits 22 and 48 are exempt from the hearsay rule as adoptive admissions since Hotfile contractor Andrei Ianakov posted messages in the same forum threads. Opp. at 4. However, the "adoptive admissions" rule only exempts hearsay statements from exclusion if the party offering it proves that the person who did not respond (1) was authorized by the party to speak on the subject of the statement or was the party's agent or employee with duties regarding the subject of the statement, (2) received the statement, (3) understood it, (4) normally would have objected if the statement was false, and (5) acquiesced in the statement.

-1-

**FILED UNDER SEAL**	CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

*United States v. Joshi*, 896 F.2d 1303, 1311 (11th Cir. 1990); Fed. R. Evid. 801(d)(2). Plaintiffs make no attempt to satisfy any of these conditions. All they do is falsely claim that Mr. Ianakov posted "shortly before and shortly after" the user post in Exhibit 22. Opp. at 4. In fact, Mr. Ianakov's nearest postings were thirteen days earlier and nine days after the anonymous comment supposedly adopted by Hotfile. Yeh Ex. 22 at 3, 5. Moreover, Mr. Ianakov's posting explicitly responded to *other* comments unrelated to the accusations. *Id.* at 3, 5. In addition, Mr. Ianakov was *not* authorized to speak on the subjects of the forum users' comments and answering them was not within the scope of any of his responsibilities; as a result, he would not normally have objected to those comments. *See* Stoyanov Dep. at 85:15–86:16; 87:5–8.[1]

Plaintiffs also do not address their failure to authenticate the relevant portions of Exhibits 22, 48, 58, 60, 61, 63, 64, and 86 as unadulterated comments actually made in the forums on the dates indicated (mostly in 2009). Testimonials from Plaintiffs' counsel in 2011 do nothing to establish the authenticity of statements by unknown third parties two years before. Plaintiffs simply ignore the authorities cited by Hotfile requiring authentication from someone with knowledge of the cited websites. Mot. at 3. Instead, Plaintiffs merely attempt to establish that documents such as Exhibits 22, 48, or 64 contain comments by Mr. Ianakov. Opp. at 5. **But these are not even the postings upon which Plaintiffs rely.** *See* PMSJ at 11, 12, 15 (citing statements by anonymous posters "Campolar," "ForumDesire," and "George101" – *not* statements having any relation to the postings by Mr. Ianakov). For these reasons, as well as those reasons which Plaintiffs do not even attempt to refute,[2] these Exhibits should be stricken.

## II. Plaintiffs Cannot Properly Seek Admission Of Their Outside Counsel's Opinions And Legal Conclusions

Yeh Exhibits 27, 29, 56, 106, and 119 purportedly compile opinions and legal conclusions of unnamed persons working with Plaintiffs. For example, Exhibit 29 supposedly summarizes Plaintiffs' review of files downloaded from Hotfile.com by Hotfile personnel. Yeh

---

[1] Plaintiffs' cannot credibly cite to testimony of Anton Titov regarding the scope of Mr. Ianakov's authority when Hotfile explicitly designated Rumen Stoyanov – *i.e.*, Mr. Ianakov's employer and supervisor – as Hotfile's most knowledgeable witness on the subject. Pls.' Rule 30(b)(6) Notice of Dep. of Def. Hotfile Corp. (Ex. A) (Topic 41); E-mail from R. Thompson to S. Fabrizio of 12/3/11 (Ex. B).

[2] Plaintiffs do not dispute that Exhibits 22, 48, 58, 60, 61, 63, and 86 are inadmissible under Federal Rule of Evidence 403 (unfair prejudice) and that Exhibits 22, 48, and 86 are inadmissible due to Plaintiffs' failure to produce or disclose them in discovery.

**FILED UNDER SEAL**                                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

Decl. ¶ 30. Plaintiffs' review was performed by unidentified persons, with unknown qualifications, who applied unspecified criteria to reach the legal conclusion that various of the files were "highly likely infringing." *Id.*; Yeh Ex. 29. The exhibit, like the others in this series, is tainted with legal conclusions, opinion testimony by unqualified and undisclosed experts, hearsay, and lack of personal knowledge, and were never produced or disclosed in discovery.

