# EXHIBIT A

# PUBLIC VERSION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,.

  *Counterdefendant*.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
REGARDING PLAINTIFFS' MOTION TO "USE" TITOV
DEPOSITION EXHIBIT 27**

**FILED UNDER SEAL**                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

## I.   INTRODUCTION

Warner cannot properly proffer as evidence "fruit of the poisonous tree" (to borrow a phrase from criminal law practitioners). Here, Warner's misconduct has poisoned the "WB Links" document at least four times over. Any one of Warner's violations of the Protective Order, Federal Rules, or Rules of Professional Conduct would independently warrant exclusion of the document and related testimony from evidence. Moreover, to this day, Warner does not even appear aware that it bases its motion on the wrong subsection of Federal Rule of Evidence 502 – a subsection applying only to cases without clawback agreements. Warner's instant motion should be denied, and the Magistrate Judge's Report and Recommendation set aside.

## II.   LEGAL STANDARD

Warner asserts that the Magistrate Judge mistakenly issued a "Report and Recommendation" subject to *de novo* review rather than an order subject to review under the "clearly erroneous or contrary to law" standard. Warner's Resp. Hotfile's Obj. Mag. Rep. & Recomm. ("Opp.") at 6-7. Warner already tried to convince the Magistrate Judge to reissue the instant Report and Recommendation as an order. Docket No. 309. Warner's motion was rejected within hours of its filing. Docket No. 311. Hotfile respectfully submits that the Magistrate Judge knew what he was doing when he issued a Report and Recommendation not once but twice. *Id.* The *de novo* standard of review properly applies here.[1]

## III.   ARGUMENT

### A.   Warner Cannot Properly Use Evidence Obtained In Violation Of This Court's Orders, Rules, And Ethical Obligations

In its Opposition, Warner does not dispute that, as a matter of binding appellate precedent, trial courts properly "exclud[e] evidence wrongly obtained" in "violation of the court's rules or orders." *United States v. Venske*, 296 F.3d 1284, 1291 (11th Cir. 2002). Here, Warner violated at least four provisions of the Protective Order and the Florida Rules of Professional Conduct. The Report and Recommendation fails to analyze these violations – even though any one of them suffices to defeat Warner's Motion.

---

[1] Warner asserts that "no purpose served [sic] by referring discovery motions to the Magistrate Judge if those motions are going to be reviewed de novo by the Court." Opp. at 7. It is unclear why Warner believes that this Court would not value the Magistrate Judge's independent judgment regardless of the standard of review applied.

1.    **Warner Violated The Protective Order By Using The "WB Links"**
      **Document At Anton Titov's Deposition When Under An Order Of**
      **This Court To Destroy The Document**

Hotfile clawed back the "WB Links" document on November 28, 2011. From that moment – regardless of when Warner ultimately destroyed the document – Warner remained under an Order of the Court not to use the document. *See* Fed. R. Civ. P. 26(b)(5)(B) (incorporated into Protective Order [Docket No. 68] ¶ 20) (stating that, upon receiving notice of an inadvertently-produced document, a party "must not use or disclose the information until the claim is resolved."). Nonetheless, Warner used the "WB Links" document in Anton Titov's deposition one week later on December 5, 2011. These facts are indisputable.

Although dismissively asserting that "Hotfile's first argument . . . is easily disposed of," Warner never actually addresses Hotfile's argument. Opp. at 14. Instead, Warner diverts attention from the prohibition on *use* of the document to its obligation to *destroy* the document. *See id.* ("Hotfile misrepresents that the Protective Order requires destruction of documents 'within five days'"). Specifically, Warner contends that it destroyed the document in timely fashion pursuant to a one-week extension of the deadline to destroy the document granted by Hotfile. *Id.* at 14-15. This is irrelevant.

This Court's Order prohibited Warner from any "use" of the document after receiving a clawback request on November 28, 2011. That Hotfile trusted Warner to destroy the document by December 12, 2011 rather than December 5, 2011 in no way suggests that Hotfile permitted Warner to *use* Hotfile's protected work-product at the deposition of Anton Titov in the meantime. No reasonable party would believe otherwise. Indeed, Warner *knew* that it remained obliged by Court Order to destroy the "WB Links" document prior to any use. Decl. Duane C. Pozza Supp. Warner's Resp. Hotfile's Obj. Mot. Compel (filed Feb. 10, 2012) ¶ 5 (noting that, "[p]utting aside any [arguments] about Warner's *use* of the document," the "deadline for *certifying destruction* of the document at issue was therefore Monday, December 12, 2011."). Warner thus presents no basis on which this Court can conclude that Warner complied with the Court's Order prohibiting "use" of clawed-back documents.

