# EXHIBIT A

# PUBLIC VERSION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
_____/

HOTFILE CORP.,

    *Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

    *Counter-Defendant.*
_____/

**REPLY MEMORANDUM OF DEFENDANT HOTFILE CORPORATION
IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
UNDER THE DMCA'S SAFE HARBOR**

26501\2997133.1

FILED UNDER SEAL                                   CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## CITATION LEGEND

1.      "PSUF" shall refer to specific paragraph numbers of Plaintiffs' Statement of Uncontroverted Facts.

2.      "DSUF" shall refer to specific paragraph numbers of Statement of Undisputed Material Facts In Support of Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

3.      "TSUF" shall refer to specific paragraph numbers of Statement of Undisputed Material Facts In Support of Motion of Anton Titov's Motion for Summary Judgment.

4.      "DRSF" shall refer to specific paragraph numbers of the Statement of Facts of Defendants Hotfile Corporation and Anton Titov In Opposition to Plaintiffs' Statement of Uncontroverted Facts and Defendants' Statement of Additional Material Facts.

5.      "Foster Decl." shall refer to the declaration of Dr. Ian Foster in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012.

6.      "Yeh Decl." shall refer to the declaration of Jennifer V. Yeh in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012.

7.      "Titov Decl." shall refer to the declaration of Anton Titov in support of Defendants' Motion for Summary Judgment.

8.      "Titov Opp. Decl." shall refer to the declaration of Anton Titov in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

9.      "Leibnitz Decl." shall refer to the declaration of Andrew Leibnitz in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

10.     "Gupta Decl." shall refer to the declaration of Deepak Gupta in support of Defendants' Motion for Summary Judgment.

11.     "Schoenberg Decl." shall refer to the declaration of Anthony Schoenberg in support of Anton Titov's Motion for Summary Judgment.

12.     "Levy Decl." shall refer to the declaration of Dr. Daniel S. Levy in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

13.     "Cromarty Decl." shall refer to the declaration of Dr. Andrew Cromarty in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

FILED UNDER SEAL                          CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

14.     "Boyle Decl." shall refer to the declaration of Dr. James Boyle in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

15.     "Leibnitz Ex. __," shall refer to exhibits attached to the Leibnitz Declaration.

16.     "Yeh Ex. __," shall refer to exhibits attached to the Yeh Declaration.

17.     "Gupta Ex. __," shall refer to exhibits attached to the Gupta Declaration.

18.     "Schoenberg Ex. __," shall refer to exhibits attached to the Schoenberg Declaration.

19.     "Boyle Ex. __," shall refer to exhibits attached to the Boyle Declaration.

20.     "Thamkul Decl." shall refer to the declaration of Janel Thamkul in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

21.     "Thamkul Ex. __," shall refer to exhibits attached to the Thamkul Declaration.

22.     "Titov Reply Decl." shall refer to the declaration of Anton Titov in support of Defendants' Reply in support of their Motion for Partial Summary Judgment.

23.     "DMSJ" shall refer to the Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

24.     "DOPMSJ" shall refer to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov.

25.     "PODMSJ" shall refer to Plaintiffs' Opposition to the Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

26.     "PMSJ" shall refer to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov.

27.     "PCFDMSJ" shall refer to Plaintiffs' Counterstatement of Material Facts in Opposition to Defendants' Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

FILED UNDER SEAL											CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Plaintiffs Concede That Hotfile Satisfies Almost Every DMCA Requirement in the Post-Complaint Period and Their Half-Hearted Attempt to Create A Triable Issue As To A Few Remaining DMCA Requirements Fails .................................................................................................. 1

    B. Plaintiffs' Argument That Alleged Pre-Complaint Inducements Preclude Any Post-Complaint Safe Harbor Fails As A Matter Of Law ............................... 5

    C. Plaintiffs Vigorously Litigated Hotfile's Post-Complaint Repeat Infringer Policy, And Hotfile Is Entitled To The Certainty Of Safe Harbor For Its Continuing Operations ....................................................................................... 6

    D. Courts Regularly Grant Partial Summary Judgment By Time Period ................... 8

III. CONCLUSION .............................................................................................................. 10

FILED UNDER SEAL                                     CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Alvarez v. Hill,*
   518 F.3d 1152 (9th Cir. 2008) .................................................................................... 6

*Bishop v. Allied Van Lines, Inc.,*
   2010 WL 5066786 (M.D. Fla. Dec. 18, 2009) ........................................................... 9

*Capitol Records v. MP3 Tunes,*
   2011 WL 5104616 (S.D.N.Y. Oct. 25, 2011) ....................................................... 4, 10

*CIVIX-DDI, L.L.C. v. Cellco Partnership,*
   387 F. Supp. 2d 869 (N.D. Ill. 2005) .......................................................................... 8

*Compuware Corp. v. Health Care Service Corp.,*
   203 F. Supp. 2d 952 (N.D. Ill. 2002) .......................................................................... 9

