# EXHIBIT A

# PUBLIC VERSION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

    *Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

    *Defendants*.

_____/

HOTFILE CORP.,

    *Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

    *Counter-Defendant*.

_____/

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ANTON
TITOV'S MOTION FOR SUMMARY JUDGMENT**

26501\2988338.9

FILED UNDER SEAL                          CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## CITATION LEGEND

1. "PSUF" shall refer to specific paragraph numbers of Plaintiffs' Statement of Uncontroverted Facts.

2. "DSUF" shall refer to specific paragraph numbers of Statement of Undisputed Material Facts In Support of Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

3. "TSUF" shall refer to specific paragraph numbers of Statement of Undisputed Material Facts In Support of Motion of Anton Titov's Motion for Summary Judgment.

4. "DRSF" shall refer to specific paragraph numbers of the Statement of Facts of Defendants Hotfile Corporation and Anton Titov In Opposition to Plaintiffs' Statement of Uncontroverted Facts and Defendants' Statement of Additional Material Facts.

5. "Foster Decl." shall refer to the declaration of Dr. Ian Foster in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012.

6. "Yeh Decl." shall refer to the declaration of Jennifer V. Yeh in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012.

7. "Titov Decl." shall refer to the declaration of Anton Titov in support of Defendants' Motion for Summary Judgment.

8. "Titov Opp. Decl." shall refer to the declaration of Anton Titov in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

9. "Leibnitz Decl." shall refer to the declaration of Andrew Leibnitz in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

10. "Gupta Decl." shall refer to the declaration of Deepak Gupta in support of Defendants' Motion for Summary Judgment.

11. "Schoenberg Decl." shall refer to the declaration of Anthony Schoenberg in support of Anton Titov's Motion for Summary Judgment.

12. "Levy Decl." shall refer to the declaration of Dr. Daniel S. Levy in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

13. "Cromarty Decl." shall refer to the declaration of Dr. Andrew Cromarty in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

FILED UNDER SEAL                           CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

14. "Boyle Decl." shall refer to the declaration of Dr. James Boyle in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

15. "Leibnitz Ex. __," shall refer to exhibits attached to the Leibnitz Declaration.

16. "Yeh Ex. __," shall refer to exhibits attached to the Yeh Declaration.

17. "Gupta Ex. __," shall refer to exhibits attached to the Gupta Declaration.

18. "Schoenberg Ex. __," shall refer to exhibits attached to the Schoenberg Declaration.

19. "Boyle Ex. __," shall refer to exhibits attached to the Boyle Declaration.

20. "Thamkul Decl." shall refer to the declaration of Janel Thamkul in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

21. "Thamkul Ex. __," shall refer to exhibits attached to the Thamkul Declaration.

22. "Titov Reply Decl." shall refer to the declaration of Anton Titov in support of Defendants' Reply in support of their Motion for Partial Summary Judgment.

23. "DMSJ" shall refer to the Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

24. "DOPMSJ" shall refer to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov.

25. "PODMSJ" shall refer to Plaintiffs' Opposition to the Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

26. "PMSJ" shall refer to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov.

27. "PCFDMSJ" shall refer to Plaintiffs' Counterstatement of Material Facts in Opposition to Defendants' Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

28. "TMSJ" shall refer to Defendant Anton Titov's Motion for Summary Judgment.

29. "POTMSJ" shall refer to Plaintiffs' Opposition to Defendant Anton Titov's Motion for Summary Judgment.

30. PCFTMSJ" shall refer to Plaintiffs' Counterstatement of Material Facts In Opposition to Anton Titov's Motion for Summary Judgment.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................... 1
II. UNDISPUTED FACTS WARRANT SUMMARY JUDGMENT FOR MR. TITOV............................................................................................................................. 1
III. PLAINTIFFS SEEK TO ALTER THE "GUIDING SPIRIT" STANDARD.................... 2
IV. PLAINTIFFS STRAW-MAN ARGUMENTS ABOUT THE DMCA LACK MERIT ........................................................................................................................ 4
V. PLAINTIFFS' FACTUAL "DISPUTES" ARE UNSUPPORTED................................ 5
VI. MR. TITOV IS NOT SUBJECT TO THE COURT'S JURISDICTION ....................... 9
VII. CONCLUSION......................................................................................................... 10

FILED UNDER SEAL                               CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Arista Records LLC v. Lime Grp LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011) ........................................................................... 3

*Arista Records LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009) ........................................................................... 3

*Capitol Records, Inc. v. MP3Tunes, LLC*,
  2011 WL 5104616 (S.D.N.Y. Oct. 25, 2011) ............................................................... 4

