# EXHIBIT 1

# Principles for User Generated Content Services
## Foster Innovation. Encourage Creativity. Thwart Infringement.

**Related Releases**

- Youku Joins Broad Coalition in Support of UGC Principles
- sevenload Protects Professional Content Partners and User Generated Video
- Sony Pictures Entertainment and Crackle Join Pioneering User-Generated Content Coalition
- Internet and Media Industry Leaders Unveil Principles to Foster Online Innovation While Protecting Copyrights

**Translated Principles**

- Chinese

The following companies support these principles:



Dailymotion


Microsoft
myspace.com

sevenload


Leading commercial copyright owners ("Copyright Owners") and services providing user-uploaded and user-generated audio and video content ("UGC Services") have collaborated to establish these Principles to foster an online environment that promotes the promises and benefits of UGC Services and protects the rights of Copyright Owners. In this context, UGC Services are services such as Soapbox on MSN Video, MySpace, Dailymotion and Veoh.com, and not other technologies such as browsers, applets, email, or search services. While we may differ in our interpretation of relevant laws, we do not mean to resolve those differences in these Principles, which are not intended to be and should not be construed as a concession or waiver with respect to any legal or policy position or as creating any legally binding rights or obligations. We recognize that no system for deterring infringement is or will be perfect. But, given the development of new content identification and filtering technologies, we are united in the belief that the Principles set out below, taken as a whole, strike a balance that, on a going-forward basis, will result in a more robust, content-rich online experience for all.

In coming together around these Principles, Copyright Owners and UGC Services recognize that they share several important objectives: (1) the elimination of infringing content on UGC Services, (2) the encouragement of uploads of wholly original and authorized user-generated audio and video content, (3) the accommodation of fair use of copyrighted content on UGC Services, and (4) the protection of legitimate interests of user privacy. We believe that adhering to these Principles will help UGC Services and Copyright Owners achieve those objectives.

1. UGC Services should include in relevant and conspicuous places on their services information that promotes respect for intellectual property rights and discourages users from uploading infringing content.

2. During the upload process, UGC Services should prominently inform users that they may not upload infringing content and that, by uploading content, they affirm that such uploading complies with the UGC Service's terms of use. The terms of use for UGC Services should prohibit infringing uploads.

3. UGC Services should use effective content identification technology ("Identification Technology") with the goal of eliminating from their services all infringing user-uploaded audio and video content for which Copyright Owners have provided Reference Material (as described below). To that end and to the extent they have not already done so, by the end of 2007, UGC Services should fully implement commercially reasonable Identification Technology that is highly effective, in relation to other technologies commercially available at the time of implementation, in achieving the goal of eliminating infringing content. UGC Services should enhance or update the Identification Technology as commercially reasonable technology that makes a meaningful difference in achieving the goal becomes available.

veoh
viacom
youku 优酷

a. If a Copyright Owner has provided: (1) the reference data for content required to establish a match with user-uploaded content, (2) instructions regarding how matches should be treated, and (3) representations made in good faith that it possesses the appropriate rights regarding the content (collectively, "Reference Material"), then the UGC Service should apply the Identification Technology to that content to implement the Filtering Process described below. UGC Services should ensure that reasonable specifications, as well as any tools and/or technical support, for the delivery of Reference Material are made available to Copyright Owners. If a Copyright Owner does not include in the Reference Material instructions regarding how matches should be treated, the UGC Service should block content that matches the reference data.

b. The Identification Technology should use Reference Material to identify user-uploaded audio and video content that matches the reference data and should permit Copyright Owners to indicate how matches should be treated.

c. If the Copyright Owner indicates in the applicable Reference Material that it wishes to block user-uploaded content that matches the reference data, the UGC Service should use the Identification Technology to block such matching content before that content would otherwise be made available on its service ("Filtering Process"). The Copyright Owner may indicate in the applicable Reference Material that it wishes to exercise an alternative to blocking (such as allowing the content to be uploaded, licensing use of the content or other options), in which case, the UGC Service may follow those instructions or block the content, in its discretion.

d. Copyright Owners and UGC Services should cooperate to ensure that the Identification Technology is implemented in a manner that effectively balances legitimate interests in (1) blocking infringing user-uploaded content, (2) allowing wholly original and authorized uploads, and (3) accommodating fair use.

e. UGC Services should use the Identification Technology to block user-uploaded content that matches Reference Material regardless of whether the UGC Service has any licensing or other business relationship with the Copyright Owners who have provided such Reference Material (except that UGC Services may require that Copyright Owners enter into agreements with respect to the specifications for delivery of Reference Material that are commercially reasonable and that facilitate the provision of Reference Material by Copyright Owners and promote the goal of the elimination of infringing content). If a Copyright Owner authorizes specific users to upload content that would otherwise match Reference Material submitted by the Copyright Owner, the Copyright Owner should provide to the UGC Service a list of such users (a so-called white list).

