# EXHIBIT 6

Highly Confidential

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20427-WILLIAMS/TURNOFF

- - - - - - - - - - - - - - - - - - - - - - - - - -
DISNEY ENTERPRISES,
INC., TWENTIETH CENTURY
FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP,
COLUMBIA PICTURES
INDUSTRIES, INC., and
WARNER BROS.
ENTERTAINMENT, INC.,

       Plaintiff,

v.

HOTFILE CORP., ANTON
TITOV, and DOES 1-10,

       Defendants.

HOTFILE CORP.,

       Counterclaimant,

v.

WARNER BROS ENTERTAINMENT
INC.,
       Counterdefendant.

- - - - - - - - - - - - - - - - - - - - - - - - - -
VOLUME II
H I G H L Y   C O N F I D E N T I A L
(Pursuant to protective order, the following
transcript has been designated highly confidential)

30(b)(6) DEPOSITION OF ANTON TITOV
Radisson Blu Hotel
Sofia, Bulgaria
Tuesday, December 6, 2011
AT:  9:10 a.m.
Job No: 44175

Highly Confidential

Page 192

```
 1                    A P P E A R A N C E S

 2    ATTORNEY FOR THE PLAINTIFFS:

 3              JENNER & BLOCK
                BY:  STEVEN B. FABRIZIO, ESQ.
 4              1099 New York Avenue, NW

 5              Washington, DC  20001

 6

 7

 8
      ATTORNEY FOR THE DEFENDANTS HOTFILE CORP.,
 9    AND ANTON TITOV:
                FARELLA, BRAUN & MARTEL
10              BY:  RODERICK M. THOMPSON, ESQ.
                235 Montgomery Street
11              San Francisco, California  94104

12

13              BOSTON LAW GROUP
                VALENTIN GURVITS
14              825 Beacon Street
                Newton Center, MA 02459
15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential

Page 193

1   Also present:

2   Court reporter:

3           Fiona Farson
            TSG Reporting
4

5   Videographer:

6           Simon Rutson
            TSG Reporting
7

8   Interpreter:

9           Assist. Prof. Boris Naimushin, Ph.D.

10

11  Technical expert:

12          Kelly Truelove

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential

Page 194

1                          I N D E X

2    EXAMINATION

3    BY MR. FABRIZZIO (continued)                        202

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential



Highly Confidential

Page 212



Highly Confidential

Page 230

1    MR. THOMPSON:  Objection, asked and answered.

2    A.  I don't know for a fact.

3    BY MR. FABRIZIO:

4    Q.  Have you ever discussed with your other shareholders

5         terminating Warner's access to the special rights

6         holders' account?

7    A.  I'm not -- I'm not -- can't remember any discussion like

8         that, absent the presence of my counsel.

9    Q.  Has Hotfile changed the way it processes notices sent by

10        Warner through the SRA account since the filing of its

11        counterclaim against Warner?

12   MR. THOMPSON:  Objection, vague.

13   A.  I'm not aware of any change.

14   BY MR. FABRIZIO:

15   Q.  For instance, does Hotfile now manually review files

16        noticed by Warner through the special rights holder's

17        account to see if the files are -- appear to be

18        accurate?

19   A.  I'm not aware of any reviews, and to my best knowledge,

20        the Warner's account still works instantly.

21                    (Reporter clarification)

22   BY MR. FABRIZIO:

23   Q.  Why is Hotfile not engaging in a higher-level review of

24        notices sent through the Warner SRA account?

25   MR. THOMPSON:  Objection.  Vague, and asked and answered.

Highly Confidential

Page 242

1      all files from a list page, Hotfile understood that in

2      doing so, it might be deleting files that were not

3      infringing as well; isn't that correct?

4    MR. THOMPSON:  Objection, asked and answered.

5    A.  I don't know I can say for a fact what was Hotfile

6      understanding back then.

7    BY MR. FABRIZIO:

8    Q.  What about right now?  Do you understand that when

9      Hotfile deletes all the files on a list page, that

10     Hotfile may be deleting files that are not infringing as

11     well?

12   A.  Yes, I understand that.

13   Q.  And is Hotfile going to continue its practice of

14     deleting all files on a list page?

15   MR. THOMPSON:  Objection, vague.

16   A.  I can't speak about future decisions of Hotfile by

17     myself.

18   BY MR. FABRIZIO:

19   Q.  Are you planning on talking to your other shareholders

20     about changing this practice?

21   A.  Just right now, as I sit here, I have other things to

22     think of.  I can't say.

23   Q.  Do you understand the concept or the term "false

24     positive"?

25   MR. THOMPSON:  Objection, vague.

Highly Confidential

Page 276

```
 1   A.   I don't know for a fact, but it's my belief that

 2        a compatible statement was there since the beginning.

