# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA


DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

       Plaintiffs,

    vs.        CASE NO. 11-20427-WILLIAMS-TURNOFF

HOTFILE CORP., ANTON TITOV,
and DOES 1-10,

       Defendants.

_____

AND RELATED CROSS-ACTION.

_____


HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF LANCE R. GRIFFIN, ESQUIRE

PURSUANT TO FEDERAL RULE 30(b)(6)

Los Angeles, California

Thursday, December 22, 2011


Reported by:
LORI SCINTA, RPR
CSR No. 4811

Job No. 178940



877.955.3855

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF FLORIDA

3

4    DISNEY ENTERPRISES, INC.,
     TWENTIETH CENTURY FOX FILM
5    CORPORATION, UNIVERSAL CITY
     STUDIOS PRODUCTIONS LLLP,
6    COLUMBIA PICTURES INDUSTRIES,
     INC., and WARNER BROS.
7    ENTERTAINMENT INC.,

8              Plaintiffs,

9         vs.          CASE NO. 11-20427-WILLIAMS-TURNOFF

10   HOTFILE CORP., ANTON TITOV,
     and DOES 1-10,
11
               Defendants.
12   _____
     AND RELATED CROSS-ACTION.
13   _____

14

15     HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

16          Videotaped deposition of LANCE R. GRIFFIN,

17   ESQUIRE, pursuant to Federal Rule 30(b)(6), taken on

18   behalf of Defendants and Counterclaimant Hotfile Corp.,

19   at 633 West Fifth Street, Suite 3600, Los Angeles,

20   California, beginning at 9:47 A.M. and ending at

21   4:49 P.M. on Thursday, December 22, 2011, before

22   LORI SCINTA, RPR, Certified Shorthand Reporter No. 4811.

23

24

25



877.955.3855

2

```
 1      APPEARANCES:

 2

 3      For Plaintiffs:

 4
            JENNER & BLOCK LLP
 5          BY:  STEVEN B. FABRIZIO
            Attorney at Law
 6          1099 New York Avenue, NW, Suite 900
            Washington, D.C. 20001-4412
 7          202.639.6000
            Email:  sfabrizio@jenner.com
 8
                -- and --
 9
            THE WALT DISNEY COMPANY
10          BY:  GORDON GOLDSMITH
            Attorney at Law
11          500 South Buena Vista Street
            Burbank, California 91521-0641
12          818.560.7893

13

14      For Defendants and Counterclaimant Hotfile Corp.:

15
            FARELLA BRAUN + MARTEL LLP
16          BY:  ANTHONY SCHOENBERG
            Attorney at Law
17          235 Montgomery Street
            San Francisco, California 94104
18          415.954.4400
            Email:  tschoenberg@fbm.com
19

20      Videographer:

21
            VONYARN MASON
22          SARNOFF COURT REPORTERS
            20 Corporate Park, Suite 350
23          Irvine, California 92606
            877.955.3855
24

25
```



877.955.3855

3

**LANCE R. GRIFFIN, ESQ.**                                    12/22/2011
**HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 10:17 | 1 | BY MR. SCHOENBERG: |
| 10:17 | 2 | Q    So you said that you -- you supervised the |
| 10:17 | 3 | notice and takedown program at Walt Disney Company, |
| 10:18 | 4 | correct? |
| 10:18 | 5 | A    Yes. |
| 10:18 | 6 | Q    Can you describe that program to me. |
| 10:18 | 7 | MR. FABRIZIO:  The program or his -- his job |
| 10:18 | 8 | responsibilities and supervising? |
| 10:18 | 9 | MR. SCHOENBERG:  The program itself. |
| 10:18 | 10 | MR. FABRIZIO:  Mr. Griffin, you can describe it |
| 10:18 | 11 | at a high level. |
| 10:18 | 12 | THE WITNESS:  Okay. |
| 10:18 | 13 | It involves the finding and verification of |
| 10:18 | 14 | content and sending notices on that content. |
| 10:18 | 15 | BY MR. SCHOENBERG: |
| 10:18 | 16 | Q    And when you say "notices," what do you mean? |
| 10:18 | 17 | A    It could vary from a cease-and-desist letter, a |
| 10:18 | 18 | DMCA notice or a notice under local law. |
| 10:18 | 19 | Q    And when you say "DMCA," are you referring to |
| 10:18 | 20 | the Digital Millennium Copyright Act? |
| 10:18 | 21 | A    Yes. |
| 10:19 | 22 | Q    And when you say "verification of content," |
| 10:19 | 23 | what content are you referring to? |
| 10:19 | 24 | MR. FABRIZIO:  Objection.  Vague. |
| 10:19 | 25 | THE WITNESS:  As I explained before, it |



