UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

_____/

**PLANTIFFS' MOTION AND MEMORANDUM OF LAW TO STRIKE
PORTIONS OF DECLARATIONS OF PROFESSOR JAMES BOYLE, DR. ANDEW
CROMARTY, AND ANTON TITOV IN SUPPORT OF DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

CITATION LEGEND................................................................................................... iv

ARGUMENT ............................................................................................................... 1

I.      Portions of the Declaration of Prof. James Boyle Should Be Stricken.............................1

        A.      Prof. Boyle Has No Expertise on Which to Criticize Dr. Waterman's
                Statistical Methodology (Paragraphs 11-12, 19-20; Ex. 2 ¶¶ 10-27, 37-39). ..........1

        B.      Prof. Boyle Has No Basis to Criticize Mr. Zebrak's Classification of Files
                (Paragraphs 13-16, 21-23; Ex. 2 ¶¶ 28-33, 36, 47-49)...........................................4

        C.      Prof. Boyle Has No Expertise to Draw General Conclusions From His
                "Conversion Rate" Statistic (Boyle Decl. Ex. 2 ¶ 53). ...........................................6

        D.      Prof. Boyle's "Opinions" About the *Sony* Standard Are Legal Argument,
                Not Testimony (Boyle Decl. Ex. 1 ¶¶ 34, 35 & n.31; Boyle Decl. Ex. 2 ¶
                11 & n.6, 17, 26-27 & n.14, 31, 33, 48, 50-52). .......................................................7

        E.      Portions of the Declaration of Dr. Andrew Cromarty Should Be Stricken. ...........8

II.     Portions of the Declaration of Anton Titov Should Be Stricken. .......................................9

CONCLUSION ........................................................................................................... 11

## TABLE OF AUTHORITIES

CASES

*A&M Records, Inc. v. Napster, Inc.*, No. C9905183MHP, 2000 WL 1170106 (N.D. Cal. Aug. 10, 2000), *aff'd*, 239 F.3d 1004 (9th Cir. 2001) ................................................4

*Arista Records LLC v. Lime Group LLC,* 784 F. Supp. 2d 398 (S.D.N.Y. 2011) ......................2, 5

*Arista Records LLC v. Usenet.com, Inc.,* 633 F. Supp. 2d 124 (S.D.N.Y. 2009) ......................2, 5

*Bauer v. J.B. Hunt Transport, Inc.*, 150 F.3d 759, 765 (7th Cir. 1998)..............................................6

*Cary Oil Co. v. MG Refining & Marketing, Inc.*, 257 F. Supp. 2d 751 (S.D.N.Y. 2003) .............11

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548 (11th Cir. 1998) ....................1, 5, 9

*Columbia Pictures Indus., Inc. v. Fung,* No. CV 06-5578 SVW, 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009) ...........................................................................................................2, 5

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092 (11th Cir. 2005) ...........................................................................................................................8

*Dannebrog Rederi AS v. M/V True Dream*, 428 F. Supp. 2d 1265 (S.D. Fla. 2005).....................8

*In re Trasylol Products Liability Litigation*, No. 08-MD-01928, 2010 WL 1489793 (S.D. Fla. Feb. 24, 2010) ....................................................................................................7

*Leigh v. Warner Brothers, Inc.*, 212 F.3d 1210 (11th Cir. 2000) ...................................................10

*Mack v. United States*, 814 F.2d 120 (2d Cir. 1987) ........................................................................9

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 454 F. Supp. 2d 966 (C.D. Cal. 2006) .................................................................................................................5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .................................3

*Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008)...........................................................................9

*Shepherd v. Michelin Tire Corp.,* 6 F. Supp. 2d 1307 (N.D. Ala. 1997).........................................6

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)................................1

*Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293 (N.D. Ga. 2008).......................2, 7

*United States v. Reddy*, No. 1:09-CR-0483-ODE/AJB, 2011 WL 2493529 (N.D. Ga. Feb. 24, 2011), *report and recommendation adopted by* 2010 WL 2518737 (N.D. Ga. June 23, 2011) ...............................................................................................................2, 3, 4, 7

*United States v. Brown*, 415 F.3d 1257 (11th Cir. 2005)...................................................9

*United States v. Paul*, 175 F.3d 906 (11th Cir. 1999).................................................2, 4

*Van T. Junkins & Associates, Inc. v. United States Industries, Inc.*, 736 F.2d 656 (11th Cir. 1984) ...................................................................................................................9

*Williams v. Michelin North America, Inc.*, 381 F. Supp. 2d 1351 (M.D. Fla. 2005)..................4, 6

*Woods v. Paradis*, 380 F. Supp. 2d 1316 (S.D. Fla. 2005).........................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37 (c) .................................................................................................11

## CITATION LEGEND

1.     "Boyle Decl." shall refer to the declaration of Professor James Boyle in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, dated March 6, 2012, and filed under seal on March 7, 2012.

