UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

-----------------------------------x

DISNEY ENTERPRISES, INC., et al., )
Plaintiffs, ) Case No.
v. ) 11-20427-
HOTFILE CORP., et al., ) WILLIAMS/
Defendants. ) TURNOFF

-----------------------------------x

HOTFILE CORP., )
Counterclaimant, )
v. )
WARNER BROS. ENTERTAINMENT, INC., )
Counterdefendant. )

-----------------------------------x

VIDEOTAPED DEPOSITION OF SCOTT A. ZEBRAK, ESQUIRE

Washington, D.C.

Tuesday, December 20, 2011

9:43 a.m.

Job No.: 439702

Pages 1 - 370

Reported By: Joan V. Cain

Videotaped Deposition of SCOTT A. ZEBRAK, ESQUIRE, held at the law offices of:

STRADLEY RONON STEVENS & YOUNG, LLP
Suite 500
1250 Connecticut Avenue, Northwest
Washington, D.C. 20036
(202) 822-9611

Pursuant to Notice, before Joan V. Cain, Court Reporter and Notary Public in and for the District of Columbia.

A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS:

STEVEN B. FABRIZIO, ESQUIRE
JENNER & BLOCK, LLP
Suite 900
1099 New York Avenue, Northwest
Washington, D.C. 20001
Telephone: (202) 639-6000
E-mail: sfabrizio@jenner.com

ON BEHALF OF DEFENDANTS AND COUNTERCLAIMANT:

ANDREW LEIBNITZ, ESQUIRE
FARELLA BRAUN & MARTEL, LLP
Russ Building
235 Montgomery Street
San Francisco, California 94104
Telephone: (415) 954-4400
E-mail: aleibnitz@fbm.com

ALSO PRESENT:

Terry Michael King, Videographer

For purposes of my report, the content I'm dealing with, you know, one thing I attempted to do was determine was this some fan-based or user-based material or the original work as created and commercialized by the content provider. If I couldn't determine that it was in that latter category of, you know, the work created by the copyright owner and being commercialized by the copyright owner, it would have ended up being in an unknowable category, or if it was noninfringing, in a noninfringing category.

[redacted]

[redacted]

14:19:02 THE WITNESS: So I would have the, you know,
14:19:02 Hotfile files. I would have the name of -- the file
14:19:04 of data about the name of the file or consisting of
14:19:07 the name of the file along with the Hotfile URL. So I
14:19:10 would have that information along with -- in certain
14:19:14 instances I would have information about takedown
14:19:16 notices or special right holder takedowns, and then we
14:19:26 actively went about viewing and doing searching and
14:19:29 investigation based on all this information which led
14:19:31 us to other information that we would -- I say we --
14:19:34 folks would help me gather this information, but then
14:19:37 I then considered this information as I attempted to
14:19:40 reach my determination.
14:19:40 BY MR. LEIBNITZ:

14:19:42 Q And that's the web search reflected in the notes and elsewhere in Exhibit 101?

14:19:46 MR. FABRIZIO: Objection, mischaracterizes his testimony.

14:19:51 THE WITNESS: It -- it -- it consists of a variety of things. I'm happy to walk through. We haven't -- we haven't really sort of completely walked through the process yet today. But, you know, it was -- it was an investigation. We started with the information made available to us, being the content files, the metadata about -- that included the name of the file as long -- as well as the Hotfile URL. We had information about takedown notices.

14:20:16 And then we actively review the files, do searching of the link and of the file name and -- and do other information to identify what the file is, identify how the copyright owner or its agent were commercializing the work, review associated terms of use, licensing arrangements. It's a whole -- I used the term "quilt" before, but there's a whole range, whole spectrum of information that we attempted to build and consider.

[redacted]

15:18:38 The -- you know, that's my experience. And
15:18:57 of course I'm not doing this in the abstract. I've --
15:18:59 I've, you know, attempted for these files and I've
15:19:04 gone file by file looking to see where and how and
15:19:07 under what terms it was being commercialized.

17:13:44 THE WITNESS: Again, you know, the process I went through included reviewing the content file to identify what was there, perhaps to identify the artist to see what song or songs would have been there if this is a music album including, you know, other promotional material. I might have even seen an album cover. You know, that's the type of thing I might see. Especially in a .rar file, which is a -- a tool used to compress a whole bunch of files often.

17:14:17 So I would look at the file, attempt to figure out what the work was, and then I would do some research to identify what -- you know, who the copyright owner or its licensee was. Typically in the record industry that would be the record label, and then I would look to see how the work was being commercialized, and if it was a professional artist that was commercializing its work in a way that that business model would be -- you know, really where the antithesis of that is free and unrestricted distribution of its music through the internet for -- for viral copy and distribution, that -- that would form the basis of my highly likely infringing designation and -- and the other legwork would have

17:15:08 included seeing, for example, that it was being -- it was an assumption that it was being distributed, but that was borne out here presumably by seeing the URL in the Hotfile search -- I mean, reference in the notes section along with looking at other web pages about the artist and where the web -- you know, where the URL may have been posted, and -- and of course the label.

[redacted]

CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

I, Joan V. Cain, Court Reporter, the officer before whom the foregoing deposition was taken, do hereby certify that the foregoing transcript is a true and correct record of the testimony given; that said testimony was taken by me stenographically and thereafter reduced to typewriting under my direction and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 29th day of December 2011.

