**Exhibit 10**

| | |
|---|---|
| **From:** | Pozza, Duane [DPozza@jenner.com] |
| **Sent:** | Friday, November 04, 2011 6:14 PM |
| **To:** | Leibnitz, Andrew (21) x4932; Schoenberg, Tony (28) x4963 |
| **Cc:** | Thompson, Rod (27) x4445; Fabrizio, Steven B; Platzer, Luke C |
| **Subject:** | Hotfile -- outstanding discovery issues |

Andy, Tony,

There are still a number of outstanding issues with defendants' production, which remains substantially incomplete. I have repeatedly raised these deficiencies, but have yet to receive a complete response (and often have received no response at all). In light of the short period remaining in discovery – and the length of time these issues have been outstanding – we must seek relief from the Court if we cannot reach a resolution. Please let me know a time to meet and confer on Monday so we can determine whether these can be resolved.

Here are the outstanding issues remaining that we should discuss:

- Chat logs. From the outset of our meet-and-confers on plaintiffs' document requests, we have repeatedly asked for relevant chat logs. As far back as August 9, I provided a specific example of a public post – still unproduced to date by defendants – where Hotfile's contractor Ianakov specifically offered to discuss the Hotfile Affiliate program via his ICQ account, and I asked for confirmation that that account was being searched for responsive documents. I followed up again on October 20 seeking to make sure any chat logs had been produced, given the frequency with which defendants appear to use chat programs for communication. On October 28, we for the first time heard that "Hotfile does not have chat logs" because "Hotfile personnel rarely if ever used IM or chat in connection with Hotfile business." As I pointed out in response (on Oct. 31) this is demonstrably untrue based on defendants' own documents. I even provided three additional examples of Hotfile personnel's use of IM to discuss particular subjects. I have not heard back yet as to whether chat logs do in fact exist. But plainly, the assertion that they must not exist because defendants do not use chat programs is inaccurate.

- Response to Interrogatory No. 13(a). On August 10, Tony indicated that a response would be provided, stating that he would "endeavor to do so by the end of next week." It has now been almost three months. As I have pointed out, the response to this Interrogatory will directly lead to the discovery of further evidence, because it seeks identification of aliases, chat handles, and other names through which Hotfile personnel have communicated with the public about Hotfile. There is no basis for months of delay.

- Ianakov's email account and personal posts. As I pointed out on October 31 (to which I have yet to receive a response), we still have not received a production from Ianakov's personal email accounts that he was using to conduct Hotfile business. These include, at least, Butcherboy.bg@gmail.com and butcherboy@gbg.bg. Defendants also still have not produced Ianokov's public postings even though I provided an example of one almost three months ago, on August 9, and have repeatedly demanded them. Ianakov routinely communicated with users on behalf of Hotfile, so this are the kinds of documents that are central to the case.

- Vobile-related documents. We first specifically asked for these documents on August 10 and were told that they would be produced in due course. Following defendants' custodian-based production, we flagged the relative lack of such documents on October 28, and then again on November 1. Still, almost nothing about the implementation of Vobile technology has been produced. We've asked for confirmation that no other documents exist (which we believe to be implausible), but defendants have merely stalled in response, without making that representation.

1

- Missing data. Over a month after the Court-ordered deadline for producing responsive data, defendants continue to produce key data responsive to Requests 1, 2, and 3 (among others) in dribs and drabs, and only after we manage to determine that any particular data must exist and push for it. And with every new production, it becomes apparent that defendants are withholding even more data. For example, on October 6, I raised the point that we had not received unique hash data for each content file. Only then was some portion of the hash data produced. On October 20, I raised the question of whether Hotfile stores other unique identifiers of content files that did not include in its initial production – a question to which I have not received a response. On October 31, I further noted that Hotfile must have additional hash information for blocked files based on its own sworn statements in the case. Just today we apparently received this "blocked hash" information – data should have been produced months ago. And still this data appears to be incomplete – it lacks corresponding uploadIDs for the blocked hashes which, again, is data that Hotfile must have to create the hashes in the first place. Likewise, as I flagged again on October 20, Hotfile stores a "lastdl" (or a user's last download), as is evident by Hotfile's own documents, a fact which we had noted in previous filings to the Court. Yet Hotfile has never produced this data, though it is plainly responsive to Requests Nos. 1 and 2. We still do not have a response to the question as to whether it will be produced.

    Indeed, defendants continue to play games with selectively producing the data in their possession. Today we received a list of DMCA takedowns but not the correlated uploadIDs, though Hotfile must extract the uploadID to block the file. Defendants also produced a "strike" table, but that table does not contain dates of strike allocations or identification of the notice or upload ID that was the basis of each "strike" – again, information that Hotfile must process to decide to allocate a "strike." Defendants can run database queries to pull this information. However, defendants are clearly picking and choosing different fields to produce in the hope of giving the appearance that all data has been produced, when it has not.

    I have raised other examples as well. On October 26 I asked about missing Affiliate and file "child" data that Hotfile must possess: (a) Separate data calculating how much Affiliates are paid based on their uploads and how much they are paid based on their websites – which are independent calculations, as Hotfile has described them. (b) Data indicating that an uploaded file was copied, which Hotfile must record that kind of data in order to, for example, limit the number of copies of the original file to five. We've received no response on these, and no indication that all responsive data has been produced.

- Clarification on production of existing data. On October 26, I asked two clarification questions on the hash/removal data you sent: Does the entry in "blocked" record whether a file was blocked based on a copyright notice or SRA request specifically? And which is the takedown date – "date2" or "date3" (or neither) – and what does the other entry represent? We still have no response to these straightforward questions, which are necessary to understand the data defendants have produced and whether it is complete.

- Referrer URL data. As I noted on Oct. 9, defendants must keep data related to "referrer URLs," because Hotfile's referral program for site owners pays site owners based on traffic coming from their website. While defendants represented that they had only limited information, I followed up on October 20, noting that referrer data may be stored elsewhere in the data in fields on which we are not aware, or that it may be available in other locations in defendants' possession, custody, or control – for example, in data hosted by Google Analytics. In response, defendants have merely stated that they have "produced everything that there is in the database for referrers," which is a non-answer. This data may well be contained in other databases, and the request requires more than searching that one database.

- Defendants have yet to confirm that all personal laptops used by Hotfile contractors or agents have been searched for responsive documents, despite the Court's express directive that this be done. Very few stand-alone documents have been produced in this case. Please confirm that all personal computers used by Hotfile contractors and agents for Hotfile work have all been searched for responsive documents, and whether you can represent that a diligent and complete search has been done.

2

- Production of content files for counterclaims. I followed up with an email to Andy earlier today. We need confirmation that these content files will be produced.

Regards,
Duane

**Duane Pozza**
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
Tel (202) 639-6027
Fax (202) 661-4962
DPozza@jenner.com
www.jenner.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.