UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF


DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
HOTFILE CORPORATION AND ANTON TITOV'S MOTION TO STRIKE THE
DECLARATION OF JENNIFER V. YEH**


**PUBLIC REDACTED VERSION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

CITATION LEGEND .............................................................................................. v

ARGUMENT ....................................................................................................... 1

I.      The Yeh Declaration Establishes Personal Knowledge. ........................................ 1

II.     The Forum Posts By Hotfile's Employees And Users Are Admissible. ............................ 3

III.    Plaintiffs' Summaries Are Plainly Admissible. .................................................. 6

IV.     Plaintiffs' Graphical Summaries Are Admissible. ............................................... 11

V.      The Identification and Screenshots of Hotfile's Affiliate Websites Are Admissible. ........ 12

VI.     The Evidence Regarding Other Copyright Infringers Is Relevant And Otherwise
        Admissible. ................................................................................... 14

VII.    Emails From Hotfile's Users to Hotfile Are Admissible. ........................................ 16

VIII.   The Electronic Frontier Foundation Article is Relevant and Admissible. ....................... 18

IX.     Exhibits Illustrating Shifts in the Popularity of the Hotfile Website Are Admissible. ...... 19

CONCLUSION ..................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ......................................................................................10

*Adams v. Ameritech Servs., Inc.*,
231 F.3d 414 (7th Cir. 2000) .........................................................................................15

*Agfa-Gevaert, A.G. v. A.B. Dick Co.*,
879 F.2d 1518 (7th Cir. 1989) ......................................................................................2, 6

*Arista Records LLC v. Lime Group LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011).............................................................................8

*Arista Records LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009).............................................................................8

*Columbia Pictures Indus., Inc. v. Fung*,
No. CV 06-5578 SVW, 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009) ...........................8, 13

*Columbia Pictures Indus., Inc. v. Fung*,
No. CV 06-5578 SVW, 2010 U.S. Dist. LEXIS 91169 (C.D. Cal. May 20, 2010)................10

*Daggett v. Comm'n on Gov'tal Ethics & Election Practices*,
172 F.3d 104 (1st Cir. 1999)........................................................................................16

*Daily Herald Co. v. Munro*,
758 F.2d 350 (9th Cir. 1984) .........................................................................................6

*Dushkin Publ's Group, Inc. v. Kinko's Serv. Corp.*,
136 F.R.D. 334 (D.D.C. 1991).......................................................................................19

*Evans v. Bd. of Educ. Southwestern City Sch. Dist.*,
No. 2:08-cv-794, 2010 WL 1849273 (S.D. Ohio Apr. 29, 2010)..........................................19

*In re Katz Interactive Call Processing Patent Litig.*, No. 07-ML-01816-C-RGK, 2010
WL 3749833 (C.D. Cal. July 2, 2010) .............................................................................11

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008).............................................................................20

*In re: Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation*,
870 F. Supp. 1293 (E.D. Pa. 1992) .................................................................................2

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
Civ. A. No. 4108-cv-03181, 2010 U.S. Dist. LEXIS 114306 (S.D. Tex. Oct. 27, 2010)......7, 8

*L.A. Times Commc'ns, LLC v. Dep't of the Army,*
  442 F. Supp. 2d 880 (C.D. Cal. 2006) ...................................................................2

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
  454 F. Supp. 2d 966 (C.D. Cal. 2006) ...........................................................8, 13

*Pace v. Capobianco,*
  283 F.3d 1275 (11th Cir. 2002) ............................................................................2

*Perfect 10 v. Google, Inc.,*
  416 F. Supp. 2d 828 (C.D. Cal. 2006), *aff'd in part, rev'd in part,* 487 F.3d 701 (9th
  Cir.), *amended on reh'g,* 508 F.3d 1146 (9th Cir. 2007)......................................20

*Range Road Music, Inc. v. East Coast Foods, Inc.,*
  668 F.3d 1148 (9th Cir. 2012) ..........................................................................7, 8

*Safety National Casualty Corp. v. United States Dep't of Homeland Security,* Civil
  Action No. 4:-5-cv-2159, 2007 WL 7131004 (S.D. Tex. Oct. 22, 2007) .............11

*Stromback v. New Line Cinema,*
  384 F.3d 283 (6th Cir. 2004) ............................................................................7, 8

*Tindall v. H & S Homes, LLC,*
  Civ. A. No. 5:10-cv-044 (CAR), 2012 U.S. Dist. LEXIS 6885 (M.D. Ga. Jan. 20,
  2012) ...............................................................................................................11, 12

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Worker Union Local No. 3,*
  No. 00 Civ 4763 RMB JCF, 2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006)............2

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,*
  667 F.3d 1022 (9th Cir. 2011) ("*Veoh*") ............................................................17

*United States v. Al-Moayad,*
  545 F.3d 139 (2d Cir. 2008)................................................................................4

*United States v. Blackstone,*
  56 F.3d 1143 (9th Cir. 1995) ..............................................................................15

*United States v. Fields,*
  483 F.3d 313 (5th Cir. 2007) ..............................................................................15

*United States v. Francis,*
  131 F.3d 1452 (11th Cir. 1997) ........................................................................6, 9

*United States v. Hawkins,*
  905 F.2d 1489 (11th Cir. 1990) ............................................................................4

*United States v. Joshi,*
   896 F.2d 1303 (11th Cir. Fla. 1990) ...................................................................4

*United States v. Sutton,*
   795 F.2d 1040 (Temp. Emer. Ct. App. 1986) ......................................................2

*United States v. Wazny,*
   448 F. App'x 47 (11th Cir. 2011) ........................................................................4

*Wailea Partners, LP v. HSBC Bank USA, N.A.,*
   Case No. 11-cv-3544 SC, 2011 U.S. Dist. LEXIS 144441 (N.D. Cal. Dec. 15, 2011)..........20

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c)(2) ...............................................................................................11

Fed. R. Evid. 106 ...................................................................................................14, 20

Fed. R. Evid. 201 .........................................................................................................16

Fed. R. Evid 403 ..........................................................................................................15

Fed. R. Evid. 602 ...........................................................................................................2

Fed. R. Evid. 702 ...........................................................................................................7

Fed. R. Evid. 801(c)(2) ....................................................................................3, 13, 17

Fed. R. Evid. 802(d)(2) ..................................................................................................4

Fed. R. Evid. 803(6) .....................................................................................................18

Fed. R. Evid. 803(8) .....................................................................................................16

Fed. R. Evid. 803(17) .............................................................................................19, 20

Fed. R. Evid. 901 ............................................................................................................4

Fed. R. Evid. 1006 ......................................................................................................6, 9

Senate Report No. 105-190...................................................................................11, 14

## CITATION LEGEND

1.      "Yeh Decl." shall refer to the Declaration of Jennifer V. Yeh in Support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, submitted in support of Plaintiffs' Motion for Summary Judgment, filed February 17, 2012, available publicly at Docket No. 324-1.

2.      "Mot." shall refer to Defendants' Motion and Memorandum of Law of Defendants Hotfile Corporation and Anton Titov to Strike the Declaration of Jennifer V. Yeh Filed in Support of Plaintiffs' Motion for Summary Judgment and Any References in Plaintiffs' Motion for Summary Judgment or Statement of Facts to the Yeh Declaration and its Attachments, filed March 7, 2012.

3.      "PSUF" shall refer to specific paragraph numbers of uncontroverted facts in Plaintiffs' Statement of Uncontroverted Facts submitted in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, filed February 17, 2012, available publicly at Docket No. 323.

4.      "Defs. Opp." shall refer to Memorandum of Law of Defendants Hotfile Corporation and Anton Titov in Opposition to Plaintiffs' Motion for Summary Judgment, filed March 14, 2012.

5.      "Pls. Mot." shall refer to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, filed February 17, 2012, available publicly at Docket No. 322.

