Sealed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/



FILED by ___ D.C.
APR 09 2012
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – MIAMI

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF DECLARATIONS OF PROFESSOR JAMES BOYLE, DR. ANDREW CROMARTY, AND ANTON TITOV IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

[CONFIDENTIAL]

[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

CITATION LEGEND ............................................................................................................ iii

I.     Portions of the Declaration of Prof. James Boyle Should Be Stricken ................................ 1

II.    Portions of the Declaration of Dr. Andrew Cromarty Should Be Stricken. ....................... 7

III.   Portions of the Declaration of Anton Titov Should Be Stricken. ....................................... 8

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc.*, No. C9905183MHP, 2000 WL 1170106 (N.D. Cal. Aug. 10, 2000), *aff'd*, 239 F.3d 1004 (9th Cir. 2001) ................................................................. 7

*Bauer v. J.B. Hunt Transport, Inc.*, 150 F.3d 759 (7th Cir. 1998) .................................................. 5

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494 (3d Cir. 1998) ........................... 2

*Cambridge Univ. Press v. Becker*, No. 1:08-CV-1425-ODE, 2010 WL 6067575 (N.D. Ga. Sept. 21, 2010) ................................................................................................................ 2

*DHL Express (USA), Inc. v. Express Save Industries Inc.*, No. 09-60276-Civ-Cohn, 2009 WL 3418148 (S.D. Fla. Oct. 19, 2009) ................................................................................. 9

*Gencom, Inc. v. FCC*, 832 F.2d 171 (D.C. Cir. 1987) .................................................................... 2

*Microfinancial, Inc. v. Premier Holidays International, Inc.*, 385 F.3d 72 (1st Cir. 2004) ............ 8

*Peckham v. Continental Casualty Insurance Co.*, 895 F.2d 830 (1st Cir. 1990) ............................ 2

*Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697 (S.D. Fla. 1999) .......... 9

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ................................ 6

*United States v. Brown*, 415 F.3d 1257 (11th Cir. 2005) ............................................................... 7

*United States v. Reddy*, No. 1:09-CR-0483-ODE/AJB, 2011 WL 2493529 (N.D. Ga. Feb. 24, 2011), *report & recommendation adopted by*, 2011 WL 2518737 (N.D. Ga. June 23, 2011) ................................................................................................................................... 2

*Walker v. Soo Line Railroad Co.*, 208 F.3d 581 (7th Cir. 2000) ..................................................... 5

*Wechsler v. Hunt Health Systems, Ltd.*, 381 F. Supp. 2d 135 (S.D.N.Y. 2003) ............................. 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a) ..................................................................................................................... 10

Fed. R. Civ. P. 37(c) ..................................................................................................................... 10

Fed. R. Evid. 702 ............................................................................................................................ 6

## CITATION LEGEND

1. "Boyle Decl." shall refer to the declaration of Professor James Boyle in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, dated March 6, 2012, and available publicly at Docket No. 391.

2. "Defs. Opp. to Pls. MSJ" shall refer to the Memorandum of Law of Defendants Hotfile Corporation and Anton Titov Filed in Opposition to Plaintiffs' Motion for Summary Judgment, dated March 7, 2012, and available publicly at Docket No. 394.

3. "Leibnitz Ex. __" shall refer to the exhibits attached to the Declaration of Andrew Leibnitz in Support of Defendants' Opposition to Plaintiffs' Motion to Strike Portions of Boyle, Cromarty, and Titov Declarations, dated and filed under seal on April 2, 2012.

4. "Levy Decl. in Opp. to Pls. Mot. to Strike" shall refer to the Declaration of Dr. Daniel S. Levy in Opposition to Plaintiffs' Motion to Strike Portion of Testimony of Professor James Boyle, dated and filed under seal on April 2, 2012.

5. "Mot." shall refer to Plaintiffs' Motion and Memorandum of Law to Strike Portions of Declarations of Professor James Boyle, Dr. Andrew Cromarty, and Anton Titov in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, dated March 19, 2012, and available publicly at Docket No. 423.

6. "Opp." shall refer to the Memorandum of Law of Defendants Hotfile Corporation and Anton Titov in Opposition to Plaintiffs' Motion to Strike Portions of Boyle, Cromarty, and Titov Declarations, dated and filed under seal on April 2, 2012.

