UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF


DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.

_____ /

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

_____ /


**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs submit this Notice of Supplemental Authority to bring to the Court's attention a recent decision from the Second Circuit, *Viacom International, Inc. v. YouTube, Inc.*, No. 10-3270 (April 5, 2012) (attached hereto as Exhibit A), which addresses some of the legal issues raised in the parties' summary judgment briefing.  The Second Circuit decision, in relevant part, vacated and remanded the *Viacom* district court decision, 718 F. Supp. 2d 514 (S.D.N.Y. 2010), relied on by defendants.  Defs.' Opp. to Pls.' MSJ, Dkt. #394 ("Opp."), at 14, 17, 20.

In its recent decision, the Second Circuit held that the district court had erred in granting summary judgment to defendants, the operators of the YouTube website, based on the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.  The court remanded the case for further consideration of the facts on a number of grounds that would preclude YouTube's entitlement to safe harbor.  The record against Hotfile is of course very different from the record against YouTube.  Among online copyright defendants, Hotfile stands alone in having paid its users to upload infringing content and having refused to implement a repeat infringer policy, with the predictable result being overwhelming copyright infringement by Hotfile users.  *See* Pls.' MSJ, Dkt. #322 ("Mot."), at 5-10, 19-22; *cf. Viacom*, 718 F. Supp. at 527-28 (YouTube had a "three strikes" repeat infringer policy and had deployed digital fingerprinting technology to limit infringement).  Although the cases are factually distinct, the Second Circuit made four broader legal points relevant to plaintiffs' pending motion for summary judgment.

First, the Second Circuit held that service providers can obtain knowledge of infringement that disqualifies them from DMCA safe harbor by being willfully blind to infringement. Ex. A at 24.  A "'service provider is not … permitted willful blindness.  When it has reason to suspect that the users of its service are infringing a protected mark [or copyright], it may not shield itself from learning of the particular infringing transactions by looking the other way.'"  *Id.* at 23 (quoting *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 109 (2d Cir. 2010)).  Specifically, the Second Circuit explained that, while service providers have no freestanding duty to monitor for infringing material, a service provider can be found willfully blind where it "was aware of a high probability of the fact in dispute and consciously avoided confirming that fact."  *Id*. at 23 (citation omitted).  That mirrors the test in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011), cited by plaintiffs in their summary judgment papers.  *See* Mot. at 26-27; Pls.' Reply In Support of MSJ, Dkt. #425 ("Reply"), at 13.  In the present case,

the undisputed evidence shows that defendants were at least willfully blind to infringement under this test.  Mot. at 26-27.  In these circumstances, as the Second Circuit observed, willful blindness "may be applied … to demonstrate knowledge or awareness of specific instances of infringement under the DMCA," Ex. A at 24, such that a service provider can lose its DMCA protection even absent evidence that the service provider otherwise had actual or "red flag" knowledge of the specific infringements.

Second, the Second Circuit emphasized that *Grokster* inducement liability is based on "purposeful, culpable expression and conduct," Ex. A at 28 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005)), and reaffirmed that such conduct was inconsistent with DMCA safe harbor protection, *id*.  Although the Second Circuit discussed inducement liability in the context of interpreting the DMCA's "ability to control" provision, 17 U.S.C. § 512(c)(1)(B), which is not at issue in plaintiffs' summary judgment motion, a fundamental premise underlying the court's reasoning is that the DMCA should not be interpreted to give safe harbor to intentional infringers.  *Id*.  Plaintiffs' summary judgment motion similarly argues that intentional infringers, *e.g.*, those that act with the object of fostering infringement "without necessarily – or even frequently – acquiring knowledge of specific infringing activity," *id*., are fundamentally ineligible for DMCA safe harbor.  Mot. at 27-29; Reply at 13 (safe harbor for intentional infringers is incompatible with both the "by reason of" language of § 512(c)(1) and the "red flag" knowledge prong of § 512(c)(1)(A)(ii)).[1]

Third, the Second Circuit rejected defendants' argument, Opp. at 32-33, that the higher DMCA standard for "ability to control" should apply to *common law* vicarious infringement as well.  In ruling that the DMCA "requires something more than the ability to remove or block access to materials posted on a service provider's website," Ex. A at 27 (quotations omitted), the Second Circuit confirmed that "[u]nder the *common law* vicarious liability standard, [t]he ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise."  Ex. A at 26 (internal quotations omitted; emphasis added); *see also* Mot. at 34; Reply at 19 (arguing same).

