UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

    *Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

    *Defendants*.

_____/

HOTFILE CORP.,

    *Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

    *Counter-Defendant*.

_____/

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
"NOTICE OF SUPPLEMENTAL AUTHORITY"**

CASE NO. 11-20427-WILLIAMS/TURNOFF

In a four-page supplemental brief, Plaintiffs try to put a brave face on *Viacom International, Inc. v. YouTube, Inc.,* ___ F.3d ____, 2012 WL 1130851, Docket Nos. 10-3270-cv, 10-3342-cv (2nd Cir. April 5, 2012) (attached as Exhibit A to Plaintiffs' Notice Of Supplemental Authority [Docket No. 443]).[1] *YouTube* does not help Plaintiffs' arguments on summary judgment. Not only does Plaintiffs' "Notice" largely contain improper re-argument, it badly distorts the important aspects of the *YouTube* decision. To assist the Court, Hotfile hereby provides a more accurate summary of the relevant holdings, with minimal argument.

**I.     *YouTube* Requires Knowledge Or Awareness Of "Specific And Identifiable Infringements"**

On "the most important question on appeal," the Second Circuit rejected Plaintiffs' position that generalized knowledge of infringement on a website suffices to deprive a defendant of safe harbor protection under the DMCA. *YouTube* at 15-19; PMSJ at 25-26. Examining the "actual knowledge" and "red flag" awareness that disqualify service providers from safe harbor protection, the Second Circuit unambiguously ruled that "both apply only to ***specific instances*** of infringement." *YouTube* at 18. In doing so it agreed with the Ninth Circuit in *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d 2011 (9th Cir. 2011) ("*Veoh*"). *Id*. Unlike the Plaintiffs here, the Second Circuit explicitly agreed with *Veoh* in holding, "[w]e do not place the burden of determining whether [materials] are actually illegal on a service provider." *YouTube* at 18 (quoting *Veoh*, 667 F.3d at 1038). *Compare* Reply PMSJ at 11 ("[P]laintiffs disagree with the Ninth Circuit's decision in *Veoh*"). It also found that that knowledge of ***infringing URLs*** is required, quoting with approval from *Capitol Records, Inc. v. MP3tunes, LLC*, 2011 WL 5104616, at *14 (S.D.N.Y. Oct. 25, 2011). *YouTube* at 18.

The Second Circuit also held:

> By definition, only the current clips-in-suit are at issue in this litigation. Accordingly, we . . . instruct the District Court to determine on remand whether any specific infringements of which YouTube had knowledge or awareness correspond to the clips-in-suit in these actions.

---

[1] Plaintiffs' Notice Of Supplemental Authority is referred to herein as "Notice" and the *YouTube* decision attached as Exhibit A thereto is referred to as "*YouTube*." Defendants refer herein to the abbreviations set forth in the Citations Legends in Defendants' summary judgment briefs.

CASE NO. 11-20427-WILLIAMS/TURNOFF

*YouTube* at 22. This left at issue only a small "handful of specific clips." *Id.* at 34. Thus, the Second Circuit adopted Hotfile's view on this threshold aspect of the DMCA. DMSJ at 12 ("Hotfile did not have knowledge of *the specific files-in-suit* . . .").[2]

*YouTube* rejects Plaintiffs' argument that disqualifying knowledge or awareness can be proved through statistics. *See* PMSJ at 25-26 ("the sheer magnitude of infringement – more than 90% of all downloads were infringing . . . disqualifies defendants from [the] DMCA safe harbor"). The *YouTube* court discarded a similar argument there that "75-80% of all YouTube streams contained copyrighted material": "[S]uch estimates are insufficient, standing alone, to create a triable issue of fact as to whether YouTube actually knew, or was aware of facts or circumstances that would indicate, the existence of particular instances of infringement." *YouTube* at 19-20.

Despite the *YouTube* holding that disqualification from the safe harbor "requires specific knowledge of particular infringing activity," *YouTube* at 18-19, Plaintiffs persist in arguing that their evidence "need not refer to specific infringing files." Notice at 3. Plaintiffs incorrectly assert that the Second Circuit found a triable issue in *YouTube* based on the February 7, 2007 e-mail from YouTube employee Patrick Walker requesting that his colleagues search for "soccer" and "football" and "Premier League" so as to take down any "clearly infringing" clips prior to a meeting with the English soccer league. Notice at 3. Plaintiffs argue this e-mail did not identify specific URLs. *Id.* In fact, the Second Circuit said summary judgment had been "premature" and "express[ed] no opinion as to whether th[is] evidence" is enough "to withstand a renewed motion for summary judgment by YouTube on remand." *Id.* at 22 n.9; *see id.* at 34 ("the cause is

