**Exhibit 15**

Page 1

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3              CASE NO. 11-20427-WILLIAMS/TURNOFF

4

5     DISNEY ENTERPRISES, INC.,
      TWENTIETH CENTURY FOX FILM
6     CORPORATION; UNIVERSAL CITY
      STUDIOS PRODUCTIONS LLP;
7     COLUMBIA PICTURES INDUSTRIES,
      INC., and WARNER BROS.
8     ENTERTAINMENT, INC.,

9                          Plaintiff,

10    vs.

11    HOTFILE CORP., ANTON TITOV,
      and DOES 1 - 10

12

                          Defendants.
13    _____/

14    AND RELATED CROSS-ACTIONS.
      _____/

15

16

17      VIDEOTAPED DEPOSITION OF ANDREW S. CROMARTY, Ph.D.

18              SAN FRANCISCO, CALIFORNIA

19              FRIDAY, DECEMBER 16, 2011

20

21

22

23    BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR

24    CSR LICENSE NO. 9830

25    JOB NO. 44314

1      FRIDAY, DECEMBER 16, 2011

2         10:09 a.m.

3

4

5

6  VIDEOTAPED DEPOSITION OF ANDREW S. CROMARTY,

7  Ph.D., taken at Farella Braun + Martel LLP

8  235 Montgomery Street, San Francisco,

9  Pursuant to Notice, before me,

10  ANDREA M. IGNACIO HOWARD, CLR, CCRR, RPR,

11  CSR License No. 9830.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    A P P E A R A N C E S:

2

3         FOR THE PLAINTIFFS:

4         JENNER & BLOCK

5         By:  LUKE C. PLATZER, Esq.

6         1099 New York Avenue, NW

7         Washington, D.C. 20001

8

9

10

11

12        FOR THE DEFENDANTS:

13        FARELLA BRAUN + MARTEL

14        By:  TONY SCHOENBERG, Esq.

15        235 Montgomery Street

16        San Francisco, California 94104

17

18

19

20        ALSO PRESENT:  Sean McGrath, Videographer

21

22                    ---oOo---

23

24

25
```

Page 48







1   pen?

2        MR. PLATZER:  Not at all.

3        Let's go off the record.

4        MR. SCHOENBERG:  Yeah, we can go off the

5   record.  I'm sorry about that.

6        THE VIDEOGRAPHER:  The time is 11:34, and

7   we're off the record.

8        (Recess taken.)

9        THE VIDEOGRAPHER:  The time is 11:35 a.m.,

10  and we are on the record.

11       MR. PLATZER:  Okay.

12     Q   Dr. Cromarty, that's a long answer.  I

13  believe in the first part of your answer you discussed

14  things that you read in Warner's internal e-mails;

15  correct?

16     A   That certainly was included in my answer,

17  yes.

18     Q   Okay.  And the summary that you gave there,

19  that wasn't -- that wasn't your expert opinion about

20  the e-mails.  That was just you observing what you

21  understood the e-mails to mean; right?

22     A   I'm not certain that's an accurate

23  characterization, for several reasons.

24        The first is the one I answered with, which

25  is there may be fine, legal distinctions between what

Page 52

1    is and is not an expert opinion that I don't

2    appreciate as a nonattorney.

3           Whether I have the opinion that ████ isn't

4    capable of identifying infringing content as a

5    technical tool, or whether I'm citing the executive

6    director of anti-piracy for the plaintiff on that

7    matter is kind of a technical fine point of -- of law

8    that I don't claim to be expert on.

9           If I were speaking colloquially, not with

10   respect to expert obligations and rights and

11   responsibilities, and not with respect to that legal

12   question, at a minimum, I would say that the data

13   provided by plaintiffs support my own opinion, and it

14   may also rise to an opinion -- the level of an opinion

15   ████ has been, at a minimum, described by its own

16   users as incapable of being used, or more generally

17   that such tools are incapable of being used to

18   identify infringement.

19       Q    Your expert report in this case does not

20   include an opinion as to the adequacy or accuracy of

21   ████; does it?

22       A    To answer that, I would want to have a copy

23   of my report to review, and that hasn't been provided

24   to me yet today.

25       Q    Why don't we mark that as an exhibit.

Page 53

1          Mark this as Cromarty 1.

