# EXHIBIT "A"

# PUBLIC VERSION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

  *Defendants*.
                                                     /

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,.

  *Counterdefendant*.
                                                     /

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE THE DECLARATION OF JENNIFER V.
YEH FILED IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT ANTON TITOV'S MOTION FOR SUMMARY
JUDGMENT AND DEFENDANT HOTFILE CORPORATION'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

26501\3016392.2

**FILED UNDER SEAL**                                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

## CITATION LEGEND

1. "PSUF" shall refer to specific paragraph numbers of Plaintiffs' Statement of Uncontroverted Facts.

2. "DSUF" shall refer to specific paragraph numbers of Statement of Undisputed Material Facts In Support of Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

3. "TSUF" shall refer to specific paragraph numbers of Statement of Undisputed Material Facts In Support of Motion of Anton Titov's Motion for Summary Judgment.

4. "DRSF" shall refer to specific paragraph numbers of the Statement of Facts of Defendants Hotfile Corporation and Anton Titov In Opposition to Plaintiffs' Statement of Uncontroverted Facts and Defendants' Statement of Additional Material Facts.

5. "Foster Decl." shall refer to the declaration of Dr. Ian Foster in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012.

6. "Yeh Decl." shall refer to the declaration of Jennifer V. Yeh in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012.

7. "Titov Decl." shall refer to the declaration of Anton Titov in support of Defendants' Motion for Summary Judgment.

8. "Titov Opp. Decl." shall refer to the declaration of Anton Titov in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

9. "Leibnitz Decl." shall refer to the declaration of Andrew Leibnitz in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

10. "Gupta Decl." shall refer to the declaration of Deepak Gupta in support of Defendants' Motion for Summary Judgment.

11. "Schoenberg Decl." shall refer to the declaration of Anthony Schoenberg in support of Anton Titov's Motion for Summary Judgment.

12. "Levy Decl." shall refer to the declaration of Dr. Daniel S. Levy in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

13. "Cromarty Decl." shall refer to the declaration of Dr. Andrew Cromarty in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

**FILED UNDER SEAL**                      CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

14. "Boyle Decl." shall refer to the declaration of Dr. James Boyle in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.

15. "Leibnitz *Ex.* __," shall refer to exhibits attached to the Leibnitz Declaration.

16. "Yeh *Ex.* __," shall refer to exhibits attached to the Yeh Declaration.

17. "Gupta *Ex.* __," shall refer to exhibits attached to the Gupta Declaration.

18. "Schoenberg *Ex.* __," shall refer to exhibits attached to the Schoenberg Declaration.

19. "Boyle *Ex.* __," shall refer to exhibits attached to the Boyle Declaration.

20. "Thamkul Decl." shall refer to the declaration of Janel Thamkul in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

21. "Thamkul *Ex.* __," shall refer to exhibits attached to the Thamkul Declaration.

22. "Titov Reply Decl." shall refer to the declaration of Anton Titov in support of Defendants' Reply in support of their Motion for Partial Summary Judgment.

23. "DMSJ" shall refer to the Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

24. "DOPMSJ" shall refer to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov.

25. "PODMSJ" shall refer to Plaintiffs' Opposition to the Motion of Defendants Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

26. "PMSJ" shall refer to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov.

27. "PCFDMSJ" shall refer to Plaintiffs' Counterstatement of Material Facts in Opposition to Defendants' Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. ARGUMENT .................................................................................................................. 1
    A. Content Owners' E-mails Regarding Expeditious Takedowns Lack Admissibility ........................................................................................................ 1
        1. Unproven Allegations In Another Litigation Lack Any Relevance .......... 5
    B. The Self-Serving And Unsubstantiated Infringement Conclusions Of Plaintiffs' Outside Counsel Are Not Evidence ...................................................... 5
    C. Press Clippings Regarding Other Cyberlockers Lack Any Admissibility.............. 7
    D. The Bulgarian Translations Lack Admissibility .................................................... 8
III. CONCLUSION ............................................................................................................. 10

