UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

FILED by _RAL_ D.C.

MAY 0 1 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/


**PLAINTFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE THE REPLY DECLARATION OF DR. IAN FOSTER**


**[CONFIDENTIAL]**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

CITATION LEGEND ...................................................................................................... iv

BACKGROUND ................................................................................................................1

I.    DR. FOSTER'S DOWNLOAD COUNTS WERE CONSISTENT WITH PLAINTIFFS' DISCLOSURES.....................................................................................................3

        A.    Dr. Foster's Testimony Regarding Total Downloads Of Files In Suit Is Within The Scope Of Plaintiffs' Disclosures..........................................................4

        B.    Defendants Are Not Prejudiced By Their Own Data..............................................6

II.    THE DATA PRESENTED BY DR. FOSTER REPLIED TO AN ARGUMENT DEFENDANTS MADE FOR THE FIRST TIME IN THEIR OPPOSITION BRIEF........7

III.    DR. FOSTER'S METHODOLOGY RELIABLY COUNTS DOWNLOADS OF PLAINTIFFS' FILES. ......................................................................................................9

CONCLUSION.................................................................................................................12

# TABLE OF AUTHORITIES

CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ............................................. 11

*Allapattah Services, Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1335 (S.D. Fla. 1999), *aff'd*, 333 F.3d 1248 (11th Cir. 2003) ............................................................................................................. 10

*Bayway Refining Co. v. Oxygenated Marketing & Trading A.G.*, 215 F.3d 219 (2d Cir. 2000) ......................................................................................................................................................... 8

*Cary Oil Co. v. MG Refining & Marketing, Inc.*, No. 99 Civ. 1725 (VM), 2003 WL 1878246 (S.D.N.Y. Apr. 11, 2003) ................................................................................................ 5, 7

*First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777 (11th Cir. 2008) ...................... 9

*Fritz v. Consolidated Rail Corp.*, Civ. A. No. 90-7530, 1992 WL 96285 (E.D. Pa. April 23, 1992), *judgment aff'd*, 983 F.2d 1050 (3d Cir. 1992) (unpublished table decision) .......... 8

*Hammons v. Computer Programs & Systems, Inc. (CPSI)*, No. 05-0613-WS-C, 2006 WL 3627117 (S.D. Ala. Dec. 12, 2006) ................................................................................................ 8, 9

*Mead Johnson & Co. v. Barr Laboratories, Inc.*, 38 F. Supp. 2d 289 (S.D.N.Y. 1999) ................ 8

*Miles v. General Motors Corp.*, 262 F 3d 720 (8th Cir. 2001) ........................................................ 10

*OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344 (11th Cir. 2008) ...................... 3

*In re Prempro Products Liability Litigation.*, 514 F.3d 825 (8th Cir. 2008) .................................. 8

*Primrose Operating Co. v. National American Insurance Co.*, 382 F.3d 546 (5th Cir. 2004) .................................................................................................................................................. 6, 7

*Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333 (11th Cir. 2003) .. 9, 10, 12

*SEC v. Huff*, No. Civ. A. 08-60315, 2010 WL 228000 (S.D. Fla. Jan.13, 2010) ............................ 4

*Semtech Corp. v. Royal Insurance Co. of America*, No. CV 03-2460-GAF, 2005 WL 6192906 (C.D. Cal. Sept. 8, 2005) ................................................................................................. 7

*Stein v. Foamex Int'l, Inc.*, No. Civ. A. 00-2356, 2001 WL 936566 (E.D. Pa. Aug. 15, 2001) ......................................................................................................................................................... 6

*In re Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317, 2005 WL 5955699 (S.D. Fla. Feb. 2, 2005) ............................................................................................... 4, 7

*Thames v. City of Pensacola*, No. 303CV586/RV/MD, 2005 WL 1876175 (N.D. Fla. Aug. 1, 2005) ........................................................................................................................................ 5, 6

*In re Traylsol Products Liability Litigation*, No. 08-MD-01928, 2010 WL 4102247 (S.D. Fla. Sept. 10, 2010) ................................................................................................10

*Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487 (D. Del. 2005) ......................4, 5, 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(c)(1) ................................................................................................3

Fed. R. Civ. P. 26(a)(2)(B) ................................................................................................3, 4

17 U.S. C. § 504(c) ................................................................................................10

## CITATION LEGEND

1.      "Pls. MSJ" shall refer to the Motion and Memorandum of Law of Plaintiffs For
Summary Judgment, dated February 17, 2012, and available publicly at Docket No. 322.

2.      "Defs. Opp. to Pls. MSJ" shall refer to the Memorandum of Law of Defendants
Hotfile Corporation and Anton Titov Filed in Opposition to Plaintiffs' Motion for Summary
Judgment, dated March 7, 2012, and available publicly at Docket No. 394.

