# EXHIBIT "A"

**PUBLIC VERSION**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

     *Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

     *Defendants.*

_____/

HOTFILE CORP.,

     *Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

     *Counter-Defendant.*

_____/

**DEFENDANTS' MOTION AND MEMORANDUM
OF LAW TO STRIKE REPLY DECLARATION OF
DR. IAN FOSTER IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

26501\3021765.2

FILED UNDER SEAL                     CASE NO. 11-20427-WILLIAMS-TURNOFF

## CITATION LEGEND

1.      "DRSF" shall refer to specific paragraph numbers of the Statement of Facts of

Defendants Hotfile Corporation and Anton Titov In Opposition to Plaintiffs' Statement of

Uncontroverted Facts and Defendants' Statement of Additional Material Facts.

2.      "Foster Reply Decl." shall refer to the reply declaration of Dr. Ian Foster in

support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and

Anton Titov, dated March 19, 2012.

3.      "Yeh Decl." shall refer to the declaration of Jennifer V. Yeh in support of

Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov,

dated February 17, 2012.

4.      "Leibnitz Decl." shall refer to the declaration of Andrew Leibnitz in support of

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

5.      "Boyle Decl." shall refer to the declaration of Professor James Boyle in support of

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

6.      "Levy Decl." shall refer to the declaration of Dr. Daniel S. Levy in support of

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

7.      "Cromarty Decl." shall refer to the declaration of Dr. Andrew Cromarty in

support of Defendants' Motion for Summary Judgment [D.E. # 399]

6.      "Leibnitz Ex. __," shall refer to exhibits attached to the Leibnitz Declaration.

7.      "Yeh Ex. __," shall refer to exhibits attached to the Yeh Declaration.

8.      "Boyle Ex. __," shall refer to exhibits attached to the Boyle Declaration.

9.      "Cromarty Ex. __," shall refer to exhibits attached to Cromarty Declaration.

**FILED UNDER SEAL**          CASE NO. 11-20427-WILLIAMS-TURNOFF

## INTRODUCTION

In an improper, last-ditch attempt to resuscitate their Motion for Summary Judgment against Hotfile, Plaintiffs submit for the first time new alleged "facts" in the Reply Declaration of Dr. Ian Foster to argue, inaccurately, that their works are the most frequently downloaded material on Hotfile. Specifically, Paragraphs 13 and 14 and Exhibit A of Dr. Foster's reply declaration present an entirely new expert opinion never before disclosed that paints a false picture of Hotfile's activities by manipulating data and ignoring inconvenient facts. They should be stricken as improper new expert opinion not disclosed as required by Rule 26 and introduced for the first time on reply. The potential prejudice to Hotfile of not striking these deeply flawed and misleading new "facts" would be substantial.

Plaintiffs would have Dr. Foster concoct a re-listing of the order of Hotfile's most downloaded files by improperly aggregating download counts for Plaintiffs' "titles" but without doing the same for Hotfile's most popular, non-infringing content (most of the top 100 downloads). This obviously biased and contrived "methodology" results in an unreliable and wildly skewed picture of Hotfile's most popular content. Dr. Foster's arbitrary method renders his declaration and opinion inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' motion for summary judgment against Hotfile is predicated on the false notion that because Hotfile's business model sought "popular content," it necessarily intended to encourage its users to post infringing copies of Plaintiffs' content. *See* Pls.' Mot. for Summary Judgment [D.E. #322] at p. 1 (Hotfile seeks "the uploading of 'popular' (*i.e.*, infringing) content.") Plaintiffs' premise that "popular" content can only mean their content is demonstrably false. In opposition to Plaintiffs' motion for summary judgment, Hotfile demonstrated (what

1

**FILED UNDER SEAL**          CASE NO. 11-20427-WILLIAMS-TURNOFF

Plaintiffs have known since receiving Hotfile's database last summer) that many of the most downloaded files on Hotfile are non-infringing, that the two most downloaded files on Hotfile are copies of non-infringing open source software, and that none of Plaintiffs' works are among the top 100 most frequently downloaded files on Hotfile. *See* DRSF 16.e.ii, 28. Plaintiffs do not (and could not) dispute that the most popular *files* on Hotfile are non-infringing. Instead, in the Reply declaration of Dr. Foster, Plaintiffs argue for the first time that the most popular *works* (not the actual digital files) on Hotfile are infringing copies of Plaintiffs' content. *See* Foster Reply Decl. ¶¶ 13-14. Individual digital files, not "works," are of course the content uploaded and downloaded on Hotfile.

