# EXHIBIT A

# PUBLIC VERSION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

    *Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

    *Defendants*.

_____/

HOTFILE CORP.,

    *Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

    *Counter-Defendant*.

_____/

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO STRIKE REPLY DECLARATION OF
DR. IAN FOSTER SUBMITTED IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

26501\3051326.3

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 1

I.  DR. FOSTER'S REPLY DECLARATION SETS FORTH TESTIMONY NOT DISCLOSED IN HIS REPORTS ................................................................................. 1

    A.  Plaintiffs' Belated Disclosure Is Hardly "Harmless" ............................................ 4

II. PLAINTIFFS IMPROPERLY PROFFER DR. FOSTER'S NEW TESTIMONY FOR THE FIRST TIME ON REPLY ..................................................................... 6

III. DR. FOSTER'S TESTIMONY SHOULD BE STRICKEN UNDER DAUBERT BECAUSE PLAINTIFFS STILL OFFER NO PLAUSIBLE EXCUSE FOR DR. FOSTER'S FLAWED METHODOLOGY ............................................................. 7

CONCLUSION ................................................................................................................... 10

**CITATION LEGEND**

1. "DRSF" shall refer to specific paragraph numbers of the Statement of Facts of Defendants Hotfile Corporation and Anton Titov In Opposition to Plaintiffs' Statement of Uncontroverted Facts and Defendants' Statement of Additional Material Facts.

2. "PMSJ" shall refer to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov.

3. "PRMSJ" shall refer to Plaintiffs' Reply in Support of Plaintiffs' Motion For Summary Judgment [D.E. # 425].

4. "Foster Reply Decl." shall refer to the reply declaration of Dr. Ian Foster in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated March 19, 2012.

5. "Yeh Decl." shall refer to the declaration of Jennifer V. Yeh in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012.

6. "Leibnitz Decl." shall refer to the declaration of Andrew Leibnitz in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

7. "Boyle Decl." shall refer to the declaration of Professor James Boyle in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

8. "Levy Decl." shall refer to the declaration of Dr. Daniel S. Levy in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

9. "Cromarty Decl." shall refer to the declaration of Dr. Andrew Cromarty in support of Defendants' Motion for Summary Judgment [D.E. # 399]

10. "Zebrak Decl." shall refer to the declaration of Scott Zebrak in support of Warner Bros. Entertainment's Motion for Summary Judgment [D.E. # 301].

11. "Leibnitz Ex. __," shall refer to exhibits attached to the Leibnitz Declaration.

12. "Yeh Ex. __," shall refer to exhibits attached to the Yeh Declaration.

13. "Boyle Ex. __," shall refer to exhibits attached to the Boyle Declaration.

14. "Cromarty Ex. __," shall refer to exhibits attached to the Cromarty Declaration.

15. "Zebrak Ex. __," shall refer to exhibits attached to the Zebrak Declaration.

# INTRODUCTION

Through Dr. Foster, Plaintiffs submit a "top 100" list of Hotfile downloads that they never disclosed in any expert report, improperly proffered for the first time in a reply brief, and which indefensibly counts downloads of Plaintiffs' alleged files differently from other downloads in order to inflate Plaintiffs' numbers. Any one of these transgressions would warrant exclusion of this portion of Dr. Foster's testimony. Here, with characteristic hubris, Plaintiffs flout all three of these rules. As further detailed below, the Court should strike Dr. Foster's challenged testimony.

