UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

       *Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

       *Defendants.*

_____/

HOTFILE CORP.,

       *Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

       *Counter-Defendant.*

_____/

**DEFENDANTS' SUPPLEMENTAL BRIEF
ON MOTIONS FOR SUMMARY JUDGMENT**

CASE NO. 11-20427-WILLIAMS-TURNOFF

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.      HOTFILE'S AFFIRMATIVE DMCA MOTION SHOULD BE GRANTED ................. 2

II.     PLAINTIFFS' INDUCEMENT CLAIM IS MERITLESS ............................................. 2

III.    SUMMARY JUDGMENT SHOULD BE DENIED ON CONTRIBUTORY
        INFRINGEMENT ........................................................................................................ 3

        A.      The Studios' Claim For "Contributory Infringement" Should Fail Because
                Substantial Non-Infringing Uses Are A Defense Here. ......................................... 3

        B.      Even If *Sony* Were Inapplicable, Contributory Liability Presents Triable
                Issues of "Knowledge" and "Material Contribution." ........................................... 4

IV.     SUMMARY JUDGMENT SHOULD BE DENIED ON VICARIOUS
        LIABILITY .................................................................................................................. 6

        A.      *Sony* Applies To Vicarious Liability ..................................................................... 6

        B.      There Are Triable Issues On The Financial Benefit Element .............................. 7

        C.      There Are Triable Issues On The Control Element .............................................. 8

V.      WARNER'S CONDUCT HAS CREATED TRIABLE ISSUES THAT
        PRECLUDE SUMMARY JUDGMENT ON BOTH ESTOPPEL AND THE
        COUNTERCLAIM ...................................................................................................... 9

CONCLUSION ....................................................................................................................... 10

CASE NO. 11-20427-WILLIAMS-TURNOFF

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>FEDERAL CASES</u>

*A&M Records, Inc. v. Napster, Inc.,*
239 F.3d 1004 (9th Cir. 2001) ............................................................................. 4

*A&M Records, Inc. v. Napster, Inc.,*
284 F.3d 1091 (9th Cir. 2002) ............................................................................. 5

*Amey, Inc. v. Gulf Abstract & Title, Inc.,*
758 F.2d 1486 (11th Cir. 1985) ........................................................................... 8

*Apple Computers, Inc. v. Microsoft Corp.,*
821 F. Supp. 616 (N.D. Cal. 1993) ...................................................................... 5

*Arista Records LLC v. Myxer Inc.,*
2011 U.S. Dist. Lexis 109668 (C.D. Cal. Apr. 1, 2011) ...................................... 4

*Arista Records LLC v. Usenet.com, Inc.,*
633 F. Supp. 2d 124 (S.D.N.Y. 2009) .................................................................. 1

*Arista Records, Inc. v. Flea World, Inc.,*
356 F. Supp. 2d. 411 (D. N.J. 2005) .................................................................... 7

*Artists Music, Inc. v. Reed Publishing, (USA),*
1994 WL 191643 (S.D.N.Y. May 17, 1994) ....................................................... 7

*BUC International Corp. v. International Yacht Council,*
489 F.3d 1129 (11th Cir. 2007) ........................................................................... 5

*Capitol Records, Inc. v. MP3Tunes, LLC,*
2009 WL 3364036 (S.D.N.Y. Oct. 16, 2009) ..................................................... 1

*Capitol Records, Inc. v. MP3Tunes, LLC,*
2011 WL 5104616 (October 25, 2011) ................................................................ 4

*Carneiro Da Cunha v. Standard Fire Ins. Company/Aetna Flood Ins. Program,*
129 F.3d 581 (11th Cir. 1997) ............................................................................. 9

*Cartoon Networks, LP v. CSC Holdings, Inc.,*
536 F.3d 121 (2d Cir. 2008) ................................................................................ 4

*Dawes-Ordonez v. Realtor-Association of Greater Fort Lauderdale,*
2010 WL 1791754 (S.D. Fl. May 5, 2010) .......................................................... 4

CASE NO. 11-20427-WILLIAMS-TURNOFF

*In re Aimster Copyright Litigation,*
    334 F.3d 643 (7th Cir. 2003) ........................................................................... 4

*IO Group, Inc. v. Veoh Networks, Inc.,*
    586 F. Supp. 2d 1132 (N.D. Cal. 2008) ........................................................... 9

*Koninklijke Philips Electronics N.V. v. Cardiac Science Operating Co.,*
    590 F.3d 1326 (Fed. Cir. 2010).......................................................................... 3

