UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_______________________________________________/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_______________________________________________/

**PLAINTIFFS' POST-HEARING MEMORANDUM**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

CITATION LEGEND........ ii

1. The "Reasonableness" Of Hotfile's Repeat Infringer Policy Is A Question Of Law..........1

2. Hotfile Is A Vicarious Infringer That Financially Benefitted From Infringement. .............2

3. The *Sony* "Staple Article Of Commerce" Defense Is Inapplicable. ........3

4. Plaintiffs' Statistical Evidence And *Grokster* Inducement.........4

5. Hotfile's Post-Complaint Conduct Is Not Part Of The Case. ........6

6. Hotfile Is Not Entitled To Post-Complaint Safe Harbor.........8

   a. *Inadequate repeat infringer policy*. ........8

   b. *Improper designation of DMCA Agent* ........9

   c. *Control/financial benefit/inducement*. ........9

7. Titov's Admitted Role In Operating Hotfile Makes Him Personally Liable.....................10

## TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)......2, 4, 8

*In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003)......4

*Arista Records, Inc. v. Flea World*, Inc., Civ. A. No. 03-2670 (JBS), 2006 WL 842883 (D.N.J. Mar. 31, 2006)......2, 3

*Arista Records, LLC v. Myxer Inc.*, No. CV 08-3935 GAF, 2011 U.S. Dist. Lexis 109668 (C.D. Cal. Apr. 1, 2011)......1, 8, 9

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009)......2, 3, 5

*Babbit Electronics, Inc. v. Dynascan Corp.*, 828 F. Supp. 944 (S.D. Fla. 1993), *aff'd*, 38 F.3d 1161 (11th Cir. 1994)......10

*BMG Music v. Gonzalez*, 430 F.3d 888 (7th Cir. 2005)......8

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008)......3

*Columbia Pictures Industries, Inc. v. Fung*, No. Civ. 06-5578 SVW, 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009)......5

*Ellison v. Robertson*, 189 F.Supp.2d 1051 (C.D. Cal. 2004), *aff'd in part, rev'd in part,* 357 F.3d 1072 (9th Cir. 2004)......2

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)......2, 5

*Foreign Imported Productions & Publishing, Inc. v. Grupo Industrial Hotelero S.A.*, No. 07-22066-CIV, 2008 WL 4724495 (S.D. Fla. Oct. 24, 2008)......10

*H&R Block Easter Enterprises, Inc. v. Morris*, 606 F.3d 1285 (11th Cir. 2010)......1

*Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132 (N.D. Cal. 2008)......8

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1192 (C.D. Cal. 2007)......7

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966 (C.D. Cal. 2006)......5, 6

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)......4, 5

*Penley v. Eslinger*, 605 F.3d 843 (11th Cir. 2010)......1

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007)......3, 6

*Price v. M&H Valve*, 177 F. App'x 1 (11th Cir. 2006) ....................7

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ....................3, 4

*Viacom International, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012) ....................9

**STATUTES**

17 U.S.C. § 512(c)(2) ....................9

**OTHER AUTHORITIES**

37 C.F.R. § 201.38(c) ....................9

Designation of Agent To Receive Notification of Claimed Infringement, 76 Fed. Reg. 59,953 (Sept. 28, 2011) ....................9

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 12.04 (2012) ....................4

*Restatement (Second) Of Torts* § 8A (1965) ....................6

## CITATION LEGEND

1. "Boyle Ex. __" shall refer to the exhibits attached to the Declaration of Professor James Boyle in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, dated March 6, 2012, available publicly at Docket No. 391-1.

2. "Foster Decl." shall refer to the declaration of Dr. Ian Foster, dated and filed February 17, 2012, in support of Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, available publicly at Docket No. 325-17.

3. "HF Reply MSJ" shall refer to the Reply Memorandum of Hotfile Corporation in Support of Defendant's Motion for Partial Summary Judgment Under the DMCA's Safe Harbor, dated March 19, 2012, available publicly at Docket No. 416.

4. "HF SUF" shall refer to specific paragraph numbers in Statement of Undisputed Material Facts in Support of Motion of Defendant Hotfile Corporation for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor, dated February 17, 2012, availably publicly at Docket No. 319.

5. "Leibnitz Ex. __," shall refer to exhibits attached to the Declaration of Andrew Leibnitz in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, dated March 7, 2012, available publicly at Docket No. 390.

