*Disney Enterprises, Inc. et al. v.*
*Hotfile Corp., et al.*

Case No. 11-20427-WILLIAMS/TURNOFF

# EXHIBIT 2
Defendants' Demonstratives (REDACTED)
Part 4 of 17

Filed in Support of the Joint Notice of Submission
of Demonstratives Used at Summary Judgment Hearing

# Hotfile Was Not "Willfully Blind" To Specific Instances of Infringement

- *Global-Tech* was a patent case so the DMCA was inapplicable.

- As the Second Circuit recognized in *Viacom v. Youtube*, "Section 512(m) is explicit: DMCA safe harbor protection cannot be conditioned on affirmative monitoring by a service provider."

- *Viacom v. YouTube* limited application of "willful blindness" "to demonstrate knowledge or awareness of **specific instances of infringement** under the DMCA."

214

# *Flavaworks* Acknowledges the Practical Difficulty for a Service Provider to be a "Policeman"

*Flavaworks* vacated a preliminary injunction.

The "practical objection to stretching the concept of contributory infringement far enough to make a social-bookmarking service a policeman of copyright law is that **the service usually won't know whether a video that a visitor bookmarks on the service's website is protected by copyright**."

–*FlavaWorks, Inc. v. Gunter*, slip op. ___ F.3d ____, 2012 WL 3124862, at *9 (7th Cir., J. Posner)

# DMCA Safe Harbor
# Hotfile Fulfilled the Designated Agent Requirement

361

# Warner Stipulated That SRA Notifications Go to Its Designated Agent

"Warner's notifications by means of Hotfile's SRA are (and have the effect of) notifications of claimed infringement to Hotfile's designated agent under 17 U.S.C. § 512(c)(3)(A), and are therefore subject to 17 U.S.C. § 512(f)."

-Joint Motion and Memorandum of Law of the Parties for Voluntary Dismissal of Second and Third Counts of Hotfile's First Amended Counterclaim and for Amendment of First Count (DKT # 151), at p. 2

# Designated Agent – Substantial Compliance Suffices Where Purpose of Statute Is Fulfilled

Under 17 USC 512, compliance is achieved "by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, **substantially** the following information…name, address…," etc.

Technical deficiencies "are insubstantial…[where] they would not prevent a copyright owner from efficiently communicating with the designated agent and vice versa."

–*Perfect 10, Inc. v. Amazon.com, Inc. et al.,* No. CV 05-4753 AHM (SHx), 2009 WL 1334364, at *8 (C.D. Cal. May 12, 2009)

"[T]echnical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 have been fulfilled."

–*Robinson v. Aetna Life Ins.,* 443 F.3d 389, 393 (5th Cir.2006)

363

# DMCA Safe Harbor
# There Is a Triable Issue of Material Fact On The Reasonable Repeat Infringer Policy Requirement

364

# The Reasonable Repeat Infringer Policy Requirement Is Flexible

"The statute permits service providers to implement **a variety of procedures**" for a repeat infringer policy.

—*Perfect 10, Inc. v. CCBill, LLC.*, 488 F.3d 1102, 1109 (2007)

"Given the complexities inherent in identifying and defining online copyright infringement, § 512(i) **does not require a service provider to decide, ex ante, the specific types of conduct that will merit restricting access to its services**."

—*Corbis Corp., v. Amazon.com, Inc.*
351 F. Supp. 2d 1090, 1101-2 (W.D. Wash. 2004)

"[S]ection 512(i) does not require service providers to track users in a particular way."

—*Io Group, Inc. v. Veoh Networks, Inc.*,
586 F. Supp. 2d. 1132, 1145 (N.D. Cal. 2008)

209

# Termination of Blatant Infringers When Requested Was a Reasonable Policy

It is a common practice for content owners to ask that particular blatant infringers be terminated.

- *ALS Scan v. RemarQ Communities*, 239 F. 3d 619 (4th Cir. 2001) involved a content owner who "**identified two sites created for the sole purpose of publishing [the content owners'] copyrighted works**..."

  –*Id.* at 625

- *In Flava Works, Inc. v. Gunter*, No. 10 C 6517, 2011 WL 3205399 at *3 (N.D. Ill. July 27, 2011)  DMCA notices "specified. . . users. . . identified as 'repeat infringers'," but the site " did not disable any of those users' accounts" (injunction rev'd on appeal);

- *See, e.g.*, Yeh Ex. 21 ("please ban this uploader").

512(h) provides content owners a subpoena procedure for repeat infringers.

Hotfile deleted dozens of users pursuant to this policy, the exact number is unknown.

# The Studios Cannot Contend It Was Impossible for Them to Identify Repeat Infringers When They Blocked Discovery of These Facts

The Studios obtained a protective order by arguing:

> "[T]he steps that the Plaintiffs take to detect and respond to infringement of their copyrighted content by Defendants and by others on the Internet are irrelevant to Defendants' culpability for copyright infringement."
>
> –Dkt. 104, pp. 1-2; Dkt. 138 (order granted)

Having blocked discovery on the point (e.g. Universal dep. at 238:11-17) they cannot now assert that their efforts to identify repeat infringers were futile.

# The Pre-Complaint Repeat Infringer Policy Was Reasonable In The Context of SRA + MD5

SRA + MD5 provides instantaneous "takedown" and "stay down" of infringing files.

That's why the Studios stated they are "**ideal**" and **asked others like Fileserve.com to adopt the same countermeasures**.

This is more effective than termination by user email, because alternate email aliases can be easily obtained.

–*IO v. Veoh*, 586 F. Supp.2d 1132, 1144 (plaintiff circumvented email termination with alternate address).



366

# Warner Asked Other File Hosting Sites to Implement Hotfile's Anti-Piracy Policies



Ex.16, Bentkover Ex.4

"Other sites that offer same kind of services as Fileserve.com have provided Warner with a take down tool that allows Warner to log in and remove the infringing link immediately and hence mere efficiently curb spread of piracy of Warner's content. This takedown tool will also require less work from Fileserve.com and Warner staff to process our notices of infringing content hosted at Fileserve.com."

221