*Disney Enterprises, Inc. et al. v.*
*Hotfile Corp., et al.*

**Case No. 11-20427-WILLIAMS/TURNOFF**

# EXHIBIT 2
**Defendants' Demonstratives (REDACTED)**
**Part 5 of 17**

**Filed in Support of the Joint Notice of Submission**
**of Demonstratives Used at Summary Judgment Hearing**

## Strikes-Based Policies are Not Required by the Language of the Statute and Can Be Unfair

Section 512(i) requires termination of repeat *infringers*, not *alleged* infringers.

–Nimmer at 12B-109

Hotfile terminated users where there was some additional indicia of reliability (e.g. a complaint).

Termination of users based on unproven takedown notices is unfair, *see e.g.* Warner Counterclaim.

"If the content infringes, justice has been done. But if it does not, speech protected under the First Amendment could be removed."

–*Perfect 10 v. CCBill*, 488 F. 3d 1102 (9th Cir. 2007)

367

# The Studios' Pre-Complaint Statements and Conduct Confirm That Hotfile's Policies Were **Reasonable**

Facts:

- The Studios and their DMCA agents asked for SRAs saying they are "ideal".
- They asked another hosting site (FileServe) to follow Hotfile's lead and also create SRA technology.
- They considered Hotfile for a business deal.
- Warner posted *Vampire Diaries* content to Hotfile for marketing purposes.
- The Studios never asked for a strikes-based termination policy.

These facts show that Hotfile's policies were reasonable.

# *Perfect 10 v. Cybernet Ventures, Inc.*, Involved a Very Different Service and Its Holding Regarding 512(i) Supports Hotfile's Position

- Service was devoted to a type of content. No indication of fair uses like file storage, open source software or movie trailers.

- There were no countermeasures such as SRAs or MD-5 hashing.

- Cybernet did not submit any documentary evidence that it had terminated any individual webmasters or infringing sites. Hotfile has submitted such evidence.

- The court faulted Cybernet for not terminating "sites that have been identified since the beginning of this litigation." Hotfile terminated based on a three strikes policy starting at the outset of this litigation.

–*Perfect 10 v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1178 (C.D. Cal. 2002)

# DMCA Safe Harbor
# The Studios Are Estopped From Now Arguing That Hotfile's Repeat Infringer and Other DMCA Policies Were "Unreasonable"

# Legal Standard

General equitable estoppel formulation:

The doctrine of equitable estoppel contains three requirements: (1) an intentional deception through concealment or inaction, or gross negligence amounting to constructive fraud; (2) justifiable reliance; and (3) damages [for an affirmative claim]

–*Zittrouer by Dunn v. Uarco Inc. Group Benefit Plan*, 582 F.Supp. 1471, 1475 (N.D.Ga. 1984)

242

# Legal Standard

Copyright estoppel formulation:

Copyright estoppel applies when the alleged infringer can show that (1) the copyright owner knew the facts of the infringement, (2) the copyright owner intended its conduct to be acted upon or the copyright owner acted such that the alleged infringer has a right to believe it was so intended, (3) the alleged infringer is ignorant of the true facts, and (4) the alleged infringer relies on the copyright owner's conduct to his detriment.

–HGI Assocs., Inc. v. Wetmore Printing Co., 427 F.3d 867, 875 (11th Cir. 2005)

242





051-02





# Plaintiffs Never Informed Hotfile of Their Supposed Dissatisfaction

> We are not suggesting for a second that we don't want them to take action to clean up their copyright infringement. **We have wanted them to do that for years**...

–S. Fabrizio, Tr.7:10-15 (Leibnitz, Ex.9)

But the Studios **never asked**:

> Q. Prior to this litigation did Fox ever communicate to Hotfile that Hotfile should implement fingerprinting technology?
>
> A. I don't believe that we did.

–Zedek dep. 46:20-23 (Leibnitz Ex.23)

232                                                                                                              8