*Disney Enterprises, Inc. et al. v.*
*Hotfile Corp., et al.*

Case No. 11-20427-WILLIAMS/TURNOFF

# EXHIBIT 2

Defendants' Demonstratives (REDACTED)
Part 9 of 17

Filed in Support of the Joint Notice of Submission
of Demonstratives Used at Summary Judgment Hearing

# Hotfile Does Not Directly Profit From Infringement

Hotfile does not "directly profit[] from third party copyright infringement" because:

- Hotfile charges fixed access fees like Comcast.

> "[R]eceiving a one-time set-up fee and flat periodic payments for service from a person engaging in infringing activities would not constitute receiving a 'financial benefit directly attributable to the infringing activity.'"
>
> –*Ellison v. Robertson*, 357 F. 3d 1072 (9th Circuit 2004) (*citing* S. Rep. No. 105-190, at 44)

- A large majority of the files it hosts are not infringing at all: e.g. storage and space-shifted commercial files, open source, freeware, user generated content, movie trailers etc.

- Hotfile users convert to premium more often when downloading non-infringing material. So infringement is not driving the business; rather non-infringing content is the "draw".



# 512(c) Information Residing on Systems or Networks At Direction of Users

(1) In general—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider—

(A) (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;

(ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

(2) Designated agent—The limitations on liability established in this subsection apply to a service provider only if the service provider has designated an agent to receive notifications of claimed infringement.

# 512(c)(3) Elements of Notification

(A) To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

## 512(c)(3) Elements of Notification

(B) (i) Subject to clause (ii), a notification from a copyright owner or from a person authorized to act on behalf of the copyright owner that fails to comply substantially with the provisions of subparagraph (A) shall not be considered under paragraph (1)(A) in determining whether a service provider has actual knowledge or is aware of facts or circumstances from which infringing activity is apparent.

(ii) In a case in which the notification that is provided to the service provider's designated agent fails to comply substantially with all the provisions of subparagraph (A) but substantially complies with clauses (ii), (iii), and (iv) of subparagraph (A), clause (i) of this subparagraph applies only if the service provider promptly attempts to contact the person making the notification or takes other reasonable steps to assist in the receipt of notification that substantially complies with all the provisions of subparagraph (A).

230

4

# The Counterclaim Statute

(f) Misrepresentations—Any person who knowingly materially misrepresents under this section—

    (1) that material or activity is infringing, or

    (2) that material or activity was removed or disabled by mistake or misidentification,

shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

# A Copyright Owner Can Issue a Subpoena To Identify an Infringer

(h) Subpoena—To Identify Infringer.

(1) Request—A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.

# The Requirements of a Reasonable Repeat Infringer Policy

(i) Conditions for Eligibility—

(1) Accommodation of technology— The limitations on liability established by this section shall apply to a service provider only if the service provider—

(A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and

(B) accommodates and does not interfere with standard technical measures.

# *Flavaworks* Supports Hotfile

*Flavaworks* vacated a preliminary injunction against a service provider.

It held that "practical objection to stretching the concept of contributory infringement far enough to make a social-bookmarking service a policeman of copyright law is that the service usually won't know whether a video that a visitor bookmarks on the service's website is protected by copyright."

*Flavaworks* narrowed and cabined *Aimster:* "Aimster ha[d] failed to produce any evidence that its service has ever been used for a noninfringing use."

–*In re Aimster Copyright Litigation*, 334 F.3d at 653 (emphasis added)

–*FlavaWorks, Inc. v. Gunter*, slip op. ___ F.3d ____, 2012 WL 3124862 (7th Cir. Order)

8



Cloud storage and hosting

052

