# FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF



FILED by _____ D.C.

SEP 1 3 2013

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

     *Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

     *Defendants.*

_____/

HOTFILE CORP.,

     *Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

     *Counter-Defendant.*

_____/

## DEFENDANT HOTFILE'S MOTION AND MEMORANDUM OF LAW FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) AND FOR STAY OF PROCEEDINGS PENDING APPEAL

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     BRIEFING, ARGUMENT, AND DECISION ON APPLICABILITY OF THE
        SONY SUBSTANTIAL NONINFRINGING USES DEFENSE TO VICARIOUS
        LIABILITY ................................................................................................................ 3

III.    LEGAL STANDARD ................................................................................................. 8

IV.     ARGUMENT .............................................................................................................. 9

        A.    Whether The Sony Defense Applies To Vicarious Liability Claims
              Against Online Services Is A "Controlling Question Of Law" ........................ 11

        B.    This Is A Question As To Which "There Is Substantial Ground For
              Difference Of Opinion" .................................................................................... 13

        C.    An Immediate Appeal Will Expedite Resolution Of This Litigation ................. 16

        D.    Trial Should Be Stayed Pending Immediate Appeal ........................................ 19

        E.    Alternately, The Court Should Set The Issue Of Hotfile's Substantial Non-
              Infringing Uses For Trial In December ............................................................ 19

V.      CONCLUSION ......................................................................................................... 19

FILED UNDER SEAL                CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A&M Records v. Napster, Inc.,*
  239 F.3d 1004 (9th Cir. 2001) ................................................................ 15, 16, 17

*American Geophysical Union v. Texaco Inc.,*
  802 F. Supp. 1 (S.D.N.Y. 1992) .......................................................................... 19

*Arista Records L.L.C. v. Usenet.com, Inc.*
  633 F. Supp. 2d 124, 158 (S.D.N.Y. 2009) ......................................................... 18

*Arista Records v. Lime Group,*
  784 F. Supp. 2d 398 (S.D.N.Y. 2011) ................................................................. 16

*In re Aimster Copyright Litig.,*
  334 F.3d 643 (7th Cir. 2003) .......................................................................... 16, 17

*Katz v. Carte Blanche Corp.,*
  496 F.2d 747 (3d Cir. 1974) ............................................................................ 18, 19

*Maestri v. Westlake Excavating Co.,*
  894 F. Supp. 573 (N.D.N.Y. 1995) ................................................................. 21, 22

*Mais v. Gulf Coast Collection Bureau, Inc.,*
  No. 11-61936-CIV, 2013 WL 1899616 at 422 (S.D. Fla. May 8, 2013) ..................... 9, 15, 19

*McFarlin v. Canseco Servs. LLC,*
  381 F.3d 1251 (11th Cir 2004) ........................................................................ 9, 10

*Metro-Goldwyn Mayer Studios, Inc. v. Grokster Ltd.,*
  545 U.S. 913, 36 (2005) .............................................................................. passim

*Sony Corp. of America v. Universal City Studios, Inc.,*
  464 U. S. 417 (1984) ..................................................................................... 1, 10

*Williams Elecs., Inc. v. Artic Int'l., Inc.,*
  685 F.2d 870 (3d Cir. 1982) ................................................................................ 19

### FEDERAL STATUTES

28 U.S.C. §1292(b) ........................................................................................ passim

### OTHER AUTHORITY

Pamela Samuelson, *The Generativity of Sony v. Universal: The Intellectual Property
  Legacy of Justice Stevens,*
  74 Ford. L.R. 1831, 1832 (2006) ......................................................................... 12

FILED UNDER SEAL                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

## I.      INTRODUCTION

The Court's lengthy decision displays a thorough and meticulous analysis of the myriad

factual and legal issues raised on the summary judgment motions.  To reach its decisions, the

Court forthrightly confronted "numerous unsettled legal issues."  (Order Dkt. No. 524 at 1, n. 1.)

Its decision on one such unsettled issue, however, stands out: whether Hotfile as a matter of law

may be held vicariously liable for the actions of its users even though the Court found that

material issues of fact remain for trial as to the *Sony*[1] substantial noninfringing uses defense.

The comparatively brief six-page discussion of vicarious liability – the sole basis found for

liability – did not address the potential applicability of the *Sony* defense, an issue specifically

raised twice by the Court at oral argument and briefed repeatedly by the parties.  The decision's

implicit rejection of this defense by its silence in this precedent-setting case involving

"emerging technologies" (Order at 3, n. 2) has far-reaching ramifications not only for these

litigants but also for *all* "for-profit" providers of online services.  The Court has made its careful

decision; it is now vital to both efficient adjudication of this dispute, and to copyright

jurisprudence, that the Eleventh Circuit have an opportunity to review this important issue.

Unless disturbed on appeal, this Court's decision would be an unprecedented broadening

of vicarious liability in the Internet age – such that any online service that generates revenue that

a content owner can demonstrate *ex post facto* "should have done more" would face strict

liability for its users' copyright infringement.  Unconstrained by the *Sony* defense, such a broad

view of vicarious liability doctrine would potentially capture every broadband provider, wireless

network and web host, even where – as here – that service provider is found to be entitled to a

trial on its substantial non-infringing uses.  In contrast to *Napster* and *Aimster*, where courts

---

[1] *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U. S. 417 (1984).

