UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  11-CIV-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

       *Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10,

       *Defendants*.

_____/

HOTFILE CORP.,

       *Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

       *Counter-Defendant*.

_____/

**DEFENDANT HOTFILE'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL
UNDER 28 U.S.C. § 1292(b) AND FOR STAY OF PROCEEDINGS
PENDING APPEAL**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 1

     A.    THIS CASE PRESENTS AN ISSUE OF VITAL IMPORTANCE TO
         COPYRIGHT JURISPRUDENCE AS TO WHICH "THERE IS
         SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION" ....................... 1

     B.    AN IMMEDIATE APPEAL WILL EXPEDITE RESOLUTION OF THIS
         LITIGATION.................................................................................................... 4

     C.    ALL PROCEEDINGS SHOULD BE STAYED PENDING IMMEDIATE
         APPEAL ............................................................................................................ 7

     D.    ALTERNATELY, THE COURT SHOULD SET THE ISSUE OF
         HOTFILE'S SUBSTANTIAL NON-INFRINGING USES FOR TRIAL
         IN DECEMBER................................................................................................. 7

III.  CONCLUSION................................................................................................................ 8

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Camacho v. Puerto Rico Ports Auth.,*
369 F.3d 570 (1st. Cir. 2004) ............................................................... 7

*Hernandez v. Altec Environmental Products, LLC,*
No. 10-80532-CIV, 2013 WL 3448212 (S.D. Fla. July 9, 2013) ............................................. 6

*In re Aimster Copyright Litig.,*
334 F.3d 643 (7th Cir. 2003) ............................................. 2

*Mais v. Gulf Coast Collection Bureau, Inc.,*
No. 11-61936-CIV, 2013 WL 1899616 (S.D. Fla. May 8, 2013) ............................................. 6

*Metro-Goldwyn Mayer Studios, Inc. v. Grokster Ltd.,*
545 U.S. 913 (2005) ............................................. 2, 3, 8

*Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.,*
No. 10-22398-CIV, 2011 WL 4102310 (S.D. Fla. Sept. 14, 2011) ......................................... 6

*Sony Corp. of America v. Universal City Studios, Inc.,*
464 U.S. 417 (1984) ............................................. passim

*Spurlin v. General Motors Corp.,*
426 F.2d 294 (5th Cir. 1970) ............................................. 6

*Williams Elecs., Inc. v. Artic Int'l, Inc.,*
685 F.2d 870 (3d Cir. 1982) ............................................. 5

### FEDERAL STATUTE

28 U.S.C. §1292(b) ............................................. 1, 5, 7

### OTHER AUTHORITY

Anthony R. Reese, *The Problems of Judging Young Technologies*,
55 CASE WES. L. R. 877 (2005) ............................................. 3

http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/courts-appeals-
march-2013.aspx ............................................. 7

## I.        INTRODUCTION

The Studios do not dispute that without the backstop provided by the *Sony*[1] defense, the vicarious liability doctrine would have far reaching implications on future innovation.  It could potentially capture every for profit broadband provider, wireless network and web host who, in hindsight, might have done more to stop its users' copyright infringement.  That result would obtain even where, as here, the online service adopted increasingly effective countermeasures to curb the infringement.  Nor can Plaintiffs deny that the Court has determined that questions remain for trial as to Hotfile's *Sony* defense (i.e., "the capacity for and scope of noninfringing uses of Hotfile's system").  [Dkt. 534 at 77].  Most crucially, the Studios do not contest (1) that the issue of whether or not the *Sony* defense applies to a vicarious liability theory of secondary copyright infringement presents a controlling question of law under 28 U.S.C. § 1292(b) and (2) that a stay of all proceedings is warranted should the court elect to certify that issue for interlocutory appeal.

Instead the Studios contest only the second two prerequisites for certification under 28 U.S.C. § 1292(b).  But here too, they cannot seriously dispute that there are substantial grounds for difference of opinion on this important issue left unresolved by two Supreme Court decisions and on which two circuits are sharply split in their interpretation.  Nor can they deny that the third prong is satisfied.  Only an immediate appeal can assure that the Court will need to conduct only a single trial on all issues of liability and damages.  The motion for certification should be granted and all proceedings stayed.

