UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

Plaintiffs,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

Defendants.
_____/

HOTFILE CORP.,

Counterclaimant,

v.

WARNER BROS. ENTERTAINMENT INC.,

Counterdefendant.
_____/

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION
TO BIFURCATE COUNTERCLAIM**

**I.      INTRODUCTION**

Plaintiff Studios cannot deny that the operation of Hotfile's system will be an issue in common to both the trials on statutory damages and on Hotfile's counterclaim. There can be no dispute that there will be substantial overlap in witnesses and evidence between those two trials. Separating the issues between two trials would be inefficient and more expensive for all concerned – the parties, the Court, and the jur(ies). While Plaintiffs have unlimited resources, Hotfile does not. Plaintiffs' request to make two trials out of one should be denied.

**II.     PROCEDURAL BACKGROUND**

Plaintiffs sued Hotfile on February 8, 2011. [Docket No. 1.] Hotfile filed its answer and counterclaim against Warner on August 22, 2011 [Docket No. 121], and the operative Second Amended Counterclaim on October 27, 2011. [Docket No. 161.] On August 30, 2011, this Court first set a single two-week trial for Plaintiffs' claims and Hotfile's counterclaim. [Docket No. 133.] That two-week trial is now specially set for December 9, 2013. [Docket No. 522.] Thus the parties have been litigating this case for over two years in preparation for a single trial on all issues. Nonetheless, on September 25, 2013 – approximately two months before trial, and one week before exchange of the parties' pretrial disclosures – Plaintiffs filed the instant motion seeking bifurcation.

On August 28, 2013, after reviewing the evidence of Warner's wrongful conduct, the Court denied Warner's motion for summary judgment finding that "there is sufficient evidence in the record to suggest that Warner intentionally targeted files it knew it had no right to remove." [Docket No.534 at 97.] Plaintiffs' repeated characterization in their motion of Hotfile's counterclaim as merely "inflammatory" and suggestions that it is "questionable" whether Hotfile will proceed with its claims are baseless. Mot. at 3, 8. Hotfile intends to proceed with its counterclaim and to bring out the facts of Warner's misconduct before the jury.

1

Two days ago, the parties exchanged draft pretrial stipulations, including preliminary witness and exhibit lists for trial. Over one-third of the witnesses designated by Plaintiffs as expected to testify at trial on damages were also identified as witnesses regarding Hotfile's counterclaim. *See* Plaintiffs' Witness List (attached hereto as Ex. C) (designating three of Plaintiffs' eight witnesses to testify on ***both*** Plaintiffs' claims and Hotfile's counterclaim). Plaintiffs produced a single list of exhibits which did not differentiate between documents to be used in relation to Plaintiffs' claim or Hotfile's counterclaim. *See* Plaintiffs' Trial Exhibit List (attached hereto as Ex. B). Hotfile similarly expects substantial overlap among issues.

### III.    LEGAL STANDARD

"[C]hief among the characteristics of federal litigation is the principle, with few exceptions, that a case is to be tried as a single unit and not broken into piecemeal trials." *Exemar v. Urban League of Greater Miami, Inc*., 2008 U.S. Dist. LEXIS 122698, at *3-4 (S.D. Fla. June 26, 2008). This "effectuate[s] the deliberate choice on the part of Congress in favor of once-and-for-all litigation as to all issues." *Id*. The Eleventh Circuit "has cautioned that separation of issues is ***not*** the usual course that should be followed, and that the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice." *Alabama v. Blue Bird Body Co*., 573 F.2d 309, 318 (11th Cir. 1978) (emphasis added). Strict limitation on bifurcation "is a recognition of the fact that inherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact." *Id.*

"The main determination to be made by a district court in making this decision is which choice is most likely to result in a just final disposition of litigation." *In re Nitro Prods., L.L.C*., 2003 U.S. Dist. LEXIS 27555, at *4-5 (S.D. Fla. 2003). In so ruling, courts seek to avoid "two openings, two closings, two deliberations, witnesses traveling back and forth to be called to the

2

stand more than once, and [any] other practical issues that would delay resolution of the matter." *Id.* Undue delay in bringing a request for bifurcation – such as seeking bifurcation two years into litigation and only two months before trial – undermines efficiency, disrupts trial preparation, and militates against bifurcation. *Id.*

**IV.     LEGAL ARGUMENT**

    **A.     Bifurcation Will Unfairly Prejudice Hotfile, Waste Jury Time, and Expand The Burdens On This Court**

Delay unfairly prejudices Hotfile here. *See Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 116 (E.D. La. 1992) ("An unreasonable delay in a case's resolution amounts to prejudice to the one opposing separation. It is clearly not in the public interest.") (citation omitted); *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001). This Court has found triable issues of fact regarding Hotfile's counterclaim. Postponing resolution of Hotfile's claim cannot be justified by Plaintiffs' desire to proceed with their damages claim unimpeded by the inconvenient truth of Warner's related wrongdoing.

