CASE NO. 11-20427-WILLIAMS/TURNOFF

*DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, COLUMBIA PICTURES INDUSTRIES, INC., and WARNER BROS. ENTERTAINMENT INC.*
*vs. HOTFILE CORP., ANTON TITOV, et al.*

# EXHIBIT A

# Plaintiffs' Draft Pretrial Stipulation

# Filed in Support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Bifurcate Counterclaim

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

## JOINT PRETRIAL STIPULATION

Plaintiffs, DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, COLUMBIA PICTURES INDUSTRIES, INC., and WARNER BROS. ENTERTAINMENT INC. (collectively "Plaintiffs"), and Defendants HOTFILE CORPORATION ("Hotfile") and ANTON TITOV (collectively "Defendants") by and through undersigned counsel and pursuant to the Order Specifically Setting Trial Date, DE 522, and Local Rule 16.1(e), hereby file their Joint Pretrial Stipulation:

A. **SHORT CONCISE STATEMENT OF THE CASE BY EACH PARTY IN THE ACTION.**

Plaintiffs statement:

This is an action by the Plaintiffs, Disney Enterprises, Inc. ("Disney"), Twentieth Century Fox Film Corp. ("Fox"), Universal City Studios Productions LLLP ("Universal"), Columbia Pictures Industries, Inc. ("Columbia"), and Warner Brothers Entertainment Inc. ("Warner") against Defendants, Hotfile Corp. and Anton Titov. Plaintiffs allege that Defendants are liable for the infringement of Plaintiffs' copyrights by Hotfile's users on Hotfile's system under the theories of inducement, material contribution and vicarious liability. Defendant Hotfile has asserted a counterclaim against Plaintiff Warner, alleging that Warner sent copyright takedown notices which knowingly and materially misrepresented that the subject files were infringing, and therefore is liable for damages under 17 U.S.C. § 512(f).

On August 28, 2013, the Court issued an order on the parties' motions for summary judgment. *See* Order, DE 524. The Court granted Plaintiffs' motion for summary judgment on Defendants' entitlement to a defense under Section 512(c) of the Digital Millennium Copyright Act, 17 U.S.C. § 512(c) ("DMCA"), Hotfile's liability as a vicarious infringer, and Defendant Anton Titov's personal liability for the actions of Hotfile. *Id.* at 99. The Court denied Defendants' motion for summary judgment on their DMCA defense and Titov's motion for summary judgment as to his personal liability.

The Court found that there were issues of fact with respect to Hotfile's liability under the theories of inducement and material contribution. *Id.* The Court also found material questions of fact requiring a trial on Hotfile's counterclaim against Plaintiff Warner. *Id.* at 98. However, the Court narrowed the scope of the counterclaim by holding that there was no dispute that 24 of the files sued upon by Hotfile were duplicates, 19 were in fact owned by Warner, and 271 were owned by third party Electronic Arts, which authorized Warner's removal of the files that infringed its copyrights. *Id.* at 31-32. Thus, at most 576 of the 890 takedown notices sued upon by Hotfile remain potentially at issue for trial.

Following issuance of the Court's order, the parties agreed to stipulate that, in light of the Court's ruling that Hotfile is vicariously liable for infringement and Titov is personally liable for Hotfile's infringing activities, it would not serve judicial economy to try at this time Plaintiffs' claims as to Hotfile's liability under two additional theories of secondary liability – inducement

to infringe copyright under *Grokster*, and material contribution. Accordingly, the parties filed a stipulation on September 23, 2013 agreeing to hold those two alternative claims in abeyance, rather than trying them in the upcoming trial this December, which the Court approved. *See* Stipulation to Hold Claims in Abeyance, DE 536; Order, DE 542.

