UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.

_____/


**PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION TO BIFURCATE COUNTERCLAIM**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT............................................................................................................................2

    I.    HOTFILE FAILS MEANINGFULLY TO ADDRESS PLAINTIFFS' PREJUDICE ARGUMENT.......................................................................................2

    II.    THE EXISTENCE OF SHARED BACKGROUND FACTS DOES NOT JUSTIFY TRYING THE DAMAGES CLAIM AND COUNTERCLAIM TOGETHER. .......................................................................................................5

    III.    HOTFILE OVERSTATES ANY POTENTIAL FACTUAL OVERLAP BETWEEN THE DAMAGES CLAIM AND THE COUNTERCLAIM.......................7

    IV.    PLAINTIFFS FILED THIS MOTION PROMPTLY AFTER SUMMARY JUDGMENT. ..............................................................................................................9

CONCLUSION.......................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Andazola v. Logan's Roadhouse, Inc.*, No. CV-10-S-316-NW, 2013 U.S. Dist. LEXIS 60541 (N.D. Ala. Apr. 29, 2013) ................................................................................4

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) ......................................................4, 6

*Donato v. Fitzgibbons*, 172 F.R.D. 75 (S.D.N.Y. 1997) ............................................................3, 4, 6

*Hunter Douglas, Inc. v. Comfortex Corp.*, 44 F.Supp.2d 145 (N.D.N.Y. 1999) ..............................5

*Ismail v. Cohen*, 706 F. Supp. 243 (S.D.N.Y. 1989), *rev'd in part on other grounds*, 899 F.2d 183 (2d Cir. 1990) ................................................................................................5, 6

*Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113 (E.D. La. 1992) ....................................1

*Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1333 (M.D. Fla. 2006) .....................6

*Monaghan v. SZS 33 Associates, L.P.*, 827 F. Supp. 233 (S.D.N.Y. 1993) .....................................3

*Monsanto Co. v. E.I. du Pont De Nemours & Co.*, No. 09CV00686, 2009 WL 3012584 (E.D. Mo. Sept. 16, 2009) ..................................................................................................4, 6

*In re Nitro Leisure Products, LLC*, No. 02-14008-CIV, 2003 U.S. Dist. LEXIS 27555 (S.D. Fla. Dec. 16, 2003) ....................................................................................................1

*SCFC ILC, Inc. v. Visa U.S.A. Inc.*, 801 F. Supp. 517 (D. Utah 1992) ..........................................5

*Sidari v. Orleans County*, 174 F.R.D. 275 (W.D.N.Y. 1996) ..........................................................5

*United States ex rel. Miller v. Bill Harbert International Construction, Inc.*, No. 95-1231, 2007 WL 851823 (D.D.C. Mar. 14, 2007) ..........................................................3, 5, 6

*Wynn v. National Broadcasting Co.*, 234 F. Supp. 2d 1067 (C.D. Cal. 2002) ................................5

**STATUTES**

17 U.S.C. § 512(f) ............................................................................................................................8

## INTRODUCTION

Hotfile's Counterclaim has minimal financial value. If tried together with Plaintiffs' damages claims, its role would only be to confuse the jury. Hotfile objects that it might be inconvenienced if Plaintiffs—legitimately concerned that Hotfile's accusations against Warner will confuse the jury and thereby prejudice all five Plaintiffs in the damage phase of the trial—are allowed to try their damages case separately. But Hotfile's opposition is based on the false premise that any inconvenience Hotfile might suffer from bifurcation must be treated as equivalent to the prejudice Plaintiffs will suffer if bifurcation is not ordered. Protecting a party from prejudice is the most important consideration in deciding motions to bifurcate. *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 114 (E.D. La. 1992).[1] For reasons explained in Plaintiffs' opening memorandum, trying the damages claim and Counterclaim together is likely to prejudice Plaintiffs because Hotfile's accusations of fraud against Warner have nothing to do with the proper amount of statutory damages to which Plaintiffs are entitled, and the simultaneous presentation of those distinct issues risks confusing the jury.

