CASE NO. 11-20427-WILLIAMS/TURNOFF

*DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, COLUMBIA PICTURES INDUSTRIES, INC., and WARNER BROS. ENTERTAINMENT INC.*
*vs. HOTFILE CORP., ANTON TITOV, et al.*

# EXHIBIT A

**Order on *Masck v. Sports Illustrated, et al.***
**United States District Court**
**Eastern District of Michigan, Southern Division**
**Caase No. 13-10226 – HON. GERSHWIN A. DRAIN**

**Filed in Support of Defendant Hotfile's Amended Notice of Clarification or Correction of Statements Made During Oral Argument on Motion for Certification of Interlocutory Appeal**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MASCK,

    Plaintiff,

vs.

SPORTS ILLUSTRATED;
NISSAN NORTH AMERICA;
GETTY IMAGES, INC.;
CHAMPIONS PRESS, L.L.C.;
DESMOND HOWARD;
PHOTO FILE, INC.;
FATHEAD, L.L.C.;
WAL-MART STORES, INC;
WAL-MART.COM USA, L.L.C and
AMAZON.COM, INC.,

    Defendants.

_____/

Case No. 13-10226
HON. GERSHWIN A. DRAIN

<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS [#32], GRANTING IN PART AND DENYING IN PART DEFENDANT
HOWARD'S MOTION TO DISMISS [#46], GRANTING IN PART AND DENYING IN
PART DEFENDANT AMAZON'S MOTION TO DISMISS [#49]</u>

**I.**     **INTRODUCTION**

    Presently before the court is Defendants' Motion to Dismiss Non-Copyright Claims, Defendant Howard's Motion to Dismiss, and Defendant Amazon's Motion to Dismiss. On Wednesday June 5, 2013 the Court heard extensive argument from Plaintiff and several Defendants. For the reasons that follow Defendants' Motion is GRANTED IN PART and DENIED IN PART, Defendant Howard's Motion is GRANTED IN PART and DENIED IN

-1-

PART, and Defendant Amazon's Motion is GRANTED IN PART and DENIED IN PART.

## II. PROCEDURAL AND FACTUAL HISTORY

This suit is a copyright infringement action. The basis of the suit is an iconic photo of Defendant Desmond Howard taken by Plaintiff on November 23, 1991 at Michigan Stadium in Ann Arbor, Michigan. The photo was taken of Howard after running back a punt for a touchdown during a football game where the University of Michigan Wolverines soundly defeated archrival Ohio State University Buckeyes. Before crossing the end zone, Howard made what is now known as the "Heisman pose" by lifting his left leg up and stretching out his left arm. Plaintiff alleged that he was the only photographer who got a "sharp" shot of this now iconic pose.

Plaintiff made a copy of the photo and sent it to Sports Illustrated for publication in a planned Heisman preview issue. Plaintiff alleged he wrote "Photo © 1991 by Brian Masck" on the cardboard mount of the slide that was sent to Sports Illustrated. The photo was included in an article about Howard published in an issue of Sports Illustrated on December 9, 1991. The photo correctly credited "Brian Masck" as the photographer. Sports Illustrated paid Plaintiff for the use of the photograph and did not return the negative.

Around the time of the first publication of the photo Plaintiff claimed he sought the counsel of the law firm Warner Norcross and Judd about correctly copyrighting the photograph and was told that publication with the proper attribution was sufficient protection. Based on this advice, Plaintiff did not register the photo with the Copyright Office until August 31, 2011. On May 2, 2005, Getty Images uploaded the Heisman photo

-2-

to its digital asset management system without crediting Plaintiff. Plaintiff did not know how Getty got the image. Getty purchased a collection of images from Allsport USA, which included some of the photos that Plaintiff took. Plaintiff claimed that this collection should not include a copy of the Heisman photo since it was never sold to Allsport USA. Getty returned several originals to Plaintiff and the Heisman photo was not included. From that time until September 2, 2011, Getty sold licenses of the photo to customers.

