Sealed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

FILED by _____ D.C.

OCT 24 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

**JOINT PRETRIAL STIPULATION**

**[FILED UNDER SEAL]**
**[HIGHLY CONFIDENTIAL]**

Plaintiffs, DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, COLUMBIA PICTURES INDUSTRIES, INC., and WARNER BROS. ENTERTAINMENT INC. (collectively "Plaintiffs"), and Defendants HOTFILE CORPORATION ("Hotfile") and ANTON TITOV (collectively "Defendants") by and through undersigned counsel and pursuant to the Order Specifically Setting Trial Date, DE 522, and Local Rule 16.1(e), hereby file their Joint Pretrial Stipulation:

## A. SHORT CONCISE STATEMENT OF THE CASE BY EACH PARTY IN THE ACTION.

Plaintiffs statement:

This is an action by the Plaintiffs, Disney Enterprises, Inc. ("Disney"), Twentieth Century Fox Film Corp. ("Fox"), Universal City Studios Productions LLLP ("Universal"), Columbia Pictures Industries, Inc. ("Columbia"), and Warner Brothers Entertainment Inc. ("Warner") against Defendants, Hotfile Corp. and Anton Titov. Plaintiffs allege that Defendants are liable for the infringement of Plaintiffs' copyrights by Hotfile's users on Hotfile's system under the theories of inducement, material contribution and vicarious liability. Defendant Hotfile has asserted a counterclaim against Plaintiff Warner, alleging that Warner sent copyright takedown notices which knowingly and materially misrepresented that the subject files were infringing, and therefore is liable for damages under 17 U.S.C. § 512(f).

On August 28, 2013, the Court issued an order on the parties' motions for summary judgment. *See* Order, DE 524. The Court granted Plaintiffs' motion for summary judgment on Defendants' entitlement to a defense under Section 512(c) of the Digital Millennium Copyright Act, 17 U.S.C. § 512(c) ("DMCA"), Hotfile's liability as a vicarious infringer, and Defendant Anton Titov's personal liability for the actions of Hotfile. *Id.* at 99. The Court denied Defendants' motion for summary judgment on their DMCA defense and Titov's motion for summary judgment as to his personal liability.

The Court found that there were issues of fact with respect to Hotfile's liability under the theories of inducement and material contribution. *Id.* The Court also found material questions of fact requiring a trial on Hotfile's counterclaim against Plaintiff Warner. *Id.* at 98. However, the Court narrowed the scope of the counterclaim by holding that there was no dispute that 24 of the files sued upon by Hotfile were duplicates, 19 were in fact owned by Warner, and 271 were

owned by third party Electronic Arts, which authorized Warner's removal of the files that infringed its copyrights. *Id.* at 31-32. Thus, at most 576 of the 890 takedown notices sued upon by Hotfile remain potentially at issue for trial.

Following issuance of the Court's order, the parties agreed to stipulate that, in light of the Court's ruling that Hotfile is vicariously liable for infringement and Titov is personally liable for Hotfile's infringing activities, it would not serve judicial economy to try at this time Plaintiffs' claims as to Hotfile's liability under two additional theories of secondary liability – inducement to infringe copyright under *Grokster*, and material contribution. Accordingly, the parties filed a stipulation on September 23, 2013 agreeing to hold those two alternative claims in abeyance, rather than trying them in the upcoming trial this December, which the Court approved. *See* Stipulation to Hold Claims in Abeyance, DE 536; Order, DE 542.

Hence, only two issues currently remain for trial: (1) the amount in damages to which Plaintiffs are entitled on their secondary copyright infringement claim against Hotfile, and (2) liability (and damages, if any) under Hotfile's counterclaim against Warner under 17 U.S.C. § 512(f) with respect to the 576 remaining works for which the Court found questions of fact.

With respect to Plaintiffs' secondary copyright infringement claim, Plaintiffs put in evidence on Summary Judgment proving their ownership and registration of 3,808 works that were directly infringed on the Hotfile system (attached hereto as Exhibit A), which Hotfile did not contest or contradict; therefore direct infringement of those works, including Plaintiffs' ownership, is established for purposes of trial. Plaintiffs intend to seek damages with respect to each of those works.

