UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

**PLAINTIFFS' MOTION IN LIMINE AND MEMORANDUM OF LAW
TO PRECLUDE DEFENDANTS FROM OFFERING CERTAIN OPINIONS
OF DR. ANDREW CROMARTY AT TRIAL**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD............................................................................................................2

ARGUMENT .........................................................................................................................2

I.  DR. CROMARTY'S OPINIONS REGARDING HOTFILE'S "CONTROL" OVER INFRINGING ACTIVITY ON ITS SERVICE SHOULD BE EXCLUDED AS CONTRARY TO THE COURT'S FINDINGS ................................................................................................2

II.  DR. CROMARTY'S OPINIONS REGARDING THE EXTENT OF PLAINTIFFS' ACTUAL DAMAGES OR MEASURES PLAINTIFFS MIGHT HAVE TAKEN TO PREVENT INFRINGEMENT OF THEIR WORKS SHOULD BE EXCLUDED ...................................................................4

III.  DR. CROMARTY'S IS NOT QUALIFIED TO OFFER OPINIONS ABOUT THE VALUE OF THE WORKS INFRINGED......................................................6

IV.  DR. CROMARTY'S OPINIONS REGARDING "DIGITAL FINGERPRINTING" TECHNOLOGY SHOULD BE EXCLUDED ................................8

V.  DR. CROMARTY'S OPINIONS REGARDING TAKEDOWN NOTICE ACCURACY SHOULD BE EXCLUDED ....................................................................12

CONCLUSION..........................................................................................................................14

# **TABLE OF AUTHORITIES**

**CASES**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)...............................................6

*Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir. 1999)............................................3, 6

*Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011) ..........................5

*Bowers v. Norfolk Southern Corp.*, 537 F.Supp.2d 1343 (M.D. Ga. 2007), *aff'd*, 300 F. App'x 700 (11th Cir. 2008) ................................................................................................ 5-6

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548 (11th Cir. 1998) ...........................13

*Clena Investments, Inc. v. XL Specialty Insurance Co.*, 280 F.R.D. 653 (S.D. Fla. 2012)..............5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).......................................2, 8

*Everidge v. United Technologies Corp.*, No. 00-CV-0230, 2003 WL 26097789 (N.D. Ga. Mar. 31, 2003)......................................................................................................................8

*FedEx Ground Package System, Inc. v. Applications International Corp.*, 695 F. Supp. 2d 216 (W.D. Pa. 2010) ................................................................................................7

*Home Design Services, Inc. v. Trumble*, No. 09-cv-00964-WYD-CBS, 2011 WL 843900 (D. Colo. Mar. 8, 2011) ...................................................................................................6

*Islamic Center of North Fulton, Inc. v. City of Alpharetta*, No. 10-cv-01922, 2011 WL 6140662 (N.D. Ga. Nov. 10, 2011)..................................................................................5

*Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384 (S.D. Fla. June 25, 2009), *aff'd*, 613 F.3d 1329 (11th Cir. 2010) ..........................................................................6

*McClain v. Metabolife International, Inc.*, 401 F.3d 1233 (11th Cir. 2005) ..................................5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ..........................10, 11

*Rush v. Denco Enterprises, Inc.*, No. EDCV 11–0030 DOC (DTBx), 2012 WL 3206674 (C.D. Cal. Aug. 3, 2012).................................................................................................3

*Siharath v. Sandoz Pharmaceuticals Corp.*, 131 F. Supp. 2d 1347 (N.D. Ga. 2001), *aff'd*, 295 F.3d 1194 (11th Cir. 2002) ......................................................................................7

*Sony BMG Music Entertainment v. Tenenbaum*, 672 F. Supp. 2d 217 (D. Mass. 2009).................6

*Sundance, Inc. v. Demonte Fabricating LTD.*, 550 F.3d 1356 (Fed. Cir. 2008) ........................5

*United States v. Brown*, 415 F.3d 1257 (11th Cir. 2005)..............................................................13

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) ............................................................2, 8

*United States v. Masferrer*, 367 F. Supp. 2d 1365 (S.D. Fla. 2005) ........................................2, 7, 8

*Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287 (11th Cir. 2003) ...................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(c) .......................................................................................................................12

Fed. R. Evid. 702 .......................................................................................................2, 3 4, 5, 13

# INTRODUCTION

Plaintiffs Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment Inc. (collectively "Plaintiffs") hereby move this Court to preclude Defendants Hotfile Corp. and Anton Titov (collectively "Defendants") from putting on testimony by their professed expert Dr. Cromarty on various topics in Dr. Cromarty's report and summary judgment declaration.

