UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

**HOTFILE CORPORATION AND ANTON TITOVS' DAUBERT MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF SCOTT ZEBRAK**

Pursuant to Federal Rule of Civil Procedure 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendants/ Counterclaimants HOTFILE CORPORATION and ANTON TITOV (hereinafter collectively referred to as "Hotfile"), by and through their undersigned counsel and respectfully move to

1

exclude the testimony, opinions, and attendant exhibits from Scott Zebrak that Plaintiffs will seek to introduce at trial and in support thereof states as follows.

## INTRODUCTION

Utilizing a clearly flawed methodology which has no basis or foundation (other than his own *ipse dixit* conclusion that the methodology is sound), Attorney Scott Zebrak – the former Vice-President, Litigation & Legal Affairs, at the Recording Industry Association of America (RIAA) and advocate for numerous copyright holders has offered his opinion (based on little more than surfing the internet), that certain files uploaded to the Hotfile website infringed the copyrights of others. Attorney Zebrak does not claim, in any way shape or form, that his methodology has been tested or subjected to peer review or publication. He does not claim that he (or anyone) knows his potential rate of error. There exist no standards to control his methodology and he has pointed to no evidence that it enjoys acceptance within the relevant scientific community. On its face, Attorney Zebrak's methodology can – and has – produced results that have no scientific (or other) value. Instead, they represent only the opinions of one lawyer surfing the internet, while employing assumptions and prejudices which necessarily lead to results which favor the Plaintiffs at the expense of a reliable or verifiable methodology.

## ARGUMENT

I.  Legal Standard

The admissibility of expert opinion testimony is governed by FED. R. EVID., Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Id,*

"In determining whether the expert's opinions are based on a scientifically reliable methodology, and not mere speculation or conjecture, the Court may consider such factors as: whether the methodology can be and has been tested; whether the methodology has been subjected to peer review and publication; the known or potential rate of error; the existence and maintenance of standards controlling the technique's operation; and the particular degree of acceptance within the relevant scientific community." *United States v. Falcon*, 245 F. Supp. 2d 1239, 1242 (S.D. Fla. 2003), *citing Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-595 (1993.

In assessing an expert's sources, methodology, and conclusions, *Daubert* requires the trial court to act as a "gatekeeper" to insure that speculative and unreliable opinions do not reach the jury. *Daubert,* 509 U.S. at 589 n.7. As the gatekeeper, the court must do "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93, 113 S.Ct. 2786. The Court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999).

In addition, the Court must examine closely the methodology utilized by the proposed expert.  Although it is true that "trained experts commonly extrapolate from existing data," "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court

3

may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (U.S. 1997). "It is insufficient for the expert to merely vouch for the reliability of his own methodology." *Id.*

Accordingly, the trial court should "exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.* 402 F.3d 1092, 1111 (11th Cir. 2005). Indeed, it is important that the court exclude such evidence precisely because "expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004).

Finally, in a situation such as the one here, where the expert's background and experience "identify him as a hired gun expert," the Court is permitted to "apply the Daubert factors with greater rigor." *Johnson v. Manitowoc Boom Trucks, Inc.,* 484 F.3d 426, 435 (6th Cir.2007).

II. Attorney Zebrak's Testimony and Report Must Be Excluded Because His Stated Methodology Meets None of the *Daubert* Factors.

According to Attorney Zebrak's expert report, his determination of whether a file was "confirmed infringing," "highly likely infringing," "non-infringing" or "unknowable" was based upon his – or his team's – research on the internet. A file was deemed "confirmed infringing" if it was "confirmed to be owned or controlled by a plaintiff or its affiliate and not authorized for free and unrestricted distribution on Hotfile." Zebrak report, ¶6. A file was deemed "highly likely infringing" if Attorney Zebrak (or his team) felt that it was "highly likely that the content was not authorized for free and unrestricted distribution on Hotfile… based on the evidence I reviewed, including publicly available evidence of commercial exploitation of the content by the owner and the lack of any indication of authorization for free and unrestricted distribution on

4

Hotfile." *Id.* It was deemed "non-infringing" if Attorney Zebrak (or his team) believed that the file was "confirmed or determined to be highly likely in the public domain, authorized for free and unrestricted distribution by its owner, or not a copyrighted work…." *Id.* The file was deemed to be "unknowable" if Attorney Zebrak (or his team) believed that the "file could not be identified, or its authorization status could not be determined in the time permitted to complete this project." *Id.* Other than these circular definitions, Attorney Zebrak's actual expert report contains no indication as to his methodology, whether his methodology could be or had been tested; whether the methodology had been subjected to peer review and publication; the known or potential rate of error; the existence and maintenance of standards controlling the technique's operation; or the particular degree of acceptance within the relevant scientific community.

