FILED by _CHC_ D.C.

OCT 2 8 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants.*

_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*

_____/

**Sealed**

**WARNER BROS. ENTERTAINMENT INC.'S MOTION IN LIMINE AND
MEMORANDUM OF LAW TO EXCLUDE EVIDENCE OF WARNER'S AUGUST 2011
AUDITS OF ITS ANTI-PIRACY SYSTEM FOR
THE PURPOSE OF SHOWING WARNER'S CULPABILITY**


**[HIGHLY CONFIDENTIAL]**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND AND SUMMARY OF ARGUMENT ........................................................1

ARGUMENT............................................................................................................................2

I.     EVIDENCE OF ERRORS DISCOVERED BY WARNER'S AUDITS AND
       REMEDIAL MEASURES TAKEN IN RESPONSE ARE NOT RELEVANT TO
       WARNER'S STATE OF MIND AT THE TIME IT CAUSED THE FILES TO BE
       REMOVED.................................................................................................................2

II.    EVIDENCE OF WARNER'S INTERNAL INVESTIGATION RISKS CONFUSING
       THE JURY AND PREJUDICING WARNER. ..........................................................4

III.   WARNER'S INVESTIGATION AND IMPROVEMENT OF ITS SYSTEM IS A
       SUBSEQUENT REMEDIAL MEASURE INADMISSIBLE TO PROVE LIABILITY
       UNDER RULE 407 .....................................................................................................5

CONCLUSION.........................................................................................................................7

i

## TABLE OF AUTHORITIES

CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508, 2013 WL
 1155420 (S.D.N.Y. Mar. 20, 2013) .........................................................................4

*Cabell v. Zimmerman*, 09 civ. 10134 (CM), 2010 WL 996007 (S.D.N.Y. Mar. 12, 2010)............3

*Cummings v. HPG International Inc.*, 244 F.3d 16 (1st Cir. 2001)...................................4

*Dudnikov v. MGA Entertainment, Inc.*, 410 F. Supp. 2d 1010 (D. Colo. 2005)............................3

*DSC National Properties, LLC v. Johnson (In re Johnson)*, 477 B.R. 156 (B.A.P. 10th
 Cir. 2012) ....................................................................................................3

*Food Holdings Limited v. Bank of America Corp. (In re Parmalat Securities Litigation)*,
 684 F. Supp.2d 453 (S.D.N.Y. 2010), *aff'd*, 423 F. App'x 73 (2d Cir. 2011).........................4

*Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364 (7th Cir. 1993)..........................4

*NPS, LLC v. Ambac Assurance Corp.*, 706 F. Supp.2d 162 (D. Mass. 2010) ..............................4

*Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004)… ....................3

*Third Educational Group, Inc. v. Phelps*, 675 F. Supp. 2d 916 (E.D. Wis. 2009) ........................3

*UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055 (C.D. Cal. 2008), *aff'd*, 628
 F.3d 1175 (9th Cir. 2011) ....................................................................................3

*United States v. Radtke*, 415 F.3d 826 (8th Cir. 2005) ...........................................4

*Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560 (11th Cir. 1991) ......................6

STATUTES

17 U.S.C. § 512(f)....................................................................................1, 3, 4, 5

OTHER AUTHORITIES

Fed. R. Evid. 402 ...........................................................................................3

Fed. R. Evid. 407 ...........................................................................................6

## INTRODUCTION

Hotfile's Counterclaim against plaintiff Warner Bros. Entertainment Inc. ("Warner") under 17 U.S.C. § 512(f) requires it to prove that Warner "knowingly materially misrepresent[ed]," *at the time it caused each file at issue in the Counterclaim to be removed*, that each file was not actually infringing. *See id.* Hotfile's trial exhibit list, however, includes extensive evidence that Warner discovered inaccuracies in its takedown system (and took measures to prevent those errors from recurring) *after* Warner sent the notices at issue. Moreover, Hotfile has made clear that it intends to use such evidence of Warner's later-acquired knowledge to prove that Warner had the requisite knowledge to establish liability under Section 512(f)'s "knowingly materially misrepresent[ation]" standard. Such evidence is irrelevant to the issue of Warner's subjective belief at the time it caused the files in suit to be removed, and allowing Hotfile to introduce it for that purpose would confuse the jury and prejudice Warner. Moreover, Hotfile's attempt to use evidence of Warner's internal investigation of its antipiracy system after it was sued by Hotfile (and the corrective measures Warner took) as evidence of Warner's liability runs headlong into Federal Rule of Evidence 407, which prohibits use of a party's "subsequent remedial measures" for precisely the purpose for which Hotfile wants to use it. Hotfile should be precluded under Rules 402, 403, and 407 from making any such argument.

