# EXHIBIT 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, COLUMBIA PICTURES INDUSTRIES INC., and WARNER BROS. ENTERTAINMENT INC., <br><br>　　　　　Plaintiff, <br><br>　v. <br><br>HOTFILE CORP., Anton Titov, and DOES 1-10, <br><br>　　　　　Defendant; | Civil Action No. 1:11-cv-20427 |
| HOTFILE CORP., Anton Titov, and DOES 1-10, <br><br>　　　　　Counterplaintiff, <br><br>　v. <br><br>DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, COLUMBIA PICTURES INDUSTRIES INC., and WARNER BROS. ENTERTAINMENT INC., <br><br>　　　　　Counterdefendant. | |

**DECLARATION OF MATTHEW R. LYNDE
IN SUPPORT OF HOTFILE OPPOSITION TO WARNER BROS. ENTERTAINMENT'S
MOTION FOR SUMMARY JUDGMENT**
*HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS EYES ONLY
SUBJECT TO PROTECTIVE ORDER*

*HIGHLY CONFIDENTIAL -- OUTSIDE COUNSELS' EYES ONLY*

I, Matthew R. Lynde, submit this declaration in the captioned matter, along with the bases and reasons in support of the opinions expressed in this declaration. I am prepared to testify about the subject matter of this declaration in the present litigation if called upon to do so.

1. I have reviewed Warner Bros. Entertainment Inc.'s Motion for Summary Judgment in the captioned matter. In particular, among other issues, Warner claims that its misrepresentation and misuse of Hotfile's anti-piracy tool did not injure Hotfile. I provided an expert report in November 2011 addressing the injury to Hotfile caused by Warner. I have been asked by counsel for Hotfile to review the Declaration of Scott A. Zebrak, one of Warner's experts, as well as additional data relevant to issues raised by Warner's Motion and Mr. Zebrak's declaration, and to comment on the analysis in both.

2. In its Counterclaim, Hotfile identified over 800 files as wrongful takedowns by Warner. Warner's expert, Mr. Zebrak, concedes that at least 99 of these files are in fact wrongful takedowns of files for which Warner does not own the copyright, and in his view, are not likely to infringe anyone's copyright.[1] I have reviewed the data provided by Hotfile for these files. Before they were wrongfully taken down, these 99 files had resulted in 51 premium account subscriptions.[2] That is, a user chose to sign up for premium account subscription in the process of downloading one of those particular files.[3] These 51 premium subscriptions generated $1,154 in premium subscription revenues for Hotfile.[4] However, once these files had been wrongfully removed due to Warner, they could no longer generate premium subscription

---

[1] Declaration of Scott A. Zebrak In Support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment on Hotfile Corp.'s Counterclaims (hereafter "Zebrak Declaration"), 2/9/2012 ¶¶ 17-20.
[2] Declaration of Anton Titov in Support of Defendant's Opposition to Plaintiff Warner Bros. motion for Summary Judgment 2/27/2012, (hereafter "Titov Declaration"), ¶6.
[3] Hotfile offers three types of premium subscriptions: 1 month premium subscription for $9, 6 months premium subscription for $35, and 1 year premium subscription for $55. http://hotfile.com/premium.html
[4] Titov Declaration, ¶6."This only counts the first premium subscription of a particular user. If this user subsequently renewed her premium subscription, that would generate additional revenues for Hotfile, but those revenues are not included in these figures.

revenues for Hotfile because the Hotfile system automatically blocks uploading of the same file or any other copy of the file with the same hash value.[5] These files had generated premium subscription revenue for Hotfile prior to their removal. There is a reasonable probability that they would have continued to generate premium subscriptions had they not been erroneously removed. Hence, removal of such files likely resulted in economic harm to Hotfile as described in my expert report.

3. I understand that the Hotfile's expert, Professor James Boyle, reviewed Mr. Zebrak's expert report and found a number of errors in classifying files as infringing materials.[6] As a result, Professor Boyle finds that Mr. Zebrak's analysis "substantially underestimate[s] the amount of Non-infringing work" among Warner's wrongful takedowns.[7] If the fact finder establishes that Mr. Zebrak's analysis is flawed, and the files Mr. Zebrak identified as "highly likely infringing" were in fact non-infringing, then the economic harm to Hotfile would likely be even higher than described in previous paragraph. Hence, removal of such files likely resulted in economic harm to Hotfile as described in my expert report.

