UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE
TO PRECLUDE CERTAIN OPINIONS OF DR. ANDREW CROMARTY AT TRIAL**

Having ignored vast swaths of Dr. Andrew Cromarty's qualifications, Plaintiffs seek to limit the opinions of Defendants' technical and media expert simply because Plaintiffs dislike Dr. Cromarty's opinions. Dr. Cromarty has over 20 years of business experience in the technology and internet fields, with particularized specialization in multimedia content distribution and delivery. His opinions are based on his prodigious knowledge, experience and

1

education, as applied to indisputable facts. For the reasons set forth below, Dr. Cromarty should not be precluded from offering his expert opinion and the Plaintiffs' motion should be denied.

## Argument

### I. Dr. Cromarty's Testimony Regarding Hotfile's Ability to Control Infringement Speaks Directly to Hotfile's Subjective Belief Regarding its Ability to Control Infringement, and Therefore to the Operative Question of Willful Infringement

Two of the central issues to Plaintiffs' vicarious infringement claim against Defendants are (a) Defendants' "blameworthiness" and (b) whether Defendants have willfully engaged in vicarious infringement. See Joint Pretrial Stipulation, DE 568, pp. 3 and 9 (Public Redacted Version). Clearly relevant to these issues are the efforts that Defendants undertook to curb alleged infringement on the Hotfile service, including the implementation of technical measures like the "digital fingerprinting" software referenced by Dr. Cromarty in his Expert Report and Declarations.

Specifically, Plaintiffs argue that, if Defendants were in a position to implement technological measures which they believed would have curbed alleged infringement, but unreasonably declined to do so, such an omission would speak directly to the issues of blameworthiness and willful infringement. On the other hand, to the extent that there exist legitimate questions within the expert community as to whether any effective or reliable methods for detecting alleged infringement even existed at the time of the alleged infringements, such information bears directly on the Defendants' "blameworthiness" or "willfulness." To this end, Dr. Cromarty has opined that because there is no "accepted methodology for reviewing and assessing" the technological measures which "may or may not work," there is no justification for an online service provider like Hotfile to even consider using such products. Cromarty Expert Report, ¶¶ 183-84. In fact, even the maker of the "state-of-the-art" technology for curbing

2

infringement recognized that its software offerings, up until months after the Complaint was filed, were ineffective for curbing infringement on cyberlockers like Hotfile. *Id.*, ¶ 65.

Moreover, Dr. Cromarty's testimony is not inconsistent with the Court's summary judgment decision. This Court's finding that Hotfile controlled the means of infringement was not based on a finding that Hotfile failed to implement the fingerprinting technology. Instead, this Court's holding was based on its finding that Hotfile mandated user registration, hosted the material on its own servers, and had a user policy that permitted it to control user activity. *Disney Enterprises, Inc. v. Hotfile Corp.*, No. 11-Civ-20427, slip op., at 83 (S.D. Fla. Aug. 28, 2013). Although the Court noted that Hotfile has now adopted technology that appears to be effective in filtering and targeting infringing works, *Id.* at 84, once again, this technology was not even available until after the Complaint was filed. Cromarty Declaration, ¶ 95.

The question of the existence prior to the Complaint of any effective technical countermeasures to infringement is an important consideration in a jury determination of whether the Defendants willfully allowed infringement to occur on the Hotfile Service. If Dr. Cromarty is barred from offering his opinion regarding the effectiveness of such tools in combating infringement, the jury will be left with the incorrect and unfairly prejudicial impression that there were proven and effective technological tools that Defendants could have used to curb infringement on the Hotfile service. Because Dr. Cromarty's opinion regarding the effectiveness of such technological tools in controlling infringement is helpful to the jury's determination of blameworthiness and willfulness (and the exclusion of such testimony would be unfairly prejudicial to Defendants) and because such testimony is not inconsistent with this Court's summary judgment decision, such testimony should be allowed at trial.

