UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

**PLAINTIFFS' OPPOSITION TO HOTFILE CORPORATION AND
ANTON TITOV'S DAUBERT MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF SCOTT ZEBRAK**

75232.2

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................1

ARGUMENT

I. MR. ZEBRAK'S TESTIMONY SATISFIES *DAUBERT*, AND IS ADMISSIBLE UNDER RULE 702 ................................................................................................2

    A. Mr. Zebrak's Methodology Is Sound, Widely Accepted in Similar Cases, and Derived from Mr. Zebrak's Extensive Professional Experience with Identifying Infringing Content……………………………………………………………….4

    B. Defendants' Criticisms Bear On The Weight, Not The Admissibility, Of Mr. Zebrak's Testimony……………………………………………………………….7

II. MR. ZEBRAK COMPLIED WITH THE RULE 26 DISCLOSURE REQUIREMENTS, AND STRIKING HIS TESTIMONY IS AN INAPPROPRIATE SANCTION………….9

III. ALTERNATELY, MR. ZEBRAK'S TESTIMONY IS ADMISSIBLE AS LAY OPINION TESTIMONY UNDER RULE 701……………………………………….....11

CONCLUSION……………………………………………………………………………..13

# **TABLE OF AUTHORITIES**

**CASES**

*325 Goodrich Ave., LLC v. Southwest Water Co.*, 891 F. Supp. 2d 1364 (M.D. Ga. 2012) ...........3

*American General Life Insurance Co. v. Schoenthal Family, LLC*, 555 F.3d 1331 (11th Cir. 2009) .................................................................................................................................3

*Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011) .......................5, 6

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009) ........................5, 6

*Bonner v. ISP Technologies, Inc.*, 259 F.3d 924 (8th Cir. 2001) ......................................................8

*Bowers v. Norfolk Southern Corp.*, 537 F. Supp. 2d 1343 (M.D. Ga. 2007), *aff'd*, 300 F. App'x 700 (11th Cir. 2008) ...................................................................................................3

*Buden v. City of Opa Locka*, No. 11-22018-Civ., 2012 WL 4764592 (S.D. Fla. Oct. 7, 2012) ...............................................................................................................................11

*Chick-Fil-A, Inc. v. CFT Development, LLC*, No. 07-cv-501, 2009 WL 1754058 (M.D. Fla. June 18, 2009).............................................................................................................6

*Columbia Pictures Industries, Inc. v. Fung*, No. Civ. 06-5578 SVW, 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009), *aff'd in part as modified*, 710 F.3d 1020 (9th Cir. 2013) *petition for cert. filed*, 82 U.S.L.W. 3137 (U.S. Sept. 12, 2013) (No. 13-334) .........................5

*Coquina Investments v. Rothstein*, No. 10-60786-Civ., 2011 WL 4949191 (S.D. Fla. Oct. 18, 2011) ..............................................................................................................................6

*Corwin v. Walt Disney Co.*, No. 602CV1377ORL19KRS, 2004 WL 5486639 (M.D. Fla. Nov. 12, 2004) .............................................................................................................10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)........................................ 2-3

*Davis v. City of Loganville*, No. 04-CV-068, 2006 WL 826713 (M.D. Ga. Mar. 28, 2006), *aff'd*, 221 F. App'x 897 (11th Cir. 2007).................................................................................3

*Excess Risk Underwriters, Inc. v. Lafayette Life Insurance Co.*, No. 01-4111-Civ., 2004 WL 6044760 (S.D. Fla. July 1, 2004)...................................................................................12

*Flebotte v. Dow Jones & Co.*, No. 97-30117-FHF, 2001 WL 35988081 (D. Mass. Feb. 7, 2001) ...........................................................................................................................10, 11

*In re Nitro Leisure Products, LLC*, No. 02–14008–CIV, 2003 WL 25669322 (S.D. Fla. Dec. 16, 2003)............................................................................................................9, 10, 11

*Jones v. Otis Elevator Co.,* 861 F.2d 655 (11th Cir. 1988) ..........................................................7

*Kilpratrick v. Breg, Inc.*, 613 F.3d 1329 (11th Cir. 2010) ............................................................. 3

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ........................................................ 3, 4

*Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001) ............................................................................. 7

*Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ................................ 5

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966 (C.D. Cal. 2006) ........................................................................................................................................... 5

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir. 2002) ............................................................. 7

*Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333 (11th Cir. 2003) .............. 7

*Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190 (11th Cir. 2011) ........................................... 7

*Smith v. Jacobs Engineering Group, Inc.*, No. 4:06cv496-WS/WCS, 2008 WL 4264718 (N.D. Fla. Mar. 20, 2008), *report and recommendation adopted by*, 2008 WL 4280167 (N.D. Fla. Sept. 12, 2008) ........................................................................................ 11

*Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co. Ltd.*, 320 F.3d 1213 (11th Cir. 2003) ................................................................................................................................. 12

*United States v. 14.38 Acres of Land*, 80 F.3d 1074 (5th Cir. 1996) ......................................... 7, 8

*United States v. Brown*, 415 F.3d 1257 (11th Cir. 2005) .............................................................. 3

*United States v. Cordoba*, No. 12-20157, 2012 WL 3620306 (S.D. Fla. Aug. 21, 2012) .......... 3, 6

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) ............................................................ 1

*United States v. Hill*, 643 F.3d 807 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 1988 (2012) ......... 12

*United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011), *cert. denied*, 133 S. Ct. 29 (2012) ......................................................................................................................................... 12

*United States v. Masferrer*, 367 F. Supp. 2d 1365 (S.D. Fla. 2005) ............................................. 4

*United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002) ........................................................... 12

*Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC v. Teledyne Technologies, Inc.*, No. 12-CV-0686-JEL, 2013 WL 4806894 (N.D. Ga. Sept. 9, 2013) ............................................. 9, 10

*Williams Enterprises, Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230 (D.C. Cir. 1991) ................. 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a)(2)(B)(i-ii) ...................................................................................................... 9

iv

Fed. R. Civ. P. 37 ..........................................................................................................................11

Fed. R. Evid. 701 ..........................................................................................................................12

Fed. R. Evid. 702 Advisory Committee Notes on 2000 Amendments ........................................1, 4

**INTRODUCTION**

Defendants contend that the testimony of Scott A. Zebrak, an expert who has opined in this case[1] and whom Plaintiffs intend to have testify at trial on the infringing status of files on the Hotfile system, fails to meet the criteria for admissible expert testimony. Courts throughout the country, including the U.S. Supreme Court, have accepted materially identical testimony in large-scale, online copyright infringement cases such as this one. Under Federal Rule of Evidence 702, "the rejection of expert testimony is the exception rather than the rule," Fed. R. Evid. 702 Advisory Committee Notes on 2000 Amendments, and the court's role in assessing the admissibility of expert testimony "is not intended to supplant the adversary system or the role of the jury," *United States v. Frazier*, 387 F.3d 1244, 1293 (11th Cir. 2004) (quotation marks omitted). Defendants' contention that the Court should take the exceptional step of preventing the jury from hearing Mr. Zebrak's testimony is both factually and legally baseless.

Defendants' principal argument against Mr. Zebrak's proffered testimony is that the analysis Mr. Zebrak conducted to determine whether a sample of files drawn from Hotfile's servers was infringing fails to meet *Daubert's* standard for reliability of *scientific* testimony. However, Mr. Zebrak's review was clearly not a scientific study, and his testimony is not appropriately evaluated by that standard. Rather, Mr. Zebrak's testimony is based on his extensive experience as an anti-piracy expert generally – and in identifying infringing content on the Internet specifically – and his review draws directly and rationally from that professional experience. Under the flexible test articulated by the Supreme Court in *Kumho Tire*, Mr. Zebrak's testimony is reliable and admissible under Rule 702.

In the end, Defendants' criticisms of Mr. Zebrak's testimony go only to the weight, not the admissibility, of the testimony. The purported weaknesses that Defendants identify—in particular, Mr. Zebrak's "assumptions" about the cyberlocker industry, his judgments as to the

---

[1] *See* Excerpts of Transcript of Deposition of Scott Zebrak (Dec. 20, 2011) ("Zebrak Dec. 20, 2011 Tr."), Declaration of Luke C. Platzer in Opposition to Defendants' Motions in Limine and Daubert Motion ("Platzer Decl.") Ex. 12; Excerpts of Transcript of Deposition of Scott Zebrak (Jan. 20, 2012) ("Zebrak Jan. 20, 2012 Tr."), Platzer Decl. Ex. 13; Decl. of Scott A. Zebrak in Support of Plaintiffs' Motion for Summary Judgment 4, D.E. 325-1 ("Zebrak Summ. J. Decl."); Decl. of Scott A. Zebrak in Support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment on Hotfile Corp.'s Counterclaims, D.E. 301-1 ("Zebrak Counterclaim Decl."); Rule 26(a)(2)(B) Report of Scott A. Zebrak, dated November 18, 2011 ("Zebrak Nov. 18, 2011 Expert Report"), Platzer Decl. Ex. 14; Rule 26(a)(2)(B) Report of Scott A. Zebrak, dated January 6, 2012 ("Zebrak Jan. 6, 2012 Expert Report"), Platzer Decl. Ex. 15.

lack of authorization by content owners for Hotfile to distribute copyrighted files on its system, and the indicia on which he relied in determining that a single video in the sample set was "highly likely infringing"—are improper grounds for the exclusion of Mr. Zebrak's testimony. The jury is well-equipped to assess these issues, and the Court should reject Defendants' attempt to strain the Court's gatekeeping function to supplant the role of the jury. At most, each of these issues is a proper subject of cross-examination at trial, not a reason to strike Mr. Zebrak's testimony.

