# Exhibit A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES,
INC., and WARNER BROS.
ENTERTAINMENT INC.,

     Plaintiffs,

                        CASE NO.
   vs.               11-20427-WILLIAMS-TURNOFF

HOTFILE CORP., ANTON TITOV,
and DOES 1-10,

     Defendants.
_____
AND RELATED CROSS-ACTION.
_____

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF DAVID P. KAPLAN, ESQUIRE

PURSUANT TO FEDERAL RULE 30(b)(6)

Los Angeles, California

Tuesday, December 13, 2011

Volume 1

Reported by:
LORI SCINTA, RPR
CSR No. 4811

Job No. 177476B


877.955.3855

DAVID P. KAPLAN, ESQ.                              12/13/2011
CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
04:11  1    we have told you.
04:11  2            MR. ENGSTROM:  And Mr. Kaplan has not --
04:11  3       Q    Have you prepared -- been prepared in any way
04:11  4    to discuss the files identified in Schedule A?
04:11  5            MR. FABRIZIO:  You haven't even put -- put
04:11  6    Schedule A in front of him, if you want to ask him that
04:11  7    question.
04:11  8            MR. ENGSTROM:  Gladly.  I represent that this
04:11  9    is --
04:11 10            MR. FABRIZIO:  No.  Put the real file -- not
04:11 11    your computer.
04:11 12            If you want to ask him that question, get a
04:11 13    printout and put it in front of him.
04:11 14            MR. ENGSTROM:  Very well.  Let's get this
04:11 15    printout.
04:11 16            We can go off the record.
04:11 17            THE VIDEOGRAPHER:  We are going off the record
04:11 18    at 4:11 P.M.
04:15 19            (Recess taken.)
04:15 20            THE VIDEOGRAPHER:  We are back on the record at
04:15 21    4:15 P.M.
04:15 22            MR. FABRIZIO:  Okay.  Counsel had a discussion
04:15 23    off the record to try and facilitate the questioning on
04:15 24    interrogatory -- Supplemental Interrogatory No. 1,
04:15 25    Warner Bros. Exhibit 27.
```



```
04:15   1              What I will do is explain to you my best
04:15   2     understanding of how that Exhibit A was made, prepared
04:15   3     by my office, counsel's office.
04:15   4              And then you are free to ask Mr. Kaplan if his
04:15   5     understanding is consistent with what I tell you.
04:15   6              And then I understand you have specific
04:15   7     instances that you want to ask him about.
04:15   8              MR. ENGSTROM:  Yes.
04:15   9              MR. FABRIZIO:  Is that acceptable to you?
04:15  10              MR. ENGSTROM:  That is acceptable.
04:15  11              MR. FABRIZIO:  Okay.  In response to a court
04:15  12     order that plaintiffs identify the files, the individual
04:15  13     files, posted on Hotfile that they contend to be
04:15  14     infringing in this action, plaintiffs took a list of --
04:16  15     plaintiffs' counsel took a list of titles that
04:16  16     were owned by -- the rights to which were owned by the
04:16  17     various plaintiffs in this action.
04:16  18              We had produced from defendants content
04:16  19     reference data that included -- I believe it included --
04:16  20     well, it certainly included URL information, but I
04:16  21     believe it also included other metadata.
04:16  22              We performed database searches of the titles
04:16  23     that we knew to be owned by -- the rights to which were
04:16  24     owned by plaintiffs against the database that was
04:16  25     produced by defendants and from that raw search came up
```



