UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/



FILED by KAL D.C.
NOV 06 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO
PRECLUDE EVIDENCE CONCERNING FINANCIAL INFORMATION
REGARDING LEMURIA COMMUNICATIONS INC.**

[HIGHLY CONFIDENTIAL]

[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

75213.3

## TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................1

ARGUMENT ...................................................................................................................................3

I. EVIDENCE CONCERNING LEMURIA IS RELEVANT TO CONTRADICT DEFENDANTS' CLAIM THAT HOTFILE IS A SMALL COMPANY WITH FEW FINANCIAL RESOURCES. .........................................................................................3

II. TITOV'S AND STOYANOV'S CONCEALMENT OF THE FINART LOAN IS ADMISSIBLE TO IMPEACH THEIR CREDIBILITY. .............................................5

III. THE EVIDENCE CONCERNING LEMURIA IS NOT UNFAIRLY PREJUDICIAL......6

CONCLUSION................................................................................................................................7

# TABLE OF AUTHORITIES

**CASES**

*EEOC v. Local 580, International Ass'n of Bridge, Structural & Ornamental Ironworkers*, 133 F.R.D. 445 (S.D.N.Y. 1990) ............................................................................ 4

*FTC v. Trudeau*, No. 12-MC-022, 2012 WL 6100472 (S.D. Ohio Dec 07, 2012) ....................... 4

*Koch v. Koch Industries, Inc.*, No. 85-1636, 1993 WL 23738 (D. Kan. Jan. 6, 1993) ................. 4

*United States v. Montani*, 204 F.3d 761 (7th Cir. 2000) .............................................................. 5

*United States v. Cassim*, 693 F. Supp. 2d 697 (S.D. Tex. 2010) .................................................. 6

**OTHER AUTHORITIES**

Fed. R. Evid. 403 .......................................................................................................................... 6

Fed. R. Evid. 608 .......................................................................................................................... 5

75213.3

## INTRODUCTION

Defendants Hotfile Corporation and Anton Titov ("Defendants") have moved to preclude Plaintiffs from introducing evidence regarding the finances and financial transactions of Lemuria Communications Inc. ("Lemuria"), a company nominally owned by Titov but which the evidence has shown was used by Defendants as a shell corporation to conduct Hotfile's business affairs. In particular, Defendants seek to exclude evidence about a $500,000 loan that Lemuria made to FinArt Ltd., a company run by a friend of one of Hotfile's other owners, Rumen Stoyanov, and which was negotiated by Stoyanov (who himself has no nominal corporate affiliation with Lemuria) and then paid back to Hotfile (rather then back to Lemuria). Defendants' principal argument is that evidence about Lemuria is not relevant. But Lemuria's financial dealings – including the extent to which Defendants disregarded the corporate form and treated Lemuria as an extension of Hotfile – are of course relevant. They show that Hotfile and its owners routinely used Lemuria to channel and store large amounts of money. They also show that Defendants approached even large financial transactions with a level of informality and lack of documentation that calls into question the reliability and accuracy of their financial records and claimed expenses. And Titov's and Stoyanov's actions to conceal the loan reflect upon the credibility of both in a case in which Defendants intend to call Titov as a witness at trial and present Stoyanov's testimony by deposition. All of these call into question Defendants' likely argument at trial that Hotfile is a small company with few financial resources. Moreover, the probative value of that evidence is not "substantially outweighed" by potential prejudice, as it directly contradicts Defendants' likely efforts to seek to reduce any damages award against them by pleading poverty, and impeaches two of their witnesses. To the extent there is any concern about possible prejudice from the loan (which there should not be), it could be easily addressed with an appropriate jury instruction. Defendants' motion should be denied.

## BACKGROUND

Defendants have tried in this case to cast Hotfile as a small start-up with few financial resources to fight the rampant infringement on its system or even to litigate this case. For instance, they have argued that "[w]hile Plaintiffs have unlimited resources, Hotfile does not," and that an interlocutory appeal was needed in part because "Plaintiffs seek to ruin Hotfile" through a damages award at trial. *See* Defs.' Mem. in Opp. to Pls.' Mot. to Bifurcate

1

75213.3

Counterclaim 1, 3, D.E. 551; Defs.' Reply Mem. in Supp. of Mot. for Certification of Interlocutory Appeal, D.E. 548, at 5.

