SPECIFIC RULES FOR DETERMINATION OF TAX FINANCIAL RESULT UPON TRANSFERS

BETWEEN PERMANENT ESTABLISHMENT IN COUNTRY AND ANOTHER DIVISION OF SAME

ENTERPRISE SITUATED OUTSIDE COUNTRY

Income from Transfer to Another Division of Enterprise

Article 155. (1) The accounting income, accounted for at market value and originating upon a transfer from a permanent establishment in the country to another division of the same enterprise situated outside the country, shall be recognized for tax purposes where:

1. the particular transfer coincides with the ordinary transactions of the said permanent establishment with third parties, or

2. the ordinary activity of the said permanent establishment consists in similar transfers to the other divisions of the enterprise.

(2) Any accounting income arising from cash resources provided by the permanent establishment to another division of the same enterprise situated outside the country shall not be recognized for tax purposes with the exception of financial institutions for which raising of cash resources and extending of loans is a core activity.

(3) Any accounting expense related to a transfer from a permanent establishment to another division of the same enterprise situated outside the country shall not be recognized for tax purposes where accounting income, which is recognized for tax purposes, does not arise at the said permanent establishment as a result of the transfer. Where, as a result of a transfer to another division of the same enterprise, situated outside the country, the permanent establishment charges accounting income at the amount of the costs actually incurred (at cost price), the accounting expenses charged in connection with the said transfer shall be recognized for tax purposes.

Expenses upon Transfer from Another Part of Enterprise

Article 156. (1) Any accounting expenses accounted for at market value in connection with any goods, services and rights which are the result of a transfer from another division of the same enterprise, situated outside the country, shall be recognized for tax purposes in the permanent establishment in the country where the said expenses are accounted for within the ordinary activity of the permanent establishment related to a sale of the transferred goods, services or rights in an altered or unaltered state.

(2) Any accounting expenses, accounted for at market value and originating upon transfer of any goods and services from another division of the same enterprise, situated outside the country, to a permanent establishment in the country, shall be recognized for tax purposes in the permanent establishment where:

1. the particular transfer coincides with the ordinary transactions of the said division of the enterprise with third parties, or

2. the ordinary activity of the said division of the enterprise consists in similar transfers to the other divisions of the enterprise.

(3) Any accounting expenses accounted for according to the costs actually incurred (cost price) and originating upon transfer of any services from another division of the same enterprise situated outside the country, outside the cases referred to in Paragraphs (1) and (2), shall be recognized for tax purposes in the permanent establishment in the country. Sentence one shall furthermore apply in respect of the administrative management services received in direct connection with the permanent establishment.

(4) Any accounting expenses, accounted for at costs actually incurred (cost price) and originating upon transfer of rights related to know-how, patents and other items of intellectual or industrial property, from another division of the same enterprise situated outside the country, outside the cases referred to in Paragraph (1), shall be recognized for tax purposes in the permanent establishment in the country. Where the said items are produced or acquired by the branch of activity of the enterprise which transfers the said items and which specialized in the creation or acquisition of any such items, the

accounting expenses, accounted for at market value, shall be recognized for tax purposes.

(5) Where the rights transferred under Paragraph (4) satisfy the criteria for a tax intangible fixed asset, the expenses on the acquisition thereof under Paragraph (4) shall not be recognized for tax purposes and the amounts shall be posted in the tax depreciation schedule. The tax depreciable value of the said rights shall be determined according to the standard procedure established by this Act.

(6) Any accounting expenses arising from cash resources received in the permanent establishment from another division of the same enterprise situated outside the country shall not be recognized for tax purposes with the exception of:

1. the financial institutions, for which raising of cash resources and extending of loans is a core activity, or

2. the cases in which the cash resources are provided by a third party as an interest-bearing loan for the purposes of the permanent establishment and are used exclusively in the activity of the permanent establishment; in such case, the accounting expenses accounted for at the amount of the interest payments due to the third party shall be recognized for tax purposes upon compliance with the other provisions of this Act.

Treatment of Assets upon Transfer from or to

Another Part of Enterprise
Article 157. (1) Any assets provided to the permanent establishment in the country by another division of the same enterprise situated outside the country, which are related to the activity of the permanent establishment, outside the cases referred to in Article 156 (1) herein, shall be valued for tax purposes at the costs actually incurred (cost price) by the division of the enterprise transferring the said assets. The tax depreciable assets referred to in sentence once, which are used in the activity of the permanent establishment for a period of at least two years, shall be posted in the tax depreciation schedule according to the standard procedure established by this Act.

(2) Where the tax depreciable assets referred to in Paragraph (1) are provided for temporary use for a period not exceeding two years, the permanent establishment in the country shall be recognized, for tax purposes, the accounting expenses charged to the amount of the depreciations charged by the transferring division of the enterprise for the said assets. The expenses charged may not exceed the annual tax depreciation which would have been charged if the maximum permissible annual rates of tax depreciation under Article 55 herein were used.

(3) For tax purposes, the assets transferred shall be considered as having been sold at market prices at the time of transfer of assets manufactured or acquired by the permanent establishment in the country to another division of the enterprise situated outside the country and shall be written off.

(4) In the cases referred to in Paragraph (3), upon determination of the tax financial result, the accounting financial result of the permanent establishment shall be credited with the profit and shall be debited with the loss arrived at as a difference between the market price of the asset and the accounting value thereof at the date of transfer. The temporary tax differences related to the said asset shall be recognized according to the standard procedure established by this Act. Article 66 (1) and (2) herein shall apply upon determination of the tax financial result.

(5) Paragraphs (3) and (4) shall not apply where accounting income (profit) or costs (losses) originate from the transfer of the assets. The standard procedure established by this Act shall apply in such cases.
Chapter Twenty-One

TAX REGULATION UPON DISSOLUTION THROUGH LIQUIDATION OR THROUGH

ADJUDICATION IN BANKRUPTCY AND UPON DISTRIBUTION OF SHARE IN LIQUIDATION

SURPLUS
Section I

General Dispositions

General Dispositions

Article 158. Upon dissolution through liquidation or through adjudication in bankruptcy, for the period until the expungement thereof, the taxable person shall fulfil the obligations thereof according to the standard procedure established by this Act and in compliance with the requirements of this Chapter, inter alia submitting the requisite financial statements, which shall be prepared and presented according to accounting legislation.

Section II

Corporation Tax upon Dissolution

Assessment of Tax upon Dissolution

Article 159. (1) Corporation tax shall be due at the date of entry of the dissolution in the Commercial Register.

(2) The corporation tax referred to in Paragraph (1) shall be assessed on the basis of the tax profit for the period from the beginning of the year until the date of entry of the dissolution.

(3) The prepayments remitted since the beginning of the year and until the date of entry of the dissolution shall be deducted upon assessment of the tax.

Remittance of Tax upon Dissolution

Article 160. (1) The corporation tax due under Article 159 herein shall be remitted within thirty days after the date of entry of the dissolution.

(2) The corporation tax remitted upon dissolution shall be deducted from the annual corporation tax due for the year of dissolution or from the corporation tax due for the last tax period, where the date of submission of the motion for expungement upon liquidation or the date of expungement upon bankruptcy, as the case may be, is in one and the same year as the date of dissolution.

(3) Where the date of dissolution and the date of submission of the motion for expungement upon liquidation, or the date of dissolution upon bankruptcy, as the case may be, are in different years, the financial statement prepared as at the date of dissolution and the financial statement prepared as at the 31st day of December of the year of dissolution of the taxable person shall be submitted with the annual tax return on the year of dissolution.

Section III

Corporation Tax on Last Tax Period

Last Tax Period

Article 161. (1) The last tax period of any taxable person dissolved through liquidation shall commence on the 1st day of January of the year in which the motion for expungement under Article 273 (1) of the Commerce Act was submitted and shall end on the date of submission of the said motion.

(2) The last tax period of any taxable person dissolved through adjudication in bankruptcy shall commence on the 1st day of January of the year in which the expungement was effected and shall end on the date of expungement.

(3) The last tax period of any permanent establishment of a non-resident person shall commence on the 1st day of January of the year in which the activity of the said establishment was discontinued and shall end on the date of discontinuance of the said activity.

(4) The taxable person shall be liable to corporation tax in respect of the tax profit realized during the last tax period according to the standard procedure established by this Act. The corporation tax due shall be final.

(5) For tax purposes, the assets manufactured or acquired by the permanent establishment in the country at the date of dissolution shall be considered as having been sold at market prices and shall be written off. Upon determination of the tax financial result for the last tax period of the permanent establishment, the tax financial result shall be credited with the profit and shall be debited with the loss arrived at as a difference between the market price of the assets referred to in sentence one and the accounting value of the said assets at the date of transformation. The temporary tax differences related to the

asset shall be recognized during the last tax period according to the standard procedure established by this Act. Article 66 (1) and (2) herein shall apply upon determination of the tax financial result.

Declaring of Tax on Last Tax Period
Article 162. (1) The tax return on the last tax period, determined under Article 161 (1) herein, shall be submitted on the date of submission of the motion for expungement together with a copy of the said motion.

(2) The tax return on the last tax period, as determined under Article 161 (2) herein, shall be submitted by the holder of the position of trustee in bankruptcy within thirty days after the date of expungement of the taxable person together with a copy of the judgement of court on the expungement.

(3) The tax return on the last tax period, as determined under Article 161 (3) herein, shall be submitted on the date of discontinuance of the activity.

(4) Where the date of submission of the motion for expungement upon liquidation or the date of expungement upon bankruptcy, as the case may be, or the discontinuance of the activity of a permanent establishment is before the 31st day of March and the annual tax return for the last preceding year has not been submitted, the taxable person or the holder of the position of trustee in bankruptcy shall submit the said return within the time limits referred to in Paragraphs (1), (2) and (3).

(5) Where the date of dissolution and the date of submission of the motion for expungement upon liquidation, or the date of expungement upon bankruptcy, as the case may be, are in one and the same year, the financial statement prepared at the date of dissolution and the financial statement prepared at the date of submission of the motion for expungement or at the date of expungement, as the case may be, shall be submitted with the tax return referred to in Paragraphs (1) and (2).

Remittance of Tax on Last Tax Period
Article 163. (1) The corporation tax due on the last tax period, determined under Article 161 (1) herein, shall be remitted on or before the date of submission of the motion for expungement of the taxable person. The said tax shall be final.

(2) In the cases referred to in Article 161 (2) herein, the corporation tax due on the last tax period shall be remitted on or before the date of expungement.

(3) In the cases referred to in Article 161 (3) herein, the corporation tax due on the last tax period shall be remitted on or before the date of discontinuance of activity. The said tax shall be final.

(4) Where the date of submission of the motion for expungement upon liquidation or the date of expungement upon bankruptcy or the discontinuance of activity of a permanent establishment is before the 31st day of March and the corporation tax for the preceding year has not been remitted, the taxable person shall remit the corporation tax for the preceding year within the time limits referred to in Paragraphs (1), (2) and (3).

Tax Treatment upon Continuation of Activity after Date of Submission of

Motion for Expungement by Taxable Person Dissolved through Liquidation
Article 164. (1) Any taxable person, dissolved through liquidation, which continues the activity thereof after submission of a motion for expungement, shall fulfil the obligations thereof according to the standard procedure established by this Act for the period from the date of submission of the motion for expungement until the date of expungement, inter alia declaring and remitting the corporation tax due. The liquidator shall incur solidary liability with the taxable person for the tax liabilities of the said person which have arisen in connection with the continuation of activity.

(2) The last period for tax purposes in the cases referred to in Paragraph (1) shall commence on the 1st day of January of the year in which the expungement was effected and shall end on the date of expungement or shall commence on the date of submission of the motion for expungement and shall end on the date of expungement, when the said two dates are in one and the same year.

(3) The taxable person shall be liable to corporation tax in respect of the tax profit realized during the last tax period under Paragraph (2) according to the standard procedure established by this Act. The said tax shall be final.

(4) The tax return on the last period for tax purposes in the cases referred to in Paragraph (1) shall be submitted by the holder of the position of liquidator within thirty days after the date of expungement of the taxable person together with a copy of the judgment of court on the expungement. Where the date of expungement is before the 31st day of March and the annual tax return on the preceding year has not been submitted, the holder of the position of liquidator shall submit the said return within the time limit referred to in sentence one.

(5) The corporation tax due for the last period for tax purposes in the cases referred to in Paragraph (1) shall be remitted on or before the date of expungement. Where the date of expungement is before the 31st day of March and the corporation tax for the preceding year has not been remitted, the taxable person shall remit the corporation tax for the preceding year within the time limit referred to in sentence one.

Tax Treatment upon Distribution of Share in Liquidation Surplus
Article 165. (1) The assets distributed as a share in a liquidation surplus at the time of distribution for tax purposes shall be considered as having been sold by the taxable person at market prices and shall be written off.

(2) In the cases referred to in Paragraph (1), upon determination of the tax financial result, the accounting financial result shall be credited with the profit and shall be debited with the loss arrived at as a difference between the market price of the assets and the accounting value thereof at the date of distribution of the share in a liquidation surplus. The temporary tax differences related to the said assets shall be recognized according to the standard procedure established by the Act. Article 66 (1) and (2) herein shall apply upon determination of the tax financial result.

(3) Any accounting income and expenses, accounted for in connection with the distribution of a share in a liquidation surplus in the form of assets, shall not be recognized for tax purposes.

Chapter Twenty-Two

REDUCTION, RETENTION AND EXEMPTION FROM LEVY OF CORPORATION TAX
Section I

General Dispositions

Concept of Retention
Article 166. "Corporation tax retention" shall be the right of any taxable person not to remit to the executive budget the amounts of corporation tax as assessed according to the procedure established by this Act, which subsist in the patrimony of the taxable person and are spent for purposes prescribed by a law.

General Requirement for Corporation Tax Retention or Reduction
Article 167. (1) Corporation tax shall be retained or reduced and, respectively, the accounting financial result shall be debited according to the procedure established by this Chapter, subject to the condition that the taxable person does not incur at the 31st day of December of the relevant year:

1. any coercively enforceable public obligations, and

2. any obligations for sanctions under effective penalty decrees related to violation of statutory instruments regarding public obligations, and

3. any interest payments in connection with a failure to remit the obligations referred to in Items 1 and 2 when due.

