# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS-TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

 *Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/


## JOINT PRETRIAL STIPULATION AND DISCLOSURES

The parties jointly file the following pretrial stipulation and disclosures pursuant to
Federal Rule of Civil Procedure 26(a)(3)(A) and Local Rule 16.1(e).

1.     **Statement of the Case by Each Party.**

      a.     <u>Plaintiffs</u>.

      b.     <u>Defendants</u>.  There are two claims currently set for trial: (1) Plaintiffs' claim for damages based on the Court's finding of indirect copyright infringement on a vicarious liability theory, which as a matter of law does not require a finding of knowledge or intent; and (2) Defendant Hotfile's counterclaim.  Plaintiffs' damages claim faces a number of hurdles. Plaintiffs failed to produce registration certificates for all of the files-in-suit, they have also failed timely to produce the content files by September 26, 2011 for each file-in-suit as required by the Court's Order on Defendants' Motion to Compel (Docket No. 147).  As a result, Plaintiffs' may not claim statutory damages for any such files.

      Any damage award for Plaintiffs should be at or near the minimum allowed per work by statute, and Plaintiffs will not be able to show that any vicarious infringement by Hotfile was willful (if Plaintiffs were to attempt to try the issue).  The Hotfile system's purpose is not to facilitate infringement.  Hotfile is an international leader in Internet file-hosting and cloud storage.  Hotfile has played a role in promoting technological innovation, having hosted over 100 million digital files, including open source software, original compositions of musicians around the world, news reporting on important political events, user-generated content, photos, Creative Commons movies, and public domain books, for businesses and consumers around the world.

      Defendants had no reason to believe that their acts constituted infringement.  Because of its respect for user privacy and because of the volume of files hosted on its site, Hotfile was unaware of any specific acts of infringement.  Additionally, as a precaution, Defendants undertook significant antipiracy countermeasures, including by implementing a DMCA policy, such that they believed that Hotfile was compliant with the DMCA.  Hotfile collaborated and cooperated with Plaintiffs and other copyright owners to prevent infringement on its site, such as by adopting new technologies and providing content owners with innovative and sophisticated tools to facilitate rapid takedown of suspected infringing works.  Hotfile responded to every takedown notice sent to it by Plaintiffs; indeed, Plaintiffs have presented no evidence to the

contrary. Even Plaintiffs' representatives repeatedly assured Hotfile that its antipiracy countermeasures were more than adequate and praised Hotfile's efforts.

This case also involves Hotfile's counterclaim against Plaintiff and counterdefendant Warner Bros. Entertainment, Inc. ("Warner") for its violations of 17 U.S.C. § 512(f). In an effort to combat piracy on its site, Hotfile offered to Warner a special antipiracy tool, a "Special Rightsholder Account" ("SRA") that allowed Warner to bypass the standard Digital Millennium Copyright Act ("DMCA") notice and takedown regime, instead giving Warner the ability to directly delete files hosted on Hotfile that Warner represented under penalty of perjury were infringing Warner's copyrights. Warner expressed to Hotfile that it was satisfied with the SRA and routinely praised Hotfile for its "copyright compliance." After Warner, along with the other Plaintiff movie studios, filed this suit against Hotfile in 2011 for copyright infringement, Hotfile became aware of suspicious deletions made through Warner's SRA. For many of the files Warner deleted via the SRA, Warner appears to have misidentified the substance of the files and misrepresented—under penalty of perjury—is ownership of those files and/or its authorization to delete them.

Through discovery, Hotfile learned that Warner relied on computer algorithms – not human beings – to determine what to delete from the Hotfile system. This computer system or "bot" functioned principally on a keyword matching protocol, marking for deletion any files on any searched page where the page title contained the characters for which Warner's system was searching. Warner did not review the content of the files before deleting through Hotfile's SRA, and, except on a few limited occasions, no human being at Warner reviewed even the names of the files Warner was deleting before it deleted them. Essentially, Warner knew nothing about the content of the files it was deleting other than a generalized knowledge that they were found on particular websites and posted on pages that contained certain letters and/or numbers in the title. Warner knew that its system was seriously flawed, producing as many as 10% false positives for the files it located for deletion. Warner also knew that its system was deficient with respect to several specific features. For example, Warner knew that individual files that were

