# EXHIBIT 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs,*

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants.*
_____/

HOTFILE CORP.,

*Counterclaimant,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant.*
_____/

## RULE 26(a)(2)(B) REPORT OF SCOTT A. ZEBRAK

1. My name is Scott A. Zebrak, and I am an attorney with extensive experience and familiarity analyzing copyrighted works and online infringement. For the past 15 years, I have represented and advised clients on a range of matters involving copyright, trademark, and other intellectual property issues, including those that arise in an online or digital environment. Further details of my educational background, professional experience, qualifications,

CASE NO. 11-20427-WILLIAMS/TURNOFF

publications, previous testimony, and compensation are included in my November 18, 2011 Rule 26(a)(2)(B) report in this case, and are incorporated herein by reference.

2. In response to the reports submitted by Professor James Boyle and Dr. Matthew Lynde, I was asked by the plaintiffs' counsel to conduct an analysis of certain sets of files that had been uploaded to the website www.hotfile.com ("Hotfile"). My role was to investigate and analyze the identification, copyright status, and authorization status of files to determine whether they were highly likely to be infringing. Throughout this report, when I refer to a "highly likely infringing file," I mean the file was determined to contain copyrighted content and it is highly likely that the content was not authorized for free and unrestricted distribution on Hotfile by its copyright owner, using the same definition and approach described at greater length in my November 18, 2011 report.

3. In connection with my analysis, I followed the same methodology described in my November 18, 2011 report. For each of the files that I analyzed, I closely supervised a team that reviewed the metadata about the files and in some cases, the actual content files, and researched information about the content contained in the file. I was often still able to analyze and make an infringement determination about a file even where I did not have content for the file. I investigated, assessed, and reached my own conclusions regarding the identification and infringement status ultimately assigned to each file. Overall, in reaching my opinions and conclusions, I relied upon my knowledge and experience, as well as the resources described in my November 18, 2011 report and my productions of supporting materials and deposition testimony regarding the November 18 report.

4. I am aware that Hotfile Corp. has filed a counterclaim against the plaintiff Warner Bros. Entertainment Inc. ("Warner"), which identified 890 files on Hotfile as the basis of its 17

2

U.S.C. § 512(f) claim against Warner, and on which Hotfile Corp. has based its damages calculations. I have reviewed each of the files using the methodology described above in order to determine whether any of the files are infringing. Attached hereto as Exhibit A is a chart that lists the 890 files along with information regarding the title of the work and an identification of those files that, to date, I have been able to determine are highly likely infringing. Exhibit A also includes other data about those files that I was provided and understand to have been derived from defendants' data by Dr. Ian Foster. That data includes the following fields: the URL, date and time of the Warner notice, whether takedown notices were sent on that title, the user ID of the uploading user, the number of strikes for the uploading user, the number of days of infringement notices for the uploader user's files, whether the user was suspended for copyright infringement, the suspension date, days between Warner's notice and the suspension, the number of days after February 18, 2011 on which the user received a notice for a counterclaim file, whether the user was Premium, when the user stopped being Premium, the amount of Affiliate payments received, and whether Hotfile has a copy of the file. It may be supplemented with data as to whether takedown notices were sent by the company that appeared to own the distribution rights. Additionally, for certain of the uploaders of the files in Exhibit A, I examined other files that I understand were uploaded by the same user and identified highly likely infringing files that the user also uploaded. In the column "Other Infringing Uploads" on Exhibit A, I have indicated where I have found other highly likely infringing uploads for that user. Attached as Exhibit B is a chart listing the User ID of each of those users, and the highly likely infringing files I identified for each. My review of other uploads by these users was not intended to be exhaustive, but merely to determine whether these users had uploaded other highly likely infringing files.

5. Attached as Exhibit C is an updated version of a chart (the original of which was

3

attached as Appendix C to my November 18 report) listing each of the 1,750 sample files I analyzed in the course of preparing my November 18 report and its classification to one of the categories I explained in my November 18 report. I have received supplemental data concerning takedown notices that I understand to be derived from defendants' data by Dr. Ian Foster, which corroborates the conclusions in my November 18 report as to the infringement status of each file. Additionally, I have received supplemental data that I understand to be derived from defendants' data by Dr. Ian Foster, which provides information regarding the uploading users of the sample files. That data provided in Exhibit C is as follows: whether the URL was subject to a takedown notice, whether a file with the same hash as the sample file was the subject of a takedown notice, whether takedown notices were sent on that title, the User ID of the uploader, whether the uploader was suspended for copyright infringement, the suspension date, the number of strikes for the uploading user, and the number of days of infringement notices for the uploader user's files. It may be supplemented with data as to whether takedown notices were sent by the company that appeared to own the distribution rights. Additionally, for certain of the uploaders of the files in Exhibit C, I examined other files that I understand were uploaded by the same user and identified highly likely infringing files that the user also uploaded. In the column "Other Infringing Uploads" on Exhibit C, I have indicated where I have found examples of a highly likely infringing file for that user. Attached as Exhibit D is a chart listing the User ID of each of those users, and the highly likely infringing files I identified for each. My review of other uploads by these users was not intended to be exhaustive, but merely to determine whether these users had uploaded other highly likely infringing files.

