UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

**WARNER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION IN LIMINE TO EXCLUDE EVIDENCE OF WARNER'S
AUGUST 2011 AUDITS OF ITS ANTI-PIRACY SYSTEM
<u>FOR THE PURPOSE OF SHOWING WARNER'S CULPABILITY</u>**

## INTRODUCTION

Hotfile Corp. ("Hotfile") makes no effort to respond to Warner's argument that Federal Rule of Evidence 407 squarely bars the argument Hotfile wants to present at trial – that Warner's remedial measures to improve its antipiracy system somehow prove that Warner should be held liable for mistaken notices it sent before it made the improvements. Hotfile's opposition brief ignores Rule 407 entirely, as well as the law precluding the admission of subsequent remedial measures to prove culpability for events that preceded them. Indeed, Hotfile's opposition goes further: it concedes that Hotfile wants to admit evidence of Warner's "audit" of its antipiracy system for the *exact purpose* that Rule 407 prohibits—to show that Warner had a culpable state of mind at the time it sent the takedown notices at issue, based on evidence of what Warner did and learned several months later.

Instead of addressing or even acknowledging the obvious Rule 407 problem with its argument, Hotfile spends its brief trying to argue that the measures Warner took in August 2011 to improve its antipiracy system prove that Warner should have known about inaccuracies in its notices earlier – as though claims under 17 U.S.C. § 512(f) were governed by a negligence standard. Even if Rule 407 did not already bar this exact line of argument, Section 512(f) claims are not governed by a negligence standard, they are governed by an actual knowledge standard. To succeed at trial, Hotfile needs to prove what Warner *actually* knew about its mistaken notices at the time it sent them, not what Hotfile thinks Warner *should have* or *could have* known about mistaken notices. The legal authority on which Hotfile relies for its contrary reading of Section 512(f) has been abrogated. Under the proper Section 512(f) legal standard, evidence about what Warner learned months after it sent the notices at issue is irrelevant.

Warner respectfully requests that the Court grant its motion and preclude Hotfile from arguing at trial that Warner's August 2011 audit, and the facts it learned during that audit, can support a claim of liability under Section 512(f).

## ARGUMENT

**I.   HOTFILE CONCEDES THAT THE ARGUMENT IT WANTS TO PRESENT AT TRIAL IS PRECISELY WHAT RULE 407 PROHIBITS.**

Hotfile's opposition states plainly why it seeks to include the evidence regarding Warner's 2011 audits: "[b]ecause the evidence concerning the audits demonstrates what Warner would have known had it exercised reasonable care and diligence." Opp. at 4. Leaving aside that this is not the legal standard under Section 512(f) and that the case on which Hotfile relies is

1

no longer good law, *see* Section II *infra*, Hotfile's stated purpose for introducing evidence of what Warner learned and corrected during its audits is clearly barred by Rule 407.

Rule 407 states that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence [or] culpable conduct . . . ." The Rule stems from two longstanding policies: (1) that evidence of remedial measures taken after the fact have little probative value for determining culpability at the time of the action in question and may have significant prejudicial effects; and (2) that defendants should not be punished for taking remedial measures after an alleged injury by having those measures used against them to show liability. *See Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1569 n.19 (11th Cir. 1991).

Hotfile's stated purpose for introducing evidence of the August 2011 audits violates the plain language of Rule 407 and runs counter to both of the Rule's policy rationales. Hotfile seeks to introduce evidence that Warner, after sending all of the takedown notices at issue, examined its antipiracy system and identified ways to reduce errors going forward—i.e. took subsequent remedial measures—in order to show that Warner should have known when its system sent the notices that some were being sent in error—*i.e.,* that Warner was negligent or otherwise culpable. *See* Warner Bros. Entertainment's Motion in Limine and Memorandum of Law at 5-6. Permitting Hotfile to introduce evidence and argument in support of this theory would both needlessly distract the jury from the real issue at hand (what Warner actually knew at the time it sent the takedown notices), and would punish Warner for taking later steps to improve the accuracy of its system. *See Wilkinson*, 920 F.2d at 1567 (in a negligence action, excluding evidence under Rule 407 that a sliding door that injured plaintiff was later locked in an open position for the remainder of the cruise); *Wood v. Morbark Indus., Inc.*, 70 F.3d 1201, 1206-07 (11th Cir. 1995) (stating that "Rule 407 is necessary . . . to focus the jury's attention on the product's condition or design at the time of the accident"); *Hughes v. Stryker Sales Corp.*, No. C.V.A. 08-0655, 2010 WL 1961051, at *4 (S.D. Ala. May 13, 2010) (excluding evidence under Rule 407 that the company sent a recall notice for an allegedly defective product four months after the injury), *aff'd*, 423 F. App'x 878 (11th Cir. 2011).[1] Thus, Rule 407 conclusively

---

[1] Since Hotfile makes no effort to address Warner's Rule 407 argument, it does not contend that the evidence is admissible under any of the Rule's exceptions. Any such contention would fail anyway, as no other permissible purposes, such as ownership or feasibility, are relevant. Warner

resolves the issue in Warner's favor and bars both the argument Hotfile wants to make and the evidence that Hotfile wants to use to support it.

