UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.

_____/

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO PRECLUDE
<u>CERTAIN OPINIONS OF DR. ANDREW CROMARTY AT TRIAL</u>**

# **TABLE OF CONTENTS**

                              **Page**

INTRODUCTION ..............................................................................................................................1

    I.     DR. CROMARTY'S TESTIMONY ABOUT INFRINGEMENT COUNTERMEASURES AVAILABLE TO HOTFILE IS IRRELEVANT AND CONTRARY TO LAW. ..................................................................................................1

    II.    DR. CROMARTY IS NOT QUALIFIED TO OPINE ON PLAINTIFFS' ACTUAL DAMAGES OR THE BUSINESS DECISIONS THEY COULD HAVE MADE TO ADDRESS PIRACY, AND HIS OPINIONS ON THOSE SUBJECTS ARE UNRELIABILE. ...................................................................................................3

    III.   DR. CROMARTY IS NOT QUALIFIED TO OPINE ON THE VALUE OF PLAINTIFF'S WORKS, AND HIS OPINIONS ON THAT SUBJECT ARE UNRELIABLE AND UNHELPFUL. .................................................................................5

    IV.   DR. CROMARTY IS NOT QUALIFIED TO OPINE ON DIGITAL FINGERPRINTING TECHNOLOGY. .........................................................................7

    V.    DR. CROMARTY'S TESTIMONY REGARDING TAKEDOWN NOTICE ACCURACY WAS NOT DISCLOSED IN HIS EXPERT REPORT, DR. CROMARTY IS UNQUALIFIED TO GIVE THAT TESTIMONY, AND THAT TESTIMONY IS UNRELIABLE. ................................................................................8

CONCLUSION ...............................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Advanced Medical Optics, Inc. v. Alcon, Inc.*, No. Civ. A. 03-1095, 2005 WL 782809 (D. Del. Apr. 7, 2005) ...................................................................................................... 4

*Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310 (S.D. Fla. 2003) .................. 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ............................................. 3

*Disney Enterprises Inc. v. Hotfile Corp.*, No. 11-civ-20427, slip op. (S.D. Fla. Aug. 28, 2013), ECF No. 534 ...................................................................................................... 10

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995) ................................................ 2

*Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794 (N.D. Ill. 2005) ............... 3

*Martinez v. Rabbit Tanaka Corp. Ltd.*, No. 04-61504-CIV, 2006 WL 5100536 (S.D. Fla. Jan. 6, 2006) ...................................................................................................... 4

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .................................. 3

*Noveck v. PV Holdings Corp.*, 742 F. Supp. 2d 284 (E.D.N.Y. 2010), *aff'd sub nom. Noveck v. Avis Rent A Car System, LLC*, 446 F. App'x 370 (2d Cir. 2011) ............................ 5

*Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224 (5th Cir. 2007) ................................... 7-8, 9

*United States v. Cardoen*, 898 F. Supp. 1563 (S.D. Fla. 1995), *aff'd*, 139 F.3d 1359 (11th Cir. 1998) ...................................................................................................... 2

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) .............................................................. 7

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006) .................................................................. 1

*Willisch v. Nationwide Insurance Co. of America*, 852 F. Supp. 2d 582 (E.D. Pa. 2012) ............. 3

*Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993) ................................................................ 1

**OTHER AUTHORITIES**

Fed. R. Evid. 702 advisory committee's notes on 2000 amendments ......................................... 5, 8

**INTRODUCTION**

Defendants continue to present Dr. Cromarty as an "all-purpose" expert, capable of testifying on a vast array of topics having little to do with his professional experience. Attempting to describe Dr. Cromarty's expertise in the broadest possible way, Defendants resort to characterizing Dr. Cromarty as an expert in such vague and ill-defined topics as "business models" and "technology and Internet fields." *See e.g.,* Defendants' Opposition ("Defs.' Opp.") 1, 4. Defendants also cite Dr. Cromarty's academic work from the early 1980s to declare him an expert not only digital fingerprinting products on the market thirty years later, but also in the economics and business trends of the entire anti-piracy industry. *See, e.g., id.* at 6-8.

