UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

**JOINT SUBMISSION OF PROPOSED JURY INSTRUCTIONS**

75425.1

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................................1

I.      PLAINTIFFS' PROPOSED JURY INSTRUCTIONS.......................................................1

    A. CASE-SPECIFIC JURY INSTRUCTIONS ....................................................................1

    B. GENERAL INSTRUCTIONS .......................................................................................20

        1. INSTRUCTIONS TO THE JURY AT THE START OF TRIAL...........................20

        2. INSTRUCTIONS FOLLOWING THE CLOSE OF EVIDENCE ..........................30

II.     DEFENDANTS' PROPOSED JURY INSTRUCTIONS .................................................50

i

<u>**INTRODUCTION**</u>[1]

Plaintiffs, Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., and Warner Bros. Entertainment Inc. (collectively "Plaintiffs"), and Defendants Hotfile Corporation ("Hotfile") and Anton Titov (collectively "Defendants") by and through undersigned counsel and pursuant to the Order Setting Pre-Trial Schedule, DE 529, and Local Rule 16.1(k), hereby file their Proposed Jury Instructions, with objections noted where appropriate:

## I.    PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

### A.  CASE-SPECIFIC JURY INSTRUCTIONS

<u>**Plaintiffs' Proposed Jury Instruction No. 1:**</u>

**Nature of the Action**

This is a copyright infringement case. A "copyright" is a set of legal rights that the law gives to someone who owns an original work of authorship. This case involves one kind of original work of authorship, namely "motion pictures," which includes movies and television shows. The owner of the copyright to a motion picture is the only one permitted to copy or distribute the motion picture, or to authorize someone else to copy or distribute the motion picture. A copyright owner has that right regardless whether someone thinks that their decisions make good business sense. If someone does not have authorization from the copyright owner to copy or distribute the motion picture, the copyright laws prohibit that person from copying or distributing it. If that person nonetheless proceeds to copy or distribute the motion picture without authorization, that conduct is called "copyright infringement" and is against the law. Also, if a company profits from that person's copyright infringement while declining to exercise its right and ability to stop or limit the infringement, that company has also violated the law and is liable for copyright infringement.

There are five Plaintiffs in this case—Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc. and Warner Bros. Entertainment Inc. The five Plaintiffs are major media studios and entertainment companies. I may sometimes refer to them collectively as "the Studios." It is undisputed that Plaintiffs own the copyrights to 3,808 motion pictures that are at issue in this case.

There are two Defendants in this case—Hotfile Corporation and Anton Titov. Hotfile Corporation, which I will often refer to simply as "Hotfile," operates what is known as an online

---

[1] By agreement of the Parties, Plaintiffs file this public version of the Proposed Jury Instructions with redactions made pursuant to the protective order. The Parties will subsequently file an under seal version with the Court.

file hosting website.  Hotfile's system allows registered users to take electronic files that are stored on their computers or other accessible locations and transfer them to Hotfile's electronic storage system – which consists of many large computers called "servers" – through an uploading process.  As a result, once uploaded from the user's computer, a copy of that file then exists on Hotfile's servers.  Hotfile was incorporated in the country of Panama and is operated out of Bulgaria.  Mr. Titov is a Russian citizen.  He is one of Hotfile's three owners, and he plays a significant role in running the company.

Plaintiffs brought this lawsuit alleging that Defendants were legally responsible for copyright infringement by Hotfile's users on Hotfile's system.  As I will explain in more detail shortly, a number of issues presented by the Plaintiffs' lawsuit have already been resolved.  The Court has already determined that Defendants are legally responsible for their users' infringement of the Plaintiffs' copyrights through the Hotfile system.  Your job will be to determine how much in damages the Plaintiffs should receive as a result of that infringement.

[DEPENDENT ON COURT'S RULING ON PLAINTIFFS' MOTION IN LIMINE TO SET ORDER OF PROOF:]  While the Plaintiffs' lawsuit was proceeding, Defendant Hotfile Corporation filed what is known as a counterclaim against one of the five Plaintiffs—Warner Bros. Entertainment Inc., which I will refer to as "Warner."  In essence, Hotfile brought its own lawsuit against Warner alleging that Warner knowingly sent false notices to Hotfile stating that certain Warner copyrights were being infringed on Hotfile's system.

**Sources**:  17 U.S.C. §§ 102, 106; *Arista Records LLC v. Lime Group* LLC, 715 F. Supp. 2d 481 (S.D.N.Y. 2010); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1218 (C.D. Cal. 2007); 3B Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, Federal Jury Practice & Instructions § 160.01 ("Nature of the Action") (5th ed. 2010) (modified); Eleventh Circuit Civil Pattern Jury Instructions §  9.21 (2013).


### Defendants' Objections to Plaintiffs' Proposed Jury Instruction No. 1

The Defendants object to the wording of this proposed jury instruction as being, in various respects, either incorrect statements of law, incorrect statements of fact, and/or worded in such a way to improperly favor the plaintiffs' rendition of events.  More specifically, and without limitation, the Defendants object to:

●      references in the first paragraph to alleged infringement being "against the law" and Hotfile having "violated the law."  This is a civil case, not a criminal one and a lay juror may easily be misled by these terms into believing that the defendants are charged with (or guilty of) a crime.

●      the entire first paragraph (after the first two sentences), which Defendants believe misstates the applicable law.  In particular, the proposed description fails to take into account (and, indeed, would require the jury to actively disregard) the very real probability that many of the files at issue in this action were being legally space-shifted.  It is well established that an

2

owner of a copyrighted work, such as the legal owner of a DVD, has a right to copy (and space shift) the copyrighted work for his or her own personal use.

●	In the third paragraph, the Defendants object to the Plaintiffs' attempt to have the court conflate Mr. Titov and Hotfile into a single (corporate) entity, which the Court is supposed to refer to only as "Hotfile."  Mr. Titov and Hotfile are different and they deserve to be treated as such.  Liability for Hotfile does not, by necessity, translate into liability for Mr. Titov.

●	In the same paragraph, Defendants object to the Plaintiffs' attempt to have the court classify Hotfile as a "online file hosting website."  The Court's own description of Hotfile as an online "storage locker" is a much more accurate description.

●	Also in the third paragraph, Defendants object to Plaintiffs' insertion of the nationalities of the Defendants.  The descriptions add nothing to the jury instruction other than an attempt to appeal to potential prejudices of the jurors.

●	Defendants first object to the wording of the fourth paragraph, after the first two sentences.  It is Defendants' position that the Court found that Hotfile and Mr. Titov could be found liable for vicarious infringement, to the extent that the jury finds the underlying files in suit to have been directly infringed.  The Defendants believe that the wording as proposed ignores the fact that the jury may conclude that certain of the files may have been simply space-shifted (given their low or non-existent download rates).

●	Additionally, to the extent that the Court believes this to be the appropriate place to inform the jury that certain issues have been decided by the Court, fairness and equity also dictates that the jury be informed that the Defendants originally brought claims for direct infringement against Hotfile and Mr. Titov, which the Court rejected outright and dismissed.

●	Finally, Defendants object to Plaintiffs' wording that Hotfile initiated its counterclaim "while the Plaintiffs' lawsuit was pending."  Such wording would tend to mislead a lay jury into thinking that counterclaims could have been brought at some other point in time.  Additionally, Defendants object to Plaintiffs' anemic description of Hotfile's counterclaims and suggest instead that the Court adopt the Defendants' description of the Counterclaims.

<u>**Plaintiffs' Proposed Jury Instruction No. 2**</u>

**The Court's Prior Determinations**

The Court has already determined that Defendant Hotfile Corporation is vicariously liable for the copyright infringement of Plaintiffs' works committed by Hotfile's users on Hotfile's system.  In other words, the Court has already decided that Hotfile profited from its users' copyright infringement of Plaintiffs' works while declining to exercise its right and ability to stop or limit that infringement.  Thus, the Court has determined that, as a matter of law, Hotfile is responsible for the infringement of Plaintiffs' works committed by its users on Hotfile's system.

The Court has also already determined that Defendant Anton Titov is individually liable for the copyright infringement of Plaintiffs' works on Hotfile's system.  In other words, the Court has determined that Mr. Titov directed, controlled, ratified, participated in or was the moving force behind the infringing activity by Hotfile users, and that Mr. Titov was responsible for supervising the infringing activity and benefited from it.  Thus, both Hotfile Corporation and Mr. Titov are legally responsible for the infringement of Plaintiffs' works by Hotfile users on Hotfile's system.

As you listen to the evidence presented at trial, you must accept these prior rulings as true.  It is not your job to determine whether the Defendants are liable for the copyright infringement, since the Court has already decided that they are.  Your only job will be to determine the amount in damages that Plaintiffs should be awarded because of that infringement.  I will instruct you shortly on the factors you may consider in determining the amount of damages to be awarded to the Plaintiffs.

Some of you may have heard about a "safe harbor" under the Digital Millennium Copyright Act, sometimes referred to as the "DMCA safe harbor," which can be a defense to liability for copyright infringement in certain circumstances.  The Court has already decided that the DMCA safe harbor is not available to the Defendants here given the nature of their conduct.  The DMCA safe harbor is therefore not at issue here, so, if you have heard anything about the DMCA safe harbor, you must disregard what you have heard in considering the evidence presented at trial.

In concluding that the Defendants were legally responsible for copyright infringement, and in resolving several other issues before trial, the Court made a number of additional determinations in this case.  Again, as you listen to the evidence presented at trial, you must accept these determinations as true.  The Court has already found that:

1. Defendant Hotfile Corp. operates an online file hosting website located at www.hotfile.com.   Order on Mot. for Summ. J. at 3.

2. Hotfile commenced operations in February of 2009.  Order on Mot. for Summ. J. at 3.

3. Hotfile allows registered users to upload electronic files from their computers or other internet-enabled devices onto Hotfile's servers.  Order on Mot. for Summ. J. at 3.

4

4.  Once a user uploads a file to Hotfile, the user receives one or more web addresses, often known as "URLs" or links, that correspond to the files' location on Hotfile's servers.  By typing one of those addresses into a web browser, a person can access and download that file from any computer or other internet-enabled device.  Order on Mot. for Summ. J. at 3-4.

5.  Several attributes of Hotfile's design facilitate the use of Hotfile's system to infringe copyrights through the unauthorized uploading and downloading of copyrighted files.  Order on Mot. for Summ. J. at 4.

6.  First, while the uploading process places just one copy of the file on Hotfile's servers, that file can be downloaded an unlimited number of times by an unlimited number of users.  Moreover, there are no limitations as to how someone who downloads the file can further use or replicate that file.  Order on Mot. for Summ. J. at 4.

7.  Second, Hotfile is accessible to the public and anyone can upload or download files for free.  This means that files uploaded to the system can be accessed by anyone with an internet connection, not just the user who uploaded the file in the first place.  To access the file, the user only needs to know the unique URL address assigned to that file.  Although Hotfile does not itself provide a search function or index for browsing files on Hotfile, Hotfile both permits and encourages its users to share their files with others.  Order on Mot. for Summ. J. at 4.

8.  The principle way Hotfile encourages users to share their files is through its "Affiliate Program."  Order on Mot. for Summ. J. at 4.

