IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:11-CV-20427-KMW  Williams/Turnoff

|  |  |
|---|---|
| DISNEY ENTERPRISES, INC, et al, | ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| HOTFILE CORP, et al, | ) ) |
| Defendants. | ) ) ) ) |

**MOTION OF THE ELECTRONIC FRONTIER FOUNDATION TO UNSEAL DOCUMENTS RELATING TO SUMMARY JUDGMENT ON HOTFILE'S COUNTERCLAIM**

Intervenor Electronic Frontier Foundation ("EFF") moves for an order of this Court to unseal portions of the Court's Order on Pending Motions for Summary Judgment (ECF No. 534) ("S.J. Order"), the memoranda of law for and against Plaintiffs' motion for summary judgment on Hotfile's counterclaim, and certain declarations, transcripts, and documents that were submitted to the Court in connection with that motion. The portions that EFF requests be publicly filed are listed in Exhibit A. Defendants do not oppose this motion. The Plaintiffs oppose unsealing materials listed in ECF No. 666 and its accompanying exhibits, but take no position on the unsealing of materials for which they did not request continued sealing. Exhibit A also lists the relevant materials as to which Plaintiffs did not request continued sealing.

Hotfile's counterclaim concerned Section 512(f) of the Digital Millennium Copyright Act, a vital protection for users of services like Hotfile, but one with little judicial interpretation to date. Section 512 is currently under review by Congress and the Department of Commerce, with a House Judiciary Committee hearing to occur next month. Public discussion of its implementation in practice and its judicial interpretation are of vital public importance. This public purpose is not outweighed by the Plaintiffs' desire for confidentiality. For this reason, and others set forth in the attached memorandum, EFF respectfully requests that the materials listed in Exhibit A be filed on the public docket without redaction.

**MEMORANDUM OF LAW**

Hotfile's counterclaim against Warner raised a contentious issue of vital importance to the public: under what circumstances does the design and operation of a "takedown" system – one intended to take advantage of the voluntary, private copyright enforcement scheme created by Section 512 of the Digital Millennium Copyright Act – violate that act's protections against abuse. This Court found that issues of material fact existed as to whether the operation of Warner's takedown system, which apparently relied heavily on decisions made by software, violated section 512(f) of the DMCA. S.J. Order at 97 (ECF No. 534). However, the factual basis and much of the reasoning behind the Court's decision, as well as the substantive arguments of the parties, was redacted from the public record.

Takedown systems like Warner's are at the heart of ongoing public discussions organized at the highest levels of government about the efficacy of Section 512 as a tool of copyright enforcement that respects free speech and due process concerns. The Judiciary Committee of the House of Representatives and the Department of Commerce Internet Policy Task Force are each conducting a public review of the statute. At the same time, few cases have interpreted section 512(f), leaving little public information on which to build sound policy. Warner's system, as one of the largest, is of particular importance to the ongoing public review of copyright.

Both common law and the First Amendment establish a presumption of public access to court records. A proponent of secrecy has the burden of showing good cause, supported by facts, in order to maintain sealed court records. *Romero v. Drummond Co.,* 480 F.3d 1234, 1246 (11th Cir. 2007). The court must then balance the public interest in access to court proceedings with the party's interest in secrecy. *Chicago Tribune Co v. Bridgestone/Firestone Inc.,* 263 F.3d 1204, 1312 (11th Cir. 2001).

This Court has stated that it "intends to unseal the docket in this case to the extent possible." Paperless Order, ECF No. 652. Plaintiffs do not object to public disclosure of *some* of the sealed information that is the subject of this motion. However, Plaintiffs urge the court to keep the factual underpinning of the Court's summary judgment decision in perpetual secrecy.

Plaintiffs' request is overbroad, and disserves the public interest. The public's interest in fully understanding this Court's interpretation of Section 512(f), and the impact of that statute on private, voluntary copyright enforcement systems like Warner's, is not outweighed by Warner's asserted interests in privacy. Accordingly, the Court should order that the materials listed in Exhibit A to this motion be disclosed to the public.

I.  **Background: The Public Review of Section 512 and the Secret Basis for the Court's Summary Judgment Order.**

This case sits at the center of a vital public debate about the efficacy and abuse of Section 512 of the Digital Millennium Copyright Act, 17 U.S.C. § 512. That statute establishes a voluntary system of private copyright enforcement by rightsholders and Internet services like Hotfile. It gives Internet services an incentive to remove material posted by users based on accusations that the material is infringing. Thus, it provides a means for rightsholders to cause the removal of materials posted by third parties with a simple electronic notice, rather than an injunction. Recognizing that the ease and speed of this mechanism creates opportunities for abuse, Congress created several means of challenging inappropriate takedowns, including the Section 512(f) right of action. S. Rpt. 105-190, at 21 (105th Cong. May 11, 1998) ("The Committee was acutely concerned that it provide all end-users . . . with appropriate procedural protections to ensure that material is not disabled without proper justification.").

