Sealed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

## DECLARATION OF DAVID KAPLAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE ELECTRONIC FRONTIER FOUNDATION'S MOTION TO UNSEAL DOCUMENTS RELATING TO SUMMARY JUDGMENT ON HOTFILE'S COUNTERCLAIM

[CONFIDENTIAL]

[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

I, DAVID KAPLAN, declare as follows:

1. I hold the position of Senior Vice President, Intellectual Property Counsel, Worldwide Antipiracy Operations at Warner Bros. Entertainment Inc. ("Warner"). In that capacity, I oversee Warner's antipiracy efforts worldwide for audiovisual product, including with respect to so-called "locker" and "link" sites, including Hotfile. I make this declaration in support of Plaintiffs' Opposition to the Electronic Frontier Foundation's Motion to Unseal Documents Relating to Summary Judgment on Hotfile's Counterclaim. I have personal knowledge of all of the matters described herein.

## The Evolution of Warner's Locker Site Enforcement System

2. I have explained and described the basic nature and structure of Warner's copyright enforcement system in a prior declaration filed in this litigation. *See* Declaration of David Kaplan in Support of Warner Bros. Entertainment's Motion for Summary Judgment (filed under seal), dated February 8, 2012, ¶¶ 2-13.

3. My prior declaration described certain methods that Warner uses to search link and locker sites for content that infringes Warner's copyrights. These methods were discussed in the parties' briefs on motions for summary judgment in this case and remain in place today. They include:

   a. Warner searches only specific link sites that Warner personnel have hand-selected based on a determination that the linking site is either devoted to infringing content or has discrete sections of the site (such as a dedicated "Movies" section) devoted to infringing content;

   b. These hand-selected link sites are searched using sophisticated, dedicated software called "robots," which conduct keyword-based searching, employing a dedicated set of programmable instructions and matching criteria.

   c. Warner's personnel manually set searching and matching criteria for Warner's robots based on the sites being searched and the copyrighted works being searched for. For each work, the robots' algorithm searches for a specific combination of data relevant to that work, including title, year of release, genre, and relevant keywords; Warner also identifies "exclude" words, *i.e.*, words that, if they appear, will cause the robot to exclude a result even if it otherwise matches the criteria set for a Warner work.

2

    d. Because many link sites enable searching by content type (such as movies, music, games, software, etc.), Warner's system also takes advantage of this additional information whenever available. For instance, when Warner searches for a television program on a site with a "TV" section, Warner configures the relevant robots to search for the title only in the TV section. Thus, if an infringing copy of a Warner television program is incorrectly posted in another section, the Warner robot ignores it.

    e. Warner has built a library of "global exclude" terms that apply to all searches regardless of the title being searched; global exclude terms similarly cause the file to be excluded regardless whether there is a title match. For example, "pdf" (a common image file format) is a global exclude term, to help prevent notices from being sent for images that happen to have names similar to Warner's motion picture and television titles.

4. Although some of the specific algorithms employed by Warner's computer programs have evolved, the basic structure of those algorithms and of Warner's antipiracy enforcement system has remained constant since before Warner filed for summary judgment on Hotfile's counterclaim. In particular, some of the searches Warner used to identify content that infringes its copyright are still employed by Warner. Similarly, although Warner has added to the list of "exclude" words that correspond to particular Warner works, it continues to employ the exclude terms that Hotfile attached to its brief in opposition to Warner's motion for summary judgment. *See* Declaration of Roderick Thompson in Support of Defendants' Opposition to Plaintiff Warner Bros. Motion for Summary Judgment (filed under seal), dated February 27, 2012, Ex. 15.

5. If putative infringers were to gain access to the confidential information regarding Warner's copyright enforcement system revealed at the summary judgment stage of this litigation, Warner would be significantly prejudiced because such information would give pirates multiple routes for evading detection and copyright enforcement. For example, were a putative infringer to learn that Warner's robots only search some linking and locker sites, he or she could evade detection by posting infringing content on a different site that Warner does not search. Similarly, if the infringer learned that Warner's computer programs typically only search for television shows in the "TV" or "television" section of a locker or linking site, he or she could

evade detection by storing copies of television episodes that infringe Warner's copyright in a different section of a particular cite. If an infringer were to gain access to the list of "exclude" words that Hotfile attached to its summary judgment filing, he or she could evade detection by including an "exclude" word within an infringing post to ensure that Warner's system would not return the file as a "match" to infringing Warner content.

### Criminal Copyright Enforcement

6. One of the purposes of Warner's antipiracy efforts is to identify and refer for criminal prosecution persons engaged in criminal infringement activity.

7. Warner has used – and, indeed, continues to use – information from the antipiracy system at issue in this litigation, including its antipiracy computer programs, in support of referrals to law enforcement agencies for criminal investigations of copyright infringement.

I declare under penalty of perjury that the foregoing in true and correct.

Executed in the state of California this 12th day of March, 2014.

David Kaplan