Sealed



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20427-WILLIAMS/TURNOFF

DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
COLUMBIA PICTURES INDUSTRIES, INC., and
WARNER BROS. ENTERTAINMENT INC.,

*Plaintiffs*,

v.

HOTFILE CORP., ANTON TITOV, and
DOES 1-10.

*Defendants*.
_____/

HOTFILE CORP.,

*Counterclaimant*,

v.

WARNER BROS. ENTERTAINMENT INC.,

*Counterdefendant*.
_____/

## PLAINTIFFS' OPPOSITION TO THE ELECTRONIC FRONTIER FOUNDATION'S MOTION TO UNSEAL DOCUMENTS RELATING TO SUMMARY JUDGMENT ON HOTFILE'S COUNTERCLAIM

[CONFIDENTIAL]

[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

## INTRODUCTION

When it entered the Protective Order governing this litigation, this Court recognized that the Order was "necessary to protect such trade secrets and other confidential research, development, technical, or commercial information that may be produced or provided" by the parties to the case. Stipulated Protective Order, May 19, 2011 (DE 68) at 1. Throughout the course of this case – which is now over, having been resolved by the parties and closed by the Court on December 11, 2013 – Plaintiffs relied on the Protective Order's assurance of strict confidentiality when disclosing a host of sensitive information to Defendants and to this Court under seal.

On January 31, 2014, in response to this Court's Omnibus Order concerning the continued sealing of the record, Plaintiffs forwent objecting to the unsealing of most of this sensitive information and, instead, identified only a small subset of the most highly confidential information that should remain sealed even if the Court were to unseal the record more generally. As Plaintiffs explained in their January 31 filing, much of this information concerns highly sensitive and confidential details of Plaintiff Warner Bros. Entertainment Inc.'s ("Warner") copyright enforcement system, the disclosure of which would severely undermine the effectiveness of that system in detecting and preventing the online infringement of Warner's valuable copyrights. See Plaintiffs' Response to the Court's Omnibus Order at 2-9, Jan. 31, 2014 (filed under seal) ("Plaintiffs' Jan. 31 Filing")

Now, Electronic Frontier Foundation ("EFF"), an organization that was not a party to this litigation and whose antagonism to Plaintiffs' enforcement of their copyrights is well known, has moved to unseal significant additional information pertaining to Warner's antipiracy system. Although EFF claims that this unsealing would serve the "public interest," EFF's motion is a thinly-veiled effort to gain access to Warner's confidential information for EFF's own tactical advantage in private litigation that EFF regularly brings against copyright owners to challenge their use of takedown systems.

EFF fails to explain how information already in the public record is insufficient to inform the public debate over the Digital Millennium Copyright Act ("DMCA") that it claims to support, or how the precise information it seeks to unseal here is pertinent to that debate. At the same time, as Plaintiffs have already made clear, the disclosure that EFF seeks would expose the highly sensitive details of Warner's antipiracy system to the public at large – including to

1

putative infringers who could use this information to evade detection. Plainly, the harm to Plaintiffs from disclosure outweighs any interest that EFF may have in gaining access to this information. Accordingly, EFF's motion to unseal should be denied.

## ARGUMENT

"The right to inspect and copy [judicial records] is not absolute . . . ." *Chicago Tribune v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) (citing *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 (1978)). To succeed on its Motion to Unseal, EFF must demonstrate that the "right of access" it asserts outweighs Plaintiffs' interest in keeping the designated information confidential. *Id.* at 1309.[1]

In assessing whether to keep information contained in court documents under seal, "courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007). Considered here, these factors weigh decidedly in favor of maintaining the confidentiality of the small amount of information that Plaintiffs have designated for continued sealing.

### I. DISCLOSURE OF THE DESIGNATED INFORMATION WOULD SEVERELY COMPROMISE WARNER'S ANTIPIRACY EFFORTS.

As Plaintiffs have already demonstrated, disclosure of the information in question here would severely undermine the effectiveness of Warner's antipiracy system. *See* Plaintiffs' Jan.

---

[1] EFF contends that "[t]here is a strong common law presumption in favor of public access to court records," EFF Motion to Intervene at 1, but the cases on which it relies in support of this contention are inapposite. *In re Alexander Grant & Co. Litigation*, 820 F.2d 352 (11th Cir. 1987), says nothing about a "strong common law presumption," and, as the Eleventh Circuit has explained, both *Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013 (11th Cir. 1992), and *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985), were cases in which the trial courts sealed the *entire* record. It is only in those "narrow circumstances" that a sealing decision is subject to heightened scrutiny. *See Chicago Tribune*, 263 F.3d at 1311-12 (11th Cir. 2001) (finding *Wilson* and *Brown* to be "easily distinguishable" from a case in which only portions of the record are sealed). Where, as here, the sealing issue concerns only particular documents and not the record as a whole, the court's role is simply "to balance the competing interests of the parties" with respect to continued confidentiality. *Id.* at 1312.