Plaintiffs contend that the evidence is admissible to "prove the content of voluminous writings ... that cannot be conveniently examined in court." Opp. at 6 (citing Fed. R. Evid. 1006). However, Rule 1006 only allows charts that are limited to summarizing otherwise admissible evidence. *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004). If the charts include more than summary of admissible evidence, such as a witness' personal knowledge or argument, the charts are inadmissible. *Id.* at 1159–60 ("because summaries are elevated under Rule 1006 to the position of evidence, care must be taken to omit argumentative matter in their preparation") (internal quotation marks omitted); *see also White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1070 (W.D. Mo. 1985) ("a Rule 1006 summary cannot properly incorporate a witness' personal knowledge"). Exhibits 27, 29, 56, 106, and 109 do not merely summarize voluminous writings, but comprise opinions and legal conclusion that renders the exhibits inadmissible. For example, Exhibit 29 does not merely summarize the downloaded files, but provides the legal conclusion that every file was "Highly Likely Infringing," as well as self-serving descriptions of the files (*e.g.*, "Professional Arabic Movie," Ex. 29 at 1), the names of companies supposedly associated with the files (*e.g.*, statement that Symantec was associated with a file containing encryption software, *id.*),[3] and notes identifying websites relied upon in reaching the infringement determination (*e.g.*, noting that information about a TV series is at www.imdb.com, *id.*). None of this information exists in

---

[3] Despite Ms. Yeh's assertion in Exhibit 29, Symantec had nothing to do with the encryption software at issue, and did not acquire PGP Corporation (the company that wrote the software) until nearly a year after the accused file was uploaded to Hotfile. https://www.computerworld.com/s/article/9176121/Symantec_buys_encryption_specialist_PGP_for_300M. Moreover, the software was freely available "open source" software prior to PGP's purchase. Titov Opp. Decl., Ex. A. To this day, the software remains available at both a competing cyberlocker (RapidShare) and through Symantec. *Id.* Accordingly, Ms. Yeh's testimony is not only inadmissible – it is incorrect.

-3-

**FILED UNDER SEAL** CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

the documents supposedly being "summarized."[4] Plaintiffs concede that they came up with this additional information by hiring reviewers to "investigate[]" the files by reviewing various websites for information about the files. Yeh Decl. ¶ 30. Rule 1006 does not authorize Plaintiffs to pull information off the Internet and add it to a "summary" chart in order to circumvent the rules of evidence. "Rule 1006 is not a back-door vehicle for the introduction of evidence which is otherwise inadmissible." *Peat*, 378 F.3d at 1160.[5]

Also, the exhibits' extrinsic information is not based upon Ms. Yeh's personal knowledge and is hearsay. "Rule 1006 does not permit the admission of summaries of the testimony of out-of-court witnesses because such testimony would be hearsay." *Peat*, 378 F.3d at 1160. Plaintiffs claim Ms. Yeh can testify as to the procedures of people working under her. Opp. at 6. These exhibits, however, go further. They include information the reviewers obtained in their Internet research and the conclusions of their individual infringement analyses. Ms. Yeh does not claim personal knowledge of this information. Decl. of Jennifer V. Yeh in Supp. of Pls.' Opp. to Defs.' Mot. to Strike the Decl. of Jennifer V. Yeh ¶ 3.[6]

Plaintiffs further deny that Ms. Yeh proffers improper opinion testimony or legal conclusions on grounds that "identification of content does not generally require specialized knowledge." Mot. at 7 (citing *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148,

---

[4] Because the exhibits contain information beyond the summarized writings, the exhibits should have been disclosed or produced in discovery. They were not and remain inadmissible for that reason alone.

[5] Although the text above focuses on Exhibit 29, the arguments apply also to Exhibits 27 (alleging that certain works were "infringed" and failing to show reliable basis to opine on contents of unexamined files), 56 (technical analysis of copyright data), 106, and 119 (failing to provide reliable basis for expert opinion that metadata indicated Plaintiffs' copyrighted works), and to their respective paragraphs of the Yeh Declaration: 28, 57, 107 (opining that certain works were copyrighted), and 120 (same).

[6] Plaintiffs' authority promoting a liberal definition of "personal knowledge" that includes any knowledge acquired from others does not help Plaintiffs here. *See, e.g., Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989). As described above, Ms. Yeh's declaration and exhibits show that she merely repeated statements that others gave her about the research they did and the conclusions they reached concerning various files and websites. This is inadmissible. *See In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 870 F. Supp. 1293, 1304 (E.D. Penn. 1992) (declarant does not have personal knowledge when "rel[ying] solely on the "say-so" of third parties").