Lacking any defense, Warner attempts to blame *Hotfile* for Warner's violation of the Protective Order, asserting that Hotfile sought "mass clawbacks" by citing only a "string of Bates numbers" which required Warner to "scour countless internal emails, analyses [and] deposition exhibits" during "the busiest period in the case." Opp. at 15. However, recalling

twenty-seven documents hardly constitutes a "mass clawback" sufficient to overwhelm the capabilities of five of the world's largest entertainment corporations. *See* E-mail from T. Schoenberg to D. Pozza of 11/28/11 [Docket No. 206-2]. Additionally, Bates numbers exist to identify documents, and no better method of identification exists, as evidenced by Plaintiffs' own practices. Defs.' Obj. Mag. Rep. & Recomm. Warner's Mot. "Use" Ex. 27 ("Obj.") at 11-12. Moreover, Warner did not need to scour "countless" documents to avoid transgressing the Protective Order on December 5, 2011, but only needed to check the ten documents used as exhibits on that day. Finally, no authority permits Warner to violate an Order of this Court if too busy to comply. Indeed, the contention that Warner's counsel may transgress orders if otherwise occupied demonstrates the extremes of advocacy required to defend Warner's conduct. *See* Opp. at 15 (stating Warner's view that it discharges any Order of this Court with "reasonable diligence" as opposed to actual compliance).[2]

Here, the Report and Recommendation nowhere discusses the undisputed fact that Warner used the "WB Links" document at Anton Titov's deposition on December 5, 2011 despite the Order of this Court prohibiting any "use" of the document after November 28, 2011. Absent Warner's violation of the Protective Order, no dispute regarding this document could possibly have arisen: examination of Anton Titov regarding the challenged document would not have occurred, and Warner would have no grounds on which to claim a waiver by Hotfile's counsel during that examination. On these grounds alone, the "WB Links" document and all related testimony should be excluded from evidence.

### 2.   Warner Would Have No Motion If It Had Complied With The Deadline To Move To Compel And File The Document Under Seal As Set By The Protective Order

The Protective Order states, "A party may move the Court for an order compelling production of the document, and may present the document to the Court under seal within five (5) court days of receiving a request to return the document." Protective Order [Docket No. 68] ¶ 20. Here, Hotfile clawed back the document on November 28, 2011 and Warner moved to

---

[2] This is not a case where the Court is considering whether a Commissioner of Prisons is sufficiently complying with "the difficult tasks" to improve prison conditions required by an injunction so that he may avoid civil contempt. *Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir. 1984) (cited in Opp. at 15). This case involves whether Warner may use a document in deposition when prohibited by Court Order.

**FILED UNDER SEAL**                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

compel and filed the document under seal fourteen days later on December 12, 2011. If Warner had either moved to compel *or* filed the document under seal in timely fashion, the current controversy would not exist, as the subject testimony and alleged waiver would not have occurred. These facts are indisputable.

Warner argues that, even though Judge Adalberto Jordan ordered that parties must move to compel and seal disputed documents within five days of notice, the Magistrate Judge silently overruled Judge Jordan by considering the belated motion on its merits. Opp. at 15. This is impossible, as Magistrate Judges cannot overrule Presiding Judges. 28 U.S.C. § 636; Fed. R. Civ. P. 72(a).[3] While Warner asserts that magistrate judges may hear motions previously deemed untimely by presiding judges under *Jones v. Coleman Co. Inc.*, 39 F.3d 749, 753-54 (7th Cir. 1994), in that case "[t]he magistrate judge *was* the presiding judge at the time he acted." *Id.* Here, the Magistrate Judge is not – and never has been – the Presiding Judge in this case, and thus cannot change orders entered by the Presiding Judge.[4] In any event, even if the Magistrate Judge could have overruled the Presiding Judge – which was impossible – this Court should not reverse Judge Jordan when conducting its *de novo* review of this motion, as no reason exists to rescue five Plaintiffs with indefatigable resources from their unjustifiable tardiness which itself caused the alleged forfeiture of Hotfile's work-product protection here.