*DF&R Corp. v. American International Pacific Industries Corp.,*
   830 F. Supp. 500 (D. Minn. 1993) .............................................................................. 8

*Eagle Comtronics, Inc. v. John Mezzalinua Associates,*
   198 F.R.D. 351 (N.D.N.Y. 2000) ............................................................................... 8

*Edwards v. Shalala,*
   64 F.3d 601 (11th Cir. 1995) ...................................................................................... 9

*Ellison v. Robertson,*
   357 F.3d 1072 (9th Cir. 2004) ............................................................................. 5, 10

*EpicRealm Licensing, LP v. Franklin Covey Co.,*
   644 F. Supp. 2d 806 (E.D. Tex. 2008)) ...................................................................... 9

*Feldman v. Cutting,*
   2009 WL 4021364 (S.D. Fla. Nov. 19, 2009) ........................................................... 9

*Glenn v. Lanier,*
   2010 WL 1380164 (N.D. Fla. March 31, 2010) ........................................................ 3

*Hollingshead v. Windley,*
   2008 WL 4809221 (S.D. Ala. Oct. 31, 2008) ............................................................ 6

*ICU Medical, Inc. v. B. Braun Medical, Inc.,*
   2005 WL 588341, n.1, **10-11 (N.D. Cal. March 14, 2005) .................................... 8

*IO Group, Inc. v. Veoh Networks, Inc.,*
   586 F. Supp. 2d 1132 (N.D. Cal. 2008) .................................................................. 3, 4

*Kitzmann v. Local 619-M Graphic Communications Conference,*
   2011 WL 944379 (6th Cir. Mar. 21, 2011) ................................................................ 7

*Newman-Green, Inc. v. Alfonzo-Larrain R.,*
   612 F. Supp. 1434 (N.D. Ill. 1985) ........................................................................... 10

FILED UNDER SEAL                               CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## TABLE OF AUTHORITIES
(continued)

Page

*Ortiz v. Lopez,*
    688 F. Supp. 2d 1072 (E.D. Cal. 2010) .................................................................................. 8

*Paddington Partners v. Bouchard,*
    34 F. 3d 1132 (2d Cir. 1994) .................................................................................................. 3

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) ......................................................................................... 2, 10

*Perfect 10, Inc. v. CCBill LLC,*
    488 F.3d 1102 (9th Cir. 2007) ............................................................................................... 3

*Perfect 10, Inc. v. Google, Inc.,*
    No. CV 04-9484 (C.D. Cal. July 16, 2010) ......................................................................... 10

*PNC Bank v. Hall, Icoe, LLC,*
    2010 WL 3947506 (S.D. Ind. Oct. 7, 2010) .......................................................................... 6

*Price v. M&H Valve Co.,*
    2006 WL 89723 (11th Cir. Apr. 7, 2006) .............................................................................. 6

*Rasmussen v. City of New York,*
    766 F. Supp. 2d 399 (E.D.N.Y. 2011) ................................................................................. 10

*Rozenblum v. Ocean Beach Properties,*
    436 F. Supp. 2d 1351 (S.D. Fla. 2006) .................................................................................. 9

*SEC v. Liberty Capital Group,*
    75 F. Supp.2d 1160 (W.D. Wash. 1999) .............................................................................. 10

*Shi v. Carlson,*
    2010 WL 3988724 (9th Cir. Sept. 13, 2010) ......................................................................... 7

*Solliday v. Federal Officers,*
    2011 WL 414283 (11th Cir. Feb. 9, 2011) ............................................................................ 7

*Steger v. General Elec. Co.,*
    318 F.3d 1066 (11th Cir. 2003) ............................................................................................. 6

*Stillman v. Travelers Ins. Co.,*
    88 F.3d 911 (11th Cir. 1996) ................................................................................................. 9

*Thompson v. Geo Marine, Inc.,*
    2006 WL 2640361 (M.D. Ala. Sept. 14, 2006) ..................................................................... 3

*Veliz v. Cintas Corp.,*
    2009 WL 1110416 (N.D. Cal. Apr. 23, 2009) ....................................................................... 9

*Viacom v. YouTube,*
    718 F. Supp. 2d 514 (S.D.N.Y. 2010) .................................................................................... 5

FILED UNDER SEAL	CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

# TABLE OF AUTHORITIES
(continued)

**Page**

*York International Corp. v. Liberty Mutual Ins. Co.*,
  2011 WL 2111989 (M.D. Pa. May 26, 2011) .................................................................... 9

*Youngblood v. Vistronix, Inc.*,
  2006 WL 2092636 (D.D.C. July 27, 2006) ...................................................................... 9

*Zimmer Technology, Inc. v. Howmedica Osteonics Corp.*,
  476 F. Supp.2d 1024 (N.D. Ind. 2007) ............................................................................ 8

### FEDERAL STATUTES

17 U.S.C. §512 – Online Copyright Infringement Liability Limitation Act
  (DMCA Safe Harbor) ................................................................................................. 5, 6