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,
  931 F.2d 1472 (11th Cir. 1991) ................................................................................. 1, 2

*Columbia Pictures Industries, Inc. v. Fung*,
  2009 WL 6355911 (C.D. Cal. Dec. 21, 2009) .............................................................. 3

*Columbia Pictures, Inc. v. Redd Horne*,
  749 F.2d 154 (3d Cir. 1984) ......................................................................................... 3

*Comprehensive Care Corp. v. Katzman*,
  2011 WL 2960916 (M.D.Fla. July 21, 2011) ............................................................... 2

*CoStar Grp. Inc. v. LoopNet*,
  164 F. Supp. 2d 688 (D. Md. 2001) .............................................................................. 4

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ...................................................................................... 5

*Escude Cruz v. Ortho Pharmaceutical Corp.*,
  619 F.2d 902 (1st Cir. 1980) ......................................................................................... 7

*Foreign Imp. Prod. and Public Inc. v. Grupo Industries Hotelero S.A.*,
  2008 WL 4724495 (S.D. Fla. 2008) .............................................................................. 3

*Frietsch v. Refco, Inc.*,
  56 F.3d 825 (7th Cir. 1995) ........................................................................................ 10

*Giotis v. Apollo of the Ozarks, Inc.*,
  800 F.2d 660 (7th Cir. 1986) ...................................................................................... 10

*Gulf USA Corp. v. Federal Ins. Co.*,
  259 F.3d 1049 (9th Cir. 2001) ...................................................................................... 2

*Hendrickson v. eBay, Inc.*,
  165 F. Supp. 2d 1082 (C.D. Cal. 2009) ........................................................................ 4

*Johnson & Johnson Consumer Cos., Inc. v. Aini*,
  540 F. Supp. 2d 374 (E.D.N.Y. 2008) .......................................................................... 4

*Logicom Inclusive, Inc. v. W.P. Stewart & Co.*,
  2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004) .............................................................. 4

FILED UNDER SEAL                              CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

# TABLE OF AUTHORITIES
(continued)

**Page**

*Kyeame v. Buchheit,*
  2011 WL 4949220 (M.D. Pa. Oct. 18, 2011) .................................................................... 2

*Microsoft Corp. v. Md. Micro.com, Inc.,*
  2003 WL 21805213 (D. Md. July 15, 2003) .................................................................... 4

*Morley Music Co v. Cont'l Inc.,*
  777 F. Supp. 1579 (S.D. Fla. 1991) ....................................................................... 1, 2, 4

*Neder v. United States,*
  527 U.S. 1 (1999) ........................................................................................................ 4, 7

*Netbula, LLC v. Chordiant Software, Inc.,*
  2009 WL 750201 (N.D. Cal. March 20, 2009) ................................................................ 5

*Pardazi v. Cullman Med. Cir.,*
  896 F. 3d 1313 (11th Cir. 1990) ....................................................................................... 9

*Perfect 10 v. Amazon.com, Inc.,*
  508 F.3d 1146 (9th Cir. 2007) ......................................................................................... 5

*Pickwick Music Corp. v. Record Prods, Inc.,*
  292 F. Supp. 39 (S.D.N.Y. 1968) .................................................................................... 4

*Slip-N-Slide Records, Inc. v. TVT Records, LLC,*
  2007 WL 473273 (S.D. Fla. Feb. 8, 2007) ...................................................................... 4

*U.S. Media Corp., Inc. v. Edde Entm't, Inc.,*
  1996 WL 520901 (S.D.N.Y. Sept. 12, 1996) .................................................................. 3

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,*
  667 F.3d 1022 (9th Cir. 2011) ..................................................................................... 4, 5

*Viacom International Inc. v. YouTube, Inc.,*
  718 F. Supp. 2d 514 (S.D.N.Y. 2010 .............................................................................. 4

*Vondriska v. Cugno,*
  2010 WL 395628 (11th Cir. Feb. 4, 2010) ...................................................................... 2

*Warner Bros.-Seven Arts, Inc. v. Kalantzakis,*
  326 F. Supp. 80 (S.D. Tex. 1971) .................................................................................... 4

*Woynar v. Chitwood,*
  2012 WL 442986 (M.D. Fla. Feb. 10, 2012) .................................................................. 2

FILED UNDER SEAL                    CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

# TABLE OF AUTHORITIES
(continued)

**Page**

### FEDERAL STATUTES

17 U.S.C. §512 ................................................................................................................ 4

### FEDERAL RULES AND REGULATIONS

Federal Rules of Civil Procedure 26 ............................................................................. 10

### STATE RULES AND REGULATIONS

Local Rule 16.1 ............................................................................................................. 10