f. UGC Services may, at their option, utilize manual (human) review of all user-uploaded audio and video content in lieu of, or in addition to, use of Identification Technology, if feasible and if such review is as effective as Identification Technology in achieving the goal of eliminating infringing content. If a UGC Service utilizes such manual review, it should do so without regard to whether it has any licensing or other business relationship with the Copyright Owners. Copyright Owners and UGC Services should cooperate to ensure that such manual review is implemented in a manner that effectively balances legitimate interests in (1) blocking infringing user-uploaded content, (2) allowing wholly original and authorized uploads, and (3) accommodating fair use.

g. Copyright Owners should provide Reference Material only with respect to content for which they believe in good faith that they have the appropriate rights to do so, and should update rights information as reasonable to keep it accurate. The inclusion of reference data for content by, or at the direction of, a Copyright

      Owner shall be deemed to be an implicit representation made in good faith that such Copyright Owner has the appropriate rights regarding such content. Copyright Owners should reasonably cooperate with UGC Services to avoid unduly stressing the Services' Identification Technology during limited periods when Copyright Owners, collectively, may be providing an overwhelmingly high volume of Reference Material. UGC Services should reasonably cooperate with Copyright Owners to ensure that such Reference Material is utilized by the Identification Technology as soon as possible during such overload periods.

   h. Promptly after implementation of Identification Technology, and at intervals that are reasonably timed throughout each year to achieve the goal of eliminating infringing content, UGC Services should use Identification Technology throughout their services to remove infringing content that was uploaded before Reference Material pertaining to such content was provided.

   i. Copyright Owners and UGC Services should cooperate in developing reasonable procedures for promptly addressing conflicting claims with respect to Reference Material and user claims that content that was blocked by the Filtering Process was not infringing or was blocked in error.

4. UGC Services and Copyright Owners should work together to identify sites that are clearly dedicated to, and predominantly used for, the dissemination of infringing content or the facilitation of such dissemination. Upon determination by a UGC Service that a site is so dedicated and used, the UGC Service should remove or block the links to such sites. If the UGC Service is able to identify specific links that solely direct users to particular non-infringing content on such sites, the UGC Service may allow those links while blocking all other links.

5. UGC Services should provide commercially reasonable enhanced searching and identification means to Copyright Owners registered with a service in order: (a) to facilitate the ability of such Copyright Owners to locate infringing content in all areas of the UGC Service where user-uploaded audio or video content is accessible, except those areas where content is made accessible to only a small number of users (not relative to the total number of users of the UGC Service), and (b) to send notices of infringement regarding such content.

6. When sending notices and making claims of infringement, Copyright Owners should accommodate fair use.

7. Copyright Owners should provide to UGC Services URLs identifying online locations where content that is the subject of notices of infringement is found – but only to the extent the UGC Service exposes such URLs.

8. When UGC Services remove content pursuant to a notice of infringement, the UGC Service should (a) do so expeditiously, (b) take reasonable steps to notify the person who uploaded the content, and (c) promptly after receipt of an effective counter-notification provide a copy of the counter-notification to the person who provided the original notice, and, at its option, replace the content if authorized by applicable law or agreement with the Copyright Owner.

9. When infringing content is removed by UGC Services in response to a notice from a Copyright Owner, the UGC Service should use reasonable efforts to notify the Copyright Owner of the removal, and should permit the Copyright Owner to provide, or request the UGC Service to provide on its behalf, reference data for such content to be used by the Identification Technology.

10. Consistent with applicable laws, including those directed to user privacy, UGC Services should retain for at least 60 days: (a) information related to user uploads of audio and video content to their services, including Internet Protocol addresses and time and date information for uploaded content; and (b) user-uploaded content that has been on their services but has been subsequently removed following a notice of infringement. UGC Services should provide that information and content to Copyright Owners as required by any valid process and consistent with applicable law.

11. UGC Services should use reasonable efforts to track infringing uploads of copyrighted content by the same user and should use such information in the reasonable implementation of a repeat infringer termination policy. UGC Services should use reasonable efforts to prevent a terminated user from uploading audio and/or video content following termination, such as blocking re-use of verified email addresses.

12. In engaging in the activities set forth in these Principles outside the United States, UGC Services and Copyright Owners should follow these Principles to the extent that doing so would not contravene the law of the applicable foreign jurisdiction.

13. Copyright Owners should not assert that adherence to these Principles, including efforts by UGC Services to locate or remove infringing content as provided by these Principles, or to replace content following receipt of an effective counter notification as provided in the Copyright Act, support disqualification from any limitation on direct or indirect liability relating to material online under the Copyright Act or substantively similar statutes of any applicable jurisdiction outside the United States.

14. If a UGC Service adheres to all of these Principles in good faith, the Copyright Owner should not assert a claim of copyright infringement against such UGC Service with respect to infringing user-uploaded content that might remain on the UGC Service despite such adherence to these Principles.

15. Copyright Owners and UGC Services should continue to cooperate with each other's reasonable efforts to create content-rich, infringement-free services. To that end, Copyright Owners and UGC Services should cooperate in the testing of new content identification technologies and should update these Principles as commercially reasonable, informed by advances in technology, the incorporation of new features, variations in patterns of infringing conduct, changes in users' online activities and other appropriate circumstances.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

↑ Top