 3   Q.   A comparable statement?  What do you consider

 4        a comparable statement?

 5   A.   A statement that will carry all -- carry on the same

 6        substance, I guess.

 7   Q.   Right.  Currently, today, in its IP policy page, Hotfile

 8        informs users that it has a policy to terminate repeat

 9        infringing users, correct?

10   A.   I believe so.

11   Q.   Okay.  And when did that IP policy page first appear on

12        Hotfile?

13   A.   I think approximately May or June 2010.

14   Q.   Okay.  And before May or June of 2010, where did --

15        where on its website did Hotfile inform users of

16        a policy to terminate repeat infringers?

17   A.   In terms of service, I think.

18   MR. FABRIZIO:  Okay.  I'm asking the court reporter to mark

19        as Titov exhibit 31 a printout from Hotfile terms of

20        service.  This is printed from archive.org.

21   Q.   And you will undoubtedly recognize from convention,

22        Mr. Titov, that this reflects an archive.org capture as

23        of February 2010.

24        (Titov exhibit 31 marked for identification.)

25   BY MR. FABRIZIO:
```

Highly Confidential

Page 279



Highly Confidential



Page 325

3    BY MR. FABRIZIO:

4    Q.  Do you want to take a quick break now, or do you want to

5         go on for a little bit?

6    A.  A quick break would be nice.

7    MR. FABRIZIO:  Let's take a quick break.

8    VIDEOGRAPHER:  Off the record at 3:53.

9                   (A break was taken.)

10   VIDEOGRAPHER:  Back on the record, 4:04.

11   BY MR. FABRIZIO:

Highly Confidential

Page 326



Highly Confidential

Page 329



Highly Confidential

Page 333



Highly Confidential

Page 334



[redacted]

Highly Confidential

Page 336



Highly Confidential

Page 341

██ ████████  ██████  ██████████

██ █ ██████████████████

██ ████████████

██ █ ██████████████████████████

██ ████████████████████████

██ ████████████████████████

██ ██████

██ █ ████████████

```
 9   Q.   Currently -- just wait one second; I kind of feel like
10        it's dial-an-expert.  It's kind of like he's here.
11   MR. THOMPSON:  We can't hear what he's saying, though.
12   MR. FABRIZIO:  You can't hear what he's saying; I can.
13        I feel like a newscaster.
14   MR. THOMPSON:  That's right.  Maybe a puppet, huh?
15   BY MR. FABRIZIO:
16   Q.   Okay.  Sorry, my editor was talking.
17            Currently, Hotfile receives DMCA notices by regular
18        mail, correct?
19   A.   Correct.
20   Q.   By facsimile, correct?
21   A.   Correct.
22   Q.   By email, correct?
23   A.   Correct.
24   Q.   And by special rights holder account, correct?
25   A.   Correct.
```

Highly Confidential

Page 371

```
 1                    HIGHLY CONFIDENTIAL
                    CERTIFICATE OF DEPONENT
 2

 3
     I, ANTON TITOV, hereby certify that I have read the
 4   foregoing pages of my deposition of testimony taken in these
     proceedings on Tuesday, December 6, 2011, and, with the
 5   exception of the changes listed on the next page and/or
     corrections, if any, find them to be a true and accurate
 6   transcription thereof.