| | | |
|---|---|---|
| 10:28 | 1 | Q   And with respect to Hotfile, are there specific |
| 10:28 | 2 | linking sites that you use to find content on Hotfile? |
| 10:28 | 3 | MR. FABRIZIO:  Again, I'll instruct the witness |
| 10:28 | 4 | not to answer the question. |
| 10:28 | 5 | Counsel, that squarely falls into the specific |
| 10:28 | 6 | category of questions that the court ruled out of |
| 10:28 | 7 | bounds. |
| 10:28 | 8 | BY MR. SCHOENBERG: |
| 10:28 | 9 | Q   How do the vendors crawl linking sites? |
| 10:28 | 10 | MR. FABRIZIO:  Objection.  Calls for |
| 10:28 | 11 | speculation. |
| 10:28 | 12 | THE WITNESS:  Some of their methods are |
| 10:29 | 13 | confidential pursuant to agreements we have with them. |
| 10:29 | 14 | BY MR. SCHOENBERG: |
| 10:29 | 15 | Q   Who are the vendors that you're referring to? |
| 10:29 | 16 | MR. FABRIZIO:  Again, Mr. Griffin, to the |
| 10:29 | 17 | extent you're referring to vendors that Disney uses with |
| 10:29 | 18 | regard to Hotfile or comparable download hubs, you can |
| 10:29 | 19 | identify the vendors. |
| 10:29 | 20 | Beyond that, I have instructed you not to |
| 10:29 | 21 | answer. |
| 10:29 | 22 | THE WITNESS:  I -- I believe the two vendors |
| 10:29 | 23 | would be DtecNet and Webkontrol. |
| 10:29 | 24 | BY MR. SCHOENBERG: |
| 10:30 | 25 | Q   And what do those vendors do other than crawl |



10:30   1    linking sites?

10:30   2            MR. FABRIZIO:  Objection.  Vague, ambiguous.

10:30   3            Can you be more specific, Counsel, since we're

10:30   4    in an area where we have highly sensitive information,

10:30   5    some of which may be confidential?  We're happy to let

10:30   6    you get any information you're entitled to, but want to

10:30   7    make sure that we don't inadvertently through a broad

10:30   8    question get information -- into information "we're" not

10:30   9    entitled to get into.

10:30  10    BY MR. SCHOENBERG:

10:30  11        Q    What are the vendors searching for on linking

10:30  12    sites?

10:30  13            MR. FABRIZIO:  You can answer at a high level,

10:30  14    Mr. Griffin.

10:30  15            THE WITNESS:  Links to Disney content.

10:30  16    BY MR. SCHOENBERG:

10:30  17        Q    And once they find that content, what do they

10:30  18    do with those links?

10:30  19            MR. FABRIZIO:  Objection.  Vague and ambiguous.

10:30  20    BY MR. SCHOENBERG:

10:30  21        Q    Let me actually ask -- once they find those

10:31  22    links, what do they do with them?

10:31  23            MR. FABRIZIO:  Same -- same objections.  Vague,

10:31  24    ambiguous and calls for speculation.

10:31  25            THE WITNESS:  I believe that they would send



10:31  1    those links to us and, at the same time, download the

10:31  2    content associated with the link.

10:31  3    BY MR. SCHOENBERG:

10:31  4         Q   And then what do they do with it?

10:31  5             MR. FABRIZIO:  Objection.  Vague, ambiguous,

10:31  6    calls for speculation.

10:31  7             THE WITNESS:  That information, perhaps

10:31  8    including some other information, would be put into a

10:31  9    web portal, which is a website that we can go to.

10:31 10    BY MR. SCHOENBERG:

10:31 11         Q   And do they make that web portal available to

10:31 12    your team?

10:31 13         A   Yes.

10:31 14         Q   And what do you do with it?