2.     "Cromarty Decl." shall refer to the declaration of Dr. Andrew Cromarty in Support of Defendants' Motion for Summary Judgment, dated March 5, 2012 and filed under seal on March 7, 2012.

3.     "Foster Reply Decl." shall refer to the Reply Declaration of Dr. Ian Foster, dated and filed under seal on March 19, 2012.

4.     "Pls. Mot." shall refer to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012, available publicly at Docket No. 322.

5.     "Pls. Reply" shall refer to the Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, dated and filed under seal on March 19, 2012.

6.     "Titov Opp. Decl." shall refer to the Declaration of Anton Titov in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, dated and filed under seal on March 7, 2012.

7.     "Waterman Decl." shall refer to the declaration of Dr. Richard Waterman in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 16, 2012, available publicly at Docket No. 325-6.

8.     "Waterman Reply Decl." shall refer to the Reply Declaration of Dr. Richard Waterman, dated and filed under seal on March 19, 2012.

9.     "Yeh Ex. __," shall refer to exhibits attached to the Declaration of Jennifer V. Yeh in Support of Plaintiffs' Motion to Strike Portions of Declarations of Professor James Boyle, Dr. Andrew Cromarty, and Anton Titov in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, dated March 16, 2012, filed herewith.  Where appropriate, citations to such exhibits may also include pinpoint citations to the page number(s), and paragraph or line numbers, internal to the cited document.  In some instances where individual Yeh Declaration exhibits were not paginated, page numbers have been added manually for ease of the Court's reference.  The parentheticals indicate the nature of the item cited – *e.g.*, deposition transcripts ("dep.") – or documents produced in discovery by various parties.  Thus,

iv

by way of illustration, "Yeh Ex. 1 (Titov dep.) at 200:1-10" would refer to the deposition of defendant Anton Titov, which could be found in Exhibit 1 to the Yeh Declaration, at page 200 of the transcript pages, at lines 1 through 10.  And, "Yeh Ex. 110 at 2" would refer to Exhibit 110 to the Yeh Declaration, and specifically the page of that Exhibit found at page 2 of the numbered Exhibit pages.

      10.    "Zebrak Decl." shall refer to the declaration of Scott Zebrak, dated February 17, 2012, available publicly at Docket No. 325-1.

Plaintiffs move to strike specific and discrete portions of the declarations of Professor James Boyle, Dr. Andrew Cromarty, and Anton Titov in support of defendants' opposition to plaintiffs' motion for summary judgment. As explained below, portions of the testimony given by Prof. Boyle and Dr. Cromarty constitute improper expert testimony, and Mr. Titov improperly relies on speculation and evidence withheld in discovery, and testifies contrary to his deposition testimony. While nothing in defendants' evidence (including the portions that plaintiffs move to strike here) create any issues of material fact, Pls. Reply at 1-9, the cited portions of the evidence submitted are improper and should be stricken on summary judgment and precluded at trial.

## ARGUMENT

I.      **Portions of the Declaration of Prof. James Boyle Should Be Stricken.**

Professor James Boyle is a law professor who has experience analyzing public domain and open source materials. Boyle Decl. ¶ 4. He is not a trained statistician or social scientist, nor even a licensed attorney. The primary purpose of his initial report was to identify specific instances of what he believes to be noninfringing content available on Hotfile.[1] However, in seeking to rebut statistical analyses by plaintiffs' expert Dr. Richard Waterman, Prof. Boyle testifies beyond his expertise and engages in unfounded speculation about the statistical "methodologies" employed. Likewise, his "testimony" about how cases like *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) should be applied to the facts in this case is just argument on an ultimate legal issue that should properly be made by counsel in defendants' briefs, not a non-practicing law professor in a declaration. The paragraphs listed below should be stricken.