My commission expires:
June 14, 2014

____________________________
NOTARY PUBLIC IN AND FOR THE
DISTRICT OF COLUMBIA

Page Line

____ ____ Change:________________________________________

____ ____ Change:________________________________________

____ ____ Change:________________________________________

____ ____ Change:________________________________________

____ ____ Change:________________________________________

____ ____ Change:________________________________________

____ ____ Change:________________________________________

____ ____ Change:________________________________________

________ Subject to the above changes, I certify that the transcript is true and correct.

✓ ________ No changes have been made. I certify that the transcript is true and correct.

________________________ (signature)

2/1/2012 (date)

Print Name Scott Zebrak

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, UNIVERSAL CITY STUDIOS PRODUCTIONS, LLP, COLUMBIA PICTURES INDUSTRIES, INC., and WARNER BROTHERS ENTERTAINMENT, INC.,

Plaintiffs,

vs. Case No.

HOTFILE CORPORATION, ANTON TITOV 11-cv-20427-AJ and DOES 1-20,

Defendants.

______________________________________________

Videotaped Deposition of SCOTT A. ZEBRAK, a witness herein, called for examination by counsel for Defendants in the above-entitled matter, Washington, D.C. pursuant to subpoena, the witness being duly sworn by SUSAN L. CIMINELLI, CRR, RPR, a Notary Public in and for the District of Columbia, taken at the offices of Jenner & Block, LLP, 1099 New York Avenue, N.W., Washington, D.C., at 10:49 a.m. on Friday, January 20, 2012.

APPEARANCES:

On behalf of the Plaintiffs & Counterdefendants:

DUANE POZZA, ESQ.
STEVEN B. FABRIZIO, ESQ.
Jenner & Block, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 639-6000
dpozza@jenner.com

On behalf of the Defendants:

DEEPAK GUPTA, ESQ.
Farella Braun + Martel, LLP
235 Montgomery Street
San Francisco, CA 94104
(415) 954-4400
dgupta@fbm.com

ALSO PRESENT:

CONWAY BARKER, Videographer

[redacted]

A. See, Professor Boyle -- and this is a flaw across his report, and I believe it's a very serious one. He -- he approached this, as he put it, as a legal scholar. He largely wanted to discuss issues in theory, rather than focus on those issues implicated by the facts and actually review the facts. And, in this instance, I did review the facts, including for the pornographic works that I examined in the course of the study, and I reviewed the terms of use and the conditions under which these companies allowed for use of their works. And I also had my own background knowledge on that industry, as well as further spoke with a representative from that industry to test my background and understanding on how their works are created and distributed. And they all supported my -- my conclusions.

As I mentioned earlier, of course a company is free to authorize distribution of its own works and how it sees fit but the works I -- I ran across and concluded were highly likely infringing were commercial works that were taken from sites that charged for access to that material and were of a length inconsistent with any sort of promotional

distribution of the type that you hypothesized over a moment ago as inspired by Professor Boyle.

BY MR. GUPTA:

Q. So what do you consider to be a length inconsistent with promotional distribution?

MR. POZZA: Objection. Incomplete hypothetical and ambiguous.

THE WITNESS: Well, I looked at a variety of factors. As with regard to my classification of works, for the most part, the works I examined were all full-length long commercial works. To the extent works were short such as 30 seconds, a minute, two minutes, something of that ilk, those tended not to be works, especially within the pornographic content we're talking about now, that were included in my highly likely infringing assessment.

The hypothetical example you gave and Professor Boyle's -- to my knowledge, I'm not sure if Professor Boyle reviewed any of the files that I reviewed in this category of pornography. He -- he expresses some sweeping conclusions about the adult entertainment industry based on from what I can tell is a review of three articles. But I would -- so in terms of the length of the works, those were the works of that period or shorter that I tended not to

have in the infringing category.

BY MR. GUPTA:

Q. Okay. Mr. -- Professor Boyle also criticized your analysis as to fair use. What's your reaction to that?

MR. POZZA: Same standing objection. Lack of --

THE WITNESS: Yeah, I mean, again, if you show me his report, I can go example by example, but Professor Boyle, again, throughout his report wants to talk about theoretical issues rather than a review of given files and whether those -- the distribution of those files is an infringement or not. He, in his report, talks about fair use. He talks about personal storage. He likes talking about zero and one downloads. Yet, a review of the actual files and facts show that those considerations for the files that I've examined are -- are just largely not present.

Professor Boyle, were he inclined to do so, could have reviewed these files to see that they were full length commercial works being distributed, and when I say distributed, as opposed to personal storage, these were -- these were works where he could merely take the Hotfile URL, paste it into his

Google search bar, and find those links online, as I did and as my data includes, along with my deposition testimony. So, you know, he discusses the Sony case and home taping and fair use and personal use, but the download data and the distribution data and the actual files I reviewed really undermine the way he attempts to raise these issues and attempts to sort of cast them across a great number of files. I just think factually he's -- he's off base about its relevance.

[redacted]

UNITED STATES OF AMERICA)

SS:

DISTRICT OF COLUMBIA )

I, SUSAN L. CIMINELLI, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me to the best of my ability and thereafter reduced to typewriting under my direction; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

________________________

SUSAN L. CIMINELLI

My commission expires: 11/30/2016

I have read the foregoing transcript of my deposition and find it to be true and accurate to the best of my knowledge and belief.

SCOTT A. ZEBRAK

Deposition of Scott Zebrak – Day 2 (rebuttal)
January 20, 2012
Errata

| Location | Correction |
| --- | --- |
| 163:2 | change "highly unlikely infringing category" to "highly likely infringing category" |