6.      "Pls. Reply" shall refer to Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, filed March 19, 2012.

7.      "Pls. Mot. to Strike" shall refer to Plaintiffs' Motion and Memorandum of Law to Strike Portions of Declarations of Professor James Boyle, Dr. Andrew Cromarty, and Anton Titov in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, filed March 19, 2012.

8.      "Foster Decl." shall refer to the declaration of Dr. Ian Foster, in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, filed February 17, 2012, available publicly at Docket No. 325-17.

9.      "Kaplan Decl." shall refer to the Declaration of David Kaplan in Support of Warner Bros. Entertainment's Motion for Summary Judgment, filed February 10, 2012, available publicly at Docket No. 308-1.

10.      "Sehested Decl." shall refer to the Declaration of Thomas Sehested in Support of Plaintiffs' Motion for Summary Judgment Against Hotfile Corp. and Anton Titov, filed February 17, 2012, available publicly at Docket No. 325-12.

11.      "Yeh Ex. __," shall refer to exhibits attached to the Declaration of Jennifer V. Yeh in Support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 16, 2012, available publicly at Docket No. 324-1. Where appropriate, citations to such exhibits may also include pinpoint citations to the page number(s), and paragraph or line numbers, internal to the cited document.  In some instances where individual Yeh Declaration exhibits were not paginated, page numbers have been added manually for ease of the Court's reference.  The parentheticals indicate the nature of the item cited – *e.g.*, deposition transcripts ("dep.") – or documents produced in discovery by various parties.  Thus, by way of illustration, "Yeh Ex. 1 (Titov dep.) at 200:1-10" would refer to the deposition of defendant Anton Titov, which could be found in Exhibit 1 to the Yeh Declaration, at page 200 of the transcript pages, at lines 1 through 10.  And, "Yeh Ex. 110 at 2" would refer to Exhibit 110 to the Yeh Declaration, and specifically the page of that Exhibit found at page 2 of the numbered Exhibit pages.

Lacking convincing responses to much of the incriminating evidence establishing their liability for copyright infringement, defendants Hotfile Corp. and Anton Titov ("defendants") take the blunderbuss approach of raising evidentiary objections to *all* of it, attempting to strike in its entirety the attorney declaration submitted in support of Plaintiffs' Motion for Summary Judgment ("Yeh Decl.").[1]  *See* Defendants' Motion to Strike, Docket No. 336 ("Mot."). Defendants' arguments each lack merit, and plaintiffs respectfully request the Court deny the motion in its entirety.

## ARGUMENT

## I.      The Yeh Declaration Establishes Personal Knowledge.

Defendants' Motion argues repeatedly that Ms. Yeh's *entire* Declaration should be struck for lack of personal knowledge.  *See* Mot. at 7, 8, 11, 15.  Defendants offer no conceivable rationale for such an extreme position, as the overwhelming majority of Ms. Yeh's declaration consists of attaching deposition excerpts and documents produced by Hotfile and authenticated by its principals at their depositions.[2]

Defendants' sole support for striking plaintiffs' attorney declaration is their claim that "Ms. Yeh states that her declaration statements are *either* based on her personal knowledge or are based on 'information provided to [her] by colleagues or other personnel working under [her] supervision on the case.'"  Mot. at 15-16 (emphasis and brackets in the original).  ***But that is not what Ms. Yeh's declaration says.***  Ms. Yeh's actual statement was that "[t]he statements made in this declaration are based on my personal knowledge *including* on information provided to me by colleagues or other personnel working under my supervision in this case."  Yeh Decl. ¶ 1

---

[1] Defendants, like plaintiffs, supported their motions for summary judgment with attorney declarations.  *See*, *e.g.*, Declaration of Deepak Gupta in Support of Hotfile's Motion for Summary Judgment, Docket No. 320-1; Declaration of Roderick Thompson in Opposition to Warner's Motion for Summary Judgment, Docket No. 354-1.

[2] Defendants' efforts to strike everything in sight are illustrated by their assertion that the Court should "strike" a deposition exhibit attached to Ms. Yeh's declaration for no other reason than the fact that highlighting plaintiffs added to the document is difficult to discern in the black-and-white version.  *See* Mot. at 16 n.7.  The deposition exhibit in question, Yeh Ex. 14, is an excerpt from a document produced by Hotfile ███████████████████████████████████ ████████████████████████  Plaintiffs cite it for the proposition that ███████████████████████████████████████ or copyright infringement, which can be seen on the face of the document itself, even without the highlighting drawing attention to the specific rows.  *See* PSUF 4(c); Yeh Ex. 14.  Moreover, even if the photocopying were a real issue – which it plainly is not – the remedy would be to substitute a color version of the document, not to strike it.

(emphasis added).  The full, accurate quotation disposes of defendants' argument.  Ms. Yeh testified as to her personal knowledge of each statement in her declaration.  The snippet of her testimony that Hotfile takes out of context merely explains *how* Ms. Yeh gained some of the personal knowledge underlying the attorney declaration.

It is commonplace for attorneys, particularly on large cases, to work collaboratively with other attorneys and to supervise junior staff, and gain personal knowledge through such collaboration and supervision – as Ms. Yeh did here with each and every one of the evidence summaries of which defendants complain (and which plaintiffs address in greater detail in Part III *infra*).  Courts have routinely recognized that "[k]nowledge acquired through others may still be personal knowledge within the meaning of Fed. R. Evid. 602."  *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Worker Union Local No. 3,* No. 00 Civ 4763 RMB JCF, 2006 WL 2136249, at *11 (S.D.N.Y. Aug. 1, 2006) (same); *In re: Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation*, 870 F. Supp. 1293, 1304 (E.D. Pa. 1992) (same), judgment aff'd, 995 F.2d 219 (3d Cir. 1993); *cf. also L.A. Times Commc'ns, LLC v. Dep't of the Army,* 442 F. Supp. 2d 880, 886 (C.D. Cal. 2006) ("Although first-hand observation is the most common form of personal knowledge, first-hand observation is not the only basis for personal knowledge.").  This encompasses those who supervise or otherwise coordinate the preparation of evidentiary submissions to the court on behalf of a party.  *See, e.g. United States v. Sutton*, 795 F.2d 1040, 1057 (Temp. Emer. Ct. App. 1986) (upholding decision to admit testimony of prosecution's chief auditor, which summarized the work of 20 other auditors who worked under him on the case).  The case cited by Hotfile – *Pace v. Capobianco*, 283 F.3d 1275 (11th Cir. 2002) – is completely inapposite.  *Pace* stands only for the unrelated and uncontroversial point that statements made in affidavits based "upon information and belief" are not admissible on summary judgment.  *Id.* at 1278-79.  That is simply not the case here.[3]

---

[3] Hotfile submitted comparable attorney testimony in support of its own summary judgment filings.  *See, e.g.,* Declaration of Roderick Thompson in Support of Defendants' Opposition to Plaintiff Warner Bros. Motion for Summary Judgment, (filed Feb 27, 2012), Docket No. 354-1, ¶¶ 6, 17, 18, 20, 22, & 24 (filed Feb. 27, 2012) (repeatedly identifying submitted exhibits as "created at my direction").  If defendants' counsel failed to include language in their declarations explaining that their personal knowledge was based in part on the supervision of others working at their direction, that undoubtedly reflects casual drafting.  It is clear, for instance, that

## II.    The Forum Posts By Hotfile's Employees And Users Are Admissible.

Ms. Yeh's declaration includes a series of forum posts authored by Titov and by Hotfile's employee/contractor Andrei Ianakov promoting the Hotfile site. *See* Yeh Exs. 58, 60, 61, 63, 64, 86. In one of the conversation threads in which Ianakov was repeatedly promoting Hotfile, a Hotfile user posted his experience that deletions of files in response to takedown notices did not cause users to lose their accounts, *see* Yeh Decl. 22, and several others expressed surprise that Hotfile had been so bold as to use its Twitter account to promote the availability for download of a movie recognizable as copyrighted. Yeh Ex. at 48. Defendants raise a laundry list of objections to these exhibits, including "lack of authentication, hearsay, irrelevance, unfair prejudice, and failure to produce in discovery and disclosure." Mot. at 2 n.1 (challenging admissibility of Yeh Exs. 58, 60, 61, 63, 64, and 86). None of these arguments hold water.