7. "Pls. Opp. to First Mot. to Strike" shall refer to Plaintiffs' Memorandum of Law in Opposition to Defendants Hotfile Corporation and Anton Titov's Motion to Strike the Declaration of Jennifer V. Yeh, dated March 21, 2012, and available publicly at Docket No. 431-1.

8. "Pls. Reply" shall refer to the Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, dated March 19, 2012, and available publicly at Docket No. 425.

9. "Waterman Reply Decl." shall refer to the Reply Declaration of Dr. Richard Waterman, dated March 19, 2012, and available publicly at Docket No. 426-11.

10. "Yeh Ex. __," shall refer to exhibits attached to the Declaration of Jennifer V. Yeh in Support of Plaintiffs' Motion to Strike Portions of Declarations of Professor James Boyle,

Dr. Andrew Cromarty, and Anton Titov in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, dated March 16, 2012, available publicly at Docket No. 424, as well as the Reply Declaration of Jennifer V. Yeh in Support of Plaintiffs' Motion to Strike, filed herewith. For the convenience of the Court, the exhibits attached to the Yeh Declarations have been consecutively numbered, with Exhibits attached to the Yeh Declaration filed today continuing from the numbering in the previous set of exhibits. Where appropriate, citations to such exhibits may also include pinpoint citations to the page number(s), and paragraph or line numbers, internal to the cited document. In some instances where individual Yeh Declaration exhibits were not paginated, page numbers have been added manually for ease of the Court's reference. The parentheticals indicate the nature of the item cited – *e.g.*, deposition transcripts ("dep.") – or documents produced in discovery by various parties. Thus, by way of illustration, "Yeh Ex. 1 (Titov dep.) at 200:1-10" would refer to the deposition of defendant Anton Titov, which could be found in Exhibit 1 to the Yeh Declaration, at page 200 of the transcript pages, at lines 1 through 10. And, "Yeh Ex. 110 at 2" would refer to Exhibit 110 to the Yeh Declaration, and specifically the page of that Exhibit found at page 2 of the numbered Exhibit pages.

11. "Zebrak Decl." shall refer to the declaration of Scott Zebrak, dated February 17, 2012, available publicly at Docket No. 325-1.

Plaintiffs seek to strike specific portions of the testimony of defendants' experts Professor James Boyle and Dr. Andrew Cromarty, as well as that of Anton Titov, that is improper and inadmissible. In opposing plaintiffs' motion to strike portions of Prof. Boyle's testimony, defendants largely attack plaintiffs' expert evidence, rather than justify any proper basis for Prof. Boyle to testify outside the bounds of his specific expertise as a law professor. Further, Defendants' attempts to justify the specific objectionable portions of Dr. Cromarty and Mr. Titov's declarations rely on convoluted justifications that do not cure the fundamental deficiencies with the testimony. Plaintiffs' motion to strike should be granted in its entirety.

**I.  Portions of the Declaration of Prof. James Boyle Should Be Stricken.**

While Prof. Boyle's testimony in his initial expert report was largely unobjectionable (but irrelevant), he has gone far beyond his expertise as a law professor in his "expert" rebuttal to plaintiffs' evidence. Defendants' opposition provides no basis on which to admit the identified paragraphs as expert testimony. Indeed, defendants now backtrack on the applicability of the "conversion rate" statistic Prof. Boyle purported to calculate, admitting that it does not apply across all files on Hotfile despite previously touting the figure in their summary judgment papers. *See* Opp. at 8 ("Professor Boyle simply remarks upon the conversion rates of the 1,750 downloads . . . without attempting to opine about Hotfile's downloads generally . . . ").

Zero-Download Files. Prof. Boyle adds no "expert" opinion in claiming that Dr. Waterman's report was "flawed" on a statistical level because it did not examine the files on Hotfile that were uploaded but never downloaded (the "zero-download" files). Boyle Decl. ¶¶ 11, 12. He admittedly has no qualifications in designing statistical studies. Mot. at 2. Further, even if he was so qualified, Prof. Boyle did not design a study to analyze whether any of the zero-download files actually represent use of Hotfile for storage. *See* Yeh Ex. 1 (Boyle dep.) 279:8-11 ("I would certainly repeat and stress that no, I do not know what number of these 57 million uploads with no registered downloads are actually examples of storage."). If defendants wanted to show that the zero-download files were *actually* in storage and thus a fair use, they could make that argument through a properly qualified expert, but have not done so.