---

[1] Plaintiffs have reserved for trial, if necessary, the issue of whether defendants are disqualified from DMCA safe harbor under §512(c)(1)(B), based on their financial benefit from and ability to control the infringement on Hotfile.

Finally, contrary to defendants' arguments, *see* Reply at 11-12, the Second Circuit reaffirmed that service providers can obtain knowledge of infringing activity that disqualifies them from DMCA safe harbor from sources other than copyright owner takedown notices.  Ex. A at 15, 20-22.  Indeed, even in finding that service providers must have knowledge of specific infringing activity to be disqualified from safe harbor under § 512(c)(1)(A), the Second Circuit made clear that the test is an *objective* one:  whether from the facts and circumstances known to the service provider, specific infringing activity would have been apparent to a reasonable person.  *See* Ex. A at 17-18.  The Second Circuit further made clear that the evidence itself need not refer to specific infringing files, as long as *from the evidence* specific infringing activity would have been objectively apparent to a reasonable person.  For example, the court cited an email in which a YouTube founder reported that clips of "well-known" shows, such as Family Guy and the Daily Show, were available on YouTube.  Ex. A at 20.  The email itself did not refer to specific clips or files; rather, the court reasoned that, from the statements made in the email, a fact finder could conclude that the founder had or should have had awareness of specific infringing clips.  *Id.* at 21.  Likewise, the court pointed to another email showing that a YouTube employee requested data on the number of searches for "soccer," "football" and "Premier League" (which presumably would be likely to identify content owned by the plaintiff Premier League).  *Id*. at 20.  Again, the email cited by the court did not mention specific files, or even copyrighted works.  *Id*. at 22.  From this kind of subjective awareness of facts and circumstances, according to the Second Circuit, a fact finder could conclude that a service provider objectively should have known of specific infringing activity.  Ex. A at 17 ("the red flag provision turns on whether the provider was subjectively aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person").

In this case, defendants are ineligible for DMCA safe harbor for multiple independent reasons irrespective of their knowledge, including defendants' failure to reasonably implement a repeat infringer policy, their failure to comply with the DMCA's designated agent provision, their inducement of infringement, and their willful blindness to the infringement on Hotfile.  Mot. at 18-29; Reply at 9-14.  The Court therefore does not need to reach the issue of defendants' red flag knowledge.  Nevertheless, the record here is replete with uncontroverted evidence that defendants were aware of facts and circumstances from which *specific infringements* would have been objectively apparent to any reasonable person under the Second

3

Circuit standard – including countless emails identifying specific infringing works, files and links.  Mot. at 24-26; Reply at 11-12.

Dated: April 11, 2012                          Respectfully submitted,

                                               By:  /s/ Karen L/ Stetson
                                                    Karen L. Stetson
                                                    GRAY-ROBINSON, P.A.
                                                    Karen L. Stetson
                                                    1221 Brickell Avenue
                                                    16th Floor
                                                    Miami, Fl 33131
                                                    Telephone: (305) 416-6880
                                                    Facsimile:  (305) 416-6887

MOTION PICTURE ASSOCIATION                     JENNER & BLOCK LLP
  OF AMERICA, INC.                             Steven B. Fabrizio (*Pro Hac Vice)*
Karen R. Thorland (*Pro Hac Vice)*             Duane C. Pozza (*Pro Hac Vice)*
15301 Ventura Blvd.                            Luke C. Platzer (*Pro Hac Vice)*
Building E                                     1099 New York Ave., N.W.
Sherman Oaks, CA 91403                         Suite 900
Phone:  (818) 995-6600                         Washington, DC 20001
Fax:  (818) 285-4403                           Facsimile:  (202) 639-6066

                                               *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th Day of April, 2012, I served the following documents on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

**Plaintiffs' Notice of Supplemental Authority**

By:  /s/ Karen L/ Stetson
Karen L. Stetson

**SERVICE LIST**
**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*