---

[2] This underscores the irrelevance of the generalized facts unrelated to the specific files in suit upon which Plaintiffs depend. For example, each of the following is plainly a diversion: (1) Hotfile's disbursement of affiliate payments to "link sites containing the terms 'pirate' or 'warez'," because this evidence does not relate to specific files-in-suit, PMSJ at 26; (2) the hundreds of emails attached to Plaintiffs' papers referring to files they have never asserted to be allegedly infringing files-in-suit; (3) Hotfile personnel's alleged downloading of dozens of copyrighted works which were undisputedly *not* owned by Plaintiffs; *id.*; Yeh Ex. 29; (4) their assertion that Hotfile demonstrated website functionality using infringing works *not* owned by Plaintiffs; PMSJ at 26; Yeh Exs. 44, 45, 47 at 2; and (5) their generalized argument that Hotfile knew that competitor cyberlockers had rejected one user's allegedly-infringing files *not* having any connection to the Plaintiffs or files-in-suit; PMSJ at 26; Yeh Ex. 52.

3

REMANDED for the District Court to determine whether YouTube had knowledge or awareness of any specific instances of infringement corresponding to the clips-in-suit").[3]

## II. Willful Blindness Applies Only To Specific Instances Of Infringement

On the issue of willful blindness, Plaintiffs omit the central component of the Court's holding: in the DMCA context, the doctrine may only be applied to *specific instances of infringement*. *Id.* at 24 ("Accordingly, we hold that the willful blindness doctrine may be applied, in appropriate circumstances, to demonstrate knowledge or awareness of specific instances of infringement under the DMCA."). The Court recognized the need to balance the application of the willful blindness doctrine against the fact that "DMCA safe harbor protection cannot be conditioned on affirmative monitoring by a service provider." *Id.* at 23; *see id.* at 23-24 ("§ 512 is incompatible with a broad common law duty to monitor or otherwise seek out infringing activity based on general awareness that infringements may be occurring."). Thus, on this issue, too, the Second Circuit adopted Hotfile's view of the law. *See* DOPMSJ at 18 ("Disqualifying knowledge under the DMCA must point to *specific infringements*. The Studios'

---

[3] Plaintiffs vaguely allude in the last words of their Notice to "countless emails identifying specific infringing works, files and links" at Hotfile. Notice at 4 (referring to Yeh Decl., Exs. 26-30). In fact, exactly *none* of those 787 e-mails identified any Hotfile URLs as *infringing*. Each merely recorded the URL of the last download attempted by the user. As a threshold matter, it is hardly self-evident from the URLs that http://hotfile.com/dl/35520587/6985fb0/hio-lo.610.prime.part1.rar.html is allegedly an unauthorized copy of an episode of the television show "Lost," or that http://hotfile.com/dl/58460406/267191c/Munich is allegedly a movie rather than personal travel photos (or anything else), or that http://hotfile.com/dl/15608663/928c9b8/SolidWorks_2010r.part12.rar is allegedly proprietary anti-virus software, or that http://hotfile.com/dl/32570519/84a23c4/2012.Lektor_PL.part02.rar.html is allegedly a Columbia Pictures presentation simply because it employs the numerals "2012" (coinciding with the name of a film). Yeh Decl., Ex. 27 at 1, 7-8; Ex. 28 at 1. To impose upon Hotfile the duty to ascertain infringement based solely upon URLs recorded automatically in every one of Hotfile's 701,116 e-mails from users would be no different than imposing on Hotfile the duty to monitor its site for content that might infringe – an obligation which the Second Circuit explicitly refused to impose on YouTube. *YouTube* at 23 ("***DMCA safe harbor protection cannot be conditioned on affirmative monitoring by a service provider***.") (emphasis added); *id.* at 18 ("we do not place the burden of determining whether materials are actually illegal on a service provider") (citation and punctuation omitted); *id.* at 18-19 ("If investigation of facts and circumstances is required to identify material as infringing, then those facts and circumstances are not 'red flags.'") (citation and punctuation omitted). And, moreover, the Studios have not asserted which, if any, of those emails contain URLS that are actually files-in-suit. Thus, *YouTube* rejects Plaintiffs' arguments regarding Hotfile's allegedly-culpable knowledge under the DMCA in multiple ways.

4

CASE NO. 11-20427-WILLIAMS/TURNOFF

willful blindness argument improperly aspires to disqualify based on general knowledge.") (emphasis added).[4]

### III. *YouTube* Confirms That The DMCA Is A Defense To All Theories Of Secondary Infringement, Including Inducement Liability