2          (Document marked Cromarty Exhibit 1

3           for identification.)

4          THE WITNESS:   Thank you.

5          And just for the record, I understand your

6    question to be pending; is that correct?

7          MR. PLATZER:   That's correct.

8      Q    And, for the record, the -- what's been

9    marked as Cromarty Exhibit 1 is a document, not Bates

10   numbered, but bears the -- the cover sheet saying

11   "Expert Report of Andrew S. Cromarty, Ph.D.," and is

12   dated November 18th.

13     A    Right, and I would note also for the record

14   that this is not my complete report.

15         So what we have here, at most, is what I

16   refer to as the body of my report.  It does not

17   include all of the attachments and appendices and

18   other material, and it does not include the referenced

19   materials, including the documents, the Bates numbered

20   documents that I just referred to.

21         So in that regard, at a minimum, it's

22   incomplete.  But with your representation, I will

23   accept, for purposes of the deposition today, that it

24   is otherwise a true and accurate copy of the main body

25   of my report.

Page 54

1      Q    That's true.

2           Carrying three copies of the entire thing,

3      with appendices, on the plane to San Francisco would

4      have been rather heavy.

5      A    I understand.   363 pages of documents plus

6      the Bates numbered documents, yes.

7      Q    Why don't I withdraw the pending question --

8      A    Okay.

9      Q    -- and just ask a foundational one here.

10          Is -- is -- Cromarty Exhibit 1, is this a --

11     the body -- excluding appendices, is the body of the

12     report that you prepared?

13     A    I'm accepting your representation that it is.

14     It appears to be, and I have no reason at present to

15     doubt that.

16     Q    Okay.   In this report, do you express an

17     expert opinion as to the accuracy of the ███

█  ████████

19          MR. SCHOENBERG:   Objection; vague and

20     ambiguous.

21          THE WITNESS:   I think the best answer is yes.

22          MR. PLATZER:   Okay.

23     Q    Can you tell me where in the report that

24     opinion is located?

25     A    Well, first let me tell you the nature of it,

Page 55

1    and then I'll be happy to look for it.

2           The nature of it is that I have opined that

3    it is for structural and information theoretically not

4    possible, and also given the current state of the art,

5    for any such tool to reliably answer the question of

6    infringement.  That a technical tool alone is not

7    capable of doing that, and I understand ███ to be

8    such a tool.

9           So, in this regard, I believe the answer is

10   yes, I've provided that opinion merely by virtue of

11   ███ falling in the category that I've identified as

12   not capable of providing those answers.

13          Now, I have a recollection that I did cite

14   ███ in here, and I'd like to take a look at it and

15   see if I need to augment my answer in any way.

16       Q   Go ahead.

17       A   If you -- if you believe you know the

18   reference, just for efficiency, I'm happy to have you

19   tell me where I cited.  Otherwise, I'd have to look

20   through.

21          It's my recollection it's towards the end.

22       Q   That is my recollection as well.  And to the

23   extent it helps shorten your review of Cromarty

24   Exhibit 1, I believe you have discussion of Warner

25   beginning around paragraph 198.



Page 57

1    matter and is noted in Appendix H.  In any case, data

2    to support the technical decision are not part of the

3    Internet handling of files generally and file

4    transfers and file sharing services."

5          In particular, that's the last part of

6    paragraph 198.  And so there and throughout I've

7    expressed the specific expert opinion that -- that

8    these tools, including the class of tools of which

9    █████ is a member, are not capable of answering the

10   question of infringement, and the Bates numbered