**FILED UNDER SEAL**                          CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

## I. INTRODUCTION

Plaintiffs treat the Federal Rules of Evidence like guidelines. Plaintiffs cannot properly proffer "takedown" e-mails as business records in the absence of any foundational testimony whatsoever, much less in the absence of relevance to the works-in-suit. Plaintiffs cannot properly seek admission of their litigation counsel's unsubstantiated and self-serving legal conclusions regarding Hotfile's infringement in the guise of a summary of voluminous records. Press clippings regarding actions by a half-dozen non-party websites after the Megaupload indictment remain inadmissible hearsay, lack any demonstrated relevance to Hotfile's actions, and unfairly seek to associate Hotfile with a criminal defendant. Additionally, Plaintiffs cannot properly proffer translations without identifying the translator, providing foundational testimony regarding his or her qualifications, and providing a certification of authenticity from the translator – as opposed to the translator's supervisor, who lacks any demonstrated personal knowledge. These are not recommended requirements to be disregarded so long as Plaintiffs project sufficient hubris in making assurances that they *will* obey the Rules at some later point. Because the exhibits to Ms. Yeh's declaration lack admissibility, they should be stricken.

## II. ARGUMENT

### A. Content Owners' E-mails Regarding Expeditious Takedowns Lack Admissibility

Plaintiffs proffer the e-mails in Exhibits 141-142 and 147-150 as evidence that Hotfile did not respond within 48 hours in relation to 0.02% of the takedown notices it ever received. PCFDMSJ 17. They assert that these e-mails are not hearsay because Plaintiffs could introduce the substance of these e-mails through testimony of Plaintiffs' representatives at trial, and the Federal Rules of Civil Procedure only provide for precluding evidence which "cannot be presented in a form that would be admissible." Pltfs.' Mem. Opp. Defts.' Second Mot. Strike Decl. Jennifer V. Yeh ("Opp.") at 2 (citing Fed. R. Civ. P. 56(c)(2)) ("plaintiffs could, and as necessary would, call witnesses who have personal knowledge of the takedown notices sent by the plaintiffs").

Plaintiffs evidently concede the inadmissibility of Exhibit 142. That exhibit solely contains takedown notices from nonparties such as Dallas Spanks Hard Productions, The Collier Company, and the Italian Videogames Software Publishers Association. *See* Yeh Ex. 142. Because Plaintiffs' representatives cannot now (or ever) testify to any aspect of Exhibit 142, the

1

**FILED UNDER SEAL**  CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

exhibit lacks admissibility even under Plaintiffs' argument. Opp. at 2.

In any event, Plaintiffs *cannot* proffer evidence in any admissible form that Hotfile failed to act expeditiously regarding the putative takedown requests of Exhibits 141-142 and 147-150. Hotfile served an interrogatory on Plaintiffs during discovery asking whether Plaintiffs contended that Hotfile failed to act expeditiously to take down any works-in-suit. Decl. Andrew Leibnitz Supp. Defts.' Reply Supp. Mot. Strike Decl. Jennifer V. Yeh Supp. Pltfs.' Opp. Defts.' Mot. Summ. J. ("Leibnitz Decl"), Ex. 1 (Response to Hotfile's Interrogatory No. 20). Plaintiffs identified no belated takedowns. *Id.*[1] Plaintiffs never updated their interrogatory response. *Id.* Accordingly, Plaintiffs cannot now purport to identify examples of belated takedowns. *See Reese v. Herbert*, 527 F.3d 1253, 1270 n.28 (11th Cir. 2008); (at summary judgment, party may not rely on declaration that "merely contradicts . . . previously given clear testimony").