3.      "Pls. Reply" shall refer to the Reply Memorandum of Law in Support of
Plaintiffs' Motion for Summary Judgment, dated March 19, 2012, and available publicly at
Docket No. 425.

4.      "Foster Decl." shall refer to the declaration of Dr. Ian Foster in Support of
Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov,
dated February 17, 2012, and available publicly at Docket No. 325-17.

5.      "Foster Reply Decl." shall refer to the Reply Declaration of Dr. Ian Foster in
support of Plaintiffs' Motion for Summary Judgment, dated March 19, 2012, and available
publicly at Docket No. 426-8.

6.      "Schoenberg Ex. __" shall refer to exhibits attached to the Declaration of
Anthony Schoenberg in Support of Defendants' Motion to Strike Reply Declaration of Ian
Foster, dated April 12, 2012, and filed under seal on April 17, 2012.

7.      "Platzer Ex. __" shall refer to exhibits attached to the Declaration of Luke C.
Platzer in Support of Plaintiff's Opposition to Defendants' Motion to Strike Reply Declaration of
Dr. Ian Foster, dated May 1, 2012, and filed herewith.

8.      "Yeh Decl." shall refer to the Declaration of Jennifer V. Yeh in Support of
Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov,
dated February 16, 2012, available publicly at Docket No. 324-1.

9.      "Yeh Ex. __," shall refer to exhibits attached to the Declaration of Jennifer V.
Yeh in Support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp.
and Anton Titov, dated February 16, 2012, available publicly at Docket No. 324-1, the
Declaration of Jennifer V. Yeh in Support of Plaintiffs' Opposition to Defendant Anton Titov's
Motion for Summary Judgment and Defendant Hotfile Corp.'s Motion for Summary Judgment,
dated March 7, 2012, and available publicly at Docket No. 400, as well as the Reply Declaration
of Jennifer V. Yeh in Support of Plaintiffs' Motion for Summary Judgment, dated March 16,

2012, and available publicly at Docket No. 426-1.  For the convenience of the Court, the exhibits attached to the Yeh Declarations have been consecutively numbered, with Exhibits attached to the Yeh Declaration filed today continuing from the numbering in the previous set of exhibits. Where appropriate, citations to such exhibits may also include pinpoint citations to the page number(s), and paragraph or line numbers, internal to the cited document.  In some instances where individual Yeh Declaration exhibits were not paginated, page numbers have been added manually for ease of the Court's reference.  The parentheticals indicate the nature of the item cited – *e.g.*, deposition transcripts ("dep.") – or documents produced in discovery by various parties.  Thus, by way of illustration, "Yeh Ex. 1 (Titov dep.) at 200:1-10" would refer to the deposition of defendant Anton Titov, which could be found in Exhibit 1 to the Yeh Declaration, at page 200 of the transcript pages, at lines 1 through 10.  And, "Yeh Ex. 110 at 2" would refer to Exhibit 110 to the Yeh Declaration, and specifically the page of that Exhibit found at page 2 of the numbered Exhibit pages.

10.  "Titov Decl." shall refer to the Declaration of Anton Titov in Support of Defendants' Motions for Summary Judgment, dated February 17, 2012, and available publicly at Docket No. 321-1.

11.  "Titov Opp. Decl." shall refer to the Declaration of Anton Titov in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, dated March 7, 2012, and available publicly at Docket. No. 396-1.

12.  "Titov Reply Decl." shall refer to the Reply Declaration of Anton Titov in Support of Defendants' Motions for Summary Judgment, dated March 19, 2012, and available publicly at Docket No. 419-1.

13.  "Thompson Decl." shall refer to the Declaration of Roderick Thompson in Support of Hotfile's Opposition to Warner Bros.' Motion for Summary Judgment, dated February 27, 2012, and available publicly at Docket No. 354-1.

14.  "Boyle Decl." shall refer to the declaration of Professor James Boyle in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, dated March 6, 2012, and available publicly at Docket No. 391-1.

15.  "Leibnitz Ex. __" shall refer to exhibits attached to the Declaration of Andrew Leibnitz in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, dated March 7, 2012, and available publicly at Docket No. 390-1.

The Reply Declaration of plaintiffs' technical expert Dr. Ian Foster in Support of Plaintiffs' Motion for Summary Judgment ("Foster Reply Decl.") presents to the Court the download counts of files from Hotfile's database.  Dr. Foster extracted those download counts from Hotfile's database in order to respond to a new argument that defendants made for the first time in their opposition brief, and to show that data relied upon by defendants in their opposition brief was biased.