To reach his contrived conclusion, Dr. Foster could not perform a straightforward count of Plaintiffs' works. Instead, he starts with a list of files (compiled in response to a Court order compelling a response to one of Hotfile's discovery requests) that Plaintiffs' attorneys say "appear to correspond to one of plaintiffs' copyrighted works," based solely on the metadata of the files (e.g. file name, file size, file type, etc.), though no one has actually verified that they were copies of Plaintiffs' content. Yeh Decl. ¶ 120. Dr. Foster next purports to add together the number of downloads for all files identified by Plaintiffs' attorneys as possibly being copies of the same "title." Foster Decl. ¶ 14. But Dr. Foster only aggregates download counts for individual "titles" if the "titles" refer to *Plaintiffs'* content. If the "titles" he is considering are not owned by Plaintiffs, he employs a different methodology to depress the count. For all non-Plaintiff works, he only sums up the download counts for different files if they have an identical hash signature[1] or identical filenames.[2] Dr. Foster also counts individual parts of a multipart file

---

[1] A "hash signature" or "hash value" is a type of digital "fingerprint," ostensibly a long, unique number "corresponding to the contents of a given file." Cromarty Ex. R at ¶¶ 113-114 (Cromarty Expert Report).

2

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

as unique and self-contained copies of the material contained in the assembled multipart file,

even though the individual files do not and could not contain a copy of one of Plaintiffs' titles.

By doing so, Dr. Foster posits file and download count figures for Plaintiffs' "titles" that are

overstated by orders of magnitude. Relying on inaccurate data and inconsistently employing his

"methodology," Dr. Foster opines (contrary to the facts) that the most popular "works" on

Hotfile are copies of Plaintiffs' copyrighted content. This is an entirely new opinion.



Hotfile presented Plaintiffs with a summary of its "top 100" downloads as reflected in that data

on November 23, 2011, and Hotfile's expert, Professor James Boyle, noted that the most popular

files on Hotfile were non-infringing in his expert report submitted on November 18, 2011. *See*

Leibnitz Ex. 7 (list of top 100 downloads); Boyle Ex. 1, ¶ 9 (discussing top downloads on

Hotfile). Nevertheless, Dr. Foster's expert reports do not disclose the subject matter of the

opinions expressed for the first time in his reply declaration regarding download counts for

particular Hotfile files. Plaintiffs present Dr. Foster's new arguments and "facts" for the first

---

[2] For example, while Dr. Foster counts files titled "Lost.S02E04.rar.html" and "Jt-Blog.Com.Lost.S03E06-SAiNTS.avi.001.html" as the same "work," even though those files do not have identical file names or hash values, Dr. Foster treats the files "JDownloaderSetup.zip" and "JDownloaderSetup.exe" as separate and distinct works, refusing to aggregate the download counts for those files, even though they are both copies of the same non-infringing software.

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

time in their reply declaration, dated March 19, 2012. Pursuant to a joint stipulation entered on

December 23, 2011, the parties were obligated to conclude exchange rebuttal expert summaries

and reports on January 6, 2012. *See* Joint Motion For Extension of Deadlines Set Forth In

Scheduling Order [D.E. #198]. More fundamentally, Plaintiffs improperly submitted these new

"facts" for the first time in its reply memorandum. This tactic would deprive Hotfile of the

opportunity to disprove them.