# ARGUMENT

## I. Dr. Foster's Reply Declaration Sets Forth Testimony Not Disclosed In His Reports

In their Opposition, Plaintiffs do not dispute that the Federal Rules of Civil Procedure require written disclosure of all expert opinions prior to their submission to the Court as putative evidence. *See* Fed. R. Civ. P. 26(a)(2)(B) ("The report must contain . . . a **complete** statement of **all** opinions the witness will express and the reasons for them.") (emphasis added). Nor do Plaintiffs dispute that the sanction of exclusion for failure to disclose an expert opinion is "automatic" and "self-executing" absent a showing of substantial justification or harmlessness. Fed. R. Civ. P. 37(c)(1); *see id*. (Adv. Comm. Notes 1993); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001). This rule permits the opposing party to cross examine the purported expert in deposition prior to summary judgment proceedings. *See Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2004), overruled on other grounds by *Ash v. Tyson Foods, Inc*., 546 U.S. 454, 457-58 (2006); *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999). Revealing an opinion for the first time in a declaration submitted with a reply brief on summary judgment – when there is no opportunity for cross-examination – warrants striking that testimony. *See Nelson v. Freightliner LLC*, 2003 WL 25781423, at *4 (M.D. Fla. April 23, 2003) (late "supplemental" expert report excluded where opposing party denied opportunity to depose expert on substance of report); *Western Watersheds Project v. Salazar*, 766 F. Supp. 2d 1095, 1121 (D. Mont. 2011) (on motion for preliminary injunction, it is inappropriate "to file a reply brief inserting new materials with an 'expert' opinion which deprives the other parties of a complete opportunity to respond.")

Plaintiffs repeatedly argue that they may submit at summary judgment an entirely new table of downloads aggregated to inflate Plaintiffs' numbers because such testimony is

-1-

**FILED UNDER SEAL**                               CASE NO. 11-20427-WILLIAMS-TURNOFF

"consistent" with disclosures made by Plaintiffs in discovery. Opp. at 4, 5. This is not the law. The Rules require "complete" disclosure of "all" expert opinions – not just a fraction of the opinions which might later be deemed "consistent" with subsequent disclosures. Fed. R. Civ. P. 26(a)(2)(B). Plaintiffs' rule would permit trial by ambush in defiance of the very purpose of the disclosure rules.

There can be no dispute that Dr. Foster never disclosed his table of 100 highly-downloaded files until the filing of Plaintiffs' reply papers in support of summary judgment on March 19, 2012. This belated expert disclosure occurred: *four months* after Hotfile identified its top 100 downloads, Leibnitz Ex. 7; *four months* after Professor James Boyle disclosed in an expert report the non-infringing nature of files in Hotfile's top 100 downloads, Boyle Rep. ¶¶ 20, 34; *three months* after Plaintiffs admitted in an interrogatory response that none of the top 100 downloads embodied their works, Pls.' Resp. and Objs. to Hotfile's Fourth Interrogatories; *ten weeks* after the deadline for disclosing rebuttal expert reports, Joint Motion For Extension of Deadlines Set Forth In Scheduling Order [D.E. # 198]; and *eight weeks* after the close of rebuttal expert discovery and conclusion of all expert depositions, *id*. No excuse exists for this belated disclosure.

Plaintiffs contend that Dr. Foster's "top 100" list exists within the penumbra of Plaintiffs' prior disclosures – provided that one aggregates four prior disclosures by Plaintiffs, two of which have no relation to Dr. Foster. Opp. at 4. First, Plaintiffs argue that they disclosed the names of 945,611 files that "appear to correspond to copyrighted works owned by plaintiffs." Yeh Decl. ¶ 120. This list does not provide any information about download counts. *Id*. Plaintiffs cannot justifiably expect Hotfile to sift through hundreds of thousands of entries and more than 10,000 titles to find fifty-one titles whose number of downloads – when aggregated in a fashion designed to inflate Plaintiffs' numbers – would exceed the number of downloads of Hotfile's most-downloaded files. The disclosed list does not even mention Dr. Foster.

Second, Plaintiffs argue that they properly disclosed the basis for Dr. Foster's "top 100" list by stating in their initial disclosures of December 23, 2011 that "plaintiffs may rely on documents produced by defendants." Platzer Ex. 1 at 7; Opp. at 4. This defies credulity. Plaintiffs cannot credibly wave at Hotfile's production of over 2,868,264 pages of documents and contend that, on that basis, they have adequately disclosed their expert opinions.

FILED UNDER SEAL    CASE NO. 11-20427-WILLIAMS-TURNOFF

██████████████████████████

██████████████████████████

██████████████████████████

████████████████ This has nothing to do with Dr. Foster's "top 100" list. It does not disclose the number of downloads of any titles, nor does it attempt to justify aggregating download counts for plaintiffs' titles while refusing to aggregate download counts for the open source software files most commonly downloaded from Hotfile. Defendants could not possibly have examined Dr. Foster at deposition regarding the contrived calculations in his Reply Declaration, because it did not exist.