*Kosakow v. New Rochelle Radiology Associates, P.C.,*
    274 F.3d 706 (2d Cir. 2001)............................................................................ 10

*Metro-Goldywn-Mayer Studios, Inc. v. Grokster, Ltd.,*
    545 U.S. 913 (2005)...................................................................................... 2, 3

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) .................................................................. 4, 5, 8

*Religious Technology Ctr. v. Netcom On-Line Commc'n Servs., Inc.,*
    907 F. Supp. 1361 (N.D. Cal. 1995) ........................................................... 5, 8

*Shapiro, Bernstein & Co. v. H.L. Green Co.,*
    316 F.2d 304 (2d Cir. 1963).............................................................................. 7

*Sony Corp. of Amer. v. Universal City Studios, Inc.,*
    464 U.S. 417 (1984)...................................................................................... 3, 6

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,*
    667 F.3d 1022 (9th Cir. 2011) .......................................................................... 9

*Universal City Studios, Inc. v. Sony Corp. of America,*
    480 F. Supp. 429 (C.D. Cal. 1979) .................................................................. 5

*Universal City Studios, Inc. v. Sony Studios of America,*
    480 F. Supp. 429 (C.D. Cal. 1979) .................................................................. 6

## CITATION LEGEND

1.      "DRSF" shall refer to specific paragraph numbers of the Statement of Facts of Defendants Hotfile Corporation and Anton Titov In Opposition to Plaintiffs' Statement of Uncontroverted Facts and Defendants' Statement of Additional Material Facts.

2.      "DOPMSJ" shall refer to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

3.      "DRMSJ" shall refer to Defendants' Reply in Support of Defendants' Motion for Summary Judgment.

4.      "PMSJ" shall refer to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov.

5.      "PRMSJ" shall refer to Plaintiffs' Reply in Support of Plaintiffs' Motion For Summary Judgment [D.E. # 425].

6.      "Foster Reply Decl." shall refer to the reply declaration of Dr. Ian Foster in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated March 19, 2012.

7.      "Yeh Decl." shall refer to the declaration of Jennifer V. Yeh in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012.

8.      "Leibnitz Decl." shall refer to the declaration of Andrew Leibnitz in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

9.      "Boyle Decl." shall refer to the declaration of Professor James Boyle in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

10.     "Levy Decl." shall refer to the declaration of Dr. Daniel S. Levy in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

11.     "Cromarty Decl." shall refer to the declaration of Dr. Andrew Cromarty in support of Defendants' Motion for Summary Judgment [D.E. # 399]

12.     "Zebrak Decl." shall refer to the declaration of Scott Zebrak in support of Warner Bros. Entertainment's Motion for Summary Judgment [D.E. # 301].

13.     "Leibnitz Ex. __," shall refer to exhibits attached to the Leibnitz Declaration.

14.     "Yeh Ex. __," shall refer to exhibits attached to the Yeh Declaration.

15.     "Boyle Ex. __," shall refer to exhibits attached to the Boyle Declaration.

CASE NO. 11-20427-WILLIAMS-TURNOFF

16.    "Cromarty Ex. __," shall refer to exhibits attached to Cromarty Declaration.

17.    "Zebrak Ex. __," shall refer to exhibits attached to the Zebrak Declaration.

CASE NO. 11-20427-WILLIAMS-TURNOFF

## <u>INTRODUCTION</u>

Insults and hyperbole are no substitute for *evidence*.  Despite having engaged in extensive discovery (including an unprecedented four days of Mr. Titov's deposition alone), Plaintiffs have retreated to the same misguided guilt-by-association tactics used to launch this case.  They falsely insinuate that Hotfile is hiding evidence and constantly invoke the names of past-adjudicated infringers (*Grokster, Napster, Limewire, Fung, Usenet*).  *See* Tr. at 7, 134 (arguing that Hotfile "operates in the shadows . . . It is indistinguishable from the notorious infringers . . . them and their ilk.").  The Court saw through this strategy at the pleading stage.  Dkt. # 59 at 3 (denying Plaintiffs' "emergency" motion for a preservation order that "almost appear[ed] to be a set-up for unintended non-compliance"), and  Dkt. # 94 at 5 (dismissing Plaintiffs' "direct infringement" claim, "under the great weight of authority," and "find[ing] neither case" relied on by Plaintiffs involving adjudicated infringers "persuasive.")[1]  It should now again look behind the rhetoric and unsupported accusations to the record evidence in ruling on summary judgment.