6. "Opp. to TSUF" shall refer to specific paragraph numbers of Plaintiffs' Counterstatement of Material Facts in Opposition to Anton Titov's Motion for Summary Judgment, dated March 7, 2012, available publicly at Docket No. 397.

7. "PCSUF" shall refer to specific paragraph numbers in Plaintiffs' Counterstatement of Material Facts in Opposition to Hotfile's Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor, dated March 7, 2012, available publicly at Docket No. 397.

8. "Pls. MSJ" shall refer to Plaintiffs' Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012, available publicly at Docket No. 322.

9. "Pls. Opp. to HF MSJ" shall refer to Plaintiffs' Memorandum of Law in Opposition to Defendant Hotfile Corporation's Motion for Partial Summary Judgment Based on the Digital Millennium Copyright Act Safe Harbor, dated and filed under seal on March 7, 2012, available publicly at Docket No. 400.

10. “Pls. Opp. to Mot. to Strike Waterman Rebuttal” shall refer to Plaintiffs’ Opposition to Defendants’ Motion to Strike Plaintiffs’ Rebuttal Report of Dr. Richard Waterman, dated January 23, 2012, available at Docket No. 232.

11. “Pls. Opp. to Titov MSJ” shall refer to Plaintiffs’ Memorandum of Law in Opposition to Defendant Anton Titov’s Motion for Summary Judgment, dated and filed under seal on March 7, 2012, available publicly at Docket No. 395.

12. “Pls. Reply MSJ” shall refer to Plaintiffs’ Reply Memorandum in Support of Plaintiffs’ Motion for Summary Judgment, dated March 19, 2012, available publicly at Docket No. 425.

13. “PSUF” shall refer to specific paragraph numbers of uncontroverted facts in Plaintiffs’ Statement of Uncontroverted Facts submitted in support of Plaintiffs’ Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 17, 2012, available publicly at Docket No. 323.

14. “Thompson Ex. __,” shall refer to exhibits attached to the Declaration of Roderick Thompson in Support of Defendants’ Opposition to Plaintiff Warner Bros. Motion for Summary Judgment, dated February 27, 2012, available publicly at Docket No. 354.

15. “Titov Mot.” shall refer to the Motion and Memorandum of Law in Support of Defendant Anton Titov’s Motion for Summary Judgment, dated February 17, 2012, available publicly at Docket No. 316.

16. “Yeh Ex. __,” shall refer to exhibits attached to the Declaration of Jennifer V. Yeh in Support of Plaintiffs’ Motion for Summary Judgment Against Defendants Hotfile Corp. and Anton Titov, dated February 16, 2012, available publicly at Docket No. 324-1, the Declaration of Jennifer V. Yeh in Support of Plaintiffs’ Opposition to Defendant Anton Titov’s Motion for Summary Judgment and Defendant Hotfile Corp.’s Motion for Summary Judgment, dated and filed under seal on March 7, 2012, as well as the Reply Declaration of Jennifer V. Yeh in Support of Plaintiffs’ Motion for Summary Judgment, dated March 16, 2012, available publicly at Docket No. 426-1. For the convenience of the Court, the exhibits attached to the Yeh Declarations have been consecutively numbered. Where appropriate, citations to such exhibits may also include pinpoint citations to the page number(s), and paragraph or line numbers, internal to the cited document. In some instances where individual Yeh Declaration exhibits were not paginated, page numbers have been added manually for ease of the Court’s reference.

The parentheticals indicate the nature of the item cited – *e.g.*, deposition transcripts ("dep.") – or documents produced in discovery by various parties. Thus, by way of illustration, "Yeh Ex. 1 (Titov dep.) at 200:1-10" would refer to the deposition of defendant Anton Titov, which could be found in Exhibit 1 to the Yeh Declaration, at page 200 of the transcript pages, at lines 1 through 10. And, "Yeh Ex. 110 at 2" would refer to Exhibit 110 to the Yeh Declaration, and specifically the page of that Exhibit found at page 2 of the numbered Exhibit pages.

Following the August 17 hearing, Plaintiffs herein address issues on which the Court may benefit from further briefing.