**FILED UNDER SEAL**                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

decided the issue of secondary liability on alternative grounds, this Court's summary judgment rests solely on a finding of vicarious liability.  In doing so it presumes that Hotfile and other internet businesses are not entitled to the "breathing room for innovation and a vigorous commerce" that is the core purpose of *Sony*.[2]  While the *Sony* Court discussed "contributory infringement" and "vicarious liability" as *synonyms*, this Court's ruling effectively transformed them into *opposites*:  contributory infringement liability could not be decided on summary judgment because Hotfile's *Sony* defense must be submitted to the jury, yet, at the same time, vicarious liability was found on summary judgment thereby nullifying that potential safe harbor.

The correctness of the Court's ruling on this point of law should be decided now before proceeding to a trial on damages.  If the Court erred, then Hotfile is entitled to a trial on all of the Studios' alternate secondary liability theories and the trier of fact must consider Hotfile's substantial noninfringing uses defenses in determining that liability.  Only if the Studios can carry their burden at trial on liability will a complicated and expensive trial on damages be necessary.  Therefore, a determination at this juncture prior to a trial on damages is critical both to the parties and to the Court.  Hotfile respectfully submits that there is a substantial ground for a difference of opinion on this controlling issue of law of whether the *Sony* defense of substantial noninfringing use applies to claims of vicarious liability against providers of online services.  Thus, Hotfile requests that the Court certify this issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

---

[2] *Metro-Goldwyn Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913, 933, 36 (2005).

FILED UNDER SEAL                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

II.     **BRIEFING, ARGUMENT, AND DECISION ON APPLICABILITY OF THE**
        ***SONY* SUBSTANTIAL NONINFRINGING USES DEFENSE TO VICARIOUS**
        **LIABILITY**

The parties and the Court recognized that whether or not the *Sony* substantial non-infringing uses defense applied to the Studios' vicarious liability theory could be outcome determinative.  The issue was therefore addressed at some length in briefing and oral argument.

Hotfile's Memorandum of Law in opposition to the Studios' Motion for Summary Judgment argued that "[a]bsent evidence of intentional inducement, the Studios can only prove their secondary liability claim if Hotfile is not 'capable of substantial noninfringing uses.'" (Defs. Opp. (Dkt. No. 394 at 28.)  Hotfile's brief acknowledged that some courts "regard an 'ongoing relationship' as a factor in the *Sony* analysis, but not a prohibition," and "[s]uch a prohibition would make no sense in the current world of Internet businesses, many of which provide services to customers that involve more than simply putting a product into the stream of commerce."  (*Id.* at 30.)

In oral argument, clearly mindful of the importance of the issue, the Court pointedly asked the parties under what circumstances the *Sony* decision applied as a defense to a theory of secondary copyright infringement, including, specifically, vicarious liability:

> THE COURT . . . .start with *Grokster* inducement, material contribution, distribution of a commercial product, vicarious infringement. *And for each of them identify for me whether you think Betamax is applicable as a defense.*  **\*\*\***

(Transcript of 8/17/2012 Hearing ("Tr.") at 110 (emphasis added).)  Counsel for the Studios answered:

> MR. FABRIZIO:  The staple article of commerce or a substantial non-infringing uses defense is not applicable to a *Grokster*-induced claim. That's clear. *It is also not applicable to a vicarious*

CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

> *infringement claim. Every Court that has looked at that has said*
> *the same.*

(*Id.* at 110 (emphasis added).)  Counsel for Hotfile responded:

> MR. THOMPSON:  The *Sony* case said nothing about being
> confined to contributory infringement and not applying to
> vicarious liability. The *Sony* case is a Supreme Court case, of
> course, and we believe it can be equally applied to both. We agree
> with him that the inducement liability is *Grokster*, not *Sony*. But
> the *Aimster* case we've been talking about considered this very
> argument and considered the vicarious liability defense of the
> defendants there as well as contributory infringement under *Sony*.
> Now, there are other cases. Mr. Fabrizio has alluded to it. *The law*
> *is simply not clear whether the Sony defense is available on*
> *vicarious liability.  But we would argue logically it certainly*
> *should be.*

(*Id.* at 119 (emphasis added).)  The Court later reiterated the same question assuming it found

vicarious liability:

> THE COURT:  *The question I have is,* I don't know that anybody
> said it expressly, but *whether or not -- I think they have vicarious*
> *liability, but in this context whether Sony is applicable.  And I'm*
> *not sure it is.* I don't know that the cases -- I think what Mr.
> Fabrizio was saying earlier, and what I was going to ask you about,
> was the idea of this ongoing relationship, whether or not that
> dynamic takes it outside of the Betamax rationale.

(*Id.* at 161 (emphasis added).)  At the end of the hearing, the Court invited further briefing on

"what you perceived I asked of you and you wish to expand upon."  (*Id.* at 194.)