## II.       ARGUMENT

### A.      THIS CASE PRESENTS AN ISSUE OF VITAL IMPORTANCE TO COPYRIGHT JURISPRUDENCE AS TO WHICH "THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION"

Plaintiffs badly misread *Sony* to assert that the defense that the Supreme Court created there has no application to vicarious liability because the Court stated in a footnote that "'vicarious liability' was *not* before it."  Opp. at 8 (emphasis original), citing footnote 17 of *Sony*. Quite to the contrary, that footnote recognizes that "the lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn" and that although

---

[1] *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417 (1984) ("*Sony*").

1

"nominally" not before the court, its ground-breaking analysis "entails consideration of arguments and case law which may also be forwarded under the other labels," including specifically, "vicarious liability."[2]  It is thus unpersuasive for the Studios to argue that not "a single case support[s] Hotfile's position."  Opp. at 7.  *Sony* itself provides strong support.[3]

The Studios stubbornly rely on the Ninth Circuit's interpretation of *Sony* in *Napster* and try to dismiss the Seventh Circuit's strong differences of opinion set forth in *Aimster*[4] as mere *dicta*.[5]  It is inescapable, however, that Judge Posner in *Aimster* disagreed with the Ninth Circuit's counterintuitive conclusion in *Napster* that the *Sony* Court did not mean "vicarious liability" when it said "vicarious liability." Judge Posner saw "the Court, [as] treating vicarious and contributory infringement interchangeably, [and, holding] that Sony was not a vicarious infringer either."  *Aimster*, 334 F.3d at 654.

Remarkably, the Studios suggest that this difference of opinion "has since been resolved by the Supreme Court[] … in *Grokster*."[6] Opp. at 9.  However, the Supreme Court's *Grokster* decision expressly rejected the Studios' (MGM's) invitation to limit the *Sony* defense further

---

[2] The footnote reads in its entirety:

> As the District Court correctly observed, however, "the lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn . . . ." 480 F. Supp., at 457-458. The lack of clarity in this area may, in part, be attributable to the fact that an infringer is not merely one who uses a work without authorization by the copyright owner, but also one who authorizes the use of a copyrighted work without actual authority from the copyright owner.

> We note the parties' statements that the questions of Sony's liability under the "doctrines" of "direct infringement" and "vicarious liability" are not nominally before this Court. Compare Brief for Respondents 9, n.22, 41, n.90, with Reply Brief for Petitioners 1, n.2. We also observe, however, that reasoned analysis of respondents' unprecedented contributory infringement claim necessarily entails consideration of arguments and case law which may also be forwarded under the other labels, and indeed the parties to a large extent rely upon such arguments and authority in support of their respective positions on the issue of contributory infringement.

[3] The Studios do not contest that the case law of vicarious and contributory infringement use these concepts interchangeably (*see* Mot. at 12, n.5 & n.6), or that this Court's analysis of these two theories is largely overlapping.  *See* Mot. at 7 and n.3.  By their silence, the Studios rightly concede that the lines are not "clearly drawn."

[4] *In re Aimster Copyright Litig.*, 334 F.3d 643, 654 (7th Cir. 2003) ("*Aimster*").

[5] Judge Posner's finding in *Aimster* is no more "*dicta*" then what the Studios cite in *Napster*. Both courts had alternative grounds for their finding of liability, so this issue was not decisive in either case.

[6] *Metro-Goldwyn Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913 (2005) ("*Grokster*").

than the *Grokster* inducement exception, opting instead to "*leave further consideration of the Sony rule for a day when that may be required.*"  *Grokster*, 545 U.S. at 934 (emphasis added). *Grokster* abstained, stating, "there is no need to analyze separately MGM's vicarious liability theory."  *Id.* at 931, n.9. Thus, *Sony's* applicability to vicarious liability was left undisturbed by the *Grokster* decision.  As shown in the opening memorandum, two judges in the Southern District of New York concur that there remains substantial doubt on this issue.  *See* Mot. at 14 & 15 (*Limewire* and *Usenet* judges doubting).