The main witness listed by all parties regarding both the claims and the counterclaim – Anton Titov – resides in Sofia, Bulgaria. The distance between Miami and Sofia is 5,682 miles. There are no direct flights; it is a long and arduous trip. Plaintiffs cannot justifiably demand that Mr. Titov make that trip multiple times for trial. While Plaintiffs studiously avoid any reference to the word "witness" in their Motion, Eleventh Circuit precedent requires courts to examine whether there is "substantial overlap in the issues, facts, evidence, and ***witnesses*** required" in considering bifurcation. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1301 (11th Cir. 2001) (emphasis added). Fully one-third of the witnesses identified on Plaintiff's pretrial disclosures overlap between the competing claims. *See* Plaintiffs' Witness List (Ex. C) (designating three of

Plaintiffs' eight witnesses to testify on both Plaintiffs' claims and Hotfile's counterclaim). Hotfile should not have to examine these witnesses on multiple occasions.

Nor should the parties have to reintroduce trial exhibits on multiple occasions. (While Plaintiffs insist that the exhibits will differ, Plaintiffs do not even attempt to divide their exhibit list as between their claims and Hotfile's counterclaim.) Additionally, Hotfile should not have to conduct multiple openings, deliver multiple closings, or participate in empanelling multiple juries. *In re Nitro Prods., L.L.C.*, 2003 U.S. Dist. LEXIS 27555, at *4-5 (S.D. Fla. 2003).

Burdening multiple juries is also pointless here. Multiple juries should not have to learn the same basic facts that are central to both the damage claims and counterclaim: "who the parties are, what Hotfile is, and how it operates." Mot. at 8. Plaintiffs unconvincingly attempt to dismiss these facts as "scene setting." *Id.* In fact, the operation of Hotfile's system is at the core of both claims. Indeed the majority of evidence disclosed by either side falls within the category of "how [Hotfile] operates." *E.g.*, Plaintiffs' Trial Exhibit List (Ex. B) (citing mostly communications to or from individuals allegedly associated with Hotfile). For example, Plaintiffs state that their damages case will include evidence regarding the willfulness of Hotfile's conduct, including Hotfile's allegedly inadequate practices under the notice-and-takedown provisions of the Digital Millennium Copyright Act ("DMCA"). *See* Mot. at 7 (stating Plaintiffs' intent to address "whether [Hotfile's] conduct was innocent or willful"); Plaintiff's Pretrial Stipulation at 6 (attached hereto as Ex. A) (identifying paragraph after paragraph of facts foundational to Plaintiffs' damages claims relating to Hotfile's alleged wrongdoing under the DMCA). Regarding the counterclaim, Warner intends to prove that Hotfile failed to mitigate its damages because it "failed to adopt a counternotice procedure [as] contemplated by the DMCA." Plaintiff's Pretrial Stipulation at 4 (Ex. A). By Plaintiffs' own admission, they intend to make

DMCA non-compliance a foundational element of both their damages claim and Warner's defense to Hotfile's counterclaim.

Regarding judicial resources, no reason exists to believe that *expanding* the time permitted to resolve all liability issues will somehow *diminish* the burden on this Court. The two-month period remaining to trial imposes at least some restraint on Plaintiffs in bringing *Daubert* motions, motions *in limine*, disputes about jury instructions, or related proceedings to the Court. Delay under these circumstances compounds proceedings.