Hence, only two issues currently remain for trial: (1) the amount in damages to which Plaintiffs are entitled on their secondary copyright infringement claim against Hotfile, and (2) liability (and damages, if any) under Hotfile's counterclaim against Warner under 17 U.S.C. § 512(f) with respect to the 576 remaining works for which the Court found questions of fact.[1]

With respect to Plaintiffs' secondary copyright infringement claim, Plaintiffs put in evidence on Summary Judgment proving their ownership and registration of 3,808 works that were directly infringed on the Hotfile system (attached hereto as Exhibit A), which Hotfile did not contest or contradict; therefore direct infringement of those works, including Plaintiffs' ownership, is established for purposes of trial. Plaintiffs intend to seek statutory damages with respect to each of those works.

With respect to the works on which they are seeking damages, Plaintiffs intend to demonstrate at trial their entitlement to statutory damages in an amount to be determined by the jury, given, *inter alia*, the massive scope of the infringement (including the large number of infringing acts with respect to each work), the profitability of the infringement to Defendants, the need to deter Defendants and operators of similar services, Defendants' blameworthiness in declining to exercise available control to limit or stop the infringement they facilitated through their service, and the value of the works infringed (which include many of the top-grossing movies and television programs owned by Plaintiffs).

With respect to Hotfile's Counterclaim, Warner intends to demonstrate at trial that Hotfile cannot meet the standard for liability under Section 512(f). Specifically, Warner intends to prove that it did not have actual subjective knowledge of any errors claimed by Hotfile at the time Warner sent the particular notices in question; that, in any event, substantially all of the files removed by those notices were infringing the rights of other copyright owners (and that Hotfile accordingly cannot recover for the removal of those files); and that Hotfile did not suffer actual

---

[1] Plaintiffs are seeking to bifurcate trial on these two issues, and have filed a motion with the Court to this effect. *See* Plaintiffs' Motion to Bifurcate Counterclaim and Memorandum in Support (filed September 25, 2013). That motion remains outstanding.

3

damages (or suffered only de minimis damages) from the notices sued upon. To the extent that Hotfile suffered any damages at all, Warner intends to prove that Hotfile itself contributed to and failed to mitigate those damages because Hotfile knew of errors in some of Warner's notices yet failed to bring them to Warner's attention and because Hotfile failed to adopt a counternotice procedure, contemplated by the DMCA, that would have allowed any mistakes in takedown notices to be identified and corrected promptly.

Defendants' Statement:

[Hotfile to Provide]

**B.  BASIS OF FEDERAL JURISDICTION.**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions).

**C.  THE PLEADINGS RAISING THE ISSUES.**

1. Plaintiffs' Complaint for Copyright Infringement.  DE 1.

2. Second Amended Answer, Affirmative Defenses, and Counterclaim of Defendant Hotfile Corporation to Plaintiffs' Complaint.  DE 161.

3. Answer and Defenses of Warner Bros. Entertainment, Inc. to Hotfile Corp.'s Second Amended Counterclaim.  DE 163.

**D.  UNDISPOSED OF MOTIONS OR OTHER MATTERS REQUIRING ACTION BY THE COURT.**

1. Defendant Hotfile Corp.'s Motion for Certification of Interlocutory Appeal Under 28 U.S.C. § 1292(B) and for Stay of Proceedings Pending Appeal.  DE 531.

2. Plaintiff's Motion to Bifurcate Counterclaim and Memorandum in Support (filed under seal September 25, 2013).

3. Defendant Hotfile Corp.'s Motion to Strike Rebuttal Report of Dr. Waterman, DE 217.

**E.  A CONCISE STATEMENT OF UNCONTESTED FACTS WHICH WILL REQUIRE NO PROOF AT TRIAL, WITH RESERVATIONS, IF ANY.**

i. <u>Plaintiffs' Secondary Infringement Claim Against Defendants.</u>

1. Defendant Hotfile Corp. operates an online "storage locker" website located at www.hotfile.com.  (Order at 3, Dkt. 524).

2. Plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corp., Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Warner Brothers

4

Entertainment Inc., or their affiliates, are among the leading motion picture studios in the world, and are responsible for creating and distributing some of the world's most popular filmed entertainment. (Compl. at 5).