Suggesting that this is not actual "prejudice" and that, even if it is, it can be cured by a simple instruction, Hotfile claims that some evidence relevant to Plaintiffs' damages claim and Hotfile's counterclaim overlaps. But Hotfile overstates the role that overlapping factual issues play in the bifurcation inquiry. Courts often grant motions to bifurcate counterclaims where the factual overlap is much more substantial than exists here. Some nucleus of common facts is inevitable when two parties have brought claims against one another, but the potential for overlapping factual presentations is only one of many considerations under Rule 42(b). In this

---

[1] Hotfile cites *In re Nitro Leisure Prods., LLC*, No. 02-14008-CIV, 2003 U.S. Dist. LEXIS 27555, at *4-5 (S.D. Fla. Dec. 16, 2003), apparently to suggest that the most important consideration is the avoidance of multiple trials and delay in resolving the case. *See* Hotfile's Memorandum of Law in Opposition to Plaintiffs' Motion to Bifurcate, DE 551 ("Opp.") at 2-3. As Hotfile recognizes, however, *Nitro Leisure Products* states that "[t]he main determination to be made . . . is which choice is most likely to result in a *just* final disposition of the litigation." 2003 U.S. Dist. LEXIS 27555, at *4 (citing *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986)) (emphasis added). Thus, the Court must determine not which course of action will result in the fastest resolution, but which course will result in the most just outcome given the potential complexities of trying Plaintiffs' damages claim, involving potentially multi-millions of dollars, alongside Hotfile's counterclaim against one of the Plaintiffs, based on totally different allegations, and involving only minimal damages.

case, the substantial prejudice likely to result absent bifurcation far outweighs the convenience to Hotfile if the cases are tried simultaneously.

In addition to overstating the importance of the "overlap" inquiry, Hotfile exaggerates the extent of factual overlap that actually exists. Hotfile lumps distinct factual questions into broad concepts (such as "DMCA non-compliance" or "Hotfile's profits") even though they will involve no common proof at trial. Hotfile reformatted Plaintiffs' pretrial exhibit lists, which contained separate exhibits for each claim, into a single document to create a false impression of overlapping evidence. And Hotfile also points to the fact that Anton Titov and two of Plaintiffs' experts (Dr. Foster and Scott Zebrak) might testify at both trials, while ignoring that their testimony would address discrete topics at each. Hotfile's convenience argument boils down to a complaint that Anton Titov, who himself used to maintain a residence in Miami Beach while running Hotfile out of Bulgaria, might need to fly to Florida a second time.

Finally, Hotfile tries to argue that Plaintiffs' motion comes too late. But Plaintiffs filed their motion to bifurcate on the date ordered by the Court and agreed to by Defendants. Moreover, that date was less than one month after the Court issued its rulings on the parties' outstanding motions for summary judgment. Moving to bifurcate the claim earlier would have required the Court to issue an advisory opinion on whether the claims should go to trial together or separately when it was not yet clear whether they would be going to trial at all.

## ARGUMENT

### I. HOTFILE FAILS MEANINGFULLY TO ADDRESS PLAINTIFFS' PREJUDICE ARGUMENT.

Hotfile fails meaningfully to respond to Plaintiffs' central argument – that all Plaintiffs will be prejudiced in proving their damages claims if the damages claim and Counterclaim are tried together. *See* Pls. Mot. and Mem. of Law in Support of Motion to Bifurcate, DE550 ("Pls. Mem.") at 3-7. The Counterclaim accusation that Warner committed fraud has nothing to do with the appropriate damages amount, risks prejudicing the jury against Warner, and risks confusing the jury with regards to the issues to be tried on behalf of all Plaintiffs. *Id*. at 3-5.