Plaintiff observed several other instances of infringing uses of his photograph. In June 2010, Plaintiff observed a reproduction of his photo for sale with Photo File's logo on it. Sports Illustrated published a full-page Nissan advertisement using the photo on October 18, 2010, August 21, 2011, and January 9, 2012. Champions Press published a reproduction of the photo in a book about Howard titled *I Wore 21: The Legend of Desmond Howard*. Howard's website also contained a reproduction of the photo at one time. Fathead produced a life-size adhesive of the photo that was offered for sale. Several reproductions of the photograph were offered for sale on Amazon.com. On September 21, 2012, Plaintiff requested Amazon to stop selling unauthorized reproductions of the photo on their website, but Amazon continued to sell copies of the photo. Walmart also offers copies of the photo for sale and continues to offer them in stores and online.

Plaintiff discussed the sale of the photograph with Howard's agent on August 15, 2011 and met with Howard personally on August 18, 2011. They were unable to reach an agreement. The two parties spoke again in 2012 about a joint enterprise selling Desmond Howard merchandise. They once again failed to reach an agreement. In August 2012, while negotiations were ongoing, Plaintiff sent a sample of the photo that was slightly altered so that Plaintiff could track unauthorized use of the photo. Plaintiff claimed this was

-3-

the photo that was uploaded to Howard's website.

Plaintiff brought this suit in attempt to receive compensation for the alleged unauthorized use of the photo by the Defendants over the years. Plaintiff's lengthy Complaint raised twenty different claims against the Defendants. The claims include copyright infringement under the Copyright Act, 17 U.S.C. § 502, *et seq.*, against Sports Illustrated, Nissan, Getty, Champions Press, Howard, Photo File, Fathead, Amazon and Walmart (Counts I-IX); unfair competition under the Lanham Act, 11 U.S.C. § 1125, against Sports Illustrated, Nissan, Getty, Champions Press, Howard, Photo File, and Fathead (Counts X-XVI); unfair competition under the Michigan Consumer Protection Act, MICH. COMP. LAWS § 445.911, against Sports Illustrated, Nissan, Getty, Champions Press, Desmond Howard, Photo File, and Fathead (Count XVII); tortious interference against Champions Press (Count XVIII); unjust enrichment against all Defendants (Count XIX); and injunctive relief against all Defendants (Count XX).

Defendants Getty, Sports Illustrated, Nissan, Photo File, and Fathead filed a Motion to Dismiss the non-Copyright claims on March 28, 2013. Champions Press and Walmart filed a Notice of Joinder of this Motion on March 29, 2013. Defendant Howard filed a Concurrence in this brief on April 15, 2013 and requested relief on separate grounds of the Lanham Act violation (Count XIV). Defendant Amazon filed a separate Motion to Dismiss on April 15, 2013 that requested dismissal of all claims against it.

### III. LAW AND ANALYSIS

***A. Standard of Review***

-4-

Federal Rule of Civil Procedure12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

-5-

alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.*

### *B. Lanham Act Claims*

The Lanham Act makes "actionable the deceptive and misleading use of marks," and "protect[s] persons engaged in . . . commerce against unfair competition." 15 U.S.C. § 1127. This Act applies to a person who "in connection with any goods . . . any false designation of origin . . . which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods." 15 U.S.C. § 1125. The Supreme Court held that "origin" of "goods" refers only to "tangible goods" and not "communicative products." *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). "[T]aking tangible goods and reselling them as your own constitutes a Lanham Act violation; taking the intellectual property contained in those goods and incorporating it into your own goods does not." *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 511 (6th Cir. 2008). "The federal Copyright Act does not preempt the federal Lanham Act, or vice-versa. In fact, it is common practice for copyright owners to sue for both infringement under the 1976 Copyright Act and unfair competition under the Lanham Act." *Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 2:08-CV-00752, 2013 WL 1165028 (S.D. Ohio Mar. 20, 2013) (quoting *Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.*, 331 F.3d 472, 482 (5th Cir. 2003)).