With respect to the works on which they are seeking damages, Plaintiffs intend to demonstrate at trial their entitlement to statutory damages in an amount to be determined by the jury, given, *inter alia*, the massive scope of the infringement (including the large number of infringing acts with respect to each work), the profitability of the infringement to Defendants, the need to deter Defendants and operators of similar services, Defendants' blameworthiness in declining to exercise available control to limit or stop the infringement they facilitated through their service, and the value of the works infringed (which include many of the top-grossing movies and television programs owned by Plaintiffs). In the alternative, Plaintiffs may also seek Hotfile's and Titov's profits from the infringing activity.

With respect to Hotfile's Counterclaim, Warner intends to demonstrate at trial that Hotfile cannot meet the standard for liability under Section 512(f). Specifically, Warner intends to prove that it did not have actual subjective knowledge of any errors claimed by Hotfile at the time Warner sent the particular notices in question; that, in any event, substantially all of the files removed by those notices were infringing the rights of other copyright owners (and that Hotfile accordingly cannot recover for the removal of those files); and that Hotfile did not suffer actual damages (or suffered only de minimis damages) from the notices sued upon. To the extent that Hotfile suffered any damages at all, Warner intends to prove that Hotfile itself contributed to and failed to mitigate those damages because Hotfile knew of errors in some of Warner's notices yet failed to bring them to Warner's attention and because Hotfile failed to adopt a counternotice procedure, contemplated by the DMCA, that would have allowed any mistakes in takedown notices to be identified and corrected promptly.

Defendants' Statement:

There are two claims currently set for trial: (1) Plaintiffs' claim for damages based on the Court's finding of indirect copyright infringement on a vicarious liability theory, which as a matter of law does not require a finding of knowledge or intent; and (2) Defendant Hotfile's counterclaim.

Any damage award for Plaintiffs should be at or near the minimum allowed per work by statute, and Plaintiffs will not be able to show that any vicarious infringement by Hotfile was willful (if Plaintiffs were to attempt to try the issue). The Hotfile system's purpose is not to facilitate infringement. Hotfile is an international leader in Internet file-hosting and cloud storage. Hotfile has played a role in promoting technological innovation, having hosted over 100 million digital files, including open source software, original compositions of musicians around the world, news reporting on important political events, user-generated content, photos, Creative Commons movies, and public domain books, for businesses and consumers around the world.

Defendants had no reason to believe that their acts constituted infringement. Because of its respect for user privacy and because of the volume of files hosted on its site, Hotfile was unaware of any specific acts of infringement. Additionally, as a precaution, Defendants undertook significant antipiracy countermeasures, including by implementing a DMCA policy, such that they believed that Hotfile was compliant with the DMCA. Hotfile collaborated and cooperated with Plaintiffs and other copyright owners to prevent infringement on its site, such as by adopting new technologies and providing content owners with innovative and sophisticated

4

tools to facilitate rapid takedown of suspected infringing works. Hotfile responded to every takedown notice sent to it by Plaintiffs; indeed, Plaintiffs have presented no evidence to the contrary. Even Plaintiffs' representatives repeatedly assured Hotfile that its antipiracy countermeasures were more than adequate and praised Hotfile's efforts.

This case also involves Hotfile's counterclaim against Plaintiff and counterdefendant Warner Bros. Entertainment, Inc. ("Warner") for its violations of 17 U.S.C. § 512(f). In an effort to combat piracy on its site, Hotfile offered to Warner a special antipiracy tool, a "Special Rightsholder Account" ("SRA") that allowed Warner to bypass the standard Digital Millennium Copyright Act ("DMCA") notice and takedown regime, instead giving Warner the ability to directly delete files hosted on Hotfile that Warner represented under penalty of perjury were infringing Warner's copyrights. Warner expressed to Hotfile that it was satisfied with the SRA and routinely praised Hotfile for its "copyright compliance." After Warner, along with the other Plaintiff movie studios, filed this suit against Hotfile in 2011 for copyright infringement, Hotfile became aware of suspicious deletions made through Warner's SRA. For many of the files Warner deleted via the SRA, Warner appears to have misidentified the substance of the files and misrepresented—under penalty of perjury—is ownership of those files and/or its authorization to delete them.