Defendants appear to envision Dr. Cromarty acting as something of an "all-purpose" expert for their side, delivering opinions on a vast range of topics ranging from online business models for storage providers, Hotfile's control over infringing activity on its system, the effectiveness and reliability of digital content identification technology (including but not limited to the "Vobile" software Hotfile eventually adopted only after being sued by Plaintiffs), the value of Plaintiffs' copyrighted movies and television programs at issue in this lawsuit, alternate ways in which the movie studios could have structured their business models instead of bringing this case, technological self-help measures the studios could take to make infringement of their movies and television programs more difficult, ways in which online copyright infringement purportedly helps the Plaintiffs by increasing the visibility of their works, and the accuracy of takedown notices on the Internet more generally.

Dr. Cromarty is not qualified to testify on this long list of topics. Dr. Cromarty has an academic background in computer science and describes himself as having worked in "technical management positions" and as a "computing professional." Declaration of Dr. Andrew Cromarty in Support of Defendants' Motion for Summary Judgment, Declaration of Luke C. Platzer in Support of Plaintiffs' Motions in Limine ("Platzer Decl."), Ex. 1 (filed under seal Mar. 7, 2012), ¶ 11 [hereinafter "Cromarty Decl."]. The reality, however, is that many of Dr. Cromarty's opinions are not expert testimony for which he is qualified or conclusions based on reliable methods, but instead represent viewpoints that could have just as well been offered by a layperson, or at least by a vigorous reader of opinion blogs that follow the digital industry. Moreover, much of what Dr. Cromarty opines in his report will not assist the jury, either because the opinion goes to questions the Court has already decided on summary judgment or because Defendants lack predicate evidence that would be necessary to make Dr. Cromarty's opinions relevant. For the reasons stated below, the Court should preclude Defendants from offering Dr.

1

Cromarty's testimony on several of the opinions disclosed in his report and/or stated in his summary judgment declaration.

## LEGAL STANDARD

Federal Rule of Evidence 702 requires expert testimony to be helpful ("will help the trier of fact"), to be given by a witness "qualified as an expert by knowledge, skill, experience, training, or education," and to be reliable ("based on sufficient facts or data," "the product of reliable principles and methods," and "applied…reliably to the facts of the case."). Fed. R. Evid. 702. *Daubert* requires the district court to act as a "gatekeeper" to ensure that speculative and unreliable opinions are not considered by the jury. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The importance of the district court's gatekeeping role under *Daubert* "cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Accordingly, the court's scrutiny of the foundations of the proposed expert testimony must be "exacting." *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1372 (S.D. Fla. 2005). "The district court's role is especially significant since the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it." *Frazier*, 387 F.3d at 1260 (quoting *Daubert*, 509 U.S. at 595) (internal quotation marks omitted).

To fulfill its gatekeeping role, the court "must conduct a rigorous three-part inquiry" into the expert's qualifications and the reliability and helpfulness of the expert testimony. *Id.* (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The proponent of expert testimony always bears the burden of showing that the testimony satisfies the three *Daubert* requirements. *Id.*

## ARGUMENT

I. **DR. CROMARTY'S OPINIONS REGARDING HOTFILE'S "CONTROL" OVER INFRINGING ACTIVITY ON ITS SERVICE SHOULD BE EXCLUDED AS CONTRARY TO THE COURT'S FINDINGS.**

Central to this Court's summary judgment decision was the finding that, as a matter of law, Defendants had the right and ability to control the infringement that their users were committing through their service, yet failed to do so. *Disney Enterprises, Inc. v. Hotfile Corp.*, No. 11-Civ-20427, slip op., at 83-84 (S.D. Fla. Aug. 28, 2013). Hotfile now wishes to reserve its right to call Dr. Cromarty to prove the exact opposite. In his report, Dr. Cromarty opined that "Hotfile materially lacks the 'ability to control' infringement even using state-of-the-art technology." Expert Report of Andrew S. Cromarty, Ph.D., Platzer Decl. Ex. 2, at 39-44

2

[hereinafter "Cromarty Expert Report"]; *see also* Cromarty Decl., Platzer Decl. Ex. 1, ¶ 118 ("It is my opinion that . . . Defendants materially lack the ability to control infringement by Internet users"). Notwithstanding this Court's unambiguous finding to the contrary, Defendants have informed Plaintiffs that they still reserve the right to proffer Dr. Cromarty for this now-rejected view. *See* Platzer Decl. Exs. 14-15. Defendants should not be permitted to relitigate the Court's summary judgment decision by offering Dr. Cromarty to testify on this point at trial. *See, e.g., Rush v. Denco Enters., Inc.*, No. EDCV 11–0030 DOC (DTBx), 2012 WL 3206674, at *3 (C.D. Cal. Aug. 3, 2012) ("it would be prejudicial to force Plaintiff, who was timely prepared for the summary judgment motion, to eternally relitigate this case after she legitimately prevailed on her dispositive motion").