Such lapses are not surprising. Attorney's Zebrak's methodology has not been tested, has not been subjected to peer review or publication, meets no standards, and is subject to a high degree of error given, among other things, Attorney Zebrak's own faulty assumptions.

    A. <u>Failure to Consider the Identity of the Uploader and Downloader</u>

As a preliminary matter, Attorney Zebrak did not consider or factor into his determinations the possibility that users utilized Hotfile for the perfectly legal and legitimate purpose of personal file storage. *See, generally, Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417 (U.S. 1984). Indeed, he testified that he simply assumed the opposite. *See, e.g.,* Zebrak Depo., Vol. 1, 90:4 ("[i]t's my understanding that's sort of the nature of how the Hotfile System is being used, to -- you know, for purposes of distribution, no -- not really self-storage"); *Id.*, Vol. 1, 107:5-9 ("So for every one of these files, I didn't do a separate analysis to document whether the uploader and downloader differed. It was -- it was a beginning assumption in my report that I applied throughout my report . . . ."). Attorney Zebrak had no

5

legitimate basis for reaching such a conclusion other than his own belief that, "if someone wants to use a site purely for personal storage, there's lots of other places one could go besides Hotfile." Zebrak Depo., Vol. 1, 131-132. Such an assumption calls into question *every* conclusion rendered by Attorney Zebrak – even those listed as "confirmed infringing" – because Attorney Zebrak had no basis to conclude that any particular upload of a file was not made by a person who had purchased a copy of the work in question and uploaded it for their own personal use. Attorney Zebrak's failure to even consider that Hotfile was used for personal storage renders his results questionable and inadmissible under *Daubert*.

        B.        <u>Failure to Consider Authorization By Copyright Owners</u>

Attorney Zebrak freely admitted that, with respect to works which he deemed to be "highly likely infringing," he did not feel the need (nor did he) attempt to contact the copyright owner to determine if the copyright owner had authorized storage, copying, or distribution through Hotfile. *See, e.g.,* Zebrak Depo., Vol. I, 204-205 (testifying that he did not contact copyright owners (other than the plaintiffs) because he did not believe it to be "necessary or even a feasible thing for me to attempt to do," concluding that such efforts were not necessary because he "wouldn't expect that to be any different than what I've already concluded here"); Vol. 2, 249:14-19 (testifying that if he had come to the conclusion that materials were highly likely infringing that he "had no need to speak to anyone at the site"). As this Court noted in its Summary Judgment Order, "It is well established that a lack of authorization is required to prove a claim of copyright infringement." Court Order at p. 35, *citing Morley Music Co. v. Café Cont'l, Inc.*, 777 F. Supp. 1579, 1582 (S.D. Fla. 1991). As this Court specifically concluded,

despite Attorney Zebrak's "expert opinion" that files were highly likely infringing, in reality, "there is no compelling evidence one way or the other establishing these files' copyright status."[1] Despite this wholesale lack of compelling evidence, Attorney Zebrak classified hundreds of files (indeed the majority of the files he examined) as highly likely infringing, based solely on his incorrect assumption that, if a work was being monetized anywhere on the internet, its posting to Hotfile had to be infringing.  Attorney Zebrak's failure to contact – or even attempt to contact – any of the copyright holders of the files which he nevertheless opined were "highly likely infringing" renders his conclusions meaningless and inadmissible under *Daubert*.