## BACKGROUND AND SUMMARY OF ARGUMENT

Hotfile's Second Amended Counterclaim limits its Counterclaim to the "definitive list" of the specific files identified in Exhibits A-D thereof, and no others. Joint Motion, DE 151; Order Granting Joint Motion, DE 155; *see also* Counterclaim ¶ 40. Although many of these takedown notices are no longer at issue following the Court's summary judgment Order, Hotfile's own exhibits to the Counterclaim show that Warner issued all of the takedown notices originally listed in the Counterclaim between October 6, 2009 and August 4, 2011, with nearly all the them issued in February 2011. *See* Second Amended Answer, Affirmative Defenses, and Counterclaim of Defendant Hotfile Corporation to Plaintiffs' Complaint, Exs. A-D, DE 161.[1]

Following Hotfile's Counterclaim, Warner in August 2011 investigated the source of the apparent errors pointed to by Hotfile to identify their causes and prevent their recurrence. Under

---

[1] Of the 890 files originally part of Hotfile's Counterclaim, only 56 were deleted after February 2011, and only six were deleted between August 1 and August 4, 2011. *See id.*

one of these audit processes, Warner began manually reviewing a subset of the links identified as infringing by its antipiracy system.[2]  *See* Excerpts of Transcript of Deposition of David Kaplan, Platzer Decl. Ex. 20 ("Kaplan Tr.") at 112:24-113:18, 115:3-19.  Under another audit process (also beginning in August 2011), Warner disabled its system entirely and began reviewing each algorithm used to identify infringing files to determine which were causing errors and to take steps to eliminate them.  *See id.* at 144:22-146:15.

In its exhibit list filed as part of the Joint Pretrial Stipulation as well as in deposition designations exchanged among the parties, Hotfile has now sought to introduce evidence of Warner's August 2011 internal investigation and the errors (and potential sources thereof) Warner discovered and corrected as part of that investigation.[3]  When counsel discussed this evidence at the meet-and-confer of counsel regarding the joint pretrial stipulation, Hotfile was unwilling to forgo using this evidence to argue that Warner had "knowingly materially misrepresent[ed]" that the files in the Counterclaim were infringing, notwithstanding Warner's objection that any knowledge Warner gained through its August 2011 audit of its system postdated the relevant notices, the last of which was issued on August 4, 2011.  Warner now moves in limine to preclude Hotfile from introducing any evidence of its August 2011 audits for purposes of establishing Warner's Section 512(f) liability.[4]

## ARGUMENT

I.   **EVIDENCE OF ERRORS DISCOVERED BY WARNER'S AUDITS AND REMEDIAL MEASURES TAKEN IN RESPONSE ARE NOT RELEVANT TO WARNER'S STATE OF MIND AT THE TIME IT CAUSED THE FILES TO BE REMOVED.**

Section 512(f) of the DMCA creates a cause of action against anyone who, in a DMCA

---

[2] The facts relevant to Warner's anti-piracy system were more fully laid out in Warner Bros. Entertainment, Inc.'s Motion for Summary Judgment and Memorandum of Law in Support of Summary Judgment.  *See* DE 301, at 3-7.  Here, Warner discusses only the facts directly relevant to resolving this motion.

[3] Warner has indicated its objections all such exhibits with the objection "Audit."  *See* Defendants' Witness List, Ex. C to Joint Pretrial Stipulation, DE 568-3.

[4] Hotfile has argued that some of the evidence to which Warner has lodged its "Audit" objection might be admissible for purposes of the statutory damages calculation on Plaintiffs' claim against Defendants, such as the difficulty of identifying infringing files based on metadata associated with the file (e.g. the filename).  Warner reserves for trial any objections to the use of the evidence for that alternate purpose.

notice, "knowingly materially misrepresents ... that material or activity is infringing." 17 U.S.C. § 512(f). This is a "subjective good faith standard" and imposes liability "only for knowing misrepresentations" regarding infringement. *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004). Courts have consistently held that liability attaches under Section 512(f) only upon a showing of *actual, subjective* knowledge of a material misrepresentation in a takedown notice—that the falsehood was intentional. Subsequent to *Rossi*, every court that has examined the standard for knowledge under Section 512(f) has followed the *Rossi* rationale to require actual, subjective knowledge. *See, e.g., Cabell v. Zimmerman*, 09 civ. 10134 (CM), 2010 WL 996007, at *4 (S.D.N.Y. Mar. 12, 2010) ("as a prerequisite to liability under section 512(f), a defendant must have actual knowledge that it is making a misrepresentation of fact"); *Third Educ. Grp., Inc. v. Phelps*, 675 F. Supp. 2d 916, 927 (E.D. Wis. 2009) (requiring "a demonstration that the actor had some actual knowledge of the misrepresentation" in the takedown notice); *UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055, 1065 (C.D. Cal. 2008) (512(f) liability attaches "only if the owner did not possess a subjective good faith belief that its copyright was being infringed"), *aff'd* 628 F.3d 1175 (9th Cir. 2011); *Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005) ("as long as MGA acted in good faith belief that infringement was occurring, there is no cause of action under § 512(f)").