4. However, these are not the only sources of injury to Hotfile from removal of these files. Specifically, Mr. Zebrak identifies six users that were not premium users at the time of termination and states that four out of six users uploaded to Hotfile other files that he identified as being highly likely infringing. Hence, Mr. Zebrak finds no copyright infringement amongst the files uploaded by two of these six users. Yet, these two users were wrongfully terminated because of Warner's wrongful takedowns. These two users did not pay for premium accounts themselves. However, the files that these two users uploaded resulted in 11 and 83 premium

---

[5] Counterclaim, ¶14.
[6] Rebuttal Report of Professor James Boyle (hereafter "Boyle Rebuttal Report"), 1/6/2012, ¶¶34-54.
[7] Boyle Rebuttal Report, ¶53.

account subscriptions respectively.[8] Together these two users generated $1,636 in premium subscription revenues for Hotfile prior to removal.[9] There is a reasonable probability that the files uploaded by these users would have continued to generate premium subscriptions had they not been erroneously terminated. Hence, Warner's wrongful takedowns and resulting wrongful termination of these two users, likely resulted in economic harm to Hotfile

5. Because Professor Boyle found errors in Mr. Zebrak analysis of copyright infringing content, I understand that it is possible that other of the users, or even none of these six users, uploaded copyright infringing work. On this basis, there is a reasonable probability that the files uploaded by these other users would have continued to generate premium subscriptions had they not been erroneously terminated. Hence, Warner's wrongful takedowns and resulting wrongful termination of these other users would likely have resulted in further economic harm to Hotfile in addition to that related to the two users described in the previous paragraph.

6. Moreover, some non-infringing files can have a large number of downloads and generate many premium account subscriptions. For example, files identified as non-infringing by Warner's expert, Mr. Zebrak, have been downloaded 175,066 times and generated premium subscriptions revenues as described above.[10] Similarly, Warner's wrongful takedowns included deletion of an open source software program called JDownloader. I understand that user with a userid 274657 is the creator and owner of JDownloader.[11] All the files uploaded to Hotfile.com by this user have been downloaded at least 4,866,062 times and resulted in 7,009 premium account subscriptions and $137,898 subscription revenues.[12] These data suggest that the

---

[8] Titov Declaration, ¶10.
[9] Titov Declaration, ¶10.
[10] Titov Declaration, ¶5.
[11] Declaration of Roderick Thompson In Support Of Hotfile's Opposition To Summary Judgment, 2/27/12, Ex. 13.
[12] Titov Declaration, ¶10.

*HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY*   3

wrongful takedown of files or termination of users through wrongful takedown notices can potentially result in a large loss of revenue to Hotfile. As I described in my expert report, wrongful takedowns of files and/or termination of users of such nature harms Hotfile.

7. I understand that Warner has challenged my prior opinion as based on an allegedly unfounded assumption that the deletion of the files in Hotfile's counterclaim (or the users associated with those files) contributed to Hotfile's general loss of revenue in 2011.[13] Based on the above cited data regarding the number of downloads and premium user conversions for files listed in Hotfile's counterclaim that Warner deleted without authorization, I have further confirmed my belief that Hotfile has likely suffered economic harm due to Warner's improper file deletions.

8. Hotfile offers an affiliate program where users who upload files to *hotfile.com* may receive payments from Hotfile based on the number of files placed on *hotfile.com* and how often those files are downloaded as well as the number of users who purchased premium access to download these files.[14] This provides an incentive to users such as JDownloader or the two users described in paragraph 6 that, according to Warner's own expert, upload files that do not infringe copyrights, to upload their files to Hotfile. Indeed, as Professor Boyle points out in his two expert reports, there are many noninfringing files on Hotfile. As I have described above, such content generates premium subscriptions for Hotfile and increases Hotfile's revenues. As these examples demonstrate, such a business practice functions well without any copyright infringement. It appears that the Warner and other Studios chose to mischaracterize my description of this business practice in their joint motion for summary judgment.[15] While I said

---

[13] Warner's Motion and Memorandum In Support Of Summary Judgment, 2/10/12, at 12-14.
[14] http://hotfile.com/affiliate.html.
[15] Studios Motion for Summary Judgment, p. 1.

*HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY*

4

that the practice would encourage the uploading of popular files, I did *not* say popular files would be infringing.

Date:  February 27, 2012

*[signature]*
Matthew R. Lynde, Ph.D.

HIGHLY CONFIDENTIAL -- OUTSIDE COUNSELS' EYES ONLY

5