## II. Dr. Cromarty's Opinions About Plaintiffs' Actual Damages and Measures Plaintiffs Might Have Taken to Prevent Infringement Should Be Permitted

Dr. Cromarty's twenty-plus years of business experience, particularly his years working with the Hollywood movie and TV industries, qualifies him to give opinion testimony regarding Plaintiffs' actual damages and the measures they might have taken to prevent the infringement of their works.

Dr. Cromarty spent years as the Chief Technology Officer and Chief Information Officer of DAX Solutions, Inc, which was the primary provider of Digital Rights Management and digital asset exchange management for the film and TV industries, keeping valuable industry content secure until its release. Cromarty Expert Report, ¶¶ 6, 20. Dr. Cromarty is also credited with the first stream of 1,000,000 live videos on the Internet for an event, the first stream of live video from an international film festival and the first high-definition "set-top box" networked screening product and system for the movie industry. *Id.* at ¶ 9. Furthermore, Dr. Cromarty developed and spun-out a successful sports news distribution system in conjunction with other media production companies. *Id.* at ¶ 18. Moreover, Dr. Cromarty was the invited Keynote Speaker at the EnterTech Entertainment and Technology conference created to introduce the Silicon Valley and Hollywood industries, where Dr. Cromarty lectured Hollywood industry executives on business models and technologies for entertainment and other multimedia content. *Id.* He has also published at least two papers relevant to the business of distributing content on the Internet. See Cromarty, A., "SportsWeb: Exploring New Business Models at the Internet's Service Frontier," Digital Forefront, Summer 1998; Cromarty, A., "The Role of Entertainment on the Web: How Different Audiences are Affected," Digital Internet Innovators News, Winter 1997. Finally, Dr. Cromarty spent a number of years developing and evaluating business models for multimedia and entertainment and content delivery and use on the Internet. *Id.* at ¶ 22. On

4

the basis of the foregoing, it is clear that Dr. Cromarty has sufficient knowledge and experience regarding the value of Plaintiffs' media (and therefore the actual damages resulting from infringement) and the measures Plaintiffs might have taken to prevent infringement.

Based on Dr. Cromarty's knowledge and experience on the Hollywood business model, Dr. Cromarty is qualified to opine on how the Plaintiffs currently market and protect their works on the Internet. In conjunction with Dr. Cromarty's expertise in emerging Internet technologies, Dr. Cromarty is also qualified to opine on how the Plaintiffs could have and should have properly responded to the new emerging Internet technologies, and the loss of revenues created by the Plaintiffs themselves by failing to properly commercialize works on the Internet. Ultimately, the jury is free to weigh the conclusions of Dr. Cromarty as they see fit. Dr. Cromarty's observations when coupled with his expertise provide a helpful and reliable opinion for the jury's consideration.

### III. Dr. Cromarty's is Qualified to Offer Opinions About the Value of Plaintiffs' Works

As explained in depth in Section II *supra*, Dr. Cromarty has sufficient experience and knowledge regarding Plaintiffs' business methods, operations and distribution channels to offer expert testimony regarding the value of Plaintiffs' works.

Moreover, Dr. Cromarty's opinions on the value of the Plaintiffs' works are based on a reliable foundation. Plaintiffs have conceded that Dr. Cromarty is an expert on content distribution systems on the Internet. As such, Dr. Cromarty has an invaluable insight into the numerous content distribution systems available to the Plaintiffs, including those systems through which Plaintiffs actually distribute their works. Based on his experience and knowledge, Dr. Cromarty reliably identified the actual cost to users to access Plaintiffs' works. For example, Dr. Cromarty identified that many of Plaintiffs' works and many other works are available for

unlimited viewing, with no per-view cost, for only $7.99 per month.  Cromarty Expert Report, ¶115.  Plaintiffs have not disputed this fact, which makes it a proper basis for Dr. Cromarty's opinion that Plaintiffs' works, which only make up a fraction of the works available and watchable in a month's time, are similarly only worth a fraction of the $7.99.  *Id*.