Moreover, even if Mr. Zebrak's testimony did not qualify as expert testimony under Rule 702, the testimony would still be admissible under Rule 701 as the opinion of a lay witness. Mr. Zebrak's review of Hotfile's content files and his application of various factors that make these files more or less likely to be infringing draw from his extensive professional experience, and his determination as to each file are rationally based on his personal perceptions of the evidence. That is all that Rule 701 requires.

Defendants' argument that Mr. Zebrak's testimony should be excluded because his Rule 26 disclosures were insufficiently detailed is similarly without basis. Defendants misstate the supposed deficiencies in Mr. Zebrak's disclosures and, in any event, cannot show that these alleged omissions—even if they existed—have prejudiced them in any way. There is therefore no justification for the extreme sanction that Defendants request here.

Accordingly, Defendants' motion should be denied in its entirety and Mr. Zebrak's testimony should be admitted at trial.

## ARGUMENT

### I. MR. ZEBRAK'S TESTIMONY SATISFIES *DAUBERT*, AND IS ADMISSIBLE UNDER RULE 702.

Mr. Zebrak is a copyright attorney and anti-piracy expert with seventeen years experience in the content-protection industry. He is a former Vice President of the Recording Industry Association of America, and he has advised and represented clients on all aspects of copyright and intellectual property issues. Mr. Zebrak has developed extensive familiarity with practices for analyzing works and determining their ownership and copyright status, and he has specific expertise in copyright issues involving new technologies and the Internet.

Defendants' objection to Mr. Zebrak's testimony is that the methodology Mr. Zebrak used to create his study lacks the scientific rigor necessary to pass muster under the standard articulated by the U.S. Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509

2

U.S. 579, 593 (1993). Specifically, Defendants argue that Mr. Zebrak's study fails to meet *Daubert*'s four reliability factors—testability, error rate, peer review and publication, and general acceptance. Defs.' Mot. at 2-3, 7-8. Defendants' argument misconstrues both the nature of Mr. Zebrak's study and the purpose of the *Daubert* factors.

Contrary to Defendants' position, "[s]tandards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009). Rather, whether specific expert testimony in a given case is reliable "will 'depend[ ] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (bracket in original)). As the Supreme Court explained in *Kumho Tire.*, the four *Daubert* factors are not dispositive, but rather are merely illustrative and may not be useful for evaluating certain kinds of expert testimony, particularly non-scientific testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999); *see also Bowers v. Norfolk So. Corp.*, 537 F. Supp. 2d 1343, 1351 (M.D. Ga. 2007) (stating that the four factors "apply most comfortably in cases involving scientific testimony, but may offer little help in other cases, particularly those involving non-scientific experts"), *aff'd*, 300 F App'x 700 (11th Cir. 2008). Thus, when evaluating non-scientific testimony, the district court has "considerable leeway" in determining the appropriate measures of reliability for the specific testimony in question. *Kumho Tire*, 526 U.S. at 152; *see also Kilpratrick v. Breg, Inc.*, 613 F.3d 1329, 1334-35 (11th Cir. 2010). Accordingly, numerous courts have found the *Daubert* factors to be unhelpful for determining the reliability of non-scientific testimony, and instead have taken a broader and more flexible approach focused on the general soundness of the testimony. *See, e.g., United States v. Cordoba*, No. 12-20157, 2012 WL 3620306, at *4 (S.D. Fla. Aug. 21, 2012) (holding that the expert's testimony about common techniques for money laundering was reliable because it was based on her experience in investigating money laundering); *325 Goodrich Ave., LLC v. Sw. Water Co.*, 891 F. Supp. 2d 1364, 1378 (M.D. Ga. 2012) (stating that the *Daubert* factors "are generally inapplicable in the context of non-scientific testimony"); *Davis v. City of Loganville*, No. 04-CV-068, 2006 WL 826713, at *7 (M.D. Ga. Mar. 28, 2006) (finding the *Daubert* factors unhelpful and instead using the court's "considerable leeway" to determine that the expert's opinion on whether the defendant violated FLSA was admissible), *aff'd*, 221 F. App'x 897 (11th Cir. 2007).