```
04:16   1    with some larger number of URLs than were ultimately
04:16   2    provided to defendants in the interrogatory that is
04:16   3    Warner Bros.' 27.
04:16   4             Thereafter, we had -- plaintiffs' counsel had
04:17   5    lawyers, paralegals and other support staff manually
04:17   6    look through each of the identified URLs I believe
04:17   7    associated with whatever metadata was available at the
04:17   8    time so as to eliminate from the list any URLs that
04:17   9    appeared to have been -- that appeared to have matched a
04:17  10    search term but were not in fact the work that we were
04:17  11    looking for.
04:17  12             And -- and the result of that was the list that
04:17  13    was attached to Warner Bros. 27 which on its face and by
04:17  14    its terms advised defendants that at the time we
04:17  15    provided it, we did not yet have the actual content
04:17  16    files but that we would be downloading the content files
04:17  17    and doing subsequent analysis to be absolutely certain
04:17  18    that the URLs that were identified by the process I just
04:17  19    described contained content that accurately reflected
04:18  20    the title of the work we were looking for.
04:18  21             That supplemental response we have not yet
04:18  22    provided because I don't know that we have actually
04:18  23    completed the download of the content files, but that is
04:18  24    a process that is under way.
04:18  25             MR. ENGSTROM:  A few clarifications that might
```

DAVID P. KAPLAN, ESQ.                               12/13/2011
CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
04:18   1    be in order?
04:18   2            MR. FABRIZIO:  Absolutely.  I'm not trying to
04:18   3    hide the ball on this, so go ahead.
04:18   4            MR. ENGSTROM:  So when you say "searching the
04:18   5    database," are you saying searching for file, URLs?
04:18   6            MR. FABRIZIO:  I believe that there is more to
04:18   7    be searched than just URLs.  I believe there is other
04:18   8    metadata that would contain name file information.
04:18   9            MR. ENGSTROM:  Okay.  And this search was done
04:18  10    on these files that are identified in the interrogatory
04:18  11    response -- Schedule A to interrogatory -- Schedule A to
04:18  12    the response -- Schedule A of the Response to
04:18  13    Interrogatory No. 1 was done without looking at content
04:18  14    files -- the content of the files?
04:18  15            MR. FABRIZIO:  For most -- I believe that there
04:18  16    may have been -- there may be exceptions but, in the
04:18  17    main, in the main, plaintiffs did not yet have access to
04:18  18    defendants' database of content files.
04:19  19            So when we -- as we state in the interrogatory
04:19  20    response itself, when we conducted the database searches
04:19  21    of titles of works against defendants' data and
04:19  22    metadata, we did not have from -- in the main, we did
04:19  23    not have access to the actual content files.
04:19  24            And as we say in Warner Bros.' 27, in the
04:19  25    interrogatory response itself, these were provisional or
```



DAVID P. KAPLAN, ESQ.                             12/13/2011
CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
04:19  1    preliminary results that would be further validated once
04:19  2    we had access to the content files, which I believe the
04:19  3    court ordered, so that we could download the content
04:19  4    files and make definitive evidentiary-quality
04:19  5    determinations.
04:19  6            MR. ENGSTROM:  By looking at the content?
04:19  7            MR. FABRIZIO:  Among other things, but yes.
04:19  8            MR. ENGSTROM:  And that's a process that's
04:19  9    still --
04:19 10            MR. FABRIZIO:  I don't want to represent what
04:19 11    state that process is in right now because I'm not sure,
04:19 12    but I believe it is a process that is still ongoing.
04:19 13            MR. ENGSTROM:  Okay.
04:19 14            MR. FABRIZIO:  But this is -- I don't believe
04:19 15    anything I have just said about the process and the
04:19 16    provisional nature of the responses and the downloading
04:19 17    of content to review is something that is not stated in
04:20 18    the objections to the interrogatory itself.
04:20 19    BY MR. ENGSTROM:
04:20 20       Q   Is it Warner's understanding, Mr. Kaplan, that
04:20 21    what counsel has just described is the process by
04:20 22    which -- is the basis for Warner's contention that those
04:20 23    files are infringing that are identified in Schedule A?
04:20 24       A   It's Warner's -- it's my understanding that
04:20 25    that is the process by which Schedule A was put
```



DAVID P. KAPLAN, ESQ. 12/13/2011
CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
04:20  1    together.
04:20  2         Q   Right.  And Schedule A -- is it Warner's
04:20  3    understanding that Schedule A represents the files that
04:20  4    Warner contends are infringing?
04:20  5             MR. FABRIZIO:  Subject to the objections --
04:20  6             MR. ENGSTROM:  Yes.
04:20  7             MR. FABRIZIO:  -- in the interrogatory itself?
04:20  8             THE WITNESS:  Yes, subject to the interrogatory
04:20  9    itself, yes.
04:20 10    BY MR. ENGSTROM:
04:20 11         Q   And it's your understanding that that is the
04:20 12    definitive and whole process that plaintiffs' counsel
04:20 13    has used to identify those files?
04:20 14         A   Those words are awkward in the situation
04:20 15    because the description describes a process that is not
04:20 16    complete, so --
04:21 17         Q   The process being described, I'm referring to,
04:21 18    not the completion of said process.
04:21 19         A   Yes, that's my understanding --
04:21 20             MR. FABRIZIO:  Objection.  Vague.
04:21 21             THE WITNESS:  Yes, that what counsel has put on
04:21 22    the record reflects that the -- the process that counsel
04:21 23    has used to come up with Schedule A.
04:21 24    BY MR. ENGSTROM:
04:21 25         Q   So the basis for Warner's contention that the
```