During discovery in this case, however, it became clear that Defendants not only realized substantial revenues, but that Hotfile Corp. is not the only relevant corporate entity to Defendants' finances. Among other things, Defendants used Lemuria to channel money, store money, and conduct business on Hotfile's behalf. The full extent of their use of Lemuria in this manner was apparent at Titov's deposition. Among other things, it became clear that Lemuria is entirely owned and operated by Titov, see Excerpts of Transcript of Deposition of Anton Titov (Dec. 5, 2011) ("Titov Dec. 5, 2011 Tr.") at 64:19-65:11; 121:21-122:1, Declaration of Luke C. Platzer in Opposition to Defendants' Motions in Limine and Daubert Motion ("Platzer Decl."), Ex. 5, that Hotfile is Lemuria's only source of revenue, see id. at 125:3-5, that Lemuria pays third parties to provide various services to Hotfile, such as bandwidth, webhosting, and legal fees, see id. at 38:21-40:2; 56:13-57:23, that when Lemuria makes purchases for Hotfile, such as to buy additional servers, the transaction is carried out by Titov acting for both Lemuria and Hotfile, see id. at 49:12-50:1, that Titov regularly performs services for both Lemuria and Hotfile, see id. 132: 2-12, that Lemuria pays large sums of money to Blue Ant, an entity also run by Hotfile officers Vangelov and Stoyanov, to develop software for Hotfile, see id. at 107:15-108:25; 128:19-25, that there was at the relevant times no formal agreement or standard method for Hotfile to reimburse Lemuria for making these purchases or paying for these services, see id. at 51:3-52:12, that Hotfile just pays Lemuria its costs, or perhaps slightly more, see id. at 94:18-95:15, that, even though Hotfile does not pay Lemuria much above its costs, Titov draws a salary of $20,000 a month from Lemuria, far greater than his salary from Hotfile, see id. at 54:20-55:3, and that other than Hotfile affiliates, the Hotfile entities pay no one other than Lemuria, see id. at 114:4-9.

Titov's deposition testimony also revealed that, although FinArt provides no services for Lemuria, Lemuria gave a $500,000 loan to FinArt without reducing the terms of the loan to writing, see id. at 135:6-136:10, that FinArt is run by a friend of Stoyanov, id., that Stoyanov, rather than Titov, negotiated the FinArt loan, even though Stoyanov is not formally associated with Lemuria in any way, see id. at 137:14-18, and that the loan was paid back to Hotfile, which eventually paid the amount back to Lemuria, id. at 135:10-136:10; 137:10-13. Further, Titov testified at his deposition about email messages in which Stoyanov directed Titov to transfer

2

75213.3

$500,000 weekly from Hotfile Ltd. to Lemuria, and then $180,000 a week from Lemuria to FinArt. *See id.* at 144:1-146:16. Stoyanov directed Titov to indicate that the money was for webhosting and servers, even thought Titov testified at his deposition that FinArt never provided such services for Lemuria or Hotfile. *See id.* In another email thread, Vangelov stated to Titov that money should be moved from Hotfile's accounts to Lemuria's, because it was "not good all of the money to be in the hotfile account [sic.]." *See id.* at 153:12-18. Titov responded that, for tax reasons, they should wait to transfer the money until after December 31, after which date Hotfile could move as much money to Lemuria's account as it wanted to. *See id.* at 154:13-155:16.

Later deposition testimony also revealed that Lemuria, over a period of approximately one-and-a-half years, moved about $10 million dollars from its PayPal account to bank accounts in the United States for the purpose of paying expenses on behalf of Hotfile. *See* Excerpt of Transcript of Deposition of Titov (Dec. 8, 2011) at 619:22-622:21, Platzer Decl. Ex. 6. In short, Titov's testimony showed that Hotfile regularly uses Lemuria, essentially a shell corporation and an alter ego of Titov, to store Hotfile's money, pay for Hotfile's expenses, and apparently provide loans for friends of Hotfile's owners.

## ARGUMENT

### I. EVIDENCE CONCERNING LEMURIA IS RELEVANT TO CONTRADICT DEFENDANTS' CLAIM THAT HOTFILE IS A SMALL COMPANY WITH FEW FINANCIAL RESOURCES.

Defendants' use of Lemuria to channel and store Hotfile's funds without regard to corporate formalities speaks directly to Hotfile's financial situation – a factor the jury will need to consider in determining an appropriate damages award. Indeed, Hotfile clearly intends to plead to the jury that it is a small company, and that (due to its limited financial resources) a smaller statutory damages award would be sufficient to have any desired deterrent effect. Evidence that Defendants treated Lemuria as an extension of Hotfile for financial purposes (such as the FinArt loan) is necessary for the jury fully to understand Hotfile's financial situation. For instance, the evidence shows that the balance sheet of Hotfile Corp. alone is not the only relevant one – the jury would also need to consider the assets and profitability of Hotfile's affiliate corporations such as Lemuria, as well as the fact that Defendants engaged in poorly-documented financial transactions in which money was sent to third parties in non-arms-length transactions and then falsely booked as business expenses. If Hotfile wants to make its size and financial

3

health an issue at trial, it must face contrary evidence showing that Hotfile's coffers may not be nearly as empty as Hotfile may claim.