(2) Fulfillment of the requirement covered under Paragraph (1) shall be certified by the taxable person in the annual tax return.

Accounting for Retained and Reduced Corporation Tax
Article 168. (1) The retained corporation tax and the corporation tax reduction according to the procedure established by this Chapter shall be accounted for in owners' equity.

(2) The taxable persons applying the National Financial Reporting Standards for Small and Medium-Sized Enterprises shall account for the retained corporation tax and the corporation tax reduction as reserves.

Partial Recognition of Undistributable Income or Expenses

Article 169. (1) The portion of the undistributable income or expenses, corresponding to the activities in respect of which the corporation tax retention is enjoyed, shall be arrived at by multiplying the total amount of the undistributable income or expenses by the proportion of the net sales accruing from the activities in respect of which the corporation tax retention is enjoyed and all net sales.

(2) The undistributable amounts whereby the accounting financial result is adjusted, which cannot be related to any single specific activity and which are associated with the performance of an activity in respect of which a retention is enjoyed, shall be allocated to the activity in respect of which the corporation tax is retained, and the tax financial result in respect of the said activity shall be determined on the basis of the proportion referred to in Paragraph (1).

Declaring of Retained or Reduced Corporation Tax

Article 170. Where any taxable person is allowed to retain or reduce corporation tax on different grounds according to the procedure established by this Chapter, the said person shall mandatorily declare in the annual tax return the sequence in which the said person has enjoyed the different grounds for corporation tax retention or reduction.

Retention of Additionally Ascertained Corporation Tax

Article 171. (1) Any taxable person, who has been allowed to retain corporation tax in a prior year, shall furthermore have the right to retention in respect of the additionally ascertained undeclared corporation tax for the relevant prior year, subject to the condition that the said person fulfils all requirements provided for in this Chapter for the relevant corporation tax retention.

(2) The time limit for fulfilment of the said requirements shall begin to run as from the date of ascertainment of the additional corporation tax.

Cessation of Right to Retention

Article 172. (1) The right to reduction or retention according to the procedure established by this Chapter shall cease upon transformation of a taxable person, with the exception of transformation through change of the legal form according to the procedure established by Article 264 of the Commerce Act , as well as upon transfer of an enterprise under Article 15 of the Commerce Act .

(2) Paragraph (1) shall furthermore apply upon restructuring of cooperative organizations.

Non-fulfilment of Requirements

Article 173. (1) Where any requirements of this Chapter for subsequent use (spending) of retained corporation tax are not fulfilled, the said tax shall be due according to the standard procedure established by this Act for the year for which the said tax applies.

(2) Paragraph (1) shall not apply where, in the cases of transformation, the receiving companies or newly formed companies fulfil the obligations of the transferring companies in compliance with the terms and procedure established by this Chapter, referring to the transferring companies. In the cases referred to in sentence one, the receiving companies or newly formed companies shall incur solidary liability for the retained corporation tax of the transmitting companies.

(3) Paragraph (2) shall furthermore apply upon restructuring of cooperative organizations.

Section II

Exemption from Levy of Corporation Tax

Collective Investment Schemes and Investment Companies

of Closed-End Type

Article 174. Any collective investment scheme, which has been admitted to public offering in the Republic of Bulgaria, and any licensed investment company of the closed-end type under the Public Offering of Securities Act , shall be exempt from the levy of corporation tax.

Special Purpose Investment Companies

Article 175. Any special purpose investment company under the Special Purpose Investment Companies Act shall be exempt from the levy of corporation tax.

Bulgarian Red Cross

Article 176. The Bulgarian Red Cross shall be exempt from the levy of corporation tax.

Section III

General Tax Reliefs

Tax Incentives upon Hiring of Unemployed Persons

Article 177. (1) Any taxable person shall have the right to debit the accounting financial result thereof upon determination of the tax financial result, where the said person has hired a person under an employment relationship for not less than twelve successive months who, at the time of the hiring thereof, was:

1. registered as unemployed for more than one year, or

2. a registered unemployed person who had attained the age of 50 years, or

3. an unemployed person of reduced working capacity.

(2) The debiting shall be performed by the amounts paid for labour remuneration and the contributions remitted for the account of the employer to the public social insurance funds and the National Health Insurance Fund during the first twelve months after the hiring. The said debiting shall be performed on a single occasion during the year wherein the twelve-month period lapses.

(3) Debiting shall not be performed in respect of any amounts received under the Employment Promotion Act .

(4) Debiting shall not be performed where tax relief under Article 192 herein has been enjoyed in respect of the persons hired.

Enterprises Hiring People with Disabilities

Article 178. (1) Any legal person, which is a specialized enterprise or a cooperative within the meaning given by the Integration of Persons with Disabilities Act , which as at the 31st day of December of the relevant year, is affiliated to the nationally representative organizations of and for people with disabilities, shall be allowed to retain 100 per cent of the corporation tax [due therefrom] if:

1. not less than 20 per cent of the total number of employees are blind and visually impaired persons;

2. not less than 30 per cent of the total number of employees are hearing-impaired persons;

3. not less than 50 per cent of the total number of employees are people with other disabilities.

(2) The legal persons referred to in Paragraph (1) shall be allowed to retain the corporation tax due therefrom in proportion to the number of people with disabilities or occupational rehabilitees to the total of number of employees, where the conditions for the number of hired persons under Paragraph (1) are not fulfilled.

(3) Retention shall be admissible where the tax retained is spent entirely on integration of people with disabilities or on the maintenance and creation of jobs for occupational rehabilitees during the two years next succeeding the year for which the retention is enjoyed. The said resources shall be planned, spent and accounted for by ordinances of the national organizations of and for people with disabilities in consultation with the Minister of Finance.

Agricultural Producers

Article 179. (1) Any legal person, which is registered as an agricultural producer, shall be allowed to retain 60 per cent of the corporation tax [due therefrom] in respect of the tax profit derived thereby from unprocessed plant and animal produce, inter alia from apiculture, sericulture, freshwater fisheries in man-made water bodies and hothouse horticulture.

(2) Retention shall be admissible where the tax retained is invested in tax tangible and intangible fixed assets needed for performance of the activities specified in Paragraph (1) not later than before the end of the year next succeeding the year for which the retention is enjoyed.

Air Traffic Services Authority

Article 180. (1) The Air Traffic Services Authority State-Owned Enterprise shall be allowed to retain 60 per cent of the corporation tax [due therefrom] in respect of the tax profit derived thereby from the core activity thereof.

(2) Retention shall be admissible where the tax retained is invested in and spent on implementation of the European programmes for integration and harmonization of the national air traffic control systems of the European countries and on maintenance of the pecuniary reserve provided for in the Civil Aviation Act .

Social and Health Insurance Funds

Article 181. (1) Any social and health insurance fund, which has been established by a law, shall be allowed to retain 50 per cent of the corporation tax [due therefrom] in respect of the economic activity thereof which is directly related or auxiliary to the implementation of the core activity thereof.

(2) Retention shall be admissible where the tax retained is invested in the core activity not later than before the end of the year next succeeding the year for which the retention is enjoyed.

Section IV

Tax Reliefs Satisfying Requirements for Permissible Regional Aid

Taxable Persons which May Not Enjoy Tax Reliefs

Article 182. The tax reliefs under this Section may not be enjoyed by any taxable persons which:

1. carry out activities in the sectors of coal, steel, shipbuilding, synthetic fibres manufacture, fisheries, as well as production of agricultural products listed in Annex I to the Treaty establishing the European Community, for the respective activity, or

2. are subject to bankruptcy proceedings, are placed in liquidation, or are subject to rehabilitation proceedings, or

3. are defined as enterprises in difficulty.

Municipalities with Unemployment Rate Above National Average

Article 183. (1) The municipalities where the rate of unemployment is by 35 per cent or more higher than the national average shall be designated annually by an order of the Minister of Finance on a motion by the Minister of Labour and Social Policy, which shall be promulgated in the State Gazette.

(2) The municipalities where the rate of unemployment is by 50 per cent or more higher than the national average shall be designated annually by an order of the Minister of Finance on a motion by the Minister of Labour and Social Policy, which shall be promulgated in the State Gazette.

(3) A municipality whereof the administrative centre is situated in another municipality shall be included in the list referred to in Paragraphs (1) and (2) on the basis of the average weighted level of unemployment in the relevant municipalities, determined on the basis of the size of the economically active population therein.

Tax Relief for Carrying Out Manufacturing Activities in Municipalities

with Unemployment Rate Above National Average

Article 184. Any taxable person shall be allowed to retain 100 per cent of the corporation tax [due therefrom] in respect of the tax profit derived thereby from the manufacturing activities carried out, including processing of materials supplied by customers, where the following conditions are simultaneously fulfilled:

1. the taxable person carries out manufacturing activities solely in municipalities where the rate of unemployment for the

year preceding the current year was by 35 per cent or more higher than the national average for the same period;

2. the conditions covered under Articles 189 and 190 herein are fulfilled.

Specific Cases of Retention

Article 185. (1) Where a municipality drops out of the scope of municipalities referred to in Article 183 herein as a result of an increase in employment, the person which has acquired the right to corporation tax retention shall preserve the said right during the next five successive years, reckoned from the year during which the region drops out of the list, subject to fulfilment of the rest of the conditions for retention.

(2) Where the taxable person satisfied the conditions referred to in Item 1 of Article 184 herein in the year preceding the year in which the municipality dropped out of the scope of municipalities referred to in Article 183 herein but did not carry out manufacturing activity during the said period owing to performance of preparatory work and the said manufacturing activity commences during a subsequent year, the right to tax retention shall accrue as from the year of commencement of the manufacturing activity and shall be preserved during the next four successive years, subject to fulfillment of the rest of the conditions for retention.

Investment Tax Credit

Article 186. (1) Any taxable person shall have the right to reduce the corporation tax due therefrom by 10 per cent of the value of the assets acquired where the conditions covered under Articles 189 and 190 herein are fulfilled.

(2) The right referred to in Paragraph (1) shall accrue subject to the condition that the initial investment is implemented entirely in municipalities where the rate of unemployment for the year preceding the current year was by 50 per cent or more higher than the national average for the same period.

(3) The taxable persons shall exercise the right referred to in Paragraph (1) for the year of acquisition of the assets. Where the amount of reduction exceeds the corporation tax due for the relevant year, the succeeding corporation tax prepayments and annual payments shall be debited with the difference.

(4) Where the assets referred to in Paragraph (1) were acquired during any period exceeding one year, the provisions of Paragraph (3) shall apply observing the sequence of occurrence.

Tax Relief for Cooperatives

Article 187. (1) Any cooperative and any enterprise formed thereby, which is affiliated to a cooperative union within the meaning given by Chapter Four of the Cooperatives Act , shall be allowed to retain 60 per cent of the corporation tax [due therefrom] where the conditions covered under Articles 189 and 190 herein are fulfilled.

(2) Any cooperative and any enterprise formed thereby shall transfer 50 per cent of the corporation tax so retained to the investment funds of the cooperative unions within the time limits for crediting the said tax to Budget Revenue.

(3) Annually, on or before the 31st day of March, the cooperative unions shall account to the Ministry of Finance for the raising and the spending of the corporation tax so retained on the assigned purpose. Should it be established that the conditions for retention have not been fulfilled, the tax retained which has accrued to the cooperative unions shall be refunded thereby to the executive budget with the interest due.

Taxable Persons Which Need Not Apply General Conditions

under this Section

Article 188. (1) The general conditions covered under Article 189 herein need not be applied by any taxable persons which have received de minimis aids, regardless of the form or source of acquisition thereof, to a total amount not exceeding BGN 200,000 during the last three years, including the current year. The amount referred to in sentence one shall furthermore include the reduced or retained corporation tax in respect of which Articles 189 and 190 herein are not applied, due from the taxable person for the last three years, including the corporation tax which is subject to reduction or retention for the current year.

(2) The taxable persons referred to in Paragraph (1) must invest the retained corporation tax in tax tangible and intangible fixed assets needed for performance of manufacturing activities within four years after the beginning of the year for

which the retention was enjoyed.

(3) Paragraph (1) shall not apply in respect of:

1. the sector of transport;

2. any activities related to fisheries and agricultural products covered by Council Regulation (EC) No 104/2000;

3. any activities related to primary production of agricultural products listed in Annex I to the Treaty establishing the European Community;

4. any aids granted to enterprises active in the processing and marketing of agricultural products listed in Annex I to the Treaty establishing the European Community, the amount of which is fixed on the basis of price or quantity of products purchased or put on the market or depending on a delivery, in whole or in part, to primary producers (farmers);

5. any aids to export-related activities, namely aid directly linked to the quantities exported, and aid contingent upon the use of domestic over imported goods;

6. any aids to the establishment and operation of a distribution network or to other current expenditure linked to export activity.

General Conditions

Article 189. (1) Any taxable persons which apply this Section must fulfil the requirements for the grant of regional aid according to the State Aids Act and the Regulations for Application of the State Aids Act , including:

1. in respect of the taxable persons which apply Article 186 herein, the assets acquired must form part of an initial investment;

2. in respect of the taxable persons which apply Article 184 or 187 herein and the retained corporation tax has been invested in acquisition of assets, the assets must form part of an initial investment made within four years after the beginning of the year for which the retention was enjoyed;

3. the intangible assets referred to in Items 1 and 2 must be:

(a) used solely by the taxable person, and

(b) depreciable assets;

4. the value of the intangible assets forming part of the initial investment must represent not more than 25 per cent of the value of the tangible fixed assets forming part of the initial investment;

5. at least 25 per cent of the value of the assets forming part of the initial investment must be self-financed or debt-financed; the tax retained, as well as other resources defined as State aid or containing any State aid element whatsoever, shall not be treated as self-financing or debt-financing;

6. the assets referred to in Items 1 and 2 must have been acquired under market conditions not differing from the conditions between unrelated parties;

7. the ownership of the assets referred to in Item 1 and 2 may not be transferred within five years after the date of acquisition of the said assets; during the said period, when a State aid has been granted according to the procedure established by Articles 184 and 186 herein, the assets referred to in Items 1 and 2 must be used solely in municipalities referred to in Article 183 herein.