smaller than 200 megabytes were almost certainly not full movies, and yet Warner continued to misidentify and delete single links smaller than 200 megabytes as movies. Moreover, Warner knew that using "V 2009" as a search term was overbroad and resulted in the deletion of significant volumes of non-Warner content, yet it continued to employ that search term and continued to improperly delete material identified through such searches. Hotfile has discovered many other flaws/errors Warner was aware of but failed to address. For example, Warner also admitted to improperly deleting several instances of a popular freeware program distributed on Hotfile, JDownloader, suggesting in deposition that Warner believed it was entitled to delete these files, despite knowing that it did not own any copyrights to those files and did not have authorization from the actual copyright owner.

Because Warner knowingly misrepresented under penalty of perjury that it had a good faith belief that the works identified in Hotfile's counterclaim were infringing when at best it had formed no specific belief whatsoever about the infringing nature of such files and at worst specifically targeted and was improperly deleting files from Hotfile it did not like (e.g., JDownloader), Warner is liable for violating § 512(f). Hotfile has been damaged by Warner's improper deletions by having the list of available works on Hotfile improperly diminished, having sources of direct premium account referrals deleted, having premium subscribers terminated, and having its goodwill diminished.

### 2.   Basis of Federal Jurisdiction.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions), and under the copyright laws of the United States, 17 U.S.C. § 101 et seq.

### 3.   Pleadings Raising the Issues.

    a.    The Complaint (Docket No. 1).

    b.    The Answer and Counterclaim (Docket. No. 121).

    c.    Order on Motion To Dismiss (Docket No. 94).

    d.    Order on Defendants' Motion to Compel (Docket No. 147).

e.     First Amended Answer and Counterclaim (Docket No. 144).

f.     Second Amended Answer and Counterclaim (Docket No. 161).

g.     Order on Summary Judgment Motions (Docket No. 524).

**4.     List of All Undisposed of Motions or Other Matter s Requiring the Court's Action.**

a.     Hotfile's Motion to Strike Rebuttal Report of Dr. Richard Waterman (Docket No. 217).

b.     Defendant Hotfile's Motion for Certification of Interlocutory Appeal Under 26 U.S.C. § 1292(b) and for Stay of Proceedings Pending Appeal (Docket No. 532).

c.     Plaintiffs' Motion to Bifurcate Counterclaim (Docket Nos. 546 & 547).

**5.     Concise Statement of Uncontested Facts Requiring No Proof at Trial and Reservations.**

a.     Plaintiffs' trade association, the Motion Picture Association of America ("MPAA"), reports record high global and domestic box office sales in 2012 of $34.7 billion—a 6% increase over 2011.  Plaintiff Disney's parent company reports 2012 revenues of over $42 billion.  Walt Disney Co., Annual Report (Form 10-K), at 27 (Nov. 21, 2012).  Plaintiff Fox's parent company reports 2012 revenues of over $25 billion.  Twenty-first Century Fox, Inc., Annual Report (Form 10-K), at 41 (Aug. 19, 2013).   Plaintiff Universal's parent company reports 2012 revenues of almost $24 billion.  NBC Universal Media, LLC, Annual Report (Form 10-K), at 25 (Feb. 21, 2013).  Plaintiff Sony's parent company reports 2012 revenues of almost $6.5 billion yen, and Plaintiff Warner's parent company reports 2012 revenues of almost $10 billion. Sony Corp., Annual Report (Form 20-F), at 41 (June 27, 2013); Time Warner Inc., Annual Report (Form 10-K), at 52 (Feb. 22, 2013).

b.     No conduct occurring on or after February 8, 2011 forms the basis of Plaintiffs' damages claim.  MSJ Order at 51.

c.     The Court's Order on Defendants' Motion to Compel (Docket No. 147) ordered Plaintiffs to produce copies of all files alleged to be present on hotfile.com that Plaintiffs allege infringed their copyrights by the deadline of September 26, 2011.

d.     Hotfile was founded in 2009. MSJ Order at 3. It is a file-hosting site that has hosted over 100 million digital files, including open source software, freely shared videos, Creative Commons movies, and public domain books. The most downloaded files stored on hotfile.com (open source software programs) are non-infringing. MSJ Order at 20 n8.