6. I have reviewed the November 18, 2011 report of Prof. James Boyle produced in this litigation, in which he analyzes the infringement status of the files iREB and sn0wbreeze. In

4

my November 18 report, I placed iREB and sn0wbreeze in the category of non-infringing files. I am aware of the rulemaking cited by Prof. Boyle, and in my November 18 report, I did not render a legal conclusion about whether it was illegal to distribute those files, as it was not necessary to do so in the course of determining whether or not the files were infringing (which was the purpose of that analysis). I am giving further consideration to the issue of whether the distribution of those files is illegal under the DMCA's anti-circumvention provisions, 17 U.S.C. § 1201, and to avoid confusion have revised my classification of those files for the time being as "unknowable."

7. In his report, Prof. Boyle identifies a number of files that he believes to be non-infringing. I have been provided data showing the uploading users of each of those files and other information about those users, which I understand to be derived from defendants' data by Dr. Ian Foster. Attached as Exhibit E is a chart showing each file, the upload ID of the uploading user, whether the uploader was suspended for copyright infringement, the number of strikes for the uploading user, and the number of days of infringement notices for the uploader user's files. Additionally, for certain of the uploaders of the files in Exhibit E, I have been examining other files that I understand were uploaded by the same user and identified highly likely infringing files that the user also uploaded. In the column "Other Infringing Uploads" on Exhibit E, I have indicated where I have found other highly likely infringing downloads for that user. Attached as Exhibit F is a chart listing the User ID of each of those users, and the highly likely infringing files I identified for each to date. My review of other uploads by these users was not intended to be exhaustive, but merely to determine whether these users had uploaded other highly likely infringing files.

8. In his report, Prof. Boyle identifies certain files by the total number of downloads

5

over the life of Hotfile. I also understand that defendants attached a list of files to their Interrogatory No. 22 that appear to constitute the top 100 files with the most downloads over the life of Hotfile. I have been provided data showing the uploading users of each of those files and other information about those users, which I understand to be derived from defendants' data by Dr. Ian Foster. Attached as Exhibit G is a chart showing the upload ID of the uploading user, whether the uploader was suspended for copyright infringement, the number of strikes for the uploading user, and the number of days of infringement notices for the uploader user's files. Additionally, for certain of the uploaders of the files in Exhibit G, I have been examining other files that I understand were uploaded by the same user and identified highly likely infringing files that the user also uploaded. In the column "Other Infringing Uploads" on Exhibit G, I have indicated where I have found other highly infringing downloads for that user. Attached as Exhibit H is a chart listing the User ID of each of those users, and the highly likely infringing files I identified for each to date. My review of other uploads by these users was not intended to be exhaustive, but merely to determine whether these users had uploaded other highly likely infringing files.

9.  I am continuing to review additional files that I understand to have high rates of download from Hotfile, and I may offer an opinion as to whether any of those files is highly likely infringing.

10. Additional materials that I have considered in the course of this report and exhibits I may present are being produced concurrently with this report. I reserve the right to conduct additional analyses based on additional information and to supplement this report based on such further analyses. I further reserve the right to provide additional graphical exhibits reflecting my analysis.

CASE NO. 11-20427-WILLIAMS/TURNOFF

Dated: January 16, 2012

_____
Scott A. Zebrak

7

CASE NO. 11-20427-WILLIAMS/TURNOFF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 6th day of January, 2012, I served the following document on all counsel of record on the attached Service List via their email address(es) as set forth on the Court's CM/ECF filing system, pursuant to the service agreement of the parties.

### RULE 26(a)(2)(B) REBUTTAL REPORT OF SCOTT A. ZEBRAK

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: _____
Duane C. Pozza

CASE NO. 11-20427-WILLIAMS/TURNOFF

## SERVICE LIST

### Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
### CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF

FARELLA BRAUN + MARTEL LLP
Anthony P. Schoenberg
tschoenberg@fbm.com
Roderick M. Thompson
rthompson@fbm.com
N. Andrew Leibnitz
aleibnitz@fbm.com
Deepak Gupta
dgupta@fbm.com
Janel Thamkul
jthamkul@fbm.com
235 Montgomery Street
San Francisco, CA  94104
Phone:  415-954-4400

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

RASCO KLOCK
Janet T. Munn
jmunn@rascoklock.com
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Phone:  305-476-7101
Fax:  305-476-7102

*Attorney for Defendants Hotfile Corp. and Anton Titov*

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Phone:  617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*