## II. HOTFILE'S THEORY OF RELEVANCE DEPENDS ON A MISSTATEMENT OF THE STANDARD GOVERNING ITS CLAIM.

Despite the plain language of § 512(f) and a slew of cases uniformly holding to the contrary, Hotfile continues to assert that § 512(f) merely requires a showing of negligence. Principally citing the dicta of a single Northern District of California decision—dicta that was subsequently abrogated by the Ninth Circuit—Hotfile argues that it need only show that Warner "should have known" that the takedown notices were erroneous. *See* Defs.' Mot. at 3. Hotfile's reading of the statute has been soundly rejected, and its theory for why Warner's audit is relevant depends on its misreading of the legal standard.

Hotfile largely relies on *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004). In that case, the court cited Black's Law Dictionary's definition of both "actual knowledge" and "constructive knowledge" to reason that "knowingly" under § 512(f) meant that a party "that a party actually knew," (from the definition of "actual knowledge") or "should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith" (derived from the definition of "constructive knowledge") that it was making a misrepresentation. *Id.* However, the *Diebold* court decided the case on the basis of a holding that the defendant had actual knowledge, rendering its musings about "constructive knowledge" pure dicta. *Id.* at 1203-05; *see Lenz v. Universal Music Corp.*, No. C 07-03783, 2008 WL 962102, at *3 (N.D. Cal. Apr. 8, 2008) (distinguishing *Online Policy Group* as actual knowledge case).

The dicta from *Diebold* on which Hotfile relies is no longer good law. The Ninth Circuit subsequently decided the seminal case of *Rossi v. Motion Picture Ass'n of America., Inc.*, 391 F.3d 1000 (9th Cir. 2004), which held unequivocally that § 512(f) requires "a demonstration of some *actual* knowledge of misrepresentation on the part of the copyright owner," and therefore that "[a] copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner *acted unreasonably in making the mistake*." *Id.* at 1005 (emphasis added).

---

has never contested ownership of its system or the feasibility of the improvements Warner made to it after the notices at issue, or any other issue for which such evidence might be permissible under Rule 407. *See Andres v. Roswell-Windsor Village Apartments*, 777 F.2d 670, 674 (11th Cir. 1985) (evidence of subsequent remedial measures was not admissible under feasibility exception where feasibility was not contested).

3

In doing so, the Ninth Circuit abrogated the Northern District of California's "constructive knowledge" dicta in *Diebold*. *See* Matt Williams, *The Truth and the "Truthiness" About Knowing Material Misrepresentations*, 9 N.C. J. L. & Tech. 1, 33 (2007) ("the *Diebold* court's holding that a 'knew or should have known' standard satisfies § 512(f) is no longer good law" after *Rossi*). As noted in Warner's initial memorandum of law on the instant motion, every court that has examined the standard for knowledge under § 512(f) subsequent to *Rossi* has followed the *Rossi* rationale to require actual, subjective knowledge. *See*, *e.g.*, *Cabell v. Zimmerman*, No. 09 Civ. 10134, 2010 WL 996007, at *4 (S.D.N.Y. Mar. 12, 2010) ("as a prerequisite to liability under section 512(f), a defendant must have actual knowledge that it is making a misrepresentation of fact"); *Third Educ. Grp., Inc. v. Phelps*, 675 F. Supp. 2d 916, 927 (E.D. Wis. 2009) (requiring "a demonstration that the actor had some actual knowledge of the misrepresentation" in the takedown notice); *UMG Recordings, Inc. v. Augu*sto, 558 F. Supp. 2d 1055, 1065 (C.D. Cal. 2008) (512(f) liability attaches "only if the owner did not possess a subjective good faith belief that its copyright was being infringed"), *aff'd*, 628 F.3d 1175 (9th Cir. 2011); *Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005) ("as long as MGA acted in good faith belief that infringement was occurring, there is no cause of action under § 512(f)").[2]