Dr. Cromarty is a technologist with an academic background in computer science. While he may have some expertise on specific technological topics, he is wholly unqualified to give the opinions challenged in Plaintiffs' motion. The opinions he provides on topics such as the Plaintiffs' business models, the value of Plaintiffs' copyrighted works, and the application of content identification services on the market today are not expert opinions based on meaningful professional experience—they are the lay opinions of someone who has done some limited reading on those subjects, largely in preparation to testify in this case. *See Wilson v. City of Chicago*, 6 F.3d 1233, 1238-39 (7th Cir. 1993) (holding that a proffered expert was unqualified to opine on a subject which he spent only several hours a week studying). Even a cursory review of Dr. Cromarty's qualifications and his proposed testimony shows that Dr. Cromarty is unqualified to give those opinions, and that his testimony on those subjects is in any case unreliable and unhelpful. Plaintiffs' motion should be granted.

**I.    DR. CROMARTY'S TESTIMONY ABOUT INFRINGEMENT COUNTERMEASURES AVAILABLE TO HOTFILE IS IRRELEVANT AND CONTRARY TO LAW.**

Defendants appear to concede, as they must, that Dr. Cromarty may not opine at trial that Defendants lacked the "ability to control" infringement. That opinion would both directly contradict the Court's summary judgment holding on vicarious liability, *see* Plaintiffs' Motion in Limine and Memorandum of Law ("Pls.' Mem.") 2-3, and would be an impermissible legal opinion, *see United States v. Stewart*, 433 F.3d 273, 311-12 (2d Cir. 2006) (precluding a securities law expert from testifying about the legality of a stock trade because that testimony would usurp "the role of the jury in applying that law to the facts before it." (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994))). Instead, Defendants respond that Dr.

1

Cromarty's testimony about the anti-piracy technologies available to Hotfile, particularly "digital fingerprinting," is relevant for an alternative purpose—to show that Defendants did not willfully facilitate infringement. *See* Defs.' Opp. at 2-3.

Defendants contend that "to the extent that there exist legitimate questions within the expert community as to whether any effective or reliable methods for detecting alleged infringement even existed at the time of the alleged infringements, such information bears directly on the Defendants' 'blameworthiness' or 'willfulness.'" Defs' Opp. 2. But that is not so. Willfulness is a question of Defendants' state of mind. What the "expert community" purportedly thought about an issue is irrelevant if it had no bearing on Defendants' thoughts or actions. And here, it did not.

To establish that Defendants willfully facilitated infringement, Plaintiffs must show that Defendants acted with "actual knowledge or reckless disregard for whether its conduct infringed upon the [P]laintiffs' copyright." *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003) (quoting *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 464 (E.D. Pa. 1987)); *see also Knitwaves, Inc. v. Lollytogs Ltd., Inc.*, 71 F.3d 996, 1010-11 (2d Cir. 1995). This is a question of what Defendants actually thought and considered with regards to infringement generally, and the adoption of anti-piracy technologies specifically.

Dr. Cromarty's testimony has no bearing on that issue. Mr. Titov admitted at his deposition that Hotfile *never considered* implementing content identification technology to limit copyright infringement. *See* Deposition of Anton Titov (Dec. 7, 2011), Declaration of Luke Platzer in Support of Plaintiffs' Motions in Limine ("Platzer Decl.") Ex. 9, at 508:25-509:23. Certainly Defendants have never contended that they were aware of any purported (in Defendants' words) "legitimate questions within the expert community," or that those questions had any bearing on their failure to adopt or even consider anti-piracy technologies. *See United States v. Cardoen*, 898 F. Supp. 1563, 1572-73 (S.D. Fla. 1995) (barring the defendants from introducing evidence to show that they lacked specific intent to commit a crime because they thought they were acting in concert with the government, where defendants had no evidence that they were aware of the government's operations, or that they acted on that knowledge), *aff'd*, 139 F.3d 1359 (11th Cir. 1998). Dr. Cromarty's testimony about what the "expert community" purportedly thought about the subject would be nothing more than a *post hoc* justification that

2

did not actually animate Defendants' decisions at the relevant time.  His testimony thus fails the *Daubert* "helpfulness" prong.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02], p. 702–18 (1988))).