9.  Under Hotfile's Affiliate Program, users, referred to as "affiliates," can earn money by promoting the sharing of the files they have uploaded to Hotfile.  Order on Mot. for Summ. J. at 4.

10.  Under the Affiliate Program, affiliates upload files to Hotfile and share the web addresses to those files with others.  When other users go to access those files, they have an option to sign up for "premium" status on Hotfile, which provides certain benefits in exchange for a subscription fee.  When a user signs up for premium status to access the file, Hotfile gives a portion of the subscription fee to the affiliate who uploaded the file.  The financial incentives increase with the size of the file and the frequency of its download.  In other words, the larger the file and the more often it is downloaded, the more money that Hotfile pays to the user who uploaded the file in the first place.  Order on Mot. for Summ. J. at 4-5.

11.  Many of Hotfile's affiliates have created their own websites that catalogue files found on Hotfile, promote their own files, or allow the public to search for files that are on Hotfile's servers.  Hotfile users can also promote the files they have uploaded in other ways, such as by emailing them to people they know or by advertising them through various channels.  Order on Mot. for Summ. J. at 4-5.

12. Because of its Affiliate Program and other ways that users can share files, Hotfile is a file distribution network, in addition to a storage site. Order on Mot. for Summ. J. at 4-5.

13. Through this business model, Hotfile has been effective at encouraging user participation and driving growth among downloading users, uploading users and affiliate members. According to Hotfile's figures, 123 million files available on Hotfile's system have been downloaded 2.9 billion times—145 million times alone in the month preceding this lawsuit—and have resulted in a registration of 5.3 million users. Order on Mot. for Summ. J. at 5-6.

14. ████████████████████████████████████████████████████████████████ ████████████████████ Order on Mot. for Summ. J. at 6.

15. Defendants purposefully designed Hotfile based on other websites that were later subject to challenges of copyright infringement. Hotfile's incentive structure rewards large and frequent file downloads, and it relies on the popularity of content to drive growth, even imploring users to post "interesting" links. Order on Mot. for Summ. J. at 9-10, 12, 74.

16. One of the websites that Hotfile is modeled after is a service called RapidShare. Hotfile was aware that copyright holders sued Rapidshare for copyright infringement in June 2010. Order on Mot. for Summ. J. at 9-10.

17. An enormous amount of copyright infringement occurred on Hotfile's system, and the extent of infringement by Hotfile's users was staggering. Order on Mot. for Summ. J. at 72-73.

18. Even before the Plaintiffs brought this lawsuit, Hotfile was made aware in a number of ways that the system was being used for substantial copyright infringement. Order on Mot. for Summ. J. at 13-14, 16, 72-74.

19. For example, whenever users contacted Hotfile, such as to get help with a technical issue, the title of the file last accessed by that user was displayed to Hotfile staff. By viewing the title of that file, Hotfile staff would be able to see whether the file appeared to be a popular movie or television show. Order on Mot. for Summ. J. at 13.

20. Similarly, Hotfile regularly received notices from copyright holders, or people acting on behalf of copyright holders, alleging that users have posted infringing content on Hotfile and demanding that the files be removed. Order on Mot. for Summ. J. at 11, 48-49, 72-73.

6

21. By the time the Plaintiffs brought this lawsuit, Hotfile had already received 10 million notices of infringement from copyright owners, corresponding to eight million unique files. Order on Mot. for Summ. J. at 16.

22. When Hotfile received infringement notices, it was possible for Hotfile to determine which users had uploaded the allegedly infringing files, but Hotfile deliberately disregarded the notices. Order on Mot. for Summ. J. at 17-18, 44.

23. While the users whose files were the subject of more than three infringement notices made up less than one percent of Hotfile's users, they were responsible for posting 50 million files, representing 44 percent of all files ever uploaded to Hotfile. Those files were downloaded nearly 1.5 billion times, representing roughly half of all downloads ever made from Hotfile. Order on Mot. for Summ. J. at 20-21.

24. Hotfile claimed to have what is known as a "repeat infringer" policy. Hotfile stated on its website that it would block users from the Hotfile system if they were responsible for Hotfile receiving repeated infringement notices relating to the files that those users uploaded to the system. Order on Mot. for Summ. J. at 15.

25. Hotfile's website also stated that users were forbidden from using Hotfile to engage in unlawful conduct, including copyright infringement. The website provided an email address where copyright infringement could be reported. Order on Mot. for Summ. J. at 15-16.

26. However, at least during the time before Plaintiffs filed this lawsuit, Hotfile did not actually terminate users whose uploads were the subject of repeat infringement notices and effectively did nothing to tie notices to repeat infringers. In fact, Hotfile deliberately disregarded infringement notices, and it was their practice to ignore the notices rather than to act to terminate the users they were associated with, despite the policy they claimed to maintain. Order on Mot. for Summ. J. at 16-18, 48-49

27. At least prior to the time the Plaintiffs brought this lawsuit, Hotfile lacked any meaningful policy to combat copyright infringement. Order on Mot. for Summ. J. at 19.

28. At least prior to the time the Plaintiffs brought this lawsuit, when different users uploaded identical files, Hotfile would maintain only one copy of that file on its system in order to save storage space. When Hotfile received an infringement notice about a file, it would remove only the web address links to that file referenced in the notice. It would not delete the file itself. Thus, users could still download that same file using a different link. Order on Mot. for Summ. J. at 11, 24.

29. Hotfile was successful in large part because it did not curb infringement activity on its system. Order on Mot. for Summ. J. at 74.

75425.1

30. After the complaint was filed in this case, Hotfile began to enforce its repeat infringer policy.  When it did so, its revenues dropped dramatically.  Order on Mot. for Summ. J. at 21, 81.

31. Plaintiffs are the owners of the copyright and/or own the exclusive reproduction or distribution rights with respect to the 3,808 copyrighted works at issue in this case.  Each of those 3,808 works was infringed at least once by a Hotfile user using the Hotfile system.

32. Hotfile Corporation was founded by Mr. Titov and ███████████████████ ████████████████████  Mr. Titov is the sole owner and manager of Lemuria Communications, a company that he founded and which owns and maintains the Hotfile servers on which the infringing files at issue in this case are stored.  Order on Mot. for Summ. J. at 25-27.

**Sources**:  *Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324, 331-32 (D. Kan. 1999) (in trial on damages, proper to instruct jury regarding "the history of the case and the issues which had been resolved"); *cf*. 3 Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, Federal Jury Practice & Instructions § 101.22 ("Remand on Issue of Damages Only") (6th ed. 2011) (model instruction with provisions for court recitation of specific findings from prior phase of the litigation, adapted from an approved instruction in *Children's Broadcasting Corp. v. Walt Disney Co.*, 357 F.3d 860, 867-68 n.3 (8th Cir. 2004)).

## **Defendants' Objections to Plaintiffs' Proposed Jury Instruction No. 2**

Defendants' Objections:  Defendants object first to the concept that the Court should read to the jury, as part of jury instructions, a long and detailed list of facts allegedly found by the Court on summary judgment. While the Defendants do not dispute that the Court will and should inform the jury, in broad terms, that certain issues were previously decided by the Court, the Defendants presume that the Court's own formulation of such facts will be far less prejudicial than those proposed by the Plaintiffs.  Indeed, one of the two cases cited, above, by the Plaintiffs - *Children's Broadcasting Corp. v. Walt Disney Co.*, 357 F.3d 860, 867-68 n.3 (8th Cir. 2004) – supports just such a proposition.  Throughout their numbered facts, the Plaintiffs paraphrase, shade, or simply misstate the facts as actually found by the Court.  To the extent that the Court believes that it is appropriate to provide the jury with facts found, such facts should be those actually found by the Court, not those that the Plaintiffs wish the Court had found.

Additionally, the Plaintiffs' formulation fails to take into account the fact that the Defendants were permitted not to object to facts at the summary judgment stage – not because the facts themselves were actually unopposed – but because the Defendants had made the determination to assume *arguendo* that they were not "genuine issues of material fact" for summary judgment purposes.

Defendants object also to each of the Plaintiffs' proposed introductory paragraphs as being either incorrect statements of the law or facts or, at a minimum, an improperly prejudicial shading of such facts and law.

Defendants object to the third introductory paragraph as improperly removing from the jury the jury's obligation to determine which of the underlying works in suit were actually infringed (as opposed, for example, simply space shifted).  Defendants object to the fourth introductory paragraph as being unnecessary and potentially confusing to the jury (which most likely has *never* heard of DMCA safe harbor.)

Defendants also object to each numbered paragraph to the extent that it fails to properly set forth a fact actually found by the Court.

75425.1

## **Plaintiffs' Proposed Jury Instruction No. 3:**

**Matters Agreed-Upon by the Parties**

The Plaintiffs and Defendants have agreed upon the truth of a number of facts relevant to this case.  You must accept these facts to be true as you consider the evidence in this case. The parties have agreed that Plaintiffs are not seeking damages with respect to conduct occurring on the Hotfile system after February 8, 2011, the date on which the Plaintiffs brought this lawsuit.

## **Defendants' Objections to Plaintiffs' Proposed Jury Instruction No. 3**

None.

75425.1

<u>**Plaintiffs' Proposed Jury Instruction No. 4:**</u>

**Damages (Generally):**

As I have told you, the Court has already determined that, as a matter of law, Hotfile is legally responsible for the infringement of Plaintiffs' works committed by its users on Hotfile's system. Your only job, therefore, is to determine how much in damages the Plaintiffs should receive as a result of that infringement.

Under the copyright law, Plaintiffs are entitled to recover the amount of Defendants' profits attributable to the infringement, or instead, at the Plaintiffs' option, what are called "statutory damages."  I will now provide you with instructions on what both types of damages are, and what you are to consider in deciding the appropriate amount of damages to award.

**Source**:  17 U.S.C. § 504.

<u>**Defendants' Objections to Plaintiffs' Proposed Jury Instruction No. 4**</u>

Defendants object to the first paragraph of this instruction to the extent that again assumes that the Court found that each of the files in suit was necessarily infringed upon – which the Court's order did not do – and ignores the fact that the jury is entitled to find that some or all of the files were legally space-shifted.  As such, the jury must decide both how many of the files in suit were infringed and, for those files, what amount of damages is to be awarded.

## Plaintiffs' Proposed Jury Instruction No. 5:

**Defendants' Profits:**

Under the copyright law, Plaintiffs are entitled to recover the amount of Defendants' profits that are attributable to infringement, if Plaintiffs so choose.  In establishing the amount of Defendants' profits, Plaintiffs are only required to present proof of Defendants' gross revenue and that there is some reasonable relationship, either direct or indirect, between those revenues and the infringement.  Once these two elements are established, the burden of proof  then shifts to Defendants to reduce this amount.  Defendants must then prove, by a preponderance of the evidence, the amount of their deductible expenses, and other elements of profit attributable to factors other than infringement.

In other words, you are to calculate the profits attributable to the infringement, if you find any, as Defendants' gross revenues proven by Plaintiffs, less the costs and other elements that Defendants prove are related to factors other than infringement.  Such costs and other deductible amounts may include a reasonable portion of overhead expenses such as rent, marketing, and other business costs that are related to the infringement.