Section 512, enacted in 1998, is today the subject of intense debate among the public and policymakers. Last year, the U.S. Register of Copyrights emphasized the importance of "establishing how the DMCA is working, *including how affected parties have implemented its provisions and courts across the country have applied it*." Maria Pallante, *The Next Great Copyright Act*, 36 Colum. J. Law & Arts 329 (March 2013) (emphasis added). Congress agreed; the House Judiciary Committee, Subcommittee on Courts, Intellectual Property and the Internet held a series of hearings. A hearing on Section 512 is scheduled for March 4th, 2014. The Department of Commerce is also holding a series of public meetings this year in a

3

"comprehensive review of the relationship between the availability and protection of online copyrighted works and innovation in the Internet economy." http://www.ntia.doc.gov/category/copyright. One of the Department's major areas of focus is Section 512. U.S. Dept. of Commerce Internet Policy Task Force, "Copyright Policy, Creativity, and Innovation in the Digital Economy," 52-76 (July 2013), http://www.uspto.gov/news/publications/copyrightgreenpaper.pdf.

Section 512(f), though an important part of the statutory scheme, has not been thoroughly analyzed by the courts. As this Court noted, numerous 512(f) issues have not yet been addressed in this Circuit, including "Warner's knowledge [regarding its misidentification of files to be taken down]; its responsibility to investigate; whether it had a good faith belief in infringement in each instance; and whose burden it is to show or refute what." S.J. Order at 97 (ECF No. 534). Overall, only a few court decisions have construed a copyright holder's responsibilities under Section 512(f) in a small range of circumstances. A full and complete understanding of the circumstances behind each judicial decision construing that statute is therefore vital.

Public understanding of the takedown systems and procedures used by large entertainment companies like Warner is particularly vital given its size, scope, and impact on so many Internet users. In a process analogous to that challenged in Hotfile's counterclaim, Warner has, to date, issued takedown requests to the Google search engine for 1,886,416 unique web pages. http://www.google.com/transparencyreport/removals/copyright/owners/?r=all-time&p=2 (accessed February 18, 2014). That figure makes Warner the 24th most prolific sender of takedown notices to Google, out of some 34,115 copyright holders appearing in Google's statistics.

This Court found sufficient evidence in the record to deny summary judgment to Warner on Hotfile's counterclaim, but the publicly available order provides almost no information about what evidence the Court found to raise issues of fact. The heavily redacted order states little more factual basis than Hotfile's complaint. In substance, the order informs the public that Warner has an "automated review process" that leads to the sending of takedown notices, S.J.

Order at 29-30, that "Hotfile has identified characteristics that may be responsible for engendering [] mistakes [in Warner's process]", *id.*, and that Hotfile presented additional evidence of Warner's error rate, Warner's knowledge of the same, and other redacted evidence "to show how unsound Warner's search practices might have been." S.J. Order at 32. The order also notes evidence proffered by Hotfile that suggests an "illicit motive" by Warner, on account of its decision to "liberally remove[]" a "popular and innocuous free software program," S.J. Order at 33, and that Warner "took liberties in removing content owned by other copyright holders." The Court also referred to evidence that it suggested could lead to liability under a willful blindness theory. S.J. Order at 94-96.

Aside from these conclusions, the entire factual basis for the Court's order is redacted from the public record. Thus, the order provides no guidance to the public as to what conduct, and what evidence, raises fact issues on a Section 512(f) claim. The order offers no guide to designing a takedown system in compliance with the law, and no facts to aid the public and policymakers in their review of the DMCA. The redactions, as they stand today, defeat a major purpose of litigation as a public process.

**II.     Common Law and the First Amendment Create a Right of Access to Court Records.**

Common law, and the First Amendment to the US Constitution, create a right of access to judicial proceedings. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). This right, "an essential component of our system of justice, is instrumental in securing the integrity of the process." *Id.*; *see also Nixon v. Warner Communications, Inc.,* 435 U.S. 598, 597 (1978). The right is also designed to promote the public's understanding of significant public events. *FTC v. AbbVie Products LLC,* 713 F.3d 54, 71 (11th Cir. 2013). In particular, "[m]aterial filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007).