2

31 Filing at 2-9. The designated portions of the record include: (1) information about Warner's proprietary methods for identifying infringing files online; (2) information about the use of "exclude" terms used by Warner to avoid mistakenly identifying non-infringing files as infringing, including a list of the actual "exclude" words that Warner uses for this purpose; and (3) information about Warner's confidential internal investigation of its antipiracy system that, by necessity, describes many sensitive and confidential features of the system. *Id.* Unsealing this information would expose this highly sensitive material to the general public, including putative infringers who could readily use the information to avoid detection of their infringing activity. *Id.* at 3-8; *see also* Declaration of David Kaplan in Support of Plaintiffs' Motion for a Protective Order Regarding Plaintiffs' Antipiracy Investigations and Enforcement Procedures, July 21, 2011 (D.E. 106-14) (hereinafter "Kaplan Protective Order Decl."), ¶ 6 ("[P]ersons familiar with Warner's methods and strategies for identifying unauthorized Warner content online could infringe without fear of detection if they knew how the detection worked.").

EFF offers no genuine challenge to this undeniably good cause for the continued sealing of the designated information. Instead, EFF merely speculates that, because the designated information relates to a "two-year-old iteration" of Warner's processes for preventing online infringement, its value to putative infringers today is only "hypothetical." EFF's Motion to Unseal at 7. But while Warner continually develops its antipiracy system to counter new methods of infringement, much of what was present in its system two years ago (and is the subject of EFF's motion to unseal) remains part of the system's basic structure. *See* Plaintiffs' Jan. 31 Filing at 3; Declaration of David Kaplan in Support of Plaintiffs' Opposition to the Electronic Frontier Foundation's Motion to Unseal Documents Relating to Summary Judgment on Hotfile's Counterclaim, Mar. 12, 2014 (hereinafter "Kaplan Decl."), ¶¶ 2-4. New works have been added, and keywords have evolved, but the risk of harm to Warner's antipiracy system through disclosure of the designated information currently under seal remains the same. *Id.* ¶¶ 2-5.

EFF also surmises – incorrectly – that the designated information reflects only the "broad characteristics of Warner's takedown system, not intimate technical detail," and thus poses little risk of harm from disclosure. EFF Motion to Unseal at 7. As this Court is aware, however, the information that Plaintiffs urge be kept under seal includes the specific search and matching methods and criteria employed by Warner to identify infringing content, including the details of

3

specific searches used by Warner to identify certain infringing files, Declaration of Roderick Thompson in Support of Defendants' Opposition to Plaintiff Warner Bros.' Motion for Summary Judgment, Feb. 27, 2012 (filed under seal) (hereinafter "Thompson Opp'n MSJ Decl."), Exhibits 5, 19, 20, 21; the fact that Warner uses "exclude" words to avoid false positives and the specific list of "exclude" words that Warner uses for this purpose, *id.*, Exhibit 15; and the details of audits undertaken by Warner to improve its antipiracy system. As Plaintiffs have explained, infringers could readily use this information to circumvent Warner's system and evade detection, thereby undermining Warner's legitimate copyright enforcement efforts. Plaintiffs' Jan. 31 Filing at 3.[2]

Finally, EFF speculates that Warner may "simply seek[] to avoid embarrassment that might follow from public disclosure of abusive practices" and that avoiding embarrassment of a corporation is not an appropriate purpose for keeping information in court files confidential. EFF Motion to Unseal at 8. EFF mischaracterizes Plaintiffs' argument, however, and misapprehends the facts. Plaintiffs' primary purpose is to keep confidential the details of Warner's antipiracy system, including those details which, of necessity, were discussed and analyzed in the audits. As Plaintiffs have explained, this detailed information could be used by infringers to evade Warner's copyright enforcement efforts. *See* Plaintiffs' Jan. 31 Filing at 6-8. That such disclosure would cause significant harm to Warner's copyright enforcement efforts is beyond serious dispute.