1153 (9th Cir. 2012)).[7] However, unlike the private investigator in *Range Road*, Ms. Yeh is not relying upon an extensive music background and history of 300 prior investigations to identify when a live band at a restaurant plays popular John Coltrane hits. 668 F.3d at 1151-52. Ms. Yeh provides no foundation for her conclusions regarding sodomitic Indian pornography, freely-available online videogame software, or anything else. Yeh Ex. 29. In any event, Ms. Yeh is not merely *identifying* works supposedly recognizable to laypersons, but rather *opines about their infringement status*. *E.g.*, Yeh Ex. 29 (labeling dozens of downloads as "highly likely infringing"). This involves legal analyses of authorization status and fair use – hardly the bailiwick of a fact witness abstaining from legal conclusions. The unnamed reviewers and Ms. Yeh were not disclosed as lay witnesses in Plaintiffs' initial disclosures, disclosed as expert witnesses in Plaintiffs' expert disclosures, qualified as experts, or deposed in any capacity. Because they may not now offer partisan legal opinions as "facts," their testimony should be excluded.[8],[9]

## III. Demonstratives Are Not Evidence

Demonstrative aids may be shown to the finder of fact, but are never admitted into evidence over objection. *United States v. Buck*, 324 F.3d 786, 791 (5th Cir. 2003). Plaintiffs belatedly concede this point in recognizing that Yeh Exhibits 109 through 118 and accompanying Yeh Declaration paragraphs 110 through 119 are not "independent evidence" – despite their repeated citation to Exhibits 109 through 118 in their summary judgment papers as *undisputed facts*. Opp. at 11; *e.g.*, PSUF 4(c), 5(a), 5(a)(i), 5(a)(iii), 5(b), 10(a)(i), 10(a)(ii), 10(a)(iii), 10(a)(iv), 10(a)(v), 10(a)(vi), 16(a)(vii), 16(a)(xi). Even Plaintiffs' own cases refuse to admit into evidence any demonstratives. *See Safety Nat'l Cas. Corp. v. U.S. Dep't of Homeland*

---

[7] The same analysis applies to Plaintiffs' other cited authorities, *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, Civ. A. No. 4108-cv-03181, 2010 U.S. Dist. LEXIS 114306 at * 49 (S.D. Tex. Oct. 27, 2010); *Stromback v. New Line Cinema*, 384 F.3d 283, 295 (6th Cir. 2004).

[8] Plaintiffs assert that "Ms. Yeh's testimony is not probative of an ultimate legal conclusion, but rather is probative of defendants' knowledge." Opp. at 7. It defies credulity that Ms. Yeh's partisan legal conclusions should suggest anything about Defendants' state of mind.

[9] Confronted by the fact that they simultaneously proffer lay testimony from Ms. Yeh on infringing status of a sample of Hotfile downloads and "expert" testimony from a copyright lawyer named Scott Zebrak on the same subject, Plaintiffs distinguish Ms. Yeh's opinions as "relatively straightforward" and thus immune to the expert disclosure requirements of the Federal Rules. Opp. at 8. Plaintiffs do not get to shield their witnesses from discovery based upon their unilateral and subjective determination of the ease of their testimony.

**FILED UNDER SEAL** CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

*Sec.*, No. 4:-5-cv-2159, 2007 WL 7131004, at *1-2 ("demonstrative charts are not to be considered as evidence") (quotations omitted); *Tindall v. H & S Homes, LLC*, Civil Action No. 5:10–CV–044(CAR), 2012 WL 174813, at *4 (M.D. Ga. Jan. 20, 2012) ("the exhibit itself is not evidence").[10] This Court should not admit into evidence any information which both parties agree is not evidence.[11]

## IV. Plaintiffs May Not Permissibly Proffer Evidence Of The Megaupload Indictment Or Evidence Regarding Other Websites Unrelated To Hotfile

Plaintiffs equate Hotfile with criminally-indicted Megaupload. *See* PSUF 16(f)(iii) ("Megaupload's business model parallels Hotfile's.") As evidence of Megaupload's practices, Plaintiffs selectively cite unproven allegations of the criminal indictment set forth in Yeh Exhibit 98 as *fact*. *E.g., id.* (citing "Megaupload Indictment" for proposition that "Megaupload . . . promised . . . subscribers transfers of cash and other financial incentives to upload popular works, including copyrighted works").[12] The only purpose of such irrelevant comparisons of Hotfile and Megaupload is to tar Hotfile by association with an accused criminal. Fed. R. Evid. 401, 403, 802.