Warner then argues that the five-day deadline of the Protective Order only applies to submission of documents under seal and not to motions to compel. Opp. at 16. Warner pointedly ignores *Bro-Tech Corp. v. Thermax, Inc.*, No. 05-CV-2330, 2008 WL 5210346 at *1-2 (E.D. Pa. Dec. 11, 2008), which enforced a similar five-day deadline for motions to compel production of clawed-back documents pursuant to Protective Order. Obj. at 13-14. These five-day deadlines exist within protective orders to prevent the very harm at issue here, where one party exploits the inadvertent production prior to resolution of the claim of privilege. *See id.* It makes no sense for the Protective Order to permit known clawback issues to linger while the

---

[3] This would be true even if this Court had granted plenary power to the Magistrate Judge over this Court's calendar, rather than simply referring this motion alone for a report and recommendation. *See* Order of Referral [Docket No. 248.] (referring this motion to the Magistrate Judge, and *not* referring to the Magistrate Judge "general supervision of [the Court's] civil and criminal calendar" under Magistrate Judge L.R. 1(i)(1)).

[4] Plaintiffs' other authority – *Shoop v. Hott*, No. 5:08CV188, 2010 WL 5067567, at *2 (N.D.W.Va. Dec. 6, 2010) – lacks any applicability here as it did not involve a Magistrate Judge altering a deadline set by the presiding judge.

parties develop their cases – indeed, it was Plaintiffs' belatedness in moving to compel that permitted them to argue that they had detrimentally relied upon the document by the time of the Magistrate Judge's ruling. *See* Report and Recommendation at 8 ███████████████ ███ Plaintiffs should not be permitted to effectuate through inaction the very forfeiture of privilege that clawback agreements were designed to avoid.

It also defies sense that, under Plaintiff's interpretation of the Protective Order, a party may submit an unexplained document under seal to the Court and then move to compel its production a month later. No evidence exists that either the parties or the Court contemplated such an artificially disjointed and time-consuming procedure to simply decide whether a document is privileged. The fact that the Protective Order permits the party to retain record of the document's Bates number, author, recipients, and date merely means that the party need not draft its reply memorandum and prepare for any oral argument in a vacuum of information, and should not mean that the party may postpone motion practice for thirty days based on whim.[5]

Even setting aside Warner's failure to seek relief in timely fashion, no dispute exists that Warner failed to file the "WB Links" document under seal with the Court within five days of Hotfile's clawback request as required by the Protective Order. Hotfile clawed back the "WB Links" document (bearing Bates number HF02866338) and "all copies" of that document on November 28, 2011. E-mail from T. Schoenberg to D. Pozza of 11/28/11 [Docket No. 206-2]. Warner filed the document under seal on December 12, 2011 [Docket No. 181-4]. If Warner had filed the document under seal by December 5, 2011 as required by the Protective Order, the disputed testimony and waiver would not have occurred. Warner disputes none of this.

Instead, Warner points out that Hotfile clawed back an identical *copy* of the "WB Links" document bearing Bates number HF00036777 on December 3, 2011. Opp. at 16-17. Warner argues that this notice – which Hotfile served in a surfeit of caution – restarted the five-day deadline for sealing the *original* document clawed back five days before. Id. This defies reason.

As a threshold matter, Warner did not submit the copy of the "WB Links" document (HF00036777) to the Court and has never moved for that document's production. Warner cannot persuasively defend its conduct based upon what it *could* have done.

---

[5] Warner contends that Hotfile's reading of the Protective Order would require addition of a new comma. Opp. at 16. While Hotfile disagrees, the parties were not exactly scrupulous about punctuating the clawback paragraph submitted to the Court for approval. *E.g.*, Protective Order ¶ 20 ("Nothing in this Order,[sic] shall preclude a party from arguing that . . . ").

**FILED UNDER SEAL**               CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

Moreover, Hotfile clawed back "all copies" of the "WB Links" document on November 28, 2011. Concomitantly, the Protective Order required destruction of "the specified *information*" in the document as well as "any copies" of that information. *See* Fed. R. Civ. P. 26(b)(5)(B) (incorporated into Protective Order [Docket No. 68] ¶ 20). Warner disrespects this Court's Order by suggesting that printing the same information on different numbered paper should be the decisive factor in its favor on this motion. Opp. at 16-17.

The Report and Recommendation nowhere discusses the fact that Warner filed its motion and sealed the "WB Links" document one week after the court-ordered deadline – *i.e.*, one week after such action could have obviated this entire dispute. For this reason alone, Warner's motion should have been denied.