### FEDERAL RULES

Federal Rules of Civil Procedure 15 and 56 .................................................................. 6, 8, 9

### TREATISES

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure
  (3d ed. 2011) .................................................................................................................. 3

FILED UNDER SEAL                                CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## I. INTRODUCTION

Hotfile has maintained throughout this litigation that it is entitled to safe harbor protection under the DMCA. Now, having taken extensive discovery, and setting out their best case in a blizzard of summary judgment filings (so far supported by 17 separate declarations with 199 exhibits, totaling some 25,226 pages in all), Plaintiffs cannot seriously question that Hotfile currently qualifies for the safe harbor protection. Instead of addressing the merits of Hotfile's defense, Plaintiffs contend that Hotfile's current policies are not at issue and urge the Court not to reach this pivotal defense. Their assertions are belied by the record and common sense.

Plaintiffs strenuously litigated the issue for a year. Their Complaint accused Hotfile of "continuing" infringement, and they have taken extensive discovery about every detail of Hotfile's post-Complaint conduct. Having imposed extraordinary discovery burdens and costs on Hotfile, Plaintiffs cannot be allowed to backpedal to avoid an adverse ruling. Hotfile's very legitimacy has been challenged by Plaintiffs' unfounded allegations. It is entitled to a ruling on the merits, that at all time since adopting its three-strikes repeat infringer policy on February 18, 2011, it is protected by the DMCA safe harbor as a matter of law. (Hotfile is also entitled to protection before that date, but acknowledges the earlier period raises factual disputes for trial.)

## II. ARGUMENT

In May 2011, Hotfile requested leave to file an early summary judgment motion directed to the safe harbor issue. D.E. # 70, 5/27/11. Plaintiffs vehemently opposed, and the Court denied Hotfile's request ruling that "it is better if the factual dispute is handled at once, after discovery". D.E. # 133, 8/30/11, p. 1, n. 1. Discovery is now complete. There is no genuine factual dispute as to Hotfile's safe harbor protection under its three-strikes policy implemented on February 18, 2011. Plaintiffs' Opposition all but concedes as much; it seeks to divert attention away from the real issue—that Hotfile adopted and reasonably implemented a three-strikes repeat infringer policy—by discussing (1) *other* important improvements Hotfile has recently made (e.g., video fingerprinting) that are not essential to the safe harbor, and (2) supposed procedural hurdles to the Court's consideration of the issue.

### A. Plaintiffs Concede That Hotfile Satisfies Almost Every DMCA Requirement in the Post-Complaint Period, and Their Half-Hearted Attempt to Create A Triable Issue As To A Few Remaining DMCA Requirements Fails.

Plaintiffs' Opposition Memorandum does not contest Hotfile's entitlement to the DMCA safe harbor on the merits. Their Counterstatement of Facts begrudgingly concedes almost all of

-1-

FILED UNDER SEAL                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

the safe harbor requirements. It is undisputed that Hotfile has: qualified at least since December 2009 as a DMCA "service provider" (512(k)(1)(B)) (PCFDMSJ #1); maintained a registered DMCA agent for receipt of takedown notices (and SRA requests) with the Copyright Office and on its website (512(c)(2)) (PCFDMSJ #3-5)[1]; warned repeat infringers they would be terminated in its Terms of Service and Intellectual Property Policy (512(i) (PCFDMSJ #5)); and accommodated and did not interfere with standard technical measures (512(i)(1)(B)) (PCFDMSJ #24). Furthermore, Plaintiffs admit that "Hotfile took down each file-in-suit for which it received a takedown notice after February 18, 2011 within 48 hours of Hotfile's receiving the notice of infringement." 512(c)(1)(C) (expeditious takedown) (PCFDMSJ #18).[2] Similarly, the Studios do not dispute Hotfile's authorities stating that absent knowledge of particular infringements, it has not had the "right and ability to control infringement." 512(c)(1)(B); *see* DMSJ at 16-18. Nor do they dispute that Hotfile "derives revenues *exclusively* from premium access fees." PCFDMSJ #19. Because those fees give the user the same faster service and unlimited storage regardless of the content of files, such fees do not constitute a direct financial benefit under the DMCA. DMSJ at 16-19.[3] None of these material facts are genuinely disputed, leaving only the requirement that Hotfile reasonably implemented a repeat infringer policy.

Plaintiffs' Opposition does not address directly the reasonableness of Hotfile's adoption of a strikes-based repeat infringer policy on February 18, 2011. Instead it conflates that change with Hotfile's other post-Complaint improvements (implementation of Vobile fingerprinting and

---

[1] The Studios' argument about Hotfile's "P.O. Box" (PCFDMSJ # 3), which is based on an obscure regulation, demonstrates the lengths to which they must go to concoct a single disputed fact. Hotfile's registration provided "substantially the following information": "(A) the name, address [a P.O. Box], phone number and electronic mail address" of its agent. 512(c) requires only substantial compliance, and a P.O. Box is "substantially" an address by any definition. "[T]echnical deficiencies "are insubstantial…[where] they would not prevent a copyright owner from efficiently communicating with the designated agent and vice versa." *Perfect 10, Inc. v. Amazon.com, Inc. et al.*, No. CV 05-4753 AHM (SHx), 2009 WL 1334364, at *8 (C.D. Cal. May 12, 2009). *See also*, DOPMSJ, n. 15 (further rebutting P.O. Box argument). The abuse email address has been undisputedly available on the website since April 2009. (PCFDMSJ 4.)