FILED UNDER SEAL					CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

## I. INTRODUCTION

The Studios' (or "Plaintiffs") case against Mr. Titov is a house of cards that has collapsed. Initially, it was based in the Complaint on factual allegations that the Studios claimed proved Mr. Titov was "the guiding spirit behind and central figure in Hotfile Corp.'s infringing activities." D.E. # 1 ¶ 63. Those allegations have now been proven false. TMSJ II.A; TSUF 5, 6, 10, 11. Recognizing this failure of proof, in their summary judgment motion the Studios dropped those allegations in favor of a new theory that Mr. Titov is liable because "[t]he operations of the Hotfile website are directed by two other entities [Hotfile Ltd. and Lemuria] ███████████████." PMSJ at 35 and 36. However, those non-parties merely provide payment and web-hosting services to Hotfile, hardly the type of evidence that proves – as the Studios must – that Mr. Titov is the "guiding spirit," "dominant influence," or has "the capacity to control the acts" of Hotfile. *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1478 n. 8 (11th Cir. 1991); *Morley Music Co v. Cont'l Inc.*, 777 F. Supp. 1579, 1580, 1580 (S.D. Fla. 1991). Finally, in their opposition to this motion, the Studios advance yet another theory, this time claiming that Mr. Titov is actually one of ███ "guiding spirits" of Hotfile and that the Studios would have sued the other ███ "guiding spirits" if not for "procedural challenges." POTMSJ I.A. This theory, like those that preceded it, fails to support a claim against Mr. Titov as a matter of law.

## II. UNDISPUTED FACTS WARRANT SUMMARY JUDGMENT FOR MR. TITOV

Plaintiffs do not dispute the following facts: Hotfile evolved out of a business partnership between Hotfile's other shareholders that did not involve Mr. Titov, PCFTMSJ 1; Mr. Titov does not have, and has never had, any ownership interest in that other business partnership, ███████, which provides the personnel who work on Hotfile's operations, PCFTMSJ 2; start-up capital for Hotfile was provided by Hotfile's other shareholders, not by Mr. Titov, PCFTMSJ 3; Mr. Titov did not come up with the idea to create Hotfile, PCFTMSJ 4; Mr. Titov is a minority and the smallest shareholder of Hotfile, PCFTMSJ 5; Mr. Titov did not design the Affiliate program's payment criteria, PCFTMSJ 8; and Mr. Titov did not pay Hotfile's uploading users, PCFTMSJ 12.[1] Each of these undisputed facts is material and directly contrary to the notion that Mr. Titov was the "moving, active, conscious force who caused" the alleged

---

[1] Plaintiffs also do not dispute Facts 14 and 15 related to the question of personal jurisdiction, which is discussed at pp. 9-10, *infra*.

1

FILED UNDER SEAL                                         CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

infringement in this case or that he has a "dominant influence" on and has "the capacity to control the acts" of Hotfile. *See Chanel, Inc.*, 931 F.2d at 1478 n. 8; *Morley Music Co.*, 777 F. Supp. at 1580. These facts warrant summary judgment for Mr. Titov.[2]

### III.   PLAINTIFFS SEEK TO ALTER THE "GUIDING SPIRIT" STANDARD

Having found no support for these alleged facts, the Studios now claim for the first time that the company actually has ▮ "guiding spirits" – Mr. Titov and the other ▮ Hotfile shareholders. POTMSJ at 5. This new argument – never before asserted – is a transparent attempt to explain away the Studios' obvious failure of proof with respect to Mr. Titov.[3]

The Studios' altered strategy has forced them to try to advocate for a change in the applicable legal standard. A year ago, in opposing defendants' motion to dismiss, Plaintiffs represented to the Court that there are two standards for personal liability and that the first requires personal participation akin to being a guiding spirit: "Under the first, 'the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct... or the 'central figure' in the

---

[2] Plaintiffs improperly ask the Court to exclude deposition testimony of Messrs. ▮ ▮ on grounds that such testimony is hearsay. PCFTMSJ 6. This objection contradicts long-settled law permitting the use of deposition testimony on summary judgment. *See, e.g., Vondriska v. Cugno*, 368 Fed. Appx. 7, 2010 WL 395628, *9 (11th Cir. Feb. 4, 2010); *Woynar v. Chitwood*, No. 6:10–cv–1458–Orl–28GJK, 2012 WL 442986, at *1 (M.D. Fla. Feb. 10, 2012); *Comprehensive Care Corp. v. Katzman*, No. 8:10–CV–942–T–27TGW, 2011 WL 2960916, at *4 (M.D.Fla. July 21, 2011); *Gulf USA Corp. v. Federal Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001). In any event, even if Rule 32 applied on summary judgment, it would be no prohibition here, as Messrs. ▮ live outside of the U.S. in Sofia, Bulgaria, thus their potential absence at trial (which is entirely speculative) would not be "procured" by Mr. Titov. *See Kyeame v. Buchheit*, No. 1:07–cv–1239, 2011 WL 4949220, at *2 (M.D. Pa. Oct. 18, 2011) ("'[p]rocured' for purposes of Rule 32(a)(4)(B) means that 'a party has collusively instigated or induced a witness to remove ... herself from being amenable to testify at trial; if a witness "resides outside of the United States, and [offering party] did not deliberately arrange her absence," the offering party has not "procured" the witness' absence).