 7

 8

 9

10
     Signed:  ..............................
11
     Name:    ANTON TITOV
12
     Date:    1/20/2012............
13

14

15

16

17

18

19

20

21

22

23

24

25
```

TSG Reporting - Worldwide    (877) 702-9580

Highly Confidential

Page 373

| 1 | HIGHLY CONFIDENTIAL | |
|---|---|---|
| 2 | | |
| 3 | E R R A T A | |
| | Deposition of ANTON TITOV | |
| 4 | | |
| 5 | Page/Line No.        Description | Reason for change |
| 6 | 225:25    Remind me. --> There might be. | Correct transcription |
| 7 | 234:20    Presentation --> representation | Correct transcription |
| 8 | 234:20    cost of the --> concept of | Correct transcription |
| 9 | 261:2     As --> That's | Correct transcription |
| 10 | 273:20    ███████████████ | Correct transcription |
| 11 | 279:3     is --> would | Correct transcription |
| 12 | 293:11    following --> logging | Correct transcription |
| 13 | 306:5     calls --> holds | Correct transcription |
| 14 | 306:6  service at hotfile.com --> to abuse@hotfile.com Correct trans. |
| 15 | 321:6     would decide it --> with this ID | Correct transcription |
| 16 | 333:20    brought --> blocked | Correct transcription |
| 17 | 337:7     file --> file ID | Correct transcription |

18   Signed:   ....................

19   Name:   ANTON TITOV

20   Date:   ....................

21

22

23

24

25

TSG Reporting - Worldwide     (877) 702-9580

Highly Confidential

```
                                                    Page 373

  1                    HIGHLY CONFIDENTIAL

  2                       E R R A T A

  3              Deposition of ANTON TITOV

  4     Page/Line No.        Description            Reason for change

  5

  6     361:25        state --> table              Correct transcription

  7     368:7  users stay on our uploads --> users_cowner_upload  Correct trans

  8

  9

 10

 11

 12

 13

 14

 15

 16

 17

 18    Signed:   .............................

 19    Name:   ANTON TITOV

 20    Date:   1/20/20 12 ..............

 21

 22

 23

 24

 25
```

Highly Confidential

Page 372

1                    HIGHLY CONFIDENTIAL
                CERTIFICATE OF COURT REPORTER
2

3
     I, Fiona Farson, with TSG Reporting, hereby certify that the
4    testimony of the witness Anton Titov in the foregoing
     transcript, taken on Tuesday, December 6, 2011 was reported
5    by me in machine shorthand and was thereafter transcribed by
     me; and that the foregoing transcript is a true and accurate
6    verbatim record of the said testimony.

7
     I further certify that I am not a relative, employee,
8    counsel or financially involved with any of the parties to
     the within cause, nor am I an employee or relative of any
9    counsel for the parties, nor am I in any way interested in
     the outcome of the within cause.
10

11

12

13

14
     Signed:  ........................
15
     Fiona Farson
16
     Dated: 12/17/2011
17

18

19

20

21

22

23

24

25

H I G H L Y   C O N F I D E N T I A L

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20427-WILLIAMS/TURNOFF

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

DISNEY ENTERPRISES,
INC., TWENTIETH CENTURY
FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP,
COLUMBIA PICTURES
INDUSTRIES, INC., and
WARNER BROS.
ENTERTAINMENT, INC.,
            Plaintiff,

v.

HOTFILE CORP., ANTON
TITOV, and DOES 1-10,


            Defendants.



HOTFILE CORP.,

            Counterclaimant,

v.

WARNER BROS ENTERTAINMENT
INC.,
            Counterdefendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -
VOLUME III
H I G H L Y   C O N F I D E N T I A L
(Pursuant to protective order, the following
transcript has been designated highly confidential)

30(b)(6) DEPOSITION OF ANTON TITOV
Radisson Blu Hotel
Sofia, Bulgaria
Wednesday, December 7, 2011
AT:  9:09 a.m.

Job # 44429

H I G H L Y   C O N F I D E N T I A L

Page 375

```
 1   A P P E A R A N C E S

 2        ATTORNEY FOR THE PLAINTIFFS:
                    JENNER & BLOCK, LLP
 3                  BY:  STEVEN FABRIZIO, ESQ.
                    1099 New York Avenue, NW
 4                  Washington, DC  20001

 5

 6

 7

          ATTORNEY FOR THE DEFENDANTS HOTFILE CORP.,
 8        AND ANTON TITOV:
                    FARELLA, BRAUN & MARTEL, LLP
 9                  BY:  RODERICK THOMPSON, ESQ.
                    235 Montgomery Street
10                  San Francisco, California  94104

11

12                  BOSTON LAW GROUP
                    BY:  VALENTIN GURVITS
13                  825 Beacon Street
                    Newton Center, MA 02459
14

15

16

17

18

19

20

21

22

23

24

25
```

H I G H L Y   C O N F I D E N T I A L

Page 376

 1   Also present:

 2   Court reporter:

 3           Fiona Farson
             TSG Reporting
 4

 5   Videographer:

 6           Simon Rutson
             TSG Reporting
 7

 8   Interpreter:

 9           Assist. Prof. Boris Naimushin, Ph.D.

10           Elena Alexieva

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

H I G H L Y   C O N F I D E N T I A L

Page 506

██  ██  ██████████████████

██  ██  ███████████████████████

██  ██  ██████████████████████████████

██  ██  ███████████████████████████████

██  ██  █████████████████████    ████████████

```
 6        I'll just look around.