10:31 15             MR. FABRIZIO:  Objection.  Vague, ambiguous.

10:31 16    And, again, it's -- this is a matter -- these are

10:32 17    matters that have been ruled irrelevant by the court.

10:32 18             I'm giving you a little leeway because we're at

10:32 19    a deposition and you may just want some of this for

10:32 20    general background, but we're going to be very careful

10:32 21    about how -- what depth of information you're entitled

10:32 22    to here, Counsel.

10:32 23             So if you can answer at the very highest

10:32 24    levels, you can go ahead.  And we'll take it question by

10:32 25    question.



LANCE R. GRIFFIN, ESQ.                                    12/22/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

10:32  1          THE WITNESS:  Could you repeat the question?

10:32  2     BY MR. SCHOENBERG:

10:32  3          Q    You said the vendors make a web portal

10:32  4     available to your team, and I said, "What do you do with

10:32  5     it?"

10:32  6          A    We would --

10:32  7          MR. FABRIZIO:  Same objections.

10:32  8          THE WITNESS:  Yes.

10:32  9          We would review the links and the downloaded

10:32 10     content and any other information on the site.

10:32 11     BY MR. SCHOENBERG:

10:32 12          Q    How many people are involved -- when you said

10:32 13     "human review" earlier, is that what you meant?

10:32 14          A    Yes.  Yes.

10:32 15          Q    Okay.  How many people are involved in that

10:32 16     human review?

10:33 17          MR. FABRIZIO:  Pause just for one second.

10:33 18          Counsel, as I have with some of your other

10:33 19     colleagues and your colleagues have with us, we would

10:33 20     like to mark the entire deposition transcript as highly

10:33 21     confidential, provisionally, subject to our later

10:33 22     conducting page, line designations pursuant to the

10:33 23     protective order.

10:33 24          Is that acceptable?

10:33 25          MR. SCHOENBERG:  That's acceptable.



LANCE R. GRIFFIN, ESQ.                    12/22/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

10:35  1         MR. FABRIZIO:  I'm going to instruct you not to

10:35  2    answer, Mr. Griffin.

10:35  3         (Instruction not to answer.)

10:35  4    BY MR. SCHOENBERG:

10:36  5         Q    After the human review is completed, what is

10:36  6    the next step in this process that you've been

10:36  7    describing?

10:36  8         MR. FABRIZIO:  Again, at a high level,

10:36  9    Mr. Griffin.

10:36  10         THE WITNESS:  Notices would be sent to the site

10:36  11    on content identified as infringing the Disney content.

10:36  12    BY MR. SCHOENBERG:

10:36  13         Q    When you say "notices," do you mean DMCA

10:36  14    takedown notices?

10:36  15         MR. FABRIZIO:  Objection.  Asked and answered.

10:36  16         THE WITNESS:  It's -- it could be the

10:36  17    cease-and-desist notice, it could be a notice compliant

10:36  18    with local law or it could be a DMCA notice.

10:36  19    BY MR. SCHOENBERG:

10:36  20         Q    Under what circumstances do you send a

10:37  21    cease-and-desist notice?

10:37  22         MR. FABRIZIO:  Again, Mr. Griffin -- actually,

10:37  23    if you could just pause one second.  Let me give a

10:37  24    moment of thought to this.

10:37  25         THE VIDEOGRAPHER:  We are going off the



| | | |
|---|---|---|
| 10:40 | 1 | A    I think recently we sent one to "221.com." |
| 10:41 | 2 | MR. FABRIZIO:  Did you get that, Lori? |
| 10:41 | 3 | THE REPORTER:  "221.com"? |
| 10:41 | 4 | BY MR. SCHOENBERG: |
| 10:41 | 5 | Q    Any others? |
| 10:41 | 6 | A    Yes.  I can't recall their names.  There's -- |
| 10:41 | 7 | there could be many. |
| 10:41 | 8 | Q    Did you ever send that type of notice to |
| 10:41 | 9 | Hotfile? |
| 10:41 | 10 | MR. FABRIZIO:  Objection.  Vague. |
| 10:41 | 11 | THE WITNESS:  No, I don't believe so. |
| 10:41 | 12 | BY MR. SCHOENBERG: |
| 10:41 | 13 | Q    Why not? |
| 10:41 | 14 | MR. GOLDSMITH:  I think that's privileged. |
| 10:41 | 15 | MR. FABRIZIO:  You think that's privileged? |
| 10:41 | 16 | Okay.  The determination as to what types of |
| 10:41 | 17 | notices to send to which type of services is based on |
| 10:41 | 18 | privileged analysis and communications internally at |
| 10:41 | 19 | Disney. |
| 10:41 | 20 | And I'm going to instruct the witness not to |
| 10:41 | 21 | answer. |
| 10:41 | 22 | (Instruction not to answer.) |
| 10:41 | 23 | BY MR. SCHOENBERG: |
| 10:41 | 24 | Q    Have you sent DMCA takedown notices to Hotfile? |
| 10:41 | 25 | A    We have sent notices to Hotfile which meets |