A.      **Prof. Boyle Has No Expertise on Which to Criticize Dr. Waterman's Statistical Methodology (Paragraphs 11-12, 19-20; Ex. 2 ¶¶ 10-27, 37-39).**

Professor Boyle's testimony is inadmissible to the extent that he purports to opine that Dr. Waterman's statistical analysis had "methodological" flaws. Prof. Boyle is not an expert in designing and implementing statistical sampling studies. Expert testimony is admissible only if "the expert is qualified to testify competently regarding the matters he intends to address." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing Fed. R. Evid.

---

[1] As explained in plaintiffs' reply, the presence of *some* noninfringing content on Hotfile is not material in light of statistical analyses showing the overall use of Hotfile. Pls. Reply at 3-5.

702).  Expert witnesses "must stay within the reasonable confines of [their] subject area" and cannot proffer testimony beyond the scope of their expertise.  *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (internal quotation marks omitted); *see United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999) (expert qualification in one field does not make an expert any more qualified than a lay person to offer testimony on another subject requiring expertise).  The fact that a witness has some related knowledge does not give the witness any leeway to testify as an expert outside his field of expertise.  *See Trilink Saw Chain*, 583 F. Supp. 2d at 1304 (collecting cases excluding testimony on issues related to but not within scope of witness' expertise); *United States v. Reddy*, No. 1:09-CR-0483-ODE/AJB, 2011 WL 2493529, at *8-9 (N.D. Ga. Feb. 24, 2011) (holding medical doctors not qualified to testify regarding validity of a statistical study), *report & recommendation adopted by*, 2011 WL 2518737 (N.D. Ga. June 23, 2011).

Prof. Boyle admittedly is not a trained statistician and does not have any experience designing or interpreting studies relying on statistical sampling.  At his deposition, Prof. Boyle not only repeatedly stated that he was not qualified as a statistician, but that he had not even taken a single course in statistics.  Yeh Ex. 1 (Boyle dep.) at 13:5-21, 54:3-5, 221:17-23, 256:16-18.

In contrast, plaintiffs' expert Dr. Richard Waterman is a professor of statistics at The Wharton School at the University of Pennsylvania.  He has substantial experience designing and reviewing statistical sampling protocols for large organizations, including the United States Postal Service, and is widely published.  He has designed similar statistical protocols measuring infringement on other online networks, which have been accepted as reliable by every court to have considered them.  *See* Waterman Decl. ¶ 4; *Arista Records LLC v. Lime Group LLC,* 784 F. Supp. 2d 398, 412-13, 424 (S.D.N.Y. 2011); *Arista Records LLC v. Usenet.com, Inc.,* 633 F. Supp. 2d 124, 131-32 (S.D.N.Y. 2009); *Columbia Pictures Indus., Inc. v. Fung,* No. CV 06-5578 SVW (JCx), 2009 WL 6355911, at *4, 8 (C.D. Cal. Dec. 21, 2009).  In this case, Dr. Waterman designed a study to select a random sample of 1,750 daily downloads of files from Hotfile.  Waterman Decl. ¶¶ 6-21.  The sample files were requested and obtained from Hotfile (where available) and each was analyzed by a copyright analyst, Scott Zebrak, as has been done is similar online infringement studies designed by Dr. Waterman and others.  *Id.*  Based on the

classification of files in the sample, Dr. Waterman concluded that 90.2% of downloads from Hotfile were infringing, with a margin of error of 1.2%.  *Id.* ¶¶ 22-23.

Prof. Boyle criticizes the "methodology" of Dr. Waterman's study on two grounds: (i) the study was not designed to analyze files with no recorded downloads, and (ii) the study allegedly failed to properly analyze those files with only one recorded download (only a small number of which exist on Hotfile).  Boyle Decl. ¶ 11.  The decision about how to address each of these categories was proper, and Prof. Boyle has no expert basis on which to argue that these constitute methodological flaws.

First, Prof. Boyle has no expert basis to argue that a study that did not sample these "zero-download" files was "flawed."  Boyle Decl. ¶ 11.  Dr. Waterman did not include zero-download files in his sample because his study was intentionally intended to address the use of Hotfile to *distribute* content.  Distribution of files is the stated purpose and overwhelming use of Hotfile.  *See* Pls. Mot. at 8.  Further, the extent to which actual downloads from a service are infringing has been identified as highly probative of infringing intent by the Supreme Court.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 923-24 (2005).[2]  Certainly, Prof. Boyle has no basis to testify that the *argument* that Dr. Waterman should have looked at zero-download files qualifies as an *expert opinion* that his study is somehow statistically flawed.  *See Reddy*, 2011 WL 2493529, at *8-9 (experts without qualifications in statistics could not opine on construction and validity of statistical study).