The relevance of these various exhibits is obvious: they consist of defendants' own promotions and descriptions of Hotfile, along with (in one of the same conversation threads) the reactions of their immediate intended audience to Hotfile's promotions. *See* Yeh Exs. 22 & 48. While defendants deride Exhibits 22 and 48 as mere "graffiti," Mot. at 4, those exhibits are evidence of how Hotfile's infringing message was received by the immediate audience – readers of the Digitalpoint Forum – to whom they were promoting it. Thus, even though they fall within a hearsay exception (see *infra*), those two exhibits are independently admissible not for the truth of the matter asserted, but rather to demonstrate that Hotfile's message encouraging infringement was being received loud and clear by its intended audience. *See* Fed. R. Evid. 801(c)(2).[4]

Moreover, both Exhibits 22 and 48 are part of the same conversation in which Hotfile's employee/contractor Ianakov (posting under the name "butcherboy") was involved. *See* Yeh Ex. 22 at 3, 5; Yeh Ex. 48. Although Hotfile now in litigation decries the users' assertions about Hotfile (*i.e.*, that they did not at the time terminate repeat infringers and that they used twitter to promote an infringing video) as "unfair and baseless." Mot. at 4 n.3, Ianakov did nothing to correct or contradict them at the time – which is unsurprising, seeing as how both claims are accurate and independently backed by extensive other evidence. *See* PSUF 1-5, 10(e)(i),

---

defendants' declarant counsel did not themselves create each of defendants' exhibits, but likewise relied upon junior attorneys and support staff in order to do so.

[4] The admissibility of the exhibits accordingly does not depend on the personal knowledge of the users who made the statements in Exhibits 22 and 48. Defendants' personal knowledge objection, therefore, is beside the point. *See* Mot. at 4.

10(e)(ii).  Posts by Hotfile's own personnel are admissions of a party opponent, *see* Fed. R. Evid. 802(d)(2), and Exhibits 22 and 48 are further admissible as adoptive admissions: in both cases, members of the audience to which Hotfile was promoting its service made statements about Hotfile that Ianakov declined to contradict – presumably because both statements were true and because both statements, by indicating that Hotfile welcomed infringing content, were bound to attract users.[5]  *See generally United States v. Joshi*, 896 F.2d 1303, 1311 (11th Cir. Fla. 1990) (citations and internal quotation marks omitted) (adoptive admission where, as here, a "statement must be such that an innocent [party] would normally be induced to respond" and there are "foundational facts from which the jury could infer that the [party] heard, understood, and acquiesced in the statement.").  Indeed, in the case of Ex. 22, Ianakov posted both shortly before and shortly after the user post of which Hotfile complains, supporting a conclusion that he had seen, and did not object to, the user's claim that Hotfile did not suspend infringing users when their files were taken down in response to copyright owner notices.  *See* Yeh Ex. 22 at 5.

Defendants rely instead on the speculative theory – for which they have no evidence whatsoever – that the posts might have been planted by "hackers" or by plaintiffs.  *See* Mot. at 3. However, defendants misapprehend the authentication requirement under Rule 901.  Parties proffering evidence are not required to "prove a negative" and disprove speculative concerns hypothesized by the opposing party without evidence.  Rather, as the Eleventh Circuit has made clear, "[a]uthentication under Rule 901 only requires the presentation of sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.  Once that prima facie showing has been made, the evidence should be admitted and the trier of fact permitted to determine whether the proffered evidence is what it purports to be."  *United States v. Wazny*, 448 F. App'x 47, 50 (11th Cir. 2011) (internal quotation marks omitted).  There "need be only some competent evidence in the record to support authentication, which can consist of merely circumstantial evidence."  *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990).  The courts "have often commented that [t]he bar for authentication of evidence is not particularly high."  *United States v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008) (internal quotation marks omitted; bracket in original).  This *prima facie* standard is easily satisfied here.

---

[5] With respect to the several other exhibits constituting posts by Hotfile's own personnel, Hotfile states a conclusory "relevance" objection but fails to explain how those postings are not relevant to the propositions for which plaintiffs cite them in their statement of facts.  *See* Mot. at 2 n.1.

There can be no serious doubt here that the forum posts are exactly what they purport to be: posts by Hotfile's own personnel, interspersed in two cases with reactions from their intended audience.  Plaintiffs' counsel's testimony establishes that the attached comments appear on the websites exactly as attached.  *See* Yeh Decl. ¶¶ 23, 49.[6]  Defendants' own admissions clearly show that the attached exhibits are posts by Mr. Titov and by Hotfile's then-employee / "contractor" Andrei Ianakov.  As Mr. Titov testified at his deposition, Ianakov was responsible for promoting Hotfile on Internet forums at the beginning of Hotfile's operations.  *See* Yeh Ex. 1 (Titov dep.) at 76:19-22, 493:21-94:5; Yeh Ex. 81 at 6.  Defendants themselves identified the Internet Forums to which Hotfile's personnel testified and the names under which they did so. *See* Declaration of Jennifer V. Yeh in Support of Plaintiffs' Opposition to Defendants' Motion to Strike the Declartion of Jennifer V. Yeh, Ex. A, Defs. Supp. Resp. to Pls. Interrog. No. 13(a)) at 5-6 (admitting that Ianakov posted on Internet Forums such as "digitalpoint," "linkbucks," "freelancer" using the name "butcherboy"); Yeh Ex. 81 (Defs. Second Supp. Resp. to Interrog. No. 1) at 7 (admitting that Titov posted under name "virco"); Yeh Ex. 1 (Titov dep.) at 77:18-78:2 (Titov testifying that he used the screen name "Virco" in his own personal forum posts). Plaintiffs then identified the relevant forum posts based on defendants' own admissions, and Titov confirmed them at his deposition, where they were introduced as deposition exhibits (putting to rest defendants' claim that they were not disclosed).[7]  Titov repeatedly and consistently testified that he had no reason to believe that the posts were not exactly what they appeared to be: promotions by Ianakov and typical forum discussions about them.  *See* Yeh Ex. 1 (Titov dep.) at 671:24-673; 684:3-24; 687:21-688:1; 689:5-15; 692:3-693:25.

Although defendants now claim that these posts were "allegedly written anonymously by ██████████████ none of which were authorized by Hotfile," Defs. Opp. at 27, the claim in defendants' brief is inconsistent with both defendants' interrogatory responses and with Mr.

---

[6] Defendants' position that the webpages should all be excluded because Ms. Yeh does not individually name the support staff who printed them at her direction, *see* Mot. at 3 – a position for which they cite no legal authority – illustrates their kitchen-sink approach.  *See, supra,* Section I (declarant can acquire personal knowledge from persons acting at her direction). Defendants' counsel presumably also had support staff print their exhibits.

[7] *See, e.g.*, Yeh Ex. 1 (Titov dep.) at 683:23-685:14 (authenticating Yeh Ex. 58); *Id*. at 685:20-688:19 (authenticating Yeh Ex. 60); *Id*. at 689:17-693:25 (authenticating Yeh. Ex. 61); *Id*. at 671:1-673:4 (authenticating Yeh Ex. 63); *Id*. at 688:22-689:15 (authenticating Yeh Ex. 64); *see also* Yeh Ex. 86 (Digital Point postings by "virco" regarding Hotfile's Affiliate Program) at 6.