In response, defendants focus on criticizing the weight to be afforded to Dr. Waterman's study as a legal matter, rather than defending any particular expertise of Prof. Boyle to argue that the study is statistically flawed. Mot. at 2-3. Defendants do not – and cannot – suggest that failing to include zero-download files in the sample renders the ultimate conclusion that 90% of

1

the actual downloads on Hotfile were infringing *inaccurate*. Indeed, Dr. Waterman's study was *designed* to look at download activity on Hotfile. Mot. at 3; Opp. at 2. Instead, defendants' arguments are premised on the speculative possibility that some files are in storage. Plaintiffs have explained how there is no factual support for that argument, *see* Pls. Reply at 2 (95% of zero-download files deleted for inactivity or reasons related to infringement, not "stored"), and how the evidence of infringing downloads is highly relevant as a legal matter. Mot. at 3. As explained above, Prof. Boyle provides no "expert" basis to refute those conclusions.

Defendants' cases are not to the contrary. None of them involve a non-statistician purporting to criticize a statistical analysis.[1] Defendants compare Prof. Boyle's criticism to a cardiologist opining on whether a conclusion from a statistical study of heart conditions that included only men could be extrapolated to both men and women. Opp. at 2. That analogy is inapposite, because Dr. Waterman is not attempting to draw conclusions from his study about the zero-download files. Nor is Prof. Boyle even in the position of a cardiologist – his academic experience is limited to dealing with open source and public domain works. *See also United States v. Reddy*, No. 1:09-CR-0483-ODE/AJB, 2011 WL 2493529, at *8-9 (N.D. Ga. Feb. 24, 2011) (holding medical doctors not qualified to testify regarding study design), *report & recommendation adopted by*, 2011 WL 2518737 (N.D. Ga. June 23, 2011); Mot. at 2.[2]

One-download files. As plaintiffs pointed out in their motion, files that had been downloaded only once ("one-download" files) *were* included in the statistical study, and in fact a number of one-download files were selected in the sample that Dr. Waterman and Mr. Zebrak analyzed. Mot. at 4. However, Prof. Boyle did not actually analyze how many of the files in Dr. Waterman's statistical study were "one-download" files. Mot. at 3-4; Boyle Decl. ¶¶ 11-12. In

---

[1] *See Cambridge Univ. Press v. Becker*, No. 1:08-CV-1425-ODE, 2010 WL 6067575, at *2 (N.D. Ga. Sept. 21, 2010) (copyright expert qualified to testify about fair use and model copyright policies of electronic reserves in colleges); *Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) (rejecting plaintiffs' challenge to defendant's experts in case where plaintiffs did not challenge defendant's experts' qualifications).

[2] Defendants argue generally that an expert's failure to look at relevant populations is a basis to critique a statistical study. Mot. at 2. That is irrelevant here, given that the zero-download files are, by definition, not necessary to examine in a study focused on downloads. Defendants' cases are not to the contrary. *See Gencom, Inc. v. FCC*, 832 F.2d 171, 185-86 (D.C. Cir. 1987) (appropriate to focus only on commercial use where study indicated that businesses were primary users of product); *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 517 n.14 (improper to arbitrarily exclude survey results from subset of equally situated pharmacies).

2

their opposition, defendants claim inaccurately that such files were given "zero weight" in the study, Opp. at 4, and fail to address that the percentage of zero-download files is much less than the study's margin of error, Mot. at 2-3. Prof. Boyle's argument that it was a "serious" flaw to count these files as infringing in Dr. Waterman's study is thus unsubstantiated by any facts or relevant expertise. Prof. Boyle is not a statistician and did not even look at the actual data that disproves his "opinion"; he is not competent to give expert (or any) testimony on this subject.[3]

Mr. Zebrak's Classifications. Prof. Boyle is likewise not competent to give expert testimony as to the classifications of files by Mr. Zebrak that he did not review. *E.g.*, Boyle Decl. ¶¶ 13-16, 21-23. Prof. Boyle neither reviewed the vast majority of files in Dr. Waterman's sample nor designed his own study to systematically identify flaws in Mr. Zebrak's conclusions. Prof. Boyle strays far outside his professed area of competence by purporting to opine as to the accuracy of Mr. Zebrak's identification of popular copyrighted works, pornographic content, and other types of content. While Prof. Boyle has an academic interest in open source software, open licenses, and public domain works, virtually none of the files in the study fit those categories.