Plaintiffs engage in a tortured reading of the Court's discussion of "ability to control" to try to find support – where none exists – for their moribund argument that *Grokster* inducement liability is an unwritten exception to the DMCA safe harbor. *See* Notice at 2. This argument ignores the Court's definitive statement at the conclusion of the opinion that the DMCA safe harbor is a defense to **all** of the plaintiffs' claims: "The District Court correctly determined that a finding of safe harbor application necessarily protects a defendant from all affirmative claims for monetary relief." *YouTube* at 33; *see Viacom Int'l Inc. v. YouTube, Inc.,* 718 F. Supp. 2d. 514, 516 (S.D.N.Y. 2010) (affirmative claims include "inducement" liability). Thus, the Second Circuit once again adopted Hotfile's view on this issue. *See* DOPMSJ at 20. Anything else would be contrary to the DMCA's purpose of providing a layer of "certainty" over background principles of secondary liability, such as inducement. *Id.* The Court's suggestion that under some circumstances, *Grokster* inducement "***might*** also rise to the level of control under section 512(c)(1)(B)" (*YouTube,* 2012 WL 1130851 at *13) does not imply that this is so in most or even in any cases. Regardless, Plaintiffs have admittedly disclaimed this issue for purposes of summary judgment and have instead reserved it for trial, so it is a non- issue for present purposes. PMSJ at n.11.

---

[4] Contrary to this holding, Plaintiffs' willful blindness argument here is ***not*** based on any specific instance of infringement. *See* PMSJ at 26-27; PSUF at 7 (¶ 11). Instead, it is based on inferences Plaintiffs seek to raise from: (1) a single email written by a Hotfile contractor that does not discuss any specific instance of infringement; (2) the absence of a search function on Hotfile's website; (3) a statement by Mr. Titov at his deposition about Hotfile's theoretical ability to review downloads; and (4) the assertion that prior to the filing of this lawsuit, "defendants had no policy to associate infringement notices with the uploading user or keep track of such users." PSUF at 7 (¶ 11). Because none of this "evidence" concerns any specific instance of infringement (*i.e*., any of plaintiffs' specific purported verified files-in-suit), it is insufficient as a matter of law to establish "knowledge" or "awareness" based on the common law "willful blindness" doctrine.

CASE NO. 11-20427-WILLIAMS/TURNOFF

### IV. Plaintiffs' Argument About Common Law Vicarious Liability Is A Straw Man That Misrepresents Defendants' Position

Plaintiffs attempt to camouflage the fact that the Second Circuit rejected Viacom and the MPAA's view on the "right and ability to control" provision of the DMCA by mischaracterizing Hotfile's arguments on vicarious liability. Notice at 2. They had argued that this provision of the DMCA "codifies the common law doctrine of vicarious liability." *YouTube* at 26. The Second Circuit correctly recognized that this "would render the statute internally inconsistent" and rejected the argument that they need show nothing more than that defendants have the ability to block access to content on their website. *See YouTube* at 26-27.

On the other hand, Defendants' discussion of vicarious infringement ***does not once mention the DMCA***, other than to point out in a footnote that Plaintiffs conceded the existence of a genuine issue of fact as to whether, for purposes of the DMCA, Hotfile receives a "direct financial benefit directly attributable to the infringing activity, in a case in which [they also have] the right and ability to control such activity." DOPMSJ at 32 n.40. Defendants' discussion otherwise is addressed solely to the common law vicarious liability standard and the relevant case law that has interpreted that standard in the internet context. *See* Opp. at 32-34; *Perfect 10, Inc. v. Amazon.com*, 508 F.3d 1146 (9th Cir. 2007) (common law vicarious infringement requires "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) (decision to impose vicarious liability turned on fact that Napster's system architecture had a searchable index that allowed Napster to easily locate infringing work on its system and users had to give file names that corresponded to copyrighted music in the files); *Wolk v. Kodak Imaging Network, Inc.*, 2012 WL 11270 (S.D.N.Y. Jan. 3, 2012) (dismissing vicarious infringement claim because online photo sharing site has no "right and ability to supervise" infringing conduct); *Arista v. Myxer*, 2011 U.S. Dist. LEXIS 109668 (C.D. Cal. Apr. 1, 2011) ( "[T]o the extent that Myxer uses Audible Magic filtering technology (as well as other means to stop or limit alleged copyright infringement) there remain genuine issues of material fact as to whether Myxer sufficiently exercises a right to stop or limit the alleged copyright infringement."). The *YouTube* opinion – which, in any event, does not address the merits of the plaintiffs' affirmative claims but only deals with the DMCA safe harbor defense – in no way conflicts with these authorities.

6

CASE NO. 11-20427-WILLIAMS/TURNOFF

DATED:  April 12, 2012

Respectfully submitted,

s/ Janet T. Munn
Janet T. Munn, Esq. Fla. Bar No. 501281
Email: jmunn@rascoklock.com
RASCO KLOCK
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone:  305.476.7101
Telecopy: 305.476.7102

And

s/ Roderick M. Thompson
Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email:  rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email:  aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email:  tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email:  dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email:  jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy: 415.954.4480

And

Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone:  617.928.1800
Telecopy:  617.928.1802

*Counsel for Defendants Hotfile Corporation
 and Anton Titov*

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2012, a true and correct copy of the foregoing document was served on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Karen L. Stetson, Esq.
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL  33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA  91403-5885
Telephone: 818.935.5812

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC  20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

By: s/ Janet T. Munn
    Janet T. Munn