11   documents also, in my view, directly support that

12   finding.

13         Just so that we're absolutely clear and to

14   avoid a possible objection, therefore my answer is

15   yes, it is my view that I have included █████ in this.

16   Q    Have you used the █████ software yourself?

17   A    I have not used the █████ software, and in my

18   professional and expert judgment, it's not necessary

19   for me to use it in order to reach my opinion.

20   Q    Can you tell me how it works?

21   A    Probably not in considerable detail, because

22   the available data about all these systems is very

23   carefully kept secret for a variety of reasons by the

24   -- the sellers, the marketers of these systems, and

25   also by their users.

1        For example, you'll notice that even in the

2   produced material, information written about █████

3   itself was redacted by the plaintiffs before

4   production.  So it's highly secret, probably for trade

5   secret and a variety of other reasons.

6        So it's generally not going to be possible,

7   without a review of their source code software, to

8   understand all the details of their system, but

9   generally it's my understanding from the

10  correspondence of plaintiff that list of files is

11  provided to or through █████, and that as some

12  combination of service and tool, it's employed to

13  identify potentially infringing content and take it

14  down or request takedowns of that material.

15       And in one detailed Bates numbered e-mail

16  discussion between employees of plaintiff, there is a

17  specific roughly 12-point itemization of various

18  features of the analysis that █████performs and that

19  other tools might perform, and a specific evaluation

20  of which of those might or might not be useful in

21  █████ versus a competing tool; and that list provides

22  some insight into what █████ may be doing based on the

23  beliefs of plaintiff.

24       Again, I would emphasize no one can really

25  know, outside of █████, what the tool does, and this

1   is a considerable difficulty in the industry as I've

2   already opined in my report.

3       Q    And is it fair to say that the documents that

4   are listed in your appendix to your report constitute

5   the entire universe of documents that you reviewed

6   regarding ███████ in order to form your opinion

7   expressed in your report?

8       A    With the proviso that it's always possible

9   that there is an additional document that was produced

10  to me that, for purely incidental or accidental

11  reasons that I neglected or through some editing

12  error, was not provided in my report.

13           And, of course, at any time we determine

14  that's the case, I would be delighted to provide any

15  additional information about any sources that I relied

16  on or referred to.  But as I sit here today, to the

17  best of my ability to recall, my appendix list is

18  complete with respect to the ██████ documents that I

19  referred to or reviewed.

20      Q    And other the -- other than the list of

21  appendix documents regarding ██████, is there anything

22  that you requested further regarding ██████ in order to

23  conduct your analysis and form your expert opinions

24  for this report?

25      A    Generally, the answer is no, and this is, I

Page 60

1   think, really the question you asked and I answered

2   earlier this morning with respect to having requested

3   additional documents.  But I would also note, as I did

4   a moment ago, that in my judgment, there is more than

5   enough information already provided here to reach the

6   opinions that I have and that I have put into my

7   report.

8          Of course, in addition, I have my own

9   expertise, and as I've said before, I rely on that as

10  well.

11      Q    I'd like to direct your attention to

12  paragraph 198 --

13      A    Yes.

14      Q    -- of your report here, and you note toward

15  the end of that paragraph that ownership and