Plaintiffs also cannot offer this evidence in any admissible form at trial because it lacks any relevance. The DMCA requires Hotfile to expeditiously take down the works-in-suit, not some infinitesimal fraction of unaccused files. The safe harbor applies to stored material so long as there is expeditious takedown of *that material* when notice is received. 17 U.S.C. § 512(c) (requiring expeditious takedown of "the material" for which safe harbor is sought – not any hosted file for which notices may have been received); *see UMG Recordings v. Veoh*, 665 F. Supp. 2d 1099, 1104, 1109, 1118 (C.D. Cal. 2009) (granting safe harbor for "approximately 7,800 allegedly infringing video files" which were taken down pursuant to notice, even though plaintiff alleged "actual knowledge of other infringing videos"), *aff'd UMG Recordings v. Shelter Cap. Partners*, 667 F.3d 1022, 1040 (9th Cir. 2011) (even if a third-party e-mail reporting an infringer constituted "red flag" knowledge, it would not prevent safe harbor protection, because "UMG has not specifically alleged that . . . the content at issue was owned by UMG."); *Viacom Int'l, Inc. v. YouTube, Inc.*, Case No. 10-3270, Docket No. 516-1 at 15-19 (2d Cir. April 5, 2012) (Leibnitz Decl., Ex. 2) ("By definition, *only the current clips-in-suit are at issue* in this litigation" on summary judgment) (emphasis added).[2] Any other rule would lead to the absurd

---

[1] *See e.g.*, Deposition Of Disney Enterprises, Inc. Pursuant To Rule 30(b)(6) at 48:20-25 ("Q. Has Hotfile ever not taken down a file after receiving a takedown notice from Disney? THE WITNESS: I don't think I have data that would enable me to answer that question.") (Leibnitz Decl., Ex. 3) (objection omitted).

[2] While that Second Circuit decision from last week reversed the YouTube's summary judgment as "premature" (p.19) and remanded for further fact-finding by the district court, on "the most

**FILED UNDER SEAL**                                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

result that failure to expeditiously take down even one third-party's file pursuant to notice would deprive a service provider of safe harbor as to any files for all time. *See Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 313 (S.D.N.Y. 2011) (rejecting content owner arguments that produce "absurd results").

In addition to being irrelevant and inadmissible to contradict Plaintiffs' interrogatory response, Exhibits 141-142 and 147-150 also fail to qualify for the "business records" exception to the hearsay rule. A putative business record lacks admissibility absent testimony "verif[ying] the record-keeping procedure of ***the document in question*** and confirm[ing] that ***such document*** is created as part of normal business practice." *United States v. Dickerson*, 248 F.3d 1036, 1048 (11th Cir. 2001) (emphasis added). Here, Plaintiffs offer no testimony whatsoever the specific exhibits at issue. Yeh Decl., Exs. A-D. Generalized testimony about a corporation's practices in no way establishes admissibility. *Dickerson*, 248 F.3d at 1048. When confronted with the correspondence at issue, ***Plaintiffs disavowed knowledge***. *E.g.*, Disney Dep. at 70:13-14 (referring to opening pages of Exhibit 141, "I did not send the notice, and I can't recall this exact notice") (Leibnitz Decl., Ex. 3). Plaintiffs cannot proffer documents as "business records" that their designated witnesses do not recall. *United States v. Shardar*, 850 F.2d 1457, 1463 (11th Cir. 1988).

Nonetheless, Plaintiffs urge the Court to assume that they could establish the foundation for these e-mails as "business records" if they tried. *See* Opp. at 3 (arguing for admissibility of documents despite absence of foundational testimony where "it appears on the face of the document" that business records exception could be met). Plaintiffs ignore binding authority. To be considered at the summary judgment stage in a copyright case, a business record "must be supported by testimony of a custodian or other qualified witness" qualifying the record for admission under the hearsay exception. *McCaskill v. Ray*, Nos. 07-12896, 07-13724, 2008 WL 2222056, at *1 (11th Cir. May 30, 2008). Consideration of putative business records at summary judgment over objection in the absence of foundation is reversible error. *Id.* at *5; *see Campbell*

---

important question on appeal," the court agreed with Hotfile and the prevailing view that "knowledge" – both actual and red flag – requires knowledge of specific instances of infringement (pp. 15-19). It also rejected the argument advanced by the Studios here that "control or benefit" is co-extensive with common law vicarious liability and that it requires nothing more than a showing that defendants have the ability to block access to their site (pp. 26-28) and held "that a finding of safe harbor application necessarily protects a defendant from all affirmative claims for monetary relief" (p.33).