Defendants' motion to now strike two paragraphs and an exhibit from Dr. Foster's declaration ("Mot.") mistakenly attributes to Dr. Foster an opinion nowhere contained in his reply declaration, and then proceeds to attack the admissibility of that phantom opinion instead of the facts actually presented in Dr. Foster's testimony.  In reality, Dr. Foster's declaration accurately and reliably recites the download counts reflected in Hotfile's database, and does so consistent with plaintiffs' disclosures.  Defendants' objections to the two relevant paragraphs in Dr. Foster's reply declaration are neither about the accuracy of the data nor about Dr. Foster's methodology in extracting it.  Rather, their complaint is that there is *different* data that defendants think would be more important or persuasive than the data that plaintiffs chose to present.  Defendants are wrong on the merits, and their argument goes to weight, not admissibility.  Defendants' Motion to Strike should be denied.

## BACKGROUND

Plaintiffs' Motion for Summary Judgment demonstrated that Hotfile profits from, and depends upon, traffic from users who download infringing files.  *See* Pls. MSJ at 9-10.  Among the evidence plaintiffs submitted in support was testimony from plaintiffs' technical expert Dr. Foster, who showed the number of times that files identified as likely containing plaintiffs' works had been downloaded from Hotfile.  In connection with plaintiffs' response to an interrogatory provided to Hotfile during discovery in this case, plaintiffs had identified, based on filenames and metadata in Hotfile's database, 945,611 download links that had at some point been hosted on the Hotfile system and which appeared to link to infringing files representing plaintiffs' copyrighted works (the "Files in Suit").  *See* Pls. MSJ at 10, Yeh Decl. ¶ 120 & Ex. 119; Foster Decl. ¶ 65.

Because the majority of those files had been long ago deleted (including in response to takedown notices), Hotfile did not (and could not) produce the majority of them when requested in discovery.  Accordingly, plaintiffs moved for summary judgment only on a smaller subset of

1

the Files in Suit for which plaintiffs had been able to obtain copies from Hotfile and confirm and organize them, subject to time and resource constrains, for purposes of the summary judgment motion (the "Verified Files in Suit."). *See* Yeh Decl.¶ 57, Ex. 56; Foster Decl. ¶ 65.  While moving for summary judgment and damages only on the smaller, verified list, plaintiffs also submitted the larger list of Files in Suit in connection with their Motion for Summary Judgment, along with testimony from Dr. Foster demonstrating that the Files in Suit represented over 30 million downloads from Hotfile, and that repeat infringers (*i.e.*, users who received three or more "strikes" for infringement) had been responsible for a very substantial portion of those uploads. Yeh Decl. ¶ 120 & Ex. 119; Foster Decl. ¶ 66.  Defendants did not move to strike these portions of Dr. Foster's testimony.

In their Opposition to Plaintiffs' Motion for Summary Judgment, defendants attempted to counter this evidence by arguing that Hotfile does not profit from or depend upon infringing traffic because the 100 individual files on Hotfile that were downloaded the most (the "top 100 downloads") did not infringe Plaintiffs' copyrights. *See* Defs. Opp. to Pls. MSJ at 24.

In reply, plaintiffs responded that the "top 100 downloads" data presented by defendants in their opposition brief was not a relevant or useful metric for disproving Hotfile's reliance upon infringing traffic.  Rather, plaintiffs argued, the manner in which Hotfile profits from and depends upon infringement turns on the *aggregate* extent to which infringing material is downloaded from the site – as evidenced by, *inter alia*, plaintiffs' statistical evidence – and not on which *individual files* had received the most downloads. *See* Pls. Reply at 6.  Plaintiffs also pointed out that the "top 100 files" were not a useful metric for assessing the extent to which Hotfile depends upon infringement because infringing files rarely have an opportunity to accumulate large download counts: "major copyright owners engage in a never-ending cycle of identifying infringing files and taking them down," such that it is "unremarkable" that files that are not major copyrighted works would be "constantly accumulating downloads," whereas infringing files are often taken down.  Pls. Reply at 5.

To illustrate this "longevity bias" in favor of files that are *not* being constantly taken down, Dr. Foster started with the cumulative download count for the Files in Suit that he had previously presented in his opening declaration.  Then, in his reply declaration, he further showed the breakdown of those cumulative downloads by title (*i.e.*, for each motion picture and television series). *See* Foster Decl. at ¶ 13.  He then showed a comparison between those

download counts and the download counts of the "top 100 files" claimed by Hotfile. *See* Foster Reply Decl. ¶ 14 & Ex. A.[1]  Dr. Foster's presentation of this data from Hotfile's database shows that "many of plaintiffs' Files in Suit, when organized by title, are as frequently downloaded (or more frequently downloaded) than many of the files identified by Hotfile as being the "most downloaded" files on the system." Foster Reply Decl. ¶ 5.