## ARGUMENT

An expert's proposed testimony is inadmissible if not set forth in the expert's written

reports. Fed. R. Civ. P.26(a)(2)(B) ("The report must contain…a complete statement of all

opinions the witness will express and the reasons for them.") Federal Rule of Civil Procedure 37

"gives district courts discretion to exclude untimely [expert] submissions" that present new

opinions not set forth in the expert's original reports. *Thames v. City of Pensacola*, 2005 WL

1876175, at *5 (N.D. Fla. Aug. 1, 2005). More generally, "it is well accepted that raising of new

issues and submission of new facts in [a] reply brief is improper." *Fisher v. Ciba Specialty*

*Chemicals Corp.*, 238 F.R.D. 273, 311 n. 82 (S.D. Ala. 2006); *see also Sweet v. Pfizer*, 232

F.R.D. 360, 364 n. 7 (C.D. Cal. 2005) "the moving party in a motion cannot submit new

information as part of its Reply.") Plaintiffs violated both rules here.

Dr. Foster's opinion regarding the most popular files on Hotfile was not disclosed in any

form in his prior expert reports, and constitutes new argument and fact presented for the first

time on reply. Even if timely disclosed, his opinion would still be inadmissible as it is based on

erroneous data, uses an improperly applied methodology to make a prototypical apples-to-

oranges comparison. Given his obvious manipulation of the download data, Dr. Foster's attempt

to re-calculate the list of Hotfile's top downloads is the type of "simplistic extrapolation and

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

childish arithmetic…that make[s] a joke of the concept of expert knowledge." *Schiller &*

*Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992).

## I.    Dr. Foster's Reply Declaration Sets Forth Testimony Not Disclosed In His Written Reports.

Federal Rule of Civil Procedure 26 "plainly sets out that a party must disclose an expert

witness's opinion in a report which must contain, among other things, '… a complete statement of

all opinions to be expressed and the basis and reasons therefor; the data or other information

considered by the witness in forming the opinions….'" *Thames*, 2005 WL 1876175, at *3; Fed.

R. Civ. P.26(a)(2)(B).  Under Federal Rule of Civil Procedure 37(c)(1), a "Court must exclude

[an expert] Declaration (specifically, the portions of the Declaration that constitute new

opinions) from consideration unless [the party presenting the expert has] offered 'substantial

justification' for failing to offer the new opinions or the new opinions offered are harmless."

*Solaia Technology LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 806-807 (N.D. Ill. 2005).

Thus, "[i]f the opinions provided in [an expert's] declaration are new and not in response to

evidence obtained after the expert rebuttal deadline, the statements must be excluded because

they constitute new and unjustified opinions submitted well after the relevant deadline." *U.S. v.*

*Barlow*, 2008 WL 5459196, at *4 (S.D. Fla. Sept. 16, 2008).

Dr. Foster's reply declaration sets forth wholly new analyses and opinions regarding the

allegedly most popular content on Hotfile, never before disclosed in any of his written reports.

*See* Foster Reply Decl. ¶¶ 13-14, Ex. A.  Plaintiffs cannot offer any plausible justification for

failing to disclose Dr. Foster's testimony regarding the most downloaded files on Hotfile.

Hotfile's expert, Professor James Boyle, showed in his original expert report submitted

November 18, 2011 that the most popular files on Hotfile were copies of non-infringing open

source software. *See* Boyle Ex. 1, ¶ 9.  Similarly, in an interrogatory submitted on November 23,

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

2011, Hotfile provided Plaintiffs with a list of the top 100 downloads on Hotfile. Leibnitz Ex. 7.

And yet, though ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ ██ ██

     Plaintiffs' failure to disclose this opinion is not harmless.  Because of it had no notice of

Dr. Foster's present opinion, Hotfile had no basis for deposing Dr. Foster on the subject and no

opportunity to question him about his deeply flawed "methodology" for determining the most

popular content on Hotfile.  Florida district courts have previously stricken expert affidavits in

similar situations.  *Thames*, 2005 WL 1876175, at *5 ("Plaintiff has offered no justification at all

for failing to supplement Reiter's expert report as required by Rule 26. Instead, plaintiff simply

included the new testimony in an affidavit filed in opposition to defendant's motion for summary

judgment. Reiter's modified opinion is thereby disclosed for the first time, well past the already-

extended discovery deadline, and without any prior notice to the defendant.")  Because Plaintiffs

can offer no justification for failing to previously disclose Dr. Foster's testimony regarding the

most popular content on Hotfile, presented for the first time in his reply declaration, the Court

should strike the portion of his declaration setting forth those new opinions.