  Fourth, Plaintiffs argue that Dr. Foster testified in his opening declaration in support of Plaintiffs' motion for summary judgment that "the Files in Suit have been downloaded . . . ████████████ Foster Decl. ¶ 66; Opp. at 4. This has no bearing on Dr. Foster's "top 100" list. The declaration mentions nothing about aggregating the download counts for all titles that appear to be copies of Plaintiffs' works and comparing those figures to download counts which were not aggregated except for files with identical hashes or filenames. Absent this disclosure, Defendants had no opportunity to challenge Dr. Foster at deposition. In sum, even if Hotfile was obliged to aggregate four unrelated disclosures in hopes of guessing Dr. Foster's expert testimony – which is not the law – Hotfile still could not have predicted that Dr. Foster would submit to the Court a "top 100" list at the last possible opportunity which relied upon previously-undisclosed contrivances to inflate Plaintiffs' numbers.

  Plaintiffs point out that Hotfile proffered testimony from Anton Titov at summary judgment that was not disclosed in an expert report. Opp. at 6. However, Hotfile proffers Mr. Titov's testimony as a ***fact witness***, not as an expert. The expert disclosure rules apply only to witnesses "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Dr. Foster prefaces his reply declaration with a recitation of his expert qualifications. Foster Reply Decl. ¶ 1. In contrast, Mr. Titov testifies regarding facts arising from his first-hand knowledge as a percipient witness. *See, e.g.*, Titov Decl. ¶ 30 (945,611 files accused of infringement by Plaintiffs represent less than 1% of the 123,344,533 files hosted by Hotfile); Titov Opp. Decl. ¶ 3 (not all of the 123,344,533 files ever hosted by Hotfile are downloadable now, since over eight million files have been disabled due to takedown requests); *id*. ¶ 26 (8,330,465 files have been taken down); *id*. ¶ 27 (only 13.6% of downloads were of files

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

that ultimately received any type of takedown notice); *id*. ¶ 28 (only 1.1% of registered Hotfile users received even one takedown notice prior to the Complaint).   Instead of testifying regarding facts, Dr. Foster bases his "top 100" list on the opinion that Plaintiffs' alleged files on Hotfile may properly be aggregated into "titles" based solely on their file name and metadata (without actually examining the files themselves) and then properly compared to open source downloads which have not been aggregated.  Foster Reply Decl. ¶¶ 13-14.  Hotfile has had no opportunity to examine Dr. Foster on this assertion in deposition, whereas Plaintiffs have had *four days* of deposition of Mr. Titov to exhaust every point on which he could possibly provide testimony.  Even if Hotfile had violated Rule 26(a)(2)(B) – which is not the case – the remedy would not be to permit Plaintiffs to flout the expert disclosure rule themselves.

### A.    Plaintiffs' Belated Disclosure Is Hardly "Harmless"

The Federal Rules of Civil Procedure provide an exception to the "automatic" exclusion of belated disclosures where the disclosures are "harmless." Fed. R. Civ. P. 37(c)(1) & (Adv. Comm. notes 1993).  The Advisory Committee provides three examples of nondisclosures so trivial as to qualify as "harmless":  an "inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures." Fed. R. Civ. P. 37(c)(1) (Adv. Comm. notes 1993).

The belated disclosure of new substantive expert testimony for the first time in reply at summary judgment hardly compares to the untimely disclosure of a witness's name already disclosed by an opposing party.  Here, Hotfile will have no opportunity to examine Dr. Foster regarding his calculations before the summary judgment hearing. *See Carreno v. Home Transp., Inc.*, 2010 WL 2293391, at *2 (M.D. Fla. June 7, 2010) ("[H]aving to depose a party on information that was not disclosed in a Rule 26 report constitutes prejudice and therefore cannot be harmless.")  The expert disclosure rules exist precisely to prevent consideration of such unscrutinized testimony at summary judgment. *See Benedict v. Zimmer, Inc.*, 232 F.R.D. 305, 320 (N.D. Iowa 2005) ("Zimmer would be unfairly prejudiced if the Benedicts are allowed to submit supplemental [expert] evidence to which Zimmer has no opportunity to respond at the summary judgment stage of the proceedings.")