The evidence shows that Hotfile–a file-hosting and cloud storage service on which millions of people around the world rely–is nothing like *Napster* or other "notorious infringers" of past cases.  The most "popular" files on Hotfile are undisputedly noninfringing.  Its affiliate program offers an innovative way to allow open source developers to distribute their software.  The conversion rate statistics confirm that infringement does not drive the business.  The majority of files on Hotfile are stored and never downloaded.  Hotfile has implemented state-of-the-art countermeasures endorsed by Plaintiffs.  DOPMSJ at 25-26.  Each of these facts are established by probative and admissible evidence.[2]

On this record, the Court should not take the Plaintiffs' affirmative claims against Hotfile out of the hands of the jury.  Genuine, material and important factual issues remain.  A reasonable jury reviewing the admissible facts could certainly find that Hotfile has no secondary liability.  Mr. Titov's summary judgment motion should be granted.  Plaintiffs concede that there are no triable issues and no court has ever found any person in his position to be personally

---

[1] *See also id.* at 6 (ruling that *Capitol Records, Inc. v. Mp3Tunes, LLC*, 2009 WL 3364036, at *3 (S.D.N.Y. Oct. 16, 2009) and *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 148 (S.D.N.Y. 2009)  were "not correctly decided".)

[2] Rather than proffer evidence, Plaintiffs rely on unreliable inadmissible expert statistical manipulations, blog posts, web page printouts and factual declarations by trial counsel in violation of the Federal Rules of Evidence.  Hotfile's motions to strike these "evidentiary" submissions explain why they should not be considered.  *See* Dkt. # 371, 414 and 469.

CASE NO. 11-20427-WILLIAMS-TURNOFF

liable.  The Court should also grant Hotfile's motion for partial summary judgment under the DMCA, as Plaintiffs do not oppose the merits of that motion.  Finally, the Court should deny Warner' summary judgment motion, as Hotfile's counterclaim raises obvious factual disputes.

To be of most assistance to the Court in the limited space available (and without conceding any of the other disputed issues), Defendants focus herein on those areas where the Court had specific questions or concerns, particularly the secondary liability issues discussed for only a limited time during the August 17, 2012 hearing.

## ARGUMENT

### I.   HOTFILE'S AFFIRMATIVE DMCA MOTION SHOULD BE GRANTED

Plaintiffs concede that they seek no damages after the filing of the Complaint.  (Tr. 48.) As the undisputed facts prove that Hotfile is protected by the DMCA safe-harbor from February 2011 forward, Plaintiffs have offered no substantive opposition, and the post-Complaint period has always been at issue (DRMSJ at 6-8), summary judgment is proper.

### II.   PLAINTIFFS' INDUCEMENT CLAIM IS MERITLESS

The evidence here simply does not support inducement liability, as was brought into sharp relief when Plaintiffs' counsel said with absolute certitude:  "When defendants pay users to upload popular works or interesting works, everybody knows what that means."  (Tr. at 128.) The evidence has shown this to be false – "popular" and "interesting" are not synonymous with "infringing."  DOPMSJ at 23-24.  This negates Plaintiffs' fundamental premise.

Plaintiffs mischaracterize *Grokster* when stating, "The Supreme Court actually said the messaging was irrelevant."  (Tr. at 130.)  The *Grokster* Court said the opposite:  "The classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations. . . ."  *Metro-Goldywn-Mayer Studios, Inc. v. Grokster, Ltd.* 545 U.S. 913, 937 (2005) (emphasis added) ("*Grokster*").  Here, there is no "messaging" evidence remotely similar to the stark and overt messaging found in *Grokster* and other similar cases.  DOPMSJ at 23-24.  Moreover, Plaintiffs have failed to produce any other "clear expression or other affirmative steps" to promote infringement, as they must under *Grokster*.

DOPMSJ at  24-25.  The Court may *sua sponte* grant summary judgment in Defendants' favor on Plaintiffs' inducement claim.[3]

### III.  SUMMARY JUDGMENT SHOULD BE DENIED ON CONTRIBUTORY INFRINGEMENT

The Studios' "contributory infringement" claim fails under *Sony Corp. of Amer. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ("*Sony*"), which established the "substantial non-infringing uses" defense.  This doctrine ***does*** apply to Internet services and Hotfile's non-infringing uses are ***undisputed***.  Even if *Sony* somehow did not apply, however, there would be multiple triable issues on this claim.

### A.  The Studios' Claim For "Contributory Infringement" Should Fail Because Substantial Non-Infringing Uses Are A Defense Here.