1. The "Reasonableness" Of Hotfile's Repeat Infringer Policy Is A Question Of Law.

Hotfile is ineligible for DMCA safe harbor, *inter alia*, because it failed to reasonably implement a repeat infringer policy. *See* Pls. MSJ at 19-22; Pls. Reply MSJ at 9-10. There is perhaps no better proof as to the unreasonableness of Hotfile's repeat infringer policy than Defendants' own recognition that they needed to misrepresent their policy, repeatedly, to copyright owners. *See* Leibnitz Ex. 29 at 4-5; PSUF 4(b). Prior to Plaintiffs' filing suit, Hotfile received over 8 million infringement notices from copyright owners. PSUF 1. Those notices identified 24,790 blatant repeat infringers – including thousands of Hotfile users with *25 or more* "strikes"; these repeat infringers were responsible for uploading almost half of all files ever uploaded to Hotfile. PSUF 5(a); Foster Decl. ¶ 60. Although it would have been "trivial" to do so, PSUF 2, Hotfile admittedly did not terminate a single user based on those notices. Hotfile terminated just 43 users in total for copyright infringement, and almost all of those were because Hotfile was either sued or threatened with suit. PSUF 4(c) (33 of the 43 were only after one copyright owner obtained a TRO against Hotfile).[1]

The material facts are not in dispute; the only issue is whether, as a legal matter, what Hotfile did was a *reasonable* implementation under § 512(i). In the Eleventh Circuit, reasonableness is a question of law. *See, e.g.*, *Penley v. Eslinger*, 605 F.3d 843, 848-49 (11th Cir. 2010) ("once we have determined the relevant set of facts . . . the reasonableness of [defendant's] actions . . . is a pure question of law") (quotation marks omitted; alterations in original); *H&R Block Easter Enters., Inc. v. Morris*, 606 F.3d 1285, 1290 (11th Cir. 2010).[2] Thus, this Court can and should rule as a matter of law that Hotfile did not comply with § 512(i).

[1] Hotfile's argument that copyright owners should have to identify repeat infringers is wrong as a matter of law. Section 512(i) places that burden on Hotfile. It is also factually untenable. Titov admitted that, given the design of the Hotfile system, copyright owners cannot identify the uploader of an infringing file, and thus cannot identify repeat infringers. PSUF 3.

[2] *Arista Records, LLC v. Myxer Inc.*, No. CV 08-3935 GAF, 2011 U.S. Dist. Lexis 109668 (C.D. Cal. Apr. 1, 2011), relied upon by Hotfile at the hearing, does not suggest the contrary. In *Myxer*, the defendant had not cross-moved for summary judgment; thus, it was not procedurally possible for the court to deem the defendant's policy reasonable on summary judgment. *Id*. at *69-71. Moreover, in contrast to Hotfile, the *Myxer* defendant systematically terminated repeatedly infringing uploaders based on DMCA notices. *Id*.

2. Hotfile Is A Vicarious Infringer That Financially Benefitted From Infringement.

If the Court were to conclude, as it should, that Hotfile is ineligible for DMCA safe harbor because it did not have a compliant repeat infringer policy, then the Court would not need to consider any other basis for disqualifying Hotfile from DMCA safe harbor. Nor would the Court need to address Hotfile's liability under *Grokster*; absent DMCA safe harbor, Hotfile's liability as a contributory and vicarious infringer is straightforward.

At the August 17 hearing, the Court inquired as to the "financial benefit" prong of vicarious copyright infringement. It is well established that the "financial benefit" prong of the common-law vicarious standard does *not* require that a defendant benefit exclusively or even predominantly from infringement; nor does it require that the benefit from infringing activity be different in kind from any benefit received from noninfringing conduct. *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004), is on-point. There, the district court had required that a 'substantial' proportion of a defendant's income" must "be directly linked to infringing activities for the purpose of vicarious liability analysis." *Id.* at 1078; *Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1062-64 (C.D. Cal. 2004), *aff'd in part, rev'd in part*, 357 F.3d 1072 (9th Cir. 2004). The Ninth Circuit, however, held that the "quantification requirement" was error. 357 F.3d at 1078. The "essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and ***any*** financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." 357 F.3d at 1079; *see also, e.g., Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156-57 (S.D.N.Y. 2009) (emphasis added); Pls. MSJ at 34-35; Pls. Reply MSJ at 19-20.

A financial benefit is sufficiently direct for vicarious liability purposes "where the availability of infringing material 'acts as a "draw" for customers.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001). Infringement does not have to be the "predominant" draw, or even a "substantial" draw; the financial benefit prong is satisfied where access to infringing content served as "a" draw. *E.g., Ellison*, 357 F.3d at 1078-79 ("There is no requirement that the draw be 'substantial'"); *Arista Records, Inc. v. Flea World*, Inc., Civ. A. No. 03-2670 (JBS), 2006 WL 842883, at *12 (D.N.J. Mar. 31, 2006) ("The case law indicates that the presence of infringing music does not need to be a significant draw to establish vicarious liability, only that infringing music must be 'a' draw"). Thus, so long as *some* users were attracted to Hotfile to download infringing content, the test is satisfied. *Usenet.com*, 633 F.