The parties' supplemental briefing therefore further addressed this issue.  Hotfile

explained that *Sony* applies to claims "against Internet service providers with an 'ongoing

relationship' to their users" (Def. Supp. Br. 3 (Dkt. No. 474)), citing language in *Grokster* stating

that we are "mindful of the need to keep from trenching on regular commerce or discouraging

the development of *technologies*," and that *Sony's* rule "leaves breathing room for innovation

and a vigorous *commerce*," without limitation.  *Metro-Goldwyn Mayer Studios, Inc. v. Grokster*

FILED UNDER SEAL                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

*Ltd.*, 545 U.S. 913, 933, 937 (2005) (emphasis added).  Hotfile noted that "This language does not distinguish between technologies that are services with an ongoing relationship as opposed to those that are products without such a relationship." (Def. Supp. Br. at 3.)  Hotfile further explained that "The Supreme Court's opinion in *Sony* applies to vicarious liability," noting the question there was expressly stated as whether "vicarious liability is to be imposed on *Sony* in this case...." (*Id.* at 6.)

The Studios argued that "The *Sony* defense is [] irrelevant to vicarious liability because intent is not an element of the claim, so there is no presumed intent that the *Sony* defense could dispel, " *Sony* does not apply where there is an "ongoing relationship," and that Hotfile is not a "staple article of commerce."  They also argued that the *Aimster* decision "merely commented in *dicta* that *Sony* had treated contributory and vicarious infringement 'interchangeably'" and itself did not address vicarious liability of defendants there.   (Studios Supp. Br. at 4 and n.4 Dkt. No. 475.)

The Court's August 28, 2013 decision granted summary judgment to Plaintiffs on the sole remaining claim for relief, their assertion of Hotfile's liability for secondary or indirect copyright infringement based on a vicarious liability theory.  (Summary Judgment Order ("Order") Dkt. 524 at 2-3, 98-99.)  The Court denied Plaintiffs' motion for summary judgment on their remaining theories of indirect copyright infringement regarding contributory and inducement liability. (*Id.*)  The Court determined that trial could proceed on Hotfile's alleged contributory liability, its alleged inducement liability, damages, and Hotfile's counterclaim for improper takedowns from Hotfile's website by Counter-Defendant Warner Bros. Entertainment Inc. ("Warner"). (*Id.*)

In that ruling, the Court addressed the *Sony* defense with respect to the "contributory infringement" theory of liability, but not with respect to "vicarious liability."  For "contributory infringement" the Court noted that "recent decisions have suggested that the *Sony/Betamax* rule applies where material contribution is at issue.  (Order at 69.)  It concluded that "the *Sony/Betamax* rule provides a backstop to liability immunizing a defendant who demonstrates that noninfringing uses of the system are substantial." (*Id.,* at 71-72.)  The Court found a triable issue on the substantial non-infringing uses defense, writing that Hotfile's "system has noninfringing uses ignored in the Studios' focus on downloading activity. . . ." (*Id.*, at 75.)  The Court credited Professor Boyle's analysis of this defense:

> Based on data, Dr. Boyle concluded that there were substantial noninfringing uses [of Hotfile] in the form of open source software and movie sharing, fair use downloads, storage, and monetizing works owned by creators through the affiliate program.

(Order at 76, n. 23.)

The Court thus concluded that "a number of questions remain regarding Hotfile's intent (actual or imputed) to foster infringement *and the capacity for and scope of noninfringing uses of Hotfile's system.*" (*Id.*, at 77 (emphasis added).)  In particular, the Court determined that "Hotfile has suggested Sony/Betamax-type noninfringing uses for the system, and *there is a question of whether those uses are 'substantial.'*" (*Id.*, at 78, n. 24 (emphasis added).)

For vicarious liability, the Court reviewed the case law and found that for the "financial benefit" prong " infringement need not be the primary, or even a significant draw – rather it only need be 'a' draw," and citing Professor Grossman, wrote that "the dominant view is that any for profit enterprise could be held vicariously liable for copyright infringement however remote, unquantifiable, and unidentifiable the benefit it receives from copyright infringement may be." (*Id.*, at 80.)  For the right and ability to control prong, the Court found that this element is read

FILED UNDER SEAL                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

"expansively"; it is satisfied "simply by virtue of providing the means to commit direct

infringement," and having the "real and practical" ability to control the infringement. (*Id.*, at 81

and 83.)  The Court found that the doctrine "does not require knowledge of the infringement and

may be applied even where the defendant has acted in good faith to prevent it." (*Id.*, at 78.)

Critically, the Court's analysis in this context did not consider the *Sony* defense.

    The Court then funneled essentially the same set of facts it looked to for the "material

contribution" prong of contributory infringement – save for the *Sony* noninfringing uses defense

– through this "expansive" legal standard for vicarious liability.  The Court noted that Hotfile is

"hosting the infringing materials on its own servers," and it "failed to properly exercise its

control in light of the number of users who were blatantly infringing," and that post-Complaint,

Hotfile "adopted technology that it claims is effective in filtering and targeting infringing works"

(Order, at 83-84.)[3]  Though the Court noted it would consider "ongoing relationship" as a part of

vicarious liability (*see Id.*, at 69, n. 20), it does not mention this specifically in its analysis of

vicarious liability.