The Studios have retreated from their previous argument that an "ongoing relationship" should bar the application of *Sony* to online services.  They now shift to the argument that because vicarious liability has no "knowledge" or "intent" element, *Sony* should not "logically" apply.  *Grokster* does not support this argument.  *Grokster* established an inducement exception to *Sony* that applies in cases of "*purposeful, culpable* expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise…"  545 U.S. at 937 (emphasis added).  Because vicarious liability lacks the elements of "knowledge" and "intent,"  it is quintessentially *non*-culpable, and, thus, under *Grokster*, such cases fall within the "legitimate…innovation having a lawful promise" bucket. Under *Grokster*, because vicarious liability lacks culpability*, Sony* "logically" *should* apply.  The *Grokster* Court confirms this in its discussion of the "staple article of commerce" doctrine:

> [T]he doctrine absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses, and limits liability to instances of more acute fault than the mere understanding that some of one's products will be misused. It leaves breathing room for innovation and a vigorous commerce.

*Id.* at 932-33.  This formulation of the test looks purely to the *uses* of the product in the absence of "acute fault," so vicarious liability is plainly eligible to be "absolved."[7]  The core policy focus of both *Sony* and *Grokster* is "innovation" and the progress of "technology" – aims which find

---

[7]  This formulation parallels Prof. Reese's prophetic pre-*Grokster* proposal for "dual use" technologies -- that the *Sony* staple article of commerce doctrine governs both contributory infringement and vicarious liability. (Mot. at 14 n.7).  Prof. Reese expressly rejected the view that "*Sony* merely [is] a limit on the circumstances in which a court can impute knowledge to a supplier of a dual-use technology to determine contributory infringement," and also "reads *Sony* more broadly" than *Napster* did.  Anthony R. Reese, *The Problems of Judging Young Technologies*, 55 Case Wes. L. R. 877, 883-84 (2005).  The Studios' opposition does not mention or address Prof. Reese; the power of his thinking cannot be easily discounted and dismissed.

their genesis in the intellectual property clause of the Constitution itself.  These aspirations do not avail of artificial limitations and exceptions that depend on what label a plaintiff chooses for its cause of action.

There is a "substantial ground for difference of opinion" on the issue of whether the *Sony* defense applies to vicarious liability claims against an online service.

### B.    AN IMMEDIATE APPEAL WILL EXPEDITE RESOLUTION OF THIS LITIGATION

An immediate appeal would shorten this litigation by eliminating an unnecessary trial in December pending resolution of a controlling question of law regarding applicability of the *Sony* defense here.  Mot. at 16-18.  Only by now seeking guidance from the Eleventh Circuit can the Court achieve the efficiencies of a single trial on liability, damages and the counterclaim.

In their Opposition, Plaintiffs make no effort to deny the inefficiency inherent in trying the issue of the overall operation of Hotfile's system for damages purposes and then retrying substantially the same issue for liability purposes if needed later.  *See* Opp. at 4-7.  In its Motion, Hotfile pointed out that Plaintiffs intend to call Anton Titov at trial to testify regarding the operation of Hotfile in hopes of increasing Plaintiffs' statutory damages award.  Mot. at 17-18.  Plaintiffs have obtained a stipulation postponing any liability trial until after appeals of the Court's summary judgment ruling are completed.  Stipulation To Hold Claims In Abeyance [Dkt. 536].  Plaintiffs' current plan results in the threat of duplicate trials in backwards order, first on damages, followed (if necessary) by liability issues.  Plaintiffs not only make no effort to deny this strategy, yesterday they filed a motion to bifurcate and delay the trial of Hotfile's counterclaims against Warner, ensuring that there would be at least two if not three trials and multiple appeals. [8]  Only an immediate interlocutory appeal can produce one comprehensive trial on all issues, rather than duplicative piecemeal trials.