### B. Plaintiffs Unreasonably Delayed Bringing This Motion

Plaintiffs have known for more than two years that a single trial would proceed on all claims and counterclaims. Nonetheless, they waited until two months before trial to seek bifurcation, when dispositive motions have been decided and pretrial disclosures made. Such delay prejudices Hotfile through the "detrimental effect bifurcation would have on trial preparation at this point, approximately two months before trial." *In re Nitro Products, L.L.C.*, 2003 U.S. Dist. LEXIS 27555, at *4-5 (S.D. Fla. 2003). Such delay militates against bifurcation, as Judge Middlebrooks found in *In re Nitro Products*:

> To date dispositive motions have been filed, the parties have been proceeding for the almost two years as if all issues would be tried together, to separate them now would cause delay and another level of complexity. This case will have been going on for approximately two years by the time the trial starts. Bifurcation, even with one jury, may result in two openings, two closings, two deliberations, witnesses traveling back and forth to be called to the stand more than once, and many other practical issues that would delay resolution of this matter.

*Id*. For the same reasons cited in *In re Nitro Products* – unreasonable delay, disruption to trial preparation in the last two months before trial, and inefficiency – the Court should reject bifurcation here.

5

### C.     Plaintiffs Incorrectly Assert That "There Is Simply No Overlap" In The Issues Regarding Plaintiffs' And Hotfile's Competing Claims

Plaintiffs assert that "[t]here is simply no overlap . . . between the issues remaining for trial in the statutory damages portion of the Plaintiffs' main case and those relevant to Hotfile's Counterclaim against Warner." Mot. at 7. This is untrue.

Plaintiffs admit that Hotfile's profits are relevant to calculation of statutory damages. *See* Mot. at 7 (identifying "profits reaped by infringers" as material to statutory damages). Likewise, Hotfile's profits bear upon the extent of its damages pursuant to its counterclaim. *See* 17 U.S.C. § 512(f) (authorizing service providers to recover damages (such as lost profits) for knowing misrepresentations in takedown notices). In both instances, the jury will need to know how Hotfile generates revenue, its costs, and the resulting profits. On the counterclaim, the Court specifically noted, "the example of JDownloader," which Warner "acknowledged removing for reasons unrelated to copyright infringement." [Docket No. 534, at 97]. JDownloader is also very relevant to Hotfile's profitability. It has been downloaded at least millions of times and directly led to significant premium subscription revenue for Hotfile. [Docket No. Hotfile's opposition to Warner's motion for summary judgment. *See* Declaration of Matthew Lynde In Support of Hotfile's Opposition to Warner's Motion for Summary Judgment.] Anton Titov should not have to explain this same evidence twice to two separate juries.

Likewise, the feasibility of accurately identifying and removing infringing material from Hotfile's system will feature in trial of both Plaintiffs' damages claim and Hotfile's counterclaim. Plaintiffs unequivocally state their intent to present "Defendants' blameworthiness in declining to exercise available control to limit or stop [infringement]." Plaintiffs' Pretrial Stipulation at 3 (Ex. A). They claim that Defendants knew or should have known that material on Hotfile's website was infringing based simply on file names. Plaintiffs'

6

Motion for Summary Judgment at 23 (Docket No. 322 at 25-26); Yeh Decl. Ex. 54 (DE 288-31 (filed under seal); DE 324-11). Hotfile will demonstrate the difficulty in determining whether a file was infringing merely based on file name. Evidence showing that Warner sent takedown notices for non-infringing material based simply on file name searches both supports Hotfile's counterclaim and undermines Plaintiffs' damages claim: if Warner, the copyright holder, could not properly identify infringing material, it cannot justly fault Hotfile for not being able to do so. *Fitzgerald*, at 1117. Both claims require the testimony of the same witnesses: Anton Titov of Hotfile and Michael Bentkover and David Kaplan of Warner. No reason exists to elicit the same evidence on two occasions from multiple out-of-state witnesses before two separate juries in the same case.

Hotfile's and Warner's communications regarding and Warner's abuse of Hotfile's Special Rightsholder Accounts ("SRAs") will also be relevant to both Plaintiffs' claim and Defendants' counterclaim. In its defense against Plaintiffs' allegation of willfulness, Hotfile will show that it had a good faith belief that its conduct did not constitute copyright infringement. *See Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 584 (6th Cir. 2007). Hotfile will present evidence of its attempts to comply with the safe harbor provisions of the DMCA by expeditiously removing or disabling access to allegedly infringing material, and particularly by providing copyright holders (including Warner) with the ability through SRAs to immediately take down content for which they claimed copyright ownership without further action from Hotfile. Regarding Hotfile's counterclaim, Warner's abuse of its SRA privileges form the basis of Hotfile's claim. Thus, both Plaintiffs' claims and Hotfile's counterclaim require presentation of evidence regarding how the SRA was developed, its functionality, and its use (and misuse) by

7

copyright holders.  Bifurcation would require pointless duplication and repetitive testimony at least from Anton Titov, Michael Bentkover, and David Kaplan.