3. Defendant Hotfile Corp. is a Panamanian corporation that operates the Hotfile website at www.hotfile.com. (Compl. at 6).

4. The Hotfile website has operated since February 2009. (Order at 3, Dkt. 524).

5. Hotfile allows registered users to upload electronic files of any kind from their computers or other devices onto Hotfile's servers. *Id*.

6. Hotfile retains a copy of the file on its servers and provides the uploading users with "one or more unique URL links containing the file name and extension," which can be used to access and retrieve the file via web browser from any Internet-enabled device. (*Id*).

7. Once a file is uploaded, the file can be downloaded an unlimited number of times by anyone with an Internet connection. (*Id.* at 4).

8. Hotfile is accessible to the public and anyone can upload or download files for free. (*Id*). However, users who purchase "premium" status obtain preferred privileges in using the website, including the ability to download files faster.

9. Hotfile's sole source of revenue is subscriber fees paid by users in exchange for "premium" status. (*Id.* at 5).

10. Whereas files uploaded by users without premium status are automatically deleted every three months, files uploaded by users with premium status may be stored on Hotfile's servers for a longer period of time. (*Id*).

11. Through its Affiliate Program, Hotfile promotes the use of its system and encourages users to purchase premium status. (*Id.* at 4-5)

12. Through Hotfile's Affiliate Program, individual affiliates upload files onto Hotfile's servers and receive a portion of the subscriber fee generated when those files lead other users to convert to premium status. (*Id.* at 5)

13. During times relevant to this lawsuit, the number of times an affiliate's file was downloaded was a factor in determining the amount Hotfile paid the affiliate. (Def.'s SUF at 11)

14. "In practice, Hotfile's affiliates have created their own websites that catalogue files found on Hotfile, promote their files, or allow the public to search for files." (Order at 4, Dkt. 524)

5

15. "[U]ploading users can themselves broadcast the download links, such as by e-mailing them to people they know or advertising them through various channels." (*Id.* at 4-5)

16. Hotfile is a file distribution network, in addition to a storage site. (*Id.* at 5)

17. "[W]henever Hotfile was contacted by users, the title of the file last accessed by that user was revealed." (*Id.* at 13)

18. Prior to the filing of the Complaint in this action, Hotfile received notices of infringement from copyright owners under the Digital Millennium Copyright Act ("DMCA Notices") corresponding to approximately eight million unique files. (*Id.* at 16)

19. Prior to the filing of the Complaint, "24,790 Hotfile users had accumulated more than three notices; half of those had more than ten notices; half again had 25 notices; 1,217 had 100 notices; and 61 had more than 300 notices." (*Id.* at 19)

20. Hotfile failed to reasonably implement a repeat infringer policy as defined by 17 U.S.C. § 512(i)(1)(A) prior to February 18, 2011. (*Id.* at 43)

21. Hotfile did not tie the termination of users accounts to its receipt of DMCA notices prior to February 18, 2011. (*Id.* at 16, 44)

22. Hotfile did not track which users' files were subject to DMCA notices and did not base its repeat infringer policy on how many notices were associated with certain users prior to February 18, 2011. (*Id.* at 16-17, 44)

23. Prior to the filing of the Complaint in this action, Hotfile terminated only 43 users under its repeat infringer policy. (*Id.* at 16)

24. Of the 43 terminations under Hotfile's repeat infringer policy, "33 were due to a court's temporary restraining order issued in connection with litigation initiated by a pornography producer called 'Liberty Media' . . . . Others were apparently terminated when Hotfile or its affiliated entities received litigation threats from copyright holders." (*Id.* at 18)

25. "[T]he uploads of [users] subject to three or more [DMCA] notices constituted 44 percent of all files on Hotfile (and half of all downloaded files) in February 2011."