Hotfile responds in the first instance that evidence of the non-Warner Plaintiffs' practices will not be relevant or admissible for Warner to defend against its Counterclaim. *See* Opp. at 9. Hotfile appears to misunderstand Plaintiffs' argument. Warner's defense may involve proving that Warner's practices are consistent with industry norms. The jury, if it gives credence to Hotfile's fraud accusations, could seek to punish the other Plaintiffs (by way of a reduced

2

statutory damages award) on the assumption that they must engage in similar conduct. Indeed, even if Warner does *not* present an industry-norms defense at trial, the jury may make assumptions about the actions of the other Plaintiffs by virtue of their being part of the same trial – or, conversely, to make assumptions adverse to Warner from the fact that Hotfile chose to sue Warner but *not* the other Plaintiffs before them. Under either scenario of likely jury confusion, Plaintiffs would be prejudiced. *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-1231, 2007 WL 851823, at *3 (D.D.C. Mar. 14, 2007) (granting the government's motion to sever counterclaims against the relator, because "[t]o force the government to have to put on a case in light of such claims against its co-plaintiff could and likely would have a prejudicial effect. The Government may be forced to characterize their co-plaintiff in a negative light . . . or fear having its case bask in the tint of the charges against the Relator.").

Hotfile cites a single inapposite case, *Monaghan v. SZS 33 Assocs., L.P.*, 827 F. Supp. 233, 245-46 (S.D.N.Y. 1993), in an attempt to minimize the role that prejudice plays in the bifurcation inquiry. There, defendants moved for bifurcation of the liability and damages issues of the trial in a personal injury claim, arguing that the jury would be prejudiced in the damages phase by hearing about the brutal nature of the attack that formed the basis for liability. *Id.* The court denied the motion for two reasons: first, the likely prejudice faced by the defendants was not "undue," but rather consistent with what any defendant would expect to face in a personal injury action concerning a brutal attack; and second, the liability and damages claims were "inextricably intertwined." *Id.* at 246. Neither rationale applies here. Plaintiffs' damages claim and Hotfile's Counterclaim relate to two separate alleged injuries, depend on separate legal standards, and present numerous factual issues not relevant to each other. Thus, the fact that *Monaghan* involved bodily injury (which Hotfile implies is more prejudicial than the accusations of fraud Hotfile has leveled) is beside the point.

Hotfile additionally asserts that accusations of fraud against Warner will not prejudice the other Plaintiffs because all Plaintiffs have the same counsel. Hotfile makes no meaningful effort to explain that argument. The one case Hotfile cites—*Donato v. Fitzgibbons*—fails to lend any support. In *Donato*, the court noted that spoliation sanctions would have some "spillover effect" on a co-defendant but was not concerned because the co-defendant was represented by the same counsel and "must therefore live with the consequences of the Court's ruling with regard to the codefendant . . . ." 172 F.R.D. 75, 85 n.10 (S.D.N.Y. 1997). Hotfile omits the remainder of the

3

footnote, which explains that the common counsel's actions were part of the reason for the adverse ruling on spoliation in the first place. *Id.* Moreover, the codefendant did not actually request relief from the spoliation ruling. *Id.* These considerations are absent here.

Contrary to Hotfile's argument, the potential for prejudice against the Plaintiffs here is *greater* because they share the same counsel. Trying the damages claim and Counterclaim together could put counsel in the uncomfortable position of representing parties whose strategic interests during the damages phase of the trial may diverge if both causes are tried simultaneously. Hotfile contends that the Plaintiffs should accept this prejudice because they chose to sue Hotfile together. But that argument proves too much – co-plaintiffs almost always choose to be on the same side in litigation. Yet courts routinely grant motions to bifurcate counterclaims brought only against one of multiple plaintiffs. *See* Pls. Mem. at 4-5.[2]

Instead of engaging meaningfully with the case law on prejudice in the context of bifurcation, Hotfile simply dismisses most of the authority on the irrelevant ground that some of the cases also analyzed convenience or economy. *See* Defs.' Br. at 12-14. Hotfile ignores that the Court need only find one of the Rule 42(b) factors—prejudice being chief among them—to grant a motion to bifurcate. *See* Pls. Mem. at 2. Moreover, Hotfile fails to acknowledge that the potential for prejudice was a central—and in most cases *the* central—reason that the court granted the motion to bifurcate in each of the cases Plaintiffs cite. In fact, in several of the cases cited, concerns about such prejudice actually *overrode* conflicting concerns about convenience and economy. For instance, the court in *Donato* found that concerns about prejudice justified granting a motion to bifurcate and overcame competing concerns about efficiency. 172 F.R.D. at 85. Likewise, the Ninth Circuit in *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296-97 (9th Cir. 2000), held that a district court did not abuse its discretion in granting a motion to bifurcate where the court found that the potential for prejudice to the defendant outweighed concerns about duplicative discovery and judicial economy; *see also Monsanto Co. v. E.I. du Pont De Nemours & Co.*, No. 09CV00686, 2009 WL 3012584, at *2 (E.D. Mo. Sept. 16, 2009) (holding that trying the plaintiffs' patent claims together with the defendants' antitrust claims "presents