The Court is not ready at this time to conclude that Plaintiff's photo is an intangible item, and thus dismissed under *Dastar*. Through his website, Plaintiff sells physical copies of his photograph, making him a producer of tangible goods. Many of the alleged infringing activities were production of tangible goods incorrectly attributed to other Defendants. Plaintiff contends that some infringing activity involved the copying of a physical copy of

-6-

Plaintiff's photograph and then placing their trademark on the item. Unlike in *National Business*, the infringing activity involved wholesale copying of Plaintiff's photo rather than incorporating elements of his materials into their own works. *Id.* Further, Plaintiff claims that he had the only sharp photograph of the event, a claim that consumers may determine for themselves, but since not all pictures taken that day were of the same quality, the source of the photo is important. Thus, there is concern that reproductions of the photo may lead to confusion about the source of the photograph and dilute Plaintiff's sales.

Another court has ruled on a similar issue that a photograph is an intangible item for purposes of *Dastar's* analysis. *See Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011). While there is a communicative aspect to Plaintiff's photo, it is not as easily reduced to simply an "idea, concept, or communication" as other photos. Consumers do not purchase the photo simply for its communicative properties, they purchase it as a token of their fandom for the University of Michigan, or Desmond Howard. As much is clear by the fact that consumers purchase and retain the photo in its physical form. So, unlike other photographs, the physical nature of the photo remains an inalienable characteristic. The Court will deny the Motion on this issue without prejudice at this time and will consider future arguments on this issue.

### C. State Law Claims

"A state common law or statutory claim is preempted if: (1) the work is within the scope of the subject matter of copyright, as specified in 17 U.S.C. §§ 102, 103; and, (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.,* 264 F.3d 622, 636 (6th Cir. 2001) (quotation marks, citation omitted). A

-7-

claim is not equivalent, "if an extra element is required instead of or in addition to the acts of reproduction . . . in order to constitute a state-created cause of action . . . provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id*. There is no dispute that the work upon which the state law claims are based is the subject matter of copyright. So, the only inquiry left for this Court is to determine whether Plaintiff's state law claims are qualitatively different.

    *1. Tortious Interference (Count VXIII)*

Plaintiff claimed Champions Press committed tortious interference by intentionally interfering with Plaintiff's business relationship with Howard. Plaintiff claimed Champions Press knew that there were ongoing negotiations between Plaintiff and Howard about purchasing the rights to the photo since the two Defendants share the same attorney. Plaintiff further alleged that Champions Press purposefully published Plaintiff's photo without permission in the book *I Wore 21* to interfere with these negotiations. After publication of *I Wore 21*, Howard did not purchase the rights to the photo.

The elements of tortious interference with a business relationship are as follows: "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *BPS Clinical Laboratories v. Blue Cross & Blue Shield of Michigan*, 217 Mich. App. 687, 698-99 (1996). The Sixth Circuit has stated that, "[g]enerally, tortious interference claims (with contract or prospective economic advantage) are held to be preempted because the rights asserted in such claims are not qualitatively different from the rights protected by copyright." *Stromback v. New Line Cinema*, 384 F.3d 283, 306 (6th

-8-

Cir. 2004). Additionally, Professor Nimmer has said:

> Insofar as unauthorized reproduction, distribution, performance or display causes the plaintiff to lose the benefits that would flow from an actual or prospective contract whereby plaintiff would authorize any such acts, the rights created by the tort of contract interference do not appear to differ qualitatively from rights under copyright; copyright also contemplates loss of actual or prospective contract benefits by reason of such unauthorized acts. Pre-emption in this context would, then, appear to be justified.

1 Nimmer § 1.01[B][1][a] (footnotes omitted). This Court has previously held that tortious interference claims are preempted by the Copyright Act. *See, e.g.*, *Fharmacy Records v. Simmons*, 05-72126, 2006 WL 156669 (E.D. Mich. Jan. 20, 2006); *Aqua Bay Concepts, Inc. v. Grosse Point Bd. of Realtors*, 91-CV-74819, 1992 WL 350275 (E.D. Mich. May 7, 1992).