Through discovery, Hotfile learned that Warner relied on computer algorithms – not human beings – to determine what to delete from the Hotfile system. This computer system or "bot" functioned principally on a keyword matching protocol, marking for deletion any files on any searched page where the page title contained the characters for which Warner's system was searching. Warner did not review the content of the files before deleting through Hotfile's SRA, and, except on a few limited occasions, no human being at Warner reviewed even the names of the files Warner was deleting before it deleted them. Essentially, Warner knew nothing about the content of the files it was deleting other than a generalized knowledge that they were found on particular websites and posted on pages that contained certain letters and/or numbers in the title. Warner knew that its system was seriously flawed, producing as many as 10% false positives for the files it located for deletion. Warner also knew that its system was deficient with respect to several specific features. For example, Warner knew that individual files that were smaller than 200 megabytes were almost certainly not full movies, and yet Warner continued to misidentify and delete single links smaller than 200 megabytes as movies. Moreover, Warner

5

knew that using "V 2009" as a search term was overbroad and resulted in the deletion of significant volumes of non-Warner content, yet it continued to employ that search term and continued to improperly delete material identified through such searches. Hotfile has discovered many other flaws/errors Warner was aware of but failed to address. For example, Warner also admitted to improperly deleting several instances of a popular freeware program distributed on Hotfile, JDownloader, suggesting in deposition that Warner believed it was entitled to delete these files, despite knowing that it did not own any copyrights to those files and did not have authorization from the actual copyright owner.

Because Warner knowingly misrepresented under penalty of perjury that it had a good faith belief that the works identified in Hotfile's counterclaim were infringing when at best it had formed no specific belief whatsoever about the infringing nature of such files and at worst specifically targeted and was improperly deleting files from Hotfile it did not like (e.g., JDownloader), Warner is liable for violating § 512(f). Hotfile has been damaged by Warner's improper deletions by having the list of available works on Hotfile improperly diminished, having sources of direct premium account referrals deleted, having premium subscribers terminated, and having its goodwill diminished.

### B. BASIS OF FEDERAL JURISDICTION.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions).

### C. THE PLEADINGS RAISING THE ISSUES.

1. Plaintiffs' Complaint for Copyright Infringement. DE 1.
2. Second Amended Answer, Affirmative Defenses, and Counterclaim of Defendant Hotfile Corporation to Plaintiffs' Complaint. DE 161.
3. Answer and Defenses of Warner Bros. Entertainment, Inc. to Hotfile Corp.'s Second Amended Counterclaim. DE 163.

### D. UNDISPOSED OF MOTIONS OR OTHER MATTERS REQUIRING ACTION BY THE COURT.

1. Defendant Hotfile Corp.'s Motion to Strike Rebuttal Report of Dr. Waterman, DE 217.

## E. A CONCISE STATEMENT OF UNCONTESTED FACTS WHICH WILL REQUIRE NO PROOF AT TRIAL, WITH RESERVATIONS, IF ANY.

i. <u>Plaintiffs' Secondary Infringement Claim Against Defendants.</u>

1. Defendant Hotfile Corp. operates an online file hosting website located at www.hotfile.com. (Order at 3, Dkt. 524).

2. Plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corp., Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Warner Brothers Entertainment Inc., or their affiliates, are among the leading motion picture studios in the world, and are responsible for creating and distributing some of the world's most popular filmed entertainment. (Compl. at 5).

3. Defendant Hotfile Corp. is a Panamanian corporation that operates the Hotfile website at www.hotfile.com. (Compl. at 6).