Another court recently granted the plaintiffs the same relief in a highly similar case. In the *Limewire* case, the court held on summary judgment that the defendant was liable for inducement of infringement. *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 424-31 (S.D.N.Y. 2011) ("*Limewire*"). In advance of the trial on damages in that case, the court granted the plaintiffs' motion *in limine* to preclude argument or evidence at trial that was inconsistent with the undisputed facts and decision rendered during the liability phase of the case. *See Limewire*, No. 06 Civ. 05936 (KMW) (S.D.N.Y. April 4, 2011), ECF # 692 ("Motion *in limine* to Preclude Evidence or Argument Inconsistent With Facts Established at Summary Judgment"), Platzer Decl. Ex. 3; Minute Entry, *Limewire*, No. 06 Civ. 05936 (KMW) (S.D.N.Y. April 27, 2011) ("The Court grants Plaintiffs' request to preclude any evidence or argument inconsistent with the facts established as a matter of law in the May 2010 decision"), Platzer Decl. Ex. 4.

This Court should issue a similar ruling here and preclude Dr. Cromarty from testifying that Defendants lacked "control" over infringing uses of the Hotfile service as inconsistent with the Court's summary judgment decision. Rule 702 serves to "ensure that the proposed expert testimony is relevant to the task at hand, . . . *i.e.*, that it logically advances a material aspect of the proposing party's case." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (internal quotation marks). Cromarty's opinions about "control" fail the "helpfulness" prong of the rule because they go to factual propositions no longer in issue, and further should be precluded under Rule 403 due to the potential to prejudice Plaintiffs by forcing them to relitigate an issue on which they have already prevailed.

3

**II.    DR. CROMARTY'S OPINIONS REGARDING THE EXTENT OF PLAINTIFFS' ACTUAL DAMAGES OR MEASURES PLAINTIFFS MIGHT HAVE TAKEN TO PREVENT INFRINGEMENT OF THEIR WORKS SHOULD BE EXCLUDED.**

Dr. Cromarty also provides opinions on the extent of Plaintiffs' damages, a topic for which he has no qualifications. For example, he speculates that the massive infringement for which Defendants are liable may "actually increase[] interest in, demand for, and sales of Plaintiffs' product" such that infringement may be "of net economic benefit to Plaintiffs." Cromarty Expert Report, Platzer Decl. Ex. 2, at 35, ¶ 163. He also asserts that certain technologies exist by which Plaintiffs could "effect[] control of their own digital assets," but that he has "seen nothing, in the Complaint or elsewhere, to indicate the Plaintiffs are making good business decisions" to use such technologies and, thereby, to control "their own business risk." *Id.* at 32, ¶¶ 148-49. Dr. Cromarty similarly asserts that Plaintiffs have failed to adopt certain business models that, in Dr. Cromarty's view, could "harness the business opportunity" that the massive infringement occurring through Defendants' service somehow presents, or "repric[e] their product as a rational business response to the market signals they receive when their works are alleged to be illicitly redistributed." *Id.* at 36-37, ¶¶ 165-171. In essence, Dr. Cromarty is of the (inherently contradictory) view that Plaintiffs did not suffer meaningful damages from the infringement here or, if they did, it was somehow their own fault. For several reasons, Dr. Cromarty should be precluded from so testifying at trial.

First, Dr. Cromarty is patently unqualified to opine on either the extent to which the infringement at issue here caused harm to Plaintiffs, or whether any of the measures or business approaches he identifies would have minimized their damages, had Plaintiffs adopted them. Dr. Cromarty is a self-described technologist and computer scientist. He has no experience working for an entertainment company (except as a vendor hosting digital content on cloud platforms), nor does he identify any relevant experience to suggest that he possesses expertise in assessing the value of the copyrights at issue here, or in evaluating the effectiveness of business models in the entertainment industry. Indeed, the basis for Dr. Cromarty's opinions in this regard seems to be little more that the supposed "widespread . . . belief" (among whom Cromarty does not say) that Plaintiffs have been slow to adopt "modern marketing and distribution methods suitable for new distribution media such as the Internet." *Id.* at 36, ¶ 165. Whether such a belief has any basis in fact – and it does not – it surely does not imbue Dr. Cromarty with the "specialized knowledge" necessary to qualify him as an expert to render an opinion in this regard. *See* Fed.