      C.      <u>Attorney Zebrak Did Not Have a Proper Basis for His Opinions</u>

Attorney Zebrak repeatedly testified during his deposition that he relied upon his own "experience" - an improper basis for expert opinion testimony - that certain general categories of files would likely be infringing.  *See*, *e.g.*, Zebrak Depo., Vol. 1, 205:7-13 ("[M]y experience and what I've looked into in these industries, including my follow-on research, have shown me that folks don't invest in content creation to see it be given away for free . . . ."); Vol. 2, 78:15-22 ("I'm not aware whether in that example if actually the distribution it was allowing was at the same time when that specific work was being sold, as opposed to some other work but -- of the band.  But you know, in my experience, that would be very much of a rare outlier in the music industry, if that in fact was the fact pattern.").

Attorney Zebrak's reliance upon this impermissible basis results in his "expert opinion" being nothing more than rank speculation.  *See* Vol. 1, 209:15-21 ("In my experience in the music industry, while languages and cultures and other things may vary, you know, there are

---

[1] Indeed, when confronted at his deposition with an affidavit by a copyright owner for a file that Attorney Zebrak improperly classified as highly likely infringing, Attorney Zebrak conceded that speaking with the actual copyright owners might indeed be important.  *See, e.g.,* Zebrak Depo., Vol. 2, 287:5-9 ("As I've mentioned several times, you apparently challenging my designation here makes me want to look further into it, along with, of course, you know this affidavit, I would want to speak with this person . . . .").

some constancies, including that -- that folks who make their career at -- at creating music that they're selling copies of are not at the same time displacing their livelihood by authorizing free and unrestricted distribution . . ."). In this regard, Attorney Zebrak's experience is not only an impermissible basis, but also either extremely limited or quite atypical given the prevalence of creative artists giving away for free works that they simultaneously commercialize for profit. *See* e.g., www.nytimes.com/2008/05/06/ arts/music/05cnd-nine.html describing free distribution of album by superstar rock band Nine Inch Nails which it simultaneously commercialized; 42 Fallacies by Michael LaBossiere, which is offered for $0.99 on Amazon.com at www.amazon.com/42-Fallaciesebook/dp/B004ASOS2O/ref=pd_sim_kstore_3?ie=UTF8&m= AG56TWVU5XWC2 and for free from his website at blog.talkingphilosophy.com/?p=2139; Free Culture by Larry Lessig, which is offered for purchase on Amazon and download from his website.

    D.    Attorney Zebrak Assumes that Simply Because a Video Looks "Professional" it is Highly Likely Infringing

Attorney Zebrak testified that that he designated at least one file as being highly likely infringing simply because of its production value. *See* Zebrak Depo., Vol. 2, 230:14-19 ("This would have been designated as highly likely infringing on the basis that it was a professionally created video, not -- not sort of an amateur work uploaded by an individual, in which case I would have presumed it to be authorized.").

    III.    Attorney Zebrak's Testimony and Report Must Be Excluded Because He Failed To Provide or Disclose All of the Information Upon Which He Relied In Concluding That Files Were Infringing.

Pursuant to Fed. R. Civ. P. 26(2)(a), disclosure of an expert witness must be accompanied by a report signed by the expert witness which includes, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them" and all "data and other

8

information considered by the witness in forming them." A party that fails to disclose this information without justification is not permitted to introduce the expert opinion at trial. *See* Fed. R. Civ. P. 37. *See also Flebotte v. Dow Jones & Co., Inc.*, 2001 WL 35988081, *2 (D. Mass 2001)("Pursuant to Rule 26(a)(2)(B), the plaintiffs are required to submit a written report containing a complete statement of all opinions to be expressed and the basis and reasons therefor. However, Fleming's report fails to identify the DSM, AXIS, Beck's Inventory or any other diagnostic tools as the basis for the proposed opinion, and rather, merely indicates that Fleming formulated his opinion based on his conversations with Miklasiewicz during treatment sessions. Given that the plaintiffs fail to set forth any justification for their failure to comply with Fed.R.Civ.P. 26(a)(2)(B), Fleming's proposed opinion testimony may not be presented to the jury)(internal quotations omitted).