Thus, the relevant issue under § 512(f) is what Warner actually, subjectively knew *at the time it sent a takedown notice*. That Warner learned, *after the fact*, that some of the notices it had previously sent out were sent in error and took steps to correct those errors is simply irrelevant to the issue of Warner's liability and may not be used for that purpose. *See* Fed. R. Evid. 402. In similar legal contexts where the relevant issue is a party's state of mind in making a particular representation or taking a particular action, courts have held that the relevant inquiry is into the party's state of mind *at the time* the representation was made or the action taken, not after. *See, e.g., DSC Nat'l Props. LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 170 (B.A.P. 10th Cir. 2012) ("the touchstone to a finding of intent to deceive is the speaker's actual subjective state of mind— i.e., the speaker's actual knowledge and belief—*at the time the misrepresentation is made*." (emphasis added)); *Cummings v. HPG Int'l Inc.*, 244 F.3d 16, 23 (1st Cir. 2001) (holding that statements of opinion could not give rise to action for deceit absent evidence that manufacturer knew that its statements were false at the time they were made); *NPS,*

3

*LLC v. Ambac Assur. Corp.*, 706 F. Supp. 2d 162, 171 (D. Mass. 2010) (holding that statements of opinion are only actionable if the statements are "inconsistent with facts known at the time they are made." (internal quotation marks omitted)). Thus, courts have repeatedly rejected evidence of after-acquired knowledge to show that a party's mental state at the time it took an action. *See, e.g., Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508, 2013 WL 1155420, at *7 (S.D.N.Y. Mar. 20, 2013) ("evidence of what defendants realized in hindsight is not relevant to proving fraud."); *Food Holdings Ltd. v. Bank of Am. Corp. (In re Parmalat Securities Litigation)*, 684 F. Supp. 2d 453, 475 (S.D.N.Y. 2010) (holding that a fraud claim failed where there was no evidence that the defendant "connected the dots that plaintiffs now connect," and thus no evidence that the defendant intended its statements to mislead), *aff'd* 423 F. App'x 73 (2d Cir. 2011); *see also United States v. Radtke*, 415 F.3d 826, 840-41 (8th Cir. 2005) (stating that evidence that a defendant convicted of tax fraud filed an amended return after the indictment was of "minimal probative value as to his state of mind at the time of the alleged crime"); *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 369-70 (7th Cir. 1993) (in a retaliatory termination case, holding that an employee's falsification of his education qualifications could not justify finding that that termination was justified, as the employer was not aware of the falsification until after the termination).

Any knowledge of errors Warner acquired *after* it issued the notices at issue in the Counterclaim is irrelevant to whether any errors in the Counterclaim notices were "knowing[]" misrepresentations at the time those errors were made. 17 U.S.C. § 512(f). Thus, such evidence should be excluded under Rule 402.

## II.   EVIDENCE OF WARNER'S INTERNAL INVESTIGATION RISKS CONFUSING THE JURY AND PREJUDICING WARNER.

Even if Hotfile's evidence of the errors Warner discovered in the audit processes and the remedial measures Warner took as a result had any probative value (which they do not), such probative value would be heavily outweighed by its tendency to confuse the jury. Allowing Hotfile to introduce this evidence would distract the jury from the key issue in the Counterclaim, namely, whether Hotfile can prove that any errors in the Counterclaim notices were "knowing[]" misrepresentations at the time Warner made them. 17 U.S.C. § 512(f).

It is clear that Hotfile intends to confuse the jury by conflating knowledge that Warner acquired after the fact with what Warner knew when it sent the actual notices. Indeed, Hotfile

repeatedly engaged in precisely such conflation in its summary judgment filings. For instance, in its Counter-Statement of Facts in opposition to Warner's motion for summary judgment, *see* DE 351, Hotfile asserted that "Warner had subjective, actual knowledge that its system was incorrectly deleting 10% of the files it was locating." *See id.* at 2.[5] But Hotfile's support for that assertion was *an August 15, 2011* email in which a Warner representative engaged in Warner's August 2011 audit expressed the erroneous belief that the sample he was reviewing on that day showed an error rate of "almost 10%." *See* Thompson Exhibit 8, DE 354-9 (which is now Hotfile's Exhibit 163 for trial). Hotfile is thus using evidence of what Warner employees learned and discovered *after* Warner shut down its antipiracy system entirely for an audit in order to construct an argument about what Warner knew *months earlier* when Warner actually sent the notices on which Hotfile is suing.