Dr. Cromarty's testimony to this effect would be helpful to the jury's determination of damages.  Specifically, the Plaintiffs have indicated that they believe the value of the infringed works to be an important consideration with regard to their damages.  See Joint Pretrial Stipulation, DE 568, p. 3 (Public Redacted Version) (listing "value of the works infringed" as part of the relevant factors in determining statutory damages).  Therefore, Dr. Cromarty's valid expert opinion regarding the value of the works at issue should be permitted at trial.

### IV. Dr. Cromarty is Qualified to Present His Opinions Regarding "Digital Fingerprinting Technology"

Dr. Cromarty's has extensive experience with digital fingerprinting technology, having based his doctoral thesis on related technologies and having spent years as the Chief Technical and Information Officer of a company, wherein he specialized in such technology.  Dr. Cromarty's technical experience and publications specifically and especially cover "pattern recognition, pattern matching, multidimensional and visual signal and image analysis," which form the basis of digital fingerprinting technology.  Cromarty Expert Report, ¶ 21, 110, 118-120.  Dr. Cromarty's Master's thesis and first doctoral dissertation were in the field of visual signal and pattern matching, and his later research built on these fields.  *Id.* at ¶ 21.  Moreover, while Dr. Cromarty was the CTO and CIO of DAX Solutions Inc. between 2005 and 2007, he was responsible for managing the development, deployment and operation of DAX's proprietary digital asset watermarking/fingerprinting technology and intellectual property and associated digital rights management systems and software.  *Id.* at ¶ 20. Therefore, Plaintiffs' assertion that

6

"[n]othing in his CV indicates that he has ever dealt with the technology in any professional context before being engaged as an expert in this case" is simply <u>wrong</u>.[1]  See Plaintiffs' Motion, p. 9.  Dr. Cromarty has prior academic and recent practical experience, knowledge and skills in the field of digital fingerprinting technology.

Furthermore, for the reasons set forth in Section I above, Dr. Cromarty's testimony regarding digital fingerprinting technology is relevant, helpful, and not contrary to the Court's ruling at summary judgment.  Dr. Cromarty's opinions regarding the effectiveness of digital fingerprinting technology speak directly to the issues of blameworthiness and willful infringement.  Moreover, the Court did not issue an opinion regarding whether the digital fingerprinting technologies available to Defendants prior to the Complaint were effective – only that when Defendants adopted technology that *only became available after the Complaint was filed*, it found such technology to be effective.  See *Disney Enterprises, Inc. v. Hotfile Corp.*, No. 11-Civ-20427, slip op., at 84 (S.D. Fla. Aug. 28, 2013) and Cromarty Declaration, ¶ 95.

Even a press release from September 2011 by Vobile, the producer of the new VCloud9 digital fingerprinting product for cyberlockers recognized that, for digital fingerprinting product prior to that date, "Copyright content contained within cloud-based cyberlockers is very difficult to find" and that "file compression 'hides' the true content, which – until now – has made it **impossible** to identify."  Cromarty Declaration, ¶ 95 (emphasis added).  Based on the foregoing, Defendants' failure to consider a product regarded even by its producers as ineffective is irrelevant and cannot be deemed culpable intent.  Plaintiffs have essentially argued that

---

[1] Plaintiffs point to the deposition transcript of Dr. Cromarty to support their contention that Dr. Cromarty has never analyzed the commercially available products available to companies such as Hotfile.  However, Dr. Cromarty made no such statement in the deposition.  Dr. Cromarty only stated that "I haven't studied the question of whether there are enough adopters of Vobile's technology to rise to that level" of standard industry practice.  Cromarty Transcripct at 252:25-254:14.  This is <u>not</u> the same as analyzing the actual technical details used by the commercially available products, which Dr. Cromarty has engaged in based on his above referenced experience.

7

Defendants are culpable because, as an analogy, they did not consider using a tape measure to hammer a nail.