Whether Mr. Zebrak's testimony is sufficiently reliable ultimately is not, as Defendants argue, a matter of whether the testimony can be squared with the four factors, but rather whether his testimony is "properly grounded, well reasoned, and not speculative." *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1373 (S.D. Fla. 2005) (quoting Fed. R. Evid. 702 Advisory Committee Notes on 2000 Amendments)).

Mr. Zebrak's testimony is not scientific testimony, but rather expert testimony drawn from his personal knowledge and experience as applied to the facts of this case. As the Supreme Court recognized in *Kumho Tire*, expert testimony may be reliable based on the expert's "personal knowledge or experience." 526 U.S. at 150.[2] When the basis for the expert's testimony is primarily his personal knowledge and experience, the district court should examine "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee Notes on 2000 Amendments. Mr. Zebrak's proposed testimony easily satisfies this examination.

### A. Mr. Zebrak's Methodology Is Sound, Widely Accepted in Similar Cases, and Derived from Mr. Zebrak's Extensive Professional Experience with Identifying Infringing Content.

Mr. Zebrak's expert opinions are derived from his extensive experience as a copyright attorney generally, and with identifying infringing content on the internet specifically. Drawing from that experience, Mr. Zebrak examined each of the files subject to his study and evaluated several factors to determine the likelihood that each file was infringing. These factors, which are laid out in his expert reports, deposition and declarations, include: (1) the title of the URL where the file could be downloaded, including whether any portion of the title suggested that the file was infringing (for example, if the URL contained language like "DVD Rip"), *see* Zebrak Summ. J. Decl. at 4; (2) the content of the file itself, including whether it was a high-quality copy of the work, other whether it was a full-length work or merely a clip or trailer (which are much more commonly authorized for widespread distribution), *see* Zebrak Dec. 20, 2011 Tr. at 206:5-

---

[2] Defendants state at several points in their brief that experience is an "improper basis" for an expert opinion. *See* Defs.' Mot. at 7-8. That is simply a misstatement of settled law as articulated by the Supreme Court in *Kumho Tire*, and reaffirmed by recent Eleventh Circuit precedents. *See* Fed. R. Evid. 702 Advisory Committee Note on 2000 Amendments) ("Nothing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony").

4

15, Platzer Decl. Ex. 12; Zebrak Summ. J. Decl. at 4; (3) the nature of the site where the URL was posted, including whether the URL was posted on a site that suggested authorization by the copyright holder, or on a blog or other pirate site suggesting infringement, *see* Zebrak Dec. 20, 2011 Tr. at 191:3-22; 192:8-193:14; 196:12-197:2, Platzer Decl. Ex. 12; (4) the circumstances surrounding the posting of the URL, such as how the post described the work and whether the poster encouraged widespread distribution, *see id.*; (5) whether the work was being commercialized elsewhere on the internet, which, in Mr. Zebrak's considerable experience, is inconsistent with authorizing the work for widespread free distribution, *see* Zebrak Dec. 20, 2011 Tr. at 206:5-15, Platzer Decl. Ex. 12; (6) whether the work was a popular, well-known work, as such works are less likely to be authorized for widespread free distribution, *see* Zebrak Summ. J. Decl. at 2-3; (7) whether information was available from the copyright holder regarding authorization to distribute the work, or whether the work was subject to terms of use that restricted distribution, *see id.* at 4; Zebrak Dec. 20, 2011 Tr. at 176:23-177:6, Platzer Decl. Ex. 12; and (8) whether the files or other copies of the files had been subject to takedown notices or otherwise removed because of claims of copyright infringement, *see* Zebrak Dec. 20, 2011 Tr. at 177:6-16; 182:3-19, Platzer Ex. 12.

Mr. Zebrak's methods are sound, and courts throughout the country – including the U.S. Supreme Court – have accepted substantially similar methods in other large-scale copyright infringement cases. *See Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940-41 (2005); *Arista Records, LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 412-13 (S.D.N.Y. 2011); *Columbia Pictures Indus., Inc. v. Fung*, 2009 WL 6355911, at *4 (C.D. Cal. Dec. 21, 2009), *aff'd in part as modified*, 710 F.3d 1020 (9th Cir. 2013), *petition for cert. filed*, 82 U.S.L.W. 3137 (U.S. Sept. 12, 2013) (No. 13-334); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 144-45 (S.D.N.Y. 2009).

In *Grokster*, for example, the Supreme Court accepted a study performed by a statistician and an anti-piracy attorney, which showed 90% of the material available on an online system to be at least "likely infringing," as "evidence of infringement on a gigantic scale . . . ." 545 U.S. at 922, 933, 940-41. *See also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 985 (C.D. Cal. 2006) (explaining details of study to determine the percentage of files that "were infringing or highly likely to be infringing" based on sampling procedure

5

designed by statistical expert and judgments of an "anti-piracy executive at the Motion Picture Association of America").