DAVID P. KAPLAN, ESQ. 12/13/2011
CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
04:21   1    files identified in Schedule A infringe Warner's
04:21   2    copyrights is the process just described by counsel,
04:21   3    which is searching for URLs, file names and other
04:21   4    metadata to identify matches with Warner titles; and
04:21   5    then listing them first as infringing, and later going
04:21   6    back and reviewing the content?
04:21   7             MR. FABRIZIO:  Objection.  Mischaracterizes
04:21   8    what I said --
04:21   9             THE WITNESS:  Yeah.
04:21  10             MR. FABRIZIO:  -- and ignores the objections in
04:21  11    the interrogatories.
04:21  12             THE WITNESS:  My understanding is how
04:22  13    Mr. Fabrizio described it.
04:22  14    BY MR. ENGSTROM:
04:22  15        Q    What was incorrect in my understanding of what
04:22  16    was described, in Warner's understanding of it?
04:22  17             How was I incorrect?
04:22  18             MR. FABRIZIO:  Would you like to have "my"
04:22  19    answer read back?
04:22  20             MR. ENGSTROM:  Well, what was incorrect about
04:22  21    the way I described it, is my question.
04:22  22             MR. FABRIZIO:  You're asking me, because I
04:22  23    can -- it was my response.  It was my stipulation.
04:22  24             MR. ENGSTROM:  If he agrees to it, then yes.
04:22  25             MR. FABRIZIO:  Sure.
```



88

```
04:22  1            THE WITNESS:  Yes.
04:22  2            MR. FABRIZIO:  We didn't just run searches and
04:22  3   hand the results over to you and say, "This is a list of
04:22  4   what we contend is infringing."
04:22  5            We spent hundreds of man-hours, maybe
04:22  6   thousands, but certainly hundreds of man-hours having
04:22  7   human beings look through the metadata and all
04:22  8   information with regard to those files.
04:22  9            With regard to some of them, "they" may have in
04:22 10   fact been content files to look at but, in the main, we
04:22 11   did not yet have the content files.
04:22 12            So we advised defendants that we would get the
04:22 13   content files from defendants and do further analysis.
04:22 14            MR. ENGSTROM:  What metadata was looked at?
04:22 15            MR. FABRIZIO:  I believe all the metadata that
04:23 16   Hotfile made available to us was looked at.
04:23 17   BY MR. ENGSTROM:
04:23 18       Q    Okay.  And we'll talk about files that are
04:23 19   produced -- files that are -- content files that have
04:23 20   already been produced.
04:23 21            But is that your understanding as to what was
04:23 22   done and that is the basis for Warner's allegation -- or
04:23 23   identification of files in Schedule A that it alleges
04:23 24   are infringing?
04:23 25       A    It is.
```