Courts in fact regularly hold financial transactions with related entities relevant for this exact reason. For instance, the court's decision in *FTC. v. Trudeau* is instructive. There, the FTC sought to collect a judgment entered against a defendant in a prior matter. *See* No. 12-mc-022, 2012 WL 6100472, at *1 (N.D. Ohio Dec. 7, 2012). Because the defendant claimed that he was unable to pay the judgment against him, the FTC subpoenaed the bank records of non-party company Global Information Network (GIN), which it believed might contain information on the defendant's finances because he and the company allegedly had strong financial ties. *See id.* at *1-2. GIN moved to quash an FTC subpoena of the company's bank records, arguing that because it was a non-party to the case and the defendant was never an owner, manager, officer or director of the company, its bank records were not relevant to determining the extent of his financial resources. *Id.* at *2. Moreover, and much like Defendants argue here, GIN argued that any evidence of financial dealings with the defendant simply related to transactions in the ordinary course of business. *Id.* at *5. The court denied GIN's motion, holding that the FTC had put forth evidence to show that the transactions were not independent, but may have been executed to conceal the defendant's assets in GIN. *Id.* at *5-6.

Similar relevance considerations apply here. Like the defendant in *Trudeau*, Defendants have put Lemuria's transactions in issue by claiming that Hotfile has few financial resources, despite the evidence that Hotfile regularly stores money in and funnels money through Lemuria. Titov's deposition testimony shows that the transactions between Lemuria and Hotfile, like the transactions between GIN and Trudeau, are not arms-length transactions executed between distinct entities in the ordinary course of business, but rather are means to shuttle money between two entities controlled by related parties. In light of such evidence, Defendants cannot argue that evidence about Lemuria and its finances are irrelevant while pleading poverty on behalf of Hotfile. *See also Koch v. Koch Indus., Inc.*, No. 85-1636, 1993 WL 23738, at *6-7 (D. Kan. Jan. 6, 1993) (granting plaintiffs' discovery request for financial information regarding separate entities, because the defendants, in attempting to show that the profits of a refinery had dropped, had opened the door to materials tending to show that the profits were being diverted to other entities); *EEOC v. Local 580, Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers*, 133 F.R.D. 445, 448 (S.D.N.Y. 1990) (holding that the EEOC was entitled to production of non-

4

parties' financial information, despite the non-parties' argument that such records were irrelevant because the non-parties were legally separate from the defendant, where there was evidence of money being shared between the non-parties and the defendant).

As for the FinArt loan, Defendants argue that "there is no evidence that the loan was in any way related to Hotfile's operations," and that even if such evidence existed, "it has absolutely no bearing on the question of damages to Plaintiffs . . . ." Defs.' Mot. at 3. This argument misses the point. The issue here is not whether the loan was related to Hotfile's operations, or even whether the loan was legitimate or legal. Rather, the evidence is relevant simply to show that Hotfile regularly uses Lemuria to store and channel large amounts of money and that there is no true separation between the companies, or between the companies and the personal financial dealings of their owners – facts the jury could consider relevant in obtaining a full understanding of Hotfile Corp.'s balance sheet.[1]

## II. TITOV'S AND STOYANOV'S CONCEALMENT OF THE FINART LOAN IS ADMISSIBLE TO IMPEACH THEIR CREDIBILITY.

Further relevant to the FinArt loan is the fact that Stoyanov and Titov both went through steps to conceal it by documenting it as a payment for webhosting services and servers that FinArt did not actually provide. *See* Titov Dec. 5, 2011 Tr. at 144:1-146:16, Platzer Decl. Ex. 5. Their concealment and inaccurate recording of the loan is a paradigmatic case of a "specific instance[] of a witness's conduct ... probative of the character for truthfulness or untruthfulness" of both Titov and Stoyanov. Fed. R. Evid. 608(b). Because Defendants have designated both individuals as witnesses at trial (Titov by live testimony and Stoyanov by deposition), Rule 608(b)(1) permits Plaintiffs to cross-examine them on past conduct, such as the FinArt loan, that the jury could reasonably consider as reflecting adversely on their credibility. *See United States v. Montani*, 204 F.3d 761, 768 (7th Cir. 2000) (witness's "extensive efforts to hide" involvement in a self-dealing transaction admissible to question witness under Rule 608(b)).