(2) The fulfilment of the conditions covered under Items 1 to 6 of Paragraph (1), the value of the initial investment and the period of implementation thereof shall be declared by the annual tax return for the year in which all these conditions are fulfilled.

Additional Conditions for Corporation Tax Reduction and Retention

Article 190. (1) Where the regional aids from all sources related to the initial investment exceed BGN 75 million, the corporation tax reduction or retention shall be permissible where the taxable person has been granted a permissibility authorization by the European Commission under the terms and according to the procedure established by the State Aids Act.

(2) In the cases covered under Paragraph (1), the taxable person shall notify the Ministry of Finance prior to the acquisition of any assets forming part of the initial investment, providing the information required for the completion of a notification by the Ministry of Finance for grant of State aid under the State Aids Act.

(3) The regional aids from all sources, related to the initial investment, must not exceed 50 per cent or the relevant percentage according to the applicable regional aid map, as adopted by a Council of Ministers decree, of the value of the initial investment where the initial investment does not exceed BGN 100 million. Where the initial investment exceeds BGN 100 million (a large investment project), the regional aids from all sources, related to the initial investment, must not exceed the relevant adjusted percentage determined according to the Regulations for Application of the State Aids Act.

(4) Each investment project shall be considered to be a large investment project in the cases where the initial investment is implemented over a period of three years by one or several enterprises and includes fixed assets combined in a single economically indivisible whole.

Section V

Tax Reliefs Satisfying Requirements for Permissible State Aid for

Employment

Taxable Persons which May Not Enjoy Tax Reliefs

Article 191. The tax relief under this Section may not be enjoyed by any taxable persons which:

1. carry out activities in the sectors of coal, steel, transport and shipbuilding, for the respective activity, or

2. are subject to bankruptcy proceedings, are placed in liquidation, or are subject to rehabilitation proceedings, or

3. are defined as enterprises in difficulty, or

4. receive any aids to export-related activities, namely aids directly linked to the quantities exported, to the establishment and operation of a distribution network or to other current expenditure linked to export activity, or

5. receive any aids contingent upon the use of domestic over imported goods.

Tax Relief for Employment Promotion

Article 192. (1) Upon determination of the tax financial result, the accounting financial result may be debited with the compulsory social insurance contributions remitted for the current year for the account of the employer in respect of the newly created jobs, where the conditions covered under Article 193 herein are fulfilled. The said reduction shall be enjoyable on a single occasion in the year during which the persons are appointed.

(2) The right referred to in Paragraph (1) shall accrue subject to the condition that the jobs have been created in municipalities where the rate of unemployment for the year preceding the current year is by 50 per cent or more higher than the national average for the same period.

General Conditions

Article 193. (1) Any taxable persons which apply this Section must fulfil the conditions for the grant of State aid for employment according to European Commission Regulation (EC) No 2204/2002, including:

1. the average number of employees for the current year must have increased compared to the preceding year as a result of the newly created jobs, and persons registered as unemployed must be appointed to the newly created jobs under an employment contract;

2. the newly created jobs must be maintained for a minimum period of three years;

3. the State aid referred to in Article 192 herein, together with other State aids for employment in respect of the same newly created jobs, must not exceed 50 per cent of the relevant percentage according to the applicable regional aid map, as adopted by a Council of Ministers decree, of the cost of wages and compulsory social insurance contributions for the newly created jobs for two years;

4. the State aid referred to in Article 192 herein, together with other regional aids and State aids for employment, must not exceed 50 per cent of the relevant percentage according to the applicable regional aid map, as adopted by a Council of Ministers decree, of the sum total of the initial investment and the cost of wages and compulsory social insurance contributions for newly created jobs, related to the initial investment, for two years.

(2) Where the State aid for employment referred to in Article 192 herein, including other State aids for employment, exceeds BGN 30 million for three years, the reduction shall be valid where the conditions under this Section are fulfilled and the taxable person has been granted a permissibility authorization by the European Commission under the terms and according to the procedure established by the State Aids Act .

(3) The fulfillment of the conditions under this Section shall be declared by the annual tax return.
PART THREE

WITHHOLDING TAX
Chapter Twenty-Three

SCOPE OF TAXATION


Withholding Tax on Income from Dividend and Shares in Liquidation

Surplus
Article 194. (1) A tax withheld at source shall be levied on any dividends and shares in a liquidation surplus, as distributed (apportioned) by any resident legal person in favour of:

1. any non-resident legal persons, with the exception of the cases where the dividends accrue to a non-resident legal person through a permanent establishment in the country;

2. any resident legal persons which are not merchants, including any municipalities.

(2) The tax referred to in Paragraph (1) shall be final and shall be withheld by the resident legal persons distributing dividends or shares in a liquidation surplus.

(3) Paragraph (1) shall not apply where the dividends and shares in a liquidation surplus are distributed in favour of:

1. any resident legal person which participates in the capital of the company as a representative of the State;

2. any common fund.

Tax Withheld on Income of Non-resident Persons
Article 195. (1) Any income which has its source inside the country, referred to in Article 12 (2), (3), (5) and (8) herein, accruing to any non-resident legal person, were not accruing through a permanent establishment, shall be subject to levy of a tax withheld at source which shall be final.

(2) The tax referred to in Paragraph (1) shall be withheld by the resident legal persons, the sole traders or the permanent establishments in the country which charge the income to the non-resident legal persons, with the exception of the income referred to in Article 12 (3) and (8) herein.

(3) Where the payer of the income is not a taxable person covered under Article 2 herein and in respect of the income

referred to in Article 12 (3) and (8) herein, the tax shall be withheld from the recipient of the income.

(4) Paragraphs (1) and (2) shall furthermore apply where the non-resident person, acting through a permanent establishment, charges the said income to other divisions of the enterprise thereof situated outside the country, with the exception of the cases where accounting expenses are not recognized for tax purposes or accounting expenses or assets, accounted for at the costs actually incurred (cost price) are recognized for tax purposes of a permanent establishment.

(5) The prepayments in connection with the income referred to in Paragraph (1) shall not be subject to levy of a tax withheld at source.

Securities Traded on Regulated Market
Article 196. Any income from disposition of shares in public companies, negotiable rights attaching to shares in public companies, and shares in and units of collective investment schemes, shall not attract a tax withheld at source where the said disposition is effected on a regulated Bulgarian securities market.
Chapter Twenty-Four

TAXABLE AMOUNT


Taxable Amount for Withholding Tax on Dividend Income
Article 197. The taxable amount for assessment of the tax withheld at source on any income accruing from dividends shall be the gross amount of the dividends distributed.

Taxable Amount for Withholding Tax on Liquidation Surplus Share
Article 198. The taxable amount for assessment of the tax withheld at source on any income accruing from shares in a liquidation surplus shall be the difference between the market price of the claim by the relevant shareholder or member and the documented cost of acquisition of the shares or interests thereof.

Taxable Amount for Withholding Tax on Non-resident Persons' Income
Article 199. (1) The taxable amount for assessment of the tax withheld at source on the income referred to in Article 195 (1) herein shall be the gross amount of the said income, with the exception of the cases referred to in Paragraphs (3) and (4).

(2) The taxable amount for assessment of the tax withheld at source on any income accruing to any non-resident legal persons from interest payments under financial lease contracts, in the cases where the contract does not stipulate the rate of the said interest, shall be determined on the basis of the market rate of interest.

(3) The taxable amount for assessment of the tax withheld at source on any income accruing to any non-resident legal persons from acts of disposition of financial assets shall be the positive difference between the selling price of the said assets and the documented cost of acquisition thereof.

(4) The taxable amount for assessment of the tax withheld at source on any income accruing to any non-resident legal persons from disposition of immovable property shall be the positive difference between the selling price and the documented cost of acquisition of the immovable property.

(5) The selling price, for the purposes of Paragraphs (3) and (4), shall be the valuable consideration under the transaction, including the reward other than money, which shall be valued at market prices as at the date of charging of the income.

(6) Upon termination of a financial lease contract before expiry of the term of validity thereof and without passing of the right of ownership to the relevant assets which are subject of the contract, the non-refundable lease payments shall be considered income from use of property acquired by the non-resident legal person at the time of termination. The withholding tax on the income from interest payments, remitted until the time of termination of the lease contract, shall be deducted from the withholding tax due on income from use of the property.
Chapter Twenty-Five

RATES OF TAX

Rates of Tax

Article 200. (1) The rate of tax on the income covered under Article 194 herein shall be 7 per cent.

(2) The rate of tax on the income covered under Article 195 herein shall be 10 per cent.

Chapter Twenty-Six

DECLARING OF TAX

Declaring of Tax. Certificate on Tax Withheld on

Non-resident Persons' Income

Article 201. (1) The persons, who or which have withheld and remitted the tax at source under Articles 194 and 195 herein, and the persons who or which have charged the income referred to in Article 12 (3) and (8) herein, shall declare this circumstance to the National Revenue Agency territorial directorate exercising competence over the place of registration or over the place where the payer of the income is registrable, by means of a declaration in a standard form. Any such declaration shall be submitted each quarter not later than at the end of the month next succeeding the relevant quarter.

(2) Where the payer of the income is not registrable, the tax declaration shall be submitted to the Sofia Territorial Directorate of the National Revenue Agency.

(3) In the cases where the payer of the income is a person who or which is not obligated to withhold and remit a tax, the declaration shall be submitted by the recipient of the income before submission of the request for the issuance of a certificate referred to in Paragraph (4) or within the time limit referred to in Paragraph (1), whichever of the two is the earlier.

(4) A certificate on the tax remitted according to the procedure established by this Act on income accruing to non-resident legal persons shall be issued in a standard form at the request of the interested party. Any such certificate shall be issued by the National Revenue Agency territorial directorate where the tax is subject to remittance.

Chapter Twenty-Seven

TAX REMITTANCE

Tax Remittance

Article 202. (1) Any payers of income withholding the tax at source under Article 194 herein shall be obligated to remit the taxes due as follows:

1. within three months after the beginning of the month next succeeding the month during which a decision was made on distribution of dividends or shares in a liquidation surplus: in the cases where the owner of the income is a resident of a State wherewith the Republic of Bulgaria has an effective convention for the avoidance of double taxation;

2. not later than at the end of the month next succeeding the month during which a decision was made on distribution of dividends or shares in a liquidation surplus: in all other cases.

(2) Any payers of income withholding the tax at source under Article 195 herein shall be obligated to remit the taxes due as follows:

1. within three months after the beginning of the month next succeeding the month of charging of the income: in the cases where the owner of the income is a resident of a State wherewith the Republic of Bulgaria has an effective convention for the avoidance of double taxation;

2. not later than at the end of the month next succeeding the month of charging of the income: in all other cases.

(3) The tax due referred to in Paragraphs (1) and (2) shall be remitted to the relevant National Revenue Agency

territorial directorate exercising competence over the place of registration or over the place where the payer of the income is registrable.

(4) Where any payer of income referred to in Paragraph (2) is not a taxable person and in respect of any income referred to in Article 12 (3) and (8) herein, the tax shall be remitted by the recipient of the income within the time limit referred to in Paragraph (2), and the income shall be considered to be charged as from the date of receipt of the said income by the non-resident legal person. The tax due shall be remitted to the relevant National Revenue Agency territorial directorate exercising competence over the place of registration or over the place where the payer of the income is registrable. Where the payer of the income is not registrable, the tax shall be remitted to the Sofia Territorial Directorate of the National Revenue Agency.

(5) Any overremitted tax shall be refunded by the National Revenue Agency territorial directorate whereto the tax is subject to remittance.

Liability
Article 203. Where the tax referred to in Articles 194 and 195 herein has not been withheld and remitted according to the relevant procedure, the said tax shall be due solidarily by the persons which incur tax liability for the relevant income.
PART FOUR

TAX ON EXPENSES
Chapter Twenty-Eight

GENERAL DISPOSITIONS

Scope of Taxation
Article 204. A tax on expenses shall be levied on the following expenses supported by documents:

1. any business entertainment expenses;

2. any expenses on fringe benefits provided in kind to factory and office workers and to persons hired under a management and control contracts (hired persons); the expenses on fringe benefits provided in kind shall furthermore include:

(a) the expenses on contributions (premiums) for voluntary retirement and health insurance and voluntary unemployment and/or vocational-training insurance, and/or life assurance and life assurance linked to an investment fund;

(b) the expenses on food vouchers;

3. the expenses related to operation of means of transport where used to service management operations.

Expenses on Fringe Benefits Not Provided in Kind
Article 205. Any expenses on fringe benefits, which are not provided in kind and which constitute income of a natural person, shall be taxed under the terms and according to the procedure established by the Income Taxes on Natural Persons Act .

Recognition of Tax on Expenses
Article 206. (1) The expense and the tax thereon shall be recognized for tax purposes in the year of charging and shall not form a temporary tax difference according to the procedure established by Chapter Eight herein.

(2) The tax on expenses shall be final.

Taxable Persons
Article 207. (1) Taxable persons in respect of the tax referred to in Items 1 and 3 of Article 204 herein shall be the persons which are subject to levy of corporation tax.

(2) Taxable persons in respect of the tax referred to in Item 2 of Article 204 herein shall be all employers or

commissioning entities under management and control contracts.

Exemption from Taxation of Fringe Benefit Expenses on Contributions

and Premiums for Supplementary Social Insurance and Life Assurance

Article 208. No tax shall be levied on any expenses on fringe benefits referred to in Item 2 (a) of Article 204 herein not exceeding the amount of BGN 60 per month per hired person, where the taxable persons do not incur any coercively enforceable public obligations at the time of incurrence of the expenses.