e.     Hotfile refrains from interfering with how its members use the service. In the normal course of business, Hotfile does not and, due to the sheer volume of files, cannot individually review what its users are uploading, downloading, or promoting. MSJ Order at 5.

f.     Hotfile does not provide a function by which users can search for content on hotfile.com.

g.     Hotfile's business model does not differentiate between the nature of the content available on its site (e.g., copyrighted versus uncopyrighted) or user activity (e.g., storage, sharing, streaming, etc.). MSJ Order at 11. Hotfile charges a "fixed fee" to Premium subscribers, regardless of the content that they upload or download.

h.     Unlimited storage is one of the benefits that Premium subscribers receive.

i.     Hotfile's primary model was Rapidshare, which has never been adjudicated to be an infringer and is still in operation.

j.     Non-infringing files are more likely to cause users to purchase Premium accounts than allegedly infringing files.

k.     Vobile's fingerprinting technology shows only 3.4% of uploaded files to be infringing.

l.     Some 93% of Hotfile uploaders have never received a takedown notice, and only 8.8% of files on Hotfile have ever been accused of infringement.

   m. None of the top 100 downloads from Hotfile is a work owned by Plaintiffs, and the number of files that Plaintiffs have accused of infringement in this case constitute less than 1.1% of the total downloads from Hotfile.

   n. There have been over a million downloads of open source programs from Hotfile, and the developers of these programs participate in Hotfile's Affiliate program.

   o. Over half of the files on Hotfile have never been downloaded, and another 5.76% have only been downloaded once.

   p. Hotfile has implemented countermeasures to combat piracy on its site and has invited content owners to report alleged copyright infringement to Hotfile for immediate action.

   q. Since Hotfile's inception, it has maintained a policy prohibiting the transmission, distribution or storage on its site of any materials that violate laws, including copyright laws.  MSJ Order at 15.  Since May 2010, this policy, along with a repeat infringer policy, has been communicated to its users through Hotfile's terms of service.  *Id.*

   r. Hotfile users who upload files have to agree to Terms of Service and an Intellectual Property Policy which prohibit copyright infringement.

   s. Hotfile has continuously provided an email address on its site through which content owners and/or the public can alert Hotfile to any infringing materials.  MSJ Order at 16.

   t. Hotfile has taken steps to better police the activity of its users, even though it was not required to.  Hotfile engineered and implemented an antipiracy tool called "SRAs" (special rightsholder accounts) through which content owners, including certain Plaintiffs, could quickly and immediately remove allegedly infringing content without the need for further action from Hotfile.  MSJ Order at 23.

u.    Since 2009, Hotfile has implemented MD5 hashing technology so that once a file was deleted, all identical copies were removed from the system and the same file was prevented from being uploaded again by the same user or others, even under a different name. MSJ Order at 23.

v.    Hotfile has implemented vCloud9, a video fingerprinting product touted as capable of identifying copyrighted content on a cloud storage service, the efficacy of which Plaintiffs' trade association the MPAA strongly supports.  MSJ Order at 23.

w.    In the summer of 2011, Hotfile adopted Vobile MediaWise content identification technology.

x.    Since February 2011, Hotfile has adopted a "three strikes" infringer policy, which terminates and bans users who receive three DMCA notices of claimed infringement or SRA requests.  Hotfile tracks how many times it receives notices of infringement, each of which counts as a "strike".  MSJ Order at 21.  Hotfile has terminated many users pursuant to this strengthened repeat infringer policy.

y.    Starting in May 2009, Hotfile took down each file-in-suit for which a takedown notice was received from Plaintiffs within 48 hours of Hotfile's receiving the notice of infringement.

z.    On September 15, 2010, Michael Bentkover, a representative of Warner Brothers Entertainment, Inc. wrote an email to a Hotfile employee stating, "Thank you as always for your fast cooperation and removal of Warner Bros. property."  (Docket No. 321-31).

aa.    On April 14, 2010, Michael Bentkover wrote an email to Hotfile's support email address stating, "Many thanks for [sic] your cooperation."  (Docket No. 321-32).