Defendants' reliance on *Ouellette v. Viacom International Inc.*, No. CV 10-133, 2012 WL 1435703 (D. Mont. Apr. 25, 2012), also is misplaced. Defendants cite *Ouellette* to argue that takedown notices are subject to a "good faith" standard. Opp. 3. But the portion of *Ouellette* that Defendants cite for that proposition describes what must be contained within a takedown notice under Section 512(c)(3), not the standards governing liability for an erroneous takedown notice under Section 512(f). *See* 2012 WL 1435703, at *2. The *Ouellette* court, as it was obligated to do, applied *Rossi* and dismissed the plaintiff's Section 512(f) claim on the pleadings for failure to plead actual knowledge by the copyright holder that its challenged notice had been sent in error. *Id.* at *3. Indeed, the *Ouellette* court expressly *rejected* the argument that the copyright holder's knowledge of errors in *other* takedown notices it had sent could somehow

---

[2] Defendants' reliance on *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 704 (D. Md. 2011), is misplaced. That decision merely noted *Online Policy Group's* interpretation of "knowingly" under § 512(f) without reaching a holding on, or applying, the governing standard.

4

stand in for knowledge of errors in the takedown notices it sent on the *plaintiff's* files.[3]  *Id*. at \*4. And yet that is the exact argument on which Hotfile has been trying to rely to show knowledge in this case.  As the *Ouellette* court explained in dismissing the Section 512(f) claim in that case, "[t]he high standard for a § 512(f) claim reflects the reality that copyright owners face an uphill battle to protect their copyrights on the internet."  *Id.* at \*3.

As Warner argued in its initial memorandum of law, evidence about what Warner learned *after* it sent the takedown notices is not relevant to show that Warner actually knew the notices contained errors when it sent them.[4]  *See, e.g., Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508, 2013 WL 1155420, at \*7 (S.D.N.Y. Mar. 20, 2013) ("evidence of what defendants realized in hindsight is not relevant to proving fraud." (citation omitted)); *Food Holdings Ltd. v. Bank of Am. Corp. (In re Parmalat Sec. Litig.)*, 684 F. Supp. 2d 453, 475 (S.D.N.Y. 2010) (holding that a fraud claim failed where there was no evidence that the defendant "connected the dots that plaintiffs now connect," and thus no evidence that the defendant intended its statements to mislead), *aff'd*, 423 F. App'x 73 (2d Cir. 2011).  Moreover, admitting such evidence would be unfairly prejudicial to Warner.  The evidence could distract the jurors from the question before them: what Warner actually knew at the time it sent the notices.  More fundamentally, it could confuse the jury regarding the applicable timelines, confusion that Hotfile itself sowed during the summary judgment proceedings in this case by misattributing communications from Warner's audits in August 2011 to earlier time periods.  *See* Mot., D.E. 617-1, at 2-4.  Such confusion would be highly prejudicial to Warner's defense, and should be prevented here.

## CONCLUSION

For the reasons stated, Warner's motion should be granted.

---

[3] *Ouellette* is problematic for Hotfile's Counterclaim for another reason as well: it affirms that the use of automated features in anti-piracy systems is not impermissible under Section 512(f) of the DMCA.  *See id.*

[4] *See* Mot. 3-4.

5

DATED:  November 13, 2013                           Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: (305) 416-6880
Facsimile:  (305) 416-6887

| MOTION PICTURE ASSOCIATION OF AMERICA, INC. | JENNER & BLOCK LLP |
|---|---|
| Karen R. Thorland (*Pro Hac Vice*) | Steven B. Fabrizio (*Pro Hac Vice*) |
| 15301 Ventura Blvd. | David A. Handzo (*Pro Hac Vice*) |
| Building E | Kenneth L. Doroshow (*Pro Hac Vice*) |
| Sherman Oaks, CA 91403 | Luke C. Platzer (*Pro Hac Vice*) |
| Phone:  (818) 995-6600 | 1099 New York Ave., N.W. |
| Fax:  (818) 285-4403 | Suite 900 |
|  | Washington, DC 20001 |
|  | Telephone: (202) 639-6000 |
|  | Facsimile:  (202) 639-6066 |

*Attorneys for Warner*

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 13th day of November, 2013, I served the following document on all counsel of record on the attached by means of the Court's ECF system:

**Warner's Reply Memorandum of Law in Support of Motion in Limine to Exclude Evidence of Warner's August 2011 Audits of its Anti-Piracy System for the Purpose of Showing Warner's Culpability**

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/   Karen L. Stetson
Karen L. Stetson

## SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
CASE NO. 11-C1V-20427-WILLIAMS-TURNOFF**

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

*Attorney for Defendants Hotfile Corp. and Anton Titov*

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116 Phone:617-426-0000

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201

*Attorney for Defendants Hotfile Corp. and Anton Titov*