Dr. Cromarty's putative expert testimony on this subject would also be unhelpful because it is contrary to law.  *See Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 803 (N.D. Ill. 2005) (excluding an expert theory that was "impermissible as a matter of law."). In *Grokster*, the Supreme Court held that the fact that the defendant did not "attempt[] to develop filtering tools or other mechanisms to diminish the infringing activity using their software" was evidence of culpable intent.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939 (2005).  Thus, Dr. Cromarty's opinion that there was some purported "debate" about whether the effectiveness of the relevant technology could be measured with scientific precision cannot refute the showing of willfulness from Defendants' failure to consider such measures.[1] The willfulness inquiry is a fact-specific one, focused on what the Defendants *actually considered* and *why* they failed to adopt anti-piracy measures.  Dr. Cromarty's testimony does not speak to that issue.  *See Willisch v. Nationwide Ins. Co. of Am.*, 852 F. Supp. 2d 582, 588-89 (E.D. Pa. 2012) (declining to credit an expert's testimony on summary judgment that essentially concluded that ambiguities in the science rendered the relevant statute impossible to violate).

## II. DR. CROMARTY IS NOT QUALIFIED TO OPINE ON PLAINTIFFS' ACTUAL DAMAGES OR THE BUSINESS DECISIONS THEY COULD HAVE MADE TO ADDRESS PIRACY, AND HIS OPINIONS ON THOSE SUBJECTS ARE UNRELIABILE.

Although Plaintiffs' motion challenges Dr. Cromarty's testimony about Plaintiffs' actual damages and the measures Plaintiffs purportedly could have taken to respond to infringement on

---

[1] Dr. Cromarty essentially dismisses all industry efforts to measure the effectiveness of such technologies as useless because they do not meet what he believes to be standards of pure science.  *See* Declaration of Dr. Andrew Cromarty in Support of Defendants' Motion for Summary Judgment, Platzer Decl. Ex. 1 (filed under seal  Mar. 7, 2012) ¶ 88 [hereinafter "Cromarty Decl."].  The import of his opinion would be that services like Hotfile would be absolved from making meaningful efforts to limit copyright infringement until the effectiveness of content identification technologies can be measured under laboratory conditions.

both qualification and reliability grounds, *see* Pls.' Mem. 4-6, Defendants address only Dr. Cromarty's qualifications, ignoring entirely the challenges to the reliability is his testimony.

Defendants try to defend Dr. Cromarty's ability to opine about the Plaintiffs' business decisions in two ways: first, by citing his experience with various technologies that have been used for multimedia distribution; and second, by highlighting two non-scholarly articles, one speech, and his "years developing and evaluating business models for multimedia and entertainment content delivery and use on the Internet." Defs.' Opp. at 4. Both efforts are inadequate.