**Sources:** 17 U.S.C. § 504(b); Eleventh Circuit Civil Pattern Jury Instructions; American Bar Ass'n, Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §§ 1.7.2, 1.7.3; *Andreas v. Volkswagen of Am.*, 336 F.3d 789, 796 (8th Cir. 2003); *Davis v. The Gap*, 246 F.3d 152, 172 (2d Cir. 2001) ; *Microsoft Corp. v. Tech. Ent., LLC*, 805 F. Supp. 2d 1330, 1333 (S.D. Fla. 2011); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 104-05 (2d Cir. 1999), *cert denied*, 528 U.S. 1160 (2000); 3B Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, Federal Jury Practice & Instructions § 160.91 ("Actual Damages") (2005) (modified).  *See* Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions – Civil*, Instr. 86-34 ("Reasonable Royalty").

## Defendants' Objections to Plaintiffs' Proposed Jury Instruction No. 5

Defendants object to this instruction as an incomplete and incorrect statement of the law.  The correct starting point for any instruction of this sort is that the Plaintiffs are required first to present proof of profits *attributable to the alleged infringement.  See, e.g., Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 710-12 (9th Cir. 2004) ("When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner. . . .   The causation element of the statute serves as a logical parameter to the range of gross profits a copyright plaintiff may seek.  This rule of reason 'obviates a good deal of mischief' in claiming profits beyond what might be attributable to the infringement." (numerous citations omitted)).

Plaintiffs' suggestion that they need only present evidence of Hotfile's gross revenue in order to shift the burden to Hotfile to disprove that the revenues are attributable to the infringing content is also mistaken.  *See, e.g., Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002), *quoting Taylor v. Meirick*, 712 F.2d 112, 1122 (7th Cir. 1983) ("[I]f General Motors were to steal your copyright

12

and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits.").

As worded, however, the proposed instruction does just that – leaves the jury with the mistaken impression that the Plaintiffs need only present evidence of Hotfile's overall revenues and that Hotfile would then be required to disprove the portion of its revenues attributable to the alleged infringement of the files in suit.  This would be a particularly absurd result here, where there are 3,808 works currently in suit and Hotfile hosted more than 100 million files during the relevant times at issue.

**<u>Plaintiffs' Proposed Jury Instruction No. 6</u>:**

**Statutory Damages:**

Statutory damages are an alternative type of damages, which, as I have noted, Plaintiffs are free to elect.  Statutory damages were established by Congress to permit copyright owners to recover damages within a statutory range instead of either the actual damages suffered by them or any profits of Defendants that are attributable to the infringement. The purpose of allowing Plaintiffs to elect statutory damages instead of actual damages and profits is to punish the infringer and deter future violations of the copyright laws.

Ordinarily, the amount you may award as statutory damages is not less than $750, and not more than $30,000, for each work – and here, each work means each motion picture – that has been infringed.  However, if you find the Defendants have willfully facilitated the infringement of Plaintiffs' copyrights, you are not limited to a maximum award of $30,000 per work infringed and instead are permitted, but are not required, to award statutory damages up to $150,000 for each work infringed, as you consider just.

Within the monetary limits that I have just described, the statute gives you broad discretion to determine the amount of statutory damages that you find to be just in light of the evidence presented.  In deciding what amount is just, you should take into consideration the purposes and factors that I will describe to you.  The general purposes of statutory damages include the following:

1.  Relieving copyright owners of the often difficult burden of proving their actual damages and the defendant's profits;
2.  Providing adequate compensation to the copyright owner and disgorgement of the infringer's benefits from infringement;
3.  Deterring the infringer and others similarly situated from future infringement; and
4.  Where appropriate, punishing the infringer.

Thus, statutory damages are available without proof of plaintiff's actual damages, defendant's profits, or other direct economic effects of the infringement.  If they choose to accept statutory damages, Plaintiffs are not required to submit any evidence of their actual damages, and you may award statutory damages at any level within the range I have given you whether or not Plaintiffs submit any evidence of actual damages from Defendants' infringement, or even if you conclude Plaintiffs have not suffered any actual damages.

The following are some of the factors that may help guide your assessment of an appropriate award and you may consider any or all of them:

- the willfulness of Defendants' conduct,
- the facts on which the Court relied (as I have read them to you) in concluding that Defendants are legally responsible for the infringements of Plaintiffs' copyrights,
- the circumstances and scale of the infringement,
- the need to deter these Defendants,

14

- the need to deter other potential infringers,
- the nature of the copyright,
- the expenses saved and profits earned by Defendants, and
- the degree to which Defendants have cooperated in providing particular records from which to assess the value or scope of infringing activity.

An infringement is willful if Defendants had actual knowledge that they were infringing a Plaintiff's copyright or, even without actual knowledge, acted in reckless disregard of the infringement. A person acts with reckless disregard if it's obvious that an ordinary person under the circumstances would have realized the infringement and taken care to address it.

It is Plaintiffs' burden to prove, by a preponderance of the evidence, that the infringement was willful. You need not find that Defendants acted maliciously in order to find willful infringement. Also, you may infer a Defendant's state of mind, including reckless disregard, from his conduct. You are to consider all of the facts and circumstances, and, in particular, any notice that Defendants had of the infringement occurring on their site.

**Sources:** 17 U.S.C. §504(c); Eleventh Circuit Civil Pattern Jury Instructions; American Bar Ass'n, Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §§ 1.7.4, 1.7.7 (2008); 3B O'Malley, Grenig & Lee, Federal Jury Practice and Instructions §160.92 (5th ed. 2001); *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952); *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010-11 (2d Cir. 1995); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336-37 (9th Cir. 1990). *Capitol Records, Inc. v. Thomas- Rasset*, 692 F.3d 899, 907-10 (8th Cir. 2012); *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986); *Cable/Home Comm. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850-52 (S.D. Fla. 2003); *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1312-13 (S.D. Fla. 2003).

## **Defendants' Objections to Plaintiffs' Proposed Jury Instruction No. 6**

Defendants object to this proposed instruction primarily as being an incomplete statement of the law. First, although Plaintiffs outline the upward departure permitted for willful infringement, they fail to similarly outline the downward departure permitted if the jury were to find innocent infringement. Although Plaintiffs have stated their position (in the parties' meet and confer) that an innocent infringer defense is not available because of 17 U.S.C. 401(d), they are incorrect on this point for two reasons. First 401(d) applies only to situations where a copyright symbol was affixed to the work "to which a defendant in a copyright infringement suit had access." In the present case, as this Court is aware, Hotfile did not open or review its clients' files and therefore it did not "have access" to the copyright markings. Additionally, the rationale of this section – that a defendant who can see a copyright symbol knows he or she is infringing when he or she directly copies the work, simply cannot reasonably be applied in a case of secondary liability such as the present one.

Defendants also object to this instruction inasmuch as it improperly implies (by omission at least) that Hotfile had obligations to search for infringing materials which it clearly did not under

the law.  Although Hotfile was denied safe harbor under the DMCA, this does not change the fact that, in enacting the Digital Millennium Copyright Act, Congress made a considered policy determination to place the  "burden of policing copyright infringement — identifying the potentially infringing material and adequately documenting infringement — squarely on the owners of the copyright."  This means that the copyright holder is required to identify the allegedly infringing material and bring it to the attention of the defendants.  The defendants were not obliged in any way to search themselves for – or to identify – allegedly infringing materials even if they had a general awareness that infringement may have been occurring.  *See, e.g.,* 17 U.S.C., §512(m); *UMG Recordings, Inc. v. Veoh Networks, Inc.,* 718 F.3d 1006, 1022 (9th Cir. 2013); *Viacom Int'l, Inc. v. YouTube, Inc.,* 2012 U.S. App. LEXIS 6909 (2d Cir. N.Y. 2012); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007).

Defendants object also to the extent that the instruction implies that the jury must find that each of the works in suit was infringed, as opposed to recognizing that the jury has the right to determine the number of files infringed upon.

Defendants object also to the omission of language clarifying that the jury's award of statutory damages is made without regard or consideration to the number of times a particular file was infringed.

Finally, Defendants object to this instruction to the extent that it states that willfulness must be found only by a preponderance of the evidence.  As is indicated in Defendants' proposed instructions, Defendants assert that this enhancement requires a finding of willfulness by clear and convincing evidence.

16

[DEPENDENT ON COURT'S RULING ON PLAINTIFFS' MOTION IN LIMINE TO SET ORDER OF PROOF]

### Plaintiffs' Proposed Jury Instruction No. 7:

As I have already stated, Defendant Hotfile has brought a separate claim – known as a "counterclaim" – against Plaintiff Warner.  Under copyright law, someone who knowingly and materially misrepresents that material on an online service is infringing is liable for any damages incurred by a service provider who is injured by such a misrepresentation as a result of the service provider relying on the misrepresentation in removing or disabling access to the material alleged to be infringing.

Hotfile alleges that Plaintiff Warner, when it caused certain files to be removed from the Hotfile system, knew that the files were not actually infringing, but caused them to be removed from Hotfile anyway.  To succeed on this claim, Hotfile must prove all of the following five elements for each file at issue:

1. That Warner represented that the file was infringing;

2. That the representation was false;

3. That Warner knew the representation was false at the time the representation was made;

4. That the representation was material; and

5. That the misrepresentation was the proximate cause of injury to Hotfile.

To find that Warner acted "knowingly," you must find that Warner actually knew that each file was not infringing, and that it acted with an intent to deceive, manipulate or defraud Hotfile when it caused each of the files at issue to be removed.  It is not enough to find that Warner "should have known" that each file was not infringing.  For Warner to have acted "knowingly," you must find that Warner actually knew that each file was infringing.  If Warner did not actually know that each file was infringing, then you must find against Hotfile and for Warner, even if you believe that Warner acted unreasonably in making the mistake.

Because Hotfile brought this claim against Warner, the burden of proof is reversed from Plaintiffs' claim for damages.  Thus, it is Hotfile, not Warner, that must prove all five elements by a preponderance of the evidence.  If the proof fails to establish any of the five elements by a preponderance of the evidence, you should find against Hotfile and for Warner.

You must remember at all times that this claim is against Warner only.  The other Studios are not part of this claim, and their actions may not form any part of your decision on Hotfile's claim. At the same time, you are to draw no conclusions from the fact that only Warner has been sued. You may not infer anything about Warner or about the other studios from that fact.

17

**Sources:** 17 U.S.C. § 512(f); *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004); 3B Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, Federal Jury Practice & Instructions § 123.02 ("Essential elements of claim for misrepresentation") (6th ed. 2010) (modified); Eleventh Circuit Civil Pattern Jury Instructions § 6.1 (2013).


### Defendants' Objections to Plaintiffs' Proposed Jury Instruction No. 7

Defendants object to this instruction as a misstatement of the law.  Preliminarily, the instruction divorces the Plaintiffs' obligations under §512(c)(3) from §512(f).  For example, the instruction omits in its entirety the requirements of the DMCA takedown notice, which are:

> (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
> (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
> (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.
> (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
> (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
> (vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

Omitting these factors – and building jury instructions without such factors would lead to absurd results. Under the Plaintiffs' proposed instruction, Warner could send a takedown notice for every file located on every cloud service provider because it does not "actually know that the file was not infringing."