5

A party seeking to restrict the public's access to materials connected to a substantive motion bears the burden of overcoming the presumption of public access with a showing of good cause. *Id.* at 1246. The court must then balance the public's interest in obtaining access against the party's interest in keeping the information confidential. *Chicago Tribune,* 263 F.3d at 1312-13. The court should also consider "the interests of litigants in other suits, the needs of regulatory agencies, concerns of public interest groups, and the interests of future plaintiffs." Hon, Jack B. Weinstein, "Secrecy in Civil Trials: Some Tentative Views," *Journal of Law and Policy (Symposium II: Secrecy and the Civil Justice System)* (2000), at 4.

A decision to maintain sealed records must be supported by findings of fact. *Chicago Tribune,* 263 F.3d at 1315. The factors to be considered include "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Romero,* 480 F.3d at 1246.

**III.     The Balance of Interests Favors Public Disclosure of the Factual Basis for the Court's Summary Judgment Order On Hotfile's Counterclaim.**

The select facts concerning the design and operation of Warner's takedown system, including "the operation of its robots," which the Court relied on in its denial of summary judgment, will "enhance[] the public's ability to understand the judicial process and a significant legal issue that will shape business practices in the future." *AbbVie Prods.*, 713 F.3d at 71. This information pertains to several vital public concerns. Plaintiffs' Response to the Court's Omnibus Order of November 26, 2013 (ECF No. 666-1) at 5 ("Response"). As described above, this information is necessary to understand the basis of the Court's decision and guide others in designing and evaluating takedown systems based on the DMCA. It is also vital to informing the public discussion being led by the House Judiciary Committee, the Copyright Office, and the Department of Commerce, which cannot meaningfully evaluate the current law if its

6

implementation in practice, and its judicial interpretation, are maintained in secrecy.

Plaintiffs' assessment of harms that would result from a full disclosure of the Court's decision and its basis are exaggerated, and poorly supported by the record. Plaintiffs argue that "Warner is engaged in a continuous arms race against new and ever more effective methods of online copyright infringement." Response at 3. If this is so, then the materials submitted in early 2012 as part of the summary judgment briefing represent a two-year-old iteration of this process. Therefore, its value as part of the evolution of Section 512(f) jurisprudence and as historical data to inform the government's sweeping review of copyright law is not outweighed by its hypothetical use as a guide for putative infringers to avoid a process that has undergone two more years of "continuous" development.

Moreover, the redactions in the Court's Order and the parties' briefs suggest that much of the information that Plaintiffs seek to seal permanently concerns broad characteristics of Warner's takedown system, not intimate technical detail. For example, the factual background section of Hotfile's memorandum in opposition to summary judgment appears to describe Warner's system in summary terms and by example. *See* ECF No. 350-1, at 3. And Plaintiffs' request for permanent confidentiality suggests that a broad, general characteristic of Warner's system renders it vulnerable. Response at 4-5. If this is so, then Warner's interest in confidentiality is quite low. Information security professionals recognize that a dependence on secrecy weakens security rather than strengthening it. *See* Bruce Schneier, *Secrets and Lies: Digital Security in a Networked World* (2000) ("A good security design has no secrets in its details … . If a system is designed with security by obscurity, then that security is delicate."). An inherently weak measure of protection should receive less protection from the court, not more.

Although Plaintiffs raise the specter of "potential prejudice to an ongoing criminal investigation," they do not cite to any actual present or past investigation or prosecution. Response at 5. Plaintiffs do not even state that information gleaned from Warner's takedown process has *ever* been used in a criminal investigation – merely that this hypothetical possibility is "one of the purposes of Warner's antipiracy efforts. "[C]onclusory and speculative"

7

justifications for sealing are not sufficient. *Romero*, 480 F.3d at 1248.

There are indications that Warner simply seeks to avoid embarrassment that might follow from public disclosure of abusive practices that the Court's summary judgment order (and Hotfile's complaint) strongly suggest were taking place. Plaintiffs' Response at 8. Avoiding embarrassment of a corporate litigant is not a legitimate reason for denying the public its right of access. *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1352 (S.D. Fla. 2000) (distinguishing "commercial harm or embarrassment of a party" from "highly sensitive and potentially embarrassing personal information about individuals."). Even if it were, the allegations of Warner's abusive practices found in the Complaint are public. The mere fact that Warner denies those allegations does not justify denying the public access to the facts that support or refute the allegations. *See Romero*, 480 F.3d at 1247 ("Although court files that instigate public scandal or libel may be sealed, the declarations in question support the already-public complaint … . Although [Defendant] denies the allegations of that complaint, its denial is not a legitimate basis for sealing the evidence.").