In any event, EFF is simply incorrect in asserting that "[a]voiding embarrassment of a corporate litigant is not a legitimate reason for denying the public its right of access." EFF Motion to Unseal at 8. To the contrary, "[a]mong the factors that courts have recognized as warranting restricting access to court records is the use of records for 'illegitimate purposes

---

[2] EFF also questions – without basis – whether "information gleaned from Warner's takedown process has *ever* been used in a criminal investigation . . . ." EFF Motion to Unseal at 7 (emphasis in original). In fact, as the record of this case already makes clear, Warner has used information from the very system at issue here in support of referrals to law enforcement agencies for criminal investigations of copyright infringement. *See* Declaration of David Kaplan in Support of Plaintiffs' Motion for a Protective Order Regarding Plaintiffs' Antipiracy Investigations and Enforcement Procedures, July 21, 2011 (D.E. 106-14), ¶ 5; Declaration of David Kaplan in Support of Plaintiffs' Opposition to the Electronic Frontier Foundation's Motion to Unseal Documents Relating to Summary Judgment on Hotfile's Counterclaim, Mar. 12, 2014, ¶ 7. In any event, EFF does not question (nor could it) that potential prejudice to Warner's ability to detect infringement for its own, *civil* enforcement is itself sufficient to justify continued confidentiality of Warner's investigative methods.

4

[such] as to promote scandal.'" *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1352 (S.D. Fla. 2000) (quoting *Newman v. Graddick,* 696 F.2d 796, 803 (11th Cir. 1983) (second bracket in original)). To the extent that embarrassment of a corporate litigant has been found insufficient to warrant sealing of the record, it is only when that concern is the *sole* reason given for an order sealing the *entire* record. *See id.* (citing *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985)); *see also Chicago Tribune*, 263 F.3d at 1311-12 (11th Cir. 2001) (finding *Wilson* to be "easily distinguishable" from a case in which only portions of the record are sealed). Given EFF's established practice of suing copyright owners who rely on the DMCA's takedown provisions to protect their copyrights from online infringement,[3] Plaintiffs' concern that EFF's true intentions are to exploit the sealed information in order to "promote scandal" regarding Warner and other copyright owners is fully justified, and tips the balance even further toward continued sealing of the designated information. *See In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 357 (11th Cir. 1987) (finding that the need to "prevent the abuses of annoyance, oppression and embarrassment" can constitute "good cause" justifying protective order).[4]

## II. THE PARTICULAR INFORMATION AT ISSUE IS NOT A MATTER OF PUBLIC CONCERN AND CANNOT OUTWEIGH PLAINTIFFS' INTEREST IN MAINTAINING CONFIDENTIALITY

EFF argues that disclosure of the designated information is necessary to inform a public discussion of Section 512 of the Copyright Act and, in particular, how courts have applied the provision. *See* EFF Motion to Unseal at 3-4, 6. But the public debate that EFF invokes in general terms is not served by the specific information at issue here.

Contrary to EFF's characterization, this Court expressly did not decide any of the legal issues that EFF identifies as the focus of public debate, such as "Warner's knowledge [regarding

---

[3] As EFF has already informed this Court, EFF "has represented numerous plaintiffs in Section 512(f) cases," the section of the Copyright Act on which Hotfile's counterclaim was based. *See* Brief of Amicus Curiae Electronic Frontier Foundation in Support of Hotfile's Opposition to Summary Judgment on its Counterclaim, filed Mar. 5, 2012 (DE 315-1) at 2 (citing *Sapient v. Uri Geller and Explorologist Ltd.,* 3:07-cv-02478 VRW (N.D. Cal.), *Showing Animals Respect and Kindness v. Professional Rodeo Cowboys Ass'n*, 1:08-cv-03314 (N.D. Ill), and *Lenz v. Universal Music Corp.*, 5:07-cv-03783 JF (N.D. Cal.)).

[4] EFF's practice of antagonizing copyright owners regarding their use of takedown systems is well known, as evidenced by the "Takedown Hall of Shame" that EFF maintains on its website, https://www.eff.org/takedowns, complete with pictures and a link to "[t]ips for warding off complaints about your website."

5

its misidentification of files to be taken down]; its responsibility to investigate; whether it had a good faith belief in infringement in each instance; and whose burden it is to show or refute what." EFF Motion to Unseal at 4 (quoting Order on Pending Motions for Summary Judgment, Sept. 20, 2013 (DE 534) at 97). Rather, the Court decided only that the factual allegations supporting the Section 512(f) counterclaim "should be presented to the jury." Order on Pending Motions for Summary Judgment, Sept. 20, 2013 (DE 534) (hereinafter "Summary Judgment Order") at 97. Because the Court merely recounted Hotfile's allegations and did not reach the merits of the counterclaim, the redacted allegations recited in the Court's decision do not serve the public discussion that EFF invokes, and disclosure of the designated information is unwarranted. *See* EFF Motion to Unseal at 8 ("[I]f any of the materials [for which EFF has requested unsealing] are not in fact germane to the Court's decision on the merits of Hotfile's counterclaim, EFF acknowledges that the Court may omit them from its order.").[5]