Plaintiffs assert that they may freely equate Hotfile to Megaupload because Hotfile acknowledged competing at its founding with a half-dozen companies including Microsoft and Megaupload. Opp. at 14 (citing Yeh Ex. 9 ¶ 8). This no more justifies equating Hotfile with Megaupload than it justifies equating Hotfile with Microsoft. *Id.* Plaintiffs further justify their comparison based on the testimony of Hotfile's progenitor that "I don't recall whether at the time [of Hotfile's founding, MediaFire or Megaupload] had an affiliate system or not." Opp. at 14

---

[10] *See also In re Katz Interactive Call Processing Patent Litig.*, No. 07-ML-01816-C-RGK (FFMx), No. CV 07-4965-RGK (FFMx), 2010 WL 3749833, at *3 (C.D. Cal. July 2, 2010) (without analysis, neither striking nor admitting evidence deemed "simply demonstrative").

[11] While both parties may bring demonstratives to any hearing on summary judgment, Plaintiffs may not unilaterally exceed their page limits on summary judgment by 25% by submitting ten pages of graphical argument with their forty-page brief. Furthermore, absent striking, Plaintiffs' demonstratives will enter the appellate record. This should not happen. Indeed, the Court's ruling should apply to Plaintiffs' submission of an additional graphic with their reply brief on summary judgment as well. Yeh Ex. 156.

[12] Despite the plain language of their summary judgment papers citing the indictment as proof of the matters asserted, PSUF 16(f)(iii), Plaintiffs now assert that "it is the fact of the indictment *itself* that is relevant." Opp. at 15 n.20. However, the indictment of Megaupload makes no aspect of any claim against *Hotfile* more or less likely to be true – and thus lacks any relevance.

-6-

(citing Yeh Ex. 3 (Stoyanov Dep.) at 21:3 - 22:20). Mr. Stoyanov's testimony that he "d[id]n't recall" any similarity with Megaupload hardly justifies equating that Hotfile with Megaupload. *Id.* Lastly, Plaintiffs defend their comparison on grounds that Hotfile deleted files for inactivity like its competitors RapidShare and Megaupload. Opp. at 14 (citing Yeh Ex. 1 at 710-24-711-15). However, even if Hotfile emulated one aspect of its competitors' businesses, Hotfile would still be entitled to consideration on its own merits – particularly the significant differences between Hotfile and Megaupload. *E.g.*, Megaupload Superseding Indictment (Ex. C) at 12 n.2 (noting that, after seven full years of operation, Megaupload blocked the hashes of 221 files [compared to Hotfile, which has hash-blocked approximately 10,000,000 allegedly-copyrighted files in three years]); *id.* ¶ 4 (Megaupload generated over $25 million from advertising "heavily dependent on popularity of copyright infringing content" [compared to Hotfile, which has had no advertising income]); *id.* ¶ 8 (Megaupload facilitated rapid infringement by keeping most-frequently downloaded files in memory rather than in storage [where Hotfile does not]). The Court should not countenance Plaintiffs' insinuation based on an indictment which nowhere mentions Hotfile, and should instead require Plaintiffs to attempt to prove their own case.

As evidence of Hotfile's "knowledge and inducement of copyright infringement," Plaintiffs cite a government press release regarding seizure of ten websites having no alleged relationship to Hotfile as well as an unopposed partial summary judgment order against other websites having no relation to Hotfile. Opp. at 16 (discussing Yeh Exs. 94 & 105); PSUF 10(d)(iii). There exists no basis to believe that Hotfile ever saw either of these documents. Accordingly, they illuminate nothing about Hotfile's actions. Fed. R. Evid. 401.[13] Moreover, seizure of a dozen link sites demonstrates nothing about "link sites generally," despite Plaintiffs' protestations. Opp. at 16. Plaintiffs make no attempt to demonstrate that these sites represent the universe of link sites existing on the internet; indeed, some of the nation's most popular (and indisputably legitimate) websites are link sites. Titov Opp. Decl. ¶ 19 (discussing Huffington Post and Drudge Report as described by Plaintiffs' own sources). Apart from Plaintiffs' failure to produce these documents in discovery, Exhibits 94 and 105 remain irrelevant hearsay.[14]

---

[13] This Court can ill afford to admit evidence of all the matters of which Hotfile did *not* know.