**3.     Warner Violated Its Ethical Obligations By Exploiting the "WB Links" Document When It Reasonably Should Have Recognized The Document As Protected Work-Product**

While acknowledging the obligation of attorney to notify opposing counsel regarding production of any document which the receiving attorney reasonably should have known to be inadvertently produced, Fla. R. Prof. Conduct 4-4.4(b), Warner argues that it justifiably did not recognize the "WB Links" document as protected work-product when it received the document on June 17, 2011. Opp. at 17-18. However, no reason existed for Hotfile to possess a list of Warner's wrongful takedowns other than to assist litigation counsel in pursuing Hotfile's "wrongful takedown" claim first disclosed to Warner on April 5, 2011. As Warner knew from Hotfile's production, Hotfile did not maintain a list of wrongful takedowns by any other entity.

In its Opposition, Warner argues that, *six months after receiving the document*, Warner learned at Anton Titov's deposition that the document "was done largely outside the purview of counsel." Opp. at 17-18. As a threshold matter, what Warner supposedly learned in December cannot justify their inaction in June. Moreover, *Warner's assertion is patently false*. ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Nothing suggests that Hotfile created the document before litigation counsel directed the investigation on March 2, 2011. Obj. at 16 n.10.

Warner then asserts that it cannot be blamed for failing to recognize the privileged nature of the "WB Links" document when Hotfile's own counsel did not object to use of the document at Mr. Titov's deposition. Opp. at 18. Warner blinds itself to Hotfile's repeated objections. Obj.

6

**FILED UNDER SEAL**                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

at 8-9.  Moreover, Hotfile's counsel had no reason to believe that Warner would flout this Court's Order and examine Mr. Titov using a document clawed back in two redundant requests over the course of the preceding week.

Warner then attempts to downplay the fact that it knew for months after production of the "WB Links" document that Hotfile had already clawed back another compilation of links wrongly taken down by Warner – a document circulated by Hotfile thirty-seven minutes after the "WB Links" document.  Opp. at 18-19.  While Warner points out that this second document (hereinafter "HF02159110")[6] bore the legend "Attorney Work Product," that legend only makes the privileged nature of the related and closely-contemporaneous "WB Links" document more obvious, not less.  Warner then argues that it did not realize in examining HF02159110 that the document compiled Warner's wrongful takedowns at the request of counsel because the document has twelve lines of Bulgarian text – even though HF02159110 is overwhelmingly comprised of a three-page single-spaced English-language list of files with the English-language title, "***Warner [B]ros. account misuse***."  Thompson Obj. Decl., Ex. 1.  If a dozen lines of Bulgarian could so defeat Warner's capabilities of deduction, Warner never would have sought to exploit the "WB Links" document, which has no English language explanation whatsoever.  Warner then argues that it promptly destroyed HF02159110 and thus had no occasion to connect it to the "WB Links" document.  Opp. at 18.  However, having learned of Hotfile's compilation of hundreds of wrongful takedowns by Warner at the direction of counsel during the morning of March 10, 2011, Warner cannot credibly claim ignorance of that fact in subsequently interrogating Hotfile on that very morning's activities.

Ethics are not an "absurdity." Opp. at 18.  They are not a "sideshow." *Id.* at 19.  Enforcement of ethical rules is not a matter of "personal animosity." *Id.* at 20.  Here, the Report and Recommendation nowhere analyzed Florida Rule of Professional Conduct 4-4.4(b) or Warner's violation of it, even though the alleged forfeiture of Hotfile's privilege could never have occurred despite Warner's misconduct.  Again – independent of any other violation of this Court's requirements – this wrongdoing warranted denial of Warner's motion.

---

[6] HF02159110 appears as Exhibit 1 to the Declaration Of Roderick M. Thompson In Support Of Hotfile's Objections To Magistrate Judge's Order Regarding Plaintiffs' Motion To Compel Production Of Titov Deposition Ex. 27, filed January 27, 2011 ("Thompson Obj. Decl.").

FILED UNDER SEAL                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

    **4.**    **Warner Violates The Protective Order By Relying On The Circumstances Of Hotfile's Production As The Basis For Its Motion**

Prior to the amendment of Federal Rule of Evidence 502 in 2008 to effectuate clawback agreements, case law governing waiver of privilege "required analysis of the *circumstances* surrounding the [disputed] production, including the number of documents produced in discovery and the care with which the pre-production document review was performed." *Coburn Grp, LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1037-1038 (N.D. Ill. 2009) (emphasis added). Now, in the presence of a clawback agreement, the level of care of the producing party bears no relevance whatsoever. *Rally Mfg., Inc. v. Fed-Mogul Corp.*, No. 10-23791-CIV, 2011 WL 2938270, at *4 (S.D. Fla. July 21, 2011); *U.S. v. Sensient Colors, Inc.*, 2009 WL 2905474, at *2 n.6 (D.N.J. Sept. 9, 2009). So long as the party did not *intend* to produce the document in pursuit – say, in pursuit of an "advice of counsel" defense – a receiving party "cannot assert [waiver]." Fed. R. Evid. 502 (Adv. Comm. Notes).