[2] Hotfile has already addressed Plaintiffs' "actual" and "red flag" knowledge arguments under 512(c)(1)(A) as a matter of law. PCFDMSJ 14; DMSJ 12-15; DOPMSJ at 15-19 (*general* facts that fail to establish subjective *awareness* of *specific infringements* do not disqualify; distinguishing "LastDL" mentioned in Yeh Ex. 144).

[3] So long as *either* the "no direct financial benefit" *or* the "no right and ability to control" prong of 512(c)(1)(B) is satisfied, Hotfile remains eligible for safe harbor.

FILED UNDER SEAL                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

its February 2012 policy modifications) to misleadingly suggest that summary judgment depends on these more recent changes. PODMSJ at 4-5. It does not. By this motion, Hotfile expressly seeks summary judgment for the entire period "since its revamped repeat infringer policy was instituted in February 2011..." (DMSJ at 2), not on a "piecemeal" basis for each improvement made since then in responding to Plaintiffs' continuing criticisms. These post-Complaint enhancements (DMSJ at 9) are part of Hotfile's ongoing effort "to reduce, not foster, the incidence of copyright infringement on its website," and further confirm the reasonableness of Hotfile's three-strike policy in light of all circumstances. *IO Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1154 (N.D. Cal. 2008); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109-10 (9th Cir. 2007) ("[A]n implementation is reasonable if, under 'appropriate circumstances,' the service provider terminates users who repeatedly or blatantly infringe copyright.") Plaintiffs' emphasis on these recent enhancements, while ignoring the repeat infringer policy, is a diversion tactic.[4] Hotfile's strengthening of its countermeasures cannot *take away* the safe harbor (and had Hotfile not made these changes, the Studios would now, no doubt, be arguing that Hotfile had not done enough to "reform" its ways).

Buried in their Counterstatement of Facts, but not mentioned in their Opposition Memorandum itself, Plaintiffs mutedly argue that Hotfile's post-Complaint repeat infringer policy still falls short. *See* PCFDMSJ #21. Plaintiffs conspicuously make no legal argument on

---

[4] ███████████████████████████████████████████ Hotfile's February 2012 elimination of its website affiliate program, anonymous uploader functionality, and download rewards programs, may be verified simply by visiting Hotfile's website. Most revealing, Plaintiffs have not raised Rule 56(d) as a basis for opposing this Motion. This is a waiver. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) ("failure to file an affidavit under Rule 56(f) [now Rule 56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate...") (collecting cases); *Glenn v. Lanier*, No. 3:09cv1/MCR/MD, 2010 WL 1380164, at *4 (N.D. Fla. March 31, 2010) ("failure ... to seek relief under Rule 56(f) ... precludes him from claiming at this point that he was unable to fully respond to [] motion for summary judgment because he did not have the necessary evidence to do so."); *Thompson v. Geo Marine, Inc.*, No. 2:06-cv-420-WHA, 2006 WL 2640361, at *3 (M.D. Ala. Sept. 14, 2006) (same); *see also* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* §2741 (3d ed. 2011) ("The courts will not delay a case to allow discovery when the discovery sought could have been instituted earlier, especially when there is no reason to believe that it will lead to a denial of the motion.").

FILED UNDER SEAL                                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

the issue.[5] They do not attempt to rebut the strong authority finding three-strikes policies like Hotfile's DMCA-compliant as a matter of law. DMSJ at 20 (collecting cases). In the context of their own summary judgment motion, Plaintiffs affirmatively contend "what Hotfile should have done,… [was to] identif[y] the repeat infringers… [who] had accumulated three or more 'strikes'" and terminate them (PMSJ at 1; *see id.* at 19-20), thereby further conceding the point.

Plaintiffs' Counterstatement (PCF 21) asserts three flaws with Hotfile's post-Complaint strikes-policy, without supporting legal authority. First, they complain that, like every other policy upheld in the case law, Hotfile's policy terminates *uploaders* as opposed to *downloaders*. *See Capitol Records v. MP3 Tunes*, No. 07 Civ. 9931(WHP), 2011 WL 5104616, at *6 (S.D.N.Y. Oct. 25, 2011) (blatant infringers for 512(i) are "those who upload" not "users who download content for their personal use and are otherwise oblivious to the copyrights of others.") Even the UGC Principles, to which these Plaintiffs are signatories, only mandate *uploader* termination.[6] Second, they argue that non-registered "anonymous" users cannot be subject to a strikes counting policy. That issue is trivial at best. Exactly ▮ of the ▮ Plaintiffs' "verified" files-in-suit was anonymously uploaded. Titov Reply Decl. ¶ 3.[7] Finally, Hotfile's policy did not terminate website referral affiliates because Hotfile could not on its own readily identify referring websites (which include sites like Google and Jdownloader) as ***infringers***. *See* DOPMSJ 12-13; 18.[8]