[3] In response to the obvious question – why didn't you name the other ▮ putative "guiding spirits" as defendants – the Studios assert that "procedural challenges" and potential disruption of the schedule prevented them from doing so. POTMSJ at 5. The Studios, however, have known of Messrs. ▮ since nearly the outset of the case, as they were disclosed in Hotfile's initial disclosures and in response to the Studios' initial set of interrogatories, which were served on the very first day on which discovery could be served. Thamkul Ex. 8 at 3, Ex. 9. Moreover, the Studios appeared before this Court just two months ago seeking to *extend* the case schedule. The Studios' explanation is not credible. ▮

2

FILED UNDER SEAL                                      CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

challenged corporate activity.'" D.E. # 52 at 18. Now, Plaintiffs would change the first test to require only that defendant "personally participates in the activity." POTMSJ at 1. This truncated standard is not the law and, if adopted, would open up liability to any corporate employee who "participates" in whatever "activity" is challenged by the Plaintiff. They even go so far as to claim that Titov's role as "head technologist" is by itself enough to "establish Titov's personal liability." *Id.* at 7. This would expose every technical employee in any internet company to potential liability.

While it may be possible for there to be more than one "guiding spirit," the Studios' three supposedly "comparable" cases – and the only cases the Studios rely on that involve secondary liability claims in the internet context – each involved claims against one individual defendant who – unlike Mr. Titov –dominated an entity. *Arista Records LLC v. Lime Grp LLC*, 784 F. Supp. 2d 398, 438 (S.D.N.Y. 2011) (defendant was the CEO and sole director of the defendant company, "ran" the company, was the "ultimate decisionmaker" of the company, had to approve "any major strategic and design decision," had "veto" power and "conceived of" the business); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 158 (S.D.N.Y. 2009) (holding individual defendant personally liable where he was sole shareholder and director of internet business, had a "ubiquitous role" in the company's activities, was responsible for the "overall strategic vision" of the company, and ultimately had no employees); *Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578 SVW (JCX), 2009 WL 6355911, at *2 (C.D. Cal. Dec. 21, 2009) ("*Fung*") (holding defendant liable where he ran websites essentially by himself).[4] The other cases on which Plaintiffs rely are all inapposite as the defendants in those cases were *themselves* the direct infringers. *See Foreign Imp. Prod. and Pub. Inc. v. Grupo Indus. Hotelero S.A.*, No. 07-22066-CIV, 2008 WL 4724495, *7 (S.D. Fla. 2008) (defendants posted infringing material on website advertising their nightclub); *U.S. Media Corp., Inc. v. Edde Entm't, Inc.*, No. 94 Civ. 4849 (MBM) (MHMD), 1996 WL 520901, *5 (S.D.N.Y. Sept. 12, 1996); (executive officer personally selected the infringing films); *Columbia Pictures, Inc. v . Redd Horne*, 749 F.2d 154 (3d Cir. 1984) (defendant responsible for "selection, distribution and sale" of the infringing

---

[4] As Defendants have argued elsewhere, these cases are, in fact, not comparable to Hotfile for a whole host of reasons, as they all involved defendants who ran peer-to-peer websites with no purpose other than to facilitate the downloading of infringing material and which took no steps whatsoever to combat infringement. *See* DOPMSJ at V.B.3. Hotfile is the polar opposite of such companies. (*Id.*)

3

FILED UNDER SEAL                                          CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

material); *Pickwick Music Corp. v. Record Prods, Inc.*, 292 F. Supp. 39 (S.D.N.Y. 1968) (defendants recorded, pressed and sold album containing infringing songs).[5]

## IV.    PLAINTIFFS STRAW-MAN ARGUMENTS ABOUT THE DMCA LACK MERIT

Plaintiffs try to erect a straw-man by claiming that Mr. Titov "applies the wrong law" because he includes a discussion of cases applying the DMCA. POTMSJ at 14. This is simply not true. Mr. Titov's motion discusses and applies the common law of vicarious liability.[6] *See* TMSJ at 13-16. As noted above, that analysis requires proof that the individual has "a dominant influence in a corporation" and "the capacity to control the acts of that corporation...." *Morley*