 7   MR. FABRIZIO:  Okay.  Why don't we take that break.

 8   VIDEOGRAPHER:  Off the record, 3:57.

 9                    (A break was taken.)

10   VIDEOGRAPHER:  Back on the record, 4:13.

11   BY MR. FABRIZIO:

12   Q.  Has Hotfile implemented some form of copyright filtering

13       since the institution of this lawsuit?

14   A.  Ask you asking about overall?

15   Q.  Well, I was asking any form of copyright filtering.

16   A.  Do you consider this?

17   Q.  Yeah, I do consider it -- well, let me put it this way;

18       since the institution of this lawsuit, has Hotfile

19       implemented any form of content identification

20       technology?

21   A.  Yes, we started using Vobile.

22   Q.  Anything else?

23   A.  No, I don't think so.

24   Q.  Okay.  And for the record, what is Vobile?

25   MR. THOMPSON:  Objection, vague.
```

H I G H L Y   C O N F I D E N T I A L

Page 507

1    A.   Vobile is a company that will provide technology for

2         fingerprinting, taking fingerprints from videos --

3         videos, and they -- then they have service for

4         presenting these fingerprints to them, and they will

5         respond if this video matches any video in their

6         database.

7    BY MR. FABRIZIO:

8    Q.   And when they respond, because a finger -- they have

9         a fingerprint match, do they provide information about

10        the copyright owner and instructions from a copyright

11        owner with regard to a particular file?

12   MR. THOMPSON:   Objection, compound and vague.

13   A.   I know for sure that they provide the copyright owner,

14        but I'm not sure about the instructions.

15   BY MR. FABRIZIO:

16   Q.   Okay.  Well, let me put it this way, if there's a -- if

17        upon submission of a fingerprint to Vobile there's

18        a fingerprint match, Vobile sends information back to

19        you?

20   A.   It's more like we are supposed to connect and to check

21        if the submission is processed, but basically that's the

22        idea.

23   Q.   Okay.  And when Hotfile connects in to check, what

24        information does Vobile make available to Hotfile about

25        the file that it was checking?

H I G H L Y   C O N F I D E N T I A L

Page 508

1    A.   It would be an XML file that will either say that there

2         is no match, or a response that will indicate

3         a copyrighted work name, maybe the producer of the

4         copyrighted work, and I believe the offset in the video

5         where the fingerprint starts the partial match.

6    Q.   Does -- anything else?

7    A.   That is what I can think of.

8    Q.   Does the Vobile data indicate whether the file should be

9         allowed for distribution or blocked?

10   A.   Since you are mentioning a certain time, I assume that

11        it does, but I don't have clear memory of it doing so.

12   Q.   Okay.

13   MR. THOMPSON:   Again, Mr. Titov, I know Mr. Fabrizio knows

14        a lot about this, but you should just testify to what

15        you know.

16   MR. FABRIZIO:   Don't give me too much credit.

17   BY MR. FABRIZIO:

18   Q.   Did Hotfile consider using -- well, strike that.

19        If I refer to Vobile's technology as "video

20        fingerprinting technology," will you understand what I'm

21        referring to?

22   A.   Yes, I will.

23   Q.   Is that how you refer to it as well?

24   A.   Let's say yes.

25   Q.   Okay.  Did Hotfile consider using video fingerprinting

H I G H L Y   C O N F I D E N T I A L

Page 509

1          technology prior to the institution of this lawsuit?

2     MR. THOMPSON:  Objection, vague.

3     A.  No, I don't think so.

4     BY MR. FABRIZIO:

5     Q.  Did you have any discussions with your co-shareholders

6          about using any form of video fingerprinting?

7     A.  I don't recall any such discussion.

8     Q.  And, again, I'm talking about video fingerprinting

9          technology, whether it's offered by Vobile or some other

10          supplier, or even developed on your own, I'm speaking of

11          the technology itself; do you understand that?

12     A.  Yes, I understand that.

13     Q.  So, with that clarification, did Hotfile consider

14          deploying video fingerprinting technology in its system

15          prior to the institution of this litigation?

16     A.  I don't remember any such discussion.

17     Q.  Did Hotfile consider using any form of content

18          recognition technology in order to prevent copyrighted

19          content from being uploaded to Hotfile prior to this

20          litigation?

21     MR. THOMPSON:  Objection, vague, to some extent asked and

22          answered.

23     A.  No, I don't remember anything like that.

24     BY MR. FABRIZIO:

25     Q.  Why, after the commencement of this litigation, did

H I G H L Y   C O N F I D E N T I A L

Page 510

1       Hotfile implement the Vobile video fingerprinting

2       technology?

3   A.  We understood this to be important to the plaintiffs.

4   Q.  Is it the case that Hotfile first approached Vobile only

5       after the plaintiff group suggested doing so?

6   MR. THOMPSON:  Objection, assumes facts.

7   BY MR. FABRIZIO:

8   Q.  Let me strike that and ask it this way; after the

9       institution of this litigation, Hotfile representatives

10      met with representatives of the plaintiff group,