LANCE R. GRIFFIN, ESQ.                    12/22/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| 10:42 | 1 | requirements of the DMCA. |
| 10:42 | 2 | Q   And how many -- could you estimate how many |
| 10:42 | 3 | you've sent? |
| 10:42 | 4 | A   I don't have an accurate number.  I would |
| 10:42 | 5 | imagine thousands. |
| 10:42 | 6 | Q   What is the next step in this process after |
| 10:42 | 7 | you've sent one of these notices? |
| 10:42 | 8 | MR. FABRIZIO:  Objection.  Vague and ambiguous. |
| 10:42 | 9 | Again, at a high level, Mr. Griffin. |
| 10:42 | 10 | THE WITNESS:  Generally, we would confirm that |
| 10:43 | 11 | the content was taken down. |
| 10:43 | 12 | BY MR. SCHOENBERG: |
| 10:43 | 13 | Q   And how do you do that? |
| 10:43 | 14 | MR. FABRIZIO:  Again, Mr. Griffin, at a very |
| 10:43 | 15 | high level here. |
| 10:43 | 16 | THE WITNESS:  Someone would check the link to |
| 10:43 | 17 | see if it's still active. |
| 10:43 | 18 | BY MR. SCHOENBERG: |
| 10:43 | 19 | Q   And assuming that the link is no longer active, |
| 10:43 | 20 | is that the end of the process? |
| 10:43 | 21 | MR. FABRIZIO:  Objection.  Vague and ambiguous. |
| 10:43 | 22 | THE WITNESS:  I don't know what you mean by |
| 10:43 | 23 | "the end." |
| 10:43 | 24 | BY MR. SCHOENBERG: |
| 10:43 | 25 | Q   What happens if the link is not active?  What |

LANCE R. GRIFFIN, ESQ.                    12/22/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

10:43  1    do you do next?

10:43  2         A    I think it would be classified as removed.

10:43  3         Q    Okay.  What if the link is still active?  What

10:43  4    is the next step in the process?

10:43  5         A    Our general policy is to send a follow-up

10:43  6    notice.

10:43  7         Q    And is there a specific amount of time between

10:44  8    the sending of a takedown notice and when you check to

10:44  9    see whether the link has been deactivated?

10:44 10         MR. FABRIZIO:  I'm going to instruct the

10:44 11    witness not to answer that question as it reveals highly

10:44 12    sensitive antipiracy material information that has been

10:44 13    deemed out of bounds by the court's order.

10:44 14         (Instruction not to answer.)

10:44 15    BY MR. SCHOENBERG:

10:44 16         Q    When you say "follow-up notice," what do you

10:44 17    mean?

10:44 18         A    It's a second notice on the same link, or it

10:45 19    could be a third notice.

10:45 20         Q    Has Hotfile ever not taken down a file after

10:45 21    receiving a takedown notice from Disney?

10:46 22         MR. FABRIZIO:  Objection.  Calls for

10:46 23    speculation.

10:46 24         THE WITNESS:  I don't think I have data that

10:46 25    would enable me to answer that question.



10:46  1    BY MR. SCHOENBERG:

10:46  2        Q    Can you think of any specific instance in which

10:46  3    Hotfile did not take a file down after receiving a

10:46  4    takedown notice from Disney?

10:46  5             MR. FABRIZIO:  Objection.  Objection.  Calls

10:46  6    for speculation.

10:46  7             THE WITNESS:  Yes.

10:46  8    BY MR. SCHOENBERG:

10:46  9        Q    When was that?