Likewise, Prof. Boyle's argument that the study failed to consider whether "one-download" files were non-infringing does not support any sort of expert opinion that this was a "serious" flaw in the study.  Boyle Decl. ¶ 12.  Prof. Boyle speculates that downloads of files that have only one recorded download may have been performed by the uploading user, which, in Prof. Boyle's view, would have been a fair use.  Prof. Boyle does not know whether this was the case for any particular download – nor do the parties – because Hotfile did not log downloading users during the sample period.  In fact, the relatively small number of "one downloads" makes this criticism immaterial.  Prof. Boyle himself provides the numbers of downloads of  "one-download" files – just over 6 million downloads – which is out of *2.8 billion*

---

[2] Plaintiffs have separately addressed defendants' unfounded arguments that the number or percentage of zero-download files has any relevance to the claims in this case. Pls. Reply at 1-2. That does not require a separate statistical analysis.

downloads over the lifetime of Hotfile.  Boyle Decl. ¶ 11(ii); Titov Opp. Decl. ¶ 27.  That is less than one-quarter of one percent of all downloads on Hotfile.[3]  Likewise, while Prof. Boyle admits he has not looked at the data that would show what percentage of files in Prof. Waterman's statistical study constitute these "one-download" files, there are in fact only six infringing one-download files out of a sample of 1,750 files, just one-half of one percent.  Foster Reply Decl. ¶ 17; *see also* Yeh Ex. 1 (Boyle dep.) at 300:22-301:6, 303:7-11.  Even if all of those files were counted as non-infringing, the effect on the overall infringement percentage would be within the margin of error.  Prof. Boyle's failure to perform this kind of analysis not only undermines his criticisms, but reinforces that he is not qualified to state opinions on Dr. Waterman's statistical methodology.  He has no expertise to opine that a criticism in the categorization of a handful of files is a "serious methodological flaw."  *See Reddy*, 2011 WL 2493529, at *8; *see also Paul*, 175 F.3d at 912 (law professor's general writings did not qualify him to give opinion in specialized field requiring training); *Williams v. Michelin N. Am., Inc.*, 381 F. Supp. 2d 1351, 1362 (M.D. Fla. 2005) (expert's testimony inadmissible because he offered a "generalized opinion" and did not perform analysis of facts particular to the litigation); *A&M Records, Inc. v. Napster, Inc.*, No. C9905183MHP, 2000 WL 1170106, at *7-8 (N.D. Cal. Aug. 10, 2000) (declining to rely on defendants' expert because he failed to undertake own analysis and relied primarily on theoretical sources), *aff'd*, 239 F.3d 1004 (9th Cir. 2001).

**B.    Prof. Boyle Has No Basis to Criticize Mr. Zebrak's Classification of Files (Paragraphs 13-16, 21-23; Ex. 2 ¶¶ 28-33, 36, 47-49).**

Professor Boyle purports to criticize the infringement classifications made by the analyst who reviewed the files in the statistical study, Scott Zebrak.  Mr. Zebrak actually reviewed all the available information (including the content file itself) for each of the files in the sample, in order to form a conclusion as to whether each of the files was infringing.  Zebrak Decl. ¶¶ 6-9.  In doing so, Mr. Zebrak relied upon years of expertise in the content industry and conducted extensive research to support his conclusions.  *Id*. ¶¶ 2, 7-9, 14.  The kinds of classifications that

---

[3] Prof. Boyle provides a percentage of *files* that had only one download (5.76%) and claims from that statistic that Dr. Waterman "failed to adequately consider an additional 5.76% of the potential *uses* of files on Hotfile."  Boyle Decl. ¶ 12.  That is not an accurate conclusion from the statistic Prof. Boyle cites, and it illustrates the limitations of a non-expert attempting to testify about statistical inferences.  Dr. Waterman's protocol measured infringement on a download-by-download level.  The "one-download" files are .002% of all downloads from Hotfile, not 5.6%.

Mr. Zebrak assigned – that a file is "highly likely infringing" – have been accepted as reliable in numerous cases, including *Grokster* itself.  *See, e.g., Lime Group,* 784 F. Supp. at 412-13*; Usenet.com,* 633 F. Supp. 2d at 131-32*; Fung,* 2009 WL 6355911, at *8*; Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 454 F. Supp. 966, 985 (C.D. Cal. 2006).