Titov's own statements at his deposition, who testified that Hotfile's principals knew about and approved of Ianakov's postings at the time, viewed Mr. Ianakov's postings as good for Hotfile, and that Titov's ██████████ had authorized Ianakov's use of Twitter to promote the Hotfile site.  Yeh Ex. 1 (Titov dep.) at 494:6-14; 637:3-22.[8]  The required *prima facie* showing of authenticity is easily established here.

## III.   Plaintiffs' Summaries Are Plainly Admissible.

Defendants also move to strike Exhibits 27, 29, 56, 106, and 119, each of which is a chart summarizing relevant evidence produced by defendants.  The Federal Rules of Evidence explicitly permit use of a summary or chart "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  *See United States v. Francis*, 131 F.3d 1452, 1457 (11th Cir. 1997); Fed. R. Evid. 1006.  Contrary to defendants' arguments, Mot. at 7, 8, 9, the fact that persons under Ms. Yeh's supervision may have assisted in preparing those summaries is immaterial.  Ms. Yeh was the responsible attorney who supervised each of the five evidence reviews and summaries at issue, and has personal knowledge of work done under her direction and may testify on that basis.  *See* Declaration of Jennifer V. Yeh in Support of Plaintiffs' Opposition to Defendants' Motion to Strike the Declaration of Jennifer V. Yeh (filed herewith) ¶ 3; Yeh Decl. ¶¶ 28, 30, 57, 120; *see also, e.g., Agfa-Gevaert, A.G.*, 879 F.2d at 1523; *Daily Herald Co. v. Munro*, 758 F.2d 350, 355 n.6 (9th Cir. 1984) ("personal knowledge may be inferred to one in a responsible, supervisory position, where that person is required to be familiar with the practices of those [s]he supervises").

What is most notable about defendants' objections to these five summaries are what they do ***not*** include: any claim by the defendants that the summaries are in any way inaccurate or misstate the voluminous data at issue.  Each of the five summaries relates to data and files that defendants produced to plaintiffs, and that defendants have in their own possession.  Defendants have not raised any genuine controversy that any of these five summaries are accurate recitations of the evidence.  Instead, they merely raise misguided procedural objections.  All are unfounded:

Exhibit 29.  Exhibit 29 is a summary of plaintiffs' review of content files downloaded by Hotfile personnel from Hotfile and produced to plaintiffs.  *See* Order on Plaintiffs' Motion to

---

[8] Moreover, defendants cannot be heard to complain as to the absence of testimony from Mr. Ianakov himself regarding the postings.  As the Court may recall, defendants refused to produce Ianakov for deposition, and then, when plaintiffs served a motion to compel his deposition, claimed that he had resigned in order to avoid being deposed.  *See* Yeh Ex. 89 at 4.

Compel, Docket No. 146 at 1 (ordering production of Hotfile personnel's downloads).  Ms. Yeh supervised plaintiffs' review in order to make two determinations: (1) the content that the file appeared to contain, and (2) whether the distribution of that content through Hotfile appeared to be infringing.  The exhibit includes a column of "notes," whose creation Ms. Yeh also supervised, indicating URLs where the Hotfile links or the content was described.  This evidence is offered to show that Hotfile's personnel downloaded files that clearly appear to be infringing.

*First*, defendants argue that identification of the files is expert testimony requiring specialized knowledge under Fed. R. Evid. 702.  Mot. at 5.  They cite no authority for this proposition.  In fact, it is well-recognized that identification of content does not generally require specialized knowledge.  *See Range Road Music, Inc. v. East Coast Foods, Inc*., 668 F.3d 1148, 1153 (9th Cir. 2012) (lay witnesses competent to identify popular music in copyright infringement action); *Interplan Architects, Inc. v. C.L. Thomas, Inc*., Civ. A. No. 4108-cv-03181, 2010 U.S. Dist. LEXIS 114306, at *49 (S.D. Tex. Oct. 27, 2010) (lay witness competent to testify about drawing in copyright infringement action); *Stromback v. New Line Cinema*, 384 F.3d 283, 295 (6th Cir. 2004) (lay witness competent to testify about literary works in infringement action).[9]  To the extent the Court wishes to see for itself whether the files are recognizable as copyrighted content, plaintiffs would be happy to provide the Court with copies of the files themselves.

*Second*, defendants argue that the categorization of these files as highly likely to be infringing was an impermissible legal conclusion.  Mot. at 6.  Defendants misapprehend the purpose for which this testimony was offered: to show that defendants had knowledge that some content on Hotfile appeared to be copyrighted and failed to remove it.  Pls. Reply at 7.  Ms. Yeh's testimony is not probative of an ultimate legal conclusion, but rather is probative of defendants' knowledge.  Defendants also have the files and can argue just as well that they are **not** evidently infringing – but have not done so.

Defendants note that plaintiffs retained an expert, Scott Zebrak, to classify sets of files included in plaintiffs' statistical analysis and in Hotfile's counterclaims, suggesting that this shows that Ms. Yeh must be offering expert analysis.  Mot. at 5.  That is not so.  Mr. Zebrak has performed the same role as other copyright analysis in analogous online infringement studies that

---

[9] Because the classification are not offered as expert testimony, the objections based on Rule 702(c), the application of methods for expert testimony, are irrelevant.  Mot. at 6.

have been credited by courts: reviewing a random sample of files and making an infringement judgment on *each file*.  *See, e.g.*, *Arista Records LLC v. Lime Group LLC,* 784 F. Supp. 2d 398, 412-13 (S.D.N.Y. 2011); *Arista Records LLC v. Usenet.com, Inc.,* 633 F. Supp. 2d 124, 131-32 (S.D.N.Y. 2009); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 454 F. Supp. 2d 966, 985 (C.D. Cal. 2006). *Columbia Pictures Indus., Inc. v. Fung,* No. CV 06-5578 SVW (JCx), 2009 WL 6355911, at *4, 8 (C.D. Cal. Dec. 21, 2009).  Here, the review supervised by Ms. Yeh did not purport to do anything so comprehensive.  The files identified were all relatively straightforward to identify and classify.  It was not necessary to retain an expert to offer these files into evidence as proof of defendants' knowledge of infringing material on Hotfile.[10]

    *Finally*, defendants argue that Exhibit 29 was not produced in discovery and therefore should not be admitted.  Defendants have it backwards – *they produced the content files in Exhibit 29 in discovery* and Exhibit 29 is merely summarizing their contents.

    <u>Exhibit 56</u>.  Exhibit 56 summarizes information about files constituting the over 3,800 works in suit in this case.  Ms. Yeh testified that persons under her direct supervision actually reviewed each and every content file for each of the works and identified them as copies of the plaintiffs' works.  Again, identification of popular copyrighted content does not require expert testimony.  *See Range Road Music,* 668 F.3d at 1153; *Interplan Architects,* 2010 U.S. Dist. LEXIS 114306, at *49; *Stromback,* 384 F.3d at 295.  Yeh Exhibit 56 is merely identifying and summarizing contents of the files in lieu of submitting copies of all of the files for 3,800 works to the Court.  But there is not, and cannot be, any genuine controversy as to what those files are.[11]  The remainder of the information in the chart – listing the registration number and information about downloads – is already information elsewhere in the record in this case,

---

[10] Defendants' argument that this constitutes in "inadmissible legal conclusion" is baseless.  Mot. at 6.  The cases cited by defendants largely concern attempts to include argument about the ultimate legal issue in a case in an affidavit.  Here, Ms. Yeh's exhibit is identifying specific content files and noting that they appear to be copies of copyrighted works being commercially exploited.  *See also, supra,* text accompanying n.9.