In their opposition, defendants claim that Prof. Boyle reviewed a "substantial" number of files. However, Prof. Boyle admitted that he specifically analyzed only between 20 and 40 of the 1,750 files. Yeh Ex. 1 (Boyle dep.) at 310:9-18; *see also* Mot. at 5. He also deliberately cherry-picked those files that he thought were particularly *difficult* to classify. *See, e.g.*, Yeh Ex. 1 (Boyle dep.) at 310:9-24, 331:9-23; Yeh Ex. 5 at 335:13 (Prof. Boyle looked for files that would "represent some difficulties of copyright analysis").

Defendants also attempt to get around this deficiency by claiming that Prof. Boyle identified flaws in the "design of the study" and Mr. Zebrak's "methodology." Opp. at 5. However, again, Prof. Boyle has disavowed any expertise in study design or methodology; his limited relevant expertise is an academic interest in a narrow set of works that are legal to freely distribute. That is it. Moreover, he is not a practicing copyright lawyer and has no experience in

---

[3] Defendants misleadingly focus on the percentage of *files* that are "one-download" files where the focus should instead be on the percentage of *downloads* that are "one-download" files. Opp. at 4 n.1. Downloads, not files, are the relevant population because each *download* of a file is a potential infringement. Based on defendants' logic, if Hotfile only had 2 files – one file that was infringing and had been downloaded 1,000 times by different users and another file that was downloaded licitly – defendants would claim that 50% of the files available on Hotfile would be "one-download" files. However, looking at the percentage of infringing downloads would make clear that the overwhelming use of Hotfile is still for infringement.

3

generally identifying copyrighted content in the course of his job responsibilities (as Mr. Zebrak does). Nor has he ever conducted a broad review of content to determine its authorization status.

In any event, without analyzing the files, Prof. Boyle cannot criticize the "methodology" of Mr. Zebrak reviewing them. One of Prof. Boyle's main criticisms is that it is too difficult to make accurate infringement classifications about the adult content that was randomly selected into the sample. Opp. at 6. However, while Prof. Boyle has read articles suggesting that some adult content is given away for free, he has admittedly never investigated a file containing adult content on Hotfile to determine whether it appears to be authorized for free and unrestricted distribution through Hotfile. Yeh Ex. 1 (Boyle dep.) at 435:18-436:12. Mr. Zebrak testified that he reviewed each file, consulted multiple sources, and made a determination as to whether the specific content was likely to be given away for free – and in fact classified a substantial amount of adult content as *non*-infringing. Yeh Ex. 2 (Zebrak dep.) at 220:1-222:1. Mr. Zebrak also spoke directly with industry experts to better understand the industry's online content practices. *Id.* In short, Mr. Zebrak took account of the issue that Prof. Boyle identified in determining whether or not a file was infringing. Prof. Boyle's criticisms are speculative.

Likewise, Prof. Boyle's claims that Mr. Zebrak "repeatedly" made errors in his classification of software lack any basis  The only broad methodological assumption defendants purport to identify – that Mr. Zebrak "assumed that if a work is being sold somewhere on the internet, then its distribution on Hotfile must be infringing," Opp. at 6 – is simply not accurate. Mr. Zebrak himself testified that he considered the terms under which the content was commercialized to determine whether the content owner (while unlikely) both sold the content and gave it away for free. *See* Yeh Ex. 2 (Zebrak dep.) at 169:8-22, 206:14-15, 220:9-221:16. Otherwise, Prof. Boyle's opinions are based on speculation about Mr. Zebrak's alleged biases in his classification, based solely on Prof. Boyle's review of his classification of a handful of specific files. Boyle Decl. ¶ 23 (hypothesizing "two more general kinds of errors to which Mr. Zebrak's study *appears* to have been prone," and "[e]stablishment of what *appears* to be a default assumption") (emphasis added).[4] Expert testimony must actually apply the expert's