16  permission is a nontechnical manner.

17      A    Yes.

18      Q    You'd agree that, leaving aside how the tools

19  work, it's not really a technical issue whether or not

20  a particular piece of content is authorized.  That's

21  something that can be communicated through means other

22  than through technology?

23          MR. SCHOENBERG:  Objection; incomplete

24  hypothetical; calls for a legal conclusion.

25          THE WITNESS:  So one difficulty I have with

1    that question is that it is my perception, as a

2    practitioner in the field, that there are unresolved

3    questions of law alone as to this matter, so it may

4    not be a fact question whether or not authorization

5    has been granted.  There may be, in addition, legal

6    questions that are currently unresolved with respect

7    to case law as to whether authorization has been

8    granted or is necessary or not required when one is in

9    possession of a digital asset.

10        So I think it's much broader than your

11   question implies.

12        MR. PLATZER:  Q.  Well, I'm going to give you

13   a hypothetical.  I want you to assume that a copyright

14   owner is intentionally uploading a piece of their

15   content to Hotfile.

16        A    Okay.

17        Q    Wouldn't it be true, in that hypothetical,

18   that Hotfile could acquire awareness of the authorized

19   nature of the content through nontechnical means, such

20   as through cooperation with the copyright owner?

21        MR. SCHOENBERG:  Objection; incomplete

22   hypothetical; lack of foundation; calls for

23   speculation.

24        THE WITNESS:  I understand your question to

25   be, is it possible that -- to concretize this -- that,

Page 62

1    for the sake of an example, Warner and Hotfile could

2    have a conversation in which Warner uploads data to

3    Hotfile servers and then Warner communicates their

4    opinion as to the authorization of that content.

5           Is it possible for a conversation to occur?

6    Yes, it's possible for a conversation to occur.

7           Is it -- is it determinative that that

8    provides authorization?  I believe the answer is

9    almost certainly no, and the reason is that it is not

10   possible for Hotfile to independently vet the

11   allegation or assertion as to either infringement or

12   ownership and authorship of any particular asset.

13          Now, that is a -- a legal matter that depends

14   on a very complex web of interactions and ownership

15   and rights management that is well beyond the purview

16   of Hotfile to vet, and upon which the representation

17   of any one individual cannot be reliable.

18          And I will give you a specific example of

19   this, which is, when I was working as the CTO of the

20   principal file sharing company that was engaged by

21   substantially all the plaintiffs to share their own

22   content among themselves and between these companies,

23   that I came to learn that there's an extremely complex

24   rights management culture within the -- the

25   entertainment industry, specifically in the film

1  industry and probably also extending to TV and other

2  parts of the entertainment, the commercial

3  entertainment industry, an individual asset may have

4  as many as 20 to 30 individual rights into which it is

5  divided.

6         As a -- as a -- as an example, there might be

7  a right to show the film on Tuesdays in Hungary, and

8  the rights is -- is a -- an area where it is so

9  balkanized that there are companies in this industry

10  that specifically exist to manage just the rights or

11  to produce rights management systems and software.

12         And in that context, my answer is no, it is

13  not possible for a Hotfile to reliably vet and receive

14  and process information based simply on a claim from a

15  plaintiff in this suit or any other possible source of

16  information.

17         So on the one hand, yes, they can have a

18  conversation.  On the other hand, it's not -- it's not

19  reliable source of information, even if it's a large