3

**FILED UNDER SEAL**                           CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

*v. Coca-Cola Enterprises, Inc.*, No. 11-C-1674, 2012 WL 182211, at *3-4 (N.D. Ill. Jan. 18, 2012) ("To establish a proper foundation at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial"). Here, Plaintiffs proffer no evidence regarding Exhibits 141-142 and 147-150, and instead rely on testimony that does little more than establish that – as a general matter – Plaintiffs' antipiracy efforts have included takedown notices to Hotfile. *E.g.*, Yeh Exs. B-D. This does not even approximate the requisite showing.[3]

Even if the exhibits were otherwise admissible – which is not the case – the e-mails would still comprise inadmissible legal conclusions. Mot. at 2. Plaintiffs do not dispute that each of the e-mails repeatedly makes accusations of copyright infringement. *E.g.*, Ex. 141 at DISNEY002835 (purporting to "document[] infringement" at Hotfile and demanding removal of "infringing content"). However, "infringement" is the ultimate legal issue in the case. *See Degelman Indus. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346T, 2011 WL 6752565, at *4 (W.D.N.Y. Dec. 23, 2011) (striking affidavit containing legal conclusions). Moreover, Plaintiffs cannot possibly purport to identify "infringement" in the absence of any information regarding the number of downloads of the accused files, since files with zero or one downloads are likely "fair use" and not infringing. *See* Boyle Decl. ¶ 11. Nonetheless, Plaintiffs assert that "[t]he truth of the statements in the takedown notices are admissible on summary judgment." Opp. at 1. Having not even attempted to cite any authority for admitting these legal conclusions, Exhibits 141-142 and 147-150 should be excluded.

Regarding Hotfile's motion to strike Plaintiffs' exhibits due to their incompleteness, Plaintiffs do not deny the incompleteness of their exhibits – despite Ms. Yeh's attestation under penalty of perjury that the exhibits were "true and correct." Mot. at 2-3. Rather, Plaintiffs assert that ***Defendants*** must remediate Plaintiffs' improper submissions. Opp. at 5. This is not the law. *E.g.*, *Ocampo v. Laboratory Corp.*, No. Civ. SA04CA538-FB, 2005 WL 2708790, at *5 (W.D.

---

[3] The Federal Rules of Evidence also require Plaintiffs to demonstrate that, for any putative business record, "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). Here, Hotfile has demonstrated in detail in its Counterclaim that takedown notices from at least one of the Plaintiffs lack any reliability whatsoever. DMSJ at 4-5. Moreover, if the "re-notices" of Exhibits 141-142 and 147-150 were indeed trustworthy, Plaintiffs should be able to produce the original takedown notices supposedly giving rise to these exhibits – a task which Plaintiffs do not appear able to do.

4

**FILED UNDER SEAL**　　　　　　　　　　　CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

Tex. Sept. 6, 2005) (striking exhibit submitted in opposition to motion for summary judgment due to incompleteness). Having scorned every opportunity to supply the Court with complete e-mails, Plaintiffs should have their exhibits stricken.

### 1.　Unproven Allegations In Another Litigation Lack Any Relevance

Plaintiffs cite Exhibit 146, a reply brief filed against Hotfile in another action, for the proposition that "defendants were well-aware of copyright owner complaints about their [repeat infringer] policy long before this litigation." Opp. at 6. However, the reply brief nowhere mentions Hotfile's repeat infringer policy. Yeh Ex. 146 at 23-24. Instead, the reply brief identifies *one* takedown notice allegedly provided to Hotfile regarding postings by GXcandals.com and *one* takedown notice regarding Gayup.org[4] – and then asserts that these alleged affiliates and their owners should be terminated. *Id.* By definition, one notice does not make a repeat infringer. In any event, these allegations by one pornographer in 2010 have no relevance to any claim or defense in this litigation: unproven allegations neither make it more or less likely that Hotfile implemented a DMCA-compliant repeat infringer policy, which is tested against an "objective reasonableness" standard and not against the subjective perception of one prior content owner. DMSJ at 18-19; DOPMSJ at 10-13 (collecting cases). Because the asserted "non-hearsay" purpose of Exhibit 146 lacks any relevance, the exhibit should be stricken.