## I.   DR. FOSTER'S DOWNLOAD COUNTS WERE CONSISTENT WITH PLAINTIFFS' DISCLOSURES.

In order to contend that plaintiffs had not "disclosed" the two challenged paragraphs of Dr. Foster's testimony, Defendants mischaracterize them.  Dr. Foster is not purporting to offer "new expert opinion" about "the allegedly most popular content on Hotfile." Mot. at 1, 5. He makes no such claim; indeed, creating such a list would have been a much more ambitious project.  He would have needed to consider not only files infringing plaintiffs' copyrights, but also files infringing the rights of various other copyright owners.  Rather, he was simply showing how many times the files identified by plaintiffs as infringing had been downloaded, and then comparing those download counts to those claimed by Hotfile, in order to illustrate that the "top 100 files" list presented by Hotfile in its opposition brief is biased against files infringing plaintiffs' works, which are subject to constant takedown. *See* Foster Reply Decl. ¶ 14 ("many of plaintiffs' Files in Suit, when organized by title, are as frequently downloaded (or more frequently downloaded) than many of the files identified by Hotfile as being the "most downloaded" files on the system").

Both Dr. Foster's method and the data on which he relied were properly disclosed. Moreover, even under Hotfile's theory that Dr. Foster's calculations were not within the scope of plaintiffs' disclosures, there is no prejudice: the calculations were derived from defendants' own data, from which defendants likewise presented calculations on summary judgment that had not previously been disclosed.  The expert disclosure requirement under Rule 26(a)(2)(B) of the Federal Rules "is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses," *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1361-62 (11th Cir. 2008), and the exclusion of expert testimony under Fed. R. Civ. P. 37(c)(1) is a severe sanction that is not

---

[1] In addition, he searched for copies of the files in Hotfile's list (both by filename and by "hash") and included their download counts.  Foster Reply Decl. ¶ 14 & Ex. A.

appropriate absent prejudice. *See SEC v. Huff*, No. Civ. A. 08-60315, 2010 WL 228000, at *3 (S.D. Fla. Jan.13, 2010); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317, 2005 WL 5955699, at *9 (S.D. Fla. Feb. 2, 2005); *see also Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 506 (D. Del. 2005) (declining to strike expert testimony and noting that "[c]ourts must also be mindful that the exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." (internal quotation marks omitted)).

Because Dr. Foster's *actual* testimony in the challenged paragraphs – as opposed to the opinion that defendants attribute to him – was consistent with plaintiffs' disclosures and did not prejudice defendants, there is no basis for striking it.

**A.     Dr. Foster's Testimony Regarding Total Downloads Of Files In Suit Is Within The Scope Of Plaintiffs' Disclosures.**

The two challenged paragraphs of Dr. Foster's testimony are consistent with plaintiffs' disclosures:

(1) Plaintiffs disclosed in discovery the Files in Suit – *including* the breakdown by "title." *See* Yeh Decl. ¶ 120 & Ex. 19.

(2) Plaintiffs' Rule 26(a)(1)(A) disclosures disclosed plaintiffs' intention to utilize documents produced by Hotfile, which includes its database data, where the download counts for files are located. *See* Platzer Ex. 1 (Pls. Supp. Rule 26(a)(1)(A) Disclosures).

(3) Dr. Foster's expert reports disclosed both his method for counting the total downloads for any particular file using Hotfile's data, *see, e.g.*, Schoenberg Ex. 1 ¶ 34(p) & n. 3, as well as his methods for counting cumulative downloads for subsets of the Files in Suit. *See, e.g.*, Schoenberg Ex. 1 ¶ 34(p) & n.3.

(4) Dr. Foster's original expert testimony applied those methods to count the aggregate downloads of the Files in Suit without objection from defendants. *See* Foster Decl. ¶ 66.

Defendants complain that Dr. Foster had not previously disclosed "opinions regarding the allegedly most popular content on Hotfile," Mot. at 5, but as explained above, Dr. Foster's Reply Declaration does not purport to offer such an opinion, only to extract download counts from Hotfile's database and compare them to the list that Hotfile claimed in its opposition as the "most

popular" files. This leaves defendants, at most, with an argument that Dr. Foster had not previously broken out the cumulative download count for the Files in Suit (which was already contained in Dr. Foster's original declaration) by individual title. *See* Mot. at 5-6. Dr. Foster was clearly entitled to provide this breakout within the scope of his previous disclosures.

The Federal Rules "are not designed to prohibit a witness from testifying about anything not explicitly mentioned in his Rule 26 disclosure, but rather to protect one party from being blindsided by another party with new opinions never before discussed." *Cary Oil Co. v. MG Ref. & Mktg, Inc.*, No. 99 Civ 1725 (VM), 2003 WL 1878246, at *4 (S.D.N.Y. Apr. 11, 2003). Accordingly, expert opinions need not *verbatim* repeat the expert's disclosures so long as the opinions are "consistent with and not materially different from the opinions contained" therein. *Tracinda Corp.*, 362 F. Supp. 2d at 507; *see also id.* at 507-11 (denying motion to exclude expert testimony where allegedly new opinions were either within the scope of the material presented in report or did not change the substance of the underlying analysis); *Cary Oil Co.*, 2003 WL 1878246, at *5 (denying motion to exclude expert testimony not contained in report because it consisted of "general facts and discussions related directly to the [initial] expert report").