## II.    Dr. Foster's Declaration Improperly Introduces New Facts And Argument On Reply.

    "It is well accepted that [the] raising of new issues and [the] submission of new facts in

[a] reply brief is improper." *Fisher*, 238 F.R.D. at 311 n. 82.  "Absent extenuating circumstances

(which are not present here), the time for submitting a summary judgment record is

6

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

contemporaneously with the filing of the principal brief, not after the non-movant has already

filed a response and briefing has closed." *Sideridraulic System SpA v. Briese Schiffahrts GmbH*

*& Co. KG*, 2011 WL 3204521, at *2 (S.D. Ala. July 26, 2011).  Though a movant can introduce

arguably new argument and facts in response to a wholly new argument raised by the non-

movant in opposition, if the new information and argument on reply "could have been offered in

[the movant's] initial filing" and deals with an issue raised in the initial filing, such new

argument is inappropriate on reply. *Viero v. Bufano*, 925 F. Supp. 1374, 1380 (N.D. Ill. 1996)

("That is, if Viero has raised an issue not dealt with by defendants in their initial filing, it is

appropriate for defendants to support their final response with properly admissible

evidence....By contrast, several other exhibits are impermissible efforts to beef up the record that

defendants had made (or failed to make) in their opening salvo....Defendants have disregarded

all of that by attempting to add facts in their reply that could have been offered in their initial

filing.")

    Dr. Foster's reply declaration relating to the most "popular" works on Hotfile is an

impermissible attempt to add to the record on reply new (and indefensible) facts and argument

that could have been raised (and were hinted at) in Plaintiffs' opening brief.  By waiting until

reply to introduce Dr. Foster's specious arguments, Plaintiffs have deprived Hotfile of a

meaningful opportunity to respond in its opposition by pointing out the deep and obvious flaws

in his testimony.  In their opening brief (and indeed throughout this litigation), Plaintiffs made

the unsupported allegation that Hotfile's efforts to attract "popular" material to the site

necessarily meant Hotfile wanted to attract infringing copies of Plaintiffs' works to the site. *See*

Pls.' Mot. for Summary Judgment [D.E. #322] at p. 1 (Hotfile seeks "the uploading of 'popular'

(*i.e.*, infringing) content.")  Plaintiffs did not support this allegation with facts in the opening

**FILED UNDER SEAL**                         CASE NO. 11-20427-WILLIAMS-TURNOFF

brief, likely because there is no plausible factual basis for the allegation. Responding to this inference, Hotfile referenced in its opposition papers the undeniable facts that the most downloaded files on Hotfile are non-infringing, and none of the most popular files contain Plaintiffs' materials. *See* Leibnitz Ex. 7 (list of top 100 downloads); Boyle Ex. 1, ¶ 9 (discussing top downloads on Hotfile). Now, for the first time on reply, Plaintiffs attempt to "rebut" this argument by introducing a wholly new and factually irresponsible argument, claiming that the most popular "titles" on Hotfile are Plaintiffs' works. Having had access to Hotfile's data for many months, nothing prevented Plaintiffs from making this argument in their initial papers. Plaintiffs' failure to do so can only be seen as an attempt to sneak "facts" into the record without offering Hotfile an opportunity to demonstrate their obvious impropriety. Having elected not to introduce Dr. Foster's "opinions" and argument in their initial briefing, Plaintiffs cannot now seek to sandbag Hotfile by presenting them for the first time on reply. Paragraphs 13, 14 and Exhibit A of Dr. Foster's reply declaration should therefore be stricken from the record and not considered in the court's ruling on Plaintiffs' motion for summary judgment.

### III.   Paragraphs 13, 14 and Exhibit A of Dr. Foster's Declaration Should Be Stricken Under *Daubert* Principles.

The Supreme Court's ruling in *Daubert* "requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).[3]  Federal Rule of Evidence 702, governing the admissibility of expert evidence, provides that if a "witness who is qualified as an expert…may testify in the form of an opinion or otherwise if: (a) the expert's…specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[3] Several of Plaintiffs' other experts have provided opinions that should also be excluded under *Daubert*. Because those opinions were not introduced improperly for the first time in its reply memorandum, Hotfile will move to exclude them in connection with pre-trial motion practice.