**FILED UNDER SEAL**    CASE NO. 11-20427-WILLIAMS-TURNOFF

Plaintiffs assert that Hotfile can suffer no harm from Dr. Foster's belated expert testimony because he derived his opinion from Hotfile's data. Opp. at 6 ("Defendants are not prejudiced by their own data."). However, experts for plaintiffs in civil cases nearly always rely on defendants' document productions – this does not exempt them from making timely expert disclosures. If Plaintiffs here could justify new opinions on reply at summary judgment by waving at terabytes of data produced by Hotfile, the expert disclosure obligation of Rule 26(a) would lack any meaning.[1]

It is also a false palliative for Plaintiffs to suggest that Hotfile may cross-examine Dr. Foster regarding his new testimony at trial. Opp. at 7. Pretrial discovery exists for the reason of adequately preparing for trial. *See Carson Harbor Village, Ltd. v. Unocal Corp.*, 2003 WL 22038700, *3 (C.D. Cal. Aug. 8, 2003) ("If the testimony is allowed at this point, defendants will be substantially prejudiced, because they have not had the opportunity to depose Dr. Lee regarding his opinions, because they have not been able to obtain declarations from rebuttal experts, and because they would incur significant expense and suffer further prolonged proceedings if these motions were continued to permit discovery and the preparation of appropriate expert rebuttal at this point"); *Mayes v. City of Hammond, Indiana*, 2006 WL 2054377, *5 (N.D. Ind. July 21, 2006) ("To ask Defendants now to conduct the necessary additional expert discovery in addition to preparing for a substantial trial, even in light of Mayes' offer to pay for expedited expert discovery for Defendants and to decline deposing any such expert, is not harmless"); *Acosta v. Electrolux North America*, 2008 WL 5246160, at *5 (S.D.

---

[1] In the cases relied upon by Plaintiffs, the party opposing the untimely expert opinion suffered no prejudice because it either had prior notice of the disputed testimony, was granted an opportunity to depose or otherwise rebut the new report, or had presented new evidence at trial that made it impossible for the expert to provide the report at an earlier date. *See Primrose Operating Co. v. Nat'l American Insurance Co.*, 382 F.2d 546, 564 (5th Cir. 2004) (party had had prior notice of "the testimony [the expert] was going to provide"); *Semetech Corp. v. Royal Ins. Co. of Am.*, 2005 WL 6192906, at *3 (C.D. Cal. Sept. 8, 2005) ("harm resulting from admission of the [untimely] report can be cured by allowing National to depose Dunbar and allowing National time to rebut the report."); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 509 (D. Del. 2005) ("Fischel's testimony was a response to claims made by Tracinda's expert at trial which were not made in his report.") Here, Plaintiffs never disclosed that Dr. Foster intended to opine on the relative popularity of various files, Hotfile never had an opportunity to depose Dr. Foster on this new opinion, and Dr. Foster's opinion did not respond to prior undisclosed testimony from Hotfile.

**FILED UNDER SEAL**               CASE NO. 11-20427-WILLIAMS-TURNOFF

Fla. Dec.16, 2008) ("[A]n expert report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial."); *Estate of Gonzalez v. Hickman*, 2007 WL 3237635, at *7 (C.D. Cal. June 28, 2007) ("Plaintiffs' failure to disclose Hunt's expert report in a timely fashion prejudiced defendants by hindering their ability to conduct meaningful discovery and to rebut [expert's] evidence."). Dr. Foster's testimony should be stricken.

## II. Plaintiffs Improperly Proffer Dr. Foster's New Testimony For The First Time On Reply

Recognizing that they may not introduce new evidence in support of existing arguments for the first time on reply, *Viero v. Bufano*, 925 F. Supp. 1374, 1380 (N.D. Ill. 1996) (cited at Opp. at 8), Plaintiffs insist that their motion for summary judgment nowhere addressed the incidence of infringement of *individually* popular files, but rather focused on "the *aggregate* popularity of infringing content on Hotfile." Opp. at 8 (emphasis in original). This is demonstrably false several times over.

In their motion for summary judgment, Plaintiffs argued that the likelihood of infringement for any particular file on Hotfile corresponded directly with its popularity.

> The more times a file is downloaded, the more Hotfile pays the uploader. SUF 16(a)(ii)-(iii). . . . Content "popular" with downloaders is overwhelmingly copyright infringing.