Under *Sony*, Hotfile's undisputed "capab[ility] of substantial noninfringing uses" is a complete defense.  *Id*. at 442.  While one who proceeds with the *"object"* (i.e. intent) of promoting infringement cannot claim the *Sony* defense, where a case is premised on "mere knowledge of infringing potential or of actual infringing uses" *Sony* still applies.  *Grokster* at 937.  The Studios concede that *Sony* "potentially" applies to their knowledge-only contributory infringement claim.  (Tr. at 110.)  Hotfile's ***undisputed*** substantial non-infringing uses are a complete defense.  (*Id*. at 161.)

The Studios assert that *Sony* should not apply to a claim against Internet service providers with an "ongoing relationship" to their users.  They are incorrect.  In upholding *Sony*, the *Grokster* Court was "mindful of the need to keep from trenching on regular commerce or discouraging the development of ***technologies***" and that *Sony*'s rule "leaves breathing room for innovation and a vigorous ***commerce***."  *Grokster* at 935, 937 (emph. added).  This language does not distinguish between technologies that are services with an ongoing relationship as opposed to those that are products without such a relationship.

Appellate courts have repeatedly applied *Sony* to Internet services that maintain an ongoing relationship with their users.  In *Napster* the Ninth Circuit wrote, "[t]o enjoin simply because a computer network allows for infringing use would, in our opinion, violate *Sony* and

---

[3] *See Koninklijke Philips Electronics N.V. v. Cardiac Science Operating Co.*, 590 F.3d 1326, 1332 (Fed. Cir. 2010) (*sua sponte* summary judgment appropriate where losing party had "full and fair opportunity to ventilate the issues involved in the motion").

CASE NO. 11-20427-WILLIAMS-TURNOFF

potentially restrict activity unrelated to infringing use." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001). The Seventh Circuit has similarly rejected the Studios' invitation to cabin *Sony*. *In re Aimster Copyright Litigation*, 334 F.3d 643, 648-649 (7th Cir.) (*Sony* applies "[i]f a service facilitates both infringing and non-infringing uses…"). *See also Arista Records LLC v. Myxer Inc.*, 2011 U.S. Dist. Lexis 109668, *137 (C.D. Cal. Apr. 1, 2011) (*Sony* defense applies to site with ongoing relationship to users).

 *Cartoon Networks, LP* v. *CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir., 2008) is in accord. The Second Circuit expressly noted that whether copying was merely "incidental" to the RS-DVR technology would bear upon its "commercially significant non-infringing uses," suggesting that the Second Circuit thinks that *Sony **does apply*** to technology services with an ongoing relationship. *Id.* at 133.[4] Thus, Hotfile's substantial non-infringing uses should bar the Studios' knowledge-based "contributory infringement" claim. *See* n.3, *supra*.

> ### B.   Even If *Sony* Were Inapplicable, Contributory Liability Presents Triable Issues of "Knowledge" and "Material Contribution."

 **Knowledge.** Hotfile is entitled to a trial on whether the Studios' nebulous lists of LastDL links and other similar URLs establish knowledge of ***infringement***. While cases find contributory infringement where there is "*actual* knowledge that *specific* infringing material is available" that a provider fails to purge, Hotfile's undisputed expeditious takedown policy and hashing makes such a showing impossible here. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). *See also*, *Dawes-Ordonez v. Realtor-Association of Greater Fort Lauderdale*, 2010 WL 1791754 (S.D. Fl. May 5, 2010) (no liability where upon notice "Defendant removed the Photographs."); *Capitol Records, Inc. v. MP3Tunes, LLC*, 2011 WL 5104616 (October 25, 2011), **11, 17 (contributory infringement only as to "songs listed in EMI's takedown notices" that were not removed). Thus, the Studios would have to premise

---

[4] The Studios place too much emphasis on the words "ongoing relationship" in *Sony* (*Sony* at 437-38) shorn from context. *Cartoon Networks* noted that the lack of an "ongoing relationship" in *Sony* was just a "factor." *Id. Sony* was contrasting precedents in which indirect infringers had "control," "direct involvement with the allegedly infringing activity," and provided "advertisements" (*id*., n. 18). The absence of such inducement-related facts reduced *Sony* to a case based on knowledge. Thus, substantial non-infringing uses were a complete defense.