Supp. 2d at 156-57. Here, the fact that Hotfile's revenues *fell by 94%* when Hotfile was forced to begin terminating repeat infringers, *see* Thompson Ex. 34, Schedule 1 – and the concomitant complaints from disgruntled users that they could no longer locate named infringing files on the system, *see* PSUF 16(e)(iii) – prove beyond question that infringing content, at a minimum, acted as "a" draw for many Hotfile users. Indeed, Hotfile's own evidence shows that the presence of infringing files attracted users whom Hotfile converted to paying "premium" subscribers. *See* Boyle Ex. 2 ¶ 53; *see also* Pls. MSJ at 35 (reciting further evidence).

3. The *Sony* "Staple Article Of Commerce" Defense Is Inapplicable.

As a matter of law, the "staple article of commerce" doctrine, *see Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), is not a defense to Hotfile's infringement.

First, *Sony* is not a defense to Hotfile's contributory liability because – unlike the manufacturer of the Betamax in *Sony* – Hotfile maintains an ongoing relationship with its infringing users during the course of the infringement. Hotfile is not a "staple article of commerce" such that the manufacturer has no further control over its use. Hotfile's ongoing relationship with and support of infringing users makes *Sony* inapplicable regardless of whether the Hotfile system has substantial noninfringing uses. Pls. MSJ at 34 n.13; Pls. Reply MSJ at 18. As the Second Circuit recognized in *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 133 (2d Cir. 2008), the lack of an "ongoing relationship" between the distributor and product user was the critical factor in *Sony*.[3] As *Flea World* explains:

> Here, the corporate Defendants are not distributors of a device or product that has non-infringing uses like in *Grokster* and *Sony*. In those cases, once the defendant released the device into commerce, the defendant had no control of the end-user's use of the device (whether for infringing or non-infringing use). In contrast, here, the corporate Defendants operate an ongoing business in which they exert substantial and continuous control over the operations of the Market, the types of goods sold there, and the behavior and actions of the direct infringers, the vendors. [That] … clearly distinguishes this case from *Grokster*.

2006 WL 842883 at *15; *accord Usenet.com*, 633 F. Supp. 2d at 155-56 ("*Sony*'s insulation from contributory liability is inapplicable" when "[d]efendants maintain an ongoing relationship

[3] The only post-*Grokster* case Defendants cite is *Perfect 10, Inc. v. Amazon.com*, 508 F.3d 1146 (9th Cir. 2007). However, in that case Google did not have an ongoing relationship with users at the time of infringement – because the infringement occurred through third party websites. Here, Hotfile copies, stores and transmits the infringing files from its own servers, and maintains continuous relationships with infringing users as premium subscribers and as Affiliates.

with their users...”); *Sony*, 464 U.S. at 437-38 (noting that contributory infringement has been applied in “cases involving an ***ongoing relationship*** between the direct infringer and the contributory infringer at the time the infringing conduct occurred”) (emphasis added).

Second, *Sony* is not a defense to *Grokster* inducement liability or to vicarious liability. In *Grokster,* which involved distribution of a product (software), the Supreme Court clarified that *Sony* only prohibits “presuming or imputing intent” to infringe; under *Sony*, one cannot impute a defendant’s intent to assist infringement “solely from the design or distribution of a product capable of substantial lawful use.” *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 933 (2005). Inducement liability, however, does not involve imputing intent; intent is proven “by clear expression or other affirmative steps taken to foster infringement,” rendering *Sony* irrelevant. *Id.* at 934, 936-47.

The *Sony* defense is also irrelevant to vicarious liability altogether because intent is not an element of the claim, so there is no presumed intent that the *Sony* defense could dispel. *See Napster*, 239 F.3d at 1022 (the “‘staple article of commerce’ analysis has no application to . . . liability for vicarious copyright infringement.” (citation omitted)); *see also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, §§ 12.04[A][2] & [A][3][b] (2012) (same). This makes sense because vicarious liability is based upon the defendant’s ability to control infringements, whereas the *Sony* defense is premised upon the manufacturer’s *inability* to control any potential infringements after selling a product into the stream of commerce.[4]

No court has ever held that *Sony* operates as a defense to vicarious infringement.