    In short, the Court did not address the potential applicability of the *Sony* defense for

vicarious liability – despite the parties' briefing and the Court's pointed questions in oral

argument.  Thus, it decided liability against Hotfile as a matter of law without considering this

key defense that it had determined would raise material issues for trial if applicable.

    At a telephonic status conference on September 2, 2013, the parties suggested that in light

of the finding of vicarious liability, no trial would need to proceed on Plaintiffs' alternate

_____

[3] Similarly, for contributory infringement, the Court noted that "[u]sers [] store the infringing
content on Hotfile's own servers," that "despite having the means to implement counter-piracy
technologies and to target infringement(as demonstrated by Hotfile's actions immediately after
the Complaint was filed), Hotfile did not take any meaningful action to curtail infringement" and
that Hotfile "did not have an effective policy to terminate blatant, repeat infringement, … until
Feb. 2011." (Order at 74.)

FILED UNDER SEAL                CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

theories regarding contributory and inducement liability.  Plaintiffs sought to preserve the right

to try those theories upon any eventual remand from the Eleventh Circuit.  During that

conference, Hotfile advised the Court that it was studying the lengthy decision and might file this

motion for certification if an immediate appeal would be appropriate and most efficient.

Regarding a damages trial, Plaintiffs have made clear to Hotfile that they expected to conduct

trial as to over 3,800 separately copyrighted works but will not add more works.  The Court

asked the parties to confer and submit an Agreed Schedule leading to the December 9 trial date.[4]

## III.   LEGAL STANDARD

To qualify for an interlocutory appeal under 28 U.S.C. § 1292(b), an order must involve a

"controlling question of law."  This is satisfied when it concerns "the meaning of a statutory or

constitutional provision, regulation, or common law doctrine," or "an abstract legal issue" that

"the court of appeals can decide quickly and cleanly without having to study the record."  *Mais v.*

*Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV, 2013 WL 1899616 at 422 (S.D. Fla.

May 8, 2013), *quoting McFarlin v. Canseco Servs. LLC*, 381 F.3d 1251, 1258 (11th Cir 2004).

There is "substantial ground for difference of opinion when the district court and other courts,

and particularly the court of appeals, are not in complete and unequivocal agreement as to the

resolution of the controlling legal question."  *Id.*  "An immediate appeal can be said to materially

advance the case when resolution of a controlling legal question would serve to avoid a trial or

---

[4] As the Court requested, the parties are today submitting to the Court a proposed schedule for (1) briefing Warner's motion to sever trial of Hotfile's counterclaim; (2) conducting pre-trial status conferences as suggested by the Court; (3) filing witness lists; (4) filing exhibit lists; (5) filing designations of deposition testimony; (6) filing a statement of stipulated facts; (7) filing objections to evidence; (8) conducting the pretrial meeting of counsel; (9) filing the parties' pretrial stipulation; (10) filing motions in limine; (11) filing *Daubert* motions; (12) filing jury instructions; and (13) filing proposed voir dire questions.

otherwise substantially shorten the litigation." *Id.* (internal citations and quotation marks omitted).

Thus, to qualify for certification under 1292(b), there must be a pure legal issue "stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and [to] give it general relevance to other cases in the same area of law, and the answer to that question must substantially reduce the amount of litigation left in the case. The antithesis of a proper [section] 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *Id.* (internal citations and quotation marks omitted).

## IV.    ARGUMENT

In *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417 (1984) ("*Sony*"), the Supreme Court reviewed a lawsuit filed by Universal Studios, and Disney (Plaintiffs here), against Sony Corp. alleging that its sale of the Betamax video tape recorder constituted an indirect infringement of their copyrights. It framed the issue as follows:

> If vicarious liability is to be imposed on petitioners in this case, it must rest on the fact that it has sold equipment with constructive knowledge of the fact that its customers may use that equipment to make unauthorized copies of copyrighted material.

*Id.* at 439. The Court recognized that it was looking at a "new technology" that was "generally capable of copying the entire range of programs that may be televised: those that are uncopyrighted, those that are copyrighted but may be copied without objection from the copyright holder, and those that the copyright holder would prefer not to have copied," *Id.* at 436-37, 456. In order to "strike a balance between a copyright holder's legitimate demand for effective — not merely symbolic — protection of the statutory monopoly, and the rights of others freely to engage in substantially unrelated areas of commerce," the Court ruled that "the

FILED UNDER SEAL                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

sale of copying equipment, like the sale of other articles of commerce, does not constitute

contributory infringement if the product is widely used for legitimate, unobjectionable purposes.

Indeed, it need merely be capable of substantial noninfringing uses." *Id.*, at 442.  This created

the *Sony* defense of substantial noninfringing uses.

Some twenty years later, in *Grokster*, the Court announced an exception to the *Sony*

defense for cases of inducement liability based on "clear expression or other affirmative steps

taken to foster infringement," (545 U.S. at 919), while otherwise reaffirming *Sony*'s "copyright

safe-harbor rule."  The *Grokster* Court reiterated that *Sony* "leaves breathing room for innovation

and a vigorous commerce." *Id.* at 933, 936.  The Court remained "mindful of the need to keep

from trenching on regular commerce or discouraging the development of technologies with

lawful and unlawful potential." *Id.* at 937.