Plaintiffs also make no effort to deny that a damages trial here will be wasted effort – for the Court, the jury, and the parties – if the *Sony* defense applies.  Only Plaintiffs' proposal can result in multiple jury trials on damages.  There is no reason to take jurors' time to consider damages twice when it can be done once – or not at all.  Likewise, the parties and the Court should not undertake multiple trials, which would entail repeated preparation of exhibit lists,

---

[8] Trial of Hotfile's counterclaim will entail testimony on the overlapping issues regarding the indisputably legitimate usage of the Hotfile system for open source downloads.  Mot at 18.

witness lists, deposition designations, motions *in limine*, jury instructions, *Daubert* motions, jury selection, trial briefs, opening statements, witness examinations, closing statements, and post-trial motions.  Appellate resolution of a single controlling question of law obviates pointless and significant expenditures here.

Plaintiffs attempt to minimize the effort entailed in the upcoming trial.  *See* Opp. at 5 ("trial may very well be substantially shorter than the two-week trial calendar the Court has currently allotted"); *id.* at 2.  However, Plaintiffs make no effort to address any of the points raised by Hotfile regarding the complexity of trying any case potentially involving up to 3,800 separately copyrighted works.  *See* Mot. at 18 (noting that hundreds of works cannot give rise to damages due to Plaintiffs':  (1) disclaimer of post-Complaint damages; (2) failure to produce content files as required by Judge Jordan [Dkt. 147]; (3) refusal to permit discovery on "work product" grounds regarding works downloaded by vendor DtecNet; and (4) failure to produce copyright registrations).  Hotfile may justly ask Plaintiffs to prove infringement (in the United States) and damages for each of their 3,800 asserted works.

By ignoring the controlling nature of the issue presented, and flipping the order so as to illogically address the last prong of Section 1292(b) first, the Studio's opposition rests on a tautology.  They argue "it is virtually ***always*** the case that a reversal on appeal" will result in a remand and therefore "Hotfile's argument would justify piecemeal appellate review of ***any*** decision where reversal" would require a later trial on liability.  Opp. at 6 (emphasis original).  But this is ***not*** just any decision; this Court had to confront a controlling issue of law on which there is a substantial difference of opinion about the reading of two seminal Supreme Court cases.  The Studios' argument could ***always*** be made with respect to interlocutory review of ***any*** decision.  That is the nature of review under 1292(b), which is appropriately reserved for the important and exceptional situation presented here where an immediate appeal on a controlling issue will expedite the ultimate termination of this case by avoiding the prospect of multiple trials.

Plaintiffs make no effort to distinguish Hotfile's authority regarding the propriety of interlocutory appeal in copyright cases where the trial court's order may have "serious, perhaps irreparable, consequences" to the defendant.  *Williams Elecs., Inc. v. Artic Int'l, Inc.*, 685 F.2d 870, 871 (3d Cir. 1982).  Here, Plaintiffs seek to ruin Hotfile, evidently hoping to obtain statutory damages exceeding Hotfile's cumulative gross revenues.  Absent certification of this

case under § 1292(b), appeal may prove an illusory right to Hotfile, and Plaintiffs may evade appellate review of the Court's important decision on vicarious liability.

Plaintiffs also ignore Hotfile's authority from this District for the proposition that "[a]n interlocutory decision in this case also has the potential to materially advance future cases and to conserve judicial and party resources involved with the continued litigation of these very issues." *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV, 2013 WL 1899616 at *24 (S.D. Fla. May 8, 2013). Time saved here by resolving the controlling law will expedite handling of current and future copyright cases throughout the Eleventh Circuit.