Bifurcation will also result in duplicative presentations of evidence and testimony regarding JDownloader, an open source software application that simplifies downloading. Hotfile will defend against Plaintiffs' damage claim by showing that one of the most common uses of the Hotfile system is non-infringing:  software developers like Appwork GmbH, the developer of JDownloader, use hotfile.com to distribute their open source software programs.  In fact, JDownloader represents 17 of the top 100 most downloaded files on Hotfile.com, and it is one of the files that Warner admitted that it wrongfully and repeatedly deleted from Hotfile's system.  Thompson Decl. To Defendants' Opposition To Plaintiffs' Motion for Summary Judgment Ex. 4 (Kaplan Dep. 225:13-226:12) (filed under seal on Feb. 27, 2012).  Hotfile's counterclaim arises directly out of the improper deletions of JDownloader and similar files. Bifurcation will force Defendants to present duplicative evidence and re-call witnesses, such as Plaintiffs' witness David Kaplan, to testify regarding JDownloader, delaying proceedings and burdening the Court.  Because of the clear substantial overlap between the facts, evidence, and witnesses who will be required for both Plaintiffs' main claim and Defendants' counterclaim, bifurcation will result in unnecessary delay and duplication of proceedings antithetical to the purpose of Rule 42(b).  *See Continental Ins. Co. v. Carib Link, S.A.*, 2007 WL 2774255 (S.D. Fla. 2007) (slip op.); *Medtronic Xomed, Inc. v. Gyrus Ent LLC*, 440 F. Supp. 2d 1333, 1336 (M.D. Fla. 2006); *McDaniel*, 987 F.2d at 305; *Choat*, 467 F. Supp. at 381.

### D. Plaintiffs Cannot Seek Bifurcation On Grounds That The Truth Will Be Prejudicial

Plaintiffs argue for bifurcation on grounds that the non-Warner Plaintiffs should not have to try their claims alongside Warner while it answers for its misconduct.  Mot. at 3-5.  This

amounts to an argument that, having made the decision to sue as a group, the Court should relieve the plaintiffs of the results of that tactical decision on the eve of trial because the truth of about the conduct of Plaintiff proves inconvenient for the others. This argument fails for multiple reasons.

*First*, in contending that the non-Warner Plaintiffs will seek at trial to distinguish their antipiracy practices from those of Warner, Plaintiffs wrongly assume the relevance (and thus admissibility) of such testimony. In fact, such testimony by non-parties to the counterclaim has no bearing on any element of any claim or defense at issue. Indeed, these Plaintiffs successfully obtained a Protective Order from the Court *preventing* any discovery by Hotfile in to their antipiracy practices as irrelevant to Plaintiff's claims. [Docket No. 138]. Plaintiffs' claim of prejudice is based on a scenario that does not exist and cannot properly arise.

*Second*, Plaintiffs' hypothetical prejudice does not rise to the level required for bifurcation. *See Monaghan v. Tishman Constr. Corp.*, 827 F. Supp. 233, 246 (S.D.N.Y. 1993) (holding bifurcation "reserved for truly extraordinary situations of undue prejudice"). In *Monaghan*, which involved a brutal personal injury action – where the potential for prejudice far exceeded the circumstances here – the court found that even if the defendants "might be prejudiced to some extent in the damages phase of the single trial," the defendants "failed to show that this prejudice would be 'undue' – that is, that the prejudice would be any more than that which is normally experienced by a defendant who is found liable . . . where the issues of liability and damages are tried to a single jury." *Id*. at 246. If prejudice among the jury arising from knowledge of the plaintiff's suffering after a gunshot to the head does not give rise to bifurcation, the fact that the non-Warner Plaintiffs might "feel that they need to differentiate their own antipiracy practices favorably from Warner's" does approach the type of prejudice required.