26. "Hotfile financially benefitted from [infringement] by attracting some users." (Order at 81, Dkt. 524)

27. Plaintiffs are the owners of the copyright and/or the exclusive reproduction or distribution rights with respect to the 3,808 copyrighted works identified in the exhibit attached hereto as Exhibit A.

6

28. Each work in Exhibit A is registered with the Copyright Office under the registration number provided in Exhibit A.

29. Each work in Exhibit A was uploaded or downloaded by at least one Hotfile user.

30. Plaintiffs did not authorize to Hotfile the right to distribute or reproduce any of the works identified in Exhibit A.

  ii.  Hotfile's Counterclaim

31. Warner, in the regular course, sends takedown notices to online locations where it believes Warner's copyrighted works are being infringed.

32. Warner sent approximately one million takedown notices to Hotfile between early 2009 and early 2012.

33. Hotfile brought suit regarding 890 files whose removal Warner requested by way of a takedown notice.  576 of those 890 files remain in issue for trial.

## F. A CONCISE STATEMENT IN REASONABLE DETAIL OF THE ISSUES OF FACT WHICH REMAIN TO BE LITIGATED AT TRIAL.

  i.  Plaintiffs' Secondary Infringement Claim Against Defendants.

1. The appropriate amount of statutory damages to be awarded to the Plaintiffs as a result of the infringement of the works listed in Exhibit A, including consideration of: (1) "the expenses saved and the profits reaped by the infringers," (2) "the revenues lost by the plaintiff," (3) "the value of the copyright," (4) "the deterrent effect on others besides the defendant," (5) "whether the defendant's conduct was innocent or willful," (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced," and (7) "the potential for discouraging the defendant." *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986) (internal citations and quotation marks omitted).

  ii.  Hotfile's Counterclaim.

1. Whether, with respect to each remaining individual takedown notice subject to Hotfile's counterclaim, Warner had actual subjective knowledge that of a material misrepresentation that the file referred to in the notice was infringing.

2. Whether, with respect to each remaining individual takedown notice subject to Hotfile's counterclaim, the file at issue infringed the rights of a third-party copyright owner.

    3. Whether Hotfile knew that certain notices were issued by Warner in error, but elected not to inform Warner and instead allowed such errors to continue.

    4. Whether, with respect to each remaining individual takedown notice subject to Hotfile's counterclaim, Hotfile suffered any actual damages as a result of the takedown notice.

    5. Whether Hotfile failed to mitigate its damages, or otherwise itself contributed to any damages it suffered, including but not limited to by failing to implement a counter-notice procedure.

### G. A CONCISE STATEMENT OF THE ISSUES OF LAW ON WHICH THERE IS AGREEMENT.

    i. <u>Plaintiffs' Secondary Infringement Claim Against Defendants.</u>

    1. Hotfile has been held liable for secondary copyright infringement, under the theory of vicarious liability, with respect to the works listed in Exhibit A.

    2. A Plaintiff in a copyright infringement action may opt for an award of statutory damages pursuant to 17 U.S.C. § 504(c). 17 U.S.C. § 504(c); 17 U.S.C. § 412.

    3. The jury may award statutory damages of not less than $750 or more than $30,000 with respect to each work infringed, as it considers just. 17 U.S.C. § 504(c).

    4. If the Defendant's infringement was willful, the jury may award statutory damages of not less than $750 or more than $150,000, as it considers just.

    5. Factors the jury can consider in determining a just award of statutory damages include but are not limited to: (1) "the expenses saved and the profits reaped by the infringers," (2) "the revenues lost by the plaintiff," (3) "the value of the copyright," (4) "the deterrent effect on others besides the defendant," (5) "whether the defendant's conduct was innocent or willful," (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced," and (7) "the potential for discouraging the defendant." *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986) (internal citations and quotation marks omitted).

    ii. <u>Hotfile's Counterclaim.</u>

    1. A party is liable for damages under 17 U.S.C. § 512(f) for a material misrepresentation in a takedown notice "that material or activity is infringing" if the misrepresentation is made "knowingly," that is, with actual subjective knowledge at the time the representation was made of the falsity of the representation.