---

[2] Hotfile's argument that a limiting instruction to the jury will be sufficient to prevent prejudice to the Plaintiffs, relying on *Andazola v. Logan's Roadhouse, Inc.*, No. CV-10-S-316-NW, 2013 U.S. Dist. LEXIS 60541, at *12 (N.D. Ala. Apr. 29, 2013) also proves too much. Courts would never bifurcate counterclaims or claims involving misconduct if a precautionary jury instruction were always an adequate alternate remedy.

4

too many obstacles to fair and orderly disposition of complex litigation," and that "Defendants' allegations of monopolization could bias the jury when it evaluates Plaintiffs' patent claims."); *Miller*, 2007 WL 851823, at *3 (concluding that the potential for prejudice against the government's qui tam claims resulting from a counterclaim against the relator was an independent ground for granting the motion to sever the counterclaim)[3]; *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1089 (C.D. Cal. 2002) (after determining that severance would serve judicial economy and convenience, holding that "[s]everance is also appropriate here for the *more compelling reason* of preventing unfair prejudice . . ." (emphasis added)); *Hunter Douglas, Inc. v. Comfortex Corp.*, 44 F. Supp. 2d 145, 154 (N.D.N.Y. 1999) (identifying prejudice as the most important consideration and holding that "presentation of [defendant's] counterclaims at the same time [plaintiff] is trying to present its infringement action may unfairly sway the jury against [plaintiff] who will be an accused monopolizer."); *Sidari v. Orleans Cnty.*, 174 F.R.D. 275, 282 (W.D.N.Y. 1996) (denying a motion to consolidate because, "[p]erhaps most importantly, consolidation of the two cases would likely be overly prejudicial to the defendants."); *SCFC ILC, Inc. v. Visa U.S.A., Inc.*, 801 F. Supp. 517, 528-29 (D. Utah 1992) (finding that bifurcation was "essential" for ensuring "a fair, unprejudiced decision on the merits of the antitrust dispute without the complications and confusion which could arise from the other claims and counterclaims"); *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989) (holding that the risk of prejudice justified granting the motion to bifurcate, and then citing considerations of convenience and economy only to strengthen its conclusion), *rev'd in part on other grounds* 899 F.2d 183 (2d Cir. 1990).[4]

Hotfile itself argues that, under its view of the case, "the truth will be prejudicial" and "inconvenient" for the non-Warner Plaintiffs. Opp. at 8-9. But that is precisely the prejudice against which bifurcation should guard in this case.

---

[3] Hotfile's implication that "the extreme complexity of the suit . . . and the preference toward resolving *qui tam* defendant liability before reaching *qui tam* defendant counterclaims" were the real grounds for the *Miller* court's decision, *see* Defs.' Br. at 12-13, are belied by the text and structure of the court's opinion. The court considered three factors independently and found that each, including the potential for prejudice to the government, supported granting the motion to bifurcate. 2007 WL 851823, at *2-3.