Plaintiff failed to demonstrate the tortious interference claim is qualitatively different from the copyright action. The "interference" committed by Champions Press was the unauthorized copying of the photo, the exact conduct complained of in Plaintiff's copyright claims. When the essence of a state law claim is the same as that in a copyright action it is not qualitatively different. As such, Plaintiff's tortious interference claim is preempted by the Copyright Act.

*2. Michigan Consumer Protection Act - Unfair Competition (Count XVII)*

Plaintiff's Michigan Consumer Protection Act is not qualitatively different from his copyright claim. Plaintiff tried to make the two claims sound different by describing the basis of the consumer protection claim to be confusion over the source of the photo. However, the underlying conduct complained of is the unauthorized copy of Plaintiff's photo. "To the extent that plaintiff alleges copying, this claim is also preempted by the Copyright Act." *Tenneco Auto. Operating Co. Inc. v. Kingdom Auto Parts*, 08-CV-10467,

-9-

2009 WL 1438834 (E.D. Mich. May 18, 2009), *aff'd*, 410 F. App'x 841 (6th Cir. 2010).

### 3. Unjust Enrichment (Count XIX)

Finally, Plaintiff's unjust enrichment claim is also preempted by copyright law. This Court previously held that an unjust enrichment claim is preempted by a copyright claim unless the claim is based on an implied in fact contract. *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, CIV. 07-14841, 2008 WL 186367 (E.D. Mich. Jan. 18, 2008). That is because only an implied in fact contract requires alleging an extra element of a promise to pay. *Id.* Since Plaintiff does not allege Defendants made any promise to pay, there is no extra element to prove. As such, their unjust enrichment claim is preempted.

### D. Defendant Howard's Motion to Dismiss, or in the Alternative, for Summary on Statutory Damages and Attorney's Fees

Defendant Howard filed separately to request Plaintiff's claims for statutory damages and attorney fees be dismissed pursuant to 17 U.S.C. § 412(2). The relevant portion of that statute states that there will be no award for statutory damages or attorney's fees if, "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2). The Sixth Circuit held that, "infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs." *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998).

Howard claims that the alleged infringement commenced in February 2010, well

-10-

before Plaintiff registered the photo with the Copyright Office on August 31, 2011. Plaintiff does not dispute this, but instead claims that Howard engaged in separate acts of infringement after the registration date that entitle him to statutory damages and attorney's fees. The basis of this argument is that Plaintiff sent Howard a version of the photo in August 2012 that was slightly altered. Plaintiff contends that Howard uploaded this photo to his website after registration. The alterations on the photo, according to Plaintiff, make the pre- and post-registration infringing activity so different that it constitutes a new instance of infringement.

A similar argument was already rejected by this Court in *Teevee Toons, Inc. v. Overture Records*, 501 F. Supp. 2d 964, 966 (E.D. Mich. 2007). The *Teevee Toons* Court noted that it is not necessary to determine when an infringement ends and a new one begins. *Id*. *Johnson* also appears to foreclose Plaintiff's argument. *Johnson*, 149 F.3d at 505 (noting that the purpose of Section 412 "would be thwarted by holding that infringement is 'commenced' for the purposes of § 412 each time an infringer commits another in an ongoing series of infringing acts."). Plaintiff attempts to avoid this holding by claiming that Howard committed a new act of infringement, but his actions are really just another infringing act in a series of infringing acts.

Even if case law provided support for Plaintiff's argument, the differences between the two photos are not so significant that they constitute a new act of infringement. Since the alterations to the photo were to track infringing activity, they were so slight that they would not "appear to the untrained eye." Compl. ¶ 103. Given the purpose of the alterations and Plaintiff's own assessment that the differences are not easily discernable, the altered photo is not a new work. Nor do the extra steps required to place the altered

-11-

photo on the website make this a new act of infringement. As Howard stated, this is effectively the same photo, placed on the same website, by the same defendant. What little difference there is between the two photos is not enough to demonstrate that there are two separate acts of copyright infringement. Since the alleged infringement occurred in February 2010, before the photo's August 31, 2011 registration date, Plaintiff may not pursue statutory damages or attorney's fees. This ruling is applicable to those who are alleged to have infringed prior to August 31, 2011.