4. The Hotfile website has operated since February 2009. (Order at 3, Dkt. 524).

5. Hotfile allows registered users to upload electronic files from their computers or other devices onto Hotfile's servers. *Id.*

6. Once a file is uploaded, the file can be downloaded by anyone with an Internet connection. (*Id.* at 4).

7. The Hotfile website does not provide a function by which users can search for content on hotfile.com.

8. Hotfile is accessible to the public and anyone can upload or download files for free. (*Id*). However, users who purchase "premium" status obtain preferred privileges in using the website, including the ability to download files faster and unlimited storage.

9. Hotfile's sole source of revenue is subscriber fees paid by users in exchange for "premium" status. (*Id.* at 5).

10. Hotfile charges a "fixed fee" to Premium subscribers, regardless of the content that they upload or download.

11. Whereas files uploaded by users without premium status are automatically deleted every three months, files uploaded by users with premium status may be stored on Hotfile's servers for a longer period of time. (*Id*).

12. Whenever Hotfile was contacted by users through the contact form on its website, the title of the file last accessed by that user was revealed to Hotfile personnel receiving the communication. (Order at 13)

13. Prior to the filing of the Complaint in this action, Hotfile received notices of infringement from copyright owners under the Digital Millennium Copyright Act ("DMCA Notices") corresponding to approximately eight million unique files. (*Id.* at 16)

14. Plaintiffs are the owners of the copyright and/or the exclusive reproduction or distribution rights with respect to the 3,808 copyrighted works identified in the exhibit attached hereto as Exhibit A.

15. Each work in Exhibit A is registered with the Copyright Office under the registration number provided in Exhibit A.

16. Plaintiffs are not seeking damages with respect to conduct occurring on the Hotfile system after February 8, 2011.

ii. Hotfile's Counterclaim

17. Warner, in the regular course, sends takedown notices to online locations where it believes Warner's copyrighted works are being infringed.

18. Hotfile brought suit regarding 890 files whose removal Warner requested by way of a takedown notice. Warner used Hotfile's SRA tool to seek deletion of the files identified in Exhibits A-D of Hotfile's counterclaim.

19. Warner's notifications by means of Hotfile's SRA are (and have the effect of) notifications of claimed infringement to Hotfile's designated agent under 17 U.S.C. § 512(c)(3)(A), and are therefore subject to 17 U.S.C. § 512(f).

20. Prior to deleting the files, no human being at Warner reviewed the content of the files identified in Exhibits A-D of Hotfile's counterclaim.

21. The file http://hotfile.com/dl/25231712/b99b376/JDownloaderSetup.exe.html is a copy of JDownloader software, a freeware program. Warner does not own the copyright to JDownloader software.

## F. A CONCISE STATEMENT IN REASONABLE DETAIL OF THE ISSUES OF FACT WHICH REMAIN TO BE LITIGATED AT TRIAL.

i. With respect to Plaintiffs' secondary infringement claim against Defendants: the appropriate measure of damages.

    ii.    With respect to Hotfile's counterclaim against Warner: Whether Warner violated 512(f), and, if so, the appropriate measure of damages.

### G. A CONCISE STATEMENT OF THE ISSUES OF LAW ON WHICH THERE IS AGREEMENT.

    i.    <u>Plaintiffs' Secondary Infringement Claim Against Defendants.</u>

        1. A Plaintiff in a copyright infringement action may opt for an award of actual damages and profits, or of statutory damages pursuant to 17 U.S.C. § 504(c). 17 U.S.C. § 504(c); 17 U.S.C. § 412.

        2. The jury may award statutory damages of not less than $750 or more than $30,000 with respect to each work infringed, as it considers just. 17 U.S.C. § 504(c).

        3. If the Defendant's infringement was willful, the jury may award statutory damages of not less than $750 or more than $150,000, as it considers just.

        4. Willful infringement requires that the defendant has actual or constructive knowledge that its actions constitute infringement or recklessly disregards a copyright holder's rights. The copyright owner has the burden to prove that infringement was committed willfully. 17 U.S.C. § 504(c)(2).

    ii.    <u>Hotfile's Counterclaim.</u>

        1. A plaintiff in a claim under 17 U.S.C. § 512(f) may be awarded actual damages resulting from the Defendant's knowing material misrepresentation.