R. Evid. 702 (requiring that a testifying expert's opinion be based on "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue"); *see also Sundance, Inc. v. Demonte Fabricating LTD.*, 550 F.3d 1356, 1362 (Fed. Cir. 2008) ("[a]dmitting testimony from" an expert with "no skill in the pertinent art, serves only to cause mischief and confuse the fact finder"); *Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) ("[d]etermining whether a witness is qualified to testify as an expert requires the trial court to examine the credentials of the proposed expert *in light of the subject matter of the proposed testimony*") (internal quotation marks omitted) (quoting *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)) (emphasis added).

Second, there is no reliable method underlying Dr. Cromarty's opinions on these topics. He insists that his speculation is supported by "conventional microeconomic pricing theory," which he makes no effort to explain or to apply to the Plaintiffs' business. Cromarty Expert Report, Platzer Decl. Ex. 2, at 36, ¶ 168. Despite his efforts to use terms that vaguely resemble economic analysis, Dr. Cromarty's point is clear: he thinks, based on no analysis or investigation, that the Plaintiffs should embrace widespread infringement as a fact of life, dramatically change their business models, and start charging less for their works. That is Dr. Cromarty's lay opinion, not expert economic testimony, regardless of whether Dr. Cromarty dresses that opinion in quasi-economic terms. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005) (excluding an expert who attempted to justify his opinions on "broad principles of pharmacology" because, "[i]n the *Daubert* context, such phrases have little value. They are not shibboleths that distinguish those experts that offer reliable science from those who foist junk science on the court."); *see also Islamic Ctr. of N. Fulton, Inc. v. City of Alpharetta*, No. 10-cv-01922, 2011 WL 6140662, at *2 (N.D. Ga. Nov. 10, 2011) ("An expert's unexplained assurance that he or she has relied on accepted principles fails as well.").

Third, Dr. Cromarty's opinion is the very sort of unfounded speculation that courts routinely exclude. Fed. R. Evid. 702 (expert testimony must be "based on sufficient facts or data"). Indeed, the most that Dr. Cromarty can say on the subject is that "*it is entirely possible*" that infringement through Defendants' services "actually increases interest in, and demand for, and sales of Plaintiffs' product, and is of net economic benefit to Plaintiffs." Cromarty Expert Report, Platzer Decl. Ex. 2, at 35, ¶ 163 (emphasis added). "Such weak and ambiguous testimony cannot assist the jury." *Bowers v. Norfold S. Corp.*, 537 F. Supp. 2d 1343, 1368-69

5

(M.D. Ga. 2007) (excluding expert's "equivocal testimony" because it did "not assist the trier of fact"), *aff'd*, 300 F. App'x 700 (11th Cir. 2008); *see also Kilpatrick v. Breg, Inc.*, No. 08-10052-civ, 2009 WL 2058384, at *9 (S.D. Fla. June 25, 2009) (excluding expert testimony based on "merely plausible [and] not proven" theories), *aff'd*, 613 F.3d 1329 (11th Cir. 2010); *Allison,* 184 F.3d at 1320-21 (affirming exclusion of expert testimony "based on mere possibility of causation").

As a final note, courts have uniformly rejected contentions – such as those levied by Dr. Cromarty here – that copyright owners are somehow at fault for the extent of illegal downloads through online services, or for the inability to stop these downloads. *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (rejecting argument that "plaintiffs knowingly provided consumers with technology designed to copy and distribute MP3 files over the Internet and, thus, waived any legal authority to exercise exclusive control over creation and distribution of MP3 files"); *Sony BMG Music Entm't v. Tenenbaum*, 672 F. Supp. 2d 217, 232-37 (D. Mass. 2009) (rejecting argument that plaintiffs took insufficient steps to halt file-trading); *see also Home Design Servs., Inc. v. Trumble*, No. 09-cv-00964-WYD-CBS, 2011 WL 843900, at *3 (D. Colo. Mar. 8, 2011) (rejecting failure to mitigate defense because copyright owner had no duty to preemptively warn individuals not to violate copyright law). Therefore, whether Plaintiffs could have employed certain technological measures that, in Dr. Cromarty's view, might have prevented Plaintiffs' injuries is irrelevant. Accordingly, Dr. Cromarty should be precluded from so testifying at trial. *See, e.g., Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1322-23 (11th Cir. 2003) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful" (quoting *Daubert*, 509 U.S. at 591)).