In this case, Plaintiff's expert witnesses, Attorney Scott Zebrak, has utterly failed to comply with his obligation to disclose all data and information considered by him in forming his opinion. Indeed, at his deposition, Attorney Zebrak freely admitted that he had failed to include, or even identify, voluminous documents and other information that he not only considered, but relied upon, in reaching his opinions. More specifically, Attorney Zebrak testified at his deposition that he failed to include or otherwise identify in his expert report:

- Voluminous web pages (*See* Vol. 1, 101:9-12: "These links and the web pages accessed from these links were among the sort of overall quilt of information I would look at when I considered each of these"; and 104:14-16: "I certainly looked at more web pages than are reflected in the URL column and in the notes column.");

- DMCA takedown notices (*See* Vol. 1, 175:7-10);

- Information found on the United States Copyright Office's website (See Vol. 1, 202:1-8);

- Copyright license agreements concerning certain subject works (*See* Vol. 1, 213:16-25);

- Google search results (See Vol. 2, 53:17-54:22).

Attorney Zebrak further testified that he spoke to unnamed representatives from various industries to "test his understanding of how those industries operate in terms of creation of works and how they are lawfully versus unlawfully distributed. *See* Vol. 2, 66:22-67:6: ("I of course brought an understanding of these industries to my work, but then did further field work, if you will, to sort of test my understandings by speaking to representatives of those industries to confirm my understanding of how those industries operate . . . ."). Attorney Zebrak would not, however, identify those representatives, nor did he provide specifics of what those individuals told him.

Additionally, Attorney Zebrak's poor documentation of his so-called "methods" left him unable to reproduce his own results. *See*, Zebrak Depo., Vol. 1, 234:19-235:18 (stating, with respect to explaining why he concluded a certain file to be highly likely infringing that "I don't recall exactly why I have these two links here" and "it's really hard sort of just sitting here now to -- to recreate it all").

Attorney Zebrak plainly admits that his notes don't contain "important" information he found while he was reviewing each of the files. *Id.*, Vol. 2, 228:12-14 ("Well, the notes section clearly did not include information that I would have found important as I reviewed the file, for example.")

Because Attorney Zebrak failed to comply with the requirements of Fed. R. Civ. P. 26(2)(a), his report and testimony must be excluded.

## **CONCLUSION**

The expert testimony and documentary/demonstrative exhibits proffered Scott Zebrak wholly fail to establish a sound and reliable basis for the conclusions and opinions rendered that particular files were confirmed infringing or highly likely infringing. As such, his testimony must be excluded in its entirety.

**WHEREFORE** Defendant/Counterclaimant respectfully requests that this Court enter an Order Excluding the Opinion, Testimony and Supporting Exhibits of Scott Zebrak and granting such further relief as it deems just and proper.

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that prior to filing this Motion, counsel for Defendants, Evan Fray-Witzer, Esq., conferred with counsel for Plaintiffs, Luke C. Platzer, Esq., in a good faith effort to resolve this motion by agreement, but was unable to do so.

/s/ Evan Fray-Witzer
Evan Fray-Witzer

**Respectfully submitted:**

/s/ Valentin Gurvits
Valentin D. Gurvits (# 643572 - *pro hac vice*)
Matthew Shayefar (# 685927 - *pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Telephone: (617) 928-1804
Facsimile: (617) 928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ BRADY J. COBB
BRADY J. COBB, ESQUIRE
Florida Bar No. 031018
COBB EDDY MIJARES, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone (954) 527-4111
Facsimile  (954) 900-5507
bcobb@cemlaw.net

/s/ Evan Fray-Witzer
Evan Fray-Witzer (# 564349 - *pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Telephone: (617) 426-0000
Facsimile: (617) 423-4855
Evan@CFWlegal.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the attached service list this 28th day of October, 2013.

/s/ Brady J. Cobb
Brady J. Cobb

**SERVICE LIST:**
CASE NO: 11-20427-CIV-WILLIAMS

*Counsel for Plaintiffs:*

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
sfabrizio@jenner.com
Luke C. Platzer (*Pro Hac Vice*)
lplatzer@jenner.com
David A. Handzo (*Pro Hac Vice*)
dhandzo@jenner.com
1099 New York Ave., N.W., Suite 900
Washington, DC 20001
Phone: 202.639.6000
Fax: 202.639.6066

Karen R. Thorland, Esq. (*Pro Hac Vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA  91403-5885
Phone: 818.935.5812

GRAY-ROBINSON, P.A.
Karen L. Stetson
karen.stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305.416.6880
Fax: 305.416.6887

*Counsel for Defendants:*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116 Phone:617-426-0000

COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201