The potential for jury confusion here is manifest. There is a substantial risk that the jury will see evidence of Warner's efforts to investigate the claims in Hotfile's lawsuit and correct any sources of errors as evidence that Warner "knew" about potential inaccuracies in its system at the relevant times, and improperly attribute such knowledge to Warner months earlier. Moreover, because Hotfile has selectively cherry-picked the instances in which Warner located and corrected errors as part of its August 2011 audit (as opposed to the many instances in which Warner reviewed elements of its system and found them to be working accurately and as intended), there is further risk that the jury will misread the evidence as "proving" that Warner's system was error-prone and seek to punish Warner for it. Given that Hotfile's summary judgment filings exhibited the exact same confusion and impermissible attribution of knowledge, it is highly likely that such jury confusion and attendant prejudice to Warner will arise here. Such evidence and argument should thus be excluded under Rule 403.

## III.   WARNER'S INVESTIGATION AND IMPROVEMENT OF ITS SYSTEM IS A SUBSEQUENT REMEDIAL MEASURE INADMISSIBLE TO PROVE LIABILITY UNDER RULE 407.

Finally, evidence of the corrective measures Warner took after investigating the allegations in Hotfile's counterclaim is also inadmissible for an entirely independent reason: it represents the paradigmatic case in which corrective measures are inadmissible to prove liability under Rule 407.

---

[5] This estimate was also incorrect as to the sample the representatives were reviewing that day, as the remainder of the email chain demonstrates. *See* D-163.

Federal Rule of Evidence 407 states that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction."  As the Eleventh Circuit has recognized, Rule 407 has two underlying justifications.  *See Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1569 n.19 (11th Cir. 1991).  First, such evidence has low probative value and may have significant prejudicial effects for the reasons discussed above—measures taken *after* allegedly culpable conduct have questionable relevance to a party's state of mind *during* such conduct, and are likely to distract the jury from the real issue.  *See id.* ("Although such conduct could be taken as acknowledgment that the prior condition was capable of being involved in a harmful event, it gave weak support to the inference of lack of due care." (quoting 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 407[2], at 407-10 (1990)).  Second, the "common sense explanation for the rule is simply that people who take post-accident safety measures are doing exactly what good citizens should do.  In these circumstances, so long as the relevance of the activity is not great, courts do not wish to sanction procedures which appear to punish praiseworthy behavior." *Id.* (quoting Herpert & Saltzburg, A Modern Approach to Evidence 187-89 (1977) (internal quotation marks omitted)).

Warner's investigation of the Counterclaim allegations and steps to improve its antipiracy system in response are plainly "measures … that would have made an earlier injury or harm less likely to occur," and Hotfile's intended use of evidence of those measures is to prove "culpable conduct" and "a defect in a product [i.e., Warner's antipiracy system] or its design." Fed. R. Evid. 407.  Both policy rationales behind Rule 407 – in addition to the plain text of the rule itself – squarely apply here.  First, as explained in Parts I and II *supra*, the probative value of the evidence is minimal (if not nonexistent) and the potential for jury confusion is substantial.  Second, allowing Hotfile to make this argument would punish Warner for seeking to improve its antipiracy system by turning those very efforts into arguments for holding Warner liable, and could disincentivize other potential future Section 512(f) defendants from taking steps to improve their systems for identifying infringing files and sending takedown notices.  Rule 407 was created with this exact situation in mind, and independently requires preclusion here.

**CONCLUSION**

For the reasons stated, Warner respectfully requests that the Court preclude any argument or evidence that Warner's August 2011 audit of its system evidences liability under Section 512(f) of the DMCA.

DATED:  October 28, 2013

Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: (305) 416-6880
Facsimile:  (305) 416-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax:  (818) 285-4403

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
David A. Handzo (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile:  (202) 639-6066

*Attorneys for Warner Bros. Entertainment Inc.*

7

**CERTIFICATE OF GOOD FAITH CONFERENCE**

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(a)(3), U.S. District Court for the Southern District of Florida, counsel for Plaintiffs have conferred with counsel for Defendants in a good-faith efforts to resolve the issues raised in this Motion without court action, but have been unable to do so.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 28th day of October, 2013, I caused to be served the following document on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

**Warner Bros. Entertainment Inc.'s Motion in Limine and Memorandum of Law to Exclude Evidence of Warner's August 2011 Audits of Its Anti-Piracy System for the Purpose of Showing Warner's Culpability**

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Karen L. Stetson
Karen L. Stetson

## SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile orp. et al.
CASE NO. 11-C1V-20427-WILLIAMS-TURNOFF**


BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

*Attorney for Defendants Hotfile Corp. and
Anton Titov*

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116 Phone:617-426-0000

*Attorneys for Defendants Hotfile Corp. and
Anton Titov*


COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201

*Attorney for Defendants Hotfile Corp. and
Anton Titov*

10