### V. Dr. Cromarty's Opinions Regarding Takedown Notice Accuracy Should be Admitted

As an initial matter, Plaintiffs are once again incorrect: Dr. Cromarty's testimony regarding takedown notice accuracy was first produced as part of Dr. Cromarty's initial Expert Report dated November 18, 2011.  See Cromarty Expert Report, ¶ 198.  Moreover, Plaintiffs explicitly deposed Dr. Cromarty on his expert opinions regarding takedown notice accuracy.  See, e.g., Cromarty Deposition Transcript, 48:10-50:24, 54:23-57:19.  Therefore, Dr. Cromarty's testimony on the accuracy of takedown notices should not be precluded under Fed. R. Civ. P. 37(c).

Second, testimony regarding takedown notice accuracy is relevant and helpful to the two issues left for trial, including (a) Hotfile's blameworthiness/willfulness and (b) Hotfile's counterclaim against Warner under Section 512(f).  With respect to the former, the accuracy of takedown notices in general is an important consideration in determining Hotfile's blameworthiness in its response (or its failure to respond) to takedown notices.  The Court's holding that Hotfile did not satisfy the factors to qualify for DMCA safe-harbors does not automatically act as a bar as to the introduction of facts relevant to those safe-harbors that are also relevant to the issues left for trial.  And, with regard to the latter issue, Dr. Cromarty's testimony sets the stage for whether Warner knew or should have known about the severe inaccuracies in its takedown program.

Moreover, Dr. Cromarty is qualified to speak on the subject of the pitfalls of takedown notifications.  As detailed above, Dr. Cromarty has expertise in the areas of digital asset identification and fingerprinting, which compare copyrighted materials to potentially infringing

materials.  It is based on this expertise that Dr. Cromarty has provided his expert opinions regarding the accuracy of takedown notices.  Dr. Cromarty arrives at his conclusion that takedown procedures are inaccurate because there is no reliable method to determine whether any particular file is actually infringing.  See Cromarty Expert Report, ¶¶ 74-82, 93-130; Cromarty Declaration, ¶¶ 77-90.  Given Dr. Cromarty's experience both in multimedia and technology, Dr. Cromarty is *especially* suited to opine about the inaccuracies of takedown notices.

## Conclusion

Fore the reasons stated hereinabove, the Plaintiffs' Motion in Limine to Preclude Defendants from Offering Certain Opinions of Dr. Andrew Cromarty at Trial should be denied in its entirety.


**Respectfully submitted:**

/s/ Valentin Gurvits
Valentin D. Gurvits (# 643572 - *pro hac vice*)
Matthew Shayefar (# 685927 - *pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Telephone: (617) 928-1804
Facsimile: (617) 928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ BRADY J. COBB
Brady J. Cobb, Esquire
Florida Bar No. 031018
COBB EDDY MIJARES, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone (954) 527-4111
Facsimile  (954) 900-5507
bcobb@cemlaw.net

/s/ Evan Fray-Witzer
Evan Fray-Witzer (# 564349 - *pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Telephone: (617) 426-0000
Facsimile: (617) 423-4855
Evan@CFWlegal.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the attached service list this 6th day of November, 2013.

/s/ Brady J. Cobb
Brady J. Cobb

**SERVICE LIST:**

CASE NO: 11-20427-CIV-WILLIAMS

*Counsel for Plaintiffs:*

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
sfabrizio@jenner.com
Luke C. Platzer (*Pro Hac Vice*)
lplatzer@jenner.com
David A. Handzo (*Pro Hac Vice*)
dhandzo@jenner.com
Kenneth L. Doroshow (*Pro Hac Vice*)
kdoroshow@jenner.com
1099 New York Ave., N.W., Suite 900
Washington, DC 20001
Phone: 202.639.6000
Fax: 202.639.6066

Karen R. Thorland, Esq. (*Pro Hac Vice*)
Senior Content Protection Counsel
Email: Karen_Thorland@mpaa.org
Motion Picture Association of America, Inc.
15301 Ventura Boulevard, Building E
Sherman Oaks, CA 91403-5885
Phone: 818.935.5812

GRAY-ROBINSON, P.A.
Karen L. Stetson
karen.stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305.416.6880
Fax: 305.416.6887

*Counsel for Defendants:*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116 Phone:617-426-0000

COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201