This is essentially identical to the process that Mr. Zebrak performed here, in conjunction with plaintiffs' statistical expert, Dr. Richard Waterman. Indeed, Dr. Waterman's statistical studies, relying on judgments of copyright attorneys and industry experts like Mr. Zebrak, have withstood *Daubert* challenges in similar copyright infringement cases and have consistently been deemed admissible. *See Usenet.com, Inc.*, 633 F. Supp. 2d at 144-45 (rejecting *Daubert* challenge to classifications by "hired attorney" because "classifications were based on [attorney's] extensive experience in copyright matters and were made in reliance on 'multiple reliable public sources of information containing information on copyright ownership and distribution'" (quoting report of Dr. Waterman)); *Lime Group*, 784 F. Supp. 2d at 413 (rejecting *Daubert* challenge and noting that "[s]imilar studies using nearly identical file classifications have been considered and approved by other courts" (citing cases)).

Mr. Zebrak's testimony also closely resembles expert testimony that has been admitted in other contexts. For instance, in *Coquina Investments v. Rothstein*, No. 10-60786, 2011 WL 4949191, at *9 (S.D. Fla. Oct. 18, 2011), the court admitted expert testimony that the plaintiffs did not adequately design or execute due diligence regarding a series of settlements. Because there were no industry standards for due diligence, and no meaningful ways to test the adequacy of due diligence through scientific study, the expert based his opinion on factors he developed from his substantial experience in understanding what level of due diligence was sufficient. The court found the testimony sufficiently reliable because the expert adequately explained how he developed his criteria through his experience and why those criteria were sufficiently applied to the facts of the case. *See id.* at *10; *see also Cordoba*, 2012 WL 3620306, at *4 (permitting an expert to testify about common procedures in money laundering based on her extensive experience with investigating money laundering); *Chick-Fil-A, Inc. v. CFT Dev., LLC*, No. 07-cv-501, 2009 WL 1754058, at *3-4 (M.D. Fla. June 18, 2009) (permitting an expert to testify based on his industry experience as to whether a Panda Express was properly classified as a "quick service" restaurant or "fast-casual" restaurant). Mr. Zebrak does here essentially the same thing as the expert in *Conquina*: he has generated a set of factors to determine whether a file is likely infringing based on his substantial professional and industry experience and has rationally applied those factors to the evidence before him.

6

### B. Defendants' Criticisms Bear On The Weight, Not The Admissibility, Of Mr. Zebrak's Testimony.

The remaining issues that Defendants raise with regard to Mr. Zebrak's categorization of the more than 2,500 files he analyzed bear on the weight, not the admissibility, of the testimony. Defendants challenge Mr. Zebrak's assumptions regarding (1) the use of the Hotfile system for purposes other than personal locker storage, (2) copyright owners' lack of authorization of distribution of files, and (3) the categorization of a single professional quality work as "highly likely infringing." Defs. Mot. at 8. Defendants' challenges do not provide a basis for exclusion and, instead, are more appropriately the subject of cross-examination or competing testimony.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quotation marks omitted); *see also Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) ("[O]bjections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility" (quotation marks omitted)). As the Eleventh Circuit has held, any alleged "weaknesses in the underpinnings of the expert's opinion go to its weight," and "opposing counsel is given the opportunity to ferret out" these issues on cross-examination. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988) (citations omitted); *see also Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence" (quoting *Daubert*, 509 U.S. at 596; brackets in original)).

Defendants provide no authority for their claim that the supposed deficiencies in Mr. Zebrak's opinion are grounds for striking his expert testimony. Instead, Defendants simply urge the Court to strain its gatekeeping function to supplant the role of the jury. But "[a] district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury." *Maiz*, 253 F.3d at 666 (internal quotation marks omitted); *see also Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (trial court's role as a gatekeeper is "not intended to serve as a replacement for the adversary system" (quotation marks omitted)). Rather, "it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is *so fundamentally unsupported* that it can offer no assistance to the

jury must such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (quotation marks omitted; emphasis added).

Each of the objections that Defendants raise can be addressed through cross-examination rather than exclusion. For instance, the jury is well-equipped to assess Defendants' strained "self-storage" argument and any related deficiencies in Mr. Zebrak's opinion that Defendants wish to assert. Mr. Zebrak's expert analysis of the content files is logical, straightforward, and accessible to a jury, and Defendants can (and no doubt will) seek to challenge the analysis on cross-examination. *See 14.38 Acres of Land*, 80 F.3d at 1077 ("[I]n determining the admissibility of expert testimony, the district court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." (internal quotation marks omitted)).