The case for allowing such questioning is particularly powerful here. Defendants are likely to argue at trial that they should be subject to a lower statutory damages award due to their (supposedly) limited financial resources. Hotfile's profitability is also at issue in determining

---

[1] Defendants' also argue that the FinArt loan is irrelevant because it was repaid to Lemuria. This again misses the point. The evidence is not relevant because it shows a depletion of Lemuria's assets in that particular instance, but rather because it shows the lack of any real corporate separation between Hotfile and Lemuria, or between those companies and Hotfile's principals.

5

75213.3

statutory damages, and Defendants are sure to submit evidence of Hotfile's expenses to argue that not all of their substantial revenues were profits. In evaluating any of Defendants' claims regarding Hotfile's financial resources and profitability, it would be particularly useful to the jury to understand that Stoyanov and Titov had in the past purposefully recorded information regarding Hotfile's financial transactions inaccurately and categorized them as nonexistent business expenses. Indeed, Plaintiffs would be prejudiced by being deprived of the opportunity to so call into question the credibility of Defendants' testimony regarding their assets, expenses, and profits.

### III. THE EVIDENCE CONCERNING LEMURIA IS NOT UNFAIRLY PREJUDICIAL.

Relying on a single remark made by Plaintiffs' counsel during Titov's deposition that Lemuria was Stoyanov's "piggy bank," Defendants' argue that all of the evidence related to Lemuria's finances or the FinArt loan is unduly prejudicial. Even assuming that the term "piggy bank" is prejudicial, any prejudice resulting from that term would not be undue, as "piggy bank" is a common term and a logical way to convey that, as Titov testified to at his deposition, Hotfile regularly stored significant amounts of money in Lemuria and used Lemuria to pay its bills, and Stoyanov used Lemuria to make a loan to his friend, even though he has no formal affiliation with Lemuria whatsoever. *See Sims v. Bayer HealthCare Pharm. (In re Yasmin & Yaz (Drospirenone) Mktg., Sales & PMF Prods. Liab. Litig.)*, No. 09-cv-10012, 2011 WL 6740391, at *9 (S.D. Ill. Dec. 22, 2011) (denying a motion in limine to exclude references to "ghostwriting" in medical literature, as that term was not necessarily pejorative and was an accurate description of what occurred); *United States v. Cassim*, 693 F. Supp. 2d 697, 701-02 (S.D. Tex. 2010) (denying a motion to exclude the term "music piracy" at trial, "because this term was and is commonly used to refer to the conduct in question, it will be difficult for witnesses and lawyers to generate an adequate substitute during questioning.").

More generally, given that the testimony about Lemuria calls into question Defendants' framing of Hotfile as a small company with few financial resources – a point that may have some importance to the damages inquiry – Defendants' cannot show that the probative value is "substantially outweighed" by the potential prejudice. *See* Fed. R. Evid. 403. Defendants cannot claim poverty and then turn around and say that contradictory evidence is too damaging. Similarly, although Titov's and Stoyanov's concealment of the FinArt loan might be prejudicial to Defendants in the sense that it reflects upon the credibility of two of their trial witnesses, valid

6

75213.3

impeachment of a party's witnesses is not the sort of prejudice against which Rule 403 is supposed to protect.

## CONCLUSION

For the reasons stated, Defendants' motion *in limine* should be denied.

DATED:  November 6, 2013

MOTION PICTURE ASSOCIATION OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone:  (818) 995-6600
Fax:  (818) 285-4403

Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: (305) 416-6880
Facsimile:  (305) 416-6887

JENNER & BLOCK LLP
Steven B. Fabrizio (*Pro Hac Vice*)
David A. Handzo (*Pro Hac Vice*)
Kenneth L. Doroshow (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile:  (202) 639-6066
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of November, 2013, I caused the following document to be served on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE EVIDENCE CONCERNING FINANCIAL INFORMATION REGARDING LEMURIA COMMUNICATIONS INC.**

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/ Karen L. Stetson
Karen L. Stetson

## SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile orp. et al.**
**CASE NO. 11-C1V-20427-WILLIAMS-TURNOFF**

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

*Attorney for Defendants Hotfile Corp. and Anton Titov*

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116 Phone:617-426-0000

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201

*Attorney for Defendants Hotfile Corp. and Anton Titov*