Exemption from Taxation of Fringe Benefit Expenses on Food Vouchers

Article 209. (1) No tax shall be levied on any expenses on fringe benefits referred to in Item 2 (b) of Article 204 herein not exceeding the amount of BGN 40 per month, provided in the form of food vouchers to each hired person, where the following conditions are simultaneously fulfilled:

1. the basic monthly remuneration of the person in the month of provision of the vouchers is not lesser than the average monthly basic remuneration of the said person for the last preceding three months;

2. the taxable person does not incur any coercively enforceable public obligations at the time of provision of the vouchers;

3. the vouchers are provided to the taxable person by a person which has obtained authorization to carry on operator business from the Minister of Finance on the basis of a competitive procedure;

4. the amounts on the vouchers as provided, paid by the taxable person to the operator, may be used solely for settlement through bank transfer with the persons which have concluded a contract for provision of services with the operator, or for refunding to the taxable person, up to the amount of the nominal value of the vouchers, in the cases where the said vouchers have not been used;

5. the persons wherewith the operator has concluded a contract for provision of services to the hired persons are registered under the Value Added Tax Act .

(2) The right to carry on operator business shall be limited to a person which has obtained authorization from the Minister of Finance and which:

1. has a paid up share (registered) capital of at least BGN 2 million at the time of submission of the documents for the grant of authorization;

2. is registered under the Value Added Tax Act ;

3. is not subject to bankruptcy proceedings or is not placed in liquidation;

4. does not incur any coercively enforceable public obligations at the time of submission of the documents for authorization;

5. is represented by any persons who:

(a) have not been convicted of a premeditated offence at public law, unless rehabilitated;

(b) have not been members of a supervisory body or a management body of any corporation dissolved through bankruptcy during the two years last preceding the date of the judgment on institution of bankruptcy proceedings, if any creditors have been left unsatisfied.

(3) The authorization shall be granted by the Minister of Finance on the basis of a competitive procedure and shall be withdrawn when the person ceases to satisfy the requirements covered under Paragraph (2).

(4) The grant, refusal of authorization or withdrawal of an authorization granted shall be effected by a written order of the Minister of Finance.

(5) Any refusal to grant an authorization and any withdrawal of an authorization shall be appealable according to the procedure established by the Administrative Procedure Code.

(6) The procedure for the conduct of a competitive procedure, for the grant and withdrawal of an authorization, the terms and a procedure for the printing of vouchers, the number of vouchers issued, the terms for organization and control of the conduct of operator business shall be established by an ordinance of the Minister of Labour and Social Policy and the Minister of Finance.

Exemption from Taxation of Fringe Benefit Expenses on Transportation

of Factory and Office Workers and Persons Hired under Management

and Control Contract

Article 210. (1) No tax shall be levied under Item 2 of Article 204 herein on any expenses on fringe benefits incurred on transportation of factory and office workers and of persons hired under a management and control contract from the place of residence to the place of work and back.

(2) Paragraph (1) shall not apply where any such transportation is carried out by passenger car or by extra bus services.

(3) Paragraph (1) shall furthermore apply where the transportation of factory and office workers is carried out by passenger car to inaccessible and remote areas and the taxable person cannot ensure the implementation of the activity thereof without incurrence of the expense.

Chapter Twenty-Nine

TAXABLE AMOUNT


Taxable Amount for Tax on Entertainment Expenses

Article 211. The taxable amount for assessment of the tax on expenses referred to in Item 1 of Article 204 herein shall be the expenses charged for the relevant month.

Taxable Amount for Tax on Fringe Benefit Expenses Provided in Kind

Article 212. The taxable amount for assessment of the tax on expenses referred to in Item 2 of Article 204 herein shall be the expenses on fringe benefits provided in kind debited with the income related to the said expenses for the relevant month.

Taxable Amount for Tax on Fringe Benefit Expenses on Contributions

(Premiums) for Supplementary Social Insurance and Life Assurance

Article 213. (1) The taxable amount for assessment of the tax on expenses referred to in Item 2 (a) of Article 204 herein shall be the excess of the said expenses over BGN 60 per month per hired person.

(2) Where the taxable persons incur any coercively enforceable public obligations at the time of charging of the expenses, the taxable amount for assessment of the tax on expenses shall be the full amount of the expenses charged.

Taxable Amount for Tax on Fringe Benefit Expenses on Food Vouchers

Article 214. (1) The taxable amount for assessment of the tax on expenses referred to in Item 2 (b) of Article 204 herein shall be the excess of the said expenses over BGN 40 per month per hired person.

(2) Where the conditions for exemptions from tax under Article 209 herein are not fulfilled, the taxable amount for assessment of the tax on expenses shall be the full amount of the expenses charged.

Taxable Amount for Tax on Expenses Related to Maintenance, Repair and

Operation of Means of Transport

Article 215. (1) The taxable amount for assessment of the tax on expenses referred to in Item 3 of Article 204 herein shall be the expenses on maintenance, repair and operation of means of transport, charged during the calendar month, debited with the income charged from insurance benefits associated with the means of transport, up to the amount of the expenses on repair incurred whereto the benefit applies.

(2) Where means of transport are used concurrently to carry out activity as a regular business and to service management operations, upon determination of the taxable amount referred to in Paragraph (1):

1. the expenses on operation shall relate to the management operations on the basis of the total kilometres covered for the said operations during the current month;

2. the expenses on maintenance and repair shall relate to the management operations on the basis of the kilometres covered for the said operations in relation to the total kilometres covered by the relevant means of transport during the last preceding twelve months, including the current month.

(3) Where the taxable amount referred to in Paragraph (1) is a negative quantity, it shall be deducted successively from the taxable amount for the succeeding months.

Chapter Thirty

RATE OF TAX AND REMITTANCE OF TAX ON EXPENSES

Rate of Tax

Article 216. The rate of the tax on expenses referred to in Article 204 herein shall be 10 per cent.

Tax Remittance

Article 217. The tax on expenses shall be remitted on or before the 15th day of the month next succeeding the month in which the expense was charged. Where the taxable person has overremitted any tax on expenses or any corporation tax, the said tax may be deducted from the tax on expenses due.

PART FIVE

ALTERNATIVE TAXES

Chapter Thirty-One

GENERAL DISPOSITIONS

Alternative Tax

Article 218. (1) The taxable persons specified in this Part shall be liable, instead of corporation tax, to an alternative tax in respect of the activities specified in this Part.

(2) In respect of all other activities, the persons referred to in Paragraph (1) shall be liable to corporation tax, with the exception of public-finance enterprises.

Chapter Thirty-Two

TAX ON GAMBLING ACTIVITY

Section I

General Dispositions

Record-keeping

Article 219. (1) The taxable persons under this Chapter shall be obligated to keep daily and monthly records of the amounts received and paid for participation in the games of chance in standard forms as endorsed by the Minister of Finance.

(2) Paragraph (1) shall not apply:

1. to the gambling activity specified in Section V herein;

2. to any games of chance where the value of the bet consists in an increased charge for a telephone or another telecommunication link;

3. where a computer system has been provided for monitoring the drawings and the proceeds in the conduct of the games, as well as for control on the formation and distribution of profits, ensuring the transmission of the requisite data to the National Revenue Agency.

(3) The tax on the ancillary and auxiliary activities, within the meaning given by the Gambling Act , shall be declared by an annual tax return in a standard form, which shall be submitted not later than the 31st day of March of the next succeeding year to the National Revenue Agency territorial directorate exercising competence over the place of registration of the taxable person.

Section II

Tax on Gambling Activities of Toto and Lotto, Betting on Outcome of

Sports Competition and Uncertain Events


General Dispositions
Article 220. The gambling activities of toto and lotto, betting on the outcome of a sports competition and uncertain events shall attract a tax on gambling activity which shall be final.

Taxable Persons
Article 221. Taxable persons under this Section shall be the organizers of the games of chance of toto and lotto, betting on the outcome of a sports competition and uncertain events.

Taxable Amount
Article 222. The taxable amount for assessment of the tax on gambling activity under this Section shall be the value of the bets taken for each game.

Rate of Tax
Article 223. The rate of tax on gambling activity under this Section shall be 10 per cent.

Declaring of Tax
Article 224. The tax on gambling activity under this Section shall be declared prior to determining the results of each game by means of a tax return in a standard form.

Tax Remittance
Article 225. The tax on gambling activity under this Section shall be remitted:

1. in respect of games conducted daily: within three business days after determining the results for the last preceding seven calendar days;

2. in respect of games conducted over a period not exceeding seven days: within three business days after determining the results but before determining the results of the next succeeding game;

3. in respect of games conducted over a longer period: within seven days after determining the results.

Income from Ancillary and Auxiliary Activities
Article 226. (1) Any income accruing from ancillary and auxiliary activities within the meaning given by the Gambling Act shall attract an alternative tax on the value of the said income at the rate of 10 per cent.

(2) The tax shall be remitted on or before the 15th day of the month next succeeding the month of charging of the income referred to in Paragraph (1).

Section III

Tax on Gambling Activity of Lotteries, Raffles and Bingo and Keno

Numbers Lotteries

General Dispositions

Article 227. The gambling activity of lotteries, raffles and bingo and keno numbers lotteries shall attract a tax on gambling activity which shall be final.

Taxable Persons

Article 228. Taxable persons under this Section shall be the organizers of the games of chance: lotteries, raffles, and bingo and keno numbers lotteries.

Taxable Amount

Article 229. The taxable amount for assessment of the tax on gambling activity under this Section shall be the nominal value of the bet as specified in coupons, cards, tickets or other tokens certifying participation.

Rate of Tax

Article 230. The rate of tax on gambling activity under this Section shall be 12 per cent.

Declaring of Tax

Article 231. The tax on gambling activity under this Section shall be declared monthly, on or before the 10th day of the next succeeding month, by means of a return in a standard form.

Tax Remittance

Article 232. (1) The tax on gambling activity under this Section shall be remitted prior to receiving the tokens certifying participation or to effecting the importation of any such tokens.

(2) The enterprises designated by the Minister of Finance or by another authority specified by a law, which print tokens certifying participation or which effect the importation thereof, shall provide the tokens certifying participation solely upon presentation of documents on tax paid.

Refund of Tax

Article 233. (1) Any tax paid on any unused tokens shall be refunded by the National Revenue Agency territorial directorate exercising competence over the place of registration of the person:

1. after completion of each stage (drawing) of the periodic lottery games, or

2. when the activity of the organizer has been discontinued in pursuance of Article 81 (2) of the Gambling Act .

(2) The unused tokens certifying participation, as well as the decision on discontinuance of the activity in the cases referred to in Item 2 of Paragraph (1), shall be attached to the claim for refund under the Tax and Social-Insurance Procedure Code .

Income from Ancillary and Auxiliary Activities

Article 234. (1) Any income accruing from ancillary and auxiliary activities within the meaning given by the Gambling Act shall attract an alternative tax on the value of the said income at the rate of 12 per cent.

(2) The tax shall be remitted on or before the 15th day of the month next succeeding the month of charging of the income referred to in Paragraph (1).

Section IV

Tax on Gambling Activity of Games where Value of Bet Consists in

Increased Charge for Telephone or Another Telecommunication Link

General Dispositions
Article 235. The gambling activity of games where the value of the bet consists in an increased charge for a telephone or another telecommunication link shall attract a tax on gambling activity which shall be final.

Taxable Persons
Article 236. Taxable persons according to the procedure established by this Section shall be the organizers of the games of chance where the value of the bet consists in an increased charge for a telephone or another telecommunication link.

Taxable Amount
Article 237. The taxable amount for assessment of the tax under this Section shall be the increase in the charge for the telephone or telecommunication link.

Rate of Tax
Article 238. The rate of tax under this Section shall be 12 per cent.

Declaring of Bets Made and of Tax
Article 239. (1) The organizer of the game of chance shall declare the bets made and the tax under this Section to the National Revenue Agency territorial directorate exercising competence over the place of registration of the said organizer on or before the 20th day of the month next succeeding the month of conduct of the games, by means of a return in a standard form.

(2) The telephone or telecommunication network operator shall declare the bets made and the tax under this Section to the National Revenue Agency territorial directorate exercising competence over the place of registration of the said operator on or before the 20th day of the month next succeeding the month of conduct of the games, by means of a return in a standard form.

Tax Remittance
Article 240. (1) The tax on gambling activity under this Section shall be withheld and remitted by the licensed telephone or telecommunication network operator on or before the 20th day of the month next succeeding the month of conduct of the games.

(2) The telephone or telecommunication network operator shall be obligated to satisfy itself that the organizer of the game of chance has obtained authorization from the State Commission on Gambling and to present to the National Revenue Agency territorial directorate the contract whereunder the said operator takes the bets, incorporating a clause on the increase in the charge for the telephone or telecommunication link.

Income from Ancillary and Auxiliary Activities
Article 241. (1) Any income accruing from ancillary and auxiliary activities within the meaning given by the Gambling Act shall attract an alternative tax on the value of the said income at the rate of 12 per cent.

(2) The tax shall be remitted on or before the 15th day of the month next succeeding the month of charging of the income referred to in Paragraph (1).
Section V

Tax on Gambling Activity Using Gambling Devices

General Dispositions
Article 242. The gambling activity using gambling slot-machines, devices for betting on the results of horse or dog races, roulettes and other gambling devices in a gambling casino, shall attract a tax on gambling activity which shall be final.

Taxable Persons
Article 243. Taxable persons under this Section shall be the organizers of games of chance played on gambling slot-machines, devices for betting on the results of horse or dog races, roulettes and other gambling devices in a gambling

casino.

### Tax Assessment
Article 244. The tax under this Section shall be assessed in respect of the devices entered in the authorization and operated:

1. gambling slot-machines, respectively each player's place at such machines;

2. devices for betting on the results of horse or dog races;

3. roulettes at a casino, gambling tables and in respect of other gambling devices at a casino.

### Amount of Tax
Article 245. (1) The amounts of the tax on gambling activity under this Section are set as follows:

1. in respect of a gambling slot-machine, respectively, each players' place at such a machine: BGN 300 per quarter;

2. in respect of a facility for betting on the results of horse or dog races: BGN 300 per quarter for each device;

3. in respect of a roulette at a casino per gambling table: BGN 18,000 per quarter for each device;

4. in respect of any other gambling device at a casino: BGN 3,000 per quarter for each device.