bb.    On April 15, 2010, Natasha Lakeman of Bay, TSP, Inc., one of Plaintiffs' antipiracy vendors, wrote an email to Hotfile's support email address stating, "Thank you for your quick response and the additional login information as per our request. We appreciate your time and cooperation!" (Docket No. 321-33).

cc.     Plaintiff Warner uploaded twenty excerpts from its Vampire Diaries television show to Hotfile in 2010 to encourage the downloading of full episodes from iTunes. MSJ Order at 8; Plaintiffs' Supplemental Response to Interrogatory No. 8, p.6-9.

dd.     Warner used Hotfile's SRA tool to seek deletion of the files identified in Exhibits A-D of Hotfile's counterclaim.

ee.     When Warner used the SRA tool to delete files identified in Exhibits A-D of Hotfile's counterclaim it certified "under penalty of perjury" that it was "an owner or an authorized legal representative of the owner of copyrights" and it had "a good faith belief that use of this material is not authorized by the copyright owner, the copyright owner's agent, or the law."

ff.     Excluding the 19 files for which Warner asserts that it owned copyrights, Warner did not have authorization at the time it used the SRA to delete any of the other files identified in Exhibits A-D of Hotfile's counterclaim.

gg.     Prior to deleting the files, no human being at Warner reviewed the content of the files identified in Exhibits A-D of Hotfile's counterclaim.

hh.     Prior to deleting the files, at least one Warner employee reviewed the text of the URLs identified in Exhibits A-D of Hotfile's counterclaim that were located by Warner's vendor, LeakID.

ii.     Other than the files in Exhibits A-D of Hotfile's counterclaim that were located by Warner's vendor LeakID, no human being at Warner reviewed the text of the URLs of the files prior to their deletion through Warner's SRA.

jj.     Prior to deleting the files, Warner did not attempt to determine whether any individual file in Exhibit A-D of Hotfile's counterclaim was subject to a fair use defense.

kk.     Warner did not implement "exclude terms" to prevent the improper deletion of JDownloader files until August 2011 at the earliest.

ll.     The eight JDownloader files identified in Exhibits A-D of Hotfile's counterclaim were downloaded a total of 150,028 times.

mm.     The eight JDownloader files identified in Exhibits A-D of Hotfile's counterclaim directly led to premium user subscriptions (by a user purchasing a subscription through the download pages for those files) 42 times, resulting in $1,053 of revenue to Hotfile.

nn.     The file http://hotfile.com/dl/25231712/b99b376/JDownloaderSetup.exe.html is a copy of JDownloader software, a freeware program to which Warner owns no copyright and is not authorized to remove.

oo.     The file http://hotfile.com/dl/25231712/b99b376/JDownloaderSetup.exe.html was uploaded by the user 274657, which is Appwork GmbH, the owner of JDownloader.

pp.     The files uploaded by the user 274657 were downloaded a total of 4,866,602 times.

qq.     The files uploaded by the user 274657 directly led to premium user subscriptions (by a user purchasing a subscription through the download pages for those files) 7,009 times, resulting in $137,989 of revenue to Hotfile.

rr.     The files listed in Exhibits A-D of Hotfile's counterclaim that Warner concedes were not "highly likely infringing" were downloaded 175,066 times before Warner improperly deleted them.

**6.     Issues of Fact that Remain to be Litigated.**

a.     The identification and exact number of Plaintiffs' works actually infringed.

b.     The identification and exact number of works for which Plaintiffs have produced proper registration certificates and content files.

c.     The proper measure of damages.

d.     Whether Defendants' acts of infringement were committed willfully.

e.     Whether Defendants were not aware and had no reason to believe that their acts constituted an infringement of copyright.

   f.  For each of the files identified in Exhibits A-D of Hotfile's counterclaim, at the time Warner represented to Hotfile that it had "a good faith belief that the use of this material is not authorized by the copyright owner, the copyright owner's agent, or the law," did Warner actually know that it was not authorized to delete the material?

   g.  For each of the files identified in Exhibits A-D of Hotfile's counterclaim, at the time Warner represented to Hotfile that it had "a good faith belief that the use of this material is not authorized by the copyright owner, the copyright owner's agent, or the law," to the extent that Warner believed it was authorized to delete the material, did Warner have a sufficient basis to form such a belief?