Dr. Cromarty's experience with technologies related to the distribution of multimedia do not render him an expert in the Plaintiffs' business. Nowhere do the Defendants suggest that he has any experience in studying the effects of piracy on the entertainment industry or any large-scale entertainment business like the Plaintiffs', or that he has any understanding of the economic factors and decisions that underlie Plaintiffs' business model. He simply asserts, without explanation, that because he has experience in technology related to multimedia distribution, he must be an expert in the business and economics of monetizing multimedia content as well. The fact that Dr. Cromarty may have some experience with technologies that may have been used to facilitate the distribution of multimedia content does not qualify him to opine as an expert on every tangentially related issue, including the business of content providers and the economics of content distribution. *See Advanced Med. Optics, Inc. v. Alcon, Inc.*, No. Civ. A. 03-1095, 2005 WL 782809, at *3 (D. Del. Apr. 7, 2005) (precluding an ophthalmologist from testifying about sales and marketing issues related to medical devices, notwithstanding the proponent's argument that he was qualified as an "expert consumer" of such devices; the court held that he was unqualified because he had no actual experience concerning the tangential issues of the sales or marketing of such devices); *Martinez v. Rabbit Tanaka Corp. Ltd.*, No. 04-61504-CIV, 2006 WL 5100536, at *12 (S.D. Fla. Jan. 6, 2006) (holding that proposed expert's experience with economic loss in personal injury cases did not qualify him to testify "on a wide array of disparate subject areas" related to the Plaintiff's claim, including on the workings of the movie and music industries).

Defendants' repeated invocation of the words "business models," as though that term renders Dr. Cromarty qualified to testify about the business of any company or industry, also fails. *See* Defs. Opp. at 4. For example, Defendants state that Dr. Cromarty "lectured

4

Hollywood industry executives on business models and technologies for entertainment and other multimedia content," that he published a paper with the term "business models" in the title, and that, more generally, he has "spent years developing and evaluating business models" for multimedia and entertainment and content delivery on the internet." *Id.* But even a cursory review of Dr. Cromarty's credentials shows that if he has experience with "business models" of any kind, it is only with technology companies—the companies he has actually worked for. *See* Defs.' Opp. at 4; *see also Noveck v. PV Holdings Corp.*, 742 F. Supp. 2d 284, 302-03 (E.D.N.Y. 2010) (declining to credit the testimony of experts with experience in certain aspects of motor vehicle safety standards, because the experts did not have experience with standards in car rental industry, and thus were not qualified to testify about standards used by car rental companies), *aff'd sub nom. Noveck v. Avis Rent A Car Sys., LLC*, 446 F. App'x 370 (2d Cir. 2011). His experience working with technology companies does not make him qualified to opine on the economics of the movie industry or the television industry.

Even if Dr. Cromarty were qualified to testify about the Plaintiffs' business (which he is not), his testimony on that subject is entirely unreliable. Dr. Cromarty is apparently offering the testimony based on his experience with various technology companies. When testifying primarily based on one's professional experience, for such testimony to be reliable, the expert must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that general experience is reliably applied to the facts." *See* Fed. R. Evid. 702 advisory committee's note on 2000 amendments. Dr. Cromarty's testimony fails to do any of these three. He simply asserts that he has experience with "business models" without providing any explanation of how that experience leads him to his opinions, why that experience is sufficient to support those opinions, or how he has applied that experience. He simply expects the Court to accept him at his word. That is not enough, under *Daubert* or under Rule 702.

**III.    DR. CROMARTY IS NOT QUALIFIED TO OPINE ON THE VALUE OF PLAINTIFF'S WORKS, AND HIS OPINIONS ON THAT SUBJECT ARE UNRELIABLE AND UNHELPFUL.**

Defendants argue that Dr. Cromarty is qualified to opine on the value of Plaintiffs' copyrighted works for the same reason he is qualified to opine on their damages and business decisions—because he generally has experience with companies that build technology related to content distribution. *See* Defs.' Opp. 5. This argument fails for the same reasons stated in

5

Section II *supra*. Dr. Cromarty's technical experience does not render him a jack-of-all-trades expert capable of providing the jury with an expert opinion on any aspect of the movie industry or television industry he sees fit. Dr. Cromarty's lack of qualification to testify about the value of Plaintiffs' works is perhaps even starker—he has offered no indication that he has *ever* attempted to value *any* entertainment work, or that he has even studied the market for Plaintiffs' movies and television programs. His testimony is nothing more than the speculation of a layperson.