Defendants object also to the Plaintiffs' definition of "knowingly" as a misstatement of the law. For the purposes of §512(f), "a party is liable if it 'knowingly' and 'materially' misrepresents that copyright infringement has occurred.  'Knowingly' means that a party actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations."  *See Online Policy Group v. Diebold, Inc.,* 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004). *See also Ground Zero Museum Workshop v. Wilson,* 813 F. Supp. 2d 678, 704 (D. Md. 2011) ("There is not a great deal of case law interpreting this provision of DMCA, but district court cases that have addressed the provision offered additional gloss on the meaning of the terms 'knowing' and 'material misrepresentation' as used in § 512(f). 'Knowingly' has been interpreted to mean

'that a party actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations").

19

## B.  GENERAL INSTRUCTIONS


### 1.  INSTRUCTIONS TO THE JURY AT THE START OF TRIAL


### Plaintiffs' Proposed Jury Instruction No. 8:


**"Rules of the Road"**

Before we start the trial, let me give you a few "rules of the road."

First, please do not discuss the case with anyone.  This includes discussing the case in person, in writing, by phone or electronic means, via text messaging, e-mail, Facebook, Twitter, blogging or any Internet chat room, web site or other feature.  If you have to tell someone such as your spouse or your employer that you are serving on a jury and that the trial may last as late as [date], that's okay.  But when they inevitably ask you what the case is about, please tell them that you are under strict instructions from the judge not to discuss the case.  The reason for this, obviously, is that we want you to decide this case solely on the evidence presented in this courtroom, and not on the basis of anything anyone who hasn't heard the evidence may think about the case.  If you are asked or approached in any way about your jury service or anything about this case, you should respond that you have been ordered by the judge not to discuss the matter, and you should report the contact to the court as soon as possible.

Along the same lines, you should not access any information about the case or do research on any issue that arises in the case from any outside source, including dictionaries, reference books, or anything on the Internet.  Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case.  It's very important that you understand why these rules exist and why they're so important.  You must base your decision only on the testimony and other evidence presented in the courtroom.  It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom.  For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source.  Only you jurors can decide a verdict in this case.  The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Your sworn duty is to decide this case solely and wholly on the evidence presented in this courtroom.

Finally, please do not discuss the case even among yourselves until all the evidence has been presented and the case has been given to you for your deliberations. The reason for this is that the evidence will be presented one witness and one exhibit at a time, and it is important that you keep an open mind until you have heard all the evidence.

20

**Sources:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 71-15; Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 71-12; Eleventh Circuit Civil Pattern Jury Instructions.

<u>**Plaintiffs' Proposed Jury Instruction No. 9**</u>:

**Evidence**

The evidence in this case will be the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the question of a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  .

Testimony that is stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony is received for a limited purpose – such as for the purpose of assessing a witness' credibility – you must follow the limiting instructions I will give.

Statements and arguments by lawyers are not evidence, because the lawyers are not witnesses. What they will say to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Exhibits which are marked for identification may not be considered by you as evidence until and unless they are received in evidence by the court.

To constitute evidence, exhibits must be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may make concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you will hear and the exhibits you will see.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 74-1 (modified).

<u>**Plaintiffs' Proposed Jury Instruction No. 10:**</u>

**Evidence – Stricken Evidence**

There are rules of evidence that control what the court can receive into evidence.  When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence don't permit it.  If I overrule the objection, then the witness may answer the question or the court may receive the exhibit.  If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions

75425.1

<u>**Plaintiffs' Proposed Jury Instruction No. 11:**</u>

**Credibility of witnesses:**

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions

24

<u>**Plaintiffs' Proposed Jury Instruction No. 12:**</u>

**Expert Witnesses**

In this case, I will permit certain witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 76-9.

<u>**Plaintiffs' Proposed Jury Instruction No. 13**</u>**:**

**Conferences Outside of Jury's Presence**

During the trial it may be necessary for me to speak with the lawyers out of your hearing, either by having a bench conference here while you are present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working.  The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence which govern the trial, and to avoid confusion and error.

**Source**:  3A Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, *Federal Jury Practice & Instructions* § 102.02 (2005).

26

<u>**Plaintiffs' Proposed Jury Instruction No. 14**</u>:

**Note Taking**

If you want to take notes during the course of the trial, you may do so. If you do take notes, be sure that your note-taking does not interfere with your listening to and considering all of the evidence.  Also, if you take notes, do not discuss them with anyone before or during your deliberations.  Your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case.  The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror and your notes are not to be shown to any other juror during your deliberations.  If, during your deliberations, you have any doubt as to any of the testimony, you will be permitted to request that the official trial transcript which is being made of these proceedings be read to you.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 71-16.

75425.1

<u>**Plaintiffs' Proposed Jury Instruction No. 15**</u>**:**

**Course of the trial**

Let's walk through the trial.  First, each side may make an opening statement, but they don't have to.  Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Plaintiffs will present their witnesses and ask them questions.  After Plaintiffs question the witness, Defendants may ask the witness questions – this is called "cross-examining" the witness.  Then Defendants will present their witnesses, and Plaintiffs may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it. After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law. You'll then go to the jury room to deliberate.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions

<u>**Plaintiffs' Proposed Jury Instruction No. 16:**</u>

**Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning.  Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions.  If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence.  Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.  If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case.  If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness.  I may modify the form or phrasing of a question so that it's allowed under the evidence rules.  Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question.  If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please don't ask any questions aloud.
- Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.
- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions

29

## 2. INSTRUCTIONS FOLLOWING THE CLOSE OF EVIDENCE

### Plaintiffs' Proposed Jury Instruction No. 17:

**Juror Attentiveness**

Ladies and gentlemen, before you begin your deliberations, I now am going to instruct you on the law. You must pay close attention and I will be as clear as possible.

It has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified. Your interest never flagged, and you have followed the testimony with close attention.

I ask you to give me that same careful attention as I instruct you on the law.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 71-1.

<u>**Plaintiffs' Proposed Jury Instruction No. 18:**</u>

**Role of the Court**

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not any of you, be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 71-2.

<u>**Plaintiffs' Proposed Jury Instruction No. 19:**</u>

**Role of the Jury**

As I have instructed you, some facts are already established.  You must accept those facts as established.  Other facts are in dispute.  As members of the jury, you are the sole and exclusive judges of the facts that are in dispute.  With respect to the facts that are in dispute you pass upon the evidence.  You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.  You are to perform the duty of finding the facts without bias or prejudice to any party.

In determining these issues, no one may invade your province or functions as jurors.  In order for you to determine the facts, you must rely upon your own recollection of the evidence.  What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence.  But you may not consider any answer that I directed you to disregard or that I directed struck from the record.  Do not consider such answers.

The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the (plaintiff/defendant) has proven his case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses.  These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses.

You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions – Civil*, Instr. 71-3 (modified).

<u>**Plaintiffs' Proposed Jury Instruction No. 20:**</u>

**Jury to Disregard Court's View**

With respect to the facts that are in dispute, I have not expressed nor have I intended to intimate any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established, or what inference or inferences should be drawn from the evidence.  If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it.

You are, I repeat, the exclusive, sole judges of all of the questions of fact submitted to you and of the credibility of the witnesses.  Your authority, however, is not to be exercised arbitrarily; it must be exercised with sincere judgment, sound discretion, and in accordance with the rules of law which I give you. In making your determination of the facts in this case, your judgment must be applied only to that which is properly in evidence.  Arguments of counsel are not in evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.

From time to time the court has been called upon to pass upon the admissibility of certain evidence, although I have tried to do so, in so far as it was practicable, out of your hearing.  You have no concern with the reasons for any such rulings and you are not to draw any inferences from them.  Whether offered evidence is admissible is purely a question of law in the province of the court and outside the province of the jury.  In admitting evidence to which objection has been made, the court does not determine what weight should be given to such evidence, nor does it pass on the credibility of the evidence.  Of course, you will dismiss from your mind, completely and entirely, any evidence which has been ruled out of the case by the court, and you will refrain from speculation or conjecture or any guesswork about the nature or effect of any colloquy between court and counsel held out of your hearing or sight.

**Source:** Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil,* Instr. 71-5 (modified).

33

<u>**Plaintiffs' Proposed Jury Instruction No. 21**</u>:

**Witness Credibility**

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

How do you determine where the truth lies?  You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you?  Did he or she appear to be frank, forthright and candid, or evasive and edgy as if hiding something?  How did the witness appear; what was his demeanor–that is, his carriage, behavior, bearing, manner and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witnesses had to see, hear, and know the things about they testified, the accuracy of their memory, their candor or lack of candor, their intelligence, the reasonableness and probability of their testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.
In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment and your own life experience.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 76-1.

75425.1

## Plaintiffs' Proposed Jury Instruction No. 22:

**Corporations**

In this case, plaintiffs and one defendant are corporations.  The mere fact that a party is a corporation does not mean it is entitled to any lesser consideration by you.  All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 72-1.

**<u>Plaintiffs' Proposed Jury Instruction No. 23</u>:**

**Depositions**

Some of the testimony before you is in the form of videotaped depositions which have been received in evidence. A deposition is simply a procedure where the attorneys for one side may question a witness or an adversary party under oath before a court stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 74-14.

<u>**Plaintiffs' Proposed Jury Instruction No. 24**</u>:

**Standard of Proof – Preponderance of the Evidence**

[*If Court grants Motion to Set Order of Proof*:  In this case, the Plaintiffs have the burden of proving their damages claim by what the law calls a "preponderance of the evidence."  That means the party bringing the case must prove that, in light of all the evidence, that they claim or it claims is more likely true than not.  So, with respect to the damages claim, if you could put the evidence favoring Plaintiffs and the evidence favoring Defendants on opposite sides of balancing scales, Plaintiffs needs to make the scales tip to their  side. If Plaintiffs fails to meet this burden, you must find in favor of Defendants.

If you find that the credible evidence on a given issue is evenly divided between the parties – that it is equally probable that one side is right as it is that the other side is right – then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence – he must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof – that what the party claims is more likely true than not true--then that element will have been proved by a preponderance of evidence. To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.]

[*If Court denies Motion to Set Order of Proof*: In this case, the Plaintiffs have the burden of proving their damages claim, and Defendant Hotfile Corporation has the burden of proving its counterclaim, by what the law calls a "preponderance of the evidence."  That means the party bringing the case must prove that, in light of all the evidence, what it claims is more likely true than not.  So, with respect to the damages claim, if you could put the evidence favoring Plaintiffs and the evidence favoring Defendants on opposite sides of balancing scales, Plaintiffs needs to make the scales tip to their  side.  If Plaintiffs fails to meet this burden, you must find in favor of Defendants.

Likewise, with respect to the counterclaim, if you put the evidence favoring Hotfile and the evidence favoring Warner on opposite sides of balancing scales, Hotfile must make the scales tip to its side.  If Hotfile fails to meet this burden, you must find in favor of Warner.

If you find that the credible evidence on a given issue is evenly divided between the parties--that it is equally probable that one side is right as it is that the other side is right--then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence--he must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof--that what the party claims is more likely

37

true than not true--then that element will have been proved by a preponderance of evidence. To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.]