EFF seeks only the specific information that was submitted to the court and that formed the basis for the Court's summary judgment decision on the merits of Hotfile's counterclaim. EFF does not seek pricing or other financial information, expert reports, or information relating solely to Hotfile's alleged damages.

While EFF has made every effort to limit the materials listed in Exhibit A to these criteria, the abundant redaction makes it impossible for us to know the subject matter of each and every redacted passage. Even the description of the first category of information for which Plaintiffs seek permanent secrecy is redacted. Response at 2. Overdesignation of confidential material cannot and should not defeat EFF's legitimate request. Therefore, if any of the materials listed in Exhibit A are not in fact germane to the Court's decision on the merits of Hotfile's counterclaim, EFF acknowledges that the Court may omit them from its order.

8

### IV. Conclusion

For the foregoing reasons, EFF respectfully requests an order that the materials listed in Exhibit A be filed on the public docket without redaction.

### CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that counsel for the movant, Mitchell L. Stoltz, Esq., conferred with all parties or non-parties who may be affected by the relief sought in this motion, including counsel for Plaintiffs and Defendants, in a good faith effort to resolve the issues. Counsel for Defendants has informed the undersigned that Defendants do not oppose the relief sought herein. Counsel for Plaintiffs has informed the undersigned that Plaintiffs oppose the unsealing of materials listed in Exhibits A-F of Plaintiffs' Response to the Court's Omnibus Order of Nov. 26, 2013 (ECF Nos. 666-2, 666-3, 666-4, 666-5, 666-6, and 666-7). Plaintiffs take no position on the unsealing of materials not listed in those exhibits; that is, materials for which Plaintiffs did not request continued sealing.

Dated: _____, 2014          ELECTRONIC FRONTIER FOUNDATION

/s/ *Dineen Pashoukos Wasylik*
Dineen Pashoukos Wasylik
Florida State Bar No. 191620
Dineen Pashoukos Wasylik, P.A.
P.O. Box 48323
Tampa, FL 33646
Phone: 813-778-5161
Email: dineen@ip-appeals.com

Mitchell L. Stoltz (admitted *pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy St.
San Francisco, CA 94109
Phone: (415) 436-9333
Email: mitch@eff.org
*Attorneys for Intervenor*
*Electronic Frontier Foundation*

9

**Exhibit A: Information Relating To Summary Judgment on Hotfile's Counterclaim That Should Be Available To the Public**

| Docket Entry | Document | Date of Public Filing | Pages(s) Requested To Be Filed Unredacted | Pages for which unsealing is not contested |
|---|---|---|---|---|
| 301 | Warner Bros. Entertainment Inc.'s Motion for Summary Judgment and Memorandum of Law in Support of Motion for Summary Judgment | 02/27/2012 | 4-6 | 4 |
| 301-6; 308-1 | Declaration of David Kaplan in Support of Warner Bros. Entertainment's Motion for Summary Judgment | 02/27/2012 | 2-5, with the exception of paragraph 4 | 2 |
| 350-1 | Memorandum of Law of Defendant/Counterclaimant Hotfile Corporation In Opposition To The Motion for Summary Judgment on Hotfile's Counterclaim Filed By Plaintiff/Counterdefendant Warner Bros. Entertainment Inc. | 03/12/2012 | 3-5, 8-12, through the end of subsection IV.A.3 | 9, 12 |
| 354-1 | Declaration of Roderick Thompson in Support of Defendants' Opposition to Plaintiff Warner Bros. Motion for Summary Judgment | 03/12/2012 | Entire Declaration, except paragraphs 7, 9, and 24 | None |
| 354-5, 354-6, 354-8, 345-11, 345-14, 345-15, 345-16, 345-17, 345-18, 345-19, 345-20, 345-21, 345-22, 345-23 | Exhibit Nos. 4, 5, 7, 10, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22 to the Declaration of Roderick Thompson in Support of Defendants' Opposition to Plaintiff Warner Bros. Motion for Summary Judgment | 03/12/2012 | Entire Exhibits | None |
| 409 | Reply Memorandum of Law in Support of Warner Bros. Entertainment Inc.'s Motion for Summary Judgment | 03/26/2012 | 3-8 | 4-5 |
| 534 | Order on Pending Motions for Summary Judgment | 09/20/2013 | 29-34, 94-97 | 29, 31, 33-34, 94-97 |