Moreover, as EFF observes, the Court's Order already "informs the public that Warner has an 'automated review process' that leads to the sending of takedown notices, S.J. Order at 29-30, that 'Hotfile has identified characteristics that may be responsible for engendering [] mistakes [in Warner's process]', *id.*, and that Hotfile presented additional evidence of Warner's error rate, Warner's knowledge of the same . . . .' S.J. Order at 32." EFF Motion to Unseal at 4-5. EFF fails to explain why this information is insufficient to inform the public discussion of Section 512, or why disclosure of the specific and highly confidential details of Warner's antipiracy system are necessary to that discussion. Indeed, much of the designated information – including the specific searches run by Warner, the "exclude" words employed to avoid false positives, and the details of Warner's audits – is specific to copyrights owned by Warner. Such company-specific information would not inform a more general discussion of Section 512, but would instead be of value only to putative infringers seeking to obtain unauthorized copies of Warner's works without detection by Warner's antipiracy system.

---

[5] Again, as noted, the Court made no "decision on the merits of Hotfile's counterclaim," so none of the information at issue could have been germane to such a decision. Indeed, in denying the motion for summary judgment, the Court did not even discuss much of the information sought by EFF. For example, the Court made no mention of the contents of the Declaration of Roderick Thompson in Support of Defendants' Opposition to Plaintiff Warner Bros.' Motion for Summary Judgment, Feb. 27, 2012 (DE 354-1), but merely referenced select portions of *some* of the exhibits attached thereto. *See* Summary Judgment Order at 31-33. Yet, EFF asks this Court to unseal the whole Declaration.

6

That the DMCA's takedown regime in general may be the subject of public discussion does not alter the fact that the particular information at issue here pertains specifically to the details of only one company's antipiracy system in the context of a private dispute with the operators of a now-shuttered website. If the mere existence of a public debate over the efficacy of the DMCA were sufficient to transform every challenge to a copyright takedown notice into a matter of public concern and to justify disclosure of the entire record of the dispute on that basis, then no copyright owner would be able to maintain a functioning antipiracy system, as the details of that system – the confidentiality of which is essential to the system's ability to function – would become public merely at the request of a third party. Surely, the law cannot countenance such a perverse result, as it would prevent the meaningful protection of copyrights online – no less a matter of "public interest" than the debate that EFF invokes.

### III. THE DESIGNATED INFORMATION WAS PRODUCED IN RELIANCE ON THE PROTECTIVE ORDER IN THIS CASE

In deciding whether to release sealed judicial records, "a judge's exercise of discretion . . . should be informed by a 'sensitive appreciation of the circumstances that led to . . . [the] production [of the particular document in question]." *Chicago Tribune*, 263 F.3d at 1311 (quoting *Nixon*, 435 U.S. at 597 (alterations in original))). Where, as here, confidential information was introduced into the record in the first instance not by the party seeking to maintain confidentiality, but by its adversary, the balance of interests favors continued confidentiality. *Id.* at 1315 n.15. As the Eleventh Circuit has observed,

> agreements to treat certain materials voluntarily produced during discovery as confidential facilitate the discovery process: "[l]itigants should not be discouraged from putting their discovery agreements in writing, and district judges should not be discouraged from facilitating voluntary discovery." This is particularly the case where the party filing the presumptively confidential discovery material with the court is not the party claiming confidentiality, but that party's adversary, as is the case here.

*Id.* (quoting *United States v. Anderson*, 799 F.2d 1438 (11th Cir.1986)); *see also In re Denture Cream Prods. Litig.*, No. 09–2051–MD, 2013 WL 214672, at *10 (S.D. Fla. Jan. 18, 2013) (holding that "the fact that [a party] produced the confidential documents, at least in part, based upon [its] reliance upon the agreed to Confidentiality Order, weighs in favor of keeping those documents sealed," especially where "the documents at issue have not been placed in the 'public arena of courtroom proceedings'" by that party).