[14] Plaintiffs claim that the court summary-judgment order at Exhibit 105 is admissible under the public records exception to the hearsay rule. *See* Fed. R. Evid. 803(8). This contention is flatly contradicted by controlling precedent. *See United States v. Jones*, 29 F.3d 1549, 1551 & n.3, 1554 (11th Cir. 1994) (reversing summary judgment ruling because it was based on admission

**FILED UNDER SEAL**             CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

Plaintiffs offer similarly unconvincing arguments for admitting Exhibit 90, the "Administration's White Paper on Intellectual Property Enforcement Legislative Recommendations." Opp. at 16. Plaintiffs claim they only offer it to show "a legislative fact relevant to" interpretation of the safe harbor of the Digital Millennium Copyright Act. *Id.* However, Exhibit 90 contains a series of proposals *last year* for new legislation. Ex. 90 at cover page, pp. 1–3. The White Paper therefore sheds no light on Congress' intent in enacting the DMCA's safe harbor provision twelve years earlier. See Pub.L. 105-304, Title II, § 202(a), Oct. 28, 1998, 112 Stat. 2877 (original law); Pub.L. 106-44, §§ 1(c)(1), 1(d), Aug. 5, 1999, 113 Stat. 221, 222 (1999 amendment); Pub.L. 111-295, § 3(a), Dec. 9, 2010, 124 Stat. 3180 (2010 amendment). Plaintiffs thus fail to refute Defendants' arguments that the report remains irrelevant and prejudicial hearsay. Fed. R. Evid. 401, 403, 802.[15]

## V. The Purported Screenshots Of Hotfile's Affiliates Lack Admissibility

Plaintiffs proffer Exhibits 31-43 and 102-103 – *i.e.*, 218 pages screenshots from the websites of sixty-three Hotfile affiliates – to prove that "infringement on and by those websites is obvious to even a casual visitor." Opp. at 13. However, no evidence exists that anyone associated with Hotfile visited these websites even fleetingly. Those sixty-three affiliates – hand-picked by Plaintiffs after more than two years of investigation – represent only one-quarter of one percent (0.25%) of Hotfile's affiliates. Titov Opp. Decl. ¶ 20. No reason exists for Hotfile to visit these sites: none of them figures in the top 500 sites referring traffic to Hotfile, only a handful of the 218 pages even mentions Hotfile, and exactly none of them possesses any operative links to Hotfile. *Id.* This is so far removed from "potent proof" of Hotfile's knowledge that it lacks any relevance at all. Opp. at 13. Indeed, even if Defendants *had* visited these sites, Plaintiffs provide no evidence of even a single illegal download at Hotfile caused by these sites. Rather, Plaintiffs assume that: (1) the appearance of these "link sites" forty-three

---

into evidence of order on motion in another case, which was not admissible under public-records exception). Although the Court can take judicial notice that Exhibit 105 exists, it cannot take judicial notice of the truth of its contents, contrary to Plaintiffs' suggestion. *See id.*, 29 F.3d at 1553 ("If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous. . . . Moreover, to deprive a party of the right to go to the jury with his evidence where the fact was not indisputable would violate the constitutional guarantee of trial by jury.").

[15] Plaintiffs also fail to dispute, and therefore concede, that Exhibits 90, 94, 98, and 105 should be excluded because they were not disclosed or produced in discovery.

**FILED UNDER SEAL**  CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

days ago accurately represents their operation for the two years beginning in February 2009; (2) these sites formerly provided operative links to Hotfile, even if they may not now; (3) these links conveyed unauthorized content, even though no party has actually reviewed that content, and despite the financial incentives for users to misidentify their uploads;[16] and (4) Hotfile paid the operators of these sites for infringing content as opposed to any other content. These exhibits remain irrelevant hearsay.[17]

### VI. Plaintiffs' Fail To Show Any Reason To Admit The EFF Article

Plaintiffs contend that Exhibit 55 – a January 2006 article supposedly recommending that "peer-to-peer" developers disaggregate technological functions to avoid copyright liability – should be admitted to prove that Hotfile declined to implement search functionality in 2009 so as to evade accusations of infringement. Opp. at 18; PSUF ¶ 11(b)(ii); PMSJ at 4, n.1. However, no evidence exists that Hotfile ever saw the article until Plaintiffs' filing six weeks ago. Indeed, given that Hotfile is neither a peer-to-peer network nor a company that launched within even three years of January 2006, no reason exists for Hotfile to have ever seen this article. Plaintiffs speculate that Hotfile's *competitors* might have contemplated disaggregating functionality "and might have even been aware of the article itself." Opp. at 18. Plaintiffs can hardly justify offering documentation of what third-parties "might" have known as evidence against Hotfile.