Here, the parties agreed to a clawback provision. Docket No. 68 ¶ 20. Each party agreed that it "may not assert as a ground for the entering of [an order compelling production] the fact or circumstances of the inadvertent production." *Id.* Thus, nothing about Hotfile's level of care in inadvertently producing the "WB Links" document can possibly have any bearing on these proceedings. Nevertheless, even as recently as its Opposition, Warner *still* argues that Hotfile "failed to take reasonable steps to prevent disclosure" of the document. Opp. at 1, 7-12. This lengthy argument not only lacks relevance, but violates the explicit terms of this Court's Order.

Warner attempts to reintroduce a "reasonable care" analysis into the Protective Order based on the provision that "[n]othing . . . shall preclude a party from arguing that the production of the allegedly inadvertently produced document was not inadvertent." Opp. at 19. However, this sentence merely permits Warner to proffer any available evidence to contend that Hotfile's production was *intentional*. *See Coburn*, 640 F. Supp. 2d at 1038 ("Rule 502 contrasts a waiver that is *intentional* with a disclosure that is *inadvertent*."). It does not mean that, having just excluded evidence of the circumstances of inadvertent production to prove waiver in one sentence of the Protective Order, the parties and the Court readmitted precisely such evidence in the very next sentence.

Warner violates the Protective Order by arguing that the circumstances of Hotfile's production warrant forfeiture of Hotfile's work-product protection. For this reason alone, its motion should be denied.

**FILED UNDER SEAL**                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

### B.      After Five Briefs, Warner Still Appears Oblivious To Its Reliance Upon The Wrong Subsection Of Federal Rule Of Evidence 502

As it has done in prior briefing, Warner bases its Opposition on Federal Rule of Evidence 502(b) and related cases, even expressing puzzlement that Hotfile's papers do not do the same. Opp. at 1-12; *see* Opp. at 7 ("Oddly, Hotfile does not address the requirements of Rule 502[b] in its Objections."). This case has nothing to do with Rule 502(b). That Rule governs waiver by inadvertent disclosure *in the absence of a clawback agreement*. *Rajala v. McGuire Woods*, 2010 WL 2949582 at *4 (D. Kan. July 22, 2010). While Hotfile has taken reasonable steps to both prevent inadvertent disclosure and rectify the instant disclosure under Rule 502(b) and thus should prevail even under Warner's fundamentally wrongheaded argument, *see* Obj. at 5-6, it is "clear that subsections (d) and (e) allow for the enforcement of clawback provisions and agreements." *Id* at *4; *see* Fed. R. Evid. 502(e) ("An agreement on the effect of disclosure in a federal proceeding is binding . . . on the parties to the agreement"). With the exception of *Board of Trustees v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 851-52 (E.D. Mich. 2010) – which ruled against waiver and thus in Hotfile's favor – not one of Warner's cases analyzes a clawback agreement after enactment of Rule 502.

Between them, the parties have found only one case within the Eleventh Circuit addressing operation of a clawback provision after enactment of Rule 502. In *Rally Mfg., Inc. v. Federal-Mogul Corp.*, No. 10-23791-CIV, 2011 WL 2938270, at *4 (S.D. Fla. July 21, 2011), Magistrate Judge Torres confronted a claim of waiver resulting from inadvertent production coupled with delay in asserting protection. *Id.* Citing the parties' clawback provision, the court refused to inquire further into the steps taken by the producing party to prevent disclosure and rectify the error. *Id.* Instead of conducting the Rule 502(b) inquiry demanded by Warner here, the court enforced the right of the producing party to claw back the disputed document without qualification. *See id.* ("the Protective Order is controlling over the waiver issue"). While Warner derides Magistrate Judge Torres' decision as an "outlier," Opp. at 11, it is actually the single most applicable authority here by a great distance.