---

[5] In a backhanded concession, Plaintiffs' Opposition ***Memorandum*** only advances the theory that Hotfile's ***pre***-Safe Harbor conduct (not its conduct after adopting the three strikes policy) may somehow be causing continuing harm. *See* II.B, *infra*. (Hotfile maintains it is entitled to pre-Complaint safe harbor, but has not sought summary judgment for that period.)

[6] "UGC Services should use reasonable efforts to track infringing ***uploads*** of copyrighted content by the same user and should use such information in the reasonable implementation of a repeat infringer termination policy. UGC Services should use reasonable efforts to prevent a terminated user from ***uploading*** audio and/or video content following termination, such as blocking re-use of verified email addresses." *See* Thamkul Ex. 1 (UGC Principle 11), ▮▮▮▮▮▮▮▮▮▮▮ )

[7] The DMCA requires termination only of "subscribers and account holders," (512(i)) which anonymous users by definition are not. *See also Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1145 (N.D. Cal. 2008) (no dispute that IP address blocking is ineffective and not required; hash blocking more than compensates).

[8] The Complaint did not ask for termination of referral affiliates as Plaintiffs suggest now; rather, it calls only for termination of repeat infringing *uploaders*. *See* Compl. ¶ 42. The UGC

-4-

FILED UNDER SEAL	CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

Plaintiffs' criticisms amount to a meaningless tautology—no repeat infringer policy can be perfect. There is no genuine issue that Hotfile adopted and reasonably implemented a repeat infringer policy, its three-strikes policy, as of February 18, 2011.

### B. Plaintiffs' Argument That Alleged Pre-Complaint Inducements Preclude Any Post-Complaint Safe Harbor Fails As A Matter Of Law.

Citing two peer-to-peer cases, neither of which found the DMCA safe harbor requirements satisfied at any point in time, and a patent case (not dealing with the Internet at all), Plaintiffs argue that alleged acts of inducement that allegedly occurred before the Complaint was filed should nullify Hotfile's undisputable post-Complaint adherence to the DMCA safe harbor requirements. Plaintiffs cite no authority – and Hotfile is aware of none – stating that DMCA safe harbor protection does not bar liability for alleged copyright infringement occurring after the service provider has satisfied all prerequisites. If allegations of acts of contributory or vicarious infringement somewhere in a site's past trumped the plain requirements of 17 U.S.C. § 512, the DMCA safe harbors' stated purpose of providing a layer of "certainty" and "clarification" over "evolving" doctrines of secondary liability would be completely undermined. (Gupta Decl. Ex. 1 at 2, 8, 19.) The DMCA defines "service providers" inclusively (17 U.S.C. § 512(k)(1)(B)) and looks to the policies and practices "in place *at the time* the alleged infringing activities were taking place." *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004)(emphasis added).

As Hotfile has already explained, the safe harbors apply to all forms of asserted copyright infringement liability. Grafting a separate inducement inquiry onto the safe harbor requirements would irretrievably undermine their purpose. *See* DOPMSJ at 20; *see also*, *Amicus Brief of Google, Inc.* (D.E. # 355-1) at 15-17. *Viacom v. YouTube*, 718 F. Supp. 2d 514, 525-26 (S.D.N.Y. 2010), rejected this very argument, holding, "The *Grokster* model does not comport with that of a service provider who furnishes a platform on which its users post and access all sorts of materials as they wish, while the provider is unaware of its content, but identifies an

---

Principles are in accordance. *Compare* n.6 and Thamkul Ex. 1 (UGC Principle 4 calls for services and Content Owners to ***work together*** to identify infringing link sites and "remove or block the links to such sites"; UGC Principle 7: "***Copyright Owners*** should provide to UGC Services URLs identifying online locations where content that is the subject of notice of infringement is found...") (emph. added). When Hotfile learned through discovery that its website referral affiliate program and anonymous upload features may have lessened the effectiveness of its repeat infringer policy, it terminated these programs altogether. These changes are a part of Hotfile's ongoing policy of improving its countermeasures and do not detract from the reasonableness of its February 18 policy.

-5-

FILED UNDER SEAL                                      CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

agent to receive complaints of infringement, and removes identified material when he learns it infringes. To such a provider, the DMCA gives a safe harbor."

### C. Plaintiffs Vigorously Litigated Hotfile's Post-Complaint Repeat Infringer Policy, And Hotfile Is Entitled To The Certainty Of Safe Harbor For Its Continuing Operations.