---

[5] *See also Microsoft Corp. v. Md. Micro.com, Inc.*, No. Civ. JFM-01-3797, 2003 WL 21805213, at *4 (D. Md. July 15, 2003) (one defendant personally sold counterfeit product to undercover investigator and other defendant ran "day to day" counterfeit operations); *Johnson & Johnson Consumer Cos., Inc. v. Aini*, 540 F. Supp. 2d 374 (E.D.N.Y. 2008) (one defendant was president, shareholder and only full time employee of one direct infringer, another defendant was the "eminence behind" the both direct infringers, and the third defendant was the buyer of counterfeit goods); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04 Civ. 0604(CSH) 2004 WL 1781009, *18 (S.D.N.Y. Aug. 10, 2004) (defendants directed contractor to make unauthorized derivative works of plaintiffs' software program). In *Warner Bros.-Seven Arts, Inc. v. Kalantzakis*, 326 F. Supp. 80, 82 (S.D. Tex. 1971), the defendant was not the direct infringer, but that case is distinguishable as the defendant – in contrast to Mr. Titov – owned 85% of the company, controlled the daily activities of the company, and "utilized [the company] for his personal benefit." Another case on which Plaintiffs rely, *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV-TORRES, 2007 WL 473273 (S.D. Fla. Feb. 8, 2007), contains no discussion or analysis of the facts other than to say that the defendants' roles are a question for jury. *Id.* at *11. Thus, it does not help Plaintiffs.

[6] Mr. Titov referred to DMCA cases for illustrative purposes because the DMCA provides the backdrop to this case – indeed, it is the subject of cross-motions for summary judgment that are currently pending. Thus, that discussion was entirely appropriate. Plaintiffs are correct – and Mr. Titov does not assert otherwise – that the cases to address 17 U.S.C. § 512(c)(1)(B) have held that it imposes a higher standard than the common law vicarious liability standard. *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d 1022, 1043-1045 (9th Cir. 2011); *Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 527 (S.D.N.Y. 2010; *Capitol Records, Inc. v. MP3Tunes, LLC*, No. 07 Civ. 9931 (WHP), 2011 WL 5104616, at *14 (S.D.N.Y. Oct. 25, 2011); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1093 (C.D. Cal. 2009; *CoStar Grp. Inc. v. LoopNet*, 164 F. Supp. 2d 688, 704 (D. Md. 2001). Indeed, there is now near-unanimity of opinion from the courts on this point, which stands to reason since a different interpretation would be nonsensical and contrary to the intent of the DMCA. *See UMG Recordings, Inc.*, 667 F.3d at 1043-1045. While Plaintiffs turn around and claim that they "do not agree" with these cases, Plaintiffs do not cite a single case addressing the DMCA to support their disagreement but instead rely on a case interpreting mail and wire fraud statutes. *See* POTMSJ at 17, n. 7 (citing to *Neder v. United States*, 527 U.S. 1 (1999)).

4

FILED UNDER SEAL                CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

*Music Co.*, 777 F. Supp. at 1582. The evidence as to Mr. Titov does not come close to satisfying this standard. TMSJ at 13-17; DOPMSJ at 34-40.

In fact, it is Plaintiffs who cite inapplicable law. Plaintiffs cite cases addressing whether a service provider is vicariously liable for infringements by users of its systems rather than cases addressing whether an individual officer is vicariously liable for the acts of the service provider. (*See* Opp. at 15-16.) And the Studios do not even get that law right. Where – as here – a web host cannot practicably determine what on their systems is infringing, the "practical ability" element of vicarious liability is lacking.[7] *See Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). *See also* DOPMSJ at 32-34.

Plaintiffs' "financial benefit" argument also lacks merit. Plaintiffs claim that Mr. Titov "benefitted financially as a consequence of Hotfile's infringement" because he has an ownership interest in Hotfile. POTMSJ at 14. This is inadequate as a matter of law. *See Netbula, LLC v. Chordiant Software, Inc.*, No. C 08-00019 JW, 2009 WL 750201, at *2-3 (N.D. Cal. March 20, 2009). Furthermore, the evidence has not borne out the Studios' oft-repeated but inaccurate refrain that Hotfile is "used overwhelmingly for infringement."[8] POTMSJ at 15; DRSF 16.d. The evidence shows that Hotfile is used predominantly for storage, the most popular files on Hotfile are not infringing, and users convert to Premium accounts at a higher rate when downloading noninfringing works. DRSF 24, 28, 30, 32. As the evidence falls far short of establishing the requisite financial benefit (including its causation requirement) with respect to Hotfile –it is all the more inadequate as to Mr. Titov. *See, e.g., Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). *See also UMG*, 667 F.3d at 1046-1047 (affirming dismissal of secondary infringement claims against investors who did not have controlling shares).