11      correct?

12  A.  Correct.

13  Q.  And the plaintiff group's -- well, strike that.

14          I'm trying to be respectful of our discussions.

15  MR. THOMPSON:  Yeah.  I don't see how you can go there.

16  BY MR. FABRIZIO:

17  Q.  And it's a fact, is it not, that in the complaint the

18      plaintiffs filed in this action, the plaintiffs

19      indicated that Hotfile could and should be using video

20      fingerprint technology to prevent copyright

21      infringement, correct?

22  MR. THOMPSON:  Objection.  The document speaks for itself.

23  A.  I have some memories of some language saying that.

24  BY MR. FABRIZIO:

25  Q.  When did Hotfile first approach Vobile?

H I G H L Y   C O N F I D E N T I A L

Page 511

1   A.   I think it was end of April or May.

2   Q.   2011?

3   A.   Correct.

4   Q.   Did Hotfile research or consider the content

5        identification technologies of any other company other

6        than Vobile?

7   VIDEOGRAPHER:   It's calibrating -- whatever that is.

8   MR. FABRIZIO:   Sorry.  For the record, the printer in the

9        room started.

10  MR. THOMPSON:   Calibrating.

11  MR. GURVITZ:   Calibrating.

12  MR. FABRIZIO:   Let me repeat the question.

13  BY MR. FABRIZIO:

14  Q.   Did Hotfile research or consider the content

15       identification technologies of any other company besides

16       Vobile?

17  A.   I don't think Hotfile by itself ever researched any

18       other company.

19  Q.   Did anyone on behalf of Hotfile research other content

20       identification technologies?

21  A.   I'm not sure, but might be our counsel.

22  Q.   Anyone other than your counsel?

23  A.   No, I don't think so.

24  Q.   Did Hotfile take a license from Vobile for its servers?

25  A.   There is a contract.  I'm not sure if it's licensed.

H I G H L Y   C O N F I D E N T I A L

Page 512

1    Q.  Fair enough.  Is there a name for the product or service

2         of Vobile that Hotfile is using?

3    A.  Yes.

4    Q.  What is that name?

5    A.  Mediawise.

6                    (Reporter clarification.)

7    MR. FABRIZIO:  Yes.

8    BY MR. FABRIZIO:

9    Q.  Has Hotfile considered any other products or services

10        offered by Vobile?

11   A.  Yes, we've been informed that Cloud 9 had technology

12        that appeared -- that was announced after we started

13        using Mediawise would be more appropriate for a service

14        like Hotfile.

15   Q.  Okay, and is that product V, Cloud 9?

16   A.  Yes, it is.

17   Q.  The number "9."  Has Hotfile implemented V, Cloud 9?

18   A.  Currently no.

19   Q.  Why not?

20   A.  Mostly developer and especially my time constraint is

21        connected in connection with this litigation, there

22        is -- and has been for some time.  I did implement.

23   Q.  Did you personally implement the Mediawise technology?

24   MR. THOMPSON:  Objection, vague.

25   A.  With some help from Vasil Kolev.

H I G H L Y   C O N F I D E N T I A L

Page 513

1    BY MR. FABRIZIO:

2    Q.  Does Hotfile intend to deploy the V, Cloud 9 technology?

3    A.  Yes, it does intend.

4    Q.  And I'm trying to make sure I understand this correctly;

5        the reason why Hotfile has not yet deployed V, Cloud 9

6        relates to your personally being busy with activities

7        related to this litigation?

8    A.  Yes, that's -- that is part of it.

9    Q.  Is there any other part of it?

10   A.  I can't think of any other part.

11   Q.  Has Hotfile done any testing of the performance of the

12       Mediawise service from Vobile?

13   A.  Can you be more specific?

14   Q.  Sure.  Has Hotfile done any analysis of how well Vobile

15       technology performs?

16   A.  Not for Hotfile's own pleasure.

17   Q.  Has Hotfile conducted such an analysis for the pleasure

18       of anyone else?

19   A.  For the counsel.

20   MR. THOMPSON:  Mr. Titov, please don't testify about

21       anything your counsel asked you to do.

22   A.  Okay.

23   BY MR. FABRIZIO:

24   Q.  But, just to clarify, did Hotfile, or has Hotfile

25       conducted analyses of the performance of Vobile

H I G H L Y   C O N F I D E N T I A L

Page 514

1        technology that it considers to be work product in this

2        case?

3    MR. THOMPSON:  Objection.  I instruct him not to answer.

4           Steve, you can't ask if there is a particular piece

5        of work product.  That obviously goes to disclosing it.

6    MR. FABRIZIO:  Well.  I'm not asking what he found out.

7        I just want to know if there is one.

8    A.  May I end the discussion?

9    MR. FABRIZIO:  Yes.

10   A.  Everything that we've got from Vobile as responses and

11       everything was produced in the case, so I think that

12       Kelly can do some research, whatever -- does that make

13       sense?

14   BY MR. FABRIZIO:

15   Q.  Yes, it makes sense, and there's nothing -- there's no

16       analyses that you're withholding from production, is

17       that what you're saying?

18   MR. THOMPSON:  If --

19   A.  We produced the data, not the analysis, but --

20   BY MR. FABRIZIO:

21   Q.  Okay --

22   A.  -- any search analysis that we performed can be

23       performed on this data for any period or any...

24   MR. FABRIZIO:  I understand, okay, so...

25   MR. THOMPSON:  We should make -- just make it clear for the

H I G H L Y   C O N F I D E N T I A L

Page 515