10:46 10        A    I'm sure we've had to send follow-up notices

10:46 11    several times.

10:46 12        Q    Has there ever been an instance in which

10:46 13    Hotfile did not after receiving a follow-up notice take

10:46 14    down a link that you had given it notice of?

10:46 15             MR. FABRIZIO:  Objection.  Calls for

10:46 16    speculation.

10:46 17             THE WITNESS:  I -- I have never analyzed or

10:46 18    asked for data concerning that.

10:46 19    BY MR. SCHOENBERG:

10:47 20        Q    How quickly do you expect cyberlockers to

10:47 21    remove content that you've identified in takedown

10:47 22    notices?

10:47 23             MR. FABRIZIO:  Objection.  Overbroad and calls

10:47 24    for a legal conclusion.

10:47 25             THE WITNESS:  I believe Disney's position on



10:48  1          MR. FABRIZIO:  Same objections.

10:48  2          THE WITNESS:  I imagine it would be much less

10:48  3    than that, yes.

10:48  4    BY MR. SCHOENBERG:

10:48  5        Q    Would it be less than 24 hours?

10:48  6          MR. FABRIZIO:  Same objections.  Asked and

10:48  7    answered.

10:48  8          THE WITNESS:  Again, I'm not certain.

10:48  9    BY MR. SCHOENBERG:

10:48  10       Q    So it could be more than 24 hours?

10:48  11         MR. FABRIZIO:  Objection.  Calls for

10:48  12   speculation.

10:48  13         THE WITNESS:  I -- I can't recall.

10:48  14   BY MR. SCHOENBERG:

10:49  15       Q    Did you have issues with Hotfile not taking

10:49  16   down files expeditiously in response to your takedown

10:49  17   notices?

10:49  18         MR. FABRIZIO:  Objection.  Vague and ambiguous,

10:49  19   compound and overbroad and vague as to timeframe, as

10:49  20   well.

10:49  21         THE WITNESS:  We have had to send follow-up

10:49  22   notices on many files.

10:49  23   BY MR. SCHOENBERG:

10:49  24       Q    And you're speaking of Hotfile, specifically?

10:49  25       A    Yes.  Yes.



11:22  1    Q Where a takedown notice to one cyberlocker

11:22  2 provided a link for a file on a different cyberlocker.

11:22  3     MR. FABRIZIO:  Objection.  Lacks foundation

11:22  4 that it occurred.

11:22  5     THE WITNESS:  I am not.

11:22  6 BY MR. SCHOENBERG:

11:22  7    Q So this is the first you've ever heard of that

11:22  8 happening?

11:22  9     MR. FABRIZIO:  Objection.  Mischaracterizes his

11:22 10 testimony, lacks foundation.

11:22 11     THE WITNESS:  I believe it is the first time

11:23 12 I've seen it.

11:23 13     MR. SCHOENBERG:  Okay.  I'll mark another

11:23 14 exhibit.

11:23 15     This will be Disney 3.

11:23 16     (Disney Exhibit 3 was marked for

11:24 17     identification by the court reporter.)

11:24 18     THE WITNESS:  Okay.

11:24 19 BY MR. SCHOENBERG:

11:24 20    Q What is the document we just marked as

11:24 21 Disney 3?

11:24 22    A It appears to be a follow-up notice that we

11:24 23 talked about before.

11:24 24    Q And can you just remind me, when you say

11:24 25 "follow-up notice" what do you mean?