      In response, rather than conducting his own independent examination of the files, Prof. Boyle criticizes what he believes to "methodological" flaws in Mr. Zebrak's approach to categorizing the files.  Boyle Decl. ¶¶ 14, 21, 22, 23.  For example, he believes that pornographic content is particularly difficult to classify as infringing and hypothesizes that Mr. Zebrak's classification of the infringement status of those files is flawed.  *Id.* ¶ 14.  However, outside a bare handful of files discussed in both Mr. Zebrak's and Prof. Boyle's declaration, Prof. Boyle did not examine the actual files and ***did not attempt to investigate or analyze whether the vast majority of files in the study were actually infringing***.  Yeh Ex. 1 (Boyle dep.) at 309:12-310:24; 330:22-331:4, 334:16-21; 339:5-20; 435:18-436:12, 437:7-16.  Mr. Zebrak, in contrast, examined each file, investigated how the work was being commercialized, considered whether the content matched the version being commercialized by the content owners or whether it had been modified, and reviewed applicable licenses and terms of use, among other steps to reach his conclusions.  *See, e.g.*, Yeh Ex. 2 (Zebrak dep.) at 128:1-10, 168:12-169:22, 206:11-15, 277:3-278:8 (Day 1); 220:3 – 223:10 (Day 2); Zebrak Decl. ¶¶ 6-9, 14.

      Because Professor Boyle analyzed Mr. Zebrak's conclusions regarding only a handful of sample files, his testimony about whether the other files were infringing lacks any connection to the actual facts and is speculative.  *Supra* 3-4; *see also* Yeh Ex. 1 (Boyle dep.) at 438:10-439:1 (admitting he did not know whether Mr. Zebrak had conducted full fair use analysis for all files); Boyle Decl. Ex. 2 at ¶ 31 (noting that he "was spared [the] chore" of going through actual files).[4] To be admissible, expert testimony must consist of more than mere speculation based on background knowledge – it must "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue," *City of Tuscaloosa*, 158 F.3d at 562, and have "a valid scientific connection to the facts of the

---

[4] Prof. Boyle has only ever explained his disagreement on a handful of files in the study, *see* Zebrak Decl. ¶ 19a-d; Boyle Decl. ¶ 23a-d.  Given the sample size of 1,750 files, those disagreements alone would not raise a factual dispute that the overwhelming use of Hotfile is for infringements.  *See* Pls. Reply at 3-5.

case." *Williams*, 381 F. Supp. 2d at 1362.  Because Prof. Boyle has not reviewed the underlying evidence, his opinion that Mr. Zebrak misclassified any of the files is based on speculation and is inadmissible.  *See, e.g., Williams*, 381 F. Supp. 2d at 1362 (tire expert's testimony inadmissible "because he has done no study as to the appropriate expiration date for this particular tire"); *Bauer v. J.B. Hunt Transport, Inc.*, 150 F.3d 759, 765 (7th Cir. 1998) (upholding exclusion of testimony by law professor expert who offered only an explanation of factors that could theoretically cause accident without providing any explanation of how those factors could be applied to particular accident at issue in the litigation); *Shepherd v. Michelin Tire Corp.*, 6 F. Supp. 2d 1307, 1310-12 (N.D. Ala. 1997) (testimony inadmissible as speculative and unreliable where expert who had written articles on topic of consumer warnings but had not conducted any tests to support his theoretical conclusions in this particular case as to whether use of proposed warning would have prevented accident).

> **C.    Prof. Boyle Has No Expertise to Draw General Conclusions From His "Conversion Rate" Statistic (Boyle Decl. Ex. 2 ¶ 53).**

Notwithstanding his criticism of Dr. Waterman's study, in another portion of his report and declaration, Prof. Boyle relies on Prof. Waterman's sample files and results to extrapolate a statistic about "conversion rates" by which users upgrade from non-paying to paying "premium" accounts.  *See* Boyle Decl. Ex. B ¶ 53.  However, Prof. Boyle is admittedly not qualified to calculate and interpret results from a statistical study and to draw more general conclusions about activity on Hotfile, and this testimony is inadmissible.