[11] Plaintiffs abstained from burdening the Court with multiple hard drives containing thousands of copies of movies and television programs made available by Hotfile and summarized in Exhibit 56.  Should the Court have any interest in reviewing those files itself, however, plaintiffs would be happy to provide them for the Court's inspection.  Defendants already have this data, as it consists of files from their own system.

including in plaintiffs' summary judgment declarations.[12]  Ms. Yeh's Exhibit 56 merely
summarizes that information in one place for the Court's convenience.  *See* Fed. R. Evid. 1006.

Exhibit 27.  Exhibit 27 is a summary of voluminous email communications between
Hotfile users and Hotfile.  In each of those communications, a user sent Hotfile a communication
containing a field called "lastdl" ███████████████████████████████████████
████████████████████  Illustrative examples of such emails are attached as Yeh Exhibit
26.  In lieu of attaching over 700 emails, Ms. Yeh summarized the "lastdl" field for each email,
by Bates number, along with the plaintiffs' work to which it appears to correspond.  This is a
straightforward summary of evidence under Fed. R. Evid. 1006.  *See Francis*, 131 F.3d at 1457.

Again, there is no genuine dispute that plaintiffs have accurately summarized, in Exhibit
27, the emails produced by the defendants – defendants have the data themselves, and what the
emails say cannot be genuinely contested.[13]  Moreover, there is no "expert opinion testimony,"
Mot. at 9, including for the reasons stated with respect to Ex. 56 above: identification of popular,
copyrighted entertainment content hardly requires specialized expertise or training.  Defendants'
argument that the filenames of the files in the "lastdl" field do not establish conclusively the
contents of the files, Mot. at 8, misapprehends the purpose of the evidence.  Even if it were
theoretically possible that a file might be mislabeled, files clearly named after popular,
copyrighted entertainment works are easily recognizable and prove notice: that defendants had
actual or "red flag" knowledge of infringement on their system.  Pls. Mot. at 14; Pls. Reply at 12;
*see also infra* n.14 (filenames and metadata are evidence of files' contents).

Exhibit 119.  Likewise, Exhibit 119 is a list of ██████ Hotfile files, by URL, that on
their face correspond to plaintiffs' copyrighted works.  Plaintiffs produced these lists in
discovery, explaining that, in the limited time permitted, plaintiffs had been able to match these

---

[12] The registration number information is also provided in the declarations provided by the
Plaintiff studio witnesses, David Kaplan, Marsha Reed, Carly Seabrook, Vicki Solmon, and
Betzy Zedek.  Kaplan Decl., Docket No. 270-1, ¶4; Reed Decl., Docket No. 270-2, ¶4;
Seabrook Decl., Docket No. 270-3, ¶4; Solmon Decl., Docket No. 270-4, ¶4; Zedek Decl.,
Docket No. 270-5, ¶4.  The download information is derived from information included in the
declarations of Thomas Sehested and Dr. Ian Foster.  Sehested Decl., Docket No. 325-12, ¶¶ 4-5;
Foster Decl., Docket No. 325-17, ¶¶ 71-72.

[13] Again, plaintiffs sought to spare the Court the task of sifting through over 700 emails.  Should
the Court be interested in undertaking such a review, plaintiffs would be happy to provide these
documents to the Court for inspection.

URLs by title and other metadata to one of plaintiffs' copyrighted works.  Yeh Decl. ¶ 20.
Again, this list was drawn from defendants' own data, and defendants do not raise any genuine
or material dispute that the list, as produced by plaintiffs, is accurate.

Instead, defendants object to Ms. Yeh's statement that the files listed in Exhibit 119
appear to correspond to plaintiffs' copyrighted works, claiming it is "conclusory."  Mot. at 8.
However, Ms. Yeh is not expressing *an opinion* that these are plaintiffs' copyrighted works.  She
is merely listing URLs from Hotfile's data that *on their face* indicate they are copies of the
indicated work.[14]  This again is just data from Hotfile's own databases, and the fact that those
files are named after plaintiffs' works is apparent to any layperson.[15]  While defendants again
object that filenames and metadata do not *conclusively* prove that a file contains the copyrighted
movie or television program after which it is named, *see* Mot. at 8-9, they are certainly *relevant*
*evidence* that it contains the movie or television program, as expert testimony submitted by
plaintiffs indicates and other courts have recognized.[16]  And, again, the information is admissible
in any event to prove notice and red flag knowledge.

Exhibit 106.  Exhibit 106 contains a list of domain names of defendants' paid Affiliates
with names blatantly indicating infringing activity.  Defendants argue that Ms. Yeh's statement
that, "[a]s is evident from reviewing this list, each of the domain names suggests that the website
at the domain provides access to copyrighted content," is an impermissible expert opinion.  Mot.

---

[14] Plaintiffs' technical expert Dr. Ian Foster provided testimony that filenames and metadata can
assist the identification of entertainment content embodied in digital files, and are thus evidence
of what digital files contain.  *See* Foster Decl. ¶ 15.  The Ninth Circuit has likewise endorsed this
method.  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001).  Indeed, in
*Fung*, the district court required the defendant to use precisely this type of information to filter
infringing files from its system.  *Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578 SVW,
2010 U.S. Dist. LEXIS 91169, at *21-22 (C.D. Cal. May 20, 2010) (permanently enjoining
defendant from, *inter alia*, "hosting, indexing, linking to, or otherwise providing access to . . .
Copyrighted Works" and further stating that defendants "shall be in knowing violation if they
fail to act in response to the *list of titles* [provided by plaintiffs].") (emphasis added).

[15] Since defendants have all this same data in their own database and can retrieve it on a file-by-
file basis, their further objection that plaintiffs did not provide more data about each file is
baseless.  Defendants have access to all that same information and can retrieve it from their data.

[16] Plaintiffs requested content files for these works from defendants.  However, Hotfile claimed
to no longer have in its possession many of the files identified in Exhibit 119, and the available
time and resources to obtain and confirm infringing files was limited.  The files that plaintiffs
were able to obtain from Hotfile, review, and confirm as plaintiffs' works (in the very limited
time allotted) are the verified works in suit summarized in Exhibit 56.

at 7 (quoting Yeh Decl. ¶ 107).  It is nothing of the sort.  Plaintiffs submitted the actual domain names reflected in defendants' own records.  Defendants and the Court can readily see that the domain names are clearly associated with copyrighted content.  Ms. Yeh is merely explaining what the list entails.  The kind of domain names here are the kind that Congress identified as showing red flags of infringing activity.  *See* S. Rep. No. 105-190, at 48 (1998); Pls. Reply at 12; *see also, infra*, p. 13 (recognizing pirate websites requires no specialized expertise).

## IV.   Plaintiffs' Graphical Summaries Are Admissible.

Plaintiffs also submitted nine one-page charts graphically illustrating facts identified by plaintiffs' experts and discussed by plaintiffs in their memorandum of law.  Yeh Exhibits 109-118.  Each chart is a ***demonstrative exhibit*** that graphically represents one or more of plaintiffs' asserted undisputed facts, each of which is independently supported by admissible evidence.