---

[4] Defendants fail to respond to the point that Prof. Boyle's disagreement on this handful of files does not create an issue of fact as to the overwhelming use of Hotfile for infringement. Mot. at 5, n.4. Further, Mr. Zebrak explained the reasoning for his classifications for these specific files in his declaration, which are much more nuanced than the characterizations that defendants present in their brief and take into account Prof. Boyle's criticisms. Zebrak Decl. ¶ 19a-e.

4

knowledge to specific facts to be admissible. Mot. at 6; *see, e.g., Bauer v. J.B. Hunt Transport, Inc.*, 150 F.3d 759, 765 (7th Cir. 1998) (identification of relevant factors without application to specific facts not admissible because jury must speculate how to apply testimony). Defendants cite no case remotely supporting admission of testimony identifying *potential* issues without application to specific facts in the record. Opp. at 7.[5]

At bottom, defendants have access to the same information about the 1,750 sample files as plaintiffs, and could have conducted an analysis of all or a substantial portion of those files. Instead, Prof. Boyle, with defendants' counsel's assistance, cherry-picked examples that they concede are the most difficult cases and came up with only a handful of alleged errors. But, Prof. Boyle has no relevant education or experience and has not done the work to give the broad opinions he provides. His testimony beyond the specific files he reviewed is not admissible.

The "Conversion Rate" Statistic. In their motion, plaintiffs pointed out that Prof. Boyle had no expertise to calculate a particular statistic – a "conversion rate" statistic – from the results of the 1,750 files analyzed in the statistical study and claim that it applies to all files on Hotfile generally. Mot. at 6-7; Boyle Decl. Ex. 2 ¶ 53. As plaintiffs pointed out, that kind of analysis would require statistical expertise and calculation of factors like the margin of error, which Prof. Boyle is not qualified to do, and which would show that the statistic itself is meaningless. *Id.* In their opposition, defendants do not argue that Prof. Boyle has these kinds of qualifications, but instead retreat from any suggestion that the "conversion rate" statistic has any applicability to infringing or non-infringing files on Hotfile generally. *See* Opp. at 7. Defendants now admit that Prof. Boyle's conclusions apply ***only to those 1,750 specific files***, for which his conclusions merely involve basic math – they do not (and cannot) apply to all files on Hotfile. Opp. at 8 (conceding that Prof. Boyle does not "attempt[] to opine about Hotfile's downloads generally").

This reinterpretation of Prof. Boyle's testimony is a complete reversal from defendants' broad claim, highlighted on page 1 of their opposition brief, that "[u]sers are more likely to purchase Premium subscriptions . . . following downloads of noninfringing works than of works that allegedly infringe copyrights." Defs. Opp. to Pls. MSJ at 1. Defendants offered this

---

[5] In the one case cited by defendants on this point, the court upheld a psychologist's testimony based on a patient's self-reporting and team member reports. *See Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586-90 (7th Cir. 2000); Opp. at 7. That testimony was not based on speculation, but rather on reports about the facts at issue. Prof. Boyle did not perform the equivalent analysis here, which would have required Prof. Boyle to consider information about each file.

5

"conversion rate" statistic *only* as part of a broader claim about conversion rates on Hotfile generally, arguing that, as a matter of logic, they has no reason to induce copyright infringement because noninfringing files convert to premium accounts at higher rates than infringing content. *See id.* at 1, 4, 23. Although that proposition is wrong in any event, *see* Mot. at 6-7, Pls. Reply at 6-7, defendants have now abandoned the only support for that broad claim. The "conversion rate" statistic has no meaning in context of just the 1,750 sample files. The statistic and the argument it purports to (but does not) support, should be disregarded.[6]

"Opinions" About *Sony*'s "Substantial Non-Infringing Uses." Prof. Boyle argues extensively that Hotfile's identified uses are "substantial non-infringing uses" within the meaning of *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), and that Hotfile therefore should not be held liable as a contributory infringer. *See* Opp. at 9 (conceding that Prof. Boyle purports to "show" both "the need [for the Court] to consider not just current but potential uses of accused technologies" and "the policy and Constitutional underpinnings of this Supreme Court precedent"). That is legal argument on an ultimate issue in the case (by a non-practicing lawyer), and it belongs in a pleading, not in an expert report. Mot. at 8. Indeed, plaintiffs similarly could have hired law professors to submit declarations testifying about Hotfile's inducement model; they did not do so as it is not a permissible use of an expert report.