20  company of whom we have heard.

21         And I'll finally close this answer by saying,

22  again, I think on top of this there are additional

23  legal, open questions where there're, apparent to me,

24  unsettled matters of case law as to what constitutes

25  authorization.  And as long as those are open, even if

Page 64

1   all other questions could be answered, it's difficult

2   and impossible, probably impossible, for a company in

3   Hotfile's position to receive information and reliably

4   act on it.

5          Now, this is not to say that they don't

6   receive that information.  It's not to say they don't

7   act on it, and I have given the opinion in my report

8   that they make what I judge, as a professional in this

9   field, are commercially reasonable best efforts to do

10  so.

11         But with this context, the answer to your

12  question, I think, is a resounding no as to a

13  hypothetical.

14     Q   You're familiar with the YouTube website;

15  right?

16     A   Generally, yes.

17     Q   And you're aware that on YouTube there are

18  companies that posts content through their own

19  official company accounts; right?

20     A   I'm aware that there has been reported in the

21  press an increasing set of relationships between

22  Google, the owner of YouTube, and entertainment

23  companies.  Some of those appear to me to have been

24  with respect to establishing contractual

25  relationships, and others appear to have been lawsuits







Page 76

1    So this goes to your question as well.  So
2  even in the case of your hypothetical, I think, to
3  summarize, on the one hand we have that Warner is
4  responsible for the account and they've made
5  agreements with respect to it.  But on the other hand,
6  it's not entirely reliable to a company in Hotfile's
7  position.  And they have to, in the face of that
8  unreliability and uncertainty, to simply do the best
9  they can, and that includes under the DMCA Safe
10 Harbors, and also as a -- as an operating business.
11    Q    Okay.  Dr. Cromarty, you're using the term
12 re- -- terms "reliable" and "reliability" a lot in
13 your answers.
14    Can you explain to me what you mean when you
15 use those words?
16    A    Well, there are probably several uses of
17 that, depending on the question one is faced with in
18 business.  So I have used it with respect to some
19 scientific questions, and I've used it with respect to
20 some business practice questions.
21    I could try to give you several answers, or
22 perhaps you have a more specific question.
23    Q    Well, it's precisely because the term has
24 some variety of meanings.  I'm trying to understand
25 which meaning you intend in each answer that you give.

Page 77

1     So let's first talk about the answer that you

2  just gave to my question about whether or not, in my

3  hypothetical, Hotfile could use the fact that the

4  Vampire Diaries files were uploaded from the official

5  Warner account as an indication that the files were

6  uploaded were -- were authorized to be there.

7     And I believe, and you can correct me if this

8  is an unfair characterization of your testimony, you

9  said that it would not be reliable for Hotfile to rely

10  upon the fact that an official account was used for

11  the uploads; is that a fair characterization?

12     A   Well, I won't disagree with it for the

13  purpose of you allowing your question certainly.

14     Q   In what sense did -- did you intend the

15  meaning of the word "reliable" in that answer?

16     A   Well, it's, I think, an implication of your

17  having posed the hypothetical that you're inquiring

18  about possible business behavior that Hotfile might

19  engage in, and so Hotfile has to make decisions about

20  the business behavior that they will engage in based

21  on the information that's available to them, and there

22  becomes a question when they are working in this

23  complex domain where there are financial and legal

24  implications of any action they take and any choice