### B.　The Self-Serving And Unsubstantiated Infringement Conclusions Of Plaintiffs' Outside Counsel Are Not Evidence

Plaintiffs assert that Exhibit 144 is admissible to "prove the content of voluminous writings … that cannot be conveniently examined in court." Opp. at 6 (citing Fed. R. Evid. 1006). As a threshold matter, the thirty-eight single-page e-mails referenced in Exhibit 144 are hardly too voluminous to conveniently examine in court. This fact alone demonstrates that

---

[4] It is undisputed that a single takedown notice referencing multiple works counts as a single takedown notice. *Viacom Int., Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 527-28 (S.D.N.Y. 2010) (strikes policy reasonable where "YouTube counts as only one strike against a user both (1) a single DMCA take down notice identifying multiple videos uploaded by the user, and (2) multiple take down notices identifying videos uploaded by the user received by YouTube within a two-hour period…"), *aff'd in part and rev'd in part, Viacom Int., Inc. v. YouTube, Inc.*, 10-3270, 10-3342, [Docket No. 516-1] at 32-33 (2d Cir. April 5, 2012); *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F. Supp. 2d 1099, 1116 ("UMG also argues that Veoh does not meet this requirement because it does not necessarily terminate users who upload multiple videos that are identified in a single takedown notice…The Court finds that this policy satisfies section 512(i)'s requirements…").

5

**FILED UNDER SEAL**                                         CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

Exhibit 144 was created for purposes of legal argument and not factual summary – and thus deprives the exhibit of admissibility under Rule 1006. In any event, under binding appellate authority, Plaintiffs cannot insert *any* argument into a putative summary of documents. *See Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159-60 (11th Cir. 2004) ("because summaries are elevated under Rule 1006 to the position of evidence, care must be taken to omit argumentative matter in their preparation"). Likewise, injection of personal observation is forbidden in a document purporting to summarize evidence. *See White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1070 (W.D. Mo. 1985) ("a Rule 1006 summary cannot properly incorporate a witness' personal knowledge"). Here, Ms. Yeh sets forth Bates numbers of e-mails, dates of e-mails, URLs mentioned in the e-mails – and her unsubstantiated legal conclusion as to the "Plaintiff Work Infringed." Yeh Ex. 144. Because this information nowhere exists in the documents supposedly being "summarized," Exhibit 144 is not admissible under Rule 1006.

Independent of the exhibit's inadmissibility under Rule 1006, Exhibit 144 remains inadmissible as the self-serving legal opinions of Plaintiffs' legal counsel. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir.1990) (even a qualified expert witness cannot testify regarding legal implications of conduct). While Plaintiffs cite three cases for the proposition that "identification of popular, copyrighted entertainment content" does not require legal training, Opp. at 7, Ms. Yeh does not merely identify works ***but opines about the infringement status*** of files supposedly stored at Hotfile. Yeh Ex. 144 (column entitled "Plaintiff Work Infringed"). Infringement is the ultimate legal question in this case. Infringement requires analysis of the thorny legal doctrine of fair use. Infringement is not a *fact* which Plaintiffs' counsel can admissibly slip into a compilation of evidence.