That rule applies in full force here. The Files in Suit – including the breakdown of the Files in Suit by title – were disclosed in discovery. *See* Yeh Decl. ¶ 120 & Ex. 19; Platzer Decl. ¶ 4. And Dr. Foster's expert report explained the methodology for calculating download counts for files hosted on the Hotfile system: using the "'uploaddownloads.csv'" data set and then summing the values from the "downloads" and "paiddownloads" fields. Schoenberg Ex. 1 n.3. Furthermore, his expert reports repeatedly calculated the "the total number of downloads" for various subsets of the Files in Suit. *See id.* ¶ 34(p) (calculating download counts for subset of Files in Suit uploaded by repeat infringers). Indeed, Dr. Foster's opening declaration, which defendants do not move to strike, applied those exact methods to calculate the *aggregate* download count for the Files in Suit. *See* Foster Decl. ¶¶ 65-66.

Dr. Foster's reply declaration applies the disclosed methods to break out the download counts for the Files in Suit based on the title list disclosed by plaintiffs during discovery. *See* Foster Reply Decl. ¶¶ 13-14. This type of calculation and opinion is entirely consistent with Dr. Foster's disclosures and does not contradict any of the opinions contained therein. Unlike the case cited by defendants, *see* Mot. at 6 (citing *Thames v. City of Pensacola*, No. 303CV586/RV/MD, 2005 WL 1876175, at *4-6 (N.D. Fla. Aug. 1, 2005)), this is not a case

where Dr. Foster has changed his opinion or is offering new testimony. *See Thames*, 2005 WL 1876175, at *4-6 (granting motion to strike where expert's affidavit was a "significant modification or change" from earlier disclosure, and where expert specifically disclaimed any opinion regarding the subject matter that was the subject of new testimony); *see also Stein v. Foamex Int'l, Inc.*, No. Civ. A. 00-2356, 2001 WL 936566, at *6-*7 (E.D. Pa. Aug. 15, 2001) (striking expert affidavit only where opinions contradicted those in expert's report and "materially alter[ed] his intended expert testimony at trial").

The error in defendants' claim that Dr. Foster's download counts are "new expert opinion" is illustrated by the fact that defendants included in their *own* summary judgment materials multiple calculations from the Hotfile database despite not having previously disclosed those calculations to plaintiffs. *See, e.g.*, Titov Decl. ¶ 30 (review of files-in-suit, including as a percentage of all files hosted and response to takedown notices); Titov Opp. Decl. ¶ 3 (testifying to number of files "downloadable at one time"); *id.* ¶¶ 14, 19 (querying database for sources of traffic to Hotfile); *id.* ¶¶ 26-28, 31, 38-39 (testimony about percentage of files, downloads, uploads, and users that were the subject of takedown notices); ¶ 49 (number of files with duplicate URLs and were subject to takedown notices prior to implementation of hash blocking); Titov Reply Decl. ¶ 3 (database queries to determine anonymous uploads of verified files in suit). Defendants' repeated submission of undisclosed calculations from the data in Hotfile's database in connection with the summary judgment motions demonstrates their understanding that numbers from their database are facts, not expert opinion. Indeed, in opposing Warner's motion for summary judgment, defendants submitted undisclosed spreadsheets of data extracted from Warner's database as attachments to an *attorney* declaration. *See* Thompson Decl. ¶¶ 6, 17, 18, 20, 22 & Ex. 5, 16, 17, 19, 21. Plaintiffs were perfectly within their rights to have their technical expert – using disclosed methods and a disclosed data set – present Hotfile's data here.

### B.   Defendants Are Not Prejudiced By Their Own Data.

In addition, defendants cannot establish prejudice because Dr. Foster's download counts do no more than compile the contents of defendants' own data. *See* Foster Reply Decl. ¶ 13. Noticeably absent from defendants' motion is any suggestion that defendants could not have verified the download counts themselves, or that the download counts do not accurately state the contents of Hotfile's database. *See, e.g.*, *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004) (defendant not prejudiced by admission of expert testimony not

previously disclosed because expert calculations based on data already produced to defendant, defendant could have performed the calculation themselves, and plaintiffs revealed "the nature" of the testimony the expert was to provide); *Semtech Corp. v. Royal Ins. Co. of Am.*, No. CV 03-2460-GAF (PJWx), 2005 WL 6192906, at *2 (C.D. Cal. Sept. 8, 2005) (denying motion to bar the use of a late-produced supplemental expert report because the "opinions / calculations expressed in [the expert] report are based not on the assessment of new data but rather on the raw data" that has already been disclosed and thus, the challenging party has "not been blindsided by new information"); *Tracinda Corp.*, 362 F. Supp. 2d at 509 (expert testimony did not "unfairly surprise[] or prejudice[]" defendant where "data underlying" testimony was produced to defendant).[2] As Titov's summary judgment testimony demonstrates, defendants are conversant with their own database and capable of performing the same calculations.