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed.R.Evid. 702. "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999)

 In determining whether an expert's testimony is admissible, the expert must conclusively demonstrate that he has properly implemented a sound methodology to reach his results; "[t]he expert's assurance that the methodology and supporting data is reliable will not suffice. *Bowers v. Norfolk Southern Corp.*, 537 F. Supp. 2d 1343, 1372 (M.D. Ga. 2007). Similarly, to be admissible, an expert's testimony must be based on adequate and accurate data. *U.S. v. City of Miami, Fla.*, 115 F.3d 870, 873 (11th Cir. 1997) ("Opinions derived from erroneous data are appropriately excluded.") Although questions about the foundation of an expert's assumptions tend to "go to the weight, not the admissibility, of the testimony," an "expert['s] testimony should be excluded…if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Walden Residential Properties, Inc. v. Genlyte Thomas Group, LLC*, 2003 WL 26112596, at *4 (M.D. Fla. April 4, 2003).

### A.   Dr. Foster's Reply Declaration Is Based On Erroneous Data.

 Dr. Foster's opinion purports to sum up the download counts for Plaintiffs' works-in-suit "by title" rather than by file. The data Dr. Foster relies on for this procedure is incorrect on three accounts: 1) he counts different episodes of a given television program as the same "title" for purposes of his reply declaration, 2) the list of "works-in-suit" upon which he bases his opinion

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

is not the list of actual, confirmed copies of Plaintiffs' content—rather, it's a list of files where

"the filename and Hotfile URL of each uploaded file [] appears [to Plaintiffs] to correspond to

one of plaintiffs' copyrighted works," and 3) assuming the files Foster uses for his calculations

were properly identified as copies of Plaintiffs' "titles," Foster repeatedly miscounts different

parts of single multipart archive files as separate files, even though such file parts are plainly not

themselves individual "copies" of Plaintiffs "titles." Foster Reply Decl. ¶ 14; Yeh Decl. ¶ 120.

> 1.    Dr. Foster Improperly Aggregates Data For Unique Television
>        Episodes.

In making his calculations, Dr. Foster incorrectly counted different episodes of Plaintiffs'

television programs as different iterations of the same program. Different episodes of a

television series are plainly different "works" or "titles." In their discovery responses, Plaintiffs

treated individual episodes as individual titles; Plaintiffs even had to separately register each

episode with the Copyright Office under a different registration number. *See* Schoenberg Strike

Decl. Ex. C (Plaintiffs' Third Supp. Interrogatory Responses Schedule B)(Lost - Season 6,

Episode 11 registered as PA0001684078; Lost - Season 6, Episode 9 registered as

PA0001684079). As "LOST" is not a single piece of copyrighted content, Dr. Foster was clearly

incorrect in cumulatively using the download data for each file purportedly containing a different

episode in the "LOST" series to determine the download counts for the program "LOST" as a

whole. This error pervades his reply declaration; in Dr. Foster's new list of the top downloads

on Hotfile, fifteen of the top twenty "titles" owned by Plaintiffs appear to be improper

aggregations of episodes in a television series treated as a single "title." *See* Foster Reply Decl. ¶

14, Ex. A.

10

**FILED UNDER SEAL**                     CASE NO. 11-20427-WILLIAMS-TURNOFF

> 2.      Dr. Foster Performed His Calculations On The Wrong Data Set.