PMSJ at 5. Plaintiffs did ***not*** simply argue that, in the aggregate, 90% of downloads from Hotfile infringed copyright. *Id.* at 9. Instead, Plaintiffs argued that the likelihood of an individual file's infringement increased with every download of that file, even going so far as to graph the purported correlation. *See* Yeh Ex. 113 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ For any individual file, ***Plaintiffs even went so far as to explicitly equate popularity with infringement***. *See* PMSJ at 1 ("[Hotfile] induces the uploading of 'popular' (*i.e.*, infringing) content."); *id.* at 12 ("defendants made concentrated efforts to solicit users to upload popular – infringing – content to Hotfile"). Other examples abound. *E.g.*, *id.* at 5-7 (characterizing Hotfile's affiliate program as intended to cause infringement because it more highly compensated the uploading of a single popular file as opposed to multiple less-popular files); *id.* at 6 n.2 (same). Having made the argument in its opening brief that the most popular files on Hotfile were infringing, Plaintiffs could not properly conceal Dr. Foster's

-6-

**FILED UNDER SEAL**                    CASE NO. 11-20427-WILLIAMS-TURNOFF

testimony in support of that point until the filing of Plaintiffs' reply brief on summary judgment – when Hotfile could neither examine Dr. Foster on the point nor provide responsive expert testimony.  *Viero*, 925 F. Supp. at 1380.

The appropriate time to disclose Dr. Foster's opinion was the deadline for rebuttal expert witness reports on January 6, 2012.  Hotfile's expert, Professor James Boyle, had disclosed in his opening expert report on November 18, 2011 his analysis of the top 100 most downloaded files on Hotfile.  *See, e.g.*, Boyle Rep. ¶ 34 (detailing how open source software provider JDownloader supplied 17 of the top 100 most shared files on Hotfile, and setting forth how open source programs sn0wbreeze and iREB represented the top two most downloaded files on Hotfile).  If Plaintiffs wished to adduce testimony from Dr. Foster that in fact *Plaintiffs'* titles were more frequently downloaded than the most-commonly downloaded works identified by Hotfile, the deadline was January 6, 2012 – not four months later, after all discovery and deposition had concluded.

### III.    Dr. Foster's Testimony Should Be Stricken Under *Daubert* Because Plaintiffs Still Offer No Plausible Excuse For Dr. Foster's Flawed Methodology

Plaintiffs agree that an expert's testimony is only admissible if the "expert's reasoning and methodology had a reliable foundation."  *Allapattah Servs., Inc. v. Exxon Corp.,* 61 F. Supp. 2d 1335, 1353-54 (S.D. Fla. 1999), *aff'd,* 333 F.3d 1248 (11th Cir. 2003).  In determining whether an expert's method is reliable, "the focus is not on the conclusions generated by the expert's methodology, but on the reasonableness of the expert's use of such an approach, together with his or her particular method of analyzing data obtained."  *Id.* at 1339.  Contrary to Plaintiffs' insistence that Hotfile's objections bear upon weight attributable to the testimony rather than admissibility, Opp. at 10, case law makes clear that flawed expert testimony remains particularly susceptible to exclusion due to the heightened risk of misleading jurors.  *Id.* at 1340. Here, Plaintiffs do not even attempt to offer a rational explanation for the arbitrary inconsistencies identified in Dr. Foster's methodology.  Instead, with respect to every flaw, Plaintiffs simply assert without explanation that Dr. Foster's contrived method was proper.

First, Plaintiffs fail to explain why it was reasonable for Dr. Foster to count different episodes of the same television series as the same "title" for purposes of comparing the download counts for those files, while refusing to aggregate counts of non-infringing software. Mot. to Strike Foster Reply Decl. ("Mot.") at 10.  Plaintiffs suggest that "works" under copyright

-7-

**FILED UNDER SEAL**          CASE NO. 11-20427-WILLIAMS-TURNOFF

law differ from "titles" tabulated by Dr. Foster, Opp. at 10, but they offer no reason why titles of Plaintiffs' works should be treated differently from non-infringing software titles. Plaintiffs further deprive the analysis of reliability by refusing to justify why Dr. Foster's supposed "title" concept has any legal consequence or even any relevance to analysis of the relative popularity of content on Hotfile. In the end, the real reason Dr. Foster treats television episodes and non-infringing software differently is obvious: if he counted them with the same methodology, the download counts for non-infringing software would dwarf those for Plaintiffs' television episodes. *See* Mot. at 16 (the nine JDownloader files in Foster Ex. A were downloaded 750,000 more times than the next closest "title" owned by Plaintiffs). Transparently inconsistent expert testimony "contrived to reach the particular [desired] result" lacks any admissibility. *R & R Int'l, Inc. v. Manzen, LLC,* 2010 WL 36052345 (S.D. Fla. Sept. 12, 2010).