CASE NO. 11-20427-WILLIAMS-TURNOFF

contributory infringement on some lower level of constructive or generalized awareness of infringement.  Any such theory presents many triable issues.[5]

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1374-75 (N.D. Cal. 1995) ("*RTC*") found a triable issue as to knowledge where even after a notice was provided to Netcom, there was a "possible fair use defense."  Here, the handful of "LastDLs" and other such links that Plaintiffs advance – which they do not even assert are the files-in-suit[6] – told Hotfile nothing about what the underlying content was, whether it was posted by the copyright owner, whether it was stored, and whether it was fair use or in the public domain, etc.  *See generally* DOPMSJ at 15-20.  The Studios cannot say that Hotfile "should have known" more – particularly given the extent of analysis that they themselves went through to identify supposed infringement in a minuscule fraction of the files that Hotfile hosted.  DMSJ, n.9. The triable issues on knowledge are plain.  *See Universal City Studios, Inc. v. Sony Corp. of Am.*, 480 F. Supp. 429, 459-60 (C.D. Cal. 1979) (district court opinion after trial on constructive knowledge); *BUC Int'l Corp. v. Int'l Yacht Council*, 489 F.3d 1129, 1138 (11th Cir. 2007) (jury trial on "direct, vicarious, and contributory copyright infringement").

**Material Contribution.**  Whether Hotfile "materially contributed" to infringement of the verified files in suit is also at best a jury question.  The law requires "substantial participation." *RTC,* 907 F. Supp. at 1375; *see also A&M Records*, 239 F.3d at 1022; *Apple Computer, Inc. v. Microsoft Corp.*, 821 F. Supp. 616 (N.D. Cal. 1993), *aff'd* 35 F.3d 1435 (9th Cir.).   While Hotfile provides hosting services it does not provide a "search engine" and it is thus not "an integrated service designed to enable users to locate and download," facts which were essential in *Napster*.

---

[5]  As a matter of policy, the danger with allowing such low levels of knowledge is that the Googles, Facebooks, and Amazons of the world all have some generalized knowledge that their Internet systems are misused by some.  The cases have found that such generalized knowledge does not create liability.  *See, e.g., Amazon*, 508 F.3d at 1171-1172.

[6] *See Universal City Studios*, 480 F. Supp. at 459-60 ("there was no evidence at trial that any advertisements or other statements by defendants in any way induced or caused to be made any of the copies at issue").  Plaintiffs confirmed at the hearing that they are only moving for summary judgment on the "files-in-suit" listed in Yeh Decl. Ex. 56.  *See* Tr. at 99; Yeh Decl. ¶ 57, Ex. 56. In addressing traditional common law claims for vicarious liability and contributory infringement, it is axiomatic that the elements must relate to the specific infringing files at issue. The injunction entered against Napster – which the Ninth Circuit required the district court to narrow *"to reflect the limits of Napster's potential liability for vicarious and contributory infringement"* – required plaintiffs to identify "specific infringing files" that Napster then had to block.  *A&M Records, Inc. v. Napster, Inc.,* 284 F.3d 1091, 1095-96 (9th Cir. 2002).

CASE NO. 11-20427-WILLIAMS-TURNOFF

*Napster*, 114 F. Supp. 2d 919-20, *aff'd* 239 F.3d 1004, 1022.  Instead, Hotfile supplies

*countermeasures*, including SRAs and MD-5 hash blocking, which the Studios themselves

requested and considered "ideal,"[7] a sharp contrast to cases like *Napster*.  Hotfile is entitled to a

trial on whether these dramatically different facts from past cases can qualify as "material

contribution."  *Furthermore*, "in an action for contributory infringement against the seller of

copying equipment, the copyright holder may not prevail unless the relief that he seeks affects

only his programs, or unless he speaks for virtually all copyright holders with an interest in the

outcome." *Sony* at 446.  Here, the Studios cannot show that the relief they seek would only affect

their programs, nor have they shown that they speak for "virtually all" copyright owners

represented on Hotfile. (To the contrary, the speculative and unreliable Waterman-Zebrak study

and data from Vobile suggest that the Studios' content is less than 10% and possibly as low as

1% of the content hosted on Hotfile; and their interests are worlds apart from most Hotfile users.)

This presents another triable issue precluding summary judgment.