4. Plaintiffs’ Statistical Evidence And *Grokster* Inducement.

Hotfile has devoted substantial effort trying to poke holes in Plaintiffs’ statistical analysis proving that approximately 90% of Hotfile downloads were of infringing content. Plaintiffs have already responded to these misguided attempts. *See* Pls. Reply MSJ at 3-6; Pls. Opp. to HF MSJ at 10 n.5; *see also generally* Pls. Opp. to Mot. to Strike Waterman Rebuttal.

---

[4] At the hearing, Defendants cited *Aimster* in arguing that *Sony* operates as a defense to a vicarious claim. *Aimster*, however, merely commented in *dicta* that *Sony* had treated contributory and vicarious infringement “interchangeably”; *Aimster* did not address vicarious liability after finding that the defendant was a contributory infringer (and finding *Sony* unavailable as a defense to the defendant’s contributory liability). 334 F.3d at 654-55. *Aimster* was also decided before *Grokster* – *i.e.*, before the Supreme Court clarified that *Sony* is a defense only against theories of liability predicated upon presumed intent. *Grokster*, 545 U.S. at 933-34.

Regardless, Defendants' criticisms do not create a material dispute for purposes of summary judgment. As a threshold matter, the statistical evidence is not needed to hold Hotfile liable for contributory or vicarious infringement. The quantum of infringement on Hotfile is immaterial to vicarious liability. *Ellison*, 357 F.3d at 1078-79 (infringing content minimal); *Usenet.com*, 633 F. Supp. 2d at 156-57 (music less than 1% of available newsgroups). Additionally, the overwhelming infringement on Hotfile is not necessary to show Hotfile knowingly contributed to infringement. Eight million infringement notices, together with the other ample evidence of Hotfile's knowledge of pervasive infringement, more than establish sufficient constructive knowledge for purposes of common law contributory copyright infringement. PSUF 9-11; Pls. MSJ at 24-27, 33; Pls. Reply MSJ at 17.

The overwhelming infringement on Hotfile is of course relevant to Plaintiffs' *Grokster* inducement claim – because it shows that the *sine qua non* of Hotfile was copyright infringement. As one court put it, the "scale of infringement makes it more likely that [defendant] condoned illegal use." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 985 (C.D. Cal. 2006). But, the precise *percentage* of infringement "is irrelevant: the evidence clearly shows that Defendants' users infringed on a significant scale. It simply does not matter whether 75% (to pick a number) of available materials were copyrighted or 95% of available materials were copyrighted." *Columbia Pictures Indus., Inc. v. Fung*, No. Civ. 06-5578 SVW (JCx), 2009 WL 6355911, at *4 (C.D. Cal. Dec. 21, 2009).[5] Even taking Defendants' misguided objections to Dr. Waterman's methodology at face value, they do not create a material dispute as to whether infringement on Hotfile was *substantial*.

Moreover, as discussed at the hearing, *Grokster* inducement liability is not premised upon overwhelming infringement, or any particular level of infringement. Indeed, the Supreme Court made clear that a defendant will be liable for inducing infringement regardless of whether the device has substantial noninfringing uses. *Grokster*, 545 U.S. at 934-35; *see also Usenet.com*, 633 F. Supp. 2d at 151-52, 156-57 (music only 1% of content overall). A defendant is never permitted to induce infringement, regardless of the absolute or relative level of the resulting infringement.

[5] Defendants, from *Grokster* to *Fung* to *Usenet.com*, have raised comparable methodological objections to statistical analyses. *E.g.*, *Grokster*, 545 U.S. 913 at 922-23. Such disputes did not preclude a finding that the defendant's infringing intent was "unmistakable"; as here, disputes at the margins could not rebut the incontrovertible fact that infringement was prevalent.

Hotfile encouraged infringing uploads for the purpose of massive *distribution* of those files. PSUF 16(a)(iv)-(vi). It is therefore liable regardless of what percentage of Hotfile use was for storage. Similarly, when Hotfile paid users to upload "popular" files – *i.e.*, files that would be massively downloaded – it was substantially certain that many of those files would be infringing. That *some* popular files were noninfringing, as Hotfile contends, is beside the point. No previous defendant has engaged in conduct that so blatantly induces copyright infringement. Without more, that is all that is necessary to prove Hotfile's liability under *Grokster*. *See Perfect 10*, 508 F.3d at 1171 (*Grokster* liability for "knowingly takes steps that are substantially certain to result in such direct infringement"); Restatement (Second) Of Torts § 8A cmt. b (1965) ("If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result").