*Sony* is widely discussed to this day and holds its firm place as a key Supreme Court

precedent that successfully balanced the interests of copyright owners and innovation:

> *Sony* ranks among the wisest copyright decisions, but it was also
> controversial…. The Court [] had to deal with the possibility that
> the movie industry might be seriously harmed unless the court held
> Sony liable…. Of course, hindsight is 20-20, and it is now clear
> that society, including the movie industry, had much to gain from
> the free availability of VCRs. Indeed, the sale of movies on tape
> eventually outstripped the very theater sales the movie industry
> sought to protect.

Alfred C. Yen, *Sony, Tort Doctrines And The Puzzle of Peer-to Peer*, 55 Case Wes. L.R. 815,

816 (2006).  *See, also,* Pamela Samuelson, *The Generativity of Sony v. Universal: The*

*Intellectual Property Legacy of Justice Stevens*, 74 Ford. L.R. 1831, 1832  (2006) ("*Sony*'s

generativity is due, in part, to the limited monopoly framework for analyzing copyright claims

articulated by Justice Stevens in *Sony*.  This framework stands in stark contrast to the

proprietarian framework used in Justice Harry Blackmun's dissent."); Jane C. Ginsburg,

FILED UNDER SEAL                CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

*Separating the Sony Sheep from the Grokster Goats: Reckoning the Future Business Plans of*

*Copyright-Dependant Entrepreneurs*, 50 Ariz. L.R. 577 (2008).

   The important question presented here that should be reviewed by the Eleventh Circuit

before proceeding to trial is whether *Sony* is available as a defense to a "vicarious liability" claim

against an online service.

  **A.**    **Whether The *Sony* Defense Applies To Vicarious Liability Claims Against**
     **Online Services Is A "Controlling Question Of Law"**

   Whether the *Sony* defense applies to vicarious liability claims against an online service

presents a "controlling question of law" under 28 U.S.C. § 1292(b). This is a "pure" legal issue

that does not depend on the particular facts at bar and is necessary for the fair and complete

adjudication of this dispute.  The issue is a high-level, abstract and vital unanswered question

regarding the common law of secondary copyright liability that the Court of Appeals can decide

"cleanly" without having to "study the record."  *Mais,* 2013 WL 1899616 at *22.

   If the defense applies, then vicarious liability could not have been decided at summary

judgment (as this Court has found that the *Sony* defense raises issues for the jury).  Rather, a trial

on all of the Studios' liability theories and Hotfile's defenses is required to resolve this issue.

Only if the Studios carry their burden at trial on liability would a complicated trial on damages

be necessary and, therefore, a determination at this stage prior to a trial on damages is critical

both to the parties and to the Court.

   The need for an answer to this question is pushed to the fore because of the capacious

sweep of the "vicarious liability" doctrine.  As determined by this Court, the vicarious liability

standard is satisfied by any "for profit" business that "provid[es] the means to commit direct

infringement," and has the "real and practical" ability to control the infringement.  (Order at 81,

83.)  This standard now enunciated in the Court's summary judgment Order captures literally

FILED UNDER SEAL                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

*every* broadband provider, wireless network and smartphone manufacturer, whenever these

companies are profit-making enterprises that provide the "means" to share information (i.e. data)

and could be faulted in hindsight for not having adopted more stringent countermeasures such as

more advanced digital fingerprinting.[5]

The doctrines of vicarious liability and contributory infringement are intertwined.[6]  They

depend for their determination on the same or substantially the same facts.  Yet here, the Court

found, on the one hand, that vicarious liability was established without a need for a trial, but on

the other hand, reserved for trial a determination of those same issues of fact along with the *Sony*

defense for contributory infringement. (*See* _, *supra*.)

In light of the overlapping nature of these closely related doctrines, a vicarious liability

rule that does not allow for the *Sony* defense *sub silencio* overrules the Supreme Court's decision

in *Sony*. This finding endangers the emerging technologies of global communication and digital

commerce which *Sony* strove to uphold, which Congress expressly sought to protect through its

passage of the Digital Millennium Copyright Act and which are of such vital importance to our

nation's economy.  Immediate appellate guidance from the Eleventh Circuit on this "controlling

question" is accordingly of critical importance to this developing law.

---

[5] As one commentator has observed: "the doctrine of vicarious copyright liability seems to be not so much a body of rules that provide foreseeable results as a flexible vehicle for courts to make ultimate policy judgments as to what type of enterprises should internalize the costs of copyright injuries occurring within its sphere of operations."  Craig A. Grossman, *From Sony to Grokster, The Failure of the Copyright Doctrines of Contributory Infringement and Vicarious Liability to Resolve the War Between Content and Destructive Technologies* 53 Buff. L. R. 141, 157 (2005-2006) ("*From Sony to Grokster*").

[6]  In practice, the two doctrines are "interconnected" and "[o]ne doctrine is rarely discussed [in case law] without the other and rarely is liability found under one doctrine and not the other." *From Sony to Grokster,* 53 Buff. L.R. at 334. Prof. Yen noted that the *Napster* Court's "interpretation of vicarious liability is very odd because it has the effect of converting vicarious liability into a form of contributory liability."  Alfred C. Yen, *Sony, Tort Doctrines, and the Puzzle of Peer-to-Peer,* 55 Case Western L. R. at 838 (2005).