For their part, Plaintiffs rely on inapposite case law. The court denied interlocutory appeal in *Spurlin v. General Motors Corp.*, 426 F.2d 294 (5th Cir. 1970), a multiparty bus accident case, because the choice of law under *Erie* "would require a record in which the facts, not conclusory pleading or affidavits, would be required." *Id.* at 295. Here, the applicability of the *Sony* defense to vicarious liability in copyright cases is a pure question of law. Likewise, in *Hernandez v. Altec Environmental Products, LLC*, No. 10-80532-CIV, 2013 WL 3448212 (S.D. Fla. July 9, 2013), a products liability case involving a wood chipper, the court found that its summary judgment order "does not involve a controlling question of law" but rather relied on the fact that "there were no genuine issues of material ***fact*** for trial." *Id.* at *2 (emphasis added). Failure to proffer any factual evidence of a wood chipper's defective design bears no analogy to the legal question of the availability of the *Sony* defense.

*Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 10-22398-CIV, 2011 WL 4102310 (S.D. Fla. Sept. 14, 2011), the case on which the Studios most heavily rely, involved a claim for overtime wages under the Fair Labor Standards Act ("FLSA"). The court found the issues presented regarding plaintiff's exempt status under the FLSA to be "fact-intensive" determinations such that "the Eleventh Circuit could not easily make a decision without sifting through the particular facts of this case and others on the issue." *Id.* at *2. Additionally, the defendant seeking appeal made a "less than compelling case" regarding existence of any "substantial ground for difference of opinion" regarding the FLSA – again distinguishing the case from the instant Motion. *Id.* at *3. In any event, despite Plaintiffs' reliance on *Palacios* to show the purported impropriety of staying proceedings only three months before trial, the court in *Palacios* ultimately stayed the case only four weeks before trial for the very reason proffered by Hotfile here: to await an appellate determination of the controlling legal issue that would

6

prevent wasted effort on trial.  *See* Case No. 10-22398-CIV (S.D. Fla.) [Docket Nos. 161, 162] (attached hereto as Exhibit 1).

Plaintiffs repeatedly emphasize that Section 1292(b) sets "a high threshold" and is to be used "sparingly" and in "exceptional cases," even quoting one First Circuit opinion so as to characterize such appeals as "hen's teeth rare."  Opp. at 3-4 (quoting *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 573 (1st. Cir. 2004)).  However, as set forth in data from the Federal Judicial Center, each United States District Judge certifies a matter for interlocutory appeal an average of once each year.[9]  Approximately the same average obtains for District Judges within the Eleventh Circuit.  Hen's teeth are evidently not as rare as Plaintiffs would have this Court believe.

## C.  ALL PROCEEDINGS SHOULD BE STAYED PENDING IMMEDIATE APPEAL

In their Opposition, Plaintiffs do not oppose a stay of further trial proceedings here if the Court certifies this case for interlocutory appeal.  *See* 28 U.S.C. § 1292(b) (explicitly permitting stays pending appeal).  Given this fact, there can be no harm here in providing the opportunity for the Eleventh Circuit to accept this interlocutory appeal.  In any event, a stay should issue.[10]

## D.  ALTERNATELY, THE COURT SHOULD SET THE ISSUE OF HOTFILE'S SUBSTANTIAL NON-INFRINGING USES FOR TRIAL IN DECEMBER

For all of the reasons explained above, 1292(b) certification of the controlling issue of the applicability of the *Sony* defense would be more effective and efficient.  But if the Court declines certification, Hotfile suggested as an alternative that it could promote judicial economy to ask the same jury determining the Warner counterclaim and damages to also determine the factual issue of whether Hotfile's system is capable of commercially significant non-infringing uses.  There is

---

[9] Including Senior Judges, there are 254 judges on the Courts of Appeal in the United States. http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/courts-appeals-march-2013.aspx.  Each active judge received three applications for interlocutory appeal in the year ending March 31, 2013, resulting in a total of 762 applications. *Id.*; *see* Exhibit 2.  There are only 667 authorized judgeships in the United States.  Accordingly, each District Judge sent up an average of 1.2 interlocutory appeals last year.  For comparison, each District Judge within the Eleventh Circuit sent up 0.9 interlocutory appeals in the same year.