9

***Third***, the any alleged conflict of interest between Warner and the non-Warner Plaintiffs is belied by the representation of all Plaintiffs by the same counsel on all matters in this case. In such circumstances, the risk of any "spillover effect" is minimized. Thus, in *Donato v. Fitzgibbons*, 172 F.R.D. 75, 85 n.10 (S.D.N.Y. 1997) – cited by Plaintiffs – the court did ***not*** sever proceedings against a police officer even when the co-defendant municipality received a damaging adverse inference at trial due to spoliation of evidence. Based on counsel's joint representation, the court found that "the spillover prejudice from my ruling on adverse inference is not so prejudicial to defendant that he merits any relief as a result of my ruling." *Id.*

Even accepting the argument that the non-Warner Plaintiffs may somehow be prejudiced by Hotfile's allegations against Warner, bifurcation is still not warranted, because it will not mitigate against Plaintiffs' purported prejudice. Regardless of bifurcation, the jury will hear about Warner's improper takedowns during the damages phase, because it is relevant to Hotfile's defense against willful infringement. Instead, a proper limiting instruction can be given to the jury. In *Andazola v. Logan's Roadhouse, Inc*., 2013 U.S. Dist. LEXIS 60541, at *12 (N.D. Ala. Apr. 29, 2013), the defendant argued that introducing evidence of the plaintiff's emotional distress and financial condition before the jury decided the issue of liability would be prejudicial to the defendant. Despite recognizing the potential prejudice, the court declined to bifurcate trial where there was no reason why proper limiting instructions would not prevent such prejudice. *Id*. (holding that "with the aid of a cautionary instruction, a jury will be able to fairly and impartially determine both liability and damages in a single trial"). The same is true here. The Court can prevent any alleged prejudice to the non-Warner Plaintiffs by cautioning the jury that Warner's actions at issue in the counterclaim should not be imputed to the other Plaintiffs in determining the amount of statutory damages against Hotfile. *See Svege v. Mercedes-Benz*

10

*Credit Corp.*, 329 F. Supp. 2d 283, 285 (D. Conn. 2004); *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) (denying bifurcation where movant failed to present particular factors to distinguish potential prejudice from that which is normally dealt with through an appropriate charge and curative instructions).

      E.      **There Are No Complicated Issues That Would Confuse or Bias The Jury.**

Plaintiffs admit that their statutory damages claim is simple and straightforward. In fact, Plaintiffs have conceded that the statutory damages trial "may very well be substantially shorter than the two-week trial calendar the Court has currently allotted." Plaintiffs' Opposition to Motion for Certification of Interlocutory Appeal and for Stay at 5 (Docket No. 537). This case is not so complicated and the damages issues so numerous or complex that the jury would likely be distracted from their task on liability by the presence of testimony and exhibits relating to Defendants' counterclaim. *See Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 283, 285 (D. Conn. 2004).

Despite this, Plaintiffs attempt to argue that the jury will be confused and biased by Defendants' allegations against Warner. Faced with a lack of authority to support their proposition, Plaintiffs continue to piece together selective excerpts from non-precedential case law, ignoring key considerations in these courts' decisions, which are not present in the instant case. *See Tab Express Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 622-25 (D. Kan. 2003) (allowing severance where there was no factual or legal connection to plaintiff's contract claims, counterclaim would delay discovery and proceedings for eight months, patent infringement claim was extremely complex, and "neither party [would] be required to present the same evidence or the same case twice"); *Totaltape, Inc. v. National Association of State Boards of Accountancy*, No. 85-civ-4241, 1987 WL 7736, at *9 (S.D.N.Y. Mar. 4, 1987) (main claim and counterclaim were based on separate and distinct factual circumstances and liability was still

11

to be determined on both claims); *Monsanto Co. v. E.I. DuPont de Nemours & Co.*, No. 4:09-cv-00686, 2009 WL 3012584, at *2 (E.D. Mo. Sept. 16, 2009) (citing common practice of separating antitrust and patent claims for trial *because of the particular nature of antitrust claims* and trial on patent claims could moot counterclaims); *SCFC ILC, Inc. v. Visa USA Inc.*, 801 F. Supp. 517, 528 (D. Utah 1992) (bifurcating where suit involved claims against trial counsel, and calling trial counsel could have a prejudicial effect); *Value Line Fund v. Marcus*, 161 F. Supp. 533, 536-38 (S.D.N.Y. 1958) (bifurcated issues were *liability* claims and one would be tried by jury while the other by court).

As discussed above, Plaintiffs' claims of prejudice and bias are unfounded and do not meet the level of undue prejudice required by Rule 42(b).  Further, Plaintiffs fail to explain why a cautionary instruction would not suffice to mitigate against the alleged bias.