8

2. A plaintiff in a claim under 17 U.S.C. § 512(f) may be awarded actual damages caused by the Defendant's knowing material misrepresentation.

3. A plaintiff in a claim under 17 U.S.C. § 512(f) bears the burden of proof as to both liability and damages.

4. A plaintiff in a claim under 17 U.S.C. § 512(f) may not recover damages in instances where an erroneous takedown notice results in the removal of a file from Defendant's system that infringed the copyright of a third-party copyright owner.

## H. A CONCISE STATEMENT OF THE ISSUES OF LAW WHICH REMAIN FOR DETERMINATION BY THE COURT.

i. Damages to Plaintiffs

The parties do not disagree on any relevant issues of applicable law.

ii. Hotfile's Counterclaim

1. Whether the knowing misrepresentation standard under 17 U.S.C. § 512(f) requires actual, subjective knowledge by the Defendant, which knowledge was possessed before the notice was sent, that a specific sued-upon takedown notice was erroneous.

2. Whether the knowing misrepresentation standard under 17 U.S.C. § 512(f) prohibits the use of automated systems to identify infringing works that are the subject of notices.

## I. EACH PARTY'S NUMBERED LIST OF EXHIBITS.

1. The Plaintiffs' Exhibit List attached hereto as Exhibit B.
2. The Defendants' Exhibit List attached hereto as Exhibit C.

## J. EACH PARTY'S LIST OF DESIGNATED DEPOSITION TESTIMONY.

3. The Plaintiffs' Deposition Designations attached hereto as Exhibit D.
4. The Defendants' Deposition Designations attached hereto as Exhibit E.

## K. EACH PARTY'S LIST OF TRIAL WITNESSES.

5. The Plaintiffs' Witness List attached hereto as Exhibit F.
6. The Defendants' Witness List attached hereto G.

## L. ESTIMATED TRIAL TIME.

1. Plaintiffs' estimate: Plaintiffs estimate that trial on Plaintiffs' claims will require 4 days and that trial on Hotfile's Counterclaim will require 2 days.

2. Defendants' estimate:

9

### M. WHERE ATTORNEY'S FEES MAY BE AWARDED TO THE PREVAILING PARTY, AN ESTIMATE OF EACH PARTY AS TO THE MAXIMUM AMOUNT PROPERLY ALLOWABLE.

1. Plaintiffs' estimate: As the matter remains to be tried and Plaintiffs continue to incur legal expenses, it is not possible to state attorney's fees with certainty at this time. However, Plaintiffs estimate that, at the conclusion of trial, approximately $8.5 Million will be recoverable by Plaintiffs under the Copyright Act.

DATED: October 23, 2013

Respectfully submitted,

s/
Karen L. Stetson, Florida Bar No. 742937
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: 305.416.6880
Facsimile: 305.416.6887
Email: karen.stetson@gray-robinson.com

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
David A. Handzo (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: 202.639.6000
Facsimile: 202.639.6066

MOTION PICTURE ASSOCIATION
 OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: 818.995.6600
Fax: 818.285.4403

*Counsel for Plaintiffs*

s/
Janet T. Munn, Florida Bar No. 501281
RASCO KLOCK
283 Catalonia Avenue
Suite 200
Coral Gables, Fl 33134
Telephone: 305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

FARELLA BRAUN + MARTEL LLP
Roderick Thompson (admitted *pro hac vice*)
Andrew Leibnitz (admitted *pro hac vice*)
Anthony P. Schoenberg (admitted *pro hac vice*)
Deepak Gupta (admitted *pro hac vice*)
Janel Thamkul (admitted *pro hac vice*)
235 Montgomery St.
San Francisco, CA 94104
Telephone: 415.954.4400
Telecopy: 415.954.448

Valentin Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617.928.1804

*Counsel for Defendants*