[4] As discussed in Part II *infra*, the convenience and economy considerations in *Ismail* actually support the Plaintiffs argument, not Hotfile's. The *Ismail* court found that bifurcation was particularly appropriate where trying the claims together would require the jury to consider different sets of facts against very different legal standards. *Id.*

## II. THE EXISTENCE OF SHARED BACKGROUND FACTS DOES NOT JUSTIFY TRYING THE DAMAGES CLAIM AND COUNTERCLAIM TOGETHER.

Misconstruing the nature of the analysis that the Court must conduct under Rule 42(b) when considering a motion for bifurcation, Hotfile argues that the existence of shared background facts, such as how Hotfile works and how it generates profits, should defeat bifurcation. *See* Opp. at 4, 6-8. Rule 42(b) does not mention factual overlap, however, and it is at most only one of several considerations the Court can take into account in evaluating convenience and economy under Rule 42(b). *See Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1333, 1334 n.2 (M.D. Fla. 2006) (quoting *Kimberly-Clark Corp. v. James River Corp. of Va.*, 131 F.R.D. 607, 608-09 (N.D. Ga. 1989)); *Coleman*, 232 F.3d at 1296-97 (holding that the district court did not abuse its discretion in granting a motion to bifurcate where the court found that the potential for prejudice to the defendant if the claims were tried together outweighed concerns about duplicative discovery and judicial economy); *Donato*, 172 F.R.D. at 85-86 (concerns about potential prejudice outweighed the fact that some testimony would be repeated); *Monsanto Co*, 2009 WL 3012584, at *2 (granting motion to sever counterclaim where the complexity of the claims outweighed the overlap in facts). Here, any small overlap of basic, "setting the scene" facts does not begin to outweigh the prejudice likely from trying the claims together.

Courts have repeatedly granted motions to bifurcate even where claims share considerable background facts. For instance, in *Miller*, 2007 WL 851823, at *3, the court granted the government's motion to sever counterclaims against the relator from the *qui tam* claims, even though both sets of claims involved the relator's business dealings with the defendant. Likewise, in *Ismail* 706 F. Supp. at, 251-52 (S.D.N.Y. 1989), the court granted the defendant municipality's motion to sever the plaintiff's § 1983 *Monell* claim from the plaintiff's § 1981 and state law claims, even though the claims arose from the same incident, because proving the § 1983 claim would require the presentation of considerable evidence that was irrelevant to the other causes of action, and because the standard of liability under § 1983 is substantially different and far more complicated than the other causes of action. Similarly, the resolution of the damage phase of the Plaintiffs' trial will pivot on facts and legal issues, including standards of liability, that are entirely different from and unrelated to Hotfile's

6

counterclaim.[5]  The case law makes clear that the potential existence of some shared background facts does not require that claims be tried together where substantial grounds – such as prejudice to the Plaintiffs – justify bifurcation.

### III. HOTFILE OVERSTATES ANY POTENTIAL FACTUAL OVERLAP BETWEEN THE DAMAGES CLAIM AND THE COUNTERCLAIM.

Hotfile exaggerates the overlap between the evidence relevant to a trial on Plaintiffs' claim for statutory damages and the trial on Hotfile's counterclaim against Warner.

For instance, Hotfile takes the fact that Hotfile violated the DMCA by lacking an appropriate repeat infringer policy, and the fact that one of Warner's defenses to the Counterclaim will be that Hotfile failed to mitigate its damages by failing to adopt a DMCA counternotice procedure, and lumps them together under the common rubric of "DMCA non-compliance."  *See* Opp. at 5.  But the issues have nothing to do with one another beyond the fact that the two distinct legal requirements Hotfile violated were both codified within the same section of the U.S. Code.  The first involves how Hotfile dealt with repeat infringers (which is not in dispute at trial, because it was already resolved at summary judgment), the second with Hotfile's failure to deploy a mechanism for notifying copyright owners of mistaken notifications (which will be in issue at trial on the Counterclaim).  Since there is no overlap between these issues, there are no benefits to convenience or economy from trying them together.

Hotfile uses the same flawed argument with respect to "Hotfile's profits," arguing that since Hotfile's profits are relevant both to statutory damages and to Hotfile's alleged damages from Warner's mistaken notices, there will be common issues of fact to be tried.  *Id.* at 6.  But, again, the alleged overlap goes no further than nomenclature.  The first issue may ask the jury to consider the extent to which Hotfile's profitability arose from infringing conduct; the second will require the jury to determine whether Warner's actions caused Hotfile to lose revenue from *non-*infringing conduct (since Hotfile obviously may not recover damages if Warner's mistaken notices caused it to lose revenue from infringement).  Any profits gained by Hotfile that are relevant to the Plaintiffs' damages claim are *by definition* irrelevant to its damages from Warner's notices on the Counterclaim, and vice versa.