### E. Defendant Amazon's Motion to Dismiss

*1. Vicarious Infringement*

Defendant Amazon filed a separate Motion to Dismiss on the basis that Plaintiff has not properly stated a vicarious copyright infringement claim. "Vicarious liability exists when (1) a defendant has the right and ability to supervise the infringing conduct and (2) the defendant has an obvious and direct financial interest in the infringement." *Gordon v. Nextel Commc'ns & Mullen Adver., Inc.*, 345 F.3d 922, 925 (6th Cir. 2003). "When the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials-even in the absence of actual knowledge that the copyright monopoly is being impaired . . . the purposes of copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation." *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963).

Amazon argued it neither had the ability to supervise the sale of the infringing photo nor an obvious direct financial interest in its sale. As to the first element, Amazon emphasized its position as an "e-commerce platform provider" and noted that third party

merchants "post tens of thousands of items for sale on Amazon's website, and Amazon has no 'practical ability' to determine what may or may not be infringing." Def. Amazon's Mot. to Dismiss 5-6. Drawing an analogy to case law concerning Internet service providers, Amazon claimed that it cannot be expected to examine every product posted by a third-party and determine whether or not it is infringing.

This Court agrees with Amazon's position. "Copyright infringement . . . lends itself readily to abusive litigation . . . Therefore, greater particularity in pleading, through showing 'plausible grounds,' is required." *Nat'l Bus. Dev. Servs., Inc.*, 299 F. App'x at 512. Plaintiff merely states that, "Amazon has the right and ability to supervise the content of its website Amazon.com." Compl. ¶ 188. This does not meet the pleading requirement as there are no factual allegations from which it may determine that Amazon had the ability to supervise the infringing conduct. Plaintiff must put forth factual allegations that demonstrate Amazon could plausibly verify the copyright status of each and every piece of merchandise it lists from third-party sellers. Failure to do so requires dismissal of this claim.

*2. Contributory Infringement*

"Contributory infringement occurs when one, 'with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'" *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). Liability for contributory infringement is determined by the defendant's relationship with the direct infringement. *Id.* Plaintiff requested Amazon to take down the infringing merchandise, so Amazon had knowledge of the infringing activity. Compl. ¶ 190. However, Amazon continued to sell the merchandise after Plaintiff requested its removal.

-13-

*Id.* at ¶ 109. Selling infringing merchandise is a material contribution to infringement, so Plaintiff has stated a plausible contributory infringement claim against Amazon.

Amazon did not dispute this account. Instead, it argued the holding of *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984), provides a defense to contributory infringement since the product, their website, is "capable of substantial non-infringing uses." *Id.* at 422. Amazon's reliance on the holding of *Sony* is misplaced. For starters, Plaintiff is correct that the product in question is not Amazon's website, but the merchandise sold on its website. That difference is irrelevant as the holding of *Sony* is not even applicable to this case. "*Sony's* rule limits imputing culpable intent as a matter of law from the characteristics or uses of a distributed product." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934 (2005). There is no need to impute culpable intent since the products sold by Amazon already possessed their infringing characteristics. Amazon was well aware of the potential infringement because Plaintiff requested the products be removed from Amazon's website. Since Amazon does not present any other valid defense, the contributory infringement claim survives Amazon's Motion.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [#32] is GRANTED IN PART and DENIED IN PART.

Defendant Howard's Motion to Dismiss [#46] is GRANTED IN PART and DENIED IN PART.

Defendant Amazon's Motion to Dismiss [#49] is GRANTED IN PART and

-14-

DENIED IN PART.

SO ORDERED.

Dated: June 11, 2013

                                            S/Gershwin A. Drain
                                            GERSHWIN A. DRAIN
                                            UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 11, 2013, by electronic and/or ordinary mail.

S/Tanya Bankston
Deputy Clerk

-15-