        2. A plaintiff in a claim under 17 U.S.C. § 512(f) bears the burden of proof as to both liability and damages.

        3. Warner's notifications by means of Hotfile's SRA are (and have the effect of) notifications of claimed infringement to Hotfile's designated agent under 17 U.S.C. § 512(c)(3)(A), and are therefore subject to 17 U.S.C. § 512(f).

### H. A CONCISE STATEMENT OF THE ISSUES OF LAW WHICH REMAIN FOR DETERMINATION BY THE COURT.

    i.    <u>Damages to Plaintiffs</u>

The parties do not disagree on any relevant issues of applicable law.

    ii.    <u>Hotfile's Counterclaim</u>

        1. Whether the knowing misrepresentation standard under 17 U.S.C. § 512(f) requires actual, subjective knowledge by the Defendant, which knowledge was possessed before the notice was sent, that a specific sued-upon takedown notice was erroneous.

2. Whether the knowing misrepresentation standard under 17 U.S.C. § 512(f) prohibits the use of automated systems to identify infringing works that are the subject of notices.

## I. EACH PARTY'S NUMBERED LIST OF EXHIBITS.

1. The Plaintiffs' Exhibit List attached hereto as Exhibit B.
2. The Defendants' Exhibit List attached hereto as Exhibit C.

## J. EACH PARTY'S LIST OF TRIAL WITNESSES.

3. The Plaintiffs' Witness List attached hereto as Exhibit D.
4. The Defendants' Witness List attached hereto E.

## K. ESTIMATED TRIAL TIME.

1. Plaintiffs' estimate: Plaintiffs estimate that trial on Plaintiffs' claims will require four days and that trial on Hotfile's Counterclaim will require two days.
2. Defendants' estimate: Six to eight days.

## L. WHERE ATTORNEY'S FEES MAY BE AWARDED TO THE PREVAILING PARTY, AN ESTIMATE OF EACH PARTY AS TO THE MAXIMUM AMOUNT PROPERLY ALLOWABLE.

1. Plaintiffs' estimate: As the matter remains to be tried and Plaintiffs continue to incur legal expenses, it is not possible to state attorney's fees with certainty at this time. However, Plaintiffs estimate that, at the conclusion of trial, approximately $8.5 Million will be recoverable by Plaintiffs as attorney's fees under the Copyright Act.
2. Defendants' estimate: Hotfile cannot fully quantify the attorneys' fees incurred in response to Warner's violations of 17 U.S.C. § 512(f) as those fees are still accruing. Regarding fees accrued prior to the filing of Hotfile's counterclaim, Hotfile estimates those fees to amount to approximately $50,000. Hotfile reserves the right to amend this response subject to proof and further case developments.

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that counsel for Plaintiffs, Karen L. Stetson, the counsel who makes this joint filing on behalf of all Parties, has authorization from counsel for Defendants to file the Joint Stipulation on behalf of Defendants as well as the Plaintiffs whom she represents.

DATED: October 23, 2013

Respectfully submitted,

By: /s/ Karen L. Stetson _____ for
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
David A. Handzo (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

/s/ Brady J. Cobb
BRADY J. COBB, ESQUIRE
Florida Bar No. 031018
COBB EDDY MIJARES, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone (954) 527-4111
Facsimile (954) 900-5507
bcobb@cemlaw.net

Valentin D. Gurvits (# 643572 - *pro hac vice*)
Matthew Shayefar (# 685927 - *pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Telephone: (617) 928-1804
Facsimile: (617) 928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

Evan Fray-Witzer (# 564349 - *pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 804
Boston, MA 02116
Telephone: (617) 426-0000
Facsimile: (617) 423-4855
Evan@CFWlegal.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 23d day of October, 2013, I served the following document on all counsel of record on the attached service list via electronic mail:

## JOINT PRETRIAL STIPULATION

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Karen L. Stetson
Karen L. Stetson

## SERVICE LIST

### Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
### CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116
Phone: 617-426-0000

*Attorney for Defendants Hotfile Corp. and Anton Titov*

COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201

*Attorney for Defendants Hotfile Corp. and Anton Titov*