### III.  DR. CROMARTY IS NOT QUALIFIED TO OFFER OPINIONS ABOUT THE VALUE OF THE WORKS INFRINGED.

Dr. Cromarty finds occasion to theorize that "many of the works accused as being infringed in this matter are wasting assets having low or negligible residual value or monetizable value." *See* Cromarty Decl., Platzer Decl. Ex. 1, ¶ 113. Dr. Cromarty then goes on to speculate that many of the works must not be very valuable to Plaintiffs because they are available on a variety of platforms, such as Netflix or Hulu, or because consumers may permissibly record TV broadcasts of those works. *Id.* ¶¶ 113-116. Without an iota of analysis or explanation, Dr. Cromarty declares that the works are "properly" valued at a fraction of a cent per use. *Id.* ¶ 116.

6

Dr. Cromarty's testimony fails to meet any of the three *Daubert* requirements. First, he is wholly unqualified to render any opinion on the value of the Plaintiffs works, how Plaintiffs monetize those works, or how the value of those works is affected by complex factors such as authorized time-shifting and online distribution platforms such as Netflix and Hulu. Dr. Cromarty's curriculum vitae does not contain a single indication that he has any special knowledge or experience with these issues above a lay consumer of television and movies. The "Expertise" section of his CV does not indicate that he has any experience with the complicated and specific process for valuing television programs or movies or with studying the markets for those works. *See* Cromarty Decl., Platzer Decl., Ex. 1, at 136. His CV is dedicated almost entirely to his experience in developing and studying computer systems. *See id.* at 136-142. The only apparent experience he has with the entertainment industry at all is his time spent developing distribution systems and other computer technology for content providers. *Id*. at 137-38. This does not give him any expertise about the market for copyrighted works or how they are properly valued. *See FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.*, 695 F. Supp. 2d 216, 223 (W.D. Pa. 2010) (although the proposed expert had "learned all kinds of things, [and] seen all kinds of things during his 40 years experience in computer software," that general experience was insufficient to qualify him to testify on the matter at hand (alteration in original)).

Second, Dr. Cromarty's opinions on the value of the Plaintiffs' copyrighted works are completely unreliable and lack any foundation. The core of *Daubert*'s reliability requirement is to ensure that expert testimony "is properly grounded, well reasoned, and not speculative before it can be admitted." *Masferrer*, 367 F. Supp. at 1373 (quotation marks omitted). Yet, Dr. Cromarty offers absolutely no analysis, reasoning, or data to support his conjecture that the Plaintiffs' works are worth little. He does not provide any financial information or economic material that he examined that support his conclusion, nor does he offer any repeatable, verifiable processes or methods he used to arrive at that conclusion. *See Siharath v. Sandoz Pharmaceuticals Corp.*, 131 F. Supp. 2d 1347, 1351 (N.D. Ga. 2001), *aff'd*, 295 F.3d 1194 (11th Cir. 2002) (the reliability requirement "seeks to determine whether there is some objective, independent validation of the expert's methodology" (internal quotation marks omitted)). His lack of any analysis or methodology is not surprising, given that Dr. Cromarty does not even identify the economic or non-monetary value of the Plaintiffs' copyrighted works as one of

7

questions he was asked to address in his expert report. *See* Cromarty Expert Report, Platzer Ex. 2, at 1. Dr. Cromarty's testimony is nothing more than rank speculation, and therefore must be excluded under *Daubert*. 509 U.S. at 589-90 (stating that, under Rule 702, expert testimony must be grounded in scientific procedures and methods, and be more than simply "subjective belief or unsupported speculation."); *see also Masferrer*, 367 F. Supp. 2d at 1375-76 (excluding proffered expert testimony where the "proposed testimony is merely conclusory, unreliable, and fails to specifically identify the methodology or reasoning he used" to arrive at his conclusion); *Everidge v. United Techs. Corp.*, No. 00-CV-0230, 2003 WL 26097789, at *6 (N.D. Ga. Mar. 31, 2003) (excluding testimony where the proffered expert could not point to any methodology to explain how it arrived at his opinion).

Third, Dr. Cromarty's opinions on the value of the Plaintiffs' works would not be helpful to the jury, but rather would serve to confuse and mislead the jurors. At best, Dr. Cromarty's opinions are nothing more than the speculation of a lay person with ordinary knowledge of various options for consuming television and movies. *See Frazier*, 387 F.3d at 1262. But allowing him to testify about that ordinary knowledge from the position of an *expert*—particularly because he does have expertise in numerous unrelated technical areas—could unduly sway jurors who will assume that someone deemed an "expert" must have a substantial basis for any opinion he renders. In other words, jurors might give Dr. Cromarty's lay opinions "talismanic significance" because he has been deemed an expert in other areas. *See id.* at 1263.