Defendants' argument regarding Mr. Zebrak's opinion on the lack of authorization by content owners to upload and distribute copyrighted works on Hotfile should similarly be left to the jury to evaluate. Mr. Zebrak and his team considered evidence of authorization in performing their analysis. Zebrak Nov. 18, 2011 Expert Report ¶ 6, Platzer Decl. Ex. 14, (stating, *e.g.*, that Mr. Zebrak and his team confirmed that "confirmed infringing files" were "not authorized for free and unrestricted distribution on Hotfile" and used "publicly available evidence of commercial exploitation of the . . . lack of any indication of authorization" in categorizing files as "highly likely infringing"). But Defendants take issue with Mr. Zebrak's supposedly "incorrect assumption" that he could make a determination as to the likelihood of infringement of a work without personally contacting each and every copyright owner to obtain their individual assurances that distribution of their works on Hotfile was unauthorized. Defs.' Mot. at 6. As Mr. Zebrak testified, such a cumbersome investigation was not necessary. *See* Zebrak Dec. 20, 2011 Tr. at 204-05, Platzer Decl. Ex. 12. To the extent that Defendants believe Mr. Zebrak's testimony to be lacking in this respect, Defendants can challenge it on cross-examination, and a jury is fully capable of determining whether Zebrak did or did not do enough to investigate authorization.

Finally, Defendants argue that Mr. Zebrak incorrectly assumed that *one file* (among thousands) was highly infringing "simply because of its production value," Defs.' Mot. at 8, and that this allegedly-erroneous assumption is a basis for the wholesale exclusion of his expert testimony. Defendants' characterization of Mr. Zebrak's deposition testimony is grossly

8

inaccurate: although Mr. Zebrak stated that the fact that the video in question was "professionally created" would have been a basis for his designation, he did not state—as Defendants suggest—that it was the *only* basis for finding the file to be "highly likely infringing." Zebrak Jan. 20, 2012 Tr. at 229:9-233:20, Platzer Decl. Ex. 13. Mr. Zebrak also testified that, although he did not recall his analysis of this specific video, he would have considered a number of factors, including "the fact that the title of the work has the person's name on it and a year" and whether there was a "fair use or licensing issue." *Id.* (also noting that opposing counsel had identified an "isolated . . . exception that is not the norm of the types of works that [Zebrak] examined"). Mr. Zebrak's expert report likewise makes clear that other factors, including evidence of commercial exploitation and authorized distribution, contributed to his analysis. *See, e.g.,* Zebrak Nov. 18, 2011 Expert Report at ¶ 8, Platzer Decl. Ex. 14. A jury is well-equipped to see Defendants' argument about this video for what it is, and the quibble about the sufficiency of the factors used to categorize a single file—at most—goes to the weight of Mr. Zebrak's analysis, not its admissibility.

## II. MR. ZEBRAK COMPLIED WITH THE RULE 26 DISCLOSURE REQUIREMENTS, AND STRIKING HIS TESTIMONY IS AN INAPPROPRIATE SANCTION.

Defendants contend that Mr. Zebrak failed to disclose all of the data and information that he considered in reaching his opinions and that, as a result, his testimony and report should be excluded. Defs. Mot. at 8-10. Defendants' contention is baseless.

An expert witness's written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). The purpose of this provision is to "provide opposing parties reasonable opportunity to prepare for effective cross examination [of the expert] and [to] arrange for [rebuttal] expert testimony." *Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC v. Teledyne Techs. Inc.*, No. 12-CV-0686-JEL, 2013 WL 4806894, at *6 (N.D. Ga. Sept. 9, 2013) ((quoting *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.,* 549 F.3d 1344, 1361-62 (11th Cir. 2008) and *Reese v. Herbert,* 527 F.3d 1253, 1265 (11th Cir. 2008) (alterations in original)); *In re Nitro Leisure Prods., LLC*, No. 02–14008–CIV, 2003 WL 25669322, at *1 (S.D. Fla. Dec. 16, 2003) (Rule 26 disclosure requirements "were imposed so 'that opposing parties have a reasonable opportunity to prepare for effective cross examination.'" (quoting Fed. R. Civ. P. 1993 advisory committee notes)).