(2) No tax shall be due for the quarters prior to the grant and after the withdrawal of the authorization to organize games of chance played on the relevant device.

(3) The tax shall be due in full amount for the quarter in which the authorization to organize games of chance played on the relevant device is granted or withdrawn.

### Declaring of Tax
Article 246. The organizer of a game of chance shall declare the tax under this Section to the National Revenue Agency territorial directorate exercising competence over the place of registration of the said organizer on or before the 15th day of the month next succeeding the quarter.

### Tax Remittance
Article 247. (1) The tax under this Section shall be remitted within the time limits for declaring of the said tax.

(2) The tax shall be remitted in respect of each gambling establishment by a separate payment order, wherein the location and address of the said establishment shall be stated.

(3) The persons under this Section shall transmit a copy of the payment order to the National Revenue Agency territorial directorate exercising competence over the location of the gambling hall, the betting establishment or the casino and to the gambling control authority.

Chapter Thirty-Three

## TAX ON PUBLIC-FINANCED ENTERPRISE' INCOME

### General Dispositions
Article 248. Any income accruing to any public-financed enterprise from any transactions covered under Article 1 of the Commerce Act , as well as from rent of movable and immovable property, shall attract a tax on income according to the procedure established by this Chapter.

### Taxable Amount
Article 249. (1) The taxable amount for assessment of the tax on income shall be monthly and annual.

(2) The monthly taxable amount shall be the income accruing to the public-financed enterprise from any transactions

covered under Article 1 of the Commerce Act , as well as from rent or movable and immovable property, charged during the relevant month.

(3) The annual taxable amount shall be the income accruing to the public-financed enterprise from any transactions covered under Article 1 of the Commerce Act , as well as from rent or movable and immovable property, charged during the relevant year.

Rates of Tax
Article 250. (1) The rate of tax on income shall be 3 per cent.

(2) The rate of tax on income accruing to the municipalities shall be 2 per cent.

Tax Retention
Article 251. (1) Any public-financed scientific research enterprise, public higher school, state-owned and municipal school included in the system of public education shall be allowed to retain 50 per cent of the tax on income [due therefrom] in respect of the economic activity thereof as is directly related or auxiliary to the implementation of the core activity thereof.

(2) The tax so retained shall be shown as a written-off obligation to the State.

Declaring of Tax
Article 252. Any public-financed enterprises subject to levy of a tax on income for the relevant year shall submit an annual tax return in a standard form on or before the 31st day of March of the next succeeding year.

Tax Remittance
Article 253. (1) The tax on income, as assessed on the monthly taxable amount, shall be remitted by public-financed enterprises on or before the 15th day of the month next succeeding the month of charging of the income.

(2) Where the sum total of the monthly taxable amounts for the year is less than the annual taxable amount, the tax due shall be remitted on or before the 31st day of March of the next succeeding year.

(3) Where the sum total of the monthly taxable amounts for the year is greater than the annual taxable amount, the overremitted tax may be deducted from the taxes on income due after submission of the annual tax return.

Chapter Thirty-Four

TAX ON VESSELS OPERATION ACTIVITY

General Dispositions
Article 254. (1) The taxable persons, specified in this Chapter, may elect that the vessels operation activity thereof attract a tax on vessels operations activity.

(2) The tax referred to in Paragraph (1) shall be levied on the taxable persons which have elected to be liable for the said tax for a period not exceeding five years.

Taxable Persons
Article 255. Taxable persons according to the procedure established by this Chapter shall be the persons carrying out maritime merchant shipping which simultaneously fulfil the following conditions:

1. they are corporations registered under the Commerce Act , or permanent establishments of a corporation which is resident for tax purposes in another Member State of the European Community, or a Member State of the European Economic Area, according to the relevant tax legislation and by virtue of a convention for the avoidance of double taxation with a third State is not considered to be resident for tax purposes in another State outside the European Community or the European Economic Area;

2. they operate their own vessels or chartered vessels, or manage vessels under a contract of management, as well as charter vessels;

3. they do not refuse to train apprentices on board the vessels, with the exception of the cases where the number of apprentices exceeds one per fifteen officer members of the ship's complement;

4. they man the vessel with Bulgarian citizens or with nationals of other Member States of the European Community or of the European Economic Area;

5. vessels flying the Bulgarian flag or a flag of another Member State of the European Community or of the European Economic Area account for at least 60 per cent of the net tonnage of the vessels operated.

Restrictions on Scope of Tax
Article 256. The taxable persons shall not have the right to apply the procedure for taxation under this Chapter in respect of:

1. any seagoing vessels of a net tonnage under 100 tons;

2. any fishing vessels;

3. any pleasure vessels, with the exception of passenger vessels;

4. any vessels which the taxable persons have provided for management or under a bareboat charter, with the exception of the cases where any such vessels have been provided to the State;

5. any rigs for extraction of subsurface resources, any oil production platforms, and any vessels engaged in dredging operations and in tugging and towage operations.

Taxable Amount
Article 257. (1) The taxable amount per vessel per day of service shall be determined as follows:

1. in respect of any vessel of a net tonnage of up to 1,000 tons inclusive: BGN 3.50 for each 100 tons or fraction;

2. in respect of any vessel of a net tonnage from 1,001 up to 10,000 tons inclusive: BGN 35 plus BGN 3.00 for each 100 tons or fraction;

3. in respect of any vessel of a net tonnage from 10,001 up to 25,000 tons inclusive: BGN 305 plus BGN 2.50 for each 100 tons or fraction above 10,000 tons;

4. in respect of any vessel of a net tonnage in excess of 25,001 tons: BGN 680 plus BGN 1 for each 100 tons or fraction above 25,000 tons.

(2) The taxable amount per ship for a calendar month shall be determined by multiplying the taxable amount for the relevant vessel per day of service, as determined according to the procedure established by Paragraph (1), by the days of service of the relevant vessel during the calendar month.

(3) The taxable amount for assessment of the tax under this Chapter shall be the sum total of the taxable amounts determined for each vessels according to the procedure established by Paragraph (2).

Rate of Tax
Article 258. The rate of tax under this Chapter shall be 10 per cent.

Declaring of Tax
Article 259. (1) The taxable persons shall exercise the right of choice thereof to levy of a tax under this Chapter by means of submission of a declaration in a standard form on or before the 31st day of December of the last preceding year.

(2) The taxable persons shall submit an annual tax return in a standard form on the tax due under this Chapter on or before the 31st day of March of the next succeeding year.

Tax Remittance

Article 260. The taxable persons shall remit the tax due under this Chapter monthly, not later than at the end of the next succeeding month.

PART SIX

ADMINISTRATIVE PENALTY PROVISIONS
Chapter Thirty-Five

ADMINISTRATIVE VIOLATIONS AND SANCTIONS

Article 261. (1) Any taxable person, which fails to submit a tax return under this Act, which fails to submit any such return when due, or which fails to state or misstates any particulars or circumstances leading to underassessment of the tax due or to undue reduction, retention of or exemption from tax, shall be liable to a pecuniary penalty of BGN 500 or exceeding this amount but not exceeding BGN 3,000.

(2) Any repeated violation under Paragraph (1) shall be punishable by a pecuniary penalty of BGN 1,000 or exceeding this amount but not exceeding BGN 6,000.

Article 262. (1) Any taxable person, which fails to submit any supplement to the annual tax return or which states any untrue particulars or circumstances in any such supplement, shall be liable to a pecuniary penalty of BGN 100 or exceeding this amount but not exceeding BGN 1,000.

(2) Any repeated violation under Paragraph (1) shall be punishable by a pecuniary penalty of BGN 200 or exceeding this amount but not exceeding BGN 2,000.

Article 263. (1) Any taxable person, which accounts for any business transaction in breach of the accounting policies thereof and this leads to a misdetermination of the accounting financial result of the said person, shall be liable to a pecuniary penalty of BGN 100 or exceeding this amount but not exceeding BGN 1,000 for each such breach.

(2) Any repeated violation under Paragraph (1) shall be punishable by a pecuniary penalty of BGN 200 or exceeding this amount but not exceeding BGN 2,000.

Article 264. (1) Any managing director, liquidator or trustee in bankruptcy, or holder of the position of liquidator or trustee in bankruptcy, who by any act or omission has committed any violation specified in Articles 261, 262 or 263 herein, shall be liable to a pecuniary penalty or a fine of BGN 200 or exceeding this amount but not exceeding BGN 1,000.

(2) Any repeated violation under Paragraph (1) shall be punishable by a pecuniary penalty or a fine of BGN 400 or exceeding this amount but not exceeding BGN 2,000.

Article 265. (1) Any taxable person, who or which fails to issue an accounting source documents for the accounting for income, shall be liable to a pecuniary sanction or a fine of BGN 500 or exceeding this amount but no exceeding BGN 3,000, unless subject to a severer sanction.

(2) Any repeated violation under Paragraph (1) shall be punishable by a pecuniary penalty or a fine of BGN 1,000 or exceeding this amount but not exceeding BGN 6,000.

Article 266. (1) Any taxable person, who fails to issue a fiscal cash receipt, shall be liable to a pecuniary penalty of BGN 200 or exceeding this amount but no exceeding BGN 2,000.

(2) Any repeated violation under Paragraph (1) shall be punishable by a pecuniary penalty of BGN 400 or exceeding this amount but not exceeding BGN 4,000.

Article 267. Any taxable person, who effects a hidden profit distribution, shall be liable to a pecuniary penalty to the amount of 50 per cent of the expense charged constituting a hidden profit distribution.

Article 268. (1) Any organizer of games of chance, which fails to fulfil the obligation thereof to keep daily and monthly records under Article 219 herein, shall be liable to a pecuniary penalty of BGN 2,000 or exceeding this amount but not exceeding BGN 10,000.

(2) Any repeated violation under Paragraph (1) shall be punishable by a pecuniary penalty of BGN 4,000 or exceeding this amount but not exceeding BGN 20,000.

Article 269. (1) Any enterprise referred to in Article 232 herein, printing tokens certifying participation or importing such tokens, which provides the tokens certifying participation without presentation thereto of the documents on the tax paid, shall be liable to a pecuniary penalty equivalent to the unremitted tax.

(2) Any repeated violation under Paragraph (1) shall be punishable by a pecuniary penalty in a double amount, and the

Minister of Finance shall disqualify the enterprise affected from printing or importing tokens certifying participation in the games covered under Section III of Chapter Thirty-Two herein for a period not exceeding six months.

Article 270. (1) Any organizer of games of chances referred to in Article 228 herein, which conducts such games without having paid the full amount of the tax due, shall be liable to a pecuniary penalty equivalent to double the amount of the tax due but in any case not less than BGN 2,000.

(2) The pecuniary penalty referred to in Paragraph (1) shall furthermore be imposed on any organizer of games of chance referred to in Article 228 herein which offers, sells or provides to any participant in the game of chance any token certifying participation which does not satisfy the statutorily established requirements as to the printing, form, type and cost price, or at a price exceeding the nominal value as printed on the relevant token certifying participation. No sanction shall be imposed where the tokens certifying participation have been revalued in respect of the series and the nominal value according to an inventory memorandum certified by a representative of the Ministry of Finance, a representative of the enterprise printing the tokens, and a revenue authority of the competent National Revenue Agency territorial directorate exercising competence over the place of registration of the organizer.

(3) Any repeated violation under Paragraphs (1) and (2) shall be punishable by a pecuniary penalty equivalent to the double amount of the tax due but in any case not less than:

1. BGN 4,000 and disqualification from practice of the activity according to the procedure established by Article 272 herein, where the repeated violation is under Paragraph (1);

2. BGN 6,000 and disqualification from practice of the activity according to the procedure established by Article 272 herein, where the repeated violation is under Paragraph (2).

Article 271. The pecuniary penalties referred to in Articles 269 and 270 herein shall be imposed notwithstanding the sanctions provided for in other laws, and the control authorities under the Gambling Act shall be notified of the violations as ascertained.

Article 272. (1) The administrative sanction of disqualification from practice of activity shall be imposed for a period of one month or exceeding this period but not exceeding six months.

(2) In the cases under Article 270 (2) herein, the revenue authorities shall seize and destroy the tokens certifying participation which do not satisfy the statutorily established requirements as to the printing, form, type and cost price, or any such tokens [which are sold] at a price exceeding the nominal value as printed thereon. The expenses shall be for the account of the taxable person.

(3) In the cases of imposition of an administrative sanction of disqualification from practice of activity, a coercive administrative measure of sealing of the establishment or establishments and prohibition of access thereto shall furthermore be imposed.

Article 273. (1) The implementation of the administrative sanction of disqualification from practice of activity shall be discontinued by the imposing authority at the request of the taxable person sanctioned according to an administrative procedure and after the said person has proved that the pecuniary penalty as imposed has been fully paid.

(2) In the cases referred to in Paragraph (1), the revenue authority shall furthermore decree unsealing of the establishment, which shall be performed with the obligation to cooperate on the part of the tax subject.

Article 274. The penalty decrees in the part thereof imposing the administrative sanction of disqualification from practice of activity and a coercive administrative measure of sealing of the establishment or establishments and denial of access thereto, as well as the decrees referred to in Article 273 herein, shall be subject to anticipatory enforcement unless the court orders otherwise.

Article 275. Any person, which fails to fulfil the obligation thereof under Article 187 (3) herein, shall be liable to a pecuniary penalty of BGN 1,000 or exceeding this amount but not exceeding BGN 3,000 and, upon a repeated commission of the violation, to a pecuniary penalty of BGN 2,000 or exceeding this amount but not exceeding BGN 6,000.

Article 276. Any taxable person, which fails to fulfil the obligations thereof under Article 92 (3) or (4) herein, shall be liable to a pecuniary penalty of BGN 500 or exceeding this amount but not exceeding BGN 2,000 and, upon a repeated commission of the violation, to a pecuniary penalty of BGN 1,500 or exceeding this amount but not exceeding BGN 5,000 for each unfulfilled obligation.