   h.  For each of the files identified in Exhibits A-D of Hotfile's counterclaim, at the time Warner represented to Hotfile that it had "a good faith belief that the use of this material is not authorized by the copyright owner, the copyright owner's agent, or the law," to the extent Warner believed that it was authorized to delete the material, was Warner's belief formed in good faith?

   i.  For each of the files identified in Exhibits A-D of Hotfile's counterclaim, at the time Warner represented to Hotfile that it had "a good faith belief that the use of this material is not authorized by the copyright owner, the copyright owner's agent, or the law," should Warner have known that it was not authorized to delete the material?

   j.  Did Warner intentionally misrepresent to Hotfile that it was "an owner or an authorized legal representative of the owner of" copies of JDownloader and that it had "a good faith belief" that the distribution of JDownloader through Hotfile was "not authorized by the copyright owner, the copyright owner's agent, or the law?"

   k.  What damages should Hotfile recover for Warner's violations of 17 U.S.C. § 512(f)?

**7.     Concise Statement of Issues of Law on Which There is Agreement.**

a.     Instead of actual damages and profits, a copyright owner may recover statutory damages per infringed work of not less than $750 or more than $30,000 as the court considers just.  17 U.S.C. § 504(c)(1).  All the parts of a compilation or derivative work constitute one work; thus, each work infringed may form the basis of one award.  *Columbia Pictures Indus. v. Krypton Broad of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001).

b.     Statutory damages and attorneys' fees (provided under 17 U.S.C. 504 and 505) will not be available in an infringement action unless the copyright was registered either: before the infringement began; or within three months after publication, if the infringement began after publication.  17 U.S.C. § 412.

c.     A district judge has wide discretion in setting the statutory damage award.  *Island Software and Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257, 265 (2nd Cir. 2005).  The determination of the amount of damages must consider what is just in the particular case not only based on the nature of Plaintiffs' copyrights, but also the circumstances of the infringement and other relevant circumstances.  *IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 1003 (N.D. Cal. 2010).

d.     Factors used to determine the level of statutory damages include: the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, and the defendant's state of mind; the blameworthiness of the defendant weighs the heaviest in the analysis.  *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 442 (D. Del. 2005).

e.     If the infringement was innocent (infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright), the court has discretion to reduce the award of statutory damages to not less than $200 per work infringed.  17 U.S.C. § 504(c)(2).

f. If the infringement was willful, the award may be increased up to $150,000 per work infringed. Willful infringement requires that the defendant has actual or constructive knowledge that its actions constitute infringement or recklessly disregards a copyright holder's rights. The copyright owner has the burden to prove that infringement was committed willfully. 17 U.S.C. § 504(c)(2).

g. Even though the maximum statutory damages available increase with a finding of willfulness, courts do not necessarily impose maximum damages or even a penalty above the non-willful cap if the defendant is deemed to be a willful infringer. *Peer Inter, Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 569 (S.D.N.Y. 1995); *Clever Covers, Inc. v. Southwest Florida Storm Defense, LLC*, 554 F. Supp. 2d 1303, 1312 (M.D. Fla. 2008).

h. Where a defendant has been notified that its conduct constitutes copyright infringement but reasonably and in good faith believes the contrary, a finding of willfulness is not appropriate. *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 584 (6th Cir. 2007).

i. Even where there is uncontroverted evidence that a defendant knew or should have known that material on its site was infringing, a damage award on the lower end of the scale is warranted in the interests of justice where the defendant immediately removed the material identified as infringing. *IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 1004 (N.D. Cal. 2010).

j. Warner's notifications by means of Hotfile's SRA are (and have the effect of) notifications of claimed infringement to Hotfile's designated agent under 17 U.S.C. § 512(c)(3)(A), and are therefore subject to 17 U.S.C. § 512(f)..

k. In order to form the requisite "good faith belief" that material is infringing as is required to make a valid representation under 17 U.S.C. § 512(c)(3)(A), a party need not undertake a full investigation of the material in order to verify the accuracy of a claim of infringement.