Defendants' attempt to defend Dr. Cromarty's testimony as reliable is similarly meritless. They argue that because Dr. Cromarty may be an expert on certain content distribution technologies, he "has an invaluable insight into the numerous content distribution systems available to the Plaintiffs' including those systems through which Plaintiffs actually distribute their works." Defs. Opp. at 5. Defendants thus conclude that "[b]ased on his experience and knowledge, Dr. Cromarty reliably identified the actual cost to users to access Plaintiffs' works." *Id.* But this argument is nothing more than unsupported *ipse dixit*. Defendants never attempt to explain what kind of "invaluable" experience Dr. Cromarty has or why the Court should accept that he "reliably" values Plaintiffs' works. Defendants simply ask the Court to take these statements at face value.

Defendants offer only a single example of a supposedly reliable statement about the value of Plaintiffs' works—Dr. Cromarty's statement that Plaintiffs works are available to be viewed on the Internet for a fixed monthly price. *Id.* at 5-6. Defendants' argument is apparently that because Dr. Cromarty knows that Plaintiffs' content can be watched on services like Netflix, and because $7.99 a month seems like a low price to him, he is qualified to opine that the copyrighted works are not very valuable. In making that argument, Defendants provide a perfect illustration of why the Court's gatekeeping function under *Daubert* is so important. The fact that consumers can watch movies and television shows on services like Netflix is not expert analysis—it is a fact that many of the jurors will already know and all of the jurors will easily understand. That fact says virtually nothing about how the works are monetized or what benefits (monetary or nonmonetary) the Plaintiffs receive by making their works available through streaming services. Yet, if Dr. Cromarty is allowed to recite this fact in front of the jury in the guise of expert opinion, the jurors are likely to assume that Dr. Cromarty must be aware of some undisclosed facts or analysis that connect his awareness of Netflix to his speculation about the

6

value of the Plaintiffs' works. It is exactly that kind of juror confusion and speculation that Rule 702 is designed to avoid. *See United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) ("Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse."). Because there would be nothing "expert" about such testimony, Defendants should not be allowed to present it as such.

## IV. DR. CROMARTY IS NOT QUALIFIED TO OPINE ON DIGITAL FINGERPRINTING TECHNOLOGY.

Defendants contend that Dr. Cromarty has "extensive experience with digital fingerprinting technology," citing his masters and first doctoral thesis, as well as his "years as the Chief Technical and Information Officer of a company, wherein he specialized in such technology." Defs.' Opp. at 6.

This case does not concern the theories and science underlying digital fingerprinting technologies in the abstract, issues that are both long settled in the industry and not in any serious dispute. Rather, it concerns Defendants' failure to implement widely commercially available fingerprinting services to address infringement on Hotfile until after Plaintiffs filed their Complaint. To spin Dr. Cromarty's experience as somehow qualifying him to opine on the abilities of those services, Defendants point to a master's and doctoral thesis written in the early 1980s, long before any of the currently available digital fingerprinting technologies were developed or commercialized. *See* Cromarty Expert Report, Ex. B at 7. Those theses did not discuss the application of technologies in industry settings, but rather addressed the theory behind such technologies. Dr. Cromarty states in his report that his masters thesis "developed descriptive and mathematical models of visual signal processing" and his first doctoral dissertation "developed mathematical techniques for feature-based pattern analysis and visual pattern matching." *See id.* ¶ 30. While Plaintiffs do not doubt that Dr. Cromarty has some expertise with the theory underlying digital fingerprinting, the theory behind the technology is not in issue. At most, what might be in issue is what anti-piracy services using video fingerprinting technologies were actually available on the market during the 2009-2011 timeframe, how well those services worked, and whether it would have been appropriate for services like Hotfile to adopt them. Dr. Cromarty's general (but dated) understanding of the science behind the technology is not enough to qualify him to opine about those digital fingerprinting services. *See Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir.

7

2007) (holding that although plaintiff's proffered expert may have been qualified to testify on the *science* of polymers used for adhesives in tires, he had no experience with application of that science to *actual* tires, and thus could not testify as to the cause of a tire defect).