**Source**:  Eleventh Circuit Civil Pattern Jury Instructions; Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil,* Instr. 73-2 (modified).

**<u>Plaintiffs' Proposed Jury Instruction No. 25</u>:**

**Direct and Circumstantial Evidence**

There are two types of evidence which you may properly use in reaching your verdict. One type of evidence is direct evidence. Direct evidence is when witnesses testify about something they know by virtue of their own senses – something they have seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse. Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact. Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on (*e.g.*, a preponderance of) all the evidence presented.

**Source:** Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 74-2.

<u>**Plaintiffs' Proposed Jury Instruction No. 26**</u>:

**Summaries and Charts Admitted as Evidence**

The Plaintiffs and Defendants have presented exhibits in the form of charts and summaries.  I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 74-11.

<u>**Plaintiffs' Proposed Jury Instruction No. 27**</u>:

**Summaries and Charts Not Admitted as Evidence**

Certain charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence, but were not admitted in evidence.  They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence.  Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.
It is for you to decide whether these charts, schedules or summaries correctly present the information contained in the testimony and in the exhibits on which they were based. You are entitled to consider the charts, schedules and summaries if you find that they are of assistance to you in analyzing the evidence and understanding the evidence.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 74-12.

75425.1

<u>**Plaintiffs' Proposed Jury Instruction No. 28**</u>:

**Inferences**

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw. The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw–but not required to draw–from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

**Source:** Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 75-1.

42

<u>**Plaintiffs' Proposed Jury Instruction No. 29**</u>:

**Conduct of Counsel**

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. With respect to the facts that are in dispute, you are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

**Source:** Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil,* Instr. 71-6.

<u>**Plaintiffs' Proposed Jury Instruction No. 30**</u>:

**Discrepancies**

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness' testimony. On the other hand, discrepancies in a witness' testimony or between his testimony and that of others do not necessarily mean that the witness' entire testimony should be discredited. People sometimes forget things and even a truthful witness may be nervous and contradict himself. It is also a fact that two people witnessing an event will see or hear it differently.

Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 76-4.

<u>**Plaintiffs' Proposed Jury Instruction No. 31**</u>:

**Prior Inconsistent Statements**

You have heard evidence that at some earlier time the witness has said or done something which counsel argues is inconsistent with the witness' trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil*, Instr. 76-5.

75425.1

<u>**Plaintiffs' Proposed Jury Instruction No. 32:**</u>

**Conflicting Expert Testimony**

You have heard testimony of numerous expert witnesses who have been called by both sides to give their opinion about issues.

The witnesses who testified in this case did so in order to assist you in reaching a decision on about these issues.

The testimony of these witnesses is in conflict. They disagree. You must remember that you are the sole trier of the facts and their testimony relates to questions of fact.

The way you resolve these conflicts between these witnesses is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses.  In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion and the witness' motive, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence.  You should not permit a witness' opinion testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness. The determination of the facts in this case rests solely with you.

**Source:**  Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions - Civil,* Instr. 76-10 (modified).

<u>**Plaintiffs' Proposed Jury Instruction No.  33**</u>:

**Unanimous Verdict**

Of course, the fact that I have given you instructions concerning the issue of Plaintiffs' damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous -  in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.  Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with. Your only interest is to seek the truth from the evidence in the case.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions

<u>**Plaintiffs' Proposed Jury Instruction No. 34**</u>:

**Foreperson**

When you get to the jury room, choose one of your members to act as foreperson.  The foreperson will direct your deliberations and speak for you in open court.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions

<u>**Plaintiffs' Proposed Jury Instruction No. 35**</u>:

**Return of Verdict**

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room.  When you've all agreed on the verdict, your foreperson must fill in the form, sign it, and then date it.  Then you'll return it to the courtroom.

**Source:**  Eleventh Circuit Civil Pattern Jury Instructions

75425.1

## II.    DEFENDANTS' PROPOSED JURY INSTRUCTIONS

### Defendants' Proposed Jury Instruction No. 1

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nor is what I may have said-or what I may say in these instructions- about a fact issue evidence. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the (plaintiff/defendant) has proven his case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses.

You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party.

Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions- Civil*, Instr. 71-3.

### Plaintiffs' Objections to Defendants' Proposed Jury Instruction No. 1

None.

## Defendants' Proposed Jury Instruction No. 2

This is a civil case and as such the plaintiffs have the burden of proving the material elements of their claims, including damages, by a preponderance of the evidence.  If after considering all of the testimony you are satisfied that the plaintiffs have carried their burden on each essential point as to which they have the burden of proof, then you must find for the plaintiffs on their claims. If after such consideration you find the testimony of both parties to be in balance or equally probable, then the plaintiffs have failed to sustain their burden and you must find for the defendants.

With respect to the Counterclaims, the burden is flipped.  With respect to the Counterclaims, Hotfile is required to prove the material elements of its claims, including damages, by a preponderance of the evidence.  If after considering all of the testimony you are satisfied that Hotfile has carried its burden on each essential point as to which it has the burden of proof, then you must find for Hotfile on its counterclaims. If after such consideration you find the testimony of both parties to be in balance or equally probable, then Hotfile has failed to sustain its burden and you must find for Warner on the counterclaim.

Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions- Civil*, Instr. 73-1 (modified to provide for counterclaims)

## Plaintiffs' Objections to Defendants' Proposed Jury Instruction No. 2

1.      Defendants' inclusion of the word "including" in the statement that "plaintiffs have the burden of proving the material elements of their claims, *including* damages" (emphasis added) is both irrelevant and prejudicial in that it seeks to relitigate issues that were already decided.  *See Collins v. State Farm Mut. Auto. Ins. Co.*, 902 F.2d 1371, 1373-74 (8th Cir. 1990) (affirming the district court's rejection of a proposed instruction that failed to accurately reflect the law of the case.).  The Court already determined on summary judgment that Defendants were vicariously liable for the direct infringement of Hotfile's users.  *See Disney Enters., Inc. v. Hotfile Corp.*, No. 11-20427, slip op. at 87-92 (S.D. Fla. Aug. 28, 2013).  The only remaining issue to be decided at trial is the extent of damages to which Plaintiffs are entitled as a result of that infringement.

2.      Because Plaintiffs carry the burden of proof on their damages claim, whereas Defendants carry the burden of proof on their Counterclaim, the burdens of proof should be discussed separately when the Court explains the elements of each separate claim, per Plaintiffs' proposed instructions.  *See* Plaintiffs' Proposed Jury Instructions Nos. 6-7.  An abstract discussion by the Court in a single instruction about which party carries the burden for different (and unrelated) claims could be overly technical and confusing to the jury.  *See Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 974 (11th Cir. 2000) (stating that jury instructions couched in legalistic terms such as "burden shifting" may improperly confuse jurors).

51

## Defendants' Proposed Jury Instruction No. 3

The party with the burden of proof on any given issue has the burden of proving every disputed element of its claim to you by a preponderance of the evidence. If you conclude that the party bearing the burden of proof has failed to establish his claim by a preponderance of the evidence, you must decide against him on the issue you are considering.

What does a "preponderance of evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties- that it is equally probable that one side is right as it is that the other side is right- then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence-he must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof- that what the party claims is more likely true than not true-then that element will have been proved by a preponderance of evidence.

Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions- Civil*, Instr. 73-2.

## Plaintiffs' Objection to Defendants' Proposed Jury Instruction No. 3

None.

## Defendants' Proposed Jury Instruction No. 4

In order to prevail, the plaintiffs must sustain their burden of proof as I have explained to you with respect to each element of their claims, including damages. If you find that the plaintiffs have succeeded, you should return a verdict in their favor on that claim. If you find that the plaintiffs failed to sustain the burden on any element of the claim, including damages, you should return a verdict against the plaintiffs. Your verdict regarding the amount of damages you decide to award must also be unanimous.  The same holds true for the counterclaims.  Your verdict on Hotfile's counterclaim must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Hon. Leonard B. Sand, et al., 4 *Modern Federal Jury Instructions- Civil*, Instr. 78-3; Compagnie *Nationale Air France v. Port of NY. Auth.*, 427 F.2d 951, 953 (2d Cir. 1970); *Greene v. City of NY*, 675 F. Supp. 110, 119 (S.D.N.Y. 1987); Fed. R. Civ. P. 48(b) ("Unless the parties stipulate otherwise, the verdict must be unanimous….")


## Plaintiffs' Objection to Defendants' Proposed Jury Instruction No. 4

1.      Defendants' inclusion of the word "including" in the statement that "plaintiffs have the burden of proving the material elements of their claims, *including* damages" (emphasis added) is both irrelevant and prejudicial in that it seeks to relitigate the question of direct infringement, which the Court already decided.  *See* Plaintiffs' Objection to Defendants' Proposed Jury Instruction No. 2.  The only remaining issue to be decided at trial is the amount of damages to which Plaintiffs are entitled.  *See id.*

2.      The passing reference that "[t]he same holds true for the counterclaims" in relation to the burden of proof is vague and potentially confusing to the jury, in the same way as Defendants' Proposed Jury Instruction No. 2.  *See* Plaintiffs' Objection to Defendants' Proposed Jury Instruction No. 2.  The burdens of proof should be discussed separately when the Court explains the elements of each separate claim, per Plaintiffs' proposed instructions.  *See id.*

53

75425.1

## Defendants' Proposed Jury Instruction No. 5[2]

In the course of this litigation, the Court has already determined certain facts relevant to this case.  As you listed to the evidence presented at trial, you must accept the court's prior determinations as true.  The Court has already found that:

1.      Hotfile is what is known as an online "storage locker."  Order on MSJ, p. 3.

2.      Although the Plaintiffs had originally attempted to bring claims of direct copyright infringement against Hotfile and Mr. Titov, I found – as a matter of law – that neither Hotfile nor Mr. Titov could be found liable for direct copyright infringement.  Neither Hotfile nor Mr. Titov took any direct, volitional steps to violate the plaintiffs' copyrights.  Order on Motion to Dismiss, p. 4.

3.      JDownloader is a real program whose authors voluntarily uploaded it through Hotfile's website.  Order on MSJ, p. 3.

4.      Hotfile provides no index or search feature, which means that anyone trying to access a file must know its exact location or URL.  Order on MSJ, p. 4.

5.      Hotfile is accessible to the public and anyone can upload or download files for free.  By paying nine dollars per month for "premium" status, users may store their files for a longer period of time; otherwise, uploaded files are automatically deleted every three months.  Moreover, premium users who seek to download files benefit from easier access, faster download speeds, and the ability to download files more frequently.  Without premium status, users are restricted to one download every thirty minutes.  Order on MSJ, p. 5.

6.      At least as far back as April 24, 2009, Hotfile maintained an e-mail address posted on its website for the public to report illegitimate or illegal user activity.  Order on MSJ, p. 22.

7.      In August of 2009, Hotfile implemented a Special Rightsholder Account ("SRA") program after it receiving a request for a "takedown tool" from Plaintiff Warner.  The program allows trusted content owners to attest that they own rights to protected works to have access to Hotfile's system.  This is a much quicker alternative than the user termination prompted by a DMCA-compliant infringement notice.  Through an interface provided by Hotfile, owners are permitted to identify and automatically remove offending links without any action needed from Hotfile.  Order on MSJ, p. 23.