7

All of the designated information was produced in this case in reliance on the assurances of confidentiality provided in the Protective Order, which Plaintiffs negotiated precisely to protect from disclosure to non-parties a specific and limited set of information whose secrecy is crucial to their ongoing businesses. With limited exceptions, the designated information was placed in the record in the first instance by Hotfile, not by Plaintiffs. Indeed, the majority of the information that EFF seeks to unseal first appeared in filings of Hotfile, including briefs and declarations in support thereof, and to the extent that the information appeared in Warner's reply brief, it was only to rebut Hotfile's claims based on that information.[6] As *Chicago Tribune* makes clear, "[t]here is no voluntariness, of course, where one's adversary submits the presumptively confidential material," and the fact that the information was produced in reliance on the Protective Order counsels in favor of its continued confidentiality. 263 F.3d at 1315 n. 15.[7]

---

[6] For example, EFF seeks to unseal information at the following locations, all of which was introduced into the record by Hotfile in the first instance: Memorandum of Law of Defendant/Counterclaimant Hotfile Corporation in Opposition to the Motion for Summary Judgment on Hotfile's Counterclaim Filed by Plaintiff/Counter-Defendant Warner Bros. Entertainment Inc., Feb. 27, 2012 (filed under seal), at 3, 5, 8, 10, 11; Thompson Decl. at 2-7; Ex. 4 at 43-35, 87-88, 124-25, 232-33, 249-50; Ex. 5, 6, 7, 8, 14, 15, 16, 17, 18, 19, 20, 21.

[7] Plaintiffs' careful efforts to narrow their confidentiality designations to only the material that is most crucial to protecting the integrity of Warner's copyright enforcement system also weighs against EFF's motion. Approximately 150 separate filings and orders have been placed under seal during the course of this litigation (not counting the many individual exhibits attached thereto). In contrast, Plaintiffs have designated select portions of only fourteen documents that they seek to keep confidential. EFF claims that Plaintiffs have "overdesignated" material as confidential, but the limited extent of Plaintiffs' actual designations belies this claim. *Cf. Curry v. McNeil*, No. 3:08cv539, 2009 WL 395247, at *2 (N.D. Fla. Feb. 17, 2009) (courts restrict public access to confidential information "in a way that will minimize that burden on the public's right" of access); *M.P. v. Schwartz*, 853 F. Supp. 164, 168–69 (D. Md. 1994) (redacting information in a manner "narrowly tailored" to the interest in confidentiality).

## CONCLUSION

For the foregoing reasons, this Court should deny EFF's Motion to Unseal.

DATED: March 17, 2014

Respectfully submitted,

By: /s/ Karen L. Stetson
Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue
16th Floor
Miami, FL 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

MOTION PICTURE ASSOCIATION
OF AMERICA, INC.
Karen R. Thorland (*Pro Hac Vice*)
15301 Ventura Blvd.
Building E
Sherman Oaks, CA 91403
Phone: (818) 995-6600
Fax: (818) 285-4403

JENNER & BLOCK LLP
David A. Handzo (*Pro Hac Vice*)
Kenneth L. Doroshow (*Pro Hac Vice*)
Luke C. Platzer (*Pro Hac Vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of March 2014, I served the following document on all counsel of record on the attached service list via their email address(es) pursuant to the parties' service agreement:

**Plaintiffs' Opposition to the Electronic Frontier Foundation's Motion to Unseal Documents Relating to Summary Judgment on Hotfile's Counterclaim**

By: /s/
Karen L. Stetson

## SERVICE LIST

### Disney Enterprises, Inc., et al. v. Hotfile Corp. et al.
CASE NO. 11-CIV-20427-WILLIAMS-TURNOFF

BOSTON LAW GROUP, PC
Valentin Gurvits
vgurvits@bostonlawgroup.com
Matthew Shayefar
matt@bostonlawgroup.com
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Phone: 617-928-1804

*Attorneys for Defendants Hotfile Corp. and Anton Titov*

CIAMPA FRAY-WITZER, LLP
Evan Fray-Witzer
evan@cfwlegal.com
20 Park Plaza, Suite 804
Boston, MA 02116 Phone:617-426-0000

*Attorney for Defendants Hotfile Corp. and Anton Titov*

COBB EDDY MIJARES PLLC
Brady J. Cobb
bcobb@CEMLaw.net
642 Northeast Third Ave.
Fort Lauderdale, FL 33305
Phone: 954-527-4111, ext 201
*Attorney for Defendants Hotfile Corp. and Anton Titov*

ELECTRONIC FRONTIER FOUNDATION*
Mitchell L. Stoltz
mitch@eff.org
815 Eddy St.
San Francisco, CA 94109
Phone: 415-436-9333

*Attorneys for Intervenor Electronic Frontier Foundation*

DINEEN PASHOUKOS WASYLIK, P.A.*
Dineen Pashoukos Wasylik
dineen@ip-appeals.com
P.O. Box 48323
Tampa, FL 33646
Phone: 813-778-5161

*Attorney for Intervenor Electronic Frontier Foundation*

---

* Served with Public Redacted Version pursuant to ¶ 3 of the Stipulated Protective Order, filed May 19, 2011 (DE 68)