In any event, Plaintiffs concede that they failed to disclose the article in discovery. *See* Opp. at 19. While Plaintiffs insist that they had no duty to do so, *id.*, the Rules unambiguously require parties to disclose "all documents" they "may use to support [their] claims." Fed. R. Civ. Proc. 26(a)(1)(A)(ii).[18] Irrelevant, prejudicial, and not disclosed in discovery, Exhibit 55 should be excluded from evidence at summary judgment and trial.

---

[16] *See* Yeh Ex. 46 (Hotfile e-mail noting that "many people are cheating by deliberately uploading . . . files with different content than their names and descriptions").

[17] Plaintiffs assert that these screenshots are submitted "not for the truth of the matter asserted, but rather to show that infringement on and by those websites is obvious." Opp. at 13. However, unless the alleged Hotfile affiliate at www.currentmoviereleases.net offered actual copies of Plaintiff Universal's movie "Tower Heist" (to take the example of Exhibit 31), then the Exhibit is irrelevant. It is not illegal to induce downloads of non-infringing works.

[18] Plaintiffs claim they were not required to produce the article because it was publicly available. The cases they cite in support of this proposition are inapposite because, unlike here, the parties in both cases were not prejudiced. In both cases, the complaining parties knew of the documents and received or requested them. *See Evans v. Bd. of Educ. Southwestern City Sch. Dist.*, No.

**FILED UNDER SEAL** CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

VII. **Plaintiffs Fail To Justify Use Of Hearsay Printed From www.Alexa.com.**

Plaintiffs fail to show a non-hearsay use for publications providing information by a supposed third-party research firm purporting to show Hotfile.com's relative popularity. Exhibit 69 is a printout of statistics about Hotfile.com compiled by Alexa Internet, Inc. ("Alexa") and published online at www.Alexa.com. Plaintiffs claim it is excepted from the hearsay rule by Federal Rule of Evidence 803(17), which allows use of "[m]arket … compilations that are generally relied on by the public or by persons in particular occupations." However, Plaintiffs make no effort to show that Alexa's statistics are "generally relied upon by the public or by persons in [any] particular occupation[]." They claim that Alexa Internet's statistics have been "cited by other courts for its rankings of website popularity" – but the only example they provide is *Perfect 10 v. Google, Inc.*, a case in which Alexa was a party to the consolidated case of *Perfect 10 v. Amazon.com*. *See* Docket, *Perfect 10 Inc. v. Amazon.com Inc.*, Case No. CV05-4753 AHM (SHX) (C.D. Cal.). Unlike the *Perfect 10* case, Alexa is not a party here subject to cross-examination.

The other, similar piece of evidence, Exhibit 85, is a news article repeating Alexa's alleged statement that Hotfile.com was once the world's 57th most popular website. The only attempted justification for this evidence is that the Court may take judicial notice of it as "an indication of what information was in the public realm at the time." Opp. 20. Plaintiffs, however, do not offer the article for any such purpose. Instead, they offer it only for the truth of the matter asserted, *i.e.*, that Hotfile.com was the 57th most popular site, which they suggest shows how dangerous it was. *See* PMSJ at 3. As such, Exhibit 85 is classic, inadmissible hearsay.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to strike.

DATED: March 28, 2012 Respectfully submitted,

---

2:08-cv-794, 2010 WL 1849273, at *2 (S.D. Ohio, Apr. 29, 2010); *Dushkin Publ'g Group, Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991).

**FILED UNDER SEAL**                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

*[signature]*

Janet T. Munn, Esq. Fla. Bar No. 501281
Email: jmunn@rascoklock.com
RASCO KLOCK
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102

And

*[signature]*

Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email: rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email: aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email: tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email: dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email: jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

And

Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone: 617.928.1800
Telecopy: 617.928.1802

*Counsel for Defendants Hotfile Corporation
and Anton Titov*

-12-

**FILED UNDER SEAL**  CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2012, a true and correct copy of the foregoing document, was filed conventionally and served on all counsel of record identified below via e-mail and by Federal Express.

Karen L. Stetson, Esq.
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Telephone: 818.935.5812

By: /s/ Janet T. Munn
Janet T. Munn