Misled by Warner, the Magistrate Judge based his Report and Recommendation on Federal Rule of Evidence 502(b). Docket No. 306 at 5-8. Instead of conducting an inquiry into Hotfile's reasonableness such as would befit cases without clawback agreements, the Magistrate Judge should have ended the inquiry after correctly deeming Hotfile's production inadvertent, *id.* at 4-5, given that the parties' agreement unambiguously stated that "[i]nadvertent production of

9

**FILED UNDER SEAL**                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

any document . . . will *not* be deemed to waive any privilege or work product protection."
Protective Order [Docket No. 68] ¶ 20. Warner thus caused the Magistrate Judge's error here.

### C.   The Rules Explicitly Preserve Hotfile's Claim Of Work-Product Protection Pending Judicial Resolution – Rendering Facially Invalid Warner's Assertion Of Post-Hearing Waiver

A party "*must not use or disclose [clawed-back] information until the claim is*
*resolved.*" Fed. R. Civ. P. 26(b)(5)(B); *see* Protective Order ¶ 20. Nonetheless, pending
resolution of this Objection, Warner moved for summary judgment based on the "WB Links"
document. *See* Warner Bros. Statement Of Uncontroverted Facts Supp. Mot. Summ. Judg. (filed
2/10/12) at 4. Warner's behavior now openly flouts the Protective Order.

Warner argues that Hotfile waived the privilege over the "WB Links" document in the
past nine weeks by failing to seek a stay of the Magistrate Judge's ruling. Opp. at 12-14.
However, Rule 26(b)(5)(B) states that a party in Warner's position may not use clawed-back
information until the claim of protection is resolved, and here Hotfile filed timely objections to
the Magistrate Judge's ruling. No case cited by Warner states that a claim is "resolved" before
the Presiding Judge can even act, and before an Objection is even fully briefed. *Id.* The fact that
Hotfile did not seek to *stay* the Magistrate Judge's ruling did not make the issue *resolved* under
the Rules. Warner cannot credibly dispute that a decision only "becomes final at the conclusion
of direct review or the expiration of the time for seeking such review." *Gonzalez v. Thaler*, 132
S. Ct. 641, 653 (2012) (citation omitted). Rather than proving waiver by Hotfile, Warner's
recent behavior only violates the Protective Order – again.

Warner also argues that Hotfile waived work-product protection because the court
reporter maintains a copy of the "WB Links" document. Opp. at 13. No serious dispute exists
that the court reporter would expunge any record of the "WB Links" document if Warner would
join Hotfile in requesting its destruction. Indeed, the Protective Order obligates Warner to do so.
Protective Order ¶ 20. Warner cannot credibly fault Hotfile for Warner's inaction.[7]

## IV.   CONCLUSION

For the foregoing reasons, Warner's motion should be denied, the Report and
Recommendation set aside, and all proffers related to Titov Exhibit 27 excluded from evidence.

---

[7] Warner also argues that Hotfile waived any privilege by failing to object to Warner's use of the
document at Mr. Titov's deposition. Warner ignores Hotfile's timely objections. Obj. at 8-9, 20.

FILED UNDER SEAL                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DATED:  March 19, 2012              Respectfully submitted,

                                   Janet T. Munn, Esq. Fla. Bar No. 501281
                                   Email: jmunn@rascoklock.com
                                   Rasco Klock
                                   283 Catalonia Avenue, Suite 200
                                   Coral Gables, Fl 33134
                                   Telephone:  305.476.7101
                                   Telecopy: 305.476.7102

                                   And

                                   Roderick M. Thompson, Esq. (admitted *pro hac vice*)
                                   Email:  rthompson@fbm.com
                                   Andrew Leibnitz, Esq. (admitted *pro hac vice*)
                                   Email:  aleibnitz@fbm.com
                                   Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
                                   Email:  tschoenberg@fbm.com
                                   Deepak Gupta, Esq. (admitted *pro hac vice*)
                                   Email:  dgupta@fbm.com
                                   Janel Thamkul, Esq. (admitted *pro hac vice*)
                                   Email:  jthamkul@fbm.com
                                   FARELLA BRAUN + MARTEL LLP
                                   235 Montgomery St.
                                   San Francisco, CA  94104
                                   Telephone:  415.954.4400
                                   Telecopy: 415.954.4480

                                   And

                                   Valentin Gurvits, Esq. (admitted *pro hac vice*)
                                   Email: vgurvits@bostonlawgroup.com
                                   BOSTON LAW GROUP
                                   825 Beacon Street, Suite 20
                                   Newton Center, MA 02459
                                   Telephone:  617.928.1800
                                   Telecopy:  617.928.1802

                                   *Counsel for Defendants Hotfile Corporation
                                     and Anton Titov*

11

**FILED UNDER SEAL**                   CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2012, a true and correct copy of the foregoing

document, was filed conventionally under seal and served on all counsel of record identified

below via e-mail and via FedEx.