Plaintiffs' primary argument in opposition to this motion is built on a false premise. Contrary to Plaintiffs' representations, the issue of Hotfile's post complaint alleged liability for infringement *was undeniably both* "raised in the complaint [and] litigated in this case." PODMSJ at 3. Thus, Hotfile is not seeking an "advisory opinion." Plaintiffs' Complaint repeatedly states that Hotfile will *"continue"* to cause injury and infringe plaintiffs' copyrights and seeks a *prospective* remedy in the form of injunctive relief.[9] Compl. ¶¶ 57, 59 and 69. D.E. # 1. Even if the Complaint did not squarely raise the issue (it does), the Federal Rules specifically provide that matters litigated by the parties "must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2); *see Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (error for trial court to fail to address on summary judgment allegations raised by plaintiff's post-complaint filings).[10]

The parties extensively litigated the DMCA Safe Harbor issue, including, specifically, its application to post-Complaint facts. Plaintiffs demanded documents regarding disciplinary actions against users *"subsequent to Plaintiffs' filing of this action against Defendants on February 8, 2011."* See e.g., Thamkul Ex. 3 (Req. for Prod. 42 (emph. added)). In January and February 2012, Plaintiffs demanded and received a supplementation through January 26, 2012 (even after the close of fact discovery) of database records including "user strikes" and "user terminations" that they claimed "are relevant to Hotfile's DMCA defense." Thamkul Ex. 4 at 9

---

[9] As the DMCA limits injunctive relief under 17 U.S.C. § 512(j), the safe harbor question is important not only to bar post-Complaint damages but is also essential to define the scope of any potentially available injunctive relief Plaintiffs may seek.

[10] Federal courts routinely grant summary judgment on matters litigated by the parties even if not (as they are here) explicitly raised in the complaint. *Price v. M&H Valve Co.*, No. 05-15205, 2006 WL 89723, 1 at *11 n.7 (11th Cir. Apr. 7, 2006) ("issues not raised in the pleadings may be treated as if they were properly raised when they either are tried by express or implied consent of the parties") (citing *Steger v. General Elec. Co.*, 318 F.3d 1066, 1077 & n. 11 (11th Cir. 2003). *See also PNC Bank v. Hall, Icoe, LLC*, No. 07-cv-00992, 2010 WL 3947506, at *4 (S.D. Ind. Oct. 7, 2010) ("On a motion for summary judgment . . . pleadings may be amended to conform to the evidence when the issues raised are tried by implied consent.") (compiling authorities); *Hollingshead v. Windley*, No. 07-0599, 2008 WL 4809221, at *7 (S.D. Ala. Oct. 31, 2008).

(Jan. 23, 2012 Email D. Pozza to T. Schoenberg); *id.*, Ex. 4 at 4 (Jan. 29, 2012 email D. Pozza to T. Schoenberg ("we're fine with…producing all the uploadIDs and user suspension records created through Dec. 23…")); *id.,* Ex. 5 at 1 (Feb. 6-7, 2012 emails confirming delivery of Jan. 26 submission supplementation). 

   Plaintiffs' summary judgment motion alleges that over ▮▮▮▮▮ that were uploaded *after* the Complaint was filed directly infringe their copyrights. Titov Reply Decl. ¶ 3 (analyzing PMSJ, Yeh Ex. 56). *See also* PMSJ at 3 ("Hotfile remains in violation of these provisions [of the DMCA] *even today*."); *id.* ("Its business was *and still is* selling access to the more than one hundred million files"); Thamkul Ex. 7 at 5. (Plfs' 3rd Supp. Interrog Resp.) ("infringing copies of new and additional Plaintiffs' works are also being uploaded to Hotfile.com *on an ongoing basis*.") Hundreds of pages of exhibits submitted in support of Plaintiffs' motion relate solely to Hotfile's current operations. *E.g.*, Yeh Exs. 30 (Titov Exs. 92-93), 31-43, 45, 57, 68, 96, 103, 144. In view of this litigation history, Plaintiffs cannot genuinely deny that Hotfile's current DMCA compliance has been vigorously litigated.

   Having forced Hotfile to expend ▮▮▮▮▮ on discovery and briefing responding to their allegations of "continuing" liability (Titov Reply Decl. ¶ 2), and having failed in trying to find any post-Complaint conduct that may raise a triable issue material to the DMCA, Plaintiffs are trying to backpedal. Plaintiffs cannot seek to evade an adverse judgment, however, by asserting that they did not intend to litigate Hotfile's current liability. *See Kitzmann v. Local 619-M Graphic Communications Conference*, No. 09-6500, 2011 WL 944379, at *4 (6th Cir. Mar. 21, 2011) ("A claimant cannot attempt to defeat jurisdiction (and summary judgment) . . . by abandoning the claims that the claimant worries might have established jurisdiction in the first place."); *Solliday v. Federal Officers*, No. 10-11854, 2011 WL 414283, at *1 (11th Cir. Feb. 9, 2011) (affirming summary judgment over abandoned claim); *Shi v. Carlson*, No. 09-15033, 2010 WL 3988724, at *1 (9th Cir. Sept. 13, 2010) ("The district court properly granted summary judgment on Shi's claims . . . .because Shi abandoned these claims in