## V. PLAINTIFFS' FACTUAL "DISPUTES" ARE UNSUPPORTED

Having concocted a new theory of liability based on a misstated legal standard, the Plaintiffs then go on to engage in a wholesale revision of the factual record. Plaintiffs seem to believe that if they list enough "facts" and repeat words such as "rampant," "notorious" and

---

[7] Plaintiffs' try to distinguish *Amazon* because it concerned "third party websites," but this is a false distinction. POTMSJ at 17 n. 6. The question of "control" here *and* in *Amazon* relates to materials uploaded to the internet by third parties. The absence of "control" in both cases is clear.
[8] Nor does the evidence support the claim – immaterial in any event – that "users have confirmed that they bought premium subscriptions specifically to download copyright infringing content." *See* DRSF 16.e-e.iii.

5

"overwhelming," the Court will deny Mr. Titov's motion. But a close look at the evidence reveals that the Studios' purported "disputes" with Mr. Titov's material facts are either based on gross distortions of the factual record or are simply immaterial (or both). Specifically:



**Mr. Titov did not make the decision to implement the Affiliate program (TSUF 7).** Plaintiffs ignore the key evidence on this issue. As they admit, █████████████

**Mr. Titov has not implemented technical features to frustrate copyright owner enforcement efforts (TSUF 9.)** Plaintiffs do not dispute that Hotfile "accommodates and does not interfere with standard technical measures." PCFDMSJ 24. Plaintiffs do not dispute that Hotfile implemented hash-blocking, SRAs and digital fingerprinting. TSUF 9; DSUF 11; DRSF 34. They instead base their "dispute" on the timing of Hotfile's adoption of these measures and on Hotfile's recordkeeping. These are specious arguments, as defendants have explained. DRSF 2, 9.a.iv., 16.j.i.-.iv. Moreover, the evidence does not tie Mr. Titov to these issues beyond vague assertions that he "knew" how Hotfile's system operated. PCFTMSJ 9; DRSF 22.f.1.

Plaintiffs also assert that Mr. Titov is personally liable because he "wrote ███ of the source code . . . that controls the Hotfile site." POTMSJ at 8. This is an exaggeration and immaterial in any event. While Mr. Titov wrote some of the source code for Hotfile's storage and delivery technology, the testimony cited by the Studios states that the percentage is between ███████ and is smaller when you take into account code that Mr. Titov developed prior to

---

[9] If this were sufficient to create personal liability, then every employee in a company's accounting department would presumably be liable for the company's acts.

FILED UNDER SEAL                                              CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

Hotfile's conception. DRSF 22a.i. The Studios neglect to mention that Mr. Titov did not participate in the design of the Hotfile website. TSUF 11; DRSF 22.a.i, 22a.i. In any event, if writing source code were enough to make one a "guiding spirit," thousands of engineers at technology companies would be personally liable for the acts of their employers. This is this is not the law. *See Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980) ("[M]erely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation.").

**Mr. Titov did not control Hotfile (TSUF 10.)** Plaintiffs' make a futile attempt to dispute this because Hotfile's ▮ shareholders sometimes make decisions "by consensus." POTMSJ at 8. Consensus-based decision making *contradicts* the claim that Mr. Titov is the "moving, active, conscious force" or "dominant influence" at Hotfile. In any event, the Studios ignore the other key facts discussed elsewhere that prove Mr. Titov's limited control as well as his nominal responsibility for the Affiliate program. *See* TSUF 2, 5, 6, 7, 8, 10, 11. Beyond that, Plaintiffs' rely on irrelevant evidence and tortured readings of isolated emails.[10]

**Mr. Titov is not responsible for day-to-day operations of Hotfile; his area of responsibility is technological matters (TSUF 11.)** Plaintiffs seek to "dispute" this fact by discussing Lemuria and Hotfile Ltd., neither of which supports Plaintiffs' position. In their Complaint, Plaintiffs asserted as a basis for holding Mr. Titov personally liable that he was responsible for "[f]ounding Lemuria 'after Hotfile's previous online service provider [Webazilla] received a subpoena concerning Hotfile's infringements.'" Compl. ¶ 45. This, like many other insinuations in the Complaint, has been proven false by discovery. TSUF 13. Thus, in their