```
 1            record, Mr. Fabrizio, I will not allow the witness to

 2            answer the question as to what analysis he has performed

 3            at the request of his counsel --

 4     MR. FABRIZIO:  No, I wasn't asking him --

 5     MR. THOMPSON:  -- whether on Vobile or any other subject.

 6     MR. FABRIZIO:  I wasn't asking him what analyses he

 7            performed.  I was simply trying to ascertain whether as

 8            a matter of fact there is something that defendants

 9            consider work product.  You would have to disclose that

10            much in a privilege log.

11     MR. THOMPSON:  Well, Mr. Fabrizio, this -- this is our work

12            product, and we're not going to disclose it, period, I'm

13            not going to tell you what it is.

14     MR. FABRIZIO:  I'm not asking what it is.  I'm just asking

15            if it is.

16     MR. THOMPSON:  Well, you're free to ask him any factual

17            information you want which does not disclose work

18            product communications or work product analysis.

19     MR. FABRIZIO:  Okay.

20     A.   I don't think Hotfile ever created documents as part of

21            this analysis.

22     MR. THOMPSON:  Okay.  That does help.

23     BY MR. FABRIZIO:

24     Q.   When did Hotfile begin using the Vobile Mediawise

25            technology on the live Hotfile site?
```

H I G H L Y   C O N F I D E N T I A L

Page 516



H I G H L Y   C O N F I D E N T I A L

Page 517



H I G H L Y   C O N F I D E N T I A L

Page 518



H I G H L Y   C O N F I D E N T I A L

Page 519

H I G H L Y   C O N F I D E N T I A L

Page 520

H I G H L Y   C O N F I D E N T I A L

Page 521

H I G H L Y   C O N F I D E N T I A L

Page 522

H I G H L Y   C O N F I D E N T I A L

Page 523



H I G H L Y   C O N F I D E N T I A L

Page 524

H I G H L Y   C O N F I D E N T I A L

Page 525

H I G H L Y   C O N F I D E N T I A L

Page 526



10    Q.  Have you formed a personal opinion as to the

11        effectiveness of the Vobile technology in identifying

12        copyrighted video content?

13    MR. THOMPSON:   Objection, calls for opinion.   You can

14        answer.

15    A.  No, I don't think I did.

16    BY MR. FABRIZIO:

17    Q.  Either way -- well, strike that.

18            Have you formed an opinion -- well, strike that.

19            Have you personally given any consideration to

20        whether the Vobile technology is effective in

21        identifying copyrighted video content?

22    A.  No, I don't think so.

23    Q.  Has Hotfile been receiving fewer DMCA notices from video

24        content owners since it began using the Vobile

25        technology?

H I G H L Y   C O N F I D E N T I A L

Page 553

```
 1                      HIGHLY CONFIDENTIAL
                   CERTIFICATE OF COURT REPORTER
 2


 3
        I, Fiona Farson, with TSG Reporting, hereby certify that the
 4   testimony of the witness Anton Titov in the foregoing
     transcript, taken on Wednesday, December 7, 2011 was
 5   reported by me in machine shorthand and was thereafter