LANCE R. GRIFFIN, ESQ.                    12/22/2011
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 11:24 | 1 | A    That would be a notice that we send after we've |
| 11:24 | 2 | sent a previous notice. |
| 11:24 | 3 | Q    And looking at this document, what is the work |
| 11:24 | 4 | that -- that that -- this follow-up notice relates to? |
| 11:25 | 5 | A    The copyrighted work? |
| 11:25 | 6 | Q    Correct. |
| 11:25 | 7 | A    FLASHFORWARD. |
| 11:25 | 8 | Q    And does this document indicate when the |
| 11:25 | 9 | original notice was sent? |
| 11:25 | 10 | A    It appears to.  It says, "(Original |
| 11:25 | 11 | Notification Date:  9/17/2009 3:56:10 PM)." |
| 11:25 | 12 | Q    And when was this re- -- follow-up notification |
| 11:25 | 13 | sent? |
| 11:25 | 14 | A    Well, the header at the top says it was sent |
| 11:25 | 15 | 9/18/2009, at 11:01:29 A.M. |
| 11:25 | 16 | Q    And just so we're clear, this -- this is a |
| 11:25 | 17 | follow-up notification to Hotfile, correct? |
| 11:25 | 18 | A    Yes.  It's -- in the "To:" line it says, |
| 11:25 | 19 | "abuse@hotfile.com." |
| 11:25 | 20 | Q    And so based on the face of this document, |
| 11:25 | 21 | anyway, it appears that the follow-up notification was |
| 11:26 | 22 | sent less than 24 hours after the original notice; isn't |
| 11:26 | 23 | that right? |
| 11:26 | 24 | That's correct, isn't it? |
| 11:26 | 25 | MR. FABRIZIO:  Objection.  Lacks foundation. |



| | | |
|---|---|---|
| 11:26 | 1 | THE WITNESS:  So 9/17 at 3:56 P.M. to 9/18 at |
| 11:26 | 2 | 11:01 A.M. I think would be less than 24 hours, if |
| 11:26 | 3 | they're on the same time zone. |
| 11:26 | 4 | BY MR. SCHOENBERG: |
| 11:26 | 5 | Q   Assuming they're on the same time zone. |
| 11:26 | 6 | Is -- did Disney send this follow-up |
| 11:26 | 7 | notification because it felt like Hotfile hadn't |
| 11:26 | 8 | responded in an adequate amount of time to the original |
| 11:26 | 9 | takedown notice? |
| 11:26 | 10 | MR. FABRIZIO:  You're referring to this |
| 11:27 | 11 | specific notice? |
| 11:27 | 12 | MR. SCHOENBERG:  Yes. |
| 11:27 | 13 | THE WITNESS:  I did not send the notice, and I |
| 11:27 | 14 | can't recall this exact notice, but I -- I would suspect |
| 11:27 | 15 | that's the case. |
| 11:27 | 16 | BY MR. SCHOENBERG: |
| 11:27 | 17 | Q   How quickly should Hotfile have responded to |
| 11:27 | 18 | this, the original takedown notice, in order to have |
| 11:27 | 19 | done so in an adequate amount of time? |
| 11:27 | 20 | MR. FABRIZIO:  You're referring, again, to this |
| 11:28 | 21 | individual instance? |
| 11:28 | 22 | MR. SCHOENBERG:  Yes. |
| 11:28 | 23 | THE WITNESS:  Well, obviously, before 11:01 on |
| 11:28 | 24 | 9/18. |
| 11:28 | 25 | BY MR. SCHOENBERG: |



1
2
3
4
5
6
7
8
9        I, LANCE R. GRIFFIN, ESQUIRE, do hereby declare

10  under penalty of perjury that I have read the foregoing

11  transcript; that I have made any corrections as appear

12  noted, in ink, initialed by me, or attached hereto; that

13  my testimony as contained herein, as corrected, is true

14  and correct.

15
16
17        EXECUTED this 27th day of January,

18  20 12, at Burbank, California.
                  (City)           (State)

19
20
21
22  
       LANCE R. GRIFFIN, ESQUIRE

23
24
25

**Sarnoff.**
877.955.3855

```
 1

 2          I, the undersigned, a Certified Shorthand

 3   Reporter of the State of California, do hereby certify:

 4          That the foregoing proceedings were taken

 5   before me at the time and place herein set forth; that

 6   any witnesses in the foregoing proceedings, prior to

 7   testifying, were duly sworn; that a record of the

 8   proceedings was made by me using machine shorthand

 9   which was thereafter transcribed under my direction;

10   that the foregoing transcript is a true record of the

11   testimony given.

12          Further, that if the foregoing pertains to

13   the original transcript of a deposition in a Federal

14   Case, before completion of the proceedings, review of

15   the transcript [X] was [ ] was not requested.

16          I further certify I am neither financially

17   interested in the action nor a relative or employee

18   of any attorney or party to this action.

19          IN WITNESS WHEREOF, I have this date

20   subscribed my name.

21

22   Dated: 12/29/2011

23

24                     _____
                       LORI SCINTA, RPR
25                     CSR No. 4811
```