Prof. Boyle examined the number of users who converted to "premium" status in the process of downloading the files selected in Dr. Waterman's statistical study and the number of recorded downloads of the file (both over the lifetime of the file) to calculate a "conversion rate" (premium conversions per download) for each category of files.  From this, he argues that, in general, non-infringing material "is more likely" to result in conversions to premium status than infringing material.[5]  Boyle Decl. Ex. B ¶ 53.  However, Prof. Boyle did not perform the proper

---

[5] Prof. Boyle separates out "Confirmed Infringing" from "Highly Likely Infringing" files for some of his statistics, but that is an arbitrary line to draw – the relevant comparison is between infringing and non-infringing material.  Prof. Boyle appears to assume that all major studio content is in the Confirmed Infringing category, *see* Boyle Decl. Ex. B ¶ 53, but in fact some major studio content would not necessarily be included in that sub-category (for example, content owned by an affiliate of a plaintiff).

calculations or properly interpret the results.  In fact, (1) Prof. Boyle did not properly weight his calculations to account for the probability of a file being selected into the sample; (2) Prof. Boyle ignored the high margin of error on the calculation of the conversion rate for non-infringing files (which is nearly 50%);  and (3) Prof. Boyle apparently did not examine whether there is a statistically significant difference between the conversion rates on the different categories of files, which in fact there is not.  Waterman Reply Decl. ¶¶ 4-8.  In short, Prof. Boyle attempted to take the results of a study that was designed for one purpose, and interpret its data to draw a different set of conclusions.  Prof. Boyle is not qualified to offer these kinds of opinions. Ultimately, the analysis that he performed, which involves reasoning from a sample to an overall population, cannot be made reliably without expertise in statistics.  *See, e.g., Reddy*, 2011 WL 2493529, at *9 ("Dr. Sacks therefore is not qualified as an expert in statistics and cannot testify about how the sample selected represents the broader universe of radiology images or that the peer review has any statistical significance.").

Professor Boyle's disavowal of any statistical knowledge therefore is itself sufficient to exclude these portions of his testimony.  *See supra* 1-2; *see also* Yeh Ex. 1 (Boyle dep.) at 446:2-449:10 (both witness and counsel admitting that conclusions from "conversion rate" figure rely on interpretations of Dr. Waterman's statistical analysis); *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 1489793, at *11 (S.D. Fla. Feb. 24, 2010) (excluding expert testimony related to mechanism of drug's impact on body where expert admitted that he was not an expert "in terms of mechanisms") (quotation marks omitted); *Trilink Saw Chain*, 583 F. Supp. 2d at 1305.

### D.   Prof. Boyle's "Opinions" About the *Sony* Standard Are Legal Argument, Not Testimony (Boyle Decl. Ex. 1 ¶¶ 34, 35 & n.31; Boyle Decl. Ex. 2 ¶ 11 & n.6, 17, 26-27 & n.14, 31, 33, 48, 50-52).

Prof. Boyle repeatedly attempts to apply his views of the law, particularly of the *Sony* case, to what he believes to be the pertinent facts.  *E.g.*, Boyle Decl. Ex. 2 ¶ 17 (criticizing plaintiffs' statistical analysis because "*Sony* instructs courts not to look at *predominant* use, but rather current and potential substantial noninfringing uses").  As explained by Professor Boyle, his evaluation of Hotfile's "substantial non-infringing uses" was based on his interpretation of "*Sony* and the cases that followed *Sony*."  Yeh Ex. 1 (Boyle dep.) at 77:19-79:10; *see also id.* at 96:1-21 ("[I]f one reads *Sony* and *Grokster*, and if one reads Article I Section 8, Clause 8 of the Constitution, it seems clear that one of the main goals in interpreting all of the tests here, the tests

7

in *Sony* and the tests in *Grokster*, is the promote the progress goal of copyright law."); *id*. at 157:7-21 (interpreting tests sets forth in *Sony* and *Grokster*); *id*. at 292:13-20 (same); 164:21-166:6 (opinions about substantial uses based on legal analysis).  While Prof. Boyle may testify that certain licit material is available on Hotfile based on a proper analysis, his arguments about interpretation of case law and application to the facts should be made by counsel in the pleadings, not by an expert in his report.  As the Eleventh Circuit has stated, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (quotations marks omitted); *id*. at 1112 (affirming district court's exclusion of expert opinion that "offers nothing more than what lawyers for the parties can argue in closing arguments" (quotation marks omitted)); *Dannebrog Rederi AS v. M/V True Dream*, 428 F. Supp. 2d 1265, 1268 (S.D. Fla. 2005) ("proper place for [argument] references" is in the pleadings, not a declaration).