Defendants argue that these exhibits are composed of legal arguments, hearsay, and "unqualified expert opinion."  Mot. at 10.  However, the demonstrative exhibits are not offered as independent evidence or argument but merely as demonstratives that illustrate evidence and argument already in the record.  Such demonstratives are routinely prepared and used by attorneys in presenting a case at oral argument or at trial, and, as such, are equally admissible in support of a motion for summary judgment.  *See, e.g.*, *Tindall v. H & S Homes, LLC*, Civ. A. No. 5:10-cv-044 (CAR), 2012 U.S. Dist. LEXIS 6885, at *11-14 (M.D. Ga. Jan. 20, 2012) (declining to strike demonstrative chart "derived from evidence" and "created by counsel" to summarize underlying evidence submitted in support of motion for summary judgment); *In re Katz Interactive Call Processing Patent Litig.*, No. 07-ML-01816-C-RGK, 2010 WL 3749833, at *3 (C.D. Cal. July 2, 2010) (denying motion to strike charts submitted with summary judgment reply brief on the basis that "[t]his Court sees no reason why Teligence cannot present charts and an animation that illustrate arguments it already made"); *Safety National Casualty Corp. v. United States Dep't of Homeland Security*, Civil Action No. 4:-5-cv-2159, 2007 WL 7131004, at *1-2 (S.D. Tex. Oct. 22, 2007) (denying motion to strike summary judgment demonstratives as the court will "consider the charts as a supplementary aid intended to present Defendant' version of the case"); *see also* Fed. R. Civ. P. 56(c)(2).  Indeed, given that plaintiffs would be well within their rights to bring the demonstratives in Yeh Exs. 109-118 to aid in their presentation of oral argument or their opening statements at trial, defendants can hardly complain that plaintiffs disclosed them in advance.

11

Defendants' suggestion that they has suffered prejudice because they lacked an "opportunity for cross-examination of experts on these exhibits" is disingenuous.  Mot. at 10-11. All of plaintiffs' demonstrative exhibits are based entirely on expert evidence that was properly disclosed in the appropriate expert reports.  Defendants cannot claim unfair surprise simply because plaintiffs have assembled and summarized evidence of which all parties were aware in a manner in which they failed to do themselves.  *See Tindall*, 2012 U.S. Dist. LEXIS 6885, at *12 (defendant not prejudiced where plaintiff submitted a demonstrative chart on summary judgment because both parties were equally aware of "the evidentiary basis for the exhibit").  Defendants also have all of the underlying evidence.  Notably, they do not claim that the demonstrative exhibits inaccurately present it.

Defendants' attempt to portray plaintiffs' demonstrative exhibits as circumventing the page limits imposed on the memorandum of law is equally unpersuasive.[17]  Mot. at 10.  The demonstrative exhibits do not introduce any new arguments whatsoever – they merely provide graphical summaries of points that plaintiffs fully explain to the Court within their memorandum of law.  *See, e.g.*, Pls. Mot. at 31 (explaining information summarized graphically in Yeh Ex. 111); *Id.* at 11 (explaining information summarized graphically in Yeh Ex. 115); *see also Tindall*, 2012 U.S. Dist. LEXIS 6885, at *13 (defendants not prejudiced by submission of demonstrative chart on summary judgment where "[t]he facts alleged and the actual evidentiary sources" for the chart were explained in opposing party's brief).

## V.    The Identification and Screenshots of Hotfile's Affiliate Websites Are Admissible.

Defendants' attempts to suppress evidence of their blatantly infringing "affiliate" websites further illustrates their approach of reflexively moving to strike every piece of incriminating evidence, notwithstanding the lack of any colorable basis for doing so.

Dr. Ian Foster, plaintiffs' technical expert, provided plaintiffs' counsel with data identifying the names of websites in Hotfile's affiliate program.  *See* Foster Decl. ¶¶ 27(d); 27(e); 57, Ex. F.  Plaintiffs' counsel then selected and attached screenshots of Hotfile affiliate sites whose names and content make clear that they are distributing illicit and infringing content, as well as a list of numerous sites in Hotfile's affiliate program with such suggestive names.  *See*

---

[17]Unsurprisingly, Hotfile cites no authority finding demonstrative exhibits attached to a declaration in support of motion for summary judgment to be a violation of briefing page limits. Mot. at 9-11.

Yeh Decl. ¶ 107; Yeh Exs. 31-43, 102-103, 106.  This evidence is plainly relevant for reasons explained in plaintiffs' motion: it shows that Hotfile not only paid infringing pirate sites to upload and link to content on Hotfile, but that the infringing nature of those sites was open, notorious, and obvious to a layperson.  Pls. Mot. at 7-8, 26.[18]  In the case of the site of one of Hotfile's top affiliates for whose files it had received hundreds of takedown notices, the evidence further shows that Hotfile "restored" the site as an affiliate – making the open and notorious nature of the piracy on the website particularly potent proof of Hotfile's knowledge of infringement by its affiliates and intent to promote copyright theft through its affiliate program. PSUF 10.d.i.  Defendants' objections that the contents of the affiliate sites are somehow "hearsay," therefore, Mot. at 11, ignores the purpose for which the evidence is being introduced: not for the truth of the matter asserted, but rather to show that infringement on and by those websites is obvious to even a casual visitor, and to support an inference that defendants, who engaged these websites as affiliates, had actual or "red flag" knowledge of their illicit nature. *See* Pls. Mot. at 7; Fed. R. Evid. 801(c)(2).

Defendants do not and cannot claim that any of the screenshots are inaccurate, nor do they make any argument that any of the attached affiliate sites are, in fact, legitimate, noninfringing websites.  Instead, they argue that all of this evidence should be stricken because recognizing pirate websites somehow requires an "expert" and "qualification or reliable method for determining what consist [sic] of a 'reference to the availability of copyrighted content.'" Mot. at 7, 11.  The notion that recognizing a website offering infringing entertainment content requires expert analysis defies belief.  It does not take a doctorate in computer science, or any specialized training, to recognize that websites with names such as "currentmoviesnowplaying.com" and "online-television.tv" are offering copyrighted content, or to recognize, from a simple visit to the sites themselves, that copyrighted content such as movies and television programs are being offered for download.  *See* Pls. Mot. at 7, 26.  "[I]t is common knowledge that most popular music and movies are copyrighted," *Grokster*, 454 F. Supp. 2d at 992; *see also Fung*, 2009 WL 6355911, at *11 n.20 (same), and that websites offering them for "free" are not legitimate authorized distributors.  That is precisely why Congress – in enacting

---

[18] Hotfile also moves to strike Yeh Exs. 85 and 86 on the same theory, *see* Mot. at 11, but Yeh Exs. 85 and 86 are unrelated to Hotfile's affiliate websites.  Exhibit 85 is an article regarding the traffic to the Hotfile website and Exhibit 86 is a forum posting by Anton Titov.  Plaintiffs address Yeh Ex. 85, *infra*, Section IX, and Yeh Ex. 86, *supra*, Section II.

the DMCA – made clear that it intended such websites to be obvious to a layperson: "red flag" knowledge of "obviously infringing" websites can be gained "because they typically use words such as 'pirate,' 'bootleg,' or slang terms in their uniform resource locator (URL) and header information." S. Rep. No. 105-190, at 48. That is exactly what the evidence shows here, as the relevant Yeh exhibits demonstrate.

This leaves defendants with nothing but the arguments that Ms. Yeh "has no apparent personal knowledge" of the webpages (because persons under her direction performed the ministerial act of capturing the screenshots) and that the webpages are incomplete because of trivial printing issues (i.e. that some images did not print). Mot. at 11. Neither argument carries any weight. The authenticity of the screen shots – *i.e.*, that the websites appear as they are attached to the declaration – is established by Ms. Yeh's testimony that the exhibit is a true and correct copy. *See* Yeh Decl. ¶¶ 32-44; *supra,* Section I (declarant's personal knowledge can come from others acting under her supervision).[19] And defendants make no argument, much less a showing, that any *de minimis* failures to print specific images on a handful of the pages makes any material difference in their contents – and even if they could, the remedy would be to complete the screenshots rather than to exclude them. *See* Fed. R. Evid. 106.

## VI.   The Evidence Regarding Other Copyright Infringers Is Relevant And Otherwise Admissible.

Defendants also seek to exclude four exhibits (Yeh Exs. 90, 94, 98, 105) regarding other online providers that operate in the same realm as defendants. Because information regarding these other websites is undoubtedly relevant, and because defendants cannot demonstrate prejudice, defendants' challenge to these exhibits should be denied.