Defendants mischaracterize plaintiffs' objections in their opposition. Plaintiffs do not seek to exclude these portions of Prof. Boyle's testimony based on Fed. R. Evid. 702 – plaintiffs fundamentally object that Prof. Boyle is essentially expanding on legal arguments made in defendants' brief. As such, defendants' argument that Mr. Zebrak's review of the 1,750 files in the statistical sample is also objectionable because it involves legal analysis is a red herring. Opp. at 9-10. Defendants have not moved to exclude that evidence, which is unsurprising given that essentially identical studies have been relied upon courts – including the Supreme Court – in

---

[6] Defendants only now submit a declaration from their statistical expert Dr. Daniel Levy on this point, which also states that Prof. Boyle was not purporting to draw conclusions beyond the 1,750 files. Levy Decl. in Opp. to Pls. Mot. to Strike ¶ 4. Dr. Levy's other criticism of parts of Dr. Waterman's reply declaration are inaccurate but immaterial; there is no record support for defendants' summary judgment argument about a broad "conversion rate" on Hotfile absent Prof. Boyle's purporting to opine about that rate on Hotfile generally. *See also* Waterman Reply Decl. ¶¶ 8-9 (making unrebutted point that Prof. Boyle's purported statistic is meaningless given high margin of error and fact that three outlier files skewed analysis).

6

online infringement cases. Mot. at 5.[7]

\* \* \*

Defendants initially disclosed Prof. Boyle as an expert in certain open source, open license, and public domain works available on Hotfile based on his academic research and publications. *See* Boyle Decl. Ex. 1 ¶¶ 2-4. Prof. Boyle's testimony, however, has gone far astray from his initial professed qualifications, into any various fields in which defendants determined that they needed an expert opinion. Defendants' attempts to mold Prof. Boyle into an expert in fields such as statistical design and analysis is unmoored from Prof. Boyle's actual expertise and should be rejected.

## II.   Portions of the Declaration of Dr. Andrew Cromarty Should Be Stricken.

While Dr. Cromarty believes that he has "vast" qualifications in effectively all fields of computer science, his qualifications indicate no familiarity with the topic of the accuracy of takedown notices to service providers, the subject of the only paragraphs which plaintiffs have moved to strike. *See* Opp. at 11-12 (identifying paragraphs 23, 104-106). Defendants' opposition does not establish otherwise. Dr. Cromarty does not claim to have reviewed takedown notices for accuracy in his profession or studied their accuracy from in any academic sense. Nor does this topic require *technical* expertise, as opposed to a familiarity with antipiracy operations and specific industry practices. And in particular, Dr. Cromarty has provided no foundation to establish that he can vouch for a third-party study about the accuracy of takedown notices – one previously undisclosed until his declaration – that would otherwise be hearsay. Dr. Cromarty has no more relevant expertise about this particular topic than any other operator of an internet business, and defendants should not be permitted to use his expertise on other unrelated matters to introduce such blatant hearsay evidence. *See United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) (scientist had worked on "isolated projects" with chemicals but had no particular expertise in working with them); *A&M Records, Inc. v. Napster, Inc.*, No. C9905183MHP, 2000 WL 1170106, at \*6-8 (N.D. Cal. Aug. 10, 2000), *aff'd*, 239 F.3d 1004 (9th

---

[7] Although not at issue here, Mr. Zebrak is not opining on an ultimate issue. Rather, just as Prof. Boyle does in the portions of his declaration to which plaintiffs have not objected, *e.g.*, Boyle Decl. ¶ 23a-e, Mr. Zebrak brought his extensive familiarity with online distribution of content to bear on investigating whether specific files are authorized for free and unrestricted distribution on Hotfile, in support of an expert statistical analysis. That is not argument that properly belongs in a brief, and it is well-settled that such testimony is appropriate.