25  they make, what their sources of data are in their

Page 78

1    decision-making process.

2           And so one form of the use of the word

3    "reliability," with respect to making decisions that

4    are fraught with legal and financial implications, and

5    certainly we see in the existence of this suit the --

6    the criticality of -- of those decisions and therefore

7    of the data sources.

8           And, in fact, to the extent that the

9    defendant's countersuit has merit, and I'm not making

10   a judgment on that, I'm assuming that's for a trier of

11   fact to do, but to the extent that it has merit and

12   even to the extent that the underlying data that have

13   been presented by the defendants as to -- again, I

14   believe it's plaintiff Warner -- to Warner's takedown

15   issuances of a content they did not own is correct.

16          What we have is that -- that the plaintiff,

17   this plaintiff, has, over time, taught Hotfile that

18   they are not a reliable partner with respect to what I

19   believe is their SRA account.

20          So one thing we learn from this is that when

21   one is in business and making decisions, that the

22   interactions one has with a partner teach whether or

23   not that partner is a good source of information, is a

24   good partner, is providing honest and true information

25   and so forth.



Page 289

1                    J U R A T

2

3

4    I, ANDREW S. CROMARTY, Ph.D., do hereby

5    certify under penalty of perjury that I have

6    read the foregoing transcript of my

7    deposition taken on December 16, 2011; that I

8    have made such corrections as appear noted

9    herein in ink, ~~initialed by me~~, that my /on attached

10   testimony as contained herein, as corrected, ERRATA SHEET Exhibit

11   is true and correct.

12

13

14   DATED this _20_ day of _JANUARY_____, ~~2011~~, 2012

15   at _Palo Alto_____, California.

16

17

18

19   _____

20            SIGNATURE OF WITNESS

21

22

23

24

25

Page 292

1           E R R A T A   S H E E T

2

3           I, ANDREW S. CROMARTY, Ph.D., make the

4    following changes to my deposition taken in the matter

5    of Disney Enterprises, Inc., et al., vs. Hotfile,

6    Corp., et al., taken on December 16, 2011:

7

8    DATE:_____        _____

9                                    Signature of Witness

10   Page            Line         Change

11   _____           _____        See attached Exhibit,

12   _____           _____        "Transcript Errata- Cromarty

13   _____           _____        Hotfile Deposition Dec 16, 2011

14   _____           _____        ERRATA SHEET." (ASC)

15   _____           _____        _____

16   _____           _____        _____

17   _____           _____        _____

18   _____           _____        _____

19   _____           _____        _____

20   _____           _____        _____

21   _____           _____        _____

22   _____           _____        _____

23   _____           _____        _____

24   _____           _____        _____

25   _____           _____        _____

**Transcript Errata - Cromarty Hotfile Deposition Dec 16, 2011**

ERRATA SHEET

I, ANDREW S. CROMARTY, Ph.D., make the following changes to my deposition taken in the matter of Disney Enterprises, Inc., et al., vs. Hotfile, Corp., et al., taken on December 16, 2011:

DATE:  20-Jan-2012

Signature of Witness

Page  Line:  Change    ("a -> b" signifies "replace a with b")

p.7 L.19: "JCPenny et al." -> "J. C. Penney, et al."
p.8 L.8: "the Patent-in-Suit, and that" -> "the Patent-in-Suit that"
p.11 L.24: "this" -> "is"
p.12 L.7: "to my" -> "of my"
p.15 L.23: "legally phrased" -> "legally freighted"
p.21 L.6: "which" -> "in which"
p.26 L.8: Strike "but"
p.26 L.19: "For -- for example," -> "For, for example,"
p.27 L.5: In Mr. Platzer's text, "your" should be "their" (changes meaning of my answer)
p.27 L.19: "helpful" -> "helpfully"
p.28 L.7: "experience" -> "experience is,"
p.28 L.8: "sort of the" -> "the sort of"
p.30 L.10: strike comma
p.30 L.11: ████████████████████████████████