Yet another independent reason to strike Exhibit 144 inheres in the exhibit's embodiment of improper expert testimony. Plaintiffs elsewhere hired a copyright lawyer, Mr. Scott Zebrak, to opine about the infringement status of 1,750 files stored on Hotfile in January 2011. Zebrak Decl. ¶¶ 3-4. He disclosed a report under the expert disclosure requirements of Rule 26(a) of the Federal Rules of Civil Procedure, submitted his qualifications for review, and was deposed twice by Hotfile. *See id.* In contrast, Ms. Yeh neither disclosed a report, described her qualifications, nor gave any deposition testimony. She offered no explanation of the legal standard applied, the identity or reliability of "[p]ersons under [her] supervision" upon whom she relied, the factors

6

considered, the scope of the reviewers' analysis, or anything other than her bare legal conclusion. Yeh Opp. Decl. ¶ 26. Plaintiffs cannot simply discard Rule 26(a) at their convenience; they cannot apply Rule 26(a) to 1,750 files stored on Hotfile and ignore it as to dozens of other identically-situated files.

In any event, even if Ms. Yeh *had* been disclosed as an expert, she could not testify as to infringement of files based simply on their title. Plaintiffs recently moved to strike testimony from Hotfile's copyright expert, Professor James Boyle, on grounds that he did not review certain content files and thus had no basis for any determination of non-infringement. Pltfs.' Mot. Strike Decl. Boyle, Cromarty, Titov at 5. While Professor Boyle did in fact review content files, Ms. Yeh made no such effort *by her own admission*. See Yeh Opp. Decl. ¶ 26 (stating that "[p]ersons under her supervision" reviewed "user communications" only). ███████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████ ██ Plaintiffs cannot credibly proffer legal opinion testimony from their litigation counsel regarding files that they did not even attempt to review.

Plaintiffs also make no effort to contest that Ms. Yeh's reporting of the conclusions of "[p]ersons under [her] supervision" embodies inadmissible hearsay. Mot. at 4; Opp. at 6-8; *see Peat*, 378 F.3d at 1160 (11th Cir. 2004) (forbidding "admission of summaries of the testimony of out-of-court witnesses because such testimony would be hearsay"). Ms. Yeh does *not* testify that the conclusions are her own, or even that she reviewed the thirty-eight subject e-mails. Yeh Opp. Decl. ¶ 26. Because she reports the conclusions of others, Exhibit 144 remains hearsay.

Likewise, Plaintiffs make no effort to dispute that they did not disclose Exhibit 144 (or the conclusions therein) during discovery despite their intent to use the information in support of their case at summary judgment. Mot. at 4; Opp. at 6-8. Accordingly, the Court should exclude the exhibit a discovery sanction. Fed. R. Civ. P. 37(c)(1).

### C. Press Clippings Regarding Other Cyberlockers Lack Any Admissibility

In support of their assertion that Hotfile implemented further measures against copyright infringement in February 2012 solely to diminish any risk of indictment, Plaintiffs submit four news articles purporting to show reactions in the marketplace to the Megaupload indictment. PODMSJ at 4 n.2; Yeh Ex. 145 ("File Sharing Sites Scatter After Megaupload's Shutdown").

**FILED UNDER SEAL**                              CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

This is inadmissible hearsay. Fed. R. Evid. 802. These articles could only suggest that Hotfile acted in response to the Megaupload indictment if the matter asserted in the articles is true – *i.e.*, that a half-dozen websites scaled back their operations after the indictment of Megaupload. The mere fact that these changes (whether or not true) were ***reported*** proves nothing.[5] Indeed, these reports would lack any relevance even if a scintilla of evidence existed that Hotfile had ever seen these out-of-court statements.

Even if these reports were admissible for their truth -- which is not the case – they would lack any relevance. In the articles, exactly one website (BT Junkie) stated that it modulated its operations in response to the Megaupload indictment. Yeh Ex. 145 (CNN article). In contrast, RapidShare -- a competitor upon which Hotfile explicitly modeled itself – changed ***none*** of its practices following the indictment. *Id.*; Titov Dep. at 26:17-27:1 (Leibnitz Decl., Ex. 5). No evidence exists that Hotfile resembles BT Junkie more closely than RapidShare. In any event, the motives of a half-dozen non-parties ***out of the more than 1,400 file hosters on the internet*** demonstrate nothing about Hotfile, and certainly not an "industry-wide phenomenon." Opp. at 9; *see* www.filehostwatch.com (listing 1,448 file hosters and cyberlockers in database).