Defendants also cannot establish prejudice based on Dr. Foster's allegedly "new" presentation of their data because they can cross examine him on those calculations at trial. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 2005 WL 5955699, at *9 (declining to strike expert report that was filed after deadline because defendants have not been prejudiced "given the amount of time between the filing of the report and trial"); *Cary Oil Co.*, 2003 WL 1878246, at *5 (assuming that expert opinion is "sufficiently new or different," challenging party "now on notice about these opinion more than a month before trial and thus have ample time to prepare cross-examination . . ., which renders the failure to disclose such opinions harmless").

## II.    THE DATA PRESENTED BY DR. FOSTER REPLIED TO AN ARGUMENT DEFENDANTS MADE FOR THE FIRST TIME IN THEIR OPPOSITION BRIEF.

The download counts in Paragraphs 13-14 and Ex. A of Dr. Foster's Reply Declaration also properly replied to defendants' argument, raised for the first time in their opposition, that Hotfile's "top 100 downloads" do not include Plaintiffs' copyrighted works. *See* Defs. Opp. to

_____

[2] Defendants in fact already extensively cross-examined Dr. Foster at his depositions on what they now claim are weaknesses in his method for counting downloads. *See, e.g.,* Platzer Ex. 2 (Foster dep.) at 69:2-15 (testifying about protocol used to reach download count numbers); *id.* at 89:8-91:16, 92:2-17, 98:3-101:7 (cross-examination on proposition that filenames are reflective of the content of the file); *id.* at 191:1-16 (questioning regarding "files in suit" and whether Foster independently ascertained whether "plaintiffs actually owned the copyrights for any of those files"); *id.* at 372:2-375:14 (testifying about number of downloads of a subset of files in suit).

Pls. MSJ at 24.  Defendants' argument that the calculations were improperly introduced for the first time in reply, therefore, is without merit.

It is axiomatic that a party may submit new evidence as part of a reply in support of summary judgment where the evidence responds to matters raised for the first instance in the non-moving party's opposition papers.  *See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000) ("reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party") (internal quotation marks omitted); *Hammons v. Computer Programs & Sys., Inc. (CPSI)*, No. 05-0613-WS-C, 2006 WL 3627117, at *14 (S.D. Ala. Dec. 12, 2006) ("[N]othing in the extant authorities, or in the Federal Rules of Civil Procedure, forbids a movant from making supplemental record submissions in a reply brief to rebut specific arguments raised by the non-movant's opposition brief").[3]  Defendants agree that where a non-movant has "raised an issue not dealt with by [the moving party] in their initial filing, it is appropriate for [the moving party] to support their final response with properly admissible evidence."  Mot. at 7 (citing *Viero v. Bufano*, 925 F. Supp. 1374, 1380 (N.D. Ill. 1996)).

The challenged paragraphs 13-14 and Ex. A of Dr. Foster's reply declaration fit squarely into that rule.  Plaintiffs' argument in support of their summary judgment motion was based on the *aggregate* popularity of infringing content on Hotfile, not on the individual popularity of any particular files.  *See* Pls. MSJ at 9-10.  Dr. Foster's original declaration in support of Plaintiffs' original motion already contained the aggregate download count for the Files in Suit.  *See* Foster Decl. ¶ 66.  The challenged paragraphs of Dr. Foster's *reply* declaration were submitted specifically to rebut defendants' claim, in their opposition brief, that Hotfile is innocent of infringement because its "top 100 downloads" do not include files that infringe plaintiffs' works.  *See* Defs. Opp. to Pls. MSJ at 7, 24, Leibnitz Ex. 7; Boyle Decl. Ex. 1, ¶ 9.  Plaintiffs use Dr. Foster's testimony to illustrate that the "top 100 downloads" list submitted by Hotfile is not a useful metric due to the "longevity bias" against files that are rapidly removed from the Hotfile system due to enforcement efforts by their copyright owners.  Pls. Reply at 5-6.  Dr. Foster's

---

[3] Experts equally may respond to new evidence.  *See, e.g., In re Prempro Prods. Liab. Litig.*, 514 F.3d 825, 831-32 (8th Cir. 2008) (expert may testify at trial in response to testimony which expert has not previously been able to address); *Fritz v. Consol. Rail Corp.*, Civ. A. No. 90-7530, 1992 WL 96285, at *3 (E.D. Pa. April 23, 1992) (same), *judgment aff'd*, 983 F.2d 1050 (3d Cir. 1992); *Mead Johnson & Co. v. Barr Labs, Inc.*, 38 F. Supp. 2d 289, 297 (S.D.N.Y. 1999) (same).