Even if Dr. Foster were correct in treating different episodes of a television program as a single "title" for purposes of counting Hotfile's most popular files, his calculation depends on the wrong data set.  He claims to count the number of downloads of "files that [Plaintiffs] claim infringe their copyrights in this action (the 'Files in Suit')," but he calculates the downloads from a different set of files, consisting of files that, in response to a Court order compelling Plaintiffs to answer an interrogatory seeking a list of files Plaintiffs' believed contained copies of their content, Plaintiffs' counsel identified as possibly being copies of their work, based solely on an analysis of the metadata that has already proven erroneous in this lawsuit. *See* Foster Reply Decl. ¶ 13.  This list of files does not constitute Plaintiffs' "Files in Suit."  Rather, the proper list of "Files in Suit" was attached as Exhibit 56 to the Declaration of Jennifer Yeh in Support of Plaintiffs' Motion for Summary Judgment, which Plaintiffs claim represents the "files corresponding to the plaintiffs' works that plaintiffs allege have been infringed via the Hotfile Website, and on which plaintiffs are moving for summary judgment"—files that Plaintiffs purportedly verified as containing Plaintiffs' content. *See* Yeh Decl. ¶ 57, Ex. 56.

Though Dr. Foster purports to analyze the files that Plaintiffs claim infringe in this action (i.e. the "verified" files in Yeh Ex. 56), he instead looks at a list of files that Plaintiffs contend "appeared to be copies of plaintiffs' copyrighted works," but were never confirmed as such by Dr. Foster, Ms. Yeh, or anyone else. *Id.* at ¶ 120, Ex. 119. ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████ ██████ ████████ ¶ ███████████████

███████████████████████████████

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████   As such, even if Yeh Ex. 119 rather than Yeh Ex. 56 represents the "files-in-suit" that Dr. Foster claims to be analyzing, there is simply no reason to believe that Plaintiffs' guesses as to what might or might not be their content are sufficiently reliable to form the data underlying an expert opinion about the popularity of files on Hotfile, and Dr. Foster has offered no rationale for accepting the unverified speculations of Plaintiffs' counsel as fact.

The reason Dr. Foster relies on unverified speculation as data rather than the verified files-in-suit is obvious: it would preclude Plaintiffs from arguing that their content was the most popular material on Hotfile. For example, by examining a list of files that Plaintiffs' counsel speculate might be episodes of the movie "Predators," Dr. Foster claims that there are 14,507 files containing "Predators," downloaded a total of 379,560 times, but, as Yeh Exhibit 56 shows, Plaintiffs were only able to verify a two file containing "Predators"—the only files of "Predators" upon which Plaintiffs are moving for summary judgment—downloaded just 54 times. *Compare* Yeh Ex. 119 *with* Yeh Ex. 56. Dr. Foster even claims that the television show "Mentalist" was downloaded 493,573 times, though Yeh Ex. 56 fails to identify even one copy of "Mentalist" on Hotfile. *Id.* And these are just representative examples – this problem infects Dr. Foster's entire "top 100" analysis. Dr. Foster's reliance on Plaintiffs' self-serving, unverified data undermines the credibility of his report and warrants striking the portions of his reply declaration referring to download counts for files on Hotfile.

3.       Dr. Foster Improperly Counts File Parts As Whole Files.

Finally, even assuming *arguendo* that Plaintiffs were 100% accurate in identifying the contents of files in Yeh Ex. 119, Dr. Foster's use of that data is plainly erroneous insofar as he

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

treats every individual part of a multipart file as a separate and distinct copy of that file. *See* Yeh Decl. ¶ 120 ("we identified 945,611 files"), Ex. 119 (identifying multipart archive files as individual copies of Plaintiffs' "titles"). Often, Hotfile users will "cut a single piece of media into multiple parts for storage and downloading on Hotfile." Levy Decl. ¶ 44. Video content that is stored in a multipart file is typically only accessible if all parts of the archived file have been downloaded and assembled; no individual part of a multipart file contains the content that the fully assembled archive contains. *Id.* Yeh Ex. 119 is littered with such multipart files misidentified as individual copies of Plaintiffs' "titles." For example, Yeh Ex. 119 identifies as "copies" of "Avatar" files titled "Avatar-str.part01.rar," "Avatar-str.part02.rar," "Avatar-str.part03.rar" all the way through "Avatar-str.part34.rar." *See* Yeh Ex. 119. These files are facially different parts of a 34-part archive file, not 34 separate files each containing a complete copy of "Avatar." That is, even if Plaintiffs are correct that the assembled multipart archive (which Plaintiffs have not verified as containing their content) contains a copy of the movie "Avatar," none of those files individually would contain a copy of "Avatar." The whole video file is only available when all parts of the multipart archive are downloaded and assembled. Levy Decl. at ¶¶ 44-45. And yet, Dr. Foster counts every part of every multipart file as a distinct copy of "Avatar" and aggregates the download counts for each part of the archive. In the case of "Avatar-str.part1" – "Avatar-str.part34," he counts a single purported copy of "Avatar" as 34 different copies and overstates the total number of downloads for that "title" by a factor of at least 34.[4] An individual part of a multipart archive file containing a movie is no more a copy of