      Second, Plaintiffs claim that Dr. Foster properly relied on a list formulated by Plaintiffs' counsel based on their subjective estimation of what "appear" to be copies of Plaintiffs' works – which they arrived at without either examining the content of those files or subjecting themselves for deposition – even though that list has already proven to be inaccurate. Though Plaintiffs claim to have removed a "handful of mistakes" that Hotfile identified in their list of "Files In Suit," Plaintiffs fail to acknowledge that Hotfile only identified ***exemplary*** mistakes. Assuming, as Plaintiffs do, that a file's name adequately signifies its contents,[2] Plaintiffs cannot explain why they continue to mischaracterize the Hotfile file "mhq-great.bloshy.yarblockos.making.a. clockwork.orange.2007.xvid.avi.html" as a copy of the 1971 movie "A Clockwork Orange" rather than a copy of the 2007 documentary "Great Bloshy Yarblockos! The Making of A Clockwork Orange." Yeh Ex. 119. Similarly, Plaintiffs still claim that a file titled "The Hunchback of Notre-Dame ClipArt.rar.html" "appears" to be a copy of the Disney movie "The Hunchback of Notre Dame," rather than a collection of publicly-available clip art, or a copy of the 1831 Victor Hugo novel, or the 1911 French silent film, or any of the myriad other works

---

[2] Plaintiffs improperly cite *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) for the proposition that "it is generally proper to treat files as infringing where the filenames match the names of popular entertainment titles." Opp. at 11. In *Napster*, the court held that, because the Napster program provided search functionality, "file names must reasonably or roughly correspond to the material contained in the files, otherwise no user could ever locate any desired music." *A&M Records*, 239 F.3d at 1024. Here, Hotfile does not provide search functionality. There is no justification for assuming that file names match file content on Hotfile. DRSF 35.

-8-

**FILED UNDER SEAL**  CASE NO. 11-20427-WILLIAMS-TURNOFF

associated with the name, "The Hunchback of Notre Dame." *Id.* Nor is there any explanation as to why Plaintiffs continue to assert that two files titled "KRUSHADELIC - Ghost Rider (2007).rar.html" are copies of the movie "Ghost Rider," and not, as their filenames would indicate, the album "Ghost Rider" by the rapper Krushadelic. *Id.* No admissible expert opinion relies upon the unexamined and subjective input of litigation counsel, conceived without even reviewing the subject files, and proven to be error-prone.

Third, Plaintiffs' offer no credible explanation for Dr. Foster's decision to count every part of a multi-part archive file as a separate copy of the entire "title" purportedly contained by the archive. (In this way, Dr. Foster counts one single copy of a movie saved on Hotfile in ten sub-parts as ten copies of the entire movie, thus inflating Plaintiffs' figures.) While Plaintiffs assert that Dr. Foster "is not purporting to have counted infringements of complete works for purposes of a statutory damages calculation," Opp. at 10, Hotfile's Motion nowhere mentions any statutory damages calculation or makes any argument based on that concept. Mot. at 12-14. Dr. Foster purports to count downloads of complete works, *see* Foster Reply Decl. ¶ 13 (equating "Files in Suit" with "motion pictures or television programs"),[3] even though it remains undisputed that any part of a multipart archive file is not itself a movie or television show. Levy Decl. ¶ 44. Without the other parts of the archive, each part of an archive is simply unusable data, not copies of "the same motion pictures or television programs." Foster Reply Decl. ¶ 13. Even though downloading nine parts of a ten-part archive movie file does not even result in one usable download of the movie, Dr. Foster indefensibly counts this behavior as nine downloads of the entire movie – a criticism to which Plaintiffs offer no rejoinder. *Id.* at ¶¶ 13-14; Mot. at 12-14. Even if Dr. Foster's Reply Declaration was only offered to demonstrate what Plaintiffs term a "longevity bias"[4] – which courts refer to as the ordinary operation of the DMCA's notice-and-takedown process – by tabulating individual parts of archive files as separate titles, Dr. Foster overstates his results by orders of magnitude.