## IV.  SUMMARY JUDGMENT SHOULD BE DENIED ON VICARIOUS LIABILITY

### A.  *Sony* Applies To Vicarious Liability

The Supreme Court's opinion in *Sony* applies to vicarious liability.[8]  *See e.g., Sony*, 464

U.S. at 439 ("If *vicarious liability* is to be imposed on Sony in this case . . . .  There is no

precedent in the law of copyright for the imposition of *vicarious liability* on such a theory.") [9]

---

[7] Dr. Cromarty explains that in addition to DMCA-prescribed notice-and-takedown, Hotfile follows "industry-standard and business-reasonable practices" with respect to its SRA and MD5 countermeasures.  (Cromarty Decl., App. C, Exhibit R (Cromarty Rep.), ¶¶ 152-53.)  The weight to be given to this expert testimony presents a quintessential fact issue for trial.

[8] Though vicarious liability was "not nominally" before the Court, the Court left little doubt that its decision was intended to apply to it.  *See* 464 U.S. 435 n. 17 ("[T]he lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn . . . . [R]easoned analysis of respondents' unprecedented contributory infringement claim necessarily entails consideration of arguments and case law which may also be forwarded under other labels . . . .").  Indeed, *Sony* involved an appeal from a district court ruling against the plaintiffs (Disney and Universal) expressly on the issue of vicarious liability.  *Universal City Studios, Inc. v. Sony Studios of Amer.*, 480 F. Supp. 429, 462 (C.D. Cal. 1979)).

[9] While the *Napster* court stated, with almost no analysis, that *Sony* does not apply to vicarious liability, *see* 239 F.3d at 1022-23, no other circuit court has adopted that interpretation, which is in obvious conflict with *Sony* itself.  *Compare Aimster*, 334 F.3d at 654-55 (recognizing that *Sony* addressed vicarious liability).

CASE NO. 11-20427-WILLIAMS-TURNOFF

Because Hotfile's substantial noninfringing uses are undisputed (*see supra*), Plaintiffs' motion for summary judgment should be denied as to vicarious liability.

### B.      There Are Triable Issues On The Financial Benefit Element

Even if the Court disregards *Sony*, there are triable issues on the affirmative elements of vicarious liability.  Plaintiffs must prove an "obvious and direct financial interest in the exploitation of copyrighted materials."  *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir. 1963).  The evidence here shows: Premium subscriptions are the sole revenue source; a higher "conversion rate" to premium for noninfringing files; noninfringing files are most popular[10]; and stored files predominate.  DRSF 24, 28, 32; Boyle Ex. 2 at ¶ 53; Waterman Reply Decl.¶ 4; Leibnitz Ex. 8.   This evidence raises triable issues.

Plaintiffs rely on a tortured analogy to "swap-meet" cases. But one of Plaintiffs' main swap-meet cases expressly rejected Plaintiffs' asserted analogy between a swap-meet and an ISP.  *See Arista Records, Inc. v. Flea World, Inc.,* 356 F. Supp. 2d. 411, 417, 423 (D. N.J. 2005) ("A flea market is not an 'internet service provider' and the instant action has nothing to do with the internet . . . ."). Beyond that, however, in those cases the landlord and vendor have a "symbiotic relationship" such that "the very success of the landlord's venture depends on the counterfeiting activity.*" Adobe Systems Inc.  v. Canus Productions, Inc.,* 173 F. Supp. 2d 1044, 1051 (C.D. Cal. 2001) (denying plaintiffs' motion for summary judgment against computer products); *see also Artists Music, Inc. v. Reed Publishing (USA),* 1994 WL 191643 (S.D.N.Y. May 17, 1994) (granting defendants' motion for summary judgment because trade show organizer charged flat fee to exhibitors).   At a minimum, the evidence raises a triable issue as to whether Hotfile's "very success" depends on infringement.

Plaintiffs incorrectly argue that "any causal connection between infringement and revenues" would be enough.  (Tr. at 117.)  That is not the law, and the case on which they rely, *Ellison*, did not so hold.  While *Ellison* suggested that the "direct financial benefit" need not be a substantial percentage of the defendant's overall profits, the court granted the *defendant's* summary judgment motion on this issue, citing the DMCA legislative history stating that "receiving a one-time set-up fee and flat periodic payments for service . . . [ordinarily] would not constitute receiving a 'financial benefit direction attributable to the infringing activity'" (*id.*

---

[10] The parties' experts agreed that the two most frequently downloaded files on Hotfile, iReb and Sn0breeze, "are noninfringing and legal to distribute."  Boyle Ex. 2 at 25.