But that evidence does not stand alone. It is corroborated by other evidence that Hotfile targeted infringing users (PSUF 16(b)), refused to consider filtering (PSUF 16(j)), and adopted a business model largely dependent upon infringement (PSUF 16(a) & (e)) – the three factors highlighted by the Supreme Court in *Grokster*. Again, the single fact that Hotfile's revenues plummeted 94% when Hotfile belatedly began terminating repeat infringers leaves no doubt that the "commercial sense" of Hotfile was copyright infringement. *Grokster*, 454 F. Supp. 2d at 988. It is against this backdrop that Defendants acknowledged in internal communications that Hotfile was a "flagship for non-licensed content" (PSUF 10(h)), overtly encouraged a user to upload infringing television programs (PSUF 16(b)(iii)), and provided technical assistance to users openly engaged in copyright infringement (PSUF 9(c)). While some past defendants may have left a longer "email trail," in terms of overt acts, Hotfile stands alone in actually paying users to upload content much of which was "substantially certain" to be infringing. Looking at the totality of the circumstances, Defendants' objective to foster infringement is as "unmistakable" here as it was in *Grokster*, *Limewire*, *Usenet.com*, and *Fung*, which were each decided on summary judgment.

5. Hotfile's Post-Complaint Conduct Is Not Part Of The Case.

The Court inquired at the hearing as to its ability to consider Hotfile's eligibility for DMCA safe harbor exclusively for the post-Complaint period, after Hotfile adopted a repeat infringer policy. Respectfully, the Court cannot properly adjudicate Hotfile's post-Complaint eligibility for DMCA safe harbor – whether on summary judgment or at trial. Those issues are

not properly part of this litigation. They were not raised in Plaintiffs' Complaint and Hotfile did not file a counterclaim seeking a declaratory judgment as to its post-Complaint liability. Pls. Opp. to HF MSJ at 3-6. Indeed, until its summary judgment motion, Hotfile had not filed any pleading, motion or document in this case remotely suggesting an intention to seek a ruling on post-Complaint (and in many cases post-discovery) changes to the Hotfile system. A ruling by the Court on the merits of Hotfile's motion would constitute an improper advisory opinion.

Matters beyond the pleadings can be decided by a court only "when they either are tried by express or implied consent of the parties or are included in a pretrial order." *Price v. M&H Valve Co.*, 177 F. App'x 1, 11 n.7 (11th Cir. 2006) (internal quotations marks omitted). Moreover, as the Eleventh Circuit has made clear, "these exceptions are not applicable if an opposing party objects to the assertion of such a claim without the filing of a supplemental pleading." *Id.* (rejecting claim raised for the first time in summary judgment briefing). *Price* is the only Eleventh Circuit case Hotfile cites – and it dictates denial of Hotfile's motion. When Defendants sought to interject their post-Complaint liability into the case for the first time through the instant motion for summary judgment, Plaintiffs promptly objected. Defendants' argument that Plaintiffs consented by "conduct" is flatly foreclosed under *Price*.

Defendants' arguments are unpersuasive in any event. Plaintiffs took some discovery on Hotfile's post-Complaint repeat infringer policy and implementation of filtering, *see* HF Reply MSJ at 6-7, because such evidence was relevant to the inadequacy of Hotfile's *pre*-Complaint actions. Plaintiffs identified some infringement of their works from the post-Complaint period, *see* HF Reply MSJ at 7, because Hotfile's *pre*-Complaint conduct continued to induce infringement at least until Hotfile took remedial steps by deploying filtering. *E.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1233-34 (C.D. Cal. 2007) ("once the market has internalized the inducer's promotion of infringement, the resulting infringements should be attributable to that defendant even though he/she no longer chooses to actively promote that message"); *see also* Pls. Opp. to HF MSJ at 8. As explained at the hearing, however, Plaintiffs' claim for damages is based *exclusively* on Defendants' *pre*-Complaint conduct. Likewise, Plaintiffs' request for injunctive relief, *see* HF Reply MSJ at 6, does not require a finding of post-Complaint liability. An injunction will be based on Defendants' *pre*-Complaint conduct. Defendants routinely argue post-complaint "reforms" in connection with injunction proceedings. Finally, the Complaint references to "continu[ing]" infringement, HF

Reply MSJ at 6, plainly refer to ongoing infringement through the *then-existing Hotfile system*, not its post-Complaint changes.