FILED UNDER SEAL          CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

> **B.**     **This Is A Question As To Which "There Is Substantial Ground For Difference Of Opinion"**

There is substantial ground for difference of opinion on whether *Sony* should apply to claims of "vicarious liability" against an online service, because other courts, and particularly the courts of appeal, are not "in 'complete and unequivocal' agreement" as to the resolution of the controlling legal question.  *Mais,* 2013 WL 1899616 at *22.  Though *Sony*, by its terms, addresses "vicarious liability," a split has emerged in the circuit courts has to how *Sony* should be interpreted with respect to vicarious liability.

The *Sony* opinion expressly posed the question of whether "vicarious liability is to be imposed on Sony in this case." *Sony*, 464 U.S. at 439.  The *Sony* Court seemed to regard "contributory infringement" as a legal theory on the basis of which a court may impose "vicarious liability" in intellectual property matters.  *Id.* at 435 ("vicarious liability is imposed in virtually all areas of the law, and the concept of contributory infringement is merely a species of the broader problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another.")   That is, vicarious liability is the consequence that flows from contributory infringement.  Under this view, "vicarious liability" is not excepted from *Sony*; rather, *Sony* is *about* vicarious liability.

Nevertheless, the Ninth Circuit and Seventh Circuits markedly differ in their interpretations of what the Court meant when it used the term "vicarious liability."  The Ninth Circuit, in *Napster,* concluded that the Supreme Court was using the term "vicarious liability" "broadly and outside of a technical analysis of the doctrine of vicarious copyright infringement." (*A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1022-23 (9th Cir. 2001) ("*Napster*").)  Thus, it applied this defense to contributory infringement only.  However, the Seventh Circuit in *Aimster* read the *Sony* Court to be "treating vicarious and contributory infringement interchangeably,

[and] that *Sony* was not a vicarious infringer either." *In re Aimster Copyright Litig.*, 334 F.3d 643, 654 (7th Cir. 2003) ("*Aimster*").[7]  In contrast to previous cases, like *Napster* and *Aimster*, where courts were able to decide the issue of liability on alternative grounds, here the vicarious liability doctrine is the sole basis for liability so this case turns on this question.

The conflicting views on this lynchpin issue have unsurprisingly led to doubt and confusion in the district courts.  Thus in *LimeWire*, Judge Wood noted that she was aware of "no case in which the Sony–Betamax rule was applied in the context of a vicarious infringement claim," but "even if the rule did apply" it did not warrant summary judgment in favor LimeWire, because there were triable issues on whether LimeWire had substantial noninfringing uses. *Arista Records v. Lime Group*, 784 F. Supp. 2d 398, 436 (S.D.N.Y. 2011).

Some courts have read the factual recitation in *Sony* that states, the "only contact between Sony and the users of the Betamax that is disclosed by this record occurred at the moment of sale," *Sony*, 464 U.S at 438, as limiting the *Sony* defense to "products" and withholding it from "services" having an "ongoing relationship" with their users.[8]

There is a substantial ground for a difference of opinion on this "ongoing relationship" argument.  Though the Seventh and Ninth Circuits appear to be in agreement that *Sony* should not be so limited, at least one district court has taken a divergent path.  In *Aimster*, "the industry" (i.e. record labels and studios) made an argument that the "articles of commerce" passage from

---

[7] Prof. Reese concurs with J. Posner: "With respect to both contributory infringement and vicarious liability, *Sony* teaches that if the plaintiff claims that the supplier of a dual-use technology is liable for infringements committed by users of the technology, then the traditional tests simply do not apply to that claim, and instead a court should look to whether the technology is capable of substantial noninfringing uses."  Anthony Reese, *The Problems of Judging Young Technologies: A Comment On Sony, Tort Doctrines, And the Puzzle of Peer-to-Peer*, 55 Case Wes. L. Rev. 877, 884 (2005).

[8] The Studios made this argument and the Court refers to this concept in footnote 20 of its Summary Judgment Order.

FILED UNDER SEAL          CASE NO.: 11-CIV-20427-WILLIAMS/TURNOFF

*Sony* implied that "*Sony* is inapplicable to services." *Aimster*, 334 F. 3d at 438. They further

argued that Aimster's "continuing relation" with its customers and its presumed ability "to

prevent, or at least limit, their infringing copyright by monitoring use of the service and

terminating them when it is discovered that they are infringing," (*id.*) implied that *Sony* was

inapplicable. The Seventh Circuit "reject[ed] the industry's argument," holding:

> If a service facilitates both infringing and noninfringing uses, as in
> the case of AOL's instant-messaging service, and the detection and
> prevention of the infringing uses would be highly burdensome, the
> rule for which the recording industry is contending could result in
> the shutting down of the service or its annexation by the copyright
> owners (contrary to the clear import of the *Sony* decision)....