[10] The stay would apply to all proceedings – Hotfile's counterclaim and the Studios' individual claim of derivative liability against Titov, inclusive.

undeniable overlap in the issues presented by the *Sony* defense and Hotfile's counterclaim, as both are centered on the noninfringing capabilities of Hotfile's system and Warner's unlawful takedowns which interfered with those uses (i.e., distribution of open source jdownloader software).   Warner's motion to sever and delay trial on the counterclaim, even if granted, would not eliminate the overlap between the damages trial and the issues presented by the *Sony* defense. The Studios apparently concede that the damages trial will include "scene-setting" facts.  Warner Motion to Bifurcate at 8.  The operation of the Hotfile system and its many legitimate uses is certainly part of the scene for the jury to consider.  Beyond these general facts, the Studios have declined to be specific as to what factual issues they contend will be properly presented to the jury hearing the damages trial, saying only there are  "many – many – decisions related to the damages trial that we simply have not made yet (or even thoughtfully considered yet)."   As part of that thinking, Hotfile urges the Studios (and the Court) to consider the benefits of presenting the *Sony* issue to this same jury.

        If the Eleventh Circuit eventually reverses the Court's summary judgment ruling regarding applicability of the *Sony* defense to vicarious liability, there would be no need for remand and trial on the issues of either material contribution or vicarious infringement liability if the jury verdict has previously sustained the *Sony* defense.  At most, a trial on the narrow issue of *Grokster* inducement would remain – if the Studios choose to pursue it.  Once the Studios make their many decisions on their proposed scope of the damages trial and the Court rules on the counterclaim bifurcation motion, the Court will be in a position to evaluate the efficiency of including as part of the December trial a jury determination on the *Sony* defense.

## III.    CONCLUSION

        The Court has recognized the importance and difficulty of the legal issues presented by this case.  It valiantly struggled to be sure to get them right.  Because there are substantial differences of opinion on one of those rulings – that Hotfile as a matter of law is vicariously liable for the actions of its users even though the *Sony* substantial noninfringing uses defense raises jury issues – the Court (and the parties) cannot know whether or not the Court reached the right decision until the 11th Circuit decides the issue.  It should be certified for immediate appeal, while further proceedings in this Court are stayed.  This will both advance copyright jurisprudence and efficient adjudication of this case. A proposed Order is attached hereto as Exhibit 3.

Dated:  September 26, 2013          Respectfully submitted,

                                      By: s/ Janet T. Munn
                                          Janet T. Munn

RASCO KLOCK
Janet T. Munn (FL Bar No. 501281)
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305.476.7101
Fax:  305.476.7102

FARELLA BRAUN + MARTEL LLP
s/ Roderick M. Thompson
Roderick M. Thompson (*Pro Hac Vice*)
rthompson@fbm.com
Andrew Leibnitz (*Pro Hac Vice*)
aleibnitz@fbm.com
Anthony P. Schoenberg (*Pro Hac Vice*)
tschoenberg@fbm.com
Deepak Gupta (*Pro Hac Vice*)
dgupta@fbm.com
Janel Thamkul (*Pro Hac Vice*)
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415.954.4400

BOSTON LAW GROUP
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Center, MA 02459
Phone: 617.928.1800
Fax: 617.928.1802

*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on September 26, 2013, a true and correct copy of the

foregoing document was filed electronically with the Clerk of the Court using CM/ECF.  I also

certify that the foregoing document is being served this day on all counsel of record identified

below in the manner specified, either via transmission of Notices of Electronic Filing generated

by CM/ECF, or in some other authorized manner for those counsel or parties who are not

authorized to receive electronically Notices of Electronic Filing.

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
sfabrizio@jenner.com
Luke C. Platzer (*Pro Hac Vice*)
lplatzer@jenner.com
David A. Handzo (*Pro Hac Vice*)
dhandzo@jenner.com
1099 New York Ave., N.W., Suite 900
Washington, DC 20001
Phone: 202.639.6000
Fax: 202.639.6066

GRAY-ROBINSON, P.A.
Karen L. Stetson
karen.stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305.416.6880
Fax: 305.416.6887

Karen R. Thorland, Esq. (*Pro Hac Vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA  91403-5885
Phone: 818.935.5812

By: s/ Janet T. Munn
    Janet T. Munn

10