### F.       Plaintiffs' Case Law Is Inapposite

In their recitation of cases favoring bifurcation, Plaintiffs omit key considerations, other than the potential for prejudice, relied on by those courts, none of which are present here.  In *Sound Video*, the court found that the severed claim introduced a new theory of recovery and, unlike the instant case, was not dependent upon *factual conclusions* common to those in the primary case.  *Sound Video Unlimited, Inc. v. Electratainment, Inc.*, 700 F. Supp. 127, 145-46 (S.D.N.Y 1998) (also finding jury confusion, because the issues in the primary lawsuit were to be tried by the jury, while the wiretap issues would be tried by the court).  In the present case, there are numerous substantial issues of fact common to both the damages determination and Warner's liability on Defendants' counterclaim, *see infra*, and both the damages determination and Defendants' counterclaim will be tried by the jury.  In *US ex rel Miller*, the court's decision to bifurcate the defendant's counterclaims was based in large part on the extreme complexity of the suit (5 amended complaints, 12 years of litigation, over 700 court documents, 9 defendants

each with multiple defenses) and the preference toward resolving *qui tam* defendant liability before reaching *qui tam* defendant counterclaims. *United States ex. Rel. Miller v. Bill Harbert Int'l Constr. Inc.*, No. 95-1231, 2007 WL 851823, at *2-3 (D.D.C. Mar. 14, 2007). *Wynn v. Nat'l Broad Co.*, 234 F. Supp. 2d 1067, 1088-90 (C.D. Cal. 2002), bears no resemblance to the instant suit. There, 51 plaintiffs claimed that multiple defendants' combined conduct created a hostile work environment. The court found a risk of prejudice and "guilt by association", because the circumstances of each of the 51 plaintiffs were completely unrelated from each other, and their claims were highly individualized and not against the same defendants. *Id*. at 1088. Additionally, the trial would require the testimony of each of the 51 plaintiffs and their respective employers and supervisors, making it unwieldy. *See also Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y 1989) (claims required proof of different facts); *Donato*, 172 F.R.D. at 85 (bifurcation warranted where co-defendant was represented by separate counsel on his counterclaim against plaintiff); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (*ten* plaintiffs would have to testify at trail and jury would have to evaluate laws of six different states along with separate state law claims, causing jury confusion); *Sidari v. Orleans Cnty*, 174 F.R.D. 275, 281-82 (W.D.N.Y. 1996) (plaintiff's theory of hostile work environment would hold each defendant responsible to both plaintiffs even if their particular individual conduct did not discriminate against one or the other).

In Section I.B. of their brief, Plaintiffs stretch to justify their unfounded claims of prejudice by relying on a series of inapposite cases that turn on issues of expedience and economy, which are absent from the instant case. In those cases, the court granted bifurcation, at least in part, because the resolution of one part of the case was potentially dispositive of the other part of the case. *See Monsanto Co. v. E.I. DuPont de Nemours & Co.*, No. 4:09-cv-00686, 2009

WL 3012584, at *2 (E.D. Mo. Sept. 16, 2009) (bifurcating patent claims and antitrust counterclaims based, in part, on efficiency concerns where trial on patent claims could moot counterclaims); *Hunter Douglas, Inc. v. Comfortex Corp.*, 44 F. Supp. 2d 145, 154-55 (N.D.N.Y 1999) [1] (bifurcating because resolution of the patent claims would resolve some of the antitrust issues); *SCFC ILC, Inc. v. Visa USA Inc.*, 801 F. Supp. 517, 528 (D. Utah 1992) (bifurcating to "increase trial efficiency" because "[t]here may be no need to hold the second proceeding" in case involving, on the one hand, antitrust liability issues and, on the other hand, antitrust damage issues and other related claims). The paradigmatic example of this is bifurcating the issues of liability and damages. *See, e.g., SCFC ILC, Inc.*, 801 F. Supp. at 528. In stark contrast to these cases, in the instant case liability has already been established on Plaintiffs' affirmative claim, and the trial on Plaintiffs' damages will neither eliminate nor narrow the need for a trial on Hotfile's counterclaim. Accordingly, these cases do not provide support for Plaintiffs' position.

### G. Plaintiffs' Request to Try the Statutory Damages Claim First Undercuts Their Argument of Prejudice And Betrays Their True Purpose.