---

[5] Hotfile points to the fact that Plaintiffs have proposed substantial stipulations regarding some factual issues in this case.  *See* Opp. at 4.  But the fact that it should be possible for the parties to stipulate to many of the background facts counsels in favor of bifurcation, because it avoids the need unnecessarily to spend time on those issues at trial.

7

Next, Hotfile argues that both claims present the issue of "the feasibility to accurately identifying and removing infringing material from Hotfile's system . . . ." *Id*. But that question should not meaningfully overlap either. First, the Court has already determined that Hotfile had control over the infringing activity on its system as a matter of law, a question Hotfile will not be allowed to relitigate at trial. *See* August 28, 2013 Order, DE 534, at 83-84. Second, Hotfile's argument – that "if Warner, the copyright holder, could not properly identify infringing material, it cannot justly fault Hotfile for not being able to do so," Opp. at 7, is not an argument under the 512(f) standard governing the Counterclaim. Hotfile's Counterclaim requires it to prove that Warner took down non-Warner content *knowingly*. 17 U.S.C. § 512(f). The argument that Warner "*could not* properly identify infringing" content on Hotfile, Opp. at 7 (emphasis added), resulting in inadvertent mistakes in some instances, is an argument *against* 512(f) liability, not in favor. Third, even if the feasibility of identifying content on Hotfile were in issue, it pertains to different facts and parties in each phase. The damages claim would present Hotfile's ability to identify content *on its own system*. The Counterclaim would present the feasibility of *an outside party* with no access to the Hotfile system trying to identify infringing content on Hotfile without the benefit of Hotfile's own insight into to its database and unimpeded access to its files. These issues again have little to do with one another beyond nomenclature.

Hotfile engages in the same tactics regarding the expected witness testimony, pointing out that Plaintiffs designated Anton Titov and two experts (Dr. Ian Foster and Scott Zebrak) on both the Counterclaim and the principal damages case. *Id.* at 3-4. But even a cursory glance at Plaintiffs' experts' respective summary judgment declarations, and the separate deposition designations that Plaintiffs disclosed with respect to Titov's testimony relevant to the principal claim and the Counterclaim, make readily apparent that each witness will be testifying about completely different topics during each phase. Compare DE 325-17 (Declaration of Ian Foster, Ph.D., in Support of Plaintiffs' Motion for Summary Judgment) with DE 301-4 (Declaration of Ian Foster, Ph.D., in Support of Warner's Motion for Summary Judgment); DE 325-1 (Declaration of Scott Zebrak in Support of Plaintiffs' Motion for Summary Judgment) with DE 301-1 (Declaration of Scott Zebrak in Support of Warner's Motion for Summary Judgment); Exhibit A (Plaintiffs' deposition designations for infringement damages claim) and Exhibit B (Plaintiffs' deposition designations for Counterclaim, listing non-overlapping Titov testimony with damages designations in Exhibit A). The mere fact that Anton Titov might have to travel to

8

Miami for trial twice, when he previously maintained a residence in Miami Beach while operating Hotfile, *see* Opp. at 3, is not a basis to subject Plaintiffs to the prejudice of a combined trial.

Hotfile also mischaracterizes Plaintiffs' pretrial disclosures. Hotfile claims that "Plaintiffs produced a single list of exhibits which did not differentiate between documents to be used in relation to Plaintiffs' claim or Hotfile's counterclaim." Opp. at 2. Hotfile provided the Court with a document purporting to represent Plaintiffs' pretrial disclosures. *See* Opp. at 2, 4 & Ex. B. Even on its own terms, whether Plaintiffs' disclosures listed all exhibits on a single list or divided them into two lists has no bearing on how the exhibits will be divided when presented at trial.