**IV.   DR. CROMARTY'S OPINIONS REGARDING "DIGITAL FINGERPRINTING" TECHNOLOGY SHOULD BE EXCLUDED.**

The Court should also preclude Dr. Cromarty from offering his opinions as to the availability, effectiveness, and reliability of so-called "digital fingerprinting" technology, which identifies the copyrighted works embodied in particular digital files. In his report and declaration, Dr. Cromarty opines as to the (supposed) impossibility of determining the effectiveness of "fingerprinting" content identification software that Hotfile could have used to reduce infringement by its users, but failed to implement until after being sued. *See, e.g.*, Cromarty Expert Report, Platzer Decl. Ex. 2, at 21, ¶ 105 (opining that automated content identification is "fraught with difficulty" and that there is "no established acceptable reliable technical standard from either computer science or information science for comparing two creative works to determine whether one is an instance…of another"); *id*. at 26, ¶ 124 (opining that there is no "basis for concluding that digital fingerprinting tools work"); *id*. at 25, ¶ 121

8

(opining that "there is presently no science of digital asset matching."). He further opines that it would not make commercial sense for a company in Hotfile's line of business to use content identification software unless "under duress." Cromarty Decl., Platzer Ex. 1, at ¶ 93; *id*. ¶ 94 (opining that "professional investors" would instruct startups not to "wast[e] their time and money" on fingerprinting software); Cromarty Expert Report, Platzer Ex. 2, at 26, ¶ 124 (opining that parties "are compelled to buy such tools, whether they work or not…"); *see generally id.* at 24-29, ¶¶ 118-136. Such opinions are, again, contrary to the Court's holdings on summary judgment and irrelevant to any issue remaining at trial, and Dr. Cromarty is in any event unqualified to offer them.

      Dr. Cromarty is not qualified to offer opinions about digital fingerprinting technology and its effectiveness. Nothing in his CV indicates that he has ever dealt with the technology in any professional context before being engaged as an expert in this case. *See* Cromarty Decl., Platzer Decl. Ex. 1, at 137-142. Although Cromarty claims to have some academic background in the theory behind the technology (and Plaintiffs do not dispute that he appears to have an understanding of how the technology works in the abstract), none of his recent publications appear to be in the area, *see id.* at 142-147, and he lacks any foundation to give an expert opinion on the *practical* effectiveness of the commercially available products available to companies such as Hotfile. His "analysis" of such software products appears to have been limited to reviewing one industry study he had not seen until it was produced in this case, visiting the websites of a few vendors who provide fingerprinting products, and spending some time reading press clippings he found on Google. *See* Deposition of Andrew Cromarty, Platzer Decl. Ex. 12 ("Cromarty Tr.") at 252:25-254:14.[1]

      The gulf between Dr. Cromarty's qualifications and analysis and those of Plaintiffs' experts on the subject of automated content identification is vast. Plaintiffs' expert Dr. Erling Wold is an engineer whose career for the last fifteen years has "focused almost entirely on the problem of automatically identifying audio and video," holds multiple patents, has published several peer-reviewed papers in the area of automated content identification, and has worked in the fingerprinting software industry designing and improving such programs for over a decade.

---

[1] For instance, despite Cromarty's opinion that no mechanism exists for evaluating whether Vobile's technology is reliable, he made no effort to investigate how Hotfile was using it in practice and whether Vobile was identifying content accurately as part of Hotfile's implementation. Cromarty Tr. at 213:3-217:12.

9

*See* Rule 26(a)(2)(B) Rebuttal Report of Dr. Erling Wold, Platzer Decl. Ex 11, at ¶¶2-3. Plaintiffs' expert Dr. Ian Foster, the Director of the Computation Institute at Argonne National Laboratory and a Professor of Computer Science at the University of Chicago, studied fingerprinting patents, peer-reviewed analyses and industry tests of various programs and evaluated the reliability of the testing methodology, reviewed source code for fingerprinting software implementation, and has taught about the technology in the graduate classes he teaches at the University of Chicago. *See* Rule 26(a)(2)(B) Report of Dr. Ian Foster, Platzer Decl. Ex. 5, ¶¶ 2(f), 2(g), 2(h), 14-16; Deposition of Dr. Ian Foster, Platzer Decl. Ex. 7, at 146:2-151:4; Second Supplemental Rule 26(a)(2)(B) Rebuttal Report of Ian Foster, Platzer Decl. Ex. 6, ¶¶ 2(j) &15 [hereinafter "Foster Rebuttal Report"]; Rebuttal Deposition of Dr. Ian Foster, Platzer Decl. Ex. 8, at 448:21-449:20.  Defendants should not be allowed to confuse the jury at trial with vague and irrelevant assertions about fingerprinting technology that their expert has no qualification to offer.