9

Contrary to Defendants' claim, Mr. Zebrak has fully complied with his disclosure obligations. In his expert report, Mr. Zebrak enumerated the sources on which he relied in forming his expert opinion. Those sources included "reliable Internet databases that contain information on copyright ownership and distribution;" imbd.com; www.allmusic.com.; www.iafd.com; online retailers like iTunes and Amazon that provide information about ownership, distribution and commercial exploitation of works; and "various corporate websites where information about the identified content was provided." Zebrak Nov. 18, 2011 Expert Report ¶ 4, Platzer Decl. Ex. 14; *see also* Zebrak Jan. 6, 2012 Expert Report ¶ 3, Platzer Decl. Ex. 15. In addition to these resources, Mr. Zebrak also disclosed that he relied upon his own "knowledge and experience." Zebrak Nov. 18, 2011 Expert Report ¶ 3, Platzer Decl. Ex. 14.[3]

Courts routinely deny motions to exclude expert testimony based on alleged disclosure deficiencies under Rule 26(a)(2)(B). *See, e.g.*, *Weinberg*, 2013 WL 4806894 at *6 (declining to exclude expert testimony where opposing party contended that expert's "reports fail[ed] to disclose certain opinions that were expressed by [expert] during his deposition" and "that the written reports [did] not adequately describe the bases for [his] opinions"); *Corwin v. Walt Disney Co.*, No. 6:02-cv-1377-Orl-19KRS, 2004 WL 5486639, at *11 (M.D. Fla. Nov. 12, 2004) (declining to exclude expert testimony based on alleged deficiencies in Rule 26(a)(2)(B) disclosures where expert stated that he reviewed "pleadings, deposition transcripts, reports of Plaintiff's experts, photographs of various World's Fairs, information about drawings, photographs and site plans of Epcot, and a copy of the Miniature Worlds painting"); *In re Nitro Leisure Prods., LLC*, 2003 WL 25669322, at *1 (declining to exclude expert testimony where expert disclosed a summary, but not the raw data, underlying his opinion).

*Flebotte v. Dow Jones & Co.*, No. 97-30117-FHF, 2001 WL 35988081 (D. Mass. Feb. 7, 2001), the one out-of-circuit district court case that Defendants cite for the contrary proposition, is inapposite. In *Flebotte*, the expert report at issue failed to define *any* information about the proposed testimony, including the scope of the subjects on which it would be offered. "In light

---

[3] Indeed, Mr. Zebrak has provided even *more* than what Rule 26(a)(2)(B) requires by including the raw data used to support his opinion along with his report. *See, e.g.*, Ex. C to Zebrak Jan. 6, 2012 Expert Report, Platzer Decl. Ex. 15; *see also Corwin v. Walt Disney Co.*, No. 6:02-cv-1377-Orl-19 KRS, 2004 WL 5486639, at *11 (M.D. Fla. Nov. 12, 2004) (Rule 26 does not require experts to attach all underlying data to their reports).

10

of these discrepancies," the district court found it "impossible to discern the actual basis for [the expert's] opinion, and hence, to determine whether [his] methodology satisfies the reliability and relevancy requirement of *Daubert.*" *Id.* at *1. In contrast, Mr. Zebrak has given highly detailed testimony in two declarations, two expert reports, and two depositions. There is no mystery as to the scope of and basis for his opinion, and his descriptions of the sources of information on which he relied provide no impediment to determining their reliability or relevance.

Defendants do not—and cannot—contend that they have been denied a reasonable opportunity to prepare for cross examination. Defendants make no claim that they were prejudiced by any of the supposed omissions in Mr. Zebrak's disclosures. *Buden v. City of Opa Locka*, No. 11-22018-Civ, 2012 WL 4764592, at *7 (S.D. Fla. Oct. 7, 2012) ("Important testimony should not be excluded absent some showing of prejudice") (citing *Murphy v. Magnolia Elec. Power Ass'n,* 639 F.2d 232, 235 (5th Cir. Mar. 1981) (finding an abuse of discretion when trial judge excluded "essential" testimony in the absence of any prejudice)); *see also In re Nitro Leisure Prods., LLC*, 2003 WL 25669322, at *1 (excluding expert testimony based on failure to satisfy Rule 26(a)(2)(B) "is not appropriate where a party's actions were justified or harmless"); Fed. R. Civ. P. 37 (party may not use evidence at trial if it fails to comply with Rule 26 requirements "unless the failure was substantially justified or harmless"). Thus, excluding expert testimony is an extreme sanction that is inappropriate here.[4]

### III. ALTERNATELY, MR. ZEBRAK'S TESTIMONY IS ADMISSIBLE AS LAY OPINION TESTIMONY UNDER RULE 701.

Assuming arguendo that Mr. Zebrak's opinions did not meet Rule 702's standards of expert testimony, they would still be admissible as the opinions of a lay witness under Federal Rule of Evidence 701. *See Williams Enters., Inc. v. Sherman R. Smoot Co*., 938 F.2d 230, 234 (D.C. Cir. 1991) ("The fact that the [witness] based his opinion on specialized knowledge and might have been able to offer his opinion as an expert does not mean he was required to do so").