Article 277. (1) Any taxable persons, which have applied the procedure for taxation under Chapter Thirty-Four herein without qualifying for the right of choice, shall be liable to a pecuniary penalty of BGN 20,000 or exceeding this amount but not exceeding BGN 30,000 and, upon a repeated commission of the violation, to a pecuniary penalty of BGN 40,000 or

exceeding this amount but not exceeding BGN 60,000.

(2) The persons referred to in Paragraph (1) shall have no right to apply the procedure for taxation on the net tonnage of vessels for a period of five years.

Article 278. (1) The written statements ascertaining the violations shall be drawn up by the authorities of the National Revenue Agency, and the penalty decrees shall be issued by the Executive Director of the National Revenue Agency or by an official authorized thereby.

(2) The ascertainment of violations, the issue, appeal against and enforcement of penalty decrees shall follow the procedure established by the Administrative Violations and Sanctions Act .

SUPPLEMENTARY PROVISIONS

§ 1. Within the meaning given by this Act:

1. "The country" shall be the geographical territory over which the Republic of Bulgaria exercises the State sovereignty thereof, as well as the continental shelf and the exclusive economic zone wherewithin the Republic of Bulgaria exercises sovereign rights in conformity with international law.

2. "Permanent establishment" shall be a permanent establishment within the meaning given by Item 5 of § 1 of the Supplementary Provisions of the Tax and Social-Insurance Procedure Code .

3. "Financial asset" shall be the asset as defined in the applicable accounting standards, including the compensation instruments within the meaning given by Article 2 of the Transactions in Compensation Instruments Act . Where the person is not an enterprise within the meaning given by the Accountancy Act , the applicable accounting standards for the purposes of sentence one shall be the international accounting standards applicable in the country for the relevant year.

4. "Dividend" shall be the distribution in favour of a person, arising from the holding that such person has in the capital of another person, resulting in a reduction of the owners' equity of the latter, including:

(a) income from shares;

(b) income from participating interests, even in unincorporated associations, and from other corporate rights, where treated as income from shares;

(c) hidden profit distribution.

Any distribution which, according to accounting legislation, has been accounted for at the distributing person as an expense shall not be a dividend, with the exception of the cases of hidden profit distribution.

5. "Hidden profit distribution" shall be the expenses charged by a taxable person without being connected with the economic activity carried out thereby or exceeding the customary market levels, in the cases where made in favour of shareholders, members or any parties related thereto.

6. "Share in a liquidation surplus" shall be the distribution of a share in the property of a person upon the dissolution thereof in favour or another person or upon cessation of membership of that other person.

7. "Interest payment" shall be income from debt claims of every kind, whether or not secured by mortgage and whether or not carrying a right to participate in the debtor's profits, including interest paid on deposits with banks and income (premiums) from debentures and bonds. For the purposes of Part Three herein, any income which constitutes a dividend, penalty charges for late payments and damages shall not be regarded as interest payments.

8. "Copyright and licence royalties" shall be payments of any kind received as a consideration for: the use of, or the right to use, any copyright of scientific, artistic or literary work, including cinematograph films and television films and recordings for transmission by radio or television or software; of any patent, trade mark, industrial design or utility model, drawing, plan, secret formula or process, as well as for the use of, or the right to use, industrial, commercial or scientific equipment, or for information concerning industrial, commercial or scientific experience. The payment for acquisition of a right to use software in which only a copy of the relevant program is incorporated shall not be considered to be copyright and licence royalties in case the rights to copy, reproduce, distribute, modify, publicly display or make commercial use in

any other form are not granted.

9. "Technical assistance fees" shall be the payments from a source inside the Republic of Bulgaria for erection or installation of tangible assets, as well as any services of a consulting nature and marketing research as provided by any non-resident person.

10. "Franchising" shall be a totality of industrial or intellectual property rights relating to trade marks, trade names, logotypes, utility models, designs, copyright, know-how or patents, granted in return for a royalty, to be used for sale of goods and/or provision of services.

11. "Factoring" shall be a transaction whereby single or periodic monetary claims arising from a supply of goods or a provision of services are transferred, regardless of whether the person who has acquired the claims (the factor) assumes the risk of collection of the said claims in consideration of the payment of a reward.

12. "Foreign tax credit" shall be the right, enjoyable under conditions as specified by this Act, to deduct a profits tax or a tax on income already paid abroad.

13. "Related parties" shall be the parties within the meaning given by Item 3 of § 1 of the Supplementary Provisions of the Tax and Social-Insurance Procedure Code .

14. "Market price" shall be the price within the meaning given by Item 8 of § 1 of the Supplementary Provisions of the Tax and Social-Insurance Procedure Code .

15. "Transfer between a permanent establishment and another division of the same enterprise" shall be the term referred to in Item 6 of § 1 of the Supplementary Provisions of the Tax and Social-Insurance Procedure Code .

16. "Accounting financial result" shall be the profit (loss) according to the profit-and-loss account (income statement) for a specified period before charging the tax expenses on the profit.

17. "Undistributable expenses" shall be all selling expenses, administrative, financial and extraordinary expenses which do not relate to a particular activity only and are associated with the implementation of any activity:

(a) in respect of which corporation tax retention is enjoyable, or

(b) subject to levy of corporation tax, performed by not-for-profit legal entities.

18. "Undistributable income" shall be all financial and extraordinary income which does not arise from the implementation of a particular activity only and is associated with implementation of any activity in respect of which corporation tax retention is enjoyable.

19. "Expenses on provisions for debts" shall be the expenses on provisions as accounted for, which meet the criteria for recognition of a provision according to the applicable accounting standards, including:

(a) the expected excesses of the total amount of expenses over income and the expected losses under construction contracts;

(b) the termination and post-employment benefits, equity compensation benefits and other long-term employee benefits.

20. "Debt capital", within the meaning given by Article 43 (6) herein, shall be the total liabilities of the enterprise, excluding the investment grants and subsidies.

21. "Disposition effected on a regulated Bulgarian securities market" shall be any transactions:

(a) (amended, SG No. 52/2007) concluded on the official and the second-tier regulated market in the country within the meaning given by the Markets in Financial Instruments Act , excluding block trades and other transactions in securities which, according to the Rules and Regulations of the regulated market, are subject only to registration on the regulated

market;

(b) (amended, SG No. 52/2007) concluded under the terms and according to the procedure of tender offering under Section II of Chapter Eleven, as well as the transactions under the terms and according to the procedure of repurchase or redemption by collective investment schemes which have been admitted to public offering in the Republic of Bulgaria, licensed investment companies of the closed-end type, according to the procedure established in the Markets in Financial Instruments Act.

22. "Documented cost of acquisition of securities or interests" shall be the cost of acquisition of the relevant securities which the person has documented according to the procedure established by the relevant statutory instruments. Where securities or interests of a particular type, issued by a particular person, have been acquired at different prices and part of the said securities or interests are subsequently sold and it is impossible to prove which of the said securities or interests are sold, the cost of acquisition of the securities or interests sold shall be the weighted average price arrived at on the basis of the cost of acquisition of the securities or interests held at the time of the sale. Sentence one shall apply in all cases of acts of disposition of securities or interests. Where new shares or interests are acquired as a result of a distribution which has not led to a reduction of the owners' equity of the person distributing the shares or interests, the documented cost of acquisition of the shares or interests held shall be recalculated. After acquisition of the new shares or interests under the foregoing sentence, the documented cost of acquisition of each share or interest, including the newly acquired ones, shall equal the sum total of the documented costs of acquisition of the shares or interests prior to the acquisition of the new shares or interests, divided by the total number of shares or interests held after the acquisition, including the newly acquired ones.

23. "Computer peripheral equipment" shall be all devices which are connected to the basic input/output system of a computer or are controlled by a computer but are not essential for the functioning of the said computer.

24. "Development activity" shall be the activity of developing, designing, building and testing new goods, materials, manufacturing technologies and industrial systems and other industrial property items, as well as improving existing products and technologies.

25. "Tax loss from a source outside Bulgaria", for the purposes of Articles 73 and 74 herein, shall be the sum total of the losses from all permanent establishments in the respective foreign State.

26. "Financial institutions" shall be:
(a) financial institutions within the meaning given by Article 3 of the Credit Institutions Act ;

(b) the insurers, reinsurers and non-resident persons carrying on insurance or reinsurance business through a permanent establishment under the Insurance Code ;

(c) (supplemented, SG No. 52/2007) the investment intermediaries under the Markets in Financial Instruments Act and the management companies under the Public Offering of Securities Act ;

(d) the companies carrying on business for the provision of supplementary social insurance.

27. "Unprocessed plant and animal produce" shall be any primary product derived from plants and animals which is used in its natural form, without undergoing any form of technological treatment or processing resulting in physical and chemical alterations of the composition thereof.

28. "Manufacturing activities", for the purposes of Article 184 herein, shall be the process of creation of a new product by means of mechanical, physical or chemical conversion (treatment or processing) of raw and prime materials for the purpose of subsequent sale and biological transformation of live animals or plants.

29. "Initial investment" shall be an investment in:

(a) tangible fixed assets for establishment of a new enterprise, for extension of an existing enterprise, or for start of an activity leading to material changes in the product manufactured or in the manufacturing process of an existing enterprise, related to efficiency improvement, diversification or modernization; an investment in an asset which replaces an existing asset of similar use and characteristics, as well as the acquisition of means of transport by taxable persons in the transport sector, shall not qualify as initial investment;

(b) patents, licences and know-how.

30. "Enterprise in difficulty" shall be an enterprise meeting simultaneously the following criteria:

(a) in the case of a limited liability company or a joint-stock company: where more than 50 per cent of the registered capital thereof has disappeared, and more than 25 per cent of that capital has been lost over the last preceding twelve months;

(b) in respect of all other corporations: where more than 50 per cent of the owners' equity thereof has disappeared, and more than 25 per cent of that capital has been lost over the last preceding twelve months;

(c) or where the corporation fulfils the criteria under the Commerce Act or under the law of the place of registration for institution of bankruptcy proceedings.

31. "De minimis aid" shall be the term within the meaning given by the State Aids Act .

32. "Market rate of interest" shall be the interest that would have been paid under the same conditions for credit extended or received under any form whatsoever under a transaction between parties who or which are not related. The market rate of interest shall be determined according to the conditions of the market, taking into account all quantitative and qualitative characteristics of the transaction: form, amount and currency of the resources provided, period of the provision thereof, type, amount and liquidity of the collateral security, credit risk and other risks related to the transaction, profile of the borrower or lessee, as well as all other conditions and circumstances influencing the rate of interest.

33. "Advertising expenses" shall be the expenses incurred for the promotion of goods and service, including gifts which bear the trade name or the trade mark of the taxable persons, within the limits of the customary for the activity carried out by the person.

34. "Expenses on fringe benefits provided in kind" shall be the perquisites accounted for as expenses covered under Article 294 of the Labour Code and provided according to the procedure and manner defined in Article 293 of the Labour Code or according to a procedure and manner determined by the management of the enterprise. The said perquisites must be available to all factory and office workers and to the persons hired under a management and control contract. Where monetary relationships under any form whatsoever exist between the employer of commissioning entity and the persons referred to in sentence two in respect of the perquisites received, this shall not represent provision of expenses on fringe benefits in kind.

35. "Operator", within the meaning given by Article 209 herein, shall be any person which has obtained authorization from the Minister of Finance and which engages in the activities of printing, organizing, control and settlement in connection with food vouchers according to a procedure established by an ordinance of the Minister of Finance.

36. "Food vouchers" shall be a type of paper medium of exchange provided through an employer to factory and office workers, including persons hired under management contracts, which are used as a medium of payment at restaurants, fast-food outlets and food trading establishments, according to a contract for provision of services concluded with an operator.

37. "Passenger car" shall be such car as defined in the Road Traffic Act .

38. "Extra bus services" shall be bus services running according to an endorsed transportation scheme in a mode allowing the vehicles to stop and passengers to alight and board at request where this is legally possible, complementing the principal urban transport services without fully duplicating them.

39. "Expenses on maintenance, repair and operation of means of transport" shall be the accounting expenses, related to the maintenance, repair and operation of the means of transport, incurred on:

(a) fuel, lubricants and other consumables;

(b) spare parts;

(c) repair work, including painting and collision-repair services;

(d) technical inspections and parking;

(e) vehicle care products and accessories.

40. "Means of transport" shall be the means of transport as specified in Section Four of Chapter Two of the Local Taxes and Fees Act , regardless of whether entered in a register kept according to Bulgarian legislation.

41. "Vessels operation activities" shall be:

(a) the effecting of carriage by sea by means of vessels of a net tonnage exceeding 100 tons, the chartering of any such vessels, as well as the sale of vessels subject to tonnage taxation, which have been acquired not less than five years prior to the sale thereof;

(b) carriage by land, related to the carriage by sea, administrative and insurance services and other services provided to customers in connection with the effecting of the carriage by sea;

(c) financial operations and value adjustments resulting from exchange rate fluctuation, related to the management of the working capital used for the vessels operation;

(d) extraordinary activities related to the vessels operation, which do not come within the scope of Litterae (a) to (c) and which generate a turnover which does not exceed 0.25 per cent of the turnover generated by the activities referred to in Litterae (a) and (b).

42. "Days of service" shall be the days on which the vessel is engaged in carriage and/or performs any activities related to carriage. The days of service shall exclude the time for repairs or in a port, as well as the time during which the vessel is not engaged in carriage and/or does not perform any activities related to carriage due to detention or force majeure.

43. "Net tonnage" shall be the measure, in tons, of the useful deadweight (cargo carrying capacity) of a vessel as certified by a tonnage certificate of the vessel.

44. "Repeated violation" shall be any violation which is committed within one year after the entry into effect of a penalty decree whereby the offender was penalized for a violation of the same kind.

§ 2. This Act transposes the provisions of Council Directive 2001/86/EC supplementing the Statute for a European company with regard to the involvement of employees and of Council Directive 2003/72/EC supplementing the Statute for a European Cooperative Society with regard to the involvement of employees with regard to the involvement of employees.