8.      **Concise Statement of Issues of Law to be Determined By the Court.**

   a.      In the context of a finding of vicarious liability, the implications the defendant's lack of knowledge has to reduce the measure of damages available under the Copyright Act.  MSJ, p. 78, n. 24.

   b.      Can a party be liable under 17 U.S.C. § 512(f) for misrepresenting that material was infringing if that party did not objectively know that its statement was a misrepresentation but should have known if it had acted with reasonable care or diligence that it was making a misrepresentation?

   c.      What constitutes a sufficient basis to form the required "good faith belief" that material is infringing pursuant to 17 U.S.C. § 512(c)(4)(A)?

   d.      Can a computer program form a "good faith belief" that material is infringing pursuant to 17 U.S.C. § 512(c)(4)(A)?

   e.      Is it a violation of 17 U.S.C. § 512(f) for a party to represent that it has a "good faith belief" that a file is infringing if that party does not have any belief as to whether the particular file is itself infringing but rather generally believes that all files of a certain type are more likely than not infringing and based upon that generalized belief makes the representation?

9.      **Numbered List of Trial Exhibits & Objections.**

   Please see attached schedule.  Defendants reserve the right to rely on and may offer any of Plaintiffs' exhibits or evidence.  Defendants reserve the right to amend their exhibit list.

10.     **Trial Witnesses.**

   a.      <u>Plaintiffs' Witnesses.</u>

   b.      <u>Defendants' Witnesses.</u>

         Anton Titov – **will call**
         c/o Farella Braun + Martel LLP

235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400
(hereinafter, "counsel for Defendants")

Constantin Luchian – **may call**
c/o counsel Ryan Siden
rsiden@sidenlaw.com

Andrew S. Cromarty, Ph.D. – **may call (expert)**
c/o counsel for Defendants

James D.A. Boyle – **may call (expert)**
c/o counsel for Defendants

Matthew R. Lynde, Ph.D. – **will call (expert)**
c/o counsel for Defendants

Scott Wittenburg – **may call**
Photography Podcast

Aaron M. McParlan – **may call**
Legal Counsel
Opera Software ASA
P.O. Box 2648, St. Hanshaugen
Waldemar Thranes gate 98
0175 Oslo
Norway

Marc Schwegler – **may call**
Farm Simulator/Giants Software, GmbH
mschwegler@giants-software.com

Disney Enterprises, Inc. – **may call**
c/o Steven B. Fabrizio, Esq.
Jenner & Block, LLP
1099 New York Ave, N.W., Suite 900
Washington, DC 20001
Phone: 202.639.6000
(hereinafter, "counsel for Plaintiffs")

Twentieth Century Fox Film Corporation – **may call**
c/o counsel for Plaintiffs

Universal City Studios Productions LLLP – **may call**
c/o counsel for Plaintiffs

Columbia Pictures Industries, Inc. – **may call**
c/o counsel for Plaintiffs

Warner Bros. Entertainment Inc. – **may call**
c/o counsel for Plaintiffs

Motion Picture Association of America ("MPAA") – **may call**
c/o Karen Thorland, Esq.
MPAA
15301 Ventura Blvd., Bldg. E
Sherman Oaks, CA  91403

Kevin Suh – **may call, may call by deposition testimony**
c/o Karen Thorland, Esq.
MPAA
15301 Ventura Blvd., Bldg. E
Sherman Oaks, CA  91403

Steve Kang – **may call, may call by deposition testimony**
c/o counsel for Plaintiffs

Michael Bentkover – **may call**
Warner Bros. Entertainment Inc.
4000 Warner Boulevard
Burbank, California 91522
Phone: (818) 954-3639
Fax: (818) 954-7898

Dave Worth – **may call**
PeerMedia Technologies, Inc.

Yangbin Wang, Mike Witte – **may call, may call by deposition testimony**
Vobile, Inc.
Stephen M. Wurzburg
Pillsbury Winthrop Shaw Pittman LLP
2475 Hanover Street
Palo Alto, CA 94304-1114
(650) 233-4500

Thomas Rechenmacher – **may call**
Team Leader, JDownloader
c/o Evan Fray-Witzer
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804

Boston, MA 02116
Phone number: (617) 426-0000
Fax number: (617) 423-4855
(hereinafter, "c/o counsel Evan Fray-Witzer")

Leigh Mackay – **may call**
PHPTutorials.com
(hereinafter, "c/o counsel Evan Fray-Witzer")