Defendants also cite Dr. Cromarty's alleged experience as CTO and CIO of Dax Solutions, Inc., stating that he was responsible for "digital asset watermarking/fingerprinting technology" in that role. Defs. Opp. at 6.[2] Dr. Cromarty's expert report simply states that he was responsible for that kind of technology, and does not explain what he actually did with regard to those technologies or what experience he gained. *See* Cromarty Expert Report ¶ 20. Neither his curriculum vitae nor his expert report provide any further explanation of how that role related to anti-piracy fingerprinting technology. Again, Defendants simply state without support that Dr. Cromarty is an expert and expect the Court to take them at their word. That is insufficient to establish Dr. Cromarty's qualifications under Rule 702. *See* Fed. R. Evid. 702 advisory committee's note on 2000 amendments ("The trial court's gatekeeping function requires more than simply taking the expert's word for it." (internal quotation marks omitted)).

## V. DR. CROMARTY'S TESTIMONY REGARDING TAKEDOWN NOTICE ACCURACY WAS NOT DISCLOSED IN HIS EXPERT REPORT, DR. CROMARTY IS UNQUALIFIED TO GIVE THAT TESTIMONY, AND THAT TESTIMONY IS UNRELIABLE.

Plaintiffs argue in their motion that Dr. Cromarty's testimony regarding the accuracy of takedown notices across the Internet generally should be excluded because he did not opine on that subject in his report. Pls.' Mem. at 26. Defendants respond by pointing to a section of Dr. Cromarty's report in which Dr. Cromarty states that he is aware of the Counterclaim issue, and speculates that Warner's incorrect takedown notices might be examples of a difficulty with identifying infringement generally—distinguishing lawful uses of copyrighted works from unlawful ones. *See* Cromarty Expert Report ¶ 198. In no sense does that statement about a general issue of identifying infringement put Plaintiffs on notice that Dr. Cromarty would offer testimony in his Declaration on summary judgment about the problem of incorrect takedown notices across the Internet, or that he would base such testimony on a report about incorrect takedown notices submitted to Google. That testimony was not timely disclosed and should be excluded.

---

[2] Since "fingerprinting" and "watermarking" are completely different technologies, Defendants' conflation of the two is vague and misleading.

8

Defendants argue that Dr. Cromarty is qualified to sponsor a hearsay third-party study about incorrect takedown notices across the Internet based on the same experience that allegedly qualifies him to testify about digital fingerprinting, *see* Section IV *supra*—that he "has expertise in the areas of digital asset identification and fingerprinting, which compare copyrighted materials to potentially infringing materials." *See* Defs.' Mot. at 8-9. As stated above, Dr. Cromarty's experience in this area is almost purely academic and theoretical, and the one professional experience he cites is completely unsupported and unexplained. His experience has absolutely nothing to do with the question of how many takedown notices on the Internet generally are inaccurate or the motives of persons sending them, which is what he testifies to in his summary judgment declaration. Defendants assert that Dr. Cromarty is qualified to opine that takedown procedures are inaccurate because he knows from his expert experience that "there is no reliable method to determine whether any particular file is actually infringing." *Id.* at 9. But that knowledge, at best, would only give Dr. Cromarty insight into one aspect of takedown notices and their accuracy generally. It would not qualify him to opine on whether the third-party study he recites about notices sent to Google is reliable, the degree to which takedown notices are *actually* accurate, or the factors that determine when and why third-party copyright owners send such notices. *See Smith,* 495 F.3d at 227 (expertise in polymers used as adhesives in tires did not render an expert qualified to opine on the practical issue of what caused a tire defect). Defendants do not contend that Dr. Cromarty has any experience with sending or receiving takedown notices, or the methods copyright owners and their agents use to send them, or that he has ever attempted to study the prevalence of incorrect takedown notices or the causes of those errors. In reality, Dr. Cromarty's "expertise" in this area is based on nothing more than speculation and his reading of the Google report, which could have equally well been read and cited by a layperson.