8.      Hotfile has used hashing technology to remove identical copies of files once one file is found to be infringing.  Order on MSJ, p. 23.

---

[2] Although the Defendants do not believe that it is appropriate to include facts found by the Court on summary judgment in proposed jury instructions – and have objected to the Plaintiffs' attempt to do so – the Defendants submit this proposed jury instruction in the event that the Court finds such instructions proper.

9.      Warner devotes the efforts of ▮▮▮▮ employees to online anti-infringement efforts, hires third-party vendors, and uses the practice of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ link sites and issue notifications of infringement to storage locker sites when infringing content is detected. Order on MSJ, p. 29.

10.      
Order on MSJ, p. 30-31.

11.      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Order on MSJ, p.32

12.      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Order on MSJ, pp. 32-33.

13.      ▮▮▮ Order on MSJ, p. 33.

14.      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ rder on MSJ, p.33.

15.      All infringing activity took place between uploading users, downloading users and affiliates, and not Hotfile.  Order on MSJ, p. 75.

16.      The Hotfile system has noninfringing uses, such as the distribution of unlicensed materials.  Order on MSJ, p. 75.

17.      Not one document shows a business plan contemplating infringing uses or an understanding that Hotfile was actually assisting users (individually or as a whole) to commit infringement.  Hotfile had no direct involvement in the acts of infringement.  There were no considerations or rejections of counter-piracy software, internal communications acknowledging the illegal nature of specific network activity, or proposals to legitimize user activity.  Order on MSJ, pp. 75-76.

18.      The most popular downloads on Hotfile are freely-licensed works.  Order on MSJ, p. 77.

19.      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Order on MSJ, p. 97.

20.     Hotfile has in fact suffered damage as a result of Warner's wrongful takedown notices.  Order on MSJ, p. 98.

**<u>Plaintiffs' Objection to Defendants' Proposed Jury Instruction No. 5</u>**

1.     Item 2 in Defendants' list of proposed findings is immaterial to any issue remaining in this case and, as such, is irrelevant and prejudicial, with the potential to confuse the jury as to the issues to be decided.  Moreover, the statement that "[n]either Hotfile nor Mr. Titov took any direct, *volitional* steps to violate the plaintiffs' copyrights" misstates the Court's prior findings and the issues to be decided.  In particular, Defendants' willfulness is directly relevant to the damages issue remaining for trial, and the statement in Defendants' proposed instruction concerning "volition" is misleading and potentially confusing to the jury.

2.     Item 8 in Defendants' list of proposed findings is an inaccurate statement of the Court's previous findings.  The Court stated only that Hotfile used hashing technology "possibly since August 2009," but found Defendant Titov's declaration to be inconsistent in this respect.  The issue of when – or even whether – Hotfile began implementing hashing technology remains a disputed issue for trial.

3.     Item 9 in Defendants' list of proposed findings is an inaccurate statement of the Court's previous findings, as the cited portion of the Court's decision was not part of, or necessary for, any holding of the Court.  Moreover, Defendants' characterization of the Court's decision omits the word ██████████ which the Court used to describe ████████████████████ ██████

4.     Item 12 in Defendants' list of proposed findings is an inaccurate statement of the Court's previous findings, as the cited portion of the Court's decision was not part of, or necessary for, any holding of the Court.  Moreover, in the cited portion, the Court stated only that ██████ ███████████████████████████ which is in no way a finding of fact in this respect.

5.     Item 14 in Defendants' list of proposed findings is an inaccurate statement of the Court's previous findings, as the cited portion of the Court's decision was not part of, or necessary for, any holding of the Court.  Moreover, Defendants ████████████████████████ ███████████████████████████████████████

6.     Item 15 in Defendants' list of proposed findings is immaterial to any issue remaining in this case and, as such, is irrelevant and prejudicial, with the potential to confuse the jury as to the issues to be decided.

7.     Item 18 in Defendants' list of proposed findings is an inaccurate statement of the Court's previous findings.  The cited portion of the Court's decision was not a finding of fact, but merely a reference to Defendants' evidence in the context of a question that the Court identified as remaining for trial.

75425.1

8.      Item 19 in Defendants' list of proposed findings is an inaccurate statement of the Court's previous findings.  In the cited portion of the Court's decision, the Court stated only that "there is sufficient evidence in the record to suggest that Warner intentionally targeted files it knew it had no right to remove."  Order on MSJ, p. 97.  The Court did not find any fact in this respect; to the contrary, the Court was merely noting a dispute as to this fact that the Court deemed appropriate for trial.

9.      Item 20 in Defendants' list of proposed findings is an inaccurate statement of the Court's previous findings.  In the cited portion of the Court's decision, the Court stated only that "the fact of injury has been shown" for purposes of defeating a motion for summary judgment, not that "Hotfile has in fact suffered damage . . . ."  Order on MSJ, p. 98.

## Defendants' Proposed Jury Instruction No. 6

Statutory damages are an alternative form of damages which the Plaintiffs may choose to elect.  Statutory damages were established to permit copyright plaintiffs to recover damages within a prescribed range instead of either the actual damages suffered by the plaintiffs or any profits of the defendants that are attributable to the infringement.

For each work that you find to have been actually infringed, you may award the Plaintiffs between $750 and $30,000, as you deem just, in accordance with these instructions.  If the infringement was innocent – in other words, if the infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright – you may reduce the award of statutory damages to not less than $200 per work infringed.  If you find that the Defendants committed willful infringement, the award may be increased up to $150,000 per work that the Plaintiffs have proved was infringed.

Willful infringement requires that the defendant has actual or constructive knowledge that its actions constitute infringement or recklessly disregards a copyright holder's rights.  Where a defendant has been notified that its conduct constitutes copyright infringement but reasonably and in good faith believes the contrary, a finding of willfulness is not appropriate.  The copyright owner has the burden to prove – by clear and convincing evidence - that infringement was committed willfully.  Although the statute permits you to increase statutory damages available if the Plaintiffs prove willfulness, you are not required to do so.

The determination of the amount of statutory damages lies within your sound discretion and sense of justice.  Within the statutory range, you have wide discretion in setting the amount of damages, and you may consider the non-exclusive factors listed below, or others according to your sense of justice, giving whatever weight to each that you choose.  The determination of the amount of damages must consider what is just in the particular case not only based on the nature of Plaintiffs' copyrights, but also the circumstances of the infringement and other relevant circumstances.

Some of the factors you may consider include:

1.     The expenses saved and the profits earned by the Defendants;

2.     The revenues lost by the Plaintiffs;

3.     The Defendant's state of mind, whether willful, knowing, or innocent;

4.     The nature of the copyright; and

5.     The blameworthiness of the defendants.

The blameworthiness of the Defendants weighs heaviest in the analysis.

In awarding statutory damages, you must make one and only one award for each "work," that is infringed. This remains true no matter how many infringing copies have been made, how many times the infringement occurred, or how many individual users of the Hotfile website may

75425.1

have directly infringed the particular work.

In making your determinations concerning the culpability of the parties, you should be guided by the fact that, in enacting the Digital Millennium Copyright Act, Congress made a considered policy determination to place the "burden of policing copyright infringement — identifying the potentially infringing material and adequately documenting infringement — squarely on the owners of the copyright." This means that the copyright holder is required to identify the allegedly infringing material and bring it to the attention of the defendants. The defendants were not obliged in any way to search themselves for – or to identify – allegedly infringing materials even if they had a general awareness that infringement may have been occurring.

Even where there is uncontroverted evidence that a defendant knew or should have known that material on its site was infringing, a damage award on the lower end of the scale is warranted in the interests of justice where the defendant immediately removed the material identified as infringing.

In considering the amount of statutory damages to award you may take into consideration the amount of any actual damages you believe Plaintiffs have suffered with respect to the works in question as a result of the infringing conduct of Hotfile's users. Although Plaintiffs need not prove actual damages in order to recover statutory damages, the amount of statutory damages awarded should bear some relation to the amount of any actual damages suffered as a result of the infringement.

Your award of statutory damages must not be so severe and oppressive as to be wholly disproportionate to the offense. It may not be grossly excessive in relation to the actual harm suffered by plaintiffs.

17 U.S.C. § 504(c); 17 U.S.C., §512(m); *Columbia Pictures Indus. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001); *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 768 (11th Cir. 1996); *WB Music Corp. v. RTV Communications Group, Inc.*, 445 F.3d 538, 540 (2d Cir. 2006); *UMG Recordings, Inc. v. MP3.com, Inc.,* No. 00 Civ. 472, 2000 U.S. Dist. LEXIS 13293, at *4 (S.D.N.Y. Sept. 6, 2000); *Clever Covers, Inc. v. Southwest Florida Storm Defense, LLC,* 554 F. Supp. 2d 1303, 1312-13 (M.D. Fla. 2008); *Peer Inter, Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568-69 (S.D.N.Y. 1995); *IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 1003-04 (N.D. Cal. 2010); *Nintendo of Am., Inc. v. Ketchum*, 830 F.Supp. 1443, 1445 (M.D. Fla. 1993); *Nick–O–Val Music, Inc. v. P.O.S. Radio Inc.*, 656 F.Supp. 826 (M.D. Fla. 1987); *Webloyalty.com, Inc. v. Consumer Innovations, LLC,* 388 F. Supp. 2d 435, 442 (D. Del. 2005); *UMG Recordings, Inc. v. Veoh Networks, Inc.,* 718 F.3d 1006, 1022 (9th Cir. 2013); *Viacom Int'l, Inc. v. YouTube, Inc.,* 2012 U.S. App. LEXIS 6909 (2d Cir. N.Y. 2012); *Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1113 (9th Cir. 2007); *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 657 (N.D. Ill. 2002) *aff'd,* 334 F.3d 643 (7th Cir. 2003); *Dean v. Burrows,* 732 F. Supp. 816, 825 (E.D. Tenn. 1989); *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007); *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 584 (6th Cir. 2007); *EMI Entm 't World, Inc. v. Karen Records, Inc.,* 603 F. Supp. 2d 759,769-70 (S.D.N.Y. 2009); *RSO Records, Inc. v. Peri,* 596 F. Supp. 849, 862 (S.D.N.Y. 1984); *Capitol Record Inc. v. Thomas-Rassett,* Civ. No. 06-1497, 2010 WL 291763, at *4 (D. Minn. Jan. 22, 2010); *Bly v. Banbury*

*Books, Inc.,* 638 F. Supp. 983, 987 (E.D. Pa. 1986); *St. Louis, I.M & S. Ry. Co. v. Williams,* 251 U.S. 63, 66 (1919); *BMW of N Am., Inc. v. Gore,* 517 U.S 559, 585-86 (1996); *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408 (2003); *Parker v. Time Warner,* 331 F.3d 13, 22 (2d Cir. 2003); *UMG Recordings, Inc. v. Lindor,* No. CV-05-1095, 2006 WL 3335048, at *3 (E.D.N.Y. Nov. 9, 2006); *Atl. Recording Corp. v. Brennan,* 534 F. Supp. 2d 278, 282 (D. Conn. 2008); *Sony BMG Music Entm 't v. Tenenbaum,* 721 F. Supp. 2d 85, 121 (D. Mass. 2010); *Bryant v. Media Right Prods., Inc.,* 603 F.3d 135, 143 (2d Cir. 2010); *Fitzgerald Pbl 'g Co. v. Baylor Pbl 'g Co.,* 807 F.2d 1110, 1116 (2d Cir. 1986); *D.C. Comics, Inc. v. Mini Gift Shop*, 912 F.2d 29,34 (2d Cir. 1990); *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 914 (D. Conn. 1980); 4 *Nimmer on Copyright§* 14.04(E)(l)(a) (2010); Pamela Samuelson & Tara Wheatland, *Statutory Damages in Copyright Law: A Remedy in Need of Reform,* 51 Wm. & Mary L. Rev. 439 (2009).