Karen L. Stetson, Esq., Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Telephone: 818.935.5812

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

By: _____
        Janet T. Munn

# EXHIBIT A

Highly Confidential

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20427-WILLIAMS/TURNOFF

- - - - - - - - - - - - - - - - - - - - - - - - - - -

DISNEY ENTERPRISES,
INC., TWENTIETH CENTURY
FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP,
COLUMBIA PICTURES
INDUSTRIES, INC., and
WARNER BROS.
ENTERTAINMENT, INC.,

       Plaintiff,

v.

HOTFILE CORP., ANTON
TITOV, and DOES 1-10,

       Defendants.


HOTFILE CORP.,

       Counterclaimant,

v.

WARNER BROS ENTERTAINMENT
INC.,

       Counterdefendant.

- - - - - - - - - - - - - - - - - - - - - - - - - -

VOLUME I
H I G H L Y   C O N F I D E N T I A L
(Pursuant to protective order, the following
transcript has been designated highly confidential)

30(b)(6) DEPOSITION OF ANTON TITOV
Radisson Blu Hotel
Sofia, Bulgaria
Monday, December 5, 2011
Job Number: 44174

Highly Confidential

Page 2

```
 1                    A P P E A R A N C E S

 2   ATTORNEY FOR THE PLAINTIFFS:

 3            JENNER & BLOCK
              BY:  STEVEN B. FABRIZIO, ESQ.
 4            1099 New York Avenue, NW
              Washington, DC  20001
 5

 6

 7

 8
     ATTORNEY FOR THE DEFENDANTS HOTFILE CORP.,
 9   AND ANTON TITOV:
              FARELLA, BRAUN & MARTEL
10            BY:  RODERICK M. THOMPSON, ESQ.
              235 Montgomery Street
11            San Francisco, California  94104

12

13
              BOSTON LAW GROUP
14            VALENTIN GURVITS
              825 Beacon Street
15            Newton Center, MA 02459

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential

```
                                                      Page 3

 1   Also present:

 2   Court reporter:

 3           Fiona Farson
             TSG Reporting
 4

 5   Videographer:

 6           Simon Rutson
             TSG Reporting
 7

 8   Interpreter:

 9           Assist. Prof. Boris Naimushin, Ph.D.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential

Page 167

1  A.  No, they did not.

2  Q.  Hotfile had identified what it believed to have been

3      mistakes in the notices by Warner throughout

4      February, March, April and even May of 2001; is that not

5      correct?

6  MR. THOMPSON:  I'm going to object to the extent that it

7      calls for work product information which commenced after

8      the date of early March 2011.

9          To the extent you can answer without revealing work

10     product information, you can do so.

11 A.  I don't think I can answer.

12 BY MR. FABRIZIO:

13 Q.  Okay.  Well, you identified what you believed to have

14     been mistakes made by Warner prior to early March 2001;

15     is that not correct?

16 A.  Yeah, I believe so.

17 Q.  Okay.  Did you ever bring those mistakes to the

18     attention of Warner prior to filing your counterclaim?

19 A.  Not directly, no.

20 Q.  Indirectly?

21 A.  It is my belief that at some point our counsel

22     communicated with Warner, who knew.

23 ██  ████████    ██████████████████████████████

   █
   ██  ████████  ████████

Highly Confidential



Page 168

Highly Confidential

Page 189

1                   HIGHLY CONFIDENTIAL
                  CERTIFICATE OF COURT REPORTER
2

3
     I, Fiona Farson, with TSG Reporting, hereby certify that the
4    testimony of the witness Anton Titov in the foregoing
     transcript, taken on Monday, December 5, 2011 was reported
5    by me in machine shorthand and was thereafter transcribed by
     me; and that the foregoing transcript is a true and accurate
6    verbatim record of the said testimony.