FILED UNDER SEAL                                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

her opposition to summary judgment.").[11]

Plaintiffs also rely on several readily distinguishable patent cases for the proposition that post-Complaint modifications are not properly subject to summary adjudication. PODMSJ at 5-6. There is no such inflexible rule in defending against a patent claim any more than there is with respect to a copyright claim. In *ICU Medical, Inc. v. B. Braun Medical, Inc.*, for example, jurisdiction extended to post-complaint modifications where the complaint referenced the accused product generically, sought post-complaint damages and asked for an injunction. No. C 01-3202 CRB, 2005 WL 588341, n.1, **10-11 (N.D. Cal. March 14, 2005). Likewise, the Complaint here asserted "continuing" infringement on Hotfile.com generically, Plaintiffs have accused post-Complaint uploads of infringing, and they seek an injunction (a key DMCA issue (*see* n.9, *supra*)). Thus, adjudication of the post-Complaint facts is proper. Plaintiffs' patent cases are easily distinguished, because the parties had neither pleaded nor litigated the issues on which summary adjudication was sought. *See Eagle Comtronics, Inc. v. John Mezzalinua Assocs.*, 198 F.R.D. 351, 354 (N.D.N.Y. 2000) ("litigation focused upon defendant's original SHP3-50 filter" rather than the redesigned filter); *DF&R Corp. v. American Int'l Pacific Indus. Corp.*, 830 F. Supp. 500, 509-10 (D. Minn. 1993) (defendant did not produce or even prepare to produce alternate design, much less litigate the issue); *CIVIX-DDI, L.L.C. v. Cellco Partnership*, 387 F. Supp. 2d 869, 881 (N.D. Ill. 2005) ("The record does not contain any indication that the parties have been litigating the non-asserted claims."); *Zimmer Tech., Inc. v. Howmedica Osteonics Corp.*, 476 F. Supp.2d 1024, 1037 (N.D. Ind. 2007) (refusing summary judgment regarding "issues that a party has never before asserted"). In contrast, here, Plaintiffs both pleaded and litigated the issue of Hotfile's post-Complaint behavior and liability. There is nothing "advisory" about adjudicating the issue now.

### D.   Courts Regularly Grant Partial Summary Judgment By Time Period.

"A party may move for summary judgment, identifying each claim or defense – *or the part of each claim or defense* – on which summary judgment is sought." Fed. R. Civ. P. 56(a). The Court may summarily adjudicate any part of a claim right down to the level of individual

---

[11] Plaintiffs' authorities at pages 3-4 of their Opposition in no way support their position. In none of those cases did the plaintiff litigate an issue throughout discovery and then disavow litigation of the issue to evade summary judgment. Indeed, in *Ortiz v. Lopez*, 688 F. Supp. 2d 1072 (E.D. Cal. 2010), the court granted summary judgment over a claim neither stated in the complaint nor raised in discovery, thus providing support for Hotfile here. *Id.* at 1082-83.

FILED UNDER SEAL                                CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

facts. Fed. R. Civ. P. 56(g).

Empowered to dispose of any "part" of any claim or defense under Rule 56, courts grant summary judgment by time period where appropriate in a variety of contexts. In *Edwards v. Shalala*, 64 F.3d 601 (11th Cir. 1995), the Eleventh Circuit upheld partial summary judgment of an age discrimination case, denying relief regarding events outside the applicable limitations period but preserving the remainder of the claim. *Id.* at 603, 605. Regarding a claim for overtime compensation in *Feldman v. Cutting*, No. 09-14133-CIV, 2009 WL 4021364 (S.D. Fla. Nov. 19, 2009), Judge Martinez entered partial summary judgment for two periods (September 17, 2007 through December 31, 2007 and April 14, 2008 through June 21, 2008) while noting that triable issues of fact existed "for the remaining time periods" that plaintiff worked at defendant's company. *Id.* at *2, *5 n.7. Likewise, in *Rozenblum v. Ocean Beach Properties*, 436 F. Supp. 2d 1351 (S.D. Fla. 2006), Judge Ungaro divided a single claim into separate time periods for purposes of separate summary judgment rulings. *Id.* at 1357. Similar cases abound.[12] "Rule 56 permits the Court to enter a partial summary judgment in order to narrow the issues for trial." *Bishop v. Allied Van Lines, Inc.*, No. 8:08-cv-2170-T-24 MAP, 2010 WL 5066786, at *3 (M.D. Fla. Dec. 18, 2009); *Stillman v. Travelers Ins. Co.*, 88 F.3d 911, 914 n.4 (partial summary judgment narrowed issues for trial).[13]