---

[10] For example, Mr. Titov (like the other shareholders) has a power of attorney for Hotfile, which is a formality that allows the shareholders to act on the company's behalf. If that were enough to create "guiding spirit" liability, it would improperly expand liability to untold numbers of individuals at small companies who have similar powers. ▮▮▮▮▮ This argument ignores the undisputed fact that the shareholders of Hotfile, including Mr. Titov, do not have formal job titles, which is not unusual for a small start-up. Nothing suggests that this email was a reflection of Mr. Titov's actual role at Hotfile. Plaintiffs seek to draw similarly unwarranted conclusions based on the fact that ▮▮▮▮▮ Yeh. Ex. 133. There is no legal basis for such a conclusion. The evidence shows that Mr. Titov's actual role is more limited than Plaintiffs' claim. TSUF 5, 6, 10, 11.

7

FILED UNDER SEAL                                             CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

summary judgment motion, Plaintiffs changed their story, asserting that Mr. Titov formed Lemuria ███████████████████████████████████████████████████████ ██████████████████████████████████████████ POTMSJ at 36. █████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████ DRSF 21.c.iii.; Titov Opp. Decl. Ex. D.

Now, Plaintiffs have revised their theory yet again, switching course to claim that "the reasons for initially founding [Lemuria] are immaterial: because such complaints from copyright owners now go to Lemuria, rather than a third party, Lemuria (i.e., Titov) ensures that Hotfile's Internet service, which is essential to its operation, will not be jeopardized by complaints about copyright infringement." POTMSJ at 10. This theory is equally off base. The evidence shows that Hotfile's internet service was never jeopardized by complaints – the only thing that jeopardized it was Webazilla's performance. TSUF 13; DRSF 21.c.iii.; Titov Opp. Decl. Ex. D. And even if that were not the case, Plaintiffs' fail to articulate how this could possibly make Mr. Titov a "guiding spirit" or dominant influence" at Hotfile.[11]

Plaintiffs' other arguments about Lemuria similarly lack merit. Plaintiffs insinuate impropriety by claiming that Lemuria and Hotfile have ███████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████ Titov Opp. Decl. Ex. C. Plaintiffs further argue that "Lemuria's services do not end with webhosting. It is Lemuria (i.e., Titov) that ██████████████████████████████████████████████████████ POTMSJ at 10. These are *precisely the types of services* that any web-host (e.g., Amazon) provides. Titov Opp. Decl. ¶ 58. In Plaintiffs' view, Webazilla and ████████ would presumably also be Hotfile's "guiding spirits." Plaintiffs also seek to make an issue of the fact that Lemuria ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

---

[11] This discussion of Lemuria applies equally to Plaintiffs' failed attempt to dispute Mr. Titov's undisputed fact 13 ("The termination of Webazilla and founding of Lemuria were unrelated to Webazilla receiving a subpoena.")

8

FILED UNDER SEAL                                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

██████████].[12] This does not transform Mr. Titov in to the "guiding spirit" or "dominant influence" at Hotfile.



### VI. MR. TITOV IS NOT SUBJECT TO THE COURT'S JURISDICTION

Plaintiffs do not deny that Mr. Titov, a Russian citizen living in Bulgaria, lacks sufficient contacts with Florida to subject him to the Court's jurisdiction. Instead they rely solely on a procedural technicality—arguing that, despite having raised the defense in his first filing with this Court (as well as in his answer and in many other filings), Mr. Titov was required also to raise his defense in the Rule 12 motion. While Mr. Titov acknowledges Rule 12(h)(1) and the authorities cited by Plaintiffs (e.g. *Pardazi v. Cullman Med. Cir.*, 896 F. 3d 1313, 1317 (11th Cir. 1990)) suggesting that Mr. Titov waived the defense, he notes that, unlike the defendant in *Pardazi*, he had already reserved that jurisdictional challenge in three earlier filings before

---



[12] ██████████ The Studios also make the unfounded claim that Mr. Titov "personally participated in decisions about whether or not to terminate users, how to handle copyright owner complaints, and how to hide Hotfile's support for copyright infringement" **based on exactly one email.** POTMSJ at 6. That email shows that when asked what to do, Mr. Titov instructed a ██ employee to terminate a user identified as a repeat infringer – i.e., an entirely appropriate response. This does not establish personal liability or wrongdoing of any kind. The other emails Plaintiffs rely on do not remotely support personal liability. ██████████

omitting it from the Rule 12 motion.[14] Plaintiffs were undeniably aware that Mr. Titov continued to contest jurisdiction after the Rule 12 motion, and his answer left no doubt that he was continuing to assert the jurisdictional defense.[15] Twice, in April 2011 and just a few months ago in connection with the January 2012 mediation, at Mr. Titov's insistence Plaintiffs agreed not to attempt to serve him with process while he visited this country for settlement discussions. Thamkul Ex. 10 (agreeing not "to use their presence on US soil to serve them with process or otherwise to prejudice them (much like we did when meeting Titov in Florida for our settlement conference"); and Yeh Ex. 131 (agreeing not to serve Mr. Titov during the January 9 mediation).