     transcribed by me; and that the foregoing transcript is a
 6   true and accurate verbatim record of the said testimony.

 7
     I further certify that I am not a relative, employee,
 8   counsel or financially involved with any of the parties to
     the within cause, nor am I an employee or relative of any
 9   counsel for the parties, nor am I in any way interested in
     the outcome of the within cause.

10

11

12

13

14
        Signed: _____
15
     Fiona Farson
16
     Dated: 12-19-2011
17

18

19

20

21

22

23

24

25
```

H I G H L Y   C O N F I D E N T I A L

Page 552

HIGHLY CONFIDENTIAL
CERTIFICATE OF DEPONENT

I, ANTON TITOV, hereby certify that I have read the
foregoing pages of my deposition of testimony taken in these
proceedings on Wednesday, December 7, 2011, and, with the
exception of the changes listed on the next page and/or
corrections, if any, find them to be a true and accurate
transcription thereof.


Signed: _____

Name:    ANTON TITOV

Date:    1/20/2012

H I G H L Y   C O N F I D E N T I A L

Page 554

1               HIGHLY CONFIDENTIAL

2    NAME OF CASE: Disney Enterprises Inc. v. Hotfile Corp.

3    DATE OF DEPOSITION: 12-7-2011

4    NAME OF WITNESS: ANTON TITOV

5    Reason Codes:

6         1.  To clarify the record.

7         2.  To conform to the facts.

8            3.  To correct transcription errors.

9    Page   396   Line   16   Reason   3

10   From  no                 to      to

11   Page   402   Line   13   Reason   3

12   From  Googles            to     cookies

13   Page   402   Line   15   Reason   3

14   From  Googles            to     cookies

15   Page   418   Line   5    Reason   3

16   From   user field field     to   user input field

17   Page   439   Line   24   Reason   3

18   From  Lucyan             to       Luchian

19   Page   458   Line   5    Reason   5

20   From   only the           to    only if the

21   Page   483   Line   19   Reason   3

22   From  to upload down the file from   to   will pull down the file from

23

24                   _____

25                        ANTON TITOV

TSG Reporting - Worldwide

H I G H L Y   C O N F I D E N T I A L

Page 554

1               HIGHLY CONFIDENTIAL

2    NAME OF CASE: Disney Enterprises Inc. v. Hotfile Corp.

3    DATE OF DEPOSITION: 12-7-2011

4    NAME OF WITNESS: ANTON TITOV

5    Reason Codes:

6          1.  To clarify the record.

7          2.  To conform to the facts.

8             3.  To correct transcription errors.

9    Page  436   Line  18   Reason   3

10   From  Lucyan              to    Luchian

11   Page  436   Line  23   Reason   3

12   From  Lucyan              to    Luchian

13   Page  439   Line  24   Reason   3

14   From  Lucyan              to    Luchian

15   Page  439   Line  2    Reason   3

16   From  Lucyan's            to    Luchian's

17   Page _____ Line _____ Reason _____

18   From _____ to _____

19   Page _____ Line _____ Reason _____

20   From _____ to _____

21   Page _____ Line _____ Reason _____

22   From _____ to _____

23

24                        _____

25                        ANTON TITOV

TSG Reporting - Worldwide