### E.     Portions of the Declaration of Dr. Andrew Cromarty Should Be Stricken.

Certain testimony by defendants' expert Dr. Andrew Cromarty should be stricken because it is outside any identified area of his expertise.  Dr. Cromarty has an academic background in computer science and describes himself as having worked in "technical management positions" and as a "computing professional."  Cromarty Decl. ¶ 11.  In his declaration submitted in opposition to plaintiffs' motion for summary judgment, Dr. Cromarty testifies (for the first time) about erroneous takedowns by copyright owners, including citing to a study based on reports from an interested third party regarding the rate of erroneous takedowns. *Id*. ¶¶ 23, 104-06.  Dr. Cromarty did not opine on these issues in his initial report, *see generally* Ex. C to Cromarty Decl., nor did Dr. Cromarty submit a rebuttal report.  More importantly, nothing in his testimony suggests that he has expertise in dealing with takedown notices online or in analyzing the methodology or reliability of the studies he appears to simply accept as fact. Indeed, Dr. Cromarty made no attempt to apply any scientific or technical expertise to his opinions on erroneous takedown rates – he merely cites a study that could be referenced by anyone and that has no apparent applicability to the rate of erroneous takedown received by Hotfile.  *Id*. ¶ 106.  His general expertise as a "computing professional" is not sufficient to establish his qualifications for this testimony.  Experts must be "qualified to testify competently regarding the matters [they] intend[] to address" in order for their testimony to be admissible,

*City of Tuscaloosa*, 158 F.3d at 562, and require "specific experience or background with the topic in dispute," even if their qualifications are in a related field. *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) (affirming exclusion of testimony on particular chemical substance where chemistry expert had only worked with substance on "isolated projects"); *see supra* 1-2. This testimony, including his reliance on a third-party report not admitted into evidence in paragraph 106 of his declaration, should be stricken.[6]

## II.     Portions of the Declaration of Anton Titov Should Be Stricken.

Certain portions of Anton Titov's testimony are also improper and should be stricken. Mr. Titov gives testimony that is inconsistent with his deposition, engages in speculation, and purportedly relies on evidence that defendants refused to produce in discovery.

Inconsistencies with Prior Sworn Testimony. Paragraphs 42 and 48 of Mr. Titov's declaration should be stricken, or in the alternative, disregarded by the Court, because they are inconsistent with the testimony provided at his deposition. Summary judgment testimony inconsistent with a witness' prior deposition testimony cannot create a dispute of fact for purposes of summary judgment and should be stricken. *See Reese v. Herbert*, 527 F.3d 1253, 1270 n.28 (11th Cir. 2008) (affidavits that are inherently inconsistent with deposition testimony can be stricken); *Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 658-59 (11th Cir. 1984) (same); *see also Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("[A] party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.").

First, Mr. Titov declares without equivocation that "Hotfile unilaterally . . . implemented hash blocking" in August 2009. Titov Opp. Decl. ¶ 48. However, Mr. Titov repeatedly testified that ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████    ████████████
████████████████████████████████████████████

---

[6] Likewise, Dr. Cromarty provides testimony outside his expertise regarding valuation of plaintiffs' works. Cromarty Decl. ¶¶ 113-16. That testimony has no relevance to the pending summary judgment motions. Therefore, plaintiffs reserve the right to move to exclude that testimony at trial.

███████████████████████  ████████████████████████████

████████ Paragraph 48 regarding the timing of Defendants' hash blocking should thus be stricken or disregarded by the Court as inconsistent with prior testimony.

Second, Mr. Titov gives contradictory testimony regarding Hotfile's contractor Andrei Ianakov's promotions of Hotfile on Internet forums. Mr. Titov previously testified that Mr. Ianakov was responsible for promoting Hotfile on Internet forums at the beginning of Hotfile's operations. Yeh Ex. 3 (Titov dep.) at 493:21-494:14; 574:18-20; ████████████████████ ████████████████████████ He now claims that "outside contractor Andrew Ianakov *took it upon himself* to generate traffic to Hotfile." Titov Opp. Decl. ¶ 42 (emphasis added). To the extent that Mr. Titov's current testimony in paragraph 42 suggests that Mr. Ianakov was not authorized to promote Hotfile, it is inconsistent with his previous deposition testimony and must be stricken.

Testimony Based on Speculation and Lack of Personal Knowledge. In his declaration, Mr. Titov concludes ████████████████████████████████████ ██████████████████████████████ As plaintiffs explained in their reply, Mr. Titov's conclusion here does not even logically follow from his analysis about duplicate hashes of files. Pls. Reply at 8. But in any event, Mr. Titov ████████████████████ ████████████████████████████████████████ is based on speculation and should thus be stricken. *See Woods v. Paradis*, 380 F. Supp. 2d 1316, 1325 (S.D. Fla. 2005) (granting motion to strike when "affidavit is based on pure speculation"); *see also Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (court "has consistently held that conclusory allegations without specific supporting facts have no probative value." (quotation marks omitted)).