From the outset, defendants themselves have made clear that Hotfile was founded to compete with and modeled off of Megaupload, another website that operates similarly. *See* Yeh Ex. 9 (Titov Decl.) ¶ 8 ("Hotfile was founded to compete with the services provided by . . . RapidShare [and] MegaUpload . . . ."); ██████████████████████████████████████

██████████████████████████████████████████████████████████  *see also*

██████████████████████████████████████████████████████████

---

[19] While defendants complain that a screenshot of one of the affiliate websites was created in 2012, *see* Mot. at 11, plaintiffs supplied both an October 2010 screenshot and a current screenshot of the website in question in order to show that it has not materially changed over time: it was, and continues to be, a blatant pirate site. *See* Yeh Exs. 102 & 103.

███████████████████████████████████ Plaintiffs have simply pointed out that those very features, and other comparable conduct, formed the basis of the criminal indictment against Megaupload. *See* PSUF 16(f)(iii). Defendants can hardly complain about prejudice from being compared to a service that they themselves repeatedly pointed to as a "model" for Hotfile's business. In any event, motions to exclude due to unfair prejudice are more appropriately considered at trial, and defendants have failed to demonstrate prejudice warranting exclusion of such evidence at summary judgment. *See United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) (scope of Rule 403's exclusion of evidence based on unfair prejudice is "narrow" and the "danger of unfair prejudice . . . *must substantially outweigh* the probative value of the evidence" (emphasis added)); *see also Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000) (exclusion of evidence due to prejudice "best undertaken at the trial," not summary judgment); *United States v. Blackstone*, 56 F.3d 1143, 1146 (9th Cir. 1995) ("Evidence is prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers other mainsprings of human action . . . .") (internal quotation marks omitted). Moreover, contrary to defendants' suggestion, plaintiffs are not attempting to show that Megaupload has been convicted, but merely that a service – which has substantial similarities to defendants' service, as even defendants acknowledge – has been criminally indicted for copyright infringement. That defendants themselves have affirmatively compared themselves to Megaupload is sufficient to overcome defendants' objections concerning relevance and prejudice.[20]

Defendants' objections to exhibits regarding "link sites" that have been found liable for copyright infringement or that have been shut down for law enforcement (Yeh Exs. 94, 105) are similarly unavailing. Defendants do not have a search function on their website but instead have outsourced this search function to link site operators under their Affiliate Program. *See* Pls. Mot. at 7-8. Specifically, defendants pay link site operators to "[p]ost interesting [Hotfile] download links in your site, blog or forum" as a means for link operators to "make search/catalogue sites" to download Hotfile links. Yeh Ex. 63 at 2; Yeh Ex. 86 at 6; *see also* PSUF 16(a)(xii). These link site operators essentially function as Hotfile's business partners, and their status as illegitimate pirate websites is undeniably relevant to defendants' knowledge and inducement of

---

[20] Moreover, since it is the fact of the indictment *itself* that is relevant, and not the truth of the allegations against Megaupload, defendants' hearsay objection is beside the point.

copyright infringement.  Many of these Hotfile Affiliates have names suggestive of copyright infringement.  Pls. Mot. at 7; PSUF 10(d)(iii).  Regardless of whether Exhibits 94 and 105 specifically reference defendants, these exhibits discuss link sites generally and their acknowledged participation in pirating copyrighted content.  Accordingly, exhibits 94 and 105 are undeniably relevant to defendants' knowledge and inducement of copyright infringement based on defendants' business relationships with comparable link site operators, and defendants have failed to establish any undue prejudice that would result from the consideration of these exhibits at summary judgment.  Lastly, the exhibits – a government press release and civil minutes of a federal court hearing[21] – both qualify under the public records exception to the hearsay rule.  *See* Fed. R. Evid. 803(8).

The Administrations' White Paper on Intellectual Property Enforcement Legislative Recommendations is likewise relevant, admissible, and does not pose a threat of unfair prejudice.  *See* Yeh Ex. 90.  Plaintiffs have cited the White Paper for the very limited purposes of demonstrating a legislative fact relevant to the interpretation of the safe harbor under the Digital Millennium Copyright Act – enforcement efforts surrounding protections of intellectual property and the United States Government's policy of combating piracy.  *See* Pls. Mot. at 18 n.10.  Legislative facts – "those which have relevance to legal reasoning and the lawmaking process" as opposed to "facts about parties and their activities, businesses, and properties, usually answering the questions of who did what, where, when, how, why, with what motive or intent" – are not subject to the Federal Rules of Evidence.  *See* Fed. R. Evid. 201, advisory committee's note; *Daggett v. Comm'n on Gov'tal Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999) (legislative facts "are not proved through trial evidence but rather by material set forth in the briefs, the ordinary limits on judicial notice having no application to legislative facts").

## VII.   Emails From Hotfile's Users to Hotfile Are Admissible.

Defendants also try to strike various emails from other copyright owners and Hotfile users.  *See* Mot. at 14.  Although Hotfile lumps them together, there were three distinct groups of emails introduced by plaintiffs.  First, plaintiffs introduced specific emails from copyright owners complaining of infringement on Hotfile in order to show that the only times that Hotfile ever terminated repeat infringers prior to this lawsuit was in response to specific complaints.  *See*

---

[21] The court may separately take judicial notice of Yeh Ex. 105, a federal court record.  *See* Fed. R. Evid. 201.

Yeh Ex. 17-21; PSUF 4(c)(ii).  Second, as evidence that Hotfile had notice of specific infringing files on its system and provided support to infringers, plaintiffs introduced multiple emails between Hotfile and its subscribers showing either that the "last download" page visited by the user referenced a copyrighted work belonging to the plaintiffs, and/or showed Hotfile affirmatively providing technical support to help users infringe specific copyrighted works.  *See* Yeh Exs. 26, 28, 30; PSUF 9(b).  Third, again to prove that Hotfile had knowledge (whether actual or "red flag") that their users were using Hotfile to infringe, and that Hotfile built a business model around that knowledge, plaintiffs introduced other emails from Hotfile's users in which they declared either their use of Hotfile to download infringing content or their intention to do so.  *See* Yeh Ex. 66-68; PSUF 16(e)(iii).  Each of these emails were produced by Hotfile itself and bear Hotfile bates numbering; in addition, all except one were exhibits at Titov's deposition.  *See* Yeh Exs. 16-20, 26, 28, 30, 66-68; Yeh Ex. 1 (Titov dep.) at 301:5-318:3 (Yeh Exs. 16-20); *id*. at 415:2-416:10 (Yeh Exs. 26, 28, 30, 66, 68).[22]

As the above discussion makes clear, Hotfile's arguments that the emails "lack any demonstrated relevance" and are "hearsay" are meritless.  Mot. at 14.  The emails are clearly both relevant and admissible.  First, the emails from copyright owners, Yeh Exs. 26, 28, 30, are not offered for the truth of the matter asserted, but rather to show that Hotfile only took action against repeatedly infringing users when it received those complaints.  *See* Fed. R. Evid. 801(c)(2).  Second, the emails showing Hotfile's provision of support to infringing users are relevant and admissible to show such support being provided, and likewise do not depend on the truth of the matters asserted.  *See* Yeh Exs. 26, 28, 30.  Moreover, in the case of emails from Hotfile's users where the "last download" link shows an infringing file, the link is relevant to show both that the infringing file was hosted on the system, *see*, *supra*, n.15 (filenames are evidence of what the files contain), and are independently also evidence that Hotfile had notice (both actual and "red flag") of the infringing activity.  As the Court recognized in *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d 1022, 1040 (9th Cir. 2011) ("*Veoh*"), "red flag" knowledge can come from "evidence of emails sent to [defendant's] executives and investors by … users identifying infringing content," which is precisely what this evidence shows here.  *Id*. █████████████████████████████████████████

---

[22] The one email that was not a Titov deposition exhibit, Yeh Ex. 67, is indistinguishable in form and content from the others authenticated by Titov.