7

Cir. 2001).[8] Indeed, had plaintiffs been on notice that Dr. Cromarty would be testifying on this subject, plaintiffs would have taken the opportunity to cross-examine him on his qualifications at his deposition – but defendants failed to disclose this testimony, see Mot. at 8, thereby precluding plaintiffs from further establishing Dr. Cromarty's lack of expertise in this area.

### III. Portions of the Declaration of Anton Titov Should Be Stricken.

<u>Inconsistent Testimony in Paragraph 48</u>. At this deposition, Mr. Titov was speaking as Hotfile's Rule 30(b)(6) representative and was required to be prepared to answer specific questions as to Hotfile's alleged adoption of hash-blocking. Yet, at the deposition, Mr. Titov professed that he was "not sure" when Hotfile began hash-blocking; he speculated that it may have been "maybe August 2009"; he further testified unequivocally that there was no objective evidence (or way to learn) when Hotfile began hash-blocking or that hash-blocking was implemented in August 2009.[9] Mot. at 9. Mr. Titov's current summary judgment testimony that Hotfile began hash-blocking on that date, *with certainty*, is flatly inconsistent with the entirety of his deposition testimony and defendants' pre-summary judgment representations. While courts will admit evidence based on a witness's "best recollection," Opp. at 14, the issue here is that his testimony is inconsistent – and courts will not consider inconsistent testimony on summary judgment. Mot. at 9.

<u>Inconsistent Testimony in Paragraph 42</u>. Defendants unsuccessfully attempt to run away from Mr. Titov's straightforward testimony that Mr. Ianakov promoted Hotfile on internet forums with Mr. Titov's knowledge. Mot. at 10. Regardless of whether Mr. Titov himself oversaw "non-technical" activities by Mr. Ianakov, Opp. at 16, Mr. Titov testified as Hotfile's Rule 30(b)(6) witness that Mr. Ianakov promoted Hotfile on internet forums *in addition to* his

---

[8] Defendants' cases merely stand for the proposition that an expert testifying within her expertise need not be additionally qualified to testify to matters that are ancillary to her expert opinion. See, e.g., *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 80-81 (1st Cir. 2004) (financial fraud expert qualified to testify about use of lock-box accounts); *Wechsler v. Hunt Health Systems, Ltd.*, 381 F. Supp. 2d 135, 142-44 (S.D.N.Y. 2003) (accountant expert qualified to "testify on complex business transactions" undertaken by a health care firm notwithstanding lack of experience specific to health care industry). In this case, Dr. Cromarty's testimony about the accuracy rates of takedown notices is a stand-alone portion of his testimony.

[9] Contrary to defendants' argument, the source code that defendants produced is not "entirely consistent" with Mr. Titov's recollection. Opp. at 14 n.8. Hotfile did not preserve its source code in the form that it existed in August 2009, and the current source code does not indicate when the changes at issue were made.

8

other responsibilities. Yeh Ex. 3 (Titov dep.) at 493:20-494:3; *see also* Pls. Opp. to First Mot. to Strike at 5-6 (cataloging testimony showing that Mr. Ianakov's forum posts are admissible and were authorized by defendants). Defendants also argue that Hotfile shareholder Rumen Stoyanov had "better knowledge" than Mr. Titov on the topic of Hotfile personnel, and that Mr. Stoyanov's testimony somehow suggests that Mr. Ianakov's public postings were not authorized. Opp. at 15. That is not only an inaccurate description of Mr. Stoyanov's testimony,[10] but it is irrelevant. Because Mr. Titov was the designated 30(b)(6) witness for Hotfile on *all topics*, see Opp. at 15, Leibnitz Ex. 4, it is his testimony that is binding on both him and Hotfile Corp. *See DHL Express (USA), Inc. v. Express Save Indus. Inc.*, No. 09-60276 Civ.-Cohn, 2009 WL 3418148, at *1 n.4 (S.D. Fla. Oct. 19, 2009) ("A 30(b)(6) witness testifies as a representative of the entity," and "his answer binds the entity" (internal quotations omitted)); *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 699 (S.D. Fla. 1999) (corporation "must designate persons who have knowledge of the matters sought by [the deposing party] and must also prepare those persons so that they are able to give complete and knowledgeable answers"). Moreover, Mr. Titov cannot give testimony in his declaration about Mr. Ianakov's role that is inconsistent with his own deposition testimony. Mot. at 9 (citing cases).