p.31 L.23-24: "principals, and" -> "principals. And"
p.33 L.4: "publication. It's" -> "publication--it's"
p.33 L.5: "referee publication, for example, by one"  -> "refereed publication, for example--by one"
p.35 L.5: Delete paragraph indentation (changes meaning).
p.34 L.7: "Google" -> "Google is"
p.36 L.18: "report," -> "report"
p.36 L.22-23: "domain name. [par] Some" -> domain name, some"
p.37 L.5 "mathematical" -> "mathematically"
p.37 L.11: "my upload" -> "upload"
p.38 L.17,22.: Mr Platzer's text refers to "Nutella", should be "Gnutella". [I am answering his questions about Gnutella, hence affects meaning of my answers.]
p.38 L.25: "true. Generally for the 2P" -> "true generally for the P2P,"
p.39 L.15 & throughout: "Use Net" -> "Usenet"
p. 39 L.17-19: "has not been use of it. It was a use of" - "has not been. Usenet was a use of"
p.40 L.2: "much" -> "machine"
p.40 L.3-4: "files. Almost inversely" -> "files, almost universally"
p.40 L.9: "server hosted sites." -> "server hosting sites, or what have you."

p.41 L.16: "implicit of" -> "implicit about"
p.42 L.7: "testing. If" -> "testing, if"
p.42 L.8: "unaware and" -> "unaware, and"
p.46 L.6: "risky" -> "risk a"
p.46 L.23: "going to be" -> "in a"

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

p.52 L.15: ███████████████████████████████
p.52 L.17: "used" -> "used,"
p.52 L.22: "want to have" -> "want"
p.54 L.5: "of documents plus" -> "plus"
p.55 L.3: "information theoretically" -> "for information theoretic reasons"
p.55 L.11: "I've" -> "I have"
p.55 L.19: "cited." -> "cited it."

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

p.57 L.1: "matter and is noted in Appendix H. In any case," -> "matter, and as noted in Appendix I in any case"
p.57 L.2: "support the" -> "support a"
p.57 L.4: "transfers and file sharing services." -> "transfers to file sharing services in particular.'"
p.57 L.5: "In particular, that's" -> "That's"
p.58 L.2: "material" -> "materials"
p.58 L.2: ████████████████████████████████████████
p.58 L.10: "list" -> "a list"
p.63 L.19: "reliable" -> "a reliable"
p.63 L.23: "there're" -> "there are"
p.64 L.2: "and impossible, probably impossible," -> "or impossible, and probably impossible,"
p.65 L.15: "burn convention" -> "Berne Convention"
p.66 L.23: "have" -> "have to have"
p.67 L.17: "would" -> "will"
p.68 L.4: "service" -> "Internet service"
p.68 L.15: "consumer-generated" -> "consumer user-generated"
p.68 L.24-25: "two documents, that the two contractual documents that the user" -> "two documents that the--two contractual documents, that the user"

████████████████████████████████████

p.70 L.14: "service" -> "of service"

Errata Page 2 of 5                                              Witness intials: ████

p.78 L.3: "'reliability,' with" -> "'reliability' is with"
p.78 L.10: "I'm assuming" -> "I assume"
p.78 L15: "of a" -> "for"
p.78 L.15-16: "correct. [par] What we" -> "correct, what we"

p.85 L.2: "as -- and" -> "as, and"
p.85 L.3: "as" -> "as,"
p.90 L.9: "as the one" -> "as one"
p.90 L.10: "answered" -> "answer"
p.90 L.22: "that" -> "as"
p.90 L.22: "report" -> "report,"
p.90 L.23: "there" -> "they're"
p.91 L.7.: "dispassionately." -> "and dispassionately."
p.91 L.11" "report" -> "report,"
p.94 L.2: "is for" -> "is: 'For"
p.94 L.3: "of those" -> "of"
p.94 L.4: "file sharing services server, this is 69, may" -> "file sharing service's server' -- this is 69 -- 'may"
p.94 L.7: "compliant computers connecting to it." -> "client computers connecting to it.' "
p.94 L.24: "server, at" -> "server at"
p.94 L.25: "instance" -> "instant"
p.95 L.15: "things.  There" -> "things -- there"
p.96 L.18: "IPV for" -> "IPv4"
p.97 L.14: "Certain, MapQuest" -> "certain -- MapQuest"
p.97 L.15: "company, is" -> "company -- is"
p.97 L.16: "from" -> "in"
p.97 L.19: "technical" -> "technically"
p.98 L.1: "can trivially" -> "trivially can"
p.98 L.4: "outline" -> "outlined"
p.99 L.12: "intent.  An induced intent" -> "intent, an induced intent, "
p.99 L.15: "elicit" -> "illicit"

Witness intials:

p.125 L.8-9: "available. [par] One hopes," -> "available -- one hopes,"