Plaintiffs seek every opportunity to tar Hotfile by association with criminally-indicted Megaupload. This is improper. Fed. R. Evid. 403. Hotfile is entitled to a trial on its merits. Plaintiffs should at least attempt to prove their own case without attempting to leverage any unfair prejudice against criminal defendants. While Plaintiffs emphasize that exclusions under Rule 403 often occur at trial rather than summary judgment, Opp. at 9, no reason for delay exists here, where invocations of Megaupload serve no legitimate purpose. *See Utility Control Corp. v. Prince William Constr. Co.*, 558 F.2d 716, 721 (4th Cir. 1977) (finding that trial court abused its

---

[5] Plaintiffs erroneously rely on three cases where courts took judicial notice of articles for the simple purpose of proving that those statements existed. In *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006), the court took judicial notice of newspaper articles because "a plaintiff in a securities fraud case is charged with knowledge of publicly available news articles." *Id.* at 400. Hotfile's case is neither a securities case nor a class action, and no similar provision regarding news articles exists in copyright law. Likewise, regarding *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954 (9th Cir. 2010), the mere fact of historical statements in newspapers (irrespective of truth) has no bearing here, unlike the statements relating to Dutch art stolen by Nazis. *Id.* at 960. The same is true of *Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x 873, 879 (11th Cir 2007), where the court took judicial notice of film reviews not for the truth of the reviews but rather as proof of the existence of the reviews in national publications. In the instant case, there mere fact that four "news" articles exist proves nothing.

**FILED UNDER SEAL**            CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

discretion at summary judgment in contract action by failing to exclude under Rule 403 evidence of unrelated transaction).

### D. The Bulgarian Translations Lack Admissibility

"An interpreter must be qualified and must give an oath or affirmation to make a true translation." Fed. R. Evid. 604. The translator must be identified by name. *Gonzalez v. Lopez*, No. 3:07-cv-593-M (BH), 2008 WL 323150, at *5-6 (N.D. Tex. Jan. 23 2008). The translator must make the certification – not his or her supervisor. Fed. R. Evid. 602. The translator must be qualified to testify in the same way as any other expert witness. *U.S. v. Bailon-Santana*, 429 F.3d 1258 1261 (9th Cir. 2005). A party cannot properly proffer a translation "[w]ithout providing affidavits or testimony regarding the competency of the translators for the translations it submitted." *M&Z Trading Corp. v. Hecny Group*, No. 01-55121, 41 Fed. App'x 141, 2002 WL 1492018, at *1 (9th Cir. 2002).

Here – even after the opportunity to cure their failings afforded by this motion – Plaintiffs do not even bother to identify their translator by name. Yeh Decl. Exs. F-H. The "Linguist Profile" provided for the first time with their Opposition merely identifies the supposed translator by the code "PHON0001." *Id.* This alone warrants striking the translations. *Diaz v. Carballo*, No. 3:05-cv-2084-G, 2007 WL 2984663, at *3-4 (N.D. Tex. Oct. 12, 2007).

Additionally, Plaintiffs' translator does not certify the translations – his or her supervisor does. Yeh Decl. Exs. F-H. Although supervisor Ann Marie Hovey provides a notarized statement that, "to the best of [her] knowledge and belief," the translation is "true and accurate" from "Bulgarian into English," no evidence exists that Ms. Hovey has any familiarity with the Bulgarian language whatsoever. *Id.* The Rule requires that the "interpreter . . . give an oath or affirmation" so that a witness with personal knowledge attests to the operative facts. Fed. R. Evid. 604, 602. Testimony from a supervisor lacking any evident knowledge of the translated language accomplishes nothing.[6]