testimony illustrates this bias by showing that plaintiffs' Files in Suit have *cumulative* download counts that rival or exceed the files on Hotfile's list. *Id.*

Because it does nothing more than address arguments Hotfile raised in the first instance as part of its opposition filing, Dr. Foster's testimony falls squarely within the boundaries of appropriate rebuttal testimony and there is no basis on which to strike it. *See, e.g., First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 788 (11th Cir. 2008) (finding "no basis for treating" as "new" evidence testimony raised "to respond" to assertion raised in opposition by nonmoving party); *Hammons*, 2006 WL 3627117, at *14 ("There is nothing improper about [defendants'] supplemental submissions" because "…[the] objected-to supplemental evidentiary submission merely responds to arguments and issues raised in plaintiff's opposition…without proffering new grounds for entry of summary judgment.").

## III.  DR. FOSTER'S METHODOLOGY RELIABLY COUNTS DOWNLOADS OF PLAINTIFFS' FILES.

Finally, Defendants attempt to strike Dr. Foster's recitation of download data from Hotfile's database on *Daubert* grounds. *See* Mot. at 8-16. Defendants' arguments, however, rely on a mischaracterization of the testimony that Dr. Foster is offering. As discussed above, he is not purporting to offer "new expert opinion" about "the allegedly most popular content on Hotfile," Mot. at 1, 5; creating such a list would require comprehensively looking at Hotfile's repeated infringements of third-party copyrighted content (such as video games, music, and adult films) along with as plaintiffs' works. Rather, he is merely illustrating the effect of (and correcting for) the "longevity bias" against files that infringe plaintiffs' content, *see* Foster Reply Decl. ¶ 13, and then comparing those corrected figures to Hotfile's "top 100 downloads" list, to support an argument that Hotfile's "top 100 downloads" list is not a useful metric. *Id.* ¶ 14.

Defendants do not claim that Dr. Foster inaccurately extracts data from Hotfile's database regarding the download counts of the Files in Suit. Rather, they complain that Dr. Foster should have extracted the download counts for different files and organized the data differently. Mot. at 9-16. But a *Daubert* challenge is not the appropriate mechanism for defendants to raise their complaints about which alternative formulation of the download counts they think is best; if defendants think different data is more persuasive than the one used by Dr. Foster, they can make that argument. For purposes of a *Daubert* motion, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc.*

*v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).  It is "[s]ufficient that each expert's reasoning and methodology had a reliable foundation in the knowledge and experience of his discipline, regardless of claimed errors of interpretation." *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1335, 1353-54 (S.D. Fla. 1999), *aff'd*, 333 F.3d 1248 (11th Cir. 2003). Expert testimony is not subject to exclusion on *Daubert* grounds "[s]imply because [the expert] did not conduct the [analysis] in the manner in which [the moving party] found most suitable." *Miles v. General Motors Corp.*, 262 F.3d 720, 724-25 (8th Cir. 2001).  If defendants want to complain about Dr. Foster's presentation of the download counts, "vigorous cross-examination and the presentation of contrary evidence will be the appropriate means of attacking it," not a challenge under *Daubert. In re Traylsol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 4102247, at *5 (S.D. Fla. Sept. 10, 2010).

The substantive objections raised by defendants are meritless in any event.  First, Defendants argue that because each episode of a television program is a separate copyrighted work, Dr. Foster "incorrectly" presented the breakdown of the download of the Files in Suit by television program title rather than by individual episode.  Mot. at 10.  But Dr. Foster does not *claim* to be summing download counts on the basis of separate copyrighted works.  Nor is a division by copyrighted work necessary as a legal matter.  Dr. Foster is not offering the two challenged paragraphs for purposes of establishing statutory damages (which are calculated per "work" infringed, *see* 17 U.S.C. § 504(c)).  There is nothing improper about plaintiffs' choice to highlight the infringement of television series rather than particular episodes.[4]

Second, Defendants claim that it was improper for Dr. Foster to use the download counts for all Files in Suit, rather than only the verified subset on which plaintiffs are moving for summary judgment.  Mot. at 11-12.  Dr. Foster's decision to use the Files in Suit, rather than the smaller verified subset, again makes perfect sense.  Dr. Foster is not offering testimony for purposes of a damages calculation, but rather to highlight that the constant removal of files infringing plaintiffs' works obscures their popularity.  The smaller subset of the Files in Suit that plaintiffs were able to obtain from Hotfile, verify, and organize for purposes of their summary judgment motion would not be suitable for this purpose: it does not purport to represent the

---

[4] While defendants assume that "'works' or 'titles'" are the same thing, *see* Mot. at 10, it is clear from Dr. Foster's testimony that he is using "title" to refer to motion pictures and television series, not to refer to separate copyrighted works. *See* Foster Reply Decl. ¶¶ 13-14.

universe of infringing content on Hotfile, but is rather a subset on which plaintiffs chose to move for summary judgment, based on the limited data available from Hotfile and the time and resource constraints plaintiffs faced in preparing this case for summary judgment. Using only this subset would have ignored countless infringing files identified by plaintiffs, including many deleted or taken down from Hotfile before this litigation started. It was reasonable for Dr. Foster to use the full list of the Files in Suit, which better approximate the scale of infringement on Hotfile, rather than the Verified Files in Suit, which list was created for a different, and more limited, purpose.