---

[4] Since all parts of the file are necessary to access the movie purportedly contained therein, the true number of downloads for a given multipart archive file is no greater than the number of downloads of the least downloaded portion of the file. If no individual user downloaded all the parts of the archive, then the true download count for that archive is zero since no individual user

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

that movie than each individual word in a dictionary is a copy of the dictionary. As such, Dr.

Foster's attempt to determine the total files and downloads for Plaintiffs' "titles" is based on

erroneous data insofar as it treats individual parts of multipart files as distinct copies of those

"titles." The portion of Dr. Foster's reply declaration related to the popularity of files on Hotfile

should therefore be stricken.

### B.     Dr. Foster's Reply Declaration Inconsistently Applies A Biased, Contrived "Methodology."

"Rulings on admissibility under *Daubert* inherently require the trial court to conduct an

exacting analysis of the proffered expert's methodology." *McCorvey*, 298 F.3d at 1257. The

expert's methodology must be based on sound principles and methods that the expert applies

"reliably to the facts of the case." Fed.R.Evid. 702. "Any step that renders the analysis unreliable

renders the expert's testimony inadmissible." *Bowers*, 537 F. Supp. 2d at 1350. "In evaluating

the reliability of an expert's method ... a district court may properly consider whether the expert's

methodology has been contrived to reach a particular result." *R & R Int'l, Inc. v. Manzen, LLC*,

2010 WL 3605234, at *8 (S.D. Fla. Sept. 12, 2010). When an expert's opinion essentially makes

an "apples and oranges" comparison, the Court may properly conclude that the expert's

methodology was unreliable and exclude it. *Walden Residential Properties*, 2003 WL 26112596,

at *4.

Dr. Foster purports to recast Hotfile's top 100 download list from an accounting of the

most popular "files" on Hotfile to an accounting of the most popular "titles." But the

"methodology" he employs to accomplish this task is applied so inconsistently and

manipulatively to the works at issue, it's almost impossible to conclude that his methods were

---

will have downloaded a copy of the movie, and in such a case, Dr. Foster's miscount will far
exceed a factor of 34.

**FILED UNDER SEAL**                CASE NO. 11-20427-WILLIAMS-TURNOFF

not contrived to result in a distorted picture of Hotfile's most popular works.  According to his

own description of his methods, he intentionally applied different counting standards for

Plaintiffs' work than for all other works on Hotfile's servers, though he offers absolutely no

justification for employing such different tactics.  To determine how many times Plaintiffs'

works were downloaded, he summed up the download counts for every file that Plaintiffs'

counsel identified as being a copy of a given "title," even if, as described *supra*, the summed

"titles" were copies of entirely different television episodes or had radically different hash values

or filenames.  But, to determine the download count for every other (read: non-Plaintiff) "title"

on Hotfile, Dr. Foster only aggregated download counts for files that either had an identical hash

value or the identical filename. *See* Foster Reply Decl. ¶ 14.  Different files containing the same

open source software were deemed to be different "titles" under Dr. Foster's "methodology,"

though different files containing the same movie were treated as the same "title."   Thus, Dr.

Foster summed the download counts of files named "Avatar.BY MAN NGM.rar.html" and

"avatar-subs.zip.html" simply because Plaintiffs' counsel claimed (based on an undisclosed

analysis of file names and/or metadata) that they might both be copies of the movie "Avatar," but

Dr. Foster refused to sum the download count of files named "JDownloaderSetup.zip,"

"JDownloaderSetup.exe," and "JDownloaderSetup_kikin.exe," because they did not have the

identical file name or the identical hash value even though they are all copies of the open source

software program JDownloader.