---

[3] Plaintiffs themselves defined a "title" – *i.e.*, the subject of Dr. Foster's calculations – as "a particular movie or television show." PRMSJ at 5.
[4] Notably, Plaintiffs' inflated figures do not even proximately account for any alleged "longevity bias," as Plaintiffs make no attempt to account for files removed from Hotfile either for inactivity or due to user deletions (or indeed for any other reason) – revealing Dr. Foster's "top 100" table yet again as a transparently unreliable contrivance.

**FILED UNDER SEAL**                             CASE NO. 11-20427-WILLIAMS-TURNOFF

  Finally, Plaintiffs cannot justify Dr. Foster's use of different standards for comparing the number of times Plaintiffs' "titles" were downloaded and the number of times everything else in Hotfile's "top 100" was downloaded. The only explanation Plaintiffs offer is that "because plaintiffs are constantly taking down files that infringe their copyrights . . . [their files do not] accumulat[e] large numbers of downloads," while "the files on Hotfile's list, which plaintiffs are *not* taking down," are not undercounted in the same way. Opp. at 12. In fact, Plaintiffs' premise is demonstrably false: Plaintiffs' have taken down non-infringing titles in Hotfile's list of its "top 100" downloads in the same way they have taken down other files. Hotfile's counterclaim specifically identifies hundreds of improper deletions by just one of the Plaintiffs – including nine files identified by Plaintiffs' own expert as copies of the non-infringing software program "JDownloader" ***which appears 17 times in Hotfile's "top 100" list***. Zebrak Ex. B; Leibnitz Ex. 7. Given that Plaintiffs were "constantly taking down" copies of the non-infringing works in Hotfile's "top 100," Plaintiffs' only purported justification for Dr. Foster's contrived counting method fails.

  In any event, Plaintiffs do not explain why the DMCA's notice-and-takedown procedure, which applies to all files, should justify differentially comparing Plaintiffs' "titles" to other "files." Although Dr. Foster's testimony supposedly shows that "by looking at titles rather than individual files . . . plaintiffs' titles constitute a majority of Hotfile's 'top 100' downloads," Plaintiffs admit that Dr. Foster's "top 100" list is ***not*** a comparison of "titles rather than individual files" at all: it is a comparison of ***Plaintiffs'*** titles to every other individual file. PMSJ at 6; Opp. at 12. Thus, by Plaintiffs' own admission, Dr. Foster's "top 100" list is an "apples-to-oranges" comparison (in this case, a "titles" to "files" comparison). "Such an 'apples and oranges' comparison simply cannot withstand scrutiny," and should be excluded. *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984); *Walden Residential Properties, Inc. v. Genlyte Thomas Group, LLC*, 2003 WL 26112596, *4 (M.D. Fla. April 4, 2003) ("expert testimony should be excluded if it is…in essence an apples-and-oranges comparison.")

## CONCLUSION

  For the foregoing reasons, the Court should strike Paragraphs 13-14 and Exhibit A of the Foster Reply Declaration.

DATED: May 8, 2012                             Respectfully submitted,

-10-

26501\3051326.3

**FILED UNDER SEAL**  CASE NO. 11-20427-WILLIAMS-TURNOFF

/s/
Janet T. Munn, Esq. Fla. Bar No. 501281
Email: jmunn@rascoklock.com
RASCO KLOCK
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102

And

/s/
Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email: rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email: aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email: tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email: dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email: jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone: 415.954.4400
Telecopy: 415.954.4480

And

/s/
Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone: 617.928.1800
Telecopy: 617.928.1802

*Counsel for Defendants Hotfile Corporation
 and Anton Titov*

-11-

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2012, a true and correct copy of the foregoing document was filed conventionally.  On May 8, 2012, it was served on all counsel of record identified below via e-mail and by Federal Express.

Karen L. Stetson, Esq.
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL  33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA  91403-5885
Telephone: 818.935.5812

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC  20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

By: _____
     Janet T. Munn

26501\3051326.3