CASE NO. 11-20427-WILLIAMS-TURNOFF

at 1079) and noting that the plaintiff failed to offer evidence that AOL attracted or retained subscriptions because of the material that infringed plaintiff's copyrights or lost subscriptions because it removed such material.  Like AOL in *Ellison*, Hotfile receives revenues from flat periodic payments.  And as in *Ellison*, there is no evidence that even a single user purchased a Premium subscription to obtain access to Plaintiffs' files-in-suit or cancelled an account because any of the files-in-suit were removed.  Thus, *Ellison* supports Hotfile's position on vicarious liability.  *See also CCBill*, 488 F.3d at 1117-18 (following *Ellison* in finding no financial benefit where web host charged flat-fee); *Netcom*, 907 F. Supp. at 1376 (fixed-fee inadequate).

Further, Plaintiffs incorrectly believe that they can prove a direct financial benefit based on a dip in Hotfile's revenues in February 2011.  This argument asks the Court to make a series of untenable inferential leaps, including that Premium users did not leave to avoid civil discovery of their *private* files or to avoid the loss of their stored files if the company were shut down.  It also ignores the evidence that the majority of files (and most popular files) are noninfringing and/or stored and that noninfringing files have a higher conversion rate (thus, if anything, the drop in revenue is more likely attributable to a drop in noninfringing content).  *See Amey, Inc. v. Gulf Abstract & Title, Inc.,*758 F.2d 1486 (11th Cir. 1985) ("If reasonable minds differ on the inferences generated by undisputed facts, then summary judgment is inappropriate.")  And none of this argument gets Plaintiffs past the fact that Premium users pay a flat access fee.

### C.       There Are Triable Issues On The Control Element

Plaintiffs rely entirely on the statement in *Napster* that "[t]he ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise." *Napster*, 239 F.3d at 1023.  However, the Ninth Circuit subsequently clarified this statement, holding that a defendant is not liable if it does not have "the *practical ability*" to control infringement.  *See Amazon*, 508 F.3d at 1173-74. The court concluded that Google was not vicariously liable for infringing thumbnail images because its software "lacks the ability to analyze every image on the [I]nternet, compare each image to all the other copyrighted images that exist in the works . . . and determine whether a certain image on the web infringes someone's copyright." *Id.*  The court distinguished Napster due to its searchable index of songs and *Fonovisa* because a swap meet operator can physically patrol its premises. *Id.* at 1174.

Hotfile hosts over a hundred million files and does not have an index describing the content of the files it hosts, which are private and have user-given names that provide no reliable

-8-

CASE NO. 11-20427-WILLIAMS-TURNOFF

indicator of file content.  DRSF 35.  Hotfile is used extensively for storage, which is a fair use.
DOPMSJ at 28. *See* Cromarty Decl. App. C, ¶ 201 (summarizing lack of right and ability to
control).  At a minimum, this evidence raises a triable issue of fact as to whether Hotfile, like
Google, lacks the "practical ability" to analyze every one of those files, compare them to all
copyrighted material in the world, and determine whether they infringe someone's copyright.

      Moreover, Hotfile has taken numerous steps (*e.g,* strict notice and takedown, hash
blocking, SRAs, digital fingerprinting) to control infringement.[11]   DRSF 33, 38-40.  In *IO
Group*, on facts similar to this case, the court granted summary judgment for the defendant Veoh
on the element of "control" because Veoh, like Hotfile, policed its system by, *inter alia*,
"promptly respond[ing] to takedown notices," and "prevent[ing] that same content from being
uploaded again."[12]  *IO Group, Inc.,* 586 F. Supp. 2d at 1150-1153.  The court further found for
Veoh on "control" because (like Hotfile) its "raison d'etre" was not (like Napster) to foster
infringement and Veoh's file names did not indicate content.  This holding defeats Plaintiffs'
"control" argument.

## V.   WARNER'S CONDUCT HAS CREATED TRIABLE ISSUES THAT PRECLUDE SUMMARY JUDGMENT ON BOTH ESTOPPEL AND THE COUNTERCLAIM

      **Equitable Estoppel.**  Plaintiff Warner Bros. should be estopped from asserting that
Hotfile's copyright protection policies do not qualify for the DMCA safe harbor defense.  This is
true regardless of whether intent to deceive by Warner is required.[13]  There is ample evidence
showing both that Warner intended or, at least, had reason to believe Hotfile would rely on its
conduct regarding Hotfile's copyright compliance and its silence as to any criticism of the repeat
infringer policy.[14]  In reliance, Hotfile implemented and maintained the copyright protection

---

[11]  From day one, Hotfile has done far more to combat infringement than the Ninth Circuit
required Napster to do in the injunction entered there.  *Napster*, 284 F.3d at 1095-96.