Because post-Complaint liability issues were not plead or litigated, respectfully, the Court cannot properly adjudicate those issues.

6. Hotfile Is Not Entitled To Post-Complaint Safe Harbor.

Even if the Court were to entertain Hotfile's motion on the merits, it should deny it.[6]

*a. Inadequate repeat infringer policy*. Hotfile first adopted a repeat infringer policy on February 18, 2011, and promptly terminated thousands of its users. The number of people terminated, however, merely reflects that infringement on Hotfile was rampant. It does not establish that Hotfile "reasonably implemented" a repeat infringer policy as required under § 512(i). In fact, Hotfile's "policy" during the post-Complaint period remained deficient in at least two ways: First, Hotfile's new policy ignored unregistered users who were repeat infringers, and Hotfile continued its practice of permitting unregistered (anonymous) users to upload files without restraint. PCSUF 21.[7] Hotfile's policy regarding unregistered users meant (a) that so-called terminated in users could circumvent their "termination" and continue to upload infringing files to Hotfile simply by not affirmatively signing into their Hotfile account, and (b) that whole categories of users (unregistered users) faced no risk of termination at all, no matter how much they infringed. In *Myxer*, cited by Defendants, the court specifically rejected as going "too far" the argument that Myxer could avoid its repeat infringer obligations simply by not requiring users to register. *See Myxer*, 2011 U.S. Dist. Lexis 109668 at *60; *accord Io Group, Inc. v. Veoh Networks, Inc*., 586 F. Supp. 2d 1132, 1144-45 (N.D. Cal. 2008) (noting that defendant's repeat infringer policy would have been inadequate if it had permitted repeat infringing users to return to the service). Hotfile did not change its policy on unregistered users until February ***2012*** **–** a year after adopting a three-strike policy. *See* HF SUF 28.

Second, Hotfile still (to this day) ignores repeat infringing *downloaders*. PCSUF 21. Users who download infringing content from Hotfile are infringers. *Napster*, 239 F.3d at 1013-14 (both uploaders and downloaders are infringers); *BMG Music v. Gonzalez*, 430 F.3d 888, 890-

[6] Plaintiffs of course have not moved for summary judgment as to Hotfile's post-Complaint liability; otherwise, on these facts, which are undisputed, the Court could rule that Hotfile is ineligible for DMCA safe harbor as a matter of law.

[7] Hotfile thus stood in contrast to legitimate websites, which require users to register before they are permitted to upload files so that uploaded files are associated with a user account.

91 (7th Cir. 2005) (same). Yet, under Hotfile's policy, those repeat infringers face no risk of termination. Hotfile's decision to exclude repeat infringing downloaders from its putative repeat infringer policy renders Hotfile ineligible for safe harbor, or at a minimum raises a triable issue as to its § 512(i) compliance. *See Myxer*, 2011 U.S. Dist. Lexis 109668 at *60-63 (questioning adequacy of policy that terminates infringing uploaders, but not infringing downloaders).

*b. Improper designation of DMCA Agent*. Even today, Hotfile refuses to comply with 17 U.S.C. § 512(c)(2) regarding designation of a DMCA agent. Pls. MSJ at 22-23; Pls. Reply MSJ at 10-11. The statute provides that a service provider qualifies for immunity "*only if*" it, *inter alia*, complies with implementing regulations the Copyright Office "may deem appropriate." 17 U.S.C. § 512(c)(2) (emphasis added). By regulation, the Copyright Office prohibits service providers from using P.O. Boxes as the address for designated agents. 37 C.F.R. § 201.38(c); *see also* Yeh Ex. 24; PSUF 8. As the Copyright Office has explained, "it can be important that copyright owners are able to *physically locate* the service provider, *e.g.*, for service of process." Designation of Agent to Receive Notification of Claimed Infringement, 76 Fed. Reg. 59953, 59958 (Sept. 28, 2011) (emphasis added). Yet, despite being fully informed of its noncompliance, Hotfile refuses to disclose a physical address for itself or its DMCA agent – it continues to hide behind P.O. Boxes. If a copyright owner needed to locate Hotfile today, it could not, at least not without hiring multiple private investigators, as Plaintiffs were forced to do. The question for the Court is not whether it is harsh to deny Hotfile DMCA safe harbor because it uses a P.O. Box instead of a physical address. Respectfully, the question is why a service provider who openly defies a foundational DMCA requirement should be entitled to federal immunity. Hotfile can either operate anonymously in the back alleys of the Internet, or it can seek DMCA safe harbor. But it should not be permitted to do both. On this the statute is unambiguous. Pls. MSJ at 23; Pls. Reply MSJ at 10-11; 17 U.S.C. § 512(c)(2).