*Aimster*, 334 F.3d at 647-48, 654-55.[9] Similarly, in *Napster*, the Ninth Circuit recognized that

"[w]e are bound to follow *Sony*," despite an ongoing relationship. *Napster* at 1020-21.[10]

The *Usenet* district court diverged from both the Seventh and Ninth Circuits and ruled

that the "ongoing relationship" pulled Usenet out from the protection of *Sony* for both

contributory *and* vicarious infringement. *Arista Records L.L.C. v. Usenet.com, Inc.* 633 F. Supp.

2d 124, 156, 158 (S.D.N.Y. 2009). Even the *Usenet* court acknowledged, however, that whether

"*Sony* is best understood as a general limitation on secondary liability," including vicarious

liability, is an "apparently difficult question." *Id.* at 158.

Thus, there is a substantial difference of opinion as to whether or not, as this Court noted

in the context of contributory infringement (Order at 72), "the *Sony/Betamax* rule provides a

---

[9] This Court appears to have cited the lower court *Aimster* opinion on this point (Order at 69; citing 252 F.2d at 659), which was not endorsed on appeal. Nevertheless, the Court's opinion appears to have rejected the Studios' "ongoing relationship" argument, at least with respect to material contribution.

[10] Ultimately "*Sony*'s holding [was] of limited assistance to Napster..." because of its "actual knowledge" of "specific infringing material." *Napster* at 1020-22.

backstop to liability, immunizing a defendant who demonstrates that noninfringing uses of the system are substantial" in the context of vicarious infringement.

**C.**     **An Immediate Appeal Will Expedite Resolution Of This Litigation**

Section 1292(b) permits certification of an immediate appeal where the appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Certification should be used to allow immediate appeals to avoid harm to litigants and avoid "the wasted effort of a possibly protracted litigation over damages where there might be no liability." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754-56 (3d Cir. 1974) (*en banc*). That the wasted effort of needless damages trials "was a major concern" of the statute's drafters "is borne out by the examples given in support of the bill by its proponents," who "referred specifically to cases in which a long trial results from a pretrial order erroneously overruling a defense ... [as well as] cases involving prolonged assessment of damages after determination of liability...." *Id.*; *see Williams Elecs., Inc. v. Artic Int'l., Inc.*, 685 F.2d 870 (3d Cir. 1982) (permitting appeal in copyright case of order having "serious, perhaps irreparable, consequences" to defendant); *AF Holdings LLC v. Does 1-1,058*, No. 12–0048(BAH), 2012 WL 3204917 at *63 (D.D.C. Aug. 6, 2012) (certifying appeal in online copyright infringement case where "reversal of this Court's Order would drastically effect the scope of the plaintiff's instant action" and "resolve these issues in the other cases pending in this jurisdiction involving allegations of online copyright infringement"); *American Geophysical Union v. Texaco Inc.*, 802 F. Supp. 1, 30 (S.D.N.Y. 1992) (certifying immediate appeal under Section 1292(b) on grounds of "strong public interest in having prompt appellate review of the [copyright issues] presented in this case"); *Mais*, 2013 WL 1899616 at *24 ("An interlocutory decision in this case also has the potential to materially advance future cases and to conserve judicial and party resources involved with the continued

FILED UNDER SEAL                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

litigation of these very issues going forward.").

Proceeding to a trial on damages *now* would waste judicial and party resources if the appellate court later rules that the existence of substantial non-infringing uses provides a defense under *Sony* to vicarious copyright liability.  If *Sony* supplies such a defense, the immediately impending work on exhibit lists, witness lists, deposition designations, pre-trial motions, jury instructions, jury selection, opening statements, witness examinations, closing statements, and post-trial motions all would have to be redone on remand.  It would plainly be more efficient to ascertain the law in this Circuit now on this controlling but unsettled issue, before final pretrial and trial on damages issues.

If the Eleventh Circuit finds that *Sony* does provide a defense to vicarious liability, the trial could then proceed on all theories of secondary liability (contributory, inducement, and vicarious) at the same time.  Alternatively, if the Court's summary judgment order on this issue is affirmed on interlocutory appeal, the process would result in a later trial on damages, with the parties and Court knowing that liability had been established applying Eleventh Circuit law.  In contrast, serial trials on damages will be necessary if the Court now proceeds to an immediate trial this year but is subsequently reversed on appeal.  (The Court could not reuse the first jury's assessment of damages based solely on vicarious liability if there were a remand and a trial on damages premised on other, alternative theories of liability).

Immediate appeal saves all parties and the Court the effort of wading through an impending damages trial with currently uncertain and hotly contested parameters.  For example, at a damages trial, Plaintiffs have indicated that they will seek to call Defendant Anton Titov to testify regarding Hotfile's operations in hopes of increasing the jury's damage award on the statutory damages sliding scale.  However, the Court has already ruled that culpable knowledge

FILED UNDER SEAL                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

is not an element of vicarious liability.  (Order at 78, n. 25.)  This calls in to question the

admissibility (and unfairly prejudicial nature) of Plaintiffs' proposed evidence.  If the evidence

were allowed, then Hotfile will proffer evidence of its efforts to combat infringement as well as

the many noninfringing uses of its system – resulting in needless overlap and duplication with

the liability issues already reserved for any future trial following remand.