Plaintiffs not only want bifurcation, they insist that the Court try the statutory damages claim first. Plaintiffs argue that "Hotfile has brought its counterclaim solely against Warner, and not the other Plaintiffs, but the jury could be biased by the counterclaim accusations against Plaintiffs generally" (Mot. at 6). Warner further dismisses Hotfile's counterclaim allegations as "inflammatory" and untrue. If this were truly their concern, Plaintiffs should have no problem trying Hotfile's counterclaim first, because, as Plaintiffs' counsel argues, Warner will demonstrate that its activities were not improper and the other Plaintiffs would avoid the supposed prejudice.

---

[1] Plaintiffs' citation *to Hunter Douglas, Inc.* is misleading as the quoted section is from the court's recitation of the plaintiff's argument, not the court's holding. *See Hunter Douglas, Inc.*, 44 F. Supp. 2d at 154-55.

14

Plaintiffs' argument that Hotfile will abandon its counterclaim if forced to proceed later and separately, since Hotfile cannot withstand the expense of proceeding to a bifurcated trial on a claim seeking such a comparatively small amount of damages (Opp. at 8), proves too much. Plaintiffs are asking the Court to multiply these proceedings so as to make them so procedurally disadvantageous (and prohibitively expensive) that Hotfile cannot proceed with its counterclaim.. This is no reason for bifurcation. The Court has found that the facts supporting Hotfile's counterclaim "should be presented to the jury." It is the Court's role to *eliminate* barriers to trials of meritorious claims – not to create them at the behest of massive corporate plaintiffs with unlimited resources in the hopes that they can avoid trial altogether by attrition.

Thus, should the Court accept Plaintiffs' claims of prejudice and be inclined to bifurcate Defendants' counterclaim from Plaintiffs' statutory damage claim, Hotfile should not be prejudiced by the delay that will result from two separate trials. The counterclaim should be therefore be tried first.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to bifurcate should be denied; if the Court believes bifurcation is appropriate, trial on Hotfile's counterclaim should proceed first, with trial of the damages claims commencing immediately thereafter.

Dated: October 4, 2013  Respectfully submitted,

s/ Roderick M. Thompson
Roderick M. Thompson, Esq. (admitted *pro hac vice*)
Email: rthompson@fbm.com
Andrew Leibnitz, Esq. (admitted *pro hac vice*)
Email: aleibnitz@fbm.com
Anthony P. Schoenberg, Esq. (admitted *pro hac vice*)
Email: tschoenberg@fbm.com
Deepak Gupta, Esq. (admitted *pro hac vice*)
Email: dgupta@fbm.com
Janel Thamkul, Esq. (admitted *pro hac vice*)

15

Email:  jthamkul@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy:  415.954.4480

And

s/ Janet T. Munn
Janet T. Munn, Esq., Fla. Bar No. 501281
Email:  jmunn@rascoklock.com
RASCO KLOCK
283 Catalonia Avenue, Suite 200
Coral Gables, FL  33134
Telephone:  305.476.7101
Telecopy:  305.476.7102

And

s/ Valentin Gurvits
Valentin Gurvits, Esq. (admitted *pro hac vice*)
Email:  vgurvits@bostonlawgroup.com
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Center, MA  02459
Telephone:  617.928.1800
Telecopy:  617.928.1802

*Counsel for Defendants Hotfile Corporation
 and Anton Titov*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 4, 2013, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

| | |
|---|---|
| JENNER & BLOCK LLP<br>Steven B. Fabrizio (*Pro Hac Vice*)<br>sfabrizio@jenner.com<br>Luke C. Platzer (*Pro Hac Vice*)<br>lplatzer@jenner.com<br>David A. Handzo (*Pro Hac Vice*)<br>dhandzo@jenner.com<br>1099 New York Ave., N.W., Suite 900<br>Washington, DC 20001<br>Phone: 202.639.6000<br>Fax: 202.639.6066 | Karen R. Thorland, Esq. (*Pro Hac Vice*)<br>Senior Content Protection Counsel<br>Email: Karen_Thorland@mpaa.org<br>Motion Picture Association of America, Inc.<br>15301 Ventura Boulevard, Building E<br>Sherman Oaks, CA  91403-5885<br>Phone: 818.935.5812 |

GRAY-ROBINSON, P.A.
Karen L. Stetson
karen.stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305.416.6880
Fax: 305.416.6887

           By: s/ Janet T. Munn
              Janet T. Munn