In fact, however, Plaintiffs *did* divide their proposed exhibits into two lists, and Hotfile then combined Plaintiffs' exhibit lists into a single document. Plaintiffs produced to Hotfile on October 2, 2013 their exhibit list in Excel format. The Excel workbook contained two worksheets, one containing Plaintiffs' damages exhibits and one containing Warner's Counterclaim exhibits. The division was obvious, given that both lists represented the summary judgment exhibits from Plaintiffs' summary judgment motion and Warner's Counterclaim summary judgment motion, respectively. The fact that Plaintiffs' witness list and deposition designations were similarly divided only made this division more obvious. However, in an effort to strengthen its argument, Hotfile combined each of the two worksheets of Plaintiffs' exhibit list into a single list, which it presented to the Court as Exhibit B to its opposition brief and represented to be Plaintiffs' exhibit list. Needless to say, the separate lists show barely any overlap at all, belying Hotfile's argument.[6]

Finally, Hotfile argues that both claims will involve an explanation of how its "Special Rightsholder Account" tool functions and evidence regarding JDownloader, a third-party software program that Hotfile made available for download. These are, at most, minor facts not likely to be in meaningful dispute and which can likely be narrowed by stipulation and presented briefly at trial. Requiring two juries to quickly become familiar with these concepts (or stipulating to them) will be simple and far less complicated than asking a single jury to simultaneously consider Hotfile's and Warner's culpability under two different legal standards.

---

[6] In the as-disclosed version of the separate lists, Plaintiffs' Counterclaim Exhibits begin as a separate worksheet at Exhibit 140 in Hotfile's reformatted list.

## IV. PLAINTIFFS FILED THIS MOTION PROMPTLY AFTER SUMMARY JUDGMENT.

Finally, there is no merit to Hotfile's argument that Plaintiffs unreasonably delayed in bringing the motion to bifurcate by waiting until approximately two months before trial. *See* Opp. at 5. Plaintiffs brought this motion on the date ordered by the Court and agreed to by the parties, and mere weeks after the Court ruled on the outstanding motions for summary judgment. *See* Order Setting Pre-Trial Schedule, DE 529. Bringing a motion to bifurcate before the motions for summary judgment were resolved would have been illogical and a waste of time, and would have required the Court to issue an improper advisory opinion. The arguments relevant to bifurcation might have differed had the Court ruled differently on summary judgment, and the Court's decision as to whether it should exercise its discretion to bifurcate the Counterclaim could depend in part on which claims were still in the case to be tried. Bringing the motion to bifurcate before the Court decided which claims were appropriate for trial would have required the parties and the Court to speculate on a variety of different outcomes on summary judgment, and appropriateness of bifurcation under each. Moreover, since Hotfile could not have begun preparing for trial until the Court issued its Summary Judgment decision and this motion to bifurcate followed in short order thereafter on a date mutually agreed to by the parties, Hotfile can hardly claim prejudice to its trial preparation. Plaintiffs' motion is timely and Hotfile cites nothing to the contrary.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to bifurcate the Counterclaim should be granted.

Dated: October 9, 2013          Respectfully submitted,

         By: /s/ Karen L. Stetson
         Karen L. Stetson
         GRAY-ROBINSON, P.A.
         1221 Brickell Avenue
         16th Floor
         Miami, Fl 33131
         Telephone: (305) 461-6880
         Facsimile: (305) 461-6887

| MOTION PICTURE ASSOCIATION OF AMERICA, INC. | JENNER & BLOCK LLP<br>David A. Handzo (*Pro Hac Vice*)<br>Steven B. Fabrizio (*Pro Hac Vice*) |
|---|---|
| Karen R. Thorland (*Pro Hac Vice*)<br>15301 Ventura Blvd.<br>Building E<br>Sherman Oaks, CA 91403<br>Phone: (818) 995-6600<br>Fax: (818) 285-4403 | Luke C. Platzer (*Pro Hac Vice*)<br>1099 New York Ave., N.W.<br>Suite 900<br>Washington, DC 20001<br>Telephone: (202) 639-6000<br>Facsimile: (202) 639-6066 |

*Attorneys for Plaintiffs*

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 9th day of October, 2013, I served the following document on all counsel of record on the attached service list by means of the Court's ECF system:

**Plaintiffs' Reply to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Bifurcate Counterclaim.**

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/   Karen L. Stetson
Karen L. Stetson

## SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF**

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*