Dr. Cromarty's opinions as to the supposed impossibility of evaluating the effectiveness of fingerprinting systems is also unhelpful to the jury.  The topic of fingerprinting technology might relate at trial to two questions: (1) the degree of "control" Hotfile has over its system and (2) Hotfile's blameworthiness for declining to investigate or adopt such technology until *after* it had been sued.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939 (2005) (fact that defendants did not "attempt[] to develop filtering tools or other mechanisms to diminish the infringing activity using their software" is evidence of culpable intent).  In neither instance is Dr. Cromarty's opinion helpful to the trier of fact.

First, as to Hotfile's "control" over its system and infringement by its users, the matter has already been conclusively resolved by the Court and Cromarty's opinions have no value to the jury in attempting to relitigate whether or not Hotfile had such control.  *See* Part I *supra*; Summ. Judgm. Order, DE 534, at 84 (finding that Hotfile's adoption of "technology that it claims is effective in filtering and targeting infringing works…belie[s] Hotfile's argument that it lacks control" and accordingly entering finding of vicarious liability).

And in any event, Dr. Cromarty's opinion is so carefully worded as to render it useless to the jury on this point.  Dr. Cromarty never comes out and opines that fingerprinting does *not* work; rather, he merely offers artfully-crafted opinions about the absence of "standards" for evaluating whether or not it does.  *E.g.*, Cromarty Expert Report, Platzer Decl. Ex. 2, at 21, ¶¶

10

105, 121, 124.  This testimony is not helpful to resolving whether Hotfile had "control" for legal purposes.  The relevant question is the service provider's ability to "stop *or limit*" the infringement.  *Grokster*, 545 U.S. at 930 (emphasis added).  Thus, the only relevant question is whether automated content identification software actually identifies copyrighted works embodied in digital files in practice – a point on which Cromarty is conspicuously silent and that he did not investigate for purposes of his report, making his testimony unhelpful to the jury.  *Compare* Foster Rebuttal Report, Platzer Ex. 6, ¶ 13 ("Whether or not a digital file embodies a certain audiovisual asset is a fact susceptible to empirical verification, and the accuracy of fingerprinting software that identifies particular digital files as embodying a particular audiovisual work is therefore susceptible to empirical verification as well.  The extensive commercial use of fingerprinting technologies indicates that real-world experience has reflected favorably upon the effectiveness and accuracy of the technology.").

Second, as to Hotfile's blameworthiness in failing to investigate or adopt fingerprinting technology earlier, Cromarty's opinion that a rational start-up would not invest in such technology is directly contrary to the Supreme Court's holding in *Grokster* that a failure to investigate such technologies is evidence of culpable intent.  Compare *Grokster*, 545 U.S. at 939 with Cromarty Expert Report, Platzer Ex. 2, at 26, ¶ 124 & Cromarty Decl., Platzer Ex. 2, ¶¶ 93-94.  And in any event, Dr. Cromarty's opinion that a rational startup would not invest in fingerprinting technology to prevent infringement due to its cost and unproven reliability is unhelpful to the jury because it is a *post-hoc* justification for Defendants' conduct that is contradicted by Hotfile's 30(b)(6) testimony.  Titov admitted that Defendants never even *considered* using fingerprinting technology to control infringement before this lawsuit:

> Q. Okay. Did Hotfile consider using video fingerprinting technology prior to the institution of this lawsuit?
>  MR. THOMPSON: Objection, vague.
> A. No, I don't think so.
> BY MR. FABRIZIO:
> Q. Did you have any discussions with your co-shareholders  about using any form of video fingerprinting?
> A. I don't recall any such discussion.
> Q. And, again, I'm talking about video fingerprinting technology, whether it's offered by Vobile or some other supplier, or even developed on your own, I'm speaking of the technology itself; do you understand that?
> A. Yes, I understand that.

11

> Q. So, with that clarification, did Hotfile consider deploying video fingerprinting technology in its system prior to the institution of this litigation?
> A. I don't remember any such discussion.
> Q. Did Hotfile consider using any form of content recognition technology in order to prevent copyrighted content from being uploaded to Hotfile prior to this litigation?
> MR. THOMPSON: Objection, vague, to some extent asked and answered.
> A. No, I don't remember anything like that.

Deposition of Anton Titov (Dec. 7, 2011), Platzer Decl. Ex. 9, at 508:25-509:23. Thus, Dr. Cromarty's speculation that a hypothetical startup might reasonably evaluate fingerprinting software and decline to use it to prevent infringement through its service (or that professional investors would so counsel) is unhelpful because this trial is about *Hotfile and Titov's* failure to use the software and the record shows that they never even considered using it to begin with.