---

[4] Although Defendants' Motion once references Rule 37, Mot. at 9, Defendants make no argument that any of factors that courts weigh in considering Rule 37 sanctions requests are present here, as certainly they are not. *See Smith v. Jacobs Eng'g Grp., Inc.*, No. 4:06cv496-WS/WCS, 2008 WL 4264718, at *6 (N.D. Fla. Mar. 20, 2008) (citations omitted) (in considering whether to impose Rule 37 sanctions, "the following factors should guide [courts'] discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." (quotation marks omitted)), *report and recommendation adopted by*, 2008 WL 4280167 (N.D. Fla. Sept. 12, 2008).

Rule 701 permits a lay witness to offer opinions that are: "(a) rationally based on the witness's perception, (b) helpful to a clear understanding of the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Rule 701 is frequently invoked to permit lay witnesses to testify on a variety of issues "based upon their particularized knowledge garnered from years of experience within the field." *United States v. Hill*, 643 F.3d 807, 841 (11th Cir. 2011) (quoting *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co. Ltd.*, 320 F.3d 1213, 1223 (11th Cir. 2003)), *cert. denied*, 132 S. Ct. 1988 (2012). Courts have admitted under Rule 701 the testimony of experienced bank employees on the issue of whether disclosures or misrepresentations would affect their decision to approve a loan, *id.* at 842; the testimony of a federal agent testifying as to the meaning of certain code words used to mask criminal activity, *United States v. Jayyousi*, 657 F.3d 1085, 1102-03 (11th Cir. 2011), *cert. denied*, 133 S. Ct. 29 (2012); the testimony of a business owner and employees based on their professional experience regarding their estimates on prices and repairs and whether those estimates were reasonable in the industry, *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.,* 320 F.3d 1213, 1223 (11th Cir. 2003); the testimony of police officers about the characteristics that make a boat more likely to be used in drug-trafficking, *United States v. Tinoco*, 304 F.3d 1088, 1117-19 (11th Cir. 2002); and the testimony of a business owner regarding damages suffered by the business, *Excess Risk Underwriters, Inc. v. Lafayette Life Insurance Co.*, No. 01-4111-Civ., 2004 WL 6044760, at *14-15 (S.D. Fla. July 1, 2004).

If the Court finds that Mr. Zebrak's expert testimony does not meet the standards for admissibility under Rule 702, his testimony is still admissible as lay testimony based on his extensive knowledge and experience gained from years as a copyright attorney and industry expert, and based on his personal perceptions in reviewing the contents of the thousands of files at issue and the various indicators that suggest whether they are infringing. Mr. Zebrak can describe to the jury each of the factors he used in reviewing each file, how each of those factors comport with his years of experience as a copyright attorney, and what he perceived about each file based on his review. *See, e.g., Hill*, 643 F.3d at 840-42 (Rule 701 allows lay witnesses to testify based on their own personal experiences where "testimony [is] 'based upon their particularized knowledge garnered from years of experience within the field'" (quoting *Tampa Bay Shipbuilding, Ltd.,* 320 F.3d at 1223)).

12

**CONCLUSION**

For the foregoing reasons, Defendants' motion should be denied in its entirety.

DATED: November 6, 2013

Respectfully submitted,

By: _/s/ Karen L. Stetson___
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

| | |
|---|---|
| MOTION PICTURE ASSOCIATION OF AMERICA, INC. | JENNER & BLOCK LLP |
| Karen R. Thorland (*Pro Hac Vice*) | Steven B. Fabrizio (*Pro Hac Vice*) |
| 15301 Ventura Blvd. | David A. Handzo (*Pro Hac Vice*) |
| Building E | Kenneth L. Doroshow (*Pro Hac Vice*) |
| Sherman Oaks, CA 91403 | Luke C. Platzer (*Pro Hac Vice*) |
| Telephone: (818) 995-6600 | 1099 New York Ave., N.W. |
| Facsimile: (818) 285-4403 | Suite 900 |
| | Washington, DC 20001 |
| | Telephone: (202) 639-6000 |
| | Facsimile: (202) 639-6066 |

*Attorneys for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of November, 2013, I caused the following document to be served on all counsel of record on the attached service list via the Court's ECF System:

**PLAINTIFFS' OPPOSITION TO HOTFILE CORPORATION AND ANTON TITOV'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF SCOTT ZEBRAK**

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Karen L. Stetson
Karen L. Stetson

## SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
CASE NO. 11-C1V-20427-WILLIAMS-TURNOFF**

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

*Attorney for Defendants Hotfile Corp. and Anton Titov*

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116 Phone:617-426-0000

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201

*Attorney for Defendants Hotfile Corp. and Anton Titov*