TRANSITIONAL AND FINAL PROVISIONS

§ 3. This Act shall supersede the Corporate Income Tax Act (promulgated in the State Gazette No. 115 of 1997; corrected in No. 19 of 1998; amended in Nos. 21 and 153 of 1998, Nos. 12, 50, 51, 64, 81, 103, 110 and 111 of 1999, Nos. 105 and 108 of 2000, Nos. 34 and 110 of 2001, Nos. 45, 61, 62 and 119 of 2002, Nos. 42 and 109 of 2003, Nos. 18, 53 and 107 of 2004, Nos. 39, 88, 91, 102, 103 and 105 of 2005, Nos. 30, 34, 59 and 63 of 2006).

§ 4. The adjustments of the financial result (accounting profit/loss) for tax purposes consequent to the application of Article 23 of the Corporate Income Tax Act as superseded until the 31st day of December 2006 shall be considered to be adjustments of the accounting financial result upon determination of the tax financial result according to the procedure and according to the relevant provision of this Act.

§ 5. The accounting income and expenses from subsequent valuations (revaluations and impairments) of depreciable assets, which are charged until the 31st day of December 2003 and which are not recognized for tax purposes until the 31st day of December 2006 according to the procedure established by Article 23 of the Corporate Income Tax Act as superseded, shall be recognized for tax purposes in the year of write-off the relevant asset in the tax depreciation schedule, with the exception of the cases of shrinkage.

§ 6. (1) The depreciable assets available in the tax depreciation schedule as at the 31st day of December 2006, with the exception of such specified in Paragraph (2), shall be considered to be taxable depreciable assets within the meaning given by Article 48 herein.

(2) The following assets available in the tax depreciation schedule shall be written off therein as at the 1st day of

January 2007:

    1. the positive goodwill;

    2. the assets which are not used in any activity in respect of which a tax financial result is formed;

    3. the assets which are not classified as held for sale or are part of a group for exemption classified as held for sale;

    4. the assets where the taxable person has been dissolved through liquidation or has been dissolved through adjudication in bankruptcy.

(3) Article 66 herein shall not apply in the cases of write-off of any assets under Item 1 and 2 of Paragraph (1).

§ 7. (1) The tax depreciable value of any tax depreciable asset available as at the 1st day of January 2007 shall be the depreciable value of the said asset as at the 31st day of December 2006 under the Corporate Income Tax Act as superseded.

(2) The tax depreciation charged of any tax depreciable asset available as at the 1st day of January 2007 shall be the tax-recognized amount of the expenses on depreciations for the relevant asset as at the 31st day of December 2006 under the Corporate Income Tax Act as superseded.

(3) The tax value of any tax depreciable asset available as at the 1st day of January 2007 shall be the tax carrying value of the said asset as at the 31st day of December 2006 under the Corporate Income Tax Act as superseded.

§ 8. The values of the tax depreciable assets available in the tax depreciation schedule as at the 1st day of January 2007 shall remain unchanged compared to the said values as at the 31st day of December 2006.

§ 9. (1) The revaluation reserve in the tax depreciation schedule shall be written off therein as at the 1st day of January 2007. The said write-off shall follow the procedure and manner specified in § 10 or 11 herein. The taxable person shall opt for the application of § 10 or 11 herein.

(2) The "revaluation reserve," within the meaning given by Paragraph (1), shall be the revaluation reserve (the subsequent valuations reserve) which is included in the tax depreciation schedule as at the 31st day of December 2006.

(3) Where a revaluation reserve (subsequent valuations reserve) other than the one which should have been included according to Article 22 of the Corporate Income Tax Act as superseded is included in the tax depreciation schedule as at the 31st day of December 2006, the said reserve shall be adjusted for the purposes of Paragraph (1).

(4) Sole traders shall write off the revaluation reserve according to a procedure and in a manner applicable to the taxable persons under this Act.

§ 10. (1) The taxable persons shall adjust on a single occasion the values of the depreciable assets in the tax depreciation schedule as at the 1st day of January 2007 as a result of the write-off of the revaluation reserve.

(2) The tax-recognized amount of the expenses on depreciations for a specific depreciable asset as at the 31st day of December 2006 shall be credited with the written off revaluation reserve for the relevant asset, as a result of which the tax depreciation of the said asset charged as at the 1st day of January 2007 shall be increased and the tax value of the asset as at the 1st day of January 2007 shall be decreased. After the increase, the tax depreciation charged for the relevant asset may not exceed the tax depreciable value of the asset as at the 1st day of January 2007.

(3) Where the revaluation reserve for a specific asset exceeds the tax carrying value of the said asset as at the 31st day of December 2006, the said asset shall be written off in the tax depreciation schedule as at the 1st day of January 2007, with the tax-recognized amount of the expenses on depreciations of other assets of the same category, determined within the meaning given by Article 22 of the Corporate Income Tax Act as superseded, being credited with the amount of the excess. Where the values of the assets of the said category are insufficient to fulfil the requirement of sentence one, the tax-recognized amount of the expenses on depreciations of assets of the other categories shall be increased.

(4) After the write-off of the revaluation reserve, the total amount of the tax values of all assets available in the tax depreciation schedule as at the 1st day of January 2007 must equal the total amount of the tax carrying values of all assets as at the 31st day of December 2006, debited with the revaluation reserve as written off.

(5) Paragraphs (1) to (4) shall not apply were the total amount of the revaluation reserve as written off exceeds the total amount of the tax carrying values of all assets available in the tax depreciation schedule as at the 31st day of December 2006. The taxable persons shall write off all assets available in the tax depreciation schedule as at the 31st day of December 2006 in the said schedule as at the 1st day of January 2007. The accounting financial result shall be credited with the difference between the total amount of the revaluation reserve and the total amount of the tax carrying values of all assets as at the 31st day of December 2006 upon determination of the tax financial result, inter alia upon determination of the quarterly prepayments according to the procedure established by § 11 herein.

§ 11. (1) Upon determination of the tax financial results, inter alia upon determination of the quarterly prepayments, the accounting financial result shall be credited with the revaluation reserve as written off as follows:

1. for 2007: with one-third of the revaluation reserve as written off;

2. for 2008: with one-third of the revaluation reserve as written off;

3. for 2009: with one-third of the revaluation reserve as written off.

(2) Upon dissolution of any taxable person, with the exception of the cases of dissolution upon transformation through change of the legal form under Article 264 of the Commerce Act , upon determination of the tax financial result for the year of dissolution the accounting financial result shall be credited with the portion of the revaluation result as written off whereby the accounting financial result has not been credited according to the procedure established by Paragraph (1).

(3) The taxable person may credit the accounting financial result thereof with the revaluation reserve as written off on a single occasion upon determination of the tax financial result thereof for 2007, inter alia upon determination of the quarterly prepayments. In this case Paragraphs (1) and (2) shall not apply.

§ 12. The provision of Item 6 of Article 55 (1) herein shall apply to any tax tangible fixed assets acquired after the 31st day of December 2006.

§ 13. For the purposes of Article 55 herein, the depreciable asset referred to in Item 55 (f) of § 1 of the Supplementary Provisions of the Corporate Income Tax Act as superseded shall be allocated to Category V.

§ 14. For the purposes of Article 55 herein, the depreciable asset, formed according to the Corporate Income Tax Act as superseded as a result of the tax-unrecognized portion of the excess of the sum total of the accounting depreciation quotas over the tax-recognized amount of the depreciations of the assets as a whole for the period commencing on the 1st day of January 1998 and ending on the 31st day of December 2002, shall be allocated to Category VII.

§ 15. Where as at the 1st day of January 2007 any depreciable asset has been withdrawn from use (no economic benefit has been derived therefrom) during a period longer than three months, and the charging of tax depreciations for the said asset according to the procedure established by the Corporate Income Tax Act as superseded has not been discontinued, the charging of tax depreciations for the said asset shall be discontinued on the 1st day of January 2007.

§ 16. The provision of Article 63 herein shall apply to any subsequent expenses completed after the 31st day of December 2006.

§ 17. For the purposes of Article 66 (1) herein, where the residual value is not included in the depreciable value of the asset within the meaning given by the Corporate Income Tax Act as superseded, the accounting carrying value of the asset shall be debited with the residual value thereof upon determination of the tax financial result.

§ 18. Article 68 herein shall apply to any assets acquired after the 31st day of December 2005.

§ 19. Article 45 herein shall not apply in the cases where the financial result for tax purposes has been credited with the subsequent valuation reserve (revaluation reserve) according to the procedure established by Article 23 of the Corporate Income Tax Act as superseded.

§ 20. Any unrecognized expenses on interest payments after the 1st day of January 2004 according to Article 26 of the Corporate Income Tax Act as superseded, subject to deduction and not deducted until the 31st day of December 2006, shall be deducted according to the procedure established by Article 43 herein until the lapse of five years since the year of non-recognition of the said expenses for tax purposes.

§ 21. The portion of the provisions for claims taxed for tax purposes (under the accounting legislation effective until the 31st day of December 2001) in the non-financial enterprises, whereby the financial result has not been debited according to the procedure established by Article 23 (3) of the Corporate Income Tax Act as superseded during succeeding years, shall be treated as unrecognized expense on subsequent valuation of a claim according to the procedure established by Article 34 of this Act.

§ 22. Any losses formed after the 1st day of January 2002 and subject to carry-forward, which have not been deducted until the 31st day of December 2006 according to the procedure established by Chapter Four of the Corporate Income Tax Act as superseded, shall be deducted according to the procedure established by Chapter Eleven herein.

§ 23. Article 95 herein shall not apply to any income and expenses originating as a result of any income and expenses, accounted for prior to the 1st day of January 2007, in respect of which there existed a difference between the amount as accounted for according to the accounting policies and the amount as determined by a regulatory authority according to a statutory instrument.

§ 24. The right to enjoy the reduction referred to in Article 60 (1) or the retention referred to in Articles 61d or 61e of the Corporate Income Tax Act as superseded in respect of the corporation tax due for 2006 shall furthermore vest in any taxable person which has not submitted a notification to the competent National Revenue Agency territorial directorate according to Article 51a of the Corporate Income Tax Act as superseded, subject to the condition that the said person fulfil all requirements provided for in the Act for the relevant corporation tax reduction or retention.

§ 25. Corporation tax retention shall be allowed according to the procedure established by Article 187 herein until the 31st day of December 2010.

§ 26. The taxable persons, which have been allowed to retain corporation tax in pursuance of § 60 of the Transitional and Final Provisions of the Corporate Income Tax Act as superseded, in respect of which the ten-year time limit under Article 20 as repealed of the Investment Promotion Act has not expired, shall be allowed to retain 30 per cent of the corporation tax due for 2007 in compliance with the conditions under Articles 189 and 190 herein.

§ 27. The annual taxable profit (loss), the annual corporation tax due, all alternative taxes, the taxes on expenses and the withholding taxes for 2006, which are declarable according to the procedure established by the Corporate Income Tax Act as superseded, shall be declared by means of submission of the relevant tax returns and within the time limits under the said Act.

§ 28. (1) The taxes due for 2006 under the Corporate Income Tax Act as superseded shall be remitted within the time limits and according to the procedure established by the said Act.

(2) The right referred to in Article 92 (5) herein shall be enjoyable by the taxable persons even upon declaring the corporation tax for 2006.

§ 29. The standard forms of annual tax returns for 2006 under the Corporate Income Tax Act as superseded shall be endorsed not later than the 10th day of January 2007 by an order of the Minister of Finance, which shall be promulgated in the State Gazette.

§ 30. Any provisions, which are included in the historical cost of a tax depreciable asset but are included in the depreciable value of the said asset according to the Corporate Income Tax Act as superseded, shall be recognized for tax purposes according to the procedure established by Article 39 herein.

§ 31. The ordinance referred to in Article 55 (4) herein shall be issued within six months after the entry of this Act into force.

§ 32. The Tax and Social-Insurance Procedure Code (promulgated in the State Gazette No. 105 of 2005; amended in Nos. 30, 33, 34, 59, 63, 73 and 82 of 2006) shall be amended and supplemented as follows:

1. In Article 141 :

(a) in Paragraph (1), the words "thirty days" shall be replaced by "sixty days";

(b) in Paragraph (2):

(aa) in sentence one at the end, there shall be added "and has not eliminated the deficiencies within fifteen days after the date of request by the revenue authority";

(bb) in sentence two, the words "there are no" shall be replaced by "there are";

(c) in Paragraph (3), after the words "application of the CADT" there shall be inserted "or failure to rule within the period under Paragraph (1)";

(d) Paragraphs (4) and (5) shall be amended to read as follows:

"(4) Any opinion on lack of grounds for application of the CADT shall be appealable by the recipient of the income or by the payer, if authorized to do so by the recipient of the income. Any such appeal shall follow the procedure for appeal of audit acts, and the appeal shall be lodged care of the territorial directorate whereto the request has been submitted.

(5) If there is an opinion on application of the CADT under Paragraph (1) or (2), the tax liabilities for the relevant income may be revised solely if there are grounds under Article 133 (2)."

2. In Article 142 (1) and (2) , the figure "25,000" shall be replaced by "50,000".
§ 33. This Act shall enter into force on the 1st day of January 2007.