Marc Schwegler – **may call**
Giants Software, GmbH
(hereinafter, "c/o counsel Evan Fray-Witzer")

Didier Wang – **may call**
Manager, Anti-Piracy Operations Warner Bros. Entertainment
Warner Bros. Entertainment
France
115/123 avenue Charles de Gaulle
92200 Neuilly sur Seine France
Phone number: +33 (0)1 72 25 10 41
Fax number: +33 (0)1 72 25 10 00
Cell phone: +33 (0)6 36 33 06 36

Bret Boivin – **may call**
Warner Bros Entertainment Inc.
98 Theobald's Road
London, UK
Phone: +44 207 984 6018

Hervé Lemaire – **may call**
LeakID
15 Bis Rue de Chateaudun
92250 La Garenne Colombes
France

Ethan Applen – **may call**
Warner Bros. Entertainment Inc.
4000 Warner Boulevard
Burbank, California 91522
Phone: 818.954.2287

Christian Sommer – **may call**
Warner Bros. Entertainment GmbH,
Humboldtstrasse 62, 22083 Hamburg, Germany,
Phone: +49 (0) 40 22650366

David Kaplan – **will call, at least by deposition testimony**
Warner Bros. Entertainment Inc.
4000 Warner Boulevard
Burbank, California 91522

Thomas Sehested – **may call, may call by deposition testimony**
DtecNet Software ApS ("DtecNet")
9595 Wilshire Blvd.
Beverly Hills CA, 90210
(310) 492-4340

Any and all impeachment witnesses.

Any and all rebuttal witnesses.

All witnesses listed by Plaintiffs.

Defendants reserve the right to call by deposition testimony any other witness not appearing at trial.

Defendants reserve the right to amend this witness list.

11.   **Estimated Trial Time.**

   a.   Plaintiffs' Estimate.

   Three to five days, jury trial.

   b.   Defendants' Estimate.

   Six to Eight days, jury trial.

12.   **Estimated Maximum Attorneys' Fees Allowable.**

Hotfile cannot fully quantify the attorneys' fees incurred in response to Warner's

violations of 17 U.S.C. § 512(f) as those fees are still accruing.  Regarding fees accrued prior to

the filing of Hotfile's counterclaim, Hotfile estimates those fees to amount to approximately $50,000.  Hotfile reserves the right to amend this response subject to proof and further case developments.

Dated:  October 2, 2013

Respectfully submitted,

Anthony P. Schoenberg (admitted *pro hac vice*)
Roderick M. Thompson (admitted *pro hac vice*)
Andrew Leibnitz (admitted *pro hac vice*)
Deepak Gupta (admitted *pro hac vice*)
Janel Thamkul (admitted *pro hac vice*)
FARELLA BRAUN + MARTEL LLP
235 Montgomery St.
San Francisco, CA  94104
Telephone:  415.954.4400
Telecopy: 415.954.4480

and

Janet T. Munn, Fla. Bar No. 501281
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, Fl 33134
Telephone:  305.476.7101
Telecopy: 305.476.7102
Email: jmunn@rascoklock.com

Counsel for Defendants
Hotfile Corp. and Anton Titov

## PROOF OF SERVICE

I, Greg George, declare:

I am a citizen of the United States and employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 235 Montgomery Street, 17th Floor, San Francisco, California  94104.  My e-mail address is ggeorge@fbm.com.  On October 2, 2013, I served a copy of the within document(s):

**JOINT PRETRIAL STIPULATION AND DISCLOSURES and EXHIBIT LIST**

☒     by transmitting via e-mail the document(s) listed above to the e-mail addresses set forth below on this date.

☐     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐     by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a agent for delivery.

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐     by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

Luke C. Platzer, Esq.
Steven B. Fabrizio, Esq.
Jenner & Block
1099 New York Avenue, N.W.
Site 900
Washington, DC 20001-4412
Telephone:  (202) 639-6094
Fax:           (202) 639-6068
Email:        lplatzer@jenner.com
                  sfabrizio@jenner.com

*Attorneys for Plaintiffs*
*Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLP, Columbia Pictures Industries, Inc., Warner Bros. Entertainment Inc.*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 2, 2013, at San Francisco, California.

Greg George