Defendants also contend that Dr. Cromarty's testimony is relevant to two issues: (1) Defendants' blameworthiness in facilitating infringement; and (2) to "set the stage for whether Warner knew or should have known" about the errors generated by its automated takedown system. *See* Defs. Opp. at 8. Both of these arguments fail as well. First, evidence about the inaccuracy of takedown notices on the Internet generally (or, more specifically given the study on which Dr. Cromarty relies, takedown notices received by Google) is not relevant to explain why Hotfile disregarded takedown notices from the Plaintiffs and others. It is irrelevant for the

9

same reason as Dr. Cromarty's putative testimony about the effectiveness of available anti-piracy technologies, *see* Section I *supra*: Defendants do not contend that they were ever aware of those issues, or that such awareness caused them to disregard takedown notices in failing to terminate repeat infringers.  And as with Dr. Cromarty's other opinions, any such argument would be contrary to the express holdings of this Court, which has already found that Defendants deliberately and unjustifiably disregarded takedown notices.  *See Disney Enters. Inc. v. Hotfile Corp.*, No. 11-civ-20427, slip op. at 44 (S.D. Fla. Aug. 28, 2013), D.E. 534.  Defendants may not now use Dr. Cromarty's testimony in order to relitigate whether or not Defendants' disregard of takedown notices was justified, particularly where any such argument would be no more than a *post hoc* justification with no support in the record.

This testimony is also irrelevant to Hotfile's Counterclaim.  Contrary to Defendants' assertion, the testimony does not "set the scene" (whatever that may mean) to show Warner's knowledge, as there is no evidence that Warner knew about the Google report Dr. Cromarty cites, or that the article has anything to do with Warner.  Simply put, there is no evidence to suggest that the issue of incorrect takedown notices across the Internet has any meaningful relationship to the Warner's knowledge or actions at issue in this case.  The Google report and Dr. Cromarty's testimony about it is nothing more than a distraction from the issue at the heart of the Counterclaim—whether *Warner* (not content providers generally) knowingly sent false takedown notices to *Hotfile* (not Google).[3]

## CONCLUSION

For the reasons stated in Plaintiffs' motion and this reply, Plaintiffs' motion should be granted.

---

[3] Defendants, moreover, never disclosed Dr. Cromarty as an expert on *any* Counterclaim issues, and may not belatedly sneak undisclosed Counterclaim-related testimony in through him now.

DATED: November 13, 2013	Respectfully submitted,

By: <u>Karen L. Stetson</u>
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

MOTION PICTURE ASSOCIATION	JENNER & BLOCK LLP
OF AMERICA, INC.	Steven B. Fabrizio (*Pro Hac Vice*)
Karen R. Thorland (*Pro Hac Vice*)	David A. Handzo (*Pro Hac Vice*)
15301 Ventura Blvd.	Kenneth L. Doroshow (*Pro Hac Vice*)
Building E	Luke C. Platzer (*Pro Hac Vice*)
Sherman Oaks, CA 91403	1099 New York Ave., N.W.
Telephone: (818) 995-6600	Suite 900
Facsimile: (818) 285-4403	Washington, DC 20001
	Telephone: (202) 639-6000
	Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 13th day of November, 2013, I served the following document on all counsel of record on the attached by means of the Court's ECF system:

**Plaintiffs' Reply Memorandum of Law in Support of Motion to Preclude Certain Opinions of Dr. Andrew Cromarty at Trial.**

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: /s/   Karen L. Stetson
Karen L. Stetson

## SERVICE LIST

**Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.**
**CASE NO. 11-C1V-20427-WILLIAMS-TURNOFF**

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

*Attorney for Defendants Hotfile Corp. and Anton Titov*

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116 Phone:617-426-0000

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201

*Attorney for Defendants Hotfile Corp. and Anton Titov*