## **Plaintiffs' Objection to Defendants' Proposed Jury Instruction No. 6**

1.      This proposed instruction is an incorrect statement of law, misleading and prejudicial. *See Pate v. Seaboard R.R. Inc.*, 819 F.2d 1074, 1083 (11th Cir. 1987) (reversing the district court because a jury instruction articulated the wrong legal standard).  Appellate courts throughout the country have expressly rejected the notion that the amount of statutory damages awarded should bear some relation to the amount of any actual damages suffered as a result of the infringement. *See New Form, Inc. v. Tekila Films, Inc.*, 357 F. App' x. 10 (9th Cir. 2009) ("We have consistently held and stated that statutory damages are recoverable without regard to the existence or provability of actual damages") (holding that "[t]here is no required nexus between actual and statutory damages under 17 U.S.C. § 504(c)" and rejecting a proposed jury instruction to the contrary as "a misstatement of the law") (unpublished decision, citing Ninth Circuit cases); *BMG Music Ent'mt v. Tenenbaum*, 719 F.3d 67, 71-72 (1st Cir. 2013) (holding that "statutory damages are not to be measured" in relation to actual damages because they are "imposed as a punishment for the violation of a public law" and thus relate "to the public wrong rather than the private injury . . . .") (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams,* 251 U.S. 63, 66 (1919)). *See also Cable/Home Comm'ns  Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) (stating that statutory damages are available "whether or not adequate evidence exists as to actual damages incurred by plaintiffs or the profits gained by defendants," and that "[g]enerally, statutory damages are awarded when no actual damages are proven, or actual damages and profits are difficult or impossible to calculate").

        The cases cited by Defendants in support of their proposed instruction are simply not good law.  Indeed, one of the cases that Defendants offer, *Capitol Record Inc. v. Thomas-Rassett,* Civ. No. 06-1497, 2010 WL 291763, at *4 (D. Minn. Jan. 22, 2010), was reversed on appeal precisely on this basis.  *See Capitol Records, Inc. v. Thomas-Rasset,* 692 F.3d 899, 907-10 (8th Cir. 2012) (rejecting district court's conclusion that "statutory damages must still bear *some* relation to actual damages") (emphasis in original).  Defendants' proposed instruction is thus an inaccurate statement of the law.

2.      This proposed instruction is irrelevant, misleading, and prejudicial, as any suggestion that the infringement at issue in this case was somehow "innocent" is foreclosed as a matter of law. Under 17 U.S.C. § 401(d):

If a notice of copyright in the form and position specified by this section appears on the published copy or copies to which a defendant in a copyright infringement suit had access, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement in mitigation of actual or statutory damages, except as provided in the last sentence of section 504 (c)(2).

It is undisputed that the Plaintiffs' works bore proper copyright notices. *See Columbia Pictures, Inc. v. Tucker*, No. 94 CV 5543, 1997 WL 779093, at *7 (N.D Ill. Dec. 11, 1997) (rejecting defendant's effort to reduce amount of statutory damages award based on the "innocent infringement" provision of § 504(c)(2), because that provision was inapplicable by virtue of § 401(d)). Thus, Defendants are barred by Section 401(d) from contending that any infringement at issue here was "innocent" for purposes of 17 U.S.C. § 504(c)(2). *See Maverick Recording Co. v. Harper*, 598 F.3d 193, 199 (5th Cir. 2010) (when proper notices affixed, "the infringer's knowledge or intent" is irrelevant, and innocent infringement defense is foreclosed "as a matter of law"); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[B][2][a] at 14-74-75 (defendants "generally cannot remit statutory damages below the mandatory minimum, unless the subject work was unpublished, bore an invalid [copyright] notice, or was inaccessible to that defendant") (footnotes omitted).

3.      This proposed instruction is irrelevant and prejudicial in that it seeks to relitigate issues that were already decided. *See Collins v. State Farm Mut. Auto. Ins. Co.*, 902 F.2d 1371, 1373-74 (8th Cir. 1990) (affirming the district court's rejection of a proposed instruction that failed to accurately reflect the law of the case.). 17 U.S.C. § 512(m), as well as the portions of the cases cited by Defendants, do not articulate general principles of copyright law, but rather concern only the safe harbor provisions of the Digital Millenium Copyright Act, 17 U.S.C. §§ 512(a)-(d). *See* 17 U.S.C. § 512(m); *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 718 F.3d 1006, 1022 (9th Cir. 2013) (considering the applicability of § 512(c)); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012) (considering § 512(m) explicitly in the context of the DMCA safe harbor); *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 657 (N.D. Ill. 2002) (same). The Court has already found in this case that Defendants do not qualify for the DMCA safe harbor. *See Disney Enters. Inc. v. Hotfile Corp.*, No. 11-20427, slip op. at 37-57 (S.D. Fla. Aug. 28, 2013). This proposed instruction therefore has no relevance to any matters at issue in the trial and is inaccurate, confusing and prejudicial. *See Pate v. Seaboard R.R. Inc.*, 819 F.2d 1074, 1083 (11th Cir. 1987) (reversing the district court because a jury instruction articulated the wrong legal standard).

## Defendants' Proposed Jury Instruction No. 7

Statutory damages are not available in an infringement action unless the copyright was registered either: before the infringement began; or within three months after publication, if the infringement began after publication.

17 U.S.C. § 412.

## Plaintiffs' Objections to Defendants' Proposed Jury Instruction No. 7

This Proposed Instruction is unnecessary and prejudicial.  Publicly available records from the United States Copyright Office, as well as data in Defendants' possession, confirm that copyrights in each of the works in suit on which Plaintiffs claim damages were registered either before the infringement began or within three months after publication of the work if the infringement began after publication.  To the extent that this is not so for any works, Plaintiffs do not intend to seek damages for those works.

75425.1

## Defendants' Proposed Jury Instruction No. 8

For the purpose of statutory damages, lost revenues means the profits which the Plaintiffs lost as a result of the infringement.

In considering the revenues lost by the Plaintiffs as a factor in assessing statutory damages, you may consider only those revenues lost with respect to the files in suit as a result of the Defendants' infringing conduct, not revenues lost as a result of the conduct of others.  In this case, which deals with vicarious liability, the amount of damages may include damages sustained by the Plaintiffs, if any, as a result of infringing conduct by Hotfile's users.  You may not, however, consider revenues lost by the Plaintiffs (if any) which result from online file sharing in general.

In further consideration of the Plaintiffs' lost profits as a factor in assessing statutory damages, you may consider only those losses that were in fact caused by the secondary infringement by the Defendants; that is, you may consider Plaintiffs' losses only if you determine that in the absence of Defendants' infringement of Plaintiffs' copyrights, Plaintiffs would not have suffered the loss.  In making that determination, you may consider whether, as an economic matter, Hotfile's users may not have paid money for files that they downloaded for free from Hotfile and that downloads on Hotfile thus may not equal lost sales.

Moreover, in considering Plaintiffs' lost profits as a factor in assessing statutory damages, you may consider only those losses that were proximately caused by the secondary infringement of the Defendants; that is, you may consider Plaintiffs' losses only if you determine that there is a necessary, immediate and direct causal connection between Defendants' infringement of Plaintiffs' copyrighted works and the losses that Plaintiffs allege they have suffered.  In making that determination, you may consider that a diminution in Plaintiffs' profits over time may only be partially attributable to Defendants if others caused some of Plaintiffs' actual losses.

*Warner Bros. Inc. v. Dae Rim Trading, Inc.,* 677 F. Supp. 740 (S.D.N.Y. 1988), *qff'd,* 877 F.2d 1120 (2d Cir. 1989); *Fitzgerald Publ 'g Co., Inc. v. Baylor Publ 'g Co., Inc.,* 670 F. Supp. 1133, 1138-39 (E.D.N.Y. 1987), *aff'd,* 862 F.2d 304 (2d Cir. 1988); *U2 Home Entm 't, Inc. v. Rolling Rock Music Corp.,* No. 04 Civ. 1234, 2005 WL 2414351 , at *3 (S.D.N.Y. Sept. 30, 2005); *US. Media Corp. v. Edde Entm 't Corp.,* No. 94 Civ. 4849, 1998 WL 401532, at *20 (S.D.N.Y. July 17, 1998); *NA.S. Import Corp. v. Chenson Enters., Inc.,* 968 F.2d 250, 252-53 (2d Cir. 1992); *Stevens Linen Assocs., Inc. v. Mastercraft Corp.,* 656 F.2d 11, 15 (2d Cir. 1981); *E. Am. Trio Prods., Inc. v. Tang Elec. Corp.,* 97 F. Supp. 2d 395, 419 (S.D.N.Y. 2000); *Clever Covers, Inc. v. Sw. Florida Storm Def., LLC,* 554 F. Supp. 2d 1303, 1310 (M.D. Fla. 2008); *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.,* 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003); *Data Gen Corp. v. Grumman Systems Support Corp.,* 36 F.3d 1147, 1171 (1st Cir. 1994); *Antenna Television v. Aegean Video,* 1996 U.S. Dist. LEXIS 7688, at *8-9; *Odegard, Inc. v. Costikyan Classic Carpets, Inc.,* 963 F. Supp. 1328, 1344 (S.D.N.Y. 1997); *Big Seven Music Corp,* 554 F.2d 504, 509 (2d Cir. 1977); *Sunset Lamp v. Alsy Corp. ,* 749 F. Supp. 520, 522 (S.D.N.Y. 1990); *Getaped.com v. Cangemi,* 188 F. Supp. 2d 398, 403 (S.D.N.Y. 2002); *4-14 Nimmer on Copyright* §14.02 n.17.

**<u>Plaintiffs' Objection to Defendants' Proposed Jury Instruction No. 8</u>**

1.      This proposed instruction is misleading and prejudicial.  Defendants apparently wish to convey to the jury that they cannot be liable for the actions of their users (it is unclear who else "others" would refer to).  But the core tenet of secondary liability is that one can be held liable for the infringement of others.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929-30 (2005) ("[w]hen a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers, the only practical alternative being to go against the distributor of the copying device for secondary liability on a theory of contributory or vicarious infringement").

2.      This proposed instruction is irrelevant, as Plaintiffs do not seek to claim damages on the basis of their lost revenues or profits.  As Plaintiffs' own proposed instructions make clear, the basis for Plaintiffs' recovery of damages will be either Defendants' profits attributable to the infringement or statutory damages, at Plaintiffs' election.  The inclusion of an instruction on Plaintiffs' lost revenues or profits is thus unnecessary, misleading, and can only confuse the jury as to the issues to be decided.