7
     I further certify that I am not a relative, employee,
8    counsel or financially involved with any of the parties to
     the within cause, nor am I an employee or relative of any
9    counsel for the parties, nor am I in any way interested in
     the outcome of the within cause.
10

11

12

13

14
     Signed:  ......................
15
     Fiona Farson
16
     Dated:    December 15th, 2011
17

18

19

20

21

22

23

24

25

Highly Confidential

Page 188

```
 1              HIGHLY CONFIDENTIAL
                CERTIFICATE OF DEPONENT
 2

 3
        I, ANTON TITOV, hereby certify that I have read the
 4  foregoing pages of my deposition of testimony taken in these
    proceedings on Monday, December 5, 2011, and, with the
 5  exception of the changes listed on the next page and/or
    corrections, if any, find them to be a true and accurate
 6  transcription thereof.

 7

 8

 9

10
    Signed: ......../..............
11
    Name:   ANTON TITOV
12
    Date:   1/29/2012..............
13

14

15

16

17

18

19

20

21

22

23

24

25
```

TSG Reporting – Worldwide      800-702-9580

Highly Confidential

Page 190

1           HIGHLY CONFIDENTIAL

2

3                E R R A T A

4           Deposition of ANTON TITOV

  Page/Line No.        Description              Reason for change
5    14:18       Eitinerum --> Itinerum        Correct transcription

6    14:20       EITINERUM --> ITINERUM        Correct transcription

7    14:21       internet --> intranet         Correct transcription

8    14:24    all in shelves --> online shops  Correct transcription

9    15:7      webcasting --> webhosting       Correct transcription

10   15:10     webcasting --> webhosting       Correct transcription

11   18:6         Ilan --> Elan               Correct transcription

12   20:9 Manix: M-A-N-I-X -> Maniax: M-A-N-I-A-X  Correct trans.

13   35:16    unimportant --> important       Correct transcription

14   35:17   he show choice --> he may choose  Clarify record

15   37:6     Stillings --> Stallings          Correct transcription

16   37:8    S-T-I-L-L-I-N-G-S --> S-T-A-L-L-I-N-G-S  Correct trans.

17   38:3    qualification --> collocation     Correct transcription

18   39:2    Equinix bandwith --> Equinix, bandwith  Clarify record

19

20  Signed:   ....................

21  Name:   ANTON TITOV

22  Date:   ....................

23

24

25

Highly Confidential

1                    HIGHLY CONFIDENTIAL

2

3                       E R R A T A

                  Deposition of ANTON TITOV
4

   Page/Line No.      Description           Reason for change
5
   ─────────────────────────────────────────────────────────
6    44:1            IT --> IP              Correct transcription

7    46:16      with the grade, --> would degrade  Correct trans.

8    46:17  the traffic flows into there from --> when the traffic

9          flows into their network from      Correct transcription

10     47:3 We can say any old --> We cannot say we want  Correct trans.

11   57:23       costing --> hosting          Correct transcription

12   61:15       Vlad --> ███████             Correct transcription

13   65:24   Konstantin Lucyan --> Constantin Luchian  Correct trans.

14   77:11       lemur --> Lima              Correct transcription

15   89:6        SA --> Yes                  Correct transcription

16   89:21    I know what --> I don't know what   Correct trans.

17   99:11       Panek --> Penev             Correct transcription

18   109:23   Chubarov --> Chuburov          Correct transcription

19

20   Signed:   ...................

21   Name:   ANTON TITOV

22   Date:   ...................

23

24

25

Highly Confidential

Page 190

1                    HIGHLY CONFIDENTIAL

2

3                       E R R A T A

4            Deposition of ANTON TITOV

     Page/Line No.       Description            Reason for change
5    110:1 Mr. Ianakov manages -->       ███  ██ █████, manage
6                                             Conform to facts

7    111:15   SecPay --> SegPay              Correct transcription

8    119:5    Limewire --> Limelight         Correct transcription

9    119:13   Limewire --> Limelight         Correct transcription

10   126:10   I was there --> I checked      Correct transcription

11   128:17   And that is tradition the Blue Ant contract is to -->

12           And the  ███  ██ contract is still      Correct transcription

13   128:18   enforce --> in force           Correct transcription

14   138:8    Ignitov --> Ignatov            Correct transcription

15   138:10   I-G-N-I-T-O-V --> I-G-N-A-T-O-V    Correct transcription

16   65:24, 66:3, 66:8, 67:4, 68:3, Lucyan --> Luchian    Correct trans.

17   68:16, 70:13, 70:19, 70:21,
     71:13, 71:18, 72:3, 72:7, 72:9,                "

18   74:3, 75:10, 75:18, 76:4, 76:5, 76:8           "

19   72:17    Lucyan's --> Luchian's         Correct transcription

20   Signed:  ..................

21   Name:    ANTON TITOV

22   Date:    8/20/2012........

23

24

25

                 TSG Reporting - Worldwide      800-702-9580