---

[12] *E.g., Compuware Corp. v. Health Care Service Corp.*, 203 F. Supp. 2d 952, 956 (N.D. Ill. 2002) (copyright claim partially time-barred as outside statute of limitations); *EpicRealm Licensing, LP v. Franklin Covey Co.*, 644 F. Supp. 2d 806, 809-10 (E.D. Tex. 2008) (granting summary judgment of noninfringement in patent case for period of September 2003 to April 2007 during which time defendant did not operate accused websites, but permitting claim to proceed regarding infringement after April 2007); *Youngblood v. Vistronix, Inc.*, No. 05-21 (RCL), 2006 WL 2092636, at *5 (D.D.C. July 27, 2006) (granting summary judgment for year following March 1, 2003 but denying summary judgment as to preceding year); *York Int'l Corp. v. Liberty Mut. Ins. Co.*, No. 1:10-CV-0692, 2011 WL 2111989, at *6 (M.D. Pa. May 26, 2011) (granting partial summary judgment in favor of insured in coverage case for claims arising during four-year period); *Veliz v. Cintas Corp.*, No. C 03-1180 RS, 2009 WL 1110416, at *7 (N.D. Cal. Apr. 23, 2009) (granting partial summary judgment as to separate, identified time periods).

[13] Plaintiffs assert that "Hotfile apparently would have the Court assess Hotfile's compliance with each DMCA requirement as the material facts changed over time." PODMSJ at 7. Again, that is not what the motion says: Hotfile seeks summary judgment for a single time period, "since its revamped repeat infringer policy was instituted in February 2011..." (DMSJ at 2). Courts will categorize a set of alleged infringements based on their DMCA-compliance characteristics (here, based on the repeat infringer policy in place when they occurred) and rule that some are safe harbored as a matter of law. *See, e.g., Capitol Records*, 2011 WL 5104616 at

-9-

FILED UNDER SEAL                                CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

Despite the plain language of Rule 56(g) and the case law, Plaintiffs assert that the Court is powerless to summarily adjudicate Hotfile's entitlement to safe harbor protection during the post-February 18, 2012 period, citing three out of circuit district court cases, none of which support Plaintiffs. PODMSJ at 7. In *SEC v. Liberty Capital Group*, 75 F. Supp.2d 1160, 1164 (W.D. Wash. 1999), the court refused to grant summary judgment on a "piecemeal" basis to the SEC prior to discovery on grounds that "partial determination of liability would do little to move the case forward" and "discovery and proceedings would be necessary regardless." *Id.* Here, in contrast, discovery is closed. In *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 404 (E.D.N.Y. 2011), the Court refused to summarily adjudicate parts of a police encounter alleged to involve excessive force, ruling that the events cumulatively provided "necessary background for the jury to understand what transpired." *Id.* at 405. Here, the Court can adjudicate Hotfile's post-Complaint behavior and still provide the jury all facts necessary to adjudicate the remainder of Plaintiffs' claim. Lastly, in *Newman-Green, Inc. v. Alfonzo-Larrain R.*, 612 F. Supp. 1434, 1439 (N.D. Ill. 1985), the court granted plaintiff's motion for summary judgment of liability but refused to permit the "piecemealing" of plaintiff's damage claim into an immediate adjudication of liability for $189,771 and a postponed adjudication regarding the remainder of the claimed $350,000 in damages, resolving to make one damages calculation on a complete record. *Id.* at 1439, 1441, 1443. Here, Hotfile does not seek to disaggregate a single mathematical computation. Under each cited case, partial summary judgment remains appropriate.

### III.   CONCLUSION

The Court should grant Hotfile's motion for summary judgment of non-liability after February 18, 2011. The resulting "certainty" for Hotfile and its users will achieve the purpose behind the DMCA's Safe Harbor. "Congress enacted title II of the DMCA 'to provide greater certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities.'" *Perfect 10, Inc. v. Amazon.com, Inc.* 508 F.3d 1146, 1158 (9th Cir. 2007) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

---

*19, (safe harbor denied as to songs sideloaded to users lockers from noticed links but granted as to songs sideloaded from links not listed in takedown notices); Gupta Decl. Ex. 12, attaching *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484(AHM), at 12-25 (C.D. Cal. July 16, 2010) (granting safe harbor as to Category A and C DMCA notices, but not as to Category B notices).

FILED UNDER SEAL                                   CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

DATED: March 19, 2012              Respectfully submitted,

*/s/ Janet T. Munn*
Janet T. Munn, Esq. Fla. Bar No. 501281
Email: jmunn@rascoklock.com
RASCO KLOCK
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102

And

*/s/ Janet T. Munn for Roderick M. Thompson*
Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email: rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email: aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email: tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email: dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email: jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

And

*/s/ Valentin Gurvits by Janet T. Munn*
Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone: 617.928.1800
Telecopy: 617.928.1802

*Counsel for Defendants Hotfile Corporation
and Anton Titov*

FILED UNDER SEAL                             CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2012, a true and correct copy of the foregoing document, was filed conventionally and served on all counsel of record identified below via e-mail and by Federal Express.

Karen L. Stetson, Esq.
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Telephone: 818.935.5812

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

By: /s/ Janet T. Munn
Janet T. Munn