Mr. Titov again timely raised the affirmative defense at the first available opportunity in his summary judgment motion. At the Court's direction, he was required to combine all available defenses in one motion to be filed only after discovery closed. Under these circumstances, the Court may justifiably find that Plaintiffs have waived any waiver argument. *See Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995) (finding a waiver of a Rule 12(h)(1) waiver where Plaintiff had not raised the waiver before asserting it in a motion for reconsideration); *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 663-64 (7th Cir. 1986) (finding that "a party can waive a waiver of the defense of personal jurisdiction"). Plaintiffs have known continuously of Mr. Titov's intent to assert a defense of personal jurisdiction. When he set out the affirmative defense in his answer, Plaintiffs could have and should have moved to strike the defense under Rule 12(f). Yet they waited. They first asserted a waiver argument under Rule 12(h)(1) almost a year after Mr. Titov filed the Rule 12 motion in March 2011.

## VII.   CONCLUSION

The facts show Mr. Titov is not the guiding spirit behind Hotfile. The law cannot support his personal liability. The Court should grant Mr. Titov's motion for summary judgment.

---

[14] *See, e.g.*, Affidavit of Anton Titov, D.E. # 30-1 ("I am appearing in this case specially and I reserve my rights at this point to object to personal jurisdiction,"); Defendants' Memorandum of Law in Opposition to Plaintiffs' "Emergency" Motion For Order Preserving Evidence and Expediting Discovery," D.E. # 30, p. 1, fn.1 ("Defendants reserve . . . personal jurisdiction"); Agreed Motion and Memorandum of Law of Defendants Hotfile Corp. and Anton Titov For Enlargement of Time to Serve Responses to Plaintiffs' Complaint and For a Date By Which The Parties Shall Conduct the Federal Rule of Civil Procedure 26(f) and Local Rule 16.1 Conference, D.E. # 32 ("Defendants reserve . . . personal jurisdiction").

[15] *See* Answer, Affirmative Defenses, and Defenses of Defendant Anton Titov to Plaintiffs' Complaint, D.E. # 122, ¶71 ("Titov is not subject to personal jurisdiction in this Court. . .")

FILED UNDER SEAL                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DATED: March 19, 2012              Respectfully submitted,

                                   /s/ Janet T. Munn
                                   _____
                                   Janet T. Munn, Esq. Fla. Bar No. 501281
                                   Email: jmunn@rascoklock.com
                                   RASCO KLOCK
                                   283 Catalonia Avenue, Suite 200
                                   Coral Gables, Fl 33134
                                   Telephone: 305.476.7101
                                   Telecopy: 305.476.7102

                                   And

                                   /s/ Janet T. Munn for Roderick M. Thompson
                                   _____
                                   Roderick M. Thompson, Esq. (admitted *pro hac vice*)
                                   Email: rthompson@fbm.com
                                   Andrew Leibnitz, Esq. (admitted *pro hac vice*)
                                   Email: aleibnitz@fbm.com
                                   Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
                                   Email: tschoenberg@fbm.com
                                   Deepak Gupta, Esq. (admitted *pro hac vice*)
                                   Email: dgupta@fbm.com
                                   Janel Thamkul, Esq. (admitted *pro hac vice*)
                                   Email: jthamkul@fbm.com
                                   FARELLA BRAUN + MARTEL LLP
                                   235 Montgomery St.
                                   San Francisco, CA 94104
                                   Telephone: 415.954.4400
                                   Telecopy: 415.954.4480

                                   And

                                   /s/ Valentin Gurvits by Janet T. Munn
                                   _____
                                   Valentin Gurvits, Esq. (admitted *pro hac vice*)
                                   Email: vgurvits@bostonlawgroup.com
                                   BOSTON LAW GROUP
                                   825 Beacon Street, Suite 20
                                   Newton Center, MA 02459
                                   Telephone: 617.928.1800
                                   Telecopy: 617.928.1802

                                   *Counsel for Defendants Hotfile Corporation
                                   and Anton Titov*

11

FILED UNDER SEAL                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2012, a true and correct copy of the foregoing document, was filed conventionally under seal and served on all counsel of record identified below via e-mail and via FedEx.

Karen L. Stetson, Esq., Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Telephone: 818.935.5812

By: /s/ Janet A. Munn
Janet T. Munn