Testimony Based on Evidence Withheld in Discovery. In his declaration, Mr. Titov repeatedly testifies about the websites that send user traffic to Hotfile, *i.e.*, "referrer" traffic. Titov Opp. Decl ¶¶ 12, 14, 19, 20. That testimony should be disregarded by the Court. During discovery, plaintiffs repeatedly requested information regarding referrer traffic, specifically, "documents pertaining to tracking or monitoring the utilization of or traffic to the Hotfile Website, including any reports or data generated from Google Analytics." Yeh Ex. 4 at 27. Defendants refused to produce such documents based, *inter alia*, on the fact that "it would require Hotfile to create documents that do not presently exist." *Id.* at 27-28. Defendants,

however, now rely on that very information in discussing sources of traffic to Hotfile.  *See* Titov Opp. Decl. ¶¶ 12, 14, 19, 20.[7]  In fact, to obtain this information, Mr. Titov needed only to "query the online database used by Hotfile to track sources of its traffic."  *Id*. ¶ 12.  Pursuant to Rule 37(c) of the Federal Rules of Civil Procedure, a party's failure to provide information as required under Rule 26 precludes that party from using that information or evidence "on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).  Defendants' failure to produce such information precludes their use of this information in support of their opposition to plaintiffs' motion for summary judgment.  *See Cary Oil Co. v. MG Refining & Mktg., Inc.*, 257 F. Supp. 2d 751, 761 (S.D.N.Y. 2003) (excluding evidence regarding defendant's "motivations" for taking certain action "if that same testimony of evidence was withheld from Plaintiffs during discovery").

## CONCLUSION

Plaintiffs' motion to strike should be granted.

---

[7] For example, defendants selectively assert that the sites referring the most users to Hotfile "include" Google, Facebook, and Youtube, without identifying the other such sites.  Titov Opp. Decl. ¶ 19.  That fact is immaterial in any event because those major sites are not among the Hotfile Affiliates paid to send traffic to Hotfile, which include many infringing sites.  Pls. Mot. at 7-8.

Dated: March 19, 2012                    Respectfully submitted,


                                         By: _____

                                             Karen L. Stetson
                                             GRAY-ROBINSON, P.A.
                                             1221 Brickell Avenue
                                             16th Floor
                                             Miami, Fl 33131
                                             Telephone: (305) 416-6880
                                             Facsimile:  (305) 416-6887

MOTION PICTURE ASSOCIATION              JENNER & BLOCK LLP
    OF AMERICA, INC.                      Steven B. Fabrizio (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)        Duane C. Pozza (*Pro Hac Vice*)
15301 Ventura Blvd.                       Luke C. Platzer (*Pro Hac Vice*)
Building E                                1099 New York Ave., N.W.
Sherman Oaks, CA 91403                    Suite 900
Phone:  (818) 995-6600                    Washington, DC 20001
Fax:  (818) 285-4403                      Facsimile:  (202) 639-6066

                                         *Attorneys for Plaintiffs*

12

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(a)(3), U.S. District Court for the Southern District of Florida, counsel for plaintiffs has conferred with counsel for Defendant Hotfile Corp. and Anton Titov in a good-faith efforts to resolve the issues raised in this Motion without court action, but have been unable to do so.

DATED:  March 19, 2012

By: _____

Karen L. Stetson

GRAY-ROBINSON, P.A.
1221 Brickell Avenue, 16th Floor
Miami, FL 33131
Telephone: (305) 416-6880
Facsimile:  (305) 416-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E        1099
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax:  (818) 285-4403      Telephone:
     Facsim

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
     New York Ave., N.W.
Suite 900
Washington, DC 20001
          (202) 639-6000
     ile:  (202) 639-6066

*Attorneys for Plaintiffs*

13

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th Day of March, 2012, I served the following documents on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

**Plaintiffs' Motion and Memorandum of Law to Strike Portions of Declarations of Professor James Boyle, Dr. Andrew Cromarty, and Anton Titov in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.**

By: _____

Karen L. Stetson

14

**SERVICE LIST**
**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone: 415-954-4400

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*


BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*

15