17

███████████████████████████████   ████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████

*See* Fed. R. Evid. 803(6).  The emails from Hotfile's users declaring their intention to infringe, *See* Yeh Ex. 66-68, are further admissible as evidence of Hotfile's notice, knowledge, and intent.

Finally, while Hotfile complains that the emails were "not authenticated," Mot. at 14, they were produced by defendants themselves, from their own email records, and authenticated by Titov at his deposition.  *See, supra*, text accompanying n.22.  Defendants' attempt to suppress this incriminating evidence is baseless and should be rejected.

## VIII.   The Electronic Frontier Foundation Article is Relevant and Admissible.

Defendants seek to strike Exhibit 55, an article by the Electronic Frontier Foundation ("EFF") titled "IAAL: What Peer-to-Peer Developers Need to Know about Copyright Law," which suggests that online service providers "disaggregate" their functions as a means of minimizing liability for copyright infringement.  Pls. Mot. at 4 n.1; PSUF 11(b)(ii).  Defendants object that the exhibit is irrelevant, unfairly prejudicial, and claim that plaintiffs were obligated to disclose the article.  None of these objections has any merit.

Defendants are operators of a website that was created to compete with other emerging online technologies and that sought to take advantage of the safe harbor provided under the DMCA.  *See, e.g.,* Yeh Ex. 9 (Titov Decl.) ¶¶ 5, 8, 9.  Articles, such as the one published by EFF, recommended legal strategies for developers of such technologies to help protect against liability for copyright infringement.  Whether or not defendants relied directly on this specific article, Exhibit 55 is relevant to demonstrating that persons in defendants' position – developers of new Internet services that enable file-trading – were aware of techniques and strategies for minimizing their liability for copyright infringement.  In particular, defendants specifically claimed that they modeled Hotfile's business model after Rapidshare and Megaupload, and it stands to reason that the sites on which defendants modeled Hotfile were aware of the strategies discussed in the article (and might have even been aware of the article itself).  *See, e.g.,* Yeh Ex. 1 (Stoyanov dep.) at 21:3-22:20.  The relevance of the article is that it shows that it would have been widely known, at least the time of its publication, that websites with search functions were more likely to be held liable for infringement as compared to those that disaggregated their

functions.  Yeh Ex. 55 at 15.  This does not depend upon whether or not Titov or anyone else at Hotfile read the specific article in question.

Second, it is unclear how consideration of the article could unfairly prejudice the Court's analysis of the motion for summary judgment – defendants can hardly complain that they are prejudiced by association with the EFF, given that they consented to EFF's filing an amicus brief on Hotfile's behalf in this case.  *See* Docket No. 315.  Third, plaintiffs were under no obligation to disclose a publicly available article (available from the EFF website), equally accessible to defendants, any more than they were obligated to disclose the cases they would be citing in their brief.  *See Dushkin Publ's Group, Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties.") (quotation marks omitted)); *see also Evans v. Bd. of Educ. Southwestern City Sch. Dist.*, No. 2:08-cv-794, 2010 WL 1849273, at *2 (S.D. Ohio Apr. 29, 2010) (denying motion to strike based on failure to disclose where violation was harmless because, *inter alia*, the "documents were equally available to all parties").

## IX.    Exhibits Illustrating Shifts in the Popularity of the Hotfile Website Are Admissible.

Plaintiffs also submitted a webpage from Alexa Internet, Inc. and a news article from IT News to illustrate ████████████████████████████████ Yeh Exs. 69 & 85. Defendants can hardly be heard to complain that plaintiffs have cited third-party sources regarding traffic to the Hotfile website: as plaintiffs have noted in their Motion to Strike, defendants apparently maintained their own database showing this information and then failed to produce it in discovery, despite plaintiffs' repeated requests.  *See* Pls. Mot. to Strike (filed March 19, 2012) at 10-11.  Not only should defendants not be allowed to benefit from their failure to comply with their discovery obligations, but plaintiffs' use of third-party data is perfectly permissible.

Contrary to defendants' assertion, the exhibits are neither "irrelevant" nor "hearsay." Mot. at 15.  Exhibit 69, a screen capture of the website of Alexa Internet, Inc., shows ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████Rule 803(17) specifically provides that market reports and similar commercial publications may be admitted to prove the truth of the matters therein.  *See* Fed. R. Evid. 803(17).  Alexa is a well-known commercial reporter of Internet traffic data, and has been cited by other federal courts for its rankings of

website popularity and traffic. *See, e.g., Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 832 (C.D. Cal. 2006) (relying on Alexa report identifying Google as the third most popular website in the world), *aff'd in part, rev'd in part*, 487 F.3d 701 (9th Cir.), *amended on reh'g*, 508 F.3d 1146 (9th Cir. 2007).[23]  Exhibit 85, an article from IT News discussing this lawsuit and citing to Alexa Internet, Inc. for the proposition that Hotfile was the 57th most popular website in the world just prior to the filing of this suit, is similarly admissible.  Courts are free to take judicial notice of news articles insofar as they provide "an indication of what information was in the public realm at the time." *Wailea Partners, LP v. HSBC Bank USA, N.A.*, Case No. 11-cv-3544 SC, 2011 U.S. Dist. LEXIS 144441, at *9 n.3 (N.D. Cal. Dec. 15, 2011).  Moreover, both exhibits are clearly relevant in that they show the ███████████████████████████████████████████

███████████████████████████████████████████████████████████████ Pls. Mot. at 12.

Hotfile's attempt to paint these exhibits as "irrelevant" because they illustrate a ████████████████

█████████████████████████████ is simply not credible – ███████████████████████████████████

are related and both prove the same point.  Mot. at 15.

## CONCLUSION

Plaintiffs respectfully requests that the Motion of defendants Hotfile Corporation and Anton Titov to Strike the Declaration of Jennifer V. Yeh be denied in its entirety.


Dated: March 21, 2012                    Respectfully submitted,

                                         By: /s/ Karen L. Stetson
                                         Karen L. Stetson
                                         GRAY-ROBINSON, P.A.
                                         1221 Brickell Avenue
                                         16th Floor
        Miam                                     i, Fl 33131
        Telephone:                               (305) 461-6880
        Facsim                                   ile:  (305) 461-6887

---

[23] Defendants also misleadingly suggest that Exhibit 69 be struck because it violates the rule of completeness.  Mot. at 15 (citing Fed. R. of Evid. 106).  Although the screenshot contains links to other webpages, that is not a basis on which to strike it – Federal Rule of Evidence 106 provides only that defendants may introduce those linked pages, not that the exhibit itself be struck.  Fed. R. Evid. 106 ("an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time"); *see also In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 299 (S.D.N.Y. 2008) (citing same).

MOTION PICTURE ASSOCIATION
 OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax:  (818) 285-4403
   Facsim

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone:        (202) 639-6000
                  ile: (202) 639-6066

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF


DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants*.

_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

 /_____

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY on this 21st day of March, 2012, I served the following documents on all counsel of record on the attached service list via electronic mail per the parties' service agreement:

    **(1) Plaintiffs' Opposition to Defendants Hotfile Corporation and Anton Titov to Strike the Declaration of Jennifer V. Yeh; and**

    **(2) Declaration of Jennifer V. Yeh in Support of Plaintiffs' Opposition to Defendants' Motion to Strike the Declaration of Jennifer V. Yeh and accompanying Exhibit A, a true and correct copy of Defendants' Supplemental**

**Response to Plaintiffs' Interrogatory No. 13(a), served in the above-captioned case on November 15, 2011.**

I further certify that I am admitted *pro hac vice* to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Luke C. Platzer

Luke C. Platzer

## SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*