Testimony Based on Speculation and Lack of Personal Knowledge in Paragraph 54. Mr. Titov engages in rampant speculation in asserting that a user who attempted to transfer her apparently "illegal" files to Rapidshare was transferring "empty files." Defendants do not deny that Mr. Titov has no personal knowledge of the specific files that the user tried to transfer. Defendants' tortured explanation for Mr. Titov's speculation that the files were empty is based on inferences from a parsed reading of an email exchange between a Rapidshare representative and the individual user – an exchange about which Mr. Titov has *no personal knowledge*. See Yeh Ex. 6 (attaching Yeh Ex. 52 to Plaintiffs' Motion for Summary Judgment). The key fact is that the user told Hotfile that the files were blocked *because they were illegal*. Defendants can only now speculate that they were actually "empty" – an explanation inconsistent with any plausible reason that a user would store files on Hotfile.

Testimony Based on Evidence Withheld in Discovery. Defendants not only failed to disclose Google Analytics data in discovery, but they affirmatively withheld producing it. Mr.

---

[10] Mr. Stoyanov in fact testified that he *did not remember* what steps Hotfile had taken to promote the site. Leibnitz Ex. 5 at 85:18-86:3.

Titov now seeks to rely on it in four different places in his declaration. In their opposition, defendants recite a long procedural history of their and Google's refusal to produce this data, and fault plaintiffs for not moving to compel to obtain it. Opp. at 17-19. This misses the point. If defendants wish to rely on this data, *defendants* should have produced it or obtained it from Google in discovery. Absent a valid reason for just obtaining and disclosing it at this late stage, defendants cannot rely on it. Fed. R. Civ. P. 26(a), 37(c).

Defendants argue that they are justified in disclosing some of the Google Analytics data now because it is "impeachment" or "rebuttal" evidence regarding sixty-three website Affiliates that Hotfile paid to send traffic to Hotfile. Opp. at 20. That argument is premised on the mistaken assertion that defendants were unaware that their payments to these sixty-three websites were relevant until plaintiffs' summary judgment filing. *Id.* at 19. However, plaintiffs identified Hotfile's payments to infringing website Affiliates as a basis for defendants' liability in the Complaint. See Compl. ¶¶ 35-36. These sixty-three websites are all Hotfile's own Affiliates and defendants have always been aware of them – defendants themselves produced the data identifying these websites in discovery. However, defendants chose to withhold the evidence that would show which of their Affiliates actually sent the most traffic to Hotfile.

In any event, paragraphs 14 and 19 – which selectively claim that sites *other* than link sites are among the top sites sending traffic to Hotfile – cannot be spun as "rebuttal" by defendants. *See* Opp. at 19 (claiming that Mr. Titov accessed Google Analytics to investigate specific pirate sites plaintiffs identified, then looked up this data). They cannot withhold this evidence while disclosing only portions that favor them *after* discovery has closed. *See* Mot. at 11. All Google Analytics evidence proffered by defendants should be excluded, or defendants should be ordered to give plaintiffs full access to all Google Analytics data to which defendants have or could have access. The full data – in contrast to the misleading sections defendants proffer – will no doubt show that pirate link sites were crucial to defendants' business.

## CONCLUSION

Plaintiffs' motion to strike should be granted.

Dated: April 9, 2012

Respectfully submitted,

By: /s/ Karen L. Stetson

Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

MOTION PICTURE ASSOCIATION
 OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th Day of April, 2012, I served the following documents on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

**Plaintiffs' Reply in Support of Motion to Strike Portions of Declarations of Professor James Boyle, Dr. Andrew Cromarty, and Anton Titov in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment**

By: /s/ Karen L. Stetson

Karen L. Stetson

## SERVICE LIST
### Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
### CASE NO. 11-CIV-20427-JORDAN

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA 94104
Phone: 415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*


BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL 33134
Phone: 305-476-7101
Fax: 305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*