p.125 L.22: "information theoretic" -> "information-theoretic"
p.130 L.22: "understanding. Similarly," -> "understanding, similarly,"
p.131 L.22: "is yes, when that's possible." -> "is, 'Yes when that's possible.' "
p.132 L.3: "information theoretic" -> "information-theoretic"
p. 133 L.18-19: "information, theoretic" -> "information-theoretic"
p.139 L.21: "information theoretic" -> "information-theoretic"
p.143 L.17: "small and feeling that it's a" -> "small 'n', treating it as a"
p.159 L.8: "protection" -> "protections"
p.161 L.2: "instance" -> "instant"
p.166 L.11: "the reason" -> "reasoned"
p.186 L.1: "justified?" -> "justified."
p.191 L.4: "the fingerprint" -> "the -- 'fingerprint' "
p.192 L.16: "plaintiff's" -> "plaintiffs"

███████████████████████████████████████

p.200 L.25: "files, that" -> "files. That"
p.201 L.5: "that we're true" -> "it were true"
p.201 L.9-10: "servers, that" -> "servers. That"
p.209 L.22-23: "effect. [par] First," -> "effect -- first,"
p.210 L.22: "effect of" -> "effective"
p.212. L.2: "at, then" -> "at -- then"
p.215 L.15: "argument, if" "argument -- if"
p.215 L.16: "assets, and we know that just" -> "assets and we know that, just"
p.219 L.22: "one's" -> "ones"
p.220 L.13: "fact" -> "facts"
p.220 L.14 "that is produced during discovery that" -> " -- that is, produced during discovery -- that"
p.232 L.18: "network detached storage" -> "network-attached storage"
p.232 L.19: "de-duplications." -> "de-duplication."
p.233 L.7: "necessary" -> "necessarily"
p.233 L.10: strike "and"
p.235 L.25: "techniques first." -> "techniques, first."
p.236 L.18: "optimization -- for business optimization" -> "optimization, for business optimization, "
p.236 L.21: "satisfy -- let's call it the" -> "satisfy, let's call it, the"
p.238 L.4: "Oh, yes." -> "Yes."
p.239 L.20: "implemented with" -> "implemented -- with"
p.239 L.22: "requests that" -> "requests -- that"
p.240 L.11: "place, that" -> "place; that"
p.240 L.13: "physical, an asset -- file" -> "physical -- an asset, a file"
p.240 L.14: "asset -- that" -> "asset; that"
p.240 L.15: "file, and through one that has web" -> "file; and through one -- that is, web"
p.240 L.16: "you, names for it, and" -> "you -> names for it; and"
p.240 L.17: "link, and" -> "link; and"
p.240 L.20: "file; is" -> "file. Is"
p.242 L.20: "asking exactly, the Dax" -> "asking, exactly, the DAX"

Witness intials

p.252 L.8: "is -- and" -> "is, and"
p.252 L.9: "is an" -> "is, an"
p.253 L.17: "about, so I" -> "about -- so, I"
p.254 L.13: "say and" -> "say, and"
p.255 L.7: "enforced.  It's" -> "enforced; it's"
p.255 L.8: "providers that -- it" -> "providers; that it"
p.256 L.8: "of technical or" -> "of 'technical' or"
p.256 L.9" "performance or technical operations involves" -> " 'performance' or 'technical operations' involves"
p.256 L.18: "burden we've" -> "burden. We've"
p.278 L.25: "as we're all in this together, and" -> "as, 'We're all in this together', and"
p.282 L.2: "is the number" -> "is it's a number"
p.282 L.20: "inde" -> "indie"
p.283 L.1: "damages that" -> "damages, that"
p.285 L.20: "industries and have been for at least a decade" -> "industries, and have been for at least a decade, "

–        END OF ERRATA      –

Errata Page 5 of 5

Witness intials:

Page 290

1                    CERTIFICATE OF REPORTER

2

3

4          I, ANDREA M. IGNACIO HOWARD, hereby certify

5    that the witness in the foregoing deposition was by me

6    duly sworn to tell the truth, the whole truth, and

7    nothing but the truth in the within-entitled cause;

8

9          That said deposition was taken in shorthand

10   by me, a Certified Shorthand Reporter of the State of

11   California, and was thereafter transcribed into

12   typewriting, and that the foregoing transcript

13   constitutes a full, true and correct report of said

14   deposition and of the proceedings which took place;

15

16         That I am a disinterested person to the said

17   action.

18

19         IN WITNESS WHEREOF, I have hereunto set my

20   hand this 21st day of December 2011.

21

22   _____

23   ANDREA M. IGNACIO HOWARD, RPR, CCRR, CLR, CSR No. 9830

24

25