---

[6] Plaintiffs cite three cases in which courts admitted into evidence documents translated by Plaintiffs' translation vendor, Transperfect Translations. Opp. at 10 n.8 (citing *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 597 F. Supp. 2d 97, 109 n.21 (D. Me. 2009); *Carbomedics, Inc. v. ATS Med., Inc.*, No. 06-cv-4601, 2008 U.S. Dist. Lexis 106636, at *25-27 (D. Minn. Apr. 16, 2008); *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 441 n.19 (D.N.J. 1999)). None of those cases addressed the situation where a supervisor provided the certification of authenticity for documents written in a language the supervisor did not understand. While Plaintiffs assert that this is "Transperfect's standard practice," they

**FILED UNDER SEAL**                                    CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

Plaintiffs also fail to provide affidavits or testimony qualifying their unnamed translator to perform his or her task. *M&Z Trading Corp. v. Hecny Group*, No. 01-55121, 41 Fed. App'x 141, 2002 WL 1492018, at *1 (9th Cir. 2002). While Plaintiffs proffer an unsworn printout suggesting that the translator received an M.A. in English Philology from Veliko Tarnovo University in Bulgaria eight years ago and that he or she previously translated an unknown number of documents from unnamed languages on behalf of "various clients," this in no way qualifies the translator to testify as an expert on translating business e-mails for Bulgarian technology companies. Yeh Decl. Exs. F-H. Here, Hotfile has received no testimony of any kind from Plaintiffs' proffered expert regarding his or her qualifications.

Plaintiffs argue that Hotfile waived its right to object to translations because Hotfile did not offer translations of its own, citing three criminal cases from outside the Eleventh Circuit. Opp. at 10 (citing *United States v. Dadanovic*, Cr. No. 09-63-ART, 2010 U.S. Dist. LEXIS 95411, at *3-7 (E.D. Ky. Sept. 13, 2010); *United States v. Liddell*, 64 F. App'x 958, 963 (6th Cir. 2003); *United States v. Briscoe*, 896 F.2d 1476, 1492 (7th Cir. 1990)). However, in criminal cases, prosecutors are required to disclose certain evidence before trial. Fed. R. Crim. P. 16, 26.2; 18 U.S.C. § 3500; *Brady v. Maryland*, 373 U.S. 83 (1963). Here, Hotfile never received all of these translations until Plaintiffs opposed Hotfile's motion for summary judgment. Hotfile can hardly object to translations it has never seen before. Thus, in cases such as *Dadanovic*, where the court actually ordered the parties to produce competing translations and one side failed to do so, that side waived its objections. 2010 U.S. Dist. LEXIS 95411 at *3-7. It is demonstrably ***not*** the law in the Eleventh Circuit that one side may obtain admission into evidence of expert testimony lacking foundation simply because the other side fails to refute the substance of that expert testimony. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237, 1255 (11th Cir. 2005) (finding it an abuse of discretion for trial court to admit expert testimony lacking proper foundation based on opposing party's failure to "produce[] competing testimony" from its own experts). Accordingly, Plaintiffs' translations should be stricken.

### III. <u>CONCLUSION</u>

Plaintiffs' evidence is inadmissible on summary judgment; the motion should be granted.

---

neither proffer evidence in support of that statement nor suggest that Transperfect's purported practice comports with the Federal Rules of Evidence.

FILED UNDER SEAL                                        CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DATED: April 9, 2012          Respectfully submitted,

*/s/ Janet T. Munn*
Janet T. Munn, Esq. Fla. Bar No. 501281
Email: jmunn@rascoklock.com
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102

And

*/s/ Roderick M. Thompson by Janet T. Munn*
Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email: rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email: aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email: tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email: dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email: jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

And

Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone: 617.928.1800
Telecopy: 617.928.1802

*Counsel for Defendants Hotfile Corporation
and Anton Titov*

FILED UNDER SEAL                                           CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2012, the foregoing was conventionally filed and served on all counsel of record identified below via e-mail and by First Class U.S. Mail:

Karen L. Stetson, Esq., Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL  33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC  20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA  91403-5885
Telephone: 818.935.5812

By: _____
Janet T. Munn