Moreover, defendants can hardly complain that treating the Files in Suit as infringing for this purpose is unreliable and merits exclusion on *Daubert* grounds. Courts have held that it is generally proper to treat files as infringing where the filenames match the names of popular entertainment titles. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001). There is also evidence in the record that metadata, such as filenames and filesizes, can be used to identify popular copyrighted entertainment content, and the Files in Suit are self-evidently named after Plaintiffs' copyrighted works and are appropriately sized. *See* Foster Decl. ¶ 15, Yeh Decl. ¶ 120 & Ex. 119. While defendants clearly wish to argue that it is possible that some files might have been mislabeled, that is an argument that goes to weight, not admissibility.[5] While the verified subset may have undergone additional confirmation and organization in connection with plaintiffs' summary judgment motion, that does not render the larger list unreliable.

Third, defendants argue that Dr. Foster erred by "count[ing] every part of a multipart file as a distinct copy of [each work]." Mot. at 13. Again, defendants are attacking an opinion never proffered. Dr. Foster did not count, and is not purporting to have counted, infringements of complete works for purposes of a statutory damages calculation. Instead, he counted downloads of files hosted on Hotfile that infringed plaintiffs' copyrights. *See* Foster Reply Decl. ¶¶ 13-14. The focus on files as they are hosted on Hotfile is a reasonable one. Indeed, throughout this litigation, plaintiffs have argued that Hotfile's "Affiliate Program" incentivized the uploading of plaintiffs' works precisely because plaintiffs' works tend to be represented as large, multipart

---

[5] Defendants' claim that they identified a handful of mistakes out of over 945,000 Files in Suit during depositions, *see* Mot. at 11, is a red herring: plaintiffs long ago revised the Files in Suit list to remove the few files claimed as misidentified. *See* Platzer Decl. ¶ 4.

files. *See* Pls. MSJ at 30.  While defendants may prefer to focus on infringing *works* rather than on infringing *files*, that is an argument about which data defendants consider more persuasive, not a methodological objection to Dr. Foster's decision to count infringing files.  *Cf. Quiet Technology DC-8, Inc.* 326 F.3d at 1341 ("[i]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence").

Finally, defendants complain that Dr. Foster's comparison of the download counts for the Files in Suit to Hotfile's "top 100 downloads" does not group the files on Hotfile's list by "title" as well, thus creating an "apples-to-oranges" comparison between "title" counts for plaintiffs' files and "file" counts for the files on the list.  Mot. at 14-16.[6]  Again, defendants misunderstand the nature of the testimony Dr. Foster is offering.  He is not purporting to create a new list of the most-downloaded copyrighted works from Hotfile (which would have been a more ambitious project), but rather to illustrate and correct a specific flaw in Hotfile's "top 100 downloads" list: that Hotfile's methodology, which focuses on the most downloaded *files*, systematically undercounts infringing downloads of plaintiffs' works because plaintiffs are constantly taking down files that infringe their copyrights, which prevents them from accumulating large numbers of downloads.  *See* Pls. Reply at 5-6.  This bias does not require correction with respect to the files on Hotfile's list, which plaintiffs are *not* constantly taking down.  *Id.*  And for the purpose of illustrating the bias in defendants' methodology, a comparison between titles (for plaintiffs' works) and files (for the files on Hotfile's list) is entirely proper and admissible.

## CONCLUSION

Plaintiffs respectfully request that the Motion of defendants Hotfile Corporation and Anton Titov to Strike the Reply Declaration of Dr. Ian Foster be denied.

---

[6] Dr. Foster counted *all* downloads of *all* copies of the files on Hotfile's list, rather than solely the specific URLs provided by Hotfile, in order to conservatively account for the fact that some files might appear more than once on Hotfile's system.  *See* Foster Reply Decl. ¶ 14.

Dated: May 1, 2012

Respectfully submitted,

By: _Karen L. Stetson_

Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887


MOTION PICTURE ASSOCIATION
  OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
Duane C. Pozza (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st Day of May, 2012, I served the following documents on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

**Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion To Strike the Reply Declaration of Dr. Ian Foster**

By: *Karen L. Stetson*

Karen L. Stetson

14

**SERVICE LIST**
**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-JORDAN**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone: 415-954-4400

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone: 617-928-1804

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and
Anton Titov*

15