        Dr. Foster does not and cannot offer any plausible justification for why he chose to count

Plaintiffs' works in a different manner than non-infringing works.  The true reason he applied a

far looser counting method to Plaintiffs' work is self-evident: if he summed up the non-

infringing works according to the same standard he applied to Plaintiffs' works, the non-

infringing material would be far and away the most popular material on Hotfile. As such, it can be inferred that Dr. Foster's "methodology" was "contrived to reach [the] particular result" that Plaintiffs wanted and should therefore be excluded. *R & R Int'l*, 2010 WL 3605234, at *8.

Looking at two examples of non-infringing "titles" from Hotfile's top 100 files demonstrates the impropriety of Dr. Foster's data manipulation. According to Dr. Foster's download analysis from Exhibit A to his reply declaration, it is apparent that if he were to count the non-infringing "titles" with the same method he used to count Plaintiffs' "titles," two non-infringing "titles" would be at the top of Dr. Foster's download list. Dr. Foster's Exhibit A lists ██████ files that, based on their filenames, appear to be copies of the free software program "JDownloader." *See* Foster Reply Decl. Ex. A. Per Dr. Foster's data, those ████ files were downloaded a combined ██████████, giving it nearly ████████ more downloads than the next closest "title" owned by Plaintiff. *Id.* Just counting the ███ copies of JDownloader identified in Hotfile's list of its top 100 downloads shows that JDownloader was downloaded at least ████████ times cumulatively. *See* Leibnitz Ex. 7. Similarly, summing up all the files in Exhibit A to Dr. Foster's Reply Declaration that, based on the filename, appear to be copies of the free software program "sn0breeze" shows ████████ total downloads, making it the second most downloaded file on Hotfile. *See* Foster Reply Decl. Ex. A. Obviously, Dr. Foster chose to employ these different methodologies because to treat both categories of works in the same manner would contradict Plaintiffs' theory about Hotfile's most popular material. Because Dr. Foster's Reply Declaration unambiguously uses a different counting methodology for Plaintiffs' work and for non-infringing work, his opinion makes a facially biased "apples-to-oranges" comparison that fails to satisfy Rule 702 and should therefore be stricken.

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

## <u>CONCLUSION</u>

The Court should strike Paragraphs 13 and 14 of the Foster Reply Declaration and its

Exhibit A.  Dr. Foster's opinions, never before disclosed and improperly introduced for the first

time in Plaintiffs' reply, are inadmissible both for their tardiness and because they are based on

erroneous data and a facially flawed methodology resulting in a distorted picture of Hotfile's

most popular content.

## <u>CERTIFICATE OF GOOD FAITH ATTEMPT TO RESOLVE</u>

I hereby certify that pursuant to Local Rule 7.1(a)(3), prior to filing this motion, counsel

for Defendants, Anthony P. Schoenberg, Esq. communicated with counsel for Warner, Luke C.

Platzer, Esq., on April 12, 2012, in a good faith attempt to resolve by agreement the matters that

are raised in this motion, but that the parties were unable to reach agreement.

Anthony P. Schoenberg, Esq.


DATED:  April 17, 2012                    Respectfully submitted,

FILED UNDER SEAL                    CASE NO. 11-20427-WILLIAMS-TURNOFF

Janet T. Munn, Esq. Fla. Bar No. 501281
Email: jmunn@rascoklock.com
RASCO KLOCK
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone:  305.476.7101
Telecopy: 305.476.7102

And

Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email:  rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email:  aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email:  tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email:  dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email:  jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy: 415.954.4480

And

Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email:  vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone:  617.928.1800
Telecopy:  617.928.1802

*Counsel for Defendants Hotfile Corporation
  and Anton Titov*

18

**FILED UNDER SEAL**                  CASE NO. 11-20427-WILLIAMS-TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2012, a true and correct copy of the foregoing

document, was filed conventionally and served on all counsel of record identified below via

e-mail and by Federal Express.

Karen L. Stetson, Esq.
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Telephone: 818.935.5812

By: _Janet T. Munn_
Janet T. Munn