[12] Though the discussion in *IO Group* concerned the "control" element under the DMCA, the
court expressly applied a common law vicarious liability analysis, *see* 586 F. Supp. 2d at 1150,
because the Ninth Circuit had not yet confirmed, as it did last year, that the standards are
different, *see UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d 1022, 1045 (9th
Cir. 2011).

[13] Intent is not required; "equitable estoppel will apply if the [estopped] party *had reason to
believe* the party asserting the estoppel would rely on" its statements.  *Carneiro Da Cunha v.
Standard Fire Ins. Company/Aetna Flood Ins. Program*, 129 F.3d 581, 587 (11th Cir. 1997).

[14] Warner asked for a series of copyright protection measures, which Hotfile unfailingly
implemented: (1) a Special Rightsholder Account ("SRA") to supplement the normal DMCA

measures that Warner had proposed and praised.  Instead of asking Hotfile to strengthen its repeat infringer policy (as it now admits to have wanted "for years"), Warner remained silent, and Hotfile maintained its then-existing policy—a policy that Warner now contends was not "reasonable."  Titov Decl. Ex. 34.  Estoppel applies to statutory defenses (such as the DMCA safe harbor) as well as to affirmative claims.[15]  There are questions of material fact as to whether Warner intended or had reason to believe that Hotfile would rely on its representations and omissions about the adequacy of Hotfile's copyright policies and anti-piracy measures.

**Counterclaim.**  While Warner was praising Hotfile as being complaint with the DMCA, it knew that its own use of the powerful SRA tool was not.  Warner relied on software "robots" that it knew were wrong as often as 10% of the time.  Warner  inaccurately represented that "there is no record evidence that there's a problem with notices."  (Tr. at 83.)  There is ample evidence in the record.  *See* (Tr. Slides Tab D; summarizing the record evidence).

## CONCLUSION

The Court should: (1) deny Plaintiffs' summary judgment motion; (2) grant Hotfile's partial summary judgment motion; (3) grant Mr. Titov's summary judgment motion; and (4) deny Warners' summary judgment motion.


DATED: August 31, 2012                    Respectfully submitted,

                                          s/ Janet T. Munn
                                          Janet T. Munn, Esq. Fla. Bar No. 501281
                                          Email: jmunn@rascoklock.com

---

notice and takedown procedure (Leibnitz Ex. 28); (2) increases in the number of links it could delete via the SRA (Leibnitz Ex. 30); (3) free premium accounts to "verify" the files it was deleting (Thompson Ex. 3); and (4) SRAs for its business partners.  Leibnitz Ex. 31.  Warner even made a business proposal--that Hotfile users be redirected to purchase Warner material.  Titov Ex. 34.  Warner told Hotfile these policies were "ideal."  Titov Ex. 23.

[15] "[N]othing prevents a court from exercising its equitable powers to estop a party from raising a particular claim *or defense*."  *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 724 (2d Cir. 2001) (emphasis added).  For example, under the FMLA, "an employer who remains silent when its employee announces that she plans to take medical leave" misleading that employee into believing that she is protected cannot assert statutory ineligibility as a defense, even if the employee is in fact ineligible under the terms of the statute. *Id*. at 726.

CASE NO. 11-20427-WILLIAMS-TURNOFF

RASCO KLOCK
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone:  305.476.7101
Telecopy: 305.476.7102

And


s/ Roderick M. Thompson
Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email:  rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email:  aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email:  tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email:  dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email:  jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy: 415.954.4480


And


s/ Valentin Gurvits
Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email: vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone:  617.928.1800
Telecopy:  617.928.1802

*Counsel for Defendants Hotfile Corporation
 and Anton Titov*

-11-

CASE NO. 11-20427-WILLIAMS-TURNOFF

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on August 31, 2012, a true and correct copy of the foregoing

document was served on all counsel of record or pro se parties identified below either via

transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized

manner for those counsel or parties who are not authorized to receive electronically Notices of

Electronic Filing.

Karen L. Stetson, Esq.
GRAY-ROBINSON, P.A.
Email: Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.416.6880
Telecopy: 305.416.6887

Karen R. Thorland, Esq. (admitted pro hac vice)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Telephone: 818.935.5812

Steven B. Fabrizio, Esq. (admitted pro hac vice)
Email: sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted pro hac vice)
Email: dpozza@jenner.com
Luke C. Platzer, Esq. (admitted pro hac vice)
Email: lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Ave, N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Telecopy: 202.639.6066

By: s/ Janet T. Munn
    Janet T. Munn