*c. Control/financial benefit/inducement*. In *Viacom International, Inc. v. YouTube, Inc.*, 676 F.3d 19, 38 (2d Cir. 2012), decided after briefing in this case, the Second Circuit ruled that *Grokster* inducement liability may disqualify a service provider under the "control" provision of Section 512(c)(1)(B). *Id.* Plaintiffs have already demonstrated that Hotfile both has the ability to control infringement on its system and receives a financial benefit from that infringement. Pls. MSJ at 34-35; Pls. Reply MSJ at 19-20. Thus, if the Court finds that, in the post-Complaint period, Hotfile continued to induce infringement, Hotfile would not

be eligible for DMCA safe harbor. The fact that Hotfile continued paying users to upload popular (infringing) content and did not even purport to fully implement copyright filtering until February 2012 (HF SUF 27-28), at a minimum, raises a triable issue as to Hotfile's post-Complaint inducement of infringement. *See also* Yeh Ex. 27; Ex. 28 at 16; Ex. 30 at 34, 36, 56, 62 (post-Complaint user emails evidencing Defendants' knowledge of infringement).

7. <u>Titov's Admitted Role In Operating Hotfile Makes Him Personally Liable.</u>

At the hearing, Hotfile's counsel contrasted Titov with the central figures who ran the corporate defendants in cases such as *Limewire*, *Fung* and *Usenet.com*, where a sole owner dominated the affairs of the company. While cases where a single individual dominates corporate affairs may present *easy* cases for personal liability, nothing about the legal standard *limits* personal liability to a single individual. To the contrary, the Eleventh Circuit's seminal *Southern Bell* decision "does not require ultimate authority, nor does it require only one person to have authority." *Foreign Imported Prods. & Pub., Inc. v. Grupo Indus. Hotelero S.A.*, No. 07-22066-CIV, 2008 WL 4724495, at *14 (S.D. Fla., Oct. 24, 2008). Courts routinely hold multiple individuals liable for the same infringing corporate conduct. *See* Pls. Opp. to Titov MSJ at 4-5.

Titov has admitted that the three Hotfile founders ran the company by consensus, and discussed and agreed upon any decisions of consequence. *See* Yeh Ex. 1 (Titov Dep.) at 597:5-598:22, 601:6-602:3, 605:23-606:22; Pls. Opp. to Titov MSJ at 8. He has further admitted that he made the "decision," along with his co-founders, to implement the Hotfile business model giving rise to liability, including personally soliciting uploaders for Hotfile's Affiliate Program. *See, e.g.*, Titov Mot. at 4 (after all three owners researched the market, "[t]hey ultimately decided" on Hotfile's business plan); Opp. to TSUF 7-8. He is also the lead technologist and developer of the source code that makes up the Hotfile system. These admissions are more than enough: Under *Babbit Electronics, Inc. v. Dynascan Corp.*, 828 F. Supp. 944, 960 (S.D. Fla. 1993), *aff'd* 38 F.3d 1161 (11th Cir. 1994), "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." Even if Titov were, as he claims, not *nominally* "responsible" for areas such as DMCA compliance and employee supervision (notwithstanding evidence showing Titov *actually* engaging in both of those activities, *see* Pls. Opp. to Titov MSJ at 5-7), there can no dispute that he was part of the decision to launch Hotfile and approved or "ratified" the policies giving rise to Hotfile's corporate liability.

Dated: August 31, 2012

Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

MOTION PICTURE ASSOCIATION OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice)*
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice)*
Luke C. Platzer (*Pro Hac Vice)*
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st Day of August, 2012, I served the following documents on all counsel of record on the attached service list via the Court's ECF System:

**Plaintiffs' Post-Hearing Memorandum**

By: /s/ Karen L. Stetson
Karen L. Stetson

**SERVICE LIST**

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-WILLIAMS/TURNOFF**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA 94104
Phone: 415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL 33134
Phone: 305-476-7101
Fax: 305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*