Additionally, with regard to the over 3,800 works potentially at issue, Hotfile will seek

exclusion at trial of hundreds of these works uploaded *after* the filing of the instant Complaint on

grounds of Plaintiffs' repeated assertions that "post-Complaint damages are not a part of this

dispute." (Order at 51.)  Moreover, Hotfile expects to seek exclusion of works:  (1) whose

content files were not produced pursuant to Hotfile as required by order of Judge Jordan (Dkt.

No. 147); (2) which were selected and downloaded by DtecNet as part of its "work product"

investigation and about which Plaintiffs have refused to allow any discovery; and (3) whose

copyright registrations were not timely produced in discovery.  Further still, Hotfile expects to

contest at trial any alleged evidence of direct infringement, given its expert's testimony of

noninfringing use of Hotfile's website for "open source software and movie sharing, fair use

downloads, storage, and monetizing works owned by creators." (Order at 76, n. 23.)

Hotfile's counterclaim also raises issues likely to be duplicated in any subsequent trial

regarding substantial non-infringing uses.  For example, to understand the details of Warner's

improper takedowns of open source software (*e.g.*, the jDownloader program), the jury will need

to understand that open source downloading on Hotfile's website entirely legitimate.  Likewise,

Hotfile will expect to adduce evidence of indiscriminate takedowns by Warner of files uploaded

to Hotfile for personal storage, or distributed by the copyright owner, or subject to "fair use"

defenses.  These issues should be tried in one trial, not many.

**FILED UNDER SEAL**                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

    **D.**    **Trial Should Be Stayed Pending Immediate Appeal**

    Where certification pursuant to Section 1292(b) is granted, further proceedings in the trial court are appropriately stayed pending appeal.  *See* 28 U.S.C. § 1292(b) (explicitly permitting stays); *Maestri v. Westlake Excavating Co.*, 894 F. Supp. 573, 579 (N.D.N.Y. 1995).

    The efficiency of resolving the issue of law governing secondary copyright infringement in the Eleventh Circuit would be lost if the Court nevertheless proceeds to trial in December.  A stay permits the parties and Court to avoid the unnecessary filings, motions, disclosures, and rulings inherent in a premature trial.  Accordingly, this Court should stay further proceedings pending action by the Eleventh Circuit upon Hotfile's requested appeal.

    **E.**    **Alternately, The Court Should Set The Issue Of Hotfile's Substantial Non-Infringing Uses For Trial In December**

    In the event that the Court does not certify its summary judgment order for immediate appeal, the Court should submit to the jury the controlling question discussed herein as to whether Hotfile's system offers substantial non-infringing uses.  Given the overlap described above between the *Sony* defense and Plaintiffs' damages theories (as well as Hotfile's counterclaim which is premised on Warner's many unlawful takedowns of noninfringing works on Hotfile), presentation of evidence of Hotfile's noninfringing uses would not prejudice either side.  More importantly, it would allow for efficiency.  If the Eleventh Circuit later reverses the Court's summary judgment ruling regarding inapplicability of *Sony* to vicarious liability, there will be no need for remand and retrial on the *Sony* defense.

**V.**    **CONCLUSION**

    The Court carefully and conscientiously sifted through the vast record and strong advocacy presented to reach the decisions set forth in its summary judgment order (Dkt. No. 524).  One of those rulings – that Hotfile as a matter of law is vicariously liable for the

FILED UNDER SEAL                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

actions of its users even though the *Sony* substantial noninfringing uses defense raises jury issues

– should be certified for immediate appeal, while further proceedings in this Court are stayed.

This will both allow the more efficient adjudication of this case and advance copyright

jurisprudence.

DATED:  September 13, 2013              Respectfully submitted,

 

 

_____

Janet T. Munn, Esq. Fla. Bar No. 501281
Email:  jmunn@rascoklock.com
RASCO KLOCK
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone:  305.476.7101
Telecopy:  305.476.7102

*And*

 

_____

Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email:  rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email:  aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email:  tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email:  dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)
Email:  jthamkul@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy:  415.954.4480

**FILED UNDER SEAL**                    CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

*And*

Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email:  vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA 02459
Telephone:  617.928.1800
Telecopy:  617.928.1802

*Counsel for Defendants Hotfile Corporation*
  *and Anton Titov*

FILED UNDER SEAL           CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2013, a true and correct copy of the foregoing

document, was filed conventionally under seal and served on all counsel of record identified

below via e-mail.

Karen L. Stetson, Esq., Fla. Bar No.: 742937
GRAY-ROBINSON, P.A.
Email:  Karen.Stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL  33131
Telephone:  305.416.6880
Telecopy:  305.416.6887

Karen R. Thorland, Esq. (admitted *pro hac vice*)
Senior Content Protection Counsel
Email:  Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA  91403-5885
Telephone:  818.935.5812

Steven B. Fabrizio, Esq. (admitted *pro hac vice*)
Email:  sfabrizio@jenner.com
Duane C. Pozza, Esq. (admitted *pro hac vice*)
Email:  dpozza@jenner.com
Luke C. Platzer, Esq. (admitted *pro hac vice*)
Email:  lplatzer@jenner.com
JENNER AND BLOCK, LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC  20001
Telephone:  202.639.6000
Telecopy:  202.639.6066

By:  _____
      Janet T. Munn