## V.    DR. CROMARTY'S OPINIONS REGARDING TAKEDOWN NOTICE ACCURACY SHOULD BE EXCLUDED.

The Court should also preclude Dr. Cromarty from testifying about the accuracy of takedown notices on the Internet more generally. In his declaration submitted in opposition to Plaintiffs' motion for summary judgment, Dr. Cromarty testified about erroneous takedowns by copyright owners, including citing to a study based on reports regarding the rate of erroneous takedowns Google had received for its search service, and opines that such notices are very frequently inaccurate and sent in subjective bad faith by complainants. *See* Cromarty Decl., Platzer Ex. 2, ¶¶ 23, 104-06. Defendants' counsel has represented to Plaintiffs that they are reserving the right to have Cromarty testify on this topic before the jury. Platzer Decl. Exs. 12 & 13.

At the outset, Dr. Cromarty failed to opine on the accuracy of takedown notices in his expert report. Plaintiffs learned of Dr. Cromarty's views on the subject for the first time at summary judgment, and had no opportunity to question him on these views at his deposition. Because there is no justification for Defendants' failure to disclose this opinion timely (and Plaintiffs have been prejudiced by being deprived of the opportunity to depose Dr. Cromarty on it), it should be precluded under Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless").

12

Nor is such testimony helpful to the jury. Dr. Cromarty provides no reason to believe that the study he relies on, which deals with takedown notices received by Google, is in any way probative as to the accuracy of takedown notices received by Hotfile, rendering his opinion on the topic further irrelevant and inadmissible under the "helpfulness" prong of Rule 702 as well. The original purpose of Dr. Cromarty's testimony on this point – to defend Hotfile's practice of ignoring repeat takedown notices and not terminating user accounts based on them – has long passed given that the Court has found Hotfile's policy in this regard to be incompatible with its legal obligations under the DMCA. Indeed, it is difficult to see what function the testimony would serve other than to prejudice Plaintiffs by suggesting to the jury that copyright complainants who submit takedown notices (such as the Plaintiffs) often submit them in bad faith, further meriting exclusion under Rule 403.

More importantly, however, Cromarty lacks the qualifications to opine on this topic and applies no methodology the Court could use to assess the reliability of his testimony. Nothing in his background suggests that he has expertise in dealing with takedown notices online or in analyzing the methodology or reliability of the studies he appears to accept simply as fact. Indeed, Dr. Cromarty made no attempt to apply any scientific or technical expertise to his opinions on erroneous takedown rates – he merely cites a study that could be referenced by anyone. *Id.* ¶ 106. Dr. Cromarty does not claim to have reviewed takedown notices for accuracy in his profession or studied their accuracy in any academic or scientific sense. Nor has he provided any foundation to establish that he can vouch for a third-party study about the accuracy of takedown notices that would otherwise be hearsay. His expertise as a general "computing professional" is not sufficient to establish his qualifications for this testimony. Experts must be "qualified to testify competently regarding the matters [they] intend[] to address" in order for their testimony to be admissible, *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998), and require "specific experience or background with the topic in dispute," even if their qualifications are in a related field, *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) (affirming exclusion of testimony on particular chemical substance where chemistry expert had only worked with substance on "isolated projects"). This testimony, including his reliance on a third-party report not admitted into evidence in paragraph 106 of his declaration, should not be allowed at trial.

## CONCLUSION

For the reasons stated, the Court should preclude Defendants from offering Dr. Cromarty's testimony on the topics in his report and summary judgment declaration listed above.

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(a)(3), U.S. District Court for the Southern District of Florida, counsel for Plaintiffs have conferred with counsel for Defendants in a good-faith efforts to resolve the issues raised in this Motion without court action, but have been unable to do so.

Dated: October 28, 2013

Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 461-6880
Facsimile: (305) 461-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.

Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
David A. Handzo (*Pro Hac Vice*)
Steven B. Fabrizio (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 28th day of October, 2013, I caused to be served the following document on all counsel of record on the attached service list by means of the Court's CM/ECF system:

**Plaintiffs' Motion in Limine and Memorandum of Law to Preclude Defendants from Offering Certain Opinions of Dr. Andrew Cromarty at Trial**

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Karen L. Stetson
Karen L. Stetson

**SERVICE LIST**

**Disney Enterprises, Inc., et al. v. Hotfile orp. et al.
CASE NO. 11-C1V-20427-WILLIAMS-TURNOFF**

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

*Attorney for Defendants Hotfile Corp. and Anton Titov*

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116 Phone:617-426-0000

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201

*Attorney for Defendants Hotfile Corp. and Anton Titov*