This Act was adopted by the 40th National Assembly on the 14th day of December 2006 and the Official Seal of the National Assembly has been affixed thereto.
Annex 1

to Item 1 of Article 100

List of Companies in the Member States of the European Union Referred to in Item 1 of Article 100 Herein

(a) companies incorporated under Council Regulation (EC) No 2157/2001 on the Statute for a European company (SE) and Council Directive 2001/86/EC supplementing the Statute for a European company with regard to the involvement of employees,included under Council Regulation (EC) No 1435/2003 on the Statute for a European Cooperative Society (SCE) and Council Directive 2003/72/EC supplementing the Statute for a European Cooperative Society with regard to the involvement of employees;

(b) companies under Belgian law known as: "societe anonyme"/"naamloze vennootschap", "societe en commandite par actions"/"commanditaire vennootschap op aandelen", "societe privee a responsabilite limitee"/"besloten vennootschap met beperkte aansprakelijkheid", "societe cooperative a responsabilite limitee"/"cooperative vennootschap met beperkte aansprakelijkheid", "societe en nom collectif"/"vennootschap onder firma", "societe en commandite simple"/"gewone commanditaire vennootschap", public undertakings which have adopted one of the above-mentioned legal forms, as well as other companies constituted under Belgian law and which are subject to the Belgian Corporate Tax;

(c) companies under Czech law known as: "akciova spolecnost", "spolecnost s rucenim omezenym";

(d) companies under Danish law known as "aktieselskab" and "anpartsselskab". Other companies subject to tax under the Corporation Tax Act, in so far as their taxable income is calculated and taxed in accordance with the general tax legislation rules applicable to "aktieselskaber";

(e) companies under German law known as: "Aktiengesellschaft", "Kommanditgesellschaft auf Aktien", "Gesellschaft mit beschrankter Haftung", "Versicherungsverein auf Gegenseitigkeit", "Erwerbs- und Wirtschaftsgenossenschaft", "Betriebe gewerblicher Art von juristischen Personen des offentlichen Rechts", as well as other companies constituted under German law and subject to German corporate tax;

(f) companies under Estonian law known as: "taisuhing", "usaldusuhing", "osauhing", "aktsiaselts", "tulundusuhistu";

(g) companies under Greek law known as: ??????? ???????", "??????? ???????????c ??????c" (?.?.?) and other companies constituted under Greek law and subject to Greek corporate tax;

(h) companies under Spanish law known as: "sociedad anonima", "sociedad comanditaria por acciones", "sociedad de resposabilidad limitada", as well as those public law bodies which operate under private law. Other entities constituted under Spanish law and subject to Spanish corporate tax ('Impuesto sobre Sociedades');

(i) companies under French law known as: "societe anonyme", "societe en commandite par actions", "societe a responsabilite limitee", "societe par actions simplifiee", "societe d'assurances mutuelles", "caisses d'epargne et de prevoyance", "societes civiles", which are automatically subject to corporation tax, "cooperatives", "unions de cooperatives", industrial and commercial public establishments and undertakings, as well as other companies constituted under French law which are subject to the French Corporate Tax;

(j) companies incorporated or existing under Irish laws, bodies registered under the Industrial and Provident Societies Act, building societies incorporated under the Building Societies Acts and trustee savings banks within the meaning of the Trustee Savings Banks Act, 1989;

(k) companies under Italian law known as "societa per azioni", "societa in accomandita per azioni", "societa a responsabilita limitata", "societa cooperativa", "societa di mutual assicurazione", as well as private and public entities whose activity is wholly or principally commercial;

(l) under Cypriot law: "???????c", as defined in the Income Tax laws;

(m) companies under Latvian law known as: "akciju sabiedriba", "sabiedriba ar ierobezotu atbildibu";

(n) companies incorporated under the law of Lithuania;

(o) companies under Luxembourg law known as "societe anonyme", "societe en commandite par actions", "societe a responsabilite limitee", "societe cooperative", "societe cooperative organisee comme une societe anonyme", "association d'assurances mutuelles", "association d'epargne-pension", "enterprise de natura commerciale, industrielle ou miniere de l'Etat, des communes, des syndicats de communes, des etablissements publics et des autres personnes marales de droit public", as well as other companies constituted under Luxembourg law which are subject to the Luxembourg Corporate Tax;

(p) companies under Hungarian law known as: "kozkereseti tarsasag", "bereti tarsasag", "kozos vallat", "korlatolt felelossegu tarsasag", "reszvenytarsasag", "egyesules", "szovetkezet";

(q) companies under Maltese law known as: "Kumpaniji ta' Responsabilita Limitata", "Socjetajiet en commandite li l-kapital taghhom maqsum fazzjonijiet";

(r) companies under Dutch law known as "naamloze vennootschap", "besloten vennootschap met beperkte aansprakelijkheid", "Open commanditaire vennootschap", "Cooperatie", "onderlinge waarborgmaatschappij", "Fonds voor gemene rekening", "vereniging op cooperative grondslag", "vereniging welke op onderlinge grondslag als verzekeraar of kredietinstelling optreedt", as well as other companies constituted under Dutch law which are subject to the Dutch Corporate Tax;

(s) companies under Austrian law known as: "Aktiengesellschaft", "Gesellschaft mit beschrankter Haftung", "Versicherungsvereine auf Gegenseitigkeit", "Erwerbs- und Wirtschaftsgenossenschaften", "Betriebe gewerblicher Art von Korperschaften des offentlichen Rechts", "Sparkassen";

(t) companies under Polish law known as: "spolka akcyjna", "spolka z ograniczona odpowiedzialnoscia";

(u) commercial companies or civil law companies having a commercial form, as well as cooperatives and public undertakings, incorporated under Portuguese law;

(v) companies under Slovenian law known as: "delniska druzba", "komanditna druzba", "druzba z omejeno odgovornostjo";

(w) companies under Slovak law known as: "akciova spolocnost", "spolocnost s rucenim obmedzenym", "komanditna spolocnos";

(x) companies under Finnish law known as "osakeyhtio"/"aktiebolag", "osuuskunta"/"andelslag", "saastopankki"/"sparbank" and "vakuutusyhtio"/"forsakringsbolag";

(y) companies under Swedish law known as "aktiebolag", "forsakringsaktiebolag", "ekonomiska foreningar", "sparbanker", "omsesidiga forsakringsbolag";

(z) companies incorporated under the law of the United Kingdom of Great Britain and Northern Ireland.

Annex 2

to Item 3 of Article 100 and Item 1 of Article 108 (2)

List of Taxes in the Member States of the European Union

- impot des societes/vennootschapsbelasting in Belgium,

- selskabsskat in Denmark,

- Korperschaftsteuer in the Federal Republic of Germany,

- ????? ??????μ???? ??μ???? ???????? ????????????? ????????? [in Greece],

- impuesto sobre sociedades in Spain,

- impot sur les societes in France

- corporation tax in Ireland,

- imposta sul reddito delle persone giuridiche in Italy,

- impot sur le revenu des collectivites in Luxembourg,

- venflootschapsbelasting in the Netherlands,

- imposto sobre o rendimento das pessoas colectivas in Portugal,

- corporation tax in the United Kingdom of Great Britain and Northern Ireland,

- Korperschaftsteuer in Austria

- yhteisojen tulovero/inkomstskatten for samfund in Finland,

- statlig inkomstskatt in Sweden,

- Dan z prijmu pravnickych osob in the Czech Republic,

- Tulumaks in Estonia,

- ????? ??????????? in Cyprus,

- uznemumu ienakuma nodoklis in Latvia,

- Pelno mokestis in Lithuania,

- Tarsasagi ado in Hungary,

- Taxxa fuq l-income in Malta,

- Podatek dochodowy od osob prawnych in Poland,

- Davek od dobicka pravnih oseb in Slovenia,

- Dan z prijmu pravnickych osob in Slovakia.


Annex 3

to Item 1 of Article 137


List of Companies in the Member States of the European Union Referred to in Item 1 of Article 137 Herein


(a) companies incorporated under Council Regulation (EC) No 2157/2001 on the Statute for a European company (SE) and Council Directive 2001/86/EC supplementing the Statute for a European company with regard to the involvement of employees, included under Council Regulation (EC) No 1435/2003 on the Statute for a European Cooperative Society (SCE) and Council Directive 2003/72/EC supplementing the Statute for a European Cooperative Society with regard to the involvement of employees;

(b) companies under Belgian law known as "societe anonyme"/"naamloze vennootschap", "societe en commandite par actions"/"commanditaire vennootschap op aandelen", "societe privee a responsabilite limitee"/"besloten vennootschap met beperkte aansprakelijkheid", "societe cooperative a responsabilite limitee"/"cooperative vennootschap met beperkte aansprakelijkheid", "societe en nom collectif"/"vennootschap onder firma", "societe en commandite simple"/"gewone commanditaire vennootschap", public undertakings which have adopted one of the above-mentioned legal forms, as well as other companies constituted under Belgian law and subject to the Belgian Corporate Tax;

(c) companies under Czech law known as: "akciova spolecnost", "spolecnost s rucenim omezenym";

(d) companies under Danish law known as "aktieselskab" and "anpartsselskab"; other companies subject to tax under the Corporation Tax Act, in so far as their taxable income is calculated and taxed in accordance with the general tax legislation rules applicable to "aktieselskaber";

(e) companies under German law known as: "Aktiengesellschaft", "Kommanditgesellschaft auf Aktien", "Gesellschaft mit beschrankter Haftung", "Versicherungsverein auf Gegenseitigkeit", "Erwerbs- und Wirtschaftsgenossenschaft", "Betriebe gewerblicher Art von juristischen Personen des offentlichen Rechts", as well as other companies constituted under German law and subject to German corporate tax;

(f) companies under Estonian law known as: "taisuhing", "usaldusuhing", "osauhing", "aktsiaselts", "tulundusuhistu";

(g) companies under Greek law known as: "??????? ???????", "??????? ????????????c ??????c" (?.?.?);

(h) companies under Spanish law known as: "sociedad anonima", "sociedad comanditaria por acciones", "sociedad de resposabilidad limitada", as well as those public law bodies which operate under private law;

(i) companies under French law known as "societe anonyme", "societe en commandite par actions", "societe a responsabilite limitee", "societe par actions simplifiee", "societe d'assurances mutuelles", "caisses d'epargne et de prevoyance", "societes civiles", which are automatically subject to corporation tax, "cooperatives", "unions de cooperatives", industrial and commercial public establishments and undertakings, as well as other companies constituted under French law which are subject to the French Corporate Tax;

(j) companies incorporated or existing under Irish laws, bodies registered under the Industrial and Provident Societies Act, building societies incorporated under the Building Societies Acts and trustee savings banks within the meaning of the Trustee Savings Banks Act, 1989;

(k) companies under Italian law known as: "societa per azioni", "societa in accomandita per azioni", "societa a responsabilita limitata", "societa ccoperativa", "societa di mutual assicurazione", as well as private and public entities whose activity is wholly or principally commercial;

(l) under Cypriot law: "???????c", as defined in the Income Tax laws;

(m) companies under Latvian law known as: "akciju sabiedriba", "sabiedriba ar ierobezotu atbildibu";

(n) companies incorporated under the law of Lithuania;

(o) companies under Luxembourg law known as: "societe anonyme", "societe en commandite par actions", "societe a responsabilite limitee", "societe cooperative", "societe cooperative organisee comme une societe anonyme", "association d'assurances mutuelles", "association d'epargne-pension", "enterprise de natura commerciale, industrielle ou miniere de l'Etat, des communes, des syndicats de communes, des etablissements publics et des autres personnes marales de droit public", as well as other companies constituted under Luxembourg law which are subject to the Luxembourg Corporate Tax;

(p) companies under Hungarian law known as: "kozkereseti tarsasag", "bereti tarsasag", "kozos vallat", "korlatolt felelossegu tarsasag", "reszvenytarsasag", "egyesules", "kozhasznu tarsasag", "szovetkezet";

(q) companies under Maltese law known as: "Kumpaniji ta' Responsabilita Limitata", "Socjetajiet en commandite li l-kapital taghhom maqsum fazzjonijiet";

(r) companies under Dutch law known as: "naamloze vennootschap", "besloten vennootschap met beperkte aansprakelijkheid", "Open commanditaire vennootschap", "Cooperatie", "onderlinge waarborgmaatschappij", "Fonds voor gemene rekening", "vereniging op cooperative grondslag" and "vereniging welke op onderlinge grondslag als verzekeraar of kredietinstelling optreedt", as well as other companies constituted under Dutch law which are subject to the Dutch Corporate Tax;

(s) companies under Austrian law known as: "Aktiengesellschaft", "Gesellschaft mit beschrankter Haftung", "Erwerbs- und Wirtschaftsgenossenschaften";

(t) companies under Polish law known as: "spolka akcyjna", "spolka z ograniczona odpowiedzialnoscia";

(u) commercial companies or civil law companies having a commercial form, as well as other legal persons carrying on commercial or industrial activities, which are incorporated under Portuguese law;

(v) companies under Slovenian law known as: "delniska druzba", "komanditna druzba", "druzba z omejeno odgovornostjo";

(w) companies under Slovak law known as: "akciova spolocnost", "spolocnost s rucenim obmedzenym", "komanditna spolocnost ";

(x) companies under Finnish law known as: "osakeyhtio"/"aktiebolag", "osuuskunta"/"andelslag", "saastopankki"/"sparbank" and "vakuutusyhtio"/"forsakringsbolag";

(y) companies under Swedish law known as: "aktiebolag", "forsakringsaktiebolag", "ekonomiska foreningar", "sparbanker", "omsesidiga forsakringsbolag";

(z) companies incorporated under the law of the United Kingdom of Great Britain and Northern Ireland.


Annex 4

to Item 3 of Article 137


List of Taxes in the Member States of the European Union


- impot des societes/vennootschapsbelasting in Belgium,

- selskabsskat in Denmark,

- Korperschaftsteuer in the Federal Republic of Germany,

- ????? ??????μ???? ??μ???? ???????? ????????????? ????????? in Greece,

- impuesto sobre sociedades in Spain,

- impot sur les societes in France,

- corporation tax in Ireland,

- imposta sul reddito delle societa in Italy,

- impot sur le revenu des collectivites in Luxembourg,

- venflootschapsbelasting in the Netherlands,

- imposto sobre o rendimento das pessoas colectivas in Portugal,

- corporation tax in the United Kingdom of Great Britain and Northern Ireland,

- Korperschaftsteuer in Austria,

- yhteisojen tulovero/inkomstskatten for samfund in Finland,

- statlig inkomstskatt in Sweden,

- Dan z prijmu pravnickych osob in the Czech Republic,

- Tulumaks in Estonia,

- ????? ?????????? in Cyprus,

- uznemumu ienakuma nodoklis in Latvia,

- Pelno mokestis in Lithuania,

- Tarsasagi ado in Hungary,

- Taxxa fuq l-income in Malta,

- Podatek dochodowy od osob prawnych in Poland,

- Davek od dobicka pravnih oseb in Slovenia,

- Dan z prijmov pravnickych osob in Slovakia.