75425.1

## Defendants' Proposed Jury Instruction No. 9

An individual who owns a lawful copy of a copyrighted work is permitted to make a copy of that work for his own use or benefit.  A person is also permitted to store such a copy remotely or "in the cloud."  This is known as "space shifting."  Space shifting does not constitute copyright infringement.

*Recording Indus. Ass'n of Am. v. Diamond Multimedia Sys.,* 180 F.3d 1072 (9th Cir. 1999).  Cf. *Sony Corp. of America v. Universal City Studios,* 464 U.S. 417, 455 (1984) (holding that "time-shifting" of copyrighted television shows with VCR's constitutes fair use under the Copyright Act, and thus is not an infringement).

## Plaintiffs' Objection to Defendants' Proposed Jury Instruction No. 9

1.      Plaintiffs object to this instruction as irrelevant, unnecessary, and prejudicial.  Plaintiffs' claims in this case are not based merely on works that stored remotely, but rather only on those works that were distributed to (*i.e.*, downloaded by) individuals other than the user who uploaded the work in the first instance.

2.      Plaintiffs object to this instruction as it is confusing and not supported by the law.  The cases that Defendants cite in support of their instruction do not support the proposition that "space shifting" is a form of fair use under copyright law.  *See, e.g.,* Recommendation of the Register of Copyrights, Section 1201 Rulemaking:  Fifth Triennial Proceeding (Oct. 2012), at 163 ("Neither *Diamond Multimedia* nor *Sony* provides the legal basis for a broad declaration that space shifting of audiovisual works is a noninfringing use").  *See also A&M Records v. Napster,* 239 F.3d 1004, 1019 (9th Cir. 2000) (space-shifting not fair use when allegedly space-shifted copy is available for distribution to millions of other users of Napster system); *UMG v. MP3.com,* 92 F. Supp.2d 349, 351 (S.D.N.Y. 2000) (space-shifting not fair use in context of remote online storage of sound recordings).

3.      Plaintiffs object to this instruction as incomplete in that it omits that Defendants bear the burden of proof on this issue.  Fair use is an affirmative defense.  *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239-40 (11th Cir. 2010) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994)); *Peter Letterese & Assocs. V. World Inst. of Scientology Enterprises*, 533 F.3d 1287, 1307 n.21 (11th Cir. 2008).  As such, the defendant bears the burden proof.  *Peter Letterese & Assocs.*, 533 F.3d, at 1307 n.21 ("The affirmative defense of fair use is a mixed question of law and fact as to which the proponent bears the burden of proof."); see also *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994)); *Harper & Rob, Pubs., Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985).  Therefore, even assuming that "space shifting" is an accepted form of fair use, it is Defendants' burden to prove that a given work was not distributed to (i.e., downloaded by) individuals other than the user who uploaded the work in the first instance.

## **Defendants' Proposed Jury Instruction No. 10**

Warner's notifications by means of Hotfile's SRA are (and have the effect of) notifications of claimed infringement to Hotfile's designated agent under 17 U.S.C. § 512(c)(3)(A), and are therefore subject to 17 U.S.C. § 512(f).

## **Plaintiffs' Objection to Defendants' Proposed Jury Instruction No. 10**

This instruction is prejudicial and incomplete.  It should be clarified that, although use of the SRA system constitutes a DMCA notice, the terms and conditions Hotfile tried to impose in order to use the SRA system differ from the requirements of the DMCA.  See Plaintiffs' Motion in Limine and Memorandum of Law to Preclude Evidence and Argument Regarding "Perjury" in Connection with Counterclaim, D.E. 615-1 (originally filed under seal Oct. 28, 2013).

75425.1

**Defendants' Proposed Jury Instruction No. 11**

For the purposes of §512(f), "a party is liable if it 'knowingly' and 'materially' misrepresents that copyright infringement has occurred. 'Knowingly' means that a party actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations."

*Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004). *See also Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 704 (D. Md. 2011) ("There is not a great deal of case law interpreting this provision of DMCA, but district court cases that have addressed the provision offered additional gloss on the meaning of the terms 'knowing' and 'material misrepresentation' as used in § 512(f). 'Knowingly' has been interpreted to mean 'that a party actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations'").

**Plaintiffs' Objection to Defendants' Proposed Jury Instruction No. 11**

This proposed instruction misstates the law and is misleading and prejudicial. *See Pate v. Seaboard R.R. Inc.*, 819 F.2d 1074, 1083 (11th Cir. 1987) (reversing the district court because a jury instruction articulated the wrong legal standard). It is well established Section 512(f) requires a showing of "some actual knowledge of misrepresentation on the part of the copyright owner." *Rossi v. Motion Picture Ass'n of Am.*, 391 F.3d 1000, 1005 (9th Cir. 2004) (describing Section 512(f) as imposing a "subjective good faith standard"). Every court to have considered the issue after *Rossi* has followed the *Rossi* rationale to require actual, subjective knowledge. *See, e.g.*, *Ouellette v. Viacom Int'l Inc.*, CV 10-133, 2012 WL 1435703, at *3 (D. Mont. Apr. 25, 2012) (applying *Rossi* and dismissing the plaintiff's Section 512(f) claim on the pleadings for failure to plead actual knowledge by the copyright holder that its challenged notice had been sent in error); *Cabell v. Zimmerman*, No. 09 Civ. 10134, 2010 WL 996007, at *4 (S.D.N.Y. Mar. 12, 2010) ("as a prerequisite to liability under section 512(f), a defendant must have actual knowledge that it is making a misrepresentation of fact"); *Third Educ. Grp., Inc. v. Phelps*, 675 F. Supp. 2d 916, 927 (E.D. Wis. 2009) (requiring "a demonstration that the actor had some actual knowledge of the misrepresentation" in the takedown notice; *UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055, 1065 (C.D. Cal. 2008) (512(f) liability attaches "only if the owner did not possess a subjective good faith belief that its copyright was being infringed"), *aff'd*, 628 F.3d 1175 (9th Cir. 2011); *Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005) ("as long as MGA acted in good faith belief that infringement was occurring, there is no cause of action under § 512(f)").

The language cited by Defendants from *Online Policy Group* was dicta and is no longer good law. The court in that case based its holding on the fact that the defendant had actual knowledge, thus rendering its musings about "constructive knowledge" pure dicta. *See Online Policy Grp. v. Diebold*, 337 F. Supp. 2d 1195, 1203-05 (N.D. Cal. 2004); *see also Lenz v. Universal Music Corp.*, No. 07-03783, 2008 WL 962102, at *3 (N.D. Cal. Apr. 8, 2008) (distinguishing *Online Policy Group* as actual knowledge case). In any event, the dicta from

67

*Online Policy Group* was abrogated several months later by the Ninth Circuit in *Rossi*.  *See* Matt Williams, *The Truth and the "Truthiness" About Knowing Material Misrepresentations*, 9 N.C. J. L. & Tech. 1, 33 (2007) ("the *Diebold* court's holding that a 'knew or should have known' standard satisfies § 512(f) is no longer good law" after *Rossi*).  Defendants' proposed instruction thus reflects a misstatement of law.

68

### Defendants' Proposed Jury Instruction No. 12

For the purposes of § 512(f), a Plaintiff's damages are not limited to the actual damages. Recovery is available for any form of damages arising from the misrepresentation of the defendant.

*Lenz v. Universal Music Corp.*, C 07-3783 JF, 2010 WL 702466, *7-10 (N.D. Cal. Feb. 25, 2010); *Disney Enterprises, Inc. v. Hotfile Corp.*, No. 11-Civ-20427, slip op., at 98 (S.D. Fla. Aug. 28, 2013).


### Plaintiffs' Objection to Defendants' Proposed Jury Instruction No. 12

This proposed instruction is an incorrect statement of law. *Lenz*, the case cited by Defendants in support of this proposed instruction, actually stands for the opposite proposition. In that case, the court held that, while the term "any damages" in Section 512(f) was not limited only to substantial economic damages (i.e. it can also refer to non-economic damages), "[a] fair reading of the statute, the legislative history, and similar statutory language indicates that a § 512(f) plaintiff's damages must be proximately caused by the *misrepresentation to the service provider and the service provider's reliance on the misrepresentation*." *Lenz v. Universal Music Corp.* C 07-3783, 2010 WL 702466, at *10 (N.D. Cal. Feb. 25, 2010) (emphasis in original). The court explicitly rejected Lenz's argument that "any damages" meant "any harm whatsoever." *Id.* at *7. Damages recovered under Section 512(f) must be proximately caused by the misrepresentations. *Id.* at *10. The court held that Lenz was not entitled to "costs and fees," as those were merely the result of but-for causation. *Id.*

The Court should instruct the jury that, if it finds Warner liable under § 512(f), Hotfile may recover only those damages that are proximately caused by Warner's misrepresentations to Hotfile and Hotfile's reliance on those representations. *See id.* at *10.

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that prior to filing this Joint Motion, counsel for Plaintiffs, Kenneth L. Doroshow, Esq., conferred with counsel for Defendants, Evan Fray-Witzer, Esq., in a good faith effort to resolve this motion by agreement and is authorized to represent that Defendants join in this motion and that the counsel who makes this joint filing on behalf of all Parties, has authorization from counsel for Defendants to file the Joint Motion on behalf of Defendants.

/s/ Kenneth L. Doroshow
Kenneth L. Doroshow

75425.1

Date: November 18, 2013

By: /s/ Karen L. Stetson
    Karen L. Stetson

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
karen.stetson@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Phone: 305.416.6880
Fax: 305.416.6887

JENNER & BLOCK LLP
Steven B. Fabrizio (Pro Hac Vice)
sfabrizio@jenner.com
Luke C. Platzer (Pro Hac Vice)
lplatzer@jenner.com
David A. Handzo (Pro Hac Vice)
dhandzo@jenner.com
Kenneth L. Doroshow (Pro Hac Vice)
kdoroshow@jenner.com
1099 New York Ave., N.W., Suite 900
Washington, DC 20001
Phone: 202.639.6000
Fax: 202.639.6066

*Attorneys for Plaintiffs*

Respectfully submitted,

By: /s/ Brady J. Cobb
    Brady J. Cobb

COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116
Phone:617-426-0000

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on this 18th day of November, 2013, I caused to be served a true and correct copy of the foregoing document on all counsel of record on the attached service list by transmission of Notices of Electronic Filing generated by CM/ECF pursuant to the parties' service agreement

I further certify that I am admitted to the United States Court for the Southern District of Florida and certify that this Certificate of Service was executed on this date.

By: <u>/s/ Karen L. Stetson</u>
Karen L. Stetson

75425.1

<u>**SERVICE LIST**</u>

**Disney Enterprises, Inc., et al. v. Hotfile orp. et al.**
**CASE NO. 11-C1V-20427-WILLIAMS-TURNOFF**

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116 Phone:617-426-0000

*Attorneys for Defendants Hotfile Corp. and*
*Anton Titov*

COